## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| | § | |
| In re: | § | **Chapter 11** |
| | § | |
| **CORE SCIENTIFIC, INC.,** *et al.,* | § | **Case No. 22-90341 (DRJ)** |
| | § | |
| Debtors.[1] | § | **(Joint Administration Requested)** |
| | § | **(Emergency Hearing Requested)** |

### EMERGENCY MOTION OF DEBTORS FOR ENTRY OF AN ORDER (I) AUTHORIZING DEBTORS TO PAY CERTAIN PREPETITION TAXES AND FEES OWED TO TAXING AUTHORITIES AND (II) GRANTING RELATED RELIEF

> **EMERGENCY RELIEF HAS BEEN REQUESTED. RELIEF IS REQUESTED NOT LATER THAN THE MORNING OF THURSDAY, DECEMBER 22, 2022.**
>
> **IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST APPEAR AT THE HEARING IF ONE IS SET, OR FILE A WRITTEN RESPONSE PRIOR TO THE DATE THAT RELIEF IS REQUESTED IN THE PRECEDING PARAGRAPH. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

Core Scientific, Inc. and its debtor affiliates in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"), respectfully represent as follows in support of this motion (the "**Motion**"):

### Background

1.      On the date hereof (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").  The Debtors are authorized to continue to operate their business and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (N/A); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisitions, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisition I, LLC (9717); and American Property Acquisitions, VII, LLC (3198).  The Debtors' corporate headquarters and service address is 210 Barton Springs Road, Suite 300, Austin, Texas 78704.

manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee of creditors has been appointed in these chapter 11 cases.  The Debtors have filed a motion requesting joint administration of their chapter 11 cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 1015-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Local Rules**").

2.      The Debtors, together with their non-debtor affiliates (collectively, the "**Company**"), are one of the largest blockchain infrastructure, hosting provider, and digital asset mining companies in North America, with fully operational data centers in Texas, Georgia, Kentucky, North Carolina, and North Dakota.

3.      Additional information regarding the Debtors' business and capital structure and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Michael Bros in Support of the Debtors' Chapter 11 Petitions and First Day Relief*, (the "**Bros Declaration**"),[2] which has been filed with the Court contemporaneously herewith and is incorporated by reference herein.

### Jurisdiction

4.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Bros Declaration.

## Relief Requested

5.      By this Motion, pursuant to sections 105(a), 363(b), 507(a)(8), and 541(d) of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004, the Debtors request entry of an order (i) authorizing, but not directing, them to satisfy, or use tax credits to offset, all Taxes and Fees (as defined below)[3] due and owing to various federal, state, and local taxing authorities (collectively, the "**Taxing Authorities**")[4] that arose prior to the Petition Date, including all Taxes and Fees subsequently determined by audit or otherwise to be owed for periods prior to the Petition Date, and to pay any postpetition amounts that become due and owing to the Taxing Authorities in the ordinary course during these cases, and (ii) granting related relief.

6.      The Debtors estimate that approximately $8.9 million in Taxes and Fees relating to the period prior to the Petition Date will become due and owing to the Taxing Authorities in the ordinary course of business after the Petition Date.  The following table provides a summary of the estimated prepetition amounts that the Debtors seek relief to pay (or use tax credits to offset) in each category of Taxes of Fees (each as defined and described in more detail below):

---

[3] By this Motion, the Debtors are not seeking authority to pay employee withholding taxes, which are addressed separately in the *Emergency Motion of Debtors for an Order (I) Authorizing Debtors to (A) Pay Prepetition Wages, Salaries, Employee Benefits, and Other Compensation, (B) Maintain Employee Benefit Programs and Pay Related Obligations, and (C) Pay Prepetition Employment Expenses; and (II) Granting Related Relief* filed contemporaneously herewith.

[4] "Taxing Authorities" include, without limitation, those parties set forth in the Taxing Authorities List (as defined below).  The inclusion of any entity on, or the omission of any entity from, the Taxing Authorities List is not an admission by the Debtors that such entity is, or is not, a Taxing Authority to which the Debtors owe any amount, and the Debtors reserve all rights with respect to any such determination.

| Category | Interim Amount (30 days after the Petition Date) | Final Amount (inclusive of the Interim Amount) |
|---|---|---|
| Income and Franchise Taxes | $140,000 | $1,200,000 |
| Property Taxes | $1,300,000 | $1,300,000 |
| Sales and Use Taxes | $10,000 | $2,800,000 |
| Fees and Assessments | $1,500,000 | $3,600,000 |
| **TOTAL** | $2,950,000 | $8,900,000 |

7.      The amounts of the Taxes and Fees listed above are good faith estimates based on the Debtors' review of their books and records and remain subject to potential audits and other adjustments.  Accordingly, the Debtors seek authorization, pursuant to the Proposed Order, to pay, or use tax credits to offset, any undisputed prepetition Taxes and Fees due and owing following audit and review, if any.

