**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| | § | |
| In re: | § | **Chapter 11** |
| | § | |
| **CORE SCIENTIFIC, INC., *et al.,*** | § | **Case No. 22-90341 (DRJ)** |
| | § | |
| | § | **(Joint Administration Requested)** |
| Debtors.[1] | § | **(Emergency Hearing Requested)** |
| | § | |

**EMERGENCY MOTION OF**
**THE DEBTORS PURSUANT TO SECTIONS 362 AND 105(a)**
**OF THE BANKRUPTCY CODE FOR INTERIM AND FINAL**
**ORDERS ESTABLISHING NOTIFICATION PROCEDURES AND**
**APPROVING RESTRICTIONS ON (A) CERTAIN TRANSFERS**
**OF INTERESTS IN THE DEBTORS, AND**
**(B) CLAIMING OF CERTAIN WORTHLESS STOCK DEDUCTIONS**

---

**EMERGENCY RELIEF HAS BEEN REQUESTED. RELIEF IS REQUESTED NOT LATER THAN THE MORNING OF THURSDAY, DECEMBER 22, 2022.**

**IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST APPEAR AT THE HEARING IF ONE IS SET, OR FILE A WRITTEN RESPONSE PRIOR TO THE DATE THAT RELIEF IS REQUESTED IN THE PRECEDING PARAGRAPH. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

---

Core Scientific, Inc. ("**Core**") and its debtor affiliates in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"), respectfully represent as follows in support of this motion (the "**Motion**"):

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (N/A); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisitions, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions, VII, LLC (3198). The Debtors' corporate headquarters and service address is 210 Barton Springs Road, Suite 300, Austin, Texas 78704.

## Background

1.      On the date hereof (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").   The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee of creditors has been appointed in these chapter 11 cases.   The Debtors have filed a motion requesting joint administration of their chapter 11 cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 1015-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Local Rules**").

2.      The Debtors, together with their non-debtor affiliates (collectively, the "**Company**"), are one of the largest blockchain infrastructure, hosting provider, and digital asset mining companies in North America, with fully operational data centers in Georgia, Kentucky, North Carolina, North Dakota, and Texas.

3.      Additional information regarding the Debtors' business and capital structure and the circumstances leading to the commencement of these chapter 11 cases is set forth in the De*claration of Michael Bros in Support of the Debtors' Chapter 11 Petitions and First Day Relief*, (the "**Bros Declaration**"),[2]   which has been filed with the Court contemporaneously herewith and is incorporated by reference herein.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bros Declaration.

**Jurisdiction**

4.     The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**Relief Requested**

5.     By this Motion, pursuant to sections 105(a) and 362 of title 11 of the Bankruptcy Code, the Debtors request entry of interim and final orders authorizing the Debtors to establish procedures (as annexed to the proposed form of interim order as "Interim Order Exhibit 1" and to the proposed form of final order as "Final Order Exhibit 1," collectively, the "**Procedures**") to protect the potential value of the  Debtors' carryforwards of consolidated net operating losses ("**NOLs**"), and certain other tax benefits (including certain state tax attributes) (collectively, the "**Tax Attributes**") for use during the pendency of these chapter 11 cases and in connection with the reorganization of the Debtors.

6.     The Procedures apply to the beneficial ownership (including direct and indirect ownership) of common stock of Core ( "**Core Stock**"), and any options or similar rights (within the meaning of applicable U.S. Treasury regulations) to acquire beneficial ownership of such stock ("**Options**"), as well as to any claim (for U.S. federal income tax reporting purposes) of a worthlessness deduction under section 165 of title 26 of the United States Code (the "**Tax Code**") by a Majority Holder (as defined herein) with respect to the beneficial ownership of Core Stock (a "**Worthless Stock Deduction**").

7.     A proposed form of order granting the relief requested herein on an interim basis (the "**Proposed Interim Order**") is annexed hereto as **Exhibit A**.  A proposed form of order granting the relief requested on a final basis (the "**Proposed Final Order**" and together with the Proposed Interim Order, the "**Proposed Orders**") is annexed hereto as **Exhibit B**.

**Factual Section Relating to Tax Attributes**

8.      The Debtors have significant Tax Attributes. As of December 31, 2021, the Debtors reported NOLs of approximately $128 million (most of which is attributable to its 2021 taxable year). The Debtors expect the amount of their NOLs to increase by at least $500 million as a result of operations for their 2022 taxable year. The Tax Attributes are valuable assets of the Debtors' estates.  The Tax Code generally permits a corporation to carry forward its NOLs to reduce future taxable income, thereby reducing such corporation's tax liability in future periods. *See* 26 U.S.C. § 172.  Accordingly, absent any intervening limitations and depending on future operating results, the Tax Attributes are available to offset the income realized through the taxable year that includes the effective date of a chapter 11 plan and potentially thereafter (subject to reduction in part due to the discharge of claims and to the additional limitations discussed below). Accordingly, absent any intervening limitations and depending upon future operating results and the consequences of the restructuring, the Tax Attributes could translate into future tax savings over time and any such savings could enhance the Debtors' cash position for the benefit of all parties in interest and contribute to the Debtors' efforts toward a successful reorganization.

