## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| *In re:* | ) | Chapter 11 |
|  | ) |  |
| Core Scientific, Inc., *et al.*,[1] | ) | Case No. 22-90341 (DRJ) |
|  | ) |  |
| Debtors. | ) | (Joint Administration Requested) |
|  | ) |  |
|  | ) | Re: Docket No. __ |

**INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A) OBTAIN SENIOR SECURED PRIMING SUPERPRIORITY POSTPETITION FINANCING AND (B) USE CASH COLLATERAL, (II) GRANTING LIENS AND PROVIDING CLAIMS WITH SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (III) GRANTING ADEQUATE PROTECTION TO THE PREPETITION SECURED PARTIES, (IV) MODIFYING THE AUTOMATIC STAY, (V) SCHEDULING A FINAL HEARING, AND (VI) GRANTING RELATED RELIEF**

Upon the motion (the "***Motion***")[2] of Core Scientific, Inc. ("***Core Scientific***") and each of its affiliates that are debtors and debtors in possession (collectively, the "***Debtors***") in the above-captioned chapter 11 cases (the "***Chapter 11 Cases***"), pursuant to sections 105, 361, 362, 363, 364, 503, 506, 507 and 552 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "***Bankruptcy Code***"), Rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), and Rules 2002-1, 4001-1(b), 4002-1 and 9013-1 of the Bankruptcy Local Rules of the United States Bankruptcy Court for the Southern

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (N/A); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR, LLC (5106); American Property Acquisition I, LLC (9717); and American Property Acquisitions, VII, LLC (3198). The Debtors' corporate headquarters and service address is 210 Barton Springs Road, Suite 300, Austin, Texas 78704.

[2]   Each capitalized term that is not defined herein shall have the meaning ascribed to such term in the DIP Loan Agreement (as defined below).

District of Texas and the Procedures for Complex Chapter 11 Bankruptcy Cases (together, the

"***Local Bankruptcy Rules***") promulgated by the United States Bankruptcy Court for the

Southern District of Texas, Houston Division (the "***Court***"), seeking entry of an interim order

(this "***Interim Order***"), among other things:

> (a) authorizing the Debtors to obtain postpetition financing on a superpriority priming senior secured basis (the "***DIP Facility***", and the loans made, advanced or deemed advanced thereunder, the "***DIP Loans***") in the form of (i) a new money multiple draw term loan facility in an aggregate principal amount of up to $75 million (the "***New Money Term DIP Facility***"), pursuant to which (A) an aggregate principal amount of $40 million shall be borrowed (the "***Interim DIP Borrowing***") in a single borrowing on the Closing Date (as defined in the DIP Loan Agreement), and (B) following entry of the Final Order (as defined below), the remaining aggregate principal amount under the New Money Term DIP Facility shall be available, in one or more borrowings (each such borrowing, including the Interim DIP Borrowing, a "***DIP Borrowing***", and, collectively, the "***DIP Borrowings***"), and (ii) a credit facility pursuant to which $75 million in aggregate principal amount outstanding under the Prepetition Secured Notes (as defined below) held by each Backstop Party (as defined in the DIP Loan Agreement) and/or each Prepetition Secured Noteholder (as defined below) in which a Backstop Party is an affiliate, partner or investor (each such Backstop Party and/or Prepetition Lender, a "***Rolled Up Noteholder Party***"), shall, upon and subject to entry of the Final Order, automatically be deemed substituted and exchanged for, and converted into, DIP Loans (such conversion, the "***Roll Up***") on a cashless dollar for dollar basis, in each case, in accordance with and subject to the terms and conditions (including, without limitation, any conditions precedent to each of the DIP Borrowings) set forth in that certain *Senior Secured Super-Priority Debtor-In-Possession Loan and Security Agreement*, substantially in the form attached to this Interim Order as **Exhibit 1** and otherwise in form and substance acceptable to the Required DIP Lenders[3] (as may be amended, amended and restated, supplemented, or otherwise modified from time to time in accordance with the terms hereof and thereof, the "***DIP Loan Agreement***", and, together with all other agreements, guarantees, pledge, collateral and security agreements, mortgages, deeds, charges, control agreements, instruments, certificates, notes, the DIP Commitment Letter dated as of December 21, 2022, by and among the DIP Loan Parties and the Commitment Parties (as defined therein), any separate fee letter agreements between any of the Debtors, on the one hand, and the DIP Agent and/or the DIP Lenders, on the other hand, and other documents executed, filed and/or delivered in connection therewith, including the "Loan Documents" (as defined in the DIP Loan Agreement) (each as amended, amended and restated, supplemented, or otherwise modified from time to time in accordance with the

---

[3]      The term "***Required DIP Lenders***" shall have the meaning ascribed to the term "Required Lenders" in the DIP Loan Agreement.

terms hereof and thereof, together with the DIP Loan Agreement, collectively, the "**DIP Loan Documents**"), by and among Core Scientific, as borrower (the "**DIP Borrower**"), each of the direct and indirect subsidiaries of the DIP Borrower, as guarantors (collectively, the "**DIP Guarantors**", and together with the DIP Borrower, the "**DIP Loan Parties**"), Wilmington Savings Fund Society, FSB, as administrative agent and collateral agent (in such capacities, together with its successors and permitted assigns, the "**DIP Agent**"), and the lenders party thereto from time to time (the "**DIP Lenders**", and together with the DIP Agent, the "**DIP Secured Parties**") and this Interim Order;

(b)     authorizing the DIP Loan Parties to (i) execute, deliver, and perform under the DIP Loan Agreement and each of the DIP Loan Documents, (ii) incur all loans, advances, extensions of credit, financial accommodations, indemnification and reimbursement obligations and other obligations, and pay all principal, interest, premiums, fees, costs, expenses, charges and all other amounts payable under the DIP Loan Documents, including without limitation, all "Obligations" (as defined in the DIP Loan Agreement), whether or not such obligations arose before or after the Petition Date, whenever the same shall become due or payable, whether at stated maturity, by prepayment, declaration, acceleration or otherwise, in each case, in accordance with the DIP Loan Documents and this Interim Order (collectively, the "**DIP Obligations**"), and (iii) perform such other and further acts as may be necessary, required or desirable to implement and effectuate the terms of this Interim Order, the DIP Loan Documents and the transactions contemplated hereunder and thereunder;

(c)     authorizing the DIP Borrower to incur, and the DIP Guarantors to jointly and severally guarantee, all DIP Obligations, in accordance with this Interim Order and the DIP Loan Documents;

(d)     granting to the DIP Agent, for the benefit of itself and the other DIP Secured Parties, the DIP Liens (as defined below) in all DIP Collateral (as defined below), as set forth in this Interim Order, subject to the Carve Out and subject to the relative priorities set forth in this Interim Order;

(e)     granting to the DIP Agent, for the benefit of itself and the other DIP Secured Parties, allowed super-priority administrative expense claims against each of the Debtors, on a joint and several basis, in respect of all DIP Obligations, subject in each case to the Carve Out, as set forth in this Interim Order;

(f)     authorizing the Debtors to use the proceeds of the DIP Facility, the DIP Collateral and the Prepetition Collateral (as defined below), including Cash Collateral (as defined below), solely in accordance with the terms and conditions set forth in this Interim Order and the DIP Loan Documents, including the Approved Budget (as defined below), subject to any variances expressly permitted under the DIP Loan Agreement (the "**Permitted Variances**");

LEGAL_US_E # 167127445.9 09999.99999
WEIL:\98835084\1\39031.0013

(g)     granting adequate protection, as and to the extent set forth in this Interim Order, to the Prepetition Secured Parties (as defined below) to protect against any Diminution in Value (as defined below) of their respective Prepetition Liens (as defined below) in the Prepetition Collateral (including Cash Collateral);

(h)     approving certain stipulations, waivers, and releases by the Debtors with respect to, *inter alia*, (i) the DIP Secured Parties, the DIP Loan Documents, the DIP Liens, the DIP Obligations and the DIP Collateral, and (ii) the Prepetition Secured Parties, the Prepetition Notes Documents, the Prepetition Liens, the Prepetition Secured Obligations (each as defined below) and the Prepetition Collateral, in each case, subject to the terms and provisions of this Interim Order;

(i)     approving the Debtors' waiver of the right to surcharge the DIP Collateral as to the DIP Secured Parties and the Prepetition Collateral as to the Prepetition Secured Parties, pursuant to section 506(c) of the Bankruptcy Code or otherwise, in each case, upon the terms set forth in this Interim Order;

(j)     approving (i) the Debtors' waiver of the equitable doctrine of "marshaling" and other similar doctrines with respect to the DIP Collateral as to the DIP Secured Parties, and (ii)  the Debtors' waiver of the equitable doctrine of "marshaling" and the Debtors' waiver of any "equities of the case" exception under section 552(b) of the Bankruptcy Code with respect to the Prepetition Collateral as to the Prepetition Secured Parties, in each case, upon the terms set forth in this Interim Order;

(k)     modifying or vacating the automatic stay imposed by sections 105(a) and 362 of the Bankruptcy Code or otherwise, to the extent necessary, required or desirable to implement and effectuate the terms and provisions of this Interim Order and the DIP Loan Documents, as set forth herein, waiving any applicable stay (including under Bankruptcy Rule 6004) with respect to the effectiveness and enforceability of this Interim Order, providing for the immediate effectiveness of this Interim Order, and granting related relief; and

(l)     scheduling a final hearing (the "***Final Hearing***") on the Motion to consider entry of a final order (the "***Final Order***") authorizing the relief requested in the Motion on a final basis, which order shall be in form and substance and on terms and conditions acceptable in all respects to the Required DIP Lenders, and approving the form of notice with respect to such Final Hearing.

The Court, having considered the Motion, the DIP Loan Documents, the exhibits attached thereto, the *Declaration of Michael Bros in Support of the Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 5] (the "***First Day Declaration***"), the *Declaration of John Singh in Support of the Debtors' Motion for Entry of an Interim Order (I) Authorizing the Debtors to*

-4-

*(A) Obtain Senior Secured Priming Superpriority Postpetition Financing, and (B) Use Cash Collateral, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Granting Adequate Protection to the Prepetition Secured Parties, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* [Docket No. [●]] (the "***DIP Declaration***"), the evidence submitted and arguments proffered or adduced at the interim hearing held before this Court on December [●], 2022 (the "***Interim Hearing***"), and upon the record of the Chapter 11 Cases; and due and proper notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 4001 and 9014 and all applicable Local Bankruptcy Rules; and it appearing that no other or further notice need be provided; and all objections, if any, to the relief requested in the Motion having been withdrawn, resolved, or overruled by the Court; the Court having determined that the legal and factual bases set forth in the Motion and at the Interim Hearing established just cause for the relief granted herein; and it appearing to the Court that granting the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing, and otherwise is fair and reasonable and in the best interests of the Debtors, their estates, their creditors, and all other parties in interest, represents a sound exercise of the Debtors' business judgment, is necessary for the continued operation of the Debtors' businesses and is necessary to preserve and maximize the value of the Debtors and their estates; and the Debtors having provided notice of the Motion as set forth in the Motion; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[4]**

---

[4]   The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To

-5-

A.     *Petition Date.* On December 21, 2022 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court commencing these Chapter 11 Cases.

B.     *Debtors in Possession.* The Debtors continue to manage and operate their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in any of the Chapter 11 Cases.

C.     *Committee Formation.* As of the date hereof, the Office of the United States Trustee (the "**U.S. Trustee**") has not appointed an official statutory committee of unsecured creditors in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code (to the extent appointed in the Chapter 11 Cases, the "**Official Committee**").

D.     *Jurisdiction and Venue.* This Court has jurisdiction over the Chapter 11 Cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. § 1334. This Court's consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b). Venue for these Chapter 11 Cases and the proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The predicates for the relief set forth herein are sections 105, 361, 362, 363, 364, 503, 506, 507 and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004, and 9014, and Local Bankruptcy Rule 4001-2.

E.     *Debtors' Stipulations, Releases and Acknowledgements.* In exchange for and as a material inducement to the DIP Secured Parties to provide the DIP Facility, and in requesting the use of Prepetition Collateral (including Cash Collateral), after consultation with their attorneys and advisors, the Debtors, on behalf of themselves and their estates, hereby admit, stipulate, acknowledge and agree as follows (without prejudice to the rights of the Official Committee and

---

the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

LEGAL_US_E # 167127445.9 09999.99999
WEIL:\98950587\7\39031.0013
DRAFT 12/20/22

other parties-in-interest in paragraph 23 of this Interim Order (subject to the limitations set forth therein)) (collectively, the admissions, stipulations, and acknowledgments and agreements set forth in this paragraph E, the "***Debtors' Stipulations***"):

      (a)    *Prepetition April NPA Secured Notes.*

      (i)    *Prepetition April NPA.* Pursuant to (x) that certain Secured Convertible Note Purchase Agreement, dated as of April 19, 2021 (as amended, amended and restated, supplement or otherwise modified from time to time prior to the Petition Date, the "***Prepetition April NPA***"), by and among Core Scientific (f/k/a Core Scientific Holding Co.), the guarantors party thereto from time to time (the "***Prepetition April NPA Guarantors***", and together with Core Scientific, the "***Prepetition April NPA Notes Obligors***"), the "Initial Purchasers" and any "Additional Purchasers" party thereto from time to time (collectively, the "***Prepetition April NPA Secured Noteholders***") and U.S. Bank National Association, as note agent and collateral agent (in such capacities, the "***Prepetition April NPA Agent***", and together with the Prepetition April NPA Secured Noteholders, the "***Prepetition April NPA Secured Parties***"), and (y) all other agreements, guarantees, pledge, collateral and security documents, instruments, certificates, promissory notes and other documents executed and/or delivered in connection therewith, including, without limitation, all "Note Documents" (as defined in the Prepetition April NPA) (collectively, together with the Prepetition April NPA, the "***Prepetition April NPA Documents***"), Core Scientific issued secured convertible notes (the "***Prepetition April NPA Secured Notes***"), and each of the Prepetition April NPA Guarantors, among other things, jointly and severally, irrevocably and unconditionally guaranteed the due and punctual payment and performance in full in cash of all Prepetition April NPA Secured Notes Obligations (as defined below).

      (ii)    *Prepetition April NPA Secured Notes Obligations.* As of the Petition Date, the Prepetition April NPA Notes Obligors were justly and lawfully indebted to the Prepetition April NPA Secured Parties, on a joint and several basis, without defense, claim, counterclaim, challenge or offset of any kind, in the aggregate amount of not less than approximately $316.1 million on account of principal amounts outstanding (inclusive of principal amounts accreted as of the Petition Date) under the Prepetition April NPA Secured Notes, plus accrued but unpaid interest thereon, plus all fees, costs, expenses (including attorneys', financial advisors' and other professionals' fees and expenses), charges, disbursements, indemnification and reimbursement obligations (contingent or otherwise), including all "Obligations" (as defined in the Prepetition April NPA) and all other amounts that may be due or owing under the Prepetition April NPA Documents (collectively, the "***Prepetition April NPA Secured Notes Obligations***").

      (b)    *Prepetition August NPA Secured Notes.*

      (i)    *Prepetition August NPA.* Pursuant to (x) that certain Secured Convertible Note Purchase Agreement, dated as of August 20, 2021 (as amended,

LEGAL_US_E # 167127445.9 09999.99999
WEIL:\98835087\7\39031.0013
DOCS_LA:347232.3

amended and restated, supplement or otherwise modified from time to time prior to the Petition Date, the "***Prepetition August NPA***"), by and among Core Scientific (f/k/a Core Scientific Holding Co.), the guarantors party thereto from time to time (the "***Prepetition August NPA Guarantors***", and together with Core Scientific, the "***Prepetition August NPA Notes Obligors***"), the "Initial Purchasers" and any "Additional Purchasers" party thereto from time to time (collectively, the "***Prepetition August NPA Secured Noteholders***") and U.S. Bank National Association, as note agent and collateral agent (in such capacities, the "***Prepetition August NPA Agent***", and together with the Prepetition August NPA Secured Noteholders, the "***Prepetition August NPA Secured Parties***"), and (y) all other agreements, guarantees, pledge, collateral and security documents, instruments, certificates, promissory notes and other documents executed and/or delivered in connection therewith, including, without limitation, all "Note Documents" (as defined in the Prepetition August NPA) (collectively, together with the Prepetition August NPA, the "***Prepetition August NPA Documents***"), Core Scientific issued convertible notes (the "***Prepetition August NPA Secured Notes***"), and each of the Prepetition August NPA Guarantors, among other things, jointly and severally, irrevocably and unconditionally guaranteed the due and punctual payment and performance in full in cash of all Prepetition August NPA Secured Notes Obligations (as defined below).

(ii)     *Prepetition August NPA Secured Notes Obligations.* As of the Petition Date, the Prepetition August NPA Notes Obligors were justly and lawfully indebted to the Prepetition August NPA Secured Parties, on a joint and several basis, without defense, claim, counterclaim, challenge or offset of any kind, in the aggregate amount of not less than approximately $[318.8] million on account of principal amounts outstanding under the Prepetition August NPA Secured Notes, plus accrued but unpaid interest thereon, plus all fees, costs, expenses (including attorneys', financial advisors' and other professionals' fees and expenses), charges, disbursements, indemnification and reimbursement obligations (contingent or otherwise), including all "Obligations" (as defined in the Prepetition August NPA) and all other amounts that may be due or owing under the Prepetition August NPA Documents (collectively, the "***Prepetition August NPA Secured Notes Obligations***").

(c)     *Certain Definitions.*

(i)     Prepetition Agents***"*** means the Prepetition April NPA Agent and the Prepetition August NPA Agent.

