**Exhibit B**

**Michael Bros Rejection Declaration**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re | § § | Chapter 11 |
| CORE SCIENTIFIC, INC., | § § | Case No. 22-90341 (DRJ) |
| Debtors.[1] | § § § | (Jointly Administered) (Emergency Hearing Requested) |

DECLARATION OF MICHAEL BROS
IN SUPPORT OF DEBTORS' EMERGENCY MOTION FOR ENTRY OF
AN ORDER AUTHORIZING REJECTION OF EXECUTORY CONTRACTS WITH
CELSIUS MINING LLC

I, Michael Bros, pursuant to section 1746 of title 28 of the United States Code, hereby declare under penalty of perjury that the following is true to the best of my knowledge, information, and belief:

**Background**

1. I am the Senior Vice President, Capital Markets & Acquisitions of the Debtors. I have served in this capacity since January 2022. Before that, starting in December 2018, I was the Debtors' Vice President of Corporate Development. I am knowledgeable about, and familiar with, the Debtors' business and financial affairs.

2. I submit this Rejection Declaration in support of *Debtors' Emergency Motion for Entry of an Order Authorizing Rejection of Executory Contracts with Celsius Mining LLC*.[2] I am authorized to submit this Declaration on behalf of the Debtors.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (N/A); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisitions, LLC (0825); Starboard Capital LLC (6677); RADAR, LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions, VII, LLC (3198). The Debtors' corporate headquarters [and service address] is [210 Barton Springs Road, Suite 300, Austin, Texas 78704].

[2] Capitalized terms have the meanings ascribed to such terms in the Motion.

2

3. The facts set forth in this Rejection Declaration are based on my personal knowledge, my review of relevant documents (including the Debtors' books and records), information provided to me by employees working under my supervision, my opinion based upon experience, knowledge, and information concerning the Debtors' operations, financial condition, and business plans. If called upon to testify, I would testify to the facts set forth in this Rejection Declaration.

**Facts Relevant to Motion**

A. **The Debtors' Business**

4. The Debtors, together with their non-debtor affiliates, are one of the largest blockchain infrastructure, hosting provider, and digital asset mining companies in North America, with fully operational data centers in Georgia, Kentucky, North Carolina, North Dakota, and Texas. The Debtors regularly contract with third parties to provide hosting services for the third parties' digital asset mining machines, in addition to operating their own digital asset mining machines. One of the third parties with whom the Debtors have contracted is Celsius.

A. **The Celsius Contracts**

5. In December 2020, the Debtors and Celsius entered into the 2020 MSA, a hosting services agreement whereby the Debtors agreed to provide certain services to Celsius in connection with hosting Celsius' cryptocurrency data mining machines. In December 2021, the Debtors entered into the 2021 MSA, another hosting services agreement with Celsius. Pursuant to the 2020 MSA, the Debtors and Celsius also executed ten separate agreements—effectively individual purchase orders—that are generally governed by the MSA but also set forth specific terms applicable to each order, including among other things, the number of machines that the Debtors will host for Celsius. Two of those orders, Nos. 5 and 8, have already terminated. Pursuant to the 2021 MSA, the Debtors executed Order No. 1A.

6.      Pursuant to the Celsius Contracts, the Debtors are currently hosting 37,536 of Celsius' mining machines at various of Debtors' facilities.

7.      Mining machines are powerful computers that solve complex equations associated with the use and creation of cryptocurrency coins.  Hosting these machines involves industrial-scale power delivery and cooling systems, trained personnel, specialized equipment, and a tremendous amount of power.  To host mining machines, the Debtors have sophisticated, purpose built data centers across several states, where the Debtors host mining machines for approximately fifteen customers and also operate their own machines.  Demand for hosting capacity far exceeds the Debtors' hosting capacity, meaning that the Debtors always have a queue of machines—including the Debtors' own machines—waiting for hosting space to become available at the Debtors' facilities.

8.      Because power costs are variable and mining machines consume so much power, the Debtors' hosting agreements expressly allow the Debtors, in their sole discretion, to pass through increased power costs to their customers.  This means that in addition to the hosting services rate that they pay, Celsius and the Debtors' other customers are all responsible for covering any increased power costs that the Debtors decide to pass through to their customers.

9.      When power costs increased during the second quarter of 2022, the Debtors began passing through these higher power costs to their customers, including Celsius.

10.     Celsius—who filed for bankruptcy on July 13, 2022—claims it is not responsible for paying increased power costs and has refused to pay all power pass through costs that have been invoiced subsequent to its bankruptcy filing.  Because the Debtors owe these amounts directly to the power utilities, the Debtors have had no choice but to continue covering Celsius' increased power costs and then charge them to Celsius in their discretion.

11. Covering Celsius' increased power costs has cost the Debtors approximately $7.8 million to date. This includes interest on overdue power pass through amounts—Core charged Celsius $97,890.38 interest in a November 2022 invoice and $74,637.20 in a December 2022 invoice—but excludes the December power pass through costs that are currently accruing daily. Based on projections for the December power costs, rejecting the Celsius Contracts will save the Debtors an estimated $894,040 in December, accruing at around $28,840 per day.

12. The Debtors cannot afford to continue shouldering the burden of Celsius' unpaid power costs. For this reason, the Debtors have concluded, in their business judgment, that rejecting the Celsius Contracts is in the best interests of the Debtors' estates.

13. Another sound business reason for rejecting the Celsius Contracts is that continuing to host the Celsius machines prevents the Debtors from profiting on that hosting space that is currently allocated to Celsius. In the cryptocurrency industry, there is not enough capacity to meet the demand for hosting mining machines. The capacity dedicated to hosting the Celsius machines is therefore valuable to the Debtors. Without the obligation to continue hosting Celsius machines, the Debtors could immediately dedicate that premium hosting space to another customer—who is willing to pay a higher hosting rate and any power cost increases that the Debtors pass through—and generate an estimated $2 million in incremental revenue per month. Alternatively, the Debtors could immediately use that hosting space for their own mining machines, assuming that those machines generate approximately 400 bitcoins per month at an assumed bitcoin price of $16,700, which will generate an estimated $2 million in incremental revenue per month. This would immediately infuse cash into the Debtors' estates—approximately $65,000 in revenue a day—and thus preserve value.

14. The Debtors have determined, in the exercise of their business judgment, that it is in their best interest to reject the Celsius Contracts. Because Celsius improperly refuses to pay certain power costs, the Debtors anticipate continued and substantial and continued loses to flow from the Celsius Contracts. Compounding this loss, the Celsius Contracts also prevent the Debtors from using the premium capacity that is dedicated to the Celsius machines for other profitable opportunities, like hosting for other customers or self-mining with machines that the Debtors already own but cannot deploy due to current capacity limitations.

15. Based on the foregoing, the Debtors have concluded that rejecting the Celsius Contracts is in the best interest of the Debtors' estate and is a sound exercise of the Debtors' business judgment.

16. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: December 28, 2022
       Bellevue, Washington

/s/ Michael Bros
Michael Bros
Senior Vice President Capital Markets & Acquisitions
Core Scientific, Inc.