IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 22-90341-11 |
| | § | JOINTLY ADMINISTERED |
| | § | HOUSTON, TEXAS |
| CORE SCIENTIFIC, INC., | § | TUESDAY, |
| | § | JANUARY 3, 2023 |
| DEBTOR. | § | 11:00 A.M. TO 3:33 P.M. |

**<u>MOTION HEARING (VIA ZOOM)</u>**

BEFORE THE HONORABLE DAVID R. JONES
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:                              SEE NEXT PAGE

(Recorded via CourtSpeak.)

<u>TRANSCRIPTION SERVICE BY</u>:

JUDICIAL TRANSCRIBERS OF TEXAS, LLC
935 Eldridge Road, #144
Sugar Land, TX 77478
281-277-5325
www.judicialtranscribers.com

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

<u>APPEARANCES (VIA ZOOM)</u>:


FOR DEBTOR CORE SCIENTIFIC,        WEIL GOTSHAL & MANGES, LLP
INC.:                              Alfredo R. Perez, Esq.
                                   700 Louisiana Street
                                   Suite 1700
                                   Houston, TX 77002
                                   713-546-5040

                                   WEIL GOTSHAL & MANGES, LLP
                                   Ronit J. Berkovich, Esq.
                                   Theodore E. Tsekerides, Esq.
                                   767 Fifth Avenue
                                   New York, New York 10153
                                   212-310-8534


FOR CELSIUS MINING, LLC,           KIRKLAND & ELLIS, LLP
ET AL.:                            Christopher Koenig, Esq.
                                   300 N. Lasalle Street
                                   Chicago, IL 60654
                                   312-862-2372


(Please also see Electronic Appearances.)

1          **HOUSTON, TEXAS; TUESDAY, JANUARY 3, 2023; 11:00 A.M.**

2          THE COURT:  All right.  Officially good morning to

3    everyone.  Happy New Year.  Today is January the 3rd, 2023,

4    the time is 11:00 o'clock Central.  On the 11:00 o'clock

5    docket we have the jointly administered cases under Case

6    Number 22-90341, Core Scientific, Inc.

7          Folks, please don't forget to record your electronic

8    appearance.  If it's the first or if it's been a while,

9    perhaps even an entire year, that's a quick trip to the

10   website, a couple of mouse clicks, you can do that at any time

11   prior to the conclusion of this morning's hearing.

12         The first time that you speak if you will please

13   state your name and who you represent, that really does help

14   give the court reporter a good point of reference in the event

15   that a transcript request is made.

16         We are recording this morning using CourtSpeak, I

17   will have the audio up on the docket shortly after the

18   conclusion of this morning's hearing.

19         I previously told everyone -- there we go -- that I

20   have activated the hand raising feature.  If you know you're

21   going to be speaking and haven't already done so, if you'd

22   give me a 5 star.

23         And, Mr. Perez, I just saw you.  I don't think, just

24   looking at the numbers, that we have the Weil office in New

25   York unmuted.

1        MR. KOENIG:  Your Honor, good morning.  This is
2    Chris Koenig.  We just want to confirm that our audio is
3    working.
4        THE COURT:  I saw you pop on earlier and I did -- I
5    did hear you, so, yes.
6        MR. KOENIG:  Thank you.
7        UNIDENTIFIED SPEAKER:  Your Honor, we can't hear you
8    at all --
9        THE COURT:  You can't hear me?
10       UNIDENTIFIED SPEAKER:   -- if you were planning to
11   speak to us.
12       THE COURT:  Wow.  Should I start over?
13       UNIDENTIFIED SPEAKER:  Yes, Your Honor.
14       UNIDENTIFIED SPEAKER:  We can hear you now, Your
15   Honor.  Thank you.
16       THE COURT:  My apologies.  My apologies to everyone.
17   So let me start again.  The time is 11:01 Central.  Happy New
18   Year to everyone.  Today is January the 3rd, 2023, this is the
19   docket for Houston, Texas.  On the docket this morning we have
20   the jointly administered cases under Case Number 22-90341,
21   Core Scientific, Inc.
22       We are recording this morning using CourtSpeak,
23   we'll have the audio up on the docket shortly after the
24   conclusion of the hearing.  Please don't forget to record your
25   electronic appearance.  That's a quick trip to the website,

1    you can do that at any time prior to the conclusion of the

2    hearing.

3            The first time that you do speak, if you would,

4    please state your name and who you represent.  That does -- it

5    plays a very important role in help giving the court reporters

6    a point of reference in the event that a transcript request is

7    made.  I think I got -- I was better the first time than I was

8    the second.

9            In any event, Mr. Perez, good morning.  Are you

10   doing intros and then handing it off?

11           MR. PEREZ:  I think, Your Honor, that's correct,

12   along with me is my partners, Ronit Berkovich and Ted

13   Tsekerides, and I think Ms. Berkovich will handle the matters

14   initially.

15           THE COURT:  All right.  Thank you.

16           Let me ask -- let me first -- are we going forward

17   today?

18           MS. BERKOVICH:  Yes, Your Honor.

19           THE COURT:  All right.  Is there -- I really didn't

20   understand the reason why there was a request to seal Celsius'

21   preliminary objection.  Was that done by agreement, was there

22   a discussion.  I generally don't like to do that unless there

23   is a reason, and having read it, I just didn't see the reason.

