## Exhibit A

**Engagement Letter**

PJT Partners 

November 14, 2022

Ray C. Schrock, P.C.
Partner
Weil, Gotshal & Manges LLP
767 5th Ave, New York, NY 10153

Dear Ray:

This letter confirms the understanding and agreement (the "**Agreement**") between PJT Partners LP ("**PJT Partners**") and Weil, Gotshal & Manges LLP ("**Counsel**"), as counsel to Core Scientific, Inc. ("**Core Scientific**" and together with its affiliates and subsidiaries, the "**Company**"), regarding the retention of PJT Partners on an exclusive basis by Counsel on behalf of the Company effective as of October 6, 2022 (the "**Effective Date**") as its investment banker for the purposes set forth herein.

Under this Agreement, PJT Partners will provide investment banking services to Counsel in connection with a possible Restructuring and/or Capital Raise (each as defined below) and will assist Counsel on behalf of the Company in analyzing, structuring, negotiating and effecting the Restructuring and/or Capital Raise pursuant to the terms and conditions of this Agreement.  As used in this Agreement, the term (a) "**Restructuring**" shall mean, collectively, (i) any restructuring, reorganization (whether or not pursuant to chapter 11 of the United States Bankruptcy Code ("**Chapter 11**")) and/or recapitalization of the Company affecting a material portion of its existing or potential debt obligations or other claims against the Company, including, without limitation, senior debt, junior debt, trade claims, general unsecured claims, and preferred stock (collectively, the "**Obligations**"), and/or (ii) a sale or other acquisition or disposition of a material portion of the assets and/or equity of the Company, and/or (iii) any complete or partial repurchase, refinancing, extension or repayment by the Company of any of the Obligations and (b) "**Capital Raise**" shall mean any financing arranged by PJT Partners at the request of the Company.

The investment banking services to be rendered by PJT Partners will, if appropriate and at the request of Counsel, include the following:

(a)     assist in the evaluation of the Company's businesses and prospects;

(b)     assist in the development of the Company's long-term business plan and related financial projections;

(c)     assist in the development of financial data and presentations to the Company's Board of Directors and any committee thereof delegated authority to negotiated, consider, evaluate, and/or effectuate a Restructuring or a Capital Raise on behalf thereof (collectively, the "**Board**"), various creditors and other third parties;

(d)     analyze the Company's financial liquidity and evaluate alternatives to improve such liquidity;

(e)     analyze various restructuring scenarios and the potential impact of these scenarios on the recoveries of those stakeholders impacted by the Restructuring;

(f)     provide strategic advice with regard to restructuring or refinancing the Company's Obligations;

(g)     evaluate the Company's debt capacity and alternative capital structures;

(h)     participate in negotiations among the Company and its creditors, suppliers, lessors and other interested parties;

(i)     value securities offered by the Company in connection with a Restructuring;

(j)     advise Counsel on behalf of the Company and negotiate with lenders with respect to potential waivers or amendments of various credit facilities;

(k)     assist in arranging financing for the Company, as requested;

(l)     provide expert witness testimony concerning any of the subjects encompassed by the other investment banking services; and

(m)     provide such other advisory services as are customarily provided in connection with the analysis and negotiation of a transaction similar to a potential Restructuring and/or Capital Raise, as requested and mutually agreed.

Notwithstanding anything contained in this Agreement to the contrary, PJT Partners shall have no responsibility for designing or implementing any initiatives to improve the Company's operations, profitability, cash management or liquidity.  PJT Partners makes no representations or warranties about the Company's ability to (i) successfully improve its operations, (ii) maintain or secure sufficient liquidity to operate its business, or (iii) successfully complete a Restructuring and/or Capital Raise.  PJT Partners is retained under this Agreement solely to provide advice regarding a Restructuring and/or Capital Raise, and is not being retained to provide "crisis management" or any legal, tax, accounting or actuarial advice.  It is understood and agreed that nothing contained herein shall constitute a commitment, express or implied, on the part of PJT Partners to underwrite, purchase or place any securities, in a financing or otherwise.

It is agreed that the Company will pay the following fees to PJT Partners for its investment banking services (all fees and expenses payable to PJT Partners pursuant to this Agreement shall be payable solely by the Company; Counsel shall have no obligation to pay PJT Partners' fees or expenses):

(i)     a monthly advisory fee (the "**Monthly Fee**") in the amount of $200,000 per month, payable by the Company in cash as follows: (a) to the extent that the Effective Date occurs after the 1st day of the month, for the period beginning on the Effective Date through the end of the first calendar month (the "**Stub Period**"), a pro-rated monthly fee in advance upon execution of this Agreement; (b) for the first full calendar month following the Stub Period, if applicable, or the Effective Date if there is no Stub Period, in advance upon execution of this Agreement; and (c) for each month thereafter, in advance on the first day of each month; provided that fifty percent (50%) of any Monthly Fees paid to PJT Partners after the sixth (6th) full Monthly Fee has been paid (i.e., after $1,200,000 in Monthly Fees have been paid to PJT Partners) shall be credited against any Restructuring Fee (as defined below) payable hereunder; provided, further, that in the event of a Chapter 11 filing by the Company, any such credit of fees contemplated by the foregoing sentence shall apply only in the event that all fees earned by PJT Partners pursuant to this Agreement are approved in their entirety by the Bankruptcy Court pursuant to a final order not subject to appeal and which order is acceptable in all respects to PJT Partners;

