IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | § § § | Chapter 11 |
| CORE SCIENTIFIC, INC., *et al.*, | § § | Case No. 22-90341 (DRJ) |
| | § § | (Jointly Administered) |
| Debtors.[1] | § | |

**EMERGENCY MOTION OF DEBTORS FOR ENTRY OF AN
ORDER (I) AUTHORIZING THE SALE OF BITMAIN COUPONS,
FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS, AND
ENCUMBRANCES AND (II) GRANTING RELATED RELIEF**

EMERGENCY RELIEF HAS BEEN REQUESTED. RELIEF IS REQUESTED NOT LATER THAN 11:30 A.M. (CENTRAL PREVAILING TIME) ON WEDNESDAY, FEBRUARY 1, 2023.

IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST APPEAR AT THE HEARING IF ONE IS SET, OR FILE A WRITTEN RESPONSE PRIOR TO THE DATE THAT RELIEF IS REQUESTED IN THE PRECEDING PARAGRAPH. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.

A HEARING WILL BE CONDUCTED ON THIS MATTER ON WEDNESDAY, FEBRUARY 1, 2023 AT 11:30 A.M. (CENTRAL PREVAILING TIME) IN COURTROOM 400, 4TH FLOOR, 515 RUSK AVENUE, HOUSTON, TX 77002.

YOU MAY PARTICIPATE IN THE HEARING EITHER IN PERSON OR BY AN AUDIO AND VIDEO CONNECTION.

AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S DIAL-IN FACILITY.  YOU MAY ACCESS THE FACILITY AT 832-917-1510.  ONCE CONNECTED, YOU WILL BE ASKED TO ENTER THE CONFERENCE ROOM NUMBER.  JUDGE JONES' CONFERENCE ROOM NUMBER IS 205691. VIDEO COMMUNICATION WILL BE BY USE OF THE GOTOMEETING PLATFORM. CONNECT VIA THE FREE GOTOMEETING APPLICATION OR CLICK THE LINK

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (N/A); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions, VII, LLC (3198).  The Debtors' corporate headquarters and service address is 210 Barton Springs Road, Suite 300, Austin, Texas 78704.

> ON JUDGE JONES' HOME PAGE. THE MEETING CODE IS "JUDGEJONES".
> CLICK THE SETTINGS ICON IN THE UPPER RIGHT CORNER AND ENTER YOUR
> NAME UNDER THE PERSONAL INFORMATION SETTING.
>
> HEARING APPEARANCES MUST BE MADE ELECTRONICALLY IN ADVANCE OF
> BOTH ELECTRONIC AND IN-PERSON HEARINGS.   TO MAKE YOUR
> APPEARANCE, CLICK THE "ELECTRONIC APPEARANCE" LINK ON JUDGE
> JONES' HOME PAGE.  SELECT THE CASE NAME, COMPLETE THE REQUIRED
> FIELDS AND CLICK "SUBMIT" TO COMPLETE YOUR APPEARANCE.

Core Scientific, Inc. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), respectfully represent as follows in support of this motion (the "**Motion**"):

**Preliminary Statement**

1.    A significant part of the Debtors' revenue generation involves the mining of digital assets for their own account ("**Self-Mining**").  To conduct Self-Mining, the Debtors primarily purchase specialized machines ("**Miners**") that mine digital assets, specifically bitcoin, from original mining equipment manufacturers.

2.    Prior to December 21, 2022 (the "**Petition Date**"), the Debtors acquired a number of Miners from Bitmain Technologies Ltd. ("**Bitmain**") in the ordinary course of business. In connection with these purchases, Bitmain provided coupons to the Debtors that could be applied against the purchase price for future acquisitions of new S19 Miners from Bitmain (the "**Bitmain Coupons**").  These Bitmain Coupons are valid for a limited time from the date of issuance and are scheduled to expire between March 22, 2023 and April 23, 2023.

