## **Exhibit B**

**Change Page Only Redline**

Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

40.     *Bankruptcy Rules.* The requirements of Bankruptcy Rules 4001 and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

41.     *Headings.* Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Interim Order. When used in this Interim Order, the word "including" shall not imply limitation.

42.     *Adequate Protection to Prepetition Equipment Lenders*. Pursuant to sections 361, 362, 363(e), 364(d)(1) and 507 of the Bankruptcy Code, as adequate protection of their purported Prepetition Equipment Liens in Prepetition Equipment Collateral, the Prepetition Equipment Lenders shall be entitled to the following (collectively, the obligations under this paragraph 42, together with the Noteholder Adequate Protection Obligations, the "***Adequate Protection Obligations***"):

(a)     *Equipment Lender Adequate Protection Claims.* The Prepetition Equipment Lenders were, by the Original Interim DIP Order, and are each hereby granted on a final basis in the amount of any aggregate Diminution in Value of the respective purported Prepetition Equipment Liens in Prepetition Equipment Collateral (as applicable) from and after the Petition Date, superpriority administrative expense claims contemplated by section 507(b) of the Bankruptcy Code against each of the Debtors (the "***Equipment Lender Adequate Protection Claims***," together with the Noteholder Adequate Protection Claims, the "***Adequate Protection Claims***"), which shall be payable by each of the Debtors on a joint and several basis, and shall have recourse to all DIP Collateral. The Equipment Lender Adequate Protection Claims shall be (i) subject and subordinate only to the Carve-Out, and the DIP Superpriority Claims, and(ii) *pari*

*passu* with the Noteholder Adequate Protection Claims, and (iii) senior to any and all other administrative expense claims and all other claims against the Debtors and their estates, now existing or hereafter arising, of any kind or nature whatsoever.

(b)     *Equipment Lender Adequate Protection Liens.* The Prepetition Equipment Lenders were, by the Original Interim DIP Order, and are each hereby granted on a final basis, effective and perfected as of the entry of the Original Interim Order, and without the necessity of the execution, recordation or filing by the Replacement DIP Loan Parties or any of the Prepetition Equipment Lenders of any pledge, collateral or security documents, mortgages, deeds of trust, financing statements, notations of certificates of title for titled goods, or any similar document or instrument, or the taking of any other action (including entering into any control agreements or taking possession or control of any DIP Collateral), in the amount of any aggregate Diminution in Value of the purported Prepetition Equipment Liens in the Prepetition Equipment Financing Collateral (as applicable) from and after the Petition Date, valid, binding, enforceable and automatically perfected post-petition liens and security interests in all DIP Collateral (the "**Equipment Lender Adequate Protection Liens**," and together with the Noteholder Adequate Protection Liens, the "**Adequate Protection Liens**"). The Equipment Lender Adequate Protection Liens shall be (i) junior and subordinated to (A) the Carve-Out, (B) the First-Priority DIP Liens in First-Priority DIP Collateral, (C) the Noteholder Adequate Protection Liens in Prepetition Secured Notes Collateral, and (D) the Prior Senior Liens (other than the Prepetition Equipment Liens that constitute Prior Senior Liens), (ii) *pari passu* with the Noteholder Adequate Protection Liens in the First-Priority DIP Collateral and *pari passu* with the Noteholder Adequate Protection Liens in the Junior-Priority DIP Collateral (other than Prepetition Equipment Financing Collateral and the Prepetition Secured Notes Collateral), (iii)

the Replacement DIP Loan Documents and this Interim Order, and the Court's jurisdiction shall survive confirmation and consummation of any chapter 11 plan for any of the Debtors notwithstanding the terms or provisions of any such chapter 11 plan or any order confirming any such chapter 11 plan.

