IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| CORE SCIENTIFIC, INC., *et al.*, | § § § | Case No. 22-90341 (DRJ) |
| | § § | (Jointly Administered) |
| Debtors.[1] | § | |

**MOTION OF DEBTORS FOR ENTRY OF AN
ORDER (I) AUTHORIZING AND APPROVING THE STIPULATION
TRANSFERRING PROPERTY TO NYDIG ABL LLC IN EXCHANGE FOR
FULL SATISFACTION OF DEBT, FREE AND CLEAR OF ALL LIENS, CLAIMS,
INTERESTS, AND ENCUMBRANCES, AND (II) GRANTING RELATED RELIEF**

> IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE ELECTRONICALLY AT HTTPS://ECF.TXSB.USCOURTS.GOV/ WITHIN TWENTY-ONE (21) DAYS FROM THE DATE THIS MOTION WAS FILED. IF YOU DO NOT HAVE ELECTRONIC FILING PRIVILEGES, YOU MUST FILE A WRITTEN OBJECTION THAT IS ACTUALLY RECEIVED BY THE CLERK WITHIN TWENTY-ONE (21) DAYS FROM THE DATE THIS MOTION WAS FILED. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.

Core Scientific, Inc. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), respectfully represent as follows in support of this motion (the "**Motion**"):

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (N/A); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions, VII, LLC (3198). The Debtors' corporate headquarters and service address is 210 Barton Springs Road, Suite 300, Austin, Texas 78704.

**Preliminary Statement**

1. Debtor Core Scientific Operating Company (f/k/a Core Scientific, Inc.) ("**Core**") and NYDIG ABL LLC (f/k/a Arctos Credit, LLC), a Delaware limited liability company ("**NYDIG**"), are party to that certain Master Equipment Finance Agreement, dated as of October 27, 2020, by and between Core and NYDIG (as amended, restated, supplemented or otherwise modified from time to time, the "**MEFA**", and collectively with the schedules entered into by and between NYDIG and Borrower pursuant to the MEFA, all Acceptance Certificates (as defined in the MEFA), Other Agreements (as defined in the MEFA), and any other document entered into in connection therewith, the "**Loan Documents**").

2. As of December 21, 2022 (the "**Petition Date**"), Core owed NYDIG approximately $38.6 million of principal under the Loan Documents, plus certain interest, fees, expenses and other obligations (the "**NYDIG Debt**"). Approximately 27,403 application-specific integrated circuit mining rigs serve as collateral for the NYDIG Debt under the Loan Documents (the "**ASICs Collateral**").[2]

3. The Debtors have reached an agreement with NYDIG, as provided in the *Stipulation and Agreed Order By and Among the Debtors and NYDIG ABL LLC Authorizing the Debtors to Transfer Certain ASICs Collateral to NYDIG Pursuant to 11 U.S.C. § 363 Free And Clear Of All Liens, Claims, And Encumbrances* (the "**Stipulation and Agreed Order**"), attached

---

[2] In connection with the Debtors' replacement DIP financing, on February 2, 2023, the Court entered the *Order (I) Authorizing The Debtors on an Interim Basis to (A) Obtain Senior Secured Non-Priming Superpriority Replacement Postpetition Financing and (B) Use Cash Collateral, (II) Authorizing The Debtors to Refinance Existing Postpetition Financing on a Final Basis, (III) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (IV) Granting Adequate Protection to the Prepetition Secured Parties on a Final Basis, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* (ECF No. 447)(the "**Replacement Interim DIP Order**"). The Replacement Interim DIP Order provides a lien to the Replacement DIP Lender (as defined in the Replacement Interim DIP Order) that is junior to "Existing Senior Liens" (as defined in the Replacement Interim DIP Order), which includes NYDIG's liens on the ASICs Collateral pursuant to the Loan Documents.

hereto as **Exhibit A**, for the Debtors to transfer to NYDIG all of the ASICs Collateral in exchange for the full extinguishment of the NYDIG Debt and other related releases (the "**ASICs Transfer**").

4. The transfer of the ASICs Collateral in exchange for the full extinguishment of the NYDIG Debt will bring substantial benefits to the Debtors and their estates because (i) the ASICs Collateral is no longer necessary for the Debtors' current operations and future business plans and (ii) the principal of the NYDIG Debt exceeds the value the ASICs Collateral. Accordingly, the Debtors submit that, in the exercise of their business judgment, the transfer of the ASICs Collateral to NYDIG in exchange for the extinguishment of the NYDIG Debt is in the best interest of their estates and this Motion should be granted.

