**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **CORE SCIENTIFIC, INC., *et al.*,** | § | **Case No. 22-90341 (DRJ)** |
| | § | |
| Debtors.[1] | § | **(Jointly Administered)** |

**GLOBAL NOTES AND STATEMENTS OF LIMITATION, METHODOLOGY, AND
DISCLAIMERS REGARDING THE DEBTORS' SCHEDULES OF ASSETS AND
LIABILITIES AND STATEMENTS OF FINANCIAL AFFAIRS**

Core Scientific, Inc. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**" or the "**Company**"), with the assistance of their advisors, are filing their Schedules of Assets and Liabilities (collectively, the "**Schedules**") and Statements of Financial Affairs (collectively, the "**Statements**" or "**SOFAs**" and, together with the Schedules, the "**Schedules and Statements**") in the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") pursuant to section 521 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 1007 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

These Global Notes and Statements of Limitations, Methodology, and Disclaimers Regarding the Debtors' Schedules of Assets and Liabilities and Statements of Financial Affairs (collectively, the "**Global Notes**") pertain to, are incorporated by reference in, and comprise an integral part of all of the Debtors' Schedules and Statements. The Global Notes should be referred to, considered, and reviewed in connection with any review of the Schedules and Statements. These Global Notes are in addition to any specific notes contained in any individual Debtor's Schedules and Statements (together with the Global Notes, the "**Notes**").

The Schedules and Statements do not purport to represent financial statements prepared in accordance with Generally Accepted Accounting Principles in the United States ("**GAAP**"), nor are they intended to be fully reconciled with the financial statements of the Debtors. Additionally, the Schedules and Statements contain unaudited information that is subject to further review and potential adjustment and reflect the Debtors' commercially reasonable efforts to report the assets and liabilities of the Debtors.

The Schedules and Statements and Global Notes should not be relied upon for information relating to the current or future financial conditions, events, or performance of any of the Debtors.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (N/A); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions, VII, LLC (3198). The Debtors' corporate headquarters and service address is 210 Barton Springs Road, Suite 300, Austin, Texas 78704.

The Debtors and their agents, attorneys, and financial advisors do not guarantee or warrant the accuracy or completeness of the data that is provided herein and shall not be liable for any loss or injury arising out of or caused in whole or in part by the acts, errors, or omissions, whether negligent or otherwise, in procuring, compiling, collecting, interpreting, reporting, communicating, or delivering the information contained herein.   While commercially reasonable efforts have been made to provide accurate and complete information herein, inadvertent errors or omissions may exist.   The Debtors and their agents, attorneys, and financial advisors expressly do not undertake any obligation to update, modify, revise, or re-categorize the information provided herein, or to notify any third party should the information be updated, modified, revised, or re-categorized.   In no event shall the Debtors or their agents, attorneys, and financial advisors be liable to any third party for any direct, indirect, incidental, consequential, or special damages (including, but not limited to, damages arising from the disallowance of a potential claim against the Debtors or damages to business reputation, lost business, or lost profits), whether foreseeable or not and however caused, even if the Debtors or their agents, attorneys, and financial advisors are advised of the possibility of such damages.

The Schedules and Statements for the Debtors have been signed by Michael Bros, who serves as the Debtors' Senior Vice President of Capital Markets & Acquisitions and is an authorized signatory of the Debtors.   In reviewing and signing the Schedules and Statements, Mr. Bros has relied upon the efforts, statements, and representations of various personnel employed by the Debtors' and their advisors, including the management team.   Mr. Bros has not (and could not have) personally verified the accuracy of each statement and representation contained in the Schedules and Statements, including statements and representations concerning amounts owed to creditors, classification of such amounts, and creditor addresses.

### Global Notes and Overview of Methodology

1. **Reservation of Rights.**  Reasonable efforts have been made to prepare and file complete and accurate Schedules and Statements; however, inadvertent errors or omissions may exist.   The Debtors reserve all rights to (i) amend or supplement the Schedules and Statements from time to time, in all respects, as may be necessary or appropriate, including, without limitation, the right to amend the Schedules and Statements with respect to the description or designation of any claim ("**Claim**") or the particular Debtor(s) against which the Claim is asserted; (ii) dispute or otherwise assert offsets or defenses to any Claim reflected in the Schedules and Statements as to amount, liability, priority, status, or classification; and (iii) designate subsequently any Claim as "disputed," "contingent," or "unliquidated;" or (iv) object to the extent, validity, enforceability, priority, or avoidability of any Claim.

Any failure to designate a Claim in the Schedules and Statements as "disputed," "contingent," or "unliquidated" does not constitute an admission by the Debtors that such Claim or amount is not "disputed," "contingent," or "unliquidated," or that such Claim is not subject to objection.   The Debtors reserve all of their rights to dispute, or assert offsets or defenses to, any Claim reflected on their Schedules and Statements on any grounds, including, but not limited to, amount, liability, priority, status, or classification.   Additionally, the Debtors expressly reserve all of their rights to designate such Claims as "disputed," "contingent," or "unliquidated" at a later date.   Moreover, listing a Claim does not constitute an admission of liability by the Debtors against which the Claim is listed or against any of the Debtors.   Furthermore, nothing contained in the Schedules and Statements or Notes shall constitute a waiver of rights with respect to the Debtors' chapter 11 cases, including, without limitation, issues involving Claims,

substantive consolidation, defenses, equitable subordination, and/or causes of action arising under chapter 5 of the Bankruptcy Code and any applicable non-bankruptcy laws to recover assets or avoid transfers.

Any specific reservation of rights contained elsewhere in the Global Notes does not limit in any respect the general reservation of rights contained in this paragraph 1.

The Debtors shall not be required to update the Schedules and Statements except as may be required by applicable law.

2.  **Contingent Claim**.  A claim that is dependent on the realization of some uncertain future event is a "contingent" claim.

3.  **Unliquidated Claim**.  A claim, or portion of a claim, for which a specific value could not be readily quantified by the Debtors using currently available information are scheduled as "unliquidated."

4.  **Disputed Claim**.  A claim with respect to which the applicable Debtor and the claimant disagree as to the amount owed, whether any amount is owed, or the claim classification, is "disputed."

5.  **Description of the Case**.  On December 21, 2022 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.  The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

    The Debtors' chapter 11 cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) and Rule 1015-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of Texas.

    On January 9, 2023, the United States Trustee for Region 7 (the "**U.S. Trustee**") appointed an official committee of unsecured creditors (the "**Creditors' Committee**") in these chapter 11 cases pursuant to section 1102 of the Bankruptcy Code.  No trustee or examiner has been appointed in these chapter 11 cases.

6.  **Basis of Presentation**.  For financial reporting purposes, the Debtors generally prepare consolidated financial statements, which include information for Core Scientific, Inc. and its Debtor and non-Debtor affiliates.  The Schedules and Statements are unaudited and reflect the Debtors' reasonable efforts to report certain financial information of the Debtors on an unconsolidated basis.

    As more fully described in the Declaration of Michael Bros in Support of the Debtors' Chapter 11 Petitions and First Day Relief (Docket No. 5) (the "**First Day Declaration**"), on December 13, 2017, MineCo Holdings, Inc. was incorporated and, six months later, it changed its name to Core Scientific, Inc. ("**Initial Core Scientific**"). In January 19, 2022, pursuant to a "SPAC merger," (i) Initial Core Scientific changed its name to Core Scientific Operating Company ("**Core Operating**") and (ii) Power & Digital Infrastructure Acquisition Corp. changed its name to Core Scientific, Inc. Consequently, certain assets or liabilities attributed in the Debtors' books and records to "Core Scientific, Inc." are actually assets and liabilities of Core Operating, particularly those assets and liabilities pre-dating January 19, 2022.  The Debtors and

their advisors have used reasonable efforts to attribute assets and liabilities to the proper Debtor entity but, to the extent more information becomes available, the Debtors reserve the right to amend these Schedules and Statements accordingly. Further, nothing herein shall constitute an admission that a particular asset or liability is property attributable to a particular Debtor. In certain circumstances, the entity that is party to a contract located in the Company's books and records has been dissolved. Such contracts have been listed on the applicable Schedule for the Debtor entity making payments associated with such contract; this shall not constitute an admission that the Debtor making such payments is party to, or liable on, such contract.

These Schedules and Statements do not purport to represent financial statements prepared in accordance with GAAP, nor are they intended to fully reconcile to the financial statements prepared by the Debtors. These Schedules and Statements reflect the assets and liabilities of each separate Debtor, except where otherwise indicated. The Debtors used reasonable efforts to attribute the assets and liabilities, certain required financial information, and various cash disbursements to each particular Debtor entity. Information contained in the Schedules and Statements has been derived from the Debtors' books and records and historical financial statements. The Company accounts for its crypto currency assets at acquisition fair value, net of recognized impairment losses. The Debtors reserve all rights to supplement and amend the Schedules and Statements in this regard, including with respect to reallocation of assets or liabilities to any particular entity.

Given, among other things, the uncertainty surrounding the collection and ownership of certain assets and the valuation and nature of certain liabilities, to the extent that a Debtor's assets exceed its liabilities, this is not an admission that the Debtor was solvent as of the Petition Date or at any time prior to the Petition Date. Likewise, to the extent a Debtor's liabilities exceed its assets, this is not an admission that the Debtor was insolvent as of the Petition Date or any time prior to the Petition Date.

7. **"As Of" Information Date**. All asset information, and all liability information, except where otherwise noted, is reflected as of the close of business on the Petition Date. All year-to-date 2022 revenue is reflected as of December 21, 2022. The Schedules and Statements reflect the Debtors' best effort to allocate the assets, liabilities, receipts, and expenses to the appropriate Debtor entity "as of" such dates. In certain instances, the Debtors may have used estimates or pro-rated amounts where actual data as of the aforementioned dates was not available.

