## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **CORE SCIENTIFIC, INC.,** *et al.*, | § | **Case No. 22-90341 (DRJ)** |
| | § | |
| **Debtors.** [1] | § | **(Jointly Administered)** |
| | § | |

## APPLICATION OF DEBTORS FOR ENTRY OF AN ORDER (I) AUTHORIZING THE EMPLOYMENT AND RETENTION OF DELOITTE TAX LLP AS TAX SERVICES PROVIDER EFFECTIVE AS OF JANUARY 16, 2023 AND (II) GRANTING RELATED RELIEF

> **IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING.  UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE ELECTRONICALLY AT HTTPS://ECF.TXSB.USCOURTS.GOV/ WITHIN TWENTY-ONE DAYS FROM THE DATE THIS MOTION WAS FILED.  IF YOU DO NOT HAVE ELECTRONIC FILING PRIVILEGES, YOU MUST FILE A WRITTEN OBJECTION THAT IS ACTUALLY RECEIVED BY THE CLERK WITHIN TWENTY-ONE DAYS FROM THE DATE THIS MOTION WAS FILED. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

Core Scientific, Inc. (**"Core"**) and its debtor affiliates in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**" and, together with their non-Debtor affiliates, the "**Company**"), respectfully represent as follows in support of this application (the "**Application**"):[2]

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (N/A); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisitions, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisition I, LLC (9717); and American Property Acquisitions, VII, LLC (3198). The Debtors' corporate headquarters and service address is 210 Barton Springs Road, Suite 300, Austin, Texas 78704.

[2] The facts and circumstances supporting the relief requested herein are set forth in the First Day Declaration (as defined herein).  Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the First Day Declaration.

## Background

1.      Commencing on December 21, 2023 (the "**Petition Date**"), each of the Debtors filed with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").  The Debtors continue to operate their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 1015-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Local Rules**").

3.      On January 9, 2023, the United States Trustee for Region 7 (the "**U.S. Trustee**") appointed an official committee of unsecured creditors (the "**Creditors' Committee**"). No trustee or examiner has been appointed in these chapter 11 cases.

4.      Information regarding the Debtors' business and capital structure and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Michael Bros in Support of the Debtors' Chapter 11 Petitions and First Day Relief* [Docket No. 5] (the "**First Day Declaration**").

## Jurisdiction

5.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

6.      By this Application, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Bankruptcy Local Rules 2014-1 and 2016-1, the Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A**

2

(the "**Proposed Order**"), (i) authorizing the employment and retention of Deloitte Tax LLP ("**Deloitte Tax**") to provide certain tax services in accordance with the terms and conditions set forth in: that certain engagement letter, dated January 16, 2023 for tax advisory services (the "**Engagement Letter**") and (ii) granting related relief.

7. In support of this Application, the Debtors submit the declaration of Kenneth Gerstel, a partner of Deloitte Tax (the "**Gerstel Declaration**"), attached hereto as **Exhibit B** and incorporated by reference herein. A copy of the Engagement Letter is also attached hereto as **Exhibit C**.

## Deloitte Tax's Qualifications

8. The Debtors seek to retain and employ Deloitte Tax to provide federal, state, and local income tax advisory services pursuant to the Engagement Letter. Deloitte Tax has significant experience in providing tax advisory services and has performed such services in large and complex chapter 11 cases for debtors throughout the United States. *See, e.g.*, *In re CBL & Assocs. Properties, Inc.*, No. 20-35226, (DRJ) (Bankr. S.D. Tex.); *In re Gavilan Resources, LLC*, No. 20-32656, (MI) (Bankr. S.D. Tex.); *In re Halcón Res. Corp.*, No. 19-34446, (DRJ) (Bankr. S.D. Tex.); *In re Bristow Grp. Inc.*, No. 19-32713 (DRJ) (Bankr. S.D. Tex.); *In re Vanguard Nat. Res., Inc.*, No. 19-31786 (DRJ) (Bankr. S.D. Tex.); *In re Parker Drilling Co.*, No. 18-36958 (MI) (Bankr. S.D. Tex.); *In re Gastar Expl., Inc.*, No. 18-36057 (MI) (Bankr. S.D. Tex.); *HGIM Holdings, LLC*, No. 18-31080 (DRJ) (Bankr. S.D. Tex.); *In re Vanguard Nat. Res.*, LLC, No. 17-30560 (MI) (Bankr. S.D. Tex.). Such experience renders Deloitte Tax well-qualified and able to provide services to the Debtors in a cost-effective, efficient, and timely manner. Deloitte Tax's services fulfill an important need and are not provided by any of the Debtors' other professionals.

