IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| CORE SCIENTIFIC, INC., *et al.*, | § § | Case No. 22-90341 (DRJ) |
| Debtors.[1] | § § § | (Jointly Administered) |

**APPLICATION OF DEBTORS FOR
ENTRY OF AN ORDER (I) AUTHORIZING THE
EMPLOYMENT AND RETENTION OF DELOITTE FINANCIAL
ADVISORY SERVICES LLP AS FINANCIAL SERVICES PROVIDER
EFFECTIVE AS OF JANUARY 13, 2023 AND (II) GRANTING RELATED RELIEF**

> IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE ELECTRONICALLY AT HTTPS://ECF.TXSB.USCOURTS.GOV/ WITHIN TWENTY-ONE DAYS FROM THE DATE THIS MOTION WAS FILED. IF YOU DO NOT HAVE ELECTRONIC FILING PRIVILEGES, YOU MUST FILE A WRITTEN OBJECTION THAT IS ACTUALLY RECEIVED BY THE CLERK WITHIN TWENTY-ONE DAYS FROM THE DATE THIS MOTION WAS FILED. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.

Core Scientific, Inc. (**"Core"**) and its debtor affiliates in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**" and, together

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (N/A); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisitions, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisition I, LLC (9717); and American Property Acquisitions, VII, LLC (3198). The Debtors' corporate headquarters and service address is 210 Barton Springs Road, Suite 300, Austin, Texas 78704.

1

with their non-Debtor affiliates, the "**Company**"), respectfully represent as follows in support of this application (the "**Application**"):[2]

## Background

1. Commencing on December 21, 2022 (the "**Petition Date**"), each of the Debtors filed with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtors continue to operate their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 1015-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Local Rules**").

3. On January 9, 2023, the United States Trustee for Region 7 (the "**U.S. Trustee**") appointed an official committee of unsecured creditors (the "**Creditors' Committee**"). No trustee or examiner has been appointed in these chapter 11 cases.

4. Information regarding the Debtors' business and capital structure and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Michael Bros in Support of the Debtors' Chapter 11 Petitions and First Day Relief* [Docket No. 5] (the "**First Day Declaration**").

---

[2] The facts and circumstances supporting the relief requested herein are set forth in the First Day Declaration (as defined herein). Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the First Day Declaration.

**Jurisdiction**

5. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**Relief Requested**

6. By this Application, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Bankruptcy Local Rules 2014-1 and 2016-1, the Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"), (i) authorizing the employment and retention of Deloitte Financial Advisory Services LLP ("**Deloitte FAS**") to provide certain financial advisory services in accordance with the terms and conditions set forth in that certain engagement letter, dated January 13, 2023, for financial advisory services (the "**Engagement Letter**") and (ii) granting related relief.

7. In support of this Application, the Debtors submit the declaration of Michael C. Sullivan, a managing director of Deloitte FAS (the "**Sullivan Declaration**"), attached hereto as **Exhibit B** and incorporated by reference herein. A copy of the Engagement Letter is also attached hereto as **Exhibit C**.

**Deloitte FAS's Qualifications**

8. Deloitte FAS is an advisory services firm with offices across the United States. Deloitte FAS has significant experience in providing financial advisory services and has performed such services in large and complex chapter 11 cases on behalf of debtors throughout the United States. Such experience renders Deloitte FAS well-qualified and able to provide services to the Debtors during the pendency of these chapter 11 cases (the "**Chapter 11 Cases**") in a cost-

3

effective, efficient, and timely manner. Deloitte FAS's services fulfill an important need and are not provided by any of the Debtors' other professionals.

9. Having served as financial advisor in in previous large and complex chapter 11 cases on behalf of debtors, Deloitte FAS is both well-qualified and able to provide the services for the Debtors in the above-captioned chapter 11 cases in an efficient and timely manner.

