**<u>Exhibit C</u>**

**Engagement Letter**

# Deloitte.

**Deloitte Financial Advisory Services LLP**
110 Morris Avenue
Morristown, NJ  07960
USA

Tel:  973-602-6000
Fax:  973-683-7459
www.deloitte.com

January 13, 2023

Denise Sterling
Chief Financial Officer
Core Scientific, Inc.
210 Barton Springs Road
Suite 300
Austin, Texas
78704

Re:  Core Scientific, Inc., et al. (Case No. 22-90341)

Dear Ms. Sterling,

Pursuant to your request, Deloitte Advisory[1] ("Advisor") is pleased to have the opportunity to assist Core Scientific, Inc. and its subsidiaries (collectively, the "Client" or "you") by providing the services described herein.  This letter, including Advisor' General Business Terms & Conditions attached as Appendix A, sets forth the agreement between Client and Advisor, effective as of January 13, 2023 (the "Engagement").

On December 21, 2022, the Client filed voluntary petitions to reorganize under chapter 11 of title 11 of the United States Code. The proceedings continue toward the confirmation of a plan of reorganization ("POR") with the goal of emerging from bankruptcy.  During the proceedings and through the emergence from chapter 11, the Client is required to issue financial statements that comply with US GAAP.  As a result, the Client desires to hire Advisor to assist Client with certain matters and compliance requirements under US GAAP.  In addition, upon emergence from chapter 11 the Client may be required to record the effects of its POR and remeasure its assets and liabilities under Fresh-Start accounting ("Fresh-Start Accounting"), if applicable, in its books of original entry as of the reporting date in conformity with all applicable accounting standards.  The Client desires to hire Advisor to assist it in its financial reporting during the proceedings and in the planning and implementation of its emergence accounting requirements.

## PROJECT OBJECTIVES

It is our understanding that Client is seeking assistance with: accounting and internal control matters affecting the Client, including its evaluation of the effect of new transactions under accounting principles generally accepted in the United States ("U.S. GAAP") and U.S. Securities and Exchange Commission (SEC) rules and regulations; evaluating the accounting and financial reporting changes introduced by its bankruptcy filing; advising management as it prepares accounting information and disclosures in relation to its financial reporting under US GAAP; assisting management with its determining the effects of its POR, remeasurement of its assets and liabilities under Fresh-Start Accounting rules (as applicable), recording the resulting transactions in its books of original entry, and determining other necessary emergence-related external reporting disclosures as of the appropriate reporting date in conformity with applicable accounting standards. We understand certain of these actions are necessary based on the financial reporting requirements with respect to ASC 852, *Reorganizations*, in particular with respect to financial reporting for the pendency of the chapter 11, the Client's emergence from chapter 11 and the adoption of Fresh-Start Accounting and other relevant accounting literature. All activities performed by the Advisor engagement team will be consultative in nature and subject to the review and approved by

---

[1] For purposes of this engagement agreement, Deloitte Advisory shall mean Deloitte Financial Advisory Services LLP ("DELOITTE FAS")

Ms. Denise Sterling
Chief Financial Officer
January 13, 2023

Client's management. The following activities constitute the scope of work Advisor, and its affiliates as subcontractors to Advisor.

*SCOPE OF SERVICES*

We will provide the following services ("Services"), as requested by the Client and agreed to by us:

- **Advice and Assistance with Accounting and Financial Reporting**

    - Research of the relevant accounting literature applicable to certain Client transactions, as mutually agreed, and documentation or verbal communication of the results of that research for Client's consideration in evaluating the appropriate accounting treatment, if requested.

    - Assist in the preparation of the documentation of the results of the transaction evaluations and accounting research using the Client's documentation methodology and templates, if requested.

    - Assist in the preparation of documentation of (1) new accounting policies and procedures or (2) enhancements to current accounting policies and procedures, as mutually agreed.

    - Advise management as it prepares accounting information and disclosures in support of public and/or private financial filings such as 10-K or 10-Q's or lender statements;

    - Assist management as it responds to questions or other requests from Client's external auditors regarding bankruptcy accounting and reporting matters.

- **Advice and Assistance with Implementation of Accounting Guidance Related to the Chapter 11 filing and Planning for Client's determination of and substantiation of the Fresh-Start Balance Sheet under ASC 852**

    - Advice management on scope of accounting and financial reporting changes introduced by its bankruptcy, pursuant to ASC 852

    - Provide technical accounting training for certain Client personnel to enhance Client's understanding of the scope of change introduced by the bankruptcy

    - Assist management in its development of an implementation approach for Fresh-Start Accounting, starting with any necessary training support and culminating in a strategy and work plan for the project.

