IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| CORE SCIENTIFIC, INC., *et al.*, | § § | Case No. 22-90341 (DRJ) |
| Debtors.[1] | § § § | Jointly Administered |

**BLOCKFI LENDING LLC'S LIMITED OBJECTION AND RESERVATION
OF RIGHTS WITH RESPECT TO EMERGENCY MOTION OF DEBTORS
FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE
DEBTORS TO (A) OBTAIN REPLACEMENT SENIOR SECURED NON-
PRIMING SUPERPRIORITY POSTPETITION FINANCING, (B) USE CASH
COLLATERAL, AND (C) PAY OFF EXISTING POSTPETITION
FINANCING FACILITY, (II) GRANTING LIENS AND PROVIDING
CLAIMS WITH SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS,
(III) GRANTING ADEQUATE PROTECTION TO THE PREPETITION
SECURED PARTIES, (IV) MODIFYING THE AUTOMATIC
STAY, (V) SCHEDULING A FINAL HEARING, AND
<u>(VI) GRANTING RELATED RELIEF</u>**

BlockFi Lending LLC ("<u>BlockFi</u>") files this limited objection and reservation of rights (this "<u>Limited Objection</u>") with respect to the *Emergency Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Replacement Senior Secured Non-priming Superpriority Postpetition Financing, (B) Use Cash Collateral, and (C) Pay Off Existing Postpetition Financing Facility, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Granting Adequate Protection to the Prepetition Secured Parties, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (N/A); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions, VII, LLC (3198). The Debtors' corporate headquarters and service address is 210 Barton Springs Road, Suite 300, Austin, Texas 78704.

4860-6164-4882 v.7

*Related Relief* [Doc. No. 389] (the "Replacement DIP Motion"). In support of this Limited Objection, BlockFi respectfully states as follows:

### Preliminary Statement[2]

1. BlockFi, as a secured equipment lender in these cases, does not oppose the Replacement DIP Motion, generally, or approval of the DIP financing described therein on a final basis, subject to an acceptable form of final DIP order. At both the interim and final stages, BlockFi has negotiated in good faith with the Debtors to resolve or limit, as much as possible, BlockFi's concerns regarding the form of interim and final orders approving the Replacement DIP Facility. However, BlockFi and the Debtors have reached an impasse on a single discrete issue – the compelled subordination of BlockFi's liens to the Carve-Out.

2. The Debtors have used and continue to use the BlockFi Collateral to generate significant value for the Debtors' estates. The Debtors are not making any form of adequate protection payments to BlockFi (or any of the other equipment lenders) in exchange for the Debtors' continued use of the BlockFi Collateral.[3] The only form of adequate protection being provided to BlockFi is in the form of the Equipment Lender Adequate Protection Claims and Liens. Despite the clear and substantial benefit to the estates from the continued use and operation of the BlockFi Collateral, the Debtors propose to retain the right to surcharge the BlockFi Collateral while at the same time subordinating, on a non-consensual basis, BlockFi's pre- and post-petition liens to the Carve-Out.

---

[2] Capitalized terms not otherwise defined in the Preliminary Statement shall have the meanings ascribed to such terms elsewhere in the Limited Objection.

[3] As further set forth below, BlockFi reserves all of its rights to seek additional adequate protection of its interest in the BlockFi Collateral.

3. Unlike the Debtors' convertible noteholders, to whom the Debtors have granted a section 506(c) surcharge waiver, the Debtors have declined to grant the equipment lenders a similar waiver in connection with the Debtors' post-petition use of the equipment lender collateral. Just as it is within the Debtors' discretion whether to provide a section 506(c) surcharge waiver, so too it is within BlockFi's discretion whether to agree to the subordination of its secured claim to the Carve-Out; neither may be compelled. The compelled subordination of BlockFi's liens and claims to the Carve-Out is particularly unwarranted here, where a professional fee escrow account has already been funded under the Interim Replacement DIP Order. For these reasons and those set forth more fully below, BlockFi respectfully requests that the Court sustain this Limited Objection with respect to those provisions of the Proposed Final Replacement DIP Order that purport to subordinate BlockFi's liens to the Carve-Out.

