UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| CORE SCIENTIFIC, INC., *et al.*, | ) Case No. 22-90341 (DRJ) |
| Debtors.[1] | ) (Jointly Administered) |

**THE AD HOC EQUITY GROUP'S (1) OBJECTION TO THE AD HOC NOTEHOLDER GROUP'S EMERGENCY MOTION TO ADJOURN HEARING, AND (2) MOTION TO QUASH NOTICE OF DEPOSITION**

(Relates to Docket No. 569)

> **If you object to the relief requested, you must respond in writing. Unless otherwise directed by the court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within twenty-one days from the date this motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within twenty-one days from the date this motion was filed. Otherwise, the court may treat the pleading as unopposed and grant the relief requested.**

An ad hoc group (the "**Ad Hoc Equity Group**") of beneficial holders of the common stock of Core Scientific, Inc. ("**Core Scientific**" or the "**Company**" and, together with its affiliated debtors and debtors in possession, the "**Debtors**"), by and through its undersigned counsel hereby submits (1) its objection (this "Objection") to the Ad Hoc Noteholder Group's (the "**Ad Hoc Noteholder Group**") *Emergency Motion to Adjourn Hearing on Motion of Ad Hoc Group of Equity Holders of Core Scientific for Entry of an Order Directing the Appointment of an Official Committee of Equity Holders* [Docket No. 569] (the "**Emergency Motion**"), and (2) its motion

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6073); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions, VII, LLC (3198).  The Debtors' corporate headquarters and service address is 210 Barton Springs Road, Suite 300, Austin, Texas 78704.

(this "**Motion**") for the entry of an order, substantially in the form attached as **Exhibit A**, to quash the Ad Hoc Noteholder Group's February 24, 2023 Notice of Deposition of the Ad Hoc Equity Group (the "Notice"), as included in the discovery requests attached to the Emergency Motion as Exhibit A [Docket No. 569-1] (the "**Discovery Requests**").

## BACKGROUND

1. The Ad Hoc Noteholder Group seeks to adjourn the March 1, 2023, hearing on the Ad Hoc Equity Group's Motion to Appoint an Official Equity Committee. In its Emergency Motion, the Ad Hoc Noteholder Group asserts that the basis for the motion is its need to take discovery on "the factual predicate of the Debtors' decision [not to oppose an official equity committee] and the 'settlement' with the Equity Group." But the discovery it served goes far beyond that limited purpose – its requests for production and proposed deposition topics seek a broad range of documents and information on the merits of the Ad Hoc Equity Group's Motion. And the "factual predicate" for the Debtors' decision (1) is laid out in detail in the Debtors' Response filed on February 24, and (2) is uniquely within the knowledge of Debtors – and not the Ad Hoc Equity Group. It's clear that the Ad Hoc Noteholder Group simply sat on its hands until the day its objection was due with a strategy of delaying a hearing that has been scheduled for nearly one month so that it can impose unnecessary costs on the Ad Hoc Equity Group. Indeed, its Objection to the Ad Hoc Equity Group's motion ironically argues that the substantive work of an official equity committee would be a waste of the Debtors' funds, but it proposes to waste the Debtors' funds on the fees and costs entailed in taking discovery on an entirely irrelevant issue.

2. The Ad Hoc Noteholder Group has known of the Ad Hoc Equity Group's request for the appointment of an official equity committee since January, when the Ad Hoc Equity Group asked the U.S. Trustee to appoint one. Once the U.S. Trustee declined to do so, the Ad Hoc Equity Group made clear that it would seek the same relief from the Court. At the February 1, 2023,

2

hearing, the Ad Hoc Equity Group told the Court that it would be filing its motion in the near future. At the request of this Court, the Ad Hoc Equity Group's counsel conferred about the motion with the Ad Hoc Noteholder Group's counsel, who stated that the Ad Hoc Noteholders Group opposed an official equity committee.

