**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| | § | |
| In re: | § | **Chapter 11** |
| | § | |
| **CORE SCIENTIFIC, INC.,** *et al.,* | § | **Case No. 22-90341 (DRJ)** |
| | § | |
| | § | **(Jointly Administered)** |
| Debtors.[1] | § | |

**MOTION OF DEBTORS
FOR ENTRY OF ORDER APPROVING AND AUTHORIZING
<u>PAYMENTS UNDER NON-INSIDER KEY EMPLOYEE RETENTION PLAN</u>**

---

**IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE ELECTRONICALLY AT HTTPS://ECF.TXSB.USCOURTS.GOV/ WITHIN TWENTY-ONE DAYS FROM THE DATE THIS MOTION WAS FILED. IF YOU DO NOT HAVE ELECTRONIC FILING PRIVILEGES, YOU MUST FILE A WRITTEN OBJECTION THAT IS ACTUALLY RECEIVED BY THE CLERK WITHIN TWENTY-ONE DAYS FROM THE DATE THIS MOTION WAS FILED. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

---

Core Scientific, Inc. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), respectfully represent as follows in support of this motion (this "**Motion**"):

**<u>Preliminary Statement</u>**

1.  The Debtors commenced these chapter 11 cases with the goal of achieving a value-maximizing financial restructuring.  Since filing these cases approximately two months

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions, VII, LLC (3198).  The Debtors' corporate headquarters and service address is 210 Barton Springs Road, Suite 300, Austin, Texas 78704.

ago, the Debtors have obtained critical first-day relief; obtained interim debtor-in-possession financing and, subsequently, more favorable replacement debtor-in-possession financing; prepared and filed schedules of assets and liabilities and statements of financial affairs; regularly updated and communicated with the unsecured creditor's committee; rejected their executory contracts with Celsius Mining LLC, resulting in significant savings to the Debtors; received approval of bitcoin coupon sales bringing value to the estates; and continued to operate their mining facilities across the country.

2.    Prior to the filing of these chapter 11 cases, the Debtors recognized the resulting heavy burden that would be imposed on their operations, much of which would be borne by their employees.  Accordingly, prior to the Petition Date (as defined herein) in December 2022, the Debtors, with input from their advisors, as described herein, adopted a two-tier key employee retention program (the "**KERP**") for certain key employees, to retain such key employees throughout the Debtors' restructuring efforts.  The first tier of the KERP ("**Tier 1 Prepetition KERP**") provided certain key executives, including statutory "insiders" such as certain of the Debtors' named executive officers, with awards designed to retain such executives through the restructuring process.[2]  Importantly, by this Motion, the Debtors are not seeking authority to pay any amounts with respect to the Tier 1 Prepetition KERP.

3.    The second tier of the KERP, which does not include statutory "insiders," provides for the payment of bonuses to certain non-executive key employees (the "**Non-Insider KERP**" or "**Tier 2 KERP**").  Pursuant to the Non-Insider KERP, each participating key employee (the "**KERP Participants**"), with the exception of Cottonwood Employees (as defined and

---

[2]  The Tier 1 Prepetition KERP is discussed in the Debtors' Form 8-K, dated December 15, 2022, available at: https://www.sec.gov/ix?doc=/Archives/edgar/data/1839341/000119312522310173/d366482d8k.htm.

discussed below), is entitled to receive cash retention bonuses, payable in quarterly installments in accordance with the terms of the applicable retention agreement signed by each key employee. The first installment is scheduled to be paid on the first regular payroll date following the approval of this Motion, or as soon as reasonably practicable thereafter, with the remaining three installments each to be paid quarterly on the last payroll date in May, August, and November 2023; *provided*, that if a "Restructuring Event"[3] is consummated prior to any scheduled payment, any remaining, unpaid quarterly bonus payments will be paid within fifteen (15) days following such Restructuring Event.  KERP Participants who are employed at the Debtors' facility in Cottonwood, Texas (the "**Cottonwood Facility**" and, such employees, the "**Cottonwood Employees**")[4] will receive their KERP awards in a single installment on the earlier of (i) the first payroll date following August 31, 2023 or (ii) the day that is 45 days after the closing of the sale of the Cottonwood Facility.  The Debtors now seek authority to make such payments to ensure the continued trust of their employees and to support the stability of their business.

