**Exhibit B**

**Bros Declaration**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| CORE SCIENTIFIC, INC., *et al.*, | § § § | Case No. 22-90341 (DRJ) |
| | § | (Jointly Administered) |
| Debtors.[1] | § § § | |

**DECLARATION OF MICHAEL BROS
IN SUPPORT OF MOTION OF DEBTORS FOR
ENTRY OF ORDER APPROVING AND AUTHORIZING
PAYMENTS UNDER NON-INSIDER KEY EMPLOYEE RETENTION PLAN**

I, Michael Bros, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge, information and belief:

1. I am the Senior Vice President of Capital Markets & Acquisitions at Core Scientific, Inc. ("**Core**", "**Core Parent**", and together with its subsidiaries and affiliates, the "**Company**"). I have served in this capacity since January 2022. Before that, starting in December 2018, I was the Debtors' Vice President of Corporate Development. Prior to joining the Company, I held various positions at Kayne Anderson from 2014 to 2018 and Merrill Lynch from 2011 to 2014. I hold a Bachelor's of Arts from the University of Saint Thomas and a Master's in Business Administration from the University of California, Los Angeles Anderson School of Management.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions, VII, LLC (3198). The Debtors' corporate headquarters and service address is 210 Barton Springs Road, Suite 300, Austin, Texas 78704.

2. I am familiar with the Debtors' KERP and the proposed Non-Insider KERP Payments thereunder, as set forth in the *Motion of Debtors for Entry of Order Approving and Authorizing Payments under Non-Insider Key Employee Retention Plan* (the "**Motion**"),[2] filed contemporaneously herewith. I respectfully submit this declaration (the "**Declaration**") in support of the Motion. Unless otherwise stated, the facts set forth in this Declaration are based on my personal knowledge, opinion based upon experience, or otherwise based on the Company's business records to which I have access and familiarity in my capacity as Senior Vice President of Capital Markets & Acquisitions, and are true to the best of my knowledge. If called upon to testify, I would testify competently to the facts set forth in this Declaration.

3. In my capacity as the Debtors' Senior Vice President of Capital Markets & Acquisitions, I am generally knowledgeable and familiar with the Debtors' day-to-day operations, businesses and financial affairs, books and records, and the circumstances leading to the commencement of these chapter 11 cases.

4. I am familiar with the KERP (defined below) and believe that the contemplated payments to non-insiders thereunder are essential to maintaining and improving the Debtors' financial and operational performance and to achieving a reorganization that maximizes value for all stakeholders. In my estimation, failure to honor the KERP as set forth in the Motion would jeopardize the Debtors' effective operations to the detriment of all stakeholders.

## Chapter 11 Cases and Need for KERP

5. The Debtors commenced these chapter 11 cases with the goal of achieving a value-maximizing restructuring on an expedited timeline. Since filing these cases approximately two months ago, the Debtors have obtained critical first-day relief; obtained interim debtor-in-

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

possession financing and subsequently, more favorable replacement debtor-in-possession financing; prepared and filed schedules of assets and liabilities and statements of financial affairs; engaged in negotiations with the unsecured creditor's committee; obtained rejection of the executory contracts with Celsius Mining LLC, resulting in significant savings to the Debtors; engaged in various asset dispositions and sales, bringing significant value to the estates; and continued to ensure successful operations at their hosting and mining facilities across the country.

6. Prior to commencing these chapter 11 cases, the Debtors recognized the resulting heavy burden that would be imposed on their operations, much of which would be borne by their employees. Accordingly, prior to Petition Date in December, 2022, the Debtors—with input from their legal advisor (Weil) and compensation consultant Compensation Advisory Partners ("**CAP**"), adopted a two-tier key employee retention program (the "**KERP**") for certain key employees to retain such key employees throughout the Debtors' restructuring efforts with the payment of retention bonuses. The first tier of the KERP ("**Tier 1 Prepetition KERP**") provided certain key executives, including statutory "insiders" such as certain of the Debtors' named executive officers with awards designed to retain such executives through these chapter 11 cases and restructuring process. Importantly, the Debtors are not seeking authority to pay any amounts with respect to the Tier 1 Prepetition KERP.

7. The second tier of the KERP, which does not include statutory "insiders," provides for the payment of bonuses to certain non-executive key employees (the "**Non-Insider KERP**"). Pursuant to the Non-Insider KERP, with the exception of the Cottonwood Employees, each participating key employee is entitled to receive cash retention bonuses, payable in quarterly installments in accordance with the terms of the applicable retention agreement signed by each key employee. The first installment is scheduled to be paid on the first regular payroll date

following the approval of the Motion, or as soon as reasonably practicable thereafter, with the remaining three installments to be paid quarterly on the last payroll date in May, August, and November 2023; *provided*, that if a "Restructuring Event"[3] is consummated prior to any scheduled payment, any remaining, unpaid quarterly bonus payments will be paid within fifteen (15) days following such Restructuring Event. The Cottonwood Employees will receive their KERP awards in a single installment on the earlier of (i) the first payroll date following August 31, 2023 or (ii) the day that is 45 days after the closing of the sale of the Cottonwood Facility.

