**Exhibit B**

**Sphere 3D's Notice of Bankruptcy Rule 2004 Requests for Production**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| **CORE SCIENTIFIC, INC.**, *et al.*, | § | Case No. 22-90341 (DRJ) |
| | § | |
| Debtors.[1] | § | (Jointly Administered) |

**NOTICE OF BANKRUPTCY RULE 2004 REQUESTS FOR
PRODUCTION OF DOCUMENTS FROM CORE SCIENTIFIC, INC.**

Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") and Rule 2004-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas ("Bankruptcy Local Rules"), Sphere 3D Corp. ("Sphere"), by its counsel, directs Core Scientific, Inc. ("Core") to produce the originals or copies of all documents requested in the subpoena *duces tecum* attached as **Exhibit A** to this notice on or before **March 27, 2023**, to the offices of **Hunton Andrews Kurth LLP, 600 Travis Street, Suite 4200, Houston, TX 77002, Attn: Timothy A. ("Tad") Davidson II and Ashley L. Harper, (taddavidson@huntonak.com; ashleyharper@huntonak.com)**.

Please take notice that Bankruptcy Local Rule 2004-1 provides, in pertinent part, as follows:

> (d) Not fewer than 14 days written notice of a proposed examination must be given to the person or entity to be examined, its counsel, and to affected parties under BLR 9013-1(a). The notice must apprise the party of the scope of the examination and categories of documents to be produced. The notice must be filed.

> (e) If no response is served, the notice to conduct an examination under this rule is deemed ordered, without requiring the entry of an order.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (N/A); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions, VII, LLC (3198). The Debtors' corporate headquarters and service address is 210 Barton Springs Road, Suite 300, Austin, Texas 78704.

1

(f) If a party to be examined has objections, that party has the burden to seek relief from the court by filing a motion to quash or for a protective order. The motion must comply with BLR 9013-1. The entity to be examined and affected parties have 7 days to respond or object to the proposed examination.

Sphere reserves all rights regarding the subject matter of this Notice and to amend, supplement, and/or modify **Exhibit A** attached hereto.

Dated: March 13, 2023

Respectfully submitted,

**HUNTON ANDREWS KURTH LLP**

/s/ *Ashley L. Harper*

| | |
|---|---|
| Timothy A. ("Tad") Davidson II | Tibor L. Nagy, Jr. |
| TX Bar No. 24012503 | TX Bar No. 24041562 |
| Ashley L. Harper | Gregory N. Wolfe (*pro hac vice* pending) |
| TX Bar No. 24065272 | Susan Hu (*pro hac vice* pending) |
| 600 Travis Street, Suite 4200 | **DONTZIN NAGY & FLEISSIG LLP** |
| Houston, Texas 77002 | 980 Madison Avenue |
| Telephone: (713) 220-4200 | New York, New York 10075 |
| Facsimile: (713) 220-4285 | Telephone: (212) 717-2900 |
| E-mail: taddavidson@HuntonAK.com | Email: tibor@dnfllp.com |
| ashleyharper@HuntonAK.com | greg@dnfllp.com |
| | shu@dnfllp.com |

- and -

Seth H. Lieberman (admitted *pro hac vice*)
Matthew W. Silverman (admitted *pro hac vice*)
**PRYOR CASHMAN LLP**
7 Times Square
New York, New York 10036
Telephone: (212) 421-4100
Facsimile: (212) 326-0806
E-mail: slieberman@pryorcashman.com
msilverman@pryorcashman.com

- and -

*Co-Counsel for Sphere 3D Corp.*

2

**CERTIFICATE OF SERVICE**

       I certify that on March 13, 2023, a true and correct copy of the foregoing document was served by (i) the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas on those parties registered to receive electronic notices; and (ii) electronic mail on the following individuals:

