IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|   |   |   |
|---|---|---|
| In re: | § § | Chapter 11 |
| CORE SCIENTIFIC, INC., *et al.*, | § § | Case No. 22-90341 (DRJ) |
|   | § § | (Jointly Administered) |
| Debtors.[1] | § § § |   |

**MOTION OF DEBTORS FOR ORDER AUTHORIZING
THE USE OF PROCEEDS OF DIRECTORS AND OFFICERS LIABILITY
INSURANCE POLICIES FOR DEFENSE EXPENSES OF INDIVIDUAL INSUREDS**

> **IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE ELECTRONICALLY AT HTTPS://ECF.TXSB.USCOURTS.GOV/ WITHIN TWENTY-ONE (21) DAYS FROM THE DATE THIS MOTION WAS FILED. IF YOU DO NOT HAVE ELECTRONIC FILING PRIVILEGES, YOU MUST FILE A WRITTEN OBJECTION THAT IS ACTUALLY RECEIVED BY THE CLERK WITHIN TWENTY-ONE DAYS FROM THE DATE THIS MOTION WAS FILED. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

Core Scientific, Inc. ("**Core**") and its debtor affiliates in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"), represent as follows in support of this motion (the "**Motion**"):

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions, VII, LLC (3198). The Debtors' corporate headquarters and service address is 210 Barton Springs Road, Suite 300, Austin, Texas 78704.

**Jurisdiction and Venue**

1. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**Relief Requested**

2. By this Motion, pursuant to sections 105(a), 362, and 541 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 4001(d) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 4001-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Local Rules**"), the Debtors request entry of an order authorizing, and, to the extent necessary, modifying the automatic stay to allow, the insurance companies (the "**Insurers**") under the Debtors' directors and officers liability insurance policies (collectively, the "**D&O Policies**")[2] to advance covered "Defense Expenses," as that term is defined in the XL Policy,[3] on behalf of individual "Insured Persons" and/or "Insureds," as those terms are defined in the various D&O Policies, in accordance with the D&O Policies.

3. A proposed form of order granting the relief requested herein is annexed hereto as **Exhibit A** (the "**Proposed Order**").

---

[2] The D&O Policies and the Insurers thereunder are as follows: XL Specialty Insurance Policy No. ELU178146-21 (the "**XL Policy**"); Berkley Insurance Company Policy No. BPRO8074986 (the "**Berkley Policy**"); Berkshire Hathaway Specialty Insurance Company Policy No. 47-EPC-319813-01 (the "**Berkshire Hathaway Policy**"); QBE Insurance Corporation Policy No. ELU178146-21 (the "**QBE Policy**"); Pennsylvania Insurance Company Policy No. BFLXDPTX011200_020254_01 (the "**Pennsylvania Policy**"); Beazley Policy No. FSGDO2101332 (the "**Beazley Policy**"); National Union Fire Insurance Company of Pittsburgh, Pa. Policy No. 02-701-97-07 (the "**National Union Policy**"); Vantage Risk Specialty Insurance Company Policy No. ML202100056900 (the "**Vantage Policy**"); Columbia Casualty Company Policy No. 652403528 (the "**Columbia Policy**"); and Obsidian Specialty Insurance Company Policy No. OSIC-371-DOX-1-2022-0 (the "**Obsidian Policy**").

[3] The XL Policy is the primary D&O Policy, and the other D&O Policies include terms that are substantially similar to the portions of the XL Policy that are referenced herein. Thus, this Motion primarily references the XL Policy for simplicity.

**Background**

4. On December 21, 2022 (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b) and Bankruptcy Local Rule 1015-1.

6. On January 9, 2023, the United States Trustee for Region 7 (the "**U.S. Trustee**") appointed an official committee of unsecured creditors in these chapter 11 cases pursuant to section 1102 of the Bankruptcy Code. On March 23, 2023, the U.S. Trustee appointed an official committee of equity holders in these chapter 11 cases pursuant to section 1102 of the Bankruptcy Code. No trustee or examiner has been appointed in these chapter 11 cases.

7. Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the Declaration of Michael Bros in Support of the Debtors' Chapter 11 Petitions and First Day Relief, sworn to on December 21, 2022 (Docket No. 5) (the "**First Day Declaration**").

