IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| CORE SCIENTIFIC, INC. *et al.* | § | Case No. 22-90341-DRJ |
| | § | |
| Debtors[1] | § | (Jointly Administered) |

## HUMPHREY & ASSOCIATES, INC.'S NOTICE OF PERFECTION, CONTINUATION, AND/OR MAINTENANCE OF MECHANIC'S LIEN PURSUANT TO 11 U.S.C. § 546(B)(2)

Humphrey & Associates, Inc. ("Humphrey") hereby gives this Notice of Perfection, Continuation, or Maintenance of Mechanic's Pursuant to 11 U.S.C. § 546(b)(2), as follows:

1.     Prior the commencement of these cases on December 21, 2022, and pursuant to a contract with McCarthy Building Companies Inc., Humphrey performed labor and provided materials for the electrical and fire alarm scopes of work on the Debtor, Core Scientific, Inc.'s, Denton Data Center Project in Denton, Texas (the "Project").

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions, VII, LLC (3198). The Debtors' corporate headquarters and service address is 210 Barton Springs Road, Suite 300, Austin, Texas 78704.

2.      Humphrey was not paid in full for its labor and materials provided pre-petition, and as a result perfected a Mechanic's and Materialman's Lien on the Project pursuant to Chapter 53 of the Texas Property Code (the "Lien"). The original Lien amount was $9,365,366.20, and the amount owed at this time is $7,036,021.06, excluding interest and attorney's fees. A true and correct copy of Humphrey's proof of claim and exhibits thereto, including the Lien, are attached hereto as Exhibit "A."

3.      The Lien extends to the Project, the real property on which it was constructed, improvements thereon, and/or any leasehold interest in same.

4.      Humphrey hereby files this notice under section 546(b)(2) out of an abundance of caution to perfect, maintain and/or continue perfection of its Lien. This Notice shall not be deemed an admission that this Notice or any other filing is necessary to perfect, or maintain or continue perfection of, the Lien under the Bankruptcy Code, Chapter 53 of the Texas Property Code, or any other applicable law.

5.      Humphrey intends to enforce its Lien to the fullest extent permitted by applicable law and reserves its rights to amend or supplement the Lien and this Notice.

Date: April 14, 2023

Respectfully submitted,

/s/ Jason R. Kennedy
Jason R. Kennedy
State Bar No. 24027100
**LAPEROUSE, P.C.**
5220 Spring Valley Rd., Suite 615
Dallas, Texas 75254
Telephone: 214-396-1099
Email: Jason.Kennedy@laperouselaw.com

ATTORNEYS    FOR    HUMPHREY    &
ASSOCIATES, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of April 2023, a true and correct copy of this document was served via the ECF System on all parties registered to receive ECF service in this case**.**

/s/Jason R. Kennedy
Jason R. Kennedy

<table>
<tr><td colspan="2"><strong>Fill in this information to identify the case:</strong></td></tr>
<tr><td>Debtor 1</td><td>CORE SCIENTIFIC, INC.</td></tr>
<tr><td>Debtor 2<br>(Spouse, if filing)</td><td></td></tr>
<tr><td colspan="2">United States Bankruptcy Court for the: Southern District of Texas</td></tr>
<tr><td>Case number</td><td>22-90341 (DRJ)</td></tr>
</table>

## Official Form 410

# Proof of Claim

04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. **Do not use this form to make a request for payment of an administrative expense.** Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed.** That date is on the notice of bankruptcy (Form 309) **that you received.**

| Part 1: | Identify the Claim |
| --- | --- |

| 1. Who is the current creditor? | Humphrey & Associates, Inc. |
| --- | --- |
| | Name of the current creditor (the person or entity to be paid for this claim) |
| | Other names the creditor used with the debtor _____ |

| 2. Has this claim been acquired from someone else? | ☑ No |
| --- | --- |
| | ☐ Yes. From whom? _____ |

| 3. Where should notices and payments to the creditor be sent? | **Where should notices to the creditor be sent?** | **Where should payments to the creditor be sent?** (if different) |
| --- | --- | --- |
| Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | c/o Jason R. Kennedy, Laperouse, PC | |
| | Name | Name |
| | 5220 Spring Valley Rd., Suite 615 | |
| | Number     Street | Number     Street |
| | Dallas          TX     75254 | |
| | City             State        ZIP Code | City             State        ZIP Code |
| | Contact phone 214-396-1099 | Contact phone _____ |
| | Contact email bankruptcy@laperouselaw.com | Contact email _____ |
| | Uniform claim identifier for electronic payments in chapter 13 (if you use one): | |
| | __ __ __ __ — __ __ __ __ — __ __ __ __ — __ __ __ __ | |

| 4. Does this claim amend one already filed? | ☑ No | |
| --- | --- | --- |
| | ☐ Yes. Claim number on court claims registry (if known) _____ | Filed on _____ <br> MM / DD / YYYY |

| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☑ No |
| --- | --- |
| | ☐ Yes. Who made the earlier filing? _____ |

Exhibit A

**Part 2:**    **Give Information About the Claim as of the Date the Case Was Filed**

| | |
|---|---|
| 6. **Do you have any number you use to identify the debtor?** | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____ |

7. **How much is the claim?**    $_____7,036,021.06_   **Does this amount include interest or other charges?**
   - ☑ No
   - ☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8. **What is the basis of the claim?**

   Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

   Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

   Limit disclosing information that is entitled to privacy, such as health care information.

   Construction services/Electrical work/Mechanic's lien

9. **Is all or part of the claim secured?**

   ☐ No<br>
   ☑ Yes.   The claim is secured by a lien on property.

   **Nature of property:**
   - ☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
   - ☐ Motor vehicle
   - ☐ Other. Describe: _____

   **Basis for perfection:**    Mechanic's lien
   Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

   **Value of property:**    $_____
   **Amount of the claim that is secured:**    $___7,036,021.06_
   **Amount of the claim that is unsecured:**   $_____0.00_ (The sum of the secured and unsecured amounts should match the amount in line 7.)

   **Amount necessary to cure any default as of the date of the petition:**    $_____7,036,021.06_

   **Annual Interest Rate (when case was filed)_____%**
   - ☐ Fixed
   - ☐ Variable

10. **Is this claim based on a lease?**

    ☑ No<br>
    ☐ Yes. Amount necessary to cure any default as of the date of the petition.    $_____

11. **Is this claim subject to a right of setoff?**

    ☑ No<br>
    ☐ Yes. Identify the property: _____

Exhibit A

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?<br><br>A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☑ No<br>☐ Yes. *Check one:* | | Amount entitled to priority |
|---|---|---|---|
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | | $_____ |
| | ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | | $_____ |
| | ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | | $_____ |
| | * Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment. | | |

## Part 3:  Sign Below

| The person completing this proof of claim must sign and date it. FRBP 9011(b).<br><br>If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.<br><br>**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.** | *Check the appropriate box:*<br><br>☑ I am the creditor.<br>☐ I am the creditor's attorney or authorized agent.<br>☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.<br>☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.<br><br>I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.<br><br>I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.<br><br>I declare under penalty of perjury that the foregoing is true and correct.<br><br>Executed on date  04/13/2023<br>　　　　　　　　　　MM / DD / YYYY |
|---|---|

Signature

Print the name of the person who is completing and signing this claim:

| Name | Randall          Paul          Humphrey |
|---|---|
| | First name　　　　　　　Middle name　　　　　　Last name |
| Title | EVP |
| Company | Humphrey & Associates, Inc. |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |
| Address | 1501 Luna Rd |
| | Number　　　Street |
| | Carrollton　　　　　　　　　　　　　TX　　75006 |
| | City　　　　　　　　　　　　　　　State　　ZIP Code |
| Contact phone | 972 620 1075　　　Email  randyhe@eamhumphrey.com |

Exhibit A

| Customer | Status Type | Status Date | Status Seq | Status | Invoice | Contract | Amount | Cash Receipt | Adjustment | Retainage Held | Retainage Billed | Outstanding Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| MCCA01 | Invoice | 1-28-2022 | 1.00 | Paid | 502100811 | 50-21-0081 | 125,000.00 | (112,500.00) | - | (12,500.00) | - | - |
| MCCA01 | Invoice | 1-28-2022 | 2.00 | Paid | 502100812 | 50-21-0081 | 195,000.00 | (175,500.00) | - | (19,500.00) | - | - |
| MCCA01 | Invoice | 2-11-2022 | 1.00 | Paid | 502100813 | 50-21-0081 | 1,522,500.00 | (1,370,250.00) | - | (152,250.00) | - | - |
| MCCA01 | Invoice | 2-25-2022 | 1.00 | Paid | 502100814 | 50-21-0081 | 1,094,266.00 | (984,839.40) | - | (109,426.60) | - | - |
| MCCA01 | Invoice | 3-11-2022 | 1.00 | Paid | 502100815 | 50-21-0081 | 1,025,226.00 | (922,703.40) | - | (102,522.60) | - | - |
| MCCA01 | Invoice | 3-25-2022 | 1.00 | Paid | 502100816 | 50-21-0081 | 1,479,481.00 | (1,331,532.90) | - | (147,948.10) | - | - |
| MCCA01 | Invoice | 4-14-2022 | 1.00 | Paid | 502100817 | 50-21-0081 | 2,002,600.00 | (1,802,340.00) | - | (200,260.00) | - | - |
| MCCA01 | Invoice | 4-27-2022 | 1.00 | Paid | 502100818 | 50-21-0081 | 1,072,037.00 | (964,833.30) | - | (107,203.70) | - | - |
| MCCA01 | Invoice | 5-12-2022 | 1.00 | Paid | 502100819 | 50-21-0081 | 1,848,000.00 | (1,663,200.00) | - | (184,800.00) | - | - |
| MCCA01 | Invoice | 6-01-2022 | 1.00 | Paid | 5021008110 | 50-21-0081 | 1,249,500.00 | (1,124,550.00) | - | (124,950.00) | - | - |
| MCCA01 | Invoice | 6-15-2022 | 1.00 | Paid | 5021008111 | 50-21-0081 | 1,167,400.00 | (1,050,660.00) | - | (116,740.00) | - | - |
| MCCA01 | Invoice | 6-30-2022 | 2.00 | Paid | 5021008112 | 50-21-0081 | 1,973,667.00 | (1,776,300.30) | - | (197,366.70) | - | - |
| MCCA01 | Invoice | 7-14-2022 | 1.00 | Paid | 5021008113 | 50-21-0081 | 1,131,326.00 | (1,018,193.40) | - | (113,132.60) | - | - |
| MCCA01 | Invoice | 7-29-2022 | 1.00 | Paid | 5021008114 | 50-21-0081 | 1,291,699.00 | (1,162,529.10) | - | (129,169.90) | - | - |
| MCCA01 | Invoice | 8-11-2022 | 1.00 | Paid | 5021008115 | 50-21-0081 | 1,704,022.00 | (1,533,619.80) | - | (170,402.20) | - | - |
| MCCA01 | Invoice | 8-26-2022 | 1.00 | Unpaid | 5021008191 | 50-21-0081 | - | - | - | - | 38,560.00 | 38,560.00 |
| MCCA01 | Invoice | 8-30-2022 | 1.00 | Paid | 5021008116 | 50-21-0081 | 1,701,638.00 | (1,531,474.20) | - | (170,163.80) | - | - |
| MCCA01 | Invoice | 8-30-2022 | 2.00 | Unpaid | 5021008190 | 50-21-0081 | - | - | - | - | 451,946.50 | 451,946.50 |
| MCCA01 | Invoice | 8-30-2022 | 5.00 | Unpaid | 5021008192 | 50-21-0081 | - | - | - | - | 106,318.40 | 106,318.40 |
| MCCA01 | Invoice | 9-07-2022 | 1.00 | Paid | 5021008120 | 50-21-0081 | 815,500.00 | (733,950.00) | - | (81,550.00) | - | - |
| MCCA01 | Invoice | 9-20-2022 | 1.00 | Paid | 5021008121 | 50-21-0081 | 1,066,288.00 | (959,659.20) | - | (106,628.80) | - | - |
| MCCA01 | Invoice | 10-07-2022 | 1.00 | Unpaid | 5021008122 | 50-21-0081 | 1,993,784.00 | (1,369,685.94) | - | (199,378.40) | - | 424,719.66 |
| MCCA01 | Invoice | 10-25-2022 | 1.00 | Unpaid | 5021008123 | 50-21-0081 | 908,009.00 | - | - | (90,800.90) | - | 817,208.10 |
| MCCA01 | Invoice | 2-28-2023 | 1.00 | Unpaid | 5021008124 | 50-21-0081 | 3,257,399.00 | - | - | (325,739.90) | - | 2,931,659.10 |
| MCCA01 | Invoice | 2-28-2023 | 2.00 | Unpaid | 5021008193 | 50-21-0081 | - | - | - | - | 457,211.70 | 457,211.70 |
| MCCA01 | Invoice | 2-28-2023 | 3.00 | Unpaid | 5021008194 | 50-21-0081 | - | - | - | - | 254,024.30 | 254,024.30 |
| MCCA01 | Invoice | 2-28-2023 | 4.00 | Unpaid | 5021008195 | 50-21-0081 | - | - | - | - | 39,387.30 | 39,387.30 |
| | | | | | | | 28,624,342.00 | (21,588,320.94) | | (2,862,434.20) | 1,347,448.20 | 5,521,035.06 |

| | |
|---|---|
| AMT Due | 7,036,021.06 |

Exhibit A

# Denton County
## Juli Luke
### County Clerk

---

**Instrument Number:** 158075

ERecordings-RP

LIEN

---

Recorded On: November 15, 2022 08:44 AM

Number of Pages: 9

---

### " Examined and Charged as Follows: "

Total Recording: $58.00

---

### *********** THIS PAGE IS PART OF THE INSTRUMENT ***********

Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.

**File Information:**

| | | **Record and Return To:** |
|---|---|---|
| Document Number: | 158075 | Corporation Service Company |
| Receipt Number: | 20221114000793 | |
| Recorded Date/Time: | November 15, 2022 08:44 AM | |
| User: | Kraig T | |
| Station: | Station 21 | |

---



**STATE OF TEXAS**
**COUNTY OF DENTON**

I hereby certify that this Instrument was FILED In the File Number sequence on the date/time
printed hereon, and was duly RECORDED in the Official Records of Denton County, Texas.

Juli Luke
County Clerk
Denton County, TX

Exhibit A

# LIEN AFFIDAVIT AND CLAIM

| | |
|---|---|
| THE STATE OF TEXAS | § |
| | § |
| COUNTY OF DENTON | § |

BEFORE ME, the undersigned notary public, personally appeared Randy Humphrey, who, upon his oath, deposed and stated the following:

1.    My name is Randy Humphrey. I am the Executive Vice-President of Humphrey & Associates, Inc., hereinafter referred to as "**Claimant.**" I am competent and authorized to make this affidavit on behalf of Claimant. I have personal knowledge of the matters set forth below, and the facts stated herein are true and correct.

2.    Claimant:

**Humphrey & Associates, Inc.,** whose physical address and mailing address is 1501 Luna Rd, Carrollton, Texas 75006.

3.    Property:

The property sought to be charged with the lien is the leasehold interest in the Core Scientific Denton Data Center Project located at 8151 Jim Christal Road, Denton, Texas 76207, 8161 Jim Christal Road, Denton, Texas 76207, and/or 8171 Jim Christal Road, Denton, Texas 76207, and more particularly described as Site One and Site Two in **Exhibit A** attached hereto (the "**Property**").

4.    Claimant furnished labor and materials pursuant to a subcontract with the original contractor on the Project:

**McCarthy Building Companies Inc.,** whose last known address is 12001 N. Central Expressway, Suite 400, Dallas, Texas 75243.

5.    Original contractor:

**McCarthy Building Companies Inc.,** whose last known address is 12001 N. Central Expressway, Suite 400, Dallas, Texas 75243.

6.    The owner or reputed owner of the leasehold interest in the Property is:

**Core Scientific, Inc.,** whose last known addresses are 106 E. 6th Street, Suite 900-145, Austin, TX 78701 and 210 Barton Springs Rd., Ste 300, Austin, TX 78704;

7.      The labor and materials furnished by Claimant are generally described as follows: electrical and fire alarm scope of work and other related items.

8.      The amount of this claim is $9,365,366.20, which remains unpaid and owing to Claimant, and Claimant claims a lien on the leasehold interest in the Property to secure payment of such amount.

9.      The month or months that the work was done and materials were furnished for which payment is requested are January 2022 through October 2022.

10.      Notice was sent to the owner or reputed owner of the leasehold interest in the Property on the following dates and by the following method:

| Date Sent | Method Sent |
|---|---|
| November 14, 2022 | Certified Mail, Return Receipt Requested and Federal Express |

11.      A copy of this Affidavit is being sent by certified mail, return receipt requested, to the owner or reputed owner and the Original Contractor at their last known addresses set forth above.

**Humphrey & Associates, Inc.**

By: _____
Randy Humphrey
Executive Vice-President


STATE OF TEXAS          §
                        §
COUNTY OF Dallas        §

SUBSCRIBED AND SWORN TO BEFORE ME on this the 14 day of November 2022, by Randy Humphrey, Executive Vice-President of Humphrey & Associates, Inc.

_____
Notary Public in and for the State of Texas

Michelle Delmar
Printed or typed name of notary

MICHELLE ANN DELMAR
Notary Public, State of Texas
Comm. Expires 08-06-2026
Notary ID 12484544-5

STATE OF TEXAS          §

§

COUNTY OF Dallas      §

        BEFORE ME, the undersigned authority, a notary public in and for the State of Texas on this day personally appeared Randy Humphrey, known to me to be the person and official whose name is subscribed to the foregoing instrument and acknowledged to me that the same was the act of the said Humphrey & Associates, Inc., and that he executed the same as the act of such entity for the purposes therein expressed, and in the capacity therein stated.

        GIVEN UNDER MY HAND AND SEAL OF OFFICE on this the 14th day of November 2022.



MICHELLE ANN DELMAR
Notary Public, State of Texas
Comm. Expires 08-06-2026
Notary ID 12484544-5

_____
Notary Public in and for the State of Texas

Michelle Delman
_____
Printed or Typed Name of Notary



## Leased Premises

### Site One

BEING a 19.064 acre tract of land situated in the Moses H. Davis Survey, Abstract No. 377, City of Denton, Denton County, Texas, being part of a called 340.469 acre tract of land described in a Deed to the City of Denton, a Texas home-rule municipal corporation, as recorded in Document No. 2016-143882 of the Official Records of Denton County, Texas and being more particularly described as follows:

COMMENCING at a 1/2 inch iron rod found for an interior Southwest corner of the above cited 340.469 acre tract and the Northwest corner of a called 116.154 acre tract of land described in a Deed to the Mark Hicks Investments, LLC as recorded in Document No. 2021-8595 of the Official Records of Denton County, Texas, from which a 1/2 inch iron rod with cap stamped "Vannoy 563-7101" found for an interior ell corner of said 340.469 acre tract, same being the Northeast corner of a called 152 acre tract of land described in a Deed to Walter B. (Bud) Wolf, as recorded in Volume 533, Page 541 of the Deed Records of Denton County, Texas bears North 00°26'46" East, a distance of 599.88 feet;

THENCE South 89°50'49" East along the South line of said 340.469 acre tract and North line of said 116.154 acre tract, for a distance of 506.72 feet to a 5/8 inch iron rod with cap stamped "TNP" set for the POINT OF BEGINNING of the herein described tract;

THENCE North 0 1°31'40" West departing the South line of said 340.469 acre tract and the North line of said 116.154 acre tract, for a distance of 608.71 feet to a 5/8 inch iron rod with cap stamped "TNP" set;

THENCE South 89°59'35" East for a distance of 611.28 feet to an "X" cut set in concrete;

THENCE South 00°00'25" West for a distance of 65.60 feet to a 5/8 inch iron rod with cap stamped "TNP" set;

THENCE North 90°00'00" East for a distance of 872.65 feet to a 5/8 inch iron rod with cap stamped "TNP" set at the beginning of a non-tangent curve to the left;

THENCE in a Southern direction, along said non-tangent curve to the left having a central angle of 07°27'36", a radius of 4210.63 feet, a chord bearing of South 03°47'11" West, a chord distance of 547.84 feet and an arc length of 548.23 feet to a 5/8 inch iron rod with cap stamped "TNP" set in the South line of said 340.469 acre tract and the North line of said 116.154 acre tract, from which a 1/2 inch iron rod with cap stamped "Vannoy 563-7101" found for the Northeast corner of said 116.154 acre tract and an interior ell corner of said 340.469 acre tract bears South 89°50'49" East, a distance of 420.07 feet;

THENCE North 89°50'49" West along the South line of said 340.469 acre tract and the North line of said 116.154 acre tract, for a distance of 1431.52 feet to the POINT OF BEGINNING, and containing 19.064 acres of land, more or less.



## Site Two

BEING an 11.256 acre tract of land situated in the Moses H. Davis Survey, Abstract No. 377 and the Johnson, Green, Myers and Brummett Survey, Abstract No. 1699, City of Denton, Denton County, Texas, being part of a called 340.469 acre tract of land described in a Deed to the City of Denton, a Texas home-rule municipal corporation, as recorded in Document No. 2016-143882 of the Official Records of Denton County, Texas and being more particularly described as follows:

COMMENCING at a 5/8 inch iron rod found for the Southwest corner of Lot 1, Block 1 of Krum Tap Electrical Switch Station, per Plat recorded in Document No. 2010-3 of the Plat Records of Denton County, Texas;

THENCE North 89°39'01" East along the South line of said Lot 1, for a distance of 21.24 feet to a 5/8 inch iron rod with cap stamped "TNP" set for the POINT OF BEGINNING of the herein described tract;

Exhibit A
EXHIBIT "A"

THENCE North 89°39'01" East continuing along the South line of said Lot 1, passing a 5/8 inch iron rod found for the Southeast corner of same at a distance of 658.12 feet, and continuing for a total distance of 806.50 to a 5/8 inch iron rod with cap stamped "TNP" set;

THENCE South 67°31'07" East, for a distance of 85.93 to a 5/8 inch iron rod with cap stamped "TNP" set;

THENCE South 75°20'51" East, for a distance of 150.68 to a 5/8 inch iron rod with cap stamped "TNP" set;

THENCE South 56°48'38" East, for a distance of 80.84 to a 5/8 inch iron rod with cap stamped "TNP" set;

THENCE South 21°23'05" East, for a distance of 76.31 to a 5/8 inch iron rod with cap stamped "TNP" set;

THENCE South 43°26'26" East, for a distance of 72.63 to a 5/8 inch iron rod with c-.ap stamped "TNP" set;

THENCE South 00°24'23" East, for a distance of 179.60 to a 5/8 inch iron rod with cap stamped "TNP" set;

THENCE North 90°00'00" West, for a distance of 1259.39 to a 5/8 inch iron rod with cap stamped "TNP" set;

THENCE North 70°47'23" West, for a distance of 60.77 to a 5/8 inch iron rod with cap stamped "TNP" set;

THENCE North 19°22'19" East, for a distance of 417.32 to the POINT OF BEGINNING, and containing 11.256 acres of land, more or less.

EXHIBIT "A"





**Dallas | Baton Rouge**
Jason R. Kennedy
Managing Shareholder—Dallas Office
Jason.Kennedy@laperouselaw.com



November 18, 2022

*Via CMRRR #7021 2720 0002 6973 6675*
*and via Federal Express*
Core Scientific, Inc.
210 Barton Springs Rd, Ste 300
Austin, TX 78704 USA

*Via CMRRR #7021 2720 0002 6973 6682*
*and via Federal Express*
Core Scientific, Inc.
Attn: General Counsel
2800 Northup Way #220
Bellevue, WA 98004

      Re:    Claimant: Humphrey & Associates, Inc.
               Claimant's Address: 1501 Luna Rd, Carrollton, Texas 75006
               Claim amount: $9,365,366.20
               Project: Core Scientific Denton Data Center, 8151 and 8161 Jim
                   Christal Road, Denton, Texas 76207 (the "Project").
               Prime Contractor: McCarthy Building Companies Inc.

Dear Sirs or Madams:

      The copy of the Lien Affidavit that was sent to you via letter dated November 14, 2022 was not the actual copy that was filed with the County Clerk of Denton County, Texas. Therefore, enclosed is a file-marked copy of the Lien Affidavit and claim filed by Humphrey & Associates, Inc.

      Sincerely,

      Jason R. Kennedy

Enclosure

Exhibit A

Core Scientific, Inc.
McCarthy Building Companies Inc.
November 18, 2022
Page 2

cc:     *Via CMRRR #7021 2720 0002 6973 6699 and*
        *Via Federal Express*
        McCarthy Building Companies Inc.
        12001 N. Central Expressway, Suite 400
        Dallas, Texas 75243

        *Via CMRRR #7021 2720 0002 6973 6705*
        City of Denton
        215 E McKinney Street
        Denton, TX 76201

Exhibit A

**Denton County**

**Juli Luke**

**County Clerk**

---

**Instrument Number:** 158075

ERecordings-RP

LIEN

Recorded On: November 15, 2022 08:44 AM          Number of Pages: 9

---

**" Examined and Charged as Follows: "**

Total Recording: $58.00

---

**\*\*\*\*\*\*\*\*\*\*\* THIS PAGE IS PART OF THE INSTRUMENT \*\*\*\*\*\*\*\*\*\*\***
Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.

**File Information:**                          **Record and Return To:**

Document Number:      158075                 Corporation Service Company

Receipt Number:        20221114000793

Recorded Date/Time:   November 15, 2022 08:44 AM

User:                  Kraig T

Station:               Station 21

---



**STATE OF TEXAS**
**COUNTY OF DENTON**

I hereby certify that this Instrument was FILED In the File Number sequence on the date/time
printed hereon, and was duly RECORDED in the Official Records of Denton County, Texas.

Juli Luke                                                    Exhibit A
County Clerk
Denton County, TX

# LIEN AFFIDAVIT AND CLAIM

THE STATE OF TEXAS     §
§
COUNTY OF DENTON     §

       BEFORE ME, the undersigned notary public, personally appeared Randy Humphrey, who, upon his oath, deposed and stated the following:

       1.      My name is Randy Humphrey. I am the Executive Vice-President of Humphrey & Associates, Inc., hereinafter referred to as "**Claimant.**" I am competent and authorized to make this affidavit on behalf of Claimant. I have personal knowledge of the matters set forth below, and the facts stated herein are true and correct.

       2.      Claimant:

          **Humphrey & Associates, Inc.,** whose physical address and mailing address is 1501 Luna Rd, Carrollton, Texas 75006.

       3.      Property:

       The property sought to be charged with the lien is the leasehold interest in the Core Scientific Denton Data Center Project located at 8151 Jim Christal Road, Denton, Texas 76207, 8161 Jim Christal Road, Denton, Texas 76207, and/or 8171 Jim Christal Road, Denton, Texas 76207, and more particularly described as Site One and Site Two in **Exhibit A** attached hereto (the "**Property**").

       4.      Claimant furnished labor and materials pursuant to a subcontract with the original contractor on the Project:

          **McCarthy Building Companies Inc.,** whose last known address is 12001 N. Central Expressway, Suite 400, Dallas, Texas 75243.

       5.      Original contractor:

          **McCarthy Building Companies Inc.,** whose last known address is 12001 N. Central Expressway, Suite 400, Dallas, Texas 75243.

       6.      The owner or reputed owner of the leasehold interest in the Property is:

          **Core Scientific, Inc.,** whose last known addresses are 106 E. 6th Street, Suite 900-145, Austin, TX 78701 and 210 Barton Springs Rd., Ste 300, Austin, TX 78704;

7.     The labor and materials furnished by Claimant are generally described as follows: electrical and fire alarm scope of work and other related items.

8.     The amount of this claim is $9,365,366.20, which remains unpaid and owing to Claimant, and Claimant claims a lien on the leasehold interest in the Property to secure payment of such amount.

9.     The month or months that the work was done and materials were furnished for which payment is requested are January 2022 through October 2022.

10.     Notice was sent to the owner or reputed owner of the leasehold interest in the Property on the following dates and by the following method:

| Date Sent | Method Sent |
|---|---|
| November 14, 2022 | Certified Mail, Return Receipt Requested and Federal Express |

11.     A copy of this Affidavit is being sent by certified mail, return receipt requested, to the owner or reputed owner and the Original Contractor at their last known addresses set forth above.

**Humphrey & Associates, Inc.**

By: _____
Randy Humphrey
Executive Vice-President

STATE OF TEXAS                    §
                                  §
COUNTY OF Dallas                  §

SUBSCRIBED AND SWORN TO BEFORE ME on this the 14 day of November 2022, by Randy Humphrey, Executive Vice-President of Humphrey & Associates, Inc.

_____
Notary Public in and for the State of Texas

_____
Printed or typed name of notary

MICHELLE ANN DELMAR
Notary Public, State of Texas
Comm. Expires 08-06-2026
Notary ID 12484544-5

STATE OF TEXAS §
§
COUNTY OF Dallas §

BEFORE ME, the undersigned authority, a notary public in and for the State of Texas on this day personally appeared Randy Humphrey, known to me to be the person and official whose name is subscribed to the foregoing instrument and acknowledged to me that the same was the act of the said Humphrey & Associates, Inc., and that he executed the same as the act of such entity for the purposes therein expressed, and in the capacity therein stated.

GIVEN UNDER MY HAND AND SEAL OF OFFICE on this the 14th day of November 2022.



_____
Notary Public in and for the State of Texas

Michelle Delman
_____
Printed or Typed Name of Notary



## Leased Premises

### Site One

BEING a 19.064 acre tract of land situated in the Moses H. Davis Survey, Abstract No. 377, City of Denton, Denton County, Texas, being part of a called 340.469 acre tract of land described in a Deed to the City of Denton, a Texas home-rule municipal corporation, as recorded in Document No. 2016-143882 of the Official Records of Denton County, Texas and being more particularly described as follows:

COMMENCING at a 1/2 inch iron rod found for an interior Southwest corner of the above cited 340.469 acre tract and the Northwest corner of a called 116.154 acre tract of land described in a Deed to the Mark Hicks Investments, LLC, as recorded in Document No. 2021-8595 of the Official Records of Denton County, Texas, from which a 1/2 inch iron rod with cap stamped "Vannoy 563-7101" found for an interior ell corner of said 340.469 acre tract, same being the Northeast corner of a called 152 acre tract of land described in a Deed to Walter B. (Bud) Wolf, as recorded in Volume 533, Page 541 of the Deed Records of Denton County, Texas bears North 00°26'46" East, a distance of 599.88 feet;

THENCE South 89°50'49" East along the South line of said 340.469 acre tract and North line of said 116.154 acre tract, for a distance of 506.72 feet to a 5/8 inch iron rod with cap stamped "TNP" set for the POINT OF BEGINNING of the herein described tract;

THENCE North 01°31'40" West departing the South line of said 340.469 acre tract and the North line of said 116.154 acre tract, for a distance of 608.71 feet to a 5/8 inch iron rod with cap stamped "TNP" set;

THENCE South 89°59'35" East for a distance of 611.28 feet to an "X" cut set in concrete;

THENCE South 00°00'25" West for a distance of 65.60 feet to a 5/8 inch iron rod with cap stamped "TNP" set;

THENCE North 90°00'00" East for a distance of 872.65 feet to a 5/8 inch iron rod with cap stamped "TNP" set at the beginning of a non-tangent curve to the left;

THENCE in a Southern direction, along said non-tangent curve to the left having a central angle of 07°27'36", a radius of 4210.63 feet, a chord bearing of South 03°47'11" West, a chord distance of 547.84 feet and an arc length of 548.23 feet to a 5/8 inch iron rod with cap stamped "TNP" set in the South line of said 340.469 acre tract and the North line of said 116.154 acre tract, from which a 1/2 inch iron rod with cap stamped "Vannoy 563-7101" found for the Northeast corner of said 116.154 acre tract and an interior ell corner of said 340.469 acre tract bears South 89°50'49" East, a distance of 420.07 feet;

EXHIBIT "A"

THENCE North 89°50'49" West along the South line of said 340.469 acre tract and the North line of said 116.154 acre tract, for a distance of 1431.52 feet to the POINT OF BEGINNING, and containing 19.064 acres of land, more or less.



