IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **CORE SCIENTIFIC, INC.,** *et al.,* | § | **Case No. 22-90341 (DRJ)** |
| | § | |
| | § | **(Jointly Administered)** |
| **Debtors.**[1] | § | |
| | § | |

**DEBTORS' OBJECTION TO PROOF OF CLAIM
NOS. 19 AND 120 FILED BY BRYCE JOHNSON**

> **THIS IS AN OBJECTION TO YOUR CLAIM.  THIS OBJECTION ASKS THE COURT TO DISALLOW THE CLAIM THAT YOU FILED IN THIS BANKRUPTCY CASE. YOU SHOULD IMMEDIATELY CONTACT THE OBJECTING PARTY TO RESOLVE THE DISPUTE.  IF YOU DO NOT FILE A RESPONSE WITHIN 30 DAYS AFTER THE OBJECTION WAS SERVED ON YOU, YOUR CLAIM MAY BE DISALLOWED WITHOUT A HEARING.**

Core Scientific, Inc. ("**Core**")[2] and its debtor affiliates in the above-captioned

chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"), represent as

follows in support of this claim objection (the "**Objection**"), and request entry of an order,

substantially in the form attached hereto as **Exhibit A** ("the **Proposed Order**") disallowing

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions, VII, LLC (3198).  The Debtors' corporate headquarters and service address is 210 Barton Springs Road, Suite 300, Austin, Texas 78704.

[2] As discussed in the Declaration of Michael Bros in Support of the Debtors' Chapter 11 Petitions and First Day Relief, *In re Core Scientific, Inc.*, No. 22-90341-11 (Bankr. S.D. Tex., Dec. 21, 2022) at ¶31, Dkt. No. 5, Core Scientific, Inc. changed its name to Core Scientific Operating Company in January 2022. Therefore, any claims against Core Scientific, Inc., are more properly claims against Core Scientific Operating Company.  Given that the Proofs of Claim are identical, this Objection applies equally to both, and references to "Core" shall include Core Scientific Operating Company and Core Scientific, Inc. for purposes of this Objection.

Proof of Claim Nos. 19 and 120 filed by Bryce Johnson ("**Johnson**", and together with the Debtors, the "**Parties**") against Core:

<u>**Preliminary Statement**</u>

1.      Bryce Johnson, Core's former President, CEO, and Chairman of its Board of Directors, seeks to recover from a hypothetical sale of Core stock that Mr. Johnson never acquired because he failed to comply with the terms of an RSU Agreement he executed when he separated from the Company in 2018.  While Mr. Johnson apparently regrets not taking the actions required to acquire the Core stock, neither Core nor this Court are obligated to assist him in obtaining what would amount to a windfall.  As explained below, under the terms of the RSU Agreement, the stock would be issued to Mr. Johnson on the second anniversary of the RSU Agreement if he paid the required withholding taxes at that time.  Mr. Johnson's payment of the applicable withholding taxes was an express condition to the receipt of the Core stock.  If Mr. Johnson failed to pay the tax withholdings within thirty days of the contract's settlement date, he would forfeit the stock award.  Mr. Johnson never took steps to acquire the shares and thus also never paid Core the required tax withholdings by the RSU Agreement's deadline of November 1, 2020.  Presumably, Mr. Johnson did not want to incur the tax liability that would come with the issuance of Core shares to him because no trading market existed for such shares and it was unclear whether there would be any meaningful realization with respect to the value of the Core shares. That was his choice, and he is bound by it.

2.      It appears that Mr. Johnson had a change of heart several months later, after it became clear that Core was exploring a SPAC transaction, which would generate significant liquidity at some point and would have made acquiring the Core shares worthwhile.  He reached out to Core in May 2021 (seven months after the Settlement Date (defined below) and six months

2

after the deadline for paying the taxes) seeking to settle his RSUs and receive the Core shares despite the fact that he had already forfeited his RSUs.

3.       Even though Mr. Johnson had forfeited his RSUs, Core still attempted to reach an accommodation with him by offering to issue Core shares to him and offering alternative proposals.  Of course, Mr. Johnson was still going to be responsible for paying the tax withholdings associated with the stock award, but that was something he was not willing to do.

