**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CORE SCIENTIFIC, INC., *et al.*, | ) Case No. 22-90341 (DRJ) |
| | ) |
| Debtors.[1] | ) (Jointly Administered) |
| | ) Re: Docket Nos. 780 & 853 |

**OBJECTION OF THE AD HOC GROUP TO THE MOTION FOR**
**RELIEF FROM AUTOMATIC STAY REGARDING EQUIPMENT,**
**OR ALTERNATIVELY, MOTION FOR ADEQUATE PROTECTION**

The ad hoc group (the "Ad Hoc Group") of beneficial holders and/or investment advisors

or managers of discretionary accounts that hold (i) secured convertible notes issued pursuant to

that certain Secured Convertible Note Purchase Agreement, dated as of April 19, 2021 (as may be

amended, restated, amended and restated, supplemented or otherwise modified from time to time,

and including all related credit documents, and the notes issued thereunder) and/or (ii) the secured

convertible notes issued pursuant to that certain Convertible Note Purchase Agreement, dated on

or about August 20, 2021 (as may be amended, restated, amended and restated, supplemented or

otherwise modified from time to time, and including all related credit documents, and the notes

issues thereunder), each issued by Core Scientific, Inc. (as successor to or assignee of Core

Scientific Holdings Co.), hereby submits this objection with respect to the *Motion for Relief from*

*Automatic Stay Regarding Equipment, or Alternatively, Motion for Adequate Protection* [Docket

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (N/A); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions, VII, LLC (3198). The Debtors' corporate headquarters and service address is 210 Barton Springs Road, Suite 300, Austin, Texas 78704.

No. 780] (the "North Mill Lift Stay Motion") in the chapter 11 cases (the "Chapter 11 Cases") of

the above-captioned debtors and debtors-in-possession (the "Debtors"), and in support hereof,

respectfully states as follows:[2]

1.      The Ad Hoc Group, as a party-in-interest in the Chapter 11 Cases, hereby objects

to the relief sought in the North Mill Lift Stay Motion, as North Mill has not met its initial

evidentiary burden to establish their purported entitlement to termination of the automatic stay or,

alternatively, additional adequate protection.  Specifically, North Mill has not made a *prima facie*

showing that cause exists to lift the automatic stay to allow North Mill to exercise all of its

applicable rights and remedies against the Equipment, including, taking possession of (even if

taking possession is feasible, which it is not), foreclosing upon, selling or otherwise disposing of

the Equipment or that they are entitled to additional adequate protection for the continued use of

the Equipment by the Debtors.[3]

2.      Under section 362(d)(1) of the Bankruptcy Code, a creditor or party in interest can

obtain relief from the automatic stay "for cause, including the lack of adequate protection of an

interest in property of such party in interest[.]" 11 U.S.C. § 362(d)(1).  Courts determine whether

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the North Mill Lift Stay Motion or the Final Replacement DIP Order (as defined below), as applicable.

[3] The Debtors note in their objection to the North Mill Lift Stay Motion (see Docket No. 879) that they would have simply settled and paid out in excess of $700,000 to North Mill to avoid a dispute, but were essentially forced to file an objection because the Ad Hoc Group said it would object and might seek payment of post-petition interest on the secured convertible notes. In addition to North Mill's clear failure to meet its burden to establish an entitlement to additional adequate protection, the Ad Hoc Group had three primary concerns with the Debtors' initial reaction to the North Mill Lift Stay Motion. First, attempting to pay one secured creditor for post-petition accrued obligations could have led other secured creditors to also seek payment of similar obligations, and the Debtors have repeatedly told the Ad Hoc Group that they cannot afford to pay post-petition interest on all of their secured debt. Second, the decision to pay North Mill seemed premature to the Ad Hoc Group because the Debtors had no business plan at the time they asked the Ad Hoc Group for its views. While the Debtors have now provided a business plan to the Ad Hoc Group, there have been no proposals for a chapter 11 plan of reorganization and no negotiations with respect to the same. As a result, the Ad Hoc Group could not understand how the Debtors had figured out whether the North Mill collateral was a necessary part of the go-forward reorganized Debtors. Third, the Debtors had no timetable for the filing of their proposed chapter 11 plan and disclosure statement, and thus the payment of post-petition amounts on North Mill's debt could go on for a while and result in significantly greater expense to the Debtors' estates.

