# **EXHIBIT 5**

United States Bankruptcy Court
Southern District of Texas

**ENTERED**

March 01, 2023

Nathan Ochsner, Clerk

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

|  |  |
|---|---|
| *In re:* | Chapter 11 |
| Core Scientific, Inc., *et al.*,[1] | Case No. 22-90341 (DRJ) |
| Debtors. | (Jointly Administered) |
|  | Re: Docket Nos. 130, 389, 390, 391, 447, 573 and 579 |

**FINAL ORDER (I) AUTHORIZING THE DEBTORS TO
(A) OBTAIN SENIOR SECURED NON-PRIMING SUPERPRIORITY
REPLACEMENT POSTPETITION FINANCING AND
(B) USE CASH COLLATERAL, (II) GRANTING LIENS AND
PROVIDING CLAIMS WITH SUPERPRIORITY
ADMINISTRATIVE EXPENSE STATUS, (III) MODIFYING
THE AUTOMATIC STAY AND (IV) GRANTING RELATED RELIEF**

Upon the motion (the "***Motion***")[2] of Core Scientific, Inc. ("***Core Scientific***") and each of

its affiliates that are debtors and debtors in possession (collectively, the "***Debtors***") in the

above-captioned chapter 11 cases (the "***Chapter 11 Cases***"), pursuant to sections 105, 361, 362,

363, 364, 503, 506, 507 and 552 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*

(the "***Bankruptcy Code***"), Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (N/A); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR, LLC (5106); American Property Acquisition I, LLC (9717); and American Property Acquisitions, VII, LLC (3198). The Debtors' corporate headquarters and service address is 210 Barton Springs Road, Suite 300, Austin, Texas 78704.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion, the Interim Order (as defined herein) and the Replacement DIP Loan Documents (as defined herein), as relevant.

Procedure (the "**Bankruptcy Rules**"), and Rules 2002-1, 4001-1(b), 4002-1 and 9013-1 of the

Bankruptcy Local Rules of the United States Bankruptcy Court for the Southern District of Texas

and the Procedures for Complex Chapter 11 Bankruptcy Cases (together, the "**Local Bankruptcy**

**Rules**") promulgated by the United States Bankruptcy Court for the Southern District of Texas,

Houston Division (the "**Court**"), seeking entry of this final order (this "**Final Order**"), among

other things:

    (a)    authorizing the Debtors to obtain replacement postpetition financing on a
superpriority, non-priming, senior secured basis (the "**Replacement DIP Facility**,"
and the loans made or advanced thereunder, the "**Replacement DIP Loans**") in the
form of a multiple-draw term-loan facility in an aggregate principal amount of up
to $70 million (the "**Replacement DIP Facility**"), pursuant to which (i) an
aggregate principal amount of $35 million was borrowed (the "**Interim DIP
Borrowing**") in a single borrowing on the Closing Date, and (ii) following entry of
this Final Order, the remaining aggregate principal amount under the Replacement
DIP Facility shall be available, in one or more borrowings (each such borrowing,
including the Interim DIP Borrowing, a "**DIP Borrowing**," and, collectively, the
"**DIP Borrowings**"), and, in each case, in accordance with and subject to the terms
and conditions (including any conditions precedent to each of the DIP Borrowings)
set forth in that certain *Senior Secured Super-Priority Replacement Debtor-in-
Possession Loan and Security Agreement* substantially in the form attached hereto
as Exhibit 1 (as may be amended, amended and restated, supplemented, or
otherwise modified from time to time in accordance with the terms hereof and
thereof, the "**Replacement DIP Credit Agreement**"), and together with all other
agreements, guarantees, pledge, collateral and security agreements, mortgages,
deeds, charges, control agreements, instruments, certificates, notes, any separate
fee letter agreements between any of the Debtors, on the one hand, and the
Replacement DIP Agent and/or the Replacement DIP Lender, on the other hand,
and other documents executed, filed and/or delivered in connection therewith,
including the "**Loan Documents**" (as defined in the DIP Loan Agreement) (each as
amended, amended and restated, supplemented, or otherwise modified from time
to time in accordance with the terms hereof and thereof, together with the DIP Loan
Agreement, collectively, the "**Replacement DIP Loan Documents**"), by and
among each of the Debtors, as borrowers (the "**Replacement DIP Borrowers**"),
each of the direct and indirect subsidiaries of Core Scientific that are or become
debtors in the Chapter 11 Cases, as guarantors (collectively, the "**Replacement DIP
Guarantors**," and together with the Replacement DIP Borrowers, the
"**Replacement DIP Loan Parties**"), B. Riley Commercial Capital, LLC, as
administrative agent and collateral agent (in such capacities, together with its
successors and permitted assigns, the "**Replacement DIP Agent**"), and the lender

party thereto (the "***Replacement DIP Lender***," and together with the Replacement DIP Agent, the "***Replacement DIP Secured Parties***") and this Final Order.

(b)    authorizing the Replacement DIP Loan Parties to (i) execute, deliver, and perform under the Replacement DIP Credit Agreement and each of the Replacement DIP Loan Documents, (ii) incur all loans (including, for the avoidance of doubt, the accrual of interest paid-in-kind), advances, extensions of credit, financial accommodations, indemnification and reimbursement obligations and other obligations, and pay all principal, interest, premiums, fees, costs, expenses, charges and all other amounts payable under the Replacement DIP Loan Documents, whenever the same shall become due or payable, whether at stated maturity, by prepayment, declaration, acceleration or otherwise, in each case, in accordance with the Replacement DIP Loan Documents and this Final Order (collectively, the "***Replacement DIP Obligations***"), and (iii) perform such other and further acts as may be necessary, required or desirable to implement and effectuate the terms of this Final Order, the Replacement DIP Loan Documents and the transactions contemplated hereunder and thereunder;

(c)    authorizing the Replacement DIP Borrowers to incur, and the Replacement DIP Guarantors to jointly and severally guarantee, all DIP Obligations, in accordance with this Final Order and the Replacement DIP Loan Documents;

(d)    granting to the Replacement DIP Agent, for the benefit of itself and the other Replacement DIP Secured Parties, the DIP Liens (as defined below) in all DIP Collateral (as defined below), as set forth in this Final Order, subject to the Carve-Out and subject to the relative priorities set forth in this Final Order;

(e)    granting to the Replacement DIP Agent, for the benefit of itself and the other Replacement DIP Secured Parties, allowed super-priority administrative expense claims against each of the Debtors, on a joint and several basis, in respect of all Replacement DIP Obligations, subject in each case to the Carve-Out, as set forth in this Final Order;

(f)    authorizing the Debtors to use the proceeds of the Replacement DIP Facility, the DIP Collateral and the Prepetition Secured Notes Collateral (as defined below), including Cash Collateral (as defined below), solely in accordance with the terms and conditions set forth in this Final Order and the Replacement DIP Loan Documents, including the Approved Budget (as defined below), subject to any variances expressly permitted under Replacement DIP Loan Documents (the "***Permitted Variances***");

(g)    granting adequate protection to the extent set forth in this Final Order to the Prepetition Secured Parties (as defined below) to protect against any Diminution in Value (as defined below) of their respective Prepetition Secured Notes Liens (as defined below) in the Prepetition Secured Notes Collateral (including Cash Collateral);

(h)     approving certain stipulations, waivers, and releases by the Debtors with respect to, *inter alia*, (i) the Replacement DIP Secured Parties, the Replacement DIP Loan Documents, the Replacement DIP Liens, the Replacement DIP Obligations and the DIP Collateral, (ii) the Original DIP Agent, the Original DIP Lenders, the Original DIP Loan Documents and the Original DIP Obligations, and (iii) the Prepetition Secured Parties, the Prepetition Secured Notes Documents, the Prepetition Secured Notes Liens, the Prepetition Secured Notes Obligations (each as defined below), in each case, subject to the terms and provisions of this Final Order;

(i)     approving the Debtors' waiver of the right to surcharge the DIP Collateral as to the DIP Secured Parties, and the Prepetition Secured Notes Collateral as to the Prepetition Secured Parties, pursuant to section 506(c) of the Bankruptcy Code or otherwise, in each case, upon the terms set forth in this Final Order;

(j)     approving the Debtors' waiver of the (i) equitable doctrine of "marshaling" and other similar doctrines with respect to the DIP Collateral as to the Original DIP Agent and the Original DIP Lenders and the Replacement DIP Secured Parties, and (ii) equitable doctrine of "marshaling" and other similar doctrines, and the Debtors waiver of any "equities of the case exception" under section 552(b) of the Bankruptcy Code, with respect to the Prepetition Secured Notes Collateral as to the Prepetition Secured Parties, in each case, upon the terms set forth in this Final Order; and

(k)     modifying or vacating the automatic stay imposed by sections 105(a) and 362 of the Bankruptcy Code or otherwise, to the extent necessary, required or desirable to implement and effectuate the terms and provisions of this Final Order and the Replacement DIP Loan Documents, as set forth herein, waiving any applicable stay (including under Bankruptcy Rule 6004) with respect to the effectiveness and enforceability of this Final Order, providing for the immediate effectiveness of this Final Order, and granting related relief.

The Court, having considered the evidence submitted and arguments proffered or adduced at the interim hearing held before this Court on December 22, 2022, and the Court having entered the *Interim Order (I) Authorizing the Debtors to (A) Obtain Senior Secured Priming Superpriority Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Granting Adequate Protection to the Prepetition Secured Parties, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* [Docket No. 130] on December 23, 2022 (the "**Original Interim Order**") authorizing and approving the Original DIP Facility on an interim basis.

The Court further having considered the Motion, the Replacement DIP Term Sheet (as defined therein), the Commitment Letter, the *Declaration of Michael Bros in Support of the Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 5] (the "***First Day Declaration***"), the *Declaration of John Singh in Support of Emergency Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Replacement Senior Secured Non-Priming Replacement Superpriority Postpetition Financing, (B) Use Cash Collateral, and (C) Pay Off Existing Postpetition Financing Facility, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Granting Adequate Protection to the Prepetition Secured Parties, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* [Docket No. 390] (the "***Singh Declaration***"), and the *Declaration of Rodi Blokh in Support of the Emergency Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Replacement Senior Secured Non-Priming Superpriority Postpetition Financing, (B) Use Cash Collateral, and (C) Pay Off Existing Postpetition Financing Facility, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Granting Adequate Protection to the Prepetition Secured Parties, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* [Docket No. 391] (the "***Blokh Declaration***" and together with the Singh Declaration, the "***DIP Declarations***") the evidence submitted and arguments proffered or adduced at the interim hearing held before this Court on February 1, 2023 (the "***Interim Hearing***"), and the Court having entered the *Order (I) Authorizing the Debtors on an Interim Basis to (A) Obtain Senior Secured Non-Priming Superpriority Replacement Postpetition Financing and (B) Use Cash Collateral, (II) Authorizing the Debtors to Refinance Existing Postpetition Financing on a Final Basis, (III) Granting Liens and Providing Claims with Superpriority Administrative*

*Expense Status, (IV) Granting Adequate Protection to the Prepetition Secured Parties on a Final Basis, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* (Docket No. 447) (the "***Interim Order***") and upon the record of the Chapter 11 Cases; and due and proper notice of the Final Hearing having been given in accordance with Bankruptcy Rules 4001 and 9014 and all applicable Local Bankruptcy Rules; and it appearing that no other or further notice need be provided; and all objections, if any, to the relief requested in the Motion having been withdrawn, resolved, or overruled by the Court; the Court having determined that the legal and factual bases set forth in the Motion and at the Interim Hearing and at the Final Hearing established just cause for the relief granted herein; and it appearing to the Court that granting the final relief requested in the Motion, as provided in and modified by this Final Order is necessary to avoid irreparable harm to the Debtors and their estates and otherwise is fair and reasonable and in the best interests of the Debtors, their estates, their creditors, and all other parties in interest, represents a sound exercise of the Debtors' business judgment, is necessary for the continued operation of the Debtors' businesses and is necessary to preserve and maximize the value of the Debtors and their estates; and the Debtors having provided notice of the Motion as set forth in the Motion; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[3]**

A.      *Petition Date.* On December 21, 2022 (the "***Petition Date***"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court commencing these Chapter 11 Cases.

B.      *Debtors in Possession.* The Debtors continue to manage and operate their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in any of the Chapter 11 Cases.

C.      *Committee Formation.* On January 9, 2023, the Office of the United States Trustee (the "***U.S. Trustee***") appointed the Official Committee of Unsecured Creditors (the "***Official Committee***") pursuant to section 1102 of the Bankruptcy Code [Docket No. 256].

D.      *Jurisdiction and Venue.* This Court has jurisdiction over the Chapter 11 Cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. § 1334. This Court's consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b). Venue for these Chapter 11 Cases and the proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The predicates for the relief set forth herein are sections 105, 361, 362, 363, 364, 503, 506, 507 and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, and 9014, and Local Bankruptcy Rule 4001-2.

E.      *Debtors' Stipulations, Releases and Acknowledgements with Respect to Replacement DIP Lender.* In exchange for and as a material inducement to the Replacement DIP

---

[3]      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

Secured Parties to provide the Replacement DIP Facility, after consultation with their attorneys and advisors, the Debtors, on behalf of themselves and their estates, hereby admit, stipulate, acknowledge and agree as follows (without prejudice to the rights of the Official Committee and other parties in interest in paragraph 23 of this Final Order (subject to the limitations set forth therein)):

(a)    ***Prepetition Unsecured Bridge Notes***.

(i)    *Bridge Notes*. Core Scientific has issued, (x) to BRF Finance Co, LLC, as holder (the "***$60M Bridge Noteholder***") of that certain $60,000,000 Bridge Promissory Note dated April 7, 2022 (the "***$60M Bridge Note***") and (y) to B. Riley Commercial Capital, LLC,  as holder (the "***$15M Bridge Noteholder***", and together with the $60M Bridge Noteholder, the "***Bridge Noteholders***") of that certain $15,000,000 Bridge Promissory Note dated April 7 2022, (the "***$15M Bridge Note***," and together, with the $60M Bridge Note, collectively, as amended, restated or otherwise modified from time to time, the "***Bridge Notes***"). In connection with the Bridge Notes, Core Scientific and B. Riley Securities, Inc. executed that certain Fee Letter, dated as of April 7, 2022 (the "***Fee Letter***," and together with all other agreements, instruments, certificates, and other documents executed and/or delivered in connection the Bridge Notes, the "***Bridge Note Documents***").

(ii)    *Bridge Note Obligations*. As of the Petition Date, Core Scientific was justly and lawfully indebted to (x) the $60M Bridge Noteholder in the aggregate amount of approximately $33,661,657 on account of principal amounts outstanding under the Bridge Note Documents and to (y) the $15M Bridge Noteholder in the aggregate amount of approximately $8,415,414 on account of principal amounts outstanding under the Bridge Note Documents, each of the foregoing items (x) and (y) respectively, without defense, claim, counterclaim, challenge or offset of any kind, plus accrued but unpaid interest thereon, plus all fees, costs, expenses (including attorneys', financial advisors' and other professionals' fees and expenses, as relevant), charges, disbursements, indemnification and reimbursement obligations (contingent or otherwise), and all other amounts that may be due or owing under the Bridge Note Documents (collectively, the "***Bridge Note Obligations***").

(b)    *Validity and Enforceability of the Bridge Note Obligations.* As of the date hereof, (i) the Bridge Note Obligations constitute legal, valid, binding and non-avoidable obligations of Core Scientific, enforceable in accordance with the terms of the Bridge Note Documents; (ii) no challenges, objections, defenses, claims or counterclaims of any kind or nature whatsoever with respect to any of Bridge Note Obligations exist, and no portion of the Bridge Note Obligations is subject to any challenge, defense or claim (as defined in section 101(5) of the Bankruptcy Code) of any kind or nature whatsoever, including, without limitation, avoidance (whether under chapter 5 of the Bankruptcy Code or under applicable law (including any applicable state law Uniform Fraudulent Transfer Act,

Uniform Fraudulent Conveyance Act or similar statute or common law)), reduction, setoff, offset, recoupment, recharacterization, subordination (whether equitable, contractual or otherwise), reclassification, disgorgement, disallowance, impairment, or recovery, in each case, whether arising under the Bankruptcy Code, applicable non-bankruptcy law or otherwise; (iii) the Debtors waive, discharge, and release any right to challenge the enforceability or validity of any of the Bridge Note Obligations; and (iv) the Bridge Note Obligations constitute allowed claims within the meaning of section 502 of the Bankruptcy Code against Core Scientific and its respective estate.

(c)       *No Claims, Defenses, or Causes of Action against Replacement DIP Secured Parties*. As of the date hereof, there exists no challenge, objection, defense, claim, counterclaim, or other cause of action, of any kind or nature whatsoever, whether arising under the Bankruptcy Code, applicable non-bankruptcy law or otherwise, against any of the Replacement DIP Secured Parties or any of their respective officers, directors, members, managers, partners, equity holders, subsidiaries, affiliates, related parties, employees, investment advisors or managers, agents, attorneys, advisors, professionals (collectively, together with each of their successors and assigns, the "**Representatives**") (in their capacities as such) arising from, in connection with, or relating to the Interim Order or this Final Order.

(d)       *Releases*. Subject to paragraph 23 of this Final Order, effective as of the date of entry of this Final Order, each of the Debtors and the Debtors' estates, on its own behalf and on behalf of its predecessors, successors and assigns, hereby absolutely, unconditionally and irrevocably releases and forever discharges and acquits each of the Replacement DIP Secured Parties and each of their respective Representatives (in their capacities as such) from any and all obligations and liabilities to the Debtors (and their successors and assigns) and from any and all claims, counterclaims, cross-claims, demands, defenses, objections, challenges, offsets or setoff, debts, accounts, contracts, liabilities, remedies, suits, controversies, actions, causes of action, losses, damages, indemnities, reimbursement obligations, attorneys' fees, costs, expenses or judgments, of every kind or nature whatsoever, whether matured or unmatured, known or unknown, asserted or unasserted, suspected or unsuspected, foreseen or unforeseen, accrued or unaccrued, liquidated or unliquidated, fixed or contingent, pending or threatened, arising in law or equity, upon contract or tort, under the Bankruptcy Code, any state or federal common law, statute, rule, regulation or otherwise, in each case, that may be asserted by any of the Debtors, their respective estates, predecessors, successors or assigns, against the Replacement DIP Secured Parties or their respective Representatives (in their capacities as such) for or by reason of any act, omission, matter, cause or thing whatsoever arising at any time prior to the date of this Final Order, in each case, arising under, in connection with, or related to the Interim Order, this Final Order, the transactions contemplated thereunder or hereunder, or the negotiation thereof or hereof, including any claim or cause of action seeking (i) any so-called lender liability, (ii) any and all claims arising under the Bankruptcy Code, whether under chapter 5 of the Bankruptcy Code or under applicable law (including any applicable state law Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or (iii) reduction, recoupment, recharacterization, subordination (whether equitable, contractual or otherwise), reclassification, disgorgement, disallowance, impairment, marshalling,

surcharge or recovery, or any other related claim or cause of action with respect to the validity, enforceability, priority, scope, extent or perfection of the DIP Liens, the Replacement DIP Obligations, or the Replacement DIP Loan Documents (as relevant).

F.       *Debtors' Stipulations, Releases and Acknowledgements with Respect to Prepetition Secured Parties.* In exchange for and as a material inducement to the use of Cash Collateral that constitutes Prepetition Secured Notes Collateral, after consultation with their attorneys and advisors, the Debtors, on behalf of themselves and their estates, hereby admit, stipulate, acknowledge and agree as follows (without prejudice to the rights of the Official Committee and other parties in interest in paragraph 23 of this Final Order (subject to the limitations set forth therein)) (collectively, the admissions, stipulations, and acknowledgments and agreements set forth in paragraphs E and F of this Final Order, the "***Debtors' Stipulations***"):

(a)       *Prepetition April NPA Secured Notes.*

(i)       *Prepetition April NPA.* Pursuant to (x) that certain Secured Convertible Note Purchase Agreement, dated as of April 19, 2021 (as amended, amended and restated, supplement or otherwise modified from time to time prior to the Petition Date, the "***Prepetition April NPA***"), by and among Core Scientific (f/k/a Core Scientific Holding Co.), the guarantors party thereto from time to time (the "***Prepetition April NPA Guarantors***," and together with Core Scientific, the "***Prepetition April NPA Notes Obligors***"), the "Initial Purchasers" and any "Additional Purchasers" party thereto from time to time (collectively, the "***Prepetition April NPA Secured Noteholders***") and U.S. Bank National Association, as note agent and collateral agent (in such capacities, the "***Prepetition April NPA Agent***," and together with the Prepetition April NPA Secured Noteholders, the "***Prepetition April NPA Secured Parties***"), and (y) all other agreements, guarantees, pledge, collateral and security documents, instruments, certificates, promissory notes and other documents executed and/or delivered in connection therewith, including, without limitation, all "Note Documents" (as defined in the Prepetition April NPA) (collectively, together with the Prepetition April NPA, the "***Prepetition April NPA Documents***"), Core Scientific issued secured convertible notes (the "***Prepetition April NPA Secured Notes***"), and each of the Prepetition April NPA Guarantors, among other things, jointly and severally, irrevocably and unconditionally guaranteed the due and punctual payment and performance in full in cash of all Prepetition April NPA Secured Notes Obligations (as defined below).

(ii)       *Prepetition April NPA Secured Notes Obligations.* As of the Petition Date, the Prepetition April NPA Notes Obligors were justly and lawfully indebted to the Prepetition April NPA Secured Parties, on a joint and several basis, without defense, claim, counterclaim, challenge or offset of any kind, in the aggregate amount of approximately

$239.6 million on account of principal amounts outstanding[4] under the Prepetition April NPA Secured Notes, plus accrued but unpaid interest thereon, plus all fees, costs, expenses (including attorneys' and other professionals' fees and expenses), charges, disbursements, indemnification and reimbursement obligations (contingent or otherwise), including all "Obligations" (as defined in the Prepetition April NPA) and all other amounts that may be due or owing under the Prepetition April NPA Documents (collectively, the "***Prepetition April NPA Secured Notes Obligations***").

