IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| CORE SCIENTIFIC, INC., *et al.*, | § § § | Case No. 22-90341 (DRJ) |
| | § § | (Jointly Administered) |
| Debtors.[1] | § § § | |

DEBTORS' REPLY TO OBJECTION TO
MOTION OF THE DEBTORS FOR ORDER EXTENDING EXCLUSIVE
PERIODS PURSUANT TO SECTION 1121(D) OF THE BANKRUPTCY
CODE AND STATEMENT IN FURTHER SUPPORT OF THE MOTION

Core Scientific, Inc. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), file this (i) reply in support of the *Motion of the Debtors for Order Extending Exclusive Periods Pursuant to Section 1121(D) of the Bankruptcy Code* (ECF No.773) (the "**Motion**") in response to the objection (and joinders thereto) to the Motion[2] and (ii) statement in further support of the Motion and respectfully represent as follows:[3]

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6073); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions, VII, LLC (3198). The Debtors' corporate headquarters and service address is 210 Barton Springs Road, Suite 300, Austin, Texas 78704.

[2] *Objection to the Motion of the Debtors of Order Extending Exclusive Periods Pursuant to Section 1121(D) of the Bankruptcy Code* (ECF NO. 834) (the "**Objection**"); *Joinder of MassMutual Asset Finance LLC* (ECF No. 836); *Limited Joinder of Baring BDC, Inc., Barings Capital Investment Corporation, and Barings Private Credit Corp. to Objection to the Motion of the Debtors for Order Extending Exclusive Periods Pursuant to Section 1121(D) of the Bankruptcy Code* (ECF. No. 838); and *Blockfi Lending LLC's (I) Limited Joinder to Objection to the Motion of the Debtors for Order Extending Exclusive Periods Pursuant to Section 1121(D) of the Bankruptcy Code; and (II) Reservation of Rights* (ECF No. 840) (collectively, the "**Objection/Joinders**").

[3] Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Motion.

**Preliminary Statement**

1.     The Court should extend the Exclusive Periods as requested in the Motion. As discussed in more detail therein, the Debtors requested the extension of the Exclusive Periods to enable them revise their Business Plan and commence negotiations with their stakeholders regarding a consensual plan of reorganization. Indeed, since filing the Motion, the Debtors have made substantial progress. They finalized the Business Plan, shared it with the advisors to their stakeholders, including the Objectors (as defined below), and conducted meetings with the stakeholders' advisors to present and discuss the Business Plan. They have also been providing diligence to the stakeholders' advisors regarding the Business Plan and engaging in follow-up meetings with them to the extent there are any questions that arise as the advisors review, analyze and diligence the Business Plan. The Debtors are prepared to commence plan negotiations with their constituents in the coming weeks and, after building as much consensus as reasonably possible, hope to file a chapter 11 plan of reorganization in the near term. Allowing other stakeholders to file competing plans at this juncture would be detrimental to the ongoing chapter 11 plan process, creating chaos and delay that will only harm stakeholders.

2.     Further, the Debtors' key constituents – including both official committees – support the requested extension of exclusivity.[4] The Debtors' senior secured noteholders do not object to the extension.[5] The sole objectors are certain of the Debtors' equipment lenders (the "**Objectors**"). The Objectors, however, all but concede that their objection has little to do with the Debtors' request for an extension of the Exclusive Periods. In reality, it is

---

[4] *See generally Statement of the Ad Hoc Group with Respect to the Motion of the Debtors for Order Extending Exclusive Periods Pursuant to Section 1121(d) of the Bankruptcy Code* (ECF No. 839) (the "**Ad Hoc Group Statement**"); *see also* Motion ¶¶ 15, 52.

[5] *See generally* Ad Hoc Group Statement.

2

more about their dissatisfaction over the lack of payments for the use of their collateral, the value of which, by the Objectors' own admission, is not diminishing in value.[6] But this is not a reason for the Court to deny an extension of the Exclusive Periods. As the Court is aware, the Objectors negotiated and received adequate protection, including liens and superpriority claims, in connection with the Debtors' debtor-in-possession financing.[7] To the extent the Objectors believe further adequate protection is warranted, they are free to seek such relief from the Court. Objecting to the Debtors' request for an exclusivity extension – which is supported by all other constituents – is not the proper avenue to obtain relief with respect to their collateral.

