# EXHIBIT A

## MASTER SERVICES AGREEMENT

This Master Services Agreement ("**Agreement**") effective as of December 18, 2020 ("**Effective Date**") is between CORE SCIENTIFIC, INC. ("**Company**") and CELSIUS CORE LLC ("**Client**").

**WHEREAS**, Client desires access to locate its Client Equipment (as defined below) at the Company Facility (as defined below) and receive certain Services (as defined below); and

**WHEREAS**, Company desires to provide such Services at its Company Facility.

The parties agree as follows:

1.       **AGREEMENT STRUCTURE**

a.       This Agreement provides general terms applicable to Company's provision of certain services, including, without limitation, colocation, hosting, rack space, security, monitoring, maintenance, utilities, Client Equipment maintenance and repair, facility management, account management, network and data access, technical support, and heat and thermal management services ("**Services**") to Client in a data center owned or operated by Company or its affiliates ("**Company Facility**") in mutually agreed transactions described in mutually executed ordering documents in the form of Exhibit A attached hereto that reference and are governed by this Agreement ("**Orders**").  Each Order will be a separate agreement between Company and Client and will be deemed to incorporate the terms of this Agreement by reference. Company may require Customer to provide evidence of creditworthiness or credit support acceptable to Company in its sole discretion as a condition to accepting any Order.  In the event of any conflict or inconsistency between the terms of this Agreement and the specific terms of an Order, the specific terms of the Order govern with respect to such Order.

2.       **SERVICES AND COMPANY FACILITY**

a.       Company will provide Client the Services at a Company Facility set forth in an Order.  This Agreement is not intended to and does not constitute a lease of any real or personal property or a grant of any other real property interest.   Unless otherwise set forth in an Order, Client Equipment is owned by Client will not be construed as fixtures or fittings or otherwise attached to a Company Facility.  Company retains title to all racking, connectors, fittings, parts and other materials used or provided by Company at a Company Facility to provide Client the Services.  Client acknowledges and agrees that access to a Company Facility may be provided only during Company's ordinary business hours and only upon Company's prior written consent, which shall be subject in all events to the terms of this Agreement and may be withheld, conditioned or delayed in Company's sole discretion.. Client will be liable for the actions of all persons accessing Company Facility on its behalf.

b.       Company has the right to review and the sole right to approve any delivery, installation (including, without limitation, the location and position of Client Equipment at the Company Facility), replacement or removal work with respect to Client's computer hardware or other tangible equipment ("**Client Equipment**") at a Company Facility.  Client shall be fully responsible for delivering all Client Equipment to Company at a specified Company Facility on or before the applicable scheduled delivery date, each as specified in an Order.  Client will be responsible for all risk of loss or damage to Client Equipment at all times until such Client Equipment is accepted by Company at a designated Company Facility.

c.       Client Equipment will adhere to Company's specifications, procedures, rules, and regulations, including, without limitation, equipment labeling and tracking and security practices and policies for the Company Facility, all of which are incorporated herein by this reference.  If Company determines in its sole

DocuSign Envelope ID: D20E8BC9-A9A6-44CD-8E7A-E3644866990B

discretion that Client Equipment or related operating software does not conform to its policies or is not suitable for the provision of Services at the Company Facility, Company may suspend installation of Client Equipment and operating software or commencement of the Services until Company approves of the Client Equipment and operating software.  Company has no responsibility or liability for any loss or damage to Client Equipment, including without limitation any damage to Client Equipment, failure to adhere to any manufacturer warranty, the voiding of any manufacturer warranty or loss of or inability to collect under any manufacturer warranty, unless directly caused by the gross negligence, bad faith or willful misconduct of Company.

d.      Client is responsible for costs and expenses regarding the installation, repair, replacement and removal of Client Equipment and tariffs, taxes, shipping costs or other expenses associated with owning, shipping, importing or transporting Client Equipment.  Upon any expiration or termination of an applicable Order, Company will provide Client with a written notice, which may be by email (the "**Retrieval Notice**"), of the date when Client Equipment is ready to be removed from Company Facility, which will be at Client's sole expense. Such notice will document the condition of Client Equipment being prepared for shipment, any outstanding amounts owed by Client to Company and Client shall have five (5) calendar days from the date set forth in the Retrieval Notice to pay any outstanding amounts owed to Company and remove at Client's sole cost and expense Client Equipment from Company Facility.  Client will hold Company harmless from any damage caused to Client Equipment during such pickup and removal of Client Equipment.  The failure or delay by Client to retrieve Client Equipment on or before the date set forth in the Retrieval Notice will constitute abandonment of Client Equipment under the laws of the jurisdiction where the Client Equipment is located and Company will be entitled to pursue at Client's sole risk and expense all available remedies, including, without limitation, the actions set forth in Section 4(d), as applicable.

e.      In order to continue to provide the Services, from time to time Company may request, and Client shall promptly provide, information regarding Client Equipment, Client's related operating software, Client's systems, and other information reasonably necessary in Company's provision of the Services.

f.      If software and services of a third party are requested by Client in conjunction with the Services ("**Third Party Services**") and identified in an Order, Client acknowledges and agrees that such Third Party Services are the responsibility of the third party, subject to separate terms and conditions between such third party and Client and Company accepts no responsibility for the performance of such Third Party Services or any loss or damage arising from or associated with the provision of such Third Party Services.

**3.      PAYMENT TERMS AND TAXES**

a.      Company will invoice Client monthly in advance for all applicable fees for use of Company Facility and provision of Services as set forth in the applicable Order.  Client will pay all invoiced amounts in US dollars within ten (10) calendar days of the date of the invoice.  All payments must be (i) in US dollars into an ACH account number as set forth in the applicable Order; or (ii) to another account or form of payment directed by Company. Interest shall be charged on past due amounts at the lesser of (A) one and a half percent (1.5%) per month; or (B) the highest rate permitted by applicable law.

b.      Client may, in good faith, dispute any invoice or any part thereof (a "**Disputed Amount**") by submitting a written notice of such dispute along with reasonable supporting documentation within three (3) calendar days of the date of the initial invoice on which the Disputed Amount appears, failing which Client waives all rights to dispute such Disputed Amount and to file any claim.  Company will review the Disputed Amount after its receipt of the relevant notice and if Company determines that Client was billed in error, a credit for the amount invoiced incorrectly will be made to the next invoice.  If Company determines that the amount was invoiced correctly, Client will pay the amount by the due date of the next invoice.  For clarity, Client shall promptly pay all undisputed amounts.

c.      All amounts payable to Company under this Agreement exclude applicable taxes.  Client is responsible for (i) taxes related to its activities and the ownership and operation of Client Equipment; and (ii) taxes imposed, levied or assessed thereon by any governmental or other authorities.  If Client is required to make any deduction, withholding or payment for taxes in any jurisdiction on amounts payable to Company, such amounts will be increased such that after making such deduction, Company receives an amount equal to what it would have received if such deduction, withholding or payment had not been made.

## 4.      TERM, TERMINATION, MODIFICATION AND SUSPENSION

a.      This Agreement commences on the Effective Date and continues until terminated as permitted by this Agreement.  Each Order commences on the effective date set forth in the Order, has the initial term ("**Initial Term**") set forth in the Order, and thereafter automatically renews for the additional periods set forth in the Order, or if no renewal period is set forth then one (1) year periods, (each, a "**Renewal term**" and collectively, the "**Term**") unless Client notifies Company in writing not less than ninety (90) calendar days before such renewal of its desire for the order not to renew.

b.      Either party may terminate an Order upon written notice to the other party and take such other action identified in Section 4 d. below if the other party materially breaches such Order or this Agreement and fails to cure such breach within thirty (30) calendar days (5 days in the case of failure to pay an Unpaid Balance (as defined below) or 2 days in the case of failure to pay an Unpaid Balance two or more times during any twelve month period) .  If the breach (other than Client failure to pay amounts when due) cannot be cured within thirty (30) calendar days, the breaching party shall be given a reasonable period of time, but not to exceed sixty (60) calendar days after receipt of the notice, to cure the breach, provided that the breaching party acts promptly and diligently to cure such breach.

c.      Either party may terminate this Agreement upon written notice to the other party if there have been no Orders in effect for twelve (12) consecutive months.

d.      In addition to the remedy set forth in Section 4 b. above if Client fails to pay all invoiced amounts when due (an "**Unpaid Balance**"), or otherwise fails to perform any of its obligations under this Agreement after opportunity to cure as provided in Section 4 b above Company may, in its sole discretion, take certain actions including, without limitation, the following actions, at Client's sole risk and expense:

   (i)      suspend the provision of the Services;
   (ii)     disconnect Client Equipment and store it;
   (iii)    declare all amounts due under the applicable Order through the balance of the Term to be immediately due and payable;
   (iv)     operate Client Equipment for cryptocurrency mining and other activities at Company's sole discretion and direct all resulting proceeds to Company's own account until Company has recovered all amounts due, including, without limitation, any reinstatement, disconnection or storage fees or costs;
   (v)      terminate this Agreement and all Orders; and
   (vi)     exercise all other rights under this Agreement, at law, in equity or otherwise.

Unless Company has terminated this Agreement, Company will reverse the suspension of the provision of the Company Facility and Services and disconnection of Client Equipment as soon as reasonably practical after it is satisfied Client has cured the acts or omissions giving rise to the suspension and disconnection.  In connection with the foregoing, Company may charge a reinstatement fee.  Thereafter, Company may, at its sole discretion, require an advance payment equal to the amount of one billing invoice.

e.      Notwithstanding anything in this Agreement to the contrary, Company may suspend its provision of

all or a portion of the Services and disconnect all of a portion of Client Equipment immediately if Company determines in its sole discretion that: Client's use of the Services or Client Equipment (i) may adversely impact or pose a security risk to Company's operation or maintenance of the Company Facility or Company's other clients; (ii) may subject Company to liability; or (iii) is not in compliance with this Agreement or Company's policies.  Company will use commercially reasonable efforts to notify Client, which may be via email or telephone, of such suspension or disconnection.  Company will use commercially reasonable efforts to reverse such suspension or disconnection as soon as reasonably practical after it is satisfied that Client has cured the acts or omissions giving rise to such suspension and disconnection.  In connection with the foregoing, Company may charge a reinstatement fee as set forth in the applicable Order.  Further, Company may terminate this Agreement and all Orders if such suspension or disconnection continues for at least two (2) calendar days or occurs more than three (3) times in any twelve (12) month period.  For clarity, during the period of suspension or disconnection, Client remains responsible for all fees and charges Client incurs during such period.  Further, after the Effective Date, if Company determines in its sole and absolute discretion that as a result of any change in, or interpretation, introduction or administration of, any laws, regulations, statutes, treaties, rules, guidelines, ordinances, codes or the like, or any proposed or anticipated changes in, or interpretations, introduction or administration of the foregoing (a "**Change in Law**"), has resulted in an increase in Company's cost of compliance with such Change in Law then Company may, in its commercially reasonable discretion, take certain actions, including, without limitation, the following actions, at Client's sole risk and expense: (i) terminate this Agreement, any or all Orders; and/or (ii) modify the Services as may be necessary to account for such Change in Law. Company will use commercially reasonable efforts to notify Client of such Company actions and the effective date of such actions.

f.      Further, and notwithstanding the Change in Law related costs above, after the Effective Date, if there are any increases, changes in, or introduction or administration of, any new taxes, levies, tariffs or governmental fees and charges with respect to the provision of Services, Company may, in its sole and absolute discretion, pass through all such amounts to Client ("**Increased Costs**") and Client shall pay all Increased Costs in accordance with the payment and invoicing procedures as set forth in this Agreement.

g.      Company shall not be liable for any Client loss or damage whatsoever as a result of the exercise of its rights under this Agreement.  Upon termination of this Agreement or an Order by Company, Company is entitled to recover from Client all loss or damages incurred by Company as a result of such termination, outstanding fees, costs, charges, assessments, reimbursements, and expenses (including, without limitation, costs of collection and reasonable attorneys' fees).

h.      In addition to Section 4(f), the Company may terminate or suspend all or a portion of the Services if necessary to be in compliance with applicable law, rules, regulations, administrative or judicial orders or decree.   Company will use commercially reasonable efforts to notify Client, which may be via email or telephone, of such suspension.  Client agrees that the Company shall have no liability whatsoever to Client for any damage, loss, expense or cost as a result of such termination or suspension.

