## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| CORE SCIENTIFIC, INC., *et al.,* | § § | Case No. 22-90341 (DRJ) |
| | § § | (Jointly Administered) |
| Debtors.[1] | § § § | |

### SUMMARY COVERSHEET TO FIRST INTERIM FEE APPLICATION OF WEIL, GOTSHAL & MANGES LLP, ATTORNEYS FOR DEBTORS, FOR THE PERIOD FROM DECEMBER 21, 2022 TO MARCH 31, 2023

| Name of Applicant: | Weil, Gotshal & Manges LLP | |
|---|---|---|
| **Applicant's Role in Case:** | Attorneys for Debtors | |
| **Docket No. of Employment Order:** | Docket No. 504 | |
| **Interim Application (x)     No.   1st** **Final Application ( )** | First Interim Fee Application | |
| | **Beginning Date** | **End of Period** |
| **Time period covered by this Application for which interim compensation has not previously been awarded:** | 12/21/22 | 03/31/23 |
| **Were the services provided necessary to the administration of or beneficial at the time rendered toward the completion of the case?  Yes** | | |
| **Were the services performed in a reasonable amount of time commensurate with the complexity, importance and nature of the issues addressed?** Yes | | |
| **Is the requested compensation reasonable based on the customary compensation charged by comparably skilled practitioners in other non-bankruptcy cases?** Yes | | |
| **Do expense reimbursements represent actual and necessary expenses incurred?**  Yes | | |
| **Compensation Breakdown for Time Period Covered by this Application** | | |
| **Total professional fees requested in this Application:** | $9,747,363.75 | |
| **Total professional hours covered by this Application:** | 7,906.40 | |

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions, VII, LLC (3198).  The Debtors' corporate headquarters and service address is 210 Barton Springs Road, Suite 300, Austin, Texas 78704.

| | |
|---|---|
| **Average hourly rate for professionals:** | $1,184.14 |
| **Total paraprofessional fees requested in this Application:** | $233,406.00 |
| **Total paraprofessional hours covered by this Application:** | 522.30 |
| **Average hourly rate for paraprofessionals:** | $446.88 |
| **Total fees requested in this Application:** | $9,980,769.75 |
| **Total expense reimbursements requested in this Application:** | $103,494.82 |
| **Total fees and expenses requested in this Application:** | $10,084,264.57 |
| **Total fees and expenses awarded in all prior Applications:** | N/A |
| **Plan Status:** | |

**Primary Benefits:** As lead counsel to the Debtors, Weil has guided the Debtors through the chapter 11 process since the Petition Date, including, among other things, (i) securing critical first- and second-day relief, including authority to pay certain prepetition claims; (ii) accessing interim debtor-in-possession financing in an aggregate principal amount of up to $75 million; (iii) negotiating and obtaining Court approval of a replacement postpetition financing with B. Riley Commercial Capital, LLC in an aggregate principal amount of up to $70 million; (iv) negotiating and obtaining Court approval of a stipulation with NYDIG ABL LLC, settling an approximately $38.6 million claim against Debtors; (v) obtaining Court approval of non-insider key employee retention plan; (vi) negotiating and obtaining court approval of a global settlement with Priority Power Management, LLC, which resolved significant claims against the estates; (vii) obtaining Court approval to sell certain coupons from original mining equipment manufacturer Bitmain Technologies Ltd.; (viii) negotiating a consensual resolution to the request of the Ad Hoc Equity Group to appoint an official committee of equity holders; (ix) analyzing contracts and leases and filing and obtaining Court approval of motions to reject certain contracts and leases, including the Debtors' contracts with Celsius; (x) coordinating with the Debtors and their other advisors regarding a sale process for certain non-core assets; (xi) developing a constructive relationship the official committee of unsecured creditors, the United States Trustee for Region 7, and other stakeholders, including their respective professionals, and providing constituents and their advisors with due diligence materials; (xiii) filing schedules of assets and liabilities and statements of financial affairs for each of the eleven (11) Debtors; (xiv) obtaining Court approval of a bar date to enable the Debtors to commence the claims reconciliation process and appropriately size the claims pool in connection with a plan of reorganization; and (xv) coordinating with the Debtors and their other advisors regarding the formulation of a plan of reorganization.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| CORE SCIENTIFIC, INC., *et al.*, | § | Case No. 22-90341 (DRJ) |
| | § | |
| | § | (Jointly Administered) |
| Debtors.[1] | § | |

**FIRST INTERIM FEE APPLICATION OF WEIL, GOTSHAL &
MANGES LLP, ATTORNEYS FOR DEBTORS, FOR INTERIM ALLOWANCE
OF COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND
REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED
FROM DECEMBER 21, 2022 THROUGH AND INCLUDING MARCH 31, 2023**

---

**IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN
WRITING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE
YOUR RESPONSE ELECTRONICALLY AT HTTPS://ECF.TXSB.USCOURTS.GOV/
WITHIN TWENTY-ONE (21) DAYS FROM THE DATE THIS MOTION WAS FILED.
IF YOU DO NOT HAVE ELECTRONIC FILING PRIVILEGES, YOU MUST FILE A
WRITTEN OBJECTION THAT IS ACTUALLY RECEIVED BY THE CLERK
WITHIN TWENTY-ONE (21) DAYS FROM THE DATE THIS MOTION WAS FILED.
OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND
GRANT THE RELIEF REQUESTED.**

---

Weil, Gotshal & Manges LLP ("**Weil**"), attorneys for Core Scientific, Inc. and its

debtor affiliates in the above-captioned chapter 11 cases, as debtors and debtors in possession

(collectively, the "**Debtors**"), hereby files its first application (this "**Application**") for interim

allowance of compensation for professional services performed by Weil during the period

commencing December 21, 2022 through and including March 31, 2023 (the "**Compensation**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions, VII, LLC (3198).  The Debtors' corporate headquarters and service address is 210 Barton Springs Road, Suite 300, Austin, Texas 78704.

