IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| CORE SCIENTIFIC, INC., *et al.,* | § | Case No. 22-90341 (DRJ) |
| | § | |
| | § | (Jointly Administered) |
| Debtors.[1] | § | |
| | § | |

**DEBTORS' MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO
PROOF OF CLAIM NOS. 358 AND 359 FILED BY SPHERE 3D CORP.**

> **THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS MOTION WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING. REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

Core Scientific Operating Company f/k/a Core Scientific, Inc. ("**Core**")[2] and its debtor affiliates in the above-captioned chapter 11 cases, as debtors and debtors in possession

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions, VII, LLC (3198). The Debtors' corporate headquarters and service address is 210 Barton Springs Road, Suite 300, Austin, Texas 78704.

[2] As discussed in the First Day Declaration, Core Scientific, Inc. changed its name to Core Scientific Operating Company in January 2022. *See* First Day Decl. ¶ 31. Therefore, any claims against Core Scientific, Inc., are more properly claims against Core Scientific Operating Company.

(collectively, the "**Debtors**"), hereby move for summary judgment (the "**Motion**") with respect to certain purely legal issues identified in the Debtors' objection (the "**Objection**") to Proofs of Claim Nos. 358 and 359 (together, the "**Sphere Claim**") filed by Sphere 3D Corp. ("**Sphere**," and, together with Core, the "**Parties**") that bar the recovery of any amount in connection with the Sphere Claim, or, in the alternative, substantially limit the amounts that Sphere could potentially recover in connection with the Sphere Claim. A proposed order is attached hereto as **Exhibit A**.

## Preliminary Statement

1. Sphere filed proofs of claim against the Debtors seeking over $39 million in alleged damages related to the Gryphon Hosting Agreements[3] that Core entered into with an entirely different party, Gryphon Digital Mining, Inc. Sphere, however, has no rights under the Gryphon Hosting Agreements because it is neither a party to those Agreements nor is it an intended third-party beneficiary. The Court should therefore grant summary judgment on this claim-dispositive issue. Alternatively, and only if the Court does not dismiss the Sphere Claim in its entirety, the Court should rule that the unambiguous limitations of liability provisions set forth in the MSA (1) limit Core's total liability to one-months fee (here, $84,658.94), and separately also (2) prevent Sphere from recovering for any lost profits; loss of business; loss of revenues; loss, interruption or use of data or loss of use of equipment; any consequential, or indirect damages; or cost of cover, incidental, special, reliance or punitive damages.).

---

[3] Capitalized terms not defined herein have the meaning ascribed to them in the Objection.

**Relevant Facts**

  A.  **The Gryphon Hosting Agreements**

  2.  Effective as of September 12, 2021, Gryphon and Core entered into a Master Services Agreement ("**MSA**") through which Core would host Gryphon's digital-asset mining machines (the "**Miners**"). Sphere is not a party to the MSA. A true and correct copy of the MSA is attached to the accompanying Declaration of Russell Cann (the "***Cann Decl.***") as **Exhibit A**.

  3.  Pursuant to the MSA, Gryphon entered into two separate orders that the MSA would govern. The first order was Master Service Agreement Order #1 ("**Order #1**"), entered into on or about September 12, 2021. A true and correct copy of Order #1 is part of **Exhibit A** to the *Cann Decl*. Pursuant to Order #1, Gryphon (not Sphere) was to deliver Miners to Core. Sphere does not appear to assert any claims under Order #1.

  4.  The second order was Master Service Agreement Order #2 ("**Order #2**"), signed by Gryphon and Core on October 5, 2021. Order #2 sets out the specific terms under which Gryphon (not Sphere) was to deliver and Core was to host a total of 70,000 Miners, in addition to the Miners hosted under Order #1. A true and correct copy of Order #2 is attached as **Exhibit B** to the *Cann Decl*. The MSA, Order #1, and Order #2 are referred to collectively as the "**Gryphon Hosting Agreements**" or the "**Agreements**." Sphere is not a party to either Order #1 or Order #2.

  5.  The Gryphon Hosting Agreements are governed by Delaware law. *Cann Decl.*, Exhibit A, MSA § 8.f. They contain several unambiguous provisions relevant to this Motion that confirm Sphere has no rights under the Gryphon Hosting Agreements, and otherwise limit Core's potential liability in both amount and type of damages.

