## Exhibit B

**Bros Declaration**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | § § | Chapter 11 |
| CORE SCIENTIFIC, INC., *et al.*, | § § § | Case No. 22-90341 (DRJ) |
|  | § § | (Jointly Administered) |
| Debtors.[1] | § |  |

### DECLARATION OF MICHAEL BROS IN SUPPORT OF MOTION OF DEBTORS FOR AUTHORITY TO (I) AMEND AND RESTATE EQUIPMENT LEASE AGREEMENTS AND (II) ASSUME EQUIPMENT LEASE AGREEMENTS AS AMENDED AND RESTATED

I, Michael Bros, pursuant to section 1746 of title 28 of the United States Code, hereby declare under penalty of perjury that the following is true to the best of my knowledge, information, and belief:

1. I am the Senior Vice President of Capital Markets & Acquisitions at Core Scientific, Inc. ("**Core**", and together with its subsidiaries and affiliates, the "**Company**"). I have served in this capacity since January 2022. Before that, starting in December 2018, I was the Debtors' Vice President of Corporate Development. Prior to joining the Company, I held various positions at Kayne Anderson from 2014 to 2018 and Merrill Lynch from 2011 to 2014. I hold a Bachelor of Arts from the University of Saint Thomas and a Master of Business Administration from the University of California, Los Angeles Anderson School of Management.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions, VII, LLC (3198). The Debtors' corporate headquarters and service address is 210 Barton Springs Road, Suite 300, Austin, Texas 78704.

2.  I make this declaration (the "**Declaration**") in support of the *Motion of Debtors for Authority to (I) Amend and Restate Equipment Lease Agreements and (II) Assume Equipment Lease Agreements as Amended and Restated* (the "**Motion**")[2] filed contemporaneously with this Declaration. Except as otherwise indicated herein, all facts set forth in this Declaration are based on my experience and personal knowledge of the Debtors' operations and finances and information learned during the course of my employment. I have also reviewed relevant documents and have received information from conversations with the Debtors' management team, the Debtors' advisors, or employees of the Debtors working directly with me or under my supervision, direction, or control.

3.  I am familiar with ACM Lease Agreements and believe that assuming the ACM Lease Agreements, as amended by the Amended Schedule, is in the Debtors' best interest.

## ACM Lease Agreements

4.  Pursuant to the ACM Lease Agreements, ACM leases the ACM Miners to Core. The ACM Miners are an integral part of the Debtors' fleet of Miners and, as a result, their Self-Mining operation. Without the ACM Miners the Debtors would experience a decrease in the amount of digital currency assets mined, which would result in a reduction of revenue.

5.  The economics of mining digital currency have declined since the ACM Lease Agreements were entered into in December 2021. Thus the profitability of the ACM Miners has also decreased when accounting for the required payments due to ACM under the Schedules. In line with the Debtors' restructuring efforts and goals, the Debtors engaged in lengthy negotiations with ACM to amend certain terms of the ACM Lease Agreements. Conditioned on

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

the entry of the Order, the Debtors and ACM have agreed to the terms of the Amended Schedule. Among other things, the Amended Schedule lowers the monthly payments owed by Core under the ACM Lease Agreements, and increases the term of the ACM Lease Agreements enabling the Debtors to utilize the ACM Miners in their Self-Mining operation for an extended time-period. I believe this will result in increased profitability for the Debtors.

6. In addition to the terms of the Amended Schedules, as a condition to the entry to, and assumption of, the Amended Schedules, the Debtors and ACM acknowledge that the ACM Administrative Claim of $1,336,946.14 on account of lease payments the Debtors did not pay ACM in the 60-day period subsequent to the Petition Date. ACM and the Debtors agree that the ACM Administrative Claim shall be paid on the effective date of the Debtors' chapter 11 plan. I have reviewed the ACM Administrative Claim amount and agree it is accurate.

7. Further, ACM and the Debtors have agreed, that as a condition to the execution of the Amended Schedules and assumption of the amended ACM Lease Agreements, the Debtors shall pay the ACM Cure Costs in an amount of $1,336,946.14 in cure costs associated with unpaid prepetition rental payments. ACM and the Debtors agree that the ACM Cure Costs shall be paid on the effective date of the Debtors' chapter 11 plan. I have reviewed the ACM Cure Costs and agree it is accurate.

8. Finally, to facilitate the negotiations between the Debtors and ACM, the Debtors have agreed to pay the reasonable and documented ACM Professional Fees associated with the negotiation and documentation of the Amended Schedules, up to the Professional Fee Cap of $200,000. The agreement to pay the ACM Professional Fees was an important consideration for ACM to agree to amend the ACM Lease Agreements and the Professional Fee Cap ensures

that the amount of ACM Professional Fees paid by the Debtors will be reasonable and not an undue burden to the Debtors' Estates.

9. In light of the foregoing, I understand that the Debtors have determined to assume and implement the Amended Schedules. To do so, I further understand that the Bankruptcy Code requires the Debtors to satisfy certain assumption requirements, which I believe they have satisfied. Specifically, I understand that (i) the ACM Lease Agreements constitute an unexpired lease, as they have not expired and, after giving effect to the amendments contemplated herein, will not expire until November 2025, (ii) the Debtors have agreed to pay all ACM Cure Costs upon the effective date of the Debtors' chapter 11 plan and (iii) the Debtors are sufficiently capitalized and maintain sufficient liquidity to pay any of their obligations under the ACM Lease Agreements as they become due during the Debtors' chapter 11 cases, thus providing adequate assurance of future performance.

10. Further, I believe the ACM Miners leased under the ACM Lease Agreements are important to the Debtors' ability to operate their Self-Mining business optimally. As amended, the ACM Lease Agreements will allow the Debtors to maintain revenue generated from their Self Mining operations and reduce costs, which is consistent with the Debtors' reorganization efforts. If the Debtors were to lose access to the ACM Lease Agreements, I understand that they would mine fewer digital currency assets, resulting in reduced revenue. Accordingly, I believe the Debtors assumption of the ACM Lease Agreements reflects a proper exercise of the Debtors' business judgment and should be approved.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated:  June 30, 2023
       Bellevue, Washington

Respectfully submitted,

*/s/ Michael Bros*
Michael Bros
Senior Vice President of Capital Markets & Acquisitions