IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| CORE SCIENTIFIC, INC., *et al.*, | § § | Case No. 22-90341 (DRJ) |
| | § § | (Jointly Administered) |
| Debtors.[1] | § § § | |

**DEBTORS' MOTION FOR ORDER APPROVING
(I) GLOBAL SETTLEMENT BETWEEN DEBTORS
AND CONDAIR INC. AND (II) GRANTING RELATED RELIEF**

> **IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING.  UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE ELECTRONICALLY AT HTTPS://ECF.TXSB.USCOURTS.GOV/ WITHIN TWENTY-ONE DAYS FROM THE DATE THIS MOTION WAS FILED.  IF YOU DO NOT HAVE ELECTRONIC FILING PRIVILEGES, YOU MUST FILE A WRITTEN OBJECTION THAT IS ACTUALLY RECEIVED BY THE CLERK WITHIN TWENTY-ONE DAYS FROM THE DATE THIS MOTION WAS FILED. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

Core Scientific, Inc. ("**Core**") and its debtor affiliates in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"), hereby submit this motion (the "**Motion**"), pursuant to sections 105(a), 362(d) and 363 of chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), rule 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and rule 9013 of the Bankruptcy Local Rules for the United

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions, VII, LLC (3198).  The Debtors' corporate headquarters and service address is 210 Barton Springs Road, Suite 300, Austin, Texas 78704.

States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Local Rules**"), the Debtors request entry of an order, substantially in the form attached hereto as **Exhibit 1** (the "**Proposed Order**"), (i) authorizing the Debtors' entry into a global settlement between the Debtors and Condair Inc. ("**Condair**" and together with the Debtors, collectively, the "**Parties**" and, each, a "**Party**"), on the terms set forth and agreed to by the Parties on the *Settlement Term Sheet* (the "**Term Sheet**") attached hereto as **Exhibit 2**; (ii) approving the settlement on the terms set forth in the Term Sheet; and (iii) granting related relief.

## Jurisdiction

1.  This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

2.  On December 21, 2022 (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary case under the Bankruptcy Code.  The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

I.   **The Parties' Business Relationship**

3.  The Debtors are one of the largest blockchain infrastructure, hosting provider, and digital asset mining companies in North America, with fully operational data centers in Texas, Kentucky, North Carolina, North Dakota, and Georgia.  The Debtors provide hosting solutions for third parties and also operate their own digital asset mining machines.

4.  Condair is one of the leading manufacturers of commercial and industrial humidification systems.  Condair provides a range of humidification and evaporative cooling

products to suit data centers. Due to the nature of these products, each is custom manufactured to meet the specifications of the data center in which it will be used.

5. The Debtors operate two data-center facilities in West Texas, one near Pecos, Texas (the "**Cottonwood Facility**") and one near Barstow, Texas (the "**Cedarvale Facility**" and, together with the Cottonwood Facility, collectively, the "**Facilities**" and, each, a "**Facility**"). Prior to the Petition Date, in January 2022, the Debtors entered into a series of purchase orders with Condair to purchase six humidification and evaporative cooling products (the "**Wet Walls**") to install in its Facilities (the "**Condair Contracts**").

6. Under the Condair Contracts, Condair manufactured four (4) Wet Walls for use in Core's Facilities. The Wet Walls were manufactured pursuant to the Condair Contracts for use in the Facilities, according to the unique specifications of the Debtors' buildings. In July 2022, Condair delivered two of those Wet Walls to Core's Facilities. Two additional Wet Walls remain in Condair's possession.

7. Prior to Condair's delivery to the Debtors of the remaining Wet Walls to be provided under the Condair Contracts, the Debtors decided to use a different method for cooling its Facilities. As such, the Debtors sought to terminate the Condair Contracts for the additional Wet Walls that were not yet manufactured, or that Core had not received at its Facilities.

8. In connection with the Condair Contracts, Condair has (i) asserted prepetition and postpetition claims (such claims, the "**Condair Claims**") against the Debtors, including, without limitation that certain Proof of Claim No. 430 in the total asserted amount of $11,784,176.80; and (ii) filed liens (such liens, the "**Condair Liens**") against the Facilities, including without limitation the mechanics' liens evidenced by, among other things, that certain *Notice of Perfection of Mechanic's Lien (Cottonwood Project)* (Docket No. 197) and that certain *Notice of Perfection of Mechanic's Lien (Cedarvale Project)* (Docket No. 198).

