IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| CORE SCIENTIFIC, INC., *et al.*, | § | Case No. 22-90341 (DRJ) |
| | § | |
| | § | (Jointly Administered) |
| Debtors.[1] | § | |

**DEBTORS' MOTION FOR ORDER APPROVING
(I) GLOBAL SETTLEMENT BETWEEN DEBTORS
AND J.W. DIDADO ELECTRIC, LLC AND (II) GRANTING RELATED RELIEF**

> **IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE ELECTRONICALLY AT HTTPS://ECF.TXSB.USCOURTS.GOV/ WITHIN TWENTY-ONE DAYS FROM THE DATE THIS MOTION WAS FILED. IF YOU DO NOT HAVE ELECTRONIC FILING PRIVILEGES, YOU MUST FILE A WRITTEN OBJECTION THAT IS ACTUALLY RECEIVED BY THE CLERK WITHIN TWENTY-ONE DAYS FROM THE DATE THIS MOTION WAS FILED. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

Core Scientific, Inc. ("**Core**") and its debtor affiliates in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"), hereby submit this motion (the "**Motion**"), pursuant to sections 105(a), 362(d) and 363 of chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), rule 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and rule 9013 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Local Rules**"), the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions, VII, LLC (3198). The Debtors' corporate headquarters and service address is 210 Barton Springs Road, Suite 300, Austin, Texas 78704.

Debtors request entry of an order, substantially in the form attached hereto as **Exhibit 1** (the "**Proposed Order**"), (i) authorizing the Debtors entry into a global settlement between the Debtors and J.W. Didado Electric, LLC ("**Didado**" and together with the Debtors, collectively, the "**Parties**" and, each, a "**Party**"), on the terms set forth and agreed to by the Parties on the *Settlement Term Sheet* (the "**Term Sheet**") attached hereto as **Exhibit 2**; (ii) approving the settlement on the terms set forth in the Term Sheet; and (iii) granting related relief.

## Jurisdiction

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

2. On December 21, 2022 (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary case under the Bankruptcy Code. The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

**I.     The Parties' Business Relationship**

3. The Debtors are one of the largest blockchain infrastructure, hosting provider, and digital asset mining companies in North America, with fully operational data centers in Texas, Kentucky, North Carolina, North Dakota, and Georgia. The Debtors provide hosting solutions for third parties and also operate their own digital asset mining machines.

4. Didado is a full-service electrical contractor, providing high-performance solutions to residential, commercial, and industrial customers throughout the United States.

5. The Debtors began developing a data-center facility in Muskogee, Oklahoma (the "**Muskogee Facility**"). Prior to the Petition Date, on January 5, 2022, the Debtors

entered into a Standard Form of Agreement Between Owner and Design-Builder – Lump Sum, and a Subcontract Services Agreement with Didado (collectively, the "**Didado Contracts**") for Didado's provision of electrical contracting services to develop and construct the electrical infrastructure at the Muskogee Facility.

6. Under the Didado Contracts, Didado is the contractor developing and constructing the electrical infrastructure at the Muskogee Facility.

7. In connection with the Didado Contracts, Didado has (i) asserted prepetition and postpetition claims (such claims, the "**Didado Claims**") against the Debtors, including, without limitation those certain Proofs of Claims Nos. 263 and 310 in the total asserted amount of $26,049,229.00, and (ii) filed liens (such liens, the "**Didado Liens**") against certain of the Debtors' assets, including without limitation mechanics' liens against the Debtors' Muskogee Facility evidenced by, among other things, that certain Mechanic's or Materialman's Lien Statement, in the amount of $26,049,228, filed by J.W. Didado Electric, LLC, recorded on March 30, 2023, under Recording Number 2023-003097.

## II. The Didado Settlement

8. After engaging in good faith negotiations, the Debtors and Didado have reached a global settlement (the "**Didado Settlement**"), memorialized in the binding Term Sheet, dated July 14, 2023, subject to this Court's approval, with terms set forth in the Proposed Order, resolving all issues and amounts owed between the Debtors and Didado. For the avoidance of doubt, pursuant to the Didado Settlement, Didado agrees to release any and all liens and Claims (as defined in the Bankruptcy Code) against the Debtors, including, without limitation, for any and all obligations, liabilities, duties and damages of the Debtors, whether or not expressly memorialized in the Didado Settlement.

9. The principal terms of the Didado Settlement are as follows:

- Within five (5) calendar days after entry of the Proposed Order:

  - the Debtors shall deliver to Didado a duly executed promissory note (the "**Note**") in the principal amount of $13,000,000; and

  - Didado shall deliver to the Debtors final unconditional lien releases in form and substance reasonably acceptable to the Debtors for all work performed at the Muskogee Facility and all goods, labor, and materials supplied to, for or in connection with the Debtors or the Muskogee Facility, duly executed by Didado and in recordable form.

