IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| CORE SCIENTIFIC, INC., *et al.*, | § | Case No. 22-90341 (DRJ) |
| | § | |
| | § | (Jointly Administered) |
| Debtors.[2] | § | |
| | § | |

**ORDER APPROVING (I) GLOBAL SETTLEMENT
BETWEEN DEBTORS AND JW DIDADO ELECTRIC LLC
AND (II) GRANTING RELATED RELIEF**

Upon the motion, dated July 14, 2023 (the "**Motion**"),[3] of Core Scientific, Inc. and its debtor affiliates, as debtors and debtors in possession (collectively, the "**Debtors**"), Debtors request authority for (i) a global settlement between the Debtors and J.W. Didado Electric, LLC ("**Didado**") on the terms set forth in the Motion, and (ii) granting related relief, as more fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §1334; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and it appearing that venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided, and it appearing that no other or further notice need be provided; and the Court having reviewed the Motion; and all objections, if any, to the Motion having been withdrawn, resolved, or overruled; and the Court having determined that the legal and factual bases

---

[2] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions, VII, LLC (3198). The Debtors' corporate headquarters and service address is 210 Barton Springs Road, Suite 300, Austin, Texas 78704.

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interest of the Debtors and their respective estates and creditors; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing,

**IT IS HEREBY ORDERED THAT:**

1. Pursuant to Bankruptcy Rule 9019 and sections 105(a), 362(d) and 363 of the Bankruptcy Code, the global settlement by and between the Debtors and Didado (the "**Didado Settlement**"), on the terms set forth and agreed to in the *Settlement Term Sheet* (the "**Term Sheet**") and herein, is authorized and approved.

2. The Debtors are authorized to enter into, execute, deliver, and implement the terms set forth herein and in the Term Sheet, as agreed to by the Parties.

3. The Didado Settlement is the product of extensive, good faith, arms' length negotiations between the Parties and their respective representatives.

4. Debtors' entry into the Didado Settlement represents a reasonable exercise of the Debtors' sound business judgment under section 363(b)(1).

5. Didado shall have no further interest, if any, in the goods described in Annex A to this Order (which goods have been previously delivered to the Debtors by Didado).

6. Within five (5) calendar days after the entry of this Order:

    (a) the Debtors shall deliver to Didado a duly executed promissory note (the "**Note**") in the principal amount of $13,000,000; and

    (b) Didado shall deliver to the Debtors final unconditional lien releases in form and substance reasonably acceptable to the Debtors for all work performed at the Muskogee

Facility and all goods, labor, and materials supplied to, for or in connection with the Debtors or the Muskogee Facility, duly executed by Didado and in recordable form.

7. Immediately upon delivery of the Note to Didado, (a) any Claim (as defined in the Bankruptcy Code) held by Didado against the Debtors, including the Didado Claims, shall be deemed finally and fully paid, satisfied, released and expunged; (b) the Didado Liens are to be fully and finally released, extinguished and discharged; (c) all contracts and outstanding purchase orders between Didado and the Debtors, are terminated, and Didado releases and shall not have any claims for rejection damages based on such termination or otherwise; (d) the Debtors and their chapter 11 estates (together, the "**Debtor Releasors**") and Didado and its affiliates (each of the Debtor Releasors and Didado and its affiliates, a "**Releasing Party**" and, collectively, the "**Releasing Parties**"), each on behalf of itself and any other party, person or entity claiming under or through it, hereby completely and finally releases, discharges, acquits, and covenants not to sue (i) each other Releasing Party and its respective current and former agents, servants, officers, directors, shareholders, employees, subsidiaries, divisions, affiliates, parents, attorneys, successors, predecessors, heirs, personal representatives, and assigns (each of the foregoing, including each Releasing Party, a "**Released Party**") from all manners of action, causes of action, judgments, executions, debts, demands, rights, damages, costs, expenses, liens, and claims of every kind, nature, and character whatsoever, whether in law or in equity, whether based on contract (including, without limitation, quasi-contract or estoppel), statute, regulatory, tort (including, without limitation, intentional torts, fraud, misrepresentation, defamation, breaches of alleged fiduciary duty, recklessness, gross negligence, or negligence) or otherwise, accrued or unaccrued, known or unknown, matured, unmatured, liquidated or unliquidated, certain or contingent, that such releasing Party ever had or claimed to have or now has or claims to have, against any Released

Party arising under or related to the Didado Claims, the Didado Liens, the Didado Contracts, or the Muskogee Facility, including, for the avoidance of doubt, any preference, fraudulent transfer, or other avoidance action arising under chapter 5 of the Bankruptcy Code or other applicable law and (ii) each other Releasing Party from any and all other claims or causes of action arising prior to the entry of this Order; and (e) other than as set forth herein, Didado shall not be entitled to receive any other recovery in connection with any claims it has, or could have, asserted in connection with these chapter 11 cases or otherwise.

