IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| CORE SCIENTIFIC, INC., *et al.*, | § § | Case No. 22-90341 (DRJ) |
| | § § | (Jointly Administered) |
| Debtors.[1] | § § § | |

**DEBTORS' MOTION FOR ORDER APPROVING
(I) GLOBAL SETTLEMENT BETWEEN DEBTORS AND HUBAND-MANTOR
CONSTRUCTION, INC. AND (II) GRANTING RELATED RELIEF**

> **IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE ELECTRONICALLY AT HTTPS://ECF.TXSB.USCOURTS.GOV/ WITHIN TWENTY-ONE DAYS FROM THE DATE THIS MOTION WAS FILED. IF YOU DO NOT HAVE ELECTRONIC FILING PRIVILEGES, YOU MUST FILE A WRITTEN OBJECTION THAT IS ACTUALLY RECEIVED BY THE CLERK WITHIN TWENTY-ONE DAYS FROM THE DATE THIS MOTION WAS FILED. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

Core Scientific, Inc. ("**Core**") and its debtor affiliates in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"), hereby submit this motion (the "**Motion**"), pursuant to sections 105(a), 362(d) and 363 of chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), rule 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and rule 9013 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Local Rules**"), the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions, VII, LLC (3198). The Debtors' corporate headquarters and service address is 210 Barton Springs Road, Suite 300, Austin, Texas 78704.

Debtors request entry of an order, substantially in the form attached hereto as **Exhibit 1** (the "**Proposed Order**"), (i) authorizing the Debtors' entry into a global settlement between the Debtors and Huband-Mantor Construction, Inc. ("**HMC**" and, together with the Debtors, collectively, the "**Parties**" and, each, a "**Party**"), on the terms set forth and agreed to by the Parties on the *Settlement Term Sheet* (the "**Term Sheet**") attached hereto as **Exhibit 2**; (ii) approving the settlement on the terms set forth in the Term Sheet; and (iii) granting related relief.

## Jurisdiction

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

2. On December 21, 2022 (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary case under the Bankruptcy Code. The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

**I.   The Parties' Business Relationship**

3. The Debtors are one of the largest blockchain infrastructure, hosting provider, and digital asset mining companies in North America, with fully operational data centers in Texas, Kentucky, North Carolina, North Dakota, and Georgia. The Debtors provide hosting solutions for third parties and also operate their own digital asset mining machines.

4. HMC is a general contractor that provides contracting and project management services for residential and commercial construction projects.

5. The Debtors have developed two data-center facilities in West Texas, one near Pecos, Texas that is made up of two operating sites, the Debtors' Cottonwood 1 site (the

"**COT 1 Facility**") and the Debtors' Cottonwood 2 site (the "**COT 2 Facility**"), and one near Barstow, Texas (the "**Cedarvale Facility**" and, together with the COT 1 Facility and the COT 2 Facility, collectively, the "**Facilities**" and, each, a "**Facility**").

6. Prior to the Petition Date, between December 2021 and April 2022, the Debtors entered into a series of agreements with HMC (the "**HMC Contracts**") for HMC's provision of general contracting services to complete the development and construction of the physical infrastructure at each of the Facilities. Specifically, the HMC Contracts are comprised of:

- Standard Form of Agreement Between Owner and Contractor where the basis of payment is the Cost of the Work Plus a Fee with a Guaranteed Maximum Price, dated January 25, 2022, by and between Core Scientific and Huband-Mantor Construction, Inc., as amended by that certain AIA Document G701-2017 Change Order 01, dated March 14, 2022, and that certain Letter Re Suspension of Work, dated August 9, 2022 for the Cedarvale Facility (the "**Cedarvale Agreement**");

- Standard Form of Agreement Between Owner and Contractor where the basis of payment is the Cost of the Work Plus a Fee with a Guaranteed Maximum Price, dated December 30, 2021, by and between Core Scientific and Huband-Mantor Construction, Inc., and that certain Schedule B – Scope of Work, and that certain Letter Re Suspension of Work, dated August 9, 2022, and that certain Letter Re Partial Resume Work Authorization, dated August 22, 2022 for the Debtors' COT 1 Facility (the "**COT 1 Agreement**");

- Standard Form of Agreement Between Owner and Contractor where the basis of payment is the Cost of the Work Plus a Fee with a Guaranteed Maximum Price, dated April 20, 2022, by and between Core Scientific and Huband-Mantor Construction, Inc., and that certain Letter Re Suspension of Work, dated August 9, 2022 for the Debtors COT 2 Facility (the "**COT 2 Agreement**").

