# EXHIBIT C

**Fill in this information to identify the case:**

Debtor: Core Scientific Operating Company

United States Bankruptcy Court for the District of: Southern District of Texas

Case number: 22-90343

# Official Form 410

# Proof of Claim    04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. **Do not use this form to make a request for payment of an administrative expense.** Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed.** That date is on the notice of bankruptcy (Form 309) **that you received.**

## Part 1:   Identify the Claim

1. **Who is the current creditor?**

   Sphere 3D Corp
   Name of the current creditor (the person or entity to be paid for this claim)

   Other names the creditor used with the debtor _____

2. **Has this claim been acquired from someone else?**

   ☑ No
   ☐ Yes.  From whom? _____

3. **Where should notices and payments to the creditor be sent?**

   Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

   Where should notices to the creditor be sent?

   Sphere 3D Corp
   Patricia Trompeter
   4 Greenwich Office Park
   Suite 100
   Greenwich, CT 06831
   United States
   E: patricia.trompeter@sphere3d.com

   Where should payments to the creditor be sent? (if different)

   Uniform claim identifier for electronic payments in chapter 13 (if you use one):
   ___ ___ ___ ___ ___ ___ — ___ ___ ___ ___ — ___ ___ ___ ___ — ___ ___ ___ ___ ___ ___ ___ ___

4. **Does this claim amend one already filed?**

   ☑ No
   ☐ Yes.  Claim number on court claims registry (if known) _____   Filed on _____
                                                                                                  MM/DD/YYYY

5. **Do you know if anyone else has filed a proof of claim for this claim?**

   ☑ No
   ☐ Yes.  Who made the earlier filing? _____

---

Official Form 410                                                                                              Page 1

12024041323330249080001

**Part 2: Give Information About the Claim as of the Date the Case Was Filed**

6. **Do you have any number you use to identify the debtor?**
   ☒ No
   ☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____

7. **How much is a claim?**   See attached addendum
   Does this amount include interest or other charges?
   ☐ No
   ☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8. **What is the basis of the claim?**
   Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card
   Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).
   Limit disclosing information that is entitled to privacy, such as health care information.

   See attached addendum

9. **Is all or part of the claim secured?**
   ☒ No
   ☐ Yes. The claim is secured by a lien on property

   **Nature of property**
   ☐ Real estate.    If the claim is secured by the debtor's principal residence, file a Mortgage Proof of Claim Attachment (Official Form 410-A) with this Proof of Claim.
   ☐ Motor vehicle.
   ☐ Other. Describe: _____

   **Basis for perfection:** _____

   Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

   **Value of property:** _____
   **Amount of the claim that is secured:** _____
   **Amount of the claim that is unsecured:** _____   (The sum of the secured and unsecured amounts should match the amount in line 7.)
   **Amount necessary to cure any default as of the date of the petition:** _____
   **Annual Interest Rate (when case was filed)** _____ %
   ☐ Fixed
   ☐ Variable

10. **Is this claim based on a lease?**
    ☒ No
    ☐ Yes. Amount necessary to cure any default as of the date of the petition.   $ _____

11. **Is this claim subject to a right of setoff?**
    ☒ No
    ☐ Yes. Identify the property: _____

Case 22-90341   Document 959-3   Filed in TXSB on 06/09/23   Page 4 of 10

| | | | |
|---|---|---|---|
| 12. | **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**<br><br>A Claim may be partly priority and partly nonpriority. For example, law limits the amount entitled to priority. | ☒ No<br><br>☐ Yes.   Check one:<br><br>☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).<br><br>☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).<br><br>☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).<br><br>☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).<br><br>☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).<br><br>☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies.<br><br>*Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment. | Amount entitled to priority<br><br>_____<br><br>_____<br><br>_____<br><br>_____<br><br>_____<br><br>_____ |
| 13. | **Is all or part of the claim pursuant to 11 U.S.C § 503(b)(9)?** | ☒ No<br><br>☐ Yes.  Indicate the amount of your claim arising from the value of any goods received by the debtor within 20 days before the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim. | _____ |

## Part 3:   Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

Check the appropriate box

☒ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date & time   04/13/2023 at 09:06 am PT
                          MM  /  DD  /  YYYY  HH  :  MM

/s/Patricia Trompeter
Signature

**Print the name of the person who is completing and signing this claim:**

Name          Patricia              Trompeter
              First Name   Middle Name   Last Name

Title         CEO

Company       Sphere 3D Corp
              Identify the corporate servicer as the company if the authorized agent is a servicer

Address       4 Greenwich Office Park   Suite 100
              Number  Street

              Greenwich    CT     6831
              City         State  ZIP Code

Contact phone

Email         patricia.trompeter@sphere3d.com

**ADDENDUM TO PROOF OF CLAIM OF**
**SPHERE 3D CORP. AGAINST**
**<u>CORE SCIENTIFIC OPERATING COMPANY, CASE NO. 22-90343 (DRJ)</u>**

1.   Sphere 3D Corp. ("<u>Sphere</u>" or the "<u>Claimant</u>") submits this addendum to its proof of claim (the "<u>Proof of Claim</u>") against Core Scientific Operating Company ("<u>Core</u>" and, together with its debtor affiliates, the "<u>Debtors</u>"). Claimant has its principal place of business at 4 Greenwich Office Park, Suite 100, Greenwich, CT 06831.

