**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re:<br><br>CORE SCIENTIFIC, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 22-90341 (DRJ)<br><br>(Jointly Administered)<br><br>Re: D.I. 975, 1116<br><br>Hearing Date: September 5, 2023 at 3:30 PM CT |

**LEAD PLAINTIFF'S PRELIMINARY OBJECTION TO DISCLOSURE STATEMENT
OF THE DEBTOR, CORE SCIENTIFIC INC.**

**THE ROSEN LAW FIRM, P.A.**

Laurence Rosen
Phillip Kim (admitted pro hac vice)
Joshua Baker (admitted pro hac vice)
275 Madison Avenue, 40th Floor
New York, NY 10116
Phone: (212) 686-1060
Fax: (212) 202-3827
Email: lrosen@rosenlegal.com
Email: pkim@rosenlegal.com
Email: jbaker@rosenlegal.com

*Lead Counsel for Lead Plaintiff*

**COCHRAN LAW, PLLC**

Stuart L. Cochran
Texas Bar No.: 24027936
8140 Walnut Hill Ln., Suite 250
Dallas, Texas 75231
Telephone: (469) 333-3405
Facsimile: (469) 333-3406
stuart@scochranlaw.com

*Liaison Counsel for Lead Plaintiff*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions, VII, LLC (3198). The Debtors' corporate headquarters and service address is 210 Barton Springs Road, Suite 300, Austin, Texas 78704.

i

**THE SCHALL LAW FIRM**
Brian Schall
Rina Restaino
2049 Century Park East, Suite 2460
Los Angeles, CA 90067
Phone: (310) 301-3335
Fax: (213) 519-5876
Email: brian@schallfirm.com
Email: rina@schallfirm.com

*Additional Counsel for Lead Plaintiff*

Lead Plaintiff Morgan Hoffman and named plaintiffs Evan Achee and William J. Emanuel ("Plaintiffs") by and through their undersigned counsel, hereby preliminarily object to the Disclosure Statement for Amended Chapter 11 Plan of Core Scientific, Inc. ("Debtor" or "Core")[2] and Its Debtor Affiliates (the "Preliminary Objection"). Plaintiffs reserve their right to supplement, amend, or modify their Preliminary Objection based on, among other things, any new information or arguments presented or introduced by the Debtor or any other party. In support of this Preliminary Objection, Plaintiffs state as follows:

## FACTUAL BACKGROUND

1. Morgan Hoffman was appointed Lead Plaintiff in the pre-petition class action, *Pang v. Levitt, et al.*, No. 1:22-cv-01191-DAE (the "Securities Action") pending in the U.S. District Court for the Western District of Texas. On April 14, 2023, Morgan Hoffman, as Lead Plaintiff in the Securities Action, filed the class' proof of claim based on the Securities Action for $186,600,000. *See* Claim 49; D.I. 1080-2. On May 5, 2023, Morgan Hoffman and additional named plaintiffs Evan Achee and William J. Emanuel filed an amended complaint on behalf of the putative class. The Plaintiffs in the amended complaint explicitly reserved their right to amend their pleadings to add Core as a defendant after the conclusion of Core's bankruptcy proceedings. On August 1, 2023, Lead Plaintiff Morgan Hoffman filed an amended claim to reflect the amended complaint. *See* Claim 49.

2. The Securities Action alleges violations under the Sections 11 and 15 of the Securities Act of 1933 ("Securities Act"), Sections 10(b), 14(a), and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and rules 10b-5 and 14a-9 promulgated thereunder against certain of

---

[2] In January 2022, Core merged with Power & Digital Infrastructure Acquisition Corp. ("XPDI") and the company was renamed "Core Scientific, Inc."

1

Core's current and former officers and directors.[34] *Pang v. Levitt, et al.*, No. 1:22-cv-01191-DAE, D.I. 62 ¶ 2.

3.  The class is defined as: (a) all persons and entities that purchased or acquired the publicly traded common stock or warrants of Core or XPDI, or purchased call options or sold put options on XPDI or Core common stock, between January 3, 2022 and December 20, 2022, both dates inclusive ("Class Period"); and (b) all persons and entities who held the common stock of XPDI at the close of business on December 7, 2021, and were entitled to vote on the approval of the Merger (defined as the de-SPAC business combination between XPDI and Core) at the special meeting of XPDI stockholders on January 19, 2022. *Id.* ¶ 1.

