## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| | § | |
| In re: | § | **Chapter 11** |
| | § | |
| **CORE SCIENTIFIC, INC.,** *et al.,* | § | **Case No. 22-90341 (DRJ)** |
| | § | |
| | § | **(Jointly Administered)** |
| **Debtors.**[1] | § | |
| | § | |

### DEBTORS' MOTION FOR ORDER APPROVING
### (I) GLOBAL SETTLEMENT BETWEEN DEBTORS AND HARPER
### CONSTRUCTION COMPANY, INC. AND (II) GRANTING RELATED RELIEF

> **IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING.  UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE ELECTRONICALLY AT HTTPS://ECF.TXSB.USCOURTS.GOV/ WITHIN TWENTY-ONE DAYS FROM THE DATE THIS MOTION WAS FILED.  IF YOU DO NOT HAVE ELECTRONIC FILING PRIVILEGES, YOU MUST FILE A WRITTEN OBJECTION THAT IS ACTUALLY RECEIVED BY THE CLERK WITHIN TWENTY-ONE DAYS FROM THE DATE THIS MOTION WAS FILED. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

Core Scientific, Inc. ("**Core**") and its debtor affiliates in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"), hereby submit this motion (the "**Motion**"), pursuant to sections 105(a), 362(d), and 363 of chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), rule 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and rule 9013 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Local Rules**"), the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions, VII, LLC (3198).  The Debtors' corporate headquarters and service address is 210 Barton Springs Road, Suite 300, Austin, Texas 78704.

Debtors request entry of an order, substantially in the form attached hereto as **Exhibit 1** (the "**Proposed Order**"), (i) authorizing the Debtors' entry into a global settlement between the Debtors and Harper Construction Company, Inc. ("**Harper**" and together with the Debtors, collectively, the "**Parties**" and, each, a "**Party**"), on the terms set forth and agreed to by the Parties on the *Settlement Term Sheet* (the "**Term Sheet**") attached hereto as **Exhibit 2**; (ii) approving the settlement on the terms set forth in the Term Sheet; and (iii) granting related relief.

## Jurisdiction

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

2.      On December 21, 2022 (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary case under the Bankruptcy Code.  The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.      The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b) and Bankruptcy Local Rule 1015-1.  On January 9, 2023, the United States Trustee for Region 7 (the "**U.S. Trustee**") appointed an official committee of unsecured creditors.  On March 23, 2023, the U.S. Trustee appointed an official committee of equity security holders.  No trustee or examiner has been appointed in these chapter 11 cases.

I.      **The Parties' Business Relationship**

4.      The Debtors are one of the largest blockchain infrastructure, hosting provider, and digital asset mining companies in North America, with fully operational data centers in Texas, Kentucky, North Carolina, North Dakota, and Georgia.  The Debtors provide hosting solutions for third parties and also operate their own digital asset mining machines.

5.      Harper is a construction general contractor that provides pre-construction, construction, program management, design development, interior design management, inspection, and quality control services.

6.      Prior to the Petition Date, the Debtors began developing a data-center facility in Muskogee, Oklahoma (the "**Muskogee Facility**").  On April 8, 2022, the Debtors entered into that certain revised DBIA Document No. 520 Standard Form of Agreement Between Owner and Designed-Builder with Harper (the "**Harper Pre-Petition Agreement**") for Harper to provide general contracting services to complete the development and construction of the physical infrastructure at the Muskogee Facility.  Pursuant to the Harper Pre-Petition Agreement, Harper (itself and through various Subcontractors[2] that Harper engaged) began developing and constructing the physical infrastructure at the Muskogee Facility.

7.      In addition, on February 10, 2023, the Debtors entered into that certain AIA Document A105-2017 Standard Short Form of Agreement with Harper (the "**Harper Post-Petition Agreement**" and together with the Harper Pre-Petition Agreement, the "**Harper Agreements**"), pursuant to which Harper has been providing certain site maintenance, security, and goods storage services for the Muskogee Facility.

