**<u>Exhibit 2</u>**

**Term Sheet**

## Settlement Term Sheet

This term sheet (this "**Term Sheet**") sets forth the principal terms of a settlement (the "**Settlement**") between Core Scientific, Inc. and its debtor affiliates (collectively, "**Core**" or the "**Debtors**") and Harper Construction Company, Inc.  ("**Harper**"; each of Core, Harper and each Subcontractor (as herein defined) is referred to herein, individually, as a "**Party**" and, collectively, as the "**Parties**").

This Term Sheet and the terms set forth herein are binding upon, and inure to the benefit of, the Parties, subject to the approval of the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**"). This Term Sheet does not purport to set forth every term of the Settlement Motion (as defined below) or the 9019 Order (as defined below).

| Term | Description |
|---|---|
| Claims and Liens | Harper has asserted pre-petition and post-petition claims (such claims and any other claims that may be asserted, the "**Harper Claims**") against the Debtors, including, without limitation, Proof of Claim No. 437. Harper has filed liens against certain of the Debtors' assets (such liens, the "**Harper Liens**"), including, without limitation, the mechanics' liens against the Debtors' Muskogee site (the "**Facility**") set forth on <u>Annex A</u> hereto.<br><br>Certain subcontractors and sub-subcontractors of Harper (collectively, the "**Subcontractors**" and, each, individually, a "**Subcontractor**") have asserted pre-petition and post-petition claims (such claims, the "**Sub Claims**" and, together with the Harper Claims, the "**Claims**") against the Debtors, including, without limitation, Proofs of Claims Nos. 374 and 378.  The Subcontractors have filed liens against certain of the Debtors' assets (such liens, the "**Sub Liens**" and, together with the Harper Liens, the "**Liens**"), including, without limitation, the mechanics' liens against the Debtors' Facilities set forth on <u>Annex B</u> hereto. |
| Approval of the Settlement | Debtors to file a motion to approve the Settlement (the "**Settlement Motion**").<br><br>Debtors to obtain entry of an order of the Bankruptcy Court under sections 363, 365(a) and 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019 approving the Settlement (such order, the "**9019 Order**").  The Debtors will request that the 9019 Order shall be effective immediately upon its entry. |
| Release of Harper Claims and Harper Liens | 9019 Order to provide, among other things, that:<br><br>(i) immediately upon entry of the 9019 Order:<br>    (a) except for that certain AIA Document A105-2017 Standard |

Short Form of Agreement Between Owner and Contractor, made as of February 10, 2023 (the "**Post-Petition Agreement**"), any and all contracts and outstanding purchase orders between Harper and the Debtors are terminated and Harper shall not have claims for rejection damages based on such termination;

(b) the Harper Claims shall be finally and fully paid, satisfied, released and expunged, and Harper shall cooperate with the Debtors and take all reasonable steps necessary to obtain release of the Sub Claims, including supporting any objections to the Sub Claims filed by the Debtors; and

(c) the Parties shall each grant a complete and final release of all claims against each other and covenant not to sue, in each case, in favor of the other Party;

(ii) within five (5) days following the entry of the 9019 Order:
(a) Core shall make an initial payment to Harper in the amount of $1,500,000.00 (the "**Initial Settlement Payment**");

(b) Core shall deliver to Harper a duly executed promissory note (the "**Note**") in the principal amount of $4,678,388.00;

(c) Harper shall deliver to Core final unconditional lien waivers and releases of the Sub Liens in form and substance reasonably acceptable to Core for all work performed at the Facilities and all goods, labor and materials supplied to, for or in connection with Core or the Facilities, duly executed by each Subcontractor, and in recordable form, which lien waivers shall provide for the release and waiver of all Sub Liens;

(d) the Sub Liens shall be fully and finally released, extinguished and discharged;

(e) that certain Rider Adding Additional Obligee, dated May 10, 2022, by Gaylor Electric Inc. and Liberty Mutual Insurance Company in favor of Core with respect to Payment and Performance Bond No. 014246826 shall terminate and Core shall have no further interest in or right to Payment and Performance Bond No. 014246826; and

