IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| CORE SCIENTIFIC, INC. et al., | ) |
| | ) Case No. 22-90341 (DRJ) |
| Debtors.[1] | ) Jointly Administered |

**OBJECTION OF McCARTHY BUILDING COMPANIES, INC.
TO THE DISCLOSURE STATEMENT FOR JOINT CHAPTER 11
PLAN OF CORE SCIENTIFIC, INC. AND ITS DEBTOR AFFILIATES**

McCarthy Building Companies, Inc. ("**McCarthy**") submits this objection (this "**Objection**")[2] to the *Disclosure Statement for Amended Joint Chapter 11 Plan of Core Scientific, Inc. and its Debtor Affiliates* (the "**Amended Disclosure Statement**") [D.I. 1116], and states:

**PRELIMINARY STATEMENT**

1. The purpose of a disclosure statement is to provide sufficient information to creditors to enable them to cast their votes to accept or reject a proposed chapter 11 plan on an informed basis. The importance of the requirements of Bankruptcy Code section 1125 cannot and should not be understated. While the Debtors have made significant strides in negotiating a plan

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions, VII, LLC (3198). The Debtors' corporate headquarters and service address is 210 Barton Springs Road, Suite 300, Austin, Texas 78704.

[2] McCarthy and the Debtors have had good faith discussions to resolve McCarthy's concerns. McCarthy appreciates the hard work and diligence of the Debtors' team and files this Objection in accordance with the Debtors' *Notice of Rescheduled Hearing to Consider Approval of the Disclosure Statement* [D.I. 1179] to preserve McCarthy's rights and objections.

of reorganization, the Debtors filed the 154-page Amended Disclosure Statement that fails to contain the basic information required and, in fact, lacks information unsecured creditors need to evaluate the Amended Plan [D.I. 1115] and their proposed treatment thereunder as required by Bankruptcy Code section 1125.

2. Furthermore, and most significantly, the Amended Disclosure Statement describes an unconfirmable plan of reorganization that does not comply with section 1129(a)(1) of the Bankruptcy Code. Specifically, the Amended Disclosure Statement mis-states and mis-classifies McCarthy's claim. *See* McCarthy's Proof of Claim ("**POC**") No. 468 filed Apr. 14, 2023. The Amended Disclosure Statement also appears to contemplate the Debtors' assumption of McCarthy's Contract with the Debtors without complying with section 365(b)(1) of the Bankruptcy Code. Moreover, the Amended Disclosure Statement describes a reorganization that will not satisfy the absolute priority rule.

3. On July 25, 2023, McCarthy communicated its concerns with the Disclosure Statement in an email to Debtors' counsel. To date, the Debtors have not remedied the deficiencies raised by McCarthy. McCarthy respectfully submits that the Amended Disclosure Statement lacks clarity and sufficient disclosures regarding issues of material importance to the Debtors' creditors, in particular the M&M Lien Secured Claims,[3] which is absolutely necessary to make an informed decision on the Amended Plan. As such, the Amended Disclosure Statement should not be approved unless and until such issues are fully and completely addressed.

---

[3] The term "M&M Lien Secured Claims" shall have the meaning ascribed to it in the Amended Disclosure Statement and Amended Plan.

**JURISDICTION AND VENUE**

4. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the United States District Court for the Southern District of Texas's *General Order 2012-06*, dated May 24, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). McCarthy consents to the entry of a final order by the Court in connection with this Objection to the extent it is later determined the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**BACKGROUND**

A. **The Chapter 11 Cases**

5. On December 21, 2022 (the "**Petition Date**"), Core Scientific, Inc. ("**Core**") and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**") each filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "**Chapter 11 Cases**") in the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**"). The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The bankruptcy cases are jointly administered under the lead Case No. 22-90341 (DRJ).

B. **McCarthy's Claim Against Core**

6. Debtor Core and McCarthy entered into a contract dated November 17, 2021 (the "**Contract**") for the construction of the Core Scientific Data Center (the "**Denton Facility**") in Denton, Texas (the "**Project**").

7. On October 31, 2022, following Core's failures to make payments required by the Contract, McCarthy filed a complaint against Core in the United States District Court for the

3

Eastern District of Texas (Case No. 4:22-cv-00924). On November 14, 2022, McCarthy properly and timely recorded its Amended Affidavit for Mechanic's Lien (the "**Lien Affidavit**" and such lien, the "**Mechanic's Lien**") under Texas Property Code § 53.001, *et seq*. in the Land Records of Denton County, Texas.

