IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| CORE SCIENTIFIC, INC., *et al.*, | § § § | Case No. 22-90341 (DRJ) |
| | § § | (Jointly Administered) |
| Debtors.[1] | § | |

**DEBTORS' MOTION FOR ENTRY OF ORDER
AUTHORIZING DEBTORS TO (I) ENTER INTO AMENDED EMPLOYMENT
AGREEMENT AND (II) PERFORM ALL OBLIGATIONS THEREUNDER**

> **IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE ELECTRONICALLY AT HTTPS://ECF.TXSB.USCOURTS.GOV/ WITHIN TWENTY-ONE DAYS FROM THE DATE THIS MOTION WAS FILED. IF YOU DO NOT HAVE ELECTRONIC FILING PRIVILEGES, YOU MUST FILE A WRITTEN OBJECTION THAT IS ACTUALLY RECEIVED BY THE CLERK WITHIN TWENTY-ONE DAYS FROM THE DATE THIS MOTION WAS FILED. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

Core Scientific, Inc. ("**Core**") and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), respectfully represent as follows in support of this motion (this "**Motion**"):

**Preliminary Statement**

1. By this Motion, the Debtors seek authority to amend the employment agreement of Ms. Denise Sterling, their Executive Vice President and Chief Financial Officer,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions, VII, LLC (3198). The Debtors' corporate headquarters and service address is 210 Barton Springs Road, Suite 300, Austin, Texas 78704.

to provide for incentive-based payments designed to incentivize Ms. Sterling to meet and exceed challenging performance targets tied to her management of the Debtors' SG&A Expenses (as defined below). As Chief Financial Officer, Ms. Sterling's performance over the coming months will drive the Debtors' ability to meet and exceed certain financial and operational assumptions underpinning their go-forward business plan, including, but not limited to, (i) identifying opportunities to reduce selling, general & administrative expenses (the "**SG&A Expenses**")[2] and other operating expenses and (ii) implementing cost-cutting initiatives. The Debtors rely on Ms. Sterling's in-depth analysis, expertise of financial planning and analysis ("**FP&A**"), and institutional knowledge of the Debtors' businesses, assets, liabilities, counterparties, and operations. Accordingly, the Debtors, with the assistance of their independent compensation consultant, Compensation Advisory Partners ("**CAP**"), have designed an Amendment (as defined below) to Ms. Sterling's employment agreement.

2.  The Amendment provides for modest payouts to Ms. Sterling at varying levels depending on her success in maintaining and reducing the Debtors' SG&A margin (as described further herein, the "**Performance Metric**") during these chapter 11 cases. Under the Amendment, Performance measurements will occur at the end of each month for 3 months, starting with the month beginning September 1, 2023 and continuing through November 30, 2023. For each of these months, Ms. Sterling will receive $25,000, $28,000, or $32,000 if she can meet the Performance Metric at the threshold level (26%), the target level (22%), or the maximum level (20%), as applicable. However, the Amendment provides that Ms. Sterling will not receive any payout unless the Debtors achieve performance at or above the 26% threshold

---

[2] The SG&A Expenses include research and development expenses.

2

level. Indeed, meeting and surpassing the target Performance Metrics will be challenging, but, if achieved, will create value for the Debtors' estates.

3. The Debtors' entry into the Amended Agreement (as defined herein) and performance thereunder represents an exercise of the Debtors' sound business judgment and satisfies the requirements for approval under the Bankruptcy Code. Ms. Sterling has worked extensively to improve the Debtors' SG&A margin throughout these chapter 11 cases and the Amendment will provide additional motivation for her to achieve even better results that will help maximize the value of the Debtors' estates. Accordingly, the Debtors respectfully request that the Court authorize the Debtors to enter into and perform under the Amended Agreement.

## Relief Requested

4. By this Motion, pursuant to sections 105, 363(b), and 503(c)(3) of the chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 6006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rule**"), the Debtors seek authority to (i) enter into an amendment to that certain employment offer letter between Ms. Sterling and Core (such accepted offer letter, the "**Original Agreement**", as amended, the "**Amended Agreement**", and such amendment, the "**Amendment**"), a copy of which is annexed hereto as **Exhibit A**, and (ii) perform all obligations thereunder during these chapter 11 cases.

