**<u>Exhibit A</u>**

**The Amendment**

## AMENDMENT TO OFFER LETTER

This amendment (this "Amendment") is made to the Offer Letter by and between Denise Sterling ("Executive") and Core Scientific, Inc. ("Core" and together with its subsidiaries and affiliates, the "Company"), dated April 7, 2021 (the "Offer Letter"). This Amendment is subject to approval by the United States Bankruptcy Court for the Southern District of Texas in the Company's corporate reorganization under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Court" and the reorganization, the "Chapter 11 Cases") in all respects and will not be effective unless and until such approval is obtained. This Amendment shall be effective as of [●] (the "Effective Date").

Unless otherwise expressly stated in this Amendment, capitalized terms used in this Amendment will have the meanings as set forth in the Offer Letter.

1. The parties hereby agree that the Offer Letter is amended as follows:

    (a) Section 1 of the Offer Letter is hereby deleted in its entirety and replaced with the following:

    **Position/Reporting**. You shall serve as the Chief Financial Officer of Core and you will report to the Chief Executive Officer of Core. The parties acknowledge that your start date with Core was April 26, 2021 (the "Start Date") and that you served as Senior Vice President of Corporate Finance of Core until your promotion to Chief Financial Officer.

    (b) The following shall be added as a new Section 14 of the Offer Letter, which shall immediately follow Section 13 of the Offer Letter:

    **Incentive Bonus.** You shall be eligible to receive an incentive bonus (the "Incentive Bonus") based on the "SG&A Margin" (as defined below) over the three-month period beginning September 1, 2023 and ending November 30, 2023 (the "Performance Period" and each month of the Performance Period, a "Performance Month"). The Incentive Bonus shall be payable in three payments, each corresponding to one Performance Month (each an "Incentive Bonus Payment" and collectively, the "Incentive Bonus Payments"). The amount of each Incentive Bonus Payment (if any) will be determined by the "Performance Level" (as defined below) achieved in the applicable Performance Month, as determined by the board of directors of Core (the "Board") in its sole discretion.

    i. *Performance Level*. The Performance Level achieved in a given Performance Month, as determined by the Board, in its sole discretion, shall equal a percentage "x" (the "SG&A Margin"), which is determined based on (i) the dollar amount of the selling, general & administrative expenses (including research and development expenses) of the Company (the "SG&A Expenses") divided by (ii) the Company's total revenue in such Performance Month (the "Revenue"). The Performance Level achieved shall be based on the following schedule: (i) Threshold Level ($26\% \geq x > 22\%$), (ii) Target Level ($22\% \geq x > 20\%$) and (iii) Maximum Level ($20\% \geq x$). The amounts of the Incentive Bonus Payments corresponding to performance at the

Threshold Level, Target Level, and Maximum Level (collectively, the "Performance Levels"), respectively, are set forth below:

| Performance Month | Performance Level | Incentive Bonus Payment |
|---|---|---|
| 9/1/2023 – 9/30/2023 | Threshold: 26% | $25,000 |
| | Target: 22% | $28,000 |
| | Maximum: 20% | $32,000 |
| 10/1/2023 – 10/31/2023 | Threshold: 26% | $25,000 |
| | Target: 22% | $28,000 |
| | Maximum: 20% | $32,000 |
| 11/1/2023 – 11/30/2023 | Threshold: 26% | $25,000 |
| | Target: 22% | $28,000 |
| | Maximum: 20% | $32,000 |

Thus, for example, your "Target" Incentive Bonus amount is $84,000 in the aggregate ($28,000 per monthly Incentive Bonus Payment), which represents performance at the Target Level in each Performance Month. The amount payable to you (if any) shall be based on actual results. If the SG&A Margin is greater than 26% for any Performance Month, no Incentive Bonus Payment shall be earned or payable for such month.

ii. *Board Determinations.* The Board shall have full power and discretionary authority to administer the Incentive Bonus, including the authority to interpret and construe this "Incentive Bonus" section of the Letter Agreement, to determine the SG&A Expenses, Revenue, and the level of attainment of the SG&A Margin, and to make all other determinations and take all other actions necessary or advisable for the administration of the Incentive Bonus. The Board's determinations shall be conclusive and binding on the parties.

