## Exhibit B

**Bros Declaration**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | § § | Chapter 11 |
| CORE SCIENTIFIC, INC., *et al.*, | § § § | Case No. 22-90341 (DRJ) |
|  | § § | (Jointly Administered) |
| Debtors.[1] | § § § |  |

### DECLARATION OF MICHAEL BROS
### IN SUPPORT OF MOTION OF DEBTORS FOR
### ENTRY OF ORDER APPROVING AND AUTHORIZING
### IMPLEMENTATION OF NON-INSIDER KEY EMPLOYEE RETENTION PLAN

I, Michael Bros, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge, information and belief:

1. I am the Senior Vice President of Capital Markets & Acquisitions at Core Scientific, Inc. ("**Core**", and together with its above-captioned debtor subsidiaries and affiliates, the "**Debtors**"). I have served in this capacity since January 2022. Before that, starting in December 2018, I was the Debtors' Vice President of Corporate Development. Prior to joining Core, I held various positions at Kayne Anderson from 2014 to 2018 and Merrill Lynch from 2011 to 2014. I hold a Bachelor of Arts from the University of Saint Thomas and a Master of Business Administration from the University of California, Los Angeles Anderson School of Management.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions, VII, LLC (3198). The Debtors' corporate headquarters and service address is 210 Barton Springs Road, Suite 300, Austin, Texas 78704.

2

2. I am familiar with the Debtors' KERP and the proposed Supplemental KERP Payments thereunder, as set forth in the *Motion of Debtors for Entry of Order Approving and Authorizing Implementation of Supplemental Non-Insider Key Employee Retention Plan* (the "**Motion**"),[2] filed contemporaneously herewith. I respectfully submit this declaration (the "**Declaration**") in support of the Motion. Unless otherwise stated, the facts and opinions set forth in this Declaration are based on my personal knowledge and experience or otherwise based on the Debtors' business records to which I have access and familiarity in my capacity as Senior Vice President of Capital Markets & Acquisitions, and are true to the best of my knowledge. If called upon to testify, I would testify competently to the facts set forth in this Declaration.

3. In my capacity as the Debtors' Senior Vice President of Capital Markets & Acquisitions, I am generally knowledgeable and familiar with the Debtors' day-to-day operations, businesses and financial affairs, books and records, the circumstances leading to the commencement of these chapter 11 cases, and the development of these chapter 11 cases since the Petition Date.

4. I am familiar with the Supplemental KERP (defined below) and believe that the Supplemental KERP and the contemplated payments to non-insider participants thereunder are essential to maintaining and improving the Debtors' financial and operational performance and to achieving a reorganization that maximizes value for all stakeholders. In my estimation, failure to implement the Supplemental KERP as set forth in the Motion would jeopardize the Debtors' effective operations to the detriment of all stakeholders.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

3

**Chapter 11 Cases and Need for KERP**

5. The Debtors' business has performed exceptionally well during these chapter 11 cases and the Debtors have made meaningful progress towards confirming a value-maximizing chapter 11 plan, each in large part due to their employees' expertise, hard work, and dedication. Among other accomplishments, the Debtors have filed a chapter 11 plan[3] and disclosure statement,[4] entered into numerous settlements with various creditors, obtained support for the Plan from a number of key stakeholders, and a hearing to consider approval of the Disclosure Statement is scheduled for September 27, 2023. Notwithstanding the substantial progress to date, significant work remains to emerge from these chapter 11 cases and the Debtors' employees will continue to play a central role in advancing these chapter 11 cases to their conclusion. Unfortunately, the Debtors have faced notable employee attrition, particularly in the various finance-related departments and functions of the Debtors, since the Petition Date due to the prolonged chapter 11 cases and increased workload. The Debtors cannot risk losing their employees at this juncture.

6. The Debtors recognized the resulting heavy burden imposed on their operations, much of which has been and will continue to be borne by their employees. Accordingly, the Debtors, with input from their compensation consultant Compensation Advisory Partners ("**CAP**"), designed a supplemental key employee retention program (the "**Supplemental KERP**"). The Supplemental KERP, which does not include any statutory "insiders," provides for incremental payments of bonuses to 22 non-insider employees in an aggregate amount not to

---

[3] *Second Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors* (Docket No. 1199) (as may be amended, supplemented, or modified from time to time, the "**Plan**").

