IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| **CORE SCIENTIFIC, INC.**, *et al.*, | § | Case No. 22-90341 (DRJ) |
| | § | |
| Debtors.[1] | § | (Jointly Administered) |

**SPHERE 3D CORP.'S EMERGENCY MOTION FOR
ENTRY OF AN ORDER (I) COMPELLING THE DEBTORS TO SUPPLEMENT
DISCOVERY RESPONSES AND (II) GRANTING RELATED RELIEF**
[Relates to Docket No. 1188]

> **Emergency relief has been requested. Relief is requested not later than 1:00 p.m. (prevailing Central Time) on September 13, 2023.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on September 13, 2023 at 1:00 p.m. (prevailing Central Time) in Courtroom 400, 4th floor, 515 Rusk Street, Houston, Texas 77002. You may participate in the hearing either in person or by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at 832-917-1510. Once connected, you will be asked to enter the conference room number. Judge Jones' conference room number is 205691. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Jones' home page. The meeting code is "JudgeJones". Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Jones' home page. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are as follows: Core Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (N/A); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions, VII, LLC (3198) (each a "Debtor" and collectively, the "Debtors"). The Debtors' corporate headquarters and service address is 210 Barton Springs Road, Suite 300, Austin, Texas 78704.

Sphere 3D Corp. ("Sphere") files this emergency motion (the "Motion") for an order, substantially in the form attached hereto, compelling the Debtors to supplement their discovery responses by no later than 5:00 p.m. (prevailing Central Time) on September 15, 2023. Sphere seeks this relief on an emergency basis in order to ensure discovery can be completed by October 23, 2023, in accordance with the *Agreed Scheduling Order* [Docket No. 1188] (the "Scheduling Order").

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. This Motion seeks relief pursuant to 11 U.S.C. § 105(a); Federal Rules of Bankruptcy Procedure 7026, 7033, 7034, 7036, and 7037; and Federal Rules of Civil Procedure 26, 33, 34, 36, 37.

## BACKGROUND

3. As the Court is well-aware, this contested matter revolves around Sphere's claims (as more fully set forth in proofs of claim numbers 358 and 359, the "Claims") against certain of the Debtors, specifically, Core Scientific Inc. and Core Scientific Operating Company (collectively, "Core") for, among other things, approximately $34 million in deposits paid to Core for which Sphere has not received any benefit.

4. Following a hearing on August 7, 2023, the Court denied Core's motion for summary judgment and set a trial to begin on January 3, 2024.[2] Acknowledging the short time frame, the Court stated that the parties should immediately bring discovery disputes to the Court.

---

[2] *See Order Denying Debtors' Motion for Summary Judgment with Respect to Proof of Claim Nos. 358 and 359 filed by Sphere 3D Corp.* [Docket No. 1122]; *see also* Scheduling Order.

Motion for Summ. J. Tr. 88: 8–10, Aug. 7, 2023 ("[D]iscovery, again, because we've got such a short time frame, do not engage in a letter-writing campaign. Come see me immediately."). Per the Court's instruction, the parties subsequently prepared a scheduling order working backwards from the January 3, 2024, trial date.

5. On August 14, 2023, the parties filed a proposed scheduling order,[3] and on August 30, 2023, the Court entered the Scheduling Order. The Scheduling Order set, among others, the following discovery deadlines: (i) serve initial discovery requests by August 18, 2023; (ii) respond to those initial requests by September 8, 2023; and (iii) complete document discovery by October 23, 2023.

6. For its initial discovery, Sphere interposed three requests for admission as part of its First Set of Requests for Admission (the "RFAs"); fifteen interrogatories as part of its First Set of Interrogatories (the "Interrogatories"); and twenty-two requests for production as part of its first set of Requests for Production (the "RFPs" and together with the RFAs and the Interrogatories, "Sphere's Initial Discovery Requests").[4]

7. Unfortunately, a number of the responses Core provided were deficient, as detailed in Sphere's correspondence to Core dated September 10 and 11, 2023. *See* Wolfe Decl., Exs. 1 and 2. On September 12, 2023, the parties met-and-conferred on Sphere's Initial Discovery Requests and Sphere's responses to Core's initial discovery requests. Although the parties were able to come to common ground on many issues, they have reached an impasse on the issues set forth below. For the following reasons, Sphere respectfully requests that the Court: (i) order Core to respond to RFA No. 2 as written; (2) order Core to supplement its responses to Interrogatory

---

[3] *See* Docket No. 1147.
[4] By contrast, Core interposed forty requests for production, twenty interrogatories, and twelve requests for admission to Sphere.

Nos. 3, 4, 9, and 10; and (iii) overrule Core's objections to RFP No. 13 and order it to respond. *See* Wolfe Decl., Ex. 3 (Core's Responses to Sphere's RFAs), Ex. 4 (Core's Responses to Sphere's Interrogatories), Ex. 5 (Core's Responses to Sphere's RFPs).

