# **Exhibit B**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | § § § | Chapter 11 |
| CORE SCIENTIFIC, INC., *et al.*, | § § § | Case No. 22-90341 (DRJ) |
|  | § § | (Jointly Administered) |
| Debtors.[1] | § § § |  |

### DEBTORS' INITIAL SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS FROM SPHERE 3D CORP. IN CONNECTION WITH DEBTORS' OBJECTION TO SPHERE 3D CORP.'S PROOFS OF CLAIM NUMBERS 358 AND 359

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure (the "**Federal Rules**"), made applicable to the above-captioned chapter 11 cases (the "**Chapter 11 Cases**") by Rules 9014, 7026, and 7034 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and the Local Rules of the United States Bankruptcy Court for the Southern District of Texas (the "**Local Rules**"), Debtor Core Scientific Operating Company f/k/a Core Scientific, Inc. ("**Core**"),[2] and its Debtor affiliates (collectively, the "**Debtors**") by and through its undersigned counsel, hereby requests that Sphere 3D Corp. produce the documents and information described herein for inspection and copying (the "**Requests**") at the offices of Weil, Gotshal & Manges LLP, 700

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions, VII, LLC (3198). The Debtors' corporate headquarters and service address is 210 Barton Springs Road, Suite 300, Austin, Texas 78704.

[2] As discussed in the First Day Declaration, Core Scientific, Inc. changed its name to Core Scientific Operating Company in January 2022. *See* Dkt. No. 5, Declaration of Michael Bros in Support of the Debtors' Chapter 11 Petitions and First Day Relief, *In re Core Scientific, Inc.*, No. 22-90341-11 (Bankr. S.D. Tex., Dec. 21, 2022) at ¶ 31. For purposes of these requests, the term "Core" shall be deemed to include both Core Scientific Operating Company and Core Scientific, Inc.

Louisiana Street, Suite 1700, Houston, Texas 77002, or at another mutually-agreeable location or by electronic means, on or before September 8, 2023.

In serving these Requests, the Debtors reserve all their rights, including without limitation the right to promulgate additional discovery requests covering these same topics. The Requests are continuing in nature, and Sphere is under a duty to supplement its responses to the Requests when necessary in accordance with Rule 26(e) of the Federal Rules, applicable through Rule 7026 of the Bankruptcy Rules.

## DEFINITIONS

For the purposes of the Requests, the following definitions and instructions shall apply to each Request. The definitions apply and shall be construed in the broadest sense permitted by the Federal Rules, the Bankruptcy Rules, the Local Rules, or any other applicable rules and law.

1. "**Sphere**," "**Your**," or "**You**" refers to Sphere 3D Corp. and all of its affiliates, subsidiaries, predecessors and successors thereof, owners, members, directors, officers, employees, consultants, brokers, agents, salespersons, representatives, independent contractors, advisors and attorneys, and/or any other persons or entities purporting to act on its behalf and/or under its control.

2. "**Gryphon**," refers to Gryphon Digital Mining, Inc. and all of its affiliates, subsidiaries, predecessors and successors thereof, owners, members, directors, officers, employees, consultants, brokers, agents, salespersons, representatives, independent contractors, advisors and attorneys, and/or any other persons or entities purporting to act on its behalf and/or under its control.

3. "**Communication**" or "**Communications**" shall be construed in the broadest possible sense under the Federal Rules and refers to the transmittal of information of any kind in

any form. This includes but is not limited to in-person or telephone conversations, correspondence, letters, facsimiles, memoranda, email messages, chat messages through any communication software or application, transcribed voice messages, recorded audio messages, voicemail messages, in-person meetings, video meetings or conversations, webinars, discussions, reports, publications, statements, releases or any recording productions thereof.

