**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re:<br><br>CORE SCIENTIFIC, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 22-90341 (DRJ)<br><br>(Jointly Administered)<br><br>Re: D.I. 1080, 1199, 1200 |

**LEAD PLAINTIFF'S MOTION AND MEMORANDUM IN SUPPORT OF MOTION
FOR CLASS TREATMENT UNDER FED. R. BANKR. P. 7023 FOR (I) A CLASS
PROOF OF CLAIM, (II) CERTIFYING CLASS FOR PURPOSES OF THE CLASS
PROOF OF CLAIM, (III) AN OMNIBUS OPT-OUT OF THE PLAN'S NONDEBTOR
THIRD PARTY RELEASES, (IV) CERTIFYING CLASS FOR PURPOSES OF THE
OMNIBUS OPT-OUT OF THE PLAN'S NONDEBTOR THIRD PARTY RELEASES,
AND (V) OTHER RELIEF**

---

**If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within twenty-one days from the date this motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within twenty-one days from the date this motion was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions, VII, LLC (3198). The Debtors' corporate headquarters and service address is 210 Barton Springs Road, Suite 300, Austin, Texas 78704.

**THE ROSEN LAW FIRM, P.A.**

Phillip Kim (admitted pro hac vice)
Joshua Baker (admitted pro hac vice)
275 Madison Avenue, 40th Floor
New York, NY 10116
Phone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: jbaker@rosenlegal.com

*Lead Counsel for Lead Plaintiff*

**COCHRAN LAW, PLLC**

Stuart L. Cochran
Texas Bar No.: 24027936
8140 Walnut Hill Ln., Suite 250
Dallas, Texas 75231
Telephone: (469) 333-3405
Facsimile: (469) 333-3406
stuart@scochranlaw.com

*Liaison Counsel for Lead Plaintiff*

**THE SCHALL LAW FIRM**
Brian Schall
Rina Restaino
2049 Century Park East, Suite 2460
Los Angeles, CA 90067
Phone: (310) 301-3335
Fax: (213) 519-5876
Email: brian@schallfirm.com
Email: rina@schallfirm.com

*Additional Counsel for Lead Plaintiff*

Lead Plaintiff Morgan Hoffman and the named plaintiffs Evan Achee and William J. Emanuel ("Plaintiffs")[2], by and through their undersigned counsel, hereby respectfully submit this Motion for Class Treatment under Fed. R. Bankr. P. 7023 for (i) a Class Proof of Claim, (ii) Certifying Class for Purposes of the Class Proof of Claim, (iii) an Omnibus Opt-Out of the Plan's Nondebtor Third Party Releases, (iv) Certifying Class for Purposes of the Omnibus Opt-Out of the Plan's Nondebtor Third Party Releases, and (v) Other Relief, on behalf of themselves individually and on behalf of all others similarly situated, and state the following:

## PRELIMINARY STATEMENT

1.      Plaintiffs do not concede the Plan is confirmable or that the Disclosure Statement is proper.  *See generally* D.I. 1132.

2.      Plaintiffs do not concede that the Securities Proof of Claim (Claim 49, Claim No. 556, the "Securities Claim") is deficient in *any* way *See generally* D.I. 1178.  Lead Plaintiff has and had the authority under the Private Securities Litigation Reform Act (the "PSLRA") to make the Securities Claim on behalf of the Class (defined below ¶¶ 16-17). *See Id*. Section I.

3.      Plaintiffs do not concede that the broad nonconsensual nondebtor third party releases are proper, permissive, or even possible here.  *See generally* D.I. 1132.

4.      To be clear, nonconsensual nondebtor third party releases are prohibited in this Circuit.  *E.g., In re Pacific Lumber Co*., 584 F.3d 229, 252 (5th Cir. 2009); *see generally* D.I. 1132

---

[2] Court-appointed Lead Plaintiff Morgan Hoffman makes the instant motion. As is common in class actions, additional named plaintiffs have joined Lead Plaintiff to ensure the Class is protected and the claims are prosecuted. *See e.g., In re Jan. 2021 Short Squeeze Trading Litig.,* 2021 WL 4840857, at *5 (S.D. Fla. Oct. 15, 2021) (citing cases). As such, and to avoid any doubt, the term "Plaintiffs" includes the Lead Plaintiff and the additional named plaintiffs Evan Achee and William J. Emanuel. The additional named plaintiffs Evan Achee and William J. Emanuel join in Lead Plaintiff's motion to ensure the Class is protected.

and 1178. Debtors' proposed broad nonconsensual nondebtor third party releases are *not* consensual. *See generally* D.I. 1132 and 1178.

5.          Debtors have taken an unprecedented position.  Debtors' position is that Class members are non-creditors and strangers to this Bankruptcy.  *See generally* D.I. 1080.   Yet they want these strangers to this Bankruptcy to nonconsensually release *all claims against nondebtor third parties*. *See generally* D.I. 1199 and 1200.  This is outrageous.  There is no authority in support of such a position.

6.          Even if Debtors took the position that Class members *are* creditors, jurisdictions that allow nonconsensual nondebtor third party releases (the Fifth Circuit does not), would not approve such releases because there is *no* consideration here for the release of nondebtor third parties. *Id*.

7.          Indeed, the United States Supreme Court recently granted certiorari in another bankruptcy case where the Second Circuit approved nondebtor third party releases as against third parties who provided approximately $6 billion in consideration to a plan of reorganization.  *In Re Purdue Pharma L.P.*, 69 F.4th 45, 67 (2d Cir. 2023), *cert. granted sub nom. Harrington v. Purdue Pharma, L.P.*, __ S. Ct. ___, No. 23-124, 2023 WL 5116031, at *1 (Aug. 10, 2023).  In contrast, the nondebtor third parties here have provided *no* consideration to the Plan.

8.          Plaintiffs are not aware of any court allowing such a scheme.

9.          Further, Debtors (and presumably nondebtor third parties who would receive impermissible broad nonconsensual releases) refuse to provide actual notice to the Class members. *See* D.I. 1178 ¶ 15 and 21.  Instead, they have and seek to continue to simply send notice to Nominees.  *See* D.I. 1080 ¶¶ 2, 24.  This fails reason and the law.

10.     To add insult to injury, Debtors purported to provide publication notice of the April 14, 2023, claims bar date (the "Bar Date").  *See* D.I. 1080 ¶ 9.  However, because the identities of Class members were reasonably ascertainable by the Debtors, Class members were entitled to actual notice of the Bar Date.  Constructive notice through the Publication Notice was constitutionally defective as to them.  *See e.g.*, *Chemetron Corp. v. Jones*, 72 F.3d 341, 345-46 (3d Cir. 1995) ("Known creditors must be provided with actual written notice of a debtor's bankruptcy filing and bar claims date. … If claimants were 'known' creditors, then due process entitled them to actual notice of the bankruptcy proceedings.") (citation omitted).

11.     This also falls short of the PSLRA itself and other bankruptcy cases.  *See* 15 U.S.C. § 78u-4(a)(3)(A)(i) (PSLRA notice provision); Securities Action D.I. 17-2, 19-2, 21-2, 22-5, and 24-4 (attaching the PSLRA notice from BusinessWire, which is accessible from many free and subscription-based services); *Teroganesian v. Sw. Airlines Co.,* 2023 WL 4565464, at *3 n.5 (S.D. Tex. July 15, 2023) (allowing PSLRA notice by national press release on BusinessWire); *see also Hall v. Rent-A-Ctr., Inc.*, 2019 WL 3546741, at *1 (E.D. Tex. May 3, 2019) (allowing notice of settlement on the national edition of *The Wall Street Journal* along with by national press release on PR Newswire and over 30,000 mailings to potential class members); *In re KBR, INC. Sec. Litig.*, 2017 WL 11633008, at *2 (S.D. Tex. Aug. 24, 2017) (same with mailings to over 60,000 potential class members); *In re OCA, Inc. Sec. & Derivative Litig.*, 2009 WL 512081, at *15 (E.D. La. Mar. 2, 2009) (same with mailings to over 26,000 potential class members); *In re Waste Mgmt., Inc. Sec. Litig.*, 2002 WL 35644013, at *10 (S.D. Tex. May 10, 2002), *amended,* 2003 WL 27380802 (S.D. Tex. July 31, 2003) (allowing notice of settlement on the national editions of *The New York Times* and *The Wall Street Journal*, twice each, and *USA Today*, *The Houston Chronicle*, "and in the newspaper with the highest circulation in each of the 50 states and in the District of Columbia", once

3

each, in addition to mailings); *see also City of New York v. New York, N. H. & H. R. Co.*, 344 U.S. 293, 296, 73 S. Ct. 299, 301, 97 L. Ed. 333 (1953) ("No such excuse existed to justify subjecting New York's claims to the hazard of forfeiture arising from 'constructive notice' by newspaper.").[3]

