IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| CORE SCIENTIFIC, INC., *et al.,* | § § § | Case No. 22-90341 (DRJ) |
| Debtors.[1] | § § § § | (Jointly Administered) |

**DEBTORS' EMERGENCY MOTION FOR ENTRY OF
ORDER (I) AUTHORIZING CORE SCIENTIFIC, INC.'S ENTRY INTO
PREMIUM FINANCING AGREEMENT AND (II) GRANTING RELATED RELIEF**

> EMERGENCY RELIEF HAS BEEN REQUESTED. RELIEF IS REQUESTED NOT LATER THAN 5 P.M. (CENTRAL PREVAILING TIME) ON THURSDAY, SEPTEMBER 21, 2023.
>
> IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST APPEAR AT THE HEARING IF ONE IS SET, OR FILE A WRITTEN RESPONSE PRIOR TO THE DATE THAT RELIEF IS REQUESTED IN THE PRECEDING PARAGRAPH. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.
>
> YOU MAY PARTICIPATE IN THE HEARING EITHER IN PERSON OR BY AN AUDIO AND VIDEO CONNECTION. AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S DIAL-IN FACILITY. YOU MAY ACCESS THE FACILITY AT 832-917-1510.  ONCE CONNECTED, YOU WILL BE ASKED TO ENTER THE CONFERENCE ROOM NUMBER.  JUDGE JONES'S CONFERENCE ROOM NUMBER IS 205691. VIDEO COMMUNICATION WILL BE BY USE OF THE GOTOMEETING PLATFORM. CONNECT VIA THE FREE GOTOMEETING APPLICATION OR CLICK THE LINK ON JUDGE JONES'S HOME PAGE. THE MEETING CODE IS "JUDGEJONES".  CLICK THE SETTINGS ICON IN THE UPPER RIGHT CORNER AND ENTER YOUR NAME UNDER THE PERSONAL INFORMATION SETTING.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions, VII, LLC (3198).  The Debtors' corporate headquarters and service address is 210 Barton Springs Road, Suite 300, Austin, Texas 78704.

> **HEARING APPEARANCES MUST BE MADE ELECTRONICALLY IN ADVANCE OF BOTH ELECTRONIC AND IN-PERSON HEARINGS. TO MAKE YOUR APPEARANCE, CLICK THE "ELECTRONIC APPEARANCE" LINK ON JUDGE JONE'S HOME PAGE. SELECT THE CASE NAME, COMPLETE THE REQUIRED FIELDS AND CLICK "SUBMIT" TO COMPLETE YOUR APPEARANCE.**

Core Scientific Operating Company f/k/a Core Scientific, Inc. ("**Core**") and its debtor affiliates in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"), respectfully represent as follows in support of this motion (the "**Motion**"):

### Preliminary Statement

1. As described further herein, in the ordinary course of their bitcoin mining and cryptocurrency hosting operations, the Debtors maintain various property insurance policies, certain of which the Debtors recently renewed on August 24, 2023. To finance the renewal of such property insurance policies, the Debtors seek this Court's approval to enter into an insurance premium financing agreement by and between Core and FIRST Insurance Funding, a Division of Lake Forest Bank & Trust Company, N.A. ("**FIRST**" and, together with the Debtors, the "**Parties**"), attached hereto as **Exhibit A** (the "**Premium Financing Agreement**").

2. Pursuant to the Premium Financing Agreement, FIRST will finance 75% of the Debtors' premiums for the Financed Policies (defined below) at a 7.64% annual percentage interest rate, allowing the Debtors to preserve over $1.7 million in cash on hand. Although the Debtors believe that the requested relief likely falls within the ordinary course of the Debtors' business and authorized under the Insurance Order (defined below), the Debtors seek entry of the Proposed Order (defined below) out of an abundance of caution and to provide assurances to FIRST. Moreover, as further described below, the first $644,514.93 installment and $2,147,776.09 down payment is owed to FIRST on September 24. Accordingly, the Debtors request that the Court consider this motion on an emergency basis and enter the Proposed Order

2

(as defined below) prior to September 23 to allow the Debtors to timely make their first payment to FIRST to avoid a default under Premium Financing Agreement.

