## Exhibit C

**Bros Declaration**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| CORE SCIENTIFIC, INC., *et al.*, | § § § | Case No. 22-90341 (DRJ) |
| Debtors.[1] | § § § § | (Jointly Administered) |

### DECLARATION OF MICHAEL BROS IN SUPPORT OF DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING CORE SCIENTIFIC, INC.'S ENTRY INTO PREMIUM FINANCING AGREEMENT AND (II) GRANTING RELATED RELIEF

I, Michael Bros, pursuant to section 1746 of title 28 of the United States Code, hereby declare under penalty of perjury that the following is true to the best of my knowledge, information, and belief:

1. I am the Senior Vice President of Capital Markets & Acquisitions at Core Scientific Operating Company f/k/a Core Scientific, Inc. ("**Core**", and together with its debtor affiliates in the above-captioned chapter 11 cases, the "**Debtors**"). I have served in this capacity since January 2022. Before that, starting in December 2018, I was Core's Vice President of Corporate Development. Prior to joining Core, I held various positions at Kayne Anderson from 2014 to 2018 and Merrill Lynch from 2011 to 2014. I hold a Bachelor of Arts from the University

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions, VII, LLC (3198). The Debtors' corporate headquarters and service address is 210 Barton Springs Road, Suite 300, Austin, Texas 78704.

of Saint Thomas and a Master in Business Administration from the University of California, Los Angeles Anderson School of Management.

2. I submit this Declaration in support of the *Debtors' Emergency Motion for Entry of Order (I) Authorizing Core Scientific, Inc.'s Entry into Premium Financing Agreement and (II) Granting Related Relief*, filed contemporaneously herewith (the "**Motion**").[2] Except as otherwise stated in this Declaration, I have personal knowledge of or have relied upon the knowledge of others employed by the Debtors or their advisors with respect to the matters set forth herein. If called to testify, I could and would testify competently to the facts set forth herein.

### Premium Financing Agreement

3. The Debtors maintain various property insurance policies from numerous insurance companies to provide coverage for liabilities and the risk of physical loss or damage to the Debtors' properties. The Debtors' various insurance policies and programs, and their importance to the Debtors' operations, are described in more detail in the Insurance Motion. Pursuant to the Insurance Order, the Court authorized the Debtors to maintain and continue their insurance coverage in the ordinary course of business, without the need for subsequent Court approval. Prior to the expiration of several of the Debtors' property insurance policies, on August 24, 2023, the Debtors renewed their existing property insurance policies and/or purchased replacement policies from various insurers for an additional one-year period between August 24, 2023 through and including August 24, 2024 (the "**Financed Policies**").

4. Continuation of the Financed Policies is necessary to protect the Debtors from various risks and hazards, both natural and mechanical, relating to their bitcoin mining facilities and cryptocurrency-mining machines or "rigs" that are located across all of the Debtors'

---

[2] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to such terms in the Motion.

hosting locations, as well as equipment and property during transport. Without the protection of the Financed Policies, the Debtors would be directly liable for all such losses. Accordingly, the Insurance Policies are necessary to prudent and effective operation of the Debtors' businesses.

5. I believe that the terms of the Premium Financing Agreement are commercially fair and reasonable, including the granting of a lien on the Financed Policies to FIRST, and present the most favorable terms for the Debtors. My understanding is that FIRST would only agree to finance the Financed Policies on a secured basis and that it is common and accepted business practice for insurance premium finance companies, such as FIRST, to require the borrower to grant a security interest in the insurance policies financed in exchange for the financing provided, and the Debtors have been unable to obtain unsecured credit to fund the Financed Policies. Entry into the Premium Financing Agreement will also allow the Debtors to renew the Financed Policies while preserving significant cash on the Debtors' balance sheet, as the Premium Financing Agreement will finance 75% of the Financed Policies premium. In light of the importance of both maintaining insurance coverage with respect to business activities and preserving the Debtors' cash flow, I believe that it is a valid exercise of sound business judgement and is in the best interests of the Debtors' estates, their stakeholders, and all parties in interest. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.

Dated: September 17, 2023
      Bellevue, Washington

                                      Respectfully submitted,

                                    By:    */s/ Michael Bros*
                                              Michael Bros
                                              Senior Vice President of Capital Markets & Acquisitions