IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | § § | Chapter 11 |
| CORE SCIENTIFIC, INC., *et al.*, | § § § | Case No. 22-90341 (DRJ) |
| Debtors.[1] | § § § | (Jointly Administered) |

MOTION OF DEBTORS FOR
AUTHORITY TO ENTER INTO LEASE AND RELATED AGREEMENTS

> **IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE ELECTRONICALLY AT HTTPS://ECF.TXSB.USCOURTS.GOV/ WITHIN TWENTY-ONE DAYS FROM THE DATE THIS MOTION WAS FILED. IF YOU DO NOT HAVE ELECTRONIC FILING PRIVILEGES, YOU MUST FILE A WRITTEN OBJECTION THAT IS ACTUALLY RECEIVED BY THE CLERK WITHIN TWENTY-ONE DAYS FROM THE DATE THIS MOTION WAS FILED. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

Core Scientific, Inc. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), respectfully represent as follows in support of this motion (the "**Motion**"):

**Preliminary Statement**

1. The Debtors are one of the largest blockchain infrastructure, hosting provider, and digital asset mining companies in North America, with operation spanning across eight operational data centers. One of such data centers is located on a sixty (60) acre tract of land

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions VII, LLC (3198). The Debtors' corporate headquarters and service address is 210 Barton Springs Road, Suite 300, Austin, Texas 78704.

located in Reeves County, Texas (the "**Cottonwood I Property**"). The Debtors require access to the fifty (50) acre tract of land located in Reeves County, Texas adjacent to the Cottonwood I Property (the "**Cottonwood II Property**" and, together with the Cottonwood I Property, collectively the "**Cottonwood Facility**"), in order to power the data center located on the Cottonwood I Property. The Cottonwood Facility is instrumental to the Debtors' business and can only operate to its full capacity with the Debtors' use of both the Cottonwood I Property and Cottonwood II Property. Given the value of the Cottonwood II Property to the Debtors, it is in the Debtors' sound business judgement to enter into the Cottonwood II Agreements, which include the Cottonwood II Lease and certain easements agreements required for the Debtors to operate the Cottonwood Facility in exchange for one-time payment of $1,000,000.00 (the "**Consideration**").

2.       Accordingly, the Debtors request that the Bankruptcy Court authorize the Debtors to enter into and perform under the Cottonwood II Agreements (as defined below).

## Relief Requested

3.       By this Motion, the Debtors request an order pursuant to sections 105(a) and 363 of chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), substantially similar to the form attached as **Exhibit A** (the "**Proposed Order**"), authorizing Debtor Core Scientific Operating Company ("**Core**") to enter into and perform under (i) that certain surface lease agreement attached as **Exhibit 1** to the Proposed Order (the "**Cottonwood II Lease**") as evidenced by that certain memorandum of lease agreement attached as **Exhibit 2** to the Proposed Order (the "**Cottonwood II Memo of Lease**"), between JRC/RGC34 Trade Tracts, LTD (the "**Landlord**") and Core, for the Cottonwood II Property, (ii) that certain non-exclusive easement agreement attached as **Exhibit 3** to the Proposed Order (the "**Distribution Easement Agreement**"), between Landlord and Core, for use of a 60-foot wide strip of land abutting the

2

Cottonwood II Property (the "**Distribution Easement Area**") to run a distribution line to distribute energy from the Cottonwood Substation to the Cottonwood II Property (the "**Distribution Line**"), (iii) that certain non-exclusive easement agreement attached as **Exhibit 4** to the Proposed Order (the "**Transmission Easement Agreement**"), between Landlord and Core, for use of a 60-foot wide strip of land abutting the Cottonwood II Property (the "**Energy Transmission Easement Area**") to run a transmission line (the "**Transmission Line**") to transmit energy from the electrical grid to the Debtors' electrical substation (the "**Cottonwood Substation**") located on the Cottonwood I Property, and (iv) that certain access easement agreement attached as **Exhibit 5** to the Proposed Order (the "**Access Easement Agreement**" and, together with the Cottonwood II Lease, the Cottonwood II Memo of Lease, the Distribution Easement Agreement, and the Transmission Easement Agreement, collectively, the "**Cottonwood II Agreements**"), between Landlord and Core, for use of a 30-foot wide strip of land (the "**Road Access Easement Area**" and, together with the Energy Distribution Easement Area and Transmission Easement Area, collectively, the "**Easement Areas**") which provides the sole means of ingress to, and egress from, the Cottonwood II Property.

