# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | § | **Chapter 11** |
|  | § |  |
| **CORE SCIENTIFIC, INC.,** *et al.,* | § | **Case No. 22-90341 (DRJ)** |
|  | § |  |
|  | § | **(Jointly Administered)** |
| **Debtors.**[1] | § | **(Emergency Hearing Requested)** |
|  | § |  |
|  | § |  |

## DEBTORS' EMERGENCY MOTION FOR ENTRY
## OF AN ORDER AUTHORIZING REJECTION OF EXECUTORY CONTRACTS
## WITH CELSIUS MINING, LLC

> **EMERGENCY RELIEF HAS BEEN REQUESTED. RELIEF IS REQUESTED NOT LATER THAN 11:00 A.M. (PREVAILING CENTRAL TIME) ON TUESDAY, JANUARY 3, 2023.**
>
> **IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST APPEAR AT THE HEARING IF ONE IS SET, OR FILE A WRITTEN RESPONSE PRIOR TO THE DATE THAT RELIEF IS REQUESTED IN THE PRECEDING PARAGRAPH. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**
>
> **A HEARING WILL BE CONDUCTED ON THIS MATTER ON TUESDAY, JANUARY 3, 2023 AT 11:00 A.M. (PREVAILING CENTRAL TIME) IN COURTROOM 400, 4TH FLOOR, 515 RUSK AVENUE, HOUSTON, TEXAS 77002.**
>
> **YOU MAY PARTICIPATE IN THE HEARING EITHER IN PERSON OR BY AN AUDIO AND VIDEO CONNECTION.**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (N/A); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions, VII, LLC (3198). The Debtors' corporate headquarters and service address is 210 Barton Springs Road, Suite 300, Austin, Texas 78704.

---

**AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S DIAL-IN FACILITY. YOU MAY ACCESS THE FACILITY AT 832-917-1510. ONCE CONNECTED, YOU WILL BE ASKED TO ENTER THE CONFERENCE ROOM NUMBER. JUDGE JONES'S CONFERENCE ROOM NUMBER IS 205691. VIDEO COMMUNICATION WILL BE BY USE OF THE GOTOMEETING PLATFORM. CONNECT VIA THE FREE GOTOMEETING APPLICATION OR CLICK THE LINK ON JUDGE JONES'S HOME PAGE. THE MEETING CODE IS "JUDGEJONES". CLICK THE SETTINGS ICON IN THE UPPER RIGHT CORNER AND ENTER YOUR NAME UNDER THE PERSONAL INFORMATION SETTING.**

**HEARING APPEARANCES MUST BE MADE ELECTRONICALLY IN ADVANCE OF BOTH ELECTRONIC AND IN-PERSON HEARINGS. TO MAKE YOUR APPEARANCE, CLICK THE "ELECTRONIC APPEARANCE" LINK ON JUDGE JONE'S HOME PAGE. SELECT THE CASE NAME, COMPLETE THE REQUIRED FIELDS AND CLICK "SUBMIT" TO COMPLETE YOUR APPEARANCE.**

---

The Debtors, respectfully represent as follows in support of this motion (the "**Motion**"):

### Background

1.      On December 21, 2022 (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee of creditors has been appointed in these chapter 11 cases. The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 1015-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Local Rules**").

2.      The Debtors, together with their non-debtor affiliates (collectively, the "**Company**"), are one of the largest blockchain infrastructure, hosting provider, and digital asset mining companies in North America, with fully operational data centers in Texas, Kentucky,

2

North Carolina, North Dakota, and Georgia.  The Debtors provide hosting solutions for third parties, including Celsius Mining, LLC, f/k/a Celsius Core, LLC ("**Celsius**"), and also operate their own digital asset mining machines.

3.      Additional information regarding the Debtors' business and capital structure and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Michael Bros in Support of the Debtors' Chapter 11 Petitions and First Day Relief*, (the "**First Day Declaration**") (Docket No. 5), which is incorporated by reference herein.

4.      In support of the Motion, the Debtors submit the *Declaration of Michael Bros in Support of Debtors' Emergency Motion for Entry of an Order Authorizing Rejection of Executory Contracts with Celsius Mining, LLC* (the "**Bros Rejection Declaration**"), attached hereto as **Exhibit B**.

