# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CORE SCIENTIFIC, INC., *et al.*,[1] | ) | Case No. 22-90341 (DRJ) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## CELSIUS MINING LLC'S
## MOTION FOR ENTRY OF AN ORDER (I) ALLOWING AND
## DIRECTING PAYMENT OF ITS ADMINISTRATIVE EXPENSE CLAIM
## PURSUANT TO 11 U.S.C. § 503(b)(1)(A) AND (II) GRANTING RELATED RELIEF

> **If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within twenty-one days from the date this motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within twenty-one days from the date this motion was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on May 22, 2023, at 1:30 p.m. (prevailing Central Time) in Courtroom 400, 4th floor, 515 Rusk Street, Houston, Texas 77002.**
>
> **Participation at the hearing will only be permitted by an audio and video connection. Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. Once connected, you will be asked to enter the conference room number. Judge Jones's conference room number is 205691. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Jones's homepage. The meeting code is "JudgeJones". Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Jones's homepage. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (N/A); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions, VII, LLC (3198). The Debtors' corporate headquarters and service address is 210 Barton Springs Road, Suite 300, Austin, Texas 78704.

Celsius Mining LLC ("Celsius") [2] states the following in support of this motion (this "Motion"):

**Preliminary Statement**

1. Pursuant to the terms of the now-rejected hosting contracts between Celsius and Core, Celsius was required to pay Core for its estimated hosting fees for the following month in advance. On December 22, 2022, following the Debtors' first day hearing and the statements made by Debtors' counsel regarding the future of the relationship between the Debtors and Celsius, Celsius sent Core an approximately $4.7 million pre-payment for hosting services as required under the Celsius Contracts. On January 3, 2023, Core requested authority to reject the Celsius Contracts, and subsequently shut off Celsius' rigs on January 3, 2023, after obtaining a consensual rejection order. Celsius' payment to Core was made in good faith, was induced by Core, and provided a clear benefit to Core's estates. As such, any unused amount of this pre-payment should be allowed as an administrative expense claim and returned to Celsius as soon as reasonably practicable—Celsius Mining LLC and certain of its affiliates are currently debtors in their own chapter 11 cases and therefore require continued access to liquidity to administer their own chapter 11 cases.[3]

---

[2] Celsius is a debtor in possession in its own chapter 11 case pending in the Bankruptcy Court for the Southern District of New York, being jointly administered under Case No. 22-10964 (MG) (collectively, the "Celsius Chapter 11 Cases").

[3] Celsius may assert other postpetition claims based upon conduct of the Debtors with respect to its equipment, once it has had full opportunity to inspect and catalog the condition in which such equipment was returned. Such analysis is ongoing.

**Relief Requested**

2. Celsius seeks entry of an order, substantially in the form attached hereto (the "Order"), (a) allowing Celsius' administrative claim, (b) directing Core to promptly pay such administrative claim, and (c) granting related relief.

**Jurisdiction and Venue**

3. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157 (b).

4. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5. The statutory bases for the relief requested herein are sections 503(b)(1)(A) and 507(a)(2) of title 11 of the United States Code (the "Bankruptcy Code").

**Relevant Background**

6. As discussed more fully in the *Declaration of Michael Bros in Support of Debtors' Chapter 11 Petitions and First Day Relief* (the "First Day Declaration") [Docket No. 5] and the *Debtors' Emergency Motion for Entry of an Order Authorizing Rejection of Executory Contracts with Celsius Mining LLC* [Docket No. 189] (the "Rejection Motion"), Celsius and Core were party to various hosting service contracts, including: (a) the 2020 Master Services Agreement (the "2020 MSA") by and between Debtor Core Scientific Operating Company (formerly known as Core Scientific, Inc.) ("Core") and Celsius; (b) the 2021 Master Services Agreement between Core and Celsius (the "2021 MSA"); and (c) Order Nos. 1–10 to the 2020 MSA and Order No. 1A to the 2021 MSA (the "MSA Orders" and, together with the 2020 MSA and 2021 MSA, and any other contracts between the Debtors and Celsius relating to hosting, the "Celsius Contracts").

