United States Bankruptcy Court
Southern District of Texas

**ENTERED**

October 02, 2023

Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | **Chapter 11** |
| | § | |
| **CORE SCIENTIFIC, INC.,** *et al.,* | § | **Case No. 22-90341 (DRJ)** |
| | § | |
| | § | **(Jointly Administered)** |
| **Debtors.**[1] | § | |
| | § | (Docket No. 1236) |
| | § | |

**EMERGENCY ORDER APPROVING (I) GLOBAL SETTLEMENT BETWEEN
DEBTORS AND CELSIUS, (II) SALE OF CEDARVALE FACILITY
AND RELATED ASSETS, (III) ASSUMPTION AND ASSIGNMENT
OF TRANSFERRED CONTRACTS AND (IV) GRANTING RELATED RELIEF**

Upon the emergency motion, dated September 15, 2023 (the "**Motion**"),[2] of Core Scientific Operating Company f/k/a Core Scientific, Inc. ("**Core**") and its debtor affiliates, as debtors and debtors in possession (collectively, the "**Debtors**"), seeking approval of (i) the global settlement of all disputes and claims (except for the Excluded Claims, as defined in the Motion) between the Debtors and Celsius Mining LLC and certain of its affiliates (collectively, "**Celsius**") (together with the Debtors, the "**Parties**", and such settlement, the "**Celsius Settlement**"[3]), on the terms set forth in that certain Purchase and Sale Agreement, dated as of September 14, 2023 (the "**PSA**", and together with all other agreements, documents, instruments, deliverable thereunder or

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions, VII, LLC (3198). The Debtors' corporate headquarters and service address is 210 Barton Springs Road, Suite 300, Austin, Texas 78704.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion, the PSA, or the Plan.

[3] For the avoidance of doubt, all terms of the PSA are incorporated as part of the Celsius Settlement; any reference to the Celsius Settlement also includes the transactions contemplated under the PSA and the terms thereof.

WEIL:\99322484\11\39031.0014

attached thereto or referenced therein, and as may be amended, modified, and supplemented, the "**Transaction Documents**") attached to the Motion as **Exhibit 2** and the other Transaction Documents, (ii) the sale of the Purchased Assets[4] to Celsius free and clear of all liens, claims, and encumbrances (other than Permitted Title Exceptions[5]), (iii) in accordance with the terms of the Transaction Documents, the Debtors granting Celsius the License to use the Licensed Materials[6], (iv) the Debtors' entry into the Amended TNMP Contract and assumption and assignment of certain executory contracts and agreements identified in Exhibit B of the PSA (collectively, the "**Transferred Contracts**"), and (v) granting related relief, as more fully set forth in the Motion; and upon consideration of the *Declaration of Adam Sullivan in Support of Debtors' Emergency Motion for Order Approving (I) Global Settlement Between Debtors and Celsius, (II) Sale of Cedarvale Facility and Related Assets, (III) Entry into the Amended TNMP Contract and Assumption and Assignment of Transferred Contracts, and (IV) Granting Related Relief* (the "**Sullivan Declaration**") and the *Declaration of Michael Bros in Support of Debtors' Emergency Motion for Order Approving (I) Global Settlement Between Debtors and Celsius, (II) Sale of Cedarvale Facility and Related Assets, (III) Entry into the Amended TNMP Contract and Assumption and Assignment of Transferred Contracts, and (IV) Granting Related Relief* (the "**Bros Declaration**"); and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §1334; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that this Court may enter a final order consistent with Article III of the United States Constitution; and it appearing that venue

---

[4] As defined in the PSA.

[5] As defined in the PSA and in accordance with section 4(d) of the PSA.

[6] Each as defined in the Motion.

WEIL:\99322484\11\39031.0014

is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided, and it appearing that no other or further notice need be provided; and upon the Debtors and Celsius having agreed to the terms of the Transaction Documents with respect to the sale of the Purchased Assets; and the Court having reviewed the Motion and its Exhibits; and all objections, if any, to the Motion having been withdrawn, resolved, or overruled on the merits; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors and their respective estates and creditors; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing; and the Court having found that proper and adequate notice of the Motion and hearing thereon has been given and that no other or further notice is necessary; it is HEREBY FOUND AND DETERMINED THAT:

       A.    **Findings and Conclusions.**  The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

       B.    **Jurisdiction.**  The Court has jurisdiction to hear and determine the Motion and to grant the relief requested in the Motion pursuant to 28 U.S.C. § 1334.  Without limiting the generality of the foregoing, (i) this Court has nonexclusive jurisdiction to approve the Celsius Settlement, (ii) this Court has exclusive jurisdiction to enforce the terms of the Celsius Settlement and to decide any dispute which may arise or result from, or be connected with, the Celsius Settlement and any breach or default hereunder; and (iii) this Court has exclusive *in rem*

jurisdiction over the Purchased Assets pursuant to 28 U.S.C. § 1334(e), as such Purchased Assets are property of the Debtors' chapter 11 estates, and, as a result of such jurisdiction, this Court has all necessary power and authority to grant the relief contained herein. This is a core proceeding within the meaning of 28 U.S.C. § 157(b), and as such, this Court has the authority to enter a final order.

C.     **Venue.**  Venue of these chapter 11 cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

D.     **Statutory Predicates.**  The statutory and legal predicates for the relief requested in the Motion are sections 105, 363, and 365 of the Bankruptcy Code and Rules 2002, 4001, 6004, 6006, 9006, 9007, 9008, 9013, 9014, and 9019 of the Bankruptcy Rules.

E.     **Notice and Opportunity to Object.**  As evidenced by the certificate of service previously filed with the Court (Docket No. 1241), proper, timely, adequate, and sufficient notice of the Motion, the contracts to be potentially assumed and assigned in connection with the Celsius Settlement, including the Transferred Contracts, and the deadlines related thereto was provided in accordance with sections 102(1), 363, and 365 of the Bankruptcy Code, and Bankruptcy Rules 2002, 6003, 6004, 6006, and 9014, to each party entitled to such notice, including, as applicable: (a) the United States Trustee for Region 7 (Attn: Jayson Ruff & Alicia Barcomb); (b) (i) Choate, Hall & Stewart LLP, Two International Place, 34th Floor, Boston, Massachusetts 02110 (Attn: John Ventola), counsel to the DIP Lenders, (ii) Paul Hastings LLP, 200 Park Avenue, New York, NY 10066 (Attn: Kristopher M. Hansen and Sayan Bhattacharyya), counsel to the Ad Hoc Noteholder Group, (iii) Willkie Farr & Gallagher LLP, 787 Seventh Avenue New York, NY 10019 (Attn: Brett H. Miller, Todd M. Goren, and James H. Burbage), counsel to the Creditors' Committee, (iv) Vinson & Elkins LLP, 1114 Avenue of the Americas, 32nd Floor,

4

New York, NY 10036 (Attn: David S. Meyer and Lauren R. Kanzer), counsel to the Equity Committee; (c) the Debtors' 30 largest unsecured creditors (on a consolidated basis); (d) all entities known to have asserted a lien or security interest against any of the Purchased Assets; (e) all potential parties previously identified or solicited and any additional parties who have previously expressed an interest to the Debtors or their advisors in potentially acquiring the Purchased Assets; (f) all other known parties with any interest in the Purchased Assets; (g) all known counterparties to the Transferred Contracts; (h) the Securities and Exchange Commission; (i) the Internal Revenue Service; (j) all other applicable government agencies to the extent required by the Bankruptcy Rules or the Local Rules; (k) all state attorneys' general in states where the Purchased Assets are located; (l) all affected federal, state, and local regulatory and taxing authorities; (m) those parties entitled to notice pursuant to Local Rule 9013-1(d); and (n) those persons who have formally appeared in these chapter 11 cases and requested service pursuant to Bankruptcy Rule 2002. With respect to entities whose identities are not reasonably ascertained by the Debtors, filing of the Motion and the certificate of service (Docket No. 1241), was, and is deemed, sufficient and reasonably calculated under the circumstances to reach such entities. The notices described above and in the Motion were good, sufficient, and appropriate under the circumstances and reasonably calculated to reach and apprise all known and unknown holders of the liens, claims, and encumbrances, and no other or further notice of the Motion, the Celsius Settlement, the potential assumption and assignment of the Transferred Contracts, or the related Cure Costs (as defined in the Motion) is, or shall be, required.

F.     Service was provided to all known parties in interest, including any party with one or more rights based on any alleged approval or consent right or anti-assignment

provision contained in any Transferred Contract (the "**Consent Rights**") with a reasonable and adequate opportunity to object.

