**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| | § | |
| In re: | § | **Chapter 11** |
| | § | |
| **CORE SCIENTIFIC, INC.,** *et al.*, | § | **Case No. 22-90341 (DRJ)** |
| | § | |
| | § | **(Jointly Administered)** |
| Debtors.[1] | § | |
| | § | |

**DEBTORS' COMBINED (I) REPLY IN FURTHER SUPPORT OF DEBTORS'
PRELIMINARY OBJECTION TO PROOF OF CLAIM NO. 556 FILED BY MORGAN
HOFFMAN AND (II) OPPOSITION TO LEAD PLAINTIFF'S MOTION FOR CLASS
TREATMENT UNDER FED. R. BANKR. P. 7023**

Core Scientific, Inc. ("**Core**")[2] and its debtor affiliates in the above-captioned chapter 11

cases, as debtors and debtors in possession (collectively, the "**Debtors**"), herein file this combined

(i) reply in further support of *Debtors' Preliminary Objection to Proof of Claim No. 556 filed by

Morgan Hoffman* (the "**Objection**") (ECF No. 1080) and in response to the arguments raised in

Mr. Hoffman's *Preliminary Response to Debtors' Preliminary Objection to Proof of Claim No.

556* (ECF No. 1178) (the "**Response**"), and (ii) opposition to *Lead Plaintiff's Motion for Class

Treatment under Fed. R. Bankr. P. 7023* (the "**Motion**") (ECF No. 1228).[3]

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions, VII, LLC (3198). The Debtors' corporate headquarters and service address is 210 Barton Springs Road, Suite 300, Austin, Texas 78704.

[2] As discussed in the Declaration of Michael Bros in Support of the Debtors' Chapter 11 Petitions and First Day Relief, In re Core Scientific, Inc., No. 22-90341-11 (Bankr. S.D. Tex., Dec. 21, 2022) at ¶31, Dkt. No. 5, Core Scientific, Inc. changed its name to Core Scientific Operating Company in January 2022. Therefore, any claims against Core Scientific, Inc., are more properly claims against Core Scientific Operating Company. Given that the Proofs of Claim are identical, this Objection applies equally to both, and references to "Core" shall include Core Scientific Operating Company and Core Scientific, Inc. for purposes of this Objection.

[3] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Objection.

## Preliminary Statement

1.     As the Debtors' Objection demonstrated—and as Mr. Hoffman's Response and Motion fail to refute—no class proof of claim is appropriate relating to the claims Mr. Hoffman seeks to champion in these chapter 11 cases.[4]   Even assuming that a class proof of claim is permitted in the Fifth Circuit, all of the factors courts consider in deciding whether to allow a class proof of claim favor rejecting any such proof of claim here: i) there has been no certified class in the Securities Litigation; ii) the Debtors provided actual notice to all known shareholders and/or their agents, as well as constructive notice through publication—all pursuant to the approved *Order (I) Establishing Deadlines to File Proofs of Claim and (II) Approving Form and Manner of Notice Thereof* (ECF No. 652) (the "**Bar Date Order**") and the ordinary and customary noticing procedures for public securities holders in chapter 11 cases; iii) permitting a class certification process to commence now, months after the Bar Date and when the Debtors are on the cusp of soliciting a plan for confirmation after mediating a resolution with key stakeholders, would inject undue distractions and expense into these proceedings; and iv) many of the putative class members submitted their own individual proofs of claim to advance their own rights against the Debtors.

2.     In the face of these undisputed facts, Mr. Hoffman submitted a Response that is predicated on the false premise that the Debtors provided only constructive notice of the Bar Date. But the Objection and its attachments make plain that the Debtors provided actual notice to those shareholders reasonably ascertainable to the Debtors as well as actual notice to the Nominees of those shareholders, who act as agents for the shareholders.  It was only in addition to that actual

---

[4] The arguments set forth here and in the Objection apply equally to the amended proof of claim Mr. Hoffman filed after the Debtors' Objection (Claim No. 632, the "**Amended POC**"). The Amended POC simply attaches the amended complaint in the underlying Securities Litigation.

notice that the Debtors also provided publication notice in several newspapers. That entire noticing

process was clearly spelled out in the Bar Date Order, and no one objected.

3.      After filing the Response, Mr. Hoffman then filed the Motion seeking class

treatment under Rule 7023 of the Federal Rules of Bankruptcy Procedure.  But that Motion does

not change the outcome.  In fact, because the Motion hinges on the propriety of allowing a class

proof of claim in the first place, it too fails for all of the reasons stated in the Objection and

reaffirmed below.  There is thus no reason to even consider whether the elements of Rule 7023 are

satisfied—which they are not—because Mr. Hoffman cannot get passed that initial threshold issue.

