IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | § § | Chapter 11 |
| CORE SCIENTIFIC, INC., *et al.,* | § § § | Case No. 22-90341 (DRJ) |
| Debtors.[1] | § § § § | (Jointly Administered) (Emergency Hearing Requested) |

**DECLARATION OF MICHAEL BROS IN
SUPPORT OF DEBTORS' SUPPLEMENT AND REQUEST
FOR EMERGENCY RELIEF WITH RESPECT TO MOTION OF DEBTORS
FOR AUTHORITY TO ENTER INTO LEASE AND RELATED AGREEMENTS**

I, Michael Bros, pursuant to section 1746 of title 28 of the United States Code, hereby declare under penalty of perjury that the following is true to the best of my knowledge, information, and belief:

1. I am the Senior Vice President of Capital Markets & Acquisitions at Core Scientific, Inc. ("**Core**", and together with its debtor affiliates in the above-captioned chapter 11 cases, the "**Debtors**"). I have served in this capacity since January 2022. Before that, starting in December 2018, I was Core's Vice President of Corporate Development. Prior to joining Core, I held various positions at Kayne Anderson from 2014 to 2018 and Merrill Lynch from 2011 to 2014. I hold a Bachelor of Arts from the University of Saint Thomas and a Master in Business Administration from the University of California, Los Angeles Anderson School of Management.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions VII, LLC (3198). The Debtors' corporate headquarters and service address is 210 Barton Springs Road, Suite 300, Austin, Texas 78704.

2. I submit this declaration in support of the *Supplement and Request for Emergency Relief With Respect to Motion of Debtors for Authority to Enter Into Lease and Related Agreements* (Docket No. 1301) (the "**Supplement**") and the *Motion of Debtors for Authority to Enter Into Lease and Related Agreements*, dated September 23, 2023 (Docket No. 1260) (the "**Motion**").[2] Except as otherwise stated in this declaration, I have personal knowledge of or have relied upon the knowledge of others employed by the Debtors or their advisors with respect to the matters set forth herein. If called to testify, I could and would testify competently to the facts set forth herein.

3. I am familiar with the Cottonwood Facility, which is comprised of the Cottonwood I Property and the Cottonwood II Property, and Cottonwood II Agreements and believe that entry into the Cottonwood II Agreements is in the Debtors' best interest and represents a sound exercise of the Debtors' business judgment.

## The Mining Operations

4. The Debtors operate a bitcoin mining company which mines digital assets for its own account ("**Self-Mining**") and hosts miners for third-party customers ("**Hosting Operations**" and, together with Self-Mining, collectively, "**Mining Operations**"). Mining Operations are performed by specialized computers, or "miners", which power and secure blockchains by solving complex cryptographic algorithms to validate transactions on specific digital asset networks. Notably, Mining Operations require massive amounts of computing power and energy. As a bitcoin mining company, the Debtors are heavily dependent on electricity to operate the computing power necessary to sustain Mining Operations.

---

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Supplement or Motion.

5. The Debtors have developed significant electrical infrastructure (including the Cottonwood Substation, which is located on the Cottonwood I Property) at the Cottonwood Facility, which has, as of the date hereof, been approved by the Electric Reliability Council of Texas and Texas New Mexico Power Company to receive 234 megawatts of energy from the electrical grid. The Cottonwood Substation, in turn, powers Mining Operations at the Cottonwood Facility.

6. Electricity is distributed from the electrical grid to the Cottonwood Substation through the Transmission Line which runs across the Transmission Easement Area that is owned by Landlord. Electricity is transmitted from the Cottonwood Substation to the Cottonwood I Property through the Transmission Line which runs across the Transmission Easement Area.

## The Cottonwood II Agreements

7. In early 2022, in connection with the development of the Cottonwood Facility on the Cottonwood I Property, the Debtors approached Landlord to procure the Transmission Easement Agreement in order to run the Transmission Line across the Transmission Easement Area. Landlord informed the Debtors that Landlord would enter into the Transmission Easement Agreement with Core if Core also entered into (i) the Cottonwood II Lease for the Cottonwood II Property (to be memorialized by the Cottonwood II Memo of Lease), which would give the Debtors the option of further expanding their operations at the Cottonwood Facility to include additional Mining Operations on the Cottonwood II Property, (ii) the Distribution Easement Agreement, pursuant to which the Debtors would distribute energy through the Distribution Line from the Cottonwood Substation to the Cottonwood II Property, and (iii) the

Road Access Easement Agreement, pursuant to which the Debtors would be given their sole means of ingress to, and egress from, the Cottonwood II Property.

