**<u>Exhibit 1</u>**

**Cottonwood II Lease**

**DO NOT RECORD THIS AGREEMENT**
**ONLY A MEMORANDUM OF THIS AGREEMENT SHALL BE RECORDED**

**SURFACE LEASE AGREEMENT**

| | | |
|---|---|---|
| **STATE OF TEXAS** | § | |
| | § | **KNOW ALL MEN BY THESE PRESENTS:** |
| **COUNTY OF REEVES** | § | |

     This Surface Lease Agreement (this "Agreement" or this "Lease"), is by and between **JRC/RGC34 Trade Tracts, LTD,** a Texas limited partnership, whose address is 1415 Louisiana Street, Suite 1900, Houston, Texas 77002 (hereinafter referred to as "Lessor", whether one or more), and **Core Scientific Operating Company,** a Delaware corporation, whose address is 2407 S. Congress Ave., Ste. E-101, Austin, Texas 78704, and its successors and assigns (such entity and its successors and assigns are collectively referred to as the "Lessee"). For and in consideration of the sum of TEN AND NO/100 Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, subject to obtaining approval of this Agreement from the Bankruptcy Court (defined below) and payment of the Consideration (defined below) by Lessee, Lessor by these presents does hereby lease to Lessee for a term of ninety-nine (99) years, commencing on the date on which the Consideration (defined below) is received by Lessor, that certain 50.00-acre tract of land located in Reeves County, Texas and more particularly described in the metes and bounds depicted in Exhibit "A" attached hereto and made a part hereof (the "Surface Site"). The Surface Site shall be used solely for the purpose of erecting, laying, constructing, fencing, maintaining, operating, repairing, inspecting, testing, commissioning, replacing, protecting, altering, and/or removing a commercial and/or industrial warehouse building to be used for data processing purposes only, together with associated infrastructure necessary to perform and support the commercial and/or industrial operations therein, including, but not limited to, electric power substations, electric power lines and communication lines, whether overhead or underground constructed,  and associated facilities, including, but not limited to, structures made of steel, concrete, and/or wood, concrete foundations, buildings, cooling systems, containers, water tanks, water wells (including water wells to be drilled on the Surface Site), cables, including fiber optic cables, meters, valves, conduits, electrical supply facilities, wires, poles, conduits, duct banks, transformers, switches, circuit breakers, control house and/or relay and battery all weather enclosures, solar power facilities, generators, monitoring cameras, compressors, pumps, communications equipment, radio and communication facilities and measuring equipment and meter runs, and all other materials, equipment, and appurtenances that may be necessary or desirable in connection therewith (collectively, the "Facilities").

     Lessor and Lessee acknowledge that (i) Lessee and certain of its affiliates are debtors-in-possession under title 11 of the United States Code, 11 U.S.C. 101 et seq. (the "Bankruptcy Code") and, on December 21, 2022, filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") and (ii) this Agreement and the payment of the Consideration are subject to the approval of the Bankruptcy Court. Lessee agrees to request in Lessee's motion to the Bankruptcy Court for approval of this Agreement and payment of the Consideration that the order approving the same provide that Lessor may terminate this Agreement and the Easements (defined below) without obtaining relief from the automatic stay or any other court order if the Consideration is not paid within the time period required in Section 3 below and that Lessor may exercise all rights under this Agreement and the Easements in the future without obtaining relief from the automatic stay or further court order.

     It is further agreed as follows:

1.      The location of the Surface Site on Lessor's property shall be the area described and depicted in Exhibit "A" attached hereto and made a part hereof.

2.      In no event shall Lessee enter upon or use any portion of Lessor's property located outside of the Surface Site, except as permitted pursuant to the terms of the two Non-Exclusive Easement Agreements and an Access Easement Agreement, each of even date herewith (the "Easements") executed by Lessor for the benefit of Lessee.

3.      As consideration for Lessor leasing the Surface Site to Lessee, Lessee shall pay to Lessor the sum of $1,000,000.00 (the "Consideration") within two (2) business days following the date on which this Agreement and the payment of the Consideration is approved by the Bankruptcy Court (the date on which the Consideration is received by Lessor is referred to in this Agreement as the "Commencement Date"); provided that (i) if such approval is not granted by the Bankruptcy Court on or prior to the date which is four (4) months following the Effective Date, either Lessor or Lessee may terminate this Agreement and the Easements by delivering notice to the other terminating this Agreement and the Easements (and upon delivery of any such notice, this Agreement and the Easements shall immediately terminate) and (ii) if Lessee fails to pay to Lessor the Consideration within two Business Days following the date on which this Agreement and the payment of the Consideration is approved by the Bankruptcy Court, or if the order of the Bankruptcy Court approving this Agreement and payment of the Consideration does not expressly provided that (A) Lessor may terminate this Agreement without obtaining relief from the automatic stay or any other court order if the Consideration is not paid within such two Business Day period, and (B) Lessor may exercise all rights under this Agreement and the Easements in the future without obtaining relief from the automatic stay or further court order, then Lessor may terminate this Agreement and the Easements by delivering notice to Lessee terminating this Agreement and the Easements together with a refund of the Consideration paid to Lessor, if any (and upon delivery of any such notice and refund of Consideration paid to Lessor, if any, this Agreement and the Easements shall immediately terminate) and, promptly following a termination of this Lease pursuant to this clause (ii), Lessee shall promptly reimburse Lessor for all reasonable and documented out-of-pocket fees, costs and expenses of outside legal counsel relating to the negotiation, and enforcement of this Section 3 of, this Lease. Such Consideration paid by Lessee in this Agreement includes the market value of the Surface Site for the lease term and for reasonably anticipated damages caused to the surface of the Surface Site during the construction and operation of the Facilities, including, but not limited to, damages to growing crops, and related appurtenances, but excluding any damage caused by any release or discharge of Hazardous Materials or any injury occurring on the Surface Site.

4.      Commencing on the Commencement Date, Lessee shall have the unrestricted right of ingress, egress, entry, and access in, to, through, on, over, under, and across the Surface Site as described in the metes and bounds depicted on Exhibit "A" attached hereto and made a part hereof, for the purpose of and with the right to construct, operate, improve, reconstruct, repair, inspect, patrol, maintain, modify and/or remove the Facilities within such Surface Site as Lessee may from time to time find necessary, convenient or desirable in its sole discretion. Lessor shall reasonably cooperate with Lessee, at no cost to Lessor, in the exercise of Lessee's rights hereunder, and provide any further assurances reasonably requested by Lessee in carrying out and otherwise giving full force and effect to the purpose and intent of this Agreement; provided, however, that Lessor shall not be required to (a) make any representations or warranties, (b) incur any obligations, liabilities, costs or expenses, (c) grant any additional rights or easements to Lessee or any third party, or (d) agree to any encumbrance on the Surface Site or Lessor's interest therein. Lessee shall reimburse Lessor upon demand for any out-of-pocket costs incurred by Lessor in connection with providing any such cooperation or further assurances.  Lessee shall not have any right to enter upon the Surface Site or the portion of Lessor's other property encumbered by the Easements prior to the Commencement Date.

