IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| CORE SCIENTIFIC, INC., *et al.*, | § § § | Case No. 22-90341 (CML) |
| | § § | (Jointly Administered) |
| Debtors.[1] | § § § | |

### DEBTORS' OBJECTION TO PROOF OF CLAIM NO. 34 FILED BY OKLAHOMA GAS AND ELECTRIC COMPANY

> **THIS IS AN OBJECTION TO YOUR CLAIM. THIS OBJECTION ASKS THE COURT TO DISALLOW THE CLAIM THAT YOU FILED IN THIS BANKRUPTCY CASE. YOU SHOULD IMMEDIATELY CONTACT THE OBJECTING PARTY TO RESOLVE THE DISPUTE. IF YOU DO NOT FILE A RESPONSE WITHIN 30 DAYS AFTER THE OBJECTION WAS SERVED ON YOU, YOUR CLAIM MAY BE DISALLOWED WITHOUT A HEARING.**

Core Scientific Operating Company f/k/a Core Scientific, Inc. ("**Core**"), and its debtor affiliates in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"), represent as follows in support of this claim objection (the "**Objection**") and request entry of an order, substantially in the form attached hereto as <u>Exhibit A</u> (the "**Proposed Order**") disallowing Proof of Claim No. 34 (the "**OGE POC**") filed by Oklahoma

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions, VII, LLC (3198). The Debtors' corporate headquarters and service address is 210 Barton Springs Road, Suite 300, Austin, Texas 78704.

Gas and Electric Company ("**OGE,**" and together with Core, the "**Party or Parties**") against Core Scientific, Inc.[2]

I.      **Preliminary Statement**

1. The OGE POC is predicated on a contract that is no longer in effect and was superseded by a later agreement that precludes any recovery for OGE. Specifically, OGE attaches to the OGE POC a "Will Serve Agreement for Electric Service" that Core entered into with OGE on September 17, 2021 for electrical services, in connection with Core's construction of a cryptocurrency mining and data center facility in Muskogee, OK (the "**2021 Agreement**"). The 2021 Agreement, however, is not operative and has no force and effect. Although not referenced in the OGE POC, on March 1, 2022, the parties entered into a subsequent agreement, the "Electric Service Agreement Minimum Bill" (the "**2022 Agreement**"), that superseded the 2021 Agreement. The subsequent 2022 Agreement related to the same subject matter as the original 2021 Agreement. Pursuant to its terms, the 2022 Agreement terminated and also has no force and effect. Accordingly, because the 2021 Agreement was superseded and the 2022 Agreement terminated and nothing is owed (or even claimed to be owed) under that subsequent agreement, the OGE POC should be disallowed in all respects.

2. Furthermore, even if the 2021 Agreement was in effect, or if OGE were to change course and assert damage claims under the 2022 Agreement—and there is no factual or legal support for any such assertions—OGE is still not entitled to any recovery because there is nothing to support the approximately $8 million claim that OGE asserts against the Debtors. In

---

[2] As discussed in the Declaration of Michael Bros in Support of the Debtors' Chapter 11 Petitions and First Day Relief ¶31 *In re Core Scientific, Inc.*, *et al.,* No. 22-90341-11 (Bankr. S.D. Tex. Dec. 21, 2022) (ECF No. 5), Core Scientific, Inc. changed its name to Core Scientific Operating Company in January 2022. Therefore, any claims against Core Scientific, Inc. are more properly claims against Core Scientific Operating Company.

short, there is no basis for OGE to recover against the Debtors, and the OGE POC should be disallowed in its entirety.

## II.     Relief Requested

3. By this Objection, pursuant to sections 105(a) and 502(b) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 3007-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Local Rules**"), the Debtors seek entry of the Proposed Order, disallowing the OGE POC in its entirety.

## III.    Jurisdiction

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper pursuant to 28 U.S.C §§ 1408 and 1409.  The relief requested herein is sought pursuant to §§ 105(a) and 502(b) the Bankruptcy Code, Bankruptcy Rule 3007, and Bankruptcy Local Rule 3007-1.

## IV.     Background

### A.     *The 2021 Agreement*

5. On September 17, 2021, Core and OGE entered into the 2021 Agreement, which provided that Core would purchase electrical services from OGE to be used at Core's cryptocurrency mining and data center facility to be located in Lot 5 of the John T Griffin Industrial Park in Muskogee, Oklahoma (the "**Service Location**").  A true and correct copy of the 2021 Agreement is attached to the accompanying Declaration of Carol Haines (the "**Haines Decl.**") as Exhibit 1.

6. The 2021 Agreement expressly contemplated that "[a] separate Electric Services Agreement with specific terms and conditions may be required for permanent electric service." *Haines Decl.*, Ex. 1 (2021 Agreement) at 1.

