## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| CORE SCIENTIFIC, INC., *et al.*, | § | Case No. 22-90341 (CML) |
| | § | |
| | § | (Jointly Administered) |
| Debtors.[1] | § | |
| | § | |

### MOTION OF THE DEBTORS FOR ENTRY OF
### AN ORDER FURTHER EXTENDING EXCLUSIVE PERIODS
### PURSUANT TO SECTION 1121(d) OF THE BANKRUPTCY CODE

> **IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING, SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS PLEADING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT WITHIN TWENTY-ONE (21) DAYS FROM THE DATE YOU WERE SERVED WITH THIS PLEADING. YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

Core Scientific, Inc. ("**Core Parent**") and its debtor affiliates in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, with Core Parent, the "**Debtors**" or the "**Company**"), file this motion (the "**Motion**") for entry of an order extending the periods during which the Debtors have the exclusive right to (i) file a chapter 11 plan (the "**Exclusive Filing Period**") and (ii) solicit acceptances thereof (the "**Exclusive Solicitation Period**" and together with the Exclusive Filing period, the "**Exclusive Periods**"), in each case, by

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions, VII, LLC (3198). The Debtors' corporate headquarters and service address is 210 Barton Springs Road, Suite 300, Austin, Texas 78704.

60 days, through and including December 16, 2023 and February 16, 2024, respectively.   In support of the Motion, the Debtors respectfully represent as follows:

<u>**Preliminary Statement**</u>

1.      Since filing their Second Exclusivity Motion, the Debtors have continued to advance these chapter 11 cases and have worked diligently to build widespread consensus around the terms of a value-maximizing chapter 11 plan.[2]  Pursuant to the Mediation Order entered on July 12, 2023,[3] the Debtors have spent the last several months participating in mediation ("**Mediation**") overseen by the Honorable Marvin Isgur, as mediator, with the following key stakeholders in these chapter 11 cases: (i) the Ad Hoc Noteholder Group; (ii) the Replacement DIP Lender; (iii) the Equipment Lenders; (iv) the Creditors' Committee; and (v) the Equity Committee (each as defined in the Mediation Order) (collectively, the parties described in clauses (i)–(v), the "**Key Stakeholder Groups**").   Following approximately two months of good faith negotiations in Mediation, the Debtors, the Ad Hoc Noteholder Group, and the Equity Committee reached an agreement in principle with respect to certain key economic terms of a chapter 11 plan (the "**Mediated Settlement**") and filed a joint notice announcing such settlement on September 18, 2023.[4]  The Mediated Settlement resolved a number of open issues among the Debtors, the Ad Hoc Noteholder Group, and the Equity Committee.  Since that time, the Debtors and the Key Stakeholder Groups have extended Meditation to October 31, 2023, with the

---

[2] On June 20, 2023, the Debtors filed *Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors* [Docket No. 974] (the "**Initial Plan**").  On September 7, 2023, the Debtors filed *Second Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors*, dated September 7, 2023 [Docket No. 1199] (the "**Second Amended Plan**").  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Second Amended Plan.

[3] *Agreed Mediation Order Appointing Judge Marvin Isgur as Mediator Regarding Debtors' Chapter 11 Plan*, entered July 12, 2023 [Docket No. 1052] (the "**Mediation Order**").

[4] *Joint Notice of Mediated Agreement in Principle Between the Debtors and the Ad Hoc Noteholder Group*, dated September 18, 2023 [Docket No. 1245] (the "**Joint Notice**").

possibility of a further extension, if needed, to facilitate the resolution of certain open issues and the documentation of the Mediated Settlement.

