United States Bankruptcy Court
Southern District of Texas

**ENTERED**

October 18, 2023

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § § | **Chapter 11** |
| **CORE SCIENTIFIC, INC., *et al.*,** | § | **Case No. 22-90341 (CML)** |
| | § | **(Jointly Administered)** |
| Debtors.[1] | § | **Related Docket Nos. 1260 and 1301** |

### ORDER AUTHORIZING DEBTORS
### TO ENTER INTO LEASE AND RELATED AGREEMENTS

Upon the motion, dated September 23, 2023, and supplement thereto, dated October 4, 2023 (collectively, the "**Motion**"),[2] of Core Scientific Operating Company and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), for entry of an order authorizing the Debtors to enter into and perform under (i) that certain surface lease agreement attached hereto as **Exhibit 1** (the "**Cottonwood II Lease**"), as evidenced by that certain memorandum of surface lease agreement attached as **Exhibit 2** to the Proposed Order (the "**Cottonwood II Memo of Lease**"), (ii) that certain non-exclusive easement agreement attached hereto as **Exhibit 3** (the "**Distribution Easement Agreement**"), (iii) that certain non-exclusive easement agreement attached hereto as **Exhibit 4** (the "**Transmission Easement Agreement**"), and (iv) that certain access easement agreement attached hereto as **Exhibit 5** (the "**Access Easement Agreement**" and, together with

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions VII, LLC (3198).  The Debtors' corporate headquarters and service address is 210 Barton Springs Road, Suite 300, Austin, Texas 78704.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion or Cottonwood II Agreements, as applicable.

the Cottonwood II Lease, the Cottonwood II Memo of Lease, the Transmission Easement Agreement and the Distribution Easement Agreement, collectively, the "**Cottonwood II Agreements**"), all as more fully set forth in the Motion; and upon consideration of the First Day Declaration; and this Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and it appearing that venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided; and such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and this Court having reviewed the Motion; and all objections, if any, to the Motion having been withdrawn, resolved, or overruled; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtors and their respective estates and creditors; and upon all of the proceedings had before this Court and after due deliberation and sufficient cause appearing therefor,

## IT IS HEREBY ORDERED THAT

1.      The Debtors are authorized, but not directed, to (a) enter into the Cottonwood II Agreements, (b) perform all of their obligations under the Cottonwood II Agreements, and (c) implement the actions contemplated by the Cottonwood II Agreements, including, without limitation, the payment and performance of any and all monetary and non-monetary obligations under the Cottonwood II Agreements.

2.      If the Debtors fail to pay to Landlord the Consideration within two (2) business days following the date on which this Order is entered, Landlord may terminate the Cottonwood II Agreements without obtaining relief from the automatic stay or any other court

order, in which case, Landlord shall refund to the Debtors the Consideration paid by the Debtors, if any, and the Debtors shall promptly reimburse Landlord for all reasonable and documented out-of-pocket fees, costs, and expenses of outside legal counsel relating to the negotiation, and enforcement of such termination provisions, of the Cottonwood II Lease.

3. Landlord shall be entitled to exercise all rights under the Cottonwood II Agreements in the future without obtaining relief from the automatic stay or further court order.

4. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion, and the requirements of Bankruptcy Rule 6004(a) and the Bankruptcy Local Rules are satisfied by such notice.

5. Notwithstanding the provisions of Bankruptcy Rule 6004(h), this Order shall be immediately effective and enforceable upon its entry.

6. The Debtors are authorized to take all actions necessary or appropriate to effectuate the relief granted in this Order.

7. This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Signed: October 18, 2023

_____

Christopher Lopez
United States Bankruptcy Judge

## Exhibit 1

**Cottonwood II Lease**

**DO NOT RECORD THIS AGREEMENT**
**ONLY A MEMORANDUM OF THIS AGREEMENT SHALL BE RECORDED**

**SURFACE LEASE AGREEMENT**

| | | |
|---|---|---|
| **STATE OF TEXAS** | § | |
| | § | **KNOW ALL MEN BY THESE PRESENTS:** |
| **COUNTY OF REEVES** | § | |

      This Surface Lease Agreement (this "<u>Agreement</u>" or this "<u>Lease</u>"), is by and between **JRC/RGC34 Trade Tracts, LTD,** a Texas limited partnership, whose address is 1415 Louisiana Street, Suite 1900, Houston, Texas 77002 (hereinafter referred to as "<u>Lessor</u>", whether one or more), and **Core Scientific Operating Company,** a Delaware corporation, whose address is 2407 S. Congress Ave., Ste. E-101, Austin, Texas 78704, and its successors and assigns (such entity and its successors and assigns are collectively referred to as the "<u>Lessee</u>"). For and in consideration of the sum of TEN AND NO/100 Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, subject to obtaining approval of this Agreement from the Bankruptcy Court (defined below) and payment of the Consideration (defined below) by Lessee, Lessor by these presents does hereby lease to Lessee for a term of ninety-nine (99) years, commencing on the date on which the Consideration (defined below) is received by Lessor, that certain 50.00-acre tract of land located in Reeves County, Texas and more particularly described in the metes and bounds depicted in Exhibit "A" attached hereto and made a part hereof (the "<u>Surface Site</u>"). The Surface Site shall be used solely for the purpose of erecting, laying, constructing, fencing, maintaining, operating, repairing, inspecting, testing, commissioning, replacing, protecting, altering, and/or removing a commercial and/or industrial warehouse building to be used for data processing purposes only, together with associated infrastructure necessary to perform and support the commercial and/or industrial operations therein, including, but not limited to, electric power substations, electric power lines and communication lines, whether overhead or underground constructed,  and associated facilities, including, but not limited to, structures made of steel, concrete, and/or wood, concrete foundations, buildings, cooling systems, containers, water tanks, water wells (including water wells to be drilled on the Surface Site), cables, including fiber optic cables,  meters, valves, conduits, electrical supply facilities, wires, poles, conduits, duct banks, transformers, switches, circuit breakers, control house and/or relay and battery all weather enclosures, solar power facilities, generators, monitoring cameras, compressors, pumps, communications equipment, radio and communication facilities and measuring equipment and meter runs, and all other materials, equipment, and appurtenances that may be necessary or desirable in connection therewith (collectively, the "<u>Facilities</u>").

      Lessor and Lessee acknowledge that (i) Lessee and certain of its affiliates are debtors-in-possession under title 11 of the United States Code, 11 U.S.C. 101 et seq. (the "<u>Bankruptcy Code</u>") and, on December 21, 2022, filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas (the "<u>Bankruptcy Court</u>") and (ii) this Agreement and the payment of the Consideration are subject to the approval of the Bankruptcy Court. Lessee agrees to request in Lessee's motion to the Bankruptcy Court for approval of this Agreement and payment of the Consideration that the order approving the same provide that Lessor may terminate this Agreement and the Easements (defined below) without obtaining relief from the automatic stay or any other court order if the Consideration is not paid within the time period required in Section 3 below and that Lessor may exercise all rights under this Agreement and the Easements in the future without obtaining relief from the automatic stay or further court order.

      It is further agreed as follows:

1.      The location of the Surface Site on Lessor's property shall be the area described and depicted in Exhibit "A" attached hereto and made a part hereof.

2.      In no event shall Lessee enter upon or use any portion of Lessor's property located outside of the Surface Site, except as permitted pursuant to the terms of the two Non-Exclusive Easement Agreements and an Access Easement Agreement, each of even date herewith (the "Easements") executed by Lessor for the benefit of Lessee.

3.      As consideration for Lessor leasing the Surface Site to Lessee, Lessee shall pay to Lessor the sum of $1,000,000.00 (the "Consideration") within two (2) business days following the date on which this Agreement and the payment of the Consideration is approved by the Bankruptcy Court (the date on which the Consideration is received by Lessor is referred to in this Agreement as the "Commencement Date"); provided that (i) if such approval is not granted by the Bankruptcy Court on or prior to the date which is four (4) months following the Effective Date, either Lessor or Lessee may terminate this Agreement and the Easements by delivering notice to the other terminating this Agreement and the Easements (and upon delivery of any such notice, this Agreement and the Easements shall immediately terminate) and (ii) if Lessee fails to pay to Lessor the Consideration within two Business Days following the date on which this Agreement and the payment of the Consideration is approved by the Bankruptcy Court, or if the order of the Bankruptcy Court approving this Agreement and payment of the Consideration does not expressly provided that (A) Lessor may terminate this Agreement without obtaining relief from the automatic stay or any other court order if the Consideration is not paid within such two Business Day period, and (B) Lessor may exercise all rights under this Agreement and the Easements in the future without obtaining relief from the automatic stay or further court order, then Lessor may terminate this Agreement and the Easements by delivering notice to Lessee terminating this Agreement and the Easements together with a refund of the Consideration paid to Lessor, if any (and upon delivery of any such notice and refund of Consideration paid to Lessor, if any, this Agreement and the Easements shall immediately terminate) and, promptly following a termination of this Lease pursuant to this clause (ii), Lessee shall promptly reimburse Lessor for all reasonable and documented out-of-pocket fees, costs and expenses of outside legal counsel relating to the negotiation, and enforcement of this Section 3 of, this Lease. Such Consideration paid by Lessee in this Agreement includes the market value of the Surface Site for the lease term and for reasonably anticipated damages caused to the surface of the Surface Site during the construction and operation of the Facilities, including, but not limited to, damages to growing crops, and related appurtenances, but excluding any damage caused by any release or discharge of Hazardous Materials or any injury occurring on the Surface Site.

4.      Commencing on the Commencement Date, Lessee shall have the unrestricted right of ingress, egress, entry, and access in, to, through, on, over, under, and across the Surface Site as described in the metes and bounds depicted on Exhibit "A" attached hereto and made a part hereof, for the purpose of and with the right to construct, operate, improve, reconstruct, repair, inspect, patrol, maintain, modify and/or remove the Facilities within such Surface Site as Lessee may from time to time find necessary, convenient or desirable in its sole discretion. Lessor shall reasonably cooperate with Lessee, at no cost to Lessor, in the exercise of Lessee's rights hereunder, and provide any further assurances reasonably requested by Lessee in carrying out and otherwise giving full force and effect to the purpose and intent of this Agreement; provided, however, that Lessor shall not be required to (a) make any representations or warranties, (b) incur any obligations, liabilities, costs or expenses, (c) grant any additional rights or easements to Lessee or any third party, or (d) agree to any encumbrance on the Surface Site or Lessor's interest therein. Lessee shall reimburse Lessor upon demand for any out-of-pocket costs incurred by Lessor in connection with providing any such cooperation or further assurances.  Lessee shall not have any right to enter upon the Surface Site or the portion of Lessor's other property encumbered by the Easements prior to the Commencement Date.

5.      Lessee shall have the right to install fencing of any type and enclose the Surface Site within a single fence or any of the Facilities installed thereon in separate enclosures, the right to install gates within said fencing and in all existing and future fences within the Surface Site, and the right to have exclusive possession and use of the surface and subsurface of the Surface Site, said possession of the subsurface being to the extent and depth as may be necessary for the installation, operation, maintenance, repair, and/or replacement of underground foundations, cables, pipes, conduits, wells, and all other necessary and/or desirable Facilities, but in no event shall such subsurface rights extend below two hundred feet (200') beneath the surface of the Surface Site.  Lessee shall have all rights and benefits necessary or convenient for the full enjoyment and use thereof, including, but not limited to, the right, from time to time, to cut and remove all trees, undergrowth, and other obstructions, on the Surface Site; the right to relocate Facilities within the Surface Site; and the right to prevent the construction on the Surface Site of any or all Lessor or third party buildings, structures, and obstructions.

6.      Lessee shall use the Surface Site solely for the purposes specified herein. Without limiting the foregoing, there shall be no hunting or fishing on the Surface Site or any of Lessor's other lands by Lessee, its officers, agents, employees, contractors, invitees, guests or representatives at any time.  No hunting or fishing equipment shall be taken on the Surface Site by Lessee, its officers, agents, employees, contractors, invitees, guests or representatives at any time. Lessee shall at all times comply with all local, state and federal laws.  Lessee shall be subject to (a) all existing right of way, easements and other agreements provided by Lessor to Lessee before the execution of this Agreement, whether or not the same are filed of public record, and (b) all existing rights of way, easements, encumbrances, covenants, conditions, reservations, restrictions, leases, subleases, occupancy, tenancy, mineral rights, options, rights of first refusal or other matters filed of record to the extent same are validly existing and affect the Surface Site (collectively, the "Existing Encumbrances"). Lessor represents and warrants to Lessee that other than the Existing Encumbrances, Lessor is not aware of any unrecorded lien, encumbrance, covenant, condition, reservation, restriction, easement, lease, sublease, occupancy, tenancy, mineral right, option, right of first refusal or other matter or any portion thereof that have not been disclosed to Lessee in writing prior to the execution of this Agreement, including any unrecorded agricultural, grazing, oil, gas, mineral, or other subsurface leases. Subject to the terms of this Lease and subject to the Existing Encumbrances, during the entire term of this Lease (1) Lessee shall have peaceful and quiet enjoyment of the Surface Site, without hindrance or interruption by Lessor or any other persons or entities claiming through Lessor, and (2) Lessor shall protect and defend the right, title and interest of Lessee hereunder from any other rights, interests, title and claims of or by any such person or entity.

7.      Lessor and its successors, officers, agents, employees, contractors, invitees, guests, and representatives shall not enter or use the Surface Site for any purposes whatsoever, save and except those limited purposes expressly set forth in this paragraph. Lessor shall retain all oil, gas, and other minerals in, on and under the Surface Site; *provided, however*, that Lessor shall not have the right or be permitted to produce, drill, mine, or operate equipment for the production or development of oil, gas, or other minerals on or from the surface of the Surface Site, but it will be permitted to extract the oil, gas, and other minerals from and under the Surface Site by directional drilling and other means outside the Surface Site, provided the drill bit enters the Surface Site at a subsurface depth of two hundred feet (200') or deeper and so long as such activities do not damage, destroy, or injure the Facilities or interfere in any material way with Lessee's use of the Surface Site for the purposes for which the Surface Site is being leased by Lessee.

8.      Lessor, by these presents and for the consideration herein stated, hereby and knowingly relinquishes all of Lessor's rights to (a) use any portion of the Surface Site for any surface or subsurface activities at depths equal to or less than two hundred feet (200') beneath the surface of the Surface Site, and (b) to grant to others any easements, licenses, leases, or other rights hereafter with respect to any portion of the Surface Site, without first obtaining the express written consent of Lessee, unless such grant expressly excludes the right to use, enter or occupy the Surface Site and all depths equal to or less than two hundred

3

feet (200') beneath the surface of the Surface Site. Lessee shall not unreasonably withhold, condition or delay consent to any proposed grant by Lessor of any easement or other rights with respect to the Surface Site provided that the same would not reasonably be expected to damage, destroy, or injure the Facilities or to interfere in any material way with Lessee's use of the Surface Site for the purposes for which the Surface Site is being leased by Lessee. Lessor reserves the right to enter upon and inspect the Surface Site from time to time to confirm that Lessee is complying with the terms of this Lease. Any such entry by Lessor shall be solely for Lessor's own purposes and shall not be deemed or construed to constitute a waiver by Lessor of any breach or default by Lessee whether or not Lessor identifies such breach or default during the course of any such entry or inspection.

9.      Lessee shall have the unrestricted right to assign and transfer, in whole or in part, by operation of law or otherwise, this Agreement, including Lessee's rights, benefits, privileges, and obligations hereunder, whenever and to whomever Lessee in its sole, exclusive, and absolute discretion deems appropriate, in which event Lessor acknowledges and agrees that any such assignee shall succeed to all of the rights and obligations of Lessee to the extent conveyed in such assignment; provided, however, (a) in no event shall any assignment or transfer result in more than two (2) persons or entities having a direct interest in this Agreement or the Facilities at any given time, and (b) Lessee and the assignee shall be jointly and severally liable for the obligations of Lessee under this Agreement following any such assignment or transfer except in the case of any assignment or transfer of Lessee's entire interest in this Agreement as to which Lessor approves the proposed assignee in writing. Lessor shall not unreasonably withhold, condition or delay approval of a proposed assignee; provided, however, Lessor may withhold its approval in its sole discretion if, in Lessor's sole but good faith and reasonable judgment, the proposed assignee (1) does not have substantial experience owning and operating projects similar to the Facilities and does not hire a third party who has such experience to operate the Facilities (provided that clause (1) of this proviso shall be deemed satisfied if the Bankruptcy Court finds that such proposed assignee has (A) substantial experience owning and operating projects similar to the Facilities or (B) hired a third party to operate the Facilities who has substantial experience operating projects similar to the Facilities)  or (2) does not have sufficient creditworthiness or financial standing to perform the obligations under this Agreement that are to be assumed by such proposed assignee (provided that clause (2) of this proviso shall be deemed satisfied with respect to any proposed assignee under any assignment by Core Scientific Operating Company, the original named Lessee hereunder, of Core Scientific Operating Company's entire interest in this Agreement). Upon assignment approval by Lessor of a proposed assignee to which all of Lessee's interest under this Agreement is assigned or transferred, Lessee shall be relieved of all obligations under this Agreement which accrue after the date of such assignment, except for any obligations with respect to payment of taxes, assessments and other charges or amounts for or attributable to time periods prior to such assignment or transfer, indemnity obligations related to any Claims or Losses (defined below) with respect to matters occurring or attributable to time periods prior to such assignment or transfer, and obligations related to any Hazardous Materials released or discharged on the Surface Site or Lessor's adjacent property prior to such assignment or transfer. If at any time more than one person or entity has an interest in this Agreement or Lessee's rights, benefits or privileges hereunder, such persons or entities shall be jointly and severally liable for the obligations of Lessee under this Agreement.

10.      Lessee shall maintain or shall cause to be maintained, in full force and effect throughout the term of this Agreement, at its sole cost and expense, the insurance described below:

    a.    Worker's Compensation in accordance with the benefits afforded by the statutory Worker's Compensation Acts, if applicable to the state, territory or district of hire, supervision or place of accident.  Policy limits for worker's compensation shall not be less than statutory limits and for employer's liability one million dollars ($1,000,000) each accident.

b.   Commercial General Liability Insurance including bodily injury, death, property damage, personal injury liability, with a limit of $1,000,000 per occurrence and in the annual aggregate.

c.   Commercial Automobile Insurance covering owned, hired, rented, and non-owned automotive equipment with a limit of $1,000,000 per accident.

d.   Excess Umbrella Liability Insurance coverage in excess of the terms and limits of insurance specified in parts a, b and c above with a combined limit of $5,000,000 per occurrence.

e.   Environmental pollution liability insurance with minimum limits of $5,000,000 per occurrence; provided, however, Lessee shall not be required to maintain such environmental liability pollution insurance so long as Lessee does not use or store Hazardous Materials on the Surface Site in quantities that would require disclosure under the Emergency Planning and Community Right-to-Know Act (EPCRA) or the Texas Community Right-To-Know Acts (TCRA). Within thirty (30) days following each anniversary of the Commencement Date, Lessee shall provide Lessor with an annual certification stating that, to the best of Lessee's knowledge, it is not using or storing Hazardous Materials on the Surface Site in quantities that would require disclosure under the EPCRA or the TCRA.

