**BLOCKCAP, INC.**
**EQUITY INCENTIVE PLAN**

**AWARD AGREEMENT**

To: Harlin R. Dean (the "Grantee")

From: The Board of Directors

Date: June 1, 2021

Re: Award

At the June 1, 2021 meeting of the Board of Directors of Blockcap, Inc. (the "Company"), you were granted an award (the "Award") pursuant to the Company's Equity Incentive Plan (the "Plan"). This Award Agreement, including any document attached hereto (each, an "Attachment"), sets forth the entire details of the Award. Unless otherwise provided herein, terms used herein that are defined in the Plan and not defined herein shall have the meanings attributable thereto in the Plan.

For good and valuable consideration, the receipt of which is hereby acknowledged, the Company hereby grants to the Grantee, the Award described in this Award Agreement, on the terms and conditions set forth in this Award Agreement and the Attachment hereto (collectively, this "Award Agreement").

**Number of Shares and Type of Award:**

| | |
|---|---|
| Type of Award: | Restricted Stock |
| Number of Shares: | 800,000 |
| Attachment: | Restricted Stock Agreement |

**TERMS AND CONDITIONS**

In addition to the terms and conditions set forth on the applicable Attachment, the following terms and conditions apply.

1. **Compliance with the Plan.** The Award is governed by the Plan and this Award Agreement. If this Agreement and the Plan are inconsistent as to any aspect of the Award, this Award Agreement will control. If this Award Agreement is silent as to any aspect of the Award, the Plan will control.

2. **Administration; Interpretation**. The Administrator shall have full power and authority to take all actions and make all determinations required or provided for under this Award Agreement, and shall have full power and authority to take all such other actions and make all such other determinations not inconsistent with the terms of this Award Agreement that the Administrator deems necessary or appropriate in the administration of this Award Agreement and the Plan. All actions taken by the Administrator in good faith shall be final and binding upon the Grantee. No member of the Administrator or the Board shall be personally liable for any action, determination or interpretation made in good faith with respect to this Award Agreement or the Award. The Grantee accepts the Award

subject to all of the terms, provisions and restrictions of this Award Agreement and the Plan. The undersigned Grantee hereby accepts as binding, conclusive and final all decisions or interpretations of the Board or the Committee upon any questions arising under this Award Agreement or the Plan.

3. **Transferability**. Except as may be set forth in the Attachment, the Award may not be sold, pledged, assigned, hypothecated, transferred or disposed of in any manner other than in accordance with Section 6(*l*) of the Plan.

4. **Tax Consultation**.

    a. The Grantee understands that the Grantee may suffer adverse tax consequences as a result of the grant, vesting, exercise, purchase or further disposition of the Award or any Option or Shares granted thereunder. Grantee represents that the Grantee has consulted with any tax consultants Grantee deems advisable in connection with the Award and that the Grantee is not relying on the Company for any tax advice.

    b. Notwithstanding any other provision of this Award Agreement, to the extent that any Award granted under the Plan constitutes deferred compensation, this Award Agreement shall be interpreted in accordance with the requirements of Section 409(A) of the Internal Revenue Code of 1986, as amended (together with any Department of Treasury regulations and any interpretive guidance issued thereunder, including without limitation any such regulations or other guidance that may be issued after the date hereof, "Section 409A"). The Administrator may, in its discretion adopt such amendment to this Award Agreement or adopt other policies and procedures, including amendments, policies and procedures with a retroactive effect; *provided*, that such amendments, policies and procedures shall not have a materially adverse effect on any portion of this Award that has vested at the time of such amendment or the adoption of such policies and procedures. The Administrator may take any other actions, as the Administrator determines are necessary or appropriate to comply with the requirements of Section 409A. Grantee represents that Grantee has consulted with any tax consultants Grantee deems advisable in connection with Section 409A.

5. **Adjustments; Fractional Shares**. In accordance with Sections 8, 10 and 11 of the Plan, the Grantee acknowledges that the Award is subject to modification, acceleration or termination upon certain events, including but not limited to, the termination of Grantee's Continuous Service, a Change in Control of the Company or a change in the capitalization of the Company. Notwithstanding such adjustment, no Award may be exercised that will result in the issuance of a fraction of a Share.

