IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | § | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **CORE SCIENTIFIC, INC.,** *et al.,* | § | **Case No. 22-90341 (CML)** |
| | § | |
| | § | **(Jointly Administered)** |
| **Debtors.**[1] | § | |
| | § | **Re:  Docket Nos. 1052, 1245** |

**JOINT NOTICE OF AGREEMENT ON
RESTRUCTURING TERM SHEET BY AND AMONG THE DEBTORS,
THE AD HOC NOTEHOLDER GROUP, AND THE EQUITY COMMITTEE**

**PLEASE TAKE NOTICE OF THE FOLLOWING**:

1.      On December 21, 2022, Core Scientific, Inc. and its debtor affiliates in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"), each filed with the United States Bankruptcy Court for the Southern District of Texas a voluntary case under the Bankruptcy Code.

2.      Pursuant to the *Agreed Mediation Order Appointing Judge Marvin Isgur as Mediator Regarding Debtors' Chapter 11 Plan*, entered on July 12, 2023 [Docket No. 1052] (the "**Agreed Mediation Order**"),[2] (i) the Debtors, (ii) an ad hoc group of the Debtors' secured convertible noteholders (the "**Ad Hoc Noteholder Group**"), (iii) the Replacement DIP Lender, (iv) the Equipment Lenders, (v) the Creditors' Committee, and (vi) the Equity Committee (collectively, the parties described in clauses (i)–(vi) above, the "**Mediation Parties**") participated in a mediation with the Honorable Marvin Isgur, United States Bankruptcy Judge for the Southern District of Texas, as mediator (the "**Mediation**").

3.      Throughout the Mediation, the Mediation Parties have worked with Judge Isgur to resolve critical case issues and build consensus with respect to the terms of a value-maximizing

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions, VII, LLC (3198).  The Debtors' corporate headquarters and service address is 210 Barton Springs Road, Suite 300, Austin, Texas 78704.

[2]  Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Agreed Mediation Order.

joint chapter 11 plan of reorganization.  The Mediation has been extended several times to facilitate this goal.

4.      On September 18, 2023, following approximately two months of good faith negotiations in Mediation, the Debtors, the Ad Hoc Noteholder Group, and the Equity Committee filed the *Joint Notice of Mediated Agreement in Principle Between the Debtors and the Ad Hoc Noteholder Group* [Docket No. 1245] (the "**Joint Notice**"), which, among other things, announced that a Mediated Settlement (as defined in the Joint Notice) had been reached among the parties. Since filing the Joint Notice, the Debtors, the Ad Hoc Noteholder Group, and the Equity Committee have worked diligently to, among other things, resolve certain open issues, document the Mediated Settlement, and negotiate with the other Mediation Parties.

5.      Earlier today, the Debtors, the Ad Hoc Noteholder Group, and the Equity Committee[3] reached agreement on the terms set forth in the *Restructuring Term Sheet*, annexed hereto as **Exhibit A** (the "**Restructuring Term Sheet**").  The Restructuring Term Sheet sets forth the principal terms of a joint chapter 11 plan of reorganization that the Debtors believe maximizes value for all stakeholders and presents a clear path towards emergence.  The Restructuring Term Sheet does not purport to summarize all of the terms, conditions, representations, warranties, and other provisions with respect to the transactions described therein, which transactions will be subject to the completion of a Restructuring Support Agreement (the "**RSA**"), updated chapter 11 plan, and other definitive documents. The closing of any transaction will be subject to the terms and conditions set forth in such definitive documents.

6.      The Debtors, the Ad Hoc Noteholder Group, and the Equity Committee will continue to work and negotiate in good faith to (i) finalize and execute the RSA, (ii) revise the chapter 11 plan and disclosure statement currently on file at Docket Nos. 1199 and 1200, respectively, to incorporate the terms set forth in the Restructuring Term Sheet and (ii) build further consensus with other stakeholders.

