# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| | § | |
| In re: | § | **Chapter 11** |
| | § | |
| **CORE SCIENTIFIC, INC.,** *et al.,* | § | **Case No. 22-90341 (DRJ)** |
| | § | |
| | § | **(Jointly Administered)** |
| **Debtors.**[1] | § | |
| | § | |

## DEBTORS' EMERGENCY MOTION FOR ORDER APPROVING (I) GLOBAL SETTLEMENT BETWEEN DEBTORS AND CELSIUS, (II) SALE OF CEDARVALE FACILITY AND RELATED ASSETS, (III) ENTRY INTO AMENDED TNMP CONTRACT AND ASSUMPTION AND ASSIGNMENT OF TRANSFERRED CONTRACTS AND (IV) GRANTING RELATED RELIEF

---

**EMERGENCY RELIEF HAS BEEN REQUESTED. RELIEF IS REQUESTED NOT LATER THAN 5 P.M. (CENTRAL PREVAILING TIME) ON OCTOBER 3, 2023.**

**IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST APPEAR AT THE HEARING IF ONE IS SET, OR FILE A WRITTEN RESPONSE PRIOR TO THE DATE THAT RELIEF IS REQUESTED IN THE PRECEDING PARAGRAPH. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

**A HEARING WILL BE CONDUCTED ON THIS MATTER ON MONDAY, OCTOBER 2, 2023 AT 3 P.M. (CENTRAL PREVAILING TIME) IN COURTROOM 400, 4TH FLOOR, 515 RUSK AVENUE, HOUSTON, TX 77002.**

**YOU MAY PARTICIPATE IN THE HEARING EITHER IN PERSON OR BY AN AUDIO AND VIDEO CONNECTION. AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S DIAL-IN FACILITY. YOU MAY ACCESS THE FACILITY AT 832-917-1510.   ONCE CONNECTED, YOU WILL BE ASKED TO ENTER THE CONFERENCE ROOM NUMBER.   JUDGE JONES'S CONFERENCE ROOM NUMBER IS 205691. VIDEO COMMUNICATION WILL BE BY USE OF THE GOTOMEETING PLATFORM. CONNECT VIA THE FREE GOTOMEETING APPLICATION OR CLICK THE LINK ON JUDGE JONES'S HOME PAGE. THE MEETING CODE IS "JUDGEJONES".  CLICK THE SETTINGS ICON IN THE UPPER**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions, VII, LLC (3198).  The Debtors' corporate headquarters and service address is 210 Barton Springs Road, Suite 300, Austin, Texas 78704.

> **RIGHT CORNER AND ENTER YOUR NAME UNDER THE PERSONAL INFORMATION SETTING.**
>
> **HEARING APPEARANCES MUST BE MADE ELECTRONICALLY IN ADVANCE OF BOTH ELECTRONIC AND IN-PERSON HEARINGS.   TO MAKE YOUR APPEARANCE, CLICK THE "ELECTRONIC APPEARANCE" LINK ON JUDGE JONE'S HOME PAGE.   SELECT THE CASE NAME, COMPLETE THE REQUIRED FIELDS AND CLICK "SUBMIT" TO COMPLETE YOUR APPEARANCE.**

Core Scientific Operating Company f/k/a Core Scientific, Inc. ("**Core**") and its debtor affiliates in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"), hereby submit this motion (the "**Motion**"), pursuant to sections 363(b), 365(a), and 105(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), rules 2002 and 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and rule 9013 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Local Rules**").   The Debtors request entry of an order, substantially in the form annexed hereto as **Exhibit 1** (the "**Proposed Order**"), approving (i) a global settlement of all disputes and claims (except for the Excluded Claims, as defined below) between the Debtors and Celsius Mining LLC and certain of its affiliates (collectively, "**Celsius**", and together with the Debtors, collectively, the "**Parties**"), on the terms set forth in that certain Purchase and Sale Agreement, dated as September 14, 2023, by and between Core and Celsius (the "**PSA**"), attached to this Motion as **Exhibit 2** and the Proposed Order, (ii) the sale and conveyance to Celsius of all right, title, and interest of the Debtors in and to: (A) the real property comprising the bitcoin mining facility located on approximately 43.41 acres in Ward County, Texas as described in Exhibit A to the PSA, and all improvements thereon and all rights and appurtenances pertaining thereto (collectively, the "**Cedarvale Facility**"), (B) the Transferred Personal Property identified in Exhibit C to the PSA and all manufacturer or other express warranties relating to such Transferred Personal Property (the "**Personal Property**"), and (C) the Debtors' membership interests in Cedarvale Meter Holding Company, LLC, a Delaware limited

2

liability company and a wholly-owned non-Debtor subsidiary of the Debtors ("**Meter Holding**") (such membership interests, "**Meter Holding Interests**", and collectively with the Cedarvale Facility and the Personal Property, the "**Purchased Assets**"), free and clear of all liens, claims, and encumbrances (other than Permitted Title Exceptions[2]), (iii) in accordance with the terms of the PSA, the grant by the Debtors to Celsius of a perpetual, non-transferable, non-exclusive limited license to use certain of the Debtors' intellectual property in connection with Celsius's use of the Debtors' materials identified in <u>Exhibit K</u> to the PSA (the "**Licensed Materials**", and such license being granted, the "**License**"), (iv) the assumption and assignment of certain executory contracts and agreements identified in <u>Exhibit B</u> to the PSA, as may be modified or amended (collectively, the "**Transferred Contracts**")[3], and (v) granting related relief.

**Preliminary Statement**

1. After extensive negotiations, the Debtors and Celsius reached an agreement that provides for (i) the global resolution of all claims and disputes between the Parties (the "**Celsius Settlement**")[4] except for Celsius's convertible notes claims, (ii) the sale of the Purchased Assets to Celsius, and (iii) the License to use the Licensed Materials.  On September 14, 2023, the Parties memorialized the terms of such settlement in the PSA.  Subject to and effective upon three business days after approval by both this Court and the Bankruptcy Court in Celsius's chapter 11 cases (the "**Effective Date**"), under the Celsius Settlement, the Debtors will (i) sell the Purchased Assets to Celsius free and clear of all liens, claims, and encumbrances (other than Permitted Title

---

[2] As defined in the PSA.  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the PSA or the Plan (as defined herein).

[3] For the avoidance of doubt and as set forth in the PSA, the Amended TNMP Contract will be a Transferred Contract to be assigned to Celsius as part of the Celsius Settlement.

[4] For the avoidance of doubt, all terms of the PSA are incorporated as part of the Celsius Settlement; any reference to the Celsius Settlement also includes the transactions contemplated under the PSA and the terms thereof.

3

**Debtors' Exhibit No. 1**
**Page 3 of 83**

Exceptions); (ii) grant Celsius the License to use the Licensed Materials; (iii) assume and assign the Transferred Contracts to Celsius, and (iv) release Core's claims against Celsius.  In exchange, on the Effective Date, the Debtors will receive (i) a cash payment of $14 million and (ii) the full and final release of more than $312 million in claims asserted by Celsius against the Debtors, consisting of approximately $112 million in prepetition claims, $1.5 million in postpetition claims, $194 million in rejection damages, and $4.7 million in postpetition administrative expense claims, plus any unspecified and unliquidated amounts (but not including any release of the Excluded Claims).

2.     As further discussed below and in the Sullivan Declaration (as defined below), the Celsius Settlement is in the best interests of the Debtors and their estates as the benefits of the settlement substantially outweigh the costs. The benefits of the Celsius Settlement include (i) $14 million cash, (ii) the resolution of more than $312 million of claims by Celsius against the Debtors, and (iii) substantial cost savings of an estimated $4-6 million in litigation costs, which could occur in two different courts and the outcome and recovery of which is uncertain.  Moreover, as further discussed below and in the Bros Declaration, given that the Cedarvale Facility is not a part of the Debtors' go-forward business plan and based on the exhaustive marketing process the Debtors previously conducted to sell the Cedarvale Facility, the Debtors are confident that the consideration received in exchange for such facility and related assets maximizes value for the Debtors and their estates.  Accordingly, the Debtors request the Court's approval to enter into the Celsius Settlement and perform all of the Debtors' obligations thereunder.

### Relief Requested

3.     By this Motion, pursuant to sections 363(b), 365(a), and 105(a) of the Bankruptcy Code, rules 2002 and 9019 of the Bankruptcy Rules, and rule 9013 of the Bankruptcy Local Rules, the Debtors request entry of an order, substantially in the form annexed hereto as

4

**Exhibit 1** (the "**Proposed Order**"), approving (i) the Celsius Settlement, (ii) the sale of the Purchased Assets to Celsius and transfer free and clear of all liens, claims, and encumbrances (other than Permitted Title Exceptions), (iii) the grant of the License to use the Licensed Materials to Celsius, (iv) the assumption and assignment of the Transferred Contracts to Celsius, and (v) granting related relief.  In support of the Motion, the Debtors submit the *Declaration of Adam Sullivan in Support of Debtors' Emergency Motion for Order Approving (I) Global Settlement Between Debtors and Celsius, (II) Sale of Cedarvale Facility and Related Assets, (III) Entry into Amended TNMP Contract and Assumption and Assignment of Transferred Contracts, and (IV) Granting Related Relief* (the "**Sullivan Declaration**") attached here to as **Exhibit 3**, and the *Declaration of Michael Bros in Support of Debtors' Emergency Motion for Order Approving (I) Global Settlement Between Debtors and Celsius, (II) Sale of Cedarvale Facility and Related Assets, (III) Entry into Amended TNMP Contract and Assumption and Assignment of Transferred Contracts, and (IV) Granting Related Relief* (the "**Bros Declaration**") attached here to as **Exhibit 4**.

## Jurisdiction

4.       This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

**I.       The Debtors' Chapter 11 Cases, Disclosure Statement, and Plan**

5.       On December 21, 2022 (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary case under the Bankruptcy Code.  The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5

**Debtors' Exhibit No. 1**
**Page 5 of 83**

6.      The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Bankruptcy Rules, and Rule 1015-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of Texas.  On January 9, 2023, the United States Trustee for Region 7 (the "**U.S. Trustee**") appointed an official committee of unsecured creditors in these chapter 11 cases pursuant to section 1102 of the Bankruptcy Code (the "**Creditors' Committee**").  On March 23, 2023, the U.S. Trustee appointed an official committee of equity security holders (the "**Equity Committee**").  No trustee or examiner has been appointed in these chapter 11 cases.

7.      In addition, on September 7, 2023, the Debtors filed their *Second Amended Joint Chapter 11 Plan of Reorganization of Core Scientific, Inc. and its Debtor Affiliates* (Docket No. 1199) (as may be amended, modified or supplemented, the "**Plan**") and related Disclosure Statement (Docket No. 1200) (as may be amended, modified, or supplemented, the "**Disclosure Statement**").

II.      **The Parties' Business Relationship and Related Disputes**

8.      The Debtors are one of the largest blockchain infrastructure, hosting provider, and digital asset mining companies in North America, with fully operational data centers in Texas, Kentucky, North Carolina, North Dakota, and Georgia.  The Debtors provide hosting solutions for third parties and also operate their own digital asset mining machines.

9.      Prior to the Petition Date, Celsius was one of the Debtors' largest hosting customers, owning approximately 37,536 miners hosted by the Debtors.  The Debtors provided hosting services to Celsius pursuant to two Master Services Agreements, dated December 18, 2020 and December 3, 2021 (together with the orders entered into in connection therewith, the "**Celsius Contracts**").  Pursuant to the Celsius Contracts, the Debtors may pass through any tariffs to

6

**Debtors' Exhibit No. 1**
**Page 6 of 83**

Celsius (the "**PPT Charges**"), which is a standard provision in all of the Debtors' hosting contracts.

10.     On July 13, 2022, Celsius, along with its affiliates, commenced chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York (the "**Celsius Chapter 11 Cases**").  Prior to the Celsius Chapter 11 Cases, Celsius had paid those PPT Charges but, after commencing the Celsius Chapter 11 Cases, refused to pay all PPT Charges the Debtors invoiced to Celsius.

11.     Litigation between the Parties ensued after the filing of the Celsius Chapter 11 Cases.  On September 28, 2022, Celsius filed a motion in the Celsius Chapter 11 Cases seeking to hold the Debtors in contempt of court for allegedly violating the automatic stay and for otherwise breaching the Master Services Agreements dated December 18, 2020 (the "**Automatic Stay Motion**") (Celsius Docket No. 917).  The Debtors disputed Celsius's allegations and filed an opposition to the Automatic Stay Motion on October 19, 2022 (the "**Automatic Stay Motion Opposition**") (Celsius Docket No. 1140).

12.     Concurrently with the Automatic Stay Motion Opposition, on October 19, 2022, the Debtors also filed their own motion in the Celsius Chapter 11 Cases, seeking (i) to compel immediate payment of administrative expenses and either (ii) (a) relief from the automatic stay to permit the Debtors to exercise all remedies, including termination, under the Celsius Contracts or (b) to compel assumption or rejection of the Celsius Contracts (the "**Core Administrative Claim Motion**") (Celsius Docket No. 1144).  In the fall of 2022, just as the Debtors were experiencing financial distress due to industry conditions, the Debtors and Celsius engaged in discovery relating to the competing motions.

13.     Shortly after the Petition Date, on December 28, 2022, to minimize losses incurred by the Debtors under the Celsius Contracts from Celsius's unpaid PPT Charges, the

7

Debtors filed a motion to reject the Celsius Contracts (the "**Rejection Motion**") (Docket No. 189). Celsius filed a "Preliminary Objection," not opposing the relief sought, but objecting to the emergency nature of the motion.  The Court held a hearing on the Rejection Motion on January 3, 2023 and entered an order approving the rejection of the Celsius Contracts on January 4, 2023 (Docket No. 232).

14.     On April 14, 2023, Celsius filed proof of claims Nos. 425 and 497 against Core Scientific, Inc., asserting purported breaches of the Celsius Contracts by the Debtors (the "**Celsius Hosting POCs**") and seeking damages of over $312 million against the Debtors. On April 24, 2023, the Debtors filed an objection to the Celsius Hosting POCs (the "**Celsius Hosting POC Objection**") (Docket No. 819).  On May 30, 2023, the Debtors filed a motion for partial summary judgment with respect to the Celsius Hosting POCs (Docket No. 942) (the "**Summary Judgment Motion**"), where the Debtors sought a judgment from the Court to, as a matter of law, disallow over $300 million of Celsius's claims on the basis that such claims were precluded by the limitations of liability provisions set forth in the Celsius Contracts.  The parties previously agreed that Celsius's opposition to the Summary Judgment Motion would be due June 21, 2023 (the "**Summary Judgment Opposition**") and the Debtors' reply in support of the Summary Judgment Motion would be due June 30, 2023 (the "**Summary Judgment Reply**", and together with the Summary Judgment Motion and the Summary Judgment Opposition, the "**Summary Judgment Briefing**").

15.     In addition to the Celsius Hosting POC, Celsius also filed a motion directing immediate payment of its asserted administrative expense claim for approximately $4.7 million (Docket No. 801) (the "**Celsius Administrative Claim Motion**").  On May 5, Debtors filed an objection in response to the Celsius Administrative Claim Motion (Docket No. 861) (the "**Celsius Administrative Claim Objection**").

8

16.     On the other hand, on January 3, 2023, the Debtors timely filed an initial proof of claim in the Celsius Chapter 11 Cases (Claim No. 17273 filed against Celsius Mining LLC) (the "**Initial Core POC**").   On February 9, 2023, after the bar date was extended in the Celsius Chapter 11 Cases, the Debtors timely filed an amended proof of claim, which amended and superseded the Initial Core POC in all respects (Claim No. 23022 filed against Celsius Mining LLC) (together with the Initial Core POC, the "**Core POCs**").

17.     Pursuant to the Core POCs, the Debtors assert that Celsius owes them approximately $3,886,169.41 in liquidated prepetition amounts relating to hosting services and in excess of $30 million in amounts to be liquidated, and the Debtors reserved the right to seek the equitable subordination of Celsius's claims in the Debtors' Chapter 11 Cases.   The Debtors also reserved their rights to assert administrative claims against Celsius relating to unpaid PPT Charges following the filing of Celsius Chapter 11 Cases through the date the Debtors rejected the Celsius Contracts and the significant legal fees the Debtors incurred as a result of defending against the Celsius's claims.   Celsius had not filed an objection to the Core POCs prior to the Parties reaching a settlement, though no deadline for any such objection was set.

