# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| | § | |
| **In re:** | § | **Chapter 11** |
| | § | |
| **CORE SCIENTIFIC, INC.,** *et al.,* | § | **Case No. 22-90341 (CML)** |
| | § | |
| **Debtors**[1] | § | **(Jointly Administered)** |
| | § | **(Emergency Hearing Requested)** |

## EMERGENCY MOTION OF DEBTORS FOR ENTRY OF ORDER (I) SCHEDULING COMBINED HEARING ON (A) ADEQUACY OF DISCLOSURE STATEMENT AND (B) CONFIRMATION OF PLAN; (II) CONDITIONALLY APPROVING DISCLOSURE STATEMENT AND FORM AND MANNER OF NOTICE OF CONDITIONAL DISCLOSURE STATEMENT HEARING; (III) ESTABLISHING SOLICITATION AND VOTING PROCEDURES; (IV) ESTABLISHING NOTICE AND OBJECTION PROCEDURES FOR CONFIRMATION OF PROPOSED PLAN; (V) APPROVING NOTICE PROCEDURES FOR ASSUMPTION OR REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (VI) APPROVING NOTICE PROCEDURES FOR REINSTATEMENT OF CLAIMS; (VII) ESTABLISHING RIGHTS OFFERING PROCEDURES; AND (VIII) GRANTING RELATED RELIEF

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions VII, LLC (3198). The Debtors' corporate headquarters is 210 Barton Springs Road, Suite 300, Austin, Texas 78704. The Debtors' service address is 2407 S. Congress Ave, Suite E-101, Austin, TX 78704

**EMERGENCY RELIEF HAS BEEN REQUESTED.  RELIEF IS REQUESTED NOT LATER THAN 2:00 P.M. (PREVAILING CENTRAL TIME) ON NOVEMBER 14, 2023.**

**IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST APPEAR AT THE HEARING IF ONE IS SET, OR FILE A WRITTEN RESPONSE PRIOR TO THE DATE THAT RELIEF IS REQUESTED IN THE PRECEDING PARAGRAPH.  OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

**A HEARING WILL BE CONDUCTED ON THIS MATTER ON, NOVEMBER 14, 2023 AT 2:00 P.M. (PREVAILING CENTRAL TIME) IN COURTROOM 401, 4TH FLOOR, 515 RUSK AVENUE, HOUSTON, TX 77002.**

**YOU MAY PARTICIPATE IN THE HEARING EITHER IN PERSON OR BY AN AUDIO AND VIDEO CONNECTION.**

**AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S DIAL-IN FACILITY.  YOU MAY ACCESS THE FACILITY AT 832-917-1510.  ONCE CONNECTED, YOU WILL BE ASKED TO ENTER THE CONFERENCE ROOM NUMBER.  JUDGE LOPEZ'S CONFERENCE ROOM NUMBER IS 590153.  VIDEO COMMUNICATION WILL BE BY USE OF THE GOTOMEETING PLATFORM. CONNECT VIA THE FREE GOTOMEETING APPLICATION OR CLICK THE LINK ON JUDGE LOPEZ'S HOME PAGE. THE MEETING CODE IS "JUDGELOPEZ".  CLICK THE SETTINGS ICON IN THE UPPER RIGHT CORNER AND ENTER YOUR NAME UNDER THE PERSONAL INFORMATION SETTING.**

**HEARING APPEARANCES MUST BE MADE ELECTRONICALLY IN ADVANCE OF BOTH ELECTRONIC AND IN-PERSON HEARINGS.  TO MAKE YOUR APPEARANCE, CLICK THE "ELECTRONIC APPEARANCE" LINK ON JUDGE LOPEZ'S HOME PAGE.  SELECT THE CASE NAME, COMPLETE THE REQUIRED FIELDS AND CLICK "SUBMIT" TO COMPLETE YOUR APPEARANCE.**

Core Scientific, Inc. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), respectfully represent as follows in support of this motion (the "**Motion**"):

**Background**

1.     On December 21, 2022, the Debtors each commenced with this Court a voluntary case under the Bankruptcy Code (the "**Petition Date**").  The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.     The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Bankruptcy Rules, and Rule 1015-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Local Rules**").

3.     On January 9, 2023, the United States Trustee for Region 7 (the "**U.S. Trustee**") appointed an official committee of unsecured creditors in these chapter 11 cases pursuant to section 1102 of the Bankruptcy Code.  On March 23, 2023, the U.S. Trustee appointed an official committee of equity security holders.  No trustee or examiner has been appointed in these chapter 11 cases.

**Jurisdiction**

4.     The United States Bankruptcy Court for the Southern District of Texas (the "**Court**") has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**Relief Requested**

5.     Pursuant to sections 105, 365, 1124, 1125, 1126, and 1128 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 3001, 3016, 3017, 3018, 3020, 6004, and 9006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Bankruptcy Local Rules 2002-1 and 3016-1, and the Procedures for Complex Chapter 11 Cases in the

Southern District of Texas (effective as of January 1, 2023, the "**Complex Case Procedures**"),

the Debtors request entry of an order, substantially in the form attached hereto as **Exhibit A**

(the "**Proposed Order**"), granting the following relief:

     i. scheduling a combined hearing ("**Combined Hearing**") to approve the Disclosure Statement (as defined below) on a final basis and consider confirmation of the *Third Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors* (including any exhibits and schedules thereto and as may be modified, amended, or supplemented, the "**Plan**");[2]

    ii. conditionally approving the *Disclosure Statement for Third Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors* (including any exhibits and schedules thereto and as may be modified, amended, or supplemented, the "**Disclosure Statement**")[3] as containing adequate information pursuant to section 1125 of the Bankruptcy Code;

    iii. approving the form and manner of notice of the hearing to conditionally consider the proposed Disclosure Statement;

    iv. approving the form and manner of the notice (the "**Combined Hearing Notice**") of the Combined Hearing, substantially in the form attached to the Proposed Order as **Exhibit 1**;

    v. establishing November 9, 2023 as the record date for the purpose of determining which Holders of Claims and Interests are entitled to vote on the Plan and/or receive the applicable notice(s) relating to solicitation and confirmation (the "**Voting Record Date**");

    vi. approving procedures for (a) soliciting, receiving, and tabulating votes to accept or reject the Plan and (b) voting to accept or reject the Plan (the "**Solicitation and Voting Procedures**"), substantially in the form attached to the Proposed Order as **Exhibit 2**;

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Disclosure Statement or Plan, as applicable. The Debtors expect to file an updated version of the Plan in the coming days, which will amend the plan filed on September 7, 2023 at Docket No. 1199 to reflect the terms of the mediated settlement among the Debtors, the Ad Hoc Noteholder Group and the Equity Committee reflected in that the term sheet attached to the *Joint Notice of Agreement on Restructuring Term Sheet by and Among the Debtors, the Ad Hoc Noteholder Group, and the Equity Committee* (Docket No. 1367) (the "**Mediated Settlement**").

[3] The Debtors expect to file an updated version of the Disclosure Statement in the coming days, which will amend the disclosure statement filed on September 7, 2023 at Docket No. 1200 to reflect the terms of the Mediated Settlement.

vii.    approving the ballots (the "**Ballots**") the Debtors will send to Holders of Claims and Interests entitled to vote to accept or reject the Plan, substantially in the forms attached to the Proposed Order as **Exhibits 3–12**;

viii.    finding that the solicitation materials and documents included in the solicitation packages to be sent to Holders of Claims and Interests entitled to vote to accept or reject the Plan (the "**Solicitation Packages**") are in compliance with Bankruptcy Rules 2002(b) and 3017(d);

ix.    approving the form of notice the Debtors will send to Holders of Claims and Interests that are Unimpaired under the Plan and that are, pursuant to section 1126(f) of the Bankruptcy Code, conclusively presumed to accept the Plan (the "**Notice of Non-Voting Status**"), substantially in the form attached to the Proposed Order as **Exhibit 13**;

x.    approving the form of opt-out the Debtors will send to Other Beneficial Owners (as defined below) and Holders of Claims and Interests that are Unimpaired under the Plan and that are, pursuant to section 1126(f) of the Bankruptcy Code, conclusively presumed to accept the Plan (the "**Release Opt Out Form**"), substantially in the form attached to the Proposed Order as **Exhibit 14**;

xi.    establishing December 13, 2023 at 5:00 p.m. (Prevailing Central Time) as the deadline by which Holders of Claims and Interests entitled to vote may vote to accept or reject the Plan (the "**Voting Deadline**");

xii.    establishing December 15, 2023 at 5:00 p.m. (Prevailing Central Time) as the deadline to object to the adequacy of the Disclosure Statement and/or confirmation of the Plan (the "**Combined Objection Deadline**");

xiii.    approving the procedures for assumption, assumption and assignment, or rejection of the Debtors' executory contracts and unexpired leases (the "**Executory Contracts and Unexpired Leases**");

xiv.    approving the procedures for noticing and resolving disputes relating to proposed Cure Amounts (as defined in the Plan) (if any) for the Reinstatement of Other Secured Claims in Class 4 (the "**Reinstatement Cure Procedures**");

xv.    approving the proposed procedures for the Rights Offering (the "**Rights Offering Procedures**"); and

xvi.    granting related relief.

