United States Bankruptcy Court
Southern District of Texas
**ENTERED**
November 04, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| CORE SCIENTIFIC, INC., *et al.,* | § | Case No. 22-90341 (CML) |
| | § | |
| | § | (Jointly Administered) |
| Debtors.[1] | § | |
| | § | |

### ORDER APPROVING (I) GLOBAL SETTLEMENT BETWEEN DEBTORS AND HARPER CONSTRUCTION COMPANY, INC. AND (II) GRANTING RELATED RELIEF

Upon the motion, dated August 30, 2023 (the "**Motion**"),[2] of Core Scientific, Inc. and its debtor affiliates, as debtors and debtors in possession (collectively, the "**Debtors**"), Debtors request authority for (i) a global settlement between the Debtors and Harper Construction Company, Inc. ("**Harper**" and together with the Debtors, collectively, the "**Parties**" and, each, a "**Party**") on the terms set forth in the Motion, and (ii) granting related relief, as more fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §1334; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and it appearing that venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided, and it appearing that no other or further notice need be provided; and the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions, VII, LLC (3198). The Debtors' corporate headquarters and service address is 210 Barton Springs Road, Suite 300, Austin, Texas 78704.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Court having reviewed the Motion; and all objections, if any, to the Motion having been withdrawn, resolved, or overruled; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interest of the Debtors and their respective estates and creditors; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing,

**IT IS HEREBY ORDERED THAT:**

1. Pursuant to Bankruptcy Rule 9019 and sections 105(a), 362(d), and 363 of the Bankruptcy Code, the global settlement by and between the Debtors and Harper (the "**Harper Settlement**"), on the terms set forth and agreed to in the *Settlement Term Sheet, which incorporated herein by reference* (the "**Term Sheet**") and herein, is authorized and approved.

2. The Debtors are authorized to enter into, execute, deliver, and implement the terms set forth herein and in the Term Sheet, as agreed to by the Parties.

3. The Harper Settlement is the product of extensive, good faith, arms' length negotiations between the Parties and their respective representatives.

4. The Debtors' entry into the Harper Settlement represents a reasonable exercise of the Debtors' sound business judgment under section 363(b)(1) of the Bankruptcy Code.

5. Immediately upon the entry of this Order,

    (a) the Debtors shall reject the Rejected Contracts, and Harper shall not have any claims for rejection damages based on such rejection or otherwise; and

    (b) the Debtors shall have no further interest, if any, in any goods, if any, which remain in the possession of any Subcontractor and which have not been paid for by the Debtors.

6. Within five (5) calendar days after entry of this Order,

(a) the Debtors shall make the Initial Settlement Payment;

(b) the Debtors shall deliver to Harper the Note;

(c) Harper shall deliver to the Debtors final unconditional lien waivers and releases of all the Sub Liens for all work performed at the Muskogee Facility and all goods, labor and materials supplied to, for or in connection with the Debtors or the Muskogee Facility, duly executed by each Subcontractor, in form and substance reasonably acceptable to the Debtors and in recordable form;

(d) the Sub Liens shall be fully and finally released, extinguished and discharged;

(e) that certain Rider Adding Additional Obligee, dated May 10, 2022, by Gaylor Electric, Inc. d/b/a Gaylor, Inc. and Liberty Mutual Insurance Company in favor of the Debtors with respect to Payment and Performance Bond No. 014246826 shall terminate, and the Debtors shall have no further interest in or right to Payment and Performance Bond No. 014246826;

(f) Harper shall transfer to the Debtors, and the Debtors shall assume from Harper, the Environmental Permit;

(g) Harper shall deliver to the Debtors written agreements from the counterparties to each of the Transferred Agreements consenting to the assignment of the applicable Transferred Agreement to Core and, upon receipt of such consents, Harper shall assign to the Debtors, and the Debtors shall assume from Harper, all right, title and interest of Harper in and to the Transferred Agreements, in the form attached as **Annex D** to the Proposed Order; provided that the Debtors shall be solely responsible for the performance of the obligations of

3

Harper under the Transferred Agreements that become due from and after the date of such assignment, solely to the extent relating to facts, occurrences or other circumstances first arising after such assignment, and the Debtors shall assume no other liabilities or obligations of any type whatsoever; and

(h) Harper shall be entitled to the Harper Liens, which shall only secure payment of the principal amount of the Note then outstanding.

