**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| | § | |
| **In re:** | § | **Chapter 11** |
| | § | |
| **CORE SCIENTIFIC, INC.,** *et al.,* | § | **Case No. 22-90341 (DRJ)** |
| | § | |
| | § | **(Jointly Administered)** |
| **Debtors.**[1] | § | |
| | § | |

### DECLARATION OF TODD DUCHENE IN SUPPORT OF DEBTORS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT IN CONNECTION WITH PROOF OF CLAIM NOS. 364 AND 383 FILED BY HARLIN DEAN

I, Todd DuChene, pursuant to section 1746 of title 28 of the United States Code, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

1.       I am Chief Legal and Administrative Officer of Core Scientific, Inc. ("**Core**").  I have served in this capacity, or similar, since 2019.  Prior to joining the Core, I served as a general counsel in private and public companies for nearly 25 years.

2.       I submit this Declaration in support of Core's Opposition to the Motion for Summary Judgment filed by Harlin Dean in connection with Proof of Claim Nos. 364 and 383. Except as otherwise indicated herein, all facts set forth in this declaration are based on my personal knowledge.

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions, VII, LLC (3198).  The Debtors' corporate headquarters and service address is 210 Barton Springs Road, Suite 300, Austin, Texas 78704.

3.      I have reviewed Mr. Dean's motion for summary judgment (the "**Motion**") and supporting appendix and declaration.

4.      Mr. Dean is correct that prior to the closing of Core's acquisition of Blockcap, Inc. ("**Blockcap**"), in July 2021, Mr. Dean and I, at Mr. Dean's request, discussed Mr. Dean's career aspirations with Blockcap following Core's acquisition of Blockcap.  Mr. Dean stated that his employment with Blockcap had not gone as planned, that he had expected to be involved with Blockcap as a public company, that his commute between Dallas and Austin was difficult and that he did not enjoy working with certain Blockcap executives. I expressed to Mr. Dean that I empathized with his difficulties but made it very clear that I was unaware of any determination that had been made regarding the operation of Blockcap following the closing.  At no time did I state or suggest to Mr. Dean that his role would change in any way or that he would not be the lead lawyer for Blockcap. I also expressed that Core was looking forward to working with him and that following Core's acquisition of Blockcap, if Mr. Dean wished, he would continue to lead Blockcap's legal affairs and could have a meaningful role within Core's legal department.  At no time did I ever tell Mr. Dean that Core would acquiesce in his resignation for "Good Reason" or that there was "Good Reason" for his resignation as defined by his Employment Agreement.

5.      In July 2021, as Core was considering whether certain officers of Blockcap would resign following Core's acquisition of Blockcap, Core provided certain Blockcap officers, including Mr. Dean, with a draft resignation letter prepared by Core's outside counsel.

6.      On July 24, 2021, Mr. Dean emailed me stating that he wanted to remain employed at Core until its de-SPAC closed, that he planned to resign from Core at closing, that he

wished to mark up the draft resignation letter, and that he wished to discuss these issues further with me.  A true and correct copy of the July 24, 2021 email is attached hereto as Exhibit 1.

7.      That same day, I responded, "Sure.  Fine with that.  Mark it up however you want.  Again will support fully."  By this statement, I meant to convey that I was fine with Mr. Dean remaining employed with Core until after its de-SPAC transaction closed, and that Core would consider Mr. Dean's proposed revisions to the draft resignation letter.  I never discussed or agreed with Mr. Dean, either before or after the Blockcap transaction closed, that Mr. Dean could resign for "Good Reason" or that "Good Reason" existed for his resignation.  Rather, I simply informed him that he was free to leave his employment when he wanted to, and that if he did, he would receive whatever he was entitled to at that time, under the terms of his Employment Agreement.

8.      I am aware that on July 25, 2021, Mr. Dean emailed his proposed edits to the draft resignation letter to Blockcap's outside counsel.  Core never agreed to Mr. Dean's edits to the draft resignation letter, and to my knowledge, Mr. Dean never signed the draft resignation letter reflecting his proposed edits or tendered a signed copy of that letter to Core.

