**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CORE SCIENTIFIC, INC. *et al.*,[1] | ) | Case No. 22-90341 (CML) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | [Re: Docket No. 1384, 1410] |

**STATEMENT OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS**
**REGARDING DEBTORS' EMERGENCY MOTION FOR, AMONG OTHER**
**THINGS, CONDITIONAL APPROVAL OF DISCLOSURE STATEMENT**

The Official Committee of Unsecured Creditors (the "Creditors' Committee") of Core

Scientific, Inc. and its debtor affiliates in the above-captioned cases (collectively, the "Debtors")

submits this statement regarding the *Emergency Motion of Debtors for Entry of Order*

*(I) Scheduling Combined Hearing on (A) Adequacy of Disclosure Statement and (B) Confirmation*

*of Plan; (II) Conditionally Approving Disclosure Statement and Form and Manner of Notice of*

*Conditional Disclosure Statement Hearing; (III) Establishing Solicitation and Voting Procedures;*

*(IV) Establishing Notice and Objection Procedures for Confirmation of Proposed Plan; (V)*

*Approving Notice Procedures for Assumption or Rejection of Executory Contracts and Unexpired*

*Leases; (VI) Approving Notice Procedures for Reinstatement of Claims; (VII) Establishing Rights*

*Offering Procedures; and (VIII) Granting Related Relief* [Docket No. 1384] (the "Disclosure

Statement Motion").

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (N/A); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions, VII, LLC (3198). The Debtors' corporate headquarters and service address is 210 Barton Springs Road, Suite 300, Austin, Texas 78704.

1.      In light of the Debtors' agreement to make certain modifications to the Disclosure Statement (as defined below) and accompanying order as set forth below, the Creditors' Committee does not object to the Disclosure Statement Motion.  However, absent modifications, the Creditors' Committee intends to object to the *Third Amended Joint Chapter 11 Plan of Core Scientific, Inc. and its Affiliated Debtors* [Docket No. 1407] (the "Plan") because it believes that the Plan is unconfirmable as currently drafted.[2]

2.      The Plan is the product of negotiations primarily between the Debtors, the Convertible Noteholders, and the Equity Committee.  The Creditors' Committee was not included in those negotiations or the related mediation.  Predictably, as set forth in more detail in the Creditors' Committee's below insert to the Disclosure Statement, the Plan significantly benefits both the Convertible Noteholders and Holders of Existing Common Interests (*i.e.*, existing equity holders).  At the same time, the Plan squeezes Holders of General Unsecured Claims by failing to provide them with consideration equivalent to what is being provided to Convertible Noteholders to achieve their par recovery.  As a result, Holders of General Unsecured Claims are not being paid in full under the Plan in violation of the absolute priority rule.  Although the Creditors' Committee believes that the flaws in the Plan are evident on their face, the Creditors' Committee is not objecting to the Disclosure Statement on the basis that the Plan is patently unconfirmable. Nonetheless, Holders of General Unsecured Claims need to be aware of the Creditors' Committee's concerns and its recommendation to vote against the Plan unless it is modified accordingly.

3.      The Creditors' Committee believes that its concerns with the Plan should be easily resolvable.  As noted at the October 23rd status conference, the Creditors' Committee made a

---

[2]   Unless otherwise defined, capitalized terms used herein have the meanings ascribed to them in the Plan.

proposal to the Debtors on October 20th to consensually resolve the Creditors' Committee's

concerns with the Plan.   To date, the Creditors' Committee has not received a response or a

counterproposal, but it remains ready, willing, and able to promptly reach a consensual resolution

as soon as the Plan parties are prepared to engage.   In the absence of a consensual resolution, the

Creditors' Committee intends to object to confirmation of the Plan on, among other grounds, those

set forth in the following insert to the *Disclosure Statement for Third Amended Joint Chapter 11

Plan of Core Scientific, Inc. and its Affiliated Debtors* [Docket No. 1410] (the "<u>Disclosure

Statement</u>") and seek appropriate discovery of the Plan parties.[3]   Because the current Plan

confirmation schedule is tight, litigating the Creditors' Committee's anticipated objection to the

Plan will require cooperation from those parties; failing that, the Creditors' Committee reserves

the right to request that the Court alter the confirmation schedule accordingly.

