IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | § § § | Chapter 11 |
| CORE SCIENTIFIC, INC., *et al.*, | § § | Case No. 22-90341 (CML) |
| Debtors[1] | § § § | (Jointly Administered) |

**ORDER (I) SCHEDULING COMBINED HEARING ON
(A) ADEQUACY OF DISCLOSURE STATEMENT AND
(B) CONFIRMATION OF PLAN; (II) CONDITIONALLY APPROVING
DISCLOSURE STATEMENT AND FORM AND MANNER OF
NOTICE OF CONDITIONAL DISCLOSURE STATEMENT HEARING;
(III) ESTABLISHING SOLICITATION AND VOTING PROCEDURES;
(IV) ESTABLISHING NOTICE AND OBJECTION PROCEDURES
FOR CONFIRMATION OF PROPOSED PLAN; (V) APPROVING
NOTICE PROCEDURES FOR THE ASSUMPTION OR REJECTION OF
EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (VI) APPROVING NOTICE
PROCEDURES FOR REINSTATEMENT OF CLAIMS; (VII) ESTABLISHING
RIGHTS OFFERING PROCEDURES; AND (VIII) GRANTING RELATED RELIEF[2]**

Upon the emergency motion, dated November 3, 2023 (the "**Motion**"), Core Scientific,

Inc., and its debtor affiliates in the above-captioned chapter 11 cases, as debtors and debtors in

possession (collectively, the "**Debtors**"), for entry of an order pursuant to sections 365, 1124,

1125, 1126, 1128, and 105 of title 11 of the United States Code (the "**Bankruptcy Code**"),

Rules 2002, 3001, 3016, 3017, 3018, 3020, 6004, and 9006 of the Federal Rules of Bankruptcy

Procedure (the "**Bankruptcy Rules**"), Rules 2002-1 and 3016-1 of the Bankruptcy Local Rules

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions VII, LLC (3198). The Debtors' corporate headquarters is 210 Barton Springs Road, Suite 300, Austin, Texas 78704. The Debtors' service address is 2407 S. Congress Ave, Suite E-101, Austin, Texas 78704

[2] For the avoidance of doubt, this Order amends and supersedes the Order entered at (Docket No. 1426).

for the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Local Rules**"), and the Procedures for Complex Chapter 11 Cases in the Southern District of Texas (effective as of January 1, 2023, the "**Complex Case Procedures**"), the Debtors request entry of an order (this "**Order**"):

    i.    scheduling a combined hearing ("**Combined Hearing**") to approve the Disclosure Statement and consider confirmation of the *Third Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors* (Docket No. 1438) (including any exhibits and schedules thereto and as may be modified, amended, or supplemented, the "**Plan**").[3]

    ii.    conditionally approving the *Disclosure Statement for Third Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors* (Docket No. 1439) (including any exhibits and schedules thereto and as may be modified, amended, or supplemented, the "**Disclosure Statement**") as containing adequate information pursuant to section 1125 of the Bankruptcy Code;

    iii.    approving the form and manner of notice of the hearing to conditionally consider the proposed Disclosure Statement;

    iv.    approving the form and manner of the notice (the "**Combined Hearing Notice**") of the Combined Hearing, substantially in the form attached hereto as **Exhibit 1**;

    v.    approving procedures for (a) soliciting, receiving, and tabulating votes to accept or reject the Plan and (b) voting to accept or reject the Plan (the "**Solicitation and Voting Procedures**"), substantially in the form attached hereto as **Exhibit 2**;

    vi.    approving the ballots (the "**Ballots**") the Debtors will send to Holders of Claims and Interests entitled to vote to accept or reject the Plan, substantially in the forms attached hereto as **Exhibits 3–12**;

    vii.    finding that the solicitation materials and documents included in the solicitation packages  to be sent to Holders of Claims and Interests entitled to vote to accept or reject the Plan (the "**Solicitation Packages**") are in compliance with Bankruptcy Rules 2002(b) and 3017(d);

    viii.    approving the form of notice that the Debtors will send to Holders of Claims and Interests that are Unimpaired under the Plan and that are, pursuant to section 1126(f) of the Bankruptcy Code, conclusively presumed to accept the Plan, and

---

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Disclosure Statement, the Plan, or the Motion, as applicable.

(the "**Notice of Non-Voting Status**"), substantially in the form attached hereto as **Exhibit 13**,

ix.    approving the form of opt-out that the Debtors will send to Other Beneficial Owners (as defined below) and Holders of Claims and Interests that are Unimpaired under the Plan and that are, pursuant to section 1126(f) of the Bankruptcy Code, conclusively presumed to accept the Plan (the "**Release Opt Out Form**"), substantially in the form attached hereto as **Exhibit 14**;

x.     establishing **December 13, 2023 at 5:00 p.m. (Prevailing Central Time)** as the deadline by which Holders of Claims and Interests entitled to vote may vote to accept or reject the Plan (the "**Voting Deadline**");

xi.    establishing **December 15, 2023 at 5:00 p.m. (Prevailing Central Time)** as the deadline to object to adequacy of the Disclosure Statement and confirmation of the Plan (the "**Combined Objection Deadline**");

xii.   approving the procedures for assumption, assumption and assignment, or rejection of the Debtors' executory contracts and unexpired leases (the "**Executory Contracts and Unexpired Leases**");

xiii.  approving the procedures for noticing and resolving disputes relating to proposed Cure Amounts (as defined in the Plan) (if any) for the Reinstatement of Other Secured Claims in Class 4 (the "**Reinstatement Cure Procedures**");

xiv.   approving the proposed procedures for the Rights Offering (the "**Rights Offering Procedures**"); and

xv.    granting related relief.

all as more fully set forth in the Motion; and this Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion; and this Court having held a hearing to consider the relief requested in the Motion (the "**Conditional Disclosure Statement Hearing**"); and all objections, if any, to the Motion having been withdrawn, resolved, or overruled; and this Court having determined that the

legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtors and their respective estates and creditors; and upon all of the proceedings had before this Court and after due deliberation and sufficient cause appearing therefor,

## IT IS HEREBY ORDERED THAT:

**Conditional Approval of Disclosure Statement.**

1.      The Disclosure Statement is hereby conditionally approved as providing Holders of Claims and Interests entitled to vote on the Plan with adequate information to make an informed decision as to whether to vote to accept or reject the Plan within the meaning of section 1125 of the Bankruptcy Code and complies with Bankruptcy Rule 3016(c) and is subject to final approval of the Court at the Combined Hearing.  No further or additional information is necessary or required.

2.      The Disclosure Statement (including all applicable exhibits thereto) provides Holders of Claims and Interests and other parties in interest with sufficient notice of the proposed settlement, injunction, exculpation, and release provisions contained in Article X of the Plan, in accordance with Bankruptcy Rule 3016(c).

3.      The procedures pursuant to which the Debtors provided notice to the parties entitled to notice of the time, date, and place of the Conditional Disclosure Statement Hearing provided due, proper, and adequate notice, comport with due process, and comply with all applicable Bankruptcy Rules and Bankruptcy Local Rules.  No further notice is required or necessary.

**Approval of Solicitation and Voting Procedures and Materials and Timeline for Soliciting Votes for Confirming Plan.**

**Solicitation and Voting Procedures.**

4.      The Solicitation and Voting Procedures, attached hereto as **Exhibit 2**, provide for a fair and equitable voting process and are consistent with section 1126 of the Bankruptcy Code and Bankruptcy Rules 3017 and 3018 and are hereby approved in their entirety.

5.      The Debtors are hereby authorized to solicit, receive, and tabulate votes to accept the Plan in accordance with the Solicitation and Voting Procedures.  The solicitation period during which the Debtors will solicit votes to accept or reject the Plan is a reasonable and sufficient period of time for Holders of Claims and Interests in the Voting Classes to make an informed decision regarding whether to accept or reject the Plan and timely return Ballots evidencing such decision.

6.      In accordance with the Backstop Commitment Letter, a Commitment Party shall be deemed to have voted to accept the Plan upon the funding of its Backstop Commitment Deposit to the Escrow Account by the Deposit Deadline (or thereafter, at the sole discretion of the Debtors).

**Solicitation and Confirmation Timeline.**

7.      The following dates and deadlines are hereby established (subject to modification as necessary) are approved with respect to the solicitation of the Plan, voting on the Plan, and confirmation of the Plan, as well as filing objections to confirmation of the Plan and approving the Disclosure Statement on a final basis:

| PROPOSED SOLICITATION AND CONFIRMATION TIMETABLE | |
| --- | --- |
| Voting Record Date for Holders of Claims and Interests | **November 9, 2023** |
| Conditional Disclosure Statement Hearing | **November 14, 2023 at 2:00 p.m. (Prevailing Central Time)** |

| PROPOSED SOLICITATION AND CONFIRMATION TIMETABLE | |
|---|---|
| Rights Offering Record Date | **November 16, 2023** |
| Mailing Deadline for Combined Hearing Notice<br><br>Solicitation Mailing Deadline<br><br>Rights Offering Subscription Period Commences<br><br>Deadline for Commitment Parties to fund Backstop Commitment Deposit to the Escrow Account (as defined in the Rights Offering Procedures) | **November 17, 2023 (or as soon as reasonably practicable thereafter)** |
| Deadline for Debtors to File Claims Objections for Voting Purposes or to Request Claim Estimation for Voting Purposes | **December 1, 2023 at 5:00 p.m. (Prevailing Central Time)** |
| Mailing Deadline for Cure Amounts and Filing of Cure Notice | **December 5, 2023** |
| Plan Supplement Filing Deadline<br><br>Rights Offering Subscription Deadline<br><br>Deadline for Subscription Rights Holder to Remit Payment to Subscription Agent | **December 8, 2023** |
| Rule 3018(a) Motion Deadline | **December 8, 2023 at 5:00 p.m. (Prevailing Central Time)** |
| Voting Deadline and Opt Out Deadline<br><br>Deadline to Send Funding Notice to Commitment Parties | **December 13, 2023 at 5:00 p.m. (Prevailing Central Time)** |

| PROPOSED SOLICITATION AND CONFIRMATION TIMETABLE | |
|---|---|
| Deadline to Object to Disclosure Statement and Plan | **December 15, 2023 at 5:00 p.m. (Prevailing Central Time)** |
| Ballot Certification Deadline | **December 18, 2023** |
| Assumption and Cure Objection Deadline | **December 19, 2023** |
| Deadline to File Confirmation Brief and Reply to Plan Objection(s)<br><br>Backstop Commitment Funding Deadline | **December 20, 2023** |
| Combined Hearing | **December 22, 2023 at 10:00 a.m. (Prevailing Central Time) (subject to Court's availability)** |

**Solicitation Packages.**

8.     The Solicitation Packages, and each of the documents contained therein (substantially in the form attached hereto), including, but not limited to, the Ballots, are APPROVED.

9.     The Debtors shall mail, or cause to be mailed, the Solicitation Packages on or before the Solicitation Mailing Deadline, or as soon as reasonably practicable thereafter, to Holders of Claims and Interests in the Voting Classes entitled to vote on the Plan as of the Voting Record Date, as required by Bankruptcy Rule 3017(d).   The Debtors shall also provide complete Solicitation Packages (excluding Ballots) to the U.S. Trustee and all parties required to be notified under Bankruptcy Rule 2002 and Local Rule 2002-1.

10.     Solicitation Packages shall contain copies of:

(a)     this Order (without attachments, except as set forth below);

(b)     the Disclosure Statement with all exhibits thereto, including the Plan;

(c)     Solicitation and Voting Procedures, substantially in the form attached hereto as **Exhibit 2**;

(d)     the Combined Hearing Notice, substantially in the form attached hereto as **Exhibit 1**;

(e)     the applicable form of Ballot customized (where possible and appropriate) for such holder, substantially in the form of Ballots attached hereto as **Exhibits 3–12**;

(f)     a letter from the Equity Committee supporting the Plan and recommending that the Holders of Existing Common Interests in Class 12 vote to accept the Plan, attached hereto as **Exhibit 16**; and

(g)     a postage-prepaid return envelope.

11.     The Debtors are authorized to serve the Plan, Disclosure Statement, and this Order (without attachments except the Solicitation and Voting Procedures) via USB flash drive, such that only the Ballots and the Combined Hearing Notice shall be served in paper format, except as otherwise provided in this Order and the Solicitation and Voting Procedures.  Any creditor or equity holder for which service by USB flash drive imposes a hardship may request an additional copy of the Disclosure Statement (and attachments) and Order (without attachments except the Solicitation and Voting Procedures) in paper format by contacting Stretto through (i) e-mail at CoreScientificInquiries@stretto.com, (ii) by writing to Core Scientific, Inc., c/o Ballot Processing Center, C/O Stretto, Inc. 410 Exchange, Suite 100 Irvine, CA 92602, or (iii) via telephone at (949).404.4152 (Toll-Free) or +1888.765.7875 (if calling from outside the U.S.).  Upon receipt of an email, telephonic, or written request, the Debtors shall provide such creditor with a paper copy of the Plan and the Disclosure Statement at no cost to the creditor within five (5) days, or as soon as reasonably practicable thereafter.

12.     The Voting Agent is authorized to assist the Debtors in (i) distributing the Solicitation Packages, (ii) receiving, tabulating, and reporting on Ballots cast to accept or reject the Plan by Holders of Claims and Interests, (iii) responding to inquiries from Holders of Claims and Interests and other parties in interest relating to the Disclosure Statement, the Plan, the Ballots, the Solicitation Packages, and all other related documents and matters related thereto, including the procedures and requirements for voting to accept or reject the Plan and for objecting to the Plan, (iv) soliciting votes on the Plan, and (v) if necessary or appropriate, contacting creditors and equity Holders regarding the Plan, the Ballots, the Solicitation Packages and all other related documents and matters related thereto.

13.     Holders of transferred Claims entitled to vote on the Plan shall receive a Solicitation Package only if: (i) all actions necessary to transfer such Claim are completed by the Voting Record Date or (ii) the transferee files, by the Voting Record Date, (a) all documentation required by Bankruptcy Rule 3001(e) to evidence the transfer and (b) a sworn statement of the transferor supporting the validity of the transfer. In the event a Claim is transferred after the Voting Record Date, the transferee of such Claim shall be bound by any vote or election on the Plan made by the Holder of such Claim as of the Voting Record Date.

14.     The Voting Agent is authorized to accept Ballots (i) by first-class mail in the return envelope provided with each Ballot, (ii) by overnight courier, (iii) by hand delivery, or (iv) via Stretto's online balloting portal at https://cases.stretto.com/CoreScientific.  The encrypted Ballot data and audit trail created by electronic submission via Stretto's E-Ballot shall become part of the record of any Ballot submitted in this manner and the creditor's electronic signature shall be deemed to be immediately legally valid and effective.

15.     The Debtors are authorized, but not required, to (i) waive any defects or irregularities as to any Ballot at any time, either before or after the Voting Deadline, or (ii) extend the Voting Deadline; *provided*, that any such waivers or extensions shall be subject to the consent of the Requisite Consenting Creditors and documented in the Voting Agent's Voting Report.

16.     The Debtors are not required to mail Solicitation Packages or Notices of Non-Voting Status to Holders (i) that have Claims and Interests that have already been paid in full during these chapter 11 cases, (ii) whose prior mailings in these chapter 11 cases were returned as undeliverable and that have not provided a forwarding address by the Voting Record Date,[4] and (iii) that have Claims or Interests, as applicable, in Class 9 (Intercompany Claims) or Class 10 (Intercompany Interests).  In the event that the United States Postal Service returns some Solicitation Packages or Notices of Non-Voting Status as undeliverable, the Debtors shall be excused from re-mailing such Solicitation Packages or Notices of Non-Voting Status.  The failure to mail such Solicitation Packages, Notices of Non-Voting Status, or any other materials related to voting or confirmation of the Plan to such entities will not constitute inadequate notice of the Combined Hearing or the Voting Deadline and shall not constitute a violation of Bankruptcy Rule 3017.

**Notice of Non-Voting Status.**

17.     The Notice of Non-Voting Status is APPROVED.

18.     The proposed form and manner of service of the Notice of Non-Voting Status provide due, proper, and adequate notice, comport with due process, and comply with all

---

[4] For purposes of serving the Solicitation Packages, the Debtors are authorized to rely on the address information for Voting and Non-Voting Classes as compiled, updated, and maintained by the Voting Agent as of the Voting Record Date, and the Debtors and the Voting Agent are not required to conduct any additional research for updated addresses based on undeliverable Solicitations Packages (including Ballots).

applicable Bankruptcy Rules and Bankruptcy Local Rules.  No further notice is required or necessary.

19.     Except to the extent that the Debtors determine otherwise, the Debtors are not required to provide Solicitation Packages to Holders of Claims and Interests in Non-Voting Classes, as such Holders are not entitled to vote on the Plan.  Instead, on or before the Solicitation Mailing Deadline, or as soon as reasonably practicable thereafter, the Voting Agent shall mail a Notice of Non-Voting Status, substantially in the form attached hereto as **Exhibit 13**, a Combined Hearing Notice, substantially in the form attached hereto as **Exhibit 1**, and a Release Opt Out Form, substantially in the form attached hereto as **Exhibit 14** to the Holders of Claims in Class 4 (Other Secured Claims) and Class 7 (Priority Non-Tax Claims) in lieu of a Solicitation Package.

20.     The requirement to serve a Notice of Non-Voting Status, Release Opt Out Form, Combined Hearing Notice, or any other type of notice in connection with solicitation of the Plan to Holders of Claims or Interests in Class 9 (Intercompany Claims) or Class 10 (Intercompany Interests) is hereby waived.

**Release Opt Out Form.**

21.     The Release Opt Out Form is APPROVED.

22.     The Release Opt Out Form complies with the Bankruptcy Code, applicable Bankruptcy Rules, and the applicable Bankruptcy Local Rules and Complex Case Procedures and, together with the Combined Hearing Notice and, as applicable, the Notice of Non-Voting Status, provides adequate notice to Other Beneficial Owners and Holders of Claims in Class 4 (Other Secured Claims) and Class 7 (Priority Non-Tax Claims).  No further notice is required or necessary.

23.     In addition to serving the Release Opt Out Form on Holders of Claims in Class 4 (Other Secured Claims) and Class 7 (Priority Non-Tax Claims) as described above, the Debtors shall cause to be mailed (i) the Release Opt Out Form and (ii) the Combined Hearing Notice, to the banks, brokers, and financial institutions (or their agents) that might have purchased equity securities in "street name" (collectively, including their agents, the "**Nominees**") on behalf of the underlying beneficial owners of those equity securities during the period from January 3, 2022 through December 20, 2022, inclusive (the "**Other Beneficial Owners**").  With their mailing, the Debtors shall include instructions to the Nominees concerning the requirements in subparagraphs (a)–(d) below.

(a)     Such Nominees shall either: (i) within seven (7) calendar days of receipt of the Release Opt Out Form and Combined Hearing Notice, request from the Debtors sufficient copies of the Release Opt Out Form and Combined Hearing Notice to forward to all Other Beneficial Owners and within seven (7) calendar days of receipt of those notices and claim forms forward them to all Other Beneficial Owners; or (ii) within seven (7) calendar days of receipt of the Release Opt Out Form and Combined Hearing Notice, provide a list of the names and addresses of all Other Beneficial Owners to the Debtors and the Debtors shall send the Release Opt Out Form and Combined Hearing Notice promptly to such identified Other Beneficial Owners.

(a)     Nominees that elect to send the Release Opt Out Form and Combined Hearing Notice to their Other Beneficial Owners shall also send a statement to the Debtors and Stretto confirming that the mailing was made and shall retain their mailing records for use in connection with any further notices that may be provided in these Chapter 11 Cases.

(b)     If it is the Nominee's customary and accepted practice to forward such materials to Other Beneficial Owners by e-mail, e-delivery, or any other method of electronic or printed communication, the Nominees are authorized to follow those customary practices, within seven (7) calendar days of receipt of the materials, in lieu of sending actual printed copies of the Release Opt Out Form and Combined Hearing Notice.

(c)     Within seven (7) calendar days of forwarding such notice, the Nominees may request reimbursement for reasonable and documented noticing costs and research fees, if any, by making such request in writing to the Debtors at the address to be provided by Stretto to the Nominees.

24. The Opt Out Deadline shall be **December 13, 2023 at 5:00 p.m. (Prevailing Central Time)**.

25. All Release Opt Out Forms must be properly completed and returned either by (i) delivering the Release Opt Out Form to the Voting Agent or (ii) submitting the Release Opt Out Form by electronic, online transmission through the Online Portal, each in accordance with the instructions included on the Release Opt Out Form.

**Rights Offering Procedures.**

26. The Rights Offering Procedures, attached hereto as **Exhibit 15**, are fair and appropriate and are APPROVED.

27. The Subscription Form, including all instructions provided therein, provides adequate information and instructions for each individual entitled to participate in the Rights Offering. No further information or instructions are necessary.

**Combined Hearing Notice.**

28. The Combined Hearing Notice is APPROVED.

29. The form and proposed manner of service of the Combined Hearing Notice provide due, proper, and adequate notice, comport with due process, and comply with all applicable Bankruptcy Rules and Bankruptcy Local Rules. No further notice is required or necessary.

30. The Debtors are authorized to give supplemental publication notice of the Combined Hearing in the national edition of The Wall Street Journal and the local editions of the Austin American-Statesman, Odessa American, Pecos Enterprise, Denton Record Chronicle, Cherokee Scout, Dalton Daily Citizen, The Lake News, Grand Forks Herald, and Muskogee Phoenix, as well as other publications, as the Debtors deem appropriate.

**Combined Hearing.**

31.     The Combined Hearing will begin on **December 22, 2023 at 10:00 a.m. (Prevailing Central Time)**, or as soon thereafter as counsel may be heard; *provided*, *however*, that the Combined Hearing may be adjourned or continued from time to time by the Court or the Debtors, with the consent of the Requisite Consenting Creditors, without further notice other than adjournments announced in open Court or as indicated in any notice of agenda of matters scheduled for hearing filed by the Debtors with the Court.

**Objection Procedures.**

32.     The deadline to file an objection to the adequacy of the Disclosure Statement or confirmation of the Plan shall be **December 15, 2023 at 5:00 p.m. (Prevailing Central Time)** (the "**Combined Objection Deadline**").

33.     Objections and responses, if any, to confirmation of the Plan, must: (i) be in writing; (ii) conform to the Bankruptcy Rules and the Bankruptcy Local Rules, and any order of the Court; (iii) set forth the name of the objecting party, the nature and amount of Claims or Interests held or asserted by the objecting party against the Debtors' estates or property; and (iv) provide the basis for the objection, and the specific grounds therefor.  Registered users of this Court's case filing system must electronically file their objections and responses on or before the Plan Objection Deadline.  All other parties in interest must file their objections and responses in writing with the United States Bankruptcy Court Clerk's Office, United States Courthouse, 515 Rusk Avenue, Courtroom 401, 4th Floor, Houston, Texas 77002, on or before the Plan Objection Deadline.

34.     Pursuant to Bankruptcy Rule 3020(b), if no objection is timely filed, this Court may determine that the Plan has been proposed in good faith and not by any means forbidden by law without receiving evidence on such issues.

35.     Objections to confirmation of the Plan that are not timely filed, served, and actually received in the manner set forth above shall not be considered and shall be deemed overruled.

36.     The Debtors and any parties in interest are authorized to file and serve replies or an omnibus reply to any such objections along with a brief in support of confirmation of the Plan (the "**Confirmation Brief**") either separately or in a single, consolidated document on or before **December 20, 2023**.

**Approval of Notices to Executory Contract and Unexpired Lease Counterparties.**

37.     The procedures set forth in the Motion regarding notice to all parties of the assumption, assumption and assignment, or rejection of the applicable Debtors' Executory Contracts and Unexpired Leases, provide due, proper, and adequate notice, comport with due process and comply with Bankruptcy Rules 2002, 3017 and 3020, and are hereby approved.  No further or additional notice is required or necessary.

**Approval of Reinstatement Cure Procedures**

38.     The procedures set forth in the Motion regarding notice of proposed Cure Amounts to Holders of Other Secured Claims in Class 4 provide due, proper, and adequate notice, comport with due process, and comply with section 1124 of the Bankruptcy Code and Bankruptcy Rules 2002 and 3020, and are hereby approved.  No further or additional notice is required or necessary.  For the avoidance of all doubt, any Holder of Other Secured Claims in Class 4 that does not comply with the objection procedures related to the proposed Cure Amounts contained in the Motion and in the Plan shall be deemed to have consented to the Reinstatement of its Claim and the proposed Cure Amount listed therein and shall be shall forever be barred and enjoined from objecting to the Reinstatement of its Claim.

**Plan Supplement Filing Deadline.**

39.        The Debtors are authorized to file the Plan Supplement with the Court commencing on **December 8, 2023** (the "**Plan Supplement Filing Deadline**").

**General.**

40.        The Debtors, in consultation with the Requisite Consenting Creditors, are authorized to make non-substantive changes, to the Disclosure Statement, the Plan, the Ballots, the Rights Offering Procedures, and related documents without further order of the Court including, without limitation, changes to correct typographical and grammatical errors and to make conforming changes among the Disclosure Statement, the Plan, and any other materials in the Solicitation Packages prior to mailing.

41.        Nothing contained in the Motion or this Order or any payment made pursuant to the authority granted by this Order is intended to be or shall be deemed as (i) an implication or admission as to the validity of any claim against the Debtors, (ii) a waiver of the Debtors' or any party in interest's rights to dispute the amount of, basis for, or validity of any claim, (iii) a waiver of the Debtors' or any party in interest's rights under the Bankruptcy Code or any other applicable nonbankruptcy law, (iv) a waiver of the obligation of any party in interest to file a proof of claim, (v) an agreement or obligation to pay any Claims and Interests, (vi) a waiver of any Claims and Interests or causes of action which may exist against any creditor or interest Holder, or (vii) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code.

42.        Nothing in this Order shall be construed as a waiver of the right of the Debtors or any other party in interest, as applicable, to object to a proof of claim after the Voting Record Date

43.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

44.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion, and the requirements of the Bankruptcy Rules and the Bankruptcy Local Rules are satisfied by such notice.

45.     The Debtors are authorized to take all steps necessary or appropriate to carry out the relief granted in this Order.

46.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Dated: _____, 2023
       Houston, Texas

                                                        _____
                                                        CHRISTOPHER M. LOPEZ
                                                        UNITED STATES BANKRUPTCY JUDGE

## Exhibit 1

**Form of Combined Hearing Notice**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| | § | |
| In re: | § | **Chapter 11** |
| | § | |
| **CORE SCIENTIFIC, INC.,** *et al.,* | § | **Case No. 22-90341 (CML)** |
| | § | |
| **Debtors**[1] | § | **(Jointly Administered)** |
| | § | |

**NOTICE OF (I) CONDITIONAL APPROVAL OF DISCLOSURE
STATEMENT, (II) APPROVAL OF (A) SOLICITATION AND VOTING
PROCEDURES AND (B) NOTICE PROCEDURES FOR THE ASSUMPTION OR
REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES;
(III) COMBINED HEARING TO CONSIDER FINAL APPROVAL OF
DISCLOSURE STATEMENT AND CONFIRMATION OF PLAN; AND (IV)
ESTABLISHING NOTICE AND OBJECTION PROCEDURES FOR FINAL
APPROVAL OF DISCLOSURE STATEMENT AND CONFIRMATION OF PLAN**

**TO ALL PARTIES IN INTEREST IN THE CHAPTER 11 CASES OF:**

| Debtor | Case Number |
|---|---|
| Core Scientific Mining LLC | 22-90340 |
| Core Scientific, Inc. | 22-90341 |
| Core Scientific Acquired Mining LLC | 22-90342 |
| Core Scientific Operating Company | 22-90343 |
| Radar Relay, Inc. | 22-90344 |
| Core Scientific Specialty Mining (Oklahoma) LLC | 22-90345 |
| American Property Acquisition, LLC | 22-90346 |
| Starboard Capital LLC | 22-90347 |
| RADAR LLC | 22-90348 |
| American Property Acquisitions I, LLC | 22-90349 |

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions VII LLC (3198). The Debtors' corporate headquarters is 210 Barton Springs Road, Suite 300, Austin, Texas 78704. The Debtors' service address is 2407 S. Congress Ave, Suite E-101, Austin, Texas 78704.

| Debtor | Case Number |
|---|---|
| American Property Acquisitions VII, LLC | 22-90350 |

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.       ***Conditional Approval of Disclosure Statement***.  On November 14, 2023 the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") held a hearing (the "**Conditional Disclosure Statement Hearing**") at which it conditionally approved the *Disclosure Statement for Third Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors,* filed on November 16, 2023 (Docket No. 1439) (including any exhibits and schedules thereto and as may be modified, amended, or supplemented, the "**Disclosure Statement**") of Core Scientific, Inc. and its affiliated debtors in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), and thereafter entered an order (the "**Disclosure Statement Order**") with respect thereto.  The Disclosure Statement Order, among other things, authorizes the Debtors to solicit votes to accept the *Third Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors*, filed on November 16, 2023 (Docket No. 1438) (including any exhibits and schedules thereto and as may be modified, amended, or supplemented, the "**Plan**").[2]

2.       ***Combined Hearing***.  A hearing to consider confirmation of the Plan and final approval of the Disclosure Statement (the "**Combined Hearing**") has been scheduled for **December 22, 2023 at 10:00 a.m. (Prevailing Central Time)**, before the Honorable Christopher M. Lopez, United States Bankruptcy Judge, in the Bankruptcy Court.  The Combined Hearing may be adjourned or continued from time to time by the Bankruptcy Court or the Debtors, with the consent of the Requisite Consenting Creditors, without further notice other than by a Bankruptcy Court announcement providing for such adjournment or continuation on its agenda.  The Plan may be modified, if necessary, prior to, during, or as a result of the Combined Hearing.

3.       ***Voting Record Date***.  Holders of Claims or Interests in Class 1 (April Convertible Notes Secured Claims), Class 2 (August Convertible Notes Secured Claims), Class 3 (Miner Equipment Lender Secured Claims), Class 5 (M&M Lien Secured Claims), Class 6 (Secured Mortgage Claims), Class 8 (General Unsecured Claims), Class 11 (Section 510(b) Claims), and Class 12 (Existing Common Interests), who are otherwise eligible to vote shall be entitled to vote to accept or reject the Plan as of **November 9, 2023** (the "**Voting Record Date**").

4.       ***Voting Deadline***.  If you received a Solicitation Package, including a Ballot, and intend to vote on the Plan, you must: (i) follow the instructions carefully; (ii) complete all of the required information on the Ballot; and (iii) execute and return your completed Ballot according to and as set forth in detail in the voting instructions on your Ballot so that it is actually received by the Debtors' solicitation and voting agent, Stretto, Inc. ("**Stretto**" or the "**Voting Agent**") on or before **December 13 2023 at 5:00 p.m. (Prevailing Central Time)** (the "**Voting**

---

[2]  All capitalized terms used but not defined herein or in the enclosed voting instructions have the meanings ascribed to them in the Plan, attached as Exhibit A to the Disclosure Statement.

**Deadline**"). **ANY FAILURE TO FOLLOW THE VOTING INSTRUCTIONS INCLUDED WITH YOUR BALLOT MAY DISQUALIFY YOUR BALLOT AND YOUR VOTE.**

5. ***Parties in Interest Not Entitled to Vote***. Holders of Claims or Interests in Class 4 (Other Secured Claims), Class 7 (Priority Non-Tax Claims), Class 10 (Intercompany Claims), and Class 11 (Intercompany Interests) are not entitled to vote on the Plan and will not receive a Ballot. If any creditor seeks to challenge the Allowed amount of its Claim for voting purposes, such creditor must file with the Court a motion for an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing such Claim for voting purposes in a different amount (a "**Rule 3018(a) Motion**"). Any Rule 3018(a) Motion must be filed with the Court not later than **5:00 p.m. (Prevailing Central Time) on December 8, 2023**. Upon the filing of any such Rule 3018(a) Motion, such creditor's Ballot shall be counted in accordance with the guidelines provided in the Solicitation and Voting Procedures attached as **Exhibit 2** to the Disclosure Statement Order, unless temporarily Allowed in a different amount by an order of the Court entered prior to or concurrent with entry of an order confirming the Plan.

6. ***Objections to Confirmation***. The deadline to object or respond to confirmation of the Plan or final approval of the Disclosure Statement is **December 15, 2023 at 5:00 p.m. (Prevailing Central Time)** (the "**Objection Deadline**").

7. ***Form and Manner of Objections to Confirmation***. Objections and responses, if any, to confirmation of the Plan or final approval of the Disclosure Statement, must: (i) be in writing; (ii) conform to the Bankruptcy Rules and the Bankruptcy Local Rules, and any order of the Court; (iii) set forth the name of the objecting party and the nature and amount of Claims or Interests held or asserted by the objecting party against the Debtors' estates or property; (iv) provide the basis for the objection and the specific grounds therefor, and, if practicable, a proposed modification to the Plan that would resolve such objection; and (v) be filed with the Bankruptcy Court (with proof of service) via ECF or by mailing to the Bankruptcy Court at United States Bankruptcy Court Clerk's Office, United States Courthouse, 515 Rusk Avenue, Courtroom 401, 4th Floor, Houston, Texas 77002, so as to be actually received no later than the Objection Deadline.

8. IF AN OBJECTION TO CONFIRMATION OF THE PLAN OR FINAL APPROVAL OF THE DISCLOSURE STATEMENT IS NOT FILED AND SERVED STRICTLY AS PRESCRIBED HEREIN, THEN THE OBJECTING PARTY MAY BE BARRED FROM OBJECTING TO CONFIRMATION OF THE PLAN OR FINAL APPROVAL OF THE DISCLOSURE STATEMENT OR THE ADEQUACY THEREOF AND MAY NOT BE HEARD AT THE HEARING.

9. ***Additional Information***. Any party in interest wishing to obtain information about the solicitation procedures or copies of the Disclosure Statement, the Plan, or other solicitation materials should contact Stretto through (i) e-mail at CoreScientificInquiries@stretto.com, (ii) by writing to Core Scientific, Inc., Ballot Processing Center, c/o Stretto, Inc., 410 Exchange, Suite 100, Irvine, CA 92602, or (iii) via telephone at (949) 404-4152 (U.S./Canada Toll-Free) or + (888) 765-7875 (outside of the U.S.). Interested parties may also review the Disclosure Statement and the Plan free of charge at

https://dm.epiq11.com/sertasimmons.  In addition, the Disclosure Statement and Plan are on file with the Bankruptcy Court and may be reviewed for a fee by accessing the Bankruptcy Court's website: https://www.txs.uscourts.gov/page/bankruptcycourt.  Note that a PACER password and login are needed to access documents on the Bankruptcy Court's website.  A PACER password can be obtained at: https://pacer.uscourts.gov/.

<div align="center">

**NOTICE REGARDING CERTAIN RELEASE,**
**EXCULPATION, AND INJUNCTION PROVISIONS IN PLAN**

</div>

**If you (i) vote to accept the Plan, (ii) are solicited to vote to accept or reject the Plan, but do not vote to either accept or reject the Plan, and do not opt out of granting the releases set forth in the Plan, (iii) vote, or are deemed, to reject the Plan or are presumed to accept the Plan but do not opt out of granting the releases set forth in the Plan, or (iv) were given notice of the opportunity to opt out of granting the releases contained in the Plan but do not opt out, you shall be deemed to have consented to the releases contained in Section 10.6(b) of the Plan.  The releases as presented in the Plan are provided below:**

**SECTION 10.5          INJUNCTION.**

**Except as otherwise expressly provided in the Plan or for distributions required to be paid or delivered pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold Claims or Interests that have been released pursuant to Section 0 or Section 0, shall be discharged pursuant to Section Error! Reference source not found. of the Plan, or are subject to exculpation pursuant to Section Error! Reference source not found., and all Subcontractors and all other parties in interest are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Released Parties, and/or the Exculpated Parties (to the extent of the exculpation provided pursuant to Section Error! Reference source not found. with respect to the Exculpated Parties): (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (iii) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless (x) such Entity has timely asserted such setoff right either in a Filed Proof of Claim, or in another document Filed with the Bankruptcy Court explicitly preserving such setoff or that otherwise indicates that such entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise or (y) such right to setoff arises under a postpetition agreement with the Debtors or an Executory Contract that has been assumed by the Debtors as of the Effective Date; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released, settled, and/or treated, entitled to a distribution, or cancelled pursuant to the Plan or otherwise Disallowed;**

<div align="center">4</div>

*provided* that such persons who have held, hold, or may hold Claims against, or Interests in, a Debtor, a Reorganized Debtor, or an Estate shall not be precluded from exercising their rights and remedies, or obtaining the benefits, solely pursuant to and consistent with the terms of the Plan.

Subject in all respects to Section Error! Reference source not found., no entity or person may commence or pursue a Claim or Cause of Action of any kind against any Released Party or Exculpated Party that arose or arises from, in whole or in part, the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors (which includes, for the avoidance of doubt, all claims and Causes of Action asserted or assertable in the Securities Class Action), the DIP Facility, the Convertible Notes Agreements, the Miner Equipment Lender Agreements, the Mortgage Agreements, the General Contracts, any and all agreements relating to M&M Liens, and any and all related agreements, instruments, and/or other documents, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Plan Settlements, the New Secured Convertible Notes Documents, the New Secured Notes Documents, the Contingent Payment Obligations Documents, the New Miner Equipment Lender Debt Documents, the Exit Facility Documents, the New Warrants Agreement, the Rights Offering, the Backstop Commitment Letter, the Initial DIP Loan Documents, the DIP Facility, the Terminated RSA, the RSA, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan (including, but not limited to, the New Common Interests), or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a claim of willful misconduct, fraud or gross negligence against a Released Party or Exculpated Party and (ii) specifically authorizing such Entity or Person to bring such Claim or Cause of Action against any such Released Party or Exculpated Party.  The Bankruptcy Court shall have sole and exclusive jurisdiction to determine whether a Claim or Cause of Action is colorable and, only to the extent legally permissible and as provided for in Section Error! Reference source not found., shall have jurisdiction to adjudicate the underlying colorable Claim or Cause of Action.

**SECTION 10.6(a)**     **RELEASES BY THE DEBTORS**.

Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the obligations of the Debtors under the Plan and the contributions of the Released Parties to facilitate and

implement the Plan, except as otherwise provided in the Plan or in the Confirmation Order, on and after the Effective Date, the Released Parties are deemed conclusively, absolutely, unconditionally and irrevocably, released and discharged by the Debtors, the Reorganized Debtors, and the Estates from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Reorganized Debtors, the Estates, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors (which includes, for the avoidance of doubt, all claims and Causes of Action asserted or assertable in the Securities Class Action), the DIP Facility, the Convertible Notes Agreements, the Miner Equipment Lender Agreements, the Mortgage Agreements, the General Contracts, any and all agreements relating to M&M Liens, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Plan Settlements, the New Secured Convertible Notes Documents, the New Secured Notes Documents, the Contingent Payment Obligations Documents, the New Miner Equipment Lender Debt Documents, the Exit Facility Documents, the New Warrants Agreement, the Rights Offering, the Backstop Commitment Letter, the Initial DIP Loan Documents, the DIP Facility, the Terminated RSA, the RSA, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan (including, but not limited to, the New Common Interests), or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth in Section 0 of the Plan (i) shall only be applicable to the maximum extent permitted by law; (ii) shall not be construed as (a) releasing any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud (*provided* that actual fraud shall not exempt from the scope of these Debtor releases any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, (b) releasing any Released Party from Claims or Causes of Action held by the Debtors arising from an act or omission that is determined by a Final Order or by a federal government agency to have constituted a violation of any federal securities laws or (c) releasing any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document,

instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

**SECTION 10.6(b)**     **RELEASES BY HOLDERS OF CLAIMS AND INTERESTS.**

Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, except as otherwise provided in the Plan or in the Confirmation Order, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, each Releasing Party, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released, and discharged the Debtors, the Reorganized Debtors, and the Released Parties from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims or Causes of Action asserted or that may be asserted on behalf of the Debtors or their Estates, that such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, including any Claims or Causes of Action based on or relating to, or in any manner arising from, in whole or in part, the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors (which includes, for the avoidance of doubt, all claims and Causes of Action asserted or assertable in the Securities Class Action), the DIP Facility, the Convertible Notes Agreements, the Miner Equipment Lender Agreements, the Mortgage Agreements, the General Contracts, any and all agreements relating to M&M Liens, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Plan Settlements, the New Secured Convertible Notes Documents, the New Secured Notes Documents, the Contingent Payment Obligations Documents, the New Miner Equipment Lender Debt Documents, the Exit Facility Documents, the New Warrants Agreement, the Rights Offering, the Backstop Commitment Letter, the Initial DIP Loan Documents, the DIP Facility, the Terminated RSA, the RSA, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan (including, but not limited to, the New Common Interests), or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth in Section 0 of the Plan (i) shall only be applicable to the maximum extent permitted by law; and (ii) shall not be construed as (a) releasing any Released Party from Claims or Causes of Action arising from an act or

omission that is judicially determined by a Final Order to have constituted actual fraud (*provided* that actual fraud shall not exempt from the scope of these third-party releases any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, or (b) releasing any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

**SECTION 10.7      <u>EXCULPATION</u>.**

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out, in whole or in part, from the Petition Date through the Effective Date, of the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors, the DIP Facility, the Convertible Notes Agreements, the Miner Equipment Lender Agreements, the Mortgage Agreements, the General Contracts, any and all agreements relating to M&M Liens, and related agreements, instruments, or other documents, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Plan Settlements, the New Secured Convertible Notes Documents, the New Secured Notes Documents, the Contingent Payment Obligations Documents, the New Miner Equipment Lender Debt Documents, the Exit Facility Documents, the New Warrants Agreement, the Rights Offering, the Backstop Commitment Letter, the Initial DIP Loan Documents, the DIP Facility, the Terminated RSA, the RSA, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan (including, but not limited to, the New Common Interests), or the distribution of property under the Plan, or any other related agreement, except for Claims or Causes of Action arising from an act or omission that is judicially determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects, such Exculpated Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities. The Exculpated Parties have, and upon completion of the Plan, shall be deemed to have, participated in good faith and in compliance with all applicable laws with regard to the solicitation and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan. Notwithstanding anything to the contrary in the foregoing, the exculpations set forth in Section <u>Error! Reference source not found.</u> of the

Plan (i) shall only be applicable to the maximum extent permitted by law; and (ii) shall not be construed as (a) exculpating any Exculpated Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud (*provided* that actual fraud shall not exempt from the scope of these exculpations any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, or (b) exculpating any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

**SECTION 5.17      CANCELLATION OF LIENS.**

(a)     Except as otherwise specifically provided in the Plan, including sections **Error! Reference source not found.** and **Error! Reference source not found.** of the Plan, all notes, instruments, certificates evidencing debt of the Debtors and Existing Common Interests will be cancelled and obligations of the Debtors thereunder will be discharged and of no further force or effect, except for the purpose of allowing the applicable agents and trustees to receive distributions from the Debtors under the Plan and to make any further distributions to the applicable Holders on account of their Allowed Claims and Interests.

(b)     After the Effective Date and following (i) the distributions to Holders on account of Allowed Convertible Notes Secured Claims and Allowed Miner Equipment Lender Secured Claims and/or (ii) with regard to Allowed M&M Lien Secured Claims, satisfaction of the applicable M&M Lien Takeback Debt, the Debtors or the Reorganized Debtors, at their expense, may, in their sole discretion, take any action necessary to terminate, cancel, extinguish, and/or evidence the release of any and all mortgages, deeds of trust, Liens, pledges, and other security interests with respect to the Convertible Notes Secured Claims, Miner Equipment Lender Secured Claims, and M&M Lien Secured Claims, including, without limitation, the preparation and filing of any and all documents necessary to terminate, satisfy, or release any mortgages, deeds of trust, Liens, pledges, and other security interests held by the Holders of the M&M Lien Secured Claims, Miner Equipment Lender Secured Claims, the Notes Agent, and/or Convertible Noteholders, including, without limitation, UCC-3 termination statements.

**Relevant Definitions Related to Release and Exculpation Provisions**:

          **"*Exculpated Parties*"** means each of the following in their capacity as such and, in each case, to the maximum extent permitted by law: (i) the Debtors; and (ii) Equity Committee and its members, each solely in their capacity as such.

          **"*Related Parties*"** means with respect to a Person, that Person's current and former Affiliates, and such Person's and its current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, fiduciaries,

trustees, advisory board members, financial advisors, partners, limited partners, general partners, attorneys, accountants, managed accounts or funds, management companies, fund advisors, investment bankers, consultants, representatives, and other professionals, and such Person's respective heirs, executors, estates, and nominees, each in their capacity as such, and any and all other Persons or Entities that may purport to assert any Cause of Action derivatively, by or through the foregoing entities.

"*Released Parties*" means, collectively: (i) the Debtors; (ii) the Reorganized Debtors; (iii) the Equity Committee and its members that are party to the RSA, solely in their capacities as such; (iv) the Backstop Parties; (v) the Settling Miner Equipment Lenders; (vi) Brown Corporation; (vii) Holliwood LLC; (viii) the Ad Hoc Noteholder Group; (ix) the Consenting Creditors; (x) the Exit Lenders; (xi) the Notes Agent, solely in its capacity as such; and (xii) with respect to each of the foregoing Persons in clauses (i) through (xi), all Related Parties. Notwithstanding the foregoing, any Person that opts out of the releases set forth in section 10.6(b) of the Plan shall not be deemed a Released Party thereunder.

"*Releasing Parties*" means collectively, and in each case solely in their capacity as such, (i) the Debtors; (ii) the Reorganized Debtors; (iii) with respect to each of the foregoing Persons in clauses (i) through (ii), all Related Parties; (iv) the Released Parties; (v) the Holders of all Claims or Interests that vote to accept the Plan; (vi) the Holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but that do not vote either to accept or to reject the Plan and do not opt out of granting the releases set forth herein; (vii) the Holders of all Claims or Interests that vote, or are deemed, to reject the Plan or that are presumed to accept the Plan but do not opt out of granting the releases set forth herein; and (viii) the Holders of all Claims and Interests and all Other Beneficial Owners that were given notice of the opportunity to opt out of granting the releases set forth herein but did not opt out.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

### Notice of Assumption and Rejection of Executory
### Contracts and Unexpired Leases of Debtors and Related Procedures

1.       Please take notice that, in accordance with Article VIII of the Plan and sections 365 and 1123 of the Bankruptcy Code, as of and subject to the occurrence of the Effective Date and the payment of any applicable Cure Amount, and subject to section **Error! Reference source not found.** of the Plan, all Executory Contracts and Unexpired Leases to which any of the Debtors are parties shall be deemed assumed, unless such contract or lease (i) was previously assumed or rejected by the Debtors, pursuant to Final Order of the Bankruptcy Court, (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto, (iii) is the subject of a motion to reject Filed by the Debtors on or before the Confirmation Date, or (iv) is specifically designated as a contract or lease to be rejected on the Schedule of Rejected Contracts.  Subject to (i) satisfaction of the conditions set forth in section 1.1 of the Plan, (ii) resolution of any disputes in accordance with section **Error! Reference source not found.** of the Plan with respect to the Executory Contracts or Unexpired Leases subject to such disputes, and (iii) the occurrence of the

Effective Date, entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the assumptions or rejections provided for in the Plan pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  Each Executory Contract and Unexpired Lease assumed or assumed and assigned pursuant to the Plan shall vest in and be fully enforceable by the applicable Reorganized Debtor or assignee in accordance with its terms, except as modified by any provision of the Plan, any order of the Bankruptcy Court authorizing and providing for its assumption or assumption and assignment, or applicable law.

2.      The Plan provides that to the maximum extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption of such Executory Contract or Unexpired Lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.

3.      Section 8.2 of the Plan stipulates that the Debtors shall file, as part of the Plan Supplement, the Schedule of Rejected Contracts and the Schedule of Assumed Contracts.  The Plan further provides that prior to the Combined Hearing, the Debtors shall serve a notice on parties to Executory Contracts or Unexpired Leases to be assumed, assumed and assigned, or rejected reflecting the Debtors' intention to potentially assume, assume and assign, or reject the contract or lease in connection with the Plan and, where applicable, setting forth the proposed Cure Amount (if any).  If a counterparty to any Executory Contract or Unexpired Lease that the Debtors or Reorganized Debtors, as applicable, intend to assume or assume and assign is not listed on such a notice, the proposed Cure amount for such Executory Contract or Unexpired Lease shall be deemed to be Zero Dollars ($0).  **Any objection by a counterparty to an Executory Contract or Unexpired Lease to the proposed assumption, assumption and assignment, or related Cure Amount must be Filed, served, and actually received by the Debtors within fourteen (14) days of the service of the assumption notice, or such shorter period as agreed to by the parties or authorized by the Bankruptcy Court.**  If there is an Assumption Dispute pertaining to assumption of an Executory Contract or Unexpired Lease (other than a dispute pertaining to a Cure Amount), such dispute shall be heard by the Bankruptcy Court prior to such assumption being effective; *provided* that the Debtors or the Reorganized Debtors, as applicable, may, with the consent of the Requisite Consenting Creditors, settle any dispute regarding the Cure Amount or the nature thereof without any further notice to any party or any action, order, or approval of the Bankruptcy Court.

4.      Section 8.2 of the Plan further provides that any counterparty to an Executory Contract or Unexpired Lease that does not timely object to the notice of the proposed assumption of such Executory Contract or Unexpired Lease shall be deemed to have assented to assumption of the applicable Executory Contract or Unexpired Lease notwithstanding any provision thereof that purports to (i) prohibit, restrict, or condition the transfer or assignment of such contract or lease; (ii) terminate or modify, or permit the termination or modification of, a contract or lease as a result of any direct or indirect transfer or assignment of the rights of any Debtor under such contract or lease or a change, if any, in the ownership or control to the extent contemplated by the Plan; (iii) increase, accelerate, or otherwise alter any obligations or liabilities of any Debtor or any

11

Reorganized Debtor, as applicable, under such Executory Contract or Unexpired Lease; or (iv) create or impose a Lien upon any property or Asset of any Debtor or any Reorganized Debtor, as applicable. Each such provision shall be deemed to not apply to the assumption of such Executory Contract or Unexpired Lease pursuant to the Plan and counterparties to assumed Executory Contracts or Unexpired Leases that fail to object to the proposed assumption in accordance with the terms set forth in Section **Error! Reference source not found.** of the Plan, shall forever be barred and enjoined from objecting to the proposed assumption or to the validity of such assumption (including with respect to any Cure Amounts or the provision of adequate assurance of future performance), or taking actions prohibited by the foregoing or the Bankruptcy Code on account of transactions contemplated by the Plan.

5.      Section 8.3 of the Plan provides that unless otherwise provided by an order of the Bankruptcy Court, Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be Filed with the Bankruptcy Court by the later of thirty (30) days from (i) the date of entry of an order of the Bankruptcy Court approving such rejection, (ii) the effective date of the rejection of such Executory Contract or Unexpired Lease, and (iii) the Effective Date. **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed within such time shall be Disallowed pursuant to the Confirmation Order or such other order of the Bankruptcy Court, as applicable, forever barred from assertion, and shall not be enforceable against, as applicable, the Debtors, the Estates, the Reorganized Debtors, or property of the foregoing parties, without the need for any objection by the Debtors or the Reorganized Debtors, as applicable, or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules, if any, or a Proof of Claim to the contrary**.

**UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS COMBINED HEARING NOTICE, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.**

6.      **Plan Supplement**. The Debtors will file and serve any supplement to the Plan on or before **December 8, 2023**.

### Notice of Procedures with Respect to Reinstated Claims

1.      Please take notice that, in accordance with Article IV of the Plan and section 1124 of the Bankruptcy Code, as of and subject to the occurrence of the Effective Date and the payment of any applicable Cure Amount, and subject to section 7.11 of the Plan, all Other Secured Claims in Class 4 shall be Reinstated. Subject to (i) satisfaction of the conditions set forth in section 7.11 of the Plan, (ii) resolution of any disputes in accordance with section 7.11 of the Plan with respect to the Cure Amounts subject to such disputes, and (iii) the occurrence of the Effective Date, entry of the Confirmation Order by the Bankruptcy Court shall authorize Reinstatement of the Other Secured Claims in Class 4 pursuant to section 1124 of the Bankruptcy Code.

2.      Section 7.11 of the Plan stipulates least ten (10) days before the deadline to object to Confirmation of the Plan, the Debtors shall serve a notice on Holders of Other Secured

Claims in Class 4 setting forth the proposed Cure Amount (if any) necessary to Reinstate such Claims. Any objection by a Holder of an Other Secured Claim in Class 4 to the proposed Cure Amount must be Filed, served, and actually received by the Debtors within fourteen (14) days of the service of the notice of proposed Cure Amount, or such shorter period as agreed to by the parties or authorized by the Bankruptcy Court. Any Holder of an Other Secured Claim in Class 4 that does not timely object to the notice of the proposed Cure Amount shall be deemed to have assented to the Reinstatement of its Claim and the proposed Cure Amount listed therein and shall be shall forever be barred and enjoined from objecting to the Reinstatement of its Claim on the grounds that sections 1124(2)(A), (C), or (D) of the Bankruptcy Code have not been satisfied.

3.      Section 7.11 of the Plan further provides that to the extent there is a dispute relating to the Cure Amount, the Debtors may Reinstate the applicable Other Secured Claim prior to the resolution of the Cure Amount dispute; provided that the Debtors or the Reorganized Debtors, as applicable, reserve Cash in an amount sufficient to pay the full amount reasonably asserted as the required Cure Amount by the Holder of the applicable Other Secured Claim (or such smaller amount as may be fixed or estimated by the Bankruptcy Court or otherwise agreed to by such Holder and the applicable Reorganized Debtor).  Subject to resolution of any dispute regarding any Cure Amount, all Cure Amounts shall be satisfied on the Effective Date, or otherwise as soon as practicable thereafter, by the Debtors or Reorganized Debtors, as the case may be.

**UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS COMBINED HEARING NOTICE, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.**

**QUESTIONS:**

If you have questions about this Combined Hearing Notice, please contact Stretto through (i) e-mail at CoreScientificInquiries@stretto.com, (ii) by writing to Core Scientific, Inc., Ballot Processing Center, c/o Stretto, Inc., 410 Exchange, Suite 100, Irvine, CA 92602, (iii) via telephone at (949) 404-4152 (U.S./Canada Toll-Free) or + (888) 765-7875 (outside of the U.S.), or (iv) visiting https://cases.stretto.com/CoreScientific.

*[Remainder of Page Intentionally Left Blank]*

Dated: [●], 2023
      Houston, Texas

Respectfully submitted,

_/s/ [DRAFT]_
_____

WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (15776275)
Clifford W. Carlson (24090024)
700 Louisiana Street, Suite 1700
Houston, Texas  77002
Telephone: (713) 546-5000
Facsimile:  (713) 224-9511
Email:  Alfredo.Perez@weil.com
        Clifford.Carlson@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Ray C. Schrock (admitted *pro hac vice*)
Ronit J. Berkovich (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Email:  Ray.Schrock@weil.com
        Ronit.Berkovich@weil.com

*Attorneys for Debtors*
*and Debtors in Possession*

**<u>Exhibit 2</u>**

**Form of Solicitation and Voting Procedures**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | § | |
|---|---|---|
| In re: | § | **Chapter 11** |
| | § | |
| **CORE SCIENTIFIC, INC.,** *et al.,* | § | **Case No. 22-90341 (CML)** |
| | § | |
| Debtors[1] | § | **(Jointly Administered)** |

## SOLICITATION AND VOTING PROCEDURES

      **PLEASE TAKE NOTICE** that on December 21, 2022, Core Scientific, Inc. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**") each filed a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") with the United States Bankruptcy Court for the Southern District of Texas (the "**Court**"). The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On January 9, 2023, the U.S. Trustee appointed an official committee of unsecured creditors. On March 23, 2023, the U.S. Trustee appointed an official committee of equity security holders. The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b) and Bankruptcy Local Rule 1015-1.

      **PLEASE TAKE FURTHER NOTICE** that on November 14, 2023, the Court entered the *Order (I) Conditionally Approving Disclosure Statement and Form and Manner of Notice of Conditional Disclosure Statement Hearing; (II) Establishing Solicitation and Voting Procedures; (III) Establishing Rights Offering Procedures, (IV) Establishing Notice and Objection Procedures for Confirmation of Proposed Plan; (V) Approving Notice Procedures for the Assumption or Rejection of Executory Contracts and Unexpired Leases; and (VI) Granting Related Relief* (Docket No. 1426) (as may be later amended and including all exhibits, annexes, and schedules thereto, the "**Disclosure Statement Order**"),[2] which, among other things, (i) authorized the Debtors to solicit votes on the *Third Amended Joint Chapter 11 Plan of Core*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions VII, LLC (3198). The Debtors' corporate headquarters is 210 Barton Springs Road, Suite 300, Austin, Texas 78704. The Debtors' service address is 2407 S. Congress Ave, Suite E-101, Austin, Texas 78704

[2] Capitalized terms not otherwise defined herein have the same meaning as set forth in the Disclosure Statement Order or Plan, as applicable.

*Scientific, Inc. and Its Affiliated Debtors* (Docket No. 1438) (the "**Plan**") and (ii) conditionally approved the *Disclosure Statement for the Third Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors* (Docket No. 1439) (the "**Disclosure Statement**").

## A.      Parties Entitled to Vote.

Holders of Claims and Interests in Class 1 (April Convertible Notes Secured Claims), Class 2 (August Convertible Notes Secured Claims), Class 3 (Miner Equipment Lender Secured Claims), Class 5 (M&M Lien Secured Claims), Class 6 (Secured Mortgage Claims), Class 8 (General Unsecured Claims), Class 11 (Section 510(b) Claims), and Class 12 (Existing Common Interests) are Impaired and entitled to receive distributions under the Plan and, thus, may vote to accept or reject the Plan, subject to certain exceptions discussed below (each, a "**Voting Class**," and collectively, the "**Voting Classes**").

A Holder of a Claim or Interest in a Voting Class is nonetheless not entitled to vote to the extent that:

(a) as of the Voting Record Date (as defined below), the outstanding amount of such creditor's Claim is zero ($0.00);

(b) as of the Voting Record Date, such Holders' Claim or Interest has been Disallowed, expunged, disqualified or suspended;

(c) such creditor has not timely filed a Proof of Claim in accordance with the *Order (I) Establishing Deadlines to File Proofs of Claim and (II) Approving Form and Manner of Notice Thereof* (Docket No. 652) (the "**Bar Date Order**") as of the Bar Date and the Debtors have not scheduled such creditor's Claim or have scheduled such creditor's Claim in an undetermined amount or as contingent, unliquidated, or disputed or such creditor is not required to file a Proof of Claim pursuant to the Bar Date Order; *provided*, that to the extent that such creditor's deadline to file a Claim arising from any rejection of an Executory Contract or Unexpired Lease to which such creditor is party has not yet occurred, such creditor will be entitled to vote in the amount of $1.00 on account of such Claim; or

(d) such creditor's Claim is subject to an objection, a request for estimation, or an adversary proceeding as of **December 1, 2023 at 5:00 p.m. (Prevailing Central Time)**, subject to the procedures set forth below; *provided* that, any such Holder shall receive a Ballot and may submit such Ballot on a provisional basis and may elect to opt out of the Non-Debtor Release Provisions contained in the Plan.  To the extent such Holder does not file a Rule 3018 Motion in accordance with the instructions set forth below, the Ballot will not be counted for voting purposes; however, any opt out election made by such Holder on its Ballot with respect to the Non-Debtor Release Provisions contained in the Plan shall be valid so long as such Ballot is submitted in accordance with the procedures set forth herein.  To the extent such Holder files a Rule 3018 Motion in accordance with the instructions set forth below, the extent to which such Ballot shall be counted for voting purposes will be determined by the Court or as otherwise agreed by the Debtors and the Holder.

With respect to transfers of Claims required to be filed pursuant to Bankruptcy Rule 3001(e), the transferee shall be entitled to receive a Solicitation Package (as defined below) and, if the Holder of such Claim is otherwise entitled to vote with respect to the Plan, cast a Ballot (defined below) on account of such Claim only if: (i) all actions necessary to transfer such Claim are completed by the Voting Record Date or (ii) the transferee files with the Court, by the Voting Record Date, (a) all documentation required by Bankruptcy Rule 3001(e) to evidence the transfer and (b) a sworn statement of the transferor supporting the validity of the transfer. In the event a Claim is transferred after the Voting Record Date, the transferee of such Claim shall be bound by any vote or election on the Plan made by the Holder of such Claim as of the Voting Record Date.

Where any portion of a single Claim has been transferred to a transferee and notice of such transfer is required to be filed pursuant to Bankruptcy Rule 3001(e), all Holders of any portion of such single Claim may be (i) treated as a single creditor for purposes of the numerosity requirements in section 1126(c) of the Bankruptcy Code, and (ii) required to vote every portion of such Claim collectively to accept or reject the Plan. In the event that (i) a Ballot, (ii) a group of Ballots within a Voting Class received from a single creditor, or (iii) a group of Ballots received from the various Holders of multiple portions of a single Claim partially reject and partially accept the Plan, such Ballots may not be counted in the Debtors' discretion.

## B.      Parties Not Entitled to Vote.

Holders of Claims in Class 4 (Other Secured Claims) and Class 7 (Priority Non-Tax Claims) will (i) receive full recovery of their Allowed Claims under the Plan, (ii) have their Claims adjusted or reinstated, or (iii) otherwise receive treatment in the Debtors' or Reorganized Debtors' discretion as to render such Holder's Claim Unimpaired (collectively, the "**Unimpaired Classes**"). Pursuant to section 1126(f) of the Bankruptcy Code, the Holders of such Claims in these Unimpaired Classes are conclusively presumed to accept the Plan and, accordingly, are not entitled to vote on the Plan.

Holders of Claims and Interests in Class 9 (Intercompany Claims), and Class 10 (Intercompany Interests) are Unimpaired and such Holders are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and, accordingly, are not entitled to vote on the Plan (together with the Unimpaired Classes, the "**Non-Voting Classes**").

Holders of Miner Equipment Lender Secured Claims that elect Miner Equipment Lender Treatment Election 2 on their Class 3 Ballot shall not be entitled to vote any portion of their Miner Equipment Lender Deficiency Claim in Class 8.

## C.      Voting Record Date.

The Court has established **November 9, 2023** as the record date for purposes of determining (i) which Holders of Claims and Interests in the Voting Classes are entitled to vote on the Plan and (ii) which Holders of Claims and Interests are entitled to receive a Notice of Non-Voting Status (as defined below) (the "**Voting Record Date**").

**D.    Establishing Claim Amounts for Voting Purposes.**

**April Convertible Notes Secured Claims (Class 1)**.  The amount of each April Convertible Notes Secured Claim, for voting purposes only, will be each Holder's Pro Rata Share of $350,000,000.[3]

**August Convertible Notes Secured Claims (Class 2)**.  The amount of each August Convertible Notes Secured Claim, for voting purposes only, will be each Holder's Pro Rata Share of $360,000,000.[4]

**Miner Equipment Lender Secured Claims (Class 3)**.  The amount of each Miner Equipment Lender Secured Claim, for voting purposes only, will be each Holder's applicable Allowed Miner Equipment Lender Secured Claim Amount, which is set forth on the Miner Equipment Lender Claims Schedule, attached to the Plan as Exhibit K, in the column titled "Allowed Miner Equipment Lender Secured Claim (as of the Petition Date)."  For the avoidance of all doubt, each Holder of a Miner Equipment Lender Secured Claim in Class 3 will vote in an individualized subclass of Class 3 with respect to such Holder's Miner Equipment Lender Secured Claim.

**M&M Lien Secured Claims (Class 5)**.  The amount of each M&M Lien Secured Claim, for voting purposes only, will be each Holder's applicable Allowed M&M Lien Secured Claim Amount, which is set forth on the M&M Lien Claims Schedule, attached to the Plan as Exhibit J, in the column titled "Amount of Allowed M&M Lien Secured Claim."[5]

**Secured Mortgage Claims (Class 6)**.  The amount of each Secured Mortgage Claim, for voting purposes only, will be each Holder's applicable Allowed Secured Mortgage Claim Amount, which is set forth on the Secured Mortgage Claims Schedule, attached to the Plan as Exhibit L, in the column titled "Allowed Secured Claim (as of the Petition Date)."

**General Unsecured Claims (Class 8)**.  Except as otherwise provided herein and solely to the extent such Claimant is entitled to vote under these procedures, the amount of each General Unsecured Claim in Class 8, for voting purposes only, shall be established pursuant to the following hierarchy:

(a)  if a Claim has been estimated or otherwise Allowed for voting purposes by order of the Court, such Claim is temporarily Allowed in the amount so estimated or Allowed by this Court;

(b)  if (a) does not apply, and a Claim constitutes a Miner Equipment Lender Deficiency Claim, each Holder's applicable Allowed Miner Equipment Lender Deficiency Claim Amount,

---

[3] For the avoidance of all doubt, for distribution purposes the April Convertible Notes Secured Claim shall include postpetition interest at the applicable contract rate for the period following January 15, 2024.

[4] For the avoidance of all doubt, for distribution purposes the August Convertible Notes Secured Claim shall include postpetition interest at the applicable contract rate for the period following January 15, 2024.

[5] For the avoidance of all doubt, all Holders of M&M Lien Claims that have settled such Claim with the Debtors will not be entitled to vote.

which is set forth on the Miner Equipment Lender Claims Schedule, attached to the Plan as Exhibit K, in the column titled "Allowed Deficiency Claim (as of the Petition Date)"; *provided*, that if a Holder of a Miner Equipment Lender Secured Claim elects Miner Equipment Lender Treatment Election 2 on its Class 3 Ballot, such Holder shall not be entitled to vote any portion of its Miner Equipment Lender Deficiency Claim in Class 8.

(c) if neither (a) nor (b) applies, but the Claim has been estimated or otherwise Allowed for voting purposes pursuant to a stipulation, settlement, or other agreement in writing reached between the applicable Debtor(s) and the holder of the Claim (whether such stipulation, settlement, or agreement is filed or not), such Claim is temporarily Allowed against such Debtor(s) in the amount set forth in the stipulation, settlement, or other agreement;

(d) if neither (a), (b), nor (c) applies, then in the liquidated, non-contingent, and undisputed amount set forth on a proof of claim timely filed in accordance with the Bar Date Order as of the Voting Record Date; *provided that*, if the amount set forth on a timely-submitted proof of claim is wholly unliquidated, contingent, and/or disputed (as determined on the face of the Claim or based on reasonable review by the Debtors and/or the Voting Agent), then the Claim shall be temporarily allowed for voting purposes in the amount of $1.00;

(e) if neither (a), (b), (c), nor (d) applies, then in the liquidated, non-contingent, and undisputed amount set forth on the Debtors' Schedules; *provided that*, if the Claim appearing on the Debtors' Schedules is either contingent, unliquidated, and/or disputed, or in a $0.00 amount, then the Claim shall be disallowed for voting purposes, except to the extent that such creditor's deadline to file a Claim arising from any rejection of an Executory Contract or Unexpired Lease to which such creditor is party has not yet occurred; *provided*, that, to the extent such creditor's deadline to file a Claim has not yet occurred, such creditor will be entitled to vote in the amount of $1.00 on account of such Claim;

(f) notwithstanding anything to the contrary contained herein, any creditor who has filed or purchased duplicate Claims within the same Voting Class may be provided with only one Solicitation Package and one Ballot for voting a single Claim in such Class, regardless of whether the Debtors have objected to such duplicate Claims; and

(g) if a Proof of Claim has been amended by a later Proof of Claim that is filed on or prior to the Bar Date, the later filed amended Proof of Claim shall be entitled to vote in a manner consistent with these tabulation rules, and the earlier filed Proof of Claim shall be disallowed for voting purposes, regardless of whether the Debtors have objected to such amended claim.  Except as otherwise ordered by the Court, any amendments to Proofs of Claim after the Bar Date shall not be considered for purposes of these tabulation rules.

**Section 510(b) Claims (Class 11)**.  Except as otherwise provided herein, each Section 510(b) Claim will be accorded one (1) vote and valued at $1.00 for voting purposes only, and not for purposes of allowance or distribution, unless (i) such Claim amount for voting purposes is disputed in the manner set forth below for filing a Rule 3018(a) motion, in which case the Claim amount shall be an amount that the Court deems appropriate for the purpose of voting to accept or

reject the Plan or (ii) such Claim is Disallowed prior to the Voting Deadline, in which case the Votes will not be counted.

For the avoidance of doubt, with respect to any Proofs of Claim filed on behalf of an entire purposed class of claimants (including a class of claimants comprised of any current or former beneficial owners of equity securities of Core Scientific, Inc. purchased during the period from January 3, 2022 through December 20, 2022, inclusive (the "**Other Beneficial Owners**")), including Proofs of Claim Nos. 556 and 632 (collectively, the "**Purported Class POCs**"):

(a) only the individual filing the Purported Class POC (the "**POC Filing Party**") shall be entitled to vote to accept or reject the Plan;

(b) the POC Filing Party shall be entitled to one (1) vote in the amount of $1.00 on behalf of the individual claim asserted by the POC Filing Party in its individual capacity in the applicable Purported Class POC; and

(c) any Other Beneficial Owner that did not file a Proof of Claim shall not be entitled to vote to accept or reject the Plan.

**Existing Common Interests (Class 12)**.  The amount of each Existing Common Interest for voting purposes only will be established by reference to (a) the applicable books and records of the Debtors' transfer agent, which shall be provided by the transfer agent to the Voting Agent no later than two (2) Business Days following the Voting Record Date and (b) the books and records of the applicable Equity Nominee (defined below) as of the Voting Record Date as evidenced by the securities position report from The Depository Trust Company (the "**DTC**").

**General**.

If the Debtors have filed an objection to, a request for estimation of, or an adversary proceeding relating to a Claim or Interest on or before **December 1, 2023 at 5:00 p.m. (Prevailing Central Time)**, such Claim or Interest shall be temporarily Disallowed for voting purposes, except as ordered by the Court before the Voting Deadline; *provided*, *however*, that, if the Debtors' objection seeks only to reclassify or reduce the Allowed amount of such Claim or Interest, then such Claim or Interest is temporarily Allowed for voting purposes in the reduced amount and/or as reclassified (as applicable), except as may be ordered by the Court before or concurrent with, entry of an order confirming the Plan; *provided*, *further*, that if the Debtors' objection seeks only to disallow a Proof of Claim purportedly filed on behalf of a class of claimants, then such Claim is temporarily Allowed for voting purposes only as to the individual that filed such Proof of Claim and not as to the class of claimants on behalf of which such Proof of Claim was filed.

If any Holder seeks to challenge the Allowed amount of its Claim or Interest for voting purposes, such creditor must file with the Court a motion for an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing such Claim or Interest for voting purposes in a different amount (a "**Rule 3018(a) Motion**").  Any Rule 3018(a) Motion must be filed with the Court so as to be actually received not later than **December 8, 2023 at 5:00 p.m. (Prevailing Central Time)**.

Upon the filing of any such Rule 3018(a) Motion, such Holder's Provisional Ballot shall be counted in accordance with the above-designated guidelines, unless temporarily Allowed in a different amount by an order of the Court entered prior to or concurrent with entry of an order confirming the Plan.

For purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, separate Claims held by a single Holder in a particular Class shall be aggregated as if such Holder held one Claim in the Debtor in such Class, and the votes related to such Claims shall be treated as a single vote to accept or reject the Plan.

**E.    Form, Content, and Manner of Notices.**

1.    **Voting Agent**.

The Debtors have retained Stretto, Inc. ("**Stretto**" or the "**Voting Agent**") as their claims, noticing, and solicitation agent pursuant to the *Order Authorizing the Employment and Retention of Stretto, Inc. As Claims, Noticing, and Solicitation Agent* (Docket No. 28).  Pursuant to the Disclosure Statement Order, Stretto is authorized to assist the Debtors in (i) distributing the Solicitation Packages, (ii) receiving, tabulating, and reporting on Ballots cast to accept or reject the Plan by Holders of Claims and Interests, (iii) responding to inquiries from Holders of Claims and Interests and other parties in interest relating to the Disclosure Statement, the Plan, the Ballots, the Solicitation Packages, and all other related documents and matters related thereto, including the procedures and requirements for voting to accept or reject the Plan and for objecting to the Plan or Disclosure Statement, (iv) soliciting votes on the Plan, and (v) if necessary, contacting creditors and equity holders regarding the Plan, the Ballots, the Solicitation Packages and all other related documents and matters related thereto.

2.    **The Solicitation Package**.

The following materials shall constitute the Solicitation Package:

(a)    the Disclosure Statement Order, as entered by the Court (without attachments, except as set forth below);

(b)    the Disclosure Statement with all exhibits thereto, including the Plan;

(c)    a copy of these Solicitation and Voting Procedures, annexed as **Exhibit 2** to the Disclosure Statement Order;

(d)    the *Notice of (I) Conditional Approval of Disclosure Statement, (II) Approval of (A) Solicitation and Voting Procedures and (B) Notice Procedures for the Assumption or Rejection of Executory Contracts and Unexpired Leases; (III) Combined Hearing to Consider Final Approval of the Disclosure Statement and Confirmation of the Plan; And (IV) Establishing Notice and Objection Procedures for Final Approval of the Disclosure Statement and Confirmation of the Plan* annexed as **Exhibit 1** to the Disclosure Statement Order (the "**Combined Hearing Notice**");

(e)      if the recipient is entitled to vote on the Plan (as set forth herein), a Ballot customized (where possible and appropriate) for such Holder and conforming to Official Bankruptcy Form No. B 314, in the form described below;[6] and

(f)      a postage-prepaid return envelope.

Holders of Claims or Interests in a Non-Voting Class shall only receive the Combined Hearing Notice and the Notice of Non-Voting Status (as defined and described below).

3.      **Distribution of the Solicitation Package.**

The Solicitation Package shall provide the Plan and the Disclosure Statement as well as the Disclosure Statement Order (without attachments except the Solicitation and Voting Procedures annexed as **Exhibit 2** thereto) in electronic format (*i.e.*, USB flash drive format). Moreover, the Plan and Disclosure Statement will be available at no charge via the internet at https://cases.stretto.com/CoreScientific. Only the Ballots and the Combined Hearing Notice will be provided in paper format. Any creditor or equity holder for which service by USB flash drive imposes a hardship may request an additional copy of the Disclosure Statement (and attachments) and Disclosure Statement Order with Solicitation and Voting Procedures in paper format by contacting Stretto through (i) e-mail at CoreScientificInquiries@stretto.com, (ii) by writing to Core Scientific, Inc., c/o Ballot Processing Center, C/O Stretto, Inc. 410 Exchange, Suite 100 Irvine, CA 92602, or (iii) via telephone, toll-free, at 949.404.4152 (Toll-Free) or +1 888.765.7875 (if calling from outside the U.S.) (outside of the U.S. and Canada). Upon receipt of such request, the Debtors will provide such creditor or equity holder with a paper copy of the Plan, Disclosure Statement, and Disclosure Statement Order at no cost to the creditor or equity holder within five (5) days of such request or as soon as reasonably practicable thereafter.

The Debtors shall mail to Holders of Claims and Interests in Voting Classes entitled to vote on the Plan as of the Voting Record Date the Solicitation Packages by November 17, 2023, or as soon as reasonably practicable thereafter (the "**Solicitation Mailing Deadline**"). The Debtors will also provide complete Solicitation Packages (excluding Ballots) to the U.S. Trustee and all parties in interest required to be notified under Bankruptcy Rule 2002 and Local Rule 2002-1.

The Debtors are not required to mail Solicitation Packages to creditors or interest holders (i) who have Claims or Interests that have already been paid in full during the Chapter 11 Cases, (ii) whose prior mailings in these chapter 11 cases were returned as undeliverable and who have not provided a forwarding address by the Voting Record Date, (iii) who hold Class 4 (Other Secured Claims), Class 7 (Priority Non-Tax Claims), Class 9 (Intercompany Claims), or Class 10 (Intercompany Interests), and/or (iv) who are not otherwise entitled to vote to accept or reject the Plan in accordance with the terms and provisions of these Solicitation and Voting Procedures.

---

[6]   Official Bankruptcy Form No. B 314 can be found at http://www.uscourts.gov/forms/bankruptcy-forms, the official website for the United States Bankruptcy Courts.

In the event that the United States Postal Service returns any mailings as undeliverable, the Debtors are excused from mailing Solicitation Packages or Notices of Non-Voting Status to addresses from which the Debtors received mailings returned as undeliverable.  For purposes of serving the Solicitation Packages and Notices of Non-Voting Status, the Debtors may rely on the address information for the Holders of Claims and Interests as compiled, updated, and maintained by the Voting Agent as of the Voting Record Date.  The Debtors and the Voting Agent are not required to conduct any additional research for updated addresses based on undeliverable Solicitation Packages (including Ballots) and will not be required to resend Solicitation Packages or other materials, including Notices of Non-Voting Status, that are returned as undeliverable unless the Debtors are provided with accurate addresses for such parties prior to the Voting Record Date.

To avoid duplication and reduce expenses, the Debtors will use commercially reasonable efforts to ensure that each Holder of a Claim or Interest receives no more than one Solicitation Package (and, therefore, one Ballot) on account of such Claim or Interest and with respect to that Class as against the Debtors.

4.   **Forms of Ballots.**

Holders of Claims and Interests in the Voting Classes that are eligible to vote (as set forth herein) shall receive ballots substantially in the forms attached to the Disclosure Statement Order as **Exhibits 3–12** (the "**Ballots**"), as applicable.[7]  All Holders of Claims and Interests in the Voting Classes will receive a Ballot that includes an election to opt out of the non-debtor release provisions in section 10.6(b) of the Plan (the "**Non-Debtor Release Provisions**").  Holders of Claims and Interests in the Voting Classes that properly and timely elect to opt out of the Non-Debtor Release Provisions will not be a Releasing Party or Released Party under the Plan.

The Debtors will distribute Ballots to each of the Holders of Claims or Interests in Voting Classes; *provided*, that the following procedures shall apply, as applicable:

***Holders of Miner Equipment Lender Claims in Class 3 and Class 8.***

Each Holder of a Miner Equipment Lender Claim will receive two Ballots: one Ballot on account of its Miner Equipment Lender Secured Claim in Class 3 and one Ballot on account of its Miner Equipment Lender Deficiency Claim, which constitutes a General Unsecured Claim in Class 8.  Furthermore, as described in the Plan and section 7 below, each Holder of a Miner Equipment Lender Claim will be entitled to elect on its Ballot to receive the Default Miner Equipment Lender Treatment, Miner Equipment Lender Treatment Election 1, or Miner Equipment Lender Treatment Election 2.  Notwithstanding the election option chosen by a Holder of a Miner Equipment Lender Secured Claim in Class 3 pursuant to the Plan, each Holder of a Miner Equipment Lender Deficiency Claim shall be entitled vote its Miner Equipment Lender Deficiency Claim in Class 8; *provided*, that, as provided in the Plan, if such Holder elects Miner

---

[7]   Stretto is required to retain all paper copies of Ballots and all solicitation-related correspondence for one (1) year following the Effective Date, whereupon, Stretto is authorized to destroy and/or otherwise dispose of all paper copies of Ballots; printed solicitation materials including unused copies of the Solicitation Package; and all solicitation-related correspondence (including undeliverable mail), in each case unless otherwise directed by the Debtors or the Clerk of the Court in writing within such one (1) year period.

Equipment Lender Treatment Election 2 on its Ballot, such Holder shall waive its recovery on account of its Miner Equipment Lender Deficiency Claim in Class 8 and shall not be entitled to vote in Class 8.

***Holders of Existing Common Interests in Class 12.***

The Debtors are authorized to distribute the following three forms of Ballots with respect to Existing Common Interests in Class 12: (i) a form of Ballot for registered holders of Class 12 (the "**Equity Registered Holder Ballot**"); (ii) a form of Ballot for a beneficial holder of Class 12 (an "**Equity Beneficial Holder**," and the corresponding ballot, the "**Equity Beneficial Holder Ballot**"); and (iii) a form of Ballot for the bank, broker, or other financial institution "in street name" at DTC on behalf of the Equity Beneficial Holder (the "**Equity Nominee**") (or agent thereof) to transmit the votes of one or more beneficial owners (the "**Equity Master Ballot**").

Any registered holder holding an Existing Common Interest shall vote on the Plan by completing and signing an Equity Registered Holder Ballot on its own behalf and returning such Ballot directly to the Voting Agent on or before the Voting Deadline;

The following additional procedures shall apply to Interests of Equity Beneficial Holders who hold their position at DTC in "street name" through an Equity Nominee:

(a) the Voting Agent shall distribute, or cause to be distributed, the appropriate number of copies of Ballots to Equity Nominees identified by the Voting Agent as entities through which Equity Beneficial Holders hold Existing Common Interests as of the Voting Record Date;

(b) any Equity Nominee that is a holder of record with respect to Existing Common Interests shall solicit votes from Equity Beneficial Holders of such claims and interests by: (i) distributing the Solicitation Packages, including the Equity Beneficial Holder Ballots, as applicable, it receives from the Voting Agent to all such Equity Beneficial Holders, no later than five (5) business days following receipt of the Solicitation Package[8]; (ii) providing such Equity Beneficial Holders with a return address and envelope to send Ballots; (iii) promptly collecting Equity Beneficial Holder Ballots from such Beneficial Holders that cast votes on the Plan; (iv) compiling and validating the votes and other relevant information of all such Equity Beneficial Holders on the Equity Master Ballot; and (v) transmitting the applicable Equity Beneficial Holder Ballot to the Voting Agent by the Voting Deadline;

(c) any Equity Beneficial Holder holding an Existing Common Interest in "street name" through an Equity Nominee must vote on the Plan through such Equity Nominee by completing and signing the Equity Beneficial Holder Ballot and returning such Ballot to

---

[8] Solicitation Packages may be sent in paper format or via electronic transmission in accordance with the customary requirements of each Equity Nominee.  Each Equity Nominee will then distribute the Solicitation Packages, as appropriate, in accordance with its customary practices and obtain votes to accept or to reject the Plan also in accordance with its customary practices.  If it is the Equity Nominee's customary and accepted practice to submit a "voting instruction form" to the Equity Beneficial Holders for the purpose of recording the Equity Beneficial Holder's vote, the Equity Nominee will be authorized to send the voting instruction form in lieu of, or in addition to, an Equity Beneficial Holder Ballot.

the appropriate Equity Nominee as promptly as possible and in sufficient time to allow such Equity Nominee to process the Ballot and return the Equity Master Ballot to the Voting Agent prior to the Voting Deadline. Any Equity Beneficial Holder holding an Existing Common Interest in a "street name" that submits an Equity Beneficial Holder Ballot to the Debtors or Voting Agent will not have such Equity Beneficial Holder Ballot counted for purposes of accepting or rejecting the Plan;

(d) any Equity Beneficial Holder Ballot returned to an Equity Nominee by an Equity Beneficial Holder shall not be counted for purposes of accepting or rejecting the Plan until such Equity Nominee properly completes and delivers to the Voting Agent the Equity Master Ballot that reflects the vote of such Equity Beneficial Holders by the Voting Deadline or otherwise validates the Equity Beneficial Holder Ballot in a manner acceptable to the Voting Agent. Equity Nominees shall retain all Equity Beneficial Holder Ballots returned by Equity Beneficial Holders for a period of one (1) year after the Effective Date of the Plan;

(e) if an Equity Beneficial Holder holds an Existing Common Interest through more than one Equity Nominee or through multiple accounts, such Equity Beneficial Holder may receive more than one Equity Beneficial Holder Ballot and each such Equity Beneficial Holder should execute a separate Equity Beneficial Holder Ballot for each block of Existing Common Interests that it holds through any Equity Nominee and must return each such Equity Beneficial Holder Ballot to the appropriate Equity Nominee;

(f) if an Equity Beneficial Holder holds a portion of its Existing Common Interests through an Equity Nominee or Equity Nominees and another portion in its own name as the record holder, such Equity Beneficial Holder should follow the procedures described herein to vote the portion held in its own name and the procedures described in the rest of this section to vote the portion held by the Equity Nominee(s); and

(g) Equity Beneficial Holders holding Existing Common Interests through an Equity Nominee must return their paper ballot to its Equity Nominee, unless, at the option of the Equity Nominee, the Equity Nominee instructs their Equity Beneficial Holders that they may relay votes or voting instructions electronically or otherwise to the Equity Nominee or the entity preparing the Equity Master Ballot on such Equity Nominee's behalf, and Equity Nominees may use their customary procedures for obtaining such votes electronically or otherwise.

### 5.    Notice of Non-Voting Status and Release Opt Out Formns.

Holders of Claims and Interests in the Non-Voting Classes in lieu of a Solicitation Package, will receive (i) the Combined Hearing Notice (ii) a Notice of Non-Voting Status substantially in the form attached to the Disclosure Statement Order as **Exhibit 13** (the "**Notice of Non-Voting Status**"), and (iii) a Release Opt Out Form (as defined below); *provided* that, the Debtors are not required to serve Holders of Claims and Interests in Class 9 (Intercompany Claims) and Class 10 (Intercompany Interests) copies of the Combined Hearing Notice, Notice of Non-Voting Status, or any other type of notice in connection with solicitation of the Plan because such Claims and Interests are held by the Debtors or the Debtors' affiliates.

The Notice of Non-Voting Status provides (i) notice of the Court's conditional approval of the Disclosure Statement, (ii) notice of the filing of the Plan and Disclosure Statement, (iii) notice of the Holders' non-voting status, and (iv) information about how to obtain copies of the Disclosure Statement and Plan.  In addition, the Notice of Non-Voting Status contains the full text of the release, exculpation, and injunction provisions set forth in Article X of the Plan and advises such Holders in Non-Voting Classes that they will be bound by the Non-Debtor Release Provisions unless they timely and properly opt out.

The Debtors shall cause to be mailed a release opt out form, substantially in the form attached to the Disclosure Statement Order as **Exhibit 14** (the "**Release Opt Out Form**"), to Holders of Claims in Class 4 (Other Secured Claims) and Class 7 (Priority Non-Tax Claims). For Holders of Claims and Interests in the Voting Classes, the opt out option shall be on such Holder's Ballot.

In addition, Other Beneficial Owners shall receive a Release Opt Out Form and Combined Hearing Notice.  The Debtors shall cause to be mailed (i) the Release Opt Out Form and (ii) the Combined Hearing Notice, to the banks, brokers, and financial institutions (or their agents) that might have purchased equity securities in "street name" (collectively, including their agents, the "**Nominees**") on behalf of the Other Beneficial Owners.  With their mailing, the Debtors shall include instructions to the Nominees concerning the requirements in subparagraphs (a)–(d) below.

(a) such Nominees shall either: (i) within seven (7) calendar days of receipt of the Release Opt Out Form and Confirmation Hearing Notice, request from the Debtors sufficient copies of the Release Opt Out Form and Confirmation Hearing Notice to forward to all such beneficial owners and within seven (7) calendar days of receipt of those notices and claim forms forward them to all such beneficial owners; or (ii) within seven (7) calendar days of receipt of the Release Opt Out Form and Confirmation Hearing Notice, provide a list of the names and addresses of all such beneficial owners to the Debtors and the Debtors shall send the Release Opt Out Form and Confirmation Hearing Notice promptly to such identified beneficial owners.

(b) Nominees that elect to send the Release Opt Out Form and Confirmation Hearing Notice to their beneficial owners shall also send a statement to the Debtors and Stretto confirming that the mailing was made and shall retain their mailing records for use in connection with any further notices that may be provided in these Chapter 11 Cases.

(c) if it is the Nominee's customary and accepted practice to forward such materials to beneficial owners by e-mail, e-delivery, or any other method of electronic or printed communication, the Nominees are authorized to follow those customary practices, within seven (7) calendar days of receipt of the materials, in lieu of sending actual printed copies of the Release Opt Out Form and Confirmation Hearing Notice.

(d) within seven (7) calendar days of forwarding such notice, the Nominees may request reimbursement for reasonable and documented noticing costs and research fees, if any, by making such request in writing to the Debtors at the address to be provided by Stretto to the Nominees.

A Holder or Other Beneficial Owner that properly and timely elects on the Release Opt Out Form to opt out of the Non-Debtor Release Provision will not be a Releasing Party or Released Party under the Plan.  An encrypted opt-out data and audit trail will be created through the electronic submission process and become part of the record of any opt-out election submitted in this manner.  Additionally, any Holder's or Other Beneficial Owner's electronic signature will be deemed to be legally valid and effective immediately.  For the avoidance of doubt, Voting Agent's online portal at https://cases.stretto.com/CoreScientific (the "**Online Portal**") is the sole method for Holders of Claims and Interests in Non-Voting Classes and Other Beneficial Owners to transmit opt-out elections electronically.  All Release Opt Out Forms must be properly completed and returned by **December 13, 2023 at 5:00 p.m. (Prevailing Central Time)** (the "**Opt Out Deadline**") either by (i) delivering the Release Opt Out Form to the Voting Agent by first-class mail, hand delivery, or overnight courier or (ii) submitting the Release Opt Out Form by electronic, online transmission through the Online Portal, each in accordance with the instructions included on the Release Opt Out Form.

6.      **Voting Deadline.**

The Court has established **December 13, 2023** as the deadline to submit votes to accept or reject the Plan (the "**Voting Deadline**").  The Debtors may extend the Voting Deadline, in their discretion, without further order of the Court.  To be counted as a vote to accept or reject the Plan, each Ballot must be properly executed, completed, and delivered to the Voting Agent: (i) by first-class mail in the return envelope provided with each Ballot; (ii) by overnight mail; (iii) by hand delivery, (iv) via E-Ballot through the Online Portal, or, (v) only with respect to Equity Master Ballots, via electronic mail to CoreScientificInquiries@stretto.com so that (in each instance) it is **actually received** by the Voting Agent no later than the Voting Deadline.

Holders of Claims and Interests mailing their Ballots to the Voting Agent shall mail them to the following address:

| **STRETTO'S ADDRESS FOR RECEIPT OF PAPER BALLOTS (WHETHER BY HAND DELIVERY, OVERNIGHT MAIL, OR FIRST CLASS MAIL)** |
|:---:|
| **CORE SCIENTIFIC, INC.**<br>**BALLOT PROCESSING CENTER**<br>**C/O STRETTO, INC.**<br>**410 EXCHANGE, SUITE 100**<br>**IRVINE, CA 92602** |

In all instances, Holders shall consult their Ballot for specific instructions regarding submission of their votes and any elections.

7.      **Tabulation Procedures.**

*General Rules.*

The following voting procedures and standard assumptions shall be used in tabulating Ballots, subject to the Debtors' right to waive any of the below specified requirements

for completion and submission of Ballots so long as such requirement is not otherwise required by the Bankruptcy Code, Bankruptcy Rules, or Bankruptcy Local Rules:

(a) whenever a Holder of Claims or Interests casts more than one Ballot voting the same Claims and Interests before the Voting Deadline, the latest dated valid Ballot received on or before the Voting Deadline shall be deemed to reflect such creditor's or equity security holder's intent and thus, supersede any previously received, Ballot. Following the Voting Deadline, no Ballot may be changed or revoked, absent further order of the Court or as directed by the Debtors.

(b) whenever a Holder of Claims or Interests casts a Ballot that is properly completed, executed, and timely returned to the Voting Agent but does not indicate either an acceptance or rejection of the Plan, the Ballot will not be counted.

(c) whenever a Holder of Claims or Interests casts a Ballot that is properly completed, executed, and timely returned to the Voting Agent but indicates both an acceptance and a rejection of the Plan, the Ballot will not be counted.

(d) a Holder shall be deemed to have voted the full amount of its Claim or Interest in each Class and shall not be entitled to split its vote within a particular Class or between more than one Debtor. Any such Holder's Ballot that partially accepts and partially rejects the Plan, between the same or multiple Debtors, will not be counted.

(e) a Person signing a Ballot in its capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity of a Holder of Claims or Interests should indicate such capacity when signing, and if so requested by the Debtors or the Voting Agent, must submit proper evidence satisfactory to the Debtors of its authority to so act.

(f) a Holder of Claims or Interests against more than one Debtor that casts a single Ballot shall have its votes counted separately with respect to each such Debtor.

(g) a Holder of Claims or Interests in more than one Class must use separate Ballots for each Class of Claims or Interests.

(h) the Debtors, unless subject to contrary order of the Court, may waive any defects or irregularities as to any particular irregular Ballot at any time, either before or after the Voting Deadline.

(i) Holders in Class 3 shall receive two Ballots: (i) a Class 3 Ballot to vote the Allowed Miner Equipment Lender Secured Claims, and (ii) a Class 8 Ballot to vote the Allowed Miner Equipment Lender Deficiency Claims. Holders of Allowed Miner Equipment Lender Secured Claims and Allowed Miner Equipment Lender Deficiency Claims must vote each ballot consistently, either to accept or reject the Plan. Holders that vote inconsistently may have their vote(s) discarded. If a Holder of an Allowed Miner Equipment Lender Secured Claim elects Miner Equipment Lender Election 2 on its Class 3 Ballot and submits a Ballot on account of its Miner Equipment Lender Deficiency Claim in Class 8, such Class 8 Ballot shall be discarded.

(j)  the following Ballots shall not be counted:

 i. any Ballot received after the Voting Deadline, unless the Debtors shall have granted an extension of the Voting Deadline in writing with respect to such Ballot or waived the late submission;

 ii. any Ballot that is illegible or contains insufficient information to permit the identification of the voting party;

 iii. any Ballot cast by a person or entity that does not hold a Claim or Interest in a Class that is entitled to vote to accept or reject the Plan;

 iv. any Ballot cast by a Person or Entity that is not entitled to vote, even if such individual or Entity holds a Claim or Interest in a Voting Class;

 v. any unsigned Ballot, provided that E-Ballots submitted on the Online Portal will be deemed to contain a legal, valid signature;

 vi. any Ballot containing a vote that the Court determines, after notice and a hearing, was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code; or

 vii. any Ballot transmitted to the Voting Agent by e-mail (other than an Equity Master Ballot) or facsimile or other means not specifically approved herein.

***Rules for Existing Common Interests.***

The following rules will apply with respect to the tabulation of Equity Master Ballots cast by Equity Nominees for Equity Beneficial Holders of Existing Common Interests:

(a)  votes cast by Equity Beneficial Holders through Equity Nominees will be applied to the applicable positions of Existing Common Interests held by such Equity Nominees as of the Voting Record Date, as evidenced by the applicable records. Votes submitted by an Equity Nominee will not be counted in excess of the amount of such Existing Common Interests held by such Equity Nominee as of the Voting Record Date;

(b)  if conflicting votes or "over votes" are submitted by an Equity Nominee, the Debtors will use reasonable efforts to reconcile discrepancies with the Equity Nominees;

(c)  if over votes on an Equity Master Ballot are not reconciled prior to the preparation of the vote certification, the Debtors shall apply the votes to accept and to reject the Plan in the same proportion as the votes to accept and to reject the Plan submitted on the Equity Master Ballot that contained the over-vote; and

(d)  a single Equity Nominee may complete and deliver to the Voting Agent multiple Equity Master Ballots. Votes reflected on multiple Equity Master Ballots will be counted, except to the extent that they are duplicative of other Equity Master Ballots. If two or more Equity Master Ballots are inconsistent, the last dated, valid Equity Master Ballot received prior to

the Voting Deadline will, to the extent of such inconsistency, supersede and revoke any prior dated Equity Master Ballot.

***Rules for Election of Holders of Miner Equipment Lender Secured Claims in Class 3***.

Holders of Miner Equipment Lender Secured Claims in Class 3 are entitled to make certain elections on their Ballots as to the form of consideration they receive pursuant to the Plan. The following procedures will govern the tabulation of their elections:

As set forth in the Plan, each Holder of Allowed Miner Equipment Lender Secured Claims shall be entitled to elect on its Ballot to receive, in lieu of the Default Miner Equipment Lender Treatment, the Miner Equipment Lender Treatment Election 1.  Furthermore, Settling Miner Equipment Lenders shall be entitled to elect on its Ballot to receive, in lieu of the Default Miner Equipment Lender Treatment, the Miner Equipment Lender Treatment Election 2.  If a Holder of an Allowed Miner Equipment Lender Secured Claim does not make any elections on its Ballot, such Holder shall receive the Default Miner Equipment Lender Treatment.  If a Holder of an Allowed Miner Equipment Lender Secured Claim elects Miner Equipment Lender Treatment Election 2 and is not, or does not become, a Settling Miner Equipment Lender, then such Holder shall receive the Default Miner Equipment Lender Treatment.

***Miscellaneous Rules.***

Each Holder of Claims or Interests that votes to accept or reject the Plan is deemed to have voted the full amount of its Claim or Interest therefor.

The Voting Agent may, but is not required to, contact parties who submit incomplete or otherwise deficient Ballots to make a reasonable effort to cure such deficiencies, provided that, neither the Debtors nor Voting Agent is required to contact such parties to provide notification of defects or irregularities with respect to completion or delivery of Ballots, nor will any of them incur any liability for failure to provide such notification.  Unless waived, any defects or irregularities in connection with deliveries of Ballots must be cured within such time as the Debtors (or the Court) determines.  Neither the Debtors nor any other person will be under any duty to provide notification of defects or irregularities with respect to deliveries of Ballots nor will any of them incur any liabilities for failure to provide such notification.  Delivery of such Ballots will not be deemed to have been made until such irregularities have been cured or waived.  Ballots previously furnished (and as to which any irregularities have not theretofore been cured or waived prior to the Voting Deadline) will be invalidated.

The Debtors and/or their Voting Agent, as applicable, are authorized to determine all questions as to the validity, form, eligibility (including time of receipt), acceptance, and revocation or withdrawal of Ballots, which determination will be final and binding on all parties.

The Debtors are authorized to reject any and all Ballots submitted by any Holders of Claims or Interests not in proper form, the acceptance of which would, in the opinion of the Debtors or their counsel, as applicable, be unlawful.

The Debtors are further authorized to waive any defects or irregularities or conditions of delivery as to any particular Ballot by any Holders of Claims or Interests. The interpretation (including the Ballot and the respective instructions thereto) by the Debtors in accordance with the foregoing sentence will be final and binding on all parties.

The Debtors or their Voting Agent shall file the Voting Report on or before **December 18, 2023**.

8. **Combined Hearing Notice.**

Within three (3) days after entry of the Disclosure Statement Order, or as soon as reasonably practicable thereafter, the Debtors will serve the Notice Parties and Holders of Claims and Interests in the Non-Voting Classes via e-mail or first-class mail, a copy of the Combined Hearing Notice, which sets forth (i) the Voting Deadline, (ii) the Objection Deadline and procedures for filing objections and responses to confirmation of the Plan, (iii) the time, date, and place for the Combined Hearing, and (iv) information about the Plan's release and injunction provisions in compliance with Bankruptcy Rule 2002(c)(3). The Debtors will separately serve Holders of Claims and Interests in Voting Classes with the Combined Hearing Notice as part of their Solicitation Packages.

The Debtors may, in their discretion, give supplemental publication notice of the Combined Hearing, no later than twenty-eight (28) days prior to the Combined Hearing, in one or more local or foreign newspapers, trade journals, or similar publications as the Debtors deem appropriate.

**The Debtors reserve the right, and are authorized to, in consultation with the Requisite Consenting Creditors, make non-substantive or immaterial changes to the Disclosure Statement, Plan (including, for the avoidance of doubt, the Plan Supplement), Ballots, Combined Hearing Notice, and related documents without further order of the Court, including, without limitation, changes to correct typographical and grammatical errors, if any, and to make conforming changes among the Disclosure Statement, the Plan, and any other materials in the Solicitation Packages before their distribution; *provided* that all such modifications shall be made in accordance with the terms of the document being modified and the Plan.**

**Exhibit 3**

**Form of Ballot for April Convertible Notes Secured Claims (Class 1)**

No person has been authorized to give any information or advice, or to make any representation, other than what is included in the Disclosure Statement and other materials accompanying this Ballot.[1]

PLEASE NOTE THAT, EVEN IF YOU INTEND TO VOTE TO REJECT THE PLAN, YOU MUST STILL READ, COMPLETE, AND EXECUTE THIS ENTIRE BALLOT.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | § | Chapter 11 |
|  | § |  |
| CORE SCIENTIFIC, INC., *et al.*, | § | Case No. 22-90341 (CML) |
|  | § |  |
| Debtors[2] | § | (Jointly Administered) |
|  | § |  |

## BALLOT FOR VOTING TO ACCEPT OR REJECT THE SECOND AMENDED JOINT CHAPTER 11 PLAN OF CORE SCIENTIFIC, INC. AND ITS AFFILIATED DEBTORS

### CLASS 1 (APRIL CONVERTIBLE NOTES SECURED CLAIMS)

---

IN ORDER FOR YOUR VOTE TO BE COUNTED TOWARD CONFIRMATION OF THE PLAN, THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS <u>ACTUALLY RECEIVED</u> BY THE VOTING AGENT ON OR BEFORE DECEMBER 13, 2023 AT 5:00 P.M. (PREVAILING CENTRAL TIME) (THE "<u>VOTING DEADLINE</u>"), UNLESS EXTENDED BY THE DEBTORS WITH THE CONSENT OF THE REQUISITE CONSENTING CREDITORS.

---

Core Scientific, Inc. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**") are soliciting votes with respect to the *Third Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors*, filed on November 16, 2023 (Docket No. 1438) (as may be modified, amended, or supplemented, the "**Plan**"). The Plan is attached as <u>**Exhibit A**</u> to the *Disclosure Statement for Third Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors*, filed on

---

[1]   All capitalized terms used but not defined herein or in the enclosed voting instructions have the meanings ascribed to them in the Plan, attached as <u>Exhibit A</u> to the Disclosure Statement.

[2]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions VII, LLC (3198). The Debtors' corporate headquarters is 210 Barton Springs Road, Suite 300, Austin, Texas 78704. The Debtors' service address is 2407 S. Congress Ave, Suite E-101, Austin, Texas 78704.

November 16, 2023 (Docket No. 1439) (as may be modified, amended, or supplemented, the "**Disclosure Statement**").

Please use this Ballot to cast your vote to accept or reject the Plan if you are, as of November 9, 2023 (the "**Voting Record Date**"), a Holder of an April Convertible Notes Secured Claim.

The Disclosure Statement provides information to assist you in deciding whether to accept or reject the Plan. If you do not have the Disclosure Statement, you may obtain a copy from Stretto, Inc. (the "**Voting Agent**" or "**Stretto**") at no charge by accessing the Debtors' restructuring website at https://cases.stretto.com/CoreScientific.

If you have any questions on how to properly complete this Ballot, please contact the Voting Agent (i) by e-mail at CoreScientificInquiries@stretto.com, (ii) by writing to Core Scientific, Inc., Ballot Processing Center, c/o Stretto, Inc., 410 Exchange, Suite 100, Irvine, CA 92602, or (iii) via telephone at (949) 404-4152 (Toll-Free) or +1 (888) 765-7875 (if calling from outside the U.S.). Please be advised that the Voting Agent cannot provide legal advice. You may wish to seek legal advice concerning the Plan and the classification and treatment of your Class 1 April Convertible Notes Secured Claim under the Plan.

---

**IMPORTANT NOTICE REGARDING TREATMENT FOR APRIL CONVERTIBLE NOTES SECURED CLAIMS IN CLASS 1**

As described in more detail in the Disclosure Statement, if the Plan is confirmed and the Effective Date occurs, except to the extent that a Holder of an Allowed April Convertible Notes Secured Claim agrees to a less favorable treatment of such Claim, each such Holder shall receive, in full and final satisfaction, settlement, release, and discharge of such Claim, on the Effective Date, or as soon as reasonably practicable thereafter, (i) such Holder's Pro Rata Share of the New Secured Notes, (ii) such Holder's Pro Rata Reduced Convertible Notes Share of (a) the New Secured Convertible Notes and (b) the Convertible Noteholders Equity Distribution, (iii) such Holder's Pro Rata Convertible Notes Equity Distribution of the Contingent Payment Obligations, and (iv) such Holder's Pro Rata Total Convertible Notes Share of (a) the ERO Shortfall Equity Distribution (if any) and (b) the Incremental Convertible Noteholders Equity Distribution (if any); *provided* that any Holder of an Allowed April Convertible Notes Secured Claims that is an Exit Lender shall have its distribution of New Common Interests pursuant to the Convertible Noteholders Equity Distribution in the preceding clause (ii)(b) reduced on a dollar-for-dollar basis in the amount of its respective share of the Designated Amount on account of such Holder's respective share of first-lien delayed draw term loans under the Exit Credit Agreement (for the avoidance of doubt without redistribution of such amounts so reduced being allocated to other Holders of Allowed Convertible Notes Claims); *provided*, *further*, that notwithstanding the foregoing, the distribution of the Incremental Convertible Noteholders Equity Distribution (if any) shall not occur until entry of a Final Order(s) approving the Professional Fee Claims of the Equity Committee.

**PLEASE READ THE DISCLOSURE STATEMENT AND PLAN FOR MORE DETAILS.**

---

The Plan can be confirmed by the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") and thereby made binding on you if it is accepted by the Holders of (i) at least two-thirds in amount of the Allowed Claims or Interests voted in each Impaired Class, and (ii) if the Impaired Class is a Class of Claims, more than one-half in number of the Allowed Claims voted in each Impaired Class, and if the Plan otherwise satisfies the applicable requirements of section 1129(a) under the Bankruptcy Code.  If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (y) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan, and (z) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.  If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan.  To have your vote counted, you must complete, sign, and return this Ballot to the Voting Agent by the Voting Deadline.

Your receipt of this Ballot does not indicate that your Claim(s) has been or will be Allowed.  This Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance or disallowance of, or distribution on account of, Class 1 April Convertible Notes Secured Claims.  You must provide all of the information requested by this Ballot.  Failure to do so may result in the disqualification of your vote.

## NOTICE REGARDING CERTAIN RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS IN PLAN

**If you (i) vote to accept the Plan, (ii) are solicited to vote to accept or reject the Plan, but do not vote to either accept or reject the Plan, and do not opt out of granting the releases set forth in the Plan, (iii) vote, or are deemed, to reject the Plan or are presumed to accept the Plan but do not opt out of granting the releases set forth in the Plan, or (iv) were given notice of the opportunity to opt out of granting the releases contained in the Plan but do not opt out, you shall be deemed to have consented to the releases contained in Section 10.6(b) of the Plan.  The releases as presented in the Plan are provided below:**

**SECTION 10.5 INJUNCTION.**

**Except as otherwise expressly provided in the Plan or for distributions required to be paid or delivered pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold Claims or Interests have been released pursuant to Section 0 or Section 0, shall be discharged pursuant to Section Error! Reference source not found. of the Plan, or are subject to exculpation pursuant to Section Error! Reference source not found., and all Subcontractors and all other parties in interest are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Released Parties, and/or the Exculpated Parties (to the extent of the exculpation provided pursuant to Section Error! Reference source not found. with respect to the Exculpated Parties): (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (iii) creating, perfecting, or enforcing any Lien or encumbrance of any kind**

3

against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless (x) such Entity has timely asserted such setoff right either in a Filed Proof of Claim, or in another document Filed with the Bankruptcy Court explicitly preserving such setoff or that otherwise indicates that such entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise or (y) such right to setoff arises under a postpetition agreement with the Debtors or an Executory Contract that has been assumed by the Debtors as of the Effective Date; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released, settled, and/or treated, entitled to a distribution, or cancelled pursuant to the Plan or otherwise Disallowed; *provided* that such persons who have held, hold, or may hold Claims against, or Interests in, a Debtor, a Reorganized Debtor, or an Estate shall not be precluded from exercising their rights and remedies, or obtaining the benefits, solely pursuant to and consistent with the terms of the Plan.

Subject in all respects to Section Error! Reference source not found., no entity or person may commence or pursue a Claim or Cause of Action of any kind against any Released Party or Exculpated Party that arose or arises from, in whole or in part, the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors (which includes, for the avoidance of doubt, all claims and Causes of Action asserted or assertable in the Securities Class Action), the DIP Facility, the Convertible Notes Agreements, the Miner Equipment Lender Agreements, the Mortgage Agreements, the General Contracts, any and all agreements relating to M&M Liens, and any and all related agreements, instruments, and/or other documents, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Plan Settlements, the New Secured Convertible Notes Documents, the New Secured Notes Documents, the Contingent Payment Obligations Documents, the New Miner Equipment Lender Debt Documents, the Exit Facility Documents, the New Warrants Agreement, the Rights Offering, the Backstop Commitment Letter, the Initial DIP Loan Documents, the DIP Facility, the Terminated RSA, the RSA, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan (including, but not limited to, the New Common Interests), or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a claim of willful misconduct, fraud or gross negligence

against a Released Party or Exculpated Party and (ii) specifically authorizing such Entity or Person to bring such Claim or Cause of Action against any such Released Party or Exculpated Party. The Bankruptcy Court shall have sole and exclusive jurisdiction to determine whether a Claim or Cause of Action is colorable and, only to the extent legally permissible and as provided for in Section Error! Reference source not found., shall have jurisdiction to adjudicate the underlying colorable Claim or Cause of Action.

**SECTION 10.6(a)**     **RELEASES BY THE DEBTORS.**

Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the obligations of the Debtors under the Plan and the contributions of the Released Parties to facilitate and implement the Plan, except as otherwise provided in the Plan or in the Confirmation Order, on and after the Effective Date, the Released Parties are deemed conclusively, absolutely, unconditionally and irrevocably, released and discharged by the Debtors, the Reorganized Debtors, and the Estates from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Reorganized Debtors, the Estates, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors (which includes, for the avoidance of doubt, all claims and Causes of Action asserted or assertable in the Securities Class Action), the DIP Facility, the Convertible Notes Agreements, the Miner Equipment Lender Agreements, the Mortgage Agreements, the General Contracts, any and all agreements relating to M&M Liens, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Plan Settlements, the New Secured Convertible Notes Documents, the New Secured Notes Documents, the Contingent Payment Obligations Documents, the New Miner Equipment Lender Debt Documents, the Exit Facility Documents, the New Warrants Agreement, the Rights Offering, the Backstop Commitment Letter, the Initial DIP Loan Documents, the DIP Facility, the Terminated RSA, the RSA, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan (including, but not limited to, the New Common Interests), or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth in Section 0 of the Plan (i) shall only be

applicable to the maximum extent permitted by law; (ii) shall not be construed as (a) releasing any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud (*provided* that actual fraud shall not exempt from the scope of these Debtor releases any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, (b) releasing any Released Party from Claims or Causes of Action held by the Debtors arising from an act or omission that is determined by a Final Order or by a federal government agency to have constituted a violation of any federal securities laws or (c) releasing any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

**SECTION 10.6(b)      RELEASES BY HOLDERS OF CLAIMS AND INTERESTS.**

Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, except as otherwise provided in the Plan or in the Confirmation Order, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, each Releasing Party, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released, and discharged the Debtors, the Reorganized Debtors, and the Released Parties from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims or Causes of Action asserted or that may be asserted on behalf of the Debtors or their Estates, that such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, including any Claims or Causes of Action based on or relating to, or in any manner arising from, in whole or in part, the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors (which includes, for the avoidance of doubt, all claims and Causes of Action asserted or assertable in the Securities Class Action), the DIP Facility, the Convertible Notes Agreements, the Miner Equipment Lender Agreements, the Mortgage Agreements, the General Contracts, any and all agreements relating to M&M Liens, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Plan Settlements, the New Secured Convertible Notes Documents, the New Secured Notes Documents, the Contingent Payment Obligations Documents, the New Miner Equipment

Lender Debt Documents, the Exit Facility Documents, the New Warrants Agreement, the Rights Offering, the Backstop Commitment Letter, the Initial DIP Loan Documents, the DIP Facility, the Terminated RSA, the RSA, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan (including, but not limited to, the New Common Interests), or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth in Section 0 of the Plan (i) shall only be applicable to the maximum extent permitted by law; and (ii) shall not be construed as (a) releasing any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud (*provided* that actual fraud shall not exempt from the scope of these third-party releases any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, or (b) releasing any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

### SECTION 10.7    EXCULPATION.

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out, in whole or in part, from the Petition Date through the Effective Date, of the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors, the DIP Facility, the Convertible Notes Agreements, the Miner Equipment Lender Agreements, the Mortgage Agreements, the General Contracts, any and all agreements relating to M&M Liens, and related agreements, instruments, or other documents, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Plan Settlements, the New Secured Convertible Notes Documents, the New Secured Notes Documents, the Contingent Payment Obligations Documents, the New Miner Equipment Lender Debt Documents, the Exit Facility Documents, the New Warrants Agreement, the Rights Offering, the Backstop Commitment Letter, the Initial DIP Loan Documents, the DIP Facility, the Terminated RSA, the RSA, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan (including, but not limited to, the New Common Interests), or the distribution of property under the Plan, or any other related agreement, except for

Claims or Causes of Action arising from an act or omission that is judicially determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects, such Exculpated Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities.  The Exculpated Parties have, and upon completion of the Plan, shall be deemed to have, participated in good faith and in compliance with all applicable laws with regard to the solicitation and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.  Notwithstanding anything to the contrary in the foregoing, the exculpations set forth in Section **Error! Reference source not found.** of the Plan (i) shall only be applicable to the maximum extent permitted by law; and (ii) shall not be construed as (a) exculpating any Exculpated Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud (*provided* that actual fraud shall not exempt from the scope of these exculpations any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, or (b) exculpating any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

## SECTION 5.17    <u>CANCELLATION OF LIENS</u>.

(a)     Except as otherwise specifically provided in the Plan, including sections **Error! Reference source not found.** and **Error! Reference source not found.** of the Plan, all notes, instruments, certificates evidencing debt of the Debtors and Existing Common Interests will be cancelled and obligations of the Debtors thereunder will be discharged and of no further force or effect, except for the purpose of allowing the applicable agents and trustees to receive distributions from the Debtors under the Plan and to make any further distributions to the applicable Holders on account of their Allowed Claims and Interests.

(b)     After the Effective Date and following (i) the distributions to Holders on account of Allowed Convertible Notes Secured Claims and Allowed Miner Equipment Lender Secured Claims and/or (ii) with regard to Allowed M&M Lien Secured Claims, satisfaction of the applicable M&M Lien Takeback Debt, the Debtors or the Reorganized Debtors, at their expense, may, in their sole discretion, take any action necessary to terminate, cancel, extinguish, and/or evidence the release of any and all mortgages, deeds of trust, Liens, pledges, and other security interests with respect to the Convertible Notes Secured Claims, Miner Equipment Lender Secured Claims, and M&M Lien Secured Claims, including, without limitation, the preparation and filing of any and all documents necessary to terminate, satisfy, or release any mortgages, deeds of trust, Liens, pledges, and other security interests held by the Holders of the M&M Lien Secured Claims, Miner Equipment Lender Secured Claims, the Notes Agent, and/or Convertible Noteholders, including, without limitation, UCC-3 termination statements.

**Relevant Definitions Related to Release and Exculpation Provisions**:

*"Exculpated Parties"* means each of the following in their capacity as such and, in each case, to the maximum extent permitted by law: (i) the Debtors; and (ii) Equity Committee and its members, each solely in their capacity as such.

*"Related Parties"* means with respect to a Person, that Person's current and former Affiliates, and such Person's and its current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, fiduciaries, trustees, advisory board members, financial advisors, partners, limited partners, general partners, attorneys, accountants, managed accounts or funds, management companies, fund advisors, investment bankers, consultants, representatives, and other professionals, and such Person's respective heirs, executors, estates, and nominees, each in their capacity as such, and any and all other Persons or Entities that may purport to assert any Cause of Action derivatively, by or through the foregoing entities.

*"Released Parties"* means, collectively: (i) the Debtors; (ii) the Reorganized Debtors; (iii) the Equity Committee and its members that are party to the RSA, solely in their capacities as such; (iv) the Backstop Parties; (v) the Settling Miner Equipment Lenders; (vi) Brown Corporation; (vii) Holliwood LLC; (viii) the Ad Hoc Noteholder Group; (ix) the Consenting Creditors; (x) the Exit Lenders; (xi) the Notes Agent, solely in its capacity as such; and (xii) with respect to each of the foregoing Persons in clauses (i) through (xi), all Related Parties. Notwithstanding the foregoing, any Person that opts out of the releases set forth in section 10.6(b) of the Plan shall not be deemed a Released Party thereunder.

*"Releasing Parties"* means collectively, and in each case solely in their capacity as such, (i) the Debtors; (ii) the Reorganized Debtors; (iii) with respect to each of the foregoing Persons in clauses (i) through (ii), all Related Parties; (iv) the Released Parties; (v) the Holders of all Claims or Interests that vote to accept the Plan; (vi) the Holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but that do not vote either to accept or to reject the Plan and do not opt out of granting the releases set forth in the Plan; (vii) the Holders of all Claims or Interests that vote, or are deemed, to reject the Plan or that are presumed to accept the Plan but do not opt out of granting the releases set forth in the Plan; and (viii) the Holders of all Claims and Interests and all Other Beneficial Owners that were given notice of the opportunity to opt out of granting the releases set forth in the Plan but did not opt out.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

**PLEASE READ THE ATTACHED VOTING INFORMATION
AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT**

---

**PLEASE COMPLETE ITEMS 1, 2, 3, AND 4.  IF THIS BALLOT HAS NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE VALID OR COUNTED AS HAVING BEEN CAST.**

---

**Item 1.        Principal Amount of Claims**.  The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the Holder (or authorized signatory of such a Holder) of an April Convertible Notes Secured Claim in the aggregate amount of unpaid principal set forth below.

$\$$_____

**Item 2.        Votes on the Plan**.  Please vote either to accept or to reject the Plan with respect to your Claims below.  Any Ballot not marked either to accept or reject the Plan, or marked both to accept and reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

---

**Prior to voting on the Plan, please note the following:**

**If you (i) vote to accept the Plan, (ii) do not vote either to accept or reject the Plan and do not check the box in Item 3 below, or (iii) vote to reject the Plan and do not check the box in Item 3 below, in each case you shall be deemed to have consented to the release provisions set forth in Section 10.6(b) of the Plan.**

**The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation provisions.**

---

The undersigned Holder of a Class 1 April Convertible Notes Secured Claim votes to (check <u>one</u> box):

☐ **Accept** the Plan          ☐ **Reject** the Plan.

<u>**Your vote on the Plan will be applied to each applicable Debtor in the same manner and in the same amount as indicated in Item 1 and Item 2 above.**</u>

**Item 3.        Optional Opt Out Release Election**.  Check the box below if you elect not to grant the releases contained in Section 10.6(b) of the Plan.  If you voted to reject the Plan in Item 2 above, or if you are abstaining from voting to accept or reject the Plan, check this box if you elect not to grant the releases contained in Section 10.6(b) of the Plan.  Election to withhold consent is at your option.  If you voted to accept the Plan in Item 2 above, you **may not** complete this Item 3, and if you complete this Item 3, your "opt out" election will be ineffective.  If you submit a rejecting Ballot, or if you abstain from submitting a Ballot, and in each case, you do not check the box below, you will be deemed to consent to the releases contained in Section 10.6(b) of the Plan

to the fullest extent permitted by applicable law.  The Holder of the Class 1 April Convertible Notes Secured Claims elects to:

☐ **OPT OUT** of the releases contained only in Section 10.6(b) of the Plan.

**Item 4.        Acknowledgements**.  By signing this Ballot, the Holder (or authorized signatory of such Holder) acknowledges review and receipt of the Plan, the Disclosure Statement, and the other applicable solicitation materials, and certifies that (i) it has the power and authority to vote to accept or reject the Plan, (ii) it was the Holder (or is entitled to vote on behalf of such Holder) of the April Convertible Notes Secured Claims described in Item 1 as of the Voting Record Date, and (iii) all authority conferred, or agreed to be conferred, pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned.

Name of Holder _____

Signature _____

If by Authorized Agent, Name and Title _____

Name of Institution _____

Street Address _____

City, State, Zip Code _____

Telephone Number _____

Date Completed _____

E-Mail Address _____

## VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT

1.      Ballots received after the Voting Deadline (if the Voting Deadline has not been extended) may not, at the Debtors' discretion, be counted.  **The Voting Agent will tabulate all properly completed Ballots received on or before the Voting Deadline.**

2.      Complete the Ballot by providing all the information requested, signing, dating, and returning the Ballot to the Voting Agent.  Any Ballot that is illegible, contains insufficient information to identify the Holder, or is unsigned[3] will not be counted.  Ballots may not be submitted to the Voting Agent by facsimile or electronic mail.  If neither the "**accept**" nor "**reject**" box is checked in Item 2, both boxes are checked in Item 2, or the Ballot is otherwise not properly completed, executed, or timely returned, then the Ballot shall not be counted in determining acceptance or rejection of the Plan.

3.      You must vote all your Claims within a single Class under the Plan either to accept or reject the Plan. Accordingly, if you return more than one Ballot voting different or inconsistent Claims within a single Class under the Plan, the Ballots are not voted in the same manner, and you do not correct this before the Voting Deadline, those Ballots will not be counted. An otherwise properly executed Ballot that attempts to partially accept and partially reject the Plan likewise will not be counted.

4.      The Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or an assertion or admission of Claims.

5.      The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

6.      If you cast more than one Ballot voting the same Claims prior to the Voting Deadline, the latest received, properly executed Ballot submitted to the Voting Agent will supersede any prior Ballot.

7.      If (i) the Debtors revoke or withdraw the Plan, or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

8.      There may be changes made to the Plan that do not cause material adverse effects on an accepting Class.  If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

9.      NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT, ANY

---

[3] E-Ballots submitted on the Online Portal will be deemed to contain a legal, valid signature.

SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTORS, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

10.    PLEASE RETURN YOUR BALLOT PROMPTLY.

11.    IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT BY CALLING (949) 404-4152 (TOLL-FREE) OR +1 (888) 765-7875(IF CALLING FROM OUTSIDE THE U.S.); WRITING CORE SCIENTIFIC, INC., BALLOT PROCESSING CENTER, C/O STRETTO, INC., 410 EXCHANGE, SUITE 100, IRVINE, CA 92602; OR BY SENDING AN ELECTRONIC MAIL MESSAGE TO CORESCIENTIFICINQUIRIES@STRETTO.COM WITH "CORE SCIENTIFIC" IN THE SUBJECT LINE.  PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.

12.    THE VOTING AGENT IS NOT AUTHORIZED TO AND WILL NOT PROVIDE LEGAL ADVICE.

**PLEASE SUBMIT YOUR BALLOT BY ONLY <u>ONE</u> OF THE FOLLOWING METHODS:** (i) Online submission of an E-Ballot through the Online Portal, (ii) paper copy submission, in the return envelope provided, (iii) paper copy submission by hand delivery or overnight mail, or (iv) paper copy submission by first class mail.

**IF YOU WISH TO COORDINATE HAND DELIVERY OF YOUR BALLOT, PLEASE NOTIFY THE VOTING AGENT VIA E-MAIL AT CORESCIENTIFICINQUIRIES@STRETTO.COM (WITH "CORE SCIENTIFIC BALLOT" IN THE SUBJECT LINE) AT LEAST 24 HOURS IN ADVANCE OF THE ANTICIPATED DELIVERY DATE.**

**ALL BALLOTS MUST BE PROPERLY EXECUTED, COMPLETED, AND DELIVERED ACCORDING TO THE VOTING INSTRUCTIONS SO THAT THE BALLOTS ARE ACTUALLY RECEIVED BY THE VOTING AGENT NO LATER THAN THE VOTING DEADLINE.**

<u>**Online Portal Voting Instructions**</u>

**To properly submit your Ballot electronically, you must electronically complete, sign, and return this customized electronic Ballot by utilizing the Online Portal platform on the Stretto website by visiting https://cases.stretto.com/CoreScientific/, clicking on the "Submit E-Ballot" link and following the instructions set forth on the website.  Your Ballot must be received by Stretto no later than December 13, 2023 at 5:00 p.m. (Prevailing Central Time), the Voting Deadline, unless such time is extended by the Debtors with the consent of the Requisite Consenting Creditors.  <u>HOLDERS ARE STRONGLY ENCOURAGED TO SUBMIT THEIR BALLOTS VIA THE ONLINE PORTAL PLATFORM.</u>  The Stretto "Online Portal" platform is the sole manner in which ballots will be accepted via electronic**

or online transmission.  Ballots submitted by facsimile, electronic mail, or other means of electronic transmission will not be counted.

**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized electronic Ballot:**

Unique E-Ballot ID#:  _____

Each E-Ballot ID# is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot.  Please complete and submit an E-Ballot for each E-Ballot ID# you receive, as applicable.  Ballots submitted by E-Ballot will be deemed to contain a legal, valid signature.

**Holders who cast a Ballot using Stretto's "Online Portal" platform should <u>NOT</u> also submit a paper Ballot.**

**THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS December 13, 2023 AT 5:00 P.M. (PREVAILING CENTRAL TIME).**

<u>**Paper Copy Ballot Submission**</u>

| STRETTO'S ADDRESS FOR RECEIPT OF PAPER BALLOTS (WHETHER BY HAND DELIVERY, OVERNIGHT MAIL, OR FIRST CLASS MAIL) |
|---|
| CORE SCIENTIFIC, INC. **BALLOT PROCESSING CENTER** C/O STRETTO, INC. 410 EXCHANGE, SUITE 100 IRVINE, CA 92602 |

If you are unable to use the Online Portal platform or need assistance in completing and submitting your Ballot, please contact Stretto (i) via e-mail at CoreScientificInquiries@stretto.com; (ii) via mail by writing Core Scientific, Inc., Ballot Processing Center, C/O Stretto, Inc., 410 Exchange, Suite 100, Irvine, CA 92602; or (iii) via telephone at (949) 404-4152 (Toll-Free) or +1 (888) 765-7875 (if calling from outside the U.S.).

**Exhibit 4**

**Form of Ballot for August Convertible Notes Secured Claims (Class 2)**

No person has been authorized to give any information or advice, or to make any representation, other than what is included in the Disclosure Statement and other materials accompanying this Ballot.[1]

PLEASE NOTE THAT, EVEN IF YOU INTEND TO VOTE TO REJECT THE PLAN, YOU MUST STILL READ, COMPLETE, AND EXECUTE THIS ENTIRE BALLOT.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | § § | Chapter 11 |
| CORE SCIENTIFIC, INC., *et al.*, | § § | Case No. 22-90341 (CML) |
| Debtors[2] | § § | (Jointly Administered) |
|  | § |  |

BALLOT FOR VOTING TO ACCEPT OR REJECT THE THIRD AMENDED JOINT
CHAPTER 11 PLAN OF CORE SCIENTIFIC, INC. AND ITS AFFILIATED DEBTORS

CLASS 2 (AUGUST CONVERTIBLE NOTES SECURED CLAIMS)

IN ORDER FOR YOUR VOTE TO BE COUNTED TOWARD CONFIRMATION OF THE PLAN, THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS ACTUALLY RECEIVED BY THE VOTING AGENT ON OR BEFORE DECEMBER 13, 2023 AT 5:00 P.M. (PREVAILING CENTRAL TIME) (THE "VOTING DEADLINE"), UNLESS EXTENDED BY THE DEBTORS WITH THE CONSENT OF THE REQUISITE CONSENTING CREDITORS.

Core Scientific, Inc. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**") are soliciting votes with respect to the *Third Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors*, filed on November 16, 2023 (Docket No. 1438) (as may be modified, amended, or supplemented, the "**Plan**"). The Plan is attached as **Exhibit A** to the *Disclosure Statement for Third Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors*, filed on

---

[1]  All capitalized terms used but not defined herein or in the enclosed voting instructions have the meanings ascribed to them in the Plan, attached as Exhibit A to the Disclosure Statement.

[2]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions VII, LLC (3198). The Debtors' corporate headquarters is 210 Barton Springs Road, Suite 300, Austin, Texas 78704. The Debtors' service address is 2407 S. Congress Ave, Suite E-101, Austin, Texas 78704.

November 16, 2023 (Docket No. 1439) (as may be modified, amended, or supplemented, the "**Disclosure Statement**").

Please use this Ballot to cast your vote to accept or reject the Plan if you are, as of November 9, 2023 (the "**Voting Record Date**"), a Holder of an August Convertible Notes Secured Claim.

The Disclosure Statement provides information to assist you in deciding whether to accept or reject the Plan.  If you do not have the Disclosure Statement, you may obtain a copy from Stretto, Inc. (the "**Voting Agent**" or "**Stretto**") at no charge by accessing the Debtors' restructuring website at https://cases.stretto.com/CoreScientific.

If you have any questions on how to properly complete this Ballot, please contact the Voting Agent (i) by e-mail at CoreScientificInquiries@stretto.com, (ii) by writing to Core Scientific, Inc., Ballot Processing Center, c/o Stretto, Inc., 410 Exchange, Suite 100, Irvine, CA 92602, or (iii) via telephone at (949) 404-4152 (Toll-Free) or +1 (888) 765-7875 (if calling from outside the U.S.).  Please be advised that the Voting Agent cannot provide legal advice.  You may wish to seek legal advice concerning the Plan and the classification and treatment of your Class 2 August Convertible Notes Secured Claim under the Plan.

---

**IMPORTANT NOTICE REGARDING TREATMENT FOR AUGUST CONVERTIBLE NOTES SECURED CLAIMS IN CLASS 2**

As described in more detail in the Disclosure Statement, if the Plan is confirmed and the Effective Date occurs, except to the extent that a Holder of an Allowed August Convertible Notes Secured Claim agrees to a less favorable treatment of such Claim, each such Holder shall receive, in full and final satisfaction, settlement, release, and discharge of such Claim, on the Effective Date, or as soon as reasonably practicable thereafter, (i) such Holder's Pro Rata Reduced Convertible Notes Share of (a) the New Secured Convertible Notes and (b) the Convertible Noteholders Equity Distribution, (ii) such Holder's Pro Rata Convertible Notes Equity Distribution of the Contingent Payment Obligations, and (iii) such Holder's Pro Rata Total Convertible Notes Share of (a) the ERO Shortfall Equity Distribution (if any), and (b) the Incremental Convertible Noteholders Equity Distribution (if any); *provided* that any Holder of an Allowed August Convertible Notes Secured Claims that is an Exit Lender shall have its distribution of New Common Interests pursuant to the Convertible Noteholders Equity Distribution in the preceding clause (i)(b) reduced on a dollar-for-dollar basis in the amount of its respective share of the Designated Amount on account of such Holder's respective share of first-lien delayed draw term loans under the Exit Credit Agreement (for the avoidance of doubt without redistribution of such amounts so reduced being allocated to other Holders of Allowed Convertible Notes Claims); *provided*, *further*, that notwithstanding the foregoing, the distribution of the Incremental Convertible Noteholders Equity Distribution (if any) shall not occur until entry of a Final Order(s) approving the Professional Fee Claims of the Equity Committee.

**PLEASE READ THE DISCLOSURE STATEMENT AND PLAN FOR MORE DETAILS.**

---

The Plan can be confirmed by the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") and thereby made binding on you if it is accepted by the Holders of (i) at least two-thirds in amount of the Allowed Claims or Interests voted in each Impaired Class, and (ii) if the Impaired Class is a Class of Claims, more than one-half in number of the Allowed Claims voted in each Impaired Class, and if the Plan otherwise satisfies the applicable requirements of section 1129(a) under the Bankruptcy Code.  If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (y) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan, and (z) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.  If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan.  To have your vote counted, you must complete, sign, and return this Ballot to the Voting Agent by the Voting Deadline.

Your receipt of this Ballot does not indicate that your Claim(s) has been or will be Allowed.  This Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance or disallowance of, or distribution on account of, Class 2 August Convertible Notes Secured Claims.  You must provide all of the information requested by this Ballot.  Failure to do so may result in the disqualification of your vote.

### NOTICE REGARDING CERTAIN RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS IN PLAN

**If you (i) vote to accept the Plan, (ii) are solicited to vote to accept or reject the Plan, but do not vote to either accept or reject the Plan, and do not opt out of granting the releases set forth in the Plan, (iii) vote, or are deemed, to reject the Plan or are presumed to accept the Plan but do not opt out of granting the releases set forth in the Plan, or (iv) were given notice of the opportunity to opt out of granting the releases contained in the Plan but do not opt out, you shall be deemed to have consented to the releases contained in Section 10.6(b) of the Plan.  The releases as presented in the Plan are provided below:**

**SECTION 10.5      INJUNCTION.**

**Except as otherwise expressly provided in the Plan or for distributions required to be paid or delivered pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold Claims or Interests that have been released pursuant to Section 10.6(a) or Section 10.6(b), shall be discharged pursuant to Section 10.3 of the Plan, or are subject to exculpation pursuant to Section 10.7, and all Subcontractors and all other parties in interest are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Released Parties, and/or the Exculpated Parties (to the extent of the exculpation provided pursuant to Section 10.7 with respect to the Exculpated Parties): (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (iii) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in**

connection with or with respect to any such Claims or Interests; (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless (x) such Entity has timely asserted such setoff right either in a Filed Proof of Claim, or in another document Filed with the Bankruptcy Court explicitly preserving such setoff or that otherwise indicates that such entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise or (y) such right to setoff arises under a postpetition agreement with the Debtors or an Executory Contract that has been assumed by the Debtors as of the Effective Date; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released, settled, and/or treated, entitled to a distribution, or cancelled pursuant to the Plan or otherwise Disallowed; provided that such persons who have held, hold, or may hold Claims against, or Interests in, a Debtor, a Reorganized Debtor, or an Estate shall not be precluded from exercising their rights and remedies, or obtaining the benefits, solely pursuant to and consistent with the terms of the Plan.

Subject in all respects to Section 11.1, no entity or person may commence or pursue a Claim or Cause of Action of any kind against any Released Party or Exculpated Party that arose or arises from, in whole or in part, the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors (which includes, for the avoidance of doubt, all claims and Causes of Action asserted or assertable in the Securities Class Action), the DIP Facility, the Convertible Notes Agreements, the Miner Equipment Lender Agreements, the Mortgage Agreements, the General Contracts, any and all agreements relating to M&M Liens, and any and all related agreements, instruments, and/or other documents, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Plan Settlements, the New Secured Convertible Notes Documents, the New Secured Notes Documents, the Contingent Payment Obligations Documents, the New Miner Equipment Lender Debt Documents, the Exit Facility Documents, the New Warrants Agreement, the Rights Offering, the Backstop Commitment Letter, the Initial DIP Loan Documents, the DIP Facility, the Terminated RSA, the RSA, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan (including, but not limited to, the New Common Interests), or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a claim of willful misconduct, fraud or gross negligence against a Released Party or Exculpated Party and (ii) specifically authorizing such Entity or Person to bring such Claim or Cause of Action against any such

Released Party or Exculpated Party. The Bankruptcy Court shall have sole and exclusive jurisdiction to determine whether a Claim or Cause of Action is colorable and, only to the extent legally permissible and as provided for in Section 11.1, shall have jurisdiction to adjudicate the underlying colorable Claim or Cause of Action.

**SECTION 10.6(a)        RELEASES BY THE DEBTORS.**

Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the obligations of the Debtors under the Plan and the contributions of the Released Parties to facilitate and implement the Plan, except as otherwise provided in the Plan or in the Confirmation Order, on and after the Effective Date, the Released Parties are deemed conclusively, absolutely, unconditionally and irrevocably, released and discharged by the Debtors, the Reorganized Debtors, and the Estates from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Reorganized Debtors, the Estates, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors (which includes, for the avoidance of doubt, all claims and Causes of Action asserted or assertable in the Securities Class Action), the DIP Facility, the Convertible Notes Agreements, the Miner Equipment Lender Agreements, the Mortgage Agreements, the General Contracts, any and all agreements relating to M&M Liens, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Plan Settlements, the New Secured Convertible Notes Documents, the New Secured Notes Documents, the Contingent Payment Obligations Documents, the New Miner Equipment Lender Debt Documents, the Exit Facility Documents, the New Warrants Agreement, the Rights Offering, the Backstop Commitment Letter, the Initial DIP Loan Documents, the DIP Facility, the Terminated RSA, the RSA, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan (including, but not limited to, the New Common Interests), or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth in Section 10.6(a) of the Plan (i) shall only be applicable to the maximum extent permitted by law; (ii) shall not be construed as (a) releasing any Released Party from Claims or Causes of Action arising from an act or

omission that is judicially determined by a Final Order to have constituted actual fraud (provided that actual fraud shall not exempt from the scope of these Debtor releases any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, (b) releasing any Released Party from Claims or Causes of Action held by the Debtors arising from an act or omission that is determined by a Final Order or by a federal government agency to have constituted a violation of any federal securities laws or (c) releasing any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

**SECTION 10.6(b)      RELEASES BY HOLDERS OF CLAIMS AND INTERESTS.**

Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, except as otherwise provided in the Plan or in the Confirmation Order, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, each Releasing Party, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released, and discharged the Debtors, the Reorganized Debtors, and the Released Parties from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims or Causes of Action asserted or that may be asserted on behalf of the Debtors or their Estates, that such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, including any Claims or Causes of Action based on or relating to, or in any manner arising from, in whole or in part, the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors (which includes, for the avoidance of doubt, all claims and Causes of Action asserted or assertable in the Securities Class Action), the DIP Facility, the Convertible Notes Agreements, the Miner Equipment Lender Agreements, the Mortgage Agreements, the General Contracts, any and all agreements relating to M&M Liens, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Plan Settlements, the New Secured Convertible Notes Documents, the New Secured Notes Documents, the Contingent Payment Obligations Documents, the New Miner Equipment Lender Debt Documents, the Exit Facility Documents, the New Warrants Agreement, the Rights Offering, the Backstop Commitment Letter, the Initial DIP Loan Documents, the DIP

Facility, the Terminated RSA, the RSA, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan (including, but not limited to, the New Common Interests), or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth in Section 10.6(b) of the Plan (i) shall only be applicable to the maximum extent permitted by law; and (ii) shall not be construed as (a) releasing any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud (provided that actual fraud shall not exempt from the scope of these third-party releases any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, or (b) releasing any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

**SECTION 10.7** **EXCULPATION.**

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out, in whole or in part, from the Petition Date through the Effective Date, of the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors, the DIP Facility, the Convertible Notes Agreements, the Miner Equipment Lender Agreements, the Mortgage Agreements, the General Contracts, any and all agreements relating to M&M Liens, and related agreements, instruments, or other documents, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Plan Settlements, the New Secured Convertible Notes Documents, the New Secured Notes Documents, the Contingent Payment Obligations Documents, the New Miner Equipment Lender Debt Documents, the Exit Facility Documents, the New Warrants Agreement, the Rights Offering, the Backstop Commitment Agreement, the Initial DIP Loan Documents, the DIP Facility, the Terminated RSA, the RSA, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan (including, but not limited to, the New Common Interests), or the distribution of property under the Plan, or any other related agreement, except for Claims or Causes of Action arising from an act or omission that is judicially determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but

in all respects, such Exculpated Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities. The Exculpated Parties have, and upon completion of the Plan, shall be deemed to have, participated in good faith and in compliance with all applicable laws with regard to the solicitation and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan. Notwithstanding anything to the contrary in the foregoing, the exculpations set forth in Section **Error! Reference source not found.** of the Plan (i) shall only be applicable to the maximum extent permitted by law; and (ii) shall not be construed as (a) exculpating any Exculpated Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud (*provided* that actual fraud shall not exempt from the scope of these exculpations any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, or (b) exculpating any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

**SECTION 5.17      CANCELLATION OF LIENS.**

(a)      Except as otherwise specifically provided in the Plan, including sections **Error! Reference source not found.** and **Error! Reference source not found.** of the Plan, all notes, instruments, certificates evidencing debt of the Debtors and Existing Common Interests will be cancelled and obligations of the Debtors thereunder will be discharged and of no further force or effect, except for the purpose of allowing the applicable agents and trustees to receive distributions from the Debtors under the Plan and to make any further distributions to the applicable Holders on account of their Allowed Claims and Interests.

(b)      After the Effective Date and following (i) the distributions to Holders on account of Allowed Convertible Notes Secured Claims and Allowed Miner Equipment Lender Secured Claims and/or (ii) with regard to Allowed M&M Lien Secured Claims, satisfaction of the applicable M&M Lien Takeback Debt, the Debtors or the Reorganized Debtors, at their expense, may, in their sole discretion, take any action necessary to terminate, cancel, extinguish, and/or evidence the release of any and all mortgages, deeds of trust, Liens, pledges, and other security interests with respect to the Convertible Notes Secured Claims, Miner Equipment Lender Secured Claims, and M&M Lien Secured Claims, including, without limitation, the preparation and filing of any and all documents necessary to terminate, satisfy, or release any mortgages, deeds of trust, Liens, pledges, and other security interests held by the Holders of the M&M Lien Secured Claims, Miner Equipment Lender Secured Claims, the Notes Agent, and/or Convertible Noteholders, including, without limitation, UCC-3 termination statements.

**Relevant Definitions Related to Release and Exculpation Provisions**:

"*Exculpated Parties*" means each of the following in their capacity as such and, in each case, to the maximum extent permitted by law: (i) the Debtors; and (ii) Equity Committee and its members, each solely in their capacity as such.

"*Related Parties*" means with respect to a Person, that Person's current and former Affiliates, and such Person's and its current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, fiduciaries, trustees, advisory board members, financial advisors, partners, limited partners, general partners, attorneys, accountants, managed accounts or funds, management companies, fund advisors, investment bankers, consultants, representatives, and other professionals, and such Person's respective heirs, executors, estates, and nominees, each in their capacity as such, and any and all other Persons or Entities that may purport to assert any Cause of Action derivatively, by or through the foregoing entities.

"*Released Parties*" means, collectively: (i) the Debtors; (ii) the Reorganized Debtors; (iii) the Equity Committee and its members that are party to the RSA, solely in their capacities as such; (iv) the Backstop Parties; (v) the Settling Miner Equipment Lenders; (vi) Brown Corporation; (vii) Holliwood LLC; (viii) the Ad Hoc Noteholder Group; (ix) the Consenting Creditors; (x) the Exit Lenders; (xi) the Notes Agent, solely in its capacity as such; and (xii) with respect to each of the foregoing Persons in clauses (i) through (xi), all Related Parties. Notwithstanding the foregoing, any Person that opts out of the releases set forth in section 10.6(b) of the Plan shall not be deemed a Released Party thereunder.

"*Releasing Parties*" means collectively, and in each case solely in their capacity as such, (i) the Debtors; (ii) the Reorganized Debtors; (iii) with respect to each of the foregoing Persons in clauses (i) through (ii), all Related Parties; (iv) the Released Parties; (v) the Holders of all Claims or Interests that vote to accept the Plan; (vi) the Holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but that do not vote either to accept or to reject the Plan and do not opt out of granting the releases set forth in the Plan; (vii) the Holders of all Claims or Interests that vote, or are deemed, to reject the Plan or that are presumed to accept the Plan but do not opt out of granting the releases set forth in the Plan; and (viii) the Holders of all Claims and Interests and all Other Beneficial Owners that were given notice of the opportunity to opt out of granting the releases set forth in the Plan but did not opt out.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

**PLEASE READ THE ATTACHED VOTING INFORMATION
AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT**

---

**PLEASE COMPLETE ITEMS 1, 2, 3, AND 4.  IF THIS BALLOT HAS NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE VALID OR COUNTED AS HAVING BEEN CAST.**

---

**Item 1.        Principal Amount of Claims**.  The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the Holder (or authorized signatory of such a Holder) of an August Convertible Notes Secured Claim in the aggregate amount of unpaid principal set forth below.

$\$\underline{\hspace{3cm}}$

**Item 2.        Votes on the Plan**.  Please vote either to accept or to reject the Plan with respect to your Claims below.  Any Ballot not marked either to accept or reject the Plan, or marked both to accept and reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

---

**Prior to voting on the Plan, please note the following:**

**If you (i) vote to accept the Plan, (ii) do not vote either to accept or reject the Plan and do not check the box in Item 3 below, or (iii) vote to reject the Plan and do not check the box in Item 3 below, in each case you shall be deemed to have consented to the release provisions set forth in Section 10.6(b) of the Plan.**

**The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation provisions.**

---

The undersigned Holder of a Class 2 August Convertible Notes Secured Claim votes to (check <u>one</u> box):

☐ **Accept** the Plan          ☐ **Reject** the Plan.

<u>**Your vote on the Plan will be applied to each applicable Debtor in the same manner and in the same amount as indicated in Item 1 and Item 2 above.**</u>

**Item 3.        Optional Opt Out Release Election**.  Check the box below if you elect not to grant the releases contained in section 10.6(b) of the Plan.  If you voted to reject the Plan in Item 2 above, or if you are abstaining from voting to accept or reject the Plan, check this box if you elect not to grant the releases contained in Section 10.6(b) of the Plan.  Election to withhold consent is at your option.  If you voted to accept the Plan in Item 2 above, you **may not** complete this Item 3, and if you complete this Item 3, your "opt out" election will be ineffective.  If you submit a rejecting Ballot, or if you abstain from submitting a Ballot, and in each case, you do not check the box below, you will be deemed to consent to the releases contained in Section 10.6(b) of the Plan

to the fullest extent permitted by applicable law. The Holder of the Class 2 August Convertible Notes Secured Claims elects to:

☐ **OPT OUT** of the releases contained only in Section 10.6(b) of the Plan.

**Item 4.** **Acknowledgements**. By signing this Ballot, the Holder (or authorized signatory of such Holder) acknowledges review and receipt of the Plan, the Disclosure Statement, and the other applicable solicitation materials, and certifies that (i) it has the power and authority to vote to accept or reject the Plan, (ii) it was the Holder (or is entitled to vote on behalf of such Holder) of the August Convertible Notes Secured Claims described in Item 1 as of the Voting Record Date, and (iii) all authority conferred, or agreed to be conferred, pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned.

Name of Holder _____

Signature _____

If by Authorized Agent, Name and Title _____

Name of Institution _____

Street Address _____

City, State, Zip Code _____

Telephone Number _____

Date Completed _____

E-Mail Address _____

**VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT**

1.     Ballots received after the Voting Deadline (if the Voting Deadline has not been extended) may not, at the Debtors' discretion, be counted.  **The Voting Agent will tabulate all properly completed Ballots received on or before the Voting Deadline.**

2.     Complete the Ballot by providing all the information requested, signing, dating, and returning the Ballot to the Voting Agent.  Any Ballot that is illegible, contains insufficient information to identify the Holder, or is unsigned[3] will not be counted.  Ballots may not be submitted to the Voting Agent by facsimile or electronic mail.  If neither the "**accept**" nor "**reject**" box is checked in Item 2, both boxes are checked in Item 2, or the Ballot is otherwise not properly completed, executed, or timely returned, then the Ballot shall not be counted in determining acceptance or rejection of the Plan.

3.     You must vote all your Claims within a single Class under the Plan either to accept or reject the Plan. Accordingly, if you return more than one Ballot voting different or inconsistent Claims within a single Class under the Plan, the Ballots are not voted in the same manner, and you do not correct this before the Voting Deadline, those Ballots will not be counted. An otherwise properly executed Ballot that attempts to partially accept and partially reject the Plan likewise will not be counted.

4.     The Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or an assertion or admission of Claims.

5.     The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

6.     If you cast more than one Ballot voting the same Claims prior to the Voting Deadline, the latest received, properly executed Ballot submitted to the Voting Agent will supersede any prior Ballot.

7.     If (i) the Debtors revoke or withdraw the Plan, or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

8.     There may be changes made to the Plan that do not cause material adverse effects on an accepting Class.  If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

9.     NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT, ANY

---

[3] E-Ballots submitted on the Online Portal will be deemed to contain a legal, valid signature.

SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTORS, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

10.    PLEASE RETURN YOUR BALLOT PROMPTLY.

11.    IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT BY CALLING (949) 404-4152 (TOLL-FREE) OR +1 (888) 765-7875(IF CALLING FROM OUTSIDE THE U.S.); WRITING CORE SCIENTIFIC, INC., BALLOT PROCESSING CENTER, C/O STRETTO, INC., 410 EXCHANGE, SUITE 100, IRVINE, CA 92602; OR BY SENDING AN ELECTRONIC MAIL MESSAGE TO CORESCIENTIFICINQUIRIES@STRETTO.COM WITH "CORE SCIENTIFIC" IN THE SUBJECT LINE.    PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.

12.    THE VOTING AGENT IS NOT AUTHORIZED TO AND WILL NOT PROVIDE LEGAL ADVICE.

**PLEASE SUBMIT YOUR BALLOT BY ONLY <u>ONE</u> OF THE FOLLOWING METHODS:** (i) Online submission of an E-Ballot through the Online Portal, (ii) paper copy submission, in the return envelope provided, (iii) paper copy submission by hand delivery or overnight mail, or (iv) paper copy submission by first class mail.

**IF YOU WISH TO COORDINATE HAND DELIVERY OF YOUR BALLOT, PLEASE NOTIFY THE VOTING AGENT VIA E-MAIL AT CORESCIENTIFICINQUIRIES@STRETTO.COM (WITH "CORE SCIENTIFIC BALLOT" IN THE SUBJECT LINE) AT LEAST 24 HOURS IN ADVANCE OF THE ANTICIPATED DELIVERY DATE.**

**ALL BALLOTS MUST BE PROPERLY EXECUTED, COMPLETED, AND DELIVERED ACCORDING TO THE VOTING INSTRUCTIONS SO THAT THE BALLOTS ARE ACTUALLY RECEIVED BY THE VOTING AGENT NO LATER THAN THE VOTING DEADLINE.**

<u>**Online Portal Voting Instructions**</u>

**To properly submit your Ballot electronically, you must electronically complete, sign, and return this customized electronic Ballot by utilizing the Online Portal platform on the Stretto website by visiting https://cases.stretto.com/CoreScientific/, clicking on the "Submit E-Ballot" link and following the instructions set forth on the website.  Your Ballot must be received by Stretto no later than December 13, 2023 at 5:00 p.m. (Prevailing Central Time), the Voting Deadline, unless such time is extended by the Debtors with the consent of the Requisite Consenting Creditors.  <u>HOLDERS ARE STRONGLY ENCOURAGED TO SUBMIT THEIR BALLOTS VIA THE ONLINE PORTAL PLATFORM</u>.  The Stretto "Online Portal" platform is the sole manner in which ballots will be accepted via electronic**

or online transmission.  Ballots submitted by facsimile, electronic mail, or other means of electronic transmission will not be counted.

**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized electronic Ballot:**

> **Unique E-Ballot ID#:**  _____

Each E-Ballot ID# is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot.  Please complete and submit an E-Ballot for each E-Ballot ID# you receive, as applicable.  Ballots submitted by E-Ballot will be deemed to contain a legal, valid signature.

**Holders who cast a Ballot using Stretto's "Online Portal" platform should <u>NOT</u> also submit a paper Ballot.**

**THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS DECEMBER 13, 2023 AT 5:00 P.M. (PREVAILING CENTRAL TIME).**

<u>**Paper Copy Ballot Submission**</u>

| **STRETTO'S ADDRESS FOR RECEIPT OF PAPER BALLOTS (WHETHER BY HAND DELIVERY, OVERNIGHT MAIL, OR FIRST CLASS MAIL)** |
| :---: |
| **CORE SCIENTIFIC, INC.**<br>**BALLOT PROCESSING CENTER**<br>**C/O STRETTO, INC.**<br>**410 EXCHANGE, SUITE 100**<br>**IRVINE, CA 92602** |

If you are unable to use the Online Portal platform or need assistance in completing and submitting your Ballot, please contact Stretto (i) via e-mail at CoreScientificInquiries@stretto.com; (ii) via mail by writing Core Scientific, Inc., Ballot Processing Center, C/O Stretto, Inc., 410 Exchange, Suite 100, Irvine, CA 92602; or (iii) via telephone at (949) 404-4152 (Toll-Free) or +1 (888) 765-7875 (if calling from outside the U.S.).

**Exhibit 5**

**Form of Ballot for Miner Equipment Lender Secured Claims (Class 3)**

No person has been authorized to give any information or advice, or to make any representation, other than what is included in the Disclosure Statement and other materials accompanying this Ballot.[1]

PLEASE NOTE THAT, EVEN IF YOU INTEND TO VOTE TO REJECT THE PLAN, YOU MUST STILL READ, COMPLETE, AND EXECUTE THIS ENTIRE BALLOT.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | § | Chapter 11 |
|  | § |  |
| **CORE SCIENTIFIC, INC.,** *et al.*, | § | Case No. 22-90341 (CML) |
|  | § |  |
| Debtors[2] | § | (Jointly Administered) |
|  | § |  |

## BALLOT FOR VOTING TO ACCEPT OR REJECT THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF CORE SCIENTIFIC, INC. AND ITS AFFILIATED DEBTORS

### CLASS 3 (MINER EQUIPMENT LENDER SECURED CLAIMS)

> IN ORDER FOR YOUR VOTE TO BE COUNTED TOWARD CONFIRMATION OF THE PLAN, THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS **ACTUALLY RECEIVED** BY THE VOTING AGENT ON OR BEFORE **DECEMBER 13, 2023 AT 5:00 P.M. (PREVAILING CENTRAL TIME)] (THE "VOTING DEADLINE")**, UNLESS EXTENDED BY THE DEBTORS WITH THE CONSENT OF THE REQUISITE CONSENTING CREDITORS.

        Core Scientific, Inc. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**") are soliciting votes with respect to the *Third Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors*, filed on November 16, 2023 (Docket No. 1438) (as may be modified, amended, or supplemented, the "**Plan**"). The Plan is attached as **Exhibit A** to the *Disclosure Statement for Third Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors*, filed on

---

[1]   All capitalized terms used but not defined herein or in the enclosed voting instructions have the meanings ascribed to them in the Plan, attached as Exhibit A to the Disclosure Statement.

[2]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions VII, LLC (3198). The Debtors' corporate headquarters is 210 Barton Springs Road, Suite 300, Austin, Texas 78704. The Debtors' service address is 2407 S. Congress Ave, Suite E-101, Austin, Texas 78704.

November 16, 2023 (Docket No. 1439) (as may be modified, amended, or supplemented, the "**Disclosure Statement**").

Please use this Ballot to cast your vote to accept or reject the Plan if you are, as of November 9, 2023 (the "**Voting Record Date**"), a Holder of a Miner Equipment Lender Secured Claim.

The Disclosure Statement provides information to assist you in deciding whether to accept or reject the Plan. If you do not have the Disclosure Statement, you may obtain a copy from Stretto, Inc. (the "**Voting Agent**" or "**Stretto**") at no charge by accessing the Debtors' restructuring website at https://cases.stretto.com/CoreScientific.

If you have any questions on how to properly complete this Ballot, please contact the Voting Agent (i) by e-mail at CoreScientificInquiries@stretto.com, (ii) by writing to Core Scientific, Inc., Ballot Processing Center, c/o Stretto, Inc., 410 Exchange, Suite 100, Irvine, CA 92602, or (iii) via telephone at (949) 404-4152 (Toll-Free) or +1 (888) 765-7875 (if calling from outside the U.S.). Please be advised that the Voting Agent cannot provide legal advice. You may wish to seek legal advice concerning the Plan and the classification and treatment of your Class 3 Miner Equipment Lender Secured Claim under the Plan.

**IMPORTANT NOTICE REGARDING TREATMENT FOR MINER EQUIPMENT LENDER CLAIMS IN CLASS 3**

As described in more detail in the Disclosure Statement, if the Plan is confirmed and the Effective Date occurs, except to the extent that a Holder of an Allowed Miner Equipment Lender Secured Claim (i) agrees to a less favorable treatment of such Claim or (ii) timely elects the Miner Equipment Lender Treatment Election 1 or Miner Equipment Lender Treatment Election 2 (each as set forth below) on or before the Voting Deadline, each such Holder shall receive, in full and final satisfaction, settlement, release, and discharge of such Claim, on the Effective Date, or as soon as reasonably practicable thereafter, such Holder's applicable Miner Equipment Lender Takeback Debt (the "**Default Miner Equipment Lender Treatment**").

Each Holder of an Allowed Miner Equipment Lender Secured Claim may elect on its Ballot to receive on the Effective Date, or as soon as reasonably practicable thereafter, in lieu of the Default Miner Equipment Lender Treatment, in each case in full and final satisfaction, settlement, release, and discharge of such Holder's Allowed Miner Equipment Lender Secured Claim, New Common Interests with a value, based on Plan Value, equal to one hundred percent (100%) of such Holder's Allowed Miner Equipment Lender Secured Claim Amount ("**Miner Equipment Lender Treatment Election 1**").

Each Holder of an Allowed Miner Equipment Lender Secured Claim that is a Settling Miner Equipment Lender may elect on its Ballot to receive on the Effective Date, or as soon as reasonably practicable thereafter, in lieu of the Default Miner Equipment Lender Treatment, in each case in full and final satisfaction, settlement, release, and discharge of such Holder's Allowed Miner Equipment Lender Claim, such Holder's applicable Miner Equipment Lender Takeback Debt (Election 2) ("**Miner Equipment Lender Treatment Election 2**"); *provided*, that any Holder electing Miner Equipment Lender Treatment Election 2 shall waive its recovery on account of its Allowed Miner Equipment Lender Deficiency Claim.

For the avoidance of doubt, the Allowed Miner Equipment Lender Deficiency Claim of each Holder of a Miner Equipment Lender Secured Claim shall be treated as a General Unsecured Claim in accordance with the terms and provisions set forth in section **Error! Reference source not found.** of the Plan; *provided*, that any Holder electing Miner Equipment Lender Treatment Election 2 shall waive its recovery on account of its Allowed Miner Equipment Lender Deficiency Claim.

<u>*Note to Holders of Class 3 Claims*</u>:

If you have received this Ballot, then you are also a Holder of a Class 8 General Unsecured Claim that has received a Class 8 Ballot, and the elections made under this Class 3 Ballot may affect the recoveries you receive on account of your Class 8 General Unsecured Claim.

- If you do not make an election in Item 4 or elect Default Miner Equipment Lender Treatment on this Class 3 Ballot, you shall receive the Default Miner Equipment Lender Treatment on account of your Allowed Miner Equipment Lender Secured Claim, and

your Allowed Miner Equipment Lender Deficiency Claim will be treated as a Class 8 General Unsecured Claim.

- If you elect Miner Equipment Lender Treatment Election 1 on this Class 3 Ballot, you shall receive the Miner Equipment Lender Treatment Election 1 on account of your Allowed Miner Equipment Lender Secured Claim, and your Allowed Miner Equipment Lender Deficiency Claim will be treated as a Class 8 General Unsecured Claim.

- If you elect Miner Equipment Lender Treatment Election 2 on this Class 3 Ballot, you shall receive the Miner Equipment Lender Treatment Election 2 on account of your Allowed Miner Equipment Lender Secured Claim, and you shall waive any and all recovery on account of your Allowed Miner Equipment Lender Deficiency Claim and shall not be entitled to vote any portion of your Allowed Miner Equipment Lender Deficiency Claim in Class 8, and any Class 8 Ballot submitted by such Holder shall be discarded; *provided*, that if you elect Miner Equipment Lender Treatment Election 2 on this Class 3 Ballot and are not, or do not become, a Settling Miner Equipment Lender, then your election shall not be considered and you shall receive the Default Miner Equipment Lender Treatment.

**PLEASE READ THE DISCLOSURE STATEMENT AND PLAN FOR MORE DETAILS.**

The Plan can be confirmed by the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") and thereby made binding on you if it is accepted by the Holders of (i) at least two-thirds in amount of the Allowed Claims or Interests voted in each Impaired Class, and (ii) if the Impaired Class is a Class of Claims, more than one-half in number of the Allowed Claims voted in each Impaired Class, and if the Plan otherwise satisfies the applicable requirements of section 1129(a) under the Bankruptcy Code. If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (y) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan, and (z) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code. If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan. To have your vote counted, you must complete, sign, and return this Ballot to the Voting Agent by the Voting Deadline.

Your receipt of this Ballot does not indicate that your Claim(s) has been or will be Allowed. This Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance or disallowance of, or distribution on account of, a Class 3 Miner Equipment Lender Secured Claim. You must provide all of the information requested by this Ballot. Failure to do so may result in the disqualification of your vote.

**NOTICE REGARDING CERTAIN RELEASE,
EXCULPATION, AND INJUNCTION PROVISIONS IN PLAN**

**If you (i) vote to accept the Plan, (ii) are solicited to vote to accept or reject the Plan, but do not vote to either accept or reject the Plan, and do not opt out of granting the releases set forth in the Plan, (iii) vote, or are deemed, to reject the Plan or are presumed to accept the Plan but do not opt out of granting the releases set forth in the Plan, or (iv) were**

given notice of the opportunity to opt out of granting the releases contained in the Plan but do not opt out, you shall be deemed to have consented to the releases contained in Section 10.6(b) of the Plan.  The releases as presented in the Plan are provided below:

**SECTION 10.5**          **INJUNCTION.**

Except as otherwise expressly provided in the Plan or for distributions required to be paid or delivered pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold Claims or Interests that have been released pursuant to Section 0 or Section 0, shall be discharged pursuant to Section Error! Reference source not found. of the Plan, or are subject to exculpation pursuant to Section Error! Reference source not found., and all Subcontractors and all other parties in interest are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Released Parties, and/or the Exculpated Parties (to the extent of the exculpation provided pursuant to Section Error! Reference source not found. with respect to the Exculpated Parties): (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (iii) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless (x) such Entity has timely asserted such setoff right either in a Filed Proof of Claim, or in another document Filed with the Bankruptcy Court explicitly preserving such setoff or that otherwise indicates that such entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise or (y) such right to setoff arises under a postpetition agreement with the Debtors or an Executory Contract that has been assumed by the Debtors as of the Effective Date; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released, settled, and/or treated, entitled to a distribution, or cancelled pursuant to the Plan or otherwise Disallowed; *provided* that such persons who have held, hold, or may hold Claims against, or Interests in, a Debtor, a Reorganized Debtor, or an Estate shall not be precluded from exercising their rights and remedies, or obtaining the benefits, solely pursuant to and consistent with the terms of the Plan.

Subject in all respects to Section Error! Reference source not found., no entity or person may commence or pursue a Claim or Cause of Action of any kind against any Released Party or Exculpated Party that arose or arises from, in whole or in part, the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors (which includes, for the avoidance of doubt, all claims and Causes of Action asserted or assertable in the Securities Class Action), the DIP Facility, the Convertible Notes Agreements, the Miner Equipment Lender Agreements, the Mortgage

Agreements, the General Contracts, any and all agreements relating to M&M Liens, and any and all related agreements, instruments, and/or other documents, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Plan Settlements, the New Secured Convertible Notes Documents, the New Secured Notes Documents, the Contingent Payment Obligations Documents, the New Miner Equipment Lender Debt Documents, the Exit Facility Documents, the New Warrants Agreement, the Rights Offering, the Backstop Commitment Letter, the Initial DIP Loan Documents, the DIP Facility, the Terminated RSA, the RSA, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan (including, but not limited to, the New Common Interests), or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a claim of willful misconduct, fraud or gross negligence against a Released Party or Exculpated Party and (ii) specifically authorizing such Entity or Person to bring such Claim or Cause of Action against any such Released Party or Exculpated Party.  The Bankruptcy Court shall have sole and exclusive jurisdiction to determine whether a Claim or Cause of Action is colorable and, only to the extent legally permissible and as provided for in Section Error! Reference source not found., shall have jurisdiction to adjudicate the underlying colorable Claim or Cause of Action.

**SECTION 10.6(a)      RELEASES BY THE DEBTORS.**

Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the obligations of the Debtors under the Plan and the contributions of the Released Parties to facilitate and implement the Plan, except as otherwise provided in the Plan or in the Confirmation Order, on and after the Effective Date, the Released Parties are deemed conclusively, absolutely, unconditionally and irrevocably, released and discharged by the Debtors, the Reorganized Debtors, and the Estates from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Reorganized Debtors, the Estates, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors (which includes, for the avoidance of doubt, all claims and Causes

of Action asserted or assertable in the Securities Class Action), the DIP Facility, the Convertible Notes Agreements, the Miner Equipment Lender Agreements, the Mortgage Agreements, the General Contracts, any and all agreements relating to M&M Liens, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Plan Settlements, the New Secured Convertible Notes Documents, the New Secured Notes Documents, the Contingent Payment Obligations Documents, the New Miner Equipment Lender Debt Documents, the Exit Facility Documents, the New Warrants Agreement, the Rights Offering, the Backstop Commitment Letter, the Initial DIP Loan Documents, the DIP Facility, the Terminated RSA, the RSA, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan (including, but not limited to, the New Common Interests), or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth in Section 0 of the Plan (i) shall only be applicable to the maximum extent permitted by law; (ii) shall not be construed as (a) releasing any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud (*provided* that actual fraud shall not exempt from the scope of these Debtor releases any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, (b) releasing any Released Party from Claims or Causes of Action held by the Debtors arising from an act or omission that is determined by a Final Order or by a federal government agency to have constituted a violation of any federal securities laws or (c) releasing any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

**SECTION 10.6(b)   RELEASES BY HOLDERS OF CLAIMS AND INTERESTS.**

Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, except as otherwise provided in the Plan or in the Confirmation Order, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, each Releasing Party, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released, and discharged the Debtors, the Reorganized Debtors, and the Released Parties from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims or Causes of Action asserted or that may be asserted on behalf of the Debtors or their Estates, that such Entity would have been legally entitled to assert in their

own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, including any Claims or Causes of Action based on or relating to, or in any manner arising from, in whole or in part, the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors (which includes, for the avoidance of doubt, all claims and Causes of Action asserted or assertable in the Securities Class Action), the DIP Facility, the Convertible Notes Agreements, the Miner Equipment Lender Agreements, the Mortgage Agreements, the General Contracts, any and all agreements relating to M&M Liens, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Plan Settlements, the New Secured Convertible Notes Documents, the New Secured Notes Documents, the Contingent Payment Obligations Documents, the New Miner Equipment Lender Debt Documents, the Exit Facility Documents, the New Warrants Agreement, the Rights Offering, the Backstop Commitment Letter, the Initial DIP Loan Documents, the DIP Facility, the Terminated RSA, the RSA, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan (including, but not limited to, the New Common Interests), or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth in Section 0 of the Plan (i) shall only be applicable to the maximum extent permitted by law; and (ii) shall not be construed as (a) releasing any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud (*provided* that actual fraud shall not exempt from the scope of these third-party releases any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, or (b) releasing any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

## SECTION 10.7     EXCULPATION.

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out, in whole or in part, from the Petition Date through the Effective

Date, of the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors, the DIP Facility, the Convertible Notes Agreements, the Miner Equipment Lender Agreements, the Mortgage Agreements, the General Contracts, any and all agreements relating to M&M Liens, and related agreements, instruments, or other documents, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Plan Settlements, the New Secured Convertible Notes Documents, the New Secured Notes Documents, the Contingent Payment Obligations Documents, the New Miner Equipment Lender Debt Documents, the Exit Facility Documents, the New Warrants Agreement, the Rights Offering, the Backstop Commitment Letter, the Initial DIP Loan Documents, the DIP Facility, the Terminated RSA, the RSA, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan (including, but not limited to, the New Common Interests), or the distribution of property under the Plan, or any other related agreement, except for Claims or Causes of Action arising from an act or omission that is judicially determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects, such Exculpated Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities.  The Exculpated Parties have, and upon completion of the Plan, shall be deemed to have, participated in good faith and in compliance with all applicable laws with regard to the solicitation and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.  Notwithstanding anything to the contrary in the foregoing, the exculpations set forth in Section **Error! Reference source not found.** of the Plan (i) shall only be applicable to the maximum extent permitted by law; and (ii) shall not be construed as (a) exculpating any Exculpated Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud (*provided* that actual fraud shall not exempt from the scope of these exculpations any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, or (b) exculpating any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

## SECTION 5.17    <u>CANCELLATION OF LIENS</u>.

(a)    Except as otherwise specifically provided in the Plan, including sections **Error! Reference source not found.** and **Error! Reference source not found.** of the Plan, all notes,

instruments, certificates evidencing debt of the Debtors and Existing Common Interests will be cancelled and obligations of the Debtors thereunder will be discharged and of no further force or effect, except for the purpose of allowing the applicable agents and trustees to receive distributions from the Debtors under the Plan and to make any further distributions to the applicable Holders on account of their Allowed Claims and Interests.

(b)     After the Effective Date and following (i) the distributions to Holders on account of Allowed Convertible Notes Secured Claims and Allowed Miner Equipment Lender Secured Claims and/or (ii) with regard to Allowed M&M Lien Secured Claims, satisfaction of the applicable M&M Lien Takeback Debt, the Debtors or the Reorganized Debtors, at their expense, may, in their sole discretion, take any action necessary to terminate, cancel, extinguish, and/or evidence the release of any and all mortgages, deeds of trust, Liens, pledges, and other security interests with respect to the Convertible Notes Secured Claims, Miner Equipment Lender Secured Claims, and M&M Lien Secured Claims, including, without limitation, the preparation and filing of any and all documents necessary to terminate, satisfy, or release any mortgages, deeds of trust, Liens, pledges, and other security interests held by the Holders of the M&M Lien Secured Claims, Miner Equipment Lender Secured Claims, the Notes Agent, and/or Convertible Noteholders, including, without limitation, UCC-3 termination statements.

**Relevant Definitions Related to Release and Exculpation Provisions:**

*"Exculpated Parties"* means each of the following in their capacity as such and, in each case, to the maximum extent permitted by law: (i) the Debtors; and (ii) Equity Committee and its members, each solely in their capacity as such.

*"Related Parties"* means with respect to a Person, that Person's current and former Affiliates, and such Person's and its current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, fiduciaries, trustees, advisory board members, financial advisors, partners, limited partners, general partners, attorneys, accountants, managed accounts or funds, management companies, fund advisors, investment bankers, consultants, representatives, and other professionals, and such Person's respective heirs, executors, estates, and nominees, each in their capacity as such, and any and all other Persons or Entities that may purport to assert any Cause of Action derivatively, by or through the foregoing entities.

*"Released Parties"* means, collectively: (i) the Debtors; (ii) the Reorganized Debtors; (iii) the Equity Committee and its members that are party to the RSA, solely in their capacities as such; (iv) the Backstop Parties; (v) the Settling Miner Equipment Lenders; (vi) Brown Corporation; (vii) Holliwood LLC; (viii) the Ad Hoc Noteholder Group; (ix) the Consenting Creditors; (x) the Exit Lenders; (xi) the Notes Agent, solely in its capacity as such; and (xii) with respect to each of the foregoing Persons in clauses (i) through (xi), all Related Parties. Notwithstanding the foregoing, any Person that opts out of the releases set forth in section 10.6(b) of the Plan shall not be deemed a Released Party thereunder.

"*Releasing Parties*" means collectively, and in each case solely in their capacity as such, (i) the Debtors; (ii) the Reorganized Debtors; (iii) with respect to each of the foregoing Persons in clauses (i) through (ii), all Related Parties; (iv) the Released Parties; (v) the Holders of all Claims or Interests that vote to accept the Plan; (vi) the Holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but that do not vote either to accept or to reject the Plan and do not opt out of granting the releases set forth in the Plan; (vii) the Holders of all Claims or Interests that vote, or are deemed, to reject the Plan or that are presumed to accept the Plan but do not opt out of granting the releases set forth in the Plan; and (viii) the Holders of all Claims and Interests and all Other Beneficial Owners that were given notice of the opportunity to opt out of granting the releases set forth in the Plan but did not opt out.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

**PLEASE READ THE ATTACHED VOTING INFORMATION
AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT**

---

**PLEASE COMPLETE ITEMS 1, 2, 3, 4, 5, 6, AND 7. IF THIS BALLOT HAS NOT BEEN
PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE
VALID OR COUNTED AS HAVING BEEN CAST.**

---

**Item 1.        Principal Amount of Claims**. The undersigned hereby certifies that, as of the
Voting Record Date, the undersigned was the Holder (or authorized signatory of such a Holder) of
a Miner Equipment Lender Secured Claim in the aggregate unpaid principal amount set forth
below.  Holders can confirm the amount of their Allowed Miner Equipment Lender Secured Claim
Amount by referencing the Miner Equipment Lender Claims Schedule, attached to the Plan as
Exhibit K.

$\boxed{\qquad \textbf{\$}\underline{\qquad\qquad} \qquad}$

**Item 2.        Votes on the Plan**.  Please vote either to accept or to reject the Plan with respect to
your Claim below.  Any Ballot not marked either to accept or reject the Plan, or marked both to
accept and reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

---

**Prior to voting on the Plan, please note the following:**

**If you (i) vote to accept the Plan, (ii) do not vote either to accept or reject the Plan and do
not check the box in Item 5 below, or (iii) vote to reject the Plan and do not check the box
in Item 5 below, in each case you shall be deemed to have consented to the release
provisions set forth in Section 10.6(b) of the Plan.**

**The Disclosure Statement and the Plan must be referenced for a complete description of
the release, injunction, and exculpation provisions.**

---

The undersigned Holder of a Class 3 Miner Equipment Lender Secured Claim votes to (check <u>one</u>
box):

☐ **Accept** the Plan          ☐ **Reject** the Plan.

<u>**Your vote on the Plan will be applied to each applicable Debtor in the same manner and in
the same amount as indicated in Item 1 and Item 2 above.**</u>

**Item 3.        Settlement Election.**  The undersigned Holder of a Miner Equipment Lender
Secured Claim may vote to accept the Plan and elect to be deemed a Settling Miner Equipment
Lender (as defined in the Plan).

☐ **I acknowledge that I have voted to accept the Plan and elect to be deemed a
Settling Miner Equipment Lender.**

**PLEASE NOTE THAT IF YOU VOTE TO REJECT THE PLAN, YOU ARE INELIGIBLE TO BE DEEMED A SETTLING MINER EQUIPMENT LENDER REGARDLESS OF THE ELECTION MADE IN ITEM 3 ABOVE.**

**Item 4.         Treatment Options.**  The undersigned Holder of a Miner Equipment Lender Secured Claim may elect *one* of the following three options:

The undersigned Holder of a Class 3 Miner Equipment Lender Secured Claim elects:

☐ **Default Miner Equipment Lender Treatment.**  I elect to receive the Default Miner Equipment Lender Treatment; or

☐ **Miner Equipment Lender Treatment Election 1.**  I elect to receive the Miner Equipment Lender Treatment Election 1 in lieu of the Default Miner Equipment Lender Treatment; or

☐ **Miner Equipment Lender Treatment Election 2.**  I elect to receive the Miner Equipment Lender Treatment Election 2 in lieu of the Default Miner Equipment Lender Treatment.

**PLEASE NOTE THAT IF YOU FAIL TO MAKE ANY ELECTION ABOVE, YOU WILL RECEIVE THE DEFAULT MINER EQUIPMENT LENDER TREATMENT. FURTHERMORE, ONLY SETTLING MINER EQUIPMENT LENDERS MAY ELECT MINER EQUIPMENT LENDER TREATMENT ELECTION 2.  IF YOU ARE NOT, OR DO NOT BECOME, A SETTLING MINER EQUIPMENT LENDER AND YOU ELECT MINER EQUIPMENT LENDER TREATMENT ELECTION 2, YOU WILL RECEIVE THE DEFAULT MINER EQUIPMENT LENDER TREATMENT.**

**Item 5.         Optional Opt Out Release Election.**  Check the box below if you elect not to grant the releases contained in Section 10.6(b) of the Plan.  If you voted to reject the Plan in Item 2 above, or if you are abstaining from voting to accept or reject the Plan, check this box if you elect not to grant the releases contained in Section 10.6(b) of the Plan.  Election to withhold consent is at your option.  If you voted to accept the Plan in Item 2 above, you **may not** complete this Item 5, and if you complete this Item 5, your "opt out" election will be ineffective.  If you submit a rejecting Ballot, or if you abstain from submitting a Ballot, and in each case, you do not check the box below, you will be deemed to consent to the releases contained in Section 10.6(b) of the Plan to the fullest extent permitted by applicable law.  The Holder of the Class 3 Miner Equipment Lender Secured Claim set forth in Item 1 elects to:

☐ **OPT OUT** of the releases contained only in Section 10.6(b) of the Plan.

13

---

**\*\*\*For Holders of Miner Equipment Lender Deficiency Claims\*\*\***

**Item 6.        Acknowledgement of Class 3 Elections**.  By checking the box below, the Holder acknowledges that it has also received a Class 8 Ballot and further acknowledges that the election (or lack thereof) such Holder makes on this Class 3 Ballot may affect the recovery such Holder receives on account of their Class 8 Claim.

☐  **I Acknowledge that the election made on my Class 3 Ballot, or if I make no election on my Class 3 Ballot, may affect my recovery on account of my Class 8 Claim.**

---

**Item 7.        Acknowledgements**.  By signing this Ballot, the Holder (or authorized signatory of such Holder) acknowledges review and receipt of the Plan, the Disclosure Statement, and the other applicable solicitation materials, and certifies that (i) it has the power and authority to vote to accept or reject the Plan, (ii) it was the Holder (or is entitled to vote on behalf of such Holder) of the Miner Equipment Lender Secured Claim described in Item 1 as of the Voting Record Date, and (iii) all authority conferred, or agreed to be conferred, pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned.

Name of Holder _____

Signature _____

If by Authorized Agent, Name and Title _____

Name of Institution _____

Street Address _____

City, State, Zip Code _____

Telephone Number _____

Date Completed _____

E-Mail Address _____

14

## VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT

1.  Ballots received after the Voting Deadline (if the Voting Deadline has not been extended) may not, at the Debtors' discretion, be counted.  **The Voting Agent will tabulate all properly completed Ballots received on or before the Voting Deadline.**

2.  Complete the Ballot by providing all the information requested, signing, dating, and returning the Ballot to the Voting Agent.  Any Ballot that is illegible, contains insufficient information to identify the Holder, or is unsigned[3] will not be counted.  Ballots may not be submitted to the Voting Agent by facsimile or electronic mail.  If neither the "**accept**" nor "**reject**" box is checked in Item 2, both boxes are checked in Item 2, or the Ballot is otherwise not properly completed, executed, or timely returned, then the Ballot shall not be counted in determining acceptance or rejection of the Plan.

3.  You must vote all your Claims within a single Class under the Plan either to accept or reject the Plan.  Accordingly, if you return more than one Ballot voting different or inconsistent Claims within a single Class under the Plan, the Ballots are not voted in the same manner, and you do not correct this before the Voting Deadline, those Ballots will not be counted.  An otherwise properly executed Ballot that attempts to partially accept and partially reject the Plan likewise will not be counted.

4.  The Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or an assertion or admission of Claims.

5.  The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

6.  If you cast more than one Ballot voting the same Claims prior to the Voting Deadline, the latest received, properly executed Ballot submitted to the Voting Agent will supersede any prior Ballot.

7.  If (i) the Debtors revoke or withdraw the Plan, or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

8.  There may be changes made to the Plan that do not cause material adverse effects on an accepting Class.  If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

9.  NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT, ANY

---

[3] E-Ballots submitted on the Online Portal will be deemed to contain a legal, valid signature.

SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTORS, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

10.     PLEASE RETURN YOUR BALLOT PROMPTLY.

11.     IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT BY CALLING (949) 404-4152 (TOLL-FREE) OR +1 (888) 765-7875(IF CALLING FROM OUTSIDE THE U.S.); WRITING CORE SCIENTIFIC, INC., BALLOT PROCESSING CENTER, C/O STRETTO, INC., 410 EXCHANGE, SUITE 100, IRVINE, CA 92602; OR BY SENDING AN ELECTRONIC MAIL MESSAGE TO CORESCIENTIFICINQUIRIES@STRETTO.COM WITH "CORE SCIENTIFIC" IN THE SUBJECT LINE.   PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.

12.     THE VOTING AGENT IS NOT AUTHORIZED TO AND WILL NOT PROVIDE LEGAL ADVICE.

**PLEASE SUBMIT YOUR BALLOT BY ONLY <u>ONE</u> OF THE FOLLOWING METHODS:** (i) Online submission of an E-Ballot through the Online Portal, (ii) paper copy submission, in the return envelope provided, (iii) paper copy submission by hand delivery or overnight mail, or (iv) paper copy submission by first class mail.

**IF YOU WISH TO COORDINATE HAND DELIVERY OF YOUR BALLOT, PLEASE NOTIFY THE VOTING AGENT VIA E-MAIL AT CORESCIENTIFICINQUIRIES@STRETTO.COM (WITH "CORE SCIENTIFIC BALLOT" IN THE SUBJECT LINE) AT LEAST 24 HOURS IN ADVANCE OF THE ANTICIPATED DELIVERY DATE.**

**ALL BALLOTS MUST BE PROPERLY EXECUTED, COMPLETED, AND DELIVERED ACCORDING TO THE VOTING INSTRUCTIONS SO THAT THE BALLOTS ARE ACTUALLY RECEIVED BY THE VOTING AGENT NO LATER THAN THE VOTING DEADLINE.**

<u>**Online Portal Voting Instructions**</u>

**To properly submit your Ballot electronically, you must electronically complete, sign, and return this customized electronic Ballot by utilizing the Online Portal platform on the Stretto website by visiting https://cases.stretto.com/CoreScientific/, clicking on the "Submit E-Ballot" link and following the instructions set forth on the website.   Your Ballot must be received by Stretto no later than December 13, 2023 at 5:00 p.m. (Prevailing Central Time), the Voting Deadline, unless such time is extended by the Debtors with the consent of the Requisite Consenting Creditors.   <u>HOLDERS ARE STRONGLY ENCOURAGED TO SUBMIT THEIR BALLOTS VIA THE ONLINE PORTAL PLATFORM</u>.   The Stretto "Online Portal" platform is the sole manner in which ballots will be accepted via electronic**

or online transmission.  Ballots submitted by facsimile, electronic mail, or other means of electronic transmission will not be counted.

**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized electronic Ballot:**

Unique E-Ballot ID#: _____

Each E-Ballot ID# is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot.  Please complete and submit an E-Ballot for each E-Ballot ID# you receive, as applicable.  Ballots submitted by E-Ballot will be deemed to contain a legal, valid signature.

**Holders who cast a Ballot using Stretto's "Online Portal" platform should <u>NOT</u> also submit a paper Ballot.**

**THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS DECEMBER 13, 2023 AT 5:00 P.M. (PREVAILING CENTRAL TIME).**

<u>**Paper Copy Ballot Submission**</u>

| **STRETTO'S ADDRESS FOR RECEIPT OF PAPER BALLOTS (WHETHER BY HAND DELIVERY, OVERNIGHT MAIL, OR FIRST CLASS MAIL)** |
|:---:|
| **CORE SCIENTIFIC, INC.**<br>**BALLOT PROCESSING CENTER**<br>**C/O STRETTO, INC.**<br>**410 EXCHANGE, SUITE 100**<br>**IRVINE, CA 92602** |

If you are unable to use the Online Portal platform or need assistance in completing and submitting your Ballot, please contact Stretto (i) via e-mail at CoreScientificInquiries@stretto.com; (ii) via mail by writing Core Scientific, Inc., Ballot Processing Center, C/O Stretto, Inc., 410 Exchange, Suite 100, Irvine, CA 92602; or (iii) via telephone at (949) 404-4152 (Toll-Free) or +1 (888) 765-7875 (if calling from outside the U.S.).

## Exhibit 6

**Form of Ballot for M&M Lien Secured Claims (Class 5)**

No person has been authorized to give any information or advice, or to make any representation, other than what is included in the Disclosure Statement and other materials accompanying this Ballot.[1]

PLEASE NOTE THAT, EVEN IF YOU INTEND TO VOTE TO REJECT THE PLAN, YOU MUST STILL READ, COMPLETE, AND EXECUTE THIS ENTIRE BALLOT.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| CORE SCIENTIFIC, INC., *et al.*, | § | Case No. 22-90341 (CML) |
| | § | |
| Debtors[2] | § | (Jointly Administered) |
| | § | |

## BALLOT FOR VOTING TO ACCEPT OR REJECT THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF CORE SCIENTIFIC, INC. AND ITS AFFILIATED DEBTORS

### CLASS 5 (M&M LIEN SECURED CLAIMS)

IN ORDER FOR YOUR VOTE TO BE COUNTED TOWARD CONFIRMATION OF THE PLAN, THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS ACTUALLY RECEIVED BY THE VOTING AGENT ON OR BEFORE DECEMBER 13, 2023 AT 5:00 P.M. (PREVAILING CENTRAL TIME) (THE "VOTING DEADLINE"), UNLESS EXTENDED BY THE DEBTORS WITH THE CONSENT OF THE REQUISITE CONSENTING CREDITORS.

Core Scientific, Inc. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**") are soliciting votes with respect to the *Third Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors*, filed on November 16, 2023 (Docket No. 1438) (as may be modified, amended, or supplemented, the "**Plan**"). The Plan is attached as **Exhibit A** to the *Disclosure Statement for Third Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors*, filed on

---

[1]   All capitalized terms used but not defined herein or in the enclosed voting instructions have the meanings ascribed to them in the Plan, attached as Exhibit A to the Disclosure Statement.

[2]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions VII, LLC (3198). The Debtors' corporate headquarters is 210 Barton Springs Road, Suite 300, Austin, Texas 78704. The Debtors' service address is 2407 S. Congress Ave, Suite E-101, Austin, Texas 78704.

November 16, 2023 (Docket No. 1439) (as may be modified, amended, or supplemented, the "**Disclosure Statement**").

   Please use this Ballot to cast your vote to accept or reject the Plan if you are, as of November 9, 2023 (the "**Voting Record Date**"), a Holder of an M&M Lien Secured Claim.

   The Disclosure Statement provides information to assist you in deciding whether to accept or reject the Plan.  If you do not have the Disclosure Statement, you may obtain a copy from Stretto, Inc. (the "**Voting Agent**" or "**Stretto**") at no charge by accessing the Debtors' restructuring website at https://cases.stretto.com/CoreScientific.

   If you have any questions on how to properly complete this Ballot, please contact the Voting Agent (i) by e-mail at CoreScientificInquiries@stretto.com, (ii) by writing to Core Scientific, Inc., Ballot Processing Center, c/o Stretto, Inc., 410 Exchange, Suite 100, Irvine, CA 92602, or (iii) via telephone at (949) 404-4152 (Toll-Free) or +1 (888) 765-7875 (if calling from outside the U.S.).  Please be advised that the Voting Agent cannot provide legal advice.  You may wish to seek legal advice concerning the Plan and the classification and treatment of your Class 5 M&M Lien Secured Claim under the Plan.

**IMPORTANT NOTICE REGARDING TREATMENT FOR M&M LIEN SECURED CLAIMS IN CLASS 5**

As described in more detail in the Disclosure Statement, if the Plan is confirmed and the Effective Date occurs, except to the extent that a Holder of an Allowed M&M Lien Secured Claim agrees to a less favorable treatment of such Claim or settles such Claim pursuant to an M&M Lien Settlement (in which case, such Holder's recovery shall be limited to the terms of the applicable M&M Lien Settlement and such Holder shall not be entitled to any recovery under the Plan), each such Holder shall receive, in full and final satisfaction, settlement, release, and discharge of such Allowed Claim, on the Effective Date or as soon as reasonably practicable thereafter, such Holder's applicable M&M Lien Takeback Debt; *provided* that to the extent any Subcontractor has filed an M&M Lien against a Debtor's real property with respect to amounts which are secured, in duplication, by an M&M Lien filed by a General Contractor and evidenced by such General Contractor's M&M Secured Lien Claim, as set forth on the M&M Lien Claims Schedule, (i) the Holder of the M&M Lien Secured Claim shall be the General Contractor, (ii) such Subcontractor shall not be entitled to a separate M&M Secured Lien Claim with respect to any such amounts secured in duplication, (iii) the Reorganized Debtors shall issue M&M Lien Takeback Debt with respect to any such amounts secured in duplication in favor of the General Contractor only as the Holder of the M&M Lien Secured Claim, (iv) the Reorganized Debtors shall repay the M&M Lien Takeback Debt issued to each such General Contractor by making payments directly to the General Contractor and each Subcontractor, pro rata in the percentages set forth next to each such General Contractor and Subcontractor on the M&M Lien Claims Schedule in the column titled "Pro Rata Percentage of applicable M&M Lien Takeback Debt to be repaid to such General Contractor or Subcontractor," and (v) each payment made directly to a Subcontractor shall reduce the amount of such General Contractor's M&M Secured Lien Claim, such General Contractor's M&M Lien, and such Subcontractor's M&M Lien, in each case on a dollar-for-dollar basis; *provided*, *however*, that upon delivery to the Debtors of a final and unconditional lien waiver and release duly executed by a Subcontractor, in recordable form and substance sufficient to permanently waive and release such Subcontractor's M&M Liens, the Reorganized Debtors shall make all further payments on account of such M&M Lien Takeback Debt attributable to such Subcontractor's pro rata percentages set forth next to such Subcontractor on the M&M Lien Claims Schedule directly to the Holder of such Allowed M&M Lien Secured Claim.

Unless and until there is an Event of Default (as defined in the New M&M Lien Debt Term Sheet) under the terms of the applicable M&M Lien Takeback Debt, each Person asserting an M&M Lien shall be precluded from foreclosing or otherwise enforcing such M&M Lien or otherwise taking adverse action against the applicable Debtor with regard to the amounts secured by such M&M Lien.

Any M&M Lien (i) of a Subcontractor, (ii) of a General Contractor, or (iii) otherwise securing an Allowed M&M Lien Secured Claim and/or M&M Lien Takeback Debt shall be (a) fixed, as of the Effective Date, in the amount set forth on the M&M Lien Claims Schedule in the column titled "Amount of Allowed M&M Lien," (b) reduced on a dollar-for-dollar basis in the amount of each payment made on account of such M&M Lien pursuant to the terms of the M&M Lien Takeback Debt, and (c) fully and finally extinguished upon the repayment in full of all amounts

payable under the applicable M&M Lien Takeback Debt, which extinguishment may be evidenced by recording in the applicable real property records a final, unconditional lien waiver, release of lien, and such other documents or certificates required to fully and unconditionally release any such M&M Lien.  The Debtors and Reorganized Debtors, as applicable, are hereby authorized to record (and granted power of attorney to effectuate such recordation) such final, unconditional lien waiver, release of lien, and such other documents or certificates required to fully and unconditionally release any such M&M Lien in the applicable real property records, and each applicable clerk is directed to accept such documentation.

Any M&M Lien not on the M&M Lien Claims Schedule is hereby extinguished.

For the avoidance of doubt, all General Contractor Unsecured Claims shall be General Unsecured Claims Allowed in the amounts set forth on the M&M Lien Claims Schedule in the column titled "Allowed Unsecured Claim Amount" and treated in accordance with section 4.8 of the Plan.

**PLEASE READ THE DISCLOSURE STATEMENT AND PLAN FOR MORE DETAILS.**

The Plan can be confirmed by the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") and thereby made binding on you if it is accepted by the Holders of (i) at least two-thirds in amount of the Allowed Claims or Interests voted in each Impaired Class, and (ii) if the Impaired Class is a Class of Claims, more than one-half in number of the Allowed Claims voted in each Impaired Class, and if the Plan otherwise satisfies the applicable requirements of section 1129(a) under the Bankruptcy Code.  If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (y) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan, and (z) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.  If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan.  To have your vote counted, you must complete, sign, and return this Ballot to the Voting Agent by the Voting Deadline.

Your receipt of this Ballot does not indicate that your Claim(s) has been or will be Allowed.  This Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance or disallowance of, or distribution on account of, Class 5 M&M Lien Secured Claims.  You must provide all of the information requested by this Ballot.  Failure to do so may result in the disqualification of your vote.

**NOTICE REGARDING CERTAIN RELEASE,**
**EXCULPATION, AND INJUNCTION PROVISIONS IN PLAN**

**If you (i) vote to accept the Plan, (ii) are solicited to vote to accept or reject the Plan, but do not vote to either accept or reject the Plan, and do not opt out of granting the releases set forth in the Plan, (iii) vote, or are deemed, to reject the Plan or are presumed to accept the Plan but do not opt out of granting the releases set forth in the Plan, or (iv) were given notice of the opportunity to opt out of granting the releases contained in the Plan but**

do not opt out, you shall be deemed to have consented to the releases contained in Section 10.6(b) of the Plan.  The releases as presented in the Plan are provided below:

**SECTION 10.5**      **INJUNCTION**.

Except as otherwise expressly provided in the Plan or for distributions required to be paid or delivered pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold Claims or Interests that have been released pursuant to Section 0 or Section 0, shall be discharged pursuant to Section Error! Reference source not found. of the Plan, or are subject to exculpation pursuant to Section Error! Reference source not found., and all Subcontractors and all other parties in interest are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Released Parties, and/or the Exculpated Parties (to the extent of the exculpation provided pursuant to Section Error! Reference source not found. with respect to the Exculpated Parties): (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (iii) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless (x) such Entity has timely asserted such setoff right either in a Filed Proof of Claim, or in another document Filed with the Bankruptcy Court explicitly preserving such setoff or that otherwise indicates that such entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise or (y) such right to setoff arises under a postpetition agreement with the Debtors or an Executory Contract that has been assumed by the Debtors as of the Effective Date; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released, settled, and/or treated, entitled to a distribution, or cancelled pursuant to the Plan or otherwise Disallowed; *provided* that such persons who have held, hold, or may hold Claims against, or Interests in, a Debtor, a Reorganized Debtor, or an Estate shall not be precluded from exercising their rights and remedies, or obtaining the benefits, solely pursuant to and consistent with the terms of the Plan.

Subject in all respects to Section Error! Reference source not found., no entity or person may commence or pursue a Claim or Cause of Action of any kind against any Released Party or Exculpated Party that arose or arises from, in whole or in part, the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors (which includes, for the avoidance of doubt, all claims and Causes of Action asserted or assertable in the Securities Class Action), the DIP Facility, the Convertible Notes Agreements, the Miner Equipment Lender Agreements, the Mortgage Agreements, the General Contracts, any and all agreements relating to M&M Liens, and any

and all related agreements, instruments, and/or other documents, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Plan Settlements, the New Secured Convertible Notes Documents, the New Secured Notes Documents, the Contingent Payment Obligations Documents, the New Miner Equipment Lender Debt Documents, the Exit Facility Documents, the New Warrants Agreement, the Rights Offering, the Backstop Commitment Letter, the Initial DIP Loan Documents, the DIP Facility, the Terminated RSA, the RSA, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan (including, but not limited to, the New Common Interests), or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a claim of willful misconduct, fraud or gross negligence against a Released Party or Exculpated Party and (ii) specifically authorizing such Entity or Person to bring such Claim or Cause of Action against any such Released Party or Exculpated Party.  The Bankruptcy Court shall have sole and exclusive jurisdiction to determine whether a Claim or Cause of Action is colorable and, only to the extent legally permissible and as provided for in Section Error! Reference source not found., shall have jurisdiction to adjudicate the underlying colorable Claim or Cause of Action.

**SECTION 10.6(a)   RELEASES BY THE DEBTORS.**

Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the obligations of the Debtors under the Plan and the contributions of the Released Parties to facilitate and implement the Plan, except as otherwise provided in the Plan or in the Confirmation Order, on and after the Effective Date, the Released Parties are deemed conclusively, absolutely, unconditionally and irrevocably, released and discharged by the Debtors, the Reorganized Debtors, and the Estates from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Reorganized Debtors, the Estates, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors (which includes, for the avoidance of doubt, all claims and Causes of Action asserted or assertable in the Securities Class Action), the DIP Facility, the

Convertible Notes Agreements, the Miner Equipment Lender Agreements, the Mortgage Agreements, the General Contracts, any and all agreements relating to M&M Liens, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Plan Settlements, the New Secured Convertible Notes Documents, the New Secured Notes Documents, the Contingent Payment Obligations Documents, the New Miner Equipment Lender Debt Documents, the Exit Facility Documents, the New Warrants Agreement, the Rights Offering, the Backstop Commitment Letter, the Initial DIP Loan Documents, the DIP Facility, the Terminated RSA, the RSA, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan (including, but not limited to, the New Common Interests), or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth in Section 0 of the Plan (i) shall only be applicable to the maximum extent permitted by law; (ii) shall not be construed as (a) releasing any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud (*provided* that actual fraud shall not exempt from the scope of these Debtor releases any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, (b) releasing any Released Party from Claims or Causes of Action held by the Debtors arising from an act or omission that is determined by a Final Order or by a federal government agency to have constituted a violation of any federal securities laws or (c) releasing any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

**SECTION 10.6(b)**     **RELEASES BY HOLDERS OF CLAIMS AND INTERESTS.**

Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, except as otherwise provided in the Plan or in the Confirmation Order, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, each Releasing Party, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released, and discharged the Debtors, the Reorganized Debtors, and the Released Parties from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims or Causes of Action asserted or that may be asserted on behalf of the Debtors or their Estates, that such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or

Interest, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, including any Claims or Causes of Action based on or relating to, or in any manner arising from, in whole or in part, the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors (which includes, for the avoidance of doubt, all claims and Causes of Action asserted or assertable in the Securities Class Action), the DIP Facility, the Convertible Notes Agreements, the Miner Equipment Lender Agreements, the Mortgage Agreements, the General Contracts, any and all agreements relating to M&M Liens, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Plan Settlements, the New Secured Convertible Notes Documents, the New Secured Notes Documents, the Contingent Payment Obligations Documents, the New Miner Equipment Lender Debt Documents, the Exit Facility Documents, the New Warrants Agreement, the Rights Offering, the Backstop Commitment Letter, the Initial DIP Loan Documents, the DIP Facility, the Terminated RSA, the RSA, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan (including, but not limited to, the New Common Interests), or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth in Section 0 of the Plan (i) shall only be applicable to the maximum extent permitted by law; and (ii) shall not be construed as (a) releasing any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud (*provided* that actual fraud shall not exempt from the scope of these third-party releases any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, or (b) releasing any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

## SECTION 10.7      EXCULPATION.

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out, in whole or in part, from the Petition Date through the Effective Date, of the Chapter 11 Cases, the Debtors, the governance, management, transactions,

ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors, the DIP Facility, the Convertible Notes Agreements, the Miner Equipment Lender Agreements, the Mortgage Agreements, the General Contracts, any and all agreements relating to M&M Liens, and related agreements, instruments, or other documents, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Plan Settlements, the New Secured Convertible Notes Documents, the New Secured Notes Documents, the Contingent Payment Obligations Documents, the New Miner Equipment Lender Debt Documents, the Exit Facility Documents, the New Warrants Agreement, the Rights Offering, the Backstop Commitment Letter, the Initial DIP Loan Documents, the DIP Facility, the Terminated RSA, the RSA, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan (including, but not limited to, the New Common Interests), or the distribution of property under the Plan, or any other related agreement, except for Claims or Causes of Action arising from an act or omission that is judicially determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects, such Exculpated Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities.  The Exculpated Parties have, and upon completion of the Plan, shall be deemed to have, participated in good faith and in compliance with all applicable laws with regard to the solicitation and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.  Notwithstanding anything to the contrary in the foregoing, the exculpations set forth in Section <u>Error! Reference source not found.</u> of the Plan (i) shall only be applicable to the maximum extent permitted by law; and (ii) shall not be construed as (a) exculpating any Exculpated Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud (*provided* that actual fraud shall not exempt from the scope of these exculpations any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, or (b) exculpating any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

**SECTION 5.17      <u>CANCELLATION OF LIENS</u>.**

(a)    Except as otherwise specifically provided in the Plan, including sections **Error! Reference source not found.** and **Error! Reference source not found.** of the Plan, all notes, instruments, certificates evidencing debt of the Debtors and Existing Common Interests

will be cancelled and obligations of the Debtors thereunder will be discharged and of no further force or effect, except for the purpose of allowing the applicable agents and trustees to receive distributions from the Debtors under the Plan and to make any further distributions to the applicable Holders on account of their Allowed Claims and Interests.

(b)     After the Effective Date and following (i) the distributions to Holders on account of Allowed Convertible Notes Secured Claims and Allowed Miner Equipment Lender Secured Claims and/or (ii) with regard to Allowed M&M Lien Secured Claims, satisfaction of the applicable M&M Lien Takeback Debt, the Debtors or the Reorganized Debtors, at their expense, may, in their sole discretion, take any action necessary to terminate, cancel, extinguish, and/or evidence the release of any and all mortgages, deeds of trust, Liens, pledges, and other security interests with respect to the Convertible Notes Secured Claims, Miner Equipment Lender Secured Claims, and M&M Lien Secured Claims, including, without limitation, the preparation and filing of any and all documents necessary to terminate, satisfy, or release any mortgages, deeds of trust, Liens, pledges, and other security interests held by the Holders of the M&M Lien Secured Claims, Miner Equipment Lender Secured Claims, the Notes Agent, and/or Convertible Noteholders, including, without limitation, UCC-3 termination statements.

**Relevant Definitions Related to Release and Exculpation Provisions**:

    *"Exculpated Parties"* means each of the following in their capacity as such and, in each case, to the maximum extent permitted by law: (i) the Debtors; and (ii) Equity Committee and its members, each solely in their capacity as such.

    *"Related Parties"* means with respect to a Person, that Person's current and former Affiliates, and such Person's and its current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, fiduciaries, trustees, advisory board members, financial advisors, partners, limited partners, general partners, attorneys, accountants, managed accounts or funds, management companies, fund advisors, investment bankers, consultants, representatives, and other professionals, and such Person's respective heirs, executors, estates, and nominees, each in their capacity as such, and any and all other Persons or Entities that may purport to assert any Cause of Action derivatively, by or through the foregoing entities.

    *"Released Parties"* means, collectively: (i) the Debtors; (ii) the Reorganized Debtors; (iii) the Equity Committee and its members that are party to the RSA, solely in their capacities as such; (iv) the Backstop Parties; (v) the Settling Miner Equipment Lenders; (vi) Brown Corporation; (vii) Holliwood LLC; (viii) the Ad Hoc Noteholder Group; (ix) the Consenting Creditors; (x) the Exit Lenders; (xi) the Notes Agent, solely in its capacity as such; and (xii) with respect to each of the foregoing Persons in clauses (i) through (xi), all Related Parties. Notwithstanding the foregoing, any Person that opts out of the releases set forth in section 10.6(b) of the Plan shall not be deemed a Released Party thereunder.

"*Releasing Parties*" means collectively, and in each case solely in their capacity as such, (i) the Debtors; (ii) the Reorganized Debtors; (iii) with respect to each of the foregoing Persons in clauses (i) through (ii), all Related Parties; (iv) the Released Parties; (v) the Holders of all Claims or Interests that vote to accept the Plan; (vi) the Holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but that do not vote either to accept or to reject the Plan and do not opt out of granting the releases set forth in the Plan; (vii) the Holders of all Claims or Interests that vote, or are deemed, to reject the Plan or that are presumed to accept the Plan but do not opt out of granting the releases set forth in the Plan; and (viii) the Holders of all Claims and Interests and all Other Beneficial Owners that were given notice of the opportunity to opt out of granting the releases set forth in the Plan but did not opt out.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

**PLEASE READ THE ATTACHED VOTING INFORMATION
AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT**

---

**PLEASE COMPLETE ITEMS 1, 2, 3, AND 4.  IF THIS BALLOT HAS NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE VALID OR COUNTED AS HAVING BEEN CAST.**

---

**Item 1.**        **Principal Amount of Claims**. The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the Holder (or authorized signatory of such a Holder) of an M&M Lien Secured Claim in the aggregate amount principal amount set forth below.

$ _____

**Item 2.**        **Votes on the Plan**.  Please vote either to accept or to reject the Plan with respect to your Claims below.  Any Ballot not marked either to accept or reject the Plan, or marked both to accept and reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

---

**Prior to voting on the Plan, please note the following:**

**If you (i) vote to accept the Plan, (ii) do not vote either to accept or reject the Plan and do not check the box in Item 3 below, or (iii) vote to reject the Plan and do not check the box in Item 3 below, in each case you shall be deemed to have consented to the release provisions set forth in Section 10.6(b) of the Plan.**

**The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation provisions.**

---

The undersigned holder of a Class 5 M&M Lien Secured Claim votes to (check <u>one</u> box):

☐ **Accept** the Plan          ☐ **Reject** the Plan.

        <u>**Your vote on the Plan will be applied to each applicable Debtor in the same manner and in the same amount as indicated in Item 1 and Item 2 above.**</u>

**Item 3.**        **Optional Opt Out Release Election**.  Check the box below if you elect not to grant the releases contained in Section 10.6(b) of the Plan.  If you voted to reject the Plan in Item 2 above, or if you are abstaining from voting to accept or reject the Plan, check this box if you elect not to grant the releases contained in Section 10.6(b) of the Plan.  Election to withhold consent is at your option.  If you voted to accept the Plan in Item 2 above, you **may not** complete this Item 3, and if you complete this Item 3, your "opt out" election will be ineffective.  If you submit a rejecting Ballot, or if you abstain from submitting a Ballot, and in each case, you do not check the box below, you will be deemed to consent to the releases contained in Section 10.6(b) of the Plan

to the fullest extent permitted by applicable law.  The Holder of the Class 5 M&M Lien Secured Claim set forth in Item 1 elects to:

☐  **OPT OUT** of the releases contained only in Section 10.6(b) of the Plan.

**Item 4.**          **Acknowledgements**.  By signing this Ballot, the Holder (or authorized signatory of such Holder) acknowledges review and receipt of the Plan, the Disclosure Statement, and the other applicable solicitation materials, and certifies that (i) it has the power and authority to vote to accept or reject the Plan, (ii) it was the Holder (or is entitled to vote on behalf of such Holder) of the M&M Lien Secured Claim described in Item 1 as of the Voting Record Date, and (iii) all authority conferred, or agreed to be conferred, pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned.

<div style="margin-left: 40%;">

Name of Holder
_____

Signature
_____

If by Authorized Agent, Name and Title
_____

Name of Institution
_____

Street Address
_____

City, State, Zip Code
_____

Telephone Number
_____

Date Completed
_____

E-Mail Address
_____

</div>

## VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT

1.      Ballots received after the Voting Deadline (if the Voting Deadline has not been extended) may not, at the Debtors' discretion, be counted.  **The Voting Agent will tabulate all properly completed Ballots received on or before the Voting Deadline.**

2.      Complete the Ballot by providing all the information requested, signing, dating, and returning the Ballot to the Voting Agent.  Any Ballot that is illegible, contains insufficient information to identify the Holder, or is unsigned[3] will not be counted.  Ballots may not be submitted to the Voting Agent by facsimile or electronic mail.  If neither the "**accept**" nor "**reject**" box is checked in Item 2, both boxes are checked in Item 2, or the Ballot is

_____

[3] E-Ballots submitted on the Online Portal will be deemed to contain a legal, valid signature.

otherwise not properly completed, executed, or timely returned, then the Ballot shall not be counted in determining acceptance or rejection of the Plan.

3. You must vote all your Claims within a single Class under the Plan either to accept or reject the Plan. Accordingly, if you return more than one Ballot voting different or inconsistent Claims within a single Class under the Plan, the Ballots are not voted in the same manner, and you do not correct this before the Voting Deadline, those Ballots will not be counted. An otherwise properly executed Ballot that attempts to partially accept and partially reject the Plan likewise will not be counted.

4. The Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or an assertion or admission of Claims.

5. The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

6. If you cast more than one Ballot voting the same Claims prior to the Voting Deadline, the latest received, properly executed Ballot submitted to the Voting Agent will supersede any prior Ballot.

7. If (i) the Debtors revoke or withdraw the Plan, or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

8. There may be changes made to the Plan that do not cause material adverse effects on an accepting Class.  If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

9. NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT, ANY SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTORS, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

10. PLEASE RETURN YOUR BALLOT PROMPTLY.

11. IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT BY CALLING (949) 404-4152 (TOLL-FREE) OR +1 (888) 765-7875(IF CALLING FROM OUTSIDE THE U.S.); WRITING CORE SCIENTIFIC, INC., BALLOT PROCESSING CENTER, C/O STRETTO, INC., 410 EXCHANGE, SUITE 100, IRVINE, CA 92602; OR BY SENDING AN ELECTRONIC MAIL MESSAGE TO CORESCIENTIFICINQUIRIES@STRETTO.COM WITH "CORE SCIENTIFIC" IN

THE SUBJECT LINE.  PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.

12.    THE VOTING AGENT IS NOT AUTHORIZED TO AND WILL NOT PROVIDE LEGAL ADVICE.

**PLEASE SUBMIT YOUR BALLOT BY ONLY <u>ONE</u> OF THE FOLLOWING METHODS:**
(i) Online submission of an E-Ballot, (ii) paper copy submission, in the return envelope provided, (iii) paper copy submission by hand delivery or overnight mail, or (iv) paper copy submission by first class mail.

**IF YOU WISH TO COORDINATE HAND DELIVERY OF YOUR BALLOT, PLEASE NOTIFY THE VOTING AGENT VIA E-MAIL AT CORESCIENTIFICINQUIRIES@STRETTO.COM (WITH "CORE SCIENTIFIC BALLOT" IN THE SUBJECT LINE) AT LEAST 24 HOURS IN ADVANCE OF THE ANTICIPATED DELIVERY DATE.**

**ALL BALLOTS MUST BE PROPERLY EXECUTED, COMPLETED, AND DELIVERED ACCORDING TO THE VOTING INSTRUCTIONS SO THAT THE BALLOTS ARE ACTUALLY RECEIVED BY THE VOTING AGENT NO LATER THAN THE VOTING DEADLINE.**

<u>**Online Portal Voting Instructions**</u>

**To properly submit your Ballot electronically, you must electronically complete, sign, and return this customized electronic Ballot by utilizing the Online Portal platform on the Stretto website by visiting https://cases.stretto.com/CoreScientific/, clicking on the "Submit E-Ballot" link and following the instructions set forth on the website.  Your Ballot must be received by Stretto no later than December 13, 2023 at 5:00 p.m. (Prevailing Central Time), the Voting Deadline, unless such time is extended by the Debtors with the consent of the Requisite Consenting Creditors.  <u>HOLDERS ARE STRONGLY ENCOURAGED TO SUBMIT THEIR BALLOTS VIA THE ONLINE PORTAL PLATFORM</u>.  The Stretto "Online Portal" platform is the sole manner in which ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile, electronic mail, or other means of electronic transmission will not be counted.**

**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized electronic Ballot:**

        **Unique E-Ballot ID#:  _____**

Each E-Ballot ID# is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot.  Please complete and submit an E-Ballot for each E-Ballot ID# you receive, as applicable.  Ballots submitted by E-Ballot will be deemed to contain a legal, valid signature.

**Holders who cast a Ballot using Stretto's "Online Portal" platform should <u>NOT</u> also submit a paper Ballot.**

**THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS DECEMBER 13, 2023 AT 5:00 P.M. (PREVAILING CENTRAL TIME).**

<u>Paper Copy Ballot Submission</u>

| **STRETTO'S ADDRESS FOR RECEIPT OF PAPER BALLOTS (WHETHER BY HAND DELIVERY, OVERNIGHT MAIL, OR FIRST CLASS MAIL)** |
|:---:|
| **CORE SCIENTIFIC, INC.**<br>**BALLOT PROCESSING CENTER**<br>**C/O STRETTO, INC.**<br>**410 EXCHANGE, SUITE 100**<br>**IRVINE, CA 92602** |

If you are unable to use the Online Portal platform or need assistance in completing and submitting your Ballot, please contact Stretto (i) via e-mail at CoreScientificInquiries@stretto.com; (ii) via mail by writing Core Scientific, Inc., Ballot Processing Center, C/O Stretto, Inc., 410 Exchange, Suite 100, Irvine, CA 92602; or (iii) via telephone at (949) 404-4152 (Toll-Free) or +1 (888) 765-7875 (if calling from outside the U.S.).

.

## **Exhibit 7**

**Form of Ballot for Secured Mortgage Claims (Class 6)**

No person has been authorized to give any information or advice, or to make any representation, other than what is included in the Disclosure Statement and other materials accompanying this Ballot.[1]

PLEASE NOTE THAT, EVEN IF YOU INTEND TO VOTE TO REJECT THE PLAN, YOU MUST STILL READ, COMPLETE, AND EXECUTE THIS ENTIRE BALLOT.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| **CORE SCIENTIFIC, INC.**, *et al.*, | § | Case No. 22-90341 (CML) |
| | § | |
| Debtors[2] | § | (Jointly Administered) |
| | § | |

## BALLOT FOR VOTING TO ACCEPT OR REJECT THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF CORE SCIENTIFIC, INC. AND ITS AFFILIATED DEBTORS

### CLASS 6 (SECURED MORTGAGE CLAIMS)

> IN ORDER FOR YOUR VOTE TO BE COUNTED TOWARD CONFIRMATION OF THE PLAN, THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS <u>ACTUALLY RECEIVED</u> BY THE VOTING AGENT ON OR BEFORE DECEMBER 13, 2023 AT 5:00 P.M. (PREVAILING CENTRAL TIME) (THE "<u>VOTING DEADLINE</u>"), UNLESS EXTENDED BY THE DEBTORS WITH THE CONSENT OF THE REQUISITE CONSENTING CREDITORS.

Core Scientific, Inc. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**") are soliciting votes with respect to the *Third Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors*, filed on November 16, 2023 (Docket No. 1438) (as may be modified, amended, or supplemented, the "**Plan**"). The Plan is attached as <u>**Exhibit A**</u> to the *Disclosure Statement for*

---

[1]   All capitalized terms used but not defined herein or in the enclosed voting instructions have the meanings ascribed to them in the Plan, attached as <u>Exhibit A</u> to the Disclosure Statement.

[2]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions VII, LLC (3198). The Debtors' corporate headquarters is 210 Barton Springs Road, Suite 300, Austin, Texas 78704. The Debtors' service address is 2407 S. Congress Ave, Suite E-101, Austin, Texas 78704.

*Third Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors*, filed on November 16, 2023 (Docket No. 1439) (as may be modified, amended, or supplemented, the "**Disclosure Statement**").

Please use this Ballot to cast your vote to accept or reject the Plan if you are, as of November 9, 2023 (the "**Voting Record Date**"), a Holder of a Secured Mortgage Claim.

The Disclosure Statement provides information to assist you in deciding whether to accept or reject the Plan.  If you do not have the Disclosure Statement, you may obtain a copy from Stretto, Inc. (the "**Voting Agent**" or "**Stretto**") at no charge by accessing the Debtors' restructuring website at https://cases.stretto.com/CoreScientific.

If you have any questions on how to properly complete this Ballot, please contact the Voting Agent (i) by e-mail at CoreScientificInquiries@stretto.com, (ii) by writing to Core Scientific, Inc., Ballot Processing Center, c/o Stretto, Inc., 410 Exchange, Suite 100, Irvine, CA 92602, or (iii) via telephone at (949) 404-4152 (Toll-Free) or +1 (888) 765-7875 (if calling from outside the U.S.).  Please be advised that the Voting Agent cannot provide legal advice.  You may wish to seek legal advice concerning the Plan and the classification and treatment of your Class 6 Secured Mortgage Claim under the Plan.

---

**IMPORTANT NOTICE REGARDING TREATMENT FOR SECURED MORTGAGE CLAIMS IN CLASS 6**

As described in more detail in the Disclosure Statement, if the Plan is confirmed and the Effective Date occurs, except to the extent that a Holder of an Allowed Secured Mortgage Claim (i) agrees to a less favorable treatment of such Claim or (ii) timely elects the Mortgage Treatment Election (as set forth below) on or before the Voting Deadline, each such Holder shall receive, in full and final satisfaction, settlement, release, and discharge of such Claim, on the Effective Date, or as soon as reasonably practicable thereafter, such Holder's applicable Mortgage Takeback Debt (the "**Default Mortgage Treatment**").  The Mortgage Agreements (and any applicable related documents) of Holders of Allowed Secured Mortgage Claims receiving the Default Mortgage Treatment shall be deemed amended to include a maturity date of December 31, 2025.  The Debtors and Reorganized Debtors, as applicable, are hereby authorized to record (and granted power of attorney to effectuate such recordation) any memorandum or such other documents or certificates required to effectuate such deemed amendment in the applicable real property records, and each applicable clerk is directed to accept such documentation.

Each Holder of an Allowed Secured Mortgage Claim may elect on this Ballot to receive, no later than sixty (60) days following the Effective Date, in lieu of the Default Mortgage Treatment, in each case in full and final satisfaction, settlement, release, and discharge of such Holder's Allowed Secured Mortgage Claim, Cash in an amount equal to ninety-five percent (95%) of such Holder's Allowed Secured Mortgage Claim Amount (the "**Mortgage Treatment Election**").

**PLEASE READ THE DISCLOSURE STATEMENT AND PLAN FOR MORE DETAILS.**

---

The Plan can be confirmed by the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") and thereby made binding on you if it is accepted by the Holders of (i) at least two-thirds in amount of the Allowed Claims or Interests voted in each Impaired Class, and (ii) if the Impaired Class is a Class of Claims, more than one-half in number of the Allowed Claims voted in each Impaired Class, and if the Plan otherwise satisfies the applicable requirements of section 1129(a) under the Bankruptcy Code. If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (y) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan, and (z) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code. If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan. To have your vote counted, you must complete, sign, and return this Ballot to the Voting Agent by the Voting Deadline.

Your receipt of this Ballot does not indicate that your Claim(s) has been or will be Allowed. This Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance or disallowance of, or distribution on account of, Class 6 Secured Mortgage Claims. You must provide all of the information requested by this Ballot. Failure to do so may result in the disqualification of your vote.

<div align="center">

**NOTICE REGARDING CERTAIN RELEASE,**
**EXCULPATION, AND INJUNCTION PROVISIONS IN PLAN**

</div>

**If you (i) vote to accept the Plan, (ii) are solicited to vote to accept or reject the Plan, but do not vote to either accept or reject the Plan, and do not opt out of granting the releases set forth in the Plan, (iii) vote, or are deemed, to reject the Plan or are presumed to accept the Plan but do not opt out of granting the releases set forth in the Plan, or (iv) were given notice of the opportunity to opt out of granting the releases contained in the Plan but do not opt out, you shall be deemed to have consented to the releases contained in Section 10.6(b) of the Plan. The releases as presented in the Plan are provided below:**

**SECTION 10.5**      **INJUNCTION.**

**Except as otherwise expressly provided in the Plan or for distributions required to be paid or delivered pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold Claims or Interests have been released pursuant to Section 0 or Section 0, shall be discharged pursuant to Section Error! Reference source not found. of the Plan, or are subject to exculpation pursuant to Section Error! Reference source not found., and all Subcontractors and all other parties in interest are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Released Parties, and/or the Exculpated Parties (to the extent of the exculpation provided pursuant to Section Error! Reference source not found. with respect to the Exculpated Parties): (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (iii) creating, perfecting, or enforcing any Lien or encumbrance of any kind**

against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless (x) such Entity has timely asserted such setoff right either in a Filed Proof of Claim, or in another document Filed with the Bankruptcy Court explicitly preserving such setoff or that otherwise indicates that such entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise or (y) such right to setoff arises under a postpetition agreement with the Debtors or an Executory Contract that has been assumed by the Debtors as of the Effective Date; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released, settled, and/or treated, entitled to a distribution, or cancelled pursuant to the Plan or otherwise Disallowed; *provided* that such persons who have held, hold, or may hold Claims against, or Interests in, a Debtor, a Reorganized Debtor, or an Estate shall not be precluded from exercising their rights and remedies, or obtaining the benefits, solely pursuant to and consistent with the terms of the Plan.

Subject in all respects to Section Error! Reference source not found., no entity or person may commence or pursue a Claim or Cause of Action of any kind against any Released Party or Exculpated Party that arose or arises from, in whole or in part, the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors (which includes, for the avoidance of doubt, all claims and Causes of Action asserted or assertable in the Securities Class Action), the DIP Facility, the Convertible Notes Agreements, the Miner Equipment Lender Agreements, the Mortgage Agreements, the General Contracts, any and all agreements relating to M&M Liens, and any and all related agreements, instruments, and/or other documents, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Plan Settlements, the New Secured Convertible Notes Documents, the New Secured Notes Documents, the Contingent Payment Obligations Documents, the New Miner Equipment Lender Debt Documents, the Exit Facility Documents, the New Warrants Agreement, the Rights Offering, the Backstop Commitment Letter, the Initial DIP Loan Documents, the DIP Facility, the Terminated RSA, the RSA, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan (including, but not limited to, the New Common Interests), or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a claim of willful misconduct, fraud or gross negligence

against a Released Party or Exculpated Party and (ii) specifically authorizing such Entity or Person to bring such Claim or Cause of Action against any such Released Party or Exculpated Party. The Bankruptcy Court shall have sole and exclusive jurisdiction to determine whether a Claim or Cause of Action is colorable and, only to the extent legally permissible and as provided for in Section Error! Reference source not found., shall have jurisdiction to adjudicate the underlying colorable Claim or Cause of Action.

**SECTION 10.6(a)**     **RELEASES BY THE DEBTORS.**

Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the obligations of the Debtors under the Plan and the contributions of the Released Parties to facilitate and implement the Plan, except as otherwise provided in the Plan or in the Confirmation Order, on and after the Effective Date, the Released Parties are deemed conclusively, absolutely, unconditionally and irrevocably, released and discharged by the Debtors, the Reorganized Debtors, and the Estates from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Reorganized Debtors, the Estates, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors (which includes, for the avoidance of doubt, all claims and Causes of Action asserted or assertable in the Securities Class Action), the DIP Facility, the Convertible Notes Agreements, the Miner Equipment Lender Agreements, the Mortgage Agreements, the General Contracts, any and all agreements relating to M&M Liens, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Plan Settlements, the New Secured Convertible Notes Documents, the New Secured Notes Documents, the Contingent Payment Obligations Documents, the New Miner Equipment Lender Debt Documents, the Exit Facility Documents, the New Warrants Agreement, the Rights Offering, the Backstop Commitment Letter, the Initial DIP Loan Documents, the DIP Facility, the Terminated RSA, the RSA, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan (including, but not limited to, the New Common Interests), or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth in Section 0 of the Plan (i) shall only be

applicable to the maximum extent permitted by law; (ii) shall not be construed as (a) releasing any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud (*provided* that actual fraud shall not exempt from the scope of these Debtor releases any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, (b) releasing any Released Party from Claims or Causes of Action held by the Debtors arising from an act or omission that is determined by a Final Order or by a federal government agency to have constituted a violation of any federal securities laws or (c) releasing any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

**SECTION 10.6(b)    <u>RELEASES BY HOLDERS OF CLAIMS AND INTERESTS</u>.**

Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, except as otherwise provided in the Plan or in the Confirmation Order, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, each Releasing Party, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released, and discharged the Debtors, the Reorganized Debtors, and the Released Parties from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims or Causes of Action asserted or that may be asserted on behalf of the Debtors or their Estates, that such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, including any Claims or Causes of Action based on or relating to, or in any manner arising from, in whole or in part, the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors (which includes, for the avoidance of doubt, all claims and Causes of Action asserted or assertable in the Securities Class Action), the DIP Facility, the Convertible Notes Agreements, the Miner Equipment Lender Agreements, the Mortgage Agreements, the General Contracts, any and all agreements relating to M&M Liens, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Plan Settlements, the New Secured Convertible Notes Documents, the New Secured Notes Documents, the Contingent Payment Obligations Documents, the New Miner Equipment

Lender Debt Documents, the Exit Facility Documents, the New Warrants Agreement, the Rights Offering, the Backstop Commitment Letter, the Initial DIP Loan Documents, the DIP Facility, the Terminated RSA, the RSA, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan (including, but not limited to, the New Common Interests), or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth in Section 0 of the Plan (i) shall only be applicable to the maximum extent permitted by law; and (ii) shall not be construed as (a) releasing any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud (*provided* that actual fraud shall not exempt from the scope of these third-party releases any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, or (b) releasing any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

## SECTION 10.7    EXCULPATION.

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out, in whole or in part, from the Petition Date through the Effective Date, of the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors, the DIP Facility, the Convertible Notes Agreements, the Miner Equipment Lender Agreements, the Mortgage Agreements, the General Contracts, any and all agreements relating to M&M Liens, and related agreements, instruments, or other documents, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Plan Settlements, the New Secured Convertible Notes Documents, the New Secured Notes Documents, the Contingent Payment Obligations Documents, the New Miner Equipment Lender Debt Documents, the Exit Facility Documents, the New Warrants Agreement, the Rights Offering, the Backstop Commitment Letter, the Initial DIP Loan Documents, the DIP Facility, the Terminated RSA, the RSA, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan (including, but not limited to, the New Common Interests), or the distribution of property under the Plan, or any other related agreement, except for

Claims or Causes of Action arising from an act or omission that is judicially determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects, such Exculpated Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities.  The Exculpated Parties have, and upon completion of the Plan, shall be deemed to have, participated in good faith and in compliance with all applicable laws with regard to the solicitation and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.  Notwithstanding anything to the contrary in the foregoing, the exculpations set forth in Section **Error! Reference source not found.** of the Plan (i) shall only be applicable to the maximum extent permitted by law; and (ii) shall not be construed as (a) exculpating any Exculpated Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud (*provided* that actual fraud shall not exempt from the scope of these exculpations any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, or (b) exculpating any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

## SECTION 5.17     CANCELLATION OF LIENS.

(a)     Except as otherwise specifically provided in the Plan, including sections **Error! Reference source not found.** and **Error! Reference source not found.** of the Plan, all notes, instruments, certificates evidencing debt of the Debtors and Existing Common Interests will be cancelled and obligations of the Debtors thereunder will be discharged and of no further force or effect, except for the purpose of allowing the applicable agents and trustees to receive distributions from the Debtors under the Plan and to make any further distributions to the applicable Holders on account of their Allowed Claims and Interests.

(b)     After the Effective Date and following (i) the distributions to Holders on account of Allowed Convertible Notes Secured Claims and Allowed Miner Equipment Lender Secured Claims and/or (ii) with regard to Allowed M&M Lien Secured Claims, satisfaction of the applicable M&M Lien Takeback Debt, the Debtors or the Reorganized Debtors, at their expense, may, in their sole discretion, take any action necessary to terminate, cancel, extinguish, and/or evidence the release of any and all mortgages, deeds of trust, Liens, pledges, and other security interests with respect to the Convertible Notes Secured Claims, Miner Equipment Lender Secured Claims, and M&M Lien Secured Claims, including, without limitation, the preparation and filing of any and all documents necessary to terminate, satisfy, or release any mortgages, deeds of trust, Liens, pledges, and other security interests held by the Holders of the M&M Lien Secured Claims, Miner Equipment Lender Secured Claims, the Notes Agent, and/or Convertible Noteholders, including, without limitation, UCC-3 termination statements.

**Relevant Definitions Related to Release and Exculpation Provisions**:

*"Exculpated Parties"* means each of the following in their capacity as such and, in each case, to the maximum extent permitted by law: (i) the Debtors; and (ii) Equity Committee and its members, each solely in their capacity as such.

*"Related Parties"* means with respect to a Person, that Person's current and former Affiliates, and such Person's and its current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, fiduciaries, trustees, advisory board members, financial advisors, partners, limited partners, general partners, attorneys, accountants, managed accounts or funds, management companies, fund advisors, investment bankers, consultants, representatives, and other professionals, and such Person's respective heirs, executors, estates, and nominees, each in their capacity as such, and any and all other Persons or Entities that may purport to assert any Cause of Action derivatively, by or through the foregoing entities.

*"Released Parties"* means, collectively: (i) the Debtors; (ii) the Reorganized Debtors; (iii) the Equity Committee and its members that are party to the RSA, solely in their capacities as such; (iv) the Backstop Parties; (v) the Settling Miner Equipment Lenders; (vi) Brown Corporation; (vii) Holliwood LLC; (viii) the Ad Hoc Noteholder Group; (ix) the Consenting Creditors; (x) the Exit Lenders; (xi) the Notes Agent, solely in its capacity as such; and (xii) with respect to each of the foregoing Persons in clauses (i) through (xi), all Related Parties. Notwithstanding the foregoing, any Person that opts out of the releases set forth in section 10.6(b) of the Plan shall not be deemed a Released Party thereunder.

*"Releasing Parties"* means collectively, and in each case solely in their capacity as such, (i) the Debtors; (ii) the Reorganized Debtors; (iii) with respect to each of the foregoing Persons in clauses (i) through (ii), all Related Parties; (iv) the Released Parties; (v) the Holders of all Claims or Interests that vote to accept the Plan; (vi) the Holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but that do not vote either to accept or to reject the Plan and do not opt out of granting the releases set forth in the Plan; (vii) the Holders of all Claims or Interests that vote, or are deemed, to reject the Plan or that are presumed to accept the Plan but do not opt out of granting the releases set forth in the Plan; and (viii) the Holders of all Claims and Interests and all Other Beneficial Owners that were given notice of the opportunity to opt out of granting the releases set forth in the Plan but did not opt out.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

**PLEASE READ THE ATTACHED VOTING INFORMATION
AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT**

---

**PLEASE COMPLETE ITEMS 1, 2, 3, 4, AND 5.  IF THIS BALLOT HAS NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE VALID OR COUNTED AS HAVING BEEN CAST.**

---

**Item 1.        Principal Amount of Claims**.  The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the Holder (or authorized signatory of such a Holder) of a Secured Mortgage Claim in the aggregate amount of unpaid principal set forth below.

$$\$\rule{3cm}{0.4pt}$$

**Item 2.        Votes on the Plan**.  Please vote either to accept or to reject the Plan with respect to your Claims below.  Any Ballot not marked either to accept or reject the Plan, or marked both to accept and reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

---

**Prior to voting on the Plan, please note the following:**

**If you (i) vote to accept the Plan, (ii) do not vote either to accept or reject the Plan and do not check the box in Item 4 below, or (iii) vote to reject the Plan and do not check the box in Item 4 below, in each case you shall be deemed to have consented to the release provisions set forth in Section 10.6(b) of the Plan.**

**The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation provisions.**

---

The undersigned Holder of a Class 6 Secured Mortgage Claim votes to (check <u>one</u> box):

☐ **Accept** the Plan        ☐ **Reject** the Plan.

<u>**Your vote on the Plan will be applied to each applicable Debtor in the same manner and in the same amount as indicated in Item 1 and Item 2 above.**</u>

**Item 3.        Optional Alternative Election Option**.  In lieu of the Default Mortgage Treatment, you may elect to receive the Mortgage Treatment Election.  If you do not elect the Mortgage Treatment Election, you will receive the Default Mortgage Treatment.

The undersigned Holder of a Class 6 Secured Mortgage Claim elects:

☐ **Accept** Mortgage Treatment Election in lieu of the Default Mortgage Treatment

**Item 4.        Optional Opt Out Release Election**.  Check the box below if you elect not to grant the releases contained in Section 10.6(b) of the Plan.  If you voted to reject the Plan in Item 2 above, or if you are abstaining from voting to accept or reject the Plan, check this box if you elect

not to grant the releases contained in Section 10.6(b) of the Plan. Election to withhold consent is at your option. If you voted to accept the Plan in Item 2 above, you **may not** complete this Item 4, and if you complete this Item 4, your "opt out" election will be ineffective. If you submit a rejecting Ballot, or if you abstain from submitting a Ballot, and in each case, you do not check the box below, you will be deemed to consent to the releases contained in Section 10.6(b) of the Plan to the fullest extent permitted by applicable law. The Holder of the Class 6 Secured Mortgage Claims elects to:

☐ **OPT OUT** of the releases contained only in Section 10.6(b) of the Plan.

**Item 5.        Acknowledgements**. By signing this Ballot, the Holder (or authorized signatory of such Holder) acknowledges review and receipt of the Plan, the Disclosure Statement, and the other applicable solicitation materials, and certifies that (i) it has the power and authority to vote to accept or reject the Plan, (ii) it was the Holder (or is entitled to vote on behalf of such Holder) of the Secured Mortgage Claims described in Item 1 as of the Voting Record Date, and (iii) all authority conferred, or agreed to be conferred, pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned.

Name of Holder _____

Signature _____

If by Authorized Agent, Name and Title _____

Name of Institution _____

Street Address _____

City, State, Zip Code _____

Telephone Number _____

Date Completed _____

E-Mail Address _____

11

**VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT**

1.    Ballots received after the Voting Deadline (if the Voting Deadline has not been extended) may not, at the Debtors' discretion, be counted.  **The Voting Agent will tabulate all properly completed Ballots received on or before the Voting Deadline.**

2.    Complete the Ballot by providing all the information requested, signing, dating, and returning the Ballot to the Voting Agent.  Any Ballot that is illegible, contains insufficient information to identify the Holder, or is unsigned[3] will not be counted.  Ballots may not be submitted to the Voting Agent by facsimile or electronic mail.  If neither the "**accept**" nor "**reject**" box is checked in Item 2, both boxes are checked in Item 2, or the Ballot is otherwise not properly completed, executed, or timely returned, then the Ballot shall not be counted in determining acceptance or rejection of the Plan.

3.    You must vote all your Claims within a single Class under the Plan either to accept or reject the Plan. Accordingly, if you return more than one Ballot voting different or inconsistent Claims within a single Class under the Plan, the Ballots are not voted in the same manner, and you do not correct this before the Voting Deadline, those Ballots will not be counted. An otherwise properly executed Ballot that attempts to partially accept and partially reject the Plan likewise will not be counted.

4.    The Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or an assertion or admission of Claims.

5.    The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

6.    If you cast more than one Ballot voting the same Claims prior to the Voting Deadline, the latest received, properly executed Ballot submitted to the Voting Agent will supersede any prior Ballot.

7.    If (i) the Debtors revoke or withdraw the Plan, or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

8.    There may be changes made to the Plan that do not cause material adverse effects on an accepting Class.  If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

9.    NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT, ANY

---

[3] E-Ballots submitted on the Online Portal will be deemed to contain a legal, valid signature.

SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTORS, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

10.    PLEASE RETURN YOUR BALLOT PROMPTLY.

11.    IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT BY CALLING (949) 404-4152 (TOLL-FREE) OR +1 (888) 765-7875(IF CALLING FROM OUTSIDE THE U.S.); WRITING CORE SCIENTIFIC, INC., BALLOT PROCESSING CENTER, C/O STRETTO, INC., 410 EXCHANGE, SUITE 100, IRVINE, CA 92602; OR BY SENDING AN ELECTRONIC MAIL MESSAGE TO CORESCIENTIFICINQUIRIES@STRETTO.COM WITH "CORE SCIENTIFIC" IN THE SUBJECT LINE.   PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.

12.    THE VOTING AGENT IS NOT AUTHORIZED TO AND WILL NOT PROVIDE LEGAL ADVICE.

**PLEASE SUBMIT YOUR BALLOT BY ONLY <u>ONE</u> OF THE FOLLOWING METHODS:** (i) Online submission of an E-Ballot through the Online Portal, (ii) paper copy submission, in the return envelope provided, (iii) paper copy submission by hand delivery or overnight mail, or (iv) paper copy submission by first class mail.

**IF YOU WISH TO COORDINATE HAND DELIVERY OF YOUR BALLOT, PLEASE NOTIFY THE VOTING AGENT VIA E-MAIL AT CORESCIENTIFICINQUIRIES@STRETTO.COM (WITH "CORE SCIENTIFIC BALLOT" IN THE SUBJECT LINE) AT LEAST 24 HOURS IN ADVANCE OF THE ANTICIPATED DELIVERY DATE.**

**ALL BALLOTS MUST BE PROPERLY EXECUTED, COMPLETED, AND DELIVERED ACCORDING TO THE VOTING INSTRUCTIONS SO THAT THE BALLOTS ARE ACTUALLY RECEIVED BY THE VOTING AGENT NO LATER THAN THE VOTING DEADLINE.**

### <u>Online Portal Voting Instructions</u>

**To properly submit your Ballot electronically, you must electronically complete, sign, and return this customized electronic Ballot by utilizing the Online Portal platform on the Stretto website by visiting https://cases.stretto.com/CoreScientific/, clicking on the "Submit E-Ballot" link and following the instructions set forth on the website.  Your Ballot must be received by Stretto no later than December 13, 2023 at 5:00 p.m. (Prevailing Central Time), the Voting Deadline, unless such time is extended by the Debtors with the consent of the Requisite Consenting Creditors.  <u>HOLDERS ARE STRONGLY ENCOURAGED TO SUBMIT THEIR BALLOTS VIA THE ONLINE PORTAL PLATFORM</u>.  The Stretto "Online Portal" platform is the sole manner in which ballots will be accepted via electronic**

or online transmission.  Ballots submitted by facsimile, electronic mail, or other means of electronic transmission will not be counted.

**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized electronic Ballot:**

Unique E-Ballot ID#:  _____

Each E-Ballot ID# is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot.  Please complete and submit an E-Ballot for each E-Ballot ID# you receive, as applicable.  Ballots submitted by E-Ballot will be deemed to contain a legal, valid signature.

**Holders who cast a Ballot using Stretto's "Online Portal" platform should <u>NOT</u> also submit a paper Ballot.**

**THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS DECEMBER 13, 2023 AT 5:00 P.M. (PREVAILING CENTRAL TIME).**

<u>**Paper Copy Ballot Submission**</u>

| **STRETTO'S ADDRESS FOR RECEIPT OF PAPER BALLOTS (WHETHER BY HAND DELIVERY, OVERNIGHT MAIL, OR FIRST CLASS MAIL)** |
|:---:|
| **CORE SCIENTIFIC, INC.**<br>**BALLOT PROCESSING CENTER**<br>**C/O STRETTO, INC.**<br>**410 EXCHANGE, SUITE 100**<br>**IRVINE, CA 92602** |

If you are unable to use the Online Portal platform or need assistance in completing and submitting your Ballot, please contact Stretto (i) via e-mail at CoreScientificInquiries@stretto.com; (ii) via mail by writing Core Scientific, Inc., Ballot Processing Center, C/O Stretto, Inc., 410 Exchange, Suite 100, Irvine, CA 92602; or (iii) via telephone at (949) 404-4152 (Toll-Free) or +1 (888) 765-7875 (if calling from outside the U.S.).

**Exhibit 8**

**Form of Ballot for General Unsecured Claims (Class 8)**

No person has been authorized to give any information or advice, or to make any representation, other than what is included in the Disclosure Statement and other materials accompanying this Ballot.[1]

PLEASE NOTE THAT, EVEN IF YOU INTEND TO VOTE TO REJECT THE PLAN, YOU MUST STILL READ, COMPLETE, AND EXECUTE THIS ENTIRE BALLOT.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| CORE SCIENTIFIC, INC., *et al.*, | § | Case No. 22-90341 (CML) |
| | § | |
| Debtors[2] | § | (Jointly Administered) |
| | § | |

## BALLOT FOR VOTING TO ACCEPT OR REJECT THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF CORE SCIENTIFIC, INC. AND ITS AFFILIATED DEBTORS

### CLASS 8 (GENERAL UNSECURED CLAIMS)

IN ORDER FOR YOUR VOTE TO BE COUNTED TOWARD CONFIRMATION OF THE PLAN, THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS ACTUALLY RECEIVED BY THE VOTING AGENT ON OR BEFORE DECEMBER 13, 2023 AT 5:00 P.M. (PREVAILING CENTRAL TIME) (THE "VOTING DEADLINE"), UNLESS EXTENDED BY THE DEBTORS WITH THE CONSENT OF THE REQUISITE CONSENTING CREDITORS.

Core Scientific, Inc. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**") are soliciting votes with respect to the *Third Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors*, filed on November 16, 2023 (Docket No. 1438) (as may be modified, amended, or supplemented, the "**Plan**"). The Plan is attached as **Exhibit A** to the *Disclosure Statement for Third Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors*, filed on

---

[1]   All capitalized terms used but not defined herein or in the enclosed voting instructions have the meanings ascribed to them in the Plan, attached as Exhibit A to the Disclosure Statement.

[2]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions VII, LLC (3198). The Debtors' corporate headquarters is 210 Barton Springs Road, Suite 300, Austin, Texas 78704. The Debtors' service address is 2407 S. Congress Ave, Suite E-101, Austin, Texas 78704.

November 16, 2023 (Docket No. 1439) (as may be modified, amended, or supplemented, the "**Disclosure Statement**").

Please use this Ballot to cast your vote to accept or reject the Plan if you are, as of November 9, 2023 (the "**Voting Record Date**"), a Holder of a General Unsecured Claim (including, for the avoidance of doubt, a Miner Equipment Lender Deficiency Claim).

The Disclosure Statement provides information to assist you in deciding whether to accept or reject the Plan.  If you do not have the Disclosure Statement, you may obtain a copy from Stretto, Inc. (the "**Voting Agent**" or "**Stretto**") at no charge by accessing the Debtors' restructuring website at https://cases.stretto.com/CoreScientific.

If you have any questions on how to properly complete this Ballot, please contact the Voting Agent (i) by e-mail at CoreScientificInquiries@stretto.com, (ii) by writing to Core Scientific, Inc., Ballot Processing Center, c/o Stretto, Inc., 410 Exchange, Suite 100, Irvine, CA 92602, or (iii) via telephone at (949) 404-4152 (Toll-Free) or +1 (888) 765-7875 (if calling from outside the U.S.).  Please be advised that the Voting Agent cannot provide legal advice.  You may wish to seek legal advice concerning the Plan and the classification and treatment of your Class 8 General Unsecured Claim under the Plan.

---

**IMPORTANT NOTICE REGARDING TREATMENT FOR GENERAL UNSECURED CLAIMS IN CLASS 8**

As described in more detail in the Disclosure Statement, if the Plan is confirmed and the Effective Date occurs, except to the extent that a Holder of an Allowed General Unsecured Claim agrees to a less favorable treatment of such Claim, each such Holder shall receive, in full and final satisfaction, settlement, release, and discharge of such Claim, on the later of (a) the Effective Date or as soon as reasonably practicable thereafter and (b) the first Business Day after the date that is thirty (30) calendar days after the date such General Unsecured Claim becomes an Allowed General Unsecured Claim, New Common Interests with a value, based on Plan Value, equal to one-hundred percent (100%) of such Holder's Allowed General Unsecured Claim.

For purposes of section **Error! Reference source not found.** of the Plan, the Allowed amount of any General Unsecured Claim shall include all interest accrued from the Petition Date through the date of distribution at the Federal Judgment Rate.

For the avoidance of doubt, the Allowed Miner Equipment Lender Deficiency Claim of each Holder of a Miner Equipment Lender Secured Claim shall be treated as an Allowed General Unsecured Claim under the Plan; *provided*, that any Holder electing Miner Equipment Lender Treatment Election 2 on its Class 3 Ballot shall waive its recovery on account of its Allowed Miner Equipment Lender Deficiency Claim.

**PLEASE READ THE DISCLOSURE STATEMENT AND PLAN FOR MORE DETAILS.**

---

The Plan can be confirmed by the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") and thereby made binding on you if it is accepted by the holders of (i) at least two-thirds in amount of the Allowed Claims or Interests voted in each Impaired Class, and (ii) if the Impaired Class is a class of Claims, more than one-half in number of the Allowed Claims voted in each Impaired Class, and if the Plan otherwise satisfies the applicable requirements of section 1129(a) under the Bankruptcy Code. If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (y) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan and (z) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code. If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan. To have your vote counted, you must complete, sign, and return this Ballot to the Voting Agent by the Voting Deadline.

Your receipt of this Ballot does not indicate that your Claim(s) has been or will be Allowed. This Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance or disallowance of, or distribution on account of, Class 8 General Unsecured Claims. You must provide all of the information requested by this Ballot. Failure to do so may result in the disqualification of your vote.

### NOTICE REGARDING CERTAIN RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS IN PLAN

**If you (i) vote to accept the Plan, (ii) are solicited to vote to accept or reject the Plan, but do not vote to either accept or reject the Plan, and do not opt out of granting the releases set forth in the Plan, (iii) vote, or are deemed, to reject the Plan or are presumed to accept the Plan but do not opt out of granting the releases set forth in the Plan, or (iv) were given notice of the opportunity to opt out of granting the releases contained in the Plan but do not opt out, you shall be deemed to have consented to the releases contained in Section 10.6(b) of the Plan. The releases as presented in the Plan are provided below:**

**SECTION 10.5      INJUNCTION.**

**Except as otherwise expressly provided in the Plan or for distributions required to be paid or delivered pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold Claims or Interests that have been released pursuant to Section 0 or Section 0, shall be discharged pursuant to Section Error! Reference source not found. of the Plan, or are subject to exculpation pursuant to Section Error! Reference source not found., and all Subcontractors and all other parties in interest are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Released Parties, and/or the Exculpated Parties (to the extent of the exculpation provided pursuant to Section Error! Reference source not found. with respect to the Exculpated Parties): (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (iii) creating, perfecting, or enforcing any Lien or encumbrance of any kind**

against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless (x) such Entity has timely asserted such setoff right either in a Filed Proof of Claim, or in another document Filed with the Bankruptcy Court explicitly preserving such setoff or that otherwise indicates that such entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise or (y) such right to setoff arises under a postpetition agreement with the Debtors or an Executory Contract that has been assumed by the Debtors as of the Effective Date; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released, settled, and/or treated, entitled to a distribution, or cancelled pursuant to the Plan or otherwise Disallowed; *provided* that such persons who have held, hold, or may hold Claims against, or Interests in, a Debtor, a Reorganized Debtor, or an Estate shall not be precluded from exercising their rights and remedies, or obtaining the benefits, solely pursuant to and consistent with the terms of the Plan.

Subject in all respects to Section Error! Reference source not found., no entity or person may commence or pursue a Claim or Cause of Action of any kind against any Released Party or Exculpated Party that arose or arises from, in whole or in part, the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors (which includes, for the avoidance of doubt, all claims and Causes of Action asserted or assertable in the Securities Class Action), the DIP Facility, the Convertible Notes Agreements, the Miner Equipment Lender Agreements, the Mortgage Agreements, the General Contracts, any and all agreements relating to M&M Liens, and any and all related agreements, instruments, and/or other documents, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Plan Settlements, the New Secured Convertible Notes Documents, the New Secured Notes Documents, the Contingent Payment Obligations Documents, the New Miner Equipment Lender Debt Documents, the Exit Facility Documents, the New Warrants Agreement, the Rights Offering, the Backstop Commitment Letter, the Initial DIP Loan Documents, the DIP Facility, the Terminated RSA, the RSA, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan (including, but not limited to, the New Common Interests), or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a claim of willful misconduct, fraud or gross negligence

against a Released Party or Exculpated Party and (ii) specifically authorizing such Entity or Person to bring such Claim or Cause of Action against any such Released Party or Exculpated Party. The Bankruptcy Court shall have sole and exclusive jurisdiction to determine whether a Claim or Cause of Action is colorable and, only to the extent legally permissible and as provided for in Section Error! Reference source not found., shall have jurisdiction to adjudicate the underlying colorable Claim or Cause of Action.

**SECTION 10.6(a)   RELEASES BY THE DEBTORS.**

Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the obligations of the Debtors under the Plan and the contributions of the Released Parties to facilitate and implement the Plan, except as otherwise provided in the Plan or in the Confirmation Order, on and after the Effective Date, the Released Parties are deemed conclusively, absolutely, unconditionally and irrevocably, released and discharged by the Debtors, the Reorganized Debtors, and the Estates from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Reorganized Debtors, the Estates, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors (which includes, for the avoidance of doubt, all claims and Causes of Action asserted or assertable in the Securities Class Action), the DIP Facility, the Convertible Notes Agreements, the Miner Equipment Lender Agreements, the Mortgage Agreements, the General Contracts, any and all agreements relating to M&M Liens, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Plan Settlements, the New Secured Convertible Notes Documents, the New Secured Notes Documents, the Contingent Payment Obligations Documents, the New Miner Equipment Lender Debt Documents, the Exit Facility Documents, the New Warrants Agreement, the Rights Offering, the Backstop Commitment Letter, the Initial DIP Loan Documents, the DIP Facility, the Terminated RSA, the RSA, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan (including, but not limited to, the New Common Interests), or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth in Section 0 of the Plan (i) shall only be

5

applicable to the maximum extent permitted by law; (ii) shall not be construed as (a) releasing any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud (*provided* that actual fraud shall not exempt from the scope of these Debtor releases any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, (b) releasing any Released Party from Claims or Causes of Action held by the Debtors arising from an act or omission that is determined by a Final Order or by a federal government agency to have constituted a violation of any federal securities laws or (c) releasing any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

**SECTION 10.6(b)      RELEASES BY HOLDERS OF CLAIMS AND INTERESTS.**

Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, except as otherwise provided in the Plan or in the Confirmation Order, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, each Releasing Party, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released, and discharged the Debtors, the Reorganized Debtors, and the Released Parties from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims or Causes of Action asserted or that may be asserted on behalf of the Debtors or their Estates, that such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, including any Claims or Causes of Action based on or relating to, or in any manner arising from, in whole or in part, the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors (which includes, for the avoidance of doubt, all claims and Causes of Action asserted or assertable in the Securities Class Action), the DIP Facility, the Convertible Notes Agreements, the Miner Equipment Lender Agreements, the Mortgage Agreements, the General Contracts, any and all agreements relating to M&M Liens, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Plan Settlements, the New Secured Convertible Notes Documents, the New Secured Notes Documents, the Contingent Payment Obligations Documents, the New Miner Equipment

Lender Debt Documents, the Exit Facility Documents, the New Warrants Agreement, the Rights Offering, the Backstop Commitment Letter, the Initial DIP Loan Documents, the DIP Facility, the Terminated RSA, the RSA, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan (including, but not limited to, the New Common Interests), or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth in Section 0 of the Plan (i) shall only be applicable to the maximum extent permitted by law; and (ii) shall not be construed as (a) releasing any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud (*provided* that actual fraud shall not exempt from the scope of these third-party releases any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, or (b) releasing any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

## SECTION 10.7 EXCULPATION.

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out, in whole or in part, from the Petition Date through the Effective Date, of the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors, the DIP Facility, the Convertible Notes Agreements, the Miner Equipment Lender Agreements, the Mortgage Agreements, the General Contracts, any and all agreements relating to M&M Liens, and related agreements, instruments, or other documents, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Plan Settlements, the New Secured Convertible Notes Documents, the New Secured Notes Documents, the Contingent Payment Obligations Documents, the New Miner Equipment Lender Debt Documents, the Exit Facility Documents, the New Warrants Agreement, the Rights Offering, the Backstop Commitment Letter, the Initial DIP Loan Documents, the DIP Facility, the Terminated RSA, the RSA, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan (including, but not limited to, the New Common Interests), or the distribution of property under the Plan, or any other related agreement, except for

Claims or Causes of Action arising from an act or omission that is judicially determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects, such Exculpated Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities.  The Exculpated Parties have, and upon completion of the Plan, shall be deemed to have, participated in good faith and in compliance with all applicable laws with regard to the solicitation and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.  Notwithstanding anything to the contrary in the foregoing, the exculpations set forth in Section **Error! Reference source not found.** of the Plan (i) shall only be applicable to the maximum extent permitted by law; and (ii) shall not be construed as (a) exculpating any Exculpated Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud (*provided* that actual fraud shall not exempt from the scope of these exculpations any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, or (b) exculpating any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

## SECTION 5.17     <u>CANCELLATION OF LIENS.</u>

(a)     Except as otherwise specifically provided in the Plan, including sections **Error! Reference source not found.** and **Error! Reference source not found.** of the Plan, all notes, instruments, certificates evidencing debt of the Debtors and Existing Common Interests will be cancelled and obligations of the Debtors thereunder will be discharged and of no further force or effect, except for the purpose of allowing the applicable agents and trustees to receive distributions from the Debtors under the Plan and to make any further distributions to the applicable Holders on account of their Allowed Claims and Interests.

(b)     After the Effective Date and following (i) the distributions to Holders on account of Allowed Convertible Notes Secured Claims and Allowed Miner Equipment Lender Secured Claims and/or (ii) with regard to Allowed M&M Lien Secured Claims, satisfaction of the applicable M&M Lien Takeback Debt, the Debtors or the Reorganized Debtors, at their expense, may, in their sole discretion, take any action necessary to terminate, cancel, extinguish, and/or evidence the release of any and all mortgages, deeds of trust, Liens, pledges, and other security interests with respect to the Convertible Notes Secured Claims, Miner Equipment Lender Secured Claims, and M&M Lien Secured Claims, including, without limitation, the preparation and filing of any and all documents necessary to terminate, satisfy, or release any mortgages, deeds of trust, Liens, pledges, and other security interests held by the Holders of the M&M Lien Secured Claims, Miner Equipment Lender Secured Claims, the Notes Agent, and/or Convertible Noteholders, including, without limitation, UCC-3 termination statements.

8

**Relevant Definitions Related to Release and Exculpation Provisions**:

       ***"Exculpated Parties"*** means each of the following in their capacity as such and, in each case, to the maximum extent permitted by law: (i) the Debtors; and (ii) Equity Committee and its members, each solely in their capacity as such.

       ***"Related Parties"*** means with respect to a Person, that Person's current and former Affiliates, and such Person's and its current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, fiduciaries, trustees, advisory board members, financial advisors, partners, limited partners, general partners, attorneys, accountants, managed accounts or funds, management companies, fund advisors, investment bankers, consultants, representatives, and other professionals, and such Person's respective heirs, executors, estates, and nominees, each in their capacity as such, and any and all other Persons or Entities that may purport to assert any Cause of Action derivatively, by or through the foregoing entities.

       ***"Released Parties"*** means, collectively: (i) the Debtors; (ii) the Reorganized Debtors; (iii) the Equity Committee and its members that are party to the RSA, solely in their capacities as such; (iv) the Backstop Parties; (v) the Settling Miner Equipment Lenders; (vi) Brown Corporation; (vii) Holliwood LLC; (viii) the Ad Hoc Noteholder Group; (ix) the Consenting Creditors; (x) the Exit Lenders; (xi) the Notes Agent, solely in its capacity as such; and (xii) with respect to each of the foregoing Persons in clauses (i) through (xi), all Related Parties. Notwithstanding the foregoing, any Person that opts out of the releases set forth in section 10.6(b) of the Plan shall not be deemed a Released Party thereunder.

       ***"Releasing Parties"*** means collectively, and in each case solely in their capacity as such, (i) the Debtors; (ii) the Reorganized Debtors; (iii) with respect to each of the foregoing Persons in clauses (i) through (ii), all Related Parties; (iv) the Released Parties; (v) the Holders of all Claims or Interests that vote to accept the Plan; (vi) the Holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but that do not vote either to accept or to reject the Plan and do not opt out of granting the releases set forth in the Plan; (vii) the Holders of all Claims or Interests that vote, or are deemed, to reject the Plan or that are presumed to accept the Plan but do not opt out of granting the releases set forth in the Plan; and (viii) the Holders of all Claims and Interests and all Other Beneficial Owners that were given notice of the opportunity to opt out of granting the releases set forth in the Plan but did not opt out.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

**PLEASE READ THE ATTACHED VOTING INFORMATION
AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT**

---

**PLEASE COMPLETE ITEMS 1, 2, 3, 4 (FOR HOLDERS OF MINER EQUIPMENT LENDER DEFICIENCY CLAIMS ONLY), AND 5.  IF THIS BALLOT HAS NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE VALID OR COUNTED AS HAVING BEEN CAST.**

---

**Item 1.**        **Principal Amount of Claims**. The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the Holder (or authorized signatory of such a Holder) of a General Unsecured Claim in the aggregate unpaid principal amount set forth below.

> **$**

**Item 2.**        **Votes on the Plan**.  Please vote either to accept or to reject the Plan with respect to your Claims below.  Any Ballot not marked either to accept or reject the Plan, or marked both to accept and reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

---

**Prior to voting on the Plan, please note the following:**

**If you (i) vote to accept the Plan, (ii) do not vote either to accept or reject the Plan and do not check the box in Item 3 below, or (iii) vote to reject the Plan and do not check the box in Item 3 below, in each case you shall be deemed to have consented to the release provisions set forth in Section 10.6(b) of the Plan.**

**Please see Section I(D) of the Disclosure Statement for the recommendations of the Creditors' Committee and the Debtors concerning the Plan.**

**The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation provisions.**

---

The undersigned Holder of a Class 8 General Unsecured Claim votes to (check <u>one</u> box):

☐ **Accept** the Plan          ☐ **Reject** the Plan.

<u>**Your vote on the Plan will be applied to each applicable Debtor in the same manner and in the same amount as indicated in Item 1 and Item 2 above.**</u>

**Item 3.**        **Optional Opt Out Release Election**.  Check the box below if you elect not to grant the releases contained in section 10.6(b) of the Plan.  If you voted to reject the Plan in Item 2 above, or if you are abstaining from voting to accept or reject the Plan, check this box if you elect not to grant the releases contained in Section 10.6(b) of the Plan.  Election to withhold consent is at your option.  If you voted to accept the Plan in Item 2 above, you **may not** complete this Item 3, and if you complete this Item 3, your "opt out" election will be ineffective.  If you submit a

rejecting Ballot, or if you abstain from submitting a Ballot, and in each case, you do not check the box below, you will be deemed to consent to the releases contained in Section 10.6(b) of the Plan to the fullest extent permitted by applicable law.  The Holder of the Class 8 General Unsecured Claim set forth in Item 1 elects to:

☐ **OPT OUT** of the releases contained only in Section 10.6(b) of the Plan.

---

**\*\*\* For Holders of Miner Equipment Lender Deficiency Claims Only \*\*\***

**Item 4.        Acknowledgement of Class 3 Elections**.  By checking the box below, the Holder acknowledges that it has also received a Class 3 Ballot and further acknowledges that the election (or lack thereof) such Holder makes on this Class 3 Ballot may affect the recovery such Holder receives on account of their Class 8 Claims.  The Holder further acknowledges that if the Holder elected Miner Equipment Lender Treatment Election 2 on its Class 3 Ballot, it will not be entitled to vote any portion of its Miner Equipment Lender Deficiency Claim on its Class 8 Ballot, and any Class 8 Ballot submitted shall be discarded.

☐ **I Acknowledge that the election made on my Class 3 Ballot, or if I make no election on my Class 3 Ballot, may affect my recovery on account of my Class 8 Claims.   I further acknowledge that if I elected Miner Equipment Lender Treatment Election 2 on my Class 3 Ballot, I am not entitled to vote any portion of my Miner Equipment Lender Deficiency Claim on my Class 8 Ballot, and if I submit a Class 8 Ballot it will be discarded.**

---

**Item 5.        Acknowledgements**.  By signing this Ballot, the Holder (or authorized signatory of such Holder) acknowledges receipt and review of the Plan, the Disclosure Statement, and the other applicable solicitation materials, and certifies that (i) it has the power and authority to vote to accept or reject the Plan, (ii) it was the Holder (or is entitled to vote on behalf of such Holder) of the General Unsecured Claim described in Item 1 as of the Voting Record Date, and (iii) all authority conferred, or agreed to be conferred, pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned.

Name of Holder _____

Signature _____

If by Authorized Agent, Name and Title _____

Name of Institution _____

Street Address _____

City, State, Zip Code _____

Telephone Number _____

Date Completed _____

E-Mail Address _____

**VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT**

1.   Ballots received after the Voting Deadline (if the Voting Deadline has not been extended) may not, at the Debtors' discretion, be counted.  **The Voting Agent will tabulate all properly completed Ballots received on or before the Voting Deadline.**

2.   Complete the Ballot by providing all the information requested, signing, dating, and returning the Ballot to the Voting Agent.  Any Ballot that is illegible, contains insufficient information to identify the Holder, or is unsigned[3] will not be counted.  Ballots may not be submitted to the Voting Agent by facsimile or electronic mail.  If neither the "**accept**" nor "**reject**" box is checked in Item 2, both boxes are checked in Item 2, or the Ballot is otherwise not properly completed, executed, or timely returned, then the Ballot shall not be counted in determining acceptance or rejection of the Plan.

3.   You must vote all your Claims within a single Class under the Plan either to accept or reject the Plan.  Accordingly, if you return more than one Ballot voting different or inconsistent Claims within a single Class under the Plan, the Ballots are not voted in the same manner, and you do not correct this before the Voting Deadline, those Ballots will not be counted.  An otherwise properly executed Ballot that attempts to partially accept and partially reject the Plan likewise will not be counted.

4.   The Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or an assertion or admission of Claims.

5.   The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

6.   If you cast more than one Ballot voting the same Claims prior to the Voting Deadline, the latest received, properly executed Ballot submitted to the Voting Agent will supersede any prior Ballot.

7.   If (i) the Debtors revoke or withdraw the Plan, or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

---

[3] E-Ballots submitted on the Online Portal will be deemed to contain a legal, valid signature.

8.      There may be changes made to the Plan that do not cause material adverse effects on an accepting Class.  If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

9.      NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT, ANY SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTORS, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

10.     PLEASE RETURN YOUR BALLOT PROMPTLY.

11.     IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT BY CALLING (949) 404-4152 (TOLL-FREE) OR +1 (888) 765-7875(IF CALLING FROM OUTSIDE THE U.S.); WRITING CORE SCIENTIFIC, INC., BALLOT PROCESSING CENTER, C/O STRETTO, INC., 410 EXCHANGE, SUITE 100, IRVINE, CA 92602; OR BY SENDING AN ELECTRONIC MAIL MESSAGE TO CORESCIENTIFICINQUIRIES@STRETTO.COM WITH "CORE SCIENTIFIC" IN THE SUBJECT LINE.  PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.

12.     THE VOTING AGENT IS NOT AUTHORIZED TO AND WILL NOT PROVIDE LEGAL ADVICE.

**PLEASE SUBMIT YOUR BALLOT BY ONLY <u>ONE</u> OF THE FOLLOWING METHODS:** (i) Online submission of an E-Ballot, (ii) paper copy submission, in the return envelope provided, (iii) paper copy submission by hand delivery or overnight mail, or (iv) paper copy submission by first class mail.

**IF YOU WISH TO COORDINATE HAND DELIVERY OF YOUR BALLOT, PLEASE NOTIFY THE VOTING AGENT VIA E-MAIL AT CORESCIENTIFICINQUIRIES@STRETTO.COM (WITH "CORE SCIENTIFIC BALLOT" IN THE SUBJECT LINE) AT LEAST 24 HOURS IN ADVANCE OF THE ANTICIPATED DELIVERY DATE.**

**ALL BALLOTS MUST BE PROPERLY EXECUTED, COMPLETED, AND DELIVERED ACCORDING TO THE VOTING INSTRUCTIONS SO THAT THE BALLOTS ARE ACTUALLY RECEIVED BY THE VOTING AGENT NO LATER THAN THE VOTING DEADLINE.**

<u>**Online Portal Voting Instructions**</u>

**To properly submit your Ballot electronically, you must electronically complete, sign, and return this customized electronic Ballot by utilizing the Online Portal platform on the Stretto**

13

website by visiting **https://cases.stretto.com/CoreScientific/**, clicking on the "Submit E-Ballot" link and following the instructions set forth on the website. **Your Ballot must be received by Stretto no later than December 13, 2023 at 5:00 p.m. (Prevailing Central Time), the Voting Deadline, unless such time is extended by the Debtors with the consent of the Requisite Consenting Creditors.  <u>HOLDERS ARE STRONGLY ENCOURAGED TO SUBMIT THEIR BALLOTS VIA THE ONLINE PORTAL PLATFORM.</u>  The Stretto "Online Portal" platform is the sole manner in which ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile, electronic mail, or other means of electronic transmission will not be counted.**

**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized electronic Ballot:**

**Unique E-Ballot ID#:  _____**

Each E-Ballot ID# is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot.  Please complete and submit an E-Ballot for each E-Ballot ID# you receive, as applicable.  Ballots submitted by E-Ballot will be deemed to contain a legal, valid signature.

**Holders who cast a Ballot using Stretto's "Online Portal" platform should <u>NOT</u> also submit a paper Ballot.**

**THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS DECEMBER 13, 2023 AT 5:00 P.M. (PREVAILING CENTRAL TIME).**

<div align="center">

**<u>Paper Copy Ballot Submission</u>**

</div>

| **STRETTO'S ADDRESS FOR RECEIPT OF PAPER BALLOTS (WHETHER BY HAND DELIVERY, OVERNIGHT MAIL, OR FIRST CLASS MAIL)** |
| :---: |
| **CORE SCIENTIFIC, INC.**<br>**BALLOT PROCESSING CENTER**<br>**C/O STRETTO, INC.**<br>**410 EXCHANGE, SUITE 100**<br>**IRVINE, CA 92602** |

If you are unable to use the Online Portal platform or need assistance in completing and submitting your Ballot, please contact Stretto (i) via e-mail at CoreScientificInquiries@stretto.com; (ii) via mail by writing Core Scientific, Inc., Ballot Processing Center, C/O Stretto, Inc., 410 Exchange, Suite 100, Irvine, CA 92602; or (iii) via telephone at (949) 404-4152 (Toll-Free) or +1 (888) 765-7875 (if calling from outside the U.S.).
.

**Exhibit 9**

**Form of Ballot for Section 510(b) Claims (Class 11)**

No person has been authorized to give any information or advice, or to make any representation, other than what is included in the Disclosure Statement and other materials accompanying this Ballot.[1]

PLEASE NOTE THAT, EVEN IF YOU INTEND TO VOTE TO REJECT THE PLAN, YOU MUST STILL READ, COMPLETE, AND EXECUTE THIS ENTIRE BALLOT.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| **CORE SCIENTIFIC, INC.,** *et al.,* | § | Case No. 22-90341 (CML) |
| | § | |
| Debtors[2] | § | (Jointly Administered) |
| | § | |

**BALLOT FOR VOTING TO ACCEPT OR REJECT THE THIRD AMENDED JOINT**
**CHAPTER 11 PLAN OF CORE SCIENTIFIC, INC. AND ITS AFFILIATED DEBTORS**

**CLASS 11 (SECTION 510(B) CLAIMS)**

> **IN ORDER FOR YOUR VOTE TO BE COUNTED TOWARD CONFIRMATION OF THE PLAN, THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS <u>ACTUALLY RECEIVED</u> BY THE VOTING AGENT ON OR BEFORE DECEMBER 13, 2023 AT 5:00 P.M. (PREVAILING CENTRAL TIME) (THE "<u>VOTING DEADLINE</u>"), UNLESS EXTENDED BY THE DEBTORS WITH THE CONSENT OF THE REQUISITE CONSENTING CREDITORS.**

Core Scientific, Inc. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**") are soliciting votes with respect to the *Third Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors*, filed on November 16, 2023 (Docket No. 1438) (as may be modified, amended, or supplemented, the "**Plan**"). The Plan is attached as **<u>Exhibit A</u>** to the *Disclosure Statement for Third Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors*, filed on

---

[1] All capitalized terms used but not defined herein or in the enclosed voting instructions have the meanings ascribed to them in the Plan, attached as <u>Exhibit A</u> to the Disclosure Statement.

[2] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions VII, LLC (3198). The Debtors' corporate headquarters is 210 Barton Springs Road, Suite 300, Austin, Texas 78704. The Debtors' service address is 2407 S. Congress Ave, Suite E-101, Austin, Texas 78704.

November 16, 2023 (Docket No. 1439) (as may be modified, amended, or supplemented, the "**Disclosure Statement**").

Please use this Ballot to cast your vote to accept or reject the Plan if you are, as of November 9, 2023 (the "**Voting Record Date**"), a Holder of a Section 510(b) Claim.

The Disclosure Statement provides information to assist you in deciding whether to accept or reject the Plan.  If you do not have the Disclosure Statement, you may obtain a copy from Stretto, Inc. (the "**Voting Agent**" or "**Stretto**") at no charge by accessing the Debtors' restructuring website at https://cases.stretto.com/CoreScientific.

If you have any questions on how to properly complete this Ballot, please contact the Voting Agent (i) by e-mail at CoreScientificInquiries@stretto.com, (ii) by writing to Core Scientific, Inc., Ballot Processing Center, c/o Stretto, Inc., 410 Exchange, Suite 100, Irvine, CA 92602, or (iii) via telephone at (949) 404-4152 (Toll-Free) or +1 (888) 765-7875 (if calling from outside the U.S.).  Please be advised that the Voting Agent cannot provide legal advice.  You may wish to seek legal advice concerning the Plan and the classification and treatment of your Class 11 Section 510(b) Claim under the Plan.

---

**IMPORTANT NOTICE REGARDING TREATMENT FOR SECTION 510(B) CLAIMS IN CLASS 11**

As described in more detail in the Disclosure Statement, if the Plan is confirmed and the Effective Date occurs, except to the extent that a Holder of an Allowed Section 510(b) Claim agrees to a less favorable treatment of such Claim, each such Holder shall receive, in full and final satisfaction, settlement, release, and discharge of such Claim, on the Effective Date, or as soon as reasonably practicable thereafter, (i) such Holder's Pro Rata Equity Share of the Residual Equity Pool, (ii) such Holder's Pro Rata Equity Share of New Warrants, and (iii) in lieu of the right to participate in the Rights Offering, either Cash, New Common Interests, New Warrants, or some combination thereof, at the option of the Debtors or Reorganized Debtors, as applicable, in an amount equal to the value (if New Common Interests, at Plan Value) of the Subscription Rights that would have been distributable to such Holder if Subscription Rights were distributed to Holders in Class 11.

**PLEASE READ THE DISCLOSURE STATEMENT AND PLAN FOR MORE DETAILS.**

---

The Plan can be confirmed by the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") and thereby made binding on you if it is accepted by the Holders of (i) at least two-thirds in amount of the Allowed Claims or Interests voted in each Impaired Class, and (ii) if the Impaired Class is a Class of Claims, more than one-half in number of the Allowed Claims voted in each Impaired Class, and if the Plan otherwise satisfies the applicable requirements of section 1129(a) under the Bankruptcy Code.  If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (y) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan, and (z) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.  If the Plan is confirmed by the Bankruptcy Court, it will be

binding on you whether or not you vote or if you vote to reject the Plan. To have your vote counted, you must complete, sign, and return this Ballot to the Voting Agent by the Voting Deadline.

Your receipt of this Ballot does not indicate that your Claim(s) has been or will be Allowed. This Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance or disallowance of, or distribution on account of, Class 11 Section 510(b) Claims. You must provide all of the information requested by this Ballot. Failure to do so may result in the disqualification of your vote.

### NOTICE REGARDING CERTAIN RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS IN PLAN

**If you (i) vote to accept the Plan, (ii) are solicited to vote to accept or reject the Plan, but do not vote to either accept or reject the Plan, and do not opt out of granting the releases set forth in the Plan, (iii) vote, or are deemed, to reject the Plan or are presumed to accept the Plan but do not opt out of granting the releases set forth in the Plan, or (iv) were given notice of the opportunity to opt out of granting the releases contained in the Plan but do not opt out, you shall be deemed to have consented to the releases contained in Section 10.6(b) of the Plan. The releases as presented in the Plan are provided below:**

**SECTION 10.5      INJUNCTION.**

**Except as otherwise expressly provided in the Plan or for distributions required to be paid or delivered pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold Claims or Interests that have been released pursuant to Section 0 or Section 0, shall be discharged pursuant to Section Error! Reference source not found. of the Plan, or are subject to exculpation pursuant to Section Error! Reference source not found., and all Subcontractors and all other parties in interest are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Released Parties, and/or the Exculpated Parties (to the extent of the exculpation provided pursuant to Section Error! Reference source not found. with respect to the Exculpated Parties): (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (iii) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless (x) such Entity has timely asserted such setoff right either in a Filed Proof of Claim, or in another document Filed with the Bankruptcy Court explicitly preserving such setoff or that otherwise indicates that such entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise or (y) such right to setoff arises under a postpetition agreement with the Debtors or an Executory Contract that has been assumed by the Debtors as of the Effective Date; and (v) commencing**

or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released, settled, and/or treated, entitled to a distribution, or cancelled pursuant to the Plan or otherwise Disallowed; *provided* that such persons who have held, hold, or may hold Claims against, or Interests in, a Debtor, a Reorganized Debtor, or an Estate shall not be precluded from exercising their rights and remedies, or obtaining the benefits, solely pursuant to and consistent with the terms of the Plan.

Subject in all respects to Section Error! Reference source not found., no entity or person may commence or pursue a Claim or Cause of Action of any kind against any Released Party or Exculpated Party that arose or arises from, in whole or in part, the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors (which includes, for the avoidance of doubt, all claims and Causes of Action asserted or assertable in the Securities Class Action), the DIP Facility, the Convertible Notes Agreements, the Miner Equipment Lender Agreements, the Mortgage Agreements, the General Contracts, any and all agreements relating to M&M Liens, and any and all related agreements, instruments, and/or other documents, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Plan Settlements, the New Secured Convertible Notes Documents, the New Secured Notes Documents, the Contingent Payment Obligations Documents, the New Miner Equipment Lender Debt Documents, the Exit Facility Documents, the New Warrants Agreement, the Rights Offering, the Backstop Commitment Letter, the Initial DIP Loan Documents, the DIP Facility, the Terminated RSA, the RSA, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan (including, but not limited to, the New Common Interests), or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a claim of willful misconduct, fraud or gross negligence against a Released Party or Exculpated Party and (ii) specifically authorizing such Entity or Person to bring such Claim or Cause of Action against any such Released Party or Exculpated Party. The Bankruptcy Court shall have sole and exclusive jurisdiction to determine whether a Claim or Cause of Action is colorable and, only to the extent legally permissible and as provided for in Section Error! Reference source not found., shall have jurisdiction to adjudicate the underlying colorable Claim or Cause of Action.

**SECTION 10.6(a)     RELEASES BY THE DEBTORS.**

Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the obligations of the Debtors under the Plan and the contributions of the Released Parties to facilitate and implement the Plan, except as otherwise provided in the Plan or in the Confirmation Order, on and after the Effective Date, the Released Parties are deemed conclusively, absolutely, unconditionally and irrevocably, released and discharged by the Debtors, the Reorganized Debtors, and the Estates from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Reorganized Debtors, the Estates, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors (which includes, for the avoidance of doubt, all claims and Causes of Action asserted or assertable in the Securities Class Action), the DIP Facility, the Convertible Notes Agreements, the Miner Equipment Lender Agreements, the Mortgage Agreements, the General Contracts, any and all agreements relating to M&M Liens, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Plan Settlements, the New Secured Convertible Notes Documents, the New Secured Notes Documents, the Contingent Payment Obligations Documents, the New Miner Equipment Lender Debt Documents, the Exit Facility Documents, the New Warrants Agreement, the Rights Offering, the Backstop Commitment Letter, the Initial DIP Loan Documents, the DIP Facility, the Terminated RSA, the RSA, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan (including, but not limited to, the New Common Interests), or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth in Section 0 of the Plan (i) shall only be applicable to the maximum extent permitted by law; (ii) shall not be construed as (a) releasing any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud (*provided* that actual fraud shall not exempt from the scope of these Debtor releases any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, (b) releasing any Released Party from Claims or Causes of

Action held by the Debtors arising from an act or omission that is determined by a Final Order or by a federal government agency to have constituted a violation of any federal securities laws or (c) releasing any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

**SECTION 10.6(b)      <u>RELEASES BY HOLDERS OF CLAIMS AND INTERESTS</u>.**

Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, except as otherwise provided in the Plan or in the Confirmation Order, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, each Releasing Party, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released, and discharged the Debtors, the Reorganized Debtors, and the Released Parties from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims or Causes of Action asserted or that may be asserted on behalf of the Debtors or their Estates, that such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, including any Claims or Causes of Action based on or relating to, or in any manner arising from, in whole or in part, the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors (which includes, for the avoidance of doubt, all claims and Causes of Action asserted or assertable in the Securities Class Action), the DIP Facility, the Convertible Notes Agreements, the Miner Equipment Lender Agreements, the Mortgage Agreements, the General Contracts, any and all agreements relating to M&M Liens, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Plan Settlements, the New Secured Convertible Notes Documents, the New Secured Notes Documents, the Contingent Payment Obligations Documents, the New Miner Equipment Lender Debt Documents, the Exit Facility Documents, the New Warrants Agreement, the Rights Offering, the Backstop Commitment Letter, the Initial DIP Loan Documents, the DIP Facility, the Terminated RSA, the RSA, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan (including, but not limited to, the New Common Interests), or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other

occurrence taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth in Section 0 of the Plan (i) shall only be applicable to the maximum extent permitted by law; and (ii) shall not be construed as (a) releasing any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud (*provided* that actual fraud shall not exempt from the scope of these third-party releases any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, or (b) releasing any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

**SECTION 10.7      EXCULPATION.**

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out, in whole or in part, from the Petition Date through the Effective Date, of the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors, the DIP Facility, the Convertible Notes Agreements, the Miner Equipment Lender Agreements, the Mortgage Agreements, the General Contracts, any and all agreements relating to M&M Liens, and related agreements, instruments, or other documents, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Plan Settlements, the New Secured Convertible Notes Documents, the New Secured Notes Documents, the Contingent Payment Obligations Documents, the New Miner Equipment Lender Debt Documents, the Exit Facility Documents, the New Warrants Agreement, the Rights Offering, the Backstop Commitment Letter, the Initial DIP Loan Documents, the DIP Facility, the Terminated RSA, the RSA, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan (including, but not limited to, the New Common Interests), or the distribution of property under the Plan, or any other related agreement, except for Claims or Causes of Action arising from an act or omission that is judicially determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects, such Exculpated Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities. The Exculpated Parties have, and upon completion of the Plan, shall be deemed to have, participated in good faith and in compliance with all applicable laws with regard to the solicitation and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such

distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.  Notwithstanding anything to the contrary in the foregoing, the exculpations set forth in Section Error! Reference source not found. of the Plan (i) shall only be applicable to the maximum extent permitted by law; and (ii) shall not be construed as (a) exculpating any Exculpated Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud (*provided* that actual fraud shall not exempt from the scope of these exculpations any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, or (b) exculpating any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

## SECTION 5.17          CANCELLATION OF LIENS.

(a)     Except as otherwise specifically provided in the Plan, including sections **Error! Reference source not found.** and **Error! Reference source not found.** of the Plan, all notes, instruments, certificates evidencing debt of the Debtors and Existing Common Interests will be cancelled and obligations of the Debtors thereunder will be discharged and of no further force or effect, except for the purpose of allowing the applicable agents and trustees to receive distributions from the Debtors under the Plan and to make any further distributions to the applicable Holders on account of their Allowed Claims and Interests.

(b)     After the Effective Date and following (i) the distributions to Holders on account of Allowed Convertible Notes Secured Claims and Allowed Miner Equipment Lender Secured Claims and/or (ii) with regard to Allowed M&M Lien Secured Claims, satisfaction of the applicable M&M Lien Takeback Debt, the Debtors or the Reorganized Debtors, at their expense, may, in their sole discretion, take any action necessary to terminate, cancel, extinguish, and/or evidence the release of any and all mortgages, deeds of trust, Liens, pledges, and other security interests with respect to the Convertible Notes Secured Claims, Miner Equipment Lender Secured Claims, and M&M Lien Secured Claims, including, without limitation, the preparation and filing of any and all documents necessary to terminate, satisfy, or release any mortgages, deeds of trust, Liens, pledges, and other security interests held by the Holders of the M&M Lien Secured Claims, Miner Equipment Lender Secured Claims, the Notes Agent, and/or Convertible Noteholders, including, without limitation, UCC-3 termination statements.

**Relevant Definitions Related to Release and Exculpation Provisions**:

   ***"Exculpated Parties"*** means each of the following in their capacity as such and, in each case, to the maximum extent permitted by law: (i) the Debtors; and (ii) Equity Committee and its members, each solely in their capacity as such.

   ***"Related Parties"*** means with respect to a Person, that Person's current and former Affiliates, and such Person's and its current and former Affiliates' current and former directors,

managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, fiduciaries, trustees, advisory board members, financial advisors, partners, limited partners, general partners, attorneys, accountants, managed accounts or funds, management companies, fund advisors, investment bankers, consultants, representatives, and other professionals, and such Person's respective heirs, executors, estates, and nominees, each in their capacity as such, and any and all other Persons or Entities that may purport to assert any Cause of Action derivatively, by or through the foregoing entities.

    ***"Released Parties"*** means, collectively: (i) the Debtors; (ii) the Reorganized Debtors; (iii) the Equity Committee and its members that are party to the RSA, solely in their capacities as such; (iv) the Backstop Parties; (v) the Settling Miner Equipment Lenders; (vi) Brown Corporation; (vii) Holliwood LLC; (viii) the Ad Hoc Noteholder Group; (ix) the Consenting Creditors; (x) the Exit Lenders; (xi) the Notes Agent, solely in its capacity as such; and (xii) with respect to each of the foregoing Persons in clauses (i) through (xi), all Related Parties. Notwithstanding the foregoing, any Person that opts out of the releases set forth in section 10.6(b) of the Plan shall not be deemed a Released Party thereunder.

    ***"Releasing Parties"*** means collectively, and in each case solely in their capacity as such, (i) the Debtors; (ii) the Reorganized Debtors; (iii) with respect to each of the foregoing Persons in clauses (i) through (ii), all Related Parties; (iv) the Released Parties; (v) the Holders of all Claims or Interests that vote to accept the Plan; (vi) the Holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but that do not vote either to accept or to reject the Plan and do not opt out of granting the releases set forth in the Plan; (vii) the Holders of all Claims or Interests that vote, or are deemed, to reject the Plan or that are presumed to accept the Plan but do not opt out of granting the releases set forth in the Plan; and (viii) the Holders of all Claims and Interests and all Other Beneficial Owners that were given notice of the opportunity to opt out of granting the releases set forth in the Plan but did not opt out.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

**PLEASE READ THE ATTACHED VOTING INFORMATION**
**AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT**

**PLEASE COMPLETE ITEMS 1, 2, 3, AND 4. IF THIS BALLOT HAS NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE VALID OR COUNTED AS HAVING BEEN CAST.**

**Item 1.**      **Principal Amount of Claims**. The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the Holder (or authorized signatory of such a Holder) of a Section 510(b) Claim in the aggregate amount set forth below.

$$\$\underline{\hspace{3cm}}$$

**Item 2.**      **Votes on the Plan**.  Please vote either to accept or to reject the Plan with respect to your Claims below.  Any Ballot not marked either to accept or reject the Plan, or marked both to accept and reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

**Prior to voting on the Plan, please note the following:**

**If you (i) vote to accept the Plan, (ii) do not vote either to accept or reject the Plan and do not check the box in Item 3 below, or (iii) vote to reject the Plan and do not check the box in Item 3 below, in each case you shall be deemed to have consented to the release provisions set forth in Section 10.6(b) of the Plan.**

**The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation provisions.**

The undersigned Holder of a Class 11 Section 510(b) Claim votes to (check <u>one</u> box):

☐ **Accept** the Plan          ☐ **Reject** the Plan.

**<u>Your vote on the Plan will be applied to each applicable Debtor in the same manner and in the same amount as indicated in Item 1 and Item 2 above.</u>**

**Item 3.**      **Optional Opt Out Release Election**.  Check the box below if you elect not to grant the releases contained in Section 10.6(b) of the Plan.  If you voted to reject the Plan in Item 2 above, or if you are abstaining from voting to accept or reject the Plan, check this box if you elect not to grant the releases contained in Section 10.6(b) of the Plan.  Election to withhold consent is at your option.  If you voted to accept the Plan in Item 2 above, you **may not** complete this Item 3, and if you complete this Item 3, your "opt out" election will be ineffective.  If you submit a rejecting Ballot, or if you abstain from submitting a Ballot, and in each case, you do not check the box below, you will be deemed to consent to the releases contained in Section 10.6(b) of the Plan

10

to the fullest extent permitted by applicable law.  The Holder of the Class 11 Section 510(b) Claims set forth in Item 1 elects to:

☐  **OPT OUT** of the releases contained only in Section 10.6(b) of the Plan.

**Item 4.**          **Acknowledgements**.  By signing this Ballot, the Holder (or authorized signatory of such Holder) acknowledges review and receipt of the Plan, the Disclosure Statement, and the other applicable solicitation materials, and certifies that (i) it has the power and authority to vote to accept or reject the Plan, (ii) it was the Holder (or is entitled to vote on behalf of such Holder) of the Section 510(b) Claims described in Item 1 as of the Voting Record Date, and (iii) all authority conferred, or agreed to be conferred, pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned.

Name of Holder _____

Signature _____

If by Authorized Agent, Name and Title _____

Name of Institution _____

Street Address _____

City, State, Zip Code _____

Telephone Number _____

Date Completed _____

E-Mail Address _____

## VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT

1.          Ballots received after the Voting Deadline (if the Voting Deadline has not been extended) may not, at the Debtors' discretion, be counted.  **The Voting Agent will tabulate all properly completed Ballots received on or before the Voting Deadline.**

2.          Complete the Ballot by providing all the information requested, signing, dating, and returning the Ballot to the Voting Agent.  Any Ballot that is illegible, contains insufficient information to identify the Holder, or is unsigned[3] will not be counted.  Ballots may not be submitted to the Voting Agent by facsimile or electronic mail.  If neither the "**accept**" nor

---

[3] E-Ballots submitted on the Online Portal will be deemed to contain a legal, valid signature.

"**reject**" box is checked in Item 2, both boxes are checked in Item 2, or the Ballot is otherwise not properly completed, executed, or timely returned, then the Ballot shall not be counted in determining acceptance or rejection of the Plan.

3.  You must vote all your Claims within a single Class under the Plan either to accept or reject the Plan. Accordingly, if you return more than one Ballot voting different or inconsistent Claims within a single Class under the Plan, the Ballots are not voted in the same manner, and you do not correct this before the Voting Deadline, those Ballots will not be counted. An otherwise properly executed Ballot that attempts to partially accept and partially reject the Plan likewise will not be counted.

4.  The Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or an assertion or admission of Claims.

5.  The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

6.  If you cast more than one Ballot voting the same Claims prior to the Voting Deadline, the latest received, properly executed Ballot submitted to the Voting Agent will supersede any prior Ballot.

7.  If (i) the Debtors revoke or withdraw the Plan, or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

8.  There may be changes made to the Plan that do not cause material adverse effects on an accepting Class. If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

9.  NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT, ANY SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTORS, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

10. PLEASE RETURN YOUR BALLOT PROMPTLY.

11. IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT BY CALLING (949) 404-4152 (TOLL-FREE) OR +1 (888) 765-7875(IF CALLING FROM OUTSIDE THE U.S.);WRITING CORE SCIENTIFIC, INC., BALLOT PROCESSING CENTER, C/O STRETTO, INC., 410 EXCHANGE, SUITE 100, IRVINE, CA 92602; OR BY SENDING AN ELECTRONIC MAIL MESSAGE TO CORESCIENTIFICINQUIRIES@STRETTO.COM WITH "CORE SCIENTIFIC" IN

THE SUBJECT LINE.  PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.

12.     THE VOTING AGENT IS NOT AUTHORIZED TO AND WILL NOT PROVIDE LEGAL ADVICE.

## VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT

13. Ballots received after the Voting Deadline (if the Voting Deadline has not been extended) may not, at the Debtors' discretion, be counted. **The Voting Agent will tabulate all properly completed Ballots received on or before the Voting Deadline.**

14. Complete the Ballot by providing all the information requested, signing, dating, and returning the Ballot to the Voting Agent. Any Ballot that is illegible, contains insufficient information to identify the Holder, or is unsigned will not be counted. Ballots may not be submitted to the Voting Agent by facsimile or electronic mail. If neither the "**accept**" nor "**reject**" box is checked in Item 2, both boxes are checked in Item 2, or the Ballot is otherwise not properly completed, executed, or timely returned, then the Ballot shall not be counted in determining acceptance or rejection of the Plan.

15. You must vote all your Claims within a single Class under the Plan either to accept or reject the Plan. Accordingly, if you return more than one Ballot voting different or inconsistent Claims within a single Class under the Plan, the Ballots are not voted in the same manner, and you do not correct this before the Voting Deadline, those Ballots will not be counted. An otherwise properly executed Ballot that attempts to partially accept and partially reject the Plan likewise will not be counted.

16. The Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or an assertion or admission of Claims.

17. The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

18. If you cast more than one Ballot voting the same Claims prior to the Voting Deadline, the latest received, properly executed Ballot submitted to the Voting Agent will supersede any prior Ballot.

19. If (i) the Debtors revoke or withdraw the Plan, or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

20. There may be changes made to the Plan that do not cause material adverse effects on an accepting Class. If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

21. NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT, ANY SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTORS, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

22.    PLEASE RETURN YOUR BALLOT PROMPTLY.

23.    IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT BY CALLING (949) 404-4152 (TOLL-FREE) OR +1 (888) 765-7875 (IF CALLING FROM OUTSIDE THE U.S.); WRITING CORE SCIENTIFIC, INC., BALLOT PROCESSING CENTER, C/O STRETTO, INC., 410 EXCHANGE, SUITE 100, IRVINE, CA 92602; OR BY SENDING AN ELECTRONIC MAIL MESSAGE TO CORESCIENTIFICINQUIRIES@STRETTO.COM WITH "CORE SCIENTIFIC" IN THE SUBJECT LINE.   PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.

24.    THE VOTING AGENT IS NOT AUTHORIZED TO AND WILL NOT PROVIDE LEGAL ADVICE.

**PLEASE SUBMIT YOUR BALLOT BY ONLY <u>ONE</u> OF THE FOLLOWING METHODS:** (i) Online submission of an E-Ballot through the Online Portal, (ii) paper copy submission, in the return envelope provided, (iii) paper copy submission by hand delivery or overnight mail, or (iv) paper copy submission by first class mail.

**IF YOU WISH TO COORDINATE HAND DELIVERY OF YOUR BALLOT, PLEASE NOTIFY THE VOTING AGENT VIA E-MAIL AT CORESCIENTIFICINQUIRIES@STRETTO.COM (WITH "CORE SCIENTIFIC BALLOT" IN THE SUBJECT LINE) AT LEAST 24 HOURS IN ADVANCE OF THE ANTICIPATED DELIVERY DATE.**

**ALL BALLOTS MUST BE PROPERLY EXECUTED, COMPLETED, AND DELIVERED ACCORDING TO THE VOTING INSTRUCTIONS SO THAT THE BALLOTS ARE ACTUALLY RECEIVED BY THE VOTING AGENT NO LATER THAN THE VOTING DEADLINE.**

<u>**Online Portal Voting Instructions**</u>

**To properly submit your Ballot electronically, you must electronically complete, sign, and return this customized electronic Ballot by utilizing the Online Portal platform on the Stretto website by visiting https://cases.stretto.com/CoreScientific/, clicking on the "Submit E-Ballot" link and following the instructions set forth on the website.  Your Ballot must be received by Stretto no later than December 13, 2023 at 5:00 p.m. (Prevailing Central Time), the Voting Deadline, unless such time is extended by the Debtors with the consent of the Requisite Consenting Creditors.  <u>HOLDERS ARE STRONGLY ENCOURAGED TO SUBMIT THEIR BALLOTS VIA THE ONLINE PORTAL PLATFORM.</u>  The Stretto "Online Portal" platform is the sole manner in which ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile, electronic mail, or other means of electronic transmission will not be counted.**

**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized electronic Ballot:**

**Unique E-Ballot ID#:** _____

Each E-Ballot ID# is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot.  Please complete and submit an E-Ballot for each E-Ballot ID# you receive, as applicable.  Ballots submitted by E-Ballot will be deemed to contain a legal, valid signature.

**Holders who cast a Ballot using Stretto's "Online Portal" platform should <u>NOT</u> also submit a paper Ballot.**

**THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS DECEMBER 13, 2023 AT 5:00 P.M. (PREVAILING CENTRAL TIME).**

<u>**Paper Copy Ballot Submission**</u>

| STRETTO'S ADDRESS FOR RECEIPT OF PAPER BALLOTS (WHETHER BY HAND DELIVERY, OVERNIGHT MAIL, OR FIRST CLASS MAIL) |
|---|
| **CORE SCIENTIFIC, INC.**<br>**BALLOT PROCESSING CENTER**<br>**C/O STRETTO, INC.**<br>**410 EXCHANGE, SUITE 100**<br>**IRVINE, CA 92602** |

If you are unable to use the Online Portal platform or need assistance in completing and submitting your Ballot, please contact Stretto (i) via e-mail at CoreScientificInquiries@stretto.com; (ii) via mail by writing Core Scientific, Inc., Ballot Processing Center, C/O Stretto, Inc., 410 Exchange, Suite 100, Irvine, CA 92602; or (iii) via telephone at (949) 404-4152 (Toll-Free) or +1 (888) 765-7875 (if calling from outside the U.S.).

**Exhibit 10**

**Form of Master Ballot for Existing Common Interests (Class 12)**

No person has been authorized to give any information or advice, or to make any representation, other than what is included in the Disclosure Statement and other materials accompanying this Ballot.[1]

PLEASE NOTE THAT, EVEN IF YOU INTEND TO VOTE TO REJECT THE PLAN, YOU MUST STILL READ, COMPLETE, AND EXECUTE THIS ENTIRE BALLOT.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| **CORE SCIENTIFIC, INC.,** *et al.,* | § | Case No. 22-90341 (CML) |
| | § | |
| Debtors[2] | § | (Jointly Administered) |
| | § | |

## MASTER BALLOT FOR VOTING TO
## ACCEPT OR REJECT THE THIRD AMENDED JOINT
## CHAPTER 11 PLAN OF CORE SCIENTIFIC, INC. AND ITS AFFILIATED DEBTORS

### CLASS 12 (EXISTING COMMON INTERESTS)

IN ORDER FOR YOUR VOTE TO BE COUNTED TOWARD CONFIRMATION OF THE PLAN, THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS ACTUALLY RECEIVED BY THE VOTING AGENT ON OR BEFORE DECEMBER 13, 2023 (THE "VOTING DEADLINE"), UNLESS EXTENDED BY THE DEBTORS WITH THE CONSENT OF THE REQUISITE CONSENTING CREDITORS.

This master ballot (the "**Master Ballot**") is being submitted to brokers, dealers, commercial banks, trust companies, or other agents or nominees ("**Nominees**") of beneficial holders of certain Existing Common Interests (a "**Beneficial Holder**") in Core Scientific, Inc. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**") are soliciting votes with respect to the *Third Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors*, filed on November 16, 2023 (Docket

---

[1]   All capitalized terms used but not defined herein or in the enclosed voting instructions have the meanings ascribed to them in the Plan, attached as Exhibit A to the Disclosure Statement.

[2]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisitions, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisition I, LLC (9717); and American Property Acquisitions VII, LLC (3198).  The Debtors' corporate headquarters is 210 Barton Springs Road, Suite 300, Austin, Texas 78704.  The Debtors' service address is 2407 S. Congress Ave, Suite E-101, Austin, Texas 78704.

No. 1438) (as may be modified, amended, or supplemented, the "**Plan**"). The Plan is attached as **Exhibit A** to the *Disclosure Statement for Third Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors*, filed on November 16, 2023 (Docket No. 1439) (as may be modified, amended, or supplemented, the "**Disclosure Statement**").

Specifically, this Master Ballot is being submitted to Nominees of Beneficial Holders of Existing Common Interests as of November 9, 2023 (the "**Voting Record Date**"). Nominees should use this Master Ballot to tabulate votes on behalf of the Beneficial Holders to accept or reject the Plan.

The Disclosure Statement provides information to assist Beneficial Holders in deciding whether to accept or reject the Plan. If you do not have the Disclosure Statement, you may obtain a copy from Stretto, Inc. (the "**Voting Agent**" or "**Stretto**") at no charge by accessing the Debtors' restructuring website at https://cases.stretto.com/CoreScientific/, by email at CoreScientificInquiries@stretto.com, or by telephone at 866.592.2921 (toll-free) or +1 646.539.3626 (if calling from outside the U.S.). Upon receipt of these materials, you should immediately forward to the Beneficial Holders the Disclosure Statement and the form of ballot for such holders (the "**Beneficial Holder Ballot**") with a return envelope addressed to you, or as provided in the attached instructions. You may also transmit the Beneficial Holder Ballot and Disclosure Statement and collect votes from Beneficial Holders in accordance with your customary procedures to transmit materials to and solicit votes from Beneficial Holders.

If you have any questions on how to properly complete this Master Ballot, please contact the Voting Agent at 866.592.2921 (toll-free) or +1 646.539.3626 (if calling from outside the U.S.). Please be advised that the Voting Agent cannot provide legal advice.

---

**IMPORTANT NOTICE REGARDING TREATMENT FOR EXISTING COMMON INTERESTS IN CLASS 12**

As described in more detail in the Disclosure Statement, if the Plan is confirmed and the Effective Date occurs, except to the extent that a Holder of an Existing Common Interest agrees to a less favorable treatment of such Interest, each such Holder shall receive, in full and final satisfaction, settlement, release, and discharge of such Interest, on the Effective Date, or as soon as reasonably practicable thereafter, (i) such Holder's Pro Rata Equity Share of the Residual Equity Pool, (ii) such Holder's Pro Rata Equity Share of the New Warrants, and (iii) the right to participate in the Rights Offering in accordance with the Rights Offering Procedures; *provided*, that with respect to any Existing Common Interests that are Unvested Restricted Stock, any New Common Interests distributed to Holders on account of such Unvested Restricted Stock will be subject to the same restrictions/vesting conditions applicable to such Unvested Restricted Stock as of the Effective Date.

**PLEASE READ THE DISCLOSURE STATEMENT AND PLAN FOR MORE DETAILS.**

---

The Plan can be confirmed by the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") and thereby made binding on you if it is accepted by the Holders of (i) at least two-thirds in amount of the Allowed Claims or Interests voted in each

Impaired Class, and (ii) if the Impaired Class is a Class of Claims, more than one-half in number of the Allowed Claims voted in each Impaired Class, and if the Plan otherwise satisfies the applicable requirements of section 1129(a) under the Bankruptcy Code. If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (y) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan and (z) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code. If the Plan is confirmed by the Bankruptcy Court, it will be binding on Holders of Existing Common Interests whether or not such Holders vote, or vote to reject the Plan. To have a Holder's vote counted, you must complete, sign, and return this Master Ballot to the Voting Agent by the Voting Deadline, which is December 13, 2023 at 5:00 p.m. (Prevailing Central Time).

This Master Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance or disallowance of, or distribution on account of, Class 12 Existing Common Interests. You must provide all of the information requested by this Master Ballot. Failure to do so may result in the disqualification of your vote.

**NOTICE REGARDING CERTAIN RELEASE,
EXCULPATION, AND INJUNCTION PROVISIONS IN PLAN**

**If you (i) vote to accept the Plan, (ii) are solicited to vote to accept or reject the Plan, but do not vote to either accept or reject the Plan, and do not opt out of granting the releases set forth in the Plan, (iii) vote, or are deemed, to reject the Plan or are presumed to accept the Plan but do not opt out of granting the releases set forth in the Plan, or (iv) were given notice of the opportunity to opt out of granting the releases contained in the Plan but do not opt out, you shall be deemed to have consented to the releases contained in Section 10.6(b) of the Plan. The releases as presented in the Plan are provided below:**

**SECTION 10.5         INJUNCTION.**

**Except as otherwise expressly provided in the Plan or for distributions required to be paid or delivered pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold Claims or Interests that have been released pursuant to Section 0 or Section 0, shall be discharged pursuant to Section Error! Reference source not found. of the Plan, or are subject to exculpation pursuant to Section Error! Reference source not found., and all Subcontractors and all other parties in interest are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Released Parties, and/or the Exculpated Parties (to the extent of the exculpation provided pursuant to Section Error! Reference source not found. with respect to the Exculpated Parties): (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (iii) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (iv) asserting any right of**

setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless (x) such Entity has timely asserted such setoff right either in a Filed Proof of Claim, or in another document Filed with the Bankruptcy Court explicitly preserving such setoff or that otherwise indicates that such entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise or (y) such right to setoff arises under a postpetition agreement with the Debtors or an Executory Contract that has been assumed by the Debtors as of the Effective Date; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released, settled, and/or treated, entitled to a distribution, or cancelled pursuant to the Plan or otherwise Disallowed; *provided* that such persons who have held, hold, or may hold Claims against, or Interests in, a Debtor, a Reorganized Debtor, or an Estate shall not be precluded from exercising their rights and remedies, or obtaining the benefits, solely pursuant to and consistent with the terms of the Plan.

Subject in all respects to Section Error! Reference source not found., no entity or person may commence or pursue a Claim or Cause of Action of any kind against any Released Party or Exculpated Party that arose or arises from, in whole or in part, the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors (which includes, for the avoidance of doubt, all claims and Causes of Action asserted or assertable in the Securities Class Action), the DIP Facility, the Convertible Notes Agreements, the Miner Equipment Lender Agreements, the Mortgage Agreements, the General Contracts, any and all agreements relating to M&M Liens, and any and all related agreements, instruments, and/or other documents, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Plan Settlements, the New Secured Convertible Notes Documents, the New Secured Notes Documents, the Contingent Payment Obligations Documents, the New Miner Equipment Lender Debt Documents, the Exit Facility Documents, the New Warrants Agreement, the Rights Offering, the Backstop Commitment Letter, the Initial DIP Loan Documents, the DIP Facility, the Terminated RSA, the RSA, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan (including, but not limited to, the New Common Interests), or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a claim of willful misconduct, fraud or gross negligence against a Released Party or Exculpated Party and (ii) specifically authorizing such Entity or Person to bring such Claim or Cause of Action against any such Released Party or

Exculpated Party.  The Bankruptcy Court shall have sole and exclusive jurisdiction to determine whether a Claim or Cause of Action is colorable and, only to the extent legally permissible and as provided for in Section Error! Reference source not found., shall have jurisdiction to adjudicate the underlying colorable Claim or Cause of Action.

**SECTION 10.6(a)   RELEASES BY THE DEBTORS.**

Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the obligations of the Debtors under the Plan and the contributions of the Released Parties to facilitate and implement the Plan, except as otherwise provided in the Plan or in the Confirmation Order, on and after the Effective Date, the Released Parties are deemed conclusively, absolutely, unconditionally and irrevocably, released and discharged by the Debtors, the Reorganized Debtors, and the Estates from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Reorganized Debtors, the Estates, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors (which includes, for the avoidance of doubt, all claims and Causes of Action asserted or assertable in the Securities Class Action), the DIP Facility, the Convertible Notes Agreements, the Miner Equipment Lender Agreements, the Mortgage Agreements, the General Contracts, any and all agreements relating to M&M Liens, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Plan Settlements, the New Secured Convertible Notes Documents, the New Secured Notes Documents, the Contingent Payment Obligations Documents, the New Miner Equipment Lender Debt Documents, the Exit Facility Documents, the New Warrants Agreement, the Rights Offering, the Backstop Commitment Letter, the Initial DIP Loan Documents, the DIP Facility, the Terminated RSA, the RSA, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan (including, but not limited to, the New Common Interests), or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth in Section 0 of the Plan (i) shall only be applicable to the maximum extent permitted by law; (ii) shall not be construed as (a) releasing any Released Party from Claims or Causes of Action arising from an act or

5

omission that is judicially determined by a Final Order to have constituted actual fraud (*provided* that actual fraud shall not exempt from the scope of these Debtor releases any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, (b) releasing any Released Party from Claims or Causes of Action held by the Debtors arising from an act or omission that is determined by a Final Order or by a federal government agency to have constituted a violation of any federal securities laws or (c) releasing any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

**SECTION 10.6(b)     RELEASES BY HOLDERS OF CLAIMS AND INTERESTS.**

Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, except as otherwise provided in the Plan or in the Confirmation Order, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, each Releasing Party, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released, and discharged the Debtors, the Reorganized Debtors, and the Released Parties from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims or Causes of Action asserted or that may be asserted on behalf of the Debtors or their Estates, that such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, including any Claims or Causes of Action based on or relating to, or in any manner arising from, in whole or in part, the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors (which includes, for the avoidance of doubt, all claims and Causes of Action asserted or assertable in the Securities Class Action), the DIP Facility, the Convertible Notes Agreements, the Miner Equipment Lender Agreements, the Mortgage Agreements, the General Contracts, any and all agreements relating to M&M Liens, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Plan Settlements, the New Secured Convertible Notes Documents, the New Secured Notes Documents, the Contingent Payment Obligations Documents, the New Miner Equipment Lender Debt Documents, the Exit Facility Documents, the New Warrants Agreement, the Rights Offering, the Backstop Commitment Letter, the Initial DIP Loan Documents, the DIP

Facility, the Terminated RSA, the RSA, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan (including, but not limited to, the New Common Interests), or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth in Section 0 of the Plan (i) shall only be applicable to the maximum extent permitted by law; and (ii) shall not be construed as (a) releasing any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud (*provided* that actual fraud shall not exempt from the scope of these third-party releases any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, or (b) releasing any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

**SECTION 10.7**      **EXCULPATION.**

     Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out, in whole or in part, from the Petition Date through the Effective Date, of the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors, the DIP Facility, the Convertible Notes Agreements, the Miner Equipment Lender Agreements, the Mortgage Agreements, the General Contracts, any and all agreements relating to M&M Liens, and related agreements, instruments, or other documents, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Plan Settlements, the New Secured Convertible Notes Documents, the New Secured Notes Documents, the Contingent Payment Obligations Documents, the New Miner Equipment Lender Debt Documents, the Exit Facility Documents, the New Warrants Agreement, the Rights Offering, the Backstop Commitment Letter, the Initial DIP Loan Documents, the DIP Facility, the Terminated RSA, the RSA, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan (including, but not limited to, the New Common Interests), or the distribution of property under the Plan, or any other related agreement, except for Claims or Causes of Action arising from an act or omission that is judicially determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but

in all respects, such Exculpated Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities. The Exculpated Parties have, and upon completion of the Plan, shall be deemed to have, participated in good faith and in compliance with all applicable laws with regard to the solicitation and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan. Notwithstanding anything to the contrary in the foregoing, the exculpations set forth in Section **Error! Reference source not found.** of the Plan (i) shall only be applicable to the maximum extent permitted by law; and (ii) shall not be construed as (a) exculpating any Exculpated Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud (*provided* that actual fraud shall not exempt from the scope of these exculpations any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, or (b) exculpating any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

**SECTION 5.17      CANCELLATION OF LIENS.**

(a)      Except as otherwise specifically provided in the Plan, including sections **Error! Reference source not found.** and **Error! Reference source not found.** of the Plan, all notes, instruments, certificates evidencing debt of the Debtors and Existing Common Interests will be cancelled and obligations of the Debtors thereunder will be discharged and of no further force or effect, except for the purpose of allowing the applicable agents and trustees to receive distributions from the Debtors under the Plan and to make any further distributions to the applicable Holders on account of their Allowed Claims and Interests.

(b)      After the Effective Date and following (i) the distributions to Holders on account of Allowed Convertible Notes Secured Claims and Allowed Miner Equipment Lender Secured Claims and/or (ii) with regard to Allowed M&M Lien Secured Claims, satisfaction of the applicable M&M Lien Takeback Debt, the Debtors or the Reorganized Debtors, at their expense, may, in their sole discretion, take any action necessary to terminate, cancel, extinguish, and/or evidence the release of any and all mortgages, deeds of trust, Liens, pledges, and other security interests with respect to the Convertible Notes Secured Claims, Miner Equipment Lender Secured Claims, and M&M Lien Secured Claims, including, without limitation, the preparation and filing of any and all documents necessary to terminate, satisfy, or release any mortgages, deeds of trust, Liens, pledges, and other security interests held by the Holders of the M&M Lien Secured Claims, Miner Equipment Lender Secured Claims, the Notes Agent, and/or Convertible Noteholders, including, without limitation, UCC-3 termination statements.

**Relevant Definitions Related to Release and Exculpation Provisions**:

"*Exculpated Parties*" means each of the following in their capacity as such and, in each case, to the maximum extent permitted by law: (i) the Debtors; and (ii) Equity Committee and its members, each solely in their capacity as such.

"*Related Parties*" means with respect to a Person, that Person's current and former Affiliates, and such Person's and its current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, fiduciaries, trustees, advisory board members, financial advisors, partners, limited partners, general partners, attorneys, accountants, managed accounts or funds, management companies, fund advisors, investment bankers, consultants, representatives, and other professionals, and such Person's respective heirs, executors, estates, and nominees, each in their capacity as such, and any and all other Persons or Entities that may purport to assert any Cause of Action derivatively, by or through the foregoing entities.

"*Released Parties*" means, collectively: (i) the Debtors; (ii) the Reorganized Debtors; (iii) the Equity Committee and its members that are party to the RSA, solely in their capacities as such; (iv) the Backstop Parties; (v) the Settling Miner Equipment Lenders; (vi) Brown Corporation; (vii) Holliwood LLC; (viii) the Ad Hoc Noteholder Group; (ix) the Consenting Creditors; (x) the Exit Lenders; (xi) the Notes Agent, solely in its capacity as such; and (xii) with respect to each of the foregoing Persons in clauses (i) through (xi), all Related Parties. Notwithstanding the foregoing, any Person that opts out of the releases set forth in section 10.6(b) of the Plan shall not be deemed a Released Party thereunder.

"*Releasing Parties*" means collectively, and in each case solely in their capacity as such, (i) the Debtors; (ii) the Reorganized Debtors; (iii) with respect to each of the foregoing Persons in clauses (i) through (ii), all Related Parties; (iv) the Released Parties; (v) the Holders of all Claims or Interests that vote to accept the Plan; (vi) the Holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but that do not vote either to accept or to reject the Plan and do not opt out of granting the releases set forth in the Plan; (vii) the Holders of all Claims or Interests that vote, or are deemed, to reject the Plan or that are presumed to accept the Plan but do not opt out of granting the releases set forth in the Plan; and (viii) the Holders of all Claims and Interests and all Other Beneficial Owners that were given notice of the opportunity to opt out of granting the releases set forth in the Plan but did not opt out.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

**PLEASE READ THE ATTACHED VOTING INFORMATION
AND INSTRUCTIONS BEFORE COMPLETING THIS MASTER BALLOT**

---

**PLEASE COMPLETE ITEMS 1, 2, 3, AND 4.  IF THIS MASTER BALLOT HAS NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, VOTES OF THE BENEFICIAL HOLDERS MAY NOT BE VALID OR COUNTED AS HAVING BEEN CAST.**

---

**Item 1.  Certification of Authority to Vote.**  The undersigned certifies that, as of the Voting Record Date, the undersigned (please check the applicable box):

☐　　is a Nominee for the Beneficial Holders in the amount of Class 12 Existing Common Interests listed in Item 2 below and is the registered Holder of such Class 12 Existing Common Interest;

☐　　is acting under a power of attorney and/or agency (a copy of which must be provided upon request) granted by a Nominee that is the registered Holder of Class 12 Existing Common Interests in the amount listed in Item 2 below; or

☐　　has been granted a proxy (an original of which is annexed hereto) from a Nominee or a Beneficial Holder that is the registered Holder of the principal amount of Class 12 Existing Common Interests listed in Item 2 below, and accordingly has full power and authority to vote to accept or reject the Plan on behalf of the Beneficial Holders of the Class 12 Existing Common Interests listed in Item 2 below.

**Item 2.  Vote on the Plan.**  The undersigned transmits the following votes of Beneficial Holders in respect of their Class 12 Existing Common Interests and certifies that the following Beneficial Holders, as identified by their respective customer account numbers set forth below, are Beneficial Holders as of the Voting Record Date and have delivered to the undersigned, as Nominee, Beneficial Holder Ballots casting such votes.[3]

---

[3]  Indicate in the appropriate column the amount of the Class 12 Existing Common Interests voted for each account, or attach such information to this Master Ballot in the form of the following table.  Please note that each Beneficial Holder must vote all of such Beneficial Holder's Existing Common Interests to accept or to reject the Plan and may not split such vote.  Any ballot executed by a Beneficial Holder that does not indicate an acceptance or rejection of the Plan, or that indicates both an acceptance and a rejection of the Plan, and has not been corrected by the Voting Deadline, shall not be counted.

| Your Customer Account Number for Each Beneficial Holder of Class 12 Existing Common Interests that Voted | Number of Existing Common Interests Held by Your Customer | Item 2. Vote on Plan | | Item 3. Opt-Out Release Election |
|---|---|---|---|---|
| | | ACCEPT | REJECT | Place a check below if the Beneficial Holder checked the box in Item 3 |
| 1. | | ☐ | ☐ | ☐ |
| 2. | | ☐ | ☐ | ☐ |
| 3. | | ☐ | ☐ | ☐ |
| 4. | | ☐ | ☐ | ☐ |
| 5. | | ☐ | ☐ | ☐ |
| 6. | | ☐ | ☐ | ☐ |
| 7. | | ☐ | ☐ | ☐ |
| 8. | | ☐ | ☐ | ☐ |
| 9. | | ☐ | ☐ | ☐ |
| 10. | | ☐ | ☐ | ☐ |

**Item 3.  Certification.**  By signing this Master Ballot, the undersigned certifies that:

(a)     (i) the undersigned has received a copy of the Disclosure Statement, Master Ballot, and Beneficial Holder Ballot, and has delivered the Disclosure Statement and Beneficial Holder Ballot to Beneficial Holders holding Class 12 Existing Common Interests through the undersigned with a return envelope; (ii) the undersigned has received a completed and signed Beneficial Holder Ballot from each such Beneficial Holder as provided in this Master Ballot; (iii) the undersigned is the registered Holder of the securities being voted or agent thereof; and (iv) the undersigned has been authorized by each such Beneficial Holder to vote on the Plan and to make applicable elections;

(b)     the undersigned has properly disclosed: (i) the number of Beneficial Holders voting Class 12 Existing Common Interests through the undersigned; (ii) the respective amounts of Class 12 Existing Common Interests owned by each such Beneficial Holder; (iii) each such Beneficial Holder's respective vote concerning the Plan; and (iv) the customer account or other identification number for each such Beneficial Holder;

(c)     if the undersigned is a Beneficial Holder and uses this Master Ballot to vote the undersigned's Class 12 Existing Common Interests, the undersigned confirms and attests to each of the certifications in Item 4 of the Beneficial Holder Ballot;

(d)     each such Beneficial Holder has certified to the undersigned that such Beneficial Holder is a Beneficial Holder and is otherwise eligible to vote on the Plan; and

(e)     the undersigned will maintain Beneficial Holder Ballots and evidence of separate transactions returned by Beneficial Holders (whether properly completed or defective) for at least one year after the Voting Deadline, and disclose all such information to the Bankruptcy Court or the Debtor, as the case may be, if so ordered.

**Item 4.  Nominee Information and Signature.**

Name of Nominee:

_____
(Print or Type)

Participant Number:_____

Name of proxy holder or agent for Nominee (if applicable):

_____
(Print or Type)


_____
Signature:

Name of Signatory:_____

Title:_____

Street Address:_____

City, State, Zip Code:_____

Telephone Number:_____

Date Completed:_____

## <u>MASTER BALLOT INSTRUCTIONS</u>

1.    To have the votes of your Beneficial Holders count, you should already have delivered to each such Holder a copy of the Disclosure Statement, along with a Beneficial Holder Ballot (which may be a pre-validated ballot, as described in ¶ 2 below), with a return envelope addressed to you (or the Voting Agent in the case of a pre-validated ballot), so such Holder may (i) return their Beneficial Holder Ballot to you in sufficient time for you to complete and return the Master Ballot to the Voting Agent, so that the Voting Agent *actually receives* the Master Ballot before the Voting Deadline or (ii) in the case of a pre-validated ballot, return their Beneficial Holder Ballot to the Voting Agent before the Voting Deadline. Notwithstanding the foregoing, you may transmit the Disclosure Statement and Beneficial Holder Ballot to Beneficial Holders in accordance with your customary procedures to transmit materials to and collect votes from Beneficial Holders.

2.    You may pre-validate the Beneficial Holder Ballots by (i) signing the Beneficial Holder Ballot and indicating on the Beneficial Holder Ballot the (a) name of the Nominee and DTC Participant Number and (b) the number of Existing Common Interests held by the Nominee for the Beneficial Holder, and (ii) forwarding such Beneficial Holder Ballot, together with the Solicitation Package, including a preaddressed, postage-paid return envelope addressed to, and provided by, the Voting Agent, to the Beneficial Holder.  The Beneficial Holder will be required to complete the information requested in Item 2, Item 3, and Item 4 of the Beneficial Holder Ballot and return the pre-validated Beneficial Holder Ballot directly to the Voting Agent so that it is received before the Voting Deadline.

3.    With regard to any Beneficial Holder Ballots returned to you, to have the vote of your Beneficial Holders count, you must: (a) retain such Beneficial Holder Ballots in your files and transfer the requested information from each such Beneficial Holder Ballot onto the Master Ballot; (b) execute the Master Ballot; and (c) deliver the Master Ballot to the Voting Agent in accordance with these instructions.

4.    Please keep any records of Beneficial Holder Ballots, including records of the Beneficial Holders to whom pre-validated Beneficial Holder Ballots were delivered, for at least one year after the Voting Deadline (or such other date as is set by order of the Bankruptcy Court).  You may be ordered to produce the Beneficial Holder Ballots to the Debtor or the Bankruptcy Court.

5.    For the avoidance of doubt, if it is your customary practice to collect votes from your Beneficial Holder clients via voter information form, e-mail, telephone, or other means, you may employ those customary practices to collect votes from the Beneficial Holders in lieu of a Beneficial Holder Ballot.

6.    If you are both the Nominee and Beneficial Holder, and you wish to vote such Class 12 Existing Common Interest for which you are a Beneficial Holder, you may return either a Beneficial Holder Ballot or the Master Ballot for such Claims.

7.    In the event that (i) the Debtors revoke or withdraw the Plan or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Master Ballot shall

automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

8.    The Master Ballot may not be used for any purpose other than to vote to accept or reject the Plan.

9.    The Master Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or Interest or an assertion or admission of a Claim or Interest.

10.    The following Ballots shall not be counted in determining the acceptance or rejection of the Plan: (a) any Ballot that is illegible or contains insufficient information to permit the identification of the Beneficial Holder, (b) any Ballot cast by a Person that does not hold a Claim in a Class entitled to vote on the Plan, (c) any unsigned Ballot, (d) any Ballot that does not contain an original signature (except with respect to Master Ballots emailed to the Voting Agent) and (e) any Ballot not marked to accept or reject the Plan, or marked both to accept and reject the Plan.

11.    If the Master Ballot is received after the Voting Deadline, it will not be counted, unless otherwise determined by the Debtors. The method of delivery of the Master Ballot to the Voting Agent is at your election and risk.

12.    If a Beneficial Holder submits Ballots for multiple Class 12 Existing Common Interests, whether held in other accounts or other record names, and such Ballots indicate *different or inconsistent* votes to accept or reject the Plan, then all such Ballots will not be counted.

13.    If a Beneficial Holder submits more than one Ballot voting the same Interests prior to the Voting Deadline, the latest received, properly executed Ballot submitted to the Voting Agent will supersede any prior Ballot.

14.    To the extent that conflicting votes or "overvotes" are submitted by a Nominee, the Voting Agent, in good faith, will attempt to reconcile discrepancies with the Nominee. To the extent that any overvotes are not reconcilable prior to the preparation of the vote certification, the Voting Agent will apply the votes to accept and to reject the Plan in the same proportion as the votes to accept and reject the Plan submitted on the Master Ballots or pre-validated Beneficial Holder Ballots that contained the overvote, but only to the extent of the Nominee's position in the applicable security.

15.    The Master Ballot should not be sent to the Debtors, the Bankruptcy Court, or the Debtors' financial or legal advisors.

16.    There may be changes made to the Plan that do not have material adverse effects on an accepting Class. If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

17.    NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT, ANY

SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTORS, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

18.    PLEASE RETURN YOUR BALLOT PROMPTLY.

19.    IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT BY CALLING 866.592.2921 (TOLL-FREE) OR +1 646.539.3626 (IF CALLING FROM OUTSIDE THE U.S.) OR BY SENDING AN ELECTRONIC MAIL MESSAGE TO CORESCIENTIFICVOTE@STRETTO.COM WITH "CORE SCIENTIFIC MASTER BALLOT" IN THE SUBJECT LINE.  PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.

20.    THE VOTING AGENT IS NOT AUTHORIZED TO AND WILL NOT PROVIDE LEGAL ADVICE.

**YOUR COMPLETED MASTER BALLOT MUST BE <u>ACTUALLY RECEIVED</u> BY THE VOTING AGENT BY THE VOTING DEADLINE AT THE FOLLOWING ADDRESS.  IF YOU WOULD LIKE TO COORDINATE HAND DELIVERY OF YOUR MASTER BALLOT, PLEASE SEND AN E-MAIL TO CORESCIENTIFICVOTE@STRETTO.COM (WITH "CORE SCIENTIFIC MASTER BALLOT" IN THE SUBJECT LINE) AT LEAST 24 HOURS BEFORE YOUR ARRIVAL AT THE ADDRESS BELOW AND PROVIDE THE ANTICIPATED DATE AND TIME OF YOUR DELIVERY.**

| Stretto Address for Receipt of Master Ballots |
|---|
| **If by E-Mail (Master Ballots ONLY)** |
| **CoreScientificVote@Stretto.com** |
| **If by First Class Mail, Hand Delivery, or Overnight Mail** |
| **CORE SCIENTIFIC, INC.**<br>**BALLOT PROCESSING CENTER**<br>**C/O STRETTO, INC.**<br>**410 EXCHANGE, SUITE 100**<br>**IRVINE, CA 92602** |

**Exhibit 11**

**Form of Ballot for Beneficial Holder Existing Common Interests (Class 12)**

**No person has been authorized to give any information or advice, or to make any representation, other than what is included in the Disclosure Statement and other materials accompanying this Ballot.[1]**

**PLEASE NOTE THAT, EVEN IF YOU INTEND TO VOTE TO REJECT THE PLAN, YOU MUST STILL READ, COMPLETE, AND EXECUTE THIS ENTIRE BALLOT.**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| CORE SCIENTIFIC, INC., *et al.*, | § | Case No. 22-90341 (CML) |
| | § | |
| Debtors[2] | § | (Jointly Administered) |
| | § | |

## BENEFICIAL HOLDER BALLOT FOR
## VOTING TO ACCEPT OR REJECT THE THIRD AMENDED JOINT
## CHAPTER 11 PLAN OF CORE SCIENTIFIC, INC. AND ITS AFFILIATED DEBTORS

### CLASS 12 (EXISTING COMMON INTEREST)

---

[1]  All capitalized terms used but not defined herein or in the enclosed voting instructions have the meanings ascribed to them in the Plan, attached as Exhibit A to the Disclosure Statement.

[2]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions VII, LLC (3198).  The Debtors' corporate headquarters is 210 Barton Springs Road, Suite 300, Austin, Texas 78704.  The Debtors' service address is 2407 S. Congress Ave, Suite E-101, Austin, Texas 78704.

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING BALLOTS CAREFULLY *BEFORE* COMPLETING THIS BALLOT.**

**IF YOU RECEIVED A RETURN ENVELOPE ADDRESSED TO YOUR NOMINEE, IN ORDER FOR YOUR VOTE TO BE COUNTED, YOU MUST FOLLOW THE DIRECTIONS OF YOUR NOMINEE AND ALLOW SUFFICIENT TIME FOR YOUR NOMINEE TO RECEIVE YOUR VOTE AND TRANSMIT SUCH VOTE ON A MASTER BALLOT, WHICH MASTER BALLOT MUST BE RETURNED TO THE VOTING AGENT BY DECEMBER 13, 2023 AT 5:00 P.M. (PREVAILING CENTRAL TIME) (THE "<u>VOTING DEADLINE</u>") , UNLESS EXTENDED BY THE DEBTORS WITH THE CONSENT OF THE REQUISITE CONSENTING CREDITORS.**

**IF, HOWEVER, YOU RECEIVED A "PRE-VALIDATED" BALLOT FROM YOUR NOMINEE WITH INSTRUCTIONS TO SUBMIT SUCH BALLOT DIRECTLY TO THE VOTING AGENT, IN ORDER FOR YOUR VOTE TO BE COUNTED, YOU MUST COMPLETE, EXECUTE, AND RETURN THE "PRE-VALIDATED" BALLOT, SO AS TO BE *ACTUALLY RECEIVED* BY THE VOTING AGENT BY THE VOTING DEADLINE, UNLESS EXTENDED BY THE DEBTORS WITH THE CONSENT OF THE REQUISITE CONSENTING CREDITORS.**

Core Scientific, Inc. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**") are soliciting votes with respect to the *Third Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors*, filed on November 16, 2023 (Docket No. 1438) (as may be modified, amended, or supplemented, the "**Plan**"). The Plan is attached as <u>**Exhibit A**</u> to the *Disclosure Statement for Third Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors*, filed on November 16, 2023 (Docket No. 1439) (as may be modified, amended, or supplemented, the "**Disclosure Statement**").

Please use this Ballot to cast your vote to accept or reject the Plan if you are, as of November 9, 2023 (the "**Voting Record Date**"): a beneficial Holder of the common stock issued by Core Scientific, Inc.; or a beneficial Holder of any Vested RSUs. The Disclosure Statement provides information to assist you in deciding whether to accept or reject the Plan. If you do not have a Disclosure Statement, you may obtain a copy (a) for a fee via PACER at http://www.txs.uscourts.gov; or (b) from Stretto, Inc. (the "**Voting Agent**") at no charge by accessing the Debtors' restructuring website at https://cases.stretto.com/CoreScientific/, by email at CoreScientificInquiries@stretto.com, or by telephone at (949).404.4152 (Toll-Free) or +1 888.765.7875 (if calling from outside the U.S.).

---

**IMPORTANT NOTICE REGARDING TREATMENT FOR EXISTING COMMON INTERESTS CLASS 12**

As described in more detail in the Disclosure Statement, if the Plan is confirmed and the Effective Date occurs, except to the extent that a Holder of an Existing Common Interest agrees to a less favorable treatment of such Interest, each such Holder shall receive, in full and final satisfaction, settlement, release, and discharge of such Interest, on the Effective Date, or as soon as reasonably practicable thereafter, (i) such Holder's Pro Rata Equity Share of the Residual Equity Pool, (ii) such Holder's Pro Rata Equity Share of the New Warrants, and (iii) the right to participate in the Rights Offering in accordance with the Rights Offering Procedures; provided, that with respect to any Existing Common Interests that are Unvested Restricted Stock, any New Common Interests distributed to Holders on account of such Unvested Restricted Stock will be subject to the same restrictions/vesting conditions applicable to such Unvested Restricted Stock as of the Effective Date.

**PLEASE READ THE DISCLOSURE STATEMENT AND PLAN FOR MORE DETAILS.**

---

The Plan can be confirmed by the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") and thereby made binding on you if it is accepted by the Holders of (i) at least two-thirds in amount of the Allowed Claims or Interests voted in each Impaired Class, and (ii) if the Impaired Class is a Class of Claims, more than one-half in number of the Allowed Claims voted in each Impaired Class, and if the Plan otherwise satisfies the applicable requirements of section 1129(a) under the Bankruptcy Code. If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (y) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan and (z) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code. If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan. To have your vote counted, you must complete, sign, and return this Ballot to the Voting Agent by the Voting Deadline.

This Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance or disallowance of, or distribution on account of, Class 12 Existing Common Interests. You must provide all of the information requested by this Ballot. Failure to do so may result in the disqualification of your vote.

**NOTICE REGARDING CERTAIN RELEASE,
EXCULPATION, AND INJUNCTION PROVISIONS IN PLAN**

**If you (i) vote to accept the Plan, (ii) are solicited to vote to accept or reject the Plan, but do not vote to either accept or reject the Plan, and do not opt out of granting the releases set forth in the Plan, (iii) vote, or are deemed, to reject the Plan or are presumed to accept the Plan but do not opt out of granting the releases set forth in the Plan, or (iv) were given notice of the opportunity to opt out of granting the releases contained in the Plan but**

do not opt out, you shall be deemed to have consented to the releases contained in Section 10.6(b) of the Plan.  The releases as presented in the Plan are provided below:

**SECTION 10.5      INJUNCTION.**

Except as otherwise expressly provided in the Plan or for distributions required to be paid or delivered pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold Claims or Interests that have been released pursuant to Section 0 or Section 0, shall be discharged pursuant to Section Error! Reference source not found. of the Plan, or are subject to exculpation pursuant to Section Error! Reference source not found., and all Subcontractors and all other parties in interest are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Released Parties, and/or the Exculpated Parties (to the extent of the exculpation provided pursuant to Section Error! Reference source not found. with respect to the Exculpated Parties): (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (iii) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless (x) such Entity has timely asserted such setoff right either in a Filed Proof of Claim, or in another document Filed with the Bankruptcy Court explicitly preserving such setoff or that otherwise indicates that such entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise or (y) such right to setoff arises under a postpetition agreement with the Debtors or an Executory Contract that has been assumed by the Debtors as of the Effective Date; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released, settled, and/or treated, entitled to a distribution, or cancelled pursuant to the Plan or otherwise Disallowed; *provided* that such persons who have held, hold, or may hold Claims against, or Interests in, a Debtor, a Reorganized Debtor, or an Estate shall not be precluded from exercising their rights and remedies, or obtaining the benefits, solely pursuant to and consistent with the terms of the Plan.

Subject in all respects to Section Error! Reference source not found., no entity or person may commence or pursue a Claim or Cause of Action of any kind against any Released Party or Exculpated Party that arose or arises from, in whole or in part, the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors (which includes, for the avoidance of doubt, all claims and Causes of Action asserted or assertable in the Securities Class Action), the DIP Facility, the Convertible Notes Agreements, the Miner Equipment Lender Agreements, the Mortgage Agreements, the General Contracts, any and all agreements relating to M&M Liens, and any

and all related agreements, instruments, and/or other documents, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Plan Settlements, the New Secured Convertible Notes Documents, the New Secured Notes Documents, the Contingent Payment Obligations Documents, the New Miner Equipment Lender Debt Documents, the Exit Facility Documents, the New Warrants Agreement, the Rights Offering, the Backstop Commitment Letter, the Initial DIP Loan Documents, the DIP Facility, the Terminated RSA, the RSA, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan (including, but not limited to, the New Common Interests), or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a claim of willful misconduct, fraud or gross negligence against a Released Party or Exculpated Party and (ii) specifically authorizing such Entity or Person to bring such Claim or Cause of Action against any such Released Party or Exculpated Party.  The Bankruptcy Court shall have sole and exclusive jurisdiction to determine whether a Claim or Cause of Action is colorable and, only to the extent legally permissible and as provided for in Section Error! Reference source not found., shall have jurisdiction to adjudicate the underlying colorable Claim or Cause of Action.

**SECTION 10.6(a)**      **RELEASES BY THE DEBTORS**.

Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the obligations of the Debtors under the Plan and the contributions of the Released Parties to facilitate and implement the Plan, except as otherwise provided in the Plan or in the Confirmation Order, on and after the Effective Date, the Released Parties are deemed conclusively, absolutely, unconditionally and irrevocably, released and discharged by the Debtors, the Reorganized Debtors, and the Estates from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Reorganized Debtors, the Estates, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors (which includes, for the avoidance of doubt, all claims and Causes of Action asserted or assertable in the Securities Class Action), the DIP Facility, the

Convertible Notes Agreements, the Miner Equipment Lender Agreements, the Mortgage Agreements, the General Contracts, any and all agreements relating to M&M Liens, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Plan Settlements, the New Secured Convertible Notes Documents, the New Secured Notes Documents, the Contingent Payment Obligations Documents, the New Miner Equipment Lender Debt Documents, the Exit Facility Documents, the New Warrants Agreement, the Rights Offering, the Backstop Commitment Letter, the Initial DIP Loan Documents, the DIP Facility, the Terminated RSA, the RSA, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan (including, but not limited to, the New Common Interests), or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth in Section 0 of the Plan (i) shall only be applicable to the maximum extent permitted by law; (ii) shall not be construed as (a) releasing any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud (*provided* that actual fraud shall not exempt from the scope of these Debtor releases any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, (b) releasing any Released Party from Claims or Causes of Action held by the Debtors arising from an act or omission that is determined by a Final Order or by a federal government agency to have constituted a violation of any federal securities laws or (c) releasing any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

**SECTION 10.6(b)    <u>RELEASES BY HOLDERS OF CLAIMS AND INTERESTS</u>.**

Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, except as otherwise provided in the Plan or in the Confirmation Order, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, each Releasing Party, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released, and discharged the Debtors, the Reorganized Debtors, and the Released Parties from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims or Causes of Action asserted or that may be asserted on behalf of the Debtors or their Estates, that such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or

Interest, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, including any Claims or Causes of Action based on or relating to, or in any manner arising from, in whole or in part, the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors (which includes, for the avoidance of doubt, all claims and Causes of Action asserted or assertable in the Securities Class Action), the DIP Facility, the Convertible Notes Agreements, the Miner Equipment Lender Agreements, the Mortgage Agreements, the General Contracts, any and all agreements relating to M&M Liens, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Plan Settlements, the New Secured Convertible Notes Documents, the New Secured Notes Documents, the Contingent Payment Obligations Documents, the New Miner Equipment Lender Debt Documents, the Exit Facility Documents, the New Warrants Agreement, the Rights Offering, the Backstop Commitment Letter, the Initial DIP Loan Documents, the DIP Facility, the Terminated RSA, the RSA, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan (including, but not limited to, the New Common Interests), or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth in Section 0 of the Plan (i) shall only be applicable to the maximum extent permitted by law; and (ii) shall not be construed as (a) releasing any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud (*provided* that actual fraud shall not exempt from the scope of these third-party releases any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, or (b) releasing any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

**SECTION 10.7        EXCULPATION.**

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out, in whole or in part, from the Petition Date through the Effective Date, of the Chapter 11 Cases, the Debtors, the governance, management, transactions,

ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors, the DIP Facility, the Convertible Notes Agreements, the Miner Equipment Lender Agreements, the Mortgage Agreements, the General Contracts, any and all agreements relating to M&M Liens, and related agreements, instruments, or other documents, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Plan Settlements, the New Secured Convertible Notes Documents, the New Secured Notes Documents, the Contingent Payment Obligations Documents, the New Miner Equipment Lender Debt Documents, the Exit Facility Documents, the New Warrants Agreement, the Rights Offering, the Backstop Commitment Letter, the Initial DIP Loan Documents, the DIP Facility, the Terminated RSA, the RSA, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan (including, but not limited to, the New Common Interests), or the distribution of property under the Plan, or any other related agreement, except for Claims or Causes of Action arising from an act or omission that is judicially determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects, such Exculpated Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities.  The Exculpated Parties have, and upon completion of the Plan, shall be deemed to have, participated in good faith and in compliance with all applicable laws with regard to the solicitation and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.  Notwithstanding anything to the contrary in the foregoing, the exculpations set forth in Section **Error! Reference source not found.** of the Plan (i) shall only be applicable to the maximum extent permitted by law; and (ii) shall not be construed as (a) exculpating any Exculpated Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud (*provided* that actual fraud shall not exempt from the scope of these exculpations any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, or (b) exculpating any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

## SECTION 5.17    CANCELLATION OF LIENS.

(a)    Except as otherwise specifically provided in the Plan, including sections **Error! Reference source not found.** and **Error! Reference source not found.** of the Plan, all notes, instruments, certificates evidencing debt of the Debtors and Existing Common Interests

will be cancelled and obligations of the Debtors thereunder will be discharged and of no further force or effect, except for the purpose of allowing the applicable agents and trustees to receive distributions from the Debtors under the Plan and to make any further distributions to the applicable Holders on account of their Allowed Claims and Interests.

(b)     After the Effective Date and following (i) the distributions to Holders on account of Allowed Convertible Notes Secured Claims and Allowed Miner Equipment Lender Secured Claims and/or (ii) with regard to Allowed M&M Lien Secured Claims, satisfaction of the applicable M&M Lien Takeback Debt, the Debtors or the Reorganized Debtors, at their expense, may, in their sole discretion, take any action necessary to terminate, cancel, extinguish, and/or evidence the release of any and all mortgages, deeds of trust, Liens, pledges, and other security interests with respect to the Convertible Notes Secured Claims, Miner Equipment Lender Secured Claims, and M&M Lien Secured Claims, including, without limitation, the preparation and filing of any and all documents necessary to terminate, satisfy, or release any mortgages, deeds of trust, Liens, pledges, and other security interests held by the Holders of the M&M Lien Secured Claims, Miner Equipment Lender Secured Claims, the Notes Agent, and/or Convertible Noteholders, including, without limitation, UCC-3 termination statements.

## Relevant Definitions Related to Release and Exculpation Provisions:

*"Exculpated Parties"* means each of the following in their capacity as such and, in each case, to the maximum extent permitted by law: (i) the Debtors; and (ii) Equity Committee and its members, each solely in their capacity as such.

*"Related Parties"* means with respect to a Person, that Person's current and former Affiliates, and such Person's and its current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, fiduciaries, trustees, advisory board members, financial advisors, partners, limited partners, general partners, attorneys, accountants, managed accounts or funds, management companies, fund advisors, investment bankers, consultants, representatives, and other professionals, and such Person's respective heirs, executors, estates, and nominees, each in their capacity as such, and any and all other Persons or Entities that may purport to assert any Cause of Action derivatively, by or through the foregoing entities.

*"Released Parties"* means, collectively: (i) the Debtors; (ii) the Reorganized Debtors; (iii) the Equity Committee and its members that are party to the RSA, solely in their capacities as such; (iv) the Backstop Parties; (v) the Settling Miner Equipment Lenders; (vi) Brown Corporation; (vii) Holliwood LLC; (viii) the Ad Hoc Noteholder Group; (ix) the Consenting Creditors; (x) the Exit Lenders; (xi) the Notes Agent, solely in its capacity as such; and (xii) with respect to each of the foregoing Persons in clauses (i) through (xi), all Related Parties. Notwithstanding the foregoing, any Person that opts out of the releases set forth in section 10.6(b) of the Plan shall not be deemed a Released Party thereunder.

"*Releasing Parties*" means collectively, and in each case solely in their capacity as such, (i) the Debtors; (ii) the Reorganized Debtors; (iii) with respect to each of the foregoing Persons in clauses (i) through (ii), all Related Parties; (iv) the Released Parties; (v) the Holders of all Claims or Interests that vote to accept the Plan; (vi) the Holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but that do not vote either to accept or to reject the Plan and do not opt out of granting the releases set forth in the Plan; (vii) the Holders of all Claims or Interests that vote, or are deemed, to reject the Plan or that are presumed to accept the Plan but do not opt out of granting the releases set forth in the Plan; and (viii) the Holders of all Claims and Interests and all Other Beneficial Owners that were given notice of the opportunity to opt out of granting the releases set forth in the Plan but did not opt out.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

**PLEASE READ THE ATTACHED VOTING INFORMATION
AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT**

---

**PLEASE COMPLETE ITEMS 1, 2, 3, AND 4.  IF THIS BALLOT HAS NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE VALID OR COUNTED AS HAVING BEEN CAST.**

---

**Item 1.        Number of Existing Common Interests**. The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the Holder (or authorized signatory of such a Holder) of Existing Common Interests in Class 12 in the aggregate amount set forth below.

| Voting Class | Description | Number of Shares |
|---|---|---|
| Class 12 | Existing Common Interests as of the Voting Record Date (November 9, 2023) | _____ |

**Item 2.        Votes on the Plan**.  Please vote either to accept or to reject the Plan with respect to your Claims below.  Any Ballot not marked either to accept or reject the Plan, or marked both to accept and reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

---

**Prior to voting on the Plan, please note the following:**

**If you (i) vote to accept the Plan, (ii) do not vote either to accept or reject the Plan and do not check the box in Item 3 below, or (iii) vote to reject the Plan and do not check the box in Item 3 below, in each case you shall be deemed to have consented to the release provisions set forth in Section 10.6(b) of the Plan.**

**The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation provisions.**

---

The undersigned Holder of a Class 12 Existing Common Interest votes to (please check <u>one and only one</u> box):

☐ **Accept** (vote for) the Plan                ☐ **Reject** (vote against) the Plan.

**<u>Your vote on the Plan will be applied to each applicable Debtor in the same manner and in the same amount as indicated in Item 1 and Item 2 above.</u>**

**Item 3.        Optional Opt Out Release Election**.  Check the box below if you elect not to grant the releases contained in Section 10.6(b) of the Plan.  If you voted to reject the Plan in Item 2 above, or if you are abstaining from voting to accept or reject the Plan, check this box if you elect not to grant the releases contained in Section 10.6(b) of the Plan.  Election to withhold consent is at your option.  If you voted to accept the Plan in Item 2 above, you **may not** complete this Item 3, and if you complete this Item 3, your "opt out" election will be ineffective.  If you submit a

rejecting Ballot, or if you abstain from submitting a Ballot, and in each case, you do not check the box below, you will be deemed to consent to the releases contained in Section 10.6(b) of the Plan to the fullest extent permitted by applicable law.  The Holder of the Class 12 Existing Common Interest elects to:

☐ **OPT OUT** of the releases contained only in Section 10.6(b) of the Plan.

**Item 4.**        **Acknowledgements**.  By signing this Ballot, the Holder (or authorized signatory of such Holder) acknowledges receipt and review and receipt of the Plan, the Disclosure Statement, and the other applicable solicitation materials, and certifies that (i) it has the power and authority to vote to accept or reject the Plan, (ii) it was the Holder (or is entitled to vote on behalf of such Holder) of the Class 12 Existing Common Interests described in Item 1 as of the Voting Record Date, and (iii) all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned.

Name of Holder _____

Signature _____

If by Authorized Agent, Name and Title _____

Name of Institution _____

Street Address _____

City, State, Zip Code _____

Telephone Number _____

Date Completed _____

E-Mail Address _____

**VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT**

1.  Complete the Ballot by providing all the information requested, signing, dating, and returning the Ballot in the envelope provided, or as indicated by your Nominee (as defined below).  Any Ballot that is illegible, contains insufficient information to identify the Beneficial Holder, does not contain an original signature, or is unsigned will not be counted.  If neither the "accept" nor "reject" box is checked in Item 2, both boxes are checked in Item 2, or the Ballot is otherwise not properly completed, executed, or timely returned, then the Ballot shall not be counted in determining acceptance or rejection of the Plan.  Notwithstanding the foregoing, if your Nominee is collecting your vote through other customary methods, including (but not limited to) via a "voting information form," please follow the instructions set forth by your Nominee.

2.  Please return the Ballot in the envelope provided, or as otherwise directed by your broker, dealer, commercial bank, trust company, or other agent designated as your nominee (the "**Nominee**").  **The Voting Agent will tabulate all properly completed pre-validated Beneficial Holder Ballots and Master Ballots received on or before the Voting Deadline.  IF YOU ARE RETURNING YOUR BALLOT TO YOUR NOMINEE, PLEASE RETURN IT BY THE DEADLINE PROVIDED BY YOUR NOMINEE TO ALLOW SUFFICIENT TIME FOR YOUR VOTE TO BE INCLUDED ON A MASTER BALLOT AND FORWARDED TO THE VOTING AGENT BY THE VOTING DEADLINE.**

3.  If it is your Nominee's customary practice to collect your vote via voter information form, e-mail, telephone, or other means in lieu of this Beneficial Holder Ballot, you may follow your Nominee's instructions regarding the submission of your vote.

4.  Ballots received after the Voting Deadline (if the Voting Deadline has not been extended) may not, at the Debtors' discretion, be counted.  The Voting Agent will tabulate all properly completed Ballots received on or before the Voting Deadline.

5.  You must vote all your Claims within a single Class under the Plan either to accept or reject the Plan. Accordingly, if you return more than one Ballot voting different or inconsistent Claims within a single Class under the Plan, the Ballots are not voted in the same manner, and you do not correct this before the Voting Deadline, those Ballots will not be counted. An otherwise properly executed Ballot that attempts to partially accept and partially reject the Plan likewise will not be counted.

6.  The Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or Interest or an assertion or admission of Claims or Interests.

7.  The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

8.  If you cast more than one Ballot voting the same Claims prior to the Voting Deadline, the latest received, properly executed Ballot submitted to the Voting Agent will supersede any prior Ballot.

9.      If (a) the Debtors revoke or withdraw the Plan, or (b) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

10.     There may be changes made to the Plan that do not cause material adverse effects on an accepting Class.  If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

11.     NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT, ANY SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTORS, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

12.     PLEASE RETURN YOUR BALLOT PROMPTLY.

13.     IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT BY CALLING (949) 404-4152 (TOLL-FREE) OR +1 (888) 765-7875(IF CALLING FROM OUTSIDE THE U.S.); WRITING CORE SCIENTIFIC, INC., BALLOT PROCESSING CENTER, C/O STRETTO, INC., 410 EXCHANGE, SUITE 100, IRVINE, CA 92602; OR BY SENDING AN ELECTRONIC MAIL MESSAGE TO CORESCIENTIFICINQUIRIES@STRETTO.COM WITH "CORE SCIENTIFIC" IN THE SUBJECT LINE.  PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.

14.     THE VOTING AGENT IS NOT AUTHORIZED TO AND WILL NOT PROVIDE LEGAL ADVICE.

PLEASE RETURN YOUR BALLOT PROMPTLY IN THE ENVELOPE PROVIDED OR AS OTHERWISE DIRECTED BY YOUR NOMINEE.  PLEASE ALLOW SUFFICIENT TIME FOR YOUR BALLOT TO BE INCLUDED ON A MASTER BALLOT COMPLETED BY YOUR NOMINEE.  THE MASTER BALLOT MUST BE ACTUALLY RECEIVED BY THE VOTING AGENT ON OR BEFORE THE VOTING DEADLINE.

IF YOU (I) HAVE ANY QUESTIONS REGARDING THE BALLOT, (II) DID NOT RECEIVE A COPY OF THE DISCLOSURE STATEMENT OR THE PLAN, OR (III) NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS, PLEASE REACH OUT TO THE VOTING AGENT AT (949) 404-4152 (TOLL-FREE) OR ++1 (888) 765-7875 (IF CALLING FROM OUTSIDE THE U.S.); WRITING CORE SCIENTIFIC, INC., BALLOT PROCESSING CENTER, C/O STRETTO, INC., 410 EXCHANGE, SUITE 100, IRVINE, CA 92602; OR BY SENDING AN EMAIL TO CORESCIENTIFICINQUIRIES@STRETTO.COM WITH "CORE SCIENTIFIC" IN THE SUBJECT LINE.  PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.

## Exhibit 12

**Form of Registered Holder Ballot for Existing Common Interest (Class 12)**

No person has been authorized to give any information or advice, or to make any representation, other than what is included in the Disclosure Statement and other materials accompanying this Ballot.[1]

PLEASE NOTE THAT, EVEN IF YOU INTEND TO VOTE TO REJECT THE PLAN, YOU MUST STILL READ, COMPLETE, AND EXECUTE THIS ENTIRE BALLOT.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| CORE SCIENTIFIC, INC., *et al.*, | § | Case No. 22-90341 (CML) |
| | § | |
| Debtors[2] | § | (Jointly Administered) |
| | § | |

## BALLOT FOR VOTING TO ACCEPT OR REJECT THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF CORE SCIENTIFIC, INC. AND ITS AFFILIATED DEBTORS

## CLASS 12 (EXISTING COMMON INTEREST)

IN ORDER FOR YOUR VOTE TO BE COUNTED TOWARD CONFIRMATION OF THE PLAN, THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS **ACTUALLY RECEIVED** BY THE VOTING AGENT ON OR BEFORE **DECEMBER 13, 2023 AT 5:00 P.M. (PREVAILING CENTRAL TIME) (THE "VOTING DEADLINE"),** UNLESS EXTENDED BY THE DEBTORS WITH THE CONSENT OF THE REQUISITE CONSENTING CREDITORS.

Core Scientific, Inc. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**") are soliciting votes with respect to the *Third Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors*, filed on November 16, 2023 (Docket No. 1438) (as may be modified, amended, or supplemented, the "**Plan**"). The Plan is attached as **Exhibit A** to the *Disclosure Statement for Third Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors*, filed on

---

[1]   All capitalized terms used but not defined herein or in the enclosed voting instructions have the meanings ascribed to them in the Plan, attached as Exhibit A to the Disclosure Statement.

[2]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions VII, LLC (3198). The Debtors' corporate headquarters is 210 Barton Springs Road, Suite 300, Austin, Texas 78704. The Debtors' service address is 2407 S. Congress Ave, Suite E-101, Austin, TX 78704.

November 16, 2023 (Docket No. 1439) (as may be modified, amended, or supplemented, the "**Disclosure Statement**").

Please use this Ballot to cast your vote to accept or reject the Plan if you are, as of November 9, 2023 (the "**Voting Record Date**"): a Holder of the common stock issued by Core Scientific, Inc.; or a beneficial Holder of any Vested RSUs.  The Disclosure Statement provides information to assist you in deciding whether to accept or reject the Plan.  If you do not have the Disclosure Statement, you may obtain a copy (a) for a fee via PACER at http://www.txs.uscourts.gov; or (b) from Stretto, Inc. (the "**Voting Agent**" or "**Stretto**") at no charge by accessing the Debtors' restructuring website at https://cases.stretto.com/CoreScientific/, by email at  CoreScientificInquiries@stretto.com, or by telephone at (949).404.4152 (Toll-Free) or +1 888.765.7875 (if calling from outside the U.S.).

If you have any questions on how to properly complete this Ballot, please contact the Voting Agent (i) by e-mail at CoreScientificInquiries@stretto.com, (ii) by writing to Core Scientific, Inc., Ballot Processing Center, c/o Stretto, Inc., 410 Exchange, Suite 100, Irvine, CA 92602, or (iii) via telephone at (949) 404-4152 (Toll-Free) or +1 (888) 765-7875 (if calling from outside the U.S.).  Please be advised that the Voting Agent cannot provide legal advice.  You may wish to seek legal advice concerning the Plan and the classification and treatment of your Class 8 General Unsecured Claim under the Plan.

---

### IMPORTANT NOTICE REGARDING TREATMENT FOR EXISTING COMMON INTERESTS CLASS 12

As described in more detail in the Disclosure Statement, if the Plan is confirmed and the Effective Date occurs, except to the extent that a Holder of an Existing Common Interest agrees to a less favorable treatment of such Interest, each such Holder shall receive, in full and final satisfaction, settlement, release, and discharge of such Interest, on the Effective Date, or as soon as reasonably practicable thereafter, (i) such Holder's Pro Rata Equity Share of the Residual Equity Pool, (ii) such Holder's Pro Rata Equity Share of the New Warrants, and (iii) the right to participate in the Rights Offering in accordance with the Rights Offering Procedures; provided, that with respect to any Existing Common Interests that are Unvested Restricted Stock, any New Common Interests distributed to Holders on account of such Unvested Restricted Stock will be subject to the same restrictions/vesting conditions applicable to such Unvested Restricted Stock as of the Effective Date.

**PLEASE READ THE DISCLOSURE STATEMENT AND PLAN FOR MORE DETAILS.**

---

The Plan can be confirmed by the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") and thereby made binding on you if it is accepted by the Holders of (i) at least two-thirds in amount of the Allowed Claims or Interests voted in each Impaired Class, and (ii) if the Impaired Class is a Class of Claims, more than one-half in number of the Allowed Claims voted in each Impaired Class, and if the Plan otherwise satisfies the applicable requirements of section 1129(a) under the Bankruptcy Code.  If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (y) provides fair and equitable treatment to, and does not unfairly discriminate against,

the Class or Classes rejecting the Plan, and (z) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.  If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan.  To have your vote counted, you must complete, sign, and return this Ballot to the Voting Agent by the Voting Deadline.

This Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance or disallowance of, or distribution on account of, Class 12 Existing Common Interest.  You must provide all of the information requested by this Ballot.  Failure to do so may result in the disqualification of your vote.

**NOTICE REGARDING CERTAIN RELEASE,
EXCULPATION, AND INJUNCTION PROVISIONS IN PLAN**

**If you (i) vote to accept the Plan, (ii) are solicited to vote to accept or reject the Plan, but do not vote to either accept or reject the Plan, and do not opt out of granting the releases set forth in the Plan, (iii) vote, or are deemed, to reject the Plan or are presumed to accept the Plan but do not opt out of granting the releases set forth in the Plan, or (iv) were given notice of the opportunity to opt out of granting the releases contained in the Plan but do not opt out, you shall be deemed to have consented to the releases contained in Section 10.6(b) of the Plan.  The releases as presented in the Plan are provided below:**

**SECTION 10.5       INJUNCTION.**

**Except as otherwise expressly provided in the Plan or for distributions required to be paid or delivered pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold Claims or Interests that have been released pursuant to Section 0 or Section 0, shall be discharged pursuant to Section Error! Reference source not found. of the Plan, or are subject to exculpation pursuant to Section Error! Reference source not found., and all Subcontractors and all other parties in interest are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Released Parties, and/or the Exculpated Parties (to the extent of the exculpation provided pursuant to Section Error! Reference source not found. with respect to the Exculpated Parties): (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (iii) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless (x) such Entity has timely asserted such setoff right either in a Filed Proof of Claim, or in another document Filed with the Bankruptcy Court explicitly preserving such setoff or that otherwise indicates that such entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise or (y) such right to setoff arises under a postpetition agreement with the Debtors or an Executory**

Contract that has been assumed by the Debtors as of the Effective Date; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released, settled, and/or treated, entitled to a distribution, or cancelled pursuant to the Plan or otherwise Disallowed; *provided* that such persons who have held, hold, or may hold Claims against, or Interests in, a Debtor, a Reorganized Debtor, or an Estate shall not be precluded from exercising their rights and remedies, or obtaining the benefits, solely pursuant to and consistent with the terms of the Plan.

Subject in all respects to Section Error! Reference source not found., no entity or person may commence or pursue a Claim or Cause of Action of any kind against any Released Party or Exculpated Party that arose or arises from, in whole or in part, the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors (which includes, for the avoidance of doubt, all claims and Causes of Action asserted or assertable in the Securities Class Action), the DIP Facility, the Convertible Notes Agreements, the Miner Equipment Lender Agreements, the Mortgage Agreements, the General Contracts, any and all agreements relating to M&M Liens, and any and all related agreements, instruments, and/or other documents, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Plan Settlements, the New Secured Convertible Notes Documents, the New Secured Notes Documents, the Contingent Payment Obligations Documents, the New Miner Equipment Lender Debt Documents, the Exit Facility Documents, the New Warrants Agreement, the Rights Offering, the Backstop Commitment Letter, the Initial DIP Loan Documents, the DIP Facility, the Terminated RSA, the RSA, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan (including, but not limited to, the New Common Interests), or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a claim of willful misconduct, fraud or gross negligence against a Released Party or Exculpated Party and (ii) specifically authorizing such Entity or Person to bring such Claim or Cause of Action against any such Released Party or Exculpated Party.  The Bankruptcy Court shall have sole and exclusive jurisdiction to determine whether a Claim or Cause of Action is colorable and, only to the extent legally permissible and as provided for in Section Error! Reference source not found., shall have jurisdiction to adjudicate the underlying colorable Claim or Cause of Action.

**SECTION 10.6(a)      RELEASES BY THE DEBTORS.**

Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the obligations of the Debtors under the Plan and the contributions of the Released Parties to facilitate and implement the Plan, except as otherwise provided in the Plan or in the Confirmation Order, on and after the Effective Date, the Released Parties are deemed conclusively, absolutely, unconditionally and irrevocably, released and discharged by the Debtors, the Reorganized Debtors, and the Estates from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Reorganized Debtors, the Estates, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors (which includes, for the avoidance of doubt, all claims and Causes of Action asserted or assertable in the Securities Class Action), the DIP Facility, the Convertible Notes Agreements, the Miner Equipment Lender Agreements, the Mortgage Agreements, the General Contracts, any and all agreements relating to M&M Liens, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Plan Settlements, the New Secured Convertible Notes Documents, the New Secured Notes Documents, the Contingent Payment Obligations Documents, the New Miner Equipment Lender Debt Documents, the Exit Facility Documents, the New Warrants Agreement, the Rights Offering, the Backstop Commitment Letter, the Initial DIP Loan Documents, the DIP Facility, the Terminated RSA, the RSA, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan (including, but not limited to, the New Common Interests), or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth in Section 0 of the Plan (i) shall only be applicable to the maximum extent permitted by law; (ii) shall not be construed as (a) releasing any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud (*provided* that actual fraud shall not exempt from the scope of these Debtor releases any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, (b) releasing any Released Party from Claims or Causes of

Action held by the Debtors arising from an act or omission that is determined by a Final Order or by a federal government agency to have constituted a violation of any federal securities laws or (c) releasing any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

**SECTION 10.6(b)     RELEASES BY HOLDERS OF CLAIMS AND INTERESTS.**

Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, except as otherwise provided in the Plan or in the Confirmation Order, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, each Releasing Party, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released, and discharged the Debtors, the Reorganized Debtors, and the Released Parties from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims or Causes of Action asserted or that may be asserted on behalf of the Debtors or their Estates, that such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, including any Claims or Causes of Action based on or relating to, or in any manner arising from, in whole or in part, the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors (which includes, for the avoidance of doubt, all claims and Causes of Action asserted or assertable in the Securities Class Action), the DIP Facility, the Convertible Notes Agreements, the Miner Equipment Lender Agreements, the Mortgage Agreements, the General Contracts, any and all agreements relating to M&M Liens, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Plan Settlements, the New Secured Convertible Notes Documents, the New Secured Notes Documents, the Contingent Payment Obligations Documents, the New Miner Equipment Lender Debt Documents, the Exit Facility Documents, the New Warrants Agreement, the Rights Offering, the Backstop Commitment Letter, the Initial DIP Loan Documents, the DIP Facility, the Terminated RSA, the RSA, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan (including, but not limited to, the New Common Interests), or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other

6

occurrence taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth in Section 0 of the Plan (i) shall only be applicable to the maximum extent permitted by law; and (ii) shall not be construed as (a) releasing any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud (*provided* that actual fraud shall not exempt from the scope of these third-party releases any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, or (b) releasing any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

**SECTION 10.7**       **EXCULPATION.**

          Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out, in whole or in part, from the Petition Date through the Effective Date, of the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors, the DIP Facility, the Convertible Notes Agreements, the Miner Equipment Lender Agreements, the Mortgage Agreements, the General Contracts, any and all agreements relating to M&M Liens, and related agreements, instruments, or other documents, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Plan Settlements, the New Secured Convertible Notes Documents, the New Secured Notes Documents, the Contingent Payment Obligations Documents, the New Miner Equipment Lender Debt Documents, the Exit Facility Documents, the New Warrants Agreement, the Rights Offering, the Backstop Commitment Letter, the Initial DIP Loan Documents, the DIP Facility, the Terminated RSA, the RSA, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan (including, but not limited to, the New Common Interests), or the distribution of property under the Plan, or any other related agreement, except for Claims or Causes of Action arising from an act or omission that is judicially determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects, such Exculpated Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities. The Exculpated Parties have, and upon completion of the Plan, shall be deemed to have, participated in good faith and in compliance with all applicable laws with regard to the solicitation and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such

distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.  Notwithstanding anything to the contrary in the foregoing, the exculpations set forth in Section **Error! Reference source not found.** of the Plan (i) shall only be applicable to the maximum extent permitted by law; and (ii) shall not be construed as (a) exculpating any Exculpated Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud (*provided* that actual fraud shall not exempt from the scope of these exculpations any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, or (b) exculpating any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

## SECTION 5.17        CANCELLATION OF LIENS.

(a)      Except as otherwise specifically provided in the Plan, including sections **Error! Reference source not found.** and **Error! Reference source not found.** of the Plan, all notes, instruments, certificates evidencing debt of the Debtors and Existing Common Interests will be cancelled and obligations of the Debtors thereunder will be discharged and of no further force or effect, except for the purpose of allowing the applicable agents and trustees to receive distributions from the Debtors under the Plan and to make any further distributions to the applicable Holders on account of their Allowed Claims and Interests.

(b)      After the Effective Date and following (i) the distributions to Holders on account of Allowed Convertible Notes Secured Claims and Allowed Miner Equipment Lender Secured Claims and/or (ii) with regard to Allowed M&M Lien Secured Claims, satisfaction of the applicable M&M Lien Takeback Debt, the Debtors or the Reorganized Debtors, at their expense, may, in their sole discretion, take any action necessary to terminate, cancel, extinguish, and/or evidence the release of any and all mortgages, deeds of trust, Liens, pledges, and other security interests with respect to the Convertible Notes Secured Claims, Miner Equipment Lender Secured Claims, and M&M Lien Secured Claims, including, without limitation, the preparation and filing of any and all documents necessary to terminate, satisfy, or release any mortgages, deeds of trust, Liens, pledges, and other security interests held by the Holders of the M&M Lien Secured Claims, Miner Equipment Lender Secured Claims, the Notes Agent, and/or Convertible Noteholders, including, without limitation, UCC-3 termination statements.

**Relevant Definitions Related to Release and Exculpation Provisions**:

     ***"Exculpated Parties"*** means each of the following in their capacity as such and, in each case, to the maximum extent permitted by law: (i) the Debtors; and (ii) Equity Committee and its members, each solely in their capacity as such.

     ***"Related Parties"*** means with respect to a Person, that Person's current and former Affiliates, and such Person's and its current and former Affiliates' current and former directors,

managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, fiduciaries, trustees, advisory board members, financial advisors, partners, limited partners, general partners, attorneys, accountants, managed accounts or funds, management companies, fund advisors, investment bankers, consultants, representatives, and other professionals, and such Person's respective heirs, executors, estates, and nominees, each in their capacity as such, and any and all other Persons or Entities that may purport to assert any Cause of Action derivatively, by or through the foregoing entities.

> *"Released Parties"* means, collectively: (i) the Debtors; (ii) the Reorganized Debtors; (iii) the Equity Committee and its members that are party to the RSA, solely in their capacities as such; (iv) the Backstop Parties; (v) the Settling Miner Equipment Lenders; (vi) Brown Corporation; (vii) Holliwood LLC; (viii) the Ad Hoc Noteholder Group; (ix) the Consenting Creditors; (x) the Exit Lenders; (xi) the Notes Agent, solely in its capacity as such; and (xii) with respect to each of the foregoing Persons in clauses (i) through (xi), all Related Parties. Notwithstanding the foregoing, any Person that opts out of the releases set forth in section 10.6(b) of the Plan shall not be deemed a Released Party thereunder.

> *"Releasing Parties"* means collectively, and in each case solely in their capacity as such, (i) the Debtors; (ii) the Reorganized Debtors; (iii) with respect to each of the foregoing Persons in clauses (i) through (ii), all Related Parties; (iv) the Released Parties; (v) the Holders of all Claims or Interests that vote to accept the Plan; (vi) the Holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but that do not vote either to accept or to reject the Plan and do not opt out of granting the releases set forth in the Plan; (vii) the Holders of all Claims or Interests that vote, or are deemed, to reject the Plan or that are presumed to accept the Plan but do not opt out of granting the releases set forth in the Plan; and (viii) the Holders of all Claims and Interests and all Other Beneficial Owners that were given notice of the opportunity to opt out of granting the releases set forth in the Plan but did not opt out.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

**PLEASE READ THE ATTACHED VOTING INFORMATION**
**AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT**

**PLEASE COMPLETE ITEMS 1, 2, 3, AND 4. IF THIS BALLOT HAS NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE VALID OR COUNTED AS HAVING BEEN CAST.**

**Item 1.          Number of Existing Common Interests**. The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the Holder (or authorized signatory of such a Holder) of the following number of Existing Common Interests.

| Voting Class | Description | Number of Existing Common Interests |
|---|---|---|
| Class 12 | Existing Common Interest as of the Voting Record Date (November 9, 2023) | _____ |

**Item 2.          Votes on the Plan**.  Please vote either to accept or to reject the Plan with respect to your Claims below.  Any Ballot not marked either to accept or reject the Plan, or marked both to accept and reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

**Prior to voting on the Plan, please note the following:**

**If you (i) vote to accept the Plan, (ii) do not vote either to accept or reject the Plan and do not check the box in Item 3 below, or (iii) vote to reject the Plan and do not check the box in Item 3 below, in each case you shall be deemed to have consented to the release provisions set forth in Section 10.6(b) of the Plan.**

**The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation provisions.**

The undersigned Holder of a Class 12 Existing Common Interest votes to (please check <u>one and only one</u> box):

☐ **Accept** (vote for) the Plan                    ☐ **Reject** (vote against) the Plan.

**<u>Your vote on the Plan will be applied to each applicable Debtor in the same manner and in the same amount as indicated in Item 1 and Item 2 above.</u>**

**Item 3.          Optional Opt Out Release Election**.  Check the box below if you elect not to grant the releases contained in Section 10.6(b) of the Plan.  If you voted to reject the Plan in Item 2 above, or if you are abstaining from voting to accept or reject the Plan, check this box if you elect not to grant the releases contained in Section 10.6(b) of the Plan.  Election to withhold consent is at your option. If you voted to accept the Plan in Item 2 above, you **may not** complete this Item 3, and if you complete this Item 3, your "opt out" election will be ineffective.  If you submit a

10

rejecting Ballot, or if you abstain from submitting a Ballot, and in each case, you do not check the box below, you will be deemed to consent to the releases contained in Section 10.6(b) of the Plan to the fullest extent permitted by applicable law. The Holder of the Class 12 Existing Common Interest set forth in Item 1 elects to:

☐ **OPT OUT** of the releases contained only in Section 10.6(b) of the Plan.

**Item 4.** **Acknowledgements**. By signing this Ballot, the Holder (or authorized signatory of such Holder) acknowledges review and receipt of the Plan, the Disclosure Statement, and the other applicable solicitation materials, and certifies that (i) it has the power and authority to vote to accept or reject the Plan, (ii) it was the Holder (or is entitled to vote on behalf of such Holder) of the Existing Common Interests described in Item 1 as of the Voting Record Date, and (iii) all authority conferred, or agreed to be conferred, pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned.

Name of Holder _____

Signature _____

If by Authorized Agent, Name and Title _____

Name of Institution _____

Street Address _____

City, State, Zip Code _____

Telephone Number _____

Date Completed _____

E-Mail Address _____

**VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT**

1.      Ballots received after the Voting Deadline (if the Voting Deadline has not been extended) may not, at the Debtors' discretion, be counted.  **The Voting Agent will tabulate all properly completed Ballots received on or before the Voting Deadline.**

2.      Complete the Ballot by providing all the information requested, signing, dating, and returning the Ballot to the Voting Agent.  Any Ballot that is illegible, contains insufficient information to identify the Holder, or is unsigned[3] will not be counted.  Ballots may not be submitted to the Voting Agent by facsimile or electronic mail.  If neither the "**accept**" nor "**reject**" box is checked in Item 2, both boxes are checked in Item 2, or the Ballot is otherwise not properly completed, executed, or timely returned, then the Ballot shall not be counted in determining acceptance or rejection of the Plan.

3.      You must vote all of your Existing Common Interests within a single Class under the Plan either to accept or reject the Plan. Accordingly, if you return more than one Ballot voting different or inconsistent Interests within a single Class under the Plan, the Ballots are not voted in the same manner, and you do not correct this before the Voting Deadline, those Ballots will not be counted. An otherwise properly executed Ballot that attempts to partially accept and partially reject the Plan likewise will not be counted.

4.      The Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or Interest or an assertion or admission of Claims or Interests.

5.      The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

6.      If you cast more than one Ballot voting the same Existing Common Interests prior to the Voting Deadline, the latest received, properly executed Ballot submitted to the Voting Agent will supersede any prior Ballot.

7.      If (i) the Debtors revoke or withdraw the Plan, or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

8.      There may be changes made to the Plan that do not cause material adverse effects on an accepting Class.  If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

9.      NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT, ANY

---

[3] E-Ballots submitted on the Online Portal will be deemed to contain a legal, valid signature.

SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTORS, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

10.     PLEASE RETURN YOUR BALLOT PROMPTLY.

11.     IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT BY CALLING (949) 404-4152 (TOLL-FREE) OR +1 (888) 765-7875(IF CALLING FROM OUTSIDE THE U.S.);WRITING CORE SCIENTIFIC, INC., BALLOT PROCESSING CENTER, C/O STRETTO, INC., 410 EXCHANGE, SUITE 100, IRVINE, CA 92602; OR BY SENDING AN ELECTRONIC MAIL MESSAGE TO CORESCIENTIFICINQUIRIES@STRETTO.COM WITH "CORE SCIENTIFIC" IN THE SUBJECT LINE.  PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.

12.     THE VOTING AGENT IS NOT AUTHORIZED TO AND WILL NOT PROVIDE LEGAL ADVICE.

**PLEASE SUBMIT YOUR BALLOT BY ONLY <u>ONE</u> OF THE FOLLOWING METHODS:**
(i) Online submission of an E-Ballot through the Online Portal, (ii) paper copy submission, in the return envelope provided, (iii) paper copy submission by hand delivery or overnight mail, or (iv) paper copy submission by first class mail.

**IF YOU WISH TO COORDINATE HAND DELIVERY OF YOUR BALLOT, PLEASE NOTIFY THE VOTING AGENT VIA E-MAIL AT CORESCIENTIFICINQUIRIES@STRETTO.COM (WITH "CORE SCIENTIFIC BALLOT" IN THE SUBJECT LINE) AT LEAST 24 HOURS IN ADVANCE OF THE ANTICIPATED DELIVERY DATE.**

**ALL BALLOTS MUST BE PROPERLY EXECUTED, COMPLETED, AND DELIVERED ACCORDING TO THE VOTING INSTRUCTIONS SO THAT THE BALLOTS ARE ACTUALLY RECEIVED BY THE VOTING AGENT NO LATER THAN THE VOTING DEADLINE.**

<u>**Online Portal Voting Instructions**</u>

**To properly submit your Ballot electronically, you must electronically complete, sign, and return this customized electronic Ballot by utilizing the Online Portal platform on the Stretto website by visiting https://cases.stretto.com/CoreScientific/, clicking on the "Submit E-Ballot" link and following the instructions set forth on the website.  Your Ballot must be received by Stretto no later than December 13, 2023 at 5:00 p.m. (Prevailing Central Time), the Voting Deadline, unless such time is extended by the Debtors with the consent of the Requisite Consenting Creditors.  <u>HOLDERS ARE STRONGLY ENCOURAGED TO SUBMIT THEIR BALLOTS VIA THE ONLINE PORTAL PLATFORM.</u>  The Stretto "Online Portal" platform is the sole manner in which ballots will be accepted via electronic**

or online transmission.  Ballots submitted by facsimile, electronic mail, or other means of electronic transmission will not be counted.

**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized electronic Ballot:**

Unique E-Ballot ID#:  **_____**

Each E-Ballot ID# is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot.  Please complete and submit an E-Ballot for each E-Ballot ID# you receive, as applicable.  Ballots submitted by E-Ballot will be deemed to contain a legal, valid signature.

**Holders who cast a Ballot using Stretto's "Online Portal" platform should <u>NOT</u> also submit a paper Ballot.**

**THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS DECEMBER 13, 2023 AT 5:00 P.M. (PREVAILING CENTRAL TIME).**

<u>**Paper Copy Ballot Submission**</u>

| STRETTO'S ADDRESS FOR RECEIPT OF PAPER BALLOTS (WHETHER BY HAND DELIVERY, OVERNIGHT MAIL, OR FIRST CLASS MAIL) |
|:---:|
| CORE SCIENTIFIC, INC. <br> BALLOT PROCESSING CENTER <br> C/O STRETTO, INC. <br> 410 EXCHANGE, SUITE 100 <br> IRVINE, CA 92602 |

If you are unable to use the Online Portal platform or need assistance in completing and submitting your Ballot, please contact Stretto (i) via e-mail at CoreScientificInquiries@stretto.com; (ii) via mail by writing Core Scientific, Inc., Ballot Processing Center, C/O Stretto, Inc., 410 Exchange, Suite 100, Irvine, CA 92602; or (iii) via telephone at (949) 404-4152 (Toll-Free) or +1 (888) 765-7875 (if calling from outside the U.S.)..

**Exhibit 13**

**Notice of Non-Voting Status**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | § | Chapter 11 |
|  | § |  |
| CORE SCIENTIFIC, INC., *et al.*, | § | Case No. 22-90341 (CML) |
|  | § |  |
| Debtors[1] | § | (Jointly Administered) |
|  | § |  |

## NOTICE OF NON-VOTING STATUS

On December 21, 2022 (the "**Petition Date**"), Core Scientific, Inc. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), each commenced a case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**").

On November 14, 2023, the Bankruptcy Court held a hearing (the "**Disclosure Statement Hearing**") at which it conditionally approved the *Disclosure Statement for Third Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors,* filed on November 16, 2023 (Docket No. 1439) (as may be modified, amended, or supplemented, the "**Disclosure Statement**"),[2] and thereafter entered an order (the "**Order**") with respect thereto. The Order, among other things, authorizes the Debtors to solicit votes to accept the *Third Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors,* filed on November 16, 2023 (Docket No. 1438) (as may be modified, amended, or supplemented, the "**Plan**"). If you have any questions about the status of your Claim or Interest or if you wish to obtain paper copies of the Plan and Disclosure Statement, you may contact the Debtors' voting agent, Stretto, Inc. ("**Stretto**" or the "**Voting Agent**"), by writing to Core Scientific, Inc., Ballot Processing Center, c/o Stretto, Inc., 410 Exchange, Suite 100, Irvine, CA 92602, or by email at CoreScientificInquiries@stretto.com, or by telephone at (949).404.4152 (Toll-Free) or +1888.765.7875 (if calling from outside the U.S.). Copies of the Plan and Disclosure Statement can also be accessed online at https://cases.stretto.com/CoreScientific. Please be advised that Stretto cannot provide legal advice.

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions VII, LLC (3198). The Debtors' corporate headquarters is 210 Barton Springs Road, Suite 300, Austin, Texas 78704. The Debtors' service address is 2407 S. Congress Ave, Suite E-101, Austin, Texas 78704.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Disclosure Statement or Plan, as applicable.

You are receiving this notice (this "Notice of Non-Voting Status") because, according to the Debtors' books and records, you are a holder of:

    **i.**       **Class 4 Other Secured Claims under the Plan, which provides that your Claim(s) against the Debtors is unimpaired and, therefore, pursuant to section 1126(f) of the Bankruptcy Code, you are presumed to have accepted the Plan and not entitled to vote on the Plan; and/or**

    **ii.**      **Class 7 Priority Non-Tax Claims under the Plan, which provides that your Claim(s) against the Debtors is unimpaired and, therefore, pursuant to section 1126(f) of the Bankruptcy Code, you are presumed to have accepted the Plan and not entitled to vote on the Plan.**

The deadline for filing objections to confirmation of the Plan or final approval of the Disclosure Statement is **December 13, 2023 (the "Objection Deadline")**. Any objections to the confirmation of the Plan or final approval of the Disclosure Statement must: (i) be in writing; (ii) conform to the Bankruptcy Rules, the Bankruptcy Local Rules, and any order of the Bankruptcy Court; (iii) set forth the name of the objecting party and the nature and amount of Claims or Interests held or asserted by the objecting party against the Debtors' estates or property; and (iv) provide the basis for the objection, and the specific grounds therefor, and, if practicable, a proposed modification to the Plan that would resolve such objection. Registered users of the Bankruptcy Court's case filing system must electronically file their objections and responses on or before the Objection Deadline. All other parties in interest must file their objections and responses in writing with the United States Bankruptcy Court Clerk's Office, Rosario Saldana, United States Courthouse, 515 Rusk Avenue, Courtroom 401, 4th Floor, Houston, Texas 77002, on or before the Plan Objection Deadline.

---

If you have questions about this Notice of Non-Voting Status, please contact Stretto

**Telephone**: (949).404.4152 (Toll-Free) or +1888.765.7875 (if calling from outside the U.S.)

**Email**: CoreScientificInquiries@stretto.com

**Website**: https://cases.stretto.com/CoreScientific

---

**NOTICE REGARDING CERTAIN RELEASE,
EXCULPATION, AND INJUNCTION PROVISIONS IN PLAN**

      **If you (i) vote to accept the Plan, (ii) are solicited to vote to accept or reject the Plan, but do not vote to either accept or reject the Plan, and do not opt out of granting the releases set forth in the Plan, (iii) vote, or are deemed, to reject the Plan or are presumed to accept the Plan but do not opt out of granting the releases set forth in the Plan, or (iv) were given notice of the opportunity to opt out of granting the releases contained in the Plan but**

do not opt out, you shall be deemed to have consented to the releases contained in Section 10.6(b) of the Plan.  The releases as presented in the Plan are provided below:

**SECTION 10.5** **INJUNCTION.**

Except as otherwise expressly provided in the Plan or for distributions required to be paid or delivered pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold Claims or Interests that have been released pursuant to Section 0 or Section 0, shall be discharged pursuant to Section Error! Reference source not found. of the Plan, or are subject to exculpation pursuant to Section Error! Reference source not found., and all Subcontractors and all other parties in interest are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Released Parties, and/or the Exculpated Parties (to the extent of the exculpation provided pursuant to Section Error! Reference source not found. with respect to the Exculpated Parties): (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (iii) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless (x) such Entity has timely asserted such setoff right either in a Filed Proof of Claim, or in another document Filed with the Bankruptcy Court explicitly preserving such setoff or that otherwise indicates that such entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise or (y) such right to setoff arises under a postpetition agreement with the Debtors or an Executory Contract that has been assumed by the Debtors as of the Effective Date; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released, settled, and/or treated, entitled to a distribution, or cancelled pursuant to the Plan or otherwise Disallowed; *provided* that such persons who have held, hold, or may hold Claims against, or Interests in, a Debtor, a Reorganized Debtor, or an Estate shall not be precluded from exercising their rights and remedies, or obtaining the benefits, solely pursuant to and consistent with the terms of the Plan.

Subject in all respects to Section Error! Reference source not found., no entity or person may commence or pursue a Claim or Cause of Action of any kind against any Released Party or Exculpated Party that arose or arises from, in whole or in part, the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors (which includes, for the avoidance of doubt, all claims and Causes of Action asserted or assertable in the Securities Class Action), the DIP Facility, the Convertible Notes Agreements, the Miner Equipment Lender Agreements, the Mortgage Agreements, the General Contracts, any and all agreements relating to M&M Liens, and any

and all related agreements, instruments, and/or other documents, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Plan Settlements, the New Secured Convertible Notes Documents, the New Secured Notes Documents, the Contingent Payment Obligations Documents, the New Miner Equipment Lender Debt Documents, the Exit Facility Documents, the New Warrants Agreement, the Rights Offering, the Backstop Commitment Letter, the Initial DIP Loan Documents, the DIP Facility, the Terminated RSA, the RSA, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan (including, but not limited to, the New Common Interests), or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a claim of willful misconduct, fraud or gross negligence against a Released Party or Exculpated Party and (ii) specifically authorizing such Entity or Person to bring such Claim or Cause of Action against any such Released Party or Exculpated Party.  The Bankruptcy Court shall have sole and exclusive jurisdiction to determine whether a Claim or Cause of Action is colorable and, only to the extent legally permissible and as provided for in Section Error! Reference source not found., shall have jurisdiction to adjudicate the underlying colorable Claim or Cause of Action.

**SECTION 10.6(a)**      **RELEASES BY THE DEBTORS**.

Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the obligations of the Debtors under the Plan and the contributions of the Released Parties to facilitate and implement the Plan, except as otherwise provided in the Plan or in the Confirmation Order, on and after the Effective Date, the Released Parties are deemed conclusively, absolutely, unconditionally and irrevocably, released and discharged by the Debtors, the Reorganized Debtors, and the Estates from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Reorganized Debtors, the Estates, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors (which includes, for the avoidance of doubt, all claims and Causes of Action asserted or assertable in the Securities Class Action), the DIP Facility, the

4

Convertible Notes Agreements, the Miner Equipment Lender Agreements, the Mortgage Agreements, the General Contracts, any and all agreements relating to M&M Liens, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Plan Settlements, the New Secured Convertible Notes Documents, the New Secured Notes Documents, the Contingent Payment Obligations Documents, the New Miner Equipment Lender Debt Documents, the Exit Facility Documents, the New Warrants Agreement, the Rights Offering, the Backstop Commitment Letter, the Initial DIP Loan Documents, the DIP Facility, the Terminated RSA, the RSA, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan (including, but not limited to, the New Common Interests), or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth in Section 0 of the Plan (i) shall only be applicable to the maximum extent permitted by law; (ii) shall not be construed as (a) releasing any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud (*provided* that actual fraud shall not exempt from the scope of these Debtor releases any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, (b) releasing any Released Party from Claims or Causes of Action held by the Debtors arising from an act or omission that is determined by a Final Order or by a federal government agency to have constituted a violation of any federal securities laws or (c) releasing any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

**SECTION 10.6(b)**     <u>**RELEASES BY HOLDERS OF CLAIMS AND INTERESTS**</u>.

Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, except as otherwise provided in the Plan or in the Confirmation Order, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, each Releasing Party, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released, and discharged the Debtors, the Reorganized Debtors, and the Released Parties from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims or Causes of Action asserted or that may be asserted on behalf of the Debtors or their Estates, that such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or

Interest, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, including any Claims or Causes of Action based on or relating to, or in any manner arising from, in whole or in part, the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors (which includes, for the avoidance of doubt, all claims and Causes of Action asserted or assertable in the Securities Class Action), the DIP Facility, the Convertible Notes Agreements, the Miner Equipment Lender Agreements, the Mortgage Agreements, the General Contracts, any and all agreements relating to M&M Liens, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Plan Settlements, the New Secured Convertible Notes Documents, the New Secured Notes Documents, the Contingent Payment Obligations Documents, the New Miner Equipment Lender Debt Documents, the Exit Facility Documents, the New Warrants Agreement, the Rights Offering, the Backstop Commitment Letter, the Initial DIP Loan Documents, the DIP Facility, the Terminated RSA, the RSA, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan (including, but not limited to, the New Common Interests), or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth in Section 0 of the Plan (i) shall only be applicable to the maximum extent permitted by law; and (ii) shall not be construed as (a) releasing any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud (*provided* that actual fraud shall not exempt from the scope of these third-party releases any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, or (b) releasing any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

**SECTION 10.7        <u>EXCULPATION</u>.**

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out, in whole or in part, from the Petition Date through the Effective Date, of the Chapter 11 Cases, the Debtors, the governance, management, transactions,

ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors, the DIP Facility, the Convertible Notes Agreements, the Miner Equipment Lender Agreements, the Mortgage Agreements, the General Contracts, any and all agreements relating to M&M Liens, and related agreements, instruments, or other documents, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Plan Settlements, the New Secured Convertible Notes Documents, the New Secured Notes Documents, the Contingent Payment Obligations Documents, the New Miner Equipment Lender Debt Documents, the Exit Facility Documents, the New Warrants Agreement, the Rights Offering, the Backstop Commitment Letter, the Initial DIP Loan Documents, the DIP Facility, the Terminated RSA, the RSA, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan (including, but not limited to, the New Common Interests), or the distribution of property under the Plan, or any other related agreement, except for Claims or Causes of Action arising from an act or omission that is judicially determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects, such Exculpated Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities.  The Exculpated Parties have, and upon completion of the Plan, shall be deemed to have, participated in good faith and in compliance with all applicable laws with regard to the solicitation and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.  Notwithstanding anything to the contrary in the foregoing, the exculpations set forth in Section <u>Error! Reference source not found.</u> of the Plan (i) shall only be applicable to the maximum extent permitted by law; and (ii) shall not be construed as (a) exculpating any Exculpated Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud (*provided* that actual fraud shall not exempt from the scope of these exculpations any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, or (b) exculpating any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

**SECTION 5.17      <u>CANCELLATION OF LIENS</u>.**

(a)      Except as otherwise specifically provided in the Plan, including sections **Error! Reference source not found.** and **Error! Reference source not found.** of the Plan, all notes, instruments, certificates evidencing debt of the Debtors and Existing Common Interests

will be cancelled and obligations of the Debtors thereunder will be discharged and of no further force or effect, except for the purpose of allowing the applicable agents and trustees to receive distributions from the Debtors under the Plan and to make any further distributions to the applicable Holders on account of their Allowed Claims and Interests.

(b)     After the Effective Date and following (i) the distributions to Holders on account of Allowed Convertible Notes Secured Claims and Allowed Miner Equipment Lender Secured Claims and/or (ii) with regard to Allowed M&M Lien Secured Claims, satisfaction of the applicable M&M Lien Takeback Debt, the Debtors or the Reorganized Debtors, at their expense, may, in their sole discretion, take any action necessary to terminate, cancel, extinguish, and/or evidence the release of any and all mortgages, deeds of trust, Liens, pledges, and other security interests with respect to the Convertible Notes Secured Claims, Miner Equipment Lender Secured Claims, and M&M Lien Secured Claims, including, without limitation, the preparation and filing of any and all documents necessary to terminate, satisfy, or release any mortgages, deeds of trust, Liens, pledges, and other security interests held by the Holders of the M&M Lien Secured Claims, Miner Equipment Lender Secured Claims, the Notes Agent, and/or Convertible Noteholders, including, without limitation, UCC-3 termination statements.

**Relevant Definitions Related to Release and Exculpation Provisions**:

*"Exculpated Parties"* means each of the following in their capacity as such and, in each case, to the maximum extent permitted by law: (i) the Debtors; and (ii) Equity Committee and its members, each solely in their capacity as such.

*"Related Parties"* means with respect to a Person, that Person's current and former Affiliates, and such Person's and its current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, fiduciaries, trustees, advisory board members, financial advisors, partners, limited partners, general partners, attorneys, accountants, managed accounts or funds, management companies, fund advisors, investment bankers, consultants, representatives, and other professionals, and such Person's respective heirs, executors, estates, and nominees, each in their capacity as such, and any and all other Persons or Entities that may purport to assert any Cause of Action derivatively, by or through the foregoing entities.

*"Released Parties"* means, collectively: (i) the Debtors; (ii) the Reorganized Debtors; (iii) the Equity Committee and its members that are party to the RSA, solely in their capacities as such; (iv) the Backstop Parties; (v) the Settling Miner Equipment Lenders; (vi) Brown Corporation; (vii) Holliwood LLC; (viii) the Ad Hoc Noteholder Group; (ix) the Consenting Creditors; (x) the Exit Lenders; (xi) the Notes Agent, solely in its capacity as such; and (xii) with respect to each of the foregoing Persons in clauses (i) through (xi), all Related Parties.

Notwithstanding the foregoing, any Person that opts out of the releases set forth in section 10.6(b) of the Plan shall not be deemed a Released Party thereunder.

"**Releasing Parties**" means collectively, and in each case solely in their capacity as such, (i) the Debtors; (ii) the Reorganized Debtors; (iii) with respect to each of the foregoing Persons in clauses (i) through (ii), all Related Parties; (iv) the Released Parties; (v) the Holders of all Claims or Interests that vote to accept the Plan; (vi) the Holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but that do not vote either to accept or to reject the Plan and do not opt out of granting the releases set forth in the Plan; (vii) the Holders of all Claims or Interests that vote, or are deemed, to reject the Plan or that are presumed to accept the Plan but do not opt out of granting the releases set forth in the Plan; and (viii) the Holders of all Claims and Interests and all Other Beneficial Owners that were given notice of the opportunity to opt out of granting the releases set forth in the Plan but did not opt out.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

Dated:   [●], 2023
　　　　Houston, Texas

　　　　　　　　　　　　　　　　　　　 /s/ [DRAFT]
　　　　　　　　　　　　　　　　　WEIL, GOTSHAL & MANGES LLP
　　　　　　　　　　　　　　　　　Alfredo R. Pérez (15776275)
　　　　　　　　　　　　　　　　　Clifford W. Carlson (24090024)
　　　　　　　　　　　　　　　　　700 Louisiana Street, Suite 1700
　　　　　　　　　　　　　　　　　Houston, Texas  77002
　　　　　　　　　　　　　　　　　Telephone: (713) 546-5000
　　　　　　　　　　　　　　　　　Facsimile:  (713) 224-9511
　　　　　　　　　　　　　　　　　Email:  Alfredo.Perez@weil.com
　　　　　　　　　　　　　　　　　　　　　Clifford.Carlson@weil.com

　　　　　　　　　　　　　　　　　-and-

　　　　　　　　　　　　　　　　　WEIL, GOTSHAL & MANGES LLP
　　　　　　　　　　　　　　　　　Ray C. Schrock (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　Ronit J. Berkovich (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　767 Fifth Avenue
　　　　　　　　　　　　　　　　　New York, New York  10153
　　　　　　　　　　　　　　　　　Telephone:  (212) 310-8000
　　　　　　　　　　　　　　　　　Facsimile:  (212) 310-8007
　　　　　　　　　　　　　　　　　Email:  Ray.Schrock@weil.com
　　　　　　　　　　　　　　　　　　　　　Ronit.Berkovich@weil.com

　　　　　　　　　　　　　　　　　*Attorneys for Debtors*
　　　　　　　　　　　　　　　　　*and Debtors in Possession*

## Exhibit 14

**Form of Release Opt Out**

**OPTIONAL:**          **RELEASE OPT OUT FORM**

You are receiving this opt out form (the "**Release Opt Out Form**") because you (i) are or may be a Holder of a Claim against Core Scientific, Inc. and its debtor affiliates (collectively, the "**Debtors**") that is not entitled to vote on the *Third Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors*, filed on November 16, 2023 (Docket No. 1438) (as may be modified, amended, or supplemented, the "**Plan**")[1] or (ii) are a current or former shareholder of equity securities of the Debtors, purchased during the period from January 3, 2022 through December 20, 2022, inclusive (an "**Other Beneficial Owner**") that holds or may hold a claim that will be released pursuant to the Plan.   A holder of Claims, Interests, and/or an Other Beneficial Owner is deemed to grant the third-party releases set forth below unless such holder affirmatively opts out on or before the Opt Out Deadline (as defined below).

**THIS RELEASE OPT OUT FORM PROVIDES YOU WITH THE OPTION TO NOT GRANT THE VOLUNTARY RELEASE CONTAINED IN SECTION 10.6(b) OF THE PLAN.  PURSUANT TO THE PLAN, IF YOU, AS A HOLDER OF CLAIMS OR INTEREST, OR AS AN OTHER BENEFICIAL OWNER, WHO HAS BEEN GIVEN NOTICE OF THE OPPORTUNITY TO OPT OUT OF GRANTING THE RELEASES SET FORTH IN THE PLAN BUT DO NOT OPT OUT, YOU ARE AUTOMATICALLY DEEMED TO HAVE CONSENTED TO THE RELEASE PROVISIONS IN THE PLAN.  TO THE EXTENT THAT YOU HAVE AN ALLOWED CLAIM OR INTEREST, YOU WILL RECEIVE THE SAME RECOVERY AND TREATMENT ON ACCOUNT OF YOUR CLAIM OR INTEREST UNDER THE PLAN REGARDLESS OF WHETHER YOU ELECT TO NOT GRANT THE VOLUNTARY RELEASE CONTAINED IN SECTION 10.6(b) OF THE PLAN.  IF YOU ELECT TO NOT GRANT THE VOLUNTARY RELEASE CONTAINED IN SECTION 10.6(b) OF THE PLAN, HOWEVER, YOU MAY NOT BE A "RELEASED PARTY" WITH RESPECT TO THE VOLUNTARY THIRD-PARTY RELEASE BY RELEASING PARTIES.  IF YOU ARE ENTITLED TO VOTE ON THE PLAN AND VOTE TO ACCEPT THE PLAN, YOU SHALL BE DEEMED TO HAVE CONSENTED TO THE RELEASES CONTAINED IN SECTION 10.6(b) OF THE PLAN.**

**IF YOU ARE AN OTHER BENEFICIAL OWNER AND DO NOT OPT OUT OF GRANTING THE RELEASES SET FORTH IN SECTION 10.6(b) OF THE PLAN, YOU WILL BE AUTOMATICALLY DEEMED TO HAVE CONSENTED TO THE RELEASE PROVISIONS SET FORTH IN SECTION 10.6(b) OF THE PLAN, INCLUDING THE RELEASE OF ANY OF YOUR CLAIMS ASSERTED OR ASSERTABLE AGAINST THE DEBTORS' DIRECTORS AND OFFICERS IN THE SECURITIES CLASS ACTION LAWSUIT PENDING AGAINST IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TEXAS.**

**YOU WILL BE DEEMED TO HAVE RELEASED WHATEVER CLAIMS YOU MAY HAVE AGAINST THE DEBTORS AND MANY OTHER PEOPLE AND**

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan or the *Disclosure Statement for Third Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors*, filed on November 16, 2023 (Docket No. 1439) (as may be modified, amended, or supplemented, the "**Disclosure Statement**"), as applicable.

**ENTITIES (INCLUDING THE DEBTORS' OFFICERS AND DIRECTORS) UNLESS YOU RETURN OR ELECTRONICALLY SUBMIT THIS RELEASE OPT OUT FORM BY DECEMBER 13, 2023 AT 5:00 P.M. (PREVAILING CENTRAL TIME) (THE "OPT OUT DEADLINE").**

If you believe you are a holder of a Claim, Interest, or an Other Beneficial Owner with respect to the Debtors or Released Parties (as defined below) and choose to opt out of the third-party releases set forth in Section 10.6(b) of the Plan, please submit your election to opt out through one of the following methods: (i) completing, signing, dating, and returning this Release Opt Out Form promptly via first class mail (or in the enclosed reply envelope provided), overnight courier, or hand delivery to the Voting Agent at the address set forth below, so that it is received by the Voting Agent prior to the Opt Out Deadline, or (ii) by completing and signing the Release Opt Out Form via the Online Portal located at https://cases.stretto.com/CoreScientific.

**To ensure that your hard copy Release Opt Out Form is counted, clearly sign and return your Release Opt Out Form in the enclosed pre-addressed, or via first-class mail, overnight courier, or hand delivery to:**

| STRETTO'S ADDRESS FOR RECEIPT OF RELEASE OPT OUT FORM |
|:---:|
| CORE SCIENTIFIC, INC.<br>BALLOT PROCESSING CENTER<br>C/O STRETTO, INC.<br>410 EXCHANGE, SUITE 100<br>IRVINE, CA 92602 |

**THIS RELEASE OPT OUT FORM MUST BE ACTUALLY RECEIVED BY THE VOTING AGENT BY THE OPT OUT DEADLINE.  IF THE RELEASE OPT OUT FORM IS RECEIVED AFTER THE OPT OUT DEADLINE, IT WILL NOT BE COUNTED.**

**Item 1. Amount of Claim**. The undersigned hereby certifies that, as of September 25, 2023, the undersigned was the Holder (or authorized signatory of such a Holder) of Claims or Interests in the amount set forth below, or is an Other Beneficial Owner.

| | |
|:---:|:---:|
| Class 4 (Other Secured Claims) | Amount:  $_____ |
| Class 7 (Priority Non-Tax Claims) | Amount:  $_____ |
| Other Beneficial Owner | ☐ |

Item 2.          Releases.

      **The Plan contains the following release provisions:**

**SECTION 10.6(a)          RELEASES BY THE DEBTORS.**

      **NOTWITHSTANDING ANYTHING CONTAINED IN THE PLAN TO THE CONTRARY, AS OF THE EFFECTIVE DATE, PURSUANT TO SECTION 1123(B) OF THE BANKRUPTCY CODE, FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, INCLUDING THE OBLIGATIONS OF THE DEBTORS UNDER THE PLAN AND THE CONTRIBUTIONS OF THE RELEASED PARTIES TO FACILITATE AND IMPLEMENT THE PLAN, EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR IN THE CONFIRMATION ORDER, ON AND AFTER THE EFFECTIVE DATE, THE RELEASED PARTIES ARE DEEMED CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY AND IRREVOCABLY, RELEASED AND DISCHARGED BY THE DEBTORS, THE REORGANIZED DEBTORS, AND THE ESTATES FROM ANY AND ALL CLAIMS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES, AND LIABILITIES WHATSOEVER, INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, THAT THE DEBTORS, THE REORGANIZED DEBTORS, THE ESTATES, OR THEIR AFFILIATES WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER PERSON, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE CHAPTER 11 CASES, THE DEBTORS, THE GOVERNANCE, MANAGEMENT, TRANSACTIONS, OWNERSHIP, OR OPERATION OF THE DEBTORS, THE PURCHASE, SALE OR RESCISSION OF ANY SECURITY OF THE DEBTORS OR THE REORGANIZED DEBTORS (WHICH INCLUDES, FOR THE AVOIDANCE OF DOUBT, ALL CLAIMS AND CAUSES OF ACTION ASSERTED OR ASSERTABLE IN THE SECURITIES CLASS ACTION), THE DIP FACILITY, THE CONVERTIBLE NOTES AGREEMENTS, THE MINER EQUIPMENT LENDER AGREEMENTS, THE MORTGAGE AGREEMENTS, THE GENERAL CONTRACTS, ANY AND ALL AGREEMENTS RELATING TO M&M LIENS, THE FORMULATION, PREPARATION, DISSEMINATION, SOLICITATION, NEGOTIATION, ENTRY INTO, OR FILING OF THE PLAN (INCLUDING THE PLAN SUPPLEMENT), THE DISCLOSURE STATEMENT, OR ANY RESTRUCTURING TRANSACTION, CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT (INCLUDING ANY LEGAL OPINION REQUESTED BY ANY ENTITY REGARDING ANY TRANSACTION, CONTRACT, INSTRUMENT, DOCUMENT, OR OTHER AGREEMENT CONTEMPLATED BY THE PLAN OR THE RELIANCE BY ANY RELEASED PARTY ON THE PLAN OR CONFIRMATION ORDER IN LIEU OF SUCH LEGAL OPINION) CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN, THE PLAN SUPPLEMENT, THE DISCLOSURE STATEMENT, THE PLAN SETTLEMENTS, THE NEW SECURED CONVERTIBLE NOTES DOCUMENTS, THE**

3

NEW SECURED NOTES DOCUMENTS, THE CONTINGENT PAYMENT OBLIGATIONS DOCUMENTS, THE NEW MINER EQUIPMENT LENDER DEBT DOCUMENTS, THE EXIT FACILITY DOCUMENTS, THE NEW WARRANTS AGREEMENT, THE RIGHTS OFFERING, THE BACKSTOP COMMITMENT LETTER, THE INITIAL DIP LOAN DOCUMENTS, THE DIP FACILITY, THE TERMINATED RSA, THE RSA, THE CHAPTER 11 CASES, THE PURSUIT OF CONFIRMATION AND CONSUMMATION OF THE PLAN, THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN OR CONFIRMATION ORDER, INCLUDING THE ISSUANCE OR DISTRIBUTION OF SECURITIES PURSUANT TO THE PLAN (INCLUDING, BUT NOT LIMITED TO, THE NEW COMMON INTERESTS), OR THE DISTRIBUTION OF PROPERTY UNDER THE PLAN, OR ANY OTHER AGREEMENT, ACT OR OMISSION, TRANSACTION, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE.  NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASES SET FORTH IN SECTION 0 OF THE PLAN (I) SHALL ONLY BE APPLICABLE TO THE MAXIMUM EXTENT PERMITTED BY LAW; (II) SHALL NOT BE CONSTRUED AS (A) RELEASING ANY RELEASED PARTY FROM CLAIMS OR CAUSES OF ACTION ARISING FROM AN ACT OR OMISSION THAT IS JUDICIALLY DETERMINED BY A FINAL ORDER TO HAVE CONSTITUTED ACTUAL FRAUD (*PROVIDED* THAT ACTUAL FRAUD SHALL NOT EXEMPT FROM THE SCOPE OF THESE DEBTOR RELEASES ANY CLAIMS OR CAUSES OF ACTION ARISING UNDER SECTIONS 544 OR 548 OF THE BANKRUPTCY CODE OR STATE LAWS GOVERNING FRAUDULENT OR OTHERWISE AVOIDABLE TRANSFERS OR CONVEYANCES), WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE, (B) RELEASING ANY RELEASED PARTY FROM CLAIMS OR CAUSES OF ACTION HELD BY THE DEBTORS ARISING FROM AN ACT OR OMISSION THAT IS DETERMINED BY A FINAL ORDER OR BY A FEDERAL GOVERNMENT AGENCY TO HAVE CONSTITUTED A VIOLATION OF ANY FEDERAL SECURITIES LAWS OR (C) RELEASING ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, THE CONFIRMATION ORDER, ANY RESTRUCTURING TRANSACTION, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN.

**SECTION 10.6(b)    RELEASES BY HOLDERS OF CLAIMS AND INTERESTS.**

NOTWITHSTANDING ANYTHING CONTAINED IN THE PLAN TO THE CONTRARY, AS OF THE EFFECTIVE DATE, FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR IN THE CONFIRMATION ORDER, TO THE FULLEST EXTENT PERMISSIBLE UNDER APPLICABLE LAW, AS SUCH LAW MAY BE EXTENDED OR INTEGRATED AFTER THE EFFECTIVE DATE, EACH RELEASING PARTY, SHALL BE DEEMED TO HAVE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER, RELEASED, AND DISCHARGED THE DEBTORS, THE REORGANIZED DEBTORS, AND THE RELEASED PARTIES FROM ANY AND ALL CLAIMS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES, AND LIABILITIES

WHATSOEVER, INCLUDING ANY DERIVATIVE CLAIMS OR CAUSES OF ACTION ASSERTED OR THAT MAY BE ASSERTED ON BEHALF OF THE DEBTORS OR THEIR ESTATES, THAT SUCH ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, ANY ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE, INCLUDING ANY CLAIMS OR CAUSES OF ACTION BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE CHAPTER 11 CASES, THE DEBTORS, THE GOVERNANCE, MANAGEMENT, TRANSACTIONS, OWNERSHIP, OR OPERATION OF THE DEBTORS, THE PURCHASE, SALE OR RESCISSION OF ANY SECURITY OF THE DEBTORS OR THE REORGANIZED DEBTORS (WHICH INCLUDES, FOR THE AVOIDANCE OF DOUBT, ALL CLAIMS AND CAUSES OF ACTION ASSERTED OR ASSERTABLE IN THE SECURITIES CLASS ACTION), THE DIP FACILITY, THE CONVERTIBLE NOTES AGREEMENTS, THE MINER EQUIPMENT LENDER AGREEMENTS, THE MORTGAGE AGREEMENTS, THE GENERAL CONTRACTS, ANY AND ALL AGREEMENTS RELATING TO M&M LIENS, THE FORMULATION, PREPARATION, DISSEMINATION, SOLICITATION, NEGOTIATION, ENTRY INTO, OR FILING OF THE PLAN (INCLUDING THE PLAN SUPPLEMENT), THE DISCLOSURE STATEMENT, OR ANY RESTRUCTURING TRANSACTION, CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT (INCLUDING ANY LEGAL OPINION REQUESTED BY ANY ENTITY REGARDING ANY TRANSACTION, CONTRACT, INSTRUMENT, DOCUMENT, OR OTHER AGREEMENT CONTEMPLATED BY THE PLAN OR THE RELIANCE BY ANY RELEASED PARTY ON THE PLAN OR CONFIRMATION ORDER IN LIEU OF SUCH LEGAL OPINION) CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN, THE PLAN SUPPLEMENT, THE DISCLOSURE STATEMENT, THE PLAN SETTLEMENTS, THE NEW SECURED CONVERTIBLE NOTES DOCUMENTS, THE NEW SECURED NOTES DOCUMENTS, THE CONTINGENT PAYMENT OBLIGATIONS DOCUMENTS, THE NEW MINER EQUIPMENT LENDER DEBT DOCUMENTS, THE EXIT FACILITY DOCUMENTS, THE NEW WARRANTS AGREEMENT, THE RIGHTS OFFERING, THE BACKSTOP COMMITMENT LETTER, THE INITIAL DIP LOAN DOCUMENTS, THE DIP FACILITY, THE TERMINATED RSA, THE RSA, THE CHAPTER 11 CASES, THE PURSUIT OF CONFIRMATION AND CONSUMMATION OF THE PLAN, THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN OR CONFIRMATION ORDER, INCLUDING THE ISSUANCE OR DISTRIBUTION OF SECURITIES PURSUANT TO THE PLAN (INCLUDING, BUT NOT LIMITED TO, THE NEW COMMON INTERESTS), OR THE DISTRIBUTION OF PROPERTY UNDER THE PLAN, OR ANY OTHER AGREEMENT, ACT OR OMISSION, TRANSACTION, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASES SET FORTH IN

SECTION 0 OF THE PLAN (I) SHALL ONLY BE APPLICABLE TO THE MAXIMUM EXTENT PERMITTED BY LAW; AND (II) SHALL NOT BE CONSTRUED AS (A) RELEASING ANY RELEASED PARTY FROM CLAIMS OR CAUSES OF ACTION ARISING FROM AN ACT OR OMISSION THAT IS JUDICIALLY DETERMINED BY A FINAL ORDER TO HAVE CONSTITUTED ACTUAL FRAUD (*PROVIDED* THAT ACTUAL FRAUD SHALL NOT EXEMPT FROM THE SCOPE OF THESE THIRD-PARTY RELEASES ANY CLAIMS OR CAUSES OF ACTION ARISING UNDER SECTIONS 544 OR 548 OF THE BANKRUPTCY CODE OR STATE LAWS GOVERNING FRAUDULENT OR OTHERWISE AVOIDABLE TRANSFERS OR CONVEYANCES), WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE, OR (B) RELEASING ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, ANY RESTRUCTURING TRANSACTION, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN.

SECTION 10.7        **EXCULPATION**.

EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN, NO EXCULPATED PARTY SHALL HAVE OR INCUR LIABILITY FOR, AND EACH EXCULPATED PARTY IS HEREBY RELEASED AND EXCULPATED FROM, ANY CAUSE OF ACTION FOR ANY CLAIM RELATED TO ANY ACT OR OMISSION IN CONNECTION WITH, RELATING TO, OR ARISING OUT, IN WHOLE OR IN PART, FROM THE PETITION DATE THROUGH THE EFFECTIVE DATE, OF THE CHAPTER 11 CASES, THE DEBTORS, THE GOVERNANCE, MANAGEMENT, TRANSACTIONS, OWNERSHIP, OR OPERATION OF THE DEBTORS, THE PURCHASE, SALE OR RESCISSION OF ANY SECURITY OF THE DEBTORS OR THE REORGANIZED DEBTORS, THE DIP FACILITY, THE CONVERTIBLE NOTES AGREEMENTS, THE MINER EQUIPMENT LENDER AGREEMENTS, THE MORTGAGE AGREEMENTS, THE GENERAL CONTRACTS, ANY AND ALL AGREEMENTS RELATING TO M&M LIENS, AND RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS, THE FORMULATION, PREPARATION, DISSEMINATION, SOLICITATION, NEGOTIATION, ENTRY INTO, OR FILING OF THE PLAN (INCLUDING THE PLAN SUPPLEMENT), THE DISCLOSURE STATEMENT, OR ANY RESTRUCTURING TRANSACTION, CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT (INCLUDING ANY LEGAL OPINION REQUESTED BY ANY ENTITY REGARDING ANY TRANSACTION, CONTRACT, INSTRUMENT, DOCUMENT, OR OTHER AGREEMENT CONTEMPLATED BY THE PLAN OR THE RELIANCE BY ANY RELEASED PARTY ON THE PLAN OR CONFIRMATION ORDER IN LIEU OF SUCH LEGAL OPINION) CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN, THE PLAN SUPPLEMENT, THE DISCLOSURE STATEMENT, THE PLAN SETTLEMENTS, THE NEW SECURED CONVERTIBLE NOTES DOCUMENTS, THE NEW SECURED NOTES DOCUMENTS, THE CONTINGENT PAYMENT OBLIGATIONS DOCUMENTS,THE NEW MINER EQUIPMENT LENDER DEBT DOCUMENTS, THE EXIT FACILITY DOCUMENTS, THE NEW WARRANTS AGREEMENT, THE RIGHTS OFFERING, THE BACKSTOP COMMITMENT LETTER, THE INITIAL DIP LOAN DOCUMENTS, THE DIP FACILITY, THE

TERMINATED RSA, THE RSA, THE CHAPTER 11 CASES, THE PURSUIT OF CONFIRMATION AND CONSUMMATION OF THE PLAN, THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN OR CONFIRMATION ORDER, INCLUDING THE ISSUANCE OR DISTRIBUTION OF SECURITIES PURSUANT TO THE PLAN (INCLUDING, BUT NOT LIMITED TO, THE NEW COMMON INTERESTS), OR THE DISTRIBUTION OF PROPERTY UNDER THE PLAN, OR ANY OTHER RELATED AGREEMENT, EXCEPT FOR CLAIMS OR CAUSES OF ACTION ARISING FROM AN ACT OR OMISSION THAT IS JUDICIALLY DETERMINED IN A FINAL ORDER TO HAVE CONSTITUTED ACTUAL FRAUD, WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE, BUT IN ALL RESPECTS, SUCH EXCULPATED PARTIES SHALL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES.  THE EXCULPATED PARTIES HAVE, AND UPON COMPLETION OF THE PLAN, SHALL BE DEEMED TO HAVE, PARTICIPATED IN GOOD FAITH AND IN COMPLIANCE WITH ALL APPLICABLE LAWS WITH REGARD TO THE SOLICITATION AND DISTRIBUTION OF, CONSIDERATION PURSUANT TO THE PLAN AND, THEREFORE, ARE NOT, AND ON ACCOUNT OF SUCH DISTRIBUTIONS SHALL NOT BE, LIABLE AT ANY TIME FOR THE VIOLATION OF ANY APPLICABLE LAW, RULE, OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OR SUCH DISTRIBUTIONS MADE PURSUANT TO THE PLAN. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE EXCULPATIONS SET FORTH IN SECTION ERROR! REFERENCE SOURCE NOT FOUND. OF THE PLAN (I) SHALL ONLY BE APPLICABLE TO THE MAXIMUM EXTENT PERMITTED BY LAW; AND (II) SHALL NOT BE CONSTRUED AS (A) EXCULPATING ANY EXCULPATED PARTY FROM CLAIMS OR CAUSES OF ACTION ARISING FROM AN ACT OR OMISSION THAT IS JUDICIALLY DETERMINED BY A FINAL ORDER TO HAVE CONSTITUTED ACTUAL FRAUD (*PROVIDED* THAT ACTUAL FRAUD SHALL NOT EXEMPT FROM THE SCOPE OF THESE EXCULPATIONS ANY CLAIMS OR CAUSES OF ACTION ARISING UNDER SECTIONS 544 OR 548 OF THE BANKRUPTCY CODE OR STATE LAWS GOVERNING FRAUDULENT OR OTHERWISE AVOIDABLE TRANSFERS OR CONVEYANCES), WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE, OR (B) EXCULPATING ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, ANY RESTRUCTURING TRANSACTION, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN.

SECTION 10.5      INJUNCTION.

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR FOR DISTRIBUTIONS REQUIRED TO BE PAID OR DELIVERED PURSUANT TO THE PLAN OR THE CONFIRMATION ORDER, ALL ENTITIES THAT HAVE HELD, HOLD, OR MAY HOLD CLAIMS OR INTERESTS THAT HAVE BEEN RELEASED PURSUANT TO SECTION 0 OR SECTION 0, SHALL BE DISCHARGED PURSUANT TO SECTION ERROR! REFERENCE SOURCE NOT FOUND. OF THE PLAN, OR ARE SUBJECT TO EXCULPATION PURSUANT TO SECTION ERROR! REFERENCE SOURCE NOT FOUND., AND ALL SUBCONTRACTORS AND ALL OTHER PARTIES

**IN INTEREST ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST, AS APPLICABLE, THE DEBTORS, THE REORGANIZED DEBTORS, THE RELEASED PARTIES, AND/OR THE EXCULPATED PARTIES (TO THE EXTENT OF THE EXCULPATION PROVIDED PURSUANT TO SECTION ERROR! REFERENCE SOURCE NOT FOUND. WITH RESPECT TO THE EXCULPATED PARTIES): (I) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (II) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (III) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE OF ANY KIND AGAINST SUCH ENTITIES OR THE PROPERTY OR THE ESTATES OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (IV) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION, OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE FROM SUCH ENTITIES OR AGAINST THE PROPERTY OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS UNLESS (X) SUCH ENTITY HAS TIMELY ASSERTED SUCH SETOFF RIGHT EITHER IN A FILED PROOF OF CLAIM, OR IN ANOTHER DOCUMENT FILED WITH THE BANKRUPTCY COURT EXPLICITLY PRESERVING SUCH SETOFF OR THAT OTHERWISE INDICATES THAT SUCH ENTITY ASSERTS, HAS, OR INTENDS TO PRESERVE ANY RIGHT OF SETOFF PURSUANT TO APPLICABLE LAW OR OTHERWISE OR (Y) SUCH RIGHT TO SETOFF ARISES UNDER A POSTPETITION AGREEMENT WITH THE DEBTORS OR AN EXECUTORY CONTRACT THAT HAS BEEN ASSUMED BY THE DEBTORS AS OF THE EFFECTIVE DATE; AND (V) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS RELEASED, SETTLED, AND/OR TREATED, ENTITLED TO A DISTRIBUTION, OR CANCELLED PURSUANT TO THE PLAN OR OTHERWISE DISALLOWED; *PROVIDED* THAT SUCH PERSONS WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS AGAINST, OR INTERESTS IN, A DEBTOR, A REORGANIZED DEBTOR, OR AN ESTATE SHALL NOT BE PRECLUDED FROM EXERCISING THEIR RIGHTS AND REMEDIES, OR OBTAINING THE BENEFITS, SOLELY PURSUANT TO AND CONSISTENT WITH THE TERMS OF THE PLAN.**

**SUBJECT IN ALL RESPECTS TO SECTION ERROR! REFERENCE SOURCE NOT FOUND., NO ENTITY OR PERSON MAY COMMENCE OR PURSUE A CLAIM OR CAUSE OF ACTION OF ANY KIND AGAINST ANY RELEASED PARTY OR EXCULPATED PARTY THAT AROSE OR ARISES FROM, IN WHOLE OR IN PART, THE CHAPTER 11 CASES, THE DEBTORS, THE GOVERNANCE, MANAGEMENT, TRANSACTIONS, OWNERSHIP, OR OPERATION OF THE DEBTORS, THE PURCHASE, SALE OR RESCISSION OF ANY SECURITY OF THE DEBTORS OR THE REORGANIZED DEBTORS (WHICH INCLUDES, FOR THE**

AVOIDANCE OF DOUBT, ALL CLAIMS AND CAUSES OF ACTION ASSERTED OR ASSERTABLE IN THE SECURITIES CLASS ACTION), THE DIP FACILITY, THE CONVERTIBLE NOTES AGREEMENTS, THE MINER EQUIPMENT LENDER AGREEMENTS, THE MORTGAGE AGREEMENTS, THE GENERAL CONTRACTS, ANY AND ALL AGREEMENTS RELATING TO M&M LIENS, AND ANY AND ALL RELATED AGREEMENTS, INSTRUMENTS, AND/OR OTHER DOCUMENTS, THE FORMULATION, PREPARATION, DISSEMINATION, SOLICITATION, NEGOTIATION, ENTRY INTO, OR FILING OF THE PLAN (INCLUDING THE PLAN SUPPLEMENT), THE DISCLOSURE STATEMENT, OR ANY RESTRUCTURING TRANSACTION, CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT (INCLUDING ANY LEGAL OPINION REQUESTED BY ANY ENTITY REGARDING ANY TRANSACTION, CONTRACT, INSTRUMENT, DOCUMENT, OR OTHER AGREEMENT CONTEMPLATED BY THE PLAN OR THE RELIANCE BY ANY RELEASED PARTY ON THE PLAN OR CONFIRMATION ORDER IN LIEU OF SUCH LEGAL OPINION) CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN, THE PLAN SUPPLEMENT, THE DISCLOSURE STATEMENT, THE PLAN SETTLEMENTS, THE NEW SECURED CONVERTIBLE NOTES DOCUMENTS, THE NEW SECURED NOTES DOCUMENTS, THE CONTINGENT PAYMENT OBLIGATIONS DOCUMENTS,THE NEW MINER EQUIPMENT LENDER DEBT DOCUMENTS, THE EXIT FACILITY DOCUMENTS, THE NEW WARRANTS AGREEMENT, THE RIGHTS OFFERING, THE BACKSTOP COMMITMENT LETTER, THE INITIAL DIP LOAN DOCUMENTS, THE DIP FACILITY, THE TERMINATED RSA, THE RSA, THE CHAPTER 11 CASES, THE PURSUIT OF CONFIRMATION AND CONSUMMATION OF THE PLAN, THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN OR CONFIRMATION ORDER, INCLUDING THE ISSUANCE OR DISTRIBUTION OF SECURITIES PURSUANT TO THE PLAN (INCLUDING, BUT NOT LIMITED TO, THE NEW COMMON INTERESTS), OR THE DISTRIBUTION OF PROPERTY UNDER THE PLAN, OR ANY OTHER AGREEMENT, ACT OR OMISSION, TRANSACTION, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE RELATED OR RELATING TO THE FOREGOING WITHOUT THE BANKRUPTCY COURT (I) FIRST DETERMINING, AFTER NOTICE AND A HEARING, THAT SUCH CLAIM OR CAUSE OF ACTION REPRESENTS A CLAIM OF WILLFUL MISCONDUCT, FRAUD OR GROSS NEGLIGENCE AGAINST A RELEASED PARTY OR EXCULPATED PARTY AND (II) SPECIFICALLY AUTHORIZING SUCH ENTITY OR PERSON TO BRING SUCH CLAIM OR CAUSE OF ACTION AGAINST ANY SUCH RELEASED PARTY OR EXCULPATED PARTY.  THE BANKRUPTCY COURT SHALL HAVE SOLE AND EXCLUSIVE JURISDICTION TO DETERMINE WHETHER A CLAIM OR CAUSE OF ACTION IS COLORABLE AND, ONLY TO THE EXTENT LEGALLY PERMISSIBLE AND AS PROVIDED FOR IN SECTION ERROR! REFERENCE SOURCE NOT FOUND., SHALL HAVE JURISDICTION TO ADJUDICATE THE UNDERLYING COLORABLE CLAIM OR CAUSE OF ACTION.

**SECTION 5.17**      **CANCELLATION OF LIENS.**

(a)      Except as otherwise specifically provided in the Plan, including sections **Error! Reference source not found.** and **Error! Reference source not found.** of the Plan, all notes,

instruments, certificates evidencing debt of the Debtors and Existing Common Interests will be cancelled and obligations of the Debtors thereunder will be discharged and of no further force or effect, except for the purpose of allowing the applicable agents and trustees to receive distributions from the Debtors under the Plan and to make any further distributions to the applicable Holders on account of their Allowed Claims and Interests.

(b)     After the Effective Date and following (i) the distributions to Holders on account of Allowed Convertible Notes Secured Claims and Allowed Miner Equipment Lender Secured Claims and/or (ii) with regard to Allowed M&M Lien Secured Claims, satisfaction of the applicable M&M Lien Takeback Debt, the Debtors or the Reorganized Debtors, at their expense, may, in their sole discretion, take any action necessary to terminate, cancel, extinguish, and/or evidence the release of any and all mortgages, deeds of trust, Liens, pledges, and other security interests with respect to the Convertible Notes Secured Claims, Miner Equipment Lender Secured Claims, and M&M Lien Secured Claims, including, without limitation, the preparation and filing of any and all documents necessary to terminate, satisfy, or release any mortgages, deeds of trust, Liens, pledges, and other security interests held by the Holders of the M&M Lien Secured Claims, Miner Equipment Lender Secured Claims, the Notes Agent, and/or Convertible Noteholders, including, without limitation, UCC-3 termination statements.

**Relevant Definitions Related to Release and Exculpation Provisions**:

*"Exculpated Parties"* means each of the following in their capacity as such and, in each case, to the maximum extent permitted by law: (i) the Debtors; and (ii) Equity Committee and its members, each solely in their capacity as such.

*"Related Parties"* means with respect to a Person, that Person's current and former Affiliates, and such Person's and its current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, fiduciaries, trustees, advisory board members, financial advisors, partners, limited partners, general partners, attorneys, accountants, managed accounts or funds, management companies, fund advisors, investment bankers, consultants, representatives, and other professionals, and such Person's respective heirs, executors, estates, and nominees, each in their capacity as such, and any and all other Persons or Entities that may purport to assert any Cause of Action derivatively, by or through the foregoing entities.

*"Released Parties"* means, collectively: (i) the Debtors; (ii) the Reorganized Debtors; (iii) the Equity Committee and its members that are party to the RSA, solely in their capacities as such; (iv) the Backstop Parties; (v) the Settling Miner Equipment Lenders; (vi) Brown Corporation; (vii) Holliwood LLC; (viii) the Ad Hoc Noteholder Group; (ix) the Consenting Creditors; (x) the Exit Lenders; (xi) the Notes Agent, solely in its capacity as such; and (xii) with respect to each of the foregoing Persons in clauses (i) through (xi), all Related Parties. Notwithstanding the foregoing, any Person that opts out of the releases set forth in section 10.6(b) of the Plan shall not be deemed a Released Party thereunder.

10

*"Releasing Parties"* means collectively, and in each case solely in their capacity as such, (i) the Debtors; (ii) the Reorganized Debtors; (iii) with respect to each of the foregoing Persons in clauses (i) through (ii), all Related Parties; (iv) the Released Parties; (v) the Holders of all Claims or Interests that vote to accept the Plan; (vi) the Holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but that do not vote either to accept or to reject the Plan and do not opt out of granting the releases set forth in the Plan; (vii) the Holders of all Claims or Interests that vote, or are deemed, to reject the Plan or that are presumed to accept the Plan but do not opt out of granting the releases set forth in the Plan; and (viii) the Holders of all Claims and Interests and all Other Beneficial Owners that were given notice of the opportunity to opt out of granting the releases set forth in the Plan but did not opt out.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

**PURSUANT TO THE PLAN, IF YOU, AS A HOLDER OF CLAIMS OR AN OTHER BENEFICIAL OWNER WHO HAS BEEN GIVEN NOTICE OF THE OPPORTUNITY TO OPT OUT OF GRANTING THE RELEASES SET FORTH IN SECTION 10.6(b) OF THE PLAN BUT DO NOT OPT OUT, YOU ARE AUTOMATICALLY DEEMED TO HAVE CONSENTED TO THE RELEASE PROVISIONS IN SECTION 10.6(b) OF THE PLAN.**

**By checking the box below, the undersigned Holder of a Claim not entitled to vote or Other Beneficial Owner identified in Item 1 above, having received notice of the opportunity to opt out of granting the releases contained in Section 10.6(b) of the Plan:**

---

☐ **Elects to <u>OPT OUT</u> of the releases contained in Section 10.6(b) of the Plan.**

---

**Item 3.**     **Certifications**. By signing this Release Opt Out Form, the undersigned certifies that:

    a.    as of the Voting Record Date, either: (i) the Holder is the Holder of the Claims set forth in Item 1; (ii) the Holder is an authorized signatory for an entity that is the Holder of the Claims set forth in Item 1; or (iii) it is an Other Beneficial Owner;

    b.    the undersigned has received a copy of the Release Opt Out Form and that the Release Opt Out Form is made pursuant to the terms and conditions set forth therein;

    c.    if applicable, the undersigned has submitted the same election concerning the releases with respect to all Claims in a single Class set forth in Item 1; and

    d.    that no other Release Opt Out Form with respect to the amount(s) of Claims identified in Item 1 or on account of being an Other Beneficial Owner have been submitted or, if any other Release Opt Out Forms have been submitted

11

with respect to such Claims or on account of being an Other Beneficial Owner, then any such earlier Release Opt Out Forms are hereby revoked.

| | |
|---|---|
| Name of Holder or Other Beneficial Owner: | |
| Signature: | |
| Name of Signatory (if different from Holder or Other Beneficial Owner): | |
| Title (if applicable): | |
| City, State, Zip Code: | |
| Telephone Number: | |
| Date Completed: | |

**IF YOU WISH TO OPT OUT, PLEASE COMPLETE, SIGN, AND DATE THIS RELEASE OPT OUT FORM AND RETURN IT TO THE VOTING AGENT BY *JUST ONE* OF THE FOLLOWING METHODS: MAIL, OVERNIGHT OR HAND DELIVERY, OR BY ONLINE TRANSMISSION VIA ONLINE PORTAL:**

| STRETTO'S ADDRESS FOR RECEIPT OF RELEASE OPT OUT FORM |
|---|
| **CORE SCIENTIFIC, INC.**<br>**BALLOT PROCESSING CENTER**<br>**C/O STRETTO, INC.**<br>**410 EXCHANGE, SUITE 100**<br>**IRVINE, CA 92602** |

**THE OPT OUT DEADLINE IS DECEMBER 13, 2023 AT 5:00 P.M. (PREVAILING CENTRAL TIME).**

**USE OF ONLINE OPT-OUT FORM**

**You may submit your Release Opt Out Form by electronic, online transmission solely through the Online Portal found on the Debtors' case information website and following the directions set forth on the Online Portal regarding submitting your Release Opt Out Form as described more fully below.**

1.      **Please visit https://cases.stretto.com/CoreScientific/;**

2.      **Click on the "Submit E-Ballot" section of the Debtors' website;**

3.      **Follow the directions to submit your Release Opt Out Form. If you choose to submit your Release Opt Out Form via the Online Portal, you should not return a hard copy of your Release Opt-Out Form.**

**THE ONLINE PORTAL IS THE SOLE MANNER IN WHICH RELEASE OPT OUT FORMS MAY BE DELIVERED VIA ELECTRONIC TRANSMISSION.**

**RELEASE OPT OUT FORMS SUBMITTED BY FACSIMILE OR EMAIL WILL NOT BE COUNTED.**

**<u>Exhibit 14</u>**

**Form of Release Opt Out**

**OPTIONAL:          RELEASE OPT OUT FORM**

        You are receiving this opt out form (the "**Release Opt Out Form**") because you (i) are or may be a Holder of a Claim against Core Scientific, Inc. and its debtor affiliates (collectively, the "**Debtors**") that is not entitled to vote on the *Third Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors*, filed on November 16, 2023 (Docket No. 1438) (as may be modified, amended, or supplemented, the "**Plan**")[1] or (ii) are a current or former shareholder of equity securities of the Debtors, purchased during the period from January 3, 2022 through December 20, 2022, inclusive (an "**Other Beneficial Owner**") that holds or may hold a claim that will be released pursuant to the Plan.   A holder of Claims, Interests, and/or an Other Beneficial Owner is deemed to grant the third-party releases set forth below unless such holder affirmatively opts out on or before the Opt Out Deadline (as defined below).

        **THIS RELEASE OPT OUT FORM PROVIDES YOU WITH THE OPTION TO NOT GRANT THE VOLUNTARY RELEASE CONTAINED IN SECTION 10.6(b) OF THE PLAN.  PURSUANT TO THE PLAN, IF YOU, AS A HOLDER OF CLAIMS OR INTEREST, OR AS AN OTHER BENEFICIAL OWNER, WHO HAS BEEN GIVEN NOTICE OF THE OPPORTUNITY TO OPT OUT OF GRANTING THE RELEASES SET FORTH IN THE PLAN BUT DO NOT OPT OUT, YOU ARE AUTOMATICALLY DEEMED TO HAVE CONSENTED TO THE RELEASE PROVISIONS IN THE PLAN.  TO THE EXTENT THAT YOU HAVE AN ALLOWED CLAIM OR INTEREST, YOU WILL RECEIVE THE SAME RECOVERY AND TREATMENT ON ACCOUNT OF YOUR CLAIM OR INTEREST UNDER THE PLAN REGARDLESS OF WHETHER YOU ELECT TO NOT GRANT THE VOLUNTARY RELEASE CONTAINED IN SECTION 10.6(b) OF THE PLAN.  IF YOU ELECT TO NOT GRANT THE VOLUNTARY RELEASE CONTAINED IN SECTION 10.6(b) OF THE PLAN, HOWEVER, YOU MAY NOT BE A "RELEASED PARTY" WITH RESPECT TO THE VOLUNTARY THIRD-PARTY RELEASE BY RELEASING PARTIES.  IF YOU ARE ENTITLED TO VOTE ON THE PLAN AND VOTE TO ACCEPT THE PLAN, YOU SHALL BE DEEMED TO HAVE CONSENTED TO THE RELEASES CONTAINED IN SECTION 10.6(b) OF THE PLAN.**

        **IF YOU ARE AN OTHER BENEFICIAL OWNER AND DO NOT OPT OUT OF GRANTING THE RELEASES SET FORTH IN SECTION 10.6(b) OF THE PLAN, YOU WILL BE AUTOMATICALLY DEEMED TO HAVE CONSENTED TO THE RELEASE PROVISIONS SET FORTH IN SECTION 10.6(b) OF THE PLAN, INCLUDING THE RELEASE OF ANY OF YOUR CLAIMS ASSERTED OR ASSERTABLE AGAINST THE DEBTORS' DIRECTORS AND OFFICERS IN THE SECURITIES CLASS ACTION LAWSUIT PENDING AGAINST IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TEXAS.**

        **YOU WILL BE DEEMED TO HAVE RELEASED WHATEVER CLAIMS YOU MAY HAVE AGAINST THE DEBTORS AND MANY OTHER PEOPLE AND**

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan or the *Disclosure Statement for Third Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors*, filed on November 16, 2023 (Docket No. 1439) (as may be modified, amended, or supplemented, the "**Disclosure Statement**"), as applicable.

**ENTITIES (INCLUDING THE DEBTORS' OFFICERS AND DIRECTORS) UNLESS YOU RETURN OR ELECTRONICALLY SUBMIT THIS RELEASE OPT OUT FORM BY DECEMBER 13, 2023 AT 5:00 P.M. (PREVAILING CENTRAL TIME) (THE "OPT OUT DEADLINE").**

If you believe you are a holder of a Claim, Interest, or an Other Beneficial Owner with respect to the Debtors or Released Parties (as defined below) and choose to opt out of the third-party releases set forth in Section 10.6(b) of the Plan, please submit your election to opt out through one of the following methods: (i) completing, signing, dating, and returning this Release Opt Out Form promptly via first class mail (or in the enclosed reply envelope provided), overnight courier, or hand delivery to the Voting Agent at the address set forth below, so that it is received by the Voting Agent prior to the Opt Out Deadline, or (ii) by completing and signing the Release Opt Out Form via the Online Portal located at https://cases.stretto.com/CoreScientific.

**To ensure that your hard copy Release Opt Out Form is counted, clearly sign and return your Release Opt Out Form in the enclosed pre-addressed, or via first-class mail, overnight courier, or hand delivery to:**

| STRETTO'S ADDRESS FOR RECEIPT OF RELEASE OPT OUT FORM |
|:---:|
| CORE SCIENTIFIC, INC.<br>BALLOT PROCESSING CENTER<br>C/O STRETTO, INC.<br>410 EXCHANGE, SUITE 100<br>IRVINE, CA 92602 |

**THIS RELEASE OPT OUT FORM MUST BE ACTUALLY RECEIVED BY THE VOTING AGENT BY THE OPT OUT DEADLINE. IF THE RELEASE OPT OUT FORM IS RECEIVED AFTER THE OPT OUT DEADLINE, IT WILL NOT BE COUNTED.**

**Item 1.Amount of Claim**. The undersigned hereby certifies that, as of September 25, 2023, the undersigned was the Holder (or authorized signatory of such a Holder) of Claims or Interests in the amount set forth below, or is an Other Beneficial Owner.

| | |
|:---:|:---:|
| Class 4 (Other Secured Claims) | Amount: $_____ |
| Class 7 (Priority Non-Tax Claims) | Amount: $_____ |
| Other Beneficial Owner | ☐ |

Item 2.        Releases.

        The Plan contains the following release provisions:

SECTION 10.6(a)     RELEASES BY THE DEBTORS.

        NOTWITHSTANDING ANYTHING CONTAINED IN THE PLAN TO THE CONTRARY, AS OF THE EFFECTIVE DATE, PURSUANT TO SECTION 1123(B) OF THE BANKRUPTCY CODE, FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, INCLUDING THE OBLIGATIONS OF THE DEBTORS UNDER THE PLAN AND THE CONTRIBUTIONS OF THE RELEASED PARTIES TO FACILITATE AND IMPLEMENT THE PLAN, EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR IN THE CONFIRMATION ORDER, ON AND AFTER THE EFFECTIVE DATE, THE RELEASED PARTIES ARE DEEMED CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY AND IRREVOCABLY, RELEASED AND DISCHARGED BY THE DEBTORS, THE REORGANIZED DEBTORS, AND THE ESTATES FROM ANY AND ALL CLAIMS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES, AND LIABILITIES WHATSOEVER, INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, THAT THE DEBTORS, THE REORGANIZED DEBTORS, THE ESTATES, OR THEIR AFFILIATES WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER PERSON, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE CHAPTER 11 CASES, THE DEBTORS, THE GOVERNANCE, MANAGEMENT, TRANSACTIONS, OWNERSHIP, OR OPERATION OF THE DEBTORS, THE PURCHASE, SALE OR RESCISSION OF ANY SECURITY OF THE DEBTORS OR THE REORGANIZED DEBTORS (WHICH INCLUDES, FOR THE AVOIDANCE OF DOUBT, ALL CLAIMS AND CAUSES OF ACTION ASSERTED OR ASSERTABLE IN THE SECURITIES CLASS ACTION), THE DIP FACILITY, THE CONVERTIBLE NOTES AGREEMENTS, THE MINER EQUIPMENT LENDER AGREEMENTS, THE MORTGAGE AGREEMENTS, THE GENERAL CONTRACTS, ANY AND ALL AGREEMENTS RELATING TO M&M LIENS, THE FORMULATION, PREPARATION, DISSEMINATION, SOLICITATION, NEGOTIATION, ENTRY INTO, OR FILING OF THE PLAN (INCLUDING THE PLAN SUPPLEMENT), THE DISCLOSURE STATEMENT, OR ANY RESTRUCTURING TRANSACTION, CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT (INCLUDING ANY LEGAL OPINION REQUESTED BY ANY ENTITY REGARDING ANY TRANSACTION, CONTRACT, INSTRUMENT, DOCUMENT, OR OTHER AGREEMENT CONTEMPLATED BY THE PLAN OR THE RELIANCE BY ANY RELEASED PARTY ON THE PLAN OR CONFIRMATION ORDER IN LIEU OF SUCH LEGAL OPINION) CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN, THE PLAN SUPPLEMENT, THE DISCLOSURE STATEMENT, THE PLAN SETTLEMENTS, THE NEW SECURED CONVERTIBLE NOTES DOCUMENTS, THE

**NEW SECURED NOTES DOCUMENTS, THE CONTINGENT PAYMENT OBLIGATIONS DOCUMENTS, THE NEW MINER EQUIPMENT LENDER DEBT DOCUMENTS, THE EXIT FACILITY DOCUMENTS, THE NEW WARRANTS AGREEMENT, THE RIGHTS OFFERING, THE BACKSTOP COMMITMENT LETTER, THE INITIAL DIP LOAN DOCUMENTS, THE DIP FACILITY, THE TERMINATED RSA, THE RSA, THE CHAPTER 11 CASES, THE PURSUIT OF CONFIRMATION AND CONSUMMATION OF THE PLAN, THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN OR CONFIRMATION ORDER, INCLUDING THE ISSUANCE OR DISTRIBUTION OF SECURITIES PURSUANT TO THE PLAN (INCLUDING, BUT NOT LIMITED TO, THE NEW COMMON INTERESTS), OR THE DISTRIBUTION OF PROPERTY UNDER THE PLAN, OR ANY OTHER AGREEMENT, ACT OR OMISSION, TRANSACTION, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASES SET FORTH IN SECTION 0 OF THE PLAN (I) SHALL ONLY BE APPLICABLE TO THE MAXIMUM EXTENT PERMITTED BY LAW; (II) SHALL NOT BE CONSTRUED AS (A) RELEASING ANY RELEASED PARTY FROM CLAIMS OR CAUSES OF ACTION ARISING FROM AN ACT OR OMISSION THAT IS JUDICIALLY DETERMINED BY A FINAL ORDER TO HAVE CONSTITUTED ACTUAL FRAUD (*PROVIDED* THAT ACTUAL FRAUD SHALL NOT EXEMPT FROM THE SCOPE OF THESE DEBTOR RELEASES ANY CLAIMS OR CAUSES OF ACTION ARISING UNDER SECTIONS 544 OR 548 OF THE BANKRUPTCY CODE OR STATE LAWS GOVERNING FRAUDULENT OR OTHERWISE AVOIDABLE TRANSFERS OR CONVEYANCES), WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE, (B) RELEASING ANY RELEASED PARTY FROM CLAIMS OR CAUSES OF ACTION HELD BY THE DEBTORS ARISING FROM AN ACT OR OMISSION THAT IS DETERMINED BY A FINAL ORDER OR BY A FEDERAL GOVERNMENT AGENCY TO HAVE CONSTITUTED A VIOLATION OF ANY FEDERAL SECURITIES LAWS OR (C) RELEASING ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, THE CONFIRMATION ORDER, ANY RESTRUCTURING TRANSACTION, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN.**

**SECTION 10.6(b)**     **RELEASES BY HOLDERS OF CLAIMS AND INTERESTS.**

**NOTWITHSTANDING ANYTHING CONTAINED IN THE PLAN TO THE CONTRARY, AS OF THE EFFECTIVE DATE, FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR IN THE CONFIRMATION ORDER, TO THE FULLEST EXTENT PERMISSIBLE UNDER APPLICABLE LAW, AS SUCH LAW MAY BE EXTENDED OR INTEGRATED AFTER THE EFFECTIVE DATE, EACH RELEASING PARTY, SHALL BE DEEMED TO HAVE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER, RELEASED, AND DISCHARGED THE DEBTORS, THE REORGANIZED DEBTORS, AND THE RELEASED PARTIES FROM ANY AND ALL CLAIMS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES, AND LIABILITIES**

WHATSOEVER, INCLUDING ANY DERIVATIVE CLAIMS OR CAUSES OF ACTION ASSERTED OR THAT MAY BE ASSERTED ON BEHALF OF THE DEBTORS OR THEIR ESTATES, THAT SUCH ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, ANY ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE, INCLUDING ANY CLAIMS OR CAUSES OF ACTION BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE CHAPTER 11 CASES, THE DEBTORS, THE GOVERNANCE, MANAGEMENT, TRANSACTIONS, OWNERSHIP, OR OPERATION OF THE DEBTORS, THE PURCHASE, SALE OR RESCISSION OF ANY SECURITY OF THE DEBTORS OR THE REORGANIZED DEBTORS (WHICH INCLUDES, FOR THE AVOIDANCE OF DOUBT, ALL CLAIMS AND CAUSES OF ACTION ASSERTED OR ASSERTABLE IN THE SECURITIES CLASS ACTION), THE DIP FACILITY, THE CONVERTIBLE NOTES AGREEMENTS, THE MINER EQUIPMENT LENDER AGREEMENTS, THE MORTGAGE AGREEMENTS, THE GENERAL CONTRACTS, ANY AND ALL AGREEMENTS RELATING TO M&M LIENS, THE FORMULATION, PREPARATION, DISSEMINATION, SOLICITATION, NEGOTIATION, ENTRY INTO, OR FILING OF THE PLAN (INCLUDING THE PLAN SUPPLEMENT), THE DISCLOSURE STATEMENT, OR ANY RESTRUCTURING TRANSACTION, CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT (INCLUDING ANY LEGAL OPINION REQUESTED BY ANY ENTITY REGARDING ANY TRANSACTION, CONTRACT, INSTRUMENT, DOCUMENT, OR OTHER AGREEMENT CONTEMPLATED BY THE PLAN OR THE RELIANCE BY ANY RELEASED PARTY ON THE PLAN OR CONFIRMATION ORDER IN LIEU OF SUCH LEGAL OPINION) CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN, THE PLAN SUPPLEMENT, THE DISCLOSURE STATEMENT, THE PLAN SETTLEMENTS, THE NEW SECURED CONVERTIBLE NOTES DOCUMENTS, THE NEW SECURED NOTES DOCUMENTS, THE CONTINGENT PAYMENT OBLIGATIONS DOCUMENTS, THE NEW MINER EQUIPMENT LENDER DEBT DOCUMENTS, THE EXIT FACILITY DOCUMENTS, THE NEW WARRANTS AGREEMENT, THE RIGHTS OFFERING, THE BACKSTOP COMMITMENT LETTER, THE INITIAL DIP LOAN DOCUMENTS, THE DIP FACILITY, THE TERMINATED RSA, THE RSA, THE CHAPTER 11 CASES, THE PURSUIT OF CONFIRMATION AND CONSUMMATION OF THE PLAN, THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN OR CONFIRMATION ORDER, INCLUDING THE ISSUANCE OR DISTRIBUTION OF SECURITIES PURSUANT TO THE PLAN (INCLUDING, BUT NOT LIMITED TO, THE NEW COMMON INTERESTS), OR THE DISTRIBUTION OF PROPERTY UNDER THE PLAN, OR ANY OTHER AGREEMENT, ACT OR OMISSION, TRANSACTION, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASES SET FORTH IN

SECTION 0 OF THE PLAN (I) SHALL ONLY BE APPLICABLE TO THE MAXIMUM EXTENT PERMITTED BY LAW; AND (II) SHALL NOT BE CONSTRUED AS (A) RELEASING ANY RELEASED PARTY FROM CLAIMS OR CAUSES OF ACTION ARISING FROM AN ACT OR OMISSION THAT IS JUDICIALLY DETERMINED BY A FINAL ORDER TO HAVE CONSTITUTED ACTUAL FRAUD (*PROVIDED* THAT ACTUAL FRAUD SHALL NOT EXEMPT FROM THE SCOPE OF THESE THIRD-PARTY RELEASES ANY CLAIMS OR CAUSES OF ACTION ARISING UNDER SECTIONS 544 OR 548 OF THE BANKRUPTCY CODE OR STATE LAWS GOVERNING FRAUDULENT OR OTHERWISE AVOIDABLE TRANSFERS OR CONVEYANCES), WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE, OR (B) RELEASING ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, ANY RESTRUCTURING TRANSACTION, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN.

SECTION 10.7        **EXCULPATION.**

EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN, NO EXCULPATED PARTY SHALL HAVE OR INCUR LIABILITY FOR, AND EACH EXCULPATED PARTY IS HEREBY RELEASED AND EXCULPATED FROM, ANY CAUSE OF ACTION FOR ANY CLAIM RELATED TO ANY ACT OR OMISSION IN CONNECTION WITH, RELATING TO, OR ARISING OUT, IN WHOLE OR IN PART, FROM THE PETITION DATE THROUGH THE EFFECTIVE DATE, OF THE CHAPTER 11 CASES, THE DEBTORS, THE GOVERNANCE, MANAGEMENT, TRANSACTIONS, OWNERSHIP, OR OPERATION OF THE DEBTORS, THE PURCHASE, SALE OR RESCISSION OF ANY SECURITY OF THE DEBTORS OR THE REORGANIZED DEBTORS, THE DIP FACILITY, THE CONVERTIBLE NOTES AGREEMENTS, THE MINER EQUIPMENT LENDER AGREEMENTS, THE MORTGAGE AGREEMENTS, THE GENERAL CONTRACTS, ANY AND ALL AGREEMENTS RELATING TO M&M LIENS, AND RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS, THE FORMULATION, PREPARATION, DISSEMINATION, SOLICITATION, NEGOTIATION, ENTRY INTO, OR FILING OF THE PLAN (INCLUDING THE PLAN SUPPLEMENT), THE DISCLOSURE STATEMENT, OR ANY RESTRUCTURING TRANSACTION, CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT (INCLUDING ANY LEGAL OPINION REQUESTED BY ANY ENTITY REGARDING ANY TRANSACTION, CONTRACT, INSTRUMENT, DOCUMENT, OR OTHER AGREEMENT CONTEMPLATED BY THE PLAN OR THE RELIANCE BY ANY RELEASED PARTY ON THE PLAN OR CONFIRMATION ORDER IN LIEU OF SUCH LEGAL OPINION) CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN, THE PLAN SUPPLEMENT, THE DISCLOSURE STATEMENT, THE PLAN SETTLEMENTS, THE NEW SECURED CONVERTIBLE NOTES DOCUMENTS, THE NEW SECURED NOTES DOCUMENTS, THE CONTINGENT PAYMENT OBLIGATIONS DOCUMENTS,THE NEW MINER EQUIPMENT LENDER DEBT DOCUMENTS, THE EXIT FACILITY DOCUMENTS, THE NEW WARRANTS AGREEMENT, THE RIGHTS OFFERING, THE BACKSTOP COMMITMENT LETTER, THE INITIAL DIP LOAN DOCUMENTS, THE DIP FACILITY, THE

**TERMINATED RSA, THE RSA, THE CHAPTER 11 CASES, THE PURSUIT OF CONFIRMATION AND CONSUMMATION OF THE PLAN, THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN OR CONFIRMATION ORDER, INCLUDING THE ISSUANCE OR DISTRIBUTION OF SECURITIES PURSUANT TO THE PLAN (INCLUDING, BUT NOT LIMITED TO, THE NEW COMMON INTERESTS), OR THE DISTRIBUTION OF PROPERTY UNDER THE PLAN, OR ANY OTHER RELATED AGREEMENT, EXCEPT FOR CLAIMS OR CAUSES OF ACTION ARISING FROM AN ACT OR OMISSION THAT IS JUDICIALLY DETERMINED IN A FINAL ORDER TO HAVE CONSTITUTED ACTUAL FRAUD, WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE, BUT IN ALL RESPECTS, SUCH EXCULPATED PARTIES SHALL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES.   THE EXCULPATED PARTIES HAVE, AND UPON COMPLETION OF THE PLAN, SHALL BE DEEMED TO HAVE, PARTICIPATED IN GOOD FAITH AND IN COMPLIANCE WITH ALL APPLICABLE LAWS WITH REGARD TO THE SOLICITATION AND DISTRIBUTION OF, CONSIDERATION PURSUANT TO THE PLAN AND, THEREFORE, ARE NOT, AND ON ACCOUNT OF SUCH DISTRIBUTIONS SHALL NOT BE, LIABLE AT ANY TIME FOR THE VIOLATION OF ANY APPLICABLE LAW, RULE, OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OR SUCH DISTRIBUTIONS MADE PURSUANT TO THE PLAN. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE EXCULPATIONS SET FORTH IN SECTION ERROR! REFERENCE SOURCE NOT FOUND. OF THE PLAN (I) SHALL ONLY BE APPLICABLE TO THE MAXIMUM EXTENT PERMITTED BY LAW; AND (II) SHALL NOT BE CONSTRUED AS (A) EXCULPATING ANY EXCULPATED PARTY FROM CLAIMS OR CAUSES OF ACTION ARISING FROM AN ACT OR OMISSION THAT IS JUDICIALLY DETERMINED BY A FINAL ORDER TO HAVE CONSTITUTED ACTUAL FRAUD (*PROVIDED* THAT ACTUAL FRAUD SHALL NOT EXEMPT FROM THE SCOPE OF THESE EXCULPATIONS ANY CLAIMS OR CAUSES OF ACTION ARISING UNDER SECTIONS 544 OR 548 OF THE BANKRUPTCY CODE OR STATE LAWS GOVERNING FRAUDULENT OR OTHERWISE AVOIDABLE TRANSFERS OR CONVEYANCES), WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE, OR (B) EXCULPATING ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, ANY RESTRUCTURING TRANSACTION, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN.**

**SECTION 10.5      INJUNCTION.**

**EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR FOR DISTRIBUTIONS REQUIRED TO BE PAID OR DELIVERED PURSUANT TO THE PLAN OR THE CONFIRMATION ORDER, ALL ENTITIES THAT HAVE HELD, HOLD, OR MAY HOLD CLAIMS OR INTERESTS THAT HAVE BEEN RELEASED PURSUANT TO SECTION 0 OR SECTION 0, SHALL BE DISCHARGED PURSUANT TO SECTION ERROR! REFERENCE SOURCE NOT FOUND. OF THE PLAN, OR ARE SUBJECT TO EXCULPATION PURSUANT TO SECTION ERROR! REFERENCE SOURCE NOT FOUND., AND ALL SUBCONTRACTORS AND ALL OTHER PARTIES**

**IN INTEREST ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST, AS APPLICABLE, THE DEBTORS, THE REORGANIZED DEBTORS, THE RELEASED PARTIES, AND/OR THE EXCULPATED PARTIES (TO THE EXTENT OF THE EXCULPATION PROVIDED PURSUANT TO SECTION ERROR! REFERENCE SOURCE NOT FOUND. WITH RESPECT TO THE EXCULPATED PARTIES): (I) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (II) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (III) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE OF ANY KIND AGAINST SUCH ENTITIES OR THE PROPERTY OR THE ESTATES OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (IV) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION, OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE FROM SUCH ENTITIES OR AGAINST THE PROPERTY OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS UNLESS (X) SUCH ENTITY HAS TIMELY ASSERTED SUCH SETOFF RIGHT EITHER IN A FILED PROOF OF CLAIM, OR IN ANOTHER DOCUMENT FILED WITH THE BANKRUPTCY COURT EXPLICITLY PRESERVING SUCH SETOFF OR THAT OTHERWISE INDICATES THAT SUCH ENTITY ASSERTS, HAS, OR INTENDS TO PRESERVE ANY RIGHT OF SETOFF PURSUANT TO APPLICABLE LAW OR OTHERWISE OR (Y) SUCH RIGHT TO SETOFF ARISES UNDER A POSTPETITION AGREEMENT WITH THE DEBTORS OR AN EXECUTORY CONTRACT THAT HAS BEEN ASSUMED BY THE DEBTORS AS OF THE EFFECTIVE DATE; AND (V) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS RELEASED, SETTLED, AND/OR TREATED, ENTITLED TO A DISTRIBUTION, OR CANCELLED PURSUANT TO THE PLAN OR OTHERWISE DISALLOWED; *PROVIDED* THAT SUCH PERSONS WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS AGAINST, OR INTERESTS IN, A DEBTOR, A REORGANIZED DEBTOR, OR AN ESTATE SHALL NOT BE PRECLUDED FROM EXERCISING THEIR RIGHTS AND REMEDIES, OR OBTAINING THE BENEFITS, SOLELY PURSUANT TO AND CONSISTENT WITH THE TERMS OF THE PLAN.**

**SUBJECT IN ALL RESPECTS TO SECTION ERROR! REFERENCE SOURCE NOT FOUND., NO ENTITY OR PERSON MAY COMMENCE OR PURSUE A CLAIM OR CAUSE OF ACTION OF ANY KIND AGAINST ANY RELEASED PARTY OR EXCULPATED PARTY THAT AROSE OR ARISES FROM, IN WHOLE OR IN PART, THE CHAPTER 11 CASES, THE DEBTORS, THE GOVERNANCE, MANAGEMENT, TRANSACTIONS, OWNERSHIP, OR OPERATION OF THE DEBTORS, THE PURCHASE, SALE OR RESCISSION OF ANY SECURITY OF THE DEBTORS OR THE REORGANIZED DEBTORS (WHICH INCLUDES, FOR THE**

**AVOIDANCE OF DOUBT, ALL CLAIMS AND CAUSES OF ACTION ASSERTED OR ASSERTABLE IN THE SECURITIES CLASS ACTION), THE DIP FACILITY, THE CONVERTIBLE NOTES AGREEMENTS, THE MINER EQUIPMENT LENDER AGREEMENTS, THE MORTGAGE AGREEMENTS, THE GENERAL CONTRACTS, ANY AND ALL AGREEMENTS RELATING TO M&M LIENS, AND ANY AND ALL RELATED AGREEMENTS, INSTRUMENTS, AND/OR OTHER DOCUMENTS, THE FORMULATION, PREPARATION, DISSEMINATION, SOLICITATION, NEGOTIATION, ENTRY INTO, OR FILING OF THE PLAN (INCLUDING THE PLAN SUPPLEMENT), THE DISCLOSURE STATEMENT, OR ANY RESTRUCTURING TRANSACTION, CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT (INCLUDING ANY LEGAL OPINION REQUESTED BY ANY ENTITY REGARDING ANY TRANSACTION, CONTRACT, INSTRUMENT, DOCUMENT, OR OTHER AGREEMENT CONTEMPLATED BY THE PLAN OR THE RELIANCE BY ANY RELEASED PARTY ON THE PLAN OR CONFIRMATION ORDER IN LIEU OF SUCH LEGAL OPINION) CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN, THE PLAN SUPPLEMENT, THE DISCLOSURE STATEMENT, THE PLAN SETTLEMENTS, THE NEW SECURED CONVERTIBLE NOTES DOCUMENTS, THE NEW SECURED NOTES DOCUMENTS, THE CONTINGENT PAYMENT OBLIGATIONS DOCUMENTS,THE NEW MINER EQUIPMENT LENDER DEBT DOCUMENTS, THE EXIT FACILITY DOCUMENTS, THE NEW WARRANTS AGREEMENT, THE RIGHTS OFFERING, THE BACKSTOP COMMITMENT LETTER, THE INITIAL DIP LOAN DOCUMENTS, THE DIP FACILITY, THE TERMINATED RSA, THE RSA, THE CHAPTER 11 CASES, THE PURSUIT OF CONFIRMATION AND CONSUMMATION OF THE PLAN, THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN OR CONFIRMATION ORDER, INCLUDING THE ISSUANCE OR DISTRIBUTION OF SECURITIES PURSUANT TO THE PLAN (INCLUDING, BUT NOT LIMITED TO, THE NEW COMMON INTERESTS), OR THE DISTRIBUTION OF PROPERTY UNDER THE PLAN, OR ANY OTHER AGREEMENT, ACT OR OMISSION, TRANSACTION, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE RELATED OR RELATING TO THE FOREGOING WITHOUT THE BANKRUPTCY COURT (I) FIRST DETERMINING, AFTER NOTICE AND A HEARING, THAT SUCH CLAIM OR CAUSE OF ACTION REPRESENTS A CLAIM OF WILLFUL MISCONDUCT, FRAUD OR GROSS NEGLIGENCE AGAINST A RELEASED PARTY OR EXCULPATED PARTY AND (II) SPECIFICALLY AUTHORIZING SUCH ENTITY OR PERSON TO BRING SUCH CLAIM OR CAUSE OF ACTION AGAINST ANY SUCH RELEASED PARTY OR EXCULPATED PARTY. THE BANKRUPTCY COURT SHALL HAVE SOLE AND EXCLUSIVE JURISDICTION TO DETERMINE WHETHER A CLAIM OR CAUSE OF ACTION IS COLORABLE AND, ONLY TO THE EXTENT LEGALLY PERMISSIBLE AND AS PROVIDED FOR IN SECTION ERROR! REFERENCE SOURCE NOT FOUND., SHALL HAVE JURISDICTION TO ADJUDICATE THE UNDERLYING COLORABLE CLAIM OR CAUSE OF ACTION.**

**SECTION 5.17**     **CANCELLATION OF LIENS.**

(a)     Except as otherwise specifically provided in the Plan, including sections **Error! Reference source not found.** and **Error! Reference source not found.** of the Plan, all notes,

instruments, certificates evidencing debt of the Debtors and Existing Common Interests will be cancelled and obligations of the Debtors thereunder will be discharged and of no further force or effect, except for the purpose of allowing the applicable agents and trustees to receive distributions from the Debtors under the Plan and to make any further distributions to the applicable Holders on account of their Allowed Claims and Interests.

(b)   After the Effective Date and following (i) the distributions to Holders on account of Allowed Convertible Notes Secured Claims and Allowed Miner Equipment Lender Secured Claims and/or (ii) with regard to Allowed M&M Lien Secured Claims, satisfaction of the applicable M&M Lien Takeback Debt, the Debtors or the Reorganized Debtors, at their expense, may, in their sole discretion, take any action necessary to terminate, cancel, extinguish, and/or evidence the release of any and all mortgages, deeds of trust, Liens, pledges, and other security interests with respect to the Convertible Notes Secured Claims, Miner Equipment Lender Secured Claims, and M&M Lien Secured Claims, including, without limitation, the preparation and filing of any and all documents necessary to terminate, satisfy, or release any mortgages, deeds of trust, Liens, pledges, and other security interests held by the Holders of the M&M Lien Secured Claims, Miner Equipment Lender Secured Claims, the Notes Agent, and/or Convertible Noteholders, including, without limitation, UCC-3 termination statements.

**Relevant Definitions Related to Release and Exculpation Provisions**:

*"Exculpated Parties"* means each of the following in their capacity as such and, in each case, to the maximum extent permitted by law: (i) the Debtors; and (ii) Equity Committee and its members, each solely in their capacity as such.

*"Related Parties"* means with respect to a Person, that Person's current and former Affiliates, and such Person's and its current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, fiduciaries, trustees, advisory board members, financial advisors, partners, limited partners, general partners, attorneys, accountants, managed accounts or funds, management companies, fund advisors, investment bankers, consultants, representatives, and other professionals, and such Person's respective heirs, executors, estates, and nominees, each in their capacity as such, and any and all other Persons or Entities that may purport to assert any Cause of Action derivatively, by or through the foregoing entities.

*"Released Parties"* means, collectively: (i) the Debtors; (ii) the Reorganized Debtors; (iii) the Equity Committee and its members that are party to the RSA, solely in their capacities as such; (iv) the Backstop Parties; (v) the Settling Miner Equipment Lenders; (vi) Brown Corporation; (vii) Holliwood LLC; (viii) the Ad Hoc Noteholder Group; (ix) the Consenting Creditors; (x) the Exit Lenders; (xi) the Notes Agent, solely in its capacity as such; and (xii) with respect to each of the foregoing Persons in clauses (i) through (xi), all Related Parties. Notwithstanding the foregoing, any Person that opts out of the releases set forth in section 10.6(b) of the Plan shall not be deemed a Released Party thereunder.

"**Releasing Parties**" means collectively, and in each case solely in their capacity as such, (i) the Debtors; (ii) the Reorganized Debtors; (iii) with respect to each of the foregoing Persons in clauses (i) through (ii), all Related Parties; (iv) the Released Parties; (v) the Holders of all Claims or Interests that vote to accept the Plan; (vi) the Holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but that do not vote either to accept or to reject the Plan and do not opt out of granting the releases set forth in the Plan; (vii) the Holders of all Claims or Interests that vote, or are deemed, to reject the Plan or that are presumed to accept the Plan but do not opt out of granting the releases set forth in the Plan; and (viii) the Holders of all Claims and Interests and all Other Beneficial Owners that were given notice of the opportunity to opt out of granting the releases set forth in the Plan but did not opt out.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

**PURSUANT TO THE PLAN, IF YOU, AS A HOLDER OF CLAIMS OR AN OTHER BENEFICIAL OWNER WHO HAS BEEN GIVEN NOTICE OF THE OPPORTUNITY TO OPT OUT OF GRANTING THE RELEASES SET FORTH IN SECTION 10.6(b) OF THE PLAN BUT DO NOT OPT OUT, YOU ARE AUTOMATICALLY DEEMED TO HAVE CONSENTED TO THE RELEASE PROVISIONS IN SECTION 10.6(b) OF THE PLAN.**

**By checking the box below, the undersigned Holder of a Claim not entitled to vote or Other Beneficial Owner identified in Item 1 above, having received notice of the opportunity to opt out of granting the releases contained in Section 10.6(b) of the Plan:**

---

☐ **Elects to <u>OPT OUT</u> of the releases contained in Section 10.6(b) of the Plan.**

---

**Item 3.**    **Certifications**. By signing this Release Opt Out Form, the undersigned certifies that:

a.    as of the Voting Record Date, either: (i) the Holder is the Holder of the Claims set forth in Item 1; (ii) the Holder is an authorized signatory for an entity that is the Holder of the Claims set forth in Item 1; or (iii) it is an Other Beneficial Owner;

b.    the undersigned has received a copy of the Release Opt Out Form and that the Release Opt Out Form is made pursuant to the terms and conditions set forth therein;

c.    if applicable, the undersigned has submitted the same election concerning the releases with respect to all Claims in a single Class set forth in Item 1; and

d.    that no other Release Opt Out Form with respect to the amount(s) of Claims identified in Item 1 or on account of being an Other Beneficial Owner have been submitted or, if any other Release Opt Out Forms have been submitted

with respect to such Claims or on account of being an Other Beneficial Owner, then any such earlier Release Opt Out Forms are hereby revoked.

| | |
|---|---|
| Name of Holder or Other Beneficial Owner: | |
| Signature: | |
| Name of Signatory (if different from Holder or Other Beneficial Owner): | |
| Title (if applicable): | |
| City, State, Zip Code: | |
| Telephone Number: | |
| Date Completed: | |

**IF YOU WISH TO OPT OUT, PLEASE COMPLETE, SIGN, AND DATE THIS RELEASE OPT OUT FORM AND RETURN IT TO THE VOTING AGENT BY *JUST ONE* OF THE FOLLOWING METHODS: MAIL, OVERNIGHT OR HAND DELIVERY, OR BY ONLINE TRANSMISSION VIA ONLINE PORTAL:**

| **STRETTO'S ADDRESS FOR RECEIPT OF RELEASE OPT OUT FORM** |
|---|
| **CORE SCIENTIFIC, INC.**<br>**BALLOT PROCESSING CENTER**<br>**C/O STRETTO, INC.**<br>**410 EXCHANGE, SUITE 100**<br>**IRVINE, CA 92602** |

**THE OPT OUT DEADLINE IS DECEMBER 13, 2023 AT 5:00 P.M. (PREVAILING CENTRAL TIME).**

**USE OF ONLINE OPT-OUT FORM**

**You may submit your Release Opt Out Form by electronic, online transmission solely through the Online Portal found on the Debtors' case information website and following the directions set forth on the Online Portal regarding submitting your Release Opt Out Form as described more fully below.**

1. **Please visit https://cases.stretto.com/CoreScientific/;**

2. **Click on the "Submit E-Ballot" section of the Debtors' website;**

3. **Follow the directions to submit your Release Opt Out Form. If you choose to submit your Release Opt Out Form via the Online Portal, you should not return a hard copy of your Release Opt-Out Form.**

**THE ONLINE PORTAL IS THE SOLE MANNER IN WHICH RELEASE OPT OUT FORMS MAY BE DELIVERED VIA ELECTRONIC TRANSMISSION.**

**RELEASE OPT OUT FORMS SUBMITTED BY FACSIMILE OR EMAIL WILL NOT BE COUNTED.**

**<u>Exhibit 15</u>**

**Rights Offering Procedures**

## CORE SCIENTIFIC, INC.

## RIGHTS OFFERING INSTRUCTIONS FOR SUBSCRIPTION RIGHTS HOLDERS

**Terms used and not defined herein or in the Subscription Form shall have the meaning assigned to them in the Rights Offering Procedures, Plan or the Disclosure Statement.**

**To elect to participate in the Rights Offering, you must follow the instructions set out below:**

1. **Read, complete, and sign** Subscription Forms for the Rights Offering to the extent you wish to participate therein. Such execution shall, among other things, indicate your acceptance and approval of the terms and conditions set forth herein and therein.

   You must also read the Disclosure Statement and the Plan, each as amended or supplemented, available at the Debtors' restructuring website at https://cases.stretto.com/corescientific/ for important additional information relating to the Debtors, the Rights Offering and the risk factors to be considered.

2. **Read, complete, and sign** an IRS Form W-9 if you are a U.S. person. If you are a non- U.S. person, read, complete, and sign an appropriate IRS Form W-8. These forms may be obtained from the IRS at its website: www.irs.gov.

3. **If you hold your Existing Common Interests through DTC, coordinate with your Subscription Nominee to (i) Tender/Block** through DTC ATOP procedures the amount of the Existing Common Interests that you wish to participate in the Rights Offering as set forth in these Rights Offering Procedures prior to the ATOP Tender Deadline and **(ii) return** your signed Subscription Form(s), IRS Form W-9 or appropriate IRS Form W-8, as applicable, to the Subscription Agent prior to the Rights Offering Subscription Deadline.

   To access the E-Subscription Form Portal, visit https://cases.stretto.com/corescientific/ click on the "Submit Rights Offering Form" section of the website and follow the instructions to submit your form.

   Submitting your Subscription Form(s) via the E-Subscription Portal is the only valid method of submission. No other methods will be accepted.

4. **If you hold your Existing Common Interests on the books and records of the Debtors return** your signed Subscription Form(s), IRS Form W-9 or appropriate IRS Form W-8, as applicable, to the Subscription Agent prior to the Rights Offering Subscription Deadline.

   To access the E-Subscription Form Portal, visit https://cases.stretto.com/corescientific/ click on the "Submit Rights Offering Form" section of the website and follow the instructions to submit your form.

   Submitting your Subscription Form(s) via the E-Subscription Portal is the only valid method of submission. No other methods will be accepted.

5. **Arrange for full payment** of the Aggregate Subscription Amount by wire transfer of immediately available funds as instructed in the Subscription Form.

---

**The Rights Offering Subscription Deadline is 5:00 p.m. New York City time on [●], 2023. Subscription Rights Holders (except the Commitment Parties) should follow the delivery and payment instructions set forth herein. The Commitment Parties should follow the payment instructions in the Funding Notice delivered in accordance with the Backstop Commitment Letter**

# RIGHTS OFFERING PROCEDURES

The New Common Interests to be issued and distributed by Core Scientific, Inc. to Holders of Existing Common Interests ("Eligible Equity Holders")[1] pursuant to the Rights Offering referred to in these Rights Offering Procedures (the "Rights Offering") are being distributed and issued without registration under the Securities Act in reliance upon the exemption from registration provided by section 1145 of the Bankruptcy Code (the "Rights Offering Shares").

Unless otherwise agreed and subject to the terms of the Plan, each Eligible Equity Holder shall have the right, but not the obligation, to use subscription rights to subscribe for the purchase of Rights Offering Shares (the "Subscription Rights" and each holder thereof, a "Subscription Rights Holder"). In addition, each Subscription Rights Holder is being granted the right (an "Oversubscription Right") to elect to purchase additional Rights Offering Shares in the event that less than the aggregate number of Rights Offering Shares offered in the Rights Offering is timely, duly and validly subscribed and paid for by Subscription Rights Holders (such unsubscribed Rights Offering Shares, the "Unsubscribed Shares" and such election an "Oversubscription Election")". The Unsubscribed Shares issued upon exercise any Oversubscription Rights will be issued without registration under the Securities Act in reliance upon the exemption from registration provided by section 1145 of the Bankruptcy Code.

All shares issued to the Commitment Parties, if any, on account of their Backstop Commitments will be issued pursuant to Section 4(a)(2) or Regulation D of the Securities Act.

Only Subscription Rights Holders (including the Commitment Parties) that hold Existing Common Interests as of the Record Date are allowed to participate in the Rights Offering. No offer or invitation to subscribe or purchase is being made to any person who is not a Subscription Rights Holder, and no such person should or may act or rely on any offer or invitation to subscribe or purchase Rights Offering Shares or Unsubscribed Shares contained in this document.

None of the Subscription Rights, Oversubscription Rights or Rights Offering Shares issuable upon exercise of such rights distributed under the Plan and pursuant to these Rights Offering Procedures have been or will be registered under the Securities Act, nor any state or local law requiring registration for offer and sale of a security. Any Holder who subscribes for Rights Offering Shares or Oversubscription Shares that is an "underwriter," as that term is defined for purposes of section 1145 of the Bankruptcy Code, will be subject to restrictions on its ability to resell those securities. Resale restrictions are discussed in more detail in Article VII of the Disclosure Statement (as defined below), entitled "Transfer Restrictions and Consequences Under Federal Securities Law."

Any Subscription Rights Holder that holds Existing Common Interests with its Subscription Nominee (as defined below) in DTC (as defined below), that desires to exercise its Subscription Rights or Oversubscription Rights, as applicable, must (i) direct its Subscription Nominee to tender its Existing Common Interests into the appropriate option on DTC's ATOP platform prior to the ATOP Tender Deadline (as defined below) and (ii) complete and return (or coordinate with its Subscription Nominee to return) to the Subscription Agent (as defined below) a Subscription Form (with

---

[1] Eligible Equity Holders are Holders of Existing Common Interests as of the Rights Offering Record Date (*i.e.*, November 16, 2023).

accompanying IRS Form W-9 or appropriate IRS Form W-8, as applicable) and pay (or arrange for its Subscription Nominee to pay) the Aggregate Purchase Price (as defined below) and Oversubscription Funding Amount (as defined below) (together, the "<u>Aggregate Subscription Amount</u>"), if applicable, so that such payment is actually received by the Subscription Agent on or before the Rights Offering Subscription Deadline (as defined below).

Any Subscription Rights Holder that holds Existing Common Interests directly on the books and records of the Debtors, that desires to exercise its Subscription Rights or Oversubscription Rights, as applicable, must complete and return to the Subscription Agent the Subscription Form (with accompanying IRS Form W-9 or appropriate IRS Form W-8, as applicable) and pay the Aggregate Subscription Amount to the Subscription Agent, prior to the Rights Offering Subscription Deadline.

Any Subscription Rights Holder that holds Existing Common Interests with both its Subscription Nominee in DTC and directly on the books and records of the Debtors will receive multiple Subscription Forms, each of which must be completed and returned by such Subscription Rights Holder or by such Subscription Rights Holder's Subscription Nominee, as applicable, to the Subscription Agent (with accompanying IRS Form W-9 or appropriate IRS Form W-8, as applicable) prior to the Rights Offering Subscription Deadline. With respect to the portion of such Subscription Rights Holder's Existing Common Interests held with its Subscription Nominee in DTC, it must direct its Subscription Nominee to tender such Existing Common Interests into the appropriate option on DTC's ATOP platform prior to the ATOP Tender Deadline.

No Subscription Rights or Oversubscription Rights may be sold, transferred, assigned, pledged, hypothecated, participated, donated or otherwise encumbered or disposed of, directly or indirectly (including through derivatives, options, swaps, forward sales or other transactions in which any person receives the right to own or acquire any current or future interest in the Subscription Rights, Oversubscription Rights, Rights Offering Shares or claims funded pursuant to the Backstop Commitment Letter and any related claims). In addition, after Subscription Rights or Oversubscription Rights are exercised with respect to any Existing Common Interests, such Existing Common Interests may not be sold, transferred, assigned, pledged, hypothecated, participated, donated or otherwise encumbered or disposed of, directly or indirectly, and any purported trading, assignment or transfer of such Existing Common Interests shall be deemed null and void; provided that with respect to the Commitment Parties, the transfer restrictions set forth in the Backstop Commitment Letter shall govern.

The Rights Offering is being conducted in good faith and in compliance with the Bankruptcy Code. In accordance with Section 1125(e) of the Bankruptcy Code, a debtor or any of its agents that participate, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, in the offer, issuance, sale, or purchase of a security offered or sold under the plan of the debtor, of an affiliate participating in a joint plan with the debtor, or of a newly organized successor to the debtor under the plan, is not liable, on account of such participation, for the violation of any applicable law, rule, or regulation governing the offer, issuance, sale or purchase of securities.

All required documentation to participate in the Rights Offering must be completed and timely submitted along with arrangement of payment of the Aggregate Subscription Amount for the exercise of Subscription Rights and, as applicable, Oversubscription Rights, which must be actually and timely received by the Subscription Agent no later than the Rights Offering Subscription Deadline, in accordance with all terms and conditions set forth in these Rights Offering Procedures and the Subscription Form.

Notwithstanding the foregoing, the Commitment Parties must deliver their Backstop Commitment Deposit to the Escrow Account within three business days following entry of the Backstop Order, in accordance with the terms of the Backstop Commitment Letter. The Commitment Parties must deliver their Aggregate Subscription Amount by the date that is specified in the Fundi Notice pursuant to the Backstop Commitment Letter (the "Backstop Funding Deadline").

All questions concerning the timeliness, validity, form, and eligibility of any exercise or purported exercise of Subscription Rights or Oversubscription Rights shall be determined in good faith by the Debtors. Any Rights Offering submissions that do not properly comply with the requirements set forth in the Rights Offering Procedures and the applicable Subscription Form(s) will be deemed not to have been received or accepted until all such defects and irregularities have been cured or waived in writing by the Debtors. Unless waived in writing, any defects or irregularities must be cured by the Rights Offering Subscription Deadline in order to participate in the Rights Offering. The Debtors may provide notice to a Subscription Rights Holder who elects to exercise its Subscription Rights or Oversubscription Rights of defects or irregularities in connection with such exercise; provided that neither the Debtors nor the Reorganized Debtors nor any of their respective employees, Affiliates, or professionals shall incur any liability for giving, or failing to give, such notification and such opportunity to cure. For the avoidance of doubt, the submission of an inaccurate, incomplete, untimely, or otherwise defective Subscription Form or the failure to remit timely and full payment of the Aggregate Purchase Price to the Subscription Agent may result in the irrevocable relinquishment and waiver of a Subscription Rights Holder's purported right, if any, to participate in the Rights Offering.

Capitalized terms used and not defined herein shall have the meaning assigned to them in the Plan (as defined below), the Disclosure Statement (as defined below) or the Backstop Commitment Letter, as applicable.

***

**Subscription Rights Holders should note the following dates and times relating to the Rights Offering:**

| Date | Calendar Date | Event |
|------|---------------|-------|
| **Rights Offering Record Date …...** | November 16, 2023 | The date fixed by the Debtors for determination of the Holders of Existing Common Interests eligible to participate in the Rights Offering. |
| **Subscription Commencement Date…...** | November 17, 2023 | Commencement of the Rights Offering. |
| **Commitment Party Backstop Commitment Deposit Deadline** | November 17, 2023 | Deadline for Initial Commitment Parties to fund Backstop Commitment Deposit to the Escrow Account. |
| **ATOP Tender Deadline……………...….** | 5:00 p.m. New York City time on December 8, 2023 | Deadline for Subscription Rights Holders that hold the Existing Common Interests "in street name" through DTC (each a "**Street Name Holder**") to direct their Subscription Nominee to tender their Existing Common Interests into the appropriate option on DTC's ATOP platform. |
| **Rights Offering Subscription Deadline ……………...….** | 5:00 p.m. New York City time on December 8, 2023 | Deadline to exercise Subscription Rights and Oversubscription Rights.<br><br>Subscription Rights Holders who hold their Existing Common Interests through their Subscription Nominee must (i) submit (or coordinate with their Subscription Nominee to submit) the Subscription Form, which must be executed, and include applicable supporting documentation to Stretto, LLC, in its capacity as Subscription Agent (the "**Subscription Agent**"); and (ii) timely execute (or arrange for their Subscription Nominee to execute) a wire transfer of the Aggregate Subscription Amount, which must be received by the Subscription Agent by the Rights Offering Subscription Deadline.<br><br>Subscription Rights Holders who hold their Existing Common Interests through the books and records of the Debtor must (i) submit the Subscription Form, which must be executed, and include applicable |

| | | |
|---|---|---|
| | | supporting documentation to the Subscription Agent; and (ii) timely execute a wire transfer of the Aggregate Subscription Amount, which must be received by the Subscription Agent by the Rights Offering Subscription Deadline.<br><br>**After Subscription Rights are exercised with respect to any Existing Common Interests, any purported trading, assignment or transfer of such Existing Common Interests shall be deemed null and void; provided that, with respect to the Commitment Parties, the transfer restrictions set forth in the Backstop Commitment Letter shall govern.**<br><br>Any overpayment of the Aggregate Subscription Amount will be promptly refunded in accordance with these Rights Offering Procedures. Refunds will not be paid to any Subscription Rights Holder, however, if they amount to less than $5.00 for such holder.<br><br>Notwithstanding the foregoing, the Commitment Parties must deliver the Aggregate Subscription Amount by the Backstop Funding Deadline. |
| **Backstop Funding Deadline…………..….** | ~December 20, 2023[2] | Deadline for Commitment Parties to deliver their Aggregate Subscription Amount pursuant to the Backstop Commitment Letter. |

---

[2] Three business days after receipt of Funding Notice.

To Subscription Rights Holders:

On November 15, 2023, the Debtors filed with the United States Bankruptcy Court for the Southern District of Texas (Houston Division) (the "**Bankruptcy Court**") the *Third Amended Joint Chapter 11 Plan of Core Scientific, Inc. and its Debtor Affiliates* (as may be altered, amended, modified or supplemented from time to time in accordance with the terms thereof, the "**Plan**"), and the *Disclosure Statement for Joint Chapter 11 Plan Core Scientific, Inc. and its Debtor Affiliates* (as such may be altered, amended, modified or supplemented from time to time in accordance with the terms thereof, the "**Disclosure Statement**"). Pursuant to the Plan, each Holder of Existing Common Interests as of the Rights Offering Record Date (*i.e.*, November 16, 2023) will receive Subscription Rights to the extent set forth in the Plan and may subscribe for its pro rata allocation of New Common Interests being offered in the Rights Offering (the "**Rights Offering Shares**"); provided that; (i) for Subscription Rights Holders that hold Existing Common Interests "in street name" through The Depository Trust Company ("**DTC**"), it timely tenders/blocks its position in the Automated Tender Offer Program ("**ATOP**") procedures of DTC in advance of the ATOP Tender Deadline and (ii) for all Subscription Rights Holders, including those who hold Existing Common Interests through the books and records of the Debtors and those who hold Existing Common Interests "in street name" through DTC, it properly executes and delivers (or coordinates with its Subscription Nominee to deliver) its executed Subscription Form for the Rights Offering to the Subscription Agent and pays (or causes its Subscription Nominee to pay) the Aggregate Subscription Amount as set forth in the paragraph below on or before the Rights Offering Subscription Deadline or, for Commitment Parties, the Backstop Funding Deadline, as applicable.

In addition, each Subscription Rights Holder will also have an Oversubscription Right to elect to purchase Unsubscribed Shares in an amount not to exceed the total number of Rights Offering Shares offered in the Rights Offering minus the total number of Rights Offering Shares that such Subscription Rights Holder duly, validly and timely elected to purchase pursuant to its Subscription Right (such amount being referred to herein as the Subscription Rights Holder's "**Maximum Oversubscription Amount**"); provided, however, that no Subscription Rights Holder may exercise an Oversubscription Right until it has also duly, validly and timely exercised in full its Subscription Right.

**If you are a Subscription Rights Holder and do <u>not</u> wish to exercise your Subscription Rights, <u>no action is necessary</u>.**

**The "<u>Aggregate Purchase Price</u>" for each Subscription Rights Holder exercising Subscription Rights means the product of $[●] per Rights Offering Share (subject to the Plan Claim Adjustment as defined and described herein) and the number of Rights Offering Shares to be issued pursuant to such Subscription Rights Holder's exercise of Subscription Rights.**

**The price per Rights Offering Share assumes that the holders of Existing Common Interests, after giving effect to the reorganization transactions described in the Plan and Disclosure Statement, as amended and supplemented, will hold 1/15th the number of issued and outstanding shares of common stock of the reorganized Core Scientific, Inc. upon its**

**emergence from bankruptcy than they hold on November 17, 2023 (such ratio is subject to change). The current share price of the Core Scientific, Inc.'s common stock listed on OTC US (CORZQ:US) as of November 17, 2023 does not reflect the reorganization transactions described in the Plan and Disclosure Statement, and is not expected to be indicative of reorganized Core Scientific, Inc.'s post-emergence share price. The Plan and Disclosure Statement are available at the Debtors' restructuring website at https://cases.stretto.com/corescientific/.**

No Subscription Rights Holder shall be entitled to participate in the Rights Offering unless the Aggregate Subscription Amount for the Rights Offering Shares it subscribes for, and, if applicable, for the Oversubscription Shares it subscribes for, is received by the Subscription Agent (i) in the case of a Subscription Rights Holder that is not a Commitment Party, by the Rights Offering Subscription Deadline and (ii) in the case of the Commitment Parties, by the Backstop Funding Deadline. No interest is payable on any funding of the Aggregate Subscription Amount, except with respect to Commitment Parties in accordance with the terms of the Backstop Commitment Letter. If the Rights Offering is terminated for any reason, your Aggregate Subscription Amount will be returned to you promptly, and no interest will be paid on any returned Aggregate Subscription Amount; provided that, any Aggregate Subscription Amount returned to a Commitment Party will be retuned with interest in accordance with the terms of the Backstop Commitment Letter.

**As part of the exercise process, following the exercise of Subscription Rights, the Existing Common Interests that are held by Street Name Holders through DTC will be frozen from trading, as described below.** All Street Name Holders must cause their Subscription Nominee to process and deliver the underlying Existing Common Interests through ATOP and complete and submit all the information required in connection with such delivery. **By giving the instruction to its Subscription Nominee to submit the underlying Existing Common Interests through ATOP, each Street Name Holder is (i) authorizing its Subscription Nominee to exercise all Subscription Rights associated with the amount of Existing Common Interests as to which the instruction pertains; and (ii) certifying that it understands that, once submitted, the underlying Existing Common Interests will be frozen from trading until the Effective Date, at which point such Street Name Holder will receive the relevant Rights Offering Shares and the underlying Existing Common Interests will be cancelled pursuant to the Plan.**

The amount of time necessary for a Subscription Nominee to process and deliver the applicable Existing Common Interests through ATOP may vary. Street Name Holders of Existing Common Interests are urged to consult with their Subscription Nominees to ensure the timely submission. Failure to complete the steps set forth in these Rights Offering Procedures by the applicable deadline will result in such Subscription Rights Holder being deemed to have forever and irrevocably relinquished and waived its Subscription Rights and Oversubscription Rights. None of the Debtors, the Subscription Agent, or the Commitment Parties (except for only such Commitment Party's own failure), will have any liability for any such failure.

**The rights and obligations of the Commitment Parties in the Rights Offering shall be governed by the Backstop Commitment Letter, including to the extent the rights or**

**obligations set forth therein differ from the rights and obligations set forth in these Rights Offering Procedures.**

**In order to participate in the Rights Offering, you must complete all of the steps outlined below. If all of the steps outlined below are not completed by the applicable deadline, you shall be deemed to have forever and irrevocably relinquished and waived your right to participate in the Rights Offering.**

1.      **Rights Offering**

All Subscription Rights Holders have the right, but not the obligation, to participate in the Rights Offering.

- <u>All Subscription Rights Holders</u>: Only Subscription Rights Holders who timely and properly submit (or cause their Subscription Nominee to submit) all documentation and required payments to the Subscription Agent in accordance with the procedures set forth herein will be eligible to participate in the Rights Offering and receive Rights Offering Shares.

- <u>Street Name Holders</u> must also cause their Subscription Nominee to tender their Existing Common Interests into ATOP before the ATOP Tender Deadline.

Subject to the terms and conditions set forth in the Plan, these Rights Offering Procedures and the Subscription Form, each Subscription Rights Holder shall be distributed its *pro rata* (as defined in the Plan) share of Subscription Rights and is entitled to subscribe, at a purchase price of $[●] per whole share, for [●] Rights Offering Shares per Existing Common Interest held by such Subscription Rights Holder (the "**Rights Factor**"); (subject to the Plan Claim Adjustment (as defined below)); notwithstanding the foregoing, as a result of certain elections available to certain claimants pursuant to the Plan, the price per Rights Offering Share may decrease and, as a result there will be a corresponding increase in the number of Rights Offering Shares each participating Subscription Right Holder will be issued in the Rights Offering in exchange for payment of their Aggregate Purchase Price (the "**Plan Claim Adjustment**"), as illustrated below. The minimum price per Rights Offering Share that could result from certain elections available to certain claimants pursuant to the Plan would be $[●] per Rights Offering Share.

For illustrative purposes only, in the event a Subscription Rights Holder holds 1,000,000 Existing Common Interests, such Subscription Rights Holder could subscribe for [●] Rights Offering Shares by paying an Aggregate Purchase Price of $[●], representing a price per Rights Offering Share of $[●] and reflecting the Rights Factor.

However, as a result of the maximum possible Plan Claim Adjustment, in the event that a Subscription Rights Holder held 1,000,000 Existing Common Interests, and such Subscription Rights Holder fully subscribed to its Subscription Rights and paid an Aggregate Purchase Price of $[●], then such Subscription Rights Holder would receive [●] Rights Offering Shares, representing a price per Rights Offering Share of $[●].

9

In addition, the Subscription Form provides that each Subscription Rights Holder will also have an Oversubscription Right to elect to purchase Unsubscribed Shares at a purchase price of $[●] per share (subject to adjustment pursuant to the Plan Claim Adjustment), for aggregate cash consideration (such Subscription Rights Holder's "***Oversubscription Funding Amount***") not to exceed such Subscription Rights Holder's Maximum Oversubscription Amount; provided, however that no Subscription Rights Holder may exercise an Oversubscription Right unless it has also duly, validly and timely exercised in full its Subscription Right.

In the event that the aggregate Rights Offering Shares issuable pursuant to the exercise of Oversubscription Rights exceeds the number of Unsubscribed Shares, Subscription Rights Holders who have made Oversubscription Elections will receive their *pro rata* share (measured as the proportion that the Unsubscribed Shares elected to be purchased by such Subscription Rights Holder bears to the aggregate amount of Unsubscribed Shares elected to be purchased by all Subscription Rights Holders) of the Unsubscribed Shares and the difference between the Oversubscription Funding Amount actually paid by such exercising Subscription Rights Holders and the Oversubscription Funding Amount that such Subscription Rights Holder is required to pay after giving effect to the proration, if any, shall be refunded no later than five (5) Business Days after the Rights Offering Subscription Deadline, or as soon as practicable thereafter.

Street Name Holders will be deemed to have exercised the Subscription Rights related to all Existing Common Interests tendered/blocked through the ATOP procedures of the DTC at the subscription rates set forth above. The Aggregate Purchase Price will be calculated based on the full subscription entitlement as set forth above.

**To the extent the amount subscribed for through the Rights Offering (including pursuant to the Subscription Rights and Oversubscription Rights) is less than the Backstop Commitment Amount, the Commitment Parties will purchase any unsubscribed Rights Offering Shares up to the Backstop Commitment Amount, as set forth in the Backstop Commitment Letter.**

**Any Subscription Rights Holder who subscribes for Rights Offering Shares that is an "underwriter" as that term is defined for purposes of section 1145 of the Bankruptcy Code will also be subject to restrictions on its ability to resell those securities. Resale restrictions are discussed in more detail in Article VII of the Disclosure Statement, entitled "Transfer Restrictions and Consequences Under Federal Securities Law."**

**SUBJECT TO THE TERMS AND CONDITIONS OF THE RIGHTS OFFERING PROCEDURES AND THE BACKSTOP COMMITMENT LETTER IN THE CASE OF THE COMMITMENT PARTIES, AS APPLICABLE, ALL SUBSCRIPTIONS ARE IRREVOCABLE.**

**2.     Subscription Period**

The Rights Offering will commence on the Subscription Commencement Date and will expire at the Rights Offering Subscription Deadline (the "**Subscription Period**").

Each Subscription Rights Holder intending to purchase Rights Offering Shares in the Rights Offering must affirmatively elect to exercise its Subscription Rights and Oversubscription Rights in the manner set forth in these Rights Offering Procedures by the Rights Offering Subscription Deadline.

Any exercise of Subscription Rights or Oversubscription Rights after the Rights Offering Subscription Deadline will not be allowed and any purported exercise received by the Subscription Agent after the Rights Offering Subscription Deadline, regardless of when the documents or payment relating to such exercise were sent, will not be honored.

The Rights Offering Subscription Deadline may be extended by the Debtors, in consultation with the Requisite Commitment Parties or as required by law.

### 3.  Distribution of the Rights Offering Materials

On the Subscription Commencement Date, the Subscription Agent shall distribute, or cause to be distributed, the Rights Offering Procedures and the Subscription Form (collectively, the "**Rights Offering Materials**"), to all Holders of Existing Common Interests in the ordinary course of distribution, including, through DTC for Street Name Holders, and to each bank, broker, or other nominee (each, a "**Subscription Nominee**") for any applicable Holder of Existing Common Interests identified to the Subscription Agent in advance of the Subscription Commencement Date. Street Name Holders must instruct their Subscription Nominee, as applicable, to tender/block their positions in DTC or the relevant depository. The Subscription Agent shall use such information only for purposes consistent with the Rights Offering Procedures and any order of the Bankruptcy Court.

Copies of the Rights Offering Materials may also be obtained by contacting the Subscription Agent or visiting the Debtors' restructuring website at https://cases.stretto.com/corescientific/.

### 4.  DTC

Certain of the Existing Common Interests are held in book-entry form in accordance with the practices and procedures of DTC. The Debtors intend to comply with the practices and procedures of DTC for the purpose of conducting the Rights Offering with respect to the Existing Common Interests held "in street name" through DTC.

With respect to the Rights Offering Shares issued to Street Name Holders, without limiting the foregoing, the Debtors intend that, to the extent practicable and consistent with law, such Rights Offering Shares will be issued in book entry form, and that DTC, or its nominee, will be the holder of record of such Rights Offering Shares. The ownership interest of each Street Name Holder of such Rights Offering Shares, and transfers of ownership interests therein, are expected to be recorded on the records of the direct and indirect participants in DTC. It is expected that all Rights Offering Shares exercised through DTC will be allocated to exercising holders through DTC on or as soon as practicable after the Effective Date.

11

5.      **Delivery of Subscription Form**

Subject to the terms and conditions set forth in the Plan, these Rights Offering Procedures and the Subscription Form, each Subscription Rights Holder may exercise all or any portion of such holder's Subscription Rights and, if it has fully exercised its Subscription Rights, its Oversubscription Rights.

In order to facilitate the exercise of the Subscription Rights and Oversubscription Rights, beginning on the Subscription Commencement Date, the Subscription Agent will send a Subscription Form to each Holder of Existing Common Interests, together with appropriate instructions for the proper completion, due execution, and timely delivery of the executed Subscription Form, and the payment of the Aggregate Subscription Amount for its Rights Offering Shares. Street Name Holders must also instruct their Subscription Nominee to tender/block their positions through the ATOP procedures of the DTC by the ATOP Tender Deadline.

All Subscription Rights Holders **must** return (or cause their Subscription Nominee to return) a duly executed Subscription Form, including any supporting documentation required therewith, to the Subscription Agent by the Rights Offering Subscription Deadline in order to exercise such Subscription Rights Holder's Subscription Rights and Oversubscription Rights, as applicable.

6.      **Exercise of Subscription Rights and Oversubscription Rights**

(a)      In order to validly exercise its Subscription Rights, each Subscription Rights Holder must:

(i)      if the Subscription Rights Holder is not a Commitment Party and is a Street Name Holder, (1) no later than the ATOP Tender Deadline, direct its Subscription Nominee to tender/block its position(s) of Existing Common Interests through the ATOP procedures of DTC in an amount equal to the amount such holder wishes to exercise Subscription Rights, (2) return (or cause its Subscription Nominee to return) a duly executed Subscription Form to the Subscription Agent so that such documents are <u>actually received</u> by the Subscription Agent by the Rights Offering Subscription Deadline, and (3) no later than the Rights Offering Subscription Deadline, pay (or cause its Subscription Nominee to pay) the Aggregate Purchase Price to the Subscription Agent by wire transfer **ONLY** of immediately available funds in accordance with the instructions set forth herein;

(ii)      if the Subscription Rights Holder is not a Commitment Party and holds Existing Common Interests directly on the books and records of the Debtors, (1) return a duly executed Subscription Form to the Subscription Agent so that such documents are <u>actually received</u> by the Subscription Agent by the Rights Offering Subscription Deadline and (2) no later than the Rights Offering Subscription Deadline, pay the Aggregate Purchase Price to the Subscription Agent by wire transfer **ONLY** of immediately available funds in accordance with the instructions set forth herein;

12

(iii)     if the Subscription Rights Holder is a Commitment Party and is a Street Name Holder, (1) no later than the ATOP Tender Deadline, direct its Subscription Nominee to tender/block its position(s) of Existing Common Interests through the ATOP procedures of DTC in an amount equal to the amount such holder wishes to exercise Subscription Rights, (2) return (or cause its Subscription Nominee to return) a duly executed Subscription Form to the Subscription Agent so that such documents are <u>actually received</u> by the Subscription Agent by the Rights Offering Subscription Deadline and (3) no later than the Backstop Funding Deadline, pay the Aggregate Purchase Price (or cause its Subscription Nominee to pay) (in accordance with the terms and conditions and in the form and manner set forth in the Backstop Commitment Letter) by wire transfer **ONLY** of immediately available funds in accordance with the instructions set forth herein, subject to the terms and conditions of the Backstop Commitment Letter; and

(iv)     if the Subscription Rights Holder is a Commitment Party, (1) return a duly executed Subscription Form to the Subscription Agent so that such documents are <u>actually received</u> by the Subscription Agent by the Rights Offering Subscription Deadline and (2) no later than the Backstop Funding Deadline, pay the Aggregate Purchase Price (in accordance with the terms and conditions and in the form and manner set forth in the Backstop Commitment Letter) by wire transfer **ONLY** of immediately available funds in accordance with the instructions set forth herein, subject to the terms and conditions of the Backstop Commitment Letter.

(b)     In order to validly exercise its Oversubscription Rights, each Subscription Rights Holder or its Subscription Nominee (if applicable) must (in addition to having validly and timely exercised its Subscription Rights in full and having taken the actions required under 7(a) above):

(i)      indicate in its Subscription Form its Oversubscription Election, including the number of Unsubscribed Shares for which it is exercising such election; and

(ii)     promptly upon returning its Subscription Form to the Subscription Agent, but in no event later than the Rights Offering Subscription Deadline, pay or have paid the applicable Oversubscription Funding Amount by wire transfer **ONLY** of immediately available funds in accordance with the instructions set forth herein;

*provided that* if such Subscription Rights Holder exercising its Oversubscription Rights is a Commitment Party it shall pay or have paid the applicable Oversubscription Funding Amount in the manner set forth in the foregoing clause no later than the Backstop Funding Deadline.

In the event that the funds received by the Subscription Agent from any Subscription Rights Holder do not correspond to the Aggregate Subscription Amount, payable for the Rights Offering Shares, including any Unsubscribed Shares, elected to be purchased by such Subscription Rights Holder, the number of Rights Offering Shares deemed to be purchased by such Subscription Rights Holder will be the lesser of (a) the number of shares of the Rights Offering Shares elected to be purchased by such Subscription Rights Holder and (b) a number of shares of the Rights Offering

13

Shares determined by dividing the amount of the funds received by the applicable Aggregate Subscription Amount.

The cash paid to the Subscription Agent on account of the Aggregate Subscription Amount in accordance with these Rights Offering Procedures (other than any cash paid by the Commitment Parties) will be deposited and held by the Subscription Agent in a segregated account satisfactory to the Debtors until administered in connection with the settlement of the Rights Offering on the Effective Date or promptly thereafter pursuant to the Plan. The Subscription Agent may not use such cash for any other purpose prior to the Effective Date and may not encumber or permit such cash to be encumbered with any lien or similar encumbrance. Notwithstanding the foregoing, subject to the terms and conditions of the Backstop Commitment Letter, the cash paid by the Commitment Parties pursuant to these Rights Offering Procedures and/or the Backstop Commitment Letter, as applicable, will be deposited and held by the Debtors in the Escrow Account until released or otherwise refunded in accordance with the Backstop Commitment Letter. The cash held by the Subscription Agent for the Aggregate Subscription Amount received  from all Subscription Rights Holders in connection with the Rights Offering shall not be deemed part of the Debtors' bankruptcy estates and, for the avoidance of doubt, will be non-interest bearing. The cash held by the Subscription Agent in the Escrow Account for the aggregate Backstop Commitment Deposit shall not be deemed part of the Debtors' bankruptcy estates and will be held in a separate interest-bearing escrow account in accordance with the Backstop Commitment Letter.

Each Subscription Rights Holder that participates in the Rights Offering is deemed to have made the following representations and acknowledgments:

(i) Each Subscription Rights Holder recognizes and understands that the Subscription Rights and Oversubscription Rights are not transferrable and that the benefits of the Subscription Rights and Oversubscription Rights are not separable from the claim or securities with respect to which the Subscription Rights and Oversubscription Rights have been granted;

(ii) Each Subscription Rights Holder represents and warrants that it will not accept a distribution of Rights Offering Shares if at such time it does not hold all of the Existing Common Interests associated with its Subscription Rights and, by accepting a distribution of Rights Offering Shares, such Subscription Rights Holder will be deemed to be the owner thereof; and

(iii) Each Subscription Rights Holder represents and warrants that it held the Existing Common Interests associated with its Subscription Rights as of the Rights Offering Record Date.

**7.    Transfer Restriction; Revocation**

The Subscription Rights and Oversubscription Rights are non-transferable and are not detachable from the applicable Existing Common Interests. If any Subscription Rights or Oversubscription Rights are transferred by a Subscription Rights Holder, such Subscription Rights will be cancelled automatically and neither such Subscription Rights Holder nor the purported

14

transferee will receive any Rights Offering Shares otherwise purchasable on account of such transferred Subscription Rights or Oversubscription Rights.

Once a Subscription Rights Holder has properly exercised its Subscription Rights or Oversubscription Rights, as applicable, subject to the terms and conditions of the Subscription Form, and the Backstop Commitment Letter in the case of the Commitment Parties, such exercise will be irrevocable.

### 8.      Return of Payment; Rights Offering Conditioned on Effectiveness of the Plan

Unless the Effective Date has occurred, the Rights Offering will be deemed automatically terminated without any action of any party upon revocation of the Plan.

If the Rights Offering is terminated or otherwise not consummated, any cash paid to the Subscription Agent will be promptly returned, without interest, to the applicable Subscription Rights Holder as soon as reasonably practicable, but in no event later than the later of the date that is five Business Days after the date on which the Rights Offering is terminated or the date the Subscription Agent receives the applicable refund information; provided that any cash paid to the Subscription Agent by the Commitment Parties, including on account of any Backstop Commitment Deposit and/or Aggregate Subscription Amount, will be promptly returned, with interest, to the applicable Commitment Party as soon as practicable, in accordance with the terms and conditions of the Backstop Commitment Letter.

All exercises of Subscription Rights and Oversubscription Rights are subject to and conditioned upon the effectiveness of the Plan. The Debtors will accept an exercise of the Subscription Rights and Oversubscription Rights only upon the confirmation and effectiveness of the Plan. Notwithstanding anything contained herein, in the Disclosure Statement or in the Plan to the contrary, the Debtors reserve the right, subject to the terms of the Backstop Commitment Letter, to modify these Rights Offering Procedures or adopt additional detailed procedures if necessary in the Debtors' business judgment to more efficiently administer the distribution and exercise of the Subscription Rights and Oversubscription Rights or comply with applicable law.

In the event that the aggregate Rights Offering Shares issuable pursuant to the exercise of Oversubscription Rights exceeds the number of Unsubscribed Shares, Subscription Rights Holders who have made Oversubscription Elections will receive their *pro rata* share (measured as the proportion that the Unsubscribed Shares elected to be purchased by such Subscription Rights Holder bears to the aggregate amount of Unsubscribed Shares elected to be purchased by all Subscription Rights Holders) of the Unsubscribed Shares and the difference between the Oversubscription Funding Amount  actually paid by such exercising Subscription Rights Holder and the Oversubscription Funding Amount that such Subscription Rights Holder is required to pay after giving effect to the proration, if any, shall be refunded no later than five Business Days after the Rights Offering Subscription Deadline, or as soon as practicable thereafter.

9.      **Fractional Shares**

No fractional Subscription Rights, Oversubscription Rights or fractional Rights Offering Shares will be issued in the Rights Offering. All allocations for Rights Offering Shares will be calculated and rounded down to the nearest whole share.

10.     **Validity of Exercise of Subscription Rights**

All questions concerning the timeliness, viability, form, and eligibility of any exercise of Subscription Rights or Oversubscription Rights will be determined in good faith by the Debtors, and, if necessary, subject to a final and binding determination by the Bankruptcy Court. The Debtors will not be deemed to have received nor otherwise accepted any exercise or subscription that is incomplete, inaccurate, untimely, or otherwise fails to conform to the requirements set forth in these Rights Offering Procedures. The Debtors may provide notification to a Subscription Rights Holder who elects to exercise its Subscription Rights or Oversubscription Rights, as applicable, of such defects or irregularities and permit such defects or irregularities to be waived, provided such waiver is executed in writing, or otherwise timely cured. Each such irregularity or defect, if reviewed, will be done so on an individual submission basis. For the avoidance of doubt, Subscription Forms will be deemed not to have been received or accepted until all defects or irregularities have been waived in writing or timely cured. None of the Debtors, the Reorganized Debtors, nor any of their respective employees, Affiliates, or professionals, shall incur any liability for giving, or failing to give, such notification or opportunity to cure.

**Before exercising any Subscription Rights or Oversubscription Rights, Subscription Rights Holders should read the Disclosure Statement and the Plan, each as amended or supplemented, and all additional disclosures of financial information, including additional quarterly reports for quarters ending subsequent to the date of the Disclosure Statement filed with the Bankruptcy Court and made available at the Debtors' restructuring website at https://cases.stretto.com/corescientific/ for information relating to the Debtors and the risk factors to be considered.**

11.     **Modification of Procedures**

The Debtors reserve the right to modify these Rights Offering Procedures, or adopt additional procedures consistent with these Rights Offering Procedures, to effectuate the Rights Offering and to issue the Rights Offering Shares; provided that the Debtors shall provide prompt written notice to each Subscription Rights Holder (which may be through such Subscription Rights Holder's Subscription Nominee) of any material modification to these Rights Offering Procedures made after the Subscription Commencement Date, which notice may be provided through posting such notice on the Subscription Agent's website at https://cases.stretto.com/corescientific/; provided, however, that any material amendments or modifications to the terms of the Rights Offering require the consent of the Requisite Commitment Parties pursuant to the Backstop Commitment Letter and the Equity Committee pursuant to the RSA. In so doing, and subject to the prior consent of the Requisite Backstop Commitment Parties, if applicable, the Debtors may execute and enter into agreements and take further action that the Debtors determine in good faith

16

are necessary and appropriate to effectuate and implement the Rights Offering and the issuance of the Rights Offering Shares. Nothing in this paragraph shall be construed so as to permit the Debtors to modify the terms of any executed and delivered Subscription Form without the reasonable consent of the Subscription Rights Holder or Commitment Parties subject thereto. The Debtors are not obligated to deliver any notice to the Subscription Rights Holder in connection with any reduction in the size of the Rights Offering, except with respect to the Commitment Parties.

The Debtors shall undertake reasonable procedures to confirm that each participant in the Rights Offering is in fact a Subscription Rights Holder, including, but not limited to, requiring additional certifications by such participant to that effect and other diligence measures as the Debtors deem reasonably necessary.

All calculations, including, to the extent applicable, the calculation of (i) the value of any Subscription Rights Holder's Existing Common Interests for the purposes of the Rights Offering and (ii) any Subscription Rights Holder's Rights Offering Shares, shall be made in good faith by the Debtors, and in each case in accordance with any Claim amounts included in the Plan, and any disputes regarding such calculations shall be subject to a final and binding determination by the Bankruptcy Court.

### 12.    Inquiries And Transmittal of Documents; Subscription Agent

The Rights Offering Instructions attached hereto should be read carefully and strictly followed by the Subscription Rights Holders. Questions relating to the Rights Offering should be directed to the Subscription Agent toll free at the following telephone numbers: (888) 317-1417). (domestic toll-free) or (929) 399-0959 (international) or via e-mail at csrightsoffer@stretto.com (please reference "Core Rights Offering" in the subject line).

The risk of non-delivery of all documents and payments to the Subscription Agent is on the Subscription Rights Holder electing to exercise its Subscription Rights and not the Debtors or the Subscription Agent.

### 13.    Failure to Exercise Subscription Rights

Subscription Rights and Oversubscription Rights that are not exercised in accordance with these Rights Offering Procedures by the Rights Offering Subscription Deadline will be relinquished on the Rights Offering Subscription Deadline, and none of the Debtors, the Reorganized Debtors or any of their respective employees, Affiliates, or professionals shall have any liability for any failure to exercise Subscription Rights or Oversubscription Rights. Any attempt to exercise Subscription Rights or Oversubscription Rights after the Rights Offering Subscription Deadline shall be null and void and the Debtors shall not be obligated to honor any such purported exercise received by the Subscription Agent after the Rights Offering Subscription Deadline regardless of when the documents relating thereto were sent. The Subscription Form(s) may only be submitted via the E-Subscription Portal. No other methods will be accepted. To access the E-Subscription Form Portal, visit https://cases.stretto.com/corescientific/ click on the "Submit Rights Offering Form" section of the website and follow the instructions to submit your form. In

all cases, you should allow sufficient time to ensure timely delivery by the Rights Offering Subscription Deadline.

**CORE SCIENTIFIC, INC. (THE "COMPANY")**

**RIGHTS OFFERING SUBSCRIPTION FORM**

**SUBSCRIPTION FORM FOR USE BY SUBSCRIPTION RIGHTS HOLDERS FOR THE RIGHTS OFFERING IN CONNECTION WITH THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF CORE SCIENTIFIC, INC. AND ITS DEBTOR AFFILIATES**

*ALL SUBSCRIPTION RIGHTS HOLDERS WISHING TO PARTICIPATE IN THE RIGHTS OFFERING MUST READ, COMPLETE AND EXECUTE THIS FORM.*

---

You are receiving this form because you are a "Subscription Rights Holder." A Subscription Rights Holder is any holder of Core Scientific common stock (or certain other equity interests) as of the applicable record date – November 16, 2023. Each Subscription Rights Holder has the ability to "subscribe" to purchase shares of reorganized Core Scientific common stock through the Rights Offering.

The total amount of shares being offered is $55 million. The purchase price per share is $[●] (subject to adjustment as described herein), which represents a 30% discount to the Plan Equity Value, based on an Enterprise Value of $1.5 billion. The purchase price per share assumes that current holders of Core Scientific common stock (or certain other equity interests) after giving effect to the reorganization transactions described in the Chapter 11 Plan and Disclosure Statement, as amended and supplemented, will hold 1/15th the number of issued and outstanding shares of common stock of the reorganized Company upon emergence from bankruptcy than they hold as of November 17, 2023 (such ratio is subject to change).

A Subscription Rights Holder is entitled to (1) exercise subscription rights based on its *pro rata* ownership of Existing Common Interests and (2) exercise oversubscription rights and purchase more than its *pro rata* share of the shares offering in the Rights Offering. If the total oversubscription purchases for all Subscription Rights Holders results in Rights Offering proceeds in excess of $55 million, each Subscription Rights Holder's ability to oversubscribe will be reduced proportionally.

Any share issued in connection with the Rights Offering will be freely tradeable immediately upon receipt pursuant to section 1145 of the Bankruptcy Code, subject to certain exceptions for any Subscription Rights Holder who is a Commitment Party under the Backstop Commitment Letter or is an "underwriter" as that term is defined in section 1145 of the Bankruptcy Code.

You should read and complete this form if you wish to exercise your subscription rights and purchase shares in the reorganized Company.

To participate in the Rights Offering, each Subscription Rights Holder who is <u>not</u> a Commitment Party must (1) submit this Subscription Form and wire the accompanying funds to be received no later than **5:00 p.m. New York City time on December 8, 2023** and (2) if you hold your Existing Common Interests through a bank, broker or similar institution, work with them to have your interests tendered through ATOP (as described below) no later than **5:00 p.m. New York City time on December 8, 2023**.

To participate in the Rights Offering, each Subscription Rights Holder who is a Commitment Party must (1) submit this Subscription Form to be received no later than **5:00 p.m. New York City time on December 8, 2023**, and wire the accompanying funds to be received no later than **the date specified in the Funding Notice** and (2) if you hold your Existing Common Interests through a bank, broker or similar institution, work with them to have your interests tendered through ATOP (as described below) no later than **5:00 p.m. New York City time on December 8, 2023**.

**<u>Please see below for key dates and further instructions for completing this form and participating in the Rights Offering.</u>**

---

The Rights Offering Record Date is November 16, 2023.

The Rights Offering Subscription Deadline is 5:00 p.m. New York City time on December 8, 2023.

The ATOP Tender Deadline is 5:00 p.m. New York City time on December 8, 2023.

If you hold Existing Common Interests through a bank, broker, or other financial institution that holds your Existing Equity Interests "in street name" (your "Subscription Nominee") in DTC, to exercise your Subscription Rights, (i) you must direct your Subscription Nominee to tender your Existing Common Interests into the appropriate option on DTC's ATOP platform by the ATOP Tender Deadline and (ii) this Subscription Form (with accompanying IRS Form W-9 or appropriate IRS Form W-8, as applicable), and a wire transfer of the Aggregate Purchase Price and Oversubscription Amount, if applicable (together, the "Aggregate Subscription Amount"), must be received by the Subscription Agent in accordance with the wire instructions set out in this Subscription Form on or prior to the Rights Offering Subscription Deadline, or your Subscription Form will not be recognized and you will be deemed to have irrevocably relinquished and waived your right, if any, to participate in the Rights Offering or otherwise purchase shares of reorganized Core Scientific common stock through the Rights Offering ("Rights Offering Shares").

If you hold Existing Common Interests directly on the books and records of the Company, to exercise your Subscription Rights, this Subscription Form (with accompanying IRS Form W-9 or appropriate IRS Form W-8, as applicable), and a wire transfer of the Aggregate Subscription Amount, must be received by the Subscription Agent in accordance with the wire instructions set out in this Subscription Form on or prior to the Rights Offering Subscription Deadline, or your Subscription Form will not be recognized and you will be deemed to have irrevocably relinquished and waived your right, if any, to participate in the Rights Offering in respect of the Rights Offering Shares.

Please note that, for Subscription Rights Holders that hold Existing Common Interests through DTC, you will need the assistance of your Subscription Nominee to complete certain items in this Subscription Form, so please allot sufficient time to coordinate with your Subscription Nominee in advance of the Rights Offering Subscription Deadline (and with respect to the funding for Commitment Parties, the Backstop Funding Deadline). If you hold Existing Common Interests through DTC, to exercise your Subscription Rights, you must direct your Subscription Nominee to tender your Existing Common Interests into the appropriate option on DTC's ATOP platform by the ATOP Tender Deadline.

The Rights Offering Shares are being distributed and issued without registration under the Securities Act, nor any State or local law requiring registration for offer or sale of a security, pursuant to the exemption from registration set forth in Section 1145 of the Bankruptcy Code and in compliance with any applicable State or local laws pursuant to registration or exemption therefrom. Any Holder who subscribes for Rights Offering Shares and is an "underwriter", as that term is defined for purposes of section 1145 of the Bankruptcy Code, will also be subject to restrictions on its ability to resell those securities.

No Subscription Rights or Oversubscription Rights may be sold, transferred, assigned, pledged, hypothecated, participated, donated or otherwise encumbered or disposed of, directly or indirectly (including through derivatives, options, swaps, forward sales or other transactions in which any person receives the right to own or acquire any current or future interest in the Subscription Rights, Oversubscription Rights, Rights Offering Shares or claims funded pursuant to the Backstop Commitment Letter and any related claims). After Subscription Rights are exercised with respect to any Existing Equity Interests, any purported trading, assignment or transfer of such Existing Common Interests shall be deemed null and void, provided that, with respect to the Commitment Parties, the transfer restrictions set forth in the Backstop Commitment Letter shall govern.

2

To permit proper and timely processing of your Subscription Form, please carefully review, fill out, and/or certify all Items contained herein or attached hereto, as applicable. Please consult the Plan, the Disclosure Statement and the Rights Offering Procedures (including the instructions therein), as applicable, for additional information with respect to this Subscription Form. Questions relating to the Rights Offering should be directed to the Subscription Agent toll free at the following telephone numbers: (888) 317-1417 (domestic toll-free) or (929) 399-0959 (international) or via e-mail at CSRightsOffer@stretto.com (please reference "Core Rights Offering" in the subject line) (with "Core" in the subject line).

In order to participate in the Rights Offering, please complete this Subscription Form.

Subject to the terms and conditions of the Rights Offering Procedures, all subscriptions set forth in this Subscription Form are irrevocable.

Please consult the Plan, the Disclosure Statement and the Rights Offering Procedures for additional information with respect to this Subscription Form. Any terms capitalized but not defined herein shall have the meaning set forth in the Plan or the Rights Offering Procedures.

Each Subscription Rights Holder will be eligible to obtain Subscription Rights to subscribe for its *pro rata* share of the Rights Offering Shares being offered and issued by the Company in the Rights Offering (the "**Rights Offering Shares**"). All Subscription Rights Holders have the right, but not the obligation, subject to and in accordance with the Rights Offering Procedures, to participate in the Rights Offering; provided that:

 (i) **if the Subscription Rights Holder's Existing Common Interests are held by its Subscription Nominee through DTC**, it (a) causes its Subscription Nominee to tender the Subscription Rights Holder's Existing Common Interests into DTC's ATOP platform on or before the ATOP Tender Deadline, and (b) timely and properly completes, submits, executes and delivers (or coordinates with its Subscription Nominee for the timely delivery of) its Subscription Form to the Subscription Agent (with accompanying IRS Form W-9 or appropriate IRS Form W-8, as applicable) and the Subscription Form is received by the Subscription Agent on or before the Rights Offering Subscription Deadline; (c) executes a wire transfer (or arranges with its Subscription Nominee for execution of such wire transfer) of the Aggregate Subscription Amount in accordance with Item 1 or 3 below, to the Subscription Agent on or before the Rights Offering Subscription Deadline or, in the case of the Commitment Parties, to the Escrow Account on or before the Backstop Funding Deadline; and (d) is determined eligible pursuant to the Rights Offering Procedures; and

(ii) **if the Subscription Rights Holder's Existing Common Interests are held on the books and records of the Company outside of DTC**, it (a) timely and properly completes, submits, executes and delivers its Subscription Form to the Subscription Agent (with accompanying IRS Form W-9 or appropriate IRS Form W-8, as applicable), and the Subscription Form is received by the Subscription Agent on or before the Rights Offering Subscription Deadline; (b) executes a wire transfer of the Aggregate Subscription Amount in accordance with Item 1 or 3 below, to the Subscription Agent on or before the Rights Offering Subscription Deadline or, in the case of the Commitment Parties, to the Escrow Account on or before the Backstop Funding Deadline; and (c) is determined eligible pursuant to the Rights Offering Procedures.

Subject to the terms and conditions set forth in the Plan, the Disclosure Statement, the Rights Offering Procedures and this Subscription Form, each Subscription Rights Holder is entitled to subscribe, at a purchase price of $[●] per whole share, for [●] Rights Offering Shares per Existing Common Interest held by such Subscription Rights Holder (the "**Rights Factor**") (subject to the Plan Claim Adjustment described below and the individual limits included in the calculations in Item 1 of this Subscription Form); notwithstanding the foregoing, as a result of certain elections available to certain claimants pursuant to the Plan, the price per Rights Offering Share may decrease and, as a result there will be a corresponding increase in the number of Rights Offering Shares each Subscription Rights Holder will be issued in the Rights Offering in exchange for payment

3

of their Aggregate Purchase Price (the "**Plan Claim Adjustment**"), as illustrated below. The minimum price per Rights Offering Share that could result from certain elections available to certain claimants pursuant to the Plan would be $[●] per Rights Offering Share.

For illustrative purposes only, in the event a Subscription Rights Holder holds 1,000,000 Existing Common Interests, such Subscription Rights Holder could subscribe for [●] Rights Offering Shares by paying an Aggregate Purchase Price of $[●], representing a price per Rights Offering Share of $[●] and reflecting the Rights Factor.

However, as a result of the maximum possible Plan Claim Adjustment, in the event that a Subscription Rights Holder held 1,000,000 Existing Common Interests, and such Subscription Rights Holder fully subscribed to its Subscription Rights and paid an Aggregate Purchase Price of $[●], then such Subscription Rights Holder would receive [●] Rights Offering Shares, representing a price per Rights Offering Share of $[●].

The price per Rights Offering Share assumes that the holders of Existing Common Interests, after giving effect to the reorganization transactions described in the Chapter 11 Plan and Disclosure Statement, as amended and supplemented, will hold 1/15th the number of issued and outstanding shares of common stock of the reorganized Company upon its emergence from bankruptcy than they hold as of November 17, 2023 (such ratio is subject to change). The current share price of the Company's common stock listed on OTC US (CORZQ:US) as of November 17, 2023, does not reflect the reorganization transactions described in the Plan and Disclosure Statement, and is not expected to be indicative of reorganized the Company's post-emergence share price.

In addition, each Subscription Rights Holder will also have an Oversubscription Right to elect to purchase additional Rights Offering Shares offered in the Rights Offering at a price of $[●] per Rights Offering Share (subject to the Plan Claim Adjustment) that are not timely, duly and validly subscribed and paid for by the Subscription Rights Holder in accordance with the Rights Offering Procedures, in an amount not to exceed the total number of Rights Offering Shares offered in the Rights Offering minus the total number of Rights Offering Shares that such Subscription Rights Holder duly, validly and timely elected to purchase pursuant to its Subscription Right (such amount being referred to herein as the Subscription Rights Holder's "**Maximum Oversubscription Amount**"); provided, however, that no Subscription Rights Holder may exercise an Oversubscription Right until it has also duly, validly and timely exercised in full its Subscription Right. In order to validly exercise its Oversubscription Rights, each Subscription Rights Holder must (in addition to having validly and timely exercised its Subscription Rights in full and having taken the actions required in this Subscription Form and pursuant to the Rights Offering Procedures), promptly upon returning (or coordinating with its Subscription Nominee for return of) its Subscription Form to the Subscription Agent, but in no event later than the Rights Offering Subscription Deadline, pay (or cause its Subscription Nominee to pay) the applicable Oversubscription Funding Amount, in accordance with Item 3 below, by wire transfer **ONLY** of immediately available funds in accordance with the instructions set forth herein; provided further that, the Commitment Parties shall pay the applicable Oversubscription Funding Amount no later than the Backstop Funding Deadline, in accordance with Item 3 below, by wire transfer **ONLY** of immediately available funds in accordance with the instructions set forth herein, subject to the terms and conditions of the Backstop Commitment Letter.

PLEASE NOTE: NO SUBSCRIPTION OR OVERSUBSCRIPTION WILL BE VALID UNLESS THIS SUBSCRIPTION FORM AND THE AGGREGATE SUBSCRIPTION AMOUNT, AS APPLICABLE, AND FUNDS ARE VALIDLY SUBMITTED AND PAID TO THE SUBSCRIPTION AGENT BY THE RIGHTS OFFERING SUBSCRIPTION DEADLINE. NOTWITHSTANDING THE FOREGOING, THE COMMITMENT PARTIES MUST DELIVER THE AGGREGATE SUBSCRIPTION AMOUNT BY THE BACKSTOP FUNDING DEADLINE AND IN ACCORDANCE WITH THE INSTRUCTIONS SET FORTH IN THE FUNDING NOTICE.

To access the E-Subscription Form Portal, visit https://cases.stretto.com/corescientific click on the "Submit Rights Offering Form" section of the website and follow the instructions to submit your form.

**<u>Submitting your Subscription Form via the E-Subscription Portal is the only valid method of submission. No other methods will be accepted.</u>**

**Item 1: Amount of Existing Common Interests beneficially owned by Subscription Right Holder, Calculation of Maximum Number of Rights Offering Shares, and Calculation of Aggregate Purchase Price**

By filling in the following blanks, you are certifying that, as of the Rights Offering Record Date, the information provided below is a true and accurate schedule of the beneficial holders of the Existing Common Interests, as identified by their respective account and that the undersigned Subscription Rights Holders are subscribing for the number of Rights Offering Shares specified below, on the terms and subject to the conditions set forth herein and in the Plan, the Disclosure Statement and the Rights Offering Procedures.

**Item 1(a):      Amount of Existing Common Interests Held:**

Number of Existing Common Interests held: _____ shares

**Item 1(b):      Calculation for Maximum Amount of Rights Offering Shares:**

| CUSIP/ISIN | Number of Existing Common Interests (Insert share amount from Item 1(a) above) | x | Rights Factor | = | Maximum Amount of Rights Offering Shares (*rounded down to the nearest whole share*) |
|---|---|---|---|---|---|
| 21873J108 / US21873J1088 | | x | [●] | = | |

**Item 1(c):      Calculation for Aggregate Purchase Price:**

| Number of Rights Offering Shares you elect to purchase (This number cannot be greater than the Maximum Amount of Rights Offering Shares calculated from Item 1(b)) | x | Purchase Price | = | Rights Offering Shares Purchase Amount (*TBD: rounding based on factor*) |
|---|---|---|---|---|
| | x | $[●] | = | $_____ |

Number of Rights Offering Shares Purchased: _____ shares

Rights Offering Shares Purchase Amount: $ _____

**Item 2. Calculation of Maximum Number of Unsubscribed Shares for Which the Undersigned May Subscribe. You may only exercise Oversubscription Rights if you have elected to purchase the maximum number of Rights Offering Shares for which you may subscribe in Item 1 above.**

The maximum number of Unsubscribed Shares for which the undersigned may subscribe is calculated as follows:

| $_____ <br> ($_____ less the Rights Offering Share Purchase Amount from Item 1(c) above) | / | $[●] <br> [Price per Rights Offering Share] | = | _____ shares <br> [2(a) (Maximum number of Unsubscribed Shares for which you may subscribe) <br> [Round down to the nearest share] |
|---|---|---|---|---|

**Item 2(b). Oversubscription Funding Amount.** By filling in the following blanks, the undersigned Subscription Rights Holder is indicating that it is committing to subscribe for and purchase up to the number of Rights Offering Shares specified below (specify a number of Rights Offering Shares, which is not greater than the maximum number of Unsubscribed Shares for which you may subscribe set forth as 2(a) in the table above), on the terms and subject to the conditions set forth in the Subscription Agreement and the Rights Offering Procedures.

| _____shares <br> (Indicate number of Rights Offering Shares the undersigned elects to purchase, which cannot be greater than the number of shares set forth as [2(a) in the table above.) | X | $[●] <br> [Price per Rights Offering Share] | = | $_____ <br> [2(b) **Your "Oversubscription Funding Amount"** <br> [This is the amount that you will wire to the Subscription Agent in addition to your Aggregate Purchase Price] <br><br> ==(**TBD**: rounding based on factor)== |
|---|---|---|---|---|

Number of Unsubscribed Shares Purchased: _____ shares

Oversubscription Funding Amount: $ _____

**Item 3. Calculation of Aggregate Subscription Amount.** By filling in the following blanks, you are indicating that the undersigned Subscription Rights Holder is subscribing to purchase the number of Rights Offering Shares associated with the Number of Rights Offering Shares indicated in Item 1(c) and the number of Rights Offering Shares indicated in Item 2(b), on the terms and subject to the conditions set forth in the Rights Offering Procedures

Number of Aggregate Rights Offering Shares Purchased: _____ shares <br>
(Insert Total Aggregate Number of Rights Offering Shares Purchased shown in Item 1(c) & Unsubscribed Shares Purchased shown in Item 2(b))

Aggregate Subscription Amount: $ _____ <br>
(Insert Total Aggregate Purchase Price shown in Item 1(c) & Oversubscription Funding Amount shown in Item 2(b))

**Item 4. Nominee Information**.

If you hold your Existing Common Interests on the register maintained by Computershare, the transfer agent, please provide your Computershare Account Number:

Computershare Account Number:_____

If you hold your Existing Common Interests through DTC, please indicate on the lines provided below your brokerage (DTC Participant) account information. *The Company strongly recommend that you type the information below to ensure legibility*

DTC Participant Name:_____

DTC Participant Number:_____

DTC Participant Contact Name:_____

DTC Participant Contact Telephone:_____

DTC Participant Contact E-Mail Address:_____

Beneficial Holder Account Number at DTC Participant:_____

**VOI or Reference Number**

The requested identification number(s) must be provided below in order to link a particular Registration Form with the relevant ATOP submission(s). In most cases, this will be the "Voluntary Offer Instruction" ("VOI") Number, which would need to be provided to the Subscription Rights Holder by the DTC Participant that tendered its Existing Common Interests through ATOP. However, participating Subscription Rights Holder through Euroclear or Clearstream may instead provide their Euroclear or Clearstream reference number; provided, however, that the Subscription Agent must also receive a register of such number(s) directly from Euroclear or from Clearstream in order to link such instruction number(s) to the relevant VOI Number(s).

VOI Number(s): _____

and/or

Euroclear Reference Number(s): _____

and/or

Clearstream Reference Number(s): _____

**Item 5. Payment and Delivery Instructions**

Subscription Rights Holders must submit to the Subscription Agent via wire transfer to the account set out below the Aggregate Subscription Amount payment (specified in Item 3 above) along with their completed Subscription Form, directly to the Subscription Agent on or before the Rights Offering Subscription Deadline. Notwithstanding the foregoing, the Commitment Parties must deliver the Aggregate Subscription Amount by the Backstop Funding Deadline and in accordance with the instructions set forth in the Funding Notice.

*Wire Instructions:*

| | |
|---|---|
| **Account Name** | CORE SCIENTIFIC RIGHTS OFFERING |
| **Bank Account No.** | 6316490864 |
| **ABA/Routing No.** | 036076150 |
| **SWIFT (for international wires)** | CTZIUS33 |
| **Bank Name** | CITIZENS BANK, NA |
| **Bank Address** | 1 CITIZENS DRIVE RIVERSIDE RI, 02915 |
| **Account Name** | CORE SCIENTIFIC RIGHTS OFFERING |

*Your wire information in the event a refund is needed:*

Please use the chart below to provide the appropriate wire information in the event the Subscription Agent must refund a portion (or all) of your subscription payment, as applicable.

| | |
|---|---|
| **Account Name** | |
| **Bank Account No.** | |
| **ABA/Routing No.** | |
| **Bank Name** | |
| **Bank Address** | |
| **Reference** | |

**Item 6. Registration and Brokerage Information for Rights Offering Shares**

**FOR SUBSCRIPTION RIGHTS HOLDERS PARTICIPATING IN THE RIGHTS OFFERING THAT HOLD EXISTING COMMON INTERESTS THROUGH A SUBSCRIPTION NOMINEE IN DTC, THE RIGHTS OFFERING SHARES ARE EXPECTED TO BE DTC ELIGIBLE AND SUCH SHARES WILL ONLY BE DELIVERED TO THE DTC PARTICIPANT ACCOUNT FROM WHICH THE UNDERLYING EXISTING COMMON INTERESTS WERE DELIVERED VIA ATOP. HOWEVER, PLEASE PROVIDE THE FOLLOWING REGISTRATION INFORMATION FOR THE DIRECT REGISTRATION OF THE RIGHTS OFFERING SHARES IN THE EVENT THAT SUCH SHARES ARE NOT DTC ELIGIBLE.**

**FOR SUBSCRIPTION RIGHTS HOLDERS PARTICIPATING IN THE RIGHTS OFFERING THAT HOLD EXISTING COMMON INTERESTS ON THE BOOKS AND RECORDS OF THE COMPANY OUTSIDE OF DTC, YOU MUST PROVIDE THE FOLLOWING REGISTRATION INFORMATION AS YOUR RIGHTS OFFERING SHARES WILL BE ISSUED ON THE REGISTER MAINTAINED BY THE COMPUTERSHARE AND WILL NOT BE DELIVERED TO THE DTC PARTICIPANTS.**

**IF YOU WISH TO EXERCISE OVERSUBSCRIPTION RIGHTS TO PURCHASE UNSUBSCRIBED SHARES, YOU MUST PROVIDE THE FOLLOWING REGISTRATION INFORMATION AS THE UNSUBSCRIBED SHARES WILL BE ISSUED ON THE REGISTER MAINTAINED BY THE COMPUTERSHARE AND WILL NOT BE DELIVERED TO THE DTC PARTICIPANTS.**

Registration Name Line 1 (Maximum 40 Characters): _____

Registration Name Line 2 (Maximum 40 Characters): _____ (if needed)

Address 1: _____

Address 2: _____

Address 3: _____

City, State, and Zip Code: _____

Country: _____

Telephone Number: _____

E-Mail Address: _____

U.S. Tax Identification Number: _____

Check here if non-US (no TIN) ☐

**Account Type**.  Please indicate the "account type" that may be used in connection with registration of your Subscribed Securities in the name of the New Registered Shareholder. Please check **only one** box:

☐    INDIVIDUAL ACCOUNT;

☐    IRA ACCOUNT;

☐ CORPORATIONS (S-CORP): (ASSOCIATED, ASSOCIATES, ASSOCIATION, CO, CO. COMPANY, CORP, CORPORATE/PARTNER, ENTERPRISE(S), FUND, GROUP, INCORPORATED, INC, INTERNATIONAL, INTL, LIMITED, LTD, LIFETIME LIMITED COMPANY, LLC, L.L.C., PARTNER, PARTNERS, PLC, PUBLIC LIMITED COMPANY);

☐ PARTNERSHIP: (LP, L P, L.P., LLP, LIMITED PARTNERSHIP, LIFETIME LIMITED PARTNERSHIP);

☐ BANK;

☐ NOMINEE ACCOUNTS;

☐ C-CORP;

☐ NON-PROFIT: (CEMETERY, CHURCH, COLLEGE, COMMISSION FOR CHILDREN WITH, COMMISSION FOR HANDICAPPED, COMMISSION MINISTRIES INC, COMMISSION OF PUBLIC WORKS, COMMISSION OF BANKING & FOUNDATIONS, HOSPITAL, SCHOOL, SYNAGOGUE, UNIVERSITY);

☐ FIDUCIARY ACCOUNT: (CUSTODIAN, CO-TRUSTEE, ESTATE, EXECUTOR, EXECUTRIX, FBO, F/B/O, FAO, FIDUCIARY TRUST, ITF, LIFE TEN, PENSION PLAN, INDIVIDUAL NAME PROFIT SHARING PLAN, RETIREMENT PLAN, 401K PLAN, SELL TRANSFER PLEDGE, STATE UNIFORM TRANSFER TO MINOR'S ACT, TTEE, TTEES, UW, UTMA, UGMA, USUFRUCT, UNIFIED, UNIF GIFT MIN ACT, UNIF TRUST MIN ACT, UNIFIED GIFT TO MINORS ACT, UNIFORM GIFT TO MINORS, UNIFORM TRANSFER TO MINORS, GRANT (GRANTOR ANNUITY TRUST));

☐ TENANTS IN COMMON;

☐ TENANTS BY ENTIRETY: (TEN ENT, TENANTS ENT, TENANTS ENTIRETY, TENANTS BY ENTIRETY, TENANTS BY ENTIRETIES);

☐ JOINT TENANTS: (JT TEN, JT TEN WROS, JT WROS, J/T/W/R/S, JOINT TENANCY, JOINT TENANTS WITH RIGHT OF SURVIVORSHIP, JT OWNERSHIP, IF JT ACCOUNT WITH TOD); or

☐ COMMUNITY PROPERTY: (COM PROP, COMM PROP, COM PROPERTY, COMM PROPERTY, MARITAL PROPERTY, HWACP, HUSBAND & WIFE AS COMMUNITY PROPERTY).

**Item 7. Commitment Party Representation**

*(This section is <u>only</u> for Commitment Parties, each of whom is aware of its status as a Commitment Party. Please note that checking the box below if you are not a Commitment Party may result in forfeiture of your rights to participate in the Rights Offering.)*

☐     **I am a Commitment Party identified in the Backstop Agreement**

**Item 8. Certification and Representations.**

The undersigned certifies, represents and warrants that:

(i) the undersigned is a Subscription Rights Holder and beneficial owner of the Existing Common Interests, as of the Rights Offering Record Date, set forth in Item 1 above or the authorized signatory (the "Authorized Signatory") of such Holder acting on behalf of such Holder;

(ii) the undersigned received a copy of the Plan, the Disclosure Statement and the Rights Offering Procedures and has access to additional disclosures of financial information, including additional quarterly reports for quarters ending subsequent to the date of the Disclosure Statement filed with the Bankruptcy Court and made available at the Debtors' restructuring website at https://cases.stretto.com/corescientific for information relating to the Debtors and the risk factors to be considered in its participation in this Rights Offering; and

(iii) the undersigned understands that the exercise of its rights in this Rights Offering is subject to all the terms and conditions set forth in the Plan, the Disclosure Statement, and the Rights Offering Procedures.

Please indicate your acceptance and approval of the foregoing in the space provided below.

ACCEPTED AND APPROVED

as of the _____ day of _____, 2023

SUBSCRIBER:   _____
(Please provide full legal name)

Signature:   _____

Name of Signatory:   _____

Title:   _____

If a Commitment Party, check here ☐

Address:   _____

City:   _____ State:   _____

Postal Code:   _____

Country:   _____

Telephone:   _____

Email Address:   _____

If U.S. Person, check here and attach IRS Form W-9: ☐ U.S. person

If Non-U.S. Person, check here and attach appropriate IRS Form W-8: ☐ Non-U.S. person

PLEASE NOTE: NO SUBSCRIPTION WILL BE VALID UNLESS THIS SUBSCRIPTION FORM, ALONG WITH THE AGGREGATE SUBSCRIPTION AMOUNT FUNDS ARE VALIDLY SUBMITTED AND PAID TO THE SUBSCRIPTION AGENT BY THE RIGHTS OFFERING SUBSCRIPTION DEADLINE. NOTWITHSTANDING THE FOREGOING, THE COMMITMENT PARTIES MUST DELIVER THE AGGREGATE SUBSCRIPTION AMOUNT BY THE BACKSTOP FUNDING DEADLINE IN ACCORDANCE WITH THE INSTRUCTIONS SET FORTH IN THE FUNDING NOTICE.

To access the E-Subscription Form Portal, visit https://cases.stretto.com/corescientific/ click on the "Submit Rights Offering Form" section of the website and follow the instructions to submit your form.

**Submitting your Subscription Form via the E-Subscription Portal is the only valid method of submission. No other methods will be accepted.**

**Exhibit 16**

**Equity Committee Letter in Support of the Plan**

November [•], 2023

To:   Equity Holders of Core Scientific, Inc.

## I.   Recommendation

You are receiving this letter because you hold equity in Core Scientific Inc. ("***Core***").  On December 22, 2022, Core and its affiliated debtor entities (collectively, the "***Debtors***") filed chapter 11 bankruptcy cases.  The Official Committee of Equity Security Holders (the "***Equity Committee***") was appointed in March 2023 to represent the interests of all equity holders in the Debtors' bankruptcy cases.  The Equity Committee has fought tirelessly for equity holders and engaged in extensive negotiations with the Debtors and other stakeholders in these chapter 11 cases.  The result of these efforts and negotiations is the Debtors' *Third Amended Joint Chapter 11 Plan* [Docket No. 1438] (the "***Plan***"), which resolves various disputes among the Debtors, the Equity Committee, and certain other stakeholders, including an ad hoc group of the Debtors' secured convertible notes (the "***Ad Hoc Noteholder Group***").

The Equity Committee supports the Plan and believes that it provides a fair and reasonable outcome for existing equity holders under the circumstances—with significantly more recovery for equity holders than was contemplated when these bankruptcy cases were initially filed.  Under the Plan, equity holders will receive their pro rata share of:

- equity in reorganized Core, anticipated to be approximately 32% of the total equity;

- two tranches of warrants to purchase up to 50% of the equity in reorganized Core in the future, if certain conditions are met; and

- the opportunity to participate in an Equity Rights Offering ("***ERO***") to purchase additional equity in reorganized Core at a 30% discount to the $1.5 billion Plan enterprise value.

**Accordingly, the Equity Committee recommends that you vote in favor of the Plan by checking the "ACCEPT (vote for) the Plan" box on the ballot you have received with this letter.**

<div align="center">

**Accept** (vote for) the Plan

</div>

For your vote to count, you must submit your ballot in accordance with the instructions provided in these materials so that is actually received no later than **5:00 pm Central Time on December 13, 2023**.

Although this letter provides a summary of the terms of the Plan and the material events of these chapter 11 cases, you must read the Plan, the Disclosure Statement, and the other materials included with this letter.  Those materials provide specific instructions on how to properly submit your Ballot so your vote is counted.

## II.    Background

Core and its subsidiaries filed their chapter 11 bankruptcy cases in December 2022, in the midst of the "crypto-winter" and significantly depressed bitcoin prices.  At the time, the Debtors had entered into a restructuring support agreement that would have provided the Ad Hoc Noteholder Group with more than 97% of the equity interests in reorganized Core, with the remaining 3% shared between unsecured creditors and existing equity holders.

As the price of bitcoin began to rebound in early 2023, the Debtors elected to terminate their restructuring support agreement with the Ad Hoc Noteholder Group on February 10, 2023 [Docket No. 517].  In parallel with these improving market conditions, an ad hoc group of existing equity holders began advocating for the appointment of an equity committee and in March 2023, after litigation and negotiations, the Debtors and other stakeholders agreed to appointment of an equity committee.  On March 23, 2023, the U.S. Trustee filed the notice appointing the members of the Equity Committee [Docket No. 724].  The Equity Committee has since retained Vinson & Elkins LLP as its legal counsel and FTI Consulting, Inc. as its financial advisor.

Throughout the spring of 2023, the price of bitcoin continued to climb.  The Debtors revised their business plan to address the changing market and presented the revised business plan to the Court on May 22, 2023 [Docket No. 923].  In the months that followed, the Debtors and the Equity Committee sought to establish consensus regarding the revised business plan and a proposed plan of reorganization that reflected the improved market conditions and provided a corresponding recovery to the Debtors' equity holders.  However, significant disputes emerged regarding the Debtors' enterprise value and corresponding recoveries to stakeholders.

In hopes of finding a consensual path forward, the Debtors and their stakeholders agreed to mediate these issues before the Honorable Marvin Isgur of the United States Bankruptcy Court for the Southern District of Texas in July 2023.  This mediation lasted multiple months and eventually the Debtors and the Ad Hoc Noteholder Group agreed to the economic terms of a potential settlement.  However, implementing this settlement required extensive negotiations with other parties, including the Equity Committee.

On October 30, 2023, these negotiations were memorialized in the *Restructuring Term Sheet*, among the Debtors, the Equity Committee, and the Ad Hoc Noteholder Group [Docket No. 1367], which set forth the economic terms of the proposed restructuring and formed the basis of the Plan.  After further negotiations, the Debtors, the Equity Committee, and the Ad Hoc Noteholder Group also agreed to the terms of a revised Restructuring Support Agreement, which formally documented the obligations and rights of the parties with respect to the proposed restructuring and was filed on the Court's docket on November 16, 2023 [Docket No. [•]] (the "***RSA***").

## III.    The Plan

The Plan, which is the product of months-long mediation and negotiation, settles several contested issues among the Debtors, the Equity Committee, and the Ad Hoc Noteholder Group.  Any alternatives to the Plan would likely result in protracted litigation, diminished recoveries to equity holders, and increased professional fees due to the additional time spent in chapter 11.  The

treatment for all holders of claims and interests is set forth in Article IV of the Plan and in Section II of the Disclosure Statement.

Specifically, the Plan provides the following treatment for Core's existing equity holders on a *pro rata* basis:

- Equity holders will receive approximately 32% of the equity interests of reorganized Core, after distribution to senior creditors under the Plan.

- Equity holders will also receive two tranches of warrants, which are summarized in the table below.  The Tranche 1 Warrants have a 3-year term.  Within those three years, the Tranche 1 Warrants may be redeemed for up to 30% of outstanding equity after reorganized Core's enterprise value reaches a strike price of $1.875 billion.  The Tranche 2 Warrants have a 5-year term and may be redeemed for up to 20% of outstanding equity after reorganized Core's enterprise value reaches $2.5 billion.[1]

| | **Tranche 1 Warrants** | **Tranche 2 Warrants** |
|---|---|---|
| **Amount** | Up to 30% of equity in reorganized Core, subject to dilution by Tranche 2 Warrants | Up to 20% of equity in reorganized Core |
| **Exercise Valuation** | Strike price based on $1.875 billion TEV | Penny warrant exercisable at or above $2.5 billion TEV |
| **Exercise Provision** | Cash exercise only | Cash or cashless exercise |
| **Term** | Three years | Five years |
| **Black-Scholes Protections** | Yes, with respect to consideration other than listed, freely tradable stock | Yes, with respect to consideration other than listed, freely tradable stock |

- Equity holders will also receive the opportunity to subscribe to the ERO for up to $55 million of reorganized Core's equity interests.  The equity interests in the ERO are available at a 30% discount to the Plan's proposed equity value.  As a result, existing equity holders have a unique opportunity to purchase additional shares of reorganized Core at a discount in addition to their recovery of equity interests in reorganized Core.

---

[1]   A detailed description of the warrants and their terms is available in Section [I.A.iii] of the Disclosure Statement.

An illustration of the potential equity splits under the Plan is included below.

| Class | $37.1 million Rights Offering | $55 million Rights Offering |
|---|---|---|
| | % of Effective Date New Common Interests[2] | |
| **Convertible Noteholder Equity Distribution** | 37.9% | 34.0% |
| **Class 3 (Miner Equipment Lenders)** | 4.2% | 4.2% |
| **Class 8 (GUC Claims)** | 10.2% | 10.2% |
| **Class 11 (510(b) Claims)** | 0% | 0% |
| **Class 12 (Existing Common Interests)** | 32.6% | 33.3% |
| **Rights Offering–Backstop Commitment Premium** | 1.4% | 1.4% |
| **Rights Offering– Subscription + Backstop Shares** | 6.8% | 10.1% |
| **Shares reserved for Bitmain** | 6.9% | 6.9% |
| **Total** | 100% | 100% |
| **Total Existing Common Interest Equity Ownership (including Backstop Fee)[3]** | 40.8% | 44.7% |

## IV.    The Equity Rights Offering

The ERO will provide the Debtors with up to $55 million of liquidity to fund recoveries to stakeholders under the Plan and provide the Company with additional liquidity. Equity holders have the opportunity to subscribe to their pro rata percentage of subscriptions offered in the ERO. Additional details regarding the ERO have been separately sent to you, but a key feature of the shares offered in the ERO is that they are issued at a 30% discount to the "Plan Equity Value" based on a $1.5 billion total enterprise value for Core. As a result, an existing equity holder that invested $1.0 million in subscription rights in the ERO would receive approximately $1.42 million of value in equity of reorganized Core after applying the 30% discount.

## V.    Conclusion

The Equity Committee believes that the Plan provides a fair and reasonable recovery for Core's existing equity holders under the circumstances and the most expeditious path for the Debtors to emerge from these chapter 11 cases. Accordingly, as stated above, the Equity Committee supports the Plan, and encourages each equity holder receiving this letter to vote to

---

[2]    These equity percentages are illustrative only and are subject to changes based on, among others, final professional fees, the resolution of certain disputed claims asserted by creditors, and elections made by senior creditors, among others. If claims are allowed in amounts different than the Debtors' estimate, the percentages below may differ from the estimates provided.

[3]    Includes Backstop Fees earned by Commitment Parties (as defined below) that hold existing equity interests of Core.

**ACCEPT** the Plan and return its ballot in accordance with the instructions enclosed **no later than 5:00 pm Central Time on December 13, 2023**.