## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | § § § | Chapter 11 |
| CORE SCIENTIFIC, INC., *et al.*, | § § | Case No. 22-90341 (CML) |
| Debtors.[1] | § § § § | (Jointly Administered) |

## DEBTORS' FIRST OMNIBUS CLAIMS
## OBJECTION TO CERTAIN (I) AMENDED CLAIMS;
## (II) EXACT DUPLICATIVE CLAIMS; (III) BENEFICIAL
## BONDHOLDER DUPLICATIVE CLAIMS; (IV) MULTIPLE
## DEBTOR CLAIMS; (V) WRONG DEBTOR CLAIMS; (VI) LATE
## FILED CLAIMS; (VII) INSUFFICIENT DOCUMENTATION CLAIMS;
## (VIII) EQUITY CLAIMS; AND (IX) RECLASSIFIED CLAIMS (BASED ON PRIORITY)

---

**THIS IS AN OBJECTION TO YOUR CLAIM. THIS OBJECTION ASKS THE COURT TO DISALLOW, MODIFY, OR RECLASSIFY THE CLAIM THAT YOU FILED IN THIS BANKRUPTCY CASE. YOU SHOULD IMMEDIATELY CONTACT THE OBJECTING PARTY TO RESOLVE THE DISPUTE. IF YOU DO NOT FILE A RESPONSE WITHIN 30 DAYS AFTER THE OBJECTION WAS SERVED ON YOU, YOUR CLAIM MAY BE DISALLOWED OR RECLASSIFIED WITHOUT A HEARING.**

**IF A HEARING IS NECESSARY ON THIS MATTER, NOTICE OF THE HEARING WILL BE PROVIDED BY SEPARATE NOTICE.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions, VII, LLC (3198). The Debtors' corporate headquarters is 210 Barton Springs Road, Suite 300, Austin, Texas 78704. The Debtors' service address is 2407 S. Congress Ave, Suite E-101, Austin, Texas 78704.

> **THIS OBJECTION SEEKS TO DISALLOW, MODIFY, OR RECLASSIFY CERTAIN PROOFS OF CLAIM.**
>
> **CLAIMANTS RECEIVING THIS OBJECTION SHOULD LOCATE THEIR NAMES AND CLAIMS ON <u>SCHEDULE 1</u>, <u>SCHEDULE 2</u>, <u>SCHEDULE 3</u>, <u>SCHEDULE 4</u>, <u>SCHEDULE 5</u>, <u>SCHEDULE 6</u>, <u>SCHEDULE 7</u>, <u>SCHEDULE 8</u>, OR <u>SCHEDULE 9</u> TO <u>EXHIBIT B</u> ATTACHED TO THE PROPOSED ORDER.**

        Core Scientific, Inc. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"),[2] file this omnibus objection to claims (this "**Objection**") and submit the *Declaration of John Creighton in Support of the Debtors' First Omnibus Claims Objection to Certain Proofs of Claim (I) Amended Claims, (II) Exact Duplicative Claims, (III) Beneficial Bondholder Duplicative Claims; (IV) Multiple Debtor Claims; (V) Wrong Debtor Claims; (VI) Late Filed Claims; (VII) Insufficient Documentation Claims, (VIII) Equity Interests and (IX) Reclassified Claims (Based on Priority)*, attached hereto as <u>**Exhibit A**</u> (the "**Creighton Declaration**") in support of this Objection.  The Debtors respectfully represents as follows:

<u>**Relief Requested**</u>

        1.     Pursuant to sections 105(a) and 502(b) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Rule 3007-1 of the Local Rules of the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Local Rules**") and this Court's *Order (I) Approving Omnibus Claims Objection Procedures and Filing of Substantive Omnibus Claims Objections, (II) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (C) Granting Related Relief* (Docket No. 899), entered on May 18, 2023 (the "**Objection Procedures Order**"), the Debtors respectfully request entry of an order, substantially in the form attached hereto as

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan or the Objection Procedures Order (each as defined below).

**Exhibit B** (the "**Proposed Order**"), (i) disallowing in their entirety the claims identified on Schedule 1 to the Proposed Order under the heading "Claim Number to be Disallowed" (collectively, the "**Amended Claims**") on the basis that such claims have been amended by a subsequently filed claim (collectively, the "**Surviving Amended Claims**"); (ii) disallowing in their entirety the claims identified on Schedule 2 to the Proposed Order under the heading "Claim Number to be Disallowed (the "**Exact Duplicative Claims**") on the basis that such claims are duplicative of at least one other proof of claim filed against the Debtors' estates by the same entity relating to the same subject matter, (iii) disallowing in their entirety the claims identified on Schedule 3 to the Proposed Order under the heading "Claim Number to be Disallowed" (the "**Beneficial Bondholder Duplicative Claims**") on the basis that such claims are duplicative of the proof of claim filed by U.S. Bank National Association (as note agent and collateral agent of the both the April and August secured notes) on behalf of all holders of the secured notes claims, (iv) disallowing in their entirety the claims identified on Schedule 4 to the Proposed Order under the heading "Claim Number to be Disallowed" (the "**Multiple Debtor Claims**") on the basis that such claims are duplicative of a proof of claim filed against a different debtor entity identified; (v) modifying the claims identified on Schedule 5 to the Proposed Order on the basis that such claims were filed in the wrong case and against the wrong Debtor entity (the "**Wrong Debtor Claims**") and should be properly asserted against a Debtor other than the Debtor entity listed on each such Wrong Debtor Claim; (vi) disallowing in their entirety the claims identified on Schedule 6 to the Proposed Order (the "**Late Filed Claims**") on the basis that such claims were filed after the applicable Bar Date, (vii) disallowing in their entirety the insufficient documentation claims identified on Schedule 7 to the Proposed Order (the "**Insufficient Documentation Claims**") on the basis that such claims did not provide sufficient documentation to support the

3

claims, (viii) disallowing in their entirety the equity interest claims identified on Schedule 8 to the Proposed Order (the "**Equity Claims**") on the basis that such claims provide for an equity interest rather than a claim; and (ix) reclassifying asserted priority or secured claims as non-priority unsecured claims identified on Schedule 9 to the Proposed Order (the "**Reclassified Claims (Based on Priority)**", and together with the Amended Claims, Exact Duplicative Claims, Beneficial Bondholder Duplicative Claims, Multiple Debtor, Wrong Debtor Claims, Late Filed Claims, Insufficient Documentation Claims, the "**Claims**" and each, a "**Claim**") on the basis that each claim was improperly classified and that the claims should instead be classified as identified on Schedule 9 under the heading "Proposed Claim Priority", and (ix) granting related relief.

