IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **CORE SCIENTIFIC, INC.,** *et al.,* | § | **Case No. 22-90341 (CML)** |
| | § | |
| **Debtors.**[1] | § | **(Jointly Administered)** |

**SPHERE 3D CORP.'S OBJECTION TO DEBTORS' EMERGENCY MOTION
FOR AN ORDER VACATING THE SCHEDULING ORDER IN THE
SPHERE CONTESTED MATTER AND CONSOLIDATING THE SPHERE
CONTESTED MATTER WITH THE ADVERSARY PROCEEDING**
[Relates to Docket No. 1464]

Sphere 3D Corp. ("Sphere") files this objection ("Objection") to the *Debtors' Emergency*

*Motion for an Order in the Sphere Contested Matter and Consolidating the Sphere Contested*

*Matter with the Adversary Proceeding* [Docket No. 1464] (the "Motion")[2] filed by the above-

captioned debtors and debtors in possession (collectively, the "Debtors" or "Core"), and in support,

respectfully states as follows:

**OBJECTION**

1.      This is a contested matter seeking the allowance of Sphere's claims worth tens of

millions of dollars, which has been pending since May 9, 2023, when Core filed its claim objection

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are as follows: Core Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (N/A); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions, VII, LLC (3198) (each a "Debtor" and collectively, the "Debtors"). The Debtors' corporate headquarters and service address is 210 Barton Springs Road, Suite 300, Austin, Texas 78704.

[2] The Debtors also filed the Motion in Adversary Proceeding No. 23-3252 (the "Adversary Proceeding") to which Sphere also separately filed an objection. Sphere reserves all rights in the Adversary Proceeding. References to "Docket No." are to filings in the above-captioned chapter 11 cases, and references to "Adv. Dkt. No." are references to filings in the Adversary Proceeding.

to Sphere's Proofs of Claim.[3]  Core moved for summary judgment to dispose of the case entirely on June 9, 2023; the Court denied Core's motion for summary judgment on August 7, 2023 following a hearing (the "Aug. 7, 2023 MSJ/Scheduling Hearing" or "Aug. 7, 2023 Hr."). During that hearing, Core proposed that a trial on the merits be "held by the end of the year" and insisted that a "schedule" with a trial in "April 2024" was a "nonstarter." Aug. 7, 2023 Hr. Tr., Ex. 1, 73:5-11. Balancing Core's demand to complete the proceedings as fast as possible ████████████ ██████████████████████████████████████████████████████████████ ████████████████████, the Court and parties agreed to hold the trial in January 2024. *See id.* 85:15-17 (Core's counsel Mr. Tsekerides stating that trial in "December would be better" but that Core would accept a trial "in the beginning part of January").

        2.      During the hearing, the Court explicitly asked whether it made sense to "*join*" non-party Gryphon Digital Mining, Inc. ("Gryphon") to the proceedings, stating "I'm just trying to be efficient about this."[4] *Id.* 77:14–78:5. In response, Core's counsel disclaimed *any* intent to add Gryphon to the proceedings, explaining while "I take your point," Core had "concerns inviting more people to the party," as "[w]e have a plan we want to get done" and "we don't want things hanging out." *Id.* 78:6-20. According to Core counsel, although it would "subpoena" and "depos[e]" Gryphon, "at the end of the day," any dispute involving Gryphon was "between those guys," *i.e.*, Sphere and Gryphon, not Core. *Id.* Seeing the potential for the present situation, the Court asked Core if there would be further litigation involving Gryphon or Sphere beyond the contested matter, expressly inquiring: "if you win" the contested matter, "you're not pursuing anything else, you're just done with it. Is that right?" to which Core responded "Yeah" and "[w]e

---

[3] Proofs of Claim Numbers 358 and 359 (together, the "Proofs of Claim").

[4] All emphases have been added unless otherwise noted.

wouldn't be pursuing anybody else for money because we'd be resolving that issue here, in this context." *Id.* at 76:20-22, 77:9-10. Accordingly, Gryphon was not joined to the contested matter and Core did not assert claims against Gryphon.

3.      Although trial was originally scheduled for January 3, 2024, Core—after initially refusing—reluctantly agreed to push the trial schedule at the insistence of Sphere to later in January 2024 ██████████████████████████████████████████[5] *See* Oct. 26, 2023 Email from G. Wolfe, Ex. 2. Cognizant of the urgency with which Core wanted to complete the contested matter, Sphere had proposed that trial be moved to the week of January 17, 2024 but—for reasons that are unknown to Sphere—Core asked the Court to instead schedule the hearing for January 30, 2024, which the Court did.

4.      The parties have otherwise litigated the case on an expedited schedule, with all of the additional costs and frontloaded litigation expenses that entails. The parties have exchanged tens of thousands of pages of documents in document discovery which—aside from certain disputes—has been completed. By agreement of the parties, the first deposition in this case is scheduled for November 29, 2023 with all depositions scheduled to conclude by December 22, 2023.[6] *See* Nov. 17, 2023 Email from R. Srinivas, Ex. 3, at 1; Nov. 13, 2023 Email from C. Calabrese, Ex. 4.

---

[5] In justifying its initial refusal to move the trial date, Core claimed that Sphere ███████████████████████████
████████████████████████████████████████████ Although the parties disagree on that point, even if it were so, the salient fact remains that Core initially refused to budge on the trial date and only did so for a manifestly good cause, namely, ███████████████

[6] Core's unilateral, bad faith refusal to make its deponents available this week and to meet-and-confer on several key issues related to the parties' 30(b)(6) objections, to which witnesses will testify to which 30(b)(6) topics, and to deficiencies in its privilege log will likely mean that the deadline to complete depositions will need to be pushed to early January. Core's unilateral decision to flout the Court's trial schedule and parties' agreements, however, will not hold up the trial schedule, as, at Core's suggestion, the parties have agreed to forgo motions for summary judgment. See Oct. 25, 2023 Email from G. Wolfe, Ex. 10 at 1.

