Exhibit 8

1           IN THE UNITED STATES BANKRUPTCY COURT

2          FOR THE SOUTHERN DISTRICT OF TEXAS

3                  HOUSTON DIVISION

4  IN RE:                        §      CASE NO. 22-90341-11
                                 §      JOINTLY ADMINISTERED
5  CORE SCIENTIFIC, INC.,        §      HOUSTON, TEXAS
   ET AL,                        §      WEDNESDAY,
6                                §      SEPTEMBER 13, 2023
             DEBTORS.            §      1:08 P.M. TO 1:48 P.M.
7

8              **EMERGENCY HEARING (VIA ZOOM)**

9         BEFORE THE HONORABLE DAVID R. JONES
              UNITED STATES BANKRUPTCY JUDGE
10

11

12     APPEARANCES:                   SEE NEXT PAGE

13              RECORDED VIA COURTSPEAK

14

15

16

17

18

19

20              TRANSCRIPTION SERVICE BY:

21         JUDICIAL TRANSCRIBERS OF TEXAS, LLC
               935 Eldridge Road, #144
22             Sugar Land, TX  77478
                   281-277-5325
23             www.judicialtranscribers.com

24

25    Proceedings recorded by electronic sound recording;
        transcript produced by transcription service.

1                          <u>APPEARANCES (VIA ZOOM)</u>:

2

3   FOR SPHERE 3D CORP:              HUNTON ANDREWS KURTH
                                     Ashley Harper, Esq.
4                                    Brandon Bell, Esq.
                                     600 Travis Street
5                                    Suite 420
                                     Houston, TX  77003
6                                    713-220-3631

7                                    Gregory Wolf, Esq.

8   FOR CORE SCIENTIFIC:             WEIL GOTSHAL, ET AL
                                     Theodore Tsekerides, Esq.
9                                    767 Fifth Avenue
                                     New York, NY  10153
10                                   212-310-8000

11

12  (Please also see Electronic Appearances.)

13

14

15

16

17

18

19

20

21

22

23

24

25

1    **HOUSTON, TEXAS; WEDNESDAY, SEPTEMBER 13, 2023; 1:08.M.**

2          THE COURT:  All right, good afternoon, everyone.

3    This is Judge Jones.  We're having a problem with the camera

4    so give us just a minute.  I need -- we were having

5    difficulty getting the lectern camera up.  So we reset.  It

6    should only take a minute or so.

7          I will say I've activated the hand-raising

8    feature.  If you know you're going to be speaking, if you go

9    ahead and give me a five star and that way once we get the

10   camera up, we can get started right away.

11      (Pause in the proceedings.)

12          THE COURT:  And Mr. Wolf, I saw you raise your

13   hand.  That tells me that you want to speak, but I've got to

14   get a five star on your telephone.  That will open up your

15   line.

16      (Pause in the proceedings.)

17          THE COURT:  There we go.  Thank you.

18          MR. WOLF:  Thank you, Judge.

19      (Pause in the proceedings.)

20          THE COURT:  We ran over a bit on class today.

21   It's -- today is Wednesday.  It's I'm hard to shut up once I

22   get going.

23      (Pause in the proceedings.)

24          THE COURT:  Then officially good afternoon,

25   everyone.  This is Judge Jones.  The time is 1:12 Central.

1   Today is September the 13th, 2023.  This is the docket for
2   Houston, Texas.
3          On the 1:00 o'clock docket we have the jointly
4   administered cases under Case No. 22-90341, Core Scientific,
5   Inc.
6          Folks, please don't forget to record your
7   electronic appearance.  That's a quick trip to the website,
8   a couple mouse clicks.  You can do that at any time prior to
9   the conclusion of the hearing.  But it is the way that we
10  note your official appearance this afternoon.
11         Since we do have folks both in the courtroom as
12  well as on GoToMeeting, for those of you in the courtroom,
13  if you do rise to speak, just please make sure that you come
14  to the lectern.  It's the only place we have a camera and I
15  want you to both be seen and be heard.
16         For those of you who are on GoToMeeting, as I
17  indicated earlier, I have activated the hand-raising
18  feature.  If you decide to speak and you haven't already
19  done so, I need a five star on your phone.  You only need to
20  do that once.  The hand-raising feature on GoToMeeting just
21  lets me know that you would like to be heard.
22         First time that you do speak, and I only need it
23  once, if you would please state your name and who you
24  represent.  That serves as a good point of reference for the
25  court reporters in the event a transcript request is made.

