# Exhibit 15

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| CORE SCIENTIFIC, INC., *et al.,* | § § | Case No. 22-90341 (DRJ) |
| | § § | (Jointly Administered) |
| Debtors.[1] | § § § | |

## REPLY IN FURTHER SUPPORT OF DEBTORS' MOTION
## FOR SUMMARY JUDGMENT WITH RESPECT TO
## PROOF OF CLAIM NOS. 358 AND 359 FILED BY SPHERE 3D CORP.

Core Scientific Operating Company f/k/a Core Scientific, Inc. ("**Core**")[2] and its debtor affiliates in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"), hereby file this reply to *Sphere 3D Corp.'s Objection to Debtors' Motion for Summary Judgment with Respect to Proof of Claim Nos. 358 and 359 Filed by Sphere 3D Corp.* (ECF No. 1040) (the "**Sphere Objection**").[3]

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions, VII, LLC (3198). The Debtors' corporate headquarters and service address is 210 Barton Springs Road, Suite 300, Austin, Texas 78704.

[2] As discussed in the First Day Declaration, Core Scientific, Inc. changed its name to Core Scientific Operating Company in January 2022. *See* First Day Decl. ¶ 31. Therefore, any claims against Core Scientific, Inc. are more properly claims against Core Scientific Operating Company.

[3] Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the *Debtors' Motion for Summary Judgment with Respect to Proof of Claim Nos. 358 and 359 Filed by Sphere 3D Corp.* (ECF No. 959) (the "**Motion**"). Capitalized terms used but not otherwise defined herein or in the Motion have the meanings ascribed to such terms in *Debtors' Objection to Proofs of Claim Nos. 358 and 359 Filed By Sphere 3D Corp.* (ECF No. 869) (the "**Objection**"), to which the Motion likewise cross references. *See* Mot. ¶ 1 n. 3.

## Preliminary Statement

1.      In the Motion, the Debtors demonstrated, based on the plain and unambiguous language of the Gryphon Hosting Agreements, that Sphere has no rights under those agreements.  Sphere is unquestionably not a party to the agreements and there is nothing in the agreements even suggesting, let alone stating, that Gryphon was acting as an agent—or on behalf of—Sphere.  And, as the Debtors also demonstrated through the declaration of Mr. Cann, Sphere simply did not satisfy the contractual requirements that it needed to satisfy as a precondition to securing any rights under the agreements.  In response to this claim-dispositive legal issue, Sphere offers only conclusory statements and blunderbuss arguments that boil down to two points: (1) summary judgment is procedurally improper because the parties have not yet taken discovery, and (2) there is a genuine dispute as to whether Sphere satisfied the contractual requirements upon which any assignment of Gryphon's rights were conditioned (the "**Requirements**").  Neither of these contentions are sufficient to defeat the Motion.[4]

## Argument

### A.      Discovery Is Not A Procedural Prerequisite To Summary Judgment

2.      Sphere argues that "as a matter of procedure," the Court should deny the motion "out of hand" because the parties have not yet taken discovery.  *Sphere Obj.*, ¶¶ 4, 60.  Discovery, however, is not a procedural prerequisite to summary judgment.  *Dominick v. Mayorkas*, 52 F.4th 992, 995 (5th Cir. 2022) ("Rule 56 does not require that any discovery take place before summary judgment can be granted…."); *see Smith v. State*, No. H-12-469, 2014 WL 670751, at *9 (S.D. Tex. Feb. 20, 2014) (granting summary judgment over nonmovant's claim that

---

[4] Sphere also contends that fact issues preclude granting the Debtors' alternative request for partial summary judgment relating to the Limitations of Liability Provisions in the MSA.  *Sphere Obj.*, ¶10.  Those arguments are addressed separately below and are equally deficient.

case was prejudiced by movant's failure to participate in discovery). That the parties have not taken discovery is therefore not a basis for denying the Motion. This makes sense, and protects a party, like Core, from having to bear the costs and burden of discovery where there is no genuine dispute as to any material fact and judgment is appropriate as a matter of law.

3. Sphere also cites Federal Rule of Civil Procedure 56(d), applicable here under Rule 7056 of the Federal Rules of Bankruptcy Procedure, as a procedural basis for denying or deferring the Motion. *Sphere Obj.*, ¶¶ 61-62. Rule 56(d)—titled "When Facts Are Unavailable to the Nonmovant"—is a remedy for when a party cannot adequately defend against a motion for summary judgment without taking discovery. *Dominick*, 52 F.4th at 995. Under Rule 56(d), "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may . . . defer considering the motion or deny it," among other remedies, like allowing time to obtain declarations or take discovery. Fed R. Civ. P. 56(d).

4. To secure relief under Rule 56(d), the nonmovant "must show 'both why it is currently unable to present evidence creating a genuine issue of fact and how a continuance would enable the party to present such evidence.'" *Smith*, 2014 WL 670751, at *9 (quoting *Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 719 (5th Cir. 1999)). Courts deny requests for relief pursuant to Rule 56(d) when the nonmovant fails to demonstrate that the requested discovery could reveal a genuine dispute of material fact, or when the nonmovant should have in its possession the discovery that it purportedly needs. *See Mayo v. Hartford Life Ins.*, 220 F. Supp. 2d 714, 781-82 (S.D. Tex. 2002) (denying request for discovery where nonmovant failed to specify how additional discovery would reveal a genuine dispute of material fact), *aff'd*, 354 F.3d 400 (5th Cir. 2004); *Bishop v. City of Galveston*, 595 F. App'x 372, 377-78 (5th Cir. 2014) (affirming district court's decision to grant summary judgment without allowing discovery on a certain factual

3

issue identified by nonmovant where evidence on that issue should have been in nonmovant's possession).

