# Exhibit 26

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **CORE SCIENTIFIC, INC.,** *et al.,* | § | **Case No. 22-90341 (DRJ)** |
| | § | |
| Debtors.[1] | § | **(Jointly Administered)** |

To: Core Scientific, Inc. and Core Scientific Operating Company, by and through its counsel of record, Theodore E. Tsekerides, Weil, Gotshal, & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Theodore.Tsekerides@weil.com

### SPHERE 3D CORP.'S FIRST SET OF INTERROGATORIES TO THE DEBTORS

Pursuant to Rules 7026 and 7033 of the Federal Rules of Bankruptcy Procedure and Rules 26 and 33 of the Federal Rules of Civil Procedure, Sphere 3D Corp. ("Sphere"), by its counsel, hereby requests that the Debtors answer the First Set of Interrogatories (collectively, the "Interrogatories") on or before September 8, 2023, or on any date as subsequently agreed to by the parties or ordered by the Court.

### DEFINITIONS

1. "Arbitration Demand" means the Demand for Arbitration Sphere submitted on October 31, 2022.

2. "Claims" means Sphere's Proofs of Claim Nos. 358 and 359.

3. "Claim Objection" means Debtors' Objection to Proofs of Claim Nos. 358 and 359 Filed by Sphere 3D Corp. [Docket No. 869].

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions, VII, LLC (3198). The Debtors' corporate headquarters and service address is 210 Barton Springs Road, Suite 300, Austin, Texas 78704.

4. "Communication" or "Communications" means any oral, written, or electronic transmissions, or Electronic Records of information, including but not limited to emails, meetings, discussions, conversations, telephone calls, telegrams, memoranda, letters, telecopies, telexes, conferences, messages, notes, or seminars, and shall include, without limitation, messages sent, received, or located on any messaging app or service (including, without limitation, SMS, iMessage, Slack, WhatsApp, Telegram, Bloomberg messenger, and Microsoft Teams) and any Documents, writings, or recordings constituting, evidencing, memorializing, recording, summarizing, or transcribing any transmission or exchange of any information.

5. "Debtors" means Core Mining LLC; Core Scientific, Inc. ("Core"); Core Scientific Acquired Mining LLC; Core Scientific Operating Company; Radar Relay, Inc.; Core Scientific Specialty Mining (Oklahoma) LLC; American Property Acquisition, LLC; Starboard Capital LLC; RADAR LLC; American Property Acquisitions I, LLC; and American Property, VII, LLC; and any of their officers, directors, employees, agents, representatives, parent companies, subsidiaries affiliates, successors, predecessors, and assigns, including attorneys, or other Persons acting on their behalf.

6. "Document" or "Documents" means all documents, electronically stored information, and tangible things, including without limitation all writings and all other means of recording information, whether written, transcribed, taped, filmed, microfilmed, or in any other way produced, reproduced, or recorded, and including but not limited to: originals, drafts, computer-sorted and computer-retrievable information, copies and duplicates that are marked with any notation or annotation or otherwise differ in any way from the original, correspondence, memoranda, reports, notes, minutes, contracts, agreements, books, records, checks, vouchers, invoices, purchase orders, ledgers, diaries, logs, calendars, computer printouts, computer disks,

card files, lists of persons attending meetings or conferences, sketches, diagrams, calculations, evaluations, analyses, directions, work papers, press clippings, sworn or unsworn statements, requisitions, manuals or guidelines, audit work papers, financial analyses, tables of organizations, charts, graphs, indices, advertisements and promotional materials, audited and unaudited financial statements, trade letters, trade publications, newspapers and newsletters, photographs, emails, electronic or mechanical records, facsimiles, telegrams and telecopies, and audiotapes. Each draft, annotated, or otherwise non-identical copy is a separate document within the meaning of this term. Documents shall also include any removable sticky notes, flags, or other attachments affixed to any of the foregoing, as well as the files, any table of contents or index thereto, folder tabs, and labels appended to or containing any documents. Documents expressly include all electronic records.

7. "Electronic records" means the original (or identical duplicate when the original is not available) and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind) of writings of every kind and description inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means. Electronic records include, by way of example and not by limitation, computer programs (whether private, commercial, or work-in-progress), programming notes and instructions, activity listings of email transmittals and receipts, output resulting from the use of any software program (including word processing documents, spreadsheets, database files, charts, graphs, and outlines), electronic mail, and any and all miscellaneous files and file fragments, regardless of the media on which they reside and regardless of whether said electronic records exist in an active file, deleted file, or file fragment. Electronic records include without limitation any and all items stored on computer memories, hard disks, diskettes and cartridges,

network drives, network memory storage, archived tapes and cartridges, back-up tapes, floppy disks, CD-ROMs, removable media, magnetic tapes of all types, microfiche, and any other media used for digital data storage or transmittal. Electronic records also include the file, folder tabs, and containers and labels appended to or associated with each original and non-identical copy.

