IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re<br><br>**CORE SCIENTIFIC, INC.,** *et al.,*<br><br>Debtors[1].<br>--------------------------------------------<br><br>**CORE SCIENTIFIC, INC.,** *et al.,*<br><br>Plaintiffs,<br><br>v.<br><br>**SPHERE 3D CORP. and GRYPHON DIGITAL MINING, INC.,**<br><br>Defendants. | Chapter 11<br><br>Case No. 22-90341 (CML)<br><br>(Jointly Administered)<br><br>**(Emergency Relief Requested)**<br><br>Adv. Pro. No. 23-03252 |

**REPLY IN FURTHER SUPPORT OF DEBTORS' <u>EMERGENCY</u> MOTION FOR AN ORDER VACATING THE SCHEDULING ORDER IN THE SPHERE CONTESTED MATTER AND CONSOLIDATING THE SPHERE CONTESTED <u>MATTER WITH THE ADVERSARY PROCEEDING</u>**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (N/A); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions, VII, LLC (3198). The Debtors' corporate headquarters and service address is 210 Barton Springs Road, Suite 300, Austin, Texas 78704.

Core Scientific Operating Company f/k/a Core Scientific, Inc. ("**Core**") and its Debtor affiliates (collectively, the "**Debtors**")[2] in the above-captioned chapter 11 cases and as Plaintiffs in the above-captioned adversary proceeding against Sphere 3D Corp. ("**Sphere**") and Gryphon Digital Mining Inc. ("**Gryphon**," and together with Sphere, the "**Defendants**"), hereby file this reply in further support of *Debtors' Emergency Motion for an Order Vacating the Scheduling Order in the Sphere Contested Matter and Consolidating the Sphere Contested Matter with the Adversary Proceeding* (23-03252, Docket No. 5; 22-90341, Docket No. 1464) (the "**Emergency Motion**")[3] to address the various inaccuracies and mischaracterizations asserted in *Sphere 3D Corp.'s Objection to Debtors' Emergency Motion for an Order Vacating the Scheduling Order in the Sphere Contested Matter and Consolidating the Sphere Contested Matter with the Adversary Proceeding* (23-03252, Docket No. 16; 22-90341, Docket No. 1474) (the "**Sphere Objection**").

As is clear from the Emergency Motion and reinforced herein, the Debtors did not file the Adversary Complaint as part of a bad-faith scheme to pressure settlement, as Sphere argues, but rather in the best interests of the estate. Rather, vacating the Scheduling Order and consolidating the Sphere Contested Matter with the Adversary Proceeding is warranted and the only efficient path forward for resolving all of the issues that stem from the same nucleus of operative facts. Refusing to accept the practical realities that flow from the Debtors' filing of the Adversary Complaint—including that it now has obligations to respond and litigate the Adversary Complaint regardless of whether the Emergency Motion is granted—Sphere insists on adhering to an outdated schedule that would require, among other inefficiencies, duplicative depositions and

---

[2] Core Scientific, Inc. changed its name to Core Scientific Operating Company in January 2022.

[3] Capitalized terms not otherwise defined herein are defined as set forth in the Emergency Motion.

two trials on nearly identical issues. This does not make sense for any party, including Sphere, and is a waste of judicial resources. For the reasons set forth in the Emergency Motion and herein, the Emergency Motion should be granted over Sphere's objections.

### I. The Debtors Filed The Adversary Complaint In The Best Interests Of The Estate

1. The majority of Sphere's objection—packed with inaccuracies and groundless aspersions—and almost all of the *thirty* exhibits attached thereto, are irrelevant to the Emergency Motion. As relevant to the Emergency Motion, Sphere argues that the Court should deny the motion because the Debtors purportedly delayed filing the Adversary Complaint in bad faith. According to Sphere, the Debtors never intended to litigate the Sphere Contested Matter and are instead "trying to outlast Sphere's financial wherewithal to prosecute the case" and used the case schedule as a "weapon" to pressure Sphere into settlement rather than "bear the dramatically increased costs necessitated by expedited scheduling." Sphere Objection ¶¶ 9, 11. This conspiracy theory allegation is simply not true and ignores the realities and cadence of these chapter 11 cases and the Debtors' rights to seek not only an affirmative recovery on their claims but also a determination relating to whether the contracts at issue are executory or otherwise subject to rejection. The facts relevant to all of these interconnected issues are largely the same and should be decided in one proceeding.

