IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 22-90341 (CML) |
| | § | |
| **CORE SCIENTIFIC, INC.**, *et al.*, | § | (Chapter 11) |
| | § | |
| | § | (Jointly Administered) |
| Debtors.[1] | § | Re: Docket. Nos. 642 & 1440 |

**OFFICIAL COMMITTEE OF EQUITY
SECURITY HOLDERS' MOTION FOR ENTRY OF
AN ORDER (I) INCREASING FEE CAP (II) AMENDING THE AGREED
ORDER DIRECTING APPOINTMENT OF AN OFFICIAL COMMITTEE
OF EQUITY SECURITY HOLDERS AND (III) GRANTING RELATED RELIEF**

> **THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:**

The Official Committee of Equity Security Holders (the "*Equity Committee*") of the above-referenced debtors and debtors in possession (collectively, the "*Debtors*") hereby files this

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (N/A); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisitions, LLC (0825); Starboard Capital LLC (6677); RADAR, LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions, VII, LLC (3198). The Debtors' corporate headquarters and service address is 210 Barton Springs Road, Suite 300, Austin, Texas 78704.

4866-5007-9106

motion (the "*Motion*") seeking (i) to increase the Equity Committee's Fee Cap (as defined below) to $6.75 million, (ii) a corresponding amendment of the *Agreed Order Directing Appointment of an Official Committee of Equity Security Holders* [Docket No. 642] (the "*OEC Appointment Order*"),[2] and (iii) such other relief as the Equity Committee may be entitled to, pursuant to the order substantially in the form attached hereto as **Exhibit A** (the "*Proposed Order*"). In support of this Motion, the Equity Committee respectfully states as follows:

## PRELIMINARY STATEMENT

1.   On March 7, 2023, the Court entered the OEC Appointment Order, which was the product of contentious litigation between an ad hoc group of equity security holders (the "*Ad Hoc Equity Group*"), the Debtors, and certain other key stakeholders, just as bitcoin prices began to rise from the near-historic lows of the "crypto winter" that precipitated the filing of these chapter 11 cases (the "*Chapter 11 Cases*").[3] The terms of the OEC Appointment Order, including the $4.75 million fee cap on the Equity Committee's professional fees (the "*Fee Cap*") and limited scope, reflected the prevailing circumstances and market conditions at the time it was entered.

2.   Since its appointment, the Equity Committee and its advisors have adapted to the changing circumstances of the crypto market and these Chapter 11 Cases and remained focused on one goal—achieving a value maximizing transaction through collaborative negotiations with the Debtors and other key stakeholders. These collaborative efforts have been productive and in the nearly nine months that have lapsed, these Chapter 11 Cases are now in a dramatically different

---

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the OEC Appointment Order and the *Motion of the Ad Hoc Group of Equity Holders of Core Scientific for an Order Directing the Appointment of an Official Committee of Equity Securities Holders* [Docket No. 458], as applicable.

[3]   In 2022, bitcoin prices began to fall precipitously from a high of approximately $68,000 per coin to $16,817.54 per coin as of the date the Debtors commenced these Chapter 11 Cases.

position than they were when the OEC Appointment Order was entered. Before the Equity Committee's appointment, and pursuant to the previous restructuring support agreement between the Debtors and the ad hoc group of convertible noteholders (the "***Ad Hoc Noteholder Group***"), the existing equity security holders and general unsecured creditors were positioned to *share in 3%* of the reorganized Debtors' common equity interests, subject to dilution. In contrast, under the Plan (defined below) existing equity security holders are positioned to receive an estimated 32% of the reorganized Debtors' common equity interests,[4] two tranches of warrants to purchase or exercise (as applicable) up to 44% of the equity in the reorganized Debtors in the future (if certain conditions are met), and the opportunity to participate in an equity rights offering to purchase additional equity in the reorganized Debtors at a 30% discount to the $1.5 billion Plan (defined below) enterprise value. Moreover, the Equity Committee is able to appoint two directors to the reorganized Debtors' board of directors. The litigation among the key stakeholders that defined the initial three months of the Chapter 11 Cases has been replaced by a months-long mediation that resulted in a global settlement of disputed issues (the "***Mediated Settlement***") among the Equity Committee, the Debtors, and the Ad Hoc Noteholder Group that was documented in a Restructuring Support Agreement (the "***RSA***") and will be implemented through the proposed confirmation of the *Third Amended Joint Chapter 11 Plan of Core Scientific, Inc. and its Affiliated Debtors* [Docket No. 1438] (the "***Plan***").[5]

