IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | § § | Chapter 11 |
| CORE SCIENTIFIC, INC., *et al.,* | § § § | Case No. 22-90341 (CML) |
| Debtors.[1] | § § § § | (Jointly Administered) |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER
(I) AUTHORIZING CORE SCIENTIFIC, INC.'S ENTRY INTO
<u>ASSET PURCHASE AGREEMENT AND (II) GRANTING RELATED RELIEF</u>**

> **IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE ELECTRONICALLY AT HTTPS://ECF.TXSB.USCOURTS.GOV/ WITHIN TWENTY-ONE (21) DAYS FROM THE DATE THIS MOTION WAS FILED. IF YOU DO NOT HAVE ELECTRONIC FILING PRIVILEGES, YOU MUST FILE A WRITTEN OBJECTION THAT IS ACTUALLY RECEIVED BY THE CLERK WITHIN TWENTY-ONE DAYS FROM THE DATE THIS MOTION WAS FILED. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

Core Scientific, Inc. ("**Core**") and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), respectfully represent as follows in support of this motion (the "**Motion**"):

**Preliminary Statement**

1. A significant part of the Debtors' revenue involves the mining of digital assets for their own account ("**Self-Mining**") through specialized machines ("**Miners**") and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions VII LLC (3198). The Debtors' corporate headquarters is 210 Barton Springs Road, Suite 300, Austin, Texas 78704. The Debtors' service address is 2407 S. Congress Ave, Suite E-101, Austin, Texas 78704.

subsequently selling the digital assets. The Debtors have participated in Self-Mining since their inception and have established an industry-leading bitcoin Self-Mining operation. The Debtors' share of owned/leased Miners used for Self-Mining (as opposed to Miners the Debtors host for customers) at their data centers has grown substantially over the past few years to approximately 70%.

2. A critical aspect of the Debtors' business plan is to optimize and expand their existing Self-Mining operation to take advantage of the improving bitcoin-specific macroeconomic environment. To implement this goal, the Debtors (and Reorganized Debtors, post-emergence) seek to acquire additional new Miners to (i) replace old Miners at the Debtors' existing facilities to increase the Self-Mining hash rate and (ii) fill open capacity at the Debtors' facilities that are currently under construction, thereby improving the overall mining efficiency and capacity of the Debtors' Miner fleet.

3. Accordingly, the Debtors seek Court approval to enter into and perform under that certain Asset Purchase Agreement, dated September 5, 2023, by and between Core and Bitmain Technologies Delaware Limited ("**Bitmain**"), attached as Exhibit 1 to the Proposed Order, amended by that certain Amendment to Asset Purchase Agreement (the "**APA Amendment**"), dated November 6, 2023, attached as Exhibit 2 to the Proposed Order (together, the "**Asset Purchase Agreement**"). Under the Asset Purchase Agreement, the Debtors will purchase 27,000 units of S19j XP Miners (the "**Purchased Assets**") from Bitmain, which will be delivered prior to the date of the Debtors' emergence from these chapter 11 cases (the "**Effective Date**") for a purchase price of $77.1 million (the "**Purchase Price**"), approximately $53.9 million of which will be paid in the common equity of the Reorganized Debtors at Plan Value (the "**New**

**Common Interests**")[2] and approximately $23.1 million will be paid in cash. The effectiveness of the Asset Purchase Agreement is subject to the occurrence of the Effective Date of the Plan and the Purchase Price will be paid following the Effective Date in accordance with Schedule B attached to the APA Amendment. Entry into the Asset Purchase Agreement provides significant benefits to the Debtors by allowing the Reorganized Debtors to acquire efficient Miners at a competitive rate in furtherance of their business plan and to preserve liquidity by paying primarily in equity.

4. As more fully set forth below, the Debtors believe entering into the Asset Purchase Agreement reflects a valid exercise of the Debtors' business judgment.

### Relief Requested

5. By this Motion, pursuant to sections 105(a) and 363(b) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Debtors request entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"), (i) authorizing Core to enter into and perform under the Asset Purchase Agreement and (ii) granting related relief.[3]

### Jurisdiction

6. The United States Bankruptcy Court for the Southern District of Texas (the "**Court**") has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core

---

[2] "New Common Interests" has the same meaning as defined under the *Third Amended Joint Chapter 11 Plan of Core Scientific, Inc. And Its Affiliated Debtors* (Docket No. 1438) (ass as may be amended, modified or supplemented, the "**Plan**").

Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Asset Purchase Agreement or the Plan, as applicable.

[3] Although the Debtors have not filed an accompanying declaration with this Motion, to the extent the Motion is contested or the Court otherwise deems it appropriate, the Debtors will file an accompanying declaration(s) and make such parties available for cross examination.

3

proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

**A.     The Debtors' Chapter 11 Cases, Disclosure Statement, and Plan**

7.      On December 21, 2022 (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary case under the Bankruptcy Code. The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

8.      The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b) and Rule 1015-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Local Rules**").

9.      On January 9, 2023, the United States Trustee for Region 7 (the "**U.S. Trustee**") appointed an official committee of unsecured creditors in these chapter 11 cases pursuant to section 1102 of the Bankruptcy Code. On March 23, 2023, the U.S. Trustee appointed an official committee of equity security holders. No trustee or examiner has been appointed in these chapter 11 cases.

10.     On November 16, 2023, the Debtors filed the *Third Amended Joint Chapter 11 Plan of Core Scientific, Inc. and its Affiliated Debtors* (Docket No. 1438) (including any exhibits and schedules thereto and as may be modified, amended, or supplemented, the "**Plan**") and related Disclosure Statement (Docket No. 1439). On November 17, 2023, the Debtors commenced solicitation of the Plan. The hearing to consider confirmation of the Plan is scheduled for December 22, 2023.

B.  **The Asset Purchase Agreement**

      11.  The principal terms of the Asset Purchase Agreement are set forth below:[4]

- Bitmain shall sell, convey, assign, transfer, and deliver to Core, and Core shall purchase, acquire, and accept from Bitmain, all of Bitmain's right, title, and interest in and to the Purchased Assets;

- The Purchased Assets will be delivered to Core prior to the Effective Date pursuant to Order 9 to that certain *Master Services Agreement* by and between Core and Bitmain Technologies Georgia Limited, dated as of September 7, 2021.

- With respect to the Purchased Assets delivered to Core prior to final closing of the Asset Purchase Agreement, Core may operate such Purchased Assets.

  - Core shall sell any and all of the mining proceeds earned from the operation of such Purchased Assets and transfer all funds received from the disposal of such mining proceeds to Bitmain on a weekly basis on each Friday prior to and on the Final Closing (such transferred funds, the "**Operating Transferred Funds**").

- Core will pay Bitmain an aggregate purchase price of approximately $77.1 million (the "**Purchase Price**"), including approximately $23.1 million in cash (the "**Cash Consideration**") and approximately $53.9 million in New Common Interests;[5] the Operating Transferred Funds shall be deemed as partial payment of the Cash Consideration.

  - The schedule for payment of the Purchase Price is as follows:

---

[4] This summary is qualified in its entirety by reference to the applicable provisions of Asset Purchase Agreement. To the extent there exists any inconsistency between this summary and the provisions of the Asset Purchase Agreement, the provisions of the Asset Purchase Agreement shall control.

[5] "New Common Interests" has the same meaning as defined in the Plan.

| | Date | Cash | Equity | % of Total |
|---|---|---|---|---|
| **Purchase Price Payment Timing** | No later than five (5) Business Days following the Effective Date, unless otherwise agreed by the Debtors ("**Payment A**") | $7,705,670.10 | $53.939,690.92 | 80% |
| | On or before the date that is thirty (30) days after the Effective Date, unless otherwise agreed by the Debtors ("**Payment B**") | $7,705,670.10 | None. | 10% |
| | On or before the date that is sixty (60) days after the Effective Date, unless otherwise agreed by the Debtors ("**Payment C**") | $7,705,670.10 | None. | 10% |
| | Total | $23,117,010.31 | New Common Interests with value of $53,939,690.72 | 100% |

- Title to Purchased Assets will be transferred to Core upon payment by Core of each installment payment proportionate to the ratio of such payment amount to the aggregate consideration to be paid.

- The execution of the Asset Purchase Agreement is conditioned upon Court approval of the Proposed Order and the occurrence of the Effective Date.

## **The Relief Requested Should Be Granted**

12. Although the Debtors believe that entry into agreements to acquire new Miners generally falls within the ordinary course of the Debtors' business and is consistent with the Debtors' prepetition practices and common to the Debtors' industry, out of an abundance of caution and in satisfaction of a condition to the effectiveness of the Asset Purchase Agreement, the Debtors seek the Court's approval under section 363(b) of the Bankruptcy Code to enter into the Asset Purchase Agreement.

13. Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that debtors "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). A court may authorize a debtor to use estate property upon a finding that such use is supported by sound business reasons. *See, e.g.*, *In*

*re Cont'l Air Lines*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business."). Once a debtor articulates a reasonable basis for its business decisions, "courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). There is a presumption that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).

14. Thus, if a debtor's actions satisfy the business judgment test, then the transaction in question should be approved under section 363(b) of the Bankruptcy Code. Indeed, when applying the "business judgment" standard, courts show great deference to a debtor's business decisions. *See id.* at 656 ("Courts are loath to interfere with corporate decisions absent a showing of bad faith, self-interest, or gross negligence."); *see also Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985) ("More exacting scrutiny would slow the administration of the debtor's estate and increase its cost, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially."); *In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) ("Overcoming the presumptions of the business judgment rule on the merits is a near-Herculean task.").

15. In addition, section 105 of the Bankruptcy Code provides, in relevant part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a); *see also In re Cooper Props. Liquidating Trust,*

*Inc.*, 61 B.R. 531, 537 (Bankr. W.D. Tenn. 1986) (noting that the bankruptcy court is "one of equity and as such it has a duty to protect whatever equities a debtor may have in property for the benefit of its creditors as long as that protection is implemented in a manner consistent with the bankruptcy laws").

16. The Debtors submit that entering into the Asset Purchase Agreement represents a reasonable exercise of the Debtors' sound business judgment. Following extensive good faith and arm's-length negotiations, the Debtors and Bitmain reached agreement on terms that the Debtors believe are fair and reasonable. The Asset Purchase Agreement provides the Debtors with 27,000 units of new, more efficient Miners, which the Reorganized Debtors need to replace old Miners at the Debtors' existing facilities to increase the Self-Mining hash rate and/or fill new open capacity at the Debtors' facilities that are currently under construction and development. The Asset Purchase Agreement also allows the Reorganized Debtors to acquire the Purchased Assets for future uses at a competitive price. Moreover, and more importantly, Core will pay a significant portion of the consideration under the Asset Purchase Agreement in New Common Interests. The ability to purchase new Miners with a portion of the Purchase Price paid in New Common Interests reduces the Reorganized Debtors' new capital needs upon emergence and allows the Reorganized Debtors to save $53.9 million in cash capital expenditures that the Reorganized Debtors would otherwise have to spend to acquire new Miners of a similar quantity and quality, a significant savings compared to the Debtors' projected Miner-related total capital expenditures.

17. Accordingly, the Debtors submit that entry into the Asset Purchase Agreement represents a reasonable exercise of their sound business judgment, is in the best

interests of the Debtors, their respective estates, and creditors, and respectfully request that the Court authorize entry into such agreement.

## Waiver of Bankruptcy Rule 6004(h)

18. Given the hearing to confirm the Debtors' plan is currently scheduled for December 22, 2023 and the Debtors expect to emerge from these chapter 11 cases shortly after, the Debtors respectfully request that the Court waive the 14-day stay of effectiveness of the order approving this Motion under Bankruptcy Rule 6004(h). The Asset Purchase Agreement is a critical component of the Debtors' Plan, and as such, the relief requested herein is critical to the Debtors' ability to implement the Plan that maximizes the value of their estates for the benefit of all stakeholders.

## Notice

19. Notice of this Motion will be served on any party entitled to notice pursuant to Bankruptcy Rule 2002 and any other party entitled to notice pursuant to Bankruptcy Local Rule 9013-1(d).

[*Remainder of Page Intentionally Left Blank*]

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated:  December 1, 2023
       Houston, Texas

                        Respectfully submitted,

                         /s/  Alfredo R. Pérez
WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (15776275)
Clifford W. Carlson (24090024)
700 Louisiana Street, Suite 1700
Houston, Texas  77002
Telephone: (713) 546-5000
Facsimile:  (713) 224-9511
Email:  Alfredo.Perez@weil.com
       Clifford.Carlson@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Ray C. Schrock (admitted *pro hac vice*)
Ronit J. Berkovich (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:   (212) 310-8007
Email:  Ray.Schrock@weil.com
       Ronit.Berkovich@weil.com

*Attorneys for Debtors
and Debtors in Possession*

10

**Certificate of Service**

I hereby certify that on December 1, 2022, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                                            /s/ Alfredo R. Pérez
                                                           Alfredo R. Pérez