## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |
|---|---|
| In re:<br><br>CORE SCIENTIFIC, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 22-90341 (CML)<br><br>(Jointly Administered)<br><br>Re: D.I. 1080, 1178, 1228, 1313, 1438, 1439, 1460 |

**LEAD PLAINTIFF'S REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR CLASS TREATMENT UNDER FED. R. BANKR. P. 7023 FOR (I) A CLASS PROOF OF CLAIM, (II) CERTIFYING CLASS FOR PURPOSES OF THE CLASS PROOF OF CLAIM, (III) AN OMNIBUS OPT-OUT OF THE PLAN'S NONDEBTOR THIRD PARTY RELEASES, (IV) CERTIFYING CLASS FOR PURPOSES OF THE OMNIBUS OPT-OUT OF THE PLAN'S NONDEBTOR THIRD PARTY RELEASES, AND (V) OTHER RELIEF**

**THE ROSEN LAW FIRM, P.A.**

**CONDON TOBIN SLADEK THORNTON NERENBERG PLLC**

Phillip Kim (admitted pro hac vice)
Joshua Baker (admitted pro hac vice)
275 Madison Avenue, 40th Floor
New York, NY 10116
Phone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: jbaker@rosenlegal.com

Stuart L. Cochran
Texas Bar No.: 24027936
8080 Park Lane, Suite 700
Dallas, Texas 75231
Telephone: (214) 265-3800
Facsimile:  (214) 691-6311
scochran@condontobin.com

*Lead Counsel for Lead Plaintiff*

*Liaison Counsel for Lead Plaintiff*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions, VII, LLC (3198). The Debtors' corporate headquarters and service address is 210 Barton Springs Road, Suite 300, Austin, Texas 78704.

**THE SCHALL LAW FIRM**
Brian Schall
Rina Restaino
2049 Century Park East, Suite 2460
Los Angeles, CA 90067
Phone: (310) 301-3335
Fax: (213) 519-5876
Email: brian@schallfirm.com
Email: rina@schallfirm.com

*Additional Counsel for Lead Plaintiff*

Lead Plaintiff Morgan Hoffman and the named plaintiffs Evan Achee and William J. Emanuel ("Plaintiffs")[2], by and through their undersigned counsel, hereby respectfully submit this Reply Memorandum in Further Support of the Motion for Class Treatment under Fed. R. Bankr. P. 7023 for (i) a Class Proof of Claim, (ii) Certifying Class for Purposes of the Class Proof of Claim, (iii) an Omnibus Opt-Out of the Plan's Nondebtor Third Party Releases, (iv) Certifying Class for Purposes of the Omnibus Opt-Out of the Plan's Nondebtor Third Party Releases, and (v) Other Relief, on behalf of themselves individually and on behalf of all others similarly situated.

1.      Preliminarily, Debtors do not oppose Plaintiffs' right to submit an individual proof of claim and their right to opt-out of the Plan's nonconsensual nondebtor third party releases. *See* D.I. 1313; *see also* D.I. 1080. No other party or interested third party filed any opposition to Plaintiffs' motion or Proof of Claim. *See* D.I. 1313; *In re Think Fin., LLC*, 2018 WL 9801454, at *6 (Bankr. N.D. Tex. Aug. 30, 2018) ("In addition, it is notable that neither the Official Committee of Unsecured Creditors nor any individual creditors opposed the relief sought in the 7023 Motions.").

2.      Debtors oppose class treatment of Plaintiffs' proof of claim and omnibus opt-out of the Plan's nonconsensual releases because "none of the criteria courts have considered for allowing a class proof of claim" are present in this case—relying on the Northern District of Texas case *Craft* setting forth factors courts consider in applying class treatment. D.I. 1313 ¶ 9 (citing 321 B.R. 189, 199 (Bankr. N.D. Tex. 2005)).

---

[2] Court-appointed Lead Plaintiff Morgan Hoffman makes the instant motion. As is common in class actions, additional named plaintiffs have joined Lead Plaintiff to ensure the Class is protected and the claims are prosecuted. *See e.g., In re Jan. 2021 Short Squeeze Trading Litig.,* 2021 WL 4840857, at *5 (S.D. Fla. Oct. 15, 2021) (citing cases). As such, and to avoid any doubt, the term "Plaintiffs" includes the Lead Plaintiff and the additional named plaintiffs Evan Achee and William J. Emanuel. The additional named plaintiffs Evan Achee and William J. Emanuel join in Lead Plaintiff's motion to ensure the Class is protected.

3.       Contrary to Debtors' assertions, the *Craft* factors support class treatment. The relevant *Craft* factors are "to a greater or lesser degree, prejudice to the debtor or its other creditors, prejudice to putative class members, efficient estate administration, the conduct in the bankruptcy case of the putative class representatives, and the status of proceedings in other courts." *In re Craft*, 321 B.R. at 199.

