# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>CORE SCIENTIFIC, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 22-90341 (DRJ)<br><br>(Jointly Administered)<br><br>Re: D.I. 1080, 1178, 1313, 1438, 1439, 1460 |

## AFFIDAVIT OF PAUL MULHOLLAND IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR CLASS TREATMENT UNDER FED. R. BANKR. P. 7023 FOR (I) A CLASS PROOF OF CLAIM, (II) CERTIFYING CLASS FOR PURPOSES OF THE CLASS PROOF OF CLAIM, (III) AN OMNIBUS OPT-OUT OF THE PLAN'S NONDEBTOR THIRD PARTY RELEASES, (IV) CERTIFYING CLASS FOR PURPOSES OF THE OMNIBUS OPT-OUT OF THE PLAN'S NONDEBTOR THIRD PARTY RELEASES, AND (V) OTHER RELIEF

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions, VII, LLC (3198). The Debtors' corporate headquarters and service address is 210 Barton Springs Road, Suite 300, Austin, Texas 78704.

i

I, Paul Mulholland, declare and state as follows:

1. I am the President of Strategic Claims Services ("SCS"), a nationally recognized class action administration firm. I have over thirty (30) years of experience specializing in litigation support services principally in the area of administration of securities class action settlements. I am over 21 years of age and not a party to the above-captioned action. I have personal knowledge of the facts set forth herein and, if called upon, could and would testify thereto. I have also testified as an expert witness in securities and other class action matters. Attached as Exhibit A is my curriculum vitae and SCS brochure.

2. SCS has successfully administered over five hundred (500) class action cases since it was established in April 1999, including over three hundred (300) securities class actions. SCS specializes in administering security class action settlements and has distributed over $3 billion in settlement funds. SCS is considered one of the leading notice and claims administrators in the United States. More information about SCS is included on our website at www.strategicclaims.net.

3. The Bar Date Notice[2] and the Solicitation Packages and Release Opt Out Forms notice plans in these matters use procedures have not been designed to provide direct notification to every investor who is a member of the Class and who can be identified with reasonable effort. Unlike notice plans approved by Courts in securities class actions governed by the Private Securities Litigaiton Reform Act of 1995 (PSLRA), the Bar Date Notice and the Solicitation Packages and Release Opt Out Forms notice plans fail to provide adequate notice and adequate time for such notice to be disseminated and opportunity for response.

---

[2] Unless otherwise defined herein, all capitalized terms have the same meaning as those set forth in the Court's Order from November 14, 2023 (D.I. 1426) or the Amended Class Action Complaint for Violations of the Federal Securities Laws (Claim Number 632 at 7-84).

4. On its face, the Bar Date Notice did not even attempt to reach Class Members who transacted in or held relevant securities. Similarly, the Solicitation Packages and Release Opt Out Forms notice plans do not even attempt to reach Class Members who transacted in or held relevant securities.

5. Those Class Members to which no attempt at notice was made include those who hold claims under Section 14(a) of the Securities Exchange Act of 1934 ("Exchange Act") by having held the common stock of XPDI at the close of business on December 7, 2021, and were entitled to vote on the approval of the Merger at the special meeting of XPDI stockholders on January 19, 2022.

6. Those Class Members to which no attempt at notice was made include those who hold claims pursuant to Sections 10(b) and 20(a) of the Exchange Act by purchasing or acquiring XPDI or Core warrants and call options as well as those who sold put options during the January 3, 2022 through December 20, 2022 Class Period.

7. Those Class Members to which no attempt at notice was made include those who hold claims pursuant to Sections 11 and 15 of the Securities Act of 1933 by acquiring warrants pursuant or traceable to the Registration Statement issued in connection with the Merger.

8. SCS would never contemplate a notice plan that fails to even attempt to cover the *entire Class.* Nor would SCS use publication notice through a paywalled platform or small regional newspapers to provide PSLRA class action notice.

