## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| CORE SCIENTIFIC, INC., *et al.*, [1] | § | Case No. 22-90341 (CML) |
| | § | |
| | § | (Jointly Administered) |
| | § | (Emergency Hearing Requested) |

## DEBTORS' EMERGENCY MOTION FOR ENTRY
## OF AN ORDER ESTABLISHING DISPUTED CLAIM
## AMOUNTS FOR CALCULATION AND DISTRIBUTION PURPOSES
## UNDER DEBTORS' PROPOSED JOINT CHAPTER 11 PLAN OF REORGANIZATION

**EMERGENCY RELIEF HAS BEEN REQUESTED. RELIEF IS REQUESTED NOT LATER THAN 10 A.M. (CENTRAL PREVAILING TIME) ON DECEMBER 22, 2023.**

**IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST APPEAR AT THE HEARING IF ONE IS SET, OR FILE A WRITTEN RESPONSE PRIOR TO THE DATE THAT RELIEF IS REQUESTED IN THE PRECEDING PARAGRAPH. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

**THE DEBTORS REQUEST THAT A HEARING BE CONDUCTED ON THIS MATTER ON DECEMBER 22, 2023 AT 10 A.M. (CENTRAL PREVAILING TIME) IN COURTROOM 400, 4TH FLOOR, 515 RUSK AVENUE, HOUSTON, TX 77002.**

**YOU MAY PARTICIPATE IN THE HEARING EITHER IN PERSON OR BY AN AUDIO AND VIDEO CONNECTION.**

**AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S DIAL-IN FACILITY. YOU MAY ACCESS THE FACILITY AT 832-917-1510. ONCE CONNECTED, YOU WILL BE ASKED TO ENTER THE CONFERENCE ROOM NUMBER. JUDGE LOPEZ'S CONFERENCE ROOM NUMBER IS 590153. VIDEO COMMUNICATION WILL BE BY USE OF THE GOTOMEETING PLATFORM. CONNECT VIA THE FREE GOTOMEETING APPLICATION OR CLICK THE LINK ON JUDGE LOPEZ'S HOME PAGE. THE MEETING CODE IS "JUDGELOPEZ".**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions VII LLC (3198). The Debtors' corporate headquarters is 210 Barton Springs Road, Suite 300, Austin, Texas 78704. The Debtors' service address is 2407 S. Congress Ave, Suite E-101, Austin, TX 78704.

CLICK THE SETTINGS ICON IN THE UPPER RIGHT CORNER AND ENTER YOUR NAME UNDER THE PERSONAL INFORMATION SETTING.

HEARING APPEARANCES MUST BE MADE ELECTRONICALLY IN ADVANCE OF BOTH ELECTRONIC AND IN-PERSON HEARINGS. TO MAKE YOUR APPEARANCE, CLICK THE "ELECTRONIC APPEARANCE" LINK ON JUDGE LOPEZ'S HOME PAGE. SELECT THE CASE NAME, COMPLETE THE REQUIRED FIELDS AND CLICK "SUBMIT" TO COMPLETE YOUR APPEARANCE.

Core Scientific, Inc. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), respectfully represent as follows in support of this motion (the "**Motion**"):

**Preliminary Statement**

1. Pursuant to the *Third Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors*, dated November 16, 2023 [Docket No. 1438] (as may be amended, supplemented, or otherwise modified from time to time, the "**Plan**"),[2] creditors and existing equity holders are entitled to receive (among other forms of consideration) new common equity of Reorganized Parent (the "**New Common Interests**").[3] For certain creditors under the Plan, the allowed claim amounts for such creditors are agreed to between the Debtors and the creditors and will be determined by the Court prior to emergence. For example, certain of the General Unsecured Claims in Class 8 are expected to be agreed to by the Debtors and the applicable holder of the General Unsecured Claim or otherwise determined by the Court prior to emergence. However, there are a number of contingent, unliquidated, and/or disputed Claims in Class 8 (General Unsecured Claims) and Class 11 (Section 510(b) Claims) that may not be resolved prior

[2] Capitalized terms used but not otherwise herein defined shall have the meanings ascribed to such terms in the Plan.

[3] Pursuant to section 1.183 of the Plan, "**New Common Interests**" means the new common equity of Reorganized Parent to be issued (a) on the Effective Date or thereafter under the Plan or (b) as otherwise permitted pursuant to the Plan and the New Corporate Governance Documents.

WEIL:\99421311\12\39031.0014

to emergence.  As a result, the Debtors do not know the extent to which the CUD Claims (as defined below) will become Allowed Claims and therefore be entitled to recoveries (including the number of New Common Interests and Warrants) under sections 4.8 and 4.11 of the Plan.

2.      In order to fix the count and proper allocation of New Common Interests and Warrants on the Effective Date, section 5.20 of the Plan provides that New Common Interests and Warrants will be deemed issued on the Effective Date on account of CUD Claims in an aggregate amount representing the maximum amount of each contingent, unliquidated, and Disputed Claim for purposes of distributions under the Plan.

3.      In particular, the Debtors seek the establishment of maximum claim amounts in connection with certain (a) litigation claims against the Debtors, excluding Section 510(b) Claims ("**Litigation Claims**"), (b) potential rejection damages claims ("**Rejection Damages Claims**"), (c) Section 510(b) Claims ("**510(b) Claims**"), and (d) other contingent, unliquidated, and/or disputed claims (the "**Other Disputed Claims**", and together with the Litigation Claims, Rejection Damages Claims, and 510(b) Claims, the "**CUD Claims**" and each such holder of a CUD Claim, a "**Claimant**"), for the purposes of calculating the maximum amount of distributions to all claimholders under the Plan.[4]

4.      This Motion seeks to establish the maximum Allowed amount of CUD Claims for the purposes of calculating the Disputed Class 8 Claim Shares and Disputed Class 11 Claim Shares (each as defined in the Plan), as set forth on **Exhibit 1** ("**Litigation CUD Schedule**"), **Exhibit 2** ("**Rejection Damages Schedule**"), **Exhibit 3** ("**510(b) Schedule**"), and **Exhibit 4** ("**Other Disputed CUD Schedule**" and together with the Litigation CUD Schedule, the

---

[4] In addition, pursuant to the Plan, the Debtors seek allowance of certain General Unsecured Claims ("**Allowed General Unsecured Claims**"), which will be part of the Plan Supplement and is attached to the Proposed Order as **Exhibit 5** (the "**Schedule of Allowed General Unsecured Claims**").

Rejection Damages Schedule, and the 510(b) Schedule, the "**Claims Schedules**"),[5] each as attached to the Proposed Order.

5.      As further described below, certain Other Disputed Claims include Claims that the Debtors have resolved consensually pursuant to settlements or agreements in principle ("**Settling GUC Claims**"), but such settlements have not yet been approved by the Court.  For purposes of determining the maximum allowed amount of the Settling GUC Claims, the Debtors have assumed that the Court will enter an order allowing the Settling GUC Claims in the settled amounts on or before the Effective Date, as indicated by the amounts in the column labeled "Maximum Disputed Amount" on the Other Disputed GUC Schedule.  To the extent any Settling GUC Claim is not ultimately allowed by the Court on or before the Effective Date, the maximum Allowed amount of such Settling GUC Claims will be adjusted to reflect the asserted amount set forth in the column titled "Adjusted Settling GUC Amount" on the Other Disputed CUD Schedule.

