## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **CORE SCIENTIFIC, INC.,** *et al.*, | § | **Case No. 22-90341 (CML)** |
| | § | |
| **Debtors.**[1] | § | **(Jointly Administered)** |

### SPHERE 3D CORP.'S <u>EMERGENCY</u> MOTION
### <u>TO EXCLUDE DAMAGES/OFFSET THEORIES</u>

> **Emergency relief has been requested. Relief is requested not later than 5:00 p.m. (prevailing Central Time) on December 18, 2023.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

Pursuant to Rule 37 of the Federal Rules of Civil Procedure ("<u>Rule 37</u>"), as incorporated by Rule 7037 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), Sphere 3D Corp. ("<u>Sphere</u>") files this motion to exclude Core from relying on improperly withheld damages/offset theories and in support thereof respectfully states as follows:

### <u>PRELIMINARY STATEMENT</u>

1.     This is a motion to exclude Core's belatedly disclosed damages/offset theories (1) under Rule 37(b) for violating this Court's explicit order dated September 13, 2023 (the "<u>September 13 Order</u>") to "state the basis and amount of each offset [Core] was going to assert"

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are as follows: Core Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (N/A); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions, VII, LLC (3198) (each a "<u>Debtor</u>" and collectively, the "<u>Debtors</u>" or "<u>Core</u>"). The Debtors' corporate headquarters and service address is 210 Barton Springs Road, Suite 300, Austin, Texas 78704.

by September 20, 2023, *see* Sep. 13, 2023 Hr. Tr., Ex. 1, at 10:19-22; and (2) independently, under Rule 37(c), for disclosing the theories after the close of document, interrogatory, and request for admission ("RFA") discovery on October 23, 2023.[2]

2.      On September 20, 2023, and prior to the close of discovery, Core through "Supplemental Interrogatory Responses" (*see* Ex. 2, at 3) disclosed offset theories predicated on (1) $475 million in lost revenues and (2) $91.3 million in consequential damages in the form of construction costs in contemplation of hosting miners for Sphere.  On November 3, 2023, eleven days after the close of discovery, Core disclosed through "Amended Interrogatory Responses" (*see* Ex. 3 at 5) that it would be relying upon brand new theories of offsets, namely, (1) $43.2 million in lost profits; and (2) $62.7 million in consequential damages in the form of construction costs predicated on a previously undisclosed theory of harm.

3.      Because the offset theories disclosed in the Amended Supplemental Interrogatory Responses were disclosed after the close of non-deposition discovery[3] and in violation of the Court's September 13 Order such theories must be excluded.  Sphere would plainly be prejudiced by Core's reliance on these untimely disclosed theories because it has not had an opportunity to test the theories through document discovery, interrogatories, or RFAs.  Core has conceded as much in filings before this Court: in apparent recognition that its offset theories are improper in this context, Core has asserted its $43.2 million claim for lost profits and $62.7 million claim for consequential damages in its "Adversary Proceeding Complaint."  *See* Dkt. 1456 at ¶ 68.  In support of its motion to consolidate this contested matter and that adversary proceeding, Core

---

[2] Sphere stated that it would file this motion in its Opposition to Core's Motion for Consolidation and to Vacate the Scheduling Order.  *See* Dkt. 1476 at ¶ 57.

[3] *See* Dkt. 1188 ("Scheduling Order").

expressly acknowledged that "the parties would need to engage in some additional discovery on . . . Core's [] damages."  Dkt. 1484 at 6.

4.      Although Core violated this Court's orders in this contested matter, it will suffer no prejudice from exclusion because it can still pursue lost profits and consequential damages as part of the adversary proceeding.   Indeed, a sensible resolution would be to simply defer any consideration of offset issues to final adjudication of the adversary proceeding, which will substantially narrow and focus trial in this contested matter.  As Sphere explained in its Opposition to Core's Motion for Consolidation and to Vacate the Scheduling Order, the outcome of the contested matter may obviate the need for the adversary proceeding, including because (1) if Core prevails, it may decide it is not worthwhile to spend millions of dollars pursuing claims against Sphere given the state of Sphere's balance sheet or (2) if Core loses, the parties may be able to reach a settlement.  *See* Dkt. 1476 at ¶ 23.

5.      In the alternative, Core should be ordered to produce relevant documents and answer additional interrogatories and RFAs on its new damages theories on an expedited basis. As described below, Sphere offered this compromise, which Core in no uncertain terms refused.

