## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |
|---|---|
| In re: | Chapter 11 |
| CORE SCIENTIFIC, INC., *et al.*, | Case No. 22-90341 (CML) |
| Debtors. [1] | (Jointly Administered) |
|  | Objection Deadline: December 15, 2023 at 5:00 p.m. (prevailing Central Time) |
|  | Related Docket Nos. 1438, 1440 |

## LIMITED OBJECTION OF INTERNATIONAL FIDELITY INSURANCE COMPANY, HARCO NATIONAL INSURANCE COMPANY, AND ALLEGHENY CASUALTY COMPANY TO DEBTORS' THIRD AMENDED JOINT CHAPTER 11 PLAN

Harco National Insurance Company, Allegheny Casualty Company, and International Fidelity Insurance Company, all affiliates of IAT Insurance Group, Inc. (collectively, "***Harco***"), by and through their undersigned counsel, respectfully submits this limited objection (the "***Limited Objection***") to the Debtors' Third Amended Joint Chapter 11 Plan (Docket No. 1438) (the ***"Plan"***). In support of this Limited Objection, Harco respectfully states as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions VII, LLC (3198). The Debtors' corporate headquarters is 210 Barton Springs Road, Suite 300, Austin, Texas 78704. The Debtors' service address is 2407 S. Congress Ave, Suite E-101, Austin, Texas 78704.

## PRELIMINARY STATEMENT

1.      As set forth in greater detail below, prior to its having filed this bankruptcy case, Core Scientific, Inc. ("Core Scientific"), one of the debtors herein, executed several indemnity agreements in favor of Harco in connection with certain surety bonds issued or to be issued by Harco.  In addition, Harco issued a surety bond (a continuous customs bond – the "Customs Bond") for Core Scientific post-petition in accordance with an order of this Court authorizing the Debtors to continue their surety bond program.  Harco is holding $300,000 in cash collateral provided by Core Scientific (post-petition) in connection with Harco's continuing exposure under the bonds. Harco holds a first priority, duly perfected lien on and security interest in the cash collateral.

2.      The Plan is unclear as to how Harco is proposed to be treated with respect to the Customs Bond.  In this regard, Harco's claim as related to the Customs Bond is denoted as a "Class 4 Other Secured Claim" and, consistent therewith, Harco received an individualized Class 4 Ballot. However, as discussed below, certain provisions of the Plan are inconsistent with Harco's classification as a Class 4 Other Secured Claim holder.

3.      Accordingly, and for the reasons set forth below, Harco objects to confirmation of the Plan as proposed, and includes in this Limited Objection certain language that Harco respectfully submits should be included in an order confirming the Plan to address Harco's concerns.

## BACKGROUND

4.      The Debtors in these cases filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 101 et seq. (the "***Bankruptcy Code***"), on December 21, 2022 (the "***Petition Date***"). The Debtors continue to manage and operate their businesses and

property as debtors-in-possession in accordance with sections 1107 and 1108 of the Bankruptcy Code.

5.    On or about August 30, 2021, and again on January 11, 2022, debtor Core Scientific, Inc. ("Core Scientific") executed Agreements of Indemnity (the "**Indemnity Agreements**") in favor of Harco and in connection with certain surety bonds issued or to be issued by Harco.  Copies of the Indemnity Agreements are collectively attached hereto as <u>Exhibit A</u>.  The Indemnity Agreements provide, in relevant part, as follows:

> The Principal … shall exonerate, indemnify, and keep indemnified the Surety from and against any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to, interest, court costs and the cost of services rendered by counsel, investigators, accountants, engineers or other consultants, whether consisting of in-house personnel or third party providers) and from and against any and all such losses and/or expenses which the Surety may sustain and incur: (1) By reason of having executed or procured the execution of the Bonds, (2) By reason of the failure of the Principal … to perform or comply  with the covenants and conditions of this Agreement or (3) In enforcing any of the covenants and conditions of this  Agreement.  The Principal …  agree[s] to promptly reimburse the Surety for all sums paid on account of  any such loss…

6.    Harco thereafter executed certain surety bonds (the "Pre-Petition Bonds") guaranteeing the obligations of Core Scientific, as principal, to the Texas-New Mexico Power Company, as obligee.  Harco also executed a certain continuous Customs bond in the amount of $2,500,000. The Pre-Petition bonds terminated prior to the Petition Date, by their own terms.

7.    On December 22, 2022, this Court entered a Final Order authorizing Debtors to continue their surety bond program and granting related relief (the "**Surety Bond Program Order**") (Docket No. 118).

8.    On or about January 27, 2023, at the request of Core Scientific and pursuant to the Surety Bond Program Order, Harco issued customs bond no. 0823709, in the penal sum of

$300,000.00, on behalf of Core Scientific, as principal, and in favor of the U.S. Customs and Border Protection, as obligee (the "***Customs Bond***"). A copy of the Bond Execution Summary related to the Customs Bond is attached hereto as Exhibit B.

9.      In addition, pursuant to the Surety Bond Program Order, Core Scientific and Harco entered into a Cash Collateral Escrow Agreement dated January 27, 2023 (the "***Cash Collateral Agreement***"). A copy of the Cash Collateral Agreement is attached hereto as Exhibit C.

10.      On or about January 27, 2023, Core Scientific wired to Harco the sum of $300,000 in cash collateral ("***Surety Collateral***"). Pursuant to the Cash Collateral Agreement, the Surety Collateral secures Harco against, among other things, liability, loss, costs, damages, and expenses incurred by Harco as a result of executing surety bonds (including the Customs Bond and the Pre-Petition Bonds) on behalf of Core Scientific.

11.      Core Scientific granted to Harco a continuing security interest in the Surety Collateral. See Exhibit C at Paragraph "EIGHTH".[2]  Harco continues to maintain the Surety Collateral in an account and holds a first priority, duly-perfected lien on and security interest in the Surety Collateral.

### **LIMITED OBJECTION**

12.      Harco objects and does not consent to the Plan to the extent that certain Plan provisions threaten to prejudice Harco's rights under the Indemnity Agreements and the Cash Collateral Agreement, as well as Harco's priority security interest in the Surety Collateral.

13.      For instance,  Article 5.16 ("Cancellation of Existing Securities and Agreements") provides for the cancellation of, *inter alia*, all "agreements, instruments, notes, certificates, security

---

[2]      The Cash Collateral Agreement also reflects that Core Scientific's entry into the Cash Collateral Agreement and the wiring of the Surety Collateral to Harco "is a transaction in the ordinary course of business and authorized under the Surety Bond Program Order." Exhibit C at Paragraph "NINTH."

documents, and any other instruments or documents evidencing any Claim or Interest . . . and any rights of any Holder in respect thereof . . ."

14.    Further, Article 5.17 ("Cancellation of Liens") provides for the cancellation and discharge of, *inter alia,* all "notes, instruments, certificates evidencing debt of the Debtors . . ."

15.    It would be improper for confirmation of the Plan to result in the cancellation of the Cash Collateral Agreement and/or Harco's lien upon the Surety Collateral.

16.    Harco's claim (Claim No. 413) is classified as a Class 4 claim ("Other Secured Claims").  Harco received a Class 4 Opt-Out Form, which it has completed and submitted.

17.    Yet, despite such classification of Harco's claim, the Plan does not include Harco's claim in its definition of "Other Secured Claims" (Article 1.226).[3]  The Cash Collateral Agreement is not included in the definition of "Other Secured Claim Agreements" (Article 1.227).  This is inconsistent with the inclusion of Harco's claim in Class 4.

18.    As the holder of a Class 4, Other Secured Claim, Harco's claim should be treated as such, and reinstated and unimpaired.  Article 4.4(b) of the Plan provides for the reinstatement of all Allowed Other Secured Claims upon the Effective Date, the procedures for which are set forth in Article 7.11.  Those procedures include, *inter alia*, notice to "Holders of Other Secured Claims in Class 4 setting forth the proposed Cure Amount (if any) necessary to Reinstate such Claims."

19.    However, Harco's claim is not included in the December 5, 2023 Notice of Cure Amounts Related to Reinstatement of Other Secured Claims in Class 4 In Connection with

---

[3]    Article 1.226 defines "Other Secured Claims" as "collectively, the Bremer Secured Claim, Non-Miner Equipment Lender Claim (36th Street), Non-Miner Equipment Lender Claim (Bank of the West), Non-Miner Equipment Lender Claim (Dell), Non-Miner Equipment Lender Claim (Indigo), Non-Miner Equipment Lender Claim (Meridian), Non-Miner Equipment Lender Claim (North Mill), Non-Miner Equipment Lender Claim (North Star), Non-Miner Equipment Lender Claim (Prime), and Non-Miner Equipment Lender Claim (Wingspire)."

Confirmation of Plan (Docket No. 1512).  This, too, is inconsistent with the classification of Harco's claim as a Class Four Other Secured Claim, which should be deemed unimpaired and reinstated, not cancelled and/or discharged.

20.     Harco, therefore, objects to the Plan to the extent that the provisions thereof would operate to cancel the Cash Collateral Agreement and/or Harco's lien upon the Surety Collateral.

21.     Furthermore, cancelling the Cash Collateral Agreement and/or discharging Harco's lien would violate the Bankruptcy Code's prohibition against the confirmation of a plan that does not "compl[y] with the applicable provisions of this title",  11 U.S.C. § 1129(a)(1), or is "by any means forbidden by law".  11 U.S.C. § 1129(a)(3).

