### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| **CORE SCIENTIFIC, INC.,** *et al.,* | § | Case No. 22-90341 (CML) |
| | § | |
| | § | **(Jointly Administered)** |
| Debtors.[1] | § | |
| | § | |

### MOTION OF THE DEBTORS FOR ENTRY OF
### AN ORDER FURTHER EXTENDING EXCLUSIVE PERIODS
### PURSUANT TO SECTION 1121(d) OF THE BANKRUPTCY CODE

> **IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING, SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS PLEADING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT WITHIN TWENTY-ONE (21) DAYS FROM THE DATE YOU WERE SERVED WITH THIS PLEADING. YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

Core Scientific, Inc. and its debtor affiliates in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"), file this motion (the "**Motion**") for entry of an order extending the period during which the Debtors have the exclusive right to (i) file a chapter 11 plan (the "**Exclusive Filing Period**") and (ii) solicit acceptances thereof (the "**Exclusive Solicitation Period**" and together with the Exclusive Filing Period, the "**Exclusive Periods**"), in each case by 60 days, through and including

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions VII, LLC (3198). The Debtors' corporate headquarters is 210 Barton Springs Road, Suite 300, Austin, Texas 78704. The Debtors' service address is 2407 S. Congress Ave, Suite E-101, Austin, Texas 78704.

February 16, 2024 and April 16, 2024, respectively.   In support of the Motion, the Debtors respectfully represent as follows:

### **Preliminary Statement**

1.      Since filing their Third Exclusivity Motion (as defined below), the Debtors have continued to advance these chapter 11 cases and have worked diligently towards confirmation of a value-maximizing chapter 11 plan.  The Debtors' chapter 11 plan – the *Third Amended Joint Chapter 11 Plan of Core Scientific, Inc. and its Affiliated Debtors* (Docket No. 1438) (as may be amended, supplemented, or otherwise modified from time to time, the "**Plan**")[2] –was largely developed with the assistance of mediation conducted before the Honorable Judge Marvin Isgur and reflects a deal among most of the Debtors' key stakeholder groups, with the exception of the Creditors' Committee and the Debtors' largest unsecured creditors (and Replacement DIP Lender), B. Riley Commercial Capital, LLC and BRF Finance Co., LLC (together, "**B. Riley**").

2.      As further discussed below, after recent additional mediation sessions with Judge Isgur, the Debtors are close to reaching a deal with the RSA Parties (as defined below), the Creditors' Committee and its members, and B. Riley with respect to the terms of a global settlement of Plan issues (the "**GUC Settlement**").  The GUC Settlement would represent a significant milestone in these chapter 11 cases, as it would enable the Debtors to proceed towards confirmation with the support of all of the Debtors' key stakeholder groups.  To provide additional time to finalize and document the GUC Settlement and update the Plan, the Debtors intend to adjourn the confirmation hearing (currently scheduled for December 22, 2023) to January 2024 (subject to the Court's availability).

---

[2]  All terms capitalized but not defined herein shall have the meanings ascribed to such terms in the Plan.

3.     To date the Debtors have used their Exclusive Periods to advance the Chapter 11 Cases.  Since filing the Third Exclusivity Motion, the Debtors (i) finalized and executed that certain Restructuring Support Agreement by and among Debtors, members of the Ad Hoc Noteholder Group, and the Equity Committee and its members (excluding Foundry Digital LLC) (Docket No. 1440) (the "**RSA**", and the parties thereto, the "**RSA Parties**"); (ii) obtained conditional approval of the *Disclosure Statement for Third Amended Joint Chapter 11 Plan of Core Scientific, Inc. and its Debtor Affiliates* (Docket No. 1439) (as may be amended, supplemented, or otherwise modified from time to time, the "**Disclosure Statement**");[3] (iii) obtained approval for solicitation of the Plan; (iv) obtained approval to enter into (and entered into) the Backstop Commitment Letter,[4] which secured commitments to backstop $37 million of the Rights Offering with 31 separate parties; (v) commenced solicitation on the Plan; (vi) launched a $55 million rights offering; and (vii) negotiated and filed the Plan Supplement documents (although the Debtors and RSA Parties are continuing to negotiate and finalize such documents).

