**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| | § | |
| In re: | § | **Chapter 11** |
| | § | |
| **CORE SCIENTIFIC, INC., *et al.*,** | § | **Case No. 22-90341 (CML)** |
| | § | |
| | § | **(Jointly Administered)** |
| Debtors.[1] | § | |
| | § | |

**DEBTORS' MOTION
FOR ENTRY OF AN ORDER (I) AUTHORIZING
(A) ASSUMPTION OF MCCARTHY CONTRACTS, AS AMENDED IN
ACCORDANCE WITH THE SETTLEMENT AGREEMENT AND (B) ENTRY
INTO THE SETTLEMENT AGREEMENT, AND (II) GRANTING RELATED RELIEF**

---

**IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE ELECTRONICALLY AT HTTPS://ECF.TXSB.USCOURTS.GOV/ WITHIN TWENTY-ONE DAYS FROM THE DATE THIS MOTION WAS FILED. IF YOU DO NOT HAVE ELECTRONIC FILING PRIVILEGES, YOU MUST FILE A WRITTEN OBJECTION THAT IS ACTUALLY RECEIVED BY THE CLERK WITHIN TWENTY-ONE DAYS FROM THE DATE THIS MOTION WAS FILED. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

---

Core Scientific, Inc. ("**Core**") and its debtor affiliates in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, with Core, the "**Debtors**"), hereby submit this motion (the "**Motion**"). Pursuant to sections 363 and 365 of chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 9013–1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions, VII, LLC (3198). The Debtors' corporate headquarters is 210 Barton Springs Road, Suite 300, Austin, Texas 78704. The Debtors' service address is 2407 S. Congress Ave, Suite E-101, Austin, TX 78704.

**Local Rules**"), the Debtors request entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"), (i) authorizing (a) the Debtors' assumption of the McCarthy Contracts (as defined below) between the Debtors and McCarthy Building Companies, Inc. ("**McCarthy**"), as amended in accordance with that certain *Settlement Agreement*, dated as of December 11, 2023, annexed to the Proposed Order as **Exhibit 1** (the "**Settlement Agreement**"), by and among Core, McCarthy, and Humphrey & Associates, Inc. ("**Humphrey**" and together with the Debtors and McCarthy, collectively, the "**Parties**" and, each, a "**Party**"), including, without limitation, by entering into that certain Change Order No. 5 and Fourth Modification of GMP in the form of Exhibit D to the Settlement Agreement (the "**Change Order No. 5**"); (b) the Debtors' entry into the Settlement Agreement and the transactions provided for therein (collectively, the "**Settlement**"); and (ii) granting related relief.[2]

### Jurisdiction

1.     This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Background

2.     On December 21, 2022 (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary case under the Bankruptcy Code.  The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Settlement Agreement or the *Third Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors* (Docket No. 1438) (as may be amended, supplemented, or otherwise modified, the "**Plan**"), as applicable.

Although the Debtors have not filed an accompanying declaration with this Motion, to the extent the Motion is contested or the Court otherwise deems it appropriate, the Debtors will file an accompanying declaration(s) and make such parties available for cross examination.

3.      The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b) and Bankruptcy Local Rule 1015-1.  On January 9, 2023, the United States Trustee for Region 7 (the "**U.S. Trustee**") appointed an official committee of unsecured creditors.  On March 23, 2023, the U.S. Trustee appointed an official committee of equity security holders.  No trustee or examiner has been appointed in these chapter 11 cases.

## I.      The Parties' Business Relationship

4.      The Debtors are one of the largest blockchain infrastructure, hosting provider, and digital asset mining companies in North America, with fully operational data centers in Texas, Kentucky, North Carolina, North Dakota, and Georgia.  The Debtors provide hosting solutions for third parties and also operate their own digital asset mining machines.

5.      McCarthy is a general contractor that provides preconstruction, general contracting, construction management and design-build services.

