IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | § § § | Chapter 11 |
| CORE SCIENTIFIC, INC., *et al.*, | § § § | Case No. 22-90341 (CML) |
| Debtors.[1] | § § § § | (Jointly Administered) |

**DEBTORS' MOTION FOR ORDER (I) AUTHORIZING
AND APPROVING SETTLEMENT BETWEEN DEBTORS AND MADDOX
INDUSTRIAL TRANSFORMER LLC AND (II) GRANTING RELATED RELIEF**

> **IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE ELECTRONICALLY AT HTTPS://ECF.TXSB.USCOURTS.GOV/ WITHIN TWENTY-ONE DAYS FROM THE DATE THIS MOTION WAS FILED. IF YOU DO NOT HAVE ELECTRONIC FILING PRIVILEGES, YOU MUST FILE A WRITTEN OBJECTION THAT IS ACTUALLY RECEIVED BY THE CLERK WITHIN TWENTY-ONE DAYS FROM THE DATE THIS MOTION WAS FILED. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

Core Scientific, Inc. ("**Core**") and its debtor affiliates in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"), hereby submit this motion (the "**Motion**"), pursuant to sections 105(a), 363, and 365 of chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 9013 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Local**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions VII LLC (3198). The Debtors' corporate headquarters is 210 Barton Springs Road, Suite 300, Austin, Texas 78704. The Debtors' service address is 2407 S. Congress Ave, Suite E-101, Austin, Texas 78704.

Rules"), the Debtors request entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"), (i) approving the Debtors' entry into a global settlement between the Debtors and Maddox Industrial Transformer LLC ("**Maddox**" and together with the Debtors, collectively, the "**Parties**" and, each, a "**Party**"), on the terms set forth and agreed to by the Parties on the *Settlement Term Sheet,* dated October 27, 2023 (the "**Term Sheet**") attached to the Proposed Order as **Exhibit 1** and (ii) granting related relief.

## Jurisdiction

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. § 1408 and 1409.

## Background

2. On December 21, 2022 (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary case under the Bankruptcy Code. The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b) and Bankruptcy Local Rule 1015-1. On January 9, 2023, the United States Trustee for Region 7 (the "**U.S. Trustee**") appointed an official committee of unsecured creditors. On March 23, 2023, the U.S. Trustee appointed an official committee of equity security holders. No trustee or examiner has been appointed in these chapter 11 cases.

I. **The Parties' Business Relationship and Disputes**

4. The Debtors are one of the largest blockchain infrastructure, hosting provider, and digital asset mining companies in North America, with fully operational data centers

in Texas, Kentucky, North Carolina, North Dakota, and Georgia. The Debtors provide hosting solutions for third parties and also operate their own digital asset mining machines.

5. In 2021, the Debtors entered into a series of purchase orders with Maddox (together with all other contracts and outstanding purchase orders between Maddox and the Debtors, if any, the "**Existing Purchase Orders**"),[2] pursuant to which the Debtors agreed to purchase 72 units of 34.5kV padmount transformers (the "**34.5kV Transformers**") and 60 units of 18kV padmount transformers (the "**18kV Transformers**") to power the Debtors' facility in Denton, Texas (the "**Denton Facility**"). Core paid Maddox the initial deposit on the purchase order for the 34.5kV Transformers, totaling $1,570,789.88.

6. In May 2022, Maddox delivered a number of 34.5kV Transformers to the Denton Facility. About a month later, almost immediately upon installation, the 34.5kV Transformers began failing. Several of the 34.5kV Transformers became unusable, which prevented the Debtors from deploying mining machines at the Denton Facility from June through September in 2022. Maddox's efforts to repair these 34.5kV Transformers were unsuccessful. The Debtors' subsequent inspection of the 34.5kV Transformers showed a manufacturing defect with the 34.5kV Transformers. The Debtors returned all of the defective 34.5kV Transformers to Maddox and provided Maddox notice thereof. Core spent approximately $1.1 million testing, attempting to repair, and ultimately replacing the defective 34.5kv Transformers it had purchased from Maddox. However, the Debtors did not receive a refund, or any other payment from Maddox for the returned 34.5kV Transformers, the testing and inspection costs incurred by the Debtors, or the damages from the disruption to the operation of the Denton Facility. The Debtors also contend

