IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| CORE SCIENTIFIC, INC., *et al.,* | § § § | Case No. 22-90341 (CML) |
| Debtors.[1] | § § § § | (Jointly Administered) (Emergency Relief Requested) |

**DEBTORS' <u>EMERGENCY</u> MOTION FOR ORDER
(I) AUTHORIZING AND APPROVING SETTLEMENT AMONG
DEBTORS, SPHERE 3D CORP., AND GRYPHON DIGITAL MINING INC.,
AND (II) GRANTING RELATED RELIEF**

> **EMERGENCY RELIEF HAS BEEN REQUESTED. RELIEF IS REQUESTED NOT LATER THAN 10:00 A.M. (PREVAILING CENTRAL TIME) ON JANUARY 16, 2024.**
>
> **IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED YOU MUST APPEAR AT THE HEARING IF ONE IS SET OR FILE A WRITTEN RESPONSE PRIOR TO THE DATE THAT RELIEF IS REQUESTED IN THE PRECEDING PARAGRAPH. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

Core Scientific, Inc. ("**Core**") and its debtor affiliates in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"), hereby submit this motion (the "**Motion**"), pursuant to sections 105(a) of chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 9013 of the Bankruptcy Local Rules for the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions VII LLC (3198). The Debtors' corporate headquarters is 210 Barton Springs Road, Suite 300, Austin, Texas 78704. The Debtors' service address is 2407 S. Congress Ave, Suite E-101, Austin, Texas 78704.

United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Local Rules**"), requesting entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"), (i) authorizing and approving the Debtors' entry into a settlement among the Debtors, Sphere 3D Corp. ("**Sphere**"), and Gryphon Digital Mining, Inc. ("**Gryphon**" and together with the Debtors and Sphere, the "**Parties**"), on the terms set forth and agreed to by the Parties in the Settlement Term Sheet, dated December 21, 2023 (the "**Term Sheet**") attached to the Proposed Order as **Exhibit 1**, and (ii) granting related relief.

## Jurisdiction

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

2. On December 21, 2022 (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary case under the Bankruptcy Code. The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b) and Bankruptcy Local Rule 1015-1. On January 9, 2023, the United States Trustee for Region 7 (the "**U.S. Trustee**") appointed an official committee of unsecured creditors. On March 23, 2023, the U.S. Trustee appointed an official

committee of equity security holders. No trustee or examiner has been appointed in these chapter 11 cases.

I. **The Hosting Agreements**

4. The Debtors are one of the largest blockchain infrastructure, hosting provider, and digital asset mining companies in North America, with fully operational data centers in Texas, Kentucky, North Carolina, North Dakota, and Georgia. The Debtors provide hosting solutions for third parties and also operate their own digital asset mining machines. *See Declaration of Russell Cann in Support of Debtors' Emergency Motion for Order (I) Authorizing And Approving Settlement Among Debtors, Sphere 3D Corp., and Gryphon Digital Mining Inc., and (II) Granting Related Relief* ("**Cann Decl**.") at ¶ 3.

5. Sphere is a cryptocurrency mining company that hosts its mining machines with hosting providers. *Id.* at ¶ 4. Gryphon is also a cryptocurrency mining company that, as relevant here, likewise hosts mining machines with hosting providers. *Id.* In the summer of 2021, Core engaged in negotiations with Gryphon about entering into a hosting agreement for over 70,000 miners that Gryphon expected to have access to pursuant to a merger it was contemplating with Sphere. *Id.*

6. On or about September 12, 2021, Core and Gryphon entered into a Master Services Agreement (the "**Master Services Agreement**") through which Core would host mining machines for Gryphon. *Id.* at ¶ 5. Pursuant to the Master Services Agreement, Core and Gryphon entered into two separate orders that the Master Services Agreement would govern. *Id.* The first order was Master Services Agreement Order #1 ("**Order #1**"), entered into on or about September 12, 2021. *Id.* Pursuant to Order #1, which was effectively a test order designed to ensure that the

3

configuration at Core's data-center facilities was compatible with the miners, Gryphon delivered and Core deployed 100 S19j miners in October 2021. *Id.*

