IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| CORE SCIENTIFIC, INC., *et al.*, | § | Case No. 22-90341 (CML) |
| | § | |
| | § | (Jointly Administered) |
| Debtors.<sup>1</sup> | § | |

## NOTICE OF EXECUTED AMENDMENT
## TO REPLACEMENT DIP CREDIT AGREEMENT

**PLEASE TAKE NOTICE** that, on January 31, 2023, Core Scientific, Inc. ("**Core**") and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), filed with the United States Bankruptcy Court for the Southern District of Texas (the "**Court**") the *Emergency Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Replacement Senior Secured Non-Priming Superpriority Postpetition Financing, (B) Use Cash Collateral, and (C) Pay Off Existing Postpetition Financing Facility (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Granting Adequate Protection to the Prepetition Secured Parties, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* (Docket No. 389) (the "**DIP Financing Motion**").

**PLEASE TAKE FURTHER NOTICE** that, on March 1, 2023, the Court entered the *Final Order (I) Authorizing the Debtors to (A) Obtain Senior Secured Non-Priming*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions VII LLC (3198). The Debtors' corporate headquarters is 210 Barton Springs Road, Suite 300, Austin, Texas 78704. The Debtors' service address is 2407 S. Congress Ave, Suite E-101, Austin, Texas 78704.

*Superpriority Replacement Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay and (IV) Granting Related Relief* (Docket No. 608) (the "**Final DIP Order**")[2] approving the Debtors' entry into the Replacement DIP Credit Agreement and granting other relief requested in the DIP Financing Motion on an final basis.  The Replacement DIP Credit Agreement is attached as Exhibit 1 to the Final DIP Order.

**PLEASE TAKE FURTHER NOTICE** that, on December 18, 2023, the Debtors filed its *Notice of Intent to Execute Amendment to Replacement DIP Credit Agreement* (Docket No. 1581) (the "**Notice**"), which provided (A) notice of the Debtors' intent to amend the Replacement DIP Credit Agreement as provided in the form attached as Exhibit A to the Notice  ("**Amendment No. 2**") and (B) that, pursuant to Paragraph 2(d) of the Final DIP Order, if none of the U.S. Trustee, the Official Committee, or the Ad Hoc Group objected to the entry of Amendment No. 1 within three (3) Business Days of the filing of the Notice, Amendment No. 1 shall automatically be deemed approved and effective as of 12:01 A.M. (central time) on December 22, 2023.

**PLEASE TAKE FURTHER NOTICE** that no objections were filed in response to the Notice and, therefore, Amendment No. 2 became effective on December 22, 2023.  An executed version of Amendment No. 2 is attached hereto as **Exhibit A**.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Final DIP Order.  For the avoidance of doubt, the term "Official Committee" means the official committee of unsecured creditors appointed by the U.S. Trustee on January 9, 2023 (Docket No. 256) and reconstituted on February 3, 2023 (Docket No. 456).

2

Dated: January 3, 2024
       Houston, Texas

                                      Respectfully submitted,

                                      */s/ Clifford W. Carlson*
WEIL, GOTSHAL & MANGES LLP
Clifford W. Carlson (24090024)
700 Louisiana Street, Suite 3700
Houston, Texas  77002
Telephone: (713) 546-5000
Facsimile:  (713) 224-9511
Email:  Clifford.Carlson@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Ray C. Schrock (admitted *pro hac vice*)
Ronit J. Berkovich (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York  10153 Telephone: (212) 310-8000
Facsimile:   (212) 310-8007
Email:  Ray.Schrock@weil.com
        Ronit.Berkovich@weil.com


*Attorneys for Debtors
and Debtors in Possession*

**Certificate of Service**

I hereby certify that on January 3, 2024, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/ *Clifford W. Carlson*
Clifford W. Carlson

## Exhibit A

**Amendment No. 2**

**Execution Version**

# SECOND AMENDMENT TO SENIOR SECURED SUPER-PRIORITY REPLACEMENT DEBTOR-IN-POSSESSION LOAN AND SECURITY AGREEMENT

This **SECOND AMENDMENT TO SENIOR SECURED SUPER-PRIORITY REPLACEMENT DEBTOR-IN-POSSESSION LOAN AND SECURITY AGREEMENT** dated as of December 22, 2023 (this "Amendment"), is entered into by and among (a) **CORE SCIENTIFIC, INC.**, a Delaware corporation and a debtor and debtor-in-possession in the Chapter 11 Cases (as defined in the Loan Agreement referred to below) ("Core Scientific" or "Borrower") and as authorized representative for all Obligors (as defined in the Loan Agreement) hereunder (in such capacity, the "Obligor Representative"), (b) each **SUBSIDIARY GUARANTOR**, as a Guarantor, an Obligor, and a debtor and debtor-in-possession in the Chapter 11 Cases (as such terms are defined in the Loan Agreement), (c) the entities parties to the Loan Agreement as lenders (the "Lenders") and (d) **B. RILEY COMMERCIAL CAPITAL, LLC**, as Administrative Agent (the "Administrative Agent").