8.      The Debtors request that any relief granted under this Motion be without prejudice to the Debtors' rights to contest the amounts of any Taxes and Fees on any grounds they deem appropriate or the Debtors' ability to request further relief related to the Taxes and Fees in the future.  The Debtors propose that prior to making a payment to any of the Taxing Authorities under the Motion, the Debtors be authorized, in their sole discretion, to settle all or some of the prepetition claims of such Taxing Authorities for less than their face amount without further notice or hearing.

9.      A proposed form of order granting the relief requested herein on a final basis is annexed hereto as **Exhibit A** (the "**Proposed Order**").

**Debtors' Prepetition Taxes**

10.     In the ordinary course of business, the Debtors are obligated to pay certain taxes and assessments, which generally fall into the following categories, each of which is defined and discussed in more detail below: (i) Income and Franchise Taxes, (ii) Property Taxes, (iii) Sales and Use Taxes, and (iv) Fees and Assessments (each as defined below and collectively, the "**Taxes and Fees**").

11.     The Debtors pay or remit Taxes and Fees to various Taxing Authorities through checks and electronic funds transfers that are processed through their banks and other financial institutions or service providers on a monthly, quarterly, semiannual, or annual basis, in each case as required by applicable law or regulation.   A non-exclusive list of the Taxing Authorities is included in **Exhibit 1** to the Proposed Order (such list, the "**Taxing Authorities List**").[5]

**A.     Income and Franchise Taxes**

12.     The Debtors are required to pay taxes on income earned or assessed for the privilege of doing business within a particular jurisdiction (the "**Income and Franchise Taxes**")[6].   The Debtors pay Income and Franchise Taxes to the applicable Taxing Authorities in North Carolina, Georgia, Kentucky, North Dakota, Texas, Oklahoma, California, Colorado, and Tennessee. Income and Franchise Taxes come due on various dates and are typically paid by estimated installments or annually to the applicable Taxing Authorities.

---

[5] Although the Debtors believe the Taxing Authorities List is substantially complete, the relief requested herein is to be applicable with respect to all Taxing Authorities and is not limited to those Taxing Authorities listed on the Taxing Authorities List.

[6] In connection with the sale of receipts from customers for hosting services, the Debtors are required to pay taxes on their gross receipts (the "**Gross Receipts Taxes**").   The Gross Receipt Taxes incurred by the Debtors are nominal. Nevertheless, if there are any outstanding prepetition Gross Receipt Taxes, such amounts are included in the Income and Franchise Taxes.

13.     As of the Petition Date, the Debtors estimate they have accrued approximately $1.2 million in prepetition Income and Franchise Taxes that will become due and owing in the ordinary course postpetition, with approximately $140,000 coming due within the thirty (30) days following the Petition Date.  Pursuant to the Proposed Order, the Debtors request authority, but not direction, to pay all remaining prepetition Income and Franchise Taxes as such taxes come due and to pay any postpetition amounts that become due and owing in the ordinary course during these cases.  To the extent there are any other amounts of Income and Franchise Taxes that relate to the prepetition period that become due and owing postpetition, the Debtors request authority, but not direction, to pay such amounts in the ordinary course during these cases.

**B.     Property Taxes**

14.     The Debtors own both real and personal property, including mining and hosting facilities and related mining equipment, in various jurisdictions that subject the Debtors to local ad valorem property taxes (the "**Property Taxes**").  The Property Taxes are determined based on the assessed value of the Debtors' land, buildings, infrastructure, and equipment, depending on the applicable jurisdiction.  The Debtors generally remit payments on such estimated amounts to various county Taxing Authorities within each state, as applicable, on an annual basis.