9.      The Debtors' ability to use the Tax Attributes to reduce future tax liability is subject to certain statutory limitations.  Sections 382 and 383 of the Tax Code limit a corporation's ability to use its Tax Attributes to offset future income and tax liability after the corporation has undergone an "ownership change" within the meaning of section 382 of the Tax Code (and such ownership change, an "**Ownership Change**").  Pursuant to section 382 of the Tax Code, an Ownership Change generally occurs when the percentage of a corporation's equity held by its "5-percent shareholders" (as that term is used in section 382 of the Tax Code, a "**5-Percent Shareholder**") increases by more than fifty (50) percentage points above the lowest percentage of ownership owned by such shareholder(s) at any time during the relevant testing period (generally

three years, or if shorter, since the corporation last had an Ownership Change, which in the present instance occurred on July 30, 2021). *See id.* § 382(g).

10. Further, section 382(g)(4)(D) of the Tax Code generally provides that, if (a) a 50-percent shareholder (which includes a person who beneficially owns or owned, as determined for tax purposes, at least fifty percent (50%) of the stock by value at any time during the applicable three-year period)[3] in a corporation claims a worthlessness deduction with respect to such stock during any taxable year and (b) the stock with respect to which such worthlessness deduction is taken is beneficially owned by the holder at the end of such holder's taxable year, then the holder is treated as newly acquiring its beneficial ownership of such stock on the first day of the holder's next taxable year and is treated as never having owned such beneficial ownership during any prior year for purposes of testing whether an Ownership Change has occurred. Thus, an Ownership Change may occur when a 50-percent shareholder claims a worthlessness deduction with respect to its beneficial ownership of stock of a corporation.

11. The Debtors believe that they have significant Tax Attributes that would be adversely affected (and could be effectively eliminated) by an Ownership Change during the pendency of these cases. If such an Ownership Change occurs, the valuation for determining the annual amount of useable Tax Attributes is expected to be at or close to zero, which may effectively eliminate the availability of such Tax Attributes. It is therefore in the best interests of the Debtors and their stakeholders to restrict both transfer of the beneficial ownership of Core Stock and any claim of a Worthless Stock Deduction by a Majority Holder (as defined below) that could result in an Ownership Change *before* the effective date of a chapter 11 plan or other applicable

---

[3] Such three-year period is separate from, and irrespective of, the duration of the testing period for Ownership Change purposes.

5

bankruptcy court order.  Such a restriction would protect the Debtors' ability to use the Tax Attributes during the pendency of these chapter 11 cases and in connection with any reorganization. Use of the Tax Attributes could protect against the incurrence of tax liability that could otherwise be significant in amount.

12.      Although, as described below, the limitations imposed by section 382 of the Tax Code may be significantly lessened when an Ownership Change occurs pursuant to a confirmed chapter 11 plan (or applicable court order), the benefits of a confirmed plan (or court order) would not be applied retroactively to reduce limitations on Tax Attributes imposed by a *previous* Ownership Change.  *See* sections 382(l)(5), (6) of the Tax Code.  Accordingly, pursuant to this Motion, the Debtors seek to put in place in the Proposed Orders procedures in order to monitor and potentially restrict (i) acquisitions, dispositions and trading with respect to the beneficial ownership (including direct and indirect ownership) of Core Stock and Options to acquire beneficial ownership of Core Stock, and (ii) the claiming of a Worthless Stock Deduction by any Majority Holder with respect to its beneficial ownership of Core Stock.

**Restrictions Relating to Core Stock Ownership, Acquisition, and Disposition**

13.      By establishing procedures for monitoring and restricting the transfer of any beneficial ownership of Core Stock, and the claiming of a Worthless Stock Deduction by any Majority Holders with respect to their beneficial ownership of Core Stock, the Debtors can preserve their ability to seek the necessary relief at the appropriate time if it appears that transfers of such Core Stock may jeopardize the Debtors' ability to benefit from their Tax Attributes. Therefore, the Debtors propose the following notice, restrictions, and other procedures regarding ownership and transfers of Core Stock (the "**Stock Procedures**"):

(a) <u>Definitions Relating to Trading in Stock</u>.  For purposes of these Procedures, the following terms have the following meanings:

(1) <u>Beneficial Ownership</u>. "**Beneficial ownership**" (and any variation thereof including "beneficially owns") of Core Stock and Options to acquire beneficial ownership of Core Stock shall be determined in accordance with applicable rules under section 382 of the Tax Code, Treasury Regulations and rulings issued by the Internal Revenue Service (the "**IRS**"), and as provided herein, thus, shall include, without limitation, (i) direct and indirect ownership of Core Stock, without regard to any rule that treats stock of an entity as to which the constructive ownership rules apply as no longer owned by that entity (*e.g.*, a holding company would be considered to beneficially own all stock owned or acquired by its subsidiaries), (ii) ownership by a holder's family members, and (iii) any group of persons acting pursuant to a formal or informal understanding to make a coordinated acquisition of stock. Further, to the extent set forth in Treasury Regulations section 1.382-4, the ownership of an Option to acquire beneficial ownership of Core Stock shall be treated as the beneficial ownership of Core Stock.

(2) <u>Entity</u>. "**Entity**" shall mean any "entity" as such term is defined in Treasury Regulations section 1.382-3(a), including a group of persons who have a formal or informal understanding among themselves to make a coordinated acquisition of stock.

(3) <u>Majority Holder.</u> "**Majority Holder**" shall mean any person that either (i) beneficially owned at any time since December 31, 2019 Core Stock representing approximately 47.5% of the then outstanding shares of Core Stock, (ii) beneficially owned at any time at least 47.5% of the then outstanding shares of Core Series A preferred stock and of Series B preferred stock that were outstanding prior to January 19, 2022, or (iii) would be a "50-percent shareholder" (within the meaning of section 382(g)(4)(D) of the Tax Code) of Core Stock if such person claimed a Worthless Stock Deduction on its federal income tax return at any time on or after the Petition Date.

(4) <u>Substantial Stockholder.</u> "**Substantial Stockholder**" shall mean any person or Entity that beneficially owns at least 17,700,000 shares of Core Stock (representing approximately 4.75% of all issued and outstanding Core Stock as of the Petition Date). For the avoidance of doubt, by operation of the definition of Beneficial Ownership, an owner of an Option to acquire beneficial ownership of Core Stock may be treated as the owner of such Core Stock.

(5) <u>Worthless Stock Deduction</u>. "**Worthless Stock Deduction**" shall mean any claim (for U.S. federal income tax reporting purposes) of a worthlessness deduction under section 165 of the Tax Code with respect to the beneficial ownership of Core Stock.

(b) <u>Notice of Substantial Ownership</u>. Any person or Entity that beneficially owns, at any time on or after the Petition Date, Core Stock in an amount sufficient to qualify such person or Entity as a Substantial Stockholder shall file with the Bankruptcy Court, and serve upon (the following, collectively, the "**Disclosure Parties**") (i) Core Scientific, Inc., 210 Barton Springs Road, Suite 300, Austin, Texas 78704 (Attn: Todd DuChene), (ii) the proposed attorneys for the Debtors, Weil, Gotshal & Manges LLP, (x) 767 Fifth Avenue, New York, NY 10153 (Attn: Ray C. Schrock, P.C., Ronit J. Berkovich, Esq., Moshe A. Fink, Esq.) and (y) 700 Louisiana Street, Suite 1700, Houston, Texas 77002 (Attn: Alfredo R. Pérez), (iii) counsel to the

Ad Hoc Group,[4] Paul Hastings LLP, 200 Park Avenue, New York, New York 10166 (Attn: Kristopher M. Hansen, Esq., Sayan Bhattacharyya, Esq.), (iv) the attorneys for any statutory committee of unsecured creditors appointed in these cases (the "**Creditors' Committee**") and (v) a Notice of Substantial Ownership (a "**Substantial Stock Ownership Notice**"), in substantially the form annexed to the Proposed Orders as **Exhibit 2**, which describes specifically and in detail the person's or Entity's beneficial ownership of Core Stock, on or before the date that is the later of:  (x) twenty (20) calendar days after the entry of the Interim Order, and (y) ten (10) business days after that person or Entity qualifies as a Substantial Stockholder.  At the election of the Substantial Stockholder, the Substantial Stock Ownership Notice to be filed with this Court (but not the Substantial Stock Ownership Notice that is served upon the Disclosure Parties) may be redacted to exclude the Substantial Stockholder's taxpayer identification number and the amount of Core Stock that the Substantial Stockholder beneficially owns.