(ii)     "***Prepetition Equipment Financings***" means loans or indebtedness incurred by Core Scientific or Core Scientific Operating Company (f/k/a Core Scientific, Inc.) to finance the acquisition of machines or equipment.

(iii)     "***Prepetition Equipment Financing Collateral***" means the equipment and machines securing the Prepetition Equipment Financings that were acquired or financed with the proceeds of such financings.

LEGAL_US_E # 167127445.9 09999.99999
WEIL:\98950387\7\39031.0013

(iv)   "***Prepetition Equipment Financing Liens***" means the liens and security interests asserted by each of the Prepetition Equipment Lenders in the Prepetition Equipment Financing Collateral purportedly securing the respective Prepetition Equipment Financings, in each case, if and to the extent each such liens and security interests are valid, binding, perfected and non-avoidable as of the Petition Date.

(v)   "***Prepetition Equipment Lenders***" means the lenders under the Prepetition Equipment Financings.

(vi)   "***Prepetition Notes Documents***" means the Prepetition April NPA Documents and the Prepetition August NPA Documents.

(vii)   "***Prepetition Notes Obligors***" means the Prepetition April NPA Notes Obligors and the Prepetition August NPA Notes Obligors.

(viii)   "***Prepetition NPAs***" means the Prepetition April NPA and the Prepetition August NPA.

(ix)   "***Prepetition Secured Noteholders***" means the Prepetition April NPA Secured Noteholders and the Prepetition August NPA Secured Noteholders.

(x)   "***Prepetition Secured Notes***" means the Prepetition April NPA Secured Notes and the Prepetition August NPA Secured Notes.

(xi)   "***Prepetition Secured Obligations***" means the Prepetition April NPA Secured Notes Obligations and the Prepetition August NPA Secured Notes Obligations.

(xii)   "***Prepetition Secured Parties***" means the Prepetition April NPA Secured Parties and the Prepetition August NPA Secured Parties.

(d)   *Prepetition Liens.* Pursuant to the Prepetition Notes Documents (including, among other Prepetition Notes Documents, (i) the Security Agreement, dated as of April 19, 2021, in respect of the Prepetition April NPA Secured Notes, and (ii) following the occurrence of a Conversion Event (as defined in the Prepetition August NPA), the Security Agreement, dated as of February 7, 2022, in respect of the Prepetition August NPA Secured Notes), in order to secure the Prepetition Secured Obligations, the Prepetition Notes Obligors granted to the Prepetition Agents, for the benefit of themselves and the applicable Prepetition Secured Noteholders, valid, enforceable and properly perfected continuing liens and security interests in (collectively, the "***Prepetition Liens***") all "Collateral" (as defined in the Prepetition Notes Documents) (collectively, the "***Prepetition Collateral***").

(e)   *Validity and Enforceability of Prepetition Secured Obligations and Prepetition Liens.* As of the Petition Date, (i) the Prepetition Liens in the Prepetition Collateral (A) are legal, valid, binding, enforceable, non-avoidable and fully perfected liens and security interests in the Prepetition Collateral, (B) were granted to or for the benefit of the Prepetition Secured Parties for fair consideration and reasonably equivalent

value, and (C) are senior with priority over any and all other liens or security interests in the Prepetition Collateral, subject only to certain liens and security interests that were valid, non-avoidable and properly perfected as of the Petition Date (or were properly perfected subsequent to the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code) and senior in priority by operation of law to the Prepetition Liens in the Prepetition Collateral as of the Petition Date (the "***Existing Senior Liens***"));[5] (ii) the Prepetition Secured Obligations constitute legal, valid, binding and non-avoidable obligations of each of the Prepetition Notes Obligors, enforceable in accordance with the terms of the applicable Prepetition Notes Documents; (iii) no challenges, objections, defenses, claims or counterclaims of any kind or nature whatsoever with respect to any of the Prepetition Liens or the Prepetition Secured Obligations exist, and no portion of the Prepetition Liens or the Prepetition Secured Obligations is subject to any challenge, defense or claim (as defined in section 101(5) of the Bankruptcy Code) of any kind or nature whatsoever, including, without limitation, avoidance (whether under Chapter 5 of the Bankruptcy Code or under applicable law (including any applicable state law Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law)), reduction, setoff, offset, recoupment, recharacterization, subordination (whether equitable, contractual or otherwise), reclassification, disgorgement, disallowance, impairment, marshalling, surcharge or recovery, in each case, whether arising under the Bankruptcy Code, applicable non-bankruptcy law or otherwise; (iv) the Debtors waive, discharge and release any right to challenge the enforceability, validity, priority or perfection of any of the Prepetition Secured Obligations or the Prepetition Liens; and (v) the Prepetition Secured Obligations constitute allowed secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code against each of the Prepetition Notes Obligors and their respective estates.

(f)    *No Claims, Defenses, or Causes of Action.* As of the date hereof, there exists no challenge, objection, defense, claim, counterclaim, or other cause of action, of any kind or nature whatsoever, whether arising under the Bankruptcy Code, applicable non-bankruptcy law or otherwise, against any of the Prepetition Secured Parties or any of their respective officers, directors, members, managers, partners, equity holders, subsidiaries, affiliates, related parties, employees, investment advisors or managers, agents, attorneys, advisors, professionals (collectively, together with each of their successors and assigns, the "***Representatives***") (in their capacities as such) arising from, in connection with, or related to this Interim Order, the Prepetition Liens, the Prepetition Secured Obligations, the Prepetition Notes Documents or the Prepetition Collateral.

(g)    *Releases.* Subject to paragraph 23 of this Interim Order, effective as of the date of entry of this Interim Order, each of the Debtors and the Debtors' estates, on its

---

[5]    Nothing contained herein shall constitute a finding or ruling by this Court that any alleged Existing Senior Lien is valid, senior, enforceable, prior, perfected or non-avoidable. Moreover, nothing contained herein shall prejudice the rights of any party in interest, including, but not limited to the Debtors, the DIP Secured Parties, the Prepetition Secured Parties, or any Official Committee, in each case, to the extent such party has standing to challenge the validity, priority, enforceability, seniority, avoidability, perfection or extent of any alleged Existing Senior Lien (subject to the terms of this Interim Order). For the purposes hereof, any alleged claim arising or asserted as a right of reclamation or return (whether asserted under Section 546(c) of the Bankruptcy Code or otherwise) is not an Existing Senior Lien.

own behalf and on behalf of its predecessors, successors and assigns, hereby absolutely, unconditionally and irrevocably releases and forever discharges and acquits each of the Prepetition Secured Parties and each of their respective Representatives (in their capacities as such) from any and all obligations and liabilities to the Debtors (and their successors and assigns) and from any and all claims, counterclaims, cross-claims, demands, defenses, objections, challenges, offsets or setoff, debts, accounts, contracts, liabilities, remedies, suits, controversies, actions, causes of action, losses, damages, indemnities, reimbursement obligations, attorneys' fees, costs, expenses or judgments, of every kind or nature whatsoever, whether matured or unmatured, known or unknown, asserted or unasserted, suspected or unsuspected, foreseen or unforeseen, accrued or unaccrued, liquidated or unliquidated, fixed or contingent, pending or threatened, arising in law or equity, upon contract or tort, under the Bankruptcy Code, any state or federal common law, statute, rule, regulation or otherwise, in each case, that may be asserted by any of the Debtors, their respective estates, predecessors, successors or assigns, against the Prepetition Secured Parties or their respective Representatives (in their capacities as such) for or by reason of any act, omission, matter, cause or thing whatsoever arising at any time prior to the date of this Interim Order, in each case, arising under, in connection with or related to this Interim Order, the Prepetition Notes, the Prepetition Liens, the Prepetition Collateral, the Prepetition Secured Obligations, the Prepetition Notes Documents, the Adequate Protection Obligations, the transactions contemplated thereunder or hereunder, or the negotiation thereof or hereof, including, without limitation, any claim or cause of action seeking (i) any so-called lender liability, (ii) any and all claims arising under the Bankruptcy Code, whether under Chapter 5 of the Bankruptcy Code or under applicable law (including any applicable state law Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or (iii) reduction, recoupment, recharacterization, subordination (whether equitable, contractual or otherwise), reclassification, disgorgement, disallowance, impairment, marshalling, surcharge or recovery, or any other claim or cause action with respect to the validity, enforceability, priority, scope, extent or perfection of the Prepetition Liens, the Prepetition Secured Obligations or the Prepetition Notes Documents.

(h)     *Cash Collateral.* All of the Debtors' cash (except for cash held in any "Excluded Accounts" (as defined in the Prepetition NPAs) that do not otherwise constitute identifiable proceeds of Prepetition Collateral), whether existing as of the Petition Date or thereafter, wherever located and held, including all cash and cash equivalents deposited or maintained by the Debtors in any accounts, whether as original collateral or proceeds of Prepetition Collateral, constitutes "cash collateral" of the Prepetition Secured Parties within the meaning of section 363(a) of the Bankruptcy Code (the "***Cash Collateral***").

(i)     *Default.* Prior to the Petition Date, the Prepetition Notes Obligors were in default under the Prepetition Notes Documents. As of the Petition Date, the aforementioned defaults are continuing, and the Prepetition Notes Obligors are also in default under the Prepetition Notes Documents on account of the commencement of the Chapter 11 Cases.

-11-

F.      *Findings Regarding Corporate Authority.* Each of the DIP Loan Parties has all requisite power and authority to execute and deliver the DIP Loan Documents to which it is a party and to perform its obligations thereunder.

G.      *Findings Regarding DIP Facility and Use of Cash Collateral.*

(a)      *Good Cause.* Good and sufficient cause has been shown for the entry of this Interim Order and for the Debtors to obtain postpetition financing pursuant to the terms hereof and the DIP Loan Documents.

(b)      *Need for Postpetition Financing and Use of Cash Collateral.* The Debtors have an immediate and critical need to obtain the DIP Facility and use Cash Collateral in order to, among other things, (i) permit the orderly continuation and operation of their businesses, (ii) maintain business relationships with customers, vendors and suppliers, (iii) make payroll, (iv) make capital expenditures, (v) pay the expenses of the Chapter 11 Cases, (vi) satisfy working capital and operational needs of the Debtors, and (v) for general corporate purposes, in each case, in accordance with and subject to the terms and conditions of this Interim Order and the DIP Loan Documents, including the Approved Budget (subject to Permitted Variances). The Debtors require immediate access to sufficient working capital and liquidity through the incurrence of loans and other financial accommodations under the DIP Facility and the use of the Prepetition Secured Parties' Cash Collateral in order to preserve, maintain and maximize the going concern value of the Debtors and to facilitate an orderly and successful reorganization of the Debtors. Without access to the DIP Facility and the authorized use of Cash Collateral upon the terms set forth herein, the Debtors and their estates will be immediately and irreparably harmed.

LEGAL_US_E # 167127445.9 09999.99999
WEIL:\98850587\17\39031.0013

(c)     *No Credit Available on More Favorable Terms.* The Debtors are unable to obtain financing or other financial accommodations on more favorable terms from sources other than the DIP Secured Parties. The Debtors are unable to obtain adequate unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code. The Debtors are also unable to obtain adequate secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code without (a) granting to the DIP Secured Parties the rights, benefits, remedies and protections set forth herein and the DIP Loan Documents, including the DIP Liens in all DIP Collateral and the DIP Superpriority Claims, and (b) granting to the Prepetition Secured Parties the rights, benefits remedies and protections set forth herein and in the DIP Loan Documents, including the Noteholder Adequate Protection Liens, the Noteholder Adequate Protection Claims and all other Noteholder Adequate Protection Obligations (each as defined below), in each case, upon the terms set forth herein.

(d)     *Use of Proceeds of DIP Facility and Cash Collateral.* As a condition to providing the DIP Facility and their consent to the use of Prepetition Collateral (including Cash Collateral), each of the DIP Secured Parties and the Prepetition Secured Parties (as applicable) require, and the Debtors have agreed, that all proceeds of the DIP Loans and all Cash Collateral shall be used and/or applied solely for the purposes expressly permitted in, and in a manner consistent with, the Approved Budget (subject to Permitted Variances) including (i) to pay the costs of administration of the Chapter 11 Cases, (ii) for general corporate and working capital purposes, (iii) to pay adequate protection payments to the extent set forth in this Interim Order, and (iv) to pay professional fees and expenses in accordance with this Interim Order, in each case, subject to the terms and conditions of this Interim Order and the DIP Loan Documents.

LEGAL_US_E # 167127445.9 09999.99999
WEIL:\98950877\7\39031.0013

(e)     *Roll Up.* The Roll Up is an inextricable component of the DIP Facility, and the Prepetition Secured Noteholders would not have otherwise consented to the use of Prepetition Collateral (including Cash Collateral) or the subordination of their Prepetition Liens to the DIP Liens and the Carve Out upon the terms set forth in this Interim Order, and the DIP Secured Parties would not otherwise be willing to provide the DIP Facility or extend new credit to the Debtors thereunder, without the inclusion of the Roll Up. Moreover, the Roll Up will enable the Debtors to obtain necessary financing in order to administer these Chapter 11 Cases and fund their operations, and thereby preserve and maximize the going concern value of the Debtors.

(f)     *Approved Budget*. The Debtors have prepared and delivered to the DIP Secured Parties the initial itemized cash flow forecast set forth on **Exhibit 2** attached hereto, which has been approved by the DIP Lenders (the "***Initial Budget***", as amended, supplemented or updated by the Debtors, and approved by the Required DIP Lenders, from time to time in accordance with the terms of this Interim Order and the DIP Loan Agreement, the "***Approved Budget***"), reflecting, on a line item, cumulative and aggregate basis, the Debtors' projected cash receipts expected to be collected, and necessary disbursements and expenditures (including debt service costs) expected to be incurred or made, by the Debtors for each calendar week during the period from the calendar week ending on the Friday of the week in which the Petition Date occurs through and including the end of the thirteenth (13th) calendar week thereafter, (ii) the sum of weekly unused availability under the DIP Facility, plus restricted and unrestricted balances of cash on hand, (iii) the weekly outstanding principal balance of amounts outstanding under the DIP Facility, and (iv) a professional fee accrual budget with respect to the anticipated professional fees and expenses to be incurred by each of the Professional Persons (as defined

below) during such period. The Initial Budget is an integral part of this Interim Order, and the

DIP Secured Parties and the Prepetition Secured Parties are relying, in part, upon the Debtors'

agreement to comply with the Approved Budget (subject to Permitted Variances) in determining

to enter into the DIP Facility and to allow the Debtors' use of proceeds of the DIP Facility and

Cash Collateral in accordance with the terms of this Interim Order and the DIP Loan Documents.

(g)      *Adequate Protection*. Pursuant to sections 361, 362, 363 and 364 of the

Bankruptcy Code, the Prepetition Secured Parties are entitled to adequate protection against any

post-petition diminution in value of the Prepetition Secured Parties' respective liens and interests

in the Prepetition Collateral (including Cash Collateral) resulting from, among other things,

(i) the use, sale or lease by the Debtors of Prepetition Collateral (including Cash Collateral),

(ii) the imposition of the automatic stay, (iii) the priming of the Prepetition Liens and the

Prepetition Secured Obligations by the DIP Liens and the DIP Obligations, and the imposition of

the Carve Out, and (iv) any other cause or reason to the maximum extent provided under the

Bankruptcy Code and applicable law (collectively, the "***Diminution in Value***"), as set forth in

this Interim Order and the DIP Loan Documents. Based on the Motion, the First Day

Declaration, the DIP Declaration and the other evidence filed in support of the Motion, and the

record presented to the Court in connection with the Interim Hearing, the terms of the adequate

protection arrangements and the use of Prepetition Collateral (including Cash Collateral) set

forth herein are fair and reasonable, reflect the Debtors' prudent exercise of business judgment

and constitute reasonably equivalent value and fair consideration for the use of Prepetition

Collateral (including Cash Collateral); *provided, however*, that nothing in this Interim Order shall

(x) be construed as the affirmative consent by any of the Prepetition Secured Parties for the use

of Cash Collateral or other Prepetition Collateral other than on the terms expressly set forth in

-15-

this Interim Order, (y) be construed as a consent by any party to the terms of any other financing

or any other lien encumbering the DIP Collateral or the Prepetition Collateral (whether senior,

*pari passu* or junior) other than on the terms expressly set forth in this Interim Order, or

(z) prejudice, limit or otherwise impair the rights of any of the Prepetition Secured Parties to

seek new, different or additional adequate protection after the date hereof or assert the interests

of any of the Prepetition Secured Parties (and the rights of all parties-in-interest to object to any

such relief are expressly preserved).

       (h)    *Consent by the Prepetition Secured Parties*. The requisite Prepetition

Secured Parties have consented (or are deemed to have consented) to the Debtors' use of

Prepetition Collateral (including Cash Collateral) and to the Debtors' entry into the DIP Facility,

the granting of the DIP Liens, the DIP Superpriority Claims, the Noteholder Adequate Protection

Liens, the Noteholder Adequate Protection Obligations and the other liens and claims granted

hereunder, and the priming of the Prepetition Liens and the Prepetition Secured Notes

Obligations, in each case, upon the terms set forth in this Interim Order and the DIP Loan

Documents.