24           MR. KOENIG:  Your Honor, for the Record, Chris

25   Koenig, Kirkland & Ellis, for Celsius and its affiliated

1  debtors and debtors-in-possession.  Those are objections.
2  Your Honor, there's a protective order in the Celsius case.
3  That material is governed by the protective order.  In advance
4  of filing our objection we reached out to counsel for Core and
5  asked them, you know, what, if anything, they believed was
6  confidential and should be sealed.  They provided us with a
7  list.

8        To be clear, and as Your Honor may have seen in our
9  sealing motion, we don't believe that the sealing of that
10  information is necessary, but pursuant to the protective order
11  that's what we're required to do, it was designated by Core,
12  so we abide with our obligations under our protective order
13  filed and under seal, and under that protective order Core has
14  7 days to object and argue about why that should be sealed.
15  And if they don't object, it will automatically be unsealed
16  after 7 days.  So there's a process to go through.

17        Again, just to be clear, we don't believe that it
18  needs to be sealed, or should be sealed, but we did it at the
19  request of Court.

20        THE COURT:  All right.  So this was -- yes,
21  Mr. Tsekerides.  Good morning.

22        MR. TSEKERIDES:  Yes, Your Honor.  I want to address
23  the point.  Ted Tsekerides from Weil for the Debtors on the
24  sealing issue.

25        So most of those documents related to third-party

1    agreements or third-party discussions and that's why we kept

2    them confidential because they're not just our information.

3    And, you know, the transcripts from the depositions, we

4    allowed those in and anything that was between the parties we

5    allowed those in.  But because the documents that they wanted

6    related to third parties, that's why we maintain the

7    confidentiality.  Separate from the issue that we don't think

8    any of that is relevant, but just on the confidentiality

9    point, that was the reason behind it.

10           THE COURT:  So was that with respect to Mr. Brown's

11   affidavit?

12           MR. TSEKERIDES:  Yes, it was all on the issue about

13   the underlying dispute on the contracts.

14           THE COURT:  No, so let me --

15           MR. TSEKERIDES:  So the documents are --

16           THE COURT:  -- so let me take a step back, and

17   again, I'm not trying to get in the middle of whatever

18   arrangement was made.  Mr. Brown's affidavit is totally

19   inappropriate for so many different reasons.  I'm not going to

20   consider it on any basis.  Quite frankly it probably ought to

21   simply be struck based upon what's on file.

22           But I want to talk just about the objection itself,

23   which is Docket Number 211 which is the actual -- that's the

24   actual sealed document.  Is there a reason why that should be

25   sealed?  And if there is, I'm not -- again, I'm not trying to

1    step on the toes of any agreement that's been reached.  Just

2    having read it, I don't understand why it was sealed.  I got

3    why you would have an issue with Mr. Brown's affidavit, but

4    best I can tell, that wasn't actually sealed.

5            MR. TSEKERIDES:  Well, we didn't discuss with them

6    in advance the objection.  They had sent us a list of

7    documents that related to the underlying dispute and some

8    deposition testimony, and that's what we referred to.  And

9    there are -- when I read the objection this morning, I mean I

10    think the front half, it relates to the dispute about the

11    rejection to the extent that there is one, and then the back

12    half is on the underlying contract dispute which we don't even

13    think is relevant in the rejection context.

14            Presumably if they were assuming -- because there is

15    reference to the underlying documents that are confidential in

16    that back half, probably that's why they sealed that.  But

17    that -- I didn't see this beforehand, but the driver for the

18    sealing from our perspective were these third-party documents

19    that some are referenced in this objection.

20            THE COURT:  Right.  But the documents -- all of the

21    materials themselves are attached to Mr. Brown's affidavit

22    which, again, just looking at it, isn't sealed.

23            MR. TSEKERIDES:  Right.

24            MR. PEREZ:  Your Honor -- sorry, go ahead.

25            MR. TSEKERIDES:  Your Honor, there was a sealed

1    version and an unsealed version.  Certainly the exhibits are

2    not confidential and were not sealed.  Certain of the exhibits

3    were confidential and were sealed for that reason.  There's

4    two versions.  The sealed version is at 212 -- I'm sorry,

5    yeah, the affidavit, 214 is the sealed version which has all

6    of the documents, and 212 is the redacted version which those

7    documents that were confidential was attached to the affidavit

8    publicly and the remainder were not attached.

9            THE COURT:  I did not -- I did not appreciate that

10   that they weren't identical.  Okay.  I got it.  All right.

11   And so -- but with respect to the objection itself, that was

12   sealed as well.  Correct?

13           MR. TSEKERIDES:  That's right, Your Honor.  We did

14   that because we made referenced in the objection to certain

15   documents that Core's counsel told us they believe was

16   confidential and so we didn't want to have the horse sort of

17   be out of the barn at that point if it turned out that those

18   documents were to be confidential.

19           And again, we don't believe that they are, that the

20   references are confidential, but, you know, it's hard to re-

21   seal something once we've posted public.