(ii)     a capital raising fee (the "**Capital Raising Fee**") for any Capital Raise, earned and payable upon the earlier of the receipt of a binding commitment letter and the closing of such Capital Raise.  If access to the financing is limited by orders of the bankruptcy court, a proportionate fee shall be payable with respect to each available commitment (irrespective of availability blocks, borrowing base, or other similar restrictions).  The Capital Raising Fee will be calculated as 1.5% of the total issuance and/or committed amount of senior debt financing, 3.0% of the total issuance and/or committed amount of junior debt financing or unsecured debt financing (including, without limitation, financing that is junior in right of payment, second lien, subordinated (structurally or otherwise) and unsecured debt), and 5.0% of the issuance and/or committed amount of equity financing, in each case, including by means of a back-stop commitment; provided that, (x) to the extent that any Capital Raise is raised from existing debt or equity holders of the Company as of the Effective Date (collectively, "**Existing Holders**") the Capital Raising Fee in respect of the portion of the Capital Raise raised from any Existing Holders shall be calculated as 0.75% of the total issuance and/or committed amount of senior debt financing, 1.5% of the total issuance and/or committed amount of junior debt financing (including, without limitation, financing that is junior in right of payment, second lien, subordinated (structurally or otherwise) and unsecured

debt and preferred equity), and 2.5% of the issuance and/or committed amount of common and other non-preferred equity financing, in each case, including by means of back-stop commitment and (y) if financing arranged by PJT Partners (and use of proceeds generated from such financing) is the only Restructuring undertaken, PJT Partners, in its sole discretion, may choose to be paid either the Capital Raising Fee or the Restructuring Fee, but not both;

(iii)    an additional fee (the "**Restructuring Fee**") equal to $8,000,000. Except as otherwise provided herein, a Restructuring shall be deemed to have been consummated upon (a) in the case of an out-of-court Restructuring, the closing of the Restructuring, including, to the extent applicable the binding execution and effectiveness of all necessary waivers, consents, amendments or restructuring agreements between the Company and its creditors involving (1) the compromise of the face amount of any of the Obligations, (2) the conversion of all or part of such Obligations into alternative securities, including equity, or (3) any other Restructuring; or (b) in the case of an in-court Restructuring, the consummation of a Chapter 11 plan or any other Restructuring pursuant to an order of the Bankruptcy Court or other applicable court.  The Restructuring Fee will be:

    (I)    earned on the earliest of:

        (w)    consummation of the Restructuring,

        (x)    in the event the Company attempts to implement the Restructuring in whole or in part by means of an exchange offer, then upon commencement of the exchange offer,

        (y)    in the event that the Company attempts to implement the Restructuring by means of a pre-negotiated Chapter 11 plan, the receipt of sufficient commitments, agreements or other expressions of intention to accept such plan that the Company elects to file a Chapter 11 case and therein represent to the Bankruptcy Court hearing such case that the Company will seek to confirm a plan based on the pre-negotiated plan, and

        (z)    in the event that the Company solicits acceptances for a prepackaged Chapter 11 plan to implement the Restructuring, then on the date established as the voting deadline for such acceptances or rejections, provided that at least one class of creditors impaired by such plan has accepted such plan, and

    (II)    payable, in immediately available funds, on the earliest of:

        (A)    consummation of the Restructuring,

        (B)    consummation of the exchange offer, and

        (C)    two years after the date on which any such Restructuring Fee is earned; and

(iv)    to the extent requested by PJT Partners and approved by the Company in its sole discretion, a discretionary fee in an amount to be determined by the Company in its sole discretion based upon the performance of PJT Partners during the engagement hereunder, earned and payable, in cash, on the same date as the Restructuring Fee is payable; and

(v)    reimbursement of all actual, reasonable and documented out-of-pocket expenses incurred in connection with PJT Partners' services under this Agreement on the Company's behalf during this engagement, including, but not limited to, travel and lodging, direct identifiable data processing, document production, publishing services and communication charges, courier services, working meals, reasonable and documented fees and out-of-pocket expenses of PJT Partners' counsel (without the requirement that the retention of such counsel be approved by the court in any bankruptcy case) and other necessary expenditures, payable upon rendition of invoices setting

**Core Scientific, Inc.**
November 14, 2022

> forth in reasonable detail the nature and amount of such expenses.  In connection therewith the
> Company shall pay PJT Partners on the Effective Date and maintain thereafter a $75,000 expense
> advance for which PJT Partners shall account upon termination of this Agreement.

For the avoidance of doubt, and notwithstanding anything to the contrary herein, PJT Partners shall not be entitled
to a Restructuring Fee solely in respect of the consummation of any of the Excepted Transactions listed on
Schedule IV hereto, it being acknowledged and agreed that if a transaction constituting a Restructuring (other than
an Excepted Transaction) is consummated in connection with and/or to facilitate one or more of the Excepted
Transactions listed on Schedule IV hereto, PJT Partners shall be entitled to be paid a Restructuring Fee.

Notwithstanding any provision to the contrary, it is understood and agreed that the Company alone, and not
Counsel, is and shall be responsible for the financial obligations set forth herein, including without limitation
paying for PJT Partners' services and reimbursing PJT Partners for fees or expenses, and in no event shall Counsel
be responsible for, have any liability for, or have any obligation for the payment of any amount owed by the
Company to PJT Partners in connection with this engagement, including, without limitation, any claims for any
fees, expenses, indemnification, contribution, or breach of contract.  Instead, the Company shall be and remain the
exclusive source of payment to PJT Partners in connection with the matters contemplated herein.

PJT Partners will direct all communications and notices regarding financial matters, including billing, to the
contacts designated by the Company on Schedule I (the "**Company Financial Matters Contacts**").  Please note that
any invoices in excess of $500,000 will be provided to the Company Financial Matters Contacts in an encrypted
form or other secure manner and subject to an authentication process.  Payments to PJT Partners shall be made
pursuant to the wire instructions set forth on Schedule II, and any changes to the PJT Partners' wire instructions
will be provided by the PJT Partners financial matters contacts, as set forth on Schedule I (the "**PJT Partners
Financial Matters Contacts**"), to the Company Financial Matters Contacts in an encrypted form or other secure
manner and subject to an authentication process.  Any notices and communications regarding financial matters,
including billing, from the Company shall be directed to one of the PJT Partners Financial Matters Contacts.