3.    In addition to being limited in duration, the Bitmain Coupons are limited in application to a portion of the S19 Miner unit purchase price and to S19 Miner models with a lower "hash rate" output than Bitmain's most recent models.[2]  Given these limitation, and the availability

---

[2] "Hash rates" refers to the number of times per second that computers on the bitcoin network are hashing data to verify transactions and perform the encryption that secures the network.  The hash rate is an indicator of how

of higher hash rate performing units on the secondary market, the Debtors do not anticipate acquiring eligible S19 Miners from Bitmain prior to the expiration of the Bitmain Coupons.  As such, the Debtors have no use for the Bitcoin Coupons and seek to lawfully transfer them to third parties with a need for the Bitmain Coupons for cash consideration to bring value into their estates.

4.     The Debtors have been in discussions with Bitmain and two potential third-parties that may be interested in acquiring the Bitmain Coupons from the Debtors, albeit at a significant discount.  Because the Debtors have no use for new S19 Miners and the Bitmain Coupons are due to expire by the end of April 2023, the Debtors submit that, in the exercise of their business judgment, the sale of these Bitmain Coupons, even at a significant discount, is in the best interest of their estates and this Motion should be granted.

## Background

5.     On the Petition Date, the Debtors each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 1015-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Local Rules**").  On January 9, 2023, the U.S. Trustee appointed the Creditors' Committee in these chapter 11 cases pursuant to section 1102 of the Bankruptcy Code.  No trustee or examiner has been appointed in these chapter 11 cases.

---

healthy the Bitcoin network is at any given time, and is driven primarily by difficulty mining and the number of miners.

6.     Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Michael Bros in Support of Debtors' Chapter 11 Petitions and First Day Motions*, sworn to on December 21, 2022 (Docket No. 5) (the "**First Day Declaration**").[3]

### Jurisdiction

7.     The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Relief Requested

8.     By this Motion, pursuant to sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 9014, the Debtors seek entry of an Order substantially in the form of **Exhibit A** attached hereto (the "**Proposed Order**") (i) authorizing, but not directing, the Debtors to sell the Bitmain Coupons, in whole or in part, free and clear of all liens, claims and interests, and encumbrances, and (ii) granting related relief.

### The Bitmain Coupons

9.     Prior to the Petition Date, the Debtors received Bitmain Coupons from Bitmain in connection with the Debtors' acquisition of Miners.  As of the date hereof, the Debtors own Bitmain Coupons with an aggregate face value of approximately $6.7 million, which are scheduled to expire as follows:

| Bitmain Coupon | Face Value | Expiration Date |
|---|---|---|
| Batch 1 | $6,639,882 | March 22, 2023 |
| Batch 2 | $10,931 | April 23, 2023 |

---

[3]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the First Day Declaration.

4

| Bitmain Coupon | Face Value | Expiration Date |
|---|---|---|
| Total | $6,650,813 | |

10.    The Bitmain Coupons are subject to certain conditions that make the Bitmain Coupons essentially worthless to the Debtors:

a)    **Limited to 30% of Purchase Price**.  The Bitmain Coupons can only be used to pay 30% of any new order of S19 Miners from Bitmain and cannot be exchanged with Bitmain for cash.  The Debtors do not believe that utilizing their liquidity to purchase new S19 Miners, even with the availability of the Bitmain Coupons, is the best use of the Debtors' cash.

b)    **S19s Only**: The Bitmain Coupons are limited in application to S19 models with a lower "hash rate" output than Bitmain's most recent models.  The Debtors have no intention of acquiring additional qualifying S19 Miners from Bitmain during the pendency of these chapter 11 cases or following emergence.

c)    **Upcoming Expiration**:  The Bitmain Coupons are due to expire over the next three (3) months, before the Debtors anticipate they will emerge from these chapter 11 cases.

11.    Typically, purchases of Miners are paid in installments over several months, with the initial installment paid many months in advance of expected manufacture and delivery of the Miners and delivery of the Miners occurring upon the payment of the final installment.  As a consequence, purchasers of Miners that have made all but the final installment but fully intend to complete the purchase of Miners frequently look for coupons such as the Bitmain Coupons to offset or eliminate amounts due on their final mining purchase payments.  As a result, the universe

of potential purchasers of the Bitmain Coupons is limited to parties that have already placed orders for S19 Miners with Bitmain and have final installment payments due prior to the expiration of the Bitmain Coupons.  Because of the limited number of potential purchasers of the Bitmain Coupons, if the Debtors are able to find interested purchasers, they must be in a position to act quickly to sell the Bitmain Coupons.