47.     *Final Hearing.* The Final Hearing shall be held on February [ ]27, 2023, at [ ]:[ ] [ ]3:00 p.m. (prevailing Central Time), and any objections to the final relief sought in the Motion shall be filed with the Court no later than February [ ]21, 2023 at 4:00 p.m. (prevailing Central Time) (the "***Final DIP Objection Deadline***"), and served upon the following: (a)(i) Weil, Gotshal & Manges LLP, 700 Louisiana, Suite 1700, Houston, Texas, Attn: Alfredo Perez (alfredo.perez@weil.com), and (ii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue New York, New York 10153, Attn: Ray Schrock (ray.schrock@weil.com) and Ronit Berkovich (ronit.berkovich@weil.com), counsel to the Debtors, (b) Choate, Hall & Stewart LLP, Two International Place, Boston, MA 02110, Attn: John F. Ventola (jventola@choate.com) and Douglas R. Gooding (dgooding@choate.com), counsel to the Replacement DIP Secured Parties, (c) Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, NY 10019, Attn: Brett Miller (BMiller@willkie.com), Todd Goren (tgoren@willkie.com), and James Burbage (JBurbage@willkie.com), lead counsel to the Official Committee, (d) Paul Hastings, LLP, 200 Park Avenue, New York, New York 10166, Attn: Kristopher Hansen (krishansen@paulhastings.com), Erez Gilad (erezgilad@paulhastings.com), and Sayan Bhattacharyya (sayanbhattacharyya@paulhastings.com), counsel to the Original DIP Lenders and the Ad Hoc Group.

Dated: _____, 2023
        Houston, Texas

_____
UNITED STATES BANKRUPTCY JUDGE

## Exhibit 5

**Lien Priorities Following Refinancing Effective Date (For Illustrative Purposes Only)**

| Rank | First-Priority DIP Collateral | Junior-Priority DIP Collateral | | |
|---|---|---|---|---|
| | | **Junior-Priority DIP Collateral (other than Prepetition Equipment Financing Collateral or Prepetition Secured Notes Collateral)** | **Prepetition Equipment Financing Collateral** | **Prepetition Secured Notes Collateral** |
| *First* | Carve-Out | Carve-Out | Carve-Out | Carve-Out |
| *Second* | ~~Replacement~~ DIP Liens | Prior Senior Liens | Prior Senior Liens | Prior Senior Liens |
| *Third* | Noteholder Adequate Protection Liens and Equipment Lender Adequate Protection Liens | ~~Replacement~~ DIP Liens | Equipment Lender Adequate Protection Liens | Noteholder Adequate Protection Liens |
| *Fourth* | | Noteholder Adequate Protection Liens and Equipment Lender Adequate Protection Liens | Prepetition Equipment Lender Liens | Prepetition Secured Notes Liens |
| *Fifth* | | | ~~Replacement~~ DIP Liens | ~~Replacement~~ DIP Liens |
| *Sixth* | | | Noteholder Adequate Protection Liens | Equipment Lender Adequate Protection Liens |

## Exhibit 6

**Payoff Letter**
*[To come]*

February [ ], 2023

**CORE SCIENTIFIC, INC.**
210 Barton Springs Road, Suite 300
Austin, TX 78704
**Attention:** Todd DuChene; President, Chief Legal Officer and Secretary

Ladies and Gentlemen:

Reference is hereby made to (i) that certain Senior Secured Super-Priority Debtor-In-Possession Loan and Security Agreement dated as of December 22, 2022, as filed with the Bankruptcy Court (as defined below) on December 28, 2022 (Docket No. 188) (as amended, restated, supplemented or otherwise modified from time to time in accordance with the terms thereof, the "DIP Credit Agreement"), by and among Core Scientific, Inc., a Delaware corporation and a debtor and debtor-in-possession in the Chapter 11 Cases, as the borrower (the "Borrower"), each Subsidiary Guarantor, as a Guarantor, an Obligor, and a debtor and debtor-in-possession in the Chapter 11 Cases, each Person party thereto from time to time as a Lender, and Wilmington Savings Fund Society, FSB, as Administrative Agent (the "Agent"), (ii) that certain *Interim Order (I) Authorizing The Debtors To (A) Obtain Senior Secured Priming Superpriority Postpetition Financing And (B) Use Cash Collateral, (II) Granting Liens And Providing Claims With Superpriority Administrative Expense Status, (III) Granting Adequate Protection To The Prepetition Secured Parties, (IV) Modifying The Automatic Stay, (V) Scheduling A Final Hearing, And (VI) Granting Related Relief* (Docket No. 38) (the "Original DIP Order"), (iii) that certain *Order (I) Authorizing The Debtors On An Interim Basis To (A) Obtain Senior Secured Non-Priming Superpriority Replacement Postpetition Financing And (B) Use Cash Collateral, (II) Authorizing The Debtors To Refinance Existing Postpetition Financing On A Final Basis, (III) Granting Liens And Providing Claims With Superpriority Administrative Expense Status, (IV) Granting Adequate Protection To The Prepetition Secured Parties On A Final Basis, (V) Modifying The Automatic Stay, (V) Scheduling A Final Hearing, And (VI) Granting Related Relief* (Docket No. [ ])[1] (which such order shall be in form and substance reasonably satisfactory to the Lenders, the "Replacement DIP Order") and (iv) that certain Funds Flow delivered to the Agent as of the date hereof (the "Funds Flow"). Capitalized terms used in this letter agreement (this "Payoff Letter") without definition have the meanings given to them in the DIP Credit Agreement, Original DIP Order or Replacement DIP Order, as applicable.

On December 21, 2022, each of the Borrower and certain direct and indirect Subsidiaries of the Borrower (each a "Debtor" and collectively, the "Debtors") filed voluntary petitions for relief under title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") initiating their respective jointly administered chapter 11 cases (with the lead case number Case No. 22-90341 (DRJ)) (collectively, the "Chapter 11 Cases"), and each Debtor has continued and is continuing in the possession of its assets and management of its business pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

In connection with the Chapter 11 Cases and pursuant to (i) the terms of that certain Commitment Letter, dated as of January 29, 2023, provided to the Borrower by B. Riley Commercial Capital, LLC and the Term Sheet attached thereto as Annex A and (ii) the Replacement DIP Order, the Obligors will be entering into certain transactions, including entry into the Replacement DIP Facility (as defined in the Replacement DIP Order), pursuant to which the Borrower intends to irrevocably and indefeasibly pay in full in cash all obligations arising under the DIP Credit Agreement, including, without limitation, all

[1] NTD: To be updated once available.

LEGAL_US_E # 168254791.7

accrued but unpaid principal, interest, fees, premiums, payments (including any Termination Payments and Agent Fees (each as defined in the DIP Credit Agreement), fees (including professional fees), costs, expenses, charges and other amounts payable under the DIP Credit Agreement and the other DIP Loan Documents (as defined in the Original DIP Order), including, without limitation, all "Obligations" as defined in the DIP Credit Agreement (collectively, the "DIP Obligations").

The Agent has been notified by the Borrower that on February [2], 2023 (the "Payoff Date") the Borrower intends to cause all of the outstanding DIP Obligations owing to the Lenders under the DIP Loan Documents, including, without limitation, all outstanding principal, accrued and unpaid interest thereon, all applicable fees and all other DIP Obligations to be irrevocably and indefeasibly repaid in full in cash in accordance with the terms of this Payoff Letter and for the DIP Credit Agreement and other DIP Loan Documents to be terminated.