## Background

5. On the Petition Date, the Debtors each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 1015-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Local Rules**"). On January 9, 2023, the U.S. Trustee appointed the Creditors' Committee in these chapter 11 cases pursuant to section 1102 of the Bankruptcy Code. No trustee or examiner has been appointed in these chapter 11 cases.

6. Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the

3

*Declaration of Michael Bros in Support of Debtors' Chapter 11 Petitions and First Day Motions*, sworn to on December 21, 2022 (Docket No. 5) (the "**First Day Declaration**").[3]

## Jurisdiction

7. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

8. By this Motion, pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 9014, the Debtors seek entry of the Stipulation and Agreed Order, substantially in the form of **Exhibit A** attached hereto, (i) authorizing and approving the transfer by the Debtors of the ASICs Collateral to NYDIG, free and clear of all liens, claims and interests, and encumbrances, in exchange for the full extinguishment of the NYDIG Debt, and (ii) granting related relief.

## The ASICs Collateral

9. A significant portion of the Debtors' revenues is generated from the mining of digital assets, specifically bitcoin, for their own account ("**Self-Mining**"). To conduct Self-Mining, the Debtors purchase or lease specialized application-specific integrated circuit mining rigs that mine bitcoin ("**Miners**"). Miners in the digital asset mining industry have differing "hash rates" (i.e., the computing power required to mine bitcoin).

10. The Debtors acquired the ASICs Collateral, originally 27,470 Miners and, as a result of the retirement of certain Miners, currently comprised of approximately 27,403 Miners, consisting of "S19 Pros" and "S19J Pros," between October 2020 and December 2021 for

---

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the First Day Declaration.

use in their Self-Mining operations. The ASICs Collateral consists of older models of Miners, which have lower hash rates compared to newer models, such as S19 XP Miners.

### The Debtors' Immediate Rationalization Plans

11. The Debtors are in process of evaluating their operations and, for several reasons, believe that it is in the best interests of their estates to rationalize their fleet of Miners used in their Self-Mining operations towards a somewhat smaller, but more efficient, fleet of Miners. The transfer to NYDIG of the Miners that serve as the ASICs Collateral, which are no longer required for the Debtors' current operations or future business plans, in exchange for the full extinguishment of the NYDIG Debt, is consistent with those plans. While the transfer of the ASICs Collateral to NYDIG would have an immediate negative impact to the Debtors' revenue and EBITDA, the Debtors believe, in their business judgment, that the benefits provided by the ASICs Transfer, as discussed herein, outweigh the immediate loss of revenue and that the ASICs Transfer is an important first step towards improved profitability and sustainability of the Debtors' Self-Mining operations.

12. *First*, the Debtors' Self-Mining operations are limited by how much space they have in their facilities for Miners, referred to as "rack space" in the industry. The Debtors are currently considering opportunities to sell certain of their mining facilities; if actualized, this would reduce the overall rack space available for Miners. As part of this potential reduction in rack space, to maximize the efficiency of their Self-Mining operations, the Debtors are seeking to adjust their collection of Miners so it consists of only the newest models of Miners.

13. *Second*, the Debtors currently have Miners that are in storage and not currently mining bitcoin (the "**Stored Miners**"). The Stored Miners consist of "S19 XP" Miners, which are one of the most efficient models of Miners available and more efficient than the ASICs Collateral. Although the Debtors will lose revenue from returning the ASICs Collateral, which is

5

currently generating revenue for the Debtors, they will be able to mitigate a portion of such lost revenue by installing these Stored Miners in their facility.

14. *Third*, the current market prices of the same models of Miners as the ASICs Collateral have dropped considerably and, if needed, the Debtors could easily purchase the same models of Miners at a price lower than the amounts outstanding under the ASICs Debt (though, as noted above, the Debtors are focused on shifting towards only the most efficient models of Miners). At current market prices, the Debtors could purchase the same models of Miners that serve as the ASICs Collateral for approximately $25 million,[4] which is considerably lower than the approximately $38.6 million of principal, plus prepetition interest and fees, owed to NYDIG under the NYDIG Debt. Further, the Debtors believe they can replace the hash rates of the ASICs Collateral, with a different combination of Miners, for approximately $15 million. Pursuant to section 506(a)(1) of the Bankruptcy Code, under any chapter 11 plan, NYDIG would be entitled to a secured claim for the value of the ASICs Collateral and an unsecured deficiency claim for the remainder of the NYDIG Debt. Under the Stipulation and Agreed Order, the NYDIG Debt is completely extinguished. This means NYDIG is giving up any recovery on its unsecured deficiency claim in exchange for receiving the ASICs Collateral at this time.