8. **Accuracy**. The financial information disclosed herein was not prepared in accordance with federal or state securities laws or other applicable non-bankruptcy law or in lieu of complying with any periodic reporting requirements thereunder. Persons and entities trading in or otherwise purchasing, selling, or transferring the Claims against or equity interests in the Debtors should evaluate this financial information in light of the purposes for which it was prepared. The Debtors are not liable for and undertake no responsibility to indicate variations from securities laws or for any evaluations of the Debtors based on this financial information or any other information.

9. **Current Market Value and Net Book Value**. Unless otherwise indicated, the Schedules and Statements reflect net book values ("**NBV**"), rather than current market values, and may not reflect net realizable value. For this reason, amounts ultimately realized will vary, potentially materially, from NBV. Additionally, the amount of

certain assets and liabilities may be undetermined, and, thus, ultimate assets and liabilities may differ materially from those stated in the Schedules and Statements. Values listed in these Schedules and Statements should not solely be used to determine the Debtors' enterprise valuation.

Operating cash is presented as bank balances as of the Petition Date. Certain other assets, such as investments in subsidiaries, are listed at undetermined amounts, as the net book values may differ materially from fair market values. Amounts ultimately realized may vary from net book value (or whatever value was ascribed) and such variance may be material. Accordingly, the Debtors reserve all of their rights to amend or adjust the value of each asset set forth herein. In addition, the amounts shown for total liabilities exclude items identified as unknown or undetermined and, thus, ultimate liabilities may differ materially from those stated in the Schedules and Statements.

The Debtors account for digital currency assets as intangible assets with indefinite useful lives. The Debtors initially recognize digital currency assets that are received as digital asset mining income based on the fair value of the digital currency assets when mined. Digital currency assets that are purchased in an exchange of one digital currency asset for another digital currency asset are recognized at the fair value of the digital currency asset received. During the period they are held, digital currency assets are impaired for a loss to the lowest observed exchange price, to date, in their primary market. The Debtors recognize realized gains or losses when digital currency assets are sold in an exchange for other digital currency assets or for cash using a first-in first-out method of accounting at the entity level.

The Debtors do not amortize goodwill but test it for impairment annually or more frequently if events or changes in circumstances indicate that the carrying value of goodwill may not be recoverable. During the year ended December 31, 2022, the Debtors impaired all $1.05 billion of their previously acquired goodwill.

10. **Liabilities**. The Debtors have sought to allocate liabilities between the prepetition and postpetition periods based on the information and research conducted in connection with the preparation of the Schedules and Statements. As additional information becomes available and further research is conducted, the allocation of liabilities between the prepetition and postpetition periods may change. Accordingly, the Debtors reserve all of their rights to amend, supplement, or otherwise modify the Schedules and Statements, as is necessary or appropriate.

The liabilities listed on the Schedules do not reflect all possible Claims under section 503(b)(9) of the Bankruptcy Code. Accordingly, the Debtors reserve all of their rights to dispute or challenge the validity of any Claims asserted under section 503(b)(9) of the Bankruptcy Code or the characterization of the structure of any such transaction or any document or instrument related to any creditor's Claim. Although there are multiple holders of debt under the Debtors' prepetition funded indebtedness, only the administrative agent(s), indenture trustee(s), or similar representative(s), as applicable, have been listed in the Schedules.

11. **Classification and Recharacterization**. Listing (i) a Claim on Schedule D as "secured," (ii) a Claim on Schedule E/F as "priority," (iii) a Claim on Schedule E/F as "unsecured," or (iv) a contract or lease on Schedule G as "executory" or "unexpired," does not constitute an admission by the Debtors of the legal rights of the claimant or a

waiver of the Debtors' rights to re-characterize or reclassify such Claims, contracts, or leases or to setoff such Claims. Notwithstanding the Debtors' commercially reasonable efforts to characterize, classify, categorize, or designate properly certain Claims, assets, executory contracts, unexpired leases, and other items reported in the Schedules and Statements, the Debtors may nevertheless have improperly characterized, classified, categorized, designated, or omitted certain items due to the complexity and size of the Debtors' business. Accordingly, the Debtors reserve all of their rights to re-characterize, reclassify, re-categorize, re-designate, add, or delete items reported in the Schedules and Statements at a later time as is necessary or appropriate as additional information becomes available, including, without limitation, whether contracts or leases listed herein were deemed executory or unexpired as of the Petition Date and remain executory and unexpired postpetition. Disclosure of information in one or more Schedules, one or more Statements, or one or more exhibits or attachments to the Schedule and Statements, even if incorrectly placed, shall be deemed to be disclosed in the correct Schedules, Statements, exhibits or attachments.

Moreover, nothing in the Schedules and Statements is, or shall be construed to be, an admission as to the determination of the legal status of any lease or financing arrangement (including whether any lease or financing arrangement is a true lease, a financing arrangement or a real property interest), and the Debtors reserve all rights with respect to such issues.

12.   **Excluded Assets and Liabilities**. The Debtors have excluded certain categories of assets, tax accruals, and liabilities from the Schedules and Statements, including, without limitation, accrued salaries, employee benefit accruals, and accrued accounts payable. The Debtors have also excluded rejection damage Claims of counterparties to executory contracts and unexpired leases that may or may not be rejected, to the extent such damage Claims exist. In addition, certain immaterial assets and liabilities may have been excluded.

13.   **Bankruptcy Court Orders**. Pursuant to certain orders of the Bankruptcy Court entered in the Debtors' chapter 11 cases (the "**First Day Orders**"), the Debtors were authorized (but not directed) to pay, among other things, certain prepetition claims of their employees, taxing authorities, insurers, critical vendors, and certain other prepetition creditors. Accordingly, these liabilities will have been or may be satisfied in accordance with such orders and therefore generally are not listed in the Schedules and Statements.

14.   **Zero Dollar Amounts**. Amounts listed as zero are either $0, unliquidated, or undetermined.

15.   **Summary of Amounts and Claims Reporting Policies.** The following is a summary of significant reporting policies:

•   <u>Undetermined and Unknown Amounts</u>. The description of an amount as "undetermined" or "unknown" is not intended to reflect upon the materiality of such amount.

•   <u>Totals</u>. All totals that are included in the Schedules and Statements represent totals of all the known amounts included in the Schedules and Statements. To the extent there are unknown or undetermined amounts, the actual total may be different than the total listed.

- <u>Paid Claims</u>.  The Debtors were authorized (but not directed) to pay certain outstanding prepetition claims pursuant to various First Day Orders entered by the Bankruptcy Court.  The Debtors reserve all of their rights to amend or supplement the Schedules and Statements or take other action as is necessary or appropriate to avoid overpayment of, or duplicate payments for, any such liabilities.

- <u>Liens</u>.  Property and equipment listed in the Schedules and Statements are presented without consideration of any liens that may attach (or have attached) to such property and equipment.

16. **Intellectual Property Rights**.  Exclusion of certain intellectual property should not be construed to be an admission that such intellectual property rights have been abandoned, have been terminated or otherwise have expired by their terms, or have been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction.  Conversely, inclusion of certain intellectual property should not be construed to be an admission that such intellectual property rights have not been abandoned, have not been terminated or otherwise expired by their terms, or have not been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction.  The Debtors have made every effort to attribute intellectual property to the rightful Debtor owner; however, in some instances, intellectual property owned by one Debtor may, in fact, be owned by another. Accordingly, the Debtors reserve all of their rights with respect to the legal status of any and all intellectual property rights.

17. **Executory Contracts**.  Although diligent efforts have been made to reflect each Debtor's executory contracts on Schedule G accurately, inadvertent errors, omissions, or over-inclusions may have occurred.  Certain information, such as the contact information of the counterparty, may not be included where such information could not be obtained using the Debtors' reasonable efforts.  Listing a contract or agreement on Schedule G does not constitute an admission that such contract or agreement is an executory contract or that such contract or agreement was in effect on the Petition Date or is valid or enforceable.  The Debtors do not make, and specifically disclaim, any representation or warranty as to the completeness or accuracy of the information set forth on Schedule G.

    Although the Debtors made diligent attempts to attribute an executory contract to its rightful Debtor, in certain instances, the Debtors may have inadvertently failed to do so. Accordingly, the Debtors reserve all of their rights with respect to the named parties to any and all executory contracts, including the right to amend Schedule G.

    The Debtors reserve all their rights, Claims, and causes of action with respect to the executory contracts, including the right to dispute or challenge the characterization of any contract on Schedule G as executory or the structure of any transaction or any document or instrument related to a creditor's Claim.

18. **Leases**.  The Debtors may enter into agreements titled as leases for equipment or other real property interests.  The underlying lease agreements are set forth in the Schedules and Statements in Schedule G.

    Although diligent efforts have been made to accurately reflect each Debtor's unexpired

leases on Schedule G, inadvertent errors, omissions, or over-inclusions may have occurred. Certain information, such as the contact information of the counterparty, may not be included where such information could not be obtained using the Debtors' reasonable efforts. Listing a lease on Schedule G does not constitute an admission that such lease is a true unexpired lease or that such lease was in effect on the Petition Date or is valid or enforceable. The Debtors do not make, and specifically disclaim, any representation or warranty as to the completeness or accuracy of the information set forth on Schedule G.

Nothing in the Schedules and Statements is, or shall be construed to be, an admission as to the determination of the legal status of any lease (including whether any lease is a true lease, a financing arrangement or a real property interest), and the Debtors reserve all rights with respect to such issues.

19. **Liens and Mechanic Liens**. Property and equipment listed in the Schedules and Statements are presented without consideration of any liens, including any asserted mechanics', materialmen, or similar liens that may attach (or have attached) to such property and equipment. Nothing in the Schedules and Statements is or should be construed as an admission as to the determination of the legal status of any liens, and the Debtors reserve all rights with respect to same.