9. Deloitte Tax has provided tax services to the Company since approximately January 2019. In providing such prepetition professional services to the Company, Deloitte Tax

is familiar with the Debtors and their businesses, including the Debtors' financial affairs, debt structure, operations, and related matters. Having worked with the Debtors' management, Deloitte Tax has developed relevant experience and knowledge regarding the Debtors that will assist it in providing effective and efficient services during these chapter 11 cases. Accordingly, Deloitte Tax is both well-qualified and able to provide the services for the Debtors in the above-captioned chapter 11 cases in an efficient and timely manner.

**Scope of Services**

10.     Subject to this Court's approval of the Application, and as set forth more fully in the Gerstel Declaration and the Engagement Letter, Deloitte Tax has agreed to provide professional services to the Debtors pursuant to the terms and conditions of the Engagement Letter, as requested by the Debtors and agreed to by Deloitte Tax, as follows:

a) Deloitte Tax has agreed to provide certain tax services in connection with the Debtors' debt restructuring, as follows:

   i. Participate in meetings or calls necessary to assist the Debtors with their evaluation of tax considerations of the restructuring events;

   ii. Advise the Debtors as they consult with their legal and financial advisors on the cash tax effects of restructuring and bankruptcy and the post-restructuring tax profile, including transaction costs and/or plan of reorganization tax costs, and the cash tax effects of a chapter 11 filing and emergence transaction, including obtaining an understanding of Debtors' financial advisors' valuation model and disclosures to consider the tax assumptions contained therein;

   iii. Advise the Debtors regarding the restructuring and bankruptcy emergence process from a tax perspective, including analyzing various structuring alternatives, the tax workplan, modification of debt and intercompany debt;

   iv. Advise the Debtors on the cancellation of debt income for tax purposes under Internal Revenue Code ("**IRC**") section 108, including cancellation of debt income generated from a restructuring, bankruptcy emergence transaction, and/or modification of the debt;

4

v.  Advise the Debtors on post-restructuring tax attributes and post-
bankruptcy tax attributes (tax basis in assets, tax basis in subsidiary
stock and net operating loss carryovers) available under the applicable
tax regulations and the reduction of such attributes based on the Debtors'
operating projections; including a technical analysis of the effects of
Treasury Regulation Section 1.1502-28 and the interplay with IRC
sections 108 and 1017;

vi.  Assist the Debtors with any needed determinations pertaining to historic
or prospective IRC Section 382 ownership changes, ownership shifts, or
potential limitation for pre-Restructuring or post- Restructuring events in
connection with the Debtors' evaluation of their net operating losses
("**NOLs**"), their recovery, and any related protective orders or plans;

vii.  Advise the Debtors on net built-in gain or net built-in loss position at the
time of "ownership change" (as defined under IRC section 382),
including limitations on use of tax losses generated from post-
restructuring or post-bankruptcy asset or stock sales;

viii.  Advise the Debtors on the effects of tax rules under IRC sections
382(1)(5) and (1)(6) pertaining to the post-bankruptcy net operating loss
carryovers and limitations on their utilization, and the Debtors' ability to
qualify for IRC section 382(1)(5);

ix.  Assist the Debtors with U.S. federal income tax observations in
connection with any NOL protective orders or plans (i.e., orders
designed to help mitigate the risk of any further ownership changes)
recommended or drafted by legal counsel or the Debtors' financial
advisors;

x.  Assist the Debtors on the anticipated tax work plan for the
implementation of any desired or recommended legal entity realignment
or restructuring (mergers, liquidations, etc.) resulting from the
Restructuring Events, including domestic affiliates;