### Scope of Services

10. Subject to this Court's approval of the Application, and as set forth more fully in the Sullivan Declaration and the Engagement Letter, Deloitte FAS has agreed to provide professional services to the Debtors pursuant to the terms and conditions of the Engagement Letters, as requested by the Debtors and agreed to by Deloitte FAS, as follows:

   a) ***Advice and Assistance with Accounting and Financial Reporting*:**

      i. Research the relevant accounting literature applicable to certain Debtors' transactions, as mutually agreed, and documentation or verbal communication of the results of that research for the Debtors' consideration in evaluating the appropriate accounting treatment, if requested;

      ii. Assist in the preparation of the documentation of the results of the transaction evaluations and accounting research using the Debtors' documentation methodology and templates, if requested;

      iii. Assist in the preparation of documentation of (1) new accounting policies and procedures or (2) enhancements to current accounting policies and procedures, as mutually agreed;

      iv. Advise management as it prepares accounting information and disclosures in support of public and/or private financial filings such as 10-K or 10-Q's or lender statements;

      v. Assist management as it responds to questions or other requests from the Debtors' external auditors regarding bankruptcy accounting and reporting matters.

   b) ***Advice and Assistance with Implementation of Accounting Guidance Related to the Chapter 11 filing and Planning for the Debtors' determination of and substantiation of the Fresh-Start***

4

***Balance Sheet under Accounting Standards Codification ("ASC") 852, Reorganizations:***

i. Advise management on scope of accounting and financial reporting changes introduced by its bankruptcy, pursuant to ASC 852;

ii. Provide technical accounting training for certain Debtors' personnel to enhance the Debtors' understanding of the scope of change introduced by the bankruptcy;

iii. Assist management in its development of an implementation approach for Fresh-Start Accounting, starting with any necessary training support and culminating in a strategy and work plan for the project;

iv. In the event of a mid-month emergence:

- Advise management on establishing appropriate one time cutoff procedures for the Debtors' consolidated balance sheet and the related consolidated statements of income, changes in stockholders' equity, and cash flows to facilitate successful financial reporting and internal control;

- Assist with planned procedures for determining appropriate allocations, estimates and potential systems implications/ reconfigurations, as needed.

v. Advise and provide recommendations to management in connection with its determination of plan of reorganization ("**POR**") adjustments necessary to record the impact of the POR to the books of entry of the appropriate legal entities. As part of this effort, Deloitte FAS will:

- work with accounting, legal and tax advisors to advise management as it determines the appropriate recoveries to allowed claimants and the allocation of resulting gains on extinguishment or other earnings impacts to separate legal entities within the Debtors' corporate structure;

- analyze the POR and other related documents to identify and advise management and provide recommendations on accounting adjustments resulting from POR provisions; and

- advise management in connection with its estimation of recoveries to claimants for accrual accounting purposes, including comparisons with the Debtors' claims database to estimate liabilities related to contingent, unliquidated and disputed claims.

    vi. Assist management in its determination of asset and liability fair values and other fresh- start adjustments as necessary to comply with the accounting and reporting requirements of ASC 852. This effort will be coordinated among bankruptcy, accounting, tax and valuation specialists.

- Advise and assist management as it records and substantiates adjustments to its opening fresh-start balance sheet, as applicable, including assisting the Debtors in its preparation of analyses and packaging of other documentation to support adjustments, including internal control considerations.

    vii. Advise management as it evaluates existing internal controls and/or develops new controls for Fresh-Start Accounting implementation.

c) ***Valuation Services***

    i. Assist management with its identification of tangible and intangible assets, as well as liabilities to be revalued at their fair value for Fresh Start Accounting purposes;

    ii. Analyze fair value estimates or other valuations performed by others, if any, including, without limitation, management, and assist management in identifying additional efforts required to address open items;

    iii. Assist management with its estimate of the fair value of specific assets and liabilities as specified by management, including performing valuations of certain assets and liabilities, or the identification of new intangibles; and

    iv. Advise management as it assigns assets, including, without limitation, goodwill, and liabilities to reporting units;

    v. Coordinate valuation information for auditor review; and

    vi. Advise management as it addresses company-specific issues surrounding value allocation to specific assets, legal entities, cost centers, operating segments and/or reporting units.