    - In the event of a mid-month emergence:[2]

        - Advise management on establishing appropriate one time cutoff procedures for Client's consolidated balance sheet and the related consolidated statements of income, changes in stockholders' equity, and cash flows to facilitate successful financial reporting and internal control;

---

[2] Date on which the POR becomes effective and all material conditions precedent to the POR becoming binding are resolved.

Ms. Denise Sterling
Chief Financial Officer
January 13, 2023

- - Assist with planned procedures for determining appropriate allocations, estimates and potential systems implications / reconfigurations, as needed.
  - Advise and provide recommendations to management in connection with its determination of POR adjustments necessary to record the impact of the POR to the books of entry of the appropriate legal entities. As part of this effort, we will:
    - work with accounting, legal and tax advisors to advise management as it determines the appropriate recoveries to allowed claimants and the allocation of resulting gains on extinguishment or other earnings impacts to separate legal entities within the Client's corporate structure;
    - analyze the POR and other related documents to identify and advise management and provide recommendations on accounting adjustments resulting from POR provisions; and
    - advise management in connection with its estimation of recoveries to claimants for accrual accounting purposes, including comparisons with Client's claims database to estimate liabilities related to contingent, unliquidated and disputed claims.
  - Assist management in its determination of asset and liability fair values and other fresh-start adjustments as necessary to comply with the accounting and reporting requirements of ASC 852. This effort will be coordinated among bankruptcy, accounting, tax and valuation specialists.
    - Advise and assist management as it records and substantiates adjustments to its opening fresh-start balance sheet, as applicable, including assisting Client in its preparation of analyses and packaging of other documentation to support adjustments, including internal control considerations.
  - Advise management as it evaluates existing internal controls and/or develops new controls for Fresh-Start Accounting implementation.

- ❑ **Valuation Services**
  - Assist management with its identification of tangible and intangible assets, as well as liabilities to be revalued at their fair value[3] for Fresh Start Accounting purposes;
  - Analyze fair value estimates or other valuations performed by others, if any, including, without limitation, management, and assist management in identifying additional efforts required to address open items;

---

[3] "Fair value", as used herein is defined in Section 10-65 of Accounting Standards Codification 820, Fair Value Measurement, ("ASC 820") as the "price that would be received to sell an asset or paid to transfer a liability in an orderly transaction between market participants at the measurement date. Unless otherwise noted in the Deliverable, the type of value will reflect the "highest and best use" of each asset, group of assets, or business interest included in the Services. If the highest and best use of an asset, group of assets, or business interest is consistent with "value-in-use", then (1) the value of the asset or asset group will reflect the continuing use of the asset or asset group as an integral part of an ongoing business operation and the extent to which the asset or group of assets contributes to the profitability of that commercial enterprise and (2) the value of the business interest will reflect the continued operation of the business. If the highest and best use of an asset, group of assets, or business interest is consistent with "value-in-exchange", then the value of the asset or asset group will reflect its estimated standalone sale proceeds, while the value of the business interest will reflect the estimated proceeds derived from the discontinuation of the business and the sale of its assets. The terms "highest and best use", "value-in-use", and "value-in-exchange" are as defined in ASC 820. The value of each asset, asset group, or business interest will reflect the estimated exit price at which the asset, group of assets, or business interest would exchange in a hypothetical transaction occurring among market participants.

Ms. Denise Sterling
Chief Financial Officer
January 13, 2023

- o  Assist management with its estimate of the fair value of specific assets and liabilities as specified by management, including performing valuations of certain assets and liabilities, or the identification of new intangibles; and
- o  Advise management as it assigns assets, including, without limitation, goodwill, and liabilities to reporting units;
- o  Coordinate valuation information for auditor review.  Advise management as it addresses company-specific issues surrounding value allocation to specific assets, legal entities, cost centers, operating segments and/or reporting units.

ENGAGEMENT TEAM

The engagement team leaders and their anticipated roles are described below.

Michael Sullivan, a Managing Director of Deloitte Financial Advisory Services LLP's Turnaround & Restructuring Services Practice, will have overall responsibility for the Services, and will be responsible for oversight of Services related to the bankruptcy and fresh start reporting portion of the engagement.

Christopher Weber, a Partner in Deloitte & Touche LLP, will be responsible for the accounting and financial reporting advisory portion of the engagement.

Ella Karafiat, a Senior Manager in Deloitte & Touche LLP, will support Chris and lead the on the ground financial reporting advisory portion of the engagement.