**Background**

4. On December 21, 2022 (the "Petition Date"), Core Scientific, Inc. ("Core") and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") each filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), thereby commencing the above-captioned bankruptcy cases (the "Chapter 11 Cases"). The Debtors continue to manage and operate their business as debtors-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108. The Office of the United States Trustee appointed an Official Committee of Unsecured Creditors in the Chapter 11 Cases on January 9, 2023. *See Notice of Appointment of Official Committee of Unsecured Creditors* [Doc. No. 256].

5. On the Petition Date, the Debtors filed, among other things, the *Declaration of Michael Bros in Support of the Debtors' Chapter 11 Petitions and First Day Relief* [Doc. No. 5] (the "First Day Declaration") and a motion seeking approval of debtor-in-possession financing

3

[Doc. No. 38] (the "First DIP Motion"). The First DIP Motion was approved on an interim basis by the Court [Doc. 130] (the "First Interim DIP Order").

6. On January 31, 2023, the Debtors filed the Replacement DIP Motion seeking entry of an order approving the Debtors' entry into a replacement DIP facility (the "Replacement DIP Facility"). On February 2, 2023, the Court entered an order authorizing the Debtors to enter into the Replacement DIP Facility on an interim basis [Doc. No. 447] (the "Interim Replacement DIP Order") and setting a final hearing on the Replacement DIP Motion for February 27, 2023.

### A. BlockFi's Claims Against the Debtors Are Secured by Purchase-Money Security Interests and Perfected Liens on the BlockFi Collateral.

7. The Debtors are in the business of digital asset mining. In the ordinary course of their business, the Debtors purchased, and BlockFi financed, certain Mining Equipment (defined below) for use in the Debtors' business operations.

8. Core and BlockFi are parties to that certain Facility and Security Agreement with an original commitment of up to $100 million dated as of December 30, 2021 (as amended, restated, or otherwise modified from time to time, "Facility Agreement 1"). Core and BlockFi are also parties to that certain Facility and Security Agreement with an original commitment of up to $10 million dated as of December 30, 2021 (as amended, restated, or otherwise modified from time to time, "Facility Agreement 2" and, together with Facility Agreement 1, the "Facility Agreements"). The Facility Agreements are cross-collateralized and subject to cross defaults.

9. Core used the financing provided by BlockFi under the Facility Agreements for the purchase of application-specific integrated circuit equipment for the mining of Bitcoin ("ASIC Miners") - specifically Bitmain S19 Antminers ("J" class generation) ASIC Miners (the "Mining Equipment"). As security for the financing provided under the Facility Agreements, Core pledged the Mining Equipment listed on Schedule 2 of each the Facility Agreements to BlockFi as

4

collateral to secure the Debtors' obligations under the Facility Agreements. Core currently owns 14,508 ASIC Miners subject to liens in favor of BlockFi. In addition to the ASIC Miners, Core granted BlockFi a first-priority purchase-money security interest in the following related assets (collectively with the ASIC Miners, the "BlockFi Collateral"):

(a) …

　　i. all additions, parts, attachments and accessories thereto;

　　ii. all documents of title, including any bills of lading, chattel paper, and instruments related thereto;

　　iii. all books and records related to the foregoing;

(b) all "Collateral" under and as defined in the Facility Agreements;

(c) all proceeds of each of the foregoing and all accessions to, substitutions, and replacements for the foregoing.

10. BlockFi properly perfected its security interests in the BlockFi Collateral by timely filing UCC-1 financing statements and related UCC-3 financing statement amendments with respect to the BlockFi Collateral.

**B. Prior to the Petition Date, the Debtors Defaulted Under the Facility Agreements.**

11. The Facility Agreements require, among other things, that Core make monthly principal payments to BlockFi in the approximate amounts of $2,951,898.55 under Facility Agreement 1 and $416,666.67 under Facility Agreement 2, in addition to monthly interest installment payments. As of the Petition Date, the total principal indebtedness owed under the Facility Agreements was not less than $53,913,043.47. Additionally, as of the Petition Date, the Debtors owed not less than $1,711,500.00 in outstanding interest under Facility Agreement 1 and

not less than $190,499.97 in outstanding interest under Facility Agreement 2, plus all other interest, fees, expenses and other obligations due and payable under the Facility Agreements.