3. Later that day, the Ad Hoc Equity Group asked the Ad Hoc Noteholder Group "for a brief call regarding our pursuit of an official committee."[2] The Ad Hoc Noteholder Group didn't respond. On February 3, the Ad Hoc Equity Group emailed the Ad Hoc Noteholder Group regarding the hearing date:

> Following up from Ron's email on Wednesday. Chambers has informed us that we may schedule the hearing on our motion at 2/28 at 11 a.m., the morning after the final DIP hearing. We understand this time works for the Debtors and will allow parties to minimize travel. We intend to file our motion within the next 2 hours or so (and certainly before close of business), noticing it for 2/28. Of course, we remain open to discuss a consensual resolution. Please let us know promptly if that date and time cause any issues.[3]

4. Again, the Ad Hoc Noteholder Group did not respond.[4]

5. On February 3, 2023, the Ad Hoc Equity Group filed its *Motion for Entry of an Order Directing the Appointment of an Official Committee of Equity Security Holders* [Docket No. 458] (the "**Equity Committee Motion**"). The Ad Hoc Equity Group reached out again to the Ad Hoc Noteholder Group, who responded that "our position remains the same as we discussed outside the courtroom." Exhibit D. The Ad Hoc Equity Group reached out to the Ad Hoc Noteholder Group yet again on February 4, stating that "If anyone on your team has questions about our motion, then we should organize a time for a call." *Id.* The Ad Hoc Noteholder Group did not respond.

---

[2] A copy of this email correspondence is attached as **Exhibit B**.
[3] A copy of this email correspondence is attached as **Exhibit C**.
[4] A copy of this email correspondence is attached as **Exhibit D**.

3

6. The Equity Committee Motion was not filed on an emergency basis. The Ad Hoc Noteholder Group's deadline to object to the Equity Committee Motion was February 24, 2023. And the hearing on the Equity Committee Motion was set for February 28, 2023. For the next three weeks, the Ad Hoc Noteholder Group was silent; it did not seek any discovery from the Ad Hoc Equity Group or suggest that the hearing needed to be adjourned. Then, on February 24, it served the Notice and document requests on the Ad Hoc Equity Group and asked the Ad Hoc Equity Group to adjourn the hearing.[5] The Notice sought a 30(b)(6) deposition on two general topics: (1) the Equity Committee Motion itself, and (2) communications between the Ad Hoc Equity Group and other stakeholders, including the Debtors, the Special Committee, and the Creditors' Committee, regarding the Equity Committee Motion. *See* Discovery Requests. Its document requests sought discovery on the same topics. *Id.* at 12–19. On the same day, the Ad Hoc Noteholder Group served similar discovery on the Debtors. *Id.* at 1–11.

7. The Ad Hoc Noteholder Group followed its eleventh-hour discovery demands with the Emergency Motion, insisting it needed expedited discovery on the "factual predicate of the Debtors' decision" to support an official equity committee.[6] Emergency Motion ¶ 3. But it does not, and cannot, explain (1) why the reasons Debtors decided to support an official equity committee are relevant, (2) why the discovery it served goes to the merits of the Equity Committee Motion and not just Debtors' decision, or (3) why the Ad Hoc Equity Group would have any information about Debtors' internal decision-making. The only question presented by the Equity Committee Motion is whether an official equity committee is appropriate under the governing five-factor test. That decision will rise and fall on the merits of the parties' positions – and the Ad Hoc

---

[5] A copy of this correspondence is attached as **Exhibit E**.
[6] While the Ad Hoc Noteholder Group purported to set the Emergency Motion for hearing on March 1, they did not provide the notice required by Local Rule 9013-1(i).

Noteholder Group had ample opportunity to prepare its objection and to seek any relevant discovery before its objection was due. The Court should not reschedule the hearing because the Ad Hoc Noteholder Group didn't do its homework.

8. The Court should quash the Notice for the same reasons. First, a deposition is unnecessary for the reasons stated above. Neither the Ad Hoc Equity Group nor the Debtors should incur the burden and expense of the proposed deposition.

9. Second, the Ad Hoc Noteholder Group did not provide reasonable notice of the deposition. It served the Notice on Friday, February 24, and set the deposition for Tuesday, February 28. And the proposed deposition date is one day before the March 1 hearing. This is not the "reasonable written notice" required by Rule 30(b)(1).