4.      Despite the Debtors' progress to date, much work remains to be done in these chapter 11 cases.  Specifically, among other things, the Debtors must:  (i) finalize a business plan for emergence; (ii) negotiate a value-maximizing (hopefully fully consensual) chapter 11 plan with their key constituents; (iii)  file a plan of reorganization and disclosure statement; (iv)  closely monitor and control costs to maximize creditor recoveries; (v) satisfy reporting and other requirements under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") and

---

[3] "Restructuring Event" is defined as a transaction or series of transactions consummated after the date hereof, involving (i) the sale of all or substantially all of the Company's assets, including under Section 363 of the Bankruptcy Code, or (ii) the recapitalization or restructuring of all or substantially all of the equity and/or debt securities and/or other indebtedness of the Company, which recapitalization or restructuring is effected pursuant to an exchange transaction, tender offer, plan of reorganization pursuant to chapter 11 of the United States Bankruptcy Code or otherwise.

[4] There are nine (9) Cottonwood Employees included in the KERP, who will receive aggregate KERP awards of $50,000.

of the United States Trustee for Region 7 (the "**U.S. Trustee**"); and (vi) coordinate with B. Riley Financial, Inc., the debtor-in-possession financing lender, the ad hoc group of the Debtors' convertible noteholders (the "**Ad Hoc Noteholder Group**"), the official committee of unsecured creditors (the "**Creditors' Committee**"), the ad hoc group of the Debtors' equity holders and other stakeholders in these chapter 11 cases to ensure the smooth administration of and exit from these chapter 11 cases.

5.      This work has demanded and will continue to demand extraordinary amounts of time, dedication, and focus from the Debtors' employees.  None of it is achievable without the continued support of certain of the Debtors' key employees, who have worked, and are working, tirelessly to achieve the best possible outcome for the chapter 11 cases, including substantial efforts during the 2022 holiday season.  These employees have in-depth knowledge of the Debtors' business, assets, liabilities, facilities, and mining and hosting operations, and are essential to the Debtors' ability to carry out the tasks critical to the maintenance and maximization of enterprise value, many of which are outside the scope of the ordinary duties of such employees. It is more important now than ever before that these employees remain in their positions and perform their responsibilities at the highest level.  Anything less could be critically damaging to the Debtors' efforts to maximize value for all stakeholders.

6.      At such a critical juncture in the Debtors' restructuring, the Debtors cannot afford distractions or to lose critical employees.  Maintaining and promoting morale and providing appropriate compensation incentives are essential to the Debtors' business and ability to maintain and maximize value.  Accordingly, the Debtors believe that paying an aggregate amount not to exceed $1,365,000 due under the Tier 2 KERP to non-insider employees (the "**Non-Insider KERP**

**Payments**") would serve these ends and promote continued success through these chapter 11 cases.

## Background

7.    On December 21, 2022 (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 1015-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Local Rules**").  On January 9, 2023, the U.S. Trustee appointed the Creditors' Committee pursuant to section 1102 of the Bankruptcy Code.  No trustee or examiner has been appointed in these chapter 11 cases.

8.    Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Michael Bros in Support of Debtors' Chapter 11 Petitions and First Day Motions*, sworn to on December 21, 2022 (Docket No. 5) (the "**First Day Declaration**").[5]

## Jurisdiction

9.    This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[5] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the First Day Declaration.

**Relief Requested**

10.     Pursuant to sections 105(a), 363, and 503(c) of the Bankruptcy Code, the Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"), approving and authorizing the Debtors to make Non-Insider KERP Payments, as described herein.  For the avoidance of doubt, by this Motion, the Debtors do not seek authority to pay any amounts to statutory "insiders," in accordance with the Tier 1 Prepetition KERP or otherwise.