8. Despite the Debtors' progress to date, much work remains to be done in these chapter 11 cases. Specifically, among other things, the Debtors must: (i) finalize a business plan for emergence; (ii) negotiate a value-maximizing (hopefully fully consensual) chapter 11 plan with their key constituents; (iii) file a plan of reorganization and disclosure statement; (iv) closely monitor and control costs to maximize creditor recoveries; (v) satisfy reporting and other requirements under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") and of the United States Trustee for Region 7 (the "**U.S. Trustee**"); and (vi) coordinate with B. Riley Financial, Inc., the debtor-in-possession financing lender, the ad hoc group of the Debtors' convertible noteholders (the "**Ad Hoc Noteholder Group**"), the official committee of unsecured creditors (the "**Creditors' Committee**"), the ad hoc group of the Debtors' equity holders and other stakeholders in these chapter 11 cases to ensure the smooth administration of and exit from these chapter 11 cases.

---

[3] "Restructuring Event" is defined as a transaction or series of transactions consummated after the date hereof, involving (i) the sale of all or substantially all of the Company's assets, including under Section 363 of the Bankruptcy Code, or (ii) the recapitalization or restructuring of all or substantially all of the equity and/or debt securities and/or other indebtedness of the Company, which recapitalization or restructuring is effected pursuant to an exchange transaction, tender offer, plan of reorganization pursuant to chapter 11 of the United States Bankruptcy Code or otherwise.

5

9. This work has demanded and will continue to demand extraordinary amounts of time, dedication, and focus from the Debtors' employees. Indeed, none of it is achievable without the continued support of certain of the Debtors' key employees, who have worked, and are working, tirelessly to achieve the best possible outcome for the chapter 11 cases, including substantial efforts during the 2022 holiday season. These employees have in-depth knowledge of the Debtors' business, assets, liabilities, facilities, hosting and mining operations, and are essential to the Debtors' ability to carry out the tasks critical to the maintenance and maximization of enterprise value, many of which are outside the scope of the ordinary duties of such employees.

10. I believe it is more important now than ever before that these employees remain in their positions and perform their responsibilities at the highest level. I believe anything less could be critically damaging to the Debtors' efforts to maximize value for all stakeholders. At such a critical juncture in the Debtors' restructuring, the Debtors cannot afford distractions or to lose critical employees. Maintaining and promoting morale and providing appropriate compensation incentives are essential to the Debtors' business and ability to maintain and maximize value. I believe that paying the aggregate amount not to exceed $1,365,000 due under the Tier 2 KERP to non-insider employees (the "**Non-Insider KERP Payments**") would serve these ends and promote continued success throughout these chapter 11 cases.

### Development of KERP

11. With the above considerations in mind and as set forth in the Motion, the Debtors' management, with the assistance of the Debtors' advisors, including Weil and CAP, undertook a deliberative process to develop employee programs that would appropriately retain employees and ensure that the Debtors' business needs would be met during the chapter 11 process. It is my understanding that the resulting two-tiered KERP aligns with market standards and I

believe that it promotes employee trust and continuity as the Debtors navigate these work-intensive chapter 11 cases. It is my understanding that the Debtors' Advisors compared the KERP, including its scope and cost, to retention plans implemented in chapter 11 cases of companies of similar size to ensure that the KERP was within the range of reasonableness and consistent with market practices. The KERP was also reviewed and approved by the Special Committee, which consists solely of independent directors, as well as the Board of Directors.

12. With respect to the Tier 2 KERP, the Debtors worked to develop a specific and narrowly-tailored key employee retention plan, with an aggregate maximum payout up to approximately $1,365,000 for approximately 110 non-insider key employees (the "**Non-Insider KERP Participants**").[4] This Tier 2 KERP provides for discretionary bonuses based upon the Debtors' business judgment in determining the need to retain such key employees throughout the restructuring process. The Non-Insider KERP Participants will execute the Retention Agreements prior to the receipt of the first installment of their respective Non-Insider KERP Payments.

13. With respect to all KERP participants that are not Cottonwood Employees, Non-Insider KERP Payments pursuant to the Tier 2 KERP are payable in quarterly installments: The first quarterly bonus payment is scheduled to be made on the first regular payroll date following the approval of this Motion, the other payments are to be made in May, August, and November 2023, *provided*, that if a "Restructuring Event" is consummated prior to any scheduled payment, any remaining, unpaid quarterly bonus payments will be paid within fifteen (15) days following such Restructuring Event. The Cottonwood Employees will receive their KERP awards in a single installment on the earlier of (i) the first payroll date following August 31, 2023 or (ii)

---

[4] For confidentiality reasons, the specific details for each Non-Insider KERP Participant are not included in this filing, but the Debtors will provide or have provided this information on a confidential basis to the U.S. Trustee, the Ad Hoc Noteholder Group, and the Creditors' Committee and can make it available to the Court or file it under seal if requested to do so.

the day that is 45 days after the closing of the sale of the Cottonwood Facility.  In exchange for participating in the Tier 2 KERP, each Non-Insider KERP Participant is required to acknowledge that by executing the Retention Agreement, they waive any rights to annual bonuses (2022 and 2023) or other cash based incentives.