Alfredo R. Pérez, Ronit J. Berkovich, Moshe A. Fink, David Lender, Christine Calabrese, Theodore Tsekerides
Email: Alfredo.Perez@weil.com; Ronit.Berkovich@weil.com; Moshe.Fink@weil.com; david.lender@weil.com; Christine.Calabrese@weil.com; theodore.tsekerides@weil.com
***Attorneys for the Debtors***

                                              */s/ Ashley L. Harper*
                                              Ashley L. Harper

**CERTIFICATE OF CONFERENCE**

       Pursuant to Bankruptcy Local Rule 2004-1, I hereby certify that, on March 9, 2023, I conferred with counsel to the Debtors (Christine Calabrese) by teleconference and asked whether the Debtors would agree to any requests for production of documents in an effort to coordinate with Debtors' counsel regarding such requests. On that telephone conference and as of the filing of this Notice, the Debtors did not agree to any production of documents.

                                              */s/ Ashley L. Harper*
                                              Ashley L. Harper

## Exhibit A

## SPHERE 3D CORP.'S FIRST REQUEST FOR
## PRODUCTION OF DOCUMENTS FROM CORE SCIENTIFIC, INC.

1. Pursuant to Bankruptcy Rule 2004, Sphere 3D Corp. ("Sphere") submits this First Request for Production of Documents (the "Document Requests") to Core Scientific, Inc. ("Core").

2. Sphere demands that Core produce materials responsive to the Document Requests by delivering all such responsive materials to the offices of **Hunton Andrews Kurth LLP, 600 Travis Street, Suite 4200, Houston, TX 77002, Attn: Timothy A. ("Tad") Davidson II and Ashley L. Harper, (taddavidson@huntonak.com; ashleyharper@huntonak.com)**, co-counsel to Sphere, no later than **March 27, 2023**.

## DEFINITIONS

The following definitions shall apply to the terms used in this **Exhibit A** regardless of whether they are capitalized or uncapitalized.

1. "Sphere" means Sphere 3D Corp. and any of its officers, directors, employees, agents, representatives, parent companies, subsidiaries affiliates, successors, predecessors, and assigns, including attorneys, or other Persons acting on its behalf.

2. "Core" means Core Scientific, Inc. and any of its officers, directors, employees, agents, representatives, parent companies, subsidiaries affiliates, successors, predecessors, and assigns, including attorneys, or other Persons acting on its behalf.

3. "Gryphon" means Gryphon Digital Mining, Inc. and any of its officers, directors, employees, agents, representatives, parent companies, subsidiaries affiliates, successors, predecessors, and assigns, including attorneys, or other Persons acting on its behalf.

4. "B. Riley" means B. Riley Principal Capital II, LLC. and any of its officers, directors, employees, agents, representatives, parent companies, subsidiaries affiliates, successors, predecessors, and assigns, including attorneys, or other Persons acting on its behalf.

5. "MSA" means the September 12, 2021 Master Services Agreement and all orders entered into under the MSA, including without limitation Order #1 and Order #2.

6. "Rate" means the hosting services rate set forth under Order #2 of the MSA.

7. "Communication" or "Communications" means any oral, written, or electronic transmissions, or Electronic Records of information, including but not limited to emails, meetings, discussions, conversations, telephone calls, telegrams, memoranda, letters, telecopies, telexes, conferences, messages, notes, or seminars, and shall include, without limitation, messages sent, received, or located on any messaging app or service (including, without limitation, SMS, iMessage, Slack, WhatsApp, Telegram, Bloomberg messenger, and Microsoft Teams) and any Documents, writings, or recordings constituting,

1

evidencing, memorializing, recording, summarizing, or transcribing any transmission or exchange of any information.