**The Securities Lawsuit**

8. Prior to the Petition Date, a putative class action lawsuit styled *Pang v. Levitt et al.,* Case No. 1:22-cv-01191, was filed in the United States District Court for the Western District of Texas, Austin Division on behalf of a purported class of people who purchased, or otherwise acquired, Core's securities during a specific prepetition time period, (the "**Securities Lawsuit**"). The plaintiffs in the Securities Lawsuit (the "**Plaintiffs**") assert claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 against three of Core's current and former

officers and directors (collectively, the "**Individual Insureds**"):  (i) Michael Levitt, the current Chief Executive Officer, President, and Co-Chairman of the Board of Directors; (ii) Denise Sterling, the current Chief Financial Officer; and (iii) Michael Trzupek, the former Chief Financial Officer, who served in such capacity from October 12, 2020 to April 4, 2022.  The complaint in the Securities Lawsuit initially named Core as a defendant; however, on December 27, 2022, the Plaintiffs filed a notice of voluntary dismissal, thereby dismissing the claims against Core and leaving the three Individual Insureds as the sole defendants (the "**Voluntary Dismissal**").[4]

9. These three current and former officers and directors are "Insured Persons" and "Insureds" as those terms are defined in the various D&O Policies.

10. As is standard for directors and officers liability insurance policies, the coverage provided pursuant to the D&O Policies includes one or more of the following:

- Side A "Non-Indemnified Loss" Coverage, which protects only the Individual Insureds and only applies when the corporation does not indemnify them for Loss incurred in connection with a Claim.

- Side B "Company Reimbursement" Coverage, which provides insurance only for the corporation as reimbursement for amounts spent to indemnify Individual Insureds in connection with a Claim; and

- Side C "Entity" Coverage, which insures only the corporation and only when the corporation is a defendant in a Securities Claim.

Certain of the D&O Policies provide only Side A coverage, while others provide broader coverage, including a combination of coverage that includes Side A, Side B, Side C, and other coverage features.

---

[4] The Securities Lawsuit is proceeding against the Individual Insureds, with the Plaintiffs to file an amended complaint on or by May 5, 2023.  The Individual Insureds will have 45 days from the filing of the amended complaint to answer, move to dismiss, or otherwise respond.

11. The D&O Policies are clear that each policy is designed for the primary benefit of the "Insured Persons." The XL Policy provides, in relevant part:

> The Insurer shall pay on behalf of the Insured Persons Loss resulting from a Claim first made against the Insured Persons during the Policy Period for a Wrongful Act, except for Loss which the Company is permitted or required to pay on behalf of the Insured Persons as indemnification.

The XL Policy further provides that:

> Bankruptcy or insolvency of any Insured shall not relieve the Insurer of any of its obligations under this Policy. In such event, including any liquidation or reorganization proceeding of the Company, then each Insured and the Insurer hereby agree not to oppose or object to any efforts by any Insured Person to obtain relief from any stay or injunction.

Moreover, under the XL Policy:

- "Claim" includes, but is not limited to "any written demand . . . for . . . monetary or non-monetary relief, including injunctive relief" or "any civil, criminal, administrative or regulatory proceeding commenced by . . . service of a complaint or similar proceeding . . . .";

- "Defense Expenses" are defined to mean "reasonable legal fees, expenses and other costs (including experts' fees): (1) incurred in the investigation, adjustment, settlement, defense and/or appeal of any Claim, Investigation Demand or Interview, including any preparation for such an Interview; (2) incurred due to the arrest and detainment or incarceration of any Insured Person in his or her capacity as a director or officer of the Company and directly related to the business of the Company; (3) incurred in connection with any Claim under section 304 of the Sarbanes-Oxley Act of 2002 or imposed pursuant to section 954 of the Dodd-Frank Wall Street Reform and Consumer Protection Act; or (4) incurred in the defense of any Corporate Manslaughter Charge";

- "Loss" means, among other things, "damages, judgments, settlements, pre-judgment and post-judgment interest or other amounts (including punitive, exemplary or multiplied damages, where insurable by law) that any Insured is legally obligated to pay and Defense Expenses, including that portion of any settlement which represents the claimant's attorneys' fees."

The terms of the other D&O Policies are substantively similar to the XL Policy with respect to the foregoing provisions.