### Site Two

BEING an 11.256 acre tract of land situated in the Moses H. Davis Survey, Abstract No. 377 and the Johnson, Green, Myers and Brummett Survey, Abstract No. 1699, City of Denton, Denton County, Texas, being part of a called 340.469 acre tract of land described in a Deed to the City of Denton, a Texas home-rule municipal corporation, as recorded in Document No. 2016-143882 of the Official Records of Denton County, Texas and being more particularly described as follows:

COMMENCING at a 5/8 inch iron rod found for the Southwest corner of Lot 1, Block 1 of Krum Tap Electrical Switch Station, per Plat recorded in Document No. 2010-3 of the Plat Records of Denton County, Texas;

THENCE North 89°39'01" East along the South line of said Lot 1, for a distance of 21.24 feet to a 5/8 inch iron rod with cap stamped "TNP" set for the POINT OF BEGINNING of the herein described tract;

Exhibit A
EXHIBIT "A"

THENCE North 89°39'01" East continuing along the South line of said Lot 1, passing a 5/8 inch iron rod found for the Southeast corner of same at a distance of 658.12 feet, and continuing for a total distance of 806.50 to a 5/8 inch iron rod with cap stamped "TNP" set;

THENCE South 67°31'07" East, for a distance of 85.93 to a 5/8 inch iron rod with cap stamped "TNP" set;

THENCE South 75°20'51" East, for a distance of 150.68 to a 5/8 inch iron rod with cap stamped "TNP" set;

THENCE South 56°48'38" East, for a distance of 80.84 to a 5/8 inch iron rod with cap stamped "TNP" set;

THENCE South 21°23'05" East, for a distance of 76.31 to a 5/8 inch iron rod with cap stamped "TNP" set;

THENCE South 43°26'26" East, for a distance of 72.63 to a 5/8 inch iron rod with c-ap stamped "TNP" set;

THENCE South 00°24'23" East, for a distance of 179.60 to a 5/8 inch iron rod with cap stamped "TNP" set;

THENCE North 90°00'00" West, for a distance of 1259.39 to a 5/8 inch iron rod with cap stamped "TNP" set;

THENCE North 70°47'23" West, for a distance of 60.77 to a 5/8 inch iron rod with cap stamped "TNP" set;

THENCE North 19°22'19" East, for a distance of 417.32 to the POINT OF BEGINNING, and containing 11.256 acres of land, more or less.

Exhibit A
**EXHIBIT "A"**



Exhibit A

EXHIBIT "A"



**LAPEROUSE LAW**
ATTORNEYS AND COUNSELORS



BOARD CERTIFIED®
Texas Board of Legal Specialization
CONSTRUCTION LAW

**Dallas | Baton Rouge**
Jason R. Kennedy
Managing Shareholder—Dallas Office
Jason.Kennedy@laperouselaw.com

November 14, 2022

*Via CMRRR #7021 2720 0002 6973 6859*
and *Via Federal Express*
Core Scientific, Inc.
210 Barton Springs Rd, Ste 300
Austin, TX 78704 USA

*Via CMRRR #7021 2720 0002 6973 6835*
and *Via Federal Express*
Core Scientific, Inc.
106 E. 6th Street, Suite 900-145
Austin, TX 78701

  Re: Claimant: Humphrey & Associates, Inc.
     Claimant's Address: 1501 Luna Rd, Carrollton, Texas 75006
     Claim amount: $9,365,366.20
     Project: Core Scientific Denton Data Center, 8151 and 8161 Jim
       Christal Road, Denton, Texas 76207 (the "Project").
     Prime Contractor: McCarthy Building Companies Inc.

Dear Sirs or Madams:

  Please consider this formal notice under Chapter 53 of the TEXAS PROPERTY CODE that an unpaid balance in the amount of $9,365,366.20 is due and owing for labor and materials furnished by Humphrey & Associates, Inc. ("Humphrey") under a subcontract with McCarthy Building Companies Inc., 12001 N. Central Expressway, Suite 400, Dallas, Texas 75243 ("McCarthy") on the Project (the "Subcontract"). The amount claimed is for work performed August through October of 2022, and includes retainage in the amount of $2,862,434.20.

  You are further given notice pursuant to section 53.057 of the TEXAS PROPERTY CODE that the Subcontract contains a requirement that 10% retainage be withheld from Humphrey, whose address is 1501 Luna Rd, Carrollton, Texas 75006.

  Enclosed is a true and correct statement of account that is due and owing.

  You are also hereby given notice pursuant to Section 53.083 of the TEXAS PROPERTY CODE that all or part of this claim has accrued under Section 53.053 of the

LAPEROUSE, P.C.  5220 Spring Valley Rd., Suite 615  Dallas, TX 75254  Main: 214-396-1099  Direct: 214-396-1105

Exhibit A

Core Scientific, Inc.
McCarthy Building Companies Inc.
November 14, 2022
Page 2

TEXAS PROPERTY CODE and/or is past due according to the agreement between the parties. Demand is hereby made upon you for payment in full of this claim.

If this claim remains unpaid, you may be personally liable and your property subjected to a lien unless you withhold payment from the contractor for the payment of this claim or unless this claim is otherwise paid or settled.

Pursuant to Section 53.159 of the TEXAS PROPERTY CODE, you are requested to furnish the following information within ten days from your receipt of this request:

(1)     A legal description of the real property upon which improvements are being constructed;

(2)     The name and address of any person having a prior recorded lien or security interest on the property;

(3)     The name and address of the surety, if any, providing a bond for the improvements, and a copy of the bond, if any; and

(4)     The date on which the original contract for the project was executed.

Further, in accordance with Section 53.107 of the TEXAS PROPERTY CODE, Humphrey requests that it be notified in writing if the prime contractor abandons the Project or if the original contract is terminated.

This notice is being sent to you as the owner of the Project. If you are not the owner of the Project, please notify the undersigned immediately.

Also enclosed is a copy of the Lien Affidavit and Claim filed with the County Clerk of Denton County, Texas, to secure a lien on the Project for payment for labor, materials, and services furnished by Humphrey.

Sincerely,

Jason R. Kennedy

Enclosures

Exhibit A

cc:  *Via CMRRR #7021 2720 0002 6973 6842* and
*Via Federal Express*
McCarthy Building Companies Inc.
12001 N. Central Expressway, Suite 400
Dallas, Texas 75243

*Via CMRRR #7021 2720 0002 6973 6828*
City of Denton
215 E McKinney Street
Denton, TX 76201

Exhibit A

ENCLOSURE 1

| Customer | Status Type | Status Date | Status | Invoice | Contract | Amount | Cash Receipt | Adjustment | Retainage Held | Retainage Billed | Outstanding Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|
| MCCA01 | Invoice | 1-28-2022 | Paid | 502100811 | 50-21-0081 | 125,000.00 | -112,500.00 | 0.00 | -12,500.00 | 0.00 | 0.00 |
| MCCA01 | Invoice | 1-28-2022 | Paid | 502100812 | 50-21-0081 | 195,000.00 | -175,500.00 | 0.00 | -19,500.00 | 0.00 | 0.00 |
| MCCA01 | Invoice | 2-11-2022 | Paid | 502100813 | 50-21-0081 | 1,522,500.00 | -1,370,250.00 | 0.00 | -152,250.00 | 0.00 | 0.00 |
| MCCA01 | Invoice | 2-25-2022 | Paid | 502100814 | 50-21-0081 | 1,094,266.00 | -984,839.40 | 0.00 | -109,426.60 | 0.00 | 0.00 |
| MCCA01 | Invoice | 3-11-2022 | Paid | 502100815 | 50-21-0081 | 1,025,226.00 | -922,703.40 | 0.00 | -102,522.60 | 0.00 | 0.00 |
| MCCA01 | Invoice | 3-25-2022 | Paid | 502100816 | 50-21-0081 | 1,479,481.00 | -1,331,532.90 | 0.00 | -147,948.10 | 0.00 | 0.00 |
| MCCA01 | Invoice | 4-14-2022 | Paid | 502100817 | 50-21-0081 | 2,002,600.00 | -1,802,340.00 | 0.00 | -200,260.00 | 0.00 | 0.00 |
| MCCA01 | Invoice | 4-27-2022 | Paid | 502100818 | 50-21-0081 | 1,072,037.00 | -964,833.30 | 0.00 | -107,203.70 | 0.00 | 0.00 |
| MCCA01 | Invoice | 5-12-2022 | Paid | 502100819 | 50-21-0081 | 1,848,000.00 | -1,663,200.00 | 0.00 | -184,800.00 | 0.00 | 0.00 |
| MCCA01 | Invoice | 6-01-2022 | Paid | 5021008110 | 50-21-0081 | 1,249,500.00 | -1,124,550.00 | 0.00 | -124,950.00 | 0.00 | 0.00 |
| MCCA01 | Invoice | 6-15-2022 | Paid | 5021008111 | 50-21-0081 | 1,167,400.00 | -1,050,660.00 | 0.00 | -116,740.00 | 0.00 | 0.00 |
| MCCA01 | Invoice | 6-30-2022 | Paid | 5021008112 | 50-21-0081 | 1,973,667.00 | -1,776,300.30 | 0.00 | -197,366.70 | 0.00 | 0.00 |
| MCCA01 | Invoice | 7-14-2022 | Paid | 5021008113 | 50-21-0081 | 1,131,326.00 | -1,018,193.40 | 0.00 | -113,132.60 | 0.00 | 0.00 |
| MCCA01 | Invoice | 7-29-2022 | Paid | 5021008114 | 50-21-0081 | 1,291,699.00 | -1,162,529.10 | 0.00 | -129,169.90 | 0.00 | 0.00 |
| MCCA01 | Invoice | 8-11-2022 | Paid | 5021008115 | 50-21-0081 | 1,704,022.00 | -1,533,619.80 | 0.00 | -170,402.20 | 0.00 | 0.00 |
| MCCA01 | Invoice | 8-26-2022 | Unpaid | 5021008191 | 50-21-0081 | 0.00 | 0.00 | 0.00 | 0.00 | 38,560.00 | 38,560.00 |
| MCCA01 | Invoice | 8-30-2022 | Paid | 5021008116 | 50-21-0081 | 1,701,638.00 | -1,531,474.20 | 0.00 | -170,163.80 | 0.00 | 0.00 |
| MCCA01 | Invoice | 8-30-2022 | Unpaid | 5021008190 | 50-21-0081 | 0.00 | 0.00 | 0.00 | 0.00 | 451,946.50 | 451,946.50 |
| MCCA01 | Invoice | 8-30-2022 | Unpaid | 5021008192 | 50-21-0081 | 0.00 | 0.00 | 0.00 | 0.00 | 106,318.40 | 106,318.40 |
| MCCA01 | Invoice | 9-07-2022 | Paid | 5021008120 | 50-21-0081 | 815,500.00 | -733,950.00 | 0.00 | -81,550.00 | 0.00 | 0.00 |
| MCCA01 | Invoice | 9-20-2022 | Unpaid | 5021008121 | 50-21-0081 | 1,066,288.00 | 0.00 | 0.00 | -106,628.80 | 0.00 | 959,659.20 |
| MCCA01 | Invoice | 10-07-2022 | Unpaid | 5021008122 | 50-21-0081 | 1,993,784.00 | 0.00 | 0.00 | -199,378.40 | 0.00 | 1,794,405.60 |
| MCCA01 | Invoice | 10-25-2022 | Unpaid | 5021008123 | 50-21-0081 | 908,009.00 | 0.00 | 0.00 | -90,800.90 | 0.00 | 817,208.10 |
| MCCA01 | Invoice | 11-11-2022 | Unpaid | 5021008124 | 50-21-0081 | 3,257,399.00 | 0.00 | 0.00 | -325,739.90 | 0.00 | 2,931,659.10 |
| MCCA01 | Invoice | 11-11-2022 | Unpaid | 5021008193 | 50-21-0081 | 0.00 | 0.00 | 0.00 | 0.00 | 457,211.70 | 457,211.70 |
| MCCA01 | Invoice | 11-11-2022 | Unpaid | 5021008194 | 50-21-0081 | 0.00 | 0.00 | 0.00 | 0.00 | 254,024.30 | 254,024.30 |
| MCCA01 | Invoice | 11-11-2022 | Unpaid | 5021008195 | 50-21-0081 | 0.00 | 0.00 | 0.00 | 0.00 | 39,387.30 | 39,387.30 |
| | | | | | | | | | | | |
| | | | | | TOTALS | 28,624,342.00 | -19,258,975.80 | | -2,862,434.20 | 1,347,448.20 | 7,850,380.20 |

Earned but unbilled retainage 1,514,986.00

9,365,366.20

Exhibit A

# ENCLOSURE 2

Exhibit A

## LIEN AFFIDAVIT AND CLAIM

THE STATE OF TEXAS      §
                        §
COUNTY OF DENTON        §

BEFORE ME, the undersigned notary public, personally appeared Randy Humphrey, who, upon his oath, deposed and stated the following:

1.      My name is Randy Humphrey. I am the Executive Vice-President of Humphrey & Associates, Inc., hereinafter referred to as "Claimant." I am competent and authorized to make this affidavit on behalf of Claimant. I have personal knowledge of the matters set forth below, and the facts stated herein are true and correct.

2.      Claimant:

        **Humphrey & Associates, Inc.**, whose physical address and mailing address is 1501 Luna Rd, Carrollton, Texas 75006.

3.      Property:

The property sought to be charged with the lien is the leasehold interest in the Core Scientific Denton Data Center Project located at 8151 Jim Christal Road, Denton, Texas 76207, 8161 Jim Christal Road, Denton, Texas 76207, and/or 8171 Jim Christal Road, Denton, Texas 76207, and more particularly described as Site One and Site Two in **Exhibit A** attached hereto (the "Property").

4.      Claimant furnished labor and materials pursuant to a subcontract with the original contractor on the Project:

        **McCarthy Building Companies Inc.**, whose last known address is 12001 N. Central Expressway, Suite 400, Dallas, Texas 75243.

5.      Original contractor:

        **McCarthy Building Companies Inc.**, whose last known address is 12001 N. Central Expressway, Suite 400, Dallas, Texas 75243.

6.      The owner or reputed owner of the leasehold interest in the Property is:

7.     The labor and materials furnished by Claimant are generally described as follows: electrical and fire alarm scope of work and other related items.

8.     The amount of this claim is $9,365,366.20, which remains unpaid and owing to Claimant, and Claimant claims a lien on the leasehold interest in the Property to secure payment of such amount.

9.     The month or months that the work was done and materials were furnished for which payment is requested are January 2022 through October 2022.

10.     Notice was sent to the owner or reputed owner of the leasehold interest in the Property on the following dates and by the following method:

| Date Sent | Method Sent |
|---|---|
| November 14, 2022 | Certified Mail, Return Receipt Requested and Federal Express |

11.     A copy of this Affidavit is being sent by certified mail, return receipt requested, to the owner or reputed owner and the Original Contractor at their last known addresses set forth above.

Humphrey & Associates, Inc.

By: _____
Randy Humphrey
Executive Vice-President

STATE OF TEXAS          §
                                        §
COUNTY OF Dallas      §

SUBSCRIBED AND SWORN TO BEFORE ME on this the 14 day of November 2022, by Randy Humphrey, Executive Vice-President of Humphrey & Associates, Inc.

_____
Notary Public in and for the State of Texas

Michelle Delmar
_____
Printed or typed name of notary

MICHELLE ANN DELMAR
Notary Public, State of Texas
Comm. Expires 08-06-2026
Notary ID 12484544-5

STATE OF TEXAS       §
                     §
COUNTY OF        §

     BEFORE ME, the undersigned authority, a notary public in and for the State of Texas on this day personally appeared Randy Humphrey, known to me to be the person and official whose name is subscribed to the foregoing instrument and acknowledged to me that the same was the act of the said Humphrey & Associates, Inc., and that he executed the same as the act of such entity for the purposes therein expressed, and in the capacity therein stated.

     GIVEN UNDER MY HAND AND SEAL OF OFFICE on this the 14th day of November 2022.

MICHELLE ANN DELMAR
Notary Public, State of Texas
Comm. Expires 08-06-2026
Notary ID 12484544-5

_____
Notary Public in and for the State of Texas

Michelle Delmar
_____
Printed or Typed Name of Notary

Page 3 of 3

Exhibit A



Exhibit A

EXHIBIT "A"

**Leased Premises**

<u>Site One</u>

BEING a 19.064 acre tract of land situated in the Moses H. Davis Survey, Abstract No. 377, City of Denton, Denton County, Texas, being part of a called 340.469 acre tract of land described in a Deed to the City of Denton, a Texas home-rule municipal corporation, as recorded in Document No. 2016-143882 of the Official Records of Denton County, Texas and being more particularly described as follows:

COMMENCING at a 1/2 inch iron rod found for an interior Southwest corner of the above cited 340.469 acre tract and the Northwest corner of a called 116.154 acre tract of land described in a Deed to the Mark Hicks Investments, LLC, as recorded in Document No. 2021-8595 of the Official Records of Denton County, Texas, from which a 1/2 inch iron rod with cap stamped "Vannoy 563-7101" found for an interior ell corner of said 340.469 acre tract, same being the Northeast corner of a called 152 acre tract of land described in a Deed to Walter B. (Bud) Wolf, as recorded in Volume 533, Page 541 of the Deed Records of Denton County, Texas bears North 00°26'46" East, a distance of 599.88 feet;

THENCE South 89°50'49" East along the South line of said 340.469 acre tract and North line of said 116.154 acre tract, for a distance of 506.72 feet to a 5/8 inch iron rod with cap stamped "TNP" set for the POINT OF BEGINNING of the herein described tract;

THENCE North 01°31'40" West departing the South line of said 340.469 acre tract and the North line of said 116.154 acre tract, for a distance of 608.71 feet to a 5/8 inch iron rod with cap stamped "TNP" set;

THENCE South 89°59'35" East for a distance of 611.28 feet to an "X" cut set in concrete;

THENCE South 00°00'25" West for a distance of 65.60 feet to a 5/8 inch iron rod with cap stamped "TNP" set;

THENCE North 90°00'00" East for a distance of 872.65 feet to a 5/8 inch iron rod with cap stamped "TNP" set at the beginning of a non-tangent curve to the left;

THENCE in a Southern direction, along said non-tangent curve to the left having a central angle of 07°27'36", a radius of 4210.63 feet, a chord bearing of South 03°47'11" West, a chord distance of 547.84 feet and an arc length of 548.23 feet to a 5/8 inch iron rod with cap stamped "TNP" set in the South line of said 340.469 acre tract and the North line of said 116.154 acre tract, from which a 1/2 inch iron rod with cap stamped "Vannoy 563-7101" found for the Northeast corner of said 116.154 acre tract and an interior ell corner of said 340.469 acre tract bears South 89°50'49" East, a distance of 420.07 feet;

Exhibit A

EXHIBIT "A"

THENCE North 89°50'49" West along the South line of said 340.469 acre tract and the North line of said 116.154 acre tract, for a distance of 1431.52 feet to the POINT OF BEGINNING, and containing 19.064 acres of land, more or less.



## Site Two

BEING an 11.256 acre tract of land situated in the Moses H. Davis Survey, Abstract No. 377 and the Johnson, Green, Myers and Brummett Survey, Abstract No. 1699, City of Denton, Denton County, Texas, being part of a called 340.469 acre tract of land described in a Deed to the City of Denton, a Texas home-rule municipal corporation, as recorded in Document No. 2016-143882 of the Official Records of Denton County, Texas and being more particularly described as follows:

COMMENCING at a 5/8 inch iron rod found for the Southwest corner of Lot 1, Block 1 of Krum Tap Electrical Switch Station, per Plat recorded in Document No. 2010-3 of the Plat Records of Denton County, Texas;

THENCE North 89°39'01" East along the South line of said Lot 1, for a distance of 21.24 feet to a 5/8 inch iron rod with cap stamped "TNP" set for the POINT OF BEGINNING of the herein described tract:

Exhibit A

EXHIBIT "A"

THENCE North 89°39'01" East continuing along the South line of said Lot 1, passing a 5/8 inch iron rod found for the Southeast corner of same at a distance of 658.12 feet, and continuing for a total distance of 806.50 to a 5/8 inch iron rod with cap stamped "TNP" set;

THENCE South 67°31'07" East, for a distance of 85.93 to a 5/8 inch iron rod with cap stamped "TNP" set;

THENCE South 75°20'51" East, for a distance of 150.68 to a 5/8 inch iron rod with cap stamped "TNP" set;

THENCE South 56°48'38" East, for a distance of 80.84 to a 5/8 inch iron rod with cap stamped "TNP" set;

THENCE South 21°23'05" East, for a distance of 76.31 to a 5/8 inch iron rod with cap stamped "TNP" set;

THENCE South 43°26'26" East, for a distance of 72.63 to a 5/8 inch iron rod with c-,ap stamped "TNP" set;

THENCE South 00°24'23" East. for a distance of 179.60 to a 5/8 inch iron rod with cap stamped "TNP" set;

THENCE North 90°00'00" West, for a distance of 1259.39 to a 5/8 inch iron rod with cap stamped "TNP" set;

THENCE North 70°47'23" West, for a distance of 60.77 to a 5/8 inch iron rod with cap stamped "TNP" set;

THENCE North 19°22'19" East, for a distance of 417.32 to the POINT OF BEGINNING, and containing 11.256 acres of land, more or less.

Exhibit A

EXHIBIT "A"



EXHIBIT "A"

# PARTIAL RELEASE OF LIEN

STATE OF TEXAS            §
                         §
COUNTY OF DENTON          §

On November 15, 2022, the undersigned, Humphrey & Associates, Inc. ("Claimant"), filed at the office of the County Clerk of Denton County, Texas a Lien Affidavit and Claim claiming a mechanic's and materialman's lien against the leasehold interest in the Core Scientific Denton Data Center Project located at 8151 Jim Christal Road, Denton, Texas 76207, 8161 Jim Christal Road, Denton, Texas 76207, and/or 8171 Jim Christal Road, Denton, Texas 76207, Denton County, Texas and more specifically described as Site One and Site Two in Exhibit "A" attached hereto (the "Property").

Said Lien Affidavit and Claim has been filed as Instrument Number 158075 of the Official Public Records of Denton County, Texas.

The name of owner or reputed owner of the leasehold interest in the Property is Core Scientific, Inc.

Since the filing of the original Lien Affidavit and Claim, a partial payment has been made in the amount of $2,329,345.14, and Claimant hereby partially relinquishes its Lien to the extent of such payment. The amount of Claimant's Lien after application of the partial payment is $7,036,021.06.

This instrument is solely a partial release of lien to the herein described property; it is not to be construed as a release of Claimant's remaining lien claim in the amount of $7,036,021.06 or a release of any other claim or type of claim.

The Denton County Clerk is hereby authorized and instructed to record this Partial Release of Lien as provided by law.

Dated this __14__ day of __April__ 2023.

Partial Release of Lien                                    Exhibit A

Humphrey & Associates, Inc.

By: _____
Randy Humphrey
Executive Vice-President

    This instrument was acknowledged before me on this 14 day of April 2023 by Randy Humphrey, Executive Vice-President of Humphrey & Associates, Inc..

_____
Notary Public in and for the State of Texas

KACI M TURNAGE
NOTARY PUBLIC
STATE OF TEXAS
ID: 13404757
EXP. 11-02-2026



Exhibit A

EXHIBIT "A"

**Leased Premises**

**Site One**

BEING a 19.064 acre tract of land situated in the Moses H. Davis Survey, Abstract No. 377, City of Denton, Denton County, Texas, being part of a called 340.469 acre tract of land described in a Deed to the City of Denton, a Texas home-rule municipal corporation, as recorded in Document No. 2016-143882 of the Official Records of Denton County, Texas and being more particularly described as follows:

COMMENCING at a 1/2 inch iron rod found for an interior Southwest corner of the above cited 340.469 acre tract and the Northwest corner of a called 116.154 acre tract of land described in a Deed to the Mark Hicks Investments, LLC, as recorded in Document No. 2021-8595 of the Official Records of Denton County, Texas, from which a 1/2 inch iron rod with cap stamped "Vannoy 563-7101" found for an interior ell corner of said 340.469 acre tract, same being the Northeast corner of a called 152 acre tract of land described in a Deed to Walter B. (Bud) Wolf, as recorded in Volume 533, Page 541 of the Deed Records of Denton County, Texas bears North 00°26'46" East, a distance of 599.88 feet;

THENCE South 89°50'49" East along the South line of said 340.469 acre tract and North line of said 116.154 acre tract, for a distance of 506.72 feet to a 5/8 inch iron rod with cap stamped "TNP" set for the POINT OF BEGINNING of the herein described tract;

THENCE North 0 1 °31 '40" West departing the South line of said 340.469 acre tract and the North line of said 116.154 acre tract, for a distance of 608.71 feet to a 5/8 inch iron rod with cap stamped "TNP" set;

THENCE South 89°59'35" East for a distance of 611 .28 feet to an "X" cut set in concrete;

THENCE South 00°00'25" West for a distance of 65.60 feet to a 5/8 inch iron rod with cap stamped "TNP" set;

THENCE North 90°00'00" East for a distance of 872.65 feet to a 5/8 inch iron rod with cap stamped "TNP" set at the beginning of a non-tangent curve to the left;

THENCE in a Southern direction, along said non-tangent curve to the left having a central angle of 07°27'36", a radius of 4210.63 feet, a chord bearing of South 03°47'11" West, a chord distance of 547.84 feet and an arc length of 548.23 feet to a 5/8 inch iron rod with cap stamped "TNP" set in the South line of said 340.469 acre tract and the North line of said 116.154 acre tract, from which a 1/2 inch iron rod with cap stamped "Vannoy 563-7101" found for the Northeast corner of said 116.154 acre tract and an interior ell corner of said 340.469 acre tract bears South 89°50'49" East, a distance of 420.07 feet;

EXHIBIT "A"

THENCE North 89°50'49" West along the South line of said 340.469 acre tract and the North line of said 116.154 acre tract, for a distance of 1431.52 feet to the POINT OF BEGINNING, and containing 19.064 acres of land, more or less.



### Site Two

BEING an 11.256 acre tract of land situated in the Moses H. Davis Survey, Abstract No. 377 and the Johnson, Green, Myers and Brummett Survey, Abstract No. 1699, City of Denton, Denton County, Texas, being part of a called 340.469 acre tract of land described in a Deed to the City of Denton, a Texas home-rule municipal corporation, as recorded in Document No. 2016-143882 of the Official Records of Denton County, Texas and being more particularly described as follows:

COMMENCING at a 5/8 inch iron rod found for the Southwest corner of Lot 1, Block 1 of Krum Tap Electrical Switch Station, per Plat recorded in Document No. 2010-3 of the Plat Records of Denton County, Texas;

THENCE North 89°39'01" East along the South line of said Lot 1, for a distance of 21.24 feet to a 5/8 inch iron rod with cap stamped "TNP" set for the POINT OF BEGINNING of the herein described tract:

EXHIBIT "A"

THENCE North 89°39'01" East continuing along the South line of said Lot 1, passing a 5/8 inch iron rod found for the Southeast corner of same at a distance of 658.12 feet, and continuing for a total distance of 806.50 to a 5/8 inch iron rod with cap stamped "TNP" set;

THENCE South 67°31'07" East, for a distance of 85.93 to a 5/8 inch iron rod with cap stamped "TNP" set;

THENCE South 75°20'51" East, for a distance of 150.68 to a 5/8 inch iron rod with cap stamped "TNP" set;

THENCE South 56°48'38" East, for a distance of 80.84 to a 5/8 inch iron rod with cap stamped "TNP" set;

THENCE South 21°23'05" East, for a distance of 76.31 to a 5/8 inch iron rod with cap stamped "TNP" set;

THENCE South 43°26'26" East, for a distance of 72.63 to a 5/8 inch iron rod with c-,ap stamped "TNP" set;

THENCE South 00°24'23" East. for a distance of 179.60 to a 5/8 inch iron rod with cap stamped "TNP" set;

THENCE North 90°00'00" West, for a distance of 1259.39 to a 5/8 inch iron rod with cap stamped "TNP" set;

THENCE North 70°47'23" West, for a distance of 60.77 to a 5/8 inch iron rod with cap stamped "TNP" set;

THENCE North 19°22'19" East, for a distance of 417.32 to the POINT OF BEGINNING, and containing 11.256 acres of land, more or less.

Exhibit A

EXHIBIT "A"



Exhibit A

EXHIBIT "A"

DocuSign Envelope ID: 84C9655E-9F26-49D9-9254-E77387297C75

McCarthy Subcontract
02-03-2021 Rev.

# MCCARTHY SUBCONTRACT
# 2229-067

**THIS AGREEMENT** made on **24<u>th</u> day of December 2021**, by and between McCarthy Building Companies Inc. located at 12001 N. Central Expressway, Suite 400, Dallas TX 75243, hereinafter referred to as "McCarthy", and **Humphrey & Associates, Inc. located at 1501 Luna Road, Carrollton, TX 75006**, hereinafter referred to as "Subcontractor", to perform part of the work on the following Project:

**PROJECT:**   **CORE SCIENTIFIC DENTON DATA CENTER**
              **8151 JIM CHRISTAL ROAD**
              **DENTON, TX 76207**

**OWNER:**    **CORE SCIENTIFIC, INC.**
             **106 E. 6th STREET, SUITE 900-145**
             **AUSTIN, TX 78701**

**DESIGNER:**  **MJDII ARCHITECTS, INC.**
              **16775 ADDISON ROAD, SUITE 310**
              **ADDISON, TX 75001**

Exhibit A

# ARTICLE 1
## SCOPE OF WORK

**1.1**     McCarthy contracts with Subcontractor as an independent contractor, to perform the following part of the work which McCarthy has contracted with the Owner to provide on the Project:

# ELECTRICAL AND FIRE ALARM

See EXHIBIT 1 for an expanded description of Subcontractor's scope of work.

Subcontractor agrees to perform such part of the work under the general direction of McCarthy and subject to the final approval of the Designer or other specified representative of the Owner, in accordance with and reasonably inferable from the Contract Documents (hereinafter called "Subcontractor's Work").  Subcontractor will furnish all labor and materials, along with competent supervision, shop drawings and samples, tools, equipment, protection, hoisting, and scaffolding which are necessary for such performance.

**1.2**     The Contract Documents are:

See EXHIBIT 2 attached hereto.

Subcontractor binds itself to McCarthy in performing its obligations hereunder to all terms and conditions of the Contract Documents, including, but not limited to, McCarthy's contract with the Owner (hereinafter "Owner Contract"). The Owner Contract, excluding financial data, and all other Contract Documents listed in Exhibit 2 will be made available to Subcontractor upon Subcontractor's written request.  In the case of conflict between this Agreement and the other Contract Documents, Subcontractor shall be bound by ~~the more stringent requirement~~ this Agreement.

<span style="color:blue">**1.2.1**     To the extent the Subcontractor becomes liable for damages to McCarthy or the Owner under the Contract Documents, or otherwise, any monetary damage amounts shall be expressed in U.S. dollars specific to this project only.</span>

**1.3**     Subcontractor's obligations pursuant to this Agreement shall apply to any and all work performed by or for Subcontractor, including, but not limited to, Change Order work, extra work and work performed on Subcontractor's behalf by McCarthy or others.