4.       Now, Mr. Johnson seeks $10,537,388.80 on the theory that had he complied with the RSU Agreement in October 2020 and his RSUs had later converted to Core common stock, he could have sold all his Core stock on February 8, 2022 for the full value of his claim. But the past cannot be changed and Mr. Johnson's claim should be disallowed because he forfeited his RSUs under the plain terms of the contract.  Even if Mr. Johnson were entitled to a claim for breach of the RSU Agreement (which he is not), the purported value of Mr. Johnson's claim is grossly overinflated, as Mr. Johnson could not have sold his hypothetical Core shares following Core's merger until at least March 10, 2022, when restrictions on the sale of such shares were waived.  Mr. Johnson's attempt to use the benefit of hindsight to forgive his failure to act and support a substantial claim against the Debtors should be rejected.

## Relief Requested

5.       By this Objection, pursuant to sections 105(a) and 502(b) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 3007-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Local Rules**"), the Debtors seek entry of the Proposed Order, disallowing Proofs of Claim Nos. 19 and 120 (the "**Johnson POCs**" or the "**Claims**") filed by Bryce Johnson in their entirety because Mr. Johnson is not entitled to any recovery on his Claims.  Alternatively, even if this Court were to

find that Mr. Johnson is entitled to some recovery on his Claims, such amount would be significantly less than the amount asserted in the Johnson POCs.

### Jurisdiction and Venue

6.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper pursuant to 28 U.S.C §§ 1408 and 1409.  The relief requested herein is sought pursuant to §§ 105(a) and 502(b) the Bankruptcy Code, Bankruptcy Rule 3007, and Bankruptcy Local Rule 3007-1.

### Background

**A.      The Separation Agreement and RSU Agreement**

7.      Mr. Johnson served as Core's President, and then briefly as Core's President, CEO, and Chairman of the Board from December 18, 2017 to July 6, 2018.

8.      On October 1, 2018, Core and Mr. Johnson entered into a separation agreement with an effective date of July 6, 2018 (the "**Separation Agreement**").  A true and correct copy of the Separation Agreement is attached hereto as **Exhibit B**.  Core and Mr. Johnson also entered into a Restricted Stock Unit Award Agreement effective October 2, 2018 (the "**RSU Agreement**").  A true and correct copy of the RSU Agreement is attached hereto as **Exhibit C**.

9.      The Separation Agreement is governed by California law, and the RSU Agreement is governed by Delaware law.  Separation Agreement § 11; RSU Agreement § 10(iv).

10.      Under the Separation Agreement, Mr. Johnson acknowledged receiving all salary payments through his separation date of July 6, 2018, and the parties mutually released claims arising out of or relating to Mr. Johnson's employment with Core.  Separation Agreement §§ 2, 4.  Mr. Johnson also released, among other things, "any equity or equity-based awards or shares of common stock of the Company, except with respect to the 605,261 restricted stock units which have been granted to you as per Section 2 of this Separation Agreement . . . ."  *Id.* § 4(a).

4

11.     Under the RSU Agreement, Core granted Mr. Johnson a right to receive 605,261 shares of Core's common stock, effective October 2, 2018 (the "**Grant Date**") if he satisfied certain conditions set forth in the RSU Agreement.  RSU Agreement § 1.  The RSU Agreement provides that the RSUs shall be settled "on the earlier to occur of the second (2nd) anniversary of the Grant Date or a Change in Control . . ." (the "**Settlement Date**").  RSU Agreement § 2(i).  Upon settlement, one share of Core's common stock was issuable for each RSU subject to the terms of the RSU Agreement and Core's 2018 Omnibus Incentive Plan (the "**Plan**") (though the RSU Agreement expressly provides that the RSUs were not being issued under the Plan).  *Id.* §§ 1; 2(ii).

12.     Absent a change in control during the two years after the Grant Date (which did not occur), the Settlement Date would be October 2, 2020.  Not only was Mr. Johnson aware that he had no rights in or with respect to the shares until the Core stock was issued to him in settlement of the RSU Agreement (RSU Agreement at section 2(iii)), but the RSU Agreement also required Mr. Johnson to pay all applicable withholding taxes as a condition precedent to Core issuing any shares of common stock to Mr. Johnson.  Thus, presumably Mr. Johnson would have taken the action of paying the withholding tax to obtain the shares in or around the Settlement Date.  Section 3 of the RSU Agreement provides, in pertinent part that:

> **Prior to the issuance of any Settlement Shares, the Grantee shall be required to pay** to the Company or its Affiliates, and the Company and its Affiliates shall have the right and are hereby authorized to withhold, **any applicable withholding taxes** in respect of the RSUs or any payment or transfer under or with respect to the RSUs and to take such other action as may be necessary in the opinion of the Committee to satisfy all obligations for the payment of such withholding taxes. **If the Grantee has not paid the required minimum applicable tax withholding amount *to the Company*, as determined by the Company, within thirty (30) days following the applicable Settlement Date, the RSUs and any**

> **Settlement Shares issuable thereunder shall be forfeited for no consideration.**

*Id.* § 3 (emphasis added).  Requiring Mr. Johnson to pay Core the withholding tax amount prior to the issuance of any stock was essential to Core because in the event Core issued any stock to Mr. Johnson, it would immediately owe taxes on the stock issuance.