cause exists on a case-by-case basis. *Reitnauer v. Tex. Exotic Feline Found., Inc. (In re Reitnauer),* 152 F.3d 341 (5th Cir. 1998). The initial burden of demonstrating cause to lift the automatic stay rests with the movant. *See In re Gramercy Ct., Ltd.*, 2007 WL 2126493, at \*5 (Bankr. S.D. Tex. July 19, 2007) ("Every party seeking relief from the automatic stay under section 362(d)(1) must carry the initial burden of showing that it is entitled to relief before the debtor is obligated to go forward with its proof"); *see also In re Mosher*, 578 B.R. 765, 772 (Bankr. S.D. Tex. 2017) (noting that "[t]he burden of proof on a motion to lift the automatic stay is a shifting one: section 362(d)(1) requires an initial showing of cause by the movant; then, with the exception of the debtor's equity in the property (which is not at issue on a motion under section 362(d)(1), like this one), section 362(g) places the burden of proof on the debtor for all other issues.") (quoting *In re Syndicom Corp.*, 268 B.R. 26, 43 (Bankr. S.D.N.Y. 2001)); *In re Omni Lion's Run, L.P.*, 578 B.R. 394, 397–98 (Bankr. W.D. Tex. 2017) ("[t]he party requesting the relief must show a *prima facie* case before the debtor is required to put on its own evidence"). Once the moving party has established a *prima facie* case, "the party opposed to the relief has the burden on all other issues" other than the debtor's equity in the property. *See In re McConathy*, 2021 WL 2405734, at \*5 (Bankr. W.D. La. June 14, 2021). Similarly, where a party that has already obtained adequate protection is requesting additional adequate protection, the initial burden of establishing that such adequate protection is insufficient rests with the moving party. *See In re Residential Cap., LLC*, 501 B.R. 549, 591 (Bankr. S.D.N.Y. 2013) (holding, in part, that certain secured creditors bore the initial burden of showing that their interests were not adequately protected where such secured creditors had previously obtained bargained-for adequate protection pursuant to the terms of a cash collateral order).

3.      Here, North Mill bears the initial burden to make a *prima facie* showing that cause exists to lift the automatic stay and/or that it is entitled to further adequate protection beyond what is provided to them pursuant to the *Final Order (I) Authorizing the Debtors To (A) Obtain Senior Secured Non-Priming Superpriority Replacement Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay and (IV) Granting Related Relief* [Docket No. 608] (the "Final Replacement DIP Order").  North Mill has not met its burden.

4.      Instead, North Mill merely states in a conclusory fashion that cause exists to lift the automatic stay because (1) the value of the Equipment continues to depreciate postpetition and the Debtor has "little to no equity" in such Equipment, (2) the postpetition liens and security interests granted to North Mill in the form of postpetition liens and security interests in all DIP Collateral under the Final Replacement DIP Order (collectively, the "Equipment Lender Adequate Protection") are "vague and insufficient", and (3) the Debtors are not currently providing North Mill with monthly cash payments as further adequate protection.  *See* North Mill Lift Stay Motion ¶¶ 17, 18.  However, such conclusory statements, without any supporting evidence, do not establish a *prima facie* showing that cause exists to lift the automatic stay.  *See In re Kleibrink*, 346 B.R. 734, 761 (Bankr. N.D. Tex. 2006), *aff'd*, No. 3:07-CV-0088-K, 2007 WL 2438359 (N.D. Tex. Aug. 28, 2007), *aff'd*, 621 F.3d 370 (5th Cir. 2010) (secured creditor's motion for relief from the automatic stay was denied, in part, due to the secured creditor's failure to introduce evidence to determine whether or not it's interest was adequately protected); *see also In re Secrest*, 453 B.R. 623, 633 (Bankr. E.D. Va. 2011) (court denying relief under 362(d), given that the moving party did not satisfy its burden of proof and provided "no evidence" as to why cause existed to lift the automatic stay).

5.　　Indeed, with respect to North Mill's assertion that the value of the Equipment is depreciating, North Mill has failed to put forth any tangible evidence as to the loss in value of the Equipment, the rate of such depreciation, or why the current adequate protection package doesn't more than sufficiently compensate them for such loss. *See In re JCP Properties, Ltd.*, 540 B.R. 596, 613 (Bankr. S.D. Tex. 2015) ("To establish a *prima facie* case of cause due to a lack of adequate protection, the creditor seeking relief must provide evidence that the value of the collateralized property is declining or is threatened to decline in value as a result of the automatic stay.  Typically, a creditor will show a property's decline in value by comparing the value of that property at the time of the bankruptcy petition against the value of the property at the time of the lift stay hearing.").

6.　　Likewise, North Mill has not given any explanation of the vagueness or insufficiencies of the adequate protection liens that have been granted to them.  Accordingly, North Mill has not met its burden. *See Qmect, Inc. v. Burlingame Capital Partners II, L.P.*, 373 B.R. 682, 690 (N.D.Cal.2007) (affirming bankruptcy court's requirement that secured lenders prove diminution in value of collateral prior to foreclosing on replacement liens, because "the purpose of adequate protection is to protect lenders from diminution in the value of their collateral").

7.　　Despite North Mill's assertions, pursuant to the Final Replacement DIP Order, the Prepetition Equipment Lenders, including North Mill, were granted (i) superpriority administrative expense claims, and (ii) postpetition liens and security interests in all DIP Collateral, each in the amount of any aggregate Diminution in Value in the prepetition liens securing their respective prepetition collateral (collectively, the "Equipment Lender Adequate Protection").  Essentially, North Mill has received liens and security interests in all encumbered and unencumbered property

of the Debtors, which should more than cover any realized depreciation in the North Mill's collateral.