(b)       *Prepetition August NPA Secured Notes.*

(i)       *Prepetition August NPA.* Pursuant to (x) that certain Secured Convertible Note Purchase Agreement, dated as of August 20, 2021 (as amended, amended and restated, supplement or otherwise modified from time to time prior to the Petition Date, the "***Prepetition August NPA***"), by and among Core Scientific (f/k/a Core Scientific Holding Co.), the guarantors party thereto from time to time (the "***Prepetition August NPA Guarantors***," and together with Core Scientific, the "***Prepetition August NPA Notes Obligors***"), the "Initial Purchasers" and any "Additional Purchasers" party thereto from time to time (collectively, the "***Prepetition August NPA Secured Noteholders***") and U.S. Bank National Association, as note agent and collateral agent (in such capacities, the "***Prepetition August NPA Agent***," and together with the Prepetition August NPA Secured Noteholders, the "***Prepetition August NPA Secured Parties***"), and (y) all other agreements, guarantees, pledge, collateral and security documents, instruments, certificates, promissory notes and other documents executed and/or delivered in connection therewith, including, without limitation, all "Note Documents" (as defined in the Prepetition August NPA) (collectively, together with the Prepetition August NPA, the "***Prepetition August NPA Documents***"), Core Scientific issued convertible notes (the "***Prepetition August NPA Secured Notes***"), and each of the Prepetition August NPA Guarantors, among other things, jointly and severally, irrevocably and unconditionally guaranteed the due and punctual payment and performance in full in cash of all Prepetition August NPA Secured Notes Obligations (as defined below).

(ii)       *Prepetition August NPA Secured Notes Obligations.* As of the Petition Date, the Prepetition August NPA Notes Obligors were justly and lawfully indebted to the Prepetition August NPA Secured Parties, on a joint and several basis, without defense, claim, counterclaim, challenge or offset of any kind, in the aggregate amount of approximately $325.9 million on account of principal amounts outstanding under the Prepetition August NPA Secured Notes, plus accrued but unpaid interest thereon, plus all fees, costs, expenses (including attorneys', financial advisors' and other professionals' fees and expenses), charges, disbursements, indemnification and reimbursement obligations (contingent or otherwise), including all "Obligations" (as defined in the Prepetition August NPA) and all other amounts that may be due or owing

---

[4]   The Prepetition April NPA Secured Parties assert an additional $84.2 million in Prepetition April NPA Secured Notes Obligations in accreted amounts. The Official Committee and the ad hoc group of equity holders dispute such entitlement.

under the Prepetition August NPA Documents (collectively, the "***Prepetition August NPA Secured Notes Obligations***").

(c) *Validity and Enforceability of Prepetition Secured Notes Obligations and Prepetition Secured Notes Liens*. As of the Petition Date, (i) the Prepetition Secured Notes Liens in the Prepetition Secured Notes Collateral (A) are legal, valid, binding, enforceable, non-avoidable and fully perfected liens and security interests in the Prepetition Secured Notes Collateral (except with respect to cash held in the Debtors' deposit accounts that do not otherwise represent identifiable proceeds of Prepetition Secured Notes Collateral), (B) were granted to or for the benefit of the Prepetition Secured Parties for fair consideration and reasonably equivalent value, and (C) are senior with priority over any and all other liens or security interests in the Prepetition Secured Notes Collateral, subject only to certain liens and security interests that were valid, non-avoidable and properly perfected as of the Petition Date (or were properly perfected subsequent to the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code) and senior in priority by operation of law to the Prepetition Liens in the Prepetition Secured Notes Collateral as of the Petition Date (the "***Existing Senior Liens***");[5] (ii) the Prepetition Secured Notes Obligations constitute legal, valid, binding and non-avoidable obligations of each of the Prepetition Secured Notes Obligors, enforceable in accordance with the terms of the applicable Prepetition Secured Notes Documents; (iii) no challenges, objections, defenses, claims or counterclaims of any kind or nature whatsoever with respect to any of the Prepetition Secured Notes Liens or the Prepetition Secured Notes Obligations exist, and no portion of the Prepetition Secured Notes Liens or the Prepetition Secured Notes Obligations is subject to any challenge, defense or claim (as defined in section 101(5) of the Bankruptcy Code) of any kind or nature whatsoever, including, without limitation, avoidance (whether under chapter 5 of the Bankruptcy Code or under applicable law (including any applicable state law Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law)), reduction, setoff, offset, recoupment, recharacterization, subordination (whether equitable, contractual or otherwise), reclassification, disgorgement, disallowance, impairment, marshalling, surcharge or recovery, in each case, whether arising under the Bankruptcy Code, applicable non-bankruptcy law or otherwise; (iv) the Debtors waive, discharge, and release any right to challenge the enforceability, validity, priority or perfection of any of the Prepetition Secured Notes Obligations or the Prepetition Secured Notes Liens; and (v) the Prepetition Secured Notes Obligations constitute allowed secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code against each of the Prepetition Secured Notes Obligors and their respective estates.

---

[5]   Nothing contained herein shall constitute a finding or ruling by this Court that any alleged Existing Senior Lien is valid, senior, enforceable, prior, perfected or non-avoidable. Moreover, nothing contained herein shall prejudice the rights of any party in interest, including, but not limited to the Debtors, the Replacement DIP Secured Parties, the Prepetition Secured Parties, or the Official Committee, in each case, to the extent such party has standing to challenge the validity, priority, enforceability, seniority, avoidability, perfection or extent of any alleged Existing Senior Lien (subject to the terms of this Final Order). For the purposes hereof, any alleged claim arising or asserted as a right of reclamation or return (whether asserted under section 546(c) of the Bankruptcy Code or otherwise) is not an Existing Senior Lien.

(d)     *No Claims, Defenses, or Causes of Action against Prepetition Secured Parties*. As of the date hereof, there exists no challenge, objection, defense, claim, counterclaim, or other cause of action, of any kind or nature whatsoever, whether arising under the Bankruptcy Code, applicable non-bankruptcy law or otherwise, against any of the Prepetition Secured Parties or any of their Representatives (in their capacities as such) arising from, in connection with, or relating to the Interim Order, this Final Order, the Original Interim Order, the Prepetition Secured Notes Liens, the Prepetition Secured Notes Obligations, the Prepetition Secured Notes Documents or the Prepetition Secured Notes Collateral.

(e)     *Releases*. Subject to paragraph 23 of this Final Order, effective as of the date of entry of the Interim Order, each of the Debtors and the Debtors' estates, on its own behalf and on behalf of its predecessors, successors and assigns, hereby absolutely, unconditionally and irrevocably releases and forever discharges and acquits each of the Prepetition Secured Parties and each of their respective Representatives (in their respective capacities as such) from any and all obligations and liabilities to the Debtors (and their successors and assigns) and from any and all claims, counterclaims, cross-claims, demands, defenses, objections, challenges, offsets or setoff, debts, accounts, contracts, liabilities, remedies, suits, controversies, actions, causes of action, losses, damages, indemnities, reimbursement obligations, attorneys' fees, costs, expenses or judgments, of every kind or nature whatsoever, whether matured or unmatured, known or unknown, asserted or unasserted, suspected or unsuspected, foreseen or unforeseen, accrued or unaccrued, liquidated or unliquidated, fixed or contingent, pending or threatened, arising in law or equity, upon contract or tort, under the Bankruptcy Code, any state or federal common law, statute, rule, regulation or otherwise, in each case, that may be asserted by any of the Debtors, their respective estates, predecessors, successors or assigns, against the Prepetition Secured Parties or their respective Representatives (in their capacities as such) for or by reason of any act, omission, matter, cause or thing whatsoever arising at any time prior to the date of this Final Order, in each case, arising under, in connection with, or related to the Interim Order, this Final Order, the Original Interim Order, the Prepetition Secured Notes, the Prepetition Secured Notes Liens, the Prepetition Secured Notes Collateral, the Prepetition Secured Notes Obligations, the Prepetition Secured Notes Documents, the Adequate Protection Obligations, the transactions contemplated thereunder or hereunder, or the negotiation thereof or hereof, including any claim or cause of action seeking (i) any so-called lender liability, (ii) any and all claims arising under the Bankruptcy Code, whether under chapter 5 of the Bankruptcy Code or under applicable law (including any applicable state law Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or (iii) reduction, recoupment, recharacterization, subordination (whether equitable, contractual or otherwise), reclassification, disgorgement, disallowance, impairment, marshalling, surcharge or recovery, or any other related claim or cause of action with respect to the validity, enforceability, priority, scope, extent or perfection of the Prepetition Secured Notes Liens, the Prepetition Secured Notes Obligations, or the Prepetition Secured Notes Documents (as relevant).

(f)     *Cash Collateral*. All of the Debtors' cash (except for cash held in any "Excluded Accounts" (as defined in the Prepetition NPAs) that did not otherwise constitute

identifiable proceeds of Prepetition Secured Notes Collateral), (i) as of the Petition Date, wherever located and held, including all cash and cash equivalents deposited or maintained by the Debtors in any accounts, whether as original Prepetition Secured Notes Collateral or proceeds of Prepetition Secured Notes Collateral, and (ii) after the Petition Date that constitutes proceeds, products, offspring or profits of the Prepetition Secured Notes Collateral, constitutes "cash collateral" within the meaning of section 363(a) of the Bankruptcy Code ("**Cash Collateral**"). For the avoidance of doubt, "Cash Collateral" shall not include the proceeds, products, offspring or profits of the First-Priority DIP Collateral.

(g)     *Certain Definitions*

(i)     "**Prepetition Agents**" means the Prepetition April NPA Agent and the Prepetition August NPA Agent.

(ii)     "**Prepetition Equipment Financings**" means loans or indebtedness incurred by Core Scientific or Core Scientific Operating Company (f/k/a Core Scientific, Inc.) to finance the acquisition of machines or equipment or which otherwise pledge machines or equipment as collateral for the loans or indebtedness (other than the Prepetition Secured Notes), including those incurred under any of the agreements or documents listed on the Schedule of Existing Liens attached to the Interim Order as **Exhibit 3**.

(iii)     "**Prepetition Equipment Financing Collateral**" means the property and assets of any Debtor (and proceeds thereof), in each case, as and to the extent a lien or security interest is granted or purported to be granted in such property, assets and/or proceeds thereof, as security for the respective Prepetition Equipment Financings, as more particularly set forth in the applicable Prepetition Equipment Loan Documents.

(iv)     "**Prepetition Equipment Financing Liens**" means the liens and security interests of, or asserted by, each of the Prepetition Equipment Lenders in the Prepetition Equipment Financing Collateral purportedly securing the respective Prepetition Equipment Financings to the extent such liens are valid, properly perfected, and non-avoidable. For the avoidance of doubt and notwithstanding anything contrary herein or in the Replacement DIP Loan Documents, the DIP Liens shall not prime the Prepetition Equipment Financing Liens that are Prior Senior Liens.

(v)     "**Prepetition Equipment Lenders**" means the lenders under the Prepetition Equipment Financings.

(vi)     "**Prepetition Equipment Loan Documents**" means loan documents, and all security, collateral and other agreements, statements, instruments and other documents executed and/or delivered by the Debtors and the Prepetition Equipment Lenders in connection with the Prepetition Equipment Financings.

(vii)     "**Prepetition NPAs**" means the Prepetition April NPA and the Prepetition August NPA.

(viii)   "*Prepetition Secured Notes Documents*" means the Prepetition April NPA Documents and the Prepetition August NPA Documents.

(ix)   "*Prepetition Secured Notes Liens*" means those liens granted to the Prepetition Agents, for the benefit of themselves and the applicable Prepetition Secured Noteholders, arising from the Prepetition Secured Notes Documents (including, among other Prepetition Secured Notes Documents, (a) the Security Agreement, dated as of April 19, 2021, in respect of the Prepetition April NPA Secured Notes, and (b) following the occurrence of a Conversion Event (as defined in the Prepetition August NPA), the Security Agreement, dated as of February 7, 2022, in respect of the Prepetition August NPA Secured Notes), to secure the Prepetition Secured Notes Obligations.

(x)   "*Prepetition Secured Noteholders*" means the Prepetition April NPA Secured Noteholders and the Prepetition August NPA Secured Noteholders.

(xi)   "*Prepetition Secured Notes*" means the Prepetition April NPA Secured Notes and the Prepetition August NPA Secured Notes.

(xii)   "*Prepetition Secured Notes Collateral*" means all "Collateral" as defined in the Prepetition Secured Notes Documents.

(xiii)   "*Prepetition Secured Notes Obligations*" means the Prepetition April NPA Secured Notes Obligations and the Prepetition August NPA Secured Notes Obligations.

(xiv)   "*Prepetition Secured Notes Obligors*" means the Prepetition April NPA Notes Obligors and the Prepetition August NPA Notes Obligors.

(xv)   "*Prepetition Secured Parties*" means the Prepetition April NPA Secured Parties and the Prepetition August NPA Secured Parties.

(xvi)   "*Prior Senior Liens*" means all liens and security interests on DIP Collateral, including those listed on the Schedule of Existing Liens attached to the Interim Order as **Exhibit 3**, in each case, solely to the extent such liens and security interests were existing, valid, fully perfected and non-avoidable as of the Petition Date (or are properly perfected subsequent to the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code).

G.   *Findings Regarding Corporate Authority.* Each of the Replacement DIP Loan Parties has all requisite power and authority to execute and deliver the Replacement DIP Loan Documents to which it is a party and to perform its obligations thereunder.

H.   *Findings Regarding Replacement DIP Facility and Use of Cash Collateral.*

(a)   *Good Cause.* Good and sufficient cause has been shown for the entry of this Final Order and for the Debtors to obtain postpetition financing pursuant to the terms hereof and the Replacement DIP Loan Documents.

(b)   *Need for Postpetition Financing and Use of Cash Collateral.* The Debtors had an immediate and critical need to repay the Original DIP Facility, which occurred subsequent to the entry of the Interim Order.   The Debtors further have a critical need to obtain the Replacement DIP Facility and use Cash Collateral in order to, among other things, (i) permit the orderly continuation and operation of their businesses, (ii) maintain business relationships with customers, vendors and suppliers, (ii) make payroll, (iv) make capital expenditures, (v) pay the expenses of the Chapter 11 Cases (including by funding the Carve-Out), (vi) satisfy working capital and operational needs of the Debtors, and (vii) for general corporate purposes, in each case, in accordance with and subject to the terms and conditions of this Final Order and the Replacement DIP Loan Documents, including the Approved Budget (subject to Permitted Variances). The Debtors require access to sufficient working capital and liquidity through the incurrence of loans and other financial accommodations under the Replacement DIP Facility and the use of the Prepetition Secured Parties' Cash Collateral in order to preserve, maintain and maximize the going concern value of the Debtors and to facilitate an orderly and successful reorganization of the Debtors. Without access to the DIP Facility and the authorized use of Cash Collateral upon the terms set forth herein, the Debtors and their estates will be irreparably harmed.

(c)   *No Credit Available on More Favorable Terms.* The Debtors are unable to obtain financing or other financial accommodations on more favorable terms from sources other than the Replacement DIP Secured Parties. The Debtors are unable to obtain adequate unsecured

credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code. The Debtors are also unable to obtain adequate secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code without granting to the Replacement DIP Secured Parties the rights, benefits, remedies and protections set forth herein and the Replacement DIP Loan Documents, including the DIP Liens in all DIP Collateral and the DIP Superpriority Claims.

(d)     *Use of Proceeds of Replacement DIP Facility and Cash Collateral*. As a condition to providing the Replacement DIP Facility and their consent to the use of Prepetition Secured Notes Collateral (including Cash Collateral), each of the Replacement DIP Secured Parties and the Prepetition Secured Parties (as applicable) require, and the Debtors have agreed, that all proceeds of the Replacement DIP Loans and all Cash Collateral shall be used and/or applied solely for the purposes expressly permitted in, and in a manner consistent with, the Approved Budget (subject to Permitted Variances) including (i) to pay the costs of administration of the Chapter 11 Cases, (ii) for general corporate and working capital purposes, (iii) to pay adequate protection payments to the extent set forth in the Interim Order and this Final Order, and (iv) to pay professional fees and expenses in accordance with the Original Interim Order and this Final Order, in each case, subject to the terms and conditions of this Final Order and the Replacement DIP Loan Documents.

(e)     *Approved Budget*. The Debtors have prepared and delivered to the Replacement DIP Secured Parties the initial itemized cash flow forecast set forth on **Exhibit 4** attached to the Interim Order, which has been approved by the Replacement DIP Lender and the Ad Hoc Group (the "***Initial Budget***," as amended, supplemented or updated by the Debtors, and approved by the Replacement DIP Lender and the Ad Hoc Group, from time to time in accordance with the terms of this Final Order and the Replacement DIP Credit Agreement, the "***Approved***

*Budget*"), reflecting, on a line item, cumulative and aggregate basis, the Debtors' projected cash receipts expected to be collected, and necessary disbursements and expenditures (including debt service costs) expected to be incurred or made, by the Debtors for each calendar week during the period from the calendar week ending on the Friday of the week in which the Court enters this Final Order through and including the week ending June 30, 2023. The Initial Budget is an integral part of the Interim Order (for purposes of the interim period) and this Final Order, and the Replacement DIP Secured Parties are relying, in part, upon the Debtors' agreement to comply with the Approved Budget (subject to Permitted Variances) in determining to enter into the Replacement DIP Facility and to allow the Debtors' use of proceeds of the Replacement DIP Facility in accordance with the terms of this Final Order and the Replacement DIP Loan Documents. In the event of a disagreement between the Replacement DIP Lender and the Ad Hoc Group with respect to whether a proposed budget constitutes an Approved Budget, the determination of the Replacement DIP Lender shall prevail; *provided* that, in such event, the Ad Hoc Group shall be entitled to object and seek relief from the Court (and the Replacement DIP Loan Parties and the Replacement DIP Secured Parties shall not object to such relief being heard on an emergency basis) (the respective rights in this final sentence of paragraph H(e), the "***Budget Resolution Right***").

(f)      *Adequate Protection*. Pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code, the Prepetition Secured Parties are entitled to adequate protection against any post-petition diminution in value of the Prepetition Secured Parties' respective liens and interests in the Prepetition Secured Notes Collateral (including Cash Collateral) resulting from, among other things, (i) the use, sale or lease by the Debtors of Prepetition Secured Notes Collateral (including Cash Collateral), (ii) the imposition of the automatic stay, (iii) the imposition of the Carve-Out,

and (iv) any other cause or reason to the maximum extent provided under the Bankruptcy Code and applicable law (collectively, the "***Diminution in Value***"), as set forth in this Final Order. Based on the Motion, the DIP Declarations, the First Day Declaration, and the other evidence filed in support of the Motion, and the record presented to the Court in connection with the Interim Hearing and the Final Hearing, the terms of the adequate protection arrangements and the use of Prepetition Secured Notes Collateral (including Cash Collateral) set forth herein are fair and reasonable, reflect the Debtors' prudent exercise of business judgment and constitute reasonably equivalent value and fair consideration for the use of Prepetition Secured Notes Collateral (including Cash Collateral); *provided* that nothing in this Final Order shall (x) be construed as the affirmative consent by any of the Prepetition Secured Parties for the use of Cash Collateral or other Prepetition Secured Notes Collateral other than on the terms expressly set forth in this Final Order, (y) be construed as a consent by any party to the terms of any other financing or any other lien encumbering the DIP Collateral or the Prepetition Secured Notes Collateral (whether senior, *pari passu* or junior) other than on the terms expressly set forth in this Final Order, or (z) prejudice, limit or otherwise impair the rights of any of the Prepetition Secured Parties to seek new, different or additional adequate protection after the date hereof or assert the interests of any of the Prepetition Secured Parties (and the rights of all parties-in-interest to object to any such relief are expressly preserved).

(g)     *Consent by the Prepetition Secured Parties*. The requisite Prepetition Secured Parties have consented (or are deemed to have consented) to the Debtors' use of Prepetition Secured Notes Collateral (including Cash Collateral), to the Debtors' entry into the Replacement DIP Facility, and to the granting of the DIP Liens, the DIP Superpriority Claims, the Noteholder Adequate Protection Liens, the Noteholder Adequate Protection Obligations and the

other liens and claims granted hereunder, in each case, upon the terms set forth in the Interim Order and this Final Order.

(h)     *Section 506(c), Section 552(b), and Marshalling Waivers*. Subject to paragraph 43, as a material inducement to the Replacement DIP Secured Parties and Prepetition Secured Parties to provide the Replacement DIP Facility and consent (or deemed consent) to use Cash Collateral, respectively, and in consideration of (i) the Replacement DIP Secured Parties' agreement to subordinate their DIP Liens to the Carve-Out, as set forth herein, (ii) the Prepetition Secured Parties' consent (or deemed consent) to the use of Prepetition Secured Notes Collateral (including Cash Collateral) as and to the extent expressly set forth herein, and (iii) the DIP Secured Parties' and the Prepetition Secured Parties' agreement to the payment of expenses of the administration of these cases, subject to the Approved Budget (subject to Permitted Variances), in accordance with the terms of this Final Order and the Replacement DIP Loan Documents, (A) the Replacement DIP Loan Parties waive their right to surcharge any costs or expenses incurred in connection with the preservation, protection or enhancement of, or realization by the Replacement DIP Secured Parties or the DIP Collateral, whether pursuant to section 506(c) of the Bankruptcy Code or otherwise, and the Replacement DIP Secured Parties shall not be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral, and (B)(1) the Replacement DIP Loan Parties waive their right to surcharge any costs or expenses incurred in connection with the preservation, protection or engagement of, or realization by the Prepetition Secured Parties or the Prepetition Secured Notes Collateral, whether under section 506(c) of the Bankruptcy Code or otherwise, (2) the Prepetition Secured Parties shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and in no event shall the "equities of the case" exception in section 552(b) of the Bankruptcy Code apply to the Prepetition Secured

Parties or the Prepetition Secured Notes Collateral, and (3) the Prepetition Secured Parties shall not be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Prepetition Secured Notes Collateral.

(i)     *No Control*. None of the Replacement DIP Secured Parties or the Prepetition Secured Parties control (or have in the past controlled) the Replacement DIP Loan Parties, their properties or operations, have authority to determine the manner in which any Replacement DIP Loan Parties' operations are conducted or are control persons or insiders of the Replacement DIP Loan Parties by virtue of any of the actions taken in connection with, arising under, or related to the Replacement DIP Loan Documents or the Prepetition Secured Notes Documents.