3. Finally, the Objectors suggest that the Debtors have been unresponsive to the Equipment Lenders' concerns. This is simply untrue, and again, is relevant to adequate protection, not exclusivity. Throughout the chapter 11 cases, the Debtors' advisors have communicated regularly with the Equipment Lenders' advisors, keeping them apprised of developments in these chapter 11 cases, as the Objectors acknowledge.[8] The Debtors' advisors hold weekly calls with the Equipment Lenders' advisors to discuss liquidity, business issues, and the general status of the chapter 11 cases, including upcoming motions, as well as to answer any questions the Equipment Lenders' advisors may have. During those weekly calls, the Debtors' advisors discussed with the Equipment Lenders' advisors their intent to seek an extension of exclusivity. Not once did the Equipment Lenders raise with the Debtors' advisors the supposed concerns and objections set forth in the Objection/Joinders before filing those pleadings with the Court. In addition, as mentioned, the Debtors recently presented the Business Plan to the

---

[6] *See* Objection ¶¶ 3, n. 5, 11.

[7] *See Final Order (I) Authorizing the Debtors to (A) Obtain Senior Secured Non-Priming Superpriority Replacement Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay and (IV) Granting Related Relief* (ECF No. 608) (the "**DIP Order**").

[8] *See* Objection ¶ 18.

Equipment Lenders' advisors, and the Debtors intend to negotiate with the Equipment Lenders as part of the ongoing chapter 11 plan process.

4.  The Debtors share the Objectors' and Ad Hoc Group's goal of an expeditious exit from chapter 11. Now that the Business Plan is finalized, the Debtors are turning their attention to the next step of achieving that goal – a consensual chapter 11 plan. Extending exclusivity provides the best path to emerge quickly, which all parties agree is in the Debtors' and their constituents' best interests.

5.  Accordingly, for the reasons discussed herein, the Debtors respectfully request that the Court overrule the Objection/Joinders to extend the Exclusive Periods.

## Reply

**A. An Extension of the Exclusive Periods is Warranted to Enable the Debtors to Negotiate and File a Chapter 11 Plan of Reorganization**

6.  The Debtors acknowledge that these chapter 11 cases will extend for a longer period of time than originally anticipated at the outset of the chapter 11 cases.[9] Nonetheless, as described in the Motion, favorable changes in the cryptocurrency and power markets – factors clearly beyond the Debtors' control – rendered the Debtors' prior business plan obsolete and the allocation of value set forth in the Debtors' original RSA[10] unsupportable and unfair. The change in circumstances required the Debtors and their advisors to pivot to the new Business Plan anchored to assumptions reflecting the latest economic backdrop. The Debtors deftly adapted to the changing environment. They completed the Business Plan and have shared it with their key creditor constituents.

---

[9] *See* Objection ¶ 8.
[10] *See* First Day Declaration, Exhibit B, Restructuring Support Agreement (ECF No. 72).

7. Having shared the Business Plan, the Debtors are prepared to commence plan negotiations with their constituents. Reasonably, the Debtors need additional time to negotiate a plan of reorganization premised upon the new Business Plan without the threat and distraction of competing chapter 11 plans. This alone constitutes cause for the requested extension,[11] particularly given that this is the Debtors' first requested extension in a complex chapter 11 case.[12]

8. The Objectors point out that the Debtors' fortunes may reverse and the price of bitcoin may decrease in the future.[13] Obviously, this is possible. The Debtors and their advisors, however, can only formulate a Business Plan that is aligned with current market realities. The fact that current market conditions may change is not a reason to deny the Debtors the opportunity to formulate a consensual plan based upon current market conditions and the new Business Plan. In any case, the Debtors are puzzled by the Objectors' position, as their large deficiency claims would have received minimal recovery under the RSA,[14] but will almost certainly receive a higher recovery under a new chapter 11 plan, which will be much more favorable now that bitcoin prices

---

[11] *See In re Apex Pharm., Inc.*, 203 B.R. 432, 441 (N.D. Ind. 1996) ("It is true that during the initial one hundred twenty (120)-day period in which debtors have an exclusive right to file a plan of reorganization . . . the bankruptcy courts apply a lesser standard in determining whether the burden of showing 'a reasonable possibility of a successful reorganization within a reasonable time' has been satisfied.") (citation omitted); *In re Borders Grp., Inc.*, 460 B.R. 818, 825 (Bankr. S.D.N.Y. 2011) (same); *see also In re Shree Meldikrupa Inc.,* 547 B.R. 862, 864 (Bankr. S.D. Ga. 2016) ("During the period in which debtors have an exclusive right to file a plan of reorganization, *see* 11 U.S.C. § 1121(b), (c)(2), these courts apply a lesser standard in determining whether the burden of showing "a reasonable possibility of a successful reorganization within a reasonable time" has been satisfied.").