## 5.      WARRANTIES, LIMITATION OF LIABILITY, INDEMNITY

a.      Each party represents, warrants, and covenants that it has full legal capacity, right, power and authority to execute and perform its obligations under this Agreement.  Company represents, warrants, and covenants that it will provide Company Facility and perform the Services in a professional and workmanlike manner.  Client represents, warrants, and covenants (i) Client owns and has good title to Client Equipment, free and clear of any mortgage, pledge, lien, charge, security interest, claim or other encumbrance or has interest in Client Equipment as part of a financing or other arrangement disclosed and approved by Company; (ii) Client Equipment has no defects, is in good condition and is adequate for the purpose it will be used, and is not in need of maintenance or repair except for ordinary, routine maintenance and repairs that are not material in nature or cost; (iii) Client Equipment has not experienced any failure or outage and has

DocuSign Envelope ID: D20E8BC0-A946-44CD-8E7A-E3644866990B

not been modified in any way from its original manufactured condition; (iv) Client Equipment is in a condition suitable for continued optimal cryptocurrency mining operations, including, without limitation, in the same manner as conducted prior to the Effective Date; (v) Client Equipment has been operated at all times indoors in an appropriate temperature-controlled environment and consistent with the manufacturer's recommended temperatures and operating conditions; (vi) Client Equipment has always been transported and/or handled in a protected manner normally expected when transporting and/or handling sensitive computer hardware; (vii) Client will use the Services only for lawful purposes, and Client will not transmit, retransmit or store material with or in Client Equipment or with or in Company Facility in violation of any federal or state law or regulations or local code, rule, regulation or ordinance; and (viii) Client will comply with  applicable laws and regulations in connection with this Agreement.  Without limiting the foregoing, Client further represents, warrants, and covenants neither Client, any officer, director, employee, partner, controlling shareholder, affiliated entity nor anyone acting on Client's behalf (A) has used or disclosed or will use or disclose non-public information obtained from Company, (B) has violated or will violate applicable anti-bribery or anti-corruption laws, including the U.S. Foreign Corrupt Practices Act and the U.K. Bribery Act 2010, (C) has violated or will violate applicable anti-money laundering statutes, or (D) is a Denied Party or subject to any U.S. sanction imposed by the Office of Foreign Assets Control of the U.S. Department of the Treasury.

b.      EXCEPT AS OTHERWISE SET FORTH IN THIS AGREEMENT, COMPANY DOES NOT MAKE AND HEREBY DISCLAIMS ALL WARRANTIES, INCLUDING, WITHOUT LIMITATION, EXPRESS, IMPLIED AND STATUTORY WARRANTIES THAT COMPANY FACILITY  OR SERVICES WILL BE UNINTERRUPTED, ERROR-FREE, OR COMPLETELY SECURE, AND THE IMPLIED WARRANTIES OF MERCHANTABILITY OR SATISFACTORY QUALITY, FITNESS FOR A PARTICULAR PURPOSE AND NONINFRINGEMENT OF ANY THIRD PARTY'S INTELLECTUAL PROPERTY RIGHTS.  ALL COMPANY FACILITY AND SERVICES ARE PROVIDED OR PERFORMED ON AN "AS IS", "AS AVAILABLE" BASIS, AND CLIENT'S USE OF THE COMPANY FACILITY AND SERVICES IS SOLELY AT ITS OWN RISK.  CLIENT ACKNOWLEDGES AND AGREES THAT COMPANY DOES NOT AND CANNOT CONTROL THE FLOW OF DATA OR POWER TO OR FROM COMPANY'S NETWORK AND/OR THE INTERNET OR POWER GRID, WHICH ARE PROVIDED OR CONTROLLED BY THIRD PARTIES, AND THAT ACTIONS OR INACTIONS OF THIRD PARTIES CAN IMPAIR OR DISRUPT COMPANY'S CONNECTIONS TO THE INTERNET OR POWER GRID (OR PORTIONS THEREOF) INCLUDING, WITHOUT LIMITATION, INTERRUPTIONS IN SERVICE CAUSED BY GOVERNMENT REGULATIONS OR ORDERS, SYSTEM CAPACITY LIMITATIONS OR LIMITATIONS IMPOSED BY, OR FAILURES OF, AN UNDERLYING COMMUNICATIONS CARRIER.  COMPANY WILL ENDEAVOR TO TAKE ACTIONS IT DEEMS APPROPRIATE IN ITS SOLE DISCRETION TO REMEDY AND AVOID  SUCH EVENTS.  HOWEVER, COMPANY CANNOT AND DOES NOT GUARANTEE THAT SUCH EVENTS WILL NOT OCCUR, AND COMPANY DISCLAIMS ANY AND ALL LIABILITY RESULTING FROM OR RELATED TO SUCH EVENTS.  COMPANY HEREBY DISCLAIMS ALL RESPONSIBILITY FOR THE ACTS OR OMISSIONS BY COMPANY'S OTHER CUSTOMERS AND CLIENTS AND OTHER THIRD PARTIES.

c.      NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS AGREEMENT, IN NO EVENT WILL EITHER PARTY BE LIABLE TO THE OTHER PARTY FOR (I) LOST PROFITS; (II) LOSS OF BUSINESS; (III) LOSS OF REVENUES (EXCEPT THAT CLIENT SHALL BE LIABLE FOR ANY FEES OR OTHER AMOUNTS OWED TO COMPANY UNDER THIS AGREEMENT); (IV) LOSS, INTERRUPTION OR USE OF DATA OR LOSS OF USE OF CLIENT EQUIPMENT; (V) ANY CONSEQUENTIAL OR INDIRECT DAMAGES; OR (VI) COST OF COVER, ANY INCIDENTAL, SPECIAL, RELIANCE, EXEMPLARY OR PUNITIVE DAMAGES (IF APPLICABLE), EVEN IF ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

d.      NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS AGREEMENT,

COMPANY'S TOTAL LIABILITY TO CLIENT IN THE AGGREGATE FOR THE ENTIRE TERM (REGARDLESS OF WHETHER THE CLAIMS ARE BROUGHT DURING OR AFTER THE TERM) WITH RESPECT TO ALL CLAIMS ARISING FROM OR RELATED TO THE SUBJECT MATTER OF THIS AGREEMENT (INCLUDING, WITHOUT LIMITATION, ATTORNEYS' FEES) WILL NOT EXCEED AN AMOUNT EQUAL TO ONE (1) MONTHS FEE PAYABLE TO COMPANY PURSUANT TO THE APPLICABLE ORDER.

e.      EXCEPT FOR CLIENT'S BREACH OF ITS OBLIGATIONS UNDER SECTIONS  4, 5 a, 5 h AND 6, AND LOSS OR DAMAGE ARISING OUT OF CLIENT'S GROSS NEGLIGENCE, BAD FAITH OR WILLFUL MISCONDUCT, THE LIMITATIONS SET FORTH IN SECTIONS 5 c AND 5  d WILL APPLY TO ALL CLAIMS AND CAUSES OF ACTION, REGARDLESS OF WHETHER IN CONTRACT, TORT, STRICT LIABILITY OR OTHER THEORY.

f.      Client hereby waives the right to bring any claim against Company arising out of or in any way relating to an Order more than one (1) year after the date such Order expires or is terminated.  Each party recognizes and agrees that the warranty disclaimers, limitations of liability and remedy limitations in this Agreement are materially bargained for by the parties.

g.      Client acknowledges that cryptocurrency price movement, cryptocurrency difficulty, and legal and regulatory risks could have a material adverse impact on cryptocurrencies, cryptocurrency mining, Client Equipment, Services, and this Agreement.  Client assumes responsibility for all such risks, and Company disclaims all types of liabilities or loss of funds that may arise as a result.

h.      Client shall indemnify, defend and hold harmless Company and its affiliates, stockholders, directors, officers, employees, subcontractors and invitees from and against any losses, liabilities, damages, costs and expenses (including, without limitation, reasonable attorneys' fees) arising from or relating to (i) death, personal injury, bodily injury or property damage caused by Client or Client's customers or clients or Client Equipment; (ii) breach of Client's representations, warranties, or covenants in this Agreement or in an Order or Sections 2 or 6; (iii) fraud, bad faith, negligence or willful or reckless conduct of or by Client or Client's customers or clients; (iv) Client's or Client's customers' or clients' use of the Company Facility, Services, or Client Equipment; (v) any claim whatsoever by Client's customers or clients, or any third party related to the Services or Client Equipment; or (vi) any change in, or interpretation or administration of, any laws, regulations, statutes, treaties, rules, guidelines, ordinances, codes or the like, or any proposed or anticipated changes in, or interpretations or administration of the foregoing.

## 6.      CONFIDENTIAL INFORMATION

a.      Each party acknowledges that it and its employees or agents may, in the course of performing its responsibilities under this Agreement, be exposed to or acquire information which is proprietary to or confidential to the other party, including, without limitation, business plans, strategies, forecasts and projections and information about business structures, operations, systems, finances, assets, investments, investment strategies, software and other technology systems, and personnel, customers and suppliers (collectively, "**Confidential Information**").  Company's Confidential Information also includes the design, address and location of the Company Facilities (which is deemed to be not publicly known), the Services provided, equipment used at the Company Facilities, the configuration of cables, networks and services at the Company Facilities and the terms of this Agreement.  Neither party may use or copy any Confidential Information except to the limited extent necessary to perform its obligations under this Agreement and will not disclose any Confidential Information to any person or entity other than to its employees who have a need to know the Confidential Information or as otherwise expressly permitted by this Agreement.  Each party shall use the same measures that it uses to protect its own most confidential and proprietary information to protect the Confidential Information from use or disclosure in violation of this Agreement, but in no event less than commercially reasonable measures.

b.       The restrictions on use of Confidential Information do not apply to information if it (i) is known to the receiving party prior to receipt from the disclosing party directly or indirectly from a source other than one having an obligation of confidentiality to the disclosing party; (ii) becomes known (independently of disclosure by the disclosing party) to the receiving party directly or indirectly from a source other than one having an obligation of confidentiality to the disclosing party; (iii) becomes publicly known or otherwise ceases to be confidential, except through a breach of this Agreement by the receiving party; or (iv) is independently developed by the receiving party.  For the avoidance of doubt, the mere placement of materials or equipment containing information at a Company Facility does not constitute disclosure of such information to Company.

c.       Upon termination or expiration of this Agreement, or at any other time at the request of the other party, each party shall return to the other party, or destroy and delete, as applicable, all Confidential Information and any copies thereof in its possession or control.

d.       Neither party may use the other party's trademarks, service marks, trade names, copyrights, other intellectual property rights or other designations in any promotion, publication or press release without the prior written consent of the other party in each case, which consent may be given in an Order.