Period") in the amount of $9,980,769.75, and for reimbursement of its actual and necessary expenses in the amount of $103,494.82 incurred during the Compensation Period, and respectfully represents as follows:

### Preliminary Statement

1.      During the Compensation Period, Weil's professionals guided the Debtors through the initial stages of the chapter 11 process, including, among other things: (i) securing critical first- and second-day relief, including authority to pay certain prepetition claims; (ii) obtaining debtor-in-possession financing in an aggregate principal amount of up to $75 million (the "**Original DIP Financing**"); (iii) entering into a replacement postpetition financing (the "**Replacement DIP Financing**") with B. Riley Commercial Capital, LLC (the "**DIP Lender**"), in an aggregate principal amount of up to $70 million, on more favorable terms than the Original DIP Financing; (iv) entering into a Court-approved stipulation with NYDIG ABL LLC, settling a $38.6 million claim against Debtors (the "**NYDIG Transaction**"); (v) obtaining Court approval of non-insider key employee retention plan (the "**KERP**"); (vi) negotiating global settlement (the "**PPM Settlement**") with Priority Power Management, LLC ("**PPM**") resolving significant claim against the estates and preserving the Debtors' relationship with a significant counterparty; (vii) obtaining Court approval to sell certain coupons from original mining equipment manufacturer Bitmain Technologies Ltd.; (viii) negotiating a consensual resolution to the request of an ad hoc committee of equity holders the (the "**Ad Hoc Equity Group**") to appoint an official committee of equity holders (the "**Equity Committee**"); (ix) analyzing contracts and leases and filing motions to reject certain contracts and leases, including the Debtors' contracts with Celsius Mining, LLC ("**Celsius**"); (x) conducting a sale process for certain non-core assets; (xi) developing a constructive relationship the official committee of unsecured creditors (the "**Creditors' Committee**"), the Equity Committee, the United States Trustee for Region 7 (the "**U.S. Trustee**"),

and other stakeholders, including their respective professionals, and providing their constituents and advisors with due diligence; (xii) preparing and filing schedules of assets and liabilities and statements of financial affairs for each of the eleven (11) Debtors (Docket Nos. 461-91; 625-30) (the "**Schedules and SOFAs**"); and (xiii) obtaining Court approval of a bar date (the "**Bar Date**") to enable the Debtors to commence the claims reconciliation process and appropriately size the claims pool in connection with a plan of reorganization.

2.    The professional services performed and expenses incurred by Weil during the Compensation Period were actual and necessary to preserve and protect the value of the Debtors' estates and minimize any negative impact of the restructuring.  Given the circumstances of these chapter 11 cases, Weil's charges for professional services performed and expenses incurred are reasonable and appropriate under applicable standards.  Weil respectfully requests that the Court grant this Application and allow interim compensation for professional services performed and reimbursement for expenses incurred.

## Relief Requested

3.    This Application has been prepared in accordance with sections 330(a) and 331 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Rule 2016-1 of the Local Bankruptcy Rules for the Southern District of Texas (the "**Bankruptcy Local Rules**"), the *U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases Effective as of November 1, 2013* (the "**Fee Guidelines**"), the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* (Docket No. 541) (the "**Interim Compensation Order**").  The Debtors request approval of Weil's Application.

4.      A proposed form of order granting the relief requested herein is attached hereto as **Exhibit A** (the "**Proposed Order**").

## Jurisdiction

5.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

6.      On   December 21, 2022   (the "**Petition   Date**"),   the   Debtors   each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code.  The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code.

7.      The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b) and Bankruptcy Local Rule 1015-1.

8.      On January 9, 2023, the U.S. Trustee appointed the Creditors' Committee in these chapter 11 cases pursuant to section 1102 of the Bankruptcy Code.  On March 23, 2023, the U.S. Trustee appointed the Equity Committee in these chapter 11 cases pursuant to section 1102 of the Bankruptcy Code.  No trustee or examiner has been appointed in these chapter 11 cases.

9.      Information regarding the Debtors' business and capital structure and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Michael Bros in Support of the Debtors' Chapter 11 Petitions and First Day Relief*, sworn to on December 21, 2022 (Docket No. 5).