6. **First**, the MSA makes clear that Gryphon "may not assign, delegate or transfer this Agreement or any of its rights and obligations hereunder without the prior written consent of [Core]. Any assignment or transfer in violation of this Agreement is void. This Agreement will be binding upon and inure to the benefit of all permitted successors and assigns. Nothing in this Agreement is intended to or will confer upon any third party any right, benefit or remedy of any nature whatsoever under or by reason of this Agreement." *See Cann Decl.*, Exhibit A, MSA § 8.d.

7. **Second**, Order #2 provides:

> **Amendment to Section 8.d of the Agreement.** Both [Core] and [Gryphon] agree that Section 8.d (Assignment and Subcontracting) of the Agreement is amended so that Client is permitted to sub-lease, sub-license, assign, delegate or transfer the Agreement, Order 1 and Order 2, or any of its rights and obligations hereunder to Sphere 3D Corp. and thereunder without the prior written consent of [Core] ***as long as Sphere 3D Corp. satisfies [Core's] requirements prior to***.

*Cann Decl.*, Exhibit B, Order #2 (emphasis added).

8. **Third**, the MSA limits the amount of Core's total liability:

> NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS AGREEMENT, ***COMPANY'S TOTAL LIABILITY TO CLIENT IN THE AGGREGATE FOR THE ENTIRE TERM (REGARDLESS OF WHETHER THE CLAIMS ARE BROUGHT DURING OR AFTER THE TERM)*** WITH RESPECT TO ALL CLAIMS ARISING FROM OR RELATED TO THE SUBJECT MATTER OF THIS AGREEMENT (INCLUDING, WITHOUT LIMITATION, ATTORNEYS' FEES) ***WILL NOT EXCEED AN AMOUNT EQUAL TO ONE (1) MONTHS FEE PAYABLE TO COMPANY PURSUANT TO THE APPLICABLE ORDER.***

*See Cann Decl.*, Exhibit A, MSA § 5.d (emphasis added).

9. **Fourth**, the MSA limits the type of damages that give rise to liability:

> NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS AGREEMENT, IN NO EVENT WILL EITHER PARTY BE LIABLE TO THE OTHER PARTY FOR ***(I) LOST PROFITS; (II) LOSS OF BUSINESS; (III) LOSS OF REVENUES*** (EXCEPT THAT CLIENT SHALL BE LIABLE FOR ANY FEES OR OTHER AMOUNTS OWED TO COMPANY UNDER THIS AGREEMENT); (IV) LOSS, INTERRUPTION OR USE OF DATA OR LOSS OF USE OF CLIENT EQUIPMENT; **(V) ANY**

***CONSEQUENTIAL OR INDIRECT DAMAGES; OR (VI) COST OF COVER, ANY INCIDENTAL, SPECIAL, RELIANCE, EXEMPLARY OR PUNITIVE DAMAGES*** (IF APPLICABLE), EVEN IF ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

*See Id.* § 5.c (emphasis added).

10. Additionally, the MSA is clear that, "THE LIMITATIONS SET FORTH IN SECTIONS 5 c AND 5 d WILL APPLY TO ALL CLAIMS AND CAUSES OF ACTION, REGARDLESS OF WHETHER IN CONTRACT, TORT, STRICT LIABILITY OR OTHER THEORY." *See Id.* § 5.e.

11. And to avoid any confusion regarding the materiality of the limitations provisions, the MSA goes on to say: "Each party recognizes and agrees that the warranty disclaimers, limitations of liability and remedy limitations in this Agreement are materially bargained for by the parties." *See Id.* § 5.f.

### B.     The Merger And Sub-License Agreements

12. On June 3, 2021, Gryphon and Sphere entered into a Merger Agreement, pursuant to which Gryphon was to merge with a subsidiary of Sphere created for the merger, with Gryphon as the surviving corporation. Core was not a party to the Merger Agreement. On October 5, 2021, Gryphon entered into a Sub-License Agreement with Sphere in connection with the contemplated merger. Core was not a party to the Sub-License Agreement. Sphere and Gryphon never consummated the merger. At no time prior to the Sub-License Agreement, or otherwise, has Sphere satisfied Core's requirements to permit Gryphon to sub-lease, sub-license, assign, delegate or transfer the Agreement, Order #1 or Order #2, or any of its rights and obligations thereunder to Sphere. *See Cann Decl.* ¶ 8.