**II.     The Condair Settlement**

9. After engaging in extensive good faith negotiations, the Debtors and Condair have reached a global settlement (the "**Condair Settlement**"), memorialized in the binding Term Sheet, dated June 28, 2023, subject to this Court's approval, and set forth in the Proposed Order, resolving all issues and amounts owed between the Debtors and Condair. For the avoidance of doubt, pursuant to the Condair Settlement, Condair agrees to release any and all liens and Claims (as defined in the Bankruptcy Code) against the Debtors, including, without limitation, for any and all obligations, liabilities, duties and damages of the Debtors, whether or not expressly memorialized in the Condair Settlement.

10. The principal terms of the Condair Settlement are as follows:

- Within five (5) calendar days after entry of the Proposed Order, Debtors shall make a payment to Condair in the amount of $2,400,000 (the "**Settlement Payment**").

- Upon Condair's receipt of the Settlement Payment in immediately available funds:

    o  the Condair Claims shall be fully and finally paid, satisfied, released and expunged;

    o  the Condair Liens shall be fully and finally released, extinguished and discharged;

    o  any and all contracts and outstanding purchase orders between Condair and the Debtors, including, without limitation, the Condair Contracts, are terminated, and Condair releases and shall not have any claims for rejection damages based on termination or otherwise; and

    o  the Parties each grant a complete and final release of all claims against each other and covenant not to sue, in each case, in favor of the other Party

- Upon entry of the Proposed Order, the Debtors shall have no further interest, if any, in the goods described in Annex A to the Proposed Order.

**Relief Requested Should Be Granted**

I. **The Condair Settlement Is Fair, Reasonable, and in the Best Interest of the Debtors' Estates**

11.  Bankruptcy Rule 9019(a) provides that "[o]n motion by the [debtors in possession] and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). Further, pursuant to Bankruptcy Rule 9019(a), a bankruptcy court may approve a compromise or settlement so long as the proposed settlement is fair, reasonable, and in the best interests of the estate. *See Off. Comm. of Unsecured Creditors v. Moeller (In re Age Refin.,Inc.)*, 801 F.3d 530, 540 (5th Cir. 2015). Ultimately, approval of a compromise is within the discretion of the bankruptcy court. *See United States v. AWECO, Inc. (In re AWECO, Inc.)*, 725 F.2d 293, 297 (5th Cir. 1984); *Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 602 (5th Cir. 1980) (citations omitted) (decided under the Bankruptcy Act). Settlements are considered a "normal part of the process of reorganization" and a "desirable and wise method[] of bringing to a close proceedings otherwise lengthy, complicated, and costly." *Rivercity*, 624 F.2d at 602–03 (citing *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424–25 (1968)).

12.  The Fifth Circuit has established a three-factor balancing test under which bankruptcy courts analyze proposed settlements. *Id.* The factors courts consider are: "(1) the probability of success in litigating the claim subject to settlement, with due consideration for the uncertainty in fact and law; (2) the complexity and likely duration of litigation and any attendant expense, inconvenience, and delay; and (3) all other factors bearing on the wisdom of the compromise." *See Age Refin.*, 801 F.3d at 540 (internal citations omitted).

13.  Under the rubric of the third factor, the Fifth Circuit has specified two additional factors that bear on a decision to approve a proposed settlement. First, the Court should

5

consider "the paramount interest of creditors with proper deference to their reasonable views." *Id.*; *Conn. Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortg. Corp.)*, 68 F.3d 914, 917 (5th Cir. 1995). Second, the Court should consider the "extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion." *Age Refin.*, 801 F.3d at 540; *Foster Mortg.*, 68 F.3d at 918 (citations omitted).

14. Generally, the role of the bankruptcy court is not to decide the issues in dispute when evaluating a settlement. *Watts v. Williams*, 154 B.R. 56, 59 (S.D. Tex. 1993). Rather, the court should determine whether the settlement as a whole is fair and equitable. *Protective Comm. for Indep. S'holders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968).

15. The Debtors bear the burden of establishing that the balance of the above factors leads to a fair and equitable compromise vis-à-vis the Condair Settlement. *In re Allied Properties, LLC*, 2007 WL 1849017, at *4 (Bankr. S.D. Tex. June 25, 2007) (citing *In re Lawrence & Erausquin, Inc.*, 124 B.R. 37, 38 (Bankr. N.D. Ohio 1990)); *see also In re GHR Companies, Inc.*, 50 B.R. 925, 931 (Bankr. D. Mass. 1985). "The burden is not high;" rather, the Debtors "***need only show that [their] decision falls within the 'range of reasonable litigation alternatives.***'" *In re Allied Properties, LLC*, 2007 WL 1849017, at *4 (emphasis added) (citing *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983)); *see also Cook v. Waldron*, 2006 WL 1007489 at *4 (S.D. Tex. Apr. 18, 2006).