- Immediately upon delivery of the Note to Didado:

  - the Didado Claims shall be deemed finally and fully paid, satisfied, released and expunged;

  - the Didado Liens are to be fully and finally released, extinguished and discharged;

  - any and all contracts and outstanding purchase orders between Didado and the Debtors, are terminated, and Didado releases and shall not have any claims for rejection damages based on termination or otherwise; and

  - the Parties grant a complete and final release of all claims against each other, and covenant not to sue, in each case, in favor of the other Party.

- The Note shall bear interest at the rate of 5% per annum and have a term of 36 months. The Note shall be payable in equal monthly installments payable on the first of each month beginning on the first day of the calendar month. The first payment shall be made no earlier than ninety (90) days after court approval of the settlement..

- The Note shall be subject to mandatory prepayment in each of the following instances:

  - if the average daily hashprice is greater than 13c but less than 16c for 90 consecutive days ("**13c Hashprice Trigger**"), the Debtors will be required to make a one-time mandatory prepayment of 25% with the then outstanding principal balance of the Note within 90 days following the occurrence of the 13c Hashprice Trigger; and

  - if the average daily hashprice is greater than 16c for three consecutive months ("**16c Hashprice Trigger**"), the Debtors will be required to make a one-time mandatory prepayment of 25% of the remaining outstanding principal balance of the Note within 90 days following the occurrence of the 16c Hashprice Trigger.

- The Debtors have the right, exercisable at any time and from time to time, to voluntarily prepay the Note in whole or in part, and any such prepayment shall be without any

4

penalty or fees. Any mandatory or voluntary prepayment of the Note shall be immediately applied toward principal, be applied in inverse order of maturity and shall not extend or postpone the due dates of the monthly installments due under the Note or change the amounts of such installments.

- Upon entry of the Proposed Order, Didado shall have no further interest, if any, in the goods described in Annex A to the Proposed Order, which goods have been previously delivered to the Debtors by Didado.

### Relief Requested Should Be Granted

**I.     The Didado Settlement Is Fair, Reasonable, and in the Best Interest of the Debtors' Estates**

10. Bankruptcy Rule 9019(a) provides that "[o]n motion by the [debtors in possession] and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). Further, pursuant to Bankruptcy Rule 9019(a), a bankruptcy court may approve a compromise or settlement so long as the proposed settlement is fair, reasonable, and in the best interests of the estate. *See Off. Comm. of Unsecured Creditors v. Moeller (In re Age Refin.,Inc.)*, 801 F.3d 530, 540 (5th Cir. 2015). Ultimately, approval of a compromise is within the discretion of the bankruptcy court. *See United States v. AWECO, Inc. (In re AWECO, Inc.)*, 725 F.2d 293, 297 (5th Cir. 1984); *Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 602 (5th Cir. 1980) (citations omitted) (decided under the Bankruptcy Act). Settlements are considered a "normal part of the process of reorganization" and a "desirable and wise method[] of bringing to a close proceedings otherwise lengthy, complicated, and costly." *Rivercity*, 624 F.2d at 602–03 (citing *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424–25 (1968)).

11. The Fifth Circuit has established a three-factor balancing test under which bankruptcy courts analyze proposed settlements. *Id.* The factors courts consider are: "(1) the probability of success in litigating the claim subject to settlement, with due consideration for the uncertainty in fact and law; (2) the complexity and likely duration of litigation and any attendant

5

expense, inconvenience, and delay; and (3) all other factors bearing on the wisdom of the compromise." *See Age Refin.*, 801 F.3d at 540 (internal citations omitted).

12. Under the rubric of the third factor, the Fifth Circuit has specified two additional factors that bear on a decision to approve a proposed settlement. First, the Court should consider "the paramount interest of creditors with proper deference to their reasonable views." *Id.*; *Conn. Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortg. Corp.)*, 68 F.3d 914, 917 (5th Cir. 1995). Second, the Court should consider the "extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion." *Age Refin.*, 801 F.3d at 540; *Foster Mortg.*, 68 F.3d at 918 (citations omitted).

13. Generally, the role of the bankruptcy court is not to decide the issues in dispute when evaluating a settlement. *Watts v. Williams*, 154 B.R. 56, 59 (S.D. Tex. 1993). Rather, the court should determine whether the settlement as a whole is fair and equitable. *Protective Comm. for Indep. S'holders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968).

14. The Debtors bear the burden of establishing that the balance of the above factors leads to a fair and equitable compromise vis-à-vis the Didado Settlement. *In re Allied Properties, LLC*, 2007 WL 1849017, at *4 (Bankr. S.D. Tex. June 25, 2007) (citing *In re Lawrence & Erausquin, Inc.*, 124 B.R. 37, 38 (Bankr. N.D. Ohio 1990)); *see also In re GHR Companies, Inc.*, 50 B.R. 925, 931 (Bankr. D. Mass. 1985). "The burden is not high;" rather, the Debtors "**need only show that [their] decision falls within the 'range of reasonable litigation alternatives.**'" *In re Allied Properties, LLC*, 2007 WL 1849017, at *4 (emphasis added) (citing *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983)); *see also Cook v. Waldron*, 2006 WL 1007489 at *4 (S.D. Tex. Apr. 18, 2006).