8. The Note shall bear interest at the rate of 5% per annum and have a term of 36 months. The Note shall be payable in equal monthly installments payable on the first of each month beginning on the first day of the calendar month. The first payment shall be made no earlier than ninety (90) days after court approval of the settlement. The Note shall be subject to mandatory prepayment in the following instances: (1) if the average daily hashprice is greater than 13c but less than 16c for 90 consecutive days ("**13c Hashprice Trigger**"), the Debtors will be required to make a one-time mandatory prepayment of 25% with the then outstanding principal balance of the Note within 90 days following the occurrence of the 13c Hashprice Trigger; and (2) if the average daily hashprice is greater than 16c for three consecutive months ("**16c Hashprice Trigger**"), the Debtors will be required to make a one-time mandatory prepayment of 25% of the remaining outstanding principal balance of the Note within 90 days following the occurrence of the 16c Hashprice Trigger. The Debtors have the right, exercisable at any time and from time to time, to voluntarily prepay the Note in whole or in part, and any such prepayment shall be without any penalty or fees. Any mandatory or voluntary prepayment of the Note shall be immediately applied toward principal, be applied in inverse order of maturity and shall not extend or postpone the due dates of the monthly installments due under the Note or change the amounts of such installments.

WEIL:\99250353\3\39031.0014

9. To the extent applicable, the automatic stay pursuant to section 362(a) of the Bankruptcy Code is hereby lifted solely for purposes of implementing the Settlement Agreement.

10. The Debtors are authorized to enter into, perform, execute, and deliver all documents, and take all actions, necessary or appropriate to immediately continue and fully implement the Didado Settlement and carry out the relief granted in this Order. The Debtors and Didado shall do, execute, acknowledge and deliver all such further acts, instruments and assurances and take all such further action as shall be necessary or desirable to fully implement the Didado Settlement, carry out the relief granted in this Order and fully consummate and effect the transactions provided for in this Order.

11. Except as set forth in this Order, nothing contained in the Motion, this Order, or any actions taken by the Debtors pursuant to the relief granted in the Order shall be construed as: (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law, or (iii) an approval of an assumption of any lease, sublease, or contract pursuant to section 365 of the Bankruptcy Code.

12. The Debtors and Didado are authorized to take all steps necessary or appropriate to carry out the relief granted in this Order. To the extent that there is any inconsistency between the Term Sheet and this Order or between the Motion and this Order, the provisions of this Order will govern.

13. The Parties will each be responsible for and pay its own legal fees and out-of-pocket expenses in connection with the Claims, the Liens and the chapter 11 cases of the Debtors pending in the Bankruptcy Court.

14. This Order shall be immediately effective and enforceable upon its entry.

15. This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Dated: July __, 2023
       Houston, Texas

                                                  THE HONORABLE DAVID R. JONES
                                                  UNITED STATES BANKRUPTCY JUDGE

<u>**Annex A**</u>

**JW DIDADO MUSKOGEE MATERIALS**

**Below Grade**
(900 ft) cable trench and cable trench covers
(12) 34.5 KV 500 MCM Secondary HV Cable to Distribution Poles in Station
(11,424 ft) Install 35 KV 500MCM HV Cable

**Above Grade**
(1) Dead end Structure
(4) Static Poles
(8) 345 KV Switch Structures
(32) 345 KV Bus Structures
(2) 34.5 KV Breaker Structures
(2) 34.5 KV Switch Structures
(2) 34.5 KV Breaker Structures
345 KV Bus Support Steel
(4) Transformer steel grating
(12) Wood distribution Poles
All Station Stone

**Equipment**
(3) 345 KV Breakers
(5) 345 KV Switches (No Switch Piping or MOAB's)
 (6) 34.5 KV Breakers
 (2) 345KV Transformer delivered to site stored on pads

**Distribution**
(58) 50 ft poles stored not installed
(21) 40 ft poles stored not installed
(417) Cross arms stored not installed