7. Pursuant to the HMC Contracts, HMC (itself and through various Subcontractors that HMC engaged) developed and constructed the physical infrastructure at each of the Facilities.

8. In connection with the HMC Contracts, HMC (i) has asserted prepetition and postpetition claims (such claims and any other claims that may be asserted, the "**HMC**

3

**Claims**") against the Debtors, including, without limitation Proofs of Claim Nos. 55 and 90 in the total asserted amount of $27,869,128.61; and (ii) filed liens (such liens, the "**HMC Liens**") against certain of the Debtors' assets, including without limitation mechanics' liens against the Debtors' Cedarvale Facility, COT 1 Facility, and COT 2 Facility, set forth in **Annex A** to the Proposed Order.

9. Additionally, certain subcontractors and sub-subcontractors of HMC (collectively, the "**Subcontractors**" and, each, individually, a "**Subcontractor**") have asserted prepetition and postpetition claims (such claims, the "**Sub Claims**" and, together with the HMC Claims, the "**Claims**") against the Debtors, including, without limitation, Proofs of Claims Nos. 3, 43, 44, 45, 46, 47, 84, 85, 91, 114, 163, 171, 186, 193, 194, 273, 274, 275, 276, 341, 343, 356, and 514. The Subcontractors have also filed liens against certain of the Debtors' assets (such liens, the "**Sub Liens**" and, together with the HMC Liens, the "**Liens**"), including, without limitation, the mechanics' liens against the Debtors' Facilities set forth on **Annex B** to the Proposed Order.

A. **The HMC Settlement**

10. After engaging in extensive, good faith negotiations, the Debtors and HMC reached a global settlement (the "**HMC Settlement**"), memorialized in the binding Term Sheet dated July 14, 2023, subject to this Court's approval, with terms set forth in the Proposed Order, resolving all issues and amounts owed between the Debtors and HMC. For the avoidance of doubt, pursuant to the HMC Settlement, except as provided herein, HMC agrees to release any and all liens and Claims (as defined in the Bankruptcy Code) against the Debtors, including, without limitation, for any and all obligations, liabilities, duties and damages of the Debtors, whether or not expressly memorialized in the HMC Settlement.

11. The principal terms of the HMC Settlement are as follows:

- Within five (5) calendar days after entry of the Proposed Order, the Debtors shall:

- o  make a payment to HMC in the amount of $2,000,000 (the "**Initial Payment**");

- o  deliver to HMC a duly executed promissory note (the "**Note**") in the principal amount of $15,500,000, which shall be secured by a duly executed leasehold deed of trust in form and substance reasonably acceptable to HMC (the "**Mortgage**") encumbering the Debtors' leasehold estate in the COT 1 Facility, which Mortgage shall have the same priority as the HMC Liens;

- o  deliver to HMC an estoppel agreement duly executed by the landlord under the lease of the COT 1 Facility (the "**COT 1 Landlord**") in form and substance reasonably acceptable to HMC and the COT 1 Landlord; and

- o  use commercially reasonable efforts to deliver to HMC an estoppel agreement duly executed by ENGIE Resources LLC ("**Engie**"), the electric power supplier to Core for the COT 1 Facility, in form and substance reasonably acceptable to HMC and Engie.