**<u>Background</u>**

2.   On December 21, 2022 (the "<u>Petition Date</u>"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of Texas (the "<u>Bankruptcy Court</u>"). The bankruptcy cases are being jointly administered under the lead Case No. 22-90341 (DRJ).

3.   On March 9, 2023, the Bankruptcy Court established an April 14, 2023 deadline for creditors to file proofs of claim for claims that arose prior to the Petition Date against the Debtors in these Chapter 11 cases.

**<u>Basis for Claim</u>**

**Background on Cryptocurrency Mining**

4.   Sphere is in the business of what is known in the crypto industry as "mining" for Bitcoin. Through mining, companies generate new Bitcoin for themselves and also earn revenues through transaction fees. To mine for Bitcoin, mining companies use purchased or leased "miners," which are sophisticated, high-capacity computers that run programs designed to support the network underlying Bitcoin.

5.   Mining companies frequently turn to third parties to host their miners. As a general matter, hosts will (in exchange for fees) provide hosting services for the miners, such as

warehouse space, electricity, security, internet access, and cooling.  Hosting space is finite and limits the number of miners a host can accommodate.

**Sphere's Claims Arising Under the Hosting Agreements**

6. Third-party non-debtor Gryphon Digital Mining, Inc. ("Gryphon"), as manager for Sphere, and Core entered into a Master Services Agreement dated September 12, 2021 (the "MSA") and an accompanying order dated October 5, 2021 ("Order #2") pursuant to which Core agreed to provide certain services, including colocation, hosting, and rack space for Sphere's miners.

7. Under Order #2, Core also expressly agreed that Gryphon could "sub-license, assign, delegate or transfer" any of "its rights . . . to Sphere" under the "[MSA]" or "Order [#]2 . . . without . . . prior written consent."  Gryphon, in fact, assigned its contractual rights under the MSA and Order #2 to Sphere pursuant to a Sub-License and Delegation Agreement dated October 5, 2021 (the "Sub-License Agreement").[1]

8. In the months that followed, and as called for by Order #2, Sphere delivered to Core $35,104,363 in cash deposits (collectively, the "Deposits") to be applied as "credit against future monthly invoices as they become due."  Core's billing department dealt directly with Sphere regarding the Deposits, and Sphere provided Core with detailed wire information and a letter from its auditors showing that the Deposits originated from Sphere.  Upon information and belief, Core has only drawn down approximately $720,650 through February 2023 in consideration for hosting services, meaning that $34,383,713 remained.

---

[1] The Sub-License Agreement and certain documents supporting the Claim (as defined below) are voluminous, contain proprietary business information, and/or may be subject to certain confidentiality requirements and, therefore, are not included with the Claim. On information and belief, copies of the Sub-License Agreement and relevant documents are in the possession of the Debtors.  Copies of the relevant documents will be provided upon request and in compliance with any confidentiality orders, agreements, or provisions.

9. Order #2 included a deployment schedule that, as written, called for incremental deployment of Sphere's miners to Core (e.g., 500 miners deployed at Core by the end of February 2022) and ultimately envisioned Core to host 60,000 of Sphere's miners by the end of November 2022. To date, however, Core has only hosted 519 of Sphere's miners.

10. Since executing Order #2, Core has failed to perform under the MSA and Order #2 by failing to abide by the deployment schedule as written, both in terms of timing and the absolute number of miners to be hosted. By way of illustration:

- In December 2021, 493 miners were supposed to be shipped to Core. Core, however, could not accommodate any of the miners due to lack of space.

- As written, the deployment schedule stated that Core could accommodate 500 miners as of February 2022. Although Sphere wished to send Core approximately 500 miners in February 2022, Core could only accept 297 miners at that time.

- On April 8, 2022, Sphere attempted to move 496 miners to Core. Core responded that it could not accommodate the units "until this summer sometime," as "April and May are tight deployment wise."

- Since May 2022, Core has been unwilling to accept any additional miners from Sphere.

11. Core's failure to abide by the deployment schedule was a material breach of the MSA and Order #2. Moreover, since at least May 2022, Core has refused to honor the contractual hosting rate set out in Order #2. Instead, Core has insisted it will only host additional Sphere miners at a much higher rate than the contract provides. This insistence constitutes a breach and repudiation of Order #2 and Sphere has suffered additional damages as a result, including increased alternative hosting fees and storage costs.