4.  Excluded from the class are: (a) persons who suffered no compensable losses; and (b) Defendants; the present and former officers and directors of the Company at all relevant times; members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which any of the Defendants, or any person excluded under this subsection (b), has or had a majority ownership interest at any time. *Id.*

---

[3] The Defendants are: Core's former Chief Executive Officer ("CEO") and Chairman of Core's board of directors, Michael Levitt ("Levitt"), Core's former Chief Financial Officer ("CFO") Michael Trzupek ("Trzupek"), Core's CFO Denise Sterling ("Sterling"), Core's Chief Vision Officer and former Co-Chair of Core's board of directors Darin Feinstein ("Feinstein"), Core's former Chief Accounting Officer Brian Neville ("Neville"), Core's Board member Jarvis Hollingsworth ("Hollingsworth"), Core's co-founder and Board member Matt Minnis ("Minnis"), Core's Board member Stacie Olivares ("Olivares"), Core's Board member Kneeland Youngblood ("Youngblood"), Power & Digital Infrastructure Acquisition Corp.'s ("XPDI") CEO and Board member Patrick C. Eilers ("Eilers"), XPDI's Chair Theodore J. Brombach ("Brombach"), XPDI's Board member Paul Gaynor ("Gaynor"), XPDI's Board member Paul Dabbar ("Dabbar"), XPDI's Board member Colleen Sullivan ("Sullivan"), and XPDI's Board member Scott Widham ("Widham"). *Pang v. Levitt, et al.*, No. 1:22-cv-01191-DAE, D.I. 62 ¶¶ 32-48; *see also* D.I. 1116 at 51 n.23, n. 24.

5. As explained below, Plaintiffs, on behalf of themselves and the class, preliminary object to the Disclosure Statement: (a) is being submitted in support of a bankruptcy plan that is not confirmable; and (b) fails to provide adequate information.

## OBJECTION

6. The disclosure requirements set forth in Section 1125 of Bankruptcy Code are important, indeed fundamental, to the functioning of the bankruptcy process. *In re Coastal Plains, Inc.*, 179 F.3d 197, 208 (5th Cir. 1999) ("Viewed against the backdrop of the bankruptcy system and the ends it seeks to achieve, the importance of this disclosure duty cannot be overemphasized.") (citing cases); *see also Ryan Operations G. P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 362 (3d Cir. 1996) ("[D]isclosure requirements are crucial to the effective functioning of the Federal Bankruptcy System … [and] the importance of full and honest disclosure cannot be over stated.").

7. Section 1125 of the Bankruptcy Code serves the purpose of assisting creditors in negotiating with debtors over the terms of a plan. *See In re Coastal Plains, Inc.*, 179 F.3d at 208 ("The interests of both the creditors, who plan their actions in the bankruptcy proceeding on the basis of information supplied in the disclosure statements, and the bankruptcy court, which must decide whether to approve the plan of reorganization on the same basis, are impaired when the disclosure provided by the debtor is incomplete.") (quoting *Rosenshein v. Kleban,* 918 F.Supp. 98, 104 (S.D.N.Y. 1996)); *see also Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988) ("The importance of full disclosure is underlaid by the reliance placed upon the disclosure statement by the creditors and the court. Given this reliance, we cannot overemphasize the debtor's obligation to provide sufficient data to satisfy the Code standard of 'adequate information.' From the legislative history of § 1125 we discern that adequate information will be determined by the facts and circumstances of each case."); *Century Glove, Inc. v. First Am. Bank*

3

*of New York,* 860 F. 2d 94, 101-02 (3d Cir. 1988). The disclosure statement must describe all factors known to the plan proponent that may impact the success or failure of the proposals contained in the plan. *See e.g. In re Beltrami Enters., Inc.* 191 B.R. 303, 304 (Bankr. M.D. Pa. 1995) (citing cases); *In re Cardinal Congregate I,* 121 B.R. 760, 764-66 (Bankr. S.D. Ohio 1990) (citing cases).