---

[2] As defined herein.

8.      In connection with the Harper Pre-Petition Agreement, Harper has asserted prepetition and postpetition claims (such claims and any other claims that may be asserted, the "**Harper Claims**") against the Debtors, including, without limitation, the claim asserted in that certain Proof of Claim No. 437 in the total asserted amount of $20,738,602, including a $9,787,794 prepetition secured claim, $368,600 postpetition secured claim, and a $10,582,208 unsecured claim.  On October 31, 2022, Harper filed liens (such liens, the "**Harper Liens**") against certain of the Debtors' assets, including, without limitation, the mechanics' liens against the Debtors' Muskogee Facility, set forth on __Annex A__ to the Proposed Order.  On February 22, 2023, Harper filed a *Notice of Perfection of Mechanic's and Materialman's Lien of Harper Construction Company, Inc. pursuant to 11 U.S.C. § 546(b)* (Docket No. 547).

9.      Additionally, certain subcontractors and sub-subcontractors of Harper (collectively, the "**Subcontractors**" and, each, individually, a "**Subcontractor**") have asserted prepetition and postpetition claims (such claims, the "**Sub Claims**" and, together with the Harper Claims, the "**Claims**") against the Debtors, including, without limitation, Proofs of Claims Nos. 374 and 378.  The Subcontractors have also filed liens against certain of the Debtors' assets (such liens, the "**Sub Liens**" and, together with the Harper Liens, the "**Liens**"), including, without limitation, the mechanics' liens against the Debtors' Muskogee Facility set forth on __Annex B__ to the Proposed Order.

## II.    The Harper Settlement

10.     After engaging in extensive negotiations, the Debtors and Harper reached a global settlement (the "**Harper Settlement**"), memorialized in the binding Term Sheet, dated August 21, 2023, subject to this Court's approval, with terms set forth in the Proposed Order.  The Harper Settlement resolves all issues and claims between the Debtors and Harper.  For the avoidance of doubt, pursuant to the Harper Settlement, subject to the conditions herein, Harper

4

agrees to release the Harper Claims and any and all liens (including the Harper Liens) and other Claims (as defined in the Bankruptcy Code) against the Debtors, including, without limitation, for any and all obligations, liabilities, duties and damages of the Debtors, whether or not expressly memorialized in the Harper Settlement.

11.     The principal terms of the Harper Settlement are as follows:

- Immediately upon the entry of the Proposed Order,

  - the Harper Claims shall be deemed finally and fully paid, satisfied, released and expunged (including but not limited to Proof of Claim No. 437), and Harper shall cooperate with the Debtors and take all reasonable steps necessary to obtain release of the Sub Claims, including supporting any objections to the Sub Claims filed by the Debtors;

  - the Parties shall each grant a complete and final release of all claims against each other and covenant not to sue, in each case, in favor of the other Party;

  - except for the Harper Post-Petition Agreement, any and all contracts and outstanding purchase orders between Harper and the Debtors, including the Harper Pre-Petition Agreement, are rejected and Harper shall not have claims for rejection damages based on such termination (such contracts, the "**Rejected Contracts**"); and

  - the Debtors shall have no further interest, if any, in any goods, if any, which remain in the possession of any Subcontractor and which have not been paid for by the Debtors.

- Within five (5) calendar days after entry of the Proposed Order,

  - the Debtors shall make a cash payment to Harper in the aggregate amount of $1,500,000.00 (the "**Initial Settlement Payment**");

  - the Debtors shall deliver to Harper a duly executed promissory note (the "**Note**") in the principal amount of $4,678,388.00;

    - the Note will bear an interest rate of 5% per annum, payable monthly for a term of thirty (30) months, and be fully amortized; the first payment date shall occur, and the interest shall begin accruing, on the date that is forty-five (45) calendar days following the date on which a plan of reorganization filed by the Debtors and its affiliates is confirmed by entry of an order of this Court (the "**Emergence Date**");