(f) Harper shall transfer to Core, and Core shall assume from Harper, the environmental permit for the Facility; and

(g) Harper shall deliver to Core written agreements from the

|  | counterparties to each of the Transferred Agreements (as defined below) consenting to the assignment of the applicable Transferred Agreement to Core and, upon receipt of such consents, Harper and Core shall enter into an assignment and assumption of contracts in the form attached hereto as <u>Annex D</u> pursuant to which Harper shall assign to Core all right, title and interest of Harper in and to the agreements set forth on <u>Annex C</u> hereto (the "**Transferred Agreements**"), <u>provided</u> that Core shall be solely responsible for the performance of the obligations of Harper under the Transferred Agreements that become due from and after the date of such assignment, solely to the extent relating to facts, occurrences or other circumstances first arising after such assignment (and Core shall assume no other liabilities or obligations of any type whatsoever);<br><br> (iii) within fifteen (15) days following the date on which a plan of reorganization filed by the Debtors and its affiliates is confirmed by entry of an order of the Bankruptcy Court (such date, the "**Emergence Date**"), Core shall make an additional payment to Harper in the amount of $445,636.00 (the "**Additional Settlement Payment**");<br><br> (iv) within five (5) days following delivery of the Additional Settlement Payment to Harper, Harper shall deliver to Core a partial unconditional lien waiver and release in form and substance reasonably acceptable to Core for all work performed at the Facilities and all goods, labor and materials supplied to, for or in connection with Core or the Facilities, duly executed by Harper, and in recordable form, which lien waivers shall provide that the maximum amount of the Harper Liens outstanding is $3,000,000; and<br><br> (v) within five (5) days following payment in full of Note, Harper shall deliver to Core a final unconditional lien waiver and release in form and substance reasonably acceptable to Core for all work performed at the Facilities and all goods, labor and materials supplied to, for or in connection with Core or the Facilities, duly executed by Harper, and in recordable form, which lien waivers shall provide for the release and waiver of all Harper Liens. |
| The Note | The Note shall bear interest at the rate of 5% per annum, have a term of 30 months, be fully amortized, and payable monthly.  The first payment date shall occur, and interest shall begin accruing, on the date that is 45 days after the Emergence Date. |
| Voluntary Prepayments of the Note | Core shall have the right, exercisable at any time and from time to time, to voluntarily prepay the Note in whole or in part, and any such prepayment shall be without any penalty or fees. |

| | |
|---|---|
| | Any prepayment of the Note shall be immediately applied toward principal, be applied in inverse order of maturity and shall not extend or postpone the due dates of the monthly installments due under the Note. |
| Event of Default | An "**Event of Default**" shall occur if Core fails to pay any monthly installment due under the Note on the payment date when such monthly installment becomes due, and such failure continues for sixty (60) days after Harper gives written notice thereof to Core.<br><br>Unless and until an Event of Default occurs, Harper shall be barred from foreclosing or otherwise enforcing the Harper Liens or otherwise taking adverse action against Core or any of Core's assets (including the Facility). |
| Right of First Offer | Until the earlier to occur of (i) the date which is twenty-four (24) months after the date of the 9019 Order and (ii) the date on which the Debtors no longer directly and solely own the entire Facility (the earlier of (i) and (ii), the "**ROFO End Date**"), if the Debtors desire to engage a general contractor   (a "**General Contractor**") to begin construction and development of the Facility within twenty-four (24) months following the date of the 9019 Order, then the Debtors shall deliver notice (the "**Trigger Notice**") (which Trigger Notice may be by e-mail to scm@harperconstruction.com) to Harper stating that it desires to engage a General Contractor setting forth the material terms and conditions of such proposed general contractor agreement (the "**Proposed GC Agreement**"), but excluding the contract price.<br><br>If the Debtors give Harper a Trigger Notice, then Harper may elect in its sole discretion to make an offer to act as the General Contractor for a proposed contract price not to exceed the then-current market contract price (the "**GC Offer Price**") and otherwise on the same terms and conditions set forth in the Proposed GC Agreement.  Such election shall be made by written notice (the "**Election Notice**") (which notice may be by reply e-mail) from Harper to the Debtors within five (5) days after the giving of the Trigger Notice (the "**Contract Offer Period**").  Within twenty-five (25) days following delivery of Harper's Election Notice, Harper shall delivery to the Debtors a fully executed original counterpart of the Proposed GC Agreement with the GC Offer Price filled in as the proposed contract price.<br><br>The Debtors may accept the offer made by Harper (it being agreed that the Debtors shall be deemed to have rejected the offer if it fails to accept the Election Notice in writing within ten (10) days after receipt thereof), by providing written notice thereof to Harper, and in which case Harper shall proceed to act as the General Contractor in accordance with the |