8.  Following the commencement of these Chapter 11 Cases, on April 14, 2023, McCarthy filed its proof of claim related to its breach of contract claim. *See* POC No. 468. As reflected in its proof of claim, McCarthy is owed no less than $18,799,499. When McCarthy filed its Lien Affidavit on November 14, 2022, McCarthy had a claim under the Contract of at least $17,052,583.65, exclusive of accruing interest and other charges. By the time that Core filed for chapter 11 on December 21, 2022, McCarthy was owed $18,799,499 under the terms of the Contract, exclusive of additional costs, attorneys' and professional fees. The Mechanic's Lien perfected by the Lien Affidavit continued and attached to the full amount of McCarthy's $18,799,499 claim. Nonetheless, out of an abundance of caution, on January 23, 2023, McCarthy filed its *Notice of Continued Perfection of Materialman's and Mechanic's Lien Pursuant to 11 U.S.C. § 546(b) in the Debtor's Bankruptcy Case* (the "**Section 546 Notice**") [D.I. 337], in order to ensure the perfection, preservation, maintenance, and continuation of its Mechanic's Lien.

C.  **The Plan and Disclosure Statement**

9.  On June 20, 2023, the Debtors filed the *Joint Chapter 11 Plan of Core Scientific, Inc. and its Affiliated Debtors* (the "**Plan**") [D.I. 974] and the *Disclosure Statement for Joint Chapter 11 Plan of Core Scientific, Inc. and its Debtor Affiliates* (the "**Disclosure Statement**") [D.I. 975].

10. The Plan divided claims into twelve classes, eight of which were impaired. *See* Disclosure Statement at 25-26. The Disclosure Statement also indicated that the Plan provided

4

"100% recoveries to all Classes of creditors in the form of (i) equity in the Reorganized Parent ("New Common Interests"), (ii) take-back debt, (iii) a combination of equity and take-back debt, or (iv) reinstatement of claims[.]" *See id* at 2. In a subsequent filing, the Debtors represented that "[s]ecured creditors receive the present value of their secured claims and maintain their prepetition collateral[.]" *Notice Of Filing Of Demonstrative To Be Used By The Debtors At The June 29, 2023 Status Conference At 1:30 PM (Central Time)* ("**June 29 Demonstrative**") [D.I. 1009].

11. On August 8, 2023, the Debtors filed *Amended Joint Chapter 11 Plan of Core Scientific, Inc. and its Affiliated Debtors* (the "**Amended Plan**") [D.I. 1115] and the Amended Disclosure Statement [D.I. 1116].

12. The treatment of McCarthy under the Amended Plan is inconsistent with the representation made in the June 29 Demonstrative. Under the Amended Plan, McCarthy and other M&M Secured Lien Claimants are not permitted to maintain their prepetition collateral or the present value of their secured claims under their proposed treatment. Further, there is no question that McCarthy's lien has attached to the Debtors' leasehold interest with the City of Denton. On August 16, 2023, this Court entered its Order approving the Debtors' assumption of their lease with the City of Denton. [D.I. 1153]. Thus, McCarthy and the M&M Secured Lien Claimants have valid liens against the Debtors' leasehold interest.

13. Specifically, the Amended Plan divides claims into thirteen classes, nine of which are impaired and therefore entitled to vote on the Amended Plan. *See* Amended Disclosure Statement at 25-26. McCarthy's claim is classified in Class 5 M&M Lien Secured Claims, and is impaired under the Plan. *See* Am. Disclosure Statement at 16-17, 25; Am. Plan at 31. The Debtors contend that the Amended Plan will provide:

- <u>100% recoveries to all Classes of creditors</u> (other than Section 510(b) Claims) in the form of (i) equity in the Reorganized

5

- Parent ("**New Common Interests**"), (ii) take-back debt, (iii) a combination of New Common Interests and take-back debt, or (iv) reinstatement of claims….

- Distributions to existing equity holders and Holders of Section 510(b) Claims in the form of New Common Interests, consisting of all residual value remaining after providing recoveries to all other Claims.