5. In support of this Motion, the Debtors submit the *Declaration of Adam Sullivan in Support of the Debtors' Motion For Entry of Order Authorizing Debtors to (I) Enter into Amended Employment Agreement and (II) Perform All Obligations Thereunder* attached hereto as **Exhibit B** (the "**Sullivan Declaration**") and the *Declaration of Christopher Earnest in Support of the Debtors' Motion For Entry of Order Authorizing Debtors to (I) Enter into Amended Employment Agreement and (II) Perform All Obligations Thereunder* attached hereto as **Exhibit C** (the "**Earnest Declaration**").

3

6. A proposed form of order granting the relief requested herein is annexed hereto as **Exhibit D** (the "**Proposed Order**").

## Jurisdiction

7. The United States Bankruptcy Court for the Southern District of Texas (the "**Court**") has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

8. On December 21, 2022 (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

9. The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b) and Rule 1015-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Local Rules**"). On January 9, 2023, the United States Trustee for Region 7 (the "**U.S. Trustee**") appointed an official committee of unsecured creditors. On March 23, 2023, the U.S. Trustee appointed an official committee of equity security holders. No trustee or examiner has been appointed in these chapter 11 cases.

10. Prior to the Petition Date, in December 2022, the Debtors, with input from CAP, adopted a two-tier employee retention program (the "**Original KERP**") for certain key employees to ensure their retention throughout the Debtors' chapter 11 cases. Tier 1 of the Original KERP provided awards to certain key executives, including Ms. Sterling, who received a $50,000 retention bonus thereunder prior to the Petition Date.

**Ms. Sterling's Employment**

11. Ms. Sterling joined the Debtors in May 2021 as the Senior Vice President of Corporate Finance and accepted that Original Agreement, which provides for annual base compensation of $300,000 and 300,000 restricted stock units ("**RSU**s"). As the Senior Vice President of Corporate Finance, Ms. Sterling was responsible for the Debtors' accounting and FP&A-related functions and reported to the Debtors' Chief Financial Officer at the time. On April 4, 2022, the Debtors' Board of Directors (the "**Board**") approved the promotion of Ms. Sterling to Executive Vice President and Chief Financial Officer. In connection with Ms. Sterling's promotion, Ms. Sterling's job responsibilities expanded to encompass the overall management, strategy, and direction of the Debtors' various finance, accounting, and FP&A-related functions. She reports to the Debtors' Chief Executive Officer and provides analytical support directly to the Board.

12. Since 2022, Ms. Sterling has also led the Debtors' effort to reduce SG&A Expenses to improve the Debtors' SG&A margin. Following the Petition Date, these efforts have become increasingly challenging because of (i) the need to carefully balance the opportunities to reduce SG&A Expenses against the Debtors' strategies to expand their post-emergence mining and hosting capacities and (ii) the attrition of the Debtors' employees across various finance-related departments and functions. Despite her promotion and heightened responsibilities, Ms. Sterling's base compensation and other terms of the Original Agreement remained the same.

**The Amended Agreement**

13. The Amendment is designed to incentivize Ms. Sterling during the chapter 11 cases to exceed financial and operational targets. The Debtors developed the Performance Metric in collaboration with CAP by evaluating their (i) ongoing operating

5

expenses and cost cutting initiatives, (ii) recent and go-forward revenue performance, (iii) expansion strategies for post-emergence mining and hosting capacities, and (iv) employee attrition on the finance team. The Debtors also engaged in discussions with both the Compensation Committee of the Board of Directors (the "**Compensation Committee**") and the full Board to ensure that the Performance Metric is challenging but will incentivize Ms. Sterling to perform at an even higher level. The Compensation Committee and the Board determined that the Amendment was in the best interests of the Debtors and their estates and that it appropriately addresses the Debtors' objectives. After careful review, the Compensation Committee approved the Amendment and recommended it to the Board, which in turn approved the Amendment on August 25, 2023.