iii. *Payment Timing.* The Board will determine the Performance Level for each Performance Month as soon as reasonably practicable following the last day of each Performance Month, *i.e.*, September 30, 2023, October 31, 2023, and November 30, 2023 (each, a "Measurement Date"). Each Incentive Bonus Payment shall be made on the first regularly scheduled payroll date following the Board's determination of the Performance Level, but in any event no later than 30 days following the applicable Measurement Date (each, a "Payment Date").

iv. *Chapter 11 Emergence.* If the Company emerges from their Chapter 11 Cases (the "Chapter 11 Emergence") prior to any Measurement Date, then any remaining,

2

        unpaid Incentive Bonus Payments for (i) any completed Performance Month where the applicable Incentive Bonus Payment has not been made, (ii) the Performance Month when the Chapter 11 Emergence occurs, and (iii) the Performance Month, if any, after the Chapter 11 Emergence will be paid to you within 15 days following the date of the Chapter 11 Emergence.  If any Performance Month is incomplete at the time of the Chapter 11 Emergence, the Board shall determine an Incentive Bonus Payment amount (if any) for such Performance Month(s) in its sole discretion, based on the actual SG&A Margin for the Performance Month in which the Chapter 11 Emergence occurs to date (*i.e.*, from the first day of such Performance Month through the date of the Chapter 11 Emergence), which will be paid to you within 15 days following the date of the Chapter 11 Emergence. The occurrence of the Chapter 11 Emergence and the effective date thereof shall be determined in accordance with the terms of a chapter 11 plan of reorganization that is approved by the Bankruptcy Court.

    v.    *Employment Requirement*. Your right to receive each Incentive Bonus Payment (if any) is conditioned upon your continued employment with the Company (or its successor) through the date that is the earlier of (i) the applicable Payment Date and (ii) the date of the Chapter 11 Emergence. If your employment is terminated for any reason prior to the payment of any portion of the Incentive Bonus, you will have no right or entitlement to any unpaid Incentive Bonus Payments.

    vi.    *Bankruptcy Court Authority*. The terms and conditions of the Incentive Bonus shall be subject in all respects to the order of the Bankruptcy Court approving the *Debtor's Motion for Entry of Order Approving and Authorizing Debtors to (I) Enter into Amended Employment Agreement and (II) Perform All Obligations Thereunder* (Docket No. [●]) in the Chapter 11 Cases.

    2.    Except as expressly set forth herein, this Amendment will not constitute an amendment or waiver of any provision of the Offer Letter, which will continue and remain in full force and effect in accordance with its terms.  This Offer Letter will be governed by, and construed and interpreted in accordance with, the laws of the state of Washington, without regard to its otherwise applicable principles of conflicts of laws or choice of law that would result in the application of the substantive or procedural law of any other jurisdiction.  This Amendment may be executed in multiple counterparts (including by PDF or facsimile) all of which taken together will constitute one and the same original.

[*Signature page follows*]

**IN WITNESS WHEREOF,** the parties hereto have executed this Agreement as of the Effective Date.

.

**CORE SCIENTIFIC, INC.**

_____
By:
Title:

**EXECUTIVE VICE PRESIDENT AND CHIEF FINANCIAL OFFICER**

.

_____
Denise Sterling

[*Signature Page to Amendment to Offer Letter*]

## **Exhibit B**

**The Sullivan Declaration**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| CORE SCIENTIFIC, INC., *et al.*, | § § § | Case No. 22-90341 (DRJ) |
| | § § | (Jointly Administered) |
| Debtors.[1] | § § § | |

DECLARATION OF ADAM SULLIVAN IN
SUPPORT OF DEBTORS' MOTION FOR ENTRY OF ORDER
AUTHORIZING DEBTORS TO (I) ENTER INTO AMENDED EMPLOYMENT
AGREEMENT AND (II) PERFORM ALL OBLIGATIONS THEREUNDER

I, Adam Sullivan, pursuant to section 1746 of title 28 of the United States Code, hereby declare under penalty of perjury that the following is true to the best of my knowledge, information, and belief:

1. I am the President and the interim Chief Executive Officer at Core Scientific Operating Company f/k/a Core Scientific, Inc. ("**Core**", and together with its above-captioned debtor affiliates, the "**Debtors**"). I have served as the President since May 15, 2023 and the interim Chief Executive Officer since July 21, 2023. Before that, starting in September 2017, I held various roles at XMS Capital Partners, most recently the Managing Director and the Head of Digital Assets and Infrastructure Group, where I oversaw over $5 billion of transactions, including

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions, VII, LLC (3198). The Debtors' corporate headquarters and service address is 210 Barton Springs Road, Suite 300, Austin, Texas 78704.

representing Power and Digital Infrastructure Acquisition Corporation in its acquisition of Core Scientific Holding Company in 2021.  I hold a Bachelor's of Arts from the University of Rochester.

2. I make this declaration in support of the Debtors' *Motion for Entry of Order Authorizing Debtors to (I) Assume Amended Employment Agreement and (II) Perform All Obligations Thereunder* (the "**Motion**").[2]  Except as otherwise indicated herein, all facts and personal opinion set forth in this declaration (the "**Declaration**") are based on my experience and personal knowledge of the above-captioned debtors (the "**Debtors**"), their operations and finances and  information learned during the course of my employment.  I have also reviewed relevant documents and have received information from conversations with the Debtors' management team, the Debtors' Advisors, or employees of the Debtors working directly with me or under my supervision, direction, or control.  If called upon to testify, I could and would competently testify to the facts and personal opinions set forth in this Declaration on that basis.

3. Ms. Sterling has proved to be an invaluable member of the Debtors' executive team.  She joined the Debtors in May 2021 as the Senior Vice President of Corporate Finance.  As the Senior Vice President of Corporate Finance, Ms. Sterling was responsible for the Debtors' accounting and financial planning and analysis ("**FP&A**")-related functions and reported to the Debtors' Chief Financial Officer at the time.  On April 4, 2022, the Debtors' Board of Directors (the "**Board**") approved the promotion of Ms. Sterling to Executive Vice President and Chief Financial Officer.  In connection with Ms. Sterling's promotion, Ms. Sterling's job responsibilities expanded to encompass the overall management, strategy, and direction of the Debtors' various finance, accounting, and FP&A-related functions.  She reports to me and provides analytical support directly to the Board.  Since 2022, Ms. Sterling has also led the Debtors' effort

---

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

to reduce SG&A Expenses to improve the Debtors' SG&A margin. Despite her promotion and heightened responsibilities, Ms. Sterling's base compensation and other terms of the Original Agreement remain the same.

4. Ms. Sterling's performance over the coming months will drive the Debtors' ability to meet and exceed certain financial and operational assumptions underpinning their go-forward business plan, including, but not limited to, (i) identifying opportunities to reduce selling, general & administrative expenses (the "**SG&A Expenses**")[3] and other operating expenses and (ii) implementing cost-cutting initiatives, which Ms. Sterling has spent a significant amount of effort on since 2023. These tasks present unique challenges because (1) reducing SG&A Expenses is one of the key aspects of the Debtors' go-forward business plan, as the Debtors experienced tremendously high SG&A Expenses during fiscal year 2022; (2) there has been employee attrition of the Debtors' finance team since the Petition Date; and (3) the Debtors are simultaneously seeking to expand their post-emergence mining and hosting capacity on the one hand, and to identify and implement opportunities to reduce SG&A Expenses on the other, all without impacting the Debtors' expansion strategies. This requires Ms. Sterling's in-depth analysis, FP&A expertise, and institutional knowledge of the Debtors' operation. Properly motivating and rewarding performance by Ms. Sterling maximizes value for the benefit of all of the Debtors' estates.

5. The Debtors, with the assistance of their independent compensation consultant, Compensation Advisory Partners ("**CAP**"), have designed an amendment to the Original Agreement (as amended, the "**Amended Agreement**", and such amendment, the

---

[3] The SG&A Expenses include research and development expenses.

3

"**Amendment**"). The Amendment was approved by the Compensation Committee and the Board on August 25, 2023.