[4] *Disclosure Statement for Second Joint Chapter 11 Plan of Core Scientific, Inc. and Its Debtor Affiliates* (Docket No. 1200) (as may be amended, supplemented, or modified from time to time, the "**Disclosure Statement**").

exceed $675,000 (the "**Supplemental KERP Payments**").  Pursuant to the Supplemental KERP, each participating key employee (each a "**Supplemental KERP Participant**" and collectively, the "**Supplemental KERP Participants**") is entitled to receive cash retention bonuses.  The first installment is scheduled to be paid on the first regular payroll date following entry of an order approving this Motion or as soon as reasonably practicable thereafter.  The remaining installment(s), if any, will each be paid quarterly under the same payment schedule as the Original KERP and in accordance with the terms of the applicable supplemental retention agreement signed by each Supplemental KERP Participant.  However, if a "Restructuring Event"[5] is consummated prior to any scheduled payment, any remaining, unpaid quarterly bonus payments will be paid within fifteen (15) days following such Restructuring Event.

7. To confirm their Plan and emerge from chapter 11, a number of important tasks must be completed.  Specifically, among other things, the Debtors must: (i) continue to negotiate with key constituents and build consensus around the terms of the value-maximizing transaction embodied in the Plan; (ii) push forward towards confirmation of the Plan in the event a global resolution cannot be achieved; (iii) closely monitor and control costs to preserve value and maximize recoveries; (iv) satisfy reporting and other requirements under the Bankruptcy Code (as defined herein); and (v) coordinate with key stakeholders groups to ensure the smooth administration of and exit from these chapter 11 cases.  Employees' work on each of these workstreams (in addition to the normal job duties required to successfully operate the Debtors' business) has demanded and will continue to demand extraordinary amounts of time, dedication,

---

[5] The term "Restructuring Event" is defined in each employee retention letter as "a transaction or series of transactions consummated after the date hereof, involving (i) the sale of all or substantially all of the [Debtors'] assets, including under Section 363 of the Bankruptcy Code, or (ii) the recapitalization or restructuring of all or substantially all of the equity and/or debt securities and/or other indebtedness of the [Debtors], which recapitalization or restructuring is effected pursuant to an exchange transaction, tender offer, plan of reorganization pursuant to chapter 11 of the United States Bankruptcy Code or otherwise."

and focus, including from the Debtors' employees and, in particular, the Supplemental KERP Participants. Confirmation of a value-maximizing plan and emergence from bankruptcy is only achievable with the continued support of certain of the Debtors' key employees, who have worked and continue to work tirelessly to achieve the best possible outcome for all stakeholders in these chapter 11 cases. These Supplemental KERP Participants have in-depth knowledge of the Debtors' business, assets, liabilities, facilities, and mining and hosting operations, and are essential to the Debtors' ability to carry out the tasks critical to the maintenance and maximization of enterprise value, many of which are outside the scope of the ordinary duties of these employees.

8. I believe failure to implement the Supplemental KERP could result in losing one or more employees that (i) are necessary to the company's continued success and (ii) play a major role in the Debtors' restructuring efforts. At this juncture in the Debtors' restructuring, the Debtors cannot afford to lose momentum due to distractions or loss of critical employees. Maintaining and promoting morale and providing appropriate compensation incentives are essential to the Debtors' business and ability to preserve and maximize value. Accordingly, I believe that paying the modest Supplemental KERP Payments would serve these ends and promote continued success through these chapter 11 cases.

### Development of Supplemental KERP

9. Considering (1) the central role that the KERP Participants play in the Debtors' operation and advancing these chapter 11 cases to their conclusion and (2) the additional workload, pressure, and challenges faced by the KERP Participants caused by the prolonged chapter 11 cases and the Debtors' employee attritions, the Debtors' management, with the assistance of the Debtors' advisors at CAP, continued the process to maintain and improve employee programs that would appropriately retain employees and ensure that the Debtors' business needs would be met during the chapter 11 process. It is my understanding that the

6

resulting Supplemental KERP aligns with market standards and I believe that it maintains employee trust and continuity as the Debtors continue to navigate these work-intensive chapter 11 cases. It is my understanding that CAP compared the KERPs, including the total scope and cost, to retention plans implemented in chapter 11 cases of companies of similar size to ensure that both the Supplemental KERP in isolation and the KERPs altogether were within the range of reasonableness and consistent with market practices. In fact, the total costs under the KERPs (i.e., combined awards under both the Original KERP and Supplemental KERP) are still well below other key employee retention programs of comparable companies. The Supplemental KERP was carefully evaluated both in isolation and together with the Original KERP and approved by the Compensation Committee, which consists solely of independent directors, as well as the Board.

10. The Debtors worked to develop the specific and narrowly-tailored Supplemental KERP, with an aggregate maximum payout up to approximately $675,000 for 22 non-insider Supplemental KERP Participants.[6] The Supplemental KERP provides for incremental bonuses in addition to the payments under the Original KERP based upon based upon (1) the Debtors' business judgment in determining the need to retain such key employees throughout the restructuring process and (2) the concern that the Supplemental KERP Participants would terminate their employment with the Debtors in the absence of such additional payments. The Supplemental KERP Participants will execute the supplemental retention agreements prior to the receipt of the first installment of their respective Supplemental KERP Payments.