## **ARGUMENT**

**I.    CORE'S DEFICIENT RESPONSES TO SPHERE'S REQUESTS FOR ADMISSION**

8.    Sphere's RFA No. 2 asked Core to "Admit that You signed off on Sphere's press release dated October 13, 2021, which is available at: https://www.sec.gov/Archives/edgar/data/1591956/000106299321009461/exhibit99-1.htm." (*See* Ex. 3 at 5.)

9.    In response, Core objected to the phrase of "sign off" as vague and ambiguous, but did not provide an alternative construction and instead responded: "the Debtors admit that they did not object to Sphere's press release dated October 13, 2021." That answers a question Sphere did not pose.

10.    The phrase "sign off" is not vague and ambiguous based on that phrase's ordinary meaning. Merriam-Webster defines "sign off" as "to approve or acknowledge something by or as if by a signature." *Sign off,* Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/sign%20off (last visited Sept. 12, 2023). Moreover, Sphere was simply tracking the language Core used to describe what it was doing to the press release. As reflected in Exhibit 2 to Docket No. 1040-3 (reproduced in relevant part below), Core employee Taras Kulyk asked Gryphon CEO Rob Chang to "email" Core the press release "so we [i.e., Core] can *sign off*." (emphasis added). The RFA asks whether Core signed off. Core must answer the question posed.

4



## II. CORE'S DEFICIENT RESPONSES TO SPHERE'S INTERROGATORIES

### A. Debtors' Deficient Responses About Harm Core Claims It Suffered

11. Interrogatories 4, 9, and 10 all sought information about any alleged harm Core claims it suffered:

- Interrogatory Number 4 states: "Identify and describe any expenditures and preparations made in contemplation of hosting any miners under Order #2, including without limitation the 'enormous undertaking and investment Core' made 'to prepare its facilities for the number of expected units,' as referenced in paragraph 19 of the Claim Objection."

5

- Interrogatory Number 9 states: "Identify and describe any harm, damage, or loss any Debtor claims it suffered due to the alleged nonperformance of Gryphon or Sphere under the MSA and Order #2."

- Interrogatory Number 10 states: "Identify and describe any efforts to mitigate harm, damage, or loss any Debtor claims it suffered due to the alleged nonperformance of Gryphon or Sphere under the MSA and Order #2 and how much those mitigation efforts reduced the alleged harm, damage, or loss any Debtor claims it suffered."

(Ex. 4 at 13, 16−7).

12. To each Interrogatory, Core responded with one cursory sentence and did not provide any detail regarding alleged harm suffered, expenditures incurred, or mitigation efforts:

- In response to Interrogatory No. 4, Core identified: "as a general matter, the expenditures and preparations made in contemplation of hosting miners under Order #2 include the costs and expenses incurred in constructing facilities to house the expected units."

- In response to Interrogatory No. 9, Core identified: "the harm and damages suffered by the Debtors includes loss of revenue associated with Gryphon's failure to deliver the 70,000 Miners reflected in Order #2 and funds spent to build facilities in anticipation of the delivery of such Miners."

- In response to Interrogatory No. 10, Core stated: "that because Gryphon was not delivering Miners to Core in accordance with the MSA and Order #2, and made clear to Core no later than February 2022 that it could not meet its obligations, Core ceased construction on facilities in order to reduce its expenditures and limit the losses caused by Gryphon's breach of the MSA and Order #2."

DMS 303797961

13. These answers are deficient and the information sought is material: if Core plans to assert that any conduct by Sphere caused it harm and serves as an offset against any damages award in favor of Sphere, Sphere is entitled to know that now so that it can direct its discovery efforts accordingly.

14. Core should be able to answer these Interrogatories now, as all of the information required to answer them is in its possession. This is not information that can reasonably be provided through the production of documents. Interrogatory Nos. 9–10 are contention interrogatories, and it is not reasonable for Sphere to sift through documents to guess at Core's contentions. In particular, Core's response to Interrogatory No. 9 is not exhaustive, and identifies as harm "loss of revenue," which cannot possibly be identified through the production of documents. More importantly, Sphere is entitled to know what expenditure Core claims as harm. Similarly, regarding Interrogatory No. 10, Sphere is entitled to know now if the only mitigation effort Core will contend it engaged in was ending construction. As for Interrogatory No. 4, responsive information cannot be reasonably provided through the production of documents—notwithstanding Core's contention in the objections to Interrogatory No. 4. The same is true of Core's expenditures, as any documents produced are highly unlikely to delineate between expenditures made for preparing to host miners under Order #2 versus for another purpose.

B.  **Debtors' Deficient Responses About Contractual Interpretation**

15. Sphere posed a question related to contract interpretation in the Master Services Agreement (the "MSA") and Order #2, which was a key subject of the motion for summary judgment briefing.

16. In reference to Order #2, Interrogatory No. 3 asked: "What do you contend is the meaning of the phrase 'as long as Sphere 3D Corp. satisfies [Core's] requirements prior to'? State

the complete basis for your interpretation." (*Id.* at 12).  Core replied without giving a definitive answer, hedging its bets that there were other requirements:

> These requirements include, **among other things**: creditworthiness; Foreign Corrupt Practices Act considerations; Know Your Customer considerations (e.g. business with Chinese entities/Chinese government); form of assignment (e.g. how and which rights and obligations were to be transferred, allocated or retained); whether any such assignment would implicate securities laws or constitute an investment contract; and whether any assignment would impact Core's own rights and obligations under the MSA, Order #1, and Order #2

(*Id.* at 13 (emphasis added)).