4. "**Document**" or "**Documents**" as used herein is used in the broadest possible sense under the Federal Rules, including but not limited to, any medium upon which information is or can be recorded, including without limitation the following items, whether printed or reproduced or stored or recorded by any process, or written, or produced by hand, and whether or not claimed to be privileged or otherwise excludable from discovery, including without limitation: notes, letters, correspondence, electronic mail, books, periodicals, printed publications, Communications, telexes, telegrams, memoranda, summaries or records of telephone conversations, summaries and research reports and notebooks, charts, lists, schedules, plans, drawings, photographs, diaries, studies, evaluations, worksheets, minutes or records of meetings, reports and/or summaries of interviews and investigations, records of oral conversations, work papers, reports, agreements, contracts, reports or summaries of negotiations, court papers and pleadings, administrative agency papers, transcripts, brochures, pamphlets, advertisements, circulars, promotions material, trade letters, press releases, videotapes, radio tapes, recordings, and also including without limitation originals, drafts, and all copies which are different in any way from the original, whether by interlineation, receipt stamp, notation, indication of copies sent or received, or otherwise. For the avoidance of doubt, Documents shall include all Communications.

5. "**Gryphon MSA**" means the September 12, 2021 Master Services Agreement signed by Core Scientific, Inc. and Gryphon Digital Mining, Inc.

6. "**Miners**" means the hardware unit(s), including but not limited to, CPUs, GPUs, FPGAs, or ASICs, arranged to perform cryptocurrency mining.

7. "**Bitcoin**" means the digital asset and related transaction fees earned through digital-asset mining.

8. "**Order #1**" means the Master Services Agreement Order #1 signed by Core Scientific, Inc. and Gryphon Digital Mining, Inc. on or about September 13, 2021.

9. "**Order #2**" means the Master Services Agreement Order #2 signed by Core Scientific, Inc. and Gryphon Digital Mining, Inc. on October 5, 2021.

10. "**Sphere POCs**" means Proofs of Claim Nos. 358 and 359, filed by Sphere on or about April 13, 2023, together with the addenda attached thereto.

11. "**Sphere Objection**" means Sphere 3D Corp.'s Objection to Debtors' Motion for Summary Judgment with Respect to Proofs of Claim Nos. 358 and 359 Filed by Sphere 3D Corp. (ECF No. 1039).

12. "**Sphere Response**" means Sphere 3D Corp.'s Response to Debtors' Objection to Proofs of Claim Nos. 358 and 359 Filed by Sphere 3D Corp. (ECF No. 1045).

13. "**Trompeter Declaration**" means the Declaration of Patricia Trompeter In Support of Sphere 3D Corp.'s Opposition To Debtors' Motion For Summary Judgment. (ECF No. 1040-2).

14. "**Merger Agreement**" means the merger agreement, as defined in that certain Agreement and Plan of Merger, dated June 3, 2021, by and among Sphere 3D Corp., Sphere GDM Corp., and Gryphon Digital Mining, Inc., as referenced in the Sub-License Agreement (defined below), together with any amendments thereto.

15. **"Sub-License Agreement"** means the Sub-License and Delegation agreement signed by Gryphon Digital Mining, Inc. and Sphere 3D Corp. on October 5, 2021, together with any amendments thereto.

16. **"Arbitration Demand"** means the Demand for Arbitration submitted by Sphere 3D on October 31, 2022.

17. **"Related**," "**relating**," and their variants means, in addition to their usual and customary meanings, concerning, constituting, comprising, identifying, referring to, dealing with, containing, embodying, illustrating, reflecting, stating, commenting on, describing, discussing, responding to, evidencing, demonstrating, showing, analyzing, or pertaining to in any way.

18. **"Including"** is used to provide examples of certain types of information and should not be construed as limiting a request in any way. The term "including" shall be construed as if followed by the phrase "but not limited to."

19. The words "**and**" and "**or**" shall be construed disjunctively or conjunctively to bring within the scope of each request all documents which otherwise might be construed to be outside the scope of a request.

20. The word "**any**" shall be construed to include "**all**" and vice versa.

21. The word "**each**" shall be construed to include "**every**" and vice versa.

## INSTRUCTIONS

The preceding Definitions apply to each of these Instructions and, for purposes of these Requests, the following Instructions shall be followed:

1. In responding to these Requests, You shall produce all Documents including reasonably accessible ESI, in Your possession, custody, or control. Information is deemed to be within Your possession, custody, or control if: (i) it is within Your actual knowledge or possession;

or (ii) it is within the possession of any other person or entity and You have the right to obtain the documents from such person or entity.