12.    Debtors, through two amended Plans and Disclosure Statements, continue to fail to provide a proposed notice to the class regarding Debtors' touted opt-outs.[4]  D.I. 1199, 1200.  This

---

[3] Relying on Debtors' motion, the Court's Order (I) Establishing Deadlines to File Proofs of Claim and (II) Approving Form and Manner of Notice Thereof explicitly provided that Debtors may publish notice in the set of newspapers "***and other publications, as the Debtors deem appropriate***[.]" D.I. 652 ¶ 20. Debtors failed to provide notice on a national business-oriented newswire as is customary to provide notice class members in securities class actions and as counsel in the Securities Action provided the Class. *See* Securities Action, D.I. 17-2, 19-2, 21-2, 22-5, and 24-4. Notably, *none* of the local newspapers chosen by Debtors are the largest newspaper by circulation in their *own* home states. Texas' largest newspaper by circulation is the *Houston Chronicle* (not the *Austin American-Statesman*, *Denton Record-Chronicle*, *Odessa American*, or *Pecos Enterprise*), Georgia's largest newspaper by circulation is *The Atlanta Journal-Constitution* (not the *Dalton Daily Citizen*), Kentucky's largest newspaper by circulation is the *Courier Journal* (Louisville) (not *The Lake News*), North Carolina's largest newspaper by circulation is *The News & Observer* (Raleigh) (not the *Cherokee Scout*), Oklahoma's largest newspaper by circulation is the *Daily Oklahoman* (Oklahoma City) (not the *Muskogee Phoenix*), North Dakota's largest newspaper by circulation is *The Forum* (Fargo-Moorhead) (not the *Grand Forks Herald*). D.I. 652 ¶ 20.  Clearly, none of these papers could be even argued to provide notice to the Class.  One, single, notice in pay-walled *The Wall Street Journal* does not cure this issue *even if publication notice could be proper here* (it is not as the Class members are known creditors).

[4] Even if there was a sufficient notice proposed (there is no notice proposed) and Debtors were to provide *actual* notice to the Class (Debtors refuse to contemplate that), and other issues are properly addressed, *then* the opt-outs would still be sorely problematic as there is simply *not enough time* for Debtors to send notices and opt-out form to the Class members, receive the responses, account for the responses, and move forward with *Plan* confirmation in as little as two months. D.I. 1200 at 29; *see also* D.I. 1210 at 2 and 1210-2. Curiously, Debtors, who either understand this or refuse to consider it, have seemingly sat on their hands when they could work with Lead Counsel, Nominees, PSLRA-case claims administrators and similar to find the Class members (known creditors) to start this process. That Debtors have sat on their hands on this issue since the Petition Date demonstrates the Debtors simply seek to exclude the Class (known creditors) from this case (and also end the Securities Action (defined below)). *See also In re Am. Reserve Corp.*, 840 F.2d 487, 493-94 (7th Cir. 1988) (contemplating an alternative to a class claim where *each* class member receives a "package" inviting each to file claims with notice of the underlying case, the bankruptcy case, a claim form).

further renders the Plan and Disclosure Statement both deficient and unconfirmable. *See also* D.I. 1197 ¶ 20 (the Amended (and now Second Amended (D.I. 1200 at 122)) Disclosure Statement fails to provide other essential information such as the Liquidation Analysis). Further, without the Class's claims, the estate is simply not clear. *Am. Reserve*, 840 F.2d at 489–90 ("***The class proof of claim may be essential*** to discover what the bankrupt's entire debts are, and therefore who should be paid what.") (emphasis added).

13.     The important backdrop of the scheme by Debtors (and presumably nondebtor third parties who would receive impermissible broad nonconsensual releases) is that the Court-appointed Lead Plaintiff, appointed pursuant to the PSLRA after full briefing, through his Court-appointed Lead Counsel, has never wavered in his claims and requests. *See generally* Securities Action, D.I. 44. He is the fiduciary of the Class. *Id.*; *see also infra* ¶ 24. He can and has submitted the timely Securities Claim. *See* Claim 49; Claim No. 556; D.I. 1080-2. He has consistently stated that a class or omnibus opt-out of the broad nonconsensual nondebtor third party releases is proper and the only just outcome if those releases are allowed and somehow escape further scrutiny. *See* D.I. 1132 and 1178. That he seeks to hold accountable the Securities Action Defendants[5] (chiefly Core's individual officers and directors, none of whom are Debtors) appears to be Debtors' core issue. The bankruptcy

---

[5] The Defendants in the Securities Action are: Core's former Chief Executive Officer ("CEO") and Chairman of Core's board of directors, Michael Levitt ("Levitt"), Core's former Chief Financial Officer ("CFO") Michael Trzupek ("Trzupek"), Core's CFO Denise Sterling ("Sterling"), Core's Chief Vision Officer and former Co-Chair of Core's board of directors Darin Feinstein ("Feinstein"), Core's former Chief Accounting Officer Brian Neville ("Neville"), Core's Board member Jarvis Hollingsworth ("Hollingsworth"), Core's co-founder and Board member Matt Minnis ("Minnis"), Core's Board member Stacie Olivares ("Olivares"), Core's Board member Kneeland Youngblood ("Youngblood"), Power & Digital Infrastructure Acquisition Corp.'s ("XPDI") CEO and Board member Patrick C. Eilers ("Eilers"), XPDI's Chair Theodore J. Brombach ("Brombach"), XPDI's Board member Paul Gaynor ("Gaynor"), Chairman of XPDI's board of directors Paul Dabbar ("Dabbar"), XPDI's Board member Colleen Sullivan ("Sullivan"), and XPDI's Board member Scott Widham ("Widham") (altogether "Defendants"). Securities Action, D.I. 62 ¶¶ 32-48; *see also* D.I. 1116 at 51 n.23, n. 24.

process was never intended to shield alleged wrongdoers, especially when those alleged wrongdoers *are not debtors*.  *See In re Pacific Lumber Co*., 584 F.3d at 252; *Am. Reserve*, 840 F.2d at 489.

## **FACTUAL BACKGROUND**

14.     On March 7, 2023, Morgan Hoffman was appointed Lead Plaintiff in the pre-petition class action, *Pang v. Levitt, et al*., No. 1:22-cv-01191-DAE (the "Securities Action"), pending in the United States District Court for the Western District of Texas.  On April 14, 2023, Lead Plaintiff timely filed the Securities Claim based on the Securities Action for estimated aggregate Class damages of $188.6 million.  *See* Claim 49; Claim No. 556; D.I. 1080-2.  On May 5, 2023, Lead Plaintiff and additional named plaintiffs Evan Achee and William J. Emanuel filed an amended complaint on behalf of themselves and the putative Class.  Securities Action, D.I. 62.  The Plaintiffs in the amended complaint explicitly reserved their right to amend their pleadings to add Core Scientific Inc. ("Core" or the "Company")[6] as a defendant after the conclusion of Core's bankruptcy proceedings.  *Id*. ¶ 71.  On August 1, 2023, Lead Plaintiff filed an amended claim to reflect the amended complaint.  *See* Claim 49; Claim No. 556.[7]

15.     The Securities Action alleges violations under the Sections 11 and 15 of the Securities Act of 1933 and Sections 10(b), 14(a), and 20(a) of the Securities Exchange Act of 1934 and rules 10b-5 and 14a-9 promulgated thereunder, against certain of Core's current and former officers and directors. Securities Action, D.I. 62 ¶ 2.  The Securities Action is brought under the PSLRA, therefore there is an automatic stay in the proceedings pending resolution of the defendants' motion to dismiss.  15 U.S.C. § 78u-4(b)(3)(B) ("In any private action arising under this chapter, all

---

[6] Formerly known as Power & Digital Infrastructure Acquisition Corp. ("XPDI").

[7] While the claims in the Securities Action are broader, the Seventh Circuit's summation of these issues is clear: "If American Reserve is liable for fraud, the victims are entitled to recovery-according to their entitlements under substantive law-just as the firm's landlords and vendors of typewriters are entitled to recovery."  *Am. Reserve*, 840 F.2d at 489.

6

discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party."). As such, a motion for class certification may not be filed in the Securities Action at this time.

16.    The  class is defined as: (a) all persons and entities that purchased or acquired the publicly traded common stock or warrants of Core or XPDI, or purchased call options or sold put options on XPDI or Core common stock, between January 3, 2022 and December 20, 2022, both dates inclusive ("Class Period"); and (b) all persons and entities who held the common stock of XPDI at the close of business on December 7, 2021, and were entitled to vote on the approval of the Merger (defined as the de-SPAC business combination between XPDI and Core) at the special meeting of XPDI stockholders on January 19, 2022. Securities Action, D.I. 62 ¶ 1.

17.    Excluded from the class are: (a) persons who suffered no compensable losses; and (b) Defendants; the present and former officers and directors of the Company at all relevant times; members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which any of the Defendants, or any person excluded under this subsection (b), has or had a majority ownership interest at any time. *Id*.