## Relief Requested

3. By this Motion, pursuant to sections 363 and 364 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Debtors request entry of an order, substantially in the form attached hereto as **Exhibit B** (the "**Proposed Order**"), (i) authorizing Core to enter into the Premium Financing Agreement and perform all obligations thereunder and (ii) granting related relief. In support of the Motion, the Debtors submit the *Declaration of Michael Bros in Support of Debtors' Emergency Motion for Entry of Order (I) Authorizing Core Scientific Inc.'s Entry into Premium Financing Agreement and (II) Granting Related Relief* (the "**Bros Declaration**") attached here to as **Exhibit C**.

## Jurisdiction

4. The United States Bankruptcy Court for the Southern District of Texas (the "**Court**") has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

A. **The Debtors' Chapter 11 Cases**

5. On December 21, 2022 (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary case under the Bankruptcy Code. The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3

6. The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b) and Rule 1015-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Local Rules**").

7. On December 22, 2022, the Court entered the *Final Order (I) Authorizing Debtors to (A) Continue Insurance Programs and Surety Bond, and (B) Pay Certain Obligations with Respect thereto; (II) Granting Relief from Automatic Stay with Respect to Workers' Compensation Claims; and (III) Granting Related Relief* (Docket No. 118) (the "**Insurance Order**") granting the *Emergency Motion for Debtors for Interim and Final Orders (I) Authorizing Debtors to (A) Continue Insurance Programs and Surety Bond Program, and (B) Pay Certain Obligations with Respect Thereto; (II) Granting Relief from Automatic Stay with Respect to Workers' Compensation Claims; and (III) Granting Related Relief* (Docket No. 10) (the "**Insurance Motion**") on a final basis. The Insurance Order authorizes the Debtors to continue their insurance programs as described in the Insurance Motion, including the property insurance policies. The Insurance Order also authorizes the Debtors to reuse, extend, renew, rollover, replace, or obtain new insurance policies, and to take all appropriate actions in connection therewith, in the ordinary course of business.

8. On January 9, 2023, the United States Trustee for Region 7 (the "**U.S. Trustee**") appointed an official committee of unsecured creditors in these chapter 11 cases pursuant to section 1102 of the Bankruptcy Code (the "**Creditors' Committee**"). On March 23, 2023, the U.S. Trustee appointed an official committee of equity security holders (the "**Equity Committee**"). No trustee or examiner has been appointed in these chapter 11 cases.

### B. The Premium Financing Agreement

9. The Debtors maintain various property insurance policies from numerous insurance companies to provide coverage for liabilities and the risk of physical loss or damage to the Debtors' properties. The Debtors' various insurance policies and programs, and their importance to the Debtors' operations, are described in more detail in the Insurance Motion. Pursuant to the Insurance Order, the Court authorized the Debtors to maintain and continue their insurance coverage in the ordinary course of business, without the need for subsequent Court approval. Prior to the expiration of several of the Debtors' property insurance policies, on August 24, 2023, the Debtors renewed their existing property insurance policies and/or purchased replacement policies from various insurers for an additional one-year period between August 24, 2023 through and including August 24, 2024 (the "**Financed Policies**").

10. Pursuant to the Premium Financing Agreement, FIRST will provide financing to the Debtors to satisfy insurance premiums coming due under the Financed Policies. Under the Premium Financing Agreement, the total premium amount is $7,159,253.62 and the total amount to be financed is $5,011,477.53. Under the Premium Financing Agreement, the Debtors are required to pay FIRST a total of $5,156,119.44, as well as a down payment to be paid in the amount of $2,147,776.09, and the Debtors will pay the balance in eight (8) monthly installments of $644,514.93 each due on the 24th of each month commencing on September 24, 2023. The annual percentage interest rate for FIRST's commitment under the Premium Financing Agreement is 7.640%.

11. As security for payment of all sums owed by the Debtors pursuant to the Premium Financing Agreement, including any late charges and attorney's fees and costs (together, the "**Indebtedness**"), the Debtors will grant and assign to FIRST a first priority lien on and security interest in the Financed Policies pursuant to the Premium Financing Agreement,

5

including (i) all unearned premiums with respect to the Financed Policies, (ii) any credits generated by the Financed Policies, (iii) dividend payments with respect to the Financed Policies, and (iv) loss payments which reduce unearned premiums in accordance with the Financed Policies (the "**Collateral**").