## Background

4. On December 21, 2022 (the "**Petition Date**"), each of the Debtors filed with this Court a voluntary case under the Bankruptcy Code. The Debtors continue to operate their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b) and Rule 1015-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Local Rules**").

6.      On January 9, 2023, the United States Trustee for Region 7 (the "**U.S. Trustee**") appointed an official committee of unsecured creditors in these chapter 11 cases pursuant to section 1102 of the Bankruptcy Code. On March 23, 2023, the U.S. Trustee appointed an official equity committee in these chapter 11 cases pursuant to section 1102 of the Bankruptcy Code. No trustee or examiner has been appointed in these chapter 11 cases.

## Jurisdiction

7.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## The Mining Operations

8.      The Debtors operate a bitcoin mining company which mines digital assets for its own account ("**Self-Mining**") and hosts miners for third-party customers ("**Hosting Operations**" and, together with Self-Mining, collectively, "**Mining Operations**"). Mining Operations are performed by specialized computers, or "miners", which power and secure blockchains by solving complex cryptographic algorithms to validate transactions on specific digital asset networks. Notably, Mining Operations require massive amounts of computing power and energy. As a bitcoin mining company, the Debtors are heavily dependent on electricity to operate the computing power necessary to sustain Mining Operations.

9.      The Debtors have developed significant electrical infrastructure (including the Cottonwood Substation) at the Cottonwood Facility, which has, as of the date hereof, been approved by the Electric Reliability Council of Texas and Texas New Mexico Power Company to receive 234 megawatts of energy from the electrical grid. The Cottonwood Substation, in turn, powers Mining Operations at the Cottonwood Facility.

10. Electricity is distributed from the electrical grid to the Cottonwood Substation through the Transmission Line which runs across the Transmission Easement Area. Electricity is transmitted from the Cottonwood Substation to the Cottonwood I Property through the Transmission Line which runs across the Transmission Easement Area.

### The Cottonwood II Property and Easement Areas

11. In early 2022, in connection with the development of the Cottonwood Facility on the Cottonwood I Property, the Debtors approached Landlord to procure the Transmission Easement Agreement. Landlord informed the Debtors that Landlord would enter into the Transmission Easement Agreement with Core if Core also entered into (i) the Cottonwood II Lease for the Cottonwood II Property (to be memorialized by the Cottonwood II Memo of Lease), which would give the Debtors the option of further expanding their operations at the Cottonwood Facility to include additional Mining Operations on the Cottonwood II Property, (ii) the Distribution Easement Agreement, pursuant to which the Debtors would distribute energy through the Distribution Line from the Cottonwood Substation to the Cottonwood II Property, and (iii) the Road Access Easement Agreement, pursuant to which the Debtors would be given their sole means of ingress to, and egress from, the Cottonwood II Property.

12. During the course of negotiations for the Cottonwood II Agreements, Landlord and Core entered into (i) that certain Memorandum of Surface Lease Agreement, dated April 21, 2022 (the "**Existing Memo**") and (ii) that certain Transmission Easement Agreement, dated June 14, 2022 (the "**Existing Transmission Easement**"). In anticipation of entering into the Cottonwood II Lease, the Distribution Easement Agreement, and the Road Access Easement Agreement, and in reliance on the Existing Memo and the Existing Transmission Easement, Core performed work (the "**Development Work**") to install, and began using, the Transmission Line and the Distribution Line and to develop the Cottonwood II Property.

13. In connection with the Development Work, certain contractors and subcontractors of the Debtors filed mechanics' liens encumbering the Cottonwood II Property (the "**Cottonwood II Liens**"). In addition, certain other contractors and subcontractors of the Debtors and/or other parties asserting claims against the Debtors have filed liens, lien claims, and lien affidavits (the "**Other Liens**" and, together with the Cottonwood II Liens, collectively, the "**Existing Liens**") encumbering the Cottonwood II Property, the Easement Areas, and other property owned by Landlord in Reeves County, Texas ("**Landlord's Other Property**"). **Exhibit B** attached hereto sets forth the Existing Liens which Landlord and the Debtors have identified as of the date hereof.