5.      In connection with the Debtors' efforts to re-evaluate their business plan based on current economic conditions and develop a chapter 11 plan, the Debtors and their advisors are undertaking an analysis of all of the Debtors' unexpired executory contracts.  For the reasons set forth below and in the Bros Rejection Declaration, the Debtors have determined, in their business judgment, to reject the Celsius Contracts.

## Relief Requested

6.      Pursuant to sections 365(a) and 105(a) of title 11 of the Bankruptcy Code and Bankruptcy Rules 6004 and 6006, the Debtors request entry of an order, substantially in the form annexed hereto as **Exhibit A** (the "**Proposed Order**"), approving the Debtors' rejection of all contracts between the Debtors and Celsius relating to hosting, including the following agreements effective upon entry of the Proposed Order: (i) the 2020 Master Services Agreement (the "**2020 MSA**") by and between Debtor Core Scientific Operating Company (formerly known as Core Scientific, Inc.) ("**Core**") and Celsius, (ii) the 2021 MSA between Core and Celsius (the

3

"**2021 MSA**"), and (iii) Order Nos. 1–10 to the 2020 MSA[2] and Order No. 1A to the 2021 MSA

(the "**Orders**" and, together with the 2020 MSA and 2021 MSA, and any other contracts between

the Debtors and Celsius relating to hosting, the "**Celsius Contracts**").

       7.      For the reasons set forth in more detail below, the Debtors request that the

Court hear this motion on an emergency basis.  For each day that the Debtors continue performing

under the Celsius Contracts, the Debtors anticipate losing a projected $28,840 in power costs that

Celsius improperly refuses to pay.  Compounding this loss, the Celsius Contracts also prevent the

Debtors from using the hosting capacity currently allocated to the Celsius machines—which is at

a premium given that the Debtors do not have enough hosting capacity to cover demand—for other

profitable opportunities that are immediately available to the Debtors and would generate an

estimated $2 million per month in incremental revenue for the Debtors' estates.  As a result,

rejecting the Celsius Contracts will also have a positive impact on the Debtors' liquidity.

### Jurisdiction

       8.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C.

§ 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this

Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### The Celsius Contracts

       9.      In December 2020, the Debtors and Celsius entered into the 2020 MSA, a

hosting services agreement whereby the Debtors agreed to provide certain services to Celsius in

connection with hosting Celsius' cryptocurrency data mining machines.  Bros Rejection Decl. ¶ 5.

In December 2021, the Debtors entered into the 2021 MSA, another hosting services agreement

with Celsius.  Bros Rejection Decl. ¶ 5.  Pursuant to the 2020 MSA, the Debtors and Celsius also

---

[2] Order Nos. 5 and 8 have already terminated.  The Debtors move to reject them only to the extent that Celsius disputes
that they have terminated.

**Debtors' Exhibit No. 6**
**Page 4 of 23**

executed ten separate agreements—effectively purchase orders—that are generally governed by the MSA but also set forth specific terms applicable to each order, including the number of machines that the Debtors will host for Celsius.  Bros Rejection Decl. ¶ 5.  Similarly, pursuant to the 2021 MSA, the Debtors executed Order No. 1A.  Bros Rejection Decl. ¶ 5.  Pursuant to the Celsius Contracts, the Debtors are currently hosting approximately 37,536 of Celsius' mining machines at various of the Debtors' facilities.  Bros Rejection Decl. ¶ 6.

10.    Mining machines are powerful computers that solve complex equations associated with the use and creation of cryptocurrency coins.  Bros Rejection Decl. ¶ 7.  Hosting mining machines involves industrial-scale power delivery and cooling systems, trained personnel, specialized equipment, and a tremendous amount of power.  *Id*.  To host mining machines, the Debtors have sophisticated, purpose built data centers across several states, where the Debtors host mining machines for approximately fifteen customers and also operate their own machines.  *Id*. Demand for hosting capacity far exceeds the Debtors' hosting capacity, meaning that the Debtors have a queue of machines—including the Debtors' own machines—waiting for hosting capacity to become available at the Debtors' facilities.  *Id*.