7. On December 15, 2022, Core issued two invoices (the "12/15 Invoices") to Celsius seeking payment of over $5.8 million for, among other things, (a) a "true-up" of prepaid fees for November with the actual costs incurred during November, (b) repair and maintenance of certain Celsius-owned mining rigs in Core's possession, and (c) a prepayment of approximately $4.7 million for the estimated cost of hosting services to be provided by Core in January 2023. The 12/15 Invoices requested payment by December 26, 2022.

8. On December 21, 2022 (the "Petition Date"), the 12/15 Invoices were still outstanding, and the Debtors acknowledged as much in the First Day Declaration.[4]

9. On December 22, 2022, at the first day hearing, counsel to Core stated that Core "look[ed] forward to engaging with [Celsius] as we move forward" and wanted to "see if we can find a path forward that obviously minimizes expense."[5] Counsel to Celsius reciprocated in kind, explaining that "Celsius is focused on the long term future of Core. We remain ready to engage with Core, and now that they've filed for bankruptcy, see if there's a mutually agreeable path forward."[6] Later that day, Celsius sent a wire transfer of approximately $4.9 million to Core to satisfy the undisputed portions of the 12/15 Invoices, including the full $4.7 million prepayment for January hosting services.

10. Less than a week later, Core filed the Rejection Motion, which was then heard on an emergency basis on January 3, 2023. During the hearing, and after the Court indicated it would grant the Rejection Motion, Core requested authority to immediately turn off the Celsius mining

---

[4] First Day Declaration, ¶ 75 (describing the contract dispute with Celsius and noting the latest power passthrough was "invoiced to Celsius on December 15, 2022").

[5] First Day Hr'g Tr. 17:3–8, December 22, 2022.

[6] Id.

rigs in its possession and cease its performance under the Celsius Contracts while Celsius and Core negotiated a proposed form of order.[7]

11. On January 4, 2023, the Court entered the *Order Authorizing Rejection of Executory Contracts with Celsius Mining, LLC* [Docket No. 232], which deemed the Celsius Contracts as rejected immediately upon entry of the order.

12. Core only performed under the Celsius Contracts through January 3, 2023. As such, the amount of Celsius' $4.7 million prepayment for the month of January that was not applied to services actually provided by Core should be allowed as an administrative claim (the "Administrative Expense Claim") and returned to Celsius as soon as practicable.

13. Celsius attempted on multiple occasions to obtain the January invoice from Core to determine the exact amount of the Administrative Expense Claim. Core, however, has been unresponsive to these requests. As such, the Administrative Expense Claim, currently estimated as approximately $4,196,000, is based on the best available information in the possession of Celsius and its advisors and will be adjusted once Core provides an invoice documenting charges in January prior to rejection of the Celsius Contracts.

## Basis for Relief

**I.   Celsius' Post-Petition, Pre-Rejection Payment Benefitted the Debtors' Estates.**

13. Section 503 of the Bankruptcy Code provides that parties may file requests for payment of administrative expenses for "actual, necessary costs and expenses of preserving the estate." *See* section 503(b)(1)(A). Courts have construed the words "actual" and "necessary" to mean that the expenses must have benefitted the debtors' estates and their creditors. *NL Indus.,*

---

[7] Hr'g Tr. 26:19–23, January 3, 2023.