G.      The Debtors served notice substantially in the form attached to the Motion as **Exhibit 5** (the "**Assumption and Assignment Notice**") on all parties required to receive such notice, and such parties have been afforded a reasonable and fair opportunity to file an objection to the assumption and/or assignment of any Transferred Contract (a "**Contract Objection**").

H.      The notice of the Motion is good, sufficient, and appropriate under the circumstances, and no other or further notice of the Motion, the assumption and assignment of the Transferred Contracts, the Celsius Settlement, the Cure Costs (as defined in the Motion), the deadlines to submit Contract Objections, the deadline to submit objections to the Motion, and all other deadlines related thereto is or shall be required.

I.      **Assets Are Property of the Estate.**  The Purchased Assets sought to be sold and assigned by the Debtors to Celsius pursuant to the Celsius Settlement are property of the Debtors' estates and title thereto is vested in the Debtors' estates.

J.      **Licensed Materials**.  The Debtors have the right to grant to Celsius the License to use the Licensed Materials in accordance with the Transaction Documents.

K.      **Fair, Reasonable, and In the Best Interests of the Estate.**  As demonstrated by the Motion and the Sullivan Declaration, the Debtors have carried their burden to prove that the Celsius Settlement is fair, reasonable, and in the best interests of the estate and the stakeholders.  The Debtors have demonstrated (i) the uncertainty of probability of success and recovery in litigating the claims against and asserted by Celsius, (ii) the complexity and lengthy duration of litigation and significant expenses that would be incurred thereunder, and (iii) that the Celsius Settlement is the product of good-faith, arms-length bargaining between the Debtors and

6

Celsius. As set forth below, through good-faith, arms-length negotiations, the Debtors have received sufficient value under the Celsius Settlement and showed sound business justification for the Celsius Settlement.

        L.     **Sufficiency of Marketing.** As demonstrated by the Motion and the Bros Declaration, the Debtors and their professionals adequately marketed the Purchased Assets and conducted a fair and comprehensive sale process. The Previous Marketing Process (as defined in the Motion) was non-collusive and provided a full, fair, and reasonable opportunity for any contacted party to make an offer to purchase the Purchased Assets, and the indications of interests received thereunder show that the Debtors obtained a fair market value for the Purchased Assets under the Celsius Settlement, and there was no other transaction available or presented that would have yielded a higher or better value for the Purchased Assets. The Previous Marketing Process undertaken by the Debtors and their professionals and each of their respective agents and other representatives with respect to the Purchased Assets was adequate and appropriate and reasonably calculated to maximize the value for the benefit of all of the Debtors' stakeholders in all respects.

        M.     **Fair Market Value of the Purchased Assets and Licensed Materials.** Pursuant to the Transaction Documents, the Debtors and Celsius have agreed that the Purchase Price for (i) the Purchased Assets, (ii) the License to use the Licensed Materials, and (iii) a full and final satisfaction and release of the Core POCs (as defined in the Motion) shall be $45 million, which shall be paid through (i) a $14 million cash payment by Celsius to the Debtors (the "**Closing Payment**") and (ii) a full and final release, satisfaction in full, and expungement of all of the Released Claims (as defined in the Motion).[7]

---

[7] For the avoidance doubt, the Excluded Claims remain outstanding pursuant to the Celsius Settlement.

N.     The Debtors determined, in a valid and sound exercise of their business judgment and after the robust and extensive Previous Marketing Process, the transactions contemplated by the Celsius Settlement provide a fair market value of the Purchased Assets.  The Debtors have demonstrated that (i) the consideration received by the Debtors under the Celsius Settlement represents a fair market value for the Purchased Assets, (ii) the Celsius Settlement and the consummation thereon presents the best opportunity to realize the maximum value of the Purchased Assets, and (iii) the Debtors' entry into and consummation of the Celsius Settlement is a sound exercise of the Debtors' business judgment.

O.     **Business Justification.**  The Debtors have demonstrated that entry into and consummation of the Celsius Settlement constitute the Debtors' sound exercise of business judgment, and such acts are in the best interests of the Debtors, their estates, stakeholders, and all parties in interest.  The Court finds that the Debtors have articulated good and sufficient business reasons justifying (i) the sale of the Purchased Assets to Celsius, (ii) the full and final satisfaction and release of the Core POCs,  and (iii) the grant of the License to Celsius to use the Licensed Materials, each pursuant to the terms and conditions set forth in the Celsius Settlement.

P.     The Debtors have also demonstrated that it is an exercise of their sound business judgment to enter into the Amended TNMP Contract and assume and assign the Transferred Contracts to Celsius in connection with the consummation of the Celsius Settlement, and the entry into the Amended TNMP Contract and the assumption and assignment of the Transferred Contracts are in the best interests of the Debtors, their estates, their stakeholders, and other parties in interest.  The Transferred Contracts being assigned to Celsius, including the Amended TNMP Contract, are an integral part of the Purchased Assets under the Celsius

8

Settlement and, accordingly, their assumption and assignment is reasonable and maximizes value for the Debtors' estates.

Q.    **Fiduciary Duties.**  The Debtors' decision to enter into and consummate the Celsius Settlement constitutes a proper exercise of the fiduciary duties of the Debtors and their directors and officers.  Because the entry into and consummation of the Celsius Settlement constitute the Debtors' exercise of sound business judgment, the Debtors, their respective current and former members, managers, officers, directors, employees, advisors, professionals or agents (collectively, the "**Released Debtor Parties**"), shall have or incur no liability to the estates or any holder of a claim against or interest in the Debtors for any act or omission in connection with, related to, or arising out of the negotiations of the Celsius Settlement contemplated thereunder, provided that no Released Debtor Party shall be released for (i) any liability of the Debtors arising out of or relating to any willful misconduct or fraud committed by such Released Debtor Party, in each case as determined by this Court, or (ii) any obligation under the Transaction Documents, which shall remain in full force and effect in accordance with their terms.

R.    **Corporate Authority.**  The Debtors (i) have full corporate or other organizational power and authority to consummate the Celsius Settlement and all other documents contemplated thereby, (ii) have all of the power and authority necessary to consummate the Celsius Settlement, and (iii) have taken all corporate or other organizational action necessary to authorize and approve the Celsius Settlement and any actions required to be performed by the Debtors to consummate the Celsius Settlement.  No further consents or approvals of the Debtors are required for the Debtors to consummate the Celsius Settlement.

S.    **Arms-Length Sale and Buyer's Good Faith.**  The Celsius Settlement was negotiated and is undertaken by the Debtors and Celsius at arms-length, without collusion or fraud,

9

and in good faith within the meaning of section 363(m) of the Bankruptcy Code. Celsius recognizes that the Debtors were free to deal with any other party interested in acquiring the Purchased Assets. All payments and considerations to be made by Celsius and other agreements or arrangements entered into by Celsius in connection with the Celsius Settlement have been disclosed, and Celsius has not violated section 363(n) of the Bankruptcy Code by any action or inaction. As a result of the foregoing, Celsius is a "good faith" buyer within the meaning of section 363(m) of the Bankruptcy Code, and as such, is entitled to all of the protections afforded thereby, including in the event this Order or any portion thereof is reversed or modified on appeal.

T. **No Fraudulent Transfer.** The total consideration provided by Celsius pursuant to the Celsius Settlement constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, and any other applicable law, and may not be avoided under section 363(n) of the Bankruptcy Code or any other applicable law. The Celsius Settlement is not being entered into and consummated, for the purpose of hindering, delaying or defrauding creditors of the Debtors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof, or the District of Columbia, or any other applicable law. Neither the Debtors nor Celsius has entered into the PSA or is consummating the Celsius Settlement with any fraudulent or otherwise improper purpose.

U. **Free and Clear Transfer Required by Celsius**. Celsius would not have entered into the PSA and would not consummate the Celsius Settlement, thus adversely affecting the Debtors, their estates, their creditors, their employees, and other parties in interest, if the sale of the Purchased Assets was not free and clear of all liens, claims, and encumbrances (other than, with respect to the Cedarvale Facility, the Permitted Title Exceptions) or if Celsius would be liable

for such liens, claims, and encumbrances, including, without limitation and as applicable, liabilities that are not expressly assumed by Celsius as set forth in the Celsius Settlement or pursuant to this Order.

V.      The transfer of the Purchased Assets and the Celsius Settlement is a legal, valid, and effective transfer of all of the legal, equitable, and beneficial right, title, and interest in and to the Purchased Assets free and clear of all liens, claims, and encumbrances (other than Permitted Title Exceptions).