4.      While the Motion should also be denied as untimely given that it was filed nearly

nine months after the Petition Date and five months after the Bar Date, it is also obvious from the

Motion that Mr. Hoffman's real objection here is with how the securities claims may be treated

under the proposed plan.  Indeed, the Motion is replete with arguments relating to whether third-

party releases are appropriate and how the claims in the Securities Litigation against non-debtors

may be impacted by the plan provisions.  While those arguments may raise plan confirmation

issues, none of them are relevant to the issue of whether a class proof of claim should be permitted

in these chapter 11 cases.  Mr. Hoffman and others who oppose the applicability and scope of any

third-party releases (or other plan provisions) will have every opportunity to raise those objections

during plan confirmation.  But those issues do not inform the court's analysis as to whether a class

proof of claim is appropriate.   For all of these reasons and those raised in the Objection and below,

Mr. Hoffman's class proof of claim should be disallowed and his Motion for class treatment should

be denied.

## Argument

### A.  Mr. Hoffman's Class Proof of Claim Fails the Applicable Legal Frameworks

5.     Mr. Hoffman's class proof of claim fails under both of the approaches courts in this Circuit apply to class proofs of claim.  As a threshold matter, there is substantial doubt whether class proofs of claim are even permissible in this Circuit, as the Fifth Circuit has not addressed the issue.  *RDMK Trowbridge v. Chesapeak Energy Corp. (In re Chesapeake Energy Corp.)*, 70 F.4th 273, 281 n.6 (5th Cir. 2023) ("This court has yet to take a position on whether a class proof of claim is available consistent with the Bankruptcy Code and Rules."); *W. Wilmington Oil Field Claimants v. Nabors Corp. Servs., Inc. (In re CJ Holding Co.)*, 27 F.4th 1105, 1118 (5th Cir. 2022) (same).  Accordingly, bankruptcy courts in this Circuit are split on how to analyze a class proof of claim.  Some courts find them impermissible under Rule 3001(b), *see Kahler v. FIRSTPLUS Fin., Inc. (In re FIRSTPLUS Fin., Inc.)*, 248 B.R. 60, 67 (Bankr. N.D. Tex. 2000), whereas others analyze them under Rules 9014 and 7023, *see In re Craft*, 321 B.R. 189, 199 (Bankr. N.D. Tex. 2005).  For the reasons discussed below, Mr. Hoffman's purported class proof of claim fails under either approach.

### 1.  Mr. Hoffman's Class Proof of Claim Fails to Comply with Rule 3001(b)

6.     Mr. Hoffman, as a class representative of an uncertified putative class, cannot submit a class proof of claim on behalf of class members who have not authorized him to act as their agent in these chapter 11 cases.  "A putative class representative is not, nor can he be transformed by the court into, an authorized agent within the purview of Bankruptcy Rule 3001(b)."  *FIRSTPLUS*, 248 B.R. at 67.  Rule 3001(b) plainly addresses "[w]ho may execute" a proof of claim.  Fed. R. Bankr. P. 3001(b).  It states that "[a] proof of claim shall be executed by

the creditor or **the creditor's authorized agent** except as provided in Rules 3004 and 3005."[5]  *Id.*
(emphasis added). As observed by the late Judge Abramson:

> [Rule 3001(b)] requires a filing by the actual creditor or relies upon an agency relationship
> between the filer and the creditor. The concept of agency is so fundamental that it barely
> requires articulation: **An agency relationship "exists only if there has been a
> manifestation by the principal to the agent** that the agent may act on his account, and
> consent by the agent to so act."[6] Or, to put it another way, "Rule 3001(b) allows a creditor
> to decide to file a proof of claim and to instruct an agent to do so; **it does not allow an
> 'agent' to decide to file a proof of claim and then inform a creditor after the fact**."

*FIRSTPLUS*, 248 B.R. at 68 (emphasis added) (quoting *Sheftelman v. Standard Metals Corp. (In
re Standard Metals Corp.)*, 817 F.2d 625, 631 (10th Cir. 1987)).  *See also In re N. Bay Gen. Hosp.,
Inc.*, 404 B.R. 443, 460 (Bankr. S.D. Tex. 2009) (alteration in original) (internal citations omitted)
(Bohm, J.) (observing that "[t]he Supreme Court's use of the term '*authorized agent*' in
Bankruptcy Rule 3001(b) indicates that the principles of agency govern whether an entity is
authorized to file proofs of claim on behalf of another" and noting that "[b]efore an agency
relationship can arise there must be a meeting of the minds in establishing the agency . . . .).

7.      Here, there is no evidence of an agency relationship between Mr. Hoffman and the
class members he purports to represent in connection with the proposed class proof of claim. While
the court in the underlying Securities Litigation may have appointed him as a class representative
on behalf of a putative class, Mr. Hoffman does not contend, nor can he, that the members of this
putative class have each manifested to Mr. Hoffman that he may act on their account in these
chapter 11 cases.  The fact that several putative class members filed their own proofs of claim
supports the conclusion that they (i) are proceeding individually, (ii) have not authorized Mr.

---

[5] Rules 3004 and 3005 are inapplicable to the instant proceeding. Rule 3004 allows the debtor or trustee to file a proof
of claim in certain circumstances in which a creditor does not timely file a proof of claim. *See* Fed. R. Bankr. P. 3004.
Rule 3005 allows any entity that is or may be jointly liable with the debtor to a creditor to file a proof of claim and
accept or reject a proposed plan in certain circumstances. *See id.* 3005.