8. During the course of negotiations for the Cottonwood II Agreements, Landlord and Core entered into (i) that certain Memorandum of Surface Lease Agreement, dated April 21, 2022 (the "**Existing Memo**") and (ii) that certain Transmission Easement Agreement, dated June 14, 2022 (the "**Existing Transmission Easement**"). In anticipation of entering into the Cottonwood II Lease, the Distribution Easement Agreement, and the Road Access Easement Agreement, and in reliance on the Existing Memo and the Existing Transmission Easement, Core performed work (the "**Development Work**") to install, and began using, the Transmission Line and the Distribution Line and to develop the Cottonwood II Property.

9. In connection with the Development Work, certain contractors and subcontractors of the Debtors filed mechanics' liens encumbering the Cottonwood II Property (the "**Cottonwood II Liens**"). In addition, certain other contractors and subcontractors of the Debtors and/or other parties asserting claims against the Debtors (collectively, the "**Lienholders**") have filed liens, lien claims, and lien affidavits (the "**Other Liens**" and, together with the Cottonwood II Liens, collectively, the "**Existing Liens**") encumbering the Cottonwood II Property, the Easement Areas, and other property owned by Landlord in Reeves County, Texas ("**Landlord's Other Property**"). **Exhibit B** attached to the Motion, sets forth the Existing Liens which Landlord and the Debtors identified as of the date of the Motion. Following the entry into the Cottonwood II Agreements, the Debtors have obtained lien waivers and releases from the Lienholders of each of the Existing Liens set forth on Exhibit B attached to the Motion.

10. After arm's-length negotiations, and subject to this Court's approval, the Debtors have reached an agreement with the Landlord over the terms of the Cottonwood II

4

Agreements. The principal terms and conditions of the Cottonwood II Agreements are set forth below:[3]

| Term | Description |
|---|---|
| **Cottonwood II Property** | Address: 1939 FM 2119, Pecos, TX 79772 |
| **Lease Term** | 99 years, commencing on the date on which the Consideration is received by Landlord. |
| **Rent/Consideration** | The Consideration, payable by Core within two business days following the entry of the Proposed Order, in satisfaction of all rent payable under the Cottonwood II Lease for the duration of the term of the Cottonwood II Lease and all consideration payable under the Access Easement Agreement, the Distribution Easement Agreement, and the Transmission Easement Agreement. |
| **Restrictions on Assignment** | Core has the unrestricted right to assign and transfer the Cottonwood II Lease to whomever Core in its sole discretion deems appropriate; provided, however, (a) in no event shall any assignment or transfer result in more than two persons or entities having a direct interest in the Cottonwood II Lease or the facilities at any given time, and (b) Core and the assignee shall be jointly and severally liable for Core's obligations under the Cottonwood II Lease following any such assignment or transfer except in the case of any assignment or transfer of Core's entire interest in the Cottonwood II Lease as to which Landlord approves the proposed assignee in writing, which Landlord approval is not to be unreasonably withheld. Landlord may withhold its approval in its sole discretion if, in Landlord's sole but good faith and reasonable judgment, the proposed assignee (1) does not have substantial experience owning and operating projects similar to the facilities and does not hire a third party who has such experience to operate the facilities (provided that clause (1) of this proviso shall be deemed satisfied if the Bankruptcy Court finds that such proposed assignee has (A) substantial experience owning and operating projects similar to the facilities or (B) hired a third party to operate the facilities who has substantial experience operating projects similar to the facilities) or (2) does not have sufficient creditworthiness or financial standing to perform the obligations under the Cottonwood II Lease that are to be assumed by such proposed assignee (provided that clause (2) of this proviso shall be deemed satisfied with respect to any proposed assignee under any |

---

[3] This summary is qualified in its entirety by reference to the applicable provisions of the Cottonwood II Agreements. To the extent there exists any inconsistency between this summary and the provisions of the Cottonwood II Agreements, the provisions of the Cottonwood II Agreements shall control. Any capitalized terms used but not otherwise defined in these summaries shall have the respective meanings ascribed to such terms in the Cottonwood II Agreements.