Debtors' Exhibit No. 2
Page 3 of 22

5.       Lessee shall have the right to install fencing of any type and enclose the Surface Site within a single fence or any of the Facilities installed thereon in separate enclosures, the right to install gates within said fencing and in all existing and future fences within the Surface Site, and the right to have exclusive possession and use of the surface and subsurface of the Surface Site, said possession of the subsurface being to the extent and depth as may be necessary for the installation, operation, maintenance, repair, and/or replacement of underground foundations, cables, pipes, conduits, wells, and all other necessary and/or desirable Facilities, but in no event shall such subsurface rights extend below two hundred feet (200') beneath the surface of the Surface Site.  Lessee shall have all rights and benefits necessary or convenient for the full enjoyment and use thereof, including, but not limited to, the right, from time to time, to cut and remove all trees, undergrowth, and other obstructions, on the Surface Site; the right to relocate Facilities within the Surface Site; and the right to prevent the construction on the Surface Site of any or all Lessor or third party buildings, structures, and obstructions.

6.       Lessee shall use the Surface Site solely for the purposes specified herein. Without limiting the foregoing, there shall be no hunting or fishing on the Surface Site or any of Lessor's other lands by Lessee, its officers, agents, employees, contractors, invitees, guests or representatives at any time.  No hunting or fishing equipment shall be taken on the Surface Site by Lessee, its officers, agents, employees, contractors, invitees, guests or representatives at any time. Lessee shall at all times comply with all local, state and federal laws.  Lessee shall be subject to (a) all existing right of way, easements and other agreements provided by Lessor to Lessee before the execution of this Agreement, whether or not the same are filed of public record, and (b) all existing rights of way, easements, encumbrances, covenants, conditions, reservations, restrictions, leases, subleases, occupancy, tenancy, mineral rights, options, rights of first refusal or other matters filed of record to the extent same are validly existing and affect the Surface Site (collectively, the "Existing Encumbrances"). Lessor represents and warrants to Lessee that other than the Existing Encumbrances, Lessor is not aware of any unrecorded lien, encumbrance, covenant, condition, reservation, restriction, easement, lease, sublease, occupancy, tenancy, mineral right, option, right of first refusal or other matter or any portion thereof that have not been disclosed to Lessee in writing prior to the execution of this Agreement, including any unrecorded agricultural, grazing, oil, gas, mineral, or other subsurface leases. Subject to the terms of this Lease and subject to the Existing Encumbrances, during the entire term of this Lease (1) Lessee shall have peaceful and quiet enjoyment of the Surface Site, without hindrance or interruption by Lessor or any other persons or entities claiming through Lessor, and (2) Lessor shall protect and defend the right, title and interest of Lessee hereunder from any other rights, interests, title and claims of or by any such person or entity.

7.       Lessor and its successors, officers, agents, employees, contractors, invitees, guests, and representatives shall not enter or use the Surface Site for any purposes whatsoever, save and except those limited purposes expressly set forth in this paragraph. Lessor shall retain all oil, gas, and other minerals in, on and under the Surface Site; *provided, however*, that Lessor shall not have the right or be permitted to produce, drill, mine, or operate equipment for the production or development of oil, gas, or other minerals on or from the surface of the Surface Site, but it will be permitted to extract the oil, gas, and other minerals from and under the Surface Site by directional drilling and other means outside the Surface Site, provided the drill bit enters the Surface Site at a subsurface depth of two hundred feet (200') or deeper and so long as such activities do not damage, destroy, or injure the Facilities or interfere in any material way with Lessee's use of the Surface Site for the purposes for which the Surface Site is being leased by Lessee.

8.       Lessor, by these presents and for the consideration herein stated, hereby and knowingly relinquishes all of Lessor's rights to (a) use any portion of the Surface Site for any surface or subsurface activities at depths equal to or less than two hundred feet (200') beneath the surface of the Surface Site, and (b) to grant to others any easements, licenses, leases, or other rights hereafter with respect to any portion of the Surface Site, without first obtaining the express written consent of Lessee, unless such grant expressly excludes the right to use, enter or occupy the Surface Site and all depths equal to or less than two hundred

3

feet (200') beneath the surface of the Surface Site. Lessee shall not unreasonably withhold, condition or delay consent to any proposed grant by Lessor of any easement or other rights with respect to the Surface Site provided that the same would not reasonably be expected to damage, destroy, or injure the Facilities or to interfere in any material way with Lessee's use of the Surface Site for the purposes for which the Surface Site is being leased by Lessee. Lessor reserves the right to enter upon and inspect the Surface Site from time to time to confirm that Lessee is complying with the terms of this Lease. Any such entry by Lessor shall be solely for Lessor's own purposes and shall not be deemed or construed to constitute a waiver by Lessor of any breach or default by Lessee whether or not Lessor identifies such breach or default during the course of any such entry or inspection.

9.      Lessee shall have the unrestricted right to assign and transfer, in whole or in part, by operation of law or otherwise, this Agreement, including Lessee's rights, benefits, privileges, and obligations hereunder, whenever and to whomever Lessee in its sole, exclusive, and absolute discretion deems appropriate, in which event Lessor acknowledges and agrees that any such assignee shall succeed to all of the rights and obligations of Lessee to the extent conveyed in such assignment; provided, however, (a) in no event shall any assignment or transfer result in more than two (2) persons or entities having a direct interest in this Agreement or the Facilities at any given time, and (b) Lessee and the assignee shall be jointly and severally liable for the obligations of Lessee under this Agreement following any such assignment or transfer except in the case of any assignment or transfer of Lessee's entire interest in this Agreement as to which Lessor approves the proposed assignee in writing. Lessor shall not unreasonably withhold, condition or delay approval of a proposed assignee; provided, however, Lessor may withhold its approval in its sole discretion if, in Lessor's sole but good faith and reasonable judgment, the proposed assignee (1) does not have substantial experience owning and operating projects similar to the Facilities and does not hire a third party who has such experience to operate the Facilities (provided that clause (1) of this proviso shall be deemed satisfied if the Bankruptcy Court finds that such proposed assignee has (A) substantial experience owning and operating projects similar to the Facilities or (B) hired a third party to operate the Facilities who has substantial experience operating projects similar to the Facilities) or (2) does not have sufficient creditworthiness or financial standing to perform the obligations under this Agreement that are to be assumed by such proposed assignee (provided that clause (2) of this proviso shall be deemed satisfied with respect to any proposed assignee under any assignment by Core Scientific Operating Company, the original named Lessee hereunder, of Core Scientific Operating Company's entire interest in this Agreement). Upon assignment approval by Lessor of a proposed assignee to which all of Lessee's interest under this Agreement is assigned or transferred, Lessee shall be relieved of all obligations under this Agreement which accrue after the date of such assignment, except for any obligations with respect to payment of taxes, assessments and other charges or amounts for or attributable to time periods prior to such assignment or transfer, indemnity obligations related to any Claims or Losses (defined below) with respect to matters occurring or attributable to time periods prior to such assignment or transfer, and obligations related to any Hazardous Materials released or discharged on the Surface Site or Lessor's adjacent property prior to such assignment or transfer. If at any time more than one person or entity has an interest in this Agreement or Lessee's rights, benefits or privileges hereunder, such persons or entities shall be jointly and severally liable for the obligations of Lessee under this Agreement.