3

B.  *The 2022 Agreement*

7. On March 1, 2022, the Parties entered into that separate agreement—the 2022 Agreement. *Haines Decl*. ¶ 5. The 2022 Agreement is governed by Oklahoma law. Like the 2021 Agreement, the 2022 Agreement referred to electrical service to be provided to Core at the same Service Location. A true and correct copy of the 2022 Agreement is attached to the accompanying *Haines Decl*. as Exhibit 2.

8. The 2022 Agreement, which OGE ignores in its OGE POC, contains more detailed information regarding the electric service to be provided. It also states in pertinent part:

> This Agreement constitutes the entire agreement between the Parties with respect to the subject mat[t]er contained herein and **supersedes all prior or contemporaneous oral or written agreements, conditions or representations.**

*Haines Decl*., Ex. 2 (2022 Agreement) at 3 (emphasis added).

9. The 2022 Agreement contained two Attachments, A and B, that were incorporated into the 2022 Agreement "in their entirety by reference and are deemed to be a part of this Agreement." *Id.* at 2–3. As relevant here, Attachment B of the 2022 Agreement required Core to post security in the amount of $17 million and was meant to reflect the total cost of the facility. *Id.* at 7. According to Attachment B, the purpose of paying the required security in advance was to ensure OGE's investment in the project was justified and required the security deposit to be paid within thirty (30) days from date the 2022 Agreement was signed. *Haines Decl.*, Ex. 2 (2022 Agreement) at 3. The text of the 2022 Agreement was also clear on this point:

> As a condition to [OGE's] willingness to commit to expanding its present electric[al] system to meet [Core's] estimated electric power needs as stated in this Agreement, [Core] shall provide to [OGE] within thirty (30) days of the date that this Agreement is signed sufficient security in cash or surety bond or irrevocable bank letter of credit issued by a domestic bank in a form acceptable to [OGE] as required under the terms of this agreement.

4

*Id.* at 2.

10. Attachment B further provided that OGE could, in its sole discretion, extend the period for Core to pay the security deposit by thirty (30) days. *Id.* at 7. Attachment B further states that if Core does not provide the security deposit within 30 days—or by any extension period—then the Agreement shall terminate and "have no force and effect." *Haines Decl.*, Ex. 2 (2022 Agreement) at 3. Core never paid the security deposit. *Haines Decl.* ¶ 6. Because it is undisputed that Core did not pay the security deposit, it also cannot be disputed that the 2022 Agreement terminated and, by its own plain terms, has "no force and effect." *Id.*

### V.  Basis for Relief

11. As set forth in Bankruptcy Rule 3001(f), a properly executed and filed proof of claim constitutes *prima facie* evidence of the validity and the amount of the claim under section 502(a) of the Bankruptcy Code. *See, e.g.*, *In re Jack Kline Co.*, 440 B.R. 712, 742 (Bankr. S.D. Tex. 2010). However, *prima facie* validity under Bankruptcy Rule 3001(f) "can be overcome by rebuttal evidence" *In re Fidelity Holding Co.*, 837 F.2d 696, 698 (5th Cir. 1988). "Upon production of this rebuttal evidence, the burden shifts to the claimant to prove its claim by a preponderance of the evidence." *In re Armstrong*, 347 B.R. 581, 583 (Bankr. N.D. Tex. 2006) (citing *In re Fidelity Holding*, 837 F.2d at 698). And, "the ultimate burden of proof always lies with the claimant." *Id.* (citing *Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15 (2000)).

#### A.  *The 2022 Agreement Superseded the 2021 Agreement and Was Terminated*

12. The OGE POC should be disallowed because the 2021 Agreement that OGE relies on is not an operative agreement. The 2022 Agreement expressly "supersedes all prior or contemporaneous oral or written agreements, conditions or representations." *Haines Decl.* Ex. 2 (2022 Agreement) at 3. Thus, by its language, the 2022 Agreement rendered the 2021 Agreement null and void, and became the controlling agreement between the Parties.

13. In addition to the express language rendering the 2021 Agreement ineffective, under Oklahoma law, a subsequent contract covering the same subject matter as a previous contract becomes controlling and supersedes the previous contract. *See OK Sales, Inc. v. Canadian Tool & Die, Ltd.*, No. 08-cv-24-TCK-TLW, 2009 WL 961791, at *3 (N.D. Okla. Mar. 31, 2009) (collecting cases). Here, the 2022 Agreement clearly supersedes the 2021 Agreement. First, the 2022 Agreement contains an explicit clause superseding any and all prior written agreements, including the 2021 Agreement. *Haines Decl*. Ex. 2 (2022 Agreement) at 3. Second, the 2022 Agreement and the 2021 Agreement concern the same subject matter. Third, the 2022 Agreement was more comprehensive and included details and obligations not provided for in the 2021 Agreement.