2.     As of the date hereof, the Debtors believe that three of the five Key Stakeholder Groups (the Ad Hoc Noteholder Group, the Equipment Lenders, and the Equity Committee) support an updated chapter 11 plan that reflects the Mediated Settlement and other agreed terms (the "**Plan**"), subject to satisfactory resolution of certain open issues.  The Debtors are currently finalizing (i) the terms of a restructuring support agreement between the Debtors, the Ad Hoc Noteholder Group, and the Equity Committee (the "**RSA**") and (ii) the Plan.  The Debtors are not certain whether two of the Key Stakeholder Groups (the Replacement DIP Lender and the Creditors' Committee) support the mediated Plan, but the Debtors are also hopeful such groups support, or will ultimately support, the value-maximizing Plan.  Accordingly, the Debtors believe they are positioned to proceed with a value-maximizing chapter 11 plan that has widespread support across the Debtors' capital structure.  A hearing to consider approval of the Disclosure Statement (the "**Disclosure Statement**") is set for __**November 14, 2023 at 2:00 p.m. (Prevailing Central Time)**__.

3.     In addition to progressing negotiations with the Key Stakeholder Groups, the Debtors have taken a number of other critical steps to maximize value for their estates and advance these chapter 11 cases towards confirmation and emergence, including, but not limited to, the following accomplishments:

    a.  **Capital Raise Process**.  On September 18, 2023, Core Parent and affiliates of the Replacement DIP Lender (collectively, "**B. Riley**") entered into (i) that certain *Committed Equity Facility Commitment Letter* (the "**B. Riley ELOC Commitment Letter**") and related equity line of credit term sheet attached thereto as __Annex A__ (the "**B. Riley ELOC Term Sheet**") and (ii) that certain *Exit Facility Commitment Letter* (the "**B. Riley Exit Facility Commitment Letter**") and related exit facility term sheet attached thereto as __Annex A__ (the "**B. Riley Exit Facility Term Sheet**").  Pursuant to the B. Riley ELOC Commitment Letter, the Debtors

CRITICAL

have received a commitment for a $150 million equity line of credit in accordance with the terms set forth in the B. Riley ELOC Term Sheet (the "**B. Riley ELOC Facility**"). The B. Riley Exit Facility Commitment Letter provides for, among other things, a commitment of $25 million in new money as part of an exit facility, which will also include a roll-up of (a) the Replacement DIP Lender's Allowed DIP Claims and (b) the Allowed B. Riley Unsecured Claims, in accordance with the terms of the B. Riley Exit Facility Term Sheet (the "**B. Riley Exit Facility**"). However, the Debtors are also negotiating the terms of an alternative new money exit facility with certain of the Convertible Noteholders (the "**Convertible Noteholders Exit Facility**"). The Convertible Noteholders Exit Facility would also provide the Debtors with new money and additional funds to satisfy the Allowed DIP Claims, thereby permitting the Debtors to access the same liquidity as the B. Riley Exit Facility. Accordingly, the Debtors will only need to move forward with either the B. Riley Exit Facility or the Convertible Noteholders Exit Facility. In addition, the Debtors are in advanced discussions with the Equity Committee regarding a $55 million equity rights offering (the "**Rights Offering**") and a related backstop commitment for all or a portion of such Rights Offering amount.

b. **Key Settlements and Agreements**. The Debtors have obtained this Court's approval of a key settlement with Celsius Mining LLC and certain of its affiliates (collectively, "**Celsius**"), which resolves approximately $312 million in claims against the estates, generates $14 million in cash, and saves significant litigation costs (the "**Celsius Settlement**").[5] The Debtors have also obtained Court approval of additional settlements with certain M&M lien claimants[6] and have filed a motion seeking approval of another.[7] Further, on September 5, 2023, Core Parent and Bitmain Technologies Delaware Limited ("**Bitmain**") entered into that certain *Asset Purchase Agreement* (the "**Bitmain APA**"), pursuant to which the Debtors will acquire 27,000 units of S19j XP Miners for total consideration of $77.1 million, $53.9 million of which will be paid New Common Interests (the "**Bitmain Transaction**"). The Bitmain Transaction will permit the Debtors to expand their self-mining operations, increase revenue generation, and preserve liquidity for the reorganized company by acquiring miners in exchange for

---

[5] *See Emergency Order Approving (I) Global Settlement Between Debtors and Celsius, (II) Sale of Cedarville Facility and Related Assets, (III) Assumption and Assignment of Transferred Contracts and (IV) Granting Related Relief*, entered October 2, 2023 [Docket No. 1292] ("**Celsius Settlement Order**").