Every five (5) years during the term of this Lease, on the fifth anniversary of the Commencement Date and each five-year anniversary thereafter (each, an "Adjustment Date"), the respective specified dollar limits set forth above (each, the "Applicable Limit") shall be increased by Lessee to an amount equal to the Applicable Limit multiplied by a fraction, the numerator of which is the Consumer Price Index for December 2021 and the denominator of which shall be the Consumer Price Index for December of the calendar year immediately preceding the applicable Adjustment Date; provided, however, in no event shall any Applicable Limit be decreased as a result of any decrease in the Consumer Price Index. As used herein, the "Consumer Price Index" means the Consumer Price Index, All Urban Consumers (CPI-U), All Items (1982-84=100), published by the United States Bureau of Labor Statistics of the United States Department of Labor ("BLS"), or any successor agency, for the Houston-The Woodlands-Sugar Land, Texas geographic area, or any renamed local index that includes the Houston, Texas metropolitan area, or any other measure thereafter employed by BLS or any such successor agency in lieu of such CPI-U that measures the cost of living in the Houston, Texas metropolitan area. If the Consumer Price Index or a renamed local index or measure ceases to be published by BLS or any such successor agency, then Lessor may substitute for the Consumer Price Index any independently published index of similar type. No delay in notifying Lessee of the required increase in the Applicable Limits shall constitute a waiver by Lessor of any increase in the Applicable Limits required hereunder or relieve Lessee of its obligation to increase the Applicable Limits as required hereunder.

All insurance required to be maintained under this Lease shall be issued by insurance companies licensed or authorized to do business in the State of Texas that have a rating in the latest edition of Best's Key Rating Guide (or any successor publication of comparable standing) of "A-:VIII" or better (or another comparable rating substantially equivalent thereto that is reasonably acceptable to Lessor). Upon execution of this Lease, and not less than 15 days prior to the expiration dates of expiring policies required pursuant to this Section 10, certificates of insurance or renewal certificates, as the case may be, bearing notations and including any necessary endorsements confirming the status of Lessor as an additional insured, as required herein, and evidencing the payment in full of premiums or accompanied by other evidence reasonably satisfactory to Lessor of such coverage and payment, shall be delivered by Lessee to Lessor. Lessee shall cause Lessor to be named as an additional insured on all liability policies.

5

Each policy of insurance required under this Lease shall contain (a) a provision that no act or omission of Lessor or Lessee shall affect or limit the obligation of the insurance company to pay the amount of any loss sustained, (b) an agreement by the insurer that such policy shall not be canceled, modified or denied renewal without at least 10 days prior written notice to Lessor, (c) an agreement that if cancellation is due to nonpayment of premiums, the insurer will so specify in the notice given in (b) above, and (d) if the insurance company would otherwise have a right to subrogation, a written agreement by the insurance company that its right to subrogation has been waived with respect to all named insureds and additional insureds.

11.      This is an absolutely net lease. Lessor shall have no obligations or liabilities whatsoever in connection with or relating to the Surface Site or the maintenance, repair, replacement, operation and management of the Surface Site during the term of this Lease. Lessee shall be solely responsible for all costs, expenses and obligations of every kind and nature whatsoever in connection with or relating to the Surface Site or any part thereof, whether or not specifically referenced or contemplated in this Lease, including, without limitation, the maintenance, repair, replacement, operation and management thereof in accordance with this Lease. Lessee shall pay and discharge all such costs, expenses and obligations before the same become delinquent. Without limiting the foregoing, Lessee, its successors and assigns shall be fully responsible for and shall pay prior to delinquency (a) all ad valorem taxes and assessments (general or special) on the Surface Site and all Facilities and on all personal property on the Surface Site for each calendar year (or other fiscal period of any taxing authority) or portion thereof during the term of this Lease, (b) any occupancy and rent taxes, (c) water and sewer rents, rates and charges, (d) charges for public utilities, (e) license and permit fees, (f) any other taxes, assessments, charges or governmental levies, general and special, ordinary and extraordinary, foreseen and unforeseen, of any kind and nature whatsoever, and (g) any fines or penalties or similar charges applicable with respect to any of the foregoing, together with interest and costs thereon (collectively, "Impositions"). Such Impositions shall not be prorated for the year or other fiscal period in which this Lease commences, expires or terminates, it being agreed that Lessee, its successors and assigns shall be fully responsible for the entire year or entire fiscal period notwithstanding that the Commencement Date is not the first day of the calendar year and the expiration or termination date may not be the last day of the applicable calendar year or other fiscal period. Lessee's obligation under this Section 11 shall survive the expiration or termination of this Lease.

12.      Lessor hereby represents to Lessee, to the best of Lessor's knowledge, that the Surface Site is free of Hazardous Materials (as defined below). As used herein, to the best of Lessor's knowledge means the current actual knowledge of R. Cullen Powell, President of Jefferson Realty Co., which is the general partner of Lessor, in his representative capacity and not individually, without having made and without any obligation to make any investigation or inquiry regarding the Surface Site, and without having made and without obligation to make any investigation of any files, documents or studies or any inquiry of other persons, and shall not include any knowledge which may be imputed to Lessor or of any other person. Lessee acknowledges that the individual named above is named solely for the purpose of defining and narrowing the scope of Lessor's knowledge and not for the purpose of imposing any liability on or creating any duties running from such individual to Lessee. Lessee covenants that it will bring no action of any kind against such individual related to or arising out of such representation, which covenant shall survive the expiration or termination of this Agreement.

Lessee (a) shall comply, and cause the Surface Site to comply, with all Environmental Laws (as defined below) applicable to the Surface Site (including, without limitation, the making of all submissions to governmental authorities required by Environmental Laws and the carrying out of any remediation program specified by such authority), (b) shall not use or permit the Surface Site to be used for the generation, manufacture, refinement, production, or processing of any Hazardous Material (as hereinafter defined) or for the storage, handling, transfer or transportation of any Hazardous Material, except for de

minimis quantities of cleaning supplies, office supplies and other materials consistent with the use permitted hereunder that are used in the ordinary course of Lessee's business provided the same are properly stored, used and disposed of in a manner and location satisfying applicable Environmental Laws, (c) shall not permit to remain, install or permit the installation on the Surface Site of any surface impoundments, underground storage tanks, or asbestos or asbestos-containing materials, and (d) shall cause any alterations of the Surface Site to be done in a way so as to not expose the persons working on or visiting the Surface Site to Hazardous Materials in violation of applicable Environmental Laws, and in connection with any such alterations, Lessee shall remove in compliance with Environmental Laws any Hazardous Materials present upon the Surface Site which are not in compliance with Environmental Laws or which present a danger to persons working on or visiting the Surface Site. Immediately after discovering same, Lessee shall notify Lessor of any release of Hazardous Materials or contamination in, on or about the Surface Site or any water damage or mold in or about the Building.

The term "Hazardous Materials" as used in this Lease shall mean: (a) any substance which is or contains any "hazardous substance", "hazardous materials", "hazardous wastes" or "toxic substances" as now or hereafter defined in §101(14) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended ("CERCLA") (42 U.S.C. §9601 et seq.) or any regulations promulgated under CERCLA; (b) oil, gas, gasoline, diesel fuel, or other petroleum hydrocarbons, or additives or by-products associated with such petroleum products or with oil and gas exploration, production, and transmission; and (c) any additional chemicals, substances, or materials which are now or hereafter classified or considered to be hazardous or toxic under any Environmental Laws or the common law, or any other applicable laws relating to the above-described Surface Site.

The term "Environmental Laws" means the Resource Conservation and Recovery Act of 1976, as amended, 42 U.S.C. §§6901, et. seq. (RCRA), the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended by the Superfund Amendments and Reauthorization Act of 1986, 42 U.S.C. §9601 et seq. (CERCLA), the Toxic Substance Control Act, as amended, 15 U.S.C. §§2601 et seq., the Federal Insecticide, Fungicide and Rodenticide Act, as amended, 7 U.S.C. §§136 et seq., any other analogous state or federal statute, and all applicable federal, state and local environmental laws, ordinances, orders, rules and regulations, as any of the foregoing may have been or may be from time to time amended, supplemented or supplanted, and any other federal, state or local laws, ordinances, orders, rules and regulations, now or hereafter existing relating to regulations or control of Hazardous Materials or materials.

Notwithstanding, nothing in this provision shall impose any obligations on Lessee for any pre-existing use of or condition of the Surface Site prior to the execution of this Agreement or in connection with any use by any third party holding an Existing Encumbrance as identified in Section 6 above.

13.    Recording. The parties shall, rather than recording this entire Agreement, record a Memorandum of the Lease identifying the parties, the specific real property covered and benefitted by this Lease, and the term of this Lease without disclosing the consideration paid for or provided regarding the same. Such Memorandum shall not be recorded prior to the Commencement Date.

14.    This Agreement may be executed in several counterparts, each of which shall be an original of this Agreement but all of which, taken together, shall constitute one and the same Agreement and be binding upon the parties who executed any counterpart, regardless of whether it is executed by all parties named herein. Execution of this Agreement and delivery of an executed signature page of this Agreement by e-mail or other customary means of electronic submission (i.e., a .pdf file) shall be deemed binding on all parties for all purposes hereof, without delivery of an original signature page being thereafter required.

15.    This Agreement constitutes the entire agreement between the parties and supersedes any and all prior oral understandings and/or agreements, if any, concerning the subject of the Surface Site as set

7

forth herein. Lessor confirms and agrees that Lessor has been made no promise or agreement by Lessee or any agent of Lessee (except as expressed or referenced specifically set forth in writing within this Agreement) in executing this Agreement, that Lessor is not relying upon any statement or representation of Lessee or any agent of Lessee not set forth in writing in this Agreement, and that Lessor's execution of this Agreement is free and voluntary. This Agreement may not be modified or amended except on or after the Effective Date by a writing signed by both parties. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas, excluding any conflict-of-laws rule or principle that might refer the governance or the construction of this Agreement to the law of another jurisdiction. Attorney's Fees. If either party hereto shall be required to employ an attorney to enforce their rights hereunder and in the event there is litigation or alternative dispute resolution required to resolve such dispute, the prevailing party in such action as determined by the court and/or alternative dispute resolution shall be entitled to recover their reasonable and necessary attorneys' fees and cost of such litigation.

16.     LESSOR HAS NOT RELIED UPON AND HEREBY EXPRESSLY DISCLAIMS RELIANCE UPON ANY STATEMENTS, REPRESENTATIONS, INFORMATION OR MATERIALS PROVIDED, SUPPLIED OR FURNISHED BY LESSEE OR OTHERWISE MADE AVAILABLE BY LESSEE IN THE PUBLIC DOMAIN OR OTHERWISE (OTHER THAN THOSE MADE IN THIS AGREEMENT).

17.     Acceptance of Surface Site. **LESSEE AGREES THAT, LESSEE HAS FULLY, INDEPENDENTLY AND PERSONALLY INSPECTED THE SURFACE SITE AND SATISFIED ITSELF AS TO THE STATUS OF TITLE TO THE PREMISES AND THE QUALITY, CONDITION AND SUITABILITY OF THE SURFACE SITE FOR LESSEE'S PURPOSES AND HAS RELIED SOLELY ON ITS OWN INSPECTIONS AND INVESTIGATIONS OF THE SURFACE SITE IN DETERMINING WHETHER OR NOT TO ENTER INTO THIS LEASE. ACCORDINGLY, THE SURFACE SITE ARE AND WILL BE LEASED TO LESSEE, AND LESSEE ACCEPTS THE SURFACE SITE, IN THEIR THEN-CURRENT CONDITION AND STATE OF REPAIR, "AS IS, WHERE IS AND WITH ALL FAULTS" (INCLUDING, WITHOUT LIMITATION, ANY PATENT OR LATENT DEFECTS, ANY EXISTING VIOLATIONS OF LAW, WHETHER OR NOT OF RECORD, THE PRESENCE OF ASBESTOS, HAZARDOUS MATERIALS OR WASTE) AND ACKNOWLEDGES THAT NO REPRESENTATION OR WARRANTY, EITHER EXPRESS OR IMPLIED, WRITTEN OR ORAL, HAS BEEN MADE BY LESSOR OR ANY TRUSTEE, BENEFICIARY, PARTNER, AGENT OR REPRESENTATIVE OF LESSOR REGARDING THE CONDITION OF THE SURFACE SITE OR THE SUITABILITY OF THE SURFACE SITE FOR ANY USE OR PURPOSE BY LESSEE, EXCEPT AS EXPRESSLY SET FORTH IN SECTION 12 OF THIS AGREEMENT. FURTHERMORE, LESSEE WAIVES ANY COMMON LAW OR STATUTORY RIGHT THAT OTHERWISE MAY BE AVAILABLE TO LESSEE TO TERMINATE THIS LEASE BASED ON ANY CHANGE IN THE CONDITION OF THE SURFACE SITE AFTER THE DATE OF THIS LEASE AND ANY AND ALL CLAIMS BY LESSEE BASED ON THE CONDITION OF THE PREMISES AS OF THE DATE OF THIS LEASE OR THE COMMENCEMENT DATE, INCLUDING, WITHOUT LIMITATION, ANY CLAIMS BASED ON AN ALLEGED BREACH OF ANY IMPLIED WARRANTY OF LESSEEABILITY, SUITABILITY, OR FITNESS FOR LESSEE'S PURPOSES (HOWEVER, NOTHING CONTAINED HEREIN SHALL BE INTERPRETED TO IMPLY OR ACKNOWLEDGE THAT ANY SUCH WARRANTIES EXIST UNDER APPLICABLE LAW). THE PROVISIONS OF THIS SECTION ARE A MATERIAL PART OF THE CONSIDERATION FOR LESSOR ENTERING INTO THIS LEASE.**

18.     Indemnification of Lessor. Lessee will indemnify, defend and hold harmless Lessor, Lessor's partners, members, managers, and their respective employees, agents and representatives (each, an "Indemnified Party", and collectively, the "Indemnified Parties") against and from all claims, demands,

causes of action, liabilities, obligations, losses, damages, judgments, fines, penalties, costs, charges and expenses, including, without limitation, reasonable attorneys' and consultants' fees and disbursements (collectively, "Claims and Losses"), which may be imposed upon or incurred by or asserted against any Indemnified Party arising out of or in any way related to any use, maintenance, ownership or occupancy of the Surface Site, any condition of the Surface Site, any action or inaction taken by Lessor at the request of Lessee or otherwise in cooperation with Lessee or in support of Lessee's project on the Surface Site, any bodily or personal injury, illness or death of any person occurring in, on or about the Surface Site or any part thereof, or any activities or omissions of Lessee or any Lessee Party, including, without limitation, the following, **EVEN THOUGH CAUSED OR ALLEGED TO BE CAUSED BY THE NEGLIGENCE OR FAULT OF ANY INDEMNIFIED PARTY (EXCEPT TO THE EXTENT CAUSED OR ALLEGED TO BE CAUSED BY THE NEGLIGENT ACTS OF ANY INDEMNIFIED PARTY WHILE ON THE SURFACE SITE DURING THE TERM OF THIS LEASE OR THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF SUCH INDEMNIFIED PARTY), IT BEING AGREED THAT THIS INDEMNITY IS INTENDED TO INDEMNIFY THE INDEMNIFIED PARTIES AGAINST THE CONSEQUENCES OF THEIR OWN NEGLIGENCE OR FAULT (EXCEPT FOR THEIR NEGLIGENT ACTS WHILE ON THE SURFACE SITE DURING THE TERM OF THIS LEASE AND EXCEPT FOR THEIR OWN GROSS NEGLIGENCE OR WILLFUL MISCONDUCT) WHEN SUCH INDEMNIFIED PARTIES ARE SOLELY, JOINTLY, COMPARATIVELY, CONTRIBUTIVELY, OR CONCURRENTLY NEGLIGENT WITH LESSEE OR ANY OTHER PERSON**:

(a)     any entry by Lessee or any employees, agents, representatives, consultants, contractors or invitees of Lessee on the Surface Site prior to the Commencement Date;

(b)     any work or thing done in, on or about the Surface Site or any part thereof;

(c)     any use, non-use, possession, occupation, restoration, alteration, repair, condition (including, without limitation, any environmental condition other than the mere existence of Hazardous Materials existing on the Surface Site as of the Commencement Date to the extent any environmental condition related thereto was not created by or in connection with the release, handling, disturbance or removal of such Hazardous Materials by Lessee or any Lessee Party (defined below)), operation, maintenance or management of the Surface Site or any part thereof or any property adjacent thereto;

(d)     any acts or omissions by Lessee, its successors and assigns or any of their respective agents, representatives, contractors, servants, employees, sublessees, licensees or invitees (each, a "Lessee Party" and collectively, the "Lessee Parties");

(e)     any accident, injury (including, without limitation, death) or damage to any person or entity or property occurring in, on or about the Surface Site or any part thereof or any property adjacent thereto, including, without limitation, any premises liability claims;

(f)     any failure on the part of Lessee to perform or comply with any of the covenants, agreements, terms, provisions, conditions or limitations contained in this Lease;

(g)     any liability which may be asserted against Lessor or any lien or claim which may be alleged to have arisen against or on the Surface Site or any property adjacent thereto, under any applicable local, state or federal laws, including, without limitation, Environmental Laws, and any restrictive covenants affecting the Surface Site to the extent caused by, related to or in any way arising out of Lessee's use of the Surface Site; or

(h)      the condition of the Surface Site or of any Facilities hereafter situated thereon, or the fixtures or personal property thereon or therein (except for the mere existence of any Hazardous Materials existing on the Surface Site prior to the Commencement Date to the extent such condition was not created by or in connection with the release, handling, disturbance or removal of such Hazardous Materials by Lessee or any Lessee Party), including, without limitation, any Claims and Losses based on any premises liability theory or based on the failure of the Surface Site to be in compliance with Laws.

The obligations of Lessee under this Section 18 shall not in any way be affected by the absence or presence in any case of insurance or by the failure or refusal of any insurance carrier to perform any obligation on its part under insurance policies affecting the Surface Site.

In case any claim, action or proceeding is made or brought against any Indemnified Party by reason of any of the foregoing events to which reference is made in this Section 18, then Lessee, upon written notice from Lessor will, at Lessee's sole cost and expense, resist or defend such claim, action or proceeding, in such Indemnified Party's name, if necessary, by counsel approved, in writing, by Lessor, such approval not be unreasonably withheld.

The obligations of Lessee under this Section 18 shall survive expiration or termination of this Lease.

19.      Condemnation. If all or part of the Surface Site is proposed to be taken as a result of any action or proceeding in eminent domain, or is proposed to be transferred in lieu of condemnation to any authority entitled to exercise the power of eminent domain (collectively, a "Taking"), Lessor or Lessee, after receiving notice of any proceeding or meeting, shall promptly provide to the other party written notice of any impending proceedings or meetings related to such Taking and each of Lessor and Lessee may participate in such proceedings or meetings. This Agreement shall terminate as to any portion of the Surface Site so condemned or taken (except in the case of a temporary Taking after the duration of which Lessee desires to continue the Agreement). Any award or other compensation ("Award") payable as a consequence of such Taking shall be paid as follows:

(a)      Lessor shall first be entitled to receive out of the Award: (1) to the extent a separate award is not made to Lessor therefor, any portion of the Award for damages to Lessor's adjacent property, including, without limitation, diminution in value of Lessor's adjacent property resulting from the Taking of the Surface Site or any portion thereof, and (2) the value of Lessor's fee interest in the Surface Site, valued as if no Facilities were on the Surface Site;

(b)      Lessee shall next be entitled to receive out of the Award: (1) the value of the Facilities installed on the Property that are taken in such Taking; (2) any other compensation or benefits payable by law as a consequence of the loss or interruption of Lessee's business and the other costs and expenses incurred by Lessee as consequence of the Taking; and (3) the remaining present value of Lessee's interest in the Property (determined at the time of the Taking), including the value of Lessee's interests under this Agreement; and

(c)      Lessor shall be entitled to any remainder of the Award.