6. **No Right to Continued Employment or Service**. Nothing contained in this Award Agreement shall confer, or be construed to confer, upon Grantee any right with respect to the Grantee's Continuous Service, nor shall it interfere in any with Grantee's right or the right of the Company to terminate the Grantee's Continuous Service at any time. The Company's ability to terminate the employment of a Grantee who is employed at will is in no way affected by a determination that Grantee's Continuous Service has been terminated for Cause for purposes of the Plan.

7. **No Effect on Compensation, Retirement or Other Benefit Plans**. Nothing contained in this Award Agreement shall preclude the Company from adopting or continuing in effect other or additional compensation plans, agreements or arrangements, and any such plans, agreements and arrangements may be either generally applicable or applicable only in specific cases or to specific persons. Except as specifically provided in a retirement or other benefit plan of the Company, Awards shall not be deemed compensation for purposes of computing benefits or contributions under any retirement plan of the Company, and shall not affect any benefits under any other benefit plan of any kind or any benefit plan subsequently instituted under which the availability or amount of benefits is related to the level of

compensation. The Plan is not a "Pension Plan" or "Welfare Plan" under the Employee Retirement Income Security Act of 1974, as amended (as amended, the "ERISA").

8. **Unfunded Obligation**. For purposes of the Award, Grantee shall have the status of a general unsecured creditor of the Company, and any amount payable to Grantee shall be an unfunded and unsecured obligation for all purposes, including Title I of the ERISA. To the extent that the Grantee or any other person acquires a right to receive payments from the Company pursuant to this Award Agreement, such right shall be no greater that the right of any unsecured general creditor of the Company.

9. **Compliance with Securities Laws**.

    a. Grantee acknowledges that, to the extent applicable, this Award Agreement is intended to conform with (i) all provisions of the Securities Act of 1933, as amended, and the Securities and Exchange Act of 1934, (as amended, the "Exchange Act"), and all regulations and rules promulgated thereunder by the Securities and Exchange Commission, (ii) all applicable state securities laws and regulations, and (iii) the rules and regulations of any established stock exchange or national market system on which the Shares are listed, including the Toronto Stock Exchange and the Nasdaq Stock Market (collectively, the "Securities Laws"). Notwithstanding anything to the contrary herein, this Award Agreement and the Award granted hereunder, shall be administered (and exercised where applicable) only in such a manner as to conform to the Securities Laws.

    b. Notwithstanding any other provision of this Award Agreement, if Grantee is subject to Section 16 of the Exchange Act, the Award shall be subject to any additional limitations set forth in any applicable exemptive rule under Section 16 of the Exchange Act. To the extent permitted by law, this Award Agreement shall be deemed amended to the extent necessary to conform to any amendment of such exemptive rule.

    c. If Shares issued pursuant to an Award or purchased through the exercise of an Option or a SAR have not been registered under the Securities Act or any applicable state laws on an effective registration statement at the time of the issuance or exercise, as applicable, the Grantee shall, if required by the Company, promptly make such written representations as are deemed necessary or appropriate by the Company and/or its Counsel.

10. **Consent to Collection, Processing and Transfer of Personal Data**. By accepting the Award, the Grantee voluntarily acknowledges and consents to the collection, use, processing and transfer of personal data as described in this Section 10. The Grantee is not obliged to consent to such collection, use, processing and transfer of personal data. However, failure to provide the consent may affect the Grantee's ability to participate in the Plan. The Company holds certain personal information about the Grantee, including the Grantee's name, home address and telephone number, date of birth, social security number or other employee identification number, salary, nationality, job title, any shares of stock or directorships held in the Company, details of all options or any other entitlement to any Shares that may be awarded, canceled, purchased, vested, unvested or outstanding in the Grantee's favor, for the purpose of managing and administering the Plan ("Data"). The Company will transfer Data within the Company as necessary for the purpose of implementation, administration and management of the Grantee's participation in the Plan, and the Company may further transfer Data to any third parties assisting the Company in the implementation, administration and management of the Plan. These recipients may be located in the United States, or elsewhere throughout the world. The Grantee hereby authorizes them to receive, possess, use, retain and transfer the Data, in electronic or other form, for the purposes of implementing, administering and managing the Grantee's participation in the Plan, including any requisite transfer of such Data as may be required for the administration of the Plan

and/or the subsequent holding of Shares on the Grantee's behalf to a broker or other third party with whom the Grantee may elect to deposit any Shares acquired pursuant to the Plan.