7.      The Debtors intend to proceed with the hearing to consider approval of a revised disclosure statement, which will incorporate the terms set forth in the Restructuring Term Sheet and the RSA, scheduled for **November 14, 2023 at 2:00 p.m. (Prevailing Central Time)**.[4]

---

[3] All members of the Equity Committee, other than Foundry Digital LLC ("**Foundry**"), support the agreements reflected in the Restructuring Term Sheet.  The Restructuring Term Sheet, including the conditions therein, have not been agreed to by Foundry.  Nothing in the Restructuring Term Sheet or otherwise constitutes or shall be deemed to constitute Foundry's consent to the Restructuring Term Sheet, or the terms or conditions therein, or is binding on or enforceable against Foundry.  Foundry's rights are fully reserved.

[4] *See Notice of Rescheduled Hearing to Consider Approval of Disclosure Statement for Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors*, dated October 18, 2023 [Docket No. 1335].

Dated: October 30, 2023
       Houston, Texas

Respectfully submitted,

| | |
|---|---|
| */s/ Alfredo R. Pérez* | */s/ Kristopher M. Hansen* |
| WEIL, GOTSHAL & MANGES LLP | PAUL HASTINGS LLP |
| Alfredo R. Pérez (15776275) | James T. Grogan III (TX Bar No. 24027354) |
| Clifford W. Carlson (2409024) | 600 Travis Street, 58th Floor |
| 700 Louisiana Street, Suite 1700 | Houston, Texas 77002 |
| Houston, Texas 77002 | Telephone: (713) 860-7300 |
| Telephone: (713) 546-5000 | Facsimile:  (713) 353-3100 |
| Facsimile:  (713) 224-9511 | Email: jamesgrogan@paulhastings.com |
| Email: Alfredo.Perez @weil.com | |
|        Clifford.Carlson@weil.com | -and- |
| | |
| -and- | Kristopher M. Hansen (admitted *pro hac vice*) |
| | Sayan Bhattacharyya (admitted *pro hac vice*) |
| WEIL, GOTSHAL & MANGES LLP | Emily Kuznick (admitted *pro hac vice*) |
| Ray C. Schrock (admitted *pro hac vice*) | Joanne Lau (admitted *pro hac vice*) |
| Ronit J. Berkovich (admitted *pro hac vice*) | 200 Park Avenue |
| 767 Fifth Avenue | New York, New York 10166 |
| New York, New York 10153 | Telephone: (212) 318-6000 |
| Telephone: (212) 310-8000 | Facsimile:  (212) 319-4090 |
| Facsimile:  (212) 310-8007 | Email: krishansen@paulhastings.com |
| Email: Ray.Schrock@weil.com |        sayanbhattacharyya@paulhastings.com |
|        Ronit.Berkovich@weil.com |        emilykuznick@paulhastings.com |
| |        joannelau@paulhastings.com |
| | |
| *Attorneys for Debtors* | |
| *and Debtors in Possession* | *Counsel to the Ad Hoc Noteholder Group* |

-and-

Dated:  October 30, 2023
        New York, New York

Respectfully submitted,

/s/ David S. Meyer
VINSON & ELKINS LLP

David S. Meyer (admitted *pro hac vice*)
Lauren R. Kanzer (admitted *pro hac vice*)
1114 Avenue of the Americas
32nd Floor
New York, NY 10036
Tel: (212) 237-0000
Fax: (212) 237-0100
dmeyer@velaw.com; lkanzer@velaw.com

-and-

Paul E. Heath (Texas Bar No. 09355050)
Harry A. Perrin (Texas Bar No. 15796800)
Matthew J. Pyeatt (Texas Bar No. 24086609)
Kiran Vakamudi (Texas Bar No. 24106540)
845 Texas Avenue
Suite 4700
Houston, TX 77002
Tel: (713) 758-2222
Fax: (713) 758-2346
pheath@velaw.com; hperrin@velaw.com;
mpyeatt@velaw.com; kvakamudi@velaw.com

*Counsel for the Official Committee*
*of Equity Security Holders*

**<u>Certificate of Service</u>**

I hereby certify that on October 30, 2023 a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.