18.     The Debtors and Celsius previously agreed to mediate the issues and disputes underlying the competing motions and proof of claims before the Honorable Marvin Isgur, United States Bankruptcy Judge for the Southern District of Texas on July 11, 2023 (the "**Mediation**") (Docket No. 968).   The Mediation was subsequently canceled following entry into the settlement term sheet. In addition, on June 30, 2023, the Parties filed an agreed order postponing the deadline for the Debtors to file the Summary Judgment Reply to July 31, 2023 (Docket No. 1023), staying Celsius's deadline to respond to the Celsius Administrative Claim Objection, and adjourning the hearing on the Celsius Administrative Claim Motion, which was entered on July 7, 2023 (Docket No. 1037).   The Parties filed a second agreed order further

9

postponing the deadline for the Debtors to file the Summary Judgment Reply to September 29, 2023 (Docket No. 1103).

## III.     Debtors' Chapter 11 Plan

19.     The Debtors' Plan provides for a comprehensive restructuring of the Debtors' balance sheet pursuant to which holders of claims and interests will receive either (i) equity in the reorganized Core Scientific, Inc. (the "**Reorganized Parent**"), (ii) take-back debt in a reorganized Debtor on and after the emergence of the Debtors' Chapter 11 Cases, (iii) a combination of equity and take-back debt, or (iv) reinstatement of claims.  In relevant part, the Plan provides holders of general unsecured claims with a 100% recovery in the form of equity to be issued by the Reorganized Parent (as defined in the Plan), in accordance with the terms and conditions set forth in section 4.8 of the Plan. The Plan also provides that holders of allowed administrative expense claims shall receive cash payments in full for such claims.  Therefore, under the Plan, Celsius would be entitled to a 100% recovery on account of any allowed prepetition claims and would be entitled to payment in cash in full to the extent its administrative expense claim were allowed.

## IV.     The Celsius Settlement

20.     The Parties entered into the Celsius Settlement on September 14, 2023.  The terms of the Celsius Settlement have been memorialized in the PSA (including all exhibits and annexes) and the Proposed Order attached hereto.

21.     The principal terms of the Celsius Settlement are set forth below:[5]

- The total purchase price under the PSA is $45 million, comprising the following:

  o   a cash payment of $14 million from Celsius to the Debtors; and

---

[5] The below only provides a summary of the principal terms of the Celsius Settlement; to the extent of any conflict between the below summary and the PSA, the terms of the PSA control.

10

**Debtors' Exhibit No. 1**
**Page 10 of 83**

- o on or prior to the Closing Date, the Purchase Price, less the cash Closing Payment of $14 million, shall be deemed to be paid upon a full and final release, satisfaction in full and expungement of all claims by Celsius against the Debtors (except for the Excluded Claims, as defined below), including, but not limited to, (i) any and all claims, including administrative claims and unliquidated claims, set forth in Celsius's proof of claim numbers 425 and 497, and (ii) all claims asserted in the Celsius Administrative Claim Motion (collectively, the "**Released Claims**").[6]

- In exchange, the Debtors will:

  - o unequivocally, fully, irrevocably and forever release the Core POCs, and the Debtors shall not have any right to assert the Core POCs (whether affirmatively or as a defense) to offset the Excluded Claims; and

  - o subject to certain conditions set forth in the PSA:

    - ▪ sell the Purchased Assets (including, among other things, the Cedarvale Facility, Personal Property, and Meter Holding Interests) free and clear of all liens, claims, and encumbrances (other than, with respect to the Cedarvale Facility, Permitted Title Exceptions); and

    - ▪ Grant Celsius the License to use the Licensed Materials;

- Upon consummation of the Celsius Settlement, the Debtors shall assume and assign to Celsius, and Celsius shall assume from the Debtors, the Transferred Contracts.

  - o The Debtors shall pay any and all monetary liabilities in connection with the assumption and assignment of the Transferred Contracts that must be satisfied pursuant to section 365 of the Bankruptcy Code (the "**Cure Costs**"). As set forth on the cure schedule attached hereto as **Exhibit 5**, the Debtors assert that no cure amounts are owed in connection with the assumption of the Transferred Contracts.

- As further set forth in the PSA, the Debtors will use commercially reasonable efforts to cause Meter Holding to qualify for the Electric Reliability Council of Texas's Four Coincident Peak program. In addition, the Debtors shall enter into the Amended TNMP Contract,[7] which (i) will be included as a Transferred Contract to be assumed and

---

[6] The following claims will remain outstanding: (i) the secured claims of approximately $54 million in principal, plus prepetition and postpetition interest, and other unliquidated amounts set forth on proofs of claim 428, 434, 436, 439, 469, 494, 495, 496 filed by Celsius US Holding LLC, and (ii) the claims asserted on Celsius's behalf on proofs of claim 379 and 526 filed by U.S. Bank National Association (items (i) and (ii) together, the "**Excluded Claims**").

[7] As defined in the PSA. The Amended TNMP Contract amends or restates that that certain Transmission/Substation Facility Extension Agreement, between Seller and Texas New Mexico Power Company, dated August 20, 2021 (the "**TNMP Contract**"). As described further therein, the Amended TNMP will be in the same form of the

11

assigned to Celsius, and (ii) will provide that the Cedarvale Facility shall be allocated at least 215 megawatts of power at the consummation of the Celsius Settlement, and Celsius shall be entitled to any and all future capacity, if any, allocated to the Cedarvale Facility or the substation at the Cedarvale Facility.

- If the PSA is terminated through no fault of the Debtors and solely by a default by Celsius under the PSA, the Debtors may pursue a remedy for specific performance of Celsius's obligations to require Celsius to purchase the Purchased Assets or to otherwise perform actions required of Celsius thereunder; if the PSA is terminated through no fault of Celsius and solely by a default by the Debtors under the PSA, Celsius may pursue a remedy for specific performance of the Debtors' obligations to require the Debtors to sell the Purchased Assets or to otherwise perform actions required of the Debtors thereunder.

22.     Consummation of the Celsius Settlement is conditioned upon, among other things, (i) the approval of the Celsius Settlement by the Court and (ii) an order from the court in the Celsius Chapter 11 Cases approving the Celsius Settlement.

## Relief Requested Should Be Granted

23.     By this Motion, the Debtors seek the Court's approval of (i) the Celsius Settlement pursuant to section 9019 of the Bankruptcy Rules, (ii) the sale of Purchased Assets and granting of the license of the Licensed Materials pursuant to section 363 of the Bankruptcy Code, and (iii) the assumption and assignment of the Transferred Contracts pursuant to section 365 of the Bankruptcy Code.

## I.     The Celsius Settlement Is Fair, Reasonable, and in the Best Interest of the Debtors' Estates

24.     Bankruptcy Rule 9019(a) provides that "[o]n motion by the [debtors in possession] and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).  Further, pursuant to Bankruptcy Rule 9019(a), a bankruptcy court may approve a compromise or settlement so long as the proposed settlement is fair, reasonable, and in

---

TNMP and has substantially the same terms other than the megawatts of power to be provided at the Cedarvale Facility.

WEIL:\99226237\18\39031.0011

the best interests of the estate. *See Off. Comm. of Unsecured Creditors v. Moeller (In re Age Refin., Inc.)*, 801 F.3d 530, 540 (5th Cir. 2015). Ultimately, approval of a compromise is within the discretion of the bankruptcy court. *See United States v. AWECO, Inc. (In re AWECO, Inc.)*, 725 F.2d 293, 297 (5th Cir. 1984); *Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 602 (5th Cir. 1980) (citations omitted) (decided under the Bankruptcy Act). Settlements are considered a "normal part of the process of reorganization" and a "desirable and wise method[] of bringing to a close proceedings otherwise lengthy, complicated, and costly." *Rivercity*, 624 F.2d at 602–03 (citing *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424–25 (1968)).

25.      The Fifth Circuit has established a three-factor balancing test under which bankruptcy courts analyze proposed settlements. *Id.* The factors courts consider are: "(1) the probability of success in litigating the claim subject to settlement, with due consideration for the uncertainty in fact and law; (2) the complexity and likely duration of litigation and any attendant expense, inconvenience, and delay; and (3) all other factors bearing on the wisdom of the compromise." *See Age Refin.*, 801 F.3d at 540 (internal citations omitted).

26.      Under the rubric of the third factor, the Fifth Circuit has specified two additional factors that bear on a decision to approve a proposed settlement. First, the Court should consider "the paramount interest of creditors with proper deference to their reasonable views." *Id.*; *Conn. Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortg. Corp.)*, 68 F.3d 914, 917 (5th Cir. 1995). Second, the Court should consider the "extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion." *Age Refin.*, 801 F.3d at 540; *Foster Mortg.*, 68 F.3d at 918 (citations omitted).

27.      Generally, the role of the bankruptcy court is not to decide the issues in dispute when evaluating a settlement. *Watts v. Williams*, 154 B.R. 56, 59 (S.D. Tex. 1993). Rather,

WEIL:\99226237\18\39031.0011

the court should determine whether the settlement as a whole is fair and equitable. *Protective Comm. for Indep. S'holders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968).

28.     The Debtors bear the burden of establishing that the balance of the above factors leads to a fair and equitable compromise vis-à-vis the Celsius Settlement. *In re Allied Props., LLC*, 2007 WL 1849017, at *4 (Bankr. S.D. Tex. June 25, 2007) (citing *In re Lawrence & Erausquin, Inc.*, 124 B.R. 37, 38 (Bankr. N.D. Ohio 1990)); *see also In re GHR Cos., Inc.*, 50 B.R. 925, 931 (Bankr. D. Mass. 1985). "The burden is not high"; rather, the Debtors "***need only show that [their] decision falls within the 'range of reasonable litigation alternatives.*'" *In re Allied Props., LLC*, 2007 WL 1849017, at *4 (emphasis added) (citing *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983)); *see also Cook v. Waldron*, 2006 WL 1007489 at *4 (S.D. Tex. Apr. 18, 2006).

29.     Here, weighing the foregoing factors demonstrates that the Celsius Settlement is reasonable and supports finding that the Debtors' entry into the Celsius Settlement is in the best interest of creditors and other stakeholders.

30.     First, the likelihood of success of litigating against Celsius all the issues and disputes underlying the Automatic Stay Motion, the Core Administrative Claim Motion, the Rejection Motion, the Core POCs, the Celsius Hosting POCs, the Celsius Administrative Claim Motion, and the Summary Judgment Briefing is uncertain. Celsius has asserted substantial claims against the Debtors' estates, including approximately $112 million in prepetition claims, $1.5 million in postposition claims, $194 million in rejection damages, and $4.7 million in postpetition administrative expense claims, plus any unspecified and unliquidated amounts. Although the Debtors believe they have strong arguments that could substantially reduce the amount of Celsius's claims against the Debtors' estates, there is litigation risk of losing on certain of these claims if the Court finds that certain damages limitations provisions did not apply to Celsius's various claims.

14

Debtors' Exhibit No. 1
Page 14 of 83

The Debtors' ability to prevail on their claims against Celsius in the Celsius Chapter 11 Cases is also uncertain. In addition, if a resolution were not reached, the parties would need to litigate the competing claims in both chapter 11 cases to judgment that involve complex factual and legal issues. This would entail significant discovery, additional briefing, and preparation for trial or other evidentiary hearings, and would take several months to complete, if not more. As set forth in the Sullivan Declaration, the Debtors estimate that it could cost the Debtors' estates between $4-6 million in litigation expenses if these issues were fully litigated to judgment. Even if the Debtors' claims against Celsius were successfully litigated and resulted in allowed claims in the Celsius Chapter 11 Cases, the Debtors' recovery on account of such claims remains uncertain and depends on the ultimate outcome of the Celsius Chapter 11 Cases and the classification and treatment of each of the claims asserted by the Debtors. Accordingly, the certainty of outcome realized by entry into the Celsius Settlement provides significant benefits to the Debtors and their estates.

31.     Second, the Celsius Settlement is the product of good-faith, arms-length bargaining between the Debtors and Celsius, each of which were represented by counsel. The Parties have already expended a significant amount of time and resources litigating disputes in each other's bankruptcy cases. The Parties have also exchanged a number of proposals and counter-proposals for the terms of the Celsius Settlement and the PSA.

32.     Third, the Celsius Settlement is reasonable and is in the best interests of the Debtors' estates. The Celsius Settlement provides the Debtors with (i) $14 million in cash and (ii) the full and final satisfaction and release of claims of all of Celsius's claims against the Debtors (except for the Excluded Claims), including approximately $112 million in prepetition claims, $1.5 million in postposition claims, $194 million in rejection damages, and $4.7 million in postpetition administrative expense claims, plus any unspecified and unliquidated amounts. As further

15

described below and set forth in the Bros Declaration, the Celsius Settlement allows the Debtors to sell the Purchased Assets and License the Licensed Materials, and the Debtors believe that the value they will receive in exchange for the Purchased Assets and the grant of the License to use the Licensed Materials pursuant to the Celsius Settlement significantly exceeds the value it would otherwise realize if the Cedarvale Facility was sold to a third party, as evidenced by the Debtors' previous efforts to sell the Cedarvale Facility earlier on in these chapter 11 cases.

33.    Accordingly, the Celsius Settlement should be approved.  In addition, as more fully set forth below, because the entry into the Celsius Settlement constitutes a sound exercise of the Debtors' business judgment, the Debtors, their respective current members, managers, officers, directors, employees, advisors, professionals or agents, shall have or incur no liability to the estates or any holder of a claim against or interest in the Debtors for any act or omission in connection with, related to, or arising out of the negotiations of the Celsius Settlement contemplated thereunder, other than liability of the Debtors arising out of or relating to any willful misconduct or fraud, in each case as determined by a court of competent jurisdiction.

## II.    Sale of the Purchased Assets and the Grant of the License to the Licensed Materials under the Celsius Settlement Is A Sound Exercise of Debtors' Business Judgment and Should Be Approved "Free and Clear"

### I.    The Sale and License Transactions Should be Approved as an Exercise of the Debtors' Sound Business Judgment

34.    Section 363(b) of the Bankruptcy Code authorizes a debtor in possession to "use, sell, or lease, other than in the ordinary course of business, property of the estate," after notice and a hearing.  The Fifth Circuit recognizes that a debtor may use property of the estate outside the ordinary course of business under this provision if there is a good business reason for doing so.  *See, e.g.*, *ASARCO, Inc. v. Elliott Mgmt. (In re ASARCO, L.L.C.)*, 650 F.3d 593, 601 (5th Cir. 2011) ("[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor,

16

Debtors' Exhibit No. 1
Page 16 of 83

creditors, and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business.") (quoting *In re Cont'l Air Lines, Inc.*, 780 F.3d 1223, 1226 (5th Cir. 1986)); 441 B.R. 813, 830 (Bankr. S.D. Tex. 2010); *GBL Holding Co., Inc. v. Blackburn/Travis/Cole, Ltd. (In re State Park Bldg. Grp., Ltd.)*, 331 B.R. 251, 254 (Bankr. N.D. Tex. 2005).

35.     Once the Debtors articulate a good business reason, "the business judgment rule . . . 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'"  *In re S.N.A. Nut Co.*, 186 B.R. 98, 102 (Bankr. N.D. Ill. 1995); *see also Integrated Res.*, 147 B.R. at 656; *Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp.* (*In re Johns-Manville Corp.*), 60 B.R. 612, 615–16 (Bankr. S.D.N.Y. 1986) ("[A] presumption of reasonableness attaches to a debtor's management decisions.").

36.     The Debtors have a sound business justification for selling the Purchased Assets and granting the License to the Licensed Materials pursuant to the Celsius Settlement.  First, the Debtors believe they are receiving fair market value for the Purchased Assets under the Celsius Settlement.  Before the Petition Date, the Debtors determined that three of their facilities, including the Cedarvale Facility, may not be essential to the Debtors' go-forward business plan.  These facilities would require a material amount of additional capital expenditure in order to become fully operational, and the Debtors had identified other low-cost, high-reward opportunities to further develop other existing infrastructure.  The Debtors believed that they would both improve their near-term liquidity and maximize long-term value by selling the Cedarvale Facility.  As a result, the Debtors commenced a formal marketing process to sell these three facilities along with certain equipment located at such facilities, which lasted approximately 8 months from and after October 2022 (collectively, the "**Previous Marketing Process**").  The Debtors and their advisors

17

**Debtors' Exhibit No. 1**
**Page 17 of 83**

contacted a total of forty-six (46) parties who might be interested in one or more of the non-core facilities being marketed, including the Cedarvale Facility. Ultimately, following discussions with certain parties who submitted indications of interests, the Debtors determined that either (i) the received indication of interests were of insufficient value and/or (ii) the potential purchasers did not have sufficient funds to complete the purchase. As described in Bros Declaration, the Previous Marketing Process was a series of fair marketing processes for obtaining the highest and best offer and sale of the Purchased Assets for the benefit of the Debtors' estates and their stakeholders, and the fair and reasonable consideration to be received from Celsius allows the Debtors and their estates to maximize the value received for the Purchased Assets as part of the Celsius Settlement. The sale of the Purchased Assets pursuant to the Celsius Settlement will provide a greater recovery for the Debtors' estates than would otherwise be available under any other alternative transaction. As such, the Debtors' determination to sell the Purchased Assets and the grant the License to the Licensed Materials pursuant to the Celsius Settlement is a valid and sound exercise of the Debtors' business judgment.