6.    The following chart provides a summary of key dates and deadlines the Debtors are seeking pursuant to the Proposed Order:

| PROPOSED SOLICITATION AND CONFIRMATION TIMETABLE | |
|---|---|
| Voting Record Date for Holders of Claims and Interests | **November 9, 2023** |
| Conditional Disclosure Statement Hearing | **November 14, 2023 at 2:00 p.m. (Prevailing Central Time)** |
| Rights Offering Record Date | **November 16, 2023** |
| Mailing Deadline for Combined Hearing Notice<br><br>Solicitation Mailing Deadline<br><br>Rights Offering Subscription Period Commences<br><br>Deadline for Initial Commitment Parties to fund Backstop Commitment Deposit to the Escrow Account (as defined in the Rights Offering Procedures) | **November 17, 2023 (or as soon as reasonably practicable thereafter)** |
| Deadline for Holders of Existing Common Interests to become Additional Commitment Parties to in Rights Offering | **November 27, 2023** |
| Deadline for Debtors to File Claims Objections for Voting Purposes or to Request Claim Estimation for Voting Purposes | **December 1, 2023 at 5:00 p.m. (Prevailing Central Time)** |
| Mailing Deadline for Cure Amounts and Filing of Cure Notice | **December 5, 2023** |
| Plan Supplement Filing Deadline<br><br>Rights Offering Subscription Deadline<br><br>Deadline for Subscription Rights Holder to Remit Payment to Subscription Agent | **December 8, 2023** |
| Rule 3018(a) Motion Deadline | **December 8, 2023 at 5:00 p.m. (Prevailing Central Time)** |

| PROPOSED SOLICITATION AND CONFIRMATION TIMETABLE | |
|---|---|
| Voting Deadline and Opt Out Deadline<br><br>Deadline to Send Funding Notice to Commitment Parties | **December 13, 2023 at 5:00 p.m. (Prevailing Central Time)** |
| Deadline to Object to Disclosure Statement and Plan | **December 15, 2023 at 5:00 p.m. (Prevailing Central Time)** |
| Ballot Certification Deadline | **December 18, 2023** |
| Assumption and Cure Objection Deadline | **December 19, 2023** |
| Deadline to File Confirmation Brief and Reply to Plan Objection(s)<br><br>Backstop Commitment Funding Deadline | **December 20, 2023** |
| Combined Hearing | **December 22, 2023 at [●] a.m./p.m. (Prevailing Central Time) (subject to Court's availability)** |

7.     For further reference, below is a list of the various exhibits and documents cited throughout this Motion:

| DOCUMENT | EXHIBIT |
|---|---|
| Proposed Order | Exhibit A |
| Disclosure Statement | To be filed |

| DOCUMENT | EXHIBIT |
|---|---|
| Plan | To be filed |
| Form of Combined Hearing Notice | Exhibit 1 to the Proposed Order |
| Form of Solicitation and Voting Procedures | Exhibit 2 to the Proposed Order |
| Form of Ballot for April Convertible Notes Secured Claims (Class 1) | Exhibit 3 to the Proposed Order |
| Form Ballot for August Convertible Notes Secured Claims (Class 2) | Exhibit 4 to the Proposed Order |
| Form of Ballot for Miner Equipment Lender Secured Claims (Class 3) | Exhibit 5 to the Proposed Order |
| Form of Ballot for M&M Lien Secured Claims (Class 5) | Exhibit 6 to the Proposed Order |
| Form of Ballot for Secured Mortgage Claims (Class 6) | Exhibit 7 to the Proposed Order |
| Form of Ballot for General Unsecured Claims (Class 8) | Exhibit 8 to the Proposed Order |
| Form of Ballot for Section 510(b) Claims (Class 11) | Exhibit 9 to the Proposed Order |
| Form of Ballot for Master Ballot for Existing Common Interest (Class 12) | Exhibit 10 to the Proposed Order |
| Form of Ballot for Beneficial Holders of Existing Common Interest With Holdings Through DTC (Class 12) | Exhibit 11 to the Proposed Order |
| Form of Ballot for Registered Holders of Existing Common Interest With Direct Holdings (Class 12) | Exhibit 12 to the Proposed Order |
| Form of Notice of Non-Voting Status | Exhibit 13 to the Proposed Order |
| Form of Release Opt Out Form | Exhibit 14 to the Proposed Order |

| DOCUMENT | EXHIBIT |
|---|---|
| Rights Offering Procedures, including the Subscription Exercise Forms | Exhibit 15 to the Proposed Order[4] |
| Equity Committee Letter in support of the Plan | Exhibit 16 to the Proposed Order[5] |

**Summary of Plan**

8.      As will be further described in the Disclosure Statement, the Plan, which will reflect the terms of the Mediated Settlement and has the support of three (3) of the Debtors' five (5) key stakeholder groups, provides for a comprehensive restructuring of the Debtors' balance sheet and implements settlements the Debtors have reached with multiple parties, including the Ad Hoc Noteholder Group, the Official Equity Committee (the "**Equity Committee**"), the substantial majority of the Debtors' Miner Equipment Lenders, and the Debtors' two (2) secured mortgage claimants.

9.      The Plan will provide for the infusion of exit capital for emergence and post-emergence needs, including (i) $40 million in new money exit financing provided by certain Holders of Convertible Notes Secured Claims, in accordance with the terms and conditions of a commitment letter to be entered into by and among the Debtors and the relevant commitment parties, and (ii) an equity rights offering of $55 million, at least $30 million of which the Debtors expect will be backstopped by certain Holders of Existing Common Interests, including certain members of the Equity Committee, and various other parties.

---

[4]  The Rights Offering Procedures are not final and remain subject to continued review and comment by the Equity Committee and the Requisite Consenting Creditors.  As set forth in the Mediated Settlement, the Rights Offering Procedures must be acceptable to the Equity Committee and the Requisite Consenting Creditors.  Both the Equity Committee and the Requisite Consenting Creditors reserve all rights to further comment on the Rights Offering Procedures in order to reach agreement with the Debtors on the final form of the Rights Offering Procedures

[5]  The Equity Committee Letter will be filed at a later date.

10.     The Plan and the Disclosure Statement will describe in detail the Debtors' restructuring and the recoveries to be provided to Holders of Claims and Interests.

11.     Based on the foregoing, the Debtors propose soliciting votes to accept or reject the Plan from holders of Claims and Interests in Classes 1, 2, 3, 5, 6, 8, 11, and 12 (each, a "**Voting Class**" and, collectively, the "**Voting Classes**").  The Debtors propose not soliciting votes from holders of Claims and Interests in Classes 4, 7, 9, and 10 (each a "**Non-Voting Class**" and, collectively, the "**Non-Voting Classes**").

12.     The Restructuring will leave the Company's businesses intact, deleverage the Debtors' capital structure, and reduce the Debtors' debt service burden.  The Debtors believe that upon consummation of the Plan and the transactions contemplated thereby, the deleveraged post-emergence enterprise will have the ability to withstand the challenges and volatility of the bitcoin and energy markets and to continue to succeed as one of the largest bitcoin mining and hosting companies in North America.

## The Disclosure Statement

### A.     Conditional Approval of the Disclosure Statement is Warranted

13.     The Debtors seek limited relief from the requirements of section 1125(b) of the Bankruptcy Code[6] for the purposes of permitting the Debtors to solicit acceptances of the Plan from Holders of Claims or Interests, with final approval of the Disclosure Statement to be determined at the Combined Hearing.  Such relief is consistent with section P of the Complex

---

[6]  Section 1125(b) of the Bankruptcy Code provides, in relevant part, "[a]n acceptance or rejection of a plan may not be solicited after the commencement of the case under this title from a holder of a claim or interest with respect to such claim or interest, unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information."

Case Procedures, which provides that the bankruptcy court may consider motions seeking conditional approval of a Disclosure Statement.

14.     Conditional approval of the Disclosure Statement is warranted and appropriate in these chapter 11 cases because it will enable the Debtors to commence solicitation, eliminate the need for the scheduling of a separate disclosure statement hearing, shorten the length of these cases, facilitate the expeditious confirmation and consummation of the Plan, and materially reduce administrative expenses.

15.     Additionally, section P of the Complex Case Procedures provides that the Court may consider motions seeking conditional approval of a disclosure statement so long as such motions include a proposed order that: (a) finally approves the balloting and voting procedures to be utilized; (b) finally approves the form of notice to be provided to creditors and interest holders of the debtors; (c) finally approves the form of ballot which will be provided to creditors and interest holders entitled to vote on the proposed plan; (d) establishes a record date; and (e) establishes a voting deadline. This Motion and the Proposed Order comply with these requirements of the Complex Case Procedures and the other requirements of the Bankruptcy Rules.

16.     Accordingly, the Court should conditionally approve the Disclosure Statement and authorize the Debtors to use the Disclosure Statement for solicitation of acceptances and rejection of the Plan from holders of Claims and Interests in Voting Classes.

**B.     The Disclosure Statement Provides Adequate Information Regarding the Proposed Chapter 11 Plan**

17.     At the Combined Hearing, the Debtors will seek final approval of the Disclosure Statement.  Section 1125(b) of the Bankruptcy Code requires a plan proponent to provide holders of impaired claims and equity interests with "adequate information" regarding

11

the proposed chapter 11 plan.  Section 1125(a)(1) of the Bankruptcy Code defines "adequate information" as:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan.

11 U.S.C. § 1125(a)(1).

18.    Accordingly, a debtor's disclosure statement must provide sufficient information to permit an informed judgment by impaired creditors entitled to vote on the plan. *See, e.g., In re Woerner*, 783 F.3d 266, 271 (5th Cir. 2015) ("The proponent of a reorganization plan . . . must provide a court-approved disclosure statement that contains 'adequate information' about the assets, liabilities, and financial affairs of the debtor sufficient to enable creditors to make an 'informed judgment' about the plan.") (quoting 11 U.S.C. §§ 1121, 1125); *In re Tex. Rangers Baseball Partners*, 521 B.R. 134, 176 (Bankr. N.D. Tex. 2014) ("Section 1125 of the Bankruptcy Code entitles creditors to 'adequate information' so they can make an informed decision on whether to accept or reject a chapter 11 plan.") (quoting *In re Tex. Wyoming Drilling, Inc.*, 647 F.3d 547, 551 (5th Cir. 2011)).  The essential requirement of a disclosure statement is that it "must clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution." *In re Keisler*, No. 08-34321, 2009 WL 1851413, at *4 (Bankr. E.D. Tenn. June 29, 2009) (quoting *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991)).