7. Within fifteen (15) calendar days of the Emergence Date, the Debtors shall make the Additional Settlement Payment.

8. Within five (5) calendar days following delivery of the Additional Settlement Payment to Harper, Harper shall deliver to the Debtors a partial unconditional lien waiver and release of the Harper Liens in form and substance reasonably acceptable to the Debtors, duly executed by Harper, and in recordable form, which lien waivers shall provide that the amount of the Harper Liens outstanding is $3,000,000.00.

9. Within five (5) calendar days following the full payment of the Note, Harper shall deliver to the Debtors a final unconditional lien waiver and release of the Harper Liens for all work performed at the Muskogee Facility and all goods, labor and materials supplied to, for and in connection with the Debtors or the Muskogee Facility, in form and substance reasonably acceptable to the Debtors, duly executed by Harper, and in recordable form.

10. Harper shall have the Right of First Offer, subject to certain terms and conditions herein.

(a) Until the ROFO End Date, if the Debtors desire to engage a General Contractor to begin construction and development of the Muskogee Facility within twenty-four (24) months following the date of the entry of the Proposed Order, then the Debtors shall deliver

the Trigger Notice to Harper stating that the Debtors desire to engage a General Contractor setting forth the material terms and conditions of the Proposed GC Agreement, but excluding the contract price.

(b) If the Debtors give Harper a Trigger Notice, then Harper may elect in its sole discretion to make an offer to act as the General Contractor for a GC Offer Price and otherwise on the same terms and conditions set forth in the Proposed GC Agreement. Such election shall be made by the Election Notice from Harper to the Debtors within the Contract Offer Period. Within twenty-five (25) calendar days following delivery of Harper's Election Notice, Harper shall deliver to the Debtors a fully executed original counterpart of the Proposed GC Agreement with the GC Offer Price filled in as the proposed contract price.

(c) The Debtors may accept the offer made by Harper (it being agreed that the Debtors shall be deemed to have rejected the offer if it fails to accept the Election Notice in writing within ten (10) calendar days after receipt thereof), by providing written notice thereof to Harper, and in which case Harper shall proceed to act as the General Contractor in accordance with the terms and conditions set forth in the Proposed GC Agreement.

(d) If the Debtors reject (or are deemed to have rejected) the offer contained in the Election Notice or Harper shall fail to deliver an Election Notice within the Contract Offer Period (in which event it shall be deemed to have declined its right to do so), the Debtors shall have the full power and authority to engage an alternative General Contractor on any such terms and conditions which the Debtors are willing to accept thereafter, provided that in the case of rejection (or deemed rejection) by the Debtors of the offer contained in the Election Notice, any engagement of an alternative General Contractor prior to the ROFO End Date shall be for a

contract price not to exceed the GC Offer Price and otherwise on substantially the same overall economic terms set forth in the Proposed GC Agreement.

11.  The Debtors shall make the Permit Reimbursement Payment in their ordinary course of business.

12.  The Debtors shall terminate the Harper Post-Petition Agreement on September 30, 2023, and no damages or other fees shall be payable in connection with such termination. The Debtors shall further remit payment for all services rendered under the Harper Post-Petition Agreement directly to Harper in the ordinary course of business.

13.  Subject to the occurrence of the Emergence Date, the Note shall:

(a) bear interest at the rate of 5% per annum, have a term of thirty (30) months, and be secured by the Harper Liens;

(b) be fully amortized and payable in thirty (30) monthly installments; the first payment date shall occur, and the interest shall begin accruing, on the date that is forty-five (45) calendar days following the Emergence Date;

(c) be voluntarily prepayable at any time and from time to time, in whole or in part, without any penalty or fees;

(d) provide that any voluntary prepayment of the Note shall be immediately applied toward principal, be applied in inverse order of maturity and shall not extend or postpone the due dates of the monthly installments due under the Note or change the amounts of such installments; and

(e) provide that an "Event of Default" shall occur if, among other things, the Debtors fail to pay any monthly installment due under the Note on the payment date when such

monthly installment becomes due, and such failure continues for sixty (60) calendar days after Harper gives written notice thereof to the Debtors;

14. Unless and until an Event of Default occurs, Harper shall be barred from foreclosing or otherwise enforcing the Harper Liens or otherwise taking adverse action against the Debtors or any of the Debtors' assets (including the Muskogee Facility).