9.      Core closed its acquisition of Blockcap on July 30, 2021.

10.      Mr. Dean did not resign following the Blockcap merger but rather continued to be employed by Core for more than six months without ever raising any issues concerning any purported diminution in his role or his duties at Core.  In addition, following the merger, Mr. Dean's duties and responsibilities were not diminished and he continued to serve the same functions as he did prior to the merger.

11.      Core's de-SPAC transaction with Power & Digital Infrastructure Acquisition Corp. ("**XPDI**") closed on January 19, 2022.

12.     When Mr. Dean tendered his resignation on February 10, 2022, he claimed to resign for "Good Reason" but did not explain or provide any support for what the purported "Good Reason" was.

13.     Contrary to what Mr. Dean asserts in his declaration and the Motion, I never told Mr. Dean that Core would acquiesce in his resignation for "Good Reason," that the terms of Mr. Dean's Employment Agreement could be read to support a resignation for "Good Reason," or that Core would accelerate the vesting of any restricted stock or options under his equity Award Agreements. In addition, I am not aware of anyone else at Core, including Mr. Levitt, its then CEO, having agreed that Mr. Dean could resign for Good Reason.

14.     On February 17, 2022, Mr. Dean forwarded to me an email he sent to Core's Human Resource department on February 15, 2022, claiming that Core rejected his resignation for Good Reason and terminated his employment effective February 14, 2022.  That allegation is not true.  Core disputed that Mr. Dean's resignation qualified as one for "Good Reason" pursuant to his Employment Agreement.  Because Mr. Dean had already given notice of his resignation on February 14, Core told Mr. Dean he did not need to remain on the payroll for an additional two weeks and that his resignation would be effective that same day.

15.     In Mr. Dean's February 17, 2022 email to me, he claimed, among other things, that I had repeatedly stated to him that his resignation for Good Reason would be accepted and that he would receive all of the equity under his Award Agreements per the terms of his Employment Agreement.  That allegation is also patently false.  Accordingly, that same day I replied to Mr. Dean's email to set the record straight and respond to his false accusations.  A true and correct copy of my February 17, 2022 email is attached hereto as Exhibit 2.

16.     I explained to Mr. Dean, "I never uttered the word 'good reason' to you nor have you and I ever engaged in a good reason discussion." *Id.* I also responded, in pertinent part:

> You have indicated repeatedly from even before the completion of the acquisition of Blockcap that you intended to resign and never in those conversations did you express that it would be for "good reason". [Sic] I have expressed to you that you could resign at any time at your convenience and you would receive what you were entitled to. Specifically, the only discussion we had was that you wanted to stay beyond the date of the XPDI merger so that your equity was not net share settled pursuant to the terms of the Merger Agreements. In fact, you recently sent me an email inquiring about such treatment without also informing me as a courtesy that you had submitted your resignation. As for the allegation that we, and not you, have breached your employment agreement, I'll simply let the facts speak for themselves.

*Id.*

17.     Following my email exchange with Mr. Dean on February 17, 2022, the parties were unable to resolve their disputes concerning Mr. Dean's resignation from Core.

18.     I understand that Mr. Dean is also asserting that he should have been given certain shares of stock on January 19, 2022, following Core's go-public event. In my prior declaration of September 19, 2023, I explained certain factors that would be required before any stock could be distributed and subsequently traded. Once Core went public, it needed to ensure the correct distribution of shares for all employees from Computershare to Core's Fidelity platform, and that process took time to ensure that it was done correctly. That process was not complete until March 10, 2022. Even if an employee had "vested" shares on the date of Core's go-public event, that would not mean they would have been distributed to the employee on the date of the go-public event and it would not mean the shares were immediately tradeable. By the time of Mr. Dean's resignation, Core had not yet completed the procedural steps necessary for

distributing employee stock to its Fidelity platform.  Mr. Dean was well aware of this process of moving all employee equity grants to Fidelity and that it would take several weeks.

19.     In addition to those factors, it is also the case that before Core employees can receive shares of Core common stock issuable upon the vesting of restricted stock and stock options, the employee must satisfy the statutory tax withholding applicable to the value of the shares vested and to be received.

Pursuant to 28 U.S.C § 1746, I hereby declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated:  November 9, 2023
Austin, Texas

By:     */s/ Todd DuChene*
        Todd DuChene

6