### Creditors' Committee's Recommendation

As detailed below, the Creditors' Committee believes that the Plan is not confirmable. Accordingly, the Creditors' Committee recommends that all Holders of General Unsecured Claims (Class 8) vote against the Plan.

The Creditors' Committee asserts that the Plan violates a fundamental bankruptcy law principle known as the "absolute priority rule." The absolute priority rule requires that the claims of a dissenting senior class of creditors be paid in full under a chapter 11 plan before any junior class of claims or interests receives a distribution under the plan.  For example, the absolute priority rule requires that holders of general unsecured claims be paid in full before holders of equity interests receive any distribution.

The Creditors' Committee interprets the Plan as follows:

Here, the Plan purports to make payments in full to April Convertible Notes Secured Claims (Class 1), August Convertible Notes Secured Claims (Class 2), and General Unsecured Claims (Class 8). The Plan satisfies the Convertible Notes Secured Claims (Classes 1 and 2) by providing Holders thereof with debt instruments in the amount of $410 million.  The remaining Convertible Notes Secured Claims of approximately $300 million, along with General Unsecured Claims, will be satisfied by equitizing such Claims and by providing Holders thereof with New Common Interests based on an estimated Plan equity value of $795 million.   However, in order to ensure that

---

[3]   The Debtors have included this insert, together with their response thereto, in Section I(D), pages 23–24 of the Disclosure Statement.

Convertible Notes Secured Claims are paid in full, the Plan also proposes to give the Holders thereof additional equity rights and protections that are not being provided to Holders of Class 8 General Unsecured Claims. The Creditors' Committee believes that if it is necessary to include such additional consideration to provide payment in full to Holders of Convertible Notes Secured Claims, then that additional consideration is also required to be given to Holders of General Unsecured Claims in order for them to be paid in full. Thus, by not providing the additional consideration to the members of Class 8 while providing a distribution to Holders of Existing Common Interests (*i.e.*, existing equity holders) (Class 13), the Plan violates the absolute priority rule.

The three forms of additional consideration being provided to Holders of the Convertible Notes Secured Claims in order to satisfy such Claims in full—which are not being provided to the Holders of General Unsecured Claims—are detailed below:

- <u>Contingent Payment Obligations</u>. In addition to the New Common Interests, the Convertible Noteholders will receive up to $130 million in contingent payment obligations. The Convertible Noteholders will be entitled to these payments if the fair market value of their New Common Interests falls below Plan equity value in the years following the Effective Date. In other words, the contingent payment obligations are a form of "downside protection." In the event the market eventually determines that the New Common Interests used to satisfy the Convertible Noteholders in full were overvalued, the contingent payment obligations ensure that the Convertible Noteholders will receive additional value from the Reorganized Debtors. The Creditors' Committee believes that, conceptually, the contingent payment obligations are similar to a corporate debt obligation that should reduce Plan equity value, though no reduction is contemplated here. The contingent payment obligations are a critical component of the consideration being provided to the Convertible Noteholders in order to satisfy their Claims in full. The Creditors' Committee believes that without providing these same contingent payment obligations (or some other form of additional consideration) to the Holders of General Unsecured Claims, the Plan cannot provide a distribution to Holders of Existing Common Interests without running afoul of the absolute priority rule.

- <u>ERO Shortfall</u>. The Debtors will fund Plan distributions and go-forward operations, in part, through a $55 million equity rights offering ("<u>ERO</u>"). If the Debtors raise less than $55 million, the Plan provides that New Common Interests equal to the difference between (a) the amount raised and (b) $55 million will be distributed to the Exit Lenders and the Convertible Noteholders. The Convertible Noteholders receiving New Common Interests as a result of the ERO shortfall are not foregoing other forms of value received under the Plan. The Creditors' Committee believes that this incremental distribution of New Common Interests is simply a way to increase recoveries to the Convertible Noteholders. Again, the Creditors' Committee's position is that if such additional consideration is necessary to satisfy Convertible Notes Secured Claims in full, it should equally be necessary to satisfy General Unsecured Claims in full.

- <u>Incremental Convertible Noteholder Equity Distribution</u>. In the event the fees incurred by the professionals representing the Holders of Existing Common Interests exceed certain thresholds, the Convertible Noteholders will receive additional New Common Interests.