## Jurisdiction

2.     This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

3.     On December 21, 2022 (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11 of the Bankruptcy Code.  The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.     The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Bankruptcy Rules and Rule 1015-1 of the Bankruptcy Local Rules.

5.     On January 9, 2023, the United States Trustee for Region 7 (the "**U.S. Trustee**") appointed an official committee of unsecured creditors in these chapter 11 cases pursuant to section 1102 of the Bankruptcy Code.  On March 23, 2023, the U.S. Trustee

4

appointed an official equity committee in these chapter 11 cases pursuant to section 1102 of the

Bankruptcy Code.  No trustee or examiner has been appointed in these chapter 11 cases.

### A.  Objection Procedures Order

6.     Pursuant to the Objection Procedures Order provides that claims may be

included in an omnibus objection for (i) "Additional Grounds," on the grounds that such claims,

in part or in whole:

a.  fail to specify the asserted claim amount (other than "unliquidated");

b.  seek recovery of amounts for which the Debtors are not liable;

c.  are satisfied by payment in full or in part on account of such Claim from a party that is not a Debtor, including one or more of the Debtors' insurers;

d.  are incorrectly or improperly classified under the Bankruptcy Code or under any chapter 11 plan;

e.  are filed against non-Debtors or are filed against multiple Debtors;

f.  fail to specify a Debtor against which the Claim is asserted;

g.  are disallowed pursuant to, or asserted in an amount, priority, or on terms that are otherwise inconsistent with the Debtors' confirmed chapter 11 plan;

h.  are disallowed pursuant to section 502 of the Bankruptcy Code; or

i.  fail to sufficiently specify the basis for the Claim or provide sufficient supporting documentation therefor.

and (ii) waiving that Omnibus Objections contained objections to no more than 100 claims.  *See Objection Procedures Order* ¶ 1,2.

### B.  Debtors' Plan and Schedule of Allowed General Unsecured Claims

7.     On November 16, 2023, the Debtors' filed solicitation versions of the *Third*

*Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors* (Docket

No. 1438) (as may be amended, supplemented, or otherwise modified from time to time, the

"**Plan**") and the *Disclosure Statement for Third Amended Joint Chapter 11 Plan of Core Scientific,*

*Inc. and Its Debtor Affiliates* (Docket No. 1439) (as may be amended, supplemented, or otherwise modified from time to time, the "**Disclosure Statement**").

8.      On November 17, 2023 the Court entered the *Order (I) Scheduling Combined Hearing on (A) Adequacy of Disclosure Statement and (B) Confirmation of Plan; (II) Conditionally Approving Disclosure Statement and Form and Manner of Notice of Conditional Disclosure Statement Hearing; (III) Establishing Solicitation and Voting Procedures; (IV) Establishing Notice and Objection Procedures for Confirmation of Proposed Plan; (V) Approving Notice Procedures for Assumption or Rejection of Executory Contracts and Unexpired Leases; (VI) Approving Notice Procedures for Reinstatement of Claims; (VII) Establishing Rights Offering Procedures; and (VIII) Granting Related Relief* (Docket No. 1444) (including any exhibits and schedules thereto and as may be modified, amended or supplemented, the "**Disclosure Statement Order**"), conditionally approving the Disclosure Statement and scheduled the hearing for confirmation of the Plan for December 22, 2023.

9.      The Debtors believe the Plan provides a full recovery (100% of the Claim plus postpetition interest) to all creditors (other than holders of Section 510(b) Claims and creditors that have agreed to take lesser treatment) and a meaningful recovery to their shareholders. Each Holder of a section 510(b) Claim will receive, on the Effective Date, or as soon as reasonably practicable thereafter, (i) such Holder's Pro Rata Equity Share (as defined in the Plan) of the Residual Equity Pool and (b) such Holder's Pro Rata Equity Share of New Warrants, and (iii) in lieu of the ability to participate in the Rights Offering, such Holders will receive, Cash, New Common Interests, or New Warrants, at the option of the Debtors or Reorganized Debtors, as applicable, in an amount equal to the value of the Subscription Rights that would have been distributable to such Holder if Subscription Rights were distributed to Holders in Class 11.

10.      Pursuant the Plan, the Debtors will file and served a "Schedule of Allowed General Unsecured Claims" (as defined under the Plan) on holders of Allowed General Unsecured Claims (as defined under the Plan) as part of the Plan Supplement.

### Claims Reconciliation

11.      On February 3, 2021 the Debtors filed their statements of financial affairs and schedules of assets, liabilities, current income, expenditures, executory contracts, and unexpired leases, as required by section 521 of the Bankruptcy Code (Docket Nos. 461–82) (the "**Schedules and SOFAs**").   On February 6, 2023 and March 3, 2023, the Debtors filed supplements and amendments to the Schedules and SOFAs (Docket Nos. 490–91; 625–30).