5.      On November 21, 2023, on the eve of depositions, Core's purported urgency to complete the case evaporated:  Core initiated an adversary proceeding by filing a complaint (the "Adversary Proceeding Complaint") asserting new claims against Sphere and now Gryphon—the same party Core explicitly said it did not want to join in the proceeding.  Based on the filing of the adversary proceeding—which will require new discovery given the new claims and presence of a new party—Core declared to Sphere "that the trial will need to be adjourned and rescheduled" and that "[t]o be clear, none of the pending depositions will go forward."  *See* Nov. 21, 2023 Email from C. Calabrese Ex. 5.  Core went as far as to *ex parte* inform Gryphon—a third party to the contested matter—that a deposition that *Sphere* had noticed through a subpoena would not proceed.[7]  *See* Nov. 21, 2023 Email from C. Calabrese to Gryphon, Ex. 7.  Although Sphere insisted that the trial schedule and the parties' agreement be respected, Core made clear that it will not produce any of its witnesses for scheduled depositions and will not meet-and-confer on various outstanding issues.

6.      For the reasons outlined below, Core has engaged in bad faith conduct in trying to reset the scheduling by joining Gryphon at this late hour and no good cause exists to move the trial schedule or consolidate the proceedings.

7.      *First*, this case is far along, which provides a sufficient basis in and of itself to reject Core's requested relief, as "[c]onsolidation may properly be denied in instances where the cases are at different stages of preparedness for trial."  *Mills v. Beech Aircraft Corp.*, 886 F.2d 758, 762 (5th Cir. 1989); *see also St. Bernard Gen. Hosp., Inc. v. Hosp. Serv. Ass'n of New Orleans, Inc.*,

---

[7] Remarkably, Core has construed its statement to Gryphon that "none of pending depositions will go forward" as an "assertion" devoid of meaning. *See* Nov. 21 Email from T. Tsekerides, Ex. 6 at 1.  This is sophistry; indeed, Gryphon's counsel understood the "assertion" its deposition would not go forward to mean exactly that, stating in response:  "We acknowledge the cancellation of the previously scheduled deposition of Gryphon."  *Id.* at 1–2.

712 F.2d 978, 990 (5th Cir. 1983) (affirming the denial of a consolidation motion on the ground that the matters to be consolidated, while presenting overlapping issues, "were at different stages of preparedness for trial" and that consolidation would prejudice the trial-ready plaintiff). Depositions are supposed to commence this week and trial in two months. Sphere has produced 48,861 pages of documents and Core has produced 20,230 pages of documents. It is far too late for the Debtors to unwind the entire case schedule by bringing an entirely new action that will need to be litigated from the beginning.

8.     *Second*, the situation is urgent for Sphere and any delay prejudicial for it. *See Baez v. Yourway Express, LLC*, 2017 WL 8811739, at *1 (W.D. Tex. Dec. 5, 2017) (denying a motion to consolidate because "consolidating the cases could lead to unnecessary costs and delay, especially given that the [movant] request[ed] a new scheduling order"). In 2022, Sphere generated a net loss of nearly $200 million. As of its most recent Form 10-Q for the quarter ending on September 30, 2023, Sphere has generated only $14 million in revenue—and $28 million in losses. It has just over $1 million in cash, cash equivalents, restricted cash, and digital assets on hand. The result of this contested matter—which seeks allowance of claims worth tens of millions of dollars—is to, say the least, significant to Sphere.

9.     Core disingenuously argues that Sphere originally requested a trial in April 2024, and so should be fine with a delay.[8] *See* Mot. ¶ 26. Core omits that, during the Aug. 7, 2023 MSJ/Scheduling Hearing, it characterized a trial in "April 2024" as a "non-starter," a representation that the Court and Sphere relied upon in setting an expedited schedule around a trial in January 2024. Ex. 1 73:10-11. By forcing Sphere to bear the dramatically increased costs

---

[8] Despite Core's breezy assertion, there is no guarantee that the parties, including Gryphon, will be prepared to try the case in April 2024.

necessitated by expedited scheduling—which frontloaded litigation expenses that could have been spent elsewhere, including on business-related expenses—only to then press the brakes, it is apparent that Core is trying to outlast Sphere's financial wherewithal to prosecute the case. Having been forced by Core to litigate this case on an expedited basis, Sphere is now entitled to an expedited resolution, including so that it may undertake any needed business decisions should its Proofs of Claim be disallowed.

10. *Third*, if Core wanted to adjudicate its affirmative claims against Sphere and Gryphon as part of a consolidated proceeding, it could and should have taken steps to do so long ago, including when the Court explicitly inquired if Core wanted to "join" Gryphon to the case. It is undisputed that Core was aware of the facts needed to bring its adversary proceeding when it filed its Claim Objection on May 9, 2023 and when the Court denied its motion for summary judgment on August 7, 2023. Indeed, during the Aug. 7, 2023 MSJ/Scheduling Hearing, Gryphon was mentioned over *sixty* times. The Court explicitly addressed this very scenario and asked whether it made sense to set a procedure with a deadline for Gryphon to join the case. Although Core references the Court's concern on this issue (*see* Mot. ¶ 23), it conspicuously *omits that it expressly rejected the notion that Gryphon should be joined to the proceeding or that further proceedings involving Gryphon would be needed. See* Ex. 1 78:10-20.

11. *Fourth*, Core's only explanation for the delay in the filing of the Adversary Proceeding smacks of bad faith, namely, that Sphere has not settled the case on terms Core will accept. *See* Mot. ¶ 25. According to Core, it was "entitled to attempt to settle the matter with Sphere before undertaking the expense of seeking affirmative relief through an adversary proceeding that would require adding Gryphon as a party." *Id.* That may be so, but what Core is not entitled to do is insist upon an expedited schedule on the contested matter and have Sphere and

the Court adhere to that schedule, only to rip that schedule up when it fails to secure a settlement to its liking. It is apparent that Core never intended to let this contested matter reach depositions and has instead always viewed the expedited litigation schedule as a way to impose enormous costs on Sphere to extract a favorable settlement. Case schedules have consequences and are not weapons to pressure parties into settlement.