1              And finally, we are recording this afternoon using

2    CourtSpeak.  I will have the audio of the hearing up on the

3    docket available for your download shortly after the

4    conclusion of today's hearing.

5              All right, with that, Ms. Harper are you taking

6    the lead this afternoon?

7              MS. HARPER:  Good afternoon, Your Honor.  Ashley

8    Harper, Hunt Andrews Kurth on behalf of Sphere 3D.  I'm

9    joined in the courtroom by my colleague Brandon Bell and on

10   the line virtually is my co-counsel Gregory Wolf who will be

11   taking the lead today.

12             THE COURT:  All right.  Thank you.

13             MS. HARPER:  Thank you for accommodating us today

14   on an emergency basis.

15             THE COURT:  No, absolutely.  Thank you.

16             Mr. Wolf, good afternoon.

17             MR. WOLF:  Good afternoon, Your Honor.  So may I

18   begin, or do you want to speak to my adversary first as

19   well?

20             THE COURT:  No, if you would just give me a quick

21   update with where we are.  For all of the issues in the

22   motion still outstanding, have we made any progress, just.

23   I don't want to tread where resolution has been reached.

24             MR. WOLF:  Yes, sir.  Sure.  So I would also note

25   also on the line is Sphere CEO, Patty Trumpeter (phonetic).

1          So we made progress on many issues, but

2    unfortunately not the issues that were raised in the motion.

3          THE COURT:  Okay, then did you want to make any

4    opening comments?  I'll give Mr. Tsekerides the same

5    opportunity.  But I've read it.

6          Quite frankly I don't know who drafted it.  I have

7    a suspicion who drafted it.  This was done in the way I like

8    to see it.  It's just straightforward.  It's sequential.  It

9    didn't take me very long to get ready at all.

10          So I'm -- however you'd like to proceed, I'm open

11    and ready to go.

12          MR. WOLF:  You know, Your Honor, I think we've set

13    forth our conditions in the motion.  I'm happy to give my

14    speech, but I think it would be very similar to what's in

15    the motion.

16          THE COURT:  Okay.

17          MR. WOLF:  I guess I would ask do you have any

18    questions based upon what you read?

19          THE COURT:  Not at all.  What I intend on doing

20    after I give Mr. Tsekerides an opportunity to speak, is I'm

21    just going to march right through them sequentially.  I'm

22    going to hear from each of you and I'm going to make a

23    ruling.

24          MR. WOLF:  Okay.

25          MR. TSEKERIDES:  Okay.  Theodore Tsekerides for

1   the Debtors for Weil Gotchal.  We also filed a cross-motion.

2   I don't know if you saw that, Your Honor.

3            THE COURT:  I did not see that.  When was that

4   filed?

5            MR. TSEKERIDES:  About an hour ago.

6            THE COURT:  Oh, I was in -- I have class in my

7   courtroom every Wednesday at noon.  So no, I have not seen

8   that.  But we will -- let's go through 1221 and then if we

9   need to take a break and I can -- I will do that and read

10  1222 and then we can work through that one.

11           MR. TSEKERIDES:  Okay.  And 1222 is our motion.

12  It's also the opposition.  But I can argue it just as well

13  from here.

14           THE COURT:  All right.  So do you want to give me

15  any general comments or shall we just move directly to the

16  issues?

17       (Multiple speakers.)

18           MR. TSEKERIDES:  I don't think -- sorry, go ahead.

19  No. please.  That's all right.  And then you can come back

20  on.

21           Yeah, we had another issue that we were able to

22  resolve this morning that ended up not being in our

23  cross-motion.  So we did make some progress there.

24           I mean, I know you haven't read it yet, but that

25  was, I think, helpful.  We had a lot of issues starting the

1  day yesterday and got it down to these handful.