5.　　Here, as relates to whether Sphere has any rights under the Gryphon Hosting Agreements, Sphere contends that it would take discovery on the following "relevant" issues: (1) what Core's "requirements" were for Gryphon's assignment to Sphere, (2) whether Sphere satisfied those requirements, (3) whether Core did not actually require that Sphere satisfy those requirements; and (4) whether Core understood Gryphon and Sphere entered into the Delegation Agreement. *Declaration of Gregory N. Wolfe in Support of Sphere 3D Corp.'s Opposition to Debtors' Motion for Summary Judgment* (ECF No. 1040-5) ¶ 5. For the reasons detailed below, discovery is not required to dismiss the Sphere Claim.[5]

**B.　　Core Is Entitled To Summary Judgment That Sphere Has No Rights Under The Gryphon Hosting Agreements**

6.　　Core's claim-dispositive argument is straightforward: Sphere has no rights under the Gryphon Hosting Agreements because it is not a party to those agreements, is not a third-party beneficiary of those agreements, and never satisfied the Requirements for any allocation of rights to Sphere under those agreements. *See Mot.* ¶¶ 24-27. As set forth in Order #2 to the MSA, executed between Core and Gryphon, "[Gryphon] is permitted to sub-lease, sub-license, assign, delegate or transfer the Agreement, Order 1 and Order 2, or any of its rights and obligations hereunder to Sphere 3D Corp. and thereunder without the prior written consent of [Core] ***as long as Sphere 3D Corp. satisfies [Core's] requirements prior to***." *Cann Decl.*, (ECF No. 960) Exhibit

---

[5] Sphere also suggests that Core somehow improvidently filed the Motion because it did not meet and confer with Sphere and because the parties agreed to a Stipulation and Agreed Order ("**Stipulation**") (ECF No. 956). *Sphere Obj.*, ¶ 3. Sphere is wrong on both counts. First, Core was not required to meet and confer with Sphere. Local Rule 7.1(D) is clear on this point, excluding from the meet-and-confer requirement motions filed under Rule 56 (among others). *See* S.D. Tex. Local Rule 7.1(D). Second, nothing in the Stipulation precluded Core from seeking summary judgment on legal issues that Core contends require no discovery to adjudicate. *See* Stipulation.

B, Order #2 (emphasis added) (hereafter "**Order #2**"). Core's entitlement to summary judgment on this issue thus turns on one question: did Sphere satisfy the contractual Requirements before any purported assignment by Gryphon to Sphere? The answer—as established by the uncontroverted evidence—is that Sphere did not. *Cann Decl.* ¶ 9 ("To date, Sphere has not satisfied Core's requirements in connection with any assignment to Sphere of Gryphon's rights or obligations under the Agreements.").

7.      To avoid summary judgment on this issue, Sphere must identify a genuine dispute of material fact that could allow a reasonable fact finder to rule in its favor. *See Gorman v. Verizon Wireless Tex., L.L.C.*, 753 F.3d 165, 170 (5th Cir. 2014). While Sphere packs its objection with the phrases "genuine dispute" and "material fact," and claims that "a single paragraph in a single declaration," is insufficient to support the Motion (*Sphere Obj.* ¶ 7), the fact remains that Sphere has not identified any genuine dispute of material facts, as to whether it satisfied the Requirements. Thus, the Motion should be granted.

### i.      There Is No Genuine Dispute That Sphere Failed To Satisfy The Requirements

8.      Sphere has failed to identify a genuine dispute concerning whether it satisfied the Requirements, which are an unambiguous contractual prerequisite to any purported assignment. To rebut Core's evidence, Sphere states that, "it is very much disputed that Sphere did not meet [the Requirements], or that Core actually required that they be met." *Sphere Obj.* ¶ 35. Beyond this conclusory statement, however, Sphere does not provide a shred of evidence that it actually satisfied the Requirements, or that Core ever affirmatively waived them. For example, none of the several declarations filed by Sphere, including the declaration submitted by its CEO, Patricia Trompeter, state that Sphere satisfied the Requirements. Nor has Sphere

5

submitted any evidence that Core ever affirmatively waived the Requirements. The silence from Sphere on this critical point is deafening and, in this context, dispositive.

9. While the facts must be viewed in the light most favorable to the nonmoving party, "[f]actual controversies are resolved in favor of the nonmovant 'only when there is an actual controversy—that is, when both parties have submitted evidence of contradictory facts.'" *Mayo*, 220 F. Supp. 2d at 726 (quoting *Laughlin v. Olszewski*, 102 F.3d 190, 193 (5th Cir. 1996)). Here, Sphere has not put forth any evidence to support a genuine dispute of material fact on its satisfaction of the Requirements, and instead relies on conclusory and irrelevant assertions that cannot defeat the Motion. *See Hemphill v. State Farm Mut. Auto. Ins. Co.*, 805 F.3d 535, 538 (5th Cir. 2015) ("Summary judgment may not be thwarted by conclusory allegations, unsupported assertions, or presentation of only a scintilla of evidence.") (citation omitted).