8. "Gryphon" means Gryphon Digital Mining, Inc. and any of its officers, directors, employees, agents, representatives, parent companies, subsidiaries affiliates, successors, predecessors, and assigns, including attorneys, or other Persons acting on its behalf.

9. "Identify" or "Identifying," when used with respect to a natural person, shall mean to state the natural person's entire name, all business affiliations or employers, all job classifications or titles, and last known residential and business addresses, telephone number(s) and email address(es), as well as any other means of which Petitioners are aware to contact such natural person.

10. "Identify" or "Identifying," when used with respect to any Entity, shall mean to state the Entity's entire name, parent Entity name (if any), affiliated Entities' names (if any), last known addresses and telephone numbers of the Entity, and the contact name of a representative of such Entity and their direct address, telephone number and email address, as well as any other means of which Defendants are aware to contact such Entity.

11. "Identify" or "Identifying," when used with respect to Documents and Communications, shall mean to provide the date, author, name and title of every addressee, including every recipient of copies, the title of the Document or Communication, Bates number (if produced) and a brief description of the nature (e.g., letter, email, etc.) and the contents of each Document and Communication.

4

12. "Master Services Agreement" means the binding term sheet executed by Gryphon Digital Mining, Inc. and Sphere 3D Corp. on August 19, 2021.

13. "MSA" means the September 12, 2021 Master Services Agreement and all orders entered into under the MSA, including without limitation Order #1 and Order #2.

14. "Person" means any natural Person or any legal entity, including without limitation, any business or governmental entity or association.

15. "Relating to," "Related to" or "Relate(s) to" means constituting, containing, concerning, embodying, reflecting, identifying, stating, mentioning, discussing, describing, evidencing, or in any other way being relevant to that given subject matter.

16. "Sphere" means Sphere 3D Corp. and any of its officers, directors, employees, agents, representatives, parent companies, subsidiaries affiliates, successors, predecessors, and assigns, including attorneys, or other Persons acting on its behalf.

17. "Sub-License Agreement" means the Sub-License and Delegation agreement signed by Gryphon Digital Mining, Inc. and Sphere 3D Corp. on October 5, 2021, together with any amendments thereto.

18. "You" or "Your" refer to any Debtor and any other Person or entity presently or formerly acting or purporting to act on behalf of any Debtor.

## **INSTRUCTIONS**

1. Whenever possible, the singular form of a word shall be interpreted in the plural and vice versa; verb tenses shall be interpreted to include past, present, and future tenses; the terms "and" as well as "or" shall be construed either conjunctively or disjunctively, as necessary, to bring within the scope of these demands any Documents or Communications that might otherwise be considered outside their purview; and words imparting the masculine shall include the feminine and vice versa.

2. In answering each Interrogatory, You should identify by Bates number all Documents relied upon to draft the answer given and any Documents that corroborate the answers given or the substance of the answer given. If the Document has not been produced at the time of Your answer to these Interrogatories, identify such Document by including the date, author, name, and title of every addressee, including every recipient of copies, the title of the Document and a brief description of the nature (e.g., letter, email, etc.) and the contents of each such Document, and supplement Your identification with a Bates number when the Document is produced.

3. All Documents are to be produced as kept in the usual course of business and are to be organized and labeled to specify the Documents from which the answers to these Interrogatories may be derived or ascertained.

4. If an objection is made to part or all of any demand, that part should be specified together with the reasons for the objection. If a claim of privilege is asserted with respect to part or all of any Document on the grounds of attorney-client privilege, the attorney work product doctrine, or any other basis, describe the Document with sufficient particularity to make it susceptible to identification by separately stating the following with respect to any such Document: (1) the type of Document; (2) its date; (3) the name, address, and position of its author(s); (4) the name, address, and position of each recipient of the Document; (5) a general description of the subject matter of the Document; (6) the basis of any claim of privilege; and (7) if work product immunity is asserted, the proceeding for which the Document was prepared.

5. If only a portion of an otherwise responsive Document contains information subject to a claim of privilege, only that portion of the Document subject to the claim of privilege shall be deleted or redacted from the Document following the instructions in the preceding paragraph and the rest shall be produced.

6

6. Should You object or fail to provide any information requested in any Interrogatory, in whole or in part, You shall state Your objections and/or reasons for not fully responding. If an Interrogatory is only partly objectionable, respond to the remainder of the Interrogatory. If any Interrogatory, instruction or definition is considered ambiguous, set forth the matter deemed ambiguous and the construction used in answering.

7. Each Interrogatory is to be responded to separately and as completely as possible. The fact that an investigation is continuing or that discovery is not complete shall not be used as an excuse for failure to respond to each Interrogatory as fully as possible.

8. If any answer, or any part of an answer, to any Interrogatory is based on information and belief specify and Identify the source of information and the grounds for the belief.

9. These Interrogatories shall be deemed continuing so as to require prompt supplemental response if You obtain or discover additional information between the time of initial response and trial.