2. The Sphere POCs are not garden-variety claims because they are based on agreements that Core executed with Gryphon, a third party who has not filed any proofs of claim against the Debtors but is the actual party to the contracts. Sphere's repeated mantra that the relevant contracts are with Sphere does not change the fact that Sphere did not sign any of the agreements or the fact that it is hotly contested whether Sphere has any rights under those contracts at all. That the Debtors did not press their affirmative claims in August, when the Chapter 11 cases

were in a different posture and issues related to whether the relevant agreements were executory were simply not at the fore, is not relevant to determining the proper path forward now.

3. Contrary to Sphere's characterization, this is consistent with what counsel for the Debtors underscored at the Summary Judgment Hearing: the Debtors represented to the Court that they were focused on confirmation and concerned that adding Gryphon at that time would delay adjudication and leave these issues (and approximately $39 million in asserted claims) lingering long after confirmation. *See* Summary Judgment Hearing Tr., 22-90321, Docket No. 1136 at 78:10–14 ("We have a plan we want to get done . . . [a]nd we don't want things hanging out. So, I mean, I'd have some concern inviting more people to the party."). This makes sense. The Debtors, at that time, wanted to prioritize adjudication of the Sphere POCs as close to confirmation as possible over pursuing affirmative recovery and a comprehensive resolution that included Gryphon, both of which would take time and undermine the prioritized goal of resolving the Sphere POCs before confirmation. The Debtors were not bound by this position, however, and never waived their right to pursue their claims against both Sphere and Gryphon in an adversary proceeding, as Sphere argues (Sphere Objection ¶ 10). The Debtors also did not know what the final plan of reorganization would look like or how open claims would be treated, nor was the focus on possible executory contracts.

4. At the time of the Summary Judgment Hearing in August, the Debtors were just at the outset of mediation discussions with their stakeholders to try and reach a consensual plan of reorganization. Over the coming months, it became clear that resolution of the Sphere Contested Matter was not going to affect the Debtors' plan of reorganization as the Debtors resolved larger claims that directly impacted the plan. In this changed posture, the Debtors were in a position to consider asserting their own affirmative claims against Sphere *and* Gryphon,

seeking a comprehensive resolution of the dispute that included Gryphon, and addressing issues relating to returning the Gryphon miners Core was still hosting.

5. Core was not obligated to mediate the issues in the Sphere Contested Matter, as Sphere seems to suggest, initially deciding to litigate (or settle) the claims asserted in the Sphere POCs, and later preparing to file the Adversary Proceeding. Before filing, however, Core had one of its senior executives hold settlement discussions with Sphere's CEO to see if a resolution could be reached short of commencing the Adversary Proceeding. It became clear that settlement with Sphere was not possible. In fact, presumably in an effort to pressure settlement, after talks broke down, Sphere sent a letter to the Debtors threatening to inform their constituents of the settlement discussions. Once it was clear that the Debtors could not settle the Sphere POCs on terms acceptable to the Debtors, and with a confirmation hearing scheduled for December 22, the Debtors decided to file the Adversary Complaint.

## II. Consolidating The Sphere Contested Matter With The Adversary Proceeding Is Warranted, Does Not Prejudice Sphere, And In The Interests of Judicial Economy

6. Sphere also argues that the Emergency Motion should be denied because (1) the Sphere Contested Matter is too far along in discovery to now consolidate with the Adversary Proceeding, (2) Sphere cannot afford to fund a consolidated proceeding and needs a decision on the Sphere POCs, which will impact its overall financial condition, and (3) a consolidated proceeding is not more efficient because it would require "new pleadings, new dispositive motions, new discovery, and a substantially lengthier, multi-party trial." Sphere Objection ¶¶ 7–9, 15–23. These arguments should also be rejected.