---

[4] This percentage may vary and is subject to the resolution of Disputed Claims and corresponding distributions under the Plan, if any. *See Disclosure Statement For Third Amended Joint Chapter 11 Plan of Core Scientific, Inc. And Its Affiliated Debtors* [Docket No. 1439] (the "***Disclosure Statement***"), §§ I.A.iv., II.C.

[5] *See Notice of (I) Execution of Restructuring Support Agreement and (II) Filing of Solicitation Versions of (A) Third Amended Plan and (B) Disclosure Statement for Third Amended Plan* [Docket No. 1440].

3.  The Mediated Settlement is premised on an equity rights offering to existing equity holders to raise up to $55 million of capital (the "***ERO***"), which will provide the Debtors with the necessary liquidity to fund chapter 11 exit costs and ensure they are well capitalized at emergence. To guarantee the success of the ERO, the Equity Committee and its advisors have spent significant time and effort to obtain committed financing (predominantly from existing equity holders) to backstop the first $37.1 million of the ERO pursuant to the terms of a commitment letter (the "***Backstop Commitment Letter***"). On November 17, 2023, the Court entered the *Order (I) Authorizing Entry Into Backstop Commitment Letter, (II) Approving Performance of Obligations Thereunder, and (III) Granting Related Relief* [Docket No. 1444].

4.  The Equity Committee's capital raise process and the subsequent negotiation and documentation of the Backstop Commitment Letter in parallel with broader negotiations regarding the Mediated Settlement have required substantially more time and effort from the Equity Committee and its advisors than were anticipated when the OEC Appointment Order was entered. In sum, the Debtors' Plan is the culmination of collaboration between the Equity Committee, the Debtors, and the Ad Hoc Noteholder Group, involving the resolution of a myriad of issues in what is now a solvent debtor case and provides a meaningful recovery for existing equity holders. In connection with this heavy lift and tremendous outcome, and as previously disclosed to the Court and the other parties in interest, the Equity Committee's advisors' fees incurred to date exceed the Fee Cap. In accordance with and subject to the terms of the Mediated Settlement and the RSA, the Debtors and the Ad Hoc Noteholder Group have agreed to support the relief requested in this Motion and the increase of the Fee Cap for the fees and expenses of the Equity Committee's advisors to $6.75 million (the "***Increased Fee Cap***") so that the Equity Committee and its advisors may continue performing their statutory duties in the Chapter 11 Cases and consummate a

consensual chapter 11 plan of reorganization that maximizes value for all stakeholders, including existing equity security holders. The RSA and Plan also contemplate that the Equity Committee's advisors' fees may be higher than the Increased Fee Cap with any excess paid from the Debtors' estates but reducing, dollar for dollar, the amount of equity distributed to existing equity security holders under the Plan.[6]

5. Given the important role the Equity Committee and its advisors have played in facilitating the committed financing under the Backstop Commitment Letter and advancing negotiations regarding the Mediated Settlement so that the Debtors may confirm the Plan and emerge from bankruptcy, the Equity Committee and its advisors respectfully request that the Court amend the OEC Appointment Order to increase the Fee Cap to $6.75 million and grant the relief requested in the Motion.

## JURISDICTION AND VENUE

6. The United States Bankruptcy Court for the Southern District of Texas (the "*Court*") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). The Equity Committee confirms its consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

7. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[6] The Equity Committee is requesting that the Court enter the Proposed Order approving the Increased Fee Cap and any other amounts in excess thereof be approved in accordance with the RSA and confirmed Plan.