***No Prejudice to Debtor or its Other Creditors***

4.       There is no "prejudice to the debtor or its other creditors[.]" *In re Craft*, 321 B.R. at 199. Here, Debtors and all other relevant parties have been on notice regarding the Securities Action since at least November 2022—over a month *before* the bankruptcy petition was filed. Moreover, Defendants, who are nondebtor third parties, can still litigate the claims in the Securities Action. Finally, to the extent Debtors hold relevant insurance which the Class may seek, Debtors' insurance can litigate the claims of the Class as well. That Debtors claim prejudice is insufficient— Debtors must demonstrate it, which they cannot.

***Absolute Prejudice to Class Members***

5.       There would be absolute "prejudice to putative class members[.]" *In re Craft*, 321 B.R. at 199. Under the Debtors' Plan, they purport to release Class Members' claims against Defendants (nondebtors). *See generally* D.I. 1178 and 1228.

***Class Treatment Allows Efficient Estate Administration***

6.        "[E]fficient estate administration," requires the Class Claim and an omnibus opt-out. *In re Craft*, 321 B.R. at 199.  Debtors have never set forth any evidence or any specific facts showing that allowing a Class Proof of Claim and Omnibus Opt-Out of the nonconsensual nondebtor third party releases is necessary for the plan promulgation process or the Plan itself. Indeed, no consideration is being provided for the nonconsensual nondebtor third party releases and many of

the Defendants are not even current or former officers and directors of a Debtor.[3] Indeed, Debtors never moved to extend the automatic stay to the Defendants in the Securities Action, which is an admission that the pendency and litigation of the Securities Action has no material impact to efficient estate administration.

7.      Here, Debtors imply it is more efficient to deny class status for the benefit of the Class *but* have already used a class-like device through its First Omnibus Claims Objection. D.I. 1460; s*ee In re Pac. Sunwear of California, Inc.*, 2016 WL 3564484, at *6 (Bankr. D. Del. June 22, 2016) (recognizing that disallowance of a class claim but allowing omnibus objections results in the same outcome *but* with likely no counsel for creditors); *see also In re Think Fin.*, 2018 WL 9801454, at *6 (recognizing "the more streamlined claims resolution process provided by class claims" counterbalance any concerns of inefficiencies in class treatment in bankruptcy).

***Plaintiffs Have Consistently and Timely Made All Positions Clear; Including Pre-Petition***

8.      "[T]he conduct in the bankruptcy case of the putative class representatives" demonstrates that there is *no* prejudice to Debtors or other creditors. *In re Craft*, 321 B.R. at 199. Plaintiffs have complied with every task and deadline imposed by this Court, Debtors, and the Bankruptcy Code. *See In re Think Fin.,* 2018 WL 9801454 ("The class representatives have been

---

[3] The Defendants are: Core's former Chief Executive Officer ("CEO") and Chairman of Core's board of directors, Michael Levitt ("Levitt"), Core's former Chief Financial Officer ("CFO") Michael Trzupek ("Trzupek"), Core's CFO Denise Sterling ("Sterling"), Core's Chief Vision Officer and former Co-Chair of Core's board of directors Darin Feinstein ("Feinstein"), Core's former Chief Accounting Officer Brian Neville ("Neville"), Core's Board member Jarvis Hollingsworth ("Hollingsworth"), Core's co-founder and Board member Matt Minnis ("Minnis"), Core's Board member Stacie Olivares ("Olivares"), Core's Board member Kneeland Youngblood ("Youngblood"), Power & Digital Infrastructure Acquisition Corp.'s ("XPDI") CEO and Board member Patrick C. Eilers ("Eilers"), XPDI's Chair Theodore J. Brombach ("Brombach"), XPDI's Board member Paul Gaynor ("Gaynor"), XPDI's Board member Paul Dabbar ("Dabbar"), XPDI's Board member Colleen Sullivan ("Sullivan"), and XPDI's Board member Scott Widham ("Widham"). Securities Action, D.I. 62 ¶¶ 32-48; *see also* D.I. 1116 at 51 n.23, n. 24.

3

active participants in these Bankruptcy Cases and have taken appropriate actions to diligently pursue their rights in a timely manner.").

9.      Moreover, Plaintiffs have stated their positions clearly in the Securities Action since November 2022 and in this Court at every available turn. Claim No. 49, Claim No. 556; *see e.g.,* D.I. 1132, 1178, 1228.

***Motion to Dismiss Briefed and Pending in the Securities Action***

10.      Finally, "the status of proceedings in other courts" demonstrates that many of Debtors' citations are inapplicable here and substantial justice and equity requires class treatment *for* Plaintiffs (instead of solely *for* Debtors as Debtors argue). *In re Craft*, 321 B.R. at 199; s*ee In re Pac. Sunwear,* 2016 WL 3564484, at *6.

11.      Additionally, contrary to Debtors assertions, the factors set forth in *Musicland* also support class treatment. D.I. 1313 ¶ 13.