9. Additionally, notice to thousands, if not hundreds of thousands, of investors cannot typically be done in less than a month. Any intimation that notice on this scale can be undertaken properly on that time-scale is false. Nominees will not be able to instantaneously issue notice nor will all issue notice themselves—there are often responses that administrators must answer along

with further notice to be provided by the administrators. Worse yet, while notice itself would take longer than Debtors' notice plans allowed and allow, Debtors' plan allows no time for Class Members to meaningfully respond to the notice—particularly if they, like Debtors in these cases, wish to act through counsel. For context, SCS-enacted notice plans generally provide Class Members approximately 45 days or more to review the relevant papers and respond.

10. To properly conduct PSLRA securities class action notice, Debtors would need to mail notice directly to every investor who is a member of the Class and who can be identified with reasonable effort. That process alone entails not only mailing notice to those who Debtors currently have addresses for but also those who are reasonably knowable. To do so, direct mail notification would be provided to thousands of financial institutions, whether brokerage firms, banks, and other third-party nominees ("Nominees"), that regularly monitor proposed securities class action and similar cases and settlements. All persons and entities identified as potential Class Members would be sent the notice. Additionally, the notice plan would include publication of notice through at least one non-paywalled major newswire and at least one business-oriented or investor-oriented publication.

11. To send notice, the administrator, after cleanup and de-duplication, initially would send a copy of the notice by First-Class Mail to all persons and entities identified as potential Class Members by Debtors' stock transfer agent. The stock transfer agent will only have the contact information for the small number of investors that hold those securities in their own names. In SCS's experience, the Class Members who hold their securities in their own name, and are therefore known to the stock transfer agent, make up less than 2% of a class in a typical securities settlement. These investors typically make up a very small percentage of a class, as the vast majority of investors hold their securities through Nominees as these potential Class Members are beneficial

3

purchasers whose securities are held in "street name" – *i.e.*, the securities are purchased and held by one of the Nominees on behalf of the beneficial purchasers. The names and addresses of these beneficial purchasers are known only to the Nominees.

12. In order to obtain the contact information for investors at the beneficial purchaser level, SCS uses a procedure designed to get the contact information from the Nominees that actually hold the securities for the beneficial holders of the securities. In the over 24 years that SCS has been notifying potential class members of actions involving publicly-traded securities, SCS has found the majority of potential class members as the beneficial owners/purchasers are reached through the Nominees.

13. For similar matters, SCS would send mailings and an appropriate cover letter to each entity included on a proprietary master list consisting of over 2,000 Nominees representing the significant majority of beneficial holders/purchasers of the securities in most cases involving publicly-traded companies. The cover letter accompanying the mailing would notify the Nominees of the notice and inform them of their obligation to either provide the names and addresses of their clients who may be Class Members or request copies of the notice to provide directly to their customers and clients.

14. SCS has developed ongoing relationships with the appropriate contacts for these Nominees. SCS supports the Nominees throughout the process and provides additional services such as: coordinating with Nominees to submit claims accurately and efficiently; reviewing the requirements and procedures for submitting claims; explaining the plan of allocation or claim forms; answering questions; updating Nominees on the status of their claims; and answering all investor inquires in a professional, knowledgeable, and timely manner. Nominees cannot instantly act in these cases, as Debtors intimate, and it can take weeks for administrators to provide notice

to Class Members whether through the Nominees or with the contact information provided by Nominees.

15. SCS would promptly mail the notice directly to all potential Class Members once identified by Nominees. SCS would also send copies of the notice directly to Nominees who indicate they will directly forward to their customers and clients who may be Class Members.

16. All name and address data obtained by SCS would be reviewed to identify and eliminate exact name and address duplicates and incomplete data prior to mailing. Any notices that are returned as undeliverable mail would be reviewed to determine if an alternative or updated address is available from the United States Postal Service, and would be re-mailed to the updated or alternative address.

17. SCS would supplement the direct mailing program described above by publishing notice in at least one major business-oriented publication. That supplemental notice would also be posted with at least one major non-paywalled online newswire service. News outlets often use posted notices as the basis for their own stories about litigation settlements involving publicly-traded companies, thereby creating added awareness of the proposed settlement among investors.

18. SCS would also send the Depository Trust Company ("DTC") a notice and appropriate forms for the DTC to publish on its Legal Notice System ("LENS"). LENS provides DTC participants the ability to search and download legal notices as well as receive e-mail alerts based on particular notices or particular CUSIPs (Committee on Uniform Securities Identification Procedures identification) once a legal notice is posted. Nominees would also be notified through LENS.