6.      As described below, the Debtors are proposing to establish, in each case for Calculation Purposes (as defined below) and distribution, (i) the maximum Allowed amount of each CUD Claim, which in the aggregate totals $114.3 million (the "**Maximum Disputed Amount**"),[6] which includes approximately $5.9 million for Other Disputed Claims that are Settling GUC Claims, and (ii) only to the extent any Settling GUC Claims are not resolved prior to the Effective Date, the maximum Allowed amount of any such Settling GUC Claims, which in the aggregate totals $36.0 million (the "**Adjusted Settling GUC Amount**"), which would result in a total adjusted Maximum Disputed Amount of up to $144.4 million (any such adjusted amount,

---

[5] The Claims Schedules are subject to the Debtors' ongoing review and may change.  The Debtors reserve the right to amend or supplement any of the Claims Schedules prior to the hearing to consider the Motion.

[6] The Debtors are seeking to establish the Maximum Disputed Amount of the CUD Claims for Calculation Purposes and distribution on a claim by claim basis, and not on an aggregate basis.

WEIL:\99421311\12\39031.0014

the "**Adjusted Maximum Disputed Amount**") to the extent one or more of the Settling GUC Claims are not resolved prior to the Effective Date.  The Maximum Disputed Amount, the Adjusted Settling GUC Amount, and the Adjusted Maximum Disputed Amount includes the Debtors' calculations of post-petition interest at the Federal Judgment Rate at 4.74% through December 31, 2023 for Rejection Damages Claims and through April 30, 2024 for Litigation Claims, 510(b) Claims and Other Disputed Claims.[7]

7. If CUD Claims are either Disallowed or settled in amounts lower than those provided in the Claims Schedules such that the Maximum or the Adjusted Maximum Disputed Amount (as applicable) exceeds the Allowed Claim amount, the excess New Common Interests and New Warrants reserved, or deemed to have been issued, for such CUD Claims will be distributed to Holders of Existing Common Interests in Class 13 consistent with sections 5.20(b) and 5.20(c) of the Plan.

### Relief Requested

8. By this Motion, pursuant to sections 502(c) 1123(a)(5), and 105(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), the Debtors request entry of an order estimating the maximum amount of certain CUD Claims solely for purposes of calculating the maximum amount of potential distributions of Disputed Class 8 Claim Shares and Disputed Class 11 Claim Shares in the event such CUD Claims are ultimately Allowed (the "**Calculation Purposes**").  __This Motion does not seek to resolve any of the CUD Claims, including the__

---

[7] To the extent any CUD Claim is Allowed or otherwise resolved prior to April 30, 2024, the distributions to such CUD Claimant will be updated to include additional post-petition interest through the date of such distribution.  In addition, to the extent the Court determines that holders of General Unsecured Claims are entitled to the contract rate for postpetition interest, the Maximum Disputed Amount or the Adjusted Maximum Disputed Amount, as applicable, with respect to each General Unsecured Claim shall be adjusted prior to the Effective Date.

WEIL:\99421311\12\39031.0014

**Settling GUC Claims, but seeks to establish a maximum potential Allowed amount of CUD Claims.**

9.      In support of this Motion, the Debtors submit the declaration of John Creighton  (the "**Creighton Declaration**"), a copy of which is annexed hereto as **Exhibit A**.

10.      A proposed form of order granting the relief requested herein on a final basis is annexed hereto as **Exhibit B** (the "**Proposed Order**").

**Jurisdiction**

11.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**Background**

**A.      The Debtors' Chapter 11 Cases**

12.      On December 21, 2022, the Debtors each commenced with this Court a voluntary case under the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

13.      The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Bankruptcy Rules and Rule 1015-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Local Rules**").  On January 9, 2023, the United States Trustee for Region 7 (the "**U.S. Trustee**") appointed the Creditors' Committee.  On March 23, 2023, the U.S. Trustee appointed the Equity Committee.  No trustee or examiner has been appointed in these chapter 11 cases.

6

B.      **Plan Summary**

14.     Several classes of creditors and existing equity holders are entitled to receive (among other forms of consideration) New Common Interests under the Plan, including:

- Holders of April Convertible Notes Secured Claims (Class 1) and August Convertible Notes Secured Claims (Class 2), will receive New Common Interests (among other forms of consideration) in exchange for such Holders' Claims pursuant to the Plan.

- Holders of Miner Equipment Lender Secured Claims (Class 3) may receive New Common Interests in exchange for their Claims, depending on which treatment option each Holder chooses.

- Holders of Allowed General Unsecured Claims in Class 8 are entitled to receive New Common Interests with a value, based on Plan Value, equal to one-hundred percent (100%) of such Holder's Allowed General Unsecured Claim, as further set forth in section 4.8 of the Plan.

- Holders of Allowed Section 510(b) Claims in Class 11 are entitled to receive (i) such Holder's Pro Rata Equity Share of the Residual Equity Pool, (ii) such Holder's Pro Rata Equity Share of New Warrants, and (iii) in lieu of the right to participate in the Rights Offering, either Cash, New Common Interests, New Warrants, or some combination thereof, at the option of the Debtors or Reorganized Debtors, as applicable, in an amount equal to the value (if New Common Interests, at Plan Value) of the Subscription Rights that would have been distributable to such Holder if Subscription Rights were distributed to Holders in Class 11, as further set forth in section 4.11 of the Plan.

- Holders of Existing Common Interests (Class 12) are entitled to receive (i) such Holder's Pro Rata Equity Share of the Residual Equity Pool, (ii) such Holder's Pro Rata Equity Share of the New Warrants, and (iii) the right to participate in the Rights Offering in accordance with the Rights Offering Procedures; *provided*, that with respect to any Existing Common Interests that are Unvested Restricted Stock, any New Common Interests distributed to Holders on account of such Unvested Restricted Stock will be subject to the same restrictions/vesting conditions applicable to such Unvested Restricted Stock as of the Effective Date.

15. The Plan establishes Class 8 for General Unsecured Claims[8] and Class 11 as Section 510(b) Claims.[9] The relief sought in this Motion is for the purpose of setting the number and allocation of New Common Interests and Warrants to be issued on the Effective Date and establishing the maximum number of New Common Interests that may be distributed to each Holder of a CUD Claim. Specifically, for purposes of calculating the total number of New Common Interests to be distributed to Holders of Claims and Interests on the Effective Date and allocation of such New Common Interests, a number of New Common Interests will be deemed to be issued on account of Disputed Claims in Class 8 based upon the Disputed Claims Estimation Amount determined by the Bankruptcy Court (the "**Disputed Class 8 Claim Shares**"). Similarly, New Common Interests and New Warrants will be deemed to be issued on account of Disputed Claims in Class 11 based upon the Disputed Claims Estimation Amount determined by the Bankruptcy Court (the "**Disputed Class 11 Claim Shares**").

16. Except to the extent a Holder of a General Unsecured Claim has agreed to waive its recovery on its General Unsecured Claim (such as certain of the Settling Miner Equipment Lenders) or agrees to less favorable treatment of such Claim, each Holder of a General

---

[8] General Unsecured Claims consist of all Claims that are not Secured Claims, Priority Tax Claims, Priority Non-Tax Claims, Professional Fee Claims, DIP Claims, Intercompany Claims, Section 510(b) Claims, or Administrative Expense Claims. General Unsecured Claims include (i) Miner Equipment Lender Deficiency Claims, (ii) the B. Riley Unsecured Claim, (iii) all Claims arising from litigation against a Debtor, including Insured Litigation Claims and excluding Section 510(b) Claims, (iv) all unsecured Claims arising from General Contracts, (v) all Claims of the Debtors' utility providers, and (vi) other unsecured Claims against the Debtors.