## JURISDICTION & VENUE

6.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7.      This Motion seeks relief pursuant to 11 U.S.C. § 105(a); and Federal Rules of Civil Procedure 26, 33, 34, 36, and 37 (as made applicable by Bankruptcy Rules 7026, 7033, 7034, 7036, and 7037).

## **BACKGROUND**

8.      The background of this contested matter was set forth in detail in Sphere's Opposition to Core's Motion To Consolidate And Vacate The Trial Schedule, which Sphere hereby incorporates by reference.

9.      Through its Proofs of Claim, Sphere seeks, among other things, allowance of a claim for approximately $34 million attributable to funds paid as a deposit to Core for hosting services that Core, ultimately, never rendered.

10.      As the Court is aware, after denying Core's motion for summary judgment at the August 7, 2023 hearing, it so-ordered an expedited trial schedule, with the deadline for completion of document, interrogatory, and RFA discovery set for October 23, 2023.

11.      On August 18, 2023, Sphere served its first set of interrogatories in which it posed a series of questions seeking to identify any offset Core would assert in this Contested Matter. Those interrogatories asked Core to:

- Identify and describe any expenditures and preparations made in contemplation of hosting any miners under Order #2.  (Interrogatory No. 4.)

- Identify and describe any harm, damage, or loss any Debtor claims it suffered due to the alleged nonperformance of Gryphon or Sphere under the MSA and Order #2.  (Interrogatory No. 9.)

- Identify and describe any efforts to mitigate harm, damage, or loss any Debtor claims it suffered due to the alleged nonperformance of Gryphon or Sphere under the MSA and Order #2 and how much those mitigation efforts reduced the alleged harm, damage, or loss any Debtor claims it suffered.  (Interrogatory No. 10.)

*See* Sphere's First Set of Interrogatories, Ex. 4, at 4.

12.     Rather than give substantive answers, Core offered cursory responses that failed to provide any detail regarding the harm it had allegedly suffered or its efforts to mitigate it:

- In response to Interrogatory No. 4, after objecting on the ground that the information sought was irrelevant, stated: "as a general matter, the expenditures and preparations made in contemplation of hosting miners under Order #2 include the costs and expenses incurred in constructing facilities to house the expected units."

- In response to Interrogatory No. 9, Core stated: "the harm and damages suffered by the Debtors includes loss of revenue associated with Gryphon's failure to deliver the 70,000 Miners reflected in Order #2 and funds spent to build facilities in anticipation of the delivery of such Miners."

- In response to Interrogatory No. 10, Core stated: "because Gryphon was not delivering Miners to Core in accordance with the MSA and Order #2, and made clear to Core no later than February 2022 that it could not meet its obligations, Core ceased construction on facilities in order to reduce its expenditures and limit the losses caused by Gryphon's breach of the MSA and Order #2."

*See* Debtors' Responses and Objections to Sphere's First Set of Interrogatories, Ex. 5, at 13–14, 16–17.

13.     On September 13, 2023, after Core refused to supplement its responses, Sphere filed a motion to compel supplemental responses on the basis that those conclusory responses were wholly inadequate and failed to provide the detail necessary for Sphere to test the bases of Core's claim that it suffered cognizable harm that could offset Sphere's substantial claims against Core. At the September 13, 2023 hearing on the motion to compel, Sphere contended that it "deserve[d] to know" what offset(s) Core would be claiming so that it could conduct discovery appropriately. *See* Sep. 13, 2023 Hr. Tr., Ex. 1, 9:23–24.

14.     The Court agreed and rejected Core's argument that producing and identifying documents was sufficient to disclose its offset theories.   The Court instead ordered Core to supplement its interrogatory responses to "state the basis and amount of each offset [Core] was

going to assert" and to do so by September 20, 2023.  *See* Sep. 13, 2023 Hr. Tr., Ex. 1, 10:19-22, 26:14-16.

15.     On September 20, 2023, Core served its supplemental responses and asserted that it suffered two forms of harm:

- "Approximately $475 million in *lost revenue*"; and

- $91.3 million in construction costs associated with the construction of facilities allegedly intended to host Sphere miners.

*See* Debtors' Supplemental Responses and Objections to Sphere's First Set of Interrogatories, Ex. 2, at 2–4.[4]

16.     These theories were makeweight because, among other reasons, (1) lost revenues (as opposed to lost profits) are generally not cognizable as an injury, *see Motion Med. Techs., L.L.C. v. Thermotek, Inc.*, 875 F.3d 765, 779 (5th Cir. 2017); (2) the facilities in question were built for other purposes beyond hosting Sphere's miners; and (3) the MSA's limitation of liability generally excluded damages for lost revenues and consequential damages, *see* MSA § 5.d.  But this was Core's theory and Sphere proceeded in discovery accordingly.