22.     Under the Code, Harco is considered a secured creditor to the extent of the collateral in which it holds a lien.   See 11 U.S.C. § 506(a)(1) ("[a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property.").  To the extent the Plan seeks to cancel the Cash Collateral Agreement or Harco's lien, it would deprive Harco of its status as a secured creditor and would therefore not "compl[y] with the applicable provisions of this title".  11 U.S.C. § 1129(a)(1).

23.     Further, the Plan violates the well-recognized legal principle that liens ordinarily pass through bankruptcy unaffected.   Dewsnup v. Timm, 502 U.S. 410 (1992) ("[W]e are not convinced that Congress intended to depart from the pre-Code rule that liens pass through bankruptcy unaffected."); In re Kleibrink, 346 B.R. 734, 748 (Bankr. N.D. Tex. 2006), aff'd, 2007 WL 2438359 (N.D. Tex. Aug. 28, 2007), aff'd, 621 F.3d 370 (5th Cir. 2010) ("[T]he rule is that

where the debt is not paid in full under the plan, the lien remains intact and passes through the bankruptcy unaffected.").[4]

24.     Here, the Surety Collateral was provided by the Debtors post petition and pursuant to the Surety Bond Program Order.  Core Scientific specifically granted Harco a security interest in the Surety Collateral.  The law – which the Plan cannot violate (11 U.S.C. § 1129(a)(3))  – is that Harco's lien and security interest should survive the Debtors' bankruptcy.

25.     Consequently, the inclusion of language in the Plan that protects Harco's rights under the Collateral Agreement and its lien upon the Surety Collateral is necessary in order to ensure that the Plan is compliant with the Code and with governing law.

26.     As a final matter, Harco executed the Customs Bond on behalf of Core Scientific as a debtor in possession, not the Reorganized Debtor.  If Core Scientific wishes to continue relying upon the Customs Bond after emerging from bankruptcy, or to continue to obtain surety bonding from Harco, then the Reorganized Core Scientific must execute a new indemnity agreement that post-dates its emergence from bankruptcy.  But the Plan does not contain language authorizing and directing the Reorganized Debtors to execute such new indemnity agreements (to the extent required by Harco).

27.     Consequently, Harco respectfully submits that any order confirming the Plan

---

[4]     The Fifth Circuit has recognized an exception to this rule pursuant to Section 1141(c) of the Code, when four conditions are met:  "(1) the plan must be confirmed; (2) the property that is subject to the lien must be dealt with by the plan; (3) the lien holder must participate in the reorganization; and (4) the plan must not preserve the lien."  In re: Ahern Enterprises, Inc., 507 F.3d 817, 822 (5th Cir. 2007).  However, the second factor of the Ahern test is absent.  The plan does not appropriately "deal" with the Surety Collateral, as Harco has been listed as the holder of a Class 4, Other Secured Claim, in which case Harco's claim should be treated as such, and reinstated and unimpaired.   In addition, the first Ahern factor cannot be fulfilled; as discussed below, the Plan cannot be confirmed as currently drafted, without Harco's proposed reservation of rights language, as this would render the Plan unfeasible, in violation of 11 U.S.C. § 1129(a)(11).

include the following provisions:

**Surety.**   International Fidelity Insurance Company, Harco National Insurance Company and/or Allegheny Casualty Company (collectively, the "Surety").

1.      On or about August 30, 2021, and January 11, 2022, respectively, Agreements of Indemnity (collectively, the "Indemnity Agreements") were executed by Debtor, Core Scientific, Inc., as principal, in connection with certain surety bonds issued, or to be issued, by the Surety ("Surety Bonds").

2.      Core Scientific, through its Broker, C.A. Shea & Company, Inc., arranged for the issuance by the Surety, post-petition, of a Customs Bond (Surety Bond # 0823709 – Shea Bond # 230118003) in the penal sum of $300,000 (the "Customs Bond").  The Debtor, Core Scientific, Inc., and the Surety also entered into that certain Cash Collateral Escrow Agreement (the "Cash Collateral Agreement"), and pursuant thereto the Debtors wired to the Surety the sum of $300,000 as cash collateral to secure any bonded obligations, which cash the Surety is holding in an account ("Surety Collateral").  The Surety holds a first priority, duly perfected, lien on and security interest in the Surety Collateral.  Notwithstanding anything set forth to the contrary in this Order or the Plan, nothing in this Order or the Plan shall be deemed to limit the Surety's rights or interests in the Surety Collateral or the proceeds thereof, including, without limitation, the right to draw or use the Surety Collateral to reimburse any claim of the Surety.

3.      Nothing in the Plan, or this Order, shall impair, release, discharge, preclude, or enjoin any obligations of the Debtors or the Reorganized Debtors to the Surety under or related to the Indemnity Agreements, any Surety Bonds, including the Customs Bond, the Cash Collateral Agreement, any related indemnity agreements, or under the common law of suretyship, and such obligations are unimpaired and are not being released, discharged, precluded, or enjoined by the Plan, this Order, or any agreements with third parties.

4.      For the avoidance of doubt: (i) the Surety shall be deemed to have opted-out of the  Release, Injunction, and Exculpation provisions set forth in Article X of the Plan,[5] (ii) the Surety shall not be deemed to be a Releasing Party, (iii) the Surety Bonds, including the Customs Bond, the Indemnity Agreements, and Cash Collateral Agreement shall not be cancelled as set forth in Section 5.16 of the Plan; and (iv) the Surety's liens on and security interests in the Surety Collateral shall not be cancelled in accordance with Section 5.17 of the Plan.

5.      The Reorganized Debtors are authorized and are directed to execute written indemnity agreements in substantially the same form as the Indemnity Agreements, as may be required by the Surety in connection with its consideration of maintaining and/or issuing surety bonds (if any) on behalf of any of the Reorganized Debtors.

---

[5]   Harco has in fact opted out of these provisions of the plan.  Nevertheless, Harco wishes to include such language in an abundance of caution.

28.     If Harco's proposed reservation of rights language is not accepted and the Plan is thereafter confirmed, Harco may cancel the Customs Bond, without which Core Scientific cannot operate as a Reorganized Debtor.  Thus, failing to include Harco's proposed reservation of rights language in the Plan would render it unfeasible, thus violating 11 U.S.C. § 1129(a)(11) ("Confirmation of the plan is not likely to be followed by . . . the need for further financial reorganization, of the debtor or any successor to the debtor under the plan").

## RESERVATION OF RIGHTS

29.     Harco hereby expressly reserves the right to supplement this Limited Objection as additional information is received.

## CONCLUSION

30.     For the foregoing reasons, Harco submits this Limited Objection and proposes that the Plan be amended to include the language set forth in Paragraph 27.

**CHIESA SHAHINIAN & GIANTOMASI PC**
Scott A. Zuber, Esquire *(Admitted Pro Hac Vice)*
105 Eisenhower Parkway
Roseland, NJ  07068
Telephone: (973) 530-2046
Email: szuber@csglaw.com

*Counsel to International Fidelity Insurance Company, Harco National Insurance Company and Allegheny Casualty Company*

### CERTIFICATE OF SERVICE

I hereby certify that on December 14, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties authorized to receive electronic notice in this case.

*/s/ Scott A. Zuber*
SCOTT A. ZUBER

Dated: December 14, 2023

# Exhibit A



# AGREEMENT OF INDEMNITY
## Commercial Bond (II)

THIS AGREEMENT of Indemnity, made and entered into this 11th    day of  January          , 20 22   by

Core Scientific, Inc., 2800 Northrup Way, Suite 220, Bellevue, WA 98004;

(Insert full name and address of Principal)
(hereinafter called the Principal) and

Core Scientific Holding Co, 2800 Northrup Way, Suite 220, Bellevue, WA 98004

(Insert full name and addresses of Indemnitors, if any)
(hereinafter called the Indemnitors, if any) and

**INTERNATIONAL FIDELITY INSURANCE COMPANY, ALLEGHENY CASUALTY COMPANY, and/or HARCO NATIONAL INSURANCE COMPANY, all affiliates of IAT Insurance Group, Inc.,** One Newark Center, 20th Floor, Newark, NJ 07102 (hereinafter called the Surety),

### WITNESSETH:

WHEREAS the Principal, in the performance of contracts and the fulfillment of obligations generally, whether in its own name solely or as co-venturer with others, may desire, or be required to give or procure certain surety bonds, undertakings or instruments of guarantee, and to renew, or continue to substitute the same from time to time; or new bonds, undertakings or instruments of guarantee with the same or different penalties, and/or conditions, may be desired or required, in renewal, continuation, extension or substitution thereof; any one or more of which are hereinafter called Bonds; or the Principal or Indemnitors may request the Surety to refrain from canceling said Bonds; and

WHEREAS, at the request of the Principal and Indemnitors and upon the express understanding that this Agreement of Indemnity should be given, the Surety has executed or procured to be executed, and may from time to time hereafter execute or procure to be executed, said Bonds on behalf of the Principal and Indemnitors or the Surety may have already issued such Bonds in reliance upon execution of this Agreement; and

WHEREAS, the Principal and Indemnitors have a substantial, material and beneficial interest in the obtaining of the Bonds or in the Surety's refraining from cancelling said Bonds.

NOW, THEREFORE, in consideration of the premises, the Principal and Indemnitors for themselves, their existing and future subsidiaries and affiliates, heirs, executors, co-venturers, administrators, successors and assigns, jointly and severally, hereby covenant and agree with the Surety, its successors and assigns, as follows:

### PREMIUMS

FIRST: The Principal and Indemnitors will pay to the Surety in such manner as may be agreed upon all premiums and charges of the Surety for the Bonds in accordance with its rate filings, its manual of rates, or as otherwise agreed upon, until the Principal or Indemnitors shall serve evidence satisfactory to the Surety of its discharge or release from the Bonds and all liability by reason thereof.