4.     In addition to these achievements, the Debtors have taken a number of other critical steps to maximize the value of their estates for the benefit of their stakeholders.  In particular, the Debtors finalized a number of value accretive transactions and settlements and filed motions seeking approval of such transactions, including (i) a motion to assume the Dalton

---

[3] *Order (I) Scheduling Combined Hearing on (A) Adequacy of Disclosure Statement and (B) Confirmation of Plan; (II) Conditionally Approving Disclosure Statement and Form and Manner of Notice of Conditional Disclosure Statement Hearing; (III) Establishing Solicitation and Voting Procedures; (IV) Establishing Notice and Objection Procedures for Confirmation of Proposed Plan; (V) Approving Notice Procedures for Assumption or Rejection of Executory Contracts and Unexpired Leases; (VI) Approving Notice Procedures for Reinstatement of Claims; (VII) Establishing Rights Offering Procedures; and (VIII) Granting Related Relief* (Docket No. 1447) (including any exhibits and schedules thereto and as may be modified, amended or supplemented, the "**Disclosure Statement Order**").

[4] *Order (I) Authorizing Entry Into Backstop Commitment Letter, (II) Approving Performance of Obligations Thereunder, and (III) Granting Related Relief*, filed November 17, 2023 (Docket No. 1444) (the "**Backstop Order**").

Agreements;[5] (ii) a motion to enter into an asset purchase agreement with Bitmain Technologies Delaware Limited;[6] and (iii) settlements with various other parties of which the Debtors intend to seek Court approval in the coming days.  The Debtors also took significant steps in the claims reconciliation process, as described further below.  These developments will minimize the amount of disputed claims remaining as of the Effective Date and provide greater certainty to stakeholders regarding the timing and amount of their distributions under the Plan.

5.      Notwithstanding the Debtors' significant progress since filing the Third Exclusivity Motion, additional work remains, including finalizing and documenting the GUC Settlement, completing solicitation of the Plan, and obtaining confirmation thereof.  In light of the substantial progress made in these chapter 11 cases, the support by most of the key stakeholder groups for the Plan, and progress towards the GUC Settlement, the Debtors submit that ample cause exists for the requested extension of the Exclusive Periods.  As such, a further extension of the Debtors' Exclusive Periods is appropriate and necessary.

6.      Accordingly, for the reasons set forth herein, the Debtors request that the Court extend the Exclusive Periods, in each case, by 60 days, without prejudice to the Debtors' rights to seek a further extension.[7]

---

[5] *Debtors' Emergency Motion for Entry of an Order (I) Authorizing Assumption and Performance of the Legacy Dalton Agreements, as Amended by the Dalton Settlement Agreement and (II) Granting Related Relief*, filed December 6, 2023 (Docket No. 1515) (the "**Dalton Settlement Agreement**").

[6] *Debtors' Motion for Entry of an Order (I) Authorizing Core Scientific, Inc.'s Entry Into Asset Purchase Agreement And (II) Granting Related Relief*, filed on December 1, 2023 (Docket No. 1497) (the "**Bitmain Transaction**").

[7] Although the Debtors have not filed an accompanying declaration with this Motion, to the extent the Motion is contested or the Court otherwise deems it appropriate, the Debtors may file an accompanying declaration(s) and make such parties available for cross examination.

## Relief Requested

7.     Pursuant to section 1121(d) of title 11 of the United States Code (the "**Bankruptcy Code**"), the Debtors request entry of an order extending the Exclusive Filing Period and the Exclusive Solicitation Period, in each case, by 60 days, through and including February 16, 2024 and April 16, 2024 respectively, without prejudice to the Debtors' right to request further extensions of such period in accordance with section 1121(d) of the Bankruptcy Code.