6.      Prior to the Petition Date, the Debtors began developing one of their data-center facilities located in Denton, Texas (the "**Denton Facility**") and entered into a series of agreements with McCarthy for McCarthy's general contracting services for the development and construction of the Denton Facility (the "**Project**").  These agreements include:

- that certain *AIA® Document A102™ – 2017 Standard Form of Agreement Between Owner and Contractor where the basis of payment is the Cost of the Work Plus a Fee with a Guaranteed Maximum Price*, dated as of November 17, 2021 (as amended, modified, or supplemented from time to time, the "**Construction Contract**");

- that certain *AIA® Document A201™ – 2017 General Conditions of the Contract for Construction,* dated as of November 17, 2021 (the "**Conditions of Contract**"); and

- that certain Escrow Agreement, dated as of December 9, 2021  (the "**Escrow Agreement**", together with, the Construction Contract, the Conditions of Contract,

the other documents, as more specifically described and defined in Article 1 of the Construction Contract, the "**McCarthy Contracts**").[3]

7.       Additionally, prior to the Petition Date, McCarthy and Humphrey entered into that certain McCarthy Subcontract 2229-067, dated as of December 24, 2021 (the "**Humphrey Subcontract**"), pursuant to which Humphrey agreed to perform and provide certain electrical and fire alarm-related labor, equipment, services, material and/or supplies for the construction of the Denton Facility.   McCarthy and Humphrey subsequently engaged the subcontractors, sub-subcontractors and suppliers set forth on Schedule I to the Settlement Agreement (collectively, but not including Humphrey, the "**Subcontractors**" and, each, individually, a "**Subcontractor**") to provide labor, equipment, services, material and/or supplies for the construction of the Denton Facility pursuant to certain subcontract agreements (collectively, but not including the Humphrey Subcontract, the "**Subcontracts**" and each, individually, a "**Subcontract**").   Pursuant to the Construction Contract, McCarthy (itself and through Humphrey and other various Subcontractors) began developing and constructing the physical infrastructure at the Denton Facility prior to the Petition Date.

## II.       Claims and Liens against the Debtors

8.       On October 31, 2022, McCarthy filed a complaint against Core in the United States District Court for the Eastern District of Texas, case no. 4:22-cv-00924, asserting, among other things, breach of contract claims under the McCarthy Contracts and violations of Chapter 28 of the Texas Property Code, due to, among other things, Core's failure to: (a) pay McCarthy as required under the Construction Contract; (b) fund the escrow account as required by the Escrow Agreement; and (c) post the requisite payment bond as required under the Construction

---

[3] For the avoidance of doubt, the McCarthy Contracts shall have the same meaning as the term "Contract Documents" as defined in the Settlement Agreement.

Contract (the "**McCarthy Complaint**").  However, the lawsuit was stayed due to the Debtors' filing of these chapter 11 cases.

9.      In connection with the McCarthy Contracts, McCarthy has asserted prepetition and postpetition claims (such claims and any other claims that may be asserted, the "**McCarthy Claims**") against the Debtors, including, without limitation, that certain Proof of Claims No. 468 in the total asserted amount of $18,799,499.00.  In addition, McCarthy filed certain liens (such liens, the "**McCarthy Liens**") against certain of the Debtors' assets, including, without limitation, that certain *Amended Affidavit for Mechanic's Lien* recorded on November 14, 2022 under Document Number 158011 under Texas Property Code § 53.001, *et seq.* in the Land Records of Denton County, Texas against the Debtors' Denton Facility.  On January 23, 2023, McCarthy filed a *Notice of Perfection, Maintenance, and Continuation of Mechanic's Lien* (Docket No. 337) in the Debtors' chapter 11 cases.

10.      Additionally, Humphrey has asserted prepetition and postpetition claims (such claims and any other claims that may be asserted, the "**Humphrey Claims**") against the Debtors, including, without limitation, that certain Proof of Claims No. 510 in the total asserted amount of $7,036,021.06.  In addition, Humphrey filed certain liens (such liens, the "**Humphrey Liens**") against certain of the Debtors' assets, including, without limitation, that certain *Lien Affidavit and Claim* recorded on November 15, 2022 under Document Number 158075, under Texas Property Code § 53.001, *et seq.* in the Land Records of Denton County, Texas, as amended by that certain *Partial Release of Lien* recorded on April 14, 2023 under Document Number 37449 in the Land Records of Denton County, Texas against the Debtors' Denton Facility.  On April 14, 2023, Humphrey filed a *Notice of Perfection, Continuation, and/or Maintenance Mechanic's Lien* (Docket No. 798) in the Debtors' chapter 11 cases.

11.     In addition to McCarthy and Humphrey, certain of the Subcontractors have also asserted prepetition and postpetition claims (such claims, the "**Subcontractor Claims**" and, together with the McCarthy Claims and the Humphrey Claims, collectively, the "**Claims**") against the Debtors, including, without limitation, Proofs of Claims Nos. 110, 122, 167, 187, and 538. Certain of the Subcontractors have also filed certain liens against certain of the Debtors' assets (such liens, the "**Subcontractor Liens**" and, together with the McCarthy Liens and the Humphrey Liens, collectively, the "**Liens**"), including, without limitation, the mechanics' liens against the Debtors' Denton Facility described on Exhibit A to the Settlement Agreement.