---

[2] The Existing Purchase Orders include: (i) Purchase Order 21668 entered into on July 19, 2021 and (ii) Purchase Order 21773 entered into on October 11, 2021.

that they incurred losses in revenue of approximately $2 million as a result of the downtime caused by the defective transformers.

7. Maddox initially shipped Core twenty-one of the sixty (60) 18kV Transformers Core ordered. When the 34.5kV Transformers failed, Core withheld payment for the sixty (60) 18kV Transformers and asked Maddox to ship the remaining 18kV Transformers under Purchase Order 21773 to offset some of the damages Core suffered. Core suggested the parties could true-up any remaining amounts due once Maddox delivered the remaining 18kV Transformers. Maddox refused, and did not deliver the outstanding thirty-nine (39) 18kV Transformers Core ordered, which Core still needs for its Denton, Texas facility—a key component of the Debtors' go-forward business plan.[3] Maddox's Claims and Liens against the Debtors

8. In connection with the Existing Purchase Orders, Maddox (i) has asserted prepetition claims (such claims and any other claims that may be asserted, the "**Maddox Claims**") against the Debtors, including, without limitation, a purported secured claim in the amount of $7,742,403.52 under Proof of Claim No. 296; and (ii) filed liens (such liens, the "**Maddox Liens**") against certain of the Debtors' assets, including, without limitation, the liens asserted in that certain UCC-1 Financing Statement filed with the Secretary of State of the State of Texas under Filing Number 22-0043467614 on September 1, 2022 and that certain UCC-1 Financing Statement filed with the Secretary of State of the State of Delaware under Filing Number 20227364441 on September 1, 2022. Maddox also disputes that it is responsible for any lost revenue allegedly sustained by Core and that Core is entitled to the 18kV Transformers without further payment. In

---

[3] The Debtors anticipate building the Denton Facility to its full mining capacity by 2025 (i.e., 297MW), with construction beginning in the second quarter of 2024. The Debtors were in the process of fully building out the Denton facility throughout 2022 until the Debtors paused the construction in late 2022. The planned expansions will add another 172MW of mining capacity at Denton, incremental to the existing 125MW capacity in place and currently operational.

addition, Maddox asserts that Core is still responsible for payments in relation to the 34.5kV transformers it alleges remain outstanding.

**II.     The Maddox Settlement**

9. After engaging in extensive, good faith negotiations, the Debtors and Maddox reached a global settlement (the "**Maddox Settlement**"), memorialized in the binding Term Sheet and subject to this Court's approval. The Maddox Settlement resolves all issues and amounts owed between the Debtors and Maddox. For the avoidance of doubt, pursuant to the Maddox Settlement, Maddox has agreed to release any and all liens and claims[4] against the Debtors, including, without limitation, for any and all obligations, liabilities, duties and damages of the Debtors, whether or not expressly memorialized in the Maddox Settlement.

10. As set forth in the Term Sheet, the principle terms of the Maddox Settlement are set forth below:[5]

| Term | Description |
|---|---|
| Claims and Liens | Maddox has asserted the Maddox Claims against the Debtors, including, without limitation, Proof of Claim No. 295. Maddox has filed the Maddox Liens, including, without limitation, that certain UCC-1 Financing Statement filed with the Secretary of State of the State of Texas under Filing Number 22-0043467614 on September 1, 2022 and that certain UCC-1 Financing Statement filed with the Secretary of State of the State of Delaware under Filing Number 20227364441 on September 1, 2022. |

---

[4] For the purposes of the Maddox Settlement and as used herein, "claims" has the meaning set forth in section 101(5) of the Bankruptcy Code. 11 U.S.C. § 101(5) (defining "claim").