7. The second order was Master Services Agreement Order #2, entered into on or about October 5, 2021 ("**Order #2**," and together with the Master Services Agreement and Order #1, the "**Hosting Agreements**"). *Id.* at ¶ 6. Pursuant to Order #2, Core was to host 70,000 S19 miners or their equivalent for Gryphon. *Id.* Gryphon was to deliver these miners to Core in accordance with the schedule set forth in Order #2. *Id.* Order #2 also required that Gryphon pay a hosting fee rate per miner, as well as make prepayments to Core prior to the installation of any miners, in accordance with the payment schedule set out in Order #2. *Id.* Core's records reflect that it received prepayments totaling $35,264,413.57. *Id.*

## II. Sphere's Proofs of Claim, the Debtors' Objection, and Related Filings

8. On April 13, 2023, in connection with the Hosting Agreements, Sphere filed Proofs of Claim Nos. 358 and 359 (the "**Sphere POCs**"), substantively identical claims for $39,541,996.30 plus certain unliquidated amounts against Core Scientific, Inc. and Core Scientific Operating Company.[2] Specifically, Sphere alleges that Core failed to perform under the Master Services Agreement and Order #2 and asserts claims for (1) $34,383,713 in hosting deposits paid pursuant to Order #2, (2) $5,000,724.06 in alternative hosting costs, (3) $157,559.24 in storage

---

[2] The only difference between Sphere Proofs of Claim Nos. 358 and 359 are the Debtor entities the claims were brought against. Sphere Proof of Claim No. 358 is against Core Scientific, Inc. and Sphere Proof of Claim No. 359 is against Core Scientific Operating Company.

fees, and (4) an unliquidated amount for the value of any Bitcoin that Core purportedly mined and misappropriated by allegedly installing Sphere's miners as its own.

9. On May 9, 2023, Debtors filed the *Debtors' Objection to Proof of Claim Nos. 358 and 359 Filed by Sphere 3D Corp.* (Docket No. 869) (the "**Claim Objection**"). The Debtors argued, *inter alia*, that Sphere has no rights under the Hosting Agreements and thus no standing to assert claims against Core, and that the $35 million prepayment deposit that Sphere seeks to recover is non-refundable given that Gryphon failed to deliver the 70,000 miners as required by Order #2. The Debtors further argued that Sphere's claims were barred by limitations of liability provisions set forth in the Master Services Agreement and disputed Sphere's claim that Core installed Sphere's miners as its own.

10. On June 9, 2023, the Debtors filed the *Debtors' Motion for Summary Judgment with Respect to Proof of Claim Nos. 358 and 359 Filed by Sphere 3D Corp.* (Docket No. 959). On July 7, 2023, Sphere filed an objection (Docket No. 1039). A hearing on the Debtors' Motion for Summary Judgment was held on August 7, 2023. The Court denied the Debtors' motion and the Parties moved forward with discovery.

11. On November 21, 2023, the Debtors commenced an adversary proceeding against Sphere and Gryphon, filing a *Complaint for Damages and Declaratory Relief Against Sphere 3D Corp. and Gryphon Digital Mining, Inc. and In Support of Objection to Proofs of Claim Nos. 358 and 359* (the "**Adversary Complaint**"). *See* 23-03252, Docket No. 1. Therein, the Debtors sought damages for construction costs and lost profits arising from the Hosting Agreements, among other relief (the "**Adversary Proceeding Claims**").

12. On December 15, 2023, Gryphon filed *Gryphon's Motion for Leave to File Proof of Claim After Bar Date* (Docket No. 1566) (the "**Motion for Leave**"), seeking leave to file a late

5

proof of claim for contingent amounts of approximately $35 million in connection with the prepayments made under the Hosting Agreements in the event that the Court ruled that Gryphon, rather than Sphere, was the proper claimant (the "**Gryphon Contingent Claim**").

### III. The Core-Sphere-Gryphon Settlement

13. After engaging in good faith negotiations, the Debtors, Sphere, and Gryphon reached a settlement agreement (the "**Core-Sphere-Gryphon Settlement**"), memorialized in the Term Sheet and subject to this Court's approval. The Core-Sphere-Gryphon Settlement resolves all claims[3] between the Debtors on the one hand and Sphere and Gryphon on the other hand, arising from the Hosting Agreements, including as asserted in the Sphere POCs and the Adversary Complaint. The Core-Sphere-Gryphon Settlement also resolves the Motion for Leave. Finally, as part of the Core-Sphere-Gryphon Settlement, the Debtors have agreed to mutual releases with Sphere and Gryphon, although any claims between Sphere and Gryphon are expressly reserved.