**WHEREAS**, the Borrower, the other Obligors party thereto, the Lenders and the Administrative Agent are parties to that certain Senior Secured Super-Priority Replacement Debtor-In-Possession Loan and Security Agreement dated as of February 27, 2023 (as amended pursuant to that certain First Amendment to Senior Secured Super-Priority Replacement Debtor-In-Possession Loan and Security Agreement, dated as of July 4, 2023 and as further amended, restated, supplemented or otherwise modified from time to time, the "Loan Agreement");

**WHEREAS**, on the terms and subject to the conditions set forth in this Amendment, the Borrower, the other Obligors, the Lenders and the Administrative Agent have agreed to amend certain provisions of the Loan Agreement as set forth in this Amendment;

**NOW, THEREFORE**, in consideration of the premises and agreements, provisions and covenants herein contained, the parties hereto agree as follows:

**Section 1.** **Defined Terms**. Capitalized terms used but not otherwise defined herein shall have the meanings assigned to such terms in the Loan Agreement (as amended hereby) or if not defined therein, then in the Final DIP Order.

**Section 2.** **Amendments**. Subject to the satisfaction of the conditions set forth in Section 3 of this Amendment, upon the Second Amendment Effective Date (as defined below), the parties hereto consent and agree that the Loan Agreement shall be amended as follows:

2.1 Section 1.1 of the Loan Agreement is hereby amended to add the following definitions thereto (to be deemed inserted thereto in their appropriate alphabetical order):

"Maturity Date": December 22, 2023, the date that is twelve (12) months after the Petition Date; as such date as may be extended in accordance with and pursuant to **Section 2.1.5** and the Second Amendment, but in any event, no later than March 22, 2024.

"Second Amendment": that certain Second Amendment to Senior Secured Super-Priority Replacement Debtor-In-Possession Loan and Security Agreement dated as of December 22, 2023, by and among the Obligors, the Lenders and the Administrative Agent.

"Second Amendment Effective Date": as defined in the Second Amendment.

2.2. Section 1.1 of the Loan Agreement is hereby further amended to amend and restate the definition of "Excess Cash" set forth therein in its entirety to read as follows:

"Excess Cash": as defined in **Section 5.3.3**; provided that in no event shall the Extension Fee paid pursuant to **Section 2.1.5** be deducted in the calculation thereof, and the amount of any Extension Fee so paid shall be treated for all purposes of such calculation as continuing to be cash on hand of the Borrower.

2.3   Section 2.1.2 of the Loan Agreement is hereby amended and restated in its entirety to read as follows:

2.1.2   DIP Term Loans.

(a)   Subject to the satisfaction of the conditions precedent set forth in **Section 6**, and subject further to the other terms and conditions hereof, and relying upon the representations and warranties set forth herein, the Lenders agree to severally, but not jointly, make the following DIP Term Loans to Borrower (unless the Termination Date shall have occurred):

(i)   In accordance with the Commitment Letter and the Interim DIP Order, during the period commencing on or after entry of the Interim DIP Order to but excluding the Final DIP Order Date (such period, the "Interim Availability Period"), Borrower, subject to the terms and conditions herein, may request a single draw of DIP Term Loans up to a maximum aggregate amount not exceed $35,000,000 (the "Initial Draw").  It is hereby acknowledged and agreed that on February 3, 2023, Borrower requested and Lenders, in fact, advanced to Borrower the Initial Draw in the original principal amount of $35,000,000 (such Initial Draw being deemed a DIP Term Loan for all purposes hereunder).  Pursuant to the Commitment Letter and the Interim DIP Order, at any time prior to the Final DIP Order Date, Borrower was permitted to voluntarily prepay outstanding principal amounts of the Initial Draw without premium or penalty (any such voluntary prepayment (but not any mandatory prepayment thereof) prior to the Final DIP Order Date being an "Initial Draw Voluntary Prepayment"). All DIP Term Loans advanced pursuant to this **Section 2.1.2** (other than in respect of the Upfront Payment as set forth in **Section 2.1.2(c)** below) shall permanently reduce each Lender's DIP Term Loan Commitment; provided that (and solely to the extent permitted pursuant to the Commitment Letter), Borrower was permitted to (x) reinstate previously borrowed DIP Term Loan Commitments by the amount of all Initial Draw Voluntary Prepayments made prior to the Final DIP Order Date and (y) reborrow such reinstated amounts after the Final DIP Order Date (but prior to the Termination Date) as Other Draws or a Final Draw in accordance with, and subject to, the terms hereof.  It is hereby acknowledged and agreed that the remaining aggregate DIP Term Loan Commitments as of the Final DIP Order Date are $35,000,000 (after giving effect to the Initial Draw and the Initial Draw Voluntary Prepayments, if any, prior to such date); and