15.     As of the Petition Date, the Debtors estimate they have accrued approximately $1.3 million in prepetition Property Taxes that will become due and owing in the ordinary course postpetition, all of which the Debtors expect will come due within the thirty (30) days following the Petition Date.  This amount reflects an estimated assessment of accrued but unpaid taxes up to the Petition Date.  Pursuant to the Proposed Order, the Debtors request authority, but not direction, to pay all remaining prepetition Property Taxes as such taxes come due and to pay any postpetition amounts that become due and owing in the ordinary course during these cases.  To the extent there are any other amounts of Property Taxes that relate to the prepetition period

that become due and owing postpetition, the Debtors request authority, but not direction, to pay such amounts in the ordinary course during these cases.

**C.    Sales and Use Taxes**

16.    In the ordinary course of business, the Debtors incur or collect various state and local sales taxes (the "**Sales Taxes**") in connection with the sale or purchase of certain taxable goods or services, such as equipment purchases. Sales Taxes are charged at the point of sale of goods and services, as a percentage of the goods or services purchased.

17.    The Debtors incur use taxes on account of the purchase of goods or services used in the ordinary course of business in the jurisdiction in which they operate (collectively, the "**Use Taxes**" and, together with the Sales Taxes, the "**Sales and Use Taxes**"). The Use Taxes typically arise if a supplier does not have business operations in the state in which it supplies goods or services and, therefore, does not charge sales tax on goods or services that are otherwise taxable to the purchaser.

18.    The Debtors are required to remit Sales and Use Taxes to the relevant Taxing Authorities on a monthly basis. On average, the Debtors remit approximately $10,000 each month in aggregate Sales and Use Taxes. As of the Petition Date, the Debtors estimate they have accrued approximately $2.8 million in prepetition Sales and Use Taxes that will become due and owing during these cases, with approximately $10,000 coming due within the thirty (30) days following the Petition Date.[7] Pursuant to the Proposed Order, the Debtors request authority, but not direction, to pay all remaining prepetition Sales and Use Taxes as such taxes come due and to pay any postpetition amounts that become due and owing in the ordinary course during these cases. To the extent there are any other amounts of Sales and Use Taxes that relate to the prepetition

---

[7] The estimated amount of Sales and Use Taxes includes a contested tax liability amount of approximately $2.8 million owed to the Kentucky Department of Revenue.

period that become due and owing postpetition, the Debtors request authority, but not direction, to pay such amounts in the ordinary course during these cases.

**D.     Fees and Assessments**

19.     Federal laws and state and local laws in the jurisdictions in which the Debtors operate may require the Debtors to pay fees for a wide range of licenses, permits, obligations, and other assessments required to conduct the Debtors' business (the "**Fees and Assessments**").  The Debtors also pay a variety of other Fees and Assessments relating to equipment importation duties and fees, the majority of which include fees and assessments to the U.S. Customs and Border Protection Agency.[8]  The methods for calculating Fees and Assessments, and the deadlines for paying such amounts, vary by type of Fee and Assessment and/or by jurisdiction.

20.     On a monthly basis, the Debtors remit approximately $900,000 in aggregate Fees and Assessments to the applicable Taxing Authorities.  As of the Petition Date, the Debtors estimate that they have accrued approximately $3.6 million in aggregate Fees and Assessments relating to the period prior to the Petition Date, with approximately $1.5 million coming due within the thirty (30) days following the Petition Date.  Pursuant to the Proposed Order, the Debtors request authority, but not direction, to pay all remaining prepetition Fees and Assessments as such Fees and Assessments come due and to pay any postpetition amounts that become due and owing in the ordinary course during these cases.  To the extent there are any other amounts of Fees and Assessments that relate to the prepetition period that become due and owing postpetition, the

---

[8] The amount owed to the U.S. Customs and Border Protection Agency is in dispute.  The relief requested in this Motion includes a potential amount of $2.2 million owed to the U.S. Customs and Border Protection Agency, which the Debtors expect to settle for less.

Debtors request authority, but not direction, to pay such amounts in the ordinary course during these cases.

## Relief Requested Should Be Granted

21.     As set forth herein, the continued payment of Taxes and Fees, including any amounts due and owing on account of Taxes and Fees incurred prior to the Petition Date, is crucial to the continued operation of the Debtors' business.  To ensure continued compliance with applicable law and regulations, the Debtors request authority, but not direction, to pay prepetition Taxes and Fees as such Taxes and Fees come due and to pay any postpetition amounts that become due and owing in the ordinary course during these cases.  To the extent there are any other amounts of Taxes and Fees that relate to the prepetition period that become due and owing postpetition, the Debtors request authority, but not direction, to pay such amounts in the ordinary course during these cases.