(c)     Acquisition of Core Stock.  At least twenty (20) business days prior to the proposed date of any transfer in the beneficial ownership of Core Stock (including directly or indirectly, and including the grant or acquisition of Options, to acquire beneficial ownership of such stock), or exercise of any Option to acquire beneficial ownership of Core Stock, that would result in an increase in the amount of Core Stock beneficially owned by any person or Entity that currently is or that would result in a person or Entity becoming a Substantial Stockholder (a "**Proposed Acquisition Transaction**"), such person, Entity or Substantial Stockholder (a "**Proposed Transferee**") shall file with the Bankruptcy Court, and serve upon the Disclosure Parties, a Notice of Intent to Purchase, Acquire, or Otherwise Accumulate Core Stock (an "**Acquisition Notice**"), in the form annexed to the Proposed Order as **Exhibit 3**, which describes specifically and in detail the Proposed Acquisition Transaction.  At the election of the Proposed Transferee, the Acquisition Notice to be filed with this Court (but not the Acquisition Notice that is served upon the Disclosure Parties) may be redacted to exclude the Proposed Transferee's taxpayer identification number and the amount of Core Stock that the Proposed Transferee beneficially owns.

(d)     Disposition of Core Stock.  At least twenty (20) business days prior to the proposed date of any transfer or other disposition in the beneficial ownership of Core Stock (including directly and indirectly, and including Options to acquire beneficial ownership of Core Stock) that would result in either a decrease in the amount of Core Stock beneficially owned by a Substantial Stockholder or that would result in a person or Entity ceasing to be a Substantial Stockholder (a "**Proposed Disposition Transaction**," and together with a Proposed Acquisition Transaction, a "**Proposed Transaction**"), such person, Entity, or Substantial Stockholder (a "**Proposed Transferor**") shall file with the Bankruptcy Court, and serve upon the Disclosure Parties, a Notice of Intent to Sell, Trade, or Otherwise Transfer Core Stock (a "**Disposition Notice**", and together with an Acquisition Notice, an "**Trading Notice**"), in the form annexed to

---

[4] The term "**Ad Hoc Group**" is defined as that ad hoc group of holders of secured convertible notes, issued pursuant to (i) the Secured Convertible Note Purchase Agreement by and among Core Scientific Holding Inc., as issuer, the guarantors, the initial purchasers, the additional purchasers, and U.S. Bank National Association, as note agent and collateral agent, dated as of April 19, 2021, as supplemented or amended from time to time and/or (ii) the Convertible Note Purchase Agreement by and among Core Scientific Holding Inc., as issuer, the guarantors, the initial purchasers, the additional purchasers, and U.S. Bank National Association, as note agent and collateral agent, dated as of August 20, 2021, as supplemented or amended from time to time.

the Interim Order as **Exhibit 4**, which describes specifically and in detail the proposed transaction in which Core Stock would be transferred.  At the election of the Proposed Transferor, the Disposition Notice to be filed with this Court (but not the Disposition Notice that is served upon the Disclosure Parties) may be redacted to exclude the Proposed Transferor's taxpayer identification number and the amount of Core Stock that the Proposed Transferor beneficially owns.

(e)     Notice of Intent to Claim a Worthless Stock Deduction.  At least twenty (20) business days before a Majority Holder files any federal income tax return, or any amendment to such a return, claiming a Worthless Stock Deduction for a tax year of the Majority Holder ending on or before the effective date of a chapter 11 plan of reorganization for the Debtors, such Majority Holder shall file with this Court and serve upon the Disclosure Parties advanced written notice of the intended tax deduction (a "**Worthless Stock Deduction Notice**"), in substantially the form annexed to the Proposed Orders as **Exhibit 5**.  At the election of the Majority Holder, the Worthless Stock Deduction Notice to be filed with this Court (but not the Worthless Stock Deduction Notice that is served upon the Disclosure Parties) may be redacted to exclude the Majority Holder's taxpayer identification number and the amount of Core Stock that the Proposed Transferor beneficially owns.

(f)     Objection Procedures.  The Debtors, the Ad Hoc Group and the Creditors' Committee shall have fifteen (15) business days after the filing of a Trading Notice or Worthless Stock Deduction Notice (the "**Objection Period**") to file with the Bankruptcy Court and serve on a Proposed Transferee or a Proposed Transferor, as the case may be, an objection (an "**Objection**") to any Proposed Transaction described in such Trading Notice or any Worthless Stock Deduction described in such Worthless Stock Deduction Notice.  If the Debtors, the Ad Hoc Group or the Creditors' Committee file an Objection by the expiration of the Objection Period (the "**Objection Deadline**"), then the Proposed Transaction shall not be effective unless approved by a final and non-appealable order of the Bankruptcy Court.  If the Debtors do not file an Objection by the Objection Deadline or if the Debtors provide written authorization to the Proposed Transferee or the Proposed Transferor, as the case may be, or the Majority Holder, as applicable, approving the Proposed Transaction or Worthless Stock Deduction prior to the Objection Deadline, then such Proposed Transaction or Worthless Stock Deduction may proceed solely as specifically described in the applicable Trading Notice or Worthless Stock Deduction Notice.  Any further Proposed Transaction or Worthless Stock Deduction must be the subject of an additional Trading Notice or Worthless Stock Deduction Notice and Objection Period. To the extent that a Trading Notice or Worthless Stock Deduction Notice is filed and the Debtors determine in their business judgment not to object to the Proposed Transaction described in such Trading Notice or Worthless Stock Deduction described in such Worthless Stock Deduction Notice, as applicable, the Debtors shall provide notice of such determination as soon as is reasonably practicable (and in any event no later than five (5) business days before the Objection Deadline, the Debtors shall provide the status of such determination) to counsel to the Ad Hoc Group.