       (i)    *Section 506(c), Section 552(b) and Marshalling Waivers*. As a material

inducement to the DIP Secured Parties' to provide the DIP Facility, and in consideration of

(i) the DIP Secured Parties' agreement to subordinate their DIP Liens to the Carve Out, (ii) the

Prepetition Secured Parties' consent (or deemed consent) to the use of Prepetition Collateral

(including Cash Collateral) as set forth herein, (iii) the Prepetition Secured Parties' agreement to

subordinate their Prepetition Liens and Noteholder Adequate Protection Liens to the DIP Liens

and the Carve Out as set forth herein, and (iv) the DIP Secured Parties' and the Prepetition

Secured Parties' agreement to the payment of expenses of the administration of these cases,

subject to the Approved Budget (subject to Permitted Variances), in accordance with the terms of this Interim Order and the DIP Loan Documents, (A) the DIP Loan Parties waive their right to surcharge any costs or expenses incurred in connection with the preservation, protection or enhancement of, or realization by the DIP Secured Parties or the DIP Collateral, whether pursuant to section 506(c) of the Bankruptcy Code or otherwise, and the DIP Secured Parties shall not be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral, and (B) subject to entry of the Final Order, (1) the DIP Loan Parties waive their right to surcharge any costs or expenses incurred in connection with the preservation, protection or engagement of, or realization by the Prepetition Secured Parties or the Prepetition Collateral, whether under section 506(c) of the Bankruptcy Code or otherwise, (2) the Prepetition Secured Parties shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and in no event shall the "equities of the case" exception in section 552(b) of the Bankruptcy Code apply to the Prepetition Secured Parties or the Prepetition Collateral, and (3) the Prepetition Secured Parties shall not be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Prepetition Collateral.

(j)     *No Control*. None of the Prepetition Secured Parties control (or have in the past controlled) the DIP Loan Parties, their properties or operations, have authority to determine the manner in which any DIP Loan Parties' operations are conducted or are control persons or insiders of the DIP Loan Parties by virtue of any of the actions taken in connection with, arising under or related to the Prepetition Notes Documents, the Prepetition Secured Obligations, the Prepetition Liens or the Prepetition Collateral.

(k)     *Good Faith*. The terms of the DIP Facility and the DIP Loan Documents, the terms of adequate protection granted to the Prepetition Secured Parties hereunder, and the

LEGAL_US_E # 167127445.9 09999.99999
WEIL:\98835508\17\39031.0013

terms upon which the Debtors may continue to use Prepetition Collateral (including Cash

Collateral) pursuant to the terms of this Interim Order and the DIP Loan Documents, were

negotiated in good faith and at arm's length among the DIP Loan Parties, the DIP Secured

Parties, the Prepetition Secured Parties and their respective Representatives, and all of the DIP

Loan Parties' obligations and indebtedness arising under, in respect of, or in connection with, the

DIP Facility, the DIP Loan Documents and this Interim Order, including, without limitation, all

loans, advances, extensions of credit and other financial accommodations made to and

guarantees issued by the DIP Loan Parties pursuant to the DIP Loan Documents, shall each be

deemed to have been extended by the DIP Secured Parties and each of their respective affiliates,

in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and in express

reliance upon the protections offered by sections 364(e) of the Bankruptcy Code, and each of the

claims, liens and security interests, rights, remedies, benefits and protections granted to the DIP

Secured Parties and the Prepetition Secured Parties (and their successors and assigns) pursuant to

this Interim Order and the DIP Loan Documents (including, without limitation, the DIP Liens,

the DIP Superpriority Claims, the DIP Obligations and the Noteholder Adequate Protection

Obligations) shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in

the event that this Interim Order or any provision hereof is vacated, reversed, or modified, on

appeal or otherwise. The Prepetition Secured Parties have acted in good faith, and each of the

claims, liens and security interests, rights, remedies, benefits and protections granted to the

Prepetition Secured Parties (and their successors and assigns) pursuant to this Interim Order and

the DIP Loan Documents (including, without limitation, all Noteholder Adequate Protection

Liens, Noteholder Adequate Protection Claims and Noteholder Adequate Protection Obligations)

shall be entitled to the full protection of section 363(m) of the Bankruptcy Code in the event that

this Interim Order or any provision hereof is vacated, reversed, or modified, on appeal or otherwise.

(l)    *Proper Exercise of Business Judgment.* Based on the Motion, the First Day Declaration, the DIP Declaration, the record presented to the Court at the Interim Hearing and the Chapter 11 Cases, the terms of the DIP Facility and the DIP Loan Documents, the terms of adequate protection granted to the Prepetition Secured Parties as set forth in this Interim Order, and the terms upon which the Debtors may continue to use Prepetition Collateral (including Cash Collateral) pursuant to the terms of this Interim Order and the DIP Loan Documents (i) were negotiated in good faith and at arm's length among the DIP Loan Parties, the DIP Secured Parties and the Prepetition Secured Parties, (ii) are fair, reasonable, and the best available to the Debtors under the circumstances, (iii) reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and (iv) are supported by reasonably equivalent value and fair consideration.

(m)    *Notice*. Proper, timely, sufficient and appropriate notice of the Motion and the Interim Hearing has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules, and no other or further notice of the Motion, the Interim Hearing or the entry of this Interim Order shall be required.

(n)    *Immediate Entry; Relief Essential.* The Debtors have requested, and the Court hereby finds that sufficient cause exists for, the immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and the Local Bankruptcy Rules. Unless the relief set forth in this Interim Order is granted, the Debtors' estates will be immediately and irreparably harmed. Consummation of the DIP Facility and the use of Prepetition Collateral (including Cash Collateral) upon the terms set forth in this Interim Order

and the DIP Loan Documents are necessary to preserve and maximize the value of the Debtors, are in the best interests of the Debtors and their estates, and are consistent with the Debtors' exercise of their fiduciary duties.

**NOW THEREFORE**, based upon the foregoing findings and conclusions, the Motion, the First Day Declaration, the DIP Declaration, the evidence adduced at the Interim Hearing and the record before the Court, and after due consideration, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.     *Motion Granted.* The Motion is hereby granted, and the DIP Facility and the use of Cash Collateral is hereby authorized and approved, in each case, upon the terms and conditions set forth in this Interim Order and the DIP Loan Documents. Any objections to any of the relief set forth in this Interim Order that have not been withdrawn, waived, or settled, and all reservations of rights or other statements inconsistent with this Interim Order, are hereby denied and overruled. This Interim Order shall become effective and enforceable immediately upon its entry.

2.     *Authorization of DIP Facility and DIP Loan Documents.*

(a)     *Authorization of DIP Loan Documents.* The DIP Loan Parties are hereby authorized to (i) execute, deliver, enter into and perform all of their obligations, and to pay all fees, costs, expenses, indemnities and other amounts contemplated, under the DIP Loan Documents and this Interim Order, and (ii) perform all acts, to make, execute, deliver, enter into and perform under any and all other agreements, instruments, certificates, and other documents (including, without limitation, the execution and/or recordation of any collateral, pledge and security documents, mortgages, deeds of trust, control agreements, financing statements or other

-20-

documents), and to perform all such other and further acts, that may be necessary, required or desirable for the DIP Loan Parties to perform their obligations under the DIP Facility, the DIP Loan Documents and this Interim Order and to implement the transactions contemplated thereunder and hereunder.

(b)  *Authorization to Borrow.* The DIP Borrower is hereby authorized to borrow, and the DIP Guarantors are hereby authorized to jointly and severally guarantee the payment in full in cash of such borrowing with respect to, the principal amount of $40 million (plus applicable interest (including interest and other amounts payable-in-kind), premiums, payments, fees (including professional fees and expenses), costs, expenses, charges and other amounts payable under this Interim Order and the DIP Loan Documents in connection with such borrowing), under the DIP Facility, subject to the terms and conditions (including any conditions precedent to such borrowing) set forth in the DIP Loan Documents and this Interim Order. The Debtors are hereby authorized to use the proceeds of the DIP Facility and all Cash Collateral solely in the manner and for the purposes expressly permitted in the Approved Budget (subject to Permitted Variances), the DIP Loan Documents and this Interim Order.

(c)  *Roll Up.* Subject to entry of the Final Order, the Roll Up is approved, and upon entry of the Final Order, $70 million in obligations arising under the Prepetition Secured Notes held by each Rolled Up Noteholder Party shall automatically be deemed to be substituted and exchanged for, and converted into, DIP Loans for all purposes hereunder, on a cashless dollar for dollar basis, and shall not be subject to any contest, attack, objection, challenge, defense, claim, counterclaim or other cause of action, whether under the Bankruptcy Code, applicable non-bankruptcy law or otherwise.

LEGAL_US_E # 167127445.9 09999.99999
WEIL:\98950587\7\39031.0013

(d)      *DIP Fees and Expenses; Indemnification.* The DIP Loan Parties are authorized and directed to pay any and all (i) fees, premiums or other payments payable under the DIP Loan Documents (including, without limitation, the New Money Loan Commitment Payments, Termination Payments, Backstop Payments, Extension Payments (to the extent applicable) and Agent Fees (each as defined in the DIP Loan Agreement), and other payments, fees or amounts provided therein), (ii) amounts due (or that may become due) to the "Indemnitees" (as defined in the DIP Loan Agreement) in respect of the indemnification obligations under the DIP Loan Documents, and (iii) any other amounts payable in connection with the DIP Facility, including without limitation, the payment of all out of pocket costs, expenses and disbursements of the DIP Secured Parties, including, without limitation, the reasonable and documented fees and expenses of (A) Paul Hastings LLP ("***Paul Hastings***"), as counsel to the DIP Agent and the DIP Lenders, (B) Moelis & Company, LLC ("***Moelis***"), as investment banker and financial advisor to the DIP Lenders, pursuant to the terms of that certain letter agreement executed by and among Core Scientific and Moelis (the "***Moelis Fee Letter***"), and (C) any other professionals that may be retained by the Required DIP Lenders (in the case of this sub-clause (C), with the consent of the DIP Borrower, such consent not to be unreasonably withheld or delayed, which consent of the DIP Borrower shall not be required after the occurrence of a DIP Termination Event (as defined below) (collectively, the "***DIP Professional Fees and Expenses***"), in the case of each of the foregoing clauses (i), (ii) or (iii), whether or not such payments, premiums, fees, costs, expenses, disbursements or other amounts arose before, on or after the Petition Date, and whether or not the transactions contemplated herein or in the DIP Loan Documents are consummated.

LEGAL_US_E # 167127445.9 09999.99999
WEIL:\98850587\17\39031.0013

(e)      *Modification of DIP Loan Documents.* The DIP Loan Parties are hereby authorized to execute, deliver and perform under one or more amendments, waivers, consents, or other modifications (including, for the avoidance of doubt, the payment of any amendment fee, consent fee, waiver fee or similar fee paid or payable in connection therewith) to and under the DIP Loan Documents, in each case, in accordance with the provisions of the DIP Loan Agreement governing amendments thereto, each without further application to or order of the Court; *provided, however,* that any amendment to the DIP Loan Agreement shall require, at a minimum, the prior written consent of the Required DIP Lenders; *provided, further, however*, that any amendment that (a) shortens the maturity of the extensions of credit thereunder, (b) increases the aggregate commitments thereunder, or (c) increases the rate of interest payable with respect thereto (each, a "***Material DIP Amendment***"), shall be provided (which may be by electronic mail) to the U.S. Trustee and lead restructuring counsel to the Official Committee and filed with the Court no later than three (3) Business Days prior to the anticipated date of effectiveness of any such Material DIP Amendment, and if no objection to the Material DIP Amendment is made by the U.S. Trustee or the Official Committee within such three (3) Business Day period, then, without further application to or order of the Court, such Material DIP Amendment shall automatically be deemed approved and effective; *provided further, however,* if an objection is made by the U.S. Trustee or the Official Committee within such three (3) Business Day period, then such Material DIP Amendment shall be subject to a hearing and approval of the Court.

(f)      *DIP Funding Account*. Upon entry of this Interim Order, the DIP Borrower is hereby authorized and directed to establish the DIP Funding Account (as defined in the DIP Loan Agreement), which shall be held at the DIP Agent or shall be subject to a control

agreement in form and substance acceptable to the DIP Agent, and shall at all times be subject to the exclusive dominion and control of the DIP Agent. Subject to the Carve Out, from and after the Petition Date, until all DIP Obligations are Paid in Full, the proceeds of all DIP Borrowings under the DIP Facility, and all cash receipts, Cash Collateral, and all proceeds from the sale or other disposition of, or other revenue of any kind attributable to, any DIP Collateral that is now in, or shall hereafter come into, the possession or control of any of the DIP Loan Parties, or to which any of the DIP Loan Parties is now or shall hereafter become entitled, shall be deposited into the DIP Funding Account, and all cash and other amounts held in or credited to the DIP Funding Account may not be withdrawn or used by the DIP Loan Parties other than as expressly permitted hereunder or in the DIP Loan Documents.

(g)     *Perfection in Cash*. Subject to the Carve Out, and subject to paragraph 20 of this Interim Order, all financial institutions with which the DIP Loan Parties maintain accounts containing any of the DIP Loan Parties' cash or Cash Collateral are authorized and directed to comply with any request of the DIP Agent to turn over to the DIP Agent all cash or Cash Collateral therein without offset or deduction of any kind. The DIP Agent shall be entitled to all of the rights and benefits of all deposit account control agreements, blocked account control agreements, securities account control agreements, and similar agreements to which any of the DIP Loan Parties may be a party, without the need to enter into any such agreements. Notwithstanding (and without limiting) the foregoing, the DIP Loan Parties are authorized to enter into, and cause the financial institutions servicing or maintaining the DIP Loan Parties' deposit accounts (or other accounts) to enter into, such deposit account control agreements and other collateral agreements with the DIP Agent and such financial institutions as the DIP Agent may reasonably request.

LEGAL_US_E # 167127445.9 09999.99999
WEIL:\98835087\17\39031.0013

3.      *DIP Obligations.*

(a)      Upon execution and delivery of the DIP Loan Documents, the DIP Loan Documents shall constitute valid, binding, enforceable, and non-avoidable obligations of each of the DIP Loan Parties, and shall be fully enforceable against each of the DIP Loan Parties, their estates, and any successors thereto, including, without limitation, any estate representative or trustee appointed in any of the Chapter 11 Cases or in any case under Chapter 7 of the Bankruptcy Code upon the conversion of any of the Chapter 11 Cases, or in any other proceedings superseding or relating to any of the foregoing, and/or upon the dismissal of any of the Chapter 11 Cases or any such successor cases (collectively, the "***Successor Cases***"), in each case, in accordance with the terms of the DIP Loan Documents and this Interim Order.

(b)      Upon execution and delivery of the DIP Loan Documents, the DIP Loan Parties shall be jointly and severally liable for all DIP Obligations, including, without limitation, all loans, advances, indebtedness, obligations, extensions of credit, financial accommodations, principal, interest, payments, premiums or similar amounts, fees, costs, expenses, charges, indemnification and reimbursement obligations (whether contingent or absolute), and all other amounts, whether or not such obligations arose before or after the Petition Date, whenever the same shall become due and payable, whether at stated maturity, by required prepayment, declaration, acceleration, demand or otherwise, to the DIP Agent or any of the DIP Lenders under the DIP Loan Documents or this Interim Order. The DIP Obligations shall be due and payable, without notice or demand, and the use of Cash Collateral shall automatically cease, on the DIP Termination Declaration Date (as defined below) (subject to paragraph 20(b) hereof).

(c)      All obligations incurred, payments made, and transfers or grants of liens and security interests set forth in this Interim Order and the DIP Loan Documents by the DIP

Loan Parties are granted to or for the benefit of the DIP Loan Parties for fair consideration and reasonably equivalent value and are granted contemporaneously with the making of the loans and commitments and other financial accommodations secured thereby. No obligation, payment, transfer, or grant of liens or security interests under this Interim Order or the DIP Loan Documents to the DIP Secured Parties or the Prepetition Secured Parties shall be limited, stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable law, or subject to any challenge, objection, defense or claim, including, without limitation, avoidance (whether under Chapter 5 of the Bankruptcy Code or under applicable law (including any applicable state law Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law)), reduction, setoff, offset, recoupment, recharacterization, subordination (whether equitable, contractual or otherwise), reclassification, disgorgement, disallowance, impairment, marshalling, surcharge, recovery or other cause of action of any kind or nature whatsoever, whether arising under the Bankruptcy Code, applicable non-bankruptcy law or otherwise (subject, solely in the case of the DIP Professional Fees and Expenses and the Noteholder Professional Fees and Expenses (as defined below), only to the procedures set forth in paragraph 11 of this Interim Order).

4.     *No Obligation to Extend Credit/New Money Loan Cap.* The DIP Secured Parties shall have no obligation to make any loan or advance available under the DIP Loan Documents unless all of the conditions precedent to the making of such loan or advance by the DIP Secured Parties have been satisfied in full (or waived) in accordance with the terms of the DIP Loan Documents and this Interim Order. Notwithstanding anything contained in this Interim Order or the DIP Loan Documents to the contrary, in no event shall the aggregate principal amount of the DIP Loans advanced under the New Money Term DIP Facility pursuant to the DIP Loan

-26-

Agreement at any time (after giving effect to all DIP Borrowings previously made or requested) exceed the New Money Loan Commitment (as defined in the DIP Loan Agreement), subject in all respects to the New Money Loan Cap (as defined in the DIP Loan Agreement) of $56 million, as may be increased from to time after the Closing Date to the extent set forth in the DIP Loan Agreement.

5.      *No Duty to Monitor Compliance*. None of the DIP Secured Parties nor the Prepetition Secured Parties shall have any obligation or responsibility to monitor the Debtors' use of DIP Collateral, the Prepetition Collateral or Cash Collateral, and each of the DIP Secured Parties and the Prepetition Secured Parties may rely upon the Debtors' representations that the use of DIP Collateral, Prepetition Collateral and Cash Collateral complies with and is in accordance with the requirements of this Interim Order and the DIP Loan Documents.