22           THE COURT:  No --

23           MR. TSEKERIDES:  And the only --

24           THE COURT:   -- one second that it -- one second on

25   the docket and it's not longer sealed.  I totally got that.

1       But I do -- and again, if there's a legitimate reason that it

2       should be sealed, then I'm all for it.  But I really disfavor

3       the situations where anyone who has an interest in the case

4       can't understand what's going on because, you know, everything

5       gets sealed.

6               And again, if there's a good reason to seal it, I'm

7       all for it.  I don't want it to be used as a competitive

8       advantage or embarrassment or if it discloses any sort of

9       confidential information.  I just didn't see it.

10              Mr. Tsekerides?

11              MR. TSEKERIDES:  Yes, I think the point I made

12      there, Your Honor, in looking at their objection is to Page 9

13      before Section 4.  As it relates to the rejection, I don't

14      think any of that -- that section has anything to do with the

15      underlying dispute and the documents at issue.  They could

16      have -- we didn't say anything about that, they could have

17      unsealed that front portion or redacted the back.

18              You know, having gone through every document that

19      they cite from Section 4 to the end, I'm sure there's some in

20      here that fall within what we would consider competitive

21      information and third-party information, but certainly in

22      addition to not being relevant.  But I think they could easily

23      unseal the first 8-3/4 pages that have nothing to do with the

24      underlying dispute or a claim of confidentiality and relate

25      just to the rejection piece.

1        THE COURT:  All right.  So for purposes of today,

2    because I don't want to get off track, I'm going to leave it

3    where it sits.  But I'm urging everybody, again, if there's a

4    legitimate reason to seal something, then fine.  And I

5    understand that there are real reasons to do it, but I really

6    don't want to see as a developing habit where every single

7    pleading is sealed, because I think that just a disservice to

8    the process and I just don't think it's needed most of the

9    time.

10        (Pause in the proceedings.)

11        THE COURT:  Ah, wonder what happened?

12        (Pause in the proceedings.)

13        MR. PEREZ:  Your Honor --

14        THE COURT:  All right.  Evidently the entire call

15    was dropped.  My apologies.  We'll go back as far as we need

16    to.  I do have everybody muted, so if you would give me a

17    5 star again, it would be much appreciated.

18        MR. PEREZ:  Your Honor, we can hear you now.  This

19    is Alfredo Perez.

20        THE COURT:  Thank you.  And I have you unmuted.  I'm

21    waiting for the other folks.

22        Yes, Mr. Koenig, and --

23        (Pause in the proceedings.)

24        THE COURT:  Mr. Tsekerides, can you hear me?

25        MR. TSEKERIDES:  (No audible response.)

1          THE COURT:  Mr. Perez, could you text your

2     colleagues in New York and --

3          MR. PEREZ:  Yes.

4          THE COURT:   -- tell them that they need to dial in

5     again?

6          MR. PEREZ:  Yes, sir.

7       (Pause in the proceedings.)

8          THE COURT:  Mr. Koenig, can you hear me?  Just

9     thumbs up or thumbs down.

10         All right.  I need for you hit 5 star again.

11       (Pause in the proceedings.)

12         MR. KOENIG:  Your Honor, it looks like our whole

13    line dropped, so we re-dialed -- we re-dialed in on my cell

14    phone.  We're coming in -- can you hear me okay on the cell

15    phone?

16         THE COURT:  Loud and clear however you're doing it.

17         MR. KOENIG:  Okay.  So I missed whatever until just

18    now when you asked me if we could hear you.

19         THE COURT:  So let me -- let's just take a minute

20    and get everybody in.  I've got Mr. Perez back and he's live.

21    I don't think that we have Mr. Tsekerides back on the line

22    yet.

23         UNIDENTIFIED SPEAKER:  Your Honor, we'll put in the

24    chat that everybody should redial and that's the best way to

25    get reconnected.

1          UNIDENTIFIED SPEAKER:  No, they're connected.

2          THE COURT:  I think everyone has -- everyone has

3     done that, I now have 80-some-odd folks back on the line.  But

4     thank you.

5          UNIDENTIFIED SPEAKER:  Thank you, Your Honor, and I

6     think (indiscernible).

7        (Pause in the proceedings.)

8          THE COURT:  I can read your lips, but I can't hear

9     you.  Hold on, there's a Chicago number just popped up.

10         MR. KOENIG:  There we go.  Thank you, Your Honor.

11    Appreciate you -- appreciate you helping us through the

12    technicalities.

13         THE COURT:  No, no, no.  Let's see, do we have --

14    no, we don't even have -- ah, there, he's back.

15         Mr. Tsekerides, can you hear me?

16         MR. TSEKERIDES:  (No audible response.)

17         THE COURT:  I can't hear you.  Could you give me --

18         MR. TSEKERIDES:  Yes.

19         THE COURT:   -- there it is, there's the 646 number.

20    All right.

21         MR. TSEKERIDES:  Okay.  Are we good?

22         THE COURT:  We are good.  All right.  So I don't

23    know where I lost you, but let me just sort of take a step

24    back.

25         And again, I want to make it very clear, if there

1   are legitimate reasons for pleadings to be sealed, all for it.

2   I understand the reasons for that.  What I don't want to do is

3   to start a habit where every single thing that gets filed in

4   the case is sealed.  I just think that that does a disservice

5   to the process.