All amounts herein are stated in U.S. dollars and all payments under this Agreement shall be paid in immediately
available funds in U.S. dollars, free and clear of any tax, assessment or other governmental charge (with
appropriate gross-up for withholding taxes).  For the avoidance of doubt, nothing in the foregoing shall require the
Company to gross-up any such payments on account of income tax obligations of PJT Partners, if any.  If any
amount to be paid is computed in any foreign currency, the value of such foreign currency shall, for purposes
hereof, be converted in U.S. dollars at the prevailing exchange rate on the date such amount is paid.

In the event that the Company is or becomes a debtor under Chapter 11, the Company shall use its commercially
reasonable efforts to promptly apply to the bankruptcy court having jurisdiction over the Chapter 11 case or cases
(the "**Bankruptcy Court**") for the approval pursuant to sections 327 and 328 of the Bankruptcy Code of (A) this
Agreement, including the attached expense, indemnity and limitation of liability agreement attached hereto as
<u>Attachment A</u> (the "**Indemnity Agreement**") , and (B) PJT Partners' retention by the Company under the terms of
this Agreement and subject to the standard of review provided in section 328(a) of the Bankruptcy Code and not
subject to any other standard of review under section 330 of the Bankruptcy Code.  The Company shall supply PJT
Partners with a draft of such application and any proposed order authorizing PJT Partners' retention sufficiently in
advance of the filing of such application and proposed order to enable PJT Partners and its counsel to review and
comment thereon.

PJT Partners shall have no obligation to provide any services under this Agreement in the event that the Company
becomes a debtor under Chapter 11 unless PJT Partners' retention under the terms of this Agreement is approved
under section 328(a) of the Bankruptcy Code by a final order entered by the Bankruptcy Court that is no longer
subject to appeal, rehearing, reconsideration or petition for certiorari, and which order is acceptable to PJT
Partners in all material respects.

**Core Scientific, Inc.**
November 14, 2022

The Company will use its commercially reasonable efforts to ensure that PJT Partners' post-petition compensation, expense reimbursements and payment received or payable pursuant to the provisions of the Indemnity Agreement shall be entitled to priority as expenses of administration under sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code, and shall be entitled to the benefits of any "carve-outs" for professional fees and expenses in effect pursuant to one or more cash collateral and/or financing orders entered by the Bankruptcy Court, according to the terms of such orders.  Following entry of an order authorizing PJT Partners' retention, the Company will assist PJT Partners in preparing, filing and serving fee statements, interim fee applications, and a final fee application.  The Company will support PJT Partners' fee applications that are consistent with this Agreement in papers filed with the Bankruptcy Court and during any Bankruptcy Court hearing. The Company will pay promptly the fees and expenses of PJT Partners, in each case, which are both (i) owed pursuant to this Agreement and (ii) approved by the Bankruptcy Court in accordance with the applicable Bankruptcy Court order, the Bankruptcy Code, and the Bankruptcy Rules.

PJT Partners acknowledges that in the event that the Bankruptcy Court approves its retention by the Company, PJT Partners' fees and expenses shall be subject to the jurisdiction and approval of the Bankruptcy Court under section 328(a) of the Bankruptcy Code and any applicable fee and expense guideline orders; provided, however, that, to the extent time records are required, PJT Partners will keep them in one-half hour increments and, provided further, that PJT Partners shall not be required to maintain receipts for expenses in amounts less than $75.  In the event that the Company becomes a debtor under Chapter 11 and PJT Partners' engagement hereunder is approved by the Bankruptcy Court, the Company shall pay all fees and out-of-pocket expenses of PJT Partners hereunder as promptly as practicable in accordance with the terms hereof.  Prior to commencing a Chapter 11 case, the Company shall pay all invoiced amounts to PJT Partners in immediately available funds by wire transfer.

With respect to PJT Partners' retention under sections 327 and 328 of the Bankruptcy Code, the Company acknowledges and agrees that PJT Partners' restructuring expertise as well as its capital markets knowledge, financing skills and mergers and acquisitions capabilities, some or all of which may be required by the Company during the term of PJT Partners' engagement hereunder, were important factors in determining the amount of the various fees set forth herein, and that the ultimate benefit to the Company of PJT Partners' services hereunder could not be measured merely by reference to the number of hours to be expended by PJT Partners' professionals in the performance of such services.  The Company also acknowledges and agrees that the various fees set forth herein have been agreed upon by the parties in anticipation that a substantial commitment of professional time and effort will be required of PJT Partners and its professionals hereunder over the life of the engagement, and in light of the fact that such commitment may foreclose other opportunities for PJT Partners and that the actual time and commitment required of PJT Partners and its professionals to perform its services hereunder may vary substantially from week to week or month to month, creating "peak load" issues for the firm.  In addition, given the numerous issues which PJT Partners may be required to address in the performance of its services hereunder, PJT Partners' commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for PJT Partners' services for engagements of this nature in an out-of-court context, the Company agrees that the fee arrangements hereunder (including the Monthly Fee, Capital Raising Fee, and Restructuring Fee) are reasonable under the standards set forth in 11 U.S.C. Section 328(a).

The advisory services and compensation arrangement set forth in this Agreement do not encompass other investment banking services or transactions that may be undertaken by PJT Partners at the request of Counsel or the Company, including the arranging of debt or equity capital (except as provided above), providing mergers and acquisitions advice, issuing fairness opinions or any other specific services not set forth in this Agreement.  The terms and conditions of any such investment banking services, including compensation arrangements, would be set forth in a separate written agreement between PJT Partners and the appropriate party.