12.     While the Bitmain Coupons have no use or value to the Debtors, they may have value in the hands of other parties seeking to acquire S19 Miners.  Indeed, similar coupons are often marketed and sold through the "Coupon Exchange" group on Telegram[4] or coupon brokers.  Bitmain permits the assignment of its coupons.  To effectuate the sale and assignment of coupons, the seller notifies Bitmain that it has sold or transferred Bitmain coupons and Bitmain moves the coupon from the seller's account to the buyer's account.

13.     Due to current market conditions, a plethora of S19 Miners are available for sale on the secondary market, depressing prices for both used and new S19 Miners, increasing the supply of coupon holders seeking to sell coupons, and reducing the demand for Miner coupons.  As such, recent transactions for S19 Miner coupons on the Coupon Exchange have occurred at values of between 15% and 25% of the coupon's face value.

14.     The combination of a limited universe of potential purchasers of Bitmain Coupons and an increase in the supply of Miner coupons available means that the Debtors must have the authority to quickly agree and sell Bitmain Coupons when a suitable purchaser arises.

15.     The Debtors are currently in discussions with several potential purchasers to sell the Bitmain Coupons.  Specifically, the Debtors are in discussions to sell (a) $1.9 million

---

[4]     Telegram Messenger is a globally accessible free, cross-platform, encrypted, cloud-based and centralized instant messaging service.

of Bitmain Coupons expiring in March and April 2023 for $285,000 (representing 15% of the face value of such Bitmain Coupons), and (b) $4.8 million of Bitmain Coupons expiring in March 2023 for approximately $713,000 (representing 15% of the face value of such Bitmain Coupons), resulting in aggregate proceeds of nearly $1.0 million to the Debtors from the sale of the Bitmain Coupons.  Without emergency relief, it is likely that potential purchasers will look elsewhere to purchase coupons.

16.     While the aggregate purchase price of approximately $1.0 million would represent a significant discount to the approximately $6.7 million face value of the Bitmain Coupons, it would also represent significant value above what these Bitmain Coupons are worth to the Debtors and their estates: zero.

### Liens on the Bitmain Coupons

17.     The Bitmain Coupons are encumbered by the prepetition lien the Debtors granted to the Prepetition Secured Parties (as defined in the Interim DIP Order).[5]  In addition, the Interim DIP Order provides a lien on the Bitcoin Coupons to the DIP Lenders (as defined in the Interim DIP Order) senior to the Prepetition Liens (as defined in the Interim DIP Order) of the Prepetition Secured Parties.

18.     In connection with the potential sale of the Bitmain Coupons, the Debtors consulted with the Prepetition Secured Parties, the DIP Lenders, and the Creditors' Committee, none of which have opposed this Motion being heard on February 1, 2023.

---

[5]     In connection with the Debtors' DIP financing, on December 23, 2022, the Court entered the *Interim Order (I) Authorizing the Debtors to (A) Obtain Senior Secured Priming Superpriority Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Granting Adequate Protection to the Prepetition Secured Parties, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* [Docket No. 130] (the "**Interim DIP Order**").

**Relief Requested Should be Granted**

A.      **Selling the Bitmain Coupons is a Reasonable Exercise of Debtors' Sound Business Judgment and in Best Interests of Estates**

19.     The Court may grant the relief requested herein pursuant to section 363 of the Bankruptcy Code, which provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Courts in the Fifth Circuit have granted a debtor's request to use property of the estate outside of the ordinary course of business pursuant to section 363(b) of the Bankruptcy Code upon a finding that such use is supported by sound business reasons.  *See, e.g.*, *In re BNP Petroleum Corp.*, 642 F. App'x 429, 435 (5th Cir. 2016); *In re Cont'l Air Lines*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or a debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business."); *see also In re Crutcher Res. Corp.*, 72 B.R. 628, 631 (Bankr. N.D. Tex. 1987) ("A Bankruptcy Judge has considerable discretion in approving a § 363(b) sale of property of the estate other than in the ordinary course of business, but the movant must articulate some business justification for the sale."); *In re Borders Grp., Inc.*, 453 B.R. 477, 482 (Bankr. S.D.N.Y. 2011) ("a debtor often satisfies the business judgment standard if 'the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'") (quoting *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992)); *In re Terrace Gardens Park P'ship*, 96 B.R. 707, 714 (Bankr. W.D. Tex. 1989).