The parties hereto hereby agree that the total outstanding principal balance of the Loans made by the Lenders to or for the benefit of the Borrower and the other Obligors under the DIP Credit Agreement and all other DIP Loan Documents, together with all accrued but unpaid interest thereon, and the total amount of all fees, costs, expenses and other DIP Obligations owed by the Obligors under the DIP Credit Agreement and all other DIP Loan Documents necessary for Full Payment ("Paid in Full") to occur, if paid on the Payoff Date (as defined below) by 2:00 p.m. (Eastern Time) (the "Payoff Time"), is the amount set forth below (the "Payoff Amount"):

| | |
|---|---|
| Principal: | $[    ] |
| Fees: | $[    ] |
| Interest: | $[    ] |
| Agent Fees: | $[    ] |
| Paul Hastings Fees: | $[    ] |
| Moelis Fees: | $[    ] |
| **Total Payoff Amount:** | **$[    ]** |

If payment of the Payoff Amount is not made by the Payoff Time on the Payoff Date, the Payoff Amount will be recalculated to include an additional $[ ] per day (the "Per Diem Amount"); provided that the Agent receives the Payoff Amount together with all applicable Per Diem Amounts no later than 2:00 p.m. (Eastern Time) (or such later time as may be agreed to by the Agent) on the date of payment.

The Borrower shall pay or cause to be paid the Payoff Amount by wire transfer in immediately available funds, to the accounts set forth on, and pursuant to and in accordance with the wire instructions set forth on, Schedule I hereto.

The Borrower has requested that the Agent provide this Payoff Letter on behalf of the Lenders to acknowledge and evidence the Discharge of Obligations (as defined below), and set forth the terms on which all other DIP Obligations (except for any Surviving Obligations (as defined below), and all Liens on the Collateral securing the Secured Obligations, shall be deemed paid, discharged, satisfied and released in full.

The Agent (on behalf of itself and acting at the instruction of each Lender on behalf of such Lender) hereby agrees that, subject to the terms and conditions of this Payoff Letter, immediately and automatically upon receipt by the Agent, Paul Hastings LLP ("Paul Hastings") and Moelis & Company ("Moelis" and together with Paul Hastings, collectively, the "Advisors"), as applicable, of the Payoff Amount, all DIP Obligations owing or otherwise payable to the Lenders and the Agents as of the date hereof (other than (i)

heretofore unasserted contingent indemnity obligations which, by their terms, survive termination of the DIP Credit Agreement and other DIP Loan Documents and (ii) other obligations that survive the termination of the DIP Credit Agreement and the other DIP Loan Documents by each of their own terms and in accordance with the Original DIP Order and the Replacement DIP Order (clauses (i) and (ii), collectively, the "Surviving Obligations")) shall be deemed satisfied, discharged and Paid in Full (the "Discharge of Obligations") without any further action by the Bankruptcy Court or any party, subject to the Payoff Amount Reinstatement (as defined below).

Immediately upon and only upon (a) the receipt by the Agent of that portion of the Payoff Amount set forth opposite its name on the Funds Flow attached as Schedule I hereto (b) the receipt by the Agent of a fully executed copy of this Payoff Letter, duly executed and delivered by the Obligors, (c) receipt by each of the Advisors of the amount set forth opposite its name on the Funds Flow attached as Schedule I hereto and (d) entry of the Replacement DIP Order (the items described in clauses (a) through (d), collectively, the "Payoff Conditions"), the Agent, on behalf of itself and acting at the instruction of each Lender on behalf of such Lender agrees that all DIP Obligations of the Obligors under the DIP Loan Documents (other than Surviving Obligations) shall be deemed Paid in Full, released and satisfied, and all DIP Loan Documents and all related documents and instruments shall be automatically released and terminated without any further action by the Bankruptcy Court or any party, all commitments of the Lenders shall automatically be terminated without any further action by any party, all guarantees provided under the DIP Loan Documents shall automatically be terminated without any further action by the Bankruptcy Court or any party, and all security interests, liens, mortgages, pledges, charges or other encumbrances granted to the Lenders and/or the Agent, as applicable, in connection with the DIP Credit Agreement and the other DIP Loan Documents shall be automatically released and terminated without any further action by any party, except for the Surviving Obligations, which Surviving Obligations shall survive without prejudice and remain in full force and effect.