**Key Terms of the Stipulation and Agreed Order**

15. The Stipulation and Agreed Order provides for the following key terms to effectuate the ASICs Transfer in an efficient manner and maximize value to the Debtors' estates:

- The Debtors shall ship the ASICs Collateral to a location designated by NYDIG in Texas or such other location mutually agreed by the Debtors and NYDIG to NYDIG or one of its designee affiliates.

---

[4] NYDIG is not taking a position, pursuant to this Motion or the Stipulation and Agreed Order, with respect to the value of the ASICs Collateral.

6

- o The Debtors shall contract to insure the ASICs Collateral during transit. NYDIG shall choose such insurance carrier and pay for such insurance.

- o The Debtors shall provide NYDIG with certain inspection rights to the ASICs Collateral prior to the shipment of the ASICs Collateral.

- The Stipulation and Agreed Order includes a schedule of the ASICs Collateral and the location of each Miner.

- Title to the ASICs Collateral shall transfer upon delivery of the ASICs Collateral to such location designated by NYDIG. The date of the transfer of title to the ASICs Collateral shall be the "Closing Date."

- On the Closing Date, the right, title, and interest in and to the ASICs Collateral shall be deemed transferred to NYDIG (or its designees) free and clear of all claims, liabilities, liens, as specified in the Stipulation and Agreed Order. Concurrently, as the sole consideration from NYDIG to the Debtors for the ASICs Transfer, any and all claims NYDIG has against the Debtors arising out of the Loan Documents, whether prepetition or postpetition, shall be satisfied in full, including the NYDIG Debt, and neither NYDIG, nor any of its designees receiving the ASICs Collateral, shall assert any such claims against the Debtors in these chapter 11 cases.

**Benefits of the Transfer to the Debtors' Estates**

16. Given the Debtor's rationalization plans and the Debtors' view that the market value of the ASICs Collateral is considerably less than the amount of NYDIG Debt that will be extinguished as part of the ASICs Transfer, the ASICs Transfer will provide considerable benefits to the Debtors' estates.

17. The Debtors believe, in their business judgment, that the ASICs Transfer is in the best interest of the Debtors and provides substantial value to the Debtors' estates. In connection with the potential ASICs Transfer, the Debtors have consulted with the Replacement DIP Lender, the Ad Hoc Group (each as defined in the Replacement Interim DIP Order), and the Creditors' Committee, each of which have either agreed to support the sale or have agreed not to object to the sale.

**Relief Requested Should be Granted**

A.    **The ASICs Transfer is a Reasonable Exercise of Debtors' Sound Business Judgment and in Best Interests of Estates**

18.    The Court may grant the relief requested herein pursuant to section 363 of the Bankruptcy Code, which provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Courts in the Fifth Circuit have granted a debtor's request to use property of the estate outside of the ordinary course of business pursuant to section 363(b) of the Bankruptcy Code upon a finding that such use is supported by sound business reasons. *See, e.g.*, *In re BNP Petroleum Corp.*, 642 F. App'x 429, 435 (5th Cir. 2016); *In re Cont'l Air Lines*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or a debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business."); *see also In re Crutcher Res. Corp.*, 72 B.R. 628, 631 (Bankr. N.D. Tex. 1987) ("A Bankruptcy Judge has considerable discretion in approving a § 363(b) sale of property of the estate other than in the ordinary course of business, but the movant must articulate some business justification for the sale."); *In re Borders Grp., Inc.*, 453 B.R. 477, 482 (Bankr. S.D.N.Y. 2011) ("a debtor often satisfies the business judgment standard if 'the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'") (quoting *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992)); *In re Terrace Gardens Park P'ship*, 96 B.R. 707, 714 (Bankr. W.D. Tex. 1989).