20. **Owned Property and Equipment**. Unless otherwise indicated, owned property (including real property) and equipment are stated at net book value. The Debtors here by reserve all of their rights to sell or lease any property. The Debtors reserve their rights to lease furniture, fixtures, and equipment from certain third party lessors.

21. **Currency**. Unless otherwise indicated, all amounts are reflected in U.S. dollars.

22. **Contingent Assets**. Prior to the relevant Petition Date, each Debtor, as plaintiff, may have commenced various lawsuits in the ordinary course of its business against third parties seeking monetary damages. Each Debtor's Schedule A/B, Question 74 contains a listing of these actions, as applicable.

23. **Litigation.** Certain litigation actions (collectively, the "**Litigation Actions**") reflected as Claims against a particular Debtor may relate to one or more of the Debtors. The Debtors made reasonable efforts to record accurately the Litigation Actions in the Schedules and Statements of the Debtor that is the party to the Litigation Action. The inclusion of any Litigation Action in the Schedules and Statements does not constitute an admission by the Debtors of liability, the validity of any Litigation Action, or the amount and treatment of any potential Claim that may result from any Litigation Action currently pending or that may arise in the future. As the Debtors continue to operate their business, additional Litigation Actions may arise as a result thereof. Accordingly, the Debtors reserve all rights to amend, supplement, or otherwise modify the Schedules and Statements, as is necessary or appropriate.

24. **Causes of Action.** Despite making commercially reasonable efforts to identify all known assets, the Debtors may not have listed all of their causes of action or potential causes of action against third parties as assets in the Schedules and Statements, including, without limitation, causes of actions arising under the provisions of chapter 5 of the Bankruptcy Code and any other relevant non-bankruptcy laws to recover assets or avoid transfers. The Debtors reserve all of their rights with respect to any cause of

action (including avoidance actions), controversy, right of setoff, cross-claim, counterclaim, or recoupment and any Claim on contracts or for breaches of duties imposed by law or in equity, demand, right, action, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, fixed or contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, or assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law (collectively, "**Causes of Action**") they may have, and neither these Global Notes nor the Schedules and Statements shall be deemed a waiver of any Claims or Causes of Action or in any way prejudice or impair the assertion of such Claims or Causes of Action.

25.    **Intercompany Payables and Receivables.**  Intercompany receivables and payables are set forth on Schedules A/B and E/F, respectively.  The listing by the Debtors of any account between a Debtor and another affiliate, including between the Debtor and any disregarded or non-Debtor affiliate, is a statement of what appears in the Debtors' books and records and does not reflect any admission or conclusion of the Debtors regarding the allowance, classification, characterization, validity, or priority of such account.  The Debtors take no position in these Schedules and Statements as to whether such accounts would be allowed as a Claim or interest, or not allowed at all.  The Debtors and all parties in interest reserve all rights with respect to such accounts.  Further information regarding the Debtors' intercompany transactions is set forth in the Debtors' *Emergency Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Debtors to (A) Continue Their Existing Cash Management System, (B) Maintain Existing Business Forms and Intercompany Arrangements, (C) Continue Intercompany Transactions, and (D) Continue Utilizing Employee Credit Cards, and (II) Granting Related Relief* (Docket No. 12) (the "**Cash Management Motion**").

26.    **Employee Claims.**  The Bankruptcy Court entered a final order granting authority, but not requiring, the Debtors to pay prepetition employee wages, salaries, benefits, and other related obligations.  With the exception of any prepetition severance and paid time off obligations that are still owing under the Debtors' policies and applicable non-bankruptcy law, as applicable, the Debtors currently expect that most prepetition employee Claims for wages, salaries, benefits, and other related obligations either have been paid or will be paid in the ordinary course of business and, therefore, the Schedules and Statements do not include such Claims.  The Debtors have not listed their regular payroll disbursements and employee expense reimbursements in Question 3 for the Statements.

27.    **Insiders**.  The Debtors have attempted to include all payments made over the 12 months preceding the Petition Date to any party deemed an "insider."  For purposes of the Schedules and Statements, the Debtors defined "insiders" as such term is defined in section 101(31) of the Bankruptcy Code.  Persons listed as "insiders" have been included for informational purposes only and the inclusion of them in the Schedules and Statements shall not constitute an admission that such persons are insiders for purposes of section 101(31) of the Bankruptcy Code.  Moreover, the Debtors do not take any position with respect to: (i) any insider's influence over the control of the Debtors; (ii) the management responsibilities or functions of any such insider; (iii) the decision-making or corporate authority of any such insider; or (iv) whether the Debtors or any

such insider could successfully argue that he or she is not an "insider" under applicable law or with respect to any theories of liability or for any other purpose.

28. **Employee Addresses.** Current employee and director addresses have been reported as the Debtors' business address throughout the Schedules and Statements, where applicable.

29. **Confidential or Sensitive Information**. There may be instances where certain information was not included or redacted due to the nature of an agreement between a Debtor and a third party, concerns about the confidential or commercially sensitive nature of certain information, or concerns for the privacy of an individual. Any alterations will be limited to only what is necessary to protect the Debtor or third party and will provide interested parties with sufficient information to discern the nature of the listing.

30. **Fiscal Year**. The Debtors operate on a calendar year basis. Unless otherwise indicated, all references to "annual," "annually," "year," "years," or an otherwise similar length of time are presumed to refer to a period of time in accordance with the Debtors' fiscal year. Each Debtor's fiscal year ends on December 31.

31. **Specific Notes**. These Global Notes are in addition to the specific notes set forth below and in the Schedules and Statements of the individual Debtor entities. The fact that the Debtors have prepared a Global Note with respect to a particular Schedule or Statement and not as to others does not reflect and should not be interpreted as a decision by the Debtors to exclude the applicability of such Global Note to any or all of the Debtors' remaining Schedules or Statements, as appropriate. Disclosure of information in one Schedule, one Statement, or an exhibit or attachment to a Schedule or Statement, even if incorrectly placed, shall be deemed to be disclosed in the correct Schedule, Statement, exhibit, or attachment. In the event that the Schedules or Statements differ from any of the foregoing Global Notes, the Global Notes shall control.

## Specific Disclosures with Respect to the Debtors' Schedules

The Schedules do not purport to represent financial statements prepared in accordance with GAAP, nor are they intended to be fully reconciled with the financial statements of the Debtors.  Additionally, the Schedules contain unaudited information that is subject to further review and potential adjustment, and reflect the Debtors' reasonable best efforts to report the assets and liabilities of the Debtors.  Moreover, given, among other things, the uncertainty surrounding the collection and ownership of certain assets and the valuation and nature of certain liabilities, to the extent the Debtors show more assets than liabilities, this is not an admission that the Debtors were solvent as of the Petition Date or at any time before the Petition Date.  Likewise, to the extent the Debtors show more liabilities than assets, this is not an admission that the Debtors were insolvent as of the Petition Date or at any time before the Petition Date.  Values listed in these Schedules and Statements should not be used to determine the Debtors' enterprise valuation.

1. **Schedule A/B, Part 1, Questions 2–4.**

   Cash and cash equivalents are as of the Petition Date.

   For more information on the Debtors' cash management system, please refer to the Cash Management Motion.

2. **Schedule A/B, Part 2, Question 8.**

   Certain prepaid or amortized assets are listed in Part 2 in accordance with the Debtors' books and records.  The amounts listed in Part 2 do not necessarily reflect assets that the Debtors will be able to collect or realize.  The amounts listed in Part 2 include, among other things, utility deposits, prepaid subscriptions, construction, rent and other prepayments.

3. **Schedule A/B, Part 4, Question 14.**

   Ownership interests in subsidiaries and affiliates primarily arise from common stock ownership or member or partnership interests. Unless otherwise listed in the Schedules, the Debtors' respective ownership interests in subsidiaries are listed in Schedule A/B, Part 4 as undetermined amounts because the fair market value of such interests is dependent on numerous variables and factors and may differ significantly from the NBV.

   For more information concerning the Debtors' organizational structure, please refer to the organization chart annexed to the First Day Declaration and the discussion therein.

   Cryptocurrencies are reported in question 14, "**Investments** - Mutual funds or publicly traded stocks not included in Part 1".

4. **Schedule A/B, Part 8, Questions 46–53.**
   Includes vehicles, miners, network equipment, servers, switchboards, transformers, and other equipment.

5. **Schedule A/B, Part 9, Questions 55–58.**

Where possible, the Debtors have provided the NBV on a property-by-property basis rather than current market values, which value may not reflect the net realizable value. For this reason, amounts ultimately realizable upon a sale will vary, potentially materially, from NBV, and the NBV listed shall not be construed as current or fair market value of such property. The Debtors considered both owned real property and ground leases to which the respective Debtor is a lessee in responding to Schedule A/B, Questions 55–58. In addition, the real property leases to which a Debtor is a lessee or lessor are listed in Schedule G. To the extent any interest in such leases is listed on Schedule G but not Schedule A/B, such interests are incorporated into Schedule A/B, Questions 55–58 by reference.

6. **Schedule A/B, Part 11, Question 72**.

The Debtors' response to the schedule questionnaire is indicative of the gross non-tax effected net operating loss ("**NOL**") values as compared to the GAAP net deferred tax assets associated with such NOLs. The actual dollar impact of how these NOLs affect future taxable income is dependent upon, among other things, the timing, character, and amount of any future or previous years' (provided NOLs are allowed to be carried back) income to which they can be applied. Amounts also do not reflect the consideration of any valuation allowances recorded pursuant to GAAP, which have the effect of reducing associated deferred tax assets. Additionally, the NOLs listed in Schedule A/B, Question 72 reflect the amounts listed in the Debtors' books and records, may reflect NOLs accumulated for more than one tax year, and may be subject to expiration or limitations on usability now or in the future.