xi.  Advise the Debtors with their efforts to calculate tax basis in the stock in
each of the Debtors' subsidiaries or other entity interests and tax basis in
assets by legal entity;

xii.  Advise the Debtors as to the treatment of post-petition interest for
federal and state income tax purposes, including the applicability of the
interest limitations under IRC section 163(j);

xiii.  Advise the Debtors as to the deductibility of interest for any financing
anticipated in connection with the Restructuring Event including
application of temporary or permanent disallowance under e.g., section
163(j), 163(l), AHYDO, or other provisions of federal income tax law;

5

xiv. Advise the Debtors as to the state and federal income tax treatment of pre-petition and post-petition reorganization costs including restructuring-related professional fees and other costs, the categorization and analysis of such costs, and the technical positions related thereto;

xv. Advise the Debtors with their evaluation and modeling of the tax effects of liquidating, disposing of assets, merging or converting entities as part of the restructuring, including the effects on federal and state tax attributes, state incentives, apportionment and other tax planning;

xvi. Advise the Debtors on state income tax treatment and planning for restructuring or bankruptcy provisions in various jurisdictions including cancellation of indebtedness calculations, adjustments to tax attributes and limitations on tax attribute utilization;

xvii. Advise the Debtors regarding potential intercompany claims between the Debtors' affiliates, as well as relevant cross-border tax considerations related to the intercompany claims to the extent applicable;

xviii. Advise the Debtors on responding to tax notices and audits from various taxing authorities;

xix. Assist the Debtors with identifying potential tax refunds and advise the Debtors on procedures for tax refunds from tax authorities;

xx. Advise the Debtors on income tax return reporting of restructuring and/or bankruptcy issues and related matters;

xxi. As requested by the Debtors and as may be agreed to by Deloitte Tax, advise the Debtors regarding other state or federal, or international tax questions that may arise in the course of the engagement;

xxii. Perform analysis to assess whether the Debtors are considered a U.S. Real Property Holding Corporation ("USRPHC") under the Foreign Investment in Real Property Tax Act ("FIRPTA") and assist with compliance requirements, if requested;

xxiii. Assess the Debtors in their determination of potential withholding tax obligations of the Debtors with respect ot settlements in the bankruptcy to nonresidents;

xxiv. As requested by the Debtors, prepare tax technical memoranda describing tax technical issues and resulting conclusions with respect to tax analyses performed by Deloitte Tax regarding the contemplated transactions; and

xxv.  Assist the Debtors with documenting, as appropriate, the tax analysis, development of the Debtors' opinions, recommendation, observations, and correspondence for any proposed restructuring alternative tax issue or other tax matter described above.

b)  Deloitte Tax has agreed to provide tax advisory services in connection with the calculation of the Debtors' income tax provision under the provisions of ASC 740, *Income Taxes*, ("ASC 740") for the year ending December 31, 2022 and the interim periods ending March 31, 2023, June 30, 2023, and September 30, 2023.

c)  Deloitte Tax has agreed to provide tax return preparation services to the Debtors, consisting of the 2022 federal income tax return and tax return extension for the Debtors and their subsidiaries.

11.     The services performed by Deloitte Tax will not unnecessarily duplicate or overlap with the other services performed by the Debtors' other retained consultants and advisors. As set forth in the Gerstel Declaration, Deloitte Tax understands that the Debtors have retained and may retain additional professionals during the respective terms of the Engagement Letter, and Deloitte Tax agrees to work cooperatively with the Debtors to avoid unnecessary duplication of services.

## **Professional Compensation**

12.     As set forth in the Gerstel Declaration, and subject to Court approval, the Debtors understand that Deloitte Tax will file with the Court interim and final fee applications for allowance of compensation and reimbursement of expenses in accordance with the terms of the Engagement Letter, the Gerstel Declaration, the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and any other applicable orders of the Court, including any order approving this Application (to the extent compliance is not waived) and consistent with the proposed compensation set forth in the Engagement Letter.  In support of such fee applications, Deloitte Tax shall submit monthly invoices for services rendered and expenses incurred under each Engagement Letter.  Such invoices will contain reasonable detail consistent

with any rules, guidelines, and/or administrative orders promulgated by the Court that apply to the chapter 11 cases.