11. The services performed by Deloitte FAS will not unnecessarily duplicate or overlap with the other services performed by the Debtors' other retained consultants and advisors. As set forth in the Sullivan Declaration, Deloitte FAS understands that the Debtors have retained and may retain additional professionals during the term of the Engagement Letter, and Deloitte FAS agrees to work cooperatively with the Debtors to avoid unnecessary duplication of services.

6

**Professional Compensation**

12. As set forth in the Sullivan Declaration, and subject to Court approval, the Debtors understand that Deloitte FAS will file with the Court interim and final fee applications for allowance of compensation and reimbursement of expenses in accordance with the terms of the Engagement Letter, the Sullivan Declaration, the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and any other applicable orders of the Court, including any order approving this Application (to the extent compliance is not waived) and consistent with the proposed compensation set forth in the Engagement Letter. In support of such fee applications, Deloitte FAS shall submit monthly invoices for services rendered and expenses incurred under each Engagement Letter. Such invoices will contain reasonable detail consistent with any rules, guidelines, and/or administrative orders promulgated by the Court that apply to the chapter 11 cases.

13. Pursuant to the terms of the Engagement Letter, Deloitte FAS and the Debtors agreed to an hourly billing arrangement for the services contemplated to be performed thereunder based on the amount of professional time required and the experience level of the professionals involved, as set forth in the table below:

*Accounting and Financial Reporting Advisory Services*

| Professional Level | Hourly Rates |
|---|---|
| Partner/Principal/Managing Director | $700 |
| Senior Manager | $650 |
| Manager | $600 |
| Senior Associate | $475 - $575 |
| Associate | $375 - $460 |

*Accounting Matters under ASC 852*

| Professional Level | Hourly Rates |
|---|---|
| Partner/Principal/Managing Director | $850 - $1,050 |
| Senior Manager/ Senior Vice President | $725 - $775 |
| Manager/ Vice President | $610 - $660 |
| Senior Associate | $475 - $575 |
| Associate | $375 - $460 |

*Valuation Services*

| Professional Level | Hourly Rates |
|---|---|
| Partner/Principal/Managing Director | $700 |
| Senior Manager | $650 |
| Manager | $600 |
| Senior Associate | $475 - $575 |
| Associate | $375 - $460 |

14.     Hourly rates are revised periodically in the ordinary course of Deloitte FAS's business. As set forth in the Sullivan Declaration, Deloitte FAS shall advise the Debtors of any new rates should it institute a rate-change during the chapter 11 cases. Such changes will be noted on the invoices for the first time period in which a revised rate becomes effective.

15.     The Debtors are advised that the compensation terms contemplated by the Engagement Letter are reasonable and comparable to those generally charged by financial advisory service providers of similar stature to Deloitte FAS for similar engagements. The fee structure summarized above is consistent with Deloitte FAS's customary billing practices for comparable engagements. Moreover, the fee structure is consistent with and typical of arrangements entered into by Deloitte FAS and other firms with the rendering of comparable services to clients such as the Debtors.

16.     In addition, reasonable and necessary expenses, including travel, report production, delivery services, and other expenses incurred in providing Deloitte FAS's services under the Engagement Letter, will be included in the total amount billed.

17. Some services incidental to the tasks to be performed by Deloitte FAS in these Chapter 11 Cases may be performed by personnel now employed by or associated with affiliates of Deloitte FAS, such as Deloitte & Touche, Deloitte Tax, DTBA, and Deloitte Consulting, or their respective subsidiaries, including subsidiaries located outside of the United States. In particular, Deloitte FAS may subcontract a portion of services to its indirect subsidiary, Deloitte Financial Advisory Services India Private Limited ("**Deloitte FAS India**").