Daniel Knappenberger, a Managing Director in Deloitte Transactions and Business Analytics LLP ("DTBA"), will lead the overall valuation Services portion of the engagement.

John Auyeung, a Senior Manager in DTBA, will support Mike and lead the on the ground efforts related to bankruptcy and fresh start reporting portion of the engagement.

The Advisor engagement team leaders will be assisted by other professionals as necessary, including professionals of Deloitte Consulting LLP and Deloitte Tax LLP who will be providing services hereunder as subcontractors to Advisor, to provide technical support and professional support as-needed during the course of this Engagement.

ENGAGEMENT FEES AND EXPENSES

Many of the tasks we expect to address in this Engagement are complex, and the scope for each prospective support task requires industry knowledge and/or specific technical experience.  As such, our professional fees are determined by the scope of the project, the experience of our professionals assigned to the Engagement, market conditions regarding supply and demand for our professionals with industry knowledge and specific technical experience and the time required to complete the project tasks at the applicable hourly rates.

The following tables provides the applicable hourly billing rates ("Applicable Rates") by classification of personnel with respect to the Engagement:

Ms. Denise Sterling
Chief Financial Officer
January 13, 2023

Accounting and Financial Reporting Advisory Services

| | |
|---|---|
| Partner/Principal/Managing Director | $700 |
| Senior Manager | $650 |
| Manager | $600 |
| Senior Associate | $475 - $575 |
| Associate | $375 - $460 |

Accounting Matters under ASC 852

| | |
|---|---|
| Partner/Principal/Managing Director | $850 – $1,050 |
| Senior Manager / Senior Vice President | $725 - $775 |
| Manager/ Vice President | $610 - $660 |
| Senior Associate | $475 – $575 |
| Associate | $375 – $460 |

Valuation Services

| | |
|---|---|
| Partner/Principal/Managing Director | $700 |
| Senior Manager | $650 |
| Manager | $600 |
| Senior Associate | $475 - $575 |
| Associate | $375 – $460 |

In the normal course of business, Advisor and its subcontractors revise their regular hourly rates to reflect changes in responsibilities, increased experience, and increased costs of doing business. Changes in regular hourly rates will be noted on the invoices for the first time period in which the revised rates become effective.

Advisor will bill for reasonable out of pockets expenses as well as travel time incurred in accordance with guidelines established in this proceeding.

In addition, we will be entitled to compensation for any time and expenses (including, without limitation, reasonable legal fees and expenses) that we may incur in considering or responding to discovery requests or other requests for documents or information, or in participating as a witness or otherwise in any legal, regulatory, or other proceedings, including, without limitation, those other than the instant matter, as a result of Advisor's performance of these Services.

Advisor intends to apply for compensation for professional services rendered and for reimbursement of expenses incurred, in accordance with applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the applicable local rules of bankruptcy procedure (the "Local Rules") and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under § 330 of the Bankruptcy Code. In this case, payment of fees and reimbursement of expenses will be subject to ultimate allowance and approval by the Bankruptcy Court. However, in the interim, the Client will ask the Bankruptcy Court for approval to allow Advisor to submit invoices in accordance with the Local Rules. Payment of these invoices will be made by the Client on an interim basis subject to approval and allowance upon application to and order by the Bankruptcy Court. Advisor intends to submit fee applications seeking approval of its fees and expenses on a quarterly basis. We will provide you with an invoice on a regular basis, with the invoice due and payable pursuant to the appropriate payment mechanism provided by the Bankruptcy Court.

Ms. Denise Sterling
Chief Financial Officer
January 13, 2023

Payments made hereunder shall be made to:

Bank of America
US ACH:         011900571
US WIRE:        026009593
Swift code:     BOFAUS3N
Account Name:   Deloitte Financial Advisory Services LLP
Account#        385015879857

<u>*LIMITATIONS OF THE SERVICES*</u>

The Services provided by Advisor to Client will <u>not</u> constitute (1) a fairness or solvency opinion or (2) a compilation, examination, review, or audit of any entity's information, financial or otherwise, historical or prospective, as described in the pronouncements on professional standards issued by the AICPA. In addition, we will not make any predictions or provide any opinions or other assurances concerning the outcomes of future events, including, without limitation, those that pertain to the operating results of any entity, the achievability of any business plan, the success of any investment, the recovery of any asset, or the ability to pay any debt. Additionally, we do not provide legal advice; Client will be responsible for all legal matters.