12. Prior to the Petition Date, Core defaulted on its obligations under the Facility Agreements by, among other things, failing to make any required payments to BlockFi in September, October, and November 2022 (the "Payment Defaults"). *See, e.g.*, First Day Declaration ¶ 9 ("[T]he Debtors decided in late October 2022 not to make payments on certain of their equipment and other financings."). The Payment Defaults continued beyond any applicable cure period(s), thereby constituting Events of Default (as defined in the Facility Agreements).

13. BlockFi sent Core a Notice of Event of Default and Acceleration on November 3, 2022 (the "Acceleration Notice") notifying Core of, among other things, the acceleration of the secured obligations under the Facility Agreements and other related actions. On or about November 8, 2022, BlockFi and Core executed a letter agreement in which, among other things: (a) BlockFi rescinded the actions listed in the Acceleration Notice; (b) BlockFi reserved its rights and remedies; (c) Core reaffirmed its obligations under the Facility Agreements; (d) Core confirmed no factual or legal basis to challenge the validity or enforceability of BlockFi's liens; (e) Core confirmed it would segregate proceeds of the BlockFi Collateral; and (f) Core agreed to enter into an agreed adequate protection order with BlockFi.

### C. The DIP Financing and Proposed Adequate Protection

14. In the most recent form of proposed final DIP order provided by the Debtors (the "Proposed Final DIP Replacement Order"), the Debtors are proposing to provide to BlockFi and other similarly situated equipment lenders adequate protection in the form of (collectively, the "Equipment Lender Adequate Protection Claims and Liens"): (a) Equipment Lender Adequate Protection Claims (as defined in the Interim Replacement DIP Order) comprising superpriority administrative expense claims under section 507(b) of the Bankruptcy Code in the amount of any

aggregate diminution in value of prepetition equipment collateral and (b) the Equipment Lender Adequate Protection Liens (as defined in the Interim Replacement DIP Order) comprising automatically perfected post-petition liens and security interests in all DIP Collateral that are junior and subordinated to certain other liens as well as the "Carve-Out" (as defined in the Proposed Final Replacement DIP Order). The Proposed Final DIP Replacement Order purports to make BlockFi's prepetition liens on the BlockFi Collateral and the Equipment Lender Adequate Protection Liens subject and subordinate to the Carve-Out.

15. The Proposed Final DIP Replacement Order does not provide for the Debtors to make any periodic cash payments to BlockFi to compensate BlockFi for any diminution in the value of BlockFi's interests in the BlockFi Collateral. Nor does the Proposed Final DIP Replacement Order provide for a waiver of the Debtors' section 506(c) surcharge rights with respect to the BlockFi Collateral.

**Limited Objection**

16. Through this Limited Objection, BlockFi objects to the entry of a final order approving the Replacement DIP Facility to the extent such final order purports to subordinate BlockFi's prepetition liens in the BlockFi Collateral and/or BlockFi's Equipment Lender Adequate Protection Claims and Liens to the Carve-Out.

17. Carve-outs, by definition, are agreements by secured lenders to allow the use of some portion of their collateral to fund estate expenses. *See e.g. In re Molycorp, Inc.*, 562 B.R. 67, 76 (Bankr. D. Del. 2017) ("The carve-out is essentially an agreement by the secured creditor to subordinate its liens and claims to certain allowed administrative expenses, permitting such professionals' fees to come first in terms of payment from the estate's assets."); *In re NETtel Corp.*, 2020 Bankr. LEXIS 1153, at *44 (Bankr. D. D.C. Apr. 28, 2020) ("In Chapter 11 cases, the debtor-in-possession (exercising the powers of a trustee) occasionally obtains court approval of

7

postpetition financing pursuant to which the lender agrees (as a term approved by the court) that specified sums of the lent funds will be carved out to pay the debtor-in-possession's attorney's fees."); *In re U.S. Flow Corp.*, 332 B.R. 792, 796 (Bankr. W.D. Mich. 2005) ("a 'carve-out agreement' is generally understood to be 'an agreement by a party secured by all or some of the assets of the estate to allow some portion of its lien proceeds to be paid to others, i.e. to carve out of its lien position") (quoting *In re White Glove, Inc.*, 1998 WL 731611, at *6 (Bankr. E.D. Pa. Oct. 14, 1998)).