10. Third, the Ad Hoc Noteholder Group did not serve the deposition notice on all counsel of record, as required by Federal Rule of Civil Procedure 30(b)(1).

## OBJECTION TO THE EMERGENCY MOTION

11. The Ad Hoc Noteholder Group's motion doesn't even explain why it needs any discovery to prepare for the March 1 hearing. The Ad Hoc Noteholder Group professes to want discovery into why the Debtors now support the Ad Hoc Equity Group's Motion. The Emergency Motion is premised on its desire to "ascertain the factual predicate of the Debtors' decision and the 'settlement' with the Ad Hoc Equity Group." Emergency Motion ¶ 3. It contends that this "settlement" was "the event that precipitated the discovery." *Id.* ¶ 5. But the discovery it served goes well beyond that purported purpose. It's apparent that the Debtors' support for the Equity Committee Motion is a pretext the Ad Hoc Noteholder Group hopes will save it from its failure to seek discovery sooner.

12. But regardless of the Ad Hoc Noteholder Group's motives, the reasons the Debtors reached their decision are both irrelevant and uniquely within the Debtors' knowledge. The relevant question is whether an official equity committee is justified under applicable law. *See generally In re Pilgrim's Pride Corp.*, 407 B.R. 211, 216 (Bankr. N.D. Tex. 2009); *In re Sandridge Energy, Inc.*, Case No. 16-32488 (Bankr. S.D. Tex. Aug. 1, 2016) Hr'g Tr. at 94:10-12. The Emergency Motion does not explain why the Ad Hoc Noteholder Group needs discovery into the Debtors' decision to assess its own response on that question. It offers no facts challenging the agreement between the Ad Hoc Equity Group, the Debtors, and the Creditors' Committee (the "**Proposed Order**"),[7] nor authority justifying a delay of Wednesday's hearing. And if the Ad Hoc Noteholder Group believes that it is entitled to the details of the Debtors' legal analysis, the Debtors submitted a fourteen-page Response that thoroughly described why they now support an Official Equity Committee. *See Debtors' Response to Motion for Appointment of an Official Committee of Equity Security Holders* [Docket No. 570] (the "**Debtors' Response**"). Among other reasons, the Debtors recognized that "rising bitcoin prices and lower energy costs suggest the Debtors may be solvent (and, at the very least, are not 'hopelessly insolvent')." Debtors' Response ¶ 2. And shortly after the Debtors filed their response, the Official Committee of Unsecured Creditors (the "**Creditors' Committee**") filed its own statement explaining why it did not oppose the Equity Committee Motion. *See Statement of the Official Committee of Unsecured Creditors with Respect to Motion of the Ad Hoc Group of Equity Holders for Entry of an Order Directing the Appointment of an Official Committee of Equity Security Holders* [Docket No. 571].[8]

---

[7] *See* Exhibit A to the *Notice of Rescheduled Hearing Regarding Motion of Ad Hoc Group of Equity Holders of Core Scientific for Entry of an Order Directing the Appointment of an Official Committee of Equity Security Holders* [Docket No. 568-1].

[8] If the Court concludes that the Noteholders are entitled to seek discovery into the reasons why the Debtors decided to support an official equity committee, then the Ad Hoc Equity Group is equally entitled to seek discovery from the Noteholders on why they oppose such a committee.

6

13. As to the other topic – the Equity Committee Motion itself – the proof is in the pudding. The Ad Hoc Noteholder Group made clear from the beginning that it opposed an official equity committee. Over the last few weeks, the Ad Hoc Noteholder Group had ample time to review and assess the requests for relief in the Equity Committee Motion, conduct whatever analysis it thought appropriate, and request whatever discovery it thought necessary. Yet the Ad Hoc Noteholder Group didn't seek any discovery until hours before the objection deadline. It cannot credibly argue that it needs discovery on the motion now – and it doesn't. The Emergency Motion does not claim that the Ad Hoc Noteholder Group needs any discovery on the merits of the Equity Committee Motion. *See* Emergency Motion.