11.     In support of this Motion, the Debtors submit the declaration of Michael Bros attached hereto as **Exhibit B** (the "**Bros Declaration**").

**Development of KERP**

12.     With the aforementioned considerations in mind, the Debtors' management, with the assistance of the Debtors' advisors (the "**Advisors**"), including counsel at Weil, Gotshal & Manges LLP ("**Weil**") and independent compensation consultants at Compensation Advisory Partners ("**CAP**"), undertook a deliberative process to develop employee programs that would appropriately retain employees and ensure that the Debtors' business needs would be met during the chapter 11 process.  The resulting two-tiered KERP aligns with market standards and promotes employee trust and continuity as the Debtors navigate these work-intensive chapter 11 cases.  The Debtors' Advisors compared the KERP, including its scope and cost, to retention plans implemented in chapter 11 cases of companies of similar size to ensure that the KERP was within the range of reasonableness and consistent with market practices.  The KERP was also reviewed and approved by the Special Committee of Independent Directors of the Board of Directors

(the "**Special Committee**") and the full Board of Directors (the "**Board of Directors**") of Debtor

Core Scientific, Inc.[6]

13.     With respect to the Tier 2 KERP, the Debtors worked to develop a specific

and narrowly-tailored key employee retention plan, with an aggregate maximum payout up to

approximately $1,365,000 for approximately 110 non-insider key employees (the "**Non-Insider**

**KERP Participants**").[7]  This Tier 2 KERP provides for discretionary bonuses based upon the

Debtors' business judgment in determining the need to retain such key employees throughout the

restructuring process.  The Non-Insider KERP Participants will execute the Retention Agreements

prior to the receipt of the first installment of their respective Non-Insider KERP Payments.

14.     With respect to all KERP participants that are not Cottonwood Employees,

the Non-Insider KERP Payments are payable in quarterly installments.  The first payment is

scheduled to be made on the first regular payroll date following the approval of this Motion, or as

soon as reasonably practicable thereafter.  The remaining quarterly bonus payments will each be

made on the last payroll date in May, August, and November 2023, *provided*, that if a

"Restructuring Event" is consummated prior to any scheduled payment, any remaining, unpaid

quarterly bonus payments will be paid within fifteen (15) days following such Restructuring Event.

The Cottonwood Employees will receive their KERP awards in a single installment on the earlier

of (i) the first payroll date following August 31, 2023 or (ii) the day that is 45 days after the closing

of the sale of the Cottonwood Facility.  In exchange for participating in the Tier 2 KERP, each

---

[6]  The Special Committee and the Board of Directors approved the Non-Insider KERP prior to the Petition Date.  On February 18, 2023, the Board of Directors and the Special Committee authorized a $260,000 increase to the Non-Insider KERP to enable the Debtors to include additional participants, including the Cottonwood Employees.

[7]   For confidentiality reasons, the specific details for each Non-Insider KERP Participant are not included in this filing, but the Debtors will provide or have provided this information on a confidential basis to the U.S. Trustee, the advisors to the Ad Hoc Noteholder Group, and the advisors to the Creditors' Committee and can make it available to the Court or file it under seal if requested to do so.

Non-Insider KERP Participant is required to acknowledge that by executing the Retention Agreement, they waive any rights to any annual bonuses (2022 and 2023) or other cash-based incentive awards.

15.     The Non-Insider KERP Participants are among the many employees critical to the Debtors' business and were selected for participation in the Tier 2 KERP based on their experience, skillset, position, unique abilities, and importance to their respective business segment. The Non-Insider KERP Participants perform a variety of important business functions for the Debtors—including accounting, legal, business development and intelligence, information technology, finance, facility and project management, and operational functions—all of which are vital to the Debtors' ability to maintain operational stability and preserve and enhance stakeholder value.

16.     The Non-Insider KERP Participants, if lost, would likely cost the Debtors more in replacement expenses and lost revenues than the Non-Insider KERP Payments contemplated by this Motion.  Losing such employees would challenge the Debtors' operational stability during these chapter 11 cases and the Debtors' reorganization efforts generally.  The loss of even a few of the Non-Insider KERP Participants could have a material, detrimental impact on the Debtors.