14. The Non-Insider KERP Participants are among the many employees critical to the Debtors' business and were thus selected for participation in the Tier 2 KERP based on their experience, skillset, position, unique abilities, and importance to their respective business segment. The Non-Insider KERP Participants perform a variety of important business functions for the Debtors, including accounting, legal, business development and intelligence, information technology, finance, marketing, facility and project management, and operational functions, all of which are vital to the Debtors' ability to maintain operational stability and preserve and enhance stakeholder value.

15. I believe that the Non-Insider KERP Participants, if lost, would likely cost the Debtors more in replacement expenses and lost revenues than the Non-Insider KERP Payments contemplated by this Motion.  Losing such employees would challenge the Debtors' operational stability during these chapter 11 cases and the Debtors' reorganization efforts generally.  The loss of even a few of the Non-Insider KERP Participants could have a material, detrimental impact on the Debtors.

16. Accordingly, the Debtors modeled the Tier 2 KERP to (i) retain employees who are essential to the Debtors' ability to meet business objectives that will allow for a successful outcome in these cases, (ii) achieve an appropriate balance of retaining employees critical to the restructuring efforts while protecting creditor interests, and (iii) be consistent with market practice. The Tier 2 KERP helps ensure that the Non-Insider KERP Participants, who are critical to the

Debtors' operations and ability to properly effectuate a successful restructuring, remain with the Debtors throughout the restructuring process and beyond.

17. Further, none of the Non-Insider KERP Participants has discretionary control over any substantial budgetary amounts or the ability to dictate company policy. Second, although certain of the Non-Insider KERP Participants hold titles such as "vice president," or "senior vice president," such employees must obtain approval from senior management before taking any action with respect to the disposition of significant assets. None of the Non-Insider KERP Participants is a member of the Board of Directors or participates in the Debtors' corporate governance. The Non-Insider KERP Participants thus do not have the authority to dictate corporate policy or the disposition of corporate assets. Finally, with one exception, none of the Non-Insider KERP Participants had any say or input whatsoever on any aspect of the KERP or its ultimate formulation.[5]

18. The Tier 2 KERP is summarized as follows:

| Summary of Tier 2 KERP ||
|---|---|
| **Non-Insider KERP Participants** | Approximately 110 non-insider key employees. |
| **Total Cost of Tier 2 KERP** | Aggregate amount not to exceed $1,365,000 (the maximum amount if all Non-Insider KERP Payments are paid in full).<br>Individual KERP awards range from $5,000 to $50,000 per Non-Insider KERP Participant. |
| **Timing of Payments** | For all employees that are not Cottonwood Employees, payable in quarterly installments: the first installment is scheduled to be paid upon the first regular payroll date following the approval of this Motion, or as soon as reasonably practicable thereafter, with the remaining three |

---

[5] The Debtors' VP of People Operations, a Non-Insider KERP Participant, assisted management with the formulation of the KERP participant list and individual award amounts. Such participant's award was independently approved by senior management.

| Summary of Tier 2 KERP | |
|---|---|
| | installments to be paid on the last payment date in May, August, and November 2023; *provided*, that if a "Restructuring Event' is consummated prior to any scheduled payment, any remaining, unpaid quarterly installment payments will be paid within fifteen (15) days following such Restructuring Event.<br><br>The Cottonwood Employees will receive their KERP awards in a single installment on the earlier of (i) the first payroll date following August 31, 2023 or (ii) the day that is 45 days after the closing of the sale of the Cottonwood Facility. |
| **Structure** | The Non-Insider KERP Payments are to be paid in cash lump sums minus taxes.<br><br>In order to receive each installment payment, the Retention Agreement requires Non-Insider KERP Participants to stay at the Company during the period through the date that is the earlier of (i) each applicable Quarterly Payment Date and (ii) the date of consummation of a Restructuring Event. Termination of employment prior to such events will result in forfeiture of any remaining payments. |
| **Other Terms** | Non-Insider KERP participants forfeit any annual bonuses (2022 and 2023) or other cash-based incentive awards. |

## Conclusion

19. Based on the analysis conducted by the Debtors, Weil, and CAP, my own experience, and my business judgment, I believe that the KERP, including the Non-Insider KERP Payments, is necessary, reasonable, and specifically targeted to achieve important goals during these chapter 11 cases.

20. If the requested relief is not approved by the Court, I believe that employee attrition will severely disrupt the Debtors' business and diminish the value of their estates. The Debtors' ability to retain their employees is, of course, essential to the Debtors' business. The

inability to do so would prevent the Debtors from generating revenues critical to operating their business and effectuating a value-maximizing restructuring.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 3, 2023

By: /s/ *Michael Bros*
**Senior Vice President of Capital Markets & Acquisitions**