8. "Document" or "Documents" means all documents, electronically stored information, and tangible things, including without limitation all writings and all other means of recording information, whether written, transcribed, taped, filmed, microfilmed, or in any other way produced, reproduced, or recorded, and including but not limited to: originals, drafts, computer-sorted and computer-retrievable information, copies and duplicates that are marked with any notation or annotation or otherwise differ in any way from the original, correspondence, memoranda, reports, notes, minutes, contracts, agreements, books, records, checks, vouchers, invoices, purchase orders, ledgers, diaries, logs, calendars, computer printouts, computer disks, card files, lists of persons attending meetings or conferences, sketches, diagrams, calculations, evaluations, analyses, directions, work papers, press clippings, sworn or unsworn statements, requisitions, manuals or guidelines, audit work papers, financial analyses, tables of organizations, charts, graphs, indices, advertisements and promotional materials, audited and unaudited financial statements, trade letters, trade publications, newspapers and newsletters, photographs, emails, electronic or mechanical records, facsimiles, telegrams and telecopies, and audiotapes. Each draft, annotated, or otherwise non-identical copy is a separate document within the meaning of this term. Documents shall also include any removable sticky notes, flags, or other attachments affixed to any of the foregoing, as well as the files, folder tabs, and labels appended to or containing any documents. Documents expressly include all electronic records.

9. "Relating to," "Related to" or "Relate(s) to" means constituting, containing, concerning, embodying, reflecting, identifying, stating, mentioning, discussing, describing, evidencing, or in any other way being relevant to that given subject matter.

10. "Electronic records" means the original (or identical duplicate when the original is not available) and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind) of writings of every kind and description inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means. Electronic records include, by way of example and not by limitation, computer programs (whether private, commercial, or work-in-progress), programming notes and instructions, activity listings of email transmittals and receipts, output resulting from the use of any software program (including word processing documents, spreadsheets, database files, charts, graphs, and outlines), electronic mail, and any and all miscellaneous files and file fragments, regardless of the media on which they reside and regardless of whether said electronic records exist in an active file, deleted file, or file fragment. Electronic records include without limitation any and all items stored on computer memories, hard disks, diskettes and cartridges, network drives, network memory storage, archived tapes and cartridges, back-up tapes, floppy disks, CD-ROMs, removable media, magnetic tapes of all types, microfiche, and any other media used for digital data storage or transmittal. Electronic records also include the file, folder tabs, and containers and labels appended to or associated with each original and non-identical copy.

11. "Person" means any natural Person or any legal entity, including without limitation, any business or governmental entity or association.

12. "You" or "Your" refer to Core and any other Person or entity presently or formerly acting or purporting to act on behalf of Core.

## INSTRUCTIONS

1. Produce all of the specified Documents and Communications which are in Your possession, or available to You, or to which You may gain access through reasonable effort, including information in the possession of Your past and present attorneys, accountants, investigators, consultants, or other persons directly or indirectly employed or retained by You, or in connection with You, or anyone else otherwise subject to Your control who maintains records on Your behalf, in Your name or otherwise under Your control.

2. Any comments, notations, or markings appearing on any Documents or Communications, and not a part of the original, are considered a separate Document or Communications, and any draft, preliminary form, or superseded version of any Document is also considered a separate Document or Communication.

3. All Documents and Communications requested herein should be produced in the same order as they are kept, or maintained, or stored, in the regular course of business.

4. All Documents requested herein should be produced in the file, folder, envelope, or other container in which the Documents are kept or maintained. If for any reason the container cannot be produced, please produce copies of all labels or other identifying markings.

5. Any Document attached to another Document must not be separated.

6. In the event that any Document or Communications called for by these demands has been destroyed, lost, discarded, otherwise disposed of, or is otherwise unavailable, such Document or Communication is to be identified as completely as possible, including, without limitation, the following information: date of disposal; manner of disposal; reason for disposal; person authorizing the disposal; and person disposing of the Document or Communication.

7. Whenever possible, the singular form of a word shall be interpreted in the plural and vice versa; verb tenses shall be interpreted to include past, present, and future tenses; the terms "and" as well as "or" shall be construed either conjunctively or disjunctively, as necessary, to bring within the scope of these demands any Documents or Communications that might otherwise be considered outside their purview; and words imparting the masculine shall include the feminine and vice versa.

8. "All/Any/Each" shall each be construed as encompassing any and all.