12. In addition, the D&O Policies each contain, either explicitly or by virtue of following form to an underlying policy, a "priority of payments" provision, which provides that the insurer must prioritize the payment of non-indemnified Loss of the individual directors and officers under Side A before making any payments to the corporation under Side B or Side C. *See* XL Policy §VI(L); *see also In re MF Glob. Holdings Ltd.*, 515 B.R. 193, 203 (Bankr. S.D.N.Y. 2014) ("That [priority of payment] provision requires that the Individual Insureds be advanced defense costs before other payments under the D&O Policies"). Priority of payment provisions, such as the ones included in the D&O Policies, are intended to prevent a race between directors or officers, on the one hand, and the company, on the other hand, for the finite pool of proceeds under D&O liability insurance policies.

13. The Individual Insureds, which are represented in the Securities Lawsuit by the law firm of Quinn Emanuel Urquhart & Sullivan, LLP, have incurred, and will continue to incur, Defense Expenses (as defined in the XL Policy) in connection with the Securities Lawsuit. The Securities Lawsuit is a Claim under the D&O Policies, triggering coverage obligations pursuant to their respective terms.

14. Accordingly, by this Motion, the Debtors respectfully seek entry of an order allowing the advancement of Defense Expenses under the D&O Policies. As discussed herein, the proceeds from the D&O Policies (the "**Insurance Proceeds**"), may not be property of the Debtors' estates. To the extent, however, that the Insurance Proceeds are property of the Debtors' estates, cause exists to lift the automatic stay because the Individual Insureds are entitled to the Insurance

Proceeds in accordance with the priority set forth in the D&O Policies and the Individual Insureds would suffer significant harm if they were not to receive such Insurance Proceeds.

### Relief Requested Should be Granted

**A. Relief From the Automatic Stay May Not be Necessary as the Insurance Proceeds at Issue May Not Be Property of the Debtors' Estates.**

15. Relief from the automatic stay may not be necessary to permit the Insurers to advance Defense Expenses because such Insurance Proceeds may not be property of the Debtors' estates.

16. Despite the broad definition of "property of the estate" contained in section 541(a) of the Bankruptcy Code, proceeds of liability insurance policies do not necessarily belong to the estate merely because the underlying insurance policies are themselves estate property. *See La. World Exposition, Inc. v. Fed. Ins. Co.*, 832 F.2d 1391, 1399 (5th Cir. 1987). For example, in *Louisiana World Exposition* and its progeny, the Fifth Circuit has consistently held that, "when a debtor corporation owns a liability policy that *exclusively* covers its directors and officers, . . . the proceeds of that D&O policy are *not* part of the debtor's bankruptcy estate when the debtor corporation owns a liability policy that exclusively covers its directors and officers." *Homsy v. Floyd (In re Vitek, Inc.)*, 51 F.3d 530, 535 (5th Cir. 1995) (emphasis in original) (citing *La. World Exposition*); *see also In re Edgeworth*, 993 F.2d 51, 55–56 (5th Cir. 1993) ("when the debtor has no legally cognizable claim to the insurance proceeds, those proceeds are not property of the estate"). Building on this concept, courts have concluded that when a D&O insurance policy provides payment priority to individual insureds, such proceeds are not part of the bankruptcy estate. *See In re Downey Fin. Corp.*, 428 B.R. 595, 605–06 (Bankr. D. Del. 2010) (citing *La. World Exposition*, 832 F.2d at 1399) (concluding that insurance proceeds were not part of a bankruptcy estate even when the applicable policy contained entity coverage, because the

7

individual insureds had payment priority and because the likely need for indemnification coverage was low); *see also MF Glob. Holdings*, 515 B.R. at 203 (finding that proceeds of a D&O insurance policy were not estate property when individual insureds had payment priority under the terms of the policy).

17. Consequently, it is likely that the Insurance Proceeds related to Side A coverage are not property of the Debtors' estates, and stay relief may not be necessary to allow the Insured Individuals access to those Insurance Proceeds. The Side A coverage here provides coverage and benefits only to the Insured Individuals, but not the Debtors themselves. Thus, under *Louisiana World Exposition* and its progeny, the Side A Insurance Proceeds fall outside of the Debtors' estates. *See Vitek*, 51 F.3d at 535; *La. World Exposition*, 832 F.2d at 1399; *see also* 11 U.S.C. § 541(a).