# ARTICLE 2
## PAYMENTS

**2.1**     <span style="color:blue">Specific to this project, all figures in this Agreement shall be expressed in U.S. dollars. All payments to Subcontractor under this Article 2, or any other provision of this Agreement shall be made in U.S. dollars.</span> McCarthy agrees to pay Subcontractor for the full completion, in strict compliance with the Contract Documents, of Subcontractor's Work, the sum of **THIRTY MILLION, TWENTY-SEVEN THOUSAND, FIVE HUNDRED NINETY-FIVE DOLLARS AND 00/100 ($30,027,595.00)** as the Subcontract Amount.

The Subcontract Amount will be paid, less retainage, subject to the terms of this Agreement, in monthly payments for the Subcontractor's Work performed in the preceding month, in accordance with applications for payment prepared by Subcontractor ("Subcontractor's Application for Payment"), and approved by McCarthy, the Owner and any other party whose approval is required by the Contract Documents and in accordance with the conditions set forth below, including, but not limited to, the condition precedent of receipt by McCarthy of payment from the Owner.  Subcontractor's Application for Payment shall be submitted by the date established by McCarthy, on the form attached hereto in Exhibit 3 and acceptable to McCarthy, and in accordance with the approved Schedule of Values with such additional detailed or substantiating information as may be requested by McCarthy.  Payments made on account of materials not incorporated in the work, but delivered and suitably stored at the site, or at some other location agreed upon in writing, shall be in accordance with the terms and conditions of the Contract Documents.  Subcontractor will provide monthly completed lien and claim waivers and affidavits from Subcontractor, sub subcontractors and suppliers on the forms attached hereto in Exhibit 3, amounting to 100% of the partial payment that was paid to Subcontractor for the previous month.  Failure to provide such forms will delay payment to Subcontractor. If requested by McCarthy, Subcontractor shall also provide evidence satisfactory to McCarthy that Subcontractor has paid for all labor, including fringe benefits and payments due under collective bargaining agreements. If required by the Contract Documents or as otherwise

Exhibit A

Project and Subcontract No. 2229-067
CORE SCIENTIFIC DENTON DATA CENTER
December 24, 2021
PRE-NEGOTIATED BP MODS
ADDITIONAL NEG BP MODS – January 11, 2022

required by McCarthy, Subcontractor shall submit to McCarthy a copy of its certified payroll for work performed by Subcontractor's materialmen, laborers and subcontractors during the previous pay period for which Subcontractor has received payment from McCarthy. Payments to Subcontractor are conditioned upon the timely and strict compliance of Subcontractor's Work with the Contract Documents. Notwithstanding the foregoing, Subcontractor agrees that the approval and payment of Subcontractor's Application for Payment does not constitute or imply acceptance by McCarthy or Owner of any portion of Subcontractor's Work or the amount claimed. Receipt by McCarthy of payment from the Owner is a condition precedent to McCarthy's obligation to make payment of Subcontractor's Application for Payment, in whole or in part, as approved by McCarthy, and as provided in this Paragraph 2.1 and extra compensation as provided in Paragraph 4.5 below.

**2.2**     The rate of retainage shall be (10%). Retainage shall be deducted from each monthly progress payment to Subcontractor. If the Subcontractor's Work is satisfactory and the Owner reduces the retainage it is withholding from McCarthy related to Subcontractor's Work, retainage withheld from Subcontractor shall be likewise reduced. ~~If Subcontractor subsequently fails to meet its schedule commitments and/or perform its other obligations herein in a satisfactory manner, then the original retainage amount and rate shall be restored.~~ If the Subcontractor's Work is satisfactory, McCarthy will request the Owner to partially reduce the Subcontractor's Retainage upon the substantial completion of each building and, if the Owner reduces the retainage it is withholding from McCarthy related to Subcontractor's Work, retainage withheld from Subcontractor shall be likewise reduced.

**2.3**     Subcontractor shall pay all valid charges for labor, materials, equipment and services incurred by Subcontractor in connection with the Project except to the extent McCarthy is in breach of its payment obligations to Subcontractor, or Owner is in breach of its payment obligations to McCarthy.  In the event it appears to McCarthy that the labor, material and other bills incurred in the performance of Subcontractor's Work are not being currently paid, McCarthy may, after written notice to Subcontractor, take such steps as it deems necessary to ensure that the money paid with any progress payment will be utilized to pay such bills, including without limitation issuing joint checks to Subcontractor and its subcontractors and suppliers or issuing direct payment to Subcontractor's subcontractors and suppliers.  McCarthy may deduct or withhold amounts due or to become due to Subcontractor in the event of any nonperformance or breach by Subcontractor of any provision or obligation of this Agreement, or in the event of the assertion by other parties of any amount owed by Subcontractor or claim or lien against the Owner, McCarthy, McCarthy's Surety, or the premises upon which Subcontractor's Work was performed.  Upon the written notice by McCarthy except to the extent McCarthy is in breach of its payment obligations to Subcontractor, or Owner is in breach of its payment obligations to McCarthy, Subcontractor shall satisfy or bond off such claim or lien to the satisfaction of McCarthy and as required by Owner Contract, except to the extent McCarthy is in breach of its payment obligations to Subcontractor.  Payments may not be made to Subcontractor until such proof of satisfaction or bond is provided.

**2.3.1**     Notwithstanding anything in the Contract Documents to the contrary, McCarthy may elect, in McCarthy's sole discretion, to make any payment requested by Subcontractor on behalf of Subcontractor's subcontractors and suppliers (at any tier) jointly payable to Subcontractor and such lower tier subcontractors and suppliers. Subcontractor and such lower tier subcontractors and suppliers shall be responsible for the allocation and disbursement of funds included as part of any such joint payment. In no event shall any joint payment be construed to create any (a) contract between McCarthy and Subcontractor's lower tier subcontractors and suppliers; (b) obligations from McCarthy to such lower tier subcontractors and suppliers; or (c) rights in such lower tier subcontractors and suppliers against McCarthy.

**2.3.2**     McCarthy shall have the right at all times to directly contact the Subcontractor's lower tier subcontractors and suppliers to ensure they are being paid promptly by the Subcontractor for the labor, materials, equipment and/or services furnished in connection with the Project.

**2.4**     McCarthy may withhold payments for the unpaid balance of the Subcontract Amount if there is reasonable doubt that the Subcontractor's Work may be completed on schedule and in accordance with the Contract Documents due in whole or in part to the fault of the Subcontractor.  McCarthy agrees to convey such concerns, in writing, to Subcontractor prior to withholding of funds.

**2.4.1**     If the Owner Contract provides for and the Owner assesses liquidated damages or other damages for delay beyond the completion date set forth in the Owner Contract, McCarthy may assess, including withholding from Subcontractor's Subcontract Amount, a share of such liquidated or other damages against the Subcontractor in proportion to the Subcontractor's share of the responsibility for the damages.  Subcontractor's Subcontract Amount balance is not in any manner a limitation of Subcontractor's liability to McCarthy for such liquidated or other damages.  Subcontractor agrees that the liquidated damages sum stated in the Owner Contract is a reasonable estimate of the damage the Owner will sustain daily by reason of the failure of Subcontractor to complete the work within the time stipulated for which the Owner will hold McCarthy responsible, it being agreed that the exact damage resulting by such failure will be impossible or unreasonably difficult to ascertain.  Such liquidated damages referred to

Exhibit A

Project and Subcontract No. 2229-067
CORE SCIENTIFIC DENTON DATA CENTER
December 24, 2021
PRE-NEGOTIATED BP MODS
ADDITIONAL NEG BP MODS – January 11, 2022

in this Subparagraph 2.4.1 shall not preclude or otherwise limit the Subcontractor's liability to McCarthy for McCarthy's actual delay damages caused by Subcontractor.

**2.4.2**     If the Owner Contract provides for and the Owner assesses liquidated damages or other damages for the failure to achieve certain performance requirements or guarantees as set forth in the Owner Contract, McCarthy may assess, including withholding from Subcontractor's Subcontract Amount, a share of such liquidated or other damages against the Subcontractor in proportion to the Subcontractor's share of the responsibility for the damages.  Subcontractor's Subcontract Amount balance is not in any manner a limitation of Subcontractors' liability to McCarthy for such liquidated or other damages.  Subcontractor agrees that the liquidated damages sum stated in the Owner Contract is a reasonable estimate of the damage the Owner will sustain by reason of the failure of Subcontractor to achieve such performance requirements or guarantees, it being agreed that the exact damage resulting by such failure will be impossible or unreasonably difficult to ascertain.  Such liquidated damages referred to in this Subparagraph 2.4.2 shall not preclude or otherwise limit the Subcontractor's liability to McCarthy for McCarthy's actual damages caused by Subcontractor's failure to achieve such performance requirements or guarantees.

**2.5**     Final payment shall be paid to Subcontractor upon approval by the Owner, Designer and McCarthy of Subcontractor's Work, Subcontractor's compliance with all requirements of the Contract Documents, receipt of payment by McCarthy for all of Subcontractor's Work from the Owner as provided in 2.1 above, receipt by McCarthy of (a) a finalization letter in substantially the same form attached hereto in Exhibit 3, executed by Subcontractor, (b) consent of surety, (c) a final lien and claim waiver on the form attached hereto in Exhibit 3, executed by Subcontractor, and (d) satisfactory evidence having been received by McCarthy that: all labor, including customary fringe benefits and payments due under collective bargaining agreements, and all sub-subcontractors and suppliers have been paid to date and are waiving their lien rights and bond claims upon the final payment of a specific balance due.

**2.6**     All sums tentatively earned by Subcontractor by the partial or complete performance of the Subcontractor's Work and any balance of the unearned Subcontract Amount shall constitute a fund for the purpose of:

(a)     First, full completion of Subcontractor's Work,
(b)     Second, payment of backcharges or claims due McCarthy from Subcontractor on any project,
(c)     Third, payment to sub-subcontractors, laborers, material, and service suppliers of Subcontractor for work properly performed (but shall not imply any obligation on the part of McCarthy to make such payment to any sub-subcontractor, laborer, material or services supplier).

Such tentative earnings shall not be due or payable to Subcontractor or anyone else claiming in Subcontractor's place and stead, including but not limited to Subcontractor's surety, a Trustee in bankruptcy, receiver or assignee of Subcontractor, and will be subject to offset, until and unless Subcontractor's Work is fully and satisfactorily completed and any amounts under a, b, or c above are fully paid and satisfied.  McCarthy may demand written evidence of Subcontractor's financial capability to perform, and that Subcontractor has made such payments at any time.

# ARTICLE 3
## PROSECUTION OF THE WORK

**3.1**     Time is of the essence.  Subcontractor shall provide McCarthy within ten (10) days after execution of this Agreement scheduling information, including but not limited to durations, planned crew sizes, planned procurement dates, planned submission dates of required shop drawings, product data and samples for Subcontractor's Work, (including the activities of its subcontractors, vendors, and suppliers).  Based upon this information and similar such data from the other subcontractors, McCarthy shall prepare the schedule of the work ("Project Schedule") establishing the sequence and time requirements of all work activities. McCarthy, as may be necessary, may revise such Project Schedule with the cooperation of Subcontractor as the work progresses.  Subcontractor acknowledges that revisions may be made to the Project Schedule and agrees to make no claim for acceleration or delay by reason of such revisions so long as such revisions are of the type normally experienced in work of this scope and complexity.  In the event Subcontractor is unable to maintain progress in accordance with the Project Schedule by reason of events for which extensions of time are permitted in the Contract Documents, Subcontractor's time for completion shall be extended for a reasonable, mutually agreed upon time, provided that a time extension is given by the Owner to McCarthy, and further, provided that notification of delay is given as provided herein.  This time extension shall be the sole remedy for such delays, except Subcontractor shall be entitled to recover damages from McCarthy for (a) any delays to the extent McCarthy is compensated by Owner; or (b) those delays caused solely by McCarthy in which case Subcontractor will be entitled to recover its direct costs resulting from such delays.

Exhibit A

DocuSign Envelope ID: 84C0855E-0F36-40D9-9354-E77387720756

**3.1.1**     Whenever it becomes apparent to McCarthy that Subcontractor may not meet any activity completion date or is not maintaining sufficient progress, Subcontractor shall immediately, upon notice from McCarthy, take some or all of the following actions in order to put Subcontractor's Work back on schedule:

(a)     Increase manpower, the number of working hours per shift, shifts per working day, working days per week, or the amount of equipment, or any combination of the foregoing in such quantities as will substantially eliminate the backlog of work.

(b)     Reschedule activities to achieve maximum practical concurrency of accomplishment of activities.

Such actions shall be at no additional cost to McCarthy except (x) to the extent Subcontractor would otherwise have been entitled to a time extension pursuant to the Contract Documents; (y) if directed specifically, in writing, by McCarthy, and McCarthy is compensated for such overtime or extra shifts by the Owner or other responsible subcontractor; or (z) or the delay is caused solely by McCarthy.  If Subcontractor fails to take any of the above actions within twenty-four (24) hours after receiving written notice from McCarthy, McCarthy may take action to attempt to put Subcontractor's Work back on schedule and deduct the entire cost of such actions from the amounts due or to become due Subcontractor.

**3.1.2**     Any such extra compensation shall be based on supporting documentation including daily time sheets approved by McCarthy.  Only the premium portion of such approved overtime exclusive of any markups for overhead and/or profit shall be considered for any extra compensation unless such markup is allowed by the Owner Contract and paid by the Owner.

**3.2**     Within ten (10) days after execution of this Agreement (or at an earlier time if required by McCarthy), Subcontractor shall furnish McCarthy with its list of proposed subcontractors and suppliers of all tiers, each of which are subject to McCarthy's approval, along with the description and the dollar amount of the corresponding item of Subcontractor's Work.  Subcontractor shall bind its subcontractors and suppliers to all requirements set forth in this Agreement, the Project Schedule and the other Contract Documents.  Regardless of McCarthy's approval of Subcontractor's subcontractors and suppliers, Subcontractor shall be responsible for any failing by Subcontractor's subcontractors and suppliers to comply with the Contract Documents.

**3.3**     Subcontractor shall prosecute Subcontractor's Work in a prompt and diligent manner in accordance with the Project Schedule without hindering the work of McCarthy or any other subcontractor. If work or property of others is soley hindered, delayed or damaged by Subcontractor, Subcontractor will pay for all costs and damages incurred by such other party (including McCarthy) and will cause all such damage to be corrected to the satisfaction of and without cost to McCarthy and Owner.  Should any subcontractor sustain any loss through (a) any wrongful or negligent act or omission of any other subcontractor, or (b) failure of any subcontractor to perform its contractual undertakings, the subcontractor so affected shall have a claim or cause of action against the responsible subcontractor to recover any and all loss sustained for which the responsible subcontractor does consent to such a cause of action by execution of its subcontract.

**3.4**     Subcontractor shall be responsible for and will prepare for performance of Subcontractor's Work, including without limitation thereto, shop drawings, samples and tests, field dimensions, determination of labor requirements and ordering of materials as required to meet the Project Schedule. Approval of shop drawings and samples submitted which are not in accordance with the Contract Documents will not relieve Subcontractor from its obligation to comply with the Contract Documents. Subcontractor shall notify McCarthy when portions of Subcontractor's Work are ready for inspection.

**3.5**     Subcontractor shall utilize the Project management platforms/systems/processes as required by McCarthy.

**3.6**     Subcontractor shall submit a Schedule of Values to McCarthy for review and approval prior to submitting its first Application for Payment.  The Schedule of Values shall be itemized as directed by McCarthy by general areas, specific large pieces of equipment, and/or another similar method which shall accurately indicate the value of Subcontractor's Work performed or services rendered.

**3.7**     Subcontractor shall employ competent Project supervision satisfactory to McCarthy and such supervision shall not be changed except with the consent of McCarthy. Such supervision shall represent Subcontractor, and all communications given to such supervision shall be as binding as if given to Subcontractor. Such supervision shall be in attendance at the Project site during the progress of Subcontractor's Work and attend all coordination, scheduling and safety meetings where Subcontractor's Work is involved and as required by McCarthy.

Exhibit A

**3.8** Subcontractor shall provide, if required, a field office for its exclusive use. No Subcontractor signs will be allowed except on equipment and field office as approved by McCarthy.

**3.9** Subcontractor shall lay out its work from control points and benchmarks supplied by McCarthy and be responsible for its accuracy and the placement of all inserts, embeds, grounds and block outs, etc. as required to complete Subcontractor's Work. Subcontractor shall be responsible for repair of such items that are improperly placed unless it can be proven that original control work was not accurately performed.

**3.10** Subcontractor will be responsible for supplying its own crew with drinking water, ice and cups.

**3.11** If McCarthy agrees to allow Subcontractor to use McCarthy's tools or equipment, Subcontractor shall do so at its sole risk and shall defend, indemnify, and hold McCarthy and others harmless, as required in Paragraph 5.1.

**3.12** Any inspection or review by McCarthy of Subcontractor's Work or submittals shall not relieve Subcontractor from its obligation to perform Subcontractor's Work in accordance with the Contract Documents.

**3.13** Subcontractor will furnish periodic progress reports of Subcontractor's Work as required by McCarthy including the progress of materials or equipment to be provided under this Agreement that may be in the course of preparation or manufacture.

**3.14** Subcontractor shall maintain at the site all drawings, specifications, addenda, approved shop drawings, change orders and modifications, in good order and promptly updated to record all changes made during construction relating to Subcontractor's Work.

**3.15** If Contract Documents require a final set of Record Drawings and Operating and Maintenance Manuals, receipt by McCarthy of such materials is required prior to processing Subcontractor's final payment.

**3.16** Subcontractor shall cooperate with McCarthy and subcontractors whose work may interfere with Subcontractor's Work and participate in the preparation of coordinated drawings and work schedules in areas of congestion, specifically noting and advising McCarthy of any interference by other contractors or subcontractors.

**3.17** Subcontractor shall give adequate notices pertaining to Subcontractor's Work to proper authorities and secure and pay for all necessary licenses, permits, governmental fees and inspections to carry on Subcontractor's Work and shall timely furnish a copy of said permits, licenses, and inspection reports to McCarthy.

**3.18** Subcontractor shall comply with, and shall require that its subcontractors and suppliers comply with, all federal, state and local laws, rules, ordinances, regulations and orders, including without limitation, the following:

(a)     all applicable Social Security laws, unemployment compensation laws and workers' compensation laws; and
(b)     all applicable laws governing the discovery, acquisition, possession, usage notification procedures, storage, and disposal of hazardous materials of any nature utilized or produced or that are a by-product of the performance of this Agreement.

Subcontractor shall defend, indemnify, and hold harmless McCarthy and others harmless, as provided in Paragraph 5.1 herein, and from any and all associated costs and claims due to Subcontractor's failure to comply with the requirements of this Paragraph 3.18.

**3.19** Subcontractor shall maintain its own injury and illness prevention program appropriate to the work to be performed, which shall in all cases meet all applicable federal, state and/or local safety related laws and regulations. Subcontractor shall submit for review upon execution of this Agreement its written injury and illness prevention program. No payments will be made to Subcontractor until all such information is received by McCarthy. McCarthy may issue a directive to Subcontractor with respect to a safety compliance issue and may require Subcontractor to respond promptly to McCarthy's directive. Failure of Subcontractor to correct the violation may cause McCarthy, at its discretion, to take whatever steps are deemed to be necessary to correct said violation. Any costs, including fines, penalties, and attorneys' fees, incurred by McCarthy because of such violation or any safety citations related to Subcontractor will be the responsibility of Subcontractor.

**3.19.1** Subcontractor shall also comply with Exhibit 3A Safety Addendum to McCarthy Subcontract, attached hereto.

Exhibit A

**3.19.2**     Should Subcontractor not have a written injury and illness prevention program, Subcontractor agrees to abide by McCarthy's current Safety Guidelines and Project Site Specific Safety Plan, subject to Subcontractor being responsible to adapt McCarthy's Safety Guidelines and Project Site Specific Safety Plan to Subcontractor's Work.  Copies are available upon request.

**3.20**     Subcontractor will not assign this Agreement, in whole or in part, nor subcontract the whole or any part of Subcontractor's Work to be performed hereunder without the prior written consent of McCarthy, with the exception of those subcontractors listed by Subcontractor and furnished to McCarthy as provided herein. Subcontractor hereby consents to the assignment of this Agreement, in whole or in part, by McCarthy to the Owner or others.

**3.21**     Subcontractor shall carry on Subcontractor's Work and maintain its progress during any dispute and/or legal proceedings.

**3.22**     Prior to building enclosure, Subcontractor shall provide the temporary heat, cooling and protection necessary to maintain progress of Subcontractor's Work during cold, hot or adverse weather.

**3.23**     Subcontractor shall keep the building and premises reasonably clean of debris and trash resulting from the performance of Subcontractor's Work.  If Subcontractor fails to comply with this paragraph within twenty- four (24) hours after receipt of notice of non- compliance from McCarthy, McCarthy may perform such necessary clean- up and deduct the costs from any amounts due to Subcontractor. To the extent required by the Contract Documents, Subcontractor shall comply with any construction waste management, disposal, and recycling plan.

**3.24**     In the case of minor repairs to newly finished surfaces (not covered by property insurance), the cost of said repairs for which responsibility cannot be ascertained shall be prorated to Subcontractors in proportion to the manpower employed in that area during the period when damage occurred.

**3.25**     Not used.

**3.26**     Subcontractor shall comply with all quality requirements of the Contract Documents and fully participate in McCarthy's Quality Program. This shall include creation and execution of Subcontractor Site Specific Quality Plans. The Subcontractor Site Specific Quality Plan shall focus on planning and verification of installation in accordance with the Contract Documents, coordination procedures with other trades, test procedures and providing McCarthy access to codes, standards, and guidelines referenced in completing Subcontractor's Work.

**3.27**     Subcontractor shall be responsible for dust control of its operations in accordance with all applicable federal, state and local laws, rules, ordinances and regulations and in compliance with any project dust control permit or other project specific regulations.  If Subcontractor fails to comply with this paragraph within twenty-four (24) hours after receipt of notice of non-compliance from McCarthy, McCarthy may perform such necessary activities and deduct the cost from any amounts due to Subcontractor.  All fines assessed by governmental authorities for violation due to non-compliance with the above will be the responsibility of the violating subcontractor.

**3.28**     To the extent required by the Contract Documents, Subcontractor shall comply with any LEED requirements.

# ARTICLE 4
## CHANGES IN THE WORK

**4.1**     McCarthy and Subcontractor agree that McCarthy may add to or deduct from the amount of Subcontractor's Work covered by this Agreement, and any changes so made in the amount of Subcontractor's Work involved, or any other parts of this Agreement, shall be by a written amendment setting forth in detail the changes involved and the value thereof which shall be mutually agreed upon between McCarthy and Subcontractor. Subcontractor agrees to proceed with the Subcontractor's Work as changed when so ordered in writing by McCarthy so as not to delay the progress of the work, and without any determination of the value thereof unless McCarthy specifically requires a proposal of cost be returned and accepted by McCarthy before the change becomes effective. At all times, if McCarthy requests a proposal of cost for a change, Subcontractor shall promptly comply with such request.

**4.2**     Subcontractor shall not be entitled to compensation for extra work or materials or changes of any kind and waives any claim for extra compensation unless a Change Order or written directive has been issued by McCarthy prior to Subcontractor's commencement of the claimed extra work. Subcontractor shall be responsible for any costs incurred by McCarthy for changes of any kind made by Subcontractor that increase the cost of the work for either McCarthy or other subcontractors when Subcontractor proceeds with such changes without a written order.

Exhibit A

DocuSign Envelope ID: 81C9655F-9F96-49D9-9254-E77387297795

**4.3**  Subcontractor shall give McCarthy written notice of all claims, requests or demands (collectively, "claim(s)") for additional compensation or time extensions in the manner provided in the Owner Contract for like claims by McCarthy against the Owner, and within sufficient time for McCarthy to, in turn, make such claims against the Owner or within five (5) days of the occurrence of the event giving rise to such claim, whichever time is shorter.  Subcontractor shall submit written documentation of its claim, including a statement of the amount of additional compensation or time (or both, if applicable) being sought and written documentation and other information that may be required by the Contract Documents to support the claim, within sufficient time to allow McCarthy to, in turn, submit the documentation to the Owner pursuant to the terms of the Owner Contract or within fifteen (15) days of the occurrence of the event giving rise to the claim, whichever time is shorter, unless McCarthy agrees in writing to a longer period of time. Subcontractor agrees to provide additional supporting documentation as requested by McCarthy or the Owner.  McCarthy's ability to address and manage claims timely and comply with its contract obligations to the Owner is critical. Therefore, if Subcontractor fails to notify McCarthy or fails to provide the required documentation within the time frames as set forth in this provision, the claim shall be deemed waived, and McCarthy shall be released from any and all liability arising out of such claim.

**4.4**  McCarthy agrees to pursue against the Owner reasonable claims submitted by Subcontractor pursuant to the Owner Contract.  Subcontractor shall be responsible for the preparation of such claims and for all legal and other costs incurred by McCarthy associated with pursuing the claims.  Should McCarthy pursue such claims against the Owner pursuant to this provision, Subcontractor shall defend and indemnify McCarthy from and against any claims by the Owner related to such claims, shall be responsible for all costs incurred by McCarthy relating to such claims, shall be bound by the outcome of such claims, and shall waive any and all claims against McCarthy arising out of or related to such claims. All unresolved claims, disputes, and controversy between McCarthy and Subcontractor shall be resolved in the manner provided in Article 11.

**4.5**  Payment of extra compensation shall be paid solely out of funds paid by Owner to McCarthy.  Such payment by Owner to McCarthy is a condition precedent to McCarthy's obligation to pay Subcontractor, as provided in Paragraph 2.1 above, unless McCarthy agreed in writing to pay Subcontractor such extra compensation specifically excluding Owner approval and payment as a condition precedent.

**4.6**  For changes in the work approved by McCarthy as provided herein, Subcontractor shall be paid or shall deduct field and home office overhead and profit in the amount as set forth in the Contract Documents.  In the absence of such amount being set forth in the Contract Documents, Subcontractor shall be paid or shall deduct for field and home office overhead and profit as follows:

> Work Performed by Subcontractor's Own Forces:
> 15% of the cost for field and home office overhead and profit
>
> Work Performed by sub-subcontractor:
> 5% of the cost for field and home office overhead and profit

# ARTICLE 5
## INSURANCE AND INDEMNITY

**5.1**  (a) TO THE FULLEST EXTENT PERMITTED BY LAW, AND EXCEPT AS SET OUT IN PARAGRAPH 5.1(b), SUBCONTRACTOR SHALL INDEMNIFY, DEFEND AND HOLD HARMLESS MCCARTHY, THE OWNER, THE DESIGNER AND ALL OF THEIR PARENTS, SUBSIDIARIES, AFFILIATES, AGENTS, OFFICERS AND EMPLOYEES (i) FROM AND AGAINST ALL CLAIMS, DAMAGES, LOSSES, PENALTIES, AND EXPENSES, INCLUDING, BUT NOT LIMITED TO, REASONABLE ATTORNEY'S FEES AND COURT COSTS, ARISING OUT OF, OR RESULTING FROM THE PERFORMANCE, OR FAILURE IN PERFORMANCE, OF SUBCONTRACTOR'S WORK AND OBLIGATIONS AS PROVIDED IN THE CONTRACT DOCUMENTS, INCLUDING EXTRA WORK, AND (ii) FROM ANY CLAIM, DAMAGE, LOSS OR EXPENSE WHICH IS ATTRIBUTABLE TO BODILY INJURY, SICKNESS, DISEASE, DEATH, INJURY TO OR DESTRUCTION OF TANGIBLE PROPERTY INCLUDING THE LOSS OF USE RESULTING THEREFROM, ARISING OR ALLEGED TO ARISE OUT OF OR IN ANY WAY RELATED TO THIS AGREEMENT OR SUBCONTRACTOR'S PERFORMANCE OF SUBCONTRACTOR'S WORK OR OTHER ACTIVITIES OF SUBCONTRACTOR; PROVIDED, HOWEVER SUCH INDEMNITY OBLIGATIONS SHALL ONLY APPLY TO THE EXTENT CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE OR FAULT, THE BREACH OR VIOLATION OF A STATUTE, ORDINANCE, GOVERNMENTAL REGULATION, STANDARD, OR RULE, OR BREACH OF CONTRACT BY SUBCONTRACTOR OR ANYONE DIRECTLY OR INDIRECTLY EMPLOYED BY SUBCONTRACTOR OR ANYONE FOR WHOSE ACTS SUBCONTRACTOR MAY BE LIABLE,  SUCH OBLIGATIONS SHALL NOT BE CONSTRUED TO NEGATE, ABRIDGE, OR OTHERWISE REDUCE ANY OTHER

Exhibit A

DocuSign Envelope ID: 84C9655E-9F36-40C3-9264-E77287220795

RIGHT OR OBLIGATION OF INDEMNITY WHICH WOULD OTHERWISE EXIST AS TO ANY PARTY OR PERSON DESCRIBED IN THIS PARAGRAPH 5.1.

(b) NOTWITHSTANDING THE FOREGOING, TO THE FULLEST EXTENT PERMITTED BY LAW, SUBCONTRACTOR SHALL INDEMNIFY, DEFEND AND HOLD HARMLESS MCCARTHY, THE OWNER, THE DESIGNER AND ALL OF THEIR PARENTS, SUBSIDIARIES, AFFILIATES, AGENTS, OFFICERS AND EMPLOYEES FROM AND AGAINST ALL CLAIMS, DAMAGES, LOSSES, AND EXPENSES, INCLUDING BUT NOT LIMITED TO REASONABLE ATTORNEY'S FEES AND COURT COSTS, ARISING OUT OF, OR RESULTING FROM BODILY INJURY, SICKNESS, DISEASE, DEATH, OR INJURY TO ANY EMPLOYEE, AGENT OR REPRESENTATIVE OF SUBCONTRACTOR OR ANY OF ITS SUBCONTRACTORS OF ANY TIER, ~~REGARDLESS OF WHETHER~~ EXCEPT TO THE EXTENT SUCH CLAIM, DAMAGES, LOSS OR EXPENSE IS CAUSED IN PART BY THE NEGLIGENCE OR ~~WILLFUL MISCONDUCT~~ OF A PARTY INDEMNIFIED HEREUNDER. SUBCONTRACTOR SHALL PROCURE LIABILITY INSURANCE COVERING ITS OBLIGATIONS UNDER THIS PARAGRAPH 5.1, EXCEPT THAT SUBCONTRACTOR IS NOT REQUIRED TO INDEMNIFY ANY PARTY FOR THE PARTY'S SOLE OR GROSS NEGLIGENCE OR WILLFUL MISCONDUCT.

(c) TO THE FULLEST EXTENT PERMITTED BY LAW, SUBCONTRACTOR SHALL INDEMNIFY, DEFEND AND HOLD HARMLESS MCCARTHY, THE OWNER, THE DESIGNER AND ALL OF THEIR PARENTS, SUBSIDIARIES, AFFILIATES, AGENTS, OFFICERS AND EMPLOYEES FROM AND AGAINST ALL CLAIMS, DAMAGES, LOSSES, AND EXPENSES, INCLUDING BUT NOT LIMITED TO REASONABLE ATTORNEY'S FEES AND COURT COSTS, ARISING OUT OF, OR RESULTING FROM INTELLECTUAL PROPERTY LAW VIOLATIONS ARISING OR ALLEGED TO ARISE OUT OF OR IN ANY WAY RELATED TO THIS AGREEMENT OR SUBCONTRACTOR'S PERFORMANCE OF SUBCONTRACTOR'S WORK.