13.     Mr. Johnson also made a series of representations in section 7 of the RSU Agreement that bear upon this Objection, including the following:

> (ii) The Grantee is in a financial position to hold the RSUs (and the Settlement Shares) for an indefinite period of time and is able to bear the economic risk and withstand a complete loss of the Grantee's investment in the Company.

> (iii) The Grantee has such knowledge and experience in financial and business matters that the Grantee is capable of reading and interpreting financial statements and evaluating the merits and risks of the prospective investment in the Company and has the net worth to undertake such risks.

> (iv) The Grantee has obtained, to the extent the Grantee deems necessary, the Grantee's own personal professional advice with respect to the tax consequences of receiving, and the risks inherent in, the investment in the Company, and the suitability of an investment in the Company in light of the Grantee's financial condition and investment needs.

> (vii) The Grantee recognizes that an investment in the Company involves a high degree of risk, including, but not limited to, the risk of economic losses from operations of the Company.

**B.     Mr. Johnson Forfeited His Right to Receive Shares in Core**

14.     As noted above, the Settlement Date under the RSU Agreement was the earlier of either (i) the second anniversary of the Grant Date (i.e., October 2, 2020) or (ii) a change of control.  The Settlement Date was October 2, 2020 because no change of control happened earlier.

15.     Mr. Johnson, a sophisticated executive and investor, was well aware of when the Settlement Date would occur under the RSU Agreement and that he would be obligated to pay "the required minimum applicable tax withholding amount to the Company" within thirty

days of the Settlement Date before he could receive any shares.  But, notwithstanding this knowledge, it is undisputed that he made no effort to reach out to Core until May 2021, after the right to receive the Core stock had already been forfeited.

16.     It is equally undisputed that Mr. Johnson never paid any withholding amount to Core within 30 days of the Settlement Date (i.e., by November 1, 2020) as required by section 3 of the RSU Agreement, nor did he ever make any arrangements to satisfy those obligations or even indicate an interest or intent to do so during the 30-day period following the Settlement Date.  Mr. Johnson's inaction strongly supports a conclusion that, for his own reasons, he had decided not to pursue the RSUs and incur the tax liability associated with receipt of the Core stock without knowing if he could ultimate realize any value on the Core shares.

17.     Several months after both the Settlement Date and the forfeiture of Mr. Johnson's RSUs, it became clear that Core was on the verge of a SPAC transaction—a significant potential liquidity event.  Presumably to try and take advantage of this development, Mr. Johnson self-reported income on a state tax return he filed in Colorado in 2021 for the tax year 2020 despite the fact that he was never issued any stock by Core or made any effort to obtain those shares.  Mr. Johnson also never paid any withholdings to Core as required by the RSU Agreement.

18.     It was not until May 21, 2021 that Mr. Johnson decided to make any effort to obtain the shares—seven months after the Settlement Date.  A true and correct copy of a May 21, 2021 letter Mr. Johnson sent to Core (the "**May 21, 2021 Letter**") is attached hereto as **Exhibit D**.  In the May 21, 2021 Letter, Mr. Johnson acknowledged that the Settlement Date "would have been October 2, 2020."

19.     Despite Mr. Johnson having forfeited the RSUs as of November 1, 2020 after he failed to pay Core the required withholding tax amount, Core informed Mr. Johnson that

it was amenable to discussing ways to resolve the dispute, but that any issuance of stock would result in taxable income and withholdings, which Core expected Mr. Johnson to pay. In late 2021, Core's HR department quantified Mr. Johnson's tax obligations (as if the stock was issued at that time). In connection with a settlement offer (subject to Federal Rule of Evidence 408), Core was willing to issue Mr. Johnson Core stock despite the fact that he forfeited his right to receive Core stock pursuant to the RSU Agreement, if Mr. Johnson agreed to satisfy the requisite withholding liability. However, Mr. Johnson was still not willing to pay that amount in exchange for Core stock that would have resolved the dispute over his RSU award.