8.      North Mill's alternative request for additional adequate protection in the form of monthly cash payments must also fail.  As described above, North Mill has made no showing that the current adequate protection afforded to it under the Final Replacement DIP Order is insufficient.[4]

9.      For the foregoing reasons, North Mill has failed to satisfy its initial burden as to why the automatic stay should be lifted, as well as why it is entitled to additional adequate protection beyond what is provided for under the Final Replacement DIP Order.  North Mill makes no showing regarding the value of the Equipment (thus failing to show that there is not equity value in the Equipment that flows to the Debtors and its other stakeholders) or rate of depreciation, let alone why the Equipment Lender Adequate Protection already afforded to it is inadequate to protect against any purported diminution in value. *See In re Baytown Nav., Inc.*, 2012 WL 1123047, at *3 (S.D. Tex. Apr. 3, 2012) ("The movant may satisfy that burden by establishing that the value of the collateral is declining as a result of the stay").

10.     Accordingly, the North Mill Lift Stay Motion should not be granted.

[*Remainder of Page Left Intentionally Blank*]

---

[4]  To the extent North Mill's request for monthly cash payments are an attempt to assert rights under Section 365(d)(5) of the Bankruptcy Code, such a request would also fail because section 365(d)(5) of the Bankruptcy Code is not applicable here given that the nature of the Master Lease Agreement is that of a financing agreement as opposed to a true lease.  *See In re PSINet, Inc.*, 271 B.R. 1 (Bankr. S.D.N.Y. 2001) (holding that, under California law, a debtor's so-called equipment "leases" were, in reality, secured transactions, where equipment could be acquired by the debtors for a nominal sum of $1.00 at the conclusion of the lease term); *see also Matter of Pioneer Health Servs., Inc.*, 739 F. App'x 240, 244 (5th Cir. 2018) (holding that, regardless of how they were labeled by the parties, agreements between a debtor and a counterparty were not leases, but secured financing agreements, where, among other things, the purported lessor was bound to become the owner of the goods in question, rendering relief under section 365(d)(5) inapplicable).  Indeed, North Mill essentially recognizes as much in its motion, in part because they state in the North Mill Lift Stay Motion that they filed multiple UCC-1 Financing Statements with respect to the Equipment and note the Debtors' opportunity to purchase the Equipment for $1 at the end of the applicable term.  *See* North Mill Lift Stay Motion ¶¶ 4, 5, 6, 9, 10.

**WHEREFORE**, the Ad Hoc Group respectfully requests that the Court deny the North Mill Lift Stay Motion, as North Mill has failed to meet their initial evidentiary burden and has not made a *prima facie* showing that cause exists to lift the automatic stay or that they are entitled to additional adequate protection.

Date:  May 15, 2023
      Houston, Texas

Respectfully submitted

/s/ *James T. Grogan III*
**PAUL HASTINGS LLP**
James T. Grogan III (TX Bar No. 24027354)
600 Travis Street, 58th Floor
Houston, Texas 77002
Telephone:  (713) 860-7300
Facsimile:  (713) 353-3100
Email: jamesgrogan@paulhastings.com

-and-

Kristopher M. Hansen (admitted *pro hac vice*)
Sayan Bhattacharyya (admitted *pro hac vice*)
Erez E. Gilad (admitted *pro hac vice*)
Joanne Lau (admitted *pro hac vice*)
200 Park Avenue
New York, New York 10166
Telephone:  (212) 318-6000
Facsimile:  (212) 319-4090
Email: krishansen@paulhastings.com
      sayanbhattacharyya@paulhastings.com
      erezgilad@paulhastings.com
      joannelau@paulhastings.com

*Counsel to the Ad Hoc Group*

**<u>Certificate of Service</u>**

I certify that on May 15, 2023, I caused a copy of the foregoing document to be served by email on the following: Mark W. Stout and Christopher V. Arisco, counsel for North Mill Equipment Finance LLC, mstout@padfieldstout.com, carisco@padfieldstout.com; Alfredo R. Pérez, Ray C. Schrock, Ronit J. Berkovich and Moshe A. Fink, counsel for the Debtors, alfredo.perez@weil.com, ray.schrock@weil.com, ronit.berkovich@weil.com, moshe.fink@weil.com; Jennifer J. Hardy, Brett H. Miller, Todd M. Goren and James H. Burbage, counsel for the Official Committee of Unsecured Creditors, jhardy2@willkie.com, bmiller@willkie.com, tgoren@willkie.com, jburbage@willkie.com; Hampton Foushee, Douglas R. Gooding, John F. Ventola and R.J. Shannon, counsel for B. Riley Commercial Capital, LLC, the DIP Lender, hfoushee@choate.com, dgooding@choate.com, jventola@choate.com, rshannon@shannonleellp.com; and by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas on all parties registered to receive such service in the above-captioned cases.

_/s/ James T. Grogan III_
James T. Grogan III