(j)     *Good Faith*. The terms of the Replacement DIP Facility and the Replacement DIP Loan Documents, the terms of adequate protection granted to the Prepetition Secured Parties under the Interim Order, and the terms upon which the Debtors may continue to use Prepetition Secured Notes Collateral (including Cash Collateral) pursuant to the terms of the Original Interim Order (as it relates to the Prepetition Secured Parties), the Interim Order, this Final Order, and the Replacement DIP Loan Documents (as applicable), were negotiated in good faith and at arm's length among the Replacement DIP Loan Parties, the Replacement DIP Secured Parties, the Prepetition Secured Parties, and their respective Representatives, and all of the Replacement DIP Loan Parties' obligations and indebtedness arising under, in respect of, or in connection with, the Replacement DIP Facility, the Replacement DIP Loan Documents, the Original Interim Order (as it relates to the Prepetition Secured Parties), the Interim Order and this Final Order, including all loans, advances, extensions of credit and other financial accommodations made to and guarantees issued by the Replacement DIP Loan Parties pursuant to

the Replacement DIP Loan Documents, shall each be deemed to have been extended by the

Replacement DIP Secured Parties and each of their respective affiliates, in good faith, as that term

is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections

offered by sections 364(e) of the Bankruptcy Code, and each of the claims, liens and security

interests, rights, remedies, benefits and protections granted to the Replacement DIP Secured

Parties and the Prepetition Secured Parties (and their successors and assigns) pursuant to the

Original Interim Order (as it relates to the Prepetition Secured Parties), the Interim Order, this

Final Order and the Replacement DIP Loan Documents (including the DIP Liens, the DIP

Superpriority Claims, the DIP Obligations and the Noteholder Adequate Protection Obligations)

shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that

the Original Interim Order (as it relates to the Prepetition Secured Parties), the Interim Order or

this Final Order or any provision hereof is vacated, reversed, or modified, on appeal or otherwise.

The Prepetition Secured Parties have acted in good faith, and each of the claims, liens and security

interests, rights, remedies, benefits and protections granted to the Prepetition Secured Parties (and

their successors and assigns) pursuant to the Original Interim Order, the Interim Order and this

Final Order (including, without limitation, all Noteholder Adequate Protection Liens, Noteholder

Adequate Protection Claims, and Noteholder Adequate Protection Obligations) shall be entitled to

the full protection of section 363(m) of the Bankruptcy Code in the event that this Final Order or

any provision hereof is vacated, reversed, or modified, on appeal or otherwise.

(k)     *Proper Exercise of Business Judgment.* Based on the Motion, the

Replacement DIP Declarations, the record presented to the Court at the Interim Hearing, the Final

Hearing and the Chapter 11 Cases, the terms of the Replacement DIP Facility and the Replacement

DIP Loan Documents, the terms of adequate protection granted to the Prepetition Secured Parties

as set forth in the Original Interim Order and the Interim Order, and the terms upon which the Debtors may continue to use Prepetition Secured Notes Collateral (including Cash Collateral) pursuant to the terms of the Original Interim Order, the Interim Order and this Final Order and the Replacement DIP Loan Documents (as applicable) (i) were negotiated in good faith and at arm's length among the Replacement DIP Loan Parties, the Replacement DIP Secured Parties and the Prepetition Secured Parties, (ii) are fair, reasonable, and the best available to the Debtors under the circumstances, (iii) reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and (iv) are supported by reasonably equivalent value and fair consideration.

(l) *Notice*. Proper, timely, sufficient and appropriate notice of the Motion and the Interim Hearing and the Final Hearing has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules, and no other or further notice of the Motion, the Interim Hearing, the Final Hearing or the entry of this Final Order shall be required.

(m) *Immediate Entry; Relief Essential.* The Debtors have requested, and the Court hereby finds that sufficient cause exists for, the immediate entry of this Final Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and the Local Bankruptcy Rules. Unless the relief set forth in this Final Order is granted, the Debtors' estates will be irreparably harmed. Consummation of the Replacement DIP Facility and the use of Prepetition Secured Notes Collateral (including Cash Collateral) upon the terms set forth in the Original Interim Order, this Final Order and the Replacement DIP Loan Documents (as applicable) are necessary to preserve and maximize the value of the Debtors, are in the best interests of the Debtors and their estates, and are consistent with the Debtors' exercise of their fiduciary duties.

**NOW THEREFORE**, based upon the foregoing findings and conclusions, the Motion, the First Day Declaration, the Replacement DIP Declaration, the evidence adduced at the Interim

Hearing and the Final Hearing and the record before the Court, and after due consideration, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.     *Motion Granted.* The Motion is hereby granted on a final basis, and the Replacement DIP Facility and the use of Cash Collateral are hereby authorized and approved on a final basis, in each case, upon the terms and conditions set forth in this Final Order, including as set forth in the Replacement DIP Loan Documents. Any objections to any of the relief set forth in this Final Order that have not been withdrawn, waived, or settled, and all reservations of rights or other statements inconsistent with this Final Order, are hereby denied and overruled. This Final Order shall become effective and enforceable immediately upon its entry.

2.     *Authorization of Replacement DIP Facility and Replacement DIP Loan Documents.*

     (a)     *Authorization of Replacement DIP Loan Documents.* The Replacement DIP Loan Parties were authorized upon the entry of the Interim Order, and are hereby authorized on a final basis, to (i) execute, deliver, enter into and perform all of their obligations, and to calculate and pay all fees, costs, expenses, indemnities and other amounts contemplated, under the Replacement DIP Loan Documents and this Final Order, and (ii) perform all acts, to make, execute, deliver, enter into and perform under any and all other agreements, instruments, certificates, and other documents (including the execution and/or recordation of any collateral, pledge and security documents, mortgages, deeds of trust, control agreements, financing statements or other documents), and to perform all such other and further acts, that may be necessary, required or desirable for the Replacement DIP Loan Parties to perform their obligations

under the Replacement DIP Facility, the Replacement DIP Loan Documents and this Final Order and to implement the transactions contemplated thereunder and hereunder.

(b)     *Authorization to Borrow.* The Replacement DIP Borrowers were, pursuant to the Interim Order, and are hereby authorized to borrow on a final basis, and the Replacement DIP Guarantors were, pursuant to the Interim Order, and are hereby authorized to jointly and severally guarantee the payment in full in cash of such borrowing with respect to, the principal amount of $70 million (inclusive of amounts borrowed pursuant to the Interim Order), plus applicable interest (including interest and other amounts payable-in-kind), premiums, payments, fees (including professional fees and expenses), costs, expenses, charges and other amounts payable under this Final Order and the Replacement DIP Loan Documents in connection with such borrowing), under the Replacement DIP Facility, subject to the terms and conditions (including any conditions precedent to such borrowing) set forth in the Replacement DIP Loan Documents and this Final Order. The Debtors are hereby authorized to use the proceeds of the Replacement DIP Facility and all Cash Collateral solely in the manner and for the purposes expressly permitted in the Approved Budget (subject to Permitted Variances), the Replacement DIP Loan Documents and this Final Order. All actions taken prior to the date hereof by the Debtors, the Replacement DIP Secured Parties, the Original DIP Agent, the Original DIP Lenders and the Prepetition Secured Parties in accordance with or reliance upon the Original Interim Order, the Interim Order and/or this Final Order are hereby ratified and approved.

(c)     *Payment of Fees and Expenses.* The Replacement DIP Loan Parties were, pursuant to the Interim Order, and are hereby authorized and directed to pay any and all (i) fees payable under the Replacement DIP Loan Documents, including the Upfront Payment, the Exit Premium, the Extension Fee and the Monthly DIP Agent Fee (each as defined in the Replacement

DIP Loan Documents), and each shall not be subject to reduction, setoff or recoupment, and each of which was deemed fully earned upon the occurrence of the Closing Date following entry of the Interim Order, (ii) amounts due (or that may become due) in respect of any and all indemnification obligations under the Replacement DIP Loan Documents, and (iii) from and after the entry of the Interim Order, any other amounts payable in connection with the Replacement DIP Facility and the Prepetition Secured Notes, including the payment of all out-of-pocket costs, expenses and disbursements of the Replacement DIP Secured Parties and Prepetition Secured Parties, including (A) the reasonable and documented fees and expenses of (1) Choate, Hall & Stewart LLP ("**Choate**"), as counsel to the Replacement DIP Secured Parties and (2) any other professionals that may be retained by the Replacement DIP Lender (with the consent of the Replacement DIP Borrowers, such consent not to be unreasonably withheld or delayed, which consent of the Replacement DIP Borrowers shall not be required after the occurrence of a DIP Termination Event (as defined below) (collectively, the "***DIP Professional Fees and Expenses***")), and (B) the reasonable and documented fees and expenses (whether or not such costs, fees and expenses arose before, on or after the Petition Date or the date of the Interim Order or this Final Order, and whether or not the Replacement DIP Facility closes or the Replacement DIP Facility is subsequently terminated or repaid) of (1) the Prepetition Agents, including the reasonable and documented fees and expenses of Shipman & Goodwin LLP, counsel to the Prepetition Agents, and (2) the fees and expenses of the ad hoc group of certain Prepetition Secured Noteholders (the "***Ad Hoc Group***"), including (x) Paul Hastings LLP, as counsel to the Original DIP Lenders and the Ad Hoc Group and (y) Moelis & Company, LLC ("***Moelis***"), as investment banker and financial advisor to the Original DIP Lenders and the Ad Hoc Group, pursuant to the terms of that certain letter agreement by and among Core Scientific and Moelis (collectively, the "***Noteholder Professional Fees and***

*Expenses*"). Notwithstanding the foregoing, the Replacement DIP Loan Parties shall be authorized to make the foregoing payments whether or not the Replacement DIP Facility is consummated unless the Court rules that, with respect to <u>clause (iii)(A)</u> only, the Replacement DIP Lender has (x) materially breached its obligations under any Replacement DIP Loan Document or (y) failed to fund the Replacement DIP Loans as required under the Replacement DIP Loan Documents.

(d)     *Modification of Replacement DIP Loan Documents.* The Replacement DIP Loan Parties are hereby authorized to execute, deliver and perform under one or more amendments, waivers, consents, or other modifications (including, for the avoidance of doubt, the payment of any amendment fee, consent fee, waiver fee or similar fee paid or payable in connection therewith) to and under the Replacement DIP Loan Documents, in each case, in accordance with the provisions thereof governing amendments thereto, each without further application to or order of the Court; *provided* that any amendment to the Replacement DIP Credit Agreement shall require, at a minimum, the prior written consent of the Replacement DIP Lender; *provided*, *further*, that any amendment that (a) shortens the maturity of the extensions of credit thereunder, (b) increases the aggregate commitments thereunder, (c) increases the rate of interest payable with respect thereto, or (d) any other material amendment, modification or waiver (each, a "***Material DIP Amendment***"), shall be provided (which may be by electronic mail) to the U.S. Trustee and lead restructuring counsel to the Official Committee and the Ad Hoc Group and filed with the Court no later than three (3) Business Days prior to the anticipated date of effectiveness of any such Material DIP Amendment, and if no objection to the Material DIP Amendment is made by the U.S. Trustee, the Ad Hoc Group or the Official Committee within such three (3) Business Day period, then, without further application to or order of the Court, such Material DIP Amendment shall automatically be deemed approved and effective; *provided*, *further*, that, if an objection is made

by the U.S. Trustee, the Ad Hoc Group or the Official Committee within such three (3) Business Day period, then such Material DIP Amendment shall be subject to a hearing and approval of the Court. Any amendment to the Replacement DIP Facility that does not constitute a Material DIP Amendment shall be provided as soon as reasonably practical prior to execution to lead restructuring counsel to the Official Committee and the Ad Hoc Group. Notwithstanding the foregoing or anything contained in the Replacement DIP Loan Documents or this Final Order to the contrary, in no event shall the Replacement DIP Loan Documents or this Final Order be amended, modified or supplemented in a manner that adversely affects the rights, liens, security interests, claims, benefits and protections of the Prepetition Secured Parties hereunder or under the Prepetition Secured Notes Documents without the prior written consent of the Ad Hoc Group or approval from this Court (upon notice to the Ad Hoc Group and a hearing).

(e)     *DIP Funding Account*. Upon entry of the Interim Order, the Replacement DIP Borrower was (and hereby is) authorized and directed to establish a new bank account or use an existing bank account (the "***Replacement DIP Funding Account***"), which shall be subject to a control agreement put in place by the Replacement DIP Borrower promptly after the entry of this Final Order (and in any event, within ten (10) Business Days of entry of this Final Order), in form and substance acceptable to the Replacement DIP Agent, and shall at all times be and remain subject to the control of the Replacement DIP Agent. Subject to the Carve-Out, and subject in all respects to paragraph 44 of this Final Order, the proceeds of all DIP Borrowings under the Replacement DIP Facility, and all cash receipts, and all proceeds from the sale or other disposition of, or other revenue of any kind attributable to, any DIP Collateral that is now in, or shall hereafter come into, the possession or control of any of the Replacement DIP Loan Parties, or to which any of the Replacement DIP Loan Parties is now or shall hereafter become entitled, shall be deposited

into the DIP Funding Account, and all cash and other amounts held in or credited to the DIP
Funding Account may not be withdrawn or used by the Replacement DIP Loan Parties other than
as expressly permitted hereunder or in the Replacement DIP Loan Documents (subject in all
respects to paragraph 44 of this Final Order).

> (f)     *Perfection in Cash*. Subject to the Carve-Out, and subject to the terms of
this Final Order and the Replacement DIP Loan Documents, all financial institutions with which
the Replacement DIP Loan Parties maintain accounts containing any of the Replacement DIP Loan
Parties' cash that constitutes DIP Collateral are authorized and directed to comply with any request
of the Replacement DIP Agent to turn over to the Replacement DIP Agent all cash therein without
offset or deduction of any kind; *provided* that the foregoing shall be subject in all respects to
paragraph 44 of this Final Order. The Replacement DIP Agent shall be entitled to all of the rights
and benefits of all deposit account control agreements, blocked account control agreements,
securities account control agreements, and similar agreements to which any of the Replacement
DIP Loan Parties may be a party, without the need to enter into any such agreements.
Notwithstanding (and without limiting) the foregoing, the Replacement DIP Loan Parties are
authorized to enter into, and cause the financial institutions servicing or maintaining the
Replacement DIP Loan Parties' deposit accounts (or other accounts) to enter into, such deposit
account control agreements and other collateral agreements with the Replacement DIP Agent and
such financial institutions as the Replacement DIP Agent may reasonably request.

> 3.     *Replacement DIP Obligations.*

> (a)     Upon execution and delivery of the Replacement DIP Loan Documents, the
Replacement DIP Loan Documents shall constitute valid, binding, enforceable, and non-avoidable
obligations of each of the Replacement DIP Loan Parties, and shall be fully enforceable against

each of the Replacement DIP Loan Parties, their estates, and any successors thereto, including any estate representative or trustee appointed in any of the Chapter 11 Cases or in any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Chapter 11 Cases, or in any other proceedings superseding or relating to any of the foregoing, and/or upon the dismissal of any of the Chapter 11 Cases or any such successor cases (collectively, the "***Successor Cases***"), in each case, in accordance with the terms of the Replacement DIP Loan Documents and this Final Order.

(b)      Upon execution and delivery of the Replacement DIP Loan Documents, the Replacement DIP Loan Parties shall continue to be jointly and severally liable for all Replacement DIP Obligations, including all loans, advances, indebtedness, obligations, extensions of credit, financial accommodations, principal, interest, payments, premiums or similar amounts, fees, costs, expenses, charges, indemnification and reimbursement obligations (whether contingent or absolute), and all other amounts, whenever the same shall become due and payable, whether at stated maturity, by required prepayment, declaration, acceleration, demand or otherwise, to the Replacement DIP Agent or the Replacement DIP Lender under the Replacement DIP Loan Documents or this Final Order. The Replacement DIP Obligations shall be due and payable, without notice or demand on the DIP Termination Declaration Date (as defined below) (subject to paragraph 20(b) hereof).

(c)      All obligations incurred, payments made, and transfers or grants of liens and security interests set forth in the Original Interim Order, the Interim Order, this Final Order and the Replacement DIP Loan Documents by the Replacement DIP Loan Parties, were, pursuant to the Interim Order, and hereby are granted to or for the benefit of the Replacement DIP Loan Parties for fair consideration and reasonably equivalent value and are granted contemporaneously with the making of the loans and commitments and other financial accommodations secured

thereby. No obligation, payment, transfer, or grant of liens or security interests under the Original Interim Order, the Interim Order, this Final Order or the Replacement DIP Loan Documents to the Replacement DIP Secured Parties or the Prepetition Secured Parties shall be limited, stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable law, or subject to any challenge, objection, defense or claim, including avoidance (whether under chapter 5 of the Bankruptcy Code or under applicable law (including any applicable state law Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law)), reduction, setoff, offset, recoupment, recharacterization, subordination (whether equitable, contractual or otherwise), reclassification, disgorgement, disallowance, impairment, marshalling, surcharge, recovery or other cause of action of any kind or nature whatsoever, whether arising under the Bankruptcy Code, applicable non-bankruptcy law or otherwise (subject, solely in the case of the DIP Professional Fees and Expenses and the Noteholder Professional Fees and Expenses, only to the procedures set forth in paragraph 11 of this Final Order).

4.      *No Obligation to Extend Credit.* The Replacement DIP Secured Parties shall have no obligation to make any loan or advance available under the Replacement DIP Loan Documents unless all of the conditions precedent to the making of such loan or advance by the Replacement DIP Secured Parties have been satisfied in full (or waived) in accordance with the terms of the Replacement DIP Loan Documents and this Final Order.

5.      *No Duty to Monitor Compliance.* None of the Replacement DIP Secured Parties nor the Prepetition Secured Parties shall have any obligation or responsibility to monitor the Debtors' use of DIP Collateral, the Prepetition Secured Notes Collateral, or Cash Collateral, and each of the DIP Secured Parties and the Prepetition Secured Parties may rely upon the Debtors' representations that the use of DIP Collateral, Prepetition Secured Notes Collateral, and Cash

Collateral complies with and is in accordance with the requirements of this Final Order and the Replacement DIP Loan Documents (as applicable).

6.    *DIP Liens.*

(a)    As security for the prompt and complete payment and performance of all Replacement DIP Obligations when due (whether upon stated maturity, prepayment, acceleration, declaration or otherwise), effective and perfected as of the entry of the Interim Order, and without the necessity of the execution, recordation or filing by any of the Replacement DIP Loan Parties or the Replacement DIP Secured Parties of any pledge, collateral or security documents, mortgages, deeds of trust, financing statements, notations of certificates of title, or any similar document or instrument, or the taking of any other action (including entering into any control agreements or taking any other action to take possession or control of any DIP Collateral), the Replacement DIP Agent, for the benefit of itself and the Replacement DIP Lender, was, pursuant to the Interim Order, and hereby is granted, on a final basis, valid, binding, enforceable, non-avoidable, and automatically and properly perfected liens and security interests (collectively, the "**DIP Liens**") in all DIP Collateral, in each case, subject and subordinate to the Carve-Out, and subject to the relative priorities set forth in this Final Order.

(b)    The term "**DIP Collateral**" means (i) all assets and properties (or interest therein) of each of the Replacement DIP Loan Parties and their estates, of any kind or nature whatsoever, wherever located, whether tangible or intangible, real, personal or mixed, whether now owned or consigned by or to, or leased from or to, or hereafter acquired by, or arising in favor of, each of the Replacement DIP Loan Parties (including under any trade names, styles or derivations thereof), whether prior to or after the Petition Date, that is not subject to any liens and security interests that were valid, non-avoidable and properly perfected as of the Petition Date (or

that were properly perfected subsequent to the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code), limited, with respect to all real property and the facilities, to the facility located in Marble, North Carolina, and not including Avoidance Actions (as defined below) (the "*First-Priority DIP Collateral*"), (ii) all assets and properties (or interest therein) of the Replacement DIP Loan Parties' estates (whether tangible, intangible, real, personal or mixed and wherever located) as of the Petition Date that (A) are subject to the Prepetition Secured Notes Liens, (B) are subject to the Prepetition Equipment Financing Liens, (C) are subject to other valid, perfected, and non-avoidable liens in existence as of the Petition Date (including mortgages, mechanics' liens and fixture filings), limited, with respect to all real property and the facilities, to those located in Calvert City, Kentucky; Grand Forks, North Dakota; Muskogee, Oklahoma; Barstow, Texas (Cedarvale); Pecos, Texas (Cottonwood); and Dalton, Georgia, or (D) are subject to other valid liens in existence on the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code (collectively, the "*Junior-Priority DIP Collateral*"), (iii) upon entry of this Final Order, the proceeds of any causes of actions for preferences, fraudulent conveyances, and other avoidance power claims under sections 502(d), 544, 545, 547, 548, and 550 of the Bankruptcy Code (the "*Avoidance Actions*") (but not, for the avoidance of doubt, the Avoidance Actions themselves), and (iv) any and all rents, issues, products, offspring, proceeds, and profits generated by any item of DIP Collateral, without the necessity of any further action of any kind or nature by the Replacement DIP Agent or the Replacement DIP Lender in order to claim or perfect such rents, issues, products, offspring, proceeds, and/or profits. For the avoidance of doubt, the Replacement DIP Secured Parties shall not have a lien on and the DIP Collateral shall not include (A) any cash or certificate of deposit in the deposit account at City National Bank ending in account number 7589 that secures credit card

obligations pursuant to the *Final Order (I) Authorizing Debtors to (A) Continue Their Existing Cash Management System, (B) Maintain Existing Business Forms and Intercompany Arrangements, (C) Continue Intercompany Transactions, and (D) Continue Utilizing Employee Credit Cards; and (II) Granting Related Relief* [Docket No. 332] or (B) any cash held as collateral for the benefit for the Debtors' surety providers, International Fidelity Insurance Company, Harco National Insurance Company, and/or Allegheny Casualty Company in connection with the Debtors' customs bonds, as authorized pursuant to the *Final Order (I) Authorizing Debtors to (A) Continue Insurance Programs and Surety Bond, and (B) Pay Certain Obligations with Respect thereto; (II) Granting Relief from Automatic Stay with Respect to Workers' Compensation Claims; and (III) Granting Related Relief* [Docket No. 118].

(c)      The DIP Liens shall be subject to the following priorities (subject in each case to the Carve-Out):

(i)      *First-Priority Liens on Unencumbered Property.* Pursuant to section 364(c)(2) of the Bankruptcy Code, the DIP Liens shall be valid, binding, continuing, enforceable, non-avoidable, fully and automatically perfected first-priority liens and security interests in all First-Priority DIP Collateral (the "***Frist-Priority DIP Liens***"), which First-Priority DIP Liens shall be junior and subordinated only to the Carve-Out.

(ii)      *Liens Junior to Certain Other Liens.* Pursuant to sections 364(c)(3) of the Bankruptcy Code, the DIP Liens shall be valid, binding, continuing, enforceable, non-avoidable, fully and automatically perfected liens and security interests in all Junior-Priority DIP Collateral (the "***Junior-Priority DIP Liens***"), which Junior-Priority DIP Liens in such Junior Priority DIP Collateral shall be subject only to the (a) Carve-Out, in all respects, and, as applicable (b)(1) the Prior Senior Liens, (2) the Equipment Lender Adequate Protection Liens and the Prepetition Equipment Financing Liens in Prepetition Equipment Financing Collateral, and (3) the Prepetition Secured Notes Liens and the Noteholder Adequate Protection Liens in the Prepetition Secured Notes Collateral.