Courts routinely grant a debtor's initial request for an extension of the exclusive periods. *See, e.g.*, *In re Talen Energy Supply, LLC, et al*, Case No. 22-90054 (MI) (Bankr. S.D. Tex. Sept. 27, 2022) (ECF No. 1285) (granting 105-day extension of the exclusive filing period and 45-day extension of the exclusive solicitation period); *In re CBL & Associates Properties, Inc.*, No. 20-35226 (Bankr. S.D. Tex. Mar. 19, 2021) (ECF No. 976) (granting 90-day extension); *In re Fieldwood Energy LLC*, No. 20-33948 (Bankr. S.D. Tex. Jan. 8, 2021) (ECF No. 751) (granting 90-day extension).

[12] As discussed in the Motion, among other things, the Debtors have a complex capital structure consisting of multiple tranches of debt with different legal rights and priorities and secured by different collateral packages.

[13] *See* Objection ¶¶ 1, 3-5.

[14] *See* RSA, Exhibit A, Restructuring Term Sheet (allocating 3% of post-reorganization equity to holders of general unsecured claims and equity interests).

have increased. The pivot from the RSA, and the requisite additional time to formulate the new Business Plan and chapter 11 plan, can only benefit the Equipment Lenders, as well as the Debtors' unsecured creditors and equity holders, relative to the circumstances at the outset of these cases.

9. Tellingly, the Objectors do not – and cannot – explain how terminating exclusivity resolves their concern about a potential future drop in bitcoin prices. Nor do they propose any viable solution of their own. What is clear, however, is that terminating exclusivity and enabling other stakeholders to propose a competing plan while the Debtors try to negotiate a consensual plan based on the Business Plan will only hamper the Debtors' reorganization prospects to the detriment of all parties in interest.

10. Further, although the Objectors attempt to downplay the fact that the Debtors have obtained consent to the extension from all of their other constituents,[15] this broad support plainly indicates that the other key constituents – all with divergent interests – understand the importance of the Debtors' chapter 11 plan process, and the damage and delay that a termination of exclusivity would cause. Additionally, the Objectors' assertion that their support for the extension was "neither requested nor discussed"[16] is disingenuous. As the Objectors acknowledge, the Debtors' advisors hold weekly calls with the Equipment Lenders' advisors and keep them apprised of the developments in the chapter 11 cases.[17] The Debtors informed the Equipment Lenders that they planned to request an extension of exclusivity. The Objectors did not raise any objections or concerns with the request. The Debtors respectfully submit that the Objectors should have voiced their concerns with the Debtors' advisors, instead of surprising the

---

[15] *See* Objection ¶ 18.
[16] *Id.*
[17] *Id.*

6

Debtors with an objection and forcing the Debtors to expend estate resources on a contested exclusivity hearing.

### B. The Objectors Should Not Be Permitted to Use an Exclusivity Objection to Extract Payments from the Debtors

11. It is apparent from the Objection that it is not the requested exclusivity extension that actually troubles the Equipment Lenders. Rather, it is the fact that the Debtors are using the equipment subject to the Equipment Lenders' liens without making adequate protection payments. Indeed, numerous times in the Objection, the Objectors bemoan the fact that the Debtors are utilizing such equipment and even allege that the Debtors are somehow holding the Equipment Lenders "hostage."[18] This is untrue and therefore does not constitute a valid reason for the Court to terminate exclusivity.