**7.       INSURANCE**

a.       Client agrees to maintain the following insurance, at its expense, during the Term, with insurers having a minimum AM Best rating of A- VII or S&P rating of A: (i) Commercial General Liability or Public Liability Insurance with a limit of US $2,000,000 per occurrence, US $4,000,000 in the aggregate (or the local currency equivalent), provided these limits may be achieved through a combination of primary and excess policies and such insurance will include coverage for bodily injury and property damage.

b.       Client will furnish Company with certificates of insurance upon request that evidence the minimum levels of insurance set forth herein, list Company as an additional insured or interested party on the Commercial General Liability or Public Liability Insurance and designate that Client's insurance is primary and non-contributory  Client will provide at least thirty (30) days' prior written notice to Company of any non-renewal or cancellation of the policies referenced above.

**8.       MISCELLANEOUS**

a.       <u>Notice</u>.  Except where expressly provided in this Agreement or an Order, all notices, consents, or approvals required by this Agreement will only be in writing and sent by overnight courier, certified or registered mail, overnight delivery requiring a signature upon receipt, or delivery by hand to the parties at the respective addresses set forth on the first page of this Agreement.  Notice is effective when received.

b.       <u>Entire Agreement</u>.  This Agreement constitutes the entire agreement between the parties with respect to the subject matter of this Agreement, and supersedes and replaces all prior or contemporaneous discussions, negotiations, proposals, understandings and agreements, written or oral, as well as any industry custom.  Each party acknowledges that, in entering into this Agreement, it has not relied on, and shall have no right or remedy in respect of, any statement, representation, assurance or warranty other than as expressly set out in this Agreement.  This Agreement may be executed in two (2) or more counterparts (and the signature pages may be delivered with ink or electronic signature or by e-mail), each will be deemed an original, but all together will constitute one and the same instrument.  Except where otherwise expressly provided in this Agreement, this Agreement may be amended only by the written agreement of both parties.

c.       <u>Survival</u>.  Any provision of this Agreement, which, by its nature, would survive termination or expiration of this Agreement will survive any such termination or expiration, including, without limitation,

those provisions concerning confidentiality, indemnification and limitation of liability.

d.     <u>Subcontracting and Assignment</u>.  Company may permit any affiliate, independent contractor or other third party to perform any of Company's obligations hereunder provided that Company remains primarily liable for the performance of its obligations.  Company may assign, delegate, or transfer this Agreement or any of its rights and obligations hereunder without notice to or prior written consent of Client.  Client may not assign, delegate or transfer this Agreement or any of its rights and obligations hereunder without the prior written consent of Company.  Any assignment or transfer in violation of this Agreement is void.  This Agreement will be binding upon and inure to the benefit of all permitted successors and assigns.  Nothing in this Agreement is intended to or will confer upon any third party any right, benefit or remedy of any nature whatsoever under or by reason of this Agreement

e.     <u>Force Majeure</u>.  Except for Client's obligation to pay amounts owed under this Agreement, neither party will be responsible or in any way liable to the other party, and neither party will have any termination or other rights, arising out of or relating to a Force Majeure Event.  A "**Force Majeure Event**" is a failure by the other party to perform any of its obligations under this Agreement if such failure is caused by events or circumstances beyond its reasonable control, including, without limitation, acts of God, war, labor strike, terrorist act, fire, flood, earthquake, landslide, hurricane, typhoon, tsunami, volcanic eruption, inclement weather, health epidemic or any law, order, regulation or other action of any governing authority or agency.

f.     <u>Governing Law and Arbitration</u>.  This Agreement and all claims arising out of or related to this Agreement are governed by and construed in accordance with the laws of the State of Delaware without giving effect to any choice or conflict of law provision or rule that would cause the application of the laws of any jurisdiction other than the State of Delaware.  Any dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, including, without limitation, the determination of the scope or applicability of this Agreement to arbitrate, shall be determined exclusively by arbitration in King County, Washington before three (3) arbitrators.  The arbitration shall be administered by JAMS pursuant to its Comprehensive Arbitration Rules & Procedures.  Any award, order or judgment pursuant to arbitration ("**Award**") is final and may be entered and enforced in any court of competent jurisdiction, and each party shall submit to any court of competent jurisdiction for purposes of the enforcement of any Award.  The arbitrator may, in the Award, allocate all or part of the costs of the arbitration, including, without limitation, the fees of the arbitrator and the reasonable attorneys' fees of the prevailing party.

g.     <u>General</u>.  The rights and remedies provided for herein are cumulative and not exclusive of any rights or remedies that a party would otherwise have.  The parties are independent contractors, and this Agreement does not establish any relationship of partnership, joint venture, employment, franchise or agency between them.  Neither party may bind the other or incur obligations on the other's behalf without the other's prior written consent.  There are no third-party beneficiaries to this Agreement.  No waiver of any breach of any provision of this Agreement will constitute a waiver of any prior, concurrent or subsequent breach of the same or any other provisions hereof, and no waiver will be effective unless made in writing and signed by an authorized representative of the waiving party.

[*Signature page follows*]

**Core Scientific, Inc.**

By: _Michael Trzupek_

Name: Michael Trzupek

Title: Authorized Representative

Date: 12/18/2020

**Celsius Core LLC**

By: _S. Daniel Leon_

Name: S. Daniel Leon

Title: S. Daniel Leon, President/COO

Date: 12/18/2020

**MASTER SERVICES AGREEMENT ORDER #1**

This Order, including the terms and conditions hereunder, incorporates by reference the terms of the Master Services Agreement dated as of December 18, 2020 (the "**Agreement**") between Provider and Client (as defined below). If any terms of this Order conflict with the terms of the Agreement, the terms of this Order shall govern with respect to this Order. Capitalized terms used but not defined in this Order shall have the meanings ascribed in the Agreement.

| Commencement Date: | April 15, 2021 or the actual date Units are delivered to Client at Provider Facility if such Units are not delivered on such date. | | |
|---|---|---|---|
| Facility: | Provider Facility as determined by Provider. | | |
| Equipment hosted: | **Manufacturing Batch Month** | **Quantity & Type of Unit (the "Units")** | **Assumed power consumption per Unit (KWh):** |
| | March | 2,940 S19 | 3.413 KWh |
| | March | 60 S19 PRO | 3.413 KWh |
| Hosting-Services Rate: | USD $.0556 / KWh | | |
| Payment Due Prior to Installation: | USD $460,520 no later than the earlier of (i) the date of installation of the Units or (ii) April 15, 2021 consisting of: <ul><li>A $415,520 prepayment to be applied as a credit against future monthly invoices for hosting services as they become due.</li><li>A $45,000 Set-up Fee</li></ul> | | |
| Equipment Purchase Payment Due Dates: | Due Date | Amount (USD) | |
| | 12/22/2020 | $1,627,458.36 | |
| | 01/15/2021 | $2,441,187.54 | |
| | 02/15/2021 | $4,068,645.90 | |
| Estimated Delivery Date: | April 15, 2021.  Provider to notify Client as soon as reasonably possible in advance if Units will not be delivered by this date. Provider may terminate this Order if substantially all the Units are not delivered within 60 days of the Estimated Delivery Date. | | |
| Fees: | Set-up fee: $15/Unit | | |
| Fees payable pursuant to Section 4 in connection with Service Termination/ Suspension | Equipment disconnection fee: $25/Unit <br> Storage Fee: $10/month/Unit <br> Reinstatement fee: $25/Unit | | |

**Order Term.** Subject to acceptance by Provider, the term of this Order shall commence on the **Commencement Date** and continue until the second Anniversary of the Commencement Date (the "**Initial Term**"), unless sooner terminated (i) by Provider, as provided above, (ii) by mutual agreement of the parties, or (iii) pursuant to Section 4 of the Agreement. Unless earlier terminated, this Order shall automatically renew for successive 12-month renewal terms ("**Renewal Term**") unless terminated during a renewal term as set forth in the Agreement.

**Fees.** Client shall pay the fees provided for in this Order. The Fees for Services will be determined initially by reference to the Assumed power consumption per Unit of each deployed Unit, multiplied by the Hosting Services Rate (each as set forth above in this Order).  Subsequent invoices will contain any additional charges incurred by Client and adjustments resulting from any differences between the Fees for Services invoiced in the preceding month and the Fee for Services based on Provider's determination of power utilized by Client during that month, as well as any adjustments to Provider's estimate of power to be utilized by Client in the upcoming month.  Fees for Services for each month shall be paid in advance, in accordance with Section 3 of the Agreement.

**Purchase/Delivery/Installation Schedule for Units:** Company will facilitate the procurement on behalf of Client at Client's expense the above referenced Units from Bitmain Malaysia. Company will facilitate the procurement, shipping, and installation of the Units on behalf of Client at Client's sole cost and expense (including any and all costs and expenses associated with shipping, importing and transporting the Units to the Facility as provided above. Client will pay $2,695 per S19 Unit and $3,566.53 per S19 PRO Unit (total of

$8,137,292). Client will make payments according to the Equipment Purchase Payment Due Dates listed above. Client will pay the Provider's invoice for Units within five business days of receipt and execute any necessary power of attorney and other documents required by customs broker to enable shipment of the Units to a Core Facility on Client's behalf. Risk of loss and ownership of the Units shall pass between Bitmain and Client. Any and all taxes with respect to the purchase of the equipment will be the responsibility of Client.

**Subcontracting and Assignment. Section 8d. of the Agreement is hereby amended to read in its entirety:**

> d.        Subcontracting and Assignment.  Company may permit any affiliate, independent contractor or other third party to perform any of Company's obligations hereunder provided that Company remains primarily liable for the performance of its obligations.  Company may assign, delegate, or transfer this Agreement or any of its rights and obligations hereunder without notice to or prior written consent of Client.  Client may not assign, delegate or transfer this Agreement or any of its rights and obligations hereunder without the prior written consent of Company; provided, however, Client may assign, delegate or transfer an Order pursuant to this Agreement to a third party upon the written consent of the Company, which consent shall not be unreasonably, withheld, obstructed or delayed if such assignment is to a third party not competitive to Company and such party executes a new Order on standard terms and conditions containing the hosting price and hosting term set forth in the Order to be assigned.  Any assignment or transfer in violation of this Agreement is void. This Agreement will be binding upon and inure to the benefit of all permitted successors and assigns.  Nothing in this Agreement is intended to or will confer upon any third party any right, benefit or remedy of any nature whatsoever under or by reason of this Agreement

**Right of First Offer:** Provided Client has executed one or more Orders on the date hereof with respect to Equipment having a total purchase price of more than $50 million, Provider agrees to make available for purchase by Client up to 45% of any newly available units during the calendar year 2021.  In the event units become available, Provider shall notify Client of such the units and the price at which such units are available. In the event Provider notifies Client of the availability of such newly additional units, Client shall have five days to execute an additional Order for such units on hosting terms and conditions mutually agreeable to both Client and Provider.