### Debtors' Retention of Weil

10.     On January 15, 2023, the Debtors filed the *Application of Debtors for Authority to Retain and Employ Weil, Gotshal & Manges LLP as Attorneys for Debtors Effective as of Petition Date* (Docket No. 286) (the "**Retention Application**").   On February 8, 2023, the Court entered an order approving the Retention Application (Docket No. 504) (the "**Retention Order**").   The Retention Order authorizes Weil to provide the following services to the Debtors:

> a)  take all necessary action to protect and preserve the Debtors' estates, including the prosecution of actions on the Debtors' behalf, the defense of any actions commenced against the Debtors, the negotiation of disputes in which the Debtors are involved and the preparation of objections to claims filed against the Debtors' estates;
>
> b)  prepare on behalf of the Debtors, as debtors in possession, all necessary motions, applications, answers, orders, reports and other papers in connection with the administration of the Debtors' estates;
>
> c)  take all necessary actions in connection with any chapter 11 plan and related disclosure statement and all related documents, and such further actions as may be required in connection with the administration of the Debtors' estates;
>
> d)  if necessary, take all appropriate actions in connection with the sale of any or all of the Debtors' assets pursuant to section 363 of the Bankruptcy Code, or otherwise; and
>
> e)  perform all other necessary legal services in connection with the prosecution of these chapter 11 cases; *provided, however*, that to the extent Weil determines that such services fall outside of the scope of services historically or generally performed by Weil as lead debtors' counsel in a bankruptcy case, Weil will file a supplemental declaration.

(Retention Order ¶ 2.)

### Summary of Professional Compensation
### and Reimbursement of Expenses Requested

11.     Weil seeks interim allowance of compensation for professional services performed during the Compensation Period in the amount of $9,980,769.75 and reimbursement of expenses incurred in connection with the rendition of such services in the amount of $103,494.82. During the Compensation Period, Weil attorneys, paraprofessionals, and other non-legal staff

expended a total of 8,428.70 hours in connection with the necessary services performed.  During the Compensation Period, Weil voluntarily reduced the amount of fees requested by $175,259.00.

12.    There is no agreement or understanding between Weil and any other person, other than members of the firm, for the sharing of compensation to be received for services rendered in these chapter 11 cases.  During the Compensation Period, Weil received no payment or promises of payment from any source for services rendered, or to be rendered, in any capacity whatsoever in connection with the matters covered by this Application.

13.    As set forth in the Retention Application, prior to the Petition Date, the Debtors paid fee advances to Weil for professional services to be performed and expenses to be incurred in connection with its representation of the Debtors and in preparation of the Debtors seeking relief under chapter 11 (the "**Fee Advance**").  Based on a reconciliation of all charges and expenses through the date of this Application, the balance of the Fee Advance as of the date of this Application is $0.00.

14.    The fees charged by Weil in these cases are billed in accordance with Weil's existing billing rates and procedures in effect during the Compensation Period.  The rates Weil charges for the services rendered by its professionals and paraprofessionals in these chapter 11 cases are no greater than the rates Weil charges for professional and paraprofessional services rendered in comparable bankruptcy and non-bankruptcy related matters.  Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable bankruptcy and non-bankruptcy matters in a competitive national legal market.

### Supporting Documents

15.    Attached hereto as **Exhibit B** is the Certification of Ronit J. Berkovich, a partner of Weil (the "**Berkovich Certification**"), regarding Weil's compliance with the Fee Guidelines.

16.     Attached hereto as **Exhibit C** is a schedule of all Weil attorneys and paraprofessionals who have performed services for the Debtors during the Compensation Period, the capacities in which each individual is employed by Weil, the department in which each individual practices, the hourly billing rate charged by Weil for services performed by such individuals, the year in which each attorney was first licensed to practice law, where applicable, and the aggregate number of hours expended in this matter and fees billed in connection therewith (the "**Schedule of Professional Fees**").

17.     Weil maintains computerized records of the time spent by all Weil attorneys and paraprofessionals in connection with the prosecution of these chapter 11 cases.  Attached hereto as **Exhibit D** is a schedule of Weil's computerized time records billed during the Compensation Period using project categories hereinafter described in the format specified by the Fee Guidelines (the "**Time Records**").

18.     Attached hereto as **Exhibit E** is an itemized schedule of the expenses for which Weil is seeking reimbursement and a summary specifying the categories of expenses included in the schedule and the total amount for each such expense category (the "**Expenses**").

19.     Attached hereto as **Exhibit F** is a summary and comparison of the aggregate blended hourly rates billed by Weil's New York and Texas timekeepers to non-bankruptcy matters during the prior twelve-month period ending April 30, 2023 and the blended hourly rates billed to the Debtors during the Compensation Period (the "**Blended Rate Comparison Chart**").

20.     Weil discussed its rates, fees, and staffing with the Debtors at the outset of these cases and has continued to discuss staffing and fees with the Debtors throughout these cases. Attached hereto as **Exhibit G** is a budget prepared in connection with Weil's representation of the Debtors during the Compensation Period (the "**Budget**").

21.     Attached hereto as **Exhibit H** is a summary of Weil's staffing plan. Attorneys and paraprofessionals assigned to this matter were necessary to assist with the prosecution of the Debtors' chapter 11 cases, preservation of the Debtors' assets, and other matters described herein.

22.     To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Compensation Period, but were not processed prior to the preparation of this Application, Weil reserves the right to request additional compensation for such services and reimbursement of such expenses in a future application to the Court.