5

### C. The Sphere Claim

13. On April 13, 2023, Sphere filed the Sphere Claim, which breaks down to two identical claims for $39,541,996.30 plus additional unliquidated amounts against Core Scientific, Inc. and Core Scientific Operating Company. *See* Proofs of Claim Nos. 358, 359. Proofs of Claim Nos. 358 and 359 are attached hereto as **Exhibits B and C**, respectively.[4] The Debtors' Objection to the Sphere Claim is attached hereto as **Exhibit D**.[5]

14. Sphere provided an addendum to its claim (the "**Sphere Addendum**"), dividing its claim for damages into four categories:

| | |
|---|---|
| Claim for Hosting Deposits | $34,383,713.00 |
| Claim for Alternative Hosting Costs | $5,000,724.06 |
| Claim for Storage Fees | $157,559.24 |
| Losses and damages arising from Core's failure to satisfy its obligations including, but not limited to, consequential, expectation, and reliance damages. | Unliquidated |

*See* attached **Exhibit B**, Sphere Claim.

## Legal Standard

### D. Summary Judgment In A Contested Matter

15. Once a debtor objects to a proof of claim, the validity of the claim becomes a "contested matter." *In re Gilbreath,* 395 B.R. 356, 365 (Bankr. S.D. Tex. 2008). A party to a contested matter can move for summary judgment. Fed. R. Bankr. P. 9014(c) (stating that Federal

---

[4] Because Proofs of Claim Nos. 358 and 359 are identical in all material respects, for ease of reference the citations set forth herein are uniformly to Proof of Claim No. 358 (Exhibit B hereto).

[5] For the avoidance of doubt, the Debtors object to the Sphere Claim in its entirety, on the merits, and reserve all of their rights in connection therewith.

Rule of Bankruptcy Procedure 7056, which incorporates Federal Rule of Civil Procedure 56, applies to contested matters); *see In re Alta Mesa Res., Inc.*, No. 19-35133, 2022 WL 17984306, at *2 (Bankr. S.D. Tex. Dec. 28, 2022) (applying Federal Rules of Bankruptcy Procedure 9014 and 7056 to grant summary judgment on a proof of claim); *Cimerring v. ORIX Cap. Mkts., LLC (In re Canoco Inc.)*, 323 F. App'x 306, 308 (5th Cir. 2009) (holding that "[b]ankruptcy courts can render summary judgment in contested matters.").

16. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). The movant must demonstrate the absence of a genuine dispute of material fact by establishing the absence of evidence supporting an essential element of the non-movant's case. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009), *aff'd*, 563 U.S. 277 (2011). To avoid summary judgment, an opposing party must identify a genuine dispute of material fact—one that could allow a reasonable fact finder to find for the nonmoving party. *See, e.g., Gorman v. Verizon Wireless Tex., L.L.C.*, 753 F.3d 165, 170 (5th Cir. 2014); *Hartman v. Ultra Petroleum Corp. (In re Ultra Petroleum Corp.)*, 571 B.R. 755, 761 (Bankr. S.D. Tex. 2017). Although a court views the facts and evidence in the light most favorable to the non-moving party, "[s]ummary judgment may not be thwarted by conclusory allegations, unsupported assertions, or presentation of only a scintilla of evidence." *Hemphill v. State Farm Mut. Auto. Ins. Co.*, 805 F.3d 535, 538 (5th Cir. 2015).

17. As set forth in Bankruptcy Rule 3001(f), a properly executed and filed proof of claim constitutes prima facie evidence of the validity and the amount of the claim under section 502(a) of the Bankruptcy Code. *See, e.g.*, *In re Jack Kline Co.*, 440 B.R. 712, 742 (Bankr. S.D. Tex. 2010). However, prima facie validity under Bankruptcy Rule 3001(f) "can be overcome by

rebuttal evidence . . . ." *California State Bd. of Equalization v. Off. Unsecured Creditors' Comm. (In re Fid. Holding Co.)*, 837 F.2d 696, 698 (5th Cir. 1988). "Upon production of this rebuttal evidence, the burden shifts to the claimant to prove its claim by a preponderance of the evidence." *In re Armstrong*, 347 B.R. 581, 583 (Bankr. N.D. Tex. 2006) (citing *In re Fid. Holding*, 837 F.2d at 698). And, "the ultimate burden of proof always lies with the claimant." *Id.* (citing *Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15 (2000)).