16. Here, weighing the foregoing factors demonstrates that the Condair Settlement is reasonable and supports finding that the Debtors' entry into the Condair Settlement is in the best interest of creditors and other stakeholders.

17. First, the likelihood of success of litigating against the Condair Claims is uncertain. What is not uncertain, however, is that the litigation would likely require the expenditure of significant funds and cause substantial, detrimental impact to the Debtors. Further,

if Condair were to succeed on its claim, the Debtors would be liable for a much larger sum than agreed upon in the Condair Settlement. Indeed, the Condair Settlement provides the Debtors with a discount of approximately 80% of the face amount of the asserted Condair Claims. Having the benefit of certainty and prior agreement between the Debtors and Condair, at an amount significantly lower than the asserted Condair Claims, maximizes value for the Debtors' estates and avoids what could otherwise be costly and distracting litigation that would harm the Debtors' estates.

18. Second, the Settlement Agreement is also the product of good-faith, arm's-length bargaining between the Debtors and Condair, each of which were represented by counsel, and no party has asserted that the Condair Settlement was the product of fraud or collusion.

19. Third, the Condair Settlement is reasonable and is in the best interests of the Debtors' estates. Pursuant to the Condair Settlement, the Debtors will reduce the claims pool by satisfying the Condair Claims (a large secured and unsecured claim against the Debtors' estates) at a substantial discount, with a limited cash Settlement Payment in the amount of only a portion of the Condair Claim. As a result, Condair will release the Condair Liens encumbering the Debtors' Facilities and release the Debtors from any and all future claims arising from the Debtors' rejection of the Condair Contracts.

20. Accordingly, the Debtors respectfully submit that the Court should approve Condair Settlement based upon the factors considered by courts in the Fifth Circuit.

## II. The Debtors' Entry into the HMC Settlement Is a Reasonable Exercise of Debtors' Sound Business Judgment

21. Section 363(b)(1) of the Bankruptcy Code authorizes a debtor in possession to "use, sell, or lease, other than in the ordinary course of business, property of the estate," after notice and a hearing. It is well-established in this jurisdiction that a debtor may use property of

the estate outside the ordinary course of business under this provision if there is a good business reason for doing so. *See, e.g.*, *ASARCO, Inc. v. Elliott Mgmt. (In re ASARCO, L.L.C.)*, 650 F.3d 593, 601 (5th Cir. 2011) ("[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors, and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business.") (quoting *In re Cont'l Air Lines, Inc.*, 780 F.3d 1223, 1226 (5th Cir. 1986)); *GBL Holding Co., Inc. v. Blackburn/Travis/Cole, Ltd. (In re State Park Bldg. Grp., Ltd.)*, 331 B.R. 251, 254 (Bankr. N.D. Tex. 2005); *In re Filene's Basement, LLC*, No. 11-13511 (KJC) (Bankr. D. Del. Apr. 29, 2014) (stating that, under the business judgment standard, once the debtor presents "a reasonable basis for is business decisions … courts will generally not entertain objections to the debtor's conduct").

22. Here, the Debtors' entry into the Condair Settlement represents a valid exercise of the Debtors' business judgment and should be approved. As a result of the Condair Settlement, the Debtors will reduce the claims pool by satisfying the Condair Claims, a large secured claim against the Debtors' estates, at a substantial discount, with a limited cash Settlement Payment. As a result, Condair will release the Condair Liens encumbering the Debtors' Facilities and release the Debtors from any and all future claims arising from the Debtors' rejection of the Condair Contracts.

### **Reservation of Rights**

23. Except as expressly provided for herein with respect to the Condair Claims, nothing contained in this Motion or any actions taken by the Debtors pursuant to the relief granted is intended or should be construed as: (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law, or (iii) an approval of an assumption of any lease, sublease, or contract pursuant to section 365 of the Bankruptcy Code.

**No Previous Request**

24.No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: July 14, 2023
     Houston, Texas

Respectfully submitted,

  /s/ *Alfredo R. Pérez*
WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (15776275)
Clifford W. Carlson (24090024)
700 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Email: Alfredo.Perez @weil.com
       Clifford.Carlson@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Ray C. Schrock (admitted *pro hac vice*)
Ronit J. Berkovich (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Email: Ray.Schrock@weil.com
       Ronit.Berkovich@weil.com

*Attorneys for Debtors
and Debtors in Possession*

**Certificate of Service**

I hereby certify that on July 14, 2023, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                                                  */s/ Alfredo R. Pérez*
                                                                  Alfredo R. Pérez