15. Here, weighing the foregoing factors demonstrates that the Didado Settlement is reasonable and supports finding that the Debtors' entry into the Didado Settlement is in the best interest of creditors and other stakeholders.

16. First, the likelihood of success of litigating against the Didado Claims is uncertain. What is not uncertain, is that the litigation would likely require the expenditure of significant funds and cause substantial, detrimental impact to the Debtors. Further, if Didado were to succeed on its claim, the Debtors would be liable for a much larger sum than the sum agreed to in the Didado Settlement. Indeed, the Didado Settlement provides the Debtors with a discount of approximately 49% of the face amount of the asserted Didado Claims. Having the benefit of certainty and prior agreement between the Debtors and Didado, at an amount significantly lower than the claims asserted by Didado, is preferable to what could otherwise be costly and distracting litigation that would harm the Debtors' estates.

17. Second, the Settlement Agreement is also the product of good-faith, arm's-length bargaining between the Debtors and Didado, each of which were represented by counsel, and no party has asserted that the Didado Settlement was the product of fraud or collusion.

18. Third, the Didado Settlement is reasonable and is in the best interests of the Debtors' estates. Pursuant to the Didado Settlement, the Debtors will reduce the claims pool by satisfying the Didado Claims (a large secured claim against the Debtors' estates), with the Note in the amount of only a portion of the Didado Claim. As a result, Didado will release the Didado Liens encumbering the Muskogee Facility and release the Debtors from any and all future claims arising from the Debtors' rejection of the Didado Contracts.

19. Accordingly, the Debtors respectfully submit that the Court should approve Didado Settlement based upon the factors considered by courts in the Fifth Circuit.

**II.     The Debtors' Entry into the Didado Settlement Is a Reasonable Exercise of Debtors' Sound Business Judgment**

20.     Section 363(b)(1) of the Bankruptcy Code authorizes a debtor in possession to "use, sell, or lease, other than in the ordinary course of business, property of the estate," after notice and a hearing.  It is well-established in this jurisdiction that a debtor may use property of the estate outside the ordinary course of business under this provision if there is a good business reason for doing so.  *See, e.g.*, *ASARCO, Inc. v. Elliott Mgmt. (In re ASARCO, L.L.C.)*, 650 F.3d 593, 601 (5th Cir. 2011) ("[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors, and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business.") (quoting *In re Cont'l Air Lines, Inc.*, 780 F.3d 1223, 1226 (5th Cir. 1986)); *GBL Holding Co., Inc. v. Blackburn/Travis/Cole, Ltd. (In re State Park Bldg. Grp., Ltd.)*, 331 B.R. 251, 254 (Bankr. N.D. Tex. 2005); *In re Filene's Basement, LLC*, No. 11-13511 (KJC) (Bankr. D. Del. Apr. 29, 2014) (stating that, under the business judgment standard, once the debtor presents "a reasonable basis for is business decisions … courts will generally not entertain objections to the debtor's conduct").

21.     Here, the Debtors' entry into the Didado Settlement represents a reasonable exercise of the Debtors' sound business judgment and should be approved. As discussed in the preceding section, the likelihood of success of litigating against the Didado Claims is uncertain and doing so would result in substantial costs to the bankruptcy estate. If Didado were to succeed, the Debtors would be liable for a much greater sum than that agreed to in the Didado Settlement. Obtaining the benefit of certainty and prior agreement between the Debtors and Didado, at an amount significantly lower than the claims asserted by Didado, and thereby avoiding what would otherwise involve costly and distracting litigation, represents an exercise of sound business judgment by the Debtors.

8

22. Accordingly, the Debtors respectfully submit that the Court should approve the Didado Settlement based upon the standards set forth in section 363(b)(1).

## Reservation of Rights

23. Except as expressly provided for herein with respect to the Didado Claims, nothing contained in this Motion or any actions taken by the Debtors pursuant to the relief granted is intended or should be construed as: (i) an admission as to the validity of any claim against the Debtors, or (ii) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law, or (iii) an approval of an assumption of any lease, sublease, or contract pursuant to section 365 of the Bankruptcy Code.

## No Previous Request

24. No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: July 14, 2023
      Houston, Texas

Respectfully submitted,

  /s/  *Alfredro R. Pérez*
WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (15776275)
Clifford W. Carlson (24090024)
700 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone:  (713) 546-5000
Facsimile:  (713) 224-9511
Email: Alfredo.Perez @weil.com
       Clifford.Carlson@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Ray C. Schrock (admitted *pro hac vice*)
Ronit J. Berkovich (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Email:   Ray.Schrock@weil.com
       Ronit.Berkovich@weil.com

*Attorneys for Debtors*
*and Debtors in Possession*

## Certificate of Service

I hereby certify that on July 14, 2023, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                                  */s/ Alfredo R. Pérez*
                                                  Alfredo R. Pérez (15776275)