- Immediately upon delivery of the Initial Payment and the Note to HMC, and the recordation of the Mortgage in the Official Public Records of the County where the COT 1 Facility is located:

  - o  the HMC Claims shall be deemed finally and fully paid, satisfied, released and expunged (including but not limited to Proofs of Claims Nos. 55 and 90), and HMC shall cooperate with the Debtors and take all reasonable steps necessary to obtain release of the Sub Claims, including supporting any objections to the Sub Claims filed by the Debtors;

  - o  the Liens (including but not limited to the liens set forth in Annex A) are to be fully and finally released, extinguished and discharged;

  - o  any and all contracts and outstanding purchase orders between HMC and the Debtors, including, without limitation, the HMC Contracts, are terminated, and HMC releases and shall not have any claims for rejection damages based on such termination; and

  - o  the Parties each grant a complete and final release of all claims against each other and covenant not to sue, in each case, in favor of the other Party.

- Within five (5) business days following the receipt of the Initial Payment by HMC, HMC shall deliver to the Debtors final unconditional lien releases in form and substance reasonably acceptable to Core for all work performed at the Facilities and all goods, labor, and materials supplied to, for or in connection with the Debtors or the Facilities, duly executed by HMC and each Subcontractor, and in recordable form, which lien waivers shall provide for the release of all the Liens.

- Reasonably promptly following the date on which a plan of reorganization filed by the Debtors is confirmed by entry of an order of the United States Bankruptcy Court for the Southern District of Texas, Core shall deliver, at Core's cost, to HMC an up to

- date title commitment from Chicago Title Insurance Company or another title agent and underwriter reasonably acceptable to HMC, evidencing the first lien priority of the Mortgage.

- The Note shall bear interest at the rate of 5% per annum, with a default interest rate of 12% per annum, have a term of 36 months, and be secured by the Mortgage. The Note shall be payable in equal monthly installments payable on the first of each month beginning on the first day of the calendar month which is two (2) full months after the date on which the initial payment is made (e.g., if the initial payment is made on July 15, the first monthly payment date will be October 1).

- The Note shall be subject to mandatory prepayment in the following instances: (1) if the average daily hashprice is greater than 13c but less than 16c for 90 consecutive days ("**13c Hashprice Trigger**"), the Debtors will be required to make a one-time mandatory prepayment of 25% with the then outstanding principal balance of the Note within 90 days following the occurrence of the 13c Hashprice Trigger; and (2) in addition, if the average daily hashprice is greater than 16c for three consecutive months ("**16c Hashprice Trigger**"), the Debtors will be required to make a one-time mandatory prepayment of 25% of the remaining outstanding principal balance of the Note within 90 days following the occurrence of the 16c Hashprice Trigger.

- Upon payment in full of the Note, HMC will record a satisfaction of the Mortgage.

- The Debtors have the right, exercisable at any time and from time to time, to voluntarily prepay the Note in whole or in part, and any such prepayment shall be without any penalty or fees. Any mandatory or voluntary prepayment of the Note shall be immediately applied toward principal, be applied in inverse order of maturity and shall not extend or postpone the due dates of the monthly installments due under the Note or change the amounts of such installments.

- An "**Event of Default**" shall occur if, among other things, the Debtors fail to pay any monthly installment due under the Note on the payment date when such monthly installment becomes due, and such failure continues for thirty (30) days after HMC gives written notice thereof to the Debtors. Subject to the terms of the Note, if an Event of Default occurs then the interest rate on the past-due payment shall increase to 12% per annum from the day after the payment due date until the Note is brought current by paying all past-due principal and interest. Unless and until an Event of Default occurs, HMC shall be barred from foreclosing or otherwise enforcing the Mortgage or otherwise taking adverse action against the Debtors or any of the Debtors' assets (including the COT 1 Facility) with regard to any amounts secured by the Mortgage.

- The Mortgage shall create a valid lien against the COT 1 Facility, which lien shall have the same priority as the existing HMC Liens.

- Within sixty (60) days following the entry of the Proposed Order, the Debtors shall, at the Debtors' cost and expense, take possession of the goods described in Annex C (the

6

"**Stored Goods**") which are currently being stored by HMC. HMC shall not have any further interest in the Stored Goods.