12. In addition, Core has breached its contractual obligations by installing and using hundreds of Sphere's miners for its own benefit. As noted, Core first received 297 of Sphere's miners in February 2022. Rather than hosting them for the benefit of Sphere, however, Core

inexplicably installed them as its own miners and used them to mine for Bitcoin for its own account.

13. On October 31, 2022, Sphere filed a demand for arbitration against Core asserting claims for repudiation of a contract, breach of contract, breach of implied covenant of good faith and fair dealing (in the alternative), unjust enrichment (in the alternative), conversion, and promissory estoppel. The arbitration has been stayed since the Petition Date. The claims and causes of action set forth in the arbitration demand are expressly incorporated herein.

14. As of the Petition Date, Core was, and remains, indebted to Sphere in an amount not less than $39,541,996.30 (the "Claim"). This Proof of Claim is filed in an unliquidated amount for any damages that are incapable of being calculated at this time including, but not limited to, the value of any Bitcoin that was mined and misappropriated by Core when it installed Sphere's miners as its own. At a minimum, Sphere has claims against Core for the following amounts:

- Hosting Deposits – $34,383,713.00
- Alternative Hosting Costs – $5,000,724.06
- Storage Fees – $157,559.24

**Reservation of Rights**

15. Core may be indebted to the Claimant for interest to the extent that such payment of interest is legally enforceable, and the Claimant expressly reserves its rights to seek payment from Core pursuant thereto.

16. In addition to other amounts stated herein, this Proof of Claim is filed in an unliquidated amount for (1) any and all losses and damages arising from Core's failure to satisfy its obligations to the Claimant including, but not limited to, consequential, expectation, and

reliance damages, and (2) any and all fees, including the fees and expenses of the Claimant's counsel and other agents, arising from Core's failure to satisfy its obligations to the Claimant.

17. The Claimant may have post-petition claims against the Debtors. The Claimant is not asserting these claims herein, as the sole purpose of this Proof of Claim is to assert its prepetition claims against the Debtors. By filing this Proof of Claim, the Claimant does not waive any of its post-petition claims against the Debtors and expressly reserves all of its rights in connection with such claims.

18. No part of the Claim has been paid and no cash or property is held by the Claimant for the Claim.

19. No judgment has been rendered on the Claim.

20. To the best of the Claimant's knowledge, the claims set forth herein are not subject to any valid set off or counterclaim by the Debtors. However, the Claimant expressly reserves and does not waive any setoff or recoupment rights it may possess.

21. This Claim is a general unsecured claim, except as it may be determined to be subject to setoff or recoupment, or otherwise determined to be an administrative, priority, or secured claim.

22. The Claimant expressly reserves all rights accruing to it and the filing of this Proof of Claim is not intended to be and shall not be construed as (a) an election of remedy or (b) a waiver or limitation of any rights of the Claimant.

23. This Proof of Claim is made without prejudice to the filing of additional proofs of claim with respect to any other indebtedness or liability of the Debtors to the Claimant.

24. Filing of this Proof of Claim is not: (a) a waiver or release of the Claimant's rights against any person, entity, or property; (b) a consent by the Claimant to the jurisdiction of the

Bankruptcy Court with respect to the subject matter of this Claim, any objections or other proceedings commenced with respect thereto, or any other proceedings commenced in this case or otherwise involving the Claimant; or (c) a waiver of the right to move to withdraw the reference or otherwise to challenge the jurisdiction of the Bankruptcy Court with respect to the subject matter of this Claim, any objection or other proceedings commenced with respect thereto, or any other proceeding commenced in this case against or otherwise involving the Claimant.

25. The Claimant expressly reserves the right to amend or supplement this Proof of Claim if the Claimant should deem it necessary and appropriate for any reason including, without limitation, (i) to provide an updated statement of amounts then due, (ii) in the event the MSA is rejected, pursuant to an order of the Bankruptcy Court, or (iii) for any other purpose for which a Proof of Claim filed in this case may be amended.

26. All notices to the Claimant should be sent to:

>   Pryor Cashman LLP
>   7 Times Square
>   New York, New York 10036-6569
>   Attn:     Seth H. Lieberman, Esq.
>             Matthew W. Silverman, Esq.
>   Telephone:  (212) 421-4100
>   Facsimile:  (212) 326-0806
>
>   -and-
>
>   Hunton Andrews Kurth LLP
>   600 Travis Street, Suite 4200
>   Houston, Texas 77002
>   Attn:     Timothy ("Tad") Davidson II, Esq.
>             Ashley L. Harper, Esq.
>   Telephone: (713) 220-4200
>   Facsimile:  (713) 220-4285