8. Section 1125(a) increases the required disclosure necessary for a disclosure statement to contain "adequate information" which is defined as:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan … and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information[.] 11 U.S.C. § 1125(a).

9. This Court has substantial discretion in determining whether a disclosure statement provides "adequate information" as required by Section 1125 of the Bankruptcy Code. *See e.g. In re Texas Extrusion Corp.,* 844 F. 2d 1142, 1157 (5th Circuit 1988, *cert denied*, 488 U.S. 926 (1988) ("The determination of what is adequate information is subjective and made on a case by case basis. This determination is largely within the discretion of the bankruptcy court.") (citing cases).

10. The Disclosure Statement here fails to provide "adequate information" as defined by the Bankruptcy Code.

**The Disclosure Statement should conspicuously state that the Bankruptcy Plan will not release, discharge, or otherwise impair the claims bought in the Securities Action.**

11. "Section 523(a)(19) was amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 to indicate that ***debts for violations of the federal securities laws***

4

*are nondischargeable, irrespective of whether the federal judgment or order occurs 'before, on or after the date on which the petition was filed.'* Pub.L. 109-8, § 1404 (2005)."). *S.E.C. v. Sunbelt Dev. Corp.*, 2006 WL 519769, at *5 (W.D. La. Mar. 2, 2006) (emphasis added); *see also In re Dupree*, 336 B.R. 520, 526-28 (Bankr. M.D. Fla. 2005) ("Obviously, Congress intended to design a broad provision to except from bankruptcy discharge all securities fraud and other securities violations by 'wrongdoers.'") 531 ("11 U.S.C. § 523(a)(19) allows a securities claim to be prosecuted through final judgment, order or settlement agreement despite the filing of bankruptcy, and provides that such claim (or arbitration award) would be nondischargeable.") (citing *In re Weilein,* 328 B.R. 553 (Bankr. N.D. Iowa, 2005)).

12. Plaintiffs request the Disclosure Statement include the following language and remove any contradictory, confusing, or similar language in the Disclosure Statement and to whatever necessary extent in the Plan:

> THE PLAN WILL NOT RELEASE, DISCHARGE, OR OTHERWISE IMPAIR THE CLAIMS BOUGHT IN *PANG V. LEVITT, ET AL.*, NO. 1:22-CV-01191-DAE (THE "SECURITIES ACTION") PENDING IN THE U.S. DISTRICT COURT FOR THE WESTERN DISTRICT OF TEXAS.

**The non-consensual release of the Class claims against nondebtor third parties is improper.**

13. The Disclosure Statement, through citing the Plan, improperly includes broad, non-consensual nondebtor third party releases.[5]

---

[5] THE PLAN PROVIDES THAT THE FOLLOWING PARTIES ARE DEEMED TO GRANT THE RELEASES PROVIDED FOR THEREIN: (A) THE DEBTORS; (B) THE REORGANIZED DEBTORS; (C) WITH RESPECT TO EACH OF THE FOREGOING PERSONS IN CLAUSES (A) THROUGH (B), ALL RELATED PARTIES; (D) THE HOLDERS OF ALL CLAIMS OR INTERESTS THAT VOTE TO ACCEPT THE PLAN; (E) THE HOLDERS OF ALL CLAIMS OR INTERESTS WHOSE VOTE TO ACCEPT OR REJECT THE PLAN IS SOLICITED BUT THAT DO NOT VOTE EITHER TO ACCEPT OR TO REJECT THE PLAN AND DO NOT OPT OUT OF GRANTING THE RELEASES SET FORTH IN ARTICLE X OF THE PLAN; (F) THE HOLDERS OF ALL CLAIMS OR INTERESTS THAT VOTE, OR ARE DEEMED, TO REJECT THE PLAN

OR THAT ARE PRESUMED TO ACCEPT THE PLAN BUT DO NOT OPT OUT OF GRANTING THE RELEASES SET FORTH IN ARTICLE X OF THE PLAN; AND (G) THE HOLDERS OF ALL CLAIMS AND INTERESTS AND ALL OTHER BENEFICIAL OWNERS THAT WERE GIVEN NOTICE OF THE OPPORTUNITY TO OPT OUT OF GRANTING THE RELEASES SET FORTH IN ARTICLE X OF THE PLAN BUT DID NOT OPT OUT.