- the Debtors shall have the right, exercisable at any time and from time to time, to voluntarily prepay the Note in whole or in part, and any such prepayment shall be without any penalty or fees. Any prepayment of the Note shall be immediately applied toward principal, be applied in inverse order of maturity and shall not extend or postpone the due dates of the monthly installments due under the Note; and

- An "**Event of Default**" shall occur if the Debtors fail to pay any monthly installment due under the Note on the payment date when such monthly installment becomes due, and such failure continues for sixty (60) calendar days after Harper gives written notice thereof to the Debtors. Unless and until an Event of Default occurs, Harper shall be barred from foreclosing or otherwise enforcing the Harper Liens or otherwise taking adverse action against the Debtors or any of the Debtors' assets (including the Muskogee Facility).

o Harper shall deliver to the Debtors final unconditional lien waivers and releases of all the Sub Liens for all work performed at the Muskogee Facility and all goods, labor and materials supplied to, for or in connection with the Debtors or the Muskogee Facility, duly executed by each Subcontractor, in form and substance reasonably acceptable to the Debtors and in recordable form;

o the Sub Liens shall be fully and finally released, extinguished and discharged;

o that certain Rider Adding Additional Obligee, dated May 10, 2022, by Gaylor Electric, Inc. d/b/a Gaylor, Inc. and Liberty Mutual Insurance Company in favor of the Debtors with respect to Payment and Performance Bond No. 014246826 shall terminate, and the Debtors shall have no further interest in or right to Payment and Performance Bond No. 014246826;

o Harper shall transfer to the Debtors, and the Debtors shall assume from Harper, that certain Oklahoma Department of Environmental Quality Authorization to Discharge Stormwater under the OPDES Construction General Permit OKR10 under Authorization No. OKR1033128 made in favor of Harper Construction Company, Inc. for the property located at Core Scientific Site, 1525 W Smith Ferry Road, Muskogee, OK 74401 (the "**Environmental Permit**");

o Harper shall deliver to the Debtors written agreements from the counterparties to each of the agreements set forth on **Annex C** to the Proposed Order (the "**Transferred Agreements**") consenting to the assignment of the applicable Transferred Agreement to Core and, upon receipt of such consents, Harper shall assign to the Debtors, and the Debtors shall assume from Harper, all right, title and interest of Harper in and to the Transferred Agreements, in the form attached as **Annex D** to the Proposed Order; provided that the Debtors shall be solely responsible for the performance of the obligations of Harper under the Transferred Agreements that become due from and after the date of such assignment, solely to the extent relating to facts, occurrences or other

6

circumstances first arising after such assignment, and the Debtors shall assume no other liabilities or obligations of any type whatsoever; and

    o   Harper shall be entitled to the Harper Liens, which shall only secure payment of the principal amount of the Note then outstanding.

- Within fifteen (15) calendar days of the Emergence Date, the Debtors shall make a cash payment to Harper in the aggregate amount of $445,636.00 (the "**Additional Settlement Payment**").

- Within five (5) calendar days following delivery of the Additional Settlement Payment to Harper, Harper shall deliver to the Debtors a partial unconditional lien waiver and release of the Harper Liens in form and substance reasonably acceptable to the Debtors, duly executed by Harper, and in recordable form, which lien waivers shall provide that the maximum amount of the Harper Liens outstanding is $3,000,000.00.

- Within five (5) calendar days following the payment in full of the Note, Harper shall deliver to the Debtors a final unconditional lien waiver and release of the Harper Liens for all work performed at the Muskogee Facility and all goods, labor and materials supplied to, for or in connection with the Debtors or the Muskogee Facility, in form and substance reasonably acceptable to the Debtors, duly executed by Harper, and in recordable form.