|  | terms and conditions set forth in the Proposed GC Agreement.<br><br>If the Debtors reject (or are deemed to have rejected) the offer contained in the Election Notice or Harper shall fail to deliver an Election Notice within the Contract Offer Period (in which event it shall be deemed to have declined its right to do so), the Debtors shall have the full power and authority to engage an alternative General Contractor on any such terms and conditions which the Debtors are willing to accept thereafter, provided that in the case of rejection (or deemed rejection) by the Debtors of the offer contained in the Election Notice, any engagement of an alternative General Contractor prior to the ROFO End Date shall be for a contract price not to exceed the GC Offer Price and otherwise on substantially the same overall economic terms set forth in the Proposed GC Agreement. |
|---|---|
| Post-Petition Obligations | Harper incurred a post-petition charge of $54,364 in connection with the Facility's state fire permit, repayment for which Core shall remit directly to Harper in the ordinary course of business.<br><br>The Post-Petition Agreement shall terminate on September 30, 2023 and no damages or other fees shall be payable in connection with such termination.  Core shall remit payment for all services rendered under the Post-Petition Contract directly to Harper in the ordinary course of business. |
| Provision of Goods | Upon entry of the 9019 Order, the Debtors shall have no further interest, if any, in any goods, if any, which remain in the possession of any Subcontractor and which have not been paid for by the Debtors. |
| Attorneys' Fees | Core, Harper and each Subcontractor will each be responsible for and pay its own legal fees and out-of-pocket expenses in connection with the Claims, the Liens, and the chapter 11 cases of the Debtors pending in the Bankruptcy Court. |
| Closing and Other Customary Terms | Settlement Motion and 9019 Order to include for terms reasonable and customary to settlement agreements in similarly complex chapter 11 cases, with such terms to be negotiated by the Parties. |
| Bankruptcy Court Approval | The Debtors and Harper shall act in good faith to implement the Settlement and shall take all actions reasonably necessary to obtain entry of the 9019 Order. |
| Binding Effect | This Term Sheet and the terms hereof are legally binding upon, and inure to the benefit of, the Parties, subject to the approval of the Bankruptcy Court and entry of the 9019 Order. |

IN WITNESS WHEREOF, duly authorized members of the Parties have executed this Term Sheet as of August 21, 2023.

**HARPER CONSTRUCTION COMPANY, INC.**

By _____

Name: STEPHEN G. MARBLE

Title: EXEC. V.P.


**CORE SCIENTIFIC, INC.**

By: _____

Name: Adam Sullivan

Title: CEO

<u>Annex A</u>

**Harper Lien**

1.  Mechanic's and Materialman's Lien Statement, in the amount of $7,500,000.00, filed by Harper Construction Company, Inc., recorded on October 31, 2022, under Recording Number 2022-013536, as amended by that certain Amended and Supplemental Mechanic's and Materialman's Lien Statement, in the amount of $9,700,571.00, filed by Harper Construction Company, Inc., recorded on February 13, 2023, under Recording Number 2023-001391, for which a Notice of Perfection of Mechanic's and Materialman's Lien of Harper Construction Company, Inc. Pursuant to 11 U.S.C. § 546(b) was filed with the Bankruptcy Court in the Debtors' cases as Document No. 547, asserting a lien in the amount of $9,700,571.00.

<u>Annex B</u>

**Sub Liens**

1.  Materialman's Lien Statement, in the amount of $602,556.08, filed by Contech, Inc. on November 2, 2022 under Recording Number 2022-013616.