- A minimum $55 million equity rights offering (the "**Rights Offering**") made available to holders of Existing Common Interests as more fully described below, which is expected to be backstopped by the Backstop Parties pursuant to a to-be-negotiated backstop commitment agreement (the "**Backstop Commitment Agreement**").

- An approximately $80 million delayed draw term loan from the Replacement DIP Lender (the "**Delayed Draw Term Loan**"), consisting of (i) a roll-up of the outstanding balance of the Replacement DIP Facility, (ii) treatment on the B. Riley Unsecured Claim which B. Riley has agreed to reduce from $44.3 million (as of the assumed Effective Date of September 30, 2023) to $38 million, and (iii) $25 million of new money financing.

- An equity line of credit from the Replacement DIP Lender in the amount of $150 million (the "**Exit ELOC**")

- The assumption of most Executory Contracts and Unexpired Leases of the Debtors.

- A reduction of current debt on the Debtors' balance sheet by approximately $30-105 million and a reduction in the Debtors' annual debt service by approximately $60-85 million.

Am. Disclosure Statement at 2-3 (emphasis in original).

14. Although the Debtors have nine impaired classes, they state that they are solvent and that all creditors will be paid in full: "Because the Debtors are solvent (their value exceeds their debt), the Plan generally provides for a 'waterfall,' where all creditors are entitled to payment in full, unless they agree to a lesser treatment, with the residual value going to the Debtors' current equity holders (and subordinated creditors)." Am. Disclosure Statement at 4.

### D. Treatment of McCarthy's Claim According to the Amended Plan and Amended Disclosure Statement

15. In exchange for their mechanic's lien claims, each M&M Lien Secured Claim in Class 5 will receive new secured debt, called the M&M Lien Takeback Debt, which is subject to the terms and conditions in the New M&M Lien Debt Term Sheet, attached to the Amended Plan as Exhibit H.

16. According to the New M&M Lien Debt Term Sheet, the Debtors will make payments to Class 5 creditors on in quarterly installments. The maturity date is 10 years after the initial payment. The Interest rate is 5% per annum, and there is no prepayment premium. Most significantly, the New M&M Lien Debt Term Sheet states that it is an event of default if the Debtor/Issuer fails to pay any quarterly installment on the Payment Date when such quarterly installment becomes due, **_and such failure continues for sixty (60) days after the Debt Holder gives written notice thereof to Issuer_**. Moreover, with respect to each Obligation, unless and until an Event of Default occurs, each Debt Holder and Subcontractor whose M&M Liens secure amounts attributable to M&M Lien Secured Claims in respect of such Obligation shall be barred from foreclosing or otherwise enforcing such M&M Lien or otherwise taking adverse action against the Issuer of such Obligation with regard to any amounts secured by such M&M Lien.

17. With respect to McCarthy in particular, according to the M&M Lien Claims Schedule attached to the Disclosure Statement, McCarthy will only receive a $5.8 million payout on its $18 million POC. *See* Am. Disclosure Statement, Exhibit I. The Schedule also contemplates Core making direct payments to McCarthy's subcontractors. The Debtors have proposed this mechanism despite the fact that the Contract between Core and McCarthy directs McCarthy to pay its subcontractors according to the terms of its subcontracts. Contract ¶ 7.3 ("Payments to be made by the Contractor to Subcontractors in accordance with the requirements of the subcontracts and

this Agreement."). Indeed, the Debtors acknowledge that they have no contractual basis for making payments to the subcontractors because none of the Debtors are in contractually privity with any subcontractors. *See* Am. Disclosure Statement at 45. Specifically, the Amended Disclosure Statement provides:

> The Debtors are not party to any agreements with the Subcontractors and, therefore, the Debtors are not in privity of contract with any such Subcontractors. Nevertheless, 13 Subcontractors filed proofs of claim against one or more of the Debtors (the "**Subcontractor POCs**"). For the reasons set forth above, the Debtors will seek disallowance of the Subcontractor POCs pursuant a forthcoming omnibus claim objection.

*See id.* (emphasis in original). There are two types of subcontractors in play: those that filed liens and those that did not. It is unclear which type of subcontractor that the Debtors propose to pay, how much, and when. Further, the proposed treatment is misleading in that McCarthy has filed a POC and a Lien that encompasses ***all*** subcontractor claims on the Project. Thus, satisfaction of McCarthy's claim in full would result in satisfaction of the subcontractor payments in accordance with McCarthy's Contract with Core.