14. A summary of the key terms of the Amendment is set forth below:[3]

| Performance Period | Performance Metric (SG&A Margin) | Monthly Payout |
|---|---|---|
| 9/1/2023 – 9/30/2023 | Threshold: 26% | $25,000 |
| | Target: 22% | $28,000 |
| | Maximum: 20% | $32,000 |
| 10/1/2023 – 10/31/2023 | Threshold: 26% | $25,000 |
| | Target: 22% | $28,000 |
| | Maximum: 20% | $32,000 |
| 11/1/2023 – 11/30/2023 | Threshold: 26% | $25,000 |
| | Target: 22% | $28,000 |
| | Maximum: 20% | $32,000 |

- The Performance Metric will be based on the Debtors' SG&A margin (the SG&A Expenses of each month during the performance period as a percentage of the Debtors' total revenue of each corresponding month during the performance period).

---

[3] In the event of any inconsistency between the summary set forth below and the Amendment, the Amendment shall govern.

- Payouts will occur monthly based on actual performance. If at least the threshold performance is achieved monthly, payouts will occur upon the first scheduled salary payment date after performance results are certified. Performance measurements will occur on: September 30, 2023, October 31, 2023, and November 30, 2023.

- The Amendment does not provide for payouts unless the Debtors achieve performance at or above the threshold level of the Performance Metric. Assuming the Debtors' chapter 11 cases continue through November 30, 2023, the forecasted aggregate cost of the Amendment would be approximately (i) $75,000 at threshold performance, (ii) $84,000 at target performance, and (iii) $96,000 at maximum performance.

- In the event the Debtors emerge from bankruptcy prior to any of the dates above, the outstanding remaining balance of the payout will be payable on the date of emergence, contingent upon actual performance at that time.

- No other material changes were made to the Original Agreement.

### Market Analysis

15. The Debtors retained CAP to, among other things, provide the Debtors, the Compensation Committee, and the Board, with independent compensation consulting services. To ensure that Ms. Sterling's incentive-based payout under the Amendment is market-based and reasonable, CAP reviewed the terms of the Amendment and compared its terms with the structure and costs of fourteen (14) key executive incentive programs approved in comparably sized chapter 11 cases to those of the Debtors. The Performance Metric is commonplace in bankruptcy cases and follows a typical threshold, target, and maximum performance structure. The performance periods and payment schedule under the Amendment are intended to incentivize Ms. Sterling's performance over short periods during a critical time in the Debtors' chapter 11 cases. This is because shorter performance periods provide a greater line of sight with goals and rewards on a more frequent basis and are designed to enhance the competitiveness of the compensation under the Amendment relative to the market.

16. CAP also evaluated the annualized total direct compensation of Ms. Sterling (including Ms. Sterling's retention bonus under the Original KERP, along with her base salary and the potential incentive-based payouts under the Amended Agreement) relative to market compensation of executives in the same position as Ms. Sterling, using a peer group of nineteen (19) comparably sized companies.[4] CAP concluded that absent the Amendment, the total direct compensation of Ms. Sterling would be below the market. Even if Ms. Sterling receives the maximum aggregate payout under the Amended Agreement, (i) such incentive-based compensation would still be below the 25th percentile of the average costs per participant under key executive incentive programs in comparable chapter 11 cases, and (ii) her total compensation would still be below the 25th percentile of market compensation for those in the same position at comparable companies.

### Relief Requested Should Be Granted

17. The Court should grant the relief requested because entry into the Amended Agreement and performance thereunder reflects a reasonable exercise of the Debtors' business judgment and, therefore, is appropriate under section 363(b) of the Bankruptcy Code. Further, the Amendment satisfies section 503(c) of the Bankruptcy Code because it does not provide any retention bonus due to its incentive-based structure and is justified by the facts and circumstances of these chapter 11 cases.

**I.    Entry into the Amended Agreement and Performing the Obligations Thereunder Is a Reasonable Exercise of Sound Business Judgment and Authorized Under Bankruptcy Code Sections 363(b)(1)**

---

[4] The total direct compensation includes the $50,000 retention bonus for Ms. Sterling under the Original KERP. It does not include the RSUs granted to Ms. Sterling. Ms. Sterling was granted 1,000,000,000 RSUs in 2022, which will vest in equal installments in 2023, 2024, 2025, 2026. The 2023 RSUs will vest in September 2023.