6. I believe that entry into the Amended Agreement and payment of the amounts contemplated and performance thereunder represent reasonable exercises of the Debtors' business judgment and will benefit the Debtors' estates. Ms. Sterling occupies an important role within the Debtors and possesses the skills, knowledge, and experience that are necessary to drive the Debtors' performance as these chapter 11 cases progress. The Amendment is designed to incentivize Ms. Sterling to achieve and exceed the Performance Metric. Lowering the Debtors' SG&A margin will improve the operating profits and cash flow, thereby creating additional value for the Debtors' estates. By providing Ms. Sterling with opportunities to earn supplemental compensation tied to her performance, the Amendment enables Ms. Sterling to attain competitive overall compensation more aligned with the market depending upon her ability to achieve the Debtors' goals for reducing SG&A Expenses. Accordingly, the Debtors' entry into the Amended Agreement and performance thereunder during these chapter 11 cases are authorized by section 363(b) of the Bankruptcy Code and should be approved.

7. I also believe that the Amendment is justified by the facts and circumstances of these chapter 11 cases. Achievement of the Performance Metric under the Amendment will require substantial efforts from Ms. Sterling in the midst of (1) uncertain macroeconomic factors for the Debtors' revenue and costs and (2) the Debtors' high SG&A Expenses during 2022, which Ms. Sterling has already spent a significant amount of time and effort working to reduce. To earn payouts under the Amendment, Ms. Sterling also needs to (1) carefully balance the opportunities to reduce SG&A Expenses against the Debtors' strategies to expand their post-emergence mining and hosting capacities, and (2) achieve the Performance Metric with less employees on the team

she manages than there were on the Petition Date. The Debtors reviewed the senior executive members' compensation and responsibilities and limited the ability to earn supplemental incentive-based compensation to Ms. Sterling via the Amendment to account for (1) the expanded scope of her employment following her promotion to Chief Financial Officer and the Debtors' chapter 11 filing, and (2) the greater workload she has undertaken as a result of a smaller team. I believe the total cost of the Amendment is reasonable when compared to the average costs per participant under executive incentive programs in comparable chapter 11 cases.

8. For the foregoing reasons, I believe that the Court should approve and authorize the Debtors to enter into the Amended Agreement and perform all obligations thereunder.

I hereby declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated:  September 9, 2023
            Bellevue, Washington

                                    Respectfully submitted,

                                    By:    */s/ Adam Sullivan*
                                           Adam Sullivan
                                           President and Interim Chief Executive Officer

**Exhibit C**

**The Earnest Declaration**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| CORE SCIENTIFIC, INC., *et al.*, | § § § | Case No. 22-90341 (DRJ) |
| Debtors.[1] | § § § § | (Jointly Administered) |

**DECLARATION OF CHRISTOPHER EARNEST IN
SUPPORT OF DEBTORS' MOTION FOR ENTRY OF ORDER
AUTHORIZING DEBTORS TO (I) ENTER INTO AMENDED EMPLOYMENT
AGREEMENT AND (II) PERFORM ALL OBLIGATIONS THEREUNDER**

I, Christopher Earnest, pursuant to section 1746 of title 28 of the United States Code, hereby declare under penalty of perjury that the following is true to the best of my knowledge, information, and belief:

1. I am a Partner of Compensation Advisory Partners ("**CAP**"). I have over 17 years of experience consulting with compensation committees and management teams. I consult in all areas of executive compensation ranging from short and long-term incentive program design to performance measurement, target setting and regulatory/compliance related issues. I also advise on director compensation programs. I have experience consulting with companies ranging from private entities to Fortune 100 companies across a variety of industries including oil & gas, manufacturing, chemicals, engineering and construction, technology and retail. I have also

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions, VII, LLC (3198). The Debtors' corporate headquarters and service address is 210 Barton Springs Road, Suite 300, Austin, Texas 78704.

testified in the Southern District of Texas as a designated compensation expert in bankruptcy related proceedings. Prior to joining CAP, I was a Managing Director at Pearl Meyer. I began my career as an attorney in Houston where I practiced law for over 4 years before transitioning to consulting. I hold a Bachelor of Science in Law & Society with a minor in Business Administration from the University of Tulsa. I also hold a Juris Doctor and a Master of Business Administration from the University of Tulsa.