11. The Supplemental KERP Participants are among the many employees critical to the Debtors' business and were thus selected for participation in the Supplemental KERP

---

[6] For confidentiality reasons, the specific details for each Supplemental KERP Participant are not included in this filing, but the Debtors will provide or have provided this information on a confidential basis to the U.S. Trustee, the advisors to the Ad Hoc Noteholder Group, and the advisors to the Creditors' Committee and can make it available to the Court or file it under seal if requested to do so.

7

based on their experience, skillset, position, unique abilities, importance to their respective business segment, and role over the upcoming months in continuing to the Debtors' emergence from chapter 11. The Supplemental KERP Participants perform a variety of core business functions for the Debtors—including, among other things, engineering, data centers, human resources, finance, and IT—all of which are vital to the Debtors' ability to maintain operational stability and preserve and enhance stakeholder value.

12. I believe that the Supplemental KERP Participants, if lost, would likely cost the Debtors more in replacement expenses and lost revenues than the Supplemental KERP Payments contemplated by this Motion. Losing such employees would challenge the Debtors' operational stability during these chapter 11 cases and the Debtors' reorganization efforts generally. The loss of even a few of the Supplemental KERP Participants could have a material, detrimental impact on the Debtors.

13. Accordingly, the Debtors modeled the Supplemental KERP to (i) retain employees who are essential to the Debtors' ability to meet business objectives and facilitate a successful outcome in these cases, (ii) appropriately balance the need to retain employees critical to the Debtors' restructuring efforts while protecting creditor interests, and (iii) harmonize with market practice. The Supplemental KERP helps ensure that the Supplemental KERP Participants, who are critical to the Debtors' operations and ability to properly effectuate a successful restructuring, remain with the Debtors throughout the restructuring process.

14. Further, none of the Supplemental KERP Participants has discretionary control over any substantial budgetary amounts or the ability to dictate company policy. Second, although certain of the Supplemental KERP Participants hold titles such as "vice president," or "senior vice president," such employees are supervised by senior management and must obtain

approval from senior management before taking any action with respect to the disposition of significant assets or the Debtors' corporate policy. None of the Supplemental KERP Participants is a member of the Board or participates in the Debtors' corporate governance. The Supplemental KERP Participants thus do not have the authority to dictate corporate policy or the disposition of corporate assets.

15. The Supplemental KERP is summarized as follows:

| Summary of Supplemental KERP ||
|---|---|
| **Supplemental KERP Participants** | 22 non-insider key employees. |
| **Total Cost of Supplemental KERP** | Aggregate amount not to exceed approximately $675,000 (the maximum amount if all Supplemental KERP Payments are paid in full).<br><br>Individual KERP awards range from $10,000 to $75,000 per Supplemental KERP Participant. |
| **Timing of Payments** | The first installment is scheduled to be paid on the first regular payroll date following the approval of the Supplemental KERP, or as soon as reasonably practicable thereafter, with the remaining installment(s), if any, to be paid in sync (if possible) with any remaining quarterly payouts approved under the Original KERP; *provided*, that if a "Restructuring Event' is consummated prior to any scheduled payment, any remaining, unpaid quarterly installment payments will be paid within fifteen (15) days following such Restructuring Event. |
| **Structure** | The Supplemental KERP Payments are to be paid in cash lump sums minus taxes.<br><br>In order to receive each installment payment, the supplemental retention agreements require the Supplemental KERP Participants to stay at Core during the period through the date that is the earlier of (i) each applicable payment date and (ii) the date of consummation of a Restructuring Event. Termination of employment prior to such events will result in forfeiture of any remaining payments. |

## **Conclusion**

16.     Based on the analysis conducted by the Debtors and CAP, my own experience, and my business judgment, I believe that the Supplemental KERP, including the Supplemental KERP Payments, is necessary, reasonable, and specifically targeted to achieve important goals during these chapter 11 cases.

17.     If the requested relief is not approved by the Court, I believe that the ongoing employee attrition will deteriorate and severely disrupt the Debtors' business and diminish the value of their estates. The Debtors' ability to retain their employees is, of course, essential to the Debtors' business. The inability to do so would prevent the Debtors from generating revenues critical to operating their business and effectuating a value-maximizing restructuring.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: September 9, 2023

By: /s/ *Michael Bros*
Michael Bros
Senior Vice President of Capital Markets
& Acquisitions