17. Sphere is entitled to an exhaustive and complete answer, not an illustrative answer that allows Core to invent new requirements down the road.  Furthermore, Sphere is entitled to know the basis for the interpretation, as it is unlikely to be based on the plain language and Sphere needs to know now what extrinsic evidence to test.

### III. CORE'S DEFICIENT RESPONSES TO SPHERE'S RFP NO. 13

18. Through RFP No. 13, Sphere seeks "Communications and Documents sufficient to show increases, changes in, or introduction or administration of any new taxes, levies, tariffs or governmental fees, or charges that any Debtor has sought to pass or considered passing on to Sphere and Gryphon."  Core answered with boilerplate relevance, overbreadth, undue burden, and disproportionality objections before stating it will not produce any documents.

19. Initially, the lack of particularity is enough on its own to overrule the objections and compel Core to produce responsive documents.  Any particularized objection would be unavailing.  Sphere seeks "sufficient documents," not "all documents," which vitiates the overbreadth, undue burden, and disproportionality objections. With respect to relevance, Sphere's theory is as follows: Order #2 included a hosting rate with Core of $.06175.  As electricity and other costs went up in early 2022, Core sought to pass on costs to customers, like Sphere, in the

guise of "new taxes, levies, tariffs or governmental fees, or charges." If the increased costs really were "new taxes, levies, tariffs or governmental fees, or charges," Core would have had an argument under the contract that they should be passed on.

20. However, such costs were not attributable to new taxes, levies, tariffs, or governmental fees or charges, so Core sought extracontractual means of passing on costs—*i.e.*, demanding that Sphere accede to a higher rate without justification and refusing to host additional miners unless Sphere acceded. *See Sphere 3D Corp.'s Response to Debtors' Objections to Proofs of Claim Nos. 358 and 359 filed by Sphere 3D Corp.* (Docket No. 1045), ¶ 11 ("Core does not seriously dispute that it disavowed the $.06175/KWh hosting services rate when it asserted it would not host additional miners unless Sphere agreed to sign a new contract with a much higher rate of $.0825/KWh. Core's extracontractual demand was an attempt to pass rising power costs onto Sphere—which is not permissible under Order #2.); *see also id.* ¶¶ 2, 25, 38–39, 67. This rationale is enough to meet the low threshold for relevance.

## CONCLUSION

For the reasons set forth above, Sphere respectfully requests that the Court enter an order, substantially in the form attached hereto: (i) requiring Core to supplement its responses to Interrogatories 3, 4, 9, and 10; (ii) requiring Core to respond to RFA No. 2 as written; (iii) overruling Core's objections to RFP No. 13 and requiring Core to respond; and (iv) granting Sphere such other relief as is appropriate under the circumstances.

*[Remainder of page left blank intentionally]*

Dated: September 13, 2023                                       Respectfully submitted,

/s/ Ashley L. Harper
  Timothy A. ("Tad") Davidson II                    Tibor L. Nagy, Jr.
  TX Bar No. 24012503                             TX Bar No. 24041562
  Ashley L. Harper                                    Gregory N. Wolfe (admitted *pro hac vice*)
  TX Bar No. 24065272                             **DONTZIN NAGY & FLEISSIG LLP**
  **HUNTON ANDREWS KURTH LLP**      980 Madison Avenue
  600 Travis Street, Suite 4200               New York, New York 10075
  Houston, Texas 77002                             Telephone: (212) 717-2900
  Telephone:  (713) 220-4200                 Email:     tibor@dnfllp.com
  Facsimile:  (713) 220-4285                            greg@dnfllp.com
  E-mail:     taddavidson@HuntonAK.com
                 ashleyharper@HuntonAK.com

  - and -

  Seth H. Lieberman (admitted *pro hac vice*)
  Matthew W. Silverman (admitted *pro hac vice*)
  **PRYOR CASHMAN LLP**
  7 Times Square
  New York, New York 10036
  Telephone:  (212) 421-4100
  Facsimile:  (212) 326-0806
  E-mail:     slieberman@pryorcashman.com
                 msilverman@pryorcashman.com

  - and -

*Co-Counsel for Sphere 3D Corp.*

**CERTIFICATE OF CONFERENCE**

Pursuant to Federal Rule of Civil Procedure 37(a)(1), made applicable to this contested matter by Federal Rule of Bankruptcy Procedure 7037 and 9014, counsel for Sphere 3D Corp. and counsel for the Debtors met and conferred on September 12, 2023 regarding each side's respective discovery demands in an effort to obtain the discovery described in this Motion without the need for this Court's intervention. I hereby certify that as of the filing of this Motion, the parties were unable to resolve the issues set forth in this Motion.

*/s/ Ashley L. Harper*
Ashley L. Harper

**CERTIFICATE OF SERVICE**

I certify that on September 13, 2023, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas on those parties registered to receive electronic notices.

*/s/ Ashley L. Harper*
Ashley L. Harper