2. All Requests shall be deemed to include requests for any and all transmittal sheets, cover letters, enclosures, or any other annexes or attachments to the Documents. You are to produce the original and all non-identical copies, including all drafts of each Document requested. If You are not able to produce the original of any Document, please produce the best available copy and all non-identical copies, including drafts. Any Document that cannot be produced in full shall be produced to the fullest extent possible.

3. Pursuant to the Federal Rules, made applicable by the Bankruptcy Rules, You must state specifically the legal or factual bases for any objection to a Request and the extent to which You are refusing to comply with the Request.

4. If You object to a particular Request or portion thereof, You shall produce all Documents called for that are not subject to that objection.

5. Whenever necessary to bring within the scope of a Request, Documents or information that might otherwise be construed to be outside its scope:

    a. The use of a verb in any tense shall be construed as the use of that verb in all other tenses;

    b. The use of a word in its singular form shall be deemed to include within its use the plural form, and vice versa;

    c. The use of the masculine form of a noun or pronoun shall include the feminine form, and vice versa; and

    d. The use of the conjunctive or disjunctive, respectively, shall be construed as necessary to be inclusive rather than exclusive.

6. Each paragraph, subparagraph, clause, and word therein should be construed independently and not by reference to any other paragraph, subparagraph, clause or word herein for purposes of limitation.

7.  If any portion of a Document responsive to these requests is withheld or redacted under a claim of privilege or other protection, the non-privileged or unprotected portion of the Document must be produced.

8.  In the event that any responsive document was formerly in Your possession, custody, or control and has been lost or destroyed, that document is to be identified in writing as follows: (1) addressor, addressee, person who prepared or authorized the document, indicated or blind copies; (2) date of preparation or transmittal; (3) subject matter; (4) number of pages, attachments, or appendices; (5) all persons to whom distributed; (6) date of loss or destruction; and (7) if destroyed, the manner of destruction, reason for destruction, persons authorizing destruction, and persons who destroyed the document.

9.  Each Request shall be deemed continuing so as to require prompt supplementation if You obtain, generate, or discover additional documents or information. If, after responding, You obtain or become aware of any additional documents or information responsive to these Requests, production of such additional Documents or information shall be made forthwith as required by Rule 26 of the Federal Rules, as incorporated by Rules 7026 and 9014 of the Bankruptcy Rules, as applicable.

10. All paragraph references to the Sphere POCs shall be to the addenda attached thereto and comprising the Sphere POCs.

11. Unless otherwise noted, the period covered by these Requests is January 1, 2021 to the present.

## REQUESTS FOR PRODUCTION

1.  **REQUEST NO. 1:** All Documents and Communications demonstrating that Sphere has legal title to and/or ownership of the Miners that it contends are in Core's possession,

7

including the Miners referenced in paragraphs 9 and 10 of the Sphere POCs and paragraphs 2 and 12 of the Sphere Response.

2. **REQUEST NO. 2:** Documents sufficient to show the serial numbers of all the Miners that Sphere contends are in Core's possession, including those referenced in paragraphs 2 and 12 of the Sphere Response.

3. **REQUEST NO. 3:** All Documents and Communications supporting the contention that Gryphon entered into the Gryphon MSA and Order #2 as manager or agent of Sphere, as alleged in paragraph 6 of the Sphere POCs, paragraph 6 of the Sphere Objection, and paragraph 7 of the Sphere Response.

4. **REQUEST NO. 4:** All Documents and Communications between Sphere and Core and/or Gryphon and Core relating to Sphere's contention that Gryphon was acting as Sphere's manager or agent in connection with the Gryphon MSA, Order #1, and/or Order #2.