18.    On August 10, 2023 the Plaintiffs filed a Preliminary Objection to the Disclosure Statement (the "Preliminary Objection") because, as explained more fully in their Preliminary Objection, the Plan is unconfirmable on its face because it contains broad nonconsensual nondebtor third party releases and generally seeks to block the Securities Action in its entirety—even though no Debtor is currently a defendant in the case. D.I. 1132 at ¶ 13-16, 23-27; D.I. 1116 at 5-6, 137, and 140.

7

19.     On August 10, 2023, the same day that Plaintiffs filed their Preliminary Objection, the United States Supreme Court issued a stay of the confirmation order approving the chapter 11 plan in the Purdue Pharma case and "directed [the parties] to brief and argue the following question: Whether the Bankruptcy Code authorizes a court to approve, as part of a plan of reorganization under Chapter 11 of the Bankruptcy Code, a release that extinguishes claims held by nondebtors against nondebtor third parties, without the claimants' consent." *Harrington v. Purdue Pharma, L.P.*, __ S. Ct. ___, No. 23-124, 2023 WL 5116031, at *1 (U.S. Aug. 10, 2023). The underlying case includes broad releases for the benefit of nondebtor third parties, who agreed to contribute approximately $6 billion to that plan. *In Re Purdue Pharma L.P.*, 69 F.4th 45, 67 (2d Cir. 2023), *cert. granted sub nom. Purdue Pharma, L.P.*, __ S. Ct. ___, No. 23-124, 2023 WL 5116031. ). In contrast, the nondebtor third party Defendants in this case have provided *no* consideration. *See* D.I. 1132.

20.     As discussed in the Preliminary Objection, the Plan is unconfirmable because, among other things, the nonconsensual nondebtor third party releases are extralegal and invalid for many reasons including:

- The nondebtor third party releases are non-consensual and purport to release the Securities Class's claims against nondebtor third parties. *See e.g., In re Pac. Lumber Co.*, 584 F.3d at 252 ("In a variety of contexts, this court has held that Section 524(e) only releases the debtor, not co-liable third parties. [] These cases seem broadly to foreclose non-consensual non-debtor releases and permanent injunctions.") (collecting cases); *see* D.I. 1132 ¶¶ 13-15;

- The Plan purports to obtain consent only through an opt-out process that does not provide actual notice to known creditors (the Class members). *See* D.I. 1178 ¶¶ 14- 21. Debtors seek to allow opt-outs only on an individual basis, even though the

District Court has appointed Mr. Hoffman as the Lead Plaintiff pursuant to the PSLRA. Securities Action, D.I. 44.  Therefore, substantially all Class members would effectively release *all* claims in the Securities Action with no recourse or notice.  *See generally* D.I. 1132 and 1178;

- The Plan disregards the PSLRA in its entirety, including the Lead Plaintiff's role in protecting the Class and prosecuting the case.  *See generally* D.I. 1132 and 1178. Debtors seek to disallow the Lead Plaintiff's role at all points—including by attempting to disallow the Securities Claim and by indicating to Lead Counsel that Debtors would attempt to disallow an omnibus opt-out of the extralegal, broad, nonconsensual third party releases.  *See generally* D.I. 1132;

- Neither the Plan nor the nondebtor third parties benefitting from the releases provide *any* justification for the extralegal, broad, nonconsensual nondebtor third party releases.  *See* D.I. 1132 ¶¶ 23-27;

- The Plan similarly seeks to prevent the Class from maintaining any cause of action against Core *to the extent of available insurance* (another source of redress for the Class *that does not have any relevant substantive impact on the estate*).  *See* D.I. 1132 ¶¶ 28-30.  Notably, even if the nondebtor third parties were debtors, they would not be able to skirt the claims in the Securities Action.  *See* D.I. 1132 ¶ 11 (discussing Section 523(a)(19)).  Allowing such a release is patently unjust— particularly in context here with *no* consideration and *no* actual notice to known debtors (the Class), D.I. 1132 ¶¶ 23-27; and

- That notice procedures used and contemplated have failed and would fail to provide known creditors (Class members) with actual notice of the nondebtor third party releases, and thus an actual opportunity to opt out[8].  D.I. 1178 ¶¶ 14-21.

21. On August 23, 2023, Lead Plaintiff filed his Preliminary Response to Debtors' Preliminary Objection to Proof of Claim No. 556 (the "Preliminary Response").  D.I. 1178.  The Preliminary Response briefly discussed why the Securities Claim should be allowed here as a Class claim. *Id.*

## RELIEF REQUESTED

22. By this Motion, the Plaintiffs hereby seek on their own behalf and on behalf of the Class, pursuant to Fed. R. Bankr. P. 7023 and, by incorporation, Fed. R. Civ. P. 23, the following relief:

a. Allowing the Class Claim, which was timely filed, and amended on August 1, 2023, by Lead Plaintiff on behalf of the putative Class in the Securities Action;

b. Certifying the Class under Fed. R. Civ. P. 23 for the limited purpose of effectuating the Class Claim;

---

[8] Debtors' procedures not only fail to provide notice as required by law and reason but even fail to meet this Court's Procedures for Complex Cases, Section O.40:

> If a proposed plan seeks **consensual** pre- or post-petition **releases with respect to claims that creditors may hold against non-debtor parties**, then **a ballot must be sent to creditors entitled to vote on the proposed plan and notices must be sent to non-voting creditors and parties in-interest.** The ballot and the notice must inform the creditors of such releases and provide a box to check to indicate assent or opposition to such consensual releases together with a method for returning the ballot or notice.

(Emphasis added.)  The rules in this Court do not allow for ballots or notice to be sent to creditor's "Nominees." *Id*.

c. Allowing an omnibus opt-out of nondebtor third party releases for the Class, or any similar scheme Debtors and Defendants develop;

d. Certifying the Class under Fed. R. Civ. P. 23 for the limited purpose of effectuating an omnibus opt-out of nondebtor third party releases for the Class, or any similar scheme Debtors and Defendants develop.

23.     To be clear, Plaintiffs do not seek by this Motion to have the Securities Claim be an "allowed" claim in the sense that its validity or amount would not be subject to further objection or litigation.  The Securities Action is in the preliminary stages, the Company remains subject to the automatic bankruptcy stay, and liability on the part of any Defendants has not yet been established. Rather, Plaintiffs merely move for the Court to allow the Securities Claim to be treated as a claim on behalf of all Class members, allow an omnibus opt-out for all Class members by the Plaintiffs, or specifically the Lead Plaintiff, and to apply Fed. R. Civ. P. 23 to these proceedings.  *See* Fed. R. Bankr. P. 7023.  This would preserve the rights of the absent Class members so that in subsequent litigation or estate administration there will be no argument that the absent Class members' rights against Core or nondebtor Defendants were somehow extinguished as a result of the April 14, 2023, Bar Date or some draconian opt-out, for which Class members will not receive actual notice, in this proceeding. *See* D.I. 1080 ¶¶ 2, 24 (Debtors touting sending notice to Nominees, instead of providing actual notice to the known creditor Class members themselves as is required).

24.     To preserve the rights of the Class and the individual putative Class members, Lead Plaintiff timely filed, and later amended, the Securities Claim.  *See* Claim 49; Claim No. 556; D.I. 1080-2.  Further, Plaintiffs have also filed the Preliminary Objection and the Preliminary Response. D.I. 1132, 1178.  Lead Plaintiff must do these things and similar as part of his fiduciary duties to the Class as the Court-appointed Lead Plaintiff.  *See e.g. In re Plains All Am. Pipeline, L.P. Sec. Litig.*,

2015 WL 8207331, at *5 (S.D. Tex. Dec. 7, 2015) ("'A lead plaintiff owes a fiduciary duty to the class'") (quoting *In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 448 (S.D. Tex. 2002) citing *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 549–50, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949)); *see also Stein v. Match Grp., Inc.*, 2016 WL 3194334, at *6 (N.D. Tex. June 9, 2016); *In re Craft*, 321 B.R. 189, 196 (Bankr. N.D. Tex. 2005) ("Indeed, class representatives are properly characterized as fiduciaries.") (citing cases).

## JURISDICTION

25.      The Court has jurisdiction over this Motion and the relief requested herein pursuant to 28 U.S.C. §§ 157 and 1334 and the United States District Court for the Southern District of Texas's General Order 2012-06, dated May 24, 2012. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## ARGUMENT

26.       It is well-settled that the Court has the discretion to grant class treatment.  *See e.g., In re TWL Corp.*, 712 F.3d 886, 892 (5th Cir. 2013) ("Rule 7023 is not designated as one of these automatically applicable rules, but Rule 9014 does state that 'the court may at any stage in a particular matter direct that one or more of the other rules in Part VII shall apply.'").  Moreover, this Circuit has recognized it has discretion to permit class treatment even where, as here, the proposed class has not yet been certified.  *See Id*.