12. Pursuant to the Premium Financing Agreement, the Debtors are appointing FIRST as their attorney-in-fact with the irrevocable power to cancel the Financed Policies and collect the unearned premium in the event the Debtors are in default of their obligations under the Premium Financing Agreement ("**Event of Default**").

13. In order to effectuate the Debtors' entry into the Premium Financing Agreement, the Debtors seek to modify the automatic stay provisions of section 362 of the Bankruptcy Code (the "**Automatic Stay**"), to the extent applicable, for the limited purpose of permitting FIRST, upon an Event of Default and following five (5) days after serving notice of such default on the Debtors, the Automatic Stay shall automatically lift to enable FIRST (without further order of the Court) and any insurance companies providing the coverage under the Financed Policies, to take all steps necessary and appropriate to cancel the Financed Policies, recover the Collateral and apply such Collateral to the Indebtedness owed to FIRST by the Debtors. In exercising such rights, FIRST shall comply with the notice and other relevant provisions of the Premium Financing Agreement.

## Relief Requested Should Be Granted

14. Although entry into premium financing agreements in order to maintain or renew their insurance programs likely falls within the Debtors' ordinary course of business and may be authorized by the Court pursuant to the Insurance Order, out of an abundance of caution and in satisfaction of a condition to the effectiveness of such agreement, the Debtors

6

seek this Court's authority under sections 363 and 364 of the Bankruptcy Code to enter into and perform under the Premium Financing Agreement.

15. Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that debtors "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). A court may authorize a debtor to use estate property upon a finding that such use is supported by sound business reasons. *See, e.g.*, *In re Cont'l Air Lines*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business."). Once a debtor articulates a reasonable basis for its business decisions, "courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). There is a presumption that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).

16. Thus, if a debtor's actions satisfy the business judgment test, then the transaction in question should be approved under section 363(b) of the Bankruptcy Code. Indeed, when applying the "business judgment" standard, courts show great deference to a debtor's business decisions. *See id.* at 656 ("Courts are loath to interfere with corporate decisions absent a showing of bad faith, self-interest, or gross negligence."); *see also Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985) ("More exacting scrutiny would slow the administration of the debtor's estate and increase its cost, interfere with the Bankruptcy

Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially."); *In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) ("Overcoming the presumptions of the business judgment rule on the merits is a near-Herculean task.").

17. In addition, pursuant to section 364(c)(2) of the Bankruptcy Code, if the Debtors are unable to obtain unsecured financing, the Court may authorize the Debtors to obtain financing secured by a lien on property of the estate that is not otherwise subject to a lien. *See, e.g., In re Estrada*, No. 16-80003-G3-11, 2016 WL 745536, at *3 (Bankr. S.D. Tex. Feb. 24, 2016) (secured credit is authorized, after notice and a hearing, after a showing that unsecured credit cannot be obtained); *In re Broadstar Wind Sys. Grp. LLC*, No. 10-33373-BJH, 2010 WL 5208222, at *1 (Bankr. N.D. Tex. July 1, 2010); *In re Tridimension Energy, L.P.*, No. 10-33565-SGJ, 2010 WL 5267031, at *5 (Bankr. N.D. Tex. Oct. 29, 2010).

18. "The statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable." *Bray v. Shenandoah Fed. Sav. & Loan Assn. (In re Snowshoe Co.)*, 789 F.2d 1085, 1088 (4th Cir. 1986). "A debtor must show that it made a reasonable effort to obtain post-petition financing from other potential lenders on less onerous terms and that such financing was unavailable." *In re Harborwalk, LP*, No. 10-80043-G3-11, 2010 WL 346298, at *2 (Bankr. S.D. Tex. Jan. 29, 2010) (citing S*untrust Bank v. Den–Mark Constr., Inc.*, 406 B.R. 683 (E.D.N.C.2009)); *In re Laffite's Harbor Dev. I, LP*, No. 17-36191-H5-11, 2018 WL 272781, at *3 (Bankr. S.D. Tex. Jan. 2, 2018) (denying debtor's request for secured financing where debtor "did not make even a rudimentary effort to comply with section 364(d)(1) before seeking approval of a transaction which would prime [the proposed financer's] lien."); *In re Drillmar Oil & Gas, Inc.,* No. 09-38737, 2010 WL 5158258,

at *2 (Bankr. S.D. Tex. July 12, 2010) (approving debtors' motion granting senior liens and security interests (among other things) because the debtor required post-petition financing that could not be obtained on equal or more favorable terms than those presented by the secured financing liens within the time required by the debtors to avoid irreparable harm).