14. After arm's-length negotiations, and subject to this Court's approval, the Debtors have reached an agreement with the Landlord over the terms of the Cottonwood II Agreements. The principal terms and conditions of the Cottonwood II Agreements are set forth below:[2]

| Term | Description |
|---|---|
| **Cottonwood II Property** | Address: 1939 FM 2119, Pecos, TX 79772 |
| **Lease Term** | 99 years, commencing on the date on which the Consideration is received by Landlord. |
| **Rent/Consideration** | The Consideration, payable by Core within two business days following the entry of the Proposed Order, in satisfaction of all rent payable under the Cottonwood II Lease for the duration of the term of the Cottonwood II Lease and all consideration payable under the Access Easement Agreement, the Distribution Easement Agreement, and the Transmission Easement Agreement. |
| **Restrictions on Assignment** | Core has the unrestricted right to assign and transfer the Cottonwood II Lease to whomever Core in its sole discretion deems appropriate; provided, however, (a) in no event shall any assignment or transfer |

---

[2] This summary is qualified in its entirety by reference to the applicable provisions of the Cottonwood II Agreements. To the extent there exists any inconsistency between this summary and the provisions of the Cottonwood II Agreements, the provisions of the Cottonwood II Agreements shall control. Any capitalized terms used but not otherwise defined in these summaries shall have the respective meanings ascribed to such terms in the Cottonwood II Agreements.

| Term | Description |
|---|---|
|  | result in more than two persons or entities having a direct interest in the Cottonwood II Lease or the facilities at any given time, and (b) Core and the assignee shall be jointly and severally liable for Core's obligations under the Cottonwood II Lease following any such assignment or transfer except in the case of any assignment or transfer of Core's entire interest in the Cottonwood II Lease as to which Landlord approves the proposed assignee in writing, which Landlord approval is not to be unreasonably withheld. Landlord may withhold its approval in its sole discretion if, in Landlord's sole but good faith and reasonable judgment, the proposed assignee (1) does not have substantial experience owning and operating projects similar to the facilities and does not hire a third party who has such experience to operate the facilities (provided that clause (1) of this proviso shall be deemed satisfied if the Bankruptcy Court finds that such proposed assignee has (A) substantial experience owning and operating projects similar to the facilities or (B) hired a third party to operate the facilities who has substantial experience operating projects similar to the facilities)  or (2) does not have sufficient creditworthiness or financial standing to perform the obligations under the Cottonwood II Lease that are to be assumed by such proposed assignee (provided that clause (2) of this proviso shall be deemed satisfied with respect to any proposed assignee under any assignment by Core of Core's entire interest in the Cottonwood II Lease).  (Cottonwood II Lease) |
| **Insurance** | With respect to the Easement Areas, Core must maintain the following insurance coverages:<br>(1) worker's compensation insurance and employer's liability insurance,<br>(2) commercial general liability insurance,<br>(3) commercial automobile insurance, and<br>(4) excess umbrella liability insurance coverage.<br>All insurances must be kept with limits of not less than $5,000,000 per occurrence.<br><br>With respect to the Cottonwood II Property, Core must maintain the following insurance coverages:<br>(1) worker's compensation insurance not less than statutory limits and for employer's liability insurance $1,000,000 for each accident,<br>(2) commercial general liability insurance with a limit of $1,000,000 per occurrence,<br>(3) commercial automobile insurance with a limit of $1,000,000 per accident, and |

7

| Term | Description |
|---|---|
|  | (4) excess umbrella liability insurance coverage with a combined limit of $5,000,000 per occurrence, and<br>(5) Environmental pollution liability insurance with minimum limits of $5,000,000 per occurrence; *provided*, *however*, Lessee shall not be required to maintain such environmental liability pollution insurance so long as Lessee does not use or store Hazardous Materials on the Surface Site in quantities that would require disclosure under the Emergency Planning and Community Right-to-Know Act (EPCRA) or the Texas Community Right-To-Know Acts (TCRA).<br><br>Every five years throughout the term of the Cottonwood II Lease, the applicable limits for all insurance will be increased by a fraction based on the then current consumer price index. |
| **Indemnification** | Core must indemnify, defend and, hold harmless Landlord and its partners, members, managers, and respective employees, agents, and representatives (each, an "**Indemnified Party**") against and from, among other things, any claims, liabilities, judgments, costs, causes of action, and expenses (including reasonable attorneys' and consultants' fees) arising from any use, maintenance, ownership, or occupancy of the Premises, any condition of the Premises, any action or inaction taken by Landlord at the request of Core or otherwise in cooperation with Core or in support of Core's project on the Premises, any bodily or personal injury, illness, or death of any person occurring in, on, or about the Premises or any part thereof, or any activities or omissions of Core even though caused by the negligence or fault of any Indemnified Party (except to the extent caused or alleged to be caused by the negligent acts of any Indemnified Party while on the Premises during the term of the Cottonwood II Lease or the gross negligence and willful misconduct of any Indemnified Party).  (Cottonwood II Lease)<br><br>Core shall indemnify and defend Landlord against and save Landlord, the Cottonwood II property, the Easement Areas, any other property owned by Landlord (including, without limitation, Landlord's Other Property), and any portion of any of the foregoing, harmless from and against all claims and losses (i) resulting from the assertion, filing, foreclosure, or other legal proceedings with respect to any Existing Liens and any subsequently filed liens, lien claims, and lien affidavits and (ii) arising out of or related to any construction or other business conducted by Core or at Core's direction. (Cottonwood II Lease) |