11.    Because power costs are variable and mining machines consume so much power, the Debtors' hosting agreements expressly allow the Debtors, in their discretion, to pass through increased power costs to their customers.  Bros Rejection Decl. ¶ 8.  This means that in addition to the hosting services rate that they pay, Celsius and the Debtors' other customers are all responsible for covering any increased power costs that the Debtors decide, in their sole discretion, to pass through to their customers.  Bros Rejection Decl. ¶ 8.  When power costs spiked dramatically around the second quarter of 2022, the Debtors began passing through these higher power costs to customers, including Celsius.  *See* Bros Rejection Decl. ¶ 9.

12.     Celsius—which filed for bankruptcy on July 13, 2022—asserts it is not responsible for paying increased power costs and has refused to pay all power pass through costs that have been invoiced subsequent to its bankruptcy filing.  Bros Rejection Decl. ¶ 10.  On September 28, 2022, Celsius brought a motion to enforce its automatic stay in its bankruptcy case. Celsius sought an order holding the Debtors in contempt for violating the automatic stay, directing the Debtors to perform under the hosting services agreements, and requiring the Debtors to immediately return any "improperly" invoiced power pass through amounts and cease collections efforts for those charges.  In response, the Debtors cross-moved to lift the automatic stay to allow the Debtors to exercise their rights and remedies under the hosting services agreements, asserting that Celsius owed the Debtors the power pass through costs.  A hearing was scheduled to be held on November 18, 2022, but was postponed while the companies were negotiating a potential resolution to the dispute. The hearing was taken off calendar and, prior to the Debtors filing for chapter 11 protection, a status conference was scheduled for January 10, 2023.[3]

13.     Because the Debtors owe these amounts directly to the power utilities, the Debtors have had no choice but to cover Celsius' increased power costs, including during the pendency of these proceedings.  *Id*.  Covering Celsius' increased power costs has already cost the Debtors almost $7.8 million[4] to date.  Bros Rejection Decl. ¶ 11.  This amount excludes the December power pass through costs that are currently accruing daily.  *Id*.  The Debtors cannot afford to shoulder the burden of Celsius' unpaid power costs, which is one factor supporting the

---

[3] Celsius has also included those contracts in a motion to assume and assign to a yet-to-be named buyer it filed in its chapter 11 cases. The deadline for objections to that motion is January 18, 2023.

[4]  This amount includes all power pass through charges to Celsius, prepetition and postpetition in their case, through November 31, 2022. This also includes interest on the overdue power pass through amounts (Core charged Celsius $97,890.38 interest in the November 2022 invoice and $74,637.20 in the December 2022 invoice).

**Debtors' Exhibit No. 6**
**Page 6 of 23**

Debtors' business judgment that rejecting the Celsius Contracts is in the best interests of the Debtors' estates.  Bros Rejection Decl. ¶ 12.[5]

14.      Another sound business reason for rejecting the Celsius Contracts is that continuing to host the Celsius machines prevents the Debtors from using that hosting space for (1) a customer that will pay a higher hosting fee and power costs that the Debtors pass through, or (2) their own mining activity.  Bros Rejection Decl. ¶ 13.  In the cryptocurrency industry, there is not enough capacity to meet the demand for hosting mining machines.  *Id*.  The capacity dedicated to hosting the Celsius machines is therefore valuable to the Debtors.  *Id*.  Without the obligation to continue hosting Celsius machines, the Debtors could immediately dedicate that premium hosting space to another customer and generate an estimated $2 million in incremental revenue per month. *Id*.  Alternatively, the Debtors could immediately use that capacity for its own mining machines and generate an estimated $2 million in incremental revenue per month.  *Id*.  This would immediately infuse cash into the Debtors' estates and thus preserve value.  *Id*.

### **Relief Requested Should Be Granted**

15.      Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor in possession "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a); *see also NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 521 (1984); *Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins. Co*., 83 F.3d 735, 741 (5th Cir. 1996) (citing *In re Murexco Petroleum, Inc.*, 15 F.3d 60, 62 (5th Cir. 1994)). "The purpose behind allowing the assumption or rejection of executory contracts is to permit the trustee or debtor-in-possession to use valuable property of the estate and to 'renounce title to and abandon burdensome property.'" *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures*

---

[5] This Motion does not resolve the issue of whether the power pass through charges are owed under the Celsius Contracts. That issue remains extant and will need to be separately resolved.