*Inc. v. GHR Energy Corp. (In re GHR Energy Corp.)*, 940 F.2d 957, 966 (5th Cir. 1991).[8] The primary purpose of the priority treatment afforded by section 503(b) of the Bankruptcy Code is to encourage third parties to continue to contract with the debtor in possession so that it can continue to conduct its business, thus generating funds from which prepetition creditors can be paid. *Id.* As such, a prima facie case under section 503(b)(1) of the Bankruptcy Code may be established by evidence that (a) the claim arises from a transaction with the debtor and (b) the subject of the claim (*i.e.*, the goods or services supplied by the claimant) enhanced the ability of the debtor's business to function as a going concern. *In re TransAmerican Nat. Gas Corp.*, 978 F.2d 1409, 1420 (5th Cir. 1992). "Although the estate receives a benefit that often can be measured by the actual cost of necessary goods or services supplied, the estate also receives other less readily calculable benefits, such as the ability to continue to conduct business as usual." *Id.* (citing *In re Coastal Carriers Corp.*, 128 B.R. 400, 402 (Bankr. D. Md. 1991)).[9] Availability of cash, goods, or services can be important to a debtor's ongoing business, and as such, "when a debtor-in-possession induces availability [of cash, goods, or services] and the bankruptcy estate derives a benefit from it, the ordinary cost of ensuring such availability qualifies as an administrative expense, even if the goods or services were ultimately not used." *In re Whistler Energy II, L.L.C.*, 931 F.3d 432 (5th Cir. 2019).

---

[8] *But see In re H.L.S. Energy Co., Inc.*, 151 F.3d 434, 437 (5th Cir. 1998) ("The 'benefit' requirement has no independent basis in the Code, however, but is merely a way of testing whether a particular expense was truly 'necessary' to the estate: If it was of no 'benefit,' it cannot have been 'necessary.'").

[9] The benefit to a debtor's estate may even take the form of achieving a beneficial result from a negotiation within the context of a debtor's bankruptcy case. *See Metro. Life Ins. Co. v. Sharon Steel Corp. (In re Sharon Steel Corp.)*, 161 B.R. 934, 937-38 (Bankr. W.D. Pa. 1994) (finding that postpetition insurance premiums were entitled to administrative expense priority because the debtor's continued insurance coverage of its employees "assisted the Debtor in negotiations with the USWA [(the employees' labor union)] and in development of a plan of reorganization—a direct benefit to the bankruptcy estate.").

14. Administrative expense priority is particularly appropriate where a debtor "enjoys the benefits of the contract pending assumption or rejection." *In re Smurfit-Stone Container Corp.*, 425 B.R. 735, 741 (Bankr. D. Del. 2010). The value of the benefit to the estate is presumed to be the contract rate. *Id.* at 741. *See also*, *N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 531 (1984) ("If the debtor-in-possession elects to continue to receive benefits from the other party to an executory contract pending a decision to reject or assume the contract, the debtor-in-possession is obligated to pay for the reasonable value of those services [which] may be what is specified in the contract.").

15. Here, the Administrative Expense Claim is a prima facie case under section 503(b)(1) of the Bankruptcy Code as (a) the claim arises from a postpetition transaction with the Debtors (the transfer of approximately $4.9 million to Core on December 22, 2023), and (b) the approximately $4.7 million prepayment enhanced the ability of the Debtors to function as a going concern. The availability of the cash to support Core's ongoing business was a benefit, even if the cash was not applied to amounts due in connection with the Celsius Contracts or otherwise used by Core. Now that Core has rejected the Celsius Contracts and will no longer provide services, the unused portion of the prepayment should be returned to Celsius.

16. In addition to the contractual basis set forth above for the Administrative Expense Claim, in the alternative, Celsius is also entitled to the Administrative Expense Claim under theories of unjust enrichment and *quantum meruit*.

17. When analyzing whether a party was unjustly enriched, courts in the Fifth Circuit look to "two theories or species of unjust enrichment: one for passive receipt of a benefit that would be unconscionable to retain, and another for wrongfully securing a benefit." *In re KP*

*Eng'g, L.P.*, 63 F.4th 452, 457 (5th Cir. 2023), citing *Digital Drilling Data Sys., LLC v. Petrolink Servs., Inc.*, 965 F.3d 365, 379 (5th Cir. 2020). *See also UNUM Life Ins. Co. of America v. Long*, 227 F.Supp.2d 609, 614–15 (N.D. Tex. 2002) (finding recovery on unjust enrichment claim appropriate where plaintiff had expectation of reimbursement for overpayments).