W.      **Satisfaction of Section 363(f) Standards.**  The Debtors are authorized to sell the Purchased Assets free and clear of all liens, claims, and encumbrances (other than Permitted Title Exceptions) (with the liens, claims, and encumbrances, attaching to the proceeds of the sale with the same nature, validity, priority, extent, perfection, and force and effect that the liens, claims, and encumbrances encumbered the Purchased Assets immediately prior to the entry of this Order) because, with respect to each creditor or other person or entity asserting a lien, claim, and encumbrance, one or more of the standards set forth in section 363(f)(l)-(5) of the Bankruptcy Code has been satisfied.  Each creditor or other person or entity asserting a lien, claim, or encumbrance in the Purchased Assets (i) has, subject to the terms and conditions of this Order, consented to the Celsius Settlement or is deemed to have consented to the Celsius Settlement, (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such lien, claim, or encumbrance, and/or (iii) otherwise falls within the provisions of section 363(f) of the Bankruptcy Code.  Those holders of the liens, claims, and encumbrances who did not object (or who ultimately withdrew their objections, if any) to the Celsius Settlement or the Motion are deemed to have consented to the Motion and Celsius Settlement pursuant to section 363(f)(2) of the Bankruptcy Code.  Creditors or other persons or entities asserting a lien, claim, or encumbrance

11

against the Purchased Assets could be compelled in a legal or equitable proceeding to accept money satisfaction of such lien, claim, or encumbrance.

    X. **No Successor Liability**. Upon the consummation of the Celsius Settlement, Celsius shall be deemed not to:  (i) be the successor of Seller or any of its Affiliates by reason of any theory of law or equity, (ii) have, *de facto* or otherwise, merged with or into the Debtors, (iii) be a mere continuation or substantial continuation of the Debtors or (iv) be liable or have any liability for any acts or omissions of the Debtors in the conduct of their businesses or arising under or related to the Purchased Assets.

    Y. **Transferred Contracts.** Each and every provision of the Transferred Contracts or applicable non-bankruptcy law that purports to prohibit, restrict, or condition, or could be construed as prohibiting, restricting, or conditioning assignment of any Transferred Contract or Transferred Contract has been or will be satisfied or is otherwise unenforceable under section 365 of the Bankruptcy Code.  All counterparties of the Transferred Contracts that did not timely file an objection to the assumption and/or assignment of the Transferred Contract(s) to which they are a counterparty in accordance with the Assumption and Assignment Notice are deemed to consent to the assumption and assignment by the Debtors of their Transferred Contract to Celsius, and Celsius shall enjoy all of the rights and benefits and assume all obligations under each such Transferred Contract as of the applicable date of assumption and assignment without the necessity of obtaining such non-debtor party's consent to the assumption and assignment thereof.  All counterparties of the Transferred Contracts for which the deadline to file a Contract Objection has not passed as of the date of entry of this Order, and that did not or do not timely file such an objection prior to the applicable deadline, shall be deemed to consent to the assumption and assignment by the Debtors of their Transferred Contract to Celsius effective as of the entry of this

WEIL:\99322484\11\39031.0014

Order, and Celsius shall enjoy all of the rights and benefits and assume all obligations under each such Transferred Contract as of the applicable date of assumption and assignment without the necessity of obtaining such non-debtor party's consent to the assumption and assignment thereof. If a Contract Objection timely filed with respect to a Transferred Contract in accordance with the Assumption and Assignment Notice cannot be resolved by the parties, the Debtors are authorized, but not required, to (i) assume and assign the applicable Transferred Contract pending resolution of the Contract Objection, or (ii) in accordance with section 17 of the PSA and subject to Celsius's consent, amend <u>Exhibit B</u> of the PSA. Upon the assumption and assignment to Celsius in accordance with the terms of the Celsius Settlement, the Transferred Contracts shall be deemed valid and binding, in full force and effect in accordance with their terms, subject to the provisions of this Order, and shall be assigned and transferred to Celsius, notwithstanding any provision in the Transferred Contracts prohibiting or otherwise restricting assignment or transfer, and the Debtors, their estates, or any of their affiliates, predecessors, successors, or assigns, shall have no further liability or obligation under the Transferred Contracts, and Celsius shall assume all obligations under the Transferred Contracts. To the extent any Transferred Contract is not an executory contract within the meaning of section 365 of the Bankruptcy Code, it shall be transferred to Celsius in accordance with the terms of the Transaction Agreements and Celsius shall be solely responsible for the performance of the obligations of the Debtors under such Transferred Contracts that become due from and after, solely to the extent relating to facts, occurrences or other circumstances first arising after the consummation of the Celsius Settlement.

       Z. **Cure Costs and Adequate Assurance.** Pursuant to the Celsius Settlement, any and all Cure Costs will be paid by the Debtors. Celsius has demonstrated adequate assurance of future performance of each Transferred Contract within the meaning of section 365 of the

Bankruptcy Code that is assumed by Celsius or any of its permitted assignees to which such Transferred Contract is assumed and assigned by the Debtors, including a promise to perform the Debtors' obligations under such Transferred Contract for periods upon and after the consummation of the Celsius Settlement. The Cure Costs are deemed the amounts necessary to "cure" (within the meaning of section 365(b)(l) of the Bankruptcy Code) all "defaults" (within the meaning of section 365(b) of the Bankruptcy Code) under such Transferred Contracts that are assumed. Celsius's promise under the PSA to perform the obligations under the Transferred Contracts as of the consummation of the Celsius Settlement shall constitute adequate assurance of future performance under such Transferred Contracts upon and after the consummation of the Celsius Settlement. Any objections to the Cure Costs, to the extent not otherwise resolved, are hereby overruled. To the extent that any counterparty failed to timely object to its Cure Cost or to raise any other alleged default or breach of contract, such counterparty is deemed to have consented to such Cure Cost and to the assignment of its respective Transferred Contract(s) to Celsius and to have waived any other defaults or breaches. The Court finds that with respect to all Transferred Contracts, the payment of the Cure Costs as provided in the PSA is reasonable and appropriate and is deemed to fully satisfy the Debtors' obligations under sections 365(b) and 365(f) of the Bankruptcy Code. Accordingly, all of the requirements of sections 365(b) and 365(f) of the Bankruptcy Code have been satisfied for the assumption by the Debtors, and the assignment by the Debtors to Celsius, of each Transferred Contract upon the consummation of the Celsius Settlement.

AA. **Assets Assignable and Licensable.** Each and every provision of the documents governing the Purchased Assets or the Licensed Materials, as applicable, or applicable non-bankruptcy law that purports to prohibit, restrict, or condition, or could be construed as

14

prohibiting, restricting, or conditioning either: (a) sale or assignment of any of the Purchased Assets or (b) the grant of the License to use any of the Licensed Materials, if any, have been or will be satisfied or are otherwise unenforceable under section 365 of the Bankruptcy Code.

BB.     **Time of the Essence.**  Time is of the essence in consummating the Celsius Settlement.  In order to maximize the value of the Purchased Assets, it is essential that the sale of the Purchased Assets occur within the time constraints set forth in the PSA.  Good and sufficient reasons for approval of the PSA have been articulated by the Debtors.  The Debtors and Celsius, being a good faith buyer under section 363(m) of the Bankruptcy Code, may close the transactions contemplated by the Celsius Settlement at any time after entry of this Order subject to the terms and conditions of the PSA.

CC.     **No Sub Rosa Plan.**  The Celsius Settlement does not constitute a *sub rosa* chapter 11 plan.  The Celsius Settlement neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates a chapter 11 plan for the Debtors.

DD.     **Final Order; Immediate Effect.**  This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Order, and, sufficient cause having been shown, waives any such stay, and expressly directs entry of judgment as set forth herein.

### IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT:

1.     **Objections Overruled.**  All objections, if any, with regard to the relief sought in the Motion that have not been withdrawn, waived, settled, or otherwise dealt with herein

WEIL:\99322484\11\39031.0014

are hereby overruled on the merits, with prejudice. All objections to the entry of this Order or to the relief granted herein that were not timely filed are hereby forever barred.

2. **Approval of the Celsius Settlement**. This Order shall only be effective once the Settlement and Purchase Order[8] is entered in the Celsius chapter 11 cases, 22-10964 (MG) (Bankr. S.D.N.Y. Jul 13, 2022) (the "**Celsius Chapter 11 Cases**"). Pursuant to Bankruptcy Rule 9019 and Bankruptcy Code sections 105(a), 362(d), 363, and 365, the Motion is granted and the Celsius Settlement, including the Transaction Documents and the transactions contemplated thereunder, is approved. The Debtors have satisfied all requirements of Bankruptcy Rule 9019 and Bankruptcy Code sections 363 and 365, and all other requirements and standards applicable to a sale outside the ordinary course of business, free and clear of all liens, claims, and encumbrances (other than Permitted Title Exceptions).