[6] Restatement (Second) of Agency § 15 (1958).

Hoffman to act on their behalf, and (iii) do not intend to share any potential recovery on their claims with Mr. Hoffman or his counsel.[7]  Thus, under the plain requirements for filing a proof of claim under Rule 3001, Mr. Hoffman's purported class proof of claim is deficient and should be disallowed.

### 2.  The Court Should Decline to Apply Rule 7023

8.     Even if class proofs of claim were permissible in this circuit, the Court should nevertheless exercise its discretion and decline to apply Rule 7023 because none of the criteria courts have considered for allowing a class proof of claim exist here.  It is important to note in this regard that "it is within a bankruptcy court's *discretion* under Bankruptcy Rule 9014 whether to apply Rule 23 to a proof of claim." *CJ Holding Co.*, 27 F.4th at 1118 (emphasis added).  Moreover, the "concerns peculiar to bankruptcy law . . . are the appropriate bases for exercise of discretion under Rule 9014." *Craft*, 321 B.R. at 199. And, because "class certification may be 'less desirable in bankruptcy than in ordinary civil litigation,'" *In re Ephedra Prod. Liab. Litig.*, 329 B.R. 1, 5 (S.D.N.Y. 2005) (internal citations omitted), courts consider various factors in determining whether to allow a class proof of claim.

9.     The court in *Craft* identified these factors to include (i) "prejudice to the debtor or its other creditors," (ii) "prejudice to putative class members," (iii) "efficient estate administration," (iv) "the conduct in the bankruptcy case of the putative class representatives," and (v) "the status of proceedings in other courts." *Craft*, 321 B.R. at 199.  In *Craft*, the court declined to exercise its discretion under Rule 9014 to apply Rule 7023 because, *inter alia*, the chapter 11 cases were at a critical juncture and conducting a Rule 7023 hearing would delay the plan and

---

[7] The Debtors reserve all of their objections, rights and contentions with respect to the merits of all of these claims.

claim objection process; the debtors' case was well-publicized and notice had been published; and the putative class representatives waited too long to seek invocation of Rule 7023. *Id.*

10. Most relevant here, and despite Mr. Hoffman's arguments to the contrary, the Debtors adhered to the noticing procedures adopted by this Court and provided sufficient and appropriate notice to putative class members that allowed them to decide for themselves whether to pursue their claims against the Debtors based on the Securities Litigation or otherwise. Not only did class members receive direct notice to themselves if they were reasonably ascertainable by the Debtors, but they also received direct notice through their authorized agent Nominees. In addition, and as a final failsafe, Debtors provided constructive notice through publication, consistent with the Bar Date Order. *See* Objection ¶¶ 8–9; *infra* section B.

11. Moreover, like in *Craft*, if the Court were to conduct a Rule 7023 hearing, which it should not, substantial prejudice would befall the Debtors and their creditors in these chapter 11 cases. *See id.* These cases are presently at a critical juncture on the verge of plan confirmation proceedings after months of hard fought mediated negotiations with key stakeholders. Accordingly, conducting a Rule 7023 briefing and hearings would be an expensive distraction from this progress and would prejudice Debtors and their creditors as a whole.

12. Finally, Mr. Hoffman also concedes that his underlying action is in its infancy—at the pleadings stage with a motion to dismiss pending. This is yet another factor in favor of disallowing a class proof of claim here and denying the Motion. *See Craft*, 321 B.R. at 199.

13. Authority from other circuits provides additional guidance on the Court's exercise of discretion under 9014 and confirms that no class proof of claim should be allowed. For example, *In re Musicland Holding Corp.* instructs that courts should also consider whether (1) "the class was certified pre-petition," (2) "the putative class members received actual or constructive notice"

of the bar date, and (3) "class certification will adversely affect the administration" of the estate. 362 B.R. 644, 650 (Bankr. S.D.N.Y. 2007).  As discussed above, it is undisputed that the putative class was not certified pre-petition, and that putative class members received both actual and constructive notice of the Bar Date. It is also the case that undertaking class certification at this juncture of these chapter 11 cases would be an unwarranted distraction. Accordingly, the Court should exercise its discretion and decline to apply Rule 7023.

**B.  Debtors' Notice to Class Members was Sufficient**

14.     Central to Mr. Hoffman's Response, and repeated in the Motion, is his argument that the Debtors' notice procedure was purportedly inadequate because it constituted publication notice and not direct notice.  *See* Response, at 7–9; Motion, at 5–6, 12, 20–26.[8] But this is a strawman argument that ignores reality.  As an initial matter, if Mr. Hoffman believed the notice procedures were inadequate, the time to object to them was before the Bar Date Order was entered, not after the fact and some five months later.  In any event, Debtors did not rely on publication notice as the primary means for providing notice of the Bar Date.  Rather, service of the Bar Date Notice and Proof of Claim form (the "**Notice Materials**") on holders of Debtors' securities followed ordinary and customary noticing procedures for the noticing of public securities holders in a chapter 11 case.  *See* Fed. R. Bankr. P. 2002.