| Term | Description |
|---|---|
| | assignment by Core of Core's entire interest in the Cottonwood II Lease).  (Cottonwood II Lease) |
| Insurance | With respect to the Easement Areas, Core must maintain the following insurance coverages:<br>(1) worker's compensation insurance and employer's liability insurance,<br>(2) commercial general liability insurance,<br>(3) commercial automobile insurance, and<br>(4) excess umbrella liability insurance coverage.<br>All insurances must be kept with limits of not less than $5,000,000 per occurrence.<br><br>With respect to the Cottonwood II Property, Core must maintain the following insurance coverages:<br>(1) worker's compensation insurance not less than statutory limits and for employer's liability insurance $1,000,000 for each accident,<br>(2) commercial general liability insurance with a limit of $1,000,000 per occurrence,<br>(3) commercial automobile insurance with a limit of $1,000,000 per accident, and<br>(4) excess umbrella liability insurance coverage with a combined limit of $5,000,000 per occurrence, and<br>(5) Environmental pollution liability insurance with minimum limits of $5,000,000 per occurrence; *provided*, *however*, Lessee shall not be required to maintain such environmental liability pollution insurance so long as Lessee does not use or store Hazardous Materials on the Surface Site in quantities that would require disclosure under the Emergency Planning and Community Right-to-Know Act (EPCRA) or the Texas Community Right-To-Know Acts (TCRA).<br><br>Every five years throughout the term of the Cottonwood II Lease, the applicable limits for all insurance will be increased by a fraction based on the then current consumer price index. |
| Indemnification | Core must indemnify, defend and, hold harmless Landlord and its partners, members, managers, and respective employees, agents, and representatives (each, an "**Indemnified Party**") against and from, among other things, any claims, liabilities, judgments, costs, causes of action, and expenses (including reasonable attorneys' and consultants' fees) arising from any use, maintenance, ownership, or occupancy of the Premises, any condition of the Premises, any action or inaction taken by Landlord at the request of Core or otherwise in cooperation with Core or in support of Core's project on the |

6

| Term | Description |
|---|---|
|  | Premises, any bodily or personal injury, illness, or death of any person occurring in, on, or about the Premises or any part thereof, or any activities or omissions of Core even though caused by the negligence or fault of any Indemnified Party (except to the extent caused or alleged to be caused by the negligent acts of any Indemnified Party while on the Premises during the term of the Cottonwood II Lease or the gross negligence and willful misconduct of any Indemnified Party). (Cottonwood II Lease)<br><br>Core shall indemnify and defend Landlord against and save Landlord, the Cottonwood II property, the Easement Areas, any other property owned by Landlord (including, without limitation, Landlord's Other Property), and any portion of any of the foregoing, harmless from and against all claims and losses (i) resulting from the assertion, filing, foreclosure, or other legal proceedings with respect to any Existing Liens and any subsequently filed liens, lien claims, and lien affidavits and (ii) arising out of or related to any construction or other business conducted by Core or at Core's direction. (Cottonwood II Lease)<br><br>The indemnification obligations survive the termination of the Cottonwood II Lease. (Cottonwood II Lease)<br><br>Core must indemnify, defend, and hold harmless Landlord, its partners, and their respective partners, members, managers, officers, employees, successors, and assigns, from and against any and all demands, claims, causes of action, damages, liabilities, losses, costs, and expenses (including, without limitation, reasonably attorneys' fees) arising out of (a) any acts or omissions of Core, or certain of its affiliates, (b) arising out of any failure of Core or certain of its affiliates to comply with any covenant, term or condition of this instrument, (c) arising from presence, use, release or discharge of any hazardous substances or hazardous materials or any other environmental conditions on or about the Easement Areas or any other land owned by Landlord caused by or attributable to Core, or the construction, installation, alteration, maintenance, operation, repair, removal, replacement, reconstruction, restoration, or use of any road or other improvements or relocation of the facilities, equipment or appurtenances referenced herein, or (d) any bodily or personal injury, illness or death of any person or property damage or loss occurring in, on, or about the Easement Areas or any part thereof, including, without limitation, any premises liability claims, even though caused or alleged to be caused by the negligence or fault of any indemnified party (except to the extent caused or alleged to |