10.      Lessee shall maintain or shall cause to be maintained, in full force and effect throughout the term of this Agreement, at its sole cost and expense, the insurance described below:

> a.      Worker's Compensation in accordance with the benefits afforded by the statutory Worker's Compensation Acts, if applicable to the state, territory or district of hire, supervision or place of accident.  Policy limits for worker's compensation shall not be less than statutory limits and for employer's liability one million dollars ($1,000,000) each accident.

b.   Commercial General Liability Insurance including bodily injury, death, property damage, personal injury liability, with a limit of $1,000,000 per occurrence and in the annual aggregate.

c.   Commercial Automobile Insurance covering owned, hired, rented, and non-owned automotive equipment with a limit of $1,000,000 per accident.

d.   Excess Umbrella Liability Insurance coverage in excess of the terms and limits of insurance specified in parts a, b and c above with a combined limit of $5,000,000 per occurrence.

e.   Environmental pollution liability insurance with minimum limits of $5,000,000 per occurrence; provided, however, Lessee shall not be required to maintain such environmental liability pollution insurance so long as Lessee does not use or store Hazardous Materials on the Surface Site in quantities that would require disclosure under the Emergency Planning and Community Right-to-Know Act (EPCRA) or the Texas Community Right-To-Know Acts (TCRA). Within thirty (30) days following each anniversary of the Commencement Date, Lessee shall provide Lessor with an annual certification stating that, to the best of Lessee's knowledge, it is not using or storing Hazardous Materials on the Surface Site in quantities that would require disclosure under the EPCRA or the TCRA.

Every five (5) years during the term of this Lease, on the fifth anniversary of the Commencement Date and each five-year anniversary thereafter (each, an "Adjustment Date"), the respective specified dollar limits set forth above (each, the "Applicable Limit") shall be increased by Lessee to an amount equal to the Applicable Limit multiplied by a fraction, the numerator of which is the Consumer Price Index for December 2021 and the denominator of which shall be the Consumer Price Index for December of the calendar year immediately preceding the applicable Adjustment Date; provided, however, in no event shall any Applicable Limit be decreased as a result of any decrease in the Consumer Price Index. As used herein, the "Consumer Price Index" means the Consumer Price Index, All Urban Consumers (CPI-U), All Items (1982-84=100), published by the United States Bureau of Labor Statistics of the United States Department of Labor ("BLS"), or any successor agency, for the Houston-The Woodlands-Sugar Land, Texas geographic area, or any renamed local index that includes the Houston, Texas metropolitan area, or any other measure thereafter employed by BLS or any such successor agency in lieu of such CPI-U that measures the cost of living in the Houston, Texas metropolitan area. If the Consumer Price Index or a renamed local index or measure ceases to be published by BLS or any such successor agency, then Lessor may substitute for the Consumer Price Index any independently published index of similar type. No delay in notifying Lessee of the required increase in the Applicable Limits shall constitute a waiver by Lessor of any increase in the Applicable Limits required hereunder or relieve Lessee of its obligation to increase the Applicable Limits as required hereunder.

All insurance required to be maintained under this Lease shall be issued by insurance companies licensed or authorized to do business in the State of Texas that have a rating in the latest edition of Best's Key Rating Guide (or any successor publication of comparable standing) of "A-:VIII" or better (or another comparable rating substantially equivalent thereto that is reasonably acceptable to Lessor).  Upon execution of this Lease, and not less than 15 days prior to the expiration dates of expiring policies required pursuant to this Section 10, certificates of insurance or renewal certificates, as the case may be, bearing notations and including any necessary endorsements confirming the status of Lessor as an additional insured, as required herein, and evidencing the payment in full of premiums or accompanied by other evidence reasonably satisfactory to Lessor of such coverage and payment, shall be delivered by Lessee to Lessor. Lessee shall cause Lessor to be named as an additional insured on all liability policies.

5

Each policy of insurance required under this Lease shall contain (a) a provision that no act or omission of Lessor or Lessee shall affect or limit the obligation of the insurance company to pay the amount of any loss sustained, (b) an agreement by the insurer that such policy shall not be canceled, modified or denied renewal without at least 10 days prior written notice to Lessor, (c) an agreement that if cancellation is due to nonpayment of premiums, the insurer will so specify in the notice given in (b) above, and (d) if the insurance company would otherwise have a right to subrogation, a written agreement by the insurance company that its right to subrogation has been waived with respect to all named insureds and additional insureds.

11.     This is an absolutely net lease. Lessor shall have no obligations or liabilities whatsoever in connection with or relating to the Surface Site or the maintenance, repair, replacement, operation and management of the Surface Site during the term of this Lease. Lessee shall be solely responsible for all costs, expenses and obligations of every kind and nature whatsoever in connection with or relating to the Surface Site or any part thereof, whether or not specifically referenced or contemplated in this Lease, including, without limitation, the maintenance, repair, replacement, operation and management thereof in accordance with this Lease. Lessee shall pay and discharge all such costs, expenses and obligations before the same become delinquent. Without limiting the foregoing, Lessee, its successors and assigns shall be fully responsible for and shall pay prior to delinquency (a) all ad valorem taxes and assessments (general or special) on the Surface Site and all Facilities and on all personal property on the Surface Site for each calendar year (or other fiscal period of any taxing authority) or portion thereof during the term of this Lease, (b) any occupancy and rent taxes, (c) water and sewer rents, rates and charges, (d) charges for public utilities, (e) license and permit fees, (f) any other taxes, assessments, charges or governmental levies, general and special, ordinary and extraordinary, foreseen and unforeseen, of any kind and nature whatsoever, and (g) any fines or penalties or similar charges applicable with respect to any of the foregoing, together with interest and costs thereon (collectively, "Impositions"). Such Impositions shall not be prorated for the year or other fiscal period in which this Lease commences, expires or terminates, it being agreed that Lessee, its successors and assigns shall be fully responsible for the entire year or entire fiscal period notwithstanding that the Commencement Date is not the first day of the calendar year and the expiration or termination date may not be the last day of the applicable calendar year or other fiscal period. Lessee's obligation under this Section 11 shall survive the expiration or termination of this Lease.