14. The undisputed facts further confirm that the 2022 Agreement terminated when Core did not pay the $17 million security deposit. Attachment B of the 2022 Agreement states if Core fails to "provide [OGE] with the Required Security . . . within thirty (30) days from the date that the Agreement is signed, then the Agreement shall terminate" and "shall have no force and effect." *Id.*, at 7. Thus, any obligations by the Parties ended with the termination of the 2022 Agreement. Given that the security deposit was to be paid at the outset of the 2022 Agreement, indeed the 2022 Agreement provides that time was of the essence as relates to that payment, the remedy for failure to pay the deposit was termination of the 2022 Agreement, which agreement "shall have no force and effect." *Id.*

**B.    Core Has No Obligations to OGE Under the 2021 Agreement**

15. The effect of the 2022 Agreement superseding the 2021 Agreement discharges the Parties' contractual obligations under the 2021 Agreement. *Shawnee Hosp. Auth. v. Dow Constr., Inc.*, 1990 OK 137, ¶ 7, 812 P.2d 1351, 1353 ("Before full performance, contractual obligations may be discharged by a subsequent agreement whose effect is to alter,

modify or supersede the terms of the original agreement or to rescind it altogether."). Additionally, since the 2022 Agreement serves as the operable contract, the OGE POC must be governed by the 2022 Agreement. *Id.* ("A claim under an earlier contract will be governed by a later agreement if the latter operates to supersede or rescind the former."). Therefore, to the extent OGE is relying on the 2021 Agreement as the basis for its claim, which appears to be the case given OGE attached only that agreement to the OGE POC, the OGE POC should be disallowed because the 2021 Agreement was no longer in effect and was superseded by the 2022 Agreement.

16. Moreover, to the extent OGE contends it nevertheless is still entitled to recover for alleged costs incurred as reflected in the attachment of "Cost Elements" in its OGE POC, OGE is mistaken. First, as noted above, because the 2022 Agreement expressly stated that the security deposit was a condition to OGE moving forward, was owed within thirty days or else the contract terminated, and the deposit was never paid, it follows that any funds expended by OGE in connection with the agreement was at its own risk and on its own volition. Nothing permits OGE to now recover these alleged expenses from the Debtors. Second, there is nothing in the materials attached to the OGE POC indicating when or why any of the "Cost Elements" were allegedly incurred. Rather, the OGE POC merely provides a list of expenses that OGE allegedly incurred "through 12/31/2022," but does not specify whether these "Griffin Substation" expenses were specifically related to the Service Location or why any expenses were being incurred at all given that the security deposit was never paid, let alone after the 2022 Agreement terminated—even assuming costs could be recovered upon that termination—which they cannot for the reasons stated above.

## VI. Reservation of Rights

17. This Objection is limited to the grounds stated herein and accordingly is without prejudice to the rights of the Debtors or any other party in interest to object to any claim,

including any of OGE's claims, on any further grounds, and the Debtors expressly reserve all other substantive or procedural objections that they may have.  Nothing contained herein is intended to be or shall be deemed as (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver of the Debtors' or any appropriate party-in-interest's rights to dispute the amount of, basis for, or validity of any claim, (iii) a waiver of the Debtors' or any other party-in-interest's rights under the Bankruptcy Code or any other applicable nonbankruptcy law, or (iv) an approval, adoption, assumption, or rejection of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code.

### VII. Notice

18. Notice of this Objection will be provided to (i) any party that has requested notice pursuant to Bankruptcy Rule 2002, (ii) the affected claimant, and (iii) any other party entitled to notice pursuant to Bankruptcy Local Rule 9013-1(d).

**WHEREFORE** the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: October 17, 2023
Houston, Texas

        */s/ Alfredo R. Pérez*
        WEIL, GOTSHAL & MANGES LLP
        Alfredo R. Pérez (15776275)
        Clifford W. Carlson (24090024)
        700 Louisiana Street, Suite 1700
        Houston, Texas 77002
        Telephone:  (713) 546-5000
        Facsimile:   (713) 224-9511
        Email:        Alfredo.Perez@weil.com
                      Clifford.Carlson@weil.com

        -and-

        WEIL, GOTSHAL & MANGES LLP
        Ray C. Schrock (admitted *pro hac vice*)
        Ronit J. Berkovich (admitted *pro hac vice*)
        Theodore E. Tsekerides (admitted *pro hac vice*)
        Christine A. Calabrese (admitted *pro hac vice*)
        767 Fifth Avenue
        New York, New York 10153
        Telephone:  (212) 310-8000
        Facsimile:   (212) 310-8007
        Email:        Ray.Schrock@weil.com
                      Ronit.Berkovich@weil.com
                      Theodore.Tsekerides@weil.com
                      Christine.Calabrese@weil.com

        *Counsel for Debtors and Debtors in Possession*

**Certificate of Service**

I hereby certify that on October 17, 2023, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                                                                              */s/ Alfredo R. Pérez*
                                                                                               Alfredo R. Pérez