[6] *See, e.g.*, *Order Approving (I) Global Settlement Between Debtors and Trilogy LLC, and (II) Granting Related Relief*, entered October 2, 2023 [Docket No. 1289] (the "**Trilogy Settlement Order**"); *Order Approving (I) Global Settlement Between Debtors and J.W. Didado Electric LLC, and (II) Granting Related Relief*, entered October 2, 2023 [Docket No. 1288] (the "**J.W. Didado Settlement Order**"); *Order Approving (I) Global Settlement Between Debtors and Huband-Mantor Construction, Inc., and (II) Granting Related Relief*, entered August 18, 2023 [Docket No. 1167] (the "**HMC Settlement Order**"); *Order Approving (I) Global Settlement Between Debtors and Condair Inc., and (II) Granting Related Relief*, entered August 16, 2023 [Docket No. 1155] (the "**Condair Settlement Order**").

[7] *See Debtors' Motion for Order (I) Approving Global Settlement Between Debtors and Harper Construction Company, Inc. and (II) Granting Related Relief*, dated August 30, 2023 [Docket No. 1189].

primarily equity.  The Debtors anticipate filing a motion seeking approval of the Bitmain Transaction in the near term.

4.      Notwithstanding the Debtors' significant progress since filing the Second Exclusivity Motion, additional work remains.  To maximize value for all stakeholders, it is imperative that the Exclusive Periods be further extended to permit the Debtors to continue to lead the chapter 11 plan process without the risks, costs, and disruption that would result from a competing process.  Further extending the Debtors' Exclusive Periods will enable the Debtors to resolve remaining open issues among the Key Stakeholder Groups and other parties in interest, finalize the Plan in accordance with the Mediated Settlement, seek and obtain approval of the Disclosure Statement, and move forward with solicitation and prosecution of such plan.[8]  Without this extension, the Debtors' reorganization efforts to date may be jeopardized or otherwise undermined.  **Moreover, multiple parties, including the Ad Hoc Noteholder Group, the Equipment Lenders, and the Equity Committee, support the Debtors' requested extension.** As such, a further extension of the Debtors' Exclusive Periods is appropriate and necessary.

5.      Accordingly, for the reasons set forth herein, the Debtors request that the Court extend the Exclusive Periods, in each case, by 60 days, without prejudice to the Debtors' rights to seek a further extension.[9]

## Relief Requested

6.      Pursuant to section 1121(d) of title 11 of the United States Code (the "**Bankruptcy Code**"), the Debtors request entry of an order extending the Exclusive Filing

---

[8]  In the unlikely event that the Debtors are unable to finalize a largely consensual Plan along the terms of the Mediated Settlement, the Debtors will be prepared to move forward with and prosecute a non-consensual chapter 11 plan and related disclosure statement.

[9]  Although the Debtors have not filed an accompanying declaration with this Motion, to the extent the Motion is contested or the Court otherwise deems it appropriate, the Debtors may file an accompanying declaration(s) and make such parties available for cross examination.

Period and the Exclusive Solicitation Period, in each case, by 60 days, through and including December 16, 2023 and February 16, 2024, respectively, without prejudice to the Debtors' right to request further extensions of such periods in accordance with section 1121(d) of the Bankruptcy Code.[10]

7.      A proposed form of order granting the relief requested herein is annexed hereto as **Exhibit A** (the "**Proposed Order**").

## Jurisdiction and Venue

8.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

9.      On December 21, 2022 (the "**Petition Date**"), the Debtors each filed with this Court a voluntary case under chapter 11 of the Bankruptcy Code.  The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

10.      The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 1015-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Local Rules**").