Lessor shall have the exclusive right to negotiate with the taking authority for payment with respect to the fee interest of Lessor and all interests relating to the land. Lessee may negotiate with such lawful authority with respect to all or any part of the Surface Site other than the land, but shall not make any voluntary settlement with such lawful authority in any taking or condemnation proceeding, nor convey or agree to convey all or any part of the Facilities or Lessee's interest in and to the Surface Site under this Agreement to such authority in lieu of taking or condemnation, without first obtaining the written consent of Lessor.

10

In no event shall Lessee be entitled to any refund of any portion of the Consideration as a result of any Taking or any damage or destruction to the Surface Site or any Facilities located thereon.

20.     Default; Remedies. Lessee shall be in default hereunder if (a) Lessee fails to pay any amount required to be paid by Lessee under this Agreement and such failure is not cured within 30 days after the due date therefor or such shorter period as is necessary to prevent the imposition of any fine, penalty or lien against Lessor or the Surface Site, (b) Lessee fails to perform any other obligations of Lessee under this Agreement or fails to comply with any other terms and conditions of this Agreement and such failure is not cured within 180 days after notice thereof from Lessor or any third party (e.g., any governmental authority) or such shorter period as is necessary to prevent the imposition of any fine, penalty or lien against Lessor or the Surface Site, (c) Lessee abandons the Surface Site, (d) an involuntary petition is filed against Lessee under any bankruptcy or insolvency law or under the reorganization provisions of any law of like import or whenever a receiver of Lessee, or of the Surface Site or all or substantially all of the other property of Lessee, shall be appointed without acquiescence, and such petition or appointment is not discharged or stayed within 180 days after the happening of such event, or (e) Lessee makes an assignment of its property for the benefit of creditors or files a voluntary petition under any bankruptcy or insolvency law, or seeks relief under any other law for the benefit of debtors (each, an "Event of Default"). If an Event of Default occurs, Lessor shall have the right (1) to terminate this Agreement, (2) to perform the obligation or covenant of Lessee, in which case any amount paid by Lessor and all costs and expenses, including, without limitation, reasonable attorneys' fees and disbursements, incurred by Lessor in connection therewith, together with interest thereon at the maximum contract rate of interest from the respective dates of Lessor's making of the payment or incurring of the cost and expense to the date Lessee reimburses Lessor for such amount, shall be paid by Lessee to Lessor immediately on demand, and (3) exercise any or all other remedies available at law or in equity, all of which rights and remedies shall be cumulative and not exclusive of any other right or remedy.

21.     Liens; Encumbrances; Release.

a.   Lessee shall not create or permit to be created any lien, encumbrance or charge upon the Surface Site or any part thereof, without the prior written consent of Lessor, and Lessee shall not suffer any other matter or thing whereby the estate, rights and/or interest of Lessor (or any part thereof) in the Surface Site or any part thereof might be encumbered. If any lien, lien claim or lien affidavit is filed or claimed against the Surface Site or any part thereof or Lessor's estate, rights or interest therein, Lessee shall cause the same to be discharged of record by payment, deposit, bond order of a court of competent jurisdiction or otherwise within 30 days after filing thereof. If Lessee fails to cause such lien, claim or affidavit, as applicable, to be discharged within such 30-day period, then, in addition to any other right or remedy Lessor may have hereunder or at law or equity, Lessor may, but shall not be obligated to, discharge the same by payment or any other means Lessor, in Lessor's sole discretion, deems appropriate.  Any amount paid by Lessor and all costs and expenses, including, without limitation, reasonable attorneys' fees and disbursements, incurred by Lessor in connection with the discharge thereof, together with interest thereon at the maximum contract rate of interest from the respective dates of Lessor's making of the payment or incurring of the cost and expense to the date Lessee reimburses Lessor for such amount, shall be paid by Lessee to Lessor immediately on demand.

b.   Lessor and Lessee hereby acknowledge that, as of the Effective Date, multiple liens, lien claims and lien affidavits have been filed against the Surface Site, Lessor's property encumbered by the Easements (the "Easement Property") and other property owned by Lessor in Reeves County, Texas ("Lessor's Other Property") including, without limitation, Section 34, Block 57 of the Public School Lands Survey, as to which Lessor has not granted

11

Lessee any rights whatsoever (the "<u>Existing Liens</u>") in connection with work that was performed at Lessee's direction or for the benefit of Lessee. Schedule 1 attached hereto and made a part hereof sets forth each of the Existing Liens. In the event that, following the Effective Date, Lessor becomes aware of any additional Existing Liens which, prior to the Effective Date, were filed against, and at such time continue to encumber the Surface Site, the Easement Property or Lessor's Other Property, Lessor may amend Schedule 1 to include such additional Existing Liens upon delivery of written notice to Lessee setting forth such additional Existing Liens, and such additional Existing Liens shall be deemed to be added to Schedule 1 as of the date of delivery of such written notice. From and after the date of this Agreement, Lessee shall use its commercially reasonable efforts to cause the parties that filed the Existing Liens (and any party that subsequently files any lien, lien claim or lien affidavit) against the Surface Site, the Easement Property or Lessor's Other Property to release the same as to Lessor's fee interest in the Surface Site, the Easement Property and any of such Lessor's Other Property and expressly state in said release that such party waives and disclaims any future liens or lien rights as to Lessor's fee interest. Lessee shall also use its commercially reasonable efforts to amend all existing construction contracts, and shall cause all construction contracts hereafter entered into by Lessee, related to any construction to be performed (i) on the Surface Site, (ii) within the Easement Property, or (iii) in connection with any other project constructed or owned by Lessee in Reeves County (e.g., the Cottonwood I project), to include the language set forth on Exhibit "B" attached hereto with respect to the original/general contractor and to require the original/general contractor to include the language set forth in Exhibit "B" attached hereto with respect to subcontractors in all subcontracts entered into by such original/general contractor. In connection with their cases under chapter 11 of the Bankruptcy Code which are pending in the Bankruptcy Court, Lessee and its debtor affiliates shall use its best efforts to cause the plan of reorganization to provide for the encumbrance of the Existing Liens and any liens, lien claims and lien affidavits hereafter filed against the Surface Site, the Easement Property or any of Lessor's Other Property to be satisfied and released. Lessee shall indemnify and defend Lessor against and save Lessor, the Surface Site, the Easement Property, any other property owned by Lessor (including, without limitation, Lessor's Other Property) and any portion of any of the foregoing, harmless from and against all Claims and Losses (i) resulting from the assertion, filing, foreclosure or other legal proceedings with respect to any such Existing Liens and any liens, lien claims and lien affidavits hereafter filed and (ii) arising out of or related to any construction or other business conducted by Lessee or at Lessee's direction.  If any Existing Lien is not removed on or prior to (A) the later to occur of (I) the date which is ninety (90) days following the date such Existing Lien is added or deemed added to Schedule 1 hereto and (II) the earlier of the date which is (a) ninety (90) days following the effective date of a plan of reorganization filed by Lessee and confirmed by entry of an order of the United States Bankruptcy Court for the Southern District of Texas or (b) two hundred forty (240) days following the Effective Date of this Agreement, then Lessor may suspend Lessee's access without any notice or cure period required, and (B) the later to occur of (1) the date which is ninety (90) days following the date such Existing Lien is added or deemed added to Schedule 1 hereto and (2) the date which is three hundred sixty (360) days following the Effective Date of this Agreement, then Lessor may terminate this Agreement without any notice or cure period required.  For purposes of the immediately preceding sentence, all Existing Liens listed on Schedule 1 hereto as of the Effective Date shall be deemed to have been "added or deemed added to Schedule 1" as of the Effective Date.

22.     Restoration. Upon termination or expiration of this Agreement, except to the extent otherwise expressly agreed in writing by Lessor, Lessee shall restore the Surface Site to a condition and

contour substantially the same as existing on the Surface Site as of the Commencement Date, which restoration obligations (the "Restoration Requirements") shall include, without limitation, (a) removal of all above-grade Facilities and all foundations, footings, pads and other below-grade Facilities located on the Surface Site to not less than four (4) feet below grade, (b) burying of all foundations, footings, pads and other below-grade Facilities that are more than four (4) feet below grade with topsoil, (c) cleanup, removal and remediation of all Hazardous Materials, and (d) reseeding of the Surface Site with grasses and/or natural vegetation approved by Lessor; provided, however, that Lessor, in Lessor's sole discretion, may require Lessee to leave all or any portion of the Facilities on the Surface Site (and in good and  operating condition) at the expiration or termination of this Agreement and to convey the same to Lessor by warranty deed free and clear of all liens and encumbrances (other than the Existing Encumbrances and any encumbrances expressly consented to in writing by Lessor). Unless otherwise directed by Lessor, Lessee shall complete the Restoration Requirements no later than three (3) months after the expiration or termination date. Following the expiration or termination date and until Lessee completes the Restoration Requirements, Lessee shall pay to Lessor rent in an amount per month (which shall not be prorated for any partial month) equal to the then-current fair market ground lease rental for the Surface Site as determined by Lessor in Lessor's sole but reasonable discretion, and Lessee shall be obligated to perform all other obligations of Lessee that applied during term of this Lease. Notwithstanding the foregoing, Lessee shall not have any obligation to remove any cables, lines, or conduit which is buried four (4) feet or more below-grade provided that no live lines (i.e., lines carry any electrical current) shall be left on or under the Surface Site, and any access roads constructed on the Surface Site may remain on the Surface Site at Lessee's option, unless Lessor specifically requests their removal in writing. During such three (3) month period, Lessee shall have a revocable license on, over and across the Surface Site for purposes of completing the Restoration Requirements.

TO HAVE AND TO HOLD the rights, privileges, and authority hereby granted unto Lessee, its successors and assigns, under this ninety nine (99) year lease, subject to the terms and conditions set forth herein.  This Agreement and all of its terms, provisions, and obligations shall be covenants running with the land affected thereby and shall inure to the benefit of and be binding upon Lessor and Lessee and their respective heirs, executors, administrators, successors, and assigns.

EXECUTED and effective as of June 16, 2023 (the "Effective Date").

(Signatures and Acknowledgments on Following Pages)

13

**LESSOR:**

**JRC/RGC34 Trade Tracts, LTD,**
a Texas limited partnership

By its General Partner:
**Jefferson Realty Co.,**
a Texas corporation

By: _R Cull Pawll_
Print Name: _R. CULLEN POWELL_
Title: _CHAIRMAN / PRESIDENT_

**ACKNOWLEDGMENT**

STATE OF TEXAS            §
                         §
COUNTY OF _HARRIS_        §

BEFORE ME, the undersigned authority, on this the _24th_ day of _May_, 2023, personally appeared _R. Cullen Powell_, the _Chairman and President_ of **Jefferson Realty Co.,** a Texas corporation, as General Partner of **JRC/RGC34 Trade Tracts, LTD,** a Texas limited partnership, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed, in the capacity therein stated, and that he/she was authorized to do so.

_____
Signature of Notary Public

ARACELI LOZANO
NOTARY PUBLIC
STATE OF TEXAS
ID. 131600659
EXP. 06/11/2026

[Signature Page to Lease – Cottonwood 2 - Lessor]

**LESSEE:**

**Core Scientific Operating Company,**
a Delaware corporation

By: _____

Print Name: Denise Sterling       *Denise Sterling*

Title: Chief Financial Officer


## ACKNOWLEDGEMENT

STATE OF _Texas_        §
                        §
COUNTY OF _Denton_      §

     BEFORE ME, the undersigned authority, on this the _13_ day of _June_, 2023, personally appeared Denise Sterling, the Chief Financial Officer of **Core Scientific Operating Company,** a Delaware corporation, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same on behalf of such company for the purposes and consideration therein expressed, in the capacity therein stated, and that he/she was authorized to do so.

_____

Signature of Notary Public   940.367.7971

> JULIE HUNT
> Notary Public, State of Texas
> Comm. Expires 02-20-2026
> Notary ID 131458215

[Signature Page to Lease – Cottonwood 2 - Lessee]

*Execution Version*

EXHIBIT "A"

[ATTACHED]



# REEVES COUNTY, TEXAS
## PUBLIC SCHOOL LANDS SURVEY, SECTION 38, BLOCK 57, ABSTRACT 2489

PRIORITY POWER
COTTONWOOD
JRC/RGC34 TRADE TRACTS, LTD.

### 50.00 ACRE SURFACE LEASE

Being a 50.00 acre surface lease located in the Public School Lands Survey, Section 38, Block 57, Abstract 2489, Reeves County, Texas; being part of a tract of land described in Deed to JRC/RGC34 Trade Tracts, Ltd. as recorded in Volume 640, Page 464 of the Official Public Records of Reeves County Texas; said surface lease being more particularly described as follows:

**BEGINNING** at a 1/2-inch capped iron rod set for the Southeast corner of the herein described surface lease, from which a 1/2-inch capped iron rod found for the Southeast corner of said Section 38 bears S 11°54'27" E, a distance of 3,746.13 feet;

**THENCE** N 88°07'16" W, a distance of 1,475.81 feet, to a 1/2-inch capped iron rod set for corner;

**THENCE** N 01°52'44" E, a distance of 1,475.80 feet, to a 1/2-inch capped iron rod set for corner;

**THENCE** S 88°07'16" E, a distance of 1,475.81 feet, to a 1/2-inch capped iron rod set for corner;

**THENCE** S 01°52'44" W, a distance of 1,475.80 feet, to the **POINT OF BEGINNING**, in all containing 2,178,000 square feet or 50.00 acres, more or less. All 1/2-inch iron rods set with cap stamped "DATAPOINT 10194585" unless otherwise noted.

I, Matthew Tomerlin, Registered Professional Land Surveyor No. 6503 of the State of Texas, do hereby certify this plat shows the results of an on the ground survey made under my direction.
**Original signed and stamped in red ink.**



_____Date of Signature: February 7, 2022

MATTHEW TOMERLIN
REGISTERED PROFESSIONAL LAND SURVEYOR NO. 6503
FIRM REGISTRATION/LICENSE NO. 10194585
FOR DATAPOINT SURVEYING AND MAPPING
12450 NETWORK BLVD, SUITE 300
SAN ANTONIO, TX. 78249
(777) 726-4240 OFFICE
(777) 726-4241 FAX



SHEET 2 OF 2

*Execution Version*

EXHIBIT "B"

CONTRACTOR/SUBCONTRACTOR PROVISIONS

To be included in any contract with an original/general contractor:

> "Contractor acknowledges that Contractor is contracting **ONLY** with Core Scientific Operating Company, which is a lessee or easement estate holder with respect to the property to or on which the materials and/or labor to be provided by Contractor will be provided, and that Contractor has no contract with the owner of fee title to such property or such owner's agent, trustee, receiver, contractor(s), or subcontractor(s). Contractor understands that in the event Core Scientific Operating Company fails to pay Contractor for materials and/or labor, Contractor's right to file a mechanics and/or materialmen's lien is limited to the leasehold interest or easement estate of Core Scientific Operating Company and does not extend to the fee interest of the owner of the property, and Contractor expressly waives and disclaims any right to any lien whatsoever on such fee interest and shall include such waiver and disclaimer in a lien, lien claim or lien affidavit filed by Contractor."

To be included in all subcontracts:

> "Subcontractor acknowledges that Subcontractor is contracting **ONLY** with _____ [INSERT NAME OF CONTRACTOR] which is the contractor for Core Scientific Operating Company which is a lessee or easement estate holder with respect to the property to or on which the materials and/or labor to be provided by Subcontractor will be provided, and that Subcontractor has no contract with the owner of fee title to such property or such owner's agent, trustee, receiver, contractor(s), or subcontractor(s). Subcontractor understands that in the event Core Scientific Operating Company or its contractor fails to pay Subcontractor for materials and/or labor, Subcontractor's right to file a mechanics and/or materialmen's lien is limited to the leasehold interest or easement estate of Core Scientific Operating Company and does not extend to the fee interest of the owner of the property, and Subcontractor expressly waives and disclaims any right to any lien whatsoever on such fee interest and shall include such waiver and disclaimer in a lien, lien claim or lien affidavit filed by Subcontractor."

**SCHEDULE 1**

**EXISTING LIENS**

1. That certain Notice of Mechanic's Lien in the amount of $1,153,226.72, dated as of September 8, 2022, filed by Graybar Electric Company, Inc., recorded on September 9, 2022, under Recording Number 202206200, as partially released by that certain Unconditional Waiver and Partial Release of Lien in the amount of $279,961.04, dated as of September 23, 2022.

2. That certain Notice of Mechanic's Lien in the amount of $2,566,892.93, filed by Condair, Inc., recorded on December 16, 2022, under Recording Number 2022008811.

3. That certain Notice of Mechanic's Lien in the amount of $677,993.88, dated as of November 11, 2022, filed by Coonrod Electric Co., LLC, recorded on November 15, 2022, under Recording Number 2022007984.

4. That certain Notice of Mechanic's Lien in the amount of $82,240.00, dated as of December 14, 2022, filed by T&D Moravits & Co., recorded on December 15, 2022, under Recording Number 2022008778.

5. That certain Notice of Mechanic's Lien in the amount of $96,192.50, dated as of December 14, 2022, filed by T&D Moravits & Co., recorded on December 15, 2022, under Recording Number 2022008779.

6. That certain Notice of Mechanic's Lien in the amount of $305,769.50, dated as of December 14, 2022, filed by T&D Moravits & Co., recorded on December 15, 2022, under Recording Number 2022008777.

7. That certain Notice of Mechanic's Lien in the amount of $9,007,945.01, filed by Huband-Mantor Construction, Inc., recorded on November 14, 2022, under Recording Number 2022007951, as amended by that certain Notice of Mechanic's Lien in the amount of $12,548,795.32, recorded on December 29, 2022, under Recording Number 2022009071, as amended by that certain Notice of Mechanic's Lien in the amount of $15,603,889.45, recorded on January 18, 2023, under Recording Number 2023000447.

8. That certain Notice of Mechanic's Lien in the amount of $1,699,939.21, filed by Huband-Mantor Construction, Inc., recorded on November 14, 2022, under Recording Number 2022007953, as amended by that certain Notice of Mechanic's Lien in the amount of $1,967,676.93, recorded on January 18, 2023, under Recording Number 2023000448.

9. That certain Notice of Mechanic's Lien in the amount of $83,744.45, filed by MK Marlow Company recorded on November 14, 2022, under Recording Number 2022007947.

10. That certain Notice of Mechanic's Lien in the amount of $978,127.96, filed by MK Marlow Company recorded on November 14, 2022, under Recording Number 2022007946.

11. That certain Notice of Mechanic's Lien in the amount of $52,056.42, filed by Herc Rentals, Inc., recorded on February 15, 2023 under Recording Number 2023001174.

## Exhibit 2

**Cottonwood II Memo of Lease**

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED OF RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

### MEMORANDUM OF SURFACE LEASE AGREEMENT

| | | |
|---|---|---|
| STATE OF TEXAS | § | |
| | § | KNOW ALL PERSONS BY THESE PRESENTS: |
| COUNTY OF REEVES | § | |

That **JRC/RGC34 Trade Tracts, LTD,** a Texas limited partnership, whose address is 1415 Louisiana Street, Suite 1900, Houston, Texas 77002 (hereinafter referred to as "Lessor" whether one or more), for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, has entered into an exclusive long term ninety-nine (99) year Surface Lease Agreement, herein referred to as the "Agreement," with **Core Scientific Operating Company,** a Delaware corporation, whose address is 2407 S. Congress Ave., Suite E-101 Austin, Texas 78704 (hereinafter called "Lessee"), leasing to Lessee for a term of ninety-nine (99) years that certain 50.00-acre tract of land more particularly described and depicted on the attached Exhibit "A" attached hereto and incorporated herein for all intents and purposes.