11. **Clawback Policy**. By accepting the Award, the Grantee voluntarily acknowledges and consents to the Clawback Policy set forth in Section 6(n) of the Plan. Under the Clawback Policy, the Company may (i) cause the cancellation of any Award, (ii) require reimbursement of any award by the Grantee, and (iii) effect any other right of recoupment of equity and other compensation provided under the Plan or otherwise in accordance with any Company policies that currently exist or that may from time to time be adopted or modified in the future by the Company and/or applicable law. In addition, the Grantee may be required to repay to the Company certain previously paid compensation, whether provided under this Plan, this Award Agreement, or otherwise in accordance with any Clawback Policy.

12. **Miscellaneous.**

    a. **Severability**. If any provision in this Award Agreement is or becomes or is deemed to be invalid, illegal or unenforceable in any jurisdiction or under any applicable law, rule or regulation, then such provision shall be construed or deemed amended to conform to applicable law, and if such provision cannot be so construed or deemed amended without materially altering the purpose or intent of this Award Agreement and the Award hereunder, such provision shall be stricken as to such jurisdiction and the remainder of this Award Agreement and the Award hereunder shall remain in full force and effect.

    b. **Notices**. Any notice under this Award Agreement shall be in writing and shall be deemed to have been duly given: (i) to the Company when deposited in the United States certified mail, or with a reputable overnight carrier, postage prepaid, and addressed to the Secretary of the Company, at 106 East 6th Street, Suite 900-145, Austin, Texas 78701; and (ii) to the Grantee when deposited in the United States certified mail, or with a reputable overnight carrier, postage prepaid, and addressed to the Grantee at the address given below Grantee's signature to this Award Agreement, in each case subject to the right of each party to designate a different address by notice given in accordance with this Section 12(b).

    c. **Non-waiver of Breach.** The waiver of (or failure to pursue) the other party's prompt and complete performance, or breach or violation, of any term or provision of this Award Agreement shall be effected solely in a writing signed by the waiving party, and shall not operate nor be construed as a waiver of any subsequent breach or violation, and shall not operate nor be construed as a bar to the exercise of such right or remedy.

    d. **Governing Law**. This Award Agreement shall be governed by and construed under the internal laws of the State of Nevada, without reference to the conflict of laws rules or principles thereof.

    e. **Successors and Assigns**. The Company may assign any of its rights under this Award Agreement to single or multiple assignees, and this Award Agreement shall inure to the benefit of such successors and assigns of the Company. This Award Agreement shall be binding on Grantee, and subject to the transfer restrictions contained in Section 6(*l*) of the Plan, this Award Agreement shall be binding on Grantee's heirs, executors, administrators, successors and assigns.

    f. **Amendments, Suspension and Termination**. This Award Agreement may be wholly or partially amended or otherwise modified, suspended, or terminated at any time or from time to time by the Administrator, in order to comply with Securities Laws, or for any other reason pursuant to Administrator's sole discretion; provided, that no such amendment, modification,

      suspension or termination shall have a materially adverse effect on any Award without the prior written consent of the Grantee.

   g. **Headings**. Section, paragraph and other headings and captions are provided solely as a convenience to facilitate reference. Such headings and captions shall not be deemed in any way material or relevant to the construction, meaning or interpretation of this Award Agreement or any term or provision hereof.

   h. **Entire Agreement.** This Award Agreement is binding upon the Grantee and the Company and upon their respective heirs, executors, administrators, successors and assigns. This Award Agreement, the Plan and related documents shall be governed by, interpreted and enforced in accordance with the laws of the State of Nevada, except to the extent preempted by Federal law. This Award Agreement contains the entire agreement and understanding between the Grantee and the Company respecting the Award.

   i. **Counterparts.** This Award Agreement may be executed in two or more separate counterparts, each of which shall be an original, and all of which together shall constitute one and the same agreement.

13. **Plan:** Grantee acknowledges that Grantee has received a copy of the Plan prior to the execution of this Award Agreement. As a condition to entering into this Award Agreement, and as a condition to the issuance of any Award, the Grantee agrees to be bound by all of the terms and conditions herein and in the Plan.

**\*\*Please sign below and return this Award Agreement to Harlin Dean, Chief Legal Officer of Blockcap, as soon as possible\*\***

This Award Agreement ☑ does or ☐ does not include an Attachment.