      */s/ Alfredo R. Pérez*
      Alfredo R. Pérez

## Exhibit A

**Restructuring Term Sheet**

# Core Scientific

## RESTRUCTURING TERM SHEET

October 30, 2023

# Restructuring Term Sheet
## *Plan Terms and Key Treatment*

| | |
|---|---|
| **Plan TEV** | > $1.5 billion |
| **Convertible Notes** | > Settled Claim Amounts<br>- <u>April Notes</u>: sum of (i) $350 million, (ii) post petition interest at contract rate following January 15, 2024, (iii) share of any ERO Shortfall Equity Distribution Amount, and (iv) share of any Fee-Related Equity Distribution to Converts<br>- <u>August Notes</u>: sum of (i) $360 million, (ii) post petition interest at contract rate following January 15, 2024, (iii) share of any ERO Shortfall Equity Distribution Amount, and (iv) share of any Fee-Related Equity Distribution to Converts Treatment (other than on account of amounts rolled-up under Exit DDTL):<br>- $150 million in New Secured Notes<br>- $260 million in New Secured Convertible Notes<br>- $260 million in Equity, subject to dilution from New Secured Convertible Notes, Warrants, and MIP<br>- Contingent Payment Obligations (up to $130 million total), freely assignable and publicly tradeable<br>   > At 1-year anniversary: Cash payment equal to lesser of (i) $43.3 million and (ii) $260 million minus fair market value ("<u>FMV</u>") of equity distributed to the Convertible Noteholders (which FMV is calculated based on 60-day VWAP, those 60 days being the last 60 days prior to the 1-year anniversary)<br>   > At 2-year anniversary: Cash or stock payment equal to lesser of (i) $43.3 million and (ii) $260 million minus 1-year anniversary payment and FMV of equity distributed to the Convertible Noteholders (which FMV is calculated based on 60-day VWAP, those 60 days being the last 60 days prior to the 2-year anniversary)<br>   > At 3-year anniversary: Cash or stock payment equal to lesser of (i) $43.3 million and (ii) $260 million minus 1-year anniversary payment, 2-year anniversary payment, and FMV of equity distributed to the Convertible Noteholders (which FMV is calculated based on 60-day VWAP, those 60 days being the last 60 days prior to the 3-year anniversary)<br>- Any ERO Shortfall Distribution Amount up to ~3.1% of equity (see Shortfall Mechanism on slide 9)<br>- Any incremental equity payable to convertible noteholders for fees paid in excess of Equity Committee's $6.75 million fee cap (see Equity Committee Professional Fees on slide 10) or amounts paid on account of Equity AHG substantial contribution claim (see Fee-Related Equity Distribution to Converts, per slide 10) |
| **Miner Equipment Financing** | > Same as Second Amended Plan, subject to minor adjustments to be reflected in to be filed plan |
| **Non-Miner Equipment Financing** | > Same as Second Amended Plan |
| **Mechanics' Liens** | > Settlements with Condair, Didado, HMC, and Trilogy as filed with and approved by the court, and Harper with modifications as agreed with the Ad Hoc Group of Convertible Noteholders ("Converts AHG")<br>> Remainder of claims consistent with Second Amended Plan |