37.     Second, the grant of the License to the Licensed Materials is an integral part of the sale of the Purchased Assets, which allows Celsius and any subsequent operators to continue to develop the Cedarvale Facility to full operation. The sale of the Purchased Assets and the grant of the License to the Licensed Materials are also integral parts of the Celsius Settlement, which resolves significant commercial disputes between the Parties by providing the full release and settlement of the Released Claims asserted by Celsius against the Debtors and all the Core POCs asserted by the Debtors against Celsius. As established above, the Celsius Settlement avoids costly and protracted litigation and mediation over the issues and disputes underlying the Automatic Stay Motion, the Core Administrative Claim Motion, the Rejection Motion, the Core POCs, the Celsius Hosting POCs, the Celsius Administrative Claim Motion, and the Summary Judgment Briefing.

18

Accordingly, entry into the Celsius Settlement, including the sale of the Purchased Assets and the grant of the License to the Licensed Materials thereunder, is a sound exercise of the Debtors' business judgment and should be approved.

> II.     *Adequate and Reasonable Notice of the Sale of the Purchased Assets Are Provided*

38.     This Motion (a) informs interested parties of the deadlines for objecting to the Celsius Settlement, and (b) otherwise includes all information relevant to parties interested in, or affected by, the Celsius Settlement.  Notice of this Motion will be provided to any party entitled to notice pursuant to Bankruptcy Rule 2002 and 6004 any other party entitled to notice pursuant to Bankruptcy Local Rule 9013-1(d), and cause to be published on the website of the Debtors' claims and noticing agent, Stretto, Inc. (https://cases.stretto.com/corescientific).  Accordingly, adequate and reasonable notice of the sale of the Purchased Assets and the Celsius Settlement will be provided to all interested parties.

> III.    *Sale of the Purchased Assets Should Be Approved "Free and Clear" Under Section 363(f) of the Bankruptcy Code*

39.     Section 363(f) of the Bankruptcy Code permits the Debtors to sell assets free and clear of all liens, claims, interests, charges, and encumbrances (with any such liens, claims, interests, charges, and encumbrances attaching to the net proceeds of the sale with the same rights and priorities therein as in the sold assets).  As section 363(f) of the Bankruptcy Code is stated in the disjunctive, when proceeding pursuant to section 363(f), it is only necessary to meet one of the five conditions of section 363(f).  *In re Nature Leisure Times, LLC*, No. 06-41357, 2007 WL 4554276, at *3 (Bankr. E.D. Tex. Dec. 19, 2007) ("The language of § 363(f) is in the disjunctive such that a sale free and clear of an interest can be approved if any one of the aforementioned conditions contained in § 363(f) are satisfied.").

19

**Debtors' Exhibit No. 1**
**Page 19 of 83**

40.     Additionally, the Court also may authorize the sale of a debtor's assets free and clear of any liens pursuant to section 105 of the Bankruptcy Code, even if section 363(f) did not apply.  *See In re Trans World Airlines, Inc.*, No. 01–0056 (PJW), 2001 WL 1820325, at *3 (Bankr. D. Del. Mar. 27, 2001) ("[B]ankruptcy courts have long had the authority to authorize the sale of estate assets free and clear even in the absence of § 363(f)."); *see also Volvo White Truck Corp. v. Chambersburg Beverage, Inc. (In re White Motor Credit Corp.)*, 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987) ("Authority to conduct such sales [free and clear of liens] is within the court's equitable powers when necessary to carry out the provisions of Title 11.").

41.     The Debtors believe that one or more of the conditions of section 363(f) of the Bankruptcy Code will be satisfied with respect to the transfer of the Purchased Assets pursuant to the Celsius Settlement.  For example, the DIP Lenders have consented to the sale of the Purchased Assets free and clear under section 363(f)(2) of the Bankruptcy Code.  In addition, to the extent the Debtors have a bona fide dispute with respect to claims, liens, or other alleged interests in the Purchased Assets with certain holders of asserted interests in the Purchased Assets, a sale free and clear may proceed pursuant to section 363(f)(4) of the Bankruptcy Code.

IV.     *The Celsius Settlement Has Been Proposed in Good Faith and Without Collusion, and Celsius Will Be a "Good Faith Buyer"*

42.     Pursuant to section 363(m) of the Bankruptcy Code, a good-faith purchaser is one who purchases assets for value, in good faith, and without notice of adverse claims. *O'Dwyer v. O'Dwyer (In re O'Dwyer)*, 611 F. App'x 195, 200 (5th Cir. 2015); *Mark Bell Furniture Warehouse, Inc. v. D.M. Reid Assocs., Ltd. (In re Mark Bell Furniture Warehouse), Inc.*, 992 F.2d 7, 9 (1st Cir. 1993); *In re Willemain v. Kivitz*, 764 F.2d 1019, 1023 (4th Cir. 1985); *see also In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986) (to constitute lack of good faith, a party's conduct in connection with the sale must usually amount to fraud, collusion between the

20

Debtors' Exhibit No. 1
Page 20 of 83

buyer and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders).

43.     In other words, a party would have to show fraud or collusion between the successful bidder and the debtor-in-possession or trustee or other bidders in order to demonstrate a lack of good faith.  An appropriate characterization of good faith in a bankruptcy sale is a lack of "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."  *TMT Procurement Corp. v. Vantage Drilling Co. (In re TMT Procurement Corp.)*, 764 F.3d 512, 521 (5th Cir. 2014) (quoting *Bleaufontaine, Inc. v. Roland International (In re Bleaufontaine, Inc.)*, 634 F.2d 1383, 1388 n.7 (5th Cir. 1981)).

44.     Celsius is a "good faith" purchaser within the meaning of section 363(m) of the Bankruptcy Code, and terms of the Celsius Settlement were negotiated at arms-length and in good faith without any collusion or fraud.[8]  In addition, the Previous Marketing Process was designed to produce a fair, transparent, and competitive market-check process, but the Debtors did not receive any indication of interests during the Previous Marketing Process that yields higher or better value for the Purchased Assets.  The consideration provided by Celsius for the Purchased Assets reflects the fair market value of such assets.  Accordingly, Celsius is a good-faith purchaser of the Purchased Assets under the Celsius Settlement and is entitled to the full protections of the Bankruptcy Code.

---

[8] Section 363(m) provides that, "[t]he reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease or property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal."  11 U.S.C. § 363(m).

WEIL:\99226237\18\39031.0011

III.     **The Debtors' Entry into the Amended TNMP Contract and Assumption and Assignment of the Transferred Contracts Is a Reasonable Exercise of Debtors' Sound Business Judgment and in the Best Interests of Estates**

45.     The Court should authorize the Debtors to (i) enter into the Amended TNMP Contract pursuant to section 363 of the Bankruptcy Code, and (ii) assume and assign the Transferred Contracts to Celsius pursuant to section 365 of the Bankruptcy Code.

I.     *Entry into the Amended TNMP Contract Is A Reasonable Exercise of the Debtors' Sound Business Judgment*

46.     Although entering into or amending power transmission, distribution, and substation facility agreements generally falls within the Debtors' ordinary course of business, out of an abundance of caution and in satisfaction of a condition to the effectiveness of such agreement, the Debtors seek the Court's authority under section 363(b) of the Bankruptcy Code to enter into the Amended TNMP Contract.

47.     As established above, section 363(b) of the Bankruptcy Code authorizes a debtor in possession to "use, sell, or lease, other than in the ordinary course of business, property of the estate," after notice and a hearing.  The Fifth Circuit recognizes that a debtor may use property of the estate outside the ordinary course of business under this provision if there is a good business reason for doing so.  *See, e.g.*, *In re ASARCO* at 601 (5th Cir. 2011).  Once the Debtors articulate a good business reason, "the business judgment rule . . . 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'"  *See, e.g.*, *In re S.N.A. Nut Co.* at 102.

48.     Entry into the Amended TNMP Contract, which amends the TNMP Contract and will be subsequently assigned to Celsius as a Transferred Contract, is an integral part of the sale of the Purchased Assets and the Celsius Settlement and is necessary for the Debtors to

WEIL:\99226237\18\39031.0011

**Debtors' Exhibit No. 1**
**Page 22 of 83**

be able to obtain a fair market value for the Purchased Assets for the benefit of the Debtors' estates

and their stakeholders.  Entry into the Amended TNMP Contract reflects a sound exercise of a

valid business judgement by the Debtors and should be approved pursuant to section 363 of the

Bankruptcy Code.

> II.   *Assumption and Assignment of the Transferred Contracts Is A Reasonable Exercise of the Debtors' Sound Business Judgment*

49.   Pursuant to section 365(a), a debtor in possession, "subject to the court's

approval, may assume or reject any . . . executory contract or unexpired lease of the debtor."

Although the Bankruptcy Code does not define the term "executory contract," the Supreme Court

has noted that an executory contract is "a contract where neither party has finished performing."

*In re Avianca Holdings S.A.*, 618 B.R. 684, 695 (Bankr. S.D.N.Y. 2020) (citing *Mission Prod.

Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1657 (2019)); *Stewart Title Guar. Co. v. Old

Republic Nat'l Title Ins. Co.*, 83 F.3d 735, 741 (5th Cir. 1996) ("Although the Bankruptcy Code

does not define 'executory contract,' generally an agreement is considered executory 'if at the time

of the bankruptcy filing, the failure of either party to complete performance would constitute a

material breach of the contract, thereby excusing the performance of the other party.'") (quoting

*In re Murexco Petorleum, Inc.*, 15 F. 3d 60, 62 (5th Cir. 1994)).   This allows the debtor in

possession to maximize the value of its estate by assuming executory contracts or unexpired leases

that benefit the estate and by rejecting those that do not.   *In re Nat'l Gypsum Co.*, 208 F.3d 498,

504–05 (5th Cir. 2000).

50.   Furthermore, section 365(b)(1) of the Bankruptcy Code requires that any

outstanding defaults under the executory contracts to be assigned must be cured or that adequate

assurance be provided that such defaults will be promptly cured.  Section 365(f) of the Bankruptcy

Code provides that a debtor may assign an executory contract only if adequate assurance of future

WEIL:\99226237\18\39031.0011

Debtors' Exhibit No. 1
Page 23 of 83

performance by the assignee is provided, whether or not there has been a default under the contract. *See* 11 U.S.C. § 365(f)(2).  The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction."  *See Carlisle Homes, Inc. v. Azzari* (*In re Carlisle Homes, Inc.*), 103 B.R. 524, 538 (Bankr. D.N.J. 1988); *see also In re Natco Indus., Inc*., 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (finding that adequate assurance of future performance does not mean absolute assurance that debtor will thrive and pay rent); *In re Bon Ton Rest. & Pastry Shop, Inc.,* 53 B.R. 789, 803 (Bankr. N.D. Ill. 1985) ("Although no single solution will satisfy every case, the required assurance will fall considerably short of an absolute guarantee of performance").  Among other things, adequate assurance may be given by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned.  *See In re Bygaph, Inc.*, 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (noting that adequate assurance of future performance is present when the prospective assignee of a lease has financial resources and expressed a willingness to devote sufficient funding to the business to give it a strong likelihood of succeeding).

51.     Once the statutory predicates to assumption and assignments are satisfied, the Debtors' decision to assume, assume and assign, or reject an executory contract or unexpired lease must only satisfy the "business judgment rule" and will not be subject to review unless such decision is clearly an unreasonable exercise of such judgment.  *See, e.g.*, *Richmond Leasing Co. v. Cap. Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985) (applying a business judgment standard to debtor's determination to assume an unexpired lease); *COR Route 5 Co. v. Penn Traffic Co. (In re Penn Traffic Co.)*, 524 F.3d 373, 383 (2d Cir. 2008) (explaining that the business judgment test "rather obviously presupposes that the estate will assume a contract only where doing so will be to its economic advantage"); *In re Del Grosso*, 115 B.R. 136, 138 (Bankr. N.D. Ill. 1990) ("[T]he

24

standard to be applied for approval of the assumption [of an executory contract] is the business judgment standard. . . .").

52.     The "business judgment" standard requires only a showing that either assumption or rejection of the executory contract or unexpired lease will benefit the debtor's estate. *See In re Idearc Inc.*, 423 B.R. 138, 162 (Bankr. N.D. Tex. 2009) (stating that the business judgment standard only "requires a showing that the proposed course of action will be advantageous to the estate." (citation omitted)).   In applying the business judgment standard, bankruptcy courts give deference to a debtor's decision to assume or reject executory contracts. *See, e.g.*, *In re Pisces Energy, LLC*, Case No. 09-36591-H5-11, 2009 WL 7227880, at *6 (Bankr. S.D. Tex. Dec. 21, 2009) ("Courts apply the 'business judgment test,' which requires a showing that the proposed course of action will be advantageous to the estate and the decision be based on sound business judgment.").   Furthermore, under the business judgment standard, "[a] debtor's decision to reject an executory contract must be summarily affirmed unless it is the product of 'bad faith, or whim or caprice.'"   *In re Pilgrim's Pride Corp.*, 403 B.R. at 422 (citing *Wheeling–Pittsburgh Steel Corp. v. W. Penn Power Co.* (*In re Wheeling–Pittsburgh Steel Corp.*), 72 B.R. 845, 849–50 (Bankr. W.D. Pa. 1987)).

53.     Here, all statutory predicates to assumption and assignment of the Transferred Contracts under section 365 are satisfied.   First, the Transferred Contracts are "executory contracts" within the meaning of section 365 of the Bankruptcy Code because all parties involved have material ongoing obligations under these agreements as of the Petition Date. Under each Transferred Contract, among other obligations, each counterparty remains obligated to continue to provide electricity, construction infrastructure for the electricity distribution, or internet services, as applicable, and the Debtors have the obligation to continue the payments for such services and/or other material non-monetary obligations to the applicable counterparty.

25

Debtors' Exhibit No. 1
Page 25 of 83

Second, the Cure Costs under the Transferred Contracts are $0.[9]  Third, Celsius will provide adequate assurance of its future performance because (1) pursuant to the Celsius Settlement, Celsius will be responsible for performing all of the Debtors' obligations under the Transferred Contracts that become due from and after the consummation of the Celsius Settlement, and (2) after the consummation of the Celsius Settlement, Celsius and any subsequent operator will need the Transferred Contracts to develop the Cedarvale Facility to full operation.

54.     Additionally, the assumption and assignment of the Transferred Contracts is a proper exercise of the Debtors' business judgment.  The assumption and assignment of these Contracts to Celsius is an integral part of the sale of the Purchased Assets and the Celsius Settlement and is necessary for the Debtors to be able to obtain a fair market value for the Purchased Assets for the benefit of the Debtors' estates and their stakeholders.

55.     For the foregoing reasons, the Court should authorize the Debtors to assume and assign the Transferred Contracts under the Celsius Settlement.  In addition, to facilitate the assumption and assignment of the Transferred Contracts, the Debtors further request that the Court find that all anti-assignment provisions in the Transferred Contracts, whether such provisions expressly prohibit or have the effect of restricting or limiting assignment of such contract or lease, to be unenforceable under section 365(f) of the Bankruptcy Code.[10]

---

[9] The Debtors' estimate of the Cure Costs are provided in Schedule 1 of the Assumption and Assignment Notice, attached to this Motion as **Exhibit 5**.

[10] Section 365(f)(1) provides in part that, "notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease[.]"  11 U.S.C. § 365(f)(1).  Section 365(f)(3) further provides that, "[n]otwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law that terminates or modifies, or permits a party other than the debtor to terminate or modify, such contract or lease or a right or obligation under such contract or lease on account of an assignment of such contract or lease, such contract, lease, right, or obligation may not be terminated or modified under such provision because of the assumption or assignment of such contract or lease by the trustee."  11 U.S.C. § 365(f)(3).

WEIL:\99226237\18\39031.0011

## Emergency Consideration is Requested

56.     The Debtors seek relief on an emergency basis. The Debtors are working to bring approximately $14 million in additional funds into the estate for the immediate benefit of the Debtors and their stakeholders.  The Debtors seek to enter into and consummate the Celsius Settlement as soon as possible in order to maximize benefits for the Debtors and their estates.  The Debtors believe that emergency consideration of this Motion is necessary and appropriate.

## Reservation of Rights

57.     Except to the extent that this Motion is granted, nothing contained in this Motion or any actions taken by the Debtors pursuant to the relief granted is intended or should be construed as: (i) an admission as to the validity of any claim against the Debtors, or (ii) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law.

## Notice

58.     Notice of this Motion will be provided to any party entitled to notice pursuant to Bankruptcy Rule 2002 and any other party entitled to notice pursuant to Bankruptcy Local Rule 9013-1(d).