19.    Whether a disclosure statement contains adequate information "is not governed by any otherwise applicable nonbankruptcy law, rule, or regulation."  11 U.S.C. § 1125(d).  Instead, bankruptcy courts have broad discretion to determine the adequacy of the

information contained in a disclosure statement.  *See, e.g.*, *In re Tex. Extrusion Corp.*, 844 F.2d 1142, 1157 (5th Cir. 1988) (noting that the determination of what is adequate information is "largely within the discretion of the bankruptcy court"); *In re Lisanti Foods, Inc.*, 329 B.R. 491, 507 (D.N.J. 2005) ("Section 1125 affords the Bankruptcy Court substantial discretion in considering the adequacy of a disclosure statement.") (citing *In re River Village Assoc.*, 181 B.R. 795, 804 (E.D. Pa. 1995)).  Congress granted bankruptcy courts wide discretion in determining the adequacy of a disclosure statement to facilitate effective reorganizations of debtors in a broad range of businesses, taking into account the various facts and circumstances that accompany chapter 11 cases.  *See* H.R. Rep. No. 595, 95th Cong., 1st Sess. 408–09 (1977) ("Precisely what constitutes adequate information will develop on a case-by-case basis."); *see also In re Cajun Elec. Power Coop.*, 150 F.3d 503, 518 (5th Cir. 1998) ("[W]ith respect to a particular disclosure statement, 'both the kind and form of information are left essentially to the judicial discretion of the court.'" (quoting S. Rep. No. 95-989, at 121 (1978))).  Accordingly, the determination of whether a disclosure statement contains adequate information is made on a case-by-case basis, focusing on the unique facts and circumstances of each case.  *See Tex. Extrusion*, 844 F.2d at 1157 ("The determination of what is adequate information is subjective and made on a case by case basis.").

20.    To determine whether a disclosure statement contains adequate information, courts generally examine whether the disclosure statement contains the following types of information, as applicable:

(a) the circumstances that gave rise to the filing of the bankruptcy petition;

(b) an explanation of the available assets and their value;

(c) the anticipated future of the debtor(s);

(d) the source of the information provided in the disclosure statement;

(e) a disclaimer, which typically indicates that no statements or information concerning the debtor or its assets or securities are authorized, other than those set forth in the disclosure statement;

(f) the condition and performance of the debtor while in chapter 11;

(g) information regarding claims against the estate;

(h) a liquidation analysis setting forth the estimated return that creditors would receive under chapter 7;

(i) the accounting and valuation methods used to produce the financial information in the disclosure statement;

(j) information regarding the future management of the debtor, including the amount of compensation to be paid to any insiders, directors and/or officers of the debtor;

(k) a summary of the plan of reorganization or liquidation;

(l) an estimate of all administrative expenses, including attorneys' fees and accountants' fees;

(m) the collectability of any accounts receivable;

(n) any financial information, valuations, or pro forma projections that would be relevant to creditors' determinations of whether to accept or reject the plan;

(o) information relevant to the risks being taken by the creditors and interest holders;

(p) the actual or projected value that can be obtained from avoidable transfers;

(q) the existence, likelihood, and possible success of nonbankruptcy litigation;

(r) the tax consequences of the plan; and

(s) the relationship of the debtor with its affiliates.

*See, e.g.*, *In re Metrocraft Pub. Servs., Inc.*, 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984); *In re ReoStar Energy*, No. 10-47176, 2012 Bankr. LEXIS 2418, at *4–5 (Bankr. N.D. Tex. May 30, 2012) (noting that "courts have developed checklists for determining whether a disclosure statement meets the requirements of section 1125"). Such a list is not meant to be comprehensive and a debtor is not required to provide all the information on the list. Rather, the bankruptcy court

14

must decide what is appropriate in each case in light of the particular facts and circumstances present. *In re Divine Ripe, L.L.C.*, 554 B.R. 395, 401–02 (Bankr. S.D. Tex. 2016) (adopting a similar list); *see also In re Phoenix Petroleum Co.*, 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001) (making use of a similar list but cautioning that "no one list of categories will apply in every case").

21.     The Disclosure Statement will provide many of the types of information identified in the applicable categories above, including, but not limited to:

(a)     an introduction providing background and an overview of the Plan and restructuring (Section I);

(b)     a summary of Plan classification and treatment of Claims and Interests (Section II);

(c)     an overview of the Debtors' businesses operations (Section III);

(d)     a description of the Debtors' capital structure (Section IV);

(e)     significant events leading to the commencement of the Debtors' chapter 11 cases (Section V);

(f)     events during the chapter 11 cases (Section VI);

(g)     transfer restrictions and consequences under federal securities laws (Section (VII))

(h)     certain tax consequences of the Plan (Section VIII);

(i)     certain risk factors to be considered (Section IX);

(j)     voting procedures and requirements (Section X); and

(k)     requirements for confirmation of the Plan (Section XI).

22.     In addition to the type of information that courts typically look for in a disclosure statement, the Disclosure Statement will provide an analysis of the alternatives to confirmation and consummation of the Plan (Section XII) and will conclude with the Debtors' recommendation that the Plan is in the best interests of all stakeholders and the Holders of Claims

in Classes 1, 2, 3, 5, 6, 8, and 11, and Holders of Interests in Class 12 vote in favor of the Plan (Section XIII).

23.     Based on the foregoing, the Debtors submit that the Disclosure Statement will contain adequate information for a voting creditor and equity holder to make an informed judgment regarding whether to vote to accept or reject the Plan, and therefore satisfies the requirements of section 1125 of the Bankruptcy Code.  Accordingly, at the Combined Hearing, the Debtors will demonstrate, as summarized above, that the Disclosure Statement provides "adequate information" in satisfaction of the requirements of section 1125 of the Bankruptcy Code, and therefore should be approved by the Court.

## C.     The Disclosure Statement Provides Sufficient Notice of the Release, Exculpation, and Injunction Provisions in the Plan

24.     Pursuant to Bankruptcy Rule 3016(c), "[i]f a plan provides for an injunction against conduct not otherwise enjoined under the [Bankruptcy] Code, the plan and disclosure statement [must] describe in specific and conspicuous language (bold, italic, or underlined text) all acts to be enjoined and identify the entities that would be subject to the injunction."  Fed. R. Bankr. P. 3016(c).

25.     The Plan will include settlements, injunctions, releases, and exculpations in Article X.  Exhibit B to the Disclosure Statement will describe in detail the releases provided under the Plan, the entities to provide such releases, the entities to be released, and the Claims and Interests and causes of action to be released.  Additionally, Exhibit B to the Disclosure Statement will set forth the terms of the proposed exculpation, release and injunction provisions in the Plan.  Each of the foregoing will be in conspicuous (bold) print.  Accordingly, the Debtors respectfully submit that the Disclosure Statement will comply with Bankruptcy Rule 3016(c).

## THE SOLICITATION AND VOTING PROCEDURES

**A.    The Court Should Approve the Solicitation and Voting Procedures, Ballots, Timeline, and Forms of Notices Related to Solicitation and Confirmation of the Plan**

26.    In connection with the Disclosure Statement and Plan, the Debtors, with the assistance of Stretto, Inc. ("**Stretto**" or the "**Voting Agent**") as their claims, noticing, and solicitation agent pursuant to the *Order Authorizing the Employment and Retention of Stretto, Inc. As Claims, Noticing, and Solicitation Agent* (Docket No. 28), propose to implement the Solicitation and Voting Procedures summarized below and as set forth more fully in **Exhibit 2** to the Proposed Order.

**1.    Solicitation and Voting Procedures, Including Tabulation Procedures**

27.    Section 1126(c) of the Bankruptcy Code provides that:

> A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under section (e) of this section, that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designed under subsection (e) of this section, that have accepted or rejected the plan.

11 U.S.C. § 1126(c).    Additionally, Bankruptcy Rule 3018(c) provides, in part, that "[a]n acceptance or rejection [of a plan] shall be in writing, identify the plan or plans accepted or rejected, be signed by the creditor or equity security holder or an authorized agent and conform to the appropriate Official Form."    Consistent with these requirements, the Debtors propose to use the Solicitation and Voting Procedures, which include specific voting and tabulation requirements and processes (the "**Tabulation Procedures**"), to facilitate the process of tabulating all votes received.

28.    The proposed Solicitation and Voting Procedures set forth specific criteria with respect to the voting procedures applicable to Holders of Claims and Interests in Voting

Classes and the general tabulation of Ballots, including clear requirements for determining whether a Ballot will be counted in determining the acceptance or rejection of the Plan.  For example, the Tabulation Procedures provide that the Debtors are not required to count a Ballot if it is, among other things, illegible, submitted by a Holder of a Claim or Interest that is not entitled to vote on the Plan, unsigned, not clearly marked with a vote to accept or reject the Plan, or marked to both accept and reject the Plan.  Further, the Debtors, unless otherwise ordered by the Court, may waive any defects or irregularities as to any particular Ballot at any time, either before or after the Voting Deadline, provided that any such waivers are documented in the report tabulating votes on the Plan (the "**Voting Report**").

29.     The Tabulation Procedures will facilitate the Plan confirmation process by creating a straightforward process by which the Debtors can determine whether they have satisfied the requirements of section 1126(c) of the Bankruptcy Code.  Accordingly, the Debtors submit that the Solicitation and Voting Procedures, including the authorization of Stretto's assistance therewith, are in the best interests of their estates, Holders of Claims and Interests, and other parties in interest, comply with Bankruptcy Rule 3018(c), and that good cause supports the relief requested herein.

### 2.     Voting Record Date

30.     Bankruptcy Rule 3017(d) provides, in relevant part, that, for the purposes of soliciting votes in connection with confirmation of a plan of reorganization, and except to the extent the court orders otherwise, the debtor must mail the relevant solicitation materials to all creditors and equity security holders, including "holders of stock, bonds, debentures, notes, and other securities of record on the date the order approving the disclosure statement is entered or another date fixed by the court, for cause, after notice and a hearing."  Fed. R. Bankr. P. 3017(d).

31.     To identify and establish the universe of creditors and equity holders

entitled to vote on the Plan, the Debtors request that the Court set November 9, 2023, as the date for determining (i) which Holders of Claims or Interests in the Voting Classes are entitled to vote on the Plan and (ii) which Holders of Claims or Interests in Non-Voting Classes are entitled to receive a Notice of Non-Voting Status.

32.     With respect to transfers of Claims filed pursuant to Bankruptcy Rule 3001(e), the Debtors propose that the transferee be entitled to receive a Solicitation Package and, if the Holder of such Claim is otherwise entitled to vote with respect to the Plan, cast a Ballot on account of such Claim only if: (i) all actions necessary to transfer such Claim are completed by the Voting Record Date or (ii) the transferee files, by the Voting Record Date, (a) all documentation required by Bankruptcy Rule 3001(e) to evidence the transfer and (b) a sworn statement of the transferor supporting the validity of the transfer.  Further, the Debtors request that, in the event a Claim is transferred after the Voting Record Date, the transferee of such Claim shall be bound by any vote or election on the Plan made by the Holder of such Claim as of the Voting Record Date.