15. Immediately upon the entry of this Order, (a) any Claim (as defined in the Bankruptcy Code) held by Harper against the Debtors, including the Harper Claims (including but not limited to Proof of Claim No. 437), shall be deemed finally and fully paid, satisfied, released and expunged, and Harper shall cooperate with the Debtors and take all reasonable steps necessary to obtain release of the Sub Claims, including supporting any objections to the Sub Claims filed by the Debtors; (b) the Debtors and their chapter 11 estates (together, the "**Debtor Releasors**") and Harper and its affiliates (each of the Debtor Releasors and Harper and its affiliates, a "**Releasing Party**" and, collectively, the "**Releasing Parties**"), each on behalf of itself and any other party, person or entity claiming under or through it, hereby completely and finally releases, discharges, acquits, and covenants not to sue (i) each other Releasing Party and its respective current and former agents, servants, officers, directors, shareholders, employees, subsidiaries, divisions, affiliates, parents, attorneys, successors, predecessors, heirs, personal representatives, and assigns (each of the foregoing, including each Releasing Party, a "**Released Party**") from all manners of action, causes of action, judgments, executions, debts, demands, rights, damages, costs, expenses, liens, and claims of every kind, nature, and character whatsoever, whether in law or in equity, whether based on contract (including, without limitation, quasi-contract or estoppel), statute, regulatory, tort (including, without limitation, intentional torts, fraud, misrepresentation, defamation, breaches of alleged fiduciary duty, recklessness, gross negligence, or negligence) or

otherwise, accrued or unaccrued, known or unknown, matured, unmatured, liquidated or unliquidated, certain or contingent, that such releasing Party ever had or claimed to have or now has or claims to have, against any Released Party arising under or related to the Claims, the Liens, the Harper Agreements, or the Muskogee Facility, including, for the avoidance of doubt, any preference, fraudulent transfer, or other avoidance action arising under chapter 5 of the Bankruptcy Code or other applicable law and (ii) each other Releasing Party from any and all other claims or causes of action arising prior to the entry of this Order; and (c) other than as set forth herein, Harper shall not be entitled to receive any other recovery in connection with any claims it has, or could have, asserted in connection with these chapter 11 cases or otherwise.

16. To the extent applicable, the automatic stay pursuant to section 362(a) of the Bankruptcy Code is hereby lifted solely for purposes of implementing the Harper Settlement.

17. The Debtors are authorized to enter into, perform, execute, and deliver all documents, and take all actions, necessary or appropriate to immediately continue and fully implement the Harper Settlement and carry out the relief granted in this Order.  The Debtors and Harper shall do, execute, acknowledge and deliver all such further acts, instruments and assurances and take all such further action as shall be necessary or desirable to fully implement the Harper Settlement, carry out the relief granted in this Order and fully consummate and effect the transactions provided for in this Order.

18. Except as set forth in this Order, nothing contained in the Motion, this Order, or any actions taken by the Debtors pursuant to the relief granted in the Order shall be construed as: (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law, or (iii)  an

approval of an assumption of any lease, sublease, or contract pursuant to section 365 of the Bankruptcy Code.

19. The Debtors and Harper are authorized to take all steps necessary or appropriate to carry out the relief granted in this Order. To the extent that there is any inconsistency between the Term Sheet and this Order or between the Motion and this Order, the provisions of this Order will govern.

20. The Parties will each be responsible for and pay its own legal fees and out-of-pocket expenses in connection with the Claims, the Liens and the chapter 11 cases of the Debtors pending in this Court.

21. This Order shall be immediately effective and enforceable upon its entry.

22. This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Signed: November 04, 2023

_____
Christopher Lopez
United States Bankruptcy Judge