The Convertible Noteholders receiving New Common Interests as a result of this incremental Convertible Noteholder equity distribution are not forgoing other forms of value to be received under the Plan. The Creditors' Committee believes that this incremental distribution of New Common Interests is simply a way to increase recoveries to the Convertible Noteholders.

As noted above, the Plan does not provide Holders of General Unsecured Claims with the foregoing additional forms of consideration. The Creditors' Committee believes that until these additional forms of consideration—which are essential to paying the Convertible Notes Secured Claims in full—are provided to Holders of General Unsecured Claims, the Plan violates the absolute priority rule and therefore cannot be confirmed. To the extent the Debtors argue that the Convertible Noteholders are being paid in full solely through the debt and equity components of their distribution (and, as a result, it is not necessary to provide Holders of General Unsecured Claims with any additional consideration), then the Creditors' Committee asserts that the additional consideration being provided to the Convertible Noteholders would result in a violation of the "reverse absolute priority rule," which provides that a senior class of creditors cannot receive more than payment in full on account of its claims.

The Creditors' Committee believes that the Plan also violates the absolute priority rule for a second, unrelated reason. In a "solvent debtor" case such as this—where holders of existing equity interests will receive a distribution—holders of general unsecured claims are entitled to post-petition interest. The Creditors' Committee believes that controlling case law in the Fifth Circuit mandates that general unsecured creditors in a solvent debtor case are entitled to interest based on the higher of (a) the interest rate set forth in such creditor's contract (*i.e.*, the contract rate), or (b) the Federal Judgment Rate. Article 4.8(c) of the Plan provides that Holders of General Unsecured Claims will be entitled to interest calculated at the lower Federal Judgment Rate. Therefore, the Creditors' Committee's view is that unless the Plan is amended to provide that Holders of General Unsecured Claims are entitled to be paid post-petition interest at the contract rate (where applicable), the Plan violates the absolute priority rule by providing a distribution to Holders of Existing Common Interests without paying Holders of General Unsecured Claims in full.

**Taking all of the above into consideration, the Creditors' Committee has concluded that the Plan is not confirmable. Accordingly, the Creditors' Committee recommends that all members of Class 8 General Unsecured Claims vote against the Plan.**

4.      In addition to the concerns with the Plan set forth in the insert, following the filing of the Plan and the Disclosure Statement, the Creditors' Committee requested that the Debtors modify the Plan's classification scheme to avoid the inequitable result of certain creditors not actually receiving the same recovery as Holders of General Unsecured Claims nonetheless voting in Class 8. Specifically, the Creditors' Committee requested that Holders of Miner Equipment Lender Deficiency Claims making "Miner Equipment Lender Treatment Election 2" not be

allowed to vote their deficiency claims in Class 8 with General Unsecured Claims.  Absent this modification, Holders of those Miner Equipment Lender Deficiency Claims—who are receiving a note in full and final satisfaction of both their secured and deficiency claims and are required to "waive" their distribution on account of their inflated Class 8 deficiency claims—would have swamped Class 8 and potentially limited general unsecured creditors' rights to vote as a class to oppose the Plan.  The Debtors have agreed to modify the operative documents to rectify this issue.

*[remainder of the page left intentionally blank]*

Dated:      November 13, 2023
             Houston, Texas

Respectfully submitted,

**WILLKIE FARR & GALLAGHER LLP**

By:  */s/ Jennifer J. Hardy*
Jennifer J. Hardy (Texas Bar No. 24096068)
600 Travis Street
Houston, Texas 77002
Telephone:  713-510-1700
Facsimile:  713-510-1799
Email:  jhardy2@willkie.com

-and-

Brett H. Miller (admitted *pro hac vice*)
Todd M. Goren (admitted *pro hac vice*)
James H. Burbage (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone: 212-728-8000
Facsimile: 212-728-8111
Email: bmiller@willkie.com
       tgoren@willkie.com
       jburbage@willkie.com

*Counsel for the Official Committee of Unsecured Creditors*

**<u>Certificate of Service</u>**

I certify that on November 13, 2023, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.


By:  *<u>/s/ Jennifer J. Hardy</u>*
           Jennifer J. Hardy