12.      On March 9, 2023 the Court entered the *Order (I) Establishing Deadlines to File Proofs of Claim and (II) Approving Form and Manner of Notice Thereof* (Docket No. 652) (the "**Bar Date Order**").  Pursuant to the Bar Date Order, the Court established April 14, 2023 at 5:00 p.m. (prevailing Central Time) as the deadline for non-governmental units to file proofs of claim against the Debtors (the "**General Bar Date**") and June 19, 2023 at 5:00 p.m. (prevailing Central Time) as the deadline for government units (as defined in section 101(27) of the Bankruptcy Code) to file proofs of claim against the Debtors (the "**Government Bar Date**", together with the General Bar Date, the "**Bar Dates**" and each a "**Bar Date**").

13.      Following entry of the Bar Date Order, Stretto, Inc., the Debtors' claims, noticing, and solicitation agent, Stretto, Inc. ("**Stretto**"), mailed notice of the Bar Date Order and the proof of claim form to thousands of potential claimants in accordance with the procedures outlined within the Bar Date Order.[3]

---

[3]  Additionally, pursuant to the Bar Date Order, the Debtors published the notice of deadlines for filing Proofs of Claim in the national edition of The Wall Street Journal and in the local editions of the Austin American-Statesman, Odessa American, Pecos Enterprise, Denton Record Chronicle, Cherokee Scout, Dalton Daily Citizen, The Lake News, Grand Forks Herald, and Muskogee Phoenix.

14.    On May 18, 2023, the Court entered the Objection Procedures Order.  This Objection is filed in accordance with the Objection Procedures Order.

15.    As of November 22, 2023, the claims register maintained by Stretto reflects that approximately 650 Proofs of Claim have been filed in the Chapter 11 Cases.  The Debtors and their advisors have been working diligently to review these Proofs of Claim, including any supporting documentation filed therewith.  For the reasons set forth below, and based on their review to date, the Debtors have determined that the Claims objected to herein should be disallowed or reclassified as set forth herein.

**Basis for Relief Requested**

16.    Section 502 of the Bankruptcy Code provides, in pertinent part, that "[a] claim or interest, proof of which is filed under section 501 of [the Bankruptcy Code], is deemed allowed, unless a party in interest . . . objects."   11  U.S.C.  § 502(a).    Pursuant to Bankruptcy Rule 3007(a), a party in interest may object to the allowance of a claim in a writing filed with the Bankruptcy Court.  Fed. R. Bankr. P. 3007(a); *see also* Fed. R. Bankr. P. 3007(d)–(e) (authorizing filing of omnibus claim objections and setting forth requirements thereof).

17.    Bankruptcy Rule 3007(d) provides certain grounds upon which "objections to more than one claim may be joined in an omnibus objection," which includes when "the objections are based solely on the grounds that the claims should be disallowed, in whole or in part, because . . . "(1) they duplicate other claims; (2) they have been filed in the wrong case; (3) they have been amended by subsequently filed proofs of claim; (4) they were not timely filed; (5) they have been satisfied or released during the case in accordance with the Code, applicable rules, or a court order; (6) they were presented in a form that does not comply with applicable rules, and the objection states that the objector is unable to determine the validity of the claim

because of the noncompliance; (7) they are interests, rather than claims…" Fed. R. Bankr. P. 3007(d).

18.     In addition, the Objection Procedures Order provides that claims may be included in an omnibus objection for "Additional Grounds," which includes claims that "(d) are incorrectly or improperly classified under the Bankruptcy Code or under any chapter 11 plan; (e) are filed against non-Debtors, the wrong Debtor or are filed against multiple Debtors . . . (i) fail to sufficiently specify the basis for the Claim or provide sufficient supporting documentation therefor." *See Objection Procedures Order* ¶ 1.

19.     Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim may not be allowed to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1). Additionally, pursuant to 502(9) of the Bankruptcy Code, a claim shall not be allowed "to the extent that . . . proof of such claim is not timely filed[.]" 11 U.S.C. § 502(b)(9); *see also In re Hogan*, 346 B.R. 715, 721-22 (Bankr. N.D. Tex. 2006) (stating that "Section 502(b)(9) has made clear … that a proof of claim not timely filed, regardless of whether it is secured or unsecured, should not be allowed if there is an objection made on grounds of timeliness").

20.     As set forth in Bankruptcy Rule 3001(f), a properly executed and filed proof of claim constitutes prima facie evidence of the validity and the amount of the claim under section 502(a) of the Bankruptcy Code. *See, e.g.*, *In re Jack Kline Co., Inc.*, 440 B.R. 712, 742 (Bankr. S.D. Tex. 2010). However, prima facie validity under Bankruptcy Rule 3001(f) "can be overcome by rebuttal evidence . . . ." *In re Fidelity Holding Co., Ltd.*, 837 F.2d 696, 698 (5th Cir. 1988). "Upon production of this rebuttal evidence, the burden shifts to the claimant to prove its claim by a preponderance of the evidence." *In re Armstrong*, 347 B.R. 581, 583 (Bankr. N.D. Tex.

2006) (citing *In re Fidelity Holding*, 837 F.2d at 698).  Despite the shifting burden during the claim objection process, "the ultimate burden of proof always lies with the claimant."  *Id.* (citing *Raleigh v. Ill. Dep't of Rev.*, 530 U.S. 15 (2000)).

## Amended Claims

21.     As set forth in the Creighton Declaration, the Debtors and their advisors have (i) thoroughly examined each Amended Claim, the documentation provided with respect to each Amended Claim, and the Debtors' books and records and (ii) determined that each Amended Claim has been amended and superseded by a subsequently filed claim identified on Schedule 1 to the Proposed Order (i.e. the Surviving Amended Claims).

22.     Failure to disallow the Amended Claims would result in the claimants receiving an unwarranted recovery against the Debtors to the detriment of the Debtors' existing equity holders and any holders of Allowed Section 510(b) Claims.