12.    And the notion that the filing of the Adversary Proceeding Complaint became necessary only after Core had exhausted other early resolution options and that it represents a cost-effective approach to resolving this matter is frivolous. *See* Mot. ¶ 8. Although Sphere sent Core several offers to resolve the dispute before October 2023, Core only sent Sphere a counteroffer in late October 2023 and essentially declared negotiations to be at an end in early November 2023. Wolfe Decl ¶ 3. Core has inexplicably refused several invitations to mediate the dispute before Judge Isgur so that the parties, ███████████████████ may gain a neutral's perspective on the respective merits.[9]

13.    *Fifth*, moving the trial schedule now would reward gamesmanship in numerous respects. For example, as can be seen by the late hour at which it was filed and Core's representation during the Aug. 7, 2023 MSJ/Scheduling Hearing that it would not be pursuing additional claims for damages, the Adversary Proceeding Complaint is just a vehicle to try to delay depositions and confuse and elongate trial by adding a second party to the case that will need to split deposition and witness time with Sphere, thereby making this case more expensive for Sphere. If Core actually believed that its affirmative claims for purportedly over $100 million had any

---

[9] Because the issue speaks to Core's undue delay, motive, and bad faith, the Court may consider the parties' settlement discussions under Rule 408 of the Federal Rules of Evidence. In addition to its efforts to resolve the dispute before the Aug. 7, 2023 MSJ/Scheduling Hearing, Sphere suggested mediation on or around August 11, 2023, October 26, 2023, November 6, 2023, and November 17, 2023. Wolfe Decl. ¶ 2. Core refused to mediate each time. *Id. Id.* ¶ 3. Sphere does not submit the underlying documents reflecting this reality because they include the actual settlement proposals, but can do so if it would be helpful to the Court.

merit whatsoever, then it would have brought them immediately, not wait to see if it could "settle" the matter with Sphere.  And Core's purported desire to settle with Sphere in no way explains why it would not immediately assert those claims against Gryphon.

14.     As another example, Core is using its adversary proceeding to circumvent the Court's orders.  On September 13, 2023, on Sphere's motion to compel, the Court ordered Core to answer Sphere's interrogatories asking for any of Core's damages and offset theories by no later than September 20, 2023 (the "September 13 Order").  *See* Sep. 13, 2023 Hr. Tr., Ex. 8, 10:19-22, 26:14-16.   After providing its supplemented responses on that date, Core served amended responses after the close of discovery that disclosed brand new theories of damages that Sphere did not have the opportunity to explore before the close of document discovery, in violation of the scheduling order and the Court's September 13 Order.  Sphere has put Core on notice that it intends to move to preclude Core from relying on its deliberately concealed damages theory at trial.  *See* Nov. 15, 2023 Email from R. Srinivas, Ex. 9.  Core's apparent workaround is the adversary proceeding, in which, as set forth below, Core seeks to recover damages on the very same theory it improperly withheld.

15.     *Finally*, Core's claim that a consolidated proceeding is the most efficient way to adjudicate the issues—with new pleadings, new dispositive motions, new discovery, and a substantially lengthier, multi-party trial—is without merit.  In its Non-Opposition In Part And Opposition In Part To The Motion, Gryphon has stated its intention to move to arbitrate the claims asserted against it.  *See Core Scientific Inc. v. Sphere 3D Corp.*, Adv. Dkt. No. 12 at 3–4.

16.     Win or lose that motion to compel arbitration, there will be no efficiency gains.  If the motion is granted and the claims against Gryphon are sent to arbitration, there will be *no* efficiency gains stemming from consolidation—instead there will be a case involving Sphere

adjudicated in this Court and a case by Core against Gryphon adjudicated in the arbitral forum. And if the motion is denied, Gryphon will be entitled to take an interlocutory appeal from the denial, thereby triggering an automatic stay that may last for *years* as the appeal works its way through three potential layers of appellate review while Sphere eagerly awaits trial. *See Coinbase, Inc. v. Bielski*, 599 U.S. 736, 738 (2023) (holding that "a district court must stay its proceedings while the interlocutory appeal on arbitrability is ongoing").

17.     Review of the ten Counts Core has asserted make clear it the Adversary Proceeding has been asserted purely to derail the contested matter, not to promote efficient resolution of both proceedings. The first three Counts assert Core's affirmative claims for damages: Count I is a claim for breach of Order #2 and the MSA (both of which are defined *infra*) against Sphere; Count II is a claim for breach of Order #2 and the MSA against Gryphon; and Count III is a claim for breach of Order #2 and the MSA against both Gryphon and Sphere to the extent both share contractual rights with Core. As claims seeking affirmative damages that do not invoke substantive rights created by the Bankruptcy Code, those Counts are most likely subject to arbitration. *See In re Gaughf*, 2020 WL 1271595, at *4-6 (Bankr. S.D. Miss. Mar. 12, 2020) (sending non-core claim asserted by trustee to arbitration); *see also Matter of Nat'l Gypsum Co.*, 118 F.3d 1056, 1067 (5th Cir. 1997) (observing that "nonenforcement of an otherwise applicable arbitration provision turns on the underlying nature of the proceeding, *i.e.,* whether the proceeding derives exclusively from the provisions of the Bankruptcy Code and, if so, whether arbitration of the proceeding would conflict with the purposes of the Code" and that even certain core claims may be sent to arbitration).

18.     Counts IV-XI seek declaratory relief that simply reframes arguments and defenses that Core has raised in the contested matter to Sphere's Proofs of Claims. It does not appear that

these claims are even asserted against Gryphon, as they are carefully worded so as not to name any defendant.  It would not make sense that Core would want to assert declaratory judgment claims against Gryphon, as Gryphon has not filed a proof of claim and the bar date has passed. And the content of the Counts also shows they are not asserted against Gryphon:

- Counts V, VI, and VII seek declarations disallowing claims that *Sphere* (not Gryphon) has asserted against Core.  *See* Adversary Proceeding Complaint ¶¶ 83–100.