2          So I think it's positive, but you know we still

3  have some disagreements.

4          THE COURT:  All right.  So fair enough.  So let's

5  just do this:  As I understand it, the first issue that was

6  brought by Sphere was the request for admission number two.

7  Everybody agree that that's the first issue identified?

8          MR. TSEKERIDES:  That's correct.

9          THE COURT:  So let me tell you -- this is very

10  easy for me.  I understand the potential for ambiguity in

11  using the words "sign off."  I do understand and I really

12  appreciate the inclusion of the exchange.

13          Does anyone have any objections if we substitute

14  the word "approved" for "signed off"?

15          MR. WOLF:  No objection from Sphere.

16          THE COURT:  Mr. Tsekerides, if -- unless you want

17  to make an argument that I can't conceive of, but I know

18  you're that creative.  To me that's just really easy.

19          The question would then be admit that you approved

20  Sphere's press release dated October 13th, 2021.  And that's

21  either a yes or no.

22          MR. TSEKERIDES:  Okay, we'll respond to that.  So

23  I agree with you and we'll respond to that, you know, in the

24  next couple of days with a no.

25          THE COURT:  All right.

1           MR. TSEKERIDES:  But okay.

2           THE COURT:  Well we'll talk about deadlines when

3   we get to the end.

4           Mr. Carlson, and I don't mean to give you busy

5   work, but this is important.  Could I ask you just to take

6   some notes so that there's a clear path forward?

7       (No audible response.)

8           THE COURT:  All right, thank you.

9           All right, so the next ones are the

10  interrogatories.  And I really want to understand, Mr. Wolf,

11  what it is that you are looking for.

12          MR. WOLF:  Sure.  So what I'm looking for is their

13  contention on what the offset would be.

14          THE COURT:  Right.

15          MR. WOLF:  And I don't think that can be answered

16  through the production of documents.  And I'll give you the

17  inverse.

18          If we had been asked what damages are you

19  claiming, and I just said, well, look at my -- we're just

20  going to produce a bunch of documents.  Figure it out for

21  yourself what our lost revenues are, my adversaries would be

22  the one in the courtroom today saying it deserves to know

23  what damages we're going to be claiming.  We deserve to know

24  what offset they're going to be claiming in support.

25          THE COURT:  All right.  First let's start --

1   Mr. Tsekerides, is there going to be the -- is there going

2   to be an assertion of an offset?

3           MR. TSEKERIDES:  There is, Your Honor.  And I

4   think if you look at our responses we did say the topic

5   areas and we have documents that we're going to produce that

6   will show how much was spent for XYZ building.

7           But, you know, putting all that together, and

8   putting it in a number is going to be a difficult thing to

9   do just to put in a narrative.  But what we said we could do

10  when we put the documents together, we'll say -- because I

11  think one of their objections was they don't want to sift

12  through things.

13          They don't have to sift through things.  I mean,

14  we'll produce documents and then we'll identify them because

15  that's what Rule 33(d) provides.  It says, okay, these, you

16  know, 27 documents shows that we spent you know, Gimble on a

17  building that was meant for you guys is responsive to

18  interrogatory 4, 9 and 10.  That's what we propose to do.

19          THE COURT:  All right, so I'm going to consolidate

20  interrogatories 4, 9 and 10 and you're going to state the

21  basis and amount of each offset that you're going to assert?

22  Okay.

23          MR. WOLF:  And you want to address timing at the

24  end, Your Honor?

25          THE COURT:  Yes.

1          MR. WOLF:  Okay.

2          THE COURT:  All right.  The harder one for me was

3   the interrogatory number 3.  And I will tell you Mr. Wolf, I

4   just didn't understand it.  So if you could tell me what it

5   is you're really asking for, then we can have a

6   conversation.

7          MR. WOLF:  Sure, what I'm after is a complete

8   statement of what the requirements were.  And what they say

9   is here are six requirements among other things.  And if

10  they know what the requirements were, there shouldn't be

11  among other things.  It should just be six requirements and

12  then I think it's fair game to get the basis.

13          And the reason for that -- sorry.

14          THE COURT:  So let me ask you do you have your

15  pleading in front of you or can you access it?