### ii. Sphere Is Not Entitled To Relief Under Rule 56(d)

10. Sphere blames its lack of evidence on Core, claiming that it needs discovery into, among other things, the contract negotiations and whether Sphere itself satisfied the Requirements. *Sphere Obj*. ¶ 62. Sphere has it backwards. Sphere does not need discovery from Core on whether Sphere satisfied the Requirements, as this information should be in Sphere's possession. Presumably, if Sphere did anything at all to satisfy the Requirements, it would know that and would have submitted some form of evidence to support that assertion. But, even though it submitted numerous declarations in opposition to the Motion, none of them assert that Sphere satisfied the Requirements or point to any evidence even hinting that Sphere did anything to satisfy the contractual preconditions to any assignment of rights from Gryphon to Sphere. Under these circumstances, the Motion must be granted. *See Bishop*, 595 F. App'x at 377-78 (affirming district court's decision to grant summary judgment without allowing discovery on a certain factual issue

6

identified by nonmovant where evidence on that issue should have been in nonmovant's possession).

### iii. The Nature Of The Requirements Is Not A Material Fact

11. Rather than address the dispositive issue of whether it satisfied the Requirements, Sphere instead argues that the nature of the Requirements—in other words, what Core specifically required of Sphere prior to assignment—is a contractual ambiguity that calls for discovery. *Sphere Obj.*, ¶¶ 7-8, 33-34, 62. On this basis, Sphere characterizes Core's evidence that the Requirements included creditworthiness, Know Your Customer considerations, and form of assignment (among other things) as the source of a genuine dispute of material fact. *Id*. Sphere is incorrect. Even if Sphere disputes what the specific requirements are, it cannot (and does not) dispute that Order #2 required that Sphere satisfy the Requirements as a contractual precondition to any assignment. This is fatal to Sphere's positions.

12. While Sphere attempts to read the Requirements provision out of the MSA by boldly claiming that Core never required compliance, Delaware law expressly prohibits this conclusion and unequivocally protects the integrity of the contract. *See, e.g., AM Gen. Holdings LLC v. Renco Grp., Inc.*, C.A. No. 7639-VCS, 2020 WL 3484069, at *3 (Del. Ch. June 26, 2020) (rejecting a party's proffered construction that would render a definition set forth in the contract at issue meaningless); *Branin v. Stein Roe Inv. Couns. LLC*, C.A. No. 8481-VCN, 2014 WL 2961084, at *4 n. 25 (Del. Ch. June 30, 2014) (same). And, as addressed above, none of the evidence submitted by Sphere undermines the applicability of the Requirements provision or the fact that Sphere never satisfied the necessary conditions. For example, Sphere points to declarations from its current and former CEOs in opposition (*Sphere Obj.* ¶ 35), but neither declaration contains even a hint of evidence that Sphere satisfied any requirement at all prior to Gryphon's purported assignment of rights. Nor does either declaration provide any evidence that

Core affirmatively waived the Requirements. Indeed, given that the document Sphere relies on for the assignment (what it refers to as the Delegation Agreement and what Core referred to as the Sub-License Agreement)[6] is dated the same date as Order #2 (October 5, 2021), it is hard to imagine, from a practical perspective, when Sphere would have satisfied the Requirements or when Core purportedly could have waived them. In any event, given that Order #2 unambiguously required that Sphere satisfy the Requirements prior to assignment and—as established through the unrebutted declaration of Mr. Cann—Sphere failed to do so, there is no genuine dispute that Sphere had to, yet failed to, satisfy the Requirements (regardless of any purported dispute as to what they are). The Motion should be granted.

### iv. Sphere Cannot Rely on Extrinsic Evidence To Create A Genuine Dispute of Material Fact

13. Unable to provide evidence of any kind that it met the Requirements, Sphere attempts to avoid summary judgment by resorting to assorted extrinsic evidence—none of which can help its cause. For example, Sphere claims that Core's CEO, Mike Levitt, purportedly acknowledged at a meeting in Miami in April 2022 (six months after the agreements with Gryphon were signed) that Sphere "had an enforceable contract with Core," as indirect evidence that Sphere had a contract with Core and, by extension, must have either satisfied the Requirements or received an (implicit) exemption from Core. *Sphere Obj.* ¶¶ 9, 28, 35. Sphere also argues that text messages from Core approving a press release on an agreement between Sphere and Gryphon demonstrate that Core approved of the assignment. *Sphere Obj.* ¶¶ 6, 9, 27. Sphere also points to a July 27, 2022 letter from Gryphon CFO to Core stating that Sphere "exclusively maintains any and all right and claim to the Deposit" to show that "Gryphon plainly believed it did what was required to

---

[6] Core is not a party to the Delegation / Sub-License Agreement.

assign its rights under Order #2 to Sphere." *Sphere Obj*. ¶¶ 9, 29, 39. While Core disputes these contentions, even accepting them as true for purposes of the Motion, they are not only irrelevant, they also fail to raise a genuine dispute of material fact sufficient to preclude summary judgment.