10. The "Relevant Period" for the requests is on and after July 1, 2021, through and including the present.

11. You should consult the Federal Rules of Civil Procedure for additional instructions and duties that You might have concerning Your answers to these Interrogatories, which rules are incorporated herein by reference.

**INTERROGATORIES**

1. Identify each Person (including, for the avoidance of doubt, third-parties) with knowledge of information relevant to the Claims, the Claim Objection, and/or the Arbitration Demand and describe the topic(s) of such individual's knowledge.

7

2. What do You contend Your total liability is capped at under Section 5.d of the MSA? State the complete basis for Your contention, including by identifying what constitutes a "fee" and which "month" governs.

3. What do you contend is the meaning of the phrase "as long as Sphere 3D Corp. satisfies [Core's] requirements prior to"? State the complete basis for your interpretation.

4. Identify and describe any expenditures and preparations made in contemplation of hosting any miners under Order #2, including without limitation the "enormous undertaking and investment Core" made "to prepare its facilities for the number of expected units," as referenced in paragraph 19 of the Claim Objection.

5. Identify and describe, for every date during the Relevant Period, any capacity set aside for Gryphon and/or Sphere under Order #2 that was not filled by miners, whether by the Debtors' miners or the miners of another customer.

6. Identify how much hosting space the Debtors had available on every date during the Relevant Period.

7. Identify each and any hosting agreement between Core and any third party.

8. Identify all Documents and Communications of the Debtors relating to the hosting rate to be paid by Sphere or Gryphon for any miners hosted by any Debtor under the MSA and Order #2 or otherwise.

9. Identify and describe any harm, damage, or loss any Debtor claims it suffered due to the alleged nonperformance of Gryphon or Sphere under the MSA and Order #2.

10. Identify and describe any efforts to mitigate harm, damage, or loss any Debtor claims it suffered due to the alleged nonperformance of Gryphon or Sphere under the MSA and

Order #2 and how much those mitigation efforts reduced the alleged harm, damage, or loss any Debtor claims it suffered.

11. Provide Your complete retelling of what was discussed during the meeting between the parties on or around April 7, 2022 in Florida, as well as who participated in the meeting.

12. Identify when and how You first became aware of the fact that Gryphon had attempted to assign any rights in Order #2 to Sphere.

13. Identify all Documents and Communications related to the Sub-License and Delegation Agreement and Master Services Agreement.

14. Identify all Documents and Communications relating to the ownership of the deposits and prepayments made under the MSA and Order #2 and all Documents and Communications relating to the source of the deposits and prepayments made under the MSA and Order #2.

15. Identify all Documents and Communications relating to any discussions or agreements relating to any Debtor taking direction from Sphere or Gryphon with respect to the return of the prepayments and deposits made under the MSA and Order #2, and the return of any miners provided by Gryphon or Sphere to any Debtor.

9

Dated: August 18, 2023

*/s/ Ashley L. Harper*

| | |
|---|---|
| Timothy A. ("Tad") Davidson II | Tibor L. Nagy, Jr. |
| TX Bar No. 24012503 | TX Bar No. 24041562 |
| Ashley L. Harper | Gregory N. Wolfe (admitted *pro hac vice*) |
| TX Bar No. 24065272 | **DONTZIN NAGY & FLEISSIG LLP** |
| **HUNTON ANDREWS KURTH LLP** | 980 Madison Avenue |
| 600 Travis Street, Suite 4200 | New York, New York 10075 |
| Houston, Texas 77002 | Telephone: (212) 717-2900 |
| Telephone: (713) 220-4200 | Email: tibor@dnfllp.com |
| Facsimile: (713) 220-4285 | greg@dnfllp.com |
| E-mail: taddavidson@HuntonAK.com | |
| ashleyharper@HuntonAK.com | |

- and -

Seth H. Lieberman (admitted *pro hac vice*)
Matthew W. Silverman (admitted *pro hac vice*)
**PRYOR CASHMAN LLP**
7 Times Square
New York, New York 10036
Telephone: (212) 421-4100
Facsimile: (212) 326-0806
E-mail: slieberman@pryorcashman.com
msilverman@pryorcashman.com

*Co-Counsel for Sphere 3D Corp.*

## CERTIFICATE OF SERVICE

I certify that on August 18, 2023, a true and correct copy of the foregoing document was served by electronic mail on the following individuals:

Alfredo R. Pérez
Alfredo.Perez@weil.com

Theodore Tsekerides
Theodore.Tsekerides@weil.com

Clifford W. Carlson
Clifford.Carlson@weil.com

Christine Calabrese
Christine.Calabrese@weil.com

Austin B. Crabtree
Austin.Crabtree@weil.com

Asha Menon
Asha.Menon@weil.com

*Attorneys for the Debtors*

                                            */s/ Ashley L. Harper*
                                            Ashley L. Harper