7. Whether to consolidate the Sphere Contested Matter and the Adversary Proceeding is entirely within the Court's broad discretion, and appropriate where (1) the actions

are pending before the same court, (2) involve common questions of law and/or fact, (3) there is little risk of prejudice if the cases are consolidated or the risk of prejudice is outweighed by the risk of inconsistent adjudications of factual and legal issues if the cases are tried separately, and (4) consolidation would conserve judicial resources and reduce the time and cost of trying the case separately. *Bordas v. Marquette Transp. Co. Gulf-Inland LLC*, 2016 WL 2625064, at *1 (S.D. Tex. May 9, 2016) (granting opposed motion to consolidate over defendants' objections, including that they were ready for trial); *see also Texas Dep't. of Transp. v. Canal Barge Co., Inc.*, 2020 WL 4335787, at *2 (S.D. Tex. July 28, 2020) (granting motion to consolidate where consolidation, among other things, was in the interest of judicial economy). Here, as set forth in the Emergency Motion, these factors are satisfied, and none of Sphere's arguments to the contrary are persuasive.

8. *First*, nothing would need to be "litigated from the beginning" as Sphere contends. Sphere Objection ¶ 7. Sphere does not dispute that the issues in the Sphere Contested Matter and the Adversary Proceeding are nearly identical, instead arguing that the parties have passed the point of no return because they have already produced documents, discussed a deposition schedule, and were on calendar for trial in two months. *Id*. This is not a practical position. All of the documents already produced will still be usable in the Adversary Proceeding and given that the issues are nearly identical, "new" discovery is not required. Nothing has changed in that regard other than Gryphon now being a party. While the parties would need to engage in some additional discovery in a consolidated proceeding—for example, discovery with Gryphon as a party and also on discrete issues, like Core's affirmative damages—it is not accurate to say that the case will need to be "litigated from the beginning." Indeed, the written and document discovery that the Debtors and Sphere have already exchanged are transferable, as is any deposition preparation that either party has undertaken. The parties are not losing anything,

but rather moving forward on an efficient path that incorporates the realities of the Adversary Complaint into the case schedule.

9.     The two cases that Sphere cites to support its position are off point.  In *Mills v. Beech Aircraft Corp.*, the Court declined to consolidate a lawsuit filed by survivors of an airplane crash with a separate lawsuit filed by survivors of the same crash two years later because the court had already held a final pretrial conference in the earlier filed matter, which was ready for trial. 886 F.2d 758, 762 (5th Cir. 1989).  In *St. Bernard Gen. Hosp., Inc. v. Hosp. Serv. Ass'n of New Orleans, Inc.*, the Court declined to consolidate a case that had been going on for over a decade and was ready for trial with another case that was in the early stages of discovery.  712 F.2d 978, 990 (5th Cir. 1983).  Neither is the situation here, where the Sphere Contested Matter is still in the discovery phase and will need to proceed on only a slightly delayed timeline to accommodate the Adversary Proceeding.

10.    *Second*, Sphere argues that it will be prejudiced if the Court vacates the Scheduling Order and consolidates the proceedings because it cannot afford to continue litigating the Sphere POCs and needs a quick resolution "so that it may undertake any needed business decision should its Proofs of Claims be disallowed." Sphere Objection ¶¶ 8–9.  Sphere's sudden interest in a fast track to adjudication is not a reason to deny the Emergency Motion.  Instead, those concerns can be factored into the schedule in the consolidated matter.  Additionally, if Sphere is truly interested in conserving its financial resources, it should support a consolidated proceeding, which is undoubtedly more cost effective.

11.    *Third*, Sphere argues that a consolidated proceeding is not the most efficient way to adjudicate the issues, claiming that it will require "new pleadings, new dispositive motions, new discovery, and a substantially lengthier, multi-party trial." Sphere Objection ¶ 15.  This

argument misses the mark. In any scenario, Sphere will have to litigate the Adversary Complaint. The only question is whether there is one consolidated proceeding addressing the nearly identical claims asserted in the Sphere Contested Matter and the Adversary Proceeding, or two separate proceedings, which will necessarily be more expensive for the parties and a drain on judicial resources. Sphere also overlooks that a consolidated proceeding mitigates the risk of conflicting rulings of law and fact, with the attendant risks of *res judicata*, collateral estoppel, and law of the case, which is at its height here where the matters for adjudication are nearly identical.