8.     The bases for the relief requested herein are section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9024.

## BACKGROUND

9.     On December 21, 2022, the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code amid a low point in bitcoin price. As the market rebounded substantially during the early months of these Chapter 11 Cases, the potential of residual value for existing equity security holders increased.[7] In response to these rapidly evolving market conditions, the Ad Hoc Equity Group filed a motion for an order seeking the appointment of an official committee of equity security holders. [*See* Docket No. 458]. The combination of instability in bitcoin prices and the lack of consensus among the key stakeholders led to significant litigation among key stakeholders, including the Ad Hoc Noteholder Group, which argued against the appointment of an official equity committee.

10.    On March 7, 2023, after resetting a contested hearing (the "***Hearing***"), the Court entered the OEC Appointment Order on an agreed basis, which, among other things, limited the Equity Committee's mandate to assisting in "(a) valuation and (b) negotiations, in each case related to determining the terms of confirmation of a chapter 11 reorganization plan," and also limited "the fees and expenses of the Official Equity Committee, inclusive of any fees and expenses of any legal and financial advisors to the Official Equity Committee," to $4.75 million. *See* OEC Appointment Order at ¶¶ 3, 8. Paragraph 4 of the OEC Appointment Order further provides that "[t]he [Fee Cap] can be increased with approval of the Bankruptcy Court, upon notice to the

---

[7] The rebound in the market had significant impacts on these Chapter 11 Cases, such as allowing the Debtors to obtain a replacement debtor in possession financing facility, which in turn led to the Debtors' termination of an RSA with the Ad Hoc Noteholder Group and revising their business plan, among others. [*See* Docket Nos. 389 and 517].

Debtors, the UCC, the Ad Hoc Noteholder Group, B. Riley, the U.S. Trustee, and other parties-in-interest, and a hearing." *See id.* at ¶ 4.

11. Following months of negotiations and mediation, on March 23, 2023, the U.S. Trustee appointed the Equity Committee in these Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code. *See Notice of Appointment of Official Committee of Equity Security Holders* [Docket. No. 724].

12. The Equity Committee subsequently selected Vinson & Elkins LLP ("***V&E***") and FTI Consulting, Inc. ("***FTI***") as its advisors. On May 25, 2023, the Court entered the *Order Authorizing the Retention and Employment of Vinson & Elkins LLP as Counsel for the Official Committee of Equity Security Holders* [Docket No. 933] and the *Order Authorizing Retention of FTI Consulting, Inc. as Financial Advisor for the Official Committee of Equity Security Holders Effective as of April 8, 2023* [Docket No. 934]. V&E and FTI worked quickly and efficiently to get up to speed and understand the complex legal issues facing the Equity Committee, as the fiduciary for all equity security holders in these Chapter 11 Cases.

13. On October 30, 2023, the Debtors filed the *Joint Notice of Agreement on Restructuring Term Sheet by and Among the Debtors, the Ad Hoc Noteholder Group, and the Equity Committee* [Docket No. 1367] (the "***Restructuring Term Sheet***"), which sets forth the economic terms of the Mediated Settlement.

14. With respect to the Fee Cap, the terms of the Mediated Settlement and the RSA contemplate the Equity Committee filing this Motion to increase the Fee Cap to $6.75 million. *See* Restructuring Term Sheet; RSA. Any additional fees allowed by the Court and paid to the Equity

7

Committee's advisors greater than $6.75 million will be paid in accordance with the confirmed Plan.[8]

15.  In order to resolve certain contested issues in the context of negotiations regarding the Mediated Settlement and the RSA, the Equity Committee also agreed to certain reasonable restrictions on the relief requested in this Motion.[9] Specifically, pursuant to the terms of the RSA, the Increased Fee Cap will automatically revert to $4.75 million in the event that:

- the Equity Committee does not affirmatively support the Plan;
- the Equity Committee, or any of the Equity Committee Members (as defined in the RSA), object to the Disclosure Statement or to confirmation of the Plan;
- the Equity Committee exercises its fiduciary out under the RSA; or
- the RSA is terminated as a result of a breach of any of the obligations of the Equity Committee or the Equity Committee Members.