***Pre-Petition Class Certification Not Required or Possible***

12.      First, "the class was certified pre-petition" factor *does not apply* in cases in which that is *not possible*. *In re Think Fin.,* 2018 WL 9801454, at *4 ("In cases such as this one where there was not time to certify a class before the petition date, the Court agrees that 'the issue of prepetition certification loses its relevance.'") (quoting *In re MF Global, Inc*., 512 B.R. 757, 763 (Bankr. S.D.N.Y. 2014)); *see also In re Vanguard Nat. Res., LLC*, 2017 WL 5573967, at *4 (Bankr. S.D. Tex. Nov. 20, 2017) (Isgur, J.) ("Finally, the Court finds that a putative representative may file a conditional class proof of claim on behalf of a putative class that may later be certified—making the putative representative an actual agent of the class.").

***Notice Not Received or Attempted to Class Members***

13.     Second, "the putative class members received notice" factor of the bar date did not occur here. *In re Musicland Holding Corp.*, 362 B.R. 644, 650 (Bankr. S.D.N.Y. 2007). *See infra.*, ¶ 25-33 Even worse, the required actual notice to Class Members was never even attempted. *See infra.*, ¶ 25-26.

***Class Treatment Allows Efficient Estate Administration***

14.     Third "class certification will [not] adversely affect the administration" of the estate simply does exist here. *Musicland*, 362 B.R. at 650. There is no evidence that Debtors' estates would be impacted if the Class Claim or Omnibus Opt-Out are allowed. In fact, recognizing the efficiency of class and class-like devices in these bankruptcy proceedings, Debtors have already used a class-like device in this case against certain Class Members. D.I. 1460.

**No Reason Under 11 U.S.C. § 502(b) Proffered to Disallow Class Claim**

15.     Further, Debtors never cite 11 U.S.C. § 502(b) for any specific legal basis for the disallowance of the Class Claim—only objecting to the fact that it is a Class Claim (which are allowed by the Bankruptcy Code). *See* D.I. 1080 (merely citing but not demonstrating through evidence that 11 U.S.C. § 502(b)(1) is relevant); D.I. 1313; *see also In re Heisler*, 2021 WL 3814743, at *2 (Bankr. E.D. La. Aug. 13, 2021), *appeal dismissed,* 2021 WL 5386636 (E.D. La. Nov. 18, 2021), and *aff'd,* 2022 WL 912196 (E.D. La. Mar. 29, 2022), *appeal dismissed sub nom. Matter of Heisler*, 2023 WL 3224355 (5th Cir. Jan. 6, 2023) ("[m]ere allegations, unsupported by evidence, are insufficient to rebut the [claimant's] prima facie case.") (quoting *Toma Steel Supply, Inc. v. TransAmerican Natural Gas Corp. (In re TransAmerican Natural Gas Corp.)*, 978 F.2d 1409, 1416 (5th Cir. 1992)).

**Class Treatment is Consistent with the PSLRA; Majority of Courts Allow Class Treatment**

16.     Class treatment is consistent with and integral to the PSLRA. Debtors fail to demonstrate that the PSLRA and the District Court appointing Lead Plaintiff pursuant to that statute are meaningless in this case. *See e.g.,* D.I. 1313. Notably, Debtors do not cite any bankruptcy case in which a PSLRA class was denied class certification. D.I. 1313; *but see In re F-Squared Investment Management, LLC*, 546 B.R. 538, 546-47 (Bankr. D. Del. 2016) (Lead Plaintiffs in a connected PSLRA case allowed to file a (post-confirmation) class claim before any class certification).

17.     Importantly, the Bankruptcy Code allows for class treatment. Fed. R. Bankr. P. 7023, 9014; Fed. R. Civ. P. 23; *see also In re Jones*, No. 22-33553, 2023 WL 6938266, at *4 (Bankr. S.D. Tex. Oct. 19, 2023) (Lopez, J.) ("Interpreting the Bankruptcy Code begins with analyzing the text.") (citing cases).

18.     Unsurprisingly, class treatment is the overwhelming majority rule. *E.g., Gentry v. Siegel*, 668 F.3d 83, 91 (4th Cir. 2012); *Reid v. White Motor Corp.*, 886 F.2d 1462, 1470 (6th Cir. 1989); *In re American Reserve Corp.*, 840 F.2d 487 (7th Cir. 1988); *In re Birting Fisheries, Inc.*, 92 F.3d 939, 940 (9th Cir. 1996); *The Certified Class in the Chartered Securities Litig. v. The Charter Co. (In re The Charter Co.)*, 876 F.2d 866, 873 (11th Cir. 1989); *In re Trebol Motors Distrib. Corp.*, 220 B.R. 500, 502 (B.A.P. 1st Cir. 1998); *In re Chateaugay Corp.*, 104 B.R. 626, 634 (S.D.N.Y. 1989); *In re First Interregional Equity Corp.*, 227 B.R. 358, 366 (Bankr. D.N.J. 1998); *In re Amdura Corp.*, 170 B.R. 445, 449 (D. Colo. 1994).