19. Throughout any notification and processing period, SCS would maintain a toll-free telephone helpline to answer potential Class Member's inquiries.

20. SCS would also maintain and update the case website where key documents would be posted and easily accessible. The case website would also provide summary information regarding the case and highlight certain important dates. All documents posted to the case website would also be available for download.

21. Here, with notice of the Solicitation Packages and Release Opt Out Forms to commence near Thanksgiving and a voting deadline less than a month later on December 13, 2023 and with the Plan confirmation hearing to take place the Friday before Christmas, many Class Members may be traveling making notice even harder to complete, especially with the fast deadline. Cases in which SCS provides administration generally allow for at least 45 days between notice date and any impactful deadline—and that is before any consideration of the largest holiday season occurring in the middle of a merely weeks-long notice process.

22. I understand that Debtor has asserted that approximately 35 claim forms were submitted by potential class members. Contrary to Debtors, the receipt of 35 claims in connection with the defined class in this case, in my opinion, is evidence of inadequate notice. Just focusing on the common stock aspect of the Class, there were over 1.66 billion shares of Core stock traded during the Class Period. Based on my experience, there would likely be thousands if not tens of thousands of proof of claim forms submitted in a PSLRA securities class action settlement.


I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 4, 2023, in Media, Pennsylvania.

_____
Paul Mulholland

SWORN TO AND SUBSCRIBED
Before me this 4th day of December, 2023.

_____
Notary Public

Commonwealth of Pennsylvania - Notary Seal
FAYE S KNOWLES - Notary Public
Delaware County
My Commission Expires August 27, 2025
Commission Number 1251389

My Commission Expires

WITNESS my hand and official seal:

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 4th day of December 2023, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

                                    */s/ Stuart L. Cochran*
                                    Stuart L. Cochran

# EXHIBIT A

## PAUL MULHOLLAND
### (CURRICULUM VITAE)

Mr. Mulholland is the President and founder of Strategic Claims Services (SCS) in April of 1999. SCS is a litigation support firm specializing in damage analyses, loss calculations, plans of allocation and administration of security class action matters. Attached as Exhibit I is a summary of expert testimonies and depositions. In addition, I have prepared hundreds of damage analyses, loss calculations and plans of allocation over the past thirty-one years.

From 1992 to 1999, Mr. Mulholland was Senior Vice President of Philadelphia Investment Banking Company. Mr. Mulholland was responsible for overseeing all aspects preparation of damage/expert reports in class action matters. He also was responsible for areas of federal and state income taxes for settlement funds and for compliance with all treasury regulations.

From 1986 to 1992, Mr. Mulholland was Chief Financial Officer of Terramics Property Company, a Philadelphia-based regional commercial real estate company with a $150 million real estate portfolio. He was responsible for asset management, financial reporting, budgets, bank and investor liaison, debt restructurings, refinancings, contract negotiations, tax matters, treasury functions and cash management.

From 1984 to 1986, Mr. Mulholland was Chief Financial Officer of American Health Systems, Inc., a $40 million (revenue) nursing home management company, and was responsible for financial reporting, taxation, budgeting, cash management, cost containment, risk management and regulatory reporting.

From 1980 to 1984, Mr. Mulholland was employed at Coopers & Lybrand. He planned and directed audit engagements in a variety of industries, including preparation of financial statements, SEC reporting, and evaluation of internal accounting systems and supervision of staff accountants.

Mr. Mulholland holds a BS in Accounting from Wheeling University and is a Certified Public Accountant (inactive). He was an adjunct professor of accounting and finance at Neumann University and currently serves on its business advisory board.