[9] Section 510(b) Claims in Class 11 consist of any Claim against any Debtor (i) arising from the rescission of a purchase or sale of an Interest of any Debtor or an Affiliate of any Debtor (including the Existing Common Interests); (ii) for damages arising from the purchase or sale of such Interest; or (iii) for reimbursement or contribution Allowed under section 502 of the Bankruptcy Code on account of such a Claim. Section 510(b) Claims include both (i) Claims asserted or assertable against the Debtors in the Securities Class Action (as defined below) and (ii) proofs of claim (each a "**POC**") Nos. 52, 54, 81, 82, 241, 351, 556, and 632, including the Securities Class Action POC (as defined below). In accordance with section 510(b) of the Bankruptcy Code, each Allowed Section 510(b) Claim (i) is subordinated to all Claims, (ii) has the same priority as the Existing Common Interests (Class 12), and (iii) will receive treatment of the same value as the Existing Common Interests (Class 12).

WEIL:\99421311\12\39031.0014

Unsecured Claim will receive New Common Interests with a value, based on Plan Value, equal to one-hundred percent (100%) of such Holder's Allowed General Unsecured Claim.  All Allowed General Unsecured Claims will accrue interest at the Federal Judgment Rate from the Petition Date to the Effective Date.

17.     Each Holder of a Section 510(b) Claim will receive, on the Effective Date, or as soon as reasonably practicable thereafter, (i) such Holder's Pro Rata Equity Share of the Residual Equity Pool and (ii) such Holder's Pro Rata Equity Share of New Warrants, and (iii) in lieu of the ability to participate in the Rights Offering, such Holders will receive, Cash, New Common Interests, or New Warrants, at the option of the Debtors or Reorganized Debtors, as applicable, in an amount equal to the value of the Subscription Rights that would have been distributable to such Holder if Subscription Rights were distributed to Holders in Class 11.

18.     Due to the sheer number of the CUD Claims and, in part, to the contingent, unliquidated and disputed nature of each of the CUD Claims, which include a number of significant litigation-related Claims, the Debtors do not anticipate that they will be able to reach a resolution on each of the CUD Claims in an expeditious manner or, in any event, prior to the Effective Date. Therefore, unless the Court establishes the aggregate maximum amount of the CUD Claims for Calculation Purposes and distribution, as requested herein, the Debtors may not be able to effectuate the distributions contemplated under to the Plan until each of the CUD Claims are either resolved consensually or determined by the Court, which would result in a substantial delay in distributing New Common Interests to holders of Allowed Claims and Interests.

## C.     The Bar Dates

19.     On February 3, 2021 the Debtors filed their statements of financial affairs and schedules of assets, liabilities, current income, expenditures, executory contracts, and unexpired leases, as required by section 521 of the Bankruptcy Code (Docket Nos. 461–82)

WEIL:\99421311\12\39031.0014

(the "**Schedules and SOFAs**").   On February 6, 2023 and March 3, 2023, the Debtors filed

supplements and amendments to the Schedules and SOFAs (Docket Nos. 490–91; 625–30).

20.    On March 9, 2023 the Court entered the *Order (I) Establishing Deadlines to File Proofs of Claim and (II) Approving Form and Manner of Notice Thereof* (Docket No. 652) (the "**Bar Date Order**").  Pursuant to the Bar Date Order, the Court established April 14, 2023 at 5:00 p.m. (prevailing Central Time) as the deadline for non-governmental units to file proofs of claim against the Debtors (the "**General Bar Date**") and June 19, 2023 at 5:00 p.m. (prevailing Central Time) as the deadline for government units (as defined in section 101(27) of the Bankruptcy Code) to file proofs of claim against the Debtors.

21.    Following entry of the Bar Date Order, Stretto, Inc., the Debtors' claims, noticing, and solicitation agent, Stretto, Inc. ("**Stretto**"), mailed notice of the Bar Date Order and the proof of claim form to thousands of potential claimants in accordance with the procedures outlined within the Bar Date Order.[10]

22.    In accordance with the Bar Date Order, Stretto, Inc., the Debtors' court-appointed claims and noticing agent, mailed notices of the Bar Dates (the "**Bar Date Notice**") and proof of Claim forms to, among others, all of the Debtors' creditors and other known holders of claims as of the Petition Date.

### The Proofs of Claim and Claims Reconciliation Process

23.    As of November 22, 2023, the claims register maintained by Stretto reflects that approximately 650 Proofs of Claim have been filed in the Chapter 11 Cases.  The Debtors and

---

[10] Additionally, pursuant to the Bar Date Order, the Debtors published the notice of deadlines for filing Proofs of Claim in the national edition of The Wall Street Journal and in the local editions of the Austin American-Statesman, Odessa American, Pecos Enterprise, Denton Record Chronicle, Cherokee Scout, Dalton Daily Citizen, The Lake News, Grand Forks Herald, and Muskogee Phoenix.

their advisors have been working diligently to review these Proofs of Claim, including any supporting documentation filed therewith.

24.     The chart below sets forth the asserted amount, the Maximum Disputed Amount, and the Adjusted Maximum Disputed Amount of each CUD Claims by category.  Neither the Maximum Disputed Amount nor the Adjusted Maximum Disputed Amount is indicative of the Debtors' estimate of the ultimate Allowed amount of the CUD Claims and Settling GUC Claims addressed herein and the Debtors reserve all rights to object to any or all of the CUD Claims or Settling GUC Claims either in whole or in part, or seek to estimate any and all CUD Claims and Settling GUC Claims at lesser amounts.

| CUD Claims Category | Number of CUD Claims or Projected Rejection Damages Claims | Asserted Amount (Amount Subject to Objection) | Maximum Disputed Amount for Calculation Purposes and Distribution | Adjusted Maximum Disputed Amount (adjusted for the Adjusted Settling GUC Amount) for Calculation Purposes and Distribution[11] |
|---|---|---|---|---|
| Litigation Claims | 3 | $55,568,729 | $59,178,168 | $59,178,168 |
| Rejection Damages Claims | 12 | $8,738,925 | $9,174,209 | $9,174,209 |
| 510(b) Claims | 19 | $1,277,368 | $3,490,247 | $3,490,247 |
| Other Disputed Claims | 43 | $73,233,003 | $42,463,654 | $72,584,728 |
| **Total** | **78** | **$138,818,025** | **$114,306,278** | **$144,427,352** |

25.     The Debtors believe that the Maximum Disputed Amount and the Adjusted Maximum Disputed Amount strikes a careful balance between enabling the Debtors to make distributions on account of Allowed Claims, without jeopardizing the potential recoveries of

---

[11] Applicable only to the extent the Settling GUC Claims are not resolved prior to the Effective Date.

holders of General Unsecured Claims and 510(b) Claimants that are presently CUD Claims that may be subsequently Allowed.  As indicated above, the Debtors have identified the CUD Claims into the following categories for Calculation Purposes and distribution.

### a) *Litigation Claims*

26.     The CUD Claims include three (3) Litigation Claims in an aggregate asserted amount of not less than approximately $55.6 million (excluding post-petition interest) filed against the Debtors in connection to certain litigation Claims against the Debtors.  Allowed Litigation Claims are classified as Class 8 General Unsecured Claims under the Plan.  A list of the Litigation Claims, along with the asserted amount in such Claimants' proofs of claims and the Debtors' proposed Maximum Disputed Amount for each such CUD Claim is annexed to the Proposed Order as **Exhibit 1**.  For purposes of this Motion, the Debtors seek to establish the Maximum Disputed Amount for each Litigation Claimant as provided in **Exhibit 1** to the Proposed Order, which totals an aggregate of $59.2 million (which includes post-petition interest at the Federal Judgment Rate through April 24, 2024) for Calculation Purposes and distribution.