17.     On November 3, 2023—nearly two weeks after the October 23, 2023 close of document discovery and over a month after the deadline imposed by this Court—Core served "amended" interrogatory responses in which it set forth brand new theories of damages, namely:

- $43.2 million in lost profits; and

- $62.7 million in construction harm, which it purportedly arrived at by multiplying $401.8 million to construct four facilities by 15.6%, which it claims is the amount of capacity at those facilities that would purportedly have been devoted to Sphere's machines.

---

[4] Unless otherwise noted, all emphases are added.

*See* Debtors' Amended Responses and Objections to Sphere's First Set of Interrogatories, Ex. 3, at 5.

18.     After reviewing Core's production, it became apparent that Core had not produced discovery commensurate with the new theories and had thus denied Sphere the opportunity to seek that discovery.

19.      In correspondence with Core dated November 15, 2023, and in an effort to avoid burdening the Court with this motion, Sphere requested that Core rely only on damages theories that it had properly disclosed on September 20, 2023.  *See* Ex. 6.  Core responded that it had "refined" its theories, but did not deny that it had violated the Court's order or that it had produced inadequate discovery on its theories; it nevertheless refused to disclaim reliance on its improperly concealed damages theory.  *See* Ex. 7.  And the notion that this was a mere clarification is simply wrong:  in its Responses and Objections to Sphere's 30(b)(6) Topics (**served November 17, 2023**), for example, Core explicitly disclaimed that it was pursuing lost revenues as a damages theory. *See* Ex. 8 at 14. (claiming that "Debtors have not asserted a claim for 'lost revenue'").  These are instead brand-new theories that sandbag Sphere.

20.     Subsequently, on November 21, 2023, Core filed its Motion for Consolidation and to Vacate the Scheduling Order and made clear it would no longer participate in the case on the assumption that the Court would grant its consolidation order.  On December 1, 2023, the Court denied that motion.  The parties nevertheless agreed to move the trial from January 30, 2024 to February 15, 2024.

21.     On December 7, 2023, in an effort to avoid this motion, Sphere stated it was "willing to explore a compromise under which Debtors produce discovery on the belatedly disclosed theories on an expedited basis."  *See* Ex. 9 at 1.  Under Sphere's proposal, it would serve

discovery addressed to the belatedly disclosed damages theories, namely, new RFPs, no more than ten interrogatories, and no more than ten RFAs. *Id.*  Sphere proposed rapid production that would see damages discovery in less than a month, with a 30(b)(6) witness on the damages theory to be made available after. *Id.*  The proposal would have put Sphere at a distinct disadvantage, both because of Core's late disclosure and because it would not be able to use the discovery with fact deponents deposed prior to the production of the discovery.  Nevertheless, Sphere was willing to proceed on that basis.  Sphere also stated that it was "open to hearing any other compromises [Core] may have in mind." *Id.*

22.     Sphere requested a response by December 8, 2023.  Hearing none, Sphere followed up on December 11, 2023.  Core replied in no uncertain terms that it was not open to any compromise, necessitating this motion. *See* Ex. 10 at 1.

## ARGUMENT

23.     Exclusion of Core's belatedly disclosed damages theories is warranted under Rule 37(b) and, independently, under Rule 37(c).  The test for exclusion is similar under both provisions.

24.     Rule 37(b) provides that the Court may prohibit a party from "supporting or opposing designated claims or defenses, or from introducing designated matters in evidence," if the party "fails to obey an order to provide . . . discovery." Fed. R. Civ. P. 37(b)(2)(A).  That Rule authorizes the exclusion of damages theories not disclosed in compliance with a court order. *See, e.g.*, *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 222 (3d Cir. 2003) (affirming the exclusion of evidence on a damages theory not disclosed by a court-ordered deadline because the belated disclosure "imped[ed] the [opposing party's] ability to prepare a full and complete" response and conduct discovery).  To determine whether that remedy is appropriate, courts consider: "(1) the reasons why disclosure was not made; (2) the amount of prejudice to the opposing party; (3) the

8

feasibility of curing such prejudice with a continuance of the trial; and (4) any other relevant circumstances." *United States v. Dvorin*, 817 F.3d 438, 453 (5th Cir. 2016).