### INDEMNITY

SECOND: The Principal and Indemnitors shall exonerate, indemnify, and keep indemnified the Surety from and against any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to, interest, court costs and the cost of services rendered by counsel, investigators, accountants, engineers or other consultants, whether consisting of in-house personnel or third party providers) and from and against any and all such losses and/or expenses which the Surety may sustain and incur: (1) By reason of having executed or procured the execution of the Bonds, (2) By reason of the failure of the Principal and/or Indemnitors to perform or comply with the covenants and conditions of this Agreement or (3) In enforcing any of the covenants and conditions of this Agreement. The Principal and Indemnitors agree to promptly reimburse the Surety for all sums paid on account of any such loss. In the event of any payment by the Surety, the Principal and Indemnitors further

agree that in any accounting between the Surety and the Principal and Indemnitors, the Surety shall be entitled to charge for any and all disbursements made by it in good faith in and about the matters herein contemplated by this Agreement under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed. The vouchers or other evidence of any such payment(s) made by the Surety shall be prima facie evidence of the fact and amount of the liability to the Surety, and of the Surety's good faith in making the payment(s). "Good Faith," as used in this paragraph and elsewhere in this Agreement, shall mean honesty in fact and the absence of willful misfeasance or malfeasance. Neither negligence nor gross negligence shall be deemed the absence of good faith.

The Surety is not a fiduciary and owes no fiduciary obligations to the Principal and Indemnitors.

Payments not made by the Principal and Indemnitors within 10 days after demand for such payment is made upon such party by the Surety shall bear interest at maximum rate allowed by law, with such interest accruing from the date payment was made by the Surety for which reimbursement is demanded.

The Principal and Indemnitors shall have no rights of indemnity, contribution or right to seek collection of any other outstanding obligation against each other or each other's property until the Principal's and Indemnitors' obligations to the Surety under this Agreement have been satisfied in full.

No action or failure to act by the Surety shall constitute a waiver of any right, power, or remedy afforded it by this Agreement, at law, or otherwise, nor shall such action or inaction constitute approval of or acquiescence in any breach by the Principal and/ or Indemnitors, except as may be specifically agreed in writing.

The Principal and Indemnitors also understand and agree that their obligations remain in full force and effect for any and all Bonds issued in reliance upon this Agreement, notwithstanding that the entity on whose behalf said Bonds were issued has been sold, dissolved or whose ownership has been otherwise altered in any way.

## COLLATERAL SECURITY

THIRD: The Principal and Indemnitors shall deposit with the Surety on demand an amount of money or other collateral security acceptable to the Surety, as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefor, equivalent to such amount that the Surety, in its sole judgement, shall deem sufficient to protect it from loss . The Surety shall have the right to use the deposit, or any portion thereof, in payment or settlement of any liability, loss, or expense for which the Principal and Indemnitors would be obligated to indemnify the Surety under the provisions of this Agreement. If for any reason the Surety deems it necessary to demand an additional amount of collateral security to cover any possible additional liability or loss, the Principal and Indemnitors shall deposit with the Surety, immediately upon the Surety's demand, an additional amount of collateral security equal to such demand. The Surety shall have no obligation to invest or to provide a return on any such deposits. The Principal and Indemnitors expressly waive any right to interest or other income which may be earned on the money or other collateral security and further agree that the aforesaid money or other collateral security may be held by the Surety in any investment, depository or other vehicle that the Surety in its sole discretion deems advisable. The Surety may sell or realize upon any and all such collateral security, at public or private sale, with or without notice to the Principal and Indemnitors, or by any other method permitted or applicable by law.

## DISCHARGE AND ADDITIONAL SECURITY

FOURTH: The Principal and Indemnitors will, upon the written request of the Surety, promptly procure the full and complete discharge of the Surety from any Bonds specified in such request and all potential liability by reason of such Bonds. If such full and complete discharge is unattainable, the Principal and Indemnitors will, if requested by the Surety, within five (5) business days, place the Surety in funds that are immediately available and sufficient to meet all of the Surety's liabilities that are in force prior to the date of the Surety's demand. The Surety may make such demand for funds at any time and without regard to whether it has sustained any loss or received any claim. The amount of such demand, including reasonable attorney fees and expenses is at the sole discretion of the Surety. The Principal and Indemnitors expressly waive any right to interest or other income which may be earned on the aforesaid funds and further agree that said funds may be held by the Surety in any investment, depository or other vehicle that the Surety in its sole discretion deems advisable. The Surety may sell or realize upon any and all such funds, at public or private sale, with or without notice to the Principal and Indemnitors, or by any other method permitted or applicable by law.

The Principal and Indemnitors waive, to the fullest extent permitted by applicable law, each and every right which they may have to contest such payment. Failure to make immediate payment to Surety as herein provided shall cause the Principal and Indemnitors to be additionally liable for any and all reasonable costs and expenses, including attorneys fees, incurred by the Surety in enforcing this provision.

In the event that any or all of the Principal and Indemnitors fail to comply with such demand as stated in this provision, the Principal and Indemnitors hereby authorize and empower any attorney of any court of record of the United States or any of its territories or possessions, to appear for them or any of them in any suit by Surety and confess judgment against them or any of them for any sum or sums of money up to the amount of any or all Bond or Bonds, with costs, interest and attorney's fees; such judgment, however, to be satisfied upon the payment of any and all such sums as may be found due by the Principal and Indemnitors to Surety under the terms of this provision. The authority to confess judgment as set forth herein shall not be exhausted by one exercise thereof, but may be exercised from time to time and more than one time until all liability of the Principal and Indemnitors to the Surety shall have been paid in full. Demand shall be sufficient if sent by registered or certified mail, hand delivered, or via overnight mail to the last known address of the Principal and Indemnitors, whether or not actually received.

## SECURITY INTERESTS AND UCC SECURITY AGREEMENT

FIFTH: This Agreement shall constitute a Security Agreement to the Surety and also a Financing Statement, both in accordance with the provisions of the Uniform Commercial Code of every jurisdiction wherein such Code is in effect and may be so used by the Surety without in any way abrogating, restricting or limiting the rights of the Surety under this Agreement or under law, or in equity. A carbon, photographic or other reproduction of this Agreement may be filed as a Financing Statement.

The Surety may make such additions to this Agreement as may be necessary or desirable to permit its filing as a Financing Statement under the Code.

This Security Agreement and Financing Statement shall secure payments made, and to be made, by the Surety hereunder and under the Bonds issued by the Surety that are not reimbursed to the Surety by the Principal and Indemnitors and shall cover and attach to the following collateral: all tangible or intangible personal property and fixtures owned by the Principal and Indemnitors, wherever located or situated and whether now owned or hereafter acquired, and shall cover proceeds from sale of covered property.

## CHANGES

SIXTH: The Surety is authorized and empowered, without notice to or knowledge of the Principal and Indemnitors, to assent to any change whatsoever in the Bonds, and/or any contracts referred to in the Bonds, and to assent to or take any assignment or assignments, to execute or consent to the execution of any continuations, extensions or renewals of the Bonds and to execute any substitute or substitutes therefor, with the same or different conditions, provisions and obligees and with the same or larger or smaller penalties, it being expressly understood and agreed that the Principal and Indemnitors shall remain bound under the terms of this Agreement even though any such assent by the Surety does or might substantially increase the liability of said Principal and Indemnitors.

## CONTINUING DUTY OF DISCLOSURE TO SURETY

SEVENTH: At any time, and until such time as the liability of the Surety under any and all said Bonds is terminated, if the Principal and/or Indemnitors become aware of any materially adverse change in the Principal's financial condition, or any fact (s) suggesting the possibility of any such change (including, but not limited to, pending legal actions against the Principal), the Principal and/or Indemnitors shall immediately advise the Surety of same in writing.

As used herein, "materially adverse change" shall be defined to include: (a) any event or circumstance which, when considered individually or together with other events, could be expected to have a materially adverse effect on (i) the financial condition of the Principal, or on the earnings, operations, assets, business affairs or business prospects of the Principal; (ii) the ability of the Principal to perform or observe any of its obligations under this Agreement or under any contract that is the subject of the Surety's Bond obligations; (iii) the rights and remedies of the Surety under this Agreement; and/or (iv) the Surety's evaluation of risk in determining whether to continue to extend surety credit to the Principal and/or in determining the terms and conditions of any such extension of credit.

## BOOKS AND RECORDS

EIGHTH: At any time, and until such time as the liability of the Surety under any and all said Bonds is terminated, the Surety shall have the right to reasonable access to the books, records, and accounts of the Principal and Indemnitors; and any bank depository, materialman, supply house, or other person, firm, or corporation when requested by the Surety is hereby authorized to furnish the Surety any information requested. The Principal and Indemnitors agree to execute, as requested by the Surety, any additional documents to cause the release of records and information authorized by this paragraph.

## DECLINE EXECUTION

NINTH:  Unless otherwise specifically agreed in writing, the Surety may decline to execute any Bond and the  Principal and Indemnitors agree to make no claim to the contrary in consideration of the Surety's receiving this  Agreement; and if the Surety shall execute a Bid or Proposal Bond, it shall have the right to decline to execute any  and all of the bonds that may be required in connection with any award that may be made under the proposal for  which the Bid or Proposal Bond is given and such declination shall not diminish or alter the liability that may arise  by reason of having executed the Bid or Proposal Bond.