8.     A proposed form of order granting the relief requested herein is annexed hereto as **Exhibit A** (the "**Proposed Order**").

## Jurisdiction and Venue

9.     The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

10.     On December 21, 2022 (the "**Petition Date**"), the Debtors each filed with this Court a voluntary case under chapter 11 of the Bankruptcy Code.  The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

11.     The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 1015-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Local Rules**").

12.     On January 9, 2023, the United States Trustee for Region 7 (the "**U.S. Trustee**") appointed the Creditors' Committee in these chapter 11 cases pursuant to section 1102 of the Bankruptcy Code.  On March 23, 2023, the U.S. Trustee appointed the Equity Committee in these chapter 11 cases pursuant to section 1102 of the Bankruptcy Code.  No trustee or examiner has been appointed in these chapter 11 cases.

13.     On April 10, 2023, the Debtors filed the *Motion of the Debtors for Order Extending Exclusive Periods Pursuant to Section 1121(D) of the Bankruptcy Code* [Docket No 773] (the "**First Exclusivity Motion**").  On June 13, 2023, the Court entered the *Order Pursuant to Section 1121(d) of the Bankruptcy Code Extending Exclusive Periods*, extending (i) the Exclusive Filing Period through and including July 19, 2023 and (ii) the Exclusive Solicitation Period through and including September 17, 2023, in each case, without prejudice to the Debtors' rights to seek additional extensions of such periods [Docket No. 962] (the "**First Exclusivity Order**").

14.     On July 18, 2023, the Debtors filed the filed the *Motion of Debtors for Entry of an Order Further Extending Exclusive Periods Pursuant to Section 1121(D) of the Bankruptcy Code* [Docket No. 1065] (the "**Second Exclusivity Motion**").  On October 18, 2023, the Court entered the *Order Pursuant to Section 1121(d) of the Bankruptcy Code Further Extending Exclusive Periods*, extending: (i) the Exclusive Filing Period through and including October 17, 2023 and (ii) the Exclusive Solicitation Period through and including December 18, 2023, in each case, without prejudice to the Debtors' rights to seek additional extensions of such periods [Docket No. 1337] (the "**Second Exclusivity Order**").

15.     On October 17, 2023, the Debtors filed the *Motion of the Debtors for Order Further Extending Exclusive Periods Pursuant to Section 1121(D) of the Bankruptcy Code*

[Docket No 1393] (the "**Third Exclusivity Motion**").  On November 9, 2023, the Court entered the *Order Pursuant to Section 1121(d) of the Bankruptcy Code Further Extending Exclusive Periods*, extending (i) the Exclusive Filing Period through and including December 16, 2023 and (ii) the Exclusive Solicitation Period through and including February 16, 2024, in each case, without prejudice to the Debtors' rights to seek additional extensions of such periods [Docket No. 1396] (the "**Third Exclusivity Order**").

16.     On November 17, 2023 the Court entered the Disclosure Statement Order, which, among other things, conditionally approved the Disclosure Statement, authorized the Debtors to commence solicitation of votes on the Plan, and scheduled the hearing for confirmation of the Plan for December 22, 2023 at 10:00 a.m. (prevailing Central Time). Following the entry of the Disclosure Statement Order, on November 17, 2023, the Debtors, through Stretto, Inc., the Debtors' Voting Agent, commenced solicitation of the Plan and began mailing Solicitation Packages, Notices of Non-Voting Status, and Release Opt Out Forms in accordance with the Disclosure Statement Order.

17.     As a result of the good faith negotiations, with the assistance of the mediator, if and when the GUC Settlement is finalized, the Debtors believe that all of the five key stakeholder groups (the Ad Hoc Noteholder Group, the Equipment Lenders, the Equity Committee and its members (excluding Foundry), B. Riley, and the Creditors' Committee) will support the Plan.  The Debtors and the key stakeholder groups are now working to finalize and document the GUC Settlement, and the Debtors intend to file and solicit votes on an amended Plan and move forward with confirmation of the Plan in January 2024.