III.    **Assumption of the McCarthy Contracts and the Settlement**

12.     After engaging in extensive, good faith, and arm's length negotiations, the Debtors, McCarthy, and Humphrey reached a global settlement, memorialized in the Settlement Agreement, subject to this Court's approval.

13.     The construction and expansion of the Denton Facility is a key component of the Reorganized Debtors' go-forward business plan.  The Settlement provides for the Debtors' assumption of the McCarthy Contracts, as amended in accordance with the Settlement Agreement, including by entering into the Change Order No. 5, which will allow the Reorganized Debtors to leverage McCarthy's familiarity with the Debtors' construction plans and specifications as well as its local subcontractor network to complete construction of the Denton Facility.  The Settlement also provides the Debtors with flexibility of when to commence construction of the remaining development at the Denton Facility.  In addition, the Settlement resolves all claims between the Debtors, McCarthy, and Humphrey.  Pursuant to the Settlement Agreement, McCarthy and Humphrey have agreed to release all claims[4] against the Debtors arising on or before the entry of

---

[4] For the purposes of the Settlement and as used herein, "claims" has the meaning set forth in section 101(5) of the Bankruptcy Code. 11 U.S.C. § 101(5) (defining "claim").

the Proposed Order, including, without limitation, for any and all obligations, liabilities, duties and damages of the Debtors, in accordance with the Settlement, and all cure costs in connection with the assumption of the McCarthy Contracts are deemed satisfied in accordance with the Settlement Agreement.

14.     The principal terms of the Settlement Agreement are summarized below:[5]

| Terms | Description |
|---|---|
| **Assumption of the McCarthy Contracts** | • Upon the entry of the Proposed Order, the Debtors shall assume the McCarthy Contracts, as amended in accordance with the Settlement Agreement.<br><br>• All cure costs to be paid in connection with the assumption of the Construction Contract (including all Contract Documents) are deemed satisfied in full in accordance with the Settlement. |
| **Modifications to the Construction Contract** | • Within one (1) business day following the entry of the Proposed Order, the Debtors and McCarthy shall execute and enter into Change Order No.5, which shall provide, among other things, that:<br><br>   (i) unless the Debtors deliver a notice to McCarthy to proceed with construction of those certain Buildings A&B on the A&B-South Parcel (the "**A&B Notice to Proceed**") or those certain Buildings F&G on the F&G-North Parcel (the "**F&G Notice to Proceed**") on the Denton Facility, the Debtors shall have no further obligations under the Construction Contract; and<br><br>   (ii) the Debtors shall have the option, but not the obligation, to deliver the A&B Notice to Proceed and/or the F&G Notice to Proceed.<br><br>• Following the delivery of the A&B Notice to Proceed and/or the F&G Notice to Proceed, McCarthy shall commence work on the A&B-South Parcel or the F&G-North Parcel, as applicable, within 30 days following the date on which each of the following conditions has been satisfied:<br><br>   i) the Debtors pay the McCarthy Cash Payment to McCarthy;<br><br>   ii) the Debtors pay the Humphrey Cash Payment to Humphrey;<br><br>   iii) the Debtors pay the Humphrey Note in full, inclusive of all interest accrued thereunder;<br><br>   iv) the Debtors pay, or are deemed to have paid, in each case, pursuant to the terms of the McCarthy Note, the McCarthy Note in full, inclusive of all interest accrued thereunder; and<br><br>   v) the Debtors have made the required deposit applicable to the A&B |

_____

[5] The below only provides a summary of the principle terms of the Settlement Agreement; to the extent of any conflict between the below summary and the Settlement Agreement, the terms of the Settlement Agreement control.