[5] The below only provides a summary of the principle terms of the TXaddox Settlement; to the extent of any conflict between the below summary and the Term Sheet, the terms of the Term Sheet control.

5

| | |
|---|---|
| Approval of the Settlement | The Debtors to file a motion to approve the Maddox Settlement.<br><br>The Debtors to obtain entry of the Proposed Order reasonably acceptable to Maddox of the Court under sections 363, 365, and 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019 approving the Maddox Settlement. The Debtors will request that the Proposed Order shall be effective immediately upon its entry. |
| Release of Maddox Claims and Maddox Liens | Proposed Order to provide, among other things, that, (i) within five (5) days following the date on which the Proposed Order becomes final and non-appealable (such date, the "**Final 9019 Order Date**"), Maddox shall file UCC-3 Termination Statements with the Secretary of State of the State of Texas and the Secretary of State of the State of Delaware terminating the Maddox Liens; and (ii) immediately on the Final 9019 Order Date, (a) Maddox and the Debtors shall be deemed to have entered into a new purchase order (the "**New Purchase Order**") on the terms set forth below, which the New Purchase Order shall be effective and binding on Maddox and the Debtors; (b) the Maddox Claims shall be fully and finally paid, satisfied, released and expunged, (c) the Maddox Liens shall be fully and finally released, extinguished and discharged, (d) the Existing Purchase Orders are deemed rejected and Maddox shall not have claims for rejection damages based on such rejection under Bankruptcy Code section 365, and (e) the Parties shall each grant a complete and final release of all claims and covenant not to sue, in each case, in favor of the other Party; provided, that the Parties retain their rights to file and prosecute claims and causes of action related to the enforcement of the Maddox Settlement and the New Purchase Order and nothing herein shall limit such rights. |
| The Purchase Order | The terms of the New Purchase Order are:<br><br>(i)    the purchase price payable to Maddox shall be $2,842,543.27 (the "**Purchase Price**"), payable in seven (7) equal monthly installments, beginning on the date which is thirty (30) days after the date on which a plan of reorganization filed by the Debtors and confirmed by entry of an order of the Court becomes effective;<br><br>(ii)    in consideration for the Purchase Price, Maddox shall sell to the Debtors thirty-nine (39) 18 kV Transformers; |

6

|  | |
|---|---|
|  | (iii) Maddox shall apply each installment of the Purchase Price to reduce the number of the 18kV Transformers which have not been paid for and once any 18kV Transformer has been paid for in full (such 18kV Transformer, a "**Purchased Transformer**"), title to such Purchased Transformer shall vest in the Debtors (e.g., upon payment of 50% of the Purchase Price, title to twenty (20) new 18kV Transformers shall have vested in the Debtors); |
|  | (iv) the Debtors may elect to take delivery (a) at Maddox's sole cost and expense of any Purchased Transformers in groups of three (3) at any time following the date on which they become Purchased Transformers, and (b) at the Debtors' sole cost and expense of any one (1) or two (2) Purchased Transformer(s) at any time following the date on which it or they become(s) Purchased Transformer(s), provided that the Debtors shall be required to take delivery (at Maddox's sole cost and expense) of all of the 18kV Transformers by the date which is six (6) months following the date of the final installment of the Purchase Price; |
|  | (v) until the Debtors take delivery of any Purchased Transformer, Maddox shall store such Purchased Transformer for the Debtors, which storage shall be (a) at Maddox's sole cost and expense through the date which is one (1) month following the date of the final installment of the Purchase Price and (b) charged by Maddox to the Debtors at the rate of $200 per Purchased Transformer per month of additional storage thereafter through the date that is six (6) months following the date of the final installment of the Purchase Price. |
| Provision of Goods | As of the Final 9019 Order Date, Maddox shall have no further interest, if any, in any goods which the Debtors ordered from Maddox and which have been previously delivered to the Debtors, if any. As of the Final 9019 Order Date, the Debtors shall have no interest in any goods which the Debtors ordered from Maddox and which have previously been returned to Maddox. |
| Attorneys' Fees | The Debtors and Maddox will each be responsible for and pay its own legal fees and out-of-pocket expenses in connection with the Maddox Settlement, the Maddox |