14. As set forth in the Term Sheet,[4] the principal terms of the Core-Sphere-Gryphon Settlement are as follows:

| Term | Description |
|---|---|
| Allowed Claim | Sphere has asserted pre-petition claims evidenced by Proofs of Claim Nos. 358 and 359 against Debtors Core Scientific, Inc. and Core Scientific Operating Company (the "**Sphere POCs**"). Upon the earlier of (A) entry of the 9019 Order and (B) the Effective Date,[5] Core and Sphere agree that Proof of Claim No. 358 against Debtor Core Scientific, Inc., shall be allowed in the total amount of **$10,000,000** (the "**Allowed Claim**"). The Allowed Claim shall receive the treatment afforded to General Unsecured Claims set forth in the *Third Amended Joint Chapter 11 Plan of Core Scientific, Inc. and* |

---

[3] For the purposes of the Core-Sphere-Gryphon Settlement and as used herein, "claims" has the meaning set forth in section 101(5) of the Bankruptcy Code. 11 U.S.C. § 101(5) (defining "claim").

[4] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Term Sheet.

[5] As defined in the Plan of Reorganization.

|  | |
|---|---|
| | *Its Affiliated Debtors* (Docket No. 1438) (including any exhibits and schedules thereto and as may be supplemented, modified, or amended, the "**Plan of Reorganization**").[6] Sphere's Claim No. 359 shall be deemed withdrawn with prejudice upon the Effective Date.<br><br>In the event that treatment of the Allowed Claim is materially and adversely affected by any amended Plan of Reorganization the Parties reserve all rights. |
| Adversary Proceeding | On December 21, 2022, the Debtors each commenced a voluntary case under chapter 11 (collectively, the "**Chapter 11 Cases**") of title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as amended (the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**"). On November 21, 2023, the Debtors filed an adversary complaint in these Chapter 11 Cases against Sphere and Gryphon asserting claims (the "**Adversary Proceeding Claims**") arising under the September 12, 2021 Master Services Agreement between Core and Gryphon (the "**Master Services Agreement**"), and the associated Orders #1 and #2. Adv. Pro. No. 23-03252 (the "**Adversary Proceeding**"). |
| Gryphon Contingent Claim | On December 15, 2023, Gryphon filed a *Motion for Leave to File Proof of Claim After Bar Date* (Docket No. 1566), (the "**Motion for Leave**") seeking permission to file a late proof of claim against the Debtors for contingent amounts owed by the Debtors pursuant to the Master Services Agreement and Orders #1 and #2, in the event that the Bankruptcy Court determined that Gryphon is the proper claimant with respect to the return of the prepayment (the "**Gryphon Contingent Claim**"). On the Effective Date, Gryphon shall file a notice of withdrawal of the Motion for Leave, with prejudice. The Parties agree that upon execution of this Term Sheet any and all deadlines in connection with the Motion for Leave are abated unless and until the Parties request entry of a further order from the Bankruptcy Court, and such agreement shall be a provision |

---

[6] On December 28, 2023, the Debtors' filed *the Fourth Amended Joint Chapter 11 Plan of Core Scientific Inc. and Its Affiliated Debtors* (Docket No. 1639), hereinafter defined as the "**Plan of Reorganization**" for purposes of the relief sought in this Motion in connection with the Core-Sphere-Gryphon Settlement.