(ii)   During the period commencing on the Final DIP Order Date up to but excluding the Termination Date (such period, the "Final Availability Period"), Borrower may, subject to the terms and conditions herein, request DIP Term Loans in any number of other Borrowings (each an "Other Draw") and one final additional Borrowing (the "Final Draw"); *provided*, that, the aggregate amount of DIP Term Loans that shall be made during the Final Availability Period shall not exceed the remaining DIP Term Loan Commitments on the Final DIP Order Date; *provided*, *further*, for any Borrowing of any Other Draw or any Final Draw, such Borrowings shall only be permitted to the extent set forth in the following paragraph.

Notwithstanding the foregoing or anything else in this Agreement or in any other Loan Document to the contrary, (A) Borrower shall not be permitted to request and no Lender shall be required to fund any Other Drawing or the Final Drawing if, in either case, the sum of (each to be separately calculated and identified in any calculation or certification thereof) (x) Obligors' cash and Cash Equivalents on hand (excluding any of Obligors' Eligible Cash in the Carve-Out Account and any Adequate Assurance Deposits) and (y) subject to the definition of Unrestricted Bitcoin, the aggregate value in U.S. Dollars of the Unrestricted Bitcoin owned by Borrower and the other Obligors on such date as determined based on the BTCUSD Coinbase spot price as of 5:00 p.m. as of the immediately preceding Business Day (or, if applicable with respect to any Bitcoin, the value thereof, if any, as determined in accordance with any Permitted BTC Hedging Agreement then in effect with respect thereto) at such time equals or exceeds $30,000,000 immediately prior to giving effect to any such Borrowing, (B) no Lender shall be required to fund any Other Draw or Final Draw on more than one (1) Borrowing Date in any three-week period (unless consented to in writing by such Lender), (C) no Lender shall be required to fund any Other Draw in a principal amount of less than $5,000,000 (other than for the Final Draw if the remaining available aggregate DIP Term Loan Commitment is less than such amount at the time thereof), (D) [reserved], and (E) no Lender shall be obligated to make any DIP Term Loans that exceeds its then-outstanding unfunded DIP Term Loan Commitment or exceeds the aggregate DIP Term Loan Cap at such time.

(b) Each Lender's DIP Term Loan Commitment shall, concurrently with the funding of the above DIP Term Loans by it to the Administrative Agent or the Borrower, as applicable, be automatically reduced, on a dollar-for-dollar basis, by the principal amount of DIP Term Loans made by it at such time; provided, that, notwithstanding anything else herein, each Lender's DIP Term Loan Commitment shall in any event terminate (and shall be reduced to zero), and shall be deemed permanently discharged, extinguished and cancelled in full, and shall cease to be binding on, or enforceable against, such Lender, in each case, automatically on, and immediately upon the occurrence of, the Termination Date.  For the avoidance of doubt, in no event shall the Lenders be required to fund any Loans if such funding would cause the aggregate principal amount of Loans outstanding hereunder to exceed the aggregate amount authorized pursuant to the pursuant to the Interim DIP Order (in the case of DIP Term Loans made prior to the Final DIP Order Date) or the Final DIP Order (in the case of DIP Term Loans made from and after the Interim DIP Closing Date).