22.     Ample reasons exist to authorize payment of the Taxes and Fees as set out herein and to grant related relief.  These reasons include among other things, that (i) failure to pay Taxes and Fees as they come due and owing in the ordinary course may interfere with the Debtors' continued operations and the success of these chapter 11 cases, (ii) certain of the prepetition Taxes and Fees may not be property of the Debtors' estates, (iii) failure to pay prepetition Taxes and Fees may increase the scope of secured and priority claims held by the applicable Taxing Authorities against the Debtors' estates, and (iv) payment of prepetition Taxes and Fees affects only the timing of payments as most, if not all, of the Taxes and Fees are afforded priority status under the Bankruptcy Code.  Moreover, the Court has authority to grant the requested relief under sections 105(a) and 363(b) of the Bankruptcy Code.

**A.      Failure to Pay Taxes May Interfere with Debtors' Continued Operations and Success of these Chapter 11 Cases**

23.      The Debtors seek to pay the Taxes and Fees, among other reasons, to prevent the Taxing Authorities from taking actions that may interfere with the Debtors' continued business operations.  Nonpayment of these obligations may cause Taxing Authorities to take precipitous action including, but not limited to, asserting liens or seeking to lift the automatic stay, and may cause Taxing Authorities to impose civil and/or criminal penalties or modify, suspend, or revoke licenses that are necessary to the Debtors' continued operations.  Such actions could materially disrupt the Debtors' day-to-day operations and impose significant costs on the Debtors' estates.  Failure to satisfy certain of the prepetition Taxes and Fees may jeopardize the Debtors' maintenance of good standing to operate in the jurisdictions in which they do business.

24.      Moreover, to the extent any prepetition Taxes and Fees remain unpaid by the Debtors, the Debtors' officers and directors may be subject to lawsuits or criminal prosecution during the pendency of these chapter 11 cases.  The dedicated and active participation of the Debtors' directors, officers, and other employees is not only integral to the Debtors' continued, uninterrupted operations, but also essential to the orderly administration of these chapter 11 cases. The threat of a lawsuit or criminal prosecution, and any ensuing liability, would distract the Debtors and their personnel from important tasks, to the detriment of all parties-in-interest. Accordingly, the proposed relief is in the best interests of the Debtors' estates.

**B.      Certain Funds Already Collected on Account of Prepetition Taxes May Not Be Property of Debtors' Estates**

25.      Additionally, certain funds collected on account of the Taxes and Fees may not be property of the estate, as they are collected from third parties and held in trust for payment to various Taxing Authorities.  Specifically, some of the prepetition Taxes and Fees may constitute

"trust fund" taxes, which the Debtors are required to collect and/or hold in trust for payment to the Taxing Authorities.  Section 541(d) of the Bankruptcy Code provides, in relevant part:

> Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate . . . only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

11 U.S.C. § 541(d).

26.     To the extent the Debtors have collected or hold Taxes and Fees in trust for payment to the Taxing Authorities, such funds may not constitute property of the Debtors' estates. *See, e.g.*, *Begier v. IRS*, 496 U.S. 53, 60–62 (1990) (holding that excise and withholding taxes are property held by a debtor in trust for another and, as such, are not property of the debtor's estate); *In re Megafoods Stores, Inc.*, 163 F.3d 1063, 1067–69 (9th Cir. 1998) (holding that, under Texas law, state sales taxes collected created statutory trust fund, if traceable, and were not property of the estate); *City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 96 (3d Cir. 1994) (finding that withholding taxes were subject to a trust); *Off. Comm. of Unsecured Creditors v. Columbia Gas Sys. Inc.* (*In re Columbia Gas Sys. Inc.*), 997 F.2d 1039, 1059–60 (3d Cir. 1993) (indicating that even if a statute does not establish an express trust, a constructive trust may be found); *Al Copeland Enters., Inc. v. Texas,* 991 F.2d 233, 234–35, 240 (5th Cir. 1993) (finding that debtors' prepetition collection of sales taxes and interest thereon held subject to trust and not property of estate); *In re Equalnet Commc'ns. Corp.*, 258 B.R. 368, 370 (Bankr. S.D. Tex. 2000) ("[C]ertain prepetition tax claims, such as sales taxes, could be trust fund claims."); *In re Am. Int'l Airways, Inc.*, 70 B.R. 102, 103 (Bankr. E.D. Pa. 1987) (holding that funds held in trust for federal excise and withholding taxes are not property of the debtor's estate).  The Debtors, therefore, generally do not have an equitable interest in such funds, and they should be permitted to pay those funds to the applicable Taxing Authorities as the related Taxes and Fees become due.