(g)     Noncompliance with the Procedures.  Any acquisition, disposition, or trading in the beneficial ownership of, or claiming of a Worthless Stock Deduction with respect to, Core Stock (including directly and indirectly, and Options to acquire beneficial ownership of Core Stock) in violation of the Stock Procedures shall be null and void *ab initio* pursuant to the Bankruptcy Court's equitable powers under section 105(a) of the Bankruptcy Code and as an act

in violation of the automatic stay under section 362 of the Bankruptcy Code.  Furthermore, any person or Entity that acquires, disposes of, or trades in the beneficial ownership of, or claims a Worthless Stock Deduction with respect to, Core Stock (including directly and indirectly, and Options to acquire beneficial ownership of Core Stock) in violation of the Stock Procedures shall be subject to sanctions as provided by law.

(h)     Debtors' Right to Waive.  The Debtors may, in consultation with the Ad Hoc Group, waive, in writing, any and all of the foregoing restrictions, stays, and notification procedures.

## THE RELIEF REQUESTED SHOULD BE GRANTED

**A.     The Automatic Stay Bars Any Equity Transfer That Would Diminish or Limit the Debtors' Interests in the Tax Attributes**

14.     In furtherance of the automatic stay provisions of section 362 of the Bankruptcy Code and pursuant to section 105 of the Bankruptcy Code, the Debtors seek authority to monitor and approve (or disapprove) certain changes in the beneficial ownership of, and certain Worthless Stock Deduction claims by a Majority Holder with respect to its beneficial ownership of, Core Stock to protect against the occurrence of an Ownership Change during the pendency of these chapter 11 cases and thereby to preserve the potential value of the Tax Attributes.

15.     Section 362 of the Bankruptcy Code enjoins all entities from, among other things, taking any action to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate.  11 U.S.C. § 362(a)(3).  Section 541 of the Bankruptcy Code defines "property of the estate" to include all legal or equitable interests of the debtor in property as of the Petition Date and includes the Tax Attributes.  11 U.S.C. § 541.

16.     The Tax Attributes are valuable property of the Debtors' estates and thus are protected, by operation of the automatic stay, from actions that would adversely diminish or eliminate their value, including direct or indirect transfers that would result in an Ownership Change.  It is well established that a debtor's NOLs are property of the debtor's estate protected by the automatic stay.  *See Off. Comm. of Unsecured Creditors v. PSS S.S. Co. (In re Prudential*

*Lines Inc.)*, 928 F.2d 565, 574 (2d Cir. 1991) ("[W]here a non-debtor's action with respect to an interest that is intertwined with that of a bankrupt debtor would have the legal effect of diminishing or eliminating property of the bankrupt estate, such action is barred by the automatic stay."); *Nisselson v. Drew Indus., Inc. (In re White Metal Rolling & Stamping Corp.)*, 222 B.R. 417, 424 (Bankr. S.D.N.Y. 1998) ("It is beyond peradventure that NOL carrybacks and carryovers are property of the estate of the loss corporation that generated them." (citing *Off. Comm. of Unsecured Creditors v. PSS S.S. Co. (In re Prudential Lines, Inc.),* 928 F.2d 565, 571-73 (2d Cir. 1991)); *In re Grossman's Inc.*, No. 97-695 (PJW), 1997 WL 33446314 (Bankr. D. Del. Oct. 9, 1997).   The United States Court of Appeals for the Second Circuit, in its seminal decision, *In re Prudential Lines Inc.*, affirmed the application of the automatic stay to a debtor's tax benefits and upheld a permanent injunction prohibiting a parent corporation from taking a worthless stock deduction that would have adversely affected the ability of the parent corporation's subsidiary to utilize its NOLs under the special relief provisions of section 382 of the Tax Code.   *See* 928 F.2d at 573.   As the Second Circuit stated:

> Including NOL carryforwards as property of a corporate debtor's estate is consistent with congress' intention to "bring anything of value that the debtors have into the estate."   Moreover, . . . [i]ncluding the right to a NOL carryforward as property of [the debtor's] bankruptcy estate furthers the purpose of facilitating the reorganization of [the debtor].