6.      *DIP Liens.*

(a)      As security for the prompt and complete payment and performance of all DIP Obligations when due (whether upon stated maturity, prepayment, acceleration, declaration or otherwise), effective and perfected as of the entry of this Interim Order, and without the necessity of the execution, recordation or filing by any of the DIP Loan Parties or the DIP Secured Parties of any pledge, collateral or security documents, mortgages, deeds of trust, financing statements, notations of certificates of title, or any similar document or instrument, or the taking of any other action (including, without limitation, entering into any control agreements or taking any other action to take possession or control of any DIP Collateral), the DIP Agent, for the benefit of itself and the other DIP Secured Parties, is hereby granted valid, binding, enforceable, non-avoidable, and automatically and properly perfected liens and security interests

(collectively, the "**DIP Liens**") in all DIP Collateral, in each case, subject and subordinate to the Carve Out, and subject to the relative priorities set forth in this Interim Order.

(b)     The term "**DIP Collateral**" means all assets and properties of each of the DIP Loan Parties and their estates, of any kind or nature whatsoever, wherever located, whether tangible or intangible, real, personal or mixed, whether now owned or consigned by or to, or leased from or to, or hereafter acquired by, or arising in favor of, each of the DIP Loan Parties (including under any trade names, styles or derivations thereof), whether prior to or after the Petition Date, including, without limitation, (i) all Prepetition Collateral (including Cash Collateral), (ii) all "Collateral" as defined in the DIP Loan Agreement, (iii) all money, cash and cash equivalents, deposit accounts, securities accounts, commodities accounts or other accounts (including, without limitation, the DIP Funding Account), accounts receivable, rights to payment, contracts and contract rights, minerals and mineral rights, instruments, documents and chattel paper, securities (whether or not marketable), goods, furniture, machinery (including, without limitation, all application specific integrated circuit (ASIC) machines), plants, equipment, vehicles, inventory, any and all Bitcoin and all other digital assets, real property and leasehold interests, fixtures, franchise rights, patents, tradenames, trademarks, copyrights, licenses and other intellectual property, general intangibles, tax or other refunds, or insurance proceeds, the issued and outstanding capital stock of each Debtor, other equity or ownership interests, including equity interests in subsidiaries and non-wholly-owned subsidiaries, limited liability company interests, partnership interests, financial assets, investment property, supporting obligations, letters of credit and letter of credit rights, commercial tort claims and other claims and causes of action, books and records, and all rents, products, offspring, profits, and proceeds of each of the foregoing and all accessions to, substitutions and replacements for

each of the foregoing, including any and all proceeds of any insurance (including any business interruption and property insurance), indemnity, warranty or guaranty payable to any Debtor from time to time with respect to any of the foregoing, and (iv) subject to entry of the Final Order, all claims and causes of action arising under Chapter 5 of the Bankruptcy Code or any applicable state law Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law (collectively, the "*Avoidance Actions*") and all proceeds of or property recovered from Avoidance Actions, whether by judgment, settlement or otherwise ("*Avoidance Action Proceeds*"); *provided, however,* that DIP Collateral shall exclude any "Excluded Assets" (as defined in the DIP Loan Agreement) for so long as such DIP Collateral constitutes Excluded Assets, but shall include any and all proceeds and products of Excluded Assets (except to the extent such proceeds and products themselves constitute Excluded Assets).

(c)    The DIP Liens shall be subject to the following priorities (subject in each case to the Carve Out):

(i)    *First Priority Liens on Unencumbered Property.* Pursuant to section 364(c)(2) of the Bankruptcy Code, the DIP Liens shall be valid, binding, continuing, enforceable, non-avoidable, fully and automatically perfected first priority liens and security interests in all DIP Collateral that is not subject to any liens and security interests that were valid, non-avoidable and properly perfected as of the Petition Date (or that were properly perfected subsequent to the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code), including, subject to entry of the Final Order, all Avoidance Actions and Avoidance Action Proceeds (collectively, the "*Unencumbered Assets*"), which DIP Liens shall be junior and subordinated only to the Carve Out.

(ii)    *Priming Liens and Liens Junior to Certain Other Liens.* Pursuant to sections 364(c)(3) and 364(d)(1) of the Bankruptcy Code, the DIP Liens shall be valid, binding, continuing, enforceable, non-avoidable, fully and automatically perfected liens and security interests in all DIP Collateral (other than the DIP Collateral described in paragraph 6(c)(i) hereof, as to which DIP Liens are described in such paragraph), which DIP Liens shall be (A) subject only to the (1) Carve Out, (2) the liens and security interests listed in Schedule 10.2.2 of the DIP Loan Agreement, which schedule shall be acceptable to the Required DIP Lenders (in each case, to the extent such liens and security interests are valid, perfected and non-avoidable as of the Petition Date, the "*Permitted Prior Liens*"), and (3) the Equipment Lender Adequate Protection Liens in

-29-

Prepetition Equipment Financing Collateral (as applicable), and (B) senior to any and all other liens and security interests in the DIP Collateral, including, without limitation, the Prepetition Liens, the Equipment Lender Adequate Protection Liens in the Prepetition Collateral and the Noteholder Adequate Protection Liens.

(d)    Any provision of any lease, loan document, easement, use agreement, proffer, covenant, license, contract, organizational document or other agreement that requires the consent or approval of one or more landlords, licensors or other parties, or requires the payment of any fees or obligations to any governmental entity, non-governmental entity or any other person or entity, in order for any Debtor to pledge, grant, mortgage, sell, assign, or otherwise transfer any interest therein (including any fee or leasehold interest), any proceeds thereof or other DIP Collateral, shall be deemed inconsistent with the provisions of the Bankruptcy Code and shall have no force or effect with respect to the granting of the DIP Liens or Adequate Protection Liens (as defined below) in any such interest therein or other DIP collateral, or in the proceeds of any assignment and/or sale thereof by any Debtor in favor of the DIP Secured Parties in accordance with the DIP Loan Documents and this Interim Order.

7.    *DIP Superpriority Claims.* Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed superpriority administrative expense claims against each of the Debtors, with priority over any and all other claims against the Debtors, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, any and all other administrative expense claims of the kind specified in or ordered pursuant to sections 105, 326, 327, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113 or 1114 of the Bankruptcy Code, or any other provision of the Bankruptcy Code (including, without limitation, the Adequate Protection Claims and any other Adequate Protection Obligations), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment (the "***DIP Superpriority Claims***"), subject only to the Carve

-30-

Out. The DIP Superpriority Claims shall, for purposes of section 1129(a)(9)(A) of the Bankruptcy Code, be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code. The DIP Superpriority Claims shall be payable by each of the Debtors, on a joint and several basis, and shall have recourse to all DIP Collateral, subject only to the Carve-Out. The DIP Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code, including in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

8. *Use of DIP Collateral and Cash Collateral.*

(a) The Debtors are hereby authorized to use the proceeds of DIP Loans and all Cash Collateral solely to the extent expressly permitted under the Approved Budget (subject to Permitted Variances) and subject to the terms and conditions set forth in the DIP Loan Documents and this Interim Order, provided, that the Prepetition Secured Parties are granted adequate protection, as set forth herein.

(b) Without the prior written consent of the Required DIP Lenders, the DIP Loan Parties shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of the DIP Collateral (or enter into any binding agreement to do so), except as may be expressly permitted by the DIP Loan Documents and this Interim Order. All collection and proceeds of DIP Collateral, whether from ordinary course collections, asset sales, debt or equity issuances, insurance recoveries, condemnation, or otherwise, will be deposited and applied as required by this Interim Order and the DIP Loan Documents. The Debtors shall not transfer any cash, assets, properties or other DIP Collateral to any DIP Loan Party or other affiliate of the Debtors that is not a Debtor in these Chapter 11 Cases without the prior written consent of the Required DIP Lenders, in their discretion.

-31-

(c)     Except as may be provided in the DIP Loan Documents, the Debtors are authorized and directed, upon the closing of a sale of any of the DIP Collateral, to immediately pay all proceeds of any such sale to the DIP Agent, for the benefit of itself and the other DIP Secured Parties, to satisfy the DIP Obligations in accordance with this Interim Order and the DIP Loan Documents until Paid in Full[6], and any order approving the sale of such DIP Collateral shall provide that the sale is conditioned upon the payment of such DIP Obligations (except to the extent otherwise agreed in writing by the Required DIP Lenders).

9.      *Approved Budget.* The DIP Loan Parties shall comply at all times with the Approved Budget then in effect (subject to Permitted Variances). Any amendments, supplements or updates to the Initial Budget (or any subsequent Approved Budget) (each, a "***Budget Supplement***") shall be subject to the prior approval of the Required DIP Lenders in accordance with the DIP Loan Agreement, and any such Budget Supplement shall not constitute an "Approved Budget" unless and until it is so approved by the Required DIP Lenders (and until any such Budget Supplement is approved by the Required DIP Lenders, the prior Approved Budget shall remain in effect).

10.     *Adequate Protection.* The Prepetition Secured Parties are entitled, pursuant to sections 361, 362, 363(e), 364(d)(1) and 507 of the Bankruptcy Code, to adequate protection of their Prepetition Liens in Prepetition Collateral (including Cash Collateral), as follows (the liens, security interests, payments and other obligations set forth in this paragraph 10 are collectively referred to herein as the "***Noteholder Adequate Protection Obligations***"):

---

[6]      For purposes hereof, the term "***Paid in Full***" or "***Payment in Full***" means, with respect to the DIP Obligations or the Prepetition Secured Obligations (as the case may be), the irrevocable and indefeasible payment in full in cash of all DIP Obligations or Prepetition Secured Obligations (as the case may be), other than contingent indemnification and expense reimbursement obligations for which no claim or demand has been asserted, and all commitments thereunder shall have irrevocably, permanently and finally expired or shall have been terminated, cancelled and discharged.

(a)      *Noteholder Adequate Protection Claims.* The Prepetition Agents, for their own benefit and for the benefit of the Prepetition Secured Noteholders, are hereby granted, in the amount of any aggregate Diminution in Value of the Prepetition Liens in the Prepetition Collateral (including Cash Collateral) from and after the Petition Date, superpriority administrative expense claims contemplated by section 507(b) of the Bankruptcy Code against each of the Debtors (the "***Noteholder Adequate Protection Claims***"), which shall be payable by each of the Debtors on a joint and several basis, and shall have recourse to all DIP Collateral. The Noteholder Adequate Protection Claims shall be (a) subject and subordinate only to the Carve Out and the DIP Superpriority Claims, and (b) senior to any and all other administrative expense claims and all other claims against the Debtors and their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, the Equipment Lender Adequate Protection Claims.

(b)      *Noteholder Adequate Protection Liens.* The Prepetition Agents, for the benefit of themselves and for the benefit of the Prepetition Secured Noteholders, are hereby granted, effective and perfected as of the entry of this Interim Order, and without the necessity of the execution, recordation or filing by the DIP Loan Parties or any of the Prepetition Secured Parties of any pledge, collateral or security documents, mortgages, deeds of trust, financing statements, notations of certificates of title for titled goods, or any similar document or instrument, or the taking of any other action (including, without limitation, entering into any control agreements or taking possession or control of any DIP Collateral or Prepetition Collateral), in the amount of any aggregate Diminution in Value of the Prepetition Liens in the Prepetition Collateral (including Cash Collateral) from and after the Petition Date, valid, binding, enforceable and automatically perfected post-petition liens and security interests in all DIP

-33-

Collateral (the "***Noteholder Adequate Protection Liens***"). The Noteholder Adequate Protection Liens shall be (i) junior and subordinated only to (A) the Carve Out, (B) the Permitted Prior Liens, (C) the DIP Liens, and (D) the Equipment Lender Adequate Protection Liens in the Prepetition Equipment Financing Collateral, (ii) *pari passu* with the Equipment Lender Adequate Protection Liens in Unencumbered Assets, and (iii)  senior to any and all other liens and security interests in the DIP Collateral, including, without limitation, the Equipment Lender Adequate Protection Liens in the Prepetition Collateral.

(c)  *Noteholder Professional Fees and Expenses.* The DIP Loan Parties are authorized and directed to pay, without the necessity of filing fee applications with the Court or compliance with the U.S. Trustee's fee guidelines, all of the out of pocket fees, costs and expenses of (i) the Prepetition Agents, including, without limitation, the reasonable and documented fees and expenses of Shipman & Goodwin LLP, counsel to the Prepetition Agents, and (ii) the fees and expenses of the ad hoc group of certain Prepetition Secured Noteholders (the "***Ad Hoc Group***"), including, without limitation, (A) the reasonable and documented fees and expenses of Paul Hastings, as counsel to the Ad Hoc Group, (B) the fees and expenses of Moelis, as investment banker and financial advisor to the Ad Hoc Group, pursuant to the terms of the Moelis Fee Letter, and (C) such other professionals that may be retained by the Ad Hoc Group (subject in the case of clause (C) to the consent of the DIP Borrower, which consent shall not be unreasonably withheld or delayed, provided that such DIP Borrower consent shall not be required following the occurrence of a DIP Termination Event) (collectively, the "***Noteholder Professional Fees and Expenses***"), in each case, whether arising on, prior to or after the Petition Date.

(d)      *Reporting.* The Debtors shall contemporaneously provide the Prepetition Agents and the Ad Hoc Group (and their respective advisors) with all reports, documents and other information required to be delivered to the DIP Secured Parties under the DIP Loan Documents and this Interim Order.

(e)      *Cash Management Covenant.* The DIP Loan Parties shall maintain their cash management arrangements in a manner consistent with those described in the applicable "first day" order, which shall be in form and substance reasonably acceptable to the Ad Hoc Group.

11.      *Fees and Expenses; Payments.*

(a)      The payment of all DIP Professional Fees and Expenses and Noteholder Professional Fees and Expenses hereunder shall not be subject to further application to or approval of the Court, and shall not be subject to allowance or review by the Court or subject to the U.S. Trustee's fee guidelines, and no attorney or advisor to the DIP Secured Parties or the Prepetition Secured Parties shall be required to file an application seeking compensation for services or reimbursement of expenses with the Court; *provided, however*, that any time such professionals seek payment of fees and expenses from the Debtors from and after the Closing Date but prior to the effective date of any chapter 11 plan, each such professional shall provide summary copies of its invoices (which shall not be required to contain time entries and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of their invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine) to lead restructuring counsel to the Debtors, the U.S. Trustee, and lead restructuring counsel to the

-35-

Official Committee (collectively, the "***Review Parties***"). Any objections raised by any Review Party with respect to such invoices must be in writing and state with particularity the grounds therefor and must be submitted to the affected professional within ten (10) calendar days after delivery of such invoices to the Review Parties (such ten (10) day calendar period, the "***Review Period***"). If no written objection is received prior to the expiration of the Review Period from the Review Parties, the Debtors shall pay such invoices within three (3) Business Days following the expiration of the Review Period. If an objection is received within the Review Period from the Review Parties, the Debtors shall promptly pay the undisputed amount of the invoice, and the disputed portion of such invoice shall not be paid until such dispute is resolved by agreement between the affected professional and the objecting party or by order of this Court. Any hearing to consider such an objection to the payment of any fees, costs or expenses set forth in a professional fee invoice hereunder shall be limited to the reasonableness of the fees, costs and expenses that are the subject of such objection.

(b)     Notwithstanding anything contained in this paragraph 11 to the contrary, the DIP Loan Parties are authorized and directed to pay the following: (i) promptly following the entry of this Interim Order, the DIP Loan Parties shall pay in full in cash all DIP Professional Fees and Expenses and all Noteholder Professional Fees and Expenses, in each case, whether arising prior to, on or after the Petition Date, through the date of payment, (ii) upon the Closing Date (as defined in the DIP Loan Agreement), the DIP Loan Parties shall pay in full in cash all DIP Professional Fees and Expenses and all Noteholder Professional Fees and Expenses arising through and including the Closing Date, in each case, without the need for any professional engaged by or on behalf of the DIP Secured Parties or the Prepetition Secured Parties to first deliver a copy of its invoice to any of the Review Parties (other than the DIP Loan Parties), and

-36-

(iii) following the Closing Date, the DIP Loan Parties shall pay in full in cash all DIP Professional Fees and Expenses and all Noteholder Professional Fees and Expenses incurred after the Closing Date in accordance with and subject to the procedures set forth above in this paragraph 11(a) of this Interim Order.

(c)     Notwithstanding anything contained in this paragraph 11 to the contrary, to the extent any chapter 11 plan filed in the Chapter 11 Cases and confirmed by an order of this Court provides for different procedures for the submission of invoices and payment of professional fees of any professional persons that the Debtors are authorized to pay pursuant to this Interim Order, then the procedures set forth in such confirmed chapter 11 plan shall control, provided that no such professional person shall be subject to more onerous procedures for compensation than are set forth herein.

(d)     Notwithstanding anything contained in this Interim Order to the contrary, any and all payments, premiums, fees, costs, expenses and other amounts paid at any time by any of the DIP Loan Parties to the DIP Secured Parties or the Prepetition Secured Parties pursuant to the requirements of this Interim Order or the DIP Loan Documents, whether prior to, on or after the Petition Date, shall be non-refundable and irrevocable, are hereby approved (and to the extent paid prior to entry of the Interim Order, ratified in full), and shall not be subject to any challenge, objection, defense, claim or cause of action of any kind or nature whatsoever, including, without limitation, avoidance (whether under Chapter 5 of the Bankruptcy Code or under applicable law (including any applicable state law Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law)), reduction, setoff, offset, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise), reclassification, disgorgement, disallowance, impairment, marshaling, surcharge or recovery or any other cause

-37-

of action, whether arising under the Bankruptcy Code, applicable non-bankruptcy law or otherwise, by any person or entity (subject, solely in the case of the DIP Professional Fees and Expenses and the Noteholder Professional Fees and Expenses, to paragraphs 11(a), (b) and (c) of this Interim Order).