6          And again, if there are reasons that part or all of

7   this, the motion, the affidavit -- I'm sorry, the objection to

8   the affidavit should be sealed, I don't want to parse through

9   and say, Pages 2 through 8 shouldn't be and the remainder

10  should be.  I'll leave it like it is and just please, you

11  know, look at -- take the position of being yourself on the

12  outside looking in, wanting to follow and wanting to

13  understand what's going on in the case.

14         Legitimate reason, great.  But otherwise I'd really

15  prefer the transparency.  So let's just proceed from there.

16  Okay?

17         MR. TSEKERIDES:  We can certainly do that, Your

18  Honor.  Thank you.

19         MR. PEREZ:  And, Your Honor, this is Alfredo Perez,

20  but we did file a redacted version of the objection at 213, I

21  think.  So that's the one that I pulled out before we ever got

22  anything else.

23         THE COURT:  No, I just -- where I started was the

24  sealed version of the objection, and I just didn't understand

25  why it was sealed.  I didn't learn anything in there that I

1    didn't have already in my base knowledge set, and if I just

2    didn't understand it because all I see is what's on the

3    docket.

4              All right.  So with that let me --

5              UNIDENTIFIED SPEAKER:  All right.  Thank you.

6              THE COURT:  No, thank you both.  So let me go ahead

7    and -- Mr. Koenig, again, I'm not trying to dictate how this

8    proceeding goes.

9              I'm still trying to understand what it is that your

10   primary complaint focuses on.  Because I'm having difficulty,

11   other than trying to be strategic, I'm having great difficulty

12   in understanding the position that you're taking.

13             MR. KOENIG:  Sure.  Sure, Your Honor.  Again, for

14   the Record, Chris Koenig.

15             So, look, our concern here, Your Honor, is process

16   and timing.  Let me start with the strategic point.  We're not

17   seeking to make a dollar off for following today.  We've

18   agreed that they can turn off our rates effective today and

19   that, you know, they don't get to continue to charge us, we

20   don't continue to pay for it.  We understand.

21             What we're trying to do is make sure that there's a

22   process that gives us adequate time to talk to our

23   stakeholders, gives us the opportunity to talk to Judge Glenn

24   and move forward on that basis.  And candidly, Your Honor, we

25   think this is an emergency entirely of Core's own making.

1    They filed this two business days ago.  They knew all of the

2    facts and the petition date, it was in the First Day

3    Declarations, referenced at the First Day Hearing.

4         We don't really understand why they filed it when

5    they did last week, but since he said there is an emergency

6    that's valid, we've agreed to take care of that by turning --

7    if we allow them to turn off the rates, their alleged harm

8    from continuing to go through and have to pay -- or continue a

9    service of contract that they believe is not value maximizing,

10   that that concern will no longer be there.

11        But that'll give us the adequate time that we need,

12   and we think is appropriate, to, you know, we're a Debtor in

13   our own Chapter 11 case, we have our own bankruptcy judge, and

14   we have litigation with Core that is pending before Judge

15   Glenn right now.

16        So we're trying to be mindful of Judge Glenn, we

17   don't want to get sideways with him, we don't want him to feel

18   like the rug was sort of pulled out from under him on an

19   emergency basis.  And if this had been set on regular notice,

20   we would have had time to work with Core and to go to the --

21   to go to Judge Glenn and propose a lift stay motion.

22        To be clear, we're not opposing the rejection at the

23   appropriate time, we're not opposing the lifting of the

24   automatic stay because we think the Court could demonstrate

25   cause.  But we think as a technical matter the automatic stay

1    exists and is in place and the Debtor can't just waive the

2    automatic stay.  There's black letter law that says that the

3    estate -- not only the Debtor, but the Debtor's creditors to

4    make sure that the Debtor can't lift the stay to allow a

5    friendly creditor proceed.  And so we think that the process

6    is important.

7            And again, we don't think that Core is going to

8    suffer one iota from having done this because they can turn

9    off the power on our rig today.  But that'll give us time to

10   go to our own constituents, to go to our court, and, you know,

11   we will support a joint stipulation with Core that we believe

12   the automatic stay should be lifted, and that'll also give us

13   the time to continue to work with Core on the terms of the

14   transition.

15           I'm sure Your Honor saw in the objection we filed

16   last night that we proposed terms for the -- from the

17   transition of the 37,000 rigs.  We just, frankly given the

18   emergency, haven't had the time to finish working that out

19   with Core's counsel.  But we think that that would be

20   appropriate and reasonable, and frankly we think it's required

21   by the automatic stay in our own case.

22           THE COURT:  And so what provision of the automatic

23   stay is it that you think that the shear act of rejection

24   violates?

25           MR. KOENIG:  We think it's control over property of

1    the estate.  I mean it's black letter law that the Debtor can

2    enforce compliance with an executory contract by the non-

3    debtor counterparty.  Well, we're two Debtors here.