PJT Partners agrees that, for a period of two years from the date hereof, PJT Partners shall keep confidential, using means at least as restrictive as those used to protect its own information of similar import but it any event, no less than reasonable means, all material non-public information concerning the Company provided to it by or at the request of the Company in connection with PJT Partners' engagement hereunder (the "**Confidential Information**"),

**Core Scientific, Inc.**
November 14, 2022

except to the extent that such disclosure (a) has been consented to by the Company, (b) is required by law, rule, regulation, supervisory authority or other applicable judicial or governmental order or other judicial or legal process or (c) is reasonably necessary in connection with PJT Partners' engagement hereunder, including disclosures to those of PJT Partners' employees, affiliates, members, partners, agents, attorneys and other representatives (those that receive or review Information, collectively, "**Representatives**") who need to know such Confidential Information for the purpose of assisting PJT Partners with PJT Partners' engagement hereunder (and such Representatives are informed of the confidential nature of the Information and instructed by PJT Partners to comply with this paragraph). The Confidential Information shall not include Confidential Information that: (a) is or becomes generally available to the public (other than as a result of disclosure by PJT Partners or any of its Representatives in violation of this Agreement); (b) was available to PJT Partners or its Representatives on a non-confidential basis prior to its disclosure by or on behalf of the Company; (c) becomes available to PJT Partners or any of its Representatives from a person other than the Company or its Representatives who is not, to PJT Partners' knowledge or that of such Representative, bound by a duty of confidentiality to the Company with respect to such Confidential Information; or (d) is independently developed by or on behalf of PJT Partners without violating any of PJT Partners' obligations hereunder. For the avoidance of doubt, PJT Partners may provide nonpublic Information (as defined below) to prospective transaction parties as contemplated by this Agreement, subject to such parties executing appropriate confidentiality agreements with the Company.

The Company will furnish or cause to be furnished to PJT Partners such information as PJT Partners reasonably requests and believes appropriate to its assignment (all such information so furnished being the "**Information**"). The Company further agrees that it will provide PJT Partners with reasonable access to the Company and its directors, officers, employees, accountants, counsel and other advisers. To the best of the Company's knowledge, the Information will be true and correct in all material respects and will not contain any material misstatement of fact or omit to state any material fact necessary to make the statements contained therein not materially misleading in light of the circumstances under which such statements were made. During the term of the engagement, the Company shall inform PJT Partners promptly upon becoming aware of any material developments relating to the Company which the Company reasonably expects may impact on the proposed Restructuring and/or Capital Raise or if the Company becomes aware that any Information provided to PJT Partners is, or has become, untrue, unfair, inaccurate or misleading in any way. Furthermore, the Company warrants and undertakes to PJT Partners that, in respect of all Information supplied by the Company, the Company has not obtained any such Information other than by lawful means and that disclosure to PJT Partners will not breach any agreement or duty of confidentiality owed to third parties. The Company recognizes and confirms that PJT Partners (a) will use and rely primarily on the Information and on information available from generally recognized public sources in performing the services contemplated by this Agreement without having independently verified the same, (b) does not assume responsibility for the accuracy or completeness of the Information and such other information, (c) is entitled to rely upon the Information without independent verification, and (d) will not make an appraisal of any assets in connection with its assignment.

In the event that the Information belonging to the Company is stored electronically on PJT Partners' computer systems, PJT Partners shall not be liable for any damages resulting from unauthorized access, misuse or alteration of such information by persons not acting on its behalf, provided that PJT Partners exercises the same degree of care in protecting the confidentiality of, and in preventing unauthorized access to, the Company's information that it exercises with regard to its own most sensitive proprietary information, which shall be consistent in all respects with industry standards providing investment banking services to similar clientele under similar circumstances.

PJT Partners acknowledges and agrees that the work product produced by PJT Partners pursuant to this Agreement is for the purpose of facilitating the rendering by Counsel of legal advice to the Company and constitutes attorney work product, and that any communication to Counsel, including, without limitation, any correspondence, analyses, reports and related materials that PJT Partners prepares, constitutes confidential and privileged communications and PJT Partners will not disclose the same or any of the Information to any other person except as requested by Counsel.

**Core Scientific, Inc.**
November 14, 2022

Except as required by applicable law, any advice to be provided by PJT Partners under this Agreement shall not be disclosed publicly or made available to third parties (other than the Company's other professional advisors or, if appropriate in the Company's judgment, in any filings in a Chapter 11 proceeding) without the prior written consent of PJT Partners, such consent not to be unreasonably withheld.  In the event disclosure is required by subpoena or court order, the Company will provide PJT Partners with reasonable advance notice and permit PJT Partners to comments on the form and content of the disclosure.  All services, advice and information and reports provided by PJT Partners to the Company or Counsel in connection with this assignment shall be for the sole benefit of Core Scientific and Counsel and shall not be relied upon by any other person.

The Company acknowledges and agrees that PJT Partners will provide its investment banking services exclusively to Counsel on behalf of the members of the Board and senior management of the Company and not to the Company's shareholders or other constituencies. The Board and senior management will make all decisions for the Company regarding whether and how the Company will pursue a Restructuring and/or Capital Raise and on what terms and by what process.  In so doing, the Board and senior management will also obtain the advice of the Company's legal, tax and other business advisors and consider such other factors which they consider appropriate before exercising their independent business judgment in respect of a Restructuring and/or Capital Raise.  The Company and Counsel further acknowledge and agree that PJT Partners has been retained to act solely as investment banker to Counsel on behalf of the Company and does not in such capacity act as a fiduciary or agent for the Company or any other person.  PJT Partners shall act as an independent contractor and any duties of PJT Partners arising out of its engagement pursuant to this Agreement shall be owed solely to the Company. Following the public announcement of a Restructuring and/or Capital Raise, PJT Partners may, at its own expense, place tombstones on its marketing materials, including its website, describing PJT Partners' services hereunder and the Company agrees that PJT Partners may use the Company's logo in any such tombstones.  In any press release or other public announcement made by the Company regarding a Restructuring and/or Capital Raise that references the services hereunder, the Company shall include a mutually acceptable reference to PJT Partners LP unless otherwise directed by PJT Partners.