20.     Section 105 of the Bankruptcy Code provides, in relevant part, that "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."    11 U.S.C. § 105(a). *In re CoServ, L.L.C.*, 273 B.R. 487, 497

(Bankr. N.D. Tex. 2002).  *See also In re Tusa-Expo Holdings, Inc.*, Case No. 08-45057-DML-11, 2008 WL 4857954, at *1 (Bankr. N.D. Tex. Nov. 7, 2008); *CEI Roofing*, 315 B.R. at 56; *In re Mirant Corp.*, 296 B.R. 427 (Bankr. N.D. Tex. 2003).

21.     The Debtors submit that selling the Bitmain Coupons, even at the significant discount the Debtors anticipate, represents a reasonable exercise of sound business judgment and is in the best interests of the Debtors' estates.  The Debtors have no need for new S19 Miners and using the Debtors' limited resources to purchase new S19 Miners, simply to utilize the Bitmain Coupons, is not in the best interest of the Debtors' estates.

22.     In the hands of the Debtors, the Bitmain Coupons are a proverbial "melting ice cube," which will be fully melted and even evaporate in the next few months.  Due to the limited market for the Bitmain Coupons and the exigency of selling the Bitmain Coupons before they expire worthless, an auction under the supervision of the Court is not a feasible option, as the time required to conduct such an auction would certainly result in the Bitmain Coupons losing significant value.  The Debtors have sought to obtain the best possible price for the Bitmain Coupons upon Court approval of the Motion.  The Debtors submit that the relief contemplated by the Proposed Order allowing the Debtors to sell the Bitmain Coupons in one or more private sale transactions will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative.  Accordingly, the Debtors' determination to enter into the sell the Bitmain Coupons at a discount is a valid and sound exercise of the Debtors' business judgment and should be approved.

**B.     The Sale of the Bitmain Coupons Should Be Approved "Free and Clear" Under Section 363(f) of the Bankruptcy Code**

23.     Section 363(f) of the Bankruptcy Code permits the Debtors to sell assets free and clear of all liens, claims, interests, charges, and encumbrances (with any such liens,

claims, interests, charges, and encumbrances attaching to the net proceeds of the sale with the same rights and priorities therein as in the sold assets).[6]   As section 363(f) is stated in the disjunctive, when proceeding pursuant to section 363(f), it is only necessary to meet one of the five conditions of section 363(f).   *In re Nature Leisure Times, LLC*, No. 06-41357, 2007 WL 4554276, at *3 (Bankr. E.D. Tex. Dec. 19, 2007) ("The language of § 363(f) is in the disjunctive such that a sale free and clear of an interest can be approved if any one of the aforementioned conditions contained in § 363(f) are satisfied.").   The Debtors believe that they demonstrated their satisfaction of one or more of these conditions and, in particular, that absent an objection to the sale of the Bitmain Coupons, any party with a claim or interest in the Bitmain Coupons may be deemed to have consented to the sale.   The Debtors intend to use any proceeds from the sale of Bitmain Coupons for general corporate purposes and to help fund these chapter 11 cases.   The Prepetition Secured Parties and the DIP Lenders, each of which have liens on the Bitmain Coupons, have consented to the sale of the Bitmain Coupons.

C.   **The Sale of the Bitmain Coupons Has Been Proposed in Good Faith and Without Collusion, and the Purchaser Will Be a "Good-Faith Purchaser"**

24.   Pursuant to section 363(m) of the Bankruptcy Code, a good-faith purchaser is one who purchases assets for value, in good faith, and without notice of adverse claims.

---

[6]   Section 363(f) provides that "[t]he trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—

(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest."