At the expense of the Borrower, the Agent (on behalf of itself and the other Secured Parties) will promptly, upon satisfaction of the Payoff Conditions, execute and deliver to the Borrower (and/or any designee of the Borrower) any such additional documents, shall provide such additional information and shall take such further actions as the Borrower (and/or any designee of the Borrower) may reasonably request, in each case, to carry out the terms of this Payoff Letter (including, without limitation, appropriate Uniform Commercial Code ("UCC") termination statements, lien releases, mortgage releases, discharges of security interests, pledges and guarantees, intellectual property releases, landlord waiver terminations, terminations of deposit account control agreements and all other similar discharge or release documents) as are reasonably requested to release, as of record, the security interests and all notices of security interests and liens previously filed by the Agent or on the Agent's behalf under the DIP Loan Documents, including those certain UCC termination statements in the forms attached hereto as Exhibit A. Upon satisfaction of the Payoff Conditions (the receipt of which shall be confirmed by the Agent to the Borrower, which confirmation may be via e-mail), (a) the Agent hereby authorizes the Borrower (or any designee of the Borrower) to file solely those certain UCC termination statements in the forms attached hereto as Exhibit A and any intellectual property releases and mortgage releases and (b) the Agent shall deliver to the Borrower (or any designee of the Borrower) originals of any instruments evidencing pledged debt and all equity certificates and any other similar collateral previously delivered by the Borrower or any other Obligor to the Agent under the DIP Loan Documents.

At any time after the satisfaction of the Payoff Conditions in accordance with the foregoing, and from time to time thereafter, upon the written request and at the expense of the Borrower, the Agent will execute and deliver any and all further instruments and documents and take such further action as the Borrower may reasonably request to effectuate, evidence or reflect of public record, the release of the security interests and liens referred to in this Payoff Letter.

LEGAL_US_E # 168254791.7

If the Agent has not received the Payoff Amount by 2:00 p.m. (Eastern time) on February 3, 2023 (the "Expiration Time"), this Payoff Letter shall have no further force or effect. The Obligors hereby agree that they will not request or otherwise incur additional loans under the DIP Credit Agreement on or after the date hereof through the Expiration Time.

Notwithstanding anything herein to the contrary, if at any time all or any part of the Payoff Amount is or must be rescinded or returned by the Agent or any Advisor for any reason whatsoever (including in the event the Replacement DIP Order is reversed, stayed, modified or appealed), the DIP Obligations, to the extent that such payment is or must be rescinded or returned, shall be deemed to have continued in existence, notwithstanding such application by the Agent or the Advisors, as applicable, and the DIP Credit Agreement and the other DIP Loan Documents shall continue to be effective or be reinstated, as the case may be, as to such DIP Obligations, all as though such application by the Agent or the Advisors as applicable, had not been made (the "Payoff Amount Reinstatement"). The provisions of this paragraph shall remain in full force and effect regardless of any termination of the DIP Obligations owing under the DIP Loan Documents or the termination of this Payoff Letter.