19.    Section 105 of the Bankruptcy Code provides, in relevant part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). *In re CoServ, L.L.C.*, 273 B.R. 487, 497

(Bankr. N.D. Tex. 2002). *See also In re Tusa-Expo Holdings, Inc.*, Case No. 08-45057-DML-11, 2008 WL 4857954, at *1 (Bankr. N.D. Tex. Nov. 7, 2008); *CEI Roofing*, 315 B.R. at 56; *In re Mirant Corp.*, 296 B.R. 427 (Bankr. N.D. Tex. 2003).

20. Additionally, Courts in the Fifth Circuit have recognized that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve a debtor's estate. *See*, *e.g.*, *CoServ,* 273 B.R. at 497 (authorizing the payment of certain prepetition claims pursuant to the "doctrine of necessity"); *In re Equalnet Commc'ns Corp.*, 258 B.R. 368, 369–70 (Bankr. S.D. Tex. 2000) (noting that the payment of prepetition claims is permissible when the transactions are critical to the survival of the business of the debtor); *In re Gulf Air, Inc.*, 112 B.R. 152, 153 (Bankr. W.D. La. 1989) ("While pre-petition claims are normally disposed of in a plan of reorganization . . . there are well-established 'necessity of payment' and similar exceptions."); *see also In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) ("The ability of a Bankruptcy Court to authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept.").

21. The Debtors submit that transferring the ASICs Collateral to NYDIG in exchange for the extinguishment of the NYDIG Debt represents a reasonable exercise of sound business judgment and is in the best interests of the Debtors' estates. As discussed above in more detail, the Debtors are in the process of adjusting their fleet of Miners to more efficient Miners. The ASICs Transfer allows the Debtors to continue with their plans by freeing up rack space through transferring the ASICs Collateral and plugging in the more efficient Stored Miners. Additionally, extinguishing the NYDIG Debt, which the Debtors believe is considerably greater than the value of the ASICs Collateral, eliminates NYDIG's secured claim, which would likely

burden the Debtors' capital structure upon emergence from chapter 11, and NYDIG's unsecured claim, which would necessarily dilute other unsecured creditors under a chapter 11 plan.

22. Although the transfer of the ASICs Collateral to NYDIG would have an immediate negative impact to the Debtors revenue and EBITDA, the benefits of reducing the Debtors debt, realizing value above the market value of the ASICs Collateral, and installing the Debtors' more efficient Stored Miners is an important first step towards the realization of the Debtors' business plans to rationalize their operations towards a somewhat smaller, but more efficient, fleet of Miners. The Debtors believe that these benefits exceed the loss of revenue that will result from the transfer of the ASICs Collateral.

23. The Debtors believe that NYDIG's offer to accept the ASICs Collateral in exchange for the full extinguishment of the NYDIG Debt was the highest and best possible value the Debtors could receive for the ASICs Collateral, considering that the Debtors believe that the current market value of similarly situated Miners is considerably lower than the principal and prepetition interest and fees outstanding under the NYDIG Debt. The Debtors believe that no third party would reasonably offer to purchase the ASICs Collateral at a price greater than the NYDIG Debt.

24. Additionally, the ASICs Transfer would not only extinguish NYDIG's secured claim against the Debtors, but also eliminate NYDIG's unsecured deficiency claim. This provides considerable value to the Debtors' estates, particularly for general unsecured creditors, as any pot of consideration available for general unsecured creditors under a chapter 11 plan will now be allocated among a smaller pool of creditors, resulting in higher distributions for all general unsecured creditors.

25. The Debtors submit that the transaction contemplated by the Stipulation and Agreed Order will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative. Accordingly, the Debtors' determination to transfer the ASICs Collateral in exchange for the full extinguishment of the NYDIG Debt is a valid and sound exercise of the Debtors' business judgment and should be approved.

**B. The ASICs Transfer Should Be Approved "Free and Clear" Under Section 363(f) of the Bankruptcy Code**

26. Section 363(f) of the Bankruptcy Code permits the Debtors to sell assets free and clear of all liens, claims, interests, charges, and encumbrances (with any such liens, claims, interests, charges, and encumbrances attaching to the net proceeds of the sale with the same rights and priorities therein as in the sold assets).[5] As section 363(f) is stated in the disjunctive, when proceeding pursuant to section 363(f), it is only necessary to meet one of the five conditions of section 363(f). *In re Nature Leisure Times, LLC*, No. 06-41357, 2007 WL 4554276, at *3 (Bankr. E.D. Tex. Dec. 19, 2007) ("The language of § 363(f) is in the disjunctive such that a sale free and clear of an interest can be approved if any one of the aforementioned conditions contained in § 363(f) are satisfied."). The Debtors believe that they demonstrated their satisfaction of one or more of these conditions and, in particular, that absent an objection to the sale of the ASICs

---

[5] Section 363(f) provides that "[t]he trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—

(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest."