For further information regarding NOLs and other of the Debtors' tax attributes, please refer to the *Emergency Motion of the Debtors Pursuant to Sections 362 and 105(a) of the Bankruptcy Code for Interim and Final Orders Establishing Notification Procedures and Approving Restrictions On (A) Certain Transfers of Interests in the Debtors, and (B) Claiming of Certain Worthless Stock Deductions* (Docket No. 7) (the "**NOL Motion**"). Any description of such tax attributes contained herein is qualified by the NOL Motion in all respects.

7. **Schedule D**.

Except as otherwise ordered by the Bankruptcy Court, the Debtors reserve their rights to dispute or challenge the validity, perfection, or immunity from avoidance of any lien, including mechanics' or similar liens, purported to be granted or perfected in any specific asset for the benefit of a secured creditor listed on a Debtor's Schedule D. Moreover, although the Debtors may have scheduled Claims of various creditors as secured Claims, the Debtors reserve all rights to dispute or challenge the secured nature of any such creditor's Claim or the characterization of any such transaction or any document or instrument (including without limitation, any intercompany agreement) related to such creditor's Claim. To that end, the Debtors take no position as to the extent or priority of any particular creditor's lien in the Schedules and Statements.

With respect to those certain (i) secured convertible notes issued pursuant to that certain Secured Convertible Note Purchase Agreement, dated as of April 19, 2021 (as may be

amended, restated, amended and restated, supplemented, or otherwise modified from time to time, and including all related credit documents, and the notes issued thereunder, the **"April Convertible Notes"**) and/or (ii) secured convertible notes issued pursuant to that certain Secured Convertible Note Purchase Agreement, dated on or about August 20, 2021 (as may be amended, restated, amended and restated, supplemented, or otherwise modified from time to time, and including all related credit documents, and the notes issues thereunder, the "**August Convertible Notes**", and collectively with the April Secured Convertible Notes, the "**Convertible Notes**"), the Debtors have listed only the note/collateral agent as the named creditor on Schedule E/F. Nonetheless, the Convertible Notes are beneficially owned by a number of other parties, which are not listed individually on Schedule E/F. Further, as noted on the organizational chart annexed to the First Day Declaration, certain Debtors are guarantors of the Convertible Notes. The Debtors have included the Convertible Notes on Schedule E/F of Core Scientific, Inc., the issuer of the Convertible Notes and on the relevant Debtors' schedules that are guarantors of the Convertible Notes. Nothing herein or in the Schedules or Statements is intended to be deemed an admission or allowance by the Debtors regarding the amount of any Claims arising from the Convertible Notes.

The Debtors are party to various equipment financing agreements (collectively, the "**Equipment Financings**"), which the Debtors have included on Schedule D of the obligor for each Equipment Financing. As stated above, unless otherwise indicated, Equipment Financing Claim amounts are scheduled at outstanding principal amounts as of Petition Date. Nothing in the Schedules and Statements is or should be construed as an admission as to the determination of the legal status of any Equipment Financing, including the validity or amount of any lien in connection therewith, and the Debtors reserve all rights with respect thereto. Furthermore, the inclusion of an Equipment Financing on Schedule D shall not constitute an admission as to the value of any collateral securing such Equipment Financing or any deficiency Claim relating thereto.

The Debtors are party to certain agreements titled as leases for cryptocurrency miners and other non-miner equipment (collectively, the "**Equipment Leases**"). Any known prepetition obligations of the Debtors pursuant to the Equipment Leases have been listed on Schedule D or Schedule E/F, as applicable. The underlying Equipment Lease agreements are listed on Schedule G. Nothing in the Schedules and Statements is or should be construed as an admission as to the determination of the legal status of any Equipment Lease, including the characterization of an Equipment Lease as a lease or an equipment financing, and the Debtors reserve all rights with respect thereto. The Debtors reserve all rights to dispute the secured status (or the validity of any asserted lien) of any Equipment Lease and all rights related thereto are expressly reserved.

The Debtors further reserve the right to challenge the secured status of any liability. Characterizing a liability, including an Equipment Financing, as "secured," shall not constitute an admission as to the validity of any asserted lien or amount thereof.

Nothing herein or in the Schedules or Statements is intended to be deemed an admission of liability by the Debtors with respect to any ongoing or future litigation relating to the indebtedness listed on Schedule D.

The descriptions provided in Schedule D are intended only to be a summary. Reference to the applicable underlying documents is necessary for a complete description of the

collateral and the nature, extent, and priority of any liens. Nothing in these Notes or the Schedules and Statements shall be deemed a modification or interpretation of the terms of such agreements.

Except as specifically stated herein, real property lessors, equipment lessors, utility companies, and other parties that may hold security deposits have not been listed on Schedule D. The Debtors have not included parties that may believe their Claims are secured through setoff rights or inchoate statutory lien rights, including certain parties from which the Debtors have received lien notices but whose notices the Debtors understand have not yet been filed or recorded. While reasonable efforts have been made, determination of the date upon which each Claim in Schedule D was incurred or arose may be unduly burdensome or cost prohibitive in some instances and, therefore, the Debtors may not list a date for each Claim listed on Schedule D.

While reasonable efforts have been made, certain guarantors of the debts listed on Schedule D may have been inadvertently excluded. The Debtors reserve all of their rights to amend or supplement Schedule D as necessary or appropriate.

For purposes of Schedule D, the Debtors have included the principal amounts outstanding. Amounts listed on Schedule D should not be used to determine the amount of an alleged secured claim or the value of the underlying collateral, which may be disputed.

8. **Schedule E/F, Part 1**.

The Claims listed on Schedule E/F, Part 1 arose and were incurred on various dates; a determination of the date upon which each Claim arose or was incurred would be unduly burdensome and cost prohibitive. Accordingly, not all such dates are included for each Claim. To the best of the Debtors' knowledge, all Claims listed on Schedule E/F arose or were incurred before the Petition Date.

The Debtors have not listed certain wage, or wage-related, obligations that the Debtors have paid pursuant to First Day Orders on Schedule E/F. The Debtors reserve the right to dispute or challenge whether creditors listed on Schedule E/F are entitled to priority status pursuant to sections 503 and/or 507 of the Bankruptcy Code.

Claims owing to various taxing authorities to which the Debtors potentially may be liable are included on the Debtors' Schedule E/F. Certain of such Claims, however, may be subject to ongoing audits and/or the Debtors otherwise may be unable to determine with certainty the amount of the remaining Claims listed on Schedule E/F. Therefore, where applicable, the Debtors have listed such Claims as contingent, disputed, and/or unliquidated, pending final resolution of ongoing audits or other outstanding issues. The Debtors reserve the right to assert that any Claim listed on Schedule E/F does not constitute a priority Claim under the Bankruptcy Code.

9. **Schedule E/F, Part 2.**

The Debtors have exercised commercially reasonable efforts to list all liabilities on Schedule E/F of each applicable Debtor. As a result of the Debtors' consolidated

operations, however, the reader should review Schedule E/F for all Debtors in these cases for a more complete understanding of the unsecured debts of the Debtors.

Certain creditors listed on Schedule E/F may owe amounts to the Debtors, and, as such, the Debtors may have valid setoff and recoupment rights with respect to such amounts. The amounts listed on Schedule E/F may not reflect any such right of setoff or recoupment, and the Debtors reserve all rights to assert the same and to dispute and challenge any setoff and/or recoupment rights that may be asserted against the Debtors by a creditor.

Additionally, certain creditors may assert mechanics', materialman's, or other, similar liens against the Debtors for amounts listed on Schedule E/F. The Debtors reserve their rights to dispute and challenge the validity, perfection, and immunity from avoidance of any lien purported to be perfected by a creditor listed on Schedule E/F of any Debtor. In addition, certain Claims listed on Schedule E/F (Part 2) may be entitled to priority under section 503(b)(9) of the Bankruptcy Code.

Schedule E/F also contains information regarding pending litigation involving the Debtors. In certain instances, the relevant Debtor that is the subject of the litigation is unclear or undetermined. To the extent that litigation involving a particular Debtor has been identified, however, such information is included on that Debtor's Schedule E/F. The amounts for these potential Claims are listed as undetermined and marked as contingent, unliquidated, and disputed in the Schedules. Additionally, certain pending or potential litigation and Claims listed in Schedule E/F involve individual claimants.

Current employee and director addresses have been reported as the Debtors' business address throughout the Schedules and Statements.

The Claims of individual creditors for, among other things, goods, products, services, or taxes are listed as the amounts entered on the Debtors' books and records and may not reflect credits, allowances, or other adjustments due from such creditors to the Debtors. The Debtors reserve all of their rights with regard to such credits, allowances, and other adjustments, including the right to assert Claims objections and/or setoffs with respect to the same.

The aggregate net intercompany payable amounts listed in Schedule E/F may or may not result in allowed or enforceable Claims by or against a given Debtor, and listing these payables is not an admission on the part of the Debtors that the intercompany Claims are enforceable or collectable. The intercompany payables also may be subject to recoupment, netting, or other adjustments made pursuant to intercompany policies and arrangements not reflected in the Schedules.

As noted, the Bankruptcy Court has authorized the Debtors to pay, in their discretion, certain unsecured prepetition Claims, pursuant to the First Day Orders. To the extent practicable, each Debtor's Schedule E/F is intended to reflect the balance as of the Petition Date, adjusted for postpetition payments of some or all of the Bankruptcy Court approved payments. Each Debtor's Schedule E/F will reflect some of the Debtor's payments of certain Claims pursuant to the First Day Orders, and, to the extent an unsecured Claim has been paid or may be paid, it is possible such Claim is not included on Schedule E/F. Certain Debtors may pay additional Claims listed on Schedule E/F

during these chapter 11 cases pursuant to these and other orders of the Bankruptcy Court and the Debtors reserve all of their rights to update Schedule E/F to reflect such payments or to modify the claims register to account for the satisfaction of such Claim.

Additionally, Schedule E/F does not include potential rejection damage Claims, if any, of the counterparties to executory contracts and unexpired leases that have been, or may be, rejected. Furthermore, Schedule E/F does not include any deficiency Claims relating to liabilities listed on Schedule D, including Equipment Financings.