13.     Pursuant to the terms of the Engagement Letter, Deloitte Tax and the Debtors agreed to an hourly billing arrangement for the services contemplated to be performed thereunder based on the amount of professional time required and the experience level of the professionals involved, as set forth in the table below:

| Professional Level | Hourly Rates |
|---|---|
| Partner/Principal/Managing Director | $1,087 |
| Senior Manager | $956 |
| Manager | $813 |
| Senior | $701 |
| Staff | $592 |

14.     Hourly rates are revised periodically in the ordinary course of Deloitte Tax's business.  As set forth in the Gerstel Declaration, Deloitte Tax shall advise the Debtors of any new rates should it institute a rate-change during the chapter 11 cases.  Such changes will be noted on the invoices for the first time period in which a revised rate becomes effective.

15.     The Debtors are advised that the compensation terms contemplated by the Engagement Letter are reasonable and comparable to those generally charged by tax advisory service providers of similar stature to Deloitte Tax for similar engagements.  The fee structure summarized above is consistent with Deloitte Tax's customary billing practices for comparable engagements.  Moreover, the fee structure is consistent with and typical of arrangements entered into by Deloitte Tax and other firms with the rendering of comparable services to clients such as the Debtors.

16.     In addition, reasonable and necessary expenses, including travel, report production, delivery services, and other expenses incurred in providing Deloitte Tax's services under the Engagement Letter, will be included in the total amount billed.

17.     Deloitte Tax will charge the Debtors $55,000 for the preparation of the Company's federal income tax return, not including preparation of extension requests and quarterly estimates. In the event the Debtors request that Deloitte Tax assist with the preparation of state and local tax returns, Deloitte Tax will bill the Debtors $2,000 to $3,000 for each return based on the level of information requested on the applicable return.

18.     Some services incidental to the tasks to be performed by Deloitte Tax in these Chapter 11 Cases may be performed by personnel now employed by or associated with affiliates of Deloitte Tax, such as Deloitte & Touche LLP, Deloitte Financial Advisory Services LLP, Deloitte Transactions and Business Analytics LLP, and Deloitte Consulting LLP, or their respective subsidiaries, including subsidiaries located outside of the United States.  In particular, Deloitte Tax may subcontract a portion of services to its indirect subsidiary, Deloitte Tax India Private Limited ("**Deloitte Tax India**").  In such case, a specifically assigned team of personnel from Deloitte Tax India assists in such services under the supervision, and with the input, of personnel of Deloitte Tax.  The hourly rates charged to the clients by Deloitte Tax for services performed by Deloitte Tax India personnel are comparable to the rates charged for similar services by Deloitte Tax, but do not directly correlate with the hourly rates attributed to such services by Deloitte Tax India.  The connections of Deloitte Tax India (along with the connections of Deloitte Tax India and its other affiliates) to the Potential Parties-in-Interest searched by Deloitte Tax are set forth on **Schedule 2** to the Gerstel Declaration.

19.     Prior to the Petition Date, Deloitte Tax provided professional services to the Debtors. In the ninety (90) days prior to the Petition Date, the Debtors paid Deloitte Tax approximately $111,824 on account of invoices issued prior to such date.  As of the Petition Date, no amounts were outstanding with respect to the invoice(s) issued by Deloitte Tax prior to such date.

20.     Prior to the Petition Date, Deloitte & Touche LLP ("**Deloitte & Touche**"), an affiliate of Deloitte Tax, provided professional services to the Debtors.  In the ninety (90) days prior to the Petition Date, the Debtors paid Deloitte & Touche approximately $38,406 on account of invoices issued prior to such date.  As of the Petition Date, no amounts were outstanding with respect to the invoice(s) issued by Deloitte & Touche prior to such date.  Deloitte & Touche is anticipated to seek Court approval as a professional retained in the ordinary course of business with respect to any ongoing services performed for the Debtors.