18. Deloitte FAS did not provide any prepetition services to the Debtors.

19. Prior to the Petition Date, Deloitte Tax LLP ("**Deloitte Tax**"), an affiliate of Deloitte FAS, provided professional services to the Debtors. In the ninety (90) days prior to the Petition Date, the Debtors paid Deloitte Tax approximately $111,824 on account of invoices issued prior to such date. As of the Petition Date, no amounts were outstanding with respect to the invoice(s) issued by Deloitte Tax prior to such date. The Debtors are anticipated to seek Court approval of Deloitte Tax's provision of professional services in these Chapter 11 Cases.

20. Prior to the Petition Date, Deloitte & Touche LLP ("**Deloitte & Touche**"), an affiliate of Deloitte FAS, provided professional services to the Debtors. In the ninety (90) days prior to the Petition Date, the Debtors paid Deloitte & Touche approximately $38,406 on account of invoices issued prior to such date. As of the Petition Date, no amounts were outstanding with respect to the invoice(s) issued by Deloitte & Touche prior to such date. Deloitte & Touche is anticipated to seek Court approval as a professional retained in the ordinary course of business with respect to any ongoing services performed for the Debtors.

21. Prior to the Petition Date, Deloitte Transactions and Business Analytics LLP ("**DTBA**"), an affiliate of Deloitte FAS, provided professional services to the Debtors. In the ninety (90) days prior to the Petition Date, the Debtors paid DTBA approximately $189,850 on

9

account of invoices issued prior to such date. As of the Petition Date, no amounts were outstanding with respect to the invoice(s) issued by DTBA prior to such date.

22. The Debtors are advised that Deloitte FAS has received no promises regarding compensation in these chapter 11 cases other than in accordance with the Bankruptcy Code and as set forth in the Sullivan Declaration. Deloitte FAS has no agreement with any nonaffiliated or unrelated entity to share any compensation earned in these chapter 11 cases.

### Indemnification Provisions

23. As part of the overall compensation payable to Deloitte FAS under the terms of the Engagement Letter, the Debtors have agreed to certain indemnification provisions set forth in the Engagement Letter (the "**Indemnification Provisions**"). The terms and conditions of the Engagement Letter, including the Indemnification Provisions, were agreed by the Debtors and Deloitte FAS at arm's length and in good faith. The Debtors believe that the Indemnification Provisions are appropriate and reasonable for the types of engagements covered by the Engagement Letter, both out-of-court and in chapter 11 cases.

24. The Debtors respectfully submit that the Indemnification Provisions are reasonable and in the best interests of the Debtors, their estates, and creditors.

### Deloitte FAS's Disinterestedness

25. To the best of the Debtors' knowledge, information, and belief, and except as may be provided in the Sullivan Declaration, Deloitte FAS and the partners, principals, and managing directors who are anticipated to provide services to the Debtors pursuant to the Engagement Letter do not have any connection with or any interest adverse to the Debtors, their significant creditors, or any other significant party-in-interest. Accordingly, based on the Sullivan Declaration, (i) Deloitte FAS is a "disinterested person" within the meaning of section 101(14) of

the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtors and (ii) Deloitte FAS has no relationship to the Debtors, their significant creditors, certain other significant parties-in-interest, or to the attorneys that are known to be assisting the Debtors in their chapter 11 cases, except as stated in the Sullivan Declaration or in any attachment thereto. To the extent that any new relevant facts or relationships bearing on the matters described herein during the period of its retention are discovered or arise, Deloitte FAS will use reasonable efforts to file promptly a supplemental declaration as required by Bankruptcy Rule 2014(a).

## Relief Requested Should Be Granted

26.     The Debtors seek authority to retain and employ Deloitte FAS for certain financial advisory services under section 327 of the Bankruptcy Code, which provides that a debtor is authorized to employ professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the Debtors in carrying out the Debtors' duties under this title." 11 U.S.C. § 327(a).