Client recognizes and acknowledges that by performing the Services described herein, Advisor is not acting in any Client management capacity and that Client has not asked Advisor to make, nor has Advisor agreed to make, any business decisions on behalf of Client. All decisions concerning the subject matter of this Engagement remain the sole responsibility of Client's management.

The Services to be provided by Advisor will be performed under the Standards for Consulting Services of the American Institute of Certified Public Accountants ("AICPA"). The specific tasks to be performed by Advisor will be established based on discussions with Client as the Engagement progresses and additional information is obtained during the course of the Engagement.

Client acknowledges and agrees that management is responsible for supplying complete and accurate information, assumptions, representations, and books and records upon which we must rely in providing our Services. In addition, with respect to these reorganization services, we will not audit or otherwise verify the materials provided to us, nor will we provide any assurances concerning the reliability, accuracy or completeness of any materials provided by management and our services cannot be relied upon to disclose errors or fraud should they exist. We have no responsibility for updating our services.

<u>*ADDITIONAL CLIENT ACKNOWLEDGEMENTS*</u>

- The Client will identify an appropriate individual to serve as the project manager, including overseeing the Services. The Client will be solely responsible for all decisions regarding its compliance with U.S. GAAP and SEC rules and regulations.

- The Client has informed its independent auditor, Marcum LLP, of the nature of the Services. Advisor has no responsibility for any disagreements between the Client and Marcum LLP, the Client's independent auditor, or any successor independent auditor, related to the Client's accounting or disclosure conclusions, whether or not such conclusions of the Client are related to the Services.

- The Client will be solely responsible for all decisions regarding the accounting treatment of any item or transaction and acknowledges that the Services do not include the recording of any amounts in the Client's books or records. All amounts derived from the performance of the

Ms. Denise Sterling
Chief Financial Officer
January 13, 2023

    Services will be reviewed and approved by, and will be the responsibility of, the Client's management.

- Management's purpose for engaging Advisor to perform this work is due to the need to supplement management's own resources in performing accounting analysis and to obtain guidance and insight to assist management in making its own determination as to appropriate application of accounting principles and not to obtain an opinion from Advisor as to such application.

- The Client will not seek Advisor's opinion, and Advisor will not provide any such opinion, on the application of accounting principles in connection with this engagement. Furthermore, Client management agrees that it will not represent to any third parties that it has obtained such opinion from Advisor.

- The Client will be solely responsible for the design and operation of effective internal controls and for complying with all applicable laws and regulations. In the performance of the Services, Advisor will not perform any evaluation of internal controls and procedures for financial reporting upon which the Client's management can base its assertion in connection with the Sarbanes-Oxley Act of 2002 or related rules or regulations. In addition, Advisor will not be providing any legal advice or conducting a legal review of any of the Client's documents, records, or policies.

- Except with respect to the Valuation Services herein, there will be no report or deliverables issued in connection with the Services described above. Although certain documentation may be initially drafted by Advisor's personnel for the Client's consideration, the Client will be solely responsible for reviewing and making ultimate decisions with respect to approval, potential modifications, and ultimate acceptance as well as any accounting or internal control conclusions reached. Oral discussions and informal communications, or any documentation and analysis prepared by Advisor in connection with the Scope of Services of this engagement letter shall merely represent the results of the engagement team's research and understanding of similar transactions in the industry and shall not represent an opinion or conclusion of Advisor on any accounting position or effectiveness of internal control.

- We will not perform in a capacity equivalent to that of management or an employee of the Client, including assuming any financial reporting oversight role; authorizing, executing, or consummating any transactions, or otherwise exercising authority on behalf of the Client or having the authority to do so; supervising employees of the Client in the performance of their activities; reporting to the board of directors on behalf of management of the Client; or providing any legal advice with respect to, or conducting a legal review of, any documents, records, or policies of the Client; preparing source documents or originating data, in electronic or other form, evidencing the occurrence of any transactions; or recording of any amounts in books and records of the Client].

- The Client will be solely responsible for the financial statements and all decisions regarding the accounting treatment of any item or transaction (including decisions regarding its compliance with U.S. GAAP and SEC rules and regulations. Furthermore, the Client shall be solely responsible for, among other things (1) designating a member of management with appropriate technical accounting and reporting knowledge to oversee the Services and to sustain meaningful and substantial involvement in all phases of this engagement; and (2) any forward-looking information (including any models, projections, forecasts, budgets, synergies, feasibility analyses, assumptions, estimates, methodologies, or bases for support). For the avoidance of doubt, we will be responsible for the performance of the Services.

- The Client agrees that any deliverables provided to the Client hereunder by Advisor may be disclosed to the Board of Directors and the Audit Committee of the Client only for their informational purposes and solely in their capacity as a member of such Board or Committee.