18. Without the consent of the secured creditor, neither a debtor nor a court can provide a carve-out to elevate the fees of estate professionals over the secured creditor's rights in its collateral. *See In re U.S. Flow*, 332 B.R. at 796 ("A true 'carve-out' requires the consent of the secured creditor, as '[t]he Code…establishes that a secured creditor's collateral may only be diminished to the extent that the secured creditor waives its right to the protections afforded by the Code, or to the extent that the expense priority directly confers a benefit on the secured creditor.") (quoting *Harvis Trien & Beck, P.C. v. Fed. Home Loan. Mortg. Corp.*, 153 F.3d 61, 68 (2d Cir. 1998)); *In re Blackwood Assocs., L.P.*, 153 F.3d 61, 68 (2d Cir. 1998) (stating that "absent an agreement to the contrary, a secured creditor's collateral may only be charged for administrative expenses, including attorney's fees, to the extent these expenses directly benefited that secured creditor," but "if a secured party consents to allowing such administrative expenses, that party may be liable for such expenses in the absence of conferred benefit.").

19. In the Proposed Final DIP Replacement Order, rather than providing a section 506(c) surcharge waiver to the equipment lenders in exchange for their consent to the Carve-Out, the Debtors seek to impose the Carve-Out against BlockFi's liens while also retaining the right to surcharge the BlockFi Collateral. This construct is not only contrary to established case law, it is

fundamentally unfair and unnecessary, particularly when there is an obvious solution available that balances the interests of both parties.

20. While BlockFi does not generally object to final approval of the Replacement DIP Facility, for the reasons set forth herein BlockFi does not consent to the subordination of any of its liens to the Carve-Out, and BlockFi objects to the Proposed Final DIP Replacement Order to the extent it provides for such non-consensual subordination.

### Reservation of Rights

21. This Limited Objection is submitted without prejudice to, and with full reservation of, BlockFi's rights, claims, defenses, and remedies, including the right to amend, modify, or supplement this Limited Objection, to seek discovery, to raise additional objections and to introduce evidence at any hearing related to this Limited Objection, and without in any way limiting any other rights of BlockFi to object to the Replacement DIP Motion, on any grounds, as may be appropriate. BlockFi reserves the right to amend or supplement this Limited Objection.

22. BlockFi further reserves the right to file a separate motion seeking entry of an order granting to BlockFi adequate protection pursuant to sections 361 and 363(e) of the Bankruptcy Code and other related relief.

Dated: February 21, 2023

Respectfully submitted,

By: /s/ Matt Ferris
Kenric D. Kattner
Texas State Bar No. 11108400
Arsalan Muhammad
Texas State Bar No. 24074771
**HAYNES AND BOONE, LLP**
1221 McKinney Street, Suite 4000
Houston, TX 77010
Telephone No.: (713) 547-2000
Facsimile No.: (713) 547-2600
Email: kenric.kattner@haynesboone.com
Email: arsalan.muhammad@haynesboone.com

- and -

Matt Ferris
Texas State Bar No. 24045870
**HAYNES AND BOONE, LLP**
2323 Victory Avenue, Suite 700
Dallas, TX 75219
Telephone No. (214) 651-5000
Facsimile No.: (214) 651-5940
Email: matt.ferris@haynesboone.com

- and -

Richard Kanowitz, (admitted *pro hac vice*)
**HAYNES AND BOONE, LLP**
30 Rockefeller Plaza, 26th Floor
New York, NY 10112
Telephone No.: (212) 659-7300
Facsimile No.: (212) 918-8989
Email: richard.kanowitz@haynesboone.com

*Counsel for BlockFi, Inc.*

## Certificate of Service

    I hereby certify that a true and correct copy of the foregoing document was served by electronic mail via the Court's ECF system to all parties authorized to receive electronic notice in this case on February 21, 2023.

*/s/ Matt Ferris*
Matt Ferris

4860-6164-4882 v.7