14. The Ad Hoc Noteholder Group's position is also deeply ironic. It told this Court that the costs of an official equity committee are not justified[9], yet it wants the Debtors and all other stakeholders to engage in unnecessary and expensive discovery that has nothing to do with the merits of the Equity Committee Motion. And while it will undoubtedly ask the Debtors to reimburse the money it spends on this exercise, it wants to ensure that the Ad Hoc Equity Group has to continue paying its own fees in order to participate in the Chapter 11 Cases. The Ad Hoc Noteholder Group's ultimate goal is clear: it wants to exert leverage over the Debtors in plan negotiations. The addition of another estate fiduciary will threaten that leverage, so it will do whatever it can to prevent an official equity committee.

**RESERVATION OF RIGHTS**

15. This Objection is submitted without prejudice to, and with full reservation of, the Ad Hoc Equity Group's rights, claims, defenses, and remedies, including the right to amend,

---

[9] *See Objection of the Ad Hoc Noteholder Group to the Motion of the Ad Hoc Group of Equity Holders of Core Scientific for Entry of an Order Directing the Appointment of an Official Equity Committee of Equity Security Holders* [Docket No. 572] ¶¶ 27–29.

7

modify, or supplement this Objection, to seek discovery, to raise additional objections and to introduce evidence at any hearing related to this Objection, and without in any way limiting any other rights of the Ad Hoc Equity Group to object to the Emergency Motion, on any grounds, as may be appropriate. The Ad Hoc Equity Group reserves the right to amend or supplement this Objection.

## MOTION TO QUASH

### JURISDICTION AND VENUE OVER MOTION TO QUASH

16. This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). Venue of this proceeding and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

### RELIEF REQUESTED

17. The Ad Hoc Equity Group seeks entry of an order quashing the Notice because (1) a deposition is unnecessary, (2) the Ad Hoc Noteholder Group did not provide reasonable notice of the deposition, and (3) the Ad Hoc Noteholder Group did not serve the Notice on all counsel of record.

### BASIS FOR RELIEF

**A. The Ad Hoc Noteholder Group does not need to take a deposition to prepare for Wednesday's hearing.**

18. The Court should prohibit discovery if the burden, annoyance, or expense of the proposed discovery outweighs its likely benefit "considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." *Montoya v. State Farm Lloyds*, 2015 WL 12940020, at *2 (S.D. Tex. Jan. 27, 2015) (quoting Fed. R. Civ. P. 26(b)(2)(C)).

19. That is the case here. For the reasons stated above, the Ad Hoc Noteholder Group does not need to depose an Equity Committee representative on the substance of the Equity Committee Motion – and it certainly doesn't need to ask the Ad Hoc Equity Group why the Debtors now support the Equity Committee Motion.

**B. The Ad Hoc Noteholder Group's last-minute notice does not give the Ad Hoc Equity Group a reasonable time to comply.**

20. A party who seeks to take an oral deposition must give "reasonable written notice" of the deposition to every other party. Fed. R. Civ. P. 30(b)(1). As a corollary, courts must quash a deposition notice when it "fails to allow reasonable time for compliance." *Id.* The Notice flunks this threshold requirement. The Ad Hoc Noteholder Group learned that the Debtors were supporting an official equity committee at least by February 22. Emergency Motion ¶ 3. It did not serve the Notice then. Instead, it waited until at 10:18 a.m. CT on Friday, February 24, and purported to set a corporate representative deposition for February 28 – two business days later. Courts within this District have held that similar notices did not allow a reasonable time for compliance. *See, e.g.*, *Duhaly v. Cincinnati Ins. Co.*, 2019 WL 3202307, at *1 (S.D. Tex. July 16, 2019) (citing to *Keybank Nat'l Ass'n v. Perkins Rowe Assocs., LLC*, 2010 WL 1252328, at *3 (M.D. La. Mar. 24, 2010) (holding that notices "served on February 8 for depositions to be taken on February 11–15" were not reasonable notice)); *Torralba v. Napolitano*, 2010 WL 11671745, at *4 (S.D. Tex. Feb. 9, 2010) (holding that a deposition notice served two business days before the deposition date was unreasonable).