17.     Accordingly, the Debtors modeled the Tier 2 KERP to (i) retain employees who are essential to the Debtors' ability to meet business objectives that will allow for a successful outcome in these cases, (ii) achieve an appropriate balance of retaining employees critical to the restructuring efforts while protecting creditor interests, and (iii) be consistent with market practice. The Tier 2 KERP helps ensure that the Non-Insider KERP Participants, who are critical to the Debtors' operations and ability to properly effectuate a successful restructuring, remain with the

Debtors throughout the restructuring process and beyond.

18.    The Tier 2 KERP is summarized as follows:

| Summary of Tier 2 KERP | |
|---|---|
| **Non-Insider KERP Participants** | Approximately 110 non-insider key employees. |
| **Total Cost of Tier 2 KERP** | Aggregate amount not to exceed approximately $1,365,000 (the maximum amount if all Non-Insider KERP Payments are paid in full). Individual KERP awards range from $5,000 to $50,000 per Non-Insider KERP Participant. |
| **Timing of Payments** | For all employees that are not Cottonwood Employees, payable in quarterly installments: the first installment is scheduled to be paid upon the first regular payroll date following the approval of this Motion, or as soon as reasonably practicable thereafter, with the remaining three installments to be paid on the last payment date in May, August, and November 2023; *provided*, that if a "Restructuring Event' is consummated prior to any scheduled payment, any remaining, unpaid quarterly installment payments will be paid within fifteen (15) days following such Restructuring Event. The Cottonwood Employees will receive their KERP awards in a single installment on the earlier of (i) the first payroll date following August 31, 2023 or (ii) the day that is 45 days after the closing of the sale of the Cottonwood Facility. |
| **Structure** | The Non-Insider KERP Payments are to be paid in cash lump sums minus taxes. In order to receive each installment payment, the Retention Agreement requires Non-Insider KERP Participants to stay at the Company during the period through the date that is the earlier of (i) each applicable quarterly payment date and (ii) the date of consummation of a Restructuring Event. Termination of employment prior to such events will result in forfeiture of any remaining payments. |
| **Other Terms** | Non-Insider KERP participants forfeit any annual bonuses |

| Summary of Tier 2 KERP |
|---|
| (2022 and 2023) or other cash-based incentive awards. |

### Basis for Relief

**A.     Making the Non-Insider KERP Payments is a Sound Exercise of the Debtors' Business Judgment and Authorized by Section 363 of the Bankruptcy Code.**

19.     As discussed above, the Debtors' decision to implement the Tier 2 KERP reflects a sound exercise of the Debtors' business judgment, which the Court should approve pursuant to section 363(b)(1) of the Bankruptcy Code.

20.     Pursuant to section 363(b)(1) of the Bankruptcy Code, a debtor "may use, sell, or lease, other than in the ordinary course of business, property of the estate" if the debtor demonstrates a "sound business reason" for such use.  11 U.S.C. § 363(b)(1); *e.g.*, *Institutional Creditors of Cont'l Air Lines, Inc. v. Cont'l Air Lines, Inc. (In re Cont'l Air Lines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("For the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business."); *In re Viking Offshore (USA), Inc.*, No. 08-312-H3-11, 2008 WL 1930056, at \*2 (Bankr. S.D. Tex. Apr. 30, 2008) (holding debtor's proposed bonus payments were outside ordinary course of business and therefore subject to business judgment standard); *In re Mesa Air Grp., Inc.*, No. 10-10018 (MG), 2010 WL 3810899, at \*3 (Bankr. S.D.N.Y. Sept. 24, 2010) (approving employee bonus programs as "valid exercise of their business judgment" under section 363(b)).