9. If an objection is made to part or all of any demand, that part should be specified together with the reasons for the objection. If a claim of privilege is asserted with respect to part or all of any Document on the grounds of attorney-client privilege, the attorney work product

3

doctrine, or any other basis, describe the Document with sufficient particularity to make it susceptible to identification by separately stating the following with respect to any such Document: (1) the type of Document; (2) its date; (3) the name, address, and position of its author(s); (4) the name, address, and position of each recipient of the Document; (5) a general description of the subject matter of the Document; (6) the basis of any claim of privilege; and, (7) if work product immunity is asserted, the proceeding for which the Document was prepared.

10. The "Relevant Period" for the requests is on and after July 1, 2021, through and including the present.

## DOCUMENT REQUESTS

1. All Communications and Documents related to Sphere.

2. All Communications and Documents related to Gryphon.

3. All Communications and Documents relating to the MSA and any orders or collateral agreements thereto, including, but not limited to, all amendments, supplements, side letters, licensing agreements, assignments, or other related agreements, and all drafts thereof.

4. All Communications and Documents reflecting or containing information about payments made to Core in connection with the MSA and any orders thereto, including, but not limited to, receipts, invoices, bills, wire transfers, bank statements, and accounting records, and any Documents reflecting accounting treatment of such payments received.

5. All Communications and Documents relating to any new hosting agreement between Core and Sphere.

6. All Communications and Documents relating to any new hosting agreement between Core and Gryphon.

7. All Communications and Documents related to the Rate, including Core's willingness to honor the Rate and the negotiation or re-negotiation of the Rate.

8. All Communications and Documents related to any increases, changes in, or introduction or administration of any new taxes, levies, tariffs or governmental fees, or charges that Core has sought to pass or considered passing on to its customers, including, without limitation, Sphere and Gryphon.

9. All Documents and Communications related to any miners Core at any time held or operated on behalf of Sphere or Gryphon or that otherwise belonged to Sphere or Gryphon, including without any limitation miners used or operated to mine or otherwise generate bitcoin for Core's own account or benefit.

10. All Documents and Communications related to any bitcoin that was mined or generated for Core's own account or benefit using miners held or operated on behalf of Sphere or Gryphon or that otherwise belonged to Sphere or Gryphon, including without limitation

4

any efforts to send, direct, or return such bitcoin to Sphere or Gryphon or otherwise provide compensation to Sphere or Gryphon in consideration of such bitcoin and Core's statement to Sphere that it was "point[ing] extra hash" to Sphere and/or Gryphon.

11. All Documents and Communications related to actual, anticipated, requested, or rejected deliveries of miners on behalf of any customer to Core, including without limitation the rejection of the delivery of miners on behalf of Sphere and/or Gryphon in December 2021, February 2022, and April 2022.

12. Documents sufficient to show the operability and status of each miner Core held or operated on behalf of Sphere or Gryphon or that otherwise belonged to Sphere or Gryphon during the Relevant Period, including without limitation, logs, reports, or other records showing any uptimes, downtimes, and service disruptions for each miner.

13. Documents sufficient to show the operability and status of all miners in Core's possession, custody, or control on each and every date during the Relevant Period.

14. Documents sufficient to show the number of miners Core was running on behalf of itself and each of its customers on each and every date during the Relevant Period.

15. Documents sufficient to show the number of miners Core could run, power on, or otherwise accommodate on each and every date during the Relevant Period.

16. Documents sufficient to show costs of power and operating miners on each and every date during the Relevant Period.

17. All Documents and Communications related to Core's statement to Sphere in April 2022 that it could not accommodate additional miners "until this summer sometime."

18. All Documents and Communications related to Core's ability to host miners (including without limitation related to available space at its facilities and any space constraints at those facilities), including without limitation on behalf of Sphere, Gryphon, Core, or any other customer.

19. Documents sufficient to show Core's disclosures to B. Riley related to Sphere and Gryphon.