18. With respect to the Side B and Side C coverage, however, where the liability policy provides coverage to both the debtor and non-debtors (*i.e.,* policies that include Side B or Side C coverage), it is possible that some or all of the proceeds of the Insurance Policies under those policies may be property of the estate and protected by the automatic stay. *See In re World Health Alternatives, Inc.*, 369 B.R. 805, 810 (Bankr. D. Del. 2007) (citing *In re Allied Digital Techs. Corp.*, 306 B.R. 505 (Bankr. D. Del. 2004)) ("When a policy covers the debtor and its directors and officers, and there is risk that payment of proceeds to the directors and officers will result in insufficient coverage of the debtor, then the proceeds are property of the estate and any attempts to obtain the proceeds are prohibited under the automatic stay.").

19. The XL Policy, however, contains a "Priority of Payments" section that provides that payments owed to the Individual Insureds under the Side A coverage, referred to in the XL Policy as Insuring Agreement A, take priority over all other payments, including any

8

potential payments to Core. This payment priority reflects the intent of the D&O policies to protect and indemnify current and former directors, officers, and/or employees, like the Individual Insureds, from costs associated with claims made against them. "In essence and at its core, a D&O policy remains a safeguard of officer and director interest and not a vehicle for corporate protection." *See, e.g.*, *Adelphia Commc'ns Corp. v. Associated Elec. & Gas Ins. Svcs., Ltd. (In re Adelphia Commc'ns Corp.)*, 285 B.R. 580, 593 (Bankr. S.D.N.Y. 2002), *vac'd on other grounds*, (quoting *Ochs v. Lipson (In re First Cent. Fin. Corp.)*, 238 B.R. 9, 16 (Bankr. E.D.N.Y. 1999), *aff'd in unreported opinion*, 2000 U.S. Dist. LEXIS 22005, No. 99-VC-6730 (TCP) (E.D.N.Y. Mar. 2, 2000)). Consequently, some courts have concluded that, when an insurance policy contains such a payment priority, such policy proceeds are not property of the debtor's estates. *See, e.g.*, *Downey*, 428 B.R. at 605–06; *MF Glob. Holdings*, 515 B.R. at 203.

20. Further, in light of the priority of payment and indemnity terms, the Debtors only have a contingent, residual interest in the proceeds of the D&O Policies, including proceeds related to Side B and Side C coverage. *See, e.g.*, *In re Laminate Kingdom LLC*, No. 07-10279-BKC-AJC, 2008 WL 1766637, at *3 (Bankr. S.D. Fla. Mar. 13, 2008) (finding, in light of a priority of payments provision in the applicable insurance policy, the estate's trustee had only a contingent, residual interest in policy proceeds). By their terms, the D&O Policies provide that if Claims are asserted against the Individual Insureds and the Debtors, the Debtors would have access to the Insurance Proceeds only after the applicable Losses incurred by the Individual Insureds, including any defense costs, are satisfied. It thus follows that the Individual Insureds should have access to the Insurance Proceeds pursuant to the terms of the coverages designed to protect them, notwithstanding the bankruptcy of the Debtors. *See Downey*, 428 B.R. at 605–06. Further, given that the Debtors retain their rights to any Side B and Side C Insurance Proceeds following the

payment of those Losses incurred by Individual Insureds, the Debtors' estates are not forfeiting any estate interest by virtue of the relief requested herein. In other words, the Debtors have the same rights to the Side B and Side C coverage that they would have had outside of bankruptcy—a contingent right subject to the priority of payment and indemnity provisions of the D&O Policies.

21. Accordingly, the Debtors respectfully request that the Court allow the use of Insurance Proceeds for the advancement of Defense Expenses in the Securities Lawsuit.

**B.    Even If Certain Insurance Proceeds Are Estate Property, Cause Exists to Modify the Automatic Stay with Respect Thereto.**

22. Even if the Court determines certain proceeds of the D&O Policies are property of the Debtors' estates, sufficient cause exists to modify the automatic stay to (i) permit payments under the D&O Policies on behalf of the Individual Insureds in connection with any claims, present or future, covered by the terms of the D&O Policies and (ii) allow for the potential use of proceeds from the Insurance Policies for Defense Expenses, in accordance with the terms described herein and in the Proposed Order.