**5.1.1** In any and all claims against McCarthy, the Owner, the Designer or any of their agents or employees by any employee of Subcontractor, anyone directly or indirectly employed by Subcontractor or anyone for whose acts Subcontractor may be liable, the indemnification obligation under this Paragraph 5.1 shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for Subcontractor under Worker's Compensation acts, disability benefits acts or other employee benefit acts or by the insurance required herein.

**5.1.2** All indemnification obligations of Subcontractor under this Agreement shall remain in full force and effect as to claims occurring after this Agreement is terminated or completed and shall not be limited by the insurance requirements contained herein.

**5.2** **INSURANCE REQUIREMENTS.** Subcontractor shall maintain all insurance required by Exhibit 6.

# ARTICLE 6
## PERFORMANCE BOND AND LABOR AND MATERIAL PAYMENT BOND

**6.1** A Performance Bond and a Labor and Material Payment Bond (collectively "Bonds") shall be furnished in the full amount of this Agreement on the forms in Exhibit 4, attached hereto. The Bonds are to be executed by a surety company or companies authorized to execute such Bonds in the State of the location of the Project, which are on the Department of Treasury's Listing of Approved Sureties, Department Circular 570 ("Treasury List"), have an A.M. Best rating of A- or higher, and are acceptable to McCarthy and be written in favor of McCarthy and others, if so listed on Exhibit 4. The Bonds furnished shall require the attorney- in- fact who executes the Bonds on behalf of the surety to affix thereto a certified and current copy of their power of attorney. In the event of a claim under the Bonds, McCarthy shall be paid, as and when incurred, by the surety the entire cost incurred, as provided in Article 9 below, including, but not limited to, any support, administrative, legal and court costs McCarthy incurs in the enforcement of its rights under the Bonds. The cost of the Bonds is included in the Subcontract Amount, and upon McCarthy's request, the surety shall furnish to McCarthy an affidavit executed by the surety's attorney-in-fact stating the actual cost (net of any rebates, discounts or refunds) to the Subcontractor of the Bonds. If the Subcontract Amount increases by Change Order, McCarthy reserves the right to request that Subcontractor require its surety provide a rider to the bonds increasing the penal sum to the then current Subcontract Amount.

**6.2** In the event that Subcontractor's surety ceases to fulfill its obligations and contracts including, but not limited to, being removed from the Treasury List, the surety's A.M. Best rating is no longer A- or higher, or being adjudged as bankrupt prior to the completion of this Agreement, Subcontractor shall immediately furnish another bond, at Subcontractor's expense and at no additional cost to McCarthy, in the full Subcontract Amount, executed by a new surety company on the Treasury List and acceptable to McCarthy.

Exhibit A

**6.3**    Subcontractor shall comply with all requirements of McCarthy to annually (or upon request) update Subcontractor's Prequalification Form with all other required data such as current audited financials, surety confirmation of per project and aggregate bonding limits, and a letter of reference from an Officer of Subcontractor's bank.

# ARTICLE 7
## WARRANTY

Subcontractor agrees to promptly make good without cost to the Owner or McCarthy any and all defects due to faulty workmanship and/or materials which may appear within the guarantee or warranty period so established in the Contract Documents, and if no such period be stipulated in the Contract Documents, then such guarantees shall be for a period of one year from date of completion and acceptance of the Project by the Owner. Such warranty obligation of Subcontractor includes all costs to remove or correct work of Subcontractor or others not otherwise covered by said warranty in order to perform the warranty work. Receipt by McCarthy of all guarantees or warranties stipulated by the Contract Documents is required prior to processing Subcontractor's final payment. This warranty shall be in addition to all other warranties, guarantees, correction of Work obligations and remedies, expressed or implied, under the law or the Contract Documents.

# ARTICLE 8
## MCCARTHY OBLIGATIONS

**8.1**    ~~McCarthy agrees that no claim for services rendered, or materials furnished by McCarthy to Subcontractor shall be valid unless notice is given to Subcontractor prior to furnishing of the services or material or unless written notice of the claim therefor is given by McCarthy to Subcontractor not later than five (5) days after the claim originated, with the amount of the claim to be given in writing by McCarthy as soon as practicable. Notwithstanding the foregoing, such notice is not required when McCarthy determines that there is an emergency affecting the safety of persons or property.~~

**8.1**    McCarthy agrees that no claim for services rendered, or materials furnished by McCarthy to Subcontractor shall be valid unless notice is given to Subcontractor prior to furnishing of the services or material or unless written notice of the claim therefor is given by McCarthy to Subcontractor not later than five (5) days after the claim is discovered, with the amount of the claim to be given in writing by McCarthy as soon as practicable. Notwithstanding the foregoing, such notice is not required when McCarthy determines that there is an emergency affecting the safety of persons or property.

**8.2**    Storage areas, if available, will be allocated by McCarthy for Subcontractor's materials and equipment during the course of the work.  Locations for parking, office trailer(s), etc. shall be submitted to and approved by McCarthy.  Subcontractor shall relocate, without additional cost to McCarthy, said storage areas, trailers, etc., as directed by McCarthy.

# ARTICLE 9
## DEFAULT AND TERMINATION

**9.1**    Should Subcontractor default by failing at any time in the performance of any of Subcontractor's duties, responsibilities or obligations herein contained, including without limitation, Subcontractor's failure to comply with McCarthy's safety requirements, failure to supply a sufficient number of properly skilled workers or sufficient materials and equipment of the proper quality, failure in any respect to prosecute the Work with promptness and diligence, failure to promptly correct defective Work, failure to comply with Paragraph 10.1,  failure to provide the insurance, indemnity or Bonds required herein, or any other material breach of this Agreement ("Subcontractor Default"), after giving ~~twenty-four two~~ (2) ~~hours'~~ business days written notice to Subcontractor, then McCarthy, in addition to any other rights or remedies allowed by the Contract Documents or by appliable law, shall have the right to any or all of the following remedies:

(a)    McCarthy may provide such labor, materials and equipment and charge Subcontractor or deduct from any money then due or thereafter to become due Subcontractor under this Agreement, the entire cost thereof, together with all loss or damage occasioned thereby; and

(b)    McCarthy may terminate for default Subcontractor for all or a part of Subcontractor's Work.

Exhibit A

Project and Subcontract No. 2229-067
CORE SCIENTIFIC DENTON DATA CENTER
December 24, 2021
PRE-NEGOTIATED BP MODS
ADDITIONAL NEG BP MODS – January 11, 2022

**9.1.1**    In exercising its remedies for a Subcontractor Default, McCarthy shall be entitled to take over or to cause others to take over any work being performed and to be performed under this Agreement, or any part thereof, together with any ~~equipment,~~ materials and supplies ordered or fabricated, whether at the jobsite or elsewhere, and to complete Subcontractor's Work at Subcontractor's cost by whatever method McCarthy deems reasonably practical and expedient.  In this regard, Subcontractor acknowledges that it is reasonable to employ a substitute contractor upon a cost-plus or time and material basis to complete Subcontractor's Work.  In the event of Subcontractor Default, no further payments to Subcontractor shall be made until Subcontractor's Work is completed and accepted and paid for by the Owner.  Then, if the unpaid balance of the Subcontract Amount exceeds the entire cost of completing said work plus any other damages caused by Subcontractor's Default, such excess shall be paid to Subcontractor without interest as provided in Paragraph 2.1 above.  However, if the unpaid balance of the Subcontract Amount is less than the entire cost of completing said work plus any other damages caused by Subcontract's Default, such deficiency shall be immediately paid to McCarthy by Subcontractor, or, if applicable, its Surety.

**9.1.2**    Any attempt by Subcontractor to cure any such claimed Subcontractor Default during the notice period must be bona fide and effective to correct or substantially assure correction of the Subcontractor Default in order to merit rescission of the notice of Subcontractor Default.  All warranties shall survive any default hereunder and Subcontractor shall remain responsible to McCarthy for such warranty obligations.

**9.1.3**    Whenever the term "entire cost" is used in connection with work performed and material, services, etc. furnished by McCarthy or others, such term shall include all sums paid and obligations incurred to do the work and furnish the materials, services, personnel cost, etc. or have the same done or furnished by others, including, but not limited to, ~~15%~~ reasonable overhead and profit, related or resulting claims, damages or losses ~~of any nature~~, lost incentives or bonuses, and all litigation expense, court costs, reasonable attorneys' fees and any other necessary or expedient expenses of any nature reasonably incurred in connection with or incidental to such work.

**9.2**    If the Owner Contract is terminated, or at McCarthy's discretion for its convenience, and upon written notice by McCarthy, McCarthy may immediately terminate this Agreement.  Subcontractor shall be paid by McCarthy, subject to McCarthy's receipt of payment from the Owner as provided in Paragraph 2.1 above, for the cost of Subcontractor's Work performed to the date of termination, not to exceed the Subcontract Amount. In the event of termination for convenience which is not associated with a termination of McCarthy's contract by Owner, Subcontractor shall be entitled to recover its reasonable costs of demobilization and of cancelling any Purchase Orders or Subcontracts.

# ARTICLE 10
## MISCELLANEOUS

**10.1**    Subcontractor shall, insofar as permitted by law, employ labor that will work without disruption with other labor on the Project and will not engage in any act or omission that results in labor disruption such as work stoppages, slowdowns, picketing, handbilling, bannering, demonstrations or strikes (hereinafter "Labor Disruptions".) Subcontractor shall not cause nor participate in, in whole or in part, any such Labor Disruptions on the Project. If Subcontractor causes or participates in, in whole or in part, any Labor Disruptions on the Project, Subcontractor shall promptly take whatever steps that are legally available to terminate the Labor Disruption. Should there be a Labor Disruption caused by or participated in by any Subcontractor's employees or by a voluntary or involuntary cessation of work by employees of any Subcontractor or its agents, suppliers and/or subcontractors, then McCarthy shall have the right to declare Subcontractor in default of this Agreement pursuant to Paragraph 9.1 herein and avail itself of the remedies allowed under Paragraph 9.1. Subcontractor will require its subcontractors of any tier to be bound by the requirements of this Paragraph 10.1 in a like manner.

**10.2**    Failure by McCarthy in any instance to insist upon observance or performance by Subcontractor of any terms, conditions, or provisions of this Agreement shall not be deemed a waiver by McCarthy of any such terms, conditions or provisions, and observance or performance thereof. No waiver shall be binding upon McCarthy unless the same is in writing signed by McCarthy and shall then be for the particular instance referred to in said writing only. Waiver of any one breach shall not be deemed a waiver of any other breach. Payment of any sum by McCarthy to Subcontractor with or without knowledge of any breach shall not be deemed to be a waiver of such breach or any other breach.  The remainder of this Agreement will not be voided by the invalidity of one or more of the terms of this Agreement.

**10.3**    McCarthy is a federal contractor which complies fully with 29 CFR Part 471, Appendix A to Subpart A, 41, as applicable. **McCarthy and Subcontractor, unless exempt, shall abide by the requirements of 41 CFR §§ 60-1.4(a), 60-300.5(a) and 60-741.5(a). These regulations prohibit discrimination against qualified individuals based on their status as protected veterans or individuals with disabilities and prohibit discrimination against all individuals based on their race, color, religion, sex, sexual orientation, gender identity, or national origin.**

Exhibit A

Project and Subcontract No. 2229-067
CORE SCIENTIFIC DENTON DATA CENTER
December 24, 2021
PRE-NEGOTIATED BP MODS
ADDITIONAL NEG BP MODS – January 11, 2022

Moreover, these regulations require that covered prime contractors and subcontractors take affirmative action to employ and advance in employment individuals without regard to race, color, religion, sex, sexual orientation, gender identity, national origin, protected veteran status or disability.

10.4 ~~McCarthy and Subcontractor waive claims against each other for consequential damages arising out of or relating to this Subcontract, including without limitation principal office expenses, loss of bonding capacity, and losses of use, profits, business reputation or financing. Notwithstanding the previous sentence, such waiver shall not apply to (a) liquidated damages charged pursuant to Paragraph 2.4.1 herein; (b) any consequential damages that may be imposed upon McCarthy pursuant to the Owner Contract; (c) losses or damages covered by insurance required by this Agreement; and (d) Subcontractor's indemnity obligations for third party claims pursuant to this Agreement.~~

10.4 McCarthy and Subcontractor waive claims against each other for consequential damages arising out of or relating to this Subcontract, including without limitation principal office expenses, loss of bonding capacity, and losses of use, profits, business reputation or financing. Notwithstanding the previous sentence, such waiver shall not apply to (a) liquidated damages charged pursuant to Paragraph 2.4.1 herein; (b) losses or damages covered by insurance required by this Agreement; and (c) Subcontractor's indemnity obligations for third party claims pursuant to this Agreement.

# ARTICLE 11
## DISPUTE RESOLUTION

**11.1** This Agreement shall be governed by the law in effect at the place of the Project. Venue for any legal action hereunder shall be in the federal or state courts having jurisdiction in the county where the Project is located; or for disputes involving the Owner described in Paragraph 11.2 herein, venue shall be in the place set forth in the Owner Contract.

**11.2** Any claim, dispute or controversy arising out of or relating to disputes involving the Owner (at the inception of the claim, dispute or controversy, or subsequently) shall be resolved pursuant to the claims and dispute resolution procedures set forth in the Owner Contract. The determination as to whether a claim, dispute or controversy arises from or relates to disputes involving the Owner shall be made by McCarthy at McCarthy's reasonable discretion. Otherwise, for any claim, dispute or controversy between McCarthy and Subcontractor not involving the Owner, Subcontractor and McCarthy shall first have their executives meet to attempt to resolve such claim, dispute or controversy. If such claim, dispute or controversy is not so resolved, McCarthy and Subcontractor agree to mediate in accordance with Paragraph 11.3 of this Agreement. Any disputes remaining following mediation shall be resolved through litigation in the state or federal court having jurisdiction, with venue being in accordance with Paragraph 11.1 of this Agreement. IN THE EVENT OF SUCH LITIGATION, UNLESS OTHERWISE PRECLUDED BY LAW, MCCARTHY AND SUBCONTRACTOR AGREE TO WAIVE THEIR RIGHT TO A TRIAL BY JURY.

**11.3** Any claim, dispute or controversy between McCarthy and Subcontractor not involving the Owner, arising out of or relating to this Agreement or the breach thereof shall be subject to mediation before any legal proceedings can be initiated, which may be requested by either party. In the event the parties cannot agree on mediation rules, a mediation date or a mediator within seven (7) days after one party provides written notice of its intent to mediate, the parties hereby agree that the mediation will be submitted to the American Arbitration Association for mediation in accordance with the Construction Industry Mediation Rules. Any mediation shall include at the direction of McCarthy, any other applicable subcontractor, or any other party.

**11.4** The prevailing party in any legal action (including arbitration, if required) between the parties relating to this Agreement shall recover from the other party reasonable legal costs, including attorney's and consultant's fees, in connection with such action. ~~The prevailing party is a party who recovers more than 75% of its total claims in such action or who is required to pay less than 25% of the other party's total claims in such action.~~

Exhibit A

The parties hereto have executed this Agreement, the day and year first above written, which together with the Contract Documents as defined herein represent the entire and integrated agreement between the parties hereto, supersedes all prior negotiations, representations or agreements, oral or written, and may only be amended or modified as defined in Article 4 hereof.

**SUBCONTRACTOR SPECIFICALLY ACKNOWLEDGES THAT SUBCONTRACTOR HAS RECEIVED, REVIEWED AND ACCEPTED EXHIBITS __1__, __2__, __3__, __3A__, __4__ AND __6__.**

**Humphrey & Associates, Inc.**

By: _____
        BCEB36EAABF3406...

Printed: __Randy Humphrey__

Title: __Exec Vice President__

Date: __1/11/2022 | 10:57 AM PST__


**McCarthy Building Companies, Inc.**

By: __Steven Wilson_____
        EC5C35C695C34A3...

Printed: __Steven Wilson__

Title: __Vice President Operations__

Date: __1/12/2022 | 10:48 AM CST__

Exhibit A

DocuSign Envelope ID: 84C9865FF-9F36-40D3-9254-E77387297795

# EXHIBIT 1
## EXPANDED DESCRIPTION OF SUBCONTRACTORS SCOPE OF WORK

## HUMPHREY & ASSOCIATES, INC.

Contractor's work specifically includes, but is not limited to, the following scope of work:

Provide all labor, materials, tools, equipment and appurtenances to provide and install all **ELECTRICAL & FIRE ALARM** scope as needed to maintain the project schedule per the following Specification Section(s):

Division 00 - Procurement and Contracting Requirements
Division 01 - General Requirements
Division 26 – Electrical
283100 – Fire Alarm System

In addition to the Contract Specifications, all of the above shall be performed pursuant to the Contract Drawings per the attached Exhibit 2.

| | |
|---|---|
| Underground Empty Raceway (North & South) | $4,423,054.00 |
| Underground MV & 600V feeders (North & South) | $7,262,353.00 |
| South Site (A, B, C, D, Guard Shack & Tech Building) | $9,899,746.00 |
| North Site (E, F, G, Guard Shack & Tech Building) | $7,556,960.00 |
| Site Data Conduits | $300,000.00 |
| Spoil Haul Off | $70,900.00 |
| Site logistics temporary for jobsite trailers and yard | $100,000.00 |
| Performance and Payment Bond | $414,582.00 |
| **TOTAL AMOUNT OF THIS SUBCONTRACT:** | **$30,027,595.00** |

## GENERAL INCLUSIONS (Includes, but is not necessarily limited to the following):

The scope of work for this Contractor shall include but is not necessarily limited to the following items. Each item is assumed to be furnished and installed, unless specifically stated otherwise. The term "provide" means "furnish and install" unless specifically stated otherwise.

1. Subcontractor shall submit detailed shop drawings, installation instructions and installation tolerances. Subcontractor shall provide copies of approved drawings in the form and quantity specified by McCarthy. Subcontractor shall advise McCarthy and other affected trades of all design changes in a timely manner so as to preclude additional costs and conflicts with work of others on the Project. Subcontractor shall be liable for the extra costs incurred for failure to provide such timely notice.
2. Provide costs for permits and fees as required for this subcontractor's scope of work (Cost for the building permit is provided by others).
3. Provide adequate mobilizations to complete this scope of work per the Construction Schedule.
4. Overtime / shift work to meet the project schedule.
5. Off-hours work and/or Shift Work are to be used for makeup days in the event of weather delays at no additional cost.
6. Provide traffic control/flagmen and maintain traffic controls for this scope of work and/or material and equipment deliveries.
7. McCarthy to provide a 1 control line in each direction parallel to grid lines and 1 verified benchmark for elevation control. Subcontract to lay out their work from the provided control lines, benchmark, and McCarthy verified coordinates.

Exhibit A

DocuSign Envelope ID: 84C0655F-9F36-40D0-9254-E77387287D5B

8. Subcontractor shall maintain a clean and organized project at all times. Cleanup of Subcontractor's trash and debris shall be conducted on a daily basis. All trash and debris shall be placed into dumpsters provided by McCarthy and will not be allowed to accumulate at any time. If subcontractor's fail to clean up, McCarthy will provide written notification to subcontractor and then in 24 hours perform cleanup on behalf of the Subcontractor at the expense incurred by McCarthy.

9. All materials shall be organized in a way that would allow ease of movement by way of pallet jack or by wheeled cart (ex. - wheeled pipe rack, wheeled conduit rack, wheeled sheet metal racks, etc.).

10. Subcontractor shall receive, store, and maintain all materials associated with this scope of work in an organized and safe manner.

11. Provide manpower to offload material for all deliveries. All material deliveries shall be coordinated with the onsite McCarthy supervision at least 48 hours in advance. Failure to do so could result in the delivery being turned away. McCarthy will accept no charges related to deliveries being turned away due to the lack of coordination.

12. Safe and clear walkways are to be maintained at all times whether inside or outside of the structures.

13. All utilities/service shutdowns or outages must be coordinated in advance with McCarthy and per Owner requirements.

14. All project documents will be managed/ distributed electronically. McCarthy will provide access to all electronic documents via Bluebeam Studio and/or Procore allowing access via PC or Tablet devices. Subcontractor is responsible for logging in and obtaining provided documents, this software is free of charge.

15. Daily reports to McCarthy and Owner. Subcontractor to provide daily logs/reports to McCarthy daily via the use of "Procore" (free of charge).

16. Subcontractor acknowledges that service disruptions as a result of noise, vibration and utilities/service shutdowns or outages must be minimized and coordinated in advance with the Owner. While every effort will be made to keep construction activity progressing in an even flow there may be times the work will have to be interrupted temporarily or rescheduled for off-hours to allow for existing facility operation obligations to be met. This type of short-term interruption and rescheduling needs to be anticipated by trades.

17. Successfully completion of McCarthy's safety orientation for all workers.

18. Subcontractor's supervision to attend project specific coordination meetings as scheduled by McCarthy.

19. Subcontractor and all of its employees shall abide by the signed Non-Disclosure Agreement (NDA).

20. McCarthy will be invoicing the Owner 2 times per month and therefore we require 2 pay applications per month due to McCarthy on the 2nd and 4th Fridays of the month.

21. Successful enrollment in McCarthy's subcontractor default insurance program. Enrollment requires Tier 2 qualifications being met. If not qualified or McCarthy decides not to enroll into the program, McCarthy will provide change order to Subcontractor to provide payment and performance bonds.

**SCOPE INCLUSIONS (Includes, but is not necessarily limited to the following):**

The scope of work for this Contractor shall include but is not necessarily limited to the following items. Each item is assumed to be furnished and installed, unless specifically stated otherwise. The term "provide" means "furnish and install" unless specifically stated otherwise.

1. Provide all electrical work as required per the project documents and as required to have a fully functioning system.

2. Provide complete rough infrastructure including conduit, cable trays, ladder racks, raceways, boxes, back boxes, cover plates, fittings, hangers, supports, bracing, labels and accessories required for Division 26, 27, 28, security and access control systems.

3. Provide power rough-in and hook up to all equipment on plans, specifications and schedules, including but not limited to Telecom Racks and equipment, A/V Racks, projectors, power and data registers, overhead doors, HVAC mechanical equipment, plumbing equipment, equipment for controls, etc.

4. Coordinate power requirements for equipment provided by others.

Exhibit A

Project and Subcontract No. 2229-067
CORE SCIENTIFIC DENTON DATA CENTER
December 24, 2021

5. Provide final electrical connections for equipment including but not limited to mechanical, plumbing, owner provided equipment etc. as required.
6. Provide sealing of all penetrations including firestopping as it pertains to this scope of work.
7. Provide access panels as required for this scope of work (install by drywaller) to access work above ceiling as it pertains to this scope of work.
8. Provide power to electric door hardware from nearby existing power, including coordination with door hardware supplier and security subcontractor.
9. Receive, relocate, and set all Owner furnished electrical equipment as required.
10. Provide concrete cap for primary feeders for Building A from the utility yard connection to the PMUs.
11. Install conduit and conductors, including excavation and backfill, from Electrical Equipment Area to Building A PMU's.
12. Provide data conduits connecting north site and south site to Jim Cristal Road and also connecting the north and south sites.
13. Provide power (Conduit & wire) and make final connections to the guard shack and site gates.
14. Provide all trenching, bedding, backfill, compaction and spoil haul off for own scope of work.
15. Provide all cable tray for all low voltage systems.
16. Provide 30' of medium voltage conductors inside the utility yard fence. Final terminations inside the electrical yard by others.
17. Comply with Low Voltage narrative for own scope of work. The scope described within the Low Voltage Narrative is included within this agreement.
18. Provide all concrete vaults and boxes as related to scope of work.
19. Provide chat backfill under transformer pads.
20. Provide all precast equipment pads at transformers and meter cabinets.
21. Provide power to the fan wall PDUs.
22. Subcontractor shall furnish and install all new light fixtures, including exit signage and site lighting as required by Contract Documents.
23. Subcontractor to provide all labor and materials necessary to complete inspection and testing of electrical equipment as required.
24. Provide all fire alarm devices and components required for a complete and operational Fire Alarm system.
25. Provide the complete Design and installation of the Fire Alarm and Detection system including smoke management as required per all applicable codes and standards, the Texas State Fire Marshall and the authority having jurisdiction (AHJ). The Design Build Fire Alarm Subcontractor shall be responsible for preparing complete drawings and specifications for submission to the AHJ to obtain approval and a permit for the Fire Alarm construction and installation.
26. Comply with the BIM execution plan.
27. Furnish sleeves for all conduits under grade beams or footings.
28. Provide commissioning assistance as required.
29. Install PDU's onto minor rack cross beams and install rack cross beam with PDU into place. Installation of minor racks will be completed ahead of time by others.
30. For medium voltage pathways in trench beneath grade beams, provide medium voltage pathways through sleeves which are to be concrete encased. Concrete encasement by others.
31. Receive, relocate and set all Owner furnished electrical equipment as required.
32. Provide testing of transformers and MV cable.
33. Provide pull cord in all empty conduits.
34. With ongoing supply restrictions, the owner and design team have expressed interest in substituting products, i.e. PVC in lieu of HDPE or aluminum in lieu of copper conductors to help maintain the project schedule. If these situations arise, subcontractor is to submit a written request for owner approval prior to executing the substitution.
35. Provide temporary power hookup of jobsite trailers. Provide lighting for the equipment lay down area and trailer area on the East side of the site. Reference site logistics plan.

## EXCLUSIONS:

1. Ant boxes (Future Change Order).
2. Minor rack installation (By McCarthy).
3. Assembly of fan array wall (By Mechanical).
4. Concrete encasement of secondary conduits (NIC).
5. Concrete encasement at trenches beneath grade beams (By Concrete).
6. Supply Transformers (By Owner).
7. Supply Switchgear (By Owner).
8. Supply Minor rack PDU's (By Owner).
9. Supply Fan array PDU's (By Owner).
10. Supply Conduit and conductors from Electrical Equipment Area to Building A PMU's. (By DME).
11. Supply and install PMU's (By DME).
12. Cable tray and ladder racks in MDF rooms (By Low Voltage).
13. Final hook up of fan arrays to PDU's (NIC).

## CONTRACTOR INFORMATION:

| | |
|---|---|
| **Contractor Name:** | Humphrey & Associates, Inc. |
| **Street Address:** | 1501 Luna Road |
| **City, State & Zip Code:** | Carrollton, TX 75006 |
| **Phone:** | 972-740-7744 |
| **Main Contact:** | Jaeson Thornton (jaesont@teamhumphrey.com) |

Exhibit A

DocuSign Envelope ID: 84C9655E-0F36-40B9-9351-E773B7207F5E

# EXHIBIT 2
## LIST OF CONTRACT DOCUMENTS

A.     THIS AGREEMENT

B.     McCARTHY CONTRACT WITH THE OWNER, EXCLUSIVE OF FINANCIAL INFORMATION

C.     SPECIFICATIONS **(Including, but not limited to, Instructions to Bidders, General Conditions, Supplementary General Conditions and Special Conditions):**

Titled:              Core Scientific Data Center South Site
Prepared by:    MJDII
Dated:            November 12, 2021

Titled:              Core Scientific Data Center North Site
Prepared by:    MJDII
Dated:            November 22, 2021

D.     DRAWINGS/DETAILS

Titled:              Core Scientific Denton Data Center South Parcel – Issue for Construction
Prepared by:    MJDII
Dated:            November 12, 2021

Titled:              Core Scientific Denton Data Center North Parcel – Permit/Construction
Prepared by:    MJDII
Dated:            November 22, 2021

E.     ADDITIONAL SUBCONTRACTOR CONDITIONS

Titled:              Geotechnical Engineering Report
Prepared by:    D&S Engineering Labs, LLC
Dated:            October 13, 2021

Titled:              Core Scientific Telecom/Network/Low-Voltage Specification for Site: Denton, TX (DT01)
Prepared by:    N/A
Dated:            N/A

| DRAWINGS SHEET LIST – SOUTH PARCEL | | |
|---|---|---|
| **GENERAL** | | |
| Sheet Number | Sheet Name | Issue Date |
| G0.00 | Master Cover Sheet | 12-Nov-21 |
| G0.01-A | Master Sheet Index | 12-Nov-21 |
| G0.01-B | Master Sheet Index | 12-Nov-21 |
| G0.02 | Symbols/General Notes/Code Summary | 12-Nov-21 |
| G0.03 | Sequencing Plan | 12-Nov-21 |
| **CIVIL** | | |
| Sheet Number | Sheet Name | Issue Date |
| C0 | Cover Sheet | 1-Oct-21 |
| C1 | Dimensional Control Plan | 19-Oct-21 |
| C2 | Erosion Control Plan | 11-Nov-21 |
| C3 | Grading Plan | 19-Oct-21 |
| C4 | Paving Plan | 19-Oct-21 |
| C5 | Existing Drainage Area Map | 19-Oct-21 |
| C6 | Proposed Drainage Area Map | 19-Oct-21 |
| C7 | Storm Drain Plan | 19-Oct-21 |
| C8 | Utility Plan | 19-Oct-21 |
| C9 | Sanitary Sewer Plan & Profile | 19-Oct-21 |
| C10 | Sequencing Plan | 19-Oct-21 |
| C11 | Details | 11-Nov-21 |
| **LANDSCAPE** | | |
| Sheet Number | Sheet Name | Issue Date |
| L1 | Landscape Plan Site 1 Plan | 19-Oct-21 |
| L2 | Landscape Details | 19-Oct-21 |
| **CITY STANDARD DETAILS** | | |
| Sheet Number | Sheet Name | Issue Date |
| *1 | Water Details | 1-Jan-21 |
| *2 | Water Details | 1-Jan-21 |
| *3 | Water Details | 1-Jan-21 |
| *4 | Wastewater Details | 1-Jan-21 |
| *5 | Wastewater Details | 1-Jan-21 |
| *7 | Water/ Wastewater Shared Details | 1-Jan-21 |
| **PEMB MANUFACTURER SHOP DRAWINGS** | | |
| **BUILDING A** | | |
| **Sheet Number** | **Sheet Name** | **Issue Date** |
| COVER | Cover Sheet | 15-Sep-21 |
| EL1 | Building Elevations | 23-Aug-21 |
| SD1 | Sections And Details | 11-Aug-21 |
| AB1 | Anchor Bolt Plan | 11-Aug-21 |
| AB2 | Column & Bracing Reactions | 6-Aug-21 |
| F1 | Footing Plan | 11-Aug-21 |
| S1 | Standard Footing Schedule | 11-Aug-21 |
| D0 | General Notes | 11-Aug-21 |
| DS1 | Design Summary | 6-Aug-21 |
| DS2 | Design Summary | 11-Aug-21 |