### C.    Procedural History

20.    On December 21, 2022 (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11 of the Bankruptcy Code. The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

### D.    Mr. Johnson's Proofs of Claims

21.    Mr. Johnson filed his first Proof of Claim against Core Scientific, Inc. on January 24, 2023, seeking a general unsecured claim in the amount of $10,537,388.80. *See* Claim No. 19. In addition to claiming breach of the RSU Agreement, Mr. Johnson asserts claims for (i) fraud in the inducement; (ii) breach of contract for failing to issue Johnson 2.2% of the shares of old Core common stock when he was allegedly replaced without cause; and (iii) defamation. Johnson POC ¶ 9. Mr. Johnson also claims indemnification of the attorneys' fees he has incurred in connection with his attempt to obtain shares of Core stock. *Id.*

22.    On March 27, 2023, Mr. Johnson filed a second, nearly identical Proof of Claim against Core Scientific Operating Company for the same general unsecured amount of $10,537,388.80. *See* Claim No. 120.

**Basis for Relief**

23.     As set forth in Bankruptcy Rule 3001(f), a properly executed and filed proof of claim constitutes prima facie evidence of the validity and the amount of the claim under section 502(a) of the Bankruptcy Code.  *See, e.g.*, *In re Jack Kline Co., Inc.*, 440 B.R. 712, 742 (Bankr. S.D. Tex. 2010).  However, prima facie validity under Bankruptcy Rule 3001(f) "can be overcome by rebuttal evidence . . . ."  *In re Fidelity Holding Co., Ltd.*, 837 F.2d 696, 698 (5th Cir. 1988). "Upon production of this rebuttal evidence, the burden shifts to the claimant to prove its claim by a preponderance of the evidence."  *In re Armstrong*, 347 B.R. 581, 583 (Bankr. N.D. Tex. 2006) (citing *In re Fidelity Holding*, 837 F.2d at 698).  And, "the ultimate burden of proof always lies with the claimant."  *Id.* (citing *Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15 (2000)).

24.     Mr. Johnson cannot meet his burden here for any of his claims.

A.     **Core Did Not Breach the RSU Agreement**

25.     Mr. Johnson's claim for breach of the RSU Agreement fails because, as explained above, Mr. Johnson was well aware of the Settlement Date and did nothing to obtain the shares, and was required to pay all applicable withholding taxes "[p]rior to the issuance of any Settlement Shares" under the RSU Agreement.  RSU Agreement § 3.  As a sophisticated executive and investor, Mr. Johnson was well aware of the Settlement Date, and Core did not have any obligation to keep him apprised of what was a two-year deadline from the Grant Date.  If the RSUs were as important to Mr. Johnson then as he claims now, he surely would have reached out to Core to inquire about their status.  Moreover, if Mr. Johnson was unsure of the tax amount he owed to Core pursuant to the RSU Agreement, he could have reached out to Core prior to the Settlement Date or within thirty days thereafter.  Rather, he sat idly by for over half a year after his RSUs were forfeited before reaching out to Core.  *See* May 21, 2021 Letter.

26.     It appears that now, with the benefit of hindsight and knowing the price the stock attained at certain times (including well after he forfeited his RSUs), Mr. Johnson hopes to benefit from the economic upside without having paid the required withholding amount to Core for the value of that stock.  Indeed, it is easy to "time" the markets in retrospect and base your decision on what would amount to a sure thing.  But Mr. Johnson represented that he understood the terms of the RSU Agreement and chose not to take the steps necessary to covert the RSUs to Core stock.

27.     Even after electing not to pursue the RSUs or pay Core the withholding amount to receive Core's stock, Mr. Johnson filed a state income tax return, presumably in 2021, as if he actually owned stock that at the time had little value.  And even when Core made a good-faith effort to resolve the dispute (despite having no obligation to do so) by offering to issue Core shares to him, Mr. Johnson again refused to pay the required withholding amount.

28.     Mr. Johnson attempts to excuse his conduct by alleging that Core admitted in November of 2021 (over a year after the Settlement Date) that it breached the contract.  That is not so.  First,  Mr. Johnson was well aware of the October 2020 Settlement Date and his obligation to pay taxes within 30 days thereof on any shares he might receive in connection with the settlement of the RSUs, yet did nothing for nearly seven months.  Nothing Core did or did not do can change the fact that he forfeited whatever rights he had when he failed to act.  Second, even if Core's HR department had discussions with Mr. Johnson in November 2021 in the context of a possible settlement, that not only cannot create obligations on Core's part that did not exist, but also cannot be used as a basis to prove liability.  Moreover, even if there were "operational failures" as Mr. Johnson alleges, they do not change the fact that Mr. Johnson was well aware of the Settlement Date and his obligations under the RSU Agreement.