(d)      To the maximum extent permitted by the Bankruptcy Code, any provision of any lease, loan document, easement, use agreement, proffer, covenant, license, contract, organizational document or other agreement that requires the consent or approval of one or more landlords, licensors or other parties, or requires the payment of any fees or obligations to any

governmental entity, non-governmental entity or any other person or entity, in order for any Debtor to pledge, grant, mortgage, sell, assign, or otherwise transfer any interest therein (including any fee or leasehold interest), any proceeds thereof or other DIP Collateral, shall be deemed inconsistent with the provisions of the Bankruptcy Code and shall have no force or effect with respect to the granting of the DIP Liens or Adequate Protection Liens (as defined below) in any such interest therein or other DIP Collateral, or in the proceeds of any assignment and/or sale thereof by any Debtor in favor of the Replacement DIP Secured Parties in accordance with the DIP Loan Documents and this Final Order.

(e)     For the avoidance of doubt and notwithstanding anything contrary herein or in the Replacement DIP Credit Agreement, the DIP Liens shall not prime or rank *pari passu* with (i) the Prepetition Secured Notes Liens in the Prepetition Secured Notes Collateral, or (ii) the Prepetition Equipment Financing Liens that are Prior Senior Liens.

7.     *DIP Superpriority Claims.* Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the Replacement DIP Obligations shall constitute allowed superpriority administrative expense claims against each of the Debtors, with priority over any and all other claims against the Debtors, now existing or hereafter arising, of any kind or nature whatsoever, including any and all other administrative expense claims of the kind specified in or ordered pursuant to sections 105, 326, 327, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113, or 1114 of the Bankruptcy Code, or any other provision of the Bankruptcy Code (including the Adequate Protection Claims and any other Adequate Protection Obligations), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment (the "***DIP Superpriority Claims***"), subject only to the Carve-Out. The DIP Superpriority Claims shall, for purposes of section 1129(a)(9)(A) of the Bankruptcy Code, be considered administrative expenses

allowed under section 503(b) of the Bankruptcy Code. The DIP Superpriority Claims shall be payable by each of the Debtors, on a joint and several basis, and shall have recourse to all DIP Collateral, subject only to the Carve-Out and Prior Senior Liens. The DIP Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code, including in the event that this Final Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

8.      *Use of DIP Collateral and Cash Collateral.*

(a)      The Debtors were, pursuant to the Interim Order, and are hereby authorized on a final basis, to use the proceeds of the Replacement DIP Loans and all Cash Collateral solely to the extent expressly permitted under the Approved Budget (subject to Permitted Variances) and subject to the terms and conditions set forth in the Replacement DIP Loan Documents and this Final Order; *provided* that the Prepetition Secured Parties are granted adequate protection as set forth herein.

(b)      Without the prior written consent of the Replacement DIP Lender, the Replacement DIP Loan Parties shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of the DIP Collateral (or enter into any binding agreement to do so), except as may be expressly permitted by the Replacement DIP Loan Documents and this Final Order.

(c)      Without either (i) the prior written consent of the Ad Hoc Group or (ii) a further order of this Court, the Replacement DIP Loan Parties shall not sell, transfer, lease, encumber, or otherwise dispose of DIP Collateral that constitutes Prepetition Secured Notes Collateral and/or proceeds, products, offspring, or profits thereof; *provided* that any such order shall provide that the Prepetition Secured Notes Liens shall attach to the proceeds of such disposition with the same rights and priorities in existence as of immediately prior to such

disposition; *provided*, *further*, that nothing in this paragraph 8(c) shall restrict the disposition by the Replacement DIP Loan Parties of DIP Collateral that constitutes Prepetition Secured Notes Collateral and/or proceeds, products, offspring, or profits thereof in the ordinary course of business.

(d)     All collection and proceeds of DIP Collateral, whether from ordinary course collections, asset sales, debt or equity issuances, insurance recoveries, condemnation, or otherwise, will be deposited and applied as required by this Final Order and the Replacement DIP Loan Documents; *provided* that the foregoing shall be subject in all respects to paragraph 44 of this Final Order. The Debtors shall not transfer any cash, assets, properties or other DIP Collateral to any Replacement DIP Loan Party or other affiliate of the Debtors that is not a Debtor in the Chapter 11 Cases without the prior written consent of the Replacement DIP Lender and the Ad Hoc Group, each in their discretion.

(e)     The Debtors were, pursuant to the Interim Order, and are hereby authorized to use the proceeds of all Cash Collateral as set forth in and subject to the terms and conditions set forth in this Final Order; *provided* that the Prepetition Secured Parties are granted adequate protection as set forth herein.

(f)     Except as may be provided in the Replacement DIP Loan Documents, the Debtors were, pursuant to the Interim Order, and are authorized and directed, upon the closing of a sale of any of the First-Priority DIP Collateral, to immediately pay all proceeds of any such sale to the Replacement DIP Agent, for the benefit of itself and the Replacement DIP Lender, to satisfy the Replacement DIP Obligations in accordance with this Final Order and the Replacement DIP

Loan Documents until Paid in Full,[6] and any order approving the sale of such First-Priority DIP Collateral shall provide that the sale is conditioned upon the payment of such Replacement DIP Obligations (except to the extent otherwise agreed in writing by the Replacement DIP Lender); *provided* that notwithstanding the foregoing, and notwithstanding anything to the contrary in the Replacement DIP Loan Documents or this Final Order, the proceeds of any disposition of assets subject to one or more Prior Senior Liens or Prepetition Secured Notes Liens shall be payable on account of Replacement DIP Obligations only after the obligations secured by such Prior Senior Liens or Prepetition Secured Notes Liens (as the case may be) have been Paid in Full or sufficient funds have been segregated to provide for such Payment in Full in an account for the sole benefit of the Prepetition Secured Noteholders or holders of Prior Senior Liens (as the case may be).

9. *Approved Budget.* The DIP Loan Parties shall comply at all times with the Approved Budget then in effect (subject to Permitted Variances). Any amendments, supplements or updates to the Initial Budget (or any subsequent Approved Budget) (each, a "**Budget Supplement**") shall be subject to the prior approval of (a) the Replacement DIP Lender in accordance with the Replacement DIP Loan Documents) and (b) subject to the Budget Resolution Right, the Ad Hoc Group, at the same times and upon the same conditions applicable to the Replacement DIP Agent or Replacement DIP Lender as set forth in the Replacement DIP Loan Documents (as currently in effect, without giving effect to any amendments or modifications thereto), and, in each case, any such Budget Supplement shall not constitute an "Approved Budget" unless and until it is so approved by the Replacement DIP Lender and, subject to the Budget

---

[6] For purposes hereof, the term "**Paid in Full**" or "**Payment in Full**" means, with respect to the Replacement DIP Obligations or the Prepetition Secured Notes Obligations (as the case may be), the irrevocable and indefeasible payment in full in cash of all Replacement DIP Obligations or Prepetition Secured Notes Obligations (as the case may be), other than contingent indemnification and expense reimbursement obligations for which no claim or demand has been asserted, and all commitments thereunder shall have irrevocably, permanently and finally expired or shall have been terminated, cancelled and discharged.

Resolution Right, the Ad Hoc Group (and until any such Budget Supplement is approved by the Replacement DIP Lender and, subject to the Budget Resolution Right, the Ad Hoc Group, the prior Approved Budget shall remain in effect). Notwithstanding anything contained herein to the contrary, the Debtors are hereby authorized and directed to pay all Replacement DIP Obligations as such obligations become due under this Final Order and the Replacement DIP Loan Documents, including all DIP Professional Fees and Expenses, regardless of whether payment of such amounts is authorized under the Approved Budget, and, notwithstanding anything contained in this Final Order to the contrary, (i) such Replacement DIP Obligations and such DIP Professional Fees and Expenses shall not be tested for variance purposes related to the Approved Budget and (ii) the payment of the Replacement DIP Obligations in accordance with the terms thereof shall not, in and of itself, be the basis for a Cash Collateral Termination Event.

10.     *Adequate Protection*. The Prepetition Secured Parties are entitled, pursuant to sections 361, 362, 363(e), 364(d)(1) and 507 of the Bankruptcy Code, whether or not the Replacement DIP Facility is consummated or is subsequently terminated or repaid, to adequate protection of their Prepetition Secured Notes Liens in Prepetition Secured Notes Collateral (including Cash Collateral), as follows (the liens, security interests, payments and other obligations set forth in this paragraph 10, and the payment obligations with respect to the Noteholder Professional Fees and Expenses under the Original Interim Order, the Interim Order and hereunder, are collectively referred to herein as the "***Noteholder Adequate Protection Obligations***"):

(a)     *Noteholder Adequate Protection Claims.* The Prepetition Agents, for their own benefit and for the benefit of the Prepetition Secured Noteholders, were, by the Original Interim Order and the Interim Order, and are hereby granted, on a final basis, in the amount of any aggregate Diminution in Value of the Prepetition Secured Notes Liens in the Prepetition Secured

Notes Collateral (including Cash Collateral) from and after the Petition Date, superpriority administrative expense claims contemplated by section 507(b) of the Bankruptcy Code against each of the Debtors (the "***Noteholder Adequate Protection Claims***"), which shall be payable by each of the Debtors on a joint and several basis, and shall have recourse to all DIP Collateral, subject to the terms hereof and priorities set forth herein. The Noteholder Adequate Protection Claims shall be (a) subject and subordinate only to the Carve-Out and the DIP Superpriority Claims, (b) *pari passu* with the Equipment Lender Adequate Protection Claims (as defined below), and (c) senior to any and all other administrative expense claims and all other claims against the Debtors and their estates, now existing or hereafter arising, of any kind or nature whatsoever.

(b)      *Noteholder Adequate Protection Liens.* The Prepetition Agents, for the benefit of themselves and for the benefit of the Prepetition Secured Noteholders, were, by the Original Interim Order and the Interim Order, and are hereby granted, on a final basis, effective and perfected as of the entry of the Original Interim Order, and without the necessity of the execution, recordation or filing by any of the Prepetition Secured Parties of any pledge, collateral or security documents, mortgages, deeds of trust, financing statements, notations of certificates of title for titled goods, or any similar document or instrument, or the taking of any other action (including entering into any control agreements or taking possession or control of any DIP Collateral or Prepetition Secured Notes Collateral), in the amount of any aggregate Diminution in Value of the Prepetition Secured Notes Liens in the Prepetition Secured Notes Collateral (including Cash Collateral) from and after the Petition Date, valid, binding, enforceable and automatically perfected post-petition liens and security interests in all DIP Collateral (the "***Noteholder Adequate Protection Liens***"). The Noteholder Adequate Protection Liens shall be (i) junior and subordinated only to (A) the Carve-Out, (B) the Prior Senior Liens, (C) the First-

Priority DIP Liens in First-Priority DIP Collateral, (D) the Junior-Priority DIP Liens in Junior-Priority DIP Collateral (other than the Prepetition Secured Notes Collateral), and (E) the Equipment Lender Adequate Protection Liens in the Prepetition Equipment Financing Collateral, (ii) *pari passu* with the Equipment Lender Adequate Protection Liens in the First-Priority DIP Collateral and *pari passu* with the Equipment Lender Adequate Protection Liens in the Junior-Priority DIP Collateral (other than Prepetition Equipment Financing Collateral and the Prepetition Secured Notes Collateral), and (iii) senior to any and all other liens and security interests in the DIP Collateral, including the Equipment Lender Adequate Protection Liens in the Prepetition Secured Notes Collateral.

(c)     *Reporting.* The Debtors shall contemporaneously provide the Prepetition Agents, the Ad Hoc Group (and their respective advisors) with all reports, documents and other information required to be delivered to the Replacement DIP Secured Parties under the Replacement DIP Loan Documents (as currently in effect, or pursuant to any additional requirements that may be added after the date hereof, whether or not the Replacement DIP Facility is subsequently terminated or repaid, unless the Court orders otherwise) and this Final Order.

(d)     *Cash Management.* The Replacement DIP Loan Parties shall maintain their cash management arrangements in a manner consistent with those described in the applicable "first-day" order, which shall be in form and substance reasonably acceptable to the Replacement DIP Lender and the Ad Hoc Group.  The DIP Loan Parties shall not open any new deposit or securities account that is not subject to the liens and security interests of each of the Replacement DIP Secured Parties (in which case they shall be subject to the lien priorities and other provisions set forth in this final Order).

(e)     *Compliance with Approved Budget*. The Replacement DIP Loan Parties shall comply with the Approved Budget, subject to Permitted Variances, as set forth in the Replacement DIP Loan Documents.

(f)     *Survival of Adequate Protection Obligations*. Notwithstanding anything contained in this Final Order or the Replacement DIP Loan Documents to the contrary, the Adequate Protection Obligations to the Prepetition Secured Parties and the Prepetition Equipment Lenders shall survive termination or repayment of the Replacement DIP Facility.

11.     *Fees and Expenses; Payments.*

(a)     The payment of all DIP Professional Fees and Expenses and Noteholder Professional Fees and Expenses hereunder shall not be subject to further application to or approval of the Court, and shall not be subject to allowance or review by the Court or subject to the U.S. Trustee's fee guidelines, and no attorney or advisor to the Replacement DIP Secured Parties shall be required to file an application seeking compensation for services or reimbursement of expenses with the Court; *provided* that any time such professionals seek payment of fees and expenses from the Debtors prior to the effective date of any chapter 11 plan, each such professional shall provide summary copies of its invoices (which shall not be required to contain time entries and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of their invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine) to lead restructuring counsel to the Debtors, the U.S. Trustee, and lead restructuring counsel to the Official Committee and Ad Hoc Group (collectively, the "**Review Parties**"); *provided* that the U.S. Trustee and the Official Committee and Ad Hoc Group reserve their rights to reasonably request additional detail

regarding the services rendered and expenses incurred by such professionals. Any objections raised by any Review Party with respect to such invoices must be in writing and state with particularity the grounds therefor and must be submitted to the affected professional within ten (10) calendar days after delivery of such invoices to the Review Parties (such ten (10) day calendar period, the "**Review Period**"). If no written objection is received prior to the expiration of the Review Period from the Review Parties, the Debtors shall pay such invoices within three (3) Business Days following the expiration of the Review Period. If an objection is received within the Review Period from the Review Parties, the Debtors shall promptly pay the undisputed amount of the invoice, and the disputed portion of such invoice shall not be paid until such dispute is resolved by agreement between the affected professional and the objecting party or by order of this Court. Any hearing to consider such an objection to the payment of any fees, costs or expenses set forth in a professional fee invoice hereunder shall be limited to the reasonableness of the fees, costs and expenses that are the subject of such objection.

(b)     Notwithstanding anything contained in this paragraph 11 to the contrary, the Replacement DIP Loan Parties shall pay in full in cash all DIP Professional Fees and Expenses and all Noteholder Professional Fees and Expenses incurred after the Closing Date in accordance with and subject to the procedures set forth above in this paragraph 11 of this Final Order.

(c)     Notwithstanding anything contained in this paragraph 11 to the contrary, to the extent any chapter 11 plan filed in the Chapter 11 Cases and confirmed by an order of this Court provides for different procedures for the submission of invoices and payment of professional fees of any professional persons that the Debtors are authorized to pay pursuant to this Final Order, then the procedures set forth in such confirmed chapter 11 plan shall control, provided that no such

professional person shall be subject to more onerous procedures for compensation than are set forth herein.

(d)      Notwithstanding anything contained in this Final Order to the contrary, any and all payments, premiums, fees, costs, expenses and other amounts paid at any time by any of the Replacement DIP Loan Parties to the Original DIP Agent, the Original DIP Lenders, the Replacement DIP Secured Parties or the Prepetition Secured Parties pursuant to the requirements of the Original DIP Loan Documents, the Original Interim Order, the Payoff Letter, the Interim Order, this Final Order or the DIP Loan Documents (as applicable), whether prior to, on or after the Petition Date, shall be non-refundable and irrevocable, are hereby approved (and to the extent paid prior to entry of the Interim Order or this Final Order, ratified in full), and shall not be subject to any challenge, objection, defense, claim or cause of action of any kind or nature whatsoever, including avoidance (whether under chapter 5 of the Bankruptcy Code or under applicable law (including any applicable state law Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law)), reduction, setoff, offset, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise), reclassification, disgorgement, disallowance, impairment, marshaling, surcharge or recovery or any other cause of action, whether arising under the Bankruptcy Code, applicable non-bankruptcy law or otherwise, by any person or entity (subject, solely in the case of the DIP Professional Fees and Expenses and the Noteholder Professional Fees and Expenses, to paragraphs 11(a), (b) and (c) of this Final Order).

(e)      Notwithstanding anything contained in this Final Order to the contrary, all DIP Professional Fees and Expenses and Noteholder Professional Fees and Expenses incurred prior to the entry of this Final Order shall be paid by the Debtors no later than one (1) Business

day after entry of the Final Order, so long as summary invoices of such DIP Professional Fees and Expenses and the Noteholder Professional Fees and Expenses are provided to the to lead restructuring counsel to the Debtors and to counsel to the Official Committee prior to the entry of the Final Order, and such invoices shall not be subject to the review procedures set forth above in paragraphs 11(a) and 11(b) of this Final Order.

12.     *Adequate Protection Reservation of Rights of Prepetition Secured Parties/Prepetition Equipment Lenders.* Notwithstanding any other provision hereof, the grant of adequate protection to the Prepetition Secured Parties and the Prepetition Equipment Lenders pursuant to the Original Interim Order, the Interim Order, and affirmed by this Final Order, shall not be deemed an admission that the interests of such Prepetition Secured Parties or the Prepetition Equipment Lenders are indeed adequately protected, and is without prejudice to the rights of (a) the Prepetition Secured Parties or the Prepetition Equipment Lenders to seek additional relief with respect to the use of Prepetition Secured Notes Collateral (including Cash Collateral), and (b) the Prepetition Equipment Lenders to seek additional relief with respect to the use of Prepetition Equipment Financing Collateral, or to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection (including, among other things, debt service payments), and without prejudice to the right of the Debtors or any other party in interest to contest any such modification. Nothing in the Original Interim Order, the Interim Order or this Final Order shall be deemed to waive, modify or otherwise impair the respective rights of the Prepetition Secured Parties or the Prepetition Equipment Lenders under the Prepetition Secured Notes Documents and the Prepetition Equipment Loan Document, respectively, or under applicable law, and the Prepetition Secured Parties and the Prepetition Equipment Lenders expressly reserve all of their respective rights and remedies whether now

existing or hereafter arising under the Prepetition Secured Notes Documents or the Prepetition Equipment Loan Documents and applicable law. Without limiting the foregoing, and subject only to the Carve-Out, nothing contained in this Final Order shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided hereunder is insufficient to compensate the Prepetition Secured Parties or the Prepetition Equipment Lenders for any Diminution in Value during the Chapter 11 Cases.

      13.    *Refinancing of the Original DIP Credit Agreement.*

      (a)    The Refinancing is hereby affirmed on a final basis as having been approved on a final basis. The Replacement DIP Loan Parties were (pursuant to the Interim Order) authorized and directed (with such authorization and direction hereby affirmed and approved on a final basis) to (i) execute and deliver, and to perform all of their obligations (including contingent expense reimbursement and indemnification obligations) under the Payoff Letter, (ii)(a) indefeasibly repay in full in cash and discharge all Original DIP Obligations owed under the Original DIP Facility in accordance with the Payoff Letter, and (b) indefeasibly pay in full in cash all Original DIP Obligations set forth in the Payoff Letter, in each case, upon the closing of the Replacement DIP Facility (in no event later than five (5) business days following the entry of the Interim Order), and (iii) upon the payment in full in cash of all Original DIP Obligations and the satisfaction of all other conditions set forth in the Payoff Letter, terminate the Original DIP Facility documents, execute, deliver, enter into and, as applicable, perform all actions under such documents as necessary or required (or reasonably requested by the Original DIP Agent) in furtherance of such repayment of the Original DIP Facility and termination of the Original DIP Facility Documents, and take such other and further acts as may be necessary, appropriate or desirable in connection therewith. The liens securing the obligations under the Original DIP

Facility shall be (and, as applicable, were) automatically released and terminated upon the indefeasible and irrevocable repayment in full in cash of all Original DIP Obligations and the satisfaction of all other conditions set forth in the Payoff Letter. The terms and provisions of the Payoff Letter, including the releases set forth therein, were (pursuant to the Interim Order) and are, hereby authorized and approved on a final basis.

(b)      In furtherance of the foregoing and without further approval of this Court, each Replacement DIP Loan Party was (pursuant to the Interim Order) and is authorized to make, execute and deliver all instruments, certificates, agreements, charges, deeds and documents necessary to evidence the repayment of the Original DIP Facility and the release of all security interests, liens, and claims related thereto (including, without limitation, the execution or recordation of documents necessary to release, cancel, or otherwise withdraw and pledge and security agreements, mortgages, financing statements and other similar documents), and to pay all fees and expenses required under the Original DIP Loan Documents in connection therewith in accordance with the Interim Order.

(c)      Notwithstanding anything in the Original Interim Order, the Interim Order, this Final Order, or the Replacement DIP Loan Documents to the contrary, the Refinancing was (pursuant to the Interim Order) and is hereby approved on a final basis, shall be non-refundable and irrevocable, and shall not be subject to any challenge, objection, defense, claim or cause of action of any kind or nature whatsoever, including avoidance (whether under chapter 5 of the Bankruptcy Code or under applicable law (including any applicable state law Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law)), reduction, setoff, offset, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise), reclassification, disgorgement, disallowance, impairment, marshaling, surcharge or

recovery or any other cause of action, whether arising under the Bankruptcy Code, applicable non-bankruptcy law, or otherwise, by any person or entity.

14.     *Reservation of Rights.* Except as otherwise expressly provided herein or in the Replacement DIP Loan Documents, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) the rights of the Replacement DIP Secured Parties, the Prepetition Equipment Lenders, or the Prepetition Secured Parties to seek any other or supplemental relief in respect of the Replacement DIP Loan Parties, (b) the rights of the Replacement DIP Secured Parties, the Prepetition Equipment Lenders, or the Prepetition Secured Parties under the Replacement DIP Loan Documents, the Prepetition Equipment Financing Documents or the Prepetition Secured Notes Documents, the Bankruptcy Code or applicable non-bankruptcy law (as applicable), including the right to request modification of the automatic stay of section 362 of the Bankruptcy Code, or (c) any other rights, claims, or privileges (whether legal, equitable or otherwise) of the Replacement DIP Secured Parties, the Prepetition Equipment Lenders, or the Prepetition Secured Parties.