12. First, the Debtors have not done anything to the Equipment Lenders that the Debtors are not otherwise entitled to do as debtors in possession, in accordance with the Bankruptcy Code. Second, this purported ongoing harm to the Equipment Lenders is undoubtedly overstated, as the Objectors admit that their equipment is appreciating in value.[19] Moreover, and perhaps more importantly, in connection with the Replacement DIP Facility, the Debtors engaged in good faith, extensive negotiations with the Equipment Lenders and provided them with the adequate protection superpriority claims and liens set forth in the DIP Order, further protecting their interests and resolving their objections to the Replacement DIP Facility.[20]

---

[18] *See* Objection ¶¶ 1, 2, 4, 7, 11-14, 16, 20.

[19] *See* Objection ¶¶ 3, n. 5, 11.

[20] *See* Objection ¶¶ 7, 11; DIP Order ¶ 42(a)-(b); *see also Declaration of Russell Cann in Support of Emergency Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Replacement Senior Secured Non-priming Replacement Superpriority Postpetition Financing, (B) Use Cash Collateral, and (C) Pay Off Existing Postpetition Financing Facility, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Granting Adequate Protection to the Prepetition Secured Parties, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* (ECF No. 392) (the "**Cann Declaration**").

13. Third, an exclusivity objection is not the appropriate process for the Equipment Lenders to angle for affirmative relief from the Court and extract payments from the Debtors. To the extent the Objectors believe they are entitled to additional adequate protection, they can file a motion with the Court, to which the Debtors will respond appropriately. The Objectors' disappointment that the Debtors are not making adequate protection payments in exchange for their use of equipment is not a reason to terminate the Debtors' exclusivity and derail the plan process.

**C. The Debtors Take Serious Issue with Statements Made by the Ad Hoc Group**

14. As discussed above, the Ad Hoc Group supports the extension of the Exclusive Periods. While the Debtors appreciate the support, they feel compelled to respond to certain statements made by the Ad Hoc Group in the statement it filed with respect to the Motion.[21] The Ad Hoc Group's allegation that the Debtors have "slow-played" the chapter 11 cases at the expense of their constituents,[22] is false and is unsupported by any facts or evidence. As discussed in more detail in the Motion, the environment and market in which the Debtors operate has changed dramatically since the Petition Date. The Debtors simply needed additional time to adapt to the changing economic conditions, including, most importantly, by developing the new Business Plan.

15. The Ad Hoc Group further alleges that these chapter 11 cases have not "advanced" towards a plan and no business plan has been delivered.[23] As discussed above, the Debtors have now delivered the Business Plan to the Ad Hoc Group advisors. The Debtors are also prepared to engage with their constituents – including the Ad Hoc Group – in plan discussions based upon the Business Plan. The Debtors anticipate filing a plan of reorganization in the near

---

[21] *See generally* Ad Hoc Group Statement.
[22] *See* Ad Hoc Group Statement ¶ 3.
[23] *Id.*

term after attempting to build consensus and intend to seek confirmation of the plan expeditiously thereafter.  The Debtors are eager to exit chapter 11 and move on to a new chapter of their existence as soon as possible.

16. The Debtors recognize the Ad Hoc Group's disappointment over termination of the RSA (which the Debtors entered into to access critical DIP financing), as such termination means the convertible noteholders will no longer be getting 97% of the equity of the reorganized company and will have to share value with other constituents.  However, the shift in direction necessitated by the change in industry conditions has been beneficial to the rest of the Debtors' stakeholders, and the Debtors must act consistently with their duty to maximize value for all stakeholders.

## Conclusion

17. For the reasons set forth herein and in the Exclusivity Motion, the Objections should be overruled and the Debtors' request for an extension of the Exclusive Periods as set forth in the Proposed Order should be granted.

*[Remainder of Page Intentionally Left Blank]*

Dated:  May 19, 2023
       Houston, Texas

                                              Respectfully submitted,

       /s/ Alfredo R. Pérez
WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (15776275)
700 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone:  (713) 546-5000
Facsimile:  (713) 224-9511
Email: Alfredo.Perez @weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Ray C. Schrock (admitted *pro hac vice*)
Ronit J. Berkovich (admitted *pro hac vice*)
Moshe A. Fink (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Email:    Ray.Schrock@weil.com
           Ronit.Berkovich@weil.com
           Moshe.Fink@weil.com

*Attorneys for Debtors
and Debtors in Possession*

**Certificate of Service**

I hereby certify that on May 19, 2023, a true and correct copy of the foregoing document was served as provided by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/ *Alfredo R. Pérez*
Alfredo R. Pérez