By: _____
**Celsius Core LLC, "Client"**
**Name:** S. Daniel Leon
**Title:** S. Daniel Leon, President/COO
**Date:** 12/18/2020

By: _____
**Core Scientific, Inc., "Provider"**
**Name:** Michael Trzupek
**Title:** Chief Financial Officer
**Date:** 12/18/2020

## MASTER SERVICES AGREEMENT ORDER #2

This Order, including the terms and conditions hereunder, incorporates by reference the terms of the Master Services Agreement dated as of December 18, 2020 (the "**Agreement**") between Provider and Client (as defined below). If any terms of this Order conflict with the terms of the Agreement, the terms of this Order shall govern with respect to this Order. Capitalized terms used but not defined in this Order shall have the meanings ascribed in the Agreement.

| | | | |
|---|---|---|---|
| **Commencement Date:** | May 15, 2021 or the actual date Units are delivered to Client at Provider Facility if such Units are not delivered on such date. | | |
| **Facility:** | Provider Facility as determined by Provider. | | |
| **Equipment hosted:** | **Manufacturing Batch Month** | **Quantity & Type of Unit (the "Units")** | **Assumed power consumption per Unit (KWh):** |
| | April | 3,500 S19 | 3.413 KWh |
| **Hosting-Services Rate:** | USD $.0556 / KWh | | |
| **Payment Due Prior to Installation:** | USD $537,273 no later than the earlier of (i) the date of installation of the Units or (ii) May 15, 2021 consisting of: <br> • A $484,773 prepayment to be applied as a credit against future monthly invoices for hosting services as they become due. <br> • A $52,500 Set-up Fee | | |
| **Equipment Purchase Payment Due Dates:** | Due Date | | Amount (USD) |
| | 12/22/2020 | | $1,886,500.00 |
| | 01/15/2021 | | $2,829,750.00 |
| | 03/15/2021 | | $4,716,250.00 |
| **Estimated Delivery Date:** | May 15, 2021.   Provider to notify Client as soon as reasonably possible in advance if Units will not be delivered by this date. Provider may terminate this Order if substantially all the Units are not delivered within 60 days of the Estimated Delivery Date. | | |
| **Fees:** | Set-up fee: $15/Unit | | |
| **Fees payable pursuant to Section 4 in connection with Service Termination/ Suspension** | Equipment disconnection fee: $25/Unit <br> Storage Fee: $10/month/Unit <br> Reinstatement fee: $25/Unit | | |

**Order Term.** Subject to acceptance by Provider, the term of this Order shall commence on the **Commencement Date** and continue until the second Anniversary of the Commencement Date (the "**Initial Term**"), unless sooner terminated (i) by Provider, as provided above, (ii) by mutual agreement of the parties, or (iii) pursuant to Section 4 of the Agreement. Unless earlier terminated, this Order shall automatically renew for successive 12-month renewal terms ("**Renewal Term**") as set forth in the Agreement.

**Fees.** Client shall pay the fees provided for in this Order. The Fees for Services will be determined initially by reference to the Assumed power consumption per Unit of each deployed Unit, multiplied by the Hosting Services Rate (each as set forth above in this Order).  Subsequent invoices will contain any additional charges incurred by Client and adjustments resulting from any differences between the Fees for Services invoiced in the preceding month and the Fee for Services based on Provider's determination of power utilized by Client during that month, as well as any adjustments to Provider's estimate of power to be utilized by Client in the upcoming month.  Fees for Services for each month shall be paid in advance, in accordance with Section 3 of the Agreement.

**Purchase/Delivery/Installation Schedule for Units:** Company will facilitate the procurement on behalf of Client at Client's expense the above referenced Units from Bitmain Malaysia. Company will facilitate the procurement, shipping, and installation of the Units on behalf of Client at Client's sole cost and expense (including any and all costs and expenses associated with shipping, importing and transporting the Units to the Facility as provided above. Client will pay $2,695 per S19 Unit (total of $9,432,500). Client will make payments according to the Equipment Purchase Payment Due Dates listed above. Client will pay the Provider's invoice for Units within five business days of receipt and execute any necessary power of attorney and other documents

required by customs broker to enable shipment of the Units to a Core Facility on Client's behalf. Risk of loss and ownership of the Units shall pass between Bitmain and Client. Any and all taxes with respect to the purchase of the equipment will be the responsibility of Client.

**Subcontracting and Assignment. Section 8d. of the Agreement is hereby amended to read in its entirety:**

d. <u>Subcontracting and Assignment</u>.  Company may permit any affiliate, independent contractor or other third party to perform any of Company's obligations hereunder provided that Company remains primarily liable for the performance of its obligations. Company may assign, delegate, or transfer this Agreement or any of its rights and obligations hereunder without notice to or prior written consent of Client.  Client may not assign, delegate or transfer this Agreement or any of its rights and obligations hereunder without the prior written consent of Company; provided, however, Client may assign, delegate or transfer an Order pursuant to this Agreement to a third party upon the written consent of the Company, which consent shall not be unreasonably, withheld, obstructed or delayed if such assignment is to a third party not competitive to Company and such party executes a new Order on standard terms and conditions containing the hosting price and hosting term set forth in the Order to be assigned.  Any assignment or transfer in violation of this Agreement is void.  This Agreement will be binding upon and inure to the benefit of all permitted successors and assigns.  Nothing in this Agreement is intended to or will confer upon any third party any right, benefit or remedy of any nature whatsoever under or by reason of this Agreement

**Right of First Offer:** Provided Client has executed one or more Orders on the date hereof with respect to Equipment having a total purchase price of more than $50 million, Provider agrees to make available for purchase by Client up to 45% of any newly available units during the calendar year 2021.  In the event units become available, Provider shall notify Client of such the units and the price at which such units are available. In the event Provider notifies Client of the availability of such newly additional units, Client shall have five days to execute an additional Order for such units on hosting terms and conditions mutually agreeable to both Client and Provider.

By: _S. Daniel Leon_

**Celsius Core LLC, "Client"**
Name: S. Daniel Leon
Title: S. Daniel Leon, President/COO
Date: 12/18/2020

By: _Michael Trzupek_

**Core Scientific, Inc., "Provider"**
Name: Michael Trzupek
Title: **Chief Financial Officer**
Date: 12/18/2020

**MASTER SERVICES AGREEMENT ORDER #5**

This Order, including the terms and conditions hereunder, incorporates by reference the terms of the Master Services Agreement dated as of December 18, 2020 (the "**Agreement**") between Provider and Client (as defined below). If any terms of this Order conflict with the terms of the Agreement, the terms of this Order shall govern with respect to this Order. Capitalized terms used but not defined in this Order shall have the meanings ascribed in the Agreement.

| | | | |
|---|---|---|---|
| **Commencement Date:** | June 15, 2021 or the actual date Units are delivered to Client at Provider Facility if such Units are not delivered on such date. | | |
| **Facility:** | Provider Facility as determined by Provider. | | |
| **Equipment hosted:** | **Manufacturing Batch Month** | **Quantity & Type of Unit (the "Units")** | **Assumed power consumption per Unit (KWh):** |
| | May | 3,000 S19 | 3.413 KWh |
| | May | 500 S19 PRO | 3.413 KWh |
| **Hosting-Services Rate:** | USD $.0556 / KWh | | |
| **Payment Due Prior to Installation:** | USD $537,273 no later than the earlier of (i) the date of installation of the Units or (ii) June 15, 2021 consisting of: <br> • A $484,773 prepayment to be applied as a credit against future monthly invoices for hosting services as they become due. <br> • A $52,500 Set-up Fee | | |
| **Equipment Purchase Payment Due Dates:** | Due Date | | Amount (US) |
| | 12/22/2020 | | $1,973,653.00 |
| | 01/15/2021 | | $2,960,479.50 |
| | 04/15/2021 | | $4,934,132.50 |
| **Estimated Delivery Date:** | June 15, 2021.  Provider to notify Client as soon as reasonably possible in advance if Units will not be delivered by this date. Provider may terminate this Order if substantially all the Units are not delivered within 60 days of the Estimated Delivery Date. | | |
| **Fees:** | Set-up fee: $15/Unit | | |
| **Fees payable pursuant to Section 4 in connection with Service Termination/ Suspension** | Equipment disconnection fee: $25/Unit <br> Storage Fee: $10/month/Unit <br> Reinstatement fee: $25/Unit | | |

**Order Term.** Subject to acceptance by Provider, the term of this Order shall commence on the **Commencement Date** and continue until the second Anniversary of the Commencement Date (the "**Initial Term**"), unless sooner terminated (i) by Provider, as provided above, (ii) by mutual agreement of the parties, or (iii) pursuant to Section 4 of the Agreement. Unless earlier terminated, this Order shall automatically renew for successive 12-month renewal terms ("**Renewal Term**") as set forth in the Agreement.

**Fees**. Client shall pay the fees provided for in this Order. The Fees for Services will be determined initially by reference to the Assumed power consumption per Unit of each deployed Unit, multiplied by the Hosting Services Rate (each as set forth above in this Order). Subsequent invoices will contain any additional charges incurred by Client and adjustments resulting from any differences between the Fees for Services invoiced in the preceding month and the Fee for Services based on Provider's determination of power utilized by Client during that month, as well as any adjustments to Provider's estimate of power to be utilized by Client in the upcoming month. Fees for Services for each month shall be paid in advance, in accordance with Section 3 of the Agreement.

**Purchase/Delivery/Installation Schedule for Units:** Company will facilitate the procurement on behalf of Client at Client's expense the above referenced Units from Bitmain Malaysia. Company will facilitate the procurement, shipping, and installation of the Units on behalf of Client at Client's sole cost and expense (including any and all costs and expenses associated with shipping, importing and transporting the Units to the Facility as provided above. Client will pay $2,695 per S19 Unit and $3,566.53 per S19 PRO Unit (total of $9,868,265). Client will make payments according to the Equipment Purchase Payment Due Dates listed above.

Client will pay the Provider's invoice for Units within five business days of receipt and execute any necessary power of attorney and other documents required by customs broker to enable shipment of the Units to a Core Facility on Client's behalf. Risk of loss and ownership of the Units shall pass between Bitmain and Client. Any and all taxes with respect to the purchase of the equipment will be the responsibility of Client.