### Summary of Services Performed by
### Weil During Compensation Period

23.     During the Compensation Period, Weil devoted substantial resources and rendered significant professional services to ensure that, among other things, the Debtors would be able to transition seamlessly into chapter 11, operate their business without interruption, obtain the Original DIP Financing and, subsequently, the Replacement DIP Financing, obtain approval of key settlements including the PPM Settlement and NYDIG Transaction, obtain approval of the KERP, and establish the Bar Date.  The following is a summary of the significant professional services, among others, rendered by Weil during the Compensation Period, organized in accordance with Weil's internal time-tracking system, and broken down by task code:[2]

    a.    <u>Asset Acquisitions / Dispositions / 363 Matters (Task Code 003)</u>
        Fees:  $737,500.00; Total Hours:  620.50

- Drafted, filed, and obtained Court approval of the *Emergency Motion of Debtors for Entry of an Order (I) Authorizing the Sale of Bitmain Coupons, Free and Clear of All Liens, Claims, Interests, and Encumbrances and (II) Granting Related Relief* (Docket No. 346);

---

[2]     If a task code does not appear, then Weil did not bill significant time for that task code during the Compensation Period, but may bill time for that task code in the future.

- Reviewed and drafted various documents and analyzed legal issues related to sales process for non-core assets;

- Drafted and negotiated non-disclosure agreements with potential asset purchasers and their advisors;

- Negotiated legal documentation with potential asset purchasers; and

- Communicated amongst the various Weil practice groups, the Debtors, the Debtors' other advisors, and constituents to coordinate strategy, information flow, and other issues relating to asset sales.

b.   <u>Bar Date and Claim Matters (Task Code 005)</u>
Fees: $295,745.50; Total Hours: 261.60

- Researched various topics related to the Bar Date and claim matters;

- Drafted, filed, and obtained Court approval of *Motion of Debtors for Order (I) Establishing Deadlines to File Proofs of Claim and (II) Approving Form and Manner of Notice Thereof* (Docket No. 528);

- Coordinated with the claims and noticing agent in these cases, Stretto, Inc., regarding the Bar Date and related notices;

- Reviewed filed claims and strategized approaches to filed claims;

- Conferred internally and with the Debtors regarding objecting to claims;

- Strategized and researched issues relating to claims settlement procedures; and

- Corresponded with creditors regarding claims.

c.   <u>Case Administration (WIP Updates and Calendar Updates Only) (Task Code 006)</u>
Fees: $112,147.50; Total Hours: 119.90

- Drafted and filed notices of commencement of the chapter 11 cases and master service list on behalf of the Debtors; and

- Prepared and regularly updated case calendars, comprehensive work-in-process lists, and other chapter 11 resources for the Debtors and Weil teams.

d.   <u>Celsius Matters (Task Code 007)</u>
Fees: $503,960.00; Total Hours: 399.10

- Drafted, filed, and prepared for, and attended hearing on *Debtors' Emergency Motion for Entry of an Order Authorizing Rejection of*

*Executory Contracts with Celsius Mining, LLC* (Docket No. 189), conferred with Weil practice groups, the Debtors' advisors, Celsius' counsel, and the Debtors regarding same, and reviewed and analyzed documents in connection with same;

- Developed general strategy regarding matters related to Celsius and its and its affiliates' chapter 11 cases, styled as *In re Celsius Network LLC*, et al., Case No. 22-10964 (MG) (Bankr. S.D.N.Y.) (the "**Celsius Chapter 11 Cases**");

- Conferred with Weil practice groups, the Debtors' advisors, and the Debtors regarding the same, and analyzed and drafted documents relating to the foregoing;

- Reviewed the Celsius Chapter 11 Cases docket, analyzed pleadings filed thereon, observed and summarized hearings in the Celsius Chapter 11 Cases, conferred internally regarding same, in each case regarding issues relevant to the Debtors;

- Reviewed, analyzed, and drafted objection to proposed cure amounts listed in the *Notice to Contract Parties to Potentially Assumed Executory Contracts and Unexpired Leases* (Celsius Chapter 11 Cases, Docket No. 1300), conferred with Weil practice groups regarding same, and reviewed and analyzed documents in connection with same;

- Drafted, revised, and filed proofs of claim against Celsius in the Celsius Chapter 11 Cases on behalf of the Debtors, conferred with Weil practice groups and the Debtors regarding same, and reviewed and analyzed documents in connection with same; and

- Researched various topics relating to Celsius matters and general strategy regarding Celsius and the Celsius Chapter 11 Cases, including relating to the foregoing.

e.  <u>Chapter 11 Plan / Confirmation / Implementation / Plan Supplement (Task Code 008)</u>
    Fees:  $247,992.00; Total Hours:  230.50

- Conferred internally and drafted materials related to the termination of the prepetition restructuring support agreement (the "**RSA**");

- Conducted research regarding legal issues related to a plan of reorganization; and

- Corresponded with Debtors and Debtors' advisors regarding plan of reorganization strategy and construct;

f.   <u>Corporate Governance / Securities / Equity Matters (Task Code 009)</u>
     Fees:  $719,032.50; Total Hours:  607.30

- Prepared materials for, and participated in, regular meetings of Debtors' board of directors (the "**Board**") and the special committee of independent directors of the Board (the "**Special Committee**");

- Drafted minutes of Board and Special Committee meetings;

- Prepared, reviewed, and commented on corporate governance documents for the Board and Special Committee;

- Strategized and conferred internally, with the Debtors, and with Debtors' other advisors regarding the appointment of the Equity Committee;[3]

- Analyzed certain issues related to the Debtors' securities and governance; and

- Conferred internally with Weil practice groups and the Debtors regarding corporate governance and securities matters.

g.   <u>DIP Financing / Cash Collateral / Cash Management (Task Code 011)</u>
     Fees:  $2,530,251.00; Total Hours:  2,102.40