E. **Summary Judgment In A Contract Dispute**

18. Under Delaware law—which governs the MSA and likewise dictates Core and Sphere's relationship (or lack thereof) and any related damages—courts grants summary judgment to enforce unambiguous contracts. *See Rossi v. Ricks*, No. CIV. A. 1747-CC, 2008 WL 3021033, at *3 (Del. Ch. Aug. 1, 2008) (granting summary judgment on breach claim where counterclaimants unambiguously were not parties to the agreement); *Riverbend Cmty., LLC v. Green Stone Eng'g, LLC*, 55 A.3d 330, 334 (Del. 2012) ("We have long upheld awards of summary judgment in contract disputes where the language at issue is clear and unambiguous." (internal citation and quotation marks omitted)); *Comet Sys., Inc. S'holders' Agent v. MIVA, Inc.*, 980 A.2d 1024, 1030 (Del. Ch. 2008) ("Summary judgment is an appropriate process for the enforcement of unambiguous contracts because there is no material dispute of fact for the court to resolve.").

19. Summary judgment is appropriate "[w]here a contract term is objectively clear and there is only one 'reasonable interpretation[.]'" *Seidensticker v. Gasparilla Inn, Inc.*, No. Civ. A. 2555-CC, 2007 WL 4054473, at *3 (Del. Ch. Nov. 8, 2007); *see also Imo Indus. Inc. v. Siemens Demag Delaval Turbomachinery, Inc.*, No. CIV. A. 20142, 2005 WL 1138807, at *3– 4 (Del. Ch. May 4, 2005), *aff'd*, 888 A.2d 231 (Del. 2005) (granting summary judgment where only interpretation of express conditions of assignment clause rendered conditions applicable);

*eCommerce Indus., Inc. v. MWA Intel., Inc.*, No. 7471-VCP, 2013 WL 5621678, at *45 (Del. Ch. Sept. 30, 2013) (enforcing a limitation of liability provision and holding that contracts are to be enforced as written); *In re Pilgrim's Pride Corp.,* 467 B.R. 871, 881 (Bankr. N.D. Tex. 2012) (applying Delaware law and granting summary judgment to the debtors where the contracts excluded the asserted consequential and/or non-compensatory damages).

20. A court interpreting a contract must "give priority to the parties' intentions as reflected in the four corners of the agreement." *Bathla v. 913 Mkt., LLC*, 200 A.3d 754, 759-60 (Del. 2018) (internal quotations omitted). The Court must "interpret clear and unambiguous terms according to their ordinary meaning . . . ." *Id*. In an "unambiguous, integrated written contract," the Court may not use extrinsic evidence to "vary or contradict the terms of that contract." *Id*. (internal brackets and quotations omitted).

## Argument

### A. Sphere Has No Rights Under The Gryphon Hosting Agreements

21. Summary judgment is warranted here, where—as a matter of law—Sphere has no right to enforce the Gryphon Hosting Agreements. "As a general rule, only parties to a contract and intended third-party beneficiaries may enforce an agreement's provisions. Mere incidental beneficiaries have no legally enforceable rights under a contract." *E.I. du Pont de Nemours & Co. v. MacDermid Printing Sols. L.L.C.*, 248 F. Supp. 3d 570, 575 (D. Del. 2017) (quoting *NAMA Holdings, LLC v. Related World Mkt. Ctr., LLC*, 922 A.2d 417, 434 (Del. Ch. 2007)). Put another way: "a stranger to a contract acquires no rights thereunder unless it is the intention of the parties to confer a benefit upon such a third-party." *Guardian Constr. Co. v. Tetra Tech Richardson, Inc*., 583 A.2d 1378, 1386 (Del. Super. Ct. 1990). As set forth in more detail below, there is no genuine dispute that (1) *Gryphon* (not Sphere) is the contracting party to the

Gryphon Hosting Agreements, (2) Sphere it not an intended third-party beneficiary of the Agreements, and (3) no rights were ever transferred to Sphere under the clear terms of Order #2.

### i. Sphere Is A "Stranger" To The Agreements

22. There is no genuine dispute that Sphere is a "stranger" to the Agreements. The Agreements were entered into between only Core and Gryphon—not Sphere. Indeed, the Agreements make no reference to Sphere having any rights under the Agreements and they define and refer to Gryphon as "the Client." *See Cann Decl.*, Exhibit A, MSA at 1 (defining Gryphon as "Client"); *id.*, Order #1 at 13 (signature block identifying Gryphon as "Client"); *Cann Decl.*, Exhibit B, Order # 2 at 6 (signature block identifying Gryphon as "Client").