## Relief Requested Should Be Granted

I. **The HMC Settlement Is Fair, Reasonable, and in the Best Interest of the Debtors' Estates**

12. Bankruptcy Rule 9019(a) provides that "[o]n motion by the [debtors in possession] and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). Further, pursuant to Bankruptcy Rule 9019(a), a bankruptcy court may approve a compromise or settlement so long as the proposed settlement is fair, reasonable, and in the best interests of the estate. *See Off. Comm. of Unsecured Creditors v. Moeller (In re Age Refin.,Inc.)*, 801 F.3d 530, 540 (5th Cir. 2015). Ultimately, approval of a compromise is within the discretion of the bankruptcy court. *See United States v. AWECO, Inc. (In re AWECO, Inc.)*, 725 F.2d 293, 297 (5th Cir. 1984); *Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 602 (5th Cir. 1980) (citations omitted) (decided under the Bankruptcy Act). Settlements are considered a "normal part of the process of reorganization" and a "desirable and wise method[] of bringing to a close proceedings otherwise lengthy, complicated, and costly." *Rivercity*, 624 F.2d at 602–03 (citing *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424–25 (1968)).

13. The Fifth Circuit has established a three-factor balancing test under which bankruptcy courts analyze proposed settlements. *Id.* The factors courts consider are: "(1) the probability of success in litigating the claim subject to settlement, with due consideration for the uncertainty in fact and law; (2) the complexity and likely duration of litigation and any attendant expense, inconvenience, and delay; and (3) all other factors bearing on the wisdom of the compromise." *See Age Refin.*, 801 F.3d at 540 (internal citations omitted).

14. Under the rubric of the third factor, the Fifth Circuit has specified two additional factors that bear on a decision to approve a proposed settlement. First, the Court should consider "the paramount interest of creditors with proper deference to their reasonable views." *Id.*; *Conn. Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortg. Corp.)*, 68 F.3d 914, 917 (5th Cir. 1995). Second, the Court should consider the "extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion." *Age Refin.*, 801 F.3d at 540; *Foster Mortg.*, 68 F.3d at 918 (citations omitted).

15. Generally, the role of the bankruptcy court is not to decide the issues in dispute when evaluating a settlement. *Watts v. Williams*, 154 B.R. 56, 59 (S.D. Tex. 1993). Rather, the court should determine whether the settlement as a whole is fair and equitable. *Protective Comm. for Indep. S'holders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968).

16. The Debtors bear the burden of establishing that the balance of the above factors leads to a fair and equitable compromise vis-à-vis the HMC Settlement. *In re Allied Properties, LLC*, 2007 WL 1849017, at *4 (Bankr. S.D. Tex. June 25, 2007) (citing *In re Lawrence & Erausquin, Inc.*, 124 B.R. 37, 38 (Bankr. N.D. Ohio 1990)); *see also In re GHR Companies, Inc.*, 50 B.R. 925, 931 (Bankr. D. Mass. 1985). "The burden is not high;" rather, the Debtors "**need only show that [their] decision falls within the 'range of reasonable litigation alternatives.**'" *In re Allied Properties, LLC*, 2007 WL 1849017, at *4 (emphasis added) (citing *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983)); *see also Cook v. Waldron*, 2006 WL 1007489 at *4 (S.D. Tex. Apr. 18, 2006).

17. Here, weighing the foregoing factors demonstrates that the HMC Settlement is reasonable and supports finding that the Debtors' entry into the HMC Settlement is in the best interest of creditors and other stakeholders.

18. First, the likelihood of success of litigating against the HMCs Claims is uncertain. What is not uncertain, is that the litigation would likely require the expenditure of significant funds and cause substantial, detrimental impact to the Debtors. Further, if HMC were to succeed on its claim, the Debtors would be liable for a much larger sum than the sum agreed to in the HMC Settlement. Indeed, the HMC Settlement provides the Debtors with a discount of approximately 37% of the face amount of the asserted HMC Claims. Having the benefit of certainty and prior agreement between the Debtors and HMC, at an amount significantly lower than the asserted HMC Claims, maximizes value for the Debtors' estates and avoids what could otherwise be costly and distracting litigation that would harm the Debtors' estates. Under the HMC Settlement, HMC also agrees to (i) obtain and deliver releases of all liens filed by Subcontractors and (ii) support the Debtors in any objections filed to the Sub Claims, which will benefit the Debtors.