HOLDERS OF CLAIMS OR INTERESTS IN VOTING CLASSES (APRIL CONVERTIBLE NOTES SECURED CLAIMS, AUGUST CONVERTIBLE NOTES SECURED CLAIMS, MINER EQUIPMENT LENDER SECURED CLAIMS, M&M LIEN SECURED CLAIMS, SECURED MORTGAGE CLAIM, GENERAL UNSECURED CLAIMS, B. RILEY UNSECURED CLAIMS, SECTION 510(B) CLAIMS, AND EXISTING COMMON INTERESTS) HAVE RECEIVED A BALLOT THAT INCLUDES THE OPTION TO OPT OUT OF THE RELEASES CONTAINED IN ARTICLE (X) OF THE PLAN. HOLDERS OF CLAIMS AND INTERESTS IN NON-VOTING CLASSES (OTHER SECURED CLAIMS, PRIORITY NON-TAX CLAIMS, INTERCOMPANY CLAIMS, AND INTERCOMPANY INTERESTS) HAVE RECEIVED A RELEASE OPT-OUT FORM ATTACHED TO THEIR NOTICE OF NON-VOTING STATUS AND NOTICE OF RIGHT TO OPT OUT OF CERTAIN RELEASES. SEE EXHIBIT (B) FOR A DESCRIPTION OF THE RELEASES AND RELATED PROVISIONS.

\* \* \*

"*Related Parties*" means with respect to a Person, that Person's current and former Affiliates, and such Person's and *its current and former Affiliates' current and former directors, managers, officers, equity holders* (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, fiduciaries, trustees, advisory board members, financial advisors, partners, limited partners, general partners, attorneys, accountants, managed accounts or funds, management companies, fund advisors, investment bankers, consultants, representatives, and other professionals, and such Person's respective heirs, executors, estates, and nominees, each in their capacity as such.

**"Released Parties" means, collectively: (i) the Debtors; (ii) the Reorganized Debtors;** (iii) the Equity Committee and its members, solely in their capacity as such; (iv) the Backstop Parties; (v) B. Riley Commercial Capital, LLC; (vi) BRF Finance Co, LLC; (vii) the Settling Miner Equipment Lenders; (viii) Brown Corporation; (ix) Holliwood LLC; (x) Foundry; *and (xi) with respect to each of the foregoing Persons in clauses (ai) through (x), all current and former Related Parties.* Notwithstanding the foregoing, any Person that opts out of the releases set forth in section 10.6(b) of the Plan shall not be deemed a Released Party thereunder.

6

14. This broad language would effectively release the federal securities claim alleged in the Securities Action against nondebtor third parties Levitt, Trzupek, Sterling, Feinstein, Neville, Hollingsworth, Minnis, Olivares, Youngblood, Eilers, Brombach, Gaynor, Dabbar, Sullivan, and Widham. *See supra* n.2.

---

*"Releasing Parties"* means collectively, and in each case solely in their capacity as such, (i) the Debtors; (ii) the Reorganized Debtors; (iii) with respect to each of the foregoing Persons in clauses (i) through (ii), all Related Parties; (iv) the Holders of all Claims or Interests that vote to accept the Plan; (v) the Holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but that do not vote either to accept or to reject the Plan and do not opt out of granting the releases set forth herein; (vi) the Holders of all Claims or Interests that vote, or are deemed, to reject the Plan or that are presumed to accept the Plan but do not opt out of granting the releases set forth herein; and (vii) the Holders of all Claims and Interests and all Other Beneficial Owners that were given notice of the opportunity to opt out of granting the releases set forth herein but did not opt out.

\*   \*   \*

Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, except as otherwise provided in the Plan or in the Confirmation Order, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, ***each Releasing Party, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released, and discharged the Debtors, the Reorganized Debtors, and the Released Parties from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including*** any derivative Claims or Causes of Action asserted or that may be asserted on behalf of the Debtors or their Estates, that such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, including any Claims or Causes of Action based on or relating to, or in any manner arising from, in whole or in part, the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors (***which includes, for the avoidance of doubt, all claims and Causes of Action asserted or assertable in the Securities Class Action***) …

D.I. 1116 at 5-6, 137, and 140 (emphasis added).