- Subject to the terms and conditions set forth below, Harper shall have a right of first offer to act as the general contractor for the construction and development of the Muskogee Facility (the "**Right of First Offer**"):

    o   Until the earlier to occur of (i) the date which is twenty-four (24) months after the date of entry of the Proposed Order and (ii) the date on which the Debtors no longer directly and solely own the entire Muskogee Facility (the earlier of (i) and (ii), the "**ROFO End Date**"), if the Debtors desire to engage a general contractor  (a "**General Contractor**") to begin construction and development of the Muskogee Facility within twenty-four (24) months following the date of the entry of the Proposed Order, then the Debtors shall deliver notice (the "**Trigger Notice**") (which Trigger Notice may be by e-mail to scm@harperconstruction.com) to Harper stating that it desires to engage a General Contractor setting forth the material terms and conditions of such proposed general contractor agreement (the "**Proposed GC Agreement**"), but excluding the contract price.

    o   If the Debtors give Harper a Trigger Notice, then Harper may elect in its sole discretion to make an offer to act as the General Contractor for a proposed contract price not to exceed the then-current market contract price (the "**GC Offer Price**") and otherwise on the same terms and conditions set forth in the Proposed GC Agreement.  Such election shall be made by written notice (the "**Election Notice**") (which notice may be by reply e-mail) from Harper to the Debtors within five (5) calendar days after the giving of the Trigger Notice

7

(the "**Contract Offer Period**").   Within twenty-five (25) calendar days following delivery of Harper's Election Notice, Harper shall deliver to the Debtors a fully executed original counterpart of the Proposed GC Agreement with the GC Offer Price filled in as the proposed contract price.

- o  The Debtors may accept the offer made by Harper (it being agreed that the Debtors shall be deemed to have rejected the offer if it fails to accept the Election Notice in writing within ten (10) calendar days after receipt thereof), by providing written notice thereof to Harper, and in which case Harper shall proceed to act as the General Contractor in accordance with the terms and conditions set forth in the Proposed GC Agreement.

- o  If the Debtors reject (or are deemed to have rejected) the offer contained in the Election Notice or Harper shall fail to deliver an Election Notice within the Contract Offer Period (in which event it shall be deemed to have declined its right to do so), the Debtors shall have the full power and authority to engage an alternative General Contractor on any such terms and conditions which the Debtors are willing to accept thereafter, provided that in the case of rejection (or deemed rejection) by the Debtors of the offer contained in the Election Notice, any engagement of an alternative General Contractor prior to the ROFO End Date shall be for a contract price not to exceed the GC Offer Price and otherwise on substantially the same overall economic terms set forth in the Proposed GC Agreement.

- The Debtors shall remit payment directly to Harper in the ordinary course of business for a post-petition charge of $54,364.00 incurred by Harper in connection with the Muskogee Facility's state fire permit (the "**Permit Reimbursement Payment**").

- The Harper Post-Petition Agreement shall terminate on September 30, 2023, and no damages or other fees shall be payable in connection with such termination. The Debtors shall remit payment for all services rendered under the Harper Post-Petition Agreement directly to Harper in the ordinary course of business.

## **Relief Requested Should Be Granted**

I.   **The Harper Settlement Is Fair, Reasonable, and in the Best Interest of the Debtors' Estates**

12.   Bankruptcy Rule 9019(a) provides that "[o]n motion by the [debtors in possession] and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).  Further, pursuant to Bankruptcy Rule 9019(a), a bankruptcy court may approve a compromise or settlement so long as the proposed settlement is fair, reasonable, and in the best interests of the estate.  *See Off. Comm. of Unsecured Creditors v. Moeller (In re Age*

*Refin.,Inc.*), 801 F.3d 530, 540 (5th Cir. 2015).  Ultimately, approval of a compromise is within the discretion of the bankruptcy court.  *See United States v. AWECO, Inc. (In re AWECO, Inc.)*, 725 F.2d 293, 297 (5th Cir. 1984); *Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 602 (5th Cir. 1980) (citations omitted) (decided under the Bankruptcy Act).  Settlements are considered a "normal part of the process of reorganization" and a "desirable and wise method[] of bringing to a close proceedings otherwise lengthy, complicated, and costly."  *Rivercity*, 624 F.2d at 602–03 (citing *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424–25 (1968)).