2.  Mechanic's and Materialman's Lien Statement, in the amount of $5,245,601.81, filed by Gaylor Electric, Inc. dba Gaylor, Inc., recorded on November 28, 2022, under Recording Number 2022-014455, for which a Gaylor Electric, Inc., d/b/a Gaylor, Inc.'s Notice of Perfection of Materialman's and Mechanic's Lien Pursuant to 11 U.S.C. § 546(b)(2) was filed with the Bankruptcy Court in the Debtors' cases as Document No. 545, asserting a lien in the amount of $5,245,601.81.

Annex C

**Transferred Agreements**

1.      Lease Agreement, dated as of November 15, 2022, by and between the Muskogee City-County Port Authority, as lessor, and Harper Construction Company, Inc., as lessee.

2.      Warehouse Services Agreement, dated as of October 17, 2022, by and between Harper Construction Company, Inc., as customer, and Customized Distribution Services, Inc., as warehouseman.

Annex D

**Form of Assignment and Assumption of Agreements**

**ASSIGNMENT AND ASSUMPTION OF AGREEMENTS**

This Assignment and Assumption of Agreements (the "**Assignment**") is entered into as of the ___ day of _____, 2023 (the "**Effective Date**"), between [_____], a [___ _____] ("**Assignor**) and **Core Scientific Operating Company**, a Delaware corporation (f/k/a Core Scientific, Inc.) ("**Assignee**").

RECITALS

A.    Assignor and Assignee are subject to that certain Order Approving (I) Global Settlement Between Debtors and Harper Construction Company, Inc. and (II) Granting Related Relief, entered by the United States Bankruptcy Court for the Southern District of Texas Houston Division on [_____] (the "**Order**").

B.    It is the desire of Assignor to hereby sell, assign, transfer, convey, set-over and deliver to Assignee all of Assignor's right, title and interest in and to those certain agreements (collectively, the "**Agreements**") described on **Exhibit A**, attached hereto and incorporated herein.

1.    <u>Assignment</u>.  For good and valuable consideration, upon the terms and subject to the conditions of the Order, Assignor hereby assigns, transfers and sets over unto Assignee and Assignee hereby accepts from Assignor all of Assignor's right, title and interest in and to the Agreements.  Upon the terms and subject to the conditions of the Order, Assignee does hereby accept the foregoing assignment of the Agreements and does hereby agree that Assignee shall be solely responsible for the performance of the obligations of Assignor under the Agreements that become due from and after, solely to the extent relating to facts, occurrences or other circumstances first arising after, the Effective Date.

2.    <u>Counterpart Copies</u>.  This Assignment may be executed and delivered in any number of counterparts, each of which so executed and delivered shall be deemed to be an original and all of which shall constitute one and the same instrument.

3.    <u>Governing Law</u>.  This Assignment shall be interpreted in accordance with the laws of the State of New York, all rights and remedies being governed by such laws.

4.    <u>Successors and Assigns</u>.  This Assignment shall be binding upon and inure to the benefit of the parties hereto and their respective legal representatives, successors and their permitted assigns.

5.    <u>Agreement</u>.  In the event of any conflict or inconsistency between the terms of this Assignment and the Order, the terms of the Order shall control.

IN WITNESS WHEREOF, Assignor and Assignee have caused this instrument to be executed as of the date above written.

**ASSIGNOR**:

**[●], a [●]**


By: _____
Name: _____
Title: _____

**ASSIGNEE**:

**CORE SCIENTIFIC OPERATING COMPANY**, a Delaware corporation (f/k/a Core Scientific, Inc.)

By: _____

Name: _____

Title: _____

## <u>EXHIBIT A TO ASSIGNMENT AND ASSUMPTION OF AGREEMENTS</u>

1.      Lease Agreement, dated as of November 15, 2022, by and between the Muskogee City-County Port Authority, as lessor, and Harper Construction Company, Inc., as lessee.

2.      Warehouse Services Agreement, dated as of October 17, 2022, by and between Harper Construction Company, Inc., as customer, and Customized Distribution Services, Inc., as warehouseman.