## OBJECTION

### A. The Amended Disclosure Statement Cannot Be Approved Because It Lacks Adequate Information

18. Bankruptcy Code section 1125(b) requires that a disclosure statement contain "adequate information" to develop an informed judgment as to the plan. Section 1125 defines "adequate information" as:

> [I]nformation of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but adequate

8

>information need not include such information about any other possible or proposed plan and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information[.]

11 U.S.C. § 1125(a)(1).

19. The determination of what constitutes "adequate information" is to be made on a case-by-case basis. *Matter of Texas Extrusion Corp.*, 844 F.2d 1142, 1157 (5th Cir. 1988) ("The determination of what is adequate information is subjective and made on a case by case basis. This determination is largely within the discretion of the bankruptcy court."). Many courts have used the following non-exhaustive list of criteria as a guide for evaluating the adequacy of the information contained in a disclosure statement:

> (1) the events which led to the filing of a bankruptcy petition;
> (2) a description of the available assets and their value;
> (3) the anticipated future of the company;
> (4) the source of information stated in the disclosure statement;
> (5) a disclaimer;
> (6) the present condition of the debtor while in Chapter 11;
> (7) the scheduled claims;
> (8) the estimated return to creditors under a Chapter 7 liquidation;
> (9) the accounting method utilized to produce financial information and the name of the accountants responsible for such information;
> (10) the future management of the debtor;
> (11) the Chapter 11 plan or a summary thereof;
> (12) the estimated administrative expenses, including attorneys' and accountants' fees;
> (13) the collectability of accounts receivable;
> (14) financial information, data, valuations or projections relevant to the creditors' decision to accept or reject the Chapter 11 plan;
> (15) information relevant to the risks posed to creditors under the plan;
> (16) the actual or projected realizable value from recovery of preferential or otherwise voidable transfers;
> (17) litigation likely to arise in a non-bankruptcy context;
> (18) tax attributes of the debtor; and
> (19) the relationship of the debtor with the affiliates.

*In re Divine Ripe, L.L.C.*, 554 B.R. 395, 401-02 (Bankr. S.D. Tex. 2016) (adopting the factors set forth in *In re Metrocraft Pub. Servs., Inc.,* 39 B.R. 567, 568 (Bankr.N.D.Ga.1984)).

20. Applying the foregoing factors here, the Amended Disclosure Statement does not contain "adequate information" as required by section 1125. As stated above, the Amended Disclosure Statement contains placeholders for key exhibits, such as the Liquidation Analysis (Exhibit C) and Valuation Analysis (Exhibit D). Without this information, the Amended Disclosure Statement plainly has failed to provide enough information about (a) the anticipated future of the company, (b) financial information, data, valuations or projections relevant to the creditors' decision to accept or reject the Chapter 11 plan, and (c) the estimated return to creditors under a Chapter 7 liquidation.

21. More concerning, the Debtors' filings and Amended Disclosure Statement appear to provide misleading information. While the Debtors have contended that "[s]ecured creditors receive the present value of their secured claims and maintain their prepetition collateral," *see* June 29 Demonstrative, upon closer examination McCarthy will not receive the present value of its secured claim. Nor will McCarthy be permitted under the Amended Plan to maintain its prepetition collateral. *See infra* ¶¶ 29-31.

### B. The Amended Disclosure Statement Cannot Be Approved Because It Describes an Unconfirmable Plan

22. In order for a plan to be confirmed, it must satisfy Section 1129(a)(1), which requires a plan to comply with all applicable provisions of the Bankruptcy Code. 11 U.S.C. § 1129(a)(1). Section 1129(a)(1) provides that "a plan may not be confirmed unless the plan complies with the applicable provisions of Title 11 . . . [.]" *Mabey v. Sw. Elec. Power Co. (In the Matter of Cajun Elec. Power Coop., Inc.)*, 150 F. 3d 503, 513, n.3 (5th Cir. 1998) (citing *Mickey's Enters., Inc. v. Saturday Sales, Inc. (In re Mickey's Enters., Inc.)*,165 B.R. 188, 193 (Bankr. W.D.