18.     Section 363(b) of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Courts in the Fifth Circuit grant a debtor's request to use property of the estate outside of the ordinary course of business pursuant to section 363(b) of the Bankruptcy Code upon a finding that such use is supported by sound business reasons. *See, e.g., In re Cont'l Air Lines*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or a debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business."); *see also In re Crutcher Res. Corp.*, 72 B.R. 628, 631 (Bankr. N.D. Tex. 1987) ("A Bankruptcy Judge has considerable discretion in approving a § 363(b) sale of property of the estate other than in the ordinary course of business, but the movant must articulate some business justification for the sale."); *In re Terrace Gardens Park P'ship*, 96 B.R. 707, 714 (Bankr. W.D. Tex. 1989) (noting that a debtor's request to use property of the estate outside the ordinary course of business requires "an articulated business justification").

19.     The Debtors' entry into the Amended Agreement and performance thereunder represents a reasonable exercise of their business judgment because it will help maximize value for the benefit of all stakeholders. Ms. Sterling occupies an important role within the Debtors and possesses the skills, knowledge, and experience that are necessary to drive the Debtors' performance as these chapter 11 cases progress. As previously noted, the Amendment is designed to incentivize Ms. Sterling to achieve and exceed the Performance Metric. Lowering the Debtors' SG&A margin will improve the operating profits and cash flow, thereby creating additional value for the Debtors' estates. By providing Ms. Sterling with

9

opportunities to earn supplemental compensation tied to her performance, the Amendment enables Ms. Sterling to attain competitive overall compensation more aligned with the market depending upon her ability to achieve the Debtors' goals for reducing SG&A Expenses. Further, the incentive-based compensation structure reflected in the Amended Agreement is the product of an independent analysis undertaken by the Debtors with the assistance of CAP. Accordingly, the Debtors' entry into the Amended Agreement and performance thereunder during these chapter 11 cases are authorized by section 363(b) of the Bankruptcy Code and should be approved.

## II. The Amendment Satisfies Section 503(c) of the Bankruptcy Code

20. The Amendment is consistent with section 503(c) of the Bankruptcy Code because the Amendment does not provide any retention bonus due to its incentive-based structure. Moreover, the Amendment is justified by the facts and circumstances of these chapter 11 cases.

### A. Amendment is Justified by Facts and Circumstances of These Chapter 11 Cases

21. Section 503(c)(3) of the Bankruptcy Code permits payments to a debtor's employees outside the ordinary course of business if such payments are justified by "the facts and circumstances of the case." 11 U.S.C. § 503(c)(3). In determining whether a particular program is justified under the facts and circumstances of a particular case, courts consider whether an incentive-based program "will serve the interests of creditors and the debtor's estate." *In re Country Fresh Holding Co.*, No. 21-30574, 2021 Bankr. LEXIS 1839, at *35 (Bankr. S.D. Tex. July 12, 2021). Courts also consider several other factors, including: (i) whether the program is calculated to achieve the desired performance; (ii) whether the cost of the program is reasonable in the context of a debtor's assets, liabilities, and earning potential;

(iii) whether the scope of the program is fair and reasonable or discriminates unfairly among employees; (iv) whether the program is consistent with industry standards; (v) whether the debtor performed due diligence in investigating the need for the program; and (vi) whether the debtor received independent advice in performing due diligence with respect to creating and authorizing the program. *See Glob. Home Prods.*, 369 B.R. at 786; *In re Dana Corp.*, 358 B.R. 567, 576–77 (Bankr. S.D.N.Y. 2006). No single factor is dispositive, and the Court has discretion to weigh each of these factors based on the specific facts and circumstances before it. *See Dana Corp.*, 358 B.R. at 576 ("[S]ection 503(c)(3) gives the court discretion as to bonus and incentive plans, which are not primarily motivated by retention or in the nature of severance."). As set forth below, the Amendment satisfies all of these factors:

- ***Amendment Is Structured to Achieve the Desired Performance***.