2.  On or around April 12, 2022, Core Scientific Operating Company f/k/a Core Scientific, Inc. ("**Core**"), one of the above captioned debtors and debtors in possession (the "**Debtors**") engaged CAP to provide the Debtors, the Compensation Committee and the Board with independent compensation consulting services.

3.  I am familiar with Ms. Sterling's compensation under the Original Agreement, and the amendment of the Original Agreement (as amended, the "**Amended Agreement**", and such amendment, the "**Amendment**"), including the incentive-based compensation pursuant to the Amendment.

4.  I make this declaration in support of the Debtors' *Motion for Entry of Order Authorizing Debtors to (I) Enter into Amended Employment Agreement and (II) Perform All Obligations Thereunder* (the "**Motion**").[2] Except as otherwise indicated herein, all facts and personal opinion set forth in this declaration (the "**Declaration**") are based on my review of the Debtors' operations and finances, my research into compensation practices for comparable companies in the Debtors' industry and those that have filed for chapter 11 protection, and information supplied to me by members of the Debtors' management team and the Debtors' other advisors. For the reasons described below, it is my opinion that the Amendment is reasonable and

---

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

2

consistent with market practice both for companies in the Debtors' industry and those in chapter 11. If called upon to testify, I could and would competently testify to the facts and personal opinions set forth in this Declaration on that basis.

5. It is my opinion that the Amendment is designed to incentivize Ms. Sterling during the chapter 11 cases to exceed financial and operational targets. The Debtors developed the Performance Metric in collaboration with CAP by evaluating their (i) ongoing operating expenses and cost cutting initiatives, (ii) recent and go-forward revenue performance, (iii) expansion strategies for post-emergence mining and hosting capacities, and (iv) employee attrition on the finance team that Ms. Sterling manages. The Debtors also engaged in discussions with both the Compensation Committee of the Board of Directors and the full Board of Directors to ensure that the Performance Metric is appropriate. The Compensation Committee and the Board determined that the Amendment was in the best interests of the Debtors and their estates and that it appropriately addresses the Debtors' objectives.

6. It is also my opinion that the Amendment and the Amended Agreement is consistent with market practice and reasonable given the facts and circumstances. The Performance Metric is common in bankruptcy and follows a typical threshold, target, and maximum performance structure. The performance periods and payment schedule under the Amendment are intended to incentivize Ms. Sterling's performance over short periods during a critical time in the Debtors' chapter 11 cases; shorter performance periods provide a greater line of sight with goals and rewards on a more frequent basis in an effort to enhance the competitiveness of the compensation under the Amendment. With the potential payouts pursuant to the Amendment, Mrs. Sterling's total compensation will be more aligned with the market for those in a similar position as Mrs. Sterling.

7. To ensure that Ms. Sterling's incentive-based payout under the Amendment is market-based and reasonable, CAP reviewed the Amendment and compared its terms with the structure and costs of fourteen (14) key executive incentive programs approved in comparably sized chapter 11 cases to those of the Debtors. CAP also evaluated the total direct compensation of Ms. Sterling (including Ms. Sterling's retention bonus under the Original KERP along with her base salary and the potential incentive-based payouts under the Amended Agreement) relative to market compensation of executives in the same position as Ms. Sterling, using a peer group of nineteen (19) comparably sized companies. CAP determined, based on its review and depth of industry experience, that (i) even if Ms. Sterling receives the maximum aggregate payout under the Amended Agreement, such incentive-based compensation would still be below the 25th percentile of the average costs per participant under key executive incentive programs in comparable chapter 11 cases, and (ii) her total compensation would still be below the 25th percentile of market compensation for those in the same position at comparable companies. Therefore, CAP concluded that while the Amendment will allow the Debtors to provide Ms. Sterling somewhat more competitive compensation with the market, both the Amendment and the Amended Agreement are consistent with market practice and reasonable given the facts and circumstances.

5

I hereby declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: September 9, 2023
   Houston, Texas

              Respectfully submitted,

              By:  */s/ Christopher Earnest*
                  Christopher Earnest
                  Partner
                  Compensation Advisory Partners