5. **REQUEST NO. 5:** All Documents and Communications between Sphere and Core relating to the Gryphon MSA, Order #1, and/or Order #2, including relating to the conversation identified in paragraph 6 of the Trompeter Declaration and the assertions made in paragraphs 6 and 34 of the Arbitration Demand that "Core informed Sphere it could not accommodate additional Miners" and that "Core informed Gryphon that it could not host 600 of Gryphon's own miners due to lack of space," respectively.

6. **REQUEST NO. 6:** All Documents and Communications relating to the negotiation of the Gryphon MSA, Order #1, and Order #2.

7. **REQUEST NO. 7:** All Documents and Communications relating to the Sub-License Agreement referenced in paragraph 7 of the Sphere POCs, including all negotiations

related to the Sub-License Agreement, and any Documents or Communications relating to Gryphon and Sphere's conduct and operations under the Sub-License Agreement.

8. **REQUEST NO. 8:** All Documents and Communications relating to Sphere's payment of any funds to Core in connection with the Gryphon MSA, Order #1, and/or Order #2, including relating to the Deposits referenced in paragraph 8 of the Sphere POCs and paragraph 2 of the Sphere Response.

9. **REQUEST NO. 9:** All Documents and Communications relating to Sphere's claim that Core installed and used hundreds of Sphere's Miners for its own benefit as referenced in paragraph 12 of the Sphere POCs.

10. **REQUEST NO. 10:** Documents sufficient to show the serial numbers of all 297 Miners that Sphere contends Core installed and used to mine for Bitcoin for its own account as alleged in paragraph 12 of the Sphere POCs and paragraph 40 of the Sphere Response.

11. **REQUEST NO. 11:** All Documents and Communications demonstrating Sphere's financial ability to purchase and/or deliver all Miners contemplated under Order #2, including the 60,000 Miners referenced in paragraph 9 of the Sphere POCs.

12. **REQUEST NO. 12:** Documents sufficient to show Sphere's balance sheet, available cash, income statement, and other documents reflecting Sphere's financial condition on a monthly basis and annually, and its ability to raise capital.

13. **REQUEST NO. 13:** All Documents and Communications relating to whether Sphere was ready, willing, and able to perform under the Gryphon MSA and/or Order #2.

14. **REQUEST NO. 14:** All Documents and Communications Sphere claims support its assertions that it has any rights under the Gryphon MSA and/or Order #2.

15. **REQUEST NO. 15:** All Communications between Sphere and Gryphon relating to the Gryphon MSA, Order #1, Order #2, the Sub-License Agreement, and/or the Merger Agreement.

16. **REQUEST NO. 16:** All Documents and Communications related to Sphere's payment of funds to Gryphon related to the Gryphon MSA, Order #2, and/or the Sub-License Agreement.

17. **REQUEST NO. 17:** All Documents and Communications with third parties relating to Sphere's financial condition, relationship with Gryphon, and/or relationship with Core.

18. **REQUEST NO. 18:** All Documents relating to the damages Sphere claims it is entitled to recover against Core, including those referenced in paragraphs 14, 16 and 17 of the Sphere POCs, including relating to the calculation of any such damages.

19. **REQUEST NO. 19:** All Documents and Communications relating to the post-petition claims Sphere contends it has against the Debtors as referenced in paragraph 17 of the Sphere POCs, including those identifying the nature of the claim, the basis for such claim, and any damages Sphere contends it is entitled to as a result of such claims.

20. **REQUEST NO. 20:** All Documents and Communications relating to the Merger Agreement, including all those relating to the reasons why the merger contemplated by the Merger Agreement was not consummated and/or did not close.

21. **REQUEST NO. 21:** All Documents and Communications demonstrating that Sphere satisfied the requirements identified in that provision of Order #2 relating to any amendment of Section 8.d of the Gryphon MSA.

22. **REQUEST NO. 22:** All contracts between Sphere and any party for the purchase or use of Miners by Sphere.

23. **REQUEST NO. 23:** All contracts between Sphere and any party for the hosting of Sphere Miners.

24. **REQUEST NO. 24:** Documents sufficient to show all Miners Sphere has owned and/or currently owns.