27.      The Court should apply Fed. R. Bankr. P. 7023 and Fed. R. Civ. P. 23 to the Securities Claim timely filed by Lead Plaintiff so that the Class may ultimately be certified for purposes of the Class Claim.  Additionally, Plaintiffs request that the Court exercise its discretion to apply Fed. R. Bankr. P. 7023 and Fed. R. Civ. P. 23 to allow an omnibus opt-out of the Plan's nondebtor third party releases, regardless of the legality or permissibility of the releases more generally.

12

28.     Application of Fed. R. Bankr. P. 7023 for purposes of the Securities Claim and the omnibus opt-out of nondebtor third party releases is the best and only remedy to ensure protection for all Class members, including absent Class members.  By virtue of their damages sustained from the wrongdoing alleged in the Securities Action, Class members have substantial claims against Core and the nondebtor third party Defendants.  Yet, due to the PSLRA process, the appointment by the District Court of the Lead Plaintiff, and the inadequacy of the Debtors' notice of the Bar Date, many Class members may not realize they have claims against Core's estate and/or that they, at least according to Debtors, must file an *individual* proof of claim and also individually affirmatively opt-out of the broad nondebtor third party releases that would eliminate the very claims Lead Plaintiff was appointed to pursue on behalf of the Class.  *See* Securities Action, D.I. 44.

29.     Without the necessary protection provided by the Class Claim and omnibus opt-out, unaware Class members will lose potentially valuable rights against Core *and nondebtor third party Defendants*.  *See* D.I. 1132 at 5-7 n.5 (quoting D.I. 1116 at 5-6, 137, and 140).  This Motion is solely intended to provide Class members a proper opportunity to seek redress through the process set out in the Bankruptcy Code where they are adequately represented by court-appointed Lead Plaintiff and counsel.  The class vehicle provided by Fed. R. Bankr. P. 7023 was designed for precisely these circumstances.  *Craft*, 321 B.R. at 194 ("The court believes class proofs of claim are consistent with the Code and the Rules and ***concludes that class proofs of claim are a necessary device to ensure that the relief afforded by the Code is as complete as possible***.") (emphasis added); *Wilson v. Valley Elec. Membership Corp.*, 141 B.R. 309, 311 (E.D. La. 1992) (citing cases); *In re Kaiser Group Int'l, Inc.*, 278 B.R. 58, 62 (Bankr. D. Del. 2002).

30.     Further, even if the nondebtors third party Defendants *were* debtors, these securities laws claims would not be dischargeable as to these individuals generally.  11 U.S.C. § 523(a)(19);

*In re Breezy Ridge Farms, Inc.*, 2009 WL 1514671, at *2 (Bankr. M.D. Ga. May 29, 2009) ("With respect to exceptions to discharge, an individual debtor is not discharged of 'any debt excepted from discharge under section 523[.]'") (quoting 11 U.S.C. § 1141(d)(2)); *see also* D.I. 1132 ¶ 11 (discussing section 523(a)(19)).

31.     Finally, this Court does not have jurisdiction over the claims in the Securities Action, as it is a case involving nondebtors' claims against nondebtors. *See e.g., In re Midway Gold US, Inc.,* 575 B.R. 475, 521-22 (Bankr. D. Colo. 2017) ("The Court cannot adjudicate matters outside its jurisdiction, even if the parties consent, because jurisdiction cannot be created by consent. Nor … can section 105(a) be used to create jurisdiction where it does not exist under some independent statutory basis.").[9]

32.     Even if this Court did have subject matter jurisdiction (which has never been demonstrated by Debtors), it does not have the constitutional or statutory authority to grant the relief requested by Debtors and the nondebtor third party Defendants. *In re Millennium Lab Holdings II, LLC*, 242 F. Supp. 3d 322, 328 (D. Del. 2017), *as amended* (Mar. 20, 2017) ("Following *Stern*, it is clear that regardless of whether the Bankruptcy Court has subject matter jurisdiction over proceedings—both core and non-core—***it cannot enter a final order releasing third-party claims unless it has constitutional authority to do so as well***.") (citing *Stern v. Marshall*, 564 U.S. 462, 469, 131 S. Ct. 2594, 2600, 180 L. Ed. 2d 475 (2011)) (emphasis added); *see also In re Drs. Hosp. of Hyde Park, Inc*., 507 B.R. 558, 586 (Bankr. N.D. Ill. 2013) (a bankruptcy court "may not simply

_____

[9] Contrary to Debtors' or nondebtor Defendants' post-hoc arguments, proceedings solely between nondebtor parties based on non-bankruptcy law, such as the Securities Action, can never fall within a bankruptcy court's "arising under" or "arising in" jurisdiction.  Further, there is no "related to" jurisdiction if "win, lose or draw, there would be no effect on the bankruptcy estate[,]" which is the case in the Securities Action with respect to the *nondebtor Defendants*.  *Johnston v. Valley Credit Servs*., 2007 WL 1166017, at *5–6 (Bankr. N.D. W.Va. Apr. 12, 2007).

rely on whether a matter is 'core' under § 157 but must also examine the matter to determine whether there is also constitutional authority to enter final judgment."). This Court does not have the authority to adjudicate the Securities Action, particularly as it concerns claims solely between nondebtor parties. 15 U.S.C. § 78aa ("The district courts of the United States and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder."); *see also* 15 U.S.C. § 77v; U.S. Const. Art. III. 1.

33. Further, absent the Class Claim and omnibus opt-out, even the tiny fraction of Class members who might have filed proofs of claim will likely lack the individual resources to defend against the Debtors' inevitable objections to the merits of their claims. *See* D.I. 1080 ¶ 3 and n.6. Rejecting the Class Claim and omnibus opt-out would effectively end thousands of Class members' ability to seek redress against Core, its insurance, and Defendants in the Securities Action who are covered by the proposed broad, nonconsensual nondebtor third party releases.

34. Additionally, this would slow the bankruptcy process as the Bar Date would need to be reopened to allow class members to file claims. Fed. R. Bankr. P. 1001 ("These rules shall be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every case and proceeding."). Assuming they actually receive notice this time, then Debtors would have to object each and every claim separately—hardly a better result for creditors and the timely end to this bankruptcy. *See In re Connaught Grp., Ltd.*, 491 B.R. 88, 97 (Bankr. S.D.N.Y. 2013) ("*[i]f the [class] representative files a timely adversary proceeding or class proof of claim, and the Court denies a motion to certify the class, it should set a reasonable bar date to allow the members of the putative class to file individual claims*.") (citations omitted)

15

(emphasis added); *see also In re Pac. Sunwear of Cal., Inc.*, 2016 WL 4250681, at *18 (Bankr. D. Del. Aug. 8, 2016) (ordering a second bar date after refusing to permit an *updated* Class Claim with a longer period); *In re Musicland Holding Corp.,* 362 B.R. 644, 657 (Bankr. S.D.N.Y. 2007) ("If they were entitled to notice and did not receive it, their claims would not be discharged, and they could enforce their claims against the reorganized debtor. … the Court can direct publication and extend the bar date for those creditors or consider certifying a class of unnoticed, general creditors.") (citing *Craft*, 321 B.R. at 194); *TWL*, 712 F.3d at 899.

35.     This Motion is a "contested matter" because there is an actual or foreseeable dispute concerning the relief sought herein.  *See* Fed. R. Bankr. P. 9014 advisory committee note (1982) ("Whenever there is an actual dispute, other than an adversary proceeding, before the bankruptcy court, the litigation to resolve that dispute is a contested matter"); *In re Ephedra Prods. Liab. Litig*., 329 B.R. 1, 7 (Bankr. S.D.N.Y. 2005) (holding that a matter is a "contested matter" for purposes of Fed. R. Bankr. P. 9014 when "opposition is known or reasonably foreseeable").

36.     Fed. R. Bankr. P. 9014, which governs contested matters, provides that "[t]he court may at any stage in a particular matter direct that one or more of the other rules in Part VII shall apply." Fed. R. Bankr. P. 9014(c); *see In re Today's Destiny, Inc*., 388 B.R. 737, 758 (Bankr. S.D. Tex. 2008) ("An objection to a claim institutes a 'contested matter.' Rule 3007. A 'contested matter' triggers Rule 9014. Rule 9014 subjects the contested matter to Federal Bankruptcy Rules that incorporate most Federal Rules of Civil Procedure.").

37.     Among the rules in Part VII of the Bankruptcy Rules is Fed. R. Bankr. P. 7023, which makes applicable Fed. R. Civ. P. 23.  *See* Fed. R. Bankr. P. 7023; *see also In re Wilborn*, 609 F.3d 748, 754 (5th Cir. 2010) ("***class action proceedings are expressly allowed in the Federal Bankruptcy Rules***") (emphasis added). Fed. R. Civ. P. 23 "promote[s] efficiency and economy in

litigation," and "[t]hese principles are no less compelling in the bankruptcy context." *Wilborn*, 609 F.3d at 754 (citing *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 553, 94 S. Ct. 756, 766, 38 L. Ed. 2d 713 (1974)).