19. As described in detail in the Insurance Motion, continuation of the Financed Policies is necessary to protect the Debtors from various risks and hazards, both natural and mechanical, relating to their bitcoin mining facilities and cryptocurrency-mining machines or "rigs" that are located across all of the Debtors' hosting locations, as well as equipment and property during transport. Without the protection of the Financed Policies, the Debtors would be directly liable for all such losses. Accordingly, the Insurance Policies are necessary to prudent and effective operation of the Debtors' businesses.

20. In addition, the Debtors believe that the terms of the Premium Financing Agreement are commercially fair and reasonable, including the granting of a lien on the Financed Policies to FIRST, and present the most favorable terms for the Debtors. As noted above, FIRST would only agree to finance the Financed Policies on a secured basis, and the quote that the Debtors' insurance broker Aon PLC obtained from other insurance premium finance companies has the same requirement. Moreover, it is common and accepted business practice for insurance premium finance companies, such as FIRST, to require the borrower to grant a security interest in the insurance policies to secure the borrower's obligations thereunder, and the Debtors have been unable to obtain unsecured credit to fund the Financed Policies. Entry into the Premium Financing Agreement will also allow the Debtors to renew the Financed Policies without having to expend significant cash up front. In light of the importance of both maintaining insurance coverage with respect to business activities and preserving the Debtors' cash flow, the Debtors

believe that it is a valid exercise of sound business judgement and is in the best interests of the Debtors' estates and all parties in interest. Therefore, the Debtors respectfully request that the Court authorize the Debtors to enter into the Premium Financing Agreement and perform all obligations thereunder.

### Emergency Consideration is Requested/Waiver of 6004(h)

21.   The Debtors seek relief on an emergency basis.  It is critical that the Debtors be authorized to enter into and perform under the Premium Financing Agreement no later than September 24, 2023 in order to allow the Debtors to pay the first installment owed to FIRST.  For the same reason, the Debtors hereby request relief from Bankruptcy Rule 6004(h), which provides that an "order authorizing the use . . . of property . . . is stayed until expiration of 10 days after entry of the order, unless the Court orders otherwise."   Absent the relief on an emergency relief, the Debtors will be unable to satisfy their obligations under the Premium Financing Agreement, which may result in cancellation of certain insurance policies and/or other potential adverse consequences for the Debtors and their estates.

### Reservation of Rights

22.   Except to the extent that this Motion is granted, nothing contained in this Motion or any actions taken by the Debtors pursuant to the relief granted is intended or should be construed as: (i) an admission as to the validity of any claim against the Debtors, or (ii) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law.

### Notice

23.   Notice of this Motion will be served on any party entitled to notice pursuant to the Insurance Order and Bankruptcy Rule 2002 and any other party entitled to notice pursuant to Bankruptcy Local Rule 9013-1(d).

**No Previous Request**

24. No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated:  September 17, 2023
         Houston, Texas

                                              Respectfully submitted,

                                               /s/  Alfredo R. Pérez
WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (15776275)
Clifford W. Carlson (24090024)
700 Louisiana Street, Suite 1700
Houston, Texas  77002
Telephone: (713) 546-5000
Facsimile:  (713) 224-9511
Email:  Alfredo.Perez@weil.com
            Clifford.Carlson@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Ray C. Schrock (admitted *pro hac vice*)
Ronit J. Berkovich (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:   (212) 310-8007
Email:  Ray.Schrock@weil.com
            Ronit.Berkovich@weil.com

*Attorneys for Debtors
and Debtors in Possession*

**Certificate of Service**

I hereby certify that on September 17, 2023, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                                                                 */s/ Alfredo R. Pérez*
                                                                                  Alfredo R. Pérez