| Term | Description |
|---|---|
| | The indemnification obligations survive the termination of the Cottonwood II Lease. (Cottonwood II Lease)<br><br>Core must indemnify, defend, and hold harmless Landlord, its partners, and their respective partners, members, managers, officers, employees, successors, and assigns, from and against any and all demands, claims, causes of action, damages, liabilities, losses, costs, and expenses (including, without limitation, reasonably attorneys' fees) arising out of (a) any acts or omissions of Core, or certain of its affiliates, (b) arising out of any failure of Core or certain of its affiliates to comply with any covenant, term or condition of this instrument, (c) arising from presence, use, release or discharge of any hazardous substances or hazardous materials or any other environmental conditions on or about the Easement Areas or any other land owned by Landlord caused by or attributable to Core, or the construction, installation, alteration, maintenance, operation, repair, removal, replacement, reconstruction, restoration, or use of any road or other improvements or relocation of the facilities, equipment or appurtenances referenced herein, or (d) any bodily or personal injury, illness or death of any person or property damage or loss occurring in, on, or about the Easement Areas or any part thereof, including, without limitation, any premises liability claims, even though caused or alleged to be caused by the negligence or fault of any indemnified party (except to the extent caused or alleged to be caused by the negligent acts of any indemnified party while on the Easement Areas during the term of the easements or the gross negligence or willful misconduct of such indemnified party). The foregoing obligations survive the termination of the applicable Cottonwood II Agreement as well as termination of the Access Easement Agreement. (Access Easement Agreement, Distribution Easement Agreement, Transmission Easement Agreement) |
| **Events of Default** | The Cottonwood II Lease provides for customary events of default including, without limitation:<br>(a) Core fails to pay any amount required to be paid by Core under the Agreement and such failure is not cured within 30 days after the due date therefor or such shorter period as is necessary to prevent the imposition of any fine, penalty or lien against Landlord or the Cottonwood II Property,<br>(b) Core fails to perform any other obligations of Core under the Agreement or fails to comply with any other terms and conditions of the Agreement and such failure is not cured within 180 days after notice thereof from Landlord or any third party (e.g., any governmental authority) or such shorter period as is necessary to prevent the imposition of any fine, |

9

| Term | Description |
|---|---|
| | penalty or lien against Landlord or the Cottonwood II Property, <br> (c) Core abandons the Cottonwood II Property, <br> (d) an involuntary petition is filed against Core under any bankruptcy or insolvency law or under the reorganization provisions of any law of like import or whenever a receiver of Core, or of the Cottonwood II Property or all or substantially all of the other property of Core, shall be appointed without acquiescence, and such petition or appointment is not discharged or stayed within 180 days after the happening of such event, or <br> (e) Core makes an assignment of its property for the benefit of creditors or files a voluntary petition under any bankruptcy or insolvency law, or seeks relief under any other law for the benefit of debtors. |
| **Landlord's Remedies** | If an event of default occurs, Core will be afforded the following notice and cure periods before Landlord can exercise remedies: <br> (a) If the Event of Default includes Core's failure to pay any amount required to be paid by Core under the Agreement, Core will have a cure period of 30 days after the due date. <br> (b) If the Event of Default includes Core's failure to perform any other obligations of Core under the Agreement or failure to comply with any other terms and conditions of the Agreement, Landlord must notify Core, and Core will have a cure period of 180 days after notice thereof from Landlord or any third party (e.g., any governmental authority). <br> (c) Notwithstanding (a) and (b), the cure period may also be a shorter period of time as is necessary to prevent the imposition of any fine, penalty, or lien against Landlord or the Cottonwood II Property, <br><br> Following the occurrence of an event of default, after the applicable notice and cure period has passed, then Landlord shall have the following rights: <br> (1) to terminate the Agreement, <br> (2) to perform the obligation or covenant of Core, in which case any amount paid by Landlord and all costs and expenses, including, without limitation, reasonable attorneys' fees and disbursements, incurred by Landlord in connection therewith, together with interest thereon at the maximum contract rate of interest from the respective dates of Landlord's making of the payment or incurring of the cost and expense to the date Core reimburses Landlord for such |