**Debtors' Exhibit No. 6**
**Page 7 of 23**

*Corp.)*, 4 F.3d 1095, 1098 (2d Cir. 1993); *see also Bildisco & Bildisco*, 465 U.S. at 528 ("[T]he authority to reject an executory contract is vital to the basic purpose to a Chapter 11 reorganization, because rejection can release the debtor's estate from burdensome obligations that can impede a successful reorganization."); *In re Murexco Petrol.*, 15 F.3d at 62 (noting that section 365 "allows a trustee to relieve the bankruptcy estate of burdensome agreements which have not been completely performed"); *In re Exide Techs.*, 607 F.3d 957, 967 (3d Cir. 2010) ("Courts may use § 365 to free a [debtor] from burdensome duties that hinder its reorganization.").[6]

16.     Bankruptcy courts apply the "business judgment" standard to determine whether to authorize the rejection of an executory contract. *See Matter of J.C. Penney Direct Marketing Servs., LLC*, 50 F.4th 532, 534 (5th Cir. 2022) ("A bankruptcy court reviews a debtor's decision to . . . reject an executory contract under the deferential 'business judgment' standard.") (citing *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, —U.S.—, 139 S. Ct. 1652, 1658 (2019)); *see also In re Pilgrim's Pride Corp.*, 403 B.R. 413, 422 (Bankr. N.D. Tex. 2009) ("The general rule is that the decision to reject a given contract should be left to the trustee's (or debtor in possession's) sound business judgment.").

17.     The "business judgment" standard requires only a showing that either assumption or rejection of the executory contract or unexpired lease will benefit the debtor's estate. *See In re Idearc Inc.*, 423 B.R. 138, 162 (Bankr. N.D. Tex. 2009) (stating that the business

---

[6] Courts have held that where both parties to an agreement are debtors, the automatic stay in one debtor's case does not prevent the other debtor from rejecting the contract between the two parties; also, rejection trumps assumption. *See In re Railroad Co., LLC*, 562 B.R. 481, 487 (Bankr. D.N.M. December 2, 2016)("A number of cases have held that a tenant debtor's attempt to assume a lease does not affect the landlord debtor's ability to reject the lease") (first citing *In re Noranda Aluminum, Inc.*, 549 B.R. 725 (Bankr. E.D. Mo. Mar. 31, 2016); and then citing *In re Old Carco*, 406 B.R. 180 (Bankr. S.D.N.Y June 19, 2009)).  Therefore, this Court's decision on the Debtors' motion to reject the Celsius Contracts takes priority over Celsius's motion to assume the same in its own bankruptcy.  Further, relief from Celsius's automatic stay is not necessary. *See In re Old Carco LLC*, 406 B.R. at 212 ("the Debtors were not required to seek relief from the automatic stay in another debtor's bankruptcy case before exercising their right to reject a contract with that debtor in this case").

8

judgment standard only "requires a showing that the proposed course of action will be advantageous to the estate." (citation omitted)). Further, under the business judgment standard, "[a] debtor's decision to reject an executory contract must be summarily affirmed unless it is the product of 'bad faith, or whim or caprice.'" *In re Pilgrim's Pride Corp.*, 403 B.R. at 422 (citing *Wheeling–Pittsburgh Steel Corp. v. W. Penn Power Co.* (*In re Wheeling–Pittsburgh Steel Corp.*), 72 B.R. 845, 849–50 (Bankr. W.D. Pa. 1987)).

18.     In applying the business judgment standard, bankruptcy courts give deference to a debtor's decision to assume or reject executory contracts. *See, e.g., In re Pisces Energy, LLC*, Case No. 09-36591-H5-11, 2009 WL 7227880, at *6 (Bankr. S.D. Tex. Dec. 21, 2009) ("Courts apply the 'business judgment test,' which requires a showing that the proposed course of action will be advantageous to the estate and the decision be based on sound business judgment."); *Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*, 872 F.2d 36, 39–40 (3d Cir. 1989) (affirming the rejection of a service agreement as a sound exercise of the debtor's business judgment when the bankruptcy court found that such rejection would benefit the debtors' estate); *In re Idearc Inc.*, 423 B.R. at 162 (stating that the business judgment standard only "requires a showing that the proposed course of action will be advantageous to the estate." (citation omitted)).