18. As discussed herein, Celsius paid the Debtors approximately $4.7 million for hosting services to be provided in the future that were never ultimately provided. Core accepted the prepayment and Celsius reasonably expected to receive the hosting services in exchange. Core received the passive benefit in the form of over $4.7 million available for use in its bank accounts, and it would be unconscionable for Core to retain the funds when the agreed upon services were not provided to Celsius.

19. Similarly, the Court could find that Celsius is entitled to the Administrative Expense Claim pursuant to the theory of *quantum meruit*. In order to recover on the basis of *quantum meruit* in the Fifth Circuit, the movant must show that:

> (1) valuable services were rendered or materials furnished;
> (2) for the party sought to be charged;
> (3) which services and materials were accepted by the party sought to be charged, used and enjoyed by him; and
> (4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff, in performing such services, was expecting to be paid by the person sought to be charged.

*In re KP Eng'g, L.P.*, 63 F.4th 452, 456 (5th Cir. 2023) citing *Vortt Exploration Co. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990).

20. Here, Celsius provided Core with approximately $4.7 million. Core accepted the funds and to this day continues to enjoy the benefit of having approximately $4.7 million in its estate. Ignoring the legal fiction that the contract was breached and rejected prepetition, Celsius was operating under the Celsius Contracts when it provided the prepayment, and as such Celsius

reasonably expected to receive the agreed-upon services. Under these circumstances, Celsius is entitled to the Administrative Expense Claim under a theory of *quantum meruit*.

II. **Prompt Payment of Celsius' Administrative Claim is Appropriate to Avoid Hardship to Celsius' Estate.**

21. In considering when to authorize payment of administrative claims, courts may properly consider the "hardship to claimant." *In re ATP Oil & Gas Corp.*, No. 12-36187, 2014 WL 1047818, at *10 (Bankr. S.D. Tex. Mar. 18, 2014) (citing *In re UTEX Commc'ns Corp.*, 457 B.R. 549, 569 (Bankr. W.D. Tex. 2001)). As detailed in Celsius' February *Monthly Operating Report* [Celsius Docket No. 2295], Celsius currently has net cash outflows and limited cash on hand. The approximately $4.7 million prepayment made to Core for services that Core will never provide is a meaningful drain on Celsius' liquidity. In the ordinary course of business, the Debtors would true-up the actual hosting costs against the estimate used to calculate the prepayment on the prior invoice.[10] As such, the Debtors should continue to operate in the ordinary course and return Celsius' funds in connection with the standard invoicing process.

**Reservation of Rights**

22. Nothing contained in this Motion is intended or should be construed as: (a) an admission as to the validity of any particular claim against Celsius; (b) a waiver of any claim held by Celsius against Core, its directors or officers, or any other party in interest on any grounds; (c) a promise or requirement to pay any particular claim; or (d) a waiver or limitation of Celsius' rights under the Bankruptcy Code or any other applicable law, including the right to seek related relief

---

[10]   *See* MSA Orders ("Subsequent invoices will contain . . . adjustments resulting from any differences between the Fees for Services invoiced in the preceding month and the Fee for Services based on Provider's determination of power utilized by Client during that month.").

from this Court or the Bankruptcy Court for the Southern District of New York in the Celsius Chapter 11 Cases.