3. **Approval of the Sale of the Purchased Assets and the License to the Licensed Materials.** Pursuant to sections 105(a), 363(b), 363(f), and 365 of the Bankruptcy Code, the Debtors are authorized, subject to entry of the Settlement and Purchase Order in the Celsius Chapter 11 Cases, to take any and all reasonable actions necessary to consummate the Celsius Settlement, including the sale, transfer, and assignment of all of the Debtors' right, title, and interest in, to, and under the Purchased Assets and the grant of the License under the Licensed Materials, in each case to Celsius, in each case free and clear of all liens, claims, and encumbrances (other than Permitted Title Exceptions) in accordance with the terms of the Transaction Documents and this Order. The relevant Debtors, as well as their directors, officers, employees, and agents, are authorized to execute, deliver, and perform their obligations under and comply with the terms of the Celsius Settlement and to consummate the Celsius Settlement, including by taking any and

---

[8] As defined in the PSA.

WEIL:\99322484\11\39031.0014

all actions as may be reasonably necessary or desirable to implement the Celsius Settlement pursuant to and in accordance with the terms and conditions of the Transaction Documents and under this Order.

4.      The relevant Debtors, their affiliates, and their respective directors, officers, employees, and agents, are authorized to execute and deliver, and authorized to perform under, consummate, and implement all additional notices, assumptions, conveyances, releases, acquittances, instruments and documents that may be reasonably necessary or desirable to implement the Celsius Settlement, including the sale and transfer of the Purchased Assets, and the assumption and assignment of all the Transferred Contracts to Celsius, and to take all further actions as may be (i) reasonably requested by Celsius for the purpose of selling, transferring, granting, conveying, and conferring to Celsius, or reducing to Celsius's possession, the Purchased Assets and/or (ii) necessary or appropriate to the performance of the obligations contemplated by the Celsius Settlement.

5.      **Power Matters.**  The Debtors are authorized to (i) transfer certain assets and necessary qualifications into Meter Holding as part of the sale of the Purchased Assets to Celsius and (ii) perform all other actions reasonably necessary or appropriate with respect to enrolling and qualifying Meter Holding for the Electric Reliability Council of Texas's Four Coincident Peak program.  The Debtors are further authorized to enter into the Amended TNMP Contract by either (i) amending or restating that certain Transmission/Substation Facility Extension Agreement, between the Debtors and Texas New Mexico Power Company, dated August 20, 2021 (the "**TNMP Contract**") or (ii) rejecting the TNMP Contract and entering into a replacement TNMP Contract, provided that (i) the Amended TNMP Contract shall be on Texas New Mexico Power Company's standard form and (ii) shall not, without Celsius's reasonable

approval, modify any term of the TNMP Contract except to provide that the Cedarvale Facility shall be allocated at least 215 megawatts of power at the consummation of the Celsius Settlement and that Celsius shall be entitled to any and all future capacity, if any, allocated to the Cedarvale Facility or the substation at the Cedarvale Facility.

6.      Celsius shall provide the Debtors reasonable access, which access shall be supervised by Celsius, to the Cedarvale Facility in the six (6) months following the consummation of the Celsius Settlement in order for the Debtors, solely at their own cost and expense, to remove the Excluded Equipment[9] in accordance with the PSA.

7.      **Mutual Release of Claims.**   Upon the consummation of the Celsius Settlement, each of (a) the Released Claims (as defined in the Motion) are hereby deemed fully released, expunged, dismissed, disallowed and/or withdrawn with prejudice; (b) the Proofs of Claims Nos. 425 and 497 filed by Celsius against the Debtors and the Celsius Administrative Claim Motion (Docket No. 801) will be deemed withdrawn with prejudice as of the date of the consummation of the Celsius Settlement; (c) the releases set forth in Section 15 of the PSA shall become effective; *provided* that the Excluded Claims (as defined in the PSA) shall not be released hereunder; and (d) other than as set forth herein, Celsius shall not be entitled to receive any other recovery in connection with any claims it has, or could have, asserted in connection with these chapter 11 cases or otherwise, other than with respect to the Excluded Claims (as defined in the PSA), the PSA, the other Transaction Documents and the rights and obligations of the Releasing Parties under the Celsius Settlement (including the Transaction Documents).

---

[9] As defined in the PSA.

WEIL:\99322484\11\39031.0014

8.      The Debtors are further authorized, but not directed, to pay, without further order of the Court, whether before, at or after the entry of this Order, any expenses or costs required to be paid to consummate the Celsius Settlement.

9.      Each and every federal, state, local, or foreign government or governmental or regulatory authority, agency, board, bureau, commission, court, department, or other governmental entity is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Celsius Settlement subject to the payment of any filing or other fee imposed under non-bankruptcy law.

10.      Subject to entry of the Settlement and Purchase Order in the Celsius Chapter 11 Cases, Celsius releases and discharges any other claim it has, might have had, or may have (except, for the avoidance of doubt, the Excluded Claims), against the Debtors and their managers, members, officers, directors, employees, partners, agents, representatives, beneficiaries, attorneys, subsidiaries, affiliates, contractors, subcontractors, successors and assigns, whether known or unknown, actual or contingent, foreseen or unforeseen, relating to, arising out of or with respect to (i) the condition of the Purchased Assets, either patent or latent, (ii) Celsius's ability, or inability, to obtain or maintain temporary or final certificates of occupancy, permits or other licenses for the use or operation of the Cedarvale Facility, and/or certificates of compliance or operation of the Cedarvale Facility, (iii) the actual or potential income, or profits, to be derived from the Purchased Assets, (iv) the real estate, or other, taxes or special assessments, now or hereafter payable on account of, or with respect to, the Cedarvale Facility, (v) Celsius's ability or inability to demolish the improvements or otherwise develop the Land[10], or (vi) any other matter relating to the Purchased Assets.

---

[10] As defined in the PSA.

WEIL:\99322484\11\39031.0014

11. **Sale and Transfer of Assets Free and Clear.** Pursuant to sections 105(a), 363(b), 363(f), and 365(b) of the Bankruptcy Code, the Debtors are authorized to sell, and upon the consummation of the Celsius Settlement shall transfer to Celsius all of the Debtors' right, title, and interest in and to, and possession of, the Purchased Assets, title to which shall be vested in Celsius as set forth in the Transaction Documents, and, to the extent provided in the Celsius Settlement, such title to the Purchased Assets shall be transferred to Celsius free and clear of all liens, claims, and encumbrances (other than Permitted Title Exceptions), including:

(a) liens (including, without limitation, mechanics', materialmans', and other consensual and non-consensual liens and statutory liens) mortgages, restrictions, hypothecations, charges, indentures, loan agreements, instruments, leases, licenses, options, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, judgments, demands, encumbrances, easements, and servitudes;

(b) interests, obligations, liabilities, demands, guaranties, options, restrictions, and contractual or other commitments;

(c) rights, including, without limitation, rights of first refusal, rights of offset (except for offsets exercised prior to the Petition Date), contract rights, and recovery;

(d) decrees of any court or foreign or domestic government entity (to the extent permitted by law);

(e) charges or restrictions of any kind or nature, including, without limitation, any restriction on the use, transfer, receipt of income or other exercise of any attributes of ownership of the Purchased Assets, including, without limitation, consent of any Person to assign or transfer any of the Purchased Assets;

(f) debts arising in any way in connection with any agreements, acts, or failures to act, of the Debtors or any of the Debtors' predecessors or affiliates;

(g) claims (as that term is defined in the Bankruptcy Code), including claims for reimbursement, contribution claims, indemnity claims, exoneration claims, alter-ego claims, environmental claims (to the fullest extent allowed by applicable law), including claims that may be secured or entitled to priority under the Bankruptcy Code, tax claims, reclamation claims, and pending litigation claims; and

WEIL:\99322484\11\39031.0014

(h)     matters of any kind or nature whatsoever, whether at law or in equity and whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or un-matured, material or nonmaterial, disputed or undisputed, whether arising prior to or during the Debtors' bankruptcy cases, and whether imposed by agreement, understanding, law, equity, or otherwise;

in each case, whether in law or in equity, known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, direct or indirect, and whether arising by agreement, understanding, law, equity or otherwise, and whether occurring or arising before, on or after the Petition Date, or occurring or arising prior to the consummation of the Celsius Settlement.  The liens, claims, and encumbrances shall attach to the proceeds with the same nature, validity, priority, extent, perfection, and force and effect that such liens, claims, and encumbrances encumbered the Purchased Assets immediately prior to the consummation of the Celsius Settlement, subject to any claims, defenses, and objections, if any, that the Debtors or their estates may possess with respect thereto.