15.     Specifically, Pursuant to the Bar Date Order, Debtors' noticing and claims agent, Stretto, served the Notice Materials *directly* on: all parties to the Securities Litigation, Bar Date Order ¶ 16(f), all known non-Debtor equity and interest holders of the Debtors as of the date of the Bar Date Order, *id.* ¶ 16(j), and all banks, brokers, and financial institutions (or their agents) that might have purchased equity securities in "street name" on behalf of beneficial owners of

---

[8] Page references are to the docketed page numbering at the top of the respective pleadings.

securities during the period January 3, 2022 through December 21, 2022 (the "**Nominees**"), *id.* ¶ 17. This constitutes more than adequate notice. *See, e.g.*, *Williams v. Placid Oil Co. (In re Placid Oil Co.)*, 753 F.3d 151, 154, 157 (5th Cir. 2014) (holding "[a]ctual notice is required only for 'known' creditors," which includes those "actually known" and those "reasonably ascertainable" to the debtor); *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1098 (5th Cir. 1977) (observing that notice to class members is adequate if mailed to "the last known address of those class members who can be identified with reasonable effort").

16.     Moreover, the Notice Materials, among other things, advised securities holders of the pending Chapter 11 proceedings and underlying Securities Litigation, and provided instructions on how to file a proof of claim.     Further, and pursuant to the Bar Date Order, Nominees were instructed to either (1) request sufficient copies of the Notice Materials from the Debtors so that the Nominees could forward the materials to their beneficial owners, or (2) ask Stretto to provide the Notice Materials to their beneficial owners directly by providing Stretto with their names and addresses. Bar Date Order ¶ 17(a). This type of notice is consistently endorsed by courts in this Circuit. *See, e.g.*, *Newby v. Enron Corp. (In re Enron Corp. Sec., Derivative & ERISA Litig.)*, 2008 WL 4178151, at *5 (S.D. Tex. Sept. 8, 2008) (upholding notice program where court instructed nominees to notify their beneficial owners or provide a list of beneficial owners' names and addresses to claims administrators, who would send notice); *Schwartz v. TXU Corp.*, 2005 WL 3148350, at *11, 23 (N.D. Tex. Nov. 8, 2005) (upholding notice program where notice was disseminated by first-class mail to all class members identified by reasonable effort, including those requested from nominees, and was supplemented by publication on settlement administrator's website and by broad publication in a national newspaper); *In re Waste Mgmt., Inc. Sec. Litig.*, 2002 WL 35644013, at *10–11 (S.D. Tex. May 10, 2002) (approving notice

procedure where notice was disseminated to last-known address of each reasonably identifiable class member and in response to requests from, *inter alia*, nominees).[9]

17.    Furthermore, on March 15, 2023, Debtors filed a copy of the Notice Materials on the docket of the underlying Securities Litigation.  *See Pang v. Levitt*, No. 1:22-CV-1191-DAE, ECF No. 51 (W.D. Tex. filed Nov. 14, 2022).  All of this by itself was sufficient direct notice to each of the putative class members.  But, as a measure of belts and suspenders, the Debtors also provided constructive notice for claimants or Nominees not known to them, consistent with the Bar Date Order, through publication in the *Austin American Statesman*, *Cherokee Scout*, *Dalton Daily Citizen*, *Denton Record Chronicle*, *Grand Forks Herald*, *Muskogee Phoenix*, *Odessa American*, *Pecos Enterprise*, *The Lake News*, and *The Wall Street Journal National Edition*. *See* Bar Date Order ¶ 20; Affidavits of Publication, March 21, 2023. (ECF No. 716); *Placid Oil*, 753 F.3d at 158 (citing *La. Dep't of Env't Quality v. Crystal Oil Co. (In re Crystal Oil Co.)*, 158 F.3d 291, 295, 297–98 (5th Cir. 1988)) ("[W]e have determined that publication in the national edition of the *Wall Street Journal* discharges the pre-confirmation claims of unknown creditors.") (emphasis in original).

18.    Thus, not only did these notice procedures include both direct and constructive notice, but each of these notice procedures were approved and ordered by this Court, without objection. Tellingly, numerous putative class members filed proofs of claim following this notice process.[10]  Altogether, this is more than sufficient notice that would allow each putative class

---

[9] *See also Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993) (holding notice to "street name" shareholders was adequate because "the question . . . is not whether some individual shareholders got adequate notice, but whether the class as a whole had notice adequate to flush out whatever objections might reasonably be raised . . ."); *DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935, 946–47 (10th Cir. 2005) (upholding notice program where portion of notice packages "were sent in bulk to nominees (for the nominees to forward on to their clients" because this was "sufficient to flush out any objections that might arise to the fairness of the settlement").