| Term | Description |
|---|---|
| | be caused by the negligent acts of any indemnified party while on the Easement Areas during the term of the easements or the gross negligence or willful misconduct of such indemnified party). The foregoing obligations survive the termination of the applicable Cottonwood II Agreement as well as termination of the Access Easement Agreement. (Access Easement Agreement, Distribution Easement Agreement, Transmission Easement Agreement) |
| **Events of Default** | The Cottonwood II Lease provides for customary events of default including, without limitation:<br>(a) Core fails to pay any amount required to be paid by Core under the Agreement and such failure is not cured within 30 days after the due date therefor or such shorter period as is necessary to prevent the imposition of any fine, penalty or lien against Landlord or the Cottonwood II Property,<br>(b) Core fails to perform any other obligations of Core under the Agreement or fails to comply with any other terms and conditions of the Agreement and such failure is not cured within 180 days after notice thereof from Landlord or any third party (e.g., any governmental authority) or such shorter period as is necessary to prevent the imposition of any fine, penalty or lien against Landlord or the Cottonwood II Property,<br>(c) Core abandons the Cottonwood II Property,<br>(d) an involuntary petition is filed against Core under any bankruptcy or insolvency law or under the reorganization provisions of any law of like import or whenever a receiver of Core, or of the Cottonwood II Property or all or substantially all of the other property of Core, shall be appointed without acquiescence, and such petition or appointment is not discharged or stayed within 180 days after the happening of such event, or<br>(e) Core makes an assignment of its property for the benefit of creditors or files a voluntary petition under any bankruptcy or insolvency law, or seeks relief under any other law for the benefit of debtors. |
| **Landlord's Remedies** | If an event of default occurs, Core will be afforded the following notice and cure periods before Landlord can exercise remedies:<br>(a) If the Event of Default includes Core's failure to pay any amount required to be paid by Core under the Agreement, Core will have a cure period of 30 days after the due date.<br>(b) If the Event of Default includes Core's failure to perform any other obligations of Core under the Agreement or failure to comply with any other terms and conditions of the Agreement, Landlord must notify Core, and Core will have a |

| Term | Description |
|---|---|
| | cure period of 180 days after notice thereof from Landlord or any third party (e.g., any governmental authority).<br>(c) Notwithstanding (a) and (b), the cure period may also be a shorter period of time as is necessary to prevent the imposition of any fine, penalty, or lien against Landlord or the Cottonwood II Property,<br><br>Following the occurrence of an event of default, after the applicable notice and cure period has passed, then Landlord shall have the following rights:<br>(1) to terminate the Agreement,<br>(2) to perform the obligation or covenant of Core, in which case any amount paid by Landlord and all costs and expenses, including, without limitation, reasonable attorneys' fees and disbursements, incurred by Landlord in connection therewith, together with interest thereon at the maximum contract rate of interest from the respective dates of Landlord's making of the payment or incurring of the cost and expense to the date Core reimburses Landlord for such amount, shall be paid by Core to Landlord immediately on demand, and<br>(3) exercise any or all other remedies available at law or in equity, all of which rights and remedies shall be cumulative and not exclusive of any other right or remedy. |
| **Reservation of Rights by Landlord** | Landlord retains all oil, gas, and other minerals in, on, and under the Cottonwood II Property but is only permitted to extract them through means outside of the Cottonwood II Property and may not interfere with Core's use of the Cottonwood II Property. |
| **Restoration** | Core is required to restore the Cottonwood II Property to its original condition at the end of the Term; provided that Landlord may, in its sole discretion, require Core to leave all or any portion of the facilities that Core installs. |
| **Existing Liens** | Core shall use commercially reasonable efforts to cause the lienholders of the Existing Liens to release the same as to Landlord's fee interest in the Cottonwood II Property, the Easement Areas, and Landlord's Other Property and expressly state in said release that such party waives and disclaims any future liens or lien rights as to Landlord's fee interest.<br><br>Core shall use its best efforts to cause the plan of reorganization to provide for the encumbrance of the Existing Liens and any liens, lien claims, and lien affidavits hereafter filed against the Cottonwood II Property, the Easement Property, or any of Landlord's Other Property to be satisfied and released. |