12.     Lessor hereby represents to Lessee, to the best of Lessor's knowledge, that the Surface Site is free of Hazardous Materials (as defined below). As used herein, to the best of Lessor's knowledge means the current actual knowledge of R. Cullen Powell, President of Jefferson Realty Co., which is the general partner of Lessor, in his representative capacity and not individually, without having made and without any obligation to make any investigation or inquiry regarding the Surface Site, and without having made and without obligation to make any investigation of any files, documents or studies or any inquiry of other persons, and shall not include any knowledge which may be imputed to Lessor or of any other person. Lessee acknowledges that the individual named above is named solely for the purpose of defining and narrowing the scope of Lessor's knowledge and not for the purpose of imposing any liability on or creating any duties running from such individual to Lessee. Lessee covenants that it will bring no action of any kind against such individual related to or arising out of such representation, which covenant shall survive the expiration or termination of this Agreement.

Lessee (a) shall comply, and cause the Surface Site to comply, with all Environmental Laws (as defined below) applicable to the Surface Site (including, without limitation, the making of all submissions to governmental authorities required by Environmental Laws and the carrying out of any remediation program specified by such authority), (b) shall not use or permit the Surface Site to be used for the generation, manufacture, refinement, production, or processing of any Hazardous Material (as hereinafter defined) or for the storage, handling, transfer or transportation of any Hazardous Material, except for de

6

minimis quantities of cleaning supplies, office supplies and other materials consistent with the use permitted hereunder that are used in the ordinary course of Lessee's business provided the same are properly stored, used and disposed of in a manner and location satisfying applicable Environmental Laws, (c) shall not permit to remain, install or permit the installation on the Surface Site of any surface impoundments, underground storage tanks, or asbestos or asbestos-containing materials, and (d) shall cause any alterations of the Surface Site to be done in a way so as to not expose the persons working on or visiting the Surface Site to Hazardous Materials in violation of applicable Environmental Laws, and in connection with any such alterations, Lessee shall remove in compliance with Environmental Laws any Hazardous Materials present upon the Surface Site which are not in compliance with Environmental Laws or which present a danger to persons working on or visiting the Surface Site. Immediately after discovering same, Lessee shall notify Lessor of any release of Hazardous Materials or contamination in, on or about the Surface Site or any water damage or mold in or about the Building.

The term "Hazardous Materials" as used in this Lease shall mean: (a) any substance which is or contains any "hazardous substance", "hazardous materials", "hazardous wastes" or "toxic substances" as now or hereafter defined in §101(14) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended ("CERCLA") (42 U.S.C. §9601 et seq.) or any regulations promulgated under CERCLA; (b) oil, gas, gasoline, diesel fuel, or other petroleum hydrocarbons, or additives or by-products associated with such petroleum products or with oil and gas exploration, production, and transmission; and (c) any additional chemicals, substances, or materials which are now or hereafter classified or considered to be hazardous or toxic under any Environmental Laws or the common law, or any other applicable laws relating to the above-described Surface Site.

The term "Environmental Laws" means the Resource Conservation and Recovery Act of 1976, as amended, 42 U.S.C. §§6901, et. seq. (RCRA), the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended by the Superfund Amendments and Reauthorization Act of 1986, 42 U.S.C. §§9601 et seq. (CERCLA), the Toxic Substance Control Act, as amended, 15 U.S.C. §§2601 et seq., the Federal Insecticide, Fungicide and Rodenticide Act, as amended, 7 U.S.C. §§136 et seq., any other analogous state or federal statute, and all applicable federal, state and local environmental laws, ordinances, orders, rules and regulations, as any of the foregoing may have been or may be from time to time amended, supplemented or supplanted, and any other federal, state or local laws, ordinances, orders, rules and regulations, now or hereafter existing relating to regulations or control of Hazardous Materials or materials.

Notwithstanding, nothing in this provision shall impose any obligations on Lessee for any pre-existing use of or condition of the Surface Site prior to the execution of this Agreement or in connection with any use by any third party holding an Existing Encumbrance as identified in Section 6 above.

13.     Recording. The parties shall, rather than recording this entire Agreement, record a Memorandum of the Lease identifying the parties, the specific real property covered and benefitted by this Lease, and the term of this Lease without disclosing the consideration paid for or provided regarding the same. Such Memorandum shall not be recorded prior to the Commencement Date.

14.     This Agreement may be executed in several counterparts, each of which shall be an original of this Agreement but all of which, taken together, shall constitute one and the same Agreement and be binding upon the parties who executed any counterpart, regardless of whether it is executed by all parties named herein. Execution of this Agreement and delivery of an executed signature page of this Agreement by e-mail or other customary means of electronic submission (i.e., a .pdf file) shall be deemed binding on all parties for all purposes hereof, without delivery of an original signature page being thereafter required.

15.     This Agreement constitutes the entire agreement between the parties and supersedes any and all prior oral understandings and/or agreements, if any, concerning the subject of the Surface Site as set

forth herein. Lessor confirms and agrees that Lessor has been made no promise or agreement by Lessee or any agent of Lessee (except as expressed or referenced specifically set forth in writing within this Agreement) in executing this Agreement, that Lessor is not relying upon any statement or representation of Lessee or any agent of Lessee not set forth in writing in this Agreement, and that Lessor's execution of this Agreement is free and voluntary. This Agreement may not be modified or amended except on or after the Effective Date by a writing signed by both parties. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas, excluding any conflict-of-laws rule or principle that might refer the governance or the construction of this Agreement to the law of another jurisdiction. Attorney's Fees. If either party hereto shall be required to employ an attorney to enforce their rights hereunder and in the event there is litigation or alternative dispute resolution required to resolve such dispute, the prevailing party in such action as determined by the court and/or alternative dispute resolution shall be entitled to recover their reasonable and necessary attorneys' fees and cost of such litigation.

16.     LESSOR HAS NOT RELIED UPON AND HEREBY EXPRESSLY DISCLAIMS RELIANCE UPON ANY STATEMENTS, REPRESENTATIONS, INFORMATION OR MATERIALS PROVIDED, SUPPLIED OR FURNISHED BY LESSEE OR OTHERWISE MADE AVAILABLE BY LESSEE IN THE PUBLIC DOMAIN OR OTHERWISE (OTHER THAN THOSE MADE IN THIS AGREEMENT).