---

[10] Subject to entry of the Proposed Second Exclusivity Order, the Debtors' second extension of the Exclusive Filing Period and Exclusive Solicitation Period are currently set to expire after October 17, 2023 and December 18, 2023, respectively.  Paragraph 30 of the *Procedures for Complex Chapter 11 Cases in the Southern District of Texas* provides that "with these procedures to extend the time to take any action before the expiration of the period prescribed by the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, or a confirmed plan, the time for taking the action is automatically extended until the Court rules on the motion."  By the filing of this Motion prior to the expiration of the Exclusive Filing Period, the Exclusive Filing Period will not expire prior to resolution of the Motion.

11.     On January 9, 2023, the United States Trustee for Region 7 (the "**U.S. Trustee**") appointed the Creditors' Committee in these chapter 11 cases pursuant to section 1102 of the Bankruptcy Code.  On March 23, 2023, the U.S. Trustee appointed the Equity Committee in these chapter 11 cases pursuant to section 1102 of the Bankruptcy Code.  No trustee or examiner has been appointed in these chapter 11 cases.

12.     On April 10, 2023, the Debtors filed the *Motion of the Debtors for Order Extending Exclusive Periods Pursuant to Section 1121(D) of the Bankruptcy Code* [Docket No 773] (the "**First Exclusivity Motion**").  On June 13, 2023, the Court entered the *Order Pursuant to Section 1121(d) of the Bankruptcy Code Extending Exclusive Periods*, extending (i) the Exclusive Filing Period through and including July 19, 2023 and (ii) the Exclusive Solicitation Period through and including September 17, 2023, in each case, without prejudice to the Debtors' rights to seek additional extensions of such periods [Docket No. 962] (the "**First Exclusivity Order**").

13.     On July 18, 2023, the Debtors filed the filed the *Motion of Debtors for Entry of an Order Further Extending Exclusive Periods Pursuant to Section 1121(D) of the Bankruptcy Code* [Docket No. 1065] (the "**Second Exclusivity Motion**").  On October 10, 2023, the Debtors filed the *Certificate of No Objection Regarding Motion of the Debtors for Entry of an Order Further Extending Exclusive Periods Pursuant to Section 1121(d) of the Bankruptcy Code* [Docket No. 1325], with a proposed *Order Further Extending Exclusive Periods Pursuant to Section 1121(d) of the Bankruptcy Code* annexed thereto as Exhibit A [Docket No. 1325-1] (the "**Proposed Second Exclusivity Order**").  Pursuant to the Proposed Second Exclusivity Order, the Debtors' Exclusive Periods would be extended as follows: (i) the Exclusive Filing Period through and including October 17, 2023 and (ii) the Exclusive Solicitation Period through

and including December 18, 2023, in each case, without prejudice to the Debtors' rights to seek additional extensions of such periods. As of the date hereof, the Court has not entered the Proposed Second Exclusivity Order.

## The Court Should Grant the Relief Requested

14.     Section 1121(b) of the Bankruptcy Code provides for an initial period of 120-days after the commencement of a chapter 11 case during which a debtor has the exclusive right to file a chapter 11 plan. 11 U.S.C. § 1121(b). Section 1121(c)(3) of the Bankruptcy Code provides that if a debtor files a plan within the 120-day Exclusive Filing Period, it has an exclusive period of 180-days after the commencement of the chapter 11 case to obtain acceptances of its plan. *Id.* at § 1121(c)(3). Pursuant to the Proposed Second Exclusivity Order, the Debtors' extended Exclusive Filing Period and Exclusive Solicitation Period would expire after October 17, 2023 and December 18, 2023, respectively. Proposed Second Exclusivity Order ¶¶ 1–2.

15.     Under section 1121(d) of the Bankruptcy Code, the Court may extend the Exclusive Periods for cause. 11 U.S.C. § 1121(d) ("[O]n request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section.").