This Memorandum of Surface Lease Agreement (the "Memorandum") may be executed in several counterparts, each of which shall be an original of this Memorandum but all of which, taken together, shall constitute one and the same Memorandum and be binding upon the parties who executed any counterpart, regardless of whether it is executed by all parties named herein.

All prospective assignees, mortgagees or other parties claiming some interest or acquiring some interest by, through, or under any of the above-mentioned parties are put on notice of the priority of the Agreement and the terms and provisions thereof and can contact the parties to determine the terms and provisions thereof.

The Agreement contains other provisions that limit and restrict the rights of the parties in relation to their specific interests in and to the property covered by the Agreement and provides for termination of the Agreement under certain circumstances.

Lessee agrees to execute, upon Lessor's request following the expiration or earlier termination of the Agreement, an instrument in recordable form confirming the expiration or termination of the Agreement and releasing and discharging this Memorandum. If, after the expiration or a valid termination of the Agreement, Lessee fails to execute a recordable termination and release of this Memorandum (a "Release") within 15 days after request by Lessor, Lessor may execute and record a Release confirming the expiration or termination of the Agreement and releasing and discharging this Memorandum without the joinder of Lessee, and any third party shall have the right to rely on such Release notwithstanding the Lessee has not joined in the execution of such Release. Lessor agrees that Lessor shall not execute and record any Release prior to the expiration or a valid termination of the Agreement.  Nothing in any Release executed and recorded by Lessor without the joinder of Lessee shall Release any claim Lessee may have against Lessor arising out of any false or incorrect statement in such Release.

EXECUTED this 16th day of June 2023.

(Signatures and Acknowledgements on Following Pages)

**LESSOR:**

**JRC/RGC34 Trade Tracts, LTD,**
a Texas limited partnership

By its General Partner:
**Jefferson Realty Co.,**
a Texas corporation

By: _R Cull Pawll_
Print Name: _R Cullen Powell_
Title: _Chairman/President_

# ACKNOWLEDGMENT

STATE OF TEXAS                            §
                                          §
COUNTY OF _HARRIS_                         §

BEFORE ME, the undersigned authority, on this the _24th_ day of _May_, 2023, personally appeared _R Cullen Powell_, the _Chairman and President_ of **Jefferson Realty Co.**, a Texas corporation, as General Partner of **JRC/RGC34 Trade Tracts, LTD**, a Texas limited partnership, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed, in the capacity therein stated, and that he/she was authorized to do so.

_Signature of Notary Public_

ARACELI LOZANO
NOTARY PUBLIC
STATE OF TEXAS
ID. 131600653-9
EXP. 06/11/2026

[Signature Page to Memorandum of Lease – Cottonwood 2 – Lessor]

**LESSEE:**

**Core Scientific Operating Company,**
a Delaware corporation

By: _Denise Sterling_

Print Name: Denise Sterling
Title: Chief Financial Officer

## ACKNOWLEDGEMENT

STATE OF _Texas_ §
                        §
COUNTY OF _Denton_ §

      BEFORE ME, the undersigned authority, on this the _13_ day of _June_, 2023, personally appeared Denise Sterling, the Chief Finanical Officer of **Core Scientific Operating Company,** a Delaware corporation, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same on behalf of such company for the purposes and consideration therein expressed, in the capacity therein stated, and that he/she was authorized to do so.

_Julie Hunt_
Signature of Notary Public
940-367-7971

JULIE HUNT
Notary Public, State of Texas
Comm. Expires 02-20-2026
Notary ID 131458215

After Recording Return To:
Norfleet Land Services, LLC
1309 S. Adams Street
Fort Worth, TX 76104

[Signature Page to Memorandum of Lease – Cottonwood 2 – Lessee]

**Exhibit "A"**

**[See attached]**

**EXHIBIT A**



# REEVES COUNTY, TEXAS

PUBLIC SCHOOL
LANDS 35
SECTION 35
BLOCK 57
ABSTRACT 1905

34│35
39│38

S 88°07'16" E  5266.95'

L3

35│36

PUBLIC SCHOOL
LANDS 39
SECTION 39
BLOCK 57
ABSTRACT 5052

N 01°46'08" E  5262.34'

L2

TOTAL AREA =
50.00 ACRES/
2,178,000 SQ. FT.

L4

POB
N: 10539055.66
E: 1212104.10
LAT: 31.535176
LON: -103.814854

L1

S 01°42'51" W  5275.79'

JRC/RGC34 TRADE TRACTS, LTD.
VOL. 640, PG. 464
O.P.R.R.C.T.

S 11°54'27" E
3746.13' (TIE)

PUBLIC SCHOOL
LANDS 38
SECTION 38
BLOCK 57
ABSTRACT 1907

PUBLIC SCHOOL LANDS
SECTION 38
BLOCK 57
ABSTRACT 2489

PUBLIC SCHOOL
LANDS 37
SECTION 37
BLOCK 57
ABSTRACT 5705

39│46

2" IPF

N 87°58'30" W  5272.03'

1/2" CIRF

37│48

PUBLIC SCHOOL
LANDS 47
SECTION 47
BLOCK 57
ABSTRACT 2492

TOTAL AREA = 50.00 ACRES / 2,178,000 SQ. FT.

STATE OF TEXAS
REGISTERED
MATTHEW TOMERLIN
6503
PROFESSIONAL
LAND SURVEYOR

I, MATTHEW TOMERLIN, REGISTERED PROFESSIONAL SURVEYOR NO.
6503, DO HEREBY CERTIFY THIS PLAT SHOWS THE RESULTS OF AN ON
THE GROUND SURVEY MADE UNDER MY DIRECTION, AND THAT IT IS
TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF.

MATTHEW TOMERLIN
REGISTERED PROFESSIONAL LAND SURVEYOR NO. 6503

| LINE | BEARING | DISTANCE |
|------|---------|----------|
| L1 | N 88°07'16" W | 1475.81' |
| L2 | N 01°52'44" E | 1475.80' |
| L3 | S 88°07'16" E | 1475.81' |
| L4 | S 01°52'44" W | 1475.80' |

**NOTES**

1. ALL COORDINATES, BEARINGS, AND DISTANCES CONTAINED HEREIN
ARE GRID, BASED UPON THE TEXAS STATE PLANE COORDINATES
SYSTEM, NORTH AMERICAN DATUM 83, CENTRAL ZONE (4203), NAVD 88,
US SURVEY FEET.

2. THIS DOCUMENT IS BASED UPON AN ON THE GROUND SURVEY
PERFORMED DURING JANUARY, 2022. CERTIFICATION OF THIS
DOCUMENT IS ONLY TO THE LOCATION OF THIS EASEMENT IN RELATION
TO RECORDED MONUMENTATION OF DEEDS PROVIDED BY THE CLIENT.

3. ELEVATIONS MSL, DERIVED FROM G.N.S.S. OBSERVATION AND DERIVED
FROM SAID ON-THE-GROUND SURVEY.

4. THIS DOCUMENT DOES NOT IN ANY WAY REPRESENT A "BOUNDARY
SURVEY" AS DEFINED BY T.A.C. §663.16

**LEGEND**

SURFACE LEASE
SECTION LINE
EXISTING PIPELINE
OHE — OVERHEAD ELECTRIC
BARBED WIRE FENCE
HIGH GAME FENCE
PIPE FENCE
FOUND MONUMENT        W  WELL
FOUND FENCE POST
SET 1/2" CAPPED IRON
ROD STAMPED "DATAPOINT 10194585"
UNLESS OTHERWISE NOTED
CALC. CORNER

**Priority Power**

Situated in
PUBLIC SCHOOL LANDS SURVEY, SECTION 38,
BLOCK 57, ABSTRACT 2489
REEVES COUNTY, TEXAS

**COTTONWOOD**
JRC/RGC34 TRADE TRACTS, LTD.
PROPOSED SURFACE LEASE

0    1000'    2000'

SCALE: 1" = 1000'

**DATAPOINT**
SURVEYING & MAPPING

12450 Network Blvd. - Suite 300
San Antonio, TX 78249
Phone: 726-777-4240
Firm No. 10194585

| | | | |
|---|---|---|---|
| DRAWN BY: CK | DATE : 02/07/2022 | REV. |
| CHECKED BY: MBT | DATE : 02/07/2022 | 1 |
| PROJECT NO: 21-09-1134 | SHEET 1 OF 2 | |

2/7/2022 2:51 PM  C.KENNEDY  Z:\2021\PRIORITY POWER\21-09-1134 COTTONWOOD (BASE)\PLATS AND PROFILES\TX-PRPO-CWSS-002 JRC RGC34 (50AC SURFACE SITE)\LEASE\20220207\TX-PRPO-CWSS-002 JRC RGC34.dwg

# REEVES COUNTY, TEXAS
## PUBLIC SCHOOL LANDS SURVEY, SECTION 38, BLOCK 57, ABSTRACT 2489

PRIORITY POWER
COTTONWOOD
JRC/RGC34 TRADE TRACTS, LTD.

### 50.00 ACRE SURFACE LEASE

Being a 50.00 acre surface lease located in the Public School Lands Survey, Section 38, Block 57, Abstract 2489, Reeves County, Texas; being part of a tract of land described in Deed to JRC/RGC34 Trade Tracts, Ltd. as recorded in Volume 640, Page 464 of the Official Public Records of Reeves County Texas; said surface lease being more particularly described as follows:

**BEGINNING** at a 1/2-inch capped iron rod set for the Southeast corner of the herein described surface lease, from which a 1/2-inch capped iron rod found for the Southeast corner of said Section 38 bears S 11°54'27" E, a distance of 3,746.13 feet;

**THENCE** N 88°07'16" W, a distance of 1,475.81 feet, to a 1/2-inch capped iron rod set for corner;

**THENCE** N 01°52'44" E, a distance of 1,475.80 feet, to a 1/2-inch capped iron rod set for corner;

**THENCE** S 88°07'16" E, a distance of 1,475.81 feet, to a 1/2-inch capped iron rod set for corner;

**THENCE** S 01°52'44" W, a distance of 1,475.80 feet, to the **POINT OF BEGINNING**, in all containing 2,178,000 square feet or 50.00 acres, more or less. All 1/2-inch iron rods set with cap stamped "DATAPOINT 10194585" unless otherwise noted.

I, Matthew Tomerlin, Registered Professional Land Surveyor No. 6503 of the State of Texas, do hereby certify this plat shows the results of an on the ground survey made under my direction.
**Original signed and stamped in red ink.**

_____Date of Signature: February 7, 2022
MATTHEW TOMERLIN
REGISTERED PROFESSIONAL LAND SURVEYOR NO. 6503
FIRM REGISTRATION/LICENSE NO. 10194585
FOR DATAPOINT SURVEYING AND MAPPING
12450 NETWORK BLVD, SUITE 300
SAN ANTONIO, TX. 78249
(777) 726-4240 OFFICE
(777) 726-4241 FAX



PriorityPower

SHEET 2 OF 2

**<u>Exhibit 3</u>**

**Distribution Easement Agreement**

## NON-EXCLUSIVE EASEMENT AGREEMENT

| | | |
|---|---|---|
| STATE OF TEXAS | § | |
| | § | KNOW ALL MEN BY THESE PRESENTS: |
| COUNTY OF REEVES | § | |

That **JRC/RGC34 Trade Tracts, LTD.,** a Texas limited partnership, 1415 Louisiana Street, Suite 1900, Houston, Texas 77002, hereinafter called "Grantor", whether one or more, for and in consideration of Ten Dollars ($10.00) and other valuable consideration to Grantor in hand paid by **Core Scientific Operating Company,** a Delaware corporation, 2407 S. Congress Ave., Ste. E-101, Austin, Texas 78704, hereinafter referred to as "Grantee", has granted and by these presents does grant unto said Grantee a non-exclusive easement for overhead electric supply and communications facilities, consisting of a variable number of wires and cables, supporting structures, reasonably necessary surface mounted equipment and underground conduits and reasonably necessary appurtenances (the "Easement") over, under, through, across and upon the portion of Grantor's land described as follows:

A 60-foot wide strip of land as shown on, and the centerline of which is described on, **EXHIBIT "A"** attached hereto and made a part hereof (such area referred to herein as "Easement Area").

The Easement granted herein includes the unrestricted right of ingress and egress in the Easement Area and upon said Easement Area. Said Easement is granted solely for the purpose of and with the right to construct, maintain, operate, repair, remove, replace, reconstruct, and to change the size and capacity of said facilities referenced above; the right to relocate said facilities within the Easement Area in the same relative direction of said facilities; the right to relocate said facilities within the Easement Area in the same relative position to any adjacent road if and as such is constructed or widened in the future; the right to lease wire space for the purpose of permitting others to string or lay overhead or underground wire or cable within the Easement Area along said facilities; the right to prevent excavation within the Easement Area that would damage said facilities; the right to prevent construction within the Easement Area of any and all buildings, structures or other obstructions that would unreasonably interfere with the efficiency, safety, and/or convenient operation of said facilities and their appurtenances and the right to trim or remove trees or shrubbery within or that encroach upon any of the facilities located within the Easement Area, including by use of herbicides or other similar chemicals approved by the U.S. Environmental Protection Agency for such purposes, to the extent, in the reasonable judgment of Grantee, as may be necessary to prevent interference with the operation of said facilities or to remove hazard thereto.

All overhead lines shall be installed and maintained, at all times and at all points along such overhead lines, at a height of at least sixteen (16) feet (measured at their lowest point) above ground level or at such greater height as is required by applicable law or recommended pursuant to relevant safety codes (e.g., the National Electric Safety Code). All underground lines and conduits shall be installed and maintained, at all times and at all points along such lines and conduits, at a depth (measured at their highest point) below ground level sufficient to permit planting, growing and farming of crops, installation of roads, streets and paving, vehicular ingress and egress and parking for passenger vehicles, commercial vehicles and farming equipment, and pedestrian ingress and egress without requiring relocation of or causing damage to such lines, or at such greater depth as is required by applicable law or recommended pursuant to relevant safety codes (e.g., the National Electric Safety Code).

Grantor reserves to Grantor, and Grantor's heirs, legal representatives, successors and assigns, the right to use the land within the Easement Area for any purposes not inconsistent with Grantee's use of such property, planting, growing and farming of crops, installation of roads, streets and paving, vehicular ingress

1

and egress and parking for passenger vehicles, commercial vehicles and farming equipment, and pedestrian ingress and egress, and to convey, plat and/or dedicate similar rights and easements, as well as other types of rights and easements, to such other persons or entities as Grantor may deem necessary or proper, provided such other uses and conveyances do not unreasonably interfere with the exercise by Grantee of any of the rights hereby granted to Grantee.

The Easement, rights and privileges herein granted shall be subject to all valid and subsisting encumbrances, conditions, covenants, restrictions, reservations, exceptions, rights-of- way and easements of record, together with all matters that would be shown on a current, accurate survey of the Easement Area or disclosed by a physical inspection of the Easement Area, and further subject to all laws, codes, ordinances, rules, regulations, and restrictions by federal, state, local or other governmental authority applicable to and enforceable against Grantee or the Easement hereby granted, and Grantee shall comply with all terms and conditions of the foregoing.

Grantee shall coordinate its activities on the Easement Area with Grantor and perform all work and activities on the Easement Area in a manner so as to minimize, to the maximum extent possible, any disruption to the business being operated thereon or other activities on Grantor's property.

Grantee shall, at all times after doing any work in connection with the Easement granted hereby, restore the Easement Area (and any adjacent property, it being agreed, however, that nothing herein shall be deemed or construed to grant to Grantee any rights to use or access any adjacent property) as nearly as possible to its condition prior to the undertaking of such work.

Grantee shall promptly repair any damage to its lines and other facilities, equipment and appurtenances within the Easement Area and any damage to the Easement Area or adjacent property caused thereby.

Grantee shall indemnify, defend and hold harmless Grantor, its partners, and their respective partners, members, managers, officers, employees, successors and assigns, from and against any and all demands, claims, causes of action, damages, liabilities, losses, costs and expenses (including, without limitation, reasonably attorneys' fees) arising out of (a) any acts or omissions of Grantee, its employees, contractors, invitees or other persons entering upon the Easement Area with the consent of or at the request of Grantee or acting under its control ("Grantee Parties"), (b) arising out of any failure of Grantee or any Grantee Parties to comply with any covenant, term or condition of this instrument, (c) arising from presence, use, release or discharge of any hazardous substances or hazardous materials or any other environmental conditions on or about the Easement Area or any other property owned by Grantor caused by or attributable to Grantee, any Grantee Parties or the construction, installation maintenance, operation, repair, removal, replacement, reconstruction or relocation of the facilities, equipment and appurtenances referenced herein, or (d) any bodily or personal injury, illness or death of any person or property damage or loss occurring in, on or about the Easement Area or any part thereof, including, without limitation, any premises liability claims, **EVEN THOUGH CAUSED OR ALLEGED TO BE CAUSED BY THE NEGLIGENCE OR FAULT OF ANY INDEMNIFIED PARTY (EXCEPT TO THE EXTENT CAUSED OR ALLEGED TO BE CAUSED BY THE NEGLIGENT ACTS OF ANY INDEMNIFIED PARTY WHILE ON THE EASEMENT AREA DURING THE TERM OF THIS AGREEMENT OR THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF SUCH INDEMNIFIED PARTY), IT BEING AGREED THAT THIS INDEMNITY IS INTENDED TO INDEMNIFY THE INDEMNIFIED PARTIES AGAINST THE CONSEQUENCES OF THEIR OWN NEGLIGENCE OR FAULT (EXCEPT FOR THEIR OWN NEGLIGENT ACTS WHILE ON THE EASEMENT AREA DURING THE TERM OF THIS AGREEMENT AND EXCEPT FOR THEIR OWN GROSS NEGLIGENCE OR WILLFUL MISCONDUCT) WHEN SUCH INDEMNIFIED PARTIES ARE SOLELY, JOINTLY, COMPARATIVELY, CONTRIBUTIVELY, OR CONCURRENTLY NEGLIGENT WITH**

**GRANTEE OR ANY OTHER PERSON**. The obligations of Grantee under this paragraph shall survive termination of the Road Access Easement and termination of this Agreement.

Grantee shall at all times maintain or cause to be maintained (a) commercial general liability insurance insuring against claims on account of death, bodily injury or property damage that may arise from, or be occasioned by the construction, installation, condition or use of the facilities, equipment and appurtenances or the activities of any Grantee Parties, (b) commercial automobile liability insurance, (c) worker's compensation insurance and employer's liability insurance, and (d) umbrella or excess liability insurance. All liability insurance policies shall name Grantor, its general partner, and each successor owner of fee title to any portion of the Easement Area, as additional insureds and shall have limits of not less than $5,000,000 per occurrence, with such coverage to be on an "occurrence" rather than a "claims made" basis; provided, however, such $5,000,000 limit may be satisfied through a combination of primary coverage and umbrella or excess liability insurance. All insurance required to be maintained under this Non-Exclusive Easement Agreement (this "Agreement") shall be issued by insurance companies licensed or authorized to do business in the State of Texas that have a rating in the latest edition of Best's Key Rating Guide (or any successor publication of comparable standing) of "A-:VIII" or better (or another comparable rating substantially equivalent thereto that is reasonably acceptable to Grantor). Prior to entering on the Easement Area to perform any work thereon, certificates of insurance, bearing notations and including any necessary endorsements confirming the additional insured status of Grantor and other persons as required herein, shall be delivered to Grantor. Each policy of insurance shall contain a provision that no act or omission of any named insured or Grantor or any other additional insured shall affect or limit the obligation of the insurance company to pay the amount of any loss sustained, and if the insurance company would otherwise have a right to subrogation, a written agreement by the insurance company that its right to subrogation has been waived with respect to all named insureds and additional insureds.