**Blockcap, Inc.**

By: _____
Peter Dorrius, Chief Financial Officer

APP. 50

## GRANTEE ACKNOWLEDGMENT

I acknowledge the Award described herein on the terms presented and agree to be bound by this Award Agreement and the terms of the Plan. I represent that I am (check all that apply):

- ☒ An officer of the Company or of one of its subsidiaries;
- ☒ An employee of the Company or of one of its subsidiaries;
- ☐ A director of the Company;
- ☐ A "Consultant" as defined in the Equity Incentive Plan.

Acknowledged:

_____
Signature

Harlin R. Dean
Printed Name

Redacted
Address

Redacted
Address

Redacted 1968
Federal Tax ID Number

6

APP. 51

# BLOCKCAP, INC.
# EQUITY INCENTIVE PLAN

## ATTACHMENT I-D

## RESTRICTED STOCK AGREEMENT

## FOR

### Harlin R. Dean, as Grantee

Pursuant to the Award Agreement to which this Attachment I-D, Restricted Stock Agreement is attached, the Company has granted to the Grantee an option to purchase the number of Shares of Restricted Stock indicated in the Award Agreement on the terms and conditions set forth in this Award Agreement.

1. ***Award of Restricted Stock.*** The Committee hereby grants to Grantee, as of the Award Date (the "**Award Date**"), restricted shares of Blockcap, Inc., a Nevada corporation (the "**Company**"), common stock, par value $.00001 per share (collectively the "**Restricted Stock**"). The Restricted Stock shall be subject to the terms, provisions and restrictions set forth in this Award Agreement and the Plan, which is incorporated herein for all purposes.

2. ***Vesting of Restricted Stock.***

    (a) Except as otherwise provided in Sections 3(b) and 3(c) hereof or as otherwise provided in an employment agreement the terms of which have been approved by the Administrator, the shares of Restricted Stock shall become vested in the following amounts, at the following times and upon the following conditions, provided that the Continuous Service of the Grantee continues through and on the applicable Vesting Date:

| Shares of Restricted Stock (Number or Percentage) | Vesting Date |
|---|---|
| 25% | June 1, 2022 |
| 25% | June 1, 2023 |
| 25% | June 1, 2024 |
| 25% | June 1, 2025 |

There shall be no proportionate or partial vesting of shares of Restricted Stock in or during the months, days or periods prior to each Vesting Date, and all vesting of shares of Restricted Stock shall occur only on the applicable Vesting Date.

Notwithstanding the foregoing provisions of this Section 2(a), upon the first date that the Company, or any successor entity or controlling affiliate thereof, becomes subject to the public company reporting requirements of the U.S. Securities and Exchange Commission (or any similar authority of any foreign jurisdiction), a total of 400,000 shares of Restricted Stock granted pursuant to the Award Agreement shall automatically become fully vested and be released from any repurchase or forfeiture rights (other than repurchase rights exercisable at Fair Market Value) for all of the Shares (or other consideration) at the time represented by such portion of this Award; provided, however, that if Grantee shall be subject to a contractual lock-up restriction at the time of such accelerated vesting which restriction prohibits the sale by Grantee of the portion of the Award so accelerated, the vesting of such 400,000 shares of Restricted Stock shall be delayed until the expiration of such lock-up restriction.

    (b) In the event that a Change in Control of the Company occurs during the Grantee's Continuous Service, the following terms shall apply.

    i. All outstanding Awards under the Plan shall terminate. However, all such Awards shall not terminate to the extent they are Assumed in connection with the Change in Control.

    ii. In the event of a Change in Control and:

        (A) For the portion of this Award of Restricted Stock that is Assumed or Replaced, then this Award (if Assumed), the replacement Award (if Replaced), or the cash incentive program (if Replaced) automatically shall become fully vested, exercisable and payable and be released from any repurchase or forfeiture rights (other than repurchase rights exercisable at Fair Market Value) for all of the Shares (or other consideration) at the time represented by such Assumed or Replaced portion of this Award, immediately upon termination of the Grantee's Continuous Service if such Continuous Service is terminated by the successor company or the Company without Cause or voluntarily by the Grantee with Good Reason within twelve (12) months after the Change in Control; and

        (B) For the portion of this Award of Restricted Stock that is neither Assumed nor Replaced, such portion of this Award shall automatically become fully vested and exercisable and be released from any repurchase or forfeiture rights (other than repurchase rights exercisable at Fair Market Value) for all of the Shares (or other consideration) at the time represented by such portion of this Award, immediately prior to the specified effective date of such Change in Control, provided that the Grantee's Continuous Service has not terminated prior to such date. The portion of this Award that is not Assumed shall terminate under subsection (A) of this Section to the extent not exercised prior to the consummation of such Change in Control.