# Restructuring Term Sheet
## *Plan Terms and Key Treatment (Cont'd)*

| | |
|---|---|
| GUCs | > Full claim in equity in reorganized business at Plan Equity Value, subject to dilution from New Secured Convertible Notes, Warrants, and MIP<br>> OEC to receive pre-Effective Date consultation rights regarding resolution of all Disputed General Unsecured Claims greater than $1,000,000 |
| Existing Equity | > Residual equity in business after $260 million provided to Convertible Notes, subject to reduction by (i) Bitmain equity, (ii) equity purchased in ERO and ERO Shortfall Distribution Amount (if any), (iii) ERO backstop fee, (iv) Fee-Related Equity Distribution to Converts, (v) GUC equity; subject to dilution from New Secured Convertible Notes, Warrants, and MIP<br>> New Tranche 1 Warrants<br>> New Tranche 2 Warrants<br>> Rights to invest $55 million via ERO |
| Exit Facility | > $80 million to be provided by certain convertible noteholders (all holders of convertible notes may participate through syndication process), consisting of $40 million of new money and $40 million of rolled-up convertible notes claims |
| Equity Rights Offering | > As described on slide 9 |

# Restructuring Term Sheet
## *Delayed Draw Term Loan*

| | | |
|---|---|---|
| **Exit Delayed Draw Term Loan ("DDTL")** | Lenders | > Certain convertible noteholders (all holders of convertible notes may participate through syndication process) |
| | Principal | > $80.0 million consisting of:<br>- $40.0 million New Money ($20 million upfront and $20 million DDTL)<br>- $40.0 million roll-up of Noteholder Claims |
| | Interest Rate | > 9.0% cash<br>> 1.0% cash undrawn fee |
| | Maturity | > 3 years |
| | Prepayments | > No requirement for ELOC proceeds to pay down DDTL<br>> Same other mandatory prepayment terms as agreed with B. Riley (for the avoidance of doubt, ECF sweep only applies to free cash flow and not to capital raises); ECF terms and mechanics to be negotiated<br>> Mandatory amortization paid in equal quarterly installments ($1.25 million / quarter) beginning on the 2-year anniversary of the effective date |
| | Backstop | > Backstopped by certain members of Converts AHG<br>> Fee: 3.0% of $40 million New Money commitment in cash or DDTL (i.e., PIK), at the Company's option<br>- Fee does not apply to rolled amount |
| | Upfront Fee | > Up to 2% of pro forma equity on account of ERO regarding a shortfall (as described on slide 9 re Shortfall Mechanism) |
| | Security | > Priming lien on all assets other than the first $52.5 million of miners (second lien on the $52.5 million of miners), future acquired financed miners and existing real estate mortgages / M&M liens (second lien on existing financed miners, future acquired financed miners, real estate subject to mortgages and M&M liens) |
| | Covenants | > Affirmative, negative and financial covenants typical for a restructuring exit facility (including customary LME protections, limitations on incurrence of debt/liens, RPs, investments, asset dispositions, mergers, and affiliate transactions)<br>> Specifics of covenant package to be negotiated |
| | Amendments | > LME protections to be a sacred right in addition to customary sacred rights |
| | Annual Admin Fee | > TBD, less than $150,000 |

4

# Restructuring Term Sheet
## *New Secured Notes*

| New Secured Notes | | |
|---|---|---|
| | Guarantors | > All subsidiaries to serve as guarantors; empty subs to be dissolved on the Effective Date |
| | Principal | > $150 million |
| | Interest Rate | > 12.5% cash<br>> First interest payment June 15, 2024; quarterly thereafter |
| | Maturity | > 4 years |
| | Prepayments | > <u>Mandatory</u>: 50% of Tranche 1 Warrants' cash exercise proceeds and 100% of net proceeds of New Secured Notes First Lien Collateral and casualty losses related to New Secured Notes First Lien Collateral<br>> <u>Voluntary</u>: 100/101/102/103 prepayment fees only applicable to optional/voluntary prepayments (not mandatory) and upon acceleration<br>> Customary reinvestment rights |
| | Security | > Lien on all assets but junior to Exit DDTL but only with respect to Exit DDTL provided by Converts AHG |
| | Covenants | > Affirmative, negative, and financial covenants consistent with Exit DDTL provided by Converts AHG |
| | Amendment | > Amendment provisions customary for a bond indenture; [provided that release of collateral, among others, to be a sacred right]** |
| | Transferability | > Freely tradeable; issued through DTC; have CUSIP |
| | Other | > <u>Trustee/Collateral Agent</u>: US Bank or an entity acceptable to Converts AHG; to be determined by Converts AHG<br>> Board designation right<br>> <u>Representations and Warranties</u>:  Consistent with Exit DDTL provided by Converts AHG<br>> <u>Reporting Requirements</u>:  Consistent with Exit DDTL provided by Converts AHG<br>> <u>Events of Default</u>:  Customary defaults and cross-default and cross-acceleration to all indebtedness, including Secured Convertible Notes, the Exit DDTL, and equipment miner debt (TBD); default with respect to the Contingent Payment Obligations; cessation of business; criminal convictions or subordination documents cease to be in full force and effect or the Issuer or any of its subsidiaries so asserts; and such other Events of Default to be agreed among the Debtors and the Converts AHG |