## No Previous Request

59.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

27

**Debtors' Exhibit No. 1**
**Page 27 of 83**

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated:  September 15, 2023
            Houston, Texas

Respectfully submitted,

   /s/  Alfredo R. Pérez
WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (15776275)
Clifford W. Carlson (24090024)
700 Louisiana Street, Suite 1700
Houston, Texas  77002
Telephone: (713) 546-5000
Facsimile:  (713) 224-9511
Email:  Alfredo.Perez@weil.com
             Clifford.Carlson@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Ray C. Schrock (admitted *pro hac vice*)
Ronit J. Berkovich (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Email:  Ray.Schrock@weil.com
             Ronit.Berkovich@weil.com


*Attorneys for Debtors*
*and Debtors in Possession*

28

**Debtors' Exhibit No. 1**
**Page 28 of 83**

## Certificate of Service

I hereby certify that on September 15, 2023, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.


___/s/ Alfredo R. Pérez_____
Alfredo R. Pérez

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | **Chapter 11** |
| | § | |
| **CORE SCIENTIFIC, INC.,** *et al.,* | § | **Case No. 22-90341 (DRJ)** |
| | § | |
| | § | **(Jointly Administered)** |
| Debtors.[1] | § | |
| | § | |

**EMERGENCY ORDER APPROVING (I) GLOBAL SETTLEMENT BETWEEN
DEBTORS AND CELSIUS, (II) SALE OF CEDARVALE FACILITY
AND RELATED ASSETS, (III) ASSUMPTION AND ASSIGNMENT
OF TRANSFERRED CONTRACTS AND (IV) GRANTING RELATED RELIEF**

Upon the emergency motion, dated September 15, 2023 (the "**Motion**"),[2] of Core

Scientific Operating Company f/k/a Core Scientific, Inc. ("**Core**") and its debtor affiliates, as

debtors and debtors in possession (collectively, the "**Debtors**"), seeking approval of (i) the global

settlement of all disputes and claims (except for the Excluded Claims, as defined in the Motion)

between the Debtors and Celsius Mining LLC and certain of its affiliates (collectively, "**Celsius**")

(together with the Debtors, the "**Parties**", and such settlement, the "**Celsius Settlement**"[3]), on the

terms set forth in that certain Purchase and Sale Agreement, dated as of September [●], 2023 (the

"**PSA**", and together with all other agreements, documents, instruments, deliverable thereunder or

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions, VII, LLC (3198). The Debtors' corporate headquarters and service address is 210 Barton Springs Road, Suite 300, Austin, Texas 78704.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion, the PSA, or the Plan.

[3] For the avoidance of doubt, all terms of the PSA are incorporated as part of the Celsius Settlement; any reference to the Celsius Settlement also includes the transactions contemplated under the PSA and the terms thereof.

attached thereto or referenced therein, and as may be amended, modified, and supplemented, the "**Transaction Documents**") attached to the Motion as **Exhibit 2** and the other Transaction Documents, (ii) the sale of the Purchased Assets[4] to Celsius free and clear of all liens, claims, and encumbrances (other than Permitted Title Exceptions[5]), (iii) in accordance with the terms of the Transaction Documents, the Debtors granting Celsius the License to use the Licensed Materials[6], (iv) the Debtors' entry into the Amended TNMP Contract and assumption and assignment of certain executory contracts and agreements identified in Exhibit B of the PSA (collectively, the "**Transferred Contracts**"), and (v) granting related relief, as more fully set forth in the Motion; and upon consideration of the *Declaration of Adam Sullivan in Support of Debtors' Emergency Motion for Order Approving (I) Global Settlement Between Debtors and Celsius, (II) Sale of Cedarvale Facility and Related Assets, (III) Entry into the Amended TNMP Contract and Assumption and Assignment of Transferred Contracts, and (IV) Granting Related Relief* (the "**Sullivan Declaration**") and the *Declaration of Michael Bros in Support of Debtors' Emergency Motion for Order Approving (I) Global Settlement Between Debtors and Celsius, (II) Sale of Cedarvale Facility and Related Assets, (III) Entry into the Amended TNMP Contract and Assumption and Assignment of Transferred Contracts, and (IV) Granting Related Relief* (the "**Bros Declaration**"); and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §1334; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that this Court may enter a final order consistent with Article III of the United States Constitution; and it appearing that venue

---

[4] As defined in the PSA.

[5] As defined in the PSA and in accordance with section 4(d) of the PSA.

[6] Each as defined in the Motion.

**Debtors' Exhibit No. 1**
**Page 31 of 83**

is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided, and it appearing that no other or further notice need be provided; and upon the Debtors and Celsius having agreed to the terms of the Transaction Documents with respect to the sale of the Purchased Assets; and the Court having reviewed the Motion and its Exhibits; and all objections, if any, to the Motion having been withdrawn, resolved, or overruled on the merits; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors and their respective estates and creditors; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing; and the Court having found that proper and adequate notice of the Motion and hearing thereon has been given and that no other or further notice is necessary; it is HEREBY FOUND AND DETERMINED THAT:

      A.    **Findings and Conclusions.**  The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

      B.    **Jurisdiction.**  The Court has jurisdiction to hear and determine the Motion and to grant the relief requested in the Motion pursuant to 28 U.S.C. § 1334.  Without limiting the generality of the foregoing, (i) this Court has nonexclusive jurisdiction to approve the Celsius Settlement, (ii) this Court has exclusive jurisdiction to [7]enforce the terms of the Celsius Settlement

---

[7] [NTD to K&E – Section 33(b) of the PSA says Core's bankruptcy court has exclusive jurisdiction to enforce the PSA]

and to decide any dispute which may arise or result from, or be connected with, the Celsius Settlement and any breach or default hereunder; and (iii) this Court has exclusive *in rem* jurisdiction over the Purchased Assets pursuant to 28 U.S.C. § 1334(e), as such Purchased Assets are property of the Debtors' chapter 11 estates, and, as a result of such jurisdiction, this Court has all necessary power and authority to grant the relief contained herein.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b), and as such, this Court has the authority to enter a final order.

C.      **Venue.**  Venue of these chapter 11 cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

D.      **Statutory Predicates.**  The statutory and legal predicates for the relief requested in the Motion are sections 105, 363, and 365 of the Bankruptcy Code and Rules 2002, 4001, 6004, 6006, 9006, 9007, 9008, 9013, 9014, and 9019 of the Bankruptcy Rules.

E.      **Notice and Opportunity to Object.**  As evidenced by the affidavits of service, supplemental affidavits of service, and/or certificates of publication previously filed with the Court (Docket Nos. [●]), proper, timely, adequate, and sufficient notice of the Motion, the contracts to be potentially assumed and assigned in connection with the Celsius Settlement, including the Transferred Contracts, and the deadlines related thereto was provided in accordance with sections 102(1), 363, and 365 of the Bankruptcy Code, and Bankruptcy Rules 2002, 6003, 6004, 6006, and 9014, to each party entitled to such notice, including, as applicable: (a) the United States Trustee for Region 7 (Attn: Jayson Ruff & Alicia Barcomb); (b) (i) Choate, Hall & Stewart LLP, Two International Place, 34th Floor, Boston, Massachusetts 02110 (Attn: John Ventola), counsel to the DIP Lenders, (ii) Paul Hastings LLP, 200 Park Avenue, New York, NY 10066 (Attn: Kristopher M. Hansen and Sayan Bhattacharyya), counsel to the Ad Hoc Noteholder Group,

(iii) Willkie Farr & Gallagher LLP, 787 Seventh Avenue New York, NY 10019 (Attn: Brett H. Miller, Todd M. Goren, and James H. Burbage), counsel to the Creditors' Committee, (iv) Vinson & Elkins LLP, 1114 Avenue of the Americas, 32nd Floor, New York, NY 10036 (Attn: David S. Meyer, Lauren R. Kanzer, and Zachary A. Paiva), counsel to the Equity Committee; (c) the Debtors' 30 largest unsecured creditors (on a consolidated basis);  (d) all entities known to have asserted a lien or security interest against any of the Purchased Assets; (e) all potential parties previously identified or solicited and any additional parties who have previously expressed an interest to the Debtors or their advisors in potentially acquiring the Purchased Assets; (f) all other known parties with any interest in the Purchased Assets; (g) all known creditors of the Debtors, including counterparties to the Transferred Contracts; (h) the Securities and Exchange Commission; (i) the Internal Revenue Service; (j) all other applicable government agencies to the extent required by the Bankruptcy Rules or the Local Rules; (k) all state attorneys' general in states where the Purchased Assets are located; (l) municipalities in which the Purchased Assets are located; (m) all affected federal, state, and local regulatory and taxing authorities; (n) those parties entitled to notice pursuant to Local Rule 9013-1(d); and (q) those persons who have formally appeared in these chapter 11 cases and requested service pursuant to Bankruptcy Rule 2002.  With respect to entities whose identities are not reasonably ascertained by the Debtors, filing of the Motion and the supplement notices of filing, affidavits of service, supplemental affidavits of service (Docket Nos. [●]), was, and is deemed, sufficient and reasonably calculated under the circumstances to reach such entities.  The notices described above and in the Motion were good, sufficient, and appropriate under the circumstances and reasonably calculated to reach and apprise all known and unknown holders of the liens, claims, and encumbrances, and no other or further

notice of the Motion, the Celsius Settlement, the potential assumption and assignment of the Transferred Contracts, or the related Cure Costs (as defined in the Motion) is, or shall be, required.

F.      Service was provided to all known parties in interest, including any party with one or more alleged preferential purchase rights contained in any Transferred Contract (the "**Preferential Purchase Rights**"), and any party with one or more rights based on any alleged approval or consent right or anti-assignment provision contained in any Transferred Contract (the "**Consent Rights**") with a reasonable and adequate opportunity to object.

G.      The Debtors served notice substantially in the form attached to the Motion as **Exhibit 5** (the "**Assumption and Assignment Notice**") on all parties required to receive such notice, and such parties have been afforded a reasonable and fair opportunity to file an objection to the assumption and/or assignment of any Transferred Contract (a "**Contract Objection**").

H.      The notice of the Motion is good, sufficient, and appropriate under the circumstances, and no other or further notice of the Motion, the assumption and assignment of the Transferred Contracts, the Celsius Settlement, the Cure Costs (as defined in the Motion), the deadlines to submit Contract Objections, the deadline to submit objections to the Motion, and all other deadlines related thereto is or shall be required.

I.      **Assets Are Property of the Estate.**  The Purchased Assets sought to be sold and assigned by the Debtors to Celsius pursuant to the Celsius Settlement are property of the Debtors' estates and title thereto is vested in the Debtors' estates.

J.      **Licensed Materials**. The Debtors have the right to grant to Celsius the License to use the Licensed Materials in accordance with the Transaction Documents.

K.      **Fair, Reasonable, and In the Best Interests of the Estate.** As demonstrated by the Motion and the Sullivan Declaration, the Debtors have carried their burden

**Debtors' Exhibit No. 1**
**Page 35 of 83**

to prove that the Celsius Settlement is fair, reasonable, and in the best interests of the estate and the stakeholders. The Debtors have demonstrated (i) the uncertainty of probability of success and recovery in litigating the claims against and asserted by Celsius, (ii) the complexity and lengthy duration of litigation and significant expenses that would be incurred thereunder, and (iii) that the Celsius Settlement is the product of good-faith, arms-length bargaining between the Debtors and Celsius. As set forth below, through good-faith, arms-length negotiations, the Debtors have received sufficient value under the Celsius Settlement and showed sound business justification for the Celsius Settlement.

L.     **Sufficiency of Marketing.** As demonstrated by the Motion and the Bros Declaration, the Debtors and their professionals adequately marketed the Purchased Assets and conducted a fair and comprehensive sale process. The Previous Marketing Process (as defined in the Motion) was non-collusive and provided a full, fair, and reasonable opportunity for any contacted party to make an offer to purchase the Purchased Assets, and the indications of interests received thereunder show that the Debtors obtained a fair market value for the Purchased Assets under the Celsius Settlement, and there was no other transaction available or presented that would have yielded a higher or better value for the Purchased Assets. The Previous Marketing Process undertaken by the Debtors and their professionals and each of their respective agents and other representatives with respect to the Purchased Assets was adequate and appropriate and reasonably calculated to maximize the value for the benefit of all of the Debtors' stakeholders in all respects.

M.     **Fair Market Value of the Purchased Assets and Licensed Materials.** Pursuant to the Transaction Documents, the Debtors and Celsius have agreed that the Purchase Price for (i) the Purchased Assets, (ii) the License to use the Licensed Materials, and (iii) a full and final satisfaction and release of the Core POCs (as defined in the Motion) shall be $45 million,

which shall be paid through (i) a $14 million cash payment by Celsius to the Debtors (the "**Closing Payment**") and (ii) a full and final release, satisfaction in full, and expungement of all of the Released Claims (as defined in the Motion).[8]

N.      The Debtors determined, in a valid and sound exercise of their business judgment and after the robust and extensive Previous Marketing Process, the transactions contemplated by the Celsius Settlement provide a fair market value of the Purchased Assets.  The Debtors have demonstrated that (i) the consideration received by the Debtors under the Celsius Settlement represents a fair market value for the Purchased Assets, (ii) the Celsius Settlement and the consummation thereon presents the best opportunity to realize the maximum value of the Purchased Assets, and (iii) the Debtors' entry into and consummation of the Celsius Settlement is a sound exercise of the Debtors' business judgment.

O.      **Business Justification.**  The Debtors have demonstrated that entry into and consummation of the Celsius Settlement constitute the Debtors' sound exercise of business judgment, and such acts are in the best interests of the Debtors, their estates, stakeholders, and all parties in interest.  The Court finds that the Debtors have articulated good and sufficient business reasons justifying (i) the sale of the Purchased Assets to Celsius, (ii) the full and final satisfaction and release of the Core POCs,  and (iii) the grant of the License to Celsius to use the Licensed Materials, each pursuant to the terms and conditions set forth in the Celsius Settlement.

P.      The Debtors have also demonstrated that it is an exercise of their sound business judgment to enter into the Amended TNMP Contract and assume and assign the Transferred Contracts to Celsius in connection with the consummation of the Celsius Settlement, and the entry into the Amended TNMP Contract and the assumption and assignment of the

---

[8] For the avoidance doubt, the Excluded Claims remain outstanding pursuant to the Celsius Settlement.

**Debtors' Exhibit No. 1
Page 37 of 83**

Transferred Contracts are in the best interests of the Debtors, their estates, their stakeholders, and other parties in interest. The Transferred Contracts being assigned to Celsius, including the Amended TNMP Contract, are an integral part of the Purchased Assets under the Celsius Settlement and, accordingly, their assumption and assignment is reasonable and maximizes value for the Debtors' estates.

Q. **Fiduciary Duties.** The Debtors' decision to enter into and consummate the Celsius Settlement constitutes a proper exercise of the fiduciary duties of the Debtors and their directors and officers. Because the entry into and consummation of the Celsius Settlement constitute the Debtors' exercise of sound business judgment, the Debtors, their respective current and former members, managers, officers, directors, employees, advisors, professionals or agents (collectively, the "**Released Debtor Parties**"), shall have or incur no liability to the estates or any holder of a claim against or interest in the Debtors for any act or omission in connection with, related to, or arising out of the negotiations of the Celsius Settlement contemplated thereunder, provided that no Released Debtor Party shall be released for (i) any liability of the Debtors arising out of or relating to any willful misconduct or fraud committed by such Released Debtor Party, in each case as determined by this Court, or (ii) any obligation under the Transaction Documents, which shall remain in full force and effect in accordance with their terms.

R. **Corporate Authority.** The Debtors (i) have full corporate or other organizational power and authority to consummate the Celsius Settlement and all other documents contemplated thereby, (ii) have all of the power and authority necessary to consummate the Celsius Settlement, and (iii) have taken all corporate or other organizational action necessary to authorize and approve the Celsius Settlement and any actions required to be performed by the Debtors to

**Debtors' Exhibit No. 1**
**Page 38 of 83**

consummate the Celsius Settlement.  No further consents or approvals of the Debtors are required for the Debtors to consummate the Celsius Settlement.

S.      **Arms-Length Sale and Buyer's Good Faith.**  The Celsius Settlement was negotiated and is undertaken by the Debtors and Celsius at arms-length, without collusion or fraud, and in good faith within the meaning of section 363(m) of the Bankruptcy Code.  Celsius recognizes that the Debtors were free to deal with any other party interested in acquiring the Purchased Assets.  All payments and considerations to be made by Celsius and other agreements or arrangements entered into by Celsius in connection with the Celsius Settlement have been disclosed, and Celsius has not violated section 363(n) of the Bankruptcy Code by any action or inaction.  As a result of the foregoing, Celsius is a "good faith" buyer within the meaning of section 363(m) of the Bankruptcy Code, and as such, is entitled to all of the protections afforded thereby, including in the event this Order or any portion thereof is reversed or modified on appeal.