33.     The foregoing timing and materials will afford Holders of Claims or Interests entitled to vote on the Plan sufficient time to review and analyze such materials an subsequently make an informed decision as to whether to vote to accept or reject the Plan before the Voting Deadline consistent with the requirements of the applicable Bankruptcy Rules.  *See* Fed. R. Bankr. P. 3017(d) (after approval of a disclosure statement, the debtor must transmit the plan, the approved disclosure statement, a notice of the time within which acceptances and rejections of such plan may be filed, and any other information that the court may direct to certain holders of claims).  The Voting Record Date complies with Bankruptcy Rule 3017(d) and, therefore, should be approved.

### 3.     Form of Ballots

34.     Bankruptcy Rule 3017(d) requires debtors to mail a form of ballot that substantially conforms to Official Bankruptcy Form No. B 314, to "creditors and equity security holders entitled to vote on the plan." Fed. R. Bankr. P. 3017(d).  The Debtors propose to distribute Ballots to Holders of Claims and Interests in the Voting Classes that are eligible to vote as of the Voting Record Date.[7]  Although the Ballots are based on Official Bankruptcy Form No. B 314, they have been modified to address the specific circumstances of these chapter 11 cases and to include certain additional information that the Debtors believe is relevant and appropriate for Holders of Claims or Interests in the Voting Classes.  The proposed forms of Ballots for each Voting Class are annexed as **Exhibits 3–12** to the Proposed Order.  The Debtors submit that the forms of Ballots comply with Bankruptcy Rule 3018(c) and, therefore, should be approved.

35.     If the Court grants the requested relief, all Holders of Claims and Interests in the Voting Classes will receive a Ballot that includes an election to opt out of the non-debtor release provision in section 10.6(b) of the Plan (the "**Non-Debtor Release Provision**").  Holders of Claims and Interests in the Voting Classes that properly and timely elect to opt-out of the Non-Debtor Release Provision will not be deemed a Releasing Party (or, by extension, a Released Party).

36.     The Debtors propose to distribute Ballots to each of the Holders of (i) April Convertible Notes Secured Claims in Class 1; (ii) August Convertible Notes Secured Claims in Class 2; (iii) Miner Equipment Lender Secured Claims in Class 3; (iv) M&M Lien Secured

---

[7]  Stretto is required to retain all paper copies of Ballots and all solicitation-related correspondence for one (1) year following the Effective Date, whereupon, Stretto is authorized to destroy and/or otherwise dispose of all paper copies of Ballots; printed solicitation materials including unused copies of the Solicitation Package; and all solicitation-related correspondence (including undeliverable mail), in each case unless otherwise directed by the Debtors or the Clerk of the Court in writing within such one (1) year period.

Claims in Class 5; (v) Secured Mortgage Claims in Class 6; (vi) General Unsecured Claims in Class 8; (ix) Section 510(b) Claims in Class 11; and (x) Existing Common Interests in Class 12.

37.    In connection with the Solicitation and Voting Procedures, if, prior December 1, 2023 at 5:00 p.m. (Prevailing Central Time), a Claim has either (i) been objected to for its full amount, (ii) had a request for estimation filed with respect to such Claim, or (iii) had an adversary proceeding commenced relating such Claim, such Claim will be Disallowed for voting purposes (such Claim a "**Potentially Disallowed Claim**").  All Holders of Potentially Disallowed Claims will receive a Ballot (such Ballot a "**Provisional Ballot**").  Such Holders shall be subject to same requirements set forth in the Proposed Order applicable to the Class in which such Holder's Claim is included.  The Provisional Ballot shall only be included in tabulation if (i) such Holder timely submits a motion for an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing such Claim or Interest for voting purposes in a different amount (a "**Rule 3018(a) Motion**") and (ii) the Court grants the relief requested in such Holder's 3018 Motion.  Each Provisional Ballot will contain an Optional Opt Out Release Election.  Each Holder of a Potentially Disallowed Claim will be deemed to consent to the Non-Debtor Release Provision unless such Holder (i) timely submits such Holder's Provisional Ballot, (ii) does not vote to accept the Plan, and (iii) makes the Optional Opt Out Release Election contained on the Provisional Ballot.

38.    Each Holder of a Claim or Interest in a Voting Class will be instructed to complete and return its Ballot in accordance with the directions provided therein.  Ballots may be submitted via Stretto's online balloting portal (the "**E-Ballot**") at https://cases.stretto.com/CoreScientific/ (the "**Online Portal**"), so long as the Ballot is submitted on or before the Voting Deadline.  The encrypted Ballot data and audit trail created by such

E-Ballot submission will become part of the record of any Ballot submitted in this manner, and the Holder's electronic signature will be deemed to be immediately legally valid and effective. Alternatively, in lieu of submitting an E-Ballot, Holders of Claims or Interests may return Ballots via first-class or overnight mail or hand delivery, so long as the Ballots are actually received by the Voting Deadline.  Holders of Claims and Interests mailing their Ballots to the Voting Agent shall mail them to the following address:

> **CORE SCIENTIFIC, INC.**
> **BALLOT PROCESSING CENTER**
> **C/O STRETTO, INC.**
> **410 EXCHANGE, SUITE 100**
> **IRVINE, CA 92602**

39.     Only pre-validated Ballot to transmit the votes of one or more beneficial owners (a "**Master Ballot**") may be delivered to the Voting Agent via electronic mail to corescientificvote@stretto.com, in addition to delivery via first-class mail, overnight courier, or hand delivery.  Signatures contained in such Ballots will be deemed to be original.  For the avoidance of doubt, no other Ballots may be submitted to the Voting Agent via electronic mail.

**4.     Approval of Solicitation Packages and Procedures for Distribution Thereof**

40.     Bankruptcy Rule 3017(d) lists the materials that must be provided to holders of claims and interests for the purpose of soliciting votes on a chapter 11 plan and providing adequate notice of the hearing to consider confirmation thereof.   Specifically, Bankruptcy Rule 3017(d) provides, in relevant part, that:

> [u]pon approval of a disclosure statement,—except to the extent that the court orders otherwise with respect to one or more unimpaired classes of creditors or equity security holders—the debtor in possession, trustee, proponent of the plan, or clerk as the court orders shall mail to all creditors and equity security holders, and in a chapter 11 reorganization case shall transmit to the United States trustee:
>
> (a)     the plan or a court-approved summary of the plan;
>
> (b)     the disclosure statement approved by the court;

(c)     notice of the time within which acceptances and rejections of the plan may be filed; and

(d)     any other information as the court may direct, including any court opinion approving the disclosure statement or a court-approved summary of the opinion.

Fed. R. Bankr. P. 3017(d).

41.     In accordance with Bankruptcy Rule 3017(d), the Debtors propose to mail, or cause to be mailed, Solicitation Packages, within three (3) days after entry of an order approving the Disclosure Statement, or as soon as practicable thereafter, to Holders of Claims or Interests in Voting Classes entitled to vote on the Plan as of the Voting Record Date.  Solicitation Packages shall contain copies of:

(a)     the Proposed Order, as entered by the Court and without attachments, except the Solicitation and Voting Procedures annexed as **Exhibit 2** thereto;

(b)     the conditionally approved Disclosure Statement with all exhibits thereto, including the Plan;

(c)     the Solicitation and Voting Procedures;

(d)     the Combined Hearing Notice;

(e)     a Ballot customized (where possible and appropriate) for such Holder and conforming to Official Bankruptcy Form No. B 314, in the form described below;[8]

(f)     a letter from the Equity Committee supporting the Plan and recommending that the Holders of Existing Common Interests in Class 12 vote to accept the Plan, annexed as **Exhibit 16** to the Proposed Order (the "**Equity Committee Letter**"); and

(g)     a postage-prepaid return envelope.

42.     To reduce costs and the impact on the environment, the Debtors propose to send the Disclosure Statement, the Plan, and the Proposed Order (without attachments, except the Solicitation and Voting Procedures annexed as **Exhibit 2** thereto) in electronic format (on a

---

[8] Official Bankruptcy Form No. B 314 can be found at http://www.uscourts.gov/forms/bankruptcy-forms, the official website for the United States Bankruptcy Courts.

USB flash drive) instead of printed hard copies.  Only the Ballots and the Combined Hearing Notice will be provided in paper format.  Moreover, the Plan and Disclosure Statement will be available at no charge via the Internet at https://cases.stretto.com/CoreScientific.  However, the Debtors propose that if service by USB flash drive imposes a hardship for any party entitled to receive a copy of the Plan and the Disclosure Statement (e.g., the party does not own or have access to a computer or the Internet), such party may request a paper copy of the Plan, Disclosure Statement, and Proposed Order (without attachments, except the Solicitation and Voting Procedures as annexed as **Exhibit 2** thereto) by contacting Stretto (i) through e-mail at CoreScientificInquiries@stretto.com, (ii) by writing to Core Scientific, Inc., c/o/ Stretto, Inc. 410 Exchange, Suite 100, Irvine, CA 92602, or (iii) via telephone, toll-free, at 949.404.4152 (Toll-Free) or +1 888.765.7875 (outside of the U.S. and Canada).  Within five (5) Business Days of receipt of such request, or as soon as reasonably practicable thereafter, the Debtors will provide such party with a paper copy of the Plan and the Disclosure Statement at no cost to the party.

43.     Further, the Debtors request that Stretto be authorized to assist the Debtors in (i) distributing the Solicitation Packages, (ii) receiving, tabulating, and reporting on Ballots cast to accept or reject the Plan by Holders of Claims or Interests, (iii) responding to inquiries from Holders of Claims or Interests and other parties in interest relating to the Disclosure Statement, the Plan, the Ballots, the Solicitation Packages, and all other related documents and matters related thereto, including the procedures and requirements for voting to accept or reject the Plan and for objecting to the Plan, (iv) soliciting votes on the Plan, and (v) if necessary or appropriate, contacting Holders of Claims and Interests regarding the Plan, the Ballots, the Solicitation Packages, and all other related documents and matters related thereto.