23.     Moreover, the relief requested herein will have no effect on the Surviving Amended Claims.  This Objection does not request permission to allow any of the Surviving Amended Claims and does not constitute an admission or acknowledgement by the Debtors as to the amount or validity of any such Surviving Amended Claims.  The Debtors hereby reserve the right to object to the Surviving Amended Claims on any and all applicable grounds.

24.     Accordingly, the Debtors respectfully request that the Court disallow the Amended Claims in their entirety.

## Exact Duplicative Claims

25.     As set forth in the Creighton Declaration, the Debtors and their advisors have (i) thoroughly examined each Duplicative Claim, the documentation provided with respect to each Exact Duplicative Claim, and the Debtors' books and records and (ii) determined that each

Exact Duplicative Claim is duplicative of at least one other Proof of Claim filed against the Debtors' estates by the same entity relating to the same subject matter identified on <u>Schedule 2</u> to the Proposed Order (the "**Surviving Exact Duplicative Claims**").

26.     Failure to disallow the Exact Duplicative Claims would result in the claimants receiving an unwarranted recovery against the Debtors to the detriment of the Debtors' existing equity holders and any holders of Allowed Section 510(b) Claims.

27.     Moreover, the relief requested herein will have no effect on the Surviving Exact Duplicative Claims.  This Objection does not request permission to allow any of the Surviving Exact Duplicative Claims and does not constitute an admission or acknowledgement by the Debtors as to the amount or validity of any such Surviving Exact Duplicative Claims.  The Debtors hereby reserve the right to object to the Surviving Exact Duplicative Claims on any and all applicable grounds.

28.     Accordingly, the Debtors respectfully request that the Court disallow the Exact Duplicative Claims in their entirety.

### Beneficial Bondholder Duplicative Claims

29.     As set forth in the Creighton Declaration, the Debtors and their advisors have (i) thoroughly examined each Beneficial Bondholder Duplicative Claim, the documentation provided with respect to each Beneficial Bondholder Duplicative Claim, and the Debtors' books and records and (ii) determined that each Beneficial Bondholder Duplicative Claim was filed by an individual holder of the Debtors' prepetition secured notes, and is duplicative of and subsumed within the Proofs of Claim filed against the Debtors' estates by U.S. Bank National Association, as note agent and collateral agent of the both the April and August secured notes, in Proofs of

Claim Numbers 523 and 526 identified on Schedule 3 to the Proposed Order (the "**Surviving Beneficial Bondholder Duplicative Claims**").

30.     Failure to disallow the Beneficial Bondholder Duplicative Claims would result in the claimants receiving an unwarranted recovery against the Debtors to the detriment of the Debtors' existing equity holders and any holders of Allowed Section 510(b) Claims.

31.     Moreover, the relief requested herein will have no effect on any of the Surviving Beneficial Bondholder Duplicative Claims.  This Objection does not request permission to allow the Surviving Beneficial Bondholder Duplicative Claims and does not constitute an admission or acknowledgement by the Debtors as to the amount or validity of any such Surviving Beneficial Bondholder Duplicative Claims.  The Debtors hereby reserve the right to object to the Surviving Beneficial Bondholder Duplicative Claims on any and all applicable grounds.

32.     Accordingly, the Debtors respectfully request that the Court disallow the Beneficial Bondholder Duplicative Claims in their entirety.

### Multiple Debtor Claims

33.     As set forth in the Creighton Declaration, the Debtors and their advisors have (i) thoroughly examined each Multiple Debtor Claim, the documentation provided with respect to each Multiple Debtor Claim, and the Debtors' books and records and (ii) determined that each Multiple Debtor Claim is duplicative of Surviving Multiple Debtor Claim filed against another Debtor entity identified on Schedule 4 to the Proposed Order (the "**Surviving Multiple Debtor Claims**"[4] and, together with the Surviving Amended Claims, Surviving Exact Duplicative Claims, Surviving Beneficial Bondholder Duplicative Claims, the "**Surviving Claims**").  Based

---

[4]  The Surviving Multiple Debtors Claims were filed by claimants in the correct case and against the correct Debtor entity.

on the Debtors and their advisors review of the Debtors' books and records, each Multiple Debtor Claim was filed against the wrong Debtor or Debtors.

34.     Failure to disallow the Multiple Debtor Claims would result in the claimants receiving duplicative and unwarranted recovery against the Debtors to the detriment of the Debtors' existing equity holders and any holders of Allowed Section 510(b) Claims.

35.     Moreover, the relief requested herein will have no effect on the Surviving Multiple Debtor Claims.  This Objection does not request permission to allow any of the Surviving Multiple Debtor Claims and does not constitute an admission or acknowledgement by the Debtors as to the amount or validity of any such Surviving Multiple Debtor Claims.  The Debtors hereby reserve the right to object to the Surviving Multiple Debtor Claims on any and all applicable grounds.

36.     Accordingly, the Debtors respectfully request that the Court disallow the Multiple Debtor Claims in their entirety.

**Wrong Debtor Claims**

37.     As set forth in the Creighton Declaration, the Debtors and their advisors have (i) thoroughly examined each Wrong Debtor Claim, the documentation provided with respect to each Wrong Debtor Claim, and the Debtors' books and records and (ii) determined that each Wrong Debtor Claim was filed in the wrong case and against the wrong Debtor entity and that each Wrong Debtor Claim should be modified to be properly asserted against a Debtor other than the Debtor entity listed on each such Wrong Debtor Claim;

38.     Failure to properly assert the Wrong Debtor Claims would result in the claimants receiving an unwarranted recovery to the detriment of the Debtors' existing equity

holders and any holders of Allowed Section 510(b) Claims.  Properly asserting the Wrong Debtor Claims will enable the Debtors to ensure that the claims register is accurate.

39.     Accordingly, the Debtors respectfully request that the Court modify the Wrong Debtor Claims to properly assert the Wrong Debtor Claims in their entirety against the correct Debtor entity as identified on <u>Schedule 5</u>.