- Count IV seeks a declaration that "Sphere Has No Contractual Rights" in certain agreements with Core, which is predicated on "*Sphere*'s assert[ion]" that it "has" such "rights and obligations." *See id.* ¶¶ 77–82.

- Count VIII seeks a declaration that "*Sphere* cannot recover more than one-month's fee on its claims asserted in the *Sphere POCs*." *See id.* ¶¶ 101–106.

- Count IX seeks a declaration that Core is entitled to a setoff "to the extent *Sphere* is entitled to any recovery under the *Sphere POCs*." *See id.* ¶¶ 107–112.

19.    Even if these Counts were asserted against Gryphon, and even if they were not subject to arbitration, consolidation would not add anything meaningful, as they are subject to the defense that Gryphon did not file a proof of claim by the bar date.  As Core stated during the Aug. 7 MSJ/Scheduling Hearing, "Gryphon" had "already waived" its claims against the estate because it "had an opportunity to file a proof of claim and they didn't."  Ex. 1 80:1-6.  It would be perverse if Core could reset the schedule for strategic reasons by asserting defenses to claims it does not even believe Gryphon can event assert.

20.    Finally, Count X seeks a declaration that Order #2 and the MSA are not executory contacts so that Core may cancel those contracts or, in the alternative, an order authorizing rejection as an exercise of Core's sound business judgment.  This is relief typically teed up by motion and is here grounded in speculation; indeed, Core has not even explained the basis for its business judgment to cancel the contracts.  It is not clear that Gryphon will oppose termination at

all.  For its part, Sphere is presently assessing whether it will oppose termination.[10]  To the extent there is opposition, the determinations of whether Order #2 and MSA are executory and whether Core may reject those contracts in its sound business judgment are plainly issues that can be litigated outside the context of the contested matter.

21.    Count X also seeks a declaration for relief the Court cannot reasonably grant, namely, that, in the event Core cancels the MSA and Order #2 in the exercise of its business judgment, Sphere and Gryphon are "barred" from filing proofs of claims asserting rejection damages on the purported basis that they breached those contracts.  It is completely speculative that, if Core rejects Order #2 and the MSA, Sphere or Gryphon would file proofs of claim seeking rejection damages.  Moreover, although the Court can disallow a proof of claim for rejection damages, it cannot reasonably bar Sphere or Gryphon from filing the proof of claim in the first place.  *Cf. In re McLarry*, 273 B.R. 753, 754 (Bankr. S.D. Tex. 2002) ("[T]he Court has no authority to prohibit a tardy creditor from filing a proof of claim.").

22.    At bottom, Core seriously overstates the efficiency gains that inure to a consolidated proceeding.  Conversely, consolidation will have deleterious effects for Core and Sphere, as the parties will need to redo both defensive and offensive deposition preparation and concomitant trial preparation due to the passage of time, addition of a new party, and new productions of documents.

23.    As an alternative, and to promote efficiency, the Court can (1) at the trial scheduled to begin on January 30, 2024 entertain whether to allow Sphere's Proofs of Claim and in what amount and (2) otherwise stay and defer consideration of the adversary proceeding and any offset

---

[10] It is not clear that how Core could reasonably take the position that Order #2 and the MSA are not executory.  As it admitted at the Aug. 7 MSJ/Scheduling Hearing, Core is still delivering services under Order #2 and Sphere is still paying for those services pursuant to invoices issued by Core.  *See* Tr. 75:6–7 (Core's Counsel:  "We're still performing" under "Order Number 2").

issues until the conclusion of the trial.  The outcome of that trial may obviate the need to adjudicate

the adversary proceeding.  For example, the trial may inform the settlement posture of the parties

(a decisive consideration, according to Core).  And if Core prevails, it may determine it is not in

the best interests of the estate to expend the considerable resources needed to pursue its affirmative

claims, which is plausible given that it only asserted them at the eleventh hour because Sphere,

without the benefit of any mediation, did not accept a settlement to its liking.  In all events, a trial

would streamline the subsequent adversary proceeding with minimal disruption to Core and its

plan of reorganization.

24.     In the remainder of this brief, and given your Honor's recent appointment to the

case, we provide additional background on the case and the issues relevant to this motion, much

of which can be found in Core's Claim Objection and Sphere's Response (*see* Exs. 11, 12); the

briefing on Core's Motion for Summary Judgment seeking dismissal of the case (*see* Exs. 13-15);

Sphere's demonstrative used during oral argument (*see* Ex. 16); and the transcript of the oral

argument on the Motion for Summary Judgment during which the Court denied the motion (*see*

Ex. 1).

## **CASE BACKGROUND**

25.     This case arises out of Core's breach of its contractual obligations under a Master

Services Agreement dated September 12, 2021 (the "MSA") and an accompanying order dated

October 5, 2021 ("Order #2") pursuant to which Core agreed to provide certain services in

connection with Sphere's Bitcoin mining operations.  Under the agreements, Core was to deploy

miners delivered to it by Gryphon, Sphere's manager.  In turn, Sphere paid Core tens of millions

of dollars in deposits which were to be used to pay Core's fees as they came due (the "Deposit").

Rather than adhere to its contractual obligations, Core breached them by failing to accept and

deploy Sphere's miners and thereafter unlawfully retaining tens of millions of dollars belonging to Sphere.  After Sphere initiated arbitration proceedings against Core, Core filed its bankruptcy petition; thereafter, Sphere filed its Proofs of Claim seeking damages consisting of the improperly retained deposits and certain costs Sphere incurred as consequence of Core's failure to perform.