16          MR. WOLF:  Sure.  Which?  Our same objection?

17          THE COURT:  Paragraph -- yes.  1221.

18  Paragraph 16, page 7.

19          MR. WOLF:  I'm not sure I have it in front of me,

20  Your Honor.

21          THE COURT:  I can put it up.  I just didn't know.

22  Hold on.

23          MR. WOLF:  Sure.

24      (Pause in the proceedings.)

25          MR. TSEKERIDES:  Are you talking about their

1 filing, Your Honor?

2         THE COURT:  Yes.

3         MR. WOLF:  Oh, my filing.  Oh, I can -- sorry.  I

4 thought you meant our proof of claim.  I can bring that up

5 momentarily.

6         THE COURT:  So should be on the screen.

7         MR. WOLF:  Yeah, I have it up as well, Your Honor.

8         THE COURT:  Okay.

9         MR. WOLF:  My apologies.

10         THE COURT:  All right, so I read paragraph 16 and

11 it says, "Interrogatory No. 3 asks what do you contend it

12 the meaning of the phrase, quote, 'as long as Sphere 3D Corp

13 satisfies'" insert the word "Core's requirements prior to

14 state the basis for your interpretation.'"

15         MR. WOLF:  That's fair.

16         THE COURT:  What is it?  Because I read that and I

17 could give you a whole lot of answers, none of which would

18 be helpful, that would be defensible.  So are you really

19 looking for is the actual requirements that they're going to

20 rely on with respect to the --

21         MR. WOLF:  I can --

22         THE COURT:  Sorry, go ahead.

23         MR. WOLF:  Yes, that's fair, right.  That what's

24 going to happen is they're going to say there are six

25 requirements and if someone testifies, you know, we met six

1  requirements, and then there's not going to be another

2  witness who says, wait, hold on, hold on, there was a

3  seventh requirement.

4          THE COURT:  Yeah, so let's --

5          MR. WOLF:  That's what we're looking to avoid.

6          THE COURT:  All right.  So Mr. Tsekerides, I --

7  again, the way that it was phrased I understood.  I

8  understood the objection.  Quite frankly you could have

9  answered something that had -- that was totally non-

10 responsive and justified it with the way that that was

11 asked.

12          But I appreciate the way you did it.  Here's

13 what -- and I'm happy to hear anything that you want to say.

14 But here's what I'm going to want.

15          If you're going to rely upon a -- if you're going

16 to rely upon a -- anything that you say constitutes a

17 requirement, I want you to identify it.

18          If you don't identify it, you can't rely on it.

19 Fair enough?

20          MR. TSEKERIDES:  Understood.

21          THE COURT:  All right.

22          MR. WOLF:  Thank you, Your Honor.

23          THE COURT:  All right.  And I think if we move to

24 request for production of number 13.  Mr. Wolf, I'm going to

25 need some help as to what you're really trying to get to.

1          MR. WOLF:  Sure.  What we're trying to get to is

2   that Core had a reason to try to come up with pretextual

3   reasons to not honor the contract.  And the reason in this

4   case was there were rising electrical costs that they were

5   not able to pass on the Sphere under the agreement.

6          And thus, they instead said we're not going to

7   honor the rate any more.  You're have to exceed to a higher

8   rate that basically encompasses these charges that they were

9   trying to pass on.

10          THE COURT:  Okay.  And so what is it that you want

11   -- what is it that you're looking for in the request?

12          MR. WOLF:  I'm really looking for internal

13   communication discussing this issue.  I think we're already

14   getting communications to Sphere and to Griffin, as well.

15   And so really I'm looking for any communication talking

16   about passing these costs on to Sphere.

17          I don't think this is going to (indiscernible).  I

18   don't think this is going to be a heavy lift, right.  We've

19   only asked for document submission.  I'm not asking for all

20   documents in the communications.

21          THE COURT:  No, got it.  I just -- and again, I'm

22   going to go back.  You're going to find that I'm a

23   relatively literal person.  I want to understand exactly

24   what it is because what you just asked for is not how I read

25   13.  So what I understand you're asking for is you're

1   looking for internal -- non-privileged internal

2   communications that reference the passing along or the

3   passing through of additional costs?