14. Under Delaware law, which governs the Gryphon Hosting Agreements, "[i]f a contract is unambiguous, extrinsic evidence may not be used to interpret the intent of the parties, to vary the terms of the contract, or to create an ambiguity." *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1997); *Exelon Generation Acquisitions, LLC v. Deere & Co.*, 176 A.3d 1262, 1273 (Del. 2017) (reversing decision on interpretation of contract where contract was unambiguous and court considered extrinsic evidence). It is "axiomatic" that courts "cannot consider extrinsic evidence in order to 'find' an ambiguity that is not apparent on the face of the contract." *Lennox Indus., Inc. v. All. Compressors LLC*, C.A. No. N19C-03-045 AML CCLD, 2021 WL 4958254, at *6 (Del. Super. Oct. 25, 2021) (rejecting plaintiff's argument that the contract was ambiguous because, among other things, the argument relied on extrinsic evidence), *aff'd*, 282 A.3d 1053 (Del. 2022).

15. Here, the agreement is clear that assignment is valid only "as long as . . . [Sphere] satisfies [Core's] requirements prior to." Order #2. Sphere cannot rely on extrinsic evidence to interpret this unambiguous contract provision. It means what it says and is a precondition to any assignment of rights to Sphere under the Gryphon Hosting Agreements. Not only are Sphere's conclusory pieces of extrinsic evidence therefore irrelevant in considering the meaning of this provision, they are also insufficient to defeat the Motion because they fail to speak to whether the contractual preconditions to assignment were satisfied, as none of those pieces of evidence say anything about the Requirements. Thus, Sphere's extrinsic evidence is irrelevant and, in any event, insufficient to defeat the Motion.

\*　　　\*　　　\*　　　\*　　　\*

16.　　In light of the above, Core is entitled to summary judgment on the claim-dispositive issue that Sphere has no rights under the Gryphon Hosting Agreements. Alternatively, if the Court declines to grant the Motion on this basis, the Court should rule that the unambiguous limitation of liability provisions set forth in the MSA (1) limit Core's total liability to one-months fee, and separately also (2) prevent Sphere from recovering for any lost profits; loss of business; loss of revenues; loss, interruption or use of data or loss of use of equipment; any consequential or indirect damages; or cost of cover, incidental, special, reliance, or punitive damages.

### C.　Alternatively, Core Is Entitled To Partial Summary Judgment That The Limitations of Liability Provisions Cap Core's Potential Liability To Sphere

17.　　In the event the Court determines that summary judgment is not appropriate on the claim-dispositive argument detailed above, Core is alternatively entitled to partial summary judgment on the applicability of two unambiguous contract provisions that each limit Core's potential liability to Sphere (assuming Sphere even has any rights under the Gryphon Hosting Agreements) on its claim for over $39 million, which breaks down as follows:

| | |
|---|---|
| Claim for Hosting Deposits | $34,383,713.00 |
| Claim for Alternative Hosting Costs | $5,000,724.06 |
| Claim for Storage Fees | $157,559.24 |
| Losses and damages arising from Core's failure to satisfy its obligations including, but not limited to, consequential, expectation, and reliance damages. | Unliquidated |

18.　　The MSA contains the following broad and unambiguous provisions that limit Core's potential liability to Sphere in both amount and type of damages (the "**Limitation of Liability Provisions**").

19.     First, the MSA limits the amount of Core's total liability to Sphere:

> NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS AGREEMENT, [CORE'S] TOTAL LIABILITY TO [SPHERE] IN THE AGGREGATE FOR THE ENTIRE TERM (REGARDLESS OF WHETHER THE CLAIMS ARE BROUGHT DURING OR AFTER THE TERM) **WITH RESPECT TO ALL CLAIMS ARISING FROM OR RELATED TO THE SUBJECT MATTER OF THIS AGREEMENT** (INCLUDING, WITHOUT LIMITATION, ATTORNEYS' FEES) **WILL NOT EXCEED AN AMOUNT EQUAL TO ONE (1) MONTHS FEE PAYABLE TO [CORE] PURSUANT TO THE APPLICABLE ORDER**.

*See Cann Decl.*, Exhibit A, MSA § 5.d (emphasis added) (hereafter the "**MSA**").

20.     Second, the MSA limits the type of damages that give rise to liability.

> NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS AGREEMENT, IN NO EVENT WILL EITHER PARTY BE LIABLE TO THE OTHER PARTY FOR **(I) LOST PROFITS; (II) LOSS OF BUSINESS; (III) LOSS OF REVENUES** (EXCEPT THAT [SPHERE] SHALL BE LIABLE FOR ANY FEES OR OTHER AMOUNTS OWED TO [CORE] UNDER THIS AGREEMENT); (IV) LOSS, INTERRUPTION OR USE OF DATA OR LOSS OF USE OF [SPHERE] EQUIPMENT; (V) **ANY CONSEQUENTIAL OR INDIRECT DAMAGES**; OR (VI) COST OF COVER, ANY INCIDENTAL, SPECIAL, RELIANCE, EXEMPLARY OR PUNITIVE DAMAGES (IF APPLICABLE), EVEN IF ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

*See MSA § 5.c.* (emphasis added).