12. Sphere further argues that consolidation is not warranted because, as previewed in *Gryphon Digital Mining Inc.'s Non-Opposition in Part and Opposition in Part to Debtors' Emergency Motion for an Order Vacating the Scheduling Order In the Sphere Contested Matter and Consolidating the Sphere Contested Matter with the Adversary Proceeding* (23-03252, Docket No. 12), Gryphon intends to move to compel arbitration. Sphere Objection ¶ 15–16. That Gryphon plans to file a motion to compel arbitration—which the Debtors have strong bases for opposing—has nothing to do with the Emergency Motion, and Sphere's concerns are speculative. Sphere also implies that the Debtors' breach of contract claims against Sphere are subject to arbitration and takes issue with various other claims asserted by the Debtors. Sphere Objection ¶¶ 17–21. These positions, which the Debtors refute, have nothing to do with the Emergency Motion. Sphere will have an opportunity to respond to the Adversary Complaint, which is where Sphere can address the Debtors' claims.

13. Finally, all of Sphere's arguments also ignore the issues relating to the miners that Core currently hosts for Gryphon. While the Debtors contend those contracts are not executory, if they are, the Debtors are rejecting them. Sphere has stated that it would then seek to file a claim for rejection damages—and presumably Gryphon would too. Those issues, which are

quintessentially bankruptcy issues under Bankruptcy Code section 365, would have to be resolved in this Court and would involve the same underlying facts that are at issue in the Sphere Contested Matter. To that end, the Debtors are prepared to return all of the miners to Gryphon immediately, which Sphere should have no objection to as it claims to have asked for return of the miners (Sphere Objection ¶ 26).

### III. Sphere's Remaining Arguments Are Not Relevant To The Emergency Motion And Should Be Rejected

14. Taking a kitchen-sink approach, the Sphere Objection also includes a "Case Background" section that is not relevant to the Emergency Motion and heavily disputed by the Debtors. *See* Sphere Objection ¶¶ 25–64 ("Case Background"). Therein, Sphere (1) argues the merits, including by attaching six exhibits produced during discovery in the Sphere Contested Matter, Sphere Objection ¶¶ 25–46, Exs. 18, 20–25, (2) inaccurately states that there are a "series of deficiencies in Core's compliance with its discovery obligations," Sphere Objection ¶ 47 n. 12, and (3) falsely accuses Core of violating the Court's order to disclose its offset/damages theory, Sphere Objection ¶¶ 47–57. While none of these issues is presently before the Court or relevant to the Emergency Motion, the Debtors briefly address each to correct the record.

15. *First*, Sphere sets out its version of the facts and the parties' respective positions, arguing that it should win on the merits. Sphere Objection ¶¶ 25–46. The Debtors of course disagree, which is why the parties are litigating this dispute, and will present their case at the appropriate time. For example, Sphere contends that Core demonstrably lacked the capacity to comply with the schedule set forth in Order #2. Sphere Objection ¶ 45. Notably, while alleging that Core breached its hosting obligations, Sphere does not point to a single document produced during discovery that evidenced Core refusing to host Gryphon's miners due to a lack of capacity. *Id.* ¶¶ 44–46. Core's hypothetical hosting capacity for miners Gryphon never delivered is not an

escape hatch Sphere can use to run away from its, or Gryphon's, breach. Nor can Sphere use Core's capacity to assert that it is entitled to the return of the deposits. As set forth in the Adversary Complaint, Gryphon (or Sphere) breached Order #2 when they failed to deliver miners in October, November, and December of 2021. If Gryphon (or Sphere) had delivered pursuant to the delivery schedule set forth in Order #2, Core would have had the opportunity to find capacity to host those miners. Without that opportunity, whether Core did or did not have the hypothetical capacity to host the miners is beside the point. Indeed, the facts will show that Sphere lacked the wherewithal to finance the miners it claims were available to provide to Core and that neither Sphere nor Gryphon had the miners to actually perform under the agreements.