*See* Restructuring Term Sheet; RSA §§ 1(uu), 8(e).

16.  The Equity Committee and its advisors have meaningfully contributed to the Chapter 11 Cases by engaging in significant and productive negotiations with the Debtors and other stakeholders to maximize value for the benefit of all equity security holders, and ultimately sponsor a Plan that will pay all creditors in full. The Equity Committee's efforts and the services performed by its advisors have helped achieve resolution of contested issues among the Debtors,

---

[8] According to the Plan and RSA, any additional fees paid to the Equity Committee's advisors greater than $6.75 million will reduce, dollar for dollar, the amount of equity distributed to existing equity holders under the Plan, and increase the amount of equity distributed to the secured creditors represented by the Ad Hoc Noteholder Group.

[9] For the avoidance of doubt, nothing in this Motion, the Restructuring Term Sheet, the RSA, or the Plan is intended to nor shall waive the Equity Committee's rights to seek further relief with respect to the OEC Appointment Order and the Fee Cap, which remain reserved.

the Equity Committee, and other stakeholders. Accordingly the Equity Committee respectfully requests that the Court grant the relief requested in the Motion.

## RELIEF REQUESTED

17. By this Motion, the Equity Committee requests that the Court: (i) increase the Equity Committee's Fee Cap to $6.75 million, (ii) amend the OEC Appointment Order with respect to the Fee Cap, and (iii) grant such other relief as the Equity Committee may be entitled.

## BASIS FOR RELIEF REQUESTED

18. Bankruptcy courts, as courts of equity, can modify or vacate a previous order so long as no intervening rights are prejudiced. *See In re Thomas*, 223 F. App'x 310, 314 n.4 (5th Cir. 2007) (quoting *In re Lenox*, 902 F.2d 737, 739-40 (9th Cir. 1990)).

19. Additionally, Rule 60(b) of the Federal Rules of Civil Procedure (the "***Civil Rules***"), made applicable to bankruptcy proceedings through Bankruptcy Rule 9024, provides, in pertinent part, that: "[O]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . (6) any other reason that justifies relief." FED. R. CIV. P. 60(b).

20. Civil Rule 60(b)(6) complements the discretionary power that bankruptcy courts have to reconsider, modify, or vacate their previous orders if the interests of justice so require. *See Laguna Royalty Co. v. Marsh*, 350 F.2d 817, 823 (5th Cir. 1965) ("Subsection 6 [of Civil Rule 60(b)] . . . has been construed as intending to 'make available those grounds which equity has long recognized as a basis for relief.'") (quoting *Bros Inc. v. W.E. Grace Mfg. Co.*, 320 F.2d 594, 608 (5th Cir. 1963)). Civil Rule 60(b)(6) permits relief "for any other reason justifying relief from the operation of the judgment." *In re Pettle*, 410 F.3d 189, 191 (5th Cir. 2005); *Klapprott v. U.S.*, 335 U.S. 601, 614-15 (1949) (holding that Civil Rule 60(b)(6) should be applied liberally to situations

9

not covered by the preceding five clauses of Civil Rule 60(b) so that the power to grant relief from judgment is available in the furtherance of justice).

21. While Civil Rule 60(b)(6) is often reserved as an extraordinary remedy, the request for relief set forth herein is justified given that the OEC Appointment Order itself expressly contemplates and provides specific procedures to increase the Fee Cap in response to the circumstances of the Chapter 11 Cases. *See* OEC Appointment Order at ¶ 4 ("The EC Fee Cap can be increased with approval of the Bankruptcy Court, upon notice to the Debtors, the UCC, the Ad Hoc Noteholder Group, B. Riley, the U.S. Trustee, and other parties-in-interest, and a hearing."). When it imposed the Fee Cap, the Court also indicated that different circumstances could justify reconsidering the Fee Cap at a later date *at the time of such request*. *See* Hearing Transcript, 10-11:25-7 (S.D. Tex. Mar. 1, 2023). At the Hearing, the Court stated:

> . . . [T]he Equity Committee and the Debtor agreed to a cap of $4.75 million and that cap can't be exceeded absent further Order from me. And I'm not going to be constrained by any consideration because . . . I don't know what I don't know. And so if there's a request that's filed to exceed the cap, I'll take it up based upon what I know at the time that the request is made . . . .