19.     Indeed, Judge Isgur recognized and utilized the same majority reasoning. *In re Vanguard*, 2017 WL 5573967, at *3 ("Bankruptcy Rule 9014(c) governs contested matters and authorizes bankruptcy courts to direct that Rule 7023—and thus Rule 23—applies to a contested matter.") (citing Fed. R. Bank. P. 9014(c)).

20.     Finally, *In re Think Fin.*, the Bankruptcy Court for the Northern District of Texas granted a motion for class claims because, as is true here, "the application of Bankruptcy Rule 7023 provides a better avenue for providing creditors with a process for recovering on their alleged claims." *In re Think Fin.,* 2018 WL 9801454, at *7.

21.     Debtors argument that Fed. R. Bank. P. 3001(b) requires a signed agent to file a class claim relies on the outlier case *FirstPlus* which disallowed class claims generally. D.I. 1313 ¶ 6-7.

22.     As is clear in the majority view this narrow reading of Fed. R. Bank. P. 3001(b) without context is an outlier position. *In re Vanguard*, 2017 WL 5573967, at *4 (rejecting the approach of *FirstPlus* and narrow use of Fed. R. Bank. P. 3001(b)); *In re Craft*, 321 B.R. at 191-92 (same); *see also In re Kaiser Grp. Int'l, Inc.*, 278 B.R. 58, 63 (Bankr. D. Del. 2002) ("we conclude that Rule 3001(b) does not prohibit the filing of class claims by a putative class representative").

23.     In sum, "[t]o deny the use of a class claim would frustrate this policy and, as a practical matter, leave the majority of small claimants in bankruptcy proceedings without a remedy." *In re Zenith Lab'ys, Inc.*, 104 B.R. 659, 663 (D.N.J. 1989).

**Notice to Class Members Was Inadequate**

24.     Debtors' argue that the method of notice for the Bar Date Notice and the Solicitation Packages and Release Opt Out Forms provide sufficient notice to class members. *See generally* D.I. 1313. This is false on a number on grounds.

25.     <u>First</u>, the notice issued here did not and will not provide notice to the entire class. Those Class Members to which no attempt at notice was made include: (1) those who hold claims under Section 14(a) of the Securities Exchange Act of 1934 ("Exchange Act") by having held the common stock of XPDI at the close of business on December 7, 2021, and were entitled to vote on

the approval of the Merger at the special meeting of XPDI stockholders on January 19, 2022; (2) those who hold claims pursuant to Sections 10(b) and 20(a) of the Exchange Act by purchasing or acquiring XPDI or Core warrants and call options as well as those who sold put options during the January 3, 2022 through December 20, 2022 Class Period; and (3) those who hold claims pursuant to Sections 11 and 15 of the Securities Act of 1933 by acquiring warrants pursuant or traceable to the Registration Statement issued in connection with the Merger. *See* Securities Action, D.I. 62 ¶ 2.

26.     According to the Paul Mulholland, the President of Strategic Claims Services ("SCS"), a nationally recognized class action administration firm, notice for PSLRA class actions is provided to an *entire class* not a narrow subset. Affidavit of Paul Mulholland (Mulholland Affidavit ) ¶ 3-8,  filed herewith.

27.     <u>Second</u>, the publication notice here was paywalled and primarily included very small newspapers. *See* D.I. 1313 ¶ 17. There is no PSLRA case that approved such notice. Mulholland Affidavit ¶ 10. Moreover, no newswire service was utilized, which is a form of notice that is an approved supplement with mailing. *See* Mulholland Affidavit ¶¶ 10, 17.

28.     <u>Third</u>, the opt-out forms are misleading as it suggests Class Members will receive (i) a Pro Rata Equity Share of the Residual Equity Pool, (ii) a Pro Rata Equity Share of New Warrants, and (iii) in lieu of the right to participate in the Rights Offering, either Cash, New Common interests, New Warrants or some combination. D.I. 1447 at 148. However, according to Debtors' other filings they will not. *E.g.*, D.I. 1460 (objecting to the majority of the individual claims filed by Class Members, using a class-like device); D.I. 1313 at 6 n. 7. This misleading nature is worse here as "if the class claims are not allowed to proceed, those who filed proofs of claim without counsel will be significantly more vulnerable to claim objections, as they would be forced to defend their individual claims by themselves." *In re Think Fin.,* 2018 WL 9801454, at *6.

29.     <u>Fourth</u>, Debtors argue notice procedures for the Bar Date and repeated for the Disclosure Statement and Proposed Plan, were sufficient because approximately 35 Class Members submitted proofs of claim. D.I. 1313 at 10 n. 10. Such a small claims rate is absurd and is evidence that notice was insufficient. *In re Think Fin.,* 2018 WL 9801454, at *5 (finding a less than 1% claim submission rate weighed *heavily* in favor of granting the class claim motions which were granted). Given that over 1.66 billion *shares* traded during the Class Period, Mr. Mulholland would expect "there would likely be thousands if not tens of thousands of proof of claim forms submitted in a PSLRA securities class action settlement." Mulholland Affidavit, ¶ 22.