EXHIBIT I

PAUL MULHOLLAND
EXPERT TESTIMONIES AND DEPOSITIONS

**Expert Testimony:**

| | |
|---|---|
| Celia L. Hale., et al., v. Wal-Mart Stores, Inc<br>Jackson County, Missouri<br>Case No. 01-CV-218710 (Division 1) | June 2008 |
| Jitendra V. Singh v. vCustomer Corporation, et al.<br>Eastern District of Pennsylvania<br>Civil Action No. 03-4439 | June 2004 |
| Barter v. Southmoore Golf Associates<br>(Common Pleas of Northhampton County (No. 199-C-1815) | March 21, 2000 and<br>March 22, 2000 |
| Pearl and Hoffman v. Geriatric & Medical Center, Inc (Eastern<br>District of Pennsylvania (No.92-CV-5113 and No.93-CV-2129) | March 1995 |

**Depositions:**

| | |
|---|---|
| Fosamax Products<br>Liability Litigation No. 1:06-MD-1789 (JFK)<br>(MDL No. 1789)<br>USDC for the Southern District of New York | June 14, 2007 |
| Aredia and Zometa Products<br>Liability Litigation No. 3:06-MD-1760<br>(MDL No. 1760)<br>USDC for the Middle District of Tennessee<br>at Nashville | May 31, 2007 |
| Jitendra V. Singh v. vCustomer Corporation, et al.<br>Eastern District of Pennsylvania<br>Civil Action No. 03-4439 | June 2004 |
| In Re: Curative Health Services, Inc. Securities Litigation<br>(Master File No. CV99-2074) United States District Court<br>Eastern District of New York | February 2002 |
| Pearl and Hoffman v. Geriatric & Medical Center, Inc (Eastern<br>District of Pennsylvania (No.92-CV-5113 and No.93-CV-2129) | January 1995 |

**Mediation Presentation:**

| | |
|---|---|
| Alibaba Group Holding Limited Securities Litigation<br>Civil Action 1:15-md-02361 (CN)<br>USDC Southern District of New York<br>Mediation Presentation to Honorable Layne R Phillips | March 2019 |

# STRATEGIC CLAIMS SERVICES

Strategic Claims Services
600 North Jackson Street
Suite 3
Media, PA 19063

**PHONE**
866.274.4004
610.891.9852

**FAX**
610.565.7985

**EMAIL**
pmulholland@strategicclaims.net

"Your able and conscientious handling of this matter is much appreciated."
Honorable William C. Connor
United States District Judge
Southern District of New York
Administration of the Texaco ERISA
Litigation Settlement

## KEY INDIVIDUALS

### Paul Mulholland, CPA, CVA
**President**
*As the founder, Mr. Mulholland is the key liaison with counsel on all administrative cases. He holds a BS degree in Accounting from Wheeling Jesuit University and is a Certified Public Accountant and a Certified Valuation Analyst. He is a member of the AICPA and NACVA.*

### Matthew Shillady
**Operations Manager**
*Mr. Shillady overlooks all areas of operations and systems management. Matthew is an expert in database management and computer systems. Matthew Shillady is a graduate of Penn State University. He holds a BS degree in Information Sciences and Technology Integration with substantial experience in data integration and database systems. Mr. Shillady has been with Strategic Claims since June of 2003.*

### Josephine Bravata
**Quality Assurance Manager**
*Ms. Bravata is involved with all areas of claims administration. She supervises the claims processing, database management, notification, bank reconciliations, check distributions and preparation of reports. Ms. Bravata joined the Company in 2001 after graduating from Neumann College. She has a BS degree in Accounting and a Minor in Computer and Information Management.*

"I want to express my appreciation for the excellent work that Strategic Claims Services has provided to-date in administering the Blue Cross settlement. You and your staff have been timely, responsive and have made the claims administration process efficient and effective. Thank you for all your hard work."
Mike Karnuth, Esq.
Krislov & Associates, Ltd.

## CLAIMANT COMMUNICATION

*Phone Calls*
We tailor our Call Center to the needs of each settlement, we can provide an automated approach using the latest IVR technology or, if counsel perfers, we offer a more personal approach and have one of our highly trained staff answer the phone and help the Class member with any issue they may have. We also offer Call tracking for each case, detailing the claimants question, and reporting on the total number of calls received.

*Email*
If a client requests it, we can provide a dedicated email address for each settlement where Class members can correspond and recieve prompt answers from one of our highly trained staff.

*Website*
On request, we can provide a dedicated website for a settlement where all pertinent data and forms can be easily accessed by class members. Using these websites class counsel can quickly and easily communicatethe class with ongoing updates and status changes in the Settlement.