### b) *Projected Rejection Damage Claims*

27.     Pursuant to Section 8.1 of the Plan, the Debtors' Executory Contracts and Unexpired Leases shall be deemed assumed on the Effective Date, unless the Debtors explicitly reject any such contracts pursuant to a motion filed with the Bankruptcy Court.  The Debtors anticipate rejecting, or have received disputed rejection damages claims from, twelve (12) executory contract counterparties, where counterparties have filed, or are expected to file, proofs of claims asserting an aggregate amount of $8.7 million (excluding post-petition interest) in claims. Allowed Rejection Damages Claims are classified as Class 8 General Unsecured Claims under the

Plan. The Debtors may ultimately decide not to reject one or more of such contracts,[12] but seek to establish the maximum amount of Rejection Damages Claims for Calculation Purposes and distribution.  The Debtors believe that these Rejection Damages Claims should be established at a maximum Allowed amount of $9.2 million for Calculation Purposes and distribution (which includes post-petition interest at the Federal Judgment Rate through December 31, 2024).  The Rejection Damages Schedule, which includes Debtors' proposed Maximum Disputed Amount for each such potential Rejection Damage Claim, is annexed to the Proposed Order as **Exhibit 2**.

### c)  *Section 510(b) Claims*

28.     Certain parties have filed proofs of claims alleging, among other things, violations of securities laws and damages for alleged fraud in connection with the sale or purchase of shares in Core.  While the Debtors intend to object to each of these claims, on November 24, 2023, the Debtors filed the *Debtors' Motion for Entry of an Order Classifying Certain Claims as Section 510(b) Claims (Class 11) Under Debtors' Proposed Joint Chapter 11 Plan of Reorganization* [Docket No. 1463], seeking to classify such Claims as subordinated claims pursuant to section 510(b) of the Bankruptcy Code, and thus such Claims would be classified as Class 11 Section 510(b) Claims under the Plan.  Holders of Section 510(b) Claims have filed nineteen (19) non-duplicative proofs of claim asserting an aggregate amount of approximately $1.3 million in claims (excluding post-petition interest and the Securities Class Action POC[13]).  The

---

[12] The Debtors may also seek to reject additional contracts, in which case the Debtors will amend the Rejection Damages Schedule accordingly.

[13] Following a hearing held on December 6, 2023 on (i) the Debtors' obligation to the Securities Class Action PC and (ii) the Class POC Motion (as defined below), the Court disallowed the Securities Class Action POC and denied the Class POC Motion, provided that the lead plaintiff (Hoffman) was granted leave to file a revised Proof of Claim solely in Ms. Hoffman's individual capacity no later than December 20, 2023.  As a result, the claim amounts asserted in the Securities Class Action POC are not included.  However, the Debtors assumed a maximum claim amount of approximately $2.1 million on account of Hoffman's potential individual proof of claim and may update such amount

Debtors believe that, if allowed, these claims should be classified as subordinated claims pursuant to section 510(b) of the Bankruptcy Code at an estimated maximum Allowed amount of $3.5 million for Calculation Purposes and distribution.  A list of 510(b) Claims, along with the asserted amount in such Claimants' proofs of claims and the Debtors' proposed Maximum Disputed Amount for each such 510(b) Claim is annexed to the Proposed Order as **Exhibit 3**.  For purposes of this Motion, the Debtors seek to establish the Maximum Disputed Amount for each 510(b) Claimant as provided in **Exhibit 3** to the Proposed Order, which totals an aggregate of $3.5 million.

### i.  Morgan Hoffman Class Action

29.     Morgan Hoffman filed the Securities Class Action[14] on behalf of himself and ostensibly the plaintiffs in the Securities Class Action.  Proof of claim No. 632 was filed against Debtor Core Scientific Inc. in the amount of $188.6 million (the "**Securities Class Action POC**").  On July 24, 2023, the Debtors filed an objection to the Securities Class Action POC [Docket No. 1080] (the "**Securities POC Objection**") asserting the Securities Class Action POC should be Disallowed as the filing of a class proof of claim was inappropriate.  In addition, the Debtors believe any claim arising from the Securities Class Action should be treated as a Section 510(b) Claim.  Morgan Hoffman responded to the Securities POC Objection on August 23, 2023

---

to the extent Morgan Hoffman asserts a damages claim that is higher or lower than the assumed maximum claim amount.

[14] On November 14, 2022, a class action lawsuit, *Pang v. Levitt*, et. al. 1:22-cv-01191, was filed in the Western District of Texas against Core Scientific, Inc., Chief Executive Officer Michael Levitt, former Chief Financial Officer Michael Trzupek, and Chief Financial Officer Denise Sterling alleging violations of the Securities Exchange Act (the "**Securities Class Action**").  The Debtors filed the Chapter 11 Cases, the plaintiff in the Securities Class Action filed a notice of voluntary dismissal as to the Debtors on December 27, 2022. On May 5, 2023, an amended complaint was filed refining the allegations and naming additional defendants: Chief Vision Officer Darin Feinstein, former Chief Accounting Officer Brian Neville, Director Jarvis Hollingsworth, Director Matt Minnis, and Director Kneeland Youngblood. The Debtors are no longer a named party in the suit, but are identified as a relevant non-party.

[Docket No. 1178], asserting (i) Morgan Hoffman has authority to assert a class proof of claim and (ii) the Securities Class Action POC should be allowed.

30.    On September 14, 2023, Morgan Hoffman field a motion requesting that the Court  (i) approve the filing of a class proof of claim, (ii) allow an omnibus opt-out of non-Debtor third party releases for the class, and (iii) certify the class for the class proof of claim and the omnibus opt-out (Docket No. 1228) (the "**Class POC Motion**").  On October 5, 2023, the Debtors filed an objection response to the Class POC Motion [Docket No. 1313].

31.    Following a hearing held on December 6, 2023, the Court disallowed the Securities Class Action POC and denied the relief sought in the Class POC Motion.  However, the Court authorized Morgan Hoffman to file a new proof of claim solely in Mr. Hoffman's individual capacity no later than December 20, 2023  Although Mr. Hoffman has not filed such new proof of claim, the Debtors have assumed a maximum claim amount of approximately $2.1 million on account of such potential proof of claim and may update such amount to the extent Morgan Hoffman asserts a damages claim that is higher or lower than the assumed maximum claim amount.

### d)  *Other Disputed Claims*

32.    The CUD Claims include 43 Other Disputed Claims in an aggregate asserted amount of not less than approximately $73.2 million.  The Other Disputed Claims consist of Claims filed in connection with various contractual damages claims and non-priority tax claims and includes Settling GUC Claims.  Allowed Other Disputed Claims are classified as Class 8 General Unsecured Claims under the Plan.

33.    Certain Other Disputed Claims are also Settling GUC Claims that the Debtors are in process of settling in advance of the Effective Date.  The projected Allowed amount of such Settling GUC Claims is based on the Debtors' good-faith estimate as to the Allowed

15

amount of such Settling GUC Claims that will ultimately be agreed upon the conclusion of the settlement negotiations.