25.    Under Rule 37(c), the Court may exclude belatedly disclosed evidence and theories unless the failure to disclose was "substantially justified or . . . harmless." Fed. R. Civ. P. 37(c)(1)(C). Exclusion is "automatic and mandatory under Rule 37(c)(1) unless non-disclosure was justified or harmless." *Entropic Commc'ns, LLC v. Charter Commc'ns, Inc.,* 2023 WL 8260854, at *1 (E.D. Tex. Nov. 28, 2023). Courts applying Rule 37(c) exclude evidence on damages theories not disclosed in interrogatory responses within the relevant discovery period. *See, e.g.*, *CQ, Inc. v. TXU Min. Co., L.P.*, 565 F.3d 268, 279 (5th Cir. 2009) (excluding evidence on "damages calculations" that were not timely disclosed); *Bowman v. R.L. Young, Inc.*, 2022 WL 3998641, at *3 (E.D. La. Sept. 1, 2022) (excluding new damages models because the plaintiff had an obligation to supplement his damages disclosures before the close of discovery absent good cause for a delay). In assessing whether a failure to disclose was substantially justified or harmless, courts consider: "(1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose." *Davidson v. AT&T Mobility, LLC*, 2018 WL 1609756, at *1 (N.D. Tex. Apr. 3, 2018). The party that has failed to timely disclose its damages theory bears the burden of proving that its failure was harmless or substantially justified. *See Mission Toxicology, LLC v. UnitedHealthcare Ins. Co.*, 499 F. Supp. 3d 338, 344 (W.D. Tex. 2020).

26.    Each of the factors relevant to the Rule 37(b) and Rule 37(c) analyses weighs decisively in Sphere's favor.

A.   **Core Has No Good Reason For Failing To Comply With The September 13 Order Or The Scheduling Order**

27.   *First,* Core has no excuse for violating this Court's September 13 Order or the Scheduling Order.  The September 13 Order was unambiguous: if Core "was going to assert" an offset, it had to disclose the amount and basis of that offset by September 20.  So too with the Scheduling Order, which made clear that non-deposition discovery was to conclude on October 23.  The evidence Core needed to develop its offset theories is and has always been in Core's possession, and it has, by its own admission, long contemplated the assertion of affirmative claims presenting those theories.  *See* Emergency Motion to Vacate Scheduling Order (Dkt. 1464) at ¶ 22 (explaining that Core chose to wait and see whether the contested matter could be settled before filing its affirmative claims); *see also* Adversary Compl. (Dkt. 1456) at ¶ 76 (asserting the lost profit and construction harm theories disclosed on November 3).  That it nevertheless failed to comply with this Court's timetable suggests, at a minimum, indifference to this Court's orders.  Core's unjustified disobedience of this Court's orders warrants exclusion of its belatedly disclosed damages theory.  *See Am. Realty Tr., Inc. v. Matisse Partners, L.L.C*., 2002 WL 1489543, at *5 (N.D. Tex. July 10, 2002) (excluding damages theory disclosed "nearly two weeks after the discovery deadline" and less than two months before trial because party possessed the information underlying those theories for months).

B.   **Sphere Will Suffer Substantial Prejudice Absent Exclusion Because It Did Not Have The Opportunity To Test Core's Damages Theories**

28.   *Second*, Core's tardy disclosure has prejudiced Sphere by denying it the opportunity to conduct discovery on Core's damages theories.  *See Resol. Tr. Corp. v. Bright*, 157 F.R.D. 397, 399–400 (N.D. Tex. 1994) (holding that a party is "entitled to" conduct discovery needed to "challenge the amount of [its opponent's] alleged damages"); *Agence France Presse v. Morel*, 293

F.R.D. 682, 686 (S.D.N.Y. 2013) ("[C]ourts have readily imposed sanctions where a party's failure to disclose its damages theory in a timely manner prevented its adversary from pursuing discovery targeted at that theory."); *NexStep, Inc. v. Comcast Cable Commc'ns, LLC*, 2021 WL 5356293, at *3 (D. Del. Nov. 17, 2021) (excluding a new damages theory because the opposing party "could not have obtained targeted discovery around the factual basis of the theory").  There can be no reasonable dispute here: Core has acknowledged that additional discovery is necessary to test its damages theory.  *See* Dkt. 1464 at ¶¶ 18, 28.