## NOTICE OF EXECUTION

TENTH:  The Principal and Indemnitors hereby waive notice of the execution of said Bonds and of the acceptance  of this Agreement, and the Principal and Indemnitors hereby waive all notice of any default, or any other act or acts  giving rise to any claim under said Bonds, as well as notice of any and all liability of the Surety under said Bonds,  and any and all liability on their part hereunder, to the end and effect that, the Principal and Indemnitors shall be  and continue to be liable hereunder, notwithstanding any notice of any kind to which they might have been or be  entitled, and notwithstanding any defenses they might have been entitled to make.

## HOMESTEAD

ELEVENTH:  The Principal and Indemnitors hereby waive, so far as their respective obligations under this Agreement  are concerned, all rights to claim any of their property, including their respective homesteads, as exempt from levy,  execution, sale or other legal process under the laws of any State, Territory, or Possession.

## SETTLEMENTS

TWELFTH:  The Surety shall have the right to adjust, settle or compromise any claim, demand, suit or judgment upon  the Bonds, unless the Principal and Indemnitors shall demonstrate to the Surety's satisfaction in the Surety's sole discretion that there is a valid  basis to dispute said claim, demand, suit or judgment, and shall in good faith request the Surety to litigate such claim or demand, or to defend such suit, or to appeal from such judgment, and shall deposit with the Surety, at the  time of such request, cash or collateral satisfactory to the Surety in kind and amount, to be used in paying any  judgment or judgments rendered or that may be rendered, with interest, costs, expenses and attorneys' fees,  including those of the Surety.

## CO-SURETIES AND REINSURERS

THIRTEENTH:  In the event the Surety procures the execution of the Bonds by other sureties, or executes the Bonds  with co-sureties, or reinsures any portion of said Bonds with reinsuring insurers and/or sureties, then all the terms  and conditions of this Agreement shall inure to the benefit of such other sureties, co-sureties and reinsuring insurers  and/or sureties, as their interests may appear.

## SUITS

FOURTEENTH:  Separate suits may be brought hereunder as causes of action accrue, and the bringing of suit or the  recovery of judgment upon any cause of action shall not prejudice or bar the bringing of other suits upon other  causes of action, whether theretofore or thereafter arising.

The Principal and Indemnitors hereby consent and submit to personal jurisdiction in the courts of New Jersey with  regard to claims and actions against them by the Surety hereunder and consent that any process necessary or proper for the initiation of any court action in New Jersey or for entry of judgment may be served upon them by certified  and ordinary mail, addressed to them or to their attorneys, at their last known addresses.

The Indemnitors furthermore hereby agree to submit to personal jurisdiction in any forum in which the Surety may  be sued on an obligation for which the Principal and Indemnitors have agreed to indemnify the Surety.

## OTHER RIGHTS

FIFTEENTH:  All rights and remedies of the Surety under this Agreement shall be cumulative, and the exercise  of or failure to exercise, any right or remedy at any time shall not be an election of remedy or a waiver of any other  right  or remedy. Failure of the Surety to pursue any remedy against any one or more of the  Principal and  Indemnitors shall not release or waive any right against any other of the Principal and Indemnitors.

The Surety is not required to exhaust its remedies or rights against the Principal or to await receipt of any dividends from the legal representatives of the Principal before asserting its rights under this Agreement against the Indemnitors

The rights, powers and remedies given to the Surety by this Agreement shall be and are in addition to, and not in lieu of, any and all other rights, powers, and remedies which the Surety may have or acquire against the Principal and Indemnitors or others whether by terms of any other agreement, by operation of law or otherwise.

## OTHER INDEMNITY

SIXTEENTH: The Principal and Indemnitors shall continue to remain bound under the terms of this Agreement even though the Surety may have from time to time heretofore or hereafter, with or without notice to or knowledge of the Principal and Indemnitors, accepted or released other agreements of indemnity or collateral in connection with the execution or procurement of said Bonds, from any and all of the Principal and Indemnitors or others, it being expressly understood and agreed by the Principal and Indemnitors that any and all other rights which the Surety may have or acquire against the Principal and Indemnitors and/or others under any such other or additional agreements of indemnity or collateral shall be in addition to, and not in lieu of, the rights afforded the Surety under this Agreement. No subsequent agreements of indemnity or other agreements of any type whatsoever between the Surety and the Principal and/or Indemnitors, or any of them, shall be deemed a novation of this Agreement.

## INVALIDITY

SEVENTEENTH: In case any of the parties mentioned in this Agreement fail to execute the same, or in case the execution hereof by any of the parties be defective or invalid for any reason, such failure, defect or invalidity shall not in any manner affect the validity of this Agreement or the liability hereunder of any of the parties executing the same, but each and every party so executing shall be and remain fully bound and liable hereunder to the same extent as if such failure, defect or invalidity had not existed. It is understood and agreed by the Principal and Indemnitors that the rights, powers, and remedies given the Surety under this Agreement shall be and are in addition to, and not in lieu of, any and all other rights, powers, and remedies which the Surety may have or acquire against the Principal and Indemnitors or others whether by the terms of any other agreement or by operation of law or otherwise. If any part of this Agreement shall be void or unenforceable under the laws of any jurisdiction governing its construction, this Agreement shall not be void or vitiated thereby, but shall be construed and enforced with the same effect as though such part was omitted.

## ATTORNEY IN FACT

EIGHTEENTH: The Principal and Indemnitors hereby irrevocably nominate, constitute, appoint and designate the Surety or its designee as their attorney-in-fact with the right, but not the obligation, to exercise all of the rights granted, assigned, and/or transferred to the Surety in this Agreement, and in the name of the Principal and Indemnitors to make, execute, and deliver any and all additional or other assignments, documents or papers deemed necessary and proper by the Surety in order to give full effect not only to the intent and meaning of the within rights granted, assigned and/or transferred, but also to the full protection intended to be herein given to the Surety under all other provisions of this Agreement. The Principal and Indemnitors hereby ratify and affirm all acts and actions taken and done by the Surety or its designee as such attorney-in-fact.

## NOTICE

NINTEENTH: Upon becoming aware of any demand, notice, or proceeding preliminary to fixing any liability with which the Surety may be subsequently charged under any Bond, the Principal and Indemnitors shall immediately notify the Surety in a writing delivered at its Home Office, One Newark Center, 20th Floor, Newark, New Jersey 07102 to the attention of the Claims Department. The Surety reserves the right to change periodically the address for delivery of notification by the Surety's written direction delivered to the Principal and Indemnitors.

Any notification by the Surety to any one individual or entity comprising the Principal and Indemnitors shall constitute notice to the remaining individuals and entities comprising the Principal and Indemnitors.

## TERMINATION

TWENTIETH: This Agreement may be terminated by the Principal and Indemnitors upon twenty days' written notice sent by certified or registered mail to the Surety at its home office at One Newark Center, 20th Floor, Newark, New Jersey 07102, but any such notice of termination shall not operate to modify, bar, or discharge the Principal and Indemnitors from their obligations under this Agreement as to the Bonds that may have been theretofore executed or executed pursuant to Consent of Surety issued prior to notice of termination or with respect to Bonds executed after the date of such termination which the Surety has become obligated, prior to such date, to execute. Further, such notice of termination shall operate only with respect to those parties upon whose behalf such notice of termination shall have been given.

## THIRD PARTIES

TWENTY-FIRST: In the event that that the Principal and/or an Indemnitor(s) and/or their subsidiaries or affiliates request that a Bond or Bonds be issued on behalf of a third party as principal, the provisions of this Agreement shall apply with equal force to any such Bond or Bonds. This Agreement applies to Bonds executed at the request of the Principal and/or Indemnitor(s) on behalf of any and all of their wholly or partially owned subsidiary companies, subsidiaries, divisions or affiliates, partnerships, joint ventures or co-ventures whether open or silent, jointly, severally, or in any combination with each other, now in existence or which may hereafter be created or acquired.

## AMENDMENTS

TWENTY-SECOND: This Agreement may not be changed or modified orally. No change or modification shall be effective unless made by written endorsement executed to form a part hereof.

## SUBSEQUENT EXECUTION

TWENTY-THIRD: The Principal and Indemnitors waive any defense that this instrument was executed subsequent to the date of any Bond, admitting and covenanting that such Bond was executed pursuant to the request of the Principal and Indemnitors, and in reliance upon the Principal/Indemnitors' promise to execute this document.

## CROSS-INDEMNITY

TWENTY-FOURTH: In the event that more than one party executes this Agreement as "Principal", and the Surety sustains any loss with respect to one or more of the parties identified as "Principal", all parties executing this Agreement as either "Principal", or "Indemnitors", or both, shall be jointly and severally liable to the Surety for such loss in accordance with the terms of this Agreement.

## REPRESENTATIONS

TWENTY-FIFTH: The undersigned represent to the Surety that they have carefully read the entire Agreement and that there are no other agreements or understandings which in any way lessen or modify the obligations set forth herein. The undersigned further warrant and represent to the Surety that all necessary action has been taken by them to authorize the execution and delivery of this Agreement.

## UNIFORM ELECTRONIC TRANSACTIONS ACT

TWENTY-SIXTH: The undersigned agree that this document and any and all bonds issued by the Surety will be subject to the terms of the Uniform Electronic Transactions Act ("UETA"), to the extent that the UETA has been adopted by the State legislature in the relevant jurisdiction, and any and all substantially similar federal or state legislation designed to regulate electronic commerce.