### The Court Should Grant the Relief Requested

18.     Section 1121(b) of the Bankruptcy Code provides for an initial period of 120-days after the commencement of a chapter 11 case during which a debtor has the exclusive right to file a chapter 11 plan.  11 U.S.C. § 1121(b).  Section 1121(c)(3) of the Bankruptcy Code provides that if a debtor files a plan within the 120-day Exclusive Filing Period, it has an exclusive period of 180-days after the commencement of the chapter 11 case to obtain acceptances of its plan.  *Id.* at § 1121(c)(3).  Pursuant to the Third Exclusivity Order, the Debtors' extended Exclusive Filing Period and Exclusive Solicitation Period would expire after December 16, 2023 and February 16, 2024, respectively.  *Third Exclusivity Order* ¶¶ 1–2.

19.     Under section 1121(d) of the Bankruptcy Code, the Court may extend the Exclusive Periods for cause.  11 U.S.C. § 1121(d) ("[O]n request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section.").

20.     The Bankruptcy Code neither defines the term "cause" for purposes of section 1121(d) nor establishes formal criteria for an extension.  The legislative history of section 1121 of the Bankruptcy Code indicates, however, that it is intended to be a flexible standard to balance the competing interests of a debtor and its creditors.  *See* H.R. Rep. No. 95–595, at 231– 32 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963 (noting that Congress intended to give Bankruptcy Courts great flexibility to protect a debtor's interests by allowing a debtor an unimpeded opportunity to negotiate settlement of debts without interference from other parties in interest); *In re Timbers of Inwood Forest Assoc., Ltd.*, 808 F.2d 363, 372 (5th Cir. 1987) ("Any bankruptcy court involved in an assessment of whether 'cause' exists should be mindful of the

legislative goal behind § 1121."); *In re Mirant Corp.*, No. 4-04-CV-476-A, 2004 WL 2250986, at *2 (N.D. Tex. Sept. 30, 2004) ("In virtually every case where an extension has been granted, the debtor showed substantial progress had been made in negotiations toward reorganization.").

21.     The broad discretion conferred on the court in these circumstances enables the court to consider a variety of factors to assess the totality of circumstances in each case.  *In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006) (identifying factors courts consider in determining whether to extend exclusivity); *In re Washington-St. Tammany Elec. Co-op., Inc.*, 97 B.R. 852, 854 (E.D. La. 1989) (noting that the decision to extend exclusivity "rests with the discretion of the Court"); *In re Hoffinger Indus., Inc.*, 292 B.R. 639, 643–44 (B.A.P. 8th Cir. 2003) (same); *In re Express One Int'l, Inc.*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996) (same).

22.     Courts in this district and others have identified the *Adelphia* factors as factors to consider in determining whether cause exists to extend exclusivity.  *See, e.g.*, *In re New Millennium Mgmt., LLC*, No. 13-35719-H3-11, 2014 WL 792115, at *6 (Bankr. S.D. Tex. Feb. 25, 2014); *see also In re Borders Grp., Inc.*, 460 B.R. 818, 822 (Bankr. S.D.N.Y. 2011) (evaluating the factors set forth in *Adelphia* to hold that debtor established cause to extend exclusivity).  These non-exclusive factors include:

> (i)     the size and complexity of the debtor's case;
>
> (ii)    the necessity for sufficient time to permit the debtor to negotiate a chapter 11 plan and prepare adequate information;
>
> (iii)   the existence of good faith progress towards reorganization;
>
> (iv)    the fact that the debtor is paying its bills as they become due;
>
> (v)     whether the debtor has demonstrated reasonable prospects for filing a viable plan;
>
> (vi)    whether the debtor has made progress in negotiations with its creditors;

(vii)    whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and

(viii)   whether an unresolved contingency exists.

*See, e.g.*, *Millennium Mgmt.*, 2014 WL 792115, at *6; *see also In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006) (noting that the factors listed above are "objective factors which courts historically have considered in making determinations of this character").