| | |
|---|---|
| | Notice to Proceed and/or F&G Notice to Proceed. |
| **Cash Payments to McCarthy, Humphrey, and Subcontractors** | • On the Cash Payment Date (as defined herein), Core shall: <br><br> (i) make a payment to McCarthy in the amount of $6,754,767.94 (the "**McCarthy Cash Payment**"), which McCarthy shall use to pay *first* all Subcontractors, except for Humphrey, in full, and *then*, any remaining amounts to McCarthy; and <br><br> (ii) make a payment to Humphrey in the amount of $5,628,816.85 (the "**Humphrey Cash Payment**" and, together with the McCarthy Cash Payment, collectively, the "**Cash Payments**"), which Humphrey shall use to pay *first* all of Humphrey's subcontractors, sub-subcontractors and suppliers on the Project, in full, and *then*, any remaining amounts to Humphrey. <br><br> • As used herein, "**Cash Payment Date**" shall mean the earlier to occur of: <br><br> (i) the date which is ninety (90) days following the date on which the Plan is effective (such Plan effective date, the "**Emergence Date**"); or <br><br> (ii) the date which is three (3) business days following the earlier to occur of the date on which Core delivers the A&B Notice to Proceed or the F&G Notice to Proceed to McCarthy. |
| **The Humphrey Note** | • On the Cash Payment Date, the Debtors shall execute and deliver to Humphrey a Promissory Note (the "**Humphrey Note**") in the principal amount of $1,407,204.21. <br><br> • The Humphrey Note shall: <br><br> (i) bear interest at the rate of five percent (5%), compounded monthly, <br><br> (ii) begin accruing interest on the date which is one hundred twenty (120) days after the Emergence Date; <br><br> (iii) be payable in thirty (30) equal monthly installments, with the first (1st) monthly installment to be due one hundred twenty (120) days following the Emergence Date; <br><br> (iv) require mandatory prepayment in full, without penalties or fees, within one (1) business day following delivery by the Debtors of the A&B Notice to Proceed or the F&G Notice to Proceed; and <br><br> (v) provide that the Debtors may make voluntary partial or full prepayments, without penalties or fees. <br><br> • From and after the Cash Payment Date, the Humphrey Liens shall only secure payment of the principal amount of the Humphrey Note then outstanding. |
| **The Humphrey Liens** | • Within seven (7) days following receipt of the Cash Payments, Humphrey shall deliver to the Debtors and record a partial lien waiver and release of the |

| | |
|---|---|
| | Humphrey Liens, decreasing the amount of the Humphrey Liens to an amount not to exceed $1,407,204.21, which is the principal amount of the Humphrey Note. |
| | • Within five (5) business days following written request by the Debtors, Humphrey shall from time to time until the Humphrey Note has been paid in full, deliver to the Debtors and record a partial lien waiver and release of the Humphrey Liens, decreasing the amount of the Humphrey Liens to an amount not to exceed the then outstanding principal amount of the Humphrey Note. |
| | • Within five (5) business days following payment in full of the Humphrey Note, Humphrey shall deliver to the Debtors and record a final unconditional lien waiver and release of the Humphrey Liens. |
| **The McCarthy Note** | • On the Cash Payment Date, the Debtors shall execute and deliver to McCarthy a Promissory Note (the "**McCarthy Note**") in the principal amount of $6,809,344.21. <br><br> • The McCarthy Note shall: <br><br> (i) provide that the obligations thereunder shall be bifurcated into (A) an obligation to pay the principal amount of $5,402,140 (the "**Primary Obligation**") and (B) an obligation to pay the principal amount then payable under the Humphrey Note (the "**Secondary Obligation**"); <br><br> (ii) bear interest on the Primary Obligation at the rate of five percent (5%), compounded monthly, and not bear interest on the Secondary Obligation; <br><br> (iii) begin accruing interest on the Primary Obligation on the date which is one hundred twenty (120) days after the Emergence Date; <br><br> (iv) be payable in thirty (30) equal monthly installments, with the first (1st) monthly installment to be due one hundred twenty (120) days following the Emergence Date; <br><br> (v) require mandatory prepayment of the Primary Obligation in full, without penalties or fees, within one (1) business day following delivery by the Debtors of the A&B Notice to Proceed or the F&G Notice to Proceed; <br><br> (vi) provide that the Debtors may make voluntary partial or full prepayments, without penalties or fees; <br><br> (vii) provide that payments made under the McCarthy Note shall (A) _first_, reduce the Primary Obligation and (B) _then_, after the Primary Obligation has been paid in full, reduce the Secondary Obligation; <br><br> (viii) provide that all payments made under the Humphrey Note which are applied toward the reduction of principal of the Humphrey Note shall be deemed to be a payment of, and reduce the outstanding principal amount of, the Secondary Obligation. <br><br> • From and after the Cash Payment Date, the McCarthy Liens shall only secure payment of the principal amount of the McCarthy Note then outstanding. |