7

| | |
|---|---|
| | Claims, the Maddox Liens, and the chapter 11 cases of the Debtors pending in the Court. |
| Closing and Other Customary Terms | This Motion and the Proposed Order to include for terms reasonable and customary to settlement agreements in similarly complex chapter 11 cases, with such terms to be negotiated by the Parties. |
| Bankruptcy Court Approval | The Debtors and Maddox shall act in good faith to implement the Maddox Settlement and shall take all actions reasonably necessary to obtain entry of the Proposed Order. |
| Binding Effect | The Term Sheet and the terms hereof are legally binding upon, and inure to the benefit of, the Parties, subject to the approval of the Court and entry of the Proposed Order. |

**Relief Requested Should Be Granted**

**I.     The Maddox Settlement Is Fair, Reasonable, and in the Best Interest of the Debtors' Estates**

11.    Bankruptcy Rule 9019(a) provides that "[o]n motion by the [debtors in possession] and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). Further, pursuant to Bankruptcy Rule 9019(a), a bankruptcy court may approve a compromise or settlement so long as the proposed settlement is fair, reasonable, and in the best interests of the estate. *See Off. Comm. of Unsecured Creditors v. Moeller* (*In re Age Refin.,Inc.*), 801 F.3d 530, 540 (5th Cir. 2015). Ultimately, approval of a compromise is within the discretion of the bankruptcy court. *See United States v. AWECO, Inc.* (*In re AWECO, Inc.*), 725 F.2d 293, 297 (5th Cir. 1984); *Rivercity v. Herpel* (*In re Jackson Brewing Co.*), 624 F.2d 599, 602 (5th Cir. 1980) (citations omitted) (decided under the Bankruptcy Act). Settlements are considered a "normal part of the process of reorganization" and a "desirable and wise method[] of bringing to a close proceedings otherwise lengthy, complicated, and costly." *Rivercity*, 624 F.2d at 602–03 (citing *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424–25 (1968)).

12. The Fifth Circuit has established a three-factor balancing test under which bankruptcy courts analyze proposed settlements. *Id.* The factors courts consider are: "(1) the probability of success in litigating the claim subject to settlement, with due consideration for the uncertainty in fact and law; (2) the complexity and likely duration of litigation and any attendant expense, inconvenience, and delay; and (3) all other factors bearing on the wisdom of the compromise." *See Age Refin.*, 801 F.3d at 540 (internal citations omitted).

13. Under the rubric of the third factor, the Fifth Circuit has specified two additional factors that bear on a decision to approve a proposed settlement. First, the Court should consider "the paramount interest of creditors with proper deference to their reasonable views." *Id.*; *Conn. Gen. Life Ins. Co. v. United Cos. Fin. Corp.* (*In re Foster Mortg. Corp.*), 68 F.3d 914, 917 (5th Cir. 1995). Second, the Court should consider the "extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion." *Age Refin.*, 801 F.3d at 540; *Foster Mortg.*, 68 F.3d at 918 (citations omitted).

14. Generally, the role of the bankruptcy court is not to decide the issues in dispute when evaluating a settlement. *Watts v. Williams*, 154 B.R. 56, 59 (S.D. Tex. 1993). Rather, the court should determine whether the settlement as a whole is fair and equitable. *Protective Comm. for Indep. S'holders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968).