7

| | |
|---|---|
| | in the 9019 Order. |
| Parties' Representations and Warranties | Sphere affirms, represents, and warrants to have complete authority to act on behalf of itself and any affiliates, and, in that capacity, to settle and/or release (i) the Sphere POCs; (ii) any other claims arising out of the Master Services Agreement, Order #1, and Order #2, including any and all claims with respect to any prepayment made in connection with the Master Services Agreement and any Order thereunder; (iii) all claims related to the Adversary Proceeding; and Gryphon affirms, represents, and warrants to have complete authority to act on behalf of itself and any affiliates, and, in that capacity to settle and/or release (i) the Gryphon Contingent Claim, (ii) any other claims arising out of the Master Services Agreement, Order #1, and Order #2, including any and all claims with respect to any prepayment made in connection with the Master Services Agreement and any Order thereunder, and (iii) all claims related to the Adversary Proceeding. Sphere also represents and warrants that it has sole ownership and authority with respect to the 500 miners identified within the gryphonspcore subaccount of the total 634 miners decommissioned on December 18, 2023 and Gryphon represents that it has sole ownership and authority with respect to the 134 miners identified within the gryphoncore subaccount. |
| Release of (i) Sphere Proofs of Claim, (ii) claims arising out of the Master Services Agreement, Order #1, and Order #2, (iii) the Adversary Proceeding Claims, and (iv) the Gryphon Contingent Claim | Upon the Effective Date, the Sphere POCs, the Adversary Proceeding Claims, and the Gryphon Contingent Claim shall be deemed fully and finally paid, satisfied, forever released, discharged, and expunged, and Gryphon and Sphere shall be deemed to have granted a complete and final release of all claims, whether legal or equitable, past, present, or future, ascertained or unascertained, known or unknown, suspected or unsuspected, based in contract, tort or otherwise against the Debtors, including any claims based upon, arising out of, or related to the Master Services Agreement, Order #1, or Order #2, including any payments made thereunder, or based upon, arising out of, or relating to the 634 miners decommissioned on December 18, 2023, or the return or application of any prepayment made in connection therewith against the Debtors; and the Debtors shall be deemed to have granted a complete and final release of all claims, whether legal or equitable, past, present, or future, ascertained or unascertained, known or unknown, suspected or unsuspected, based in contract, tort or otherwise against Sphere and Gryphon, including any claims based upon, |

| | |
|---|---|
| | arising out of, or related to the Master Services Agreement, Order #1, or Order #2, including any payments made thereunder, or based upon, arising out of, or relating to the 634 miners decommissioned on December 18, 2023, or the return or application of any prepayment made in connection therewith (the "**Released Claims**"). Sphere and Gryphon as against the Debtors and the Debtors as against Sphere and Gryphon further covenant and agree not to sue, make, assert or maintain, directly or indirectly any Released Claims or to bring, request, initiate or file any suit or action regarding the Released Claims, all of which are released; provided, that the Parties shall retain their rights to file and prosecute claims and causes of action related to the enforcement of this Settlement and nothing herein shall limit such rights. |
| Gryphon-Sphere Claims | For the avoidance of doubt, nothing contained in this Term Sheet, and none of the Released Claims herein, including the claims relating to the Sphere POCs, Adversary Proceeding Claims, and Gryphon Contingent Claim, constitute a release of any claims as between Gryphon and Sphere, including but not limited to the claims and counterclaims pending in the District Court for the Southern District of New York, *Sphere 3D Corp. v. Gryphon Digital Mining, Inc.*, 1:23-cv-02954-PKC, all of which such claims as between Gryphon and Sphere are expressly reserved and unaffected by this Settlement. |
| Debtors to Dismiss Adversary Proceeding | Debtors shall cause the Adversary Proceeding to be dismissed with prejudice as to both Gryphon and Sphere, within seven (7) business days of the Effective Date. The Parties agree that upon execution of this Term Sheet any and all deadlines in the Adversary Proceeding are abated unless and until the Parties request entry of a further order from the Bankruptcy Court, and such agreement shall be a provision in the 9019 Order. |
| Plan Support | Sphere agrees to (A) vote or cause to be voted its Allowed Claim to accept the Plan of Reorganization by delivering its duly executed and completed ballot or ballots, as applicable, accepting the Plan of Reorganization on a timely basis following the commencement of the solicitation of the Plan of Reorganization and its actual receipt of the solicitation materials and ballot, (B) not change or withdraw such vote (or cause or direct such vote to be changed or withdrawn), and (C) to the extent it is permitted to elect whether to opt |

|  | out of the releases set forth in the Plan of Reorganization, agree to provide, and to not opt-out of, such releases. To the extent the 9019 Order is not entered, Sphere reserves all rights to modify its vote after the voting deadline. The Debtors agree that the Confirmation Order shall not be inconsistent with the terms of the Settlement. |
|---|---|
| Attorneys' Fees | The Parties will each be responsible for and pay their own legal fees, out-of-pocket expenses, and costs in connection with the Sphere POCs, the Adversary Proceeding, the Master Services Agreement, Order #1, and Order #2, and the Chapter 11 Cases of the Debtors pending in the Bankruptcy Court. |
| Approval of the Term Sheet | The Debtors will file a motion, on an emergency basis, seeking entry of an order of the Bankruptcy Court approving the terms set forth in this Term Sheet in a form reasonably acceptable to all parties (such order, the "**9019 Order**"). The Debtors will seek entry of the 9019 Order by the Bankruptcy Court at or before the Confirmation Hearing. |
| Binding Effect | This Term Sheet and the terms hereof are legally binding upon, and inure to the benefit of, the Parties upon execution of the Term Sheet by the Parties, subject to entry of the 9019 Order. |