(c) In furtherance of **Section 3.2.4**, pursuant to the Commitment Letter and the Interim DIP Order, Borrower was required to pay the Upfront Payment to the Administrative Agent on the Interim DIP Closing Date.  The Upfront Payment is deemed fully earned on the Interim DIP Closing Date and was Paid in Kind on the Interim DIP Closing Date.  Such payment of the Upfront Payment was effected pursuant to a deemed addition to the outstanding principal amount of DIP Term Loans (without reducing the Lenders' DIP Term Loan Commitments or the available Initial Draw or being counted against the DIP Term Loan Cap) on the Interim DIP Closing Date in the aggregate principal amount equal to the amount of the Upfront Payment, which additional Loan has the same pricing, rights, privileges, restrictions and other terms as otherwise attach to all other DIP Term Loans (whether or not any DIP Term Loans are outstanding as of such time), and was made automatically and immediately upon and concurrently with the occurrence of the Interim DIP Closing Date, without requirement for any cash to be advanced by any Lender.  Borrower hereby agrees that it shall be deemed to have incurred DIP Term Loans in such amount automatically as of the Interim DIP Closing Date by operation of the provisions hereof, without any further action by any Person, and that all DIP Term Loans and Obligations in respect thereof shall be deemed outstanding from such date, and interest shall accrue thereon from such date in the same manner as interest would accrue on the other DIP Term Loans made on such date.

(d)     Once repaid, no Loan (or portion thereof) may be reborrowed.

2.4.    <u>Section 2.1.5</u> of the Loan Agreement is hereby amended and restated in its entirety to read as follows as follows:

2.1.5   <u>Extension of Maturity Date</u>.

(a)     Notwithstanding anything to the contrary in this Agreement, concurrently with and subject to the occurrence of the Second Amendment Effective Date, the Obligor Representative shall be deemed to have extended the scheduled Maturity Date of all Obligations by three (3) months (the "<u>Extension</u>"), so long as the following terms are satisfied:

(i)      the representations and warranties of each Obligor set forth in this Agreement and the other Loan Documents are true and correct in all material respects (without duplication of any materiality qualifiers) with the same effect as if then made (except to the extent stated to relate to a specific earlier date, in which case such representations and warranties shall be true and correct in all material respects (without duplication of any materiality qualifiers) as of such earlier date);

(ii)     no Event of Default or Default shall have then occurred and be continuing; and

(iii)    Borrower shall have paid to the Administrative Agent, for the pro rata benefit of each Lender, a fee (the "<u>Extension Fee</u>"), in cash, in an amount equal to $1,225,000 ($35,000,000 x 3.50%), which Extension Fee shall be fully earned and be due and payable on the Second Amendment Effective Date and shall not refundable or subject to reduction or withholding for any reason;

it being agreed that no more than one Extension shall be permitted hereunder.

(b)     Upon the occurrence of the Second Amendment Effective Date and the exercise of such Extension, it is hereby acknowledged that the initial available DIP Term Loan Commitments under the DIP Facility shall be $35,000,000 (subject to reduction on a dollar for dollar basis by any Borrowing hereunder during the Final Availability Period, the "<u>Maturity Extension Availability</u>"), and subject to **Sections 2.1.2(a)** and **6.2.2** and for so long as the Termination Date shall not have occurred, Borrower may draw upon the Maturity Extension Availability as DIP Term Loans by providing not less than five (5) Business Days' written notice of such draw request to the Administrative Agent. No consent of any Lender shall be required to effectuate the Extension. The Lenders hereby irrevocably authorize the Administrative Agent to enter into amendments to this Agreement and the other Loan Documents with the Obligor Representative as may be necessary or appropriate in the reasonable opinion of the Administrative Agent and the in connection with such Extension.

(c)     This **Section 2.1.5** shall supersede any provisions of **Section 14.1** to the contrary.

**Section 3.      Conditions to Effectiveness.**  This Amendment shall, in each case, be effective as of the date (such date, the "<u>Second Amendment Effective Date</u>") of the satisfaction in full of the following conditions precedent:

(a)     No Default or Event of Default shall have occurred and be continuing and all representations and warranties set forth in this Amendment and each of the other Loan Documents are true and correct in all material respects (without duplication of any materiality

4

qualifiers) with the same effect as if then made (except to the extent stated to relate to a specific earlier date, in which case such representations and warranties shall be true and correct in all material respects (without duplication of any materiality qualifiers) as of such earlier date);

(b) the Administrative Agent shall have received a copy of this Amendment duly executed and delivered by the Borrower, the other Obligors, the Lenders, and the Administrative Agent;

(c) either (i) (x) the Borrower shall have filed a notice of intent to enter into this Amendment with the Bankruptcy Court to which a form of this Amendment shall have been attached and (y) no party shall have objected thereto within the time period required by the Final Order or (ii) the Bankruptcy Court shall have entered an order approving this Amendment and the payment of the Extension Fee pursuant hereto, which order is in form and substance satisfactory to the Administrative Agent and the Lenders;

(d) the Administrative Agent shall have received, for the pro rata benefit of each Lender, payment, in cash, of the Extension Fee; and

(e) all of the foregoing conditions shall have been satisfied, the Second Amendment Effective Date shall have occurred, and the Extension shall have been effected, in each case, on or prior to December 22, 2023.