**C.      Failure to Pay Prepetition Taxes May Increase Scope of Secured and Priority Claims Held by Taxing Authorities**

27.      Payment of prepetition Taxes and Fees is also warranted here because the Debtors' nonpayment may increase the amount of secured claims held by Taxing Authorities against the Debtors' estates.  Specifically, Taxing Authorities may assert liens against any personal property for which the Taxes and Fees are due and owing.  Arguably, the relation back of a tax lien to the assessment or tax status date generally does not affect the enforceability of the tax lien against a debtor or violate the automatic stay imposed by section 362(a) of the Bankruptcy Code. *See* 11 U.S.C. § 362(b)(3).  In fact, the creation and perfection of such a lien may not violate the automatic stay if the lien arises under applicable law for taxes that become due after the Petition Date even if they relate to the prepetition period.  *See id.* § 362(b)(18) (providing that the automatic stay does not apply to "the creation or perfection of a statutory lien for an ad valorem property tax, or a special tax or special assessment on real property whether or not ad valorem, imposed by a governmental unit, if such tax or assessment comes due after the date of the filing of the petition").

28.      To the extent the Taxing Authorities hold oversecured claims, if the prepetition Taxes and Fees are not paid, postpetition interest, fees, penalties, and other charges may accrue.  *See* 11 U.S.C. § 506(b); *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241– 43 (1989) (holding that nonconsensual lienholders may receive interest on their claims under section 506(b) of the Bankruptcy Code).  Even if these Taxes and Fees are not treated as secured claims, they may still, as discussed below, be entitled to priority treatment, as may any penalties assessed by the applicable Taxing Authorities on delinquent taxes owed by the Debtors.  *See* 11 U.S.C. § 507(a)(8).  The Debtors' failure to pay prepetition Property Taxes thus may increase the amount of priority claims held by the Taxing Authorities against the Debtors' estates.

29.     Paying the prepetition Taxes and Fees now will avoid the potential imposition of liens and the accrual of interest charges and unnecessary fees and penalties on such claims, thereby preserving the value of the Debtors' estates and maximizing the distribution available for other creditors.

**D.     Paying Prepetition Taxes Will Affect Only Timing of Payments**

30.     Most, if not all, of the Taxes and Fees described herein are afforded priority status pursuant to section 507(a)(8) of the Bankruptcy Code.  *See* 11 U.S.C. § 507(a)(8)(A) (affording priority status for "a tax on or measured by income or gross receipts for a taxable year ending on or before the date of the filing of the petition"); *id.* § 507(a)(8)(B) (affording priority status for  "a property tax incurred before the commencement of the case and last payable without penalty after one year before the date of the filing of the petition"); *id.* § 507(a)(8)(C) (affording priority status for "a tax required to be collected or withheld and for which the debtor is liable in whatever capacity"); *id*. § 507(a)(8)(E) (affording priority status for "an excise tax on . . . a transaction occurring before the date of the filing of the petition"); *id.* § 507(a)(8)(G) (affording priority status for "a penalty related to a claim of a kind specified in this paragraph and in compensation for actual pecuniary loss").  Thus, payment of such Taxes and Fees would give the Taxing Authorities no more than that to which they otherwise would be entitled to under a chapter 11 plan, which will save the Debtors the potential interest expense, legal expense, and penalties that otherwise might accrue on, or be incurred in connection with, such Taxes and Fees.

31.     Courts frequently authorize early payment of priority claims when such early payment is intended to prevent some harm or to procure some benefit for the estate.  *See, e.g.*, *Equalnet Commc'ns*, 258 B.R. at 370 (stating that court may authorize pre-plan payment of priority claims, including certain tax claims, because "[t]he need to pay these claims in an ordinary course of business time frame is simple common sense"); *In re CEI Roofing, Inc.*, 315 B.R. 50,

60–61 (Bankr. N.D. Tex. 2004) (finding that authorization of early payment of priority claims does not trigger concerns of either upsetting priority scheme of Bankruptcy Code or of unfair discrimination); *In re CoServ, L.L.C.*, 273 B.R. 487, 493–94 (Bankr. N.D. Tex. 2002) (implying that bankruptcy court may authorize early payment of prepetition priority claims in instances where nonpayment could impair debtor's ability to operate).