*Id*. (quoting H.R. Rep. No. 95-595, at 176 (1978)) (internal citations omitted); *see also In re Fruehauf Trailer Corp.*, 444 F.3d 203 (3d Cir. 2006) ("Property of the estate 'includes all interests, such as . . . contingent interests and future interests, whether or not transferable by the debtor.'") (quoting *Prudential Lines*, 928 F.2d at 572); *Gibson v. United States (In re Russell)*, 927 F.2d 413, 417 (8th Cir. 1991) (concluding that the "right to carry forward the [debtor's] NOLs" was a "property interest" of the estate).

11

17.     In *Prudential Lines,* the Second Circuit determined that, if the parent were permitted to take a worthless stock deduction, it would have an adverse impact on the debtor subsidiary's ability to carry forward its NOLs.  Therefore, the Second Circuit noted that, "despite the fact that the [parent corporation's] action is not directed specifically at [the debtor subsidiary], it is barred by the automatic stay as an attempt to exercise control over property of the estate." *Prudential Lines*, 928 F.2d at 573-574.

18.     In addition to finding that a debtor's NOLs were protected by the stay, the Second Circuit also held that, pursuant to its equitable powers under section 105(a) of the Bankruptcy Code, the bankruptcy court could issue a permanent injunction to protect such NOLs. Because the NOLs were valuable assets of the debtor, the Second Circuit refused to disturb the bankruptcy court's decision preserving the debtor's right to apply its NOLs to offset income in future years. *Id*. at 574.

19.     In *In re Phar-Mor, Inc.*, 152 B.R. 924 (Bankr. N.D. Ohio 1993), the court applied similar reasoning and granted the debtors' motion to prohibit transfers of their stock that could have an adverse effect on their ability to use NOLs, even though the stockholders did not state any intent to sell their stock and the debtors did not show that there was a pending sale that would trigger the prescribed ownership change under section 382.  *See id.* at 927.  Despite the "ethereal" nature of the situation, the court observed that "[w]hat is certain is that the *NOL has a potential value, as yet undetermined*, which will be of benefit to creditors and will assist debtors in their reorganization process.  This asset is entitled to protection while debtors move forward toward reorganization."  *Id*. (emphasis added).

20.     The *Phar-Mor* court also concluded that, because the debtors were seeking to enforce the stay, they did not have to meet the more stringent requirements for preliminary injunctive relief:

> The requirements for enforcing an automatic stay under 11 U.S.C. § 362(a)(3) do not involve such factors as lack of an adequate remedy at law, or irreparable injury, or loss and a likelihood of success on the merits.  The key elements for a stay . . . are the existence of property of the estate and the enjoining of all efforts by others to obtain possession or control of property of the estate.

*Id.* at 926 (quoting *In re Golden Distribs., Inc.*, 122 B.R. 15, 19 (Bankr. S.D.N.Y. 1990)).

21.     The imposition on equity trading and/or Worthless Stock Deduction claims to protect a debtor against the possible loss of valuable Tax Attributes, are regularly approved by this and other courts.  *See, e.g.*, *In re Neiman Marcus Grp. Ltd.*, No. 20-32519 (DRJ) (Bankr. S.D. Tex. May 8, 2020) (ECF No. 243) (approving and granting a final order allowing for notification procedures and restrictions on certain transfers of equity interests in the debtors and claims of worthless stock deduction with respect to the debtors' stock); *In re Pioneer Energy Servs. Corp.*, No. 20-31425 (DRJ) (Bankr. S.D. Tex. Mar. 2, 2020) (ECF No. 77) (same); *In re McDermott Int'l, Inc.*, No. 20-30336 (DRJ) (Bankr. S.D. Tex. Jan. 23, 2020) (ECF No. 155) (same); *In re Weatherford Int'l PLC*, No. 19-33694 (DRJ) (Bankr. S.D. Tex. July 16, 2019) (ECF No. 172) (approving notification procedures and restrictions on certain transfers of claims against and equity interests in the debtors); *In re Checkout Holdings Corp.*, No. 18-12794 (KG) (ECF No. 205) (Bankr. D. Del. Jan. 10, 2019) (approving notification procedures and restrictions on certain transfers of equity interests in and claiming a worthless stock deduction with respect to the debtors); *In re HGIM Holdings, LLC*, No. 18-31080 (DRJ) (Bankr. S.D. Tex. Apr. 3, 2018) (ECF No. 117) (approving notification procedures and restrictions on certain transfers of equity interests in the debtors); *In re Linn Energy, LLC*, No. 16-60040 (DRJ) (Bankr. S.D. Tex. July 15, 2016)

(ECF No. 581) (approving and granting an interim order allowing for notification procedures and restrictions on certain transfers of equity interests in the debtors and claims of worthless stock deduction with respect to the debtors' stock); *In re Energy XXI LTD*, Case No. 16-31928 (DRJ) (Bankr. S.D. Tex. May 20, 2016) (ECF No. 324) (approving notification procedures and restrictions on certain transfers of equity interests in the debtors); *In re Great Atl. & Pac. Tea Co.*, Case No. 15-23007 (RDD) (Bankr. S.D.N.Y. Aug. 11, 2015) (ECF No. 501) (approving notification procedures and restrictions on certain transfers of claims against and equity interests in the debtors); *In re AMR Corp.*, Case No. 11-15463 (SHL) (Bankr. S.D.N.Y. Jan. 27, 2012) (ECF No. 890) (approving notification procedures and restrictions on certain transfers of claims against and equity interests in the debtors).