12.     *Adequate Protection Reservation of Rights of Prepetition Secured Parties.* Notwithstanding any other provision hereof, the grant of adequate protection to the Prepetition Secured Parties pursuant to this Interim Order shall not be deemed an admission that the interests of such Prepetition Secured Parties are indeed adequately protected, and is without prejudice to the right of the Prepetition Secured Parties to seek additional relief with respect to the use of Prepetition Collateral (including Cash Collateral), or to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection, and without prejudice to the right of the Debtors or any other party in interest to contest any such modification. Nothing herein shall be deemed to waive, modify or otherwise impair the respective rights of the Prepetition Secured Parties under the Prepetition Notes Documents or under applicable law, and the Prepetition Secured Parties expressly reserve all of their respective rights and remedies whether now existing or hereafter arising under the Prepetition Notes Documents and applicable law. Without limiting the foregoing, and subject only to the Carve Out, nothing contained in this Interim Order shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided hereunder is insufficient to compensate the Prepetition Secured Parties for any Diminution in Value during the Chapter 11 Cases.

13.     *Reservation of Rights.* Except as otherwise expressly provided herein or in the DIP Loan Documents, the entry of this Interim Order is without prejudice to, and does not

constitute a waiver of, expressly or implicitly: (a) the rights of the DIP Secured Parties or the Prepetition Secured Parties to seek any other or supplemental relief in respect of the DIP Loan Parties, (b) the rights of the DIP Secured Parties or the Prepetition Secured Parties under the DIP Loan Documents or the Prepetition Notes Documents, the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation, the right to request modification of the automatic stay of section 362 of the Bankruptcy Code, or (c) any other rights, claims, or privileges (whether legal, equitable or otherwise) of the DIP Secured Parties or the Prepetition Secured Parties.

14.    *Modification of Automatic Stay.* The automatic stay imposed by section 362(a) of the Bankruptcy Code is hereby vacated and modified, without application to or further order of this Court, to permit: (a) the DIP Loan Parties to grant the DIP Liens and the DIP Superpriority Claims, and to perform such acts as the DIP Secured Parties may request to assure the perfection and priority of the DIP Liens, (b) the DIP Loan Parties to incur all liabilities and obligations to the DIP Secured Parties as contemplated under this Interim Order and the DIP Loan Documents, (c) the Debtors to grant the Adequate Protection Liens and the Adequate Protection Claims, and to perform such acts as the Prepetition Agents may request to assure the perfection and priority of the Adequate Protection Liens, (d) the DIP Loan Parties to incur all liabilities and obligations to the Prepetition Secured Parties, including all Adequate Protection Obligations, as contemplated under this Interim Order and the DIP Loan Documents, (e) the DIP Loan Parties to pay all amounts required hereunder and under the DIP Loan Documents, (f) the DIP Secured Parties and the Prepetition Secured Parties to retain and apply payments made in accordance with the terms of this Interim Order and the DIP Loan Documents, (g)  subject to paragraph 20(b) of this Interim Order, the DIP Secured Parties and the Prepetition Secured Parties to exercise, upon

LEGAL_US_E # 167127445.9 09999.99999
WEIL:\98950847\5\39031.0013
DMFIRM #402855084 v4

the occurrence of any DIP Termination Event (as defined below), all rights and remedies provided for in this Interim Order, the DIP Loan Documents, the Prepetition Notes Documents or applicable law, (h) the DIP Loan Parties to perform under this Interim Order and the DIP Loan Documents, and to take any and all other actions that may be necessary, required or desirable for the performance by the DIP Loan Parties under this Interim Order and the DIP Loan Documents and the implementation of the transactions contemplated hereunder and thereunder, and (i) the implementation of all of the terms, rights, benefits, privileges, remedies, and provisions of this Interim Order and the DIP Loan Documents.

15.    *Perfection of DIP Liens and Adequate Protection Liens.*

(a)    This Interim Order shall be sufficient and conclusive evidence of the attachment, validity, perfection, and priority of all liens and security interests granted hereunder and under the DIP Loan Documents, including, without limitation, the DIP Liens and the Adequate Protection Liens, without the necessity of the execution, recordation or filing of any pledge, collateral or security agreements, mortgages, deeds of trust, lockbox or control agreements, financing statements, notations of certificates of title for titled goods, or any other document or instrument, or the taking of any other action (including, without limitation, entering into any deposit account control agreement or other act to take possession or control of any DIP Collateral), to attach, validate, perfect or prioritize such liens and security interests, or to entitle the DIP Secured Parties and the Prepetition Secured Parties to the priorities granted herein (other than, to the extent applicable, any such filings required under applicable non-U.S. law to attach, validate, perfect or prioritize such liens).

(b)    Without in any way limiting the automatically effective perfection of the liens and security interests granted under this Interim Order and the DIP Loan Documents, the

DIP Agent and the Prepetition Agents, respectively, are hereby authorized, but not required, as they in their sole discretion may determine for any reason, to execute, file and record (and to execute in the name of the DIP Loan Parties, as their true and lawful attorneys, with full power of submission, to the maximum extent permitted under applicable law) financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or take possession or control over cash or securities, or to amend or modify security documents, or to subordinate existing liens and any other similar action or action in connection therewith or take any other action in order to validate, perfect, preserve and enforce the liens and security interests granted to them hereunder or under the DIP Loan Documents or to otherwise evidence such liens and security interests in all DIP Collateral (each, a "***Perfection Action***"); *provided, however,* that, whether or not the DIP Agent or the Prepetition Agents determine, in their sole discretion, to take any Perfection Action with respect to any liens or security interests granted hereunder, such liens and security interests shall nonetheless be deemed valid, perfected, allowed, enforceable, non-avoidable as of the entry of this Interim Order. Upon the request of the DIP Agent or the Prepetition Agents, the DIP Loan Parties and each of the Prepetition Secured Parties, without any further consent of any party, are authorized and directed to take, execute, deliver and file such instruments (in each case, without representation or warranty of any kind) to enable the DIP Agent and/or the Prepetition Agents to further validate, perfect, preserve and enforce the DIP Liens and the Adequate Protection Liens. All such documents will be deemed to have been recorded and filed as of the Petition Date.

(c)    A certified copy of this Interim Order may, as the DIP Agent and/or the Prepetition Agents may determine in their discretion, be filed with or recorded in filing or recording offices in addition to or in lieu of any financing statements, trademark filings,

-41-

copyright filings, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized and directed to accept such certified copy of this Interim Order for filing and/or recording, as applicable. The automatic stay of section 362(a) of the Bankruptcy Code shall be modified to the extent necessary to permit the DIP Agent or the Prepetition Agents to take all actions, as applicable, referenced in this paragraph 15.

16. *Protection of Lenders' Rights.*

(a)      Until the DIP Obligations are Paid in Full, the Prepetition Secured Parties shall: (i) have no right to and shall take no action to foreclose upon, or recover in connection with, the liens or security interests granted to the Prepetition Secured Parties pursuant to the Prepetition Notes Documents or this Interim Order, or otherwise seek to exercise or enforce any rights or remedies against any DIP Collateral, including in connection with the Adequate Protection Liens, (ii) be deemed to have consented to any transfer, disposition or sale of, or release of liens or claims on, such DIP Collateral or the proceeds thereof (but not any such proceeds remaining after Payment in Full of all DIP Obligations) to the extent such transfer, disposition, sale, or release is authorized by the DIP Secured Parties in accordance with the DIP Loan Documents and this Interim Order, (iii) not file any further financing statements, patent filings, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or otherwise take any action to perfect their security interests in the DIP Collateral other than, solely as to this <u>clause (iii)</u>, the Prepetition Agents filing financing statements or other documents or instruments to perfect the liens granted pursuant to this Interim Order or as may be required by applicable state law to continue the perfection of valid and unavoidable liens or security interests existing as of the Petition Date, or (iv) deliver or cause to be delivered, at the DIP Loan Parties' cost and expenses, any termination statements, releases and/or assignments in

-42-

favor of the DIP Agent and the DIP Secured Parties or other documents necessary to effectuate and/or evidence the release, termination and/or assignment of liens or security interests on any portion of DIP Collateral subject to any sale or disposition authorized hereunder and under the DIP Loan Documents.

(b)     No Prepetition Secured Party may, directly or indirectly, (i) contest, or support any other Person in contesting, in any proceeding, the extent, validity, attachment, priority, or enforceability of any DIP Lien held by or on behalf of any of the DIP Secured Parties in the DIP Collateral (or the extent, validity, allowability, or enforceability of any DIP Obligations secured thereby or purported to be secured thereby) or the provisions of the DIP Loan Documents or this Interim Order, (ii) take any action that would restrain, hinder, limit, delay or otherwise interfere with the exercise of any rights or remedies by any of the DIP Secured Parties, or (iii) contest, object to, or support any other Person in contesting or objecting to, the manner in which any DIP Secured Party seeks to enforce or collect the DIP Obligations, the DIP Superpriority Claims or the DIP Liens or any amendment, waiver or modification of any DIP Loan Document or this Interim Order.

(c)     To the extent any Prepetition Secured Party has possession or control of any Prepetition Collateral or DIP Collateral, or has been noted as a secured party on any security agreement, mortgage, leasehold mortgage, landlord waiver, financing statement, control agreement, certificate of title or other security document, or is the secured party under any of the Prepetition Notes Documents, then the DIP Agent, for the benefit of itself and the other DIP Secured Parties, shall also be deemed to be the secured party under each such security document, and shall also be deemed to have possession or control, and shall have all the rights and powers attendant to that position (including, without limitation, rights of enforcement), and shall act in

-43-

that capacity, and distribute any proceeds recovered or received therefrom in accordance with the terms of this Interim Order and the DIP Loan Documents, and any such Prepetition Secured Party shall comply with the instructions of the DIP Agent with respect to the exercise of such possession or control.

(d)    Except as may otherwise be provided in the DIP Loan Agreement, so long as the DIP Obligations have not been Paid In Full, in the event that any Prepetition Secured Party that holds a lien or security interest in Prepetition Collateral receives any Prepetition Collateral or proceeds of Prepetition Collateral, or receives any payment on account of such lien or security interest in the Prepetition Collateral (whether in connection with the exercise of any right or remedy (including setoff), payment or distribution from the DIP Loan Parties, mistake, or otherwise) prior to the Payment in Full of all DIP Obligations, such person or entity shall be deemed to have received, and shall hold, any such payment or proceeds of Prepetition Collateral in trust for the benefit of the DIP Secured Parties, and shall immediately turn over all such proceeds to the DIP Agent, for the benefit of itself and the other DIP Secured Parties, in the same form as received, with any necessary endorsements, for application in accordance with the DIP Loan Documents and this Interim Order. The DIP Agent is hereby authorized to make any such endorsements as agent for any such person or entity that holds a lien or security interest in Prepetition Collateral. This authorization is coupled with an interest and is irrevocable.

17.    *Maintenance of DIP Collateral.* Until such time as all DIP Obligations are Paid in Full (or as otherwise agreed in writing by the Required DIP Lenders), the DIP Loan Parties shall continue to maintain all property, operational, and other insurance as required and as specified in the DIP Loan Documents. Upon the entry of this Interim Order, the DIP Collateral Agent, for the benefit of itself and the DIP Secured Parties, shall automatically be deemed to be named as

-44-

additional insured and lender loss payee under each insurance policy maintained by the DIP

Loan Parties (including all property damage and business interruption insurance policies of the

DIP Loan Parties, whether expired, currently in place, or to be put in place in the future), and

shall act in that capacity and distribute any proceeds recovered or received in respect of any such

insurance policies in accordance with the terms of this Interim Order and the DIP Loan

Documents.

18.     *Cash Management.* Until such time as all DIP Obligations and Prepetition

Secured Obligations are Paid in Full, the DIP Loan Parties shall maintain the cash management

system in accordance with the applicable "first day" order, which shall be in form and substance

acceptable to the Required DIP Lenders. The DIP Loan Parties shall not open any new deposit or

securities account that is not subject to the liens and security interests of each of the DIP Secured

Parties (in which case they shall be subject to the lien priorities and other provisions set forth in

this Interim Order).

19.     *Reporting.* Without limiting the requirements contained herein or in the DIP Loan

Documents, the DIP Loan Parties and their Representatives shall (a) provide the DIP Agent, the

DIP Lenders, the Ad Hoc Group and the Official Committee (and each of their respective

advisors) with (i) all reports, documents, and information required to be delivered under the DIP

Loan Documents (contemporaneously when the same is required to be delivered thereunder), and

(ii)  reasonable access, upon reasonable notice and during regular business hours, to the DIP

Loan Parties' books and records, assets and properties, for purposes of monitoring the DIP Loan

Parties' businesses and operations and the value of the DIP Collateral, and (b) cooperate and

consult with, and provide information reasonably requested by the DIP Agent, the DIP Lenders,

the Ad Hoc Group or the Official Committee (and their respective advisors) concerning the DIP

Loan Parties' businesses, financial condition, properties, business operations and assets, and the DIP Loan Parties hereby authorize their Representatives to cooperate and consult with, and promptly provide to the such parties (in each case, together with their respective advisors) such information.

20.     *DIP Termination Event; Exercise of Remedies.*

(a)     *DIP Termination Events.* The occurrence of any of the following shall constitute a "DIP Termination Event" under this Interim Order (each a "***DIP Termination Event***"), unless waived in writing by the Required DIP Lenders: (i) the occurrence of an "Event of Default" under and as defined in the DIP Loan Agreement, (ii) the occurrence of the "Termination Date" (as defined in the DIP Loan Agreement), (iii) 11:59 p.m. New York City time on the date that is thirty-five (35) calendar days (and if such 35th calendar day is not a Business Day, the first succeeding Business Day thereafter) after the Petition Date (or such later date determined in writing (which may be via electronic mail) by the Required DIP Lenders in their discretion), if the Final Order, in form and substance acceptable to the Required DIP Lenders in their discretion, has not been entered by the Court by such date and time, (iv) the substantial consummation (as defined in 11 USC § 1101(2) of the Bankruptcy Code) of a chapter 11 plan of any of the Debtors, (v) any of the DIP Loan Parties seeks authorization from the Court for (or the Court enters an order authorizing or approving) any amendment, modification, or extension of this Interim Order or the DIP Loan Documents without the prior written consent of the Required DIP Lenders (and no such consent shall be implied by any other action, inaction, or acquiescence of any of the DIP Secured Parties), (vi) the failure of the DIP Loan Parties to make any payment required under this Interim Order or the DIP Loan Documents to any of the DIP Secured Parties or the Prepetition Secured Parties as and when due and payable hereunder or

-46-

thereunder, or (vii) the failure by any of the DIP Loan Parties to timely perform or comply with any of the other terms, provisions, conditions or other obligations under this Interim Order.

(b)     *Exercise of Remedies.* The DIP Loan Parties shall immediately provide notice to counsel to the DIP Agent, the DIP Lenders, the Prepetition Agents and the Ad Hoc Group of the occurrence of any DIP Termination Event. Upon the occurrence of a DIP Termination Event, without further application to or order from the Court, the automatic stay provisions of Section 362 of the Bankruptcy Code shall be vacated and modified to the extent necessary to permit the DIP Agent (acting at the instruction of the Required DIP Lenders) and/or, with respect to clause (vi) below, the Prepetition Agents (acting at the instruction of the requisite Prepetition Secured Parties under the applicable Prepetition Notes Documents), as applicable, to take any of the following actions, at the same or different time: (i) deliver a written notice (which may be via electronic mail) to lead restructuring counsel for the Debtors, the U.S. Trustee and lead restructuring counsel for the Official Committee (the "***Remedies Notice***")[7] declaring the occurrence of a DIP Termination Event (such date, the "***DIP Termination Declaration Date***") and/or deliver a Carve Out Notice (as defined below), (ii) declare the termination, reduction or restriction of the commitments under the DIP Facility (to the extent any such commitment remains), (iii) declare all DIP Obligations to be immediately due and payable, without presentment, demand or protest or other notice of any kind, all of which are expressly waived by the DIP Loan Parties, (iv) declare the termination of the DIP Facility and the DIP Loan Documents as to any further liability or obligation thereunder, but without affecting the DIP Liens, the DIP Superpriority Claims or the DIP Obligations, (v) declare the reduction or restriction on the DIP Facility or the DIP Loan Documents, (vi) declare the termination,

---

[7]     For the avoidance of doubt, the Carve Out Notice and the Remedies Notice may be included in the same notice.

restriction or revocation of the ability of the Debtors to use Cash Collateral, (vii) invoke a Cash Dominion Period and/or sweep all cash or other amounts contained in the DIP Funding Account, and (viii) charge interest at the default rate set forth in the DIP Loan Agreement; *provided, however,* that following the occurrence of a DIP Termination Event, prior to the exercise or enforcement of any rights against DIP Collateral or Prepetition Collateral (as the case may be), the DIP Agent (acting at the instruction of the Required DIP Lenders) and/or the Prepetition Agents (acting at the instruction of the requisite Prepetition Secured Parties under the applicable Prepetition Notes Documents), as applicable, shall be required to file a motion with the Court on five (5) calendar days' notice (subject to the Court's availability) seeking an emergency hearing (the "***Stay Relief Hearing***") to determine whether a DIP Termination Event has occurred (and the DIP Loan Parties and the Official Committee shall not object to the shortened notice with respect to such Stay Relief Hearing). In the event the Court determines during a Stay Relief Hearing that a DIP Termination Event has occurred, the Court may fashion an appropriate remedy, which may include, *inter alia*, (A) the exercise of any and all rights or remedies available to the DIP Secured Parties under this Interim Order, the DIP Loan Documents or applicable law against the DIP Collateral, and (B) following the Payment in Full of all DIP Obligations (unless the Required DIP Lenders have otherwise agreed in writing), the exercise of any and all rights and remedies available to the Prepetition Secured Parties under this Interim Order, the Prepetition Notes Documents and applicable law against the DIP Collateral and/or Prepetition Collateral; *provided* that the rights of the Debtors to contest such relief are expressly preserved.