4            But Celsius can tell Core to comply with the

5    contract, and it's an automatic stay provision, and that's

6    what we did, that's exactly what we did in our bankruptcy.  We

7    brought a motion for contempt and a motion to enforce the

8    automatic stay to compel the non-debtor counterparty, the then

9    non-debtor counterparty Core, to comply with the automatic

10   stay.  And so we believe --

11           THE COURT:  So let's peel that back a bit.  So the

12   act of rejection is simply nothing more than giving the Debtor

13   the right to breach the agreement and excusing --

14           MR. KOENIG:  (Indiscernible), breach, yeah.

15           THE COURT:  -- and excusing future performance.  A

16   motion to enforce and for contempt absolutely impacts the stay

17   in this case.  Do you agree?

18           MR. KOENIG:  We agree and that's why we haven't

19   pursued that motion in our own case yet.

20           THE COURT:  And so how is it -- because the Debtor

21   could -- the Debtor could just stop performing and that

22   wouldn't violate the stay.

23           MR. KOENIG:  That's before, Your Honor.

24           THE COURT:  Yes.  They could just stop performing

25   and it doesn't violate the stay.

1           MR. KOENIG:  I think it could violate Celsius's
2   stay.
3           THE COURT:  How so?
4           MR. KOENIG:  I think in order for us to continue --
5           THE COURT:  If I just decided not to perform -- I'm
6   a third party dealing with your Celsius Debtor.  If I choose
7   not to perform, how could that possibly violate the automatic
8   stay in your case, and what provision?
9           MR. KOENIG:  Because we have the right, Your Honor,
10  to -- like the contract is itself property of the estate, and
11  contractual rights are property of the estate, and so we have
12  the ability to enforce those contractual rights in our own
13  bankruptcy and we filed a motion to enforce the automatic stay
14  in our bankruptcy --
15          THE COURT:  But that's not the stay --
16          MR. KOENIG:  -- on that --
17          THE COURT:  -- the stay doesn't have to do a
18  seeking enforcement.  You can absolutely file a motion to
19  compel performance.  But until you do that, until you have an
20  order, which you don't have an order and you can't get one at
21  this point without violating the stay in my case --
22          MR. KOENIG:  Agreed.
23          THE COURT:  -- how does non-performance violate the
24  automatic stay?
25          MR. KOENIG:  Because we have contractual -- we have

1          contractual rights that's property of the estate and their

2          failure to perform under them is --

3                    THE COURT:  It gives rise to a claim perhaps, but

4          tell me what provision of the automatic stay that simple non-

5          performance violates.

6                    MR. KOENIG:  I think it's an attempt to exercise

7          control over the property --

8                    THE COURT:  Not even close.

9                    MR. KOENIG:   -- of the estate because our property

10         of the estate includes the --

11                   THE COURT:  What am I trying to exercise control

12         over?  I'm just simply saying I either can't or won't perform.

13         What property right is that exercising control over, other

14         than my own?

15                   MR. KOENIG:  Our contractual -- it's our contractual

16         right to compel performance from a non-debtor.

17                   THE COURT:  So if I told you that I consider that to

18         be a frivolous argument, where would you like to go from here?

19                   MR. KOENIG:  Your Honor, what I would say is we have

20         litigation that's pending in front of Judge Glenn and we think

21         that it's appropriate that, as I said earlier, that he not

22         sort of have the rug pulled out from under him, but there's

23         litigation that this would effectively moot.  If the rejection

24         goes forward, that would moot the litigation in front of Judge

25         Glenn.

1          THE COURT:  How so?  It may limit it, but how does
2     it pull the rug out from underneath him?  If there was a right
3     between your petition date and the date of rejection, that
4     cause of action hasn't been affected.  It hasn't -- just
5     simply rejecting the contract doesn't affect what happens
6     next, it doesn't affect what happens to the computers, it
7     doesn't happen to enforcement.
8          MR. KOENIG:  Sure.  Your Honor, I'll concede that.
9     I'll move instead to the rate for the property of the estate
10     that we're really concerned about.  Right?  It's not about --
11     at this point --
12          THE COURT:  And I totally agree.
13          MR. KOENIG:   -- it's not about the contractual
14     rights.
15          THE COURT:  So let --
16          MR. KOENIG:  It's about the rent, it's about the --
17     sorry, Your Honor.
18          THE COURT:  Let me say this to both of you, for one,
19     the Debtor has almost an unqualified right to reject so long
20     as there is a rational business reason for doing it.  And
21     you've acknowledged that that reason exists.
22          So what -- and, again, I'm talking to you, but I'm
23     also talking to the Debtor, I'm not going to let you use this
24     as a strategic maneuver, and I think that you're actually
25     taking advantage of Judge Glenn without Judge Glenn being able

1      to voice his own concerns.  I think it's exactly the opposite

2      of what you're representing to me.

3              That all being said, my Debtor is not going to use

4      the rejection of the contract to gain a strategic advantage in

5      dealing with very valuable and expensive and sensitive

6      property which are the computers themselves.  So what I -- and

7      again, I'm not trying to dictate the course of the hearing, I

8      just need to get this on the right track, because you folks

9      have had -- you folks are not talking to one another, you're

10     talking past one another.  And I don't think that you want a

11     third part in this conversation because I tend not to listen

12     very well.

13             There needs to be a structured, agreed, orderly,

14     efficient, cost-effective way of dealing with the termination

15     of the relationship without prejudice to whatever monetary

16     issues may exist out there.  You folks will work that out.