In consideration of PJT Partners' agreement to provide investment banking services to Counsel in connection with this Agreement, it is agreed that the Company will indemnify PJT Partners and its agents, representatives, members and employees pursuant to the Indemnity Agreement.  The Indemnity Agreement is an integral part of this Agreement and the terms thereof are incorporated by reference herein.  For the avoidance of doubt, PJT Partners and the Company expressly acknowledge that Counsel has no obligation to indemnify PJT Partners.

PJT Partners' engagement hereunder shall be deemed to have commenced on the Effective Date and will continue until the earlier of consummation of a (i) Restructuring or (ii) thirty (30) days after either Counsel or PJT Partners have notified the other party in writing of the termination of this Agreement; provided that, if either party terminates this Agreement for cause, such termination will be effective immediately upon receipt of such written notice. Notwithstanding the foregoing, (a) the provisions relating to the payment of fees and expenses accrued through the date of termination, the status of PJT Partners as an independent contractor, the limitation as to whom PJT Partners shall owe any duties, and any other provision of this Agreement that, by its terms, survives termination, will survive any such termination, (b) any such termination shall not affect the Company's obligations under the Indemnity Agreement or PJT Partners' confidentiality obligations hereunder. Without limiting the foregoing, PJT Partners shall be entitled to the Restructuring Fee and/or Capital Raise Fee, as applicable, in the event that, at any time prior to the expiration of 18 months following the written termination of this Agreement (the "Tail Fee") either (i) a Restructuring and/or Capital Raise, as applicable, is consummated or (ii) a definitive agreement with respect to a Restructuring and/or Capital Raise, respectively, is executed and any Restructuring and/or Capital Raise, respectively, is thereafter consummated.   Notwithstanding anything in this Agreement to the contrary, PJT Partners shall not be entitled to receive the Tail Fee if PJT Partners' engagement hereunder is terminated by the Company for Cause.  As used in the prior sentence, the term "Cause" shall mean a final judicial determination of the fraud, gross negligence, bad faith or willful misconduct of PJT Partners in performing the services that are the subject of this Agreement.

Core Scientific, Inc.
November 14, 2022

The Company represents that neither it nor any of its affiliates under common control, nor, to the knowledge of the Company, any of their respective directors or officers, is an individual or entity ("**Person**") that is, or is owned or controlled by a Person that is: (i) a Person with whom dealings are prohibited or restricted under U.S. economic sanctions (including those administered or enforced by the U.S. Department of Treasury's Office of Foreign Assets Control and the U.S. Department of State) or under sanctions imposed by the United Nations Security Council, Canada, the European Union, or member countries of the European Union; (ii) a Person that is the subject to anti-money laundering prohibitions, restrictions, or sanctions specifically imposed on such Person by the United States, Canada, the European Union, member countries of the European Union, or any other relevant jurisdiction; or (iii) to the knowledge of the Company, not in compliance in all material respects with all applicable anti-money laundering laws and Sanctions laws.

The Company should be aware that PJT Partners and/or its affiliates may be providing or may in the future provide financial or other services to other parties with conflicting interests.  Consistent with PJT Partners' policy to hold in confidence the affairs of its clients, PJT Partners will not use confidential information obtained from the Company except in connection with PJT Partners' services to, and PJT Partners' relationship with, the Company, nor will PJT Partners use on the Company's behalf or have any obligation to disclose or otherwise have any liability with respect to any confidential information obtained from any other client.  Notwithstanding anything to the contrary provided elsewhere herein, the Company expressly acknowledges and agrees that none of the provisions of this Agreement shall in any way restrict PJT Partners from being engaged or mandated by any third party, or otherwise participating or assisting with any transaction involving any other party, other than a transaction that is the subject of this Agreement prior to the termination of this Agreement.

Core Scientific hereby represents and warrants that (a) it is duly authorized to execute and deliver this Agreement for and on behalf of each of its subsidiaries listed on Schedule III hereto and (b) the execution and delivery of this Agreement and the performance of the obligations of Core Scientific and each of its subsidiaries listed on Schedule III hereto under this Agreement has been duly authorized and this Agreement constitutes a valid and legal agreement binding on each such party and enforceable in accordance with its terms.

This Agreement (including the Indemnity Agreement) embodies the entire agreement and understanding between the parties hereto and supersedes all prior agreements and understandings relating to the subject matter hereof. If any provision of this Agreement is determined to be invalid or unenforceable in any respect, such determination will not affect or impair such provision or the remaining provisions of this Agreement in any other respect, which will remain in full force and effect.  No waiver, amendment or other modification of this Agreement shall be effective unless in writing and signed by each party to be bound thereby. This Agreement and any dispute or claim that may arise out of this Agreement shall be governed by, and construed in accordance with, the laws of the State of New York applicable to contracts executed in and to be performed in that state.

Each of the Company and Counsel hereby agrees that any action or proceeding brought by the Company and/or Counsel against PJT Partners based hereon or arising out of PJT Partners' engagement hereunder, shall be brought and maintained by the Company and/or Counsel exclusively in the courts of the State of New York located in the City and County of New York or in the United States District Court for the Southern District of New York; provided, if the Company commences a Chapter 11 case, all legal proceedings pertaining to this engagement arising after such case is commenced may be brought in the Bankruptcy Court handling such case.  Each of the Company and Counsel irrevocably submits to the jurisdiction of the courts of the State of New York located in the City and County of New York and the United States District Court for the Southern District of New York and appellate courts from any thereof for the purpose of any action or proceeding based hereon or arising out of PJT Partners' engagement hereunder and irrevocably agrees to be bound by any judgment rendered thereby in connection with such action or proceedings.  Each of the Company and Counsel hereby irrevocably waives, to the fullest extent permitted by law, any objection it may have or hereafter may have to the laying of venue of any such action or proceeding brought in any such court referred to above and any claim that such action or proceeding has been brought in an inconvenient forum and agrees not to plead or claim the same.