11 U.S.C. § 363(f).

*O'Dwyer v. O'Dwyer (In re O'Dwyer)*, 611 Fed. App'x 195, 200 (5th Cir. 2015); *In re Mark Bell Furniture Warehouse, Inc.*, 992 F.2d 7, 9 (1st Cir. 1993); *In re Willemain v. Kivitz*, 764 F.2d 1019, 1023 (4th Cir. 1985); *In re Congoleum Corp.*, No. 03-51524, 2007 WL 1428477, *2 (Bankr. D.N.J. May 11, 2007); *see also In re Abbotts Dairies of Penn., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986) (to constitute lack of good faith, a party's conduct in connection with the sale must usually amount to fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders).[7]

25.     In other words, a party would have to show fraud or collusion between the purchaser and the debtor-in-possession or trustee or other bidders in order to demonstrate a lack of good faith.  An appropriate characterization of good faith in a bankruptcy sale is a lack of "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."  *In re Bleaufontaine, Inc.*, 634 F.2d 1383, 1388 n.7 (5th Cir. 1981) (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)).

26.     The Debtors are seeking to sell the Bitmain Coupons only to a third-party, "good-faith" purchaser within the meaning of section 363(m) and at market prices without any collusion or fraud.  Additionally, the Debtors will not sell the Bitmain Coupons to any "insider" or "affiliate" of any of the Debtors as those terms are defined in section 101 of the Bankruptcy

---

[7]     Section 363(m) provides that:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease or property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

Code.  Accordingly, the Debtors contend that a purchaser of Bitmain Coupons is entitled to the protections of section 363(m).

**D.      The Sale of the Property is Appropriate Under Bankruptcy Rule 6004.**

27.      Bankruptcy Rule 6004(f)(1) permits a debtor to sell property of the estate outside of the ordinary course of its business by private sale.  Fed. R. Bankr. P. 6004(f)(1).  *See In re Cypresswood Land Partners, I,* 409 B.R. 396, 436 (Bankr. S.D. Tex. 2009) ("[T]here is no prohibition against a private sale . . . and there is no requirement that the sale be by public auction.").  Courts generally afford debtors in possession broad discretion to determine the manner in which estate property is sold.  *See, e.g., In re 9 Houston LLC,* 578 B.R. 600, 618 (Bankr. S.D. Tex. 2017); *In re Bakalis,* 220 B.R. 525, 531 (Bankr. E.D.N.Y. 1998); *In re Alisa P'ship,* 15 B.R. 802, 802 (Bankr. D. Del. 1981).  Private sales by a debtor outside of the ordinary course of business are appropriate where the debtor articulates a good business reason for the private sale.  *See, e.g., In re Schipper*, 933 F.2d 513, 514 (7th Cir. 1991) (private real estate sale by debtor approved when purchase price was the same as independent appraisal); *In re Condere Corp.*, 228 B.R. 615, 629 (Bankr. S.D. Miss. 1998) (authorizing private sale of debtor's tire company where "[d]ebtor has shown a sufficient business justification for the sale of the assets to the [p]urchaser").  Bankruptcy courts have a "large measure of discretion" in determining, "based upon the facts and circumstances of the proposed sale," whether a private sale, as opposed to a public auction, is appropriate.  *In re Embrace Sys. Corp.*, 178 B.R. 112, 123 (Bankr. W.D. Mich. 1995); *In re Blue Coal Corp.*, 168 B.R. 553, 564 (Bankr. M.D. Pa. 1994).  In general, courts in this and other districts have approved private sales of less than all the assets of a debtor pursuant to section 363(b)(1) of the Bankruptcy Code as long as the debtor provides a valid business reason for not conducting an auction.  *See, e.g., In re 9 Houston LLC,* 578 B.R. 600, 618 (Bankr. S.D. Tex. 2017) (approving private sale of real estate by emergency motion without bidding procedures or a stalking horse

bidder); *In re Wellman, Inc.*, No. 08-10595 (SMB) (Bankr. S.D.N.Y. Oct. 6, 2008) (approving

private sale of industrial complex for $17.9 million); *In re W.R, Grace & Co.*, No. 01-01139 (JKF)

(Bankr. D. Del. July 23, 2007) (authorizing private sale of business line for approximately $22

million); *In re Solutia, Inc.*, No. 03-17949 (SCC) (Bankr. S.D.N.Y. Dec. 28, 2006) (approving

private sale of real property for approximately $7.1 million).