Effective immediately and automatically upon the satisfaction of the Payoff Conditions, and in consideration of the above and for other valuable consideration the receipt of which is hereby acknowledged, each of the Borrower and the other Obligors, on its own behalf and on behalf of its predecessors, successors and assigns, and on behalf of their respective estates, hereby unconditionally releases, waives and discharges and acquits each of the Agent, the Lenders, and each of their respective officers, directors, members, managers, partners, equity holders, subsidiaries, affiliates, related parties, employees, investment advisors or managers, agents, attorneys, advisors and professionals (collectively, the "Released Parties") (in their capacities as such) from any and all obligations and liabilities to the Borrower and the other Obligors (and their successors and assigns) and from any and all claims, counterclaims, cross-claims, demands, defenses, objections, challenges, offsets or setoff, debts, accounts, contracts, liabilities, remedies, suits, controversies, actions, causes of action, losses, damages, indemnities, reimbursement obligations, attorneys' fees, costs, expenses or judgments, of every kind or nature whatsoever, whether matured or unmatured, known or unknown, asserted or unasserted, suspected or unsuspected, foreseen or unforeseen, accrued or unaccrued, liquidated or unliquidated, fixed or contingent, pending or threatened, arising in law or equity, upon contract or tort, under the Bankruptcy Code, any state or federal common law, statute, rule, regulation or otherwise, in each case, that may be asserted by the Borrower or any of the other Obligors, their respective estates, predecessors, successors or assigns, against any of the Released Parties in their capacities as such) for or by reason of any act, omission, matter, cause or thing whatsoever arising at any time, in each case, arising under, in connection with, or related to the DIP Loan Documents, the Original DIP Order, the transactions contemplated thereunder or hereunder, the Replacement DIP Order, the transactions contemplated thereunder or hereunder (including the Refinancing and this Payoff Letter), including any claim or cause of action seeking (i) any so-called lender liability, (ii) any and all claims arising under the Bankruptcy Code, whether under chapter 5 of the Bankruptcy Code or under applicable law (including any applicable state law Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or (iii) reduction, recoupment, recharacterization, subordination (whether equitable, contractual or otherwise), reclassification, disgorgement, disallowance, impairment, marshalling, surcharge or recovery, or any other related claim or cause of action with respect to the validity, enforceability, priority, scope, extent or perfection of the DIP Liens (as defined in the Original DIP Order) or the DIP Obligations.

This Payoff Letter (a) shall be governed by and shall be construed and enforced in accordance with, the laws of the State of New York and (b) sets forth the entire agreement among the parties relating to the subject matter pertaining hereto, and no term or provision hereof may be amended, changed, waived, discharged or terminated, except in writing signed by each party.

Without duplication of the foregoing, the Borrower and the Obligors acknowledge and agree that this Payoff Letter is a DIP Loan Document and that the indemnification and expense reimbursement provisions of the DIP Credit Agreement and the DIP Loan Documents, including, without limitation, as set forth in Sections 3.4 and 14.2 of the DIP Credit Agreement, will apply and be enforceable by the Agent and the Lenders in respect of (a) the execution and delivery of this Payoff Letter and the other instruments and agreements provided for herein, (b) all actions taken or omitted by the Agent or the Lenders with respect thereto and (c) all claims based upon or arising in connection with any of the foregoing.

By its execution and delivery of its signature page hereto, the Borrower and each Obligor represents and warrants that the execution of this Payoff Letter and all other documents contemplated hereby and the performance of any other actions contemplated hereby are authorized and permitted under the terms of the DIP Loan Documents and applicable law, and all conditions precedent to such release, execution and performance have been satisfied.

This Payoff Letter shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

This Payoff Letter shall become effective only when signed by the Agent and accepted by the Borrower and the other Obligors in the spaces provided below. This Payoff Letter may be executed in any number of counterparts, each of which shall be an original and all of which shall constitute one agreement. Delivery of an executed signature page of this Payoff Letter by facsimile or by other electronic transmission shall be effective as delivery of a manually executed counterpart hereof. The words "execute," "execution," "signed," "signature," and words of like import in or related to any document to be signed in connection with this Payoff Letter and the transactions contemplated hereby shall be deemed to include electronic signatures, the electronic matching of assignment terms and contract formations on electronic platforms approved by the Agent, or the keeping of records in electronic form, each of which shall be of the same legal effect, validity or enforceability as a manually executed signature or the use of a paper- based recordkeeping system, as the case may be, to the extent and as provided for in any applicable law, including the Federal Electronic Signatures in Global and National Commerce Act, the New York State Electronic Signatures and Records Act, or any other similar state laws based on the Uniform Electronic Transactions Act; provided, that notwithstanding anything contained herein to the contrary the Agent is under no obligation to agree to accept electronic signatures in any form or in any format unless expressly agreed to by the Agent pursuant to procedures approved by it.

*[Signature pages follow]*