11 U.S.C. § 363(f).

WEIL:\98999780\1\39031.0014

Collateral, any party with a claim or interest in the NYDIG may be deemed to have consented to the sale, and that the price at which the ASICs Collateral will be transferred (*e.g.*, the amount of NYDIG's claim related to the NYDIG Debt) exceeds the aggregate value of all liens on the ASICs Collateral.

**C.     The ASICs Transfer Has Been Proposed in Good Faith and Without Collusion, and the Purchaser Will Be a "Good-Faith Purchaser"**

27.     Pursuant to section 363(m) of the Bankruptcy Code, a good-faith purchaser is one who purchases assets for value, in good faith, and without notice of adverse claims. *O'Dwyer v. O'Dwyer (In re O'Dwyer)*, 611 Fed. App'x 195, 200 (5th Cir. 2015); *In re Mark Bell Furniture Warehouse, Inc.*, 992 F.2d 7, 9 (1st Cir. 1993); *In re Willemain v. Kivitz*, 764 F.2d 1019, 1023 (4th Cir. 1985); *In re Congoleum Corp.*, No. 03-51524, 2007 WL 1428477, *2 (Bankr. D.N.J. May 11, 2007); *see also In re Abbotts Dairies of Penn., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986) (to constitute lack of good faith, a party's conduct in connection with the sale must usually amount to fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders).[6]

28.     In other words, a party would have to show fraud or collusion between the purchaser and the debtor-in-possession or trustee or other bidders to demonstrate a lack of good faith. An appropriate characterization of good faith in a bankruptcy sale is a lack of "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly

---

[6]  Section 363(m) provides that:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease or property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

unfair advantage of other bidders." *In re Bleaufontaine, Inc.*, 634 F.2d 1383, 1388 n.7 (5th Cir. 1981) (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)).

29. The Debtors submit that NYDIG is a "good-faith" purchaser within the meaning of section 363(m) and the terms of the Stipulation and Agreed Order were negotiated at arms'-length and in good faith without any collusion or fraud. Additionally, NYDIG is not an "insider" or "affiliate" of any of the Debtors as those terms are defined in section 101 of the Bankruptcy Code. Accordingly, the Debtors contend that NYDIG is entitled to the protections of section 363(m).

### Reservation of Rights

30. Nothing contained herein is intended to be or shall be deemed as (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver or limitation of the Debtors' or any party in interest's rights to dispute the amount of, basis for, or validity of any claim, (iii) a waiver of the Debtors' rights under the Bankruptcy Code or any other applicable nonbankruptcy law, (iv) an agreement or obligation to pay any claims, (v) a waiver of any claims or causes of action which may exist against any creditor or interest holder, (vi) an admission as to the validity of any liens satisfied pursuant to this Motion, or (vii) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code. Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

### Notice

31. Notice of this Motion will be served on any party entitled to notice pursuant to Bankruptcy Rule 2002 and any other party entitled to notice pursuant to Local Rule 9013-1(d).

WEIL:\98999780\1\39031.0014

## **No Previous Request**

32.  No previous request for the relief sought herein has been made by the Debtors to this or any other court.

[*Remainder of page intentionally left blank*]

WHEREFORE the Debtors respectfully request entry of the Stipulation and Agreed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated:  February 2, 2023
       Houston, Texas

Respectfully submitted,

 /s/  Alfredo R. Pérez
WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (15776275)
700 Louisiana Street, Suite 1700
Houston, Texas  77002
Telephone: (713) 546-5000
Facsimile:  (713) 224-9511
Email:  Alfredo.Perez@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Ray C. Schrock (admitted *pro hac vice*)
Ronit J. Berkovich (admitted *pro hac vice*)
Moshe A. Fink (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:   (212) 310-8007
Email:  Ray.Schrock@weil.com
       Ronit.Berkovich@weil.com
       Moshe.Fink@weil.com

*Attorneys for Debtors
and Debtors in Possession*

**Certificate of Service**

I hereby certify that on February 2, 2023, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                                                                          */s/  Alfredo R. Pérez*
                                                                                          Alfredo R. Pérez