10. **Schedule G.**

While the Debtors' existing books, records, and financial systems have been relied upon to identify and schedule executory contracts on each Debtor's Schedule G, and while the Debtors have devoted substantial internal and external resources to identifying and providing the requested information for as many executory contracts as possible and to ensuring the accuracy of Schedule G, inadvertent errors, omissions, or over-inclusions may have occurred. The Debtors do not make, and specifically disclaim, any representation or warranty as to the completeness or accuracy of the information set forth on Schedule G. The Debtors reserve all of their rights to dispute the validity, status, or enforceability of any contract, agreement, or lease set forth in Schedule G and to amend or supplement Schedule G as necessary. Certain contracts, agreements, and leases listed on Schedule G may have expired or may have been modified, amended, or supplemented from time to time by various amendments, restatements, waivers, estoppel certificates, letters, memoranda, and other documents, instruments, and agreements that may not be listed therein despite the Debtors' use of reasonable efforts to identify such documents. In addition, certain nondisclosure agreements and/or other confidential information have been omitted. The Debtors reserve all of their rights with respect to such agreements. Further, unless otherwise specified on Schedule G, each executory contract or unexpired lease listed thereon shall be deemed to include all exhibits, schedules, riders, modifications, declarations, amendments, supplements, attachments, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease, without respect to whether such agreement, instrument, or other document is listed thereon.

In some cases, the same supplier or provider appears multiple times on Schedule G. This multiple listing is intended to reflect distinct agreements between the applicable Debtor and such supplier or provider.

The Debtors are party to certain agreements titled as leases for cryptocurrency miners and other non-miner equipment (collectively, the "**Equipment Leases**"). Any known prepetition obligations of the Debtors pursuant to the Equipment Leases have been listed on Schedule D or Schedule E/F, as applicable. The underlying Equipment Lease agreements are listed on Schedule G. Nothing in the Schedules and Statements is or should be construed as an admission as to the determination of the legal status of any Equipment Lease, including the characterization of an Equipment Lease as a lease or an equipment financing, and the Debtors reserve all rights with respect thereto. The Debtors reserve all rights to dispute the secured status (or the validity of any asserted lien) of any Equipment Lease and all rights related thereto are expressly reserved.

In the ordinary course of business, the Debtors may have issued numerous purchase orders for supplies, product, and related items, which, to the extent such purchase orders constitute executory contracts, are not listed individually on Schedule G.  To the extent that goods were delivered under purchase orders prior to the Petition Date, vendors' Claims with respect to such delivered goods are included on Schedule E/F.  Similarly, in the ordinary course of business, the Debtors may have issued numerous statements of work or similar documents for services, which, to the extent such statements of work or similar documents constitute executory contracts, are not listed individually on Schedule G.  To the extent services were delivered under statements of work prior to the Petition Date, vendors' Claims with respect to such services are included on Schedule E/F.

As a general matter, certain of the Debtors' executory contracts and unexpired leases could be included in more than one category.  In those instances, one category has been chosen to avoid duplication.  Further, the designation of a category is not meant to be wholly inclusive or descriptive of the entirety of the rights or obligations represented by such contract.

Certain of the executory contracts and unexpired leases listed on Schedule G may contain certain renewal options, guarantees of payment, options to purchase, rights of first refusal, right to lease additional space, and other miscellaneous rights.  Such rights, powers, duties, and obligations are not set forth separately on Schedule G.  In addition, the Debtors may have entered into various other types of agreements in the ordinary course of their business, such as easements, rights of way, subordination, nondisturbance, and attornment agreements, supplemental agreements, amendments/letter agreements, title agreements, employment-related agreements, and confidentiality and non-disclosure agreements.  Such documents may not be set forth in Schedule G.

The Debtors reserve all of their rights, Claims, and causes of action with respect to the contracts and agreements listed on Schedule G, including the right to dispute or challenge the characterization or the structure of any transaction, document, or instrument related to a creditor's Claim, to dispute the validity, status, or enforceability of any contract, agreement, or lease set forth in Schedule G, and to amend or supplement Schedule G as necessary.  Inclusion of any agreement on Schedule G does not constitute an admission that such agreement is an executory contract or unexpired lease and the Debtors reserve all rights in that regard, including, without limitation, that any agreement is not executory, has expired pursuant to its terms, or was terminated prepetition.

In addition, certain of the agreements listed on Schedule G may be in the nature of conditional sales agreements or secured financings.  The presence of a contract or agreement on Schedule G does not constitute an admission that such contract or agreement is an executory contract or unexpired lease. The Debtors reserve all of their rights, claims, and causes of action with respect to the contracts and agreements listed on Schedule G, including the right to dispute or challenge the characterization or the structure of any transaction, or any document or instrument (including, without limitation, any intercreditor or intercompany agreement) related to a creditor's Claim.  Certain of the contracts, agreements, and leases listed on Schedule G may have been entered into by more than one of the Debtors.  Further, the specific Debtor obligor to

certain of the executory contracts or unexpired leases could not be specifically ascertained in every circumstance. In such cases, the Debtors used their best efforts to determine the correct Debtor's Schedule G on which to list such executory contract or unexpired lease.

In the ordinary course of business, the Debtors have entered into numerous contracts or agreements, both written and oral, regarding the provision of certain services on a month-to-month basis. To the extent such contracts or agreements constitute executory contracts, these contracts and agreements may not be listed individually on Schedule G.

Certain of the executory contracts may not have been memorialized and could be subject to dispute; executory agreements that are oral in nature have not been included in Schedule G.

Certain of the executory contracts and unexpired leases listed in Schedule G may have been assigned to, assumed by, or otherwise transferred to certain of the Debtors in connection with, among other things, acquisitions by the Debtors. The Debtors used their best efforts to determine the correct Debtor's Schedule G on which to list such executory contract or unexpired lease.

The Debtors generally have not included on Schedule G any insurance policies, the premiums for which have been prepaid. In the event that the Bankruptcy Court were to ever determine that any such prepaid insurance policies are executory contracts, the Debtors reserve all of their rights to amend Schedule G to include such policies, as necessary or appropriate. A description of the Debtors' insurance policies and insurance programs is included in the *Emergency Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Debtors to (A) Continue Insurance Programs and Surety Bonds, and (B) Pay Certain Obligations with Respect Thereto; (II) Granting Relief from Automatic Stay with Respect to Workers' Compensation Claims; and (III) Granting Related Relief* (Docket No. 13) (the "**Insurance Motion**") and the exhibits attached thereto.

### Specific Disclosures with Respect to the Debtors' Statements

1.  **SOFA Part 2, Question 3.**

    Severance for non-insiders is not considered regular employee compensation and is included.

2.  **SOFA Part 2, Question 4**.

    Includes payments to legal entities, including individuals and affiliates.

    For purposes of the Schedules and Statements, the Debtors defined "insiders" as such term is defined in section 101(31) of the Bankruptcy Code. Persons listed as "insiders" have been included for informational purposes only and the inclusion of them in the Schedules and Statements shall not constitute an admission that such persons are insiders for purposes of section 101(31) of the Bankruptcy Code. Moreover, the Debtors do not take any position with respect to: (i) any insider's influence over the control of the Debtors; (ii) the management responsibilities or functions of any such insider; (iii)

the decision-making or corporate authority of any such insider; or (iv) whether the Debtors or any such insider could successfully argue that he or she is not an "insider" under applicable law or with respect to any theories of liability or for any other purpose. Entities listed as "insiders" have been included for informational purposes and their inclusion shall not constitute an admission that those entities are insiders for purposes of section 101(31) of the Bankruptcy Code. As stated above, the listing of a party as an insider in the Schedules and Statements, is not intended to be, nor shall be, construed as a legal characterization or determination of such party as an actual insider and does not act as an admission of any fact, claim, right or defense, and all such rights, claims, and defenses are hereby expressly reserved.

Given the significant volume and ordinary course nature of these intercompany transactions, the Debtors may not have listed all intercompany transfers and transactions.

As described in the *Emergency Motion of Debtors for Entry of an Order (I) Authorizing Debtors to (A) Pay Prepetition Wages, Salaries, Employee Benefits, and Other Compensation, and (B) Maintain Employee Benefits Programs and Pay Related Obligations; and (II) Granting Related Relief* (Docket No. 6) (the "**Wages Motion**"), employees are generally granted restricted stock units ("**RSUs**") upon the commencement of their employment, which RSUs continue to vest through the term of their employment on four-year schedules. The Debtors have not included the vesting of previously granted RSUs for purposes of SOFA Part 2, Question 4. The Debtors, however, have included new grants of RSUs in SOFA Part 2, Question 4. For purposes of SOFA Part 2, Question 4, the RSUs are valued as of the Petition Date at $0 as they are granted in shares and not cash.

3.  **SOFA Part 2, Question 5**.

The Debtors return products in the ordinary course due to defect, or if the product is not needed. The Debtors did not list any of these types of ordinary course returns in response to SOFA Part 2, Question 5.

4.  **SOFA Part 2, Question 6**.

The Debtors routinely incur certain setoffs in the ordinary course of business, including postpetition setoffs. Setoffs in the ordinary course can result from various items including, but not limited to, intercompany transactions, pricing discrepancies, returns, warranties, coupons, refunds, and other disputes between the Debtors and their tenants and/or vendors. These routine setoffs are consistent with the ordinary course of business in the Debtors' industry, and, therefore, can be particularly voluminous, unduly burdensome, and costly for the Debtors to regularly document. Therefore, although such setoffs and other similar rights may have been accounted for when scheduling certain amounts, these ordinary course setoffs are not independently accounted for, and, as such, are excluded from the Schedules and Statements. Any setoff of a prepetition debt to be applied against the Debtors is subject to the automatic stay and must comply with section 553 of the Bankruptcy Code. The Debtors reserve all rights with respect thereto, including the right to amend the setoff amounts.