21.     Prior to the Petition Date, Deloitte Transactions and Business Analytics LLP ("**DTBA**"), an affiliate of Deloitte Tax, provided professional services to the Debtors.  In the ninety (90) days prior to the Petition Date, the Debtors paid DTBA approximately $189,850 on account of invoices issued prior to such date.  As of the Petition Date, no amounts were outstanding with respect to the invoice(s) issued by DTBA prior to such date.

22.     The Debtors are advised that Deloitte Tax has received no promises regarding compensation in these chapter 11 cases other than in accordance with the Bankruptcy Code and as set forth in the Gerstel Declaration.  Deloitte Tax has no agreement with any nonaffiliated or unrelated entity to share any compensation earned in these chapter 11 cases.

### Indemnification Provisions

23.     As part of the overall compensation payable to Deloitte Tax under the terms of the Engagement Letter, the Debtors have agreed to certain indemnification provisions set forth

in the Engagement Letter (the "**Indemnification Provisions**"). The terms and conditions of the Engagement Letter, including the Indemnification Provisions, were agreed by the Debtors and Deloitte Tax at arm's length and in good faith. The Debtors believe that the Indemnification Provisions are appropriate and reasonable for the types of engagements covered by the Engagement Letter, both out-of-court and in chapter 11 cases.

24.     The Debtors respectfully submit that the Indemnification Provisions are reasonable and in the best interests of the Debtors, their estates, and creditors.

### Deloitte Tax's Disinterestedness

25.     To the best of the Debtors' knowledge, information, and belief, and except as may be provided in the Gerstel Declaration, Deloitte Tax and the partners, principals, and managing directors who are anticipated to provide services to the Debtors pursuant to the Engagement Letter do not have any connection with or any interest adverse to the Debtors, their significant creditors, or any other significant party-in-interest. Accordingly, based on the Gerstel Declaration, (i) Deloitte Tax is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtors and (ii) Deloitte Tax has no relationship to the Debtors, their significant creditors, certain other significant parties-in-interest, or to the attorneys that are known to be assisting the Debtors in their chapter 11 cases, except as stated in the Gerstel Declaration or in any attachment thereto. To the extent that any new relevant facts or relationships bearing on the matters described herein during the period of its retention are discovered or arise, Deloitte Tax will use reasonable efforts to file promptly a supplemental declaration as required by Bankruptcy Rule 2014(a).

## **Relief Requested Should Be Granted**

26.     The Debtors seek authority to retain and employ Deloitte Tax for certain tax advisory services under section 327 of the Bankruptcy Code, which provides that a debtor is authorized to employ professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the Debtors in carrying out the Debtors' duties under this title."  11 U.S.C. § 327(a).

27.     The Debtors seek approval of the Engagement Letter pursuant to section 328(a) of the Bankruptcy Code, which provides, in relevant part, that the Debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis."  11 U.S.C. § 328(a). Accordingly, section 328 of the Bankruptcy Code permits the compensation of professionals, on flexible terms that reflect the nature of their services and market conditions.   Moreover, Bankruptcy Rule 2014 requires that an application for retention include "specific facts showing the necessity for  the  employment,  the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, [and] any proposed arrangement for compensation."  Fed. R. Bankr. P. 2014.

28.     As further detailed in the Gerstel Declaration, to the best of the Debtors' knowledge, Deloitte Tax is a "disinterested person" with the meaning of section 101(14) of the Bankruptcy Code and does not hold an interest adverse to the Debtors or the Debtors' estates.  All of Deloitte Tax's fees and expenses are subject to approval of the Court in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and any applicable orders of the Court.   Additionally, the compensation terms set forth in the Engagement Letter are reasonable terms and conditions of employment and should be approved under section 328(a) of

12

the Bankruptcy Code.  The fee structures adequately reflect (i) the nature of the services to be provided by Deloitte Tax and (ii) fee and expense structures and indemnification provisions typically utilized by Deloitte Tax and other leading tax advisory services providers.