27.     The Debtors seek approval of the Engagement Letter pursuant to section 328(a) of the Bankruptcy Code, which provides, in relevant part, that the Debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a). Accordingly, section 328 of the Bankruptcy Code permits the compensation of professionals, on flexible terms that reflect the nature of their services and market conditions. Moreover, Bankruptcy Rule 2014 requires that an application for retention include "specific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the

selection, the professional services to be rendered, [and] any proposed arrangement for compensation." Fed. R. Bankr. P. 2014.

28. As further detailed in the Sullivan Declaration, to the best of the Debtors' knowledge, Deloitte FAS is a "disinterested person" with the meaning of section 101(14) of the Bankruptcy Code and does not hold an interest adverse to the Debtors or the Debtors' estates. All of Deloitte FAS's fees and expenses are subject to approval of the Court in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and any applicable orders of the Court. Additionally, the compensation terms set forth in the Engagement Letter are reasonable terms and conditions of employment and should be approved under section 328(a) of the Bankruptcy Code. The fee structures adequately reflect (i) the nature of the services to be provided by Deloitte FAS and (ii) fee and expense structures and indemnification provisions typically utilized by Deloitte FAS and other leading financial advisory services providers.

29. Moreover, Deloitte FAS has significant experience and extensive knowledge in performing financial advisory services. Their services are particularly important to the Debtors' restructuring efforts due to the complex financial issues and the Debtors' compliance efforts in connection with their ongoing financial obligations.

30. The Indemnification Provisions in the Engagement Letter, as modified by the Proposed Order attached hereto, were fully negotiated between the Debtors and Deloitte FAS. The Debtors and Deloitte FAS believe that the Indemnification Provisions in the Engagement Letter are customary and reasonable for professional engagements both out-of-court and in chapter 11 cases. Such terms of indemnification, as modified by the Proposed Order, reflect the qualifications and limits on such terms that are customary in this jurisdiction and are in substantially the same form as terms that have been approved by this Court in other recent cases.

31. Finally, the Debtors believe that employment of Deloitte FAS effective as of the January 13, 2023 is warranted under the circumstances of these chapter 11 cases. The Court has discretion to issue an order approving the employment of an estate professional retroactively. *See Fanelli v. Hensley (In re* Triangle *Chems., Inc.)*, 697 F.2d 1280, 1288–89 (5th Cir. 1983); Local Rule 2014-1(b). Deloitte FAS has provided, and will continue to provide, valuable services to the Debtors. Deloitte FAS has been working diligently to undertake its conflicts review in order to be able to submit the Sullivan Declaration in support of this Application. To the best of the Debtors' knowledge, approval of this Application will not prejudice any parties in interest because, among other things, the services provided by Deloitte FAS will assist the Debtors in their restructuring efforts to the benefit of the Debtors' estates.

32. Denial of the relief requested herein will deprive the Debtors of the assistance of a well-qualified financial professional. Accordingly, the Debtors believe that Deloitte FAS's retention and employment is in the best interests of the Debtors, the Debtors' estates, and their creditors and should be approved pursuant to the terms set forth in the Engagement Letter.

## Notice

33. Notice of this Application will be served on any party entitled to notice pursuant to Bankruptcy Rule 2002 and any other party entitled to notice pursuant to Local Rule 9013-1(d).

[*Remainder of page intentionally left blank*]

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: February 16, 2023

Respectfully submitted,

**Core Scientific, Inc.**
(and each of its affiliated debtors as Debtors and Debtors in Possession)

 /s/ Todd Duchene

Name: Todd Duchene
Title:  President and Chief Legal Officer

**Certificate of Service**

I hereby certify that on February 16, 2023, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                                             */s/ Alfredo R. Pérez*
                                                            Alfredo R. Pérez