Ms. Denise Sterling
Chief Financial Officer
January 13, 2023

- Each party shall comply with all economic sanctions, export control, and import laws and regulations applicable to it in connection with this engagement letter. The parties recognize that such laws and regulations restrict the export and reexport of the Services and deliverables to jurisdictions subject to territorial U.S. economic sanctions (currently Crimea, Cuba, Iran, North Korea, Russia, Syria, and the Donetsk and Luhansk National Republics in Ukraine).

*MISCELLANEOUS*

This agreement, including the attached General Business Terms & Conditions, will constitute the entire agreement among the parties with respect to the subject matter hereof. In addition, as with other professionals in chapter 11 cases, Advisor's retention and the related terms thereof, including the engagement letter, will need to be approved by the Bankruptcy Court. Advisor may, in its sole discretion and without any liability arising therefrom, terminate this Engagement in the event that (a) a third party objects or threatens to object, or Advisor believes that a third party may object, in the form of an objection or otherwise, to Advisor's retention by Client on the terms and conditions set forth in this engagement letter, (b) a final order authorizing the employment of Advisor as financial advisors for Client is not issued by the Bankruptcy Court on or before sixty (60) days from the date hereof on the terms and conditions set forth herein or on such other terms and conditions as are satisfactory to Advisor in its sole discretion, or (c) the application of Client seeking such order is denied by the Bankruptcy Court. In any such event, Client hereby agrees to withdraw or amend, promptly upon Advisor's request, any application filed or to be filed with the Bankruptcy Court to retain Advisor's services. For purposes of the engagement letter, "Bankruptcy Court" shall mean the United Bankruptcy Court for the Southern District of Texas.

*DISCLOSURE OF RELATIONSHIPS*

As you know, Advisor is a large firm and we, as well as our affiliates, are engaged by new clients every day. Therefore, we cannot assure that, following the completion of our internal conflict search, an engagement for or involving your creditors or other parties-in-interest or their respective attorneys and accountants will not be accepted by Advisor or its affiliates. Should any potential conflict come to the attention of Advisor, we will endeavor to resolve such potential conflict and will determine what action needs to be taken. You agree that you will inform us of the parties-in-interest to this matter or of additions to, or name changes for, those parties-in-interest whose names you provided.

Further, Advisor and its affiliates may have provided professional services to, may currently provide professional services to, or may in the future provide such services to, the Client's creditors, other parties-in-interest, and their respective attorneys and accountants who are known to us to be assisting the parties-in-interest in this bankruptcy case in matters unrelated to the case. You agree that Advisor and its personnel will have no responsibility to you relating to such professional services, nor any responsibility to use or disclose information Advisor possesses by reason of such services, whether or not such information might be considered material to you.

*AUTHORIZATION*

We again thank you for the opportunity and look forward to assisting you with this project. If you have any questions regarding this engagement letter, please call me at (212) 436 – 4265. By signing

Ms. Denise Sterling
Chief Financial Officer
January 13, 2023

this letter, you represent and warrant that the Client has the authority to enter into this agreement on behalf of itself and its subsidiaries.

Very truly yours,

*Deloitte Financial Advisory Services LLP*

Deloitte Financial Advisory Services LLP

By: *Michael C. Sullivan*
Michael C. Sullivan, Managing Director

**Accepted and Agreed to by Core Scientific, Inc. and on behalf of itself and its subsidiaries:**

By: _____

Title: _____

Date: _____

Attachments:   Appendix A (General Business Terms & Conditions)

Ms. Denise Sterling
Chief Financial Officer
January 13, 2023

## *Appendix A*

### GENERAL BUSINESS TERMS & CONDITIONS

1. **Services**.

    a) The services (the "Services") provided by Deloitte Advisory ("Advisor") under the engagement letter to which these terms are attached (the "Engagement Letter") may include advice and recommendations, but Advisor will not make any decisions on behalf of Client in connection with the implementation of such advice and recommendations. For purposes of these terms and the Engagement Letter, "Client" shall mean Core Scientific, Inc. and its subsidiaries. Core Scientific, Inc. represents and warrants that it has the power and authority to execute this agreement on behalf of, and to bind, itself and its subsidiaries.

    b) Upon request of the Client and as agreed to by Advisor, Advisor may (1) provide testimony, (2) serve as a witness, (3) update Deliverables (as defined in Section 4 below) for any events or circumstances occurring subsequent to the date of such Deliverables, or (4) furnish additional work or services; however such services may require that the parties execute a separate, signed engagement agreement with terms and conditions that are acceptable to Advisor and Client. The Deliverables (as defined below) are complete only when presented in their entirety and only for the purpose stated therein. Furthermore, (1) neither the Services nor any Deliverables, in whole or in part, shall constitute a fairness or solvency opinion; (2) Advisor will not provide any legal advice or address any questions of law; and (3) the performance of the Services does not constitute an audit conducted in accordance with generally accepted auditing standards, an examination of internal controls, or other attestation or review services in accordance with standards established by the American Institute of Certified Public Accountants, the Public Company Accounting Oversight Board (the "PCAOB"), or other regulatory body.