21. The Notice is particularly unreasonable because it is for a 30(b)(6) deposition – meaning that the Ad Hoc Equity Group must present a representative on information known or reasonably knowable to it. *See* Fed. R. Civ. P. 30(b)(6). As a practical matter, the Ad Hoc Equity Group cannot reasonably be asked to identify, designate, prepare, and present a representative on

9

two business days' notice, particularly when it also needs to prepare for the March 1 hearing on the Equity Committee Motion.[10] *See, e.g.*, *Rickman v. Moore*, 2016 WL 9559817, at *2 (N.D. Tex. Aug. 3, 2016) (quashing notice of deposition for failure to provide adequate notice when company was given one day to prepare for 30(b)(6) deposition); *Torralba,* 2010 WL 11671745 at *4. And in light of the Ad Hoc Noteholder Group's failure to seek discovery for three weeks, there is no rational reason to impose the burden of expedited preparation of a witness on the Ad Hoc Equity Group. *See Davis v. Duncan Energy Partners L.P.*, 801 F. Supp. 2d 589, 598 (S.D. Tex. 2011) (denying plaintiffs' request for expedited discovery where they had not diligently sought discovery).

### C. The Ad Hoc Noteholder Group failed to serve the deposition notice on all parties.

22. Federal Rule of Civil Procedure 30(b)(1) requires a party noticing a deposition to "give written notice to every other party." To the Ad Hoc Equity Group's knowledge, the Ad Hoc Noteholder Group did not serve the Notice on the other parties. Accordingly, this Court should quash the Notice.

### CERTIFICATION

23. In accordance with Federal Rule 26, the Ad Hoc Equity Group's counsel certifies that counsel has made a reasonable effort to confer in good faith with counsel for the Ad Hoc Noteholder Group to resolve the issues raised in the Motion without success.

### NO PRIOR REQUEST

24. No previous request for the relief sought in this Motion has been made to this Court or any other court.

---

[10] On February 24, 2023, the hearing on the Equity Committee Motion was rescheduled from February 28 to March 1.

Dated: February 27, 2023         Respectfully submitted,

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

*/s/ Noelle M. Reed*
Noelle M. Reed
Attorney-in-Charge
State Bar No. 24044211
Federal Bar No. 27139
1000 Louisiana Street
Suite 6800
Houston, Texas 77002
Tel.: (713) 655-5116
Fax: (713) 483-9116
Email: Noelle.Reed@skadden.com

-and-

George N. Panagakis
*(Admitted pro hac vice)*
Ron E. Meisler
*(Admitted pro hac vice)*
Jennifer Madden
*(Application for pro hac vice admission forthcoming)*
155 North Wacker Drive
Chicago, Illinois 60606-1720
Telephone: (312) 407-0700
Fax: (312) 407-0411
Email: George.Panagakis@skadden.com
Email: Ron.Meisler@skadden.com
Email: Jennifer.Madden@skadden.com

*Attorneys for the Ad Hoc Equity Group*

## CERTIFICATE PURSUANT TO
## BANKRUPTCY LOCAL RULE 9013-1(g)(1)

Undersigned counsel certifies that on February 24, 2023, I advised counsel to the Ad Hoc Noteholder Group that the Ad Hoc Equity Group did not agree to expedited discovery but that I would be happy to discuss further on Monday, February 27. Counsel for the Ad Hoc Noteholder Group did not respond. On February 27, 2023, I sent a follow up email to counsel to the Ad Hoc Noteholder Group to attempt to resolve this objection. Counsel for the Ad Hoc Noteholder Group advised that the Ad Hoc Noteholder Group opposes this objection and Motion to Quash. Accordingly, the parties were not able to resolve the dispute.

                                          */s/ Noelle M. Reed*
                                          Noelle M. Reed

## CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing document to be served by electronic transmission via the Court's ECF system to all parties registered to receive electronic notice in this case.

>                    */s/ Noelle M. Reed*
>                    Noelle M. Reed