21.     Courts in the Fifth Circuit have granted a debtor's request to use or sell property of the estate outside of the ordinary course of business pursuant to section 363(b) of the Bankruptcy Code upon a finding that such use or sale is supported by sound business reasons.  *See, e.g.*, *In re Moore*, 608 F.3d 253, 263 (5th Cir. 2010) ("A sale of assets under § 363 . . . must be

supported by an articulated business justification, good business judgment, or sound business reasons"); *In re BNP Petroleum Corp.*, 642 Fed. App'x 429, 435 (5th Cir. 2016) (same); *In re Cont'l Air Lines*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business."); *see also In re Gulf Coast Oil Corp.*, 404 B.R. 407, 415 (Bankr. S.D. Tex. 2009) (noting that a debtor-in-possession has authority to exercise business judgment given to officer or director of corporation when engaging in a section 363(b) sale of property of the estate outside the ordinary course of business); *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999) (noting that the variety of factors considered by courts when evaluating a section 363(b) transfer "essentially represent a 'business judgment test'") (citation omitted); *In re Crutcher Res. Corp.*, 72 B.R. 628, 631 (Bankr. N.D. Tex. 1987) ("A Bankruptcy Judge has considerable discretion in approving a § 363(b) sale of property of the estate other than in the ordinary course of business, but the movant must articulate some business justification for the sale.").

22.     Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."   *Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (citation omitted); *see also Stanziale v. Nachtomi (In re Tower Air, Inc.)*, 416 F.3d 229, 238 (3d Cir. 2005) ("Overcoming the presumptions of the business judgment rule on the merits is a near-Herculean task.").   When applying the business judgment rule, courts show great deference to a debtor's business decisions and are "loath to interfere with corporate decisions

absent a showing of bad faith, self-interest, or gross negligence." *Official Comm. Of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992); *see also Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985) ("More exacting scrutiny would slow the administration of the debtor's estate and increase its cost, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially."). In sum, "[t]he business judgment standard in section 363 is flexible and encourages discretion." *In re ASARCO, L.L.C.*, 650 F.3d 593, 601 (5th Cir. 2011).

23. A compelling business purpose exists here: the Non-Insider KERP Participants—along with their skills, knowledge, and dedication to assisting the Debtors through these chapter 11 cases—are critical to driving the Debtors' financial and operational performance and generating value for the benefit of the Debtors' stakeholders. To that end, the Debtors' decision to implement the Tier 2 KERP easily satisfies the business judgment standard. Such Non-Insider KERP Payments demonstrably advance the best interests of the Debtors, their estates, and their creditors. As described in more detail above, the efforts of the Debtors' employees during the chapter 11 cases have been and will continue to be critical in preserving the value of the Debtors' estates and maximizing value for all stakeholders. It is imperative that those employees in a position to drive the outcome of a value maximizing transaction be retained during these chapter 11 cases. It is equally critical that the Debtors' business operations run smoothly and that employees throughout the Debtors' ranks remain focused on performing their job functions and motivated during the Debtors' chapter 11 process. Given the added pressures and responsibilities of the Non-Insider KERP Participants due to these chapter 11 cases (in addition to their ordinary

responsibilities), the Debtors believe it is both critical and reasonable for the Debtors to make the Non-Insider KERP Payments.

24.     To promote continuity and trust in the Debtors among employees, the Debtors must implement the Tier 2 KERP.  The Tier 2 KERP was specifically designed, with the input of the Debtors' professional advisors, including CAP, to prevent attrition of essential employees during the chapter 11 cases to preserve the value of the Debtors' assets for the benefit of all stakeholders.  If the Non-Insider KERP Participants were to resign, the value and benefits of these employees' experience would be lost, and the Debtors' operations and their pursuit of a value-maximizing transaction would be significantly impaired.  The resignation of the Non-Insider KERP Participants would deplete estate resources by causing the Debtors to spend significant time and expense to hire and train replacement employees, which would, in turn, be detrimental to their efforts to quickly and efficiently reorganize.  With respect to the Cottonwood Employees, the Debtors need to retain employees at the Cottonwood Facility while the Debtors market and potentially sell the Cottonwood Facility.  The Debtors believe that, with respect to the Cottonwood Employees, payment of the KERP awards in a single installment—as opposed to quarterly installments—will better serve to retain the Cottonwood Employees through the marketing and sale process.