23. Section 362(d) of the Bankruptcy Code allows for the modification of the automatic stay and states in pertinent part as follows:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> > (1) for cause, including the lack of adequate protection of an interest in property of such party in interest . . .
>
> 11 U.S.C. § 362(d).

24. To the extent that any portion of the Insurance Proceeds constitutes property of the Debtors' estates, the Court should modify the automatic stay to allow the Insurers to advance the Defense Expenses to the Individual Insureds, as provided for in the D&O Policies. Courts

have recognized that the failure to lift the automatic stay to permit an insured director or officer to access insurance proceeds for purposes of defense costs and indemnification could substantially harm the insureds. *See, e.g.*, *In re Allied Digital Techs. Corp.*, 306 B.R. 505, 514 (D. Del. 2004) ("Without funding, the Individual Defendants will be prevented from conducting a meaningful defense . . . and may suffer substantial and irreparable harm."); *In re Beach First Nat'l Bancshares, Inc.*, 451 B.R. 406, 411 (Bankr. D.S.C. 2011) (finding cause to lift automatic stay to allow insured persons to access policy proceeds even though debtor was covered by same policy). In those cases, courts have determined that the potential harm constitutes sufficient "cause" to lift or modify the automatic stay. *See, e.g.*, *In re MF Glob. Holdings, Ltd.*, 469 B.R. 177, 193 (Bankr. S.D.N.Y. 2012) (lifting the automatic stay to permit insurer to advance defense costs to debtors' current and former directors, officers, and employees because of the irreparable harm such directors, officers, and employees would suffer from paying their defense costs out-of-pocket); *In re CyberMedica, Inc.*, 280 B.R. 12, 17–18 (Bankr. D. Mass. 2002) (lifting automatic stay to permit directors and officers to access defense payments because directors and officers would suffer irreparable harm if prevented from exercising their rights to defense payments under the applicable insurance policy); *see also Laminate Kingdom*, 2008 WL 1766637, at *4 (finding that the proceeds were not estate property but noting that, in the alternative, "numerous courts have granted relief from the automatic stay to permit the advancement of Defense Expenses to a debtor's directors and officers – even though the insurance policies also provided direct coverage to debtor."). Additionally, courts have granted similar relief in other chapter 11 cases. *See, e.g., In re CBL & Associates Properties, Inc.*, No. 20-35226 (DRJ) (Bankr. S.D. Tex. Dec. 21, 2020) (Docket No. 345); *In re Valeritas Holdings Inc.*, No. 20-10290 (JKS) (Bankr. D. Del. Nov. 22, 2020) (Docket No. 578); *In re Sizmek, Inc.*, No. 19-10971 (SMB) (Bankr. S.D.N.Y. May. 15, 2019) (Docket No. 171).

25. The circumstances are no different here. As discussed above, the XL Policy makes clear that advancement of Defense Expenses and indemnity payments for the Individual Insureds takes priority. Moreover, if forced to pay for defense costs out-of-pocket, the Individual Insureds would suffer irreparable harm. Accordingly, even to the extent that the Insurance Proceeds at issue here are property of the Debtors' estates, the automatic stay in Bankruptcy Code section 362 should be modified to permit advancement of Defense Expenses and indemnity for the benefit of the Individual Insureds.

### Notice

26. Notice of this Motion will be served on any party entitled to notice pursuant to Bankruptcy Rule 2002 and any other party entitled to notice pursuant to Local Rule 9013-1(d).

### No Previous Request

27. No previous request for the relief sought herein has been made by the Debtors to this or any other court

*[Remainder of page intentionally left blank]*

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: April 12, 2023
      Houston, Texas

Respectfully submitted,

*/s/  Alfredo R. Pérez*
WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (15776275)
700 Louisiana Street, Suite 1700
Houston, Texas  77002
Telephone: (713) 546-5000
Facsimile:  (713) 224-9511
Email:  Alfredo.Perez@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Ray C. Schrock (admitted *pro hac vice*)
Ronit J. Berkovich (admitted *pro hac vice*)
Moshe A. Fink (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:   (212) 310-8007
Email:  Ray.Schrock@weil.com
        Ronit.Berkovich@weil.com
        Moshe.Fink@weil.com

*Attorneys for Debtors*
*and Debtors in Possession*

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 12, 2023, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                                              */s/  Alfredo R. Pérez*  
                                                              Alfredo R. Pérez