Exhibit A

DocuSign Envelope ID: 81C0655F-9F96-49B2-9254-E77387297926

| DS3 | Design Summary | 11-Aug-21 |
| DS4 | Design Summary | 11-Aug-21 |
| DS5 | Design Summary | 11-Aug-21 |
| **BUILDING B/C/D** | | |
| Sheet Number | Sheet Name | Issue Date |
| COVER | Cover Sheet | 4-Nov-21 |
| EL1 | Building Elevations | 15-Nov-21 |
| SD1 | Sections And Details | 15-Nov-21 |
| AB1 | Anchor Bolt Plan | 15-Nov-21 |
| AB2 | Column & Bracing Reactions | 15-Nov-21 |
| F1 | Footing Plan | 15-Nov-21 |
| S1 | Standard Footing Schedule | 15-Nov-21 |
| D0 | General Notes | 15-Nov-21 |
| DS1 | Design Summary | 15-Nov-21 |
| DS2 | Design Summary | 15-Nov-21 |
| DS3 | Design Summary | 15-Nov-21 |
| DS4 | Design Summary | 15-Nov-21 |
| DS5 | Design Summary | 15-Nov-21 |
| **TECH BUILDING** | | |
| Sheet Number | Sheet Name | Issue Date |
| COVER | Cover Sheet | 26-Oct-21 |
| AB1 | Anchor Bolt Plan | 26-Oct-21 |
| AB2 | Column & Bracing Reactions | 26-Oct-21 |
| F1 | Footing Plan | 26-Oct-21 |
| S1 | Standard Footing Schedule | 26-Oct-21 |
| D0 | General Notes | 26-Oct-21 |
| DS1 | Design Summary | 26-Oct-21 |
| DS2 | Design Summary | 26-Oct-21 |
| DS3 | Design Summary | 26-Oct-21 |
| DS4 | Design Summary | 26-Oct-21 |
| **BUILDING A** | | |
| **GENERAL** | | |
| Sheet Number | Sheet Name | Issue Date |
| G0.00 | Cover | 12-Nov-21 |
| G0.01 | Sheet Index / General Notes/Code Summary | 12-Nov-21 |
| G0.02 | Symbols / Legends / Abbreviations | 12-Nov-21 |
| G0.03 | Sequencing Plan | 12-Nov-21 |
| G0.04 | Overall Floor Plan - Life Safety / Egress Plan | 12-Nov-21 |
| **ARCHITECTURAL** | | |
| Sheet Number | Sheet Name | Issue Date |
| A2.00 | Overall Floor Plan - Proposed | 12-Nov-21 |
| A2.01 | Partial Floor Plan- Proposed | 12-Nov-21 |
| A2.02 | Partial Floor Plan- Proposed | 12-Nov-21 |
| A2.10 | Overall Roof Plan- Proposed | 12-Nov-21 |
| A3.00 | Overall Exterior Elevations | 12-Nov-21 |
| A3.01 | Enlarged Exterior Elevations- Proposed | 12-Nov-21 |
| A3.02 | Enlarged Exterior Elevations- Proposed | 12-Nov-21 |

Exhibit A

DocuSign Envelope ID: 81696F5F-9F36-40B2-9354-E7738722D705

| A3.03 | Enlarged Exterior Elevations- Proposed | 12-Nov-21 |
|---|---|---|
| A3.04 | Exterior Wall Section | 12-Nov-21 |
| A3.05 | Exterior Wall Details | 12-Nov-21 |
| A3.06 | Wall Sections | 12-Nov-21 |
| A6.00 | Overall Reflected Ceiling Plan- Proposed | 12-Nov-21 |
| A8.01 | Sections / Details | 12-Nov-21 |
| A9.01 | Wall Types | 12-Nov-21 |
| A9.02 | Door Types / Schedules & Details | 12-Nov-21 |
| A9.03 | Door Details | 12-Nov-21 |
| A9.10 | 3D Views | 12-Nov-21 |
| **STRUCTURAL** | | |
| Sheet Number | Sheet Name | Issue Date |
| G0.03 | Sequencing Plan | 12-Nov-21 |
| S1.01 | Structural Notes | 12-Nov-21 |
| S1.02 | Structural Notes | 12-Nov-21 |
| S1.03 | Special Inspections | 12-Nov-21 |
| S1.04 | Special Inspections | 12-Nov-21 |
| S1.05 | Special Inspections | 12-Nov-21 |
| S2.01 | Partial Foundation Plan | 12-Nov-21 |
| S2.02 | Partial Foundation Plan | 12-Nov-21 |
| S3.01 | Typical Concrete Sections & Details | 12-Nov-21 |
| S3.02 | Typical Concrete Sections & Details | 12-Nov-21 |
| S3.03 | Typical Concrete Sections & Details | 12-Nov-21 |
| S5.01 | Steel Sections And Details | 12-Nov-21 |
| **MECHANICAL** | | |
| Sheet Number | Sheet Name | Issue Date |
| M0.00 | General Notes & Legend - Mechanical | 12-Nov-21 |
| M2.00 | Overall Plan - Mechanical | 12-Nov-21 |
| M2.01 | Partial Floor Plan 1 - Mechanical | 12-Nov-21 |
| M2.02 | Partial Floor Plan 2 - Mechanical | 12-Nov-21 |
| M3.00 | Sections & Schedules - Mechanical | 12-Nov-21 |
| **PLUMBING** | | |
| Sheet Number | Sheet Name | Issue Date |
| P0.01 | Overall Site Plan - Plumbing | 12-Nov-21 |
| **ELECTRICAL** | | |
| Sheet Number | Sheet Name | Issue Date |
| E0.00 | General Notes & Legend - Electrical | 12-Nov-21 |
| E1.00 | Site Plan - Electrical | 12-Nov-21 |
| E1.01 | Site Plan - Photometrics | 12-Nov-21 |
| E2.00 | Overall Plan - Electrical | 12-Nov-21 |
| E2.01 | Partial Floor Plan 1 - Electrical | 12-Nov-21 |
| E2.02 | Partial Floor Plan 2 - Electrical | 12-Nov-21 |
| E2.10 | Overall Plan - Cable Tray | 12-Nov-21 |
| E2.11 | Partial Floor Plan 1 - Cable Tray | 12-Nov-21 |
| E2.12 | Partial Floor Plan 2 - Cable Tray | 12-Nov-21 |
| E3.00 | Overall Plan - Lighting | 12-Nov-21 |
| E3.01 | Partial Floor Plan 1 - Lighting | 12-Nov-21 |

Exhibit A

| E3.02 | Partial Floor Plan 2 - Lighting | 12-Nov-21 |
|---|---|---|
| E4.00 | Details - Electrical | 12-Nov-21 |
| E4.01 | Details - Electrical | 12-Nov-21 |
| E4.02 | Details - Electrical | 12-Nov-21 |
| E4.03 | Details - Fire Alarm Riser | 12-Nov-21 |
| E5.00 | Schedules - Electrical | 12-Nov-21 |
| **FIRE PROTECTION** | | |
| Sheet Number | Sheet Name | Issue Date |
| FP0.00 | Fire Protection Legend, Details & Sections | 18-Oct-21 |
| FP2.00 | Overall Fire Protection Plan | 18-Oct-21 |
| **TECH BUILDING** | | |
| **GENERAL** | | |
| Sheet Number | Sheet Name | Issue Date |
| G0.00 | Cover | 12-Nov-21 |
| G0.01 | Sheet Index / General Notes/Code Summary | 12-Nov-21 |
| G0.02 | Symbols / Legends / Abbreviations | 12-Nov-21 |
| G0.03 | Sequencing Plan | 12-Nov-21 |
| G0.04 | Overall Floor Plan - Life Safety / Egress Plan | 12-Nov-21 |
| **ARCHITECTURAL** | | |
| Sheet Number | Sheet Name | Issue Date |
| A2.00 | Overall Floor Plan - Proposed | 12-Nov-21 |
| A2.01 | Overall Finish Plan- Proposed | 12-Nov-21 |
| A2.02 | Overall Furniture Plan- Proposed | 12-Nov-21 |
| A3.00 | Overall Exterior Elevations | 12-Nov-21 |
| A4.00 | Enlarged Floor Plans- Proposed | 12-Nov-21 |
| A5.00 | Interior Elevations | 12-Nov-21 |
| A6.00 | Reflected Ceiling Plan-Proposed | 12-Nov-21 |
| A8.01 | Details | 12-Nov-21 |
| A8.02 | Details | 12-Nov-21 |
| A8.03 | Details | 12-Nov-21 |
| A9.00 | Wall Types | 12-Nov-21 |
| A9.01 | Door Types / Schedules & Details | 12-Nov-21 |
| A9.10 | 3D Views | 12-Nov-21 |
| **STRUCTURAL** | | |
| Sheet Number | Sheet Name | Issue Date |
| G0.03 | Sequencing Plan | 12-Nov-21 |
| S1.01 | Structural Notes | 12-Nov-21 |
| S1.02 | Structural Notes | 12-Nov-21 |
| S1.03 | Special Inspections | 12-Nov-21 |
| S1.04 | Special Inspections | 12-Nov-21 |
| S1.05 | Special Inspections | 12-Nov-21 |
| S2.01 | Foundation Plan | 12-Nov-21 |
| S3.01 | Typical Concrete Sections & Details | 12-Nov-21 |
| S3.02 | Typical Concrete Sections & Details | 12-Nov-21 |
| S3.03 | Typical Concrete Sections & Details | 12-Nov-21 |
| **MECHANICAL** | | |

| Sheet Number | Sheet Name | Issue Date |
|---|---|---|
| M0.00 | General Notes & Legend - Mechanical | 12-Nov-21 |
| M2.00 | Overall Plan - Hvac | 12-Nov-21 |
| M2.01 | Overall Plan - Hvac Piping | 12-Nov-21 |
| M3.00 | Details - Mechanical | 12-Nov-21 |
| M4.00 | Schedules - Mechanical | 12-Nov-21 |
| **PLUMBING** | | |
| Sheet Number | Sheet Name | Issue Date |
| P0.00 | Legends, Schedules & General Notes -Plumbing | 12-Nov-21 |
| P1.00 | Underfloor Plan - Plumbing | 12-Nov-21 |
| P2.00 | Overall Plan - Plumbing | 12-Nov-21 |
| P3.00 | Plumbing Details | 12-Nov-21 |
| P3.01 | Plumbing Details | 12-Nov-21 |
| P4.01 | Plumbing Risers | 12-Nov-21 |
| **ELECTRICAL** | | |
| Sheet Number | Sheet Name | Issue Date |
| E0.00 | General Notes & Legend - Electrical | 12-Nov-21 |
| E2.00 | Overall Plan - Electrical | 12-Nov-21 |
| E3.00 | Overall Plan - Lighting | 12-Nov-21 |
| E4.00 | Details - Electrical | 12-Nov-21 |
| E5.00 | Panel Schedules - Electrical | 12-Nov-21 |
| **GUARD STATION** | | |
| **GENERAL** | | |
| Sheet Number | Sheet Name | Issue Date |
| G0.00 | Cover | 12-Nov-21 |
| G0.01 | Sheet Index / General Notes/Code Summary | 12-Nov-21 |
| G0.02 | Symbols / Legends / Abbreviations | 12-Nov-21 |
| G0.03 | Sequencing Plan | 12-Nov-21 |
| **ARCHITECTURAL** | | |
| Sheet Number | Sheet Name | Issue Date |
| A2.01 | Guard Station - Partial Site Plan | 12-Nov-21 |
| A3.01 | Guard Station - Elevations | 12-Nov-21 |
| A5.01 | Interior Elevations | 12-Nov-21 |
| **STRUCTURAL** | | |
| Sheet Number | Sheet Name | Issue Date |
| G0.03 | Sequencing Plan | 12-Nov-21 |
| S1.01 | Structural Notes | 12-Nov-21 |
| S1.02 | Structural Notes | 12-Nov-21 |
| S1.03 | Special Inspections | 12-Nov-21 |
| S1.04 | Special Inspections | 12-Nov-21 |
| S1.05 | Special Inspections | 12-Nov-21 |
| S2.01 | Foundation Plan | 12-Nov-21 |
| S3.01 | Typical Concrete Sections & Details | 12-Nov-21 |
| S3.02 | Typical Concrete Sections & Details | 12-Nov-21 |
| S3.03 | Typical Concrete Sections & Details | 12-Nov-21 |
| **BUILDING B** | | |
| **GENERAL** | | |

Exhibit A

| Sheet Number | Sheet Name | Issue Date |
|---|---|---|
| G0.00 | Cover | 12-Nov-21 |
| G0.01 | Sheet Index / General Notes/Code Summary | 12-Nov-21 |
| G0.02 | Symbols / Legends / Abbreviations | 12-Nov-21 |
| G0.03 | Sequencing Plan | 12-Nov-21 |
| G0.04 | Overall Floor Plan - Life Safety / Egress Plan | 12-Nov-21 |
| **ARCHITECTURAL** | | |
| Sheet Number | Sheet Name | Issue Date |
| A2.00 | Overall Floor Plan - Proposed | 12-Nov-21 |
| A2.01 | Partial Floor Plan - Proposed | 12-Nov-21 |
| A2.02 | Partial Floor Plan - Proposed | 12-Nov-21 |
| A2.03 | Partial Floor Plan - Proposed | 12-Nov-21 |
| A2.04 | Partial Floor Plan - Proposed | 12-Nov-21 |
| A3.00 | Overall Exterior Elevations | 12-Nov-21 |
| A3.01 | Enlarged Exterior Elevations- Proposed | 12-Nov-21 |
| A3.02 | Enlarged Exterior Elevations- Proposed | 12-Nov-21 |
| A3.03 | Enlarged Exterior Elevations- Proposed | 12-Nov-21 |
| A3.04 | Exterior Wall Section | 12-Nov-21 |
| A3.05 | Exterior Wall Details | 12-Nov-21 |
| A3.06 | Wall Sections | 12-Nov-21 |
| A6.00 | Reflected Ceiling Plan Proposed | 12-Nov-21 |
| A8.01 | Sections / Details | 12-Nov-21 |
| A9.01 | Wall Types | 12-Nov-21 |
| A9.02 | Door Types / Schedules & Details | 12-Nov-21 |
| A9.03 | Door Details | 12-Nov-21 |
| A9.10 | 3D Views | 12-Nov-21 |
| **STRUCTURAL** | | |
| Sheet Number | Sheet Name | Issue Date |
| G0.03. | Sequencing Plan | 12-Nov-21 |
| S1.01 | Structural Notes | 12-Nov-21 |
| S1.02 | Structural Notes | 12-Nov-21 |
| S1.03 | Special Inspections | 12-Nov-21 |
| S1.04 | Special Inspections | 12-Nov-21 |
| S1.05 | Special Inspections | 12-Nov-21 |
| S2.01 | Partial Foundation Plan | 12-Nov-21 |
| S2.02 | Partial Foundation Plan | 12-Nov-21 |
| S2.03 | Partial Foundation Plan | 12-Nov-21 |
| S2.04 | Partial Foundation Plan | 12-Nov-21 |
| S3.01 | Typical Concrete Sections & Details | 12-Nov-21 |
| S3.02 | Typical Concrete Sections & Details | 12-Nov-21 |
| S3.03 | Typical Concrete Sections & Details | 12-Nov-21 |
| S5.01 | Steel Sections And Details | 12-Nov-21 |
| **MECHANICAL** | | |
| Sheet Number | Sheet Name | Issue Date |
| M0.00 | Symbols Legend - Mechanical | 12-Nov-21 |
| M2.00 | Overall Plan - Mechanical | 12-Nov-21 |
| M2.01 | Partial Floor Plan 1 - Mechanical | 12-Nov-21 |

Exhibit A

| M2.02 | Partial Floor Plan 2 - Mechanical | 12-Nov-21 |
|---|---|---|
| M2.03 | Partial Floor Plan 3 - Mechanical | 12-Nov-21 |
| M2.04 | Partial Floor Plan 4 - Mechanical | 12-Nov-21 |
| M3.00 | Schedules And Sections - Mechanical | 12-Nov-21 |
| **ELECTRICAL** | | |
| Sheet Number | Sheet Name | Issue Date |
| E0.00 | Symbols Legend - Electrical | 12-Nov-21 |
| E2.00 | Overall Plan - Electrical | 12-Nov-21 |
| E2.01 | Partial Floor Plan 1 - Electrical | 12-Nov-21 |
| E2.02 | Partial Floor Plan 2 - Electrical | 12-Nov-21 |
| E2.03 | Partial Floor Plan 3 - Electrical | 12-Nov-21 |
| E2.04 | Partial Floor Plan 4 - Electrical | 12-Nov-21 |
| E2.10 | Overall Plan - Cable Tray | 12-Nov-21 |
| E2.11 | Partial Floor Plan 1 - Cable Tray | 12-Nov-21 |
| E2.12 | Partial Floor Plan 2 - Cable Tray | 12-Nov-21 |
| E2.13 | Partial Floor Plan 3 - Cable Tray | 12-Nov-21 |
| E2.14 | Partial Floor Plan 4 - Cable Tray | 12-Nov-21 |
| E3.00 | Overall Plan - Lighting | 12-Nov-21 |
| E3.01 | Partial Floor Plan 1 - Lighting | 12-Nov-21 |
| E3.02 | Partial Floor Plan 2 - Lighting | 12-Nov-21 |
| E3.03 | Partial Floor Plan 3 - Lighting | 12-Nov-21 |
| E3.04 | Partial Floor Plan 4 - Lighting | 12-Nov-21 |
| E4.00 | Details - Electrical | 12-Nov-21 |
| E4.01 | Details- Electrical | 12-Nov-21 |
| E4.02 | Details- Electrical | 12-Nov-21 |
| E5.00 | Schedules - Electrical | 12-Nov-21 |
| **FIRE PROTECTION** | | |
| Sheet Number | Sheet Name | Issue Date |
| FP0.00 | Fire Protection Details And Sections | 12-Nov-21 |
| FP0.01 | Overall Plan - Fire Protection | 12-Nov-21 |
| **BUILDING C** | | |
| **GENERAL** | | |
| Sheet Number | Sheet Name | Issue Date |
| G0.00 | Cover | 12-Nov-21 |
| G0.01 | Sheet Index / General Notes/Code Summary | 12-Nov-21 |
| G0.02 | Symbols / Legends / Abbreviations | 12-Nov-21 |
| G0.03 | Sequencing Plan | 12-Nov-21 |
| G0.04 | Overall Floor Plan - Life Safety / Egress Plan | 12-Nov-21 |
| **ARCHITECTURAL** | | |
| Sheet Number | Sheet Name | Issue Date |
| A2.00 | Overall Floor Plan - Proposed | 12-Nov-21 |
| A2.01 | Partial Floor Plan - Proposed | 12-Nov-21 |
| A2.02 | Partial Floor Plan - Proposed | 12-Nov-21 |
| A2.03 | Partial Floor Plan - Proposed | 12-Nov-21 |
| A2.04 | Partial Floor Plan - Proposed | 12-Nov-21 |
| A3.00 | Overall Exterior Elevations | 12-Nov-21 |
| A3.01 | Enlarged Exterior Elevations- Proposed | 12-Nov-21 |

Exhibit A

| A3.02 | Enlarged Exterior Elevations- Proposed | 12-Nov-21 |
|---|---|---|
| A3.03 | Enlarged Exterior Elevations- Proposed | 12-Nov-21 |
| A3.04 | Exterior Wall Section | 12-Nov-21 |
| A3.05 | Exterior Wall Details | 12-Nov-21 |
| A3.06 | Wall Sections | 12-Nov-21 |
| A6.00 | Reflected Ceiling Plan Proposed | 12-Nov-21 |
| A8.01 | Sections / Details | 12-Nov-21 |
| A9.01 | Wall Types | 12-Nov-21 |
| A9.02 | Door Types / Schedules & Details | 12-Nov-21 |
| A9.03 | Door Details | 12-Nov-21 |
| A9.10 | 3D Views | 12-Nov-21 |
| **STRUCTURAL** | | |
| Sheet Number | Sheet Name | Issue Date |
| G0.03. | Sequencing Plan | 12-Nov-21 |
| S1.01 | Structural Notes | 12-Nov-21 |
| S1.02 | Structural Notes | 12-Nov-21 |
| S1.03 | Special Inspections | 12-Nov-21 |
| S1.04 | Special Inspections | 12-Nov-21 |
| S1.05 | Special Inspections | 12-Nov-21 |
| S2.01 | Partial Foundation Plan | 12-Nov-21 |
| S2.02 | Partial Foundation Plan | 12-Nov-21 |
| S2.03 | Partial Foundation Plan | 12-Nov-21 |
| S2.04 | Partial Foundation Plan | 12-Nov-21 |
| S3.01 | Typical Concrete Sections & Details | 12-Nov-21 |
| S3.02 | Typical Concrete Sections & Details | 12-Nov-21 |
| S3.03 | Typical Concrete Sections & Details | 12-Nov-21 |
| S5.01 | Steel Sections And Details | 12-Nov-21 |
| **MECHANICAL** | | |
| Sheet Number | Sheet Name | Issue Date |
| M0.00 | Symbols Legend - Mechanical | 12-Nov-21 |
| M2.00 | Overall Plan - Mechanical | 12-Nov-21 |
| M2.01 | Partial Floor Plan 1 - Mechanical | 12-Nov-21 |
| M2.02 | Partial Floor Plan 2 - Mechanical | 12-Nov-21 |
| M2.03 | Partial Floor Plan 3 - Mechanical | 12-Nov-21 |
| M2.04 | Partial Floor Plan 4 - Mechanical | 12-Nov-21 |
| M3.00 | Schedules And Sections - Mechanical | 12-Nov-21 |
| **ELECTRICAL** | | |
| Sheet Number | Sheet Name | Issue Date |
| E0.00 | Symbols Legend - Electrical | 12-Nov-21 |
| E2.00 | Overall Plan - Electrical | 12-Nov-21 |
| E2.01 | Partial Floor Plan 1 - Electrical | 12-Nov-21 |
| E2.02 | Partial Floor Plan 2 - Electrical | 12-Nov-21 |
| E2.03 | Partial Floor Plan 3 - Electrical | 12-Nov-21 |
| E2.04 | Partial Floor Plan 4 - Electrical | 12-Nov-21 |
| E2.10 | Overall Plan - Cable Tray | 12-Nov-21 |
| E2.11 | Partial Floor Plan 1 - Cable Tray | 12-Nov-21 |
| E2.12 | Partial Floor Plan 2 - Cable Tray | 12-Nov-21 |

Exhibit A

DocuSign Envelope ID: 81C9655F-9F36-49B9-9351-E7738722D785

| E2.13 | Partial Floor Plan 3 - Cable Tray | 12-Nov-21 |
|-------|-----------------------------------|-----------|
| E2.14 | Partial Floor Plan 4 - Cable Tray | 12-Nov-21 |
| E3.00 | Overall Plan - Lighting | 12-Nov-21 |
| E3.01 | Partial Floor Plan 1 - Lighting | 12-Nov-21 |
| E3.02 | Partial Floor Plan 2 - Lighting | 12-Nov-21 |
| E3.03 | Partial Floor Plan 3 - Lighting | 12-Nov-21 |
| E3.04 | Partial Floor Plan 4 - Lighting | 12-Nov-21 |
| E4.00 | Details - Electrical | 12-Nov-21 |
| E4.01 | Details- Electrical | 12-Nov-21 |
| E4.02 | Details- Electrical | 12-Nov-21 |
| E5.00 | Schedules - Electrical | 12-Nov-21 |
| **FIRE PROTECTION** | | |
| Sheet Number | Sheet Name | Issue Date |
| FP0.00 | Fire Protection Details And Sections | 12-Nov-21 |
| FP0.01 | Overall Plan - Fire Protection | 12-Nov-21 |
| **BUILDING D** | | |
| **GENERAL** | | |
| Sheet Number | Sheet Name | Issue Date |
| G0.00 | Cover | 12-Nov-21 |
| G0.01 | Sheet Index / General Notes/Code Summary | 12-Nov-21 |
| G0.02 | Symbols / Legends / Abbreviations | 12-Nov-21 |
| G0.03 | Sequencing Plan | 12-Nov-21 |
| G0.04 | Overall Floor Plan - Life Safety / Egress Plan | 12-Nov-21 |
| **ARCHITECTURAL** | | |
| Sheet Number | Sheet Name | Issue Date |
| A2.00 | Overall Floor Plan - Proposed | 12-Nov-21 |
| A2.01 | Partial Floor Plan - Proposed | 12-Nov-21 |
| A2.02 | Partial Floor Plan - Proposed | 12-Nov-21 |
| A2.03 | Partial Floor Plan - Proposed | 12-Nov-21 |
| A2.04 | Partial Floor Plan - Proposed | 12-Nov-21 |
| A3.00 | Overall Exterior Elevations | 12-Nov-21 |
| A3.01 | Enlarged Exterior Elevations- Proposed | 12-Nov-21 |
| A3.02 | Enlarged Exterior Elevations- Proposed | 12-Nov-21 |
| A3.03 | Enlarged Exterior Elevations- Proposed | 12-Nov-21 |
| A3.04 | Exterior Wall Section | 12-Nov-21 |
| A3.05 | Exterior Wall Details | 12-Nov-21 |
| A3.06 | Wall Sections | 12-Nov-21 |
| A6.00 | Reflected Ceiling Plan Proposed | 12-Nov-21 |
| A8.01 | Sections / Details | 12-Nov-21 |
| A9.01 | Wall Types | 12-Nov-21 |
| A9.02 | Door Types / Schedules & Details | 12-Nov-21 |
| A9.03 | Door Details | 12-Nov-21 |
| A9.10 | 3D Views | 12-Nov-21 |
| **STRUCTURAL** | | |
| Sheet Number | Sheet Name | Issue Date |
| G0.03. | Sequencing Plan | 12-Nov-21 |
| S1.01 | Structural Notes | 12-Nov-21 |

Exhibit A

| S1.02 | Structural Notes | 12-Nov-21 |
|-------|------------------|-----------|
| S1.03 | Special Inspections | 12-Nov-21 |
| S1.04 | Special Inspections | 12-Nov-21 |
| S1.05 | Special Inspections | 12-Nov-21 |
| S2.01 | Partial Foundation Plan | 12-Nov-21 |
| S2.02 | Partial Foundation Plan | 12-Nov-21 |
| S2.03 | Partial Foundation Plan | 12-Nov-21 |
| S2.04 | Partial Foundation Plan | 12-Nov-21 |
| S3.01 | Typical Concrete Sections & Details | 12-Nov-21 |
| S3.02 | Typical Concrete Sections & Details | 12-Nov-21 |
| S3.03 | Typical Concrete Sections & Details | 12-Nov-21 |
| S5.01 | Steel Sections And Details | 12-Nov-21 |
| **MECHANICAL** | | |
| Sheet Number | Sheet Name | Issue Date |
| M0.00 | Symbols Legend - Mechanical | 12-Nov-21 |
| M2.00 | Overall Plan - Mechanical | 12-Nov-21 |
| M2.01 | Partial Floor Plan 1 - Mechanical | 12-Nov-21 |
| M2.02 | Partial Floor Plan 2 - Mechanical | 12-Nov-21 |
| M2.03 | Partial Floor Plan 3 - Mechanical | 12-Nov-21 |
| M2.04 | Partial Floor Plan 4 - Mechanical | 12-Nov-21 |
| M3.00 | Schedules And Sections - Mechanical | 12-Nov-21 |
| **ELECTRICAL** | | |
| Sheet Number | Sheet Name | Issue Date |
| E0.00 | Symbols Legend - Electrical | 12-Nov-21 |
| E2.00 | Overall Plan - Electrical | 12-Nov-21 |
| E2.01 | Partial Floor Plan 1 - Electrical | 12-Nov-21 |
| E2.02 | Partial Floor Plan 2 - Electrical | 12-Nov-21 |
| E2.03 | Partial Floor Plan 3 - Electrical | 12-Nov-21 |
| E2.04 | Partial Floor Plan 4 - Electrical | 12-Nov-21 |
| E2.10 | Overall Plan - Cable Tray | 12-Nov-21 |
| E2.11 | Partial Floor Plan 1 - Cable Tray | 12-Nov-21 |
| E2.12 | Partial Floor Plan 2 - Cable Tray | 12-Nov-21 |
| E2.13 | Partial Floor Plan 3 - Cable Tray | 12-Nov-21 |
| E2.14 | Partial Floor Plan 4 - Cable Tray | 12-Nov-21 |
| E3.00 | Overall Plan - Lighting | 12-Nov-21 |
| E3.01 | Partial Floor Plan 1 - Lighting | 12-Nov-21 |
| E3.02 | Partial Floor Plan 2 - Lighting | 12-Nov-21 |
| E3.03 | Partial Floor Plan 3 - Lighting | 12-Nov-21 |
| E3.04 | Partial Floor Plan 4 - Lighting | 12-Nov-21 |
| E4.00 | Details - Electrical | 12-Nov-21 |
| E4.01 | Details- Electrical | 12-Nov-21 |
| E4.02 | Details- Electrical | 12-Nov-21 |
| E5.00 | Schedules - Electrical | 12-Nov-21 |
| **FIRE PROTECTION** | | |
| Sheet Number | Sheet Name | Issue Date |
| FP0.00 | Fire Protection Details And Sections | 12-Nov-21 |
| FP0.01 | Overall Plan - Fire Protection | 12-Nov-21 |

Exhibit A

DocuSign Envelope ID: 81C8657F-0F36-49D3-9351-E77387237FE5

| DRAWINGS SHEET LIST - NORTH PARCEL | | |
|---|---|---|
| **GENERAL** | | |
| G0.01-A | MASTER SHEET INDEX | 22-Nov-21 |
| G0.01-B | MASTER SHEET INDEX | 22-Nov-21 |
| G0.02 | SYMBOLS /GENERAL NOTES/CODE SUMMARY | 22-Nov-21 |
| G0.03 | SEQUENCING PLAN | 22-Nov-21 |
| **CIVIL** | | |
| Sheet Number | Sheet Name | Issue Date |
| C0 | Cover Sheet | 9-Nov-21 |
| C1 | Dimension Control Plan | 9-Nov-21 |
| C2 | Erosion Control Plan | 9-Nov-21 |
| C3 | Grading Plan | 9-Nov-21 |
| C4 | Paving Plan | 9-Nov-21 |
| C5 | Existing Drainage Area Map | 9-Nov-21 |
| C6 | Proposed Drainage Area Map | 9-Nov-21 |
| C7 | Storm Drain Plan | 9-Nov-21 |
| C8 | Utility Plan | 9-Nov-21 |
| C9 | Sanitary Sewer Plan & Profile16+00 to End | 9-Nov-21 |
| C10 | Sanitary Sewer Plan & ProfileBenin to 16+00 | 9-Nov-21 |
| C11 | Details | 9-Nov-21 |
| **LANDSCAPE** | | |
| Sheet Number | Sheet Name | Issue Date |
| L1 | Landscape Plan Site 2 Plan | 9-Nov-21 |
| L2 | Landscape DetailsSite 2 Plan | 9-Nov-21 |
| T1 | Tree Survey Site 2 Plan | 9-Nov-21 |
| **CITY STANDARD DETAILS** | | |
| Sheet Number | Sheet Name | Issue Date |
| *1 | Water Details | 1-Jan-21 |
| *2 | Water Details | 1-Jan-21 |
| *3 | Water Details | 1-Jan-21 |
| *4 | Wastewater Details | 1-Jan-21 |
| *5 | Wastewater Details | 1-Jan-21 |
| *7 | Water/ Wastewater Shared Details | 1-Jan-21 |
| **PEMB MANUFACTURER SHOP DRAWINGS** | | |
| **BLDG E** | | |
| Sheet Number | Sheet Name | Issue Date |
| | Cover - BLDG E | 9-Nov-21 |
| EL1 | Building Elevations | 9-Nov-21 |
| SD1 | Sections and Details | 10-Nov-21 |
| D0 | GENERAL NOTES | 10-Nov-21 |
| AB1 | ANCHOR BOLT PLAN | 9-Nov-21 |
| AB2 | COLUMN & BRACING REACTIONS | 9-Nov-21 |
| F1 | FOOTING PLAN | 9-Nov-21 |
| S1 | Standard Footing Schedule | 10-Nov-21 |
| DS-1 | DESIGN SUMMARY | 9-Nov-21 |
| DS-2 | DESIGN SUMMARY | 9-Nov-21 |
| DS-3 | DESIGN SUMMARY | 10-Nov-21 |