29.    Because Mr. Johnson was well aware of the Settlement Date but failed to act, and because he failed to pay the applicable withholding tax amount to Core within thirty days of the Settlement Date, he forfeited the RSUs under the express terms of the contract.  RSU Agreement § 3.

**B.    Even if Mr. Johnson Could State A Claim for Breach of the RSU Agreement, His Alleged Damages Are Premised On an Impossible Counterfactual Scenario, Speculative, and Subject to Reduction**

30.    Mr. Johnson's claim for $10,537,388.80 is premised on the assumptions that (i) had Mr. Johnson owned 605,621 shares of old Core common stock prior to Core's merger with Power & Digital Infrastructure Acquisition Corp., those shares would have converted into 968,510 shares of common stock when the merger closed in January 2022, and (ii) Mr. Johnson would have sold all of his shares on February 8, 2022 when the trading price of Core common stock closed at $10.88 per share.  Johnson POC ¶ 8.

31.    However, to have acquired shares of old Core common stock prior to the time of Core's merger, Mr. Johnson would have had to pay the applicable withholding tax, which he did not.  Additionally, even assuming Mr. Johnson had held shares of Core stock upon the close of Core's merger in January 2022, the converted shares of new common stock would have been subject to a 180-day lockup under the terms of the RSU Agreement, during which the stock would not be tradeable.  *See* RSU Agreement § 5.  Because Core ultimately waived the lockup for all shareholders on February 24, 2022, effective March 10, 2022, Mr. Johnson could not have possibly sold any shares of Core stock post-merger until at least March 10, 2022, by which time the value of Core's stock had significantly decreased since February 8, 2022.  *See id.*; Core Scientific, Inc., Current Report (Form 8-K) (Feb. 22, 2022) (waiving lockup period).

32.     Furthermore, there is simply no reason to believe that in this counterfactual scenario that Mr. Johnson would have sold all shares of Core common stock as soon as the restrictions were lifted, and Mr. Johnson provides no basis for this assumption.  Accordingly, even if Mr. Johnson were entitled to any recovery, which he is not for all of the reasons stated herein, the amount of that recovery must account for the fact that his claim is not plausible and premised on speculation.

**C.     Mr. Johnson's Claim for Breach of Contract for Failing to Issue Him Common Stock When He was Replaced as CEO is Meritless**

33.     In addition to claiming breach of the RSU Agreement, Mr. Johnson claims breach of contract for "failing to issue Johnson 2.2% of the shares of old Core common stock when he was replaced without cause."  Johnson POC ¶ 9.  It appears that any damages asserted for this alleged breach are duplicative of the alleged damages for breach of the RSU Agreement, as the total value of Mr. Johnson's claim was based on the hypothetical sale of the number of shares he would have received under the RSU Agreement.  *See supra* ¶ 25.

34.     Furthermore, even if Mr. Johnson "owned or had the potential to obtain 2.2% of the company's stock" when Core decided to replace him as CEO in 2018, under Mr. Johnson's Separation Agreement, he released among other things "any equity or equity-based awards or shares of common stock of the Company, except with respect to the 605,261 restricted stock units which have been granted to you as per Section 2 of this Separation Agreement . . . ."  Separation Agreement § 4(a).  Thus, Mr. Johnson expressly waived any claim to 2.2% of Core's stock when he executed his Separation Agreement.

**D.     Mr. Johnson's Claim for Fraud in the Inducement Fails as a Matter of Law**

35.     Mr. Johnson does not provide any support whatsoever for his fraud in the inducement claim, let alone identify any allegedly false statement or representation that could form the necessary basis for asserting fraud in the inducement.  *See, e.g.*, *ITW Glob. Invs. Inc. v. Am. Indus. Partners Cap. Fund IV, L.P.*, No. CAN14C10236JRJCCLD, 2015 WL 3970908, at *5 (Del. Super. Ct. June 24, 2015) (citing *ABRY Partners V, L.P. v. F & W Acquisition LLC*, 891 A.2d 1032, 1050 (Del. Ch. 2006); Johnson POC ¶ 9.  Furthermore, under Delaware law, fraud claims are improper and must be dismissed where, as here, they plead damages that "are simply a rehash" of alleged breach of contract damages.  *See ITW Glob. Invs. Inc.*, 2015 WL 3970908, at *5-6 ("Under Delaware law, a plaintiff cannot 'bootstrap a claim of breach of contract into a claim of fraud merely by alleging that a contracting party never intended to perform its obligations.'") (quoting *Furnari v. Wallpang, Inc.*, No. CV13C04287JRJCCLD, 2014 WL 1678419, at *8 (Del. Super. Ct. Apr. 16, 2014)).