15.     *Modification of Automatic Stay.* The automatic stay imposed by section 362(a) of the Bankruptcy Code is hereby vacated and modified, without application to or further order of this Court, to permit: (a) the Replacement DIP Loan Parties to grant the DIP Liens and the DIP Superpriority Claims, and to perform such acts as the Replacement DIP Secured Parties may request to assure the perfection and priority of the DIP Liens, (b) the Replacement DIP Loan Parties to incur all liabilities and obligations to the Replacement DIP Secured Parties as contemplated under this Final Order and the Replacement DIP Loan Documents, (c) the Debtors to grant the Adequate Protection Liens and the Adequate Protection Claims, and to perform such reasonable acts as the Prepetition Agents may reasonably request to assure the perfection and

priority of the Adequate Protection Liens, (d) the DIP Loan Parties to incur liabilities and obligations to the Prepetition Secured Parties related to the Adequate Protection Obligations, as contemplated under the Interim Order, (e) the Replacement DIP Secured Parties and the Prepetition Secured Parties to retain and apply payments made in accordance with the terms of this Final Order and the DIP Loan Documents (as applicable), (f) subject to paragraph 20(b) of this Final Order, (i) the Replacement DIP Secured Parties to exercise, upon the occurrence of any DIP Termination Event (as defined below), all rights and remedies provided for in this Final Order, the Replacement DIP Loan Documents, or applicable law and (ii) the Prepetition Secured Parties to exercise, upon the occurrence of any Cash Collateral Termination Event (as defined below), all rights and remedies provided for in this Final Order and applicable law, (g) the Replacement DIP Loan Parties to perform under this Final Order and the Replacement DIP Loan Documents, and to take any and all other actions that may be necessary, required or desirable for the performance by the Replacement DIP Loan Parties under this Final Order and the Replacement DIP Loan Documents and the implementation of the transactions contemplated hereunder and thereunder, and (i) the implementation of all of the terms, rights, benefits, privileges, remedies, and provisions of this Final Order and the Replacement DIP Loan Documents.

16.     *Perfection of DIP Liens and Adequate Protection Liens*.

(a)     This Final Order shall be sufficient and conclusive evidence of the attachment, validity, perfection, and priority of all liens and security interests granted under this Final Order and under the Replacement DIP Loan Documents, including the DIP Liens and the Adequate Protection Liens, without the necessity of the execution, recordation or filing of any pledge, collateral or security agreements, mortgages, deeds of trust, lockbox or control agreements, financing statements, notations of certificates of title for titled goods, or any other document or

Case 22-90341   Document 6071   Filed in TXSB on 01/30/23   Page 50 of 393

instrument, or the taking of any other action (including entering into any deposit account control agreement or other act to take possession or control of any DIP Collateral), to attach, validate, perfect or prioritize such liens and security interests, or to entitle the DIP Secured Parties and the Prepetition Secured Parties to the priorities granted herein (other than, to the extent applicable, any such filings required under applicable non-U.S. law to attach, validate, perfect or prioritize such liens).

(b)      Without in any way limiting the automatically effective perfection of the liens and security interests granted under the Interim Order, this Final Order and the Replacement DIP Loan Documents, the Replacement DIP Agent is hereby authorized, but not required, as they in their sole discretion may determine for any reason, to execute, file and record (and to execute in the name of the Replacement DIP Loan Parties, as their true and lawful attorneys, with full power of submission, to the maximum extent permitted under applicable law) financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or take possession or control over cash or securities (to the extent authorized by this Final Order and the Replacement DIP Loan Documents), or to amend or modify security documents, or to subordinate existing liens and any other similar action or action in connection therewith or take any other action in order to validate, perfect, preserve and enforce the liens and security interests granted to them under the Interim Order and this Final Order or under the Replacement DIP Loan Documents or to otherwise evidence such liens and security interests in all DIP Collateral (each, a "**_Perfection Action_**"); _provided_ that, whether or not the Replacement DIP Agent determines to take any Perfection Action with respect to any liens or security interests granted under the Interim Order or this Final Order, such liens and security interests shall nonetheless be deemed valid, perfected, allowed, enforceable, non-avoidable as of the entry of the

Interim Order. Upon the reasonable request of the Replacement DIP Agent, the Replacement DIP Loan Parties and each of the Prepetition Secured Parties, without any further consent of any party, are authorized to take, execute, deliver and file such instruments (in each case, without representation or warranty of any kind) to enable the Replacement DIP Agent to further validate, perfect, preserve and enforce the DIP Liens. All such documents will be deemed to have been recorded and filed as of the date of the Interim Order.

(c)     A certified copy of this Final Order may, as the Replacement DIP Agent may reasonably determine in their discretion, be filed with or recorded in filing or recording offices in addition to or in lieu of any financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized and directed to accept such certified copy for filing and/or recording, as applicable. The automatic stay of section 362(a) of the Bankruptcy Code shall be modified to the extent necessary to permit the Replacement DIP Agent to take all actions, as applicable, referenced in this paragraph 16.

17.     *Protection of Lenders' Rights.*

(a)     Until the Replacement DIP Obligations are Paid in Full, the Prepetition Secured Parties shall: (i) have no right to and shall take no action to foreclose upon, or recover in connection with, the liens or security interests granted to the Prepetition Secured Parties in the First Priority DIP Collateral under this Final Order, or otherwise seek to exercise or enforce any rights or remedies against any First Priority DIP Collateral, (ii) subject in all respects to paragraph 44 of this Final Order, be deemed to have consented to any transfer, disposition or sale of, or release of liens or claims on such First Priority DIP Collateral (it being understood that such liens or claims shall attach to the proceeds thereof in the same priorities as of immediately prior to such sale) to the extent such transfer, disposition, sale, or release is authorized by the Replacement DIP

Case 22-90341   Document 6071   Filed in TXSB on 03/07/23   Page 52 of 393

Secured Parties in accordance with the Replacement DIP Loan Documents (as currently in effect, without giving effect to any amendment or modification thereto) and this Final Order, or (iii) not file any further financing statements, patent filings, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or otherwise take any action to perfect their security interests in the DIP Collateral other than, solely as to this <u>clause (iii)</u>, the Prepetition Agents filing financing statements or other documents or instruments to perfect the liens granted pursuant to the Original Interim Order (to the extent not canceled as part of the Refinancing), the Interim Order or this Final Order or as may be required by applicable state law to continue the perfection of valid and unavoidable liens or security interests existing as of the Petition Date, or (iv) subject in all respects to paragraph 44 of this Final Order, deliver or cause to be delivered, at the Replacement DIP Loan Parties' cost and expenses, any termination statements, releases and/or assignments in favor of the Replacement DIP Agent and the Replacement DIP Lender or other documents necessary to effectuate and/or evidence the release, termination and/or assignment of liens or security interests on any portion of DIP Collateral subject to any sale or disposition authorized hereunder and under the Replacement DIP Loan Documents.

(b) Subject in all respects to paragraph 44 of this Final Order, no Prepetition Secured Party may, directly or indirectly, (i) contest, or support any other Person in contesting, in any proceeding, the extent, validity, attachment, priority, or enforceability of any DIP Lien held by or on behalf of any of the Replacement DIP Secured Parties in the DIP Collateral (or the extent, validity, allowability, or enforceability of any Replacement DIP Obligations secured thereby or purported to be secured thereby) or the provisions of the Replacement DIP Loan Documents, the Interim Order or this Final Order, (ii) take any action that would restrain, hinder, limit, delay or otherwise interfere with the exercise of any rights or remedies by any of the DIP Secured Parties,

or (iii) contest, object to, or support any other Person in contesting or objecting to, the manner in which any Replacement DIP Secured Party seeks to enforce or collect the DIP Obligations, the DIP Superpriority Claims or the DIP Liens or any amendment, waiver or modification of any Replacement DIP Loan Document, the Interim Order or this Final Order.

18.   *Maintenance of DIP Collateral.*

(a)   Until such time as all Replacement DIP Obligations are Paid in Full (or as otherwise agreed in writing by the Replacement DIP Agent), the Replacement DIP Loan Parties shall continue to maintain all property, operational, and other insurance as required and as specified in the Replacement DIP Loan Documents. Upon the entry of the Interim Order (and approved on a final basis pursuant to this Final Order), the Replacement DIP Agent, for the benefit of itself and the Replacement DIP Secured Parties, shall automatically be deemed to be named as additional insured and lender loss payee under each insurance policy maintained by the Replacement DIP Loan Parties (including all property damage and business interruption insurance policies of the Replacement DIP Loan Parties, whether expired, currently in place, or to be put in place in the future), and shall act in that capacity and distribute any proceeds recovered or received in respect of any such insurance policies in accordance with the terms of this Final Order and the Replacement DIP Loan Documents, *provided that*, notwithstanding anything to the contrary in the Replacement DIP Loan Documents or this Final Order, any portion of insurance proceeds arising from damage or loss of value to assets subject to one or more Prior Senior Liens or Prepetition Secured Notes Liens shall be payable on account of Replacement DIP Obligations, Prepetition Secured Notes Obligations, or any other obligations of the Debtors, only after the obligations secured by such Prior Senior Liens or Prepetition Secured Notes Liens, as applicable, have been Paid in Full or sufficient funds have been segregated from such insurance proceeds to provide for

such Payment in Full in an account for the sole benefit of the holders of such Prior Senior Liens or Prepetition Secured Notes Liens, as applicable.

(b)     The Debtors shall maintain or continue to maintain all property, operational, and other insurance as required and specified in the Prepetition Equipment Loan Documents. The Debtors shall also timely pay all property taxes on the Prepetition Equipment Financing Collateral, as and when due and payable.

19.     *Reporting.*

(a)     Without limiting the requirements contained herein or in the Replacement DIP Loan Documents, the Replacement DIP Loan Parties and their Representatives shall (i) provide the Replacement DIP Agent, the Replacement DIP Lender, the Ad Hoc Group, the Official Committee, and any other official committee appointed in these Chapter 11 Cases (and each of their respective advisors) with (A) all reports, documents, and information required to be delivered to each such party under the Replacement DIP Loan Documents (contemporaneously when the same is required to be delivered thereunder) and this Final Order (as applicable), and (B) reasonable access, upon reasonable notice and during regular business hours, to the Replacement DIP Loan Parties' books and records, assets and properties, for purposes of monitoring the Replacement DIP Loan Parties' businesses and operations and the value of the DIP Collateral, and (ii) cooperate and consult with, and provide information reasonably requested by the Replacement DIP Agent, the Replacement DIP Lender, the Ad Hoc Group, the Official Committee, or any other official committee appointed in these Chapter 11 Cases (and their respective advisors) concerning the Replacement DIP Loan Parties' businesses, financial condition, properties, business operations and assets, and the Replacement DIP Loan Parties

hereby authorize their Representatives to cooperate and consult with, and promptly provide to the such parties (in each case, together with their respective advisors) such information.

(b)     The Replacement DIP Loan Parties and their Representatives shall provide the Prepetition Equipment Lenders' advisors: (i) variance reports on a weekly basis and (ii) the Approved Budget every four weeks. Further, the Replacement DIP Loan Parties and their Representatives shall make themselves available to the Prepetition Equipment Lenders' advisors for reasonably requested calls to discuss the materials provided and to provide updates on general case status.  For the avoidance of doubt, neither the Prepetition Equipment Lenders nor their advisors shall have consent rights with respect to the Approved Budget.

20.     *Termination Events; Exercise of Remedies.*

(a)     *DIP Termination Events.* The occurrence of any of the following shall constitute a "DIP Termination Event" under this Final Order (each a "***DIP Termination Event***"), unless waived in writing by the Replacement DIP Lender: (i) the occurrence of an "Event of Default" under and as defined in the Replacement DIP Credit Agreement, (ii) the occurrence of the "Termination Date" (as defined in the Replacement DIP Loan Documents), (iii)  the substantial consummation (as defined in section 1101(2) of the Bankruptcy Code) of a chapter 11 plan of any of the Debtors, (iv) any of the Replacement DIP Loan Parties seeks authorization from the Court for (or the Court enters an order authorizing or approving) any amendment, modification, or extension of this Final Order or the Replacement DIP Loan Documents without the prior written consent of the Replacement DIP Lender (and no such consent shall be implied by any other action, inaction, or acquiescence of any of the Replacement DIP Secured Parties), (v) the failure of the Replacement DIP Loan Parties to make any payment required under this Final Order or the Replacement DIP Loan Documents to any of the Replacement DIP Secured Parties as and when

due and payable hereunder or thereunder, or (vi) the failure by any of the Replacement DIP Loan Parties to timely perform or comply with any of the other terms, provisions, conditions or other obligations under this Final Order.

(b)     *Exercise of Remedies.* The Replacement DIP Loan Parties shall immediately provide notice to counsel to the Replacement DIP Agent, the Replacement DIP Lender, the Prepetition Agents, the Ad Hoc Group, the Official Committee, any other official committee appointed in these Chapter 11 Cases, and the Prepetition Equipment Lenders (to the extent such Prepetition Equipment Lenders have provided the Debtors' lead restructuring counsel with an email asking to be included for purposes of this paragraph 20(b) of this Final Order) of the occurrence of any DIP Termination Event. Upon the occurrence of a DIP Termination Event, without further application to or order from the Court, and subject in all respects to paragraph 44 of this Final Order, the automatic stay provisions of section 362 of the Bankruptcy Code shall be vacated and modified to the extent necessary to permit the Replacement DIP Agent (acting at the instruction of the Replacement DIP Lender) to take any of the following actions, at the same or different time: (i) deliver a written notice (which may be via electronic mail) to lead restructuring counsel for the Debtors, the U.S. Trustee and lead restructuring counsel for the Official Committee, any other official committee appointed in these Chapter 11 Cases, and the Ad Hoc Group (the "***Remedies Notice***")[7] declaring the occurrence of a DIP Termination Event (such date, the "***DIP Termination Declaration Date***") and/or deliver a Carve-Out Notice (as defined below), (ii) declare the termination, reduction or restriction of the commitments under the Replacement DIP Facility (to the extent any such commitment remains), (iii) declare all Replacement DIP

---

[7]    For the avoidance of doubt, with respect to the Replacement DIP Agent (acting on behalf of the Replacement DIP Lender), the Carve-Out Notice and the Remedies Notice may be included in the same notice.

Obligations to be immediately due and payable, without presentment, demand or protest or other notice of any kind, all of which are expressly waived by the Replacement DIP Loan Parties, (iv) declare the termination of the Replacement DIP Facility and the Replacement DIP Loan Documents as to any further liability or obligation thereunder, but without affecting the DIP Liens, the DIP Superpriority Claims or the Replacement DIP Obligations, (v) declare the reduction or restriction on the Replacement DIP Facility or the Replacement DIP Loan Documents, (vi) invoke a Cash Dominion Period and/or sweep all cash or other amounts contained in the DIP Funding Account, and (vii) charge interest at the default rate set forth in the Replacement DIP Credit Agreement; *provided* that following the occurrence of a DIP Termination Event, prior to the exercise or enforcement of any rights against DIP Collateral (subject in all respects to paragraph 44 of this Final Order), the Replacement DIP Agent (acting at the instruction of the Replacement DIP Lender) shall be required to file a motion with the Court on five (5) Business Days' notice (subject to the Court's availability) seeking an emergency hearing (the "***Stay Relief Hearing***") to determine whether a DIP Termination Event has occurred (and the Replacement DIP Loan Parties, the Ad Hoc Group and the Official Committee shall not object to the shortened notice with respect to such Stay Relief Hearing). In the event the Court determines during a Stay Relief Hearing that a DIP Termination Event has occurred, subject in all respects to paragraph 44 of this Final Order, the Court may fashion an appropriate remedy, which may include, *inter alia*, the exercise of any and all rights or remedies available to the Replacement DIP Secured Parties under this Final Order, the Replacement DIP Loan Documents or applicable law against the DIP Collateral; *provided* that the rights of the Debtors, the Ad Hoc Group, the Official Committee, and any other official committee appointed in these Chapter 11 Cases to contest such relief are expressly preserved.

(c)     *Cash Collateral Termination Events.* The occurrence of any of the following shall constitute a "Cash Collateral Termination Event" under this Final Order (each a "***Cash Collateral Termination Event***"), unless waived in writing by the Ad Hoc Group:

(i)     the occurrence of the DIP Termination Declaration Date;

(ii)     the substantial consummation (as defined in section 1101(2) of the Bankruptcy Code) of a chapter 11 plan of any of the Debtors;

(iii)     following notice to lead restructuring counsel to each of the Debtors and the Replacement DIP Agent and a 5 calendar day cure period from the date of delivery of such notice, the failure of the Replacement DIP Loan Parties to make any undisputed payment (with such disputed payments to be resolved as set forth in paragraph 11 of this Final Order) required under the Interim Order or this Final Order to any of the Prepetition Secured Parties as and when due and payable hereunder or thereunder;

(iv)     following notice to lead restructuring counsel to each of the Debtors and the Replacement DIP Agent and a 10 business day cure period from the date of delivery of such notice, the failure by any of the Replacement DIP Loan Parties to timely perform or comply with any of their obligations to the Prepetition Secured Parties under this Final Order;

(v)     the entry of an order in the Chapter 11 Cases amending, supplementing, staying or vacating or otherwise modifying this Final Order in a manner that is adverse to the interests of the Prepetition Secured Parties without the prior consent of the Ad Hoc Group;

(vi)     the Noteholder Adequate Protection Liens or the Noteholder Adequate Protection Claims cease at any time to be valid, binding, enforceable and non-avoidable, and (as applicable), fully and properly perfected, and enforceable in all respects against each of the Replacement DIP Loan Parties;

(vii)     (A) the Debtors shall initiate or commence any, challenge, proceeding or investigation (1) challenging the validity, enforceability, perfection or priority of the Prepetition Secured Notes Liens or the Prepetition Secured Notes Obligations, (2) seeking the avoidance, subordination, disgorgement, set off, or surcharge of all or any portion of the Prepetition Secured Notes Obligations (or any payments made on account thereof) or any Adequate Protection Obligations; or (B) the Debtors support any challenge, proceeding, or investigation initiated or commenced by any person or entity, or (C) the Court enters an order granting or sustaining any such relief;

(viii)     (A) the entry of an order by the Court appointing an interim or permanent trustee, a receiver or an examiner under section 1104 of the Bankruptcy

Code, in each case, in any of the Chapter 11 Cases; or (B) the dismissal of any of the Chapter 11 Cases, or (C) the conversion of any of the Chapter 11 Cases to a case under Chapter 7 of the Bankruptcy Code; or (D) the termination or modification of any of the Debtors' exclusive right to file and/or solicit acceptances of a chapter 11 plan; or (E) the Replacement DIP Loan Parties seek (or publicly support or join a third party that seeks) the foregoing relief;

(ix)    the entry of an order of this Court (A) authorizing the Debtors to obtain additional financing under section 364(c) or (d) of the Bankruptcy Code secured by a lien that is senior to or *pari passu* with the Noteholder Adequate Protection Liens or the Prepetition Secured Notes Liens, or (B) granting a lien that is senior to or *pari passu* with the Noteholder Adequate Protection Liens or the Prepetition Secured Notes Liens, or (C) granting a superpriority administrative expense claim that is senior to or *pari passu* with the Noteholder Adequate Protection Claims, in each case, except to the extent permitted under this Final Order;

(x)    the remittance, use or application of Cash Collateral by the DIP Loan Replacement Parties other than in accordance with this Final Order and the Approved Budget (subject to Permitted Variances);

(xi)    absent further order of the Court (upon notice to the Ad Hoc Group and a hearing), any of the Replacement DIP Loan Documents are amended, supplemented, waived, stayed, vacated or otherwise modified in a manner that adversely affects any of the rights, privileges, benefits, protections or consent rights of any of the Prepetition Secured Parties hereunder;

(xii)    absent further order of the Court (upon notice to the Ad Hoc Group and a hearing), the sale of any portion of the Prepetition Secured Notes Collateral outside of the ordinary course of business; or

(xiii)    the Court enters an order granting relief from the automatic stay arising under section 362 of the Bankruptcy Code to allow any creditor to execute upon or enforce a lien, interest or remedy in any Prepetition Secured Notes Collateral with a fair market value in excess of $1,000,000.

(d)    *Exercise of Remedies.* The Prepetition Secured Parties shall immediately

provide notice to counsel to lead restructuring counsel to the Debtors and the Replacement DIP

Agent of the occurrence of any Cash Collateral Termination Event. Upon the occurrence of a Cash

Collateral Termination Event, without further application to or order from the Court, the automatic

stay provisions of section 362 of the Bankruptcy Code shall be vacated and modified to the extent

necessary to permit the Prepetition Agents (acting at the instruction of the requisite Prepetition

Secured Parties under the applicable Prepetition Secured Notes Documents), as applicable, to take any of the following actions, at the same or different time: (i) deliver a written notice (which may be via electronic mail) to lead restructuring counsel for the Debtors, the U.S. Trustee and lead restructuring counsel for Replacement DIP Agent, the Official Committee, and any other official committee appointed in these Chapter 11 Cases (the "**Cash Collateral Remedies Notice**")[8] declaring the occurrence of a Cash Collateral Termination Event (such date, the "**Cash Collateral Termination Declaration Date**") and/or deliver a Carve-Out Notice (as defined below), or (ii) declare the termination, restriction or revocation of the ability of the Debtors to use Prepetition Secured Notes Collateral (including Cash Collateral); *provided* that following the occurrence of a Cash Collateral Termination Event, prior to the exercise or enforcement of any rights against DIP Collateral (in respect of any Adequate Protection Obligations) or Prepetition Secured Notes Collateral (as the case may be), the Prepetition Agents (acting at the instruction of the requisite Prepetition Secured Parties under the applicable Prepetition Secured Notes Documents), as applicable, shall be required to file a motion with the Court on five (5) Business Days' notice (subject to the Court's availability) seeking an emergency Stay Relief Hearing to determine whether a Cash Collateral Termination Event has occurred (and the Replacement DIP Loan Parties and the Official Committee shall not object to the shortened notice with respect to such Stay Relief Hearing). In the event the Court determines during a Stay Relief Hearing that a Cash Collateral Termination Event has occurred, subject to paragraph 44 of this Final Order, the Court may fashion an appropriate remedy, which may include, *inter alia*, the exercise of any and all rights or remedies available to the Prepetition Secured Parties under this Final Order or applicable law against the

---

[8]   For the avoidance of doubt, the Carve-Out Notice and the Cash Collateral Remedies Notice may be included in the same notice.

DIP Collateral; *provided*, *further*, that the rights of the Official Committee, any other official committee appointed in these Chapter 11 Cases, the Debtors and the Replacement DIP Agent to contest such relief are expressly preserved.