**Subcontracting and Assignment. Section 8d. of the Agreement is hereby amended to read in its entirety:**

d.  Subcontracting and Assignment.  Company may permit any affiliate, independent contractor or other third party to perform any of Company's obligations hereunder provided that Company remains primarily liable for the performance of its obligations. Company may assign, delegate, or transfer this Agreement or any of its rights and obligations hereunder without notice to or prior written consent of Client.  Client may not assign, delegate or transfer this Agreement or any of its rights and obligations hereunder without the prior written consent of Company; provided, however, Client may assign, delegate or transfer an Order pursuant to this Agreement to a third party upon the written consent of the Company, which consent shall not be unreasonably, withheld, obstructed or delayed if such assignment is to a third party not competitive to Company and such party executes a new Order on standard terms and conditions containing the hosting price and hosting term set forth in the Order to be assigned.  Any assignment or transfer in violation of this Agreement is void.  This Agreement will be binding upon and inure to the benefit of all permitted successors and assigns.  Nothing in this Agreement is intended to or will confer upon any third party any right, benefit or remedy of any nature whatsoever under or by reason of this Agreement

**Right of First Offer:** Provided Client has executed one or more Orders on the date hereof with respect to Equipment having a total purchase price of more than $50 million, Provider agrees to make available for purchase by Client up to 45% of any newly available units during the calendar year 2021.  In the event units become available, Provider shall notify Client of such the units and the price at which such units are available. In the event Provider notifies Client of the availability of such newly additional units, Client shall have five days to execute an additional Order for such units on hosting terms and conditions mutually agreeable to both Client and Provider.

By: _S. Daniel Leon_
Celsius Core LLC, "Client"
Name: S. Daniel Leon
Title: S. Daniel Leon, President/COO
Date: 12/18/2020

By: _Michael Trzupek_
Core Scientific, Inc., "Provider"
Name: Michael Trzupek
Title: **Chief Financial Officer**
Date: 12/18/2020

**MASTER SERVICES AGREEMENT ORDER #4**

This Order, including the terms and conditions hereunder, incorporates by reference the terms of the Master Services Agreement dated as of December 18, 2020 (the "**Agreement**") between Provider and Client (as defined below). If any terms of this Order conflict with the terms of the Agreement, the terms of this Order shall govern with respect to this Order. Capitalized terms used but not defined in this Order shall have the meanings ascribed in the Agreement.

| Commencement Date: | July 15, 2021 or the actual date Units are delivered to Client at Provider Facility if such Units are not delivered on such date. | | |
|---|---|---|---|
| Facility: | Provider Facility as determined by Provider. | | |
| Equipment hosted: | **Manufacturing Batch Month** | **Quantity & Type of Unit (the "Units")** | **Assumed power consumption per Unit (KWh):** |
| | June | 3,000 S19 | 3.413 KWh |
| | June | 500 S19 PRO | 3.413 KWh |
| Hosting-Services Rate: | USD $.0556 / KWh | | |
| Payment Due Prior to Installation: | USD $537,273 no later than the earlier of (i) the date of installation of the Units or (ii) July 15, 2021 consisting of: <br>• A $484,773 prepayment to be applied as a credit against future monthly invoices for hosting services as they become due. <br>• A $52,500 Set-up Fee | | |
| Equipment Purchase Payment Due Dates: | Due Date | | Amount (US) |
| | 12/22/2020 | | $1,973,653.00 |
| | 01/15/2021 | | $2,960,479.50 |
| | 05/15/2021 | | $4,934,132.50 |
| Estimated Delivery Date: | July 15, 2021.  Provider to notify Client as soon as reasonably possible in advance if Units will not be delivered by this date. Provider may terminate this Order if substantially all the Units are not delivered within 60 days of the Estimated Delivery Date. | | |
| Fees: | Set-up fee: $15/Unit | | |
| Fees payable pursuant to Section 4 in connection with Service Termination/ Suspension | Equipment disconnection fee: $25/Unit <br>Storage Fee: $10/month/Unit <br>Reinstatement fee: $25/Unit | | |

**Order Term.** Subject to acceptance by Provider, the term of this Order shall commence on the **Commencement Date** and continue until the second Anniversary of the Commencement Date (the "**Initial Term**"), unless sooner terminated (i) by Provider, as provided above, (ii) by mutual agreement of the parties, or (iii) pursuant to Section 4 of the Agreement. Unless earlier terminated, this Order shall automatically renew for successive 12-month renewal terms ("**Renewal Term**") as set forth in the Agreement.

**Fees**. Client shall pay the fees provided for in this Order. The Fees for Services will be determined initially by reference to the Assumed power consumption per Unit of each deployed Unit, multiplied by the Hosting Services Rate (each as set forth above in this Order). Subsequent invoices will contain any additional charges incurred by Client and adjustments resulting from any differences between the Fees for Services invoiced in the preceding month and the Fee for Services based on Provider's determination of power utilized by Client during that month, as well as any adjustments to Provider's estimate of power to be utilized by Client in the upcoming month. Fees for Services for each month shall be paid in advance, in accordance with Section 3 of the Agreement.

**Purchase/Delivery/Installation Schedule for Units:** Company will facilitate the procurement on behalf of Client at Client's expense the above referenced Units from Bitmain Malaysia. Company will facilitate the procurement, shipping, and installation of the Units on behalf of Client at Client's sole cost and expense (including any and all costs and expenses associated with shipping, importing and transporting the Units to the Facility as provided above. Client will pay $2,695 per S19 Unit and $3,566.53 per S19 PRO Unit (total of $9,868,265). Client will make payments according to the Equipment Purchase Payment Due Dates listed above.

Client will pay the Provider's invoice for Units within five business days of receipt and execute any necessary power of attorney and other documents required by customs broker to enable shipment of the Units to a Core Facility on Client's behalf. Risk of loss and ownership of the Units shall pass between Bitmain and Client. Any and all taxes with respect to the purchase of the equipment will be the responsibility of Client.

**Subcontracting and Assignment. Section 8d. of the Agreement is hereby amended to read in its entirety:**

d.  <u>Subcontracting and Assignment</u>.  Company may permit any affiliate, independent contractor or other third party to perform any of Company's obligations hereunder provided that Company remains primarily liable for the performance of its obligations. Company may assign, delegate, or transfer this Agreement or any of its rights and obligations hereunder without notice to or prior written consent of Client.  Client may not assign, delegate or transfer this Agreement or any of its rights and obligations hereunder without the prior written consent of Company; provided, however, Client may assign, delegate or transfer an Order pursuant to this Agreement to a third party upon the written consent of the Company, which consent shall not be unreasonably, withheld, obstructed or delayed if such assignment is to a third party not competitive to Company and such party executes a new Order on standard terms and conditions containing the hosting price and hosting term set forth in the Order to be assigned.  Any assignment or transfer in violation of this Agreement is void.  This Agreement will be binding upon and inure to the benefit of all permitted successors and assigns.  Nothing in this Agreement is intended to or will confer upon any third party any right, benefit or remedy of any nature whatsoever under or by reason of this Agreement

**Right of First Offer:** Provided Client has executed one or more Orders on the date hereof with respect to Equipment having a total purchase price of more than $50 million, Provider agrees to make available for purchase by Client up to 45% of any newly available units during the calendar year 2021.  In the event units become available, Provider shall notify Client of such the units and the price at which such units are available. In the event Provider notifies Client of the availability of such newly additional units, Client shall have five days to execute an additional Order for such units on hosting terms and conditions mutually agreeable to both Client and Provider.

By: _S. Daniel Leon_

**Celsius Core LLC, "Client"**
**Name:** S. Daniel Leon
**Title:** S. Daniel Leon, President/COO
**Date:** 12/18/2020

By: _Michael Trzupek_

**Core Scientific, Inc., "Provider"**
**Name:** Michael Trzupek
**Title:** **Chief Financial Officer**
**Date:** 12/18/2020

**MASTER SERVICES AGREEMENT ORDER #5**

This Order, including the terms and conditions hereunder, incorporates by reference the terms of the Master Services Agreement dated as of December 18, 2020 (the "**Agreement**") between Provider and Client (as defined below). If any terms of this Order conflict with the terms of the Agreement, the terms of this Order shall govern with respect to this Order. Capitalized terms used but not defined in this Order shall have the meanings ascribed in the Agreement.

| Commencement Date: | August 15, 2021 or the actual date Units are delivered to Client at Provider Facility if such Units are not delivered on such date. | | |
|---|---|---|---|
| Facility: | Provider Facility as determined by Provider. | | |
| Equipment hosted: | **Manufacturing Batch Month** | **Quantity & Type of Unit (the "Units")** | **Assumed power consumption per Unit (KWh):** |
| | July | 4,000 S19j | 3.255 KWh |
| Hosting-Services Rate: | USD 0.0556 / KWh | | |
| Payment Due Prior to Installation: | USD $588,456 no later than the earlier of (i) the date of installation of the Units or (ii) August 15, 2021 consisting of:<br>• A $528,456 prepayment to be applied as a credit against future monthly invoices for hosting services as they become due.<br>• A $60,000 Set-up Fee | | |
| Equipment Purchase Payment Due Dates: | Due Date | | Amount (US) |
| | 12/22/2020 | | $2,239,624.00 |
| | 01/15/2021 | | $3,359,436.00 |
| | 06/15/2021 | | $5,599,060.00 |
| Estimated Delivery Date: | August 15, 2021. Provider to notify Client as soon as reasonably possible in advance if Units will not be delivered by this date. Provider may terminate this Order if substantially all the Units are not delivered within 60 days of the Estimated Delivery Date. | | |
| Fees: | Set-up fee: $15/Unit | | |
| Fees payable pursuant to Section 4 in connection with Service Termination/ Suspension | Equipment disconnection fee: $25/Unit<br>Storage Fee: $10/month/Unit<br>Reinstatement fee: $25/Unit | | |

**Order Term.** Subject to acceptance by Provider, the term of this Order shall commence on the **Commencement Date** and continue until the second Anniversary of the Commencement Date (the "**Initial Term**"), unless sooner terminated (i) by Provider, as provided above, (ii) by mutual agreement of the parties, or (iii) pursuant to Section 4 of the Agreement. Unless earlier terminated, this Order shall automatically renew for successive 12-month renewal terms ("**Renewal Term**") as set forth in the Agreement.

**Fees.** Client shall pay the fees provided for in this Order. The Fees for Services will be determined initially by reference to the Assumed power consumption per Unit of each deployed Unit, multiplied by the Hosting Services Rate (each as set forth above in this Order). Subsequent invoices will contain any additional charges incurred by Client and adjustments resulting from any differences between the Fees for Services invoiced in the preceding month and the Fee for Services based on Provider's determination of power utilized by Client during that month, as well as any adjustments to Provider's estimate of power to be utilized by Client in the upcoming month. Fees for Services for each month shall be paid in advance, in accordance with Section 3 of the Agreement.

**Purchase/Delivery/Installation Schedule for Units:** Company will facilitate the procurement on behalf of Client at Client's expense the above referenced Units from Bitmain Malaysia. Company will facilitate the procurement, shipping, and installation of the Units on behalf of Client at Client's sole cost and expense (including any and all costs and expenses associated with shipping, importing and transporting the Units to the Facility as provided above. Client will pay $2,799.53 per S19j Unit (total of $11,198,120). Client will make payments according to the Equipment Purchase Payment Due Dates listed above. Client will pay the Provider's invoice for Units within five business days of receipt and execute any necessary power of attorney and other

documents required by customs broker to enable shipment of the Units to a Core Facility on Client's behalf. Risk of loss and ownership of the Units shall pass between Bitmain and Client. Any and all taxes with respect to the purchase of the equipment will be the responsibility of Client.