- Drafted, filed and obtained interim approval of *Emergency Motion of Debtors for Entry of Interim and Final Orders (A) Authorizing the Debtors to Obtain Postpetition Financing, (B) Authorizing the Debtors to Use Cash Collateral, (C) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (D) Granting Adequate Protection to the Prepetition Secured Parties, (E) Modifying the Automatic Stay, (F) Scheduling a Final Hearing, and (G) Granting Related Relief* (Docket No. 38) (the "**Original DIP Motion**");

- Negotiated, reviewed, and revised order for the Original DIP Financing (the "**Original DIP Order**");

- Negotiated, reviewed and revised the credit agreement for the Original DIP Financing (the "**Original DIP Credit Agreement**") and related schedules and ancillary documents related thereto;

- Drafted, filed, and obtained Court approval of *Emergency Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Replacement Senior Secured Non-Priming Superpriority Postpetition Financing, (B) Use Cash Collateral, and (C) Pay Off Existing Postpetition Financing Facility, (II) Granting*

---

[3] Subsequent to the Petition Date, Weil created Task Code 031, which contains time entries relating to the Equity Committee after a certain date, as discussed below.

*Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Granting Adequate Protection to the Prepetition Secured Parties, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* (Docket No. 389) and declarations in support thereof (collectively, the "**Replacement DIP Motion**");

- Negotiated, reviewed, and revised order for the Replacement DIP Financing (the "**Replacement DIP Order**" and, together with the Original DIP Order, the "**DIP Orders**");

- Conferred and negotiated with parties in interest regarding comments to DIP Orders;

- Negotiated, reviewed and revised the credit agreement for the Replacement DIP Financing (the "**Replacement DIP Credit Agreement,**" and with the Original DIP Credit Agreement, the "**DIP Credit Agreements**") and schedules and ancillary documents related thereto;

- Communicated among Weil practice groups, the Debtors, the Debtors' other advisors, and other constituents with respect to the DIP Orders, the DIP Credit Agreements, and the related budget/variance reports;

- Coordinated response to the Creditors' Committee discovery requests in connection with DIP Orders;

- Drafted, reviewed, and revised reply to objection to the Original DIP Financing;

- Prepared for hearings on the Original DIP Motion and the Replacement DIP Motion;

- Conducted legal research regarding DIP related matters, including adequate protection issues;

- Coordinated with Debtors and the Debtors' advisors to negotiate with potential third party lenders with respect to replacement DIP financing and negotiated non-disclosure agreements in connection therewith; and

- Drafted, reviewed, and revised Final Cash Management Order.

h.   <u>Employee Matters (Task Code 013)</u>
     Fees:  $270,433.50; Total Hours:  208.40

- Drafted, filed and obtained approval of *Motion of Debtors for Entry of Order Approving and Authorizing Payments Under Non-Insider Key Employee Retention Plan* (Docket No. 633) (the "**KERP Motion**");

- Addressed U.S. Trustee due diligence requests, and information requests from other parties, concerning the KERP Motion;

- Drafted *Motion of Debtors for Entry of Order (I) Authorizing Debtors to Enter into Employment Agreement with Adam Sullivan and (II) Granting Related Relief* (Docket No. 774) and reviewed and revised employment agreement and offer letter;

- Researched and analyzed various employee-related issues; and

- Conferred with Weil practice groups and the Debtors regarding employee-related matters.

i.   <u>Equipment Financing and Leases (Task Code 014)</u>
     Fees:  $260,940.00; Total Hours:  222.70

- Negotiated, drafted, filed, and obtained Court approval of a stipulation approving the NYDIG Transaction, including the *Motion of Debtors for Entry of an Order (I) Authorizing and Approving the Stipulation Transferring Property to NYDIG ABL LLC in Exchange for Full Satisfaction of Debt, Free and Clear of All Liens, Claims, Interests, and Encumbrances, and (II) Granting Related Relief* (Docket No. 448);

- Conducted research on various issues related to equipment lenders and equipment leases;

- Reviewed, analyzed, and  equipment loans and leases;

- Communicated with equipment lenders and lessors regarding adequate protection; and

- Communicated amongst the various Weil practice groups, the Debtors, and the Debtors' other advisors regarding Equipment Lenders/leases and adequate protection.

j.   <u>Exclusivity (Task Code 015)</u>
     Fees:  $56,781.50; Total Hours:  51.40

- Drafted *Motion of the Debtors for Order Extending Exclusive Periods Pursuant to Section 1121(D) of the Bankruptcy Code* (Docket No. 773) (the "**Exclusivity Motion**"); and

- Corresponded internally and with Debtors' other advisors regarding the Exclusivity Motion.

k.    <u>Executory Contracts / Leases / Real Property / Other 365 Matters (Task Code 016)</u>
      Fees:  $422,485.50; Total Hours:  372.80

- Conducted due diligence review of certain agreements and leases;

- Drafted and filed *Debtors' Omnibus Motion for Order (I) Authorizing Rejection of Executory Contracts and Unexpired Leases and (II) Granting Related Relief* (Docket No. 667);

- Drafted and/or reviewed various real estate documents, including leases and easements;

- Conducted legal analysis relating to mechanics liens and other real estate issues;

- Drafted *Motion of Debtors for Authority to Extend Time to Assume or Reject Unexpired Leases of Nonresidential Real Property* (Docket No. 775);

- Corresponded with third parties regarding various topics related to real estate matters; and

- Conferred with Weil practice groups, the Debtors, and the Debtors' advisors regarding various real estate topics.

l.    <u>General Case Strategy (Including WIP and Team Meetings) (Task Code 017)</u>
      Fees:  $407,588.00; Total Hours:  271.20

- Prepared for and participated in meetings and on teleconferences with the Debtors' management team and the Debtors' other advisors to discuss case strategy and coordination, Court filings and hearings, transaction negotiations, and numerous other case issues and pending matters; and

- Conducted numerous internal team meetings, conferences and teleconferences regarding the status and administration of the Debtors' chapter 11 case, various business-related issues and general case strategy, and various work streams regarding the matters described in this Application.