23. Sphere admits in the Sphere Claim that Gryphon executed the Agreements, but states that Gryphon entered in the Agreements "as manager" for Sphere. Exhibit B, Sphere Claim, Addendum ¶ 6. Significantly, however, it is undisputed that nothing in the Agreements support that Gryphon was acting for anyone other than itself. Moreover, even if Gryphon and Sphere had a side arrangement whereby Gryphon was acting "as manager" for Sphere, any such behind-the-scenes deal cannot, as a matter of law, give Sphere any rights under the Agreements. *E.I. du Pont de Nemours*, 248 F. Supp. 3d at 575 (quoting *NAMA Holdings*, 922 A.2d at 434 ("Mere incidental beneficiaries have no legally enforceable rights under a contract.")).

### ii. Sphere Is Not An Intended Third-Party Beneficiary Of The Agreements

24. There is also no genuine dispute that Sphere is not an intended third-party beneficiary of the Agreements. The MSA provides that "Client may not assign, delegate or transfer this Agreement or any of its rights and obligations hereunder without the prior written consent of Company. Any assignment or transfer in violation of this Agreement is void." *Cann Decl.*, Exhibit A, MSA § 8.d. The MSA further states that "[n]othing in this Agreement is intended to or will

confer upon any third party any right, benefit or remedy of any nature whatsoever under or by reason of this Agreement." *Id*.; *see also id.* § 8.g ("There are no third-party beneficiaries to this Agreement."). This sets forth an unambiguous baseline expectation between Core and Gryphon that the Agreement was between *only* Core and Gryphon, and prohibited assignment to any third party (like Sphere).

25. Order #2 modified this baseline expectation, amending the MSA "so <u>that Client</u> [Gryphon] is permitted to sub-lease, sub-license, assign, delegate or transfer the Agreement, Order 1 and Order 2, or any of its rights and obligations hereunder to Sphere 3D Corp. and thereunder without the prior written consent of Company **<u>as long as Sphere 3D Corp. satisfies Company requirements prior to</u>**" (the "**Amendment**"). *Cann Decl.*, Exhibit B, Order #2 at 4 (emphasis added). This provision makes plain that Sphere did not have any rights under the Gryphon Hosting Agreements and that some event would have to take place, <u>i.e.</u>, Sphere satisfying Core's requirements, before Sphere could obtain any rights under the Gryphon Hosting Agreements. Such requirements would include, among other things: creditworthiness, Foreign Corrupt Practice Act considerations; Know Your Customer considerations (*e.g.*, business with Chinese entities/Chinese government); form of assignment (*e.g.*, how and which rights and obligations were to be transferred, allocated or retained); whether any such assignment would implicate securities laws or constitute an investment contract; and whether any assignment would impact Core's own rights and obligations under the Gryphon Hosting Agreements. *See Cann Decl.* ¶ 8. Given the unambiguous language of the provision and the undisputed fact that Sphere at no time has satisfied Core's requirements to obtain any rights under the Gryphon Hosting Agreements, the Sphere Claim must be disallowed in its entirety.

26. First, as a threshold point, that the Amendment identifies Sphere as a separate entity—distinct from Gryphon—confirms that Sphere necessarily had no rights under the Gryphon Hosting Agreements when they were executed. This is fatal to any argument that Sphere had rights under the MSA from the start, and is also fatal to the claim that Gryphon was merely "acting as a manager" for Sphere in executing the Agreements. If Sphere were correct, which it is not, the Amendment would not have identified Sphere as a distinct entity to whom Gryphon could, *subject to the satisfaction of certain requirements*, assign the Gryphon Hosting Agreements.

27. Second, the Amendment plainly does not *automatically* give Sphere any rights under the Gryphon Hosting Agreements. Instead, it *permits* Gryphon to assign certain of its rights to Sphere, but—in order for Gryphon to do so—Sphere is *required* to satisfy Core's requirements in advance. It is undisputed that Sphere did not do so here; therefore, any purported assignment that Sphere and Gryphon may have sought to effectuate is void as a matter of law

\*   \*   \*   \*   \*

28. For the foregoing reasons, the Court should rule, as a matter of law, that Sphere has no rights under the Gryphon Hosting Agreements. The Debtors are therefore entitled to summary judgment on their Objection and the Sphere Claim should be disallowed in its entirety. If, and only if, the Court does not rule that the Sphere Claim should be disallowed in its entirety—which Core submits that it should so rule—then Core is entitled, in the alternative, to partial summary judgment on the Sphere Claim for the reasons set forth below.