19. Second, the Settlement Agreement is also the product of good-faith, arm's-length bargaining between the Debtors and HMC, each of which were represented by counsel, and no party has asserted that the HMC Settlement was the product of fraud or collusion.

20. Third, the HMC Settlement is reasonable and is in the best interests of the Debtors' estates. Pursuant to the HMC Settlement, the Debtors will reduce the claims pool by satisfying the HMC Claims (a large secured claim against the Debtors' estates) at a substantial discount, with a limited cash Initial Payment and the secured Note paid out over 36 months. As a result, HMC will release the Debtors from any and all future claims arising from the Debtors' rejection of the HMC Contracts.

21. Accordingly, the Debtors respectfully submit that the Court should approve HMC Settlement based upon the factors considered by courts in the Fifth Circuit.

**II.     The Debtors' Entry into the HMC Settlement Is a Reasonable Exercise of Debtors' Sound Business Judgment**

22. Section 363(b)(1) of the Bankruptcy Code authorizes a debtor in possession to "use, sell, or lease, other than in the ordinary course of business, property of the estate," after notice and a hearing. It is well-established in this jurisdiction that a debtor may use property of the estate outside the ordinary course of business under this provision if there is a good business reason for doing so. *See, e.g.*, *ASARCO, Inc. v. Elliott Mgmt. (In re ASARCO, L.L.C.)*, 650 F.3d 593, 601 (5th Cir. 2011) ("[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors, and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business.") (quoting *In re Cont'l Air Lines, Inc.*, 780 F.3d 1223, 1226 (5th Cir. 1986)); *GBL Holding Co., Inc. v. Blackburn/Travis/Cole, Ltd. (In re State Park Bldg. Grp., Ltd.)*, 331 B.R. 251, 254 (Bankr. N.D. Tex. 2005); *In re Filene's Basement, LLC*, No. 11-13511 (KJC) (Bankr. D. Del. Apr. 29, 2014) (stating that, under the business judgment standard, once the debtor presents "a reasonable basis for is business decisions … courts will generally not entertain objections to the debtor's conduct").

23. Here, the Debtors' entry into the HMC Settlement represents a valid exercise of the Debtors' business judgment and should be approved. As a result of the HMC Settlement, the Debtors will reduce the claims pool by satisfying the HMC Claims (a large secured claim against the Debtors' estates) at a substantial discount of 37% of the face amount of HMC's Claims, with a limited cash Initial Payment and the secured Note paid out over 36 months. As a result, HMC will release the Debtors from any and all future claims arising from the Debtors' rejection of the HMC Contracts.

24. Accordingly, the Debtors submit that entry into the HMC Settlement is a reasonable exercise of the Debtors' business judgment and should be approved.

**Reservation of Rights**

25. Except as expressly provided for herein with respect to the Claims, nothing contained in this Motion or any actions taken by the Debtors pursuant to the relief granted is intended or should be construed as: (i) an admission as to the validity of any claim against the Debtors (ii) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law, or (iii) an approval of an assumption of any lease, sublease, or contract pursuant to section 365 of the Bankruptcy Code.

**No Previous Request**

26. No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: July 14, 2023
      Houston, Texas

Respectfully submitted,

  /s/  Alfredo R. Pérez
WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (15776275)
Clifford W. Carlson (24090024)
700 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Email: Alfredo.Perez@weil.com
       Clifford.Carlson@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Ray C. Schrock (admitted *pro hac vice*)
Ronit J. Berkovich (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Email:   Ray.Schrock@weil.com
       Ronit.Berkovich@weil.com

*Attorneys for Debtors
and Debtors in Possession*

**Certificate of Service**

I hereby certify that on July 14, 2023, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

    */s/ Alfredo R. Pérez*
Alfredo R. Pérez