7

15. The Fifth Circuit is clear that the Debtor cannot non-consensually release third party claims. *In re Pac. Lumber Co.*, 584 F.3d 229, 252 (5th Cir. 2009) ("In a variety of contexts, this court has held that Section 524(e) only releases the debtor, not co-liable third parties. [] These cases seem broadly to foreclose non-consensual non-debtor releases and permanent injunctions.") (citing *In re Coho Resources, Inc.,* 345 F.3d 338, 342 (5th Cir. 2003); *Hall v. National Gypsum Co.,* 105 F.3d 225, 229 (5th Cir. 1997); *Matter of Edgeworth,* 993 F.2d 51, 53–54 (5th Cir. 1993); *Feld v. Zale Corporation,* 62 F.3d 746 (5th Cir. 1995)) (footnote omitted).

16. Plaintiffs request the Disclosure Statement include the following language and remove any contradictory, confusing, or similar language in the Disclosure Statement and to whatever necessary extent in the Plan:

> AS LEAD PLAINTIFF IN THE SECURITIES ACTION DOES NOT CONSENT TO ANY THIRD PARTY RELEASE, NO THIRD PARTY RELEASE CONTEMPLATED HEREIN SHALL APPLY TO THE CLASS (SUBJECT TO CHANGE AS MAY BE MODIFIED BY THE DISTRICT COURT) IN THE SECURITIES ACTION.

**The Disclosure Statement fails to provide a reasonable opt-out mechanism that would make the third party releases consensual for Class members—including those who are *not* otherwise impacted by this bankruptcy process.**

17. Debtor, and its third party releasees, seek to contravene Fifth Circuit law regarding non-consensual third party releases by purportedly including an "opt-out" procedure. *In re Chassix Holdings, Inc.*, 533 B.R. 64, 81 (Bankr. S.D.N.Y. 2015) ("***Charging all inactive creditors with full knowledge of the scope and implications of the proposed third party releases, and implying a 'consent' to the third party releases based on the creditors' inaction, is simply not realistic or fair, and would stretch the meaning of 'consent' beyond the breaking point***.") (emphasis added).

18. Further, class members here have no duty to speak. *See In re SunEdison, Inc.*, 576 B.R. 453, 460-61 (Bankr. S.D.N.Y. 2017) ("***The Debtors' argument that the Non-Voting Releasors' silence should be deemed their consent to the Release is not persuasive because the Debtors have not identified the source of their duty to speak.*** … Accordingly, the Court concludes that the Non-Voting Releasors did not consent to the Release.") (emphasis added).

19. Worse yet, it is not clear that all, or even most, potential class members in the Securities Action would receive such notice, much less have a real opportunity to opt-out, which would create unjust inequities amongst the class, if enforced. Specifically, many class members likely sold all relevant securities prior to the bankruptcy, meaning they would not be included in any notice procedure under the Disclosure Statement. *See In re Emerge Energy Servs. LP,* 2019 WL 7634308, at *18 (Bankr. D. Del. Dec. 5, 2019) ("***it cannot be said with certainty that those failing to return a ballot or Opt-Out Form did so intentionally to give the third-party release***, and that is what the Court must find under the law to approve a third-party release absent the satisfaction of the Continental standard.") (citing cases) (emphasis added); *In re Washington Mut., Inc.*, 442 B.R. 314, 355 (Bankr. D. Del. 2011) ("the Court concludes that the opt out mechanism is not sufficient to support the third party releases anyway, particularly with respect to parties who do not return a ballot (***or are not entitled to vote in the first place***). ***Failing to return a ballot is not a sufficient manifestation of consent to a third party release.*** [] Therefore, the Court concludes that any third party release is effective only with respect to those who affirmatively consent to it by voting in favor of the Plan and not opting out of the third party releases.") (emphasis added).

20. Moreover, Debtor's counsel has stated it would seek to disallow Lead Plaintiff to opt-out on behalf of the class which means Debtor would seek to block Lead Plaintiff from acting on behalf of the class pursuant to the Private Securities Litigation Reform Act of 1995 (the

9

"PSLRA") (15 U.S.C. §§ 77z–1 and 78u–4) and Judge Yeakel's Lead Plaintiff order in the Securities Action. *See Pang v. Levitt, et al.*, No. 1:22-cv-01191-DAE, D.I. 44 at 3 ("The Act instructs the court to 'appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be the most capable of adequately representing the interests of class members.'") (quoting 15 U.S.C. § 78u-4(a)(3)(B)(I))).