13.     The Fifth Circuit has established a three-factor balancing test under which bankruptcy courts analyze proposed settlements.  *Id.*  The factors courts consider are: "(1) the probability of success in litigating the claim subject to settlement, with due consideration for the uncertainty in fact and law; (2) the complexity and likely duration of litigation and any attendant expense, inconvenience, and delay; and (3) all other factors bearing on the wisdom of the compromise."  *See Age Refin.*, 801 F.3d at 540 (internal citations omitted).

14.     Under the rubric of the third factor, the Fifth Circuit has specified two additional factors that bear on a decision to approve a proposed settlement.  First, the Court should consider "the paramount interest of creditors with proper deference to their reasonable views."  *Id.*; *Conn. Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortg. Corp.)*, 68 F.3d 914, 917 (5th Cir. 1995).  Second, the Court should consider the "extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion."  *Age Refin.*, 801 F.3d at 540; *Foster Mortg.*, 68 F.3d at 918 (citations omitted).

15.     Generally, the role of the bankruptcy court is not to decide the issues in dispute when evaluating a settlement.  *Watts v. Williams*, 154 B.R. 56, 59 (S.D. Tex. 1993).  Rather,

the court should determine whether the settlement as a whole is fair and equitable. *Protective Comm. for Indep. S'holders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968).

16.     The Debtors bear the burden of establishing that the balance of the above factors leads to a fair and equitable compromise vis-à-vis the Harper Settlement. *In re Allied Properties, LLC*, 2007 WL 1849017, at *4 (Bankr. S.D. Tex. June 25, 2007) (citing *In re Lawrence & Erausquin, Inc.*, 124 B.R. 37, 38 (Bankr. N.D. Ohio 1990)); *see also In re GHR Companies, Inc.*, 50 B.R. 925, 931 (Bankr. D. Mass. 1985). "The burden is not high;" rather, the Debtors "***need only show that [their] decision falls within the 'range of reasonable litigation alternatives.'***" *In re Allied Properties, LLC*, 2007 WL 1849017, at *4 (emphasis added) (citing *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983)); *see also Cook v. Waldron*, 2006 WL 1007489 at *4 (S.D. Tex. Apr. 18, 2006).

17.     Here, weighing the foregoing factors demonstrates that the Harper Settlement is reasonable and supports finding that the Debtors' entry into the Harper Settlement is in the best interest of creditors and other stakeholders.

18.     First, the likelihood of success of litigating against the Harper Claims is uncertain.  What is not uncertain, is that the litigation would likely require the expenditure of significant funds and cause substantial, detrimental impact to the Debtors.  Further, if Harper were to succeed on its claim, the Debtors would be liable for a much larger sum than the sum agreed to be paid by the Debtors pursuant to the Harper Settlement, including the Initial Settlement Payment, the Additional Settlement Payment, and payment of the Note.  Indeed, the Harper Settlement provides the Debtors with a discount of approximately 32% of the face amount of the asserted Harper Claims. Having the benefit of certainty and prior agreement between the Debtors and Harper at an amount significantly lower than the claims asserted by Harper as well as paying the Harper Claims partially pursuant to the Note over a 30-month term are preferable to what could

otherwise be costly and distracting litigation that would harm the Debtors' estates.  Under the

Harper Settlement, Harper also agrees to (i) obtain and deliver releases of all the Sub Liens and

(ii) support the Debtors in any objections filed to the Sub Claims, which will benefit the Debtors.

19.     Second, the Settlement Agreement is also the product of good-faith, arm's-

length bargaining between the Debtors and Harper, each of which were represented by counsel,

and no party has asserted that the Harper Settlement was the product of fraud or collusion.

20.     Third, the Harper Settlement is reasonable and is in the best interests of the

Debtors' estates.  Pursuant to the Harper Settlement, the Debtors will reduce the claims pool by

satisfying the Harper Claims (a large secured claim and unsecured claim against the Debtors'

estates) at a substantial discount, with a limited cash Initial Settlement Payment, Additional

Settlement Payment, and the Note paid out over 30 months.  As a result, Harper will release the

Debtors from the Harper Claims and any and all future claims arising from the Debtors' rejection

of the Harper Pre-Petition Agreement.