Tex. 1994)) ("In order to confirm a plan the court must find that the plan and its proponent have complied with the applicable provisions of Title 11.").

23. Courts routinely hold that a disclosure statement describing a patently unconfirmable plan may not be approved, regardless of the amount of disclosure it contains, because a patently unconfirmable plan cannot be cured by voting. *See, e.g., In re David Sanders*, Case No. 14-02271, 2015 WL 7568469 at *5 (Bankr. S.D. Miss. Nov. 23, 2015) ("it is well-settled that a bankruptcy court may disapprove a disclosure statement, even if it contains adequate information, if there is a defect that renders a proposed plan 'inherently or patently unconfirmable[.]'" (quoting *In re Am. Capital Equip., LLC*, 688 F.3d 145, 154 (3d Cir. 2012) (stating that a plan is "patently unconfirmable" when its "defects cannot be cured by creditor voting"))); *In re U.S. Brass Corp.*, 194 B.R. 420, 422 (Bankr. E.D. Tex. 1996) ("Disapproval of the adequacy of a disclosure statement may sometimes be appropriate where it describes a plan of reorganization which is so fatally flawed that confirmation is impossible."). As such, "if it appears there is a defect that makes a plan inherently or patently unconfirmable, the Court may consider and resolve that issue at the disclosure stage before requiring the parties to proceed with solicitation of acceptances and rejections and a contested confirmation hearing." *Am. Capital Equip.*, 688 F.3d at 154; *see also In re EQK Bridgeview Plaza, Inc.*, No. 10-37054-SGJ-11, 2011 WL 2458068, at *2 (Bankr. N.D. Tex. June 16, 2011) ("The court has also earlier declined to approve one disclosure statement filed by the Debtor in this case (at the urging of all of the Debtor's secured lenders), for the reason that the plan which it accompanied seemed patently unconfirmable.").

24. The Amended Plan as described by the Amended Disclosure Statement is unconfirmable for several reasons. Core proposes to assume the Contract, and therefore, it must adhere to the terms of the Contract. Core must also abide by the requirements in the Bankruptcy

Code and cure defaults and provide adequate assurances of future performance. 11 U.S.C. § 365. The current treatment of McCarthy's claim under the Amended Plan does not meet either of these requirements.

25. Bankruptcy Code section 365(b) provides that a debtor may not assume an executory contract unless, at the time of assumption, the debtor:

> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default . . . (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and (C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. 365(b)(1); *see also In re Bourbon Saloon, Inc.*, 647 F. App'x 342, 344–45 (5th Cir. 2016). As recognized by the Fifth Circuit, "[w]hat constitutes 'reasonable time thereafter' for curing defaults or an 'adequate assurance of future performance' must be determined by consideration of the facts of the proposed assumption." *Richmond Leasing Co. v. Cap. Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985). Similarly, "'adequate' assurance is to be 'defined by commercial rather than legal standards.'" *Id*. at 1310 (quoting Uniform Commercial Code § 2–609, Cmt. 3).

26. By assuming the Contract, Core is committing to the completion of the work on Buildings A/B and F/G at the Project. McCarthy has provided an estimate of the cost of this work to the Debtors. Needless to say, the cost is in the $10-$20 million range, possibly more depending on delay and supply chain and material shortage issues. The Amended Plan and Amended Disclosure Statement do not provide adequate assurance that Core will: (1) immediately be able to cure monetary defaults; or (2) be able to commit to future performance of the Contract. This violates section 365 of the Bankruptcy Code: a debtor cannot assume a contract that they are unable

to cure and refuse to provide adequate assurance of future performance. A strange position given the fact that the Debtors represent that they are solvent.

27. Nor is re-payment of McCarthy's claim over ten years via the M&M Lien Takeback Debt a prompt cure of the Debtors' default under the Contract, as required by section 365(b)(1)(A). Rather, given the extended ten-year maturity date and the extreme volatility of the cryptocurrency industry, the M&M Lien Takeback Debt does not provide McCarthy with adequate assurances of Core's future performance as required by section 365(b)(1)(C). *Id.* ("Courts have consistently determined whether a debtor offered adequate assurance of future performance by considering whether the debtor's financial data indicated its ability to generate an income stream sufficient to meet its obligations, the general economic outlook in the debtor's industry, and the presence of a guarantee.").