    The Amendment incentivizes Ms. Sterling to achieve optimal business performance goals that will help drive a successful restructuring. Achievement of the Performance Metric will require substantial efforts from Ms. Sterling in the midst of (i) uncertain macroeconomic factors for the Debtors' revenue and costs and (ii) the Debtors' high SG&A Expenses during 2022, which Ms. Sterling has already spent a significant amount of time and effort working to reduce. To earn payouts under the Amendment, Ms. Sterling also needs to carefully balance the opportunities to reduce SG&A Expenses against the Debtors' strategies to expand their post-emergence mining and hosting capacities.

- ***Scope of the Program Is Fair and Reasonable***.

    The Debtors reviewed the senior executive members' compensation and responsibilities and limited the ability to earn supplemental incentive-based compensation to Ms. Sterling via the Amendment to account for (i) the expanded scope of her employment following her promotion to Chief Financial Officer and the Debtors' chapter 11 filing, and (ii) the greater workload she has undertaken as a result of a smaller team. The total cost of the Amendment is reasonable when compared to

11

the average costs per participant under executive incentive programs in comparable chapter 11 cases.

- ***Debtors Developed the Amendment with Independent Advice and Oversight***.

    The Debtors sought input from their legal, financial, and compensation advisors during the development process. However, the Debtors primarily utilized CAP's specific compensation-related expertise and analysis in designing the Amendment. The Compensation Committee provided necessary oversight and approval before recommending the Amendment for approval by the full Board.

- ***Debtors Were Duly Diligent***.

    The Debtors, with the assistance of CAP, performed considerable diligence when assessing Ms. Sterling's existing compensation (both with and without some form of incentive-based compensation), including by looking to market comparables. The Debtors also performed considerable diligence on payouts, metrics, and the performance period when developing the Amendment. As a result of such diligence, the Debtors determined that entry into and performance under the Amended Agreement is appropriate.

- ***The Amendment Is Consistent with Industry Practices***.

    To evaluate an appropriate compensation structure for Ms. Sterling, CAP gathered external market compensation data from several data sources, encompassing a representative database of compensation information for comparable industries and the labor market for executives. The Performance Metric is common in bankruptcy and follows a typical threshold, target, and maximum performance structure. The performance periods and payment schedule under the Amendment are intended to provide a greater line of sight with goals and more frequent rewards to enhance the competitiveness of the compensation under the Amendment. With the potential payouts pursuant to the Amendment, Ms. Sterling's total compensation will be more aligned with the market for those in a similar position as Ms. Sterling.

- ***Cost of the Amendment Is Reasonable***.

    The total cost the Amendment falls well within the range of the average costs per participant of incentive-based programs implemented in comparable chapter 11 cases. Assuming the Debtors' chapter 11 cases continue through November 30, 2023, the total forecasted aggregate cost of the KEIP would be approximately (i) $75,000 at threshold performance, (ii) $84,000 at target performance, and (iii) $96,000 at maximum performance. Even with the payout at maximum threshold and Ms. Sterling's retention bonus under the Original KERP combined, (i) the total cost is still below the 25th percentile of the average costs per participant among a group of fourteen (14) executive incentive-based

programs in comparable chapter 11 cases, and (ii) Ms. Sterling's total direct compensation in the aggregate would be below the 25th percentiles of market compensation for the same position at comparable companies.

22. Accordingly, the Amendment satisfies the standard applicable under section 503(c)(3) of the Bankruptcy Code and is justified under the facts and circumstances of these chapter 11 cases.

### B. Sections 503(c)(1) and 503(c)(2) Do Not Apply to the Amendment Because It Only Provides Incentive-Based Compensation

23. Sections 503(c)(1) and 503(c)(2) of the Bankruptcy Code govern retention and severance payments to insiders. These provisions of the Bankruptcy Code, however, are not applicable in evaluating the Amendment because the Amendment only provides incentive-based compensation.