25. **REQUEST NO. 25:** All Documents and Communications related to each and any hosting agreement between Sphere and any third party.

26. **REQUEST NO. 26:** All Documents and Communications relating to the Miners that Sphere purchased or intended to purchase in connection with Order #2, including documents identifying the serial numbers of all such Miners.

27. **REQUEST NO. 27:** All Documents and Communications related to Sphere's agreement to purchase Miners from BitFuFu Technology, including any agreements with BitFuFu Technology for the purchase of Miners and the negotiation of any such agreements.

28. **REQUEST NO. 28:** All Documents and Communications relating to any Miners received by Sphere pursuant to any agreement(s) with BitFuFu Technology, including when any such Miners were received and the serial number of any such Miners.

29. **REQUEST NO. 29:** All Documents and Communications relating to the alleged sub-lease, sub-license, assignment, delegation or transfer of the Gryphon MSA and/or Order #2 or of any of Gryphon's rights and obligations thereunder to Sphere.

30. **REQUEST NO. 30:** All Documents and Communications relating to the August 19, 2021 Master Services Agreement between Sphere and Gryphon, including any amendments thereto and including all negotiations of that agreement.

31. **REQUEST NO. 31:** All Documents and Communications relating to Sphere's contention in paragraph 30 of the Arbitration Demand that "Core's billing department dealt

11

directly with Sphere regarding Sphere's deposited funds with Core, and Sphere provided Core with detailed wire information and a letter from its auditors showing that the Deposit originated from Sphere."

32. **REQUEST NO. 32:** All Documents and Communications relating to Sphere's contention in paragraph 17 of the Arbitration Demand that Core promised "to return the Deposit and to compensate Sphere for the Coins."

33. **REQUEST NO. 33:** All Documents and Communications between Sphere and Gryphon relating to the July 27, 2022 letter from Brian Chase, Gryphon's CFO, referenced in paragraph 8 of the Sphere Objection.

34. **REQUEST NO. 34:** All Documents and Communications between Sphere and any financial advisor, investment bank and/or lender, including Jefferies, relating to efforts by Sphere to raise capital.

35. **REQUEST NO. 35:** All Documents and Communications between Sphere and any investors or potential investors in Sphere, whether equity, debt or otherwise.

36. **REQUEST NO. 36:** All Documents and Communications related to Sphere's agreement to purchase Miners from NuMiner Global, including any agreements with NuMiner for the purchase of Miners and the negotiation of any such agreements.

37. **REQUEST NO. 37:** All Documents and Communications relating to any Miners received by Sphere pursuant to any agreement(s) with NuMiner Global, including when any such Miners were received and the serial number of any such Miners.

38. **REQUEST NO. 38:** All Documents and Communications relating to Sphere's purported demand for the return of any Miners, deposits, or Bitcoin.

39. **REQUEST NO. 39:** All Documents and Communications relating to whether You or Gryphon own and have good title to the Miners hosted by Core pursuant to Order #2 free and clear of any mortgage, pledge, lien, charge, security interest, claim or other encumbrance.

40. **REQUEST NO. 40:** All Documents and Communications relating to whether Your or Gryphon's interest in the Miners hosted by Core pursuant to Order #2 is part of a financing or other arrangement disclosed to, and approved by, Core.

Dated: August 17, 2023
Houston, Texas

                            <u>*/s/ Alfredo R. Pérez*</u>
                            WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (15776275)
Clifford Carlson (24090024)
700 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Email: Alfredo.Perez @weil.com
-and-

WEIL, GOTSHAL & MANGES LLP
Ray C. Schrock (admitted *pro hac vice*)
Ronit J. Berkovich (admitted *pro hac vice*)
Theodore E. Tsekerides (admitted *pro hac vice*)
Christine A. Calabrese (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Email: Ray.Schrock@weil.com
       Ronit.Berkovich@weil.com
       Theodore.Tsekerides@weil.com
       Christine.Calabrese@weil.com

*Counsel for Debtors and Debtors in Possession*