## I.     THE COURT SHOULD APPLY FED. R. BANKR. P. 7023 TO THE CLASS PROOF OF CLAIM AND TO ALLOW AN OMNIBUS OPT-OUT

38.     Fed. R. Civ. P. 23 sets out the requirements for class actions in federal courts. Fed. R. Bankr. P. 7023, in turn, makes Fed. R. Civ. P. 23 applicable to adversary proceedings and, by extension, contested matters.  Thus, the requirements for class certification under Fed. R. Bankr. P. 7023 are identical to the requirements for certification under Fed. R. Civ. P. 23.

39.     Application of Fed. R. Bankr. P. 7023 requires a two-step analysis.  First, the Court must determine whether to exercise its discretion under Fed. R. Bankr. P. 9014 to invoke Fed. R. Bankr. P. 7023.  Second, the Court must determine whether the elements of Fed. R. Civ. P. 23 are satisfied.  *See Craft*, 321 B.R. at 198.  Plaintiffs submit that the Court should both invoke Fed. R. Bankr. P. 7023 and certify the Class solely for purposes of allowing and effectuating the Class Claim and the omnibus opt-out of nondebtor third party releases.

40.     It is indisputable that class proofs of claim are permissible.  *Craft*, 321 B.R. at 194 ("The court believes class proofs of claim are consistent with the Code and the Rules and ***concludes that class proofs of claim are a necessary device to ensure that the relief afforded by the Code is as complete as possible***.") (emphasis added).

41.     A fundamental goal of the bankruptcy process is "facilitating creditor compensation." *In re Charter Co.*, 876 F.2d 866, 871 (11th Cir. 1989).  The concept of a class proof of claim furthers that goal. *Id*. ("***Persons holding small claims, who absent class procedures might not prosecute them, are no less creditors under the Code than someone with a large, easily filed***

*claim. Applying Rule 23 to filing procedures will bring all claims forward, as contemplated by the Bankruptcy Code.*") (emphasis added).

### A. The Court Should Exercise Its Discretion under Fed. R. Bankr. P. 9014 to Invoke Fed. R. Bankr. P. 7023 and Fed. R. Civ. P. 23

42.      The decision to invoke Fed. R. Bankr. P. 7023 pursuant to Fed. R. Bankr. P. 9014(c) is discretionary.  *Craft*, 321 B.R. at 198.  Where, as here, a Fed. R. Civ. P. 23 determination has not yet been made in another court, the appropriate bases for the exercise of discretion under Fed. R. Bankr. P. 9014 may properly include (i) prejudice to the debtor or its other creditors, (ii) prejudice to putative class members, (iii) efficient estate administration, (iv) the putative class representatives' conduct in the bankruptcy case, and (v) the status of proceedings in other courts.  *Id*. at 199; *Ephedra*, 329 B.R. at 5.  Each of these factors weighs in favor of applying Fed. R. Bankr. P. 7023.

### 1.  Class Members Will Suffer Prejudice Without Class Treatment

43.      Class members will be prejudiced if the Court does not invoke Fed. R. Bankr. P. 7023 because a significant number of Class members: (i) are unaware of Core's chapter 11 case; (ii) never received the Bar Date notice; (iii) could only have received notice through the deficient publication notice; (iv) are unaware of the Securities Action; (v) are unaware that, as equity holders, they are required file a proof of claim in this bankruptcy proceeding to assert a claim arising from their purchase of Core securities; and/or (vi) even if Class members are aware of both the Securities Action and this bankruptcy, they are unaware that their nondebtor third party claims against nondebtor third party Defendants would be extinguished through this bankruptcy proceeding.  *See Am. Reserve*, 840 F.2d 487, 489 (7th Cir. 1988) (noting that particularly where individuals may not identify claims as those they are entitled to pursue, "the effort needed to decide whether to pursue an identified claim means that for many small claims, it is class actions or nothing").  Even those few Class members who do file individual proofs of claim will be prejudiced when the Debtors or

others inevitably object to their claims[10], forcing those of potentially limited means and legal acumen to expend time, effort, and money defending the merits of their relatively small individual claims before a Court located hundreds, if not thousands, of miles away.

44.     Application of Fed. R. Bankr. P. 7023 and certification of the Class will cure defects in the notice (or lack of notice), preserve the rights of all Class members, and prevent significant prejudice to innocent, potentially financially and legally unsophisticated individual investors who have already suffered financial losses at the hands of the nondebtor third party Defendants.  *See generally* Securities Action, D.I. 62.

### 2.  **Invoking Fed. R. Bankr. P. 7023 Will Not Prejudice the Debtors or Other Creditors**

45.     Applying Fed. R. Bankr. P. 7023 to permit class treatment of the Class Claim and the omnibus opt-out of nondebtor third party releases, "a necessary device to ensure that the relief afforded by the Code is as complete as possible" (*see Craft*, 321 B.R. at 194), will not prejudice the Debtors or any other creditors.  Rather, class treatment will prevent the Debtors and other parties in interest from having to potentially review myriad individual proofs of claims and/or opt-outs filed by even a small fraction of eligible Class members.  It will also avoid the burden on the Court of reviewing and conducting hearings on the claim objections the Debtors or others inevitably will file with respect to *each* such claim.  *See* D.I. 1080 ¶ 3.  Certification of the Class would streamline that otherwise unwieldly process and obviate the need to litigate objections to thousands of substantially identical individual claims and/or opt-outs, thereby wasting estate and judicial resources.  *See* Fed. R. Bankr. P. 1001.

---

[10] *See* D.I. 1080 ¶ 3 ("While the Debtors will object to the merits of the claims raised in the Hoffman POC (or any amended claim Claimant may submit) at a later date, together with all other claims based on conduct alleged in the Securities Litigation …") n.6 ("The Debtors reserve the right to object to any proof of claim filed by any other claimant who may contend that their proof of claim constitutes a class proof of claim relating to the Securities Litigation..").

### 3. **Invoking Fed. R. Bankr. P. 7023 Will Promote Efficient Estate Administration**

46.     Allowing the Class here will be more efficient than requiring or litigating individual claims and/or opt-outs and will assist Debtors and this Court in streamlining the claims resolution process.  When considering the application of Fed. R. Civ. P. 23 to a bankruptcy case, a "pervasive theme is avoiding undue delay in the administration of the case" and preventing a class proof of claim from "'gum[ming] up the works.'"  *Ephedra*, 329 B.R. at 5.  A motion for class treatment or certification need not be filed immediately upon the chapter 11 filing so long as it is filed early enough in the proceedings to avoid improperly affecting the chapter 11 process.  *Id*. at 4-5.  *In re Woodward & Lothrop Holdings, Inc.*, 205 B.R. 365, 369–70 (Bankr. S.D.N.Y. 1997) ("The initial decision to apply Rule 23 in a contested matter raises a 'chicken and egg' paradox.  The claim cannot be allowed as a class claim until the bankruptcy court directs that Rule 23 apply.  It can only make this direction in a pending contested matter which the mere filing of the claim does not initiate.  ***In the absence of an objection, however, the proof of claim is deemed allowed***.") (citations and footnotes omitted) (emphasis added); *In re Tender Loving Care Health Servs., Inc.*, 562 F.3d 158, 162 (2d Cir. 2009) ("in light of the guidance provided by these Rules and Notes, we hold that ***when a debtor files an objection to a claim, the objection has initiated a contested matter***.") (emphasis added.).

47.     Plaintiffs filed the Motion before any hearing on a proposed disclosure statement, much less before any confirmed plan.  *See* D.I. 1220; *see also* D.I. 1210-2 at 2 and 4 (Motion of Debtors for Entry of Order Approving and Authorizing Implementation of Supplemental Non-

Insider Key Employee Retention Plan, first revealing that the "hearing to consider approval of the Disclosure Statement is scheduled for September 27, 2023")[11].

48.     Further, Debtors have been aware of the Securities Action since *before* these chapter 11 cases commenced.  Securities Action, D.I. 14 and 15 (notices regarding Core's filing of the Petition, after Core had stipulated to service in the case).  Here, there is no chance a Class Claim or omnibus opt-out of nondebtor third party releases will "gum up" the works.[12]

49.     To the contrary, certifying the Class so that all Class members' claims and opt-outs may be addressed at once and through the Class Claim and omnibus opt-out is more efficient and cost-effective for all involved.  *See* Fed. R. Bankr. P. 1001.  Rather than delaying the Debtors' reorganization, allowance of the Class Claim and omnibus opt-out and application of Fed. R. Bankr. P. 7023 will streamline the process, reduce estate costs, and provide for a more certain pathway to recovery, if any, by the Class.  *See Id*.