| Term | Description |
|---|---|
|  | amount, shall be paid by Core to Landlord immediately on demand, and<br>(3) exercise any or all other remedies available at law or in equity, all of which rights and remedies shall be cumulative and not exclusive of any other right or remedy. |
| **Reservation of Rights by Landlord** | Landlord retains all oil, gas, and other minerals in, on, and under the Cottonwood II Property but is only permitted to extract them through means outside of the Cottonwood II Property and may not interfere with Core's use of the Cottonwood II Property. |
| **Restoration** | Core is required to restore the Cottonwood II Property to its original condition at the end of the Term; provided that Landlord may, in its sole discretion, require Core to leave all or any portion of the facilities that Core installs. |
| **Existing Liens** | Core shall use commercially reasonable efforts to cause the lienholders of the Existing Liens to release the same as to Landlord's fee interest in the Cottonwood II Property, the Easement Areas, and Landlord's Other Property and expressly state in said release that such party waives and disclaims any future liens or lien rights as to Landlord's fee interest.<br><br>Core shall use its best efforts to cause the plan of reorganization to provide for the encumbrance of the Existing Liens and any liens, lien claims, and lien affidavits hereafter filed against the Cottonwood II Property, the Easement Property, or any of Landlord's Other Property to be satisfied and released. |
| **Options to Extend** | None. |
| **Landlord's Termination Rights** | If the Bankruptcy Court does not approve entry into the Cottonwood II Lease on or before October 16, 2023, either Landlord or Core may terminate the Cottonwood II Agreements immediately upon by delivery of notice to the other party.<br><br>If Core fails to pay to Landlord the Consideration within two (2) business days following the date on which the Proposed Order is entered or if the Proposed Order is entered and does not expressly provide that (A) Landlord may terminate this Agreement without obtaining relief from the automatic stay or any other court order if the Consideration is not paid within such two (2) business day period, and (B) Landlord may exercise all rights under the Cottonwood II Agreements in the future without obtaining relief from the automatic stay or further court order, Landlord may terminate the Cottonwood II Agreements without obtaining relief from the automatic stay or any other court order, in which case, |

| Term | Description |
|---|---|
| | Landlord shall refund to Core the Consideration paid by Core, if any, and Core shall promptly reimburse all reasonable and documented out-of-pocket fees, costs and expenses of outside legal counsel relating to the negotiation, and enforcement of such termination provisions, of the Cottonwood II Lease.<br><br>Landlord shall be entitled to exercise all rights under the Cottonwood II Agreements in the future without obtaining relief from the automatic stay or further court order.<br><br>If any Existing Lien is not removed on or prior to (A) the later to occur of (i) the date which is ninety (90) days following the date Landlord gives notice to Core of such Existing Lien (provided that notice of the Existing Liens set forth on Exhibit B hereto is deemed to have been given to Core) and (ii) the earlier of the date which is (a) ninety (90) days following the effective date of a plan of reorganization filed by Core and confirmed by entry of an order of the United States Bankruptcy Court for the Southern District of Texas or (b) two hundred forty (240) days following the effective date of the Cottonwood II Lease, then Landlord may suspend Core's access without any notice or cure period required, and (B) the later to occur of (1) the date which is ninety (90) days following the date Landlord gives notice to Core of such Existing Lien (provided that notice of the Existing Liens set forth on Exhibit B hereto is deemed to have been given to Core) and (2) the date which is three hundred sixty (360) days following the effective date of the Cottonwood II Lease, then Landlord may terminate the Cottonwood II Lease without any notice or cure period required. |

**Relief Requested Should be Granted**

A.     **Entering into the Cottonwood II Agreements is a Reasonable Exercise of Debtors' Sound Business Judgment and in Best Interests of Estates**

15.     The Court may grant the relief requested herein pursuant to section 363 of the Bankruptcy Code, which provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Courts in the Fifth Circuit have granted a debtor's request to use property of the estate outside of the ordinary course of business pursuant to section 363(b) of the

Bankruptcy Code upon a finding that such use is supported by sound business reasons. *See, e.g.*, *In re BNP Petroleum Corp.*, 642 F. App'x 429, 435 (5th Cir. 2016); *In re Cont'l Air Lines*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or a debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business."); *see also In re Crutcher Res. Corp.*, 72 B.R. 628, 631 (Bankr. N.D. Tex. 1987) ("A Bankruptcy Judge has considerable discretion in approving a § 363(b) sale of property of the estate other than in the ordinary course of business, but the movant must articulate some business justification for the sale."); *In re Borders Grp., Inc.*, 453 B.R. 477, 482 (Bankr. S.D.N.Y. 2011) ("a debtor often satisfies the business judgment standard if 'the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'") (quoting *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992)); *In re Terrace Gardens Park P'ship*, 96 B.R. 707, 714 (Bankr. W.D. Tex. 1989).