## I.     The Celsius Contracts Are Executory Contracts

19.     A contract is executory if "performance remains due to some extent on both sides" and "at the time of the bankruptcy filing, the failure of either party to complete performance would constitute a material breach of the contract, thereby excusing the performance of the other party." *RPD Holdings, L.L.C. v. Tech Pharmacy Servs. (Matter of Provider Meds, L.L.C.)*, 907 F.3d 845, 851 (5th Cir. 2018), *cert. denied sub nom. RPD Holdings, L.L.C. v. Tech Pharmacy Servs.*, 139 S. Ct. 1347 (2019) (citation omitted); *see also Bonneville Power Admin. v. Mirant Corp. (In re Mirant Corp.)*, 440 F.3d 238, 246 n.13 (5th Cir. 2006) ("[T]he legislative history of

§ 365(a) indicates that Congress intended the term [executory contract] to mean a contract 'on which performance remains due to some extent on both sides.'") (citation omitted).

20.     Here, material performance remains due from both the Debtors and Celsius. Under the Celsius Contracts, the Debtors are obligated to deploy the Celsius machines, and Celsius must pay the Debtors for the Celsius machines the Debtors deployed and are hosting, including for power costs in connection therewith.

21.     Because both the Debtors and Celsius have ongoing obligations to maintain their business relationship pursuant to the Celsius Contracts, the contracts are executory.

## II.     Rejection of the Celsius Contracts Is a Sound Exercise of the Debtors' Reasonable Business Judgment

22.     The Debtors and their advisors have analyzed the Debtors' executory contracts and have determined, in their reasonable business judgment, to reject the Celsius Contracts.  Bros Rejection Decl. ¶¶ 11–14.  The Debtors have determined that continuing to incur expenses in connection with hosting the Celsius machines is draining estate resources with no benefit.  *Id*.  Based on projections for the December power costs, rejecting the Celsius Contracts will save the Debtors approximately $894,040 in December, approximately $28,840 per day.  Bros Rejection Decl. ¶ 11.  Continuing with the Celsius Contracts, on the other hand, does not benefit the estate, as the Debtors are losing money every day by covering the increased power costs that Celsius refuses to pay.  *See* Bros Rejection Decl. ¶¶ 11–14.  As it stands, Celsius already owes the Debtors approximately $7.8 million through November 31, 2022 for power costs that Celsius is obligated to cover but has refused to pay.  Bros Rejection Decl. ¶ 11.

23.     Additionally, rejecting the Celsius Contracts will allow the Debtors to profit from the hosting space currently dedicated to the Celsius machines.  Bros Rejection Decl. ¶ 13.  If the Debtors use the space currently occupied by Celsius' machines for other customers—which are willing to pay a higher hosting rate and any power cost increases that the Debtors pass

10

through—the Debtors will generate approximately $2 million per month in incremental revenue for the estates. *Id.* Alternatively, if the Debtors use that capacity for their own machines, assuming that those machines generate approximately 400 bitcoins per month at an assumed bitcoin price of $16,700, that will generate approximately $2 million per month in incremental revenue for the estates. *Id.* Either of these options, which are both realistic and possible for the Debtors to execute in short order, will generate approximately $65,000 in revenue a day for the Debtors' estates. *Id.* In short, rejecting the Celsius Contracts will not only protect the Debtors from losing money covering Celsius' power costs, but rejection will also allow the Debtors to also immediately generate additional value for the estates.[7]

24.     In light of the foregoing, the Debtors have determined, in their reasonable business judgment, to reject the Celsius Contracts. The Debtors respectfully request that the Court, on an emergency basis, approve the rejection of the Celsius Contracts effective immediately upon entry of the Proposed Order pursuant to sections 365 and 105(a) of the Bankruptcy Code and Rule 6006 of the Bankruptcy Rules in the manner requested herein.

### III.    Court Should Establish a Bar Date For Claims

25.     The Debtors request that the Court set a deadline for filing proofs of claims related to damages, if any, arising from the rejection of the Celsius Contracts. The Debtors request that such deadline be the later of the general bar date or thirty (30) days from the Court's decision on the motion.