### Notice

14.     Celsius will provide notice of this Motion to the following parties or their respective counsel:  (a) the Debtors; (b) the U.S. Trustee; (c) counsel to the Committee; (d) the United States Attorney's Office for the Southern District of Texas; (e) the Internal Revenue Service; (f) the offices of the attorneys general in the states in which the Debtors operate; (g) the Securities and Exchange Commission; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, Celsius requests that the Court enter the Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Houston, Texas
April 15, 2023

/s/ *Matthew D. Cavenaugh*

| | |
|---|---|
| **JACKSON WALKER LLP** | **KIRKLAND & ELLIS LLP** |
| Matthew D. Cavenaugh (TX Bar No. 24062656) | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Victoria Argeroplos (TX Bar No. 24105799) | Joshua A. Sussberg, P.C. |
| Emily Flynn Meraia (TX Bar No. 24129307) | 601 Lexington Avenue |
| 1401 McKinney Street, Suite 1900 | New York, New York 10022 |
| Houston, TX 77010 | Telephone: (212) 446-4800 |
| Telephone: (713) 752-4200 | Facsimile: (212) 446-4900 |
| Facsimile: (713) 752-4221 | Email: joshua.sussberg@kirkland.com |
| Email: mcavenaugh@jw.com | |
| vargeroplos@jw.com | - and - |
| emeraia@jw.com | |
| | Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*) |
| *Counsel to Celsius Mining LLC* | Ross M. Kwasteniet, P.C. (admitted *pro hac vice*) |
| | Christopher S. Koenig |
| | Dan Latona (admitted *pro hac vice*) |
| | 300 North LaSalle Street |
| | Chicago, Illinois 60654 |
| | Telephone: (312) 862-2000 |
| | Facsimile: (312) 862-2200 |
| | Email: patrick.nash@kirkland.com |
| | ross.kwasteniet@kirkland.com |
| | chris.koenig@kirkland.com |
| | dan.latona@kirkland.com |
| | |
| | *Counsel to Celsius Mining LLC* |

### Certificate of Service

I certify that on April 15, 2023, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                                               */s/ Matthew D. Cavenaugh*
                                                               Matthew D. Cavenaugh

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| CORE SCIENTIFIC, INC., *et al.*,[1] | ) ) ) | Case No. 22-90341 (DRJ) |
| Debtors. | ) ) ) | (Jointly Administered) **Re: Docket No.** |

### ORDER (I) ALLOWING AND DIRECTING PAYMENT OF CELSIUS MINING LLC'S ADMINISTRATIVE EXPENSE CLAIM PURSUANT TO 11 U.S.C. § 503(b)(1)(A) AND (II) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of Celsius Mining LLC ("Celsius") for entry of an order (this "Order") (a) allowing Celsius' administrative claim, (b) directing the Debtors to promptly pay such administrative claim, and (c) granting related relief, all as more fully set forth in the Motion; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion and having heard the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (N/A); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions, VII, LLC (3198). The Debtors' corporate headquarters and service address is 210 Barton Springs Road, Suite 300, Austin, Texas 78704.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

statements in support of the relief requested therein at a hearing before this Court, if any; and this Court having determined that the legal and factual bases set forth in support of the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. Celsius is granted an allowed administrative expense claim (the "<u>Allowed Administrative Claim</u>") pursuant to sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code for the value of the prepayment for services the Debtors will not provide in the amount of [$4,196,000.00],[3] which shall be paid in full in cash within seven days after entry of this Order.

2. Nothing contained herein shall affect or limit Celsius' right to payment for any other claims.

3. The banks and financial institutions on which checks were drawn or electronic funds transfer requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the designation of any particular check or electronic payment request as approved by this Order.

4. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Bankruptcy Local Rules are satisfied by such notice.

5. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

6. The parties are authorized to take all actions necessary to effectuate the relief

---

[3] [Administrative Expense Claim amount to be adjusted following receipt of invoice documenting charges in January prior to rejection of the Celsius Contracts.]

granted in this Order in accordance with the Motion.

7. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Dated: _____, 2023

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　_____
DAVID R. JONES
UNITED STATES BANKRUPTCY JUDGE