12.     **Binding Effect of Order.**  Except as set forth in this paragraph and subject to entry of the Settlement and Purchase Order in the Celsius Chapter 11 Cases, this Order and the Celsius Settlement shall be binding in all respects upon the Debtors, their estates, all creditors of the Debtors, holders of equity interests in the Debtors, any holders of the liens, claims, and encumbrances in, against, or on all or any portion of the Purchased Assets (whether known or unknown), Celsius (and all successors and assigns of Celsius, subject to approval by the bankruptcy court of the Celsius Chapter 11 Cases), notwithstanding the dismissal of any of the Debtors' cases or any subsequent appointment of any trustees, examiners, "responsible persons,"

21

or other fiduciaries in these chapter 11 cases or upon a conversion to case under chapter 7 of the Bankruptcy Code. If any order under section 1112 of the Bankruptcy Code is entered, such order shall provide, or be deemed to provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that this Order, including the rights granted to Celsius hereunder, shall remain effective and, notwithstanding such dismissal, shall remain binding on parties in interest. The Celsius Settlement and Settlement and Purchase Order entered in the Celsius Chapter 11 Cases, this Order, and the Debtors' obligations therein and herein shall not be altered, impaired, amended, rejected, discharged, or otherwise affected by any chapter 11 plan proposed or confirmed in these bankruptcy cases, any order confirming any chapter 11 plan, or any subsequent order of this Court without consent of the Debtors and Celsius, which shall not be unreasonably withheld; to the extent of any conflict between this Order or the Celsius Settlement and such future plan or order, the terms of this Order and the Celsius Settlement shall control; *provided*, *however*, that notwithstanding anything to the contrary herein or in any of the Transaction Documents, the Purchase Price of the Purchased Assets should not be binding upon the parties of these chapter 11 cases for any purpose other than the consummation of the Celsius Settlement, including, but not limited to, any claim arising under section 361 of the Bankruptcy Code.

13. **No Material Modifications.** The Transaction Documents and any related agreements, documents, or other instruments in effect as of the date hereof may be modified, amended, or supplemented through a written document signed by the parties thereto in accordance with the terms thereof without further order of this Court; *provided*, *however*, that any such modification, amendment, or supplement does not have a material or an adverse effect on the Debtors or their estates. For the avoidance of doubt, all other modifications, amendments, or

supplements that have a material or an adverse effect on the Debtors' estates or their creditors shall require Court approval.

14. **No Bulk Sale.** No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the Celsius Settlement, the Motion, and this Order.

15. **Valid Transfer.** Effective upon the consummation of the Celsius Settlement, the transfer to Celsius of the Debtors' right, title, and interest in the Purchased Assets pursuant to the Celsius Settlement shall be, and hereby is deemed to be, a legal, valid and effective transfer of the Debtors' right, title, and interest in the Purchased Assets, and vests with or will vest in Celsius all right, title, and interest of the Debtors in the Purchased Assets, free and clear of all liens, claims, and encumbrances (other than Permitted Title Exceptions).

16. **Good Faith Buyer.** The Celsius Settlement is undertaken by Celsius in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and Celsius has acted without collusion in undertaking the Celsius Settlement. Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Celsius Settlement shall not affect the release and settlement of the Released Claims and the Core POCs, the validity of the sale of the Purchased Assets to Celsius, and the assumption and assignment by the Debtors of any of the Transferred Contracts, unless such authorization is duly stayed pending such appeal. Celsius is a buyer in good faith of the Purchased Assets, and is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

17. The Celsius Settlement and the transactions contemplated thereby cannot be avoided under section 363(n) of the Bankruptcy Code. None of the Debtors, Celsius, or any of their respective affiliates, officers, directors, members, partners, principals, or shareholders (or equivalent) or any of their respective current and former members, managers, officers, directors,

WEIL:\99322484\11\39031.0014

employees, advisors, professionals, agents, predecessors, successors or assigns have engaged in any conduct that would cause or permit the consummation of the Celsius Settlement contemplated thereby to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code.

18.     **Governmental Authorization to Effectuate Sale and Assignments.** Each and every federal, state, and governmental agency or department, and any other person or entity, is hereby authorized to accept any and all documents and instruments in connection with or necessary to consummate the Celsius Settlement. Except as otherwise provided in this Order, to the greatest extent available under applicable law as of the consummation of the Celsius Settlement, Celsius shall be authorized, as of the consummation of the Celsius Settlement, to operate under any license, permit, registration, and governmental authorization or approval of the Debtors with respect to the Purchased Assets, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been, and hereby are, deemed to be transferred to Celsius upon the consummation of the Celsius Settlement. No governmental unit may revoke or suspend any lawful right, license, trademark, or other permission relating to the use of the Purchased Assets sold, transferred, or conveyed to Celsius on account of the filing or pendency of these chapter 11 cases or the consummation of the Celsius Settlement. For the avoidance of doubt, the Celsius Settlement authorized herein shall be of full force and effect, regardless of whether the Debtors or any of their affiliates lack good standing in any jurisdiction in which such entity is formed or is authorized to transact business.

19.     **Authorization to Assign**. Notwithstanding any provision of any contract governing the Purchased Assets, including any Transferred Contracts to be assumed and assigned to Celsius as of the closing of the Celsius Settlement, pursuant to section 365(f) of the Bankruptcy

24

Code or applicable non-bankruptcy law that prohibits, restricts, or conditions the assignment of the Purchased Assets, including any Transferred Contract, at or after the consummation of the Celsius Settlement, the Debtors are authorized in accordance with sections 105(a), 363, and 365 of the Bankruptcy Code to (i) sell the Purchased Assets to Celsius and (ii) assume and assign to Celsius the Transferred Contracts to Celsius upon the consummation of the Celsius Settlement, in each case, which assignments shall take place on and be effective upon consummation of the Celsius Settlement.

(a)     There shall be no accelerations, assignment fees, increases, or any other fees charged to Celsius or the Debtors as a result of the assignment of the Purchased Assets or the assumption and assignment of the Transferred Contracts.

(b)     The Debtors have met all of the requirements of section 365(b) of the Bankruptcy Code for each of the Transferred Contracts that are to be assumed and assigned to Celsius upon the consummation of the Celsius Settlement. Notwithstanding the foregoing, unless required by Celsius under the PSA for the Debtors to assume and assign any Transferred Contract, no Debtor shall be required by the Court to assume and assign any Transferred Contract, and, if no such assumption and assignment occurs, no Cure Costs shall be due and no adequate assurance of future performance shall be required with respect to any such Transferred Contract.

(c)     The Debtors' assumption and assignment of the Transferred Contracts is subject to the consummation of the Celsius Settlement with the Celsius. To the extent that an objection by a counterparty to any Transferred Contract with respect to the Debtors' assumption and assignment of the Transferred Contracts, including an objection related to the applicable Cure Cost, is not resolved prior to the consummation of the Celsius Settlement, Celsius, may, without any further approval of the Court or notice to any party, elect to (a) not have the Debtors assume and assign such Transferred Contract to it, or (b) have the Debtors postpone the assumption of such Transferred Contract until the resolution of such objection; provided, however, that the Debtors and the relevant non-debtor counterparty under each Transferred Contract shall have authority to compromise, settle, or otherwise resolve any objections to proposed Cure Costs without further order of, or notice to, this Court, with any such agreed upon Cure Costs being paid to the appropriate counterparty by the Debtors as a condition subsequent to such assumption and assignment of the relevant Transferred Contract.

WEIL:\99322484\11\39031.0014

20. **Transferred Contracts**. Upon the consummation of the Celsius Settlement, subject to the provisions of this Order and in accordance with the PSA, Celsius shall succeed to the entirety of the Debtors' rights and obligations in the Transferred Contracts first arising and attributable to the time period occurring upon the consummation of the Celsius Settlement and shall have all rights thereunder.

(a) Upon the consummation of the Celsius Settlement, (a) all defaults (monetary and non-monetary) under the Transferred Contracts shall be deemed cured and satisfied in full through the payment of the Cure Costs, (b) no other amounts will be owed by the Debtors, their estates, or, Celsius with respect to amounts first arising or accruing during, or attributable or related to, the period before the consummation of the Celsius Settlement with respect to the Transferred Contracts, and (c) any and all persons or entities shall be forever barred and estopped from asserting a claim against the Debtors, their estates, Celsius, or the Purchased Assets that any additional amounts are due or defaults exist under the Transferred Contracts that arose or accrued, or relate to or are attributable to the period before the consummation of the Celsius Settlement. The Debtors promise, pursuant to the terms of the PSA, to pay any and all Cure Costs and Celsius's promise to perform the Debtors' obligations under the Transferred Contracts for the period on or after the consummation of the Celsius Settlement shall constitute adequate assurance of Celsius's future performance under the Transferred Contracts being assigned to it as of the consummation of the Celsius Settlement within the meaning of sections 365(b)(l)(C) and (f)(2)(A)-(B) of the Bankruptcy Code.