[10] *See* e.g., Proof of Claim Nos. 52, 54, 81, 82, 87, 94, 108, 116, 124, 126, 127, 138, 153, 155, 157, 174, 179, 202, 207, 208, 221, 236, 241, 315, 344, 345, 346, 351, 354, 355, 384, 489, 591, 610, 1616.

member to make their own decisions on how to proceed.  *See Musicland*, 362 B.R. at 654 ("[I]f the putative unnamed class members have clearly received actual or constructive notice of the bankruptcy case and the bar date, denial of the . . . class proof of claim device appears advisable.") (quoting *In re Sacred Heart Hosp. of Norristown*, 177 B.R. 16, 22 (E.D. Pa. 1995)); *Chemetron Corp. v. Jones*, 72 F.3d 341, 346 (3d Cir. 1995) (observing that a debtor "does not have a 'duty to search out each conceivable or possible creditor and urge that person or entity to make a claim against it.'") (citations omitted).[11]

### C. Mr. Hoffman's Further Arguments Lack Merit

#### 1. Mr. Hoffman's Response

19.     Mr. Hoffman raises several additional arguments in an attempt to salvage his deficient class proof of claim, but none of them change the outcome.  First, in his Response, he argues that because his appointment as lead plaintiff of a putative class empowers him to assert and settle claims on behalf of the putative class, he should be allowed to file a class proof of claim in these chapter 11 cases.  *See* Response, at 5.  Mr. Hoffman is incorrect.  As discussed above, Mr. Hoffman's status as lead plaintiff of the putative class in the Securities Litigation does not give rise to an agency relationship as required under Rule 3001(b) that would authorize him to file proofs of claim on behalf of other claimants in these chapter 11 cases.  Even overlooking this critical deficiency, the Rule 9014 *Craft* factors (and those applied by other courts) strongly weigh against applying Rule 7023 because Mr. Hoffman's purported class is not certified, class members have received appropriate notice pursuant to the Bar Date Order (with many having filed their own

---

[11] The notice procedures here are also consistent with the Seventh Circuit's remand instruction in *In re Am. Rsrv. Corp.*, 840 F.2d 487, 493–94 (7th Cir. 1988), a case relied on by Mr. Hoffman. *See* Motion, at n.4.

proofs of claim), and proceeding with Rule 7023 would distract and prejudice the Debtors and their stakeholders as these cases head to plan confirmation.

20.      Second, Mr. Hoffman contends there is no authority that requires a PSLRA Lead Plaintiff to have a certified class in order to submit a class proof of claim in a bankruptcy proceeding.  *See* Response, at 6.  Mr. Hoffman misconstrues the law on this point.  He cites *Craft* for the proposition that class proofs of claim are allowed in bankruptcy.  However, his analysis of *Craft* stops there.  As discussed, the *Craft* court ultimately declined to exercise its discretion under Rule 9014 to proceed with the class proof of claim under Rule 7023.  Thus, while *Craft* observed that class proofs of claim *may* proceed under certain circumstances, the *Craft* court ultimately declined to allow the class proof of claim to proceed based on the factors cited above.

21.      Other than *Craft*, which does not favor Mr. Hoffman's arguments, Mr. Hoffman cites no Fifth Circuit authority in support of his argument that the Court should allow his class proof of claim.  Mr. Hoffman contends the cases relied on by Debtors are purportedly not persuasive because they did not specifically involve a PSLRA class plaintiff.  However, Mr. Hoffman fails to articulate why this distinction matters, since a PSLRA class plaintiff is only one of many types of class plaintiffs subject to Rule 7023, and the cases make no special exception for securities cases.

22.      Mr. Hoffman further contends that prior class certification is not necessary for a class proof of claim to proceed in bankruptcy court. *See* Response, at 6–7.[12] But it is clear that whether a certified class already exists is one of the central factors courts consider in exercising discretion on whether to allow a class proof of claim, as discussed above.  Moreover, all of the cases Mr. Hoffman relies on are from outside the Fifth Circuit and are materially distinguishable

---

[12] *See also* Motion, at 26–27.

or involve clear disagreement with Fifth Circuit precedent. *See In re F-Squared Inv. Mgmt., LLC*, 546 B.R. 538, 546 (Bankr. D. Del. 2016) (involving class proofs of claim filed post-confirmation against liquidating trust established in debtors' chapter 11 case); *Schuman v. Connaught Grp., Ltd. (In re Connaught Grp., Ltd.)*, 491 B.R. 88, 91 (Bankr. S.D.N.Y. 2013) (applying Rule 7023 in context of an adversary proceeding, not in analyzing a class proof of claim); *In re Kaiser Grp. Int'l, Inc.*, 278 B.R. 58, 62–63 (Bankr. D. Del. 2002) (explicitly rejecting approach taken by Fifth Circuit bankruptcy court in *FIRSTPLUS*) (internal citations omitted); *In re MF Glob. Inc.*, 512 B.R. 757, 768 (Bankr. S.D.N.Y. 2014) (acknowledging that "[c]lass claims should be used sparingly in bankruptcy" and applying the *Musicland* factors to determine whether to allow a class proof of claim); *In re CommonPoint Mortg. Co.*, 283 B.R. 469, 473 (Bankr. W.D. Mich. 2002) (involving class proof of claim asserted against a chapter 7 debtor and thus involving different considerations from that of a chapter 11 debtor); *In re First All. Mortg. Co.*, 269 B.R. 428, 442–43, 447–48 (C.D. Cal. 2001) (observing that the Ninth Circuit has held that class proofs of claim are allowed in bankruptcy proceedings).