9

| Term | Description |
|---|---|
| **Options to Extend** | None. |
| **Landlord's Termination Rights** | If the Bankruptcy Court does not approve entry into the Cottonwood II Lease on or before October 16, 2023, either Landlord or Core may terminate the Cottonwood II Agreements immediately upon by delivery of notice to the other party.<br><br>If Core fails to pay to Landlord the Consideration within two (2) business days following the date on which the Proposed Order is entered or if the Proposed Order is entered and does not expressly provide that (A) Landlord may terminate this Agreement without obtaining relief from the automatic stay or any other court order if the Consideration is not paid within such two (2) business day period, and (B) Landlord may exercise all rights under the Cottonwood II Agreements in the future without obtaining relief from the automatic stay or further court order, Landlord may terminate the Cottonwood II Agreements without obtaining relief from the automatic stay or any other court order, in which case, Landlord shall refund to Core the Consideration paid by Core, if any, and Core shall promptly reimburse all reasonable and documented out-of-pocket fees, costs and expenses of outside legal counsel relating to the negotiation, and enforcement of such termination provisions, of the Cottonwood II Lease.<br><br>Landlord shall be entitled to exercise all rights under the Cottonwood II Agreements in the future without obtaining relief from the automatic stay or further court order.<br><br>If any Existing Lien is not removed on or prior to (A) the later to occur of (i) the date which is ninety (90) days following the date Landlord gives notice to Core of such Existing Lien (provided that notice of the Existing Liens set forth on Exhibit B hereto is deemed to have been given to Core) and (ii) the earlier of the date which is (a) ninety (90) days following the effective date of a plan of reorganization filed by Core and confirmed by entry of an order of the United States Bankruptcy Court for the Southern District of Texas or (b) two hundred forty (240) days following the effective date of the Cottonwood II Lease, then Landlord may suspend Core's access without any notice or cure period required, and (B) the later to occur of (1) the date which is ninety (90) days following the date Landlord gives notice to Core of such Existing Lien (provided that notice of the Existing Liens set forth on Exhibit B hereto is deemed to have been given to Core) and (2) the date which is three hundred sixty (360) days following the effective date of the Cottonwood II |

| Term | Description |
|---|---|
| | Lease, then Landlord may terminate the Cottonwood II Lease without any notice or cure period required. |

11. It is my belief that entry into the Cottonwood II Agreements is a valid exercise of sound business judgement and the Debtors' entry into and performance under the Cottonwood II Agreements is in the best interests of the Debtors' estates, their stakeholders, and all parties in interest.

12. Put simply, the Debtors require the Cottonwood II Agreements to operate the Cottonwood Facility. Entry into the Cottonwood II Agreements is important to the Debtors because it will allow the Debtors to continue energizing the Cottonwood Facility and further expand their Mining Operations thereon. Without the Transmission Easement, the Debtors are not able to transmit energy from the electrical grid to the Cottonwood Substation, which is necessary to energize and perform Mining Operations at the Cottonwood Facility, including the Cottonwood I Property, which the Debtors have spent in excess of $70,000,000 developing to date and currently is the site of over 12,000 miners engaged in Mining Operations. Moreover, the Consideration for all of the Cottonwood II Agreements—a one-time payment of $1,000,000.00—is reasonable given the ninety-nine (99) year term. The decision to enter into the Cottonwood II Agreements is a sound exercise of the Debtors' business judgment given the Debtors' need to perform Mining Operations at the Cottonwood Facility, the added value of the option to expand operations at the Cottonwood II Property, and the reasonable Consideration payable under the Cottonwood II Agreements.

13. Unless the Debtors obtain entry of the Proposed Order on or before October 16, 2023, the Landlord may terminate the Cottonwood II Agreements pursuant to the terms thereof. As stated above, the Debtors require entry into the Cottonwood II Agreements so that they may continue energizing the Cottonwood Facility and further expand their Mining Operations thereon.

Consequently, absent emergency consideration and entry of the Proposed Order on or before October 16, 2023, the Landlord may terminate the Cottonwood II Agreements, which would cause the Debtors irreparable harm.

I hereby declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated:  October 6, 2023
        Bellevue, Washington

Respectfully submitted,

By:   /s/ Michael Bros
      Michael Bros
      Senior Vice President of Capital Markets & Acquisitions