17.     Acceptance of Surface Site. **LESSEE AGREES THAT, LESSEE HAS FULLY, INDEPENDENTLY AND PERSONALLY INSPECTED THE SURFACE SITE AND SATISFIED ITSELF AS TO THE STATUS OF TITLE TO THE PREMISES AND THE QUALITY, CONDITION AND SUITABILITY OF THE SURFACE SITE FOR LESSEE'S PURPOSES AND HAS RELIED SOLELY ON ITS OWN INSPECTIONS AND INVESTIGATIONS OF THE SURFACE SITE IN DETERMINING WHETHER OR NOT TO ENTER INTO THIS LEASE. ACCORDINGLY, THE SURFACE SITE ARE AND WILL BE LEASED TO LESSEE, AND LESSEE ACCEPTS THE SURFACE SITE, IN THEIR THEN-CURRENT CONDITION AND STATE OF REPAIR, "AS IS, WHERE IS AND WITH ALL FAULTS" (INCLUDING, WITHOUT LIMITATION, ANY PATENT OR LATENT DEFECTS, ANY EXISTING VIOLATIONS OF LAW, WHETHER OR NOT OF RECORD, THE PRESENCE OF ASBESTOS, HAZARDOUS MATERIALS OR WASTE) AND ACKNOWLEDGES THAT NO REPRESENTATION OR WARRANTY, EITHER EXPRESS OR IMPLIED, WRITTEN OR ORAL, HAS BEEN MADE BY LESSOR OR ANY TRUSTEE, BENEFICIARY, PARTNER, AGENT OR REPRESENTATIVE OF LESSOR REGARDING THE CONDITION OF THE SURFACE SITE OR THE SUITABILITY OF THE SURFACE SITE FOR ANY USE OR PURPOSE BY LESSEE, EXCEPT AS EXPRESSLY SET FORTH IN SECTION 12 OF THIS AGREEMENT. FURTHERMORE, LESSEE WAIVES ANY COMMON LAW OR STATUTORY RIGHT THAT OTHERWISE MAY BE AVAILABLE TO LESSEE TO TERMINATE THIS LEASE BASED ON ANY CHANGE IN THE CONDITION OF THE SURFACE SITE AFTER THE DATE OF THIS LEASE AND ANY AND ALL CLAIMS BY LESSEE BASED ON THE CONDITION OF THE PREMISES AS OF THE DATE OF THIS LEASE OR THE COMMENCEMENT DATE, INCLUDING, WITHOUT LIMITATION, ANY CLAIMS BASED ON AN ALLEGED BREACH OF ANY IMPLIED WARRANTY OF LESSEEABILITY, SUITABILITY, OR FITNESS FOR LESSEE'S PURPOSES (HOWEVER, NOTHING CONTAINED HEREIN SHALL BE INTERPRETED TO IMPLY OR ACKNOWLEDGE THAT ANY SUCH WARRANTIES EXIST UNDER APPLICABLE LAW). THE PROVISIONS OF THIS SECTION ARE A MATERIAL PART OF THE CONSIDERATION FOR LESSOR ENTERING INTO THIS LEASE.**

18.     Indemnification of Lessor. Lessee will indemnify, defend and hold harmless Lessor, Lessor's partners, members, managers, and their respective employees, agents and representatives (each, an "Indemnified Party", and collectively, the "Indemnified Parties") against and from all claims, demands,

causes of action, liabilities, obligations, losses, damages, judgments, fines, penalties, costs, charges and expenses, including, without limitation, reasonable attorneys' and consultants' fees and disbursements (collectively, "<u>Claims and Losses</u>"), which may be imposed upon or incurred by or asserted against any Indemnified Party arising out of or in any way related to any use, maintenance, ownership or occupancy of the Surface Site, any condition of the Surface Site, any action or inaction taken by Lessor at the request of Lessee or otherwise in cooperation with Lessee or in support of Lessee's project on the Surface Site, any bodily or personal injury, illness or death of any person occurring in, on or about the Surface Site or any part thereof, or any activities or omissions of Lessee or any Lessee Party, including, without limitation, the following, **EVEN THOUGH CAUSED OR ALLEGED TO BE CAUSED BY THE NEGLIGENCE OR FAULT OF ANY INDEMNIFIED PARTY (EXCEPT TO THE EXTENT CAUSED OR ALLEGED TO BE CAUSED BY THE NEGLIGENT ACTS OF ANY INDEMNIFIED PARTY WHILE ON THE SURFACE SITE DURING THE TERM OF THIS LEASE OR THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF SUCH INDEMNIFIED PARTY), IT BEING AGREED THAT THIS INDEMNITY IS INTENDED TO INDEMNIFY THE INDEMNIFIED PARTIES AGAINST THE CONSEQUENCES OF THEIR OWN NEGLIGENCE OR FAULT (EXCEPT FOR THEIR NEGLIGENT ACTS WHILE ON THE SURFACE SITE DURING THE TERM OF THIS LEASE AND EXCEPT FOR THEIR OWN GROSS NEGLIGENCE OR WILLFUL MISCONDUCT) WHEN SUCH INDEMNIFIED PARTIES ARE SOLELY, JOINTLY, COMPARATIVELY, CONTRIBUTIVELY, OR CONCURRENTLY NEGLIGENT WITH LESSEE OR ANY OTHER PERSON**:

      (a)    any entry by Lessee or any employees, agents, representatives, consultants, contractors or invitees of Lessee on the Surface Site prior to the Commencement Date;

      (b)    any work or thing done in, on or about the Surface Site or any part thereof;

      (c)    any use, non-use, possession, occupation, restoration, alteration, repair, condition (including, without limitation, any environmental condition other than the mere existence of Hazardous Materials existing on the Surface Site as of the Commencement Date to the extent any environmental condition related thereto was not created by or in connection with the release, handling, disturbance or removal of such Hazardous Materials by Lessee or any Lessee Party (defined below)), operation, maintenance or management of the Surface Site or any part thereof or any property adjacent thereto;

      (d)    any acts or omissions by Lessee, its successors and assigns or any of their respective agents, representatives, contractors, servants, employees, sublessees, licensees or invitees (each, a "<u>Lessee Party</u>" and collectively, the "<u>Lessee Parties</u>");

      (e)    any accident, injury (including, without limitation, death) or damage to any person or entity or property occurring in, on or about the Surface Site or any part thereof or any property adjacent thereto, including, without limitation, any premises liability claims;

      (f)    any failure on the part of Lessee to perform or comply with any of the covenants, agreements, terms, provisions, conditions or limitations contained in this Lease;

      (g)    any liability which may be asserted against Lessor or any lien or claim which may be alleged to have arisen against or on the Surface Site or any property adjacent thereto, under any applicable local, state or federal laws, including, without limitation, Environmental Laws, and any restrictive covenants affecting the Surface Site to the extent caused by, related to or in any way arising out of Lessee's use of the Surface Site; or

(h)      the condition of the Surface Site or of any Facilities hereafter situated thereon, or the fixtures or personal property thereon or therein (except for the mere existence of any Hazardous Materials existing on the Surface Site prior to the Commencement Date to the extent such condition was not created by or in connection with the release, handling, disturbance or removal of such Hazardous Materials by Lessee or any Lessee Party), including, without limitation, any Claims and Losses based on any premises liability theory or based on the failure of the Surface Site to be in compliance with Laws.

The obligations of Lessee under this Section 18 shall not in any way be affected by the absence or presence in any case of insurance or by the failure or refusal of any insurance carrier to perform any obligation on its part under insurance policies affecting the Surface Site.

In case any claim, action or proceeding is made or brought against any Indemnified Party by reason of any of the foregoing events to which reference is made in this Section 18, then Lessee, upon written notice from Lessor will, at Lessee's sole cost and expense, resist or defend such claim, action or proceeding, in such Indemnified Party's name, if necessary, by counsel approved, in writing, by Lessor, such approval not be unreasonably withheld.