16.     The Bankruptcy Code neither defines the term "cause" for purposes of section 1121(d) nor establishes formal criteria for an extension. The legislative history of section 1121 of the Bankruptcy Code indicates, however, that it is intended to be a flexible standard to balance the competing interests of a debtor and its creditors. *See* H.R. Rep. No. 95–595, at 231– 32 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963 (noting that Congress intended to give

Bankruptcy Courts great flexibility to protect a debtor's interests by allowing a debtor an unimpeded opportunity to negotiate settlement of debts without interference from other parties in interest); *In re Timbers of Inwood Forest Assoc., Ltd.*, 808 F.2d 363, 372 (5th Cir. 1987) ("Any bankruptcy court involved in an assessment of whether 'cause' exists should be mindful of the legislative goal behind § 1121."); *In re Mirant Corp.*, No. 4-04-CV-476-A, 2004 WL 2250986, at *2 (N.D. Tex. Sept. 30, 2004) ("In virtually every case where an extension has been granted, the debtor showed substantial progress had been made in negotiations toward reorganization.").

17.     The broad discretion conferred on the court in these circumstances enables the court to consider a variety of factors to assess the totality of circumstances in each case. *In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006) (identifying factors courts consider in determining whether to extend exclusivity); *In re Washington-St. Tammany Elec. Co-op., Inc.*, 97 B.R. 852, 854 (E.D. La. 1989) (noting that the decision to extend exclusivity "rests with the discretion of the Court"); *In re Hoffinger Indus., Inc.*, 292 B.R. 639, 643–44 (B.A.P. 8th Cir. 2003) (same); *In re Express One Int'l, Inc.*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996) (same).

18.     Courts in this district and others have identified the *Adelphia* factors as factors to consider in determining whether cause exists to extend exclusivity. *See, e.g.*, *In re New Millennium Mgmt., LLC*, No. 13-35719-H3-11, 2014 WL 792115, at *6 (Bankr. S.D. Tex. Feb. 25, 2014); *see also In re Borders Grp., Inc.*, 460 B.R. 818, 822 (Bankr. S.D.N.Y. 2011) (evaluating the factors set forth in *Adelphia* to hold that debtor established cause to extend exclusivity). These non-exclusive factors include:

(i)      the size and complexity of the debtor's case;

(ii)     the necessity for sufficient time to permit the debtor to negotiate a chapter 11 plan and prepare adequate information;

(iii)    the existence of good faith progress towards reorganization;

(iv)    the fact that the debtor is paying its bills as they become due;

(v)    whether the debtor has demonstrated reasonable prospects for filing a viable plan;

(vi)    whether the debtor has made progress in negotiations with its creditors;

(vii)    whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and

(viii)    whether an unresolved contingency exists.

*See, e.g.*, *Millennium Mgmt.*, 2014 WL 792115, at *6; *see also In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006) (noting that the factors listed above are "objective factors which courts historically have considered in making determinations of this character").

19.    Not all factors are relevant to every case, and courts tend to use a relevant subset of the above factors in determining whether cause exists to grant an exclusivity extension in a particular chapter 11 case.  *See, e.g.*, *In re Hoffinger Indus., Inc.*, 292 B.R. 639, 644 (B.A.P. 8th Cir. 2003) ("It is within the discretion of the bankruptcy court to decide which factors are relevant and give the appropriate weight to each."); *In re Serv. Merch. Co., Inc.*, 256 B.R. 744, 751–54 (Bankr. M.D. Tenn. 2000) (finding cause to extend where the debtors established six of the aforementioned factors); *In re Express One Int'l, Inc.*, 194 B.R. 98, 101 (Bankr. E.D. Tex. 1996) (identifying four of the factors as relevant in determining whether "cause" existed to extend exclusivity); *see also In re Dow Corning Corp.*, 208 B.R. 661, 670 (Bankr. E.D. Mich. 1997) ("When the Court is determining whether to terminate a debtor's exclusivity, the primary consideration should be whether or not doing so would facilitate moving the case forward.  And that is a practical call that can override a mere toting up of the factors.").