Grantee, and Grantee's successors and assigns, shall have the unrestricted right to assign or transfer this Agreement in whole or in part without Grantor's consent. Grantor hereby represents, warrants and covenants that Grantor has the unrestricted right and authority to execute this Agreement and grant all the rights referenced herein to Grantee. When executed by the Grantor and Grantee, this Agreement constitutes a valid and binding agreement enforceable against Grantor and Grantee in accordance with its terms.

The grant made hereunder is not a conveyance of the Easement Area nor of any interest in the oil, gas, and other minerals in, on, or under the land subject to the Easement herein granted, but is a grant solely of the Easement, rights and privileges as above described.

GRANTOR RECOGNIZES THE NEED TO EXERCISE CAUTION WHEN IN CLOSE PROXIMITY TO ANY OF THE ELECTRICAL SUPPLY LINES AND ASSOCIATED FACILITIES. GRANTOR AGREES TO EXERCISE CAUTION AT ALL TIMES AND TO ADVISE ALL GRANTOR RELATED PARTIES TO DO THE SAME. GRANTOR IS AWARE THERE MAY BE RISKS ASSOCIATED WITH ELECTROMAGNETIC FIELDS RESULTING FROM THE PRODUCTION AND TRANSMISSION OF ELECTRICITY ARISING FROM OR RELATING TO SUCH RISKS.

This Agreement constitute the entire agreement between Grantor and Grantee respecting the Easements. Any agreement, understanding or representation respecting the Easement, or any other matter referenced in this Agreement not expressly set forth in this Agreement, or a subsequent writing signed by both parties is null and void. This Agreement shall not be modified or amended except in a writing signed by both parties. No purported modifications or amendments, including, without limitation, any oral agreement (even if supported by new consideration), course of conduct or absence of a response to a unilateral communication, shall be binding on either party.

3

TO HAVE AND TO HOLD the above described Easement unto the said Grantee, its successors and assigns, for a period of 99 years commencing on the commencement date of that certain Surface Lease Agreement, dated on or about the date hereof, by and between Grantor and Grantee (the "Surface Lease") with respect to a 50.00-acre tract of land in Section 38, Block 57, Public School Lands Survey, A-2489 as more particularly described in that certain Memorandum of Surface Lease executed by Grantor, as Lessor, and Grantee, as Lessee,  or until the earlier of the date on which (i) this Easement is terminated pursuant to Section 3 of the Surface Lease (and this Easement shall not be recorded by either party until such termination option has expired) or (ii) all of said lines shall be abandoned, and upon expiration of such 99-year period or upon any such termination or abandonment of said lines, whichever occurs first, (a) said Easement shall cease and all rights herein granted shall terminate and revert to Grantor or Grantor's heirs, successors or assigns, and legal representatives, (b) Grantee, its successors or assigns shall remove all of said lines and the other facilities, equipment, conduit and appurtenances referenced above and restore the surface of the Easement Area to a condition and contour substantially the same as existing on the Easement Area prior to the date of this Agreement; provided, however, that Grantee, its successors and assigns shall not be required to, and shall not, remove any improvements installed by Grantor, its successors or assigns within the Easement Area, and (c) upon request, Grantee shall execute, acknowledge and deliver to Grantor or any other owner of the Easement Area an instrument in recordable form confirming the termination of the Easement and rights granted hereunder. Any failure to execute, acknowledge or deliver such instrument or any failure to record such instrument shall not negate or otherwise affect the termination of the Easement and rights granted hereunder. Any third party shall have the right to rely on any recorded instrument, whether executed by Grantee as provided herein or executed by Grantor in the event that Grantee fails to execute and deliver the instrument contemplated above, confirming the termination of the Easement and rights granted hereunder. The terms and conditions of this paragraph and Grantee's obligations under this paragraph shall survive the termination of the Easement and rights granted hereunder and termination of this Agreement.

This Agreement and the granting of the Easement and other rights and privileges provided for herein are made without any covenants or warranty of title and Grantor expressly disclaims any and all covenants and warranties of title, express or implied, whether statutory (including, without limitation, under Section 5.023 of the Texas Property Code) or arising at common law or otherwise in connection herewith.

EXECUTED this 16th day of June, 2023.

(Signatures and Acknowledgments on Following Pages)

4

**GRANTOR:**

**JRC/RGC34 Trade Tracts, LTD.,**
a Texas limited partnership

By its General Partner:
**Jefferson Realty Co.**

By: _R Cull Powll_____

Print Name: _R. Cullen Powell_____

Title: _Chairman / President_____

## ACKNOWLEDGMENT

STATE OF TEXAS                    §
                                 §
COUNTY OF _HARRIS____            §

    BEFORE ME, the undersigned authority, on this the 24th day of May, 2023, personally appeared _R Cullen Powell_, the _Chairman and President_ of **Jefferson Realty Co.**, a Texas corporation, as General Partner of **JRC/RGC34 Trade Tracts, LTD**, a Texas limited partnership, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed, in the capacity therein stated, and that he/she was authorized to do so.

_____
Signature of Notary Public



[Signature Page to Distribution Easement – Lessor]

**GRANTEE:**

**CORE SCIENTIFIC OPERATING COMPANY,**
a Delaware corporation

By: _____

Print Name: Denise Sterling

Title: Chief Financial Officer

**ACKNOWLEDGEMENT**

STATE OF _Texas_                          §

COUNTY OF _Denton_                    §
                                                      §

    BEFORE ME, the undersigned authority, on this the _13_ day of _June_, 2023, personally appeared Denise Sterling, the Chief Financial Officer of **Core Scientific Operating Company,** a Delaware corporation, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same on behalf of such company for the purposes and consideration therein expressed, in the capacity therein stated, and that he/she was authorized to do so.

_____
Signature of Notary Public

940-367-7971

JULIE HUNT
Notary Public, State of Texas
Comm. Expires 02-20-2026
Notary ID 131458215

[Signature Page to Distribution Easement – Lessee]

**Exhibit "A"**

**[See attached]**



EXHIBIT "A"

### REEVES COUNTY, TEXAS

DETAIL "A"
1":100'

30'
30'
30'
PROPOSED
60' ELECTRIC
EASEMENT

PUBLIC SCHOOL LANDS
SECTION 26
BLOCK 57
ABSTRACT 2488

S 88°10'21" E  5270.30'

PUBLIC SCHOOL LANDS
SECTION 34
BLOCK 57
ABSTRACT 1908

JRC/RGC34 TRADE TRACTS, LTD.
VOL. 640, PG. 464
O.P.R.R.C.T.

PUBLIC SCHOOL LANDS
SECTION 35
BLOCK 57
ABSTRACT 1905

N 13°28'31" W
3505.77' (TIE)

N 38°01'11" W
6859.16' (TIE)

N 01°45'59" E  5262.24'

S 01°48'11" W  5266.96'

POB
N:10542686.73
E:1208749.87
LAT: 31.544864
LON: −103.825981

L1
L2
L3
L4
L5
L6

F.M. 2119

PUBLIC SCHOOL LANDS
SECTION 36
BLOCK 57
ABSTRACT 1906

SEE DETAIL A

34 35
39 38

N 88°07'16" W  5266.95'

35 26
37

POT
N:10540692.34
E:1212157.72
LAT: 31.539678
LON: −103.814847

PUBLIC SCHOOL LANDS
SECTION 38
BLOCK 57
ABSTRACT 1907

PUBLIC SCHOOL LANDS
SECTION 38
BLOCK 57
ABSTRACT 2489

STATE OF TEXAS
REGISTERED
MATTHEW TOMERLIN
6503
PROFESSIONAL LAND SURVEYOR

TOTAL LINEAR FEET = 3,993.82 FEET / 242.050 RODS
PERMANENT EASEMENT = 5.501 ACRES / 239,629 SQ. FT.

| LINE | BEARING | DISTANCE |
|------|---------|----------|
| L1 | S 59°11'35" E | 87.02' |
| L2 | N 30°48'25" E | 41.24' |
| L3 | S 59°11'35" E | 1060.95' |
| L4 | S 63°33'42" E | 400.24' |
| L5 | S 59°21'38" E | 2059.44' |
| L6 | S 51°37'44" E | 344.93' |

### NOTES

1. ALL COORDINATES, BEARINGS, AND DISTANCES CONTAINED HEREIN ARE GRID, BASED UPON THE TEXAS STATE PLANE COORDINATES SYSTEM, NORTH AMERICAN DATUM 83, CENTRAL ZONE (4203), NAVD 88, US SURVEY FEET.

2. THIS DOCUMENT IS BASED UPON AN ON THE GROUND SURVEY PERFORMED DURING NOVEMBER, 2021. CERTIFICATION OF THIS DOCUMENT IS ONLY TO THE LOCATION OF THIS EASEMENT IN RELATION TO RECORDED MONUMENTATION OF DEEDS PROVIDED BY THE CLIENT.

3. ELEVATIONS MSL, DERIVED FROM G.N.S.S. OBSERVATION AND DERIVED FROM SAID ON-THE-GROUND SURVEY.

4. THIS DOCUMENT DOES NOT IN ANY WAY REPRESENT A "BOUNDARY SURVEY" AS DEFINED BY T.A.C. § 663.16

### LEGEND

CENTERLINE OF EASEMENT
SECTION LINE
OHE — OVERHEAD ELECTRIC
BARBED WIRE FENCE
HIGH GAME FENCE
PIPE FENCE
● FOUND MONUMENT
□ FOUND FENCE POST
◆ SET 1/2" CAPPED IRON ROD STAMPED "DATAPOINT 10194585" UNLESS OTHERWISE NOTED
⊠ CALC. CORNER
◎ WELL

0    1000'    2000'

SCALE: 1" = 1000'

**PriorityPower**

Situated in
PUBLIC SCHOOL LANDS SURVEY, SECTION NO. 35,
BLOCK 57, ABSTRACT NO. 1905
REEVES COUNTY, TEXAS

**COTTONWOOD**
JRC/RGC34 TRADE TRACTS, LTD.
PROPOSED ELECTRIC EASEMENT

**DATAPOINT**
SURVEYING & MAPPING

12450 Network Blvd. - Suite 300
San Antonio, TX 78249
Phone: 726-777-4240
Firm No. 10194585

| DRAWN BY: CK | DATE : 11/04/2021 | REV. |
|--------------|-------------------|------|
| CHECKED BY: MBT | DATE : 11/04/2021 | 0 |
| PROJECT ID: 21-09-1134 | | SHEET 1 OF 2 |

11/4/2021  6:37 PM  C:KENNEDY  Z:\2021\PRIORITY POWER\21-09-1134  COTTONWOOD (BASE)\PLATS AND PROFILES\TX-PRPO-CWEL-001  JRC  RGC34\DISTRIBUTION  ESM'T\20211103\TX-PRPO-CWEL-001  DISTRIBUTION  ESM'T.dwg

# EXHIBIT "A"
## REEVES COUNTY, TEXAS
### PUBLIC SCHOOL LANDS SURVEY, SECTION 35, BLOCK 57, ABSTRACT 1905

PRIORITY POWER
COTTONWOOD
JRC/RGC34 TRADE TRACTS, LTD.

**PROPOSED 60 FEET WIDE**
**ELECTRIC EASEMENT**

Being a Centerline description of a proposed 60 foot-wide easement being located in the Public School Lands Survey, Section 35, Block 57, Abstract 1905, Reeves County, Texas; being part of a tract of land described in Deed to JRC/RGC34 Trade Tracts, Ltd. as recorded in Volume 640, Page 464 of the Official Public Records of Reeves County Texas; said easement being described by a centerline which is bound by lines 30 feet each side and parallel to said centerline and being more particularly described as follows:

**BEGINNING** at a point in said Section 35, from which a 1-inch iron pipe found for the Northwest corner of said Section 35, bears N 13°28'31" W, a distance of 3,505.77 feet;

**THENCE** S 59°11'35" E, a distance of 87.02 feet to a point;

**THENCE** N 30°48'25" E, a distance of 41.24 feet to a point;

**THENCE** S 59°11'35" E, a distance of 1,060.95 feet to a point;

**THENCE** S 63°33'42" E, a distance of 400.24 feet to a point;

**THENCE** S 59°21'38" E, a distance of 2,059.44 feet to a point;

**THENCE** S 51°37'44" E, a distance of 344.93 feet to the **POINT OF TERMINATION**, from which said 1-inch iron pipe found for the Northwest corner of said Section 35, bears N 38°01'11" W, a distance of 6,859.16 feet, with said easement containing 239,629 square feet or 5.501 acres of land, more or less, said easement having a centerline length of 3,993.82 feet or 242.050 rods.

I, Matthew Tomerlin, Registered Professional Land Surveyor No. 6503 of the State of Texas, do hereby certify this plat shows the results of an on the ground survey made under my direction.
**Original signed and stamped in red ink.**



_____Date of Signature: November 4, 2021
MATTHEW TOMERLIN
REGISTERED PROFESSIONAL LAND SURVEYOR NO. 6503
FIRM REGISTRATION/LICENSE NO. 10194585
FOR DATAPOINT SURVEYING AND MAPPING
12450 NETWORK BLVD, SUITE 300
SAN ANTONIO, TX. 78249
(777) 726-4240 OFFICE
(777) 726-4241 FAX





**REEVES COUNTY, TEXAS**

PROPOSED 60' ELECTRIC EASEMENT
DETAIL "A" 1":100'

POB
N:10540692.34
E:1212157.72
LAT: 31.539678
LON: −103.814847

SEE DETAIL A

POT
N:10540234.34
E:1213022.00
LAT: 31.538493
LON: −103.812028

S 88°07'16" E 5266.95'

PUBLIC SCHOOL LANDS 35 SECTION 57 BLOCK 57 ABSTRACT 1905

PUBLIC SCHOOL LANDS 39 SECTION 57 BLOCK 57 ABSTRACT 5052

N 01°46'08" E 5262.34'

S 41°38'46" W 6846.20' (TIE)

S 01°42'51" W 4846.37' (TIE)

S 01°42'51" W 5275.79'

**JRC/RGC34 TRADE TRACTS, LTD.**
**VOL. 640, PG. 464**
**O.P.R.R.C.T.**

PUBLIC SCHOOL LANDS 38 SECTION 57 BLOCK 57 ABSTRACT 1907

**PUBLIC SCHOOL LANDS SECTION 38 BLOCK 57 ABSTRACT 2489**

PUBLIC SCHOOL LANDS 37 SECTION 57 BLOCK 57 ABSTRACT 5705

39 46    2" IPF

N 87°58'30" W 5272.03'

1/2" CIRF    37    47 48

PUBLIC SCHOOL LANDS 47 SECTION 57 BLOCK 57 ABSTRACT 2492

STATE OF TEXAS
REGISTERED
MATTHEW TOMERLIN
6503
PROFESSIONAL LAND SURVEYOR

| LINE | BEARING | DISTANCE |
|------|---------|----------|
| L1 | S 51°37'44" E | 243.68' |
| L2 | S 67°05'51" E | 588.21' |
| L3 | S 59°21'38" E | 152.71' |

TOTAL LINEAR FEET = 984.61 FEET / 59.673 RODS
PERMANENT EASEMENT = 1.356 ACRES / 59,076 SQ. FT.

**NOTES**

1. ALL COORDINATES, BEARINGS, AND DISTANCES CONTAINED HEREIN ARE GRID, BASED UPON THE TEXAS STATE PLANE COORDINATES SYSTEM, NORTH AMERICAN DATUM 83, CENTRAL ZONE (4203), NAVD 88, US SURVEY FEET.

2. THIS DOCUMENT IS BASED UPON AN ON THE GROUND SURVEY PERFORMED DURING NOVEMBER, 2021. CERTIFICATION OF THIS DOCUMENT IS ONLY TO THE LOCATION OF THIS EASEMENT IN RELATION TO RECORDED MONUMENTATION OF DEEDS PROVIDED BY THE CLIENT.

3. ELEVATIONS MSL, DERIVED FROM G.N.S.S. OBSERVATION AND DERIVED FROM SAID ON-THE-GROUND SURVEY.

4. THIS DOCUMENT DOES NOT IN ANY WAY REPRESENT A "BOUNDARY SURVEY" AS DEFINED BY T.A.C. § 663.16

**LEGEND**

CENTERLINE OF EASEMENT
SECTION LINE
EXISTING PIPELINE
OHE — OVERHEAD ELECTRIC
— BARBED WIRE FENCE
— HIGH GAME FENCE
— PIPE FENCE
● FOUND MONUMENT
● FOUND FENCE POST
◆ SET 1/2" CAPPED IRON ROD STAMPED "DATAPOINT 10194585" UNLESS OTHERWISE NOTED
□ CALC. CORNER
⊕ WELL

0    1000'    2000'
SCALE: 1" = 1000'

**PriorityPower**

Situated in
PUBLIC SCHOOL LANDS SURVEY, SECTION NO. 38,
BLOCK 57, ABSTRACT NO. 2489
REEVES COUNTY, TEXAS

**COTTONWOOD**
JRC/RGC34 TRADE TRACTS, LTD.
PROPOSED ELECTRIC EASEMENT

**DATAPOINT**
SURVEYING & MAPPING

12450 Network Blvd. - Suite 300
San Antonio, TX 78249
Phone: 726-777-4240
Firm No. 10194585

| DRAWN BY: CK | DATE : 11/04/2021 | REV. |
|--------------|-------------------|------|
| CHECKED BY: MBT | DATE : 11/04/2021 | 0 |
| PROJECT ID: 21-09-1134 | | SHEET 1 OF 2 |

11/4/2021 6:38 PM C:KENNEDY Z:\2021\PRIORITY POWER\21−09−1134 COTTONWOOD (BASE)\PLATS AND PROFILES\TX-PRPO-CWEL-002 JRC RGC34\DISTRIBUTION ESMT\20211103\TX-PRPO-CWEL-002 DISTRIBUTION ESMT.dwg

# EXHIBIT "A"
## REEVES COUNTY, TEXAS
### PUBLIC SCHOOL LANDS SURVEY, SECTION 38, BLOCK 57, ABSTRACT 2489

PRIORITY POWER
COTTONWOOD
JRC/RGC34 TRADE TRACTS, LTD.

**PROPOSED 60 FEET WIDE**
**ELECTRIC EASEMENT**

Being a Centerline description of a proposed 60 foot-wide easement being located in the Public School Lands Survey, Section 38, Block 57, Abstract 2489, Reeves County, Texas; being part of a tract of land described in Deed to JRC/RGC34 Trade Tracts, Ltd. as recorded in Volume 640, Page 464 of the Official Public Records of Reeves County Texas; said easement being described by a centerline which is bound by lines 30 feet each side and parallel to said centerline and being more particularly described as follows:

**BEGINNING** at a point in the North line of said Section 38, from which a 2-inch iron pipe found for the Southwest corner of said Section 38, bears S 41°38'46" W, a distance of 6,846.20 feet;

**THENCE** S 51°37'44" E, a distance of 243.68 feet to a point;

**THENCE** S 67°05'51" E, a distance of 588.21 feet to a point;

**THENCE** S 59°21'38" E, a distance of 152.71 feet to the **POINT OF TERMINATION**, from which said 1/2-inch capped iron rod found for the Southeast corner of said Section 38, bears S 01°42'51" W, a distance of 4,846.37 feet, with said easement containing 59,076 square feet or 1.356 acres of land, more or less, said easement having a centerline length of 984.61 feet or 59.673 rods.