(c) Notwithstanding any other term or provision of this Award Agreement, the Board or the Committee shall be authorized, in its sole discretion, based upon its review and evaluation of the performance of the Grantee and of the Company, to accelerate the vesting of any shares of Restricted Stock under this Award Agreement, at such times and upon such terms and conditions as the Board or the Committee shall deem advisable.

(d) <u>Definitions</u>. For purposes of this Award Agreement, the following terms shall have the meanings indicated:

    i. "***Non-Vested Shares***" means any portion of the Restricted Stock subject to this Award Agreement that has not become vested pursuant to this Section 2.

    ii. "***Vested Shares***" means any portion of the Restricted Stock subject to this Award Agreement that is and has become vested pursuant to this Section 2.

3. ***Delivery of Restricted Stock.***

(a) One or more stock certificates evidencing the Restricted Stock shall be issued in the name of the Grantee but shall be held and retained by the Company records administrator of the Company until each Vesting Date. All such stock certificates shall bear the following legends, along with such other legends that the Board or the Committee shall deem necessary and appropriate or which are otherwise required or indicated pursuant to any applicable stockholders agreement:

    THE SHARES REPRESENTED BY THIS CERTIFICATE ARE SUBJECT TO SUBSTANTIAL VESTING AND OTHER RESTRICTIONS AS SET FORTH IN THE RESTRICTED STOCK

APP. 53

AGREEMENT BETWEEN THE ISSUER AND THE ORIGINAL HOLDER OF THE SHARES, A COPY OF WHICH MAY BE OBTAINED AT THE PRINCIPAL OFFICE OF THE ISSUER. SUCH RESTRICTIONS ARE BINDING ON TRANSFEREES OF THESE SHARES, AND INCLUDE VESTING CONDITIONS WHICH MAY RESULT IN THE COMPLETE FORFEITURE OF THE SHARES.

(b) The Grantee shall deposit with the Company stock powers or other instruments of transfer or assignment, duly endorsed in blank with signature(s) guaranteed, corresponding to each certificate representing shares of Restricted Stock until such shares become Vested Shares. If the Grantee shall fail to provide the Company with any such stock power or other instrument of transfer or assignment, the Grantee hereby irrevocably appoints the Secretary of the Company as his attorney-in-fact, with full power of appointment and substitution, to execute and deliver any such power or other instrument which may be necessary to effectuate the transfer of the Restricted Stock (or assignment of distributions thereon) on the books and records of the Company.

(c) On or after each Vesting Date, upon written request to the Company by the Grantee, the Company shall promptly cause a new certificate or certificates to be issued for and with respect to all shares that become Vested Shares on that Vesting Date, which certificate(s) shall be delivered to the Grantee as soon as administratively practicable after the date of receipt by the Company of the Grantee's written request. The new certificate or certificates shall continue to bear those legends and endorsements that the Company shall deem necessary or appropriate (including those relating to restrictions on transferability and/or obligations and restrictions under the Securities Laws).

4. ***Conditions to the Issuance of Stock Certificates***. The Restricted Stock deliverable hereunder shall by fully paid and nonassessable. The Company shall not be required to issue or deliver any certificates or make any book entries evidencing the Restricted Stock prior to the fulfillment of the conditions set forth herein and in the Plan.

5. ***Rights with Respect to Restricted Stock.***

(a) Except as otherwise provided in this Award Agreement, the Grantee shall have, with respect to all of the shares of Restricted Stock, all of the rights of a holder of shares of common stock of the Company, including without limitation (i) the right to vote such Restricted Stock, (ii) the right to receive dividends, if any, as may be declared on the Restricted Stock from time to time, and (iii) the rights available to all holders of shares of common stock of the Company upon any merger, consolidation, reorganization, liquidation or dissolution, stock split-up, stock dividend or recapitalization undertaken by the Company; provided, however, that all of such rights shall be subject to the terms, provisions, conditions and restrictions set forth in this Award Agreement (including without limitation conditions under which all such rights shall be forfeited). Any Shares issued to the Grantee as a dividend with respect to shares of Restricted Stock shall have the same status and bear the same legend as the shares of Restricted Stock and shall be held by the Company, if the shares of Restricted Stock that such dividend is attributed to is being so held, unless otherwise determined by the Committee.