**Subject to negotiations

# Restructuring Term Sheet
## *New Secured Convertible Notes*

| | | |
|---|---|---|
| **New Secured Convertible Notes** | Guarantors | > All subsidiaries to serve as guarantors; empty subs to be dissolved on the effective date |
| | Principal | > $260 million |
| | Interest Rate | > Company can elect to pay in either (i) 6.0% cash / 6.0% PIK (PIK paid in stock using 20 consecutive trading day VWAP) or (ii) 10% cash<br>> First interest payment June 15, 2024; quarterly thereafter |
| | Maturity | > 5 years |
| | Security | > Lien on all assets subject to Exit DDTL provided by Converts AHG but junior to New Secured Notes |
| | Covenants | > Affirmative, negative and financial covenants consistent with Exit DDTL provided by Converts AHG |
| | Conversion | > <u>Optional Conversion</u>:  $1,650 million TEV<br>    > Settlement in stock or combination of cash/stock (with cash capped at par value of debt, total consideration based on trading value of stock) at Company's option<br>> <u>Mandatory Conversion</u>: $2,100 million TEV<br>    - VWAP calc'd using 20 consecutive trading days |
| | Redemption | > Non-call for life |
| | Make-Whole Fundamental Change | > Customary make-whole fundamental change provision |
| | Transferability | > Freely tradeable; issued through DTC; have CUSIP |
| | Anti-Dilution | > Protections for Specified Transactions; carve-out for underwriting discounts, fees, commissions or similar discounts TBD |
| | Other | > <u>Representations and Warranties</u>: To be discussed<br>> <u>Reporting Requirements</u>: Consistent with New Secured Notes<br>> <u>Events of Default</u>: Consistent with New Secured Notes<br>> <u>Amendments</u>:  Sacred rights to be discussed |

# Restructuring Term Sheet
## *New Tranche 1 Warrants*

| New Tranche 1 Cash Exercise Warrants | | |
|---|---|---|
| Amount | > | 30% of equity |
| Strike TEV | > | <u>Voluntary Exercise</u>: $1,875 million TEV |
| | > | <u>Mandatory Exercise</u>: None |
| Exercise Price | > | Price per share equal to the equity value of the Issuer implied by a TEV of $1,875 million |
| Term | > | 3 years |
| Exercise Provision | > | 100% cash exercise |
| Anti-Dilution | > | Customary adjustments to be discussed |
| Black-Scholes Protection | > | For any Change of Control transaction, Black-Scholes protection will apply on the percent of cash consideration; for the percent of stock consideration (i.e., any portion of consideration that is not freely tradeable / listed stock), warrants will roll through |
| | > | Volatility to be lower of (i) 60% and (ii) 6 month realized volatility prior to transaction date |
| Adjustment Mechanism | > | Customary adjustments to be discussed |