T.      **No Fraudulent Transfer.**  The total consideration provided by Celsius pursuant to the Celsius Settlement constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, and any other applicable law, and may not be avoided under section 363(n) of the Bankruptcy Code or any other applicable law.  The Celsius Settlement is not being entered into and consummated, for the purpose of hindering, delaying or defrauding creditors of the Debtors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof, or the District of Columbia, or any other applicable law.  Neither the Debtors nor Celsius has entered into the PSA or is consummating the Celsius Settlement with any fraudulent or otherwise improper purpose.

U.      **Free and Clear Transfer Required by Celsius**.  Celsius would not have entered into the PSA and would not consummate the Celsius Settlement, thus adversely affecting the Debtors, their estates, their creditors, their employees, and other parties in interest, if the sale of the Purchased Assets was not free and clear of all liens, claims, and encumbrances (other than, with respect to the Cedarvale Facility, the Permitted Title Exceptions) or if Celsius would be liable for such liens, claims, and encumbrances, including, without limitation and as applicable, liabilities that are not expressly assumed by Celsius as set forth in the Celsius Settlement or pursuant to this Order.

V.      The transfer of the Purchased Assets and the Celsius Settlement is a legal, valid, and effective transfer of all of the legal, equitable, and beneficial right, title, and interest in and to the Purchased Assets free and clear of all liens, claims, and encumbrances (other than Permitted Title Exceptions).

W.      **Satisfaction of Section 363(f) Standards.**  The Debtors are authorized to sell the Purchased Assets free and clear of all liens, claims, and encumbrances (other than Permitted Title Exceptions) (with the liens, claims, and encumbrances, attaching to the proceeds of the sale with the same nature, validity, priority, extent, perfection, and force and effect that the liens, claims, and encumbrances encumbered the Purchased Assets immediately prior to the entry of this Order) because, with respect to each creditor or other person or entity asserting a lien, claim, and encumbrance, one or more of the standards set forth in section 363(f)(l)-(5) of the Bankruptcy Code has been satisfied.  Each creditor or other person or entity asserting a lien, claim, or encumbrance in the Purchased Assets (i) has, subject to the terms and conditions of this Order, consented to the Celsius Settlement or is deemed to have consented to the Celsius Settlement, (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such lien,

11

claim, or encumbrance, and/or (iii) otherwise falls within the provisions of section 363(f) of the Bankruptcy Code. Those holders of the liens, claims, and encumbrances who did not object (or who ultimately withdrew their objections, if any) to the Celsius Settlement or the Motion are deemed to have consented to the Motion and Celsius Settlement pursuant to section 363(f)(2) of the Bankruptcy Code. Creditors or other persons or entities asserting a lien, claim, or encumbrance against the Purchased Assets could be compelled in a legal or equitable proceeding to accept money satisfaction of such lien, claim, or encumbrance.

X.   **No Successor Liability**.   Upon the consummation of the Celsius Settlement, Celsius shall be deemed not to: (i) be the successor of Seller or any of its Affiliates by reason of any theory of law or equity, (ii) have, *de facto* or otherwise, merged with or into the Debtors, (iii) be a mere continuation or substantial continuation of the Debtors or (iv) be liable or have any liability for any acts or omissions of the Debtors in the conduct of their businesses or arising under or related to the Purchased Assets.

Y.   **Transferred Contracts.**   Each and every provision of the Transferred Contracts or applicable non-bankruptcy law that purports to prohibit, restrict, or condition, or could be construed as prohibiting, restricting, or conditioning assignment of any Transferred Contract or Transferred Contract has been or will be satisfied or is otherwise unenforceable under section 365 of the Bankruptcy Code. All counterparties of the Transferred Contracts that did not timely file an objection to the assumption and/or assignment of the Transferred Contract(s) to which they are a counterparty in accordance with the Assumption and Assignment Notice are deemed to consent to the assumption and assignment by the Debtors of their Transferred Contract to Celsius, and Celsius shall enjoy all of the rights and benefits and assume all obligations under each such Transferred Contract as of the applicable date of assumption and assignment without the necessity

**Debtors' Exhibit No. 1**
**Page 41 of 83**

of obtaining such non-debtor party's consent to the assumption and assignment thereof.  All counterparties of the Transferred Contracts for which the deadline to file a Contract Objection has not passed as of the date of entry of this Order, and that did not or do not timely file such an objection prior to the applicable deadline, shall be deemed to consent to the assumption and assignment by the Debtors of their Transferred Contract to Celsius effective as of the entry of this Order, and Celsius shall enjoy all of the rights and benefits and assume all obligations under each such Transferred Contract as of the applicable date of assumption and assignment without the necessity of obtaining such non-debtor party's consent to the assumption and assignment thereof. If a Contract Objection timely filed with respect to a Transferred Contract in accordance with the Assumption and Assignment Notice cannot be resolved by the parties, the Debtors are authorized, but not required, to (i) assume and assign the applicable Transferred Contract pending resolution of the Contract Objection, or (ii) in accordance with section 17 of the PSA and subject to Celsius's consent, amend <u>Exhibit B</u> of the PSA.  Upon the assumption and assignment to Celsius in accordance with the terms of the Celsius Settlement, the Transferred Contracts shall be deemed valid and binding, in full force and effect in accordance with their terms, subject to the provisions of this Order, and shall be assigned and transferred to Celsius, notwithstanding any provision in the Transferred Contracts prohibiting or otherwise restricting assignment or transfer, and the Debtors, their estates, or any of their affiliates, predecessors, successors, or assigns, shall have no further liability or obligation under the Transferred Contracts, and Celsius shall assume all obligations under the Transferred Contracts.  To the extent any Transferred Contract is not an executory contract within the meaning of section 365 of the Bankruptcy Code, it shall be transferred to Celsius in accordance with the terms of the Transaction Agreements and Celsius shall be solely responsible for the performance of the obligations of the Debtors under such

**Debtors' Exhibit No. 1**
**Page 42 of 83**

Transferred Contracts that become due from and after, solely to the extent relating to facts, occurrences or other circumstances first arising after the consummation of the Celsius Settlement.

Z.   **Cure Costs and Adequate Assurance.**  Pursuant to the Celsius Settlement, any and all Cure Costs will be paid by the Debtors.  Celsius has demonstrated adequate assurance of future performance of each Transferred Contract within the meaning of section 365 of the Bankruptcy Code that is assumed by Celsius or any of its permitted assignees to which such Transferred Contract is assumed and assigned by the Debtors, including a promise to perform the Debtors' obligations under such Transferred Contract for periods upon and after the consummation of the Celsius Settlement.  The Cure Costs are deemed the amounts necessary to "cure" (within the meaning of section 365(b)(l) of the Bankruptcy Code) all "defaults" (within the meaning of section 365(b) of the Bankruptcy Code) under such Transferred Contracts that are assumed. Celsius's promise under the PSA to perform the obligations under the Transferred Contracts as of the consummation of the Celsius Settlement shall constitute adequate assurance of future performance under such Transferred Contracts upon and after the consummation of the Celsius Settlement.  Any objections to the Cure Costs, to the extent not otherwise resolved, are hereby overruled.  To the extent that any counterparty failed to timely object to its Cure Cost or to raise any other alleged default or breach of contract, such counterparty is deemed to have consented to such Cure Cost and to the assignment of its respective Transferred Contract(s) to Celsius and to have waived any other defaults or breaches.  The Court finds that with respect to all Transferred Contracts, the payment of the Cure Costs as provided in the PSA is reasonable and appropriate and is deemed to fully satisfy the Debtors' obligations under sections 365(b) and 365(f) of the Bankruptcy Code.  Accordingly, all of the requirements of sections 365(b) and 365(f) of the Bankruptcy Code have been satisfied for the assumption by the Debtors, and the assignment by

**Debtors' Exhibit No. 1**
**Page 43 of 83**

the Debtors to Celsius, of each Transferred Contract upon the consummation of the Celsius Settlement.

AA.   **Assets Assignable and Licensable.**   Each and every provision of the documents governing the Purchased Assets or the Licensed Materials, as applicable, or applicable non-bankruptcy law that purports to prohibit, restrict, or condition, or could be construed as prohibiting, restricting, or conditioning either: (a) sale or assignment of any of the Purchased Assets or (b) the grant of the License to use any of the Licensed Materials, if any, have been or will be satisfied or are otherwise unenforceable under section 365 of the Bankruptcy Code.

BB.   **Time of the Essence.**   Time is of the essence in consummating the Celsius Settlement.  In order to maximize the value of the Purchased Assets, it is essential that the sale of the Purchased Assets occur within the time constraints set forth in the PSA.  Good and sufficient reasons for approval of the PSA have been articulated by the Debtors.  The Debtors and Celsius, being a good faith buyer under section 363(m) of the Bankruptcy Code, may close the transactions contemplated by the Celsius Settlement at any time after entry of this Order subject to the terms and conditions of the PSA.

CC.   **No Sub Rosa Plan.**   The Celsius Settlement does not constitute a *sub rosa* chapter 11 plan.  The Celsius Settlement neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates a chapter 11 plan for the Debtors.

DD.   **Final Order; Immediate Effect.**   This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Order, and, sufficient cause

**Debtors' Exhibit No. 1**
**Page 44 of 83**

having been shown, waives any such stay, and expressly directs entry of judgment as set forth herein.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT:**

1. **Objections Overruled.** All objections, if any, with regard to the relief sought in the Motion that have not been withdrawn, waived, settled, or otherwise dealt with herein are hereby overruled on the merits, with prejudice. All objections to the entry of this Order or to the relief granted herein that were not timely filed are hereby forever barred.

2. **Approval of the Celsius Settlement**. This Order shall only be effective once the Settlement and Purchase Order[9] is entered in the Celsius chapter 11 cases, 22-10964 (MG) (Bankr. S.D.N.Y. Jul 13, 2022) (the "**Celsius Chapter 11 Cases**"). Pursuant to Bankruptcy Rule 9019 and Bankruptcy Code sections 105(a), 362(d), 363, and 365, the Motion is granted and the Celsius Settlement, including the Transaction Documents and the transactions contemplated thereunder, is approved. The Debtors have satisfied all requirements of Bankruptcy Rule 9019 and Bankruptcy Code sections 363 and 365, and all other requirements and standards applicable to a sale outside the ordinary course of business, free and clear of all liens, claims, and encumbrances (other than Permitted Title Exceptions).

3. **Approval of the Sale of the Purchased Assets and the License to the Licensed Materials.** Pursuant to sections 105(a), 363(b), 363(f), and 365 of the Bankruptcy Code, the Debtors are authorized, subject to entry of the Settlement and Purchase Order in the Celsius Chapter 11 Cases, to take any and all reasonable actions necessary to consummate the Celsius Settlement, including the sale, transfer, and assignment of all of the Debtors' right, title, and interest in, to, and under the Purchased Assets and the grant of the License under the Licensed

---

[9] As defined in the PSA.

Materials, in each case to Celsius, in each case free and clear of all liens, claims, and encumbrances (other than Permitted Title Exceptions) in accordance with the terms of the Transaction Documents and this Order.  The relevant Debtors, as well as their directors, officers, employees, and agents, are authorized to execute, deliver, and perform their obligations under and comply with the terms of the Celsius Settlement and to consummate the Celsius Settlement, including by taking any and all actions as may be reasonably necessary or desirable to implement the Celsius Settlement pursuant to and in accordance with the terms and conditions of the Transaction Documents and under this Order.

4.      The relevant Debtors, their affiliates, and their respective directors, officers, employees, and agents, are authorized to execute and deliver, and authorized to perform under, consummate, and implement all additional notices, assumptions, conveyances, releases, acquittances, instruments and documents that may be reasonably necessary or desirable to implement the Celsius Settlement, including the sale and transfer of the Purchased Assets, and the assumption and assignment of all the Transferred Contracts to Celsius, and to take all further actions as may be (i) reasonably requested by Celsius for the purpose of selling, transferring, granting, conveying, and conferring to Celsius, or reducing to Celsius's possession, the Purchased Assets and/or (ii) necessary or appropriate to the performance of the obligations contemplated by the Celsius Settlement.

5.      **Power Matters.**  The Debtors are authorized to (i) transfer certain assets and necessary qualifications into Meter Holding as part of the sale of the Purchased Assets to Celsius and (ii) perform all other actions reasonably necessary or appropriate with respect to enrolling and qualifying Meter Holding for the Electric Reliability Council of Texas's Four Coincident Peak program.  The Debtors are further authorized to enter into the Amended TNMP

Contract by either (i) amending or restating that certain Transmission/Substation Facility Extension Agreement, between the Debtors and Texas New Mexico Power Company, dated August 20, 2021 (the "**TNMP Contract**") or (ii) rejecting the TNMP Contract and entering into a replacement TNMP Contract, provided that (i) the Amended TNMP Contract shall be on Texas New Mexico Power Company's standard form and (ii) shall not, without Celsius's reasonable approval, modify any term of the TNMP Contract except to provide that the Cedarvale Facility shall be allocated at least 215 megawatts of power at the consummation of the Celsius Settlement and that Celsius shall be entitled to any and all future capacity, if any, allocated to the Cedarvale Facility or the substation at the Cedarvale Facility.

6.      Celsius shall provide the Debtors reasonable access, which access shall be supervised by Celsius, to the Cedarvale Facility in the six (6) months following the consummation of the Celsius Settlement in order for the Debtors, solely at their own cost and expense, to remove the Excluded Equipment[10] in accordance with the PSA.

7.      **Mutual Release of Claims.**   Upon the consummation of the Celsius Settlement, each of (a) the Released Claims (as defined in the Motion) are hereby deemed fully released, expunged, dismissed, disallowed and/or withdrawn with prejudice; (b) the Proofs of Claims Nos. 425 and 497 filed by Celsius against the Debtors and the Celsius Administrative Claim Motion (Docket No. 801) will be deemed withdrawn with prejudice as of the date of the consummation of the Celsius Settlement; (c) the releases set forth in Section 15 of the PSA shall become effective; *provided* that the Excluded Claims (as defined in the PSA) shall not be released hereunder; and (d) other than as set forth herein, Celsius shall not be entitled to receive any other recovery in connection with any claims it has, or could have, asserted in connection with these

---

[10] As defined in the PSA.

**Debtors' Exhibit No. 1**
**Page 47 of 83**

chapter 11 cases or otherwise, other than with respect to the Excluded Claims (as defined in the PSA), the PSA, the other Transaction Documents and the rights and obligations of the Releasing Parties under the Celsius Settlement (including the Transaction Documents).

8.      The Debtors are further authorized, but not directed, to pay, without further order of the Court, whether before, at or after the entry of this Order, any expenses or costs required to be paid to consummate the Celsius Settlement.

9.      Each and every federal, state, local, or foreign government or governmental or regulatory authority, agency, board, bureau, commission, court, department, or other governmental entity is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Celsius Settlement subject to the payment of any filing or other fee imposed under non-bankruptcy law.

10.      Subject to entry of the Settlement and Purchase Order in the Celsius Chapter 11 Cases, Celsius releases and discharges any other claim it has, might have had, or may have (except, for the avoidance of doubt, the Excluded Claims), against the Debtors and their managers, members, officers, directors, employees, partners, agents, representatives, beneficiaries, attorneys, subsidiaries, affiliates, contractors, subcontractors, successors and assigns, whether known or unknown, actual or contingent, foreseen or unforeseen, relating to, arising out of or with respect to (i) the condition of the Purchased Assets, either patent or latent, (ii) Celsius's ability, or inability, to obtain or maintain temporary or final certificates of occupancy, permits or other licenses for the use or operation of the Cedarvale Facility, and/or certificates of compliance or operation of the Cedarvale Facility, (iii) the actual or potential income, or profits, to be derived from the Purchased Assets, (iv) the real estate, or other, taxes or special assessments, now or hereafter payable on account of, or with respect to, the Cedarvale Facility, (v) Celsius's ability or inability to demolish

Debtors' Exhibit No. 1
Page 48 of 83

the improvements or otherwise develop the Land[11], or (vi) any other matter relating to the Purchased Assets.

11.    **Sale and Transfer of Assets Free and Clear.**  Pursuant to sections 105(a), 363(b), 363(f), and 365(b) of the Bankruptcy Code, the Debtors are authorized to sell, and upon the consummation of the Celsius Settlement shall transfer to Celsius all of the Debtors' right, title, and interest in and to, and possession of, the Purchased Assets, title to which shall be vested in Celsius as set forth in the Transaction Documents, and, to the extent provided in the Celsius Settlement, such title to the Purchased Assets shall be transferred to Celsius free and clear of all liens, claims, and encumbrances (other than Permitted Title Exceptions), including:

(a)    liens (including, without limitation, mechanics', materialmans', and other consensual and non-consensual liens and statutory liens) mortgages, restrictions, hypothecations, charges, indentures, loan agreements, instruments, leases, licenses, options, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, judgments, demands, encumbrances, easements, and servitudes;

(b)    interests, obligations, liabilities, demands, guaranties, options, restrictions, and contractual or other commitments;

(c)    rights, including, without limitation, rights of first refusal, rights of offset (except for offsets exercised prior to the Petition Date), contract rights, and recovery;

(d)    decrees of any court or foreign or domestic government entity (to the extent permitted by law);

(e)    charges or restrictions of any kind or nature, including, without limitation, any restriction on the use, transfer, receipt of income or other exercise of any attributes of ownership of the Purchased Assets, including, without limitation, consent of any Person to assign or transfer any of the Purchased Assets;

(f)    debts arising in any way in connection with any agreements, acts, or failures to act, of the Debtors or any of the Debtors' predecessors or affiliates;

---

[11] As defined in the PSA.