44.     Additionally, the Debtors request that the Court not require the Debtors or the Voting Agent to mail Solicitation Packages to creditors (i) that have Claims that have already been paid in full during these chapter 11 cases or (ii) whose prior mailings in these chapter 11 cases were returned as undeliverable and that have not provided a forwarding address by the Voting Record Date.[9]  In the event that the United States Postal Service returns some Solicitation Packages as undeliverable, the Debtors request that they be excused from re-mailing such Solicitation Packages.

45.     Although the Debtors have made, and will make, every effort to ensure that the Solicitation Packages as described herein and as approved by the Court are in final form, the Debtors nonetheless request authority to make non-substantive changes to the Disclosure Statement, the Plan, and related documents without further order of the Court, including ministerial changes to correct typographical and grammatical errors, and to make conforming changes among the Disclosure Statement, the Plan, and any other materials in the Solicitation Packages prior to mailing.

46.     The Debtors submit that they have shown good cause for implementing the proposed notice and service procedures and that the proposed Solicitation Packages comply with Bankruptcy Rule 3017(d).   Accordingly, the Debtors request the Court's approval of such Solicitation and Voting Procedures and Solicitation Packages.

**5.      Approval of Release Opt Out Procedures**

   a.      **Release Opt Out Procedures for Voting Classes**

47.     Paragraph 40 of the Complex Case Procedures provide that:

---

[9] For purposes of serving the Solicitation Packages, the Debtors request that they be authorized to rely on the address information for the Voting and Non-Voting Classes as compiled, updated, and maintained by the Voting Agent as of the Voting Record Date and that the Debtors and the Voting Agent not be required to conduct any additional research for updated addresses based on undeliverable Solicitations Packages (including Ballots).

> "If a proposed plan seeks consensual pre- or post-petition releases with respect to claims that creditors may hold against non-debtor parties, then a ballot must be sent to creditors entitled to vote on the proposed plan and notices must be sent to non-voting creditors and parties-in-interest.  The ballot and the notice must inform the creditors of such releases and provide a box to check to indicate assent or opposition to such consensual releases together with a method for returning the ballot or notice."

Complex Case Procedures at ¶ 40.

48.     As described above, the Debtors propose to mail Provisional Ballots or Ballots to all Holders of Claims and Interests in the Voting Classes, which will contain, among other things, (i) the release and exculpation language contained in the Plan and (ii) a box for such Holder to check to opt-out of the Non-Debtor Release Provision contained in section 10.6(b) of the Plan (the "**Optional Opt Out Release Election**").  A Holder may only make the Optional Opt Out Release Election if such Holder votes to reject the Plan.  Holders of Claims and Interests in the Voting Classes that properly and timely elect to opt-out of the Non-Debtor Release Provision will not be deemed a Releasing Party (or, by extension, a Released Party).

### b.     Release Opt-Out Procedures for Non-Voting Classes

#### (i)     Notice of Non-Voting Status

49.     Bankruptcy Rule 3017(d) permits a court to excuse a debtor from mailing its plan and disclosure statement to unimpaired classes.  In lieu thereof, a court may order that "notice that the class is designated in the plan as unimpaired and notice of the name and address of the person from whom the plan or summary of the plan and disclosure statement may be obtained upon request and at the plan proponent's expense" and "notice of the time fixed for filing objections to and the hearing on confirmation" be mailed to the members of such classes.  Fed. R. Bankr. P. 3017(d).  The Debtors request that the Court grant such relief with respect to creditors in the Non-Voting Classes.  Distributing Solicitation Packages to non-voting creditors is an unnecessary expense, and the Debtors' resources should be preserved for the benefit of all

stakeholders and not diverted to satisfy a mailing requirement that will benefit no one. The Debtors will also make the Solicitation Package (excluding the Ballots) available at no cost on their chapter 11 website: https://cases.stretto.com/CoreScientific.

50.     In lieu of a Solicitation Package, the Debtors propose to mail, or cause to be mailed, to Holders of Claims in the Non-Voting Classes (but not to Holders of Claims and Interests in Class 9 (Intercompany Claims) and Class 10 (Intercompany Interests) (as discussed below)) the Notice of Non-Voting Status, the Release Opt Out Form (described below in more detail), and the Combined Hearing Notice (described below in more detail). The Notice of Non-Voting Status provides (i) notice of the Court's conditional approval of the Disclosure Statement, (ii) notice of filing the Plan, (iii) notice of the Holder's non-voting status, and (iv) information about how to obtain copies of the Disclosure Statement and Plan. In addition, the Notice of Non-Voting Status contains the full text of the release, exculpation, and injunction provisions set forth in Article X of the Plan and advises such Holders of Claims in Non-Voting Classes that they will be bound by the Non-Debtor Release Provision in Section 10.6(b) of the Plan unless they timely and properly opt out. Holders of Claims in the Non-Voting Classes that choose to opt out of the Non-Debtor Release Provision may do so by submitting their Release Opt Out Form (i) by first-class mail; (ii) by overnight courier; (iii) by hand delivery; or (iv) via the Online Portal[10] so that (in each instance) their opt-out election is actually received by the Voting Agent no later than December 13, 2023 at 5:00 p.m. (Prevailing Central Time) (the "**Opt**

---

[10] The Release Opt Out Form includes information on how parties can opt out electronically via the Online Portal. An encrypted opt out data and audit trail will be created through the electronic submission process and become part of the record of any opt out election submitted in this manner. Additionally, the parties' electronic signature will be deemed to be legally valid and effective immediately. For the avoidance of doubt, the Online Portal is the sole method for Holders of Claims in Non-Voting Classes to transmit opt out elections electronically.

**Out Deadline**"). A Holder that properly and timely elects to opt-out of the Non-Debtor Release Provision by the Opt Out Deadline will not be deemed a Releasing Party under the Plan.

51. The Debtors request that in the event that the United States Postal Service returns some Notices of Non-Voting Status as undeliverable, they be excused from re-mailing such Notices of Non-Voting Status.

52. With respect to Class 9 (Intercompany Claims) and Class 10 (Intercompany Interests), the Debtors request a waiver of any requirement to serve a Combined Hearing Notice, Release Opt Out Form, Notice of Non-Voting Status, Solicitation Packages, or any other type of notice in connection with solicitation of the Plan because such Claims and Interests are held by the Debtors or the Debtors' affiliates.

53. The Debtors submit the above-described notices and procedures with respect to Non-Voting Classes provide appropriate notice to Holders of Claims and Interests in the Non-Voting Classes, and therefore respectfully request that the Court approve them.

(ii)     **Release Opt Out Form**

54. The Debtors propose to mail, or cause to be mailed, in compliance with Paragraph 40 of the Complex Case Procedures, a Release Opt Out Form, substantially in the form attached to the Proposed Order as **Exhibit 14**, to the Holders of Claims in Class 4 (Other Secured Claims) and Class 7 (Priority Non-Tax Claims), along with a Combined Hearing Notice and a Notice of Non-Voting Status. For the Voting Classes, the opt-out option shall be on such Holders' Ballots.

55. In addition, to ensure that all potential claimants in the Securities Class Action receive notice and an opportunity to opt out of the Non-Debtor Release Provision, the Debtors shall cause to be mailed (i) the Release Opt Out Form and (ii) the Combined Hearing Notice, to the banks, brokers, and financial institutions (or their agents) that might have purchased

equity securities in "street name" (collectively, including their agents, the "**Nominees**") on behalf of the underlying beneficial owners of those equity securities during the period from January 3, 2022 through December 20, 2022, inclusive (the "**Other Beneficial Owners**"), because the Other Beneficial Holders may be potential Holders of Section 510(b) Claims (although the Debtors do not believe any such Claims are valid or will be Allowed). With their mailing, the Debtors shall include instructions to the Nominees concerning the requirements in subparagraphs (a)–(d) below.

(a)    Such Nominees shall either: (i) within seven (7) calendar days of receipt of the Release Opt Out Form and Combined Hearing Notice, request from the Debtors sufficient copies of the Release Opt Out Form and Combined Hearing Notice to forward to their Other Beneficial Owners and within seven (7) calendar days of receipt of those notices and claim forms forward them to their Other Beneficial Owners; or (ii) within seven (7) calendar days of receipt of the Release Opt Out Form and Combined Hearing Notice, provide a list of the names and addresses of their Other Beneficial Owners to the Debtors and the Debtors shall send the Release Opt Out Form and Combined Hearing Notice promptly to such identified Other Beneficial Owners.

(b)    Nominees that elect to send the Release Opt Out Form and Combined Hearing Notice to their Other Beneficial Owners shall also send a statement to the Debtors and Stretto confirming that the mailing was made and shall retain their mailing records for use in connection with any further notices that may be provided in these Chapter 11 Cases.

(c)    If it is the Nominee's customary and accepted practice to forward such materials to its Other Beneficial Owners by e-mail, e-delivery, or any other method of electronic or printed communication, the Nominees are authorized to follow those customary practices, within seven (7) calendar days of receipt of the materials, in lieu of sending actual printed copies of the Release Opt Out Form and Combined Hearing Notice.

(d)    Within seven (7) calendar days of forwarding such notice, the Nominees may request reimbursement for reasonable and documented noticing costs and research fees, if any, by making such request in writing to the Debtors at the address to be provided by Stretto to the Nominees.

56.    The Other Beneficial Owners were previously notified of these chapter 11 cases and their ability to assert claims therein, in accordance with the Bar Date Order. Pursuant

to the Bar Date Order, the Nominees were instructed to maintain all mailing records with respect to the Other Beneficial Owners for use in connection with any further notices to be provided in these Chapter 11 Cases.  *See* Bar Date Order ¶ 17(b).  Thus, the Debtors propose to utilize the same mechanism previously approved by this Court in the Bar Date Order to serve the Release Opt Out Form and Combined Hearing Notice to the Other Beneficial Owners, affording such Other Beneficial Owners the opportunity to opt out of the releases contained in the Plan.

57.     The Release Opt Out Form (i) contains the full text of the release provisions set forth in Article X of the Plan and advises the recipients that they will be bound by the Non-Debtor Release Provision unless they timely and properly choose to opt out by completing the Release Opt Out Form and (ii) provides detailed instructions to the recipient regarding the manner in which such recipient can submit their election to opt out of the Non-Debtor Release Provision.