<b><u>Late Filed Claims</u></b>

40.     As set forth in the Creighton Declaration, the Debtors and their advisors have (i) thoroughly examined each Late Filed Claim, including any supporting documentation filed together with any Late Filed Claim and (ii) determined that each Late Filed Claim was filed after the applicable Bar Date.

41.     Failure to disallow the Late Filed Claims would result in the claimants receiving an unwarranted recovery against the Debtors that they are not entitled to and will be to the detriment of the Debtors' existing equity holders and any holders of Allowed Section 510(b) Claims.  Furthermore, disallowance of the Late Filed Claims will enable the Debtors to ensure that the claims register is accurate.  As reflected on <u>Schedule 6</u>, two (2) of the Late Filed Claims were filed no less than four (4) months after the applicable Bar Date and the other two (2) Late Filed Claims were filed no less than four (4) months and approximately three (3) months after the Government Bar Date.

42.     Accordingly, the Debtors respectfully request that the Court disallow the Late Filed Claims identified on <u>Schedule 6</u> to the Proposed Order in their entirety.

<b><u>Insufficient Documentation Claims</u></b>

43.     As set forth in the Creighton Declaration, the Debtors and their advisors have (i) thoroughly examined each Insufficient Documentation Claim, the documentation (if any)

14

provided with respect to each Insufficient Documentation Claim, and the Debtors' books and records and (ii) determined that each Insufficient Documentation Claim fails to include the necessary supporting documentation to establish the existence and/or amount of the underlying claim.   Moreover, for the reasons set forth on in the "Reason for Disallowance" column in Schedule 7, the Debtors and their advisors do not believe that such Insufficient Documentation Claim is valid.

44.     The Debtors submit that the Insufficient Documentation Claims are not prima facie valid.  Pursuant to Bankruptcy Rule 3001(c), a claimant that files a proof of claim based on a writing must file an original or duplicate of the writing with the proof of claim or otherwise explain that the writing has been lost or destroyed.  Only a proof of claim filed in accordance with Bankruptcy Rule 3001 constitutes prima facie evidence of its validity and amount.

45.     Even if the Insufficient Documentation Claims are entitled to a presumption of validity, the Debtors have reviewed the Debtors' books and records and have been unable to identify any outstanding noncontingent obligations owed to the claimants that filed the Insufficient Documentation Claims.

46.     Failure to disallow the Late Filed Claims would result in the claimants receiving an unwarranted recovery against the Debtors to the detriment of the Debtors' existing equity holders and any holders of Allowed Section 510(b) Claims.

47.     Accordingly, and as specified with respect to each Late Filed Claim listed in Schedule 7 to the Proposed Order, the Debtors respectfully request that the Court disallow the Insufficient Documentation Claims in their entirety.

**Equity Claims**

48.     As set forth in the Creighton Declaration, the Debtors and their advisors have (i) thoroughly examined each Equity Claim, the documentation provided with respect to each Equity Claim, and the Debtors' books and records and (ii) determined that each of the Equity Claims were filed by the parties on account of asserted equity interests held by such parties in Debtor Core Scientific, Inc. ("**Core**") (*i.e.* based solely on ownership of common stock of Core, and not on account of damages or claims against Core).  Holders of common interests in Core do not have "claims" against Core or its estate.  *See* 11 U.S.C. § 501(a) ("A creditor or an indenture trustee may file a proof of claim.  An equity security holder may file a proof of interest.").

49.     In addition, some of the Equity Claims were filed against Core Scientific Mining LLC and Core Scientific Operating Company, two other Debtors.  Based on the Debtors' advisors' review, the Debtors and their advisors have determined that such Equity Claims should correctly be categorized as alleged Interests against Core and disallowed. To the extent such alleged Interests constitute "Existing Common Interests" within the meaning of the Plan (*see* Plan, § 1.114), holders of such Existing Common Interests will be entitled to receive the recovery set forth in section 12 of the Plan.

50.     Accordingly, the Debtors respectfully request that the Court disallow the Equity Claims in their entirety.

**Reclassified Claims (Based on Priority)**

51.     As set forth in the Creighton Declaration, the Debtors and their advisors have (i) thoroughly examined each Reclassified Claim (Based on Priority), including any supporting documentation filed together with any Reclassified Claim (Based on Priority) and (ii) determined that each Reclassified Claim (Based on Priority) was filed erroneously asserting

entitlement to priority or secured status under section 507 of the Bankruptcy Code.  Specifically,

under the heading "Reason for Reclassification" in <u>Schedule 9</u> to the Proposed Order notes certain

facts relevant to the proposed reclassification, including that such claim was either: (i) asserted by

a third-party contractor as a priority wage claim when Claimant was not employed by any Debtor;

(ii) incorrectly asserted priority status pursuant to section 507(a) of the Bankruptcy; or (iii) filed

as secured claim and such claimants failed provided any support for their asserted security interest.

52.      Failure to reclassify the Reclassified Claims (Based on Priority) would

result in the claimants receiving an unwarranted recovery against the Debtors to the detriment of

the Debtors' existing equity holders and any holders of Allowed Section 510(b) Claims.

53.      Accordingly, and as specified with respect to each Reclassified Claim

(Based on Priority) listed in <u>Schedule 9</u> to the Proposed Order, the Debtors respectfully request

that the Court reclassify either in their entirety or in part (as specified in <u>Schedule 9</u>), each

Reclassified Claim (Based on Priority) as general unsecured claims.

<u>**Reservation of Rights**</u>

54.      This Objection does not have any effect on any of the Surviving Claim. This

Objection also does not request permission to allow any of the Surviving Claims and does not

constitute an admission or acknowledgement by the Debtors as to the amount or validity of any

such Surviving Claims.  The Debtors hereby reserve the right to object to any Surviving Claim on

any and all applicable grounds.

55.      In the event that any of the Claims are not disallowed on the grounds

asserted herein, the Debtors hereby reserve its rights to object to such Claims on any other grounds.