26.      While Sphere upheld its end of the bargain, Core did not.  Core declined to deploy hundreds of Sphere's miners, as required, because it did not have the space to do so; hooked up the few miners it did deploy as its own to generate Bitcoin for its own benefit; and altogether delivered to Sphere a few hundred thousand dollars' worth of services before repudiating the MSA and Order #2 because the cost of hosting had risen and Core no longer found the agreed-upon hosting services rate to be advantageous.  Although it delivered almost nothing to Sphere, Core now contends it is entitled to a windfall and should be allowed to retain Sphere's Deposit (of which close to $34 million remains), Sphere's miners (the "Miners")—which have an approximate book value of ▮▮▮▮▮▮▮—and the unknown amount of Bitcoin (the "Coins") that Core wrongfully seized from Sphere.  This is palpably unfair and impermissible.

27.      Through the Proofs of Claim, Sphere asserts, among other things, that Core intentionally converted Sphere's property; that Core breached its contractual obligations, including in bad faith, and is thus liable under repudiation, breach of contract, and breach of the implied covenant theories; and that Core is also liable in equity under estoppel theories for failing to return the property.

**I.  THE COURT REJECTED CORE'S MOTION FOR SUMMARY JUDGMENT CONTENDING THAT CORE DOES NOT HAVE RIGHTS IN ORDER #2**

28.      In its Motion for Summary Judgment, Core argued that there was no genuine dispute of material fact that Sphere had rights in Order #2.  As summarized below, the Court rejected that argument.

### A.    On Behalf Of Sphere, Gryphon Entered Into Order #2

29.    Pursuant to an agreement between third-party Gryphon and Sphere, Gryphon acts as the "exclusive provider of any and all management services for all blockchain and cryptocurrency-related operations" for Sphere.  *See* Ex. 14 at 39–41 (Trompeter Declaration).

30.    On September 12, 2021, Gryphon and Core entered into the MSA and, on October 5, 2021, into Order #2 to the MSA on Sphere's behalf.  Order #2 sets forth the terms under which Core would host Sphere's miners, including the fees called for by Order #2, and controls to the extent inconsistent with the MSA.

31.    Order #2 provided for a schedule of payments, pursuant to which Sphere paid $35,104,363 in deposits.

### B.    Through The Sphere Assignment Provision In Order #2, Core Explicitly Agreed Gryphon Could "Assign . . . Order #2" To "Sphere" Without Prior Written Consent

32.    Core at all points understood that Gryphon was acting as a manager for Sphere. As reflected in Order #2, Core expressly agreed that Gryphon could assign its rights under the MSA and Order #2 to *Sphere* without seeking prior written consent from Core. Specifically, Order #2 provides:

> **Amendment to Section 8.d of the Agreement**. Both [Core] and [Gryphon] agree that Section 8.d (Assignment and Subcontracting) of the Agreement is amended so that [Gryphon] is permitted to sub-lease, sub-license, assign, delegate or transfer the Agreement, Order 1 and Order 2, or any of its rights and obligations hereunder to Sphere 3D Corp. and thereunder without the prior written consent of [Core] as long as Sphere 3D Corp. satisfies [Core's] requirements prior to.

33.    Sphere hereinafter refers to this provision as the "Sphere Assignment provision."

14

**C.** **Gryphon Entered Into A Sub-License Agreement With Sphere Pursuant To Which It Assigned Rights In Order #2 To Sphere**

34.     On October 5, 2021, the same date it entered into Order #2, Gryphon entered into the Sub-License Agreement with Sphere in which it assigned rights in Order #2 to Sphere.  *See* Sub-License Agreement, Ex. 14 at 69 § 1 (providing that Gryphon "exclusively sub-licenses to Sphere its rights to access and use [Core's] Facility pursuant to Order 2" and "delegates to Sphere all of its obligations to make payments to Core pursuant to Order 2").

**D.** **Despite The Delegation Agreement And The Sphere Assignment Provision, Core Argued That The Evidence Was Undisputed That Gryphon Had Not Assigned Any Rights In Order #2 To Sphere**

35.     Notwithstanding the express language in Order #2 permitting Gryphon to assign rights to Sphere without Core's prior written consent, and the Delegation Agreement that did exactly that, Core moved for summary judgment before any discovery had been exchanged, arguing that the assignment was ineffective.  The crux of Core's argument was that the phrase "requirements prior to" in the Sphere Assignment Provision *unambiguously* required Sphere to satisfy no less than *six categories of requirements*, including, apparently without limitation:

- *First*, "creditworthiness";

- *Second*, "Foreign Corrupt Practices Act [FCPA] considerations";

- *Third*, "Know Your Customer [KYC] considerations (*e.g.*, business with Chinese entities/Chinese government)";

- *Fourth*, "form of assignment (*e.g.*, how and which rights and obligations were transferred, allocated or retained)";

- *Fifth*, "whether any such assignment would implicate securities laws or constitute an investment contract";

- *Sixth*, "whether any assignment would impact Core's own rights and obligations under the Gryphon Hosting Agreements;" and

- *Finally*, many other undisclosed requirements.[11]

36.     The purportedly unambiguous interpretation was based on a terse declaration from Russell Cann, an EVP at Core (the "Cann Declaration").  Mr. Cann went on to declare in two sentences, based on his "personal knowledge" (with no elaboration on how he had that knowledge), that Sphere never met Core's six (and counting) requirements.  Core proffered no other evidence—no contemporaneous documents reflecting negotiations or otherwise—before declaring that Sphere did not meet Core's requirements and therefore any assignment from Gryphon to Sphere is void.

### E.     The Court Determined That The Pre-Discovery Evidence Warranted Denying The Motion For Summary Judgment Regarding The Assignment Issue

37.     Because Sphere did not negotiate Order #2, and the majority of the interfacing with Core was performed by Gryphon on Sphere's behalf, Sphere did not have access to much of the relevant evidence around the assignment issue, which instead was in the control of Core and Gryphon.  Nevertheless, even the limited evidence accessible to Sphere during pre-discovery showed that the phrase "requirements prior to" was ambiguous—and certainly could not be construed to unambiguously encompass the more than six conditions Core advanced.  Instead, Sphere argued that the conditions needed to be satisfied were ministerial.