4           I mean, that was a question mark.

5           MR. WOLF:  Yes, correct.  And there would also be

6   an attempt to do it.  And so it didn't actually have to

7   happen.  It could be a discussion of, do we pass these costs

8   on or not?

9           THE COURT:  Okay, Mr.  Tsekerides, do you want to

10  respond to that because it's more.

11          MR. TSEKERIDES:   I do.

12          THE COURT:  All right.

13          MR. TSEKERIDES:  I do.  And also -- I appreciate

14  Your Honor hasn't had a chance to look at our opposition,

15  but this is really coming down to power pass-through issues

16  where you might have heard some of that before from some

17  other counterparties.

18          And that, we have a lot of issues in this case.

19  That's not one of them.  So the reason why we think this is

20  irrelevant is, I mean, multi-fold.

21          Number one, whether or not any of that happened,

22  at the end of the day, they're claiming they had a contract,

23  Order Number 2, and we're saying they never did.  And the

24  parties were working on a whole new contract.

25          So whatever we were asking for more money, they're

1    going to get documents on this new contract.  We've already

2    agreed to that.  We read this as a power pass-through issue

3    and an attempt by them to try to sort of gin up what other

4    people have done.

5         And we don't think that's relevant here because

6    Griffins never raised it, we've never claimed nobody paid a

7    power pass-through.  So the whole PPT, as we call it, issue

8    is not relevant to this case.

9         They're going to get other documents already that

10   reflect the communications back and forth.  I would assume

11   we have internal non-privilege documents that talk about

12   what we're going to offer in a contract.

13        But to the extent -- and we read this as that PPT

14   issue -- we think that's not relevant.

15        THE COURT:  Mr. Wolf?

16        MR. WOLF:  So I don't -- I think it is relevant

17   because the PPT issue is that they wanted to pass these

18   costs on to Griffin and Sphere.  And they just found a

19   different way of doing it which was demanding a higher rate

20   or saying we're not going to honor the contract.

21        THE COURT:  All right.  Based upon what I've read

22   and what I've heard, I'm going to sustain the objection to

23   response for -- request for production No. 13.  All right.

24        And so you're telling me, Mr. Tsekerides, that

25   what I now need to do is I need to take a break.  And I'm

1  assuming Mr. Wolf, have you had the opportunity to read

2  1222?

3          MR. WOLF:  Very briefly, but I already -- I had a

4  preview of the issue yesterday.

5          THE COURT:  All right.  Then Mr. Tsekerides, what

6  I'd like to do is I'd like to take, again just because I

7  haven't read it, is to take, let's say, a 15-minute break.

8  Let me read it and resume at 1:45 Central unless you have a

9  more efficient way of dealing with it.

10          MR. TSEKERIDES:  No, I think it would be helpful

11  for you to look at it and it's really just the second part

12  because the first part is the opposition to the motion we

13  just we just finished.

14          THE COURT:  Okay.

15          MR. TSEKERIDES:  So it's just a few pages.  Can we

16  just stay up on the --

17          THE COURT:  Absolutely.  And that would be great.

18  And just for those folks who are watching and listening,

19  you're telling me isn't going to take me 15 minutes because

20  I don't need to read the first part.

21          MR. TSEKERIDES:  (Indiscernible).

22          THE COURT:  All right.  Then let's do this:  It's

23  1:29 for those folks who are listening.  If you want to stay

24  on the line that's great.  You'll see me pop back on for

25  those folks, but want to step off and come back.  It'll be

1  no sooner than 1:35 Central Time.  All right?

2         MR. TSEKERIDES:  Thank you, Your Honor.

3         THE COURT:  All right, thank you, folks.  I'll be

4  back again no sooner than 1:35.

5     (Recess taken from 1:29 p.m. to 1:36 p.m.)

6         THE COURT:  All right, we are back on the Record.

7  The time is 1:36 Central.

8         Mr. Tsekerides, I've now read your pleading.  I've

9  also specifically read request for production 15 and 20, as

10 well as interrogatories 2 and 12.