21.     The MSA also unequivocally states: "THE LIMITATIONS SET FORTH IN SECTIONS 5 c AND 5 d WILL **APPLY TO ALL CLAIMS AND CAUSES OF ACTION, REGARDLESS OF WHETHER IN <u>CONTRACT</u>, <u>TORT</u>, <u>STRICT LIABILITY</u> OR <u>OTHER THEORY</u>**." *See id.* § 5.e. (emphasis added). And to avoid any confusion regarding the materiality of these provisions, the MSA provides: "Each party recognizes and agrees that the warranty disclaimers, limitations of liability and remedy limitations in this Agreement are materially bargained for by the parties." *See id.* § 5.f.

11

22.     Combined, as argued in the Motion, these provisions limit Core's total potential liability under the Gryphon Hosting Agreements in two primary ways. First, Section 5.d. limits Core's liability to the amount of one-months fee, which equals $84,658.94 in this case. *Mot.* ¶¶ 29-32. The MSA also further limits the *type* of damages that Sphere can recover against Core, providing that Sphere cannot recover for "(i) lost profits; (ii) loss of business; (iii) loss of revenues . . .; (iv) loss, interruption or use of data or loss of use of [Sphere] equipment; (v) any consequential or indirect damages; or (vi) cost of cover, any incidental, special, reliance, exemplary or punitive damages . . . ." MSA § 5.c. The MSA is clear that these provisions apply to "all claims and causes of action regardless of whether in contract, tort, strict liability or other theory." *Id.* § 5.e. If Sphere is correct that it has rights under the Gryphon Hosting Agreements, then it also is subject to the rest of the terms and conditions in those agreements, including the Limitation of Liability Provisions.

23.     Sphere argues that the Court cannot decide the applicability of the Limitation of Liability Provisions on summary judgment for three primary reasons: (1) Courts generally decline to decide the enforceability of a limitation of liability provision on summary judgment; (2) Core cannot limit its liability for bad faith or intentional misconduct; and (3) Core's determination that the one-months fee amounts to $84,685.94 is contractually incorrect. As addressed in detail below, Sphere is incorrect and none of these arguments is a basis for denying the Motion.

### i.     The Court Can and Should Decide Applicability Of The Limitation Of Liability Provisions On Summary Judgment

24.     Sphere argues that the Court should deny the alternative relief sought by the Debtors because Delaware courts ostensibly decline to decide the applicability of limitation of liability provisions on summary judgment, instead waiting for the parties to develop the relevant

12

factual record. *Sphere Obj.* ¶ 43 (citing cases). But, none of those cases stand for the proposition that summary judgment is never appropriate regarding the enforceability of a limitation of liability provision, which is always within the court's sound discretion. Here, several factors weigh in favor of granting the alternative relief requested in the Motion.

25.     First, that the provisions are broad and unambiguous militates in favor of the Court addressing their applicability as a matter of law and based on the four corners of the contract. While Sphere claims that extra-contractual evidence and further factual development is necessary, the caselaw is clear that when a contract is unambiguous, extrinsic evidence may not be used in its interpretation, including to "vary the terms of the contract, or to create an ambiguity." *Eagle Indus.*, 702 A.2d at 1232.

26.     Second, Core contracted for these robust protections and should be able to rely on them to limit its liability in connection with claims that the Limitation of Liability Provisions unambiguously preclude. For example, in addition to being capped by the amount of one-months fee, Sphere's claim for "alternative hosting costs" ($5,000,724.06); "storage fees" ($157,559.24); and "losses and damages arising from Core's failure to satisfy its obligations to the Claimant including, but not limited to, consequential, expectation, and reliance damages," are all the type of consequential or indirect damages that Section 5.c. squarely and unequivocally forecloses. *Sphere Obj.*, Exhibit 1, Proof of Claim No. 358 ¶¶ 14-16. As discovery will not impact the legal applicability of these provisions, summary judgment is entirely appropriate.

27.     Third, Sphere's policy-based arguments that the Limitation of Liability Provisions cannot apply to limit Core's purported acts of bad faith or intentional misconduct are loosely disguised breach-of-contract claims that fail as a matter of law. *Infra* ¶¶ 28-34. These

arguments are therefore not a basis for further development of the factual record or a reason to delay decision on the applicability of the Limitation of Liability Provisions.

    **ii.**   **Sphere's Claim That Core Acted In Bad Faith Does Not Defeat The Motion**

    28.  Sphere argues that partial summary judgment based on the Limitation of Liability Provisions is inappropriate because Core purportedly acted in bad faith by allegedly (1) "wrongfully seizing" the $35,104,363 contractual prepayment allegedly made by Sphere under the Gryphon Hosting Agreements (the "**Prepayment**"), (2) "wrongfully seizing" other of Sphere's alleged digital assets, and (3) performing its obligations under the MSA in bad faith. *Sphere Obj*. ¶¶ 46-47. Even assuming that Sphere's allegations were correct, which Core denies, they do not provide any valid basis to avoid application of the Limitation of Liability Provisions to the Sphere Claim.