16. *Second*, Sphere claims that several discovery issues are outstanding in the Sphere Contested Matter and asserts that "Core has refused to provide a privilege log with sufficient descriptions of materials it has withheld or that contains metadata," and that Core has refused to meet and confer on the issue. Sphere Objection ¶¶ 5 n. 6, 47 n. 12. The Debtors reject these characterizations. The Debtors have been more than accommodating in addressing Sphere's persistent (and largely unreasonable) discovery nits—as the discovery correspondence shows—and the parties were in the middle of negotiating potential revisions to the produced privilege logs when the Debtors filed the Adversary Complaint and focus shifted to this emergency briefing. None of these issues are ripe to raise with the Court, nor are they relevant to the Emergency Motion.

17. *Third*, Sphere accuses Core of violating the Court's order to disclose its offset/damages theory and further claims that the Debtors filed the Adversary Complaint merely as a workaround to introduce those damages to the Court. Sphere Objection ¶¶ 14, 47–57. This is false and was already refuted by the Debtors when they made clear to Sphere that no new

"theories" were being espoused as the Debtors have stated from the outset that they sustained lost revenues/profits and damages in building out facilities in connection with the contracts that Sphere/Gryphon breached. Indeed, the Debtors did not violate any Court order with respect to discovery and instead timely supplemented their interrogatories, produced documents supporting their damages claim by the discovery deadline, and shortly thereafter amended their interrogatories to provide further detail—for example, by asserting the amount of lost profits derived from the total lost revenue initially disclosed—and citing by Bates number the already-produced documents relevant to damages. To the extent additional discovery is required of the Debtors on these issues, Sphere/Gryphon can obtain it in the Adversary Proceeding.

### IV. The Debtors Have Properly Declined To Engage In Further Discovery While The Emergency Motion Is Pending

18. Sphere argues that the Debtors "flatly stated" they would not make deponents available and "refuse[d]" to engage in other discovery. Sphere Objection ¶¶ 62, 64. This misstates the Debtors' positions. The Debtors merely took the position that it was practical to adjourn depositions, and other outstanding discovery issues, until this Court ruled on the Emergency Motion. The cases that Sphere cites accusing the Debtors of "sanctionable" conduct are inapposite. For example, in *Hepperle v. Johnston*, the Court issued sanctions against a deponent who failed to appear at a scheduled deposition on several occasions despite multiple court orders compelling his appearance. 590 F.2d 609, 612–13 (5th Cir. 1979). Here, the Debtors gave Sphere ample notice of their intent to postpone depositions pending a decision from this Court with respect to the consolidation of the Sphere Contested Matter and Adversary Proceeding and did not fail to appear without proper warning, or violate a court order compelling their appearance. The Debtors also filed the Emergency Motion in advance of any depositions in the Sphere Contested Matter.

\* \* \* \* \*

19. In light of the foregoing and for the reasons set forth in the Emergency Motion, the Debtors respectfully request that the Court grant the Emergency Motion to vacate the Scheduling Order and consolidate the Sphere Contested Matter with the Adversary Proceeding.

Dated: November 30, 2023
Houston, Texas

/s/ *Alfredo R. Pérez*
WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (15776275)
Clifford W. Carlson (24090024)
700 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone:   (713) 546-5000
Facsimile:   (713) 224-9511
Email: Alfredo.Perez @weil.com
        Clifford.Carlson@weil.com
-and-

WEIL, GOTSHAL & MANGES LLP
Ray C. Schrock (admitted *pro hac vice*)
David J. Lender (admitted *pro hac vice*)
Ronit J. Berkovich (admitted *pro hac vice*)
Theodore E. Tsekerides (admitted *pro hac vice*)
Christine A. Calabrese (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone:   (212) 310-8000
Facsimile:   (212) 310-8007
Email: Ray.Schrock@weil.com
        David.Lender@weil.com
        Ronit.Berkovich@weil.com
        Theodore.Tsekerides@weil.com
        Christine.Calabrese@weil.com

*Counsel for Debtors and Debtors in Possession*

### Certificate of Service

I hereby certify that on November 30, 2023, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/ *Alfredo R. Pérez*
Alfredo R. Pérez