*Id.*

22. The Equity Committee and its advisors respectfully believe that the changed circumstances of these Chapter 11 Cases described above justifies increasing the Fee Cap and amending the OEC Appointment Order. The Equity Committee's important role and constructive impact in these Chapter 11 Cases was not known when the Fee Cap was established, and justifies increasing the Fee Cap in the OEC Appointment Order. The Equity Committee and its advisors have provided tangible benefits to all stakeholders in these Chapter 11 Cases through the Backstop Commitment Letter's $37.1 million of committed financing for the ERO. Additionally, general unsecured creditors are positioned to be paid in full due in part to the Equity Committee and its

advisors' efforts. In parallel, the Equity Committee and its advisors have engaged in challenging but constructive negotiations to resolve issues with the Debtors and the Ad Hoc Noteholder Group through the Mediated Settlement. Importantly, the terms of the Mediated Settlement that were ultimately memorialized in the Restructuring Term Sheet, the RSA, and the Plan specifically contemplate an increase of the Fee Cap. Further, as proposed, the Plan provides existing equity security holders with new equity, allows them to purchase or exercise (as applicable) additional equity through two tranches of warrants, the right to participate in a rights offering to purchase discounted equity, and the ability to appoint two directors to the reorganized Debtors' new board.

23. Increasing the Fee Cap is further warranted in light of the markedly different circumstances and conduct of the parties in the Chapter 11 Cases. Leading up to the Hearing and entry of the OEC Appointment Order, the Chapter 11 Cases were defined by contentious litigation among the parties, notably, prior to V&E and FTI's involvement. Since entry of the OEC Appointment Order, the Equity Committee and its advisors have avoided any "snippy" pleadings and actions that the Court previously noted and have worked productively with the Debtors and other stakeholders to perform their respective duties within the mandate the Court established in the OEC Appointment Order. To date, no party in interest has objected to the Equity Committee's interim fees or argued that the Equity Committee and its advisors have exceeded this mandate. Nor has any party in interest objected to the reasonableness or necessity of the fees and expenses the Equity Committee has incurred performing its statutory and fiduciary duties.

24. Further, the Equity Committee recognizes the interest of all parties in minimizing costs to the Debtors' estates and believes that the relief requested in this Motion will not prejudice the rights of the Debtors or any other parties in interest. The Equity Committee and its advisors are subject to the terms of the Interim Compensation Order and the fees and expenses of the Equity

11

Committee's advisors are subject to review under section 330 of the Bankruptcy Code and the Court's "hindsight review," as set forth on the record at the Hearing. As such, the Proposed Order appropriately balances the interests of other parties in these Chapter 11 Cases while also allowing the Equity Committee and its advisors to continue performing their important statutory and fiduciary duties on behalf of existing equity security holders in these Chapter 11 Cases.

## NOTICE

25. Notice of this Motion has been provided by delivery to: (a) the Office of the United States Trustee for the Southern District of Texas; (b) the Debtors, and Weil, Gotshal & Manges LLP as counsel to the Debtors; (c) the UCC, and Wilkie Farr & Gallagher LLP as counsel to the UCC; (d) Paul Hastings LLP as counsel to the Ad Hoc Noteholder Group; (e) Choate, Hall & Stewart LLP as counsel to B. Riley; and (f) those persons who have formally appeared in these Chapter 11 Cases and requested service pursuant to Bankruptcy Rule 2002. Considering the nature of the relief requested in this Motion, the Equity Committee submits that no further notice is necessary.