30.     Consequently, the requisite "actual notice" was not provided to class members in order to discharge their claims.  "A debtor must provide actual notice to all 'known creditors' in order to discharge their claims." *In re Placid Oil Co.*, 753 F.3d 151, 154 (5th Cir. 2014) (quoting *City of New York v. New York, N.H. & H.R. Co.,* 344 U.S. 293, 295–97, 73 S.Ct. 299, 97 L.Ed. 333 (1953)).  "Known creditors include both claimants actually known to the debtor and those whose identities are 'reasonably ascertainable.'" *Id.* (quoting *Tulsa Prof'l Collection Servs., Inc. v. Pope,* 485 U.S. 478, 489–490, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988)).

31.     <u>Fifth</u>, Debtors have provided an inadequate amount of time for class members to respond. The Solicitation and Release Opt Out Forms provide only a weekslong window for actual notice to reach Class Members and then for those Class Members to react. Mulholland Affidavit, ¶ 21. Importantly, Debtors notice window coincides with Thanksgiving and the end-of-the-year holiday season, rendering it even more difficult for Class Members to receive notice and react. *Id*.

32.     <u>Sixth</u>, it belies logic, plausibility and the facts, that Class Members received adequate notice because, according to Debtors, Class Members claims against nondebtor third

parties would be released for no consideration and no justification. There is simply no reason a rational investor would ever knowingly agree to this plan.

33.     <u>Lastly</u>, Class Members believe their claims are being represented by the Lead Plaintiff under the PSRLA. Numerous notices were issued by law firms, pursuant to the PSLRA, on national newswires alerting investors of their right to seek lead plaintiff status and that such status is *not* required for future recovery.[4] Indeed, well over 50 notices were issued. *See supra.* n. 4. The PSLRA notices clearly stated that "[y]ou may also remain an absent class member and do nothing at this point. An investor's ability to share in any potential future recovery is not dependent upon serving as lead plaintiff[,]" and "[a] lead plaintiff is a representative party acting on behalf of other class members in directing the litigation[,]" or substantially similar. *Id*. Given this level of notice, Debtors should have issued notice that goes beyond the regular notice procedures set forth in the PSLRA case.

---

[4] *See e.g.,* https://www.businesswire.com/news/home/20221114006103/en/CORZ-CLASS-ACTION-NOTICE-Glancy-Prongay-Murray-LLP-Files-Securities-Fraud-Lawsuit-Against-Core-Scientific-Inc.; https://www.globenewswire.com/en/news-release/2023/01/10/2585779/0/en/CORE-SCIENTIFIC-INC-NASDAQ-CORZ-SHAREHOLDER-CLASS-ACTION-ALERT-Bernstein-Liebhard-LLP-Reminds-Investors-of-the-Deadline-to-File-a-Lead-Plaintiff-Motion-in-a-Securities-Class-Action.html; https://www.prnewswire.com/news-releases/corz-lawsuit-alert-levi--korsinsky-notifies-core-scientific-inc-investors-of-a-class-action-lawsuit-and-upcoming-deadline-301720871.html; https://www.businesswire.com/news/home/20230109005927/en/Kirby-McInerney-LLP-Reminds-Investors-That-a-Class-Action-Lawsuit-Has-Been-Filed-on-Behalf-of-Core-Scientific-Inc.-CORZ-Investors-and-Encourages-Investors-to-Contact-the-Firm-Before-January-13-2022; https://www.accesswire.com/730042/investor-action-notice-the-schall-law-firm-encourages-investors-in-core-scientific-inc-with-losses-of-100000-to-contact-the-firm; https://www.businesswire.com/news/home/20221116005931/en/INVESTOR-NOTICE-Core-Scientific-Inc.-Investors-with-Substantial-Losses-Have-Opportunity-to-Lead-Class-Action-Lawsuit---CORZ-CORZW; https://www.prnewswire.com/news-releases/rosen-a-top-ranked-law-firm-encourages-core-scientific-inc-investors-to-secure-counsel-before-important-deadline-in-securities-class-action--corz-301709788.html.

**Motion is Timely**

34.     Debtors argue that the instant motion is untimely. D.I. 1313 ¶ 32 ("In fact, given that he was the Lead Plaintiff—as he repeatedly extols—nothing stopped him from filing the Motion at the outset of these cases, and certainly before the Bar Date."). However, Debtors fail to state Plaintiffs could not do so because Bankruptcy Code first requires a contested matter for Fed. R. Civ. P. 23 to apply. Fed. R. Bankr. P. 9014; Fed. R. Bankr. P. 7023; *see* D.I. 1228 ¶ 35-39 (citing cases). Indeed, Plaintiffs could not have filed the Motion until there was a contested matter which was created by the Debtors filing their Claim Objection. *Id.*

35.     If Debtors, who knew about the Securities Action starting in November 2022 and about the Class Claim from April 2023, wished to create a contested matter earlier, they could filed their objection in April 2023 and then Plaintiffs motion could have been filed earlier. *Id.* Indeed, if Debtors anticipated objecting to the Class, Debtors could have reached out before the Class Claim was filed—which, under their cited caselaw, may have triggered a contested matter. *See* D.I. 1313 ¶ 32. Importantly, Lead Plaintiff was appointed March 7, 2023 and could have acted anytime after that—once allowed by the Bankruptcy Code.