## DISTRIBUTION

*Checks*
We have handled distributions of all sizes and values, ranging from a few hundred checks, to hundreds of thousands of checks worth millions of dollars. We monitor all our bank accounts on a daily basis using a Postive Pay system to ensure our clients that only checks we issued will be cashed

*Taxation*
SCS can handle all taxation needs for a settlement. From calculating and paying taxes on the interest earned in the Settlement Fund, to withholding Federal and State taxes on wage cases, our staff of Certified Public Accounts ensure that all filing requirements are met

Copyright © 2009 Strategic Claims Services

## OUR MISSION

*Strategic Claims Services strives to offer high quality claims administration and unmatched solutions to its clients while maintaining exceptional client relationships.*

» *We supply customized reports and detailed reviews of the Administration process so clients can stay well informed and up-to-date on any aspect of the administration process.*

» *We provide unsurpassed customer relations through our fully trained claims administrators who answer each call personally and assist our clients with their knowledge and expertise.*

» *We tailor a solution to each class action to ensure compliance with all the court and settlement documents.*

» *We strive to be proactive to alert our clients of any shortfalls or hang-ups in the administration process*

## OUR HISTORY

Strategic Claims Services (SCS) was established in 1999 to provide support in managing, planning, implementing and administering class action litigations. The highly skilled staff consists of Certified Public Accountants, Information Technology professionals, experienced managers, bookkeepers and support staff.

With over a decade of experience in hundreds of cases involving notification, claims processing and distribution, SCS develops a custom solution for each and every client to ensure the highest quality service at a competitive price. SCS is devoted to offering paramount quality control throughout all dimensions of the claims administration process.

As an innovator in claims administration services, SCS is a technology driven organization with a proven track record to handle cases of all sizes in a cost-effective and efficient manner. The firm also provides tailored proposals, data management, and consultation.

## CLASS NOTIFICATION

Strategic Claims Services offers many different options for both notices and claim forms. Based on the Client's requirements, SCS can compare the notice documents to ensure compliance with the settlement documents and the Court's requirements. SCS can also design Claim Forms to ensure Class Members fully understand and comply with the requirements of each settlement.

We can also provide assistance with publishing Legal Notice through newspapers, press releases, and websites. Using our contacts in the publishing industry we can negotiate favorable rates in most major newspapers, allowing the class to benefit from reduced publication costs.

Our Services Include:
» *Direct Mailed Notice*

» *Email Campaigns*

» *Notice Design and Proofing*

» *Claim Form Design*

» *Custom Websites for each settlement*

» *Customize Class Data*

» *Updating Out-of-Date Class Data (National Change of Address, Skip-tracing methods)*

» *Providing compliance affadavits for publications and direct mailn*

"Strategic Claims Services (SCS) provides excellent customer service, and the best price in the business. SCS's attention to detail, high quality work, quick and accurate turn around are the hallmarks of its true professionalism. Ready access to SCS's president, Paul Mulholland, and his personal involvement assures me everything is done right. You can't beat SCS – they're simply the best in the industry."
John F. Innelli
Innelli & Robertson

## DATA MANAGEMENT

One of the most important steps in class action administration is creating and maintaining accurate class lists. Based on the client's needs we develop a custom database to hold all the class member's pertinent data.

Our Information Technology Specialists can:
» *Convert most data formats for use in the class database*

» *Database Mangement and Design*

» *Website Design and Updates*

» *Design custom reports for clients based on class data*

» *Removal of duplicate records*

» *Class-wide loss calculations*

## CLAIMS PROCESSING

Our staff is well trained in all aspects of claims processing, with a focus on quality control and customer service. Each claim is reviewed in detail to ensure compliance with all settlement requirements. Using our custom built software, we ensure each claim is calculated accurately and quickly. The scope of our work includes, but is not limited to the following:

» Determining the validity of each claim filed

» Calculation of losses for each claim

» Communication with claimants to cure invalid claims

» Quality assurance for all high value claims

» Final reporting to Counsel and the Court

» Electronic Claim Processing

During the administration process we are in constant communication with counsel concerning all matters. We provide regular status reports from the initial mailing through the final disposition of funds.