34.     The Debtors believe that these Other Disputed Claims should be established at a maximum Allowed amount of $42.5 million for Calculation Purposes and distribution. However, to the extent any Settling GUC Claims are not settled or otherwise resolved prior to emergence, the Debtors seek to establish a maximum Allowed amount of Settling GUC Claims as provided in the column labeled "Adjusted Settling GUC Amount" on the Other Disputed CUD Schedule attached to the Proposed Order, which would result in an Adjusted Maximum Disputed Amount of all Disputed Claims of up to $144,427,352 if one or more of the Settling GUC Claims are not resolved on or before the Effective Date.  A list of the Other Disputed Claims, along with the asserted amount in such Claimants' proofs of claims and the Debtors' proposed Maximum Disputed Amount, the Adjusted Settling GUC Amount, and the Adjusted Maximum Disputed Amount for each such CUD Claim is annexed to the Proposed Order as **Exhibit 4**.  For purposes of this Motion, the Debtors seek to establish the Maximum Disputed Amount for each Other Disputed Claimant as provided in **Exhibit 4** to the Proposed Order, which totals an aggregate of $42.5 million.  To the extent a Settling GUC Claim that is an Other Disputed Claim is not resolved prior to the Effective Date, such Settling GUC Claim should be Allowed in the amount of the Adjusted Settling GUC Amount for such Settling GUC Claim that is not resolved, which may result in an Adjusted Maximum Disputed Amount of up to $72.6 million.

35.     The Debtors, in consultation with their advisors, have reviewed and analyzed the contracts that the Debtors may reject, the Debtors' books and records, and other potentially relevant factors.  Based upon this review, the Debtors have determined that, for purposes of this Motion, the Debtors seek to establish (i) the Maximum Disputed Amount for each

WEIL:\99421311\12\39031.0014

potential CUD Claimant as provided in the chart above, which totals an aggregate of $114.3 million and (ii) to the extent Settling GUC Claims are not resolved prior to the Effective Date, the Adjusted Maximum Disputed Amount for each potential CUD Claimant as provided in the chart above, which totals $144.4 million if none of the Settling GUC Claims are resolved prior to the Effective Date.

36.     In addition to the CUD Claims, the Debtors note the following Claims that the Debtors do not seek relief for:

a.     <u>Miner Equipment Lender Deficiency Claims</u>.  The Plan provides that the Miner Equipment Lender Claims will be bifurcated into a secured Claim equal to the value of the collateral securing the Miner Equipment Lender Claim (collectively, the "**Miner Equipment Lender Secured Claims**") and (ii) an unsecured Claims for amounts in excess of the applicable collateral value (collectively the "**Miner Equipment Lender Deficiency Claims**"). Miner Equipment Lender Deficiency Claims shall be treated as General Unsecured Claims and shall vote in Class 8.  However, the Debtors have reached a settlement with the Settling Miner Equipment Lenders and the Miner Equipment Lender Deficiency Claims shall be allowed in the amounts as provided under <u>Exhibit J</u> to the Plan.  **The Debtors do not seek any relief under this Motion on account of the Miner Equipment Lender Deficiency Claims.**

b.     <u>Non-Substantive Objections to Claims</u>.  On November 22, 2023, the Debtors filed the *Debtors' First Omnibus Claims Objection to Certain (I) Amended Claims; (II) Exact Duplicative Claims; (III) Beneficial Bondholder Duplicative Claims; (IV) Multiple Debtor Claims; (V) Wrong Debtor Claims; (VI) Late Filed Claims; (VII) Insufficient Documentation Claims; (VIII) Equity Claims; and (IX) Reclassified Claims (Based on Priority)* [Docket No. 1460], which, among other things, objects to certain proofs of claims filed against the Debtors that are

17

invalid for various administrative reasons, including, but not limited to, that (i) such proof of claim is duplicative or redundant to another proof of claim filed by such Claimant, (ii) the wrong Debtor is named on the proof of claim, (iii) the Claim was filed after the Bar Date, (iv) an amended and/or restated proof of claim was subsequently filed, or (v) no support was provided under such proof of claim (collectively, "**Administratively Invalid Claims**"). **The Debtors do not seek any relief under this Motion on account of the Administratively Invalid Claims.**

c. <u>Allowed General Unsecured Claims.</u> Pursuant to the Plan, the Debtors seek allowance of certain General Unsecured Claims ("**Allowed General Unsecured Claims**") as set forth on <u>**Exhibit 5**</u> attached to the Proposed Order (the "**Schedule of Allowed General Unsecured Claims**"). The Schedule of Allowed General Unsecured Claims does not include the Miner Equipment Lender Deficiency Claims (which may be found on <u>Exhibit J</u> to the Plan) or Claims related to executory contracts that the Debtors anticipate assuming and curing pursuant to the Plan. **The Debtors do not seek any relief under this Motion on account of the Allowed General Unsecured Claims.**

## **Basis for Relief Requested**

**A.     The Court has Authority to Estimate the CUD Claims.**

37.     Section 105(a) of the Bankruptcy Code provides, in pertinent part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a); *see also In re Davis*, 170 F.3d 475, 491-92 (5th Cir. 1999) (noting that section 105 provides bankruptcy courts with broad authority to administer a bankruptcy case). In order for a bankruptcy court to grant relief pursuant to section 105(a); however, the relief must have its basis in some other provision of the Bankruptcy Code. *Worthington v. Ahlers*, 485 U.S. 197, 206 (1988) (orders pursuant to section 105(a) must be "within the confines of the Bankruptcy Code"). Section 1123(a)(5)(J) of the Bankruptcy Code

18

provides such basis with respect to the establishment of the Maximum Disputed Amounts for the CUD Claimants for Calculation Purposes and distribution.

38.     Section §1123(a)(5)(J) of the Bankruptcy Code requires that the Plan provide for adequate means for its implementation, such as "issuance of securities of the debtor ... in exchange for claims." Here, the section 5.20(b) of the Plan provides that

> "[f]or purposes of computing distribution amounts to Holders of Allowed Claims and Existing Common Interests on the Effective Date, such that New Common Interests and New Warrants issued to Holders of Allowed Claims and Existing Common Interests on the Effective Date shall be issued on a diluted basis with a share count and allocation that takes into account the maximum number of New Common Interests that can be issued to Disputed Claims in Class 8 and Class 11 if subsequently Allowed, Disputed Class 8 Claim Shares and Disputed Class 11 Claim Shares shall be treated as if issued on the Effective Date on account of Disputed Claims in the Disputed Claims Estimation Amount. To the extent a Disputed Claim becomes an Allowed Claim, the Holder of such Claim shall receive (i) New Common Interests, and New Common Interests shall be issued, with a value, based on Plan Value, equal to the Allowed amount of such Claim, provided that such Allowed amount may not exceed the Disputed Claims Estimation Amount and (ii) if such Disputed Claim is a Section 510(b) Claim, its Pro Rata Equity Share of New Warrants. To the extent the Disputed Claim is either Disallowed or Allowed in an amount that is less than the Disputed Claims Estimation Amount for such Disputed Claim, (i) New Common Interests with a value, based on Plan Value, equal to (a) the Disputed Claims Estimation Amount minus (b) the amount in which the Disputed Claim is Allowed pursuant to a Final Order, shall be then be issued and distributed annually to Holders of Allowed Claims and Existing Common Interests in Classes 11 and 12 in accordance with sections 4.11 and 4.12 hereof and (ii) the applicable Pro Rata Equity Share of New Warrants shall then be issued and distributed no less than annually to Holders of Allowed Claims and Existing Common Interests in Classes 11 and 12 in accordance with sections 4.11 and 4.12 hereof."

39.     Additionally, the Court has broad discretion in estimating the value of a claim and its principal consideration when estimating the value of a claim is "to promote a fair distribution to creditors through a realistic assessment of uncertain claims." *O'Neill v. Cont'l Airlines, Inc.,* 981 F.2d 1450, 1461 (5th Cir. 1993); *see also Kool, Mann, Coffee & Co. v. Coffey*,

300 F.3d 340, 356-57 (3d Cir. 2002) (finding that estimation is possible where there is sufficient evidence to base a reasonable estimation of a claim).