29.     Core's lost profit discovery boils down to a self-serving excel spreadsheet created for the purposes of this litigation.  *See* Ex. 11, CORE-SPH0018445.  The spreadsheet is not entirely intelligible—although Core will likely argue that its 30(b)(6) witness will be prepared to explain its contents, the point of discovery is that Sphere should be able to explore the theory by seeking objective evidence through document discovery, interrogatories, and RFAs before it elicits testimony from an interested witness.  From what Sphere can discern, the spreadsheet purports to show how much Core would have earned in profits had Sphere delivered it 70,000 miners and had Core had the capacity to host those 70,000 miners over the multi-year life of Order #2.

30.     Had Sphere known that Core would be pursuing a lost profits theory, it would have served discovery to test and explore all of the inputs that went into that calculation (*e.g.*, its costs), which it did not and which Core did not produce.  *See Thermotek, Inc.*, 875 F.3d at 779 ("A legally adequate calculation of lost profits therefore accounts for all expenses in carrying out the business.").  Lost profits are complicated; the discovery Sphere would have explored would have included exploration into power costs for hosting miners, operations costs, security costs, personnel costs, opportunity costs (e.g., whether hosting miners for itself or for other miners was more profitable), and so on.  Rather than produce discovery on these subjects, Core cut off

11

discovery into whether Core was passing on its costs to Sphere based on Core's argument that it was irrelevant to Sphere's claims, an argument the Court accepted because there was no lost profits offset in the case. *See* Sep. 13, 2023 Hr. Tr., Ex. 1, 15:15–20 (Core's counsel contending that Core's power costs—and the extent to which they were passed on to Sphere—were "irrelevant" and not at issue in the case); *id.* 16:21-23 (the Court sustaining Core's objection in response to that argument). But that issue is *plainly relevant to a lost profits theory.*

31.     Moreover, Sphere agreed to substantially limit discovery as to events occurring or documents created on or after September 6, 2022. Had Sphere known Core was pursuing a lost profits theory seeking in excess of $40 million, it would have never agreed to the limitation, as whether Core currently or will in the future have the capacity to host Sphere's miner load, what Core's power costs are now and will be in the future, and so on are plainly relevant to the lost profits inquiry.

32.     Likewise, Sphere was denied the opportunity to test Core's blunt theory that Core suffered $62.7 million in construction harm, which it purportedly arrived at by multiplying $401.8 million to construct four facilities by 15.6%, which it claims is the amount of capacity at those facilities that would purportedly have been devoted to Sphere's machines. Had Core timely disclosed its damages theories as ordered by the Court, Sphere would have insisted on inquiry into numerous subjects, including whether the racks purportedly prepared for Sphere could be used with other customers and whether simply multiplying total construction costs by 15.6% was a reasonable measure of damages.

33.     At bottom, Sphere was "entitled to rely on the theor[ies] and categories of damages disclosed" in purported compliance with this Court's September 13 Order and to make "strategic decisions" about discovery in light of them. *See King v. Wang*, 2021 WL 5299917, at *3 (S.D.N.Y.

Nov. 15, 2021).  Sphere could not have discerned Core's intent to advance materially different

damages theories after document discovery closed.  *See Matisse Partners*, 2002 WL 1489543, at

*5 ("For the plaintiffs to argue that the defendants should have put two and two together and

guessed that the plaintiffs would make such a claim and guessed at what the damages calculation

would be is absurd.").  It is palpably unfair to force Sphere to contend with these belatedly

disclosed theories at trial after being sandbagged on these topics.

### C.      Core Will Suffer No Prejudice If Its Lost Profits And New-Fangled Construction Harm Theories Are Excluded

34.      *Third,* Core will suffer no prejudice if the Court grants the requested relief for at

least two reasons.  First, Core may proceed on the offset theories it properly disclosed on

September 20, namely, lost revenues and its original construction damages theory.  *See CQ*, 565

F.3d 268 at 280 (excluding evidence which, while "clearly important" to the nonmoving party,

was "not essential to [the party's] underlying recovery" because the party still "could proceed to

trial" on other properly disclosed grounds).  Second, in all events, Core can still litigate its lost

profits and consequential damages in the adversary proceeding.

### D.      A Continuance Is Not An Appropriate Remedy

35.      *Finally*, a continuance is not an appropriate remedy.  Initially, it does not appear

that Core is seeking a continuance:  Sphere invited Core to offer a compromise that would avoid

this motion and Core refused to negotiate.

36.      Even if Core were seeking a continuance, however, a continuance would just not

be appropriate because "a continuance so close to the trial date" of February 15, 2023, "is itself

prejudicial."  *Hamburger v. State Farm Mut. Auto. Ins. Co.*, 2002 WL 34418183, at *1 (S.D. Tex.