## COUNTERPARTS

**TWENTY-SEVENTH:** This Agreement may be executed in any number of counterparts, all of which taken together shall constitute the Agreement. This Agreement shall be effective and immediately binding as to each Principal and Indemnitor when that Principal or Indemnitor executes this Agreement, regardless of whether any other Principal or Indemnitor has executed the Agreement or fails or ceases to be bound by the Agreement for any reason. Delivery of a facsimile, electronic or digital copy of this Agreement's signature pages, executed by any Principal or Indemnitor, to the Surety or the Surety's agent or representative shall constitute effective execution and delivery of this Agreement by that Principal or Indemnitor and shall constitute a valid and original signature to this Agreement for all purposes. Principal's and Indemnitors' obligations to Surety shall not be affected by the failure of any Principal or Indemnitor to sign any Bond.

IN WITNESS WHEREOF, we have hereunto set our hands and seals.

**WE HAVE READ THIS INDEMNITY AGREEMENT CAREFULLY. THERE ARE NO SEPARATE AGREEMENTS OR UNDERSTANDINGS WHICH IN ANY WAY LESSEN OUR OBLIGATIONS AS ABOVE SET FORTH.**

**IMPORTANT:** To all indemnitors: please provide your Social Security Number (Individual) or your Federal Tax ID Number (Corporation). The signature of each and every Corporation must be attested to and sealed by the Corporate Secretary or other officer as permitted by the governing documents and/or state law. The signature of each and every LLC, Partnership and/or Trust that is a party to this agreement must be witnessed by at least one disinterested person. The signature of each Individual party does not require a witness except for agreements containing Principals and/or Indemnitors within the state of Louisiana, which requires the witness of a disinterested person. All signatures must be notarized.

**PRINCIPALS - (Corporate Signatories)**

Attest (intended to be signed under seal):

_____
(Secretary/Assistant Secretary)

**Todd DuChene, Corporate Secretary**
(Print or Type Name)

Core Scientific, Inc.

By _____  (Corporate Name)
(Signature)                                        (Seal)

**Michael Trzupek, EVP & CFO**
(Print or Type Name and Title)

Federal Tax ID _____

### CORPORATE ACKNOWLEDGMENT

STATE OF _Washington_

COUNTY OF _King_   s.s.

On This _18th_ day of _January_, in the year 20 _22_ before me personally come(s)

**Michael Trzupek**

to me known who, being by me duly sworn, deposes and says that he/she resides in the city of _Redmond, WA_

that he/she is the _EVP & CFO_ of the _Core Scientific, Inc._

the corporation described in and which executed the foregoing instrument; that he/she knows the seal of the said corporation; that the seal affixed

to the said instrument is such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation, and that he/she signed his/her name thereto by like order.

_____   _3/19/25_
(Signature and title of official taking acknowledgment/ Notary)   My Commission Expires (Date)

**DANIELLE ZUCLICH**
**Notary Public**
**State of Washington**
**Commission # 21009984**
**My Comm. Expires Mar 19, 2025**

**INDEMNITORS - (Corporate Signatories)**

(Corporate Name)

Attest (Intended to be signed under seal):

Core Scientific Holding Co

(Secretary/Assistant Secretary)

By _____ (Seal)

(Signature)

Todd DuChene, Corporate Secretary

Michael Trzupek, EVP & CFO

(Print or Type Name)

(Print or Type Name and Title)

Federal Tax ID    85-2941270

## CORPORATE ACKNOWLEDGMENT

STATE OF __Washington__

COUNTY OF __King__    s.s.

On This __19th__ day of __January__, in the year 20 __22__ before me personally come(s)

Michael Trzupek

to me known who, being by me duly sworn, deposes and says that he/she resides in the city of __Redmond, WA__

that he/she is the __EVP & CFO__ of the __Core Scientific Holding Co__

the corporation described in and which executed the foregoing instrument; that he/she knows the seal of the said corporation; that the seal affixed

to the said instrument is such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation, and that he/she signed his/her name thereto by like order.

_____    __3/19/25__

(Signature and title of official taking acknowledgment/ Notary)    My Commission Expires (Date)

DANIELLE ZUCLICH
Notary Public
State of Washington
Commission # 21009984
My Comm. Expires Mar 19, 2025



# AGREEMENT OF INDEMNITY
## Commercial Bond (II)

THIS AGREEMENT of Indemnity, made and entered into this 30th    day of   August              , 20 21   by

 Core Scientific, Inc., 2800 Northrup Way, Ste. 220, Bellevue, WA 98004

(Insert full name and address of Principal)
(hereinafter called the Principal) and


(Insert full name and addresses of Indemnitors, if any)
(hereinafter called the Indemnitors, if any) and

**INTERNATIONAL FIDELITY INSURANCE COMPANY, ALLEGHENY CASUALTY COMPANY, and/or HARCO NATIONAL INSURANCE COMPANY, all affiliates of IAT Insurance Group, Inc.,**
One Newark Center, 20th Floor, Newark, NJ 07102 (hereinafter called the Surety),

### WITNESSETH:

WHEREAS the Principal, in the performance of contracts and the fulfillment of obligations generally, whether in its own name solely or as co-venturer with others, may desire, or be required to give or procure certain surety bonds, undertakings or instruments of guarantee, and to renew, or continue to substitute the same from time to time; or new bonds, undertakings or instruments of guarantee with the same or different penalties, and/or conditions, may be desired or required, in renewal, continuation, extension or substitution thereof; any one or more of which are hereinafter called Bonds; or the Principal or Indemnitors may request the Surety to refrain from canceling said Bonds; and

WHEREAS, at the request of the Principal and Indemnitors and upon the express understanding that this Agreement of Indemnity should be given, the Surety has executed or procured to be executed, and may from time to time hereafter execute or procure to be executed, said Bonds on behalf of the Principal and Indemnitors or the  Surety may have already issued such Bonds in reliance upon execution of this Agreement; and

WHEREAS, the Principal and Indemnitors have a substantial, material and beneficial interest in the obtaining of the  Bonds or in the Surety's refraining from cancelling said Bonds.

NOW, THEREFORE, in consideration of the premises, the Principal and Indemnitors for themselves, their existing  and future subsidiaries and affiliates, heirs, executors, co-venturers, administrators, successors and assigns, jointly  and severally, hereby covenant and agree with the Surety, its successors and assigns, as follows:

### PREMIUMS

FIRST: The Principal and Indemnitors will pay to the Surety in such manner as may be agreed upon all premiums  and charges of the Surety for the Bonds in accordance with its rate filings, its manual of rates, or as otherwise agreed upon, until the Principal or Indemnitors  shall  serve  evidence satisfactory to the Surety of  its discharge or release from the Bonds  and all liability by reason thereof.

### INDEMNITY

SECOND: The Principal and Indemnitors shall exonerate, indemnify, and keep indemnified the Surety from and  against any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to,  interest, court costs and the cost of services rendered by counsel, investigators, accountants, engineers or other  consultants, whether consisting of in-house personnel or third party providers) and from and against any and all  such losses and/or expenses which the Surety may sustain and incur: (1) By reason of having executed or procured the execution of the Bonds, (2) By reason of the failure of the Principal and/or Indemnitors to perform or comply  with the covenants and conditions of this Agreement or (3) In enforcing any of the covenants and conditions of this  Agreement. The Principal and Indemnitors agree to promptly reimburse the Surety for all sums paid on account of  any such loss. In the event of any payment by the Surety, the Principal and Indemnitors further

agree that in any accounting between the Surety and the Principal and Indemnitors, the Surety shall be entitled to charge for any and all disbursements made by it in good faith in and about the matters herein contemplated by this Agreement under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed. The vouchers or other evidence of any such payment(s) made by the Surety shall be prima facie evidence of the fact and amount of the liability to the Surety, and of the Surety's good faith in making the payment(s). "Good Faith," as used in this paragraph and elsewhere in this Agreement, shall mean honesty in fact and the absence of willful misfeasance or malfeasance. Neither negligence nor gross negligence shall be deemed the absence of good faith.

The Surety is not a fiduciary and owes no fiduciary obligations to the Principal and Indemnitors.

Payments not made by the Principal and Indemnitors within 10 days after demand for such payment is made upon such party by the Surety shall bear interest at maximum rate allowed by law, with such interest accruing from the date payment was made by the Surety for which reimbursement is demanded.

The Principal and Indemnitors shall have no rights of indemnity, contribution or right to seek collection of any other outstanding obligation against each other or each other's property until the Principal's and Indemnitors' obligations to the Surety under this Agreement have been satisfied in full.

No action or failure to act by the Surety shall constitute a waiver of any right, power, or remedy afforded it by this Agreement, at law, or otherwise, nor shall such action or inaction constitute approval of or acquiescence in any breach by the Principal and/or Indemnitors, except as may be specifically agreed in writing.

The Principal and Indemnitors also understand and agree that their obligations remain in full force and effect for any and all Bonds issued in reliance upon this Agreement, notwithstanding that the entity on whose behalf said Bonds were issued has been sold, dissolved or whose ownership has been otherwise altered in any way.

## COLLATERAL SECURITY

THIRD: The Principal and Indemnitors shall deposit with the Surety on demand an amount of money or other collateral security acceptable to the Surety, as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefor, equivalent to such amount that the Surety, in its sole judgement, shall deem sufficient to protect it from loss . The Surety shall have the right to use the deposit, or any portion thereof, in payment or settlement of any liability, loss, or expense for which the Principal and Indemnitors would be obligated to indemnify the Surety under the provisions of this Agreement. If for any reason the Surety deems it necessary to demand an additional amount of collateral security to cover any possible additional liability or loss, the Principal and Indemnitors shall deposit with the Surety, immediately upon the Surety's demand, an additional amount of collateral security equal to such demand. The Surety shall have no obligation to invest or to provide a return on any such deposits. The Principal and Indemnitors expressly waive any right to interest or other income which may be earned on the money or other collateral security and further agree that the aforesaid money or other collateral security may be held by the Surety in any investment, depository or other vehicle that the Surety in its sole discretion deems advisable. The Surety may sell or realize upon any and all such collateral security, at public or private sale, with or without notice to the Principal and Indemnitors, or by any other method permitted or applicable by law.