23.    Not all factors are relevant to every case, and courts tend to use a relevant subset of the above factors in determining whether cause exists to grant an exclusivity extension in a particular chapter 11 case.  *See, e.g.*, *In re Hoffinger Indus., Inc.*, 292 B.R. 639, 644 (B.A.P. 8th Cir. 2003) ("It is within the discretion of the bankruptcy court to decide which factors are relevant and give the appropriate weight to each."); *In re Serv. Merch. Co., Inc.*, 256 B.R. 744, 751–54 (Bankr. M.D. Tenn. 2000) (finding cause to extend where the debtors established six of the aforementioned factors); *In re Express One Int'l, Inc.*, 194 B.R. 98, 101 (Bankr. E.D. Tex. 1996) (identifying four of the factors as relevant in determining whether "cause" existed to extend exclusivity); *see also In re Dow Corning Corp.*, 208 B.R. 661, 670 (Bankr. E.D. Mich. 1997) ("When the Court is determining whether to terminate a debtor's exclusivity, the primary consideration should be whether or not doing so would facilitate moving the case forward.  And that is a practical call that can override a mere toting up of the factors.").

24.    Indeed, courts in this district have recently granted fourth extensions of Exclusive Periods.  *See, e.g.*, *In re Honx, Inc.*, No. 22-90035 (MI) (Bankr. S.D. Tex. August 21, 2023) (Docket No. 945); *In re Brazos Electric Power Cooperative, Inc.*, No. 21-30725 (DRJ) (Bankr. S.D. Tex. August 17, 2022) (Docket No. 2133); *In re Bouchard Transportation Co., Inc.*, No. 20-34682 (DRJ) (Bankr. S.D. Tex. August 23, 2021) (Docket No. 1288).

**Cause Exists to Further Extend Exclusive Periods**

25.     As set forth below, a further extension of the Exclusive Periods by 60 days is appropriate, in the best interest of the Debtors' stakeholders, and consistent with the intent and purpose of chapter 11.  Further extending the Debtors' Exclusive Periods will enable the Debtors to pursue confirmation of a chapter 11 plan that maximizes the value of the Debtors' estates for the benefit of all stakeholders, without interruption or distraction. Accordingly, application of the relevant factors set forth above to the facts of these chapter 11 cases demonstrates that ample cause exists to grant the reasonable extension of the Exclusive Periods requested herein.

**A.  The Debtors Have Made Good Faith Progress Toward Reorganization and Substantial Progress Toward Confirmation of the Plan**

26.     The Debtors have made significant progress toward confirming a chapter 11 plan since filing the Third Exclusivity Motion, as summarized below.

**i.     The Debtors Executed the RSA with the RSA Parties**

27.     On November 16, 2023, the Debtors executed the RSA with the Equity Committee and the Ad Hoc Noteholder Group.  The settlements embodied in the RSA resolved a number of complex issues, including (among others) the Enterprise Value of the Reorganized Debtors, the size of the Convertible Noteholders' Allowed Claims (including resolution of the dispute on the validity of the 2X Amounts, as further described in the Disclosure Statement), the treatment of the Convertible Notes Secured Claims, the treatment of Existing Common Interests, and the terms of exit capital to fund the Plan.

**ii.    The Debtors Obtained Conditional Approval of the Disclosure Statement, Scheduled a Hearing to Confirm the Plan, and Commenced Solicitation of the Plan**

28.     On November 17, 2023, the Debtors commenced solicitation on the Plan and intend to continue solicitation of the amended Plan, move forward with confirmation in

11

January 2024, and emerge from chapter 11 later that month. At this critical juncture in the chapter 11 cases, it is imperative that the Debtors' Exclusive Periods are extended.  Enabling another party to file an alternative plan while the Debtors are soliciting their Plan will cause confusion to parties entitled to vote on the Plan.  The Court should not permit the extraordinary efforts of the Debtors and their major economic stakeholders in formulating and reaching a consensus on the Plan to be subverted by a competing plan or plans before giving the Debtors a reasonable opportunity to confirm and consummate the Plan.