| | |
|---|---|
| **The McCarthy Liens** | • Within seven (7) days following receipt of the Cash Payments, McCarthy shall deliver to the Debtors and record a partial lien waiver and release of the McCarthy Liens, decreasing the amount of the McCarthy Liens to an amount not to exceed $6,809,344.21, which amount includes the principal amount of the McCarthy Note.<br><br>• Within five (5) business days following written request by the Debtors, McCarthy shall from time to time until the McCarthy Note has been paid in full, deliver to the Debtors and record a partial lien waiver and release of the McCarthy Liens, decreasing the amount of the McCarthy Liens to an amount not to exceed the then outstanding principal amount of the McCarthy Note.<br><br>• Within five (5) business days following payment in full of the McCarthy Note, McCarthy shall deliver to the Debtors and record a final unconditional lien waiver and release of the McCarthy Liens and the Humphrey Liens. |
| **Subcontractor Claims and Liens** | • From and after the Cash Payment Date, McCarthy and Humphrey shall cooperate with the Debtors and take all reasonable steps necessary to obtain release of the Subcontractor Claims, including supporting any objections to the Subcontractor Claims filed by the Debtors.<br><br>• Within five (5) days following the Cash Payment Date, McCarthy shall:<br><br>   (i)   deliver to the Debtors unconditional final lien waivers for those subcontractors and suppliers who have not yet filed and recorded a lien on the Denton Facility; and<br><br>   (ii)   cause the Subcontractors (except for Humphrey), to extent that such Subcontractor filed and recorded a Subcontractor Lien on the Property, to file and record unconditional final lien releases of their respective Subcontractor Liens against the Denton Facility as provided in the Settlement Agreement.<br><br>• Within five (5) days following the Cash Payment Date, Humphrey shall:<br><br>   (i)   deliver to the Debtors and McCarthy unconditional final lien waivers for those subcontractors and suppliers of Humphrey who have not yet filed and recorded a lien on the Denton Facility;<br><br>   (ii)   cause its subcontractors and suppliers, to the extent such subcontractor or supplier filed and recorded a lien on the Denton Facility, to file and record unconditional final lien releases of any liens that they might have impressed against the Denton Facility as provided in the Settlement Agreement. |
| **Standstill of Lien Enforcement; Statutes of Limitation** | • Unless and until an Event of Default (as defined in the McCarthy Note) occurs, McCarthy shall not foreclose or otherwise enforce or seek to enforce the McCarthy Liens or otherwise take adverse action against the Debtors or any of the Debtors' assets.<br><br>• Unless and until an Event of Default (as defined in the Humphrey Note) occurs, Humphrey shall be not foreclose or otherwise enforce or seek to enforce the |

<table>
<tr>
<td></td>
<td>

Humphrey Liens or otherwise take adverse action against the Debtors or any of the Debtors' assets.

- Unless and until an Event of Default (as defined in the Settlement Agreement) occurs:

  (i)   the Subcontractors shall be stayed from, and McCarthy shall cause the Subcontractors not to, foreclose or otherwise enforce or seek to enforce the Subcontractor Liens or otherwise take adverse action against the Debtors or any of the Debtors' assets; and

  (ii)  Humphrey's subcontractors and suppliers shall be stayed from, and Humphrey shall cause its subcontractors and suppliers not to, foreclose or otherwise enforce or seek to enforce any liens that they might have asserted against the Property for all work performed on the Project or at the Property and all goods, labor and materials supplied to, for or in connection with the Debtors or the Project or the Property or otherwise take adverse action against the Debtors or any of the Debtors' assets.

- Any applicable statutes of limitation applicable to the Humphrey Liens or the McCarthy Liens, as applicable, shall be tolled from the Emergence Date until (a) with respect to the Humphrey Liens, the date on which an Event of Default (as defined in the Humphrey Note), if any, occurs and (b) with respect to the McCarthy Liens, the date on which an Event of Default (as defined in the McCarthy Note), if any, occurs.

- With respect to the enforcement of any Liens held by the Subcontractors (other than Humphrey), any applicable statutes of limitation applicable to such Liens shall be tolled from the Emergence Date until the date on which an Event of Default (as defined in the Settlement Agreement), if any, occurs.

</td>
</tr>
<tr>
<td><strong>Releases</strong></td>
<td>

- Immediately upon entry of the Proposed Order:

  (i)   except as set forth in the Settlement Agreement, the McCarthy Claims and any other claim held by McCarthy against the Debtors (including but not limited to Proof of Claim No. 468) shall be deemed finally and fully satisfied, released and expunged;

  (ii)  except as set forth in the Settlement Agreement, the Humphrey Claims and any other claim held by Humphrey against the Debtors (including but not limited to Proof of Claim No. 510) shall be deemed finally and fully satisfied, released and expunged;

  (iii) other than as set forth in the Settlement Agreement, neither McCarthy nor Humphrey shall be entitled to receive any other recovery in connection with any claims it has, or could have, asserted in connection with the Chapter 11 Cases or otherwise.