15. The Debtors bear the burden of establishing that the balance of the above factors leads to a fair and equitable compromise vis-à-vis the Maddox Settlement. *In re Allied Properties, LLC*, 2007 WL 1849017, at *4 (Bankr. S.D. Tex. June 25, 2007) (citing *In re Lawrence & Erausquin, Inc.*, 124 B.R. 37, 38 (Bankr. N.D. Ohio 1990)); *see also In re GHR Companies, Inc.*, 50 B.R. 925, 931 (Bankr. D. Mass. 1985). "The burden is not high;" rather, the Debtors "need only show that [their] decision falls within the 'range of reasonable litigation alternatives.'" *In re Allied Properties, LLC*, 2007 WL 1849017, at *4 (emphasis added) (citing *In re W.T. Grant Co.*,

699 F.2d 599, 608 (2d Cir. 1983)); *see also Cook v. Waldron*, 2006 WL 1007489 at *4 (S.D. Tex. Apr. 18, 2006).

16. Here, weighing the foregoing factors demonstrates that the Maddox Settlement is reasonable and supports finding that the Debtors' entry into the Maddox Settlement is in the best interest of creditors and other stakeholders.

17. First, the Maddox Settlement resolves the Maddox Claims and provides for a mutual release. Although the Debtors believe they have (i) strong defenses to the Maddox Claims and the Maddox Liens, and (ii) valid and meritorious counterclaims against Maddox arising out of the defective 34.5kV Transformers and Maddox's failure to reimburse or credit the Debtors for the incurred inspection costs and other consequential damages, the likelihood of success of litigating against Maddox is still uncertain. What is not uncertain, is that the litigation would likely require the expenditure of significant funds and cause substantial, detrimental impact to the Debtors. Further, if Maddox were to succeed on its claim, the Debtors may be liable for a large sum of payment on account of the Maddox Claims. Instead, the Maddox Settlement releases and extinguishes the Maddox Claims and the Maddox Liens without incurring any additional cash payment from the Debtors other than the Purchase Price under the New Purchase Order. The Maddox Settlement maximizes value for the Debtors' estates and avoids what could otherwise be costly and distracting litigation that would harm the Debtors' estates. Accordingly, the certainty of outcome realized by the entry into the Maddox Settlement provides significant benefits to the Debtors and their estates.

18. Second, the Maddox Settlement is also the product of good-faith, arm's-length bargaining. It was extensively negotiated between the Debtors and Maddox, each of which were represented by counsel. No party has asserted that the Maddox Settlement was the product of fraud or collusion.

19. Third, the Maddox Settlement is reasonable and is in the best interests of the Debtors' estates. Pursuant to the Maddox Settlement, the Debtors will reduce the claims pool by having the Maddox Claims (including a large secured claim against the Debtors' estates) fully released. Maddox will also release the Debtors from any and all future claims arising from the Existing Purchase Orders, including any rejection damages from the rejection thereof. More importantly, as more fully set forth below, the Maddox Settlement allows the Debtors to enter into the New Purchase Order and acquire the new 18kV Transformers, which are needed for the expansion and full operation of the Denton Facility.

20. Accordingly, the Debtors respectfully submit that the Maddox Settlement is fair, reasonable and in the best interest of their estates, creditors, and other stakeholders, and the Court should approve the Maddox Settlement based upon the factors considered by courts in the Fifth Circuit.

## II. The Debtors' Entry into the Maddox Settlement Is a Reasonable Exercise of Debtors' Sound Business Judgment

21. Section 363(b)(1) of the Bankruptcy Code authorizes a debtor in possession to "use, sell, or lease, other than in the ordinary course of business, property of the estate," after notice and a hearing. It is well-established in this jurisdiction that a debtor may use property of the estate outside the ordinary course of business under this provision if there is a good business reason for doing so. *See, e.g., ASARCO, Inc. v. Elliott Mgmt.* (*In re ASARCO, L.L.C.*), 650 F.3d 593, 601 (5th Cir. 2011) ("[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors, and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business.") (*quoting In re Cont'l Air Lines, Inc.*, 780 F.3d 1223, 1226 (5th Cir. 1986)); *GBL Holding Co., Inc. v. Blackburn/Travis/Cole, Ltd.* (*In re State Park Bldg. Grp., Ltd.*), 331 B.R. 251, 254 (Bankr. N.D. Tex. 2005*); In re Filene's Basement, LLC,* No. 11-13511 (KJC) (Bankr. D. Del. Apr. 29, 2014) (stating that, under the

business judgment standard, once the debtor presents "a reasonable basis for is business decisions … courts will generally not entertain objections to the debtor's conduct").