## Relief Requested Should Be Granted

15. The Core-Sphere-Gryphon Settlement is fair, reasonable, and in the best interest of the Debtors' estates. Bankruptcy Rule 9019(a) provides that "[o]n motion by the [debtors in possession] and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). Further, pursuant to Bankruptcy Rule 9019(a), a bankruptcy court may approve a compromise or settlement so long as the proposed settlement is fair, reasonable, and in the best interests of the estate. *See Off. Comm. of Unsecured Creditors v. Moeller* (*In re Age Refin.,Inc.*), 801 F.3d 530, 540 (5th Cir. 2015). Ultimately, approval of a compromise is within the discretion of the bankruptcy court. *See United States v. AWECO, Inc.* (*In re AWECO, Inc.*),

725 F.2d 293, 297 (5th Cir. 1984); *Rivercity v. Herpel* (*In re Jackson Brewing Co.*), 624 F.2d 599, 602 (5th Cir. 1980) (citations omitted) (decided under the Bankruptcy Act). Settlements are considered a "normal part of the process of reorganization" and a "desirable and wise method[] of bringing to a close proceedings otherwise lengthy, complicated, and costly." *Rivercity*, 624 F.2d at 602–03 (citing *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424–25 (1968)).

16. The Fifth Circuit has established a three-factor balancing test under which bankruptcy courts analyze proposed settlements. *Id.* The factors courts consider are: "(1) the probability of success in litigating the claim subject to settlement, with due consideration for the uncertainty in fact and law; (2) the complexity and likely duration of litigation and any attendant expense, inconvenience, and delay; and (3) all other factors bearing on the wisdom of the compromise." *See Age Refin.*, 801 F.3d at 540 (internal citations omitted).

17. Under the rubric of the third factor, the Fifth Circuit has specified two additional factors that bear on a decision to approve a proposed settlement. First, the Court should consider "the paramount interest of creditors with proper deference to their reasonable views." *Id.*; *Conn. Gen. Life Ins. Co. v. United Cos. Fin. Corp.* (*In re Foster Mortg. Corp.*), 68 F.3d 914, 917 (5th Cir. 1995). Second, the Court should consider the "extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion." *Age Refin.*, 801 F.3d at 540; *Foster Mortg.*, 68 F.3d at 918 (citations omitted).

18. Generally, the role of the bankruptcy court is not to decide the issues in dispute when evaluating a settlement. *Watts v. Williams*, 154 B.R. 56, 59 (S.D. Tex. 1993). Rather, the

court should determine whether the settlement as a whole is fair and equitable. *Protective Comm. for Indep. S'holders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968).

19. The Debtors bear the burden of establishing that the balance of the above factors leads to a fair and equitable compromise vis-à-vis the Core-Sphere-Gryphon Settlement. *In re Allied Properties, LLC*, 2007 WL 1849017, at *4 (Bankr. S.D. Tex. June 25, 2007) (citing *In re Lawrence & Erausquin, Inc.*, 124 B.R. 37, 38 (Bankr. N.D. Ohio 1990)); *see also In re GHR Companies, Inc.*, 50 B.R. 925, 931 (Bankr. D. Mass. 1985). "The burden is not high;" rather, the Debtors "need only show that [their] decision falls within the 'range of reasonable litigation alternatives.'" *In re Allied Properties, LLC*, 2007 WL 1849017, at *4 (emphasis added) (citing *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983)); *see also Cook v. Waldron*, 2006 WL 1007489 at *4 (S.D. Tex. Apr. 18, 2006).

20. Here, weighing the foregoing factors demonstrates that the Core-Sphere-Gryphon Settlement is reasonable and supports a finding that the Debtors' entry into the Core-Sphere-Gryphon Settlement is in the best interest of creditors and other stakeholders.