**Section 4.** **Representations and Warranties**. Each Obligor hereby represents and warrants, on and as of the Second Amendment Effective Date, that:

(a) Each Obligor has all requisite power and authority to execute, deliver and perform its obligations under this Amendment. The execution, delivery and performance of this Amendment (i) are within such Obligor's corporate or other powers, (ii) have been duly authorized by all necessary corporate or other organizational action and all necessary Bankruptcy Court action or other actions required pursuant to the Final DIP Order, and (iii) do not (A) contravene the terms of any of such Person's Organic Documents, (B) violate any Applicable Law or the Final DIP Order, or (C) conflict with or result in any breach or contravention of, or the creation of any Lien (other than a Lien permitted by Section 10.2.2 of the Loan Agreement) under, (x) any agreement or contract to which such Person is a party or affecting such Person or the properties of such Person or any of its Subsidiaries or (y) any order, injunction, writ or decree of any Governmental Authority or any arbitral award to which such Person or its property is subject.

(b) This Amendment has been duly executed and delivered by each Obligor that is a party hereto and constitutes a legal, valid and binding obligation of such Obligor, enforceable against such Obligor in accordance with its terms, except as such enforceability may be limited by any applicable bankruptcy, insolvency or similar law affecting the enforcement of creditors' rights and by general principles of equity.

**Section 5.** **Effect on Loan Documents**.

(a) On and after the Second Amendment Effective Date, each reference in any Loan Document or the Final DIP Order, and, in each case, in any other document or instrument incidental thereto, to the Loan Agreement shall mean and be a reference to the Loan Agreement as amended hereby, and each reference in the Loan Agreement to "this Agreement", "herein", "hereinafter", "hereto", "hereof", and words of similar import shall mean, from and after the Second Amendment Effective Date, the Loan Agreement as amended hereby.

5

(b)     Except as specifically amended herein, all Loan Documents and the Final DIP Order shall continue to be in full force and effect and all such Loan Documents and the Final DIP Order are, in each case, hereby in all respects ratified and confirmed.

(c)     The execution, delivery and effectiveness of this Amendment shall not, except as specifically otherwise provided herein or therein, operate as a waiver of any right, power or remedy of any Lender or the Administrative Agent under any of the Loan Documents or the Final DIP Order, nor constitute a waiver of any provision of the Loan Documents or the Final DIP Order or in any way limit, impair or otherwise affect the rights and remedies of the Administrative Agent or the Lenders under the Loan Documents or the Final DIP Order.

(d)     Each party hereto acknowledges and agrees that, on and after the Second Amendment Effective Date, this Amendment shall constitute a Loan Document for all purposes under the Loan Agreement and each other Loan Document.

**Section 6.     Miscellaneous.**

(a)     Except as expressly amended hereby, the provisions of the Loan Documents are and shall remain in full force and effect.

(b)     This Amendment is binding and enforceable as of the date hereof against each party hereto and its successors and permitted assigns.

(c)     This Amendment may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Delivery of an executed signature page counterpart hereof by telecopy, emailed pdf. or any other electronic means that reproduces an image of the actual executed signature page shall be effective as delivery of a manually executed counterpart hereof. The words "execution," "signed," "signature," "delivery," and words of like import in or relating to any document to be signed in connection with this Amendment and the transactions contemplated hereby shall be deemed to include electronic signatures, the electronic association of signatures and records on electronic platforms, deliveries or the keeping of records in electronic form, each of which shall be of the same legal effect, validity or enforceability as a manually executed signature, physical delivery thereof or the use of a paper-based recordkeeping system, as the case may be, to the extent and as provided for in any applicable law, including the Federal Electronic Signatures in Global and National Commerce Act, the New York State Electronic Signatures and Records Act, any other similar state laws based on the Uniform Electronic Transactions Act or the Uniform Commercial Code, each as amended, and the parties hereto hereby waive any objection to the contrary, provided that (x) nothing herein shall require the Administrative Agent to accept electronic signature counterparts in any form or format and (y) Administrative Agent reserves the right to require, at any time and at its sole discretion, the delivery of manually executed counterpart signature pages to this Amendment and the parties hereto agree to promptly deliver such manually executed counterpart signature pages.