32.     To the extent the prepetition Taxes and Fees are priority claims, they must be paid in full under any plan of reorganization before any general unsecured obligations of the Debtors may be satisfied.   Sufficient assets exist to pay all the prepetition Taxes and Fees. Accordingly, the proposed relief will affect only the timing of payment of prepetition Taxes and Fees and will not prejudice the rights of any general unsecured creditor or other party-in-interest. Therefore, the Court should grant the Debtors authority to pay the prepetition Taxes and Fees in the ordinary course.

**E.    Court Has Authority to Grant Requested Relief Under Sections 363 and 105(a) of the Bankruptcy Code**

33.     The payment of Taxes and Fees constitutes an ordinary course transaction. Section 363(c)(1) of the Bankruptcy Code authorizes a debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing."   11 U.S.C. § 363(c)(1). The purpose of section 363(c)(1) of the Bankruptcy Code is to provide the debtor in possession with the flexibility to engage in the ordinary transactions required to operate its business without unneeded oversight by its creditors or the court.   *See In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992) ("Section 363 is designed to strike [a] balance, allowing a business to continue its daily operations without excessive court or creditor oversight and protecting secured creditors and

others from dissipation of the estate's assets." (alteration in original)); *Med. Malpractice Ins. Ass'n v. Hirsch (In re Lavigne)*, 114 F.3d 379, 384 (2d Cir. 1997) (same).

34.     The Court may grant the relief requested herein pursuant to section 363 of the Bankruptcy Code, which provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Courts in the Fifth Circuit have granted a debtor's request to use property of the estate outside of the ordinary course of business pursuant to section 363(b) of the Bankruptcy Code upon a finding that such use is supported by sound business reasons. *See, e.g., In re BNP Petroleum Corp.*, 642 F. App'x 429, 435 (5th Cir. 2016); *In re Cont'l Air Lines*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or a debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business."); *see also In re Crutcher Res. Corp.*, 72 B.R. 628, 631 (Bankr. N.D. Tex. 1987) ("A Bankruptcy Judge has considerable discretion in approving a § 363(b) sale of property of the estate other than in the ordinary course of business, but the movant must articulate some business justification for the sale."); *In re Terrace Gardens Park P'ship*, 96 B.R. 707, 714 (Bankr. W.D. Tex. 1989).

35.     In addition, under section 1107(a) of the Bankruptcy Code, a debtor has, among other things, the "implied duty of the debtor-in-possession to 'protect and preserve the estate, including an operating business' going-concern value.'" *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002)). Under section 105(a) of the Bankruptcy Code, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." *See CoServ*, 273 B.R. at 497 (holding that sections 105 and 1107 of the Bankruptcy Code provide

authority for a debtor-in-possession to pay prepetition claims); *see also In re Tusa-Expo Holdings, Inc.*, Case No. 08-45057-DML-11, 2008 WL 4857954, at *1 (Bankr. N.D. Tex. Nov. 7, 2008); *CEI Roofing*, 315 B.R. at 56; *In re Mirant Corp.*, 296 B.R. 427 (Bankr. N.D. Tex. 2003). Moreover, Bankruptcy Rule 6003 itself implies that the payment of prepetition obligations may be permissible within the first 21 days of a case where doing so is "necessary to avoid immediate and irreparable harm." Accordingly, the Bankruptcy Code authorizes the postpetition payment of prepetition claims where, as here, such payments are critical to preserving the going-concern value of a debtor's estate.

36.     Payment of the Taxes and Fees is an exercise of sound business judgment and is necessary to permit a successful reorganization, and such payments are necessary to avoid obstacles to a smooth transition into and ultimately out of these chapter 11 cases. Significant disruptions of the Debtors' operations of the types described above threaten to irreparably impair the Debtors' ongoing and essential relationships with regulators involved in every aspect of the Debtors' business and threaten to limit or prevent entirely the Debtors ability to transact with counterparties in the ordinary course of business, all of which would undoubtedly impair the Debtors' ability to reorganize successfully.