22.     As these cases demonstrate, it is well settled that the automatic stay under section 362(a)(3) of the Bankruptcy Code enjoins actions that would adversely affect a debtor's NOLs and other tax benefits.

**B.      The Procedures Are Necessary and In the Best Interests of the Debtors, their Estates, and their Creditors**

23.     The Procedures are necessary to preserve the Debtors' ability to use their Tax Attributes, while providing certain latitude for trading.  The Debtors' ability to preserve their Tax Attributes may be seriously jeopardized unless procedures are established immediately to ensure that trading in the beneficial ownership of Core Stock (including Options to acquire beneficial ownership of Core Stock), and the claiming of a Worthless Stock Deduction by a Majority Holder with respect to its beneficial ownership of Core Stock is either precluded or closely monitored and made subject to Court approval.

24.     Depending on the Debtors' tax profile during the pendency of these chapter 11 cases, the extent of any gain or other income recognized in connection with the Debtors'

ownership or disposition of their assets, and the consequences of any reorganization, the Debtors' ability to utilize the Tax Attributes may enhance the Debtors' prospects for a successful emergence from chapter 11.  The relief requested herein is narrowly tailored to permit certain stock and claims trading to continue, subject to Bankruptcy Rule 3001(e) and applicable securities, corporate, and other laws.

25.     The Debtors respectfully submit that the Stock Procedures must be implemented as soon as possible, and that it is in the best interests of the Debtors and their stakeholders to restrict trading in the beneficial ownership of Core Stock and the claiming of a Worthless Stock Deduction by a Majority Holder that could result in an Ownership Change *before* the effective date of a chapter 11 plan or applicable bankruptcy court order.   This permits the use of Tax Attributes, if needed, to offset gain or other income recognized in connection with the Debtors' ownership and operation of their assets.  If such an Ownership Change occurs, the valuation for determining the annual amount of useable NOLs and other affected Tax Attributes is expected to be at or close to zero, effectively eliminating the availability of such NOLs and certain other attributes.   Accordingly, the Debtors' ability to realize the value of their Tax Attributes may be permanently diminished.  The relief requested, therefore, is crucial to prevent an irrevocable diminution of the value of the Debtors' estates.

26.     With respect to an Ownership Change that occurs *pursuant to* a confirmed chapter 11 plan or any applicable bankruptcy court order, the limitations imposed by section 382 of the Tax Code can be significantly less restrictive than those applicable to an Ownership Change that occurs before the effective date of (or otherwise outside of) a chapter 11 plan.  *See, e.g.*, 26 U.S.C. §§ 382(l)(5), (6).

27.     Section 382(l)(6) provides a special rule in the case of an Ownership Change occurring pursuant to a confirmed chapter 11 plan or applicable bankruptcy court order. Specifically, section 382(1)(6) of the Tax Code provides that, if a corporation undergoes an ownership change pursuant to a chapter 11 plan and section 382(l)(5) of the Tax Code does not apply (either because the corporation elects out of that provision or because its requirements are not satisfied), then the appropriate value of the debtors for purposes of calculating the annual limitation under section 382 of the Tax Code shall reflect the increase in value of the debtors resulting from any surrender or cancellation of creditors' claims in the transaction.  Generally, under section 382 of the Tax Code, the taxable income of a loss corporation available for offset by pre-ownership change Tax Attributes is annually limited to an amount equal to the long-term tax-exempt bond rate times the value of the loss company's stock *immediately before* the ownership change.  Thus, assuming the equity value of the Debtors increases as a result of the reorganization, section 382(1)(6) of the Tax Code may provide for a higher annual limitation than would result under the general rules of section 382 of the Tax Code, thereby preserving the Debtors' ability to use a greater portion of its otherwise available Tax Attributes to offset any post-Ownership Change income.  Thus, it is in the best interests of the Debtors and their stakeholders to grant the requested relief so as to prevent an ownership change prior to the effective date of a chapter 11 plan or applicable court order.

28.     For the foregoing reasons, the relief requested is necessary, appropriate, and in the best interests of the Debtors, their estates, and all other parties in interest in these cases. Accordingly, the Court should authorize the Debtors the relief requested.