(c)     *Remedies Notice Period.* During the period from and after the Termination Declaration Date through the date of the Stay Relief Hearing (the "***Remedies Notice Period***"),

the Debtors shall be permitted to use Cash Collateral solely to fund (i) payroll and other critical operating expenses included in (and subject to) the Approved Budget that are critically necessary to keep the Debtors' businesses operating or that have been consented to by the Required DIP Lenders (which consent shall not be unreasonably withheld or delayed), and (ii) the Professional Fees Escrow Amount; *provided, however*, that any fees or expenses incurred by the DIP Loan Parties or the Official Committee during the Remedies Notice Period shall permanently reduce the Carve Out Amount (as defined below). For the avoidance of doubt, during the Remedies Notice Period, the DIP Lenders shall not be obligated to provide any DIP Loans or advance any credit at any time from and after the occurrence of a DIP Termination Event.

(d)     *Leased Premises.* On or after a DIP Termination Declaration Date, the DIP Secured Parties shall be entitled to enter upon any leased premises in accordance with (i) a separate agreement with the landlord by and between the DIP Agent or the Prepetition Agents (as applicable) and the applicable landlord, (ii) consent of the landlord, (iii) upon entry of an order of this Court, upon notice to the landlord and a hearing, or (iv) in accordance with the rights of the DIP Agents or the Prepetition Agents (as applicable) under applicable non-bankruptcy law.

(e)     *Cooperation.* The DIP Loan Parties shall cooperate with the DIP Secured Parties and/or the Prepetition Secured Parties in their efforts to enforce their liens and security interests in the DIP Collateral or the Prepetition Collateral, as applicable, and (other than the right to contest whether a DIP Termination Event has occurred and is continuing) the DIP Loan Parties shall not take or direct any entity to take any action designed or intended to hinder or restrict in any respect such party from enforcing its rights or remedies in the DIP Collateral or the Prepetition Collateral, as applicable.

21.     *No Waiver by Failure to Seek Relief.* The rights and remedies of the DIP Secured Parties and the Prepetition Secured Parties specified herein are cumulative and not exclusive of any rights or remedies that the DIP Secured Parties or the Prepetition Secured Parties may have under this Interim Order, the DIP Loan Documents, the Prepetition Notes Documents, applicable law or otherwise. The failure or delay on the part of any of the DIP Secured Parties or the Prepetition Secured Parties to seek relief or otherwise exercise their rights and remedies under this Interim Order, the DIP Loan Documents, the Prepetition Notes Documents or applicable law, as the case may be, shall not constitute a waiver of any of their respective rights hereunder, thereunder or otherwise. Except as expressly set forth herein, none of the rights or remedies of the DIP Secured Parties or the Prepetition Secured Parties under this Interim Order, the DIP Loan Documents and the Prepetition Notes Documents shall be deemed to have been amended, modified, suspended, or waived unless such amendment, modification, suspension, or waiver is express, in writing and signed by the requisite parties under the DIP Loan Documents and the requisite parties under the Prepetition Notes Documents, as applicable. No consents required hereunder by any of the DIP Secured Parties or the Prepetition Secured Parties shall be implied by any inaction or acquiescence by any of the DIP Secured Parties or the Prepetition Secured Parties (as applicable).

22.     *Carve Out.*

(a)     *Priority of Carve Out*. Each of the DIP Liens, the DIP Superpriority Claims, the Prepetition Liens, the Adequate Protection Liens, and the Adequate Protection Claims shall be subject and subordinate to payment of the Carve Out. The Carve Out shall be senior to all claims and liens over all assets of the Debtors, including any DIP Collateral and Prepetition Collateral, as set forth in this Interim Order. For the avoidance of doubt, after the

-50-

occurrence of the DIP Termination Declaration Date and the date upon which the DIP Obligations are Paid in Full, the Carve Out shall remain in effect as to the Prepetition Obligations and the Adequate Protection Obligations, and the Debtors shall be permitted and required to continue to fund amounts in relation to the Carve Out in accordance with the terms of this Interim Order.

(b)  *Carve Out.* As used in this Interim Order, the term "**Carve Out**" means the sum of (i) all unpaid fees required to be paid to the Clerk of the Court and to the U.S. Trustee under 28 U.S.C. § 1930(a) plus interest at the statutory rate pursuant to 31 U.S.C. § 3717, (ii) all unpaid reasonable fees and expenses up to $25,000 incurred by a trustee under section 726(b) of the Bankruptcy Code, (iii) to the extent allowed at any time, whether by interim order, final order, or other order, all accrued but unpaid fees and expenses (excluding any restructuring, sale, success, or other transaction fee of any investment bankers or financial advisors) (the "***Allowed Professional Fees***") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "***Debtor Professionals***") and the Official Committee pursuant to section 328 or 1103 of the Bankruptcy Code (the "***Committee Professionals***", and together with the Debtor Professionals, the "***Professional Persons***") at any time on or before the date of delivery by the DIP Agent (at the instruction of the Required DIP Lenders) of a Carve Out Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve Out Notice (the amounts set forth in the foregoing clauses (i), (ii) and (iii), the "***Pre-Carve Out Notice Amount***"), and (iv) Allowed Professional Fees of Professional Persons incurred after the date of delivery by the DIP Agent (at the instruction of the Required DIP Lenders) of the Carve Out Notice, to the extent allowed at any time, whether by interim order, final order, or other court order, in an aggregate amount not to exceed $2.0 million (the

amount set forth in this underline(iv) being the "**Post-Carve Out Notice Amount**", and together with the Pre-Carve Out Notice Amount, the "**Carve Out Amount**"); *provided, however*, that nothing herein shall be construed to impair the ability of any party-in-interest to object to the fees, expenses, reimbursement, or compensation described herein on any grounds. For purposes of this Interim Order, the "**Carve Out Notice**" shall mean a written notice (which may be via electronic mail) delivered by the DIP Agent (acting at the instruction of the Required DIP Lenders) to lead restructuring counsel to the Debtors, the U.S. Trustee and lead restructuring counsel to the Official Committee, which notice may be delivered following the occurrence of a DIP Termination Event, stating that the Carve Out has been invoked.

       (c)    *Pre-Carve Out Notice.* Prior to the delivery of a Carve Out Notice, starting with the first full calendar week following the Petition Date, each Professional Person shall deliver to the Debtors, the DIP Agent, the DIP Lenders and their respective advisors a weekly statement (each, a "**Weekly Statement**") setting forth a good-faith estimate of the amount of accrued but unpaid fees and expenses incurred by such Professional Person during the preceding week (the "**Weekly Estimated Fees and Expenses**"), and the Debtors shall, on a weekly basis, transfer cash proceeds from amounts previously drawn under the DIP Facility or cash on hand into a segregated account held in trust for and exclusively available for the payment of fees and expenses of the Professional Persons (the "**Professional Fees Escrow Account**") in an amount equal to the aggregate amount of Weekly Estimated Fees and Expenses based on the Weekly Fee Estimates submitted by each Professional Person (and if no such estimate is provided in a given week, then the amount forecasted for such Professional Person in the Approved Budget) that remain unpaid (and that were not previously funded to the Professional Fees Escrow Account). The Debtors shall use funds held in the Professional Fees Escrow Account exclusively to pay

Allowed Professional Fees as they become allowed and payable pursuant to the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, in accordance with any interim or final orders of the Court; *provided, however*, that the Debtors' obligations to pay Allowed Professional Fees shall not be limited or be deemed limited to funds held in the Professional Fees Escrow Account.

(d)      *Post-Carve Out Notice.* On the date on which a Carve Out Notice is delivered in accordance with this paragraph 22 of this Interim Order, (the "***Carve Out Trigger Date***"), the Carve Out Notice shall constitute a demand to the Debtors to utilize all cash on hand as of such date (net of any retainers) and any available cash thereafter held by any Debtor to fund into the Professional Fees Escrow Account an amount equal to (i) the Pre-Carve Out Notice Amount (to the extent not previously funded to the Professional Fees Escrow Account), and (ii) the Post-Carve Out Notice Amount. No later than one (1) Business Day after the delivery of a Carve Out Notice, each Professional Person shall deliver one (1) additional statement to the Debtors, the DIP Agent, the DIP Lenders and their respective advisors setting forth a good-faith estimate of the amount of accrued but unpaid fees and expenses incurred by such Professional Person during the period following the period covered by the most recent Weekly Statement previously delivered by such Professional Person through and including the Carve Out Trigger Date (as defined below), and the Debtors shall transfer such amounts to the Professional Fees Escrow Account (as defined herein).

(e)      Notwithstanding anything to the contrary in this Interim Order, the DIP Loan Documents or the Prepetition Notes Documents, following delivery of a Carve Out Notice, the DIP Agent and the Prepetition Agents shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the

-53-

Professional Fees Escrow Account has been fully funded in an amount equal to all respective obligations benefitting from the Carve Out as set forth herein. The Professional Fees Escrow Account shall not be subject to the control of the DIP Agent, any DIP Lender or any of the Prepetition Secured Parties, and the funds transferred to the Professional Fees Escrow Account shall not be subject to the DIP Liens or the Adequate Protection Liens, nor constitute DIP Collateral; *provided*, however, that the DIP Liens and the Adequate Protection Liens shall automatically attach to any residual interest in the Professional Fees Escrow Account (which liens shall be deemed automatically perfected senior first priority liens as of entry of this Interim Order), with any excess paid to the DIP Agent for application to the DIP Obligations in accordance with the DIP Loan Documents until the DIP Obligations are Paid in Full (unless the Required DIP Lenders have otherwise agreed to in writing), and any excess remaining thereafter shall be applied in accordance with this Interim Order.

(f)     Notwithstanding anything to the contrary in this Interim Order, (i) disbursements by the Debtors from the Professional Fees Escrow Account shall not constitute loans or indebtedness under the DIP Loan Documents or the Prepetition Notes Documents or otherwise increase or reduce the DIP Obligations or the Prepetition Secured Obligations, (ii) the failure of the Professional Fees Escrow Account to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out, and (iii) nothing contained herein shall constitute a cap or limitation on the amount that the Professional Persons may assert as administrative expense claims against the Debtors on account of Allowed Professional Fees incurred by such Professional Persons.

(g)     *Payment of Carve Out on or After the Carve Out Trigger Date*. Any payment or reimbursement made on or after the occurrence of the Carve Out Trigger Date in

-54-

respect of any Allowed Professional Fees incurred after the occurrence of the Carve Out Trigger Date shall permanently reduce the Carve Out Amount on a dollar-for-dollar basis.

(h)     *No Direct Obligation to Pay Allowed Professional Fees.* None of the DIP Secured Parties or the Prepetition Secured Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Chapter 11 Cases or any Successor Cases under any chapter of the Bankruptcy Code, regardless of whether such fees or expenses have been allowed by the Court. Nothing in this Interim Order or otherwise shall be construed to obligate the DIP Secured Parties or the Prepetition Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

23.     *Effect of the Debtors' Stipulations on Third Parties.*

(a)     The Debtors' stipulations, admission, agreements and releases contained in this Interim Order shall be binding upon the Debtors and any successor thereto in all circumstances and for all purposes immediately upon entry of this Interim Order.

(b)     The Debtors' Stipulations in paragraph E of this Interim Order shall be binding upon all parties-in-interest (other than the Debtors and their successors), including, without limitation, the Official Committee, any statutory or non-statutory committees appointed or formed in the Chapter 11 Cases, and any other person or entity seeking to act on behalf of the Debtors' estates, including any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors in the Chapter 11 Cases or any Successor Cases, and each of their respective successors and assigns, in all circumstances and for all purposes, unless the Official Committee or such other party-in-interest (i) obtains requisite standing (subject in all respects to

-55-

any agreement or applicable law which may limit or affect such entity's right or ability to do so)

pursuant to an order of the Court entered prior to the Challenge Deadline (as defined below),

(ii) timely and properly commences and serves an adversary proceeding or contested matter

(subject to the limitations contained herein) (each, a "***Challenge Proceeding***") by no later than

the Challenge Deadline (as defined below), (A)  objecting to or alleging any basis to impair,

restrict, deny or otherwise challenge the right of any of the Prepetition Secured Parties to credit

bid, in whole or in part, the Prepetition Liens or the Prepetition Secured Obligations under

section 363(k) of the Bankruptcy Code or otherwise, (B) objecting to or challenging the amount,

validity, perfection, enforceability, priority, scope or extent of the Prepetition Secured

Obligations, the Prepetition Liens, the Prepetition Collateral or the Prepetition Notes Documents,

or otherwise objecting to or challenging any of the admissions, stipulations, findings or releases

included in the Debtors' Stipulations, including, without limitation, asserting or prosecuting any

claim or cause of action of any kind or nature whatsoever, including without limitation, any

claim or cause of action seeking reduction, setoff, offset, recoupment, avoidance (whether under

Chapter 5 of the Bankruptcy Code or under applicable law (including any applicable state law

Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or

common law)), recharacterization, subordination (whether equitable, contractual or otherwise),

reclassification, disgorgement, disallowance, impairment, marshalling, surcharge or recovery,

whether under the Bankruptcy Code, applicable non-bankruptcy law or otherwise, with respect to

the Prepetition Secured Obligations, the Prepetition Liens, the Prepetition Collateral or the

Prepetition Notes Documents, (C) asserting or prosecuting any so-called "lender liability"

claims, avoidance actions or any other claim, counter claim, cause of action, objection, contest or

defense, of any kind or nature whatsoever, whether arising under the Bankruptcy Code,

LEGAL_US_E # 167127445.9 09999.99999
WEIL:\98930597\3\39031.0013

applicable law or otherwise, against any of the Prepetition Secured Parties or their Representatives (sub-clauses (A)-(C), collectively, the "**Challenges**", and each, a "**Challenge**"), and (iii) obtains a final non-appealable order by a court of competent jurisdiction in favor of the plaintiff sustaining any such Challenge in any timely and duly-filed Challenge Proceeding; *provided, however*, that any pleadings filed in connection with any Challenge Proceeding, including any motion served and filed with the Court seeking requisite standing and authority to pursue a Challenge, shall include a draft complaint attached thereto and shall otherwise set forth with specificity the basis for each such Challenge, and any Challenge not so specified in a Challenge Proceeding timely and properly filed prior to the Challenge Deadline shall be deemed forever, waived, released and barred.

(c)     If no such Challenge Proceeding is timely and properly filed by the Challenge Deadline, or if the Court rules does not rule in favor of plaintiff in any such timely and properly filed Challenge Proceeding, then, without application to or further order of the Court, (i) each of the admissions, stipulations, findings and releases contained in the Debtors' Stipulations shall be binding on all parties-in-interest, including, without limitation, any Official Committee, any statutory or non-statutory committees appointed or formed in the Chapter 11 Cases, or any other party-in-interest (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors in the Chapter 11 Cases or any Successor Cases), (ii) the Prepetition Secured Obligations shall constitute allowed claims against each of the Debtors in the Chapter 11 Cases and any Successor Cases, and the Prepetition Liens shall forever be deemed to be legal, valid, binding, continuing, perfected and enforceable, as of the Petition Date, against each of the Debtors in the Chapter 11 Cases and any Successor Cases, (iii) the Prepetition Secured Obligations and the Prepetition Liens shall not be

LEGAL_US_E # 167127445.9 09999.99999
WEIL:\98350307\17\39031.0013
DB1/132533587.7

subject to any other or further contest, cause of action, attack, objection, challenge, defense,

claim, counterclaim, reduction, setoff, offset, recoupment, avoidance (whether under Chapter 5

of the Bankruptcy Code or under applicable law (including any applicable state law Uniform

Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common

law)), recharacterization, subordination (whether equitable, contractual or otherwise),

reclassification, disgorgement, disallowance, impairment, marshalling, surcharge or recovery or

any other Challenge, of any kind or nature whatsoever, whether under the Bankruptcy Code,

applicable non-bankruptcy law or otherwise, by any person or entity, and (iv) any and all claims,

counter claims, cross claims, causes of action, or other Challenges, of any kind or nature

whatsoever, whether under the Bankruptcy Code, applicable non-bankruptcy law or otherwise,

against any of the Prepetition Secured Parties or any of their Representatives (in their capacities

as such) shall be deemed forever waived, released and barred.

(d)    If any such Challenge Proceeding is timely filed by the Challenge

Deadline, the Debtors' Stipulations shall nonetheless remain binding and preclusive on any

Official Committee, any non-statutory committees appointed or formed in the Chapter 11 Cases,

or any other party-in-interest (including, without limitation, any chapter 7 trustee or chapter 11

trustee or examiner appointed or elected for any of the Debtors in the Chapter 11 Cases or any

Successor Cases), except to the extent that any of the admissions, stipulations, findings or

releases contained in the Debtors' Stipulations were expressly challenged in such Challenge

Proceeding (and solely as to the plaintiff party that timely filed such Challenge Proceeding and

not, for the avoidance of doubt, any other party-in-interest).