17     But I'm not going to let this -- there aren't going to be

18     computers on the sidewalk and I know that nobody would do

19     that, but it's just a statement.  There aren't going to be

20     computers on the sidewalk, there isn't going to be -- there

21     isn't going to be air conditioning turned off that would

22     endanger sensitive electronic components.  It isn't going to

23     be where you've got to come pick them up between the hours of

24     4:00 and 5:00.  Not going to happen.  We're going to do this

25     the right way.

1          So we can have a hearing on whether or not the

2     Debtor's entitled to reject the agreement.  You in the

3     response -- or you in the objection acknowledge that that's a

4     losing battle, it's just a question of when.  And I'm telling

5     you the when is going to be right now, and we can spend time

6     figuring out the right way to effectuate the transition so

7     that we maximize the current situation that we find ourselves

8     in for both bankruptcy estates.  That's what we should all be

9     working toward.

10          I'm not trying to hang somebody up with a contempt

11    motion or a sanctions motion or trying to set this up so that

12    we can charge rent for computers or we can try to make a

13    point.  Not going to happen either way.

14          But it just seems to me that we ought to be focused

15    on having a conversation about how we end this in an honorable

16    and transparent way without the involvement of either Judge

17    Glenn or Judge Jones.  This ought to be an operational

18    transition that quite frankly no one who wears the black dress

19    ought to be engaged in.

20          Now unfortunately for you I lived in a data center

21    for a long time and I feel like I know an awful lot about it,

22    and we don't really want to test that theory.

23          So let me ask:  Do we want to take a break and

24    perhaps talk about a reset on how to proceed with the hearing,

25    or do we want to proceed ahead with the hearing?

1           MR. KOENIG:  Your Honor, I think it would be helpful

2    for us to have a few minutes to talk offline and come back to

3    Your Honor.  And we certainly understand and appreciate your

4    comments about the stay.  Just to be clear we just felt like

5    we couldn't concede it in our case, and given that we have our

6    own judge and our own constituents, it was something that we

7    felt like we had to do.

8           THE COURT:  I'm not bothered by it at all.  I think

9    it's wrong, I think there's a huge difference between

10    rejecting a contract and then what happens next.  It's the

11    what happens next that absolutely touches on the stay.

12           And I haven't heard, and I asked everyone who would

13    listen to me over the past couple of days as to give me the

14    best argument you can come up with as to how a rejection would

15    possibly violate an automatic stay in a case filed by the

16    counterparty.  I haven't heard it yet.  It may be that it's

17    out there and I just haven't met anybody smart enough and I

18    may not be smart enough to come up with it myself.  But I

19    don't see it.  It's what happens next.

20           And so, you know, I want -- the thing that happens

21    next is the most important thing to me, so let's focus on

22    that.  Let me ask, the Weil team have any opposition, because

23    it is your hearing, and again, I didn't mean to highjack your

24    hearing, any objection from the Weil team about taking a

25    couple of minutes and see if we can talk about what I think

1    the most important part of this is, and that's the transition?

2              MS. BERKOVICH:  No objection, Your Honor.  We agree

3    with you.

4              THE COURT:  So it's 11:30.  This is not a short

5    conversation.  Should we check in at noon, does that make

6    sense, and that would be noon Central, 30 minutes from now for

7    everybody?

8              UNIDENTIFIED SPEAKER:  That makes sense though.

9              THE COURT:  All right.  Then what I'll do, I'm going

10   to leave everything up and running.  I will mute everything

11   and I'll make sure that I don't -- I'll make sure that unmute

12   it when I get back on.  If it turns out that there are

13   productive discussions and you need more time, just have

14   somebody pop back on and say, we need more time, and that way

15   folks who want to monitor can hear it, and we'll figure out

16   what to do next.

17             If we don't go in a productive direction, then what

18   I'll expect when we come back at noon is that the Debtor will

19   present its case and we'll move forward.  Okay?

20             MS. BERKOVICH:  Yes, we've actually had preliminary

21   discussions about these logistical issues that have been --

22   we're confident that we can use the 30 minutes productively to

23   get (indiscernible).  We'll start that right away.

24             THE COURT:  Terrific.  All right.  Then I'll see

25   everybody back at noon Central.  Thank you.

1        MR. KOENIG:  Thank you.

2        (Recess taken from 11:31 a.m. to 12:00 p.m.)

3                        AFTER RECESS

4        THE COURT:  All right.  Folks, it is 12:00 o'clock

5    noon.  We are back on the Record in the jointly administered

6    cases under Case Number 22-90341, Core Scientific.

7        Folks, where are we?

8        MR. KOENIG:  Your Honor, Chris Koenig for the

9    Record.  We had very productive conversations, we used the

10   time well.  Language was proposed by Core that we believe

11   works, we've recommended it to our client.  Frankly we need

12   the client to sign off on it, we're not expecting any issues,

13   but, you know, we need a little bit more time to confirm with

14   the client.  Our proposal would be to submit an agreed form of

15   order, you know, assuming that the client agrees to it.  But I

16   think that we're resolved on the terms of an orderly

17   transition that works for both Celsius and with Core.