**Core Scientific, Inc.**
November 14, 2022

**Notices**.  Any notices required or permitted to be given hereunder by either party hereto to the other will be given in writing (i) by personal delivery, email or facsimile transmission, (ii) by nationally-recognized overnight delivery company or (iii) by prepaid first class, registered or certified mail, postage prepaid, in each case addressed to the other party hereto as set forth on Schedule I (or to such other address as the other party hereto may request in writing by notice given pursuant to this section). Notices will be deemed received on the earliest of: (a) if personally delivered, emailed or sent via facsimile, the same day; (b) if sent by overnight delivery company, on the second working day after the day it was sent; or (c) if sent by mail, when actually received.

This Agreement may be executed, including by electronic signature, in one or more counterparts, each of which will be deemed an original and all of which together will constitute one and the same instrument.  A facsimile of a signed copy of this Agreement or other copy made by reliable mechanical means or an electronic signature may be relied upon as an original.

[SIGNATURE PAGE FOLLOWS]

Please confirm that the foregoing correctly sets forth our agreement by signing and returning to PJT Partners the duplicate copy of this Agreement and the Indemnity Agreement.

Very truly yours,

PJT PARTNERS LP

By: _____

Name: JOHN P. SINGH
Title: Partner

Accepted and Agreed to as
of the date first written above:

Core Scientific, Inc.
(on behalf of itself and its subsidiaries listed on Schedule III hereto)

By: _____

DocuSigned by:

*Todd DuChene*

4304BBB7D88C4EE

Name:   Todd DuChene
Title:   President

Weil, Gotshal & Manges LLP

By: _____

Name:
Title:

Please confirm that the foregoing correctly sets forth our agreement by signing and returning to PJT Partners the duplicate copy of this Agreement and the Indemnity Agreement.

Very truly yours,

PJT PARTNERS LP

By: _____
Name:
Title:  Partner

Accepted and Agreed to as
of the date first written above:

Core Scientific, Inc.
(on behalf of itself and its subsidiaries listed on Schedule III hereto)

By: _____
Name:   Todd DuChene
Title:   President

Weil, Gotshal & Manges LLP

By: _____
Name:   Ray C. Schrock, P.C.
Title:   Partner

Rev. 09.07.2016

**Core Scientific, Inc.**
November 14, 2022

ATTACHMENT A

November 14, 2022

PJT Partners LP
280 Park Avenue
New York, NY  10017

EXPENSE, INDEMNITY AND LIMITATION OF LIABILITY AGREEMENT

Ladies and Gentlemen:

This letter will confirm that PJT Partners LP ("**PJT Partners**") has been engaged by Weil, Gotshal & Manges LLP ("**Counsel**") as counsel to Core Scientific, Inc. (together with its affiliates and subsidiaries, the "**Company**") in connection with the matters referred to in the letter of agreement, dated as of November 14, 2022, by and between PJT Partners and Counsel (the "**Engagement Letter**).  In connection with the engagement of PJT Partners to advise and assist Counsel on behalf of the Company as described in the attached Engagement Letter (the "**Engagement**"), in the event that PJT Partners becomes involved in any capacity in any claim, suit, action, proceeding, investigation or inquiry (including, without limitation, any shareholder or derivative action or arbitration proceeding) (collectively, a "**Proceeding**") in connection with any matter in any way relating to or referred to in the Engagement Letter or arising out of the matters contemplated by the Engagement Letter, including, without limitation, related services and activities prior to the date of the Engagement Letter, the Company agrees to indemnify, defend and hold PJT Partners and its affiliates, and their respective current and former directors, officers, agents, employees, attorneys and other representatives and the successors and assigns of all of the foregoing persons (each a "**PJT Party**") harmless to the fullest extent permitted by law, from and against any losses, claims, damages, fines, penalties, liabilities and expenses ("**Losses**"), whether they be joint or several, in connection with any matter in any way relating to or referred to in the Engagement Letter or arising out of the matters contemplated by the Engagement Letter, including, without limitation, related services and activities prior to the date of the Engagement Letter, except to the extent that it shall be determined by a court of competent jurisdiction in a judgment that has become final in that it is no longer subject to appeal or other review that such Losses resulted solely from the fraud, gross negligence, bad faith, or willful misconduct of such PJT Party. In the event that any PJT Party becomes involved in any capacity in any Proceeding (regardless of whether or not such or any PJT Party is a party to or the subject of such Proceeding) in connection with any matter in any way relating to or referred to in the Engagement Letter or arising out of the matters contemplated by the Engagement Letter (including, without limitation, in enforcing the Engagement Letter), the Company will reimburse such PJT Party for its legal and other expenses (including the cost of any investigation and preparation) as such expenses are incurred by such PJT Party in connection therewith.  The Company also agrees to cooperate with any PJT Party and to give, and so far as it is able to procure the giving of, all such information and render all such assistance to such PJT Party as such PJT Party may reasonably request in connection with any Proceeding and not to take any action which might reasonably be expected to prejudice the position of any PJT Party in relation to any Proceeding without the consent of PJT Partners (such consent not to be unreasonably withheld).  In the event that any PJT Party is requested or authorized by the Company or required by government regulation, subpoena or other legal process to produce documents, or to make its current or former personnel available as witnesses at deposition or trial, arising as a result of or in connection with the matters referred to in the Engagement Letter, the Company

Core Scientific, Inc.
November 14, 2022

will pay PJT Partners the reasonable and documented fees and out-of-pocket expenses of its counsel incurred in responding to such a request.