        28.    In an exercise of their sound business judgment, the Debtors have

determined that consummating the sale of the Bitmain Coupons on a private basis is appropriate

in light of the facts and circumstances of these chapter 11 cases and the particular circumstances

of the Bitmain Coupons.  A public auction would require the Debtors to incur additional costs for

a process the Debtors do not believe is likely to result in additional value sufficient to justify the

incurrence of such costs.  The Coupon Exchange group on Telegram is a small, but robust, public

market for coupons that consists of hundreds of potential sellers and purchasers of coupons and

provides visibility on market prices for the sales of coupons.  Additionally, coupon brokers are

active in the market and represent additional potential purchasers of coupons.  Due to the near-

term expiration of the Bitmain Coupons, it is unlikely that a superior price would be found in a

public auction within the timeframe required.  Given these circumstances, the Debtors believe that

the private sale of the Bitmain Coupons is appropriate under the circumstances.

**Emergency Consideration**

        29.    As demonstrated above, approval of the sale Bitmain Coupons on an

emergency basis is necessary so that the Debtors have an opportunity to quickly actualize the value

of the Bitmain Coupons prior to such Bitmain Coupons expiring worthless.  Without emergency

relief, it is likely that potential purchasers of Bitmain Coupons will look elsewhere to purchase

coupons and the Debtors may not be able to find replacement purchasers or may be required to

sell at greater discounts if emergency relief is not obtained.

**Compliance with Bankruptcy Rule 6004(a)**
**and Waiver of Bankruptcy Rule 6004(h)**

30.     To implement the foregoing successfully, the Debtors request that the Court find that notice of the Motion satisfies Bankruptcy Rule 6004(a) and that the Court waive the 14-day period under Bankruptcy Rule 6004(h).

**Reservation of Rights**

31.     Nothing contained herein is intended to be or shall be deemed as (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver or limitation of the Debtors' or any party in interest's rights to dispute the amount of, basis for, or validity of any claim, (iii) a waiver of the Debtors' rights under the Bankruptcy Code or any other applicable nonbankruptcy law, (iv) an agreement or obligation to pay any claims, (v) a waiver of any claims or causes of action which may exist against any creditor or interest holder, or (vi) an admission as to the validity of any liens satisfied pursuant to this Motion.  Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

**Notice**

32.     Notice of this Motion will be served on any party entitled to notice pursuant to Bankruptcy Rule 2002 and any other party entitled to notice pursuant to Local Rule 9013-1(d).

**No Previous Request**

33.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated:  January 25, 2023
       Houston, Texas

                                        Respectfully submitted,

                                         */s/ Alfredo R. Pérez*
                                        WEIL, GOTSHAL & MANGES LLP
                                        Alfredo R. Pérez (15776275)
                                        700 Louisiana Street, Suite 1700
                                        Houston, Texas  77002
                                        Telephone: (713) 546-5000
                                        Facsimile:  (713) 224-9511
                                        Email:  Alfredo.Perez@weil.com

                                        -and-

                                        WEIL, GOTSHAL & MANGES LLP
                                        Ray C. Schrock (admitted *pro hac vice*)
                                        Ronit J. Berkovich (admitted *pro hac vice*)
                                        Moshe A. Fink (admitted *pro hac vice*)
                                        767 Fifth Avenue
                                        New York, New York  10153
                                        Telephone:  (212) 310-8000
                                        Facsimile:  (212) 310-8007
                                        Email:  Ray.Schrock@weil.com
                                                        Ronit.Berkovich@weil.com
                                                        Moshe.Fink@weil.com

                                        *Proposed Attorneys for Debtors*
                                        *and Debtors in Possession*

## **Certificate of Service**

I hereby certify that on January 25, 2023, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.


 */s/ Alfredo R. Pérez*
Alfredo R. Pérez