5.     **SOFA Part 3, Question 7.**

Although the Debtors believe they were diligent in their efforts, certain lawsuits and proceedings may have been excluded inadvertently in the Debtors' response to SOFA, Question 7.  Additionally, the Debtors may have causes of action against other parties that have not formally been commenced, and thus any such causes of action have not been included on SOFA Part 3, Question 7.  The Debtors reserve all of their rights to amend or supplement their response to SOFA Part 3, Question 7.

The Debtors reserve all of their rights and defenses with respect to any and all listed lawsuits and administrative proceedings.  The listing of such actions shall not constitute an admission by the Debtors of any liabilities or that the actions were correctly filed against the Debtors or any affiliates of the Debtors.  The Debtors also reserve their rights to assert that neither the Debtors nor any affiliate of the Debtors is an appropriate party to such actions or proceedings.

In the event that the Debtors discover additional information pertaining to these legal actions identified in response to SOFA Part 3, Question 7, the Debtors will use reasonable efforts to supplement the Statements in light thereof and reserve all rights to do so.

The response to this question excludes normal-course state audit activities.

6.     **SOFA Part 4, Question 9.**

The donations and/or charitable contributions listed in response to SOFA Part 4, Question 9 represent payments made to third parties during the applicable timeframe that were recorded as such within the Debtors' books and records.

7.     **SOFA Part 6, Question 11.**

All payments for services of any entities that provided consultation concerning debt counseling or restructuring services, relief under the Bankruptcy Code, or preparation of a petition in bankruptcy within one (1) year immediately preceding the Petition Date are listed on the applicable Debtors' response to SOFA Part 6, Question 11.  Certain professionals provided services in addition to restructuring related services; payments for such services have been excluded in response to SOFA Part 6, Question 11, to the extent reasonably practicable.  Additional information regarding the Debtors' retention of professional service firms is more fully described in individual retention applications and related orders, to the extent applicable.

On a postpetition basis, payments to certain professionals have been or will be made from the Debtors' segregated professional fee escrow account held by Core Scientific, Inc. on behalf of the Debtors on a consolidated basis.  Payments to certain other professionals are paid out of the main operating account held by Core Scientific Operating Company.  The Debtors believe that it would be an inefficient use of the assets of the Debtors' estates for the Debtors to allocate these payments on a Debtor-by-Debtor basis.  Accordingly, the Debtors have listed such payments on the SOFA of Core Scientific Operating Company.

8. **SOFA Part 13, Question 27**.

   No complete inventory results are maintained.

9. **SOFA Part 13, Question 30**.

   Payments to insiders: refer to SOFA Part 2, Question 4 for payments that would have otherwise been listed in here.

**Core Scientific Acquired Mining LLC**                                    **Case Number:**      **22-90342**

| **Part 1:** | **Income** |
|---|---|

## 1. Gross Revenue from business

☐ None

| Identify the Beginning and Ending Dates of the Debtor's Fiscal Year, which may be a Calendar Year | | | | | Sources of Revenue (Check all that apply) | Gross Revenue (Before Deductions and Exclusions) |
|---|---|---|---|---|---|---|
| **From the beginning of the fiscal year to filing date:** | From | 1/1/2022 MM/DD/YYYY | to | Filing date MM/DD/YYYY | ☑ Operating a business<br>☐ Other _____ | $61,843,803 |
| **For prior year:** | From | 1/1/2021 MM/DD/YYYY | to | 12/31/2021 MM/DD/YYYY | ☑ Operating a business<br>☐ Other _____ | $40,020,423 |

**Core Scientific Acquired Mining LLC**                                    **Case Number:**        **22-90342**

| Part 1: | Income |
|---------|--------|

**2. Non-business revenue**

Include revenue regardless of whether that revenue is taxable. Non-business income may include interest, dividends, money collected from lawsuits, and royalties. List each source and the gross revenue for each separately. Do not include revenue listed in line 1.

☑ None

|  | Description of Sources of Revenue | Gross Revenue (Before Deductions and Exclusions) |
|---|---|---|
| From _____ to _____<br>MM/DD/YYYY      MM/DD/YYYY | _____ | _____ |

**Core Scientific Acquired Mining LLC**                                    **Case Number:**        **22-90342**

| **Part 2:** | **List Certain Transfers Made Before Filing for Bankruptcy** |
|---|---|

### 3. Certain payments or transfers to creditors within 90 days before filing this case

List payments or transfers-including expense reimbursements-to any creditor, other than regular employee compensation, within 90 days before filing this case unless the aggregate value of all property transferred to that creditor is less than $7,575 (this amount may be adjusted on 04/01/25 and every 3 years after that with respect to cases filed on or after the date of adjustment).

☑ None

| Creditor's Name and Address | Dates | Total Amount or Value | Reasons for Payment or Transfer |
|---|---|---|---|
| 3.1    NONE | | | ☐ Secured debt<br>☐ Unsecured loan repayment<br>☐ Suppliers or vendors<br>☐ Services<br>☐ Other _____ |
| | **TOTAL** | **$0** | |

| | **TOTAL** | **$0** | |

**Core Scientific Acquired Mining LLC**　　　　　　　　　　　**Case Number:**　　**22-90342**

| Part 2: | List Certain Transfers Made Before Filing for Bankruptcy |
|---|---|

## 4. Payments or other transfers of property made within 1 year before filing this case that benefited any insider

List payments or transfers, including expense reimbursements, made within 1 year before filing this case on debts owed to an insider or guaranteed or cosigned by an insider unless the aggregate value of all property transferred to or for the benefit of the insider is less than $7,575 (this amount may be adjusted on 04/01/25 and every 3 years after that with respect to cases filed on or after the date of adjustment).  Do not include any payments listed in line 3.  Insiders include officers, directors, and anyone in control of a corporate debtor and their relatives; general partners of a partnership debtor and their relatives; affiliates of the debtor and insiders of such affiliates; and any managing agent of the debtor. 11 U.S.C. § 101(31).

☐ None

| | Insider's Name and Address and Relationship to Debtor | Dates | Amount | Reason for Payment |
|---|---|---|---|---|
| 4.1 | CORE SCIENTIFIC, INC.<br>CO-DEBTOR<br>2407 S. CONGRESS AVE<br>STE. E-101<br>AUSTIN, TX 78704 | 10/25/2022 | $5,000,000 | Intercompany transfer |
| | | 11/10/2022 | $3,000,000 | Intercompany transfer |
| | | 11/22/2022 | $1,000,000 | Intercompany transfer |
| | | 12/15/2022 | $650,000 | Intercompany transfer |
| | | 12/19/2022 | $300,000 | Intercompany transfer |
| | | 12/20/2022 | $100,000 | Intercompany transfer |
| | | 12/6/2022 | $1,000,000 | Intercompany transfer |
| | | 12/9/2022 | $300,000 | Intercompany transfer |
| | | 9/26/2022 | $3,411,325 | Intercompany transfer |
| | **TOTAL CORE SCIENTIFIC, INC.** | | **$14,761,325** | |

　　　　　　　　　　　　　　**TOTAL**　　**$14,761,325**

**Core Scientific Acquired Mining LLC**                    **Case Number:**       **22-90342**

| Part 2: | List Certain Transfers Made Before Filing for Bankruptcy |
|---|---|

### 5. Repossessions, foreclosures, and returns

List all property of the debtor that was obtained by a creditor within 1 year before filing this case, including property repossessed by a creditor, sold at a foreclosure sale, transferred by a deed in lieu of foreclosure, or returned to the seller.  Do not include property listed in line 6.

☑ None

| Creditor's Name and Address | Description of the Property | Date Action was Taken | Value of Property |
|---|---|---|---|
| 5.1    NONE |  |  | $0 |

|  |  | **TOTAL** | **$0** |

**Core Scientific Acquired Mining LLC**                                    **Case Number:**          **22-90342**

| Part 2: | List Certain Transfers Made Before Filing for Bankruptcy |
|---------|----------------------------------------------------------|

### 6. Setoffs

List any creditor, including a bank or financial institution, that within 90 days before filing this case set off or otherwise took anything from an account of the debtor without permission or refused to make a payment at the debtor's direction from an account of the debtor because the debtor owed a debt.

☑ None

| Creditor's Name and Address | Description of Action Creditor Took | Date Action Taken | Account Number | Amount |
|------------------------------|-------------------------------------|-------------------|----------------|--------|
| 6.1 NONE | | | | $0 |

|  |  |  | **TOTAL** | **$0** |
|--|--|--|-----------|--------|

**Core Scientific Acquired Mining LLC**                                    **Case Number:**         **22-90342**

**Part 3:**        **Legal Actions or Assignments**

### 7.  Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits

List the legal actions, proceedings, investigations, arbitrations, mediations, and audits by federal or state agencies in which the debtor was involved in any capacity - within 1 year before filing this case.

☐ None

| Caption of Suit and Case Number | Nature of Proceeding | Court or Agency and Address | Status of Case |
|---|---|---|---|
| 7.1  MEI PANG VS. CORE SCIENTIFIC, INC. ET AL.<br>22-CV-01191 | LITIGATION | US DISTRICT COURT, WESTERN DISTRICT OF TEXAS<br>501 WEST FIFTH STREET, SUITE 1100, AUSTIN, TX 78701 | ONGOING |
| 7.2  HARLIN DEAN VS. CORE SCIENTIFIC, INC. & CORE SCIENTIFIC ACQUIRED MINING LLC<br>D-1-GN-22-005325 | LITIGATION | 419TH JUDICIAL DISTRICT COURT, TRAVIS COUNTY TEXAS<br>1000 GUADALUPE ST, AUSTIN, TX 78701 | ONGOING |

**Core Scientific Acquired Mining LLC**                                    **Case Number:**        **22-90342**

| Part 3: | Legal Actions or Assignments |
|---------|------------------------------|

**8. Assignments and receivership**

List any property in the hands of an assignee for the benefit of creditors during the 120 days before filing this case and any property in the hands of a receiver, custodian, or other court-appointed officer within 1 year before filing this case.