29.     Moreover, Deloitte Tax has significant experience and extensive knowledge in performing tax advisory services.  Deloitte Tax is familiar with the relevant financial information and other data maintained by the Debtors and is qualified and best positioned to provide tax advisory services to the Debtors in an efficient and cost effective manner.  Deloitte Tax has been providing valuable tax services to the Debtors since January 2019.  Their services have been particularly important to the Debtors' restructuring efforts due to the complex tax issues and the Debtors' compliance efforts in connection with their ongoing taxation obligations.

30.     The Indemnification Provisions in the Engagement Letter, as modified by the Proposed Order attached hereto, were fully negotiated between the Debtors and Deloitte Tax. The Debtors and Deloitte Tax believe that the Indemnification Provisions in the Engagement Letter are customary and reasonable for professional engagements both out-of-court and in chapter 11 cases.  Such terms of indemnification, as modified by the Proposed Order, reflect the qualifications and limits on such terms that are customary in this jurisdiction and are in substantially the same form as terms that have been approved by this Court in other recent cases.  *See, e.g. In re CBL & Assocs. Properties, Inc.*, No. 20-35226, (DRJ) (Bankr. S.D. Tex. Feb. 9, 2021) (Docket No. 888); *In re California Resources Corp.*, No. 20-33568 (DRJ) (Bankr. S.D. Tex. Oct. 26, 2020) (Docket No. 651); *In re Ultra Petroluem Corp.*, No. 20-32631 (MI) (Bankr. S.D. Tex. July 15, 2020) (Docket No. 425); *In re Tri-Point Oil & Gas Production Systems, LLC*, 20-31777 (DRJ) (Bankr. S.D. Tex. Aug. 27, 2020) (Docket No. 394); *In re Gavilan Resources, LLC*, 20-32656 (MI) (Bankr. S.D. Tex. Aug. 10, 2020) (Docket No. 274).

31.      Finally, the Debtors believe that employment of Deloitte Tax effective as of the January 16, 2023 is warranted under the circumstances of these chapter 11 cases.  The Court has discretion to issue an order approving the employment of an estate professional retroactively.  *See Fanelli v. Hensley (In re* Triangle *Chems., Inc.)*, 697 F.2d 1280, 1288–89 (5th Cir. 1983); Local Rule 2014-1(b).  Deloitte Tax has provided, and will continue to provide, valuable services to the Debtors.  Deloitte Tax has been working diligently to undertake its conflicts review in order to be able to submit the Gerstel Declaration in support of this Application.  To the best of the Debtors' knowledge, approval of this Application will not prejudice any parties in interest because, among other things, the services provided by Deloitte Tax will assist the Debtors in their restructuring efforts and tax compliance to the benefit of the Debtors' estates.

32.      Denial of the relief requested herein will deprive the Debtors of the assistance of a well-qualified tax professional who have served them since approximately January 2019.  Indeed, if the Debtors were forced to engage a new tax advisor who lacks a thorough understanding of the Debtors' businesses and the initiatives that have been implemented over the course of Deloitte Tax's extensive engagement, such change would mandate the commitment of significant resources to educate a replacement.  Accordingly, the Debtors believe that Deloitte Tax's retention and employment is in the best interests of the Debtors, the Debtors' estates, and their creditors and should be approved pursuant to the terms set forth in the Engagement Letter.

### Notice

33.      Notice of this Application will be served on any party entitled to notice pursuant to Bankruptcy Rule 2002 and any other party entitled to notice pursuant to Local Rule 9013-1(d).

[*Remainder of page intentionally left blank*]

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: February 16, 2023

Respectfully submitted,

**Core Scientific, Inc.**
(and each of its affiliated debtors as Debtors and Debtors in Possession)


*/s/ Todd Duchene*
Name: Todd Duchene
Title:   President and Chief Legal Officer

**<u>Certificate of Service</u>**

I hereby certify that on February 16, 2023 a true and correct copy of the foregoing document was
served by the Electronic Case Filing System for the United States Bankruptcy Court for the
Southern District of Texas.


                                              */s/ Alfredo R. Pérez*         
                                              Alfredo R. Pérez