2. **Payment**. Client will compensate Advisor under the terms of the Engagement Letter for the Services performed and expenses incurred, through the term or effective date of termination of this engagement. Subject to any administrative rules or guidelines established by the Bankruptcy Court, Advisor' invoices are due upon receipt. If payment is not received within thirty (30) days or such other period of time set by the Bankruptcy Court (i) such invoice shall accrue a late charge of the lesser of (a) 1½% per month or (b) the highest rate allowable by law, in each case compounded monthly to the extent allowable by law, and (ii) Advisor may also suspend or terminate Services. Client shall be responsible for all taxes imposed on the Services or on this engagement, other than income taxes imposed by employment withholding for Advisor' personnel or on Advisor' income or property. In addition, Advisor will be compensated for any time and expenses (including, without limitation, reasonable legal fees and expenses) that Advisor may incur in considering or responding to discovery requests or other requests for documents or information, or in participating as a witness or otherwise in any legal, regulatory, arbitration, or other proceedings (including, without limitation, those unrelated to the matters that are subject to this engagement) as a result of or in connection with the Services or the Engagement Letter.

3. **Term**. Unless terminated sooner as set forth below, this engagement shall terminate on the completion of the Services. Either party may terminate this engagement, with or without cause, by giving thirty (30) days prior written notice to the other party. In the event of a termination for cause, the breaching party shall have the right to cure the breach within the notice period. Advisor may terminate this engagement upon written notice to the Client if Advisor determines that the performance of any part of the Services would be in conflict with law or independence or professional rules.

4. **Advisor Technology, Property and Deliverables**.

    a) Advisor has rights in, and may, in connection with the performance of the Services, use, create, modify or acquire rights in works of authorship, materials, information, and other intellectual property (collectively, the "Advisor Technology").

    b) Upon full payment to Advisor hereunder, and subject to the terms and conditions contained herein, (i) the tangible items specified as deliverables or work product in the Engagement Letter (the "Deliverables") shall become the property of Client and (ii) Advisor hereby grants Client a royalty-free, fully paid-up, worldwide, nonexclusive license to use the Advisor Technology contained in the Deliverables in connection with the use of such Deliverables. Except for foregoing license grant, Advisor or licensors retain all rights in and to all Advisor Technology.

Ms. Denise Sterling
Chief Financial Officer
January 13, 2023

   c) To the extent Advisor Technology provided to Client hereunder constitutes inventory within the meaning of section 471 of the Internal Revenue Code, such Advisor Technology is licensed to the Client by Advisor as agent for Advisor Products Company LLC on the terms and conditions contained herein. The rights granted in this Section 4 do not apply to any Advisor Technology that is subject to a separate license agreement between Client and any third party including Advisor' affiliates.

5. **Limitation on Warranties.** This is a services engagement. Advisor warranties that it shall perform the Services in good faith and with due professional care. **DELOITTE FAS DISCLAIMS ALL OTHER WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.**

6. **Limitation on Damages and Indemnification.**

   a) Advisor, its subsidiaries and subcontractors, and their respective personnel shall not be liable to the Client for any claims, liabilities, or expenses relating to this engagement ("Claims") for an aggregate amount in excess of the fees paid by Client to Advisor pursuant to this engagement, except to the extent resulting from the bad faith or intentional misconduct of Advisor or its subcontractors. In no event shall Advisor, its subsidiaries or subcontractors, or their respective personnel be liable for any loss of use, data, goodwill, revenues or profits (whether or not deemed to constitute a direct Claim), or any consequential, special, indirect, incidental, punitive, or exemplary loss, damage, or expense relating to this engagement.

   b) Client shall indemnify and hold harmless Advisor, its subsidiaries and subcontractors, and their respective personnel from all Claims, except to the extent resulting from the recklessness, bad faith or intentional misconduct of Advisor or its subcontractors.

   c) In circumstances where any limitation on damages or indemnification provision hereunder is unavailable, the aggregate liability of Advisor, its subsidiaries and subcontractors, and their respective personnel for any Claim shall not exceed an amount that is proportional to the relative fault that the conduct of Advisor and its subcontractors bears to all other conduct giving rise to such Claim.