25.     Furthermore, the Debtors' compensation structure for the Non-Insider KERP Participants previously included a significant equity component.  As a result of the liquidity and other challenges the Debtors faced before entering into bankruptcy, given current trading prices, the equity component of the Non-Insider KERP Participants' compensation has diminished significantly.  To retain these employees throughout the chapter 11 cases, it is necessary and prudent to provide them with additional amounts of compensation.  The Tier 2 KERP achieves

this.  Accordingly, payment of the Non-Insider KERP Payments, particularly in light of their loss of equity, is a valid exercise of the Debtors' business judgment.

26.     Finally, the Debtors followed best governance practice while formulating and implementing the Tier 2 KERP.  With the help of independent outside advisors, including CAP, the Debtors crafted the Tier 2 KERP to be reasonable in light of the size of the Debtors' business and the comparability of program costs and terms to other chapter 11 retention plans.  The Special Committee and Board of Directors approved the Tier 2 KERP following the review of materials prepared by the Debtors and their advisors and discussions related thereto.

27.     In sum, the Debtors' decision to make the Non-Insider KERP Payments constitutes a sound exercise of the Debtors' business judgment and should be approved under section 363(b)(1) of the Bankruptcy Code.

**B.     The Debtors' Decision to Make the Non-Insider KERP Payments is Justified by Facts and Circumstances.**

28.     Payment of the Non-Insider KERP Payments also satisfies the requirements of section 503(c)(3) of the Bankruptcy Code.  Section 503(c)(3) of the Bankruptcy Code prohibits certain transfers "that are outside the ordinary course of business" unless such transfers are "justified by the facts and circumstances of the case."  11 U.S.C. § 503(c)(3).[8]  Generally, the standards for approval under sections 503(c)(3) and 363(b) are substantially similar—a court will approve a transfer if made as a result of a sound exercise of the debtor's business judgment.  *See, e.g.*, *Viking Offshore*, 2008 WL 1930056, at *2 n.1 (noting the standard under section 503(c)(3) is "substantially similar" to the business judgment test).  As discussed above, when analyzed under

---

[8]  In addition, sections 503(c)(1) and (c)(2) prohibit payment of sums to "insiders" for (i) the purposes of inducing such persons to remain with the business, absent satisfying certain stringent standards, and (ii) severance, absent satisfying equally stringent standards.  *See In re Dana Corp.*, 358 B.R. 567, 575–76 (Bankr. S.D.N.Y. 2006).  Notably, however, these statutory provisions are limited to "insider" payments.  *See, e.g.*, *id.*  As discussed below, section 503(c)(1)'s limitation on certain retention payments to "insiders" is not applicable, as the payments at issue herein are directed solely to non-insider employees.  11 U.S.C. § 503(c)(1).

the business judgment standard, payment of the Non-Insider KERP Payments clearly passes muster.