Exhibit A

| DS-4 | DESIGN SUMMARY | 9-Nov-21 |
|---|---|---|
| DS-5 | DESIGN SUMMARY | 10-Nov-21 |
| **BLDG F/G** | | |
| Sheet Number | Sheet Name | Issue Date |
| | Cover - BLDG F/G | 4-Nov-21 |
| EL1 | Building Elevations | 15-Nov-21 |
| SD1 | Sections and Details | 15-Nov-21 |
| AB1 | ANCHOR PLAN | 15-Nov-21 |
| AB2 | REACTIONS | 15-Nov-21 |
| F1 | FOOTING PLAN | 15-Nov-21 |
| S1 | Standard Footing Schedule | 15-Nov-21 |
| D0 | GENERAL NOTES | 15-Nov-21 |
| DS-1 | DESIGN SUMMARY | 15-Nov-21 |
| DS-2 | DESIGN SUMMARY | 15-Nov-21 |
| DS-3 | DESIGN SUMMARY | 15-Nov-21 |
| DS-4 | DESIGN SUMMARY | 15-Nov-21 |
| DS-5 | DESIGN SUMMARY | 15-Nov-21 |
| TECH BLDG | | |
| Sheet Number | Sheet Name | Issue Date |
| | Cover - TECH BLDG | None |
| AB1 | ANCHOR BOLT PLAN | 26-Oct-21 |
| AB2 | COLUMN & BRACING REACTIONS | 26-Oct-21 |
| AB3 | COLUMN & BRACING REACTIONS | 26-Oct-21 |
| F1 | FOOTING PLAN | 26-Oct-21 |
| S1 | Standard Footing Schedule | 26-Oct-21 |
| D0 | GENERAL NOTES | 25-Oct-21 |
| DS-1 | DESIGN SUMMARY | 26-Oct-21 |
| DS-2 | DESIGN SUMMARY | 26-Oct-21 |
| DS-3 | DESIGN SUMMARY | 26-Oct-21 |
| DS-4 | DESIGN SUMMARY | 26-Oct-21 |
| **BUILDING E** | | |
| **GENERAL** | | |
| Sheet Number | Sheet Name | Issue Date |
| G0 | COVER - BUILDING E | 22-Nov-21 |
| G0.01 | SHEET INDEX / GENERAL NOTES/CODE SUMMARY | 22-Nov-21 |
| G0.02 | SYMBOLS / LEGENDS / ABBREVIATIONS | 22-Nov-21 |
| G0.03 | SEQUENCING PLAN | 22-Nov-21 |
| G0.04 | OVERALL FLOOR PLAN - LIFE SAFETY / EGRESS | 22-Nov-21 |
| **ARCHITECTURAL** | | |
| Sheet Number | Sheet Name | Issue Date |
| A2.00 | OVERALL FLOOR PLAN - PROPOSED | 22-Nov-21 |
| A2.01 | PARTIAL FLOOR PLAN - PROPOSED | 22-Nov-21 |
| A2.02 | PARTIAL FLOOR PLAN - PROPOSED | 22-Nov-21 |
| A2.10 | OVERALL ROOF PLAN - PROPOSED | 22-Nov-21 |
| A3.00 | OVERALL EXTERIOR ELEVATIONS | 22-Nov-21 |
| A3.01 | ENLARGED EXTERIOR ELEVATIONS - PROPOSED | 22-Nov-21 |
| A3.02 | ENLARGED EXTERIOR ELEVATIONS - PROPOSED | 22-Nov-21 |

Exhibit A

| A3.03 | ENLARGED EXTERIOR ELEVATIONS - PROPOSED | 22-Nov-21 |
| A3.04 | EXTERIOR WALL SECTION | 22-Nov-21 |
| A3.05 | EXTERIOR WALL DETAILS | 22-Nov-21 |
| A3.06 | WALL SECTIONS | 22-Nov-21 |
| A6.00 | OVERALL REFLECTED CEILING PLAN | 22-Nov-21 |
| A8.01 | SECTIONS / DETAILS | 22-Nov-21 |
| A9.01 | WALL TYPES | 22-Nov-21 |
| A9.02 | DOOR TYPES / SCHEDULES & DETAILS | 22-Nov-21 |
| A9.03 | DOOR DETAILS | 22-Nov-21 |
| A9.10 | 3D VIEWS | 22-Nov-21 |
| **STRUCTURAL** | | |
| Sheet Number | Sheet Name | Issue Date |
| G0.03 | SEQUENCING PLAN | 22-Nov-21 |
| S1.01 | STRUCTURAL NOTES | 22-Nov-21 |
| S1.02 | STRUCTURAL NOTES | 22-Nov-21 |
| S1.03 | SPECIAL INSPECTIONS | 22-Nov-21 |
| S1.04 | SPECIAL INSPECTIONS | 22-Nov-21 |
| S1.05 | SPECIAL INSPECTIONS | 22-Nov-21 |
| S2.01 | PARTIAL FOUNDATION PLAN | 22-Nov-21 |
| S2.02 | PARTIAL FOUNDATION PLAN | 22-Nov-21 |
| S3.01 | TYPICAL CONCRETE SECTIONS & DETAILS | 22-Nov-21 |
| S3.02 | TYPICAL CONCRETE SECTIONS & DETAILS | 22-Nov-21 |
| S3.03 | TYPICAL CONCRETE SECTIONS & DETAILS | 22-Nov-21 |
| S5.01 | STEEL SECTIONS AND DETAILS | 22-Nov-21 |
| **MECHANICAL** | | |
| Sheet Number | Sheet Name | Issue Date |
| M0.00 | GENERAL NOTES & LEGEND - MECHANICAL | 22-Nov-21 |
| M2.00 | OVERALL PLAN - MECHANICAL | 22-Nov-21 |
| M2.01 | PARTIAL FLOOR PLAN 1 - MECHANICAL | 22-Nov-21 |
| M2.02 | PARTIAL FLOOR PLAN 2 - MECHANICAL | 22-Nov-21 |
| M3.00 | SECTIONS & SCHEDULES - MECHANICAL | 22-Nov-21 |
| **ELECTRICAL** | | |
| Sheet Number | Sheet Name | Issue Date |
| E0.00 | GENERAL NOTES & LEGEND - ELECTRICAL | 22-Nov-21 |
| E2.00 | OVERALL PLAN - ELECTRICAL | 22-Nov-21 |
| E2.01 | PARTIAL FLOOR PLAN 1 - ELECTRICAL | 22-Nov-21 |
| E2.02 | PARTIAL FLOOR PLAN 2 - ELECTRICAL | 22-Nov-21 |
| E2.10 | OVERALL PLAN - CABLE TRAY | 22-Nov-21 |
| E2.11 | PARTIAL FLOOR PLAN 1 - CABLE TRAY | 22-Nov-21 |
| E2.12 | PARTIAL FLOOR PLAN 2 - CABLE TRAY | 22-Nov-21 |
| E3.00 | OVERALL PLAN - LIGHTING | 22-Nov-21 |
| E3.01 | PARTIAL FLOOR PLAN 1 - LIGHTING | 22-Nov-21 |
| E3.02 | PARTIAL FLOOR PLAN 2 - LIGHTING | 22-Nov-21 |
| E4.00 | DETAILS - ELECTRICAL | 22-Nov-21 |
| E4.01 | DETAILS - ELECTRICAL | 22-Nov-21 |
| E4.02 | DETAILS - ELECTRICAL | 22-Nov-21 |
| E4.03 | DETAILS - FIRE ALARM RISER | 22-Nov-21 |

Exhibit A

| E5.00 | SCHEDULES - ELECTRICAL | 22-Nov-21 |
|---|---|---|
| **FIRE PROTECTION** | | |
| Sheet Number | Sheet Name | Issue Date |
| FP0.00 | FIRE PROTECTION LEGEND, DETAILS AND | 22-Nov-21 |
| FP2.00 | OVERALL FIRE PROTECTION PLAN | 22-Nov-21 |
| **TECH BUILDING** | | |
| **GENERAL** | | |
| Sheet Number | Sheet Name | Issue Date |
| G0 | COVER - TECH BUILDING | 22-Nov-21 |
| G0.01 | SHEET INDEX / GENERAL NOTES/CODE SUMMARY | 22-Nov-21 |
| G0.02 | SYMBOLS / LEGENDS / ABBREVIATIONS | 22-Nov-21 |
| G0.03 | SEQUENCING PLAN | 22-Nov-21 |
| G0.04 | OVERALL FLOOR PLAN -LIFE SAFETY / EGRESS | 22-Nov-21 |
| **ARCHITECTURAL** | | |
| Sheet Number | Sheet Name | Issue Date |
| A2.00 | OVERALL FLOOR PLAN - PROPOSED | 22-Nov-21 |
| A2.01 | OVERALL FINISH PLAN- PROPOSED | 22-Nov-21 |
| A2.02 | OVERALL FURNITURE PLAN- PROPOSED | 22-Nov-21 |
| A3.00 | OVERALL EXTERIOR ELEVATIONS | 22-Nov-21 |
| A4.00 | ENLARGED FLOOR PLANS- PROPOSED | 22-Nov-21 |
| A5.00 | INTERIOR ELEVATIONS | 22-Nov-21 |
| A6.00 | REFLECTED CEILING PLAN- PROPOSED | 22-Nov-21 |
| A8.01 | DETAILS | 22-Nov-21 |
| A8.02 | DETAILS | 22-Nov-21 |
| A8.03 | DETAILS | 22-Nov-21 |
| A9.00 | WALL TYPES | 22-Nov-21 |
| A9.01 | DOOR TYPES / SCHEDULES & DETAILS | 22-Nov-21 |
| A9.10 | 3D VIEWS | 22-Nov-21 |
| **STRUCTURAL** | | |
| Sheet Number | Sheet Name | Issue Date |
| G0.03 | SEQUENCING PLAN | 22-Nov-21 |
| S1.01 | STRUCTURAL NOTES | 22-Nov-21 |
| S1.02 | STRUCTURAL NOTES | 22-Nov-21 |
| S1.03 | SPECIAL INSPECTIONS | 22-Nov-21 |
| S1.04 | SPECIAL INSPECTIONS | 22-Nov-21 |
| S1.05 | SPECIAL INSPECTIONS | 22-Nov-21 |
| S2.01 | FOUNDATION PLAN | 22-Nov-21 |
| S3.01 | TYPICAL CONCRETE SECTIONS & DETAILS | 22-Nov-21 |
| S3.02 | TYPICAL CONCRETE SECTIONS & DETAILS | 22-Nov-21 |
| S3.03 | TYPICAL CONCRETE SECTIONS & DETAILS | 22-Nov-21 |
| **MECHANICAL** | | |
| Sheet Number | Sheet Name | Issue Date |
| M0.00 | GENERAL NOTES & LEGEND -MECHANICAL | 22-Nov-21 |
| M2.00 | OVERALL PLAN -HVAC | 22-Nov-21 |
| M2.01 | OVERALL PLAN -HVAC PIPING | 22-Nov-21 |
| M3.00 | DETAILS -MECHANICAL | 22-Nov-21 |
| M4.00 | SCHEDULES -MECHANICAL | 22-Nov-21 |

Exhibit A

| PLUMBING | | |
|---|---|---|
| Sheet Number | Sheet Name | Issue Date |
| P0.00 | LEGENDS, SCHEDULES & GENERAL NOTES | 22-Nov-21 |
| P1.00 | UNDERFLOOR PLAN -PLUMBING | 22-Nov-21 |
| P2.00 | OVERALL PLAN -PLUMBING | 22-Nov-21 |
| P3.00 | PLUMBING DETAILS | 22-Nov-21 |
| P3.01 | PLUMBING DETAILS | 22-Nov-21 |
| P4.01 | PLUMBING RISERS | 22-Nov-21 |
| **ELECTRICAL** | | |
| Sheet Number | Sheet Name | Issue Date |
| E0.00 | GENERAL NOTES & LEGEND -ELECTRICAL | 22-Nov-21 |
| E2.00 | OVERALL PLAN -ELECTRICAL | 22-Nov-21 |
| E3.00 | OVERALL PLAN -LIGHTING | 22-Nov-21 |
| E4.00 | DETAILS -ELECTRICAL | 22-Nov-21 |
| E5.00 | PANEL SCHEDULES -ELECTRICAL | 22-Nov-21 |
| **GUARD STATION** | | |
| **GENERAL** | | |
| Sheet Number | Sheet Name | Issue Date |
| G0 | COVER - TECH BUILDING | 22-Nov-21 |
| G0.01 | SHEET INDEX/ GENERAL NOTES/ CODE SUMMARY | 22-Nov-21 |
| G0.02 | SYMBOLS/ LEGENDS/ ABBREVIATIONS | 22-Nov-21 |
| G0.03 | SEQUENCING PLAN | 22-Nov-21 |
| **ARCHITECTURAL** | | |
| Sheet Number | Sheet Name | Issue Date |
| A2.01 | GUARD STATION -PARTIAL SITE PLAN | 22-Nov-21 |
| A3.01 | GUARD STATION -ELEVATIONS | 22-Nov-21 |
| A5.01 | INTERIOR ELEVATIONS | 22-Nov-21 |
| **STRUCTURAL** | | |
| Sheet Number | Sheet Name | Issue Date |
| G0.03 | SEQUENCING PLAN | 22-Nov-21 |
| S1.01 | STRUCTURAL NOTES | 22-Nov-21 |
| S1.02 | STRUCTURAL NOTES | 22-Nov-21 |
| S1.03 | SPECIAL INSPECTIONS | 22-Nov-21 |
| S1.04 | SPECIAL INSPECTIONS | 22-Nov-21 |
| S1.05 | SPECIAL INSPECTIONS | 22-Nov-21 |
| S2.01 | FOUNDATION PLAN | 22-Nov-21 |
| **BUILDING F** | | |
| **GENERAL** | | |
| Sheet Number | Sheet Name | Issue Date |
| G0 | COVER - BUILDING F | 22-Nov-21 |
| G0.01 | SHEET INDEX / GENERAL NOTES/CODE SUMMARY | 22-Nov-21 |
| G0.02 | SYMBOLS / LEGENDS / ABBREVIATIONS | 22-Nov-21 |
| G0.03 | SEQUENCING PLAN | 22-Nov-21 |
| G0.04 | OVERALL FLOOR PLAN -LIFE SAFETY / EGRESS | 22-Nov-21 |
| **ARCHITECTURAL** | | |
| Sheet Number | Sheet Name | Issue Date |
| A2.00 | OVERALL FLOOR PLAN -PROPOSED | 22-Nov-21 |

Exhibit A

| A2.01 | PARTIAL FLOOR PLAN -PROPOSED | 22-Nov-21 |
|-------|------------------------------|-----------|
| A2.02 | PARTIAL FLOOR PLAN -PROPOSED | 22-Nov-21 |
| A2.03 | PARTIAL FLOOR PLAN -PROPOSED | 22-Nov-21 |
| A2.04 | PARTIAL FLOOR PLAN -PROPOSED | 22-Nov-21 |
| A2.10 | OVERALL ROOF PLAN-PROPOSED | 22-Nov-21 |
| A3.00 | OVERALL EXTERIOR ELEVATIONS | 22-Nov-21 |
| A3.01 | ENLARGED EXTERIOR ELEVATIONS-PROPOSED | 22-Nov-21 |
| A3.02 | ENLARGED EXTERIOR ELEVATIONS-PROPOSED | 22-Nov-21 |
| A3.03 | ENLARGED EXTERIOR ELEVATIONS-PROPOSED | 22-Nov-21 |
| A3.04 | EXTERIOR WALL SECTION | 22-Nov-21 |
| A3.05 | EXTERIOR WALL DETAILS | 22-Nov-21 |
| A3.06 | WALL SECTIONS | 22-Nov-21 |
| A6.00 | REFLECTED CEILING PLAN PROPOSED | 22-Nov-21 |
| A8.01 | SECTIONS / DETAILS | 22-Nov-21 |
| A9.01 | WALL TYPES | 22-Nov-21 |
| A9.02 | DOOR TYPES / SCHEDULES & DETAILS | 22-Nov-21 |
| A9.03 | DOOR DETAILS | 22-Nov-21 |
| A9.10 | 3D VIEWS | 22-Nov-21 |
| **STRUCTURAL** | | |
| Sheet Number | Sheet Name | Issue Date |
| G0.03 | SEQUENCING PLAN | 22-Nov-21 |
| S1.01 | STRUCTURAL NOTES | 22-Nov-21 |
| S1.02 | STRUCTURAL NOTES | 22-Nov-21 |
| S1.03 | SPECIAL INSPECTIONS | 22-Nov-21 |
| S1.04 | SPECIAL INSPECTIONS | 22-Nov-21 |
| S1.05 | SPECIAL INSPECTIONS | 22-Nov-21 |
| S2.01 | PARTIAL FOUNDATION PLAN | 22-Nov-21 |
| S2.02 | PARTIAL FOUNDATION PLAN | 22-Nov-21 |
| S2.03 | PARTIAL FOUNDATION PLAN | 22-Nov-21 |
| S2.04 | PARTIAL FOUNDATION PLAN | 22-Nov-21 |
| S3.01 | TYPICAL CONCRETE SECTIONS & DETAILS | 22-Nov-21 |
| S3.02 | TYPICAL CONCRETE SECTIONS & DETAILS | 22-Nov-21 |
| S3.03 | TYPICAL CONCRETE SECTIONS & DETAILS | 22-Nov-21 |
| S5.01 | STEEL SECTIONS AND DETAILS | 22-Nov-21 |
| **MECHANICAL** | | |
| Sheet Number | Sheet Name | Issue Date |
| M0.00 | SYMBOLS LEGEND -MECHANICAL | 22-Nov-21 |
| M2.00 | OVERALL PLAN -MECHANICAL | 22-Nov-21 |
| M2.01 | PARTIAL FLOOR PLAN 1 -MECHANICAL | 22-Nov-21 |
| M2.02 | PARTIAL FLOOR PLAN 2 -MECHANICAL | 22-Nov-21 |
| M2.03 | PARTIAL FLOOR PLAN 3 -MECHANICAL | 22-Nov-21 |
| M2.04 | PARTIAL FLOOR PLAN 4 -MECHANICAL | 22-Nov-21 |
| M3.00 | SCHEDULES AND SECTIONS -MECHANICAL | 22-Nov-21 |
| **PLUMBING** | | |
| Sheet Number | Sheet Name | Issue Date |
| P1.00 | NORTH PARCEL - SITE PLAN-PLUMBING | 22-Nov-21 |
| **ELECTRICAL** | | |

Exhibit A

| Sheet Number | Sheet Name | Issue Date |
|---|---|---|
| E0.00 | SYMBOLS LEGEND -ELECTRICAL | 22-Nov-21 |
| E1.00 | NORTH PARCEL - SITE PLAN-ELECTRICAL | 22-Nov-21 |
| E1.01 | SITE PLAN -PHOTOMETRICS | 22-Nov-21 |
| E2.00 | OVERALL PLAN -ELECTRICAL | 22-Nov-21 |
| E2.01 | PARTIAL FLOOR PLAN 1 -ELECTRICAL | 22-Nov-21 |
| E2.02 | PARTIAL FLOOR PLAN 2 -ELECTRICAL | 22-Nov-21 |
| E2.03 | PARTIAL FLOOR PLAN 3 -ELECTRICAL | 22-Nov-21 |
| E2.04 | PARTIAL FLOOR PLAN 4 -ELECTRICAL | 22-Nov-21 |
| E2.10 | OVERALL FLOOR PLAN -CABLE TRAY | 22-Nov-21 |
| E2.11 | PARTIAL FLOOR PLAN 1 -CABLE TRAY | 22-Nov-21 |
| E2.12 | PARTIAL FLOOR PLAN 2 -CABLE TRAY | 22-Nov-21 |
| E2.13 | PARTIAL FLOOR PLAN 3 -CABLE TRAY | 22-Nov-21 |
| E2.14 | PARTIAL FLOOR PLAN 4 -CABLE TRAY | 22-Nov-21 |
| E3.00 | OVERALL PLAN -LIGHTING | 22-Nov-21 |
| E3.01 | PARTIAL FLOOR PLAN 1 -LIGHTING | 22-Nov-21 |
| E3.02 | PARTIAL FLOOR PLAN 2 -LIGHTING | 22-Nov-21 |
| E3.03 | PARTIAL FLOOR PLAN 3 -LIGHTING | 22-Nov-21 |
| E3.04 | PARTIAL FLOOR PLAN 4 -LIGHTING | 22-Nov-21 |
| E4.00 | DETAILS -ELECTRICAL | 22-Nov-21 |
| E4.01 | DETAILS -ELECTRICAL | 22-Nov-21 |
| E4.02 | DETAILS -ELECTRICAL | 22-Nov-21 |
| E5.00 | SCHEDULES -ELECTRICAL | 22-Nov-21 |
| **FIRE PROTECTION** | | |
| Sheet Number | Sheet Name | Issue Date |
| FP0.00 | FIRE PROTECTION DETAILS AND SECTIONS | 22-Nov-21 |
| FP0.01 | OVERALL PLAN -FIRE PROTECTION | 22-Nov-21 |
| **BUILDING G** | | |
| **GENERAL** | | |
| Sheet Number | Sheet Name | Issue Date |
| G0 | COVER - BUILDING G | 22-Nov-21 |
| G0.01 | SHEET INDEX / GENERAL NOTES/CODE SUMMARY | 22-Nov-21 |
| G0.02 | SYMBOLS / LEGENDS / ABBREVIATIONS | 22-Nov-21 |
| G0.03 | SEQUENCING PLAN | 22-Nov-21 |
| G0.04 | OVERALL FLOOR PLAN -LIFE SAFETY / EGRESS | 22-Nov-21 |
| **ARCHITECTURAL** | | |
| Sheet Number | Sheet Name | Issue Date |
| A2.00 | OVERALL FLOOR PLAN -PROPOSED | 22-Nov-21 |
| A2.01 | PARTIAL FLOOR PLAN -PROPOSED | 22-Nov-21 |
| A2.02 | PARTIAL FLOOR PLAN -PROPOSED | 22-Nov-21 |
| A2.03 | PARTIAL FLOOR PLAN -PROPOSED | 22-Nov-21 |
| A2.04 | PARTIAL FLOOR PLAN -PROPOSED | 22-Nov-21 |
| A2.10 | OVERALL ROOF PLAN-PROPOSED | 22-Nov-21 |
| A3.00 | OVERALL EXTERIOR ELEVATIONS | 22-Nov-21 |
| A3.01 | ENLARGED EXTERIOR ELEVATIONS-PROPOSED | 22-Nov-21 |
| A3.02 | ENLARGED EXTERIOR ELEVATIONS-PROPOSED | 22-Nov-21 |

Exhibit A

| A3.03 | ENLARGED EXTERIOR ELEVATIONS-PROPOSED | 22-Nov-21 |
|-------|----------------------------------------|-----------|
| A3.04 | EXTERIOR WALL SECTION | 22-Nov-21 |
| A3.05 | EXTERIOR WALL DETAILS | 22-Nov-21 |
| A3.06 | WALL SECTIONS | 22-Nov-21 |
| A6.00 | REFLECTED CEILING PLAN PROPOSED | 22-Nov-21 |
| A8.01 | SECTIONS / DETAILS | 22-Nov-21 |
| A9.01 | WALL TYPES | 22-Nov-21 |
| A9.02 | DOOR TYPES / SCHEDULES & DETAILS | 22-Nov-21 |
| A9.03 | DOOR DETAILS | 22-Nov-21 |
| A9.10 | 3D VIEWS | 22-Nov-21 |
| **STRUCTURAL** | | |
| Sheet Number | Sheet Name | Issue Date |
| G0.03 | SEQUENCING PLAN | 22-Nov-21 |
| S1.01 | STRUCTURAL NOTES | 22-Nov-21 |
| S1.02 | STRUCTURAL NOTES | 22-Nov-21 |
| S1.03 | SPECIAL INSPECTIONS | 22-Nov-21 |
| S1.04 | SPECIAL INSPECTIONS | 22-Nov-21 |
| S1.05 | SPECIAL INSPECTIONS | 22-Nov-21 |
| S2.01 | PARTIAL FOUNDATION PLAN | 22-Nov-21 |
| S2.02 | PARTIAL FOUNDATION PLAN | 22-Nov-21 |
| S2.03 | PARTIAL FOUNDATION PLAN | 22-Nov-21 |
| S2.04 | PARTIAL FOUNDATION PLAN | 22-Nov-21 |
| S3.01 | TYPICAL CONCRETE SECTIONS & DETAILS | 22-Nov-21 |
| S3.02 | TYPICAL CONCRETE SECTIONS & DETAILS | 22-Nov-21 |
| S3.03 | TYPICAL CONCRETE SECTIONS & DETAILS | 22-Nov-21 |
| S5.01 | STEEL SECTIONS AND DETAILS | 22-Nov-21 |
| **MECHANICAL** | | |
| Sheet Number | Sheet Name | Issue Date |
| M0.00 | SYMBOLS LEGEND -MECHANICAL | 22-Nov-21 |
| M2.00 | OVERALL PLAN -MECHANICAL | 22-Nov-21 |
| M2.01 | PARTIAL FLOOR PLAN 1 -MECHANICAL | 22-Nov-21 |
| M2.02 | PARTIAL FLOOR PLAN 2 -MECHANICAL | 22-Nov-21 |
| M2.03 | PARTIAL FLOOR PLAN 3 -MECHANICAL | 22-Nov-21 |
| M2.04 | PARTIAL FLOOR PLAN 4 -MECHANICAL | 22-Nov-21 |
| M3.00 | SCHEDULES AND SECTIONS -MECHANICAL | 22-Nov-21 |
| **PLUMBING** | | |
| Sheet Number | Sheet Name | Issue Date |
| P1.00 | NORTH PARCEL - SITE PLAN-PLUMBING | 22-Nov-21 |
| **ELECTRICAL** | | |
| Sheet Number | Sheet Name | Issue Date |
| E0.00 | SYMBOLS LEGEND -ELECTRICAL | 22-Nov-21 |
| E1.00 | NORTH PARCEL - SITE PLAN-ELECTRICAL | 22-Nov-21 |
| E1.01 | SITE PLAN -PHOTOMETRICS | 22-Nov-21 |
| E2.00 | OVERALL PLAN -ELECTRICAL | 22-Nov-21 |
| E2.01 | PARTIAL FLOOR PLAN 1 -ELECTRICAL | 22-Nov-21 |
| E2.02 | PARTIAL FLOOR PLAN 2 -ELECTRICAL | 22-Nov-21 |
| E2.03 | PARTIAL FLOOR PLAN 3 -ELECTRICAL | 22-Nov-21 |

Exhibit A

| E2.04 | PARTIAL FLOOR PLAN 4 -ELECTRICAL | 22-Nov-21 |
|---|---|---|
| E2.10 | OVERALL FLOOR PLAN -CABLE TRAY | 22-Nov-21 |
| E2.11 | PARTIAL FLOOR PLAN 1 -CABLE TRAY | 22-Nov-21 |
| E2.12 | PARTIAL FLOOR PLAN 2 -CABLE TRAY | 22-Nov-21 |
| E2.13 | PARTIAL FLOOR PLAN 3 -CABLE TRAY | 22-Nov-21 |
| E2.14 | PARTIAL FLOOR PLAN 4 -CABLE TRAY | 22-Nov-21 |
| E3.00 | OVERALL PLAN -LIGHTING | 22-Nov-21 |
| E3.01 | PARTIAL FLOOR PLAN 1 -LIGHTING | 22-Nov-21 |
| E3.02 | PARTIAL FLOOR PLAN 2 -LIGHTING | 22-Nov-21 |
| E3.03 | PARTIAL FLOOR PLAN 3 -LIGHTING | 22-Nov-21 |
| E3.04 | PARTIAL FLOOR PLAN 4 -LIGHTING | 22-Nov-21 |
| E4.00 | DETAILS -ELECTRICAL | 22-Nov-21 |
| E4.01 | DETAILS -ELECTRICAL | 22-Nov-21 |
| E4.02 | DETAILS -ELECTRICAL | 22-Nov-21 |
| E5.00 | SCHEDULES -ELECTRICAL | 22-Nov-21 |
| **FIRE PROTECTION** | | |
| Sheet Number | Sheet Name | Issue Date |
| FP0.00 | FIRE PROTECTION DETAILS AND SECTIONS | 22-Nov-21 |
| FP0.01 | OVERALL PLAN -FIRE PROTECTION | 22-Nov-21 |
| **SPECIFICATIONS - SOUTH SITE** | | |
| Spec Number | Spec Title | Issue Date |
| 00000 | Spec Cover - Core Scientific | 12-Nov-21 |
| 015723 | Temporary Storm Water Pollution Control | 12-Nov-21 |
| 033000 | Cast-In-Place Concrete | 12-Nov-21 |
| 033500 | Concrete Floor Finishing | 12-Nov-21 |
| 054000 | Cold-Formed Metal Framing | 12-Nov-21 |
| 055000 | Metal Fabrications | 12-Nov-21 |
| 061000 | Rough Carpentry | 12-Nov-21 |
| 064116 | Plastic-Laminate-Clad Architectural Cabinets | 12-Nov-21 |
| 066400 | Plastic Paneling | 12-Nov-21 |
| 072100 | Thermal Insulation | 12-Nov-21 |
| 076200 | Sheet Metal Flashing And Trim | 12-Nov-21 |
| 078413 | Penetration Firestopping | 12-Nov-21 |
| 079200 | Joint Sealants | 12-Nov-21 |
| 079219 | Acoustical Joint Sealants | 12-Nov-21 |
| 081113 | Hollow Metal Windows, Doors And Frames | 12-Nov-21 |
| 081416 | Flush Wood Doors | 12-Nov-21 |
| 083113 | Access Doors And Frames | 12-Nov-21 |
| 083300 | Non-Insulated Overhead Coiling Doors | 12-Nov-21 |
| 083323 | Insulated Overhead Coiling Doors | 12-Nov-21 |
| 087100 | Door Hardware | 12-Nov-21 |
| 088000 | Glazing | 12-Nov-21 |
| 088300 | Mirrors | 12-Nov-21 |
| 089119 | Fixed Louvers | 12-Nov-21 |
| 092216 | Non-Structural Metal Framing | 12-Nov-21 |
| 092900 | Gypsum Board | 12-Nov-21 |
| 095113 | Acoustical Panel Ceilings | 12-Nov-21 |