36.     At any rate, Mr. Johnson does not assert any damages unique to his fraud in the inducement claim, as the total value of Mr. Johnson's claim was based on the hypothetical sale of the number of shares he would have received under the RSU Agreement.  *See supra* ¶ 25.

37.     Finally, under Mr. Johnson's Separation Agreement, he expressly released:

> "[A]ny and all claims and causes of action, known or unknown, suspected or unsuspected, from the beginning of time *to the present*, including without limitation those arising out of or relating to (i) your employment by the Company or the termination of such employment, including, but not limited to wrongful discharge, breach of contract, tort, *fraud*, and defamation . . . ."

Separation Agreement § 4(a) (emphasis added).

13

38.     Accordingly, in addition to being unable to satisfy the elements of a fraud in the inducement claim, Mr. Johnson released any such claim under his Separation Agreement.

**E.     Mr. Johnson's Defamation Claim Likewise Fails as a Matter of Law**

39.     The only basis Mr. Johnson asserts for his defamation claim is that "[a]t the same time" that Core decided to replace Johnson as CEO in 2018, "persons associated with Core" made defamatory statements about Johnson.   Johnson POC ¶ 5.   This claim fails for several reasons.

40.     Mr. Johnson does not specify what the alleged defamatory statements were or who made them, other than vaguely referring to "persons associated with Core." *Id.*

41.     Mr. Johnson does not assert any damages attributable to his defamation claim, as the total value of Mr. Johnson's claim was based on the hypothetical sale of the number of shares he would have received under the RSU Agreement. *See supra* ¶ 25.

42.     Finally, under Mr. Johnson's Separation Agreement, he expressly released "any and all claims and causes of action . . . including without limitation those arising out of or relating to (i) your employment by the Company or the termination of such employment, including, but not limited to wrongful discharge, breach of contract, tort, fraud, [and] *defamation* . . . ." Separation Agreement § 4(a).

43.     Accordingly, in addition to being unable to satisfy the elements of a defamation claim, Mr. Johnson released any such claim under his Separation Agreement.

\* \* \* \* \*

44.     The Debtors further assert all defenses available under Section 558 of the Bankruptcy Code.

## Reservation of Rights

45.     This Objection is limited to the grounds stated herein and accordingly is without prejudice to the rights of the Debtors or any other party in interest to object to any claim, including any of Bryce Johnson's claims, on any further grounds, and the Debtors expressly reserve all other substantive or procedural objections that they may have.  Nothing contained herein is intended to be or shall be deemed as (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver of the Debtors' or any appropriate party-in-interest's rights to dispute the amount of, basis for, or validity of any claim, (iii) a waiver of the Debtors' or any other party-in-interest's rights under the Bankruptcy Code or any other applicable nonbankruptcy law, or (iv) an approval, adoption, assumption, or rejection of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code.

## Notice

46.     Notice of this Objection will be provided to (i) any party that has requested notice pursuant to Bankruptcy Rule 2002, (ii) the affected claimant, and (iii) any other party entitled to notice pursuant to Bankruptcy Local Rule 9013-1(d).

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

[*Remainder of page intentionally left blank*]

Dated: May 11, 2023
Houston, Texas

/s/ *Alfredo R. Pérez*
WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (15776275)
700 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone:　(713) 546-5000
Facsimile:　(713) 224-9511
Email: Alfredo.Perez @weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Ray C. Schrock (admitted *pro hac vice*)
Ronit J. Berkovich (admitted *pro hac vice*)
Theodore E. Tsekerides (admitted *pro hac vice*)
Moshe A. Fink (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone:　(212) 310-8000
Facsimile:　(212) 310-8007
Email: Ray.Schrock@weil.com
　　　Ronit.Berkovich@weil.com
　　　Theodore.Tsekerides@weil.com
　　　Moshe.Fink@weil.com

*Counsel for Debtors and Debtors in Possession*

16

**<u>Certificate of Service</u>**

I hereby certify that on May 11, 2023, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/ *Alfredo R. Pérez*
Alfredo R. Pérez