(e)      *Remedies Notice Period.* During the period from and after the DIP Termination Declaration Date or the Cash Collateral Termination Declaration Date (as the case may be) through the date of the Stay Relief Hearing (the "***Remedies Notice Period***"), the Debtors shall be permitted to use Cash Collateral solely to fund (i) payroll and other critical operating expenses included in (and subject to) the Approved Budget that the Debtors believe are critically necessary to keep the Debtors' businesses operating or that have been consented to by the Replacement DIP Lender or the Prepetition Agent (as applicable) (in each case, which consent shall not be unreasonably withheld or delayed), and (ii) the Professional Fees Escrow Amount; *provided* that any fees or expenses incurred by the Replacement DIP Loan Parties or the Official Committee during the Remedies Notice Period shall permanently reduce the Carve-Out Amount (as defined below). For the avoidance of doubt, during the Remedies Notice Period, the Replacement DIP Lender shall not be obligated to provide any Replacement DIP Loans or advance any credit at any time from and after the occurrence of a DIP Termination Event.

(f)      *Leased Premises.* On or after a DIP Termination Declaration Date, the Replacement DIP Secured Parties shall be entitled to enter upon any leased premises in accordance with (i) a separate agreement with the landlord by and between the Replacement DIP Agent and the applicable landlord, (ii) consent of the landlord, (iii) upon entry of an order of this Court, upon notice to the landlord and a hearing, or (iv) in accordance with the rights of the Replacement DIP Agent under applicable non-bankruptcy law and the Replacement DIP Loan Documents.

(g)     *Cooperation.* The Replacement DIP Loan Parties shall reasonably cooperate with the Replacement DIP Secured Parties and the Prepetition Secured Parties (as the case may be) in their efforts to enforce their liens and security interests in the DIP Collateral and (other than the right to contest whether a DIP Termination Event or Cash Collateral Termination Event has occurred and is continuing) the Replacement DIP Loan Parties shall not take or direct any entity to take any action designed or intended to hinder or restrict in any respect such party from enforcing its rights or remedies in the DIP Collateral.

(h)     For the avoidance of doubt, upon delivery of a Remedies Notice, all rights and remedies available to the Prepetition Equipment Lenders under this Final Order, the Prepetition Equipment Loan Documents or applicable law, including, among other things, the right to file a motion with the Court seeking relief from the automatic stay to enforce rights and remedies against the Prepetition Equipment Financing Collateral, are hereby expressly preserved.

21.     *No Waiver by Failure to Seek Relief.* The rights and remedies of the Replacement DIP Secured Parties and the Prepetition Secured Parties specified herein are cumulative and not exclusive of any rights or remedies that the Replacement DIP Secured Parties or Prepetition Secured Parties may have under the Interim Order, this Final Order, the Replacement DIP Loan Documents, the Prepetition Secured Notes Documents, applicable law or otherwise. The failure or delay on the part of any of the Replacement DIP Secured Parties or the Prepetition Secured Parties to seek relief or otherwise exercise their rights and remedies under the Interim Order, this Final Order, the Replacement DIP Loan Documents, the Prepetition Secured Notes Documents or applicable law, as the case may be, shall not constitute a waiver of any of their respective rights hereunder, thereunder or otherwise. Except as expressly set forth herein, none of the rights or remedies of the Replacement DIP Secured Parties or the Prepetition Secured Parties under the

Interim Order, this Final Order, the Replacement DIP Loan Documents and the Prepetition Secured Notes Documents shall be deemed to have been amended, modified, suspended, or waived unless such amendment, modification, suspension, or waiver is express, in writing and signed by the requisite parties under the Replacement DIP Loan Documents and the requisite parties under the Prepetition Secured Notes Documents, as applicable. No consents required hereunder by any of the Replacement DIP Secured Parties or the Prepetition Secured Parties shall be implied by any inaction or acquiescence by any of the Replacement DIP Secured Parties or the Prepetition Secured Parties (as applicable).

22. *Carve-Out.*

(a) *Priority of Carve-Out*. Each of the DIP Liens, the DIP Superpriority Claims, the Prepetition Secured Notes Liens, the Adequate Protection Liens, and the Adequate Protection Claims shall be subject and subordinate to payment of the Carve-Out. The Carve-Out shall be senior to all claims and liens over all assets of the Debtors, including any DIP Collateral and Prepetition Secured Notes Collateral, as set forth in this Final Order. For the avoidance of doubt, after the occurrence of the DIP Termination Declaration Date and the date upon which the DIP Obligations are Paid in Full, the Carve-Out shall remain in effect as to the Prepetition Secured Notes Obligations and the Adequate Protection Obligations, and the Debtors shall be permitted and required to continue to fund amounts in relation to the Carve-Out in accordance with the terms of this Final Order.

(b) *Carve-Out.* As used in this Final Order, the term "**Carve-Out**" means the sum of (i) all unpaid fees required to be paid to the Clerk of the Court and to the U.S. Trustee under 28 U.S.C. § 1930(a) plus interest at the statutory rate pursuant to 31 U.S.C. § 3717, (ii) all unpaid reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the

Bankruptcy Code, (iii) to the extent allowed at any time, whether by interim order, final order, or other order, all accrued but unpaid fees and expenses (excluding any restructuring, sale, success, or other transaction fee of any investment bankers or financial advisors) (the "**Allowed Professional Fees**") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "**Debtor Professionals**"), the Official Committee, and any other official committee appointed in these Chapter 11 Cases pursuant to section 328 or 1103 of the Bankruptcy Code (collectively, the "**Committee Professionals**," and together with the Debtor Professionals, the "**Professional Persons**") at any time on or before the date of delivery by the Replacement DIP Agent (at the instruction of the Replacement DIP Lender) of a Carve-Out Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve-Out Notice (the amounts set forth in the foregoing clauses (i), (ii), and (iii), the "**Pre-Carve-Out Notice Amount**"), and (iv) Allowed Professional Fees of Professional Persons incurred after the date of delivery by the Replacement DIP Agent (at the instruction of the Replacement DIP Lender) of the Carve-Out Notice, to the extent allowed at any time, whether by interim order, final order, or other court order, in an aggregate amount not to exceed $2.0 million (the amount set forth in this clause (iv) being the "**Post-Carve-Out Notice Amount**," and together with the Pre-Carve-Out Notice Amount, the "**Carve-Out Amount**"); *provided* that the Post-Carve-Out Notice Amount shall not be used to pay professional fees or expenses of any official committee appointed in these Chapter 11 Cases other than those of the Official Committee; *provided further* that nothing herein shall be construed to impair the ability of any party in interest to object to the fees, expenses, reimbursement, or compensation described herein on any grounds. For purposes of this Final Order, the "**Carve-Out Notice**" shall mean a written notice (which may be via electronic mail) delivered by the Replacement DIP Agent (acting at the instruction of the Replacement DIP Lender)

to lead restructuring counsel to the Debtors, the U.S. Trustee, counsel to the Ad Hoc Group, and the lead restructuring counsel to the Official Committee and any other official committee appointed in the Chapter 11 Cases, which notice may be delivered following the occurrence of a DIP Termination Event, stating that the Carve-Out has been invoked.

(c)     *Funding of Carve Out Account.*  The Professional Fees Escrow Account, shall continue to function as a segregated account held in trust for and exclusively available for the payment of fees and expenses of Professional Persons pursuant to this Final Order. Notwithstanding anything to the contrary in the Interim Order, the Post-Carve-Out Notice Amount shall promptly be funded into the Professional Fees Escrow Account on the Carve-Out Trigger Date (as defined below) and shall first be funded utilizing the Debtors' cash on hand and then from proceeds of non-cash assets that do not serve as collateral securing Prior Senior Liens or Prepetition Secured Notes Liens, to the extent reasonably possible, before the Debtors exercise recourse to any other assets. All rights of holders of Prior Senior Liens and Prepetition Secured Notes Liens are reserved with respect to the allocation, as between collateral securing Prior Senior Liens and collateral securing Prepetition Secured Notes Liens, of any amounts of the Post-Carve-Out Notice Amount proposed to be funded from the proceeds of such collateral, to the extent the Post-Carve-Out Notice Amount is not otherwise fully funded in accordance with the foregoing sentence.

(d)     *Pre-Carve-Out Notice.* Prior to the delivery of a Carve-Out Notice, starting with the first full calendar week following the date of the Original Interim Order, each Professional Person shall deliver to the Debtors, the Replacement DIP Agent, the Ad Hoc Group, the Replacement DIP Lender, and their respective advisors a weekly statement (each, a "***Weekly Statement***") setting forth a good-faith estimate of the amount of accrued but unpaid fees and

expenses incurred by such Professional Person during the preceding week (the "***Weekly Estimated Fees and Expenses***"), and the Debtors shall, on a weekly basis, transfer cash proceeds from amounts previously drawn under the DIP Facility or cash on hand into the Professional Fees Escrow Account in an amount equal to the aggregate amount of Weekly Estimated Fees and Expenses based on the Weekly Fee Estimates submitted by each Professional Person (and if no such estimate is provided in a given week, then the amount forecasted for such Professional Person in the Approved Budget) that remain unpaid (and that were not previously funded to the Professional Fees Escrow Account). The Debtors shall use funds held in the Professional Fees Escrow Account exclusively to pay Allowed Professional Fees as they become allowed and payable pursuant to the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, in accordance with any interim or final orders of the Court; *provided* that the Debtors' obligations to pay Allowed Professional Fees shall not be limited or be deemed limited to funds held in the Professional Fees Escrow Account. For the avoidance of doubt, the Professional Fee Escrow may be the same account established under the Original Interim Order, and the Debtors are authorized to continue to use such account in accordance with the terms of this Final Order.

(e) *Post-Carve-Out Notice.* On the date on which a Carve-Out Notice is delivered in accordance with this paragraph 22 of this Final Order, (the "***Carve-Out Trigger Date***"), the Carve-Out Notice shall constitute a demand to the Debtors to utilize all cash on hand as of such date (net of any retainers) and any available cash thereafter held by any Debtor to fund into the Professional Fees Escrow Account an amount equal to (i) the Pre-Carve-Out Notice Amount and (ii) the Post-Carve-Out Notice Amount ((i) and (ii), each to the extent not previously funded to the Professional Fees Escrow Account). No later than one (1) Business Day after the delivery of a Carve-Out Notice, each Professional Person shall deliver one (1) additional statement

to the Debtors, the Replacement DIP Agent, the Replacement DIP Lender, the Ad Hoc Group, and their respective advisors setting forth a good-faith estimate of the amount of accrued but unpaid fees and expenses incurred by such Professional Person during the period following the period covered by the most recent Weekly Statement previously delivered by such Professional Person through and including the Carve-Out Trigger Date (as defined below), and the Debtors shall transfer such amounts to the Professional Fees Escrow Account (as defined herein).

(f)     Notwithstanding anything to the contrary in this Final Order, the Replacement DIP Loan Documents or the Prepetition Secured Notes Documents, following delivery of a Carve-Out Notice, the Replacement DIP Agent and the Prepetition Agents shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Professional Fees Escrow Account has been fully funded in an amount equal to all respective obligations benefitting from the Carve-Out as set forth herein. The Professional Fees Escrow Account shall not be subject to the control of the Replacement DIP Agent, any Replacement DIP Lender or any of the Prepetition Secured Parties, and the funds transferred to the Professional Fees Escrow Account shall not be subject to the DIP Liens or the Adequate Protection Liens, nor constitute DIP Collateral; *provided* that the DIP Liens and the Adequate Protection Liens shall automatically attach to any residual interest in the Professional Fees Escrow Account (which liens were deemed automatically perfected senior first-priority liens as of entry of the Interim Order), with (i) any excess that was initially funded directly from borrowings under the Replacement DIP Facility shall be paid to the Replacement DIP Agent for application to the Replacement DIP Obligations in accordance with the Replacement DIP Loan Documents until the Replacement DIP Obligations are Paid in Full (unless the Replacement DIP

Lender has otherwise agreed in writing), and (ii) any other excess amounts shall be applied in accordance with paragraph 44 of this Final Order.

(g)     Notwithstanding anything to the contrary in this Final Order, (i) disbursements by the Debtors from the Professional Fees Escrow Account shall not constitute loans or indebtedness under the Replacement DIP Loan Documents or the Prepetition Secured Notes Documents or otherwise increase or reduce the Replacement DIP Obligations or the Prepetition Secured Notes Obligations, (ii) the failure of the Professional Fees Escrow Account to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve-Out, and (iii) nothing contained herein shall constitute a cap or limitation on the amount that the Professional Persons may assert as administrative expense claims against the Debtors on account of Allowed Professional Fees incurred by such Professional Persons.

(h)     *Payment of Carve-Out on or After the Carve-Out Trigger Date*. Any payment or reimbursement made on or after the occurrence of the Carve-Out Trigger Date in respect of any Allowed Professional Fees incurred after the occurrence of the Carve-Out Trigger Date shall permanently reduce the Carve-Out Amount on a dollar-for-dollar basis.

(i)     *No Direct Obligation to Pay Allowed Professional Fees.* None of the Replacement DIP Secured Parties or the Prepetition Secured Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Chapter 11 Cases or any Successor Cases under any chapter of the Bankruptcy Code, regardless of whether such fees or expenses have been allowed by the Court. Nothing in this Final Order or otherwise shall be construed to obligate the Replacement DIP Secured Parties or the Prepetition Secured Parties, in any way, to pay compensation to, or to reimburse expenses of,

any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

23.     *Effect of the Debtors' Stipulations on Third Parties.*

(a)     The Debtors' stipulations, admission, agreements and releases contained in this Final Order shall be binding upon the Debtors and any successor thereto in all circumstances and for all purposes immediately upon entry of this Final Order.

(b)     The Debtors' Stipulations in paragraphs E and F of this Final Order shall be binding upon all parties in interest (other than the Debtors and their successors), including the Official Committee, any statutory or non-statutory committees appointed or formed in the Chapter 11 Cases, and any other person or entity seeking to act on behalf of the Debtors' estates, including any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors in the Chapter 11 Cases or any Successor Cases, and each of their respective successors and assigns, in all circumstances and for all purposes, unless the Official Committee or such other party in interest (i) obtains requisite standing (subject in all respects to any agreement or applicable law that may limit or affect such entity's right or ability to do so), to the extent standing is required, pursuant to an order of the Court entered prior to the Challenge Deadline (as defined below), (ii) timely and properly commences and serves an adversary proceeding or contested matter (subject to the limitations contained herein) (each, a "***Challenge Proceeding***") by no later than the Challenge Deadline (as defined below) as against the Replacement DIP Secured Parties (solely with respect to clauses (ii)(C)–(E)) and/or the Prepetition Secured Parties, as the case may be, (A) objecting to or alleging any basis to impair, restrict, deny or otherwise challenge the right of any of the Prepetition Secured Parties to credit bid, in whole or in part, the Prepetition Secured Notes Liens or the Prepetition Secured Notes Obligations under section 363(k) of the Bankruptcy Code or

otherwise, (B) objecting to or challenging the amount, validity, perfection, enforceability, priority, scope or extent of the Prepetition Secured Notes Obligations, the Prepetition Secured Notes Liens, the Prepetition Secured Notes Collateral or the Prepetition Secured Notes Documents, (C) otherwise objecting to or challenging any of the admissions, stipulations, findings or releases included in the Debtors' Stipulations (as applicable), (D) asserting or prosecuting any claim or cause of action of any kind or nature whatsoever, including any claim or cause of action seeking reduction, setoff, offset, recoupment, avoidance (whether under chapter 5 of the Bankruptcy Code or under applicable law (including any applicable state law Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law)), recharacterization, subordination (whether equitable, contractual or otherwise), reclassification, disgorgement, disallowance, impairment, marshalling, surcharge or recovery, whether under the Bankruptcy Code, applicable non-bankruptcy law or otherwise, including, with respect to the Prepetition Secured Parties, the Prepetition Secured Notes Obligations, the Prepetition Secured Notes Liens, the Prepetition Secured Notes Collateral or the Prepetition Secured Notes Documents, or (E) asserting or prosecuting any so-called "lender liability" claims, Avoidance Actions or any other claim, counterclaim, cause of action, objection, contest or defense, of any kind or nature whatsoever, whether arising under the Bankruptcy Code, applicable law or otherwise, against any of the Replacement DIP Secured Parties, Prepetition Secured Parties, or their respective Representatives (underlined clauses (ii)(A)–(E), collectively, the "***Challenges***," and each, a "***Challenge***"), and (iii) obtains a final non-appealable order by a court of competent jurisdiction in favor of the plaintiff sustaining any such Challenge in any timely and duly-filed Challenge Proceeding; *provided* that any pleadings filed in connection with any Challenge Proceeding, including any motion served and filed with the Court seeking requisite standing (to the extent standing is

required) and authority to pursue a Challenge, shall include a draft complaint attached thereto and shall otherwise set forth with specificity the basis for each such Challenge, and any Challenge not so specified in a Challenge Proceeding timely and properly filed prior to the Challenge Deadline shall be deemed forever, waived, released and barred.

(c)     If no such Challenge Proceeding is timely and properly filed by the Challenge Deadline, or if the Court rules does not rule in favor of plaintiff in any such timely and properly filed Challenge Proceeding, then, without application to or further order of the Court, (i) each of the admissions, stipulations, findings and releases contained in the Debtors' Stipulations shall be binding on all parties-in-interest, including the Official Committee, any statutory or non-statutory committees appointed or formed in the Chapter 11 Cases, or any other party in interest (including any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors in the Chapter 11 Cases or any Successor Cases), (ii) the Prepetition Secured Notes Obligations shall constitute allowed claims against each of the Debtors in the Chapter 11 Cases and any Successor Cases, and the Prepetition Secured Notes Liens shall forever be deemed to be legal, valid, binding, continuing, perfected and enforceable, as of the Petition Date, against each of the Debtors in the Chapter 11 Cases and any Successor Cases, (iii) the Prepetition Secured Notes Obligations and the Prepetition Secured Notes Liens shall not be subject to any other or further contest, cause of action, attack, objection, challenge, defense, claim, counterclaim, reduction, setoff, offset, recoupment, avoidance (whether under chapter 5 of the Bankruptcy Code or under applicable law (including any applicable state law Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law)), recharacterization, subordination (whether equitable, contractual or otherwise), reclassification, disgorgement, disallowance, impairment, marshalling, surcharge or recovery or any other Challenge, of any kind or nature

whatsoever, whether under the Bankruptcy Code, applicable non-bankruptcy law or otherwise, by any person or entity, and (iii) any and all claims, counterclaims, cross-claims, causes of action, or other Challenges, of any kind or nature whatsoever, whether under the Bankruptcy Code, applicable non-bankruptcy law or otherwise, against the Replacement DIP Lender, the Prepetition Secured Parties or any of its or their Representatives (as the case may be) (in their capacities as such) shall be deemed forever waived, released and barred.

(d)      If any such Challenge Proceeding is timely filed by the Challenge Deadline, the Debtors' Stipulations shall nonetheless remain binding and preclusive on any Official Committee, any non-statutory committees appointed or formed in the Chapter 11 Cases, or any other party in interest (including any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors in the Chapter 11 Cases or any Successor Cases), except to the extent that any of the admissions, stipulations, findings or releases contained in the Debtors' Stipulations were expressly challenged in such Challenge Proceeding (and solely as to the plaintiff party that timely filed such Challenge Proceeding and *not*, for the avoidance of doubt, any other party in interest).

(e)      For purposes of this Final Order, the "***Challenge Deadline***" means the date that is sixty (60) calendar days from the date of entry of the Interim Order (the "***Initial Challenge Deadline***"), (ii) such later date as has been agreed to in writing by the Replacement DIP Agent (acting at the instruction of the Replacement DIP Lender) and the affected Prepetition Agent (acting at the instruction of the requisite Prepetition Secured Parties under the affected Prepetition Secured Notes Documents), or (iii) such later date as has been ordered by the Court, for cause shown, upon a motion filed with the Court prior to the Initial Challenge Deadline (the time period established by clauses (i), (ii), and (iii) of this paragraph 23(e), the "***Challenge Period***"); *provided*

that (x) if the Chapter 11 Cases are converted to chapter 7 and a chapter 7 trustee or a chapter 11 trustee is appointed or elected prior to the Challenge Deadline, then the Challenge Deadline for any such chapter 7 trustee or chapter 11 trustee shall be extended (solely as to such chapter 7 trustee or chapter 11 trustee) to the date that is the later of (1) the Challenge Deadline then in effect at the time of its appointment or election, or (2) the date that is thirty (30) calendar days after its appointment or election, and (y) the filing of a motion by the Official Committee prior to the Initial Challenge Deadline seeking requisite standing with respect to a Challenge, attaching a draft complaint setting forth such Challenge, shall toll the Challenge Deadline for the Official Committee solely in respect of such Challenge until the date that is one Business Day after the entry of an order of the Bankruptcy Court ruling on such motion (or such later date as agreed in writing by the Replacement DIP Agent (acting at the instruction of the Replacement DIP Lender); *provided*, *however*, that (x) the Challenge Deadline for the Official Committee and the Replacement DIP Secured Parties (and solely for the Official Committee and the Replacement DIP Secured Parties) to assert any Challenge with respect to the amount of the Prepetition April NPA Secured Notes Obligations arising under the Prepetition April NPA Secured Notes or to dispute the valuation of the Prepetition Secured Notes Collateral shall be the objection deadline (as fixed by the Court) with respect to confirmation of the Debtors' chapter 11 plan and (y) the Challenge Deadline for the Official Committee or the Ad Hoc Group to assert any Challenge with respect to the Bridge Note Obligations or dispute the valuation of the Bridge Note Obligations, shall, with respect to the Official Committee, be the date that is that is forty-five (45) calendar days from the date of entry of this Final Order and, with respect to the Ad Hoc Group, be the objection deadline (as fixed by the Court) with respect to confirmation of the Debtors' chapter 11 plan.

(f)      Nothing in this Final Order vests or confers on any person or entity, including any Official Committee or any statutory or non-statutory committee appointed or formed in the Chapter 11 Cases, or any other party in interest standing or authority to pursue any Challenge belonging to the Debtors or their estates, and all rights to object to any request for such standing are expressly reserved.