**Subcontracting and Assignment. Section 8d. of the Agreement is hereby amended to read in its entirety:**

    d.   <u>Subcontracting and Assignment</u>.  Company may permit any affiliate, independent contractor or other third party to perform any of Company's obligations hereunder provided that Company remains primarily liable for the performance of its obligations. Company may assign, delegate, or transfer this Agreement or any of its rights and obligations hereunder without notice to or prior written consent of Client.  Client may not assign, delegate or transfer this Agreement or any of its rights and obligations hereunder without the prior written consent of Company; provided, however, Client may assign, delegate or transfer an Order pursuant to this Agreement to a third party upon the written consent of the Company, which consent shall not be unreasonably, withheld, obstructed or delayed if such assignment is to a third party not competitive to Company and such party executes a new Order on standard terms and conditions containing the hosting price and hosting term set forth in the Order to be assigned.  Any assignment or transfer in violation of this Agreement is void.  This Agreement will be binding upon and inure to the benefit of all permitted successors and assigns.  Nothing in this Agreement is intended to or will confer upon any third party any right, benefit or remedy of any nature whatsoever under or by reason of this Agreement

**Right of First Offer:** Provided Client has executed one or more Orders on the date hereof with respectto Equipment having a total purchase price of more than $50 million, Provideragrees to make available for purchase by Client up to 45% of any newly available units during the calendar year 2021.  In the event units become available, Provider shall notify Client of such the units and the price at which such units are available. In the event Provider notifies Client of the availability of such newly additional units, Client shall have five days to execute an additional Order for such units on hosting termsand conditions mutually agreeable to both Client and Provider.

By: _S. Daniel Leon_____

**Celsius Core LLC, "Client"**
Name: _S. Daniel Leon_____
Title: _S. Daniel Leon, President/COO___
Date: _12/18/2020_____

By: _Michael Trzupek_____

**Core Scientific, Inc., "Provider"**
Name: _Michael Trzupek_____
Title: **Chief Financial Officer**
Date: _12/18/2020_____

DocuSign Envelope ID: B20E8BC9-A946-44CD-857A-E3644866999B

### MASTER SERVICES AGREEMENT ORDER #6

This Order, including the terms and conditions hereunder, incorporates by reference the terms of the Master Services Agreement dated as of December 18, 2020 (the "**Agreement**") between Provider and Client (as defined below). If any terms of this Order conflict with the terms of the Agreement, the terms of this Order shall govern with respect to this Order. Capitalized terms used but not defined in this Order shall have the meanings ascribed in the Agreement.

| | | | |
|---|---|---|---|
| **Commencement Date:** | September 15, 2021 or the actual date Units are delivered to Client at Provider Facility if such Units are not delivered on such date. | | |
| **Facility:** | Provider Facility as determined by Provider. | | |
| **Equipment hosted:** | **Manufacturing Batch Month** | **Quantity & Type of Unit (the "Units")** | **Assumed power consumption per Unit (KWh):** |
| | August | 2,300 S19j | 3.255 KWh |
| **Hosting-Services Rate:** | USD $.0556 / KWh | | |
| **Payment Due Prior to Installation:** | USD $338,362   no later than the earlier of (i) the date of installation of the Units or (ii) September 15, 2021 consisting of:<br>• A $303,862 prepayment to be applied as a credit against future monthly invoices for hosting services as they become due.<br>• A $34,500 Set-up Fee | | |
| **Equipment Purchase Payment Due Dates:** | Due Date | Amount (US) | |
| | 12/22/2020 | $1,287,783.80 | |
| | 01/15/2021 | $1,931,675.70 | |
| | 07/15/2021 | $3,219,425.00 | |
| **Estimated Delivery Date:** | September 15, 2021.   Provider to notify Client as soon as reasonably possible in advance if Units will not be delivered by this date. Provider may terminate this Order if substantially all the Units are not delivered within 60 days of the Estimated Delivery Date. | | |
| **Fees:** | Set-up fee: $15/Unit | | |
| **Fees payable pursuant to Section 4 in connection with Service Termination/ Suspension** | Equipment disconnection fee: $25/Unit<br>Storage Fee: $10/month/Unit<br>Reinstatement fee: $25/Unit | | |

**Order Term.** Subject to acceptance by Provider, the term of this Order shall commence on the **Commencement Date** and continue until the second Anniversary of the Commencement Date (the "**Initial Term**"), unless sooner terminated (i) by Provider, as provided above, (ii) by mutual agreement of the parties, or (iii) pursuant to Section 4 of the Agreement. Unless earlier terminated, this Order shall automatically renew for successive 12-month renewal terms ("**Renewal Term**") as set forth in the Agreement.

**Fees**. Client shall pay the fees provided for in this Order. The Fees for Services will be determined initially by reference to the Assumed power consumption per Unit of each deployed Unit, multiplied by the Hosting Services Rate (each as set forth above in this Order).  Subsequent invoices will contain any additional charges incurred by Client and adjustments resulting from any differences between the Fees for Services invoiced in the preceding month and the Fee for Services based on Provider's determination of power utilized by Client during that month, as well as any adjustments to Provider's estimate of power to be utilized by Client in the upcoming month.  Fees for Services for each month shall be paid in advance, in accordance with Section 3 of the Agreement.

**Purchase/Delivery/Installation Schedule for Units:** Company will facilitate the procurement on behalf of Client at Client's expense the above referenced Units from Bitmain Malaysia. Company will facilitate the procurement, shipping, and installation of the Units on behalf of Client at Client's sole cost and expense (including any and all costs and expenses associated with shipping, importing and transporting the Units to the Facility as provided above. Client will pay $2,799.53 per S19j Unit (total of $6,438,919). Client will make payments according to the Equipment Purchase Payment Due Dates listed above. Client will pay the Provider's invoice for Units within five business days of receipt and execute any necessary power of attorney and other

DocuSign Envelope ID: B20E8BC9-A946-44CD-857A-E3644866999B

documents required by customs broker to enable shipment of the Units to a Core Facility on Client's behalf. Risk of loss and ownership of the Units shall pass between Bitmain and Client. Any and all taxes with respect to the purchase of the equipment will be the responsibility of Client.

**Subcontracting and Assignment. Section 8d. of the Agreement is hereby amended to read in its entirety:**

d.   Subcontracting and Assignment.  Company may permit any affiliate, independent contractor or other third party to perform any of Company's obligations hereunder provided that Company remains primarily liable for the performance of its obligations. Company may assign, delegate, or transfer this Agreement or any of its rights and obligations hereunder without notice to or prior written consent of Client.  Client may not assign, delegate or transfer this Agreement or any of its rights and obligations hereunder without the prior written consent of Company; provided, however, Client may assign, delegate or transfer an Order pursuant to this Agreement to a third party upon the written consent of the Company, which consent shall not be unreasonably, withheld, obstructed or delayed if such assignment is to a third party not competitive to Company and such party executes a new Order on standard terms and conditions containing the hosting price and hosting term set forth in the Order to be assigned.  Any assignment or transfer in violation of this Agreement is void.  This Agreement will be binding upon and inure to the benefit of all permitted successors and assigns.  Nothing in this Agreement is intended to or will confer upon any third party any right, benefit or remedy of any nature whatsoever under or by reason of this Agreement

**Right of First Offer:** Provided Client has executed one or more Orders on the date hereof with respect to Equipment having a total purchase price of more than $50 million, Provider agrees to make available for purchase by Client up to 45% of any newly available units during the calendar year 2021.  In the event units become available, Provider shall notify Client of such the units and the price at which such units are available. In the event Provider notifies Client of the availability of such newly additional units, Client shall have five days to execute an additional Order for such units on hosting terms and conditions mutually agreeable to both Client and Provider.

By: _S. Daniel Leon_____

**Celsius Core LLC, "Client"**

**Name:** S. Daniel Leon

**Title:** S. Daniel Leon, President/COO

**Date:** 12/18/2020

By: _Michael Trzupek_____

**Core Scientific, Inc., "Provider"**

**Name:** Michael Trzupek

**Title:** **Chief Financial Officer**

**Date:** 12/18/2020

## MASTER SERVICES AGREEMENT ORDER #7

This Order, including the terms and conditions hereunder, incorporates by reference the terms of the Master Services Agreement dated as of December 18, 2020 (the "**Agreement**") between Provider and Client (as defined below). If any terms of this Order conflict with the terms of the Agreement, the terms of this Order shall govern with respect to this Order. Capitalized terms used but not defined in this Order shall have the meanings ascribed in the Agreement.

| Commencement Date: | October 15, 2021 or the actual date Units are delivered to Client at Provider Facility if such Units are not delivered on such date. | | |
|---|---|---|---|
| Facility: | Provider Facility as determined by Provider. | | |
| Equipment hosted: | **Manufacturing Batch Month** | **Quantity & Type of Unit (the "Units")** | **Assumed power consumption per Unit (KWh):** |
| | September | 2,450 S19j | 3.255 KWh |
| | September | 1,000 S19j PRO | 3.15 KWh |
| Hosting-Services Rate: | USD $.0556 / KWh | | |
| Payment Due Prior to Installation: | USD $503,281 no later than the earlier of (i) the date of installation of the Units or (ii) October 15, 2021 consisting of • $451,531 To be applied as a credit against invoices as they become due. • $51,750 Set-up Fees | | |
| Equipment Purchase Payment Due Dates: | Due Date | | Amount (US) |
| | 12/22/2020 | | $2,089,313.70 |
| | 01/15/2021 | | $3,133,970.55 |
| | 08/15/2021 | | $5,223,284.25 |
| Estimated Delivery Date: | October 15, 2021.  Provider to notify Client as soon as reasonably possible in advance if Units will not be delivered by this date. Provider may terminate this Order if substantially all the Units are not delivered within 60 days of the Estimated Delivery Date. | | |
| Fees: | Set-up fee: $15/Unit | | |
| Fees payable pursuant to Section 4 in connection with Service Termination/ Suspension | Equipment disconnection fee: $25/Unit Storage Fee: $10/month/Unit Reinstatement fee: $25/Unit | | |

**Order Term.**  Subject to acceptance by Provider, the term of this Order shall commence on the **Commencement Date** and continue until the second Anniversary of the Commencement Date (the "**Initial Term**"), unless sooner terminated (i) by Provider, as provided above, (ii) by mutual agreement of the parties, or (iii) pursuant to Section 4 of the Agreement. Unless earlier terminated, this Order shall automatically renew for successive 12-month renewal terms ("**Renewal Term**") as set forth in the Agreement.

**Fees**. Client shall pay the fees provided for in this Order. The Fees for Services will be determined initially by reference to the Assumed power consumption per Unit of each deployed Unit, multiplied by the Hosting Services Rate (each as set forth above in this Order).  Subsequent invoices will contain any additional charges incurred by Client and adjustments resulting from any differences between the Fees for Services invoiced in the preceding month and the Fee for Services based on Provider's determination of power utilized by Client during that month, as well as any adjustments to Provider's estimate of power to be utilized by Client in the upcoming month.  Fees for Services for each month shall be paid in advance, in accordance with Section 3 of the Agreement.