14

m.     <u>Hearings and Court Matters (Task Code 018)</u>
Fees: $432,147.00; Total Hours: 415.90

- Prepared for and represented the Debtors at hearings, including first day hearing, second day hearing, hearings on Replacement DIP financing, and numerous other hearings regarding various issues related to these chapter 11 cases;

- Prepared and filed documents for hearings, and coordinated service of various motions, notices, and other documents for hearings, including agendas, proposed agendas, proposed orders, certificates of no objection, and witness and exhibit lists; and

- Consulted with the Court's chambers regarding case matters and prepared materials for the court.

n.     <u>Non-Bankruptcy Litigation (Task Code 020)</u>
Fees: $1,336,502.50; Total Hours: 1,025.80

- Drafted and filed *Debtors' Motion for an Order (I) Extending the Deadline by which the Debtors May Remove Civil Actions and (II) Granting Related Relief* (Docket No. 660);

- Reviewed and analyzed contracts with Priority Power Management, Inc. ("**PPM**");

- Conducted legal research and analysis relating to potential claims by and against PPM, and liens held by PPM, and prepared materials for the Debtors relating thereto;

- Drafted litigation pleadings related to PPM and potential claims against PPM;

- Discussed, internally and with the Debtors strategy relating to PPM and potential global settlement with PPM;

- Reviewed and revised term sheets documenting PPM Settlement, including amendments to the Debtors' contracts with PPM, and negotiated same with counsel to PPM;

- Drafted materials for board of directors relating to PPM Settlement;

- Drafted and filed *Debtors' Emergency Motion for Order Approving (I) Global Settlement Between Debtors and Priority Power Management, LLC, (II) Assumption of the EMCSA, (III) Entry into the New Agreements and (IV) Granting Related Relief* (Docket No. 655)

15

(the "**PPM Settlement Motion**") and related motion to seal confirmation information relating to the PPM Settlement;

- Prepared for and attended hearing on PPM Settlement Motion;

- Strategized and analyzed issues relating to Sphere 3D, reviewed background materials regarding same, conducted research regarding same, and corresponded internally and with Sphere 3D counsel regarding same;

- Drafted and filed *Debtors' Motion to Quash Sphere 3D's Bankruptcy Rule 2004 Requests for Production of Documents* (Docket No. 711) and *Reply in Further Support of Debtors' Motion to Quash Sphere 3D's Bankruptcy Rule 2004 Requests for Production of Documents* (Docket No. 739);

- Researched various topics and reviewed various documents related to non-bankruptcy litigation; and

- Corresponded with Weil practice groups, the Debtors, and Debtors' other advisors regarding various non-bankruptcy litigation.

o.   <u>Retention / Fee Applications: Non-Weil Professionals (Task Code 024)</u>
     Fees: $122,700.50; Total Hours: 138.50

- Negotiated and participated on numerous calls with the U.S. Trustee and other advisors regarding retention applications;

- Drafted, revised, and filed various applications to employ the Debtors' various professionals, including PJT Partners LP, AlixPartners, LLP, Deloitte Tax LLP, and Deloitte Financial Advisory Services LLP (Docket Nos. 283, 285, 530, and 531);

- Filed and obtained Court approval of *Motion of Debtors to Establish Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* (Docket No. 302);

- Coordinated with the Debtors' other advisors regarding the chapter 11 process, including providing advice with respect to preparing, reviewing, and revising retention application and related declarations, notices, and orders for such applications; and

- Corresponded internally, with Debtors' other advisors and professionals, and U.S. Trustee regarding retention matters.

p.      <u>Retention / Fee Applications: Weil (Task Code 025)</u>
        Fees:  $160,519.00; Total Hours:  179.20

- Drafted, filed and obtained Court approval of the *Application of Debtors for Authority to Retain and Employ Weil, Gotshal & Manges LLP as Attorneys for Debtors Effective as of Petition Date* (Docket No. 286);

- Drafted and filed *First Supplemental Declaration of Ray C. Schrock in Support of Application of Debtors for Authority to Retain and Employ Weil, Gotshal & Mages LLP as Attorneys for Debtors Effective as of Petition Date* (Docket No. 709);

- Reviewed time records and disbursements for compliance with U.S. Trustee Guidelines; and

- Drafted and reviewed Weil monthly fee statements.

q.      <u>Secured Noteholder Issues / Meetings / Communications (Task Code 026)</u>
        Fees:  $141,312.00; Total Hours:  142.00

- Researched, analyzed and advised the Debtors on various issues related to convertible notes;

- Communicated with advisors to convertible noteholders concerning various issues in Debtors' chapter 11 cases; and

- Corresponded internally with Weil practice groups, the Debtors' other advisors, and third parties' counsel regarding secured noteholder issues.