**B.     The MSA Limits Core's Total Liability Under The Gryphon Hosting Agreements To One-Months Fee**

29. Partial summary judgment is warranted here because two unambiguous contract provisions each limit Core's potential liability to Sphere. As detailed above, Sphere asserted a claim for over $39 million. The MSA, however, limits Core's "total liability . . . in the

aggregate" to "an amount equal to one (1) months fee payable to [Core] pursuant to the applicable order." *See Cann Decl.*, Exhibit A, MSA § 5.d.  This one-months fee is a clear and unambiguous limitation on Core's liability that applies to limit, as a matter of law, the Sphere Claim.  In the event that the Court rejects Core's argument that Sphere has no right to enforce the Gryphon Hosting Agreements, the Court should rule that, based on the limitation of damages provision set forth in the MSA, Sphere cannot—as a matter of law—recover from the Debtors more than one-months fee payable to Core pursuant to the applicable Orders.

30. Section 3.a of the MSA states that Core "will invoice [Gryphon] monthly in advance for all applicable fees for use of [Core's] Facility and provision of Services as set forth in the applicable Order."  *See Cann Decl.*, Exhibit A, MSA § 3.a.  Thus, the *amount* of the one-months fee is determined based on the monthly invoice for the applicable Orders.  Here, the last monthly invoice that Core sent *to Gryphon* was in the amount of $84,658.94.  *See Cann Decl.*, Exhibit C.  Under the plain terms of the MSA, Sphere's total recovery could not ever exceed this amount.  The one-month limitation of liability provision therefore reduces Sphere's claim from over $39 million to *at most* $84,658.94.  The Court should therefore also rule that Sphere cannot—as a matter of law—recover more than $84,658.94 in total from the Debtors in connection with the Sphere Claim.

31. In any event, even if there were to be a dispute regarding the precise amount of the one-months fee, that would not preclude the Court from ruling, as a matter of law, that the limitation of liability provision limits Sphere to recovering no more than one-months fee.

### C. The MSA Limits The Type Of Damages That Sphere Can Recover

32. The MSA also limits the *type* of damages that can be recovered against Core, providing that "in no event will either party be liable to the other party for (i) lost profits;

13

(ii) loss of business; (iii) loss of revenues . . . ; (iv) loss, interruption or use of data or loss of use of [Sphere] equipment; (v) any consequential or indirect damages; or (vi) cost of cover, any incidental, special, reliance, exemplary or punitive damages . . . ." *See Cann Decl.*, Exhibit A, MSA § 5.c. This provision is likewise a clear and unambiguous limitation on Core's liability. The Court should therefore rule that, based on the limitation set forth in the contract, Sphere cannot—as a matter of law—recover for lost profits; loss of business; loss of revenues; loss, interruption or use of data or loss of use of equipment; any consequential, or indirect damages; or cost of cover, incidental, special, reliance exemplary or punitive damages.

33. In effect, this means that when assessing what portion of the one-months fee Sphere may recover (if any), the asserted damages must be the type of damages that are not precluded under the MSA. Moreover, regardless of how the Court may rule on the one-months fee limitation, Core is entitled to a finding, as a matter of law, that Sphere would not be entitled to recover any of the types of damages set forth in section 5.c of the MSA—assuming Sphere even has rights under the Agreements and that it could ever establish that it was entitled to any recovery at all.

## Conclusion

The Debtors respectfully request that the Court grant the Motion and enter summary judgment disallowing the Sphere Claim in its entirety. In the alternative, the Debtors respectfully request that the Court enter partial summary judgment against Sphere as relates to the contractual limitations of liability provisions. Debtors further request all other just relief to which they may be entitled.

[*Remainder of page intentionally left blank*]

Dated: June 9, 2023
Houston, Texas

          /s/ *Alfredo R. Pérez*
WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (15776275)
Clifford W. Carlson
700 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone:     (713) 546-5000
Facsimile:      (713) 224-9511
Email:  Alfredo.Perez @weil.com
       Clifford.Carlson@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Ray C. Schrock (admitted *pro hac vice*)
Ronit J. Berkovich (admitted *pro hac vice*)
Theodore E. Tsekerides (admitted *pro hac vice*)
Christine A. Calabrese (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone:     (212) 310-8000
Facsimile:      (212) 310-8007
Email:  Ray.Schrock@weil.com
       Ronit.Berkovich@weil.com
       Theodore.Tsekerides@weil.com
       Christine.Calabrese@weil.com

*Counsel for Debtors and Debtors in Possession*

**Certificate of Service**

I hereby certify that on June 9, 2023, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                                           */s/ Alfredo R. Pérez*
                                                         Alfredo R. Pérez