21. Finally, the Disclosure Statement fails to define consent or consenting parties and therefore no consent can clearly be agreed upon or shown. *See In re Chassix Holdings, Inc.*, 533 B.R. at 82 (discussing and replacing a definition of "Consenting Creditors"). While not mentioned in the Disclosure Statement, the amended Plan merely mentions a definition of "Consenting Creditors" as defined in the terminated Restructuring Support Agreement, dated December 22, 2022. D.I. 1115.

22. Plaintiffs request the Disclosure Statement include the following language and remove any contradictory, confusing, or similar language in the Disclosure Statement and to whatever necessary extent in the Plan:

> AS LEAD PLAINTIFF IN THE SECURITIES ACTION DOES NOT CONSENT TO ANY THIRD PARTY RELEASE, NO THIRD PARTY RELEASE CONTEMPLATED HEREIN SHALL APPLY TO THE CLASS (SUBJECT TO CHANGE AS MAY BE MODIFIED BY THE DISTRICT COURT) IN THE SECURITIES ACTION.

**The Disclosure Statement fails to provide any justification, reason, support, necessity, or similar to support any (non-consensual) third party releases.**

23. Debtor fails to provide *any* reason justifying the inclusion of these broad nondebtor third party releases—which is required by out-of-circuit courts where such third party releases can be non-consensual. *See In re Wool Growers Cent. Storage Co.*, 371 B.R. 768, 777 (Bankr. N.D. Tex. 2007) ("Some courts have allowed non-consensual nondebtor releases provided certain factors

were satisfied.") (citing *In re Master Mortgage Inv. Fund, Inc.,* 168 B.R. 930, 934 (Bankr. W.D. Mo. 1994)).

24. In the Fifth Circuit, even where releases are consensual (they are not here), nondebtor third party releases, among other things, "are ***given in exchange for and are supported by fair, sufficient, and adequate consideration provided by each and all of the parties providing such releases***." *In re Lincolnshire Campus, LLC*, 441 B.R. 524, 533 (Bankr. N.D. Tex. 2010). No consideration is provided for the broad third party releases mentioned in the Disclosure Statement.

25. There are no reasons given for *any* of the laundry list of nondebtor third parties Debtor seeks to absolve of claims under the federal securities laws in the pre-petition Securities Action. Indeed, the Disclosure Statement specifies that the Securities Action is covered by the broad nondebtor third party releases multiple times but fails to give *any* reason for these extralegal broad nondebtor third party releases. *See* 11 U.S.C. § 523(a)(19).

26. Indeed, Plaintiffs' counsel is unaware of any authorities or law that allows for similar broad non-consensual plan releases which benefit nondebtor third parties with no consideration. This is true even in the context of many creditors purportedly receiving a full recovery on the Effective Date.

27. Plaintiffs request the Disclosure Statement include the following language and remove any contradictory, confusing, or similar language in the Disclosure Statement and to whatever necessary extent in the Plan:

> AS LEAD PLAINTIFF IN THE SECURITIES ACTION DOES NOT CONSENT TO ANY THIRD PARTY RELEASE, NO THIRD PARTY RELEASE CONTEMPLATED HEREIN SHALL APPLY TO THE CLASS (SUBJECT TO CHANGE AS MAY BE MODIFIED BY THE DISTRICT COURT) IN THE SECURITIES ACTION.