21.     Accordingly, the Debtors respectfully submit that the Court should approve

the Harper Settlement based upon the factors considered by courts in the Fifth Circuit.

## II.     The Debtors' Entry into the Harper Settlement Is a Reasonable Exercise of Debtors' Sound Business Judgment

22.     Section 363(b)(1) of the Bankruptcy Code authorizes a debtor in possession

to "use, sell, or lease, other than in the ordinary course of business, property of the estate," after

notice and a hearing.  It is well-established in this jurisdiction that a debtor may use property of

the estate outside the ordinary course of business under this provision if there is a good business

reason for doing so.  *See, e.g., ASARCO, Inc. v. Elliott Mgmt. (In re ASARCO, L.L.C.)*, 650 F.3d

593, 601 (5th Cir. 2011) ("[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to

the debtor, creditors, and equity holders, there must be some articulated business justification for

using, selling, or leasing the property outside the ordinary course of business.") (quoting *In re Cont'l Air Lines, Inc.*, 780 F.3d 1223, 1226 (5th Cir. 1986)); *GBL Holding Co., Inc. v. Blackburn/Travis/Cole, Ltd. (In re State Park Bldg. Grp., Ltd.)*, 331 B.R. 251, 254 (Bankr. N.D. Tex. 2005); *In re Filene's Basement, LLC*, No. 11-13511 (KJC) (Bankr. D. Del. Apr. 29, 2014) (stating that, under the business judgment standard, once the debtor presents "a reasonable basis for is business decisions ... courts will generally not entertain objections to the debtor's conduct").

23.     Here, the Debtors' entry into the Harper Settlement represents a reasonable exercise of the Debtors' sound business judgment and should be approved.  As a result of the Harper Settlement, the Debtors will reduce the claims pool by satisfying the Harper Claims (a large secured claim and unsecured claim against the Debtors' estates) at a substantial discount of ~32% of the face amount of the Harper Claims, with a limited cash Initial Settlement Payment, Additional Settlement Payment, and the Note paid out over 30 months.  Harper will also release the Debtors from any and all future claims arising from the rejection of the Harper Pre-Petition Agreement.

24.     Further, although making payments to reimburse general contractors for the expenses incurred by obtaining required permits generally falls within the Debtors' ordinary course of business, out of an abundance of caution and in satisfaction of a condition to the effectiveness of the Harper Settlement, the Debtors seek this Court's authority under section 363(b)(1) of the Bankruptcy Code to make the Permit Reimbursement Payment, as it is an integral part of the Harper Settlement.

25.     Accordingly, the Debtors respectfully submit that the Court should approve the Harper Settlement based upon the standards set forth in section 363(b)(1).

## **Reservation of Rights**

26.     Except as expressly provided for herein with respect to the Harper Claims and the Transferred Agreements, nothing contained in this Motion or any actions taken by the

12

Debtors pursuant to the relief granted is intended or should be construed as: (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law, or (iii)  an approval of an assumption of any lease, sublease, or contract pursuant to section 365 of the Bankruptcy Code.

## **No Previous Request**

27. No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: August 30, 2023
          Houston, Texas

Respectfully submitted,

  /s/ Alfredo R. Pérez
WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (15776275)
Clifford W. Carlson (2409024)
700 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone:  (713) 546-5000
Facsimile:  (713) 224-9511
Email: Alfredo.Perez @weil.com
            Clifford.Carlson@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Ray C. Schrock (admitted *pro hac vice*)
Ronit J. Berkovich (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Email:   Ray.Schrock@weil.com
            Ronit.Berkovich@weil.com

*Attorneys for Debtors*
*and Debtors in Possession*

14

**<u>Certificate of Service</u>**

I hereby certify that on August 30, 2023, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.


      *<u>/s/ Alfredo R. Pérez</u>*
Alfredo R. Pérez