28. Finally, upon assumption of the Contract, it is axiomatic the Debtor cannot force McCarthy and the subcontractors to work without paying them for past work and future work. Indeed, Core cannot pick and choose certain contractual provisions to follow. *In re Nat'l Gypsum Co.*, 208 F.3d 498, 506 (5th Cir. 2000) ("an executory contract may not be assumed in part and rejected in part. Where the debtor assumes an executory contract, it must assume the entire contract, cum onere—the debtor accepts both the obligations and the benefits of the executory contract."). The Amended Disclosure Statement, however, does not identify any sources of funds for which immediate payment for past work can be made or payment for future work can be derived.

29.     The Amended Plan as described in the Amended Disclosure Statement also will not satisfy the absolute priority rule under section 1129(b)(2)(A).[4]  Section 1129(b)(2)(A) of the Bankruptcy Code provides three alternative standards for determining if a chapter 11 plan is "fair and equitable", and therefore, satisfies the absolute priority rule, with respect to an objecting class of secured creditors.  Neither of the two possible applicable alternatives, section 1129(b)(2)(A)(i) and (iii), will be satisfied under the Amended Plan.

30.     The M&M Lien Takeback Debt does not provide deferred cash payments that are equivalent value to McCarthy's claim.  *See* 11 U.S.C. §1129(b)(2)(A)(i).  Additionally, while superficially it appears that the Amended Plan allows McCarthy to retain its Mechanic's Lien, examination of the New M&M Lien Debt Term Sheet reveals that the Amended Plan effectively strips McCarthy of its Mechanic's Lien.  Under the New M&M Lien Debt Term Sheet, McCarthy would be barred from enforcing its Mechanic's Lien unless and until an Event of Default occurs, as defined by New M&M Lien Debt Term Sheet.  Under the applicable Texas state law, however, a mechanic's lien must be enforced within two years of the last date the claimant could file a lien.  *See* Tex. Prop. Code Ann. § 53.158(a) (effective Sept. 1, 1999 through Dec. 31, 2021).  The limitations period for enforcing a mechanic's lien can be extended by agreement of the parties, but the proposed treatment of McCarthy's Lien does not contemplate a consensual extension of the period under state law to foreclose.

---

[4] While the absolute priority rule is typically a matter to be addressed during confirmation, considerations related to the absolute priority rule warrants discussion at this stage given the deficiencies in the Amended Plan and Debtors' suggestions that it may pursue a cramdown. *In re Divine Ripe, L.L.C.*, 554 B.R. at 409-10 ("While the absolute priority rule is a matter, primarily, for confirmation, a discussion is warranted to disclose potential impacts of the absolute priority rule on Jimenez's planned retention of an interest in Debtor post-confirmation and whether the Plan treats creditors in a fair and equitable manner.").

31. The Amended Plan also fails to provide McCarthy with the "indubitable equivalent" of its claim under section 1129(b)(2)(A)(iii). Stripping McCarthy of its Mechanic's Lien and providing only a fraction of the value of McCarthy's claim does not fully compensate McCarthy as required under the indubitable equivalent standard. *See In re Pearl Res. LLC*, 622 B.R. 236, 271 (Bankr. S.D. Tex. 2020) ("The indubitable equivalent standard requires a showing that the objecting secured creditor will receive the payments to which it is entitled, and that the changes forced upon the objecting creditor are completely compensatory, meaning that the objecting creditor is fully compensated for the rights it is giving up.").

## RESERVATION OF RIGHTS

32. McCarthy continues to review the Amended Disclosure Statement and Amended Plan and reserves all rights in connection with any further revised disclosure statement or plan the Debtors may file and in connection with confirmation of the Amended Plan. McCarthy submits this Objection without prejudice to, and with a full reservation of, McCarthy's rights to supplement or amend this Objection in advance of, or in connection with, the hearing to approve the Amended Disclosure Statement and/or confirmation of the Amended Plan. Nothing herein is intended to be a waiver by McCarthy of any right, objection, argument, claim or defense with respect to any matter, including matters involving the Amended Disclosure Statement and the Amended Plan, all of which are hereby expressly reserved.

## CONCLUSION

McCarthy respectfully requests that the Court deny approval of the Debtors' Amended Disclosure Statement at this time and grant such other and further relief as may be just and proper.