24. By its plain language, section 503(c)(1) of the Bankruptcy Code pertains solely to retention payments to insiders, and section 503(c)(2) of the Bankruptcy Code addresses only the requirements for severance payments to insiders. Neither provision, however, applies to performance based incentive plans such as the Amendment. *See, e.g.*, *Dana Corp.*, 358 B.R. at 576 (applying section 503(c)(3) of the Bankruptcy Code to evaluate management incentive plan in absence of applicability of sections 503(c)(1) or 503(c)(2)); *In re Alpha Natural Resources, Inc.*, 546 B.R. 348, 355-56 (Bankr. E.D. Va. 2016) ("[T]he analysis under § 503(c) changes when a debtor purports to make a payment not to retain an insider, but primarily to incentivize the insider to achieve certain goals[, and] [o]n its face, § 503(c)(1) does not apply to the KEIP because the payments thereunder are incentive and not purely retentive."); *In re Musicland Holding Corp.*, No. 06-10064 (SMB) (Bankr. S.D.N.Y. Feb. 1, 2006) (finding that incentive-based compensation under management incentive plan did not violate section 503(c) of the Bankruptcy Code).

13

25. The Amendment does not provide any additional benefits to Ms. Sterling upon termination of her employment or provide bonuses for retention. The Amendment does not alter any terms contained in the Original Agreement pertaining to severance payments. Rather, the Amendment only allots payments to Ms. Sterling based on her achievement of various levels of the Performance Metric. Further, the fact that the Amendment may encourage Ms. Sterling to remain employed with the Debtors throughout the chapter 11 cases should not bar the Debtors' performance of their obligations under the Amendment. Indeed, all successful incentive-based programs have the indirect benefit of incentivizing an employee to remain with the company. *See Alpha Natural Resources*, 546 B.R. at 356 ("[A] KEIP that merely has some retentive effect should not be analyzed under § 503(c)(1)."). Moreover, payouts under the Amendment require a far higher threshold than merely remaining employed and there is no guarantee that Ms. Sterling will receive any payouts under the Amendment.

26. In view of the foregoing, the Debtors submit that sections 503(c)(1) and 503(c)(2) of the Bankruptcy Code do not bar the approval of the Amendment and the Debtors' performance of the obligations thereunder.

**Compliance with Bankruptcy Rule 6004(a)
and Waiver of Bankruptcy Rule 6004(h)**

27. To implement the foregoing successfully, the Debtors request that the Court find that notice of the Motion satisfies Bankruptcy Rule 6004(a), and that the Court waive the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h). As explained herein, immediate entry of an Order granting the relief requested herein is necessary to incentivize Ms. Sterling to continue her extraordinary effort to identify and implement opportunities to reduce the Debtors' SG&A Expenses. Accordingly, ample cause exists to justify finding that the notice requirements under Bankruptcy Rule 6004(a) have been

satisfied and to grant a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and such stay apply.

### Reservation of Rights

28. Nothing contained herein is intended to be or shall be deemed as (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver or limitation of the Debtors' or any party in interest's rights to dispute the amount of, basis for, or validity of any claim, (iii) a waiver of the Debtors' or any other party in interest's respective rights under the Bankruptcy Code or any other applicable nonbankruptcy law, (iv) an agreement or obligation to pay any claims, (v) a waiver of any claims or causes of action which may exist against any creditor or interest holder, or (vi) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code. Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

### Notice

29. Notice of this Motion will be served upon any party entitled to notice pursuant to Bankruptcy Rule 2002 and any other party entitled to notice pursuant to Local Rule 9013-1(d).

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: September 9, 2023
Houston, Texas

Respectfully submitted,
/s/ Alfredo R. Pérez
WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (15776275)
Clifford W. Carlson (24090024)
700 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Email: Alfredo.Perez@weil.com
        Clifford.Carlson@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Ray C. Schrock (admitted *pro hac vice*)
Ronit J. Berkovich (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Email: Ray.Schrock@weil.com
        Ronit.Berkovich@weil.com

*Attorneys for Debtors
and Debtors in Possession*

**Certificate of Service**

I hereby certify that, on September 9, 2023, a true and correct copy of the foregoing document was served as provided by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                                 */s/ Alfredo R. Pérez*
                                                 Alfredo R. Pérez