---

[11] This most recent notice of rescheduling of the Disclosure Statement hearing was filed *after* the objection deadline set in the previous notice of rescheduling.  *Compare* D.I. 1179 (rescheduling the Disclosure Statement hearing to September 15, 2023 *and* extending the deadline to object to September 6, 2023) *with* D.I. 1220 (rescheduling the Disclosure Statement hearing to September 27, 2023 *but* no additional deadline to object, even though an amended Plan and Disclosure Statement were filed September 7, 2023); *see also* D.I. 1197 and 1198 (objection to the Disclosure Statement and joinder to that objection, timely filed one day before Debtors' second amended Plan and Disclosure Statement were filed).  Also troubling, the notice of rescheduling was also filed *after* it was first revealed to Lead Plaintiff through Debtors' September 9, 2023, Motion of Debtors for Entry of Order Approving and Authorizing Implementation of Supplemental Non-Insider Key Employee Retention Plan, and was only properly noticed *after* Lead Counsel emailed Debtors' counsel for clarification on September 12, 2023.  *See* D.I. 1210-2 at 2 and 4; D.I. 1220.

[12] Indeed, it is not clear why Debtors would even propose these broad nondebtor third party releases, specifically identifying the claims in the Securities Action, but for the improper purpose of attempting to eliminate the Securities Action claims against *nondebtor Defendants*.  There is simply no connection between the Securities Action claims against the nondebtor Defendants and the estates at issue here.

### 4.   **Plaintiffs' Conduct in the Chapter 11 Cases; No Timing Or Ripeness Issue**

50.     Here, Plaintiffs have monitored and been active in the chapter 11 cases and waited only until Debtors created a contested matter before seeking to have this Court allow class treatment. Therefore, it cannot be said that Plaintiffs waited too long or acted too quickly to seek invocation of Fed. R. Bankr. P. 7023.

51.     The Eleventh Circuit has held that: "***absent an adversary proceeding, the first opportunity a claimant has to move under Bankruptcy Rule 9014, to request application of Rule 7023, occurs when an objection is made to a proof of claim.*** Prior to that time, invocation of Rule 23 procedures would not be ripe, because there is neither an adversary proceeding nor a contested matter." *In re The Charter Co.*, 876 F.2d at 874; *see also In re Spring Ford Indus., Inc.*, 2004 WL 231010, at *4 (Bankr. E.D. Pa. Jan. 20, 2004) ("As such, ***it is the objection which initiates the contested matter, not the proof of claim***."). In fact, courts have certified class proofs of claim *post*-confirmation where, as here, the class proof of claim was filed before the applicable bar date. *See In re Connaught Grp. Ltd.*, 491 B.R. at 99; *In re MF Global Inc.*, 512 B.R. 757, 763 (Bankr. S.D.N.Y. 2014).

52.     At the same time, Lead Plaintiff has made clear his position that Class treatment is the only just solution, as demonstrated by his actions in the Securities Action and his timely Class Claim. Accordingly, Lead Plaintiff has not sat on this idea nor sought to gum up the works of this bankruptcy. Indeed, Lead Plaintiff's current motion is timely and creates no prejudice or delay[13]. *In re CommonPoint Mortgage Co.*, 283 B.R. 469, 482 (Bankr. W.D. Mich. 2002) (certifying a class

---

[13] While Debtors purportedly have been and are extensively negotiating with other creditors, Debtors have refused to negotiate even commonplace measures with the court-appointed Lead Plaintiff and Lead Counsel. Indeed, Debtors appear to be using this bankruptcy in an improper attempt to end the Securities Action—even for claims against nondebtor Defendants and insurance funds. There is simply no legal reason for these actions.

where class action had never been certified by a federal court under Rule 23, class representative timely filed proofs of claim and nine months later filed for class treatment); *Kaiser Group*, 278 B.R. at 62-63 (certifying class where motion for class certification was filed a year after filing of the class proof of claim and four months after debtor's initial objection).

53.     Further, Lead Plaintiff has continuously put forward his position for Debtors and other relevant parties in this case, as well as the Securities Action itself.  *See generally* Securities Action; D.I. 1080-2, 1087, 1088, 1132, 1178; Claim 49; Claim No. 556.  There can be no concern that Debtors or other relevant parties (including the nondebtor third party Defendants who apparently seek the broad releases) were ever unaware of the Securities Action or the Class and its claims.

5.  **Status of the Securities Action**

54.     In deciding whether to apply Fed. R. Bankr. P. 7023, courts consider the status of the litigation and particularly, "whether the class was certified pre-petition[.]"  *In re MF Glob. Inc*., 512 B.R. 757, 763 (Bankr. S.D.N.Y. 2014).  However, the lack of prepetition certification is not dispositive where, as here, obtaining class certification pre-petition was not feasible due to the procedural posture of the Securities Action and the PSLRA itself. *In re MF Global Inc.*, 512 B.R. at 763-65 ("the issue of prepetition certification loses its relevance, since there will seldom be time to file a class action complaint and certify a class before the petition date"); *In re Connaught Group, Ltd.*, 491 B.R. at 98-100 (same).

55.     The Securities Action is in its initial stages and the chapter 11 cases, as they typically do, have proceeded much more quickly.

56.     On November 14, 2022, Mei Pang filed the initial federal securities class action complaint.  Securities Action, D.I. 1. On December 9, 2022, Mei Pang and the Defendants, including Core, filed a stipulation in which Defendants, including Core, accepted service of process.  Securities

Action, D.I. 12; *see also* Securities Action, D.I. 13 (Order granting stipulation).   Then, after

accepting service and filing the stipulation, on December 21, 2022, Core filed its bankruptcy petition.

D.I. 1; *see also* Securities Action, D.I. 14-16.   On March 7, 2023, after a briefed PSLRA lead plaintiff

process, Morgan Hoffman was appointed Lead Plaintiff of the Class by Judge Yeakel.   Securities

Action, D.I. 44.   On March 15, 2023, Debtor Core filed a Notice of Bar Date Order and Proof of

Claim Form in the Securities Action, which included *no* mention that Lead Plaintiff filing a Class

Claim would be objected to by any Debtor.   Securities Action, D.I. 51.   Lead Plaintiff timely filed

the Securities Claim.   *See* Claim 49; Claim No. 556; D.I. 1080-2.   Debtors do not contest the

timeliness of the Securities Claim.   On May 5, 2023, Plaintiffs filed the amended complaint.

Securities Action, D.I. 62.   On August 1, 2023, Lead Plaintiff filed an amended Class Claim to reflect

the amended complaint.   *See* Claim 49, Claim No. 556.

57.     Any motion for class certification in the Securities Action would have been, and

still would be, premature and disallowed under the PSLRA.   15 U.S.C. § 78u-4(b)(3)(B) (PSLRA

stay provision); *see e.g., In re Think Fin., LLC*, 2018 WL 9801454, at *4 (Bankr. N.D. Tex. Aug.

30, 2018) ("The Movants had little or no opportunity to seek classification prepetition. In cases such

as this one where there was not time to certify a class before the petition date, the Court agrees that

the issue of prepetition certification loses its relevance.") (internal quotations omitted).

58.     Numerous courts have applied Fed. R. Bankr. P. 7023 where proposed classes had

not been certified pre-petition.   *See e.g., In re F-Squared Inv. Mgmt., LLC*, 546 B.R. 538, 547 (Bankr.

D. Del. 2016) (denying objection to class proof of claim); *In re First Interregional Equity Corp.*,

227 B.R. 358, 371 (Bankr. D.N.J. 1998) (holding that class treatment was appropriate though class

action was not filed and class was not certified pre-petition); *In re CommonPoint Mortg. Co.*, 283

B.R. at 482 (certifying class that had not been certified prepetition under FRCP 23 but class

representative timely filed proofs of claim and nine months later sought class treatment); *In re First Alliance Mortg. Co.*, 269 B.R. 428, 442-43, 447-48 (C.D. Cal. 2001) (bankruptcy court erred in denying application of Fed. R. Bankr. P. 7023 even though class had not previously been certified and motion for class treatment was filed after objection).

59.     In *Kaiser Group*, 278 B.R. at 62-63, the court rejected the notion that filing a class proof of claim on behalf of an uncertified class is categorically impermissible, holding that "[Bankruptcy] Rule 3001(b) does not prohibit the filing of class claims by a putative class representative.  To hold otherwise 'would effectively prohibit the use of class actions in bankruptcy altogether' unless the class action had proceeded to a stage where a class representative had been appointed pre-petition."  The court added that "[w]e do not believe that the timing of the bankruptcy filing should be determinative of whether a class proof of claim should be permitted."  *Id.* at 62-63.