16. Section 105 of the Bankruptcy Code provides, in relevant part, that "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). *See also In re Tusa-Expo Holdings, Inc.*, Case No. 08-45057-DML-11, 2008 WL 4857954, at *1 (Bankr. N.D. Tex. Nov. 7, 2008); *CEI Roofing*, 315 B.R. at 56; *In re Mirant Corp.*, 296 B.R. 427 (Bankr. N.D. Tex. 2003).

17. The Debtors submit that entering into the Cottonwood II Agreements, and agreeing to cause the release of the Existing Liens from the Cottonwood II Property, the Easement Areas, and other property owned by Landlord in Reeves County, Texas, represents a reasonable

13

exercise of sound business judgment and is in the best interests of the Debtors' estates. Put simply, the Debtors require the Cottonwood II Agreements to operate the Cottonwood Facility.

18. Entry into the Cottonwood II Agreements is important to the Debtors because it will allow the Debtors to continue energizing the Cottonwood Facility and further expand their Mining Operations thereon. Without the Transmission Easement, the Debtors are not able to transmit energy from the electrical grid to the Cottonwood Substation, which is necessary to energize and perform Mining Operations at the Cottonwood Facility, including the Cottonwood I Property, which the Debtors have spent in excess of $70,000,000 developing to date and currently is the site of over 12,000 miners engaged in Mining Operations. Moreover, the Consideration for all of the Cottonwood II Agreements—a one-time payment of $1,000,000.00—is a bargain given the ninety-nine (99) year term. The decision to enter into the Cottonwood II Agreements is a sound exercise of the Debtors' business judgment given the Debtors' need to perform Mining Operations at the Cottonwood Facility, the added value of the option to expand operations at the Cottonwood II Property, and the reasonable Consideration payable under the Cottonwood II Agreements. Accordingly, the Debtors' determination to enter into the Cottonwood II Agreements constitutes a valid and sound exercise of the Debtors' business judgment and should be approved.

### Compliance with Bankruptcy Rule 6004(a) and Waiver of Bankruptcy Rule 6004(h)

19. To implement the foregoing successfully, the Debtors request that the Court find that notice of the Motion satisfies Bankruptcy Rule 6004(a) and that the Court waive the fourteen-day stay period under Bankruptcy Rule 6004(h).

### Reservation of Rights

20. Nothing contained herein is intended to be or shall be deemed as (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver or limitation of the

Debtors' or any party in interest's rights to dispute the amount of, basis for, or validity of any claim, (iii) a waiver of the Debtors' rights under the Bankruptcy Code or any other applicable nonbankruptcy law, (iv) an agreement or obligation to pay any claims, (v) a waiver of any claims or causes of action which may exist against any creditor or interest holder, or (vi) an admission as to the validity of any liens satisfied pursuant to this Motion.  Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

## Notice

21. Notice of this Motion will be served on any party entitled to notice pursuant to Bankruptcy Rule 2002 and any other party entitled to notice pursuant to Bankruptcy Local Rule 9013-1(d).

## No Previous Request

22. No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated:  September 23, 2023
       Houston, Texas

Respectfully submitted,

*/s/  Alfredo R. Pérez*
WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (15776275)
Clifford W. Carlson (24090024)
700 Louisiana Street, Suite 1700
Houston, Texas  77002
Telephone: (713) 546-5000
Facsimile:  (713) 224-9511
Email:  Alfredo.Perez@weil.com
       Clifford.Carlson@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Ray C. Schrock (admitted *pro hac vice*)
Ronit J. Berkovich (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:   (212) 310-8007
Email:  Ray.Schrock@weil.com
       Ronit.Berkovich@weil.com

*Attorneys for Debtors
and Debtors in Possession*

## Certificate of Service

I hereby certify that on September 23, 2023, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/ Alfredo R. Pérez
Alfredo R. Pérez