### Emergency Consideration

26.     As demonstrated above, approval of this Motion on an emergency basis is necessary so that the Debtors can avoid the daily loss of $28,840 in power costs as a result of the

---

[7] Upon rejection, the Debtors intend to work with Celsius to coordinate the return of its mining equipment.

Celsius Contracts and use the resulting hosting capacity for other profitable opportunities that are immediately available to the Debtors and would generate an estimated $2 million per month in incremental revenue for the Debtors' estates.

### Reservation of Rights

27.    Nothing contained in this Motion or any actions taken by the Debtors pursuant to the relief granted is intended or should be construed as: (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law, (iii) a waiver or limitation of the Debtors' right to assert, at a later date, that the Celsius Contracts are not executory contracts, or (iv) a concession or evidence that the Celsius Contracts have not expired, been terminated, or is otherwise currently not in full force and effect.

### Request for Bankruptcy Rule 6004 Waivers

28.    The Debtors request a waiver of the notice requirements under Bankruptcy Rule 6004(a) and any stay of the order granting the relief requested herein pursuant to Bankruptcy Rule 6004(h).  As explained above, the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors.  Accordingly, ample cause exists to justify the waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent such stay applies.

### No Previous Request

29.    No previous request for the relief sought herein has been made by the Debtors to this or any other court.

**Debtors' Exhibit No. 6**
**Page 12 of 23**

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated:  December 28, 2022
         Houston, Texas

                                        Respectfully submitted,

                                         /s/  Alfredo R. Perez
                                        WEIL, GOTSHAL & MANGES LLP
                                        Alfredo R. Pérez (15776275)
                                        700 Louisiana Street, Suite 1700
                                        Houston, Texas 77002
                                        Telephone:  (713) 546-5000
                                        Facsimile:  (713) 224-9511
                                        Email: Alfredo.Perez @weil.com

                                        -and-

                                        WEIL, GOTSHAL & MANGES LLP
                                        Ray C. Schrock, P.C. (*pro hac vice* pending)
                                        Ronit J. Berkovich (*pro hac vice* pending)
                                        Moshe A. Fink (*pro hac vice* pending)
                                        767 Fifth Avenue
                                        New York, New York 10153
                                        Telephone:  (212) 310-8000
                                        Facsimile:  (212) 310-8007
                                        Email:   Ray.Schrock@weil.com
                                                 Ronit.Berkovich@weil.com
                                                 Moshe.Fink@weil.com

                                        *Proposed Attorneys for Debtors*
                                        *and Debtors in Possession*

13

### Certificate of Service

I hereby certify that on December 28, 2022, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

  /s/ Alfredo R. Perez
WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (15776275)
700 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone:  (713) 546-5000
Facsimile:  (713) 224-9511
Email: Alfredo.Perez @weil.com

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| CORE SCIENTIFIC, INC., *et al.*, | § | Case No. 22-90341 (DRJ) |
| | § | |
| | § | (Jointly Administered) |
| Debtors.[1] | § | |
| | § | |

ORDER AUTHORIZING REJECTION
OF EXECUTORY CONTRACTS WITH
<u>CELSIUS MINING, LLC</u>

Upon the motion, dated December 28, 2022 (the "**Motion**"),[2] of Core Scientific, Inc., and its affiliated debtors in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"), for entry of an order approving rejecting the Celsius Contracts, immediately effective and enforceable upon its entry, as more fully set forth in the Motion; and upon consideration of the Bros Rejection Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §1334; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and it appearing that venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided, and it appearing that no other or further notice need be provided; and the Court having reviewed the Motion; and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (N/A); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions, VII, LLC (3198). The Debtors' corporate headquarters and service address is 210 Barton Springs Road, Suite 300, Austin, Texas 78704.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

all objections, if any, to the Motion having been withdrawn, resolved, or overruled; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interest of the Debtors and their respective estates and creditors; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor,

### IT IS HEREBY ORDERED THAT:

1.     Pursuant to sections 365 and 105(a) of the Bankruptcy Code and Bankruptcy Rules 6004 and 6006, the Celsius Contracts are deemed rejected effective immediately upon entry of this Order.

2.     The deadline for filing proofs of claims related to damages, if any, arising from the rejection of the Celsius Contracts shall be the later of the general bar date or thirty (30) days from this Order.