(b) Upon assumption of those Transferred Contracts to be assumed by the Debtors and assigned to the Celsius upon the consummation of the Celsius Settlement, such Transferred Contracts shall be deemed valid and binding, in full force and effect in accordance with their terms, subject to the provisions of this Order, and shall be assigned and transferred to Celsius, notwithstanding any provision in such Transferred Contract or other restrictions prohibiting assignment or transfer. To the extent any Transferred Contract is assumed and assigned to Celsius under this Order, such assumption and assignment will not take effect until the consummation of the Celsius Settlement. Furthermore, other than the Transferred Contracts, no other contract shall be deemed assumed by the Debtors and/or assigned to Celsius pursuant to section 365 of the Bankruptcy Code. The failure of the Debtors or Celsius to enforce at any time one or more terms or conditions of any Transferred Contract shall not be a waiver of such terms or conditions, or of the Debtors' and the Celsius's rights to enforce every term and condition of such Transferred Contract.

26

(c)  All counterparties to the Transferred Contracts shall cooperate and expeditiously execute and deliver, upon the reasonable request of Celsius, and shall not charge the Debtors or Celsius for, any instruments, applications, consents, or other documents which may be required or requested by any public or quasi-public authority or other party or entity to effectuate the applicable transfers in connection with the Celsius Settlement.

21.  Notwithstanding the foregoing, the Debtors may amend the list of Transferred Contracts to add or remove any Transferred Contract to or from such list of Transferred Contracts of the Celsius Settlement in accordance with the terms thereof.

22.  **Cure Costs.**  All Cure Costs that have not been waived shall be determined in accordance with this Order and paid by the Debtors, in accordance with the terms of the Celsius Settlement.  Assumption and payment of the Cure Costs by the Debtors shall be in full satisfaction and cure of any and all defaults under the Transferred Contracts and is deemed to fully satisfy the Debtors' obligations under sections 365(b) and 365(f) of the Bankruptcy Code.  Upon the assumption by a Debtor and the assignment to Celsius of any Transferred Contract, and the payment of any applicable Cure Costs, each non-Debtor counterparty to such Transferred Contract is forever barred, estopped, and permanently enjoined from (i) asserting against the Debtors or Celsius, their affiliates, successors, or assigns, or the property of any of them, any default existing as of the entry date of this Order, and (ii) exercising any rights or remedies against any Debtor or Celsius based on an asserted default that occurred on, prior to, or as a result of, the entry of this Order, including the type of default specified in section 365(b)(1)(A) of the Bankruptcy Code. Celsius has provided adequate assurance of future performance under the Transferred Contracts within the meaning of sections 365(b)(1)(c) and 365(f)(2)(B) of the Bankruptcy Code. Accordingly, all of the requirements of sections 365(b) and 365(f) of the Bankruptcy Code have been satisfied for the assumption by the Debtors, and the assignment by the Debtors to Celsius, of each of the Transferred Contracts.

27

23.     **Contract Objection.**     To the extent a non-Debtor counterparty to a Transferred Contract fails to timely object to a Cure Cost in accordance with the Assumption and Assignment Notice, such Cure Cost has been and shall be deemed to be finally determined and any such non-Debtor counterparty shall be prohibited from challenging, objecting to, or denying the validity and finality of the Cure Cost at any time.  The non-Debtor counterparty to a Transferred Contract is forever bound by the applicable Cure Cost and, upon payment of such Cure Cost as provided herein and in the Celsius Settlement, is hereby enjoined from taking any action against the Debtors or Celsius with respect to any claim for cure under such Transferred Contract.  To the extent no timely Contract Objection has been filed and served with respect to a Transferred Contract, the non-Debtor counterparty to such Transferred Contract is deemed to have consented to the assumption and assignment of such Transferred Contract to Celsius.

24.     **Preferential Purchase Right and Consent Right.**  Without limiting the foregoing, each person or entity who holds or is the beneficiary of (i) any alleged preferential purchase rights contained in any Transferred Contract, if any (the "**Preferential Purchase Rights**") or (ii) a Consent Right will be (i) forever barred from objecting to the transfer, sale, assumption, and/or assignment of the Debtors' right, title, and interest in, to and under the Purchased Assets to be sold, assumed, and/or assigned in connection with the Celsius Settlement, free and clear of all liens, claims, and encumbrances, including Consent Rights and Preferential Purchase Rights (other than Permitted Title Exceptions), and from asserting any alleged Preferential Purchase Rights with respect to the Sale Transaction, and (ii) deemed to consent to and approve the transfer, sale, and/or assumption and/or assignment of the Debtors' right, title, and interest in, to and under the Purchased Assets free and clear of all liens, claims, and

28

encumbrances, including Consent Rights and Preferential Purchase Rights (other than Permitted Title Exceptions).

25.     **No Successor Liability.**  Celsius has given substantial consideration under the Motion, this Order, and the Celsius Settlement, which consideration shall constitute valid, valuable, and sufficient consideration for the absolution from any potential claims of successor liability of Celsius to the greatest extent allowed by applicable law.

26.     **Surrender of Possession.**  Any and all Purchased Assets in the possession or control of any person or entity, including any vendor, supplier, or employee of the Debtors shall be transferred to Celsius free and clear of all liens, claims, and encumbrances,(other than Permitted Title Exceptions), with such liens, claims, and encumbrances attaching to the proceeds with the same nature, validity, priority, extent, perfection, and force and effect that such liens, claims, and encumbrances encumbered the Purchased Assets immediately prior to the entry of this Order, and shall be delivered to Celsius and deemed delivered upon the consummation of the Celsius Settlement (or such other time as provided in the PSA), with such costs of delivery allocated in accordance with the Celsius Settlement.

27.     **Retention of Jurisdiction.**  The Court retains jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

28.     **Immediate Effect.**  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing.  In the absence of any person or entity obtaining a stay pending appeal, the Debtors and Celsius are free to consummate the Celsius Settlement at any time pursuant to the terms thereof.

29. **Failure to Specify Provisions**. The failure to specifically reference any particular provisions of the PSA or other related documents in this Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Celsius Settlement, including the PSA and other related documents, be authorized and approved in its entirety.

30. **Release of Interests.** Upon the consummation of the Celsius Settlement, this Order (i) is and shall be effective as a determination that all claims, liens, or encumbrances (other than Permitted Title Exceptions) of any kind or nature whatsoever existing as to the Purchased Assets prior to the entry of this Order have been unconditionally released, discharged, and terminated (with such claims, liens, or encumbrances attaching to the proceeds with the same nature, validity, priority, extent, perfection, force and effect that such claims, liens, or encumbrances encumbered the Purchased Assets immediately prior to the entry of this Order) and that the conveyances described herein have been effected, (ii) is and shall be binding upon and shall govern the acts of all entities, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies or units, governmental departments or units, secretaries of state, federal, state and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Purchased Assets conveyed to Celsius (such entities being referred to as "**Recording Officers**"), and all recorded claims, encumbrances, liens or liabilities (other than Permitted Title Exceptions) against the Purchased Assets shall be deemed stricken from such entities records, official and otherwise. All Recording Officers are authorized to strike recorded encumbrances, claims, liens,

pledges, and other interests against the Purchased Assets recorded prior to the date of this Order. A certified copy of this Order may be filed with the appropriate Recording Officers to evidence cancellation of any recorded encumbrances, claims, liens, pledges, and other interests against the Purchased Assets recorded prior to the entry of this Order. All Recording Officers are hereby authorized to accept for filing any and all of the documents and instruments necessary, advisable or appropriate to consummate the transactions contemplated by the PSA, subject to the payment of any filing or other fee imposed under non-bankruptcy law.

31. **Approval to Release Interests**. All entities, including without limitation all trustees or collateral agents, are authorized and directed to file and/or execute lien releases, including financing statement terminations, mortgage releases or other documents or agreements evidencing release of claims, liens, or encumbrances against or on the Purchased Assets (other than Permitted Title Exceptions). If any person or entity that has filed financing statements, mortgages, mechanic's liens, or other documents or agreements evidencing claims, liens, or encumbrances against or on the Purchased Assets shall not have delivered to the Debtors before the entry of this Order, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all claims, liens, or encumbrances (other than Permitted Title Exceptions) that the person or entity has or may assert with respect to the Purchased Assets, the Debtors and Celsius are hereby authorized to execute and file such statements, instruments, releases, and other documents on behalf of such person or entity with respect to the Purchased Assets. Celsius is hereby authorized to file, register, or otherwise record a certified copy of this Order and the Settlement and Purchase Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all claims,

31

liens, or encumbrances against the Purchased Assets (other than Permitted Title Exceptions). This Order and the Settlement and Purchase Order are deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department, or office.