23.    Conspicuously absent from the Response is any argument or citation to any case that supports a conclusion for allowing a class proof of claim to proceed in these chapter 11 cases given the notices provided, the fact that claimants have shown an ability to act in their own interests and file their own proofs of claim, and the negative impact that any class proof of claim (and its attendant process) would have on these proceedings. Mr. Hoffman's invitation to this Court to ignore the tried and true proof of claim process so that he and his counsel can purport to act on behalf of a putative class of claimants should be rejected and his class proof of claim disallowed.

2.   <u>Mr. Hoffman's Motion</u>

24.     As noted above, the central theme of the Motion appears to be that Mr. Hoffman objects to Core's plan and proposed third-party releases.  Indeed, the Motion devotes several pages trying to convince the Court that the plan is unconfirmable.  *See e.g.,* Motion, at 10–12, 15–18. But none of these arguments are relevant to the issue of whether the Motion should be granted.  As relevant to that issue, Mr. Hoffman doubles down on his notice argument and contends that class members will be prejudiced if the Court declines to apply Rule 7023 because (according to him) some claimants may have been unaware of Core's chapter 11 case, the underlying Securities Litigation, and the consequences of their failure to file a proof of claim.  *See* Motion, at 20–21.

25.     Even assuming these assertions were true, and there is nothing in the Motion to support them, to accept Mr. Hoffman's reasoning would mean that virtually every denial of a class proof of claim would result in prejudice because in every class action presumably ***some*** class members may not have received notice.  But such reasoning is flawed, and is not a basis for allowing a class proof of claim, because perfect notice is neither feasible nor required.  *See, e.g.*, *Abboud v. Agentra, LLC*, No. 19-cv-00120-BS-X, 2021 WL 1380428, at *2 (N.D. Tex. April 12, 2021) (observing that "the Federal Rules do not require perfect notice," but "demand 'the best notice that is practicable under the circumstances.'").  The Bankruptcy Rules and Bankruptcy Code do not place the burden on Debtors to show that all creditors received notice. Debtors only need show they provided actual notice to known creditors and constructive notice by publication to unknown creditors. *Placid Oil*, 753 F.3d at 154–55.

26.     Additionally, the Debtors are unaware of any legal authority requiring a bar date notice to mention that the debtor may object to a class proof of claim, as Mr. Hoffman asserts was apparently necessary.  *See* Motion, at 26.  In fact, the Fifth Circuit has rejected any requirement of

14

claim-specific notice.  *See*, *e.g.*, *Placid Oil.*, 753 F.3d at 158 ("We have never required bar date notices to contain information about specific potential claims. . . .   Furthermore, neither the Bankruptcy Code nor Rules require bar date notices to apprise creditors of potential claims.").

27.     For the reasons discussed *supra* section B, the notice provided to class members in this action was appropriate.  And, even assuming for the sake of argument that some class members did not receive notice, there are mechanisms for them to present late claims, if appropriate.  *See, e.g.*, *CJ Holding Co.*, 27 F.4th at 1112 (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)) (discussing test for excusable neglect in analyzing motion for leave to file late proofs of claim) and Fed. R. Bankr. P. 9006(b). Ultimately, any purported prejudice to the hypothetical class members who may not have received notice would be substantially outweighed by the prejudice that would befall the Debtors and the other stakeholders if a class certification process were undertaken.

28.     Mr. Hoffman also argues that invoking Rule 7023 will not prejudice Debtors or other creditors because it will essentially save the parties' time in reviewing numerous individual proofs of claim and will promote the efficient administration of the estate and streamline the claims resolution process. *See* Motion, at 21–23. Mr. Hoffman has it backwards.  The point of the Bar Date was to enable the Debtors to ascertain the scope and number of claims against them.  That process was followed by numerous claimants who filed individual proofs of claim, including those predicated on securities claim allegations.  The Debtors know how many claims there are, and they will be addressed in the normal course of claims reconciliation.  Indeed, resolving these proofs of claim is no extraordinary task, as any complex Chapter 11 proceeding typically involves hundreds, if not thousands, of proofs of claim.  In contrast, allowing a class proof of claim would have the opposite effect because the Debtors will no longer know the number of claims they are addressing.

In addition, conducting class certification discovery, briefing, and argument will create significant distractions, cause the Debtors to incur substantial expense, and undermine the very purpose of the proof of claim and Bar Date process.