The obligations of Lessee under this Section 18 shall survive expiration or termination of this Lease.

19.      Condemnation. If all or part of the Surface Site is proposed to be taken as a result of any action or proceeding in eminent domain, or is proposed to be transferred in lieu of condemnation to any authority entitled to exercise the power of eminent domain (collectively, a "Taking"), Lessor or Lessee, after receiving notice of any proceeding or meeting, shall promptly provide to the other party written notice of any impending proceedings or meetings related to such Taking and each of Lessor and Lessee may participate in such proceedings or meetings. This Agreement shall terminate as to any portion of the Surface Site so condemned or taken (except in the case of a temporary Taking after the duration of which Lessee desires to continue the Agreement). Any award or other compensation ("Award") payable as a consequence of such Taking shall be paid as follows:

(a)      Lessor shall first be entitled to receive out of the Award: (1) to the extent a separate award is not made to Lessor therefor, any portion of the Award for damages to Lessor's adjacent property, including, without limitation, diminution in value of Lessor's adjacent property resulting from the Taking of the Surface Site or any portion thereof, and (2) the value of Lessor's fee interest in the Surface Site, valued as if no Facilities were on the Surface Site;

(b)      Lessee shall next be entitled to receive out of the Award: (1) the value of the Facilities installed on the Property that are taken in such Taking; (2) any other compensation or benefits payable by law as a consequence of the loss or interruption of Lessee's business and the other costs and expenses incurred by Lessee as consequence of the Taking; and (3) the remaining present value of Lessee's interest in the Property (determined at the time of the Taking), including the value of Lessee's interests under this Agreement; and

(c)      Lessor shall be entitled to any remainder of the Award.

Lessor shall have the exclusive right to negotiate with the taking authority for payment with respect to the fee interest of Lessor and all interests relating to the land. Lessee may negotiate with such lawful authority with respect to all or any part of the Surface Site other than the land, but shall not make any voluntary settlement with such lawful authority in any taking or condemnation proceeding, nor convey or agree to convey all or any part of the Facilities or Lessee's interest in and to the Surface Site under this Agreement to such authority in lieu of taking or condemnation, without first obtaining the written consent of Lessor.

10

In no event shall Lessee be entitled to any refund of any portion of the Consideration as a result of any Taking or any damage or destruction to the Surface Site or any Facilities located thereon.

20.    Default; Remedies. Lessee shall be in default hereunder if (a) Lessee fails to pay any amount required to be paid by Lessee under this Agreement and such failure is not cured within 30 days after the due date therefor or such shorter period as is necessary to prevent the imposition of any fine, penalty or lien against Lessor or the Surface Site, (b) Lessee fails to perform any other obligations of Lessee under this Agreement or fails to comply with any other terms and conditions of this Agreement and such failure is not cured within 180 days after notice thereof from Lessor or any third party (e.g., any governmental authority) or such shorter period as is necessary to prevent the imposition of any fine, penalty or lien against Lessor or the Surface Site, (c) Lessee abandons the Surface Site, (d) an involuntary petition is filed against Lessee under any bankruptcy or insolvency law or under the reorganization provisions of any law of like import or whenever a receiver of Lessee, or of the Surface Site or all or substantially all of the other property of Lessee, shall be appointed without acquiescence, and such petition or appointment is not discharged or stayed within 180 days after the happening of such event, or (e) Lessee makes an assignment of its property for the benefit of creditors or files a voluntary petition under any bankruptcy or insolvency law, or seeks relief under any other law for the benefit of debtors (each, an "Event of Default"). If an Event of Default occurs, Lessor shall have the right (1) to terminate this Agreement, (2) to perform the obligation or covenant of Lessee, in which case any amount paid by Lessor and all costs and expenses, including, without limitation, reasonable attorneys' fees and disbursements, incurred by Lessor in connection therewith, together with interest thereon at the maximum contract rate of interest from the respective dates of Lessor's making of the payment or incurring of the cost and expense to the date Lessee reimburses Lessor for such amount, shall be paid by Lessee to Lessor immediately on demand, and (3) exercise any or all other remedies available at law or in equity, all of which rights and remedies shall be cumulative and not exclusive of any other right or remedy.

21.    Liens; Encumbrances; Release.

a.    Lessee shall not create or permit to be created any lien, encumbrance or charge upon the Surface Site or any part thereof, without the prior written consent of Lessor, and Lessee shall not suffer any other matter or thing whereby the estate, rights and/or interest of Lessor (or any part thereof) in the Surface Site or any part thereof might be encumbered. If any lien, lien claim or lien affidavit is filed or claimed against the Surface Site or any part thereof or Lessor's estate, rights or interest therein, Lessee shall cause the same to be discharged of record by payment, deposit, bond order of a court of competent jurisdiction or otherwise within 30 days after filing thereof. If Lessee fails to cause such lien, claim or affidavit, as applicable, to be discharged within such 30-day period, then, in addition to any other right or remedy Lessor may have hereunder or at law or equity, Lessor may, but shall not be obligated to, discharge the same by payment or any other means Lessor, in Lessor's sole discretion, deems appropriate.  Any amount paid by Lessor and all costs and expenses, including, without limitation, reasonable attorneys' fees and disbursements, incurred by Lessor in connection with the discharge thereof, together with interest thereon at the maximum contract rate of interest from the respective dates of Lessor's making of the payment or incurring of the cost and expense to the date Lessee reimburses Lessor for such amount, shall be paid by Lessee to Lessor immediately on demand.

b.    Lessor and Lessee hereby acknowledge that, as of the Effective Date, multiple liens, lien claims and lien affidavits have been filed against the Surface Site, Lessor's property encumbered by the Easements (the "Easement Property") and other property owned by Lessor in Reeves County, Texas ("Lessor's Other Property") including, without limitation, Section 34, Block 57 of the Public School Lands Survey, as to which Lessor has not granted