20.    Indeed, courts in this district have recently granted third extensions of Exclusive Periods.  *See, e.g.*, *In re Honx, Inc.*, No. 22-90035 (MI) (Bankr. S.D. Tex. Feb. 14, 2023)

[Docket No. 697]; *In re Cineworld Group PLC*, No. 22-90168 (Bankr. S.D. Tex. June 5, 2023) [Docket No. 1782]; *In re Fieldwood Energy LLC*, No. 20-33948 (Bankr. S.D. Tex. July 7, 2021) [Docket No. 1873].

**Cause Exists to Further Extend Exclusive Periods**

21.     As set forth below, a further extension of the Exclusive Periods, in each case, by 60 days is appropriate, in the best interest of the Debtors' stakeholders, and consistent with the intent and purpose of chapter 11.  Further extending the Debtors' Exclusive Periods will enable the Debtors to continue building consensus and pursue confirmation of a chapter 11 plan that maximizes the value of the Debtors' estates for the benefit of all stakeholders, without interruption or distraction.  Accordingly, application of the relevant factors set forth above to the facts of these chapter 11 cases demonstrates that ample cause exists to grant the reasonable extension of the Exclusive Periods requested herein.

**A. The Debtors Have Made Good Faith Progress Towards Reorganization and Substantial Progress in Negotiations with Their Creditors**

22.     The Debtors have made significant progress towards confirming a chapter 11 plan by, among other things, (i) participating in the Mediation, which resulted in the Mediated Settlement, (ii) entering into the B. Riley ELOC Commitment Letter, the B. Riley Exit Facility Commitment Letter, and advancing negotiations regarding other sources of new money exit capital, including with respect to the Convertible Noteholders Exit Facility and the Rights Offering, including the backstop of a portion thereof, and (iii) obtaining court approval of a number of value-maximizing settlements (including with Celsius and several M&M lien claimants) and entering into agreements with other parties.

i.   **The Debtor Have Made Substantial Progress in their Plan Negotiations with the Key Stakeholder Groups**

23.   Less than one week before the Debtors filed the Second Exclusivity Motion, this Court entered the Mediation Order, which, among other things, directed the Debtors and the Key Stakeholder Groups to participate in the Mediation before Judge Isgur.  *See* Mediation Order ¶ 1.  Over the last several months, the Debtors and the Key Stakeholder Groups have repeatedly extended the Mediation to resolve critical case issues and build consensus with respect to the terms of a value-maximizing chapter 11 plan.  The Mediation has been fruitful and, as set forth in the Joint Notice, the Debtors, the Ad Hoc Noteholder Group, and the Equity Committee have reached agreement in principle with respect to certain key economic terms of the Plan (*i.e.*, the Mediated Settlement).  *See* Joint Notice ¶ 4.  Since reaching a general consensus on the Mediated Settlement, the Debtors and the Key Stakeholder Groups have further extended the Mediation and continued to negotiate in good faith to resolve certain open issues and document the Mediated Settlement.  Through the Mediation, the Debtors intend to resolve the remaining open issues in short order.

24.   In addition, since filing the Second Exclusivity Motion, the Debtors have continued to progress their capital raise process through comprehensive negotiations with multiple parties.  Significantly, the Debtors have obtained commitments from B. Riley—the Replacement DIP Lender and the Debtors' largest unsecured creditor—for (i) the $150 million B. Riley ELOC Facility pursuant to the B. Riley ELOC Commitment Letter and (ii) the $25 million B. Riley Exit Facility pursuant to the B. Riley Exit Facility Commitment Letter.  The Debtors are also in negotiations regarding the Convertible Noteholders Exit Facility, which will provide the Debtors with an alternative source of liquidity to the B. Riley Exit Facility.  Further, the Debtors are working with the Equity Committee regarding a $55 million Rights Offering and related backstop commitment.  The Debtors are working diligently to finalize these commitments.