I, Matthew Tomerlin, Registered Professional Land Surveyor No. 6503 of the State of Texas, do hereby certify this plat shows the results of an on the ground survey made under my direction.
**Original signed and stamped in red ink.**

_____Date of Signature: November 4, 2021
MATTHEW TOMERLIN
REGISTERED PROFESSIONAL LAND SURVEYOR NO. 6503
FIRM REGISTRATION/LICENSE NO. 10194585
FOR DATAPOINT SURVEYING AND MAPPING
12450 NETWORK BLVD, SUITE 300
SAN ANTONIO, TX. 78249
(777) 726-4240 OFFICE
(777) 726-4241 FAX



## Exhibit 4

**Transmission Easement Agreement**

## NON-EXCLUSIVE EASEMENT AGREEMENT

| | | |
|---|---|---|
| STATE OF TEXAS | § | |
| | § | KNOW ALL MEN BY THESE PRESENTS: |
| COUNTY OF REEVES | § | |

That **JRC/RGC34 Trade Tracts, LTD.,** a Texas limited partnership, 1415 Louisiana Street, Suite 1900, Houston, Texas 77002, hereinafter called "Grantor", whether one or more, for and in consideration of Ten Dollars ($10.00) and other valuable consideration to Grantor in hand paid by **Core Scientific Operating Company,** a Delaware corporation, 2407 S. Congress Ave., Ste. E-101, Austin, Texas 78704, hereinafter referred to as "Grantee", has granted and by these presents does grant unto said Grantee a non-exclusive easement for overhead electric supply and communications facilities, consisting of a variable number of wires and cables, supporting structures, reasonably necessary surface mounted equipment and underground conduits and reasonably necessary appurtenances (the "Easement") over, under, through, across and upon the portion of Grantor's land described as follows:

A 60-foot wide strip of land as shown on, and the centerline of which is described on, **EXHIBIT "A"** attached hereto and made a part hereof **(**such area referred to herein as "Easement Area").

The Easement granted herein includes the unrestricted right of ingress and egress in the Easement Area and upon said Easement Area. Said Easement is granted solely for the purpose of and with the right to construct, maintain, operate, repair, remove, replace, reconstruct, and to change the size and capacity of said facilities referenced above; the right to relocate said facilities within the Easement Area in the same relative direction of said facilities; the right to relocate said facilities within the Easement Area in the same relative position to any adjacent road if and as such is constructed or widened in the future; the right to lease wire space for the purpose of permitting others to string or lay overhead or underground wire or cable within the Easement Area along said facilities; the right to prevent excavation within the Easement Area that would damage said facilities; the right to prevent construction within the Easement Area of any and all buildings, structures or other obstructions that would unreasonably interfere with the efficiency, safety, and/or convenient operation of said facilities and their appurtenances and the right to trim or remove trees or shrubbery within or that encroach upon any of the facilities located within the Easement Area, including by use of herbicides or other similar chemicals approved by the U.S. Environmental Protection Agency for such purposes, to the extent, in the reasonable judgment of Grantee, as may be necessary to prevent interference with the operation of said facilities or to remove hazard thereto.

All overhead lines shall be installed and maintained, at all times and at all points along such overhead lines, at a height of at least sixteen (16) feet (measured at their lowest point) above ground level or at such greater height as is required by applicable law or recommended pursuant to relevant safety codes (e.g., the National Electric Safety Code). All underground lines and conduits shall be installed and maintained, at all times and at all points along such lines and conduits, at a depth (measured at their highest point) below ground level sufficient to permit planting, growing and farming of crops, installation of roads, streets and paving, vehicular ingress and egress and parking for passenger vehicles, commercial vehicles and farming equipment, and pedestrian ingress and egress without requiring relocation of or causing damage to such lines, or at such greater depth as is required by applicable law or recommended pursuant to relevant safety codes (e.g., the National Electric Safety Code).

Grantor reserves to Grantor, and Grantor's heirs, legal representatives, successors and assigns, the right to use the land within the Easement Area for any purposes not inconsistent with Grantee's use of such property, planting, growing and farming of crops, installation of roads, streets and paving, vehicular ingress

1

and egress and parking for passenger vehicles, commercial vehicles and farming equipment, and pedestrian ingress and egress, and to convey, plat and/or dedicate similar rights and easements, as well as other types of rights and easements, to such other persons or entities as Grantor may deem necessary or proper, provided such other uses and conveyances do not unreasonably interfere with the exercise by Grantee of any of the rights hereby granted to Grantee.

The Easement, rights and privileges herein granted shall be subject to all valid and subsisting encumbrances, conditions, covenants, restrictions, reservations, exceptions, rights-of- way and easements of record, together with all matters that would be shown on a current, accurate survey of the Easement Area or disclosed by a physical inspection of the Easement Area, and further subject to all laws, codes, ordinances, rules, regulations, and restrictions by federal, state, local or other governmental authority applicable to and enforceable against Grantee or the Easement hereby granted, and Grantee shall comply with all terms and conditions of the foregoing.

Grantee shall coordinate its activities on the Easement Area with Grantor and perform all work and activities on the Easement Area in a manner so as to minimize, to the maximum extent possible, any disruption to the business being operated thereon or other activities on Grantor's property.

Grantee shall, at all times after doing any work in connection with the Easement granted hereby, restore the Easement Area (and any adjacent property, it being agreed, however, that nothing herein shall be deemed or construed to grant to Grantee any rights to use or access any adjacent property) as nearly as possible to its condition prior to the undertaking of such work.

Grantee shall promptly repair any damage to its lines and other facilities, equipment and appurtenances within the Easement Area and any damage to the Easement Area or adjacent property caused thereby.

Grantee shall indemnify, defend and hold harmless Grantor, its partners, and their respective partners, members, managers, officers, employees, successors and assigns, from and against any and all demands, claims, causes of action, damages, liabilities, losses, costs and expenses (including, without limitation, reasonably attorneys' fees) arising out of (a) any acts or omissions of Grantee, its employees, contractors, invitees or other persons entering upon the Easement Area with the consent of or at the request of Grantee or acting under its control ("Grantee Parties"), (b) arising out of any failure of Grantee or any Grantee Parties to comply with any covenant, term or condition of this instrument, (c) arising from presence, use, release or discharge of any hazardous substances or hazardous materials or any other environmental conditions on or about the Easement Area or any other property owned by Grantor caused by or attributable to Grantee, any Grantee Parties or the construction, installation maintenance, operation, repair, removal, replacement, reconstruction or relocation of the facilities, equipment and appurtenances referenced herein, or (d) any bodily or personal injury, illness or death of any person or property damage or loss occurring in, on or about the Easement Area or any part thereof, including, without limitation, any premises liability claims, **EVEN THOUGH CAUSED OR ALLEGED TO BE CAUSED BY THE NEGLIGENCE OR FAULT OF ANY INDEMNIFIED PARTY (EXCEPT TO THE EXTENT CAUSED OR ALLEGED TO BE CAUSED BY THE NEGLIGENT ACTS OF ANY INDEMNIFIED PARTY WHILE ON THE EASEMENT AREA DURING THE TERM OF THIS AGREEMENT OR THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF SUCH INDEMNIFIED PARTY), IT BEING AGREED THAT THIS INDEMNITY IS INTENDED TO INDEMNIFY THE INDEMNIFIED PARTIES AGAINST THE CONSEQUENCES OF THEIR OWN NEGLIGENCE OR FAULT (EXCEPT FOR THEIR NEGLIGENT ACTS WHILE ON THE EASEMENT AREA DURING THE TERM OF THIS AGREEMENT AND EXCEPT FOR THEIR OWN GROSS NEGLIGENCE OR WILLFUL MISCONDUCT) WHEN SUCH INDEMNIFIED PARTIES ARE SOLELY, JOINTLY, COMPARATIVELY, CONTRIBUTIVELY, OR CONCURRENTLY NEGLIGENT WITH**

**GRANTEE OR ANY OTHER PERSON**. The obligations of Grantee under this paragraph shall survive termination of the Road Access Easement and termination of this Agreement.

Grantee shall at all times maintain or cause to be maintained (a) commercial general liability insurance insuring against claims on account of death, bodily injury or property damage that may arise from, or be occasioned by the construction, installation, condition or use of the facilities, equipment and appurtenances or the activities of any Grantee Parties, (b) commercial automobile liability insurance, (c) worker's compensation insurance and employer's liability insurance, and (d) umbrella or excess liability insurance. All liability insurance policies shall name Grantor, its general partner, and each successor owner of fee title to any portion of the Easement Area, as additional insureds and shall have limits of not less than $5,000,000 per occurrence, with such coverage to be on an "occurrence" rather than a "claims made" basis; provided, however, such $5,000,000 limit may be satisfied through a combination of primary coverage and umbrella or excess liability insurance. All insurance required to be maintained under this Non-Exclusive Easement Agreement (this "Agreement") shall be issued by insurance companies licensed or authorized to do business in the State of Texas that have a rating in the latest edition of Best's Key Rating Guide (or any successor publication of comparable standing) of "A-:VIII" or better (or another comparable rating substantially equivalent thereto that is reasonably acceptable to Grantor). Prior to entering on the Easement Area to perform any work thereon, certificates of insurance, bearing notations and including any necessary endorsements confirming the additional insured status of Grantor and other persons as required herein, shall be delivered to Grantor. Each policy of insurance shall contain a provision that no act or omission of any named insured or Grantor or any other additional insured shall affect or limit the obligation of the insurance company to pay the amount of any loss sustained, and if the insurance company would otherwise have a right to subrogation, a written agreement by the insurance company that its right to subrogation has been waived with respect to all named insureds and additional insureds.

Grantee, and Grantee's successors and assigns, shall have the unrestricted right to assign or transfer this Agreement in whole or in part without Grantor's consent. Grantor hereby represents, warrants and covenants that Grantor has the unrestricted right and authority to execute this Agreement and grant all the rights referenced herein to Grantee. When executed by the Grantor and Grantee, this Agreement constitutes a valid and binding agreement enforceable against Grantor and Grantee in accordance with its terms.

The grant made hereunder is not a conveyance of the Easement Area nor of any interest in the oil, gas, and other minerals in, on, or under the land subject to the Easement herein granted, but is a grant solely of the Easement, rights and privileges as above described.

GRANTOR RECOGNIZES THE NEED TO EXERCISE CAUTION WHEN IN CLOSE PROXIMITY TO ANY OF THE ELECTRICAL SUPPLY LINES AND ASSOCIATED FACILITIES. GRANTOR AGREES TO EXERCISE CAUTION AT ALL TIMES AND TO ADVISE ALL GRANTOR RELATED PARTIES TO DO THE SAME. GRANTOR IS AWARE THERE MAY BE RISKS ASSOCIATED WITH ELECTROMAGNETIC FIELDS RESULTING FROM THE PRODUCTION AND TRANSMISSION OF ELECTRICITY ARISING FROM OR RELATING TO SUCH RISKS.

This Agreement constitute the entire agreement between Grantor and Grantee respecting the Easements. Any agreement, understanding or representation respecting the Easement, or any other matter referenced in this Agreement not expressly set forth in this Agreement, or a subsequent writing signed by both parties is null and void. This Agreement shall not be modified or amended except in a writing signed by both parties. No purported modifications or amendments, including, without limitation, any oral agreement (even if supported by new consideration), course of conduct or absence of a response to a unilateral communication, shall be binding on either party.

TO HAVE AND TO HOLD the above described Easement unto the said Grantee, its successors and assigns, for a period of 99 years commencing on the commencement date of that certain Surface Lease Agreement, dated on or about the date hereof, by and between Grantor and Grantee (the "Surface Lease") with respect to a 50.00-acre tract of land in Section 38, Block 57, Public School Lands Survey, A-2489 as more particularly described in that certain Memorandum of Surface Lease executed by Grantor, as Lessor, and Grantee, as Lessee,  or until the earlier of the date on which (i) this Easement is terminated pursuant to Section 3 of the Surface Lease (and this Easement shall not be recorded by either party until such termination option has expired) or (ii) all of said lines shall be abandoned, and upon expiration of such 99-year period or upon any such termination or abandonment of said lines, whichever occurs first, (a) said Easement shall cease and all rights herein granted shall terminate and revert to Grantor or Grantor's heirs, successors or assigns, and legal representatives, (b) Grantee, its successors or assigns shall remove all of said lines and the other facilities, equipment, conduit and appurtenances referenced above and restore the surface of the Easement Area to a condition and contour substantially the same as existing on the Easement Area prior to the date of this Agreement; provided, however, that Grantee, its successors and assigns shall not be required to, and shall not, remove any improvements installed by Grantor, its successors or assigns within the Easement Area, and (c) upon request, Grantee shall execute, acknowledge and deliver to Grantor or any other owner of the Easement Area an instrument in recordable form confirming the termination of the Easement and rights granted hereunder. Any failure to execute, acknowledge or deliver such instrument or any failure to record such instrument shall not negate or otherwise affect the termination of the Easement and rights granted hereunder. Any third party shall have the right to rely on any recorded instrument, whether executed by Grantee as provided herein or executed by Grantor in the event that Grantee fails to execute and deliver the instrument contemplated above, confirming the termination of the Easement and rights granted hereunder. The terms and conditions of this paragraph and Grantee's obligations under this paragraph shall survive the termination of the Easement and rights granted hereunder and termination of this Agreement.

This Agreement and the granting of the Easement and other rights and privileges provided for herein are made without any covenants or warranty of title and Grantor expressly disclaims any and all covenants and warranties of title, express or implied, whether statutory (including, without limitation, under Section 5.023 of the Texas Property Code) or arising at common law or otherwise in connection herewith.

EXECUTED this 16th day of June, 2023.

(Signatures and Acknowledgments on Following Pages)

4

**GRANTOR:**

**JRC/RGC34 Trade Tracts, LTD.,**
a Texas limited partnership

By its General Partner:
**Jefferson Realty Co.**

By: _R Cull Powll_
Print Name: _R CULLN POWLL_
Title: _CHAIRMAN / PRESIDENT_

**ACKNOWLEDGMENT**

STATE OF TEXAS                    §
                                 §
COUNTY OF _HARRIS_                §

BEFORE ME, the undersigned authority, on this the _24th_ day of _MAY_, 2023, personally appeared _R Cullen Powell_, the _Chairman and President_ of **Jefferson Realty Co.**, a Texas corporation, as General Partner of **JRC/RGC34 Trade Tracts, LTD**, a Texas limited partnership, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed, in the capacity therein stated, and that he/she was authorized to do so.

_____
Signature of Notary Public

[Notary Seal: ARACELI LOZANO, NOTARY PUBLIC, STATE OF TEXAS, ID 13160066.9, EXP. 06/11/2026]

[Signature Page to Transmission Easement – Lessor]

GRANTEE:

**CORE SCIENTIFIC OPERATING COMPANY,**
a Delaware corporation

By: _____
Print Name: Denise Sterling
Title: Chief Financial Officer

## ACKNOWLEDGEMENT

STATE OF _Texas_ §
                                          §
COUNTY OF _Denton_ §

BEFORE ME, the undersigned authority, on this the ⎯13⎯ day of ⎯June⎯, 2023, personally appeared Denise Sterling, the Chief Financial Officer of **Core Scientific Operating Company,** a Delaware corporation, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same on behalf of such company for the purposes and consideration therein expressed, in the capacity therein stated, and that he/she was authorized to do so.

_____
Signature of Notary Public

940·567-7971

JULIE HUNT
Notary Public, State of Texas
Comm. Expires 02-20-2026
Notary ID 131458215

[Signature Page to Transmission Easement – Lessee]

**Exhibit "A"**

**[See attached]**

EXHIBIT "A"



REEVES COUNTY, TEXAS

JRC/RGC34 TRADE TRACTS, LTD.
VOL. 640, PG. 464
O.P.R.R.C.T.

PUBLIC SCHOOL LANDS
SECTION 35
BLOCK 57
ABSTRACT 1905

**POB**
N: 10542593.04
E: 1208694.11
LAT: 31.544602
LON: -103.826151

F.M. 2119

SEE DETAIL A

**POT**
N: 10540689.03
E: 1212258.55
LAT: 31.539677
LON: -103.814523

STATE OF TEXAS
REGISTERED
MATTHEW TOMERLIN
6503
PROFESSIONAL
LAND SURVEYOR

| LINE | BEARING | DISTANCE |
|------|---------|----------|
| L1 | S 59°11'35" E | 963.03' |
| L2 | S 81°41'35" E | 629.10' |
| L3 | S 59°21'38" E | 2066.03' |
| L4 | S 51°37'44" E | 430.10' |

TOTAL LINEAR FEET = 4,088.26 FEET / 247.773 RODS
PERMANENT EASEMENT = 5.631 ACRES / 245,294 SQ. FT.

NOTES

1. ALL COORDINATES, BEARINGS, AND DISTANCES CONTAINED HEREIN ARE GRID, BASED UPON THE TEXAS STATE PLANE COORDINATES SYSTEM, NORTH AMERICAN DATUM 83, CENTRAL ZONE (4203), NAVD 88, US SURVEY FEET.

2. THIS DOCUMENT IS BASED UPON AN ON THE GROUND SURVEY PERFORMED DURING NOVEMBER, 2021. CERTIFICATION OF THIS DOCUMENT IS ONLY TO THE LOCATION OF THIS EASEMENT IN RELATION TO RECORDED MONUMENTATION OF DEEDS PROVIDED BY THE CLIENT.

3. ELEVATIONS MSL, DERIVED FROM G.N.S.S. OBSERVATION AND DERIVED FROM SAID ON-THE-GROUND SURVEY.

4. THIS DOCUMENT DOES NOT IN ANY WAY REPRESENT A "BOUNDARY SURVEY" AS DEFINED BY T.A.C. §663.16

LEGEND

— CENTERLINE OF EASEMENT
— SECTION LINE
— EXISTING PIPELINE
—OHE— OVERHEAD ELECTRIC
—x— BARBED WIRE FENCE
—x— HIGH GAME FENCE
—o— PIPE FENCE
⊙ FOUND MONUMENT
○ FOUND FENCE POST    ⊗ WELL
⊕ SET 1/2" CAPPED IRON ROD STAMPED "DATAPOINT 10194585" UNLESS OTHERWISE NOTED
☐ CALC. CORNER

**PriorityPower**

Situated in
PUBLIC SCHOOL LANDS SURVEY, SECTION NO. 35,
BLOCK 57, ABSTRACT NO. 1905
REEVES COUNTY, TEXAS

**COTTONWOOD**
JRC/RGC34 TRADE TRACTS, LTD.
PROPOSED ELECTRIC EASEMENT

**DATAPOINT**
SURVEYING & MAPPING

12450 Network Blvd. - Suite 300
San Antonio, TX 78249
Phone: 726-777-4240
Firm No. 10194585

| | | |
|---|---|---|
| DRAWN BY: CK | DATE: 11/04/2021 | REV. |
| CHECKED BY: MBT | DATE: 11/04/2021 | 0 |
| PROJECT ID: 21-09-1134 | | SHEET 1 OF 2 |

SCALE: 1" = 1000'

0      1000'      2000'

11/4/2021  6:38 PM  C.KENNEDY  Z:\2021\PRIORITY POWER\31-09-1134  COTTONWOOD (BASE)\PLATS AND PROFILES\TX-PRPO-CWEL-001  JRC RGC34\TRANSMISSION  ESMT\20211103\TX-PRPO-CWEL-001  TRANSMISSION  ESMT.dwg

## EXHIBIT "A"
## REEVES COUNTY, TEXAS
### PUBLIC SCHOOL LANDS SURVEY, SECTION 35, BLOCK 57, ABSTRACT 1905

PRIORITY POWER
COTTONWOOD
JRC/RGC34 TRADE TRACTS, LTD.