(b) If at any time while this Award Agreement is in effect (or shares granted hereunder shall be or remain unvested while Grantee's Continuous Service continues and has not yet terminated or ceased for any reason), there shall be any increase or decrease in the number of issued and outstanding Shares of the Company resulting from a stock split, reverse stock split, stock dividend, recapitalization, combination or reclassification of the Shares, or similar transaction affecting the Shares, then and in that event, the Board or the Committee shall make any adjustments it deems fair and appropriate, in view of such change, in the number of shares of Restricted Stock

then subject to this Award Agreement. If any such adjustment shall result in a fractional share, such fraction shall be disregarded.

(c) Notwithstanding any term or provision of this Award Agreement to the contrary, the existence of this Award Agreement, or of any outstanding Restricted Stock awarded hereunder, shall not affect in any manner the right, power or authority of the Company to make, authorize or consummate: (i) any or all adjustments, recapitalizations, reorganizations or other changes in the Company's capital structure or its business; (ii) any merger, consolidation or similar transaction by or of the Company; (iii) any offer, issue or sale by the Company of any capital stock of the Company, including any equity or debt securities, or preferred or preference stock that would rank prior to or on parity with the Restricted Stock and/or that would include, have or possess other rights, benefits and/or preferences superior to those that the Restricted Stock includes, has or possesses, or any warrants, options or rights with respect to any of the foregoing; (iv) the dissolution or liquidation of the Company; (v) any sale, transfer or assignment of all or any part of the stock, assets or business of the Company; or (vi) any other corporate transaction, act or proceeding (whether of a similar character or otherwise).

6. ***Tax Matters; Section 83(b) Election.***

(a) Grantee may elect, within thirty (30) days of the Award Date, to include in gross income for federal income tax purposes an amount equal to the fair market value (as of the Award Date) of the Restricted Stock pursuant to Section 83(b) of the Internal Revenue Code of 1986, as amended (the "**Code**"), and shall make arrangements satisfactory to the Company to pay to the Company any federal, state or local income taxes required to be withheld with respect to the Restricted Stock as a result of such election. If the Grantee shall fail to make such tax payments as are required, the Company shall, to the extent permitted by law, have the right to deduct from any payment of any kind (including without limitation, the withholding of any Shares that otherwise would be issued to the Grantee under this Award Agreement) otherwise due to the Grantee any federal, state or local taxes of any kind required by law to be withheld with respect to the Restricted Stock as a result of such election.

(b) If the Grantee does not properly make the election described in paragraph 6(a) above, the Grantee shall, no later than the date or dates as of which the restrictions referred to in this Award Agreement hereof shall lapse, pay to the Company, or make arrangements satisfactory to the Committee for payment of, any federal, state or local taxes of any kind required by law to be withheld with respect to the Restricted Stock (including without limitation the vesting thereof), and the Company shall, to the extent permitted by law, have the right to deduct from any payment of any kind (including without limitation, the withholding of any Shares that otherwise would be distributed to the Grantee under this Award Agreement) otherwise due to Grantee any federal, state, or local taxes of any kind required by law to be withheld with respect to the Restricted Stock.

(c) The Grantee may satisfy the withholding requirements with respect to the Restricted Stock pursuant to any one or combination of the following methods:

   i. Payment in cash or check; or
   ii. By surrender of the whole number of Shares covered by this Award sufficient to satisfy the minimum applicable tax withholding obligations incident to the exercise or vesting of this Award (reduced to the lowest whole number of Shares if such number of Shares withheld would result in withholding a fractional Share with any remaining tax withholding settled in cash).

(d) Tax consequences on the Grantee (including without limitation federal, state, local and foreign income tax consequences) with respect to the Restricted Stock (including without

limitation the grant, vesting and/or forfeiture thereof) are the sole responsibility of the Grantee. The Grantee shall consult with his or her own personal accountant(s) and/or tax advisor(s) regarding these matters, the making of a Section 83(b) election, and the Grantee's filing, withholding and payment (or tax liability) obligations.