7

# Restructuring Term Sheet
## *New Tranche 2 Warrants*

| | | |
|---|---|---|
| **New Tranche 2 Penny Warrants** | Amount | > 20% of equity |
| | Strike TEV | > <u>Voluntary Exercise</u>: $2,500 million TEV (based on 20 consecutive trading day VWAP)<br>> <u>Mandatory Exercise</u>: None |
| | Exercise Price | > $.01 per share |
| | Term | > 5 years |
| | Change of Control | > Warrants to be amended under a Specified Transaction re exercise price and expiration date |
| | Anti-Dilution | > Customary adjustments to be discussed |
| | Black-Scholes Protection | > For any Change of Control transaction, Black-Scholes protection will apply on the percent of cash consideration as if the warrants had a TEV strike of $2,100 million; for the percent of stock consideration (i.e., any portion of consideration that is not freely tradeable / listed stock), warrants will adjust and roll through as if they had a TEV strike of $2,100 million<br>> Volatility to be lower of (i) 60% and (ii) 6 month realized volatility prior to transaction date |
| | Adjustment Mechanism | > Customary adjustments to be discussed |

8

# Restructuring Term Sheet
## *Other Matters*

| | | |
|---|---|---|
| **Equity Rights Offering ("ERO")** | Amount | > $55 million, best efforts<br>> 30% discount to Plan equity value<br>> Subject to shortfall mechanism to the extent less than $55 million but greater than $30 million is raised<br>> Can only be amended with consent of Converts AHG |
| | Backstop | > $30 million backstop with best efforts to secure an incremental $25 million of backstop, for a total of $55 million<br>> Can only be amended with consent of Converts AHG |
| | Fees | > <u>Backstop Commitment Premium</u>: 20% paid in equity at a discount to Plan equity value implied by $1.5 billion Plan TEV<br>> <u>Termination Fee</u>: 5% of backstopped amount; no termination fee if terminated due to breach by the Backstop Parties |
| | Discount | > 30% discount to Plan equity value implied by $1.5 billion Plan TEV |
| | Shortfall Mechanism | > Up to ~5.1%[1] of equity allocated based on ERO shortfall between $30 million and $55 million (which ERO shall be no less than $30 million), utilizing a sliding scale; first (up to) 2% available on account of shortfall mechanism accrues to Exit Delayed Draw Term Loan lenders; any equity distributed on account of shortfall mechanism above 2% accrues to Convertible Notes primary equity recovery |
| **Unvested RSUs and Stock Options** | | > Amount of shares associated with unvested RSUs and Stock Options will only dilute recoveries to existing equity; mechanics to be discussed; Company to provide proposal regarding mechanics in updated chapter 11 plan |
| **New Board** | Composition | > Adam Sullivan; 1-year initial term<br>> <u>Converts AHG</u>: 2 designees with 3-year initial terms<br>  - If any Converts AHG director resigns or is removed from the New Board for any reason including due to death or disability or for cause, any replacement shall be chosen from a list of nominees provided by the Converts AHG on the Effective Date<br>> <u>OEC</u>: 2 designees with 2-year initial terms<br>> <u>Chairman</u>[2]:  Selected based on majority vote of the Board (without the vote of the member to be selected as chairman)<br>> Staggered board with annual stockholders' meeting to elect board to be held every 13 months (provision can only be amended with consent of Converts AHG designee)<br>> To discuss implementation of Board designation rights with respect to New Secured Notes (i.e., term of longer of 3 years and maturity or payoff of New Secured Notes) |
| | Bankruptcy Vote | > Converts AHG designee consent required for bankruptcy filing<br>> To discuss implementation of Board designation rights with respect to New Secured Notes (i.e., term of longer of 3 years and maturity or payoff of New Secured Notes) |
| | Debtor Consent Rights | > Company has reasonable consent right over 1 Converts AHG designee; and over 1 OEC designee |

(1)  Such ~5.1% figure is based on an estimated Plan equity value of $795 million. Such equity percent figure shall be updated based on final Plan equity value.
(2)  To be selected from 1 of 5 directors above.