(g)    claims (as that term is defined in the Bankruptcy Code), including claims for reimbursement, contribution claims, indemnity claims, exoneration claims, alter-ego claims, environmental claims (to the fullest extent allowed by applicable law), including claims that may be secured or entitled to priority under the Bankruptcy Code, tax claims, reclamation claims, and pending litigation claims; and

(h)    matters of any kind or nature whatsoever, whether at law or in equity and whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or un-matured, material or nonmaterial, disputed or undisputed, whether arising prior to or during the Debtors' bankruptcy cases, and whether imposed by agreement, understanding, law, equity, or otherwise;

in each case, whether in law or in equity, known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, direct or indirect, and whether arising by agreement, understanding, law, equity or otherwise, and whether occurring or arising before, on or after the Petition Date, or occurring or arising prior to the consummation of the Celsius Settlement.  The liens, claims, and encumbrances shall attach to the proceeds with the same nature, validity, priority, extent, perfection, and force and effect that such liens, claims, and encumbrances encumbered the Purchased Assets immediately prior to the consummation of the Celsius Settlement, subject to any claims, defenses, and objections, if any, that the Debtors or their estates may possess with respect thereto.

12.    **Binding Effect of Order.**  Except as set forth in this paragraph and subject to entry of the Settlement and Purchase Order in the Celsius Chapter 11 Cases, this Order and the Celsius Settlement shall be binding in all respects upon the Debtors, their estates, all creditors of the Debtors, holders of equity interests in the Debtors, any holders of the liens, claims, and encumbrances in, against, or on all or any portion of the Purchased Assets (whether known or

**Debtors' Exhibit No. 1**
**Page 50 of 83**

unknown), Celsius (and all successors and assigns of Celsius, subject to approval by the bankruptcy court of the Celsius Chapter 11 Cases), notwithstanding the dismissal of any of the Debtors' cases or any subsequent appointment of any trustees, examiners, "responsible persons," or other fiduciaries in these chapter 11 cases or upon a conversion to case under chapter 7 of the Bankruptcy Code.  If any order under section 1112 of the Bankruptcy Code is entered, such order shall provide, or be deemed to provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that this Order, including the rights granted to Celsius hereunder, shall remain effective and, notwithstanding such dismissal, shall remain binding on parties in interest.  The Celsius Settlement and Settlement and Purchase Order entered in the Celsius Chapter 11 Cases, this Order, and the Debtors' obligations therein and herein shall not be altered, impaired, amended, rejected, discharged, or otherwise affected by any chapter 11 plan proposed or confirmed in these bankruptcy cases, any order confirming any chapter 11 plan, or any subsequent order of this Court without consent of the Debtors and Celsius, which shall not be unreasonably withheld; to the extent of any conflict between this Order or the Celsius Settlement and such future plan or order, the terms of this Order and the Celsius Settlement shall control; *provided*, *however*, that notwithstanding anything to the contrary herein or in any of the Transaction Documents, the Purchase Price of the Purchased Assets should not be binding upon the parties of these chapter 11 cases for any purpose other than the consummation of the Celsius Settlement, including, but not limited to, any claim arising under section 361 of the Bankruptcy Code.

13.     **No Material Modifications.**  The Transaction Documents and any related agreements, documents, or other instruments in effect as of the date hereof may be modified, amended, or supplemented through a written document signed by the parties thereto in accordance with the terms thereof without further order of this Court; *provided*, *however*, that any such

**Debtors' Exhibit No. 1**
**Page 51 of 83**

modification, amendment, or supplement does not have a material or an adverse effect on the Debtors or their estates.  For the avoidance of doubt, all other modifications, amendments, or supplements that have a material or an adverse effect on the Debtors' estates or their creditors shall require Court approval.

14.     **No Bulk Sale.**  No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the Celsius Settlement, the Motion, and this Order.

15.     **Valid Transfer.**   Effective upon the consummation of the Celsius Settlement, the transfer to Celsius of the Debtors' right, title, and interest in the Purchased Assets pursuant to the Celsius Settlement shall be, and hereby is deemed to be, a legal, valid and effective transfer of the Debtors' right, title, and interest in the Purchased Assets, and vests with or will vest in Celsius all right, title, and interest of the Debtors in the Purchased Assets, free and clear of all liens, claims, and encumbrances (other than Permitted Title Exceptions).

16.     **Good Faith Buyer.**  The Celsius Settlement is undertaken by Celsius in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and Celsius has acted without collusion in undertaking the Celsius Settlement.  Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Celsius Settlement shall not affect the release and settlement of the Released Claims and the Core POCs, the validity of the sale of the Purchased Assets to Celsius, and the assumption and assignment by the Debtors of any of the Transferred Contracts, unless such authorization is duly stayed pending such appeal.  Celsius is a buyer in good faith of the Purchased Assets, and is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

17.     The Celsius Settlement and the transactions contemplated thereby cannot be avoided under section 363(n) of the Bankruptcy Code.  None of the Debtors, Celsius, or any of

**Debtors' Exhibit No. 1**
**Page 52 of 83**

their respective affiliates, officers, directors, members, partners, principals, or shareholders (or equivalent) or any of their respective current and former members, managers, officers, directors, employees, advisors, professionals, agents, predecessors, successors or assigns have engaged in any conduct that would cause or permit the consummation of the Celsius Settlement contemplated thereby to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code.

18.    **Governmental Authorization to Effectuate Sale and Assignments.**  Each and every federal, state, and governmental agency or department, and any other person or entity, is hereby authorized to accept any and all documents and instruments in connection with or necessary to consummate the Celsius Settlement.  Except as otherwise provided in this Order, to the greatest extent available under applicable law as of the consummation of the Celsius Settlement, Celsius shall be authorized, as of the consummation of the Celsius Settlement, to operate under any license, permit, registration, and governmental authorization or approval of the Debtors with respect to the Purchased Assets, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been, and hereby are, deemed to be transferred to Celsius upon the consummation of the Celsius Settlement.  No governmental unit may revoke or suspend any lawful right, license, trademark, or other permission relating to the use of the Purchased Assets sold, transferred, or conveyed to Celsius on account of the filing or pendency of these chapter 11 cases or the consummation of the Celsius Settlement.  For the avoidance of doubt, the Celsius Settlement authorized herein shall be of full force and effect, regardless of whether the Debtors or any of their affiliates lack good standing in any jurisdiction in which such entity is formed or is authorized to transact business.

**Debtors' Exhibit No. 1**
**Page 53 of 83**

19.     **Authorization to Assign**.  Notwithstanding any provision of any contract governing the Purchased Assets, including any Transferred Contracts to be assumed and assigned to Celsius as of the closing of the Celsius Settlement, pursuant to section 365(f) of the Bankruptcy Code or applicable non–bankruptcy law that prohibits, restricts, or conditions the assignment of the Purchased Assets, including any Transferred Contract, at or after the consummation of the Celsius Settlement, the Debtors are authorized in accordance with sections 105(a), 363, and 365 of the Bankruptcy Code to (i) sell the Purchased Assets to Celsius and (ii) assume and assign to Celsius the Transferred Contracts to Celsius upon the consummation of the Celsius Settlement, in each case, which assignments shall take place on and be effective upon consummation of the Celsius Settlement.

(a)     There shall be no accelerations, assignment fees, increases, or any other fees charged to Celsius or the Debtors as a result of the assignment of the Purchased Assets or the assumption and assignment of the Transferred Contracts.

(b)     The Debtors have met all of the requirements of section 365(b) of the Bankruptcy Code for each of the Transferred Contracts that are to be assumed and assigned to Celsius upon the consummation of the Celsius Settlement.  Notwithstanding the foregoing, unless required by Celsius under the PSA for the Debtors to assume and assign any Transferred Contract, no Debtor shall be required by the Court to assume and assign any Transferred Contract, and, if no such assumption and assignment occurs, no Cure Costs shall be due and no adequate assurance of future performance shall be required with respect to any such Transferred Contract.

(c)     The Debtors' assumption and assignment of the Transferred Contracts is subject to the consummation of the Celsius Settlement with the Celsius.  To the extent that an objection by a counterparty to any Transferred Contract with respect to the Debtors' assumption and assignment of the Transferred Contracts, including an objection related to the applicable Cure Cost, is not resolved prior to the consummation of the Celsius Settlement, Celsius, may, without any further approval of the Court or notice to any party, elect to (a) not have the Debtors assume and assign such Transferred Contract to it, or (b) have the Debtors postpone the assumption of such Transferred Contract until the resolution of such objection; provided, however, that the Debtors and the relevant non-debtor counterparty under each Transferred Contract shall have authority to compromise, settle, or otherwise resolve

25

any objections to proposed Cure Costs without further order of, or notice to, this Court, with any such agreed upon Cure Costs being paid to the appropriate counterparty by the Debtors as a condition subsequent to such assumption and assignment of the relevant Transferred Contract.

20. **Transferred Contracts**.   Upon the consummation of the Celsius Settlement, subject to the provisions of this Order and in accordance with the PSA, Celsius shall succeed to the entirety of the Debtors' rights and obligations in the Transferred Contracts first arising and attributable to the time period occurring upon the consummation of the Celsius Settlement and shall have all rights thereunder.

(a)     Upon the consummation of the Celsius Settlement, (a) all defaults (monetary and non-monetary) under the Transferred Contracts shall be deemed cured and satisfied in full through the payment of the Cure Costs, (b) no other amounts will be owed by the Debtors, their estates, or, Celsius with respect to amounts first arising or accruing during, or attributable or related to, the period before the consummation of the Celsius Settlement with respect to the Transferred Contracts, and (c) any and all persons or entities shall be forever barred and estopped from asserting a claim against the Debtors, their estates, Celsius, or the Purchased Assets that any additional amounts are due or defaults exist under the Transferred Contracts that arose or accrued, or relate to or are attributable to the period before the consummation of the Celsius Settlement.  The Debtors promise, pursuant to the terms of the PSA, to pay any and all Cure Costs and Celsius's promise to perform the Debtors' obligations under the Transferred Contracts for the period on or after the consummation of the Celsius Settlement shall constitute adequate assurance of Celsius's future performance under the Transferred Contracts being assigned to it as of the consummation of the Celsius Settlement within the meaning of sections 365(b)(l)(C) and (f)(2)(A)-(B) of the Bankruptcy Code.

(b)     Upon assumption of those Transferred Contracts to be assumed by the Debtors and assigned to the Celsius upon the consummation of the Celsius Settlement, such Transferred Contracts shall be deemed valid and binding, in full force and effect in accordance with their terms, subject to the provisions of this Order, and shall be assigned and transferred to Celsius, notwithstanding any provision in such Transferred Contract or other restrictions prohibiting assignment or transfer.   To the extent any Transferred Contract is assumed and assigned to Celsius under this Order, such assumption and assignment will not take effect until the consummation of the Celsius Settlement.   Furthermore, other than the Transferred Contracts, no other contract shall be deemed assumed by the Debtors and/or assigned to Celsius pursuant to section 365 of the Bankruptcy Code.   The

26

failure of the Debtors or Celsius to enforce at any time one or more terms or conditions of any Transferred Contract shall not be a waiver of such terms or conditions, or of the Debtors' and the Celsius's rights to enforce every term and condition of such Transferred Contract.

(c)     All counterparties to the Transferred Contracts shall cooperate and expeditiously execute and deliver, upon the reasonable request of Celsius, and shall not charge the Debtors or Celsius for, any instruments, applications, consents, or other documents which may be required or requested by any public or quasi-public authority or other party or entity to effectuate the applicable transfers in connection with the Celsius Settlement.

21.     Notwithstanding the foregoing, the Debtors may amend the list of Transferred Contracts to add or remove any Transferred Contract to or from such list of Transferred Contracts of the Celsius Settlement in accordance with the terms thereof.

22.     **Cure Costs.** All Cure Costs that have not been waived shall be determined in accordance with this Order and paid by the Debtors, in accordance with the terms of the Celsius Settlement. Assumption and payment of the Cure Costs by the Debtors shall be in full satisfaction and cure of any and all defaults under the Transferred Contracts and is deemed to fully satisfy the Debtors' obligations under sections 365(b) and 365(f) of the Bankruptcy Code. Upon the assumption by a Debtor and the assignment to Celsius of any Transferred Contract, and the payment of any applicable Cure Costs, each non-Debtor counterparty to such Transferred Contract is forever barred, estopped, and permanently enjoined from (i) asserting against the Debtors or Celsius, their affiliates, successors, or assigns, or the property of any of them, any default existing as of the entry date of this Order, and (ii) exercising any rights or remedies against any Debtor or Celsius based on an asserted default that occurred on, prior to, or as a result of, the entry of this Order, including the type of default specified in section 365(b)(1)(A) of the Bankruptcy Code. Celsius has provided adequate assurance of future performance under the Transferred Contracts within the meaning of sections 365(b)(1)(c) and 365(f)(2)(B) of the Bankruptcy Code.

**Debtors' Exhibit No. 1**
**Page 56 of 83**

Accordingly, all of the requirements of sections 365(b) and 365(f) of the Bankruptcy Code have been satisfied for the assumption by the Debtors, and the assignment by the Debtors to Celsius, of each of the Transferred Contracts.

23.    **Contract Objection.**    To the extent a non-Debtor counterparty to a Transferred Contract fails to timely object to a Cure Cost in accordance with the Assumption and Assignment Notice, such Cure Cost has been and shall be deemed to be finally determined and any such non-Debtor counterparty shall be prohibited from challenging, objecting to, or denying the validity and finality of the Cure Cost at any time.  The non-Debtor counterparty to a Transferred Contract is forever bound by the applicable Cure Cost and, upon payment of such Cure Cost as provided herein and in the Celsius Settlement, is hereby enjoined from taking any action against the Debtors or Celsius with respect to any claim for cure under such Transferred Contract.  To the extent no timely Contract Objection has been filed and served with respect to a Transferred Contract, the non-Debtor counterparty to such Transferred Contract is deemed to have consented to the assumption and assignment of such Transferred Contract to Celsius.

24.    **Preferential Purchase Right and Consent Right.**  Without limiting the foregoing, each person or entity who holds or is the beneficiary of a Preferential Purchase Right or Consent Right will be (i) forever barred from objecting to the transfer, sale, assumption, and/or assignment of the Debtors' right, title, and interest in, to and under the Purchased Assets to be sold, assumed, and/or assigned in connection with the Celsius Settlement, free and clear of all liens, claims, and encumbrances, including Consent Rights and Preferential Purchase Rights (other than Permitted Title Exceptions), and from asserting any alleged Preferential Purchase Rights with respect to the Sale Transaction, and (ii) deemed to consent to and approve the transfer, sale, and/or assumption and/or assignment of the Debtors' right, title, and interest in, to and under the

**Debtors' Exhibit No. 1**
**Page 57 of 83**

Purchased Assets free and clear of all liens, claims, and encumbrances, including Consent Rights and Preferential Purchase Rights (other than Permitted Title Exceptions).

25.     **No Successor Liability.**  Celsius has given substantial consideration under the Motion, this Order, and the Celsius Settlement, which consideration shall constitute valid, valuable, and sufficient consideration for the absolution from any potential claims of successor liability of Celsius to the greatest extent allowed by applicable law.

26.     **Surrender of Possession.**  Any and all Purchased Assets in the possession or control of any person or entity, including any vendor, supplier, or employee of the Debtors shall be transferred to Celsius free and clear of all liens, claims, and encumbrances,(other than Permitted Title Exceptions), with such liens, claims, and encumbrances attaching to the proceeds with the same nature, validity, priority, extent, perfection, and force and effect that such liens, claims, and encumbrances encumbered the Purchased Assets immediately prior to the entry of this Order, and shall be delivered to Celsius and deemed delivered upon the consummation of the Celsius Settlement (or such other time as provided in the PSA), with such costs of delivery allocated in accordance with the Celsius Settlement.

27.     **Retention of Jurisdiction.**  The Court retains jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

28.     **Immediate Effect.**     Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing.  In the absence of any person or entity obtaining a stay pending appeal, the Debtors and Celsius are free to consummate the Celsius Settlement at any time pursuant to the terms thereof.