58.     The Debtors propose that the Release Opt Out Form must be properly completed and returned either by (i) delivering the Release Opt Out Form to the Voting Agent or (ii) submitting the Release Opt Out Form by electronic, online transmission through the Online Portal, each in accordance with the instructions included on the Release Opt Out Form.

59.     The Debtors submit that the Release Opt Out Form satisfies the requirements of paragraph 40 of the Complex Case Procedures regarding consensual releases against non-debtor parties and, therefore, respectfully request that the Court approve the Release Opt Out Form and procedures for Holders of Claims and Interests and Other Beneficial Owners to opt out of being bound by Non-Debtor Release Provision provided for in the Plan.

**6.     Combined Hearing Notice**

60.     Pursuant to Bankruptcy Rule 3017(d), notice of a plan confirmation objection deadline and hearing must be provided to all creditors and equity security holders in

accordance with Bankruptcy Rule 2002 and Local Rule 2002-1.  Bankruptcy Rule 2002 requires notice to, among others, all creditors, indenture trustees, and equity security holders of the time set for filing objections to, and the hearing to consider confirmation of, a plan.  In addition, Bankruptcy Rule 2002(c)(3) provides that if a plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code, the plan confirmation notice must include, in conspicuous language, a statement that the plan proposes an injunction, a brief description of the nature of the injunction, and identification of the entities that would be subject to such injunction. *See* Fed. R. Bankr. P. 2002(c)(3).

61.     In accordance with the foregoing, the Debtors propose to provide (i) the parties entitled to notice pursuant to Bankruptcy Rules 2002 and 3017 and Bankruptcy Local Rule 2002-1 and (ii) Holders of Claims and Interests in the Voting and Non-Voting Classes, subject to the exceptions set forth above, a copy of the Combined Hearing Notice, which sets forth (i) the Voting Deadline, (ii) December 15, 2023 at 5:00 p.m. (Prevailing Central Time) as the deadline to object to the adequacy of the Disclosure Statement on a final basis and confirmation of the Plan (the "**Combined Objection Deadline**") and procedures for filing objections and responses to confirmation of the Plan, (iii) the time, date, and place for the Combined Hearing, and (iv) information about the Plan's release and injunction provisions in compliance with Bankruptcy Rule 2002(c)(3).  The Debtors propose completing this service via e-mail or first-class mail within three (3) days after entry of the Proposed Order, or as soon as reasonably practicable thereafter.  The Debtors will also serve Holders of Claims or Interests in the Voting Classes with the Combined Hearing Notice as part of their Solicitation Packages.  As a result, parties in interest will receive at least twenty-eight (28) days' notice of the Combined

Objection Deadline and thirty-five (35) days' notice of the Combined Hearing pursuant to these proposed procedures.

62.     The Debtors further request that this Court authorize the Debtors, in their discretion, to give supplemental publication notice of the Combined Hearing, as soon as reasonably practicable following entry of the Proposed Order in one or more of the following publications: the national edition of The Wall Street Journal and the local editions of the Austin American-Statesman, Odessa American, Pecos Enterprise, Denton Record Chronicle, Cherokee Scout, Dalton Daily Citizen, The Lake News, Grand Forks Herald, and Muskogee Phoenix, as well as other publications as the Debtors deem appropriate.

63.     The Debtors submit that the foregoing notice procedures comply with all notice requirements under Bankruptcy Rules 3017(d) and 2002.  Accordingly, the Debtors request that the Court find that such notice is due and proper and no further notice is necessary.

<u>**Confirmation Schedule**</u>

**A.      Confirmation Schedule Complies with Applicable Bankruptcy Law**

64.     The Debtors seek a Combined Hearing to consider final approval of the Disclosure Statement and the Plan.  Bankruptcy Rule 3017(c) provides that, "[o]n or before approval of the disclosure statement, the court . . . may fix a date for the hearing on confirmation" of a chapter 11 plan. Fed. R. Bankr. P. 3017(c).  Section 105(d)(2)(B)(vi) of the Bankruptcy Code provides that the Court may combine the hearing on approval of a disclosure statement with the hearing on confirmation of a chapter 11 plan.  Notably, paragraph P of the Complex Case Procedures provides that "[c]ontemporaneously with the filing of a disclosure statement and

proposed plan, a plan proponent may file a motion requesting . . . the scheduling of a joint hearing to consider final approval of the proposed disclosure statement."

65.     The Debtors submit that holding a Combined Hearing is appropriate and respectfully request that the Court schedule the Combined Hearing on December 22, 2023, or as soon thereafter as is practicable in light of the Court's calendar.  The Combined Hearing may be adjourned or continued from time to time by the Court or the Debtors without further notice other than adjournments announced in open Court or as indicated in any notice of agenda of matters scheduled for hearing filed with the Court.  The Debtors request that the Court find that the date for the Combined Hearing is in compliance with the Bankruptcy Rules and the Bankruptcy Local Rules.

66.     A Combined Hearing in these chapter 11 cases will promote judicial economy and save administrative expenses by allowing the Debtors to quickly confirm the Plan and expeditiously transition to restructuring the Debtors, thereby preserving value.

**B.     Confirmation Objection Procedures**

67.     Pursuant to Bankruptcy Rule 3020(b)(1), objections to confirmation of a plan must be filed and served "within a time fixed by the court."  Fed. R. Bankr. P. 3020(b)(1). Bankruptcy Rule 2002(b) provides that parties must receive at least twenty-eight (28) days' notice of the deadline for filing objections to confirmation.  Accordingly, and in view of the Debtors' proposed solicitation schedule outlined herein—which provides for a Solicitation Mailing Deadline of November 17, 2023, twenty-eight (28) days before the Combined Objection Deadline—the Debtors request that the Court set December 15, 2023 at 5:00 p.m. (Prevailing Central Time) as the Combined Objection Deadline.  The Combined Objection Deadline will provide Holders of Claims or Interests with sufficient notice of the deadline for filing objections

to the adequacy of the Disclosure Statement and confirmation of the Plan, while affording the Debtors and other parties time to file a responsive brief and, if possible, consensually resolve any objections received.

68.    The Debtors request that objections and responses, if any, to the adequacy of the Disclosure Statement and confirmation of the Plan must:  (i) be in writing; (ii) conform to the Bankruptcy Rules, the Bankruptcy Local Rules, and any order of the Court; (iii) set forth the name of the objecting party and the nature and amount of Claims or Interests held or asserted by the objecting party against the Debtors' estates or property; and (iv) provide the basis for the objection and the specific grounds therefor, and, if practicable, a proposed modification to the Plan that would resolve such objection.  The Debtors request that registered users of the Court's case filing system be required to electronically file their objections and responses on or before the Combined Objection Deadline and that all other parties in interest be required to file their objections and responses in writing, together with proof of service thereof, with the United States Bankruptcy Court Clerk's Office, United States Courthouse, 515 Rusk Avenue, Courtroom 401, 4th Floor, Houston, Texas 77002, on or before the Combined Objection Deadline.

69.    The Debtors further request that they (and other parties in support of the Plan) be authorized to file a brief in support of confirmation of the Plan and in reply to any objections to the adequacy of the Disclosure Statement on a final basis or confirmation of the Plan on or before December 20, 2023.

70.    The Debtors respectfully request that the Court approve the procedures for filing objections to the adequacy of the Disclosure Statement on a final basis and the confirmation of the Plan and replies thereto and find that such procedures comply with Bankruptcy Rules 2002 and 3020 and provide due process to all of the Debtors' stakeholders.

**C.     Proposed Deadline for Filing Plan Supplement Is Appropriate**

71.     Pursuant to the Plan, the Debtors intend to file a supplement to the Plan (the "**Plan Supplement**"), containing certain documents and forms of documents, schedules, and exhibits relevant to the implementation of the Plan, as may be amended, modified, or supplemented from time to time in accordance with the terms of the Plan and the Bankruptcy Code and Bankruptcy Rules, which shall include, but not be limited to, (i) the New Corporate Governance Documents solely with respect to the Reorganized Parent; (ii) the New Secured Convertible Notes Documents; (iii) the New Secured Notes Documents; (iv) the Contingent Payment Obligations Documents; (v) the New Miner Equipment Lender Debt Documents; (vi) the Exit Facility Documents; (vii) the New Warrants Agreement; (viii) the New Intercreditor Agreements; (ix) to the extent known, information required to be disclosed in accordance with section 1129(a)(5) of the Bankruptcy Code; (x) the Restructuring Transactions Exhibit; (xi) the Schedule of Retained Causes of Action; (xii) the Schedule of Rejected Contracts; (xiii) the Schedule of Assumed Contracts; and (xiv) any Management Incentive Plan allocation and related documents, if applicable, each of which shall be in form and substance acceptable to the Debtors and Required Consenting Creditors (subject to the parties' rights and obligations under the RSA); *provided*, that through the Effective Date, the Debtors, with the consent of the Requisite Consenting Creditors, shall have the right to amend the Plan Supplement and any schedules, exhibits, or amendments thereto, in accordance with the terms of the Plan; *provided*, *further*, that the New Corporate Governance Documents of the Reorganized Parent, the New Warrants Agreement, the Rights Offering Procedures and related documents shall also be in form and substance otherwise acceptable to the Equity Committee, and the New Secured Convertible Notes Documents shall also be in form and substance otherwise reasonably acceptable to the Equity

Committee (subject to the parties' rights and obligations under the RSA).

72.     The Debtors request that the Court authorize the Debtors to file the Plan Supplement with the Court by December 8, 2023, which is seven (7) days before the Combined Objection Deadline (the "**Plan Supplement Filing Deadline**").

73.     The Debtors submit that the Plan Supplement Filing Deadline is prudent and attainable under the circumstances of these chapter 11 cases.  Thus, the Debtors respectfully request that the Court approve the Plan Supplement Filing Deadline.