Additionally, the Debtors expressly reserve the right to amend, modify, or supplement the

objections asserted herein and to file any additional objections to the Claims or any other claims that may be asserted against the Debtors' estates.

56.     Nothing contained herein is intended to be or shall be deemed as (i) an admission as to the validity of any claim against a Debtor entity or such Debtor's entity's estate, (ii) a waiver of the Debtors' or any appropriate party-in-interest's rights to dispute the amount of, basis for, or validity of any claim on any grounds, (iii) a promise or requirement to pay any prepetition claim, (iv) an implication or admission that any particular claim is of a type of specified or defined in this Objection, (v) a waiver of the Debtors or any other party-in-interest's rights under the Bankruptcy Code or any other applicable nonbankruptcy law, or (vi) an approval, adoption, assumption, or rejection of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code.

## **Separate Contested Matter**

57.     To the extent that any response is filed regarding any Claim and the Debtors are unable to resolve such response, each such Claim, and the Objection as it pertains to such Claim, will constitute a separate contested matter as contemplated by Bankruptcy Rule 9014. Furthermore, the Debtors request that any order entered by the Court regarding an objection or other reply asserted in response to this Objection be deemed a separate order with respect to each Proof of Claim.

## **Notice**

58.     Notice of this Objection will be served on the affected claimants, any party entitled to notice pursuant to Bankruptcy Rule 2002, and any other party entitled to notice pursuant to Bankruptcy Local Rule 9013-1(d).

[*Remainder of the Page Left Intentionally Blank*]

**WHEREFORE** the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: November 22, 2023
       Houston, Texas

                          /s/ Alfredo R. Pérez
                          WEIL, GOTSHAL & MANGES LLP
                          Alfredo R. Pérez (15776275)
                          Clifford W. Carlson (24090024)
                          700 Louisiana Street, Suite 1700
                          Houston, Texas  77002
                          Telephone: (713) 546-5000
                          Facsimile:  (713) 224-9511
                          Email:  Alfredo.Perez@weil.com
                          Email:  Clifford.Carlson@weil.com

                          -and-

                          WEIL, GOTSHAL & MANGES LLP
                          Ray C. Schrock (admitted *pro hac vice*)
                          Ronit J. Berkovich (admitted *pro hac vice*)
                          767 Fifth Avenue
                          New York, New York 10153
                          Telephone:  (212) 310-8000
                          Facsimile:  (212) 310-8007
                          Email:   Ray.Schrock@weil.com
                                    Ronit.Berkovich@weil.com


                        *Attorneys for Debtors*
                        *and Debtors in Possession*

**<u>Certificate of Service</u>**

I hereby certify that, on November 22, 2023, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

<u>/s/  Alfredo R. Pérez</u>
Alfredo R. Pérez

## Exhibit A

**John Creighton Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| CORE SCIENTIFIC, INC., *et al.,* | § | Case No. 22-90341 (CML) |
| | § | |
| | § | (Jointly Administered) |
| Debtors.[1] | § | |
| | § | |

**DECLARATION OF JOHN CREIGHTON IN SUPPORT
OF DEBTORS' FIRST OMNIBUS CLAIMS OBJECTION TO
CERTAIN PROOFS OF CLAIM (I) AMENDED CLAIMS; (II) EXACT
DUPLICATIVE CLAIMS; (III) BENEFICIAL BONDHOLDER DUPLICATIVE
CLAIMS; (IV) MULTIPLE DEBTOR CLAIMS; (V) WRONG DEBTOR CLAIMS;
(VI) LATE FILED CLAIMS; (VII) INSUFFICIENT DOCUMENTATION CLAIMS;
(VIII) EQUITY CLAIMS; AND (IX) RECLASSIFIED CLAIMS (BASED ON PRIORITY)**

I, John Creighton, hereby declare that the following is true and correct to the best

of my knowledge, information, and belief:

1.        I am a Director at AlixPartners, LLP (together with its affiliate AP Services,

LLC, "**AlixPartners**") in its Turnaround & Restructuring Services practice.  On February 8, 2023,

the Court entered an order approving the retention of AlixPartners as financial advisors to the

Debtors (Docket No. 503).

2.        Except as otherwise indicated, the facts set forth in this declaration

(the "**Declaration**") are based upon my personal knowledge, my discussions with the Debtors

and/or their advisors, and my experience and knowledge related to the Debtors' business

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions, VII, LLC (3198).  The Debtors' corporate headquarters is 210 Barton Springs Road, Suite 300, Austin, Texas 78704. The Debtors' service address is 2407 S. Congress Ave, Suite E-101, Austin, Texas 78704.

operations and books and records.  If called upon to testify, I would testify competently to the facts set forth herein.  I am authorized to submit this Declaration on behalf of the Debtors.  I am familiar with the *Debtors' First Omnibus Claims Objection to Certain (I) Amended Claims; (II) Exact Duplicative Claims; (III) Beneficial Bondholder Duplicative Claims; (IV) Multiple Debtor Claims; (V) Wrong Debtor Claims; (VI) Late Filed Claims; (VII) Insufficient Documentation Claims; (VIII) Equity Claims; and (IX) Reclassified Claims (Based on Priority)* (the "**Objection**"), filed contemporaneously herewith. [2]

## Amended Claims

3.    To the best of my knowledge, information, and belief, the assertions made in the Objection are accurate.  I, or colleagues under my supervision, reviewed the Objection, and can confirm that the Debtors and the advisors have thoroughly reviewed each Amended Claim, the documentation provided with respect to each Amended Claim, and Debtors' books and records and have determined that, for the reasons set forth in the Objection, each Amended Claim has been amended and superseded by the applicable Surviving Amended Claim.  As a result, I believe that the Amended Claims should be disallowed in their entirety.