38.     Limited pre-discovery evidence also demonstrated that either: (1) Sphere had met the requirements, whatever they were; or (2) that Core had not required they be met and could not now disclaim the assignment, whether through estoppel, acquiescence, waiver, or otherwise.  The evidence included:

- The sworn statements of Sphere CEO Patricia Trompeter and former Sphere CEO Peter Tassiopoulos (*see* Ex. 14 at 39–41; *id.* at 75) that Core's then-CEO

---

[11] *See* Declaration of Russell Cann, Ex. 17 ¶ 8.

Mike Levitt acknowledged to each in April 2022 that Sphere in fact had an enforceable contract with Core;

- Text messages from Core representatives reflecting Core's contemporaneous approval of a public press release in which Sphere announced the Delegation Agreement (*see* Oct. 12, 2021 Email from R. Chang, Ex. 14 at 83); and

- A letter from Gryphon CFO Brian Chase in which Gryphon affirmed that Sphere "exclusively maintains any and all right and claim to" the Deposit (*see* Ex. 14 at 74).

39.    Based on the evidence, the Court concurred that summary judgment had to be denied on the assignment issue.  The Court described the "requirements prior to" language as "one of the . . . poorest written provisions that I've ever read" and stated that, "[i]f it was intended to be substantive, someone just didn't do a very good job."  Ex. 1 82:10-15.  The Court added: "I am going to have to have testimony on both what it meant at the time because I do find there to be an ambiguity, and I am, obviously, going to hear testimony about whether or not those conditions were met."  *Id.* 82:16-19.  As the Court observed, "[Core] knew something was going on" with respect to Sphere.  *Id.* 48:22.

40.    Moreover, in addition to its contract claims, Sphere is also asserting extracontractual claims, such as, estoppel, conversion, and unjust enrichment.  Because those claims could be asserted even if the assignment were ineffective—and presented a distinct "track" for recovery—the Court determined that summary judgment could not be granted on those claims either.

## II.    DISCOVERY HAS CONFIRMED THAT GRYPHON SUCCESSFULLY ASSIGNED RIGHTS IN ORDER #2 TO SPHERE

41.    Discovery has confirmed that either Sphere satisfied Core's purported "requirements" or that Core did not actually require they be satisfied.  For example, Core's emails reflect that, in September 2021, Core informed Gryphon it would be running a KYC/AML check

on Sphere.  *See* CORE-SPH0000354, Ex. 18, at 1.  There is no contemporaneous evidence prior to or around Core's execution of Order #2 that Sphere failed that check and Core has admitted that it did not inform Gryphon that Sphere had failed to meet its "requirements" or that KYC/AML check.  *See* Debtor's Responses and Objections to Sphere's Second Set of Requests for Admission, Ex. 19, at 6–7.

42.   ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████   Subsequent to Order #2's execution, Core's General Counsel Todd DuChene signed off on Sphere publicly disclosing the Sub-License Agreement and its terms.  *See* CORE-SPH0001186, Ex. 21.  And Core's emails reflect that Core knew that Sphere was wiring the money for Order #2.  *See, e.g.*, CORE-SPH0000271, Ex. 22 (correspondence from Gryphon to Core noting that Sphere's banker "requires Sphere to jump through hoops whenever they send wires").  Indeed, Core signed an audit letter confirming that Sphere had made the deposit payments.  *See* CORE-SPH0008246, Ex. 23, at 1–2.

43.   This and other evidence to be introduced at the hearing will demonstrate that Gryphon successfully assigned rights in Order #2 to Sphere.

## III.   CORE'S CAPACITY TO HOST MINERS IS A CRUCIAL ISSUE

44.   Beyond the assignment issue, discovery has focused on, among other things, whether Core had the capacity to perform under Order #2. Order #2 set forth a deployment schedule for hosting Sphere's miners:

| Client Equipment hosted**: | Deployment Month | Quantity & Type of Unit (the "Units") | Assumed power consumption per Unit (KWh): |
|---|---|---|---|
| | OCT 2021 | 100 S19 or equivalent | 3.255 |
| | NOV 2021 | 100 S19 or equivalent | 3.255 |
| | DEC 2021 | 100 S19 or equivalent | 3.255 |
| | JAN 2022 | 100 S19 or equivalent | 3.255 |
| | FEB 2022 | 100 S19 or equivalent | 3.255 |
| | MAR 2022 | 2,500 S19 or equivalent | 3.255 |
| | APR 2022 | 5,000 S19 or equivalent | 3.255 |
| | MAY 2022 | 7,500 S19 or equivalent | 3.255 |
| | JUN 2022 | 10,000 S19 or equivalent | 3.255 |
| | JUL 2022 | 10,000 S19 or equivalent | 3.255 |
| | AUG 2022 | 10,000 S19 or equivalent | 3.255 |
| | SEP 2022 | 10,000 S19 or equivalent | 3.255 |
| | OCT 2022 | 10,000 S19 or equivalent | 3.255 |
| | NOV 2022 | 4,500 S19 or equivalent | 3.255 |

45.     Sphere's contention is that Core's facilities were overbooked and it could not comply with this schedule. Document productions have validated this theory, as they reflect that Core's own internal projections show that Core had bitten off more than it could chew and negative capacity (*i.e.*, it had overbooked its capacity), even without considering the miners that needed to be hosted under Order #2. *See, e.g.*, CORE-SPH0013639, Ex. 24 (February 7, 2022 Capacity and Deployment Plan), at slide 6 (reflecting negative capacity of 56 MWs in January 2022, 48 MWs in February 2022, 51 MWs in March 2022, 56 MWs in April 2022, 62 MWs in May 2022, 62 MWs in June 2022, 62 MWs in July 2022, and 28 Megawatts in August 2022), slide 2 (reflecting that Order #2 was not included in this version of the capacity report).

46.     ███████████████████████████████████████████████

████████████████████████████████████████████████████████

████████     Nevertheless, Core has refused to return the deposit.