11        Any general comments you wanted to make or shall

12 we just go as we did with Mr. Wolf?

13        MR. TSEKERIDES:  I'm happy to just walk through

14 like we did.

15        THE COURT:  All right, thank you.  So let me pull

16 up --

17        MR. TSEKERIDES:  And I think, if you don't mind,

18 request for production 20 probably sets the stage best for

19 the other one.  They all four largely relate to this merger

20 agreement communications that we're looking for.

21        THE COURT:  Well, I will tell you this:  I have

22 fewer questions about 20 than I do about 15.  So I'm more

23 than happy to start with 20.

24        MR. TSEKERIDES:  Yeah and I think, you know, as

25 we, you know, we can talk about 15.  But I think really what

1  they're both designed to get and the issue -- probably more

2  importantly, the issue in dispute between us are these

3  communications about the merger agreement's failure, why it

4  didn't go through.

5          And our view on that is, look, Griffin and Sphere

6  were supposed to merge.  That much we knew.  That was out

7  even before we did the agreement with Griffin.  They didn't.

8          And our view was, well, maybe you would have

9  gotten the rights if that happened, but that never happened.

10 And so what those two were talking about, you know, maybe

11 Griffin said, well, wait.  You guys don't have the

12 wherewithal to get these minors that I'm suppose to deploy,

13 you know, with Core.

14         And that would have been the merger agreement

15 failed like January or February of 2022.  That is a core --

16 pardon the pun, but a core issue in this case, like if they

17 said that to each other.  If Griffin said that to Core or

18 Sphere said to Core look these deals fell through.  I

19 couldn't get the financing.  The lenders wouldn't give me

20 the money. We can't do the merger.  That's relevant.

21         I'm entitled to that information.  And that's

22 really largely what we're looking for.  What was that back

23 and forth?  They've already agreed if Core was mentioned in

24 the negotiations -- so we worked that out yesterday --

25 they'll give us -- they'll give us those documents.

1          But I'm really looking for the back and forth

2   between the two of them on the reason why the merger didn't

3   happen.  Now they can -- they'll produce documents, maybe in

4   be effect the reason was nothing to do with anything about

5   inability to raise money, inability to buy miners.

6          But I'm entitled to probe that because that's one

7   of the arguments we're making.  That's one of our defenses

8   in this case that these guys didn't have the wherewithal

9   even if Sphere had rights under the contract, they could not

10  have performed.  And that's really the nub of what we're

11  after.

12          THE COURT:  All right.  Mr. Wolf?

13          MR. WOLF:  Sure.  So, let me set the table, Your

14  Honor.  There's no dispute the merger did not occur and you

15  know, there was this clause in the delegation agreement that

16  Griffin -- all Griffin's rights would have passed to Sphere

17  if the merger had occurred from (indiscernible) occurred.

18          And I want to make clear, we're not trying to use

19  the merger as a shield if Core is mentioned in the context

20  of merger discussions, it's getting produced.  If an

21  assignment issue is mentioned in the context of merger

22  discussions, it's getting produced.

23          What I object to is doing a search, just a hunt

24  related to the merger and the only real grounds of relevance

25  in hearing is because the merger didn't go through, maybe it

1  will reveal that Sphere was in poor financial condition.

2          You know, I would dispute that that is really

3  relevant.  I think what's more relevant is how the parties

4  actually performed under the contract.

5          But at best it's borderline and we're already

6  producing documents that really go to the heart of this

7  issues.  We've agreed to produce and I'm going give you some

8  answers, Your Honor, or some examples.

9          We've agreed to produce documents reflecting how

10 many miners Sphere had at a given point.  We've produced

11 documents that are going to show its efforts to raise

12 capital.  We've agreed to produce documents showing its

13 financial condition.  And we've agreed to produce documents

14 reflecting communications with folks who were selling at

15 miners.

16          So the notion that the failed merger is going to

17 reveal better or more than those categories of production

18 that Sphere didn't have the wherewithal to perform more than

19 poor financial health, you're really going through it a very

20 oblique way and a very burdensome way.