    **(1)**   **Sphere's "Bad-Faith" Claims Are Ordinary Breach of Contract Claims That Cannot Invalidate The Limitation of Liability Provisions**

    29.  Even accepting the truth of Sphere's claims for purposes of the Motion, Sphere's position does not survive under Delaware law, which "has a strong presumption in favor of freedom of contract." *eCommerce Indus., Inc. v. MWA Intel., Inc.*, C.A. No. 7471-VCP, 2013 WL 5621678, at *45, n.319 (Del. Ch. Sept. 30, 2013). Accordingly, "contracts should not easily be invalidated," *id.* (quoting *Benihana of Tokyo, Inc. v. Benihana, Inc.*, 891 A.2d 150, 172 (Del. Ch. Dec. 8, 2005)), and limitation of liability provisions are generally upheld. *Id.* at *45, n.316 (internal citations omitted). Moreover, there is no "Delaware precedent for striking a limitation on contractual liability because of a party's willful or bad faith breach of the contract[,]" especially where, as here, the relevant provisions do not contain an exception for bad-faith breach. *Id.* at *45

(rejecting attempt to circumvent limitation of liability based on bad faith where the parties could have carved out an exception for bad faith breach but did not).

30.     Delaware courts also vigorously reject attempts to circumvent limitation of liability provisions through allegations of bad faith where the underlying claims amount to no more than ordinary breach of contract claims. *See Anvil Holding Corp. v. Iron Acquisition Co.*, C.A. No. 7975-VCP, 2013 WL 4447840, at *4 (Del. Ch. Aug. 16, 2013) (finding that the plaintiff's complaint only stated a claim for ordinary breach of contract, not bad faith breach because the plaintiff ""did not aver any additional facts in their bad faith breach of contract claim" and only "add[ed] in conclusory fashion an assertion that '[t]he foregoing breach constitutes a bad faith breach of the representations and warranties . . . ""); *Chase Bank USA, N.A. v. Unifund Portfolio A LLC*, No. 09 Civ. 9795, 2010 WL 3565169, at *6–8 (S.D.N.Y. Sept. 13, 2010) (interpreting Delaware law and rejecting plaintiff's claim for bad faith breach where plaintiff's "so-called bad faith claim [was] wholly dependent upon [its] breach of contract claim" and "ma[de] no allegations to support a separate claim"). Here, even if what Sphere asserts is true, its claims are nothing more than loosely disguised breach of contract claims, which cannot invalidate the Limitation of Liability Provisions as a matter of Delaware law. *See eCommerce*, 2013 WL 5621678, at *45.

31.     That Sphere's claims are really just breach of contract claims is clear from the face of Sphere's allegations, which all focus on Core's performance under the Gryphon Hosting Agreements. *Sphere Obj*. ¶¶ 46-47. While Sphere uses language like "wrongfully seized," "conversion," and "bad faith," Sphere is really, at bottom, complaining that Core breached the Gryphon Hosting Agreements by failing to perform its obligations and refusing to return the $35,104,363 prepayment deposit that was paid to Core pursuant to Order #2. *Sphere Obj*., ¶ 2.

Even taking its allegations as true, which Core disputes, Sphere has at most identified potential breach of contract claims that are expressly subject to the Limitations of Liability Provisions.

32.     The cases that Sphere relies on in its objection do not support its efforts to avoid application of the Limitation of Liability Provisions.  For example, Sphere cites *Petroleum v. Magellan Terminals Holdings, L.P.*, C.A. No. N12C-02-302 FWW, 2015 WL 3885947, at *24 (Del. Super. Ct. June 23, 2015), purportedly for the proposition that limitation of liability provisions are not enforceable in cases of intentional or bad faith misconduct.  But *Magellan* does not stand for this general proposition.  In *Magellan*, plaintiff alleged that defendant's agent, to induce him to execute the contract, made false representations to plaintiff.  2015 WL3885947, at *3.  At no point does Sphere allege that Core made deliberate factual misrepresentations that induced Sphere (or Gryphon) to execute the MSA.

33.     Sphere also cites *J.A. Jones*, in which the court held that a limitation of liability provision could not limit exposure for tort liability unless the intent to do so was "stated clearly and unequivocally."  *J.A. Jones Constr. Co. v. City of Dover,* 372 A.2d 540, 546 (Del. Super. Ct. 1977); *see also Data Mgmt. Internationalé, Inc. v. Saraga*, C.A. No. 05C-05-108, 2007 WL 2142848, at *4-5 (Del. Super. Ct. July 25, 2007).  It does not stand for the proposition that a limitation of liability provision cannot limit exposure for bad faith breach or breaches of the implied covenant of good faith and fair dealing.  Instead, because the court allowed plaintiff's claims to proceed only to the extent they fell outside the scope of the limitation of liability, *J.A. Jones* follows Delaware courts' general reluctance to invalidate limitation of liability provisions. Here, as noted, the Limitation of Liability Provisions in the MSA are broad and clearly, expressly and unequivocally cover all claims, whether in contract, tort, or otherwise.

34.     In short, none of the cases that Sphere cites in the Sphere Objection supports the argument that a breach of contract, even if intentional, invalidates the Limitation of Liability Provisions.