## NO PRIOR REQUEST

26. No prior motion for the relief requested herein has been made to this Court or any other court.

Dated: November 30, 2023  
Houston, Texas

Respectfully submitted,

*/s/ David S. Meyer*  
**VINSON & ELKINS LLP**

David S. Meyer (admitted *pro hac vice*)  
Lauren R. Kanzer (admitted *pro hac vice*)  
1114 Avenue of the Americas  
32nd Floor  
New York, NY 10036  
Tel: (212) 237-0000  
Fax: (212) 237-0100  
dmeyer@velaw.com; lkanzer@velaw.com

- and -

Paul E. Heath (Texas Bar No. 09355050)  
Harry A. Perrin (Texas Bar No. 15796800)  
Matthew J. Pyeatt (Texas Bar No. 24086609)  
Kiran Vakamudi (Texas Bar No. 24106540)  
845 Texas Avenue  
Suite 4700  
Houston, TX 77002  
Tel: (713) 758-2222  
Fax: (713) 758-2346  
pheath@velaw.com; hperrin@velaw.com;  
mpyeatt@velaw.com; kvakamudi@velaw.com

**COUNSEL FOR THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS**

**CERTIFICATE OF SERVICE**

      I certify that on November 30, 2023, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                          */s/ Paul E. Heath*
                                          One of Counsel

# EXHIBIT A

**Proposed Order**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| **CORE SCIENTIFIC, INC.,** *et al.,* | § | Case No. 22-90341 (CML) |
| | § | |
| | § | (Jointly Administered) |
| Debtors.[1] | § | Re: Dkt. No. ___ |

## ORDER (I) INCREASING FEE CAP, (II) AMENDING THE AGREED ORDER DIRECTING APPOINTMENT OF AN OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS, AND (III) GRANTING RELATED RELIEF

Upon the motion (the "***Motion***")[2] of the Equity Committee seeking an order (i) increasing the Fee Cap to $6,750,000, (ii) amending the OEC Appointment Order, and (iii) granting such other relief as the Equity Committee may be entitled to (the "***Order***"); and the Court having reviewed the Motion; and the Court having jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and the Court having found that good and sufficient cause exists for the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions, VII, LLC (3198). The Debtors' corporate headquarters and service address is 210 Barton Springs Road, Suite 300, Austin, Texas 78704.

[2] Capitalized terms used but not otherwise defined herein shall have the meaning set forth in the Motion.

4866-5007-9106

granting of the relief requested in the Motion after having given due deliberation upon the Motion, the hearing, and all of the proceedings before the Court in connection with the Motion, it is HEREBY ORDERED THAT:

1. This Order shall amend and supersede in all respects the OEC Appointment Order, dated March 7, 2023, at Docket No. 642.

2. The cap on the fees and expenses of the legal and financial advisors to the Equity Committee is increased to $6,750,000.00, and any fees paid in excess of such cap will be paid in accordance with the confirmed Plan.

3. Subject to paragraph 4 of this Order, the Equity Committee shall continue to serve and fulfill its fiduciary and statutory duties in accordance with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules.

4. The Equity Committee and its advisors shall be subject to the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* [Docket No. 541].

5. In accordance with the terms of the RSA, the fee cap established by this Order shall automatically revert, without further order from the Court, to $4.75 million in the event that:

   a. the Equity Committee does not affirmatively support the Plan;

   b. the Equity Committee, or any of the Equity Committee Members, object to the Disclosure Statement or to confirmation of the Plan;

   c. the Equity Committee exercises its fiduciary out under the RSA; or

   d. the RSA is terminated in accordance with the terms thereof as a result of a breach of any of the obligations of the Equity Committee or the Equity Committee Members.

6. The allowance of fees and expenses incurred by the Equity Committee and any advisors retained by the Equity Committee shall comply with sections 328, 330, and 331 of the

3

Bankruptcy Code (as applicable) and applicable provisions of the Bankruptcy Rules, Local Rules, and any other applicable procedures and orders of the Court.  Additionally, the Court may further review the fees and expenses of the Equity Committee and its advisors to determine whether the work underlying the incurrence of such fees has advanced the interests of the Debtors' existing equity security holders consistent with the record at the Hearing.

7. The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Dated: _____, 2023
Houston, Texas

_____
**CHRISTOPHER M. LOPEZ**
**UNITED STATES BANKRUPTCY JUDGE**