36.     However, absent Debtors creating a contested matter, Plaintiffs could not both follow the Bankruptcy Code *and* file a motion for class treatment. Fed. R. Bankr. P. 9014; Fed. R. Bankr. P. 7023. Regardless of Debtors arguments, the contested matter is necessary for the motion for class treatment. *Id.*

37.     Debtors cases to the contrary do not move the needle. First, the Bankruptcy Code is clear, and Plaintiffs followed it. *Id.* Second, the cases do not contemplate the instant circumstances where Debtors themselves waited to create a contested matter only to then claim it had been too long. Moreover, those cases involved significant differences from the instant case (and none were

11

involved a PSLRA-appointed Lead Plaintiff). *See In re Ephedra Prod. Liab. Litig.*, 329 B.R. 1 (S.D.N.Y. 2005) (several classes which demanded discovery); In *re Craft*, 321 B.R. at 199 (several non-PSLRA classes involved and "their claims are being pursued not only in the Mirant Cases but also by various arms of local and state governments and FERC.").

38.     Indeed, certain of Debtors cases even explicitly held that "timeliness of the motion is not the dispositive factor in determining whether to apply Rule 7023." *In re USA Gymnastics*, 2020 WL 1932340, at *3 (Bankr. S.D. Ind. Apr. 20, 2020). Similarly, "delay does not automatically disqualify the class claim[.]" *Musicland*, 362 B.R. at 652.

39.     In one case Debtors cited on this point, the lead plaintiff *never moved for class treatment*. *In re Dynegy, Inc.*, 770 F.3d 1064, 1071 (2d Cir. 2014).

**The Class Satisfies Fed. R. Civ. P. 23**

***Fed. R. Civ. P. 23(a) Met***

40.     Debtors rely on conclusory language, half-hearted ideas, and primarily one outlier case to argue the Class fails to meet the standards of Fed. R. Civ. P. 23(a). *See* D.I. 1313 at 19-20.[5]

***Numerosity Met***

41.     Debtors rely solely on one outlier case, *FirstPlus*, for the idea that only those who file claims individually can be considered in the class. However, even here Debtors mislead the Court by implying "30,000 is not the appropriate number to look at" without providing the rest of that court's analysis which stated "[a]s to the ***fifty whom are left***, joinder is not impracticable in that the ***adjudication of their claims has already been consolidated into this adversary proceeding***." *In re FIRSTPLUS Fin., Inc.*, 248 B.R. at 74 (emphasis added). Moreover, the putative class in that case

---

[5] Debtors citations are all either for general propositions or factually distinguishable—including that the cases either do not include claims under the federal securities laws or even bankruptcy. *See generally* D.I. 1313.

held claims under various, non-securities laws including RESPA, TILA, RICO and various California laws—not under the federal securities laws. *In re FIRSTPLUS Fin., Inc.*, 248 B.R. at 66.

42.     Here, the Class includes thousands, potentially hundreds of thousands, from across the country and around the world. *See* Securities Class Action, D.I. 62 ¶ 145.

43.     Further, *FirstPlus* is an outlier and differently situated from this instant case. Here, there is no adversary proceeding and no claims have been consolidated. Again, the vast majority of courts instead allow class claims, as demonstrated throughout Plaintiffs' papers. These courts include those in this Bankruptcy District. *See In re Vanguard*, 2017 WL 5573967; *see also In re Think Fin.,* 2018 WL 9801454.

44.     Moreover, Debtors fail to even attempt to distinguish Plaintiffs on-point citations on this point. *See* D.I. 1228 at 28-29 ¶ 62-66 (citing cases). Indeed, numerosity "is generally assumed to have been met in a class action suit involving nationally traded securities, since the putative class is likely sufficiently numerous, geographically dispersed, and difficult to identify." *In re Anadarko Petroleum Corp. Sec. Litig.*, at *3 (S.D. Tex. Sept. 28, 2022), *reconsideration denied,* 2023 WL 4307650 (S.D. Tex. June 30, 2023) (cleaned up).

### *Commonality Met*

45.     Again, Debtors rely on the outlier case, *FirstPlus*, for the idea that "Class actions sounding in fraud 'cannot be certified when individual reliance will be an issue.'" D.I. 1313 at 20 ¶ 36.

46.     However, *FirstPlus* only held so because "[a]ll of the representations that the Plaintiffs claim are fraudulent are not necessarily identical for each of the potential class members. One person may have received a deficient disclosure in writing, while another may have been lied to on the telephone; still, a third may not have been defrauded at all." 248 B.R. at 74–75.

47.     Unlike the claims and facts in *FirstPlus*, here Plaintiffs' Amended Complaint features the actual statements on which the Class relied and is a securities class action. *See generally* Securities Class Action, D.I. 62.