40.     Here, the Plan establishes the establishment of the Maximum Disputed Amounts is a necessary mechanism for providing timely distributions to Holders of Allowed Claims and Existing Common Interests.  If the relief requested in this Motion is not granted and the if the Debtors are unable to establish the Maximum Disputed Amount for each of the CUD Claims, it becomes impossible for the Debtors to properly determine the number of New Common Interests and New Warrants that must be issued to Holders of Allowed Claims and Existing Common Interests on the Effective Date, which would otherwise result in the delay of distributions for an undetermined period of time awaiting the resolution of disputed proofs of claim and other related matters.  Therefore, the Debtors believe that it is necessary and in the best interest of their estates and creditors for the Court to establish the Maximum Disputed Amount or Adjusted Maximum Disputed Amount (as applicable) for each of the CUD Claims.

**B.     The Court Determines the Method of Establishing Disputed Claim Amounts**

41.     Section 502(c) of the Bankruptcy Code mandates the estimation of all contingent or unliquidated claims which, unless fixed or liquidated, would unduly delay the administration of a debtor's estate, and provides, in pertinent part, as follows:

> "There shall be estimated for purpose of allowance under this section –
>
> (1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case . . . ."

11 U.S.C. § 502(c).  Although section 502(c) refers to the estimation of claims for the purposes of allowance, courts in this district and others have estimated claims for other purposes, including to establish reserves for plan distributions.  *See, e.g.*, *In re Hercules Offshore, Inc.*, No. 16-11385

(KJC) (Bankr. D. Del. Jun 21, 2016) (establishing aggregate claims reserve of $47 million based on estimated disputed claims); *In re Newpage Corp.,* No. 11-12804 (KG) (Bankr. D. Del. Feb. 19, 2013) (establishing aggregate claims reserve of $150 million based on estimated disputed claims); *In re Accredited Home Lenders Holding Co.*, No. 09- 11516 (MFW) (Bankr. D. Del. May 31, 2011); *see also In re Gen. Maritime Corp.*, No. 11-15285 (MG) (Bankr. S.D.N.Y. Apr. 26, 2012) (estimating the maximum aggregate amount of unsecured claims for purposes of establishing an unsecured claims reserve); *In re Motors Liquidation Co.*, No. 09-50026 (REG) (Bankr. S.D.N.Y. Mar. 23, 2011) (estimating the maximum amount of individual claims for purposes of establishing a claims reserve under a plan); *In re Lyondell Chem. Co.*, No. 09-10023 (REG) (Bankr. S.D.N.Y. Nov. 23, 2010) (setting and establishing a disputed claims reserve).

42.     Section 502(c) does not prescribe the method for estimating a claim, and courts therefore have discretion to utilize any valuation model that best suits the circumstances of the case at hand. *See, e.g.*, *Maxwell v. Seaman Furniture Co. (In re Seaman Furniture Co. of Union Square, Inc.)*, 160 B.R. 40, 42 (S.D.N.Y. 1993) (stating that "a bankruptcy court may use whatever method is best suited to the circumstances"). "[W]hen estimating claims, bankruptcy courts may use whatever method is best suited to the contingencies of the case, so long as the procedure is consistent with the fundamental policy of Chapter 11 that a reorganization must be accomplished quickly and efficiently." *In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 278 (S.D.N.Y. 2007) (citation and internal quotations omitted). Indeed, the clearly stated purpose for allowing the estimation of claims is to "avoid undue delay in the administration of bankruptcy proceedings." *Frito-Lay, Inc. v. LTV Steel Co. (In re Chateaugay Corp.)*, 10 F.3d 944, 957 (2d Cir. 1993); *In re N.Y. Med. Grp., P.C.*, 265 B.R. 408, 415 (Bankr. S.D.N.Y. 2001) ("Under 11

WEIL:\99421311\12\39031.0014

U.S.C. § 502(c), a claim may be estimated for purposes of allowance if it is unliquidated and liquidation would unduly delay the administration of the case.").

43. In addition, section 105(a) of the Bankruptcy Code affords courts wide latitude in effectuating the provisions of section 502(c), and provides that a court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Section 105(a) allows courts to "craft flexible remedies that, while not expressly authorized by the [Bankruptcy] Code, effect the result the [Bankruptcy] Code was designed to obtain." *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 235-36 (3d Cir. 2004) (citing *Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 568 (3d Cir. 2003)).

44. As described herein, the Debtors determined the Maximum Disputed Amount in good faith, conservatively, and based on an appropriate review and analysis of the Claims at issue. Indeed, in nearly every instance, the Maximum Disputed Amount reflects the claim amount asserted by the CUD Claimants under their proofs of claim.

45. Due to the magnitude and complexity of the Claims filed against the Debtors' Estates, which include a number of significant litigation Claims, the Debtors submit that establishing the Maximum Disputed Amount is necessary to make timely distributions to holders of Allowed General Unsecured Claims and other claimholders as soon as practicable. The Maximum Disputed Amount balances the need to make prompt and material distributions to creditors while not jeopardizing the potential recoveries to claimants holding CUD Claims in the event such Claims subsequently are Allowed.

46. Moreover, the Debtors submit that the establishment of the Maximum Disputed Amount will not unfairly prejudice the holders of CUD Claims. First, the potential

recoveries on account of CUD Claims are generally being deemed as issued at either the full asserted value under the proofs of claims filed by the CUD Claimants or at the maximum possible value that the Debtors have calculated based on an appropriate review and analysis of the particular Claim at issue, notwithstanding the fact that many of the CUD Claims will ultimately be Allowed in a far lower amount or Disallowed entirely.  Setting the Maximum Disputed Amount and Adjusted Maximum Disputed Amount for Calculation Purposes and distribution in such a manner will ensure that the Debtors are properly accounting for the maximum amount of Disputed Class 8 Shares and Disputed Class 11 Claim Shares that may be deemed issued on the Effective Date and that the Debtors can properly calculate the number of New Common Interests that will be distributed under the Plan and the terms of the New Warrants.

47.     Finally, the Debtors respectfully submit that establishing the Disputed Claims Reserves based on the Maximum Disputed Amount is proper because (i) resolving all of the CUD Claims will necessarily involve a lengthy and protracted process, and (ii) waiting for the resolution of the CUD Claims will unduly delay the administration of the Debtors' Estates.  This is particularly so given the fact that the CUD Claims include numerous, significant, contingent, and/or unliquidated litigation Claims that, if not estimated by the Court, would cripple the Debtors' ability to make distributions under the Plan.  *See, e.g.*, *In re Federal-Mogul Global, Inc.*, 330 B.R. 133, 154 (Bankr. D. Del. 2005) (estimating the total allowable amount of all pending and future asbestos-related claims against certain of the debtor's subsidiaries for the purposes of establishing a trust under the debtor's plan of reorganization).

48.     Thus, the relief requested herein will allow the Debtors to effectuate timely distributions under the Plan to holders of Allowed General Unsecured Claims, holders of Existing Equity Interests, and other claimholders, without undue delay.  It would be prejudicial to creditors

23

with Allowed General Unsecured Claims and holders of Existing Equity Interests to require them to wait for the resolution of all CUD Claims before receiving amounts available for distribution under the Plan.  For the reasons set forth herein, the Debtors request that the Court establish (i) the maximum amount of the CUD Claims at the Maximum Disputed Amount for each CUD Claim and (ii) to the extent the Settling GUC Claims are not resolved prior to the Effective Date, the maximum amount of Settling GUC Claims at the Adjusted Settling GUC Amount for each Settling GUC Claim.