Aug. 23, 2002); *see also CQ,* 565 F.3d at 280 (holding that a belated disclosure was not harmless

in light of the "the advanced stage of the litigation" and excluding the evidence to preserve the existing case schedule).

37.     Core already secured a functional continuance of this contested matter by refusing to participate in the contested matter for two weeks on the assumption that the Court would grant its motion for consolidation, leading Sphere to agree to move the trial date from January 30, 2024 to February 15, 2024.  It would be perverse if it could use its "dilatory conduct" to secure yet another "continuance."  *Cf. Patrick v. Texas Roadhouse, Inc.*, 2019 WL 1509212, at *2 (W.D. La. Jan. 22, 2019) (denying a motion to amend a complaint because a continuance required by dilatory conduct would be "unjustified and prejudicial to" the opposing party).  A sensible resolution short of exclusion would stay consideration of any offset issues until after the completion of the contested matter and allow those issues to be litigated in the context of the adversary proceeding, which would substantially streamline trial and work no prejudice to Core.

38.     To the extent that the Court is not inclined to exclude the offset theories or defer their consideration, then the appropriate remedy is to order Core to produce discovery addressed to its belatedly disclosed offset theories on an expedited basis.  Discovery should proceed substantially on the terms Sphere proposed, namely, that Sphere be able to serve new RFPs, no more than ten interrogatories, and no more than ten RFAs addressed to the damages issues.  The deadline for completion of the disclosures would be in approximately one month and Core would make available a 30(b)(6) witness to testify on the discovery.

## EMERGENCY RELIEF REQUESTED

39.     Sphere seeks relief on an emergency basis for two reasons: (i) the Court, in recognizing the compressed schedule, instructed the parties to bring discovery disputes to its attention expeditiously, *see* Aug. 7, 2023 Motion for Summ. J. Hr. Tr., Ex. 12, 88: 8–10,

("[D]iscovery, again, because we've got such a short time frame, do not engage in a letter-writing campaign. Come see me immediately."); and (ii) given that depositions will begin shortly (and trial is rapidly approaching) Sphere *must* have clarity on whether it will be forced to contend with Core's untimely-disclosed theories at trial.

## <u>CONCLUSION</u>

40.     For the reasons set forth above, Sphere respectfully requests that the Court (i) grant the Motion by prohibiting Core from relying on any damage theories not disclosed by September 20, 2023 or, in the alternative, compelling Core to produce relevant documents and answer additional interrogatories and RFAs on its new damages theories by no later than January 12, 2024, and provide a 30(b)(6) deposition to address their theories; and (ii) grant Sphere such other and further relief as is appropriate under the circumstances.

*[Remainder of page left blank intentionally]*

Dated: December 12, 2023                                   Respectfully submitted,

*/s/ Timothy A. ("Tad") Davidson II*
  Timothy A. ("Tad") Davidson II                           Tibor L. Nagy, Jr.
  TX Bar No. 24012503                                      TX Bar No. 24041562
  Ashley L. Harper                                         Gregory N. Wolfe (admitted *pro hac vice*)
  TX Bar No. 24065272                                      **DONTZIN NAGY & FLEISSIG LLP**
  **HUNTON ANDREWS KURTH LLP**                             980 Madison Avenue
  600 Travis Street, Suite 4200                            New York, New York 10075
  Houston, Texas 77002                                     Telephone: (212) 717-2900
  Telephone:  (713) 220-4200                               Email:      tibor@dnfllp.com
  Facsimile:  (713) 220-4285                                           greg@dnfllp.com
  E-mail:     taddavidson@HuntonAK.com
              ashleyharper@HuntonAK.com

  - and -

  Seth H. Lieberman (admitted *pro hac vice*)
  Matthew W. Silverman (admitted *pro hac vice*)
  **PRYOR CASHMAN LLP**
  7 Times Square
  New York, New York 10036
  Telephone:  (212) 421-4100
  Facsimile:  (212) 326-0806
  E-mail:     slieberman@pryorcashman.com
              msilverman@pryorcashman.com

  - and -

*Co-Counsel for Sphere 3D Corp.*


## CERTIFICATE OF SERVICE

I certify that on December 12, 2023, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas on those parties registered to receive electronic notices.

                                        */s/ Timothy A. ("Tad") Davidson II*
                                        Timothy A. ("Tad") Davidson II

16