## DISCHARGE AND ADDITIONAL SECURITY

FOURTH: The Principal and Indemnitors will, upon the written request of the Surety, promptly procure the full and complete discharge of the Surety from any Bonds specified in such request and all potential liability by reason of such Bonds. If such full and complete discharge is unattainable, the Principal and Indemnitors will, if requested by the Surety, within five (5) business days, place the Surety in funds that are immediately available and sufficient to meet all of the Surety's liabilities that are in force prior to the date of the Surety's demand. The Surety may make such demand for funds at any time and without regard to whether it has sustained any loss or received any claim. The amount of such demand, including reasonable attorney fees and expenses is at the sole discretion of the Surety. The Principal and Indemnitors expressly waive any right to interest or other income which may be earned on the aforesaid funds and further agree that said funds may be held by the Surety in any investment, depository or other vehicle that the Surety in its sole discretion deems advisable. The Surety may sell or realize upon any and all such funds, at public or private sale, with or without notice to the Principal and Indemnitors, or by any other method permitted or applicable by law.

The Principal and Indemnitors waive, to the fullest extent permitted by applicable law, each and every right which they may have to contest such payment. Failure to make immediate payment to Surety as herein provided shall cause the Principal and Indemnitors to be additionally liable for any and all reasonable costs and expenses, including attorneys fees, incurred by the Surety in enforcing this provision.

In the event that any or all of the Principal and Indemnitors fail to comply with such demand as stated in this provision, the Principal and Indemnitors hereby authorize and empower any attorney of any court of record of the United States or any of its territories or possessions, to appear for them or any of them in any suit by Surety and confess judgment against them or any of them for any sum or sums of money up to the amount of any or all Bond or Bonds, with costs, interest and attorney's fees; such judgment, however, to be satisfied upon the payment of any and all such sums as may be found due by the Principal and Indemnitors to Surety under the terms of this provision.   The authority to confess judgment as set forth herein shall not be exhausted by one exercise thereof, but may be exercised from time to time and more than one time until all liability of the Principal and Indemnitors to the Surety shall have been paid in full. Demand shall be sufficient if sent by registered or certified mail, hand delivered, or via overnight mail to the last known address of the Principal and Indemnitors, whether or not actually received.

## SECURITY INTERESTS AND UCC SECURITY AGREEMENT

FIFTH: This Agreement shall constitute a Security Agreement to the Surety and also a Financing Statement, both in accordance with the provisions of the Uniform Commercial Code of every jurisdiction wherein such Code is in effect and may be so used by the Surety without in any way abrogating, restricting or limiting the rights of the Surety under this Agreement or under law, or in equity. A carbon, photographic or other reproduction of this Agreement may be filed as a Financing Statement.

The Surety may make such additions to this Agreement as may be necessary or desirable to permit its filing as a Financing Statement under the Code.

This Security Agreement and Financing Statement shall secure payments made, and to be made, by the Surety hereunder and under the Bonds issued by the Surety that are not reimbursed to the Surety by the Principal and Indemnitors and shall cover and attach to the following collateral: all tangible or intangible personal property and fixtures owned by the Principal and Indemnitors, wherever located or situated and whether now owned or hereafter acquired, and shall cover proceeds from sale of covered property.

## CHANGES

SIXTH:  The Surety is authorized and empowered, without notice to or knowledge of the Principal and Indemnitors,  to assent to any change whatsoever in the Bonds, and/or any contracts referred to in the Bonds, and to assent to or take any assignment or  assignments,  to execute or consent to the execution of  any  continuations, extensions or  renewals of the Bonds and to execute any substitute or substitutes therefor, with the same or different conditions, provisions and obligees and with the same or larger or smaller penalties, it being expressly understood and agreed that the Principal and Indemnitors shall remain bound under the terms of this Agreement even though any such assent by the Surety does or might substantially increase the liability of said Principal and Indemnitors.

## CONTINUING DUTY OF DISCLOSURE TO SURETY

SEVENTH: At any time, and until such time as the liability of the Surety under any and all said Bonds is terminated, if the Principal and/or Indemnitors become aware of any materially adverse change in the Principal's financial condition, or any fact (s) suggesting the possibility of any such change (including, but not limited to, pending legal actions against the Principal), the Principal and/or Indemnitors shall immediately advise the Surety of same in writing.

As used herein, "materially adverse change" shall be defined to include: (a) any event or circumstance which, when considered individually or together with other events, could be expected to have a materially adverse effect on (i) the financial condition of the Principal, or on the earnings, operations, assets, business affairs or business prospects of the Principal; (ii) the ability of the Principal to perform or observe any of its obligations under this Agreement or under any contract that is the subject of the Surety's Bond obligations; (iii) the rights and remedies of the Surety under this Agreement; and/or (iv) the Surety's evaluation of risk in determining whether to continue to extend surety credit to the Principal and/or in determining the terms and conditions of any such extension of credit.

## BOOKS AND RECORDS

EIGHTH: At any time, and until such time as the liability of the Surety under any and all said Bonds is terminated, the Surety shall have the right to reasonable access to the books, records, and accounts of the Principal and Indemnitors; and any bank depository, materialman, supply house, or other person, firm, or corporation when requested by the Surety is hereby authorized to furnish the Surety any information requested. The Principal and Indemnitors agree to execute, as requested by the Surety, any additional documents to cause the release of records and information authorized by this paragraph.

## DECLINE EXECUTION

NINTH:  Unless otherwise specifically agreed in writing, the Surety may decline to execute any Bond and the  Principal and Indemnitors agree to make no claim to the contrary in consideration of the Surety's receiving this  Agreement; and if the Surety shall execute a Bid or Proposal Bond, it shall have the right to decline to execute any  and all of the bonds that may be required in connection with any award that may be made under the proposal for  which the Bid or Proposal Bond is given and such declination shall not diminish or alter the liability that may arise  by reason of having executed the Bid or Proposal Bond.

## NOTICE OF EXECUTION

TENTH:  The Principal and Indemnitors hereby waive notice of the execution of said Bonds and of the acceptance  of this Agreement, and the Principal and Indemnitors hereby waive all notice of any default, or any other act or acts  giving rise to any claim under said Bonds, as well as notice of any and all liability of the Surety under said Bonds,  and any and all liability on their part hereunder, to the end and effect that, the Principal and Indemnitors shall be  and continue to be liable hereunder, notwithstanding any notice of any kind to which they might have been or be  entitled, and notwithstanding any defenses they might have been entitled to make.

## HOMESTEAD

ELEVENTH:  The Principal and Indemnitors hereby waive, so far as their respective obligations under this Agreement  are concerned, all rights to claim any of their property, including their respective homesteads, as exempt from levy,  execution, sale or other legal process under the laws of any State, Territory, or Possession.

## SETTLEMENTS

TWELFTH:  The Surety shall have the right to adjust, settle or compromise any claim, demand, suit or judgment upon  the Bonds, unless the Principal and Indemnitors shall demonstrate to the Surety's satisfaction in the Surety's sole discretion that there is a valid  basis to dispute said claim, demand, suit or judgment, and shall in good faith request the Surety to litigate such claim or demand, or to defend such suit, or to appeal from such judgment, and shall deposit with the Surety, at the  time of such request, cash or collateral satisfactory to the Surety in kind and amount, to be used in paying any  judgment  or  judgments rendered or that may be  rendered,  with  interest,  costs,  expenses  and attorneys' fees,  including those of the Surety.

## CO-SURETIES AND REINSURERS

THIRTEENTH:  In the event the Surety procures the execution of the Bonds by other sureties, or executes the Bonds  with co-sureties, or reinsures any portion of said Bonds with reinsuring insurers and/or sureties, then all the terms  and conditions of this Agreement shall inure to the benefit of such other sureties, co-sureties and reinsuring insurers  and/or sureties, as their interests may appear.

## SUITS

FOURTEENTH:  Separate suits may be brought hereunder as causes of action accrue, and the bringing of suit or the  recovery of judgment upon any cause of action shall not prejudice or bar the bringing of other suits upon other  causes of action, whether theretofore or thereafter arising.

The Principal and Indemnitors hereby consent and submit to personal jurisdiction in the courts of New Jersey with  regard to claims and actions against them by the Surety hereunder and consent that any process necessary or proper for the initiation of any court action in New Jersey or for entry of judgment may be served upon them by certified  and ordinary mail, addressed to them or to their attorneys, at their last known addresses.

The Indemnitors furthermore hereby agree to submit to personal jurisdiction in any forum in which the Surety may  be sued on an obligation for which the Principal and Indemnitors have agreed to indemnify the Surety.

## OTHER RIGHTS

FIFTEENTH:  All rights and remedies of the Surety under this Agreement shall be cumulative, and the exercise  of or failure to exercise, any right or remedy at any time shall not be an election of remedy or a waiver of any other  right  or  remedy.  Failure of  the Surety to pursue any  remedy against any one  or  more  of  the  Principal  and  Indemnitors shall not release or waive any right against any other of the Principal and Indemnitors.

The Surety is not required to exhaust its remedies or rights against the Principal or to await receipt of any dividends from the legal representatives of the Principal before asserting its rights under this Agreement against the Indemnitors

The rights, powers and remedies given to the Surety by this Agreement shall be and are in addition to, and not in lieu of, any and all other rights, powers, and remedies which the Surety may have or acquire against the Principal and Indemnitors or others whether by terms of any other agreement, by operation of law or otherwise.