### iii.    The Debtors Negotiated and Filed the Plan Supplement Documents

29.    The Debtors also negotiated and filed drafts of the Plan Supplement documents.[8]  The Plan Supplement documents include: (i) the New Corporate Governance Documents solely with respect to Reorganized Parent; (ii) the New Secured Convertible Notes Indenture; (iii) the New Secured Notes Indenture; (iv) the Contingent Payment Obligations Agreement; (v) the New Miner Equipment Lender Debt Documents; (vi) the Exit Facility Credit Agreement; (vii) the New Warrants Agreement; (viii) the New Intercreditor Agreements; (ix) to the extent known, information required to be disclosed in accordance with section 1129(a)(5) of the Bankruptcy Code; (x) the Restructuring Transactions Exhibit; (xi) the Schedule of Retained Causes of Action; (xii) the Schedule of Rejected Contracts; (xiii) the Schedule of Assume Contracts; (xiv) the Schedule of Allowed General Unsecured Claims; and (xv) any form Registration Rights Agreement.

---

[8] *Notice of Filing of Plan Supplement in Connection With Third Amended Joint Chapter 11 Plan of Core Scientific, Inc. and its Affiliated Debtors,* filed December 8, 2023 (Docket No. 1528) and *Notice of Filing of Amended Plan Supplement in Connection With Third Amended Joint Chapter 11 Plan of Core Scientific, Inc. and its Affiliated Debtors*, filed December 11, 2023 (Docket No. 1536) (collectively, the "**Plan Supplement**").

30.     Each of the documents in the Plan Supplement remains subject to (i) further review, negotiations, and modifications and (ii) final documentation in a manner consistent with the Plan and the Restructuring Support Agreement. The Debtors continue to engage in extensive negotiations with the RSA Parties and other key stakeholder groups regarding the Plan Supplement documents.

### iv.     The Debtors Secured Commitments to Backstop $37 Million of the Rights Offering, Launched the Rights Offering, and Expect to Enter Into a Commitment Letter for an Exit Facility

31.     On November 20, 2023, the Debtors launched the Rights Offering seeking to raise $55 million.[9]  In relation thereto, pursuant to the Backstop Commitment Letter, certain parties, primarily consisting of Holders of Existing Common Interests, have committed to backstop $37.1 million of the Rights Offering.  In addition, the Debtors and the Ad Hoc Noteholder Group are close to finalizing a commitment letter pursuant to which members of the Ad Hoc Noteholder Group will provide an $80 million exit facility (the "**Exit Facilit**y"), including $40 million in new money term loan commitments, with up to $20 million available upon emergence.  Through the combination of funds from the Rights Offering and the Exit Facility, the Debtors believe they will have more than enough capital commitments in place to consummate the Plan and satisfy all capital needs required under the Debtors' Business Plan.

### v.     The Debtors have Significantly Progressed the Claims Reconciliation Process

32.     In furtherance of the Debtors' goal of resolving as many disputed claims as possible prior to emergence and maximizing distributions to creditors and equity holders on the Effective Date, the Debtors have made significant progress in the claims reconciliation process.

---

[9] *See Notice of (I) Commencement of Rights Offering and (II) Filing of Revised Rights Offering Procedures*, filed November 21, 2023 (Docket No. 1457).

The Debtors have (i) filed a number of objections to claims;[10] (ii) resolved issues related to the securities class action claimants during the hearing on December 6, 2023;[11] (iii) filed a motion to reclassify Claims pursuant to section 510(b) of the Bankruptcy Code;[12] (iv) advanced litigation with a number of parties including Sphere and Harlin Dean;[13] and (v) filed a motion to establish maximum claim amounts for calculation and distribution purposes.[14]

### vi. The Debtors Executed Value-Maximizing Settlements and Agreements with Claimants and Other Parties

33.    In addition to the GUC settlement, the Debtors have continued to negotiate with other parties, and (i) filed a motion to reflect the agreed terms of the Dalton Settlement Agreement, (ii) filed a motion seeking the Court's approval to enter the Bitmain Transaction, and (iii) have reached other claims settlements of which the Debtors intend to seek Court approval in the near term. These agreements support the Debtors' Business Plan and efforts towards reorganization.