- Within two (2) business day following entry of the Proposed Order:

  (i)   McCarthy shall withdraw the McCarthy Complaint with prejudice with the United States District Court for the Eastern District of Texas;

  (ii)  in consideration for the Debtors' obligations under the Settlement

</td>
</tr>
</table>

| | | |
|---|---|---|
| | | Agreement, McCarthy shall file a notice of withdrawal of Proof of Claim No. 468 with prejudice with the Court; and |
| | (iii) | in consideration for the Debtors' obligations under the Settlement Agreement, Humphrey shall file a notice of withdrawal of Proof of Claim No. 510 with prejudice with the Court. |
| **Court Approval** | | The Settlement Agreement is subject to approval by the Court. In the event that the Court does not approve the Settlement Agreement, then the Settlement Agreement shall be null and void with the Parties returning to their original respective positions with no rights waived. For purposes of the Settlement Agreement, the Settlement Agreement will be deemed effective upon the Court's entry of the Proposed Order. |

## Relief Requested Should Be Granted

**I.**     **The Debtors' Assumption of the McCarthy Contracts, as Amended in Accordance with the Settlement Agreement, Is a Reasonable Exercise of Debtors' Sound Business Judgment and Should be Approved**

15.     Section 365(a) of the Bankruptcy Code provides, in relevant part, that a debtor "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a); see also *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 521(1984) (noting that section 365(a) "by its terms includes all executory contracts except those expressly exempted"); *Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins. Co.*, 83 F.3d 735, 741 (5th Cir. 1996) ("Although the Code does not define 'executory contract,' generally an agreement is considered executory 'if at the time of the bankruptcy filing, the failure of either party to complete performance would constitute a material breach of the contract, thereby excusing the performance of the other party.'" (quoting *In re Murexco Petorleum, Inc.*, 15 F. 3d 60, 62 (5th Cir. 994))).  This allows the debtor in possession to maximize the value of its estate by assuming executory contracts or unexpired leases that benefit the estate and by rejecting those that do not. *In re Nat'l Gypsum Co.*, 208 F.3d 498, 504–05 (5th Cir. 2000).

16.     The standard applied to determine whether the assumption of an executory contract or unexpired lease should be authorized is the "business judgment" standard. *See, e.g., Richmond Leasing Co. v. Cap. Bank*, N.A., 762 F.2d 1303, 1309 (5th Cir. 1985).  The business

judgment standard requires only a showing that either assumption or rejection of the executory contract or unexpired lease will benefit the debtor's estate. *See In re Idearc Inc.*, 423 B.R. 138, 162 (Bankr. N.D. Tex. 2009) (holding that the business judgment standard "requires a showing that the proposed course of action will be advantageous to the estate"); *In re Wolflin Oil, L.L.C.*, 318 B.R. 392, 396 (Bankr. N.D. Tex. 2004) ("[T]he act of assumption must be grounded, at least in part, in the conclusion that maintenance of the contract is more beneficial to the estate than doing without the other party's services." (quoting *In re Liljeberg Enters.*, Inc., 304 F.3d 410, 438 (5th Cir. 2002))).

17.     Here, the Debtors have determined that the assumption of the McCarthy Contracts, as amended in accordance with the Settlement Agreement, is an exercise of sound business judgment.  McCarthy, through itself and Humphrey and the Subcontractors, was already providing construction services to the Denton Facility prior to the Petition Date.  McCarthy is also the only general contractor in the area where the Denton Facility is located who has the local subcontractor network required to complete the construction of the Denton Facility's expansion.  Assumption of the McCarthy Contracts will allow the Reorganized Debtors to leverage McCarthy's familiarity with the Denton Facility and local subcontractor network for the Denton Facility's expansion, which is a key component to the Reorganized Debtors' go-forward business plan.  The Settlement Agreement, which provides for the amendment of the McCarthy Contracts upon assumption, also provides the Reorganized Debtors with the optionality of when to deliver the A&B Notice to Proceed and the F&G Notice to Proceed to commence the construction, providing flexibility for the Reorganized Debtors' capital expenditures under the go-forward business plan.  Additionally, the Settlement Agreement allows the Debtors or Reorganized Debtors (as applicable) to promptly satisfy all cure amounts through a combination of (i) a one-time cash

payment in the total amount of $12,383,584.79[6] payable on the earlier of (a) 90 days after emergence or (b) 3 business days after the Reorganized Debtors deliver the A&B Notice to Proceed or the F&G Notice to Proceed to McCarthy and (ii) delivery of the McCarthy Note and the Humphrey Note that both have a 30 month maturity (rather than paying the full cure amounts in cash upon assumption), which preserves substantial liquidity for the Reorganized Debtors. Accordingly, the Debtors submit that assumption of the McCarthy Contracts, as amended in accordance with the Settlement Agreement, represents a reasonable exercise of their sound business judgment and respectfully request that the Court approve such assumption.