22. In addition, section 105 of the Bankruptcy Code provides, in relevant part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a); *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). *See also In re Tusa-Expo Holdings, Inc.*, Case No. 08-45057-DML-11, 2008 WL 4857954, at *1 (Bankr. N.D. Tex. Nov. 7, 2008); *CEI Roofing*, 315 B.R. at 56; *In re Mirant Corp.*, 296 B.R. 427 (Bankr. N.D. Tex. 2003).

23. Here, the Debtors' entry into the Maddox Settlement represents a valid exercise of the Debtors' business judgment and should be approved. As mentioned above, as a result of the Maddox Settlement, the Debtors will (i) reduce the claims pool by satisfying the Maddox Claims, (ii) having the Maddox Liens released, and (iii) be released from any and all future claims arising from the Debtors' rejection of the Existing Purchase Orders. Accomplishing all these while avoiding costly litigation and any additional cash payment shows that entry into the Maddox Settlement represents a valid exercise of the Debtors' business judgment.

24. In addition, pursuant to the Maddox Settlement, the Debtors will be able to purchase the new 18kV Transformers under the New Purchase Order. The new 18kV Transformers to be delivered under the New Purchase Order will support the Debtors' expansion of the Denton Facility to its full capacity, while the considerations by the Debtors will be paid in several installments and thereby avoid a heavy burden on the Debtors' post-emergence liquidity. The New Purchase Order will also give the Debtors flexibility of when the new 18kV Transformers will be delivered, allowing the Debtors to accommodate the expansion plan of the Denton Facility when the Debtors finalize the details and start executing the expansion plan. The New Purchase Order clearly benefits the Debtors and their estates, and since it is an integral part of the Maddox

Settlement, the Debtors submit that entry into the Maddox Settlement is a reasonable exercise of the Debtors' business judgment and should be approved.

### III. The Debtors' Rejection of the Existing Purchase Orders Is a Reasonable Exercise of Debtors' Sound Business Judgment

25. Pursuant to section 365(a), a debtor in possession, "subject to the court's approval, may assume or reject any . . . executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). Although the Bankruptcy Code does not define the term "executory contract," the Supreme Court has noted that an executory contract is "a contract where neither party has finished performing." *In re Avianca Holdings S.A.*, 618 B.R. 684, 695 (Bankr. S.D.N.Y. 2020) (citing *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1657 (2019)); *Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins. Co.*, 83 F.3d 735, 741 (5th Cir. 1996) ("Although the Bankruptcy Code does not define 'executory contract,' generally an agreement is considered executory 'if at the time of the bankruptcy filing, the failure of either party to complete performance would constitute a material breach of the contract, thereby excusing the performance of the other party.'") (quoting *In re Murexco Petorleum, Inc.*, 15 F. 3d 60, 62 (5th Cir. 1994)). This allows the debtor in possession to maximize the value of its estate by assuming executory contracts or unexpired leases that benefit the estate and by rejecting those that do not. *In re Nat'l Gypsum Co.*, 208 F.3d 498, 504–05 (5th Cir. 2000).

26. Once the statutory predicates to assumption are satisfied, courts apply the "business judgment" standard to determine whether to authorize the rejection of an executory contract. *See Matter of J.C. Penney Direct Marketing Servs., LLC*, 50 F.4th 532, 534 (5th Cir. 2022) ("A bankruptcy court reviews a debtor's decision to . . . reject an executory contract under the deferential 'business judgment' standard.") (citing *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, —U.S.—, 139 S. Ct. 1652, 1658 (2019)); *see also In re Pilgrim's Pride Corp.*,

403 B.R. 413, 422 (Bankr. N.D. Tex. 2009) ("The general rule is that the decision to reject a given contract should be left to the trustee's (or debtor in possession's) sound business judgment.").