21. First, the Core-Sphere-Gryphon Settlement fully resolves the Sphere POCs and the Adversary Proceeding, as well as the Motion for Leave and any and all claims relating to the Hosting Agreements. Although the Debtors believe they have (i) strong defenses to the Sphere POCs and Gryphon's Motion for Leave (and any potential Gryphon Contingent Claim), and (ii) valid and meritorious damages claims against Sphere and Gryphon arising out of the alleged breach of the Master Services Agreement and Order #2 (as asserted by the Debtors in the Objection and the Adversary Complaint), the likelihood of success of litigating against Sphere and Gryphon is far from certain and will involve fact-intensive circumstances, including as relates to whether the Debtors' alleged damages claims are limited by the Hosting Agreements or general principals

of contract damages and are supported by the facts. What is certain is that litigating all of these issues will require the expenditure of significant funds and be a distraction to the Debtors and their management. Cann Decl. ¶ 14.

22. Second, the Core-Sphere-Gryphon Settlement is also the product of good-faith, arm's length bargaining. *Id*. at ¶ 15. It was extensively negotiated between the Parties, each of which were represented by counsel. *Id*. No party has asserted that the Core-Sphere-Gryphon Settlement was the product of fraud or collusion. *Id*. The Court is well aware that the Parties have litigated this dispute in good faith and with vigor.

23. Third, the Core-Sphere-Gryphon Settlement is reasonable and is in the best interests of the Debtors' estates. *Id.* at ¶ 13. If Sphere (or Gryphon) were to succeed, the Debtors face the real possibility that any award against them would be substantially higher than the settlement amount agreed to. Instead, by settling the claims, the Debtors obtain full releases without incurring any cash payment and with an Allowed Claim for only a portion of the amount asserted in the Sphere POCs. *Id.* at ¶ 16. The Core-Sphere-Gryphon Settlement thus maximizes value for the Debtors' estates and avoids what could otherwise be costly and distracting litigation that would harm the Debtors' estates. Accordingly, the certainty of outcome realized by the entry into the Core-Sphere-Gryphon Settlement provides significant benefits to the Debtors and their estates.

24. Accordingly, the Debtors respectfully submit that the Core-Sphere-Gryphon Settlement is fair, reasonable and in the best interest of their estates, creditors, and other stakeholders, and the Court should approve the Core-Sphere-Gryphon Settlement based upon the factors considered by courts in the Fifth Circuit.

**Emergency Consideration is Requested**

25.     The Debtors' seek relief on an emergency basis. The Debtors are quickly working towards Plan confirmation and the claims asserted by Sphere are large, unresolved claims against the Debtors' estate. As a condition of the Core-Sphere-Gryphon Settlement, both Sphere and Gryphon required that the Core-Sphere-Gryphon Settlement be approved on an emergency basis prior to the confirmation hearing, which is expected to occur on January 16, 2024. Absent the emergency relief requested by this Motion, the Debtors would fail to meet a material condition of the settlement and would not obtain certainty on this resolution prior to the confirmation hearing. The Debtors believe that emergency consideration of this Motion is therefore necessary and appropriate.

**Reservation of Rights**

26.     Except as expressly provided for herein, nothing contained in this Motion or any actions taken by the Debtors pursuant to the relief granted is intended or should be construed as: (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law, or (iii) an approval of an assumption or rejection of any lease, sublease, or contract pursuant to section 365 of the Bankruptcy Code.

**No Previous Request**

27.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

[*Remainder of the Page Left Intentionally Blank*]

**WHEREFORE**, the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: January 2, 2024
       Houston, Texas

Respectfully submitted,

  /s/ Clifford W. Carlson
WEIL, GOTSHAL & MANGES LLP
Clifford W. Carlson (2409024)
700 Louisiana Street, Suite 3700
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Email: Clifford.Carlson@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Ray C. Schrock (admitted *pro hac vice*)
David J. Lender (admitted *pro hac vice*)
Ronit J. Berkovich (admitted *pro hac vice*)
Theodore E. Tsekerides (admitted *pro hac vice*)
Christine A. Calabrese (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Email: Ray.Schrock@weil.com
       David.Lender@weil.com
       Ronit.Berkovich@weil.com
       Theodore.Tsekerides@weil.com
       Christine.Calabrese@weil.com

*Attorneys for Debtors
and Debtors in Possession*

**Certificate of Service**

I hereby certify that on January 2, 2024, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                                                          */s/ Clifford W. Carlson*
                                                                          Clifford W. Carlson