(d)     If any provision of this Amendment is held to be illegal, invalid or unenforceable, (i) the legality, validity and enforceability of the remaining provisions of this Amendment shall not be affected or impaired thereby and (ii) the parties shall endeavor in good faith negotiations to replace the illegal, invalid or unenforceable provisions with valid provisions the economic effect of which comes as close as possible to that of the illegal, invalid or unenforceable provisions. The invalidity of a provision in a particular jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

(e) The Borrower shall pay all out of pocket costs and expenses of Administrative Agent and the Lenders incurred in connection with this Amendment including, without limitation, reasonable attorneys' fees and expenses.

(f) The provisions of <u>Sections 14.3</u>, <u>14.12</u>, <u>14.13</u>, <u>14.14</u>, <u>14.15</u> and <u>14.17</u> are, by this reference thereto, hereby incorporated herein mutatis mutandis, as if all references therein to the Loan Agreement were deemed to be references to this Amendment.

*[Remainder of page intentionally left blank; signature pages follow]*

**IN WITNESS WHEREOF**, the parties hereto, by their officers thereunto duly authorized, have executed this Amendment as of the day and year first above written.

**THE ADMINISTRATIVE AGENT AND LENDERS**

**B. RILEY COMMERCIAL CAPITAL, LLC**,
as the Administrative Agent

By: *Phil Ahn*
Name: Phillip J. Ahn
Title: Chief Financial Officer


**BRF FINANCE CO., LLC**,
as the sole Lender

By: *Phil Ahn*
Name: Phillip J. Ahn
Title: Chief Financial Officer

[Signature Page to Second Amendment to Senior Secured Super-Priority Replacement Debtor-In-Possession Loan and Security Agreement]

**BORROWER**

**CORE SCIENTIFIC, INC.**, as Borrower

By: _____
    *Adam Sullivan*
Name: Adam Sullivan
Title: Chief Executive Officer

**GUARANTORS**

**CORE SCIENTIFIC MINING LLC**, as a Guarantor

By: _____
    *Adam Sullivan*
Name: Adam Sullivan
Title: Chief Executive Officer

**CORE SCIENTIFIC ACQUIRED MINING LLC**, as a Guarantor

By: _____
    *Adam Sullivan*
Name: Adam Sullivan
Title: Chief Executive Officer

**CORE SCIENTIFIC OPERATING COMPANY,** as a Guarantor

By: _____
    *Adam Sullivan*
Name: Adam Sullivan
Title: Chief Executive Officer

**RADAR RELAY, INC.,** as a Guarantor

By: _____
    *Todd DuChene*
Name: Todd DuChene
Title: President

[Signature Page to Second Amendment to Senior Secured Super-Priority Replacement Debtor-In-Possession Loan and Security Agreement]

**AMERICAN PROPERTY ACQUISITION, LLC,** as a Guarantor
    By its sole member, Core Scientific Operating Company

By: *Adam Sullivan*
Name: Adam Sullivan
Title: Chief Executive Officer

**CORE SCIENTIFIC SPECIALTY MINING (OKLAHOMA) LLC,** as a Guarantor

By: *Adam Sullivan*
Name: Adam Sullivan
Title: Chief Executive Officer

**STARBOARD CAPITAL LLC,** as a Guarantor
    By its sole member, Radar Relay, Inc.

By: *Todd DuChene*
Name: Todd DuChene
Title: President

**RADAR LLC,** as a Guarantor
    By its sole member, Radar Relay, Inc.

By: *Todd DuChene*
Name: Todd DuChene
Title: President

[Signature Page to Second Amendment to Senior Secured Super-Priority Replacement Debtor-In-Possession Loan and Security Agreement]

**AMERICAN PROPERTY ACQUISITIONS I, LLC,** as a Guarantor
    By its sole member, American Property Acquisition, LLC
        By its sole member, Core Scientific Operating Company

By: /s/ Adam Sullivan
Name: Adam Sullivan
Title: Chief Executive Officer

**AMERICAN PROPERTY ACQUISITIONS VII, LLC,** as a Guarantor
    By its sole member, American Property Acquisition, LLC
        By its sole member, Core Scientific Operating Company

By: /s/ Adam Sullivan
Name: Adam Sullivan
Title: Chief Executive Officer

[Signature Page to Second Amendment to Senior Secured Super-Priority Replacement Debtor-In-Possession Loan and Security Agreement]