37.     For the foregoing reasons, granting Debtors the authority to pay prepetition Taxes and Fees and continue paying postpetition Taxes and Fees as they come due and owing in the ordinary course during these cases is necessary, appropriate, and in the best interests of the Debtors, their estates, and all other parties-in-interest in these cases. Courts in this district have approved comparable motions in similar cases. *See, e.g.*, *In re Talen Energy Supply, LLC*, Case No. 22-90054 (MI) (Bankr. S.D. Tex. May 20, 2022) (Docket No. 460); *In re Basic Energy Servs., Inc.*, Case No. 21-90002 (DRJ) (Bankr. S.D. Tex. Aug. 17, 2021) (Docket No. 46); *In re CBL &*

*Assocs. Props., Inc.*, Case No. 20-35226 (DRJ) (Bankr. S.D. Tex. Nov. 2, 2020) (Docket No. 68);

*In re Fieldwood Energy LLC*, Case No. 20-33948 (MI) (Bankr. S.D. Tex. Aug. 5, 2020) (Docket

No. 60) *In re CEC Ent., Inc.*, No. 20-33163 (MI) (Bankr. S.D. Tex. June 29, 2020) (Docket No.

110).  Similar relief is appropriate here.

38.     Accordingly, the Court should authorize the Debtors to pay Taxes and Fees

that become due and owing in the ordinary course during these cases.

**Applicable Financial Institutions**
**Should Be Authorized to Receive, Process, Honor, and**
**Pay Checks Issued and Transfers Requested to Pay Prepetition Taxes**

39.     The Debtors further request that the Court authorize applicable financial

institutions (the "**Banks**") to receive, process, honor, and pay any and all checks issued, or to be

issued, and electronic funds transfers requested, or to be requested, by the Debtors relating to the

prepetition Taxes and Fees, to the extent that sufficient funds are on deposit in available funds in

the applicable bank accounts to cover such payment.  The Debtors also seek authority to issue new

postpetition checks or effect new postpetition electronic funds transfers in replacement of any

checks or fund transfer requests on account of prepetition Taxes and Fees dishonored or rejected

as a result of the commencement of the Debtors' chapter 11 cases.

**Bankruptcy Rule 6003(b) Has Been Satisfied**

40.     Pursuant to Bankruptcy Local Rule 9013-1, the Debtors respectfully request

emergency consideration of this Motion under Bankruptcy Rule 6003, which provides that the

Court may grant relief within the first twenty-one (21) days after the Petition Date to the extent

such relief is necessary to avoid immediate and irreparable harm.  As described herein and in the

Bros Declaration, the relief requested is essential to avoid the immediate and irreparable harm that

would be caused by the Debtors' inability to transition smoothly into chapter 11.  Accordingly, the

Debtors submit that the requirements of Bankruptcy Rule 6003 are satisfied.

**Compliance with Bankruptcy Rule 6004(a)**
**and Waiver of Bankruptcy Rule 6004(h)**

41.     To implement the foregoing successfully, the Debtors request that the Court find that notice of the Motion satisfies Bankruptcy Rule 6004(a) and that the Court waive the 14-day period under Bankruptcy Rule 6004(h).

**Reservation of Rights**

42.     Nothing contained herein is intended to be or shall be deemed as (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver or limitation of the Debtors' or any party in interest's rights to dispute the amount of, basis for, or validity of any claim, (iii) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable nonbankruptcy law, (iv) an agreement or obligation to pay any claims, (v) a waiver of any claims or causes of action which may exist against any creditor or interest holder, (vi) an admission as to the validity of any liens satisfied pursuant to this Motion, or (vii) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code.  Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' or any other party in interest's rights to dispute such claim subsequently.

**Notice**

43.     Notice of this Motion will be served on any party entitled to notice pursuant to Bankruptcy Rule 2002 and any other party entitled to notice pursuant to Bankruptcy Local Rule 9013-1(d).

## **No Previous Request**

44.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

[*Remainder of page intentionally left blank*]

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated:  December 21, 2022
       Houston, Texas

Respectfully submitted,

_/s/  Alfredo R. Pérez_____
WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (15776275)
700 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone:  (713) 546-5000
Facsimile:  (713) 224-9511
Email:   Alfredo.Perez@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Ray C. Schrock, P.C. (*pro hac vice* pending)
Ronit J. Berkovich (*pro hac vice* pending)
Moshe A. Fink (*pro hac vice* pending)
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Email:   Ray.Schrock@weil.com
        Ronit.Berkovich@weil.com
        Moshe.Fink@weil.com

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

**<u>Certificate of Service</u>**

I hereby certify that on December 21, 2022, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

_/s/  Alfredo R. Pérez_____
Alfredo R. Pérez