29.     The granting of interim approval of the Stock Procedures will benefit the Debtors and their stakeholders by preventing the loss of the Tax Attributes pending determination

of final approval of the Procedures, while allowing holders of direct or indirect interests in Core Stock and other parties in interest ample time to consider the Procedures.  Absent the interim relief, the Debtors may be irreparably harmed due to transfers in the beneficial ownership of Core Stock, or the claiming of a Worthless Stock Deduction by a Majority Holder, that may follow immediately after persons or Entities (as defined in the Stock Procedures) receive notice of this Motion.  Persons or Entities may rush to acquire or dispose of their beneficial ownership of Core Stock (including Options to acquire beneficial ownership of Core Stock), or a Majority Holder might claim a Worthless Stock Deduction, before any restrictions on trading is approved by this Court, and such transfers might be respected as occurring for tax purposes even if such trades should be null and void under Bankruptcy Code section 362 or as a result of a final order prohibiting such trading effective as of the Petition Date.  Such transfers or actions would jeopardize the Debtors' Tax Attributes and be counterproductive to the Debtors' objectives in seeking the relief requested herein.  Accordingly, the Debtors request that the Stock Procedures proposed herein be approved on an interim basis and that a hearing be scheduled to consider entry of the Proposed Final Order.

### Bankruptcy Rule 6003 Has Been Satisfied

30.     Pursuant to Local Rule 9013-1, the Debtors respectfully request emergency consideration of this Motion under Bankruptcy Rule 6003, which provides that the Court may grant relief within the first 21 days after the Petition Date to the extent such relief is necessary to avoid immediate and irreparable harm.  As described herein and in the Bros Declaration, the relief requested is essential to avoid the immediate and irreparable harm that would be caused by the Debtors' inability to transition smoothly into chapter 11.  Accordingly, the Debtors submit that the requirements of Bankruptcy Rule 6003 are satisfied.

## Compliance with Bankruptcy Rule 6004(a)
## and Waiver of Bankruptcy Rule 6004(h)

31.     To implement the foregoing successfully, the Debtors request that the Court find that notice of the Motion satisfies Bankruptcy Rule 6004(a) and that the Court waive the 14-day period under Bankruptcy Rule 6004(h).  As explained above, and in the Bros Declaration, the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors. Accordingly, ample cause exists to justify the finding that the notice requirements under Bankruptcy Rule 6004(a) have been satisfied and to grant a waiver of the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and stay apply.

## Reservation of Rights

32.     Nothing contained herein is intended to be or shall be deemed as (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver or limitation of the Debtors' or any party in interest's rights to dispute the amount of, basis for, or validity of any claim, (iii) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable nonbankruptcy law, (iv) an agreement or obligation to pay any claims, (v) a waiver of any claims or causes of action which may exist against any creditor or interest holder, (vi) an admission as to the validity of any liens satisfied pursuant to this Motion, or (vii) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code.  Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' or any other party in interest's rights to dispute such claim subsequently.

**<ins>Notice</ins>**

33.      Notice of this Motion will be served on any party entitled to notice pursuant to Bankruptcy Rule 2002 and any other party entitled to notice pursuant to Bankruptcy Local Rule 9013-1(d).

**<ins>No Previous Request</ins>**

34.      No previous request for the relief sought herein has been made by the Debtors to this or any other court.

[*Remainder of page intentionally left blank*]

WHEREFORE the Debtors respectfully request entry of the Proposed Interim Order and Proposed Final Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: December 21, 2022
        Houston, Texas

                                     Respectfully submitted,

                      */s/ Alfredo R. Pérez*
                      WEIL, GOTSHAL & MANGES LLP
                      Alfredo R. Pérez (15776275)
                      700 Louisiana Street, Suite 1700
                      Houston, Texas 77002
                      Telephone:  (713) 546-5000
                      Facsimile:  (713) 224-9511
                      Email:   Alfredo.Perez @weil.com

                      -and-

                      WEIL, GOTSHAL & MANGES LLP
                      Ray C. Schrock, P.C. (*pro hac vice* pending)
                      Ronit J. Berkovich (*pro hac vice* pending)
                      Moshe A. Fink (*pro hac vice* pending)
                      767 Fifth Avenue
                      New York, New York 10153
                      Telephone:  (212) 310-8000
                      Facsimile:  (212) 310-8007
                      Email:   Ray.Schrock@weil.com
                                  Ronit.Berkovich@weil.com
                                  Moshe.Fink@weil.com

                      *Proposed Attorneys for Debtors*
                      *and Debtors in Possession*

**<u>Certificate of Service</u>**

I hereby certify that on December 21, 2022, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

_/s/  Alfredo R. Pérez_____

Alfredo R. Pérez