(e)    For purposes of this Interim Order, the "***Challenge Deadline***" means the

date that is (i)  the earlier of (A) seventy-five (75) calendar days from the date of entry of the

-58-

Interim Order, or (B) the date that is sixty (60) calendar days from the date of appointment of the Official Committee (the time period set forth in this this <u>sub-clause (i)</u>, the "***Initial Challenge Deadline***"), (ii) such later date as has been agreed to in writing by the DIP Agent (acting at the instruction of the Required DIP Lenders) and the affected Prepetition Agent (acting at the instruction of the requisite Prepetition Secured Parties under the affected Prepetition Notes Documents), or (iii) such later date as has been ordered by the Court, for cause shown, upon a motion filed with the Court prior to the Initial Challenge Deadline (the time period established by <u>clauses (i), (ii) and (iii)</u> of this paragraph 23(e), the "***Challenge Period***"); *provided*, that (x) if the Chapter 11 Cases are converted to chapter 7 and a chapter 7 trustee is appointed prior to the Challenge Deadline, then the Challenge Deadline for any such chapter 7 trustee shall be extended (solely as to such chapter 7 trustee) to the date that is the later of (1) the Challenge Deadline then in effect at the time of its appointment, or (2) the date that is ten (10) calendar days after its appointment, and (y) the filing of a motion by the Official Committee prior to the Initial Challenge Deadline seeking standing with respect to a Challenge, attaching a draft complaint setting forth such Challenge, shall toll the Challenge Deadline for the Official Committee solely in respect of such Challenge until the date that is one Business Day after the entry of an order of the Bankruptcy Court ruling on such motion (or such later date as agreed in writing by the DIP Agent (acting at the instruction of the Required DIP Lenders) and the affected Prepetition Agent (acting at the instruction of the requisite Prepetition Secured Parties under the affected Prepetition Notes Documents)).

(f)     Nothing in this Interim Order vests or confers on any person or entity, including any Official Committee or any statutory or non-statutory committee appointed or formed in the Chapter 11 Cases, or any other party-in-interest standing or authority to pursue any

-59-

Challenge belonging to the Debtors or their estates, and all rights to object to any request for

such standing are expressly reserved.

24.     *Limitations on Use of DIP Collateral, Cash Collateral, Carve Out or Other*

*Funds.* Notwithstanding anything contained in this Interim Order or any other order of the Court

to the contrary, no DIP Collateral, Prepetition Collateral, DIP Loans, Cash Collateral, proceeds

of any of the foregoing, any portion of the Carve Out may be used (including to pay professional

fees) by any of the DIP Loan Parties, the Official Committee, any statutory or non-statutory

committees appointed or formed in the Chapter 11 Cases or any Successor Cases, or any other

party-in-interest (including without limitation any chapter 7 trustee or chapter 11 trustee or

examiner appointed or elected for any of the Debtors in the Chapter 11 Cases or any Successor

Cases), directly or indirectly, to:

> (a)     investigate (including by way of examinations or discovery proceedings,
> whether formal or informal), prepare, initiate, commence, support or prosecute (or
> finance the preparation, initiation, commencement, support or prosecution of) any claim,
> counterclaim, cross-claim, cause of action, suit, arbitration, application, motion, contested
> matter, objection, defense, adversary proceeding, litigation or other proceeding of any
> kind or nature (whether for monetary, injunctive, affirmative relief or otherwise)
> (i) against any of the DIP Secured Parties or the Prepetition Secured Parties or their
> respective Representatives (each in their capacities as such), (ii) objecting to, challenging,
> contesting, or raising any defense to, the amount, validity, enforceability, perfection,
> priority, extent or scope of the claims, liens and security interests granted under this
> Interim Order, the DIP Loan Documents or the Prepetition Notes
> Documents, (iii) asserting avoidance (whether under Chapter 5 of the Bankruptcy Code
> or under applicable law (including any applicable state law Uniform Fraudulent Transfer
> Act, Uniform Fraudulent Conveyance Act or similar statute or common law)), any so-
> called "lender liability" claims, or any other any claim or cause of action seeking
> reduction, setoff, offset, recoupment, recharacterization, subordination (whether
> equitable, contractual or otherwise), reclassification, disgorgement, disallowance,
> impairment, marshalling, surcharging or recovery, in each case, with respect to the DIP
> Liens, the DIP Obligations, the DIP Loan Documents, the DIP Collateral, the Adequate
> Protection Liens, the Adequate Protection Claims and the other Adequate Protection
> Obligations, the Prepetition Liens, the Prepetition Secured Obligations, the Prepetition
> Notes Documents or the Prepetition Collateral, (vi) any claim or cause of action of any
> kind or nature whatsoever, whether arising under the Bankruptcy Code or applicable non-

-60-

bankruptcy law, against any of the DIP Secured Parties or the Prepetition Secured Parties or their respective Representatives;

(b)     object to or seek to impair, modify or interfere with any of the rights, remedies, priorities, privileges, protections or benefits granted to the DIP Secured Parties or the Prepetition Secured Parties under this Interim Order, the DIP Loan Documents or the Prepetition Notes Documents (other than to contest whether a DIP Termination Event has occurred); *provided* that, for the avoidance of doubt, this provision shall not apply to an objection filed in the Court to the relief sought at the Final Hearing;

(c)     object to or seek to prevent, hinder, interfere with or otherwise delay any of the DIP Secured Parties' or Prepetition Secured Parties' assertion, enforcement, exercise of remedies or realization upon any DIP Collateral or Prepetition Collateral (as applicable) in accordance with this Interim Order, the DIP Loan Documents or the Prepetition Notes Documents (as applicable) (other than to contest whether a DIP Termination Event has occurred);

(d)     seek or request authorization from the Court to obtain postpetition financing (whether equity or debt) or other financial accommodations pursuant to sections 364(c) or (d) of the Bankruptcy Code or otherwise, unless such financing is sufficient to cause the Payment in Full of all DIP Obligations contemporaneously with the consummation of such financing (or as otherwise agreed in writing by the Required DIP Lenders);

(e)     seek or request authorization from the Court to obtain superpriority claims or liens or security interests (other than liens or security interests expressly permitted under this Interim Order or the DIP Loan Documents) in any portion of the DIP Collateral that are senior to or *pari passu* with the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, the Adequate Protection Claims, the Prepetition Liens or the Prepetition Secured Obligations unless all DIP Obligations have been Paid in Full (or as otherwise agreed in writing by the Required DIP Lenders);

(f)     use, request authorization to use, Cash Collateral or sell or otherwise dispose of DIP Collateral or Prepetition Collateral (without the prior written consent of the Required DIP Lenders or the requisite Prepetition Secured Parties, as applicable) other than as expressly permitted in this Interim Order and in the DIP Loan Documents; or

(g)     pay or seek to pay any amount on account of any claims arising prior to the Petition Date unless such payments are agreed to in writing by the Required DIP Lenders (or are otherwise expressly included in the Approved Budget and do not violate any of the terms of the DIP Loan Documents;

*provided, however*, that no more than an aggregate amount of $25,000 of the DIP Collateral, DIP

Loans, Prepetition Collateral, Cash Collateral, proceeds of any of the foregoing, any portion of

the Carve Out or any other funds may be used by the Official Committee during the Challenge

Period to investigate (but not to prosecute, litigate, commence or support any Challenge, or

-61-

prepare any complaint or motion in respect of any Challenge, including by way of discovery), the Debtors' Stipulations.

25.    *Limitation on Charging Expenses.* Except to the extent of the Carve Out, no costs or expenses of administration of the Chapter 11 Cases or any Successor Cases (or any future proceedings that may result therefrom) at any time, including, without limitation, any costs and expenses incurred in connection with the preservation, protection, or enhancement of realization by the DIP Secured Parties or the Prepetition Secured Parties upon the DIP Collateral or the Prepetition Collateral, respectively, shall be charged against or recovered from the DIP Collateral as to DIP Secured Parties or the Prepetition Collateral as to the Prepetition Secured Parties, whether pursuant to section 506(c) of the Bankruptcy Code or other similar legal or equitable doctrine or otherwise, without the prior written consent of the Required DIP Lenders with respect to the DIP Collateral or the requisite Prepetition Secured Parties under the applicable Prepetition Notes Documents with respect to the Prepetition Collateral, each in their sole discretion, and no such consent shall be implied, directly or indirectly, from anything contained in this Interim Order (including, without limitation, consent to the Carve Out or the approval of any budget hereunder) or from any other action, inaction, or acquiescence by any of the DIP Secured Parties or any of the Prepetition Secured Parties to any charge, lien, assessment or claim against the DIP Secured Parties or the Prepetition Secured Parties with respect to the DIP Collateral or the Prepetition Collateral, whether under section 506(c) of the Bankruptcy Code or otherwise; *provided, however*, that with respect to the Prepetition Secured Parties and the Prepetition Collateral, the foregoing shall be subject to the entry of the Final Order.

26.    *No Marshalling; Section 552(b) Waiver.* In no event shall the DIP Secured Parties or the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any

similar doctrine with respect to the DIP Collateral, the DIP Obligations, the Prepetition

Collateral or the Prepetition Secured Obligations (as applicable), and all proceeds of DIP

Collateral and Prepetition Collateral shall be received and applied in accordance with this

Interim Order, the DIP Loan Documents and the Prepetition Notes Documents, as applicable;

*provided, however,* that, with respect to the Prepetition Secured Parties and the Prepetition

Collateral, the foregoing shall be subject to entry of the Final Order. Subject to entry of the Final

Order, each of the Prepetition Secured Parties shall be entitled to all of the rights and benefits of

section 552(b) of the Bankruptcy Code, and in no event shall the "equities of the case" exception

in section 552(b) of the Bankruptcy Code apply to the Prepetition Secured Parties or the

Prepetition Collateral.

27.     *Right to Credit Bid.* (a) The DIP Agent or its designee (in each case, acting at the

instruction of the Required DIP Lenders), shall have the unqualified right to credit bid all or any

portion of DIP Collateral in accordance with the DIP Loan Documents up to the full amount of

any DIP Obligations, and (b) subject to paragraph 23 of this Interim Order, each of the

Prepetition Agents or its/their designee(s) (in each case, acting at the instruction of the requisite

Prepetition Secured Parties under the applicable Prepetition Notes Documents) shall have the

right to credit bid all or any portion of the (x) DIP Collateral up to the full amount of the

Noteholder Adequate Protection Obligations, and (y) Prepetition Collateral in accordance with

the applicable Prepetition Notes Documents up to the full amount of the applicable Prepetition

Secured Obligations (as applicable), in each case, in the sale of any of the DIP Loan Parties'

assets, whether in a sale under or pursuant to section 363 of the Bankruptcy Code, a Chapter 11

plan subject to confirmation under section 1129(b)(2)(A) of the Bankruptcy Code, a sale or

disposition by a chapter 7 trustee for any of the Debtors under section 725 of the Bankruptcy

Code, or otherwise. The DIP Agent (acting at the instruction of the Required DIP Lenders) and the Prepetition Agents (acting at the instruction of the requisite Prepetition Secured Parties under the applicable Prepetition Notes Documents), shall each have the absolute right to assign, transfer, sell, or otherwise dispose of their respective rights to credit bid (subject to this Interim Order) to any acquisition vehicle formed in connection with such bid or other designee.

28.     *Binding Effect; Successors and Assigns.* Immediately upon entry of this Interim Order, subject to paragraph 23 of this Interim Order, the DIP Loan Documents and this Interim Order, including all findings and conclusions of law herein, shall be binding upon all parties-in-interest in the Chapter 11 Cases and any Successor Cases, including without limitation, the DIP Secured Parties, the Prepetition Secured Parties, the Official Committee or any other statutory or non-statutory committee appointed or formed in the Chapter 11 Cases and any Successor Cases, and their respective successors and assigns (including any chapter 11 trustee or chapter 7 trustee or examiner appointed or elected in the Chapter 11 Cases or any Successor Cases, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors), and shall inure to the benefit of each of the Debtors, the DIP Secured Parties, the Prepetition Secured Parties and their respective successors and assigns; *provided, however,* that, for the avoidance of doubt, the DIP Secured Parties and the Prepetition Secured Parties shall have no obligation to make any loan, permit the use of DIP Collateral or Prepetition Collateral (including Cash Collateral) or extend any financing to any chapter 11 trustee or chapter 7 trustee or similar responsible person appointed for the estate of any Debtor in the Chapter 11 Cases or any Successor Cases.

29.     *No Modification of Interim Order.*

(a)     The DIP Loan Parties irrevocably waive the right to seek, and shall not seek or consent to, directly or indirectly: (i) without the prior written consent of the Required DIP Lenders (unless and until the DIP Obligations have been Paid in Full), (A) any modification, stay, vacatur or amendment to this Interim Order, (B) the allowance of any claim against any Debtor in the Chapter 11 Cases or any Successor Cases equal or superior to the DIP Superpriority Claims (other than the Carve Out), (C) the grant of any lien or security interest on any DIP Collateral with priority equal to or superior to the DIP Liens, except as expressly permitted hereunder or under the DIP Loan Documents, or (D) the entry of any order authorizing the use of DIP Collateral (including Cash Collateral) that is inconsistent with this Interim Order, or (ii) without the prior written consent of the Prepetition Agents (acting at the instruction of the requisite Prepetition Secured Parties), (A) any modification, stay, vacatur or amendment to this Interim Order that adversely affects the rights, remedies, benefits or protections of the applicable Prepetition Secured Parties, (B) unless and until the DIP Obligations have been Paid in Full, the allowance of any claim against any Debtor in the Chapter 11 Cases or any Successor Cases equal or superior to the Noteholder Adequate Protection Claims (other than the Carve Out and the DIP Superpriority Claims), or (C) unless the DIP Obligations have been Paid in Full, the grant of any lien or security interest on any DIP Collateral with priority equal to or superior to the Noteholder Adequate Protection Liens, except as expressly permitted under this Interim Order or the DIP Loan Documents.

(b)     Without limiting the provisions of the immediately preceding paragraph, if at any time prior to the Payment in Full of all DIP Obligations, either the DIP Loan Parties, the DIP Loan Parties' estates, any chapter 11 trustee, chapter 7 trustee or examiner with enlarged powers, or any responsible officer subsequently appointed in any of the Chapter 11 Cases or any

-65-

Successor Cases, shall obtain credit or incur debt pursuant to sections 364(b), (c), or (d) of the Bankruptcy Code in violation of this Interim Order or the DIP Loan Documents, then, unless otherwise agreed in writing by the Required DIP Lenders (with respect to the DIP Obligations) and the requisite Prepetition Secured Parties (with respect to the Noteholder Adequate Protection Obligations), (i) all of the cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Agent, for further distribution to the applicable DIP Secured Parties on account of their applicable DIP Obligations pursuant to the DIP Loan Documents, (ii) upon the Payment in Full of all DIP Obligations, notwithstanding anything contained in this Interim Order (including, without limitation, paragraph 20 hereof) to the contrary, the Debtors' authorization to use Cash Collateral shall immediately and automatically cease, without the need for further application to or approval of the Court, and the Debtors shall not be prohibited from seeking further relief to use Cash Collateral on a non-consensual basis and the Prepetition Secured Parties rights to object to such relief (or the right to seek relief, including without limitation, the right to seek additional adequate protection and/or seek to lift the automatic stay in order to exercise rights and against Prepetition Collateral) is expressly preserved, and (iii) subject to further order of the Court, all of the cash proceeds derived from such credit or debt shall immediately be turned over to the Prepetition Notes Agents for further distribution to the applicable Prepetition Notes Secured Parties on account of their applicable Noteholder Adequate Protection Obligations and the Prepetition Notes Secured Obligations pursuant to the terms of this Interim Order and the applicable Prepetition Notes Documents.

30.     *Preservation of Rights Granted Under Interim Order.*

(a)     *Senior to Other Liens.* Other than the Carve Out and the Permitted Prior Liens, no claim (including any intercompany claim) or lien having a priority superior to or *pari*

*passu* with those granted by the Interim Order to the DIP Secured Parties or the Prepetition

Secured Parties shall be permitted while any of the DIP Obligations or Noteholder Adequate

Protection Obligations remain outstanding, and, except as otherwise expressly provided in this

Interim Order, (i) the DIP Superpriority Claims and the Noteholder Adequate Protection Claims

shall not be subject or junior to any intercompany or affiliate claims of the Debtors; and (ii) the

DIP Liens, the Noteholder Adequate Protection Liens shall not be: (A) subject or junior to any

lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under

section 551 of the Bankruptcy Code; (B) subordinated to or made *pari passu* with any other lien

or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise; (C)

subordinated to or made *pari passu* with any liens arising after the Petition Date, including any

liens or security interests granted in favor of any federal, state, municipal, or other governmental

unit (including any regulatory body), commission, board or court for any liability of the Debtors;

or (D) subject or junior to any intercompany or affiliate lies or security interests of the Debtors.

      (b)     *Payment in Full.* None of the DIP Loan Parties shall propose or support

any chapter 11 plan or sale of all or substantially all of the DIP Loan Parties' equity or assets, or

any order confirming such plan or approving such sale, that is not conditioned upon the Payment

in Full (unless otherwise agreed in writing by the Required DIP Lenders) of all DIP Obligations,

the DIP Superpriority Claims, the Noteholder Adequate Protection Claims and the other

Noteholder Adequate Protection Obligations on or prior to the earlier to occur of the effective

date of such chapter 11 plan or sale.

      (c)     *Dismissal/Conversion.* Notwithstanding any order that may be entered

dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or

converting any of the Chapter 11 Cases to a case under Chapter 7 of the Bankruptcy Code:

LEGAL_US_E # 167127445.9 09999.99999
WEIL:\98930587\17\39031.0013
DM_US 188350387.7 39031.0013

(A) all of the claims, liens and security interests, rights, priorities, privileges, remedies, benefits and protections granted to the DIP Secured Parties and the Prepetition Secured Parties hereunder and under the DIP Loan Documents (including, without limitation, the DIP Superpriority Claims, the Noteholder Adequate Protection Claims, the DIP Liens, and the Noteholder Adequate Protection Liens), shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all DIP Obligations and Noteholder Adequate Protection Obligations shall have been Paid in Full, and all such claims, liens and security interests, rights, priorities, privileges, remedies, benefits and protections shall, notwithstanding such dismissal or conversion, remain unaffected and shall remain binding on all parties in interest (and any such order shall, in accordance with sections 105 and 349 of the Bankruptcy Code, so provide), and (B) this Court shall retain jurisdiction, notwithstanding such dismissal or conversion, for the purposes of enforcing all such claims, liens and security interests, rights, priorities, privileges, remedies, benefits and protections granted to the DIP Secured Parties and the Prepetition Secured Parties hereunder and under the DIP Loan Documents.