18       THE COURT:  All right.  The Debtor agree?

19       MS. BERKOVICH:  Your Honor, yes, that's agreed.

20   Just one request, they're losing more than $1,000 an hour by

21   leaving the machines on, so since it's agreed that we can turn

22   the machines off, we intend to do so right after this hearing

23   while we work out the form of order.

24       THE COURT:  Mr. Koenig, any objection to that?

25       MR. KOENIG:  No, Your Honor.

1    THE COURT:  And I assume that there's no process for

2    taking the machines down, it literally is just disconnecting

3    power?

4    MS. BERKOVICH:  No, there is a process to track how

5    it ties -- oh, for right now, no, it's simply turning off the

6    power.

7    THE COURT:  Ah.  Okay.  I just -- I lived a life

8    where there was a process to taking something down.  I just

9    want to make sure that we were following any protocol that was

10   in place or any process that was needed in order to ensure the

11   longevity or preserve the integrity of the equipment.

12   MS. BERKOVICH:  Core will do that in the

13   decommissioning process.

14   THE COURT:  Right.  Mr. Koenig, let me ask --

15   MR. KOENIG:  (Indiscernible) --

16   THE COURT:  I'm sorry.  Go ahead.

17   MR. KOENIG:  I was going to say -- I apologize, Your

18   Honor, I was just going to say that's part of the language

19   that we've agreed to, it's part of the transition of how is

20   Core going to be (indiscernible) and get everything ready for

21   pick up.  But as far as just turning off the machines, we have

22   no objection to them doing that right after this hearing.

23   THE COURT:  Okay.  Let's just -- let's talk to the

24   people that know and make sure that -- again, you know, I've

25   lived in a world where if you flipped off the power switch

1    without running a process, you know, it was a million dollar

2    mistake.  So let's make sure we do it the right way.

3          Mr. Koenig, let me ask you this, I'm perfectly

4    comfortable if you tell me that you are proposing to simply

5    submit an agreed order.  I'm also perfectly happy if you want

6    to -- I can give you some time this afternoon if you want to

7    come back and say, you know, we, you know, we have an agreed

8    order, you can upload it before then, or we have this

9    outstanding issue.  You know the conversations that have

10    occurred obviously much better than I do.

11          What would be the most productive?

12          MR. KOENIG:  I'm happy to take the time if it's not

13    an imposition to you or to chambers.  I don't know what your

14    schedule is like.  I don't believe we're going to need the

15    time, we had a very productive conversation, I expect we'll be

16    able to get there on the agreed form of order, you know,

17    pretty rapidly.  But if Your Honor has time this afternoon, we

18    certainly won't say no to it.

19          THE COURT:  I've had a number of things go off the

20    docket, and so I'm perfectly happy to give you all some time

21    if you think it would be helpful.

22          MR. KOENIG:  Happy to have a place holder on your

23    calendar, and if we end up not needing the time, we can always

24    contact Mr. Alonzo.

25          THE COURT:  Absolutely.  How about 3:30 Central,

1 that would be 4:30 East Coast time.  Would that work for

2 everybody?

3     MS. BERKOVICH:  That works for us.

4     MR. KOENIG:  Okay for Celsius.

5     THE COURT:  Okay.  Then what we'll do is we will

6 adjourn the hearing until 3:30 with hopes that perhaps an

7 agreed order can be uploaded prior to.  But folks who are

8 listening, what I will do is at 3:30 whether we have a hearing

9 or not, I will get on the line and make an announcement so

10 that folks aren't wondering what's occurring.

11     Any objections to that?

12     MR. KOENIG:  No, Your Honor.

13     THE COURT:  And again, if you've uploaded an agreed

14 order, no need for you to get on.  I know you've got a million

15 other things to do.  All I'm going to do is to, if there's

16 been an agreed order, I'm just going to make the announcement

17 that an agreed order's been uploaded, I either have or haven't

18 signed it, and if I have signed it, it's on the docket at

19 Docket Number X.  That's all I'll do.  Okay?

20     MR. KOENIG:  Okay, Your Honor.  And one just quick

21 item to flag, and it's not an issue for today, it's sort of a

22 coming attraction and we wanted to make sure while we had Your

23 Honor in front of us, we discovered that Celsius recently made

24 a pre-payment for January services.  That pre-payment's in the

25 amount of about $4.7 million.

1          Not for today, not for rejection, it's not going to

2     be part of this resolution.  But it's going to be a resolution

3     that we need to work on very soon.  We're going to start

4     talking to Core immediately.  Hopefully we can reach a

5     resolution.  If not, you know, we expect to bring it before

6     Your Honor.  But just wanted to flag so that you are aware of

7     it as I said as a coming attraction, potentially either a

8     resolution or for (indiscernible) our right.

9          THE COURT:  I got it.  I assume that this is just

10    one in a number of issues that you folks are going to have to

11    address.  And as I told you first day and I meant it, I mean

12    it today, as soon as you folks are ready to tee things up, you

13    will have my undivided attention promptly.

14         MR. KOENIG:  Thank you.  We appreciate it.  We just

15    wanted to make sure Your Honor wasn't surprised.

16         THE COURT:  Nope, I got it.  And what's the fun in

17    life if you can't get surprised from time-to-time?