If such indemnification is for any reason not available or insufficient to hold an PJT Party harmless, the Company agrees to contribute to the Losses involved in the proportion appropriate to reflect the relative benefits received or sought to be received by the Company and its security holders and affiliates and other constituencies, on the one hand, and the PJT Party, on the other hand, in connection with the matters contemplated by the Engagement Letter, or, if such allocation is determined by a court or arbitral tribunal to be unavailable, in such proportion as is appropriate to reflect other equitable considerations such as the relative fault of the Company or its security holders and affiliates or other constituencies, on the one hand, and of the PJT Parties, on the other hand; provided, however, that, to the extent permitted by applicable law, the PJT Parties shall not be responsible for amounts which in the aggregate are in excess of the amount of all fees actually received by PJT Partners from the Company pursuant to the Engagement Letter.  The Company agrees that for the purposes of this paragraph the relative benefits received, or sought to be received, by the Company and its security holders and affiliates and other constituencies, on the one hand, and the PJT Party, on the other hand, in connection with the matters contemplated by the Engagement Letter shall be deemed to be in the same proportion that the total value received or paid or contemplated to be received or paid by the Company or its security holders or affiliates and other constituencies, as the case may be, as a result of or in connection with the matters (whether or not consummated) for which PJT Partners has been retained to perform financial services bears to the fees paid to PJT Partners under the Engagement Letter; provided, however, to the extent permitted by applicable law, the PJT Parties, taken together, shall not be liable for Losses which in the aggregate are in excess of the amount of fees actually received by PJT Partners from the Company pursuant to the Engagement Letter (exclusive of amounts paid for reimbursement of expenses under the Engagement Letter).

The Company agrees that no PJT Party shall have any liability to the Company or any person asserting claims on behalf of or in right of the Company in connection with any matter in any way relating to or referred to in the Engagement Letter or arising out of the matters contemplated by the Engagement Letter, including, without limitation, related services and activities prior to the date of the Engagement Letter, except to the extent that it shall be determined by a court of competent jurisdiction in a judgment that has become final in that it is no longer subject to appeal or other review that any Losses incurred by the Company resulted solely from the fraud, gross negligence, bad faith, or willful misconduct of PJT Partners (other than with respect to actions taken at the direction or request of the Company) or any of its affiliates.

If any Proceeding shall be brought, threatened or asserted against an PJT Party in respect of which indemnity or contribution may be sought against the Company, PJT Partners shall promptly notify the Company in writing; provided that failure to so notify the Company shall not relieve the Company from any liability which the Company may have on account of this indemnity or otherwise, except to the extent the Company shall have been actually materially prejudiced by such failure.  The Company, upon the written request of such PJT Party, shall or, upon written notice to such PJT Party, may elect to, assume the defense of such Proceeding, at the Company's own expense, with counsel reasonably satisfactory to such PJT Party.  Such PJT Party shall have the right to employ separate counsel in any such Proceeding and to participate in the defense thereof, but the fees and expenses of such counsel shall be at the expense of such PJT Party unless (a) the Company has agreed in writing to pay such fees and expenses, (b) the Company has failed to assume the defense, pursue the defense reasonably diligently or to employ counsel in a timely manner, (c) outside counsel to such PJT Party has advised such PJT Party that in such Proceeding there is an actual or potential conflict of interest or a conflict on any material issue between the Company's position and the position of such PJT Party or (d) the named parties to any such Proceeding (including any impleaded parties) include such PJT Party and the Company, and outside counsel to such PJT Party has advised such PJT Party that there may be one or more legal defenses available to such PJT Party which are different from or in addition to those available to the Company.

**Core Scientific, Inc.**
November 14, 2022

The Company agrees that, without PJT Partners' prior written consent (which shall not be unreasonably withheld, conditioned or delayed), it will not settle, compromise or consent to the entry of any judgment in any pending or threatened Proceeding in respect of which indemnification or contribution may be sought hereunder (whether or not an PJT Party is an actual or potential party to such Proceeding), or otherwise directly or indirectly facilitate or participate in any such settlement, compromise or consent by any director, officer or affiliate of the Company, unless such settlement, compromise or consent (a) includes an explicit and unconditional release from the settling, compromising or consenting party of each PJT Party from all liability arising out of such Proceeding and (b) does not contain any factual or legal admission by or with respect to any PJT Party or any adverse statement with respect to the character, professionalism, due care, loyalty, expertise or reputation of any PJT Party or any action or inaction by each PJT Party. No PJT Party seeking indemnification, reimbursement or contribution under this letter agreement will, without the Company's prior written consent (which shall not be unreasonably withheld, conditioned or delayed), settle, compromise, consent to the entry of any judgment or otherwise seek to terminate any action, claim, suit, investigation or proceeding in respect of which indemnification, reimbursement or contribution may be sought.

The Company's reimbursement, indemnification and contribution obligations under this letter agreement shall be in addition to any liability which the Company may otherwise have at law or in equity, shall not be limited by any rights PJT Partners or any other PJT Party may otherwise have and shall be binding upon and inure to the benefit of any successors, assigns, heirs and personal representatives of the Company, PJT Partners and any other PJT Party.

For the avoidance of doubt, PJT Partners and the Company expressly acknowledge and agree that Counsel has no obligations under this letter agreement.

Prior to entering into any agreement or arrangement with respect to any proposed out-of-court transaction involving the sale of all or substantially all of the assets of the Company that does not directly or indirectly provide for assumption of the obligations of the Company set forth in this letter agreement, the Company will notify PJT Partners in writing thereof (if not previously notified) and, if requested by PJT Partners, shall arrange in connection therewith a reasonable alternative means of providing for the obligations of the Company set forth in this letter agreement, which could include the assumption of such obligations by another creditworthy party, insurance, surety bonds or the creation of an escrow, in each case in an amount and upon such terms and conditions as are reasonably satisfactory to PJT Partners.