☑ None

| Custodian's Name and Address | Court Name and Address | Case Title and Number | Date | Description of Property | Value |
|------------------------------|------------------------|-----------------------|------|-------------------------|-------|
| 8.1   NONE | | | | | |

**Core Scientific Acquired Mining LLC**                                    **Case Number:**        **22-90342**

| Part 4: | Certain Gifts and Charitable Contributions |
|---------|---------------------------------------------|

**9. List all gifts or charitable contributions the debtor gave to a recipient within 2 years before filing this case unless the aggregate value of the gifts to that recipient is less than $1,000**

☑ None

| Recipient's Name and Address | Recipient's Relationship to Debtor | Description of the Gifts or Contributions | Dates Given | Value |
|------------------------------|-----------------------------------|-------------------------------------------|-------------|-------|

9.1    NONE

**Core Scientific Acquired Mining LLC**                     **Case Number:**          **22-90342**

| Part 5: | Certain Losses |
|---------|----------------|

**10.  All losses from fire, theft, or other casualty within 1 year before filing this case.**

☑ None

| Description of Property | How Loss Occurred | Amount of Payments Received | Date of Loss | Property Value |
|-------------------------|-------------------|----------------------------|--------------|----------------|
| | | *If you have received payments to cover the loss, for example, from insurance, government compensation, or tort liability, list the total received.  List unpaid claims on Official Form 106A/B (Schedule A/B: Assets - Real and Personal Property).* | | |
| 10.1   NONE | | | | Undetermined |

**TOTAL**          **Undetermined**

**Core Scientific Acquired Mining LLC**                                    **Case Number:**        **22-90342**

| Part 6: | Certain Payments or Transfers |
|---------|-------------------------------|

## 11. Payments related to bankruptcy

List any payments of money or other transfers of property made by the debtor or person acting on behalf of the debtor within 1 year before the filing of this case to another person or entity, including attorneys, that the debtor consulted about debt consolidation or restructuring, seeking bankruptcy relief, or filing a bankruptcy case.

 None

| Who was Paid or Who Received the Transfer? Address | Email / Website | Who Made the Payment, if not Debtor? | If not Money, Describe any Property Transferred | Dates | Total Amount or Value |
|---|---|---|---|---|---|
| 11.1    NONE | | | | | $0 |

**Core Scientific Acquired Mining LLC**                                    **Case Number:**          **22-90342**

| **Part 6:** | Certain Payments or Transfers |
|---|---|

**12. Self-settled trusts of which the debtor is a beneficiary**

List any payments or transfers of property made by the debtor or a person acting on behalf of the debtor within 10 years
before the filing of this case to a self-settled trust or similar device.
Do not include transfers already listed on this statement.

☑ None

| Name of Trust or Device | Trustee | Describe any Property Transferred | Dates Transfers were Made | Total Amount / Value |
|---|---|---|---|---|
| 12.1    NONE | | | | $0 |

**Core Scientific Acquired Mining LLC**                              **Case Number:**     **22-90342**

| Part 6: | Certain Payments or Transfers |
|---|---|

### 13.  Transfers not already listed on this statement

List any transfers of money or other property - by sale, trade, or any other means - made by the debtor or a person acting on behalf of the debtor within 2 years before the filing of this case to another person, other than property transferred in the ordinary course of business or financial affairs.  Include both outright transfers and transfers made as security.  Do not include gifts or transfers previously listed on this statement.

☑ None

| Name and Address of Transferee, Relationship to Debtor | Description of Property | Date Transfer was Made | Total Amount or Value |
|---|---|---|---|
| 13.1    NONE |  |  | $0 |

|  |  | **TOTAL** | **$0** |

**Core Scientific Acquired Mining LLC**                                    **Case Number:**          **22-90342**

| Part 7: | Previous Locations |
|---------|--------------------|

### 14. Previous addresses

List all previous addresses used by the debtor within 3 years before filing this case and the dates the addresses were used.

☐ Does not apply

| Address | | Dates of Occupancy | |
|---------|--|--------------------|--|
| 14.1 | 200 E. 6TH STREET, SUITE 300, AUSTIN, TX 78701 | From: 3/16/2021 | To: 10/31/2021 |
| 14.2 | 210 BARTON SPRINGS ROAD, SUITE 300, AUSTIN, TX 78701 | From: 3/1/2022 | To: CURRENT |
| 14.3 | 3753 HOWARD HUGHES PKWY, SUITE 200, LAS VEGAS, NV 89169 | From: 11/25/2020 | To: 3/16/2021 |

**Core Scientific Acquired Mining LLC**  **Case Number:** **22-90342**

| Part 8: | Health Care Bankruptcies |
|---------|--------------------------|

### 15. Health Care bankruptcies

Is the debtor primarily engaged in offering services and facilities for:
- diagnosing or treating injury, deformity, or disease, or
- providing any surgical, psychiatric, drug treatment, or obstetric care?

☑ No. Go to Part 9.
☐ Yes. Fill in the information below.

| Facility Name and Address | Nature of the Business Operation, Including Type of Services the Debtor Provides | Location Where Patient Records are Maintained (if Different from Facility Address). If Electronic, Identify any Service Provider. | If Debtor Provides Meals and Housing, Number of Patients in Debtor's Care | How are Records Kept? |
|---------------------------|--------------------------------------------------------------------------------|--------------------------------------------------------------------------------------------------------------------------------|--------------------------------------------------------------------------|----------------------|
| 15.1   NONE | | | | ☐ Electronic<br>☐ Paper |

**Core Scientific Acquired Mining LLC**                                   **Case Number:**          **22-90342**

| Part 9: | Personally Identifiable Information |
|---------|-------------------------------------|

**16. Does the debtor collect and retain personally identifiable information of customers?**

☐ No.

☑ Yes. State the nature of the information collected and retained.          Billing Address; TIN

   Does the debtor have a privacy policy about that information?
   ☐ No
   ☑ Yes

**Core Scientific Acquired Mining LLC**                                    **Case Number:**        **22-90342**

## Part 9:        Personally Identifiable Information

**17. Within 6 years before filing this case, have any employees of the debtor been participants in any ERISA, 401(k), 403(b), or other pension or profit-sharing plan made available by the debtor as an employee benefit?**

☑ No. Go to Part 10.

Yes. Does the debtor serve as plan administrator?

☐ No. Go to Part 10.
☐ Yes.  Fill in below:

Describe: _____        EIN: _____

Has the plan been terminated?
☐ No
☐ Yes

**Core Scientific Acquired Mining LLC**                                    **Case Number:**          **22-90342**

| Part 10: | Certain Financial Accounts, Safe Deposit Boxes, and Storage Units |
|---|---|

### 18. Closed financial accounts

Within 1 year before filing this case, were any financial accounts or instruments held in the debtor's name, or for the debtor's benefit, closed, sold, moved, or transferred?

Include checking, savings, money market, or other financial accounts; certificates of deposit; and shares in banks, credit unions, brokerage houses, cooperatives, associations, and other financial institutions.

☑ None

| Financial Institution Name and Address | Last 4 Digits of Acct Number | Type of Account | Date of Closing | Last Balance |
|---|---|---|---|---|
| 18.1   NONE | | | | |

**Core Scientific Acquired Mining LLC**　　　　　　　　　　　　　**Case Number:**　　**22-90342**

| Part 10: | Certain Financial Accounts, Safe Deposit Boxes, and Storage Units |
|---|---|

**19. Safe deposit boxes**

List any safe deposit box or other depository for securities, cash, or other valuables the debtor now has or did have within 1 year before filing this case.

☑ None

| Depository Institution Name and Address | Names of Anyone with Access to it and Address | Description of the Contents | Does Debtor still have it? |
|---|---|---|---|
| 19.1　　NONE | | | ☐ No<br>☐ Yes |

**Core Scientific Acquired Mining LLC**                                    **Case Number:**          **22-90342**

| Part 10: | Certain Financial Accounts, Safe Deposit Boxes, and Storage Units |
|---|---|

**20. Off-premises storage**

List any property kept in storage units or warehouses within 1 year before filing this case. Do not include facilities that are in a part of a building in which the debtor does business.

☑ None

| Facility Name and Address | Names of Anyone with Access to it | Address | Description of the Contents | Does Debtor still have it? |
|---|---|---|---|---|
| 20.1   NONE | | | | ☐ No<br>☐ Yes |

**Core Scientific Acquired Mining LLC**                                    **Case Number:**          **22-90342**

| Part 11: | Property the Debtor Holds or Controls That the Debtor Does Not Own |
|---|---|

**21. Property held for another**

List any property that the debtor holds or controls that another entity owns. Include any property borrowed from, being stored for, or held in trust. Do not list leased or rented property.

☑ None

| Owner's Name and Address | Location of the Property | Description of the Property | Value |
|---|---|---|---|
| 21.1    NONE | | | |

**Core Scientific Acquired Mining LLC**                                      **Case Number:**        **22-90342**

| Part 12: | Details About Environmental Information |
|---|---|

For the purpose of Part 12, the following definitions apply:

- Environmental law means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium).
- Site means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.
- Hazardous material means anything than an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similary harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

**22. Has the debtor been a party in any judicial or administrative proceeding under any environmental law? Include settlements and orders.**

☑ No

☐ Yes. Provide details below.

| Case Title and Case Number | Court or Agency Name and Address | Nature of Proceeding | Status |
|---|---|---|---|
| 22.1   NONE | | | |

**Core Scientific Acquired Mining LLC**                                        **Case Number:**        **22-90342**

| **Part 12:** | **Details About Environmental Information** |
|---|---|

For the purpose of Part 12, the followig definitions apply:

- Environmental law means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium).

- Site means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.