7. **Client Responsibilities, Third Party Information, and Assumptions.**

   a) Client shall cooperate with Advisor in the performance of the Services, including providing Advisor with reasonable facilities and timely access to data, information, and personnel of Client. With respect to the data and information provided by Client to Consultant or its subcontractors for the performance of the Services, Client shall have all rights required to provide such data and information, and shall do so only in accordance with applicable law and with any procedures agreed upon in writing. If Advisor is provided with access to or use of Client's facilities outside of the United States for the purpose of performing the Services, such facilities may not be dedicated solely for Advisor's use and Advisor will not be deemed a tenant of Client with respect to such facilities. Client shall be solely responsible for, among other things (a) the performance of its personnel and agents, (b) the accuracy and completeness of all data and information provided to Advisor for purposes of the performance of the Services, (c) making all management decisions, performing all management functions, and assuming all management responsibilities, (d) designating a competent management member to oversee the Services, (e) evaluating the adequacy and results of the Services, (f) accepting responsibility for the results of the Services, and (g) establishing and maintaining internal controls, including monitoring ongoing activities. Advisor's performance is dependent upon the timely and effective satisfaction of Client's responsibilities hereunder and timely decisions and approvals of Client in connection with the Services. Advisor shall be entitled to rely on all decisions and approvals of Client.

   b) If Advisor is provided with access to or use of Client's facilities outside of the United States for the purpose of performing the Services such facilities may not be dedicated solely for Advisor' use and Advisor will not be deemed a tenant of the Client with respect to such facilities.

   c) Advisor may use information and data furnished by parties other than Client and it agents if Advisor in good faith believes that such information and data is reliable. Advisor, however, shall neither be responsible for, nor provide any assurance regarding, the accuracy or completeness of any such information or data.

   d) Advisor shall be entitled to assume, without independent verification, the accuracy and completeness of any and all assumptions provided to Advisor by or on behalf of Client for purposes of the performance of the Services.

Ms. Denise Sterling
Chief Financial Officer
January 13, 2023

8. **Force Majeure.**  Neither party shall be liable for any delays or nonperformance directly or indirectly resulting from circumstances or causes beyond its reasonable control, including fire, epidemic or other casualty, act of God, strike or labor dispute, war or other violence, or any law, order, or requirement of any governmental agency or authority.

9. **Limitation on Actions**.  No action, regardless of form, relating to this engagement, may be brought by either party more than one year after the cause of action has accrued, except that an action for non-payment may be brought by a party not later than one year following the due date of the last payment owing to the party bringing such action.

10. **Independent Contractor**. Each party hereto is an independent contractor and neither party is, nor shall be considered to be, nor shall purport to act as, the other's agent, partner, fiduciary, joint venturer, or representative.

11. **Confidentiality and Internal Use.**

    a) All Services and Deliverables shall be solely for Client's benefit and are not intended to be relied upon by any person or entity other than Client.  Client shall not disclose the Services or the Deliverables or refer to the Services or Deliverables in any communication, made to any person or entity.  Client understands and agrees that Advisor is not an expert under the Securities Act of 1933, as amended, or the Securities Exchange Act of 1934, as amended, and will not consent to be a named expert in any Client filings with the SEC under the Securities Act of 1933, as amended, or the Securities Exchange Act of 1934, as amended, or otherwise.

    b) To the extent that, in connection with this engagement, either party (each, the "receiving party") comes into possession of any confidential information of the other (the "disclosing party"), it will not disclose such information to any third party without the disclosing party's consent using at least the same degree of care as it employs in maintaining in confidence its own confidential information of a similar nature, but in no event less than a reasonable degree of care.  The disclosing party hereby consents to the receiving party disclosing such information (1) to contractors providing administrative, infrastructure and other support services to the receiving party and subcontractors providing services in connection with this engagement, in each case, whether located within or outside of the United States,  provided that such contractors and subcontractors have agreed to be bound by confidentiality obligations similar to those in this Section  11(b); (2) as may be required by law, regulation, or to respond to governmental inquiries, or in accordance with applicable professional standards or rules, or in connection with litigation or arbitration pertaining hereto; or (3) to the extent such information (i) is or becomes publicly available other than as the result of a disclosure in breach hereof, (ii) becomes available to the receiving party on a nonconfidential basis from a source that the receiving party believes is not prohibited from disclosing such information to the receiving party, (iii) is already known by the receiving party without any obligation of confidentiality with respect thereto, or (iv) is developed by the receiving party independently of any disclosures made to the receiving party hereunder.  Nothing in this Section 11(b) shall alter Client's obligations under Section 11(a).  Advisor, however, may use and disclose any knowledge and ideas acquired in connection with the Services, to the extent they are retained in the unaided memory of its personnel.  Further, Advisor and its affiliates and related entities shall have the right to use Client's name and logo as part of a general client listing and as a specific citation in proposals or similar directed marketing efforts.