29.     Some courts, however, have interpreted section 503(c)(3) to require a slightly higher bar for bonus payments during a chapter 11 case, which the relief requested herein also satisfies.  *See, e.g.*, *In re Pilgrim's Pride Corp.*, 401 B.R. 229, 236–37 (Bankr. N.D. Tex. 2009) (requiring proposed transfer be in best interests of creditors and debtor's estate in addition to satisfying business judgment standard); Hr'g Tr. at 40:17–41:2, *In re Dura Automotive Sys., Inc.*, No. 06-11202 (Bankr. D. Del. Apr. 25, 2007) (KJC) (Docket No. 1170) (describing the section 503(c)(3) standard as "something above the business judgment standard but maybe not much farther above it").  Courts that have applied this slightly higher bar in assessing employee programs under section 503(c)(3) have held that whether a proposed transaction is in the best interests of the creditors and the debtor's estate depends on the facts of the case.  *See Pilgrim's Pride*, 401 B.R. at 237.  A court "need only determine that Debtors have provided a sound business reason for the [transaction] and that, even at [its] projected cost, the benefit to creditors and Debtors' estates is of commensurate value."  *Id.* at 237 n.14.  In evaluating plans under section 503(c)(3), courts consider whether (i) the plan is calculated to achieve the desired performance; (ii) the cost of the plan is reasonable in the context of a debtor's assets, liabilities, and earning potential; (iii) the scope of the plan is fair and reasonable or discriminates unfairly among employees; (iv) the plan is consistent with industry standards; (v) the debtor performed due diligence in investigating the need for the plan; and (vi) the debtor received independent counsel in performing due diligence, creating, and authorizing the plan.  *See In re Glob. Home Prods., LLC*, 369 B.R. 778, 786 (Bankr. D. Del. 2007); *In re Dana Corp.*, 358 B.R. 567, 576–77 (Bankr. S.D.N.Y. 2006).  As set forth below, the proposed payment of the Non-Insider KERP Payments satisfies each of these factors.

30.     First, the Tier 2 KERP was structured to achieve the continuity of the desired performance.  The Debtors and their advisors designed the Tier 2 KERP to avoid the loss of personnel key to ongoing operations and motivate and reward the Non-Insider KERP Participants for their significant efforts given the increased demands placed upon them in connection with the chapter 11 process.  A failure to retain the Non-Insider KERP Participants would likely cause the Debtors' financial performance to suffer.  It would also cost the Debtors significant time and expense to hire and train replacement employees, which would, in turn, be detrimental to their efforts to quickly and efficiently emerge from the chapter 11 cases.

31.     Second, the cost of the Tier 2 KERP, up to approximately $1,365,000, is reasonable in light of the Debtors' assets, liabilities, and revenues and is consistent with, and within the range of reasonableness of, similar programs implemented in chapter 11 cases with debtors of similar size.  As discussed above and in the Bros Declaration, the Debtors' advisors engaged CAP, an independent consultant, to assist the Debtors with the design of the Tier 2 KERP.  CAP conducted an analysis to confirm that the terms of the Tier 2 KERP were consistent with the terms of retention plans approved in other, comparable chapter 11 cases.

32.     Third, the scope of the proposed Non-Insider KERP Payments is fair and reasonable.  The Non-Insider KERP Participants represent a reasonable percentage of the Debtors' total employee base.  The Debtors undertook a careful selection process and received input from their advisors in determining which employees should be eligible.

33.     Finally, the Tier 2 KERP is consistent with industry standards and is reasonable under the circumstances with respect to size, scope, and total cost.

**C.     Section 503(c)(1) Does Not Apply to Proposed Payments under the KERP.**

34.     Section 503(c)(1) is not applicable in evaluating proposed Non-Insider KERP Payments because none of the Non-Insider KERP Participants are "insiders" as that term is

16

defined in section 101(31) of the Bankruptcy Code.  The Bankruptcy Code defines an "insider" to include, among other things, an "officer of the debtor" and a "person in control of the debtor."  11 U.S.C. § 101(31).  Courts have also concluded that an employee may be an "insider" if such employee has "at least a controlling interest in the debtor or . . . exercise[s] sufficient authority over the debtor so as to unqualifiably dictate corporate policy and the disposition of corporate assets." *In re Velo Holdings, Inc.*, 472 B.R. 201, 208 (Bankr. S.D.N.Y. 2012) (citations omitted). It is well-established that an employee's job title, alone, does not make such employee an "insider" as defined by the Bankruptcy Code.  *See In re Fabricators, Inc.*, 926 F.2d 1458, 1466 (5th Cir. 1991) (noting that the insider analysis focuses on indicia of "control" rather than job title or other formalities); *In re Borders Grp. Inc.*, 453 B.R. 459, 469 (Bankr. S.D.N.Y. 2011) (noting that "[c]ompanies often give employees the title 'director' or 'director level,' but do not give them decision-making authority akin to an executive" and concluding that certain "director level" employees in that case were not insiders).