Exhibit A

| 096513 | Resilient Base And Accessories | 12-Nov-21 |
|---|---|---|
| 096519 | Resilient Tile Flooring | 12-Nov-21 |
| 099114 | Exterior Painting (Mpi Standards) | 12-Nov-21 |
| 099124 | Interior Painting (Mpi Standards) | 12-Nov-21 |
| 099300 | Staining And Transparent Finishing | 12-Nov-21 |
| 102113.14 | Stainless Steel Toilet Compartments | 12-Nov-21 |
| 102600 | Wall Protection | 12-Nov-21 |
| 102800 | Toilet and Bath Accessories | 12-Nov-21 |
| 104413 | Fire Protection Cabinets | 12-Nov-21 |
| 104416 | Fire Extinguishers | 12-Nov-21 |
| 123661.16 | Solid Surfacing Countertops | 12-Nov-21 |
| 210000 | Fire Suppression | 12-Nov-21 |
| 210500 | Common Work Results For Fire Suppression | 12-Nov-21 |
| 211310 | Nitrogen Generating System | 12-Nov-21 |
| 211335 | Dry Pipe Fire Sprinkler System | 12-Nov-21 |
| 220000 | Plumbing | 12-Nov-21 |
| 220500 | Common Work Results For Plumbing | 12-Nov-21 |
| 220553 | Identification For Plumbing Equipment And Piping | 12-Nov-21 |
| 220700 | Plumbing Insulation | 12-Nov-21 |
| 221116 | Domestic Water Piping System | 12-Nov-21 |
| 221316 | Sanitary Waste And Vent System | 12-Nov-21 |
| 221513 | Compressed Air Piping System | 12-Nov-21 |
| 222113 | Plumbing Piping Systems | 12-Nov-21 |
| 223000 | Domestic Water Heating Equipment And Accessories | 12-Nov-21 |
| 224200 | Plumbing Fixtures | 12-Nov-21 |
| 230000 | Heating, Ventilating, And Air Conditioning (Hvac) Work | 12-Nov-21 |
| 230500 | Common Work Results For Hvac | 12-Nov-21 |
| 230513 | Common Motor Requirements For Hvac | 12-Nov-21 |
| 230514 | Common Motor Starter Requirements For Hvac Equipment | 12-Nov-21 |
| 230548 | Vibration Controls For Hvac Piping And Equipment | 12-Nov-21 |
| 230553 | Identification For Hvac Ductwork, Equipment And Piping | 12-Nov-21 |
| 230593 | Mechanical Systems Testing, Adjusting, And Balancing (Tab) | 12-Nov-21 |
| 230700 | Insulation | 12-Nov-21 |
| 230900 | Instrumentation And Control For Hvac | 12-Nov-21 |
| 232113 | Condensate Piping | 12-Nov-21 |
| 232300 | Refrigerant Piping | 12-Nov-21 |
| 233000 | Hvac Air Distribution | 12-Nov-21 |
| 233400 | Exhaust And Supply Air Fans | 12-Nov-21 |
| 238126 | Split-System Air-Conditioning Units | 12-Nov-21 |
| 238239 | Heat Generation Electric | 12-Nov-21 |
| 260000 | Electrical | 12-Nov-21 |
| 260513 | Medium-Voltage Cables | 12-Nov-21 |
| 260519 | Low Voltage Electrical Power Conductors And Cables | 12-Nov-21 |
| 260520 | Cable Connections | 12-Nov-21 |
| 260523 | Control-Voltage Electrical Power Cables | 12-Nov-21 |
| 260526 | Grounding And Bonding For Electrical Systems | 12-Nov-21 |

Exhibit A

| 260529 | Hangers And Supports For Electrical Systems | 12-Nov-21 |
|--------|---------------------------------------------|-----------|
| 260532 | Raceways | 12-Nov-21 |
| 260533 | Boxes For Electrical Systems | 12-Nov-21 |
| 260536 | Cable Trays For Electrical Systems | 12-Nov-21 |
| 260553 | Identification For Electrical Systems | 12-Nov-21 |
| 260573 | Electric Power System Analysis | 12-Nov-21 |
| 262213 | Low Voltage Distribution Transformers | 12-Nov-21 |
| 262416 | Panelboards | 12-Nov-21 |
| 262716 | Electrical Cabinets And Enclosures | 12-Nov-21 |
| 262726 | Wiring Devices | 12-Nov-21 |
| 262813 | Fuses | 12-Nov-21 |
| 262816 | Enclosed Switches And Circuit Breakers | 12-Nov-21 |
| 265101 | Interior Lighting | 12-Nov-21 |
| 265102 | Exterior Lighting | 12-Nov-21 |
| 265105 | Networked Lighting Controls | 12-Nov-21 |
| 283100 | Fire Alarm System | 12-Nov-21 |
| 310000 | Earthwork | 12-Nov-21 |
| 311000 | Site Clearing | 12-Nov-21 |
| 312333 | Trenching And Backfilling | 12-Nov-21 |
| 313200 | Soil Stabilization | 12-Nov-21 |
| 321313 | Concrete Paving | 12-Nov-21 |
| 321723 | Pavement Markings | 12-Nov-21 |
| 321900 | Walk Road And Parking Appurtenances | 12-Nov-21 |
| 323113 | Chain Link Fences & Gates | 12-Nov-21 |
| 323223 | Modular Retaining Wall | 12-Nov-21 |
| 328400 | Planting Irrigation | 12-Nov-21 |
| 329213 | Hydromulching | 12-Nov-21 |
| 329300 | Trees,Shrubs, And Groundcovers | 12-Nov-21 |
| 331000 | Water Utilities | 12-Nov-21 |
| 333000 | Sanitary Sewerage Utilities | 12-Nov-21 |
| 334000 | Storm Drainage Utilities | 12-Nov-21 |
| **GEOTECHNICAL REPORT** | | |
| N/A | Geotechnical Engineering Report | 13-Oct-21 |
| **TELECOM/NETWORK/LOW-VOLTAGE SPECIFICATION** | | |
| N/A | Core Scientific Telecom/Network/Low-Voltage Specification for site: Denton, TX (DT01) | No Date |
| **SPECIFICATIONS - NORTH SITE** | | |
| Spec Number | Spec Title | Issue Date |
| 015723 | Temporary Storm Water Pollution Control | 22-Nov-21 |
| 033000 | Cast-in-Place Concrete | 22-Nov-21 |
| 033500 | Concrete Floor Finishing | 22-Nov-21 |
| 054000 | Cold-Formed Metal Framing | 22-Nov-21 |
| 055000 | Metal Fabrications | 22-Nov-21 |
| 061000 | Rough Carpentry | 22-Nov-21 |
| 064116 | Plastic-Laminate-Clad Architectural Cabinets | 22-Nov-21 |
| 066400 | Plastic Paneling | 22-Nov-21 |
| 072100 | Thermal Insulation | 22-Nov-21 |

Exhibit A

| 076200 | Sheet Metal Flashing And Trim | 22-Nov-21 |
|---------|-------------------------------|-----------|
| 078413 | Penetration Firestopping | 22-Nov-21 |
| 079200 | Joint Sealants | 22-Nov-21 |
| 079219 | Acoustical Joint Sealants | 22-Nov-21 |
| 081113 | Hollow Metal Windows, Doors And Frames | 22-Nov-21 |
| 081416 | Flush Wood Doors | 22-Nov-21 |
| 083113 | Access Doors And Frames | 22-Nov-21 |
| 083300 | Non-Insulated Overhead Coiling Doors | 22-Nov-21 |
| 083323 | Insulated Overhead Coiling Doors | 22-Nov-21 |
| 087100 | Door Hardware | 22-Nov-21 |
| 088000 | Glazing | 22-Nov-21 |
| 088300 | Mirrors | 22-Nov-21 |
| 089119 | Fixed Louvers | 22-Nov-21 |
| 092216 | Non-Structural Metal Framing | 22-Nov-21 |
| 092900 | Gypsum Board | 22-Nov-21 |
| 095113 | Acoustical Panel Ceilings | 22-Nov-21 |
| 096513 | Resilient Base And Accessories | 22-Nov-21 |
| 096519 | Resilient Tile Flooring | 22-Nov-21 |
| 099114 | Exterior Painting (Mpi Standards) | 22-Nov-21 |
| 099124 | Interior Painting (Mpi Standards) | 22-Nov-21 |
| 099300 | Staining And Transparent Finishing | 22-Nov-21 |
| 102113.14 | Stainless Steel Toilet Compartments | 22-Nov-21 |
| 102600 | Wall And Door Protection | 22-Nov-21 |
| 102800 | Toilet And Bath Accessories | 22-Nov-21 |
| 104413 | Fire Protection Cabinets | 22-Nov-21 |
| 104416 | Fire Extinguishers | 22-Nov-21 |
| 123661.16 | Solid Surfacing Countertops | 22-Nov-21 |
| 210000 | Fire Suppression | 22-Nov-21 |
| 210500 | Common Work Results For Fire Suppression | 22-Nov-21 |
| 211310 | Nitrogen Generating System | 22-Nov-21 |
| 211335 | Dry Pipe Fire Sprinkler System | 22-Nov-21 |
| 220000 | Plumbing | 22-Nov-21 |
| 220500 | Common Work Results For Plumbing | 22-Nov-21 |
| 220553 | Identification For Plumbing Equipment And Piping | 22-Nov-21 |
| 220700 | Plumbing Insulation | 22-Nov-21 |
| 221116 | Domestic Water Piping System | 22-Nov-21 |
| 221316 | Sanitary Waste And Vent System | 22-Nov-21 |
| 221513 | Compressed Air Piping System | 22-Nov-21 |
| 222113 | Plumbing Piping Systems | 22-Nov-21 |
| 223000 | Domestic Water Heating Equipment And Accessories | 22-Nov-21 |
| 224200 | Plumbing Fixtures | 22-Nov-21 |
| 230000 | Heating, Ventilating, And Air Conditioning (HVAC) Work | 22-Nov-21 |
| 230500 | Common Work Results For HVAC | 22-Nov-21 |
| 230513 | Common Motor Requirements For HVAC | 22-Nov-21 |
| 230514 | Common Motor Starter Requirements For HVAC Equipment | 22-Nov-21 |
| 230548 | Vibration Controls For HVAC Piping And Equipment | 22-Nov-21 |
| 230553 | Identification For HVAC Ductwork, Equipment And Piping | 22-Nov-21 |

Exhibit A

| 230593 | Mechanical Systems Testing, Adjusting, and Balancing (TAB) | 22-Nov-21 |
|---|---|---|
| 230700 | Insulation | 22-Nov-21 |
| 230900 | Instrumentation and Control for HVAC | 22-Nov-21 |
| 232113 | Condensate Piping | 22-Nov-21 |
| 232300 | Refrigerant Piping | 22-Nov-21 |
| 233000 | HVAC Air Distribution | 22-Nov-21 |
| 233400 | Exhaust and Supply Air Fans | 22-Nov-21 |
| 238126 | Split-System Air-Conditioning Units | 22-Nov-21 |
| 238239 | Heat Generation Electric | 22-Nov-21 |
| 260000 | Electrical | 22-Nov-21 |
| 260513 | Medium-Voltage Cables | 22-Nov-21 |
| 260519 | Low Voltage Electrical Power Conductors and Cables | 22-Nov-21 |
| 260520 | Cable Connections | 22-Nov-21 |
| 260523 | Control-Voltage Electrical Power Cables | 22-Nov-21 |
| 260526 | Grounding and Bonding for Electrical Systems | 22-Nov-21 |
| 260529 | Hangers and Supports for Electrical Systems | 22-Nov-21 |
| 260532 | Raceways | 22-Nov-21 |
| 260533 | Boxes for Electrical Systems | 22-Nov-21 |
| 260536 | Cable Trays for Electrical Systems | 22-Nov-21 |
| 260553 | Identification for Electrical Systems | 22-Nov-21 |
| 260573 | Electric Power System Analysis | 22-Nov-21 |
| 262213 | Low Voltage Distribution Transformers | 22-Nov-21 |
| 262416 | Panelboards | 22-Nov-21 |
| 262716 | Electrical Cabinets and Enclosures | 22-Nov-21 |
| 262726 | Wiring Devices | 22-Nov-21 |
| 262813 | Fuses | 22-Nov-21 |
| 262816 | Enclosed Switches and Circuit Breakers | 22-Nov-21 |
| 265101 | Interior Lighting | 22-Nov-21 |
| 265102 | Exterior Lighting | 22-Nov-21 |
| 265105 | Networked Lighting Controls | 22-Nov-21 |
| 283100 | Fire Alarm System | 22-Nov-21 |
| 310000 | Earthwork | 22-Nov-21 |
| 311000 | Site Clearing | 22-Nov-21 |
| 312333 | Trenching And Backfilling | 22-Nov-21 |
| 313200 | Soil Stabilization | 22-Nov-21 |
| 321313 | Concrete Paving | 22-Nov-21 |
| 321723 | Pavement Markings | 22-Nov-21 |
| 321900 | Walk Road And Parking Appurtenances | 22-Nov-21 |
| 323113 | Chain Link Fences And Gates | 22-Nov-21 |
| 323223 | Modular Retaining Wall | 22-Nov-21 |
| 328400 | Planting Irrigation | 22-Nov-21 |
| 329213 | Hydromulching | 22-Nov-21 |
| 329300 | Trees, Shrubs, And Groundcovers | 22-Nov-21 |
| 331000 | Water Utilities | 22-Nov-21 |
| 333000 | Sanitary Sewerage Utilities | 22-Nov-21 |
| 334000 | Storm Drainage Utilities | 22-Nov-21 |

Exhibit A

# EXHIBIT 3
## LIEN AND CLAIM WAIVER AFFIDAVIT FORMS (TEXAS)

A.   SUBCONTRACTOR SUBMITTAL FORMS

    1.   Subcontractor's Application, Certificate for Payment and Conditional Lien Waiver - Texas

    2.   Unconditional Waiver and Release on Final Payment

    3.   Unconditional Waiver and Release on Progress Payment

    4.   Subcontractor Finalization Letter

B.   SUB-SUBCONTRACTOR AND SUPPLIER SUBMITTAL FORMS

    1.   Sub-Subcontractor Conditional Waiver and Release on Final Payment

    2.   Sub-Subcontractor Conditional Waiver and Release on Progress Payment

    3.   Sub-subcontractor Unconditional Waiver and Release on Final Payment

    4.   Sub-subcontractor Unconditional Waiver and Release on Progress Payment

Exhibit A

**NOTICE: This document waives rights unconditionally and states that you have been paid for giving up those rights. It is prohibited for a person to require you to sign this document if you have not been paid the payment amount set forth below. If you have not been paid, use a conditional release form.**

## UNCONDITIONAL WAIVER AND RELEASE ON FINAL PAYMENT (TEXAS)

Project <u>CORE SCIENTIFIC DENTON DATA CENTER</u>
Job No. <u>2229</u>

The signer of this document has been paid in full for all labor, services, equipment, or materials furnished to the property or to McCarthy Building Companies, Inc. ("McCarthy") on the property of <u>CORE SCIENTIFIC, INC.</u> located at <u>8151 JIM CHRISTAL ROAD, DENTON, TX 76207</u> to the following extent: <u>CORE SCIENTIFIC DENTON DATA CENTER</u>  The signer therefore waives and releases any mechanic's lien right, any right arising from a payment bond that complies with a state or federal statute, any common law payment bond right, any claim for payment, and any rights under any similar ordinance, rule, or statute related to claim or payment rights for persons in the signer's position.

The signer warrants that the signer has already paid or will use the funds received from this final payment to promptly pay in full all of the signer's laborers, subcontractors, materialmen and suppliers for all work, materials, equipment, or services provided for or to the above referenced project up to the date of this waiver and release.

_____
*Date*

_____
*Subcontractor Name*

By: _____
*Signature*

_____
*Title*

STATE OF TEXAS

COUNTY OF _____

Subscribed and sworn to before me this _____ day of _____, 20____.

_____
My Commission Expires:

_____
Notary Public

Exhibit A

DocuSign Envelope ID: 81C0655E-0E36-40F9-9254-E77387297F5

**NOTICE: This document waives rights unconditionally and states that you have been paid for giving up those rights. It is prohibited for a person to require you to sign this document if you have not been paid the payment amount set forth below. If you have not been paid, use a conditional release form.**

## UNCONDITIONAL WAIVER AND RELEASE ON PROGRESS PAYMENT (TEXAS)

Project <u>CORE SCIENTIFIC DENTON DATA CENTER</u>
Job No. <u>2229</u>

The signer of this document has been paid and has received a progress payment in the sum of $<u>           </u> for all labor, services, equipment, or materials furnished to the property or to McCarthy Building Companies, Inc. ("McCarthy") on the property of <u>CORE SCIENTIFIC, INC.</u> located at <u>8151 JIM CHRISTAL ROAD, DENTON, TX 76207</u> to the following extent: <u>CORE SCIENTIFIC DENTON DATA CENTER</u>. The signer therefore waives and releases any mechanic's lien right, any right arising from a payment bond that complies with a state or federal statute, any common law payment bond right, any claim for payment, and any rights under any similar ordinance, rule, or statute related to claim or payment rights for persons in the signer's position that the signer has on the above referenced project to the following extent:

This release covers a progress payment for all labor, services, equipment, or materials furnished to the property or to  McCarthy as indicated in the attached statement(s) or progress payment request(s), except for unpaid retention, pending modifications and changes, or other items furnished. A list of such pending modifications and changes or other items is attached here.

The signer warrants that the signer has already paid or will use the funds received from this progress payment to promptly pay in full all of the signer's laborers, subcontractors, materialmen, and suppliers for all work, materials, equipment, or services provided for or to the above referenced project in regard to the attached statement(s) or progress payment request(s).

_____
*Date*

                       _____
                       *Subcontractor Name*

By: _____
                       *Signature*

                       _____
                       *Title*

STATE OF TEXAS

COUNTY OF _____

Subscribed and sworn to before me this _____ day of _____, 20____.

_____     _____
My Commission Expires:                  Notary Public

Exhibit A

**SUB-SUBCONTRACTOR CONDITIONAL WAIVER AND RELEASE ON FINAL PAYMENT (TEXAS)**

Project <u>CORE SCIENTIFIC DENTON DATA CENTER</u>
Job No. <u>2229</u>

On receipt by the signer of this document of a check from <u>Humphrey & Associates, Inc.</u> ("Subcontractor") in the sum of $_____ payable to _____ *[insert Sub-subcontractor or joint payees name(s)]* and when the check has been properly endorsed and has been paid by the bank on which it is drawn, this document becomes effective to release any mechanic's lien right, any right arising from a payment bond that complies with a state or federal statute, any common law payment bond right, any claim for payment, and any rights under any similar ordinance, rule, or statute related to claim or payment rights for persons in the signer's position that the signer has on the property of <u>CORE SCIENTIFIC, INC.</u> located at <u>8151 JIM CHRISTAL ROAD, DENTON, TX 76207</u> to the following extent: <u>CORE SCIENTIFIC DENTON DATA CENTER.</u>

This release covers the final payment to the signer for all labor, services, equipment, or materials furnished to the property or to Subcontractor.

Before any recipient of this document relies on this document, the recipient should verify evidence of payment to the signer.

The signer warrants that the signer has already paid or will use the funds received from this final payment to promptly pay in full all of the signer's laborers, subcontractors, materialmen and suppliers for all work, materials, equipment, or services provided for or to the above referenced project up to the date of this waiver and release.

_____
*Date*

By: _____
*Sub-subcontractor Name*

_____
*Signature*

_____
*Title*

STATE OF TEXAS

COUNTY OF _____

Subscribed and sworn to before me this _____ day of _____, 20____.

_____
My Commission Expires:

_____
Notary Public

Exhibit A

DocuSign Envelope ID: 84C8655F-9F36-4022-9254-E77387207F5

**SUB-SUBCONTRACTOR CONDITIONAL WAIVER AND RELEASE ON PROGRESS PAYMENT (TEXAS)**

Project <u>CORE SCIENTIFIC DENTON DATA CENTER</u>
Job No. <u>2229</u>

On receipt by the signer of this document of a check from <u>Humphrey & Associates, Inc.</u> ("Subcontractor") in the sum of $_____ payable to _____ [**_insert Sub-subcontractor or joint payees name(s)_**] and when the check has been properly endorsed and has been paid by the bank on which it is drawn, this document becomes effective to release any mechanic's lien right, any right arising from a payment bond that complies with a state or federal statute, any common law payment bond right, any claim for payment, and any rights under any similar ordinance, rule, or statute related to claim or payment rights for persons in the signer's position that the signer has on the property of <u>CORE SCIENTIFIC, INC.</u> located at <u>8151 JIM CHRISTAL ROAD, DENTON, TX 76207</u> to the following extent: <u>CORE SCIENTIFIC DENTON DATA CENTER.</u>

This release covers a progress payment for all labor, services, equipment, or materials furnished to the property or to Subcontractor as indicated in the attached statement(s) or progress payment request(s), except for unpaid retention, pending modifications and changes, or other items furnished. A list of such pending modification and changes or other items is attached hereto.

Before any recipient of this document relies on this document, the recipient should verify evidence of payment to the signer.

The signer warrants that the signer has already paid or will use the funds received from this progress payment to promptly pay in full all of the signer's laborers, subcontractors, materialmen, and suppliers for all work, materials, equipment, or services provided for or to the above referenced project in regard to the attached statement(s) or progress payment request(s).

_____
*Date*

                                        _____
                                        *Sub-subcontractor Name*

By: _____

                                        *Signature*

                                        _____
                                        *Title*

STATE OF TEXAS

COUNTY OF _____

Subscribed and sworn to before me this _____ day of _____, 20____.

_____
My Commission Expires:

                                        _____
                                        Notary Public

Exhibit A

DocuSign Envelope ID: 81C0655F-9F96-49D9-9254-E77387297275

**NOTICE: This document waives rights unconditionally and states that you have been paid for giving up those rights. It is prohibited for a person to require you to sign this document if you have not been paid the payment amount set forth below. If you have not been paid, use a conditional release form.**

## SUB-SUBCONTRACTOR UNCONDITIONAL WAIVER AND RELEASE ON FINAL PAYMENT (TEXAS)

Project <u>CORE SCIENTIFIC DENTON DATA CENTER</u>
Job No. <u>2229</u>

The signer of this document has been paid in full for all labor, services, equipment, or materials furnished to the property or to <u>Humphrey & Associates, Inc.</u>

("Subcontractor") on the property <u>CORE SCIENTIFIC, INC.</u> located at <u>8151 JIM CHRISTAL ROAD, DENTON, TX 76207</u> to the following extent: <u>CORE SCIENTIFIC DENTON DATA CENTER</u>. The signer therefore waives and releases any mechanic's lien right, any right arising from a payment bond that complies with a state or federal statute, any common law payment bond right, any claim for payment, and any rights under any similar ordinance, rule, or statute related to claim or payment rights for persons in the signer's position.

The signer warrants that the signer has already paid or will use the funds received from this final payment to promptly pay in full all of the signer's laborers, subcontractors, materialmen and suppliers for all work, materials, equipment, or services provided for or to the above referenced project up to the date of this waiver and release.

_____
*Date*

*Sub-subcontractor Name*

By: _____

*Signature*

_____
*Title*

STATE OF TEXAS

COUNTY OF _____

Subscribed and sworn to before me this _____ day of _____, 20___.

_____        _____
My Commission Expires:                            Notary Public

Exhibit A

DocuSign Envelope ID: 81C0655F-9F96-49D9-9354-E77387297E5

**NOTICE: This document waives rights unconditionally and states that you have been paid for giving up those rights. It is prohibited for a person to require you to sign this document if you have not been paid the payment amount set forth below. If you have not been paid, use a conditional release form.**

## SUB-SUBCONTRACTOR UNCONDITIONAL WAIVER AND RELEASE ON PROGRESS PAYMENT (TEXAS)

Project <u>CORE SCIENTIFIC DENTON DATA CENTER</u>
Job No. <u>2229</u>

The signer of this document has been paid and has received a progress payment in the sum of $_____ for all labor, services, equipment, or materials furnished to the property or to <u>Humphrey & Associates, Inc.</u> ("Subcontractor") on the property of <u>CORE SCIENTIFIC, INC.</u> located at <u>8151 JIM CHRISTAL ROAD, DENTON, TX 76207</u> to the following extent: <u>CORE SCIENTIFIC DENTON DATA CENTER</u>.The signer therefore waives and releases any mechanic's lien right, any right arising from a payment bond that complies with a state or federal statute, any common law payment bond right, any claim for payment, and any rights under any similar ordinance, rule, or statute related to claim or payment rights for persons in the signer's position that the signer has on the above referenced project to the following extent:

This release covers a progress payment for all labor, services, equipment, or materials furnished to the property or to Subcontractor as indicated in the attached statement(s) or progress payment request(s), except for unpaid retention, pending modifications and changes, or other items furnished. A list of such pending modifications and changes or other items is attached here.

The signer warrants that the signer has already paid or will use the funds received from this progress payment to promptly pay in full all of the signer's laborers, subcontractors, materialmen, and suppliers for all work, materials, equipment, or services provided for or to the above referenced project in regard to the attached statement(s) or progress payment request(s).

_____
*Date*

_____
*Sub-subcontractor Name*

By: _____

_____
*Signature*

_____
*Title*

STATE OF TEXAS

COUNTY OF _____

Subscribed and sworn to before me this _____ day of _____, 20____.

_____
My Commission Expires:

_____
Notary Public

Exhibit A

## SUBCONTRACT FINALIZATION LETTER

[DATE]

<u>HUMPHREY & ASSOCIATES, INC.</u>
<u>1501 LUNA ROAD</u>
<u>CARROLLTON, TX 75006</u>
Attention:  [CONTACT NAME]

Re:      Subcontract Finalization
         CORE SCIENTIFIC DENTON DATA CENTER
         MCCARTHY PROJECT NO.: 2229
         <u>8151 JIM CHRISTAL ROAD</u>
         <u>DENTON, TX 76207</u>

Dear [CONTACT NAME],

We are in the process of finalizing your Subcontract for the above referenced Project. The first step toward accomplishing this is an agreement on the status of your Subcontract. Outlined below are our records of your Subcontract status. Final Payment will be made following receipt and approval of the below listed Subcontractor items, and receipt of payment by McCarthy Building Companies, Inc. (McCarthy) from the Owner.

Please, within ten (10) days of receipt of this Subcontract Finalization letter, review and approve by executing below, or if in disagreement, give an explanation and return to our Project office address.

Subcontract Status Summary:

        SUBCONTRACT NUMBER:
        Base Subcontract Amount:
        Subcontract Change Order(s) (  ) through (  )
        Total Subcontract Amount:
        Payments to Date:
        Backcharge(s)
        Final Payment Amount:

The undersigned Subcontractor hereby acknowledges and agrees that the above information is correct, and that upon receipt of the Final Payment Amount, Subcontractor has no remaining claims against the Owner or McCarthy in connection with the Subcontract or Project.

Subcontractor agrees to indemnify the Owner and McCarthy from any and all liability or claims by Subcontractor's Sub-Subcontractors and/or suppliers for any and all labor, materials, equipment, and services provided on behalf of Subcontractor in connection with the Project.

Very truly yours,

McCarthy Building Companies, Inc.

_____

**[PROJECT MANAGER NAME]**
Project Manager

ACKNOWLEDGED AND AGREED BY:
This ____ day of _____, 20__

By: _____

     Signature of Duly Authorized
Representative of Subcontractor
Print Name: _____

Print Title: _____

Exhibit A

DocuSign Envelope ID: 84C9655E-9F36-4029-9254-E77387207F95

# EXHIBIT 3A
## SAFETY ADDENDUM TO MCCARTHY SUBCONTRACT

**1. PRE-ENGAGEMENT REQUIREMENTS**

Prior to the start of work on the Project, Subcontractor shall:

1.1 Provide to McCarthy, and update as required, a list of all first-aid/CPR trained employees on the Project, including expiration dates.

1.2 Submit to McCarthy, and update as required, Subcontractor's Hazard Communication Program, Safety Data Sheets (SDS) and chemical inventory list for the Project.

1.3 Provide to McCarthy a copy of its job specific Injury and Illness prevention plan.

1.4 In the event Subcontractor employs non-English speaking tradespeople, Subcontractor shall have supervisory personnel (superintendent, general foreman or foremen) proficient in English and the specific foreign languages relative to these tradespeople.

**2. PROJECT AND SAFETY ORIENTATION**

2.1 All Subcontractor employees, on their first day assigned to this Project and annually thereafter, shall attend a general project and safety orientation conducted by McCarthy. This general project and safety orientation shall not relieve Subcontractor of its responsibility to also, at that same time, conduct specific orientation related to its own work.

**3. SUBSTANCE ABUSE TESTING**

3.1 Subcontractor shall have a written company policy for Drug and Alcohol Abuse. Subcontractor shall maintain and provide to McCarthy upon request evidence that Subcontractor employees have passed a drug and alcohol test performed by an organization licensed to perform such testing.

**4. INCIDENT NOTIFICATION**

4.1 McCarthy's On-Site Safety Representative or Jobsite Superintendent shall be notified immediately when an accident, near miss, or any other incident has occurred. An incident report is to be furnished to McCarthy no later than twenty-four (24) hours after the occurrence.

**5. CLOTHING AND PERSONAL PROTECTIVE EQUIPMENT**

5.1 Subcontractor is responsible for providing all required personal protective equipment for its employees.

5.2 Required personal protective equipment is required at all times, except in designated break areas or offices.

5.3 Unaltered hard hats/helmets are required. If Subcontractor has the need to use a face shield, welding or cutting shields or other such devices, then Subcontractor must provide and use the type which attach to hard hats/helmets so they may be worn 100% of the time.

5.4 Construction work shoes are required. Tennis shoes, sandals and dress shoes are not proper work shoes.

5.5 ANSI Z87 acceptable safety glasses with side protection shall be worn.

5.6 High visibility vests or shirts shall be worn.

5.7 In addition to eye protection referenced in 5.5, a full face-shield must be worn where a danger of flying debris or splashing exists.

5.8 Tank tops, low-cut shirts or sleeveless shirts are prohibited. Loose fitting garments, shirt tails or floppy sleeves must be contained.

Exhibit A

DocuSign Envelope ID: 81C9657E-0F36-40D2-9251-E77387220795

5.9    Long pants shall be worn.

5.10   OSHA acceptable hearing and respiratory equipment shall be worn as required.

5.11   All employees, when exposed to a fall of 6 foot or greater, shall wear a full body harness with appropriate lanyard(s). The full body harness lanyards and connection points shall be as provided under Federal, State and/or Local safety related laws or regulations. The lanyard(s) shall be securely attached to the employee's harness and appropriate connection point 100% of the time while the exposure exists. All vertical and horizontal lifelines used must be commercially manufactured or designed by a licensed engineer and installed per the manufacturer's or designer's instructions.

5.12   All personnel are required to tie off when operating or working from an elevated work platform of any kind. All elevated work platforms must be equipped with manufacturer authorized anchor points. Boom type mobile elevated work platforms shall be equipped with an operational contact protection feature.

5.13   Subcontractor shall have a glove use policy for its employees that addresses the specific hazards and protection factors related to their tasks, a copy of which must be provided to McCarthy when requested. Subcontractor employees will wear gloves 100% of the time.

## 6. FLOOR OPENINGS

6.1    Each subcontractor shall be responsible for covering floor openings it has created for its use. Openings larger than 2 inches must be protected so materials cannot fall to levels below.

A.   For openings with a maximum horizonal dimension of less than 12 inches, ¾" plywood covers may be used. Covers must be secured from displacement, orange in color, and capable of withstanding the maximum intended load. Plywood shall not be used to cover holes greater than 12" in the maximum horizontal dimension.

B.   For openings smaller than 6.25 square feet with one dimension of 2.5 feet or less, metal grating may be used. The grating should be at least 7#/sf. Covers must be secured from displacement, orange in color, and capable of withstanding the maximum intended load.

C.   For openings larger than those noted above or as an option for any size opening, barricades with standard guardrails or decking must be used with the following considerations:

1.   If the openings are to be used for access or to pass material through, they should be barricaded with a handrail, complete with gates, removable guardrails or chains.
2.   All openings used for access or material handling shall be approved by McCarthy and locations disseminated to all individuals working on the Project Site, including other subcontractors.
3.   If an opening is decked, aluminum joists or equivalent shall be used. The decking must be solid with no openings, and no material storage shall be permitted on the deck surface. Personnel access should be under special circumstances.

## 7. GENERAL

7.1    All subcontractors will perform housekeeping in accordance with McCarthy requirements and Federal, State and/or Local safety related laws or regulations and abide by the key components of McCarthy's "Keep It Clean. Keep it Safe." program which include:

A.   No trash hits the ground.
B.   Just in time deliveries.
C.   Everything on wheels, dunnage, pallets, or methods to keep materials stored off the ground.
D.   Cords, hoses, etc. will be kept out of walkways and elevated off the ground.
E.   Clear walkways and access.
F.   Organized workspaces.
G.   Work areas will be cleaned throughout the day and at the end of the shift and left in a clean condition for other trades.