24.      *Limitations on Use of Replacement DIP Loan Parties' Interest in DIP Collateral, Cash Collateral, Carve-Out or Other Funds.* Notwithstanding anything contained in this Final Order or any other order of the Court to the contrary, no DIP Collateral, Replacement DIP Loans, Cash Collateral, proceeds of any of the foregoing, any portion of the Carve-Out may be used (including to pay professional fees) by any of the Replacement DIP Loan Parties, the Official Committee, any statutory or non-statutory committees appointed or formed in the Chapter 11 Cases or any Successor Cases, or any other party in interest (including any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors in the Chapter 11 Cases or any Successor Cases), directly or indirectly, to:

(a)      investigate (including by way of examinations or discovery proceedings, whether formal or informal), prepare, initiate, commence, support or prosecute (or finance the preparation, initiation, commencement, support or prosecution of) any claim, counterclaim, cross-claim, cause of action, suit, arbitration, application, motion, contested matter, objection, defense, adversary proceeding, litigation or other proceeding of any kind or nature (whether for monetary, injunctive, affirmative relief or otherwise) (i) against any of the Replacement DIP Secured Parties or their respective Representatives (each in their capacities as such), (ii) objecting to, challenging, contesting, or raising any defense to, the amount, validity, enforceability, perfection, priority, extent or scope of the claims, liens and security interests granted under the Interim Order or this Final Order, the Replacement DIP Loan Documents, (iii) asserting avoidance (whether under chapter 5 of the Bankruptcy Code or under applicable law (including any applicable state law Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law)), any so-called "lender liability" claims, or any other any claim or cause of action seeking reduction, setoff, offset, recoupment, recharacterization, subordination (whether equitable, contractual or otherwise), reclassification, disgorgement, disallowance, impairment, marshalling, surcharging

or recovery, in each case, with respect to the DIP Liens, the DIP Obligations, the Replacement DIP Loan Documents, or the DIP Collateral, (vi) any claim or cause of action of any kind or nature whatsoever, whether arising under the Bankruptcy Code or applicable non-bankruptcy law, against any of the Replacement DIP Secured Parties or their respective Representatives;

(b)      object to or seek to impair, modify or interfere with any of the rights, remedies, priorities, privileges, protections or benefits granted to the Replacement DIP Secured Parties under this Final Order, the Replacement DIP Loan Documents (other than to contest whether a DIP Termination Event has occurred);

(c)      object to or seek to prevent, hinder, interfere with or otherwise delay any of the Replacement DIP Secured Parties' assertion, enforcement, exercise of remedies or realization upon any DIP Collateral in accordance with this Final Order, or the Replacement DIP Loan Documents (other than to contest whether a DIP Termination Event has occurred);

(d)      seek or request authorization from the Court to obtain postpetition financing (whether equity or debt) or other financial accommodations pursuant to sections 364(c) or (d) of the Bankruptcy Code or otherwise, unless such financing is sufficient to cause the Payment in Full of all Replacement DIP Obligations contemporaneously with the consummation of such financing (or as otherwise agreed in writing by the Replacement DIP Lender);

(e)      seek or request authorization from the Court to obtain superpriority claims or liens or security interests (other than liens or security interests expressly permitted under this Final Order or the Replacement DIP Loan Documents) in any portion of the DIP Collateral that are senior to or *pari passu* with the DIP Liens, the DIP Superpriority Claims, unless all Replacement DIP Obligations have been Paid in Full (or as otherwise agreed in writing by the Replacement DIP Lender);

(f)      use, request authorization to sell, or otherwise dispose of DIP Collateral or Cash Collateral (without the prior written consent of the Replacement DIP Lender and of the Prepetition Secured Parties, respectively) other than as expressly permitted in this Final Order and in the Replacement DIP Loan Documents (as applicable); or

(g)      pay or seek to pay any amount on account of any claims arising prior to the Petition Date unless such payments are agreed to in writing by the Replacement DIP Lender (or are otherwise expressly included in the Approved Budget and do not violate any of the terms of the Replacement DIP Loan Documents);

*provided* that none of the Prepetition Secured Notes Collateral (including Cash Collateral) and no

more than an aggregate amount of $250,000 of the DIP Collateral, the Replacement DIP Loans,

proceeds of any of the foregoing DIP Collateral or Replacement DIP Loans, any portion of the

Carve-Out or any other funds may be used by the Official Committee during the Challenge Period to investigate (but not to prosecute, litigate, commence or support any Challenge, or prepare any complaint or motion in respect of any Challenge, including by way of discovery), the Debtors' Stipulations in paragraph E of this Final Order.

25.     *Limitations on Use of Prepetition Secured Parties' Interest in Cash Collateral, Carve-Out or Other Funds.* Notwithstanding anything contained in this Final Order or any other order of the Court to the contrary, no Prepetition Secured Notes Collateral (including Cash Collateral) may be used (including to pay professional fees) by any of the Replacement DIP Loan Parties, the Official Committee, any statutory or non-statutory committees appointed or formed in the Chapter 11 Cases or any Successor Cases, or any other party in interest (including any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors in the Chapter 11 Cases or any Successor Cases), directly or indirectly, to:

> (a)     investigate (including by way of examinations or discovery proceedings, whether formal or informal), prepare, initiate, commence, support or prosecute (or finance the preparation, initiation, commencement, support or prosecution of) any claim, counterclaim, cross-claim, cause of action, suit, arbitration, application, motion, contested matter, objection, defense, adversary proceeding, litigation or other proceeding of any kind or nature (whether for monetary, injunctive, affirmative relief or otherwise) (i) against the Prepetition Secured Parties, or their respective Representatives (each in their capacities as such), (ii) objecting to, challenging, contesting, or raising any defense to, the amount, validity, enforceability, perfection, priority, extent or scope of the claims, liens and security interests granted under the Prepetition Secured Notes Documents, (iii) asserting avoidance (whether under chapter 5 of the Bankruptcy Code or under applicable law (including any applicable state law Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law)), any so-called "lender liability" claims, or any other any claim or cause of action seeking reduction, setoff, offset, recoupment, recharacterization, subordination (whether equitable, contractual or otherwise), reclassification, disgorgement, disallowance, impairment, marshalling, surcharging or recovery, in each case, with respect to the Adequate Protection Liens, the Adequate Protection Claims, and the other Adequate Protection Obligations, the Prepetition Secured Notes Liens, the Prepetition Secured Notes Obligations, the Prepetition Secured Notes Documents, or the Prepetition Secured Notes Collateral, (vi) any claim or cause of action of any

kind or nature whatsoever, whether arising under the Bankruptcy Code or applicable non-bankruptcy law, against any of the Prepetition Secured Parties or their respective Representatives;

(b)     object to or seek to impair, modify or interfere with any of the rights, remedies, priorities, privileges, protections or benefits granted to the Prepetition Secured Parties under the Interim Order, this Final Order or the Prepetition Secured Notes Documents;

(c)     object to or seek to prevent, hinder, interfere with or otherwise delay any of the Prepetition Secured Parties' assertion, enforcement, exercise of remedies or realization upon any DIP Collateral (in the case of Adequate Protection Liens) or Prepetition Secured Notes Collateral (in the case of Prepetition Notes Liens) in accordance with the Interim Order, this Final Order or the Prepetition Notes Documents (other than to contest whether a Cash Collateral Termination Event has occurred);

(d)     seek or request authorization from the Court to obtain superpriority claims or liens or security interests (other than liens or security interests expressly permitted under this Final Order) in any portion of the DIP Collateral that are senior to or *pari passu* with the Adequate Protection Liens, the Adequate Protection Claims, the Prepetition Liens, or the Prepetition Secured Obligations;

*provided* that nothing herein shall limit the Official Committee from using the DIP Collateral, Replacement DIP Loans, or any other funds of the Debtors that does not constitute Prepetition Secured Notes Collateral (including Cash Collateral) from investigating, prosecuting, litigating, commencing or supporting any Challenge in any way whatsoever against the Prepetition Secured Parties.

26.     *Limitation on Charging Expenses.* Except to the extent of the Carve-Out and subject to paragraph 43 hereof, no costs or expenses of administration of the Chapter 11 Cases or any Successor Cases (or any future proceedings that may result therefrom) at any time, including any costs and expenses incurred in connection with the preservation, protection, or enhancement of realization by the Replacement DIP Secured Parties upon the DIP Collateral or the Prepetition Secured Parties upon the Prepetition Secured Notes Collateral, respectively, shall be charged against or recovered from the DIP Collateral as to Replacement DIP Secured Parties or the

Prepetition Secured Notes Collateral as to the Prepetition Secured Parties, whether pursuant to section 506(c) of the Bankruptcy Code or other similar legal or equitable doctrine or otherwise, without the prior written consent of the Replacement DIP Lender with respect to the DIP Collateral or the requisite Prepetition Secured Parties under the applicable Prepetition Secured Notes Documents with respect to the Prepetition Secured Notes Collateral, each in their sole discretion, and no such consent shall be implied, directly or indirectly, from anything contained in the Interim Order or this Final Order (including consent to the Carve-Out or the approval of any budget hereunder) or from any other action, inaction, or acquiescence by any of the Replacement DIP Secured Parties or Prepetition Secured Parties to any charge, lien, assessment or claim against the Replacement DIP Secured Parties with respect to the DIP Collateral or the Prepetition Secured Parties with respect to the Prepetition Secured Notes Collateral, whether under section 506(c) of the Bankruptcy Code or otherwise. Nothing contained in the Interim Order or this Final Order shall be deemed to be consent by any of the Prepetition Equipment Lenders to any charge, lien, assessment or claim against assets subject to their respective Prepetition Equipment Financing Liens or Equipment Lender Adequate Protection Liens under section 506(c) of the Bankruptcy Code or otherwise, and no such consent shall be implied from any other action, inaction, or acquiescence by the Prepetition Equipment Lenders. All of the Prepetition Equipment Lenders' rights, claims and defenses with respect to any charge, lien, assessment or claim asserted against assets subject to their respective Prepetition Equipment Financing Liens or Equipment Lender Adequate Protection Liens, under section 506(c) of the Bankruptcy Code or other similar legal or equitable doctrine, are hereby expressly reserved.

27.     *No Marshalling; Section 552(b) Waiver.* Subject to paragraph 43 hereof, in no event shall the Replacement DIP Secured Parties or the Prepetition Secured Parties be subject to the

equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral or the Replacement DIP Obligations, the Prepetition Secured Notes Collateral or the Prepetition Secured Notes Obligations (as applicable), and all proceeds of DIP Collateral shall be received and applied in accordance with this Final Order; *provided* that the Replacement DIP Secured Parties shall use commercially reasonable efforts to first apply all DIP Collateral (other than any proceeds from Avoidance Actions), to the extent such collateral may promptly be monetized in a commercially reasonable manner, before applying any proceeds from Avoidance Actions to satisfy the DIP Obligations and the Adequate Protection Obligations, as applicable. Subject to paragraph 43 hereof, each of the Prepetition Secured Parties shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and in no event shall the "equities of the case" exception in section 552(b) of the Bankruptcy Code apply to the Prepetition Secured Parties or the Prepetition Secured Notes Collateral.

28.    *Right to Credit Bid.* Subject in all respects to paragraph 44 of this Final Order, (a) the Replacement DIP Agent or its designee (in each case, acting at the instruction of the Replacement DIP Lender), shall have the right pursuant to section 363(k) of the Bankruptcy Code to credit bid all or any portion of the First-Priority DIP Collateral in accordance with the Replacement DIP Loan Documents up to the full amount of any Replacement DIP Obligations, (b) the Prepetition Agents or their designee (in each case, acting at the instruction of the requisite Prepetition Secured Parties under the applicable Prepetition Secured Notes Documents), shall have the right pursuant to section 363(k) of the Bankruptcy Code to credit bid all or any portion of the Prepetition Secured Notes Collateral up to the full amount of any applicable Prepetition Secured Notes Obligations, and (c) the Prepetition Equipment Lenders or their respective designees (in each case, acting at the instruction of such Prepetition Equipment Lender), shall have the right

pursuant to section 363(k) of the Bankruptcy Code to credit bid all or any portion of their respective Prepetition Equipment Financing Collateral up to the full amount of such Prepetition Equipment Lender's Prepetition Equipment Financing, but only to the extent that such Prepetition Equipment Lender's Prepetition Equipment Financing Lien is properly perfected and not subject to avoidance or challenge, in each case, in the sale of any of the Replacement DIP Loan Parties' assets, whether in a sale under or pursuant to section 363 of the Bankruptcy Code, a chapter 11 plan subject to confirmation under section 1129(b)(2)(A) of the Bankruptcy Code, a sale or disposition by a chapter 7 trustee for any of the Debtors under section 725 of the Bankruptcy Code, or otherwise. The Replacement DIP Agent (acting at the instruction of the Replacement DIP Lender), the Prepetition Agents or their designee (in each case, acting at the instruction of the requisite Prepetition Secured Parties under the applicable Prepetition Secured Notes Documents), and the Prepetition Equipment Lenders or their respective designees, shall have the absolute right to assign, transfer, sell, or otherwise dispose of its rights to credit bid (subject to this Final Order) to any acquisition vehicle formed in connection with such bid or other designee by or on behalf of the Replacement DIP Agent (acting at the instruction of the Replacement DIP Lender) the Prepetition Agents or their designee (in each case, acting at the instruction of the requisite Prepetition Secured Parties under the applicable Prepetition Secured Notes Documents), or any of the Prepetition Equipment Lenders or any of their respective designees, as applicable.

29.     *Binding Effect; Successors and Assigns.* Subject to paragraph 23 of this Final Order, the Replacement DIP Loan Documents and this Final Order, including all findings and conclusions of law herein, shall be binding upon all parties in interest in the Chapter 11 Cases and any Successor Cases, including the Replacement DIP Secured Parties, the Prepetition Secured Parties, the Official Committee or any other statutory or non-statutory committee appointed or formed in

the Chapter 11 Cases and any Successor Cases, and their respective successors and assigns (including any chapter 11 trustee or chapter 7 trustee or examiner appointed or elected in the Chapter 11 Cases or any Successor Cases, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors), and shall inure to the benefit of each of the Debtors, the Replacement DIP Secured Parties, the Prepetition Secured Parties, and their respective successors and assigns; *provided* that the Replacement DIP Secured Parties and the Prepetition Secured Parties shall have no obligation to make any loan, permit the use of DIP Collateral or Prepetition Secured Notes Collateral (including Cash Collateral) or extend any financing to any chapter 11 trustee or chapter 7 trustee or similar responsible person appointed for the estate of any Debtor in the Chapter 11 Cases or any Successor Cases.

30.     *No Modification of Final Order.*

(a)     The Replacement DIP Loan Parties irrevocably waive the right to seek, and shall not seek or consent to, directly or indirectly: (A) without the prior written consent of the Replacement DIP Lender (unless and until the Replacement DIP Obligations have been Paid in Full), (i) any modification, stay, vacatur or amendment to this Final Order, (ii) the allowance of any claim against any Debtor in the Chapter 11 Cases or any Successor Cases equal or superior to the DIP Superpriority Claims (other than the Carve-Out), (iii) the grant of any lien or security interest on any DIP Collateral with priority equal to or superior to the DIP Liens, except as expressly permitted hereunder or under the Replacement DIP Loan Documents, or (iv) the entry of any order authorizing the use of DIP Collateral (including Cash Collateral) that is inconsistent with this Final Order (except in connection with a request for approval of financing sufficient to cause the Payment in Full of all Replacement DIP Obligations contemporaneously with the

consummation of such financing), or (B) without the prior written consent of the Prepetition Agents (acting at the instruction of the requisite Prepetition Secured Parties) (unless and until the Prepetition Secured Notes Obligations have been Paid in Full), except as expressly permitted under this Final Order, (i) any modification, stay, vacatur, or amendment to this Final Order that materially adversely affects the applicable Prepetition Secured Parties' rights, remedies, benefits, or protections provided for in this Final Order, (ii) the allowance of any claim against any Debtor in the Chapter 11 Cases or any Successor Cases equal or superior to the Noteholder Adequate Protection Claims, or (C) except as expressly permitted hereunder, the grant of any lien or security interest on any DIP Collateral with priority equal to or superior to the Noteholder Adequate Protection Liens.

(b)      Without limiting the provisions of the immediately preceding paragraph, if at any time prior to the Payment in Full of all Replacement DIP Obligations, either the Replacement DIP Loan Parties, the Replacement DIP Loan Parties' estates, any chapter 11 trustee, chapter 7 trustee or examiner with enlarged powers, or any responsible officer subsequently appointed in any of the Chapter 11 Cases or any Successor Cases, shall obtain credit or incur debt pursuant to sections 364(b), (c), or (d) of the Bankruptcy Code in violation of this Final Order or the Replacement DIP Loan Documents, then, unless otherwise agreed in writing by the Replacement DIP Lender (with respect to the Replacement DIP Obligations), all of the cash proceeds derived from such credit or debt shall immediately be turned over to the Replacement DIP Agent, for further distribution to the applicable Replacement DIP Secured Parties on account of their applicable Replacement DIP Obligations pursuant to the Replacement DIP Loan Documents.

(c)     For the avoidance of doubt, from and after the Payment in Full of all Prepetition Secured Notes Obligations, or following the occurrence of the DIP Termination Declaration Date or Cash Collateral Termination Declaration Date, the Debtors shall not be prohibited from seeking relief to use Cash Collateral on a non-consensual basis and the Prepetition Secured Parties' rights to object to such relief (and/or the right to seek relief, including without limitation, the right to seek additional adequate protection and/or seek to lift the automatic stay in order to exercise rights and against Prepetition Secured Notes Collateral) are expressly preserved.

31.     *Preservation of Rights Granted Under Final Order.*

(a)     *Senior to Other Liens.* Other than the Carve-Out and the Prior Senior Liens, no claim (including any intercompany claim) or lien having a priority superior to or *pari passu* with those granted by the Interim Order to the Replacement DIP Secured Parties shall be permitted while any of the Replacement DIP Obligations remain outstanding, and, except as otherwise expressly provided in this Final Order. The DIP Superpriority Claims and the Noteholder Adequate Protection Claims shall not be subject or junior to any intercompany or affiliate claims of the Debtors. The DIP Liens and the Noteholder Adequate Protection Liens shall not be: (A) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code; (B) subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise; (C) subordinated to or made *pari passu* with any liens arising after the Petition Date, including any liens or security interests granted in favor of any federal, state, municipal, or other governmental unit (including any regulatory body), commission, board or court for any liability of the Debtors; or (D) subject or junior to any intercompany or affiliate lies or security interests of the Debtors.

(b)      *Payment in Full.* Until Payment in Full of all Replacement DIP Obligations, none of the Replacement DIP Loan Parties shall propose or support any chapter 11 plan or sale of all or substantially all of the Replacement DIP Loan Parties' equity or assets, or any order confirming such plan or approving such sale, that is not conditioned upon the Payment in Full (unless otherwise agreed in writing by the Replacement DIP Lender) of all Replacement DIP Obligations on or prior to the earlier to occur of the effective date of such chapter 11 plan or sale.

(c)      *Dismissal/Conversion.* Notwithstanding any order that may be entered dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code: (i) all of the claims, liens and security interests, rights, priorities, privileges, remedies, benefits and protections granted to the Replacement DIP Secured Parties and the Prepetition Secured Parties hereunder and under the Replacement DIP Loan Documents (as applicable) (including the DIP Superpriority Claims, the Noteholder Adequate Protection Claims, the DIP Liens, and the Noteholder Adequate Protection Liens), shall continue in full force and effect and shall maintain their priorities as provided in the Interim Order and this Final Order until all Replacement DIP Obligations and Noteholder Adequate Protection Obligations shall have been Paid in Full, and all such claims, liens and security interests, rights, priorities, privileges, remedies, benefits and protections shall, notwithstanding such dismissal or conversion, remain unaffected and shall remain binding on all parties in interest (and any such order shall, in accordance with sections 105 and 349 of the Bankruptcy Code, so provide), and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal or conversion, for the purposes of enforcing all such claims, liens and security interests, rights, priorities, privileges, remedies, benefits and protections granted to the Replacement DIP

Secured Parties and the Prepetition Secured Parties hereunder and under the Replacement DIP Loan Documents (as applicable).

(d)  *Reversal/Modification.* Based on the findings set forth in this Final Order and the record presented during the Interim Hearing, the Final Hearing and the Chapter 11 Cases, and in accordance with section 364(e) of the Bankruptcy Code, in the event that any or all of the provisions of this Final Order or the Replacement DIP Loan Documents are hereafter reversed, modified, vacated or stayed by a subsequent judgment or order of this Court or any other court, any such reversal, stay, modification or vacatur shall not affect (i) the validity or enforceability of advances previously made hereunder or under the Replacement DIP Loan Documents by the Replacement DIP Secured Parties to the Debtors, (ii) the validity or enforceability of any obligation, indebtedness or liability incurred under the Interim Order, this Final Order or the Replacement DIP Loan Documents (including the Replacement DIP Obligations and the Noteholder Adequate Protection Obligations) by the Replacement DIP Loan Parties to the Replacement DIP Secured Parties and the Prepetition Secured Parties, (iii) the validity, enforceability, or perfection of any of the claims, liens, security interests, rights, privileges or benefits granted hereunder or under the Replacement DIP Loan Documents to the Replacement DIP Secured Parties and the Prepetition Secured Parties, or (iv) the payment of any fees, costs, expenses or other amounts to the Replacement DIP Secured Parties and the Prepetition Secured Parties under the Interim Order, this Final Order and the Replacement DIP Loan Documents, in each case, prior to the actual receipt of written notice by any of the Replacement DIP Agent and/or the Prepetition Agents (as applicable) of the effective date of such reversal, stay, modification, or vacatur. Notwithstanding any such reversal, stay, modification or vacatur, the claims, liens, security interests, rights, privileges, remedies and benefits set forth in the Interim Order or this

Final Order shall be governed in all respects by the original provisions of the Interim Order, this Final Order and the Replacement DIP Loan Documents.

(e)     *Survival*. Except as expressly provided in this Final Order, until all of the Replacement DIP Obligations have been Paid in Full (unless the Replacement DIP Lender have otherwise agreed in writing in respect of the Replacement DIP Obligations), all claims, liens and security interests, rights, priorities, privileges, remedies, benefits, and protections granted to the Replacement DIP Secured Parties under the Interim Order, this Final Order and the Replacement DIP Loan Documents shall survive and shall not be modified, impaired, or discharged by: (i) the entry of an order confirming any chapter 11 plan in any of the Chapter 11 Cases (and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors hereby waive any discharge as to any remaining Replacement DIP Obligations), (ii) the entry of an order converting any or all of the Chapter 11 Cases to a case (or cases) under chapter 7 of the Bankruptcy Code, dismissing any or all of the Chapter 11 Cases, or terminating the joint administration of the Chapter 11 Cases or by any other act or omission, or (iii) the entry of an order approving the sale or disposition of any DIP Collateral (except to the extent expressly permitted in the DIP Loan Documents and this Final Order).