**Purchase/Delivery/Installation Schedule for Units:** Company will facilitate the procurement on behalf of Client at Client's expense the above referenced Units from Bitmain Malaysia. Company will facilitate the procurement, shipping, and installation of the Units on behalf of Client at Client's sole cost and expense (including any and all costs and expenses associated with shipping, importing and transporting the Units to the Facility as provided above. Client will pay $2,799.53 per S19j Unit and $3,587.72 per S19j PRO Unit (total of $10,446,568.5). Client will make payments according to the Equipment Purchase Payment Due Dates listed above. Client will pay the Provider's invoice for Units within five business days of receipt and execute any

necessary power of attorney and other documents required by customs broker to enable shipment of the Units to a Core Facility on Client's behalf. Risk of loss and ownership of the Units shall pass between Bitmain and Client. Any and all taxes with respect to the purchase of the equipment will be the responsibility of Client.

**Subcontracting and Assignment. Section 8d. of the Agreement is hereby amended to read in its entirety:**

> d.   Subcontracting and Assignment.  Company may permit any affiliate, independent contractor or other third party to perform any of Company's obligations hereunder provided that Company remains primarily liable for the performance of its obligations. Company may assign, delegate, or transfer this Agreement or any of its rights and obligations hereunder without notice to or prior written consent of Client.  Client may not assign, delegate or transfer this Agreement or any of its rights and obligations hereunder without the prior written consent of Company; provided, however, Client may assign, delegate or transfer an Order pursuant to this Agreement to a third party upon the written consent of the Company, which consent shall not be unreasonably, withheld, obstructed or delayed if such assignment is to a third party not competitive to Company and such party executes a new Order on standard terms and conditions containing the hosting price and hosting term set forth in the Order to be assigned.  Any assignment or transfer in violation of this Agreement is void.  This Agreement will be binding upon and inure to the benefit of all permitted successors and assigns.  Nothing in this Agreement is intended to or will confer upon any third party any right, benefit or remedy of any nature whatsoever under or by reason of this Agreement

**Right of First Offer:** Provided Client has executed one or more Orders on the date hereof with respect to Equipment having a total purchase price of more than $50 million, Provider agrees to make available for purchase by Client up to 45% of any newly available units during the calendar year 2021.  In the event units become available, Provider shall notify Client of such the units and the price at which such units are available. In the event Provider notifies Client of the availability of such newly additional units, Client shall have five days to execute an additional Order for such units on hosting terms and conditions mutually agreeable to both Client and Provider.

By: _S. Daniel Leon_  
**Celsius Core LLC, "Client"**  
**Name:** S. Daniel Leon  
**Title:** S. Daniel Leon, President/COO  
**Date:** 12/18/2020

By: _Michael Trzupek_  
**Core Scientific, Inc., "Provider"**  
**Name:** Michael Trzupek  
**Title:** **Chief Financial Officer**  
**Date:** 12/18/2020

**MASTER SERVICES AGREEMENT ORDER #9**

This Order #9 (hereinafter "Order"), including the terms and conditions hereunder, incorporates by reference the terms of the Master Services Agreement dated as of December 18, 2020 (the "**Agreement**") between Provider and Client (as defined below). If any terms of this Order conflict with the terms of the Agreement, the terms of this Order shall govern with respect to this Order. Capitalized terms used but not defined in this Order shall have the meanings ascribed in the Agreement.

Effective August 17, 2021, Master Services Agreement Order #5 is hereby terminated.

| Commencement Date: | August 31, 2021 or the actual date Units are delivered to Client at Provider Facility if such Units are not delivered on such date. | | |
|---|---|---|---|
| Facility: | Provider Facility as determined by Provider. | | |
| Equipment hosted: | Manufacturing Batch Month | Quantity & Type of Unit (the "Units") | Assumed power consumption per Unit (KWh): |
| | July | 3,273 S19 PRO (110TH) | 3.413 KWh |
| Hosting-Services Rate: | USD $.0556 / KWh | | |
| Payment Due Prior to Installation: | USD $502,425 no later than August 19, 2021 consisting of: <br> • $453,330.00, a prepayment to be applied as a credit against future monthly invoices for hosting services as they become due. <br> • $49,095.00 Equipment Configuration Fee for Units | | |
| Equipment Purchase Payment Due Dates: | Due Date | | Amount (US) |
| | 08/19/2021 | | $12,842,924.70 |
| Estimated Delivery Date: | August 31, 2021.  Provider to notify Client as soon as reasonably possible in advance if Units will not be delivered by this date. Provider may terminate this Order if substantially all the Units are not delivered within 60 days of the Estimated Delivery Date. | | |
| Fees: | Equipment Configuration Fee: $15/Unit | | |
| Fees payable pursuant to Section 4 in connection with Service Termination/ Suspension | Equipment disconnection fee: $25/Unit <br> Storage Fee: $10/month/Unit <br> Reinstatement fee: $25/Unit | | |

**Order Term.** Subject to acceptance by Provider, the term of this Order shall commence on the **Commencement Date** and continue until the second Anniversary of the Commencement Date (the "**Initial Term**"), unless sooner terminated (i) by Provider, as provided above, (ii) by mutual agreement of the parties, or (iii) pursuant to Section 4 of the Agreement. Unless earlier terminated, this Order shall automatically renew for successive 12-month renewal terms ("**Renewal Term**") as set forth in the Agreement.

**Fees**. Client shall pay the fees provided for in this Order. The Fees for Services will be determined initially by reference to the Assumed power consumption per Unit of each deployed Unit, multiplied by the Hosting-Services Rate (each as set forth above in this Order).  Subsequent invoices will contain any additional charges incurred by Client and adjustments resulting from any differences between the Fees for Services invoiced in the preceding month and the Fee for Services based on Provider's determination of power utilized by Client during that month, as well as any adjustments to Provider's estimate of power to be utilized by Client in the upcoming month.  Fees for Services for each month shall be paid in advance, in accordance with Section 3 of the Agreement.

**Purchase/Delivery/Installation Schedule for Units:** Company will procure the 3,273 Units referenced above from the manufacturer. The Client shall bear any, and all costs and expenses associated with shipping, importing, and transporting the Units to the Facility as provided above. Client will pay $3,923.90 per Unit (total of $12,842,924.70) on August 19, 2021. Client will execute any necessary power of attorney and other

documents required by customs broker to enable shipment of the Units to a Core Facility on Client's behalf. Any and all taxes with respect to the purchase of the equipment will be the responsibility of Client.

**Subcontracting and Assignment. Section 8d. of the Agreement is hereby amended to read in its entirety:**

> d.  <u>Subcontracting and Assignment</u>.  Company may permit any affiliate, independent contractor or other third party to perform any of Company's obligations hereunder provided that Company remains primarily liable for the performance of its obligations. Company may assign, delegate, or transfer this Agreement or any of its rights and obligations hereunder without notice to or prior written consent of Client.  Client may not assign, delegate or transfer this Agreement or any of its rights and obligations hereunder without the prior written consent of Company; provided, however, Client may assign, delegate or transfer an Order pursuant to this Agreement to a third party upon the written consent of the Company, which consent shall not be unreasonably, withheld, obstructed or delayed if such assignment is to a third party not competitive to Company and such party executes a new Order on standard terms and conditions containing the hosting price and hosting term set forth in the Order to be assigned.  Any assignment or transfer in violation of this Agreement is void.  This Agreement will be binding upon and inure to the benefit of all permitted successors and assigns.  Nothing in this Agreement is intended to or will confer upon any third party any right, benefit or remedy of any nature whatsoever under or by reason of this Agreement

By: _Roni Cohen Pavon_____

Celsius Core LLC, "Client"

Name:  Roni Cohen Pavon

Title:  Chief Revenue Officer

Date: 8/22/2021 _____

By:_____

Core Scientific, Inc., "Provider"

Name: Michael Trzupek

Title:  Chief Financial Officer

Date: _____

documents required by customs broker to enable shipment of the Units to a Core Facility on Client's behalf. Any and all taxes with respect to the purchase of the equipment will be the responsibility of Client.

**Subcontracting and Assignment. Section 8d. of the Agreement is hereby amended to read in its entirety:**

d.  <u>Subcontracting and Assignment</u>.  Company may permit any affiliate, independent contractor or other third party to perform any of Company's obligations hereunder provided that Company remains primarily liable for the performance of its obligations. Company may assign, delegate, or transfer this Agreement or any of its rights and obligations hereunder without notice to or prior written consent of Client.  Client may not assign, delegate or transfer this Agreement or any of its rights and obligations hereunder without the prior written consent of Company; provided, however, Client may assign, delegate or transfer an Order pursuant to this Agreement to a third party upon the written consent of the Company, which consent shall not be unreasonably, withheld, obstructed or delayed if such assignment is to a third party not competitive to Company and such party executes a new Order on standard terms and conditions containing the hosting price and hosting term set forth in the Order to be assigned.  Any assignment or transfer in violation of this Agreement is void.  This Agreement will be binding upon and inure to the benefit of all permitted successors and assigns.  Nothing in this Agreement is intended to or will confer upon any third party any right, benefit or remedy of any nature whatsoever under or by reason of this Agreement

By:_____

**Celsius Core LLC, "Client"**

**Name:** _____

**Title:** _____

**Date:** _____

By: _Michael Trzupek_

**Core Scientific, Inc., "Provider"**

**Name:** Michael Trzupek

**Title:  Chief Financial Officer**

**Date:** 8/18/2021

## MASTER SERVICES AGREEMENT ORDER # 10

This Order, including the terms and conditions hereunder, incorporates by reference the terms of the Master Services Agreement dated as of December 18, 2020 (the "**Agreement**") between Provider and Client (as defined below). If any terms of this Order conflict with the terms of the Agreement, the terms of this Order shall govern with respect to this Order. Capitalized terms used but not defined in this Order shall have the meanings ascribed in the Agreement.