r.      <u>Tax Matters (Task Code 027)</u>
        Fees:  $214,568.50; Total Hours:  147.60

- Reviewed and analyzed various tax matters, including tax issues relating to DIP financing and convertible notes;

- Addressed tax authority inquiries; and

- Corresponded with Weil practice groups, the Debtors, and the Debtors' professionals regarding various tax issues.

s.      <u>Unsecured Creditors Committee / Meetings / Communications (Task Code 028)</u>
        Fees:  $143,707.50; Total Hours:  123.10

- Attended regular meetings and calls with the Creditors' Committee;

- Communicated with counsel to Creditors' Committee in connection with the Creditors' Committee's diligence and other requests; and

17

- Conducted extensive document review and document production in response to the Creditors' Committee diligence and discovery requests.

t.   US Trustee / MORs / Schedules & SOFAs / 2015.3 Reports (Task Code 029)
     Fees:  $217,520.00; Total Hours:  208.00

- Participated on teleconferences with the U.S. Trustee regarding monthly operating reports, Section 341 Meeting, and other issues;

- Prepared for and attended Section 341 Meetings;

- Prepare for and attended initial debtor interview;

- Reviewed and filed the Schedules and SOFAs for each of the eleven (11) Debtors, including amendments to certain Schedules and SOFAs (Docket Nos. 461-82; 490-91; 625-30);

- Prepared and reviewed responses to various U.S. Trustee information requests and comments; and

- Assisted the Debtors and their professionals with preparation of and filed the Debtors' monthly operating reports.

u.   Utility Matters / Adequate Assurance (Task Code 030)
     Fees:  $59,282.00; Total Hours:  53.60

- Filed and obtained order regarding *Emergency Motion of Debtors for Entry of an Order (I) Approving Debtors' Proposed Form of Adequate Assurance of Payment to Utility Companies; (II) Establishing Procedures for Resolving Objections by Utility Companies; (III) Prohibiting Utility Companies from Altering, Refusing, or Discontinuing Service; and (IV) Granting Related Relief* (Docket No. 8);

- Negotiated with Debtors' utility providers regarding requests for additional adequate assurance and other issues; and

- Corresponded with the Debtors, the Debtors' other advisors, and utilities regarding utility matters.

v.   Equity Committee / Meetings / Communications (Task Code 031)
     Fees: $353,849.00; Total Hours:  292.40

- Drafted and filed *Debtors' Response to Motion for Appointment of an Official Committee of Equity Security Holders* (Docket No. 570) (the "**Equity Committee Objection**");

- Researched and analyzed topics related to appointment of the Equity Committee;

- Coordinated document production related to Equity Committee Objection;

- Negotiated consensual resolution regarding appointment of Equity Committee;

- Prepared for hearing on appointment of Equity Committee; and

- Corresponded with Weil practice groups, the Debtors, and third parties regarding the Equity Committee.

24.  In connection with the foregoing, Weil prepared, on behalf of the Debtors, all necessary motions, applications, orders, notices, responses, and other papers in support of positions taken by the Debtors and in compliance with applicable law.

25.  The foregoing professional services were necessary and appropriate to the administration of the Debtors' chapter 11 cases.  The professional services performed by Weil were in the best interests of the Debtors and their stakeholders.  Compensation for such services is commensurate with the complexity, importance, and nature of the issues and tasks that were involved in these cases.  All of Weil's professional services were performed skillfully and efficiently.

26.  The professional services performed by Weil's partners, counsel, associates, and paraprofessionals were rendered by the Restructuring, Corporate, Litigation, and Tax, Benefits & Executive Compensation Departments, predominantly in the New York and Houston offices.  Weil has a preeminent Restructuring practice and enjoys a national reputation for its expertise in financial reorganizations and restructurings of distressed entities.

27.  The professional services performed by Weil on behalf of the Debtors during the Compensation Period required an aggregate expenditure of approximately 8,428.70 hours by Weil's partners, counsel, associates, paraprofessionals, and other non-legal staff.  Of the

19

aggregate time expended, approximately 2,688.50 recorded hours were expended by partners and counsel of Weil, approximately 5,217.90 recorded hours were expended by associates, and approximately 522.30 recorded hours were expended by paraprofessionals and other non-legal staff of Weil.  Of the one hundred eight (108) Weil attorneys who billed time, forty (40) billed fewer than 15 hours to this matter.  Of the twenty-six (26) Weil paraprofessionals and non-legal staff who billed time, nineteen (19) billed fewer than 15 hours to this matter.

28.    During the Compensation Period, Weil billed the Debtors for time expended by attorneys based on hourly rates ranging from $690.00 to $2,095.00 per hour for attorneys. Allowance of compensation in the amount requested would result in a blended hourly billing rate for Weil attorneys in this Application of approximately $1,232.84 based on 7,906.40 recorded hours for attorneys at Weil's billing rates in effect at the time of the performance of services.

**Actual and Necessary Disbursements of Weil**

29.    As set forth in **Exhibit E** attached hereto, Weil has disbursed $103,494.82 as expenses incurred in providing professional services during the Compensation Period.  These expenses are reasonable and necessary and were essential to the overall administration of these cases.

30.    Although Weil has not charged the Debtors for any overtime expenses, consistent with firm policy, attorneys and other employees of Weil who worked late into the evenings or on weekends were reimbursed for their reasonable meal costs and their cost for transportation home from Weil's offices.  Weil's regular practice is not to include components of those charges in overhead when establishing billing rates and to charge its clients for these and all other out-of-pocket disbursements incurred during the regular course of the rendition of services. The reimbursement amounts do not exceed those set forth in the Fee Guidelines or the Bankruptcy Local Rules.