**Plaintiffs should be permitted to maintain causes of action against Debtor to the extent of available insurance.**

28. The Disclosure Statement should indicate that Plaintiffs have the right to preserve their causes of action against Debtor to the extent of available insurance. 11 U.S.C. § 524(e); *see Matter of Edgeworth*, 993 F.2d at 54 (holding that a bankruptcy plan cannot enjoin a creditor from pursuing a suit against the debtor to recover against the debtor's insurance); *In re Jet Florida Systems, Inc.*, 883 F.2d 970, 973-76 (11th Cir. 1989) ("Section 524(e) was intended for the benefit of the debtor but was not meant to affect the liability of third parties or *to prevent establishing such liability* through whatever means required") (quoting 3 R. Babitt, A. Herzog, R. Mabey, H. Novikoff, & M. Sheinfeld, Collier on Bankruptcy ¶ 524.01 at 524-16 (15th ed. 1987)) (emphasis in original) 976 (plaintiff may proceed against debtor to establish liability as a prerequisite to recover from insurer); *see also In re Gafford*, 2014 WL 689074, at *3 (Bankr. N.D. Ga. Feb. 4, 2014) (allowing receiver of bank to sue bankrupt officer to the limit of bankrupt officer's insurance coverage; "a creditor may establish the debtor's nominal liability for a claim solely for the purpose of collecting the debt from a third party, such as an insurer or guarantor.") (citing cases); *In re Ruebush*, 2006 WL 1635696, at *1, 3 (W.D. La. June 8, 2006).

29. Similarly, when a class action is filed against a company that later files for bankruptcy, the confirmation plan will often expressly provide that the class action plaintiffs can pursue a claim to the extent of the insurance. *See, e.g.*, *In re ShengdaTech, Inc.*, Case No. 11-52649 (Bank. D. Nev.), D.I. 539 at ¶¶ 1.65, 1.104, 6.3, 11.5; *see also Sosebee v. Steadfast Ins. Co.*, 701 F.3d 1012, 1024 (5th Cir. 2012) ("Because liability insurance proceeds are generally not property of the bankruptcy estate, if a direct action claimant succeeds in obtaining a judgment against an insurer, the claimant recovers from the insurer directly rather than from the bankruptcy estate."); *In*

*re Ruebush,* 2006 WL 1635696, at *3 ("The Bankruptcy Code should not be construed to place unnecessary procedural obstacles in the path of claimants seeking to proceed against third parties who share liability with the debtor."); *In re Louisiana World Exposition, Inc.*, 832 F.2d 1391, 1399, 1401 (5th Cir. 1987) ("The question is not who owns the policies, but who owns the liability proceeds. … we determine that the *liability proceeds,* which belong only to the directors and officers, are not part of the estate") (emphasis in original).

30. Plaintiffs request the Disclosure Statement include the following language and remove any contradictory, confusing, or similar language in the Disclosure Statement and to whatever necessary extent in the Plan:

> LEAD PLAINTIFF AND THE CLASS IN THE SECURITIES ACTION ARE PERMITTED TO MAINTAIN CAUSES OF ACTION AGAINST THE DEBTOR TO THE EXTENT OF AVAILABLE INSURANCE.

## **RESERVATION OF RIGHTS**

31. Plaintiffs reserve their right to supplement, amend, or modify their Preliminary Objection based on, among other things, any new information or arguments presented or introduced by the Debtor or any other party.

## **CONCLUSION**

For the reasons stated above, Plaintiffs respectfully request that the Court deny Debtor's request to approve the disclosure statement.

Dated: August 10, 2023

**COCHRAN LAW, PLLC**

*/s/ Stuart L. Cochran*
Stuart L. Cochran
Texas Bar No.: 24027936
8140 Walnut Hill Ln., Suite 250
Dallas, Texas 75231
Telephone: (469) 333-3405
Facsimile: (469) 333-3406

stuart@scochranlaw.com

*Liaison Counsel for Lead Plaintiff*

**THE ROSEN LAW FIRM, P.A.**
Laurence Rosen
Phillip Kim (admitted pro hac vice)
Joshua Baker (admitted pro hac vice)
275 Madison Avenue, 40th Floor
New York, NY 10116
Phone: (212) 686-1060
Fax: (212) 202-3827
Email: lrosen@rosenlegal.com
Email: pkim@rosenlegal.com
Email: jbaker@rosenlegal.com

*Lead Counsel for Lead Plaintiff*

**THE SCHALL LAW FIRM**
Brian Schall
Rina Restaino
2049 Century Park East, Suite 2460
Los Angeles, CA 90067
Phone: (310) 301-3335
Fax: (213) 519-5876
Email: brian@schallfirm.com
Email: rina@schallfirm.com

*Additional Counsel for Lead Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of August 2023, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/ Stuart L. Cochran
Stuart L. Cochran

14