Dated: September 6, 2023                    Respectfully submitted,

*/s/ Jennifer L. Kneeland*
Jennifer L. Kneeland (admitted *pro hac vice*)
Marguerite Lee DeVoll (admitted *pro hac vice*)
**WATT, TIEDER, HOFFAR & FITZGERALD, LLP**
1765 Greensboro Station Place, Suite 1000
McLean, Virginia 22102
Telephone: 703-749-1000
Facsimile: 703-893-8029
Email: jkneeland@watttieder.com
Email: mdevoll@watttieder.com

*Counsel to McCarthy Building Companies, Inc.*

## CERTIFICATE OF SERVICE

   I hereby certify that on September 6, 2023, I caused a true and correct copy of the foregoing document to be served by electronic means through the Court's CM/ECF system to all parties authorized to receive electronic notice in this case. I further certify that I caused a true and correct copy of the foregoing document to be served by electronic mail on the following parties:

| | |
|---|---|
| Core Scientific, Inc.<br>210 Barton Springs Road, Suite 300<br>Austin, Texas 78704<br>Attn: Todd DuChene<br>Email: tduchene@corescientific.com | Weil, Gotshal & Manges LLP<br>767 Fifth Avenue<br>New York, New York 10153<br>Attn: Ray C. Schrock and Ronit J. Berkovich<br>Email: ray.schrock@weil.com<br>ronit.berkovich@weil.com |
| Weil, Gotshal & Manges LLP<br>700 Louisiana Street, Suite 1700<br>Houston, Texas 77002<br>Attn: Alfredo R. Pérez<br>Clifford W. Carlson<br>Email: alfredo.perez@weil.com<br>clifford.carlson@weil.com | Willkie Farr & Gallagher LLP<br>787 Seventh Avenue<br>New York, New York 10019<br>Attn: Brett H. Miller<br>Todd M. Goren<br>James H. Burbage<br>Email: bmiller@willkie.com<br>tgoren@willkie.com<br>jburbage@willkie.com |
| Willkie Farr & Gallagher LLP<br>600 Travis Street<br>Houston, Texas 77002<br>Attn: Jennifer J. Hardy<br>Email: jhardy2@willkie.com | Vinson & Elkins LLP<br>1114 Avenue of the Americas, 32nd Floor<br>New York, New York 10036<br>Attn: David S. Meyer<br>Lauren R. Kanzer<br>Zachary A. Paiva<br>Email: dmeyer@velaw.com<br>lkanzer@velaw.com<br>zpaiva@velaw.com |
| Vinson & Elkins LLP<br>845 Texas Avenue, Suite 4700<br>Houston, Texas 77002<br>Attn: Paul E. Heath<br>Harry A. Perrin<br>Kiran Vakamudi<br>Email: pheath@velaw.com<br>hperrin@velaw.com<br>kvakamudi@velaw.com | B. Riley Commercial Capital, LLC<br>11100 Santa Monica Blvd., Suite 800<br>Los Angeles, California 90025<br>Attn: Perry Mandarino<br>Email: pmandarino@brileyfin.com |
| Choate, Hall & Stewart LLP<br>Two International Place, 34th Floor<br>Boston, Massachusetts 02110<br>Attn: John Ventola | Paul Hastings LLP<br>600 Travis Street, 58th Floor<br>Houston, Texas 77002<br>Attn: James T. Grogan III |

| | |
|---|---|
| Email: jventola@choate.com | Email: jamesgrogan@paulhastings.com |
| Paul Hastings LLP<br>200 Park Avenue<br>New York, New York 10166<br>Attn: Kristopher M. Hansen<br>Sayan Bhattacharyya<br>Erez E. Gilad<br>Joanne Lau<br>Email: krishansen@paulhastings.com<br>sayanbhattacharyya@paulhastings.com<br>erezgilad@paulhastings.com<br>joannelau@paulhastings.com | Office of the United States Trustee<br>515 Rusk Avenue, Suite 3516<br>Houston, Texas 77002<br>Attn: Jayson B. Ruff<br>Alicia Barcomb<br>Email: Jayson.b.ruff@usdoj.gov<br>aliciabarcomb@usdoj.gov |

                                                  */s/ Jennifer L. Kneeland*
                                                  Jennifer L. Kneeland