## II.     THE ELEMENTS OF CLASS CERTIFICATION ARE SATISFIED

60.     Once Fed. R. Bankr. P. 7023 has been deemed applicable, the court must determine whether "under Rule 7023, a class should be certified and whether the putative representatives are appropriate to act as fiduciaries for their class." *Craft*, 321 B.R. at 198. Fed. R. Civ. P. 23(a) provides the prerequisites for maintaining a class action, while Fed. R. Civ. P. 23(b) sets forth the additional requirements for maintenance of a class action.  "Rule 23 is a remedial rule which should be construed liberally to permit class actions, especially in the context of securities fraud suits, where the class action device can prove effective in deterring illegal activity."  *In re Enron Corp. Sec. Deriv. & ERISA Litig.*, 529 F. Supp. 2d 644, 670 (S.D. Tex. 2006) (quotation omitted).  In ruling on a motion for class certification, the court should not delve into the merits of the claims or the defenses to the lawsuit. *See Bertulli v. Indep. Ass'n of Cont'l Pilots*, 242 F.3d 290, 297 n.29 (5th Cir. 2001) ("***We do not consider the merits of a case when reviewing class certification***."); *In re Lease Oil*

*Antitrust Litig*., 186 F.R.D. 403, 419 (S.D. Tex. 1999) ("In evaluating a motion for class certification … the court does not have the authority to conduct a preliminary inquiry into the merits of the case, and hence the substantive allegations contained in the complaint are accepted as true.").

A. **The Class Should Be Certified Under Fed. R. Civ. P. 23(a)**

61. Fed. R. Civ. P. 23(a), which lists the prerequisites for maintaining a class action, provides: "One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." *See* Fed. R. Civ. P. 23(a). Here the Class and its representatives satisfy each of these prerequisites.

1. **Numerosity**

62. The numerosity requirement is satisfied when a potential class is so numerous that joinder of all members is impracticable. *See Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999).

63. "[T]he numerosity requirement 'is generally assumed to have been met' in a class action suit involving nationally traded securities, since the putative class is likely sufficiently numerous, geographically dispersed, and difficult to identify." *Prause v. TechnipFMC, PLC*, 2020 WL 3549686, at *2 (S.D. Tex. Mar. 9, 2020) (quoting *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1039 (5th Cir. 1981)). Plaintiffs believe that the number Class members could be in the hundreds of thousands and are geographically spread throughout the United States and the world, making joinder of all Class Members impractical. *See e.g., Mullen*, 186 F.3d at 624 (finding

numerosity where "it was likely that some of the putative class members were geographically dispersed").

64.     Even in non-PSLRA cases, a reasonable estimate of the number of purported members satisfies the numerosity requirement, a precise number is not required for certification. *Mullen*, 186 F.3d at 624 (accepting a range of class members to satisfy numerosity); *Henry v. Cash Today, Inc.*, 199 F.R.D. 566, 569 (S.D. Tex. 2000) ("plaintiffs are permitted to reasonably approximate the size of the class to satisfy their burden."); *Enron*, 529 F. Supp. 2d at 672 (numerosity only requires "some evidence or a reasonable estimate of the number of purported class members").

65.     Here, the Class consists of: (a) all persons and entities that purchased or acquired the publicly traded common stock or warrants of Core or XPDI, or purchased call options or sold put options on XPDI or Core common stock, between January 3, 2022 and December 20, 2022, both dates inclusive ("Class Period"); and (b) all persons and entities who held the common stock of XPDI at the close of business on December 7, 2021, and were entitled to vote on the approval of the Merger (defined below) at the special meeting of XPDI stockholders on January 19, 2022.  Securities Action, D.I. 62 ¶ 1.

66.     The Company's shares and warrants traded on NASDAQ.  Securities Action, D.I. 62 ¶ 145.  During the Class Period millions of shares and warrants were publicly traded.  *Id*.  The Class thus likely includes hundreds or even thousands of people and entities and satisfies the numerosity requirement.  *Id*.

   2.  **Commonality**

67.     Under Fed. R. Civ. P. 23(a)(2), there must exist questions of law or fact that are common to the Class.  The commonality test under Rule 23(a)(2) is "not demanding."  *Mullen*, 186 F.3d at 625 (citing *Lightbourn v. Cty. of El Paso*, 118 F.3d 421, 426 (5th Cir. 1997)); *Mabary v.*

*Hometown Bank, N.A.*, 2011 WL 5864325, at *2 (S.D. Tex. Nov. 21, 2011) (same).  Commonality may be satisfied with a single common question of law or fact. *See Lightbourn*, 118 F.3d at 426.

68.     Securities class actions containing common questions such as those listed below have repeatedly been held to be prime candidates for class certification.  *See e.g., In re Elec. Data Sys. Corp. Sec. Litig.*, 226 F.R.D. 559, 564 (E.D. Tex.), *aff'd sub nom. Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125 (5th Cir. 2005); *In re FirstPlus Fin. Grp., Inc., Sec. Litig.*, 2002 WL 31415951, at *3 (N.D. Tex. Oct. 28, 2002).  In short, because the core complaint of all Class members is that they transacted in, acquired, or held Core securities at relevant times, the commonality requirement of Rule 23(a)(2) is satisfied.

69.     Here, there are multiple questions of law and fact that are common to the Class, including whether: (i) the Defendants violated the federal securities laws as alleged; (ii) during the Class Period, Defendants made false or misleading statements of material fact to the investing public, or omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading; (iii) the Defendants caused the Company to issue false and misleading SEC filings and public statements during the Class Period; (iv) Defendants acted negligently, knowingly, or recklessly in issuing, or causing the Company to issue, false and misleading SEC filings and public statements during the Class Period; (v) the price of the Company's common stock during the Class Period was artificially inflated because of Defendants' conduct complained of herein; and (vi) the members of the Class have sustained damages and, if so, what is the proper measure of damages.

3. **Typicality**[14]

70.      Fed. R. Civ. P. 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "Like commonality, the test for typicality is not demanding." *Mullen*, 186 F.3d at 625; *In re Elect. Data Sys. Corp. Sec. Litig.*, 226 F.R.D. at 565 (same). The typicality requirement is satisfied so long as "claims arise from a similar course of conduct and share the same legal theory," even when there are "factual differences." *Parker v. Hyperdynamics Corp.*, 2013 WL 623164, at *3 (S.D. Tex. Feb. 19, 2013).  "[T]he critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class." *Id.*; *see also Bitner v. Wyndham Vacation Resorts, Inc.*, 2016 WL 7480428, at *9 (W.D. Wis. Dec. 29, 2016) ("a plaintiff with typical claims will pursue his or her own self-interest in the litigation and in so doing will advance the interests of the class members, which are aligned with ... those of the representative.") (citing authorities).  In other words, the test is whether the representative plaintiffs' claims "arise from the same common nucleus of operative facts as the claims of absent class members." *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 281 (W.D. Tex. 2007); *see Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625, 117 S. Ct. 2231, 2245, 138 L. Ed. 2d 689 (1997)) (common issues test readily met in securities fraud cases).

71.      The typicality requirement is satisfied here because Lead Plaintiff, and the Plaintiffs more generally, are not subject to any unique or special defenses and seek the same relief and advance the same legal theories as other Class members.  *See* Securities Action, D.I. 44 at 6-7 ("Having reviewed the pleadings and all supporting evidence in this case, and looking beyond the pleadings to understand the claims, relevant facts, and applicable law, the court finds that Hoffman

---

[14] The Supreme Court has recognized that the commonality and typicality analyses "tend to merge." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).

has properly asserted typicality for purposes of selecting a lead plaintiff."). Like the other members of the Class, Plaintiffs purchased and held Core securities during the Class Period and at relevant times, at prices artificially inflated by the Defendants' misrepresentations and omissions and suffered damages as a result. *See Parker*, 2013 WL 623164, at *3 (discussing typicality requirement); *In re Universal Access, Inc. Sec. Litig.*, 209 F.R.D. 379, 386 (E.D. Tex. 2002). These shared claims, which arise under a common legal theory and from the same events and course of conduct as those of the other members of the Class, satisfy Fed. R. Civ. P. 23(a)(3)'s typicality requirement.

### 4. **Adequacy**

72. Fed. R. Civ. P. 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This involves examination of both the representatives' counsel and the representatives themselves. *See e.g., In re Dynegy, Inc. Sec. Litig.*, 226 F.R.D. 263, 269 (S.D. Tex. 2005); *Sosna v. Iowa*, 419 U.S. 393, 403 (1975). More specifically, "the adequacy requirement mandates an inquiry into the zeal and competence of the representative's counsel and the willingness and ability of the representative(s) to take an active role in and control the litigation and to protect the interests of absentees." *Berger v. Compaq Comput. Corp*., 257 F.3d 475, 479 (5th Cir. 2001) (citing *Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 484 (5th Cir. 1982) (cleaned up). "The adequacy inquiry also 'serves to uncover conflicts of interest between the named plaintiffs and the class they seek to represent.'" *Berger*, 257 F.3d at 479–80 (quoting *Amchem*, 521 U.S. at 625).

73. Minor conflicts of interest will not defeat certification; "the conflict must be a 'fundamental' one going to the specific issues in controversy." *In re Deepwater Horizon*, 739 F.3d

790, 813 n. 99 (5th Cir. 2014) (quoting *ValleyDrug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003)).