3.     Nothing contained in the Motion, this Order, or any actions taken by the Debtors pursuant to the relief granted in this Order shall be construed as: (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law, (iii) a waiver or limitation of the Debtors' right to assert, at a later date, that the Celsius Contracts are not executory contracts, or (v) a concession or evidence that the Celsius Contracts have not expired, been terminated, or are otherwise currently not in full force and effect.

4.     The requirements of Bankruptcy Rule 6004(a) are waived.

5.     Notwithstanding the provisions of Bankruptcy Rule 6004(h), this Order shall be immediately effective and enforceable upon its entry.

**Debtors' Exhibit No. 6**
**Page 16 of 23**

6.      The Debtors are authorized to take all steps necessary or appropriate to carry out the relief granted in this Order.

7.      This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Dated: **_____**, 2022
           Houston, Texas

_____
UNITED STATES BANKRUPTCY JUDGE

4

**<u>Exhibit B</u>**

**Michael Bros Rejection Declaration**

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| In re | § | Chapter 11 |
| | § | |
| CORE SCIENTIFIC, INC., | § | Case No.  22-90341 (DRJ) |
| | § | |
| Debtors.[1] | § | (Jointly Administered) |
| | § | (Emergency Hearing Requested) |

### DECLARATION OF MICHAEL BROS
### IN SUPPORT OF DEBTORS' EMERGENCY MOTION FOR ENTRY OF
### AN ORDER AUTHORIZING REJECTION OF EXECUTORY CONTRACTS WITH
### CELSIUS MINING LLC

I, Michael Bros, pursuant to section 1746 of title 28 of the United States Code,
hereby declare under penalty of perjury that the following is true to the best of my knowledge,
information, and belief:

#### Background

1.      I am the Senior Vice President, Capital Markets & Acquisitions of the
Debtors.  I have served in this capacity since January 2022.  Before that, starting in December
2018, I was the Debtors' Vice President of Corporate Development. I am knowledgeable about,
and familiar with, the Debtors' business and financial affairs.

2.      I submit this Rejection Declaration in support of *Debtors' Emergency
Motion for Entry of an Order Authorizing Rejection of Executory Contracts with Celsius Mining
LLC*.[2]  I am authorized to submit this Declaration on behalf of the Debtors.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification
number, are as follows: Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (N/A); Core Scientific
Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327);
American Property Acquisitions, LLC (0825); Starboard Capital LLC (6677); RADAR, LLC (5106); American
Property Acquisitions I, LLC (9717); and American Property Acquisitions, VII, LLC (3198).  The Debtors'
corporate headquarters [and service address] is [210 Barton Springs Road, Suite 300, Austin, Texas 78704].

[2] Capitalized terms have the meanings ascribed to such terms in the Motion.

3. The facts set forth in this Rejection Declaration are based on my personal knowledge, my review of relevant documents (including the Debtors' books and records), information provided to me by employees working under my supervision, my opinion based upon experience, knowledge, and information concerning the Debtors' operations, financial condition, and business plans. If called upon to testify, I would testify to the facts set forth in this Rejection Declaration.

**Facts Relevant to Motion**

**A.     The Debtors' Business**

4. The Debtors, together with their non-debtor affiliates, are one of the largest blockchain infrastructure, hosting provider, and digital asset mining companies in North America, with fully operational data centers in Georgia, Kentucky, North Carolina, North Dakota, and Texas.  The Debtors regularly contract with third parties to provide hosting services for the third parties' digital asset mining machines, in addition to operating their own digital asset mining machines.  One of the third parties with whom the Debtors have contracted is Celsius.

**A.     The Celsius Contracts**

5. In December 2020, the Debtors and Celsius entered into the 2020 MSA, a hosting services agreement whereby the Debtors agreed to provide certain services to Celsius in connection with hosting Celsius' cryptocurrency data mining machines.  In December 2021, the Debtors entered into the 2021 MSA, another hosting services agreement with Celsius.  Pursuant to the 2020 MSA, the Debtors and Celsius also executed ten separate agreements—effectively individual purchase orders—that are generally governed by the MSA but also set forth specific terms applicable to each order, including among other things, the number of machines that the Debtors will host for Celsius.  Two of those orders, Nos. 5 and 8, have already terminated. Pursuant to the 2021 MSA, the Debtors executed Order No. 1A.