32.     **No Effect on Governmental Regulatory Authority.** Nothing in this Order or the Celsius Settlement authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization, or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law. Nothing in this Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Order or to adjudicate any defense asserted under this Order. For the avoidance of doubt, the matters preserved by this paragraph are subject to all rights and defenses available under applicable law.

33.     Nothing in this Order or related documents discharges, releases, precludes, or enjoins: (i) any liability to any governmental unit as defined in 11 U.S.C. § 101(27) ("**Governmental Unit**") that is not a "claim" as defined in 11 U.S.C. § 101(5); (ii) any claim of a Governmental Unit arising on or after consummation of the Celsius Settlement; (iii) any liability to a Governmental Unit under police and regulatory statutes or regulations that any entity would be subject to as the owner or operator of property after consummation of the Celsius Settlement; or (iv) any liability to a Governmental Unit on the part of any Person other than the Debtors. Nor shall anything in this Order enjoin or otherwise bar a Governmental Unit from asserting or enforcing, outside this Court, any liability described in the preceding sentence.

34.     Each and every provision of the Transferred Contracts or applicable non-bankruptcy law that purports to prohibit, restrict, or condition, or could be construed as prohibiting,

32

restricting, or conditioning assignment of any Transferred Contract has been or will be satisfied or is otherwise unenforceable under section 365 of the Bankruptcy Code. All counterparties of the Transferred Contracts that did not or do not timely file an objection to the assumption and assignment of the Transferred Contract(s) to which they are a counterparty are deemed to consent to the assumption and assignment by the Debtors of their Transferred Contract to Celsius, and Celsius shall enjoy all of the rights and benefits and assume all obligations under each such Transferred Contract as of the applicable date of assumption and assignment without the necessity of obtaining such non-debtor party's consent to the assumption or assignment thereof. All counterparties of the Transferred Contracts for which the deadline to file a Contract Objection has not passed as of the date of entry of this Order, and that did not or do not timely file such an objection prior to the applicable deadline, shall be deemed to consent to the assumption and assignment by the Debtors of their Transferred Contract(s) to Celsius effective as of the entry of this Order, and Celsius shall enjoy all of the rights and benefits and assume all obligations under each such Transferred Contract as of the applicable date of assumption and/or assignment without the necessity of obtaining such non-debtor party's consent to the assumption or assignment thereof. If a Contract Objection timely filed with respect to a Transferred Contract cannot be resolved by the parties, the Debtors may assume and assign the applicable Transferred Contract pending resolution of the Contract Objection. Upon the assumption and assignment to Celsius and assumption by Celsius in accordance with the terms of the Celsius Settlement, the Transferred Contracts shall be deemed valid and binding, in full force and effect in accordance with their terms, subject to the provisions of the Celsius Settlement and this Order, and shall be assigned and transferred to Celsius, notwithstanding any provision in the Transferred Contracts prohibiting or otherwise restricting assignment or transfer, and the Debtors, their estates, or any of their affiliates,

33

predecessors, successors, or assigns, shall have no further liability or obligation under the Transferred Contracts, and Celsius shall assume all obligations under the Transferred Contracts. To the extent any Transferred Contract is not an executory contract within the meaning of section 365 of the Bankruptcy Code, it shall be transferred to Celsius in accordance with the terms of the Celsius Settlement and, other than with respect to, Celsius shall have no liability or obligation for any (i) defaults or breaches under such agreement that relate to acts or omissions that occurred in the period, or otherwise arose, prior to the entry of this Order and (ii) claims, counterclaims, offsets, or defenses (whether contractual or otherwise, including, any right of recoupment) with respect to such Transferred Contract, that relate to any acts or omissions that arose or occurred prior to the entry of this Order.

35.    **Satisfaction of Conditions Precedent.**  Neither Celsius nor the Debtors shall have an obligation to consummate the Celsius Settlement until all conditions precedent in the PSA to each of their respective obligations to close the Celsius Settlement have been satisfied or waived in accordance with the terms of the Celsius Settlement.

36.    **Provisions Non-Severable.**  The provisions of this Order are non-severable and mutually dependent.

37.    **Automatic Stay.**  To the extent applicable, the automatic stay pursuant to section 362(a) of the Bankruptcy Code is hereby lifted solely for purposes of implementing the Celsius Settlement.

38.    **Miscellaneous.**  Pursuant to the Celsius Settlement, Celsius affirms that Core was contractually entitled to pass through power costs to Celsius when Core incurred higher power costs to host Celsius's mining equipment, and that Celsius had a contractual obligation to pay the "power cost pass-through" as invoiced by Core.

34

39.     This Order shall be immediately effective and enforceable upon its entry, subject in all respects to the entry of the Settlement and Purchase Order.

40.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

**Signed:  October 02, 2023.**

**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

WEIL:\99322484\11\39031.0014

United States Bankruptcy Court
Southern District of Texas

In re:

Core Scientific, Inc.

Official Committee of Unsecured Creditor

    Debtors

Case No. 22-90341-drj

Chapter 11

# CERTIFICATE OF NOTICE

District/off: 0541-4          User: ADIuser          Page 1 of 3

Date Rcvd: Oct 02, 2023          Form ID: pdf002          Total Noticed: 43

The following symbols are used throughout this certificate:

| Symbol | Definition |
|---|---|
| + | Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP. |
| ^ | Addresses marked '^' were sent via mandatory electronic bankruptcy noticing pursuant to Fed. R. Bank. P. 9036. |

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Oct 04, 2023:**

| Recip ID | | Recipient Name and Address |
|---|---|---|
| db | + | American Property Acquisition, LLC, 210 Barton Springs Road, Suite 300, Austin, TX 78704-1251 |
| db | + | American Property Acquisitions I, LLC, 210 Barton Springs Road, Suite 300, Austin, TX 78704-1251 |
| db | + | American Property Acquisitions VII, LLC, 210 Barton Springs Road, Suite 300, Austiin, TX 78704-1251 |
| db | + | Core Scientific Acquired Mining LLC, 210 Barton Springs Road, Suite 300, Austin, TX 78704-1251 |
| db | + | Core Scientific Mining LLC, 210 Barton Springs Road, Suite 300, Austin, TX 78704-1251 |
| db | + | Core Scientific Operating Company, 210 Barton Springs Road, Suite 300, Austin, TX 78704-1251 |
| db | + | Core Scientific Specialty Mining (Oklahoma) LLC, 210 Barton Springs Road, Suite 300, Austin, TX 78704-1251 |
| db | + | Core Scientific, Inc., 210 Barton Springs Road, Suite 300, Austin, TX 78704-1251 |
| db | + | RADAR LLC, 210 Barton Springs Road, Suite 300, Austin, TX 78704-1251 |
| db | + | Radar Relay, Inc., 210 Barton Springs Road, Suite 300, Austin, TX 78704-1251 |
| db | + | Starboard Capital LLC, 210 Barton Springs Road, Suite 300, Austiin, TX 78704-1251 |
| cr | | Argo Partners, 12 West 37th Street, Ste. 900, New York, NY 10018-7381 |
| trnsfee | + | B. Riley Securities, Inc., 11100 Santa Monica Blvd., Suite 800, Los Angeles, CA 90025-3979 |
| intp | + | Board of Directors of Core Scientific, Inc., c/o Peter C. Lewis, Scheef & Stone, L.L.P., 500 North Akard Street, Suite 2700, Dallas, TX 75201-3306 |
| cr | + | CRG Financial LLC, 84 Herbert Avenue, Building B, Suite 202, Closter, NJ 07624 UNITED STATES 07624-1313 |
| intp | + | Condair Inc., c/o John S. Collins, Vorys, Sater, Seymour and Pease LLP, 909 Fannin, Suite 2700, Houston, TX 77010-1009 |
| cr | + | Dalton Utilities, Howley Law PLLC, 711 Louisiana Street, Ste. 1850, Houston, TX 77002-2790 |
| cr | + | Indigo Direct Lending, LLC, c/o Ross, Smith & Binford, PC, Attn: Frances A. Smith, 700 N. Pearl Street, Suite 1610 Dallas, TX 75201-7459 |
| cr | + | J.W. Didado Electric, LLC, c/o Leonard I. Pataki, Quanta Services, 4500 S. Garnett Road, Suite 100, Tulsa, OK 74146-5221 |
| cr | + | LV.NET, LLC, 1221 S. Casino Center Blvd., Las Vegas, NV 89104, UNITED STATES 89104-1015 |
| cr | + | Maddox Industrial Transformer, LLC, c/o Mary M. Caskey, Esq., Haynsworth Sinkler Boyd, PA, PO Box 11889, Columbia, SC 29211-1889 |
| intp | + | McCarthy Building Companies, Inc., c/o Watt, Tieder, Hoffar & Fitzgerald, L, 1765 Greensboro Station Place, Suite 1000, McLean, VA 22102-3468 |
| cr | + | North Mill Equipment Finance LLC, c/o Padfield & Stout, LLP, Christopher V. Arisco, 420 Throckmorton Street, Suite 1210, Fort Worth, TX 76102-3792 |
| cr | + | Pescadero Capital, LLC, Building LAW/JB, 700 Universe Blvd, Juno Beach, FL 33408, UNITED STATES 33408-2657 |
| cr | + | Quinn Emanuel Urquhart & Sullivan, LLP, c/o Asher Griffin, 300 W 6th Street, Suite 2010, Austin, TX 78701 UNITED STATES 78701-3901 |
| cr | + | Tanmar Rentals, LLC, c/o Wells & Cuellar, P.C., 440 Louisiana Suite 718, Houston, TX 77002, UNITED STATES 77002-1058 |
| cr | + | Tenaska Power Services Co., c/o Ross & Smith, P.C., Attn: Jason Binford, 2003 N. Lamar Blvd., Suite 100 Austin, TX 78705-4932 |
| intp | + | U.S. Bank National Association, as Prepetition Not, c/o Shipman & Goodwin LLP, One Constitution Plaza, Hartford, CT 06103-1803 |
| cr | + | c/o James Bailey Esq Gaylor Electric, Inc., d/b/a, Bradley Arant Boult Cummings LLP, One Federal Place, 1819 5th Ave. N, Birmingham, AL 35203-2119 |