29.    Contrary to Mr. Hoffman's contention, therefore, granting the Motion would undoubtedly "gum up the works" especially given its timing.  Mr. Hoffman recognizes that motions like his need to be "filed early in the proceedings so as to avoid improperly affecting the chapter 11 process." *See* Motion, at 22.  But he did not do that.  Instead, his Motion was filed on September 14, 2023, nearly nine months after the December 21, 2022 Petition Date and five months after the Bar Date. At this stage, the Debtors and other creditors are on the verge of plan solicitation and a confirmation hearing.  Allowing a class proof of claim at this time and proceeding with a class certification process would almost assuredly "gum up the works" and cause distraction and expense. In *Ephedra*, 329 B.R. at 5, the court observed that "since class litigation is inherently more time-consuming than the expedited bankruptcy procedure for resolving contested matters, class litigation would have to be commenced at the earliest possible time to have a chance of being completed in the same time . . . ."  The *Ephedra* court determined that it was "simply too late in the administration of [the] Chapter 11 case to ask the Court to apply Rule 23 to the class proofs of claim." *Id.* The same is true here.

30.    Equally flawed is Mr. Hoffman's suggestion that if the Court rejects his class proof of claim, the Court would necessarily have to re-open the Bar Date.  *See* Motion, at 17. This argument fails for several reasons.  First, and dispositive, if the Court denies the Motion—which it should—it would necessarily have concluded that the notice provided to class members was appropriate, that they are bound by the Bar Date, and that they should have filed individual proofs of claim if they intended to recover against the Debtors.  Second, in addition to being out-of-circuit

decisions, none of the authorities Mr. Hoffman cites support the proposition he presents under the facts of these chapter 11 cases. For example, unlike here, *Musicland* presumed class members did not receive adequate notice. *See Musicland*, 362 B.R. at 657 ("In the event that [debtor] failed to provide publication notice in accordance with the Bar Date Order, the Court can direct publication and extend the bar date for those creditors . . . ."). In *Connaught,* the claimant filed an adversary proceeding asserting class allegations a mere five days after the petition date, and the parties also separately previously agreed to extend the bar date for filing WARN Act Claims. *See Connaught*, 491 B.R. at 92–93, 97–98. Finally in *Pacific Sunwear*, a class had been certified pre-petition but did not capture the entire relevant period. The court therefore permitted those claimants outside the period to file late proofs of claim in connection with their wage and hour claims. *See In re Pacific Sunwear of Ca., Inc.*, 2016 WL 4250681, at *14 (D. Del. Aug. 8, 2016).

31.     Separately, other courts have refused to extend the bar date even when denying a class proof of claim.  *See, e.g.*, *Reid v. White Motor Corp.*, 886 F.2d 1462, 1472 & n.14 (6th Cir. 1989) (holding bankruptcy court did not abuse its discretion by declining to extend the bar date to allow purported class members to file individual proofs of claim) and *In re WorldCom, Inc.*, 2004 WL 7321972, at *6 (Bankr. S.D.N.Y. Dec. 28, 2004) (denying class certification and rejecting class claimant's request to extend bar date for class claimants who did not submit individual proofs of claim because "[a]ny individual that believes that he or she did not receive adequate notice may apply for leave under Bankruptcy Rule 9006(b) to file a late proof of claim").  Moreover, the Debtors would be prejudiced by re-opening the Bar Date to allow claimants, who should have filed claims by the Bar Date, to have a second bite at the apple because the Debtors would then potentially need to address more claims than they previously believed existed. This would result

in increased potential exposure and increased costs in having to send out further Bar Date notices on the eve of soliciting a plan for confirmation.

32.     Mr. Hoffman is also wrong in claiming that his Motion presents no timing or ripeness issues. *See* Motion, at 24–25. As noted above, it is beyond question that Mr. Hoffman's Motion, which was filed nine months after the petition date and five months after the Bar Date, is untimely. In fact, given that he was the Lead Plaintiff—as he repeatedly extols—nothing stopped him from filing the Motion at the outset of these cases, and certainly before the Bar Date. Mr. Hoffman's suggestion that he needed to wait for Debtors to object to his class proof of claim before moving for class treatment, *see id.* at 24, lacks supporting legal authority. In fact, the court in *Craft* found that the putative class representative waited too long to seek invocation of Rule 7023 and rejected the notion that a claimant must await an objection to a class proof of claim to invoke 7023. *Craft*, 321 B.R. at 199. *See also In re USA Gymnastics*, 2020 WL 1932340, at *3 (S.D. Ind. April 20, 2020) (citing *Am. Reserve*, 840 F.2d at 488) (observing that "a majority of courts reject the notion that class claimants must wait for an objection before they can move for application of Rule 7023" and holding the class claimants at bar did not have to "wait for an objection to ask for application of Rule 7023"); *Lucas v. Dynegy, Inc. (In re Dynegy, Inc.)*, 770 F.3d 1064, 1068 (2d Cir. 2014) (rejecting argument that class representative in securities action could not file Rule 7023 motion until his proof of claim became a "contested matter"); and *Musicland*, 362 B.R. at 651 (rejecting approach taken by Eleventh Circuit in *Charter* and observing that "[o]ther courts have taken the more practical view" that class claimants need not wait for an objection to move under Rule 7023).