Lessee any rights whatsoever (the "Existing Liens") in connection with work that was performed at Lessee's direction or for the benefit of Lessee. Schedule 1 attached hereto and made a part hereof sets forth each of the Existing Liens. In the event that, following the Effective Date, Lessor becomes aware of any additional Existing Liens which, prior to the Effective Date, were filed against, and at such time continue to encumber the Surface Site, the Easement Property or Lessor's Other Property, Lessor may amend Schedule 1 to include such additional Existing Liens upon delivery of written notice to Lessee setting forth such additional Existing Liens, and such additional Existing Liens shall be deemed to be added to Schedule 1 as of the date of delivery of such written notice. From and after the date of this Agreement, Lessee shall use its commercially reasonable efforts to cause the parties that filed the Existing Liens (and any party that subsequently files any lien, lien claim or lien affidavit) against the Surface Site, the Easement Property or Lessor's Other Property to release the same as to Lessor's fee interest in the Surface Site, the Easement Property and any of such Lessor's Other Property and expressly state in said release that such party waives and disclaims any future liens or lien rights as to Lessor's fee interest. Lessee shall also use its commercially reasonable efforts to amend all existing construction contracts, and shall cause all construction contracts hereafter entered into by Lessee, related to any construction to be performed (i) on the Surface Site, (ii) within the Easement Property, or (iii) in connection with any other project constructed or owned by Lessee in Reeves County (e.g., the Cottonwood I project), to include the language set forth on Exhibit "B" attached hereto with respect to the original/general contractor and to require the original/general contractor to include the language set forth in Exhibit "B" attached hereto with respect to subcontractors in all subcontracts entered into by such original/general contractor. In connection with their cases under chapter 11 of the Bankruptcy Code which are pending in the Bankruptcy Court, Lessee and its debtor affiliates shall use its best efforts to cause the plan of reorganization to provide for the encumbrance of the Existing Liens and any liens, lien claims and lien affidavits hereafter filed against the Surface Site, the Easement Property or any of Lessor's Other Property to be satisfied and released. Lessee shall indemnify and defend Lessor against and save Lessor, the Surface Site, the Easement Property, any other property owned by Lessor (including, without limitation, Lessor's Other Property) and any portion of any of the foregoing, harmless from and against all Claims and Losses (i) resulting from the assertion, filing, foreclosure or other legal proceedings with respect to any such Existing Liens and any liens, lien claims and lien affidavits hereafter filed and (ii) arising out of or related to any construction or other business conducted by Lessee or at Lessee's direction.  If any Existing Lien is not removed on or prior to (A) the later to occur of (I) the date which is ninety (90) days following the date such Existing Lien is added or deemed added to Schedule 1 hereto and (II) the earlier of the date which is (a) ninety (90) days following the effective date of a plan of reorganization filed by Lessee and confirmed by entry of an order of the United States Bankruptcy Court for the Southern District of Texas or (b) two hundred forty (240) days following the Effective Date of this Agreement, then Lessor may suspend Lessee's access without any notice or cure period required, and (B) the later to occur of (1) the date which is ninety (90) days following the date such Existing Lien is added or deemed added to Schedule 1 hereto and (2) the date which is three hundred sixty (360) days following the Effective Date of this Agreement, then Lessor may terminate this Agreement without any notice or cure period required.  For purposes of the immediately preceding sentence, all Existing Liens listed on Schedule 1 hereto as of the Effective Date shall be deemed to have been "added or deemed added to Schedule 1" as of the Effective Date.

22.    Restoration. Upon termination or expiration of this Agreement, except to the extent otherwise expressly agreed in writing by Lessor, Lessee shall restore the Surface Site to a condition and

12

contour substantially the same as existing on the Surface Site as of the Commencement Date, which restoration obligations (the "Restoration Requirements") shall include, without limitation, (a) removal of all above-grade Facilities and all foundations, footings, pads and other below-grade Facilities located on the Surface Site to not less than four (4) feet below grade, (b) burying of all foundations, footings, pads and other below-grade Facilities that are more than four (4) feet below grade with topsoil, (c) cleanup, removal and remediation of all Hazardous Materials, and (d) reseeding of the Surface Site with grasses and/or natural vegetation approved by Lessor; provided, however, that Lessor, in Lessor's sole discretion, may require Lessee to leave all or any portion of the Facilities on the Surface Site (and in good and operating condition) at the expiration or termination of this Agreement and to convey the same to Lessor by warranty deed free and clear of all liens and encumbrances (other than the Existing Encumbrances and any encumbrances expressly consented to in writing by Lessor). Unless otherwise directed by Lessor, Lessee shall complete the Restoration Requirements no later than three (3) months after the expiration or termination date. Following the expiration or termination date and until Lessee completes the Restoration Requirements, Lessee shall pay to Lessor rent in an amount per month (which shall not be prorated for any partial month) equal to the then-current fair market ground lease rental for the Surface Site as determined by Lessor in Lessor's sole but reasonable discretion, and Lessee shall be obligated to perform all other obligations of Lessee that applied during term of this Lease. Notwithstanding the foregoing, Lessee shall not have any obligation to remove any cables, lines, or conduit which is buried four (4) feet or more below-grade provided that no live lines (i.e., lines carry any electrical current) shall be left on or under the Surface Site, and any access roads constructed on the Surface Site may remain on the Surface Site at Lessee's option, unless Lessor specifically requests their removal in writing. During such three (3) month period, Lessee shall have a revocable license on, over and across the Surface Site for purposes of completing the Restoration Requirements.

TO HAVE AND TO HOLD the rights, privileges, and authority hereby granted unto Lessee, its successors and assigns, under this ninety nine (99) year lease, subject to the terms and conditions set forth herein.  This Agreement and all of its terms, provisions, and obligations shall be covenants running with the land affected thereby and shall inure to the benefit of and be binding upon Lessor and Lessee and their respective heirs, executors, administrators, successors, and assigns.

EXECUTED and effective as of June 16, 2023 (the "Effective Date").

(Signatures and Acknowledgments on Following Pages)

**LESSOR:**

**JRC/RGC34 Trade Tracts, LTD,**
a Texas limited partnership

By its General Partner:
**Jefferson Realty Co.,**
a Texas corporation

By: _R. Cull Pawll_
Print Name: _R. CULLEN POWELL_
Title: _CHAIRMAN /PRESIDENT_

**ACKNOWLEDGMENT**

STATE OF TEXAS          §
                                     §
COUNTY OF _HARRIS_     §

BEFORE ME, the undersigned authority, on this the _24th_ day of _May_, 2023, personally appeared _R. Cullen Powell_, the _Chairman and President_ of **Jefferson Realty Co.,** a Texas corporation, as General Partner of **JRC/RGC34 Trade Tracts, LTD,** a Texas limited partnership, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed, in the capacity therein stated, and that he/she was authorized to do so.

_Aracelis Barr_
Signature of Notary Public

ARACELI LOZANO
NOTARY PUBLIC
STATE OF TEXAS
ID. 131600659
EXP. 06/11/2026

[Signature Page to Lease – Cottonwood 2 - Lessor]

**LESSEE:**

**Core Scientific Operating Company,**
a Delaware corporation

By: _____
Print Name: Denise Sterling
Title: Chief Financial Officer

*Denise Sterling*

## ACKNOWLEDGEMENT

STATE OF _Texas_        §
                        §
COUNTY OF _Denton_      §

    BEFORE ME, the undersigned authority, on this the ___13___ day of ___June___, 2023, personally appeared Denise Sterling, the Chief Financial Officer of **Core Scientific Operating Company,** a Delaware corporation, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same on behalf of such company for the purposes and consideration therein expressed, in the capacity therein stated, and that he/she was authorized to do so.