25.     Although the Debtors are optimistic that they will be positioned to file and prosecute a largely consensual chapter 11 plan in the near term, more time is needed for them to do so.   The Debtors' substantial progress in negotiations with the Key Stakeholder Groups illustrates that ample cause exists to extend the Exclusive Periods.   Further, extending the Exclusive Periods will (i) enable to the Debtors to continue engaging with each of the Key Stakeholder Groups in hopes of building full consensus, (ii) provide additional time for documenting the Mediated Settlement, (iii) allow the Debtors to secure commitments for the Convertible Noteholders Exit Facility and a backstop in connection with Rights Offering, and (iv) permit the Debtors to file and prosecute a chapter 11 plan, in each case free from the overhang of a competing process.   Accordingly, an extension of the Exclusive Periods is warranted.

ii.     **The Debtors have Executed Several Value-Maximizing Settlements and Agreements with Claimants and Other Parties**

26.     Since filing the Second Exclusivity Motion, the Debtors have taken numerous key steps to solidify their path to confirmation and emergence, including executing and obtaining Court approval of several value-maximizing settlements or agreements that eliminate or otherwise substantially reduce claims against the estate, including the (i) Condair settlement, (ii) J.W. Didado settlement, (iii) HMC settlement, (iv) Trilogy settlement, and (vii) Celsius Settlement.[11]   In addition to reaching numerous settlements with creditors, the Debtors have also advanced the claims reconciliation process by, among other things, filing and evaluating objections to disputed claims.[12]

---

[11] *See* Condair Settlement Order; J.W. Didado Settlement Order; HMC Settlement Order; Trilogy Settlement Order; Celsius Settlement Order.

[12] *See Debtors' Objection to Proof of Claim Nos. 364 and 383 filed by Harlin Dean*, dated September 19, 2023 [Docket No. 1246]; *Debtors' Preliminary Objection to Proof of Claim No. 556 Filed by Morgan Hoffman*, dated July 24, 2023 [Docket No. 1080].

27.     In addition, the Debtors have recently entered into the Bitmain APA. Consummation of the Bitmain Transaction pursuant to the Bitmain APA will not only enhance the Debtors' self-mining capabilities and increase revenue generation, but will considerably reduce the Debtors' new money capital needs by approximately $30 million, as the Debtors will pay $53.9 million of the $77.1 million total consideration in New Common Interests.  The Debtors intend to file a motion seeking this Court's approval of the Bitmain Transaction in the near term.

28.     As described above, the Debtors have continued to maximize value for their estates through settlements with claimants and entering into agreements with other parties. An extension of the Exclusive Periods would permit the Debtors to implement the Court-approved settlements, continue to negotiate consensual resolutions with other claimants, and pursue other value accretive opportunities.

## B.     These Chapter 11 Cases are Large and Complex

29.     The scale and complexity of the Debtors' business and industry, which require the Debtors to navigate complex issues in their reorganization efforts, support the need for the extension of the Exclusive Periods.  This factor weighs heavily in favor of extending exclusivity.  *See In re Texaco Inc.*, 76 B.R. 322, 326 (Bankr. S.D.N.Y. 1987) ("The large size of a debtor and the consequent difficulty in formulating a plan of reorganization for a huge debtor with a complex financial structure are important factors which generally constitute cause for extending the exclusivity periods.").  The legislative history of section 1121 provides that "if an unusually large company were to seek reorganization under chapter 11, the court would probably need to extend the time in order to allow the debtor to reach an agreement."  H.R. Rep. No. 95-595, at 232 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963.

30.     These chapter 11 cases are undoubtedly complex.  The Debtors are one of the largest blockchain infrastructure, hosting provider, and digital asset mining companies in North

America.  Bros. Decl.[13] ¶ 5.  The Debtors own and/or manage eight data centers (seven of which are operational) that span five states and can collectively utilize up to approximately 814 megawatts (MW) of power.  *Id.*  The Debtors use these data centers to mine digital assets for their own account, as well as host miners for third-party customers.  *Id.*  Importantly, the Debtors employ approximately 230 full-time employees, along with the services of independent contractors and temporary workers.