**PROPOSED 60 FEET WIDE**
**ELECTRIC EASEMENT**

Being a Centerline description of a proposed 60 foot-wide easement being located in the Public School Lands Survey, Section 35, Block 57, Abstract 1905, Reeves County, Texas; being part of a tract of land described in Deed to JRC/RGC34 Trade Tracts, Ltd. as recorded in Volume 640, Page 464 of the Official Public Records of Reeves County Texas; said easement being described by a centerline which is bound by lines 30 feet each side and parallel to said centerline and being more particularly described as follows:

**BEGINNING** at a point in said Section 35, from which a 1-inch iron pipe found for the Northwest corner of said Section 35, bears N 12°15'34" W, a distance of 3,584.69 feet;

**THENCE** S 59°11'35" E, a distance of 963.03 feet to a point;

**THENCE** S 81°41'35" E, a distance of 629.10 feet to a point;

**THENCE** S 59°21'38" E, a distance of 2,066.03 feet to a point;

**THENCE** S 51°37'44" E, a distance of 430.10 feet to the **POINT OF TERMINATION**, from which said 1-inch iron pipe found for the Northwest corner of said Section 35, bears N 38°39'36" W, a distance of 6,924.31 feet, with said easement containing 245,294 square feet or 5.631 acres of land, more or less, said easement having a centerline length of 4,088.26 feet or 247.773 rods.

I, Matthew Tomerlin, Registered Professional Land Surveyor No. 6503 of the State of Texas, do hereby certify this plat shows the results of an on the ground survey made under my direction.
**Original signed and stamped in red ink.**

_____Date of Signature: November 4, 2021
MATTHEW TOMERLIN
REGISTERED PROFESSIONAL LAND SURVEYOR NO. 6503
FIRM REGISTRATION/LICENSE NO. 10194585
FOR DATAPOINT SURVEYING AND MAPPING
12450 NETWORK BLVD, SUITE 300
SAN ANTONIO, TX. 78249
(777) 726-4240 OFFICE
(777) 726-4241 FAX



EXHIBIT "A"



# REEVES COUNTY, TEXAS

PROPOSED 60' ELECTRIC EASEMENT

DETAIL A 1":100'

POB
N:10540689.03
E:1212258.55
LAT: 31.539677
LON: −103.814523

SEE DETAIL A

S 88°07'16" E 5266.95'

POT
N:10540302.86
E:1213024.05
LAT: 31.538682
LON: −103.812028

PUBLIC SCHOOL LANDS SECTION 35 BLOCK 57 ABSTRACT 1905

PUBLIC SCHOOL LANDS SECTION 39 BLOCK 57 ABSTRACT 5052

S 42°17'20" W 6911.17' (TIE)

N 01°46'08" E 5262.34'

JRC/RGC34 TRADE TRACTS, LTD.
VOL. 640, PG. 464
O.P.R.R.C.T.

PUBLIC SCHOOL LANDS SECTION 38 BLOCK 57 ABSTRACT 1907

PUBLIC SCHOOL LANDS SECTION 38 BLOCK 57 ABSTRACT 2489

S 01°42'51" W 4914.92' (TIE)

S 01°42'51" W 5275.79'

PUBLIC SCHOOL LANDS SECTION 37 BLOCK 57 ABSTRACT 5705

39 / 46  2" IPF

N 87°58'30" W 5272.03'

1/2" CIRF  37 / 47 48

PUBLIC SCHOOL LANDS SECTION 47 BLOCK 57 ABSTRACT 2492

STATE OF TEXAS
REGISTERED
MATTHEW TOMERLIN
6503
PROFESSIONAL LAND SURVEYOR

| LINE | BEARING | DISTANCE |
|------|---------|----------|
| L1 | S 51°37'44" E | 154.42' |
| L2 | S 67°05'51" E | 584.12' |
| L3 | S 59°21'38" E | 123.61' |

TOTAL LINEAR FEET = 862.16 FEET / 52.252 RODS
PERMANENT EASEMENT = 1.188 ACRES / 51,729 SQ. FT.

## NOTES

1. ALL COORDINATES, BEARINGS, AND DISTANCES CONTAINED HEREIN ARE GRID, BASED UPON THE TEXAS STATE PLANE COORDINATES SYSTEM, NORTH AMERICAN DATUM 83, CENTRAL ZONE (4203), NAVD 88, US SURVEY FEET.

2. THIS DOCUMENT IS BASED UPON AN ON THE GROUND SURVEY PERFORMED DURING NOVEMBER, 2021. CERTIFICATION OF THIS DOCUMENT IS ONLY TO THE LOCATION OF THIS EASEMENT IN RELATION TO RECORDED MONUMENTATION OF DEEDS PROVIDED BY THE CLIENT.

3. ELEVATIONS MSL, DERIVED FROM G.N.S.S. OBSERVATION AND DERIVED FROM SAID ON-THE-GROUND SURVEY.

4. THIS DOCUMENT DOES NOT IN ANY WAY REPRESENT A "BOUNDARY SURVEY" AS DEFINED BY T.A.C. §663.16

## LEGEND

——— CENTERLINE OF EASEMENT
——— SECTION LINE
—— EXISTING PIPELINE
—OHE— OVERHEAD ELECTRIC
—x— BARBED WIRE FENCE
—x— HIGH GAME FENCE
—— PIPE FENCE
● FOUND MONUMENT
○ FOUND FENCE POST        ⊕ WELL
■ SET 1/2" CAPPED IRON ROD STAMPED "DATAPOINT 10194585" UNLESS OTHERWISE NOTED
☐ CALC. CORNER

**PriorityPower**

Situated in
PUBLIC SCHOOL LANDS SURVEY, SECTION NO. 38,
BLOCK 57, ABSTRACT NO. 2489
REEVES COUNTY, TEXAS

**COTTONWOOD**
JRC/RGC34 TRADE TRACTS, LTD.
PROPOSED ELECTRIC EASEMENT

0    1000'    2000'
SCALE: 1" = 1000'

**DATAPOINT**
SURVEYING & MAPPING

12450 Network Blvd. - Suite 300
San Antonio, TX 78249
Phone: 726-777-4240
Firm No. 10194585

| DRAWN BY: CK | DATE : 11/04/2021 | REV. |
| CHECKED BY: MBT | DATE : 11/04/2021 | 0 |
| PROJECT ID: 21-09-1134 | | SHEET 1 OF 2 |

11/4/2021 6:39 PM C:KENNEDY Z:\2021\PRIORITY POWER\(21-09-1134 COTTONWOOD (BASE)\PLATS AND PROFILES\TX-PRPO-CMEL-002 JRC RGC34\TRANSMISSION ESMT\20211103\TX-PRPO-CMEL-002 TRANSMISSION ESMT.dwg

## EXHIBIT "A"
## REEVES COUNTY, TEXAS
### PUBLIC SCHOOL LANDS SURVEY, SECTION 38, BLOCK 57, ABSTRACT 2489

PRIORITY POWER
COTTONWOOD
JRC/RGC34 TRADE TRACTS, LTD.

**PROPOSED 60 FEET WIDE**
**ELECTRIC EASEMENT**

Being a Centerline description of a proposed 60 foot-wide easement being located in the Public School Lands Survey, Section 38, Block 57, Abstract 2489, Reeves County, Texas; being part of a tract of land described in Deed to JRC/RGC34 Trade Tracts, Ltd. as recorded in Volume 640, Page 464 of the Official Public Records of Reeves County Texas; said easement being described by a centerline which is bound by lines 30 feet each side and parallel to said centerline and being more particularly described as follows:

**BEGINNING** at a point in the North line of said Section 38, from which a 2-inch iron pipe found for the Southwest corner of said Section 38, bears S 42°17'20" W, a distance of 6,911.17 feet;

**THENCE** S 51°37'44" E, a distance of 154.42 feet to a point;

**THENCE** S 67°05'51" E, a distance of 584.12 feet to a point;

**THENCE** S 59°21'38" E, a distance of 123.61 feet to the **POINT OF TERMINATION**, from which said 1/2-inch capped iron rod found for the Southeast corner of said Section 38, bears S 01°42'51" W, a distance of 4,914.92 feet, with said easement containing 51,729 square feet or 1.188 acres of land, more or less, said easement having a centerline length of 862.16 feet or 52.252 rods.

I, Matthew Tomerlin, Registered Professional Land Surveyor No. 6503 of the State of Texas, do hereby certify this plat shows the results of an on the ground survey made under my direction. **Original signed and stamped in red ink.**

_____Date of Signature: November 4, 2021
MATTHEW TOMERLIN
REGISTERED PROFESSIONAL LAND SURVEYOR NO. 6503
FIRM REGISTRATION/LICENSE NO. 10194585
FOR DATAPOINT SURVEYING AND MAPPING
12450 NETWORK BLVD, SUITE 300
SAN ANTONIO, TX. 78249
(777) 726-4240 OFFICE
(777) 726-4241 FAX



SHEET 2 OF 2

## __Exhibit 5__

**Access Easement Agreement**

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORDS IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

<div align="center">

**ACCESS EASEMENT AGREEMENT**

</div>

| | | |
|---|---|---|
| **STATE OF TEXAS** | § | |
| | § | **KNOW ALL MEN BY THESE PRESENTS:** |
| **COUNTY OF REEVES** | § | |

This Access Easement Agreement (this "Agreement") is by and **JRC/RGS34 Trade Tracts, LTD,** a Texas limited partnership, whose address is 1415 Louisiana St., Houston, Texas 77002, (hereinafter referred to as "Grantor", whether one or more), and **Core Scientific Operating Company,** whose address is 2407 S. Congress Ave., Ste. E-101, Austin, Texas 78704, and its successors and assigns (such entity and its successors and assigns are collectively referred to as the "Grantee").

For the consideration of TEN DOLLARS ($10.00) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Grantor does hereby grant unto Grantee an access easement (the "Road Access Easement") on, over, through, across and along a 30-foot wide portion of Grantor's land the centerline of which is depicted on Exhibit "A" and described in Exhibit "B" attached hereto (such 30-foot wide strip of land being referred to herein as the "Road Access Easement Area"), for ingress and egress by Grantee and its employees, designees, contractors, successors and assigns, and all those acting by or on behalf of it, for the passage of persons, vehicles, equipment and/or machinery, together with the non-exclusive right to use any existing roadway on, over, and within the Road Access Easement Area and/or to construct, protect, inspect, repair, alter, reconstruct, restore, improve, maintain and use a road on, over, and within the Road Access Easement Area, including ditches, culverts, drains, and such other appurtenant facilities.

The Road Access Easement and the rights and privileges herein granted shall be subject to all valid and subsisting encumbrances, conditions, covenants, restrictions, reservations, exceptions, rights-of- way and easements of record, together with all matters that would be shown on a current, accurate survey of the Road Access Easement Area or disclosed by a physical inspection of the Road Access Easement Area, and further subject to all laws, codes, ordinances, rules, regulations, and restrictions by federal, state, local or other governmental authority applicable to and enforceable against Grantee or the Road Access Easement hereby granted, and Grantee shall comply with all terms and conditions of the foregoing.

Grantee shall coordinate any work within the Road Access Easement Area with Grantor and perform all work and activities on the Road Access Easement Area in a manner so as to minimize, to the maximum extent possible, any disruption to the business being operated thereon or other activities on Grantor's property.

Grantee agrees to promptly repair any damage to the Road Access Easement Area and any other land owned by Grantor (it being agreed, however, that nothing herein shall be deemed or construed to grant to Grantee any rights to use or access any land owned by Grantor other than the Road Access Easement Area), including, without limitation, any improvements or other property of Grantor or any third party located thereon, caused by Grantee, its employees, designees, contractors, successors and assigns, and all

<div align="center">1</div>

those acting by or on behalf of it or entering on the Road Access Easement Area with the consent of or at the request of Grantee (collectively, the "Grantee Parties"), in the exercise of any rights granted hereby so as to maintain the Road Access Easement Area and any other land owned by Grantor in as good or better condition as existed prior to use by Grantee or the other Grantee Parties.  Further, Grantee agrees to pay for any damage caused by Grantee or the other Grantee Parties in the exercise of any rights granted hereby which Grantee does not otherwise repair to such condition.

The consideration paid by Grantee in this Agreement includes payment for the Road Access Easement and any and all damages to growing crops and vegetation, damages caused by Grantee's initial or any subsequent clearing of the Road Access Easement Area of any and all brush and trees (which Grantee has the express right to clear), and income loss from disruption of existing agricultural production or existing agricultural or grazing leases.

Grantee shall have the right, without paying additional damages to Grantor as it is included in the initial consideration, to remove any fence owned by Grantor or alter or remove any gate owned by Grantor that now crosses or may cross the Road Access Easement Area.  Prior to cutting any fence, however, Grantee shall brace the existing fence to be cut adequately on both sides of the proposed cut by suitable H-braces to prevent the remainder of the fence from sagging.  Before the fence wire is cut, it is to be attached to the posts in a manner that there will be no slackening of or damage to the wire.  Each such wire gap is to be reinforced so as to be strong enough to deter livestock from passing through same.  Upon completion of initial construction operations, each wire gap will be removed and at Grantee's sole option replaced with (i) fencing of the same or better grade and condition as existed before Grantee cut and gapped same or (ii) a permanent gate, which gate shall, to the extent reasonably practicable, be constructed out of similar or better grade materials than already used for existing non-ornamental gates on Grantor's property.  Each entry and exit gate shall be securely closed and locked, except when Grantee or its authorized personnel are actually passing through same.

Grantor reserves to Grantor and Grantor's heirs, legal representatives, successors and assigns, the right to use the Road Access Easement Area for any and all purposes not inconsistent with the purposes set forth in this Agreement, and to grant, convey, plat and/or dedicate similar rights and easements, as well as other types of rights and easements, to such other persons or entities as Grantor may deem necessary or proper, provided that Grantor may not use the Road Access Easement in a manner that would damage, destroy, injure, and/or unreasonably interfere with Grantee's use of the Road Access Easement Area for the purposes for which the Road Access Easement is being granted to Grantee.

The grant made hereunder is not a conveyance of the Road Access Easement Area or any interest in the oil, gas and other minerals in, on, or under the Road Access Easement Area, and Grantor shall retain all the oil, gas, and other minerals in, on and under the Road Access Easement Area; provided, however, that Grantor shall not be permitted to drill or operate equipment for the production or development of oil, gas, and other minerals on the Road Access Easement Area, but it will be permitted to extract the oil, gas, and other minerals from and under the Road Access Easement Area by directional drilling and other means, provided the drill bit enters the Road Access Easement Area at a subsurface depth of twenty feet (20') or deeper and so long as such activities do not damage, destroy, injure, and/or interfere with Grantee's use of the Road Access Easement Area for the purposes for which the Road Access Easement is being granted to Grantee.

Grantee shall indemnify, defend and hold harmless Grantor, its partners, and their respective partners, members, managers, officers, employees, successors and assigns, from and against any and all demands, claims, causes of action, damages, liabilities, losses, costs and expenses (including, without limitation, reasonably attorneys' fees) arising out of (a) any acts or omissions of Grantee or any of the other Grantee Parties, (b) arising out of any failure of Grantee or any of the other Grantee Parties to comply with

2

any covenant, term or condition of this instrument, (c) arising from presence, use, release or discharge of any hazardous substances or hazardous materials or any other environmental conditions on or about the Road Access Easement Area or any other land owned by Grantor caused by or attributable to Grantee, any Grantee Parties or the construction, installation, alteration, maintenance, operation, repair, removal, replacement, reconstruction, restoration or use of any road or other improvements or appurtenances referenced herein, or any bodily or personal injury, illness or death of any person or property damage or loss occurring in, on or about the Easement Area or any part thereof, including, without limitation, any premises liability claims, **EVEN THOUGH CAUSED OR ALLEGED TO BE CAUSED BY THE NEGLIGENCE OR FAULT OF ANY INDEMNIFIED PARTY (EXCEPT TO THE EXTENT CAUSED OR ALLEGED TO BE CAUSED BY THE NEGLIGENT ACTS OF ANY INDEMNIFIED PARTY WHILE ON THE ROAD ACCESS EASEMENT AREA DURING THE TERM OF THIS AGREEMENT OR THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF SUCH INDEMNIFIED PARTY), IT BEING AGREED THAT THIS INDEMNITY IS INTENDED TO INDEMNIFY THE INDEMNIFIED PARTIES AGAINST THE CONSEQUENCES OF THEIR OWN NEGLIGENCE OR FAULT (EXCEPT FOR THEIR NEGLIGENT ACTS WHILE ON THE ROAD ACCESS EASEMENT AREA DURING THE TERM OF THIS AGREEMENT AND EXCEPT FOR THEIR OWN GROSS NEGLIGENCE OR WILLFUL MISCONDUCT) WHEN SUCH INDEMNIFIED PARTIES ARE SOLELY, JOINTLY, COMPARATIVELY, CONTRIBUTIVELY, OR CONCURRENTLY NEGLIGENT WITH GRANTEE OR ANY OTHER PERSON**. The obligations of Grantee under this paragraph shall survive termination of the Road Access Easement and termination of this Agreement.

Grantee shall at all times maintain or cause to be maintained (a) commercial general liability insurance insuring against claims on account of death, bodily injury or property damage that may arise from, or be occasioned by the construction, installation, condition or use of the facilities, equipment and appurtenances or the activities of any Grantee Parties, (b) commercial automobile liability insurance, (c) worker's compensation insurance and employer's liability insurance, and (d) umbrella or excess liability insurance. All liability insurance policies shall name Grantor, its general partner, each successor owner of fee title to any portion of the Road Access Easement Area, and any third party having easement or other rights with respect to any portion of the Road Access Easement Area, as additional insureds and shall have limits of not less than $5,000,000 per occurrence, with such coverage to be on an "occurrence" rather than a "claims made" basis; provided, however, such $5,000,000 limit may be satisfied through a combination of primary coverage and umbrella or excess liability insurance. All insurance required to be maintained under this Agreement shall be issued by insurance companies licensed or authorized to do business in the State of Texas that have a rating in the latest edition of Best's Key Rating Guide (or any successor publication of comparable standing) of "A-:VIII" or better (or another comparable rating substantially equivalent thereto that is reasonably acceptable to Grantor). Prior to entering on the Road Access Easement Area, certificates of insurance, bearing notations and including any necessary endorsements confirming the additional insured status of Grantor and other persons as required herein, shall be delivered to Grantor. Each policy of insurance shall contain a provision that no act or omission of any named insured or Grantor or any other additional insured shall affect or limit the obligation of the insurance company to pay the amount of any loss sustained, and if the insurance company would otherwise have a right to subrogation, a written agreement by the insurance company that its right to subrogation has been waived with respect to all named insureds and additional insureds.