# Restructuring Term Sheet
## *Other Matters (Cont'd)*

| | |
|---|---|
| Claim Amount | > PPI at contract rate following January 15, 2024 through the Effective Date, subject to all parties' reasonable best efforts to emerge by January 15, 2024 |
| Equity Committee Professional Fees | > Debtors and Converts AHG will support an increase of the existing cap to $6.75 million (the "Increased Cap"); any fees paid in excess of the Increased Cap reduce dollar for dollar the equity amount for the pre-petition equity and increase the equity distributed to the Converts; provided, that, if (i) the OEC does not affirmatively support the Plan or (ii) the OEC or any member of the OEC (in its capacity as an equity holder), other than Foundry,(1) objects to either approval of the Disclosure Statement or confirmation of the Plan, the Increased Cap shall automatically revert to the existing cap of $4.75 million |
| Equity Ad Hoc Group ("Equity AHG") Expenses and Equity AHG Substantial Contribution Claim | > AHG may object to any motion for substantial contribution claim; any fees paid reduce dollar for dollar the equity amount for the pre-petition equity and increase the equity amount for the AHG (combined with the above equity distributed to Converts related to the Equity Committee Professional Fees, the "Fee-Related Equity Distribution to Converts")<br>> Debtors to support motion for substantial contribution claim; provided, that, if (i) the OEC does not affirmatively support the Plan or (ii) the OEC or any member of the OEC (in its capacity as an equity holder), other than Foundry, objects to either approval of the Disclosure Statement or confirmation of the Plan, Debtors may object to substantial contribution claim |
| Definitive Documents | > All definitive documents to be acceptable to Converts AHG<br>> The following definitive documents to be acceptable to OEC: (i) New Corporate Governance Documents; (ii) New Warrants Agreement; (iii) ERO procedures; (iv) the form of Registration Rights Agreement; (v) the Confirmation Order; and (vi) the Plan, with respect to any provisions affecting the rights or recovery of equity holders<br>> The following definitive documents to be reasonably acceptable to OEC: (i) the Plan, and (ii) the New Secured Convertible Notes Documents<br>> The Debtors, AHG, and OEC agree (i) that consent rights may not be applied to make the definitive documents inconsistent with the terms agreed to in this Restructuring Term Sheet and (ii) to be bound by customary RSA provisions requiring the parties to negotiate in good faith, use commercially reasonable efforts to execute, deliver, perform obligations under, and consummate the transactions contemplated by the definitive documents |
| Miner Equipment Lender Liens | > No change to existing settlement with miner equipment lenders |
| B. Riley Unsecured Claims | > To be classified with other general unsecured claims and receive same treatment (i.e., equity) as other GUCs |
| Foundry Settlement | > The Company, the Converts AHG, and Foundry will discuss the Foundry settlement and the treatment of any claims held by Foundry |
| Bitmain Transaction | > Converts AHG will support the Bitmain transaction, subject to review of final amendment<br>> The chapter 11 plan will provide that the Company will not pay any consideration to Bitmain prior to receipt of the purchased miners |

(1) This term sheet, including the terms and conditions herein, have not been agreed to by Foundry Digital LLC ("Foundry"). Nothing in this term sheet or otherwise constitutes or shall be deemed to constitute Foundry's consent to this term sheet, or the terms or conditions herein, or is binding on or enforceable against Foundry. Foundry's rights are fully reserved.

# Restructuring Term Sheet
## *Other Matters (Cont'd)*

| | |
|---|---|
| Commitment Documents | > Commercially reasonable efforts for RSA to be signed by 10/31 by Debtors, Converts AHG, and the members of the OEC, in their capacity as OEC members (other than Foundry)<br><br>> Backstop commitment letter and exit commitment letter to be signed two weeks after signing the RSA, with commercially reasonable efforts to finalize as soon as possible and all parties to cooperate in good faith to finalize |