**Debtors' Exhibit No. 1**
**Page 58 of 83**

29. **Failure to Specify Provisions**.  The failure to specifically reference any particular provisions of the PSA or other related documents in this Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Celsius Settlement, including the PSA and other related documents, be authorized and approved in its entirety.

30. **Release of Interests.**  Upon the consummation of the Celsius Settlement, this Order (i) is and shall be effective as a determination that all claims, liens, or encumbrances (other than Permitted Title Exceptions) of any kind or nature whatsoever existing as to the Purchased Assets prior to the entry of this Order have been unconditionally released, discharged, and terminated (with such claims, liens, or encumbrances attaching to the proceeds with the same nature, validity, priority, extent, perfection, force and effect that such claims, liens, or encumbrances encumbered the Purchased Assets immediately prior to the entry of this Order) and that the conveyances described herein have been effected, (ii) is and shall be binding upon and shall govern the acts of all entities, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies or units, governmental departments or units, secretaries of state, federal, state and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Purchased Assets conveyed to Celsius (such entities being referred to as "**Recording Officers**"), and all recorded claims, encumbrances, liens or liabilities (other than Permitted Title Exceptions) against the Purchased Assets shall be deemed stricken from such entities records, official and otherwise. All Recording Officers are authorized and specifically directed to strike recorded

encumbrances, claims, liens, pledges, and other interests against the Purchased Assets recorded prior to the date of this Order. A certified copy of this Order may be filed with the appropriate Recording Officers to evidence cancellation of any recorded encumbrances, claims, liens, pledges, and other interests against the Purchased Assets recorded prior to the entry of this Order. All Recording Officers are hereby directed to accept for filing any and all of the documents and instruments necessary, advisable or appropriate to consummate the transactions contemplated by the PSA, subject to the payment of any filing or other fee imposed under non-bankruptcy law.

31.     **Approval to Release Interests**. All entities, including without limitation all trustees or collateral agents, are authorized and directed to file and/or execute lien releases, including financing statement terminations, mortgage releases or other documents or agreements evidencing release of claims, liens, or encumbrances against or on the Purchased Assets (other than Permitted Title Exceptions). If any person or entity that has filed financing statements, mortgages, mechanic's liens, or other documents or agreements evidencing claims, liens, or encumbrances against or on the Purchased Assets shall not have delivered to the Debtors before the entry of this Order, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all claims, liens, or encumbrances (other than Permitted Title Exceptions) that the person or entity has or may assert with respect to the Purchased Assets, the Debtors and Celsius are hereby authorized to execute and file such statements, instruments, releases, and other documents on behalf of such person or entity with respect to the Purchased Assets. Celsius is hereby authorized to file, register, or otherwise record a certified copy of this Order and the Settlement and Purchase Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all claims,

liens, or encumbrances against the Purchased Assets (other than Permitted Title Exceptions). This Order and the Settlement and Purchase Order are deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department, or office.

32.     **No Effect on Governmental Regulatory Authority.** Nothing in this Order or the Celsius Settlement authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization, or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law. Nothing in this Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Order or to adjudicate any defense asserted under this Order. For the avoidance of doubt, the matters preserved by this paragraph are subject to all rights and defenses available under applicable law.

33.     Nothing in this Order or related documents discharges, releases, precludes, or enjoins: (i) any liability to any governmental unit as defined in 11 U.S.C. § 101(27) ("**Governmental Unit**") that is not a "claim" as defined in 11 U.S.C. § 101(5); (ii) any claim of a Governmental Unit arising on or after consummation of the Celsius Settlement; (iii) any liability to a Governmental Unit under police and regulatory statutes or regulations that any entity would be subject to as the owner or operator of property after consummation of the Celsius Settlement; or (iv) any liability to a Governmental Unit on the part of any Person other than the Debtors. Nor shall anything in this Order enjoin or otherwise bar a Governmental Unit from asserting or enforcing, outside this Court, any liability described in the preceding sentence.

34.     Each and every provision of the Transferred Contracts or applicable non-bankruptcy law that purports to prohibit, restrict, or condition, or could be construed as prohibiting,

**Debtors' Exhibit No. 1**
**Page 61 of 83**

restricting, or conditioning assignment of any Transferred Contract has been or will be satisfied or is otherwise unenforceable under section 365 of the Bankruptcy Code.  All counterparties of the Transferred Contracts that did not or do not timely file an objection to the assumption and assignment of the Transferred Contract(s) to which they are a counterparty are deemed to consent to the assumption and assignment by the Debtors of their Transferred Contract to Celsius, and Celsius shall enjoy all of the rights and benefits and assume all obligations under each such Transferred Contract as of the applicable date of assumption and assignment without the necessity of obtaining such non-debtor party's consent to the assumption or assignment thereof.  All counterparties of the Transferred Contracts for which the deadline to file a Contract Objection has not passed as of the date of entry of this Order, and that did not or do not timely file such an objection prior to the applicable deadline, shall be deemed to consent to the assumption and assignment by the Debtors of their Transferred Contract(s) to Celsius effective as of the entry of this Order, and Celsius shall enjoy all of the rights and benefits and assume all obligations under each such Transferred Contract as of the applicable date of assumption and/or assignment without the necessity of obtaining such non-debtor party's consent to the assumption or assignment thereof. If a Contract Objection timely filed with respect to a Transferred Contract cannot be resolved by the parties, the Debtors may assume and assign the applicable Transferred Contract pending resolution of the Contract Objection.  Upon the assumption and assignment to Celsius and assumption by Celsius in accordance with the terms of the Celsius Settlement, the Transferred Contracts shall be deemed valid and binding, in full force and effect in accordance with their terms, subject to the provisions of the Celsius Settlement and this Order, and shall be assigned and transferred to Celsius, notwithstanding any provision in the Transferred Contracts prohibiting or otherwise restricting assignment or transfer, and the Debtors, their estates, or any of their affiliates,

**Debtors' Exhibit No. 1**
**Page 62 of 83**

predecessors, successors, or assigns, shall have no further liability or obligation under the Transferred Contracts, and Celsius shall assume all obligations under the Transferred Contracts. To the extent any Transferred Contract is not an executory contract within the meaning of section 365 of the Bankruptcy Code, it shall be transferred to Celsius in accordance with the terms of the Celsius Settlement and, other than with respect to, Celsius shall have no liability or obligation for any (i) defaults or breaches under such agreement that relate to acts or omissions that occurred in the period, or otherwise arose, prior to the entry of this Order and (ii) claims, counterclaims, offsets, or defenses (whether contractual or otherwise, including, any right of recoupment) with respect to such Transferred Contract, that relate to any acts or omissions that arose or occurred prior to the entry of this Order.

35.    **Satisfaction of Conditions Precedent.**  Neither Celsius nor the Debtors shall have an obligation to consummate the Celsius Settlement until all conditions precedent in the PSA to each of their respective obligations to close the Celsius Settlement have been satisfied or waived in accordance with the terms of the Celsius Settlement.

36.    **Provisions Non-Severable.**  The provisions of this Order are non-severable and mutually dependent.

37.    **Automatic Stay.**  To the extent applicable, the automatic stay pursuant to section 362(a) of the Bankruptcy Code is hereby lifted solely for purposes of implementing the Celsius Settlement.

38.    **Miscellaneous.**  Pursuant to the Celsius Settlement, Celsius affirms that Core was contractually entitled to pass through power costs to Celsius when Core incurred higher power costs to host Celsius's mining equipment, and that Celsius had a contractual obligation to pay the "power cost pass-through" as invoiced by Core.

**Debtors' Exhibit No. 1**
**Page 63 of 83**

39.     This Order shall be immediately effective and enforceable upon its entry, subject in all respects to the entry of the Settlement and Purchase Order.

40.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.


Dated: [              ], 2023
       Houston, Texas



_____
THE HONORABLE DAVID R. JONES
UNITED STATES BANKRUPTCY JUDGE

**Exhibit 3**

**The Sullivan Declaration**

WEIL:\99226237\18\39031.0011

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| | § | |
| In re: | § | **Chapter 11** |
| | § | |
| **CORE SCIENTIFIC, INC.,** ***et al.,*** | § | **Case No. 22-90341 (DRJ)** |
| | § | |
| | § | **(Jointly Administered)** |
| Debtors.[1] | § | |
| | § | |

## DECLARATION OF ADAM SULLIVAN IN SUPPORT OF
## DEBTORS' EMERGENCY MOTION FOR ORDER APPROVING (I)
## GLOBAL SETTLEMENT BETWEEN DEBTORS AND CELSIUS, (II) SALE
## OF CEDARVALE FACILITY AND RELATED ASSETS, (III) ENTRY INTO
## AMENDED TNMP CONTRACT AND ASSUMPTION AND ASSIGNMENT
## OF TRANSFERRED CONTRACTS AND (IV) GRANTING RELATED RELIEF

I, Adam Sullivan, pursuant to section 1746 of title 28 of the United States Code, hereby declare under penalty of perjury that the following is true to the best of my knowledge, information, and belief:

1.       I am the President and the Chief Executive Officer at Core Scientific Operating Company f/k/a Core Scientific, Inc. ("**Core**", and together with its above-captioned debtor affiliates, the "**Debtors**"). I have served as the President since May 15, 2023 and the interim Chief Executive Officer since July 21, 2023. Before that, starting in September 2017, I held various roles at XMS Capital Partners, most recently the Managing Director and the Head of Digital Assets and Infrastructure Group, where I oversaw over $5 billion of transactions, including

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions, VII, LLC (3198). The Debtors' corporate headquarters and service address is 210 Barton Springs Road, Suite 300, Austin, Texas 78704.

representing Power and Digital Infrastructure Acquisition Corporation in its acquisition of Core Scientific Holding Company in 2021. I hold a Bachelor's of Arts from the University of Rochester.

2.  I make this declaration in support of the *Debtors' Emergency Motion for Order Approving (I) Global Settlement Between Debtors and Celsius, (II) Sale of Cedarvale Facility and Related Assets, (III) Entry into Amended TNMP Contract and Assumption and Assignment of the Transferred Contracts and (IV) Granting Related Relief* (the "**Motion**").[2] Except as otherwise indicated herein, all facts and personal opinion set forth in this declaration (the "**Declaration**") are based on my experience and personal knowledge of the Debtors, their operations and finances, and information learned during the course of my employment. I have also reviewed relevant documents and have received information from conversations with the Debtors' management team, the Debtors' advisors, or employees of the Debtors working directly with me or under my supervision, direction, or control. If called upon to testify, I could and would competently testify to the facts and personal opinions set forth in this Declaration on that basis.

3.  I am familiar with Celsius Mining LLC and certain of its affiliates (collectively, "**Celsius**"), the disputes and litigation between the Debtors and Celsius, and the contemplated settlement between the Debtors and Celsius (the "**Celsius Settlement**"), including (i) that certain Purchase and Sale Agreement, dated as September 14, 2023 (the "**PSA**"), (ii) the Purchased Assets (as defined in the PSA), and (iii) the Licensed Materials (as defined in the PSA). I believe that the Celsius Settlement, including the sale of the Purchased Assets thereunder, is in the Debtors' best interest.

---

[2]  Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

WEIL:\99265132\5\39031.0011

I.      **The Celsius Settlement Is Fair, Reasonable, and in the Best Interest of the Debtors'
        Estates**

       7.      It is my belief that the Celsius Settlement is fair and reasonable and supports
finding that the Debtors' entry into and performance under the Celsius Settlement is in the best
interest of creditors and other stakeholders.

       8.      First, it is my understanding that the likelihood of success of litigating
against Celsius all the issues and disputes underlying the Automatic Stay Motion, the Core
Administrative Claim Motion, the Rejection Motion, the Core POCs, the Celsius Hosting POCs,
the Celsius Administrative Claim Motion, and the Summary Judgment Briefing is uncertain.
Celsius has asserted substantial claims against the Debtors' estates, including approximately $112
million in prepetition claims, $1.5 million in postposition claims, $194 million in rejection
damages, and $4.7 million in postpetition administrative expense claims, plus any unspecified and
unliquidated amounts.  Although the Debtors believe they have strong arguments that could
substantially reduce the amount of Celsius's claims against the Debtors' estates, there is litigation
risk of losing on certain of these claims if the Court finds that certain damages limitations
provisions did not apply to Celsius's various claims.  The Debtors' ability to prevail on their claims
against Celsius in the Celsius Chapter 11 Cases is also uncertain.  In addition, if a resolution were
not reached, the parties would need to litigate the competing claims in both chapter 11 cases to
judgment that involve complex factual and legal issues.  This would entail significant discovery,
additional briefing, and preparation for trial or other evidentiary hearings, and would take several
months to complete, if not more.  I believe it could cost the Debtors' estates between approximately
$4-6 million in litigation expenses if these issues were fully litigated to judgment.  Even if the
Debtors' claims against Celsius were successfully litigated and resulted in allowed claims in the
Celsius Chapter 11 Cases, the Debtors' recovery on account of such claims remains uncertain and
depends on the ultimate outcome of the Celsius Chapter 11 Cases.

3

9.      On the other hand, the Celsius Settlement provides the Debtors with (i) $14 million in cash and (ii) the full and final satisfaction and release of claims of all of Celsius's claims against the Debtors (except for the Excluded Claims), including approximately $112 million in prepetition claims, $1.5 million in postposition claims, $194 million in rejection damages, and $4.7 million in postpetition administrative expense claims, plus any unspecified and unliquidated amounts.  I believe that the value the Debtors will receive under the Celsius Settlement in exchange for the Purchased Assets and the grant of the License to use the Licensed Materials pursuant to the Celsius Settlement significantly exceeds the value it would otherwise realize if the Cedarvale Facility was sold to a third party, as evidenced by the Debtors' previous efforts to sell the Cedarvale Facility earlier on in these chapter 11 cases.  Having assessed and weighed the likelihood of prevailing on various Core POCs and the Released Claims and the significant litigation costs that would be incurred thereunder, compared to the certainty of outcome, the ability to sell the Purchased Assets at a fair market value, and the $14 million of immediate liquidity the Debtors will receive following approval of the Celsius Settlement, I believe the Celsius Settlement provides significant benefits and is in the best interest of the Debtors and their estates.

## II.    The Celsius Settlement Has Been Proposed in Good Faith and Without Collusion, and Celsius Will Be a "Good Faith Buyer"

10.     The Celsius Settlement is the product of extensive good-faith, arm's-length bargaining between the Debtors and Celsius, each of which were represented by counsel.  The Debtors and Celsius have already expended a significant amount of time and money litigating disputes in each other's bankruptcy cases.  Starting in June 2023, the Debtors and Celsius, with the assistance of their perspective advisors, have exchanged numerous mark ups of the term sheet and later the PSA for the Celsius Settlement.  During the meantime, the Debtors have also arranged site visits to the Cedarvale Facility and have cooperated with Celsius for their diligence requests.

4

The Celsius Settlement was not the product of fraud or collusion.  For the same reason, I believe Celsius is a "good faith buyer" for the Purchased Assets under the Celsius Settlement.

### III.    The Celsius Settlement Is A Sound Exercises of Debtors' Business Judgment

11.    The Debtors have a sound business justification for selling the Purchased Assets pursuant to the Celsius Settlement.  First, the Debtors determined that the Cedarvale Facility would not be part of their go-forward business plan before the Debtors' chapter 11 filing and have run a series of fair marketing process for the Purchased Assets (the "**Previous Marketing Process**").  Evidenced by the indication of interests that the Debtors received for the Cedarvale Facility under the Previous Marketing Process, I believe that the consideration realized from the sale of the Purchased Assets pursuant to the Celsius Settlement will provide a greater recovery for the Debtors' estates than would otherwise be available under any other alternative transaction.  The sale of the Purchased Assets and the grant of the License to use the Licensed Materials to Celsius are also integral parts of the Celsius Settlement, which allows the Debtors to avoid significant litigation costs, benefit from the certainty of outcome, and receive $14 million of incremental liquidity.  Similarly, the entry into the Amended TNMP Contract and the assumption and assignment of the Transferred Contracts to Celsius are integral parts of the sale of Purchased Assets to Celsius and the Celsius Settlement, and therefore constitute a sound business justification of the Debtors.

12.    For the foregoing reasons, I believe that the Court should (i) approve the Celsius Settlement, (ii) authorize the Debtors to sell the Purchased Assets and grant the License to use the Licensed Materials to Celsius "free and clear," and, and (iii) authorize the Debtors to enter into the Amended TNMP Contract and assume and assign the Transferred Contracts to Celsius.