**D.     Procedures with Respect to Assumption, Assumption and Assignment, and Rejection of Executory Contracts and Unexpired Leases**

74.     Article VIII of the Plan will provide that, as of and subject to the occurrence of the Effective Date and the payment of any applicable Cure Amount, and subject to section 8.5 of the Plan, all Executory Contracts and Unexpired Leases to which any of the Debtors are parties shall be deemed assumed, unless such contract or lease (i) was previously assumed or rejected by the Debtors pursuant to Final Order of the Court, (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto, (iii) is the subject of a motion to reject filed by the Debtors on or before the Confirmation Date, or (iv) is specifically designated as a contract or lease to be rejected on the Schedule of Rejected Contracts.  Section 8.1 of the Plan will further provide that the Debtors reserve the right, on or before the Effective Date, to amend the Schedule of Rejected Contracts or the Schedule of Assumed Contracts to add or remove any Executory Contract or Unexpired Lease, with the consent of the Requisite Consenting Creditors; *provided* that the Debtors or Reorganized Debtors, as applicable, may amend the Schedule of Rejected Contracts or Schedule of Assumed Contracts to add or delete any Executory Contracts and Unexpired Leases after such date to the extent agreed with the relevant counterparties and the Requisite Consenting Creditors and entry of an order of the Court.

75.     The Plan will provide that to the maximum extent permitted by law, to the extent any provision in any Executory Contracts or Unexpired Lease assumed pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption of such Executory Contracts or Unexpired Lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contracts or Unexpired Lease or to exercise any other default-related rights with respect thereto.

76.     Pursuant to section 8.2 of the Plan, at least ten (10) days before the Combined Objection Deadline, the Debtors shall serve a notice on parties to Executory Contracts and Unexpired Leases to be assumed, assumed and assigned, or rejected reflecting the Debtors' intention to potentially assume, assume and assign, or reject the Executory Contract or Unexpired Lease in connection with the Plan and, where applicable, setting forth the proposed Cure Amount (if any).  Additionally, section 8.2 of the Plan will provide that any objection by a counterparty to an Executory Contract or Unexpired Lease to the proposed assumption, assumption and assignment, or related Cure Amount must be filed, served, and actually received by the Debtors within fourteen (14) days of the service of the assumption notice, or such shorter period as agreed to by the parties or authorized by the Court.

77.     Section 8.2 of the Plan will also provide that, if there is an Assumption Dispute (as defined in the Plan) pertaining to assumption of an Executory Contract or Unexpired Lease (other than a dispute pertaining to a Cure Amount), such dispute shall be heard by the Court prior to such assumption being effective; *provided,* that the Debtors or the Reorganized Debtors, as applicable, may, with the consent of the Requisite Consenting Creditors, settle any dispute

regarding the Cure Amount or the nature thereof without any further notice to any party or any action, order, or approval of the Court; *provided, further*, *however,* to the extent an Assumption Dispute relates solely to the Cure Amount, the Debtors may assume and/or assume and assign the applicable Executory Contract or Unexpired Lease prior to the resolution of the Assumption Dispute; *provided,* that the Debtors or the Reorganized Debtors, as applicable, reserve Cash in an amount sufficient to pay the full amount reasonably asserted as the required cure payment by the non-Debtor party to such Executory Contract or Unexpired Lease (or such smaller amount as may be fixed or estimated by the Court or otherwise agreed to by such non-Debtor party and the applicable Reorganized Debtor).

78.     The Debtors respectfully submit that notice of the Debtors' assumption of Executory Contracts and Unexpired Leases is appropriate under the circumstances and request that the Court approve such procedures.

### E.     Procedures with Respect to Reinstated Claims[11]

79.     The Plan will propose to Reinstate Other Secured Claims in Class 4 in accordance with section 1124(2) of the Bankruptcy Code.  To Reinstate Claims, section 1124(2) requires the Debtors to, among other things, compensate the Holder for certain damages and losses and cure any outstanding defaults under the applicable Other Secured Claims Agreement.

80.     Section 7.12 of the Plan will provide that, at least ten (10) days before the Combined Objection Deadline, the Debtors shall serve a notice on Holders of Other Secured Claims in Class 4 setting forth the proposed Cure Amount (if any) necessary to Reinstate such Claims.  Additionally, section 7.12 of the Plan will provide that any objection by a Holder of Other Secured Claims in Class 4 to the proposed Cure Amount must be filed, served, and actually

---

[11] These procedures will be included in the forthcoming Plan.

received by the Debtors within fourteen (14) days of the service of the Cure Amount notice, or such shorter period as agreed to by the parties or authorized by the Court.  Any Holder of an Other Secured Claim in Class 4 that does not timely object to the notice of the proposed Cure Amount shall be deemed to have consented to the Reinstatement of its Claim and the proposed Cure Amount listed therein and shall be shall forever be barred and enjoined from objecting to the Reinstatement of its Claim or asserting that any additional Cure Amounts are owed.

81.     Section 7.12 of the Plan will also provide that to the extent there is a dispute pertaining to a Cure Amount, the Debtors may Reinstate the applicable Other Secured Claim prior to the resolution of the Cure Amount Dispute; *provided,* that the Debtors or the Reorganized Debtors, as applicable, reserve Cash in an amount sufficient to pay as the required Cure Amount by the Holder of the applicable Other Secured Claim (or such smaller amount as may be fixed or estimated by the Court or otherwise agreed to by such non-Debtor party and the applicable Reorganized Debtor).

82.     The Debtors respectfully submit that notice of the Debtors' proposed Cure Amounts for Reinstated Claims is appropriate under the circumstances and request that the Court approve such procedures.

**<u>Rights Offering Procedures</u>**

83.     Section 363(b) of the Bankruptcy Code provides, in relevant part, that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate" outside the ordinary course of business when such use or sale is grounded upon a "sound business purpose" and is proposed in good faith. *See, e.g.*, *In re Cont'l Air Lines, Inc.*, 780 F.2d 1223, 122[6] (5th Cir. 1986) ("[F]or a debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of

39

business.").   Once a debtor articulates a valid business justification under section 363, a presumption arises that the debtor's decision was made on an informed basis, in good faith, and in the honest belief the action was in the best interest of the company. *See In re Pisces Energy*, LLC, No. 09-36591-H5-11, 2009 WL 7227880, at *6 (Bankr. S.D. Tex. Dec. 21, 2009) (holding that the 'business judgment test' "requires a showing that the proposed course of action will be advantageous to the estate and the decision be based on sound business judgment"). Further, once "the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). Thus, if a debtor's actions satisfy the business judgment rule, then the transaction in question should be approved under section 363(b)(1) of the Bankruptcy Code.

84.     The Rights Offering is a critical component of the Debtors' proposed restructuring. The Debtors have held extensive arms-length negotiations of the Rights Offering terms.  Approval of the Rights Offering Procedures and the Rights Offering Materials is necessary to successfully effectuate the Rights Offering and will provide the Holders of Existing Common Interests a fair and reasonable opportunity to participate in the Rights Offering. Approval of the Rights Offering Procedures is in the best interests of the Debtors' Estates, creditors, and all other parties in interest, and constitutes an appropriate exercise of business judgment. The form and manner of the Rights Offering Procedures should be approved.

85.     The below contains a summary of the rights offering procedures, attached as **Exhibit 15** to the Proposed Order (the "**Rights Offering Procedures**").   The following summary is (i) qualified in its entirety by reference to the full text of the Rights Offering Procedures and (ii) subject to change.

## A.  General Terms of Rights Offering

86.     Following entry of the Proposed Order, the Debtors will launch a rights offering to Holders of Existing Common Interests (the "**Rights Offering**"), pursuant to which Holders of Existing Common Interests as of the record date set out in the Rights Offering Procedures (the "**Rights Offering Record Date**") will be offered a right (each, a "**Subscription Right**") to subscribe for New Common Interests at an aggregate purchase price of $55 million at a price per New Common Interest that reflects a 30.0% discount to the Plan Equity Value, based on an Enterprise Value of $1.5 billion (the "**Per Share Price**").

87.     The Subscription Forms (as defined below) and Rights Offering Procedures will be distributed to Holders of Existing Common Interests or their nominees on or before November 17, 2023 or as soon as reasonably practicable thereafter (the "**Subscription Commencement Date**").  The Rights Offering shall expire at 5:00 p.m. (Prevailing Eastern Time) on or around December 8, 2023 (the "**Rights Offering Subscription Deadline**"), which may be extended by the Debtors, in consultation with the Requisite Consenting Creditors and the Requisite Commitment Parties[12] or as required by law.  The proposed duration of the Rights Offering will afford Holders of Existing Common Interests twenty-one (21) calendar days to participate in the Rights Offering and is reasonable under the circumstances.

## B.  Subscription and Oversubscription

88.     Each Holder of Existing Common Interests is entitled, subject to and in accordance with the Rights Offering Procedures, to subscribe for New Common Interests being offered in the Rights Offering (the "**ERO Shares**") for aggregate consideration up to such

---

[12] "**Requisite Commitment Parties**" means either (a) those Commitment Parties (as defined below) holding at least 50.1% in amount of the aggregate commitments of the Commitment Parties, or (b) the Equity Committee (acting at the direction of a majority of the members of the Equity Committee).

Holder's pro rata share (measured as the proportion that the aggregate amount of Existing Common Interests held by such Holder bears to the aggregate amount of all Existing Common Interests, in each case, as of the Rights Offering Record Date)[13] of the $55 million at the Per Share Price (such amount subscribed by a subscribing Holder of Existing Common Interests, their "**Aggregate Purchase Price**"); *provided,* that each such Holder timely and properly executes and delivers, or causes execution and delivery by its bank, broker, or other nominee (a "**Subscription Nominee**"), its (i) Subscription Form and (ii) for Holders of Existing Common Interests that are not Commitment Parties, the requisite funds to Stretto, in its capacity as subscription agent for the Rights Offering (the "**Subscription Agent**"), on or before the Rights Offering Subscription Deadline.

89.     Additionally, as discussed in greater detail in the Rights Offering Procedures, each Holder of Existing Common Interests that holds such Existing Common Interests with its Subscription Nominee through The Depository Trust Company ("**DTC**"), to exercise its subscription rights for ERO Shares, it must also direct its Subscription Nominee to tender its Existing Common Interests into the appropriate option on DTC's Automated Tender Offer Program ("**ATOP**") platform by the ATOP Tender Deadline (as defined in the Rights Offering Procedures).

90.     In addition, each Holder of Existing Common Interests as of the Equity Rights Offering Record Date will be granted the right (each, an "**Oversubscription Right**") to elect to purchase additional ERO Shares at the same Per Share Price in the event that less than the $55 million is timely, duly, and validly subscribed and paid for (such unsubscribed New

---

[13] The exercise form appended to the Rights Offering Procedures will have a conversion factor where each Holder can determine how many New Common Interests such Holder can subscribe for based on the number of Existing Common Interests such Holder possesses.