4.    I have reviewed the eight (8) Amended Claims and can confirm that the Amended Claims have been amended and superseded by a Surviving Amended Claim.

5.    I can confirm that the Debtors and their advisors have not yet reviewed the validity of the Surviving Amended Claims in connection with this Objection, and that the Debtors expressly preserve their rights to later object on any basis to any Surviving Amended Claim and any Amended Claim for which the Bankruptcy Court does not grant the relief requested in the Objection.

---

[2] Capitalized terms used but not defined in this Declaration shall have the meaning ascribed to them in the Objection.

6.      I believe that failure to disallow the Amended Claims would result in the claimants receiving an unwarranted recovery against the Debtors to the detriment of the Debtors' existing equity holders and any holders of Allowed Section 510(b) Claims.

7.      As such, disallowance of the Amended Claims in their entirety is appropriate.

### Exact Duplicative Claims

8.      To the best of my knowledge, information, and belief, the assertions made in the Objection are accurate.  I, or colleagues under my supervision, reviewed the Objection, and can confirm that the Debtors and their advisors have thoroughly examined each Exact Duplicative Claim, the documentation provided with respect to each Exact Duplicative Claim, and the Debtors' books and records and determined that each Exact Duplicative Claim is duplicative of the Surviving Exact Duplicative Claims.  As a result, I believe that the Exact Duplicative Claims should be disallowed in their entirety.

9.      I have reviewed the sixteen (16) Exact Duplicative Claims and can confirm that the each Exact Duplicative Claim are duplicative of the applicable Surviving Exact Duplicative Claim.

10.      I can confirm that the Debtors and the advisors have not yet reviewed the validity of the Surviving Exact Duplicative Claims in connection with this Objection, and that the Debtors expressly preserve their rights to later object on any basis to any Surviving Exact Duplicative Claim and any Exact Duplicative Claim for which the Bankruptcy Court does not grant the relief requested in the Objection.

11.     I believe that failure to disallow the Duplicative Claims would result in the claimants receiving a duplicative recovery against the Debtors to the detriment of the Debtors' existing equity holders and any holders of Allowed Section 510(b) Claims.

12.     As such, disallowance of the Exact Duplicative Claims in their entirety is appropriate.

## Beneficial Bondholder Duplicative Claims

13.     To the best of my knowledge, information, and belief, the assertions made in the Objection are accurate.  I, or colleagues under my supervision, reviewed the Objection, and can confirm that the Debtors and their advisors have thoroughly examined each Beneficial Bondholder Duplicative Claim, the documentation provided with respect to each Beneficial Bondholder Duplicative Claim, and the Debtors' books and records and determined that each Beneficial Bondholder Duplicative Claim was filed by an individual holder of the Debtors' prepetition secured notes, and is duplicative of and subsumed within the Proofs of Claim filed against the Debtors' estates by U.S. Bank National Association, as note agent and collateral agent of the both the April and August secured notes, in Proofs of Claim Numbers 523 and 526.

14.     I have reviewed the thirty-one (31) Beneficial Bondholder Duplicative Claims and can confirm that the each Beneficial Bondholder Duplicative Claim is duplicative of and subsumed within each Surviving Beneficial Bondholder Duplicative Claim.

15.     I believe that failure to disallow the Beneficial Bondholder Duplicative Claims would result in the Claimants receiving a duplicative recovery against the Debtors to the detriment of the Debtors' existing equity holders and any holders of Allowed Section 510(b) Claims.

16.     As such, disallowance of the Beneficial Bondholder Duplicative Claims in their entirety is appropriate.

## **Multiple Debtor Claims**

17.     To the best of my knowledge, information, and belief, the assertions made in the Objection are accurate.  I, or colleagues under my supervision, reviewed the Objection, and can confirm that the Debtors and their advisors have thoroughly examined each Multiple Debtor Claim, the documentation provided with respect to each Multiple Debtor Claim, and the Debtors' books and records and determined that each is the duplicative of Surviving Multiple Debtor Claim filed against another Debtor entity.  As a result, I believe that the Multiple Debtor Claims should be disallowed in their entirety.

18.     I have reviewed the one-hundred and twenty-one (121) Multiple Debtor Claims and can confirm that the each Multiple Debtor Claim is the duplicative of Surviving Multiple Debtor Claim filed against another Debtor entity.

19.     I can confirm that the Debtors and the advisors have not yet reviewed the validity of the Surviving Multiple Debtor Claims in connection with this Objection, and that the Debtors expressly preserve their rights to later object on any basis to any Surviving Multiple Debtor Claim and any Multiple Debtor Claim for which the Bankruptcy Court does not grant the relief requested in the Objection.

20.     I believe that failure to disallow the Multiple Debtor Claims would result in the claimants receiving duplicative and unwarranted recovery to the detriment of the Debtors' existing equity holders and any holders of Allowed Section 510(b) Claims.  Disallowance and expungement of the Multiple Debtor Claims will enable the Debtors to ensure that the claims register is accurate.

21.     As such, disallowance of Multiple Debtor Claims in their entirety is appropriate.

**Wrong Debtor Claims**

22.     To the best of my knowledge, information, and belief, the assertions made in the Objection are accurate.  I, or colleagues under my supervision, reviewed the Objection, and can confirm that the Debtors and their advisors have thoroughly examined each Wrong Debtor Claim, the documentation provided with respect to each Wrong Debtor Claim, and the Debtors' books and records and determined that each Wrong Debtor Claim was filed in the wrong case and against the wrong Debtor entity.  As a result, I believe that the Wrong Debtor Claims should be modified to properly assert in their entirety against the correct Debtor entity as identified on Schedule 9 under the heading "Proposed Debtor".

23.     I have reviewed the thirty-three (33) Wrong Debtor Claims and can confirm that the each Wrong Debtor Claim was filed in the wrong case and against the wrong Debtor entity and the proposed correct Debtor entity as identified on Schedule 9 is the correct case and Debtor entity for each Wrong Debtor Claim to be filed in and against under the heading "Proposed Debtor".