## IV.    CORE VIOLATED THE COURT'S ORDER TO DISCLOSE ITS OFFSET/DAMAGES THEORY

47.     Since the Court entered its scheduling order, the parties worked at a breakneck pace to complete discovery in time for a January trial, exchanging tens of thousands of documents, engaging in written discovery, and scheduling and preparing for around a dozen depositions, all of

which are set to be taken over the next thirty days.  That process revealed a series of deficiencies in Core's compliance with its discovery obligations, several of which remain unremedied to date.[12]

48.     One such deficiency concerns Core's strategic decision to conceal its damages/offset theory until after the close of document and written discovery.  On August 18, 2023, Sphere served its first set of interrogatories in which it posed a series of questions related to any alleged harm Core claims it suffered and asked Core to:

- Identify and describe any expenditures and preparations made in contemplation of hosting any miners under Order #2.  (Interrogatory No. 4).

- Identify and describe any harm, damage, or loss any Debtor claims it suffered due to the alleged nonperformance of Gryphon or Sphere under the MSA and Order #2.  (Interrogatory No. 9).

- Identify and describe any efforts to mitigate harm, damage, or loss any Debtor claims it suffered due to the alleged nonperformance of Gryphon or Sphere under the MSA and Order #2 and how much those mitigation efforts reduced the alleged harm, damage, or loss any Debtor claims it suffered.  (Interrogatory No. 10).

See Sphere's First Set of Interrogatories, Ex. 26, at 4.

49.     Rather than give substantive answers, Core offered cursory responses that failed to provide any detail regarding the harm it had allegedly suffered or its efforts to mitigate it:

- In response to Interrogatory No. 4, Core stated: "as a general matter, the expenditures and preparations made in contemplation of hosting miners under Order #2 include the costs and expenses incurred in constructing facilities to house the expected units."

- In response to Interrogatory No. 9, Core stated: "the harm and damages suffered by the Debtors includes loss of revenue associated with Gryphon's failure to deliver the 70,000 Miners reflected in Order #2 and funds spent to build facilities in anticipation of the delivery of such Miners."

---

[12] By way of example, Core has refused to provide a privilege log with sufficient descriptions of materials it has withheld or that contains metadata—for example, subject lines for emails—that parties produce as a matter of course. Indeed, it has refused to even meet and confer on the issue, apparently because it believes this Court's orders no longer apply in light of the recently filed Complaint.

- In response to Interrogatory No. 10, Core stated: "because Gryphon was not delivering Miners to Core in accordance with the MSA and Order #2, and made clear to Core no later than February 2022 that it could not meet its obligations, Core ceased construction on facilities in order to reduce its expenditures and limit the losses caused by Gryphon's breach of the MSA and Order #2."

*See* Debtors' Responses and Objections to Sphere's First Set of Interrogatories, Ex. 27, at 13–14, 16–17.

50.     Sphere moved to compel on the basis that those conclusory responses were wholly inadequate and failed to provide the detail necessary for Sphere to test the bases of Core's claim that it suffered cognizable harm that could offset Sphere's substantial claims against Core.

51.     The Court agreed.  At a September 13, 2023 conference held on Sphere's motion to compel, the Court ordered Core to "state the basis and amount of each offset"—that is, each harm Core allegedly suffered as a consequence of purported breaches by Gryphon/Sphere—and to do so by September 20, 2023.   *See* Sep. 13, 2023 Hr. Tr., Ex. 8, 10:19-22, 26:14-16.

52.     On September 20, 2023, Core served its supplemental responses and asserted that it suffered two forms of harm:

- ███████████ in lost revenues purportedly caused by Gryphon's failure to comply with the MSA; and

- ██████████ in construction costs associated with the construction of facilities allegedly intended to host Sphere miners.

*See* Debtors' Supplemental Responses and Objections to Sphere's First Set of Interrogatories, Ex. 28, at 2–4.

53.     The theories were makeweight because, among other reasons, (1) lost revenues (as opposed to lost profits) are generally not cognizable as an injury, *see Motion Med. Techs., L.L.C. v. Thermotek, Inc.*, 875 F.3d 765, 779 (5th Cir. 2017); (2) the facilities in question were built for other purposes beyond hosting Sphere's miners; and (3) the MSA's limitation of liability generally

excluded damages for lost revenues and consequential damages, *see* MSA § 5.d.  But this was Core's theory and Sphere proceeded in discovery accordingly.

54.     On November 3, 2023—nearly two weeks after the October 23, 2023 close of discovery—Core served amended interrogatory responses on Sphere in which it set forth brand new theories of damages, namely:

- $43,200,000 in lost profits; and

- $62.7 million in construction harm, which it purportedly arrived at by multiplying ██████████ to construct four facilities by ████, which it claims is the amount of capacity at those facilities that would purportedly have been devoted to Sphere's machines.

*See* Debtors' Amended Responses and Objections to Sphere's First Set of Interrogatories, Ex. 29, at 5.

55.     Core, however, has not produced discovery commensurate with the new theories and has denied Sphere the opportunity to seek that discovery.  For example, had Sphere known that Core would be pursuing a lost profits theory, it would have served discovery to test and explore all of the inputs that went into that calculation (*e.g.*, its costs), which it did not and which Core did not produce.  Indeed, Core cut off discovery into whether Core was passing on its costs to Sphere based on Core's argument that it was irrelevant to Sphere's claims.  *See* Sep. 13, 2023 Hr. Tr., Ex. 8, 15:15–20 (Core's counsel contending that Core's power costs—and the extent to which they were passed on to Sphere—was "irrelevant" and not at issue in the case); *id.* 16:21-23 (the Court sustaining Core's objection in response to that argument).  But that issue is *plainly relevant to a lost profits theory.*

56.     Likewise, Sphere never had the opportunity to explore Core's new theory of construction harm.  Had Core timely disclosed its damages theories as ordered by the Court, Sphere would have insisted on inquiry into numerous subjects, including whether the racks purportedly

prepared for Sphere could be used with other customers and whether simply multiplying total construction costs by ▮▮▮ was a reasonable measure of damages.