21          A merger has a lot of communications.  It has a

22 lot privilege documents.  It has a lot of lawyers involved.

23 So, we would submit that this is really not an appropriate

24 area for discovery and I would add one more thing, Your

25 Honor.

1          I think you saw our request to try to keep them

2     targeted, in line with what you instructed.  I think our

3     adversaries have gone much further than we have.  In the

4     event that you order this discovery, we really don't want to

5     hear complaints from the other side about the scope of

6     discovery going forward.

7          THE COURT:  All right.  Based upon what I've

8     heard, I'm going to sustain the objection to 15.  I'm going

9     to modify 20 and require the production of all documents and

10    communications relating to the reasons why the merger

11    contemplated by the merger agreement was not consummated

12    and/or did not close.

13         I'm going to narrow it to that one topic as

14    opposed to all documents of communications related to the

15    merger.  All right?

16         MR. WOLF:  Okay.

17         MR. TSEKERIDES:  And sorry, Your Honor, what --

18    and the resolution on the interrogatories.

19         THE COURT:  Well, we haven't gotten to it yet.

20         MR. TSEKERIDES:  Oh, I apologize.

21         THE COURT:  All right, Mr. Tsekerides, let me pull

22    up Exhibit C so I have the interrogatories in front of me.

23      (Pause in the proceedings.)

24         THE COURT:  All right.  Mr. Tsekerides, you want

25    to -- you want to do the same thing with respect to 2 and 12

1    that you did with the request for production?

2            MR. TSEKERIDES:  I think so.  But I think with 2,

3    you know, with the understanding that 2 and 12 -- 2 refers

4    to identify people.  Right, and one of the topics is this

5    topic.

6            And 12 really is the interrogatory version of the

7    document request which talks about identifying details of

8    the reasons why the merger -- even exactly what you just

9    said, Your Honor.  The reason why the merger didn't happen.

10            THE COURT:  Right.

11            MR. TSEKERIDES:  So, you know, we think that they

12    should have to respond to number 12.  But we think

13    Rule 33(d) if they have documents that they could point to,

14    would be fine.  But if they don't, then they should explain

15    to us in the narrative form in response to number 12.

16            But we'd be happy with 33(d) if the documents

17    actually, you know, respond to that.

18            THE COURT:  All right.  Mr. Wolf?

19            MR. WOLF:  So, based on the content of your

20    ruling, I sort of see where the wind is blowing.  What I

21    would say is for the identification of people, it should be

22    limited to the topic you've identified, which is the reasons

23    for the merging -- merger collapsing.

24            And then 15 will -- or 12 whatever it is -- we'll

25    answer.

1            THE COURT:  All right, so again and I think that

2   let me work backwards.

3            I think the 12 is an appropriate interrogatory and

4   consistent with what I've done.  So I'll overrule the

5   objection to 12.

6            With respect to 2, I'm perfectly happy with that

7   resolution.  I will just tell you I didn't know how in the

8   world 2 the way it's written could actually be complied

9   with.

10           And so if the issue is that will identify persons

11  that have knowledge, documents, or information concerning

12  the reasons why the closing didn't occur, I'm perfectly

13  comfortable with that outcome.

14           Mr. Tsekerides, with just not asking you if you

15  agree with it, but just given what I've done, do you think

16  that would be consistent with what I think the appropriate

17  scope is?

18           MR. TSEKERIDES:  I do.  And just so we're clear,

19  as it relates to number 2, we're talking about with respect

20  to the merger agreement piece.  Because they obviously --

21  they're not going to change their responses for the other

22  stuff.  We're just talking about the merger.

23           Yeah, I think what you said is entirely

24  appropriate given your ruling and I think that's consistent

25  with an approach and I think that's what we should do.

1          THE COURT:  All right.

2          MR. WOLF:  Yeah and I'm not sure the list of

3    people identified is going to change much.

4          THE COURT:  Okay.

5          MR. TSEKERIDES:  And that's fine.

6          THE COURT:  I don't know what you've done or what

7    you haven't done.  So let me ask this, with the narrowing

8    that has occurred -- because I told you we would come back

9    around to timing.  I just wanted to see where this was going

10   to fall out.