### (2)     The Anti-Bootstrapping Rule Also Precludes Sphere's Claims

35.     Sphere's arguments also fail under the "anti-bootstrapping rule," which further demonstrates that Delaware courts vigorously reject attempts to circumvent limitation of liability provisions.  Under the rule, if a party tries to add a conclusory label of fraud or bad faith to disguise an ordinary breach of contract claim, usually to avoid a limitation of liability provision that does not expressly extend to fraud or tort claims, Delaware courts routinely reject those attempts pursuant to the "anti-bootstrapping rule."  "[A] plaintiff cannot bootstrap a claim of breach of contract into a claim of fraud merely by alleging that a contracting party never intended to perform its obligations."  *DecisivEdge, LLC v. VNU Grp., LLC*, C.A. No. N17C-05-584 WCC CCLD, 2018 WL 1448755, at *8 (Del. Super. Ct. Mar. 19, 2018) (citing *Furnari v. Wallpang, Inc*., 2014 WL 1678419, at *8 (Del. Super. Ct. Apr. 16, 2014)) (internal quotations omitted).  "[A] fraud claim alleged contemporaneously with a breach of contract claim" will therefore survive only if "the claim is based on conduct that is separate and distinct from the conduct constituting breach." *Id.* (citations omitted).  Because Sphere is attempting to shroud its breach of contract claims in the language of bad faith, it cannot defeat application of the Limitation of Liability Provisions.

(3)    **Sphere Is Not Entitled to Additional Discovery To Support Its Claims**

36.    Sphere also argues that summary judgment with respect to the Limitations of Liability Provisions is premature because it "has had no discovery into any of Core's misconduct as needed to validate its claims that Core acted intentionally and in bad faith." *Sphere Obj*. ¶ 62.

37.    Under Rule 56(d) of the Federal Rules of Civil Procedure, a party seeking to avoid summary judgment "must demonstrate how additional discovery will create a genuine issue of material fact." *Jacked Up, L.L.C. v. Sara Lee Corp.*, 854 F.3d 797, 816 (5th Cir. 2017) (citations omitted).  To satisfy this standard, the party "must [1] describe the information sought in discovery and how it will be obtained, [2] explain how that information is reasonably expected to raise a genuine issue of material fact, [3] the efforts to date to obtain the information, and [4] why those efforts have been unsuccessful." *Am. Nat'l Red Cross v. Nichols Team, Inc.*, 434 F. Supp. 2d 142, 143 (W.D.N.Y. 2006) (citing *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994)).  Sphere cannot satisfy the requisite discovery standard for two fundamental and dispositive reasons.

38.    First, under Delaware law, detailed above, evidence that Core intentionally or strategically breached the contract—which is the "bad faith" evidence that Sphere seeks to discover—is not relevant to the legal issue of whether the Limitations of Liability Provisions apply to the Sphere Claim.  *Supra* ¶¶ 28-34.  In other words, *even if* Sphere discovers the evidence that it seeks, that evidence is not relevant to the legal issue before the Court.  On this basis alone, the Court should reject Sphere's argument.

39.    Second, Sphere's argument also fails because its request for discovery is based on only *speculation* that discovery will reveal evidence of "bad-faith" conduct.  Sphere's speculative and threadbare suspicions are not only irrelevant (for the reasons detailed above), they

are insufficient to support Sphere's purported need for discovery.  *See Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 422-23 (5th Cir. 2016) ("The nonmovant may not simply rely on vague assertions that discovery will produce needed, but unspecified, facts.") (quoting *Am. Fam. Life Assurance Co. v. Biles*, 714 F.3d 887, 894 (5th Cir. 2013)); *Stearns Airport Equip. Co. v. FMC Corp.*, 170 F.3d 518, 534-35 (5th Cir. 1999) (stating that it is not enough to "rely on vague assertions that discovery will produce needed, but unspecified, facts" and upholding the district court's denial of the nonmovant's 56(d) request because it lacked needed specificity); *Mauldin v. Fiesta Mart*, No. 96-11333, 1997 WL 255640, at *2 (5th Cir. May 7, 1997) (finding that nonmovant's request for additional discovery based on "his own subjective beliefs" that company records would "reveal a company-wide [racial preference]" was a speculative "fishing expedition").

40.     For these reasons, there is no legitimacy to Sphere's argument that summary judgment is premature because it must conduct additional discovery to support its claims.  The Court should reject this argument and rule on the applicability of the Limitations of Liability Provisions, as a matter of law.

### ii.    Core's Calculation Of The One-Months Fee Squares With The Contract, And In Any Event, A Dispute Over Calculation Does Not Defeat The Motion

41.     Sphere also challenges Core's method of calculating the amount of the one-months fee that sets the cap on Core's total liability.  *Sphere Obj*. ¶¶ 49-59.  Guided by the language of the MSA, Core looked to the amount of the last monthly invoice payable to Core for services provided to Gryphon under Order #2 to calculate the amount of the applicable one-months fee.[7] *See* MSA § 5.d. (Core's liability "will not exceed an amount equal to one (1) months fee payable

---

[7]  As made clear in the Motion, the invoices relevant to Order #2 have been sent to Gryphon, not to Sphere.  *Cann Decl*., Exhibit C.  Nowhere in Sphere's objection to the Motion does it deny this fact.

to [Core] pursuant to the applicable order."). Not only is this approach supported by the plain language of the MSA, it makes sense to rely on the monthly invoice closest in time to the breach or event triggering application of the Limitation of Liability Provisions. Indeed, that invoice is the most current snapshot of the amounts payable under Order #2, and by extension, a logical barometer for setting Core's maximum exposure. It is also the least arbitrary way to determine the amount of the one-months fee that aligns with the language of the Limitation of Liability Provisions and other provisions of the MSA.