48.     Further, Plaintiffs' Amended Complaint includes claims *which are not based on fraud*. Securities Class Action, D.I. 62 ¶ 154-184. The claims based on violations of Sections 14(a) and 20(a) of the Exchange Act and Sections 11 and 15 of the Securities Action are explicitly *not based on fraud*. Securities Class Action, D.I. 62 ¶¶ 155 ("Any proceeding allegations of fraud, fraudulent conduct, or improper motive are specifically excluded from this Count. For the purposes of this Count, Plaintiffs do not allege that the Defendants named in this Count had scienter or fraudulent intent, which are not elements of this claim."), 161 (same), 169 (same), 179 (same). This renders Debtors half-hearted argument even more void than it is on its face.

49.     Notably, a *FirstPlus* securities class action was later granted class certification to most class members (except those with insider knowledge). *In re FirstPlus Fin. Grp., Inc., Sec. Litig.*, 2002 WL 31415951, at *7 (N.D. Tex. Oct. 28, 2002). Indeed the District Court found that "[t]his requirement, too, is satisfied, as the following issues constitute common questions of law or fact: whether the Defendants violated the securities laws; whether the Defendants omitted or misrepresented material facts; whether Defendants acted with knowledge or with reckless disregard for the truth in omitting or misrepresenting facts; whether the individual defendants were controlling persons of FirstPlus; and whether the market price of FirstPlus securities during the proposed class period was artificially inflated due to the omissions and/or misrepresentations complained of in the Complaint." *In re FirstPlus Fin. Grp., Inc., Sec. Litig.*, 2002 WL 31415951, at *3 (citation omitted). The same analysis applies here.

14

50.      Debtors citation to *Kurtzman v. Compaq Computer Corp.*, does nothing to change the equation. 2000 WL 34292632, at *61 (S.D. Tex. Dec. 12, 2000). Certain of Plaintiffs claims are based on Defendants' fraudulent conduct and some not. *See e.g.*, Securities Class Action, D.I. 62 ¶¶ 155, 161, 169, 179. This is not novel or difficult to understand as the different claims are just that— different. *See In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 374–75 (S.D.N.Y. 2011) (holding that Section 10(b) Exchange Act allegations may not be used to attack Securities Act allegations in the same complaint, because "Plaintiffs do, in fact, segregate their Securities Act claims into the final portion of the [complaint], thereby drawing a distinction between [Securities Act and Exchange Act] claims.").

51.      Moreover, Debtors fail to even attempt to distinguish Plaintiffs on-point citations on this point. *See* D.I. 1228 at 29-30 ¶ 62-66 (citing cases). Indeed, "[t]he threshold of 'commonality' is not high." *In re FirstPlus Fin. Grp., Inc., Sec. Litig.*, 2002 WL 31415951, at *3 (quoting *Bertulli v. Ind. Ass'n of Cont'l Pilots,* 242 F.3d 290, 296-97 (5th Cir. 2001)).

### *Typicality Met*

52.      Debtors again solely rely on the outlier case, *FirstPlus*, for the idea that "[v]arious types of reliance on the alleged fraud will require individual analysis, and each party's fraud may be unique to themselves alone." D.I. 1313 at 20 ¶ 37.

53.      However, as discussed above, in the *FirstPlus* bankruptcy opinion, the court found that "[a]ll of the representations that the Plaintiffs claim are fraudulent are not necessarily identical for each of the potential class members. One person may have received a deficient disclosure in writing, while another may have been lied to on the telephone; still, a third may not have been defrauded at all." *In re FIRSTPLUS Fin., Inc.*, 248 B.R. at 74–75. Therefore, that court found no commonality or typicality.

15

54.     Here, the Plaintiffs' Amended Complaint is clear regarding what statements are at issue and that the Class relied on those—no more, no less. *See generally* Securities Class Action, D.I. 62; *see also Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th Cir. 1999) ("In this case, the Named Plaintiffs' and the proposed class members' legal and remedial theories appear to be exactly the same.").

55.     Moreover, again, Debtors fail to even attempt to distinguish Plaintiffs on-point citations on this point. *See* D.I. 1228 at 29-30 ¶ 62-66 (citing cases).

*Adequacy Met and Uncontested*

56.     Debtors do not contest Plaintiffs meet Fed. R. Civ. P. 23(a)(4)'s standard for adequacy. *See* D.I. 1313. This standard is clearly met. *See* D.I. 1228 at 32-33 ¶ 72-75.

*Fed. R. Civ. P. 23(b) Met and Uncontested*

57.     Similarly, Debtors do not contest that Fed. R. Civ. P. 23(b)(3) is met. *See* D.I. 1313. This standard is also clearly met. *See* D.I. 1228 at 33-36 ¶ 76-85.