## Emergency Consideration is Requested

49.    The Debtors seek relief on an emergency basis. The Debtors are working towards the confirmation timeline approved in the *Order (I) Scheduling Combined Hearing on (A) Adequacy of Disclosure Statement and (B) Confirmation of Plan; (II) Conditionally Approving Disclosure Statement and Form and Manner of Notice of Conditional Disclosure Statement Hearing; (III) Establishing Solicitation and Voting Procedures; (IV) Establishing Notice and Objection Procedures for Confirmation of Proposed Plan; (V) Approving Notice Procedures for Assumption or Rejection of Executory Contracts and Unexpired Leases; (VI) Approving Notice Procedures for Reinstatement of Claims; (VII) Establishing Rights Offering Procedures; and (VIII) Granting Related Relief* [Docket No. 1447] for the benefit of the Debtors and their stakeholders. The Debtors seek to seek to establish the Maximum Disputed Amounts for the Litigation Claims, Rejection Damages Claims, 510(b) Claims, and Other Disputed Claims in order to establish the Disputed Class 8 Claim Shares and Disputed Class 11 Claim Shares, as required under the Plan.  Absent the relief requested by this Motion, the Debtors would be unable to make equity distributions on the Effective Date in accordance with the Plan.  The Debtors believe that emergency consideration of this Motion is necessary and appropriate not only for the maximizing

the estate, but to ensure that the Plan can be confirmed and the Effective Date can occur in a timely manner.

## **Reservation of Rights**

50.     Nothing contained herein is intended to be or shall be deemed as (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim, (iii) a waiver of the Debtors' rights under the Bankruptcy Code or any other applicable nonbankruptcy law, (iv) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code, or (v) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law.  The Debtors expressly reserve all of their rights with respect to the foregoing matters.  Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' or any party in interest's rights to subsequently dispute and/or contest such claim.

## **Notice**

51.     Notice of this Motion will be served on any party entitled to notice pursuant to Bankruptcy Rule 2002 and any other party entitled to notice pursuant to Local Rule 9013-1(d).

## **No Previous Request**

52.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WEIL:\99421311\12\39031.0014

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as is just.

Dated: December 8, 2023
      Houston, Texas

                                   Respectfully submitted,

                                   */s/  Alfredo Pérez*
                                   WEIL, GOTSHAL & MANGES LLP
                                   Alfredo R. Pérez (15776275)
                                   Clifford W. Carlson (24090024)
                                   700 Louisiana Street, Suite 1700
                                   Houston, Texas  77002
                                   Telephone: (713) 546-5000
                                   Facsimile:  (713) 224-9511
                                   Email:  Alfredo.Perez@weil.com
                                              Clifford.Carlson@weil.com

                                   -and-

                                   WEIL, GOTSHAL & MANGES LLP
                                   Ray C. Schrock (admitted *pro hac vice*)
                                   Ronit J. Berkovich (admitted *pro hac vice*)
                                   767 Fifth Avenue
                                   New York, New York  10153
                                   Telephone:  (212) 310-8000
                                   Facsimile:  (212) 310-8007
                                   Email: Ray.Schrock@weil.com
                                              Ronit.Berkovich@weil.com

                                   *Attorneys for Debtors*
                                   *and Debtors in Possession*

WEIL:\99421311\12\39031.0014

## <u>Exhibit A</u>

**Creighton Declaration**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| CORE SCIENTIFIC, INC., *et al.,* [1] | § | Case No. 22-90341 (CML) |
| | § | |
| | § | (Jointly Administered) |

DECLARATION OF JOHN CREIGHTON IN
SUPPORT OF DEBTORS' MOTION PURSUANT TO
11 U.S.C. §§ 502(c), 1123(a)(5), AND 105(a)  TO ESTABLISH MAXIMUM DISPUTED
CLAIM AMOUNTS FOR CALCULATION AND DISTRIBUTION PURPOSES UNDER
DEBTORS' PROPOSED JOINT CHAPTER 11 PLAN OF REORGANIZATION

John Creighton makes this Declaration pursuant to U.S.C. § 1746:

1.      I am a Director at Alix Partners ("***Alix***").  By order dated January 15, 2023, Alix was retained as financial advisor for Core Scientific, Inc. and its debtor subsidiaries and affiliates (collectively, the "***Debtors***") in the above-captioned chapter 11 cases (the "***Chapter 11 Cases***").

2.      In connection with the Debtors' review of the official claims register, the Debtors have commenced a review of the proofs of claim filed by creditors and other parties in interest in these Chapter 11 Cases.  At the request of the Debtors' counsel, I, along with employees of the Debtors and the assistance of the Debtors' other professionals including professionals at Weil, Gotshal & Manges LLP ("***Weil***"), have reviewed the CUD Claims listed in the *Motion For Entry of an Order Establishing Maximum Disputed Claim Amounts For Calculation and*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions VII LLC (3198). The Debtors' corporate headquarters is 210 Barton Springs Road, Suite 300, Austin, Texas 78704.  The Debtors' service address is 2407 S. Congress Ave, Suite E-101, Austin, TX 78704.

*Distribution Purposes Under Debtors' Proposed Joint Chapter 11 Plan of Reorganization* (the "**Motion**").[2]

## The CUD Claims

3.      Pursuant to the Motion, the Debtors are requesting entry of an order establishing the maximum potential Allowed amount of CUD Claims for the purposes of calculating the Disputed Class 8 Claim Shares and Disputed Class 11 Claim Shares (each as defined in the Plan, as defined below) under the Debtors' proposed *Third Amended Joint Chapter 11 Plan of Reorganization of Core Scientific, Inc. and its Affiliated Debtors* dated November 16, 2023 [Docket No. 1438] (as may be amended, supplemented, or otherwise modified from time to time, the "***Plan***").

4.      As indicated below, and described in greater detail in the Motion, the Debtors are proposing to establish, in each case for Calculation Purposes and distribution, (i) the maximum Allowed amount of each CUD Claim, which in the aggregate totals $114.3 million (the "***Maximum Disputed Amount***"),[3] which includes approximately $5.9 million for Other Disputed Claims that are Settling GUC Claims, and (ii) only to the extent Settling GUC Claims are not resolved prior to the Effective Date, the maximum Allowed amount of Settling GUC Claims, which in the aggregate totals $36.0 million (the "***Adjusted Settling GUC Amount***"), which would result in a total adjusted Maximum Disputed Amount of $144.4 million (the "***Adjusted Maximum Disputed Amount***") to the extent none of the Settling GUC Claims are resolved prior to the Effective Date.

---

[2] Capitalized terms used but not otherwise herein defined shall have the meanings ascribed to such terms in the Motion.

[3] The Debtors are seeking to establish the Maximum Disputed Amount of the CUD Claims for Calculation Purposes and distribution on a claim by claim basis, and not on an aggregate basis.

WEIL:\99421311\12\39031.0014

5.    As described below, the Debtors believe that the Maximum Disputed Amount for each CUD Claim represents the highest, or otherwise good-faith estimate for the CUD Claims that may ultimately be Allowed in the Chapter 11 Cases, but the Debtors intend on disputing.  After consulting with their various professionals, the Debtors believe that these amounts strike a careful and reasonable balance between enabling the Debtors to make meaningful distributions to the holders of Allowed Claims while not jeopardizing the potential recoveries to Claimants holding CUD Claims in the event such Claims subsequently are Allowed.