## OTHER INDEMNITY

SIXTEENTH: The Principal and Indemnitors shall continue to remain bound under the terms of this Agreement even though the Surety may have from time to time heretofore or hereafter, with or without notice to or knowledge of the Principal and Indemnitors, accepted or released other agreements of indemnity or collateral in connection with the execution or procurement of said Bonds, from any and all of the Principal and Indemnitors or others, it being expressly understood and agreed by the Principal and Indemnitors that any and all other rights which the Surety may have or acquire against the Principal and Indemnitors and/or others under any such other or additional agreements of indemnity or collateral shall be in addition to, and not in lieu of, the rights afforded the Surety under this Agreement. No subsequent agreements of indemnity or other agreements of any type whatsoever between the Surety and the Principal and/or Indemnitors, or any of them, shall be deemed a novation of this Agreement.

## INVALIDITY

SEVENTEENTH: In case any of the parties mentioned in this Agreement fail to execute the same, or in case the execution hereof by any of the parties be defective or invalid for any reason, such failure, defect or invalidity shall not in any manner affect the validity of this Agreement or the liability hereunder of any of the parties executing the same, but each and every party so executing shall be and remain fully bound and liable hereunder to the same extent as if such failure, defect or invalidity had not existed. It is understood and agreed by the Principal and Indemnitors that the rights, powers, and remedies given the Surety under this Agreement shall be and are in addition to, and not in lieu of, any and all other rights, powers, and remedies which the Surety may have or acquire against the Principal and Indemnitors or others whether by the terms of any other agreement or by operation of law or otherwise. If any part of this Agreement shall be void or unenforceable under the laws of any jurisdiction governing its construction, this Agreement shall not be void or vitiated thereby, but shall be construed and enforced with the same effect as though such part was omitted.

## ATTORNEY IN FACT

EIGHTEENTH: The Principal and Indemnitors hereby irrevocably nominate, constitute, appoint and designate the Surety or its designee as their attorney-in-fact with the right, but not the obligation, to exercise all of the rights granted, assigned, and/or transferred to the Surety in this Agreement, and in the name of the Principal and Indemnitors to make, execute, and deliver any and all additional or other assignments, documents or papers deemed necessary and proper by the Surety in order to give full effect not only to the intent and meaning of the within rights granted, assigned and/or transferred, but also to the full protection intended to be herein given to the Surety under all other provisions of this Agreement. The Principal and Indemnitors hereby ratify and affirm all acts and actions taken and done by the Surety or its designee as such attorney-in-fact.

## NOTICE

NINTEENTH: Upon becoming aware of any demand, notice, or proceeding preliminary to fixing any liability with which the Surety may be subsequently charged under any Bond, the Principal and Indemnitors shall immediately notify the Surety in a writing delivered at its Home Office, One Newark Center, 20th Floor, Newark, New Jersey 07102 to the attention of the Claims Department. The Surety reserves the right to change periodically the address for delivery of notification by the Surety's written direction delivered to the Principal and Indemnitors.

Any notification by the Surety to any one individual or entity comprising the Principal and Indemnitors shall constitute notice to the remaining individuals and entities comprising the Principal and Indemnitors.

## TERMINATION

**TWENTIETH:** This Agreement may be terminated by the Principal and Indemnitors upon twenty days' written notice sent by certified or registered mail to the Surety at its home office at One Newark Center, 20th Floor, Newark, New Jersey 07102, but any such notice of termination shall not operate to modify, bar, or discharge the Principal and Indemnitors from their obligations under this Agreement as to the Bonds that may have been theretofore executed or executed pursuant to Consent of Surety issued prior to notice of termination or with respect to Bonds executed after the date of such termination which the Surety has become obligated, prior to such date, to execute. Further, such notice of termination shall operate only with respect to those parties upon whose behalf such notice of termination shall have been given.

## THIRD PARTIES

**TWENTY-FIRST:** In the event that that the Principal and/or an Indemnitor(s) and/or their subsidiaries or affiliates request that a Bond or Bonds be issued on behalf of a third party as principal, the provisions of this Agreement shall apply with equal force to any such Bond or Bonds. This Agreement applies to Bonds executed at the request of the Principal and/or Indemnitor(s) on behalf of any and all of their wholly or partially owned subsidiary companies, subsidiaries, divisions or affiliates, partnerships, joint ventures or co-ventures whether open or silent, jointly, severally, or in any combination with each other, now in existence or which may hereafter be created or acquired.

## AMENDMENTS

**TWENTY-SECOND:** This Agreement may not be changed or modified orally. No change or modification shall be effective unless made by written endorsement executed to form a part hereof.

## SUBSEQUENT EXECUTION

**TWENTY-THIRD:** The Principal and Indemnitors waive any defense that this instrument was executed subsequent to the date of any Bond, admitting and covenanting that such Bond was executed pursuant to the request of the Principal and Indemnitors, and in reliance upon the Principal/Indemnitors' promise to execute this document.

## CROSS-INDEMNITY

**TWENTY-FOURTH:** In the event that more than one party executes this Agreement as "Principal", and the Surety sustains any loss with respect to one or more of the parties identified as "Principal", all parties executing this Agreement as either "Principal", or "Indemnitors", or both, shall be jointly and severally liable to the Surety for such loss in accordance with the terms of this Agreement.

## REPRESENTATIONS

**TWENTY-FIFTH:** The undersigned represent to the Surety that they have carefully read the entire Agreement and that there are no other agreements or understandings which in any way lessen or modify the obligations set forth herein. The undersigned further warrant and represent to the Surety that all necessary action has been taken by them to authorize the execution and delivery of this Agreement.

## UNIFORM ELECTRONIC TRANSACTIONS ACT

**TWENTY-SIXTH:** The undersigned agree that this document and any and all bonds issued by the Surety will be subject to the terms of the Uniform Electronic Transactions Act ("UETA"), to the extent that the UETA has been adopted by the State legislature in the relevant jurisdiction, and any and all substantially similar federal or state legislation designed to regulate electronic commerce.

## COUNTERPARTS

**TWENTY-SEVENTH:** This Agreement may be executed in any number of counterparts, all of which taken together shall constitute the Agreement. This Agreement shall be effective and immediately binding as to each Principal and Indemnitor when that Principal or Indemnitor executes this Agreement, regardless of whether any other Principal or Indemnitor has executed the Agreement or fails or ceases to be bound by the Agreement for any reason. Delivery of a facsimile, electronic or digital copy of this Agreement's signature pages, executed by any Principal or Indemnitor, to the Surety or the Surety's agent or representative shall constitute effective execution and delivery of this Agreement by that Principal or Indemnitor and shall constitute a valid and original signature to this Agreement for all purposes. Principal's and Indemnitors' obligations to Surety shall not be affected by the failure of any Principal or Indemnitor to sign any Bond.

IN WITNESS WHEREOF, we have hereunto set our hands and seals.

**WE HAVE READ THIS INDEMNITY AGREEMENT CAREFULLY. THERE ARE NO SEPARATE AGREEMENTS OR UNDERSTANDINGS WHICH IN ANY WAY LESSEN OUR OBLIGATIONS AS ABOVE SET FORTH.**

**IMPORTANT:** To all indemnitors: please provide your Social Security Number (Individual) or your Federal Tax ID Number (Corporation). The signature of each and every Corporation must be attested to and sealed by the Corporate Secretary or other officer as permitted by the governing documents and/or state law. The signature of each and every LLC, Partnership and/or Trust that is a party to this agreement must be witnessed by at least one disinterested person. The signature of each Individual party does not require a witness except for agreements containing Principals and/or Indemnitors located in the state of Louisiana, which requires the witness of a disinterested person. All signatures must be notarized.

**PRINCIPALS - (Corporate Signatories)**

Attest (intended to be signed under seal):

_____ (Secretary/Assistant Secretary)

**Todd DuChene, Corporate Secretary**
(Print or Type Name)

Core Scientific, Inc.                     (Corporate Name)

By _____ (Signature)                     (Seal)

**Michael Trzupek, CFO**
(Print or Type Name and Title)

Federal Tax ID ▮▮▮▮▮▮▮

### CORPORATE ACKNOWLEDGMENT

STATE OF Washington

COUNTY OF King          s.s.

On This 7th day of September, in the year 20 21 before me personally come(s)

**Michael Trzupek**

to me known who, being by me duly sworn, deposes and says that he/she resides in the city of Redmond, WA

that he/she is the CFO of the Core Scientific, Inc.

the corporation described in and which executed the foregoing instrument; that he/she knows the seal of the said corporation; that the seal affixed

to the said instrument is such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation, and that he/she signed his/her name thereto by like order.

_____
(Signature and title of official taking acknowledgment/ Notary)

3/19/25
My Commission Expires (Date)

DANIELLE ZUCLICH
Notary Public
State of Washington
Commission # 21009984
My Comm. Expires Mar 19, 2025



# Exhibit B

# Bond Execution Summary

*C.A. Shea & Company, Inc.*

| | | | |
|---|---|---|---|
| **Shea Bond #:** | 230118003 | **IRS/Importer #:** | ██████████ |
| **Effective Date** | 01/27/2023 | **Principal:** | Core Scientific, Inc. |
| **Bond Amount:** | $300,000.00 | **Bond Form:** | Importer or Broker §113.62 (Activity Code 1) |
| **Customs Bond #:** | 23C00061A | **Bond Type:** | Continuous |
| **Surety Bond #:** | 0823709 | **Surety Company:** | Harco National Insurance Company (360) |
| | | **Obligee:** | Bureau of Customs and Border Protection |

**Optional Customs Programs utilized by the Principals on this bond:**

| [x] Periodic Monthly Statement | [ ] Reconciliation | [ ] US Virgin Islands |
|---|---|---|

The information below is based on the information our office has on file for each entity listed on this bond. Please note the addresses listed are the mailing addresses on file.