---

[10] *See Debtors' First Omnibus Claims Objection to Certain (I) Amended Claims; (II) Exact Duplicative Claims; (III) Beneficial Bondholder Duplicative Claims; (IV) Multiple Debtor Claims; (V) Wrong Debtor Claims; (VI) Late Filed Claims; (VII) Insufficient Documentation Claims;(VIII) Equity Claims; and (IX) Reclassified Claims (Based on Priority)*, filed November 22, 2023 (Docket No. 1460).

[11] *See Order*, filed December 6, 2023 (Docket No. 1522).

[12] *See Debtors' Motion for Entry of an Order Classifying Certain Claims as Section 510(B) Claims (Class 11) Under Debtors' Proposed Joint Chapter 11 Plan of Reorganization*, filed November 24, 2023 (Docket No. 1463).

[13] *See Debtors' Opposition to Claimant Harlin Dean's Motion for Summary Judgement*, filed November 9, 2023 (Docket No. 1397).

[14] *See Debtors' Emergency Motion for Entry of an Order Establishing Disputed Claim Amounts for Calculation and Distribution Purposes Under Debtors' Proposed Joint Chapter 11 Plan of Reorganization,* filed December 7, 2023 (Docket No. 1525).

### vii. The Debtors Are Close to Finalizing the GUC Settlement with the Key Stakeholder Group

34.     On December 5, 2023, (i) the RSA Parties, (ii) the Creditors' Committee, and (iii) B. Riley began participating in further Mediation before Judge Isgur in an effort to resolve the disputes between such parties with respect to the Plan.  Following good faith negotiations as part of the continued Mediation, the RSA Parties, the Creditors' Committee, and B. Riley are close to reaching a global settlement with respect to the terms of the GUC Settlement and are also working to document the GUC Settlement.

### B. These Chapter 11 Cases are Large and Complex

35.     The scale and complexity of the Debtors' business and industry, which require the Debtors to navigate complex issues in their reorganization efforts, support the need for the extension of the Exclusive Periods.  This factor weighs heavily in favor of extending exclusivity.  *See In re Texaco Inc.*, 76 B.R. 322, 326 (Bankr. S.D.N.Y. 1987) ("The large size of a debtor and the consequent difficulty in formulating a plan of reorganization for a huge debtor with a complex financial structure are important factors which generally constitute cause for extending the exclusivity periods.").  The legislative history of section 1121 provides that "if an unusually large company were to seek reorganization under chapter 11, the court would probably need to extend the time in order to allow the debtor to reach an agreement."  H.R. Rep. No. 95-595, at 232 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963.

36.     These chapter 11 cases are undoubtedly complex.  The Debtors are one of the largest blockchain infrastructure, hosting provider, and digital asset mining companies in North America.  Bros. Decl.[15] ¶ 5.  The Debtors own and/or manage eight data centers (seven of which

---

[15] *Declaration of Michael Bros in Support of the Debtors' Chapter 11 Petitions and First Day Relief*, dated December 21, 2022 [Docket No. 5] (the "**Bros Declaration**").

are operational) that span five states and can collectively utilize up to approximately 814 megawatts (MW) of power.  *Id.*  The Debtors use these data centers to mine digital assets for their own account, as well as host miners for third-party customers.  *Id.*  Importantly, the Debtors employ approximately 230 full-time employees, along with the services of independent contractors and temporary workers.

37.     Further, the Debtors have a complex capital structure, with over $1 billion in total debt, including the Convertible Notes, equipment financings and leases, several M&M lien claims, the B. Riley Unsecured Claims, and various other unsecured claims.  The Debtors' creditors have different legal rights and priorities and are secured by different collateral packages. These varying rights and legal positions add complexity to negotiations and have required a herculean effort to build consensus.  Moreover, the Debtors operate in the inherently complex cryptocurrency industry.