## II.    The Debtors' Entry into the Settlement Agreement Is a Reasonable Exercise of Debtors' Sound Business Judgment

18.    Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that debtors "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  A court may authorize a debtor to use estate property upon a finding that such use is supported by sound business reasons. *See, e.g.*, *In re Cont'l Air Lines*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business.").  Once a debtor articulates a reasonable basis for its business decisions, "courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).  There is a presumption that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *In re Integrated*

---

[6] Including the McCarthy Cash Payment of $6,754,767.94 and the Humphrey Cash Payment of $5,628,816.85.

*Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).

19.     Thus, if a debtor's actions satisfy the business judgment test, then the transaction in question should be approved under section 363(b) of the Bankruptcy Code. Indeed, when applying the "business judgment" standard, courts show great deference to a debtor's business decisions. *See id.* at 656 ("Courts are loath to interfere with corporate decisions absent a showing of bad faith, self-interest, or gross negligence."); *see also Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985) ("More exacting scrutiny would slow the administration of the debtor's estate and increase its cost, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially."); *In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) ("Overcoming the presumptions of the business judgment rule on the merits is a near-Herculean task.").

20.     As mentioned above, entry into the Settlement Agreement, which provides for the amendment of the McCarthy Contracts upon assumption, enables the Debtors to leverage McCarthy's familiarity with the Denton Facility and their local subcontractor network for the Denton Facility's expansion contemplated by the go-forward business plan.  The Settlement Agreement also provides the Reorganized Debtors with the optionality of when to direct McCarthy to commence the construction at the Denton Facility and provides flexibility for the Reorganized Debtors' capital expenditures.  Additionally, the Settlement Agreement allows the Debtors to promptly satisfy all cure amounts in connection with the assumption of the McCarthy Contracts partially through a combination of (i) a one-time cash payment and (ii) the McCarthy Note and the Humphrey Note, which preserve substantial liquidity for the Reorganized Debtors. Accordingly, the Debtors submit that entry into the Settlement Agreement represents a reasonable

exercise of their sound business judgment and respectfully request that the Court authorize entry into such agreement.

**III.     The Settlement Is Fair, Reasonable, and in the Best Interest of the Debtors' Estates**

21.     Bankruptcy Rule 9019(a) provides that "[o]n motion by the [debtors in possession] and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).  Further, pursuant to Bankruptcy Rule 9019(a), a bankruptcy court may approve a compromise or settlement so long as the proposed settlement is fair, reasonable, and in the best interests of the estate.  *See Off. Comm. of Unsecured Creditors v. Moeller (In re Age Refin.,Inc.)*, 801 F.3d 530, 540 (5th Cir. 2015).  Ultimately, approval of a compromise is within the discretion of the bankruptcy court.  *See United States v. AWECO, Inc. (In re AWECO, Inc.)*, 725 F.2d 293, 297 (5th Cir. 1984); *Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 602 (5th Cir. 1980) (citations omitted) (decided under the Bankruptcy Act).  Settlements are considered a "normal part of the process of reorganization" and a "desirable and wise method[] of bringing to a close proceedings otherwise lengthy, complicated, and costly." *Rivercity*, 624 F.2d at 602–03 (citing *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424–25 (1968)).

22.     The Fifth Circuit has established a three-factor balancing test under which bankruptcy courts analyze proposed settlements*. Id.*  The factors courts consider are: "(1) the probability of success in litigating the claim subject to settlement, with due consideration for the uncertainty in fact and law; (2) the complexity and likely duration of litigation and any attendant expense, inconvenience, and delay; and (3) all other factors bearing on the wisdom of the compromise." *See Age Refin.*, 801 F.3d at 540 (internal citations omitted).