27. The "business judgment" standard requires only a showing that either assumption or rejection of the executory contract or unexpired lease will benefit the debtor's estate. *See In re Idearc Inc.*, 423 B.R. 138, 162 (Bankr. N.D. Tex. 2009) (stating that the business judgment standard only "requires a showing that the proposed course of action will be advantageous to the estate." (citation omitted)). In applying the business judgment standard, bankruptcy courts give deference to a debtor's decision to assume or reject executory contracts. *See, e.g.*, *In re Pisces Energy, LLC*, Case No. 09-36591-H5-11, 2009 WL 7227880, at *6 (Bankr. S.D. Tex. Dec. 21, 2009) ("Courts apply the 'business judgment test,' which requires a showing that the proposed course of action will be advantageous to the estate and the decision be based on sound business judgment."). Further, under the business judgment standard, "[a] debtor's decision to reject an executory contract must be summarily affirmed unless it is the product of 'bad faith, or whim or caprice.'" *In re Pilgrim's Pride Corp.*, 403 B.R. at 422 (citing *Wheeling–Pittsburgh Steel Corp. v. W. Penn Power Co. (In re Wheeling–Pittsburgh Steel Corp.)*, 72 B.R. 845, 849–50 (Bankr. W.D. Pa. 1987)).

28. Here, all statutory predicates for the rejection the Existing Purchase Orders under section 365 are satisfied. The Existing Purchase Orders each constitute an "executory contract" within the meaning of section 365 of the Bankruptcy Code; under each Existing Purchase Order, among other obligations, Maddox is obligated to deliver, and the Debtors have the obligation to pay for, the 34.5kV and 18kV Transformers. The rejection of the Existing Purchase Orders is well within the Debtors' business judgment. It is an integral part of the Maddox Settlement: the Existing Purchase Orders are no longer necessary for the Debtors' operation, and the Debtors will acquire the needed 18kV Transformers through the New Purchase Order under

the Purchase Price and other terms thereunder. Therefore, the Debtors respectfully request that the Court authorize the Debtors' rejection of the Existing Purchase Orders in accordance with the Maddox Settlement.

### Reservation of Rights

29. Except as expressly provided for herein with respect to the Maddox Claims, the New Purchase Order, and the Existing Purchase Orders, nothing contained in this Motion or any actions taken by the Debtors pursuant to the relief granted is intended or should be construed as: (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law, or (iii) an approval of an assumption or rejection of any lease, sublease, or contract pursuant to section 365 of the Bankruptcy Code.

### Waiver of Bankruptcy Rule 6004(h)

30. To implement the foregoing successfully, the Debtors request that the Court waive the 14-day period under Bankruptcy Rule 6004(h).

### No Previous Request

31. No previous request for the relief sought herein has been made by the Debtors to this or any other court.

[*Remainder of the Page Left Intentionally Blank*]

**WHEREFORE**, the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: December 19, 2023
      Houston, Texas

Respectfully submitted,

 /s/ *Alfredo R. Pérez*
WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (15776275)
Clifford W. Carlson (2409024)
700 Louisiana Street, Suite 3700
Houston, Texas 77002
Telephone:  (713) 546-5000
Facsimile:  (713) 224-9511
Email: Alfredo.Perez @weil.com
       Clifford.Carlson@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Ray C. Schrock (admitted *pro hac vice*)
Ronit J. Berkovich (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Email:   Ray.Schrock@weil.com
       Ronit.Berkovich@weil.com

*Attorneys for Debtors*
*and Debtors in Possession*

**Certificate of Service**

I hereby certify that on December 19, 2023, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                                        */s/ Alfredo R. Pérez*
                                                        Alfredo R. Pérez