(d)     *Reversal/Modification.* Based on the findings set forth in this Interim Order and the record presented during the Interim Hearing and the Chapter 11 Cases, and in accordance with section 364(e) of the Bankruptcy Code, in the event that any or all of the provisions of this Interim Order or the DIP Loan Documents are hereafter reversed, modified, vacated or stayed by a subsequent judgment or order of this Court or any other court, any such reversal, stay, modification or vacatur shall not affect (i) the validity or enforceability of advances previously made hereunder or under the DIP Loan Documents by the DIP Secured Parties to the Debtors, (ii) the validity or enforceability of any obligation, indebtedness or liability incurred under this Interim Order or the DIP Loan Documents (including, without

-68-

limitation, the DIP Obligations and the Noteholder Adequate Protection Obligations) by the DIP

Loan Parties to the DIP Secured Parties and the Prepetition Secured Parties, (iii) the validity,

enforceability, or perfection of any of the claims, liens, security interests, rights, privileges or

benefits granted hereunder or under the DIP Loan Documents to the DIP Secured Parties and the

Prepetition Secured Parties, or (iv) the payment of any fees, costs, expenses or other amounts to

the DIP Secured Parties and the Prepetition Secured Parties under this Interim Order and the DIP

Loan Documents, in each case, prior to the actual receipt of written notice by any DIP Agent

and/or the Prepetition Agents (as applicable) of the effective date of such reversal, stay,

modification, or vacatur. Notwithstanding any such reversal, stay, modification or vacatur, the

claims, liens, security interests, rights, privileges, remedies and benefits set forth in the Interim

Order shall be governed in all respects by the original provisions of this Interim Order and the

DIP Loan Documents.

(e)     *Survival*. Except as expressly provided in this Interim Order, until all of

the DIP Obligations and the Noteholder Adequate Protection Obligations have been Paid in Full

(unless the Required DIP Lenders have otherwise agreed in writing in respect of the DIP

Obligations and/or the requisite Prepetition Secured Parties have otherwise agreed in writing in

respect of the Noteholder Adequate Protection Obligations), all claims, liens and security

interests, rights, priorities, privileges, remedies, benefits, and protections granted to the DIP

Secured Parties and the Prepetition Secured Parties under this Interim Order and the DIP Loan

Documents shall survive and shall not be modified, impaired, or discharged by: (i) the entry of

an order confirming any chapter 11 plan in any of the Chapter 11 Cases (and, pursuant to section

1141(d)(4) of the Bankruptcy Code, the Debtors hereby waive any discharge as to any remaining

DIP Obligations or Noteholder Adequate Protection Obligations), (ii) the entry of an order

-69-

converting any or all of the Chapter 11 Cases to a case (or cases) under chapter 7 of the Bankruptcy Code, dismissing any or all of the Chapter 11 Cases or terminating the joint administration of the Chapter 11 Cases or by any other act or omission, or (iii) the entry of an order approving the sale or disposition of any DIP Collateral (except to the extent expressly permitted in the DIP Loan Documents).

31.     *Master Proof of Claim.* The DIP Secured Parties and the Prepetition Secured Parties shall not be required to file proofs of claim in any of the Chapter 11 Cases or any of the Successor Cases in order to assert claims for payment of the DIP Obligations, the Adequate Protection Obligations or the Prepetition Secured Obligations. The Debtors' Stipulations, acknowledgments and provisions of this Interim Order, together with the evidence accompanying the Motion and presented at the Interim Hearing, are deemed sufficient to and do constitute timely filed proofs of claim in respect of such claims arising under the DIP Obligations, the Adequate Protection Obligations and the Prepetition Secured Obligations against each of the applicable Debtors. Any order entered by the Court establishing a bar date in any of the Chapter 11 Cases or any Successor Chapter 11 Cases shall not apply to the DIP Secured Parties, the Prepetition Secured Parties, the DIP Obligations, the Adequate Protection Obligations or the Prepetition Secured Obligations; *provided, however,* that, notwithstanding any order entered by the Court establishing a bar date in any of the Chapter 11 Cases or any Successor Cases to the contrary, the Prepetition Agents (on behalf of themselves and the applicable Prepetition Secured Parties), in their discretion, may (but are not required to) file (and amend and/or supplement) in the Debtors' lead Chapter 11 Case, *In re Core Scientific, Inc.*, Case No. [●] (●), a consolidated master proof of claim on behalf of the Prepetition Secured Parties (as applicable) (the "***Master Proof of Claim***") against each of the Debtors. Upon the filing of the

-70-

Master Proof of Claim by any of the Prepetition Agents, such Prepetition Agent shall be deemed to have filed a proof of claim in the amount set forth opposite its name therein in respect of its claims against each of the Debtors and shall be treated as if it had filed a separate proof of claim in each of the Chapter 11 Cases. Such Master Proof of Claim shall not be required to (x) identify whether any Prepetition Secured Party acquired its claim from another party, the identity of any such party, or reflect a change in the holders of the claims set forth therein or a reallocation among the holders of the claims asserted therein resulting from the transfer of all or any portion of such claims, or (y) attach any instruments, agreements or other documents evidencing the obligations owing by each of the Debtors to the applicable party, which instruments, agreements or other documents will be provided upon reasonable written request to the applicable Prepetition Agent, as the case may be. The provisions of this paragraph 31 and each Master Proof of Claim are intended solely for the purpose of administrative convenience and shall not (i) affect the right of each Prepetition Secured Party (or its successors in interest) to vote separately on any chapter 11 plan proposed in these Chapter 11 Cases (or any Successor Cases), or (ii) any substantive rights of the Prepetition Secured Parties or any party in interest or their respective successors in interest. The DIP Agent and the DIP Lenders shall similarly not be required to file proofs of claim with respect to their DIP Obligations under the DIP Documents, and the evidence presented with the DIP Motion and the record established at the Interim Hearing and the Final Hearing are deemed sufficient to, and do, constitute proofs of claim with respect to their obligations, senior secured status, and super-priority.

32.    *Limitation of Liability.*

(a)    Nothing in this Interim Order, the DIP Loan Documents or any documents related thereto shall in any way be construed or interpreted to impose or allow the imposition

-71-

upon any of the DIP Secured Parties or the Prepetition Secured Parties of any liability for any claim arising from, in connection with or related to the prepetition or postpetition activities of the DIP Loan Parties or their respective affiliates (as defined in section 101(2) of the Bankruptcy Code) in the operation of their businesses, their restructuring efforts or the administration of these Chapter 11 Cases.

(b)      In determining to make any loan or extension of credit under the DIP Loan Documents, or permit the use of Prepetition Collateral (including Cash Collateral), or in exercising any rights or remedies under this Interim Order, the DIP Loan Documents or the Prepetition Notes Documents, none of the DIP Secured Parties or the Prepetition Secured Parties shall (i) have any liability to any third party or be deemed to be in control of the operations of any of the DIP Loan Parties, (ii) owe any fiduciary duty to any of the DIP Loan Parties, their respective creditors, shareholders or estates, or (iii) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" with respect to the operation or management of any of the DIP Loan Parties (as such terms or any similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42, U.S. §§ 9601 *et seq*., as amended, or any other federal or state statute, including the Internal Revenue Code).

(c)      The DIP Secured Parties shall not, in any way or manner, be liable or responsible for (i) the safekeeping of the DIP Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof, or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency, or other person, and all risk of loss, damage, or destruction of the DIP Collateral shall be borne solely by the DIP Loan Parties; *provided, however,* that nothing contained in this <u>paragraph (c)</u>

shall release the DIP Secured Parties from their obligations under the DIP Loan Documents (subject to the occurrence of the Closing Date).

33.     *Release of DIP Secured Parties*. Effective as of entry of the Interim Order, each of the DIP Loan Parties and its estate, on its own behalf and on behalf of its predecessors, successors and assigns, hereby absolutely, unconditionally and irrevocably releases and forever discharges and acquits each of the DIP Secured Parties and each of their respective Representatives (in their capacities as such) from any and all obligations and liabilities to the DIP Loan Parties (and their successors and assigns) and from any and all claims, counterclaims, cross-claims, demands, defenses, objections, challenges, offsets or setoff, debts, accounts, contracts, liabilities, remedies, suits, controversies, actions, causes of action, losses, damages, indemnities, reimbursement obligations, attorneys' fees, costs, expenses or judgments, of every kind or nature whatsoever, whether matured or unmatured, known or unknown, asserted or unasserted, suspected or unsuspected, foreseen or unforeseen, accrued or unaccrued, liquidated or unliquidated, fixed or contingent, pending or threatened, arising in law or equity, upon contract or tort, under the Bankruptcy Code, any state or federal common law, statute, rule, regulation or otherwise, including, without limitation, any claim or cause of action seeking (i) any so-called lender liability, (ii) any and all claims arising under the Bankruptcy Code, whether under Chapter 5 of the Bankruptcy Code or under applicable law (including any applicable state law Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law)), or otherwise, (iii) reduction, recoupment, recharacterization, subordination (whether equitable, contractual or otherwise), reclassification, disgorgement, disallowance, impairment, marshalling, surcharge or recovery, in each case, that may be asserted by any of the DIP Loan Parties, their respective estates, predecessors, successors and assigns, in

-73-

each case, against any of the DIP Secured Parties or their respective Representatives (in their capacities as such) for or by reason of any act, omission, matter, cause or thing whatsoever arising at any time prior to the date of this Interim Order, in connection with, arising under or related to this Interim Order, the DIP Facility, the DIP Liens, the DIP Obligations, the DIP Collateral, the transactions contemplated thereunder or hereunder, or the negotiation thereof or hereof, including, without limitation, any claim or cause action with respect to the validity, enforceability, priority, scope, extent or perfection of the DIP Liens, the DIP Obligations or the DIP Loan Documents; *provided, however,* subject to the occurrence of the Closing Date, nothing contained in the foregoing shall release the DIP Secured Parties from their obligations under the DIP Facility from and after the date hereof.

34.    *Payments Free and Clear.* Any and all payments or proceeds required to be remitted to the DIP Secured Parties or the Prepetition Secured Parties pursuant to the DIP Loan Documents, this Interim Order, the Final Order (if and when entered) or any subsequent order of this Court shall be irrevocable (subject, solely in the case of the DIP Professional Fees and the Noteholder Professional Fees, only to the procedures set forth in paragraph 11 of this Interim Order), and shall be received free and clear of any claim, charge, assessment or other liability, including without limitation, any claim or charge arising out of or based on, directly or indirectly, section 506(c) of the Bankruptcy Code (whether asserted or assessed by, through or on behalf of the DIP Loan Parties) (subject, in the case of the Prepetition Secured Parties, to entry of the Final Order), section 552(b) of the Bankruptcy Code (subject, in the case of the Prepetition Secured Parties, to entry of the Final Order) or otherwise.

35.    *Joint and Several Liability.* Nothing in this Interim Order shall be construed to constitute or authorize a substantive consolidation of any of the DIP Loan Parties' estates, it

-74-

being understood, however, that the DIP Loan Parties shall be jointly and severally liable for all obligations (including all DIP Obligations and all Adequate Protection Obligations) under this Interim Order and the DIP Loan Documents.

36.    *Third Party Beneficiary.* Except as expressly set forth herein, no rights are created hereunder for the benefit of any third party, any creditor, equity holder, or any direct, indirect or incidental beneficiary.

37.    *Interim Order Controls.* In the event of any conflict or inconsistency between or among the terms or provisions of this Interim Order and any of the DIP Loan Documents, unless such term or provision in this Interim Order is phrased in terms of "defined in" or "as set forth in" the DIP Loan Agreement or DIP Loan Documents, or in the event of any conflict or inconsistency between the terms of this Interim Order and any other order of the Court, the terms and provisions of this Interim Order shall govern and control. Notwithstanding anything contained in any other order entered by this Court to the contrary, any payment made pursuant to, or authorization contained in, any other order entered by this Court shall be consistent with and subject to the requirements set forth in this Interim Order and the DIP Loan Documents, including, without limitation, the Approved Budget (subject to Permitted Variances).

38.    *Effectiveness.* This Interim Order shall constitute findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014, any Local Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

LEGAL_US_E # 167127445.9 09999.99999
WEIL:\98850087\17\39031.0013
DMFIRM #398550387 v3

39.     *Bankruptcy Rules.* The requirements of Bankruptcy Rules 4001, 6003, and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

40.     *Headings.* Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Interim Order. When used in this Interim Order, the word "including" shall not imply limitation.

41.     *Adequate Protection to Prepetition Equipment Lenders.* Pursuant to sections 361, 362, 363(e), 364(d)(1) and 507 of the Bankruptcy Code, as adequate protection of their purported Prepetition Equipment Liens in Prepetition Equipment Collateral, the Prepetition Equipment Lenders shall be entitled to the following (collectively, the obligations under this paragraph 41, together with the Noteholder Adequate Protection Obligations, the "***Adequate Protection Obligations***"):

(a)     *Equipment Lender Adequate Protection Claims.* The Prepetition Equipment Lenders are each hereby granted, in the amount of any aggregate Diminution in Value of the respective purported Prepetition Equipment Liens in Prepetition Equipment Collateral (as applicable) from and after the Petition Date, superpriority administrative expense claims contemplated by section 507(b) of the Bankruptcy Code against each of the Debtors (the "***Equipment Lender Adequate Protection Claims***", together with the Noteholder Adequate Protection Claims, the "***Adequate Protection Claims***"), which shall be payable by each of the Debtors on a joint and several basis, and shall have recourse to all DIP Collateral. The Equipment Lender Adequate Protection Claims shall be (i) subject and subordinate only to the Carve Out, the DIP Superpriority Claims and the Noteholder Adequate Protection Claims, and (ii) senior to any and all other administrative expense claims and all other claims against the Debtors and their estates, now existing or hereafter arising, of any kind or nature whatsoever.

-76-

(b)      *Equipment Lender Adequate Protection Liens.* The Prepetition Equipment Lenders are each hereby granted, effective and perfected as of the entry of this Interim Order, and without the necessity of the execution, recordation or filing by the DIP Loan Parties or any of the Prepetition Equipment Lenders of any pledge, collateral or security documents, mortgages, deeds of trust, financing statements, notations of certificates of title for titled goods, or any similar document or instrument, or the taking of any other action (including, without limitation, entering into any control agreements or taking possession or control of any DIP Collateral), in the amount of any aggregate Diminution in Value of the purported Prepetition Equipment Liens in the Prepetition Equipment Financing Collateral (as applicable) from and after the Petition Date, valid, binding, enforceable and automatically perfected post-petition liens and security interests in all DIP Collateral (the "***Equipment Lender Adequate Protection Liens***", and together with the Noteholder Adequate Protection Liens, the "***Adequate Protection Liens***"). The Equipment Lender Adequate Protection Liens shall be (i) junior and subordinated to (A) the Carve Out, (B) the DIP Liens in Prepetition Collateral, (C) the Noteholder Adequate Protection Liens in Prepetition Collateral, and (D) the Permitted Prior Liens, (ii) *pari passu* with the Noteholder Adequate Protection Liens in Unencumbered Assets, and (iii) senior to the DIP Liens in Prepetition Equipment Financing Collateral (as applicable) and the Adequate Protection Liens in Prepetition Equipment Financing Collateral (as applicable).

42.      *Necessary Action.* The DIP Loan Parties, the DIP Secured Parties and the Prepetition Secured Parties are authorized to take any and all such actions as are necessary, required or appropriate to implement and effectuate the terms of this Interim Order, the DIP Loan Documents and the transactions contemplated hereunder and thereunder.

LEGAL_US_E # 167127445.9 09999.99999
WEIL:\98835058\7\39031.0013

43.     *Retention of Jurisdiction.* The Court retains jurisdiction to hear, determine and enforce the terms of any and all matters arising from or related to the DIP Facility, the DIP Loan Documents and this Interim Order, and the Court's jurisdiction shall survive confirmation and consummation of any Chapter 11 plan for any of the Debtors notwithstanding the terms or provisions of any such Chapter 11 plan or any order confirming any such Chapter 11 plan.

44.     *Final Hearing.* The Final Hearing shall be held on [●], 2023, at [●] (prevailing Central Time), and any objections to the final relief sought in the Motion shall be filed with the Court no later than [●], 2022 at 4:00 p.m. (prevailing Central Time), and served upon the following: (a) [DIP Loan Parties] and (b) Paul Hastings, LLP, 200 Park Avenue, New York, New York 10166, Attn: Kristopher Hansen (krishansen@paulhastings.com), Erez Gilad (erezgilad@paulhastings.com), and Sayan Bhattacharyya (sayanbhattacharyya@paulhastings.com), counsel to the DIP Agent, the DIP Lenders and the Ad Hoc Group.

Dated: _____, 2022
         Houston, Texas

_____
UNITED STATES BANKRUPTCY JUDGE

LEGAL_US_E # 167127445.9 09999.99999
WEIL:\98830387\17\39031.0013

**<u>Exhibit 1</u>**

**Draft DIP Loan Agreement**

**Exhibit 2**

**Initial Budget**

**Exhibit B**

**DIP Loan Agreement**