18         I will see everybody if I need to at 3:30, and if

19    not, you can just reach out to Mr. Alonzo and let him know

20    that an order's there.  All right?

21         MS. BERKOVICH:  Thank you, Your Honor.

22         MR. KOENIG:  Thank you, Your Honor.

23         THE COURT:  All right.  Thank you everyone.  We'll

24    be adjourned until 2:00.

25         (Recess taken from 12:06 p.m. to 3:30 p.m.)

1              AFTER RECESS

2              THE COURT:  All right.  Good afternoon everyone.

3      This is Judge Jones, the time is 3:30 Central, today is

4      January the 3rd, 2023, a continuation of this morning's

5      docket, the jointly administered cases under Case Number 22-

6      90341, Core Scientific, Inc.

7              Folks, I would ask that you make an electronic

8      appearance this afternoon, even if you made one this morning.

9      We will keep them separate, and I want the Record to be as

10     accurate as it possibly can be.

11             Same rules apply, first time that you speak if you

12     would, please state your name and who you represent.  That

13     really does give the court reporters a great point of

14     reference.

15             We are recording using CourtSpeak, we'll have that

16     up on the docket shortly after the conclusion of the hearing.

17             And with that, folks, where are we, what can I do to

18     help move the process along?  And everyone gets a chance, who

19     would like to go first?

20             MS. BERKOVICH:  I'll go first.

21             UNIDENTIFIED SPEAKER:  Go ahead.

22             MS. BERKOVICH:  Good afternoon, Your Honor.  Ronit

23     Berkovich with Weil Gotshal for the Debtor.

24             We come back to you this afternoon with good news,

25     which is that the Debtor and Celsius have reached an agreement

1      in principle on language to be added to the order to address

2      the logistics around decommissioning.

3              THE COURT:  Okay.

4              MS. BERKOVICH:  I just -- we don't have the exact

5      sort of order with the language in it, we're like 99 percent

6      of the way there.  We will submit it, we are confident that

7      we're there and we'll submit it to Your Honor this afternoon.

8      We would, however, request a hearing for early tomorrow

9      morning just in case, and that's a small percentage chance

10     that we somehow -- the deal falls apart before we're able to

11     submit it.

12             THE COURT:  Fair enough.

13             Mr. Koenig, do you agree?

14             MR. KOENIG:  Your Honor, Chris Koenig from Kirkland

15     & Ellis for Celsius.

16             We do agree and, sorry to Ms. Berkovich, who's

17     dealing with that.  (Indiscernible) better in going first.  I

18     agree with all of that.

19             THE COURT:  All right.  Thank you.

20             Then how about, just looking at tomorrow's docket,

21     what about just first thing, 9:00 o'clock Central, would that

22     work for everybody?

23             MS. BERKOVICH:  That works for Core, Your Honor.

24             THE COURT:  Mr. Koenig?

25             MR. KOENIG:  That's fine for Celsius.

1          THE COURT:  Okay.  Thank you.

2          MR. KOENIG:  I don't anticipate (glitch in the

3     audio).

4          THE COURT:  No, I got it.  I appreciate people

5     being -- always have a Plan B in your back pocket.  That's the

6     story of my life.

7          Then we'll go ahead and set aside 9:00 o'clock

8     Central time in the morning.  If you would -- once that order

9     gets uploaded, if you would just make sure you confirm in an

10    email or text with everybody that is playing a role that the

11    hearing will not go forward.

12         What I'll do is I'll check the dial in in the

13    morning.  If there are people on and we're not having a

14    hearing, I'll probably just pop on and tell everyone that

15    there's not going to be a hearing.  I won't do anything

16    substantive.  If no one dials in, then I obviously will --

17    I'll just let it be.  All right?

18         MS. BERKOVICH:  Thank you, Your Honor.

19         THE COURT:  I appreciate everybody keeping their eye

20    on the end game, and obviously we've got a number of things to

21    work through, and we will get through those just as quickly as

22    you folks are ready to address them.  All right?

23         MR. KOENIG:  Thank you, Your Honor.

24         THE COURT:  All right.  Thank you.  And I --

25    Mr. Koenig, I've got to say, I really like the spinning

1    football helmet in the background.  It's mesmerizing.  It's

2    right over your shoulder.

3            MR. KOENIG:  I appreciate it.  Thank you.

4            THE COURT:  All right.  Thank you.  Everyone have a

5    good afternoon.  We'll be adjourned.

6            MR. KOENIG:  Bye-bye.

7        (Hearing adjourned 3:33 p.m.)

8                            * * * * *

9        *I certify that the foregoing is a correct transcript*

10   *to the best of my ability due to the condition of the*

11   *electronic sound recording of the ZOOM/video/telephonic*

12   *proceedings in the above-entitled matter.*

13    */S./   MARY D. HENRY*

14   *CERTIFIED BY THE AMERICAN ASSOCIATION OF*

15   *ELECTRONIC REPORTERS AND TRANSCRIBERS, CET**337*

16   *JUDICIAL TRANSCRIBERS OF TEXAS, LLC*

17   *JTT TRANSCRIPT #66690*

18   *DATE FILED:  JANUARY 8, 2023*

19

20

21

22

23

24

25