This agreement (together with the Engagement Letter) embodies the entire agreement and understanding between the parties hereto and supersedes all prior agreements and understandings relating to the subject matter hereof. If any provision of this agreement is determined to be invalid or unenforceable in any respect, such determination will not affect or impair such provision or the remaining provisions of this agreement in any other respect, which will remain in full force and effect. No waiver, amendment or other modification of this letter agreement shall be effective unless in writing and signed by each party to be bound thereby.

The Company hereby agrees that any action or proceeding brought by the Company against PJT Partners based hereon or arising out of PJT Partners' engagement hereunder, shall be brought and maintained by the Company exclusively in the courts of the State of New York located in the City and County of New York or in the United States District Court for the Southern District of New York; provided, if the Company commences a Chapter 11 case, all legal proceedings pertaining to this engagement arising after such case is commenced may be brought in the Bankruptcy Court handling such case. The Company irrevocably submits to the jurisdiction of the courts of the State of New York located in the City and County of New York and the United States District Court for the Southern District of New York and appellate courts from any thereof for the purpose of any action or proceeding based hereon or arising out of PJT Partners' engagement hereunder and irrevocably agrees to be bound by any judgment rendered thereby in connection with such action or proceedings. The Company hereby irrevocably waives, to the fullest extent permitted by law, any objection it may have or hereafter may have to the laying of venue of any such action or proceeding brought in any such court referred to above and any claim that such action or proceeding has been brought in an inconvenient forum and agrees not to plead or claim the same.

**Core Scientific, Inc.**
November 14, 2022

This agreement may be executed, including by electronic signature, in one or more counterparts, each of which will be deemed an original and all of which together will constitute one and the same instrument.  A facsimile of a signed copy of this agreement or other copy made by reliable mechanical means or an electronic signature may be relied upon as an original.

[SIGNATURE PAGE FOLLOWS]

**Core Scientific, Inc.**
November 14, 2022

The provisions of this agreement shall apply to the Engagement, as well as any additional engagement of PJT Partners by us in connection with the matters which are the subject of the Engagement, and any modification of the Engagement or additional engagement and shall remain in full force and effect regardless of any termination or the completion of your services under the Engagement Letter.

Core Scientific, Inc. hereby represents and warrants that (a) it is duly authorized to execute and deliver this agreement for and on behalf of each of its subsidiaries listed on Schedule III to the Engagement Letter and (b) the execution and delivery of this agreement and the performance of the obligations of Core Scientific, Inc. and each of its subsidiaries listed on Schedule III to the Engagement Letter under this agreement has been duly authorized and this agreement constitutes a valid and legal agreement binding on each such party and enforceable in accordance with its terms.

This agreement and the Engagement Letter shall be governed by, and construed in accordance with, the laws of the State of New York applicable to contracts executed in and to be performed in that state.

Very truly yours,

Core Scientific, Inc.
(on behalf of itself and its subsidiaries listed on Schedule III to the Engagement Letter)

By: _Todd DuChene_

Name:   Todd DuChene
Title:   President

Accepted and Agreed to as
of the date first written above:

PJT PARTNERS LP

By: _____

Name:   JOHN P. SINGH
Title:   Partner

**Core Scientific, Inc.**
November 14, 2022

# Schedule I

**Notices**

Financial Matters Contacts:  All communications and notices related to financial matters, including billing, shall be addressed to the following:

If to PJT Partners:

        PJT Partners LP
        280 Park Avenue
        New York, NY 10017

        Attention to either:
- Helen Meates, Chief Financial Officer; htm@pjtpartners.com; 212.364.7807
- Yun Rim, Senior Vice President of Finance; rim@pjtpartners.com; 212.364.7131

If to the Company:

        Core Scientific, Inc.
        210 Barton Springs Road
        Suite 300
        Austin, Texas 78704
        Attention:
- Todd DuChene; General Counsel; tduchene@corescientific.com; 408.464.3421
- Michael Bros, Senior Vice President; Capital Markets & Acquisitions; mbros@corescientific.com; 612.940.4442

All other notices shall be addressed to the following:

If to PJT Partners:

        PJT Partners LP
        280 Park Avenue
        New York, NY 10017
        Attention:
- David Travin, General Counsel; travin@pjtpartners.com; 212.364.5003

If to the Company:

        Core Scientific, Inc.
        210 Barton Springs Road
        Suite 300
        Austin, Texas 78704
        Attention:
- Todd DuChene; General Counsel; tduchene@corescientific.com; 408.464.3421

**Core Scientific, Inc.**
November 14, 2022

# Schedule II

### Wire Instructions

| | |
|---|---|
| Bank Name: | First Republic Bank |
| | 1230 Avenue of the Americas |
| | New York, NY 10020 |
| | |
| Bank Routing Number: (ABA) | 321 081 669 |
| | |
| For the benefit of: (Account Name/Title) | PJT Partners LP |
| | |
| Account Number: | 80008146369 |
| | |
| Swift Code: | FRBBUS6S |

**Core Scientific, Inc.**
November 14, 2022

# Schedule III

**Subsidiaries**

Core Scientific Operating Company
Core Scientific Acquired Mining LLC
Radar Relay, Inc.
Core Scientific Specialty Mining (Oklahoma) LLC
American Property Acquisitions, LLC
Starboard Capital LLC
RADAR, LLC
American Property Acquisitions I, LLC
American Property Acquisitions VII, LLC

**Core Scientific, Inc.**
November 14, 2022

# Schedule IV

**Excepted Transactions**

1. Any financing or refinancing secured solely by equipment provided by Bitmain Technologies Limited, Bitmaintech Pte. Ltd., or any of their affiliates (collectively, "Bitmain"), or any financing provided by Bitmain that is secured by equipment not provided by Bitmain.

2. Any sale / leaseback transaction related to any equipment, mining equipment, or other real property owned by, or in possession of, the Company as of the date hereof.