- Hazardous material means anything than an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similarly harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

**23.  Has any governmental unit otherwise notified the debtor that the debtor may be liable under or in violation of an environmental law?**

☑ No
☐ Yes. Provide details below.

| Site Name and Address | Governmental Unit Name and Address | Environmental Law, if Known | Date of Notice |
|---|---|---|---|
| 23.1   NONE | | | |

**Core Scientific Acquired Mining LLC**                                          **Case Number:**     **22-90342**

| **Part 12:** | **Details About Environmental Information** |
|---|---|

For the purpose of Part 12, the followig definitions apply:

- Environmental law means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium).

- Site means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.

- Hazardous material means anything than an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similary harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

**24. Has the debtor notified any governmental unit of any release of hazardous material?**

☑ No
☐ Yes. Provide details below.

| Site Name and Address | Governmental Unit Name and Address | Environmental Law, if Known | Date of Notice |
|---|---|---|---|
| 24.1   NONE | | | |

**Part 13:**   **Details About the Debtor's Business or Connections to Any Business**

25. **Other businesses in which the debtor has or has had an interest**
   List any business for which the debtor was an owner, partner, member, or otherwise a person in control within 6 years before filing this case.
   Include this information even if already listed in the Schedules.

See organizational charts attached below.





As of 7/2/2019

Core Scientific, Inc. DE C-Corp
100%
American Special Transactions, LLC (DE LLC)
Dissolved 7.16.19
100%
IP Special Holdings, LLC (DE LLC)
100%
American Hosting & Co-Location Services, LLC NV LLC
100%
American Property Acquisitions, LLC DE LLC
100%
MPools Special Situations, LLC NV LLC
Dissolved 2.17.19
100%
American Special Transactions I, LLC (DE LLC)
Dissolved 7.16.19
100%
American Special Transactions II, LLC (DE LLC)
Dissolved 7.16.19
100%
Blockchain Equipment Solutions, LLC NV LLC
100%
Hosting & Co-Location Services I, LLC NV LLC
100%
MPools Services, LLC NV LLC
Dissolved 2.15.19
100%
Mpools IP, LLC NV LLC
Dissolved 2.15.19
100%
~~155 Palmer Lane, LLC~~
American Property Acquisitions I, LLC NC LLC
100%
~~Harshaw Road, LLC~~
American Property Acquisitions II, LLC NC LLC
100%
~~199 Cline Park, LLC~~
American Property Acquisitions III, LLC NC LLC
100%
American Property Acquisitions IV, LLC SC LLC
100%
American Property Acquisitions V, LLC SC LLC
100%
American Property Acquisitions VI, LLC (Georgia LLC
100%
American Property Acquisitions VII, LLC (Georgia LLC)
100%
American Property Acquisitions VIII, LLC (Ohio LLC)
Dissolved 7.2.19
100%
American Property Acquisitions IX, LLC (Ohio LLC)
Dissolved 7.2.19
100%
372 Wildwood Road, LLC NC LLC

**Core Scientific Acquired Mining LLC**                                    **Case Number:**        **22-90342**

| **Part 13:** | Details About the Debtor's Business or Connections to Any Business |
|---|---|

**26. Books, records, and financial statements**

26a. List all accountants and bookkeepers who maintained the debtor's books and records within 2 years before filing this case.

☑ None

| Name and Address | Dates of Service |
|---|---|
| 26a.1   NONE | From:          To: |

**Core Scientific Acquired Mining LLC**                                  **Case Number:**          **22-90342**

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

**26. Books, records, and financial statements**

26b. List all firms or individuals who have audited, compiled, or reviewed debtor's books of account and records or prepared a
financial statement within 2 years before filing this case.

☐ None

| Name and Address | Dates of Service | | |
|---|---|---|---|
| 26b.1 ERNST & YOUNG, LLP<br>200 PLAZA DRIVE<br>SECAUCUS, NJ  07094 | From: | 2018 | To: | 10/28/2022 |
| 26b.2 MARCUM, LLP<br>777 S. FIGUEROA STREET<br>SUITE 2900<br>LOS ANGELES, CA 90017 | From: | 10/24/2022 | To: | CURRENT |

**Core Scientific Acquired Mining LLC**                                    **Case Number:**          **22-90342**

**Part 13:**   **Details About the Debtor's Business or Connections to Any Business**

### 26. Books, records, and financial statements

26c. List all firms or individuals who were in possession of the debtor's books of account and records when this case is filed.

☐ None

| Name and Address | If any Books of Account and Records are Unavailable, Explain Why |
|---|---|
| 26c.1   STERLING, DENISE (CHIEF FINANCIAL OFFICER)<br>2407 S. CONGRESS AVE<br>STE. E-101<br>AUSTIN, TX 78704 | |

**Core Scientific Acquired Mining LLC**                                    **Case Number:**        **22-90342**

**Part 13:**   **Details About the Debtor's Business or Connections to Any Business**

### 26. Books, records, and financial statements

26d. List all financial institutions, creditors, and other parties, including mercantile and trade agencies, to whom the debtor issued a financial statement within 2 years before filing this case.

☑ None

| Name and Address |
| --- |
| 26d.1   NONE |

**Core Scientific Acquired Mining LLC**                                        **Case Number:**        **22-90342**

---

| **Part 13:** | **Details About the Debtor's Business or Connections to Any Business** |

---

### 27. Inventories

Have any inventories of the debtor's property been taken within 2 years before filing this case?

☑ No

☐ Yes. Give the details about the two most recent inventories.

| Name of the Person who Supervised the Taking of the Inventory | Name and Address of the Person who has Possession of Inventory Records | Date of Inventory | Dollar Amount | Basis |
|---|---|---|---|---|
| 27.1  NONE | | | | |

**Core Scientific Acquired Mining LLC**                                     **Case Number:**          **22-90342**

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

**28. List the debtor's officers, directors, managing members, general partners, members in control, controlling shareholders, or other people in control of the debtor at the time of the filing of this case.**

| Name and Address | Positition and Nature of any Interest | Percent of Interest, if any |
|---|---|---|
| 28.1 CORE SCIENTIFIC, INC.<br>2407 S. CONGRESS AVE<br>STE. E-101<br>AUSTIN, TX 78704 | DEBTOR PARENT | 100.00% |
| 28.2 DUCHENE, TODD<br>2407 S. CONGRESS AVE<br>STE. E-101<br>AUSTIN, TX 78704 | SECRETARY | |
| 28.3 FEINSTEIN, DARIN<br>2407 S. CONGRESS AVE<br>STE. E-101<br>AUSTIN, TX 78704 | DIRECTOR | |
| 28.4 HOLLINGSWORTH, JARVIS<br>2407 S. CONGRESS AVE<br>STE. E-101<br>AUSTIN, TX 78704 | DIRECTOR | 0.00% |
| 28.5 LEVITT, MICHAEL<br>2407 S. CONGRESS AVE<br>STE. E-101<br>AUSTIN, TX 78704 | PRESIDENT | |

**Core Scientific Acquired Mining LLC**                                              **Case Number:**          **22-90342**

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

**29.  Within 1 year before the filing of this case, did the debtor have officers, directors, managing members, general partners, members in control of the debtor, or shareholders in control of the debtor who no longer hold these positions?**

☐ No
☑ Yes. Identify below.

| Name and Address | Position and Nature of Interest | Period During Which Position Was Held | | | |
|---|---|---|---|---|---|
| 29.1  CURTIS, ALAN<br>2407 S. CONGRESS AVE<br>STE. E-101<br>AUSTIN, TX 78704 | FORMER CHIEF STRATEGY OFFICER | From: | 6/7/2021 | To: | 7/30/2021 |
| 29.2  TRZUPEK, MICHAEL<br>2407 S. CONGRESS AVE<br>STE. E-101<br>AUSTIN, TX 78704 | FORMER CHIEF FINANCIAL OFFICER | From: | 1/28/2022 | To: | 4/4/2022 |

**Core Scientific Acquired Mining LLC**                          **Case Number:**          **22-90342**

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

### 30. Payments, Distributions, or Withdrawals Credited or Given to Insiders

Within 1 year before filing this case, did the debtor provide an insider with value in any form, including salary, other compensation, draws, bonuses, loans, credits on loans, stock redemptions, and options exercised?

☑ No
☐ Yes. Identify below.

| Name and Address of Recipient and Relationship to Debtor | Amount | Dates | Reason for Providing the Value |
|---|---|---|---|
| 30.1    NONE | | | |
| TOTAL | $0 | | |

|  | | |
|---|---|---|
| TOTAL | $0 | |

**Core Scientific Acquired Mining LLC**                                    **Case Number:**          **22-90342**

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

**31.  Within 6 years before filing this case, has the debtor been a member of any consolidated group for tax purposes?**

☐ No
☑ Yes. Identify below.

| Name of Parent Corporation | Employer Identification Number of the Parent Corporation |
|---|---|
| 31. I   CORE SCIENTIFIC, INC | EIN:    86-1243837 |

**Core Scientific Acquired Mining LLC**                                    **Case Number:**      **22-90342**

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

**32.  Within 6 years before filing this case, has the debtor as an employer been responsible for contributing to a pension fund?**

☑ No

☐ Yes. Identify below.

| Name of Pension Fund | Employer Identification Number of the Pension Fund |
|---|---|
| 32. I     NONE | EIN: |

**Core Scientific Acquired Mining LLC**                           **Case Number:**        **22-90342**

| **Part 14:** | **Signature and Declaration** |

Warning -- Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.  18 U.S.C. §§ 152, 1341, 1519, and 3571.

I have examined the information in this Statement of Financial Affairs and any attachments and have a resonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.


**Executed on:**        February 3, 2023


**Signature:**     /s/ Michael Bros                                   Michael Bros, Senior Vice President of Capital Markets & Acquisitions
                                                                                  **Name and Title**


Are additional pages to the Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy (Official Form 207) attached?

[X] No

[ ] Yes