    c) No provision of these terms or the Engagement Letter is or is to be construed as a condition of confidentiality within the meaning of PCAOB Release 2005-014, Internal Revenue Code Sections 6011 and 6111 or the regulations thereunder, any related Internal Revenue Service guidance, or any other similar law, with respect to any Services, Deliverables or other materials of any kind provided hereunder relating to tax treatment or tax structure (collectively referred to as "Subject Tax Planning Advice").  Notwithstanding anything herein to the contrary, no provision of these terms or the Engagement Letter shall place any limitation on Client's disclosure of any Subject Tax Planning Advice.  The Services and Deliverables shall be solely for Client's benefit, and this engagement does not create privity between Advisor and any person or party other than Client ("third party").  Neither the Services nor any Deliverables are intended for the express or implied benefit of any third party.  Unless otherwise agreed to in writing by Advisor, no third party is entitled to rely in any manner or for any purpose on the Services or Deliverables.  In the event of any unauthorized reliance on any Subject Tax Planning Advice, Client agrees to indemnify and hold harmless Advisor, its subcontractors, and their respective personnel from all third-party claims, liabilities, costs, and expenses.

12. **Survival and Interpretation**.  All provisions which are intended by their nature to survive performance of the Services shall survive such performance, or the expiration or termination of this engagement. **Each of**

Ms. Denise Sterling
Chief Financial Officer
January 13, 2023

**the provisions of these terms shall apply to the fullest extent of the law, whether in contract, statute, tort (such as *negligence*), or otherwise, notwithstanding the failure of the essential purpose of any remedy.** Any references herein to the term "including" shall be deemed to be followed by "without limitation".

13. **Assignment and Subcontracting.** Except as provided below, neither party may assign, transfer, or delegate any of its rights or obligations (including, without limitation, interests or Claims) related to this Agreement or the Services without the prior written consent of the other party. Client hereby consents to Advisor subcontracting or assigning any portion of the Services to any affiliate or related entity, whether located within or outside of the United States. Services performed hereunder by Advisor' subcontractors shall be invoiced as professional fees on the same basis as Services performed by Advisor' personnel, unless otherwise agreed.

14. **Waiver of Jury Trial. THE PARTIES HEREBY IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM RELATING TO THIS ENGAGEMENT.**

15. **Non-exclusivity.** Advisor may (1) provide any services to any person or entity, and (2) develop for itself, or for others, any materials or processes, including those that may be similar to those produced as a result of the Services, provided that, Advisor complies with its obligations of confidentiality set forth hereunder.

16. **Entire Agreement, Amendment, and Notices.** These terms, and the Engagement Letter, including attachments, constitute the entire agreement between the parties with respect to this engagement; supersede all other oral and written representations, understandings, or agreements relating to this engagement; and may not be amended except by written agreement signed by the parties. In the event of any conflict or ambiguity between these terms and the Engagement Letter, these terms shall control. All notices hereunder shall be (a) in writing, (b) delivered to the representatives of the parties at the addresses first set forth in the Engagement Letter, unless changed by either party by notice to the other party, and (c) effective upon receipt.

17.     **Governing Law and Severability.** These terms, the Engagement Letter, including attachment, and all matters relating to this engagement shall be governed by, and construed in accordance with, the laws of the State of New York (without giving effect to the choice of law principles thereof), Any action based upon or arising out of this engagement or the Services shall be brought and maintained exclusively in any state or federal court, in each case located in New York County, the State of New York. Each of the parties hereby expressly and irrevocably submits to the jurisdiction of such courts for the purposes of any such action and expressly and irrevocably waives, to the fullest extent permitted by law, any objection which it may have or hereafter may have to the laying of venue of any such action brought in any such court and any claim that any such action has been brought in an inconvenient forum. If any provision of these terms or the Engagement Letter is unenforceable, such provision shall not affect the other provisions, but such unenforceable provision shall be deemed modified to the extent necessary to render it enforceable, preserving to the fullest extent permissible the intent of the parties set forth herein.