35.    Here, none of the Non-Insider KERP Participants are statutory "insiders." First, none of the Non-Insider KERP Participants has discretionary control over any substantial budgetary amounts or the ability to dictate company policy.  Second, although certain of the Non-Insider KERP Participants hold titles such as "vice president," or "senior vice president," such employees must obtain approval from senior management before taking any action with respect to the disposition of significant assets.  In other words, the mere designation of a Non-Insider KERP Participant as an "officer" for internal purposes does not evince sufficient indicia of "control" to render that individual an "insider" under the Bankruptcy Code.  *See Fabricators*, 926 F.2d at 1466. Third, none of the Non-Insider KERP Participants is a member of the Board of Directors or participates in the Debtors' corporate governance.  The Non-Insider KERP Participants thus do

not have the authority to dictate corporate policy or the disposition of corporate assets.  Finally, with one exception, none of the Non-Insider KERP Participants had any say or input whatsoever on any aspect of the KERP or its ultimate formulation.[9]   Therefore, section 503(c)(1) is inapplicable in evaluating the proposed Non-Insider KERP Payments.  Accordingly, the Debtors respectfully request that this Court authorize them to make the essential Non-Insider KERP Payments to retain the talent of the Non-Insider KERP Participants and promote the success of the enterprise during and through these chapter 11 cases.

### Compliance with Bankruptcy Rule 6004(a) and Waiver of Bankruptcy Rule 6004(h)

36.     To implement the foregoing successfully, the Debtors request that the Court find that notice of the Motion satisfies Bankruptcy Rule 6004(a) and that the Court waive the 14-day period under Bankruptcy Rule 6004(h).

### Reservation of Rights

37.     Nothing contained herein is intended to be or shall be deemed as (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver or limitation of the Debtors' or any party in interest's rights to dispute the amount of, basis for, or validity of any claim, (iii) a waiver of the Debtors' or any other party in interest's respective rights under the Bankruptcy Code or any other applicable nonbankruptcy law, (iv) an agreement or obligation to pay any claims, (v) a waiver of any claims or causes of action which may exist against any creditor or interest holder, or (vi) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code.  Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not

---

[9]   The Debtors' VP of People Operations, a Non-Insider KERP Participant, assisted management with the formulation of the KERP participant list and individual award amounts.  Such participant's award was independently approved by senior management.

intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

## <u>Notice</u>

38.     Notice of this Motion will be served on any party entitled to notice pursuant to Bankruptcy Rule 2002 and any other party entitled to notice pursuant to Local Rule 9103-1(d).

## <u>No Previous Request</u>

39.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

*[Remainder of page intentionally left blank]*

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: March 3, 2023
      Houston, Texas

                                      Respectfully submitted,

                                          /s/  Alfredo R. Pérez              
                                        WEIL, GOTSHAL & MANGES LLP
                                        Alfredo R. Pérez (15776275)
                                        700 Louisiana Street, Suite 1700
                                        Houston, Texas 77002
                                        Telephone:  (713) 546-5000
                                        Facsimile:   (713) 224-9511
                                        Email:   Alfredo.Perez@weil.com

                                        -and-

                                        WEIL, GOTSHAL & MANGES LLP
                                        Ray C. Schrock (admitted *pro hac vice*)
                                        Ronit J. Berkovich (admitted *pro hac vice*)
                                        Moshe A. Fink (admitted *pro hac vice*)
                                        767 Fifth Avenue
                                        New York, New York 10153
                                        Telephone:  (212) 310-8000
                                        Facsimile:   (212) 310-8007
                                        Email:   Ray.Schrock@weil.com
                                                    Ronit.Berkovich@weil.com
                                                    Moshe.Fink@weil.com

                                        *Attorneys for Debtors*
                                        *and Debtors in Possession*

**<u>Certificate of Service</u>**

I hereby certify that, on March 3, 2023, a true and correct copy of the foregoing document was served as provided by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.


<u>  /s/ Alfredo R. Pérez                       </u>
Alfredo R. Pérez