Exhibit A

7.2   All subcontractors, including lower tier subcontractors and suppliers must abide by all safety requirements of Subcontractor and McCarthy and all Federal, State and/or Local safety related laws or regulations, including, but not limited to local and/or state health orders related to the prevention of the spread of coronavirus, face coverings, social distancing, home isolation and self-quarantine requirements, and submission of a COVID-19 Site-Specific Safety Plan, inclusive of information on employee training and preventing the spread of coronavirus (SARS-CoV-2), the virus that causes COVID-19.

7.3   Subcontractor is responsible for providing work task lighting for its employees and lower tier subcontractors.

7.4   The use of tobacco products shall only be allowed in portions of the Project designated by McCarthy.

7.5   No personal entertainment devices, such as iPods, smartphones, Bluetooth speakers, radios, or headphones are allowed.

7.6   Subcontractor shall designate an on-site safety representative, who shall perform a weekly job site safety inspection, a copy of which must be provided to McCarthy when requested.

7.7   Subcontractor shall conduct a weekly safety meeting, and shall provide to McCarthy, when requested, a copy of the meeting minutes.

7.8   Subcontractor shall exclusively use podium/platform type ladders. Extension ladders and traditional step ladders used to perform specific work tasks are not allowed without written approval from McCarthy.

7.9   Subcontractor shall only use operators that are currently certified for the type of crane in use. The method of certification must meet the requirements published in OSHA 29CFR 1926.1427. Subcontractor's supervision shall oversee the unloading, loading, assembly, disassembly, rigging, operation and maintenance of all cranes they bring on site, along with the appropriate technical assistance from the lessor or manufacturer of the crane.  All subcontractor cranes whether leased, rented or owned brought on site shall be equipped with a working, Positive type, Anti-Two Block device (ATBD).  If there are multiple load lines, they all must be protected with an ATBD.

Subcontractors that are hoisting material will provide qualified riggers and signal persons that will be identified by name, along with any documentation, before their work starts.  A list of such names shall be provided to McCarthy. This identification also applies to replacement employees.

If Subcontractor will be signaling with radios to a crane, Subcontractor shall provide its own radios approved by and compatible with the radios McCarthy utilizes.  This compatibility requirement may not be applicable when Subcontractor provides its own crane, at McCarthy's discretion.

Subcontractors shall use a Crane Lift Calculation Form, similar in design and content as that of McCarthy's standard, for any lifts that are anticipated to be in excess of 75% of a crane's rated capacity at a given radius, boom angle, and boom length. It will also be required for all hoisting without the use of outriggers, using the "on-rubber" load chart. It will also be required for all hoisting operations considered to be "pick and carry". For repetitive lifts (concrete buckets, forms, precast, etc.), the form can be used to establish the range of lifts/operating radius.

## 8.   DISCIPLINARY POLICY

8.1   The Subcontractor agrees to enforce compliance with the following disciplinary actions as a result of a written Safety Warning for committing a safety violation:

First Offense:  Employee to be given written Safety Warning and will be required to repeat Project Safety Orientation.

Second Offense:  If within a 12 month period, the Employee to be suspended two work days from any McCarthy Projects.  Suspension to begin upon issuance of second written Safety

Warning, and will include two full workdays; excluding any part of actual day Warning is issued and will be required to repeat Project Safety Orientation.

Third Offense: If within a 12 month period, the employee to be prohibited from working on any McCarthy Projects for one year.

This Program is the minimum disciplinary action and not intended to take the place of Subcontractor's Disciplinary Policy. Imminent danger type safety violations shall result in immediate suspension or permanent removal from the Project.

## 9. TASK HAZARD ANALYSIS (THA)

9.1    Each separate crew working under the direction of the Subcontractor or its lower tier sub-subcontractor, shall develop and complete a Task Hazard Analysis (THA) before each task is performed but at a minimum daily. The THA is a task driven document to ensure that every operation receives safety planning prior to it being started. THA's are to be completed by a supervisor familiar with the task to be performed. The supervisor and crew will break down the task into steps, identify the hazards associated with these type, and develop ways to eliminate, avoid, or protect against potential accidents. The completed THA's are to be kept for future reference. Subcontractor to provide a copy of the THA to McCarthy when requested.

Exhibit A

DocuSign Envelope ID: 91C955FE-9526-492D-9254-E773872937C5

# EXHIBIT 4

## PERFORMANCE BOND AND LABOR AND MATERIAL PAYMENT BOND FORMS

A.      Subcontractor Performance Bond

B.      Subcontractor Labor and Material Payment Bond

C.      Increase Rider to Payment and Performance Bonds.

2229-067                                                    Bond #_____

## SUBCONTRACT PERFORMANCE BOND
## MCCARTHY OBLIGEE

KNOW ALL MEN BY THESE PRESENTS: That **Humphrey & Associates, Inc., 1501 Luna Road, Carrollton, TX 75006**, as Principal, hereinafter called Principal, and _____

_____ (here insert the name and address of Surety) as Surety, hereinafter called Surety, are held and firmly bound unto McCarthy as Obligee, hereinafter called Obligee, in the amount of **THIRTY MILLION, TWENTY-SEVEN THOUSAND, FIVE HUNDRED NINETY-FIVE AND 00/100** DOLLARS (**$30,027,595.00**), for the payment whereof Principal and Surety bind themselves for the performance of the Subcontract set forth below, their heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

WHEREAS, Principal has by written agreement dated **24th day of December 2021**, entered into a Subcontract with Obligee for **CORE SCIENTIFIC DENTON DATA CENTER, 8151 JIM CHRISTAL ROAD, DENTON, TX 76207**, in accordance with Drawings and Specifications prepared by MJDII ARCHITECTS, INC., 16775 ADDISON ROAD, SUITE 310, ADDISON, TX 75001, which Subcontract is by reference made a part hereof, and is hereinafter referred to as the Subcontract.

NOW, THEREFORE, the parties agree as follows:

1.      EFFECT OF OBLIGATION. If the Principal performs the Subcontract, then this bond shall be null and void; otherwise it shall remain in full force and effect. Provided further, the Surety's total obligation shall not exceed the penal amount of this bond.

2.      ALTERATION NOTICE WAIVER. The Surety hereby waives notice of any change, alteration or extension of the Subcontract, including but not limited to the Subcontract price and/or time, made by the Obligee.

3.      PRINCIPAL DEFAULT. Whenever the Principal shall be, and is declared by the Obligee to be in default under the Subcontract, with the Obligee having performed its obligations in the Subcontract, the Surety after receipt of written notice of the default from the Obligee may promptly remedy the default, or shall promptly:

         3.1      COMPLETE SUBCONTRACT. Complete the Subcontract in accordance with its terms and conditions; or

         3.2      OBTAIN NEW CONTRACTORS. Obtain a bid or bids formally, informally or negotiated for completing the Subcontract in accordance with its terms and conditions, and upon determination by the Surety of the lowest responsible bidder acceptable to the Obligee, or negotiated proposal, or, if the Obligee elects, upon determination by the Obligee and the Surety jointly of the lowest responsible bidder, or negotiated proposal, arrange for a contract between such party and the Obligee; or

         3.3      PAY OBLIGEE. Determine the total amount for which it is liable to the Obligee and pay the Obligee that amount as soon as practicable. This obligation shall not negate or limit the Surety's obligation to make monthly payments to the Obligee as provided below in this Bond prior to paying such total amount.

DO NOT USE REQUIRED FORMS SHIPPING FOR YOUR USE

If Surety elects to proceed under 3.2 or until such time as Surety proceeds under either 3.1 or 3.3, the Surety shall timely make available each month as work progresses sufficient funds to pay the cost of completion. The final amount of such funds shall be reduced by the balance of the Subcontract Amount received by Obligee and then due Principal per the Subcontract. The cost of completion includes the responsibilities of the Principal for the entire cost as defined in the Subcontract including, but not limited to, those relating to the correction of defective work and completion of the Subcontract, the Obligee's legal and design professional costs resulting directly from the Principal's default and liquidated and actual damages. The term "balance of the Subcontract Amount", as used in this paragraph, shall mean the total amount payable by the Obligee to the Principal under the Subcontract and any amendments to it, less the amount properly paid by the Obligee to the Principal per the Subcontract.

4.      RIGHT OF ACTION. No right of action shall accrue on this bond to or for the use of any person or entity other than the Obligee named herein, its heirs, executors, administrators, assigns or successors.

5.      ATTORNEY'S FEES AND COSTS. In the event Obligee brings legal action to enforce Surety's obligations under this Bond, the prevailing party in such action shall be entitled to recover its attorney's fees together with the costs of suit.

Signed and sealed this _____ day of _____,_____ A.D.


IN THE PRESENCE OF:



_____
(Witness or Attest)


**Humphrey & Associates, Inc.**_____      (Seal)
Subcontractor (Principal)

By:_____


Printed:_____


Title:_____


_____
(Here insert name of Surety)

By:_____
Attorney-in-fact Signature


_____      (Seal)
Attorney-in-fact Printed Name

DO NOT USE - REQUIRED FORMS SHIPPING FOR YOUR USE

2229-067                                                                    Bond #_____

## SUBCONTRACT LABOR AND MATERIAL PAYMENT BOND
## MCCARTHY OBLIGEE

KNOW ALL MEN BY THESE PRESENTS:  That That **Humphrey & Associates, Inc., 1501 Luna Road, Carrollton, TX 75006**, as Principal, hereinafter called Principal, and _____ _____ (here insert the name, state of incorporation and home office city of Surety) as Surety, hereinafter called Surety, are held and firmly bound unto McCarthy as Obligee, hereinafter called Obligee, for the use and benefit of claimants as herein-below defined in the amount of **THIRTY MILLION, TWENTY-SEVEN THOUSAND, FIVE HUNDRED NINETY-FIVE AND 00/100** DOLLARS (**$30,027,595.00**), for the payment whereof Principal and Surety bind themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

WHEREAS, Principal has by written agreement dated **24th day of December 2021**, entered into a Subcontract with Obligee for **CORE SCIENTIFIC DENTON DATA CENTER, 8151 JIM CHRISTAL ROAD, DENTON, TX 76207**, in accordance with Drawings and Specifications prepared by **MJDII ARCHITECTS, INC., 16775 ADDISON ROAD, SUITE 310, ADDISON, TX 75001**, which Contract is by reference made a part hereof, and is hereinafter referred to as the Subcontract.

If the Principal shall promptly make payment directly or indirectly to all Claimants as defined in this bond, for all labor, material and equipment used in the performance of the Subcontract, then this bond shall be null and void; otherwise it shall remain in full force and effect, subject, however, to the following conditions:

1.      TIME FOR CLAIM.  The Principal and Surety hereby jointly and severally agree with the Obligee that every Claimant, who has not been paid in full before the expiration of a period of ninety (90) days after the date on which the last of such Claimant's work or labor was done or performed, or materials were furnished by such Claimant, for which claim is made, may have a right of action on this bond.  The Obligee shall not be liable for the payment of any costs or expenses including attorneys' fees which the Obligee may incur in connection with its defense of any such right of action.

2.      RIGHT OF ACTION.  No suit or action shall be commenced on this bond by any Claimant:

2.1     Unless Claimant, other than one having a direct contract with the Principal, shall have given written notice to the Surety named above and either Principal or Obligee, within ninety (90) days after such Claimant did or performed the last of the work or labor, or furnished the last of the materials for which said claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the materials were furnished, or for whom the work or labor was done or performed.  Such notice shall be served by mailing the same by registered mail or certified mail, postage prepaid, in an envelope addressed to the Surety and either Principal or Obligee, at any place within the United States where an office is regularly maintained for the transaction of business, or served in any manner in which legal process may be served in the state in which the aforesaid Project is located, however, such service need not be made by a public officer.

2.2     After the expiration of one (1) year from the date (1) on which the Claimant gave the notice required by Subparagraph 2.1, or (2) on which the last labor or service was performed by anyone or the last materials or equipment were furnished by anyone on the Project, whichever first occurs. Any limitation embodied in this bond, which is prohibited by any law controlling the Project, shall

be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

2.3     Other than in a state court of competent jurisdiction in and for the county or other political subdivision of the state in which the Project, or any part thereof, is situated, or in the United States District Court for the district in which the Project, or any part thereof, is situated, and not elsewhere.

3.     CLAIMANT.  A Claimant is defined as an individual or entity having a direct contract with the Principal to furnish labor, materials or equipment for use in the performance of the Subcontract or any individual or entity having valid lien rights which may be asserted in the jurisdiction where the Project is located.  The intent of this bond shall be to include without limitation in the terms "labor, materials or equipment" that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental equipment used in the Subcontract, architectural and engineering services required for performance of the work of the Principal, and all other items for which a mechanic's lien may be asserted in the jurisdiction where the labor, materials or equipment were furnished.

4.     AMOUNT OF BOND.  The amount of this bond shall be reduced by and to the extent of any payment or payments made in good faith by the Surety.  In no event shall the Surety's total obligation exceed the penal amount of this bond.

5.     ALTERATION NOTICE WAIVER.  The Surety waives notice of any alteration or extension of the Subcontract, including but not limited to the Subcontract price and/or time, made by the Obligee.  This waiver shall not apply to the time for suit provided by Paragraph 2 hereunder.

Signed and sealed this _____ day of _____,_____ A.D.

IN THE PRESENCE OF:

_____
(Witness or Attest)

**Humphrey & Associates, Inc.**     (Seal)
Subcontractor (Principal)

By:_____

Printed:_____

Title:_____

_____
(Here insert name of Surety)

By:_____
Attorney-in-fact Signature

_____     (Seal)
Attorney-in-fact Printed Name

2229-067

## INCREASE RIDER TO PAYMENT AND PERFORMANCE BONDS


To be attached to and part of Bond Number _____ effective _____

_____ issued by the _____

_____ in the amount of **THIRTY MILLION, TWENTY-SEVEN THOUSAND, FIVE HUNDRED**

**NINETY-FIVE AND 00/100** Dollars (**$30,027,595.00**), on behalf of That **Humphrey & Associates, Inc.,**

**1501 Luna Road, Carrollton, TX 75006**, as Principal in favor of **McCarthy Building Companies, Inc.**,

as Obligee(s).


Now therefor, it is agreed that:


We, _____, Surety on the
above bond, hereby stipulate and agree that from and after the effective date of this Stipulation,
the Penalty of said Bond shall be increased

FROM:

_____     Dollars ($_____)

TO:

_____     Dollars ($_____)

It is further understood and agreed that all other terms and conditions of this bond shall remain unchanged.

This rider is to be effective _____.

Signed, Sealed and Dated this _____.


**Humphrey & Associates, Inc.**_____
(Principal)

By: _____


_____
(Surety)

By: _____
Attorney-in-Fact


**Exhibit A**

# EXHIBIT 6
### INSURANCE EXHIBIT

**1. INSURANCE REQUIREMENTS.** Subcontractor shall maintain all insurance required by this Insurance Exhibit, except where specific requirements are set forth by a project specific Owner Controlled Insurance Program (OCIP). When specific requirements are set forth by a project specific OCIP, the higher limits and coverage requirements of this Insurance Exhibit or such OCIP specific requirements shall apply. In the event the Project is covered by an OCIP, the OCIP Manual is hereby incorporated by reference. All insurance requirements shall flow down to subcontractors and suppliers of any tier. Flow down of these requirements to subcontractors and suppliers of any tier does not relieve Subcontractor of its obligation to provide the insurance outlined herein.

Subcontractor's General Liability and Workers Compensation policy Wrap-Up Exclusions must not exclude coverage for Work or operations that are not covered by the OCIP policies.

**INSURANCE SCHEDULE.** Subcontractor shall maintain the required insurance coverages and limits outlined in the schedule below.

| REQUIRED | INSURANCE COVERAGE | MINIMUM LIMITS |
|---|---|---|
| X | Workers' Compensation / Employer's Liability | Statutory Limits / $1,000,000 Each Accident $1,000,000 Disease Each Employee $1,000,000 Disease Policy Limit |
| N/A | U.S. Longshore and Harborworkers (USL&H) Act | Per Federal Act |
| N/A | Jones Act | Per Federal Act |
| N/A | Commercial General Liability ($1M/$2M) | $1,000,000 Each Occurrence $1,000,000 Personal & Advertising Injury $2,000,000 General Aggregate $2,000,000 Products & Completed Operations Aggregate |
| X | Commercial General Liability ($5M/$5M) | $5,000,000 Each Occurrence $5,000,000 Personal & Advertising Injury $5,000,000 General Aggregate $5,000,000 Products & Completed Operations Aggregate |
| X | Automobile Liability | $1,000,000 Combined Single Limit |
| X | Professional Liability (Standard) | $2,000,000 Each Claim $2,000,000 Annual Aggregate |
| N/A | Professional Liability (Design-Assist / Design-Build) | Subcontracts <$50M: $3,000,000 Each Claim $3,000,000 Annual Aggregate <br><br> Subcontracts $50M - $100M: $5,000,000 Each Claim $5,000,000 Annual Aggregate <br><br> Subcontracts $100M +: $10,000,000 Each Claim $10,000,000 Annual Aggregate |
| N/A | Pollution Liability (General Subcontractors) | $2,000,000 Each Occurrence $2,000,000 Annual Aggregate |
| N/A | Pollution Liability (Remediation Subcontractors) | $3,000,000 Each Occurrence $3,000,000 Annual Aggregate |
| N/A | Protection and Indemnity & Vessel Pollution | $5,000,000 |
| N/A | Aviation Liability (Aerial Photography) | $2,000,000 Per Occurrence |
| N/A | Aviation Liability (Aircraft used in Construction) | $10,000,000 Per Occurrence |
| N/A | UAV / UAS / Drone | $2,000,000 Per Occurrence |

Exhibit A

**1.1    Certificate of Insurance and AM Best Rating Requirement.**  Prior to commencement of Work by Subcontractor, a Certificate of Insurance and required endorsements must be provided to and approved by McCarthy. Certificates of Insurance and required endorsements shall continue to be provided throughout the duration of the Project and the duration of the Completed Operations period as required herein.  No payments will be payable or due to Subcontractor until the Certificate of Insurance and required endorsements have been received and approved by McCarthy.  All insurance policies required shall contain a provision that coverage will not be cancelled until at least thirty (30) days' prior written notice has been given to McCarthy. Regardless of policy provisions, Subcontractor is responsible for providing McCarthy 30 days written notice of cancellation or non-renewal. All insurance carriers must have a financial rating of at least A- VII as defined by A.M. Best Company.

**1.2    Deductibles or Self-Insured Retentions (SIRs).**  Insurance policies shall not include SIRs in excess of $250,000 unless approved in writing by McCarthy.  McCarthy reserves the right to request documentation which supports the Subcontractor's ability to fund applicable SIRs.  Any applicable deductible or SIR associated with the Subcontractor's insurance policies shall be the sole responsibility of the Subcontractor and are to be evidenced on the Certificate of Insurance.  Failure to satisfy any deductible or SIR does not relieve Subcontractor from its obligations and responsibilities with this Agreement.

**1.3    Additional Insured and Primary and Non-Contributory.**  All insurance policies, other than Workers' Compensation, Employer's Liability, and Professional Liability, shall contain endorsements naming McCarthy, the Owner and others as required by the Contract Documents (hereafter referred to as the "Additional Insureds") as additional insureds.  Specific additional insured requirements may be noted in the coverage sections below.  Such insurance afforded to the Additional Insureds shall be primary and non-contributory to any other insurance available to the Additional Insureds.  Copies of the additional insured endorsements and primary and non-contributory endorsements shall be submitted with the Certificate of Insurance.

**1.4    Waiver of Subrogation.**  All insurance policies shall contain endorsements waiving all rights of subrogation in favor of McCarthy, the Owner and others as required by the Contract Documents, where allowable by law.  Copies of the waiver of subrogation endorsements must be provided with the Certificate of Insurance.

**1.5    Umbrella / Follow-form Excess.**  Insurance may be arranged under a single policy for the full limits required or by a combination of underlying policies with the balance provided by an Excess or Umbrella Liability policy.  If Excess or Umbrella Policies are used, coverage must be on a follow-form basis.

**1.6    Continuation of Coverage.**  All insurance policies, other than Pollution and Professional Liability, shall be maintained for the duration of the applicable statute of repose and any applicable statute of limitations in the state in which the Project is located.  Pollution and Professional Liability policies shall be maintained for five (5) years after substantial completion of the Project.

**1.7    Responsibility for Builders Risk Deductible.**  McCarthy and Subcontractor waive all rights and claims against each other and against the Owner, all subcontractors and others as required in the Contract Documents for damages to the extent reimbursed by Builder's Risk except such rights as they may have to the proceeds of such insurance and responsibility for the cost of deductibles, which Subcontractor will pay when responsible for such damage.

**1.8    Subcontractor Property, Tools, Trailers and Equipment.**  Subcontractor shall be responsible for providing insurance for all its property, tools, trailers and equipment used on the site or away from the site.

**1.9    Property or Equipment Floater Policy for Pre-purchased Equipment & Materials.** When equipment and materials are purchased prior to commencement of construction of the Project when Builders Risk insurance is not in place, Subcontractor shall bear risk of loss for such equipment and materials while in Subcontractor's care, custody and control. Subcontractor is responsible for insuring the full value of any pre-purchased equipment and materials while stored off the jobsite and while in the course of transit. Subcontractor agrees to name McCarthy, the Owner and others as required by the Contract Documents as additional insureds and loss payees.

**2.    WORKERS COMPENSATION / EMPLOYERS LIABILITY.**  Subcontractor shall procure and maintain in force Workers Compensation/Employers Liability insurance as required by state statutes where the work is being performed. All Subcontractor employees shall be covered under such policies, including employees who are sole proprietors, shareholders, corporate officers, members or partners, and whether or not required by applicable law.

**2.1    U.S. Longshore and Harborworkers (USL&H) Act.**  If required by the Insurance Schedule in Section 1 of this Exhibit 6, or when required by Federal law, U.S. Longshore and Harborworkers (USL&H) Act coverage endorsement shall be required as part of the Subcontractor's Worker's Compensation Insurance.

**2.2      Jones Act.**  If required by the Insurance Schedule in Section 1 of this Exhibit 6, or when required by Federal law, Employers Liability Coverage must be endorsed to include Jones Act with marine and voluntary compensation including transportation, maintenance, wages and cure.

**2.3      Additional Requirements when Professional Employer Organization (PEO), Employee Leasing Company, Temporary Employment or Casual Labor Agency is used.**  When employees of the Subcontractor are provided through a Professional Employer Organization (PEO) or other type of employee leasing company, temporary employment or casual labor agency, such PEO, leasing company, temporary employment or casual labor agency, shall provide a Certificate of Insurance evidencing their Commercial General Liability coverage and Workers Compensation, Employers Liability coverages. Such coverage will include, and Certificate of Insurance will so state:

(a)      Subcontractor will be listed as a Named Insured on the Workers Compensation, Employers Liability policy;

(b)      The PEO, leasing company, temporary employment or casual labor agency and the Workers Compensation, Employers Liability insurance carrier waive all rights of subrogation against the Additional Insureds;

(c)      The Commercial General Liability Policy of the PEO, leasing company, temporary employment or casual labor agency shall name McCarthy, Owner and others as required by the Contract Documents as additional insureds on a primary and non-contributory basis and such policy will contain waivers of subrogation in favor of such additional insureds.

**3.      COMMERCIAL GENERAL LIABILITY.**  Subcontractor shall procure and maintain in force Commercial General Liability insurance. Such Commercial General Liability Coverage shall be provided on an occurrence form basis using an ISO CG 00 01 or equivalent, insuring agreement and shall include contractual liability insurance as applicable to Subcontractor's obligations under Paragraph 5.1 of this Agreement.  The General Liability general aggregate limit shall apply on a per project basis. Coverage shall also include the perils of explosion, collapse, and underground liability (XCU); Independent Contractor's Coverage; Personal Injury with contractual liability exclusion deleted and including coverage for suits brought by employees of Subcontractor; Broad Form Property Damage including Completed Operations; and Products/Completed Operations insurance.

**3.1      Additional Insured.**  The Commercial General Liability Policy additional insured coverage shall be provided for ongoing and completed operations on the combination of ISO Endorsement Forms CG 20 10 04 13 and CG 20 37 04 13 or equivalent as determined and approved by McCarthy, and a copy of such endorsement shall be attached to the required Certificate of Insurance.  Additional Insured Endorsements that limit coverage to less than what is required by this Subcontract will not be accepted unless otherwise limited by applicable law. Subcontractor will provide additional insured coverage to the fullest extent permitted by applicable law for the duration of the applicable statute of repose and any applicable statute of limitations in the state in which the Project is located.

**4.      COMMERCIAL AUTOMOBILE LIABILITY.**  Subcontractor shall procure and maintain in force Commercial Automobile Liability insurance.  Such Automobile Liability insurance must include coverage equivalent to Symbol 1 (Any Auto) to include all owned, non-owned and hired automobiles.  If Subcontractor's operations include the transportation of any hazardous material, Automobile Liability policy shall contain coverage for transportation of hazardous materials by endorsement CA 99 48 or its equivalent.  The Automobile policy will attach a MCS-90 endorsement.

**5.      PROFESSIONAL LIABILITY.**  If required by the Insurance Schedule in Section 1 of this Exhibit 6, Subcontractor shall procure and maintain Professional Liability Insurance. Such Professional Liability Policy shall cover all professional services and operations to complete Subcontractor's Scope of Work.  Flow down of these requirements to sub tiers does not relieve Subcontractor of its obligation to provide the insurance.

**5.1      Retroactive Date / Extended Reporting Period.**  Such policy shall provide, and the Certificate of Insurance will state, that the retroactive date coincides with or precedes Subcontractor's commencement of Work under this Agreement, including any design or testing services related to the Project.  If insurance is terminated for any reason, Subcontractor shall purchase an extended reporting provision consistent with the requirement set forth in 1.6 of this Exhibit 6.  If Subcontractor is unable to purchase an extended reporting provision that complies with the requirements in 1.6 of this Exhibit 6, then Subcontractor's replacement professional liability insurance shall not contain a retroactive date that post-dates the commencement of Subcontractor's Work.

**5.2      Indemnity.**  To the fullest extent permitted by law, Subcontractor shall indemnify and defend McCarthy from all claims and losses arising from professional services including negligent acts, errors or omissions of Subcontractor in the performance, nonperformance or failure to render professional services, including but not limited to design, design assist, inherent design, preconstruction services, design coordination or testing responsibilities under this Agreement. In addition, Subcontractor shall comply with the requirements of Paragraphs 5.1 of this Agreement.

**6.      CONTRACTORS POLLUTION LIABILITY.**  If required by the Insurance Schedule in Section 1 of this Exhibit 6, Subcontractor shall procure and maintain in force, Contractors Pollution Liability insurance, covering all on-going

and completed operations performed by Subcontractor. Additional Insured endorsements covering ongoing and completed operations shall be provided in favor of the Additional Insureds for five (5) years after substantial completion of the Project. Such insurance shall provide coverage for bodily injury including death, sickness, disease, mental anguish or shock sustained by any person; property damage including physical injury to or destruction of property; clean-up costs; defense costs including cost, charges and expenses incurred in the investigation and adjustment of claims for compensatory damages. Such policy shall include coverage for microbial matter, mold, fungi, legionella, bacterial matter and the like. If Subcontractor or its sub-subcontractors of any tier haul hazardous waste, the Pollution Liability policy shall contain coverage for transportation of hazardous materials or endorsement CA 99 48 will be attached to the Automobile policy.

**6.1** **Remediation Contractor Requirements.** If Subcontractor's Work includes remediating hazardous materials, including but not limited to asbestos containing materials, silica, lead, PCBs, contaminated soil, mold/fungi, or other items identified as hazardous materials by federal, state, or local laws, Subcontractors Contractors Pollution Liability shall extend to include coverage for named and unnamed offsite disposal locations.

**6.2** **Retroactive Date / Extended Reporting Period.** If Subcontractor's Contractors Pollution Liability coverage is written on a Claims Made basis, the Certificate of Insurance will clearly so state. Such policy shall provide, and the Certificate of Insurance will list, that the retroactive date coincides with or precedes Subcontractors commencement of work under this Agreement. If insurance is terminated for any reason, Subcontractor shall purchase an extended reporting provision consistent with the requirement set forth in 1.6 of this Exhibit 6. If Subcontractor is unable to purchase an extended reporting provision that complies with the requirements in 1.6 of this Exhibit 6, then Subcontractor's replacement pollution liability insurance shall not contain a retroactive date that post-dates the commencement of Subcontractor's Work.

**7.** **PROTECTION & INDEMNITY AND VESSEL POLLUTION (REQUIRED WHEN VESSELS, BARGES AND WATERCRAFT ARE USED TO PERFORM WORK)** If required by the Insurance Schedule in Section 1 of this Exhibit 6, Subcontractor shall procure and maintain in force Protection and Indemnity Liability covering all vessels used subject to not less than the terms and conditions of the P&I SP-23 (Revised 1/56) form of policy or its equivalent including Collision and Tower's Liability, Crew Liability (Jones Act), Contractual Liability and Pollution Buy-Back Endorsement.

**Required Protection & Indemnity and Vessel Pollution Liability Limits:**
$5,000,000 Any One Accident, Vessel Pollution Liability subject to not less than the full limits and conditions available through the Water Quality Insurance Syndicate or its equivalent with not less than the following limits:
$5,000,000 OPA/90 (Oil Pollution Act)
$5,000,000 CERCLA (Comprehensive Environmental Response, Compensation and Liability Act)

**7.1** **Hull and Machinery.** Subcontractor shall procure and maintain in force Hull and Machinery Insurance for all its vessels and equipment used on the site or away from the site.

**7.2** **Schedule of Covered Vessels.** Schedule of all vessels, including Hull and Machinery, if required, and, any equipment on board, for each, must be attached to certificate of insurance.

**8.** **AVIATION LIABILITY**. If required by the Insurance Schedule in Section 1 of this Exhibit 6, Subcontractor shall procure and maintain in force, Aviation Liability insurance covering all aircraft used in connection with the Project. Such insurance shall include coverage for bodily injury and property damage. All such insurance shall contain a breach of warranty endorsement in favor McCarthy.

**9.** **SMALL UNMANNED AIRCRAFT VEHICLE / SMALL UNMANNED AIRCRAFT SYSTEM / DRONE COVERAGE**. If required by the Insurance Schedule in Section 1 of this Exhibit 6, or when Subcontractor's operations include the use of a Small Unmanned Aircraft Vehicle (sUAV), Small Unmanned Aircraft System (sUAS) or Drone, Subcontractor shall provide Owned/Non-Owned Aviation Liability Coverage, or equivalent policy covering the use of sUAV's, sUAS's or Drones, with minimum limits of $2,000,000 per occurrence. The policy shall include coverage for Personal and Advertising Injury. If the sUAV, sUAS or Drone will be operated indoors the policy shall not exclude or restrict coverage for indoor use. Subcontractor shall only operate such sUAV, sUAS or Drone after receiving prior written approval from McCarthy, including approval of Subcontractor's written safety plan related to the operation of the sUAV, sUAS or Drone. Subcontractor shall comply with all McCarthy requirements regarding the operation of the sUAV, sUAS or Drone, including all FAA regulations pertaining to the commercial operation of sUAV's, sUAS's or Drones.

DocuSign Envelope ID: 91696F55-8526-423D-9854-E77382207CE5