32.     *Proofs of Claim.*

(a)     The Replacement DIP Agent and Replacement DIP Lender shall not be required to file proofs of claim with respect to their Replacement DIP Obligations under the Replacement DIP Documents, and the evidence presented with the Motion and the record established at the Interim Hearing and the Final Hearing are deemed sufficient to, and do, constitute proofs of claim with respect to their obligations, senior secured status, and super-priority.  Additionally, the Bridge Noteholders shall not be required to file proofs of claim in any

of Chapter 11 Cases or any of the Successor Cases in order to assert claims for payment of the Bridge Note Obligations.

(b)     The Prepetition Secured Parties shall not be required to file proofs of claim in any of the Chapter 11 Cases or any of the Successor Cases in order to assert claims for payment of the Adequate Protection Obligations.

(c)     Any order entered by the Court establishing a bar date in any of the Chapter 11 Cases or any Successor Chapter 11 Cases shall not apply to the Replacement DIP Secured Parties, the Bridge Noteholders, the Replacement DIP Obligations, the Adequate Protection Obligations, or the Bridge Note Obligations; *provided* that, notwithstanding any order entered by the Court establishing a bar date in any of the Chapter 11 Cases or any Successor Cases to the contrary, the Prepetition Agents (on behalf of themselves and the applicable Prepetition Secured Parties), the Replacement DIP Agent (on behalf of itself and the Replacement DIP Secured Parties) and the Bridge Noteholders, in their respective discretion, may (but are not required to) file (and amend and/or supplement) in the Debtors' lead Chapter 11 Case, *In re Core Scientific, Inc.*, Case No. 22-90341 (DRJ), a consolidated master proof of claim on behalf of the Prepetition Secured Parties, the Replacement DIP Secured Parties or the Bridge Noteholders (as applicable) (the "***Master Proof of Claim***") against each of the Debtors. Upon the filing of the Master Proof of Claim by any of the Prepetition Agents, the Replacement DIP Agent or the Bridge Noteholders, such party shall be deemed to have filed a proof of claim in the amount set forth opposite its name therein in respect of its claims against each of the Debtors and shall be treated as if it had filed a separate proof of claim in each of the Chapter 11 Cases. Such Master Proof of Claim shall not be required to attach any instruments, agreements or other documents evidencing the obligations owing by each of the Debtors to the applicable party, which instruments, agreements or other

documents will be provided upon reasonable written request to the applicable Prepetition Agent, Replacement DIP Agent, or Bridge Noteholder, as the case may be. With respect to the Prepetition Secured Parties, such Master Proof of Claim shall further not be required to identify whether any Prepetition Secured Party acquired its claim from another party, the identity of any such party, or reflect a change in the holders of the claims set forth therein or a reallocation among the holders of the claims asserted therein resulting from the transfer of all or any portion of such claims.

(d)     The provisions of this paragraph 32 and each Master Proof of Claim are intended solely for the purpose of administrative convenience and shall not (i) affect the right of each Replacement DIP Secured Party, Bridge Noteholder or Prepetition Secured Party (or its successors in interest) to vote separately on any chapter 11 plan proposed in these Chapter 11 Cases (or any Successor Cases), or (ii) any substantive rights of the Prepetition Secured Parties, the Replacement DIP Secured Parties, or the Bridge Noteholders or any party in interest or their respective successors in interest.

33.     *Limitation of Liability.*

(a)     Nothing in the Original Interim Order, the Interim Order, this Final Order, the Replacement DIP Loan Documents or any documents related thereto shall in any way be construed or interpreted to impose or allow the imposition upon any of the Replacement DIP Secured Parties or the Prepetition Secured Parties of any liability for any claim arising from, in connection with or related to the prepetition or postpetition activities of the Replacement DIP Loan Parties or their respective affiliates (as defined in section 101(2) of the Bankruptcy Code) in the operation of their businesses, their restructuring efforts or the administration of these Chapter 11 Cases.

(b)     In determining to make any loan or extension of credit under the Replacement DIP Loan Documents or permit the use of Prepetition Secured Notes Collateral (including Cash Collateral), or in exercising any rights or remedies under this Final Order, the Replacement DIP Loan Documents or the Prepetition Secured Notes Documents, none of the Replacement DIP Secured Parties or the Prepetition Secured Parties shall (i) have any liability to any third party or be deemed to be in control of the operations of any of the Replacement DIP Loan Parties, (ii) owe any fiduciary duty to any of the Replacement DIP Loan Parties, their respective creditors, shareholders or estates, or (iii) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" with respect to the operation or management of any of the Replacement DIP Loan Parties (as such terms or any similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42, U.S.C. §§ 9601 *et seq*., as amended, or any other federal or state statute, including the Internal Revenue Code).

(c)     The Replacement DIP Secured Parties shall not, in any way or manner, be liable or responsible for (i) the safekeeping of the DIP Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof, or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency, or other person, and all risk of loss, damage, or destruction of the DIP Collateral shall be borne solely by the Replacement DIP Loan Parties; *provided* that nothing contained in this paragraph 33(c) shall release the Replacement DIP Secured Parties from their obligations under the Replacement DIP Loan Documents.

34.     *Release of Replacement DIP Secured Parties*. Effective as of entry of the Interim Order and subject to paragraph 23 hereof, each of the Replacement DIP Loan Parties and its respective estate, on its own behalf and on behalf of its predecessors, successors and assigns,

hereby absolutely, unconditionally and irrevocably releases and forever discharges and acquits each of the Replacement DIP Secured Parties and each of their respective Representatives (in their capacities as such) from any and all obligations and liabilities to the Replacement DIP Loan Parties (and their successors and assigns) and from any and all claims, counterclaims, cross-claims, demands, defenses, objections, challenges, offsets or setoff, debts, accounts, contracts, liabilities, remedies, suits, controversies, actions, causes of action, losses, damages, indemnities, reimbursement obligations, attorneys' fees, costs, expenses or judgments, of every kind or nature whatsoever, whether matured or unmatured, known or unknown, asserted or unasserted, suspected or unsuspected, foreseen or unforeseen, accrued or unaccrued, liquidated or unliquidated, fixed or contingent, pending or threatened, arising in law or equity, upon contract or tort, under the Bankruptcy Code, any state or federal common law, statute, rule, regulation or otherwise, including any claim or cause of action seeking (i) any so-called lender liability, (ii) any and all claims arising under the Bankruptcy Code, whether under chapter 5 of the Bankruptcy Code or under applicable law (including any applicable state law Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law)), or otherwise, (iii) reduction, recoupment, recharacterization, subordination (whether equitable, contractual or otherwise), reclassification, disgorgement, disallowance, impairment, marshalling, surcharge or recovery, in each case, that may be asserted by any of the Replacement DIP Loan Parties, their respective estates, predecessors, successors and assigns, in each case, against any of the Replacement DIP Secured Parties or their respective Representatives (in their capacities as such) for or by reason of any act, omission, matter, cause or thing whatsoever arising at any time prior to the date of this Final Order, in connection with, arising under or related to this Final Order, the Replacement DIP Facility, the DIP Liens, the Replacement DIP Obligations, the DIP Collateral,

the transactions contemplated thereunder or hereunder, or the negotiation thereof or hereof, including any claim or cause action with respect to the validity, enforceability, priority, scope, extent or perfection of the DIP Liens, the Replacement DIP Obligations or the Replacement DIP Loan Documents; *provided* that nothing contained in the foregoing shall release the Replacement DIP Secured Parties from their obligations under the Replacement DIP Facility from and after the date hereof.

35.      *Payments Free and Clear.* Any and all payments or proceeds required to be remitted to the Replacement DIP Secured Parties or the Prepetition Secured Parties pursuant to the Replacement DIP Loan Documents, the Original Interim Order, the Interim Order, this Final Order or any subsequent order of this Court shall be irrevocable (subject, solely in the case of the DIP Professional Fees and the Noteholder Professional Fees, only to the procedures set forth in paragraph 11 of this Final Order), and shall be received free and clear of any claim, charge, assessment or other liability, including any claim or charge arising out of or based on, directly or indirectly, section 506(c) of the Bankruptcy Code (whether asserted or assessed by, through or on behalf of the Replacement DIP Loan Parties), or otherwise.

36.      *Joint and Several Liability.* Nothing in this Final Order shall be construed to constitute or authorize a substantive consolidation of any of the DIP Loan Parties' estates, it being understood, however, that the DIP Loan Parties shall be jointly and severally liable for all obligations (including all DIP Obligations and all Adequate Protection Obligations) under the Interim Order, this Final Order and the DIP Loan Documents.

37.      *Third-Party Beneficiary.* Except as expressly set forth herein, no rights are created hereunder for the benefit of any third party, any creditor, equity holder, or any direct, indirect or incidental beneficiary.

38.     *Final Order Controls.* In the event of any express conflict between or among the terms or provisions of this Final Order and any of the Replacement DIP Loan Documents, unless such term or provision in this Final Order is phrased in terms of "defined in" or "as set forth in" the Replacement DIP Credit Agreement or Replacement DIP Loan Documents, or in the event of any conflict or inconsistency between the terms of this Final Order and any other order of the Court, the terms and provisions of this Final Order shall govern and control. Notwithstanding anything contained in any other order entered by this Court to the contrary, any payment made pursuant to, or authorization contained in, any other order entered by this Court shall be consistent with and subject to the requirements set forth in this Final Order and the Replacement DIP Loan Documents, including the Approved Budget (subject to Permitted Variances).

39.     *Effectiveness.* This Final Order shall constitute findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052 and shall take effect and be fully enforceable (in the case of the Adequate Protection Obligations and all liens, security interests, benefits and protections afforded to the Prepetition Secured Parties hereunder, *nunc pro tunc* to the Petition Date) immediately upon entry hereof. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 7062, or 9014, any Local Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order.

40.     *Bankruptcy Rules.* The requirements of Bankruptcy Rules 4001 and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

41.     *Headings.* Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Final Order. When used in this Final Order, the word "including" shall not imply limitation.

42.     *Adequate Protection to Prepetition Equipment Lenders*. Pursuant to sections 361, 362, 363(e), 364(d)(1) and 507 of the Bankruptcy Code, as adequate protection of their purported Prepetition Equipment Liens in Prepetition Equipment Collateral, the Prepetition Equipment Lenders shall be entitled to the following (collectively, the obligations under this paragraph 42, together with the Noteholder Adequate Protection Obligations, the "***Adequate Protection Obligations***"):

(a)     *Equipment Lender Adequate Protection Claims.* The Prepetition Equipment Lenders were, by the Original Interim Order and the Interim Order, and are each hereby granted on a final basis in the amount of any aggregate Diminution in Value of the respective purported Prepetition Equipment Liens in Prepetition Equipment Collateral (as applicable) from and after the Petition Date, superpriority administrative expense claims contemplated by section 507(b) of the Bankruptcy Code against each of the Debtors (the "***Equipment Lender Adequate Protection Claims***," together with the Noteholder Adequate Protection Claims, the "***Adequate Protection Claims***"), which shall be payable by each of the Debtors on a joint and several basis, and shall have recourse to all DIP Collateral. The Equipment Lender Adequate Protection Claims shall be (i) subject and subordinate only to the Carve-Out and the DIP Superpriority Claims, (ii) *pari passu* with the Noteholder Adequate Protection Claims, and (iii) senior to any and all other administrative expense claims and all other claims against the Debtors and their estates, now existing or hereafter arising, of any kind or nature whatsoever.

(b)     *Equipment Lender Adequate Protection Liens.* The Prepetition Equipment Lenders were, by the Original Interim Order and the Interim Order, and are each hereby granted on a final basis, effective and perfected as of the entry of the Original Interim Order, and without the necessity of the execution, recordation or filing by the Replacement DIP Loan Parties or any

of the Prepetition Equipment Lenders of any pledge, collateral or security documents, mortgages, deeds of trust, financing statements, notations of certificates of title for titled goods, or any similar document or instrument, or the taking of any other action (including entering into any control agreements or taking possession or control of any DIP Collateral), in the amount of any aggregate Diminution in Value of the purported Prepetition Equipment Liens in the Prepetition Equipment Financing Collateral (as applicable) from and after the Petition Date, valid, binding, enforceable and automatically perfected post-petition liens and security interests in all DIP Collateral (the "**Equipment Lender Adequate Protection Liens**," and together with the Noteholder Adequate Protection Liens, the "**Adequate Protection Liens**"). The Equipment Lender Adequate Protection Liens shall be (i) junior and subordinated to (A) the Carve-Out, (B) the First-Priority DIP Liens in First-Priority DIP Collateral, (C) the Noteholder Adequate Protection Liens in Prepetition Secured Notes Collateral, and (D) the Prior Senior Liens (other than the Prepetition Equipment Liens that constitute Prior Senior Liens), (ii) *pari passu* with the Noteholder Adequate Protection Liens in the First-Priority DIP Collateral and *pari passu* with the Noteholder Adequate Protection Liens in the Junior-Priority DIP Collateral (other than Prepetition Equipment Financing Collateral and the Prepetition Secured Notes Collateral), (iii) senior to the DIP Liens in Prepetition Equipment Financing Collateral (as applicable) and the Noteholder Adequate Protection Liens in Prepetition Equipment Financing Collateral (as applicable), and (iv) senior to any and all other liens and security interests in the DIP Collateral, including the Noteholder Adequate Protection Liens in the Prepetition Equipment Financing Collateral.

43.      *Limitations of Certain Waivers*. Notwithstanding anything in this Final Order to the contrary, solely from and after the Cash Collateral Termination Declaration Date, (i) the waiver of the right to surcharge the Prepetition Secured Notes Collateral as to the Prepetition Secured Parties

pursuant to section 506(c) of the Bankruptcy Code shall not apply to costs and expenses of administering the Chapter 11 Cases incurred after the Cash Collateral Termination Declaration Date, and (ii) the waiver of any "equities of the case exception" under section 552(b) of the Bankruptcy Code with respect to the Prepetition Secured Notes Collateral as to the Prepetition Secured Parties shall not apply with respect to proceeds of Prepetition Secured Notes Collateral received by the Debtors after the Cash Collateral Termination Declaration Date, and, in the case of each of the foregoing, the rights of all parties in connection therewith are reserved.

44.    *Intercreditor Provisions.*

(a)    Notwithstanding anything set forth in this Final Order or the Replacement DIP Loan Documents to the contrary, until the Replacement DIP Obligations have been Paid in Full, the Replacement DIP Agent (acting at the direction of the DIP Replacement Lender) shall have the sole and exclusive right to enforce rights, exercise remedies, and make determinations regarding the sale, release, or other disposition of all (1) First-Priority DIP Collateral, and (2) Junior-Priority DIP Collateral (other than Prepetition Equipment Financing Collateral and Prepetition Secured Notes Collateral), and each of the Prepetition Secured Parties and the Prepetition Equipment Lenders (x) will not exercise any right or remedies with respect to any such collateral or seek relief from the automatic stay in order to commence any action with respect to such rights and remedies, and (y) will not contest, protest or object to or otherwise interfere with any action or proceeding brought by the Replacement DIP Agent to enforce its rights and remedies relating to such collateral. Following the Payment in Full of the Replacement DIP Obligations, until the Prepetition Secured Notes Obligations have been indefeasibly Paid in Full, (A) the Prepetition Agents (acting at the direction of the requisite Prepetition Secured Parties under the applicable Prepetition Secured Notes Documents) shall have the sole and exclusive right to enforce

rights, exercise remedies, and make determinations regarding the sale, release, or other disposition of any such collateral, and (B) the Prepetition Equipment Lenders (x) will not exercise any right or remedies with respect to any such collateral or seek relief from the automatic stay in order to commence any action with respect to such rights and remedies, and (y) except as permitted in paragraph 20(d) hereof, will not contest, protest or object to or otherwise interfere with any action or proceeding brought by Prepetition Agents (acting at the instruction of the requisite Prepetition Secured Parties under the applicable Prepetition Secured Notes Documents) to enforce their rights and remedies relating to such collateral. Following the Payment in Full of the Prepetition Secured Notes Obligations, the respective Prepetition Equipment Lenders shall have the sole and exclusive right to enforce rights, exercise remedies, and make determinations regarding the sale, release, or other disposition of any of such collateral.

(b)      Notwithstanding anything set forth in this Final Order or the Replacement DIP Loan Documents to the contrary, until the Prepetition Secured Notes Obligations are Paid in Full, the Prepetition Agents (acting at the instruction of the requisite Prepetition Secured Parties under the applicable Prepetition Secured Notes Documents) shall have the sole and exclusive right to enforce rights, exercise remedies, and make determinations regarding the sale, release, or other disposition of the Prepetition Secured Notes Collateral (including, for the avoidance of doubt, any Cash Collateral, whether on deposit in the Replacement DIP Funding Account or otherwise), and each of the Replacement DIP Agent, the Replacement DIP Lender and the Prepetition Equipment Lenders (x) will not exercise any rights or remedies with respect to any such Prepetition Secured Notes Collateral or seek relief from the automatic stay in order to commence any action with respect to such rights and remedies, and (y) will not contest, protest or object to or otherwise interfere with any action or proceeding brought by the Prepetition Agents (acting at the instruction

of the requisite Prepetition Secured Parties under the applicable Prepetition Secured Notes Documents) to enforce their rights and remedies relating to such Prepetition Secured Notes Collateral. Following the Payment in Full of the Prepetition Secured Notes Obligations, until the Replacement DIP Obligations have been indefeasibly Paid in Full, (A) the Replacement DIP Agent (acting at the instruction of the Replacement DIP Lender) shall have the sole and exclusive right to enforce rights, exercise remedies, and make determinations regarding the sale, release, or other disposition of any of such Prepetition Secured Notes Collateral, and (B) the Prepetition Equipment Lenders (x) will not exercise any right or remedies with respect to any such Prepetition Secured Notes Collateral or seek relief from the automatic stay in order to commence any action with respect to such rights and remedies, and (y) will not contest, protest or object to or otherwise interfere with any action or proceeding brought by the Replacement DIP Agent to enforce its rights and remedies relating to such Prepetition Secured Notes Collateral. Following the Payment in Full of the Replacement DIP Obligations, the respective Prepetition Equipment Lenders shall have the sole and exclusive right to enforce rights, exercise remedies, and make determinations regarding the sale, release, or other disposition of any of such Prepetition Secured Notes Collateral.

(c)     Notwithstanding anything set forth in this Final Order or the Replacement DIP Loan Documents to the contrary, each Prepetition Equipment Lender shall have the sole and exclusive right to enforce rights, exercise remedies, and make determinations regarding the sale, release, or other disposition of its Prepetition Equipment Financing Collateral until the obligations under such Prepetition Equipment Lender's Prepetition Equipment Financings are Paid in Full, and each of the Replacement DIP Agent, the Replacement DIP Lender, the Prepetition Secured Parties and the Prepetition Agents (x) will not exercise any rights or remedies with respect to any such Prepetition Equipment Financing Collateral or seek relief from the automatic stay in order to

commence any action with respect to such rights and remedies, and (y) will not contest, protest or object to or otherwise interfere with any action or proceeding brought by any Prepetition Equipment Lender to enforce their rights and remedies relating to such Prepetition Equipment Financing Collateral. Following the Payment in Full of any Prepetition Equipment Financing, until the Replacement DIP Obligations have been indefeasibly Paid in Full, (A) the Replacement DIP Agent (acting at the instruction of the Replacement DIP Lender) shall have the sole and exclusive right to enforce rights, exercise remedies, and make determinations regarding the sale, release, or other disposition of any such Prepetition Equipment Financing Collateral, and (B) the Prepetition Agents (acting at the instruction of the requisite Prepetition Secured Parties under the applicable Prepetition Secured Notes Documents) (x) will not exercise any right or remedies with respect to any such Prepetition Equipment Financing Collateral or seek relief from the automatic stay in order to commence any action with respect to such rights and remedies, and (y) will not contest, protest or object to or otherwise interfere with any action or proceeding brought by the Replacement DIP Agent to enforce its rights and remedies relating to such Prepetition Equipment Financing Collateral.

(d)     Unless and until the applicable "senior" debt obligations described in paragraphs 44(a)-(c) of this Final Order are Paid in Full, any DIP Collateral or proceeds thereof received by the applicable "junior" agent or any "junior" debt holder described in paragraphs 44(a)-(c) of this Final Order, in connection with the exercise of any remedies hereunder or in connection with the receipt of any payment or distribution from the Replacement DIP Loan Parties, shall be segregated and held in trust and forthwith paid over to the applicable "senior" agent for

the benefit of the applicable "senior" debt holders in the same form as received, with any necessary endorsements or as the applicable "senior" agent may otherwise direct.[9]

(e)     Nothing in this paragraph 44 shall be read to provide any creditor any right to exercise any remedies not otherwise permitted in this Final Order, to permit the payment of any prepetition debt (absent further order of the Court), or to prevent the Debtors from seeking any relief from this Court or from operating their business in the ordinary course.

45.     *Reservation of Rights With Respect to Post-Petition Bitcoin.*  Nothing in this Final Order or in the Replacement DIP Loan Documents shall impair, prejudice or waive the assertion by the Prepetition Secured Parties and the Prepetition Equipment Lenders, respectively, that the Prepetition Secured Notes Liens and the Prepetition Equipment Financing Liens (as applicable), extend to the Debtors' post-petition Bitcoin (as applicable), and all rights and remedies of the Prepetition Secured Parties and the Prepetition Equipment Lenders in connection therewith (and all rights and remedies of the Debtors, the Replacement DIP Lender, and the Official Committee to contest such assertions) are hereby expressly preserved.

46.     *Necessary Action.* The Replacement DIP Loan Parties, the Replacement DIP Secured Parties are authorized to take any and all such actions as are necessary, required or appropriate to implement and effectuate the terms of this Final Order, the Replacement DIP Loan Documents and the transactions contemplated hereunder and thereunder.

47.     *Fees and Scope of Other Committees*. Nothing in this Final Order shall be deemed to expand the scope of any official committee appointed in these cases, or authorize payment of any fees to any such committee, beyond the scope and budget set forth in the order appointing such committee; *provided*, *however*, this paragraph shall not apply to the Official Committee.

---

[9] A chart reflecting the relative priorities of each of the liens and security interests described in this Interim Order is attached hereto as **Exhibit 2**.

48.     *Retention of Jurisdiction.* The Court retains jurisdiction to hear, determine and enforce the terms of any and all matters arising from or related to the Replacement DIP Facility, the Replacement DIP Loan Documents and this Final Order, and the Court's jurisdiction shall survive confirmation and consummation of any chapter 11 plan for any of the Debtors notwithstanding the terms or provisions of any such chapter 11 plan or any order confirming any such chapter 11 plan.

     **Signed:  March 01, 2023.**

**DAVID R. JONES
UNITED STATES BANKRUPTCY JUDGE**