<table>
<tr><td><strong>Commencement Date:</strong></td><td colspan="3">September 20, 2021 and then the fifteenth of every remaining month beginning with October 15, 2021 until December 15, 2022, respectively.</td></tr>
<tr><td><strong>Facility:</strong></td><td colspan="3">Provider Facility as determined by Provider.</td></tr>
<tr><td rowspan="12"><strong>Equipment hosted**:</strong></td><td><strong>Deployment Month</strong></td><td><strong>Quantity & Type of Unit (the "Units")</strong></td><td><strong>Assumed power consumption per Unit (KWh):</strong></td></tr>
<tr><td>SEP 2021</td><td>2,250 - M30S+ or Equivalent</td><td>3.57</td></tr>
<tr><td>MAR 2022</td><td>3,530 - M30S+ or Equivalent</td><td>3.57</td></tr>
<tr><td>APR 2022</td><td>4,710 - M30S+ or Equivalent</td><td>3.57</td></tr>
<tr><td>MAY 2022</td><td>2,350 - M30S+ or Equivalent</td><td>3.57</td></tr>
<tr><td>JUNE 2022</td><td>2,350 - M30S+ or Equivalent</td><td>3.57</td></tr>
<tr><td>JUL 2022</td><td>2,350 - M30S+ or Equivalent</td><td>3.57</td></tr>
<tr><td>AUG 2022</td><td>2,350 - M30S+ or Equivalent</td><td>3.57</td></tr>
<tr><td>SEP 2022</td><td>2,350 - M30S+ or Equivalent</td><td>3.57</td></tr>
<tr><td>OCT 2022</td><td>2,350 - M30S+ or Equivalent</td><td>3.57</td></tr>
<tr><td>NOV 2022</td><td>2,350 - M30S+ or Equivalent</td><td>3.57</td></tr>
<tr><td>DEC 2022</td><td>2,350 - M30S+ or Equivalent</td><td>3.57</td></tr>
<tr><td><strong>Hosting-Services Rate:</strong></td><td colspan="2" align="center"><strong>Deployment Month</strong></td><td><strong>Hosting-Services Rate:</strong></td></tr>
<tr><td></td><td colspan="2">SEP 2021</td><td>USD $.0575/ KWh; USD $.06/Kwh after hosting month 12</td></tr>
<tr><td></td><td colspan="2">MAR 2022</td><td>USD $.0593/ KWh; USD $.06/kwh after hosting month 12</td></tr>
<tr><td></td><td colspan="2">APR 2022 – DEC 2022</td><td>USD $.00625/ KWh; USD $0.6/kwh after hosting month 12</td></tr>
<tr><td><strong>Payment Due Prior to Installation:</strong></td><td colspan="3"><strong>USD $10,736,252.50 on or before September 20, 2021 consisting of:</strong><br>
• $1,685,800.00, 100% of the prepayment for hosting services for SEP 2021 Units to be applied as a credit against future monthly invoices as they become due.<br>
• $1,909,775.00, 70% of the prepayment for hosting services for MAR 2022 Units to be applied as a credit against future monthly invoices as they become due.<br>
• $1,342,547.50, 35% of the prepayment for hosting services for APR 2022 Units to be applied as a credit against future monthly invoices as they become due.<br>
• $5,358,780.00, 35% of the prepayment for hosting services for MAY 2022 – DEC 2022 Units ($669,847.50 for each of MAY 2022, JUN 2022, JUL 2022, AUG 2022, SEP 2022, OCT 2022, NOV 2022 and DEC 2022 Units) to be applied as a credit against future monthly invoices as they become due.<br>
• $439,350.00, Equipment Configuration Fee for SEP 2021 – DEC 2022 Units listed above.<br><br>
<strong>USD $1,342,547.50 on or before October 20, 2021 consisting of:</strong><br>
• $1,342,547.50, 35% of the prepayment for hosting services for APR 2022</td></tr>
</table>

DocuSign Envelope ID: B252549B-39D5-46AA-BCCF-1420968B68DB

Units to be applied as a credit against future monthly invoices as they become due.

**USD $669,847.50 on or before November 20, 2021 consisting of:**
- $669,847.50, 35% of the prepayment for hosting services for MAY 2022 Units to be applied as a credit against future monthly invoices as they become due.

**USD $669,847.50 on or before December 20, 2021 consisting of:**
- $669,847.50, 35% of the prepayment for hosting services for JUNE 2022 Units to be applied as a credit against future monthly invoices as they become due.

**USD $669,847.50 on or before January 20, 2022 consisting of:**
- $669,847.50, 35% of the prepayment for hosting services for JUL 2022 Units to be applied as a credit against future monthly invoices as they become due.

**USD $1,488,322.50 on or before February 20, 2022 consisting of:**
- $669,847.50, 35% of the prepayment for hosting services for AUG 2022 Units to be applied as a credit against future monthly invoices as they become due.
- $818,475.00, the remaining 30% of the prepayment for hosting services for MAR 2022 Units to be applied as a credit against future monthly invoices as they become due.

**USD $1,820,602.50 on or before March 20, 2022 consisting of:**
- $669,847.50, 35% of the prepayment for hosting services for SEP 2022 Units to be applied as a credit against future monthly invoices as they become due.
- $1,150,755.00, the remaining 30% of the prepayment for hosting services for APR 2022 Units to be applied as a credit against future monthly invoices as they become due.

**USD $1,244,002.50 on or before April 20, 2022 consisting of:**
- $669,847.50, 35% of the prepayment for hosting services for OCT 2022 Units to be applied as a credit against future monthly invoices as they become due.
- $574,155.00, the remaining 30% of the prepayment for hosting services for MAY 2022 Units to be applied as a credit against future monthly invoices as they become due.

**USD $1,244,002.50 on or before May 20, 2022 consisting of:**
- $669,847.50, 35% of the prepayment for hosting services for NOV 2022 Units to be applied as a credit against future monthly invoices as they become due.
- $574,155.00, the remaining 30% of the prepayment for hosting services for JUN 2022 Units to be applied as a credit against future monthly invoices as they become due.

**USD $1,244,002.50 on or before June 20, 2022 consisting of:**
- $669,847.50, 35% of the prepayment for hosting services for DEC 2022

DocuSign Envelope ID: B252549B-39D5-46AA-BCCF-142096896B2B

| | |
|---|---|
| | Units to be applied as a credit against future monthly invoices as they become due.<br>• $574,155.00, the remaining 30% of the prepayment for hosting services for JUL 2022 Units to be applied as a credit against future monthly invoices as they become due.<br><br>**USD $574,155.00 on or before July 20, 2022 consisting of:**<br>• $574,155.00, the remaining 30% of the prepayment for hosting services for AUG 2022 Units to be applied as a credit against future monthly invoices as they become due.<br><br>**USD $574,155.00 on or before August 20, 2022 consisting of:**<br>• $574,155.00, the remaining 30% of the prepayment for hosting services for SEP 2022 Units to be applied as a credit against future monthly invoices as they become due.<br><br>**USD $574,155.00 on or before September 20, 2022 consisting of:**<br>• $574,155.00, the remaining 30% of the prepayment for hosting services for OCT 2022 Units to be applied as a credit against future monthly invoices as they become due.<br><br>**USD $574,155.00 on or before October 20, 2022 consisting of:**<br>• $574,155.00, the remaining 30% of the prepayment for hosting services for NOV 2022 Units to be applied as a credit against future monthly invoices as they become due.<br><br>**USD $574,155.00 on or before November 20, 2022 consisting of:**<br>• $574,155.00, the remaining 30% of the prepayment for hosting services for DEC 2022 Units to be applied as a credit against future monthly invoices as they become due. |
| **Estimated Delivery Date:** | As of fifteenth of every month beginning with December 15, 2021 until December 15, 2022, respectively.<br><br>Client to notify Provider as soon as reasonably possible in advance if Units will not be delivered by this date. Provider may terminate this Order if substantially all the Units are not delivered within 60 days of the Estimated Delivery Date, respectively. |
| **Fees:** | Equipment Configuration Fee: $15/Unit payable as provided above. |
| **Fees payable pursuant to Section 4 in connection with Service Termination/ Suspension** | Equipment disconnection fee: $25/Unit<br>Storage Fee: $10/month/Unit<br>Reinstatement fee: $25/Unit<br>Equipment Recycle fee: $25/Unit decommissioned or disposed of during the term |

**Order Term.** Subject to acceptance by Provider, the term of this Order shall commence on the **Commencement Date** and continue until the second anniversary of the Commencement Date (the "**Initial Term**"), unless sooner terminated (i) by Provider, as provided above, (ii) by mutual agreement of the parties, or (iii) pursuant to Section 4 of the Agreement. Unless earlier terminated, this Order shall automatically renew for successive 12-month renewal terms ("**Renewal Term**") unless terminated during a renewal term as set forth in the Agreement.

**Fees**. Client shall pay the fees provided for in this Order. The Fees for Services will be determined initially by reference to the Assumed power consumption per Unit of each deployed Unit, multiplied by the Hosting-Services Rate (each as set forth above in this Order). Subsequent invoices will contain any additional charges incurred by Client and adjustments resulting from any differences between the Fees for Services invoiced in the preceding month and the Fee for Services based on Provider's determination of power utilized by Client during that month, as well as any adjustments to Provider's estimate of power to be utilized by Client in the upcoming month. Fees for Services for each month shall be paid in advance, in accordance with Section 3 of the Agreement.

**Third Party Code.** Except to the extent arising from or relating to Provider's gross negligence, fraud or willful misconduct, Client shall indemnify, defend and hold harmless Company and its affiliates, stockholders, directors, officers, employees, subcontractors and invitees from and against any losses, liabilities, damages, costs and expenses (including, without limitation, reasonable attorneys' fees) arising from or relating to Client's installation or use of any non-standard software or firmware in connection with the Client Equipment.

**Subcontracting and Assignment. Section 8d. of the Agreement is hereby amended to read in its entirety:**

d. <u>Subcontracting and Assignment</u>. Company may permit any affiliate, independent contractor or other third party to perform any of Company's obligations hereunder provided that Company remains primarily liable for the performance of its obligations. Company may assign, delegate, or transfer this Agreement or any of its rights and obligations hereunder without notice to or prior written consent of Client. Client may not assign, delegate or transfer this Agreement or any of its rights and obligations hereunder without the prior written consent of Company; provided, however, Client may assign, delegate or transfer an Order pursuant to this Agreement to a third party upon the written consent of the Company, which consent shall not be unreasonably, withheld, obstructed or delayed if such assignment is to a third party not competitive to Company and such party executes a new Order on standard terms and conditions containing the hosting price and hosting term set forth in the Order to be assigned. Any assignment or transfer in violation of this Agreement is void. This Agreement will be binding upon and inure to the benefit of all permitted successors and assigns. Nothing in this Agreement is intended to or will confer upon any third party any right, benefit or remedy of any nature whatsoever under or by reason of this Agreement

**Warranty:** Company does not make and hereby disclaims all warranties with respect to the Units. Company shall initiate warranty claims with Unit manufacturer. Company cannot and does not guarantee that warranty claims will be accepted by manufacturer.

Client agrees and confirms that:

(i)     It has clean title to the Client Equipment and has not entered into any agreement that would interfere with Provider's exercise of its remedies under section 4.d of the Agreement.

(ii)    Neither Client nor Client's customers will use the Services for any illegal activity; and

(iii)   Neither Client nor its customers are subject to any sanctions imposed by the Office of Foreign Asset control of the U.S. Department of the Treasury.

**Notification of Hosting Availability:** Company will notify Client as soon as practicable of additional hosting availability, if any, and provide Client up to 10 additional MW per month at a hosting services rate of $0.0625

per KWh. Additional hosting availability if available will be the subject of a separate order and provided to Client on a priority basis, subject to Client acceptance.

**Client agrees to replace sold, damaged and other inoperable Units within 90 days to maintain the aggregate number of Units subject to this Order. Provider agrees to a 500 Unit inoperable threshold for Client to replace, sold, damages and other inoperable Units. Additional equipment may be added to this Order at the Hosted Services Rate provided upon the mutual agreement of Provider and Client.

By: _Roni Cohen Pavon_

**Celsius Core LLC "Client"**
Name:  **Roni Cohen Pavon**
Title:  **Chief Revenue Officer**
Date:  9/27/2021

By: _Michael Trzupek_

**Core Scientific, Inc., "Provider"**
Name: **Michael Trzupek**
Title:  **CFO**
Date:  9/27/2021