31.     With respect to photocopying expenses, in compliance with the Fee Guidelines and Local Rule 2016-1, Weil charges all of its clients ($0.10) per black-and-white page; Weil charges ($0.50) per color page.  With respect to legal research, Weil does not charge more than the actual cost.  Each of these categories of expenses does not exceed the maximum rate set by the Fee Guidelines or the Bankruptcy Local Rules.  These charges are intended to cover Weil's direct operating costs, which costs are not incorporated into Weil's hourly billing rates.  Only clients who actually use services of the types set forth in **Exhibit E** are separately charged for such services.  The effect of including such expenses as part of the hourly billing rates would impose that cost upon clients that do not require extensive photocopying and other facilities and services. The amount of the standard photocopying charge is intended to allow Weil to cover the related expenses of its photocopying service.  A determination of the actual expenses per page for photocopying, however, is dependent on both the volume of copies and the total expenses attributable to photocopying on an annual basis.

32.     On certain occasions, overnight delivery of documents and other materials was required as a result of circumstances necessitating the use of such express services.  These disbursements are not included in Weil's overhead for the purpose of setting billing rates.

33.     Weil has made every effort to minimize its disbursements in these cases. The actual expenses incurred in providing professional services were those that were necessary, reasonable, and justified under the circumstances to serve the needs of the Debtors and their estates and creditors.

## Requested Compensation Should Be Allowed

34.     Section 331 of the Bankruptcy Code provides for interim compensation of professionals and incorporates the substantive standards of section 330 to govern the Court's award of such compensation.  Section 330(a)(1) of the Bankruptcy Code provides that a Court may award

a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual, necessary services rendered [and] reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1).

35.     The Court of Appeals has held that the six factors found in section 330(a)(3) of the Bankruptcy Code are to be considered when awarding compensation to professionals.  *See In re Crager*, 691 F.3d 671, 676 (5th Cir. 2012).  Specifically, under section 330 of the Bankruptcy Code, courts "shall consider the nature, the extent, and the value of such services, taking into account all relevant factors," including—

(A)     the time spent on such services;

(B)     the rates charged for such services;

(C)     whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D)     whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E)     with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F)     whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

36.     In the instant case, Weil submits that the services for which it seeks compensation and the expenditures for which it seeks reimbursement in this Application were necessary for and beneficial to the preservation and maximization of value for all stakeholders and to the orderly administration of the Debtors' estates.  The compensation requested herein is

reasonable in light of the nature, extent, and value of such services to the Debtors, their estates, and all parties in interest.

37.     Compensation for the foregoing services as requested is commensurate with the complexity, importance, and nature of the issues and tasks involved.  Not only were Weil's professional services performed skillfully and efficiently, but whenever possible, Weil sought to minimize the cost of its services to the Debtors by utilizing talented junior attorneys and paraprofessionals to handle the more routine aspects of case administration.  In addition, groups of the same Weil attorneys were utilized for similar tasks in these cases to minimize the costs of intra-Weil communication and education about the Debtors' circumstances.  As described above, the complexity of these cases required the use of specialists in tax, banking and finance, mergers and acquisitions, capital markets, litigation, employee benefits, and other areas to achieve the progress the Debtors have reached thus far in these chapter 11 cases.

38.     In sum, the services rendered by Weil were necessary and beneficial to the Debtors' estates and were consistently performed in a timely manner commensurate with the types of issues involved in these chapter 11 cases.  Accordingly, approval of the compensation for professional services and reimbursement of expenses sought in this Application is warranted.

### Notice

39.     Notice of this Application will be provided in accordance with the procedures set forth in the Interim Compensation Order.  The Debtors respectfully submit that no further notice is required.

[*Remainder of the Page Intentionally Left Blank*]

## Conclusion

40.     Weil respectfully requests that the Court award interim allowance of Weil's compensation for professional services rendered during the Compensation Period in the amount of $9,980,769.75, representing 100% of fees incurred during the Compensation Period, and reimbursement in the amount of $103,494.82, representing 100% of actual and necessary expenses incurred during the Compensation Period, and that such allowance be without prejudice to Weil's right to seek additional compensation for services performed and expenses incurred during the Compensation Period in the event such fees and expenses were not processed at the time of this Application and grant such other and further relief as is proper and just.

Dated: June 6, 2023
Houston, Texas

_/s/  Alfredo R. Pérez_
WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (15776275)
Clifford Carlson (24090024)
700 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile:  (713) 224-9511
Email: Alfredo.Perez@weil.com
           Clifford.Carlson@weil.com

– and –

WEIL, GOTSHAL & MANGES LLP
Ray C. Schrock (admitted *pro hac vice*)
Ronit J. Berkovich (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Email: Ray.Schrock@weil.com
           Ronit.Berkovich@weil.com

*Attorneys for Debtors
and Debtors in Possession*

**<u>Certificate of Service</u>**

I hereby certify that on June 6, 2023, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas and will be served as set forth in the Affidavit of Service to be filed by the Debtors' claims, noticing, and solicitation agent.

 /s/  Alfredo R. Pérez
Alfredo R. Pérez

**Exhibit A**

**Proposed Order**