74.     Lead Plaintiff satisfies these elements because his substantial financial stake in the litigation provides him with the ability and incentive to vigorously represent the Class.  *See* Securities Action, D.I. 44 at 8.  Indeed, his interests are perfectly aligned with those of the other Class members and are not antagonistic in any way.  *See* Securities Action, D.I. 17.  There are no facts to suggest any actual or potential conflict of interest or other antagonism between Plaintiffs and other Class members.  *See Id*.

75.     Finally, Lead Plaintiff demonstrated his adequacy through his selection of counsel, The Rosen Law Firm, P.A. as Lead Counsel and Cochran Law, PLLC as Liaison Counsel, firms which are highly qualified and experienced in securities litigation and class action litigation.  *See* Securities Action, D.I. 44 at 7-8 (lead plaintiff order discussing and approving Lead Plaintiff's selection of counsel); *see also* Securities Action, D.I. 17 at 8-9 (briefly discussing Lead Plaintiff's choice of counsel); Securities Action, D.I. 17-2 at 13-38 (Rosen Law and Cochran Law firm resumes).

## B.     The Class Should Be Certified Under Fed. R. Civ. P. 23(b)(3)

76.     Having satisfied Fed. R. Civ. P. 23(a), Lead Plaintiff, and the Plaintiffs more generally, seek to certify the Class for purposes of the Class Claim and the omnibus opt-out of the third party releases under Fed. R. Civ. P. 23(b)(3).  Fed. R. Civ. P. 23(b)(3) provides, in pertinent part, that a class action may be maintained if Fed. R. Civ. P. 23(a) is satisfied and if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and

efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see also Feder,* 429 F.3d at 140. These requirements are satisfied here.

1. **Questions of Law or Fact Common to Class Members Predominate Over Questions Affecting Only Individual Class Members**

77.     Under Rule 23(b)(3), issues subject to generalized proof, and thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof. *In re Great S. Life Ins. Co. Sales Practice Litig.*, 192 F.R.D. 212, 216 (N.D. Tex. 2000); *see also Amchem Products, Inc.*, 521 U.S. at 625 ("[p]redominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws"). Typically, where a "common nucleus of operative facts exists, the predominance factor is met." *Enron*, 529 F. Supp. 2d at 678.

78.     Here the damages suffered by Lead Plaintiff, and the Plaintiffs more generally, and members of the Class arise from and were caused by the same nucleus of operative facts. Consequently, issues subject to generalized proof against the Defendants include whether: (i) Defendants violated the federal securities laws as alleged; (ii) during the Class Period, Defendants made false or misleading statements of material fact to the investing public, or omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading; (iii) the Defendants caused the Company to issue false and misleading SEC filings and public statements during the Class Period; (iv) Defendants acted negligently, knowingly, or recklessly in issuing, or causing the Company to issue, false and misleading SEC filings and public statements during the Class Period; (v) the price of the Company's common stock during the Class Period was artificially inflated because of Defendants' conduct complained of herein; and (vi) the

members of the Class have sustained damages and, if so, what is the proper measure of damages. Securities Action, D.I. 62 ¶ 148.

79.     Each of the issues listed above arises from the same nucleus of operative facts and is subject to generalized proof applicable to the Class as a whole.  Accordingly, the predominance factor has been satisfied.  *See Enron*, 529 F. Supp. 2d 677-78.

80.     Further, in cases like the Securities Action primarily involving a failure to disclose, under *Affiliated Ute Citizens of Utah v. U.S.*, 406 U.S. 128, 153-54 (1972), proof of reliance is not a prerequisite to recovery.  *See* Securities Action, D.I. 62 ¶ 151.

### 2.  **A Class Is the Superior Method of Resolving the Claims of the Class**

81.     Courts in the Fifth Circuit recognize the efficacy of the class action device for redressing injury to large groups of individuals harmed by a common set of operative facts.  *See e.g., Boos v. AT&T, Inc.*, 252 F.R.D. 319, 326 (W.D. Tex. 2008), *modified* (Sept. 17, 2008); *In re Elec. Data Sys. Corp. Sec. Litig.*, 226 F.R.D. at 570-71.  A class action is the superior method of resolving a claim if class certification would be an efficient means of adjudicating the claim.  *See In re Elec. Data Sys. Corp. Sec. Litig.,* 226 F.R.D. at 571.  The matters pertinent to the superiority factor under Fed. R. Civ. P. 23(b)(3) include: (i) the class members' interests in individually controlling the prosecution or defense of separate actions; (ii) the extent and nature of any litigation concerning the controversy already begun by or against class members; (iii) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (iv) the likely difficulties in managing a class action.  Fed. R. Civ. P. 23(b)(3).  Here, a Class Claim and omnibus opt-out are superior to all available methods for the fair and efficient adjudication of the Class's claims.  *See* Securities Action, D.I. 62 ¶ 149.

82.     The first factor weighs in favor of the Class. Since the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the Class members to seek redress for the wrongful conduct alleged. "[O]ne of the 'very core' purposes of the class action is to 'overcome the problem that small recoveries do not provide the incentive for any individuals to bring solo action prosecuting his or her rights.'" *Mabary*, 2011 WL 5864325, at *4 (citing *Amchem*, 521 U.S. 591, 615, 117 S. Ct. 2231, 2245, 138 L. Ed. 2d 689).  Moreover, "[a]s long as the named plaintiff seek to maximize the recovery for the class, little else matters." *Lehocky v. Tidel Techs., Inc*., 220 F.R.D. 491, 510 (S.D. Tex. 2004).

83.     The second factor also weighs in favor of class certification, as no litigation or objections have commenced as to the validity of any individual proofs of claim.

84.     Finally, the third and fourth factors favor class certification because concentrating claims of the Class through a collective process is desirable to promote consistent adjudications and efficiency as well as limit the overall cost of litigating potentially thousands of individual proofs of claim.   Moreover, any other method of claims resolution would disenfranchise hundreds or thousands of Class members. *Mabary*, 2011 WL 5864325, at *4 (citing *Amchem*, 521 U.S. 591, 615, 117 S. Ct. 2231, 2245, 138 L. Ed. 2d 689).

85.     Indeed, individualized damages of any Class member cannot defeat predominance because damages can be measured on a class-wide basis through the traditionally accepted "out-of-pocket measure" in line with *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013).  While *Comcast* holds that the damages theory must be consistent with the liability theory, it does not require that damages be calculated with certainty at the class certification stage. *See Ludlow v. BP, p.l.c.*, 800 F.3d 674, 685 (5th Cir. 2015) ("*Comcast* requires a 'sound' methodology, not certainty").

## NO PREVIOUS REQUEST

86.     No previous request for the relief sought herein, has been made by Plaintiffs to this or any other court. However, Plaintiffs have noted similar issues and requested similar relief— including in Plaintiff's Securities Claim (Claim 49; Claim No. 556), Preliminary Objection (D.I. 1132), and Preliminary Response (D.I. 1178).

## RESERVATION OF RIGHTS

87.     Plaintiffs reserve their right to supplement, amend, or modify their Motion based on, among other things, any new information or arguments presented or introduced by the Debtor or any other party.

## CONCLUSION

88.     For all of the foregoing reasons, Plaintiffs respectfully request that an order, substantially in the form submitted herewith, be entered: (i) finding that Fed. R. Bankr. P. 7023 is applicable under Fed. R. Bankr. P. 9014; (ii) allowing the Class Proof of Claim; (iii) certifying the Class under Fed. R. Bankr. P. 7023 and Fed. R. Civ. P. 23 for purposes of allowance and effectuation of the Class Proof of Claim; (iv) allowing an Omnibus Opt-Out of the Plan's Nondebtor Third Party Releases; and (v) Certifying Class under Fed. R. Bankr. P. 7023 and Fed. R. Civ. P. 23 for Purposes of the Omnibus Opt-Out of the Plan's Nondebtor Third Party Releases.

Dated: September 14, 2023          **COCHRAN LAW, PLLC**

                                   */s/ Stuart L. Cochran*
                                   Stuart L. Cochran
                                   Texas Bar No.: 24027936
                                   8140 Walnut Hill Ln., Suite 250
                                   Dallas, Texas 75231
                                   Telephone: (469) 333-3405
                                   Facsimile: (469) 333-3406
                                   stuart@scochranlaw.com

                                   *Liaison Counsel for Lead Plaintiff*

**THE ROSEN LAW FIRM, P.A.**
Phillip Kim (admitted pro hac vice)
Joshua Baker (admitted pro hac vice)
275 Madison Avenue, 40th Floor
New York, NY 10116
Phone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: jbaker@rosenlegal.com

*Lead Counsel for Lead Plaintiff*

**THE SCHALL LAW FIRM**
Brian Schall
Rina Restaino
2049 Century Park East, Suite 2460
Los Angeles, CA 90067
Phone: (310) 301-3335
Fax: (213) 519-5876
Email: brian@schallfirm.com
Email: rina@schallfirm.com

*Additional Counsel for Lead Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of September 2023, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/ Stuart L. Cochran
Stuart L. Cochran