3

6.      Pursuant to the Celsius Contracts, the Debtors are currently hosting 37,536 of Celsius' mining machines at various of Debtors' facilities.

7.      Mining machines are powerful computers that solve complex equations associated with the use and creation of cryptocurrency coins.  Hosting these machines involves industrial-scale power delivery and cooling systems, trained personnel, specialized equipment, and a tremendous amount of power.  To host mining machines, the Debtors have sophisticated, purpose built data centers across several states, where the Debtors host mining machines for approximately fifteen customers and also operate their own machines.  Demand for hosting capacity far exceeds the Debtors' hosting capacity, meaning that the Debtors always have a queue of machines— including the Debtors' own machines—waiting for hosting space to become available at the Debtors' facilities.

8.      Because power costs are variable and mining machines consume so much power, the Debtors' hosting agreements expressly allow the Debtors, in their sole discretion, to pass through increased power costs to their customers.  This means that in addition to the hosting services rate that they pay, Celsius and the Debtors' other customers are all responsible for covering any increased power costs that the Debtors decide to pass through to their customers.

9.      When power costs increased during the second quarter of 2022, the Debtors began passing through these higher power costs to their customers, including Celsius.

10.     Celsius—who filed for bankruptcy on July 13, 2022—claims it is not responsible for paying increased power costs and has refused to pay all power pass through costs that have been invoiced subsequent to its bankruptcy filing.  Because the Debtors owe these amounts directly to the power utilities, the Debtors have had no choice but to continue covering Celsius' increased power costs and then charge them to Celsius in their discretion.

11.     Covering Celsius' increased power costs has cost the Debtors approximately $7.8 million to date.   This includes interest on overdue power pass through amounts—Core charged Celsius $97,890.38 interest in a November 2022 invoice and $74,637.20 in a December 2022 invoice—but excludes the December power pass through costs that are currently accruing daily.  Based on projections for the December power costs, rejecting the Celsius Contracts will save the Debtors an estimated $894,040 in December, accruing at around $28,840 per day.

12.     The Debtors cannot afford to continue shouldering the burden of Celsius' unpaid power costs.  For this reason, the Debtors have concluded, in their business judgment, that rejecting the Celsius Contracts is in the best interests of the Debtors' estates.

13.     Another sound business reason for rejecting the Celsius Contracts is that continuing to host the Celsius machines prevents the Debtors from profiting on that hosting space that is currently allocated to Celsius.  In the cryptocurrency industry, there is not enough capacity to meet the demand for hosting mining machines.  The capacity dedicated to hosting the Celsius machines is therefore valuable to the Debtors.  Without the obligation to continue hosting Celsius machines, the Debtors could immediately dedicate that premium hosting space to another customer—who is willing to pay a higher hosting rate and any power cost increases that the Debtors pass through—and generate an estimated $2 million in incremental revenue per month. Alternatively, the Debtors could immediately use that hosting space for their own mining machines, assuming that those machines generate approximately 400 bitcoins per month at an assumed bitcoin price of $16,700, which will generate an estimated $2 million in incremental revenue per month.  This would immediately infuse cash into the Debtors' estates—approximately $65,000 in revenue a day—and thus preserve value.

**Debtors' Exhibit No. 6**
**Page 22 of 23**

14.     The Debtors have determined, in the exercise of their business judgment, that it is in their best interest to reject the Celsius Contracts.  Because Celsius improperly refuses to pay certain power costs, the Debtors anticipate continued and substantial and continued loses to flow from the Celsius Contracts.  Compounding this loss, the Celsius Contracts also prevent the Debtors from using the premium capacity that is dedicated to the Celsius machines for other profitable opportunities, like hosting for other customers or self-mining with machines that the Debtors already own but cannot deploy due to current capacity limitations.

15.     Based on the foregoing, the Debtors have concluded that rejecting the Celsius Contracts is in the best interest of the Debtors' estate and is a sound exercise of the Debtors' business judgment.

16.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: December 28, 2022
         Bellevue, Washington

/s/ Michael Bros
Michael Bros
Senior Vice President Capital Markets & Acquisitions
Core Scientific, Inc.

6