TOTAL: 29

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI). Electronic transmission is in Eastern Standard Time.

| Recip ID | | Notice Type: Email Address | Date/Time | Recipient Name and Address |
|---|---|---|---|---|
| cr | + | Email/Text: ahochheiser@mauricewutscher.com | | |
| | | | Oct 02 2023 20:29:00 | AmTrust North America, Inc. on behalf of Associate, c/o Maurice Wutscher LLP, 23611 Chagrin Blvd. Suite 207, Beachwood, OH 44122-5540 |
| cr | + | Email/Text: beanland@mssattorneys.com | | |

District/off: 0541-4 | User: ADIuser | Page 2 of 3
Date Rcvd: Oct 02, 2023 | Form ID: pdf002 | Total Noticed: 43

| | | | Oct 02 2023 20:29:00 | BEAM Concrete Construction, Inc., c/o Misti L. Beanland, 8131 LBJ Freeway, Suite 700, Dallas, TX 75251-1352 |
| cr | + | Email/Text: dallas.bankruptcy@LGBS.com | | |
| | | | Oct 02 2023 20:29:00 | Dallas County, Linebarger Goggan Blair & Sampson, LLP, c/o John K. Turner, 2777 N. Stemmons Freeway, Suite 1000, Dallas, TX 75207-2328 |
| cr | ^ | MEBN | | |
| | | | Oct 02 2023 20:29:16 | GEM Mining 1, LLC, c/o Evan N. Parrott, 11 North Water Street, Suite 24290, Mobile, AL 36602-5024 |
| cr | ^ | MEBN | | |
| | | | Oct 02 2023 20:29:15 | GEM Mining 2, LLC, c/o Evan N. Parrott, 11 North Water Street, Suite 24290, Mobile, AL 36602-5024 |
| cr | ^ | MEBN | | |
| | | | Oct 02 2023 20:29:14 | GEM Mining 2B, LLC, c/o Evan N. Parrott, 11 North Water Street, Suite 24290, Mobile, AL 36602-5024 |
| cr | ^ | MEBN | | |
| | | | Oct 02 2023 20:29:14 | GEM Mining 3, LLC, c/o Evan N. Parrott, 11 North Water Street, Suite 24290, Mobile, AL 36602-5024 |
| cr | ^ | MEBN | | |
| | | | Oct 02 2023 20:29:13 | GEM Mining 4, LLC, c/o Evan N. Parrott, 11 North Water Street, Suite 24290, Mobile, AL 36602-5024 |
| cr | + | Email/Text: rmcdowell@slgcollect.com | | |
| | | | Oct 02 2023 20:29:00 | Meridian Equipment Finance, LLC, c/o Saldutti Law Group, 1040 Kings Highway N., Suite 100, Cherry Hill, NJ 08034-1925 |
| cr | | Email/Text: shirley.palumbo@nexteraenergy.com | | |
| | | | Oct 02 2023 20:29:00 | NextEra Energy Resources, LAW/JB, 700 Universe Blvd., Juno Beach, FL 33408, UNITED STATES |
| cr | + | Email/Text: schristianson@buchalter.com | | |
| | | | Oct 02 2023 20:29:00 | Oracle America, Inc., Buchalter PC, c/o Shawn M. Christianson, 425 Market St., Suite 2900, San Francisco, Ca 94105-2491 |
| cr | + | Email/Text: neil.orleans@judithwross.com | | |
| | | | Oct 02 2023 20:29:00 | Tenaska Power Services Co., c/o Ross & Smith, P.C., Attn: Judith W. Ross, 700 N. Pearl Street, Suite 1610, Dallas, TX 75201-7459 |
| cr | ^ | MEBN | | |
| | | | Oct 02 2023 20:28:38 | Texas Comptroller of Public Accounts, Revenue Acco, Christopher S. Murphy, P.O. Box 12548, Austin, TX 78711-2548 |
| cr | + | Email/Text: BKECF@traviscountytx.gov | | |
| | | | Oct 02 2023 20:29:00 | Travis County, c/o Jason A. Starks, P.O. Box 1748, Austin, TX 78767-1748 |

TOTAL: 14

# BYPASSED RECIPIENTS

**The following addresses were not sent this bankruptcy notice due to an undeliverable address, \*duplicate of an address listed above, \*P duplicate of a preferred address, or ## out of date forwarding orders with USPS.**

| Recip ID | Bypass Reason | Name and Address |
|---|---|---|
| cr | | 36th Street Capital Partners, LLC |
| cr | | ABLe Communications, Inc. |
| cr | | Ad Hoc Group of Secured Convertible Noteholders |
| cr | | Anchorage Lending CA, LLC |
| intp | | B. Riley Commercial Capital, LLC |
| cr | | Barings BDC, Inc. |
| cr | | Barings Capital Investment Corporation |
| cr | | Barings Private Credit Corp. |
| cr | | BlockFi Lending LLC |
| cr | | BlockFi, Inc. and its affiliated entities |
| cr | | Bremer Bank |
| cr | | Brown Corporation Brown Corporation, 311 Pointe North Place #4, Dalton, UNITED STATES |
| cr | | Bryce Johnson |

District/off: 0541-4

Date Rcvd: Oct 02, 2023

User: ADIuser

Form ID: pdf002

Page 3 of 3

Total Noticed: 43

| | |
|---|---|
| cr | CEC Energy Services LLC |
| cr | Celsius Mining, LLC |
| intp | Centro de Investigaciones Energeticas, Medioambien |
| cr | Charles Basil |
| cr | City of Denton |
| cr | Coonrod Electric Co. LLC |
| intp | Foundry Digital LLC |
| cr | General Casualty Company of Wisconsin |
| intp | Harper Construction Company, Inc. |
| cr | Huband-Mantor Construction, Inc. |
| cr | Humphrey & Associates, Inc. |
| cr | MK Marlow Company, LLC |
| cr | MP2 Energy Texas LLC d/b/a Shell Energy Solutions |
| cr | Marnoy Interests, Ltd. d/b/a Office Pavilion |
| cr | MassMutual Asset Finance, LLC |
| cr | Mitch Edwards |
| cr | Morgan Hoffman |
| cr | NYDIG ABL LLC |
| intp | Official Committee of Equity Security Holders |
| crcm | Official Committee of Unsecured Creditors |
| cr | Prime Alliance Bank, Inc. |
| cr | Priority Power Management, LLC |
| intp | SRPF A QR Riversouth LLC |
| cr | Sphere 3D Corp. |
| cr | Summit Electric Supply Company, Inc. |
| cr | TOYOTA INDUSTRIES COMMERCIAL FINANCE INC. |
| cr | Texas Capitalization Resource Group, Inc., 5201 Camp Bowie Blvd. Suite 200, Fort Worth |
| intp | The Ad Hoc Equity Group |
| intp | Trilogy LLC |
| intp | Trinity Capital Inc. |
| cr | Wingspire Equipment Finance, LLC |

TOTAL: 44 Undeliverable, 0 Duplicate, 0 Out of date forwarding address

# NOTICE CERTIFICATION

**I, Gustava Winters, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Oct 04, 2023           Signature:        /s/Gustava Winters