**D.  Mr. Hoffman's Class Proof of Claim Fails to Satisfy Rule 23**

33.     Given that Mr. Hoffman cannot clear the first hurdle of invoking Rule 7023 for all

of the reasons stated above and in the Objection, there is no reason for the Court to reach the second

issue of whether a class should be certified.  Indeed, to do so would prejudice the Debtors and

potentially impact the plan or claim process.  *See Craft*, 321 B.R. at 198–99. In any event, even

from a cursory review, the Motion fails on that prong too.[13]

34.     The party seeking class certification bears the burden of proof on whether or not to

certify the class.  *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir.1996).  Mr. Hoffman

cannot carry this burden. Rule 23, made applicable here by Bankruptcy Rule 7023, establishes four

threshold requirements for the certification of a class, each of which must be satisfied in order for

a case to proceed as a class action.  *Durrett v. John Deere Co.*, 150 F.R.D. 555, 557 (N.D. Tex.

1993).   These requirements are numerosity, commonality, typicality, and adequacy of

representation.  Fed. R. Civ. P. 23(a).  The Court must conduct a rigorous analysis of these

requirements before certifying a class.  *Castano*, 84 F.3d at 740.  In addition to the initial

requirements laid down in Rule 23(a), the class must also meet at least one of the requisites laid

down in Rule 23(b).  *FIRSTPLUS*, 248 B.R at 74.

35.     In order to satisfy the numerosity requirement, class claimants must show that the

class is so numerous that joinder of all members is impracticable.  Fed. R. Civ. P. 23(a)(1).  In

considering the number of claimants in connection with whether the numerosity requirement has

been met, courts exclude claimants who received actual or constructive notice of the claims bar

date and did not file proofs of claim by that deadline.  *See, e.g.*, *FIRSTPLUS*, 248 B.R. at 74

---

[13] To the extent the court determines to undertake this analysis and consider whether a class should be certified, the Debtors reserve all of their objections, rights, and contentions in connection therewith.

("While the Plaintiffs argue that 30,000 potential class members is sufficiently numerous, this Court finds that, given that each of those 30,000 person received actual and constructive notice of the Claims Bar Date, 30,000 is not the appropriate number to look at in determining numerosity. Those parties who did not file proofs of claim prior to the Claims Bar Date are barred and have no claim."). Considering that the number of securities claimants who filed proofs of claim prior to the Bar Date does not appear to be substantial, *see supra* at note 10, Mr. Hoffman cannot satisfy the numerosity requirement under Rule 23(a).

36.     Mr. Hoffman also cannot establish commonality. Mr. Hoffman's underlying claims under the Securities Act are "grounded in fraud rather than negligence." *Kurtzman v. Compaq Comput. Corp.*, 2000 WL 34292632, at *61 (S.D. Tex. Dec. 12, 2000). Indeed, the Amended Class Action Complaint (the "**Complaint**") allege that Defendants knew, but failed to disclose, that Core's power costs were increasing and that they sought to pass those costs onto their customers in contravention of their "fixed rate" contracts. *See* Complaint ¶¶ 112-32. Class actions sounding in fraud "cannot be certified when individual reliance will be an issue." *FIRSTPLUS*, 248 B.R. at 75 (quoting *Castano*, 84 F.3d at 745). As the court in *FIRSTPLUS* explained, "[e]ach of these putative class members will have to prove the particular way in which they were defrauded and, more importantly, will have to prove their reliance upon that fraud." *Id.* Because there is no proof of common reliance on the alleged fraudulent representations that were made to the putative class members, there is no commonality here.

37.     For the same reasons that commonality is not present, there is no typicality. Various types of reliance on the alleged fraud will require individual analysis, and each party's fraud may be unique to themselves alone. "Unique claims are not typical claims and, therefore, typicality does not exist." *Id.*

38.     The Court need not consider the "adequacy of representation" factor because Mr. Hoffman cannot satisfy any of the other three requirements of Rule 23(a), nor the requirements of Rule 23(b).  Mr. Hoffman's failure to satisfy *any one* of the requirements of Rule 23(a) would be sufficient grounds to deny class certification under Rule 23.

## <u>Conclusion</u>

For the reasons stated above and in the objection, the Debtors respectfully request that this Court sustain Debtors' Objection, deny Mr. Hoffman's Motion, and grant any appropriate relief as the Court deems fit.

Dated: October 5, 2023
Houston, Texas

*/s/ Alfredo R. Pérez*
WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (15776275)
Clifford W. Carlson (24090024)
700 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone:     (713) 546-5000
Facsimile:     (713) 224-9511
Email: Alfredo.Perez @weil.com
           Clifford.Carlson@weil.com
-and-

WEIL, GOTSHAL & MANGES LLP
Ray C. Schrock (admitted *pro hac vice*)
Ronit J. Berkovich (admitted *pro hac vice*)
Theodore E. Tsekerides (admitted *pro hac vice*)
Christine A. Calabrese (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone:     (212) 310-8000
Facsimile:     (212) 310-8007
Email: Ray.Schrock@weil.com
           Ronit.Berkovich@weil.com
           Theodore.Tsekerides@weil.com
           Christine.Calabrese@weil.com

*Counsel for Debtors and Debtors in Possession*

21