_____
Signature of Notary Public   940.367.7971

> JULIE HUNT
> Notary Public, State of Texas
> Comm. Expires 02-20-2026
> Notary ID 131458215

[Signature Page to Lease – Cottonwood 2 - Lessee]


*Execution Version*

EXHIBIT "A"

[ATTACHED]



**EXHIBIT "A"**

REEVES COUNTY, TEXAS

# REEVES COUNTY, TEXAS
## PUBLIC SCHOOL LANDS SURVEY, SECTION 38, BLOCK 57, ABSTRACT 2489

PRIORITY POWER
COTTONWOOD
JRC/RGC34 TRADE TRACTS, LTD.

### 50.00 ACRE SURFACE LEASE

Being a 50.00 acre surface lease located in the Public School Lands Survey, Section 38, Block 57, Abstract 2489, Reeves County, Texas; being part of a tract of land described in Deed to JRC/RGC34 Trade Tracts, Ltd. as recorded in Volume 640, Page 464 of the Official Public Records of Reeves County Texas; said surface lease being more particularly described as follows:

**BEGINNING** at a 1/2-inch capped iron rod set for the Southeast corner of the herein described surface lease, from which a 1/2-inch capped iron rod found for the Southeast corner of said Section 38 bears S 11°54'27" E, a distance of 3,746.13 feet;

**THENCE** N 88°07'16" W, a distance of 1,475.81 feet, to a 1/2-inch capped iron rod set for corner;

**THENCE** N 01°52'44" E, a distance of 1,475.80 feet, to a 1/2-inch capped iron rod set for corner;

**THENCE** S 88°07'16" E, a distance of 1,475.81 feet, to a 1/2-inch capped iron rod set for corner;

**THENCE** S 01°52'44" W, a distance of 1,475.80 feet, to the **POINT OF BEGINNING**, in all containing 2,178,000 square feet or 50.00 acres, more or less. All 1/2-inch iron rods set with cap stamped "DATAPOINT 10194585" unless otherwise noted.

I, Matthew Tomerlin, Registered Professional Land Surveyor No. 6503 of the State of Texas, do hereby certify this plat shows the results of an on the ground survey made under my direction. **Original signed and stamped in red ink.**



_____Date of Signature: February 7, 2022

MATTHEW TOMERLIN
REGISTERED PROFESSIONAL LAND SURVEYOR NO. 6503
FIRM REGISTRATION/LICENSE NO. 10194585
FOR DATAPOINT SURVEYING AND MAPPING
12450 NETWORK BLVD, SUITE 300
SAN ANTONIO, TX. 78249
(777) 726-4240 OFFICE
(777) 726-4241 FAX



SHEET 2 OF 2

EXHIBIT "B"

CONTRACTOR/SUBCONTRACTOR PROVISIONS

To be included in any contract with an original/general contractor:

"Contractor acknowledges that Contractor is contracting **ONLY** with Core Scientific Operating Company, which is a lessee or easement estate holder with respect to the property to or on which the materials and/or labor to be provided by Contractor will be provided, and that Contractor has no contract with the owner of fee title to such property or such owner's agent, trustee, receiver, contractor(s), or subcontractor(s). Contractor understands that in the event Core Scientific Operating Company fails to pay Contractor for materials and/or labor, Contractor's right to file a mechanics and/or materialmen's lien is limited to the leasehold interest or easement estate of Core Scientific Operating Company and does not extend to the fee interest of the owner of the property, and Contractor expressly waives and disclaims any right to any lien whatsoever on such fee interest and shall include such waiver and disclaimer in a lien, lien claim or lien affidavit filed by Contractor."

To be included in all subcontracts:

"Subcontractor acknowledges that Subcontractor is contracting **ONLY** with _____ [INSERT NAME OF CONTRACTOR] which is the contractor for Core Scientific Operating Company which is a lessee or easement estate holder with respect to the property to or on which the materials and/or labor to be provided by Subcontractor will be provided, and that Subcontractor has no contract with the owner of fee title to such property or such owner's agent, trustee, receiver, contractor(s), or subcontractor(s). Subcontractor understands that in the event Core Scientific Operating Company or its contractor fails to pay Subcontractor for materials and/or labor, Subcontractor's right to file a mechanics and/or materialmen's lien is limited to the leasehold interest or easement estate of Core Scientific Operating Company and does not extend to the fee interest of the owner of the property, and Subcontractor expressly waives and disclaims any right to any lien whatsoever on such fee interest and shall include such waiver and disclaimer in a lien, lien claim or lien affidavit filed by Subcontractor."

**SCHEDULE 1**

**EXISTING LIENS**

1. That certain Notice of Mechanic's Lien in the amount of $1,153,226.72, dated as of September 8, 2022, filed by Graybar Electric Company, Inc., recorded on September 9, 2022, under Recording Number 202206200, as partially released by that certain Unconditional Waiver and Partial Release of Lien in the amount of $279,961.04, dated as of September 23, 2022.

2. That certain Notice of Mechanic's Lien in the amount of $2,566,892.93, filed by Condair, Inc., recorded on December 16, 2022, under Recording Number 2022008811.

3. That certain Notice of Mechanic's Lien in the amount of $677,993.88, dated as of November 11, 2022, filed by Coonrod Electric Co., LLC, recorded on November 15, 2022, under Recording Number 2022007984.

4. That certain Notice of Mechanic's Lien in the amount of $82,240.00, dated as of December 14, 2022, filed by T&D Moravits & Co., recorded on December 15, 2022, under Recording Number 2022008778.

5. That certain Notice of Mechanic's Lien in the amount of $96,192.50, dated as of December 14, 2022, filed by T&D Moravits & Co., recorded on December 15, 2022, under Recording Number 2022008779.

6. That certain Notice of Mechanic's Lien in the amount of $305,769.50, dated as of December 14, 2022, filed by T&D Moravits & Co., recorded on December 15, 2022, under Recording Number 2022008777.

7. That certain Notice of Mechanic's Lien in the amount of $9,007,945.01, filed by Huband-Mantor Construction, Inc., recorded on November 14, 2022, under Recording Number 2022007951, as amended by that certain Notice of Mechanic's Lien in the amount of $12,548,795.32, recorded on December 29, 2022, under Recording Number 2022009071, as amended by that certain Notice of Mechanic's Lien in the amount of $15,603,889.45, recorded on January 18, 2023, under Recording Number 2023000447.

8. That certain Notice of Mechanic's Lien in the amount of $1,699,939.21, filed by Huband-Mantor Construction, Inc., recorded on November 14, 2022, under Recording Number 2022007953, as amended by that certain Notice of Mechanic's Lien in the amount of $1,967,676.93, recorded on January 18, 2023, under Recording Number 2023000448.

9. That certain Notice of Mechanic's Lien in the amount of $83,744.45, filed by MK Marlow Company recorded on November 14, 2022, under Recording Number 2022007947.

10. That certain Notice of Mechanic's Lien in the amount of $978,127.96, filed by MK Marlow Company recorded on November 14, 2022, under Recording Number 2022007946.

11. That certain Notice of Mechanic's Lien in the amount of $52,056.42, filed by Herc Rentals, Inc., recorded on February 15, 2023 under Recording Number 2023001174.