31.     Further, the Debtors have a complex capital structure, with over $1 billion in total debt, including the Convertible Notes, equipment financings and leases, several M&M lien claims, the B. Riley Unsecured Claims, and various other unsecured claims.  The Debtors' creditors have different legal rights and priorities and are secured by different collateral packages. These varying rights and legal positions add complexity to negotiations and have required a herculean effort to build consensus.  Moreover, the Debtors operate in the inherently complex cryptocurrency industry.

32.     Accordingly, the Debtors' size, the complexity of these chapter 11 cases, and the breadth of financial and legal issues involved therein warrant the requested extension of the Exclusive Periods.

**C.      The Debtors are Making Administrative Expense Payments and Will Continue to Do So**

33.     Courts considering an extension of exclusivity also assess a debtor's liquidity.  *See In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006) (listing "the fact that the debtor is paying its bills as they become due" as a factor courts consider when analyzing exclusivity).  Here, the Debtors are paying administrative expenses as they come due

---

[13] *Declaration of Michael Bros in Support of the Debtors' Chapter 11 Petitions and First Day Relief*, dated December 21, 2022 [Docket No. 5] (the "**Bros Declaration**").

and will continue to do so.  Furthermore, the Debtors have outperformed every budget they have prepared to date and have generated positive cash flow since the Petition Date.  As a result, the Debtors have repaid a total of $21 million in DIP principal, while still having $37 million of liquidity as of September 30, 2023 and access to an incremental $35 million in DIP financing under the Replacement DIP Facility (if necessary).  The Debtors continue to monitor their liquidity position closely and are confident that sufficient cash flow and liquidity will be available to satisfy their postpetition payment obligations during the requested extension of the Exclusive Periods.

**D.      An Extension of the Exclusive Periods Will Not Prejudice Creditors**

34.      An extension of the Exclusive Periods will not prejudice any of the Debtors' stakeholders.  On the contrary, an extension of the Exclusive Periods will enable the Debtors to continue to have constructive negotiations with stakeholders to facilitate as much consensus as possible, including with respect to resolving open issues and finalizing the documentation of the Mediated Settlement.  To terminate exclusivity now and allow for a competing plan process at this juncture in these chapter 11 cases would jeopardize or otherwise undermine the Debtors' efforts to date and adversely impact their ability to achieve a consensual chapter 11 plan.  A further extension of the Exclusivity Periods will provide the Debtors with the necessary time and breathing room required to confirm a chapter 11 plan and take necessary steps toward emergence.  Thus, the Debtors believe that an extension of the Exclusive Periods is in the best interest of the Debtors and their stakeholders.

35.      Accordingly, for the reasons set forth herein, the Debtors submit that "cause" exists to further extend the Exclusive Periods and respectfully request that the Court grant the relief requested herein.

## **Notice**

36.     Notice of this Motion will be served on any party entitled to notice pursuant to Bankruptcy Rule 2002 and any other party entitled to notice pursuant to Bankruptcy Local Rule 9013-1(d).

## **No Prior Request**

37.     Except for the First Exclusivity Motion and the Second Exclusivity Motion, no previous request for the relief sought herein has been made by the Debtors to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

**WHEREFORE**, the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated:  October 17, 2023
       Houston, Texas

Respectfully submitted,

_/s/ Alfredo R. Pérez_
WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (15776275)
Clifford W. Carlson (24090024)
700 Louisiana Street, Suite 1700
Houston, Texas  77002
Telephone: (713) 546-5000
Facsimile:  (713) 224-9511
Email:  alfredo.perez@weil.com
        clifford.carlson@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Ray C. Schrock (admitted _pro hac vice_)
Ronit J. Berkovich (admitted _pro hac vice_)
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Email: ray.schrock@weil.com
       ronit.berkovich@weil.com

_Attorneys for Debtors
and Debtors in Possession_

**<u>Certificate of Service</u>**

I hereby certify that on October 17, 2023 a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Alfredo R. Pérez*
Alfredo R. Pérez