Grantee understands that Grantor has not inspected the condition of the Road Access Easement Area and that this grant is on an "AS IS" basis and at the sole risk of Grantee with respect to the condition of the Road Access Easement Area in its current condition, with all defects, if any.

Grantee shall use the Road Access Easement Area solely for the purposes specified in this Agreement.  There shall be no hunting or fishing on the Road Access Easement Area or any of Grantor's lands by Grantee, its officers, agents, employees, contractors, invitees, guests or representatives at any time.

Grantee shall have the right to assign this Agreement, in whole but not in part, in which event Grantor acknowledges and agrees that the assignee shall succeed to the rights and obligations of Grantee to the extent conveyed in such assignment, and Grantee shall be relieved of obligations with respect to the assigned interest which accrue after the date of assignment.

This Agreement may be executed in several counterparts and original signatures may be compiled into the same instrument to avoid unnecessary duplication and be binding upon the parties who executed any counterpart, regardless of whether it is executed by all parties named herein.

This Agreement constitutes the entire agreement and supersedes any and all prior oral understandings and/or agreements, if any, concerning the subject of this Agreement.  Grantor confirms and agrees that Grantor has been made no promise or agreement by Grantee or any agent of Grantee that is not expressed or referenced specifically within this Agreement in executing this Agreement, that Grantor is not relying upon any statement or representation of Grantee or any agent of Grantee that is not included in this Agreement, and that Grantor's execution of this Agreement is free and voluntary; this Agreement may not be modified or amended except on or after the date hereof by a writing signed by the party against whom said modification or amendment is to be enforced and no party shall be liable or bound to any other party in any manner except as specifically set forth herein.

GRANTOR HAS NOT RELIED UPON AND HEREBY EXPRESSLY DISCLAIMS RELIANCE UPON ANY STATEMENTS, REPRESENTATIONS, INFORMATION OR MATERIALS PROVIDED, SUPPLIED OR FURNISHED BY GRANTEE OR OTHERWISE MADE AVAILABLE BY GRANTEE IN THE PUBLIC DOMAIN OR OTHERWISE (OTHER THAN THOSE MADE IN THIS AGREEMENT).

TO HAVE AND TO HOLD the Road Access Easement and the rights and privileges hereby granted unto Grantee, its successors and assigns, for a period of 99 years or until the earlier of (a) termination of the Surface Lease Agreement, dated on or about the date hereof (the "Surface Lease"), between Grantor and Grantee with respect to a 50.00-acre tract of land in Section 38, Block 57, Public School Lands Survey, A-2489 as more particularly described in that certain Memorandum of Surface Lease executed by Grantor, as Lessor, and Grantee, as Lessee, (b) termination of this Agreement pursuant to Section 3 of the Surface Lease (and this Easement shall not be recorded by either party until such termination option has expired) or (c) abandonment by Grantee of the use of the Road Access Easement, and upon expiration of such 99-year period or upon any such termination or abandonment, whichever occurs first, (1) the Road Access Easement and all rights granted hereunder shall automatically terminate and revert to Grantor or Grantor's heirs, successors or assigns, and legal representatives, (2) Grantee, its successors or assigns shall, at Grantor's option, remove any road and other improvements and appurtenances constructed by Grantee or any Grantee Parties within the Road Access Easement Area and restore the surface of the Road Access Easement Area to a condition and contour substantially the same as existing on the Road Access Easement Area prior to the date of this Agreement; provided, however, that Grantee, its successors and assigns shall not be required to, and shall not, remove any improvements installed by Grantor, its successors or assigns within the Road Access Easement Area, and (3) upon request, Grantee shall execute, acknowledge and deliver to Grantor or any other owner of the Road Access Easement Area an instrument in recordable form confirming the termination of the Road Access Easement and rights granted hereunder. Any failure to execute, acknowledge or deliver such instrument or any failure to record such instrument shall not negate or otherwise affect the termination of the Road Access Easement and rights granted hereunder. Any third party shall have the right to rely on any recorded instrument, whether executed

4

by Grantee as provided herein or executed by Grantor in the event that Grantee fails to execute and deliver the instrument contemplated above, confirming the termination of the Road Access Easement and rights granted hereunder. The terms and conditions of this paragraph and Grantee's obligations under this paragraph shall survive the termination of the Road Access Easement and rights granted hereunder and termination of this Agreement.

This Agreement and the granting of the Road Access Easement and other rights and privileges provided for herein are made without any covenants or warranty of title and Grantor expressly disclaims any and all covenants and warranties of title, express or implied, whether statutory (including, without limitation, under Section 5.023 of the Texas Property Code) or arising at common law or otherwise in connection herewith.

This Agreement and all of its terms, provisions and obligations shall be covenants running with the land affected thereby and shall inure to the benefit of and be binding upon Grantor and Grantee and their respective heirs, executors, administrators, successors and assigns, whether assigned, devised or otherwise transferred in whole or, except as otherwise prohibited herein, in part by either party.

EXECUTED and effective as of the 16th day of June 2023.

(Signatures and Acknowledgments on Following Pages)

**GRANTOR:**

**JRC/RGC34 Trade Tracts, LTD,**
a Texas limited partnership

By its General Partner:
**Jefferson Realty Co.,**
a Texas corporation

By: _R Cull Pawll_

Print Name: _R Cullen Powell_

Title: _Chairman / President_

<br>

## ACKNOWLEDGMENT

STATE OF TEXAS                              §
                                           §
COUNTY OF _HARRIS_                          §

The foregoing instrument was acknowledged before me on this the _24th_ day of _May_ , 2023,
personally appeared _R Cullen Powell_ , as _Chairman and President_ of Jefferson Realty Co.,
a Texas corporation, General Partner of JRC/RGC34 Trade Tracts, LTD, a Texas limited partnership, on
behalf of said limited partnership.

_Araceli Lozano_
Notary Public in and for The State of Texas



[Signature Page to Access Easement – Lessor]

**GRANTEE:**
**Core Scientific Operating Company,**
a Delaware corporation

By: _____

Print Name: Denise Sterling

Title: Chief Financial Officer


## ACKNOWLEDGEMENT

STATE OF TEXAS                    §
                                 §
COUNTY OF Denton                 §


The foregoing instrument was acknowledged before me this the 13 day of June, 2023, personally appeared Denise Sterling of Core Scientific Operating Company, a Delaware corporation, on behalf of said corporation.

_____
Notary Public in and for The State of Texas

940-367-797

> JULIE HUNT
> Notary Public, State of Texas
> Comm. Expires 02-20-2026
> Notary ID 131458215


After Recording Return To:
Norfleet Land Services, LLC
1309 S. Adams Street
Fort Worth, TX 76104

[Signature Page to Access Easement – Lessee]

**Exhibit "A"**

**[See attached]**

EXHIBIT "A"



# REEVES COUNTY, TEXAS

PROPOSED 30' ACCESS EASEMENT

DETAIL "A" 1"=100'

JRC/RGC34 TRADE TRACTS, LTD.
VOL. 640, PG. 464
O.P.R.R.C.T.

PUBLIC SCHOOL LANDS SECTION 26 BLOCK 57 ABSTRACT 2488

PUBLIC SCHOOL LANDS SECTION 35 BLOCK 57 ABSTRACT 1905

PUBLIC SCHOOL LANDS SECTION 34 BLOCK 57 ABSTRACT 1908

PUBLIC SCHOOL LANDS SECTION 36 BLOCK 57 ABSTRACT 1906

PUBLIC SCHOOL LANDS SECTION 38 BLOCK 57 ABSTRACT 1907

PUBLIC SCHOOL LANDS SECTION 38 BLOCK 57 ABSTRACT 2489

S 88°10'21" E  5270.30'

N 01°45'59" E  5262.24'

S 01°48'11" W  5266.96'

N 41°33'25" W 7165.34' (TIE)

F.M. 2119

N 88°07'16" W  5266.95'

SEE DETAIL A

**POT**
N:10540734.18
E: 1212686.16
LAT: 31.539838
LON: −103.813156

**POB**
N:10540676.14
E: 1212651.63
LAT: 31.539676
LON: −103.813261

S 88°07'16" E 383.42' (TIE)

TOTAL LINEAR FEET = 67.53 FEET / 4.093 RODS
PERMANENT EASEMENT = 0.047 ACRES / 2,026 SQ. FT.

I, MATTHEW TOMERLIN, REGISTERED PROFESSIONAL LAND SURVEYOR NO. 6503, DO HEREBY CERTIFY THIS PLAT SHOWS THE RESULTS OF AN ON THE GROUND SURVEY MADE UNDER MY DIRECTION, AND THAT IT IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF.

MATTHEW TOMERLIN
REGISTERED PROFESSIONAL LAND SURVEYOR NO. 6503

STATE OF TEXAS
REGISTERED
MATTHEW TOMERLIN
6503
PROFESSIONAL LAND SURVEYOR

| LINE | BEARING | DISTANCE |
|------|---------|----------|
| L1 | N 30°44'55" E | 67.53' |

**Priority Power**

Situated in
PUBLIC SCHOOL LANDS SURVEY, SECTION NO. 35,
BLOCK 57, ABSTRACT NO. 1905
REEVES COUNTY, TEXAS

**COTTONWOOD**
JRC/RGC34 TRADE TRACTS, LTD.
PROPOSED ACCESS EASEMENT

**NOTES**

1. ALL COORDINATES, BEARINGS, AND DISTANCES CONTAINED HEREIN ARE GRID, BASED UPON THE TEXAS STATE PLANE COORDINATES SYSTEM, NORTH AMERICAN DATUM 83, CENTRAL ZONE (4203), NAVD 88, US SURVEY FEET.

2. THIS DOCUMENT IS BASED UPON AN ON THE GROUND SURVEY PERFORMED DURING JANUARY, 2022. CERTIFICATION OF THIS DOCUMENT IS ONLY TO THE LOCATION OF THIS EASEMENT IN RELATION TO RECORDED MONUMENTATION OF DEEDS PROVIDED BY THE CLIENT.

3. ELEVATIONS MSL, DERIVED FROM G.N.S.S. OBSERVATION AND DERIVED FROM SAID ON-THE-GROUND SURVEY.

4. THIS DOCUMENT DOES NOT IN ANY WAY REPRESENT A "BOUNDARY SURVEY" AS DEFINED BY T.A.C. § 663.16

**LEGEND**

— CENTERLINE OF EASEMENT
— — SECTION LINE
——— EXISTING PIPELINE
—OHE— OVERHEAD ELECTRIC
—x— BARBED WIRE FENCE
—o— HIGH GAME FENCE
PIPE FENCE
⊕ FOUND MONUMENT       (W) WELL
□ FOUND FENCE POST
◆ SET 1/2" CAPPED IRON
ROD STAMPED "DATAPOINT 10194585"
UNLESS OTHERWISE NOTED
⊠ CALC. CORNER

0   1000'   2000'
SCALE: 1" = 1000'

**DATAPOINT SURVEYING & MAPPING**

12450 Network Blvd. - Suite 300
San Antonio, TX 78249
Phone: 726-777-42040
Firm No. 10194585

| DRAWN BY: CK | DATE : 02/03/2022 | REV. |
|---|---|---|
| CHECKED BY: MBT | DATE : 02/03/2022 | 1 |
| PROJECT ID: 21-09-1134 | | SHEET 1 OF 2 |

2/3/2022 8:47 AM C.KENNEDY Z:\2021\PRIORITY POWER\21−09−1134 COTTONWOOD (BASE)\PLATS AND PROFILES\TX−PRPO−CWSS−002 JRC RGC34 (50AC SURFACE SITE)\ACCESS EASEMENT\SECTION 35\20220131\TX−PRPO−CWAE−002 SECTION 35.dwg



# EXHIBIT "A"

## REEVES COUNTY, TEXAS

TOTAL LINEAR FEET = 615.18 FEET / 37.284 RODS
PERMANENT EASEMENT = 0.424 ACRES / 18,455 SQ. FT.

STATE OF TEXAS
REGISTERED
MATTHEW TOMERLIN
6503
PROFESSIONAL
LAND SURVEYOR

| LINE | BEARING | DISTANCE |
|---|---|---|
| L1 | S 88°07'15" E | 252.05' |
| L2 | N 53°14'55" E | 223.69' |
| L3 | N 30°44'55" E | 139.44' |

I, MATTHEW TOMERLIN, REGISTERED PROFESSIONAL SURVEYOR NO. 6503, DO HEREBY CERTIFY THIS PLAT SHOWS THE RESULTS OF AN ON THE GROUND SURVEY MADE UNDER MY DIRECTION, AND THAT IT IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF.

MATTHEW TOMERLIN
REGISTERED PROFESSIONAL LAND SURVEYOR NO. 6503

NOTES

1. ALL COORDINATES, BEARINGS, AND DISTANCES CONTAINED HEREIN ARE GRID, BASED UPON THE TEXAS STATE PLANE COORDINATES SYSTEM, NORTH AMERICAN DATUM 83, CENTRAL ZONE (4203), NAVD 88, US SURVEY FEET.
2. THIS DOCUMENT IS BASED UPON AN ON THE GROUND SURVEY PERFORMED DURING JANUARY, 2022. CERTIFICATION OF THIS DOCUMENT IS ONLY TO THE LOCATION OF THIS EASEMENT IN RELATION TO RECORDED MONUMENTATION OF DEEDS PROVIDED BY THE CLIENT.
3. ELEVATIONS MSL, DERIVED FROM G.N.S.S. OBSERVATION AND DERIVED FROM SAID ON-THE-GROUND SURVEY.
4. THIS DOCUMENT DOES NOT IN ANY WAY REPRESENT A "BOUNDARY SURVEY" AS DEFINED BY T.A.C. § 663.16

LEGEND

- CENTERLINE OF EASEMENT
- SECTION LINE
- EXISTING PIPELINE
- OVERHEAD ELECTRIC
- BARBED WIRE FENCE
- HIGH GAME FENCE
- PIPE FENCE
- FOUND MONUMENT
- WELL
- FOUND FENCE POST
- SET 1/2" CAPPED IRON ROD STAMPED "DATAPOINT 10194585" UNLESS OTHERWISE NOTED
- CALC. CORNER

0 1000' 2000'
SCALE: 1" = 1000'

PriorityPower

Situated in
PUBLIC SCHOOL LANDS SURVEY, SECTION 38,
BLOCK 57, ABSTRACT 2489
REEVES COUNTY, TEXAS

**COTTONWOOD**
JRC/RGC34 TRADE TRACTS, LTD.
PROPOSED ACCESS EASEMENT

DATAPOINT SURVEYING & MAPPING
12450 Network Blvd. - Suite 300
San Antonio, TX 78249
Phone: 726-777-4240
Firm No. 10194585

| | | |
|---|---|---|
| DRAWN BY: CK | DATE: 02/07/2022 | REV. 2 |
| CHECKED BY: MBT | DATE: 02/07/2022 | |
| PROJECT ID: 21-09-1134 | | SHEET 1 OF 2 |

2/7/2022 3:04 PM C.KENNEDY Z:\2021\PRIORITY POWER\21-09-1134 COTTONWOOD (BASE)\PLATS AND PROFILES\TX-PRPO-CWSS-002 JRC RGC34 (50AC SURFACE SITE)\ACCESS EASEMENT\SECTION 38\20220207 R2\TX-PRPO-CWAE-002 SECTION 38 R1.dwg

**Exhibit "B"**

**[See attached]**

# EXHIBIT "B"
## REEVES COUNTY, TEXAS
**PUBLIC SCHOOL LANDS SURVEY, SECTION 35, BLOCK 57, ABSTRACT 1905**

PRIORITY POWER
COTTONWOOD
JRC/RGC34 TRADE TRACTS, LTD.

### PROPOSED 30 FEET WIDE
### ACCESS EASEMENT

Being a Centerline description of a proposed 30 foot-wide easement being located in the Public School Lands Survey, Section 35, Block 57, Abstract 1905, Reeves County, Texas; being part of a tract of land described in Deed to JRC/RGC34 Trade Tracts, Ltd. as recorded in Volume 640, Page 464 of the Official Public Records of Reeves County Texas; said easement being described by a centerline which is bound by lines 15 feet each side and parallel to said centerline and being more particularly described as follows:

**BEGINNING** at a point in said Section 35, from which the calculated Southeast corner of said Section 35, bears S 88°07'16" E, a distance of 383.42 feet;

**THENCE** N 30°44'55" E, a distance of 67.53 feet to the **POINT OF TERMINATION**, from which a 1-inch iron pipe found for the Northwest corner of said Section 35, bears N 41°33'25" W, a distance of 7,165.34 feet, with said easement containing 2,026 square feet or 0.047 acres of land, more or less, said easement having a centerline length of 67.53 feet or 4.093 rods.

I, Matthew Tomerlin, Registered Professional Land Surveyor No. 6503 of the State of Texas, do hereby certify this plat shows the results of an on the ground survey made under my direction. **Original signed and stamped in red ink.**

_____Date of Signature: February 3, 2022

MATTHEW TOMERLIN
REGISTERED PROFESSIONAL LAND SURVEYOR NO. 6503
FIRM REGISTRATION/LICENSE NO. 10194585
FOR DATAPOINT SURVEYING AND MAPPING
12450 NETWORK BLVD, SUITE 300
SAN ANTONIO, TX. 78249
(777) 726-4240 OFFICE
(777) 726-4241 FAX

STATE OF TEXAS
REGISTERED
MATTHEW TOMERLIN
6503
PROFESSIONAL
LAND SURVEYOR



SHEET 2 OF 2

# EXHIBIT "B"
# REEVES COUNTY, TEXAS
## PUBLIC SCHOOL LANDS SURVEY, SECTION 38, BLOCK 57, ABSTRACT 2489

PRIORITY POWER
COTTONWOOD
JRC/RGC34 TRADE TRACTS, LTD.

### PROPOSED 30 FEET WIDE
### ACCESS EASEMENT

Being a Centerline description of a proposed 30 foot-wide easement being located in the Public School Lands Survey, Section 38, Block 57, Abstract 2489, Reeves County, Texas; being part of a tract of land described in Deed to JRC/RGC34 Trade Tracts, Ltd. as recorded in Volume 640, Page 464 of the Official Public Records of Reeves County Texas; said easement being described by a centerline which is bound by lines 15 feet each side and parallel to said centerline and being more particularly described as follows:

**BEGINNING** at a point in said Section 38, from which a 1/2-inch iron rod found for the Southeast corner of said Section 38, bears S 08°12'59" E, a distance of 5,092.86 feet;

**THENCE** S 88°07'15" E, a distance of 252.05 feet to a point;

**THENCE** N 53°14'55" E, a distance of 223.69 feet to a point;

**THENCE** N 30°44'55" E, a distance of 139.44 feet to the **POINT OF TERMINATION**, from which the calculated Northeast corner of said Section 38, bears S 88°07'16" E, a distance of 383.42 feet, with said easement containing 18,455 square feet or 0.424 acres of land, more or less, said easement having a centerline length of 615.18 feet or 37.284 rods.

I, Matthew Tomerlin, Registered Professional Land Surveyor No. 6503 of the State of Texas, do hereby certify this plat shows the results of an on the ground survey made under my direction.
**Original signed and stamped in red ink.**

_____Date of Signature: February 7, 2022
MATTHEW TOMERLIN
REGISTERED PROFESSIONAL LAND SURVEYOR NO. 6503
FIRM REGISTRATION/LICENSE NO. 10194585
FOR DATAPOINT SURVEYING AND MAPPING
12450 NETWORK BLVD, SUITE 300
SAN ANTONIO, TX. 78249
(777) 726-4240 OFFICE
(777) 726-4241 FAX





SHEET 2 OF 2