WEIL:\99265132\5\39031.0011

I hereby declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated:  September 15, 2023
Bellevue, Washington

Respectfully submitted,

By:     */s/ Adam Sullivan*
          Adam Sullivan
          President and Chief Executive Officer

6

**Exhibit 4**

**The Bros Declaration**

WEIL:\99226237\18\39031.0011

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | § | **Chapter 11** |
|  | § |  |
| **CORE SCIENTIFIC, INC.,** *et al.*, | § | **Case No. 22-90341 (DRJ)** |
|  | § |  |
|  | § | **(Jointly Administered)** |
| Debtors.[1] | § |  |
|  | § |  |

**DECLARATION OF MICHAEL BROS IN SUPPORT OF
DEBTORS' EMERGENCY MOTION FOR ORDER APPROVING (I)
GLOBAL SETTLEMENT BETWEEN DEBTORS AND CELSIUS, (II) SALE
OF CEDARVALE FACILITY AND RELATED ASSETS, (III) ENTRY INTO
AMENDED TNMP CONTRACT AND ASSUMPTION AND ASSIGNMENT
OF TRANSFERRED CONTRACTS AND (IV) GRANTING RELATED RELIEF**

I, Michael Bros, pursuant to section 1746 of title 28 of the United States Code, hereby declare under penalty of perjury that the following is true to the best of my knowledge, information, and belief:

1.     I am the Senior Vice President of Capital Markets & Acquisitions at Core Scientific Operating Company f/k/a Core Scientific, Inc. ("**Core**", and together with its above-captioned debtor affiliates, the "**Debtors**"). I have served in this capacity since January 2022. Before that, starting in December 2018, I was Core's Vice President of Corporate Development. Prior to joining Core, I held various positions at Kayne Anderson from 2014 to 2018 and Merrill Lynch from 2011 to 2014. I hold a Bachelor of Arts from the University of Saint Thomas and a

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions, VII, LLC (3198). The Debtors' corporate headquarters and service address is 210 Barton Springs Road, Suite 300, Austin, Texas 78704.

Master in Business Administration from the University of California, Los Angeles Anderson School of Management.

2. I make this declaration in support of the *Debtors' Emergency Motion for Order Approving (I) Global Settlement Between Debtors and Celsius, (II) Sale of Cedarvale Facility and Related Assets, (III) Entry into Amended TNMP Contract and Assumption and Assignment of the Transferred Contracts and (IV) Granting Related Relief* (the "**Motion**").[2] Except as otherwise indicated herein, all facts and personal opinion set forth in this declaration (the "**Declaration**") are based on my experience and personal knowledge of the Debtors, their operations and finances, discussion with potential buyers, and  information learned during the course of my employment.  I have also reviewed relevant documents and have received information from conversations with the Debtors' management team, the Debtors' advisors, or employees of the Debtors working directly with me or under my supervision, direction, or control. If called upon to testify, I could and would competently testify to the facts and personal opinions set forth in this Declaration on that basis.

3. I am familiar with the Cedarvale Facility (defined below) and the Previous Marketing Process (defined below) and believe that the Previous Marketing Process was a comprehensive sale process and that the sale of the Purchased Assets (as defined in the Motion) to Celsius Mining LLC and certain of its affiliates (collectively, "**Celsius**") under that certain Purchase and Sale Agreement, dated as September 14, 2023 and the contemplated settlement between the Debtors and Celsius (the "**Celsius Settlement**") is in the best interest of the Debtors and their estates.  I further believe that the sale of the Purchased Assets under the Celsius

---

[2]  Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

WEIL:\99239327\8\39031.0011

**Debtors' Exhibit No. 1**
**Page 74 of 83**

Settlement is the best transaction available for the Debtors and therefore maximizes value for the Debtors and their estates.

**Previous Marketing Process**

4.      Prior to the Petition Date, as the Debtors were identifying potential means to improve liquidity to avoid a chapter 11 filing, the Debtors began an informal but robust marketing process for several non-core facilities that the Debtors either own or lease. Specifically, the Debtors began marketing the bitcoin mining facility in development located in Muskogee, Oklahoma (the "**Muskogee Facility**") and reached out to several well-known participants in the bitcoin mining industry, including both U.S.-based and international strategic investors and financial investors. As discussions progressed, certain potential purchasers also began showing interest in the bitcoin mining facility located in Ward County, Texas (the "**Cedarvale Facility**") and the bitcoin mining facility located in Pecos, Texas (the "**Cottonwood Facility**", and collectively with the Muskogee Facility and the Cedarvale Facility, the "**Sale Facilities**").

5.      As part of evaluating capital structure alternatives, the Debtors and their advisors engaged in discussions regarding potential transactions. The Debtors ultimately determined that some or all of the Sale Facilities may not be essential to the Debtors' go-forward business plan because (i) the Sale Facilities would require a material amount of additional capital expenditure in order to become fully operational and (ii) the Debtors had identified low-cost, high-reward opportunities to further develop existing infrastructure. The Debtors believed that they may both improve their near-term liquidity and maximize long-term value by selling the Sale Facilities.

6.      To implement this strategy, the Debtors and their advisors designed a process to solicit interests for the Sale Facilities both as a combined package and on an individual basis. Beginning in October 2022, the Debtors commenced a formal marketing process to sell the

3

Sale Facilities along with certain equipment located at the Sale Facilities (the "**Previous Marketing Process**").  The Debtors and their advisors contacted a broad array of parties that were expected to have an interest and the ability to consummate the purchase of the Sale Facilities on terms acceptable to the Debtors.  Over the course of the next several months, the Debtors and their advisors contacted a total of forty-six (46) parties who might be interested in one or more of the Sale Facilities, including the Cedarvale Facility.

7.       In connection with this solicitation, the Debtors and their advisors prepared, among other things, marketing materials and an electronic data room to provide potential investors and bidders with information upon which to make a proposal.  During this process, twenty-six (26) parties who were interested in one or more of the Sale Facilities executed non-disclosure agreements and twenty-three (23) parties were granted access to the electronic data room, which contained significant diligence and other confidential information about the Sale Facilities.  The interested parties were invited to submit an indication of interest and/or a formal written letter of intent to act as a stalking horse bidder for the sale of the Sale Facilities.

8.       Specifically for the Cedarvale Facility, after the Debtors received indications of interests (the "**IOIs**", and such parties that submitted the IOIs, the "**Potential Purchasers**"), the Debtors and their advisors evaluated the IOIs and analyzed, among other considerations: (i) the structure of the proposed transaction; (ii) the amount of consideration offered; (iii) the assets to be acquired and liabilities to be assumed; (iv) the Potential Purchasers' ability to fund the purchase, and (iv) execution or other risks.  The Debtors also shared the IOIs with the Debtors' major stakeholders, including the lenders under the debtor-in-possession financing facility, advisors to an ad hoc group of the Debtors' convertible notes, and advisors to the official committee of unsecured creditors.  Ultimately, following discussions with the Potential Purchasers, the Debtors determined that either (i) the received IOIs were of insufficient value

4

**Debtors' Exhibit No. 1**
**Page 76 of 83**

and/or (ii) the Potential Purchasers did not have sufficient funds to complete the purchase, which the Debtors and their Advisors relayed to the Potential Purchasers who submitted IOIs for the Cedarvale Facility.  While the Debtors decided to include the Cottonwood Facility in their go-forward business plan, they remained open to any offers that would provide them sufficient value for the Cedarvale Facility and/or the Muskogee Facility.  Prospective bidders, including Celsius, have continued to express interest and stay engaged, which eventually led to the opportunity to sell the Cedarvale Facility and other Purchased Assets to Celsius as part of the Celsius Settlement.

9.      In light of the foregoing, I believe the Previous Marketing Process was a comprehensive sale process for the Sale Facilities, including the Cedarvale Facility.  Even though the Debtors did not receive an acceptable offer for the Cedarvale Facility under the Previous Marketing Process, I believe the comprehensive Previous Marketing Process and the IOIs received thereunder confirms that the consideration  received by the Debtors for the Cedarvale Facility and related assets under the Celsius Settlement (which includes $14 million in cash and release of substantial claims against the Debtors and their estates) is the best transaction available to sell the Cedarvale Facility.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated:  September 15, 2023
Bellevue, Washington

Respectfully submitted,

By:      /s/ Michael Bros
         Michael Bros
         Senior Vice President of Capital Markets &
         Acquisitions

5

**Debtors' Exhibit No. 1
Page 77 of 83**

**Exhibit 5**

**Assumption and Assignment Notice**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| | § | |
| **In re:** | § | **Chapter 11** |
| | § | |
| **CORE SCIENTIFIC, INC.,** *et al.,* | § | **Case No. 22-90341 (DRJ)** |
| | § | |
| **Debtors**[1] | § | **(Jointly Administered)** |
| | § | |

**NOTICE OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**
**TO BE ASSUMED AND ASSIGNED IN CONNECTION WITH THE CELSIUS**
**SETTLEMENT AND THE PROPOSED CURE COSTS WITH RESPECT THERETO**

On September 15, 2023, Core Scientific Operating Company f/k/a Core Scientific, Inc. ("**Core**") and certain of its affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**") filed with the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") a motion (the "**Motion**")[2] seeking, among other things, entry of an order (i) authorizing and approving (a) a global settlement between the Debtors and Celsius Mining LLC and certain of its affiliates (collectively, "**Celsius**", and such settlement the "**Celsius Settlement**"), (b) the sale of the Cedarvale Facility and related assets pursuant to that certain Purchase and Sale Agreement, dated as September 14, 2023, by and between Core and Celsius (the "**PSA**"), (c) in accordance with the terms of the PSA, the grant by the Debtors to Celsius of a perpetual, non-transferable (except as described in Section 14 of the PSA), non-exclusive limited license to use certain of the Debtors' intellectual property in connection with Celsius' use of the Debtors' materials identified in Exhibit K to the PSA, (d) assumption and assignment of certain executory contracts and unexpired leases to Celsius identified in Exhibit B to the PSA, as may be modified or amended (collectively, the "**Transferred Contracts**") and (ii) granting related relief pursuant to sections 363(b), 365(a), and 105(a) of chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), rules 2002 and 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and rule 9013 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Local Rules**").

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisitions, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisition I, LLC (9717); and American Property Acquisitions, VII, LLC (3198). The Debtors' corporate headquarters and service address is 210 Barton Springs Road, Suite 300, Austin, Texas 78704.

[2]  Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion or the PSA.

**You are receiving this Notice because you may be a counterparty to an executory contract or unexpired lease that potentially could be assumed and assigned in connection with the Celsius Settlement.**

<u>**Cure Costs**</u>

In accordance with the Motion, the Debtors are, in connection with the Celsius Settlement, seeking to assume and assign the Transferred Contracts to Celsius.

The Transferred Contracts that may be assumed or assigned in connection with the Celsius Settlement that are relevant to you and the Debtors' good faith calculation of the Cure Costs with respect thereto are set forth on **Schedule A** hereto.

The inclusion of any Transferred Contracts identified on <u>Exhibit B</u> of the PSA does not require or guarantee that such Transferred Contract ultimately will be assumed or assigned. The assumption or assignment of a Transferred Contract is subject to Bankruptcy Court approval. All rights of the Debtors and Celsius with respect thereto are reserved.

<u>**Cure or Adequate Assurance Objections**</u>

Any objection to the proposed assumption, assumption and assignment, or potential designation of a Transferred Contract identified on <u>Exhibit B</u> of the PSA, the subject of which objection is the Debtors' proposed Cure Costs or the provision of adequate assurance of future performance by Celsius (a "**Contract Objection**") or any other grounds, must (i) identify the applicable Transferred Contracts; (ii) state, with specificity, the legal and factual bases for the objection, including the cure amount the counterparty believes is required to cure defaults under the relevant Transferred Contract; and (iii) include any appropriate documentation in support thereof, and must be filed with the Bankruptcy Court and served on counsel for the Debtors (detailed on the signature page hereto) and counsel for Celsius (Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, IL 60654, Attn: Patrick J. Nash, P.C (patrick.nash@kirkland.com), Ross M. Kwasteniet, P.C. (ross.kwasteniet@kirkland.com), Steve Toth (steve.toth@kirkland.com), and Christopher S. Koenig (chris.koenig@kirkland.com) (collectively, the "**Objection Recipients**") by no later than **[●], September [●], 2023 at [●]:00 p.m. (prevailing Central Time)** (the "**Contract Objection Deadline**").

If a timely Contract Objection is not resolved by the parties 24 hours following the Contract Objection Deadline, the Debtors will request that the Bankruptcy Court set a hearing (the **Hearing**") as soon as possible thereafter to consider the Motion and any pending Contract Objections or other objections, and the amount to be paid or reserved with respect to such objection shall be determined by the Bankruptcy Court at the Hearing; <u>provided</u> <u>that</u> the parties first shall use commercially reasonable, good faith efforts to resolve such objection without further Bankruptcy Court intervention.

**IF A COUNTERPARTY FAILS TO FILE WITH THE COURT AND SERVE ON THE OBJECTION RECIPIENTS A TIMELY CONTRACT OBJECTION, THE COUNTERPARTY SHALL BE DEEMED TO HAVE CONSENTED TO THE ASSUMPTION AND ASSIGNMENT OF THE TRANSFERRED CONTRACTS TO CELSIUS, NOTWITHSTANDING ANY ANTI-ALIENATION PROVISION OR OTHER**

2

**RESTRICTION ON ASSUMPTION OR ASSIGNMNET IN THE TRANSFERRED CONTRACTS, AND SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION WITH REGARD TO ADEQUATE ASSURANCE OF FUTURE PERFORMANCE BY CELSIUS OR THE COST TO CURE ANY DEFAULTS UNDER THE APPLICABLE TRANSFERRED CONTRACTS AND ANY PROOF OF CLAIM ASSERTING A CLAIM FOR SUCH AMOUNT SHALL BE EXPUNGED WITHOUT FURTHER ORDER OF THE BANKRUPTCY COURT. THE CURE COSTS SET FORTH IN THE ASSUMPTION AND ASSUMPTION NOTICE SHALL BE CONTROLLING AND WILL BE THE ONLY AMOUNT NECESSARY TO CURE OUTSTANDING DEFAULTS UNDER THE APPLICABLE TRANSFERRED CONTRACT UNDER SECTION 365(B) OF THE BANKRUPTCY CODE, NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE TRANSFERRED CONTRACTS, OR ANY OTHER DOCUMENT, AND THE COUNTERPARTY SHALL BE FOREVER BARRED FROM ASSERTING ANY ADDITIONAL CURE OR OTHER AMOUNTS WITH RESPECT TO SUCH TRANSFERRED CONTRACTS THROUGH THE DATE OF ASSUMPTION AND ASSIGNMENT, WHETHER IN A PROOF OF CLAIM OR OTHERWISE AGAINST THE DEBTORS, OR THEIR PROPERTY.**

### Additional Information

Copies of the Motion, including the PSA and the Proposed Order, may be obtained free of charge at the website dedicated to the Debtors' chapter 11 cases maintained by their claims and noticing agent, Stretto, Inc., located at https://cases.stretto.com/corescientific/.

3

Dated: September 15, 2023
       Houston, Texas

Respectfully submitted,

  /s/  Alfredo R. Pérez
WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (15776275)
Clifford W. Carlson (24090024)
700 Louisiana Street, Suite 1700
Houston, Texas  77002
Telephone: (713) 546-5000
Facsimile:  (713) 224-9511
Email:  Alfredo.Perez@weil.com
           Clifford.Carlson@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Ray C. Schrock (admitted *pro hac vice*)
Ronit J. Berkovich (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:   (212) 310-8007
Email:  Ray.Schrock@weil.com
           Ronit.Berkovich@weil.com


*Attorneys for Debtors*
*and Debtors in Possession*

**Debtors' Exhibit No. 1**
**Page 82 of 83**

**Schedule A**

**Schedule of Proposed Cure Amounts for the Transferred Contracts**

| | Debtor | Creditor | Creditor Contact Information | Contract Description | Contract Type | Cure Balance |
|---|---|---|---|---|---|---|
| 1 | Core Scientific, Inc. | Texas New Mexico Power Company | Jonathan Lozano Texas New-Mexico Power Company 1126 Stafford Blvd P.O. Drawer 1960 Pecos, Texas 79772 | Transmission/Substation Facility Extension Agreement, dated 8/20/2021 | Construction Infrastructure for Electricity Distribution Agreement | $0 |
| 2 | Core Scientific, Inc. | Texas New Mexico Power Company | Jonathan Lozano Texas New-Mexico Power Company 1126 Stafford Blvd P.O. Drawer 1960 Pecos, Texas 79772 | Electric Facilities Extension Agreement, dated 8/20/2021 | Electric Facilities Agreement | $0 |
| 3 | Core Scientific, Inc. | Resound Networks LLC | PO Box 1741 Pampa, Texas 79066 | Business Service Provider Agreement, dated 9/16/2022 | Internet Services Agreement | $0 |
| 4 | Core Scientific, Inc. | Windstream | PO Box 9001908 Louisville, Kentucky 40290-1908 | Kinetic Business by Windstream Service Terms and Conditions and Amendment to Windstream Agreement, dated 11/4/2021 | Internet Services Agreement | $0 |

WEIL:\99268890\3\39031.0011

**Debtors' Exhibit No. 1**
**Page 83 of 83**