Common Interests, the "**Unsubscribed Shares**" and such election an "**Oversubscription Election**").

91.     The Oversubscription Right will be in an amount not to exceed the total number of ERO Shares minus the total number of ERO Shares that such Holder of Existing Common Interests duly, validly and timely elected to purchase pursuant to its Subscription Right (such amount being referred to herein as the Holder of Existing Common Interest's "**Maximum Oversubscription Amount**"); *provided, however,* that (i) no Holder of Existing Common Interests may exercise an Oversubscription Right until it has also duly, validly and timely exercised in full its Subscription Right and (ii) no Holder of Existing Common Interests (other than the Commitment Parties, as applicable) shall be entitled to participate in the Rights Offering unless its Aggregate Purchase Price and cash consideration on account of its Oversubscription Right (if exercised) (their "**Oversubscription Funding Amount**"), not to exceed its Maximum Oversubscription Amount, is delivered to the Subscription Agent prior to the Rights Offering Subscription Deadline.  Notwithstanding the foregoing, and as set forth in the Rights Offering Procedures and the Backstop Commitment Letter, each Commitment Party that chooses to exercise its Subscription Right must deliver its respective Aggregate Purchase Price and Oversubscription Funding Amount, if any, along with any cash consideration required to fund such Commitment Party's portion of the Backstop Commitment set forth in the Backstop Commitment Letter, if necessary, by December 20, 2023 (the "**Backstop Funding Deadline**").

92.     In the event that the aggregate ERO Shares issuable pursuant to the exercise of Oversubscription Rights exceeds the number of Unsubscribed Shares, each Holder of Existing Common Interests that made an Oversubscription Election will receive its *pro rata* share (measured as the proportion that the Unsubscribed Shares elected to be purchased by each Holder

bears to the aggregate amount of Unsubscribed Shares elected to be purchased by each Holder of Existing Common Interests participating in the Rights Offering that exercises Oversubscription Rights) of the Unsubscribed Common Interests and the difference between the Oversubscription Funding Amount actually paid by such exercising Holder and the Oversubscription Funding Amount that such Holder is required to pay after giving effect to the proration, if any, shall be refunded no later than five (5) Business Days after the Rights Offering Subscription Deadline, or as soon as practicable thereafter.

93.     If a Holder of Existing Common Interests fails to validly exercise its Subscription Right or Oversubscription Right in accordance with the Rights Offering Procedures, such Holder of Existing Common Interests shall be deemed to have irrevocably relinquished and waived its Subscription Right or Oversubscription Right, as applicable.

**C.  Backstop Commitment and Additional Commitment Parties**

94.     The Debtors are in advanced negotiations with certain Holders of Existing Common Interests, including certain members of the Equity Committee, and various other parties (the "**Initial Commitment Parties**") to backstop a minimum of $30 million of the $55 million Rights Offering, with the potential to obtain an additional $25 million of commitments, for up to $55 million of Backstop Commitments (the "**Initial Commitment Amount**").[14]

95.     Following the launch of the Rights Offering, if the Initial Commitment Parties' commitments are less than $55 million, all other Holders of Existing Common Interests that are "accredited investors" or "qualified institutional buyers" within the meaning of the Securities Act of 1933, as amended (the "**Securities Act**"), will have the option to elect to also

---

[14] The Debtors intend to file a separate motion (the "**Backstop Motion**") seeking authority to enter into, and approval of, the backstop commitment letter attached thereto as <u>Exhibit A</u> (the "**Backstop Commitment Letter**").

backstop a portion of the Rights Offering (such electing Holders of Existing Common Interests, the "**Additional Commitment Parties**", and together with the Initial Commitment Parties, the "**Commitment Parties**").  Any amounts committed by the Additional Commitment Parties (the "**Additional Commitment Amount**") shall be added to the Initial Commitment Amount to increase the total commitment amount (the "**Backstop Commitment**").  Additional Commitment Parties will be entitled to receive the same benefits and terms as the Initial Commitment Parties. To become an Additional Commitment Party, prior to November 27, 2023 such party must: (i) complete and return the Subscription Form checking the box indicating that such party will be an Additional Commitment Party; (ii) execute a joinder to the Backstop Commitment Letter in accordance with the terms of the Backstop Commitment Letter; and (iii) satisfy certain other requirements set forth in the Backstop Commitment Letter.

96.     As described in greater detail in the Rights Offering Procedures and in accordance with the terms of the Backstop Commitment Letter, all Initial Commitment Parties must fund the Escrow Account with their Backstop Commitment Deposit (as defined in the Rights Offering Procedures) within three business days after entry of an order approving the Backstop Motion (*i.e.*, November 17, 2023).  All Additional Commitment Parties must fund the Escrow Account with their Backstop Commitment Deposit by November 27, 2023.

97.     Each of the Commitment Parties will agree, pursuant to the Backstop Commitment Letter, to the extent the amount subscribed for through the Rights Offering (including pursuant to the Subscription Rights and Oversubscription Rights) is less than the Backstop Commitment, such Commitment Parties will purchase any unsubscribed ERO Shares up to the Backstop Commitment, as set forth in the Backstop Commitment Letter. Pursuant to the terms and conditions of the Backstop Commitment Letter, the Debtors will pay the Backstop

Commitment Premium (as defined in the Backstop Commitment Letter) to the Commitment Parties.

**D. Applicable Securities Laws**

98.    The ERO Shares issued as part of the Backstop Commitment Premium will be distributed and issued in reliance upon the exemption provided pursuant to section 1145 of the Bankruptcy Code, without further act or action by any entity, from registration under (i) the Securities Act and (ii) any state or local law requiring registration for the offer, issuance, or distribution of securities.

99.    The ERO Shares issuable upon exercise of a Subscription Right or an Oversubscription Right will be distributed and issued in reliance upon the exemption provided pursuant to section 1145 of the Bankruptcy Code, without further act or action by any entity, from registration under (i) the Securities Act and (ii) any state or local law requiring registration for the offer, issuance, or distribution of securities.

100.    Pursuant to the terms and conditions of the Backstop Commitment Letter, and subject to the Court's approval thereof, the ERO Shares issued to the Commitment Parties, if any, on account of their Backstop Commitments (other than the ERO Shares issued as part of the Backstop Commitment Premium) will be distributed and issued without registration under the Securities Act, in reliance upon the exemption provided by section 4(a)(2) thereof and/or the safe harbor of Regulation D, and may not be sold or transferred except pursuant to an effective registration statement or pursuant to an exemption from registration under the Securities Act. Therefore, each of the ERO Shares issued to the Commitment Parties, on account of their Backstop Commitments (as applicable), and each book-entry position or certificate issued in exchange for or upon the transfer, sale or assignment of any such ERO Shares shall be deemed to contain or be stamped or imprinted with, as applicable, a legend in form and substance

substantially similar to the following: THE SECURITIES REPRESENTED BY THIS CERTIFICATE WERE ORIGINALLY ISSUED ON [ISSUANCE DATE], HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "ACT"), OR ANY OTHER APPLICABLE STATE SECURITIES LAWS, AND MAY NOT BE SOLD OR TRANSFERRED IN THE ABSENCE OF AN EFFECTIVE REGISTRATION STATEMENT UNDER THE ACT OR AN AVAILABLE EXEMPTION FROM REGISTRATION THEREUNDER.

**E.  Additional Information**

101.    Upon the Court's approval of the order approving the relief requested in the Backstop Motion, the Debtors plan to file the Rights Offering Procedures with the exercise form attached thereto (the "**Subscription Form**").   The Subscription Form will provide information related to the Rights Offering, including detailed instructions to Holders of Existing Common Interests on how to (i) become an Additional Commitment Party, (ii) exercise their Subscription Rights, and (iii) exercise their Oversubscription Rights.

102.    The Debtors submit that the Rights Offering is being conducted in good faith and in compliance with the Bankruptcy Code. In accordance with section 1125(e) of the Bankruptcy Code, a person that participates, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, in the offer, issuance, sale, or purchase of a security, offered or sold under the plan of the debtor, of an affiliate participating in a joint plan with the debtor, or a newly organized successor to the debtor under the plan, is not liable, on account of participation, for violation of any applicable law, rule, or regulation governing the offer, issuance, sale, or purchase of securities.

103.    All questions concerning the timeliness, viability, form, and eligibility (i) to become an Additional Commitment Party or (ii) of any exercise of Subscription Rights or

Oversubscription Rights will be determined in good faith by the Debtors, and, if necessary, subject to a final and binding determination by the Court. The Debtors may waive or reject any defect or irregularity in, or permit such defect or irregularity to be corrected within such time as they may determine in good faith, the purported exercise of any Subscription Rights or Oversubscription Rights.

104.    Accordingly, the Debtors are seeking this Court's approval of the Rights Offering Procedures in connection with the approval of the Disclosure Statement and respectfully submit that the Rights Offering Procedures are reasonable, in furtherance of the Plan, and in the best interests of the Debtors and their estates.

## **Emergency Consideration**

105.    The Debtors respectfully request emergency consideration of this Motion. The Debtors' goal is to preserve and maximize the value of the Debtors' estates, which hinges in part on minimizing the time spent in chapter 11.

## **Notice**

106.    Notice of this Motion will be served on any party entitled to notice pursuant to Bankruptcy Rule 2002 and any other party entitled to notice pursuant to Local Rule 9013-1(d).

## **No Previous Request**

107.    No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE, the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: November 3, 2023
       Houston, Texas

Respectfully submitted,

  /s/  Alfredo R. Pérez
WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (15776275)
Clifford W. Carlson (24090024)
700 Louisiana Street, Suite 1700
Houston, Texas  77002
Telephone: (713) 546-5000
Facsimile:  (713) 224-9511
Email:  Alfredo.Perez@weil.com
       Clifford.Carlson@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Ray C. Schrock (admitted *pro hac vice*)
Ronit J. Berkovich (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Email:  Ray.Schrock@weil.com
       Ronit.Berkovich@weil.com

*Attorneys for Debtors*
*and Debtors in Possession*

## **Certificate of Service**

I hereby certify that on November 3, 2023, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

  */s/  Alfredo R. Pérez*
Alfredo R. Pérez