59.     I believe that failure to disallow the Wrong Debtor Claims would result in the claimants receiving an unwarranted recovery to the detriment of the Debtors' existing equity holders and any holders of Allowed Section 510(b) Claims.  Disallowance of the Wrong Debtor Claims will enable the Debtors to ensure that the claims register is accurate.

24.     As such, modification of the Wrong Debtor Claims to properly assert the Wrong Debtor Claims against the correct Debtor entity in their entirety is appropriate.

**Late Filed Claims**

25.      To the best of my knowledge, information, and belief, the assertions made in the Objection are accurate.  I, or colleagues under my supervision, reviewed the Objection, and can confirm that the Debtors and their advisors have thoroughly examined each Late Filed Claim, the documentation provided with respect to each Late Filed Claim, and the Debtors' books and records and determined that each Late Filed Claim was filed after the applicable Bar Date.  As a result, I believe that the Late Filed Claims should be disallowed in their entirety.

26.      I have reviewed the four (4) Late Filed Claims and can confirm that the each Late Filed Claim was filed after the Bar Date.

27.      I believe that failure to disallow the Late Filed Claims would result in the claimants receiving an unwarranted recovery against the Debtors that they are not entitled to and will be to the detriment of the Debtors' existing equity holders and any holders of Allowed Section 510(b) Claims.  Furthermore, disallowance of the Late Filed Claims will enable the Debtors to ensure that the claims register is accurate.

28.      As such, disallowance of the Late Filed Claims in their entirety is appropriate.

**Insufficient Documentation Claims**

29.      To the best of my knowledge, information, and belief, the assertions made in the Objection are accurate.  I, or colleagues under my supervision, reviewed the Objection, and can confirm that the Debtors and their advisors have thoroughly examined each Insufficient Documentation Claim, the documentation (if any) provided with respect to each Insufficient Documentation Claim, and the Debtors' books and records and determined that each Insufficient Documentation Claim is lacking necessary supporting documentation for the existence and/or

amount of the underlying claim.  As a result, I believe that the Insufficient Documentation Claims should be disallowed in their entirety.

30.     I have reviewed the eighteen (18) Insufficient Documentation Claims and can confirm that the each Insufficient Documentation Claim lacks sufficient documentation.

31.     I can confirm that the Debtors have reviewed the Debtors' books and records and have been unable to identify any outstanding noncontingent obligations to the claimants that filed the Insufficient Documentation Claims.

32.     I believe that failure to disallow the Insufficient Documentation Claims would result in the claimants receiving an unwarranted recovery against the Debtors that they are not entitled to and will be to the detriment of the Debtors' existing equity holders and any holders of Allowed Section 510(b) Claims.

33.     As such, disallowance of the Insufficient Documentation Claims in their entirety is appropriate.

## Equity Claims

34.     To the best of my knowledge, information, and belief, the assertions made in the Objection are accurate.  I, or colleagues under my supervision, reviewed the Objection, and can confirm that the Debtors and their advisors have thoroughly examined each Equity Claim, the documentation provided with respect to each Equity Claim, and the Debtors' books and records and determined that each of the Equity Claims were filed by the parties on account of asserted equity interests held by such parties in Debtor Core Scientific, Inc. ("**Core**") (*i.e.* based solely on ownership of common stock of Core, and not on account of damages or claims against Core). Elimination of these Equity Claims will enable the Debtors to maintain a more accurate claims register.  As a result, I believe that the Equity Claims should be disallowed in their entirety.

35.     In addition, some of the Equity Claims were filed against Core Scientific Mining LLC and Core Scientific Operating Company, two other Debtors.  After extensive review, the Debtors and their advisors have determined that such Equity Claims should correctly be categorized as Equity Claims against Core and disallowed.

36.     As such, disallowance of the Equity Claims in their entirety is appropriate.

### Reclassified Claims (Based on Priority)

37.     To the best of my knowledge, information, and belief, the assertions made in the Objection are accurate.  I, or colleagues under my supervision, reviewed the Objection, and can confirm that the Debtors and their advisors have thoroughly examined each Wrong Debtor Claim, the documentation provided with respect to each Reclassified Claim (Based on Priority), and the Debtors' books and records and determined that each Reclassified Claim (Based on Priority Claim was filed asserted with incorrect or improper classification.  As more specifically described in Schedule 9 to the Proposed Order, each Reclassified Claim (Based on Priority) subject thereto was either: (i) asserted by a third-party contractor as a priority wage claim when Claimant was not employed by any Debtor; (ii) incorrectly asserted with priority status pursuant to section 507(a); and (iii) filed as secured claim and claimants who filed such claims provided no support. As a result, I believe that the Reclassified Claim (Based on Priority) should be reclassified as general unsecured claims either in their entirety or in part as identified on Schedule 9.

38.     I have reviewed the four (4) Reclassified Claims (Based on Priority) and can confirm that the each Reclassified Claim (Based on Priority) was filed asserted with incorrect or improper classification as well as the incorrect debtor and the proposed correct Debtor entity as identified on Schedule 9 is the correct case and Debtor entity for each Reclassified Claim to be filed in and against under the heading "Proposed Debtor".

39.     If the Reclassified Claim (Based on Priority) are not reclassified and moved to the Proposed Debtor, the claimants would receive unwarranted recoveries against the Debtors that they are not entitled to and will be to the detriment of the Debtors' existing equity holders and any holders of Allowed Section 510(b) Claims.

40.     As such, reclassification of the Reclassified Claim (Based on Priority) in their entirety or in part is appropriate.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the facts set forth in the foregoing Declaration are true and correct to the best of my knowledge, information, and belief.

 Dated: November 22, 2023

                                        */s/  John Creighton*
                                        John Creighton
                                        Director
                                        AlixPartners, LLP