57.    In correspondence with Core's counsel, and in an effort to avoid burdening the Court with a motion to exclude, Sphere raised these issues and requested that Core rely only on damages theories that it had properly disclosed on September 20, 2023 as ordered by the Court. Core did not deny that it had violated the Court's order or that it had produced inadequate discovery on the issue, but nevertheless refused to disclaim reliance on its improperly concealed damages theory.  *See* Ex. 9.  Sphere intends to file a motion to exclude in due course.

## V.    CORE FILES ITS ADVERSARY PROCEEDING COMPLAINT ASSERTING ITS BELATEDLY DISCLOSED DAMAGES THEORY

58.    On November 21, 2023, Core filed its Adversary Proceeding Complaint against Sphere and now Gryphon.  Core's 38-page, ten-count Complaint—which was evidently drafted long before it was filed—generally rests on information of which Core has been aware since before this contested matter commenced and was certainly aware of at the time the Court asked Core during the motion for summary judgment and scheduling hearing whether, if it won the contested matter, it intended to "pursue[] anything else" or whether it would be "just done," to which Core replied "Yeah."  Aug. 7, 2023 Hr. Tr., Ex. 1, 76:20-24.

59.    The Complaint is a transparent attempt to evade the Court's September 13 Order that Core disclose its offset/damages theories and to delay the resolution of the case.  For example, Core's Complaint seeks damages in the form of the lost profits and construction harm it belatedly disclosed in violation of the Court's September 13 Order.  *See, e.g.*, Compl. ¶ 76 (seeking the two categories of damages identified in Core's tardy supplemental interrogatories).  Core also seeks a brand-new category of damages that it did not even disclose in its amended interrogatory responses after the close of discovery—namely, outstanding fees it claims it was owed under Order #2.  *Id.*

This claim too is meritless—Core does not seriously believe in it; if it did, it would have disclosed it during the Aug. 7, 2023 MSJ/Scheduling Hearing and in any of its many interrogatory responses in response to direct questions about its claimed damages/offset.

60.    Otherwise, the Complaint principally asserts claims for declaratory judgment that reflect the defenses Core is already asserting in the contested matter.  *See id.* Counts IV-X.

## VI.    AFTER FILING ITS COMPLAINT, CORE REFUSED TO PRODUCE ITS WITNESSES FOR DEPOSITIONS, INSTRUCTED GRYPHON THAT SPHERE'S DEPOSITIONS WERE ADJOURNED, AND REFUSED TO ANSWER OUTSTANDING DISCOVERY DEFICIENCIES

61.    Shortly after filing its Complaint, Core declared that, based on its presumption that the Court would rule in its favor, Core would no longer participate in the discovery process.

62.    First, Core refused to produce any of its witnesses for depositions on the dates previously agreed to.  For example, Core's counsel flatly stated that "Mr. Levitt will not be made available" for a deposition scheduled for November 29, 2023 (*see* Nov. 22, 2023 Email from T. Tsekerides, Ex. 30), which is sanctionable.  *See Hepperle v. Johnston*, 590 F.2d 609, 613 (5th Cir. 1979) (holding that the pendency of a party's motion for a protective order did not "not relieve him of the duty to appear for his deposition" and affirming a decision dismissing a case as a sanction for failing to appear); *Tyler v. NEMA Inc.*, 2013 WL 486651, at *3 (W.D. La. Feb. 5, 2013) ("[A] party refusing to attend his own deposition can be sanctioned . . . .").

63.    Second, Core then contacted Gryphon—without copying Sphere's counsel—and instructed Gryphon that all depositions, including those of Gryphon's witnesses that Sphere had noticed, were adjourned.  Sphere became aware of this communication—and its false suggestion that the adjournment of the depositions was uncontested—only after Gryphon's counsel replied and, copying counsel for Sphere, "acknowledge[d]" the purported cancellation by Core of a deposition noticed by Sphere.  *See* Ex. 6.

64.     Third, Core stated it would refuse to engage in any email correspondence concerning discovery issues, or to meet and confer regarding them—including regarding deficiencies in Core's privilege log, the parties' 30(b)(6) objections, and which witnesses would be designated to testify on which 30(b)(6) topics—until the "outdated" trial schedule *ordered by this Court* was vacated.  *See* Tsekerides Decl. Ex. 3 at 1.

## **CONCLUSION**

For the reasons set forth above, Sphere respectfully requests that the Court (i) deny the Motion and (ii) grant Sphere such other and further relief as is appropriate under the circumstances.

*[Remainder of page left blank intentionally]*

Dated: November 28, 2023                    Respectfully submitted,

_/s/ Timothy A. ("Tad") Davidson II_

Timothy A. ("Tad") Davidson II               Tibor L. Nagy, Jr.
TX Bar No. 24012503                          TX Bar No. 24041562
Ashley L. Harper                             Gregory N. Wolfe (admitted _pro hac vice_)
TX Bar No. 24065272                          **DONTZIN NAGY & FLEISSIG LLP**
**HUNTON ANDREWS KURTH LLP**                 980 Madison Avenue
600 Travis Street, Suite 4200                New York, New York 10075
Houston, Texas 77002                         Telephone: (212) 717-2900
Telephone:  (713) 220-4200                   Email:      tibor@dnfllp.com
Facsimile:  (713) 220-4285                               greg@dnfllp.com
E-mail:     taddavidson@HuntonAK.com
            ashleyharper@HuntonAK.com

- and -

Seth H. Lieberman (admitted _pro hac vice_)
Matthew W. Silverman (admitted _pro hac vice_)
**PRYOR CASHMAN LLP**
7 Times Square
New York, New York 10036
Telephone:  (212) 421-4100
Facsimile:  (212) 326-0806
E-mail:     slieberman@pryorcashman.com
            msilverman@pryorcashman.com

- and -

_Co-Counsel for Sphere 3D Corp._

## CERTIFICATE OF SERVICE

I certify that on November 28, 2023, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas on those parties registered to receive electronic notices.

_/s/ Timothy A. ("Tad") Davidson II_
Timothy A. ("Tad") Davidson II

26