11         Look, I know you both.  I trust you.  I know your

12   reputations.  You-all want to -- you want me to pick a date,

13   do you want to pick a date between the two of you?  Do you

14   want to step off line for a minute?  Do you want to make

15   argument and I pick a date?

16         I'm happy on either path. I just want what makes

17   sense.

18         MR. TSEKERIDES:  I mean, since we're probably the

19   ones that have to do more on the interrogatories -- on the

20   one with the approved I can do like Friday.

21         The ones with the damages, I would ask for a week,

22   Your Honor.

23         THE COURT:  Mr. Wolf?

24         MR. WOLF:  A week sounds perfect.

25         THE COURT:  All right, and then with respect to

1  any supplementations, changes or answers that you're going

2  to do, you want to just -- so we don't get lost in the

3  dates, just make everything due in a week?

4          MR. WOLF:  That's sound like an appropriate

5  resolution, Your Honor.

6          THE COURT:  Mr. Tsekerides, you okay with that?

7          MR. TSEKERIDES:  That is fine and I forgot about

8  the requirements one, if I can have a week on that one, too?

9          THE COURT:  Everything just gets done in a week.

10         MR. TSEKERIDES:  Okay.

11         THE COURT:  And so that way --

12         MR. WOLF:  So, --

13         THE COURT:  Mr. Wolf, yes, sir.

14         MR. WOLF:  Sorry, just to be clear, all will be

15  due the 20th?

16         THE COURT:  That would be a week in my book.

17         MR. TSEKERIDES:  Mine, too.

18         THE COURT:  I guess you could have an eight-day or

19  10-day calendar.  But no using seven-day calendar, 20th is

20  the day.

21         And let me just make sure.

22         MR. TSEKERIDES:  Thank you, Your Honor.

23         THE COURT:  I want to make sure this is serious

24  issue.  I want to make sure I'm not stepping on top of any

25  holidays.

1        (Pause in the proceedings.)

2            MR. TSEKERIDES:  Not from me at least.  I can't

3  speak for everyone on my team.  But not for me.

4            THE COURT:  Got it.  So my understanding is Rosh

5  Hashanah is like Friday or Saturday.  I should have it

6  marked on my calendar and I just don't.  And I apologize for

7  that.

8            On either team if I'm stepping on top of a holiday

9  with a due date of the 20th, could you please text or scream

10 at Mr. Tsekerides or Mr. Wolf respectfully?

11           MR. WOLF:  Your Honor, if it turns out someone has

12 an obligation, I'm sure Ted and I can work it out

13 (indiscernible).

14           THE COURT:  All right, fair enough.

15           MR. TSEKERIDES:  Yeah, agreed.

16           THE COURT:  Then folks what I intend on doing is

17 just making a simple docket entry that the resolution of the

18 competing motions is as announced on the Record, pursuant to

19 7052.  Is that sufficient for both of you just in case we

20 need to go back and visit any of these again?

21           MR. WOLF:  Yes, Your Honor.

22           MR. TSEKERIDES:  Yes, Your Honor.

23           THE COURT:  All right.  Thank you.

24           Anything else folks?

25           MR. WOLF:  That's it.

1          MR. TSEKERIDES:  Thank you for your time, Your

2   Honor.  Appreciate it.

3          THE COURT:  Thank you-all.  Have a great day.

4   We'll be adjourned.

5       (Hearing adjourned at 1:48 p.m.)

6                        * * * * *

7          *I certify that the foregoing is a correct*

8   *transcript to the best of my ability due to the condition of*

9   *the electronic sound recording of the ZOOM/video/telephonic*

10  *proceedings in the above-entitled matter.*

11  */S/ MARY D. HENRY*

12  *CERTIFIED BY THE AMERICAN ASSOCIATION OF*

13  *ELECTRONIC REPORTERS AND TRANSCRIBERS, CET**337*

14  *JUDICIAL TRANSCRIBERS OF TEXAS, LLC*

15  *JTT TRANSCRIPT #67684*

16  *DATE FILED:  SEPTEMBER 20, 2023*

17

18

19

20

21

22

23

24

25