42. Sphere argues that the one-months fee should instead be calculated based on "the greatest amount of fees called for in a single month by Order #2 under its terms as written," and that Prepayments should be included in the calculation, as those amounts were, in certain months, paid to Core. *Sphere Obj.* ¶¶ 13-14, 52-54. This interpretation, which significantly increases the ceiling on Core's liability, fails under the plain terms of the MSA and Order #2.

43. First, the language of the MSA and Order #2 does not support Sphere's contention that the one-months fee is the "greatest amount of fees called for in a single month by Order #2." Indeed, the absence of any language supporting this interpretation is dispositive: if this is what the parties intended, the agreement would say so with specificity, rather than describing the amount as "equal to one (1) months fee payable to [Core] pursuant to the applicable order." MSA § 5.d. In this way, Section 5.d. is referencing Core's standard monthly invoice as the relevant metric with no language even suggesting it captures Prepayments. This is confirmed by the fact that Section 3.a. of the MSA references that Core will provide its invoices on a monthly basis in advance for all applicable fees. These fees are distinct from any of the Prepayments, which are included in a section entitled "Payment Due Prior to Installation." The Prepayments, thus, are not

the fees referenced in Sections 3.a. or 5.d. of the MSA and cannot be included as part of the calculation for the one-months fee.

44. Second, the Limitation of Liability Provisions are clear that Core's total exposure is the amount of the one-months fee. *See* MSA § 5.d. To the extent that Sphere argues for the repayment of any prepayments made to Core—either in the Sphere Objection or implicitly by seeking in its proof of claim "hosting deposits" in the amount of $34,383,713—Sphere is not entitled to return of the Prepayments, or any amount that exceeds the one-months fee. Notably, there is not a single provision in the MSA or Order #2 that provides for return of the Prepayments. While, with hindsight, Sphere may wish that it (or Gryphon) had negotiated different contract terms specific to the Prepayments, that regret cannot change the limited scope of Core's liability under the MSA (nor can it defeat the Motion). If Sphere wanted an exception for refunds on the Prepayments, it should have negotiated for such an exception.

45. While the language of the MSA and Order #2 support Core's positions, if the Court determines that there are legitimate questions concerning calculation of the one-months fee or whether the Limitation of Liability Provisions apply to the Prepayments, neither question would defeat the Motion or preclude the Court from ruling that the MSA (1) limits Core's total liability to the amount of one-months fee, *deferring determination of the amount of the fee and whether it includes Prepayments*, and separately also (2) prevents Sphere from recovering lost profits; loss of business; loss of revenues; loss, interruption or use of data or loss of use of Sphere's equipment; any consequential, or indirect damages; or cost of cover, incidental, special, reliance or punitive damages. This ruling would still provide much needed clarity and eliminate many of the categories of damages set forth in the Sphere Claim.

*       *       *       *       *

46.     For the foregoing reasons, Sphere has failed to overcome the strong presumption Delaware courts apply in favor of limitation of liability provisions.  Accordingly, to the extent it reaches these issues, the Court should rule that the Limitation of Liability Provisions apply to the Sphere Claims.

### Conclusion

WHEREFORE, the Debtors respectfully request that this Court grant the Motion and enter summary judgment dismissing the Sphere Claim or, alternatively, grant Core partial summary judgment on the Sphere Claim as relates to the Limitation of Liability Provisions.[8]

*[Remainder of page intentionally left blank]*

---

[8] Core reserves its rights, in all respects, regarding its Objection to proofs of claim Nos. 358 and 359 filed by Sphere. Neither this filing nor any arguments set forth herein shall be construed as waiving or limiting in any way Debtors' Objection to the Sphere Claim.

Dated: July 31, 2023
Houston, Texas

      _/s/ Alfredo R. Pérez_
WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (15776275)
Clifford W. Carlson (24090024)
700 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone:    (713) 546-5000
Facsimile:    (713) 224-9511
Email: Alfredo.Perez @weil.com
      Clifford.Carlson@weil.com
-and-

WEIL, GOTSHAL & MANGES LLP
Ray C. Schrock (admitted _pro hac vice_)
Ronit J. Berkovich (admitted _pro hac vice_)
Theodore E. Tsekerides (admitted _pro hac vice_)
Christine A. Calabrese (admitted _pro hac vice_)
767 Fifth Avenue
New York, New York 10153
Telephone:    (212) 310-8000
Facsimile:    (212) 310-8007
Email: Ray.Schrock@weil.com
      Ronit.Berkovich@weil.com
      Theodore.Tsekerides@weil.com
      Christine.Calabrese@weil.com

_Counsel for Debtors and Debtors in Possession_

## Certificate of Service

I hereby certify that on July 31, 2023, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

_/s/ Alfredo R. Pérez_
Alfredo R. Pérez