**This Bankruptcy Court Lacks Jurisdiction Over the Securities Class Action Claims and Class Action Defendants**

*58*.     Debtors have never demonstrated that this Court has jurisdiction to extinguish the Securities Class Action, nor its claims. To be clear those claims do not involve *any Debtor*. *See* Securities Class Action, D.I. 62.

59.     Debtors have never demonstrated that this Court has jurisdiction over nondebtors (Class Members) claims against nondebtors (Defendants, those receiving the nonconsensual nondebtor third party releases). Many of the Defendants are no longer employed by or otherwise associated with the current Company.

60.     Further, the Fifth Circuit does not allow nonconsensual nondebtor third party releases. *In re Pac. Lumber Co.*, 584 F.3d 229, 252 (5th Cir. 2009) ("In a variety of contexts, this court has held that Section 524(e) only releases the debtor, not co-liable third parties.") (citing *In re Coho Resources, Inc.,* 345 F.3d 338, 342 (5th Cir. 2003); *Hall v. National Gypsum Co.,* 105 F.3d 225, 229 (5th Cir. 1997); *Matter of Edgeworth,* 993 F.2d 51, 53–54 (5th Cir. 1993); *Feld v. Zale Corporation,* 62 F.3d 746 (5th Cir. 1995)).

61.     Indeed, these nonconsensual nondebtor third party releases, which are not available in this Circuit, are not required for the Plan. D.I. 1438 at 88 Section 10.6(b) ("Notwithstanding anything to the contrary in the foregoing, the releases set forth in this Section 10.6(a) (i) ***shall only be applicable to the maximum extent permitted by law***[.]"). Therefore, when these releases are either abandoned by Debtors, ruled by this Bankruptcy Court to be enforceable or otherwise unlawful, or ruled by a District Court to be enforceable or otherwise unlawful, or otherwise ruled to be enforceable or otherwise unlawful, the Plan would continue.

62.     Finally, those receiving nonconsensual nondebtor third party releases have failed to provide *any* consideration (which is required in circuits which allow nonconsensual nondebtor third party releases). *See In Re Purdue Pharma L.P.*, 69 F.4th 45, 62 (2d Cir. 2023), *cert. granted sub nom. Harrington v. Purdue Pharma L.P.*, No. (23A87), 2023 WL 5116031 (U.S. Aug. 10, 2023) (Certain releases in exchange for "$4.325 billion, coupled with the Sackler[s'] other agreements, including the dedication of the two charities worth at least $175 million for abatement purposes, the Sacklers' agreement to a resolution on naming rights, their agreement not to engage in any business with NewCo [Purdue's successor company], their agreement to exit their foreign companies within a prescribed time, their agreement to various 'snap back' protections to ensure the collectability of their settlement payments, and their agreement to an unprecedented extensive document depository

17

accessible to the public that will archive in a comprehensive way the Debtors' history, including as it relates to the development, production, and sale of opioids.").

## RESERVATION OF RIGHTS

63.     Plaintiffs reserve their right to supplement, amend, or modify their Motion or Reply based on, among other things, any new information or arguments presented or introduced by the Debtor or any other party.

## CONCLUSION

64.     For all of the foregoing reasons, Plaintiffs respectfully request that an order, substantially in the form submitted with the motion (D.I. 1228-1), be entered: (i) finding that Fed. R. Bankr. P. 7023 is applicable under Fed. R. Bankr. P. 9014; (ii) allowing the Class Proof of Claim; (iii) certifying the Class under Fed. R. Bankr. P. 7023 and Fed. R. Civ. P. 23 for purposes of allowance and effectuation of the Class Proof of Claim; (iv) allowing an Omnibus Opt-Out of the Plan's Nondebtor Third Party Releases; and (v) Certifying Class under Fed. R. Bankr. P. 7023 and Fed. R. Civ. P. 23 for Purposes of the Omnibus Opt-Out of the Plan's Nondebtor Third Party Releases.

Dated: December 4, 2023                    **CONDON TOBIN SLADEK THORNTON NERENBERG PLLC**

                                            */s/ Stuart L. Cochran*
                                            Stuart L. Cochran
                                            Texas Bar No.: 24027936
                                            8080 Park Lane, Suite 700
                                            Dallas, Texas 75231
                                            Telephone: (214) 265-3800
                                            Facsimile:  (214) 691-6311
                                            scochran@condontobin.com

                                            *Liaison Counsel for Lead Plaintiff*

**THE ROSEN LAW FIRM, P.A.**
Phillip Kim (admitted pro hac vice)
Joshua Baker (admitted pro hac vice)
275 Madison Avenue, 40th Floor
New York, NY 10116
Phone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: jbaker@rosenlegal.com

*Lead Counsel for Lead Plaintiff*

**THE SCHALL LAW FIRM**
Brian Schall
Rina Restaino
2049 Century Park East, Suite 2460
Los Angeles, CA 90067
Phone: (310) 301-3335
Fax: (213) 519-5876
Email: brian@schallfirm.com
Email: rina@schallfirm.com

*Additional Counsel for Lead Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of December 2023, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

 */s/ Stuart L. Cochran*
Stuart L. Cochran