### a.   *Litigation Claims*

6.    The CUD Claims include three (3) Litigation Claims in an aggregate asserted amount of not less than approximately $55.6 million.  A list of the Litigation Claims, along with the asserted amount in such Claimants' proofs of claims and the Debtors' proposed Maximum Disputed Amount for each such CUD Claim is annexed to the Proposed Order as **Exhibit 1**.  For purposes of this Motion, the Debtors seek to establish the Maximum Disputed Amount for each Litigation Claimant as provided in **Exhibit 1** to the Proposed Order, which totals an aggregate of $59.2 million.

7.    In consultation with the Debtors and the Debtors' other advisors, I and certain other professionals at Alix reviewed and analyzed the documentation in connection with the contracts and other related documentation in connection with the Litigation Claims, the Debtors' books and records, and any other potentially relevant factors.  Based upon this review, it was determined that, out of an abundance of caution, for purposes of the Motion, these potential Litigation Claims should be established at a maximum Allowed amount of $59.2 million for Calculation Purposes and distribution.  A list of the Litigation Claims, along with the asserted

3

amount in such Claimants' proofs of claims, the Debtors' proposed Maximum Disputed Amount for each such Litigation Claim is annexed as **Exhibit 1** to the Proposed Order.

### b. *Projected Rejection Damages Claims*

8.  The CUD Claims include actual or potential claims related to 12 executory contract counterparties that have either filed claims or for which the Debtors anticipate rejecting contracts, which may result in claims in an aggregate amount of $8.7 million.  Allowed Rejection Damages Claims are classified as Class 8 General Unsecured Claims under the Plan.

9.  In consultation with the Debtors and the Debtors' other advisors, I and certain other professionals at Alix reviewed and analyzed the documentation in connection with the contracts the Debtors anticipate rejecting, the Debtors' books and records, and any other potentially relevant factors.  Based upon this review, it was determined that, out of an abundance of caution, for purposes of the Motion, these potential Rejection Damages Claims should be established at a maximum Allowed amount of $9.2 for Calculation Purposes and distribution.  A list of the projected Rejection Damage Claims, along with the Debtors' proposed Maximum Disputed Amount for each such potential Rejection Damage Claim is annexed as **Exhibit 2** to the Proposed Order.

### c. *510(b) Claims*

10.  The CUD Claims also include approximately nineteen (19) Claims filed by certain Holders of Existing Common Interests that have filed proofs of claims, not including the Securities Class Action POC that was Disallowed (as discussed in the Motion), alleging, among other things, violations of securities laws and fraud-on-the-market.  While the Debtors intend to object to these claims to the fullest extent possible, if unsuccessful, the Debtors intend to classify such claims as subordinated claims pursuant to section 510(b) of the Bankruptcy Code, and thus

4

would be classified as Class 11 Section 510(b) Claims under the Plan.  These Holders of Existing Common Interests, excluding the Securities Class Action Claim, have asserted an aggregate claim of $1.3 million.

11. In consultation with the Debtors and the Debtors' other advisors, I and certain other professionals at Alix reviewed and analyzed the documentation in connection with the 510(b) Claims, the Debtors' books and records, and any other potentially relevant factors. Based upon this review, it was determined that for purposes of the Motion, these 510(b) Claims should be established at a maximum Allowed amount of $3.5 million for Calculation Purposes and distribution.  While this amount is considerably lower than the amounts asserted by the 510(b) Claimants, the Debtors believe that the establishment of a maximum Allowed amount of $3.5 million for Calculation Purposes and distribution represents a reasonable estimate of the maximum amount of 510(b) Claims that will ultimately be allowed.  A list of 510(b) Claims, along with the asserted amount in such Claimants' proofs of claims and the Debtors' proposed Maximum Disputed Amount for each such 510(b) Claim is annexed as **Exhibit 3** to the Proposed Order.

### d. *Other Disputed Claims*

12. The remaining CUD Claims consist of 43 Other Disputed Claims in an aggregate asserted amount of not less than approximately $73.2 million.  The Other Disputed Claims consist of Claims filed in connection with various contractual damages claims and non-priority tax claims and include Settling GUC Claims.  The Debtors seek to establish the Maximum Disputed Amount for each Other Disputed Claimant as provided on **Exhibit 4** to the Proposed Order, which totals an aggregate of $42.5 million.  To the extent a Settling GUC Claim that is an Other Disputed Claim is not resolved prior to the Effective Date, such Settling GUC Claim should

be Allowed in the amount of the Adjusted Settling GUC Amount for such Settling GUC Claim that is not resolved.

13.     In consultation with the Debtors and the Debtors' other advisors, I and certain other professionals at Alix reviewed and analyzed the documentation in connection with the Other Disputed Claims, the Debtors' books and records, and any other potentially relevant factors.  Based upon this review, it was determined that, out of an abundance of caution, for purposes of the Motion, these Other Disputed Claims should be established at a maximum Allowed amount of $42.5 million for Calculation Purposes and distribution, as may be adjusted to up to $72.6 million to the extent that the Settling GUC Claims are not resolved prior to the Effective Date.  A list of the Other Disputed Claims, along with the asserted amount in such Claimants' proofs of claims, the Debtors' proposed Maximum Disputed Amount for each such Other Disputed Claim, and the Adjusted Settling GUC Amount for Other Disputed Claims that are Settling GUC Claims is annexed to the Proposed Order as **Exhibit 4**.

### The CUD Claims

14.     The Debtors are seeking to establish maximum individual caps on the individual CUD Claims, and to the extent necessary, the individual Settling GUC Claims, as provided herein.  The Debtors believe that the Maximum Disputed Amount for each CUD Claim represents the highest, or otherwise good-faith estimate for the CUD Claims that may ultimately be Allowed in the Chapter 11 Cases.

15.     The Maximum Disputed Amount is not indicative of the Debtors' estimate of the ultimate Allowed amount of CUD Claims.  Rather, the Maximum Disputed Amount represents the Debtors' estimate of the maximum liability that has been or could reasonably be asserted by the Claimants on account of the CUD Claims, driven primarily by the asserted claim

6

amounts in the CUD Claimants proofs of claim, for Calculation Purposes and distribution, other than Settling GUC Claims, which represent the Debtors' good-faith estimate of the anticipated Allowed amount of such Settling GUC Claims upon the conclusion of successful negotiations with each such Settling GUC Claimant.  The Debtors are not proposing to Allow the CUD Claims at the Maximum Disputed Amount, and the Debtors anticipate that substantive objections will be filed against a substantial number of these Claims that will result in the Disallowance of many such Claims.  The Debtors reserve all rights to object to any or all CUD Claims, either in whole or in part, or to seek to estimate any and all CUD Claims at lesser amounts.

16.    I believe that the relief requested herein will allow the Debtors to effectuate timely distributions under the Plan to holders of Allowed General Unsecured Claims and holders of Existing Equity Interests, without undue delay.  Moreover, I believe that it would be prejudicial to creditors with Allowed General Unsecured Claims or holders of Existing Equity Interests to require them to wait for the resolution of all CUD Claims before receiving amounts available for distribution under the Plan.  For the reasons set forth herein, I believe that the Court should establish the Maximum Disputed Amount and, as applicable, the Adjusted Settling GUC Amount, for each CUD Claim as provided in the Motion.

WEIL:\99421311\12\39031.0014

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing

is true and correct to the best of my knowledge and belief.

Dated:  December 8, 2023
        Dallas, Texas


                                By:  /s/ John Creighton
                                     John Creighton