**Principals**

| IRS / Importer # | Shea Data |
|---|---|
| ██████████ | Core Scientific, Inc. |
| | 2407 S Congress Avenue |
| | Suite E-101 |
| | Austin, TX 78704 |

## Claim Contact Information

In the event the surety receives notice of claim against the bond, we will utilize the below contact information for the principal(s).

**86-124383700 - Core Scientific, Inc.**

| | | | |
|---|---|---|---|
| Name: | Kristen Carnevali | Company: | Core Scientific, Inc. |
| Title: | Director Treasury & Risk | Address | 2407 S Congress Ave |
| EMail: | kcarnevali@corescientific.com | | Suite #101 |
| Phone: | (425)442-3027    Fax: | | Austin, TX 78704 |

*Please be sure to review this information and advise if any of the information is incorrect so our office may determine the best method of correcting the information referenced on this summary.*

Exhibit C

DocuSign Envelope ID: C989278C-EE2F-4C1A-A70E-8279A9B92ACE

One Newark Center, 20ᵗʰ floor, Newark, New Jersey 07102-5207 1-800-333-4167 / (973) 624-7200 / WWW.IFIC.COM

**CASH COLLATERAL ESCROW AGREEMENT**

THIS AGREEMENT, made between _____ **CORE SCIENTIFIC INC.** _____

_____

(Insert full name and address of owner of collateral)

(hereinafter called the Grantor) and International Fidelity Insurance Company, One Newark Center, 20ᵗʰ Floor, Newark, New Jersey 07102
Harco National Insurance Company and/or Allegheny Casualty Company, One Newark Center, 20ᵗʰ Floor, Newark, NJ 07102
(hereinafter called the Grantee)

WITNESSETH:
WHEREAS, in consideration of the deposit in escrow of cash collateral security described in the receipt hereto annexed, the Grantee has executed or procured the execution of, or may hereafter execute or procure the execution of, obligations of Guaranty or Suretyship on behalf of

**CORE SCIENTIFIC INC.2800 NORTHUP WAY SUITE 220 BELLEVUE 9800 US WA**

(Insert full name and address of principal for whom Suretyship is desired)

NOW, THEREFORE, in consideration of the premises and other good and valuable consideration, receipt whereof is hereby acknowledged, it is agreed:

FIRST. The said cash shall be deposited in escrow with a trust company or depository designated by the Grantee to indemnify the Grantee:
(a) Against any and all liability, loss, costs, damages, expenses, premiums and attorney's fees arising or incurred in connection with the above captioned bond, or any other bond, recognizance, undertaking or other obligation (all of which, together with any continuations and modifications thereof, are hereinafter referred to as bonds), heretofore and hereafter executed, assumed or procured by the Grantee at the instance or request or on behalf either of Grantor or of the principal above named;
(b) For the payment of all premiums on such bonds;
(c) For the performance of every agreement (including continuations or modifications thereof, with or without the consent of the Grantee) made by the Grantee or by any of the principals in connection with said bonds;
(d) Against any liability, loss, costs, expenses and attorney's fees in connection with any claim to the collateral security by persons claiming adversely to Grantee;
(e) For any previously executed bond(s), or any subsequently executed bond(s), or any renewals or continuations thereof, issued for either or both, the principal or Grantor.

SECOND. The Grantor hereby expressly releases and discharges the Grantee of and from any loss, liability or responsibility for, because or on account of the failure or insolvency of any trust company or depository in which said collateral may be deposited. The Grantor also releases and discharges the Grantee of any liability or responsibility for any loss, expense or damage, of or to the said collateral arising from any other cause whatsoever except acts of neglect of the Grantee.

THIRD. There shall be no duty upon the part of the Grantee to deposit or place the cash collateral in an interest-bearing escrow account or arrangement.

FOURTH. Should the Grantor refuse upon demand to make the said cash payment herein required, the Grantee may summarily apply to a Court of Equity of competent jurisdiction for a decree specifically requiring the said deposit of cash to be made.

FIFTH. The Grantor grants to the Grantee the irrevocable right, power and authority, to at any time or times, in the event that the said Grantee shall incur or sustain or become liable for, or be threatened with, any loss, expense, charge, cost, liability or damage by reason of the execution of any of the aforesaid bonds, undertakings, or if the premiums thereon shall not have been paid, without further demand or notice and without advertisement, to withdraw the amount then in the escrow account and apply same to such liability, the Grantor hereby ratifying and confirming any action of the Grantee in connection therewith. All legal or other costs, charges and expenses for withdrawal from the escrow account are to be deducted from the proceeds of the escrow account and the residue held in escrow as security for, and applied to the liability arising on any of the said bonds or undertakings. If there be any deficiency, the Grantor shall forthwith reimburse the Grantee for any unsatisfied loss or liability.

SIXTH. Upon full compliance with and fulfillment of all the terms and conditions of all of the said bonds or undertakings and the agreements contained in or accompanying any applications pursuant to which they are or may have been executed, the conditions required for release of the collateral from escrow shall be deemed satisfied and the Grantee will return to the Grantor the said cash or so much thereof then remaining, which the Grantor hereby agrees to accept in full accord and satisfaction of and for the deposit herein made. Until and unless the conditions required for release of escrow are met, the Grantor's interest in the proceeds of the escrow account shall be contingent only.

SEVENTH. Delivery by the Grantee of collateral or any part thereof to any one or more depositors shall be deemed delivery to all depositors. No interest will be paid by the Grantee on any funds deposited with or held as collateral. No right or interest of the Grantor under this agreement shall be assigned without the written consent of the Grantee endorsed hereon by an officer of the Grantee at its Home Office, One Newark Center, 20ᵗʰ Floor, Newark, New Jersey 07102.

EIGHTH. Grantor hereby grants to Grantee, to secure the payment and performance in full of all of Grantor's obligations under the Agreement, a continuing security interest in the cash collateral that has been deposited with Grantee and all interest accruing thereon.

NINTH. On December 22,2022, the United States Bankruptcy Court for the Southern District of Texas, in the case captioned In re Core Scientific, Inc., et al., Debtors, Case No. 22-90341 (DRJ) (the "Bankruptcy Case"), entered a Final Order authorizing Debtors, including the Grantor herein, to continue their surety bond program and granting related relief (the "Surety Bond Program Order"). In accordance with the Surety Bond Program Order, the Debtors are authorized to, among other things, obtain new surety bonds and to take all actions in connection therewith, in the ordinary course of business. Grantor hereby acknowledges, agrees and represents that entry into this Cash Collateral Escrow Agreement, and providing the cash collateral to the Grantee as set forth herein, is a transaction in the ordinary course of business and authorized under the Surety Bond Program Order. It is further acknowledged and agreed that the deposit by the Grantor of the cash collateral escrow funds is part of a contemporaneous exchange for value and is not given in payment of any antecedent debt. The Grantor will not object to the entry of any order necessary to vacate or modify any automatic stay in the Bankruptcy Case to enable the Grantee to recover the proceeds of the escrow account as set forth herein and under applicable law.

It is agreed that this instrument shall inure to the benefit of and be binding upon the Grantor and the Grantee, his, their and its respective heirs, executors, administrators, successors and assigns.

SIGNED, SEALED and DATED this 27TH day of JANUARY 2023

CORE SCIENTIFIC INC _____ Seal)

Signature: _Kristen Carnevali_

Name & Title: Kristen Carnevali, Director of Treasury & Risk

INTERNATIONAL FIDELITY INSURANCE COMPANY
Surety

By _____ / Assistant Secretary
Vincent Leonetti

HARCO NATIONAL INSURANCE COMPANY
Surety

By _____ / Assistant Secretary
Vincent Leonetti

DocuSign Envelope ID: C989278C-EE2F-4C1A-A70E-8279A9B92ACE

ALLEGHENY CASUALTY COMPANY
Surety

By _____  /  Assistant Secretary
Vincent Leonetti

**IMPORTANT:**  No collateral will be returned to the Grantor (if entitled thereto) except upon the surrender of this instrument properly endorsed.

### RECEIPT FOR COLLATERAL

RECEIVED from the Grantor named in the within agreement the following:

**PRINCIPAL CODE 403852**

**WIRE TRANSFER REC'D:**   01/27/2023
**BB&T BANK- TRUIST BANK**
**AMOUNT: $300,000.00**
                            **ORIGINATOR:   CORE SCIENTIFIC INC.**

As collateral security subject to all and singular, the terms of the within agreement.

DATED this 27TH of _JANUARY 2023_

INTERNATIONAL FIDELITY INSURANCE COMPANY
Surety

By _____  /  Assistant Secretary
Vincent Leonetti

HARCO NATIONAL INSURANCE COMPANY
Surety

By _____  /  Assistant Secretary
Vincent Leonetti

ALLEGHENY CASUALTY COMPANY
Surety

By _____  /  Assistant Secretary
Vincent Leonetti

### RETURN OF COLLATERAL

RECEIVED from International Fidelity Insurance Company, Harco National Insurance Company and/or Allegheny Casualty Company

In full return of the collateral security deposited under the terms of within agreement and the undersigned hereby releases International Fidelity Insurance Company, Harco National Insurance Company and Allegheny Casualty Company from any and all liability by reason of the said deposit and agreement.

DATED this ____ day of _____, 20____

Witness:

_____

_____  (Seal)