38.     Accordingly, the Debtors' size, the complexity of these chapter 11 cases, and the breadth of financial and legal issues involved therein warrant the requested extension of the Exclusive Periods.

**C.     The Debtors are Making Administrative Expense Payments and Will Continue to Do So**

39.     Courts considering an extension of exclusivity also assess a debtor's liquidity.  *See In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006) (listing "the fact that the debtor is paying its bills as they become due" as a factor courts consider when analyzing exclusivity).  Here, the Debtors are paying administrative expenses as they come due and will continue to do so.  Furthermore, the Debtors have outperformed every budget they have prepared to date and have generated positive cash flow since the Petition Date.  As a result, the Debtors have repaid a total of $21.4 million in DIP principal, while still having $54 million of

16

liquidity as of November 30, 2023[16] and access to an incremental $35 million in DIP financing under the Replacement DIP Facility (if necessary). The Debtors continue to monitor their liquidity position closely and are confident that sufficient cash flow and liquidity will be available to satisfy their postpetition payment obligations during the requested extension of the Exclusive Periods.

**D.     An Extension of the Exclusive Periods Will Not Prejudice Creditors**

40.     An extension of the Exclusive Periods will not prejudice any of the Debtors' stakeholders. On the contrary, an extension of the Exclusive Periods will enable the Debtors to finalize and document the GUC Settlement, continue solicitation of the Plan supported by all of the Debtors' key stakeholder groups, and move forward with confirmation and implementation of the Plan in January 2024. To terminate exclusivity now and allow for a competing plan process at this juncture in these chapter 11 cases would jeopardize or otherwise undermine the Debtors' efforts to date and adversely impact their ability to achieve a consensual chapter 11 plan. Thus, the Debtors believe that an extension of the Exclusive Periods is in the best interest of the Debtors and their stakeholders.

41.     Accordingly, for the reasons set forth herein, the Debtors submit that "cause" exists to further extend the Exclusive Periods and respectfully request that the Court grant the relief requested herein.

<u>**Notice**</u>

42.     Notice of this Motion will be served on any party entitled to notice pursuant to Bankruptcy Rule 2002 and any other party entitled to notice pursuant to Bankruptcy Local Rule 9013-1(d).

---

**<u>No Prior Request</u>**

43.     Except for the First Exclusivity Motion, the Second Exclusivity Motion, and the Third Exclusivity Motion, no previous request for the relief sought herein has been made by the Debtors to this or any other court.

[*Remainder of Page Intentionally Left Blank*]

**WHEREFORE**, the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated:  December 15, 2023
       Houston, Texas

                         Respectfully submitted,

                         */s/ Alfredo R. Pérez*
                         WEIL, GOTSHAL & MANGES LLP
                         Alfredo R. Pérez (15776275)
                         Clifford W. Carlson (24090024)
                         700 Louisiana Street, Suite 1700
                         Houston, Texas  77002
                         Telephone: (713) 546-5000
                         Facsimile:  (713) 224-9511
                         Email:  alfredo.perez@weil.com
                                    clifford.carlson@weil.com

                         -and-

                         WEIL, GOTSHAL & MANGES LLP
                         Ray C. Schrock (admitted *pro hac vice*)
                         Ronit J. Berkovich (admitted *pro hac vice*)
                         767 Fifth Avenue
                         New York, New York  10153
                         Telephone:  (212) 310-8000
                         Facsimile:  (212) 310-8007
                         Email: ray.schrock@weil.com
                                   ronit.berkovich@weil.com

                         *Attorneys for Debtors*
                         *and Debtors in Possession*

**<u>Certificate of Service</u>**

I hereby certify that on December 15, 2023 a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

      */s/ Alfredo R. Pérez*

Alfredo R. Pérez