23.     Under the rubric of the third factor, the Fifth Circuit has specified two additional factors that bear on a decision to approve a proposed settlement.  First, the Court should

consider "the paramount interest of creditors with proper deference to their reasonable views." *Id.*;

*Conn. Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortg. Corp.)*, 68 F.3d 914, 917

(5th Cir. 1995).  Second, the Court should consider the "extent to which the settlement is truly the

product of arms-length bargaining, and not of fraud or collusion."  *Age Refin.*, 801 F.3d at 540;

*Foster Mortg.*, 68 F.3d at 918 (citations omitted).

24.     Generally, the role of the bankruptcy court is not to decide the issues in

dispute when evaluating a settlement. *Watts v. Williams*, 154 B.R. 56, 59 (S.D. Tex. 1993).  Rather,

the court should determine whether the settlement as a whole is fair and equitable.  *Protective

Comm. for Indep. S'holders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968).

25.     The Debtors bear the burden of establishing that the balance of the above

factors leads to a fair and equitable compromise vis-à-vis the Settlement.  *In re Allied Properties,

LLC*, 2007 WL 1849017, at *4 (Bankr. S.D. Tex. June 25, 2007) (citing *In re Lawrence &

Erausquin, Inc.*, 124 B.R. 37, 38 (Bankr. N.D. Ohio 1990)); *see also In re GHR Companies, Inc.*,

50 B.R. 925, 931 (Bankr. D. Mass. 1985).  "The burden is not high;" rather, the Debtors "need

only show that [their] decision falls within the 'range of reasonable litigation alternatives.'" *In re

Allied Properties, LLC*, 2007 WL 1849017, at *4 (emphasis added) (citing *In re W.T. Grant Co.*,

699 F.2d 599, 608 (2d Cir. 1983)); *see also Cook v. Waldron*, 2006 WL 1007489 at *4 (S.D. Tex.

Apr. 18, 2006).

26.     Here, weighing the foregoing factors demonstrates that the Settlement is

reasonable and supports finding that the Debtors' entry into the Settlement is in the best interest

of creditors and other stakeholders.

27.     First, the Settlement resolves the McCarthy Claims and the Humphrey

Claims, and provides for a mutual release by the Parties.  Entering into the Settlement will avoid

the need for potentially costly and distracting litigation associated with determining such amounts.

Instead, the McCarthy Claims and the Humphrey Claims will be satisfied by a one-time cash payment and delivery of the McCarthy Note and the Humphrey Note, both of which will be paid in 30 monthly installments.  Further, the mutual release contemplated by the Settlement will provide the Debtors, McCarthy, and Humphrey with a clean slate and facilitate a collaborative go-forward business relationship. Under the Settlement, McCarthy and Humphrey also agree to (i) obtain and deliver releases of all liens filed by Subcontractors and (ii) support the Debtors in any objections filed to the Subcontractor Claims, which will benefit the Debtors.

28.     Second, the Settlement is reasonable and is in the best interests of the Debtors and their estates.  The Settlement provides the Debtors with the option of when to commence expansion of the Denton Facility, giving the Debtors flexibility of capital expenditures. Further, the Debtors likely would not be able to successfully expand the Denton Facility without the Settlement.

29.     Lastly, the Settlement was extensively negotiated at arm's length and in good faith.  Accordingly, the Debtors respectfully submit that the Settlement is fair, reasonable and in the best interest of their estates, creditors, and other stakeholders, and the Court should approve the Settlement.

**<u>Reservation of Rights</u>**

30.     Except as expressly provided for herein, nothing contained in this Motion or any actions taken by the Debtors pursuant to the relief granted is intended or should be construed as: (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law, or (iii) an approval of an assumption of any lease, sublease, or contract pursuant to section 365 of the Bankruptcy Code.

**No Previous Request**

31.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

[*Remainder of the Page Left Intentionally Blank*]

**WHEREFORE** the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: December 18, 2023
      Houston, Texas

Respectfully submitted,

  /s/  Alfredo R. Pérez

WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (15776275)
Clifford W. Carlson (2409024)
700 Louisiana Street, Suite 3700
Houston, Texas 77002
Telephone:  (713) 546-5000
Facsimile:  (713) 224-9511
Email: Alfredo.Perez @weil.com
      Clifford.Carlson@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Ray C. Schrock (admitted *pro hac vice*)
Ronit J. Berkovich (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Email:   Ray.Schrock@weil.com
      Ronit.Berkovich@weil.com

*Attorneys for Debtors*
*and Debtors in Possession*

**<u>Certificate of Service</u>**

I hereby certify that on December 18, 2023, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

<u>  /s/  Alfredo R. Pérez           </u>
Alfredo R. Pérez