**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | § | Chapter 11 |
|  | § |  |
| **CORE SCIENTIFIC, INC.**, *et al.*, | § | Case No. 22-90341 (CML) |
|  | § |  |
|  | § | (Jointly Administered) |
| Debtors.[1] | § |  |

<u>**SUPPLEMENTAL CERTIFICATE OF SERVICE**</u>

I, Monica Arellano, depose and say that I am employed by Stretto, the claims and noticing agent for the Debtors in the above-captioned cases.

On November 29, 2023, Stretto in accordance with USPS forwarding instructions served the following documents via first-class mail on Bank of America/Lasalle Bank NA, /IPA, DTC #1581, George Earl - AVP at 110 N Wacker Dr, Ste 3975, Austin, TX 78723-5542:

- **Notice of Emergency Hearing on Backstop Approval Motion and Conditional Approval of Disclosure Statement Scheduled for November 14, 2023 at 2:00 P.M. (Prevailing Central Time)** (Docket No. 1392)

- **Instructional Cover Letter to Nominees** (attached hereto as <u>**Exhibit A**</u>)

Furthermore, on November 29, 2023, Stretto in accordance with USPS forwarding instructions served the following document via first-class mail on Todd Becker at a redacted address:

- **Notice of (I) Conditional Approval of Disclosure Statement, (II) Approval of (A) Solicitation and Voting Procedures and (B) Notice Procedures for the Assumption or Rejection of Executory Contracts and Unexpired Leases; (III) Combined Hearing to Consider Final Approval of Disclosure Statement and Confirmation of Plan; and (IV) Establishing Notice and Objection Procedures for Final Approval of Disclosure Statement and Confirmation of Plan** (Docket No. 1448)

[THIS SPACE INTENTIONALLY LEFT BLANK]

Furthermore, on November 30, 2023, at my direction and under my supervision, employees of Stretto caused the following documents to be served via first-class mail on Hilltop Securities Inc., Attn: Bonnie Allen, Corporate Actions at 717 N Harwood St, Ste 3400, Dallas, TX 75201-6534, pursuant to USPS forwarding instructions:

- **Notice of Rescheduled Hearing to Consider Approval of Disclosure Statement for Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors** (Docket No. 1265)

- **Instructional Cover Letter to Nominees** (attached hereto as **Exhibit B**)

Furthermore, on December 1, 2023, at my direction and under my supervision, employees of Stretto caused the following documents to be served via first-class mail on the service list attached hereto as **Exhibit C**, pursuant to USPS forwarding instructions:

- **Joint Notice of Agreement on Restructuring Term Sheet by and Among the Debtors, the Ad Hoc Noteholder Group, and the Equity Committee** (Docket No. 1367)

- **Notice of Emergency Hearing Scheduled for October 31, 2023 at 1:00 p.m. (Prevailing Central Time)** (Docket No. 1369)

Furthermore, on December 1, 2023, at my direction and under my supervision, employees of Stretto caused the following document to be served via first-class mail on MP2 Energy Texas, LLC D/B/A Shell Energy Solutions, Attn: Aren Hansen at 909 Fannin St, Ste 3500, Houston, TX 77010-1034, pursuant to USPS forwarding instructions:

- **Certificate of No Objection Regarding Debtors' Motion for Order Approving (I) Global Settlement Between Debtors and Harper Construction Company, Inc. and (II) Granting Related Relief** (Docket No. 1385)

Furthermore, on December 1, 2023, at my direction and under my supervision, employees of Stretto caused the following documents to be served via first-class mail on the service list attached hereto as **Exhibit D**, pursuant to USPS forwarding instructions:

- **Notice of (I) Conditional Approval of Disclosure Statement, (II) Approval of (A) Solicitation and Voting Procedures and (B) Notice Procedures for the Assumption or Rejection of Executory Contracts and Unexpired Leases; (III) Combined Hearing to Consider Final Approval of Disclosure Statement and Confirmation pf Plan; and (IV) Establishing Notice and Objection Procedures for Final Approval of Disclosure Statement and Confirmation of Plan** (attached hereto as **Exhibit E**)

- **Release Opt-Out Form** (attached hereto as **Exhibit F**)

- **Instructional Cover Letter to Nominees** (attached hereto as **Exhibit G**)

[THIS SPACE INTENTIONALLY LEFT BLANK]

Furthermore, on December 1, 2023, at my direction and under my supervision, employees of Stretto caused the following documents to be served via first-class mail on Velox Clearing LLC at 600 Brickell Ave, Ste 2800, Miami, FL 33131-3087, pursuant to USPS forwarding instructions:

- **Notice of (I) Conditional Approval of Disclosure Statement, (II) Approval of (A) Solicitation and Voting Procedures and (B) Notice Procedures for the Assumption or Rejection of Executory Contracts and Unexpired Leases; (III) Combined Hearing to Consider Final Approval of Disclosure Statement and Confirmation pf Plan; and (IV) Establishing Notice and Objection Procedures for Final Approval of Disclosure Statement and Confirmation of Plan** (attached hereto as **Exhibit E**)

- **Third Amended Joint Chapter 11 Plan of Core Scientific, Inc. And Its Affiliated Debtors** (Docket No. 1438)

- **Disclosure Statement for Third Amended Joint Chapter 11 Plan of Core Scientific, Inc., and its Affiliated Debtors** (Docket No. 1439)

- **Order (I) Scheduling Combined Hearing on (A) Adequacy of Disclosure Statement and (B) Confirmation of Plan; (II) Conditionally Approving Disclosure Statement and Form and Manner of Notice of Conditional Disclosure Statement Hearing; (III) Establishing Solicitation and Voting Procedures; (IV) Establishing Notice and Objection Procedures for Confirmation of Proposed Plan; (V) Approving Notice Procedures for the Assumption or Rejection of Executory Contracts and Unexpired Leases; (VI) Approving Notice Procedures for Reinstatement of Claims; (VII) Establishing Rights Offering Procedures; and (VIII) Granting Related Relief** (Docket No. 1447, pages 1-17)

- **Solicitation and Voting Procedures** (attached hereto as **Exhibit H**)

- **Letter to Equity Holders of Core Scientific, Inc.** (attached hereto as **Exhibit I**)

- **Beneficial Holder Ballot for Voting to Accept or Reject the Third Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors** (attached hereto as **Exhibit J**)

- **Master Ballot for Voting to Accept or Reject the Third Amended Joint Chapter 11 Plan of Core Scientific, Inc. and its Affiliated Debtors** (attached hereto as **Exhibit K**)

- **Instructional Cover Letter to Nominees** (attached hereto as **Exhibit L**)

- **Postage-Prepaid Return Envelope**

- **Rights Offering Procedures** (Attached hereto as **Exhibit M**)

- **Rights Offering Subscription Form** (Attached hereto as **Exhibit N**)

- **Questions and Answers About the Core Scientific Rights Offering** (Attached hereto as **Exhibit O**)

- **Equity Rights Offering Economic Overview** (Attached hereto as **Exhibit P**)

Furthermore, on or before December 2, 2023, Stretto in accordance with USPS forwarding instructions served the following document via first-class mail on the service list attached hereto as **Exhibit Q**:

- **Notice of (I) Conditional Approval of Disclosure Statement, (II) Approval of (A) Solicitation and Voting Procedures and (B) Notice Procedures for the Assumption or Rejection of Executory Contracts and Unexpired Leases; (III) Combined Hearing to Consider Final Approval of Disclosure Statement and Confirmation pf Plan; and (IV) Establishing Notice and Objection Procedures for Final Approval of Disclosure Statement and Confirmation of Plan** (attached hereto as **Exhibit E**)

Furthermore, on or before December 4, 2023, Stretto in accordance with USPS forwarding instructions served the following document via first-class mail on Hunter B Childers at a redacted address:

- **Notice of Emergency Hearing on Backstop Approval Motion and Conditional Approval of Disclosure Statement Scheduled for November 14, 2023 at 2:00 p.m. (Prevailing Central Time)** (Docket No. 1392)

Furthermore, on or before December 5, 2023, Stretto in accordance with USPS forwarding instructions served the following document via first-class mail on the service list attached hereto as **Exhibit R**:

- **Notice of Commencement of Solicitation of Plan** (Docket No. 1451)

Dated: December 13, 2023

*/s/ Monica Arellano*
Monica Arellano
STRETTO
410 Exchange, Suite 100
Irvine, CA 92602
Telephone: 800-634-7734
Email: TeamCoreScientific@stretto.com

# __Exhibit A__

 STRETTO

To Custodians, Banks, Brokers, and Other Nominees (each, a "Nominee"):

*Re: Case Number: 22-90341 (DRJ) – Core Scientific, Inc., et al. CHAPTER 11 BANKRUPTCY*

**CUSIP No. 21873J 108**

Core Scientific, Inc., et al., (the "Debtors"), filed with the United States Bankruptcy Court for the Southern District of Texas (the "Court"), the enclosed *NOTICE OF EMERGENCY HEARING ON BACKSTOP APPROVAL MOTION AND CONDITIONAL APPROVAL OF DISCLOSURE STATEMENT SCHEDULED FOR NOVEMBER 14, 2023 AT 2:00 P.M. (PREVAILING CENTRAL TIME)* (the "Notice"). Stretto, the Claims and Noticing agent for Debtors, was instructed by the Debtors' counsel that the enclosed listed in Notice must be served upon nominees that hold stock in "street name" for the beneficial holders of the below-referenced CUSIP Number. You are receiving the Notice because your institution was identified by Depository Trust Company ("DTC") on the Security Position Report as of December 21, 2022 (the "Record Date").

| CUSIP/ISIN No | Record Date |
|---|---|
| 21873J 108 / US21873J1088 | December 21, 2022 |

Stretto has provided the appropriate number of sets of the Notice as requested upon Broadridge and Mediant, respectively. The following referenced job numbers pertain to the mailings established at Broadridge and Mediant. Please mail the provided materials via USPS First-Class Mail and Email to the record date beneficial holders in your books and records as applicable.

| Broadridge Job No.(s) | Mediant Job No.(s) |
|---|---|
| TBD | TBD |

If you are not the correct individual or department to research and disburse the requested information, please forward to the proper individual at your firm.

# **Exhibit B**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| CORE SCIENTIFIC, INC., *et al.*, | § | Case No. 22-90341 (DRJ) |
| | § | |
| Debtors[1] | § | (Jointly Administered) |
| | § | |

### NOTICE OF RESCHEDULED HEARING
### TO CONSIDER APPROVAL OF DISCLOSURE STATEMENT FOR JOINT
### CHAPTER 11 PLAN OF CORE SCIENTIFIC, INC. AND ITS AFFILIATED DEBTORS

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.      On June 30, 2023, Core Scientific, Inc. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), filed the *Notice of Hearing to Consider Approval of Disclosure Statement for Joint Chapter 11 Plan of Reorganization of Core Scientific, Inc., and Its Affiliated Debtors* (Docket No. 1024) scheduling a hearing on approval of the *Disclosure Statement for Joint Chapter 11 Plan of Reorganization of Core Scientific, Inc. and Its Debtor Affiliates*, dated June 20, 2023 (Docket No. 975) for August 7, 2023 at 12:00 p.m. (Prevailing Central Time) (the "**Disclosure Statement Hearing**") before the Honorable David R. Jones, United States Bankruptcy Judge, in the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**"), 515 Rusk Avenue, Courtroom 400, 4th Floor, Houston, Texas 77002.

2.      On July 27, 2023, the Debtors filed the *Notice of Rescheduled Hearing to Consider Approval of Disclosure Statement for Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors* (Docket No. 1090), rescheduling the Disclosure Statement Hearing for August 24, 2023 at 2:00 p.m. (Prevailing Central Time) and extending the deadline to object to the Disclosure Statement to August 10, 2023 at 5:00 p.m. (Prevailing Central Time).

3.      On August 9, 2023, the Debtors filed the *Notice of Rescheduled Hearing to Consider Approval of Disclosure Statement for Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors* (Docket No. 1129), rescheduling the Disclosure Statement Hearing for

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR, LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions VII, LLC (3198). The Debtors' corporate headquarters and service address is 210 Barton Springs Road, Suite 300, Austin, Texas 78704.

September 5, 2023 at 3:30 p.m. (Prevailing Central Time) and extending the deadline to object to the Disclosure Statement to August 24, 2023.

4.      On August 24, 2023, the Debtors filed the *Notice of Rescheduled Hearing to Consider Approval of Disclosure Statement for Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors* (Docket No. 1179), rescheduling the Disclosure Statement Hearing for September 15, 2023 at 9:00 a.m. (Prevailing Central Time) and extending the deadline to object to the Disclosure Statement to September 6, 2023.

5.      On September 7, 2023, the Debtors filed the *Disclosure Statement for Second Amended Joint Chapter 11 Plan of Reorganization of Core Scientific, Inc. and Its Affiliated Debtors* (Docket No. 1200) (as may be amended, supplemented, or otherwise modified from time to time, the "**Disclosure Statement**") and the Second *Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors* (Docket No. 1199) (as may be amended, supplemented, or otherwise modified from time to time, the "**Second Amended Plan**").

6.      On September 12, 2023, the Debtors filed the *Notice of Rescheduled Hearing to Consider Approval of Disclosure Statement for Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors* (Docket No. 1220), rescheduling the Disclosure Statement Hearing for September 27, 2023 at 9:00 a.m. (Prevailing Central Time).

7.      The Disclosure Statement Hearing has been rescheduled for **October 24, 2023 at 1:00 p.m. (Prevailing Central Time)**.  In advance of the Disclosure Statement Hearing, the Debtors intend to file a motion seeking conditional approval of the adequacy of information contained in the Disclosure Statement, establishing solicitation procedures, and seeking related relief.

8.      Any party in interest wishing to obtain a copy of the Disclosure Statement and the Second Amended Plan may do so free of charge at https://cases.stretto.com/CoreScientific. In addition, the Disclosure Statement and Second Amended Plan are on file with the Bankruptcy Court and may be reviewed online at: https://ecf.txsb.uscourts.gov/.  Note that a PACER password and login are needed to access the documents. A PACER password can be obtained at: www.pacer.psc.uscourts.gov.

9.      Upon conditional approval of the Disclosure Statement by the Bankruptcy Court, any party in interest that is entitled to vote on the Second Amended Plan will receive a copy of the conditionally approved Disclosure Statement, the Second Amended Plan, one or more ballots to vote to accept or reject the Second Amended Plan, and various documents related thereto, unless otherwise ordered by the Bankruptcy Court.

10.      The Disclosure Statement Hearing may be adjourned or rescheduled from time to time without further notice to parties in interest other than by an announcement in Bankruptcy Court of such adjournment or rescheduling on the date scheduled for the Disclosure Statement Hearing or as indicated in any notice of agenda of matters scheduled for hearing filed by the Debtors with the Bankruptcy Court.

Dated: September 26, 2023
      Houston, Texas

           */s/  Alfredo R. Pérez*

           WEIL, GOTSHAL & MANGES LLP
           Alfredo R. Pérez (15776275)
           Clifford W. Carlson (24090024)
           700 Louisiana Street, Suite 1700
           Houston, Texas  77002
           Telephone: (713) 546-5000
           Facsimile:  (713) 224-9511
           Email:  Alfredo.Perez@weil.com
                  Clifford.Carlson@weil.com

           -and-

           WEIL, GOTSHAL & MANGES LLP
           Ray C. Schrock (admitted *pro hac vice*)
           Ronit J. Berkovich (admitted *pro hac vice*)
           767 Fifth Avenue
           New York, New York  10153
           Telephone:  (212) 310-8000
           Facsimile:   (212) 310-8007
           Email:  Ray.Schrock@weil.com
                  Ronit.Berkovich@weil.com

           *Attorneys for Debtors*
           *and Debtors in Possession*

**Certificate of Service**

I hereby certify that on September 26, 2023 a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

_/s/ Alfredo R. Pérez_
Alfredo R. Pérez

# **<u>Exhibit C</u>**



**Exhibit C**
Served Via First-Class Mail

| Name | Attention | Address 1 | Address 2 | City | State | Zip |
|---|---|---|---|---|---|---|
| MP2 Energy Texas, LLC D/B/A Shell Energy Solutions | Attn: Aren Hansen | 909 Fannin St | Ste 3500 | Houston | TX | 77010-1034 |
| Shell Energy Solutions | Attn: Marty Lundstrom | 909 Fannin St | Ste 3500 | Houston | TX | 77010-1034 |

In re: Core Scientific, Inc., *et al.*
Case No. 22-90341 (DRJ)

# **Exhibit D**



**Exhibit D**
Served Via First-Class Mail

| Name | Attention | Address 1 | Address 2 | City | State | Zip |
|------|-----------|-----------|-----------|------|-------|-----|
| Velox Clearing LLC | | 600 Brickell Ave | Ste 2800 | Miami | FL | 33131-3087 |
| Velox Clearing LLC/Securities Lending | Attn: Corporate Actions | 600 Brickell Ave | Ste 2800 | Miami | FL | 33131-3087 |

In re: Core Scientific, Inc., *et al.*
Case No. 22-90341 (DRJ)

Page 1 of 1

# **<u>Exhibit E</u>**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| | § | |
| In re: | § | **Chapter 11** |
| | § | |
| **CORE SCIENTIFIC, INC.,** *et al.,* | § | **Case No. 22-90341 (CML)** |
| | § | |
| Debtors[1] | § | **(Jointly Administered)** |
| | § | |

**NOTICE OF (I) CONDITIONAL APPROVAL OF DISCLOSURE
STATEMENT, (II) APPROVAL OF (A) SOLICITATION AND VOTING
PROCEDURES AND (B) NOTICE PROCEDURES FOR THE ASSUMPTION OR
REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES;
(III) COMBINED HEARING TO CONSIDER FINAL APPROVAL OF
DISCLOSURE STATEMENT AND CONFIRMATION OF PLAN; AND (IV)
ESTABLISHING NOTICE AND OBJECTION PROCEDURES FOR FINAL
APPROVAL OF DISCLOSURE STATEMENT AND CONFIRMATION OF PLAN**

**TO ALL PARTIES IN INTEREST IN THE CHAPTER 11 CASES OF:**

| Debtor | Case Number |
|---|---|
| Core Scientific Mining LLC | 22-90340 |
| Core Scientific, Inc. | 22-90341 |
| Core Scientific Acquired Mining LLC | 22-90342 |
| Core Scientific Operating Company | 22-90343 |
| Radar Relay, Inc. | 22-90344 |
| Core Scientific Specialty Mining (Oklahoma) LLC | 22-90345 |
| American Property Acquisition, LLC | 22-90346 |
| Starboard Capital LLC | 22-90347 |
| RADAR LLC | 22-90348 |
| American Property Acquisitions I, LLC | 22-90349 |

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions VII LLC (3198). The Debtors' corporate headquarters is 210 Barton Springs Road, Suite 300, Austin, Texas 78704. The Debtors' service address is 2407 S. Congress Ave, Suite E-101, Austin, Texas 78704.

| Debtor | Case Number |
|---|---|
| American Property Acquisitions VII, LLC | 22-90350 |

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.     ***Conditional Approval of Disclosure Statement***.  On November 14, 2023 the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") held a hearing (the "**Conditional Disclosure Statement Hearing**") at which it conditionally approved the *Disclosure Statement for Third Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors,* filed on November 16, 2023 (Docket No. 1439) (including any exhibits and schedules thereto and as may be modified, amended, or supplemented, the "**Disclosure Statement**") of Core Scientific, Inc. and its affiliated debtors in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), and thereafter entered an order (the "**Disclosure Statement Order**") with respect thereto.  The Disclosure Statement Order, among other things, authorizes the Debtors to solicit votes to accept the *Third Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors*, filed on November 16, 2023 (Docket No. 1438) (including any exhibits and schedules thereto and as may be modified, amended, or supplemented, the "**Plan**").[2]

2.     ***Combined Hearing***.  A hearing to consider confirmation of the Plan and final approval of the Disclosure Statement (the "**Combined Hearing**") has been scheduled for **December 22, 2023 at 10:00 a.m. (Prevailing Central Time)**, before the Honorable Christopher M. Lopez, United States Bankruptcy Judge, in the Bankruptcy Court.  The Combined Hearing may be adjourned or continued from time to time by the Bankruptcy Court or the Debtors, with the consent of the Requisite Consenting Creditors, without further notice other than by a Bankruptcy Court announcement providing for such adjournment or continuation on its agenda.  The Plan may be modified, if necessary, prior to, during, or as a result of the Combined Hearing.

3.     ***Voting Record Date***.  Holders of Claims or Interests in Class 1 (April Convertible Notes Secured Claims), Class 2 (August Convertible Notes Secured Claims), Class 3 (Miner Equipment Lender Secured Claims), Class 5 (M&M Lien Secured Claims), Class 6 (Secured Mortgage Claims), Class 8 (General Unsecured Claims), Class 11 (Section 510(b) Claims), and Class 12 (Existing Common Interests), who are otherwise eligible to vote shall be entitled to vote to accept or reject the Plan as of **November 9, 2023** (the "**Voting Record Date**").

4.     ***Voting Deadline***.  If you received a Solicitation Package, including a Ballot, and intend to vote on the Plan, you must: (i) follow the instructions carefully; (ii) complete all of the required information on the Ballot; and (iii) execute and return your completed Ballot according to and as set forth in detail in the voting instructions on your Ballot so that it is actually received by the Debtors' solicitation and voting agent, Stretto, Inc. ("**Stretto**" or the "**Voting Agent**") on or before **December 13 2023 at 5:00 p.m. (Prevailing Central Time)** (the "**Voting**

---

[2]  All capitalized terms used but not defined herein or in the enclosed voting instructions have the meanings ascribed to them in the Plan, attached as Exhibit A to the Disclosure Statement.

Debtors' Exhibit No. 21
Page 18 of 153

Deadline"). **ANY FAILURE TO FOLLOW THE VOTING INSTRUCTIONS INCLUDED WITH YOUR BALLOT MAY DISQUALIFY YOUR BALLOT AND YOUR VOTE.**

5. ***Parties in Interest Not Entitled to Vote***.  Holders of Claims or Interests in Class 4 (Other Secured Claims), Class 7 (Priority Non-Tax Claims), Class 10 (Intercompany Claims), and Class 11 (Intercompany Interests) are not entitled to vote on the Plan and will not receive a Ballot.  If any creditor seeks to challenge the Allowed amount of its Claim for voting purposes, such creditor must file with the Court a motion for an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing such Claim for voting purposes in a different amount (a "**Rule 3018(a) Motion**").  Any Rule 3018(a) Motion must be filed with the Court not later than **5:00 p.m. (Prevailing Central Time) on December 8, 2023**.  Upon the filing of any such Rule 3018(a) Motion, such creditor's Ballot shall be counted in accordance with the guidelines provided in the Solicitation and Voting Procedures attached as **Exhibit 2** to the Disclosure Statement Order, unless temporarily Allowed in a different amount by an order of the Court entered prior to or concurrent with entry of an order confirming the Plan.

6. ***Objections to Confirmation***.  The deadline to object or respond to confirmation of the Plan or final approval of the Disclosure Statement is **December 15, 2023 at 5:00 p.m. (Prevailing Central Time)** (the "**Objection Deadline**").

7. ***Form and Manner of Objections to Confirmation***.  Objections and responses, if any, to confirmation of the Plan or final approval of the Disclosure Statement, must: (i) be in writing; (ii) conform to the Bankruptcy Rules and the Bankruptcy Local Rules, and any order of the Court; (iii) set forth the name of the objecting party and the nature and amount of Claims or Interests held or asserted by the objecting party against the Debtors' estates or property; (iv) provide the basis for the objection and the specific grounds therefor, and, if practicable, a proposed modification to the Plan that would resolve such objection; and (v) be filed with the Bankruptcy Court (with proof of service) via ECF or by mailing to the Bankruptcy Court at United States Bankruptcy Court Clerk's Office, United States Courthouse, 515 Rusk Avenue, Courtroom 401, 4th Floor, Houston, Texas 77002, so as to be actually received no later than the Objection Deadline.

8. IF AN OBJECTION TO CONFIRMATION OF THE PLAN OR FINAL APPROVAL OF THE DISCLOSURE STATEMENT IS NOT FILED AND SERVED STRICTLY AS PRESCRIBED HEREIN, THEN THE OBJECTING PARTY MAY BE BARRED FROM OBJECTING TO CONFIRMATION OF THE PLAN OR FINAL APPROVAL OF THE DISCLOSURE STATEMENT OR THE ADEQUACY THEREOF AND MAY NOT BE HEARD AT THE HEARING.

9. ***Additional Information***.  Any party in interest wishing to obtain information about the solicitation procedures or copies of the Disclosure Statement, the Plan, or other solicitation materials should contact Stretto through (i) e-mail at CoreScientificInquiries@stretto.com, (ii) by writing to Core Scientific, Inc., Ballot Processing Center, c/o Stretto, Inc., 410 Exchange, Suite 100, Irvine, CA 92602, or (iii) via telephone at (949) 404-4152 (U.S./Canada Toll-Free) or + (888) 765-7875 (outside of the U.S.).  Interested parties may also review the Disclosure Statement and the Plan free of charge at

Debtors' Exhibit No. 21
Page 19 of 153

https://dm.epiq11.com/sertasimmons.  In addition, the Disclosure Statement and Plan are on file with the Bankruptcy Court and may be reviewed for a fee by accessing the Bankruptcy Court's website: https://www.txs.uscourts.gov/page/bankruptcycourt.  Note that a PACER password and login are needed to access documents on the Bankruptcy Court's website.  A PACER password can be obtained at: https://pacer.uscourts.gov/.

**NOTICE REGARDING CERTAIN RELEASE,
EXCULPATION, AND INJUNCTION PROVISIONS IN PLAN**

**If you (i) vote to accept the Plan, (ii) are solicited to vote to accept or reject the Plan, but do not vote to either accept or reject the Plan, and do not opt out of granting the releases set forth in the Plan, (iii) vote, or are deemed, to reject the Plan or are presumed to accept the Plan but do not opt out of granting the releases set forth in the Plan, or (iv) were given notice of the opportunity to opt out of granting the releases contained in the Plan but do not opt out, you shall be deemed to have consented to the releases contained in Section 10.6(b) of the Plan.  The releases as presented in the Plan are provided below:**

**SECTION 10.5**      **INJUNCTION.**

**Except as otherwise expressly provided in the Plan or for distributions required to be paid or delivered pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold Claims or Interests that have been released pursuant to Section 0 or Section 0, shall be discharged pursuant to Section** Error! Reference source not found. **of the Plan, or are subject to exculpation pursuant to Section** Error! Reference source not found.**, and all Subcontractors and all other parties in interest are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Released Parties, and/or the Exculpated Parties (to the extent of the exculpation provided pursuant to Section** Error! Reference source not found. **with respect to the Exculpated Parties): (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (iii) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless (x) such Entity has timely asserted such setoff right either in a Filed Proof of Claim, or in another document Filed with the Bankruptcy Court explicitly preserving such setoff or that otherwise indicates that such entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise or (y) such right to setoff arises under a postpetition agreement with the Debtors or an Executory Contract that has been assumed by the Debtors as of the Effective Date; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released, settled, and/or treated, entitled to a distribution, or cancelled pursuant to the Plan or otherwise Disallowed;**

Debtors' Exhibit No. 21
Page 20 of 153

*provided* that such persons who have held, hold, or may hold Claims against, or Interests in, a Debtor, a Reorganized Debtor, or an Estate shall not be precluded from exercising their rights and remedies, or obtaining the benefits, solely pursuant to and consistent with the terms of the Plan.

Subject in all respects to Section Error! Reference source not found., **no entity or person may commence or pursue a Claim or Cause of Action of any kind against any Released Party or Exculpated Party that arose or arises from, in whole or in part, the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors (which includes, for the avoidance of doubt, all claims and Causes of Action asserted or assertable in the Securities Class Action), the DIP Facility, the Convertible Notes Agreements, the Miner Equipment Lender Agreements, the Mortgage Agreements, the General Contracts, any and all agreements relating to M&M Liens, and any and all related agreements, instruments, and/or other documents, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Plan Settlements, the New Secured Convertible Notes Documents, the New Secured Notes Documents, the Contingent Payment Obligations Documents, the New Miner Equipment Lender Debt Documents, the Exit Facility Documents, the New Warrants Agreement, the Rights Offering, the Backstop Commitment Letter, the Initial DIP Loan Documents, the DIP Facility, the Terminated RSA, the RSA, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan (including, but not limited to, the New Common Interests), or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a claim of willful misconduct, fraud or gross negligence against a Released Party or Exculpated Party and (ii) specifically authorizing such Entity or Person to bring such Claim or Cause of Action against any such Released Party or Exculpated Party. The Bankruptcy Court shall have sole and exclusive jurisdiction to determine whether a Claim or Cause of Action is colorable and, only to the extent legally permissible and as provided for in Section** Error! Reference source not found.**, shall have jurisdiction to adjudicate the underlying colorable Claim or Cause of Action.**

SECTION 10.6(a)     RELEASES BY THE DEBTORS.

Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the obligations of the Debtors under the Plan and the contributions of the Released Parties to facilitate and

5

implement the Plan, except as otherwise provided in the Plan or in the Confirmation Order, on and after the Effective Date, the Released Parties are deemed conclusively, absolutely, unconditionally and irrevocably, released and discharged by the Debtors, the Reorganized Debtors, and the Estates from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Reorganized Debtors, the Estates, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors (which includes, for the avoidance of doubt, all claims and Causes of Action asserted or assertable in the Securities Class Action), the DIP Facility, the Convertible Notes Agreements, the Miner Equipment Lender Agreements, the Mortgage Agreements, the General Contracts, any and all agreements relating to M&M Liens, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Plan Settlements, the New Secured Convertible Notes Documents, the New Secured Notes Documents, the Contingent Payment Obligations Documents, the New Miner Equipment Lender Debt Documents, the Exit Facility Documents, the New Warrants Agreement, the Rights Offering, the Backstop Commitment Letter, the Initial DIP Loan Documents, the DIP Facility, the Terminated RSA, the RSA, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan (including, but not limited to, the New Common Interests), or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth in Section 0 of the Plan (i) shall only be applicable to the maximum extent permitted by law; (ii) shall not be construed as (a) releasing any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud (*provided* that actual fraud shall not exempt from the scope of these Debtor releases any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, (b) releasing any Released Party from Claims or Causes of Action held by the Debtors arising from an act or omission that is determined by a Final Order or by a federal government agency to have constituted a violation of any federal securities laws or (c) releasing any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document,

6

instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

**SECTION 10.6(b)     RELEASES BY HOLDERS OF CLAIMS AND INTERESTS.**

Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, except as otherwise provided in the Plan or in the Confirmation Order, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, each Releasing Party, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released, and discharged the Debtors, the Reorganized Debtors, and the Released Parties from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims or Causes of Action asserted or that may be asserted on behalf of the Debtors or their Estates, that such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, including any Claims or Causes of Action based on or relating to, or in any manner arising from, in whole or in part, the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors (which includes, for the avoidance of doubt, all claims and Causes of Action asserted or assertable in the Securities Class Action), the DIP Facility, the Convertible Notes Agreements, the Miner Equipment Lender Agreements, the Mortgage Agreements, the General Contracts, any and all agreements relating to M&M Liens, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Plan Settlements, the New Secured Convertible Notes Documents, the New Secured Notes Documents, the Contingent Payment Obligations Documents, the New Miner Equipment Lender Debt Documents, the Exit Facility Documents, the New Warrants Agreement, the Rights Offering, the Backstop Commitment Letter, the Initial DIP Loan Documents, the DIP Facility, the Terminated RSA, the RSA, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan (including, but not limited to, the New Common Interests), or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth in Section 0 of the Plan (i) shall only be applicable to the maximum extent permitted by law; and (ii) shall not be construed as (a) releasing any Released Party from Claims or Causes of Action arising from an act or

Debtors' Exhibit No. 21
Page 23 of 153

omission that is judicially determined by a Final Order to have constituted actual fraud (*provided* that actual fraud shall not exempt from the scope of these third-party releases any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, or (b) releasing any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

**SECTION 10.7**       **EXCULPATION**.

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out, in whole or in part, from the Petition Date through the Effective Date, of the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors, the DIP Facility, the Convertible Notes Agreements, the Miner Equipment Lender Agreements, the Mortgage Agreements, the General Contracts, any and all agreements relating to M&M Liens, and related agreements, instruments, or other documents, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Plan Settlements, the New Secured Convertible Notes Documents, the New Secured Notes Documents, the Contingent Payment Obligations Documents, the New Miner Equipment Lender Debt Documents, the Exit Facility Documents, the New Warrants Agreement, the Rights Offering, the Backstop Commitment Letter, the Initial DIP Loan Documents, the DIP Facility, the Terminated RSA, the RSA, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan (including, but not limited to, the New Common Interests), or the distribution of property under the Plan, or any other related agreement, except for Claims or Causes of Action arising from an act or omission that is judicially determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects, such Exculpated Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities. The Exculpated Parties have, and upon completion of the Plan, shall be deemed to have, participated in good faith and in compliance with all applicable laws with regard to the solicitation and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan. Notwithstanding anything to the contrary in the foregoing, the exculpations set forth in Section Error! Reference source not found. of the Plan

8

**(i) shall only be applicable to the maximum extent permitted by law; and (ii) shall not be construed as (a) exculpating any Exculpated Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud (*provided* that actual fraud shall not exempt from the scope of these exculpations any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, or (b) exculpating any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.**

**SECTION 5.17**      <u>**CANCELLATION OF LIENS**</u>.

(a)      Except as otherwise specifically provided in the Plan, including sections **Error! Reference source not found.** and **Error! Reference source not found.** of the Plan, all notes, instruments, certificates evidencing debt of the Debtors and Existing Common Interests will be cancelled and obligations of the Debtors thereunder will be discharged and of no further force or effect, except for the purpose of allowing the applicable agents and trustees to receive distributions from the Debtors under the Plan and to make any further distributions to the applicable Holders on account of their Allowed Claims and Interests.

(b)      After the Effective Date and following (i) the distributions to Holders on account of Allowed Convertible Notes Secured Claims and Allowed Miner Equipment Lender Secured Claims and/or (ii) with regard to Allowed M&M Lien Secured Claims, satisfaction of the applicable M&M Lien Takeback Debt, the Debtors or the Reorganized Debtors, at their expense, may, in their sole discretion, take any action necessary to terminate, cancel, extinguish, and/or evidence the release of any and all mortgages, deeds of trust, Liens, pledges, and other security interests with respect to the Convertible Notes Secured Claims, Miner Equipment Lender Secured Claims, and M&M Lien Secured Claims, including, without limitation, the preparation and filing of any and all documents necessary to terminate, satisfy, or release any mortgages, deeds of trust, Liens, pledges, and other security interests held by the Holders of the M&M Lien Secured Claims, Miner Equipment Lender Secured Claims, the Notes Agent, and/or Convertible Noteholders, including, without limitation, UCC-3 termination statements.

<u>**Relevant Definitions Related to Release and Exculpation Provisions**</u>:

     ***"Exculpated Parties"*** means each of the following in their capacity as such and, in each case, to the maximum extent permitted by law: (i) the Debtors; and (ii) Equity Committee and its members, each solely in their capacity as such.

     ***"Related Parties"*** means with respect to a Person, that Person's current and former Affiliates, and such Person's and its current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, fiduciaries,

9

trustees, advisory board members, financial advisors, partners, limited partners, general partners, attorneys, accountants, managed accounts or funds, management companies, fund advisors, investment bankers, consultants, representatives, and other professionals, and such Person's respective heirs, executors, estates, and nominees, each in their capacity as such, and any and all other Persons or Entities that may purport to assert any Cause of Action derivatively, by or through the foregoing entities.

*"Released Parties"* means, collectively: (i) the Debtors; (ii) the Reorganized Debtors; (iii) the Equity Committee and its members that are party to the RSA, solely in their capacities as such; (iv) the Backstop Parties; (v) the Settling Miner Equipment Lenders; (vi) Brown Corporation; (vii) Holliwood LLC; (viii) the Ad Hoc Noteholder Group; (ix) the Consenting Creditors; (x) the Exit Lenders; (xi) the Notes Agent, solely in its capacity as such; and (xii) with respect to each of the foregoing Persons in clauses (i) through (xi), all Related Parties. Notwithstanding the foregoing, any Person that opts out of the releases set forth in section 10.6(b) of the Plan shall not be deemed a Released Party thereunder.

*"Releasing Parties"* means collectively, and in each case solely in their capacity as such, (i) the Debtors; (ii) the Reorganized Debtors; (iii) with respect to each of the foregoing Persons in clauses (i) through (ii), all Related Parties; (iv) the Released Parties; (v) the Holders of all Claims or Interests that vote to accept the Plan; (vi) the Holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but that do not vote either to accept or to reject the Plan and do not opt out of granting the releases set forth herein; (vii) the Holders of all Claims or Interests that vote, or are deemed, to reject the Plan or that are presumed to accept the Plan but do not opt out of granting the releases set forth herein; and (viii) the Holders of all Claims and Interests and all Other Beneficial Owners that were given notice of the opportunity to opt out of granting the releases set forth herein but did not opt out.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

**Notice of Assumption and Rejection of Executory
Contracts and Unexpired Leases of Debtors and Related Procedures**

1.      Please take notice that, in accordance with Article VIII of the Plan and sections 365 and 1123 of the Bankruptcy Code, as of and subject to the occurrence of the Effective Date and the payment of any applicable Cure Amount, and subject to section **Error! Reference source not found.** of the Plan, all Executory Contracts and Unexpired Leases to which any of the Debtors are parties shall be deemed assumed, unless such contract or lease (i) was previously assumed or rejected by the Debtors, pursuant to Final Order of the Bankruptcy Court, (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto, (iii) is the subject of a motion to reject Filed by the Debtors on or before the Confirmation Date, or (iv) is specifically designated as a contract or lease to be rejected on the Schedule of Rejected Contracts.  Subject to (i) satisfaction of the conditions set forth in section 1.1 of the Plan, (ii) resolution of any disputes in accordance with section **Error! Reference source not found.** of the Plan with respect to the Executory Contracts or Unexpired Leases subject to such disputes, and (iii) the occurrence of the

Debtors' Exhibit No. 21
Page 26 of 153

Effective Date, entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the assumptions or rejections provided for in the Plan pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Each Executory Contract and Unexpired Lease assumed or assumed and assigned pursuant to the Plan shall vest in and be fully enforceable by the applicable Reorganized Debtor or assignee in accordance with its terms, except as modified by any provision of the Plan, any order of the Bankruptcy Court authorizing and providing for its assumption or assumption and assignment, or applicable law.

2.      The Plan provides that to the maximum extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption of such Executory Contract or Unexpired Lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.

3.      Section 8.2 of the Plan stipulates that the Debtors shall file, as part of the Plan Supplement, the Schedule of Rejected Contracts and the Schedule of Assumed Contracts. The Plan further provides that prior to the Combined Hearing, the Debtors shall serve a notice on parties to Executory Contracts or Unexpired Leases to be assumed, assumed and assigned, or rejected reflecting the Debtors' intention to potentially assume, assume and assign, or reject the contract or lease in connection with the Plan and, where applicable, setting forth the proposed Cure Amount (if any). If a counterparty to any Executory Contract or Unexpired Lease that the Debtors or Reorganized Debtors, as applicable, intend to assume or assume and assign is not listed on such a notice, the proposed Cure amount for such Executory Contract or Unexpired Lease shall be deemed to be Zero Dollars ($0). **Any objection by a counterparty to an Executory Contract or Unexpired Lease to the proposed assumption, assumption and assignment, or related Cure Amount must be Filed, served, and actually received by the Debtors within fourteen (14) days of the service of the assumption notice, or such shorter period as agreed to by the parties or authorized by the Bankruptcy Court.** If there is an Assumption Dispute pertaining to assumption of an Executory Contract or Unexpired Lease (other than a dispute pertaining to a Cure Amount), such dispute shall be heard by the Bankruptcy Court prior to such assumption being effective; *provided* that the Debtors or the Reorganized Debtors, as applicable, may, with the consent of the Requisite Consenting Creditors, settle any dispute regarding the Cure Amount or the nature thereof without any further notice to any party or any action, order, or approval of the Bankruptcy Court.

4.      Section 8.2 of the Plan further provides that-any counterparty to an Executory Contract or Unexpired Lease that does not timely object to the notice of the proposed assumption of such Executory Contract or Unexpired Lease shall be deemed to have assented to assumption of the applicable Executory Contract or Unexpired Lease notwithstanding any provision thereof that purports to (i) prohibit, restrict, or condition the transfer or assignment of such contract or lease; (ii) terminate or modify, or permit the termination or modification of, a contract or lease as a result of any direct or indirect transfer or assignment of the rights of any Debtor under such contract or lease or a change, if any, in the ownership or control to the extent contemplated by the Plan; (iii) increase, accelerate, or otherwise alter any obligations or liabilities of any Debtor or any

Debtors' Exhibit No. 21
Page 27 of 153

Reorganized Debtor, as applicable, under such Executory Contract or Unexpired Lease; or (iv) create or impose a Lien upon any property or Asset of any Debtor or any Reorganized Debtor, as applicable. Each such provision shall be deemed to not apply to the assumption of such Executory Contract or Unexpired Lease pursuant to the Plan and counterparties to assumed Executory Contracts or Unexpired Leases that fail to object to the proposed assumption in accordance with the terms set forth in Section **Error! Reference source not found.** of the Plan, shall forever be barred and enjoined from objecting to the proposed assumption or to the validity of such assumption (including with respect to any Cure Amounts or the provision of adequate assurance of future performance), or taking actions prohibited by the foregoing or the Bankruptcy Code on account of transactions contemplated by the Plan.

5.      Section 8.3 of the Plan provides that unless otherwise provided by an order of the Bankruptcy Court, Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be Filed with the Bankruptcy Court by the later of thirty (30) days from (i) the date of entry of an order of the Bankruptcy Court approving such rejection, (ii) the effective date of the rejection of such Executory Contract or Unexpired Lease, and (iii) the Effective Date. **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed within such time shall be Disallowed pursuant to the Confirmation Order or such other order of the Bankruptcy Court, as applicable, forever barred from assertion, and shall not be enforceable against, as applicable, the Debtors, the Estates, the Reorganized Debtors, or property of the foregoing parties, without the need for any objection by the Debtors or the Reorganized Debtors, as applicable, or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules, if any, or a Proof of Claim to the contrary**.

**UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS COMBINED HEARING NOTICE, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.**

6.      **Plan Supplement**.  The Debtors will file and serve any supplement to the Plan on or before **December 8, 2023**.

### Notice of Procedures with Respect to Reinstated Claims

1.      Please take notice that, in accordance with Article IV of the Plan and section 1124 of the Bankruptcy Code, as of and subject to the occurrence of the Effective Date and the payment of any applicable Cure Amount, and subject to section 7.11 of the Plan, all Other Secured Claims in Class 4 shall be Reinstated.  Subject to (i) satisfaction of the conditions set forth in section 7.11 of the Plan, (ii) resolution of any disputes in accordance with section 7.11 of the Plan with respect to the Cure Amounts subject to such disputes, and (iii) the occurrence of the Effective Date, entry of the Confirmation Order by the Bankruptcy Court shall authorize Reinstatement of the Other Secured Claims in Class 4 pursuant to section 1124 of the Bankruptcy Code.

2.      Section 7.11 of the Plan stipulates least ten (10) days before the deadline to object to Confirmation of the Plan, the Debtors shall serve a notice on Holders of Other Secured

Debtors' Exhibit No. 21
Page 28 of 153

Claims in Class 4 setting forth the proposed Cure Amount (if any) necessary to Reinstate such Claims. Any objection by a Holder of an Other Secured Claim in Class 4 to the proposed Cure Amount must be Filed, served, and actually received by the Debtors within fourteen (14) days of the service of the notice of proposed Cure Amount, or such shorter period as agreed to by the parties or authorized by the Bankruptcy Court. Any Holder of an Other Secured Claim in Class 4 that does not timely object to the notice of the proposed Cure Amount shall be deemed to have assented to the Reinstatement of its Claim and the proposed Cure Amount listed therein and shall be shall forever be barred and enjoined from objecting to the Reinstatement of its Claim on the grounds that sections 1124(2)(A), (C), or (D) of the Bankruptcy Code have not been satisfied.

3.     Section 7.11 of the Plan further provides that to the extent there is a dispute relating to the Cure Amount, the Debtors may Reinstate the applicable Other Secured Claim prior to the resolution of the Cure Amount dispute; provided that the Debtors or the Reorganized Debtors, as applicable, reserve Cash in an amount sufficient to pay the full amount reasonably asserted as the required Cure Amount by the Holder of the applicable Other Secured Claim (or such smaller amount as may be fixed or estimated by the Bankruptcy Court or otherwise agreed to by such Holder and the applicable Reorganized Debtor).  Subject to resolution of any dispute regarding any Cure Amount, all Cure Amounts shall be satisfied on the Effective Date, or otherwise as soon as practicable thereafter, by the Debtors or Reorganized Debtors, as the case may be.

**UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS COMBINED HEARING NOTICE, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.**

**QUESTIONS:**

If you have questions about this Combined Hearing Notice, please contact Stretto through (i) e-mail at CoreScientificInquiries@stretto.com, (ii) by writing to Core Scientific, Inc., Ballot Processing Center, c/o Stretto, Inc., 410 Exchange, Suite 100, Irvine, CA 92602, (iii) via telephone at (949) 404-4152 (U.S./Canada Toll-Free) or + (888) 765-7875 (outside of the U.S.), or (iv) visiting https://cases.stretto.com/CoreScientific.

*[Remainder of Page Intentionally Left Blank]*

13

Dated:  November 17, 2023
        Houston, Texas

Respectfully submitted,

*/s/ Alfredo R. Pérez*

WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (15776275)
Clifford W. Carlson (24090024)
700 Louisiana Street, Suite 1700
Houston, Texas  77002
Telephone: (713) 546-5000
Facsimile:  (713) 224-9511
Email:  Alfredo.Perez@weil.com
        Clifford.Carlson@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Ray C. Schrock (admitted *pro hac vice*)
Ronit J. Berkovich (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:   (212) 310-8007
Email:  Ray.Schrock@weil.com
        Ronit.Berkovich@weil.com

*Attorneys for Debtors*
*and Debtors in Possession*

14

# **Exhibit F**

**Other Beneficial Owner**

### OPTIONAL:  RELEASE OPT OUT FORM

You are receiving this opt out form (the "**Release Opt Out Form**") because you (i) are or may be a Holder of a Claim against Core Scientific, Inc. and its debtor affiliates (collectively, the "**Debtors**") that is not entitled to vote on the *Third Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors*, filed on November 16, 2023 (Docket No. 1438) (as may be modified, amended, or supplemented, the "**Plan**")[1] or (ii) are a current or former shareholder of equity securities of the Debtors, purchased during the period from January 3, 2022 through December 20, 2022, inclusive (an "**Other Beneficial Owner**") that holds or may hold a claim that will be released pursuant to the Plan.   A holder of Claims, Interests, and/or an Other Beneficial Owner is deemed to grant the third-party releases set forth below unless such holder affirmatively opts out on or before the Opt Out Deadline (as defined below).

**THIS RELEASE OPT OUT FORM PROVIDES YOU WITH THE OPTION TO NOT GRANT THE VOLUNTARY RELEASE CONTAINED IN SECTION 10.6(b) OF THE PLAN.  PURSUANT TO THE PLAN, IF YOU, AS A HOLDER OF CLAIMS OR INTEREST, OR AS AN OTHER BENEFICIAL OWNER, WHO HAS BEEN GIVEN NOTICE OF THE OPPORTUNITY TO OPT OUT OF GRANTING THE RELEASES SET FORTH IN THE PLAN BUT DO NOT OPT OUT, YOU ARE AUTOMATICALLY DEEMED TO HAVE CONSENTED TO THE RELEASE PROVISIONS IN THE PLAN.  TO THE EXTENT THAT YOU HAVE AN ALLOWED CLAIM OR INTEREST, YOU WILL RECEIVE THE SAME RECOVERY AND TREATMENT ON ACCOUNT OF YOUR CLAIM OR INTEREST UNDER THE PLAN REGARDLESS OF WHETHER YOU ELECT TO NOT GRANT THE VOLUNTARY RELEASE CONTAINED IN SECTION 10.6(b) OF THE PLAN.  IF YOU ELECT TO NOT GRANT THE VOLUNTARY RELEASE CONTAINED IN SECTION 10.6(b) OF THE PLAN, HOWEVER, YOU MAY NOT BE A "RELEASED PARTY" WITH RESPECT TO THE VOLUNTARY THIRD-PARTY RELEASE BY RELEASING PARTIES.   IF YOU ARE ENTITLED TO VOTE ON THE PLAN AND VOTE TO ACCEPT THE PLAN, YOU SHALL BE DEEMED TO HAVE CONSENTED TO THE RELEASES CONTAINED IN SECTION 10.6(b) OF THE PLAN.**

**IF YOU ARE AN OTHER BENEFICIAL OWNER AND DO NOT OPT OUT OF GRANTING THE RELEASES SET FORTH IN SECTION 10.6(b) OF THE PLAN, YOU WILL BE AUTOMATICALLY DEEMED TO HAVE CONSENTED TO THE RELEASE PROVISIONS SET FORTH IN SECTION 10.6(b) OF THE PLAN, INCLUDING THE RELEASE OF ANY OF YOUR CLAIMS ASSERTED OR ASSERTABLE AGAINST THE DEBTORS' DIRECTORS AND OFFICERS IN THE SECURITIES CLASS ACTION LAWSUIT PENDING AGAINST IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TEXAS.**

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan or the *Disclosure Statement for Third Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors*, filed on November 16, 2023 (Docket No. 1439) (as may be modified, amended, or supplemented, the "**Disclosure Statement**"), as applicable.

**Other Beneficial Owner**

**YOU WILL BE DEEMED TO HAVE RELEASED WHATEVER CLAIMS YOU MAY HAVE AGAINST THE DEBTORS AND MANY OTHER PEOPLE AND ENTITIES (INCLUDING THE DEBTORS' OFFICERS AND DIRECTORS) UNLESS YOU RETURN OR ELECTRONICALLY SUBMIT THIS RELEASE OPT OUT FORM BY DECEMBER 13, 2023 AT 5:00 P.M. (PREVAILING CENTRAL TIME) (THE "OPT OUT DEADLINE").**

If you believe you are a holder of a Claim, Interest, or an Other Beneficial Owner with respect to the Debtors or Released Parties (as defined below) and choose to opt out of the third-party releases set forth in Section 10.6(b) of the Plan, please submit your election to opt out through one of the following methods: (i) completing, signing, dating, and returning this Release Opt Out Form promptly via first class mail (or in the enclosed reply envelope provided), overnight courier, or hand delivery to the Voting Agent at the address set forth below, so that it is received by the Voting Agent prior to the Opt Out Deadline, or (ii) by completing and signing the Release Opt Out Form via the Online Portal located at https://balloting.stretto.com/CoreScientific/OptOut/OtherBeneficialOwners

**To ensure that your hard copy Release Opt Out Form is counted, clearly sign and return your Release Opt Out Form in the enclosed pre-addressed, or via first-class mail, overnight courier, or hand delivery to:**

| STRETTO'S ADDRESS FOR RECEIPT OF RELEASE OPT OUT FORM |
|---|
| CORE SCIENTIFIC, INC.<br>BALLOT PROCESSING CENTER<br>C/O STRETTO, INC.<br>410 EXCHANGE, SUITE 100<br>IRVINE, CA 92602 |

**THIS RELEASE OPT OUT FORM MUST BE ACTUALLY RECEIVED BY THE VOTING AGENT BY THE OPT OUT DEADLINE. IF THE RELEASE OPT OUT FORM IS RECEIVED AFTER THE OPT OUT DEADLINE, IT WILL NOT BE COUNTED.**

**Item 1.Amount of Claim**. The undersigned hereby certifies that, as of September 25, 2023, the undersigned was the Holder (or authorized signatory of such a Holder) of Claims or Interests in the amount set forth below, or is an Other Beneficial Owner.

| Class 4 (Other Secured Claims) | Amount: $_____ |
|---|---|
| Class 7 (Priority Non-Tax Claims) | Amount: $_____ |
| Other Beneficial Owner | Shares: _____ |

2

**Other Beneficial Owner**

**Item 2.        Releases.**

The Plan contains the following release provisions:

**SECTION 10.6(a)        RELEASES BY THE DEBTORS.**

NOTWITHSTANDING ANYTHING CONTAINED IN THE PLAN TO THE CONTRARY, AS OF THE EFFECTIVE DATE, PURSUANT TO SECTION 1123(B) OF THE BANKRUPTCY CODE, FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, INCLUDING THE OBLIGATIONS OF THE DEBTORS UNDER THE PLAN AND THE CONTRIBUTIONS OF THE RELEASED PARTIES TO FACILITATE AND IMPLEMENT THE PLAN, EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR IN THE CONFIRMATION ORDER, ON AND AFTER THE EFFECTIVE DATE, THE RELEASED PARTIES ARE DEEMED CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY AND IRREVOCABLY, RELEASED AND DISCHARGED BY THE DEBTORS, THE REORGANIZED DEBTORS, AND THE ESTATES FROM ANY AND ALL CLAIMS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES, AND LIABILITIES WHATSOEVER, INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, THAT THE DEBTORS, THE REORGANIZED DEBTORS, THE ESTATES, OR THEIR AFFILIATES WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER PERSON, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE CHAPTER 11 CASES, THE DEBTORS, THE GOVERNANCE, MANAGEMENT, TRANSACTIONS, OWNERSHIP, OR OPERATION OF THE DEBTORS, THE PURCHASE, SALE OR RESCISSION OF ANY SECURITY OF THE DEBTORS OR THE REORGANIZED DEBTORS (WHICH INCLUDES, FOR THE AVOIDANCE OF DOUBT, ALL CLAIMS AND CAUSES OF ACTION ASSERTED OR ASSERTABLE IN THE SECURITIES CLASS ACTION), THE DIP FACILITY, THE CONVERTIBLE NOTES AGREEMENTS, THE MINER EQUIPMENT LENDER AGREEMENTS, THE MORTGAGE AGREEMENTS, THE GENERAL CONTRACTS, ANY AND ALL AGREEMENTS RELATING TO M&M LIENS, THE FORMULATION, PREPARATION, DISSEMINATION, SOLICITATION, NEGOTIATION, ENTRY INTO, OR FILING OF THE PLAN (INCLUDING THE PLAN SUPPLEMENT), THE DISCLOSURE STATEMENT, OR ANY RESTRUCTURING TRANSACTION, CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT (INCLUDING ANY LEGAL OPINION REQUESTED BY ANY ENTITY REGARDING ANY TRANSACTION, CONTRACT, INSTRUMENT, DOCUMENT, OR OTHER AGREEMENT CONTEMPLATED BY THE PLAN OR THE RELIANCE BY ANY RELEASED PARTY ON THE PLAN OR CONFIRMATION ORDER IN LIEU OF SUCH LEGAL OPINION) CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN, THE PLAN SUPPLEMENT, THE DISCLOSURE STATEMENT, THE PLAN SETTLEMENTS, THE NEW SECURED CONVERTIBLE NOTES DOCUMENTS, THE

3

**Other Beneficial Owner**

**NEW SECURED NOTES DOCUMENTS, THE CONTINGENT PAYMENT OBLIGATIONS DOCUMENTS, THE NEW MINER EQUIPMENT LENDER DEBT DOCUMENTS, THE EXIT FACILITY DOCUMENTS, THE NEW WARRANTS AGREEMENT, THE RIGHTS OFFERING, THE BACKSTOP COMMITMENT LETTER, THE INITIAL DIP LOAN DOCUMENTS, THE DIP FACILITY, THE TERMINATED RSA, THE RSA, THE CHAPTER 11 CASES, THE PURSUIT OF CONFIRMATION AND CONSUMMATION OF THE PLAN, THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN OR CONFIRMATION ORDER, INCLUDING THE ISSUANCE OR DISTRIBUTION OF SECURITIES PURSUANT TO THE PLAN (INCLUDING, BUT NOT LIMITED TO, THE NEW COMMON INTERESTS), OR THE DISTRIBUTION OF PROPERTY UNDER THE PLAN, OR ANY OTHER AGREEMENT, ACT OR OMISSION, TRANSACTION, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE. NOTWITHSTANDING ANYTHING TO THE CONTRARY, THE RELEASES SET FORTH IN SECTION 0 OF THE PLAN (I) SHALL ONLY BE APPLICABLE TO THE MAXIMUM EXTENT PERMITTED BY LAW; (II) SHALL NOT BE CONSTRUED AS (A) RELEASING ANY RELEASED PARTY FROM CLAIMS OR CAUSES OF ACTION ARISING FROM AN ACT OR OMISSION THAT IS JUDICIALLY DETERMINED BY A FINAL ORDER TO HAVE CONSTITUTED ACTUAL FRAUD (*PROVIDED* THAT ACTUAL FRAUD SHALL NOT EXEMPT FROM THE SCOPE OF THESE DEBTOR RELEASES ANY CLAIMS OR CAUSES OF ACTION ARISING UNDER SECTIONS 544 OR 548 OF THE BANKRUPTCY CODE OR STATE LAWS GOVERNING FRAUDULENT OR OTHERWISE AVOIDABLE TRANSFERS OR CONVEYANCES), WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE, (B) RELEASING ANY RELEASED PARTY FROM CLAIMS OR CAUSES OF ACTION HELD BY THE DEBTORS ARISING FROM AN ACT OR OMISSION THAT IS DETERMINED BY A FINAL ORDER OR BY A FEDERAL GOVERNMENT AGENCY TO HAVE CONSTITUTED A VIOLATION OF ANY FEDERAL SECURITIES LAWS OR (C) RELEASING ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, THE CONFIRMATION ORDER, ANY RESTRUCTURING TRANSACTION, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN.**

**SECTION 10.6(b)    <u>RELEASES BY HOLDERS OF CLAIMS AND INTERESTS</u>.**

**NOTWITHSTANDING ANYTHING CONTAINED IN THE PLAN TO THE CONTRARY, AS OF THE EFFECTIVE DATE, FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR IN THE CONFIRMATION ORDER, TO THE FULLEST EXTENT PERMISSIBLE UNDER APPLICABLE LAW, AS SUCH LAW MAY BE EXTENDED OR INTEGRATED AFTER THE EFFECTIVE DATE, EACH RELEASING PARTY, SHALL BE DEEMED TO HAVE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER, RELEASED, AND DISCHARGED THE DEBTORS, THE REORGANIZED DEBTORS, AND THE RELEASED PARTIES FROM ANY AND ALL CLAIMS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES, AND LIABILITIES**

4

**Other Beneficial Owner**

WHATSOEVER, INCLUDING ANY DERIVATIVE CLAIMS OR CAUSES OF ACTION ASSERTED OR THAT MAY BE ASSERTED ON BEHALF OF THE DEBTORS OR THEIR ESTATES, THAT SUCH ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, ANY ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE, INCLUDING ANY CLAIMS OR CAUSES OF ACTION BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE CHAPTER 11 CASES, THE DEBTORS, THE GOVERNANCE, MANAGEMENT, TRANSACTIONS, OWNERSHIP, OR OPERATION OF THE DEBTORS, THE PURCHASE, SALE OR RESCISSION OF ANY SECURITY OF THE DEBTORS OR THE REORGANIZED DEBTORS (WHICH INCLUDES, FOR THE AVOIDANCE OF DOUBT, ALL CLAIMS AND CAUSES OF ACTION ASSERTED OR ASSERTABLE IN THE SECURITIES CLASS ACTION), THE DIP FACILITY, THE CONVERTIBLE NOTES AGREEMENTS, THE MINER EQUIPMENT LENDER AGREEMENTS, THE MORTGAGE AGREEMENTS, THE GENERAL CONTRACTS, ANY AND ALL AGREEMENTS RELATING TO M&M LIENS, THE FORMULATION, PREPARATION, DISSEMINATION, SOLICITATION, NEGOTIATION, ENTRY INTO, OR FILING OF THE PLAN (INCLUDING THE PLAN SUPPLEMENT), THE DISCLOSURE STATEMENT, OR ANY RESTRUCTURING TRANSACTION, CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT (INCLUDING ANY LEGAL OPINION REQUESTED BY ANY ENTITY REGARDING ANY TRANSACTION, CONTRACT, INSTRUMENT, DOCUMENT, OR OTHER AGREEMENT CONTEMPLATED BY THE PLAN OR THE RELIANCE BY ANY RELEASED PARTY ON THE PLAN OR CONFIRMATION ORDER IN LIEU OF SUCH LEGAL OPINION) CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN, THE PLAN SUPPLEMENT, THE DISCLOSURE STATEMENT, THE PLAN SETTLEMENTS, THE NEW SECURED CONVERTIBLE NOTES DOCUMENTS, THE NEW SECURED NOTES DOCUMENTS, THE CONTINGENT PAYMENT OBLIGATIONS DOCUMENTS, THE NEW MINER EQUIPMENT LENDER DEBT DOCUMENTS, THE EXIT FACILITY DOCUMENTS, THE NEW WARRANTS AGREEMENT, THE RIGHTS OFFERING, THE BACKSTOP COMMITMENT LETTER, THE INITIAL DIP LOAN DOCUMENTS, THE DIP FACILITY, THE TERMINATED RSA, THE RSA, THE CHAPTER 11 CASES, THE PURSUIT OF CONFIRMATION AND CONSUMMATION OF THE PLAN, THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN OR CONFIRMATION ORDER, INCLUDING THE ISSUANCE OR DISTRIBUTION OF SECURITIES PURSUANT TO THE PLAN (INCLUDING, BUT NOT LIMITED TO, THE NEW COMMON INTERESTS), OR THE DISTRIBUTION OF PROPERTY UNDER THE PLAN, OR ANY OTHER AGREEMENT, ACT OR OMISSION, TRANSACTION, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASES SET FORTH IN

5

Other Beneficial Owner

SECTION 0 OF THE PLAN (I) SHALL ONLY BE APPLICABLE TO THE MAXIMUM EXTENT PERMITTED BY LAW; AND (II) SHALL NOT BE CONSTRUED AS (A) RELEASING ANY RELEASED PARTY FROM CLAIMS OR CAUSES OF ACTION ARISING FROM AN ACT OR OMISSION THAT IS JUDICIALLY DETERMINED BY A FINAL ORDER TO HAVE CONSTITUTED ACTUAL FRAUD (*PROVIDED* THAT ACTUAL FRAUD SHALL NOT EXEMPT FROM THE SCOPE OF THESE THIRD-PARTY RELEASES ANY CLAIMS OR CAUSES OF ACTION ARISING UNDER SECTIONS 544 OR 548 OF THE BANKRUPTCY CODE OR STATE LAWS GOVERNING FRAUDULENT OR OTHERWISE AVOIDABLE TRANSFERS OR CONVEYANCES), WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE, OR (B) RELEASING ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, ANY RESTRUCTURING TRANSACTION, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN.

SECTION 10.7      EXCULPATION.

EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN, NO EXCULPATED PARTY SHALL HAVE OR INCUR LIABILITY FOR, AND EACH EXCULPATED PARTY IS HEREBY RELEASED AND EXCULPATED FROM, ANY CAUSE OF ACTION FOR ANY CLAIM RELATED TO ANY ACT OR OMISSION IN CONNECTION WITH, RELATING TO, OR ARISING OUT, IN WHOLE OR IN PART, FROM THE PETITION DATE THROUGH THE EFFECTIVE DATE, OF THE CHAPTER 11 CASES, THE DEBTORS, THE GOVERNANCE, MANAGEMENT, TRANSACTIONS, OWNERSHIP, OR OPERATION OF THE DEBTORS, THE PURCHASE, SALE OR RESCISSION OF ANY SECURITY OF THE DEBTORS OR THE REORGANIZED DEBTORS, THE DIP FACILITY, THE CONVERTIBLE NOTES AGREEMENTS, THE MINER EQUIPMENT LENDER AGREEMENTS, THE MORTGAGE AGREEMENTS, THE GENERAL CONTRACTS, ANY AND ALL AGREEMENTS RELATING TO M&M LIENS, AND RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS, THE FORMULATION, PREPARATION, DISSEMINATION, SOLICITATION, NEGOTIATION, ENTRY INTO, OR FILING OF THE PLAN (INCLUDING THE PLAN SUPPLEMENT), THE DISCLOSURE STATEMENT, OR ANY RESTRUCTURING TRANSACTION, CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT (INCLUDING ANY LEGAL OPINION REQUESTED BY ANY ENTITY REGARDING ANY TRANSACTION, CONTRACT, INSTRUMENT, DOCUMENT, OR OTHER AGREEMENT CONTEMPLATED BY THE PLAN OR THE RELIANCE BY ANY RELEASED PARTY ON THE PLAN OR CONFIRMATION ORDER IN LIEU OF SUCH LEGAL OPINION) CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN, THE PLAN SUPPLEMENT, THE DISCLOSURE STATEMENT, THE PLAN SETTLEMENTS, THE NEW SECURED CONVERTIBLE NOTES DOCUMENTS, THE NEW SECURED NOTES DOCUMENTS, THE CONTINGENT PAYMENT OBLIGATIONS DOCUMENTS,THE NEW MINER EQUIPMENT LENDER DEBT DOCUMENTS, THE EXIT FACILITY DOCUMENTS, THE NEW WARRANTS AGREEMENT, THE RIGHTS OFFERING, THE BACKSTOP COMMITMENT LETTER, THE INITIAL DIP LOAN DOCUMENTS, THE DIP FACILITY, THE

6

**Other Beneficial Owner**

TERMINATED RSA, THE RSA, THE CHAPTER 11 CASES, THE PURSUIT OF CONFIRMATION AND CONSUMMATION OF THE PLAN, THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN OR CONFIRMATION ORDER, INCLUDING THE ISSUANCE OR DISTRIBUTION OF SECURITIES PURSUANT TO THE PLAN (INCLUDING, BUT NOT LIMITED TO, THE NEW COMMON INTERESTS), OR THE DISTRIBUTION OF PROPERTY UNDER THE PLAN, OR ANY OTHER RELATED AGREEMENT, EXCEPT FOR CLAIMS OR CAUSES OF ACTION ARISING FROM AN ACT OR OMISSION THAT IS JUDICIALLY DETERMINED IN A FINAL ORDER TO HAVE CONSTITUTED ACTUAL FRAUD, WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE, BUT IN ALL RESPECTS, SUCH EXCULPATED PARTIES SHALL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES.  THE EXCULPATED PARTIES HAVE, AND UPON COMPLETION OF THE PLAN, SHALL BE DEEMED TO HAVE, PARTICIPATED IN GOOD FAITH AND IN COMPLIANCE WITH ALL APPLICABLE LAWS WITH REGARD TO THE SOLICITATION AND DISTRIBUTION OF, CONSIDERATION PURSUANT TO THE PLAN AND, THEREFORE, ARE NOT, AND ON ACCOUNT OF SUCH DISTRIBUTIONS SHALL NOT BE, LIABLE AT ANY TIME FOR THE VIOLATION OF ANY APPLICABLE LAW, RULE, OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OR SUCH DISTRIBUTIONS MADE PURSUANT TO THE PLAN. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE EXCULPATIONS SET FORTH IN SECTION <u>ERROR! REFERENCE SOURCE NOT FOUND.</u> OF THE PLAN (I) SHALL ONLY BE APPLICABLE TO THE MAXIMUM EXTENT PERMITTED BY LAW; AND (II) SHALL NOT BE CONSTRUED AS (A) EXCULPATING ANY EXCULPATED PARTY FROM CLAIMS OR CAUSES OF ACTION ARISING FROM AN ACT OR OMISSION THAT IS JUDICIALLY DETERMINED BY A FINAL ORDER TO HAVE CONSTITUTED ACTUAL FRAUD (*PROVIDED* THAT ACTUAL FRAUD SHALL NOT EXEMPT FROM THE SCOPE OF THESE EXCULPATIONS ANY CLAIMS OR CAUSES OF ACTION ARISING UNDER SECTIONS 544 OR 548 OF THE BANKRUPTCY CODE OR STATE LAWS GOVERNING FRAUDULENT OR OTHERWISE AVOIDABLE TRANSFERS OR CONVEYANCES), WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE, OR (B) EXCULPATING ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, ANY RESTRUCTURING TRANSACTION, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN.

**SECTION 10.5       <u>INJUNCTION</u>.**

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR FOR DISTRIBUTIONS REQUIRED TO BE PAID OR DELIVERED PURSUANT TO THE PLAN OR THE CONFIRMATION ORDER, ALL ENTITIES THAT HAVE HELD, HOLD, OR MAY HOLD CLAIMS OR INTERESTS THAT HAVE BEEN RELEASED PURSUANT TO SECTION 0 OR SECTION 0, SHALL BE DISCHARGED PURSUANT TO SECTION ERROR! REFERENCE SOURCE NOT FOUND. OF THE PLAN, OR ARE SUBJECT TO EXCULPATION PURSUANT TO SECTION ERROR! REFERENCE SOURCE NOT FOUND., AND ALL SUBCONTRACTORS AND ALL OTHER PARTIES

Debtors' Exhibit No. 21
Page 38 of 153

Other Beneficial Owner

IN INTEREST ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST, AS APPLICABLE, THE DEBTORS, THE REORGANIZED DEBTORS, THE RELEASED PARTIES, AND/OR THE EXCULPATED PARTIES (TO THE EXTENT OF THE EXCULPATION PROVIDED PURSUANT TO SECTION ERROR! REFERENCE SOURCE NOT FOUND. **WITH RESPECT TO THE EXCULPATED PARTIES): (I) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (II) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (III) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE OF ANY KIND AGAINST SUCH ENTITIES OR THE PROPERTY OR THE ESTATES OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (IV) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION, OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE FROM SUCH ENTITIES OR AGAINST THE PROPERTY OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS UNLESS (X) SUCH ENTITY HAS TIMELY ASSERTED SUCH SETOFF RIGHT EITHER IN A FILED PROOF OF CLAIM, OR IN ANOTHER DOCUMENT FILED WITH THE BANKRUPTCY COURT EXPLICITLY PRESERVING SUCH SETOFF OR THAT OTHERWISE INDICATES THAT SUCH ENTITY ASSERTS, HAS, OR INTENDS TO PRESERVE ANY RIGHT OF SETOFF PURSUANT TO APPLICABLE LAW OR OTHERWISE OR (Y) SUCH RIGHT TO SETOFF ARISES UNDER A POSTPETITION AGREEMENT WITH THE DEBTORS OR AN EXECUTORY CONTRACT THAT HAS BEEN ASSUMED BY THE DEBTORS AS OF THE EFFECTIVE DATE; AND (V) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS RELEASED, SETTLED, AND/OR TREATED, ENTITLED TO A DISTRIBUTION, OR CANCELLED PURSUANT TO THE PLAN OR OTHERWISE DISALLOWED;** *PROVIDED* **THAT SUCH PERSONS WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS AGAINST, OR INTERESTS IN, A DEBTOR, A REORGANIZED DEBTOR, OR AN ESTATE SHALL NOT BE PRECLUDED FROM EXERCISING THEIR RIGHTS AND REMEDIES, OR OBTAINING THE BENEFITS, SOLELY PURSUANT TO AND CONSISTENT WITH THE TERMS OF THE PLAN.**

SUBJECT IN ALL RESPECTS TO SECTION ERROR! REFERENCE SOURCE NOT FOUND., **NO ENTITY OR PERSON MAY COMMENCE OR PURSUE A CLAIM OR CAUSE OF ACTION OF ANY KIND AGAINST ANY RELEASED PARTY OR EXCULPATED PARTY THAT AROSE OR ARISES FROM, IN WHOLE OR IN PART, THE CHAPTER 11 CASES, THE DEBTORS, THE GOVERNANCE, MANAGEMENT, TRANSACTIONS, OWNERSHIP, OR OPERATION OF THE DEBTORS, THE PURCHASE, SALE OR RESCISSION OF ANY SECURITY OF THE DEBTORS OR THE REORGANIZED DEBTORS (WHICH INCLUDES, FOR THE AVOIDANCE OF DOUBT, ALL CLAIMS AND CAUSES OF ACTION ASSERTED OR**

8

**Other Beneficial Owner**

**ASSERTABLE IN THE SECURITIES CLASS ACTION), THE DIP FACILITY, THE CONVERTIBLE NOTES AGREEMENTS, THE MINER EQUIPMENT LENDER AGREEMENTS, THE MORTGAGE AGREEMENTS, THE GENERAL CONTRACTS, ANY AND ALL AGREEMENTS RELATING TO M&M LIENS, AND ANY AND ALL RELATED AGREEMENTS, INSTRUMENTS, AND/OR OTHER DOCUMENTS, THE FORMULATION, PREPARATION, DISSEMINATION, SOLICITATION, NEGOTIATION, ENTRY INTO, OR FILING OF THE PLAN (INCLUDING THE PLAN SUPPLEMENT), THE DISCLOSURE STATEMENT, OR ANY RESTRUCTURING TRANSACTION, CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT (INCLUDING ANY LEGAL OPINION REQUESTED BY ANY ENTITY REGARDING ANY TRANSACTION, CONTRACT, INSTRUMENT, DOCUMENT, OR OTHER AGREEMENT CONTEMPLATED BY THE PLAN OR THE RELIANCE BY ANY RELEASED PARTY ON THE PLAN OR CONFIRMATION ORDER IN LIEU OF SUCH LEGAL OPINION) CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN, THE PLAN SUPPLEMENT, THE DISCLOSURE STATEMENT, THE PLAN SETTLEMENTS, THE NEW SECURED CONVERTIBLE NOTES DOCUMENTS, THE NEW SECURED NOTES DOCUMENTS, THE CONTINGENT PAYMENT OBLIGATIONS DOCUMENTS, THE NEW MINER EQUIPMENT LENDER DEBT DOCUMENTS, THE EXIT FACILITY DOCUMENTS, THE NEW WARRANTS AGREEMENT, THE RIGHTS OFFERING, THE BACKSTOP COMMITMENT LETTER, THE INITIAL DIP LOAN DOCUMENTS, THE DIP FACILITY, THE TERMINATED RSA, THE RSA, THE CHAPTER 11 CASES, THE PURSUIT OF CONFIRMATION AND CONSUMMATION OF THE PLAN, THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN OR CONFIRMATION ORDER, INCLUDING THE ISSUANCE OR DISTRIBUTION OF SECURITIES PURSUANT TO THE PLAN (INCLUDING, BUT NOT LIMITED TO, THE NEW COMMON INTERESTS), OR THE DISTRIBUTION OF PROPERTY UNDER THE PLAN, OR ANY OTHER AGREEMENT, ACT OR OMISSION, TRANSACTION, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE RELATED OR RELATING TO THE FOREGOING WITHOUT THE BANKRUPTCY COURT (I) FIRST DETERMINING, AFTER NOTICE AND A HEARING, THAT SUCH CLAIM OR CAUSE OF ACTION REPRESENTS A CLAIM OF WILLFUL MISCONDUCT, FRAUD OR GROSS NEGLIGENCE AGAINST A RELEASED PARTY OR EXCULPATED PARTY AND (II) SPECIFICALLY AUTHORIZING SUCH ENTITY OR PERSON TO BRING SUCH CLAIM OR CAUSE OF ACTION AGAINST ANY SUCH RELEASED PARTY OR EXCULPATED PARTY. THE BANKRUPTCY COURT SHALL HAVE SOLE AND EXCLUSIVE JURISDICTION TO DETERMINE WHETHER A CLAIM OR CAUSE OF ACTION IS COLORABLE AND, ONLY TO THE EXTENT LEGALLY PERMISSIBLE AND AS PROVIDED FOR IN SECTION** ERROR! REFERENCE SOURCE NOT FOUND.**, SHALL HAVE JURISDICTION TO ADJUDICATE THE UNDERLYING COLORABLE CLAIM OR CAUSE OF ACTION.**

**SECTION 5.17**      <u>**CANCELLATION OF LIENS**</u>**.**

(a)      Except as otherwise specifically provided in the Plan, including sections **Error! Reference source not found.** and **Error! Reference source not found.** of the Plan, all notes, instruments, certificates evidencing debt of the Debtors and Existing Common Interests

9

**Other Beneficial Owner**

will be cancelled and obligations of the Debtors thereunder will be discharged and of no further force or effect, except for the purpose of allowing the applicable agents and trustees to receive distributions from the Debtors under the Plan and to make any further distributions to the applicable Holders on account of their Allowed Claims and Interests.

(b)    After the Effective Date and following (i) the distributions to Holders on account of Allowed Convertible Notes Secured Claims and Allowed Miner Equipment Lender Secured Claims and/or (ii) with regard to Allowed M&M Lien Secured Claims, satisfaction of the applicable M&M Lien Takeback Debt, the Debtors or the Reorganized Debtors, at their expense, may, in their sole discretion, take any action necessary to terminate, cancel, extinguish, and/or evidence the release of any and all mortgages, deeds of trust, Liens, pledges, and other security interests with respect to the Convertible Notes Secured Claims, Miner Equipment Lender Secured Claims, and M&M Lien Secured Claims, including, without limitation, the preparation and filing of any and all documents necessary to terminate, satisfy, or release any mortgages, deeds of trust, Liens, pledges, and other security interests held by the Holders of the M&M Lien Secured Claims, Miner Equipment Lender Secured Claims, the Notes Agent, and/or Convertible Noteholders, including, without limitation, UCC-3 termination statements.

**Relevant Definitions Related to Release and Exculpation Provisions**:

"*Exculpated Parties*" means each of the following in their capacity as such and, in each case, to the maximum extent permitted by law: (i) the Debtors; and (ii) Equity Committee and its members, each solely in their capacity as such.

"*Related Parties*" means with respect to a Person, that Person's current and former Affiliates, and such Person's and its current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, fiduciaries, trustees, advisory board members, financial advisors, partners, limited partners, general partners, attorneys, accountants, managed accounts or funds, management companies, fund advisors, investment bankers, consultants, representatives, and other professionals, and such Person's respective heirs, executors, estates, and nominees, each in their capacity as such, and any and all other Persons or Entities that may purport to assert any Cause of Action derivatively, by or through the foregoing entities.

"*Released Parties*" means, collectively: (i) the Debtors; (ii) the Reorganized Debtors; (iii) the Equity Committee and its members that are party to the RSA, solely in their capacities as such; (iv) the Backstop Parties; (v) the Settling Miner Equipment Lenders; (vi) Brown Corporation; (vii) Holliwood LLC; (viii) the Ad Hoc Noteholder Group; (ix) the Consenting Creditors; (x) the Exit Lenders; (xi) the Notes Agent, solely in its capacity as such; and (xii) with respect to each of the foregoing Persons in clauses (i) through (xi), all Related Parties. Notwithstanding the foregoing, any Person that opts out of the releases set forth in section 10.6(b) of the Plan shall not be deemed a Released Party thereunder.

10

**Other Beneficial Owner**

       ***"Releasing Parties"*** means collectively, and in each case solely in their capacity as such, (i) the Debtors; (ii) the Reorganized Debtors; (iii) with respect to each of the foregoing Persons in clauses (i) through (ii), all Related Parties; (iv) the Released Parties; (v) the Holders of all Claims or Interests that vote to accept the Plan; (vi) the Holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but that do not vote either to accept or to reject the Plan and do not opt out of granting the releases set forth in the Plan; (vii) the Holders of all Claims or Interests that vote, or are deemed, to reject the Plan or that are presumed to accept the Plan but do not opt out of granting the releases set forth in the Plan; and (viii) the Holders of all Claims and Interests and all Other Beneficial Owners that were given notice of the opportunity to opt out of granting the releases set forth in the Plan but did not opt out.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

**PURSUANT TO THE PLAN, IF YOU, AS A HOLDER OF CLAIMS OR AN OTHER BENEFICIAL OWNER WHO HAS BEEN GIVEN NOTICE OF THE OPPORTUNITY TO OPT OUT OF GRANTING THE RELEASES SET FORTH IN SECTION 10.6(b) OF THE PLAN BUT DO NOT OPT OUT, YOU ARE AUTOMATICALLY DEEMED TO HAVE CONSENTED TO THE RELEASE PROVISIONS IN SECTION 10.6(b) OF THE PLAN.**

**By checking the box below, the undersigned Holder of a Claim not entitled to vote or Other Beneficial Owner identified in Item 1 above, having received notice of the opportunity to opt out of granting the releases contained in Section 10.6(b) of the Plan:**

---

       ☐ **Elects to <u>OPT OUT</u> of the releases contained in Section 10.6(b) of the Plan.**

---

**Item 3.**    **Certifications**. By signing this Release Opt Out Form, the undersigned certifies that:

    a.    as of the Voting Record Date, either: (i) the Holder is the Holder of the Claims set forth in Item 1; (ii) the Holder is an authorized signatory for an entity that is the Holder of the Claims set forth in Item 1; or (iii) it is an Other Beneficial Owner;

    b.    the undersigned has received a copy of the Release Opt Out Form and that the Release Opt Out Form is made pursuant to the terms and conditions set forth therein;

    c.    if applicable, the undersigned has submitted the same election concerning the releases with respect to all Claims in a single Class set forth in Item 1; and

    d.    that no other Release Opt Out Form with respect to the amount(s) of Claims identified in Item 1 or on account of being an Other Beneficial Owner have been submitted or, if any other Release Opt Out Forms have been submitted

Debtors' Exhibit No. 21
Page 42 of 153

**Other Beneficial Owner**

with respect to such Claims or on account of being an Other Beneficial Owner, then any such earlier Release Opt Out Forms are hereby revoked.

| | |
|---|---|
| Name of Holder or Other Beneficial Owner: | |
| Signature: | |
| Name of Signatory (if different from Holder or Other Beneficial Owner): | |
| Title (if applicable): | |
| City, State, Zip Code: | |
| Telephone Number: | |
| Date Completed: | |

**IF YOU WISH TO OPT OUT, PLEASE COMPLETE, SIGN, AND DATE THIS RELEASE OPT OUT FORM AND RETURN IT TO THE VOTING AGENT BY *JUST ONE* OF THE FOLLOWING METHODS: MAIL, OVERNIGHT OR HAND DELIVERY, OR BY ONLINE TRANSMISSION VIA ONLINE PORTAL:**

| STRETTO'S ADDRESS FOR RECEIPT OF RELEASE OPT OUT FORM |
|---|
| **CORE SCIENTIFIC, INC.**<br>**BALLOT PROCESSING CENTER**<br>**C/O STRETTO, INC.**<br>**410 EXCHANGE, SUITE 100**<br>**IRVINE, CA 92602** |

**THE OPT OUT DEADLINE IS DECEMBER 13, 2023 AT 5:00 P.M. (PREVAILING CENTRAL TIME).**

12

**Other Beneficial Owner**

**USE OF ONLINE OPT-OUT FORM**

**You may submit your Release Opt Out Form by electronic, online transmission solely through the Online Portal found on the Debtors' case information website and following the directions set forth on the Online Portal regarding submitting your Release Opt Out Form as described more fully below.**

**1.      Please visit https://balloting.stretto.com/CoreScientific/OptOut/OtherBeneficialOwners**

**2.      Follow the directions to submit your Release Opt Out Form. If you choose to submit your Release Opt Out Form via the Online Portal, you should not return a hard copy of your Release Opt-Out Form.**

**THE ONLINE PORTAL IS THE SOLE MANNER IN WHICH RELEASE OPT OUT FORMS MAY BE DELIVERED VIA ELECTRONIC TRANSMISSION.**

**RELEASE OPT OUT FORMS SUBMITTED BY FACSIMILE OR EMAIL WILL NOT BE COUNTED.**

Debtors' Exhibit No. 21
Page 44 of 153

# **Exhibit G**





To Custodians, Banks, Brokers, and Other Nominees (each, a "Nominee"):

*Re: Case Number: 22-90341 (CML) – Core Scientific, Inc., et al. CHAPTER 11 BANKRUPTCY*

### **CUSIP No. 21873J 108**

Core Scientific, Inc., et al., (the "Debtors"), filed with the United States Bankruptcy Court for the Southern District of Texas (the "Court"), the enclosed materials listed in Exhibit A (the "Materials"). Stretto, the Claims and Noticing agent for Debtors, was instructed by the Debtors' counsel that the Materials must be served upon holders who purchased common stock (CUSIP No.21973J 108) (the "Other beneficial Owners") from January 3, 2022 through December 21, 2022, inclusive (the "Class Period").

| CUSIP/ISIN No | Class Period |
|---|---|
| 21873J 108 / US21873J1088 | From January 3, 2022 through December 21, 2022, inclusive |

Stretto has provided the appropriate number of sets of Materials as requested by Broadridge and Mediant. The following referenced job numbers pertain to the mailings established at Broadridge and Mediant. Please mail the provided materials via USPS First-Class Mail and Email to the Other beneficial Owners in your books and records as applicable.

| Broadridge Job No.(s) | Mediant Job No. |
|---|---|
| N95512, N95513, N95514 | 2283244 |

If you are not the correct individual or department to research and disburse the requested information, please forward to the proper individual at your firm.

**Important:** *Nominees shall either: (i) within seven (7) calendar days of receipt of the Release Opt Out Form and Combined Hearing Notice, request from the Debtors sufficient copies of the Release Opt Out Form and Combined Hearing Notice to forward to their Other Beneficial Owners and within seven (7) calendar days of receipt of those notices and claim forms forward them to their Other Beneficial Owners; or (ii) within seven (7) calendar days of receipt of the Release Opt Out Form and Combined Hearing Notice, provide a list of the names and addresses of their Other Beneficial Owners to the Debtors and the Debtors shall send the Release Opt Out Form and Combined Hearing Notice promptly to such identified Other Beneficial Owners.*

*Nominees that elect to send the Release Opt Out Form and Combined Hearing Notice to their Other Beneficial Owners shall also send a statement to the Debtors and Stretto confirming that the mailing was made and shall retain their mailing records for use in connection with any further notices that may be provided in these Chapter 11 Cases.*

*If it is the Nominee's customary and accepted practice to forward such materials to its Other Beneficial Owners by e-mail, e-delivery, or any other method of electronic or printed communication, the Nominees are authorized to follow those customary practices, within seven (7) calendar days of receipt of the materials, in lieu of sending actual printed copies of the Release Opt Out Form and Combined Hearing Notice.*

*Within seven (7) calendar days of forwarding such notice, the Nominees may request reimbursement for reasonable and documented noticing costs and research fees, if any, by making such request in writing to the Debtors at the address to be provided by Stretto to the Nominees. If you are not the correct individual or department to research and disburse the requested information, please forward to the proper individual at your firm.*

7 Times Square, 16th Floor New York NY 10036          800.634.7734          STRETTO.COM



## **Exhibit A**

- Combined Hearing Notice

- Release Opt Out Form

7 Times Square, 16th Floor New York NY 10036          800.634.7734          STRETTO.COM

# **Exhibit H**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| | § | |
| In re: | § | **Chapter 11** |
| | § | |
| **CORE SCIENTIFIC, INC.,** *et al.,* | § | **Case No. 22-90341 (CML)** |
| | § | |
| **Debtors**[1] | § | **(Jointly Administered)** |

## SOLICITATION AND VOTING PROCEDURES

      **PLEASE TAKE NOTICE** that on December 21, 2022, Core Scientific, Inc. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**") each filed a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") with the United States Bankruptcy Court for the Southern District of Texas (the "**Court**"). The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On January 9, 2023, the U.S. Trustee appointed an official committee of unsecured creditors. On March 23, 2023, the U.S. Trustee appointed an official committee of equity security holders. The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b) and Bankruptcy Local Rule 1015-1.

      **PLEASE TAKE FURTHER NOTICE** that on November 14, 2023, the Court entered the *Order (I) Conditionally Approving Disclosure Statement and Form and Manner of Notice of Conditional Disclosure Statement Hearing; (II) Establishing Solicitation and Voting Procedures; (III) Establishing Rights Offering Procedures, (IV) Establishing Notice and Objection Procedures for Confirmation of Proposed Plan; (V) Approving Notice Procedures for the Assumption or Rejection of Executory Contracts and Unexpired Leases; and (VI) Granting Related Relief* (Docket No. 1426) (as may be later amended and including all exhibits, annexes, and schedules thereto, the "**Disclosure Statement Order**"),[2] which, among other things, (i) authorized the Debtors to solicit votes on the *Third Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors* (Docket No. 1438) (the "**Plan**") and (ii) conditionally

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions VII, LLC (3198). The Debtors' corporate headquarters is 210 Barton Springs Road, Suite 300, Austin, Texas 78704. The Debtors' service address is 2407 S. Congress Ave, Suite E-101, Austin, Texas 78704

[2] Capitalized terms not otherwise defined herein have the same meaning as set forth in the Disclosure Statement Order or Plan, as applicable.

approved the *Disclosure Statement for the Third Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors* (Docket No. 1439) (the "**Disclosure Statement**").

## A.     Parties Entitled to Vote.

Holders of Claims and Interests in Class 1 (April Convertible Notes Secured Claims), Class 2 (August Convertible Notes Secured Claims), Class 3 (Miner Equipment Lender Secured Claims), Class 5 (M&M Lien Secured Claims), Class 6 (Secured Mortgage Claims), Class 8 (General Unsecured Claims), Class 11 (Section 510(b) Claims), and Class 12 (Existing Common Interests) are Impaired and entitled to receive distributions under the Plan and, thus, may vote to accept or reject the Plan, subject to certain exceptions discussed below (each, a "**Voting Class**," and collectively, the "**Voting Classes**").

A Holder of a Claim or Interest in a Voting Class is nonetheless not entitled to vote to the extent that:

(a) as of the Voting Record Date (as defined below), the outstanding amount of such creditor's Claim is zero ($0.00);

(b) as of the Voting Record Date, such Holders' Claim or Interest has been Disallowed, expunged, disqualified or suspended;

(c) such creditor has not timely filed a Proof of Claim in accordance with the *Order (I) Establishing Deadlines to File Proofs of Claim and (II) Approving Form and Manner of Notice Thereof* (Docket No. 652) (the "**Bar Date Order**") as of the Bar Date and the Debtors have not scheduled such creditor's Claim or have scheduled such creditor's Claim in an undetermined amount or as contingent, unliquidated, or disputed or such creditor is not required to file a Proof of Claim pursuant to the Bar Date Order; *provided*, that to the extent that such creditor's deadline to file a Claim arising from any rejection of an Executory Contract or Unexpired Lease to which such creditor is party has not yet occurred, such creditor will be entitled to vote in the amount of $1.00 on account of such Claim; or

(d) such creditor's Claim is subject to an objection, a request for estimation, or an adversary proceeding as of **December 1, 2023 at 5:00 p.m. (Prevailing Central Time)**, subject to the procedures set forth below; *provided* that, any such Holder shall receive a Ballot and may submit such Ballot on a provisional basis and may elect to opt out of the Non-Debtor Release Provisions contained in the Plan.  To the extent such Holder does not file a Rule 3018 Motion in accordance with the instructions set forth below, the Ballot will not be counted for voting purposes; however, any opt out election made by such Holder on its Ballot with respect to the Non-Debtor Release Provisions contained in the Plan shall be valid so long as such Ballot is submitted in accordance with the procedures set forth herein. To the extent such Holder files a Rule 3018 Motion in accordance with the instructions set forth below, the extent to which such Ballot shall be counted for voting purposes will be determined by the Court or as otherwise agreed by the Debtors and the Holder.

With respect to transfers of Claims required to be filed pursuant to Bankruptcy Rule 3001(e), the transferee shall be entitled to receive a Solicitation Package (as defined below) and,

if the Holder of such Claim is otherwise entitled to vote with respect to the Plan, cast a Ballot (defined below) on account of such Claim only if: (i) all actions necessary to transfer such Claim are completed by the Voting Record Date or (ii) the transferee files with the Court, by the Voting Record Date, (a) all documentation required by Bankruptcy Rule 3001(e) to evidence the transfer and (b) a sworn statement of the transferor supporting the validity of the transfer.  In the event a Claim is transferred after the Voting Record Date, the transferee of such Claim shall be bound by any vote or election on the Plan made by the Holder of such Claim as of the Voting Record Date.

Where any portion of a single Claim has been transferred to a transferee and notice of such transfer is required to be filed pursuant to Bankruptcy Rule 3001(e), all Holders of any portion of such single Claim may be (i) treated as a single creditor for purposes of the numerosity requirements in section 1126(c) of the Bankruptcy Code, and (ii) required to vote every portion of such Claim collectively to accept or reject the Plan.  In the event that (i) a Ballot, (ii) a group of Ballots within a Voting Class received from a single creditor, or (iii) a group of Ballots received from the various Holders of multiple portions of a single Claim partially reject and partially accept the Plan, such Ballots may not be counted in the Debtors' discretion.

**B.    Parties Not Entitled to Vote.**

Holders of Claims in Class 4 (Other Secured Claims) and Class 7 (Priority Non-Tax Claims) will (i) receive full recovery of their Allowed Claims under the Plan, (ii) have their Claims adjusted or reinstated, or (iii) otherwise receive treatment in the Debtors' or Reorganized Debtors' discretion as to render such Holder's Claim Unimpaired (collectively, the "**Unimpaired Classes**").  Pursuant to section 1126(f) of the Bankruptcy Code, the Holders of such Claims in these Unimpaired Classes are conclusively presumed to accept the Plan and, accordingly, are not entitled to vote on the Plan.

Holders of Claims and Interests in Class 9 (Intercompany Claims), and Class 10 (Intercompany Interests) are Unimpaired and such Holders are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and, accordingly, are not entitled to vote on the Plan (together with the Unimpaired Classes, the "**Non-Voting Classes**").

Holders of Miner Equipment Lender Secured Claims that elect Miner Equipment Lender Treatment Election 2 on their Class 3 Ballot shall not be entitled to vote any portion of their Miner Equipment Lender Deficiency Claim in Class 8.

**C.    Voting Record Date.**

The Court has established **November 9, 2023** as the record date for purposes of determining (i) which Holders of Claims and Interests in the Voting Classes are entitled to vote on the Plan and (ii) which Holders of Claims and Interests are entitled to receive a Notice of Non-Voting Status (as defined below) (the "**Voting Record Date**").

D.      **Establishing Claim Amounts for Voting Purposes.**

**April Convertible Notes Secured Claims (Class 1)**.  The amount of each April Convertible Notes Secured Claim, for voting purposes only, will be each Holder's Pro Rata Share of $350,000,000.[3]

**August Convertible Notes Secured Claims (Class 2)**.  The amount of each August Convertible Notes Secured Claim, for voting purposes only, will be each Holder's Pro Rata Share of $360,000,000.[4]

**Miner Equipment Lender Secured Claims (Class 3)**.  The amount of each Miner Equipment Lender Secured Claim, for voting purposes only, will be each Holder's applicable Allowed Miner Equipment Lender Secured Claim Amount, which is set forth on the Miner Equipment Lender Claims Schedule, attached to the Plan as Exhibit K, in the column titled "Allowed Miner Equipment Lender Secured Claim (as of the Petition Date)."  For the avoidance of all doubt, each Holder of a Miner Equipment Lender Secured Claim in Class 3 will vote in an individualized subclass of Class 3 with respect to such Holder's Miner Equipment Lender Secured Claim.

**M&M Lien Secured Claims (Class 5)**.  The amount of each M&M Lien Secured Claim, for voting purposes only, will be each Holder's applicable Allowed M&M Lien Secured Claim Amount, which is set forth on the M&M Lien Claims Schedule, attached to the Plan as Exhibit J, in the column titled "Amount of Allowed M&M Lien Secured Claim."[5]

**Secured Mortgage Claims (Class 6)**.  The amount of each Secured Mortgage Claim, for voting purposes only, will be each Holder's applicable Allowed Secured Mortgage Claim Amount, which is set forth on the Secured Mortgage Claims Schedule, attached to the Plan as Exhibit L, in the column titled "Allowed Secured Claim (as of the Petition Date)."

**General Unsecured Claims (Class 8)**.  Except as otherwise provided herein and solely to the extent such Claimant is entitled to vote under these procedures, the amount of each General Unsecured Claim in Class 8, for voting purposes only, shall be established pursuant to the following hierarchy:

(a)  if a Claim has been estimated or otherwise Allowed for voting purposes by order of the Court, such Claim is temporarily Allowed in the amount so estimated or Allowed by this Court;

(b)  if (a) does not apply, and a Claim constitutes a Miner Equipment Lender Deficiency Claim, each Holder's applicable Allowed Miner Equipment Lender Deficiency Claim Amount,

---

[3] For the avoidance of all doubt, for distribution purposes the April Convertible Notes Secured Claim shall include postpetition interest at the applicable contract rate for the period following January 15, 2024.

[4] For the avoidance of all doubt, for distribution purposes the August Convertible Notes Secured Claim shall include postpetition interest at the applicable contract rate for the period following January 15, 2024.

[5] For the avoidance of all doubt, all Holders of M&M Lien Claims that have settled such Claim with the Debtors will not be entitled to vote.

which is set forth on the Miner Equipment Lender Claims Schedule, attached to the Plan as Exhibit K, in the column titled "Allowed Deficiency Claim (as of the Petition Date)"; *provided*, that if a Holder of a Miner Equipment Lender Secured Claim elects Miner Equipment Lender Treatment Election 2 on its Class 3 Ballot, such Holder shall not be entitled to vote any portion of its Miner Equipment Lender Deficiency Claim in Class 8.

(c) if neither (a) nor (b) applies, but the Claim has been estimated or otherwise Allowed for voting purposes pursuant to a stipulation, settlement, or other agreement in writing reached between the applicable Debtor(s) and the holder of the Claim (whether such stipulation, settlement, or agreement is filed or not), such Claim is temporarily Allowed against such Debtor(s) in the amount set forth in the stipulation, settlement, or other agreement;

(d) if neither (a), (b), nor (c) applies, then in the liquidated, non-contingent, and undisputed amount set forth on a proof of claim timely filed in accordance with the Bar Date Order as of the Voting Record Date; *provided that*, if the amount set forth on a timely-submitted proof of claim is wholly unliquidated, contingent, and/or disputed (as determined on the face of the Claim or based on reasonable review by the Debtors and/or the Voting Agent), then the Claim shall be temporarily allowed for voting purposes in the amount of $1.00;

(e) if neither (a), (b), (c), nor (d) applies, then in the liquidated, non-contingent, and undisputed amount set forth on the Debtors' Schedules; *provided that*, if the Claim appearing on the Debtors' Schedules is either contingent, unliquidated, and/or disputed, or in a $0.00 amount, then the Claim shall be disallowed for voting purposes, except to the extent that such creditor's deadline to file a Claim arising from any rejection of an Executory Contract or Unexpired Lease to which such creditor is party has not yet occurred; *provided*, that, to the extent such creditor's deadline to file a Claim has not yet occurred, such creditor will be entitled to vote in the amount of $1.00 on account of such Claim;

(f) notwithstanding anything to the contrary contained herein, any creditor who has filed or purchased duplicate Claims within the same Voting Class may be provided with only one Solicitation Package and one Ballot for voting a single Claim in such Class, regardless of whether the Debtors have objected to such duplicate Claims; and

(g) if a Proof of Claim has been amended by a later Proof of Claim that is filed on or prior to the Bar Date, the later filed amended Proof of Claim shall be entitled to vote in a manner consistent with these tabulation rules, and the earlier filed Proof of Claim shall be disallowed for voting purposes, regardless of whether the Debtors have objected to such amended claim.  Except as otherwise ordered by the Court, any amendments to Proofs of Claim after the Bar Date shall not be considered for purposes of these tabulation rules.

**Section 510(b) Claims (Class 11)**.  Except as otherwise provided herein, each Section 510(b) Claim will be accorded one (1) vote and valued at $1.00 for voting purposes only, and not for purposes of allowance or distribution, unless (i) such Claim amount for voting purposes is disputed in the manner set forth below for filing a Rule 3018(a) motion, in which case the Claim amount shall be an amount that the Court deems appropriate for the purpose of voting to accept or

reject the Plan or (ii) such Claim is Disallowed prior to the Voting Deadline, in which case the Votes will not be counted.

For the avoidance of doubt, with respect to any Proofs of Claim filed on behalf of an entire purposed class of claimants (including a class of claimants comprised of any current or former beneficial owners of equity securities of Core Scientific, Inc. purchased during the period from January 3, 2022 through December 20, 2022, inclusive (the "**Other Beneficial Owners**")), including Proofs of Claim Nos. 556 and 632 (collectively, the "**Purported Class POCs**"):

(a) only the individual filing the Purported Class POC (the "**POC Filing Party**") shall be entitled to vote to accept or reject the Plan;

(b) the POC Filing Party shall be entitled to one (1) vote in the amount of $1.00 on behalf of the individual claim asserted by the POC Filing Party in its individual capacity in the applicable Purported Class POC; and

(c) any Other Beneficial Owner that did not file a Proof of Claim shall not be entitled to vote to accept or reject the Plan.

**Existing Common Interests (Class 12)**.  The amount of each Existing Common Interest for voting purposes only will be established by reference to (a) the applicable books and records of the Debtors' transfer agent, which shall be provided by the transfer agent to the Voting Agent no later than two (2) Business Days following the Voting Record Date and (b) the books and records of the applicable Equity Nominee (defined below) as of the Voting Record Date as evidenced by the securities position report from The Depository Trust Company (the "**DTC**").

**General**.

If the Debtors have filed an objection to, a request for estimation of, or an adversary proceeding relating to a Claim or Interest on or before **December 1, 2023 at 5:00 p.m. (Prevailing Central Time)**, such Claim or Interest shall be temporarily Disallowed for voting purposes, except as ordered by the Court before the Voting Deadline; *provided*, *however*, that, if the Debtors' objection seeks only to reclassify or reduce the Allowed amount of such Claim or Interest, then such Claim or Interest is temporarily Allowed for voting purposes in the reduced amount and/or as reclassified (as applicable), except as may be ordered by the Court before or concurrent with, entry of an order confirming the Plan; *provided*, *further*, that if the Debtors' objection seeks only to disallow a Proof of Claim purportedly filed on behalf of a class of claimants, then such Claim is temporarily Allowed for voting purposes only as to the individual that filed such Proof of Claim and not as to the class of claimants on behalf of which such Proof of Claim was filed.

If any Holder seeks to challenge the Allowed amount of its Claim or Interest for voting purposes, such creditor must file with the Court a motion for an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing such Claim or Interest for voting purposes in a different amount (a "**Rule 3018(a) Motion**").  Any Rule 3018(a) Motion must be filed with the Court so as to be actually received not later than **December 8, 2023 at 5:00 p.m. (Prevailing Central Time)**.

Upon the filing of any such Rule 3018(a) Motion, such Holder's Provisional Ballot shall be counted in accordance with the above-designated guidelines, unless temporarily Allowed in a different amount by an order of the Court entered prior to or concurrent with entry of an order confirming the Plan.

For purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, separate Claims held by a single Holder in a particular Class shall be aggregated as if such Holder held one Claim in the Debtor in such Class, and the votes related to such Claims shall be treated as a single vote to accept or reject the Plan.

**E.     Form, Content, and Manner of Notices.**

1.     **Voting Agent**.

The Debtors have retained Stretto, Inc. ("**Stretto**" or the "**Voting Agent**") as their claims, noticing, and solicitation agent pursuant to the *Order Authorizing the Employment and Retention of Stretto, Inc. As Claims, Noticing, and Solicitation Agent* (Docket No. 28).  Pursuant to the Disclosure Statement Order, Stretto is authorized to assist the Debtors in (i) distributing the Solicitation Packages, (ii) receiving, tabulating, and reporting on Ballots cast to accept or reject the Plan by Holders of Claims and Interests, (iii) responding to inquiries from Holders of Claims and Interests and other parties in interest relating to the Disclosure Statement, the Plan, the Ballots, the Solicitation Packages, and all other related documents and matters related thereto, including the procedures and requirements for voting to accept or reject the Plan and for objecting to the Plan or Disclosure Statement, (iv) soliciting votes on the Plan, and (v) if necessary, contacting creditors and equity holders regarding the Plan, the Ballots, the Solicitation Packages and all other related documents and matters related thereto.

2.     **The Solicitation Package**.

The following materials shall constitute the Solicitation Package:

(a)     the Disclosure Statement Order, as entered by the Court (without attachments, except as set forth below);

(b)     the Disclosure Statement with all exhibits thereto, including the Plan;

(c)     a copy of these Solicitation and Voting Procedures, annexed as **Exhibit 2** to the Disclosure Statement Order;

(d)     the *Notice of (I) Conditional Approval of Disclosure Statement, (II) Approval of (A) Solicitation and Voting Procedures and (B) Notice Procedures for the Assumption or Rejection of Executory Contracts and Unexpired Leases; (III) Combined Hearing to Consider Final Approval of the Disclosure Statement and Confirmation of the Plan; And (IV) Establishing Notice and Objection Procedures for Final Approval of the Disclosure Statement and Confirmation of the Plan* annexed as **Exhibit 1** to the Disclosure Statement Order (the "**Combined Hearing Notice**");

(e)     if the recipient is entitled to vote on the Plan (as set forth herein), a Ballot customized (where possible and appropriate) for such Holder and conforming to Official Bankruptcy Form No. B 314, in the form described below;[6] and

(f)     a postage-prepaid return envelope.

Holders of Claims or Interests in a Non-Voting Class shall only receive the Combined Hearing Notice and the Notice of Non-Voting Status (as defined and described below).

3.     **Distribution of the Solicitation Package.**

The Solicitation Package shall provide the Plan and the Disclosure Statement as well as the Disclosure Statement Order (without attachments except the Solicitation and Voting Procedures annexed as **Exhibit 2** thereto) in electronic format (*i.e.*, USB flash drive format). Moreover, the Plan and Disclosure Statement will be available at no charge via the internet at https://cases.stretto.com/CoreScientific.  Only the Ballots and the Combined Hearing Notice will be provided in paper format.  Any creditor or equity holder for which service by USB flash drive imposes a hardship may request an additional copy of the Disclosure Statement (and attachments) and Disclosure Statement Order with Solicitation and Voting Procedures in paper format by contacting Stretto through (i) e-mail at CoreScientificInquiries@stretto.com, (ii) by writing to Core Scientific, Inc., c/o Ballot Processing Center, C/O Stretto, Inc. 410 Exchange, Suite 100 Irvine, CA 92602, or (iii) via telephone, toll-free, at 949.404.4152 (Toll-Free) or +1 888.765.7875 (if calling from outside the U.S.) (outside of the U.S. and Canada).  Upon receipt of such request, the Debtors will provide such creditor or equity holder with a paper copy of the Plan, Disclosure Statement, and Disclosure Statement Order at no cost to the creditor or equity holder within five (5) days of such request or as soon as reasonably practicable thereafter.

The Debtors shall mail to Holders of Claims and Interests in Voting Classes entitled to vote on the Plan as of the Voting Record Date the Solicitation Packages by November 17, 2023, or as soon as reasonably practicable thereafter (the "**Solicitation Mailing Deadline**").  The Debtors will also provide complete Solicitation Packages (excluding Ballots) to the U.S. Trustee and all parties in interest required to be notified under Bankruptcy Rule 2002 and Local Rule 2002-1.

The Debtors are not required to mail Solicitation Packages to creditors or interest holders (i) who have Claims or Interests that have already been paid in full during the Chapter 11 Cases, (ii) whose prior mailings in these chapter 11 cases were returned as undeliverable and who have not provided a forwarding address by the Voting Record Date, (iii) who hold Class 4 (Other Secured Claims), Class 7 (Priority Non-Tax Claims), Class 9 (Intercompany Claims), or Class 10 (Intercompany Interests), and/or (iv) who are not otherwise entitled to vote to accept or reject the Plan in accordance with the terms and provisions of these Solicitation and Voting Procedures.

---

[6] Official Bankruptcy Form No. B 314 can be found at http://www.uscourts.gov/forms/bankruptcy-forms, the official website for the United States Bankruptcy Courts.

In the event that the United States Postal Service returns any mailings as undeliverable, the Debtors are excused from mailing Solicitation Packages or Notices of Non-Voting Status to addresses from which the Debtors received mailings returned as undeliverable.  For purposes of serving the Solicitation Packages and Notices of Non-Voting Status, the Debtors may rely on the address information for the Holders of Claims and Interests as compiled, updated, and maintained by the Voting Agent as of the Voting Record Date.  The Debtors and the Voting Agent are not required to conduct any additional research for updated addresses based on undeliverable Solicitation Packages (including Ballots) and will not be required to resend Solicitation Packages or other materials, including Notices of Non-Voting Status, that are returned as undeliverable unless the Debtors are provided with accurate addresses for such parties prior to the Voting Record Date.

To avoid duplication and reduce expenses, the Debtors will use commercially reasonable efforts to ensure that each Holder of a Claim or Interest receives no more than one Solicitation Package (and, therefore, one Ballot) on account of such Claim or Interest and with respect to that Class as against the Debtors.

4.        **Forms of Ballots.**

Holders of Claims and Interests in the Voting Classes that are eligible to vote (as set forth herein) shall receive ballots substantially in the forms attached to the Disclosure Statement Order as **Exhibits 3–12** (the "**Ballots**"), as applicable.[7]  All Holders of Claims and Interests in the Voting Classes will receive a Ballot that includes an election to opt out of the non-debtor release provisions in section 10.6(b) of the Plan (the "**Non-Debtor Release Provisions**").  Holders of Claims and Interests in the Voting Classes that properly and timely elect to opt out of the Non-Debtor Release Provisions will not be a Releasing Party or Released Party under the Plan.

The Debtors will distribute Ballots to each of the Holders of Claims or Interests in Voting Classes; *provided*, that the following procedures shall apply, as applicable:

***Holders of Miner Equipment Lender Claims in Class 3 and Class 8.***

Each Holder of a Miner Equipment Lender Claim will receive two Ballots: one Ballot on account of its Miner Equipment Lender Secured Claim in Class 3 and one Ballot on account of its Miner Equipment Lender Deficiency Claim, which constitutes a General Unsecured Claim in Class 8.  Furthermore, as described in the Plan and section 7 below, each Holder of a Miner Equipment Lender Claim will be entitled to elect on its Ballot to receive the Default Miner Equipment Lender Treatment, Miner Equipment Lender Treatment Election 1, or Miner Equipment Lender Treatment Election 2.  Notwithstanding the election option chosen by a Holder of a Miner Equipment Lender Secured Claim in Class 3 pursuant to the Plan, each Holder of a Miner Equipment Lender Deficiency Claim shall be entitled vote its Miner Equipment Lender Deficiency Claim in Class 8; *provided*, that, as provided in the Plan, if such Holder elects Miner

---

[7]  Stretto is required to retain all paper copies of Ballots and all solicitation-related correspondence for one (1) year following the Effective Date, whereupon, Stretto is authorized to destroy and/or otherwise dispose of all paper copies of Ballots; printed solicitation materials including unused copies of the Solicitation Package; and all solicitation-related correspondence (including undeliverable mail), in each case unless otherwise directed by the Debtors or the Clerk of the Court in writing within such one (1) year period.

Equipment Lender Treatment Election 2 on its Ballot, such Holder shall waive its recovery on account of its Miner Equipment Lender Deficiency Claim in Class 8 and shall not be entitled to vote in Class 8.

***Holders of Existing Common Interests in Class 12.***

The Debtors are authorized to distribute the following three forms of Ballots with respect to Existing Common Interests in Class 12: (i) a form of Ballot for registered holders of Class 12 (the "**Equity Registered Holder Ballot**"); (ii) a form of Ballot for a beneficial holder of Class 12 (an "**Equity Beneficial Holder**," and the corresponding ballot, the "**Equity Beneficial Holder Ballot**"); and (iii) a form of Ballot for the bank, broker, or other financial institution "in street name" at DTC on behalf of the Equity Beneficial Holder (the "**Equity Nominee**") (or agent thereof) to transmit the votes of one or more beneficial owners (the "**Equity Master Ballot**").

Any registered holder holding an Existing Common Interest shall vote on the Plan by completing and signing an Equity Registered Holder Ballot on its own behalf and returning such Ballot directly to the Voting Agent on or before the Voting Deadline.

The following additional procedures shall apply to Interests of Equity Beneficial Holders who hold their position at DTC in "street name" through an Equity Nominee:

(a) the Voting Agent shall distribute, or cause to be distributed, the appropriate number of copies of Ballots to Equity Nominees identified by the Voting Agent as entities through which Equity Beneficial Holders hold Existing Common Interests as of the Voting Record Date;

(b) any Equity Nominee that is a holder of record with respect to Existing Common Interests shall solicit votes from Equity Beneficial Holders of such claims and interests by: (i) distributing the Solicitation Packages, including the Equity Beneficial Holder Ballots, as applicable, it receives from the Voting Agent to all such Equity Beneficial Holders, no later than five (5) business days following receipt of the Solicitation Package[8]; (ii) providing such Equity Beneficial Holders with a return address and envelope to send Ballots; (iii) promptly collecting Equity Beneficial Holder Ballots from such Beneficial Holders that cast votes on the Plan; (iv) compiling and validating the votes and other relevant information of all such Equity Beneficial Holders on the Equity Master Ballot; and (v) transmitting the applicable Equity Beneficial Holder Ballot to the Voting Agent by the Voting Deadline;

(c) any Equity Beneficial Holder holding an Existing Common Interest in "street name" through an Equity Nominee must vote on the Plan through such Equity Nominee by completing and signing the Equity Beneficial Holder Ballot and returning such Ballot to

---

[8] Solicitation Packages may be sent in paper format or via electronic transmission in accordance with the customary requirements of each Equity Nominee.  Each Equity Nominee will then distribute the Solicitation Packages, as appropriate, in accordance with its customary practices and obtain votes to accept or to reject the Plan also in accordance with its customary practices.  If it is the Equity Nominee's customary and accepted practice to submit a "voting instruction form" to the Equity Beneficial Holders for the purpose of recording the Equity Beneficial Holder's vote, the Equity Nominee will be authorized to send the voting instruction form in lieu of, or in addition to, an Equity Beneficial Holder Ballot.

the appropriate Equity Nominee as promptly as possible and in sufficient time to allow such Equity Nominee to process the Ballot and return the Equity Master Ballot to the Voting Agent prior to the Voting Deadline. Any Equity Beneficial Holder holding an Existing Common Interest in a "street name" that submits an Equity Beneficial Holder Ballot to the Debtors or Voting Agent will not have such Equity Beneficial Holder Ballot counted for purposes of accepting or rejecting the Plan;

(d) any Equity Beneficial Holder Ballot returned to an Equity Nominee by an Equity Beneficial Holder shall not be counted for purposes of accepting or rejecting the Plan until such Equity Nominee properly completes and delivers to the Voting Agent the Equity Master Ballot that reflects the vote of such Equity Beneficial Holders by the Voting Deadline or otherwise validates the Equity Beneficial Holder Ballot in a manner acceptable to the Voting Agent. Equity Nominees shall retain all Equity Beneficial Holder Ballots returned by Equity Beneficial Holders for a period of one (1) year after the Effective Date of the Plan;

(e) if an Equity Beneficial Holder holds an Existing Common Interest through more than one Equity Nominee or through multiple accounts, such Equity Beneficial Holder may receive more than one Equity Beneficial Holder Ballot and each such Equity Beneficial Holder should execute a separate Equity Beneficial Holder Ballot for each block of Existing Common Interests that it holds through any Equity Nominee and must return each such Equity Beneficial Holder Ballot to the appropriate Equity Nominee;

(f) if an Equity Beneficial Holder holds a portion of its Existing Common Interests through an Equity Nominee or Equity Nominees and another portion in its own name as the record holder, such Equity Beneficial Holder should follow the procedures described herein to vote the portion held in its own name and the procedures described in the rest of this section to vote the portion held by the Equity Nominee(s); and

(g) Equity Beneficial Holders holding Existing Common Interests through an Equity Nominee must return their paper ballot to its Equity Nominee, unless, at the option of the Equity Nominee, the Equity Nominee instructs their Equity Beneficial Holders that they may relay votes or voting instructions electronically or otherwise to the Equity Nominee or the entity preparing the Equity Master Ballot on such Equity Nominee's behalf, and Equity Nominees may use their customary procedures for obtaining such votes electronically or otherwise.

5.   **Notice of Non-Voting Status and Release Opt Out Formns.**

Holders of Claims and Interests in the Non-Voting Classes in lieu of a Solicitation Package, will receive (i) the Combined Hearing Notice (ii) a Notice of Non-Voting Status substantially in the form attached to the Disclosure Statement Order as **Exhibit 13** (the "**Notice of Non-Voting Status**"), and (iii) a Release Opt Out Form (as defined below); *provided* that, the Debtors are not required to serve Holders of Claims and Interests in Class 9 (Intercompany Claims) and Class 10 (Intercompany Interests) copies of the Combined Hearing Notice, Notice of Non-Voting Status, or any other type of notice in connection with solicitation of the Plan because such Claims and Interests are held by the Debtors or the Debtors' affiliates.

The Notice of Non-Voting Status provides (i) notice of the Court's conditional approval of the Disclosure Statement, (ii) notice of the filing of the Plan and Disclosure Statement, (iii) notice of the Holders' non-voting status, and (iv) information about how to obtain copies of the Disclosure Statement and Plan.  In addition, the Notice of Non-Voting Status contains the full text of the release, exculpation, and injunction provisions set forth in Article X of the Plan and advises such Holders in Non-Voting Classes that they will be bound by the Non-Debtor Release Provisions unless they timely and properly opt out.

The Debtors shall cause to be mailed a release opt out form, substantially in the form attached to the Disclosure Statement Order as **Exhibit 14** (the "**Release Opt Out Form**"), to Holders of Claims in Class 4 (Other Secured Claims) and Class 7 (Priority Non-Tax Claims). For Holders of Claims and Interests in the Voting Classes, the opt out option shall be on such Holder's Ballot.

In addition, Other Beneficial Owners shall receive a Release Opt Out Form and Combined Hearing Notice.  The Debtors shall cause to be mailed (i) the Release Opt Out Form and (ii) the Combined Hearing Notice, to the banks, brokers, and financial institutions (or their agents) that might have purchased equity securities in "street name" (collectively, including their agents, the "**Nominees**") on behalf of the Other Beneficial Owners.  With their mailing, the Debtors shall include instructions to the Nominees concerning the requirements in subparagraphs (a)–(d) below.

(a) such Nominees shall either: (i) within seven (7) calendar days of receipt of the Release Opt Out Form and Confirmation Hearing Notice, request from the Debtors sufficient copies of the Release Opt Out Form and Confirmation Hearing Notice to forward to all such beneficial owners and within seven (7) calendar days of receipt of those notices and claim forms forward them to all such beneficial owners; or (ii) within seven (7) calendar days of receipt of the Release Opt Out Form and Confirmation Hearing Notice, provide a list of the names and addresses of all such beneficial owners to the Debtors and the Debtors shall send the Release Opt Out Form and Confirmation Hearing Notice promptly to such identified beneficial owners.

(b) Nominees that elect to send the Release Opt Out Form and Confirmation Hearing Notice to their beneficial owners shall also send a statement to the Debtors and Stretto confirming that the mailing was made and shall retain their mailing records for use in connection with any further notices that may be provided in these Chapter 11 Cases.

(c) if it is the Nominee's customary and accepted practice to forward such materials to beneficial owners by e-mail, e-delivery, or any other method of electronic or printed communication, the Nominees are authorized to follow those customary practices, within seven (7) calendar days of receipt of the materials, in lieu of sending actual printed copies of the Release Opt Out Form and Confirmation Hearing Notice.

(d) within seven (7) calendar days of forwarding such notice, the Nominees may request reimbursement for reasonable and documented noticing costs and research fees, if any, by making such request in writing to the Debtors at the address to be provided by Stretto to the Nominees.

A Holder or Other Beneficial Owner that properly and timely elects on the Release Opt Out Form to opt out of the Non-Debtor Release Provision will not be a Releasing Party or Released Party under the Plan. An encrypted opt-out data and audit trail will be created through the electronic submission process and become part of the record of any opt-out election submitted in this manner. Additionally, any Holder's or Other Beneficial Owner's electronic signature will be deemed to be legally valid and effective immediately. For the avoidance of doubt, Voting Agent's online portal at https://cases.stretto.com/CoreScientific (the "**Online Portal**") is the sole method for Holders of Claims and Interests in Non-Voting Classes and Other Beneficial Owners to transmit opt-out elections electronically. All Release Opt Out Forms must be properly completed and returned by **December 13, 2023 at 5:00 p.m. (Prevailing Central Time)** (the "**Opt Out Deadline**") either by (i) delivering the Release Opt Out Form to the Voting Agent by first-class mail, hand delivery, or overnight courier or (ii) submitting the Release Opt Out Form by electronic, online transmission through the Online Portal, each in accordance with the instructions included on the Release Opt Out Form.

6.    **Voting Deadline.**

The Court has established **December 13, 2023** as the deadline to submit votes to accept or reject the Plan (the "**Voting Deadline**"). The Debtors may extend the Voting Deadline, in their discretion, without further order of the Court. To be counted as a vote to accept or reject the Plan, each Ballot must be properly executed, completed, and delivered to the Voting Agent: (i) by first-class mail in the return envelope provided with each Ballot; (ii) by overnight mail; (iii) by hand delivery, (iv) via E-Ballot through the Online Portal, or, (v) only with respect to Equity Master Ballots, via electronic mail to CoreScientificInquiries@stretto.com so that (in each instance) it is **actually received** by the Voting Agent no later than the Voting Deadline.

Holders of Claims and Interests mailing their Ballots to the Voting Agent shall mail them to the following address:

| **STRETTO'S ADDRESS FOR RECEIPT OF PAPER BALLOTS (WHETHER BY HAND DELIVERY, OVERNIGHT MAIL, OR FIRST CLASS MAIL)** |
|---|
| **CORE SCIENTIFIC, INC.**<br>**BALLOT PROCESSING CENTER**<br>**C/O STRETTO, INC.**<br>**410 EXCHANGE, SUITE 100**<br>**IRVINE, CA 92602** |

In all instances, Holders shall consult their Ballot for specific instructions regarding submission of their votes and any elections.

7.    **Tabulation Procedures.**

***General Rules.***

The following voting procedures and standard assumptions shall be used in tabulating Ballots, subject to the Debtors' right to waive any of the below specified requirements

for completion and submission of Ballots so long as such requirement is not otherwise required by the Bankruptcy Code, Bankruptcy Rules, or Bankruptcy Local Rules:

(a) whenever a Holder of Claims or Interests casts more than one Ballot voting the same Claims and Interests before the Voting Deadline, the latest dated valid Ballot received on or before the Voting Deadline shall be deemed to reflect such creditor's or equity security holder's intent and thus, supersede any previously received, Ballot.  Following the Voting Deadline, no Ballot may be changed or revoked, absent further order of the Court or as directed by the Debtors.

(b) whenever a Holder of Claims or Interests casts a Ballot that is properly completed, executed, and timely returned to the Voting Agent but does not indicate either an acceptance or rejection of the Plan, the Ballot will not be counted.

(c) whenever a Holder of Claims or Interests casts a Ballot that is properly completed, executed, and timely returned to the Voting Agent but indicates both an acceptance and a rejection of the Plan, the Ballot will not be counted.

(d) a Holder shall be deemed to have voted the full amount of its Claim or Interest in each Class and shall not be entitled to split its vote within a particular Class or between more than one Debtor.  Any such Holder's Ballot that partially accepts and partially rejects the Plan, between the same or multiple Debtors, will not be counted.

(e) a Person signing a Ballot in its capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity of a Holder of Claims or Interests should indicate such capacity when signing, and if so requested by the Debtors or the Voting Agent, must submit proper evidence satisfactory to the Debtors of its authority to so act.

(f) a Holder of Claims or Interests against more than one Debtor that casts a single Ballot shall have its votes counted separately with respect to each such Debtor.

(g) a Holder of Claims or Interests in more than one Class must use separate Ballots for each Class of Claims or Interests.

(h) the Debtors, unless subject to contrary order of the Court, may waive any defects or irregularities as to any particular irregular Ballot at any time, either before or after the Voting Deadline.

(i) Holders in Class 3 shall receive two Ballots: (i) a Class 3 Ballot to vote the Allowed Miner Equipment Lender Secured Claims, and (ii) a Class 8 Ballot to vote the Allowed Miner Equipment Lender Deficiency Claims.  Holders of Allowed Miner Equipment Lender Secured Claims and Allowed Miner Equipment Lender Deficiency Claims must vote each ballot consistently, either to accept or reject the Plan.  Holders that vote inconsistently may have their vote(s) discarded.  If a Holder of an Allowed Miner Equipment Lender Secured Claim elects Miner Equipment Lender Election 2 on its Class 3 Ballot and submits a Ballot on account of its Miner Equipment Lender Deficiency Claim in Class 8, such Class 8 Ballot shall be discarded.

(j)  the following Ballots shall not be counted:

    i.    any Ballot received after the Voting Deadline, unless the Debtors shall have granted an extension of the Voting Deadline in writing with respect to such Ballot or waived the late submission;

    ii.    any Ballot that is illegible or contains insufficient information to permit the identification of the voting party;

    iii.    any Ballot cast by a person or entity that does not hold a Claim or Interest in a Class that is entitled to vote to accept or reject the Plan;

    iv.    any Ballot cast by a Person or Entity that is not entitled to vote, even if such individual or Entity holds a Claim or Interest in a Voting Class;

    v.    any unsigned Ballot, provided that E-Ballots submitted on the Online Portal will be deemed to contain a legal, valid signature;

    vi.    any Ballot containing a vote that the Court determines, after notice and a hearing, was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code; or

    vii.    any Ballot transmitted to the Voting Agent by e-mail (other than an Equity Master Ballot) or facsimile or other means not specifically approved herein.

***Rules for Existing Common Interests.***

The following rules will apply with respect to the tabulation of Equity Master Ballots cast by Equity Nominees for Equity Beneficial Holders of Existing Common Interests:

(a)  votes cast by Equity Beneficial Holders through Equity Nominees will be applied to the applicable positions of Existing Common Interests held by such Equity Nominees as of the Voting Record Date, as evidenced by the applicable records.  Votes submitted by an Equity Nominee will not be counted in excess of the amount of such Existing Common Interests held by such Equity Nominee as of the Voting Record Date;

(b)  if conflicting votes or "over votes" are submitted by an Equity Nominee, the Debtors will use reasonable efforts to reconcile discrepancies with the Equity Nominees;

(c)  if over votes on an Equity Master Ballot are not reconciled prior to the preparation of the vote certification, the Debtors shall apply the votes to accept and to reject the Plan in the same proportion as the votes to accept and to reject the Plan submitted on the Equity Master Ballot that contained the over-vote; and

(d)  a single Equity Nominee may complete and deliver to the Voting Agent multiple Equity Master Ballots.  Votes reflected on multiple Equity Master Ballots will be counted, except to the extent that they are duplicative of other Equity Master Ballots.  If two or more Equity Master Ballots are inconsistent, the last dated, valid Equity Master Ballot received prior to

the Voting Deadline will, to the extent of such inconsistency, supersede and revoke any prior dated Equity Master Ballot.

***Rules for Election of Holders of Miner Equipment Lender Secured Claims in Class 3***.

Holders of Miner Equipment Lender Secured Claims in Class 3 are entitled to make certain elections on their Ballots as to the form of consideration they receive pursuant to the Plan. The following procedures will govern the tabulation of their elections:

As set forth in the Plan, each Holder of Allowed Miner Equipment Lender Secured Claims shall be entitled to elect on its Ballot to receive, in lieu of the Default Miner Equipment Lender Treatment, the Miner Equipment Lender Treatment Election 1. Furthermore, Settling Miner Equipment Lenders shall be entitled to elect on its Ballot to receive, in lieu of the Default Miner Equipment Lender Treatment, the Miner Equipment Lender Treatment Election 2. If a Holder of an Allowed Miner Equipment Lender Secured Claim does not make any elections on its Ballot, such Holder shall receive the Default Miner Equipment Lender Treatment. If a Holder of an Allowed Miner Equipment Lender Secured Claim elects Miner Equipment Lender Treatment Election 2 and is not, or does not become, a Settling Miner Equipment Lender, then such Holder shall receive the Default Miner Equipment Lender Treatment.

***Miscellaneous Rules.***

Each Holder of Claims or Interests that votes to accept or reject the Plan is deemed to have voted the full amount of its Claim or Interest therefor.

The Voting Agent may, but is not required to, contact parties who submit incomplete or otherwise deficient Ballots to make a reasonable effort to cure such deficiencies, provided that, neither the Debtors nor Voting Agent is required to contact such parties to provide notification of defects or irregularities with respect to completion or delivery of Ballots, nor will any of them incur any liability for failure to provide such notification. Unless waived, any defects or irregularities in connection with deliveries of Ballots must be cured within such time as the Debtors (or the Court) determines. Neither the Debtors nor any other person will be under any duty to provide notification of defects or irregularities with respect to deliveries of Ballots nor will any of them incur any liabilities for failure to provide such notification. Delivery of such Ballots will not be deemed to have been made until such irregularities have been cured or waived. Ballots previously furnished (and as to which any irregularities have not theretofore been cured or waived prior to the Voting Deadline) will be invalidated.

The Debtors and/or their Voting Agent, as applicable, are authorized to determine all questions as to the validity, form, eligibility (including time of receipt), acceptance, and revocation or withdrawal of Ballots, which determination will be final and binding on all parties.

The Debtors are authorized to reject any and all Ballots submitted by any Holders of Claims or Interests not in proper form, the acceptance of which would, in the opinion of the Debtors or their counsel, as applicable, be unlawful.

The Debtors are further authorized to waive any defects or irregularities or conditions of delivery as to any particular Ballot by any Holders of Claims or Interests.  The interpretation (including the Ballot and the respective instructions thereto) by the Debtors in accordance with the foregoing sentence will be final and binding on all parties.

The Debtors or their Voting Agent shall file the Voting Report on or before **December 18, 2023**.

8.      **Combined Hearing Notice.**

Within three (3) days after entry of the Disclosure Statement Order, or as soon as reasonably practicable thereafter, the Debtors will serve the Notice Parties and Holders of Claims and Interests in the Non-Voting Classes via e-mail or first-class mail, a copy of the Combined Hearing Notice, which sets forth (i) the Voting Deadline, (ii) the Objection Deadline and procedures for filing objections and responses to confirmation of the Plan, (iii) the time, date, and place for the Combined Hearing, and (iv) information about the Plan's release and injunction provisions in compliance with Bankruptcy Rule 2002(c)(3).  The Debtors will separately serve Holders of Claims and Interests in Voting Classes with the Combined Hearing Notice as part of their Solicitation Packages.

The Debtors may, in their discretion, give supplemental publication notice of the Combined Hearing, no later than twenty-eight (28) days prior to the Combined Hearing, in one or more local or foreign newspapers, trade journals, or similar publications as the Debtors deem appropriate.

**The Debtors reserve the right, and are authorized to, in consultation with the Requisite Consenting Creditors, make non-substantive or immaterial changes to the Disclosure Statement, Plan (including, for the avoidance of doubt, the Plan Supplement), Ballots, Combined Hearing Notice, and related documents without further order of the Court, including, without limitation, changes to correct typographical and grammatical errors, if any, and to make conforming changes among the Disclosure Statement, the Plan, and any other materials in the Solicitation Packages before their distribution; *provided* that all such modifications shall be made in accordance with the terms of the document being modified and the Plan.**

# **Exhibit I**

November 17, 2023

To:   Equity Holders of Core Scientific, Inc.

## I.   Recommendation

You are receiving this letter because you hold equity in Core Scientific Inc. ("***Core***").  On December 22, 2022, Core and its affiliated debtor entities (collectively, the "***Debtors***") filed chapter 11 bankruptcy cases.  The Official Committee of Equity Security Holders (the "***Equity Committee***") was appointed in March 2023 to represent the interests of all equity holders in the Debtors' bankruptcy cases.  The Equity Committee has fought tirelessly for equity holders and engaged in extensive negotiations with the Debtors and other stakeholders in these chapter 11 cases.  The result of these efforts and negotiations is the Debtors' *Third Amended Joint Chapter 11 Plan* [Docket No. 1407] (the "***Plan***"), which resolves various disputes among the Debtors, the Equity Committee, and certain other stakeholders, including an ad hoc group of the Debtors' secured convertible notes (the "***Ad Hoc Noteholder Group***").

The Equity Committee supports the Plan and believes that it provides a fair and reasonable outcome for existing equity holders under the circumstances—with significantly more recovery for equity holders than was contemplated when these bankruptcy cases were initially filed.  Under the Plan, equity holders will receive their pro rata share of:

- equity in reorganized Core, anticipated to be approximately 32% of the total equity;

- two tranches of warrants to purchase up to 50% of the equity in reorganized Core in the future, if certain conditions are met; and

- the opportunity to participate in an Equity Rights Offering ("***ERO***") to purchase additional equity in reorganized Core at a 30% discount to the $1.5 billion Plan enterprise value.

**Accordingly, the Equity Committee recommends that you vote in favor of the Plan by checking the "ACCEPT (vote for) the Plan" box on the ballot you have received with this letter.**

**Accept** (vote for) the Plan

For your vote to count, you must submit your ballot in accordance with the instructions provided in these materials so that is actually received no later than **5:00 pm Central Time on December 13, 2023**.

Although this letter provides a summary of the terms of the Plan and the material events of these chapter 11 cases, you must read the Plan, the Disclosure Statement, and the other materials included with this letter.  Those materials provide specific instructions on how to properly submit your Ballot so your vote is counted.

Debtors' Exhibit No. 21
Page 67 of 153

## II.     Background

Core and its subsidiaries filed their chapter 11 bankruptcy cases in December 2022, in the midst of the "crypto-winter" and significantly depressed bitcoin prices.  At the time, the Debtors had entered into a restructuring support agreement that would have provided the Ad Hoc Noteholder Group with more than 97% of the equity interests in reorganized Core, with the remaining 3% shared between unsecured creditors and existing equity holders.

As the price of bitcoin began to rebound in early 2023, the Debtors elected to terminate their restructuring support agreement with the Ad Hoc Noteholder Group on February 10, 2023 [Docket No. 517].  In parallel with these improving market conditions, an ad hoc group of existing equity holders began advocating for the appointment of an equity committee and in March 2023, after litigation and negotiations, the Debtors and other stakeholders agreed to appointment of an equity committee.  On March 23, 2023, the U.S. Trustee filed the notice appointing the members of the Equity Committee [Docket No. 724].   The Equity Committee has since retained Vinson & Elkins LLP as its legal counsel and FTI Consulting, Inc. as its financial advisor.

Throughout the spring of 2023, the price of bitcoin continued to climb.  The Debtors revised their business plan to address the changing market and presented the revised business plan to the Court on May 22, 2023 [Docket No. 923].  In the months that followed, the Debtors and the Equity Committee sought to establish consensus regarding the revised business plan and a proposed plan of reorganization that reflected the improved market conditions and provided a corresponding recovery to the Debtors' equity holders.  However, significant disputes emerged regarding the Debtors' enterprise value and corresponding recoveries to stakeholders.

In hopes of finding a consensual path forward, the Debtors and their stakeholders agreed to mediate these issues before the Honorable Marvin Isgur of the United States Bankruptcy Court for the Southern District of Texas in July 2023.  This mediation lasted multiple months and eventually the Debtors and the Ad Hoc Noteholder Group agreed to the economic terms of a potential settlement.  However, implementing this settlement required extensive negotiations with other parties, including the Equity Committee.

On October 30, 2023, these negotiations were memorialized in the *Restructuring Term Sheet*, among the Debtors, the Equity Committee, and the Ad Hoc Noteholder Group [Docket No. 1367], which set forth the economic terms of the proposed restructuring and formed the basis of the Plan.  After further negotiations, the Debtors, the Equity Committee, and the Ad Hoc Noteholder Group also agreed to the terms of a revised Restructuring Support Agreement, which formally documented the obligations and rights of the parties with respect to the proposed restructuring and was filed on the Court's docket on November 16, 2023 [Docket No. [•]] (the "***RSA***").

## III.     The Plan

The Plan, which is the product of months-long mediation and negotiation, settles several contested issues among the Debtors, the Equity Committee, and the Ad Hoc Noteholder Group. Any alternatives to the Plan would likely result in protracted litigation, diminished recoveries to equity holders, and increased professional fees due to the additional time spent in chapter 11.  The

treatment for all holders of claims and interests is set forth in Article IV of the Plan and in Section II of the Disclosure Statement.

Specifically, the Plan provides the following treatment for Core's existing equity holders on a *pro rata* basis:

- Equity holders will receive approximately 32% of the equity interests of reorganized Core, after distribution to senior creditors under the Plan.

- Equity holders will also receive two tranches of warrants, which are summarized in the table below. The Tranche 1 Warrants have a 3-year term. Within those three years, the Tranche 1 Warrants may be redeemed for up to 30% of outstanding equity after reorganized Core's enterprise value reaches a strike price of $1.875 billion. The Tranche 2 Warrants have a 5-year term and may be redeemed for up to 20% of outstanding equity after reorganized Core's enterprise value reaches $2.5 billion.[1]

|  | **Tranche 1 Warrants** | **Tranche 2 Warrants** |
|---|---|---|
| **Amount** | Up to 30% of equity in reorganized Core, subject to dilution by Tranche 2 Warrants | Up to 20% of equity in reorganized Core |
| **Exercise Valuation** | Strike price based on $1.875 billion TEV | Penny warrant exercisable at or above $2.5 billion TEV |
| **Exercise Provision** | Cash exercise only | Cash or cashless exercise |
| **Term** | Three years | Five years |
| **Black-Scholes Protections** | Yes, with respect to consideration other than listed, freely tradable stock | Yes, with respect to consideration other than listed, freely tradable stock |

- Equity holders will also receive the opportunity to subscribe to the ERO for up to $55 million of reorganized Core's equity interests. The equity interests in the ERO are available at a 30% discount to the Plan's proposed equity value. As a result, existing equity holders have a unique opportunity to purchase additional shares of reorganized Core at a discount in addition to their recovery of equity interests in reorganized Core.

---

[1]   A detailed description of the warrants and their terms is available in Section [I.A.iii] of the Disclosure Statement.

Debtors' Exhibit No. 21

An illustration of the potential equity splits under the Plan is included below.

| Class | $37.1 million Rights Offering | $55 million Rights Offering |
|---|---|---|
| | % of Effective Date New Common Interests[2] | |
| Convertible Noteholder Equity Distribution | 37.9% | 34.0% |
| Class 3 (Miner Equipment Lenders) | 4.2% | 4.2% |
| Class 8 (GUC Claims) | 10.2% | 10.2% |
| Class 11 (510(b) Claims) | 0% | 0% |
| Class 12 (Existing Common Interests) | 32.6% | 33.3% |
| Rights Offering–Backstop Commitment Premium | 1.4% | 1.4% |
| Rights Offering– Subscription + Backstop Shares | 6.8% | 10.1% |
| Shares reserved for Bitmain | 6.9% | 6.9% |
| Total | 100% | 100% |
| Total Existing Common Interest Equity Ownership (including Backstop Fee)[3] | 40.8% | 44.7% |

## IV.    The Equity Rights Offering

The ERO will provide the Debtors with up to $55 million of liquidity to fund recoveries to stakeholders under the Plan and provide the Company with additional liquidity.  Equity holders have the opportunity to subscribe to their pro rata percentage of subscriptions offered in the ERO. Additional details regarding the ERO have been separately sent to you, but a key feature of the shares offered in the ERO is that they are issued at a 30% discount to the "Plan Equity Value" based on a $1.5 billion total enterprise value for Core.  As a result, an existing equity holder that invested $1.0 million in subscription rights in the ERO would receive approximately $1.42 million of value in equity of reorganized Core after applying the 30% discount.

## V.    Conclusion

The Equity Committee believes that the Plan provides a fair and reasonable recovery for Core's existing equity holders under the circumstances and the most expeditious path for the Debtors to emerge from these chapter 11 cases.  Accordingly, as stated above, the Equity Committee supports the Plan, and encourages each equity holder receiving this letter to vote to

---

[2]    These equity percentages are illustrative only and are subject to changes based on, among others, final professional fees, the resolution of certain disputed claims asserted by creditors, and elections made by senior creditors, among others.  If claims are allowed in amounts different than the Debtors' estimate, the percentages below may differ from the estimates provided.

[3]    Includes Backstop Fees earned by Commitment Parties (as defined below) that hold existing equity interests of Core.

**ACCEPT** the Plan and return its ballot in accordance with the instructions enclosed **no later than 5:00 pm Central Time on December 13, 2023**.

# **Exhibit J**

**No person has been authorized to give any information or advice, or to make any representation, other than what is included in the Disclosure Statement and other materials accompanying this Ballot.[1]**

**PLEASE NOTE THAT, EVEN IF YOU INTEND TO VOTE TO REJECT THE PLAN, YOU MUST STILL READ, COMPLETE, AND EXECUTE THIS ENTIRE BALLOT.**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | § § § | Chapter 11 |
| **CORE SCIENTIFIC, INC.**, *et al.*, | § § | **Case No. 22-90341 (CML)** |
| Debtors[2] | § § § | **(Jointly Administered)** |

## BENEFICIAL HOLDER BALLOT FOR
## VOTING TO ACCEPT OR REJECT THE THIRD AMENDED JOINT
## <u>CHAPTER 11 PLAN OF CORE SCIENTIFIC, INC. AND ITS AFFILIATED DEBTORS</u>

## CLASS 12 (EXISTING COMMON INTEREST)

---

[1]   All capitalized terms used but not defined herein or in the enclosed voting instructions have the meanings ascribed to them in the Plan, attached as <u>Exhibit A</u> to the Disclosure Statement.

[2]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions VII, LLC (3198).  The Debtors' corporate headquarters is 210 Barton Springs Road, Suite 300, Austin, Texas 78704.  The Debtors' service address is 2407 S. Congress Ave, Suite E-101, Austin, Texas 78704.

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING BALLOTS CAREFULLY *BEFORE* COMPLETING THIS BALLOT.**

**IF YOU RECEIVED A RETURN ENVELOPE ADDRESSED TO YOUR NOMINEE, IN ORDER FOR YOUR VOTE TO BE COUNTED, YOU MUST FOLLOW THE DIRECTIONS OF YOUR NOMINEE AND ALLOW SUFFICIENT TIME FOR YOUR NOMINEE TO RECEIVE YOUR VOTE AND TRANSMIT SUCH VOTE ON A MASTER BALLOT, WHICH MASTER BALLOT MUST BE RETURNED TO THE VOTING AGENT BY DECEMBER 13, 2023 AT 5:00 P.M. (PREVAILING CENTRAL TIME) (THE "VOTING DEADLINE") , UNLESS EXTENDED BY THE DEBTORS WITH THE CONSENT OF THE REQUISITE CONSENTING CREDITORS.**

**IF, HOWEVER, YOU RECEIVED A "PRE-VALIDATED" BALLOT FROM YOUR NOMINEE WITH INSTRUCTIONS TO SUBMIT SUCH BALLOT DIRECTLY TO THE VOTING AGENT, IN ORDER FOR YOUR VOTE TO BE COUNTED, YOU MUST COMPLETE, EXECUTE, AND RETURN THE "PRE-VALIDATED" BALLOT, SO AS TO BE *ACTUALLY RECEIVED* BY THE VOTING AGENT BY THE VOTING DEADLINE, UNLESS EXTENDED BY THE DEBTORS WITH THE CONSENT OF THE REQUISITE CONSENTING CREDITORS.**

Core Scientific, Inc. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**") are soliciting votes with respect to the *Third Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors*, filed on November 16, 2023 (Docket No. 1438) (as may be modified, amended, or supplemented, the "**Plan**"). The Plan is attached as **Exhibit A** to the *Disclosure Statement for Third Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors*, filed on November 16, 2023 (Docket No. 1439) (as may be modified, amended, or supplemented, the "**Disclosure Statement**").

Please use this Ballot to cast your vote to accept or reject the Plan if you are, as of November 9, 2023 (the "**Voting Record Date**"): a beneficial Holder of the common stock issued by Core Scientific, Inc.; or a beneficial Holder of any Vested RSUs. The Disclosure Statement provides information to assist you in deciding whether to accept or reject the Plan. If you do not have a Disclosure Statement, you may obtain a copy (a) for a fee via PACER at http://www.txs.uscourts.gov; or (b) from Stretto, Inc. (the "**Voting Agent**") at no charge by accessing the Debtors' restructuring website at https://cases.stretto.com/CoreScientific/, by email at CoreScientificInquiries@stretto.com, or by telephone at (949).404.4152 (Toll-Free) or +1 888.765.7875 (if calling from outside the U.S.).

2

---

**IMPORTANT NOTICE REGARDING TREATMENT FOR EXISTING COMMON INTERESTS CLASS 12**

As described in more detail in the Disclosure Statement, if the Plan is confirmed and the Effective Date occurs, except to the extent that a Holder of an Existing Common Interest agrees to a less favorable treatment of such Interest, each such Holder shall receive, in full and final satisfaction, settlement, release, and discharge of such Interest, on the Effective Date, or as soon as reasonably practicable thereafter, (i) such Holder's Pro Rata Equity Share of the Residual Equity Pool, (ii) such Holder's Pro Rata Equity Share of the New Warrants, and (iii) the right to participate in the Rights Offering in accordance with the Rights Offering Procedures; provided, that with respect to any Existing Common Interests that are Unvested Restricted Stock, any New Common Interests distributed to Holders on account of such Unvested Restricted Stock will be subject to the same restrictions/vesting conditions applicable to such Unvested Restricted Stock as of the Effective Date.

**PLEASE READ THE DISCLOSURE STATEMENT AND PLAN FOR MORE DETAILS.**

---

The Plan can be confirmed by the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") and thereby made binding on you if it is accepted by the Holders of (i) at least two-thirds in amount of the Allowed Claims or Interests voted in each Impaired Class, and (ii) if the Impaired Class is a Class of Claims, more than one-half in number of the Allowed Claims voted in each Impaired Class, and if the Plan otherwise satisfies the applicable requirements of section 1129(a) under the Bankruptcy Code.  If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (y) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan and (z) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.  If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan.  To have your vote counted, you must complete, sign, and return this Ballot to the Voting Agent by the Voting Deadline.

This Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance or disallowance of, or distribution on account of, Class 12 Existing Common Interests.  You must provide all of the information requested by this Ballot.  Failure to do so may result in the disqualification of your vote.

**NOTICE REGARDING CERTAIN RELEASE,
EXCULPATION, AND INJUNCTION PROVISIONS IN PLAN**

**If you (i) vote to accept the Plan, (ii) are solicited to vote to accept or reject the Plan, but do not vote to either accept or reject the Plan, and do not opt out of granting the releases set forth in the Plan, (iii) vote, or are deemed, to reject the Plan or are presumed to accept the Plan but do not opt out of granting the releases set forth in the Plan, or (iv) were given notice of the opportunity to opt out of granting the releases contained in the Plan but**

3

do not opt out, you shall be deemed to have consented to the releases contained in Section 10.6(b) of the Plan.  The releases as presented in the Plan are provided below:

**SECTION 10.5** **INJUNCTION.**

Except as otherwise expressly provided in the Plan or for distributions required to be paid or delivered pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold Claims or Interests that have been released pursuant to Section 0 or Section 0, shall be discharged pursuant to Section Error! Reference source not found. of the Plan, or are subject to exculpation pursuant to Section Error! Reference source not found., **and all Subcontractors and all other parties in interest are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Released Parties, and/or the Exculpated Parties (to the extent of the exculpation provided pursuant to Section** Error! Reference source not found. **with respect to the Exculpated Parties): (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (iii) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless (x) such Entity has timely asserted such setoff right either in a Filed Proof of Claim, or in another document Filed with the Bankruptcy Court explicitly preserving such setoff or that otherwise indicates that such entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise or (y) such right to setoff arises under a postpetition agreement with the Debtors or an Executory Contract that has been assumed by the Debtors as of the Effective Date; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released, settled, and/or treated, entitled to a distribution, or cancelled pursuant to the Plan or otherwise Disallowed;** *provided* **that such persons who have held, hold, or may hold Claims against, or Interests in, a Debtor, a Reorganized Debtor, or an Estate shall not be precluded from exercising their rights and remedies, or obtaining the benefits, solely pursuant to and consistent with the terms of the Plan.**

Subject in all respects to Section Error! Reference source not found.**, no entity or person may commence or pursue a Claim or Cause of Action of any kind against any Released Party or Exculpated Party that arose or arises from, in whole or in part, the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors (which includes, for the avoidance of doubt, all claims and Causes of Action asserted or assertable in the Securities Class Action), the DIP Facility, the Convertible Notes Agreements, the Miner Equipment Lender Agreements, the Mortgage Agreements, the General Contracts, any and all agreements relating to M&M Liens, and any**

4

and all related agreements, instruments, and/or other documents, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Plan Settlements, the New Secured Convertible Notes Documents, the New Secured Notes Documents, the Contingent Payment Obligations Documents, the New Miner Equipment Lender Debt Documents, the Exit Facility Documents, the New Warrants Agreement, the Rights Offering, the Backstop Commitment Letter, the Initial DIP Loan Documents, the DIP Facility, the Terminated RSA, the RSA, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan (including, but not limited to, the New Common Interests), or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a claim of willful misconduct, fraud or gross negligence against a Released Party or Exculpated Party and (ii) specifically authorizing such Entity or Person to bring such Claim or Cause of Action against any such Released Party or Exculpated Party.  The Bankruptcy Court shall have sole and exclusive jurisdiction to determine whether a Claim or Cause of Action is colorable and, only to the extent legally permissible and as provided for in Section Error! Reference source not found., shall have jurisdiction to adjudicate the underlying colorable Claim or Cause of Action.

**SECTION 10.6(a)      RELEASES BY THE DEBTORS.**

Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the obligations of the Debtors under the Plan and the contributions of the Released Parties to facilitate and implement the Plan, except as otherwise provided in the Plan or in the Confirmation Order, on and after the Effective Date, the Released Parties are deemed conclusively, absolutely, unconditionally and irrevocably, released and discharged by the Debtors, the Reorganized Debtors, and the Estates from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Reorganized Debtors, the Estates, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors (which includes, for the avoidance of doubt, all claims and Causes of Action asserted or assertable in the Securities Class Action), the DIP Facility, the

5

**Convertible Notes Agreements, the Miner Equipment Lender Agreements, the Mortgage Agreements, the General Contracts, any and all agreements relating to M&M Liens, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Plan Settlements, the New Secured Convertible Notes Documents, the New Secured Notes Documents, the Contingent Payment Obligations Documents, the New Miner Equipment Lender Debt Documents, the Exit Facility Documents, the New Warrants Agreement, the Rights Offering, the Backstop Commitment Letter, the Initial DIP Loan Documents, the DIP Facility, the Terminated RSA, the RSA, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan (including, but not limited to, the New Common Interests), or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth in Section 0 of the Plan (i) shall only be applicable to the maximum extent permitted by law; (ii) shall not be construed as (a) releasing any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud (*provided* that actual fraud shall not exempt from the scope of these Debtor releases any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, (b) releasing any Released Party from Claims or Causes of Action held by the Debtors arising from an act or omission that is determined by a Final Order or by a federal government agency to have constituted a violation of any federal securities laws or (c) releasing any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.**

**SECTION 10.6(b)      RELEASES BY HOLDERS OF CLAIMS AND INTERESTS.**

**Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, except as otherwise provided in the Plan or in the Confirmation Order, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, each Releasing Party, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released, and discharged the Debtors, the Reorganized Debtors, and the Released Parties from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims or Causes of Action asserted or that may be asserted on behalf of the Debtors or their Estates, that such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or**

Debtors' Exhibit No. 21
Page 78 of 153

**Interest, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, including any Claims or Causes of Action based on or relating to, or in any manner arising from, in whole or in part, the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors (which includes, for the avoidance of doubt, all claims and Causes of Action asserted or assertable in the Securities Class Action), the DIP Facility, the Convertible Notes Agreements, the Miner Equipment Lender Agreements, the Mortgage Agreements, the General Contracts, any and all agreements relating to M&M Liens, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Plan Settlements, the New Secured Convertible Notes Documents, the New Secured Notes Documents, the Contingent Payment Obligations Documents, the New Miner Equipment Lender Debt Documents, the Exit Facility Documents, the New Warrants Agreement, the Rights Offering, the Backstop Commitment Letter, the Initial DIP Loan Documents, the DIP Facility, the Terminated RSA, the RSA, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan (including, but not limited to, the New Common Interests), or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth in Section 0 of the Plan (i) shall only be applicable to the maximum extent permitted by law; and (ii) shall not be construed as (a) releasing any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud (*provided* that actual fraud shall not exempt from the scope of these third-party releases any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, or (b) releasing any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.**

**SECTION 10.7**      **EXCULPATION.**

> Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out, in whole or in part, from the Petition Date through the Effective Date, of the Chapter 11 Cases, the Debtors, the governance, management, transactions,

7

ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors, the DIP Facility, the Convertible Notes Agreements, the Miner Equipment Lender Agreements, the Mortgage Agreements, the General Contracts, any and all agreements relating to M&M Liens, and related agreements, instruments, or other documents, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Plan Settlements, the New Secured Convertible Notes Documents, the New Secured Notes Documents, the Contingent Payment Obligations Documents, the New Miner Equipment Lender Debt Documents, the Exit Facility Documents, the New Warrants Agreement, the Rights Offering, the Backstop Commitment Letter, the Initial DIP Loan Documents, the DIP Facility, the Terminated RSA, the RSA, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan (including, but not limited to, the New Common Interests), or the distribution of property under the Plan, or any other related agreement, except for Claims or Causes of Action arising from an act or omission that is judicially determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects, such Exculpated Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities.  The Exculpated Parties have, and upon completion of the Plan, shall be deemed to have, participated in good faith and in compliance with all applicable laws with regard to the solicitation and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.  Notwithstanding anything to the contrary in the foregoing, the exculpations set forth in Section Error! Reference source not found. of the Plan (i) shall only be applicable to the maximum extent permitted by law; and (ii) shall not be construed as (a) exculpating any Exculpated Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud (*provided* that actual fraud shall not exempt from the scope of these exculpations any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, or (b) exculpating any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

## SECTION 5.17       CANCELLATION OF LIENS.

(a)       Except as otherwise specifically provided in the Plan, including sections **Error! Reference source not found.** and **Error! Reference source not found.** of the Plan, all notes, instruments, certificates evidencing debt of the Debtors and Existing Common Interests

Debtors' Exhibit No. 21
Page 80 of 153

will be cancelled and obligations of the Debtors thereunder will be discharged and of no further force or effect, except for the purpose of allowing the applicable agents and trustees to receive distributions from the Debtors under the Plan and to make any further distributions to the applicable Holders on account of their Allowed Claims and Interests.

(b) After the Effective Date and following (i) the distributions to Holders on account of Allowed Convertible Notes Secured Claims and Allowed Miner Equipment Lender Secured Claims and/or (ii) with regard to Allowed M&M Lien Secured Claims, satisfaction of the applicable M&M Lien Takeback Debt, the Debtors or the Reorganized Debtors, at their expense, may, in their sole discretion, take any action necessary to terminate, cancel, extinguish, and/or evidence the release of any and all mortgages, deeds of trust, Liens, pledges, and other security interests with respect to the Convertible Notes Secured Claims, Miner Equipment Lender Secured Claims, and M&M Lien Secured Claims, including, without limitation, the preparation and filing of any and all documents necessary to terminate, satisfy, or release any mortgages, deeds of trust, Liens, pledges, and other security interests held by the Holders of the M&M Lien Secured Claims, Miner Equipment Lender Secured Claims, the Notes Agent, and/or Convertible Noteholders, including, without limitation, UCC-3 termination statements.

**Relevant Definitions Related to Release and Exculpation Provisions**:

       ***"Exculpated Parties"*** means each of the following in their capacity as such and, in each case, to the maximum extent permitted by law: (i) the Debtors; and (ii) Equity Committee and its members, each solely in their capacity as such.

       ***"Related Parties"*** means with respect to a Person, that Person's current and former Affiliates, and such Person's and its current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, fiduciaries, trustees, advisory board members, financial advisors, partners, limited partners, general partners, attorneys, accountants, managed accounts or funds, management companies, fund advisors, investment bankers, consultants, representatives, and other professionals, and such Person's respective heirs, executors, estates, and nominees, each in their capacity as such, and any and all other Persons or Entities that may purport to assert any Cause of Action derivatively, by or through the foregoing entities.

       ***"Released Parties"*** means, collectively: (i) the Debtors; (ii) the Reorganized Debtors; (iii) the Equity Committee and its members that are party to the RSA, solely in their capacities as such; (iv) the Backstop Parties; (v) the Settling Miner Equipment Lenders; (vi) Brown Corporation; (vii) Holliwood LLC; (viii) the Ad Hoc Noteholder Group; (ix) the Consenting Creditors; (x) the Exit Lenders; (xi) the Notes Agent, solely in its capacity as such; and (xii) with respect to each of the foregoing Persons in clauses (i) through (xi), all Related Parties. Notwithstanding the foregoing, any Person that opts out of the releases set forth in section 10.6(b) of the Plan shall not be deemed a Released Party thereunder.

Debtors' Exhibit No. 21
Page 81 of 153

***"Releasing Parties"*** means collectively, and in each case solely in their capacity as such, (i) the Debtors; (ii) the Reorganized Debtors; (iii) with respect to each of the foregoing Persons in clauses (i) through (ii), all Related Parties; (iv) the Released Parties; (v) the Holders of all Claims or Interests that vote to accept the Plan; (vi) the Holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but that do not vote either to accept or to reject the Plan and do not opt out of granting the releases set forth in the Plan; (vii) the Holders of all Claims or Interests that vote, or are deemed, to reject the Plan or that are presumed to accept the Plan but do not opt out of granting the releases set forth in the Plan; and (viii) the Holders of all Claims and Interests and all Other Beneficial Owners that were given notice of the opportunity to opt out of granting the releases set forth in the Plan but did not opt out.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

10

**PLEASE READ THE ATTACHED VOTING INFORMATION
AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT**

> **PLEASE COMPLETE ITEMS 1, 2, 3, AND 4. IF THIS BALLOT HAS NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE VALID OR COUNTED AS HAVING BEEN CAST.**

**Item 1.** **Number of Existing Common Interests**. The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the Holder (or authorized signatory of such a Holder) of Existing Common Interests in Class 12 in the aggregate amount set forth below.

| Voting Class | Description | Number of Shares |
|---|---|---|
| Class 12 | Existing Common Interests as of the Voting Record Date (November 9, 2023) | _____ |

**Item 2.** **Votes on the Plan**. Please vote either to accept or to reject the Plan with respect to your Claims below. Any Ballot not marked either to accept or reject the Plan, or marked both to accept and reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

> **Prior to voting on the Plan, please note the following:**
>
> **If you (i) vote to accept the Plan, (ii) do not vote either to accept or reject the Plan and do not check the box in Item 3 below, or (iii) vote to reject the Plan and do not check the box in Item 3 below, in each case you shall be deemed to have consented to the release provisions set forth in Section 10.6(b) of the Plan.**
>
> **The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation provisions.**

The undersigned Holder of a Class 12 Existing Common Interest votes to (please check <u>one and only one</u> box):

☐ **Accept** (vote for) the Plan.          ☐ **Reject** (vote against) the Plan.

**<u>Your vote on the Plan will be applied to each applicable Debtor in the same manner and in the same amount as indicated in Item 1 and Item 2 above.</u>**

**Item 3.** **Optional Opt Out Release Election**. Check the box below if you elect not to grant the releases contained in Section 10.6(b) of the Plan. If you voted to reject the Plan in Item 2 above, or if you are abstaining from voting to accept or reject the Plan, check this box if you elect not to grant the releases contained in Section 10.6(b) of the Plan. Election to withhold consent is at your option. If you voted to accept the Plan in Item 2 above, you **may not** complete this Item 3, and if you complete this Item 3, your "opt out" election will be ineffective. If you submit a

11

rejecting Ballot, or if you abstain from submitting a Ballot, and in each case, you do not check the box below, you will be deemed to consent to the releases contained in Section 10.6(b) of the Plan to the fullest extent permitted by applicable law.  The Holder of the Class 12 Existing Common Interest elects to:

☐  **OPT OUT** of the releases contained only in Section 10.6(b) of the Plan.

**Item 4.**        **Acknowledgements**.  By signing this Ballot, the Holder (or authorized signatory of such Holder) acknowledges receipt and review and receipt of the Plan, the Disclosure Statement, and the other applicable solicitation materials, and certifies that (i) it has the power and authority to vote to accept or reject the Plan, (ii) it was the Holder (or is entitled to vote on behalf of such Holder) of the Class 12 Existing Common Interests described in Item 1 as of the Voting Record Date, and (iii) all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned.

Name of Holder _____

Signature _____

If by Authorized Agent, Name and Title _____

Name of Institution _____

Street Address _____

City, State, Zip Code _____

Telephone Number _____

Date Completed _____

E-Mail Address _____

Debtors' Exhibit No. 21
Page 84 of 153

**VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT**

1.      Complete the Ballot by providing all the information requested, signing, dating, and returning the Ballot in the envelope provided, or as indicated by your Nominee (as defined below).  Any Ballot that is illegible, contains insufficient information to identify the Beneficial Holder, does not contain an original signature, or is unsigned will not be counted.  If neither the "accept" nor "reject" box is checked in Item 2, both boxes are checked in Item 2, or the Ballot is otherwise not properly completed, executed, or timely returned, then the Ballot shall not be counted in determining acceptance or rejection of the Plan.  Notwithstanding the foregoing, if your Nominee is collecting your vote through other customary methods, including (but not limited to) via a "voting information form," please follow the instructions set forth by your Nominee.

2.      Please return the Ballot in the envelope provided, or as otherwise directed by your broker, dealer, commercial bank, trust company, or other agent designated as your nominee (the "**Nominee**").  **The Voting Agent will tabulate all properly completed pre-validated Beneficial Holder Ballots and Master Ballots received on or before the Voting Deadline.  IF YOU ARE RETURNING YOUR BALLOT TO YOUR NOMINEE, PLEASE RETURN IT BY THE DEADLINE PROVIDED BY YOUR NOMINEE TO ALLOW SUFFICIENT TIME FOR YOUR VOTE TO BE INCLUDED ON A MASTER BALLOT AND FORWARDED TO THE VOTING AGENT BY THE VOTING DEADLINE.**

3.      If it is your Nominee's customary practice to collect your vote via voter information form, e-mail, telephone, or other means in lieu of this Beneficial Holder Ballot, you may follow your Nominee's instructions regarding the submission of your vote.

4.      Ballots received after the Voting Deadline (if the Voting Deadline has not been extended) may not, at the Debtors' discretion, be counted.  The Voting Agent will tabulate all properly completed Ballots received on or before the Voting Deadline.

5.      You must vote all your Claims within a single Class under the Plan either to accept or reject the Plan. Accordingly, if you return more than one Ballot voting different or inconsistent Claims within a single Class under the Plan, the Ballots are not voted in the same manner, and you do not correct this before the Voting Deadline, those Ballots will not be counted. An otherwise properly executed Ballot that attempts to partially accept and partially reject the Plan likewise will not be counted.

6.      The Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or Interest or an assertion or admission of Claims or Interests.

7.      The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

8.      If you cast more than one Ballot voting the same Claims prior to the Voting Deadline, the latest received, properly executed Ballot submitted to the Voting Agent will supersede any prior Ballot.

Debtors' Exhibit No. 21
Page 85 of 153

9.     If (a) the Debtors revoke or withdraw the Plan, or (b) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

10.    There may be changes made to the Plan that do not cause material adverse effects on an accepting Class.  If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

11.    NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT, ANY SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTORS, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

12.    PLEASE RETURN YOUR BALLOT PROMPTLY.

13.    IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT BY CALLING (949) 404-4152 (TOLL-FREE) OR +1 (888) 765-7875(IF CALLING FROM OUTSIDE THE U.S.); WRITING CORE SCIENTIFIC, INC., BALLOT PROCESSING CENTER, C/O STRETTO, INC., 410 EXCHANGE, SUITE 100, IRVINE, CA 92602; OR BY SENDING AN ELECTRONIC MAIL MESSAGE TO CORESCIENTIFICINQUIRIES@STRETTO.COM WITH "CORE SCIENTIFIC" IN THE SUBJECT LINE.  PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.

14.    THE VOTING AGENT IS NOT AUTHORIZED TO AND WILL NOT PROVIDE LEGAL ADVICE.

PLEASE RETURN YOUR BALLOT PROMPTLY IN THE ENVELOPE PROVIDED OR AS OTHERWISE DIRECTED BY YOUR NOMINEE.  PLEASE ALLOW SUFFICIENT TIME FOR YOUR BALLOT TO BE INCLUDED ON A MASTER BALLOT COMPLETED BY YOUR NOMINEE.  THE MASTER BALLOT MUST BE ACTUALLY RECEIVED BY THE VOTING AGENT ON OR BEFORE THE VOTING DEADLINE.

IF YOU (I) HAVE ANY QUESTIONS REGARDING THE BALLOT, (II) DID NOT RECEIVE A COPY OF THE DISCLOSURE STATEMENT OR THE PLAN, OR (III) NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS, PLEASE REACH OUT TO THE VOTING AGENT AT (949) 404-4152 (TOLL-FREE) OR ++1 (888) 765-7875 (IF CALLING FROM OUTSIDE THE U.S.); WRITING CORE SCIENTIFIC, INC., BALLOT PROCESSING CENTER, C/O STRETTO, INC., 410 EXCHANGE, SUITE 100, IRVINE, CA 92602; OR BY SENDING AN EMAIL TO CORESCIENTIFICINQUIRIES@STRETTO.COM WITH "CORE SCIENTIFIC" IN THE SUBJECT LINE.  PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.

Debtors' Exhibit No. 21
Page 86 of 153

# **Exhibit K**

**No person has been authorized to give any information or advice, or to make any representation, other than what is included in the Disclosure Statement and other materials accompanying this Ballot.[1]**

PLEASE NOTE THAT, EVEN IF YOU INTEND TO VOTE TO REJECT THE PLAN, YOU MUST STILL READ, COMPLETE, AND EXECUTE THIS ENTIRE BALLOT.

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| **CORE SCIENTIFIC, INC.**, *et al.*, | § | Case No. 22-90341 (CML) |
| | § | |
| Debtors[2] | § | (Jointly Administered) |
| | § | |

### MASTER BALLOT FOR VOTING TO
### ACCEPT OR REJECT THE THIRD AMENDED JOINT
### CHAPTER 11 PLAN OF CORE SCIENTIFIC, INC. AND ITS AFFILIATED DEBTORS

### CLASS 12 (EXISTING COMMON INTERESTS)

> **IN ORDER FOR YOUR VOTE TO BE COUNTED TOWARD CONFIRMATION OF THE PLAN, THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS <u>ACTUALLY RECEIVED</u> BY THE VOTING AGENT ON OR BEFORE DECEMBER 13, 2023 (THE "<u>VOTING DEADLINE</u>"), UNLESS EXTENDED BY THE DEBTORS WITH THE CONSENT OF THE REQUISITE CONSENTING CREDITORS.**

This master ballot (the "**Master Ballot**") is being submitted to brokers, dealers, commercial banks, trust companies, or other agents or nominees ("**Nominees**") of beneficial holders of certain Existing Common Interests (a "**Beneficial Holder**") in Core Scientific, Inc. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**") are soliciting votes with respect to the *Third Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors*, filed on November 16, 2023 (Docket

---

[1]   All capitalized terms used but not defined herein or in the enclosed voting instructions have the meanings ascribed to them in the Plan, attached as <u>Exhibit A</u> to the Disclosure Statement.

[2]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisitions, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisition I, LLC (9717); and American Property Acquisitions VII, LLC (3198).  The Debtors' corporate headquarters is 210 Barton Springs Road, Suite 300, Austin, Texas 78704.  The Debtors' service address is 2407 S. Congress Ave, Suite E-101, Austin, Texas 78704.

No. 1438) (as may be modified, amended, or supplemented, the "**Plan**"). The Plan is attached as **<u>Exhibit A</u>** to the *Disclosure Statement for Third Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors*, filed on November 16, 2023 (Docket No. 1439) (as may be modified, amended, or supplemented, the "**Disclosure Statement**").

Specifically, this Master Ballot is being submitted to Nominees of Beneficial Holders of Existing Common Interests as of November 9, 2023 (the "**Voting Record Date**"). Nominees should use this Master Ballot to tabulate votes on behalf of the Beneficial Holders to accept or reject the Plan.

The Disclosure Statement provides information to assist Beneficial Holders in deciding whether to accept or reject the Plan. If you do not have the Disclosure Statement, you may obtain a copy from Stretto, Inc. (the "**Voting Agent**" or "**Stretto**") at no charge by accessing the Debtors' restructuring website at https://cases.stretto.com/CoreScientific/, by email at CoreScientificInquiries@stretto.com, or by telephone at 866.592.2921 (toll-free) or +1 646.539.3626 (if calling from outside the U.S.). Upon receipt of these materials, you should <u>immediately</u> forward to the Beneficial Holders the Disclosure Statement and the form of ballot for such holders (the "**Beneficial Holder Ballot**") with a return envelope addressed to you, or as provided in the attached instructions. You may also transmit the Beneficial Holder Ballot and Disclosure Statement and collect votes from Beneficial Holders in accordance with your customary procedures to transmit materials to and solicit votes from Beneficial Holders.

If you have any questions on how to properly complete this Master Ballot, please contact the Voting Agent at 866.592.2921 (toll-free) or +1 646.539.3626 (if calling from outside the U.S.). Please be advised that the Voting Agent cannot provide legal advice.

---

**IMPORTANT NOTICE REGARDING TREATMENT FOR EXISTING COMMON INTERESTS IN CLASS 12**

As described in more detail in the Disclosure Statement, if the Plan is confirmed and the Effective Date occurs, except to the extent that a Holder of an Existing Common Interest agrees to a less favorable treatment of such Interest, each such Holder shall receive, in full and final satisfaction, settlement, release, and discharge of such Interest, on the Effective Date, or as soon as reasonably practicable thereafter, (i) such Holder's Pro Rata Equity Share of the Residual Equity Pool, (ii) such Holder's Pro Rata Equity Share of the New Warrants, and (iii) the right to participate in the Rights Offering in accordance with the Rights Offering Procedures; *provided*, that with respect to any Existing Common Interests that are Unvested Restricted Stock, any New Common Interests distributed to Holders on account of such Unvested Restricted Stock will be subject to the same restrictions/vesting conditions applicable to such Unvested Restricted Stock as of the Effective Date.

**PLEASE READ THE DISCLOSURE STATEMENT AND PLAN FOR MORE DETAILS.**

---

The Plan can be confirmed by the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") and thereby made binding on you if it is accepted by the Holders of (i) at least two-thirds in amount of the Allowed Claims or Interests voted in each

Debtors' Exhibit No. 21
Page 89 of 153

Impaired Class, and (ii) if the Impaired Class is a Class of Claims, more than one-half in number of the Allowed Claims voted in each Impaired Class, and if the Plan otherwise satisfies the applicable requirements of section 1129(a) under the Bankruptcy Code.  If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (y) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan and (z) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.  If the Plan is confirmed by the Bankruptcy Court, it will be binding on Holders of Existing Common Interests whether or not such Holders vote, or vote to reject the Plan.  To have a Holder's vote counted, you must complete, sign, and return this Master Ballot to the Voting Agent by the Voting Deadline, which is December 13, 2023 at 5:00 p.m. (Prevailing Central Time).

This Master Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance or disallowance of, or distribution on account of, Class 12 Existing Common Interests.  You must provide all of the information requested by this Master Ballot. Failure to do so may result in the disqualification of your vote.

**NOTICE REGARDING CERTAIN RELEASE,**
**EXCULPATION, AND INJUNCTION PROVISIONS IN PLAN**

**If you (i) vote to accept the Plan, (ii) are solicited to vote to accept or reject the Plan, but do not vote to either accept or reject the Plan, and do not opt out of granting the releases set forth in the Plan, (iii) vote, or are deemed, to reject the Plan or are presumed to accept the Plan but do not opt out of granting the releases set forth in the Plan, or (iv) were given notice of the opportunity to opt out of granting the releases contained in the Plan but do not opt out, you shall be deemed to have consented to the releases contained in Section 10.6(b) of the Plan.  The releases as presented in the Plan are provided below:**

**SECTION 10.5**      **INJUNCTION.**

**Except as otherwise expressly provided in the Plan or for distributions required to be paid or delivered pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold Claims or Interests that have been released pursuant to Section 0 or Section 0, shall be discharged pursuant to Section** Error! Reference source not found. **of the Plan, or are subject to exculpation pursuant to Section** Error! Reference source not found.**, and all Subcontractors and all other parties in interest are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Released Parties, and/or the Exculpated Parties (to the extent of the exculpation provided pursuant to Section** Error! Reference source not found. **with respect to the Exculpated Parties): (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (iii) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (iv) asserting any right of**

3

setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless (x) such Entity has timely asserted such setoff right either in a Filed Proof of Claim, or in another document Filed with the Bankruptcy Court explicitly preserving such setoff or that otherwise indicates that such entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise or (y) such right to setoff arises under a postpetition agreement with the Debtors or an Executory Contract that has been assumed by the Debtors as of the Effective Date; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released, settled, and/or treated, entitled to a distribution, or cancelled pursuant to the Plan or otherwise Disallowed; *provided* that such persons who have held, hold, or may hold Claims against, or Interests in, a Debtor, a Reorganized Debtor, or an Estate shall not be precluded from exercising their rights and remedies, or obtaining the benefits, solely pursuant to and consistent with the terms of the Plan.

Subject in all respects to Section Error! Reference source not found., **no entity or person may commence or pursue a Claim or Cause of Action of any kind against any Released Party or Exculpated Party that arose or arises from, in whole or in part, the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors (which includes, for the avoidance of doubt, all claims and Causes of Action asserted or assertable in the Securities Class Action), the DIP Facility, the Convertible Notes Agreements, the Miner Equipment Lender Agreements, the Mortgage Agreements, the General Contracts, any and all agreements relating to M&M Liens, and any and all related agreements, instruments, and/or other documents, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Plan Settlements, the New Secured Convertible Notes Documents, the New Secured Notes Documents, the Contingent Payment Obligations Documents, the New Miner Equipment Lender Debt Documents, the Exit Facility Documents, the New Warrants Agreement, the Rights Offering, the Backstop Commitment Letter, the Initial DIP Loan Documents, the DIP Facility, the Terminated RSA, the RSA, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan (including, but not limited to, the New Common Interests), or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a claim of willful misconduct, fraud or gross negligence against a Released Party or Exculpated Party and (ii) specifically authorizing such Entity or Person to bring such Claim or Cause of Action against any such Released Party or**

4

**Exculpated Party. The Bankruptcy Court shall have sole and exclusive jurisdiction to determine whether a Claim or Cause of Action is colorable and, only to the extent legally permissible and as provided for in Section** Error! Reference source not found.**, shall have jurisdiction to adjudicate the underlying colorable Claim or Cause of Action.**

**SECTION 10.6(a)      RELEASES BY THE DEBTORS.**

        **Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the obligations of the Debtors under the Plan and the contributions of the Released Parties to facilitate and implement the Plan, except as otherwise provided in the Plan or in the Confirmation Order, on and after the Effective Date, the Released Parties are deemed conclusively, absolutely, unconditionally and irrevocably, released and discharged by the Debtors, the Reorganized Debtors, and the Estates from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Reorganized Debtors, the Estates, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors (which includes, for the avoidance of doubt, all claims and Causes of Action asserted or assertable in the Securities Class Action), the DIP Facility, the Convertible Notes Agreements, the Miner Equipment Lender Agreements, the Mortgage Agreements, the General Contracts, any and all agreements relating to M&M Liens, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Plan Settlements, the New Secured Convertible Notes Documents, the New Secured Notes Documents, the Contingent Payment Obligations Documents, the New Miner Equipment Lender Debt Documents, the Exit Facility Documents, the New Warrants Agreement, the Rights Offering, the Backstop Commitment Letter, the Initial DIP Loan Documents, the DIP Facility, the Terminated RSA, the RSA, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan (including, but not limited to, the New Common Interests), or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth in Section 0 of the Plan (i) shall only be applicable to the maximum extent permitted by law; (ii) shall not be construed as (a) releasing any Released Party from Claims or Causes of Action arising from an act or**

Debtors' Exhibit No. 21
Page 92 of 153

omission that is judicially determined by a Final Order to have constituted actual fraud (*provided* that actual fraud shall not exempt from the scope of these Debtor releases any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, (b) releasing any Released Party from Claims or Causes of Action held by the Debtors arising from an act or omission that is determined by a Final Order or by a federal government agency to have constituted a violation of any federal securities laws or (c) releasing any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

**SECTION 10.6(b)      RELEASES BY HOLDERS OF CLAIMS AND INTERESTS.**

Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, except as otherwise provided in the Plan or in the Confirmation Order, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, each Releasing Party, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released, and discharged the Debtors, the Reorganized Debtors, and the Released Parties from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims or Causes of Action asserted or that may be asserted on behalf of the Debtors or their Estates, that such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, including any Claims or Causes of Action based on or relating to, or in any manner arising from, in whole or in part, the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors (which includes, for the avoidance of doubt, all claims and Causes of Action asserted or assertable in the Securities Class Action), the DIP Facility, the Convertible Notes Agreements, the Miner Equipment Lender Agreements, the Mortgage Agreements, the General Contracts, any and all agreements relating to M&M Liens, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Plan Settlements, the New Secured Convertible Notes Documents, the New Secured Notes Documents, the Contingent Payment Obligations Documents, the New Miner Equipment Lender Debt Documents, the Exit Facility Documents, the New Warrants Agreement, the Rights Offering, the Backstop Commitment Letter, the Initial DIP Loan Documents, the DIP

Debtors' Exhibit No. 21
Page 93 of 153

Facility, the Terminated RSA, the RSA, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan (including, but not limited to, the New Common Interests), or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth in Section 0 of the Plan (i) shall only be applicable to the maximum extent permitted by law; and (ii) shall not be construed as (a) releasing any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud (*provided* that actual fraud shall not exempt from the scope of these third-party releases any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, or (b) releasing any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

SECTION 10.7      **EXCULPATION**.

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, in whole or in part, from the Petition Date through the Effective Date, of the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors, the DIP Facility, the Convertible Notes Agreements, the Miner Equipment Lender Agreements, the Mortgage Agreements, the General Contracts, any and all agreements relating to M&M Liens, and related agreements, instruments, or other documents, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Plan Settlements, the New Secured Convertible Notes Documents, the New Secured Notes Documents, the Contingent Payment Obligations Documents, the New Miner Equipment Lender Debt Documents, the Exit Facility Documents, the New Warrants Agreement, the Rights Offering, the Backstop Commitment Letter, the Initial DIP Loan Documents, the DIP Facility, the Terminated RSA, the RSA, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan (including, but not limited to, the New Common Interests), or the distribution of property under the Plan, or any other related agreement, except for Claims or Causes of Action arising from an act or omission that is judicially determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but

Debtors' Exhibit No. 21
Page 94 of 153

in all respects, such Exculpated Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities. The Exculpated Parties have, and upon completion of the Plan, shall be deemed to have, participated in good faith and in compliance with all applicable laws with regard to the solicitation and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan. Notwithstanding anything to the contrary in the foregoing, the exculpations set forth in Section Error! Reference source not found. of the Plan (i) shall only be applicable to the maximum extent permitted by law; and (ii) shall not be construed as (a) exculpating any Exculpated Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud (*provided* that actual fraud shall not exempt from the scope of these exculpations any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, or (b) exculpating any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

## SECTION 5.17    CANCELLATION OF LIENS.

(a)    Except as otherwise specifically provided in the Plan, including sections **Error! Reference source not found.** and **Error! Reference source not found.** of the Plan, all notes, instruments, certificates evidencing debt of the Debtors and Existing Common Interests will be cancelled and obligations of the Debtors thereunder will be discharged and of no further force or effect, except for the purpose of allowing the applicable agents and trustees to receive distributions from the Debtors under the Plan and to make any further distributions to the applicable Holders on account of their Allowed Claims and Interests.

(b)    After the Effective Date and following (i) the distributions to Holders on account of Allowed Convertible Notes Secured Claims and Allowed Miner Equipment Lender Secured Claims and/or (ii) with regard to Allowed M&M Lien Secured Claims, satisfaction of the applicable M&M Lien Takeback Debt, the Debtors or the Reorganized Debtors, at their expense, may, in their sole discretion, take any action necessary to terminate, cancel, extinguish, and/or evidence the release of any and all mortgages, deeds of trust, Liens, pledges, and other security interests with respect to the Convertible Notes Secured Claims, Miner Equipment Lender Secured Claims, and M&M Lien Secured Claims, including, without limitation, the preparation and filing of any and all documents necessary to terminate, satisfy, or release any mortgages, deeds of trust, Liens, pledges, and other security interests held by the Holders of the M&M Lien Secured Claims, Miner Equipment Lender Secured Claims, the Notes Agent, and/or Convertible Noteholders, including, without limitation, UCC-3 termination statements.

Debtors' Exhibit No. 21
Page 95 of 153

**Relevant Definitions Related to Release and Exculpation Provisions**:

*"Exculpated Parties"* means each of the following in their capacity as such and, in each case, to the maximum extent permitted by law: (i) the Debtors; and (ii) Equity Committee and its members, each solely in their capacity as such.

*"Related Parties"* means with respect to a Person, that Person's current and former Affiliates, and such Person's and its current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, fiduciaries, trustees, advisory board members, financial advisors, partners, limited partners, general partners, attorneys, accountants, managed accounts or funds, management companies, fund advisors, investment bankers, consultants, representatives, and other professionals, and such Person's respective heirs, executors, estates, and nominees, each in their capacity as such, and any and all other Persons or Entities that may purport to assert any Cause of Action derivatively, by or through the foregoing entities.

*"Released Parties"* means, collectively: (i) the Debtors; (ii) the Reorganized Debtors; (iii) the Equity Committee and its members that are party to the RSA, solely in their capacities as such; (iv) the Backstop Parties; (v) the Settling Miner Equipment Lenders; (vi) Brown Corporation; (vii) Holliwood LLC; (viii) the Ad Hoc Noteholder Group; (ix) the Consenting Creditors; (x) the Exit Lenders; (xi) the Notes Agent, solely in its capacity as such; and (xii) with respect to each of the foregoing Persons in clauses (i) through (xi), all Related Parties. Notwithstanding the foregoing, any Person that opts out of the releases set forth in section 10.6(b) of the Plan shall not be deemed a Released Party thereunder.

*"Releasing Parties"* means collectively, and in each case solely in their capacity as such, (i) the Debtors; (ii) the Reorganized Debtors; (iii) with respect to each of the foregoing Persons in clauses (i) through (ii), all Related Parties; (iv) the Released Parties; (v) the Holders of all Claims or Interests that vote to accept the Plan; (vi) the Holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but that do not vote either to accept or to reject the Plan and do not opt out of granting the releases set forth in the Plan; (vii) the Holders of all Claims or Interests that vote, or are deemed, to reject the Plan or that are presumed to accept the Plan but do not opt out of granting the releases set forth in the Plan; and (viii) the Holders of all Claims and Interests and all Other Beneficial Owners that were given notice of the opportunity to opt out of granting the releases set forth in the Plan but did not opt out.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

Debtors' Exhibit No. 21
Page 96 of 153

**PLEASE READ THE ATTACHED VOTING INFORMATION
AND INSTRUCTIONS BEFORE COMPLETING THIS MASTER BALLOT**

> **PLEASE COMPLETE ITEMS 1, 2, 3, AND 4.  IF THIS MASTER BALLOT HAS NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, VOTES OF THE BENEFICIAL HOLDERS MAY NOT BE VALID OR COUNTED AS HAVING BEEN CAST.**

**Item 1.  Certification of Authority to Vote.**  The undersigned certifies that, as of the Voting Record Date, the undersigned (please check the applicable box):

☐   is a Nominee for the Beneficial Holders in the amount of Class 12 Existing Common Interests listed in Item 2 below and is the registered Holder of such Class 12 Existing Common Interest;

☐   is acting under a power of attorney and/or agency (a copy of which must be provided upon request) granted by a Nominee that is the registered Holder of Class 12 Existing Common Interests in the amount listed in Item 2 below; or

☐   has been granted a proxy (an original of which is annexed hereto) from a Nominee or a Beneficial Holder that is the registered Holder of the principal amount of Class 12 Existing Common Interests listed in Item 2 below, and accordingly has full power and authority to vote to accept or reject the Plan on behalf of the Beneficial Holders of the Class 12 Existing Common Interests listed in Item 2 below.

**Item 2.  Vote on the Plan.**  The undersigned transmits the following votes of Beneficial Holders in respect of their Class 12 Existing Common Interests and certifies that the following Beneficial Holders, as identified by their respective customer account numbers set forth below, are Beneficial Holders as of the Voting Record Date and have delivered to the undersigned, as Nominee, Beneficial Holder Ballots casting such votes.[3]

---

[3]  Indicate in the appropriate column the amount of the Class 12 Existing Common Interests voted for each account, or attach such information to this Master Ballot in the form of the following table.  Please note that each Beneficial Holder must vote all of such Beneficial Holder's Existing Common Interests to accept or to reject the Plan and may not split such vote.  Any ballot executed by a Beneficial Holder that does not indicate an acceptance or rejection of the Plan, or that indicates both an acceptance and a rejection of the Plan, and has not been corrected by the Voting Deadline, shall not be counted.

10

| Your Customer Account Number for Each Beneficial Holder of Class 12 Existing Common Interests that Voted | Number of Existing Common Interests Held by Your Customer | Item 2. Vote on Plan | | Item 3. Opt-Out Release Election |
|---|---|---|---|---|
| | | ACCEPT | REJECT | Place a check below if the Beneficial Holder checked the box in Item 3 |
| 1. | | ☐ | ☐ | ☐ |
| 2. | | ☐ | ☐ | ☐ |
| 3. | | ☐ | ☐ | ☐ |
| 4. | | ☐ | ☐ | ☐ |
| 5. | | ☐ | ☐ | ☐ |
| 6. | | ☐ | ☐ | ☐ |
| 7. | | ☐ | ☐ | ☐ |
| 8. | | ☐ | ☐ | ☐ |
| 9. | | ☐ | ☐ | ☐ |
| 10. | | ☐ | ☐ | ☐ |

**Item 3.  Certification.**  By signing this Master Ballot, the undersigned certifies that:

(a)        (i) the undersigned has received a copy of the Disclosure Statement, Master Ballot, and Beneficial Holder Ballot, and has delivered the Disclosure Statement and Beneficial Holder Ballot to Beneficial Holders holding Class 12 Existing Common Interests through the undersigned with a return envelope; (ii) the undersigned has received a completed and signed Beneficial Holder Ballot from each such Beneficial Holder as provided in this Master Ballot; (iii) the undersigned is the registered Holder of the securities being voted or agent thereof; and (iv) the undersigned has been authorized by each such Beneficial Holder to vote on the Plan and to make applicable elections;

(b)        the undersigned has properly disclosed: (i) the number of Beneficial Holders voting Class 12 Existing Common Interests through the undersigned; (ii) the respective amounts of Class 12 Existing Common Interests owned by each such Beneficial Holder; (iii) each such Beneficial Holder's respective vote concerning the Plan; and (iv) the customer account or other identification number for each such Beneficial Holder;

11

(c)     if the undersigned is a Beneficial Holder and uses this Master Ballot to vote the undersigned's Class 12 Existing Common Interests, the undersigned confirms and attests to each of the certifications in Item 4 of the Beneficial Holder Ballot;

(d)     each such Beneficial Holder has certified to the undersigned that such Beneficial Holder is a Beneficial Holder and is otherwise eligible to vote on the Plan; and

(e)     the undersigned will maintain Beneficial Holder Ballots and evidence of separate transactions returned by Beneficial Holders (whether properly completed or defective) for at least one year after the Voting Deadline, and disclose all such information to the Bankruptcy Court or the Debtor, as the case may be, if so ordered.

**Item 4.  Nominee Information and Signature.**

Name of Nominee:

_____

(Print or Type)

Participant Number:_____

Name of proxy holder or agent for Nominee (if applicable):

_____

(Print or Type)

_____

Signature:

Name of Signatory:_____

Title:_____

Street Address:_____

City, State, Zip Code:_____

Telephone Number:_____

Date Completed:_____

12

Debtors' Exhibit No. 21
Page 99 of 153

## MASTER BALLOT INSTRUCTIONS

1.   To have the votes of your Beneficial Holders count, you should already have delivered to each such Holder a copy of the Disclosure Statement, along with a Beneficial Holder Ballot (which may be a pre-validated ballot, as described in ¶ 2 below), with a return envelope addressed to you (or the Voting Agent in the case of a pre-validated ballot), so such Holder may (i) return their Beneficial Holder Ballot to you in sufficient time for you to complete and return the Master Ballot to the Voting Agent, so that the Voting Agent *actually receives* the Master Ballot before the Voting Deadline or (ii) in the case of a pre-validated ballot, return their Beneficial Holder Ballot to the Voting Agent before the Voting Deadline. Notwithstanding the foregoing, you may transmit the Disclosure Statement and Beneficial Holder Ballot to Beneficial Holders in accordance with your customary procedures to transmit materials to and collect votes from Beneficial Holders.

2.   You may pre-validate the Beneficial Holder Ballots by (i) signing the Beneficial Holder Ballot and indicating on the Beneficial Holder Ballot the (a) name of the Nominee and DTC Participant Number and (b) the number of Existing Common Interests held by the Nominee for the Beneficial Holder, and (ii) forwarding such Beneficial Holder Ballot, together with the Solicitation Package, including a preaddressed, postage-paid return envelope addressed to, and provided by, the Voting Agent, to the Beneficial Holder. The Beneficial Holder will be required to complete the information requested in Item 2, Item 3, and Item 4 of the Beneficial Holder Ballot and return the pre-validated Beneficial Holder Ballot directly to the Voting Agent so that it is received before the Voting Deadline.

3.   With regard to any Beneficial Holder Ballots returned to you, to have the vote of your Beneficial Holders count, you must: (a) retain such Beneficial Holder Ballots in your files and transfer the requested information from each such Beneficial Holder Ballot onto the Master Ballot; (b) execute the Master Ballot; and (c) deliver the Master Ballot to the Voting Agent in accordance with these instructions.

4.   Please keep any records of Beneficial Holder Ballots, including records of the Beneficial Holders to whom pre-validated Beneficial Holder Ballots were delivered, for at least one year after the Voting Deadline (or such other date as is set by order of the Bankruptcy Court). You may be ordered to produce the Beneficial Holder Ballots to the Debtor or the Bankruptcy Court.

5.   For the avoidance of doubt, if it is your customary practice to collect votes from your Beneficial Holder clients via voter information form, e-mail, telephone, or other means, you may employ those customary practices to collect votes from the Beneficial Holders in lieu of a Beneficial Holder Ballot.

6.   If you are both the Nominee and Beneficial Holder, and you wish to vote such Class 12 Existing Common Interest for which you are a Beneficial Holder, you may return either a Beneficial Holder Ballot or the Master Ballot for such Claims.

7.   In the event that (i) the Debtors revoke or withdraw the Plan or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Master Ballot shall

Debtors' Exhibit No. 21
Page 100 of 153

automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

8.   The Master Ballot may not be used for any purpose other than to vote to accept or reject the Plan.

9.   The Master Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or Interest or an assertion or admission of a Claim or Interest.

10.   The following Ballots shall not be counted in determining the acceptance or rejection of the Plan:  (a) any Ballot that is illegible or contains insufficient information to permit the identification of the Beneficial Holder, (b) any Ballot cast by a Person that does not hold a Claim in a Class entitled to vote on the Plan, (c) any unsigned Ballot, (d) any Ballot that does not contain an original signature (except with respect to Master Ballots emailed to the Voting Agent) and (e) any Ballot not marked to accept or reject the Plan, or marked both to accept and reject the Plan.

11.   If the Master Ballot is received after the Voting Deadline, it will not be counted, unless otherwise determined by the Debtors.  The method of delivery of the Master Ballot to the Voting Agent is at your election and risk.

12.   If a Beneficial Holder submits Ballots for multiple Class 12 Existing Common Interests, whether held in other accounts or other record names, and such Ballots indicate *different or inconsistent* votes to accept or reject the Plan, then all such Ballots will not be counted.

13.   If a Beneficial Holder submits more than one Ballot voting the same Interests prior to the Voting Deadline, the latest received, properly executed Ballot submitted to the Voting Agent will supersede any prior Ballot.

14.   To the extent that conflicting votes or "overvotes" are submitted by a Nominee, the Voting Agent, in good faith, will attempt to reconcile discrepancies with the Nominee.  To the extent that any overvotes are not reconcilable prior to the preparation of the vote certification, the Voting Agent will apply the votes to accept and reject the Plan in the same proportion as the votes to accept and reject the Plan submitted on the Master Ballots or pre-validated Beneficial Holder Ballots that contained the overvote, but only to the extent of the Nominee's position in the applicable security.

15.   The Master Ballot should not be sent to the Debtors, the Bankruptcy Court, or the Debtors' financial or legal advisors.

16.   There may be changes made to the Plan that do not have material adverse effects on an accepting Class.  If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

17.   NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT, ANY

14

SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTORS, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

18.     PLEASE RETURN YOUR BALLOT PROMPTLY.

19.     IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT BY CALLING 866.592.2921 (TOLL-FREE) OR +1 646.539.3626 (IF CALLING FROM OUTSIDE THE U.S.) OR BY SENDING AN ELECTRONIC MAIL MESSAGE TO CORESCIENTIFICVOTE@STRETTO.COM WITH "CORE SCIENTIFIC MASTER BALLOT" IN THE SUBJECT LINE.  PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.

20.     THE VOTING AGENT IS NOT AUTHORIZED TO AND WILL NOT PROVIDE LEGAL ADVICE.

**YOUR COMPLETED MASTER BALLOT MUST BE <u>ACTUALLY RECEIVED</u> BY THE VOTING AGENT BY THE VOTING DEADLINE AT THE FOLLOWING ADDRESS.  IF YOU WOULD LIKE TO COORDINATE HAND DELIVERY OF YOUR MASTER BALLOT, PLEASE SEND AN E-MAIL TO CORESCIENTIFICVOTE@STRETTO.COM (WITH "CORE SCIENTIFIC MASTER BALLOT" IN THE SUBJECT LINE) AT LEAST 24 HOURS BEFORE YOUR ARRIVAL AT THE ADDRESS BELOW AND PROVIDE THE ANTICIPATED DATE AND TIME OF YOUR DELIVERY.**

| Stretto Address for Receipt of Master Ballots |
|:---:|
| **If by E-Mail (Master Ballots ONLY)** |
| **CoreScientificVote@Stretto.com** |
| **If by First Class Mail, Hand Delivery, or Overnight Mail** |
| **CORE SCIENTIFIC, INC.**<br>**BALLOT PROCESSING CENTER**<br>**C/O STRETTO, INC.**<br>**410 EXCHANGE, SUITE 100**<br>**IRVINE, CA 92602** |

Debtors' Exhibit No. 21
Page 102 of 153

# **<u>Exhibit L</u>**



To Custodians, Banks, Brokers, and Other Nominees (each, a "Nominee"):

*Re: Case Number: 22-90341 (DRJ) – Core Scientific, Inc., et al. CHAPTER 11 BANKRUPTCY*

**CUSIP No. 21873J 108**

Core Scientific, Inc., et al., (the "Debtors"), filed with the United States Bankruptcy Court for the Southern District of Texas (the "Court"), the enclosed materials listed in Exhibit A (the "Materials"). Stretto, the Claims and Noticing agent for Debtors, was instructed by the Debtors' counsel that the Materials must be served upon nominees that hold stock in "street name" for the beneficial holders of the below-referenced CUSIP Number. You are receiving the Materials because your institution was identified by Depository Trust Company ("DTC") on the Security Position Report as of November 9, 2023 (the "Record Date").

| CUSIP/ISIN No. | Record Date |
|---|---|
| 21873J 108 / US21873J1088 | November 9, 2023 |

Stretto has provided the appropriate number of sets of Materials as requested by Broadridge and Mediant, respectively. The following referenced job numbers pertain to the mailings established at Broadridge and Mediant. Please mail the provided materials via USPS First-Class Mail and Email to the Record Date beneficial holders in your books and records as applicable.

| Broadridge Job No.(s) | Mediant Job No.(s) |
|---|---|
| Y77165 | 2273444 |

If you are not the correct individual or department to research and disburse the requested information, please forward to the proper individual at your firm.

[SPACE LEFT INTENTIONALLY BLANK]



## **Exhibit A**

- USB Flash Drive Consisting of:

    - Disclosure Statement with all exhibits thereto

    - Third Amended Joint Chapter 11 Bankruptcy Plan

    - Disclosure Statement Order

    - Solicitation and Voting Procedures

- Combined Hearing Notice

- Beneficial Holder Ballot

- Master Ballot

- Equity Committee Letter

- Postage-prepaid return envelope

# **Exhibit M**

**CORE SCIENTIFIC, INC.**

**RIGHTS OFFERING INSTRUCTIONS FOR SUBSCRIPTION RIGHTS HOLDERS**

**Terms used and not defined herein or in the Subscription Form shall have the meaning assigned to them in the Rights Offering Procedures, Plan or the Disclosure Statement.**

**To elect to participate in the Rights Offering, you must follow the instructions set out below:**

1.  <u>**Read, complete, and sign**</u> Subscription Forms for the Rights Offering to the extent you wish to participate therein. Such execution shall, among other things, indicate your acceptance and approval of the terms and conditions set forth herein and therein.

    You must also read the Disclosure Statement and the Plan, each as amended or supplemented, available at the Debtors' restructuring website at https://cases.stretto.com/corescientific/ for important additional information relating to the Debtors, the Rights Offering and the risk factors to be considered.

2.  <u>**Read, complete, and sign**</u> an IRS Form W-9 if you are a U.S. person. If you are a non- U.S. person, read, complete, and sign an appropriate IRS Form W-8. These forms may be obtained from the IRS at its website: www.irs.gov.

3.  <u>**If you hold your Existing Common Interests through DTC, coordinate with your Subscription Nominee to (i) Tender/Block**</u> through DTC ATOP procedures the amount of the Existing Common Interests that you wish to participate in the Rights Offering as set forth in these Rights Offering Procedures prior to the ATOP Tender Deadline and <u>**(ii) return**</u> your signed Subscription Form(s), IRS Form W-9 or appropriate IRS Form W-8, as applicable, to the Subscription Agent prior to the Rights Offering Subscription Deadline.

    To access the E-Subscription Form Portal, visit https://cases.stretto.com/corescientific/ click on the "Submit Rights Offering Form" section of the website and follow the instructions to submit your form.

    Submitting your Subscription Form(s) via the E-Subscription Portal is the only valid method of submission. No other methods will be accepted.

4.  <u>**If you hold your Existing Common Interests on the books and records of the Debtors return**</u> your signed Subscription Form(s), IRS Form W-9 or appropriate IRS Form W-8, as applicable, to the Subscription Agent prior to the Rights Offering Subscription Deadline.

    To access the E-Subscription Form Portal, visit https://cases.stretto.com/corescientific/ click on the "Submit Rights Offering Form" section of the website and follow the instructions to submit your form.

    Submitting your Subscription Form(s) via the E-Subscription Portal is the only valid method of submission. No other methods will be accepted.

5.  <u>**Arrange for full payment**</u> of the Aggregate Subscription Amount by wire transfer of immediately available funds as instructed in the Subscription Form.

> **The Rights Offering Subscription Deadline is 5:00 p.m. New York City time on December 11, 2023. Subscription Rights Holders (except the Commitment Parties) should follow the delivery and payment instructions set forth herein. The Commitment Parties should follow the payment instructions in the Funding Notice delivered in accordance with the Backstop Commitment Letter**

## RIGHTS OFFERING PROCEDURES

**The New Common Interests to be issued and distributed by Core Scientific, Inc. to Holders of Existing Common Interests ("Eligible Equity Holders")[1] pursuant to the Rights Offering referred to in these Rights Offering Procedures (the "Rights Offering") are being distributed and issued without registration under the Securities Act in reliance upon the exemption from registration provided by section 1145 of the Bankruptcy Code (the "Rights Offering Shares").**

**Unless otherwise agreed and subject to the terms of the Plan, each Eligible Equity Holder shall have the right, but not the obligation, to use subscription rights to subscribe for the purchase of Rights Offering Shares (the "Subscription Rights" and each holder thereof, a "Subscription Rights Holder"). In addition, each Subscription Rights Holder is being granted the right (an "Oversubscription Right") to elect to purchase additional Rights Offering Shares in the event that less than the aggregate number of Rights Offering Shares offered in the Rights Offering is timely, duly and validly subscribed and paid for by Subscription Rights Holders (such unsubscribed Rights Offering Shares, the "Unsubscribed Shares" and such election an "Oversubscription Election"). The Unsubscribed Shares issued upon exercise any Oversubscription Rights will be issued without registration under the Securities Act in reliance upon the exemption from registration provided by section 1145 of the Bankruptcy Code.**

**All shares issued to the Commitment Parties, if any, on account of their Backstop Commitments will be issued without registration pursuant to Section 4(a)(2) or Regulation D of the Securities Act.**

**Only Subscription Rights Holders (including the Commitment Parties) that hold Existing Common Interests as of the Record Date are allowed to participate in the Rights Offering. No offer or invitation to subscribe or purchase is being made to any person who is not a Subscription Rights Holder, and no such person should or may act or rely on any offer or invitation to subscribe or purchase Rights Offering Shares or Unsubscribed Shares contained in this document.**

**None of the Subscription Rights, Oversubscription Rights or Rights Offering Shares issuable upon exercise of such rights distributed under the Plan and pursuant to these Rights Offering Procedures have been or will be registered under the Securities Act, nor any state or local law requiring registration for offer and sale of a security. Any Holder who subscribes for Rights Offering Shares or Unsubscribed Shares that is an "underwriter," as that term is defined for purposes of section 1145 of the Bankruptcy Code, will be subject to restrictions on its ability to resell those securities. Resale restrictions are discussed in more detail in Article VII of the Disclosure Statement (as defined below), entitled "Transfer Restrictions and Consequences Under Federal Securities Law."**

**Any Subscription Rights Holder that holds Existing Common Interests with its Subscription Nominee (as defined below) in DTC (as defined below), that desires to exercise its Subscription Rights or Oversubscription Rights, as applicable, must (i) direct its Subscription Nominee to tender its Existing Common Interests into the appropriate option on DTC's ATOP platform prior to the ATOP Tender Deadline (as defined below) and (ii) complete and return (or coordinate with its Subscription Nominee to return) to the Subscription Agent (as defined below) a Subscription Form (with**

---

[1] Eligible Equity Holders are Holders of Existing Common Interests as of the Rights Offering Record Date (*i.e.*, November 16, 2023).

accompanying IRS Form W-9 or appropriate IRS Form W-8, as applicable) and pay (or arrange for its Subscription Nominee to pay) the Aggregate Purchase Price (as defined below) and Oversubscription Funding Amount (as defined below) (together, the "**Aggregate Subscription Amount**"), if applicable, so that such payment is actually received by the Subscription Agent on or before the Rights Offering Subscription Deadline (as defined below).

Any Subscription Rights Holder that holds Existing Common Interests directly on the books and records of the Debtors, that desires to exercise its Subscription Rights or Oversubscription Rights, as applicable, must complete and return to the Subscription Agent the Subscription Form (with accompanying IRS Form W-9 or appropriate IRS Form W-8, as applicable) and pay the Aggregate Subscription Amount to the Subscription Agent, prior to the Rights Offering Subscription Deadline.

Any Subscription Rights Holder that holds Existing Common Interests with both its Subscription Nominee in DTC and directly on the books and records of the Debtors will receive multiple Subscription Forms, each of which must be completed and returned by such Subscription Rights Holder or by such Subscription Rights Holder's Subscription Nominee, as applicable, to the Subscription Agent (with accompanying IRS Form W-9 or appropriate IRS Form W-8, as applicable) prior to the Rights Offering Subscription Deadline. With respect to the portion of such Subscription Rights Holder's Existing Common Interests held with its Subscription Nominee in DTC, it must direct its Subscription Nominee to tender such Existing Common Interests into the appropriate option on DTC's ATOP platform prior to the ATOP Tender Deadline.

No Subscription Rights or Oversubscription Rights may be sold, transferred, assigned, pledged, hypothecated, participated, donated or otherwise encumbered or disposed of, directly or indirectly (including through derivatives, options, swaps, forward sales or other transactions in which any person receives the right to own or acquire any current or future interest in the Subscription Rights, Oversubscription Rights, Rights Offering Shares or claims funded pursuant to the Backstop Commitment Letter and any related claims). In addition, after Subscription Rights or Oversubscription Rights are exercised with respect to any Existing Common Interests, such Existing Common Interests may not be sold, transferred, assigned, pledged, hypothecated, participated, donated or otherwise encumbered or disposed of, directly or indirectly, and any purported trading, assignment or transfer of such Existing Common Interests shall be deemed null and void; provided that with respect to the Commitment Parties, the transfer restrictions set forth in the Backstop Commitment Letter shall govern.

The Rights Offering is being conducted in good faith and in compliance with the Bankruptcy Code. In accordance with Section 1125(e) of the Bankruptcy Code, a debtor or any of its agents that participate, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, in the offer, issuance, sale, or purchase of a security offered or sold under the plan of the debtor, of an affiliate participating in a joint plan with the debtor, or of a newly organized successor to the debtor under the plan, is not liable, on account of such participation, for the violation of any applicable law, rule, or regulation governing the offer, issuance, sale or purchase of securities.

All required documentation to participate in the Rights Offering must be completed and timely submitted along with arrangement of payment of the Aggregate Subscription Amount for the exercise of Subscription Rights and, as applicable, Oversubscription Rights, which must be actually and timely received by the Subscription Agent no later than the Rights Offering Subscription Deadline, in accordance with all terms and conditions set forth in these Rights Offering Procedures and the Subscription Form.

**Notwithstanding the foregoing, the Commitment Parties must deliver their Backstop Commitment Deposit to the Escrow Account within three business days following entry of the Backstop Order, in accordance with the terms of the Backstop Commitment Letter. The Commitment Parties must deliver their Aggregate Subscription Amount by the date that is specified in the Fundi Notice pursuant to the Backstop Commitment Letter (the "Backstop Funding Deadline").**

**All questions concerning the timeliness, validity, form, and eligibility of any exercise or purported exercise of Subscription Rights or Oversubscription Rights shall be determined in good faith by the Debtors. Any Rights Offering submissions that do not properly comply with the requirements set forth in the Rights Offering Procedures and the applicable Subscription Form(s) will be deemed not to have been received or accepted until all such defects and irregularities have been cured or waived in writing by the Debtors. Unless waived in writing, any defects or irregularities must be cured by the Rights Offering Subscription Deadline in order to participate in the Rights Offering. The Debtors may provide notice to a Subscription Rights Holder who elects to exercise its Subscription Rights or Oversubscription Rights of defects or irregularities in connection with such exercise; provided that neither the Debtors nor the Reorganized Debtors nor any of their respective employees, Affiliates, or professionals shall incur any liability for giving, or failing to give, such notification and such opportunity to cure. For the avoidance of doubt, the submission of an inaccurate, incomplete, untimely, or otherwise defective Subscription Form or the failure to remit timely and full payment of the Aggregate Purchase Price to the Subscription Agent may result in the irrevocable relinquishment and waiver of a Subscription Rights Holder's purported right, if any, to participate in the Rights Offering.**

**Capitalized terms used and not defined herein shall have the meaning assigned to them in the Plan (as defined below), the Disclosure Statement (as defined below) or the Backstop Commitment Letter, as applicable.**

***

**Subscription Rights Holders should note the following dates and times relating to the Rights Offering:**

| Date | Calendar Date | Event |
|---|---|---|
| **Rights Offering Record Date ...…** | November 16, 2023 | The date fixed by the Debtors for determination of the Holders of Existing Common Interests eligible to participate in the Rights Offering. |
| **Subscription Commencement Date…...** | November 20, 2023 | Commencement of the Rights Offering. |
| **Commitment Party Backstop Commitment Deposit Deadline** | Three business days following the entry of the Backstop Order | Deadline for Commitment Parties to fund Backstop Commitment Deposit to the Escrow Account. |
| **ATOP Tender Deadline……………...…...** | 5:00 p.m. New York City time on December 11, 2023 | Deadline for Subscription Rights Holders that hold the Existing Common Interests "in street name" through DTC (each a "**Street Name Holder**") to direct their Subscription Nominee to tender their Existing Common Interests into the appropriate option on DTC's ATOP platform. |
| **Rights Offering Subscription Deadline …………….....…..** | 5:00 p.m. New York City time on December 11, 2023 | Deadline to exercise Subscription Rights and Oversubscription Rights.<br><br>Subscription Rights Holders who hold their Existing Common Interests through their Subscription Nominee must (i) submit (or coordinate with their Subscription Nominee to submit) the Subscription Form, which must be executed, and include applicable supporting documentation to Stretto, LLC, in its capacity as Subscription Agent (the "**Subscription Agent**"); and (ii) timely execute (or arrange for their Subscription Nominee to execute) a wire transfer of the Aggregate Subscription Amount, which must be received by the Subscription Agent by the Rights Offering Subscription Deadline.<br><br>Subscription Rights Holders who hold their Existing Common Interests through the books and records of the Debtor must (i) |

|  |  | submit the Subscription Form, which must be executed, and include applicable supporting documentation to the Subscription Agent; and (ii) timely execute a wire transfer of the Aggregate Subscription Amount, which must be received by the Subscription Agent by the Rights Offering Subscription Deadline.<br><br>**After Subscription Rights are exercised with respect to any Existing Common Interests, any purported trading, assignment or transfer of such Existing Common Interests shall be deemed null and void; provided that, with respect to the Commitment Parties, the transfer restrictions set forth in the Backstop Commitment Letter shall govern.**<br><br>Any overpayment of the Aggregate Subscription Amount will be promptly refunded in accordance with these Rights Offering Procedures. Refunds will not be paid to any Subscription Rights Holder, however, if they amount to less than $5.00 for such holder.<br><br>Notwithstanding the foregoing, the Commitment Parties must deliver the Aggregate Subscription Amount by the Backstop Funding Deadline. |
|---|---|---|
| **Backstop Funding Deadline………..….** | ~December 20, 2023[2] | Deadline for Commitment Parties to deliver their Aggregate Subscription Amount pursuant to the Backstop Commitment Letter. |

---

[2] Three business days after receipt of Funding Notice.

To Subscription Rights Holders:

On November 15, 2023, the Debtors filed with the United States Bankruptcy Court for the Southern District of Texas (Houston Division) (the "**Bankruptcy Court**") the *Third Amended Joint Chapter 11 Plan of Core Scientific, Inc. and its Debtor Affiliates* (as may be altered, amended, modified or supplemented from time to time in accordance with the terms thereof, the "**Plan**"), and the *Disclosure Statement for Third Amended Joint Chapter 11 Plan Core Scientific, Inc. and its Debtor Affiliates* (as such may be altered, amended, modified or supplemented from time to time in accordance with the terms thereof, the "**Disclosure Statement**"). Pursuant to the Plan, each Holder of Existing Common Interests as of the Rights Offering Record Date (*i.e.*, November 16, 2023) will receive Subscription Rights to the extent set forth in the Plan and may subscribe for its pro rata allocation of New Common Interests being offered in the Rights Offering (the "**Rights Offering Shares**"); provided that; (i) for Subscription Rights Holders that hold Existing Common Interests "in street name" through The Depository Trust Company ("**DTC**"), it timely tenders/blocks its position in the Automated Tender Offer Program ("**ATOP**") procedures of DTC in advance of the ATOP Tender Deadline and (ii) for all Subscription Rights Holders, including those who hold Existing Common Interests through the books and records of the Debtors and those who hold Existing Common Interests "in street name" through DTC, it properly executes and delivers (or coordinates with its Subscription Nominee to deliver) its executed Subscription Form for the Rights Offering to the Subscription Agent and pays (or causes its Subscription Nominee to pay) the Aggregate Subscription Amount as set forth in the paragraph below on or before the Rights Offering Subscription Deadline or, for Commitment Parties, the Backstop Funding Deadline, as applicable.

In addition, each Subscription Rights Holder will also have an Oversubscription Right to elect to purchase Unsubscribed Shares in an amount not to exceed the total number of Rights Offering Shares offered in the Rights Offering minus the total number of Rights Offering Shares that such Subscription Rights Holder duly, validly and timely elected to purchase pursuant to its Subscription Rights (such amount being referred to herein as the Subscription Rights Holder's "**Maximum Oversubscription Amount**"); provided, however, that no Subscription Rights Holder may exercise an Oversubscription Right until it has also duly, validly and timely exercised in full its Subscription Right.

**If you are a Subscription Rights Holder and do <u>not</u> wish to exercise your Subscription Rights, <u>no action is necessary</u>.**

**The "<u>Aggregate Purchase Price</u>" for each Subscription Rights Holder exercising Subscription Rights means the product of $8.21710 per Rights Offering Share (subject to the Plan Claim Adjustment as defined and described herein) and the number of Rights Offering Shares to be issued pursuant to such Subscription Rights Holder's exercise of Subscription Rights.**

**The price per Rights Offering Share assumes that the holders of Existing Common Interests, after giving effect to the reorganization transactions described in the Plan and Disclosure Statement, as amended and supplemented, will hold 1/25th the number of issued**

and outstanding shares of common stock of the reorganized Core Scientific, Inc. upon its emergence from bankruptcy of what they hold as of November 20, 2023 (such ratio is subject to change). The current share price of the Core Scientific, Inc.'s common stock listed on OTC US (CORZQ:US) as of November 20, 2023, does not reflect the reorganization transactions described in the Plan and Disclosure Statement, and is not expected to be indicative of reorganized Core Scientific, Inc.'s post-emergence share price. The Plan and Disclosure Statement are available at the Debtors' restructuring website at https://cases.stretto.com/corescientific/.

No Subscription Rights Holder shall be entitled to participate in the Rights Offering unless the Aggregate Subscription Amount for the Rights Offering Shares it subscribes for, and, if applicable, for the Unsubscribed Shares it subscribes for, is received by the Subscription Agent (i) in the case of a Subscription Rights Holder that is not a Commitment Party, by the Rights Offering Subscription Deadline and (ii) in the case of the Commitment Parties, by the Backstop Funding Deadline. No interest is payable on any funding of the Aggregate Subscription Amount, except with respect to Commitment Parties in accordance with the terms of the Backstop Commitment Letter. If the Rights Offering is terminated for any reason, your Aggregate Subscription Amount will be returned to you promptly, and no interest will be paid on any returned Aggregate Subscription Amount; provided that, any Aggregate Subscription Amount returned to a Commitment Party will be retuned with interest in accordance with the terms of the Backstop Commitment Letter.

As part of the exercise process, following the exercise of Subscription Rights, the Existing Common Interests that are held by Street Name Holders through DTC will be frozen from trading, as described below. All Street Name Holders must cause their Subscription Nominee to process and deliver the underlying Existing Common Interests through ATOP and complete and submit all the information required in connection with such delivery. By giving the instruction to its Subscription Nominee to submit the underlying Existing Common Interests through ATOP, each Street Name Holder is (i) authorizing its Subscription Nominee to exercise all Subscription Rights associated with the amount of Existing Common Interests as to which the instruction pertains; and (ii) certifying that it understands that, once submitted, the underlying Existing Common Interests will be frozen from trading until the Effective Date, at which point such Street Name Holder will receive the relevant Rights Offering Shares and the underlying Existing Common Interests will be cancelled pursuant to the Plan.

The amount of time necessary for a Subscription Nominee to process and deliver the applicable Existing Common Interests through ATOP may vary. Street Name Holders of Existing Common Interests are urged to consult with their Subscription Nominees to ensure the timely submission. Failure to complete the steps set forth in these Rights Offering Procedures by the applicable deadline will result in such Subscription Rights Holder being deemed to have forever and irrevocably relinquished and waived its Subscription Rights and Oversubscription Rights. None of the Debtors, the Subscription Agent, or the Commitment Parties (except for only such Commitment Party's own failure), will have any liability for any such failure.

**The rights and obligations of the Commitment Parties in the Rights Offering shall be governed by the Backstop Commitment Letter, including to the extent the rights or obligations set forth therein differ from the rights and obligations set forth in these Rights Offering Procedures.**

**In order to participate in the Rights Offering, you must complete all of the steps outlined below. If all of the steps outlined below are not completed by the applicable deadline, you shall be deemed to have forever and irrevocably relinquished and waived your right to participate in the Rights Offering.**

1. **Rights Offering**

All Subscription Rights Holders have the right, but not the obligation, to participate in the Rights Offering.

- <u>All Subscription Rights Holders</u>: Only Subscription Rights Holders who timely and properly submit (or cause their Subscription Nominee to submit) all documentation and required payments to the Subscription Agent in accordance with the procedures set forth herein will be eligible to participate in the Rights Offering and receive Rights Offering Shares.

- <u>Street Name Holders</u> must also cause their Subscription Nominee to tender their Existing Common Interests into ATOP before the ATOP Tender Deadline.

Subject to the terms and conditions set forth in the Plan, these Rights Offering Procedures and the Subscription Form, each Subscription Rights Holder shall be distributed its *pro rata* (as defined in the Plan) share of Subscription Rights and is entitled to subscribe, at a purchase price of $8.21710 per whole share, for 0.01734 Rights Offering Shares per Existing Common Interest held by such Subscription Rights Holder (the "**Rights Factor**"); (subject to the Plan Claim Adjustment (as defined below)); notwithstanding the foregoing, the price per Rights Offering Share will decrease to the extent that (i) any holder of Miner Equipment Lender Claims elect the "Miner Equipment Lender Treatment Election 2" under the Plan and thereby waive its recovery on account of Miner Equipment Lender Deficiency Claim as a General Unsecured Claim and/or (ii) prior to emergence, any unsecured claims in Class 8 or Class 11 become disallowed or allowed in an amount less than the estimated maximum amount of such unsecured claim. As a result of the foregoing, there will be a corresponding increase in the number of Rights Offering Shares each participating Subscription Rights Holder will be issued in the Rights Offering in exchange for payment of their Aggregate Purchase Price (the "**Plan Claim Adjustment**"), as illustrated below. The minimum price per Rights Offering Share that could result from the Plan Claim Adjustment would be $5.91665 per Rights Offering Share.

For illustrative purposes only, in the event a Subscription Rights Holder holds 1,000,000 Existing Common Interests, assuming no Plan Claim Adjustment, such Subscription Rights Holder could subscribe for 17,340 Rights Offering Shares by paying an Aggregate Purchase Price of

$142,485, representing a price per Rights Offering Share of $8.21710 and reflecting the Rights Factor.

However, as a result of the maximum possible Plan Claim Adjustment, in the event that a Subscription Rights Holder held 1,000,000 Existing Common Interests, and such Subscription Rights Holder fully subscribed to its Subscription Rights and paid an Aggregate Purchase Price of $142,485, then such Subscription Rights Holder would receive 24,082 Rights Offering Shares, representing a price per Rights Offering Share of $5.91665.

In addition, the Subscription Form provides that each Subscription Rights Holder will also have an Oversubscription Right to elect to purchase Unsubscribed Shares at a purchase price of $8.21710 per share (subject to adjustment pursuant to the Plan Claim Adjustment), for aggregate cash consideration (such Subscription Rights Holder's "***Oversubscription Funding Amount***") not to exceed such Subscription Rights Holder's Maximum Oversubscription Amount; provided, however that no Subscription Rights Holder may exercise an Oversubscription Right unless it has also duly, validly and timely exercised in full its Subscription Rights.

In the event that the aggregate Rights Offering Shares issuable pursuant to the exercise of Oversubscription Rights exceeds the number of Unsubscribed Shares, Subscription Rights Holders who have made Oversubscription Elections will receive their *pro rata* share (measured as the proportion that the Unsubscribed Shares elected to be purchased by such Subscription Rights Holder bears to the aggregate amount of Unsubscribed Shares elected to be purchased by all Subscription Rights Holders) of the Unsubscribed Shares. The difference between the Oversubscription Funding Amount actually paid by such exercising Subscription Rights Holder and the Oversubscription Funding Amount that such Subscription Rights Holder is required to pay after giving effect to the proration, if any, shall be refunded no later than five (5) Business Days after the Rights Offering Subscription Deadline, or as soon as practicable thereafter.

Street Name Holders will be deemed to have exercised the Subscription Rights related to all Existing Common Interests tendered/blocked through the ATOP procedures of the DTC at the subscription rates set forth above. The Aggregate Purchase Price will be calculated based on the full subscription entitlement as set forth above.

**To the extent the amount subscribed for through the Rights Offering (including pursuant to the Subscription Rights and Oversubscription Rights) is less than the Backstop Commitment Amount, the Commitment Parties will purchase any unsubscribed Rights Offering Shares up to the Backstop Commitment Amount, as set forth in the Backstop Commitment Letter.**

**Any Subscription Rights Holder who subscribes for Rights Offering Shares that is an "underwriter" as that term is defined for purposes of section 1145 of the Bankruptcy Code will also be subject to restrictions on its ability to resell those securities. Resale restrictions are discussed in more detail in Article VII of the Disclosure Statement, entitled "Transfer Restrictions and Consequences Under Federal Securities Law."**

**SUBJECT TO THE TERMS AND CONDITIONS OF THE RIGHTS OFFERING PROCEDURES AND THE BACKSTOP COMMITMENT LETTER IN THE CASE OF THE COMMITMENT PARTIES, AS APPLICABLE, ALL SUBSCRIPTIONS ARE IRREVOCABLE.**

**2.       Subscription Period**

The Rights Offering will commence on the Subscription Commencement Date and will expire at the Rights Offering Subscription Deadline (the "**Subscription Period**").

Each Subscription Rights Holder intending to purchase Rights Offering Shares in the Rights Offering must affirmatively elect to exercise its Subscription Rights and Oversubscription Rights in the manner set forth in these Rights Offering Procedures by the Rights Offering Subscription Deadline.

Any exercise of Subscription Rights or Oversubscription Rights after the Rights Offering Subscription Deadline will not be allowed and any purported exercise received by the Subscription Agent after the Rights Offering Subscription Deadline, regardless of when the documents or payment relating to such exercise were sent, will not be honored.

The Rights Offering Subscription Deadline may be extended by the Debtors, in consultation with the Requisite Commitment Parties or as required by law.

**3.       Distribution of the Rights Offering Materials**

On the Subscription Commencement Date, the Subscription Agent shall distribute, or cause to be distributed, the Rights Offering Procedures and the Subscription Form (collectively, the "**Rights Offering Materials**"), to all Holders of Existing Common Interests in the ordinary course of distribution, including, through DTC for Street Name Holders, and to each bank, broker, or other nominee (each, a "**Subscription Nominee**") for any applicable Holder of Existing Common Interests identified to the Subscription Agent in advance of the Subscription Commencement Date. Street Name Holders must instruct their Subscription Nominee, as applicable, to tender/block their positions in DTC or the relevant depository. The Subscription Agent shall use such information only for purposes consistent with the Rights Offering Procedures and any order of the Bankruptcy Court.

Copies of the Rights Offering Materials may also be obtained by contacting the Subscription Agent or visiting the Debtors' restructuring website at https://cases.stretto.com/corescientific/.

**4.       DTC**

Certain of the Existing Common Interests are held in book-entry form in accordance with the practices and procedures of DTC. The Debtors intend to comply with the practices and procedures of DTC for the purpose of conducting the Rights Offering with respect to the Existing Common Interests held "in street name" through DTC.

With respect to the Rights Offering Shares issued to Street Name Holders, without limiting the foregoing, the Debtors intend that, to the extent practicable and consistent with law, such Rights Offering Shares will be issued in book entry form, and that DTC, or its nominee, will be the holder of record of such Rights Offering Shares. The ownership interest of each Street Name Holder of such Rights Offering Shares, and transfers of ownership interests therein, are expected to be recorded on the records of the direct and indirect participants in DTC. It is expected that all Rights Offering Shares exercised through DTC will be allocated to exercising holders through DTC on or as soon as practicable after the Effective Date.

5.     **Delivery of Subscription Form**

Subject to the terms and conditions set forth in the Plan, these Rights Offering Procedures and the Subscription Form, each Subscription Rights Holder may exercise all or any portion of such holder's Subscription Rights and, if it has fully exercised its Subscription Rights, its Oversubscription Rights.

In order to facilitate the exercise of the Subscription Rights and Oversubscription Rights, beginning on the Subscription Commencement Date, the Subscription Agent will send a Subscription Form to each Holder of Existing Common Interests, together with appropriate instructions for the proper completion, due execution, and timely delivery of the executed Subscription Form, and the payment of the Aggregate Subscription Amount for its Rights Offering Shares. Street Name Holders must also instruct their Subscription Nominee to tender/block their positions through the ATOP procedures of the DTC by the ATOP Tender Deadline.

All Subscription Rights Holders **must** return (or cause their Subscription Nominee to return) a duly executed Subscription Form, including any supporting documentation required therewith, to the Subscription Agent by the Rights Offering Subscription Deadline in order to exercise such Subscription Rights Holder's Subscription Rights and Oversubscription Rights, as applicable.

6.     **Exercise of Subscription Rights and Oversubscription Rights**

(a)     In order to validly exercise its Subscription Rights, each Subscription Rights Holder must:

(i)     if the Subscription Rights Holder is not a Commitment Party and is a Street Name Holder, (1) no later than the ATOP Tender Deadline, direct its Subscription Nominee to tender/block its position(s) of Existing Common Interests through the ATOP procedures of DTC in an amount equal to the amount such holder wishes to exercise Subscription Rights, (2) return (or cause its Subscription Nominee to return) a duly executed Subscription Form to the Subscription Agent so that such documents are actually received by the Subscription Agent by the Rights Offering Subscription Deadline, and (3) no later than the Rights Offering Subscription Deadline, pay (or cause its Subscription Nominee to pay) the Aggregate Purchase Price to the Subscription Agent by wire transfer **ONLY** of immediately available funds in accordance with the instructions set forth herein;

(ii)  if the Subscription Rights Holder is not a Commitment Party and holds Existing Common Interests directly on the books and records of the Debtors, (1) return a duly executed Subscription Form to the Subscription Agent so that such documents are <u>actually received</u> by the Subscription Agent by the Rights Offering Subscription Deadline and (2) no later than the Rights Offering Subscription Deadline, pay the Aggregate Purchase Price to the Subscription Agent by wire transfer **ONLY** of immediately available funds in accordance with the instructions set forth herein;

(iii)  if the Subscription Rights Holder is a Commitment Party and is a Street Name Holder, (1) no later than the ATOP Tender Deadline, direct its Subscription Nominee to tender/block its position(s) of Existing Common Interests through the ATOP procedures of DTC in an amount equal to the amount such holder wishes to exercise Subscription Rights, (2) return (or cause its Subscription Nominee to return) a duly executed Subscription Form to the Subscription Agent so that such documents are <u>actually received</u> by the Subscription Agent by the Rights Offering Subscription Deadline and (3) no later than the Backstop Funding Deadline, pay the Aggregate Purchase Price (or cause its Subscription Nominee to pay) (in accordance with the terms and conditions and in the form and manner set forth in the Backstop Commitment Letter) by wire transfer **ONLY** of immediately available funds in accordance with the instructions set forth herein, subject to the terms and conditions of the Backstop Commitment Letter; and

(iv)  if the Subscription Rights Holder is a Commitment Party and holds Existing Common Interests directly on the books and records of the Debtors, (1) return a duly executed Subscription Form to the Subscription Agent so that such documents are <u>actually received</u> by the Subscription Agent by the Rights Offering Subscription Deadline and (2) no later than the Backstop Funding Deadline, pay the Aggregate Purchase Price (in accordance with the terms and conditions and in the form and manner set forth in the Backstop Commitment Letter) by wire transfer **ONLY** of immediately available funds in accordance with the instructions set forth herein, subject to the terms and conditions of the Backstop Commitment Letter.

(b)  In order to validly exercise its Oversubscription Rights, each Subscription Rights Holder or its Subscription Nominee (if applicable) must (in addition to having validly and timely exercised its Subscription Rights in full and having taken the actions required under 6 above):

(i)  indicate in its Subscription Form its Oversubscription Election, including the number of Unsubscribed Shares for which it is exercising such election; and

(ii)  promptly upon returning its Subscription Form to the Subscription Agent, but in no event later than the Rights Offering Subscription Deadline, pay or have paid the applicable Oversubscription Funding Amount by wire transfer **ONLY** of immediately available funds in accordance with the instructions set forth herein;

*provided that* if such Subscription Rights Holder exercising its Oversubscription Rights is a Commitment Party it shall pay or have paid the applicable Oversubscription Funding Amount in the manner set forth in the foregoing clause no later than the Backstop Funding Deadline.

In the event that the funds received by the Subscription Agent from any Subscription Rights Holder do not correspond to the Aggregate Subscription Amount, payable for the Rights Offering Shares, including any Unsubscribed Shares, elected to be purchased by such Subscription Rights Holder, the number of Rights Offering Shares deemed to be purchased by such Subscription Rights Holder will be the lesser of (a) the number of shares of the Rights Offering Shares elected to be purchased by such Subscription Rights Holder and (b) a number of shares of the Rights Offering Shares determined by dividing the amount of the funds received by the applicable Aggregate Subscription Amount.

The cash paid to the Subscription Agent on account of the Aggregate Subscription Amount in accordance with these Rights Offering Procedures (other than any cash paid by the Commitment Parties) will be deposited and held by the Subscription Agent in a segregated account satisfactory to the Debtors until administered in connection with the settlement of the Rights Offering on the Effective Date or promptly thereafter pursuant to the Plan. The Subscription Agent may not use such cash for any other purpose prior to the Effective Date and may not encumber or permit such cash to be encumbered with any lien or similar encumbrance. Notwithstanding the foregoing, subject to the terms and conditions of the Backstop Commitment Letter, the cash paid by the Commitment Parties pursuant to these Rights Offering Procedures and/or the Backstop Commitment Letter, as applicable, will be deposited and held by the Debtors in the Escrow Account until released or otherwise refunded in accordance with the Backstop Commitment Letter. The cash held by the Subscription Agent for the Aggregate Subscription Amount received from all Subscription Rights Holders in connection with the Rights Offering shall not be deemed part of the Debtors' bankruptcy estates and, for the avoidance of doubt, will be non-interest bearing. The cash held by the Subscription Agent in the Escrow Account for the aggregate Backstop Commitment Deposit shall not be deemed part of the Debtors' bankruptcy estates and will be held in a separate interest-bearing escrow account in accordance with the Backstop Commitment Letter.

Each Subscription Rights Holder that participates in the Rights Offering is deemed to have made the following representations and acknowledgments:

(i)     Each Subscription Rights Holder recognizes and understands that the Subscription Rights and Oversubscription Rights are not transferrable and that the benefits of the Subscription Rights and Oversubscription Rights are not separable from the claim or securities with respect to which the Subscription Rights and Oversubscription Rights have been granted;

(ii)    Each Subscription Rights Holder represents and warrants that it will not accept a distribution of Rights Offering Shares if at such time it does not hold all of the Existing Common Interests associated with its Subscription Rights and, by accepting a distribution of Rights Offering Shares, such Subscription Rights Holder will be deemed to be the owner thereof; and

(iii)    Each Subscription Rights Holder represents and warrants that it held the Existing Common Interests associated with its Subscription Rights as of the Rights Offering Record Date.

### 7.    Transfer Restriction; Revocation

The Subscription Rights and Oversubscription Rights are non-transferable and are not detachable from the applicable Existing Common Interests. If any Subscription Rights or Oversubscription Rights are transferred by a Subscription Rights Holder, such Subscription Rights will be cancelled automatically and neither such Subscription Rights Holder nor the purported transferee will receive any Rights Offering Shares otherwise purchasable on account of such transferred Subscription Rights or Oversubscription Rights.

Once a Subscription Rights Holder has properly exercised its Subscription Rights or Oversubscription Rights, as applicable, subject to the terms and conditions of the Subscription Form, and the Backstop Commitment Letter in the case of the Commitment Parties, such exercise will be irrevocable.

### 8.    Return of Payment; Rights Offering Conditioned on Effectiveness of the Plan

Unless the Effective Date has occurred, the Rights Offering will be deemed automatically terminated without any action of any party upon revocation of the Plan.

If the Rights Offering is terminated or otherwise not consummated, any cash paid to the Subscription Agent will be promptly returned, without interest, to the applicable Subscription Rights Holder as soon as reasonably practicable, but in no event later than the later of the date that is five Business Days after the date on which the Rights Offering is terminated or the date the Subscription Agent receives the applicable refund information; provided that any cash paid to the Subscription Agent by the Commitment Parties, including on account of any Backstop Commitment Deposit and/or Aggregate Subscription Amount, will be promptly returned, with interest, to the applicable Commitment Party as soon as practicable, in accordance with the terms and conditions of the Backstop Commitment Letter.

All exercises of Subscription Rights and Oversubscription Rights are subject to and conditioned upon the effectiveness of the Plan. The Debtors will accept an exercise of the Subscription Rights and Oversubscription Rights only upon the confirmation and effectiveness of the Plan. Notwithstanding anything contained herein, in the Disclosure Statement or in the Plan to the contrary, the Debtors reserve the right, subject to the terms of the Backstop Commitment Letter, to modify these Rights Offering Procedures or adopt additional detailed procedures if necessary in the Debtors' business judgment to more efficiently administer the distribution and exercise of the Subscription Rights and Oversubscription Rights or comply with applicable law.

In the event that the aggregate Rights Offering Shares issuable pursuant to the exercise of Oversubscription Rights exceeds the number of Unsubscribed Shares, Subscription Rights Holders who have made Oversubscription Elections will receive their *pro rata* share (measured as the proportion that the Unsubscribed Shares elected to be purchased by such Subscription Rights

Holder bears to the aggregate amount of Unsubscribed Shares elected to be purchased by all Subscription Rights Holders) of the Unsubscribed Shares. The difference between the Oversubscription Funding Amount  actually paid by such exercising Subscription Rights Holder and the Oversubscription Funding Amount that such Subscription Rights Holder is required to pay after giving effect to the proration, if any, shall be refunded no later than five Business Days after the Rights Offering Subscription Deadline, or as soon as practicable thereafter.

### 9.      Fractional Shares

No fractional Subscription Rights, Oversubscription Rights or fractional Rights Offering Shares will be issued in the Rights Offering. All allocations for Rights Offering Shares will be calculated and rounded down to the nearest whole share.

### 10.     Validity of Exercise of Subscription Rights

All questions concerning the timeliness, viability, form, and eligibility of any exercise of Subscription Rights or Oversubscription Rights will be determined in good faith by the Debtors, and, if necessary, subject to a final and binding determination by the Bankruptcy Court. The Debtors will not be deemed to have received nor otherwise accepted any exercise or subscription that is incomplete, inaccurate, untimely, or otherwise fails to conform to the requirements set forth in these Rights Offering Procedures. The Debtors may provide notification to a Subscription Rights Holder who elects to exercise its Subscription Rights or Oversubscription Rights, as applicable, of such defects or irregularities and permit such defects or irregularities to be waived, provided such waiver is executed in writing, or otherwise timely cured. Each such irregularity or defect, if reviewed, will be done so on an individual submission basis. For the avoidance of doubt, Subscription Forms will be deemed not to have been received or accepted until all defects or irregularities have been waived in writing or timely cured. None of the Debtors, the Reorganized Debtors, nor any of their respective employees, Affiliates, or professionals, shall incur any liability for giving, or failing to give, such notification or opportunity to cure.

**Before exercising any Subscription Rights or Oversubscription Rights, Subscription Rights Holders should read the Disclosure Statement and the Plan, each as amended or supplemented, and all additional disclosures of financial information, including additional quarterly reports for quarters ending subsequent to the date of the Disclosure Statement filed with the Bankruptcy Court and made available at the Debtors' restructuring website at https://cases.stretto.com/corescientific/ for information relating to the Debtors and the risk factors to be considered.**

### 11.     Modification of Procedures

The Debtors reserve the right to modify these Rights Offering Procedures, or adopt additional procedures consistent with these Rights Offering Procedures, to effectuate the Rights Offering and to issue the Rights Offering Shares; provided that the Debtors shall provide prompt written notice to each Subscription Rights Holder (which may be through such Subscription Rights Holder's Subscription Nominee) of any material modification to these Rights Offering Procedures made after the Subscription Commencement Date, which notice may be provided through posting

such notice on the Subscription Agent's website at https://cases.stretto.com/corescientific/; provided, however, that any material amendments or modifications to the terms of the Rights Offering require the consent of the Requisite Commitment Parties pursuant to the Backstop Commitment Letter and the Equity Committee pursuant to the RSA. In so doing, and subject to the prior consent of the Requisite Backstop Commitment Parties, if applicable, the Debtors may execute and enter into agreements and take further action that the Debtors determine in good faith are necessary and appropriate to effectuate and implement the Rights Offering and the issuance of the Rights Offering Shares. Nothing in this paragraph shall be construed so as to permit the Debtors to modify the terms of any executed and delivered Subscription Form without the reasonable consent of the Subscription Rights Holder or Commitment Parties subject thereto. The Debtors are not obligated to deliver any notice to the Subscription Rights Holder in connection with any reduction in the size of the Rights Offering, except with respect to the Commitment Parties.

The Debtors shall undertake reasonable procedures to confirm that each participant in the Rights Offering is in fact a Subscription Rights Holder, including, but not limited to, requiring additional certifications by such participant to that effect and other diligence measures as the Debtors deem reasonably necessary.

All calculations, including, to the extent applicable, the calculation of (i) the value of any Subscription Rights Holder's Existing Common Interests for the purposes of the Rights Offering and (ii) any Subscription Rights Holder's Rights Offering Shares, shall be made in good faith by the Debtors, and in each case in accordance with any Claim amounts included in the Plan, and any disputes regarding such calculations shall be subject to a final and binding determination by the Bankruptcy Court.

## 12.   Inquiries And Transmittal of Documents; Subscription Agent

The Rights Offering Instructions attached hereto should be read carefully and strictly followed by the Subscription Rights Holders. Questions relating to the Rights Offering should be directed to the Subscription Agent toll free at the following telephone numbers: (888) 317-1417). (domestic toll-free) or (929) 399-0959 (international) or via e-mail at csrightsoffer@stretto.com (please reference "Core Rights Offering" in the subject line).

The risk of non-delivery of all documents and payments to the Subscription Agent is on the Subscription Rights Holder electing to exercise its Subscription Rights and not the Debtors or the Subscription Agent.

## 13.   Failure to Exercise Subscription Rights

Subscription Rights and Oversubscription Rights that are not exercised in accordance with these Rights Offering Procedures by the Rights Offering Subscription Deadline will be relinquished on the Rights Offering Subscription Deadline, and none of the Debtors, the Reorganized Debtors or any of their respective employees, Affiliates, or professionals shall have any liability for any failure to exercise Subscription Rights or Oversubscription Rights. Any attempt to exercise Subscription Rights or Oversubscription Rights after the Rights Offering Subscription Deadline shall be null and void and the Debtors shall not be obligated to honor any

such purported exercise received by the Subscription Agent after the Rights Offering Subscription Deadline regardless of when the documents relating thereto were sent. The Subscription Form(s) may only be submitted via the E-Subscription Portal. No other methods will be accepted. To access the E-Subscription Form Portal, visit https://cases.stretto.com/corescientific/ click on the "Submit Rights Offering Form" section of the website and follow the instructions to submit your form. In all cases, you should allow sufficient time to ensure timely delivery by the Rights Offering Subscription Deadline.

# **Exhibit N**

## CORE SCIENTIFIC, INC. (THE "COMPANY")

## RIGHTS OFFERING SUBSCRIPTION FORM

**SUBSCRIPTION FORM FOR USE BY SUBSCRIPTION RIGHTS HOLDERS FOR THE RIGHTS OFFERING IN CONNECTION WITH THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF CORE SCIENTIFIC, INC. AND ITS DEBTOR AFFILIATES**

*ALL SUBSCRIPTION RIGHTS HOLDERS WISHING TO PARTICIPATE IN THE RIGHTS OFFERING MUST READ, COMPLETE AND EXECUTE THIS FORM.*

You are receiving this form because you are a "Subscription Rights Holder." A Subscription Rights Holder is any holder of Core Scientific common stock (or certain other equity interests, including restricted stock and vested restricted stock units) ("Existing Common Interests") as of the applicable record date – November 16, 2023.  Each Subscription Rights Holder has the ability to "subscribe" to purchase shares of reorganized Core Scientific common stock through the Rights Offering.

The total amount of shares being offered is $55 million.  The purchase price per share is $8.21710 (subject to adjustment as described herein), which represents a 30% discount to the Plan Equity Value, based on an Enterprise Value of $1.5 billion. The purchase price per share assumes that current holders of Core Scientific Existing Common Interests after giving effect to the reorganization transactions described in the Chapter 11 Plan and Disclosure Statement, as amended and supplemented, will hold 1/25th the number of issued and outstanding shares of common stock of the reorganized Company upon emergence from bankruptcy of what they hold as of November 20, 2023 (such ratio is subject to change).

A Subscription Rights Holder is entitled to (1) exercise subscription rights based on its *pro rata* ownership of Existing Common Interests and (2)  exercise oversubscription rights and purchase more than its *pro rata* share of the shares offering in the Rights Offering.  If the total oversubscription purchases for all Subscription Rights Holders results in Rights Offering proceeds in excess of $55 million, each Subscription Rights Holder's ability to oversubscribe will be reduced proportionally.

Any share issued in connection with the Rights Offering will be freely tradeable immediately upon receipt pursuant to section 1145 of the Bankruptcy Code, subject to certain exceptions for any Subscription Rights Holder who is a Commitment Party under the Backstop Commitment Letter or is an "underwriter" as that term is defined in section 1145 of the Bankruptcy Code.

You should read and complete this form if you wish to exercise your subscription rights and purchase shares in the reorganized Company.

To participate in the Rights Offering, each Subscription Rights Holder who is <u>not</u> a Commitment Party must (1) submit this Subscription Form and wire the accompanying funds to be received no later than **5:00 p.m. New York City time on December 11, 2023** and (2) if you hold your Existing Common Interests through a bank, broker or similar institution, work with them to have your interests tendered through ATOP (as described below) no later than **5:00 p.m. New York City time on December 11, 2023**.

To participate in the Rights Offering, each Subscription Rights Holder who is a Commitment Party must (1) submit this Subscription Form to be received no later than **5:00 p.m. New York City time on December 11, 2023**, and wire the accompanying funds to be received no later than **the date specified in the Funding Notice** and (2) if you hold your Existing Common Interests through a bank, broker or similar institution, work with them to have your interests tendered through ATOP (as described below) no later than **5:00 p.m. New York City time on December 11, 2023**.

**<u>Please see below for key dates and further instructions for completing this form and participating in the Rights Offering.</u>**

**The Rights Offering Record Date is November 16, 2023.**

**The Rights Offering Subscription Deadline is 5:00 p.m. New York City time on December 11, 2023.**

**The ATOP Tender Deadline is 5:00 p.m. New York City time on December 11, 2023.**

**If you hold Existing Common Interests through a bank, broker, or other financial institution that holds your Existing Common Interests "in street name" (your "Subscription Nominee") in DTC, to exercise your Subscription Rights, (i) you must direct your Subscription Nominee to tender your Existing Common Interests into the appropriate option on DTC's ATOP platform by the ATOP Tender Deadline and (ii) this Subscription Form (with accompanying IRS Form W-9 or appropriate IRS Form W-8, as applicable), and a wire transfer of the Aggregate Purchase Price and Oversubscription Amount, if applicable (together, the "Aggregate Subscription Amount"), must be received by the Subscription Agent in accordance with the wire instructions set out in this Subscription Form on or prior to the Rights Offering Subscription Deadline, or your Subscription Form will not be recognized and you will be deemed to have irrevocably relinquished and waived your right, if any, to participate in the Rights Offering or otherwise purchase shares of reorganized Core Scientific common stock through the Rights Offering ("Rights Offering Shares").**

**If you hold Existing Common Interests directly on the books and records of the Company, to exercise your Subscription Rights, this Subscription Form (with accompanying IRS Form W-9 or appropriate IRS Form W-8, as applicable), and a wire transfer of the Aggregate Subscription Amount, must be received by the Subscription Agent in accordance with the wire instructions set out in this Subscription Form on or prior to the Rights Offering Subscription Deadline, or your Subscription Form will not be recognized and you will be deemed to have irrevocably relinquished and waived your right, if any, to participate in the Rights Offering in respect of the Rights Offering Shares.**

**Please note that, for Subscription Rights Holders that hold Existing Common Interests through DTC, you will need the assistance of your Subscription Nominee to complete certain items in this Subscription Form, so please allot sufficient time to coordinate with your Subscription Nominee in advance of the Rights Offering Subscription Deadline (and with respect to the funding for Commitment Parties, the Backstop Funding Deadline). If you hold Existing Common Interests through DTC, to exercise your Subscription Rights, you must direct your Subscription Nominee to tender your Existing Common Interests into the appropriate option on DTC's ATOP platform by the ATOP Tender Deadline.**

**The Rights Offering Shares are being distributed and issued without registration under the Securities Act, nor any State or local law requiring registration for offer or sale of a security, pursuant to the exemption from registration set forth in Section 1145 of the Bankruptcy Code and in compliance with any applicable State or local laws pursuant to registration or exemption therefrom. Any Holder who subscribes for Rights Offering Shares and is an "underwriter", as that term is defined for purposes of section 1145 of the Bankruptcy Code, will also be subject to restrictions on its ability to resell those securities.**

**No Subscription Rights or Oversubscription Rights may be sold, transferred, assigned, pledged, hypothecated, participated, donated or otherwise encumbered or disposed of, directly or indirectly (including through derivatives, options, swaps, forward sales or other transactions in which any person receives the right to own or acquire any current or future interest in the Subscription Rights, Oversubscription Rights, Rights Offering Shares or claims funded pursuant to the Backstop Commitment Letter and any related claims). After Subscription Rights are exercised with respect to any Existing Common Interests, any purported trading, assignment or transfer of such Existing Common Interests shall be deemed null and void, provided that, with respect to the Commitment Parties, the transfer restrictions set forth in the Backstop Commitment Letter shall govern.**

**To permit proper and timely processing of your Subscription Form, please carefully review, fill out, and/or certify all Items contained herein or attached hereto, as applicable. Please consult the Plan, the Disclosure Statement and the Rights Offering Procedures (including the instructions therein), as applicable, for additional information with respect to this Subscription Form. Questions relating to the Rights Offering should be directed to the Subscription Agent toll free at the following telephone numbers: (888) 317-1417 (domestic toll-free) or (929) 399-0959 (international) or via e-mail at CSRightsOffer@stretto.com (please reference "Core Rights Offering" in the subject line).**

**In order to participate in the Rights Offering, please complete this Subscription Form.**

**Subject to the terms and conditions of the Rights Offering Procedures, all subscriptions set forth in this Subscription Form are irrevocable.**

**Any terms capitalized but not defined herein shall have the meaning set forth in the Plan, Disclosure Statement or the Rights Offering Procedures.**

Each Subscription Rights Holder will be eligible to obtain Subscription Rights to subscribe for its *pro rata* share of the Rights Offering Shares being offered and issued by the Company in the Rights Offering (the "**Rights Offering Shares**"). All Subscription Rights Holders have the right, but not the obligation, subject to and in accordance with the Rights Offering Procedures, to participate in the Rights Offering; provided that:

(i) **if the Subscription Rights Holder's Existing Common Interests are held by its Subscription Nominee through DTC**, it (a) causes its Subscription Nominee to tender the Subscription Rights Holder's Existing Common Interests into DTC's ATOP platform on or before the ATOP Tender Deadline, and (b) timely and properly completes, submits, executes and delivers (or coordinates with its Subscription Nominee for the timely delivery of) its Subscription Form to the Subscription Agent (with accompanying IRS Form W-9 or appropriate IRS Form W-8, as applicable) and the Subscription Form is received by the Subscription Agent on or before the Rights Offering Subscription Deadline; (c) executes a wire transfer (or arranges with its Subscription Nominee for execution of such wire transfer) of the Aggregate Subscription Amount in accordance with Item 1 or 3 below, to the Subscription Agent on or before the Rights Offering Subscription Deadline or, in the case of the Commitment Parties, to the Escrow Account on or before the Backstop Funding Deadline; and (d) is determined eligible pursuant to the Rights Offering Procedures; and

(ii) **if the Subscription Rights Holder's Existing Common Interests are held on the books and records of the Company outside of DTC**, it (a) timely and properly completes, submits, executes and delivers its Subscription Form to the Subscription Agent (with accompanying IRS Form W-9 or appropriate IRS Form W-8, as applicable), and the Subscription Form is received by the Subscription Agent on or before the Rights Offering Subscription Deadline; (b) executes a wire transfer of the Aggregate Subscription Amount in accordance with Item 1 or 3 below, to the Subscription Agent on or before the Rights Offering Subscription Deadline or, in the case of the Commitment Parties, to the Escrow Account on or before the Backstop Funding Deadline; and (c) is determined eligible pursuant to the Rights Offering Procedures.

Subject to the terms and conditions set forth in the Plan, the Disclosure Statement, the Rights Offering Procedures and this Subscription Form, each Subscription Rights Holder is entitled to subscribe, at a purchase price of $8.21710 per whole share, for 0.01734 Rights Offering Shares per Existing Common Interest held by such Subscription Rights Holder (the "**Rights Factor**") (subject to the Plan Claim Adjustment described below and the individual limits included in the calculations in Item 1 of this Subscription Form); notwithstanding the foregoing, the price per Rights Offering Share will decrease to the extent that (i) any holder of Miner Equipment Lender Claims elect the "Miner Equipment Lender Treatment Election 2" under the Plan and thereby waive its recovery on account of Miner Equipment Lender Deficiency Claim as a General Unsecured Claim and/or (ii) prior to emergence, any unsecured claims in Class 8 or Class 11 become disallowed or allowed in an amount less

than the estimated maximum amount of such unsecured claim. As a result of the foregoing, there will be a corresponding increase in the number of Rights Offering Shares each Subscription Rights Holder will be issued in the Rights Offering in exchange for payment of their Aggregate Purchase Price (the "**Plan Claim Adjustment**"), as illustrated below. The minimum price per Rights Offering Share that could result from the Plan Claim Adjustment would be $5.91665 per Rights Offering Share.

For illustrative purposes only, in the event a Subscription Rights Holder holds 1,000,000 Existing Common Interests, assuming no Plan Claim Adjustment, such Subscription Rights Holder could subscribe for 17,340 Rights Offering Shares by paying an Aggregate Purchase Price of $142,485, representing a price per Rights Offering Share of $8.21710 and reflecting the Rights Factor.

However, as a result of the maximum possible Plan Claim Adjustment, in the event that a Subscription Rights Holder held 1,000,000 Existing Common Interests, and such Subscription Rights Holder fully subscribed to its Subscription Rights and paid an Aggregate Purchase Price of $142,485, then such Subscription Rights Holder would receive 24,082 Rights Offering Shares, representing a price per Rights Offering Share of $5.91665.

The price per Rights Offering Share assumes that the holders of Existing Common Interests, after giving effect to the reorganization transactions described in the Plan and Disclosure Statement, as amended and supplemented, will hold 1/25th the number of issued and outstanding shares of common stock of the reorganized Company upon its emergence from bankruptcy of what they hold as of November 20, 2023 (such ratio is subject to change). The current share price of the Company's common stock listed on OTC US (CORZQ:US) as of November 20, 2023, does not reflect the reorganization transactions described in the Plan and Disclosure Statement, and is not expected to be indicative of the reorganized Company's post-emergence share price.

In addition, each Subscription Rights Holder will also have an Oversubscription Right to elect to purchase additional Rights Offering Shares offered in the Rights Offering at a price of $8.21710 per Rights Offering Share (subject to the Plan Claim Adjustment) that are not timely, duly and validly subscribed and paid for by the Subscription Rights Holders in accordance with the Rights Offering Procedures, in an amount not to exceed the total number of Rights Offering Shares offered in the Rights Offering minus the total number of Rights Offering Shares that such Subscription Rights Holder duly, validly and timely elected to purchase pursuant to its Subscription Right (such amount being referred to herein as the Subscription Rights Holder's "**Maximum Oversubscription Amount**"); provided, however, that no Subscription Rights Holder may exercise an Oversubscription Right until it has also duly, validly and timely exercised in full its Subscription Rights. In order to validly exercise its Oversubscription Rights, each Subscription Rights Holder must (in addition to having validly and timely exercised its Subscription Rights in full and having taken the actions required in this Subscription Form and pursuant to the Rights Offering Procedures), promptly upon returning (or coordinating with its Subscription Nominee for return of) its Subscription Form to the Subscription Agent, but in no event later than the Rights Offering Subscription Deadline, pay (or cause its Subscription Nominee to pay) the applicable Oversubscription Funding Amount, in accordance with Item 3 below, by wire transfer **ONLY** of immediately available funds in accordance with the instructions set forth herein; provided further that, the Commitment Parties shall pay the applicable Oversubscription Funding Amount no later than the Backstop Funding Deadline, in accordance with Item 3 below, by wire transfer **ONLY** of immediately available funds in accordance with the instructions set forth herein, subject to the terms and conditions of the Backstop Commitment Letter.

PLEASE NOTE: NO SUBSCRIPTION OR OVERSUBSCRIPTION WILL BE VALID UNLESS THIS SUBSCRIPTION FORM AND THE AGGREGATE SUBSCRIPTION AMOUNT, AS APPLICABLE, AND FUNDS ARE VALIDLY SUBMITTED AND PAID TO THE SUBSCRIPTION AGENT BY THE RIGHTS OFFERING SUBSCRIPTION DEADLINE. NOTWITHSTANDING THE FOREGOING, THE COMMITMENT PARTIES MUST DELIVER THE AGGREGATE SUBSCRIPTION AMOUNT BY THE

BACKSTOP FUNDING DEADLINE AND IN ACCORDANCE WITH THE INSTRUCTIONS SET FORTH IN THE FUNDING NOTICE.

To access the E-Subscription Form Portal, visit https://cases.stretto.com/corescientific click on the "Submit Rights Offering Form" section of the website and follow the instructions to submit your form.

**<u>Submitting your Subscription Form via the E-Subscription Portal is the only valid method of submission. No other methods will be accepted.</u>**

**Item 1: Amount of Existing Common Interests beneficially owned by Subscription Rights Holder, Calculation of Maximum Number of Rights Offering Shares, and Calculation of Aggregate Purchase Price**

By filling in the following blanks, you are certifying that, as of the Rights Offering Record Date, the information provided below is a true and accurate schedule of the beneficial holders of the Existing Common Interests, as identified by their respective account and that the undersigned Subscription Rights Holders are subscribing for the number of Rights Offering Shares specified below, on the terms and subject to the conditions set forth herein and in the Plan, the Disclosure Statement and the Rights Offering Procedures.

**Item 1(a):**        **Amount of Existing Common Interests Held:**

Number of Existing Common Interests held: _____ shares

**Item 1(b):**        **Calculation for Maximum Amount of Rights Offering Shares:**

| CUSIP/ISIN | Number of Existing Common Interests (Insert share amount from Item 1(a) above) | x | Rights Factor | = | Maximum Amount of Rights Offering Shares (*rounded down to the nearest whole share*) |
|---|---|---|---|---|---|
| 21873J108 / US21873J1088 | | x | 0.01734 | = | |

**Item 1(c):**        **Calculation for Aggregate Purchase Price:**

| Number of Rights Offering Shares you elect to purchase (this number cannot be greater than the Maximum Amount of Rights Offering Shares calculated from Item 1(b)) | x | Purchase Price | = | Rights Offering Shares Purchase Amount (*rounded down to the nearest $0.01 with $0.005 rounding up*) |
|---|---|---|---|---|
| | | $8.21710 | = | $_____ |

Number of Rights Offering Shares Purchased: _____ shares

Rights Offering Shares Purchase Amount: $ _____

**Item 2. Calculation of Maximum Number of Unsubscribed Shares for Which the Undersigned May Subscribe.** **You may only exercise Oversubscription Rights if you have elected to purchase the maximum number of Rights Offering Shares for which you may subscribe in Item 1 above.**

The maximum number of Unsubscribed Shares for which the undersigned may subscribe is calculated as follows:

| $_____<br>(Insert $55,000,000.00 amount less the Rights Offering Share Purchase Amount from Item 1(c) above) | / | $8.21710<br>[Price per Rights Offering Share] | = | _____shares<br>[2(a)] (Maximum number of Unsubscribed Shares for which you may subscribe)<br>[Round down to the nearest share] |
|---|---|---|---|---|

**Item 2(b).  Oversubscription Funding Amount.** By filling in the following blanks, the undersigned Subscription Rights Holder is indicating that it is committing to subscribe for and purchase up to the number of Rights Offering Shares specified below (specify a number of Rights Offering Shares, which is not greater than the maximum number of Unsubscribed Shares for which you may subscribe set forth as 2(a) in the table above), on the terms and subject to the conditions set forth in the Subscription Agreement and the Rights Offering Procedures.

| _____shares<br>(Indicate number of Rights Offering Shares the undersigned elects to purchase, which cannot be greater than the number of shares set forth as [2(a)] in the table above.) | X | $8.21710<br>[Price per Rights Offering Share] | = | $_____<br>[2(b)] **Your "Oversubscription Funding Amount"**<br>[This is the amount that you will wire to the Subscription Agent in addition to your Aggregate Purchase Price]<br><br>*(rounded down to the nearest $0.01 with $0.005 rounding up)* |
|---|---|---|---|---|

Number of Unsubscribed Shares Purchased: _____ shares

Oversubscription Funding Amount: $ _____

**Item 3. Calculation of Aggregate Subscription Amount.** By filling in the following blanks, you are indicating that the undersigned Subscription Rights Holder is subscribing to purchase the number of Rights Offering Shares associated with the Number of Rights Offering Shares indicated in Item 1(c) and the number of Rights Offering Shares indicated in Item 2(b), on the terms and subject to the conditions set forth in the Rights Offering Procedures

Number of Aggregate Rights Offering Shares Purchased: _____ shares
(Insert Total Aggregate Number of Rights Offering Shares Purchased shown in Item 1(c) & Unsubscribed Shares Purchased shown in Item 2(b))

Aggregate Subscription Amount: $ _____
(Insert Total Aggregate Purchase Price shown in Item 1(c) & Oversubscription Funding Amount shown in Item 2(b))

**Item 4. Nominee Information**.

If you hold your Existing Common Interests on the register maintained by Computershare, the transfer agent, please provide your Computershare Account Number:

Computershare Account Number:_____

If you hold your Existing Common Interests through DTC, please indicate on the lines provided below your brokerage (DTC Participant) account information. *The Company strongly recommend that you type the information below to ensure legibility*

DTC Participant Name:_____

DTC Participant Number:_____

DTC Participant Contact Name:_____

DTC Participant Contact Telephone:_____

DTC Participant Contact E-Mail Address:_____

Beneficial Holder Account Number at DTC Participant:_____

**VOI or Reference Number**

The requested identification number(s) must be provided below in order to link a particular Registration Form with the relevant ATOP submission(s). In most cases, this will be the "Voluntary Offer Instruction" ("VOI") Number, which would need to be provided to the Subscription Rights Holder by the DTC Participant that tendered its Existing Common Interests through ATOP. However, participating Subscription Rights Holder through Euroclear or Clearstream may instead provide their Euroclear or Clearstream reference number; provided, however, that the Subscription Agent must also receive a register of such number(s) directly from Euroclear or from Clearstream in order to link such instruction number(s) to the relevant VOI Number(s).

VOI Number(s): _____

and/or

Euroclear Reference Number(s): _____

and/or

Clearstream Reference Number(s): _____

**Item 5. Payment and Delivery Instructions**

Subscription Rights Holders must submit to the Subscription Agent via wire transfer to the account set out below the Aggregate Subscription Amount payment (specified in Item 3 above) along with their completed Subscription Form, directly to the Subscription Agent on or before the Rights Offering Subscription Deadline. Notwithstanding the foregoing, the Commitment Parties must deliver the Aggregate Subscription Amount by the Backstop Funding Deadline and in accordance with the instructions set forth in the Funding Notice.

*Wire Instructions:*

| Account Name | CORE SCIENTIFIC RIGHTS OFFERING |
|---|---|
| **Bank Account No.** | 6316490864 |
| **ABA/Routing No.** | 036076150 |
| **SWIFT (for international wires)** | CTZIUS33 |
| **Bank Name** | CITIZENS BANK, NA |
| **Bank Address** | 1 CITIZENS DRIVE RIVERSIDE RI, 02915 |
| **Account Name** | CORE SCIENTIFIC RIGHTS OFFERING |

*Your wire information in the event a refund is needed:*

Please use the chart below to provide the appropriate wire information in the event the Subscription Agent must refund a portion (or all) of your subscription payment, as applicable.

| Account Name | |
|---|---|
| **Bank Account No.** | |
| **ABA/Routing No.** | |
| **Bank Name** | |
| **Bank Address** | |
| **Reference** | |

**Item 6. Registration and Brokerage Information for Rights Offering Shares**

**FOR SUBSCRIPTION RIGHTS HOLDERS PARTICIPATING IN THE RIGHTS OFFERING THAT HOLD EXISTING COMMON INTERESTS THROUGH A SUBSCRIPTION NOMINEE IN DTC, THE RIGHTS OFFERING SHARES ARE EXPECTED TO BE DTC ELIGIBLE AND SUCH SHARES WILL ONLY BE DELIVERED TO THE DTC PARTICIPANT ACCOUNT FROM WHICH THE UNDERLYING EXISTING COMMON INTERESTS WERE DELIVERED VIA ATOP. HOWEVER, PLEASE PROVIDE THE FOLLOWING REGISTRATION INFORMATION FOR THE DIRECT REGISTRATION OF THE RIGHTS OFFERING SHARES IN THE EVENT THAT SUCH SHARES ARE NOT DTC ELIGIBLE.**

**FOR SUBSCRIPTION RIGHTS HOLDERS PARTICIPATING IN THE RIGHTS OFFERING THAT HOLD EXISTING COMMON INTERESTS ON THE BOOKS AND RECORDS OF THE COMPANY OUTSIDE OF DTC, YOU MUST PROVIDE THE FOLLOWING REGISTRATION INFORMATION AS YOUR RIGHTS OFFERING SHARES WILL BE ISSUED ON THE REGISTER MAINTAINED BY THE COMPUTERSHARE AND WILL NOT BE DELIVERED TO THE DTC PARTICIPANTS.**

**IF YOU WISH TO EXERCISE OVERSUBSCRIPTION RIGHTS TO PURCHASE UNSUBSCRIBED SHARES, YOU MUST PROVIDE THE FOLLOWING REGISTRATION INFORMATION AS THE UNSUBSCRIBED SHARES WILL BE ISSUED ON THE REGISTER MAINTAINED BY THE COMPUTERSHARE AND WILL NOT BE DELIVERED TO THE DTC PARTICIPANTS.**

Registration Name Line 1 (Maximum 40 Characters):_____

Registration Name Line 2 (Maximum 40 Characters):_____ _____(if needed)

Address 1:_____

Address 2:_____

Address 3:_____

City, State, and Zip Code:_____

Country:_____

Telephone Number:_____

E-Mail Address:_____

U.S. Tax Identification Number:_____

Check here if non-US (no TIN) ☐

**Account Type**.  Please indicate the "account type" that may be used in connection with registration of your Subscribed Securities in the name of the New Registered Shareholder. Please check **only one** box:

☐       INDIVIDUAL ACCOUNT;

☐       IRA ACCOUNT;

☐       CORPORATIONS (S-CORP): (ASSOCIATED, ASSOCIATES, ASSOCIATION, CO, CO. COMPANY, CORP, CORPORATE/PARTNER, ENTERPRISE(S), FUND, GROUP,

INCORPORATED, INC, INTERNATIONAL, INTL, LIMITED, LTD, LIFETIME LIMITED COMPANY, LLC, L.L.C., PARTNER, PARTNERS, PLC, PUBLIC LIMITED COMPANY);

☐   PARTNERSHIP: (LP, L P, L.P., LLP, LIMITED PARTNERSHIP, LIFETIME LIMITED PARTNERSHIP);

☐   BANK;

☐   NOMINEE ACCOUNTS;

☐   C-CORP;

☐   NON-PROFIT: (CEMETERY, CHURCH, COLLEGE, COMMISSION FOR CHILDREN WITH, COMMISSION FOR HANDICAPPED, COMMISSION MINISTRIES INC, COMMISSION OF PUBLIC WORKS, COMMISSION OF BANKING & FOUNDATIONS, HOSPITAL, SCHOOL, SYNAGOGUE, UNIVERSITY);

☐   FIDUCIARY ACCOUNT: (CUSTODIAN, CO-TRUSTEE, ESTATE, EXECUTOR, EXECUTRIX, FBO, F/B/O, FAO, FIDUCIARY TRUST, ITF, LIFE TEN, PENSION PLAN, INDIVIDUAL NAME PROFIT SHARING PLAN, RETIREMENT PLAN, 401K PLAN, SELL TRANSFER PLEDGE, STATE UNIFORM TRANSFER TO MINOR'S ACT, TTEE, TTEES, UW, UTMA, UGMA, USUFRUCT, UNIFIED, UNIF GIFT MIN ACT, UNIF TRUST MIN ACT, UNIFIED GIFT TO MINORS ACT, UNIFORM GIFT TO MINORS, UNIFORM TRANSFER TO MINORS, GRANT (GRANTOR ANNUITY TRUST));

☐   TENANTS IN COMMON;

☐   TENANTS BY ENTIRETY: (TEN ENT, TENANTS ENT, TENANTS ENTIRETY, TENANTS BY ENTIRETY, TENANTS BY ENTIRETIES);

☐   JOINT TENANTS: (JT TEN, JT TEN WROS, JT WROS, J/T/W/R/S, JOINT TENANCY, JOINT TENANTS WITH RIGHT OF SURVIVORSHIP, JT OWNERSHIP, IF JT ACCOUNT WITH TOD); or

☐   COMMUNITY PROPERTY: (COM PROP, COMM PROP, COM PROPERTY, COMM PROPERTY, MARITAL PROPERTY, HWACP, HUSBAND & WIFE AS COMMUNITY PROPERTY).

**Item 7. Commitment Party Representation**

*(This section is <u>only</u> for Commitment Parties, each of whom is aware of its status as a Commitment Party. Please note that checking the box below if you are not a Commitment Party may result in forfeiture of your rights to participate in the Rights Offering.)*

☐ **I am a Commitment Party identified in the Backstop Commitment Letter**

**Item 8. Certification and Representations.**

The undersigned certifies, represents and warrants that:

(i) the undersigned is a Subscription Rights Holder and beneficial owner of the Existing Common Interests, as of the Rights Offering Record Date, set forth in Item 1 above or the authorized signatory (the "Authorized Signatory") of such Holder acting on behalf of such Holder;

(ii) the undersigned received a copy of the Plan, the Disclosure Statement and the Rights Offering Procedures and has access to additional disclosures of financial information, including additional quarterly reports for quarters ending subsequent to the date of the Disclosure Statement filed with the Bankruptcy Court and made available at the Debtors' restructuring website at https://cases.stretto.com/corescientific for information relating to the Debtors and the risk factors to be considered in its participation in this Rights Offering; and

(iii) the undersigned understands that the exercise of its rights in this Rights Offering is subject to all the terms and conditions set forth in the Plan, the Disclosure Statement, and the Rights Offering Procedures.

Please indicate your acceptance and approval of the foregoing in the space provided below.

ACCEPTED AND APPROVED

as of the _____ day of _____, 2023

SUBSCRIBER: _____
(Please provide full legal name)

Signature: _____

Name of Signatory: _____

Title: _____

If a Commitment Party, check here ☐

Address: _____

City: _____ State: _____

Postal Code: _____

Country: _____

Telephone: _____

Email Address: _____

If U.S. Person, check here and attach IRS Form W-9: ☐ U.S. person

If Non-U.S. Person, check here and attach appropriate IRS Form W-8: ☐ Non-U.S. person

PLEASE NOTE: NO SUBSCRIPTION WILL BE VALID UNLESS THIS SUBSCRIPTION FORM, ALONG WITH THE AGGREGATE SUBSCRIPTION AMOUNT FUNDS ARE VALIDLY SUBMITTED AND PAID TO THE SUBSCRIPTION AGENT BY THE RIGHTS OFFERING SUBSCRIPTION DEADLINE. NOTWITHSTANDING THE FOREGOING, THE COMMITMENT PARTIES MUST DELIVER THE AGGREGATE SUBSCRIPTION AMOUNT BY THE BACKSTOP FUNDING DEADLINE IN ACCORDANCE WITH THE INSTRUCTIONS SET FORTH IN THE FUNDING NOTICE.

To access the E-Subscription Form Portal, visit https://cases.stretto.com/corescientific/ click on the "Submit Rights Offering Form" section of the website and follow the instructions to submit your form.

**<u>Submitting your Subscription Form via the E-Subscription Portal is the only valid method of submission. No other methods will be accepted.</u>**

# **Exhibit O**

### QUESTIONS AND ANSWERS ABOUT THE CORE SCIENTIFIC RIGHTS OFFERING

The following questions and answers are a summary of the Rights Offering Procedures and related documents, which govern the terms of the Rights Offering. The terms of the Rights Offering are set forth a document entitled "Core Scientific, Inc. Rights Offering Procedures." That document is the definitive statement of the terms and conditions of the Rights Offering. These FAQs were prepared by Core Scientific, Inc. ("**Core**" or the "**Company**") and are intended to assist you in understanding the Rights Offering Procedures, but if there is any inconsistency between the Rights Offering Procedures and the FAQs, the Rights Offering Procedures will govern. Core does not make any recommendation as to whether you should participate in the Rights Offering.

**The Disclosure Statement has previously been distributed in connection with Core's solicitation of votes to accept or reject the Core Scientific Bankruptcy Plan and that document sets forth important information, including risk factors that should be carefully read and considered by each Eligible Holder (defined below) prior to making a decision to participate in the Rights Offering. Copies of the Disclosure Statement and Core Scientific Bankruptcy Plan are also available at the Company's restructuring website at https://cases.stretto.com/corescientific/.**

**Q: What is the Rights Offering?**

**A:** Under the Core Scientific Bankruptcy Plan, Core is conducting a Rights Offering to all of its holders of outstanding common stock (and other equity interests, including restricted stock and vested restricted stock units) ("**Existing Common Interests**"). In the Rights Offering, the holders of Existing Common Interests will have the right to subscribe for 0.01734 shares of common stock of Core following its emergence from bankruptcy, constituting ~8.1% of the shares of common stock that will be then outstanding (the "**Rights Offering Shares**"), for an aggregate purchase price of up to $55 million.[1]

**Q: Who is eligible to participate in the Rights Offering?**

**A:** All holders of Core's Existing Common Interests as of November 16, 2023 (which is the record date for the Rights Offering) are eligible to participate in the Rights Offering (each, an "**Eligible Holder**"). If you purchase or receive Existing Common Interests after November 16, 2023, you are not eligible to participate in the Rights Offering with respect such Existing Common Interests purchased or received after record date.

**Q: What is the timing of the Rights Offering?**

**A:** The subscription period for the Rights Offering will commence on **November 20, 2023** and expire at 5:00 pm New York City time on **December 11, 2023**.

**Q: What is being offered pursuant to the Rights Offering?**

**A:** Each Eligible Holder is receiving a subscription right (each, a "**Subscription Right**") for each Existing Common Interest it holds to subscribe for 0.01734 Rights Offering Shares at $8.21710 per whole Rights Offering Share ("**Subscription Price**").[1]

In addition, each Eligible Holder will also have an oversubscription right to elect to purchase any Rights Offering Shares that are not subscribed for in the Rights Offering at the Subscription Price (an "**Oversubscription Right**").

---

[1]The number of Rights Offering Shares you purchase may increase depending on (i) treatment elections by Core Scientific's miner equipment lenders ("Equipment Lender Elections") and (ii) the extent to which the estimated maximum amount of disputed claims become allowed in Class 8 (General Unsecured Claims) and Class 11 (Section 510 Clams) in the Chapter 11 cases. However, the total dollar investment amount will not change. Core's assumptions regarding Equipment Lender Elections and Core's estimated maximum amount of disputed claims are subject to change.

The Subscription Form includes a procedure for calculating the aggregate purchase price that you are required to pay, based on the number of Rights Offering Shares for which you are electing to exercise your Subscription Rights and/or Oversubscription Rights.

**Q: What are the key terms of the Rights Offering?**

**A:**
- 30% discount to Plan Equity Value of $766 million implied by a $1.5 billion Plan Total Enterprise Value;
- 0.01734 Rights Offering Shares available for each current Existing Common Interest you own; and
- $8.21710 subscription price to purchase one whole Rights Offering Share.[2]

**Q: Why is the Subscription Right price higher than the current trading price of Core's common stock on the OTC?**

**A.** The purchase price per Rights Offering Share assumes that current holders Existing Common Interests, after giving effect to the reorganization transactions described in the Core Scientific Bankruptcy Plan and related Disclosure Statement, will hold 1/25th the number of issued and outstanding shares of common stock of the reorganized Core upon emergence from bankruptcy of what they hold as of November 20, 2023 (such ratio is subject to change). The current share price of the Core's common stock listed on OTC US (CORZQ:US) as of November 20, 2023, does not reflect the reorganization transactions described in the Core Scientific Bankruptcy Plan and related Disclosure Statement, and is not expected to be indicative of reorganized Core's post-emergence share price. The Disclosure Statement and the Plan, each as amended and supplemented, is available at the Debtors' restructuring website at https://cases.stretto.com/corescientific/ for important additional information relating to Core, the Rights Offering and the risk factors to be considered.

**Q: May I sell or otherwise transfer my Subscription Rights if I do not want to participate in the Rights Offering?**

**A:** No. Subscription Rights or Oversubscription Rights may not be sold, transferred, assigned, pledged, hypothecated, participated, donated or otherwise encumbered or disposed of, directly or indirectly.

**Q: What documentation must I submit in order to exercise my Subscription Rights and when must it be submitted?**

**A:** In order to exercise your Subscription Rights, you must execute and submit via the online portal linked below the following documents:

- a Subscription Form; and
- an IRS form W-9 if you are a U.S. person or an appropriate IRS Form W-8 (for non-U.S. persons). These forms may be obtained from the IRS at its website: www.irs.gov.

The required subscription documentation must be delivered to, and received by Stretto, LLC (the "Subscription Agent") no later than 5:00 pm New York City time on December 11, 2023 (the end of the

---

[2] The number of Rights Offering Shares you purchase may increase depending on Equipment Lender Elections and (ii) the extent to which the estimated maximum amount of disputed claims become allowed in Class 8 (General Unsecured Claims) and Class 11 (Section 510 Clams) in the Chapter 11 cases. However, the total dollar investment amount will not change. Core's assumptions regarding Equipment Lender Elections and Core's estimated maximum amount of disputed claims are subject to change.

subscription period).

To access the E-Subscription Form Portal to complete and submit your forms, visit
https://cases.stretto.com/corescientific/ click on the "Submit Rights Offering Form" section of the website
and follow the instructions to submit your forms. Once you submit your forms, you will receive an e-mail
confirmation with a copy of the form.

If you hold your Existing Common Interests through a bank, broker, or other financial institution that
holds such interests in "street name" (your "**Subscription Nominee**"), you may have an earlier deadline to
submit the necessary documentation required by your bank, broker or other nominee in order to exercise
your Subscription Rights. You should contact your Subscription Nominee to confirm their procedural and
timing requirements to participate.

**Q: Do I have to exercise my Subscription Rights in full?**

**A:** No. Each Eligible Holder may exercise all or any portion of such holder's Subscription Rights and, if it
has fully exercised its Subscription Rights, its Oversubscription Rights.

**Q: When will the Rights Offering Shares be issued?**

A: The Rights Offering Shares will be issued at the time the Core Scientific Bankruptcy Plan is consummated,
which is expected to occur in early January 2023.

**Q: How will I receive my Rights Offering Shares that I purchase in the Rights Offering?**

**A:** If you hold your Existing Common Interests through a bank, broker, or other financial institution that
holds such interests in "street name" with your Subscription Nominee, the Rights Offering Shares will be
issued in "street name" through The Depository Trust Company. The Rights Offering Shares you purchase
must be held for your benefit by a Subscription Nominee that is a participant in DTC. You are urged to
consult with your Subscription Nominees to ensure the timely submission.

If you hold Existing Common Interests on the books and records of Core, your Rights Offering Shares will
be issued to you directly as a holder of record on the books and records of Core, which is administered by
Computershare, Core's transfer agent. You will not receive a stock certificate for those Rights Offering
Shares.

**Q: How will I receive the Unsubscribed Shares that I purchase in the Rights Offering?**

A: All Eligible Holders who purchased Unsubscribed Shares pursuant to the exercise of Oversubscription
Rights will receive their Unsubscribed Shares portion on the books and records of Core. Your
Unsubscribed Shares will be issued to you directly as a holder of record on the books and records of Core,
which is administered by Computershare, Core's transfer agent. You will not receive a stock certificate for
those Rights Offering Shares.

**Q: How and when do I pay for the purchase price of the Rights Offering Shares for which I am
subscribing in the Rights Offering?**

**A:** You must pay, or have paid, the total purchase price for your Rights Offering Shares by wire transfer to
an account of the Subscription Agent in accordance with the instructions set out in the Subscription Form.
The Subscription Form includes a procedure for calculating the total purchase price for your Rights
Offering Shares. The E-Subscription Form Portal where you complete and submit your forms

(https://cases.stretto.com/corescientific), also includes an excel workbook to assist you in calculating your total purchase price. Participants in the Rights Offering must assure that their payments are received no later than **5:00 pm New York City time on December 11, 2023**. The manner and deadline for Commitment Parties to pay the purchase price for their Rights Offering Shares is set forth in the Rights Offering Procedures and Backstop Commitment Letter.

If you hold your Existing Common Interests through a Subscription Nominee, you are urged to consult with your Subscription Nominees to ensure the timely submission. In many cases, you will be required to have sufficient funds in your brokerage account to pay for the purchase price of the Rights Offering Shares.

**Q: Are holders of Existing Common Interests that hold their Existing Common Interests with a Subscription Nominee required to tender their Existing Common Interests in order to participate in the Rights Offering?**

**A:** Yes. If you are exercise your Subscription Rights and your Existing Common Interests are held through DTC by your Subscription Nominee, you must direct your Subscription Nominee to tender your Existing Common Interests through DTC's Automated Tender Offer Program ("ATOP") into the appropriate option on DTC's ATOP platform by **5:00 pm New York City time on December 11, 2023**.

By instructing your Subscription Nominee to tender your Existing Common Interests through ATOP, you are authorizing your Subscription Nominee to exercise your Subscription Rights associated with the amount of Existing Common Interests that are tendered. Once tendered, your Existing Common Interests will be frozen from trading until the effective date of the Core Scientific Bankruptcy Plan, at which point you will receive your Rights Offering Shares.

**Q: If I exercise my Subscription Rights in the Rights Offering, may I withdraw the exercise?**

**A:** No. Once you exercise your Subscription Rights in the Rights Offering, your exercise will be irrevocable, unless the Rights Offering does not close.

**Q: What will happen if I do not participate in the Rights Offering?**

**A:** Each holder of Existing Common Interests is under no obligation to exercise its Subscription Rights. If a holder does not exercise its Subscription Rights, or if it attempts to exercise its Subscription Rights but fails to comply with the procedures so that its exercise is invalidated, it will still be eligible to receive the consideration payable to holders of Existing Common Interests under the Core Scientific Bankruptcy Plan.

**Q: Will I be told if I do not properly comply with the procedures for participants in the Rights Offering?**

**A:** Neither Core not the Subscription Agent will be under any obligation to inform a holder of Existing Common Interests that it has not properly complied with the procedures. If a participant has not complied with the procedures, it will not be allowed to purchase Rights Offering Shares, unless Core, in its sole discretion, determines to waive compliance in a particular case. Core is not required to grant any waivers, and may do so to a particular participant without granting similar waivers to other participants.

**Q: May I subscribe for more than my pro rata share of the Rights Offering Shares?**

A: Yes. There will be Oversubscription Rights in the Rights Offering. You will be granted an Oversubscription Right, which is the right to purchase additional Rights Offering Shares in the event that the

Rights Offering is not fully-subscribed. The total number of additional Rights Offering Shares you may elect to purchase pursuant to your Oversubscription Right may not exceed the total number of Rights Offering Shares offered in the Rights Offering minus the total number of Rights Offering Shares that you already elected to subscribe for. The Subscription Form includes a procedure for calculating the aggregate number of additional Rights Offering Shares in the event you exercise Oversubscription Rights and the additional purchase price that you are required to pay, based on the number of additional Rights Offering Shares for which you are electing to purchase.

**Q: How do I exercise my Oversubscription Rights to purchase additional Rights Offering Shares?**

**A:** In order to exercise your Oversubscription Rights, you must (in addition to having exercised your Subscription Rights in full and having taken the actions required in the Rights Offering Procedures), promptly upon returning your Subscription Form to the Subscription Agent, but in no event later **5:00 pm New York City time on December 11, 2023**, pay or have paid the aggregate purchase price for additional Rights Offering Shares (the "**Oversubscription Funding Amount**").

**Q: What if there is an insufficient number of Rights Offering Shares to satisfy the exercise of Oversubscription Rights?**

**A:** If there is an insufficient number of Rights Offering Shares to fully satisfy exercise of Oversubscription Rights by Eligible Holders, Eligible Holders who exercised their Oversubscription Rights will receive the available Rights Offering Shares *pro rata* based on the number of Rights Offering Shares each Eligible Holder has subscribed for under the Oversubscription Rights. Any excess subscription payment will be returned by wire transfer, without interest or deduction, promptly after the expiration of the Rights Offering. The Subscription Form includes a section for you to include your bank account information for any refund.

**Q: Will the Rights Offering Shares I purchase in the Rights Offering be freely transferable?**

**A.** Yes. The Rights Offering Shares purchased in the Rights Offering (other than with respect to Backstop Shares) will be issued under 1145 of the Bankruptcy Code and will be freely tradable under U.S. securities laws (however, persons who are "affiliates" of Core will hold "control securities" and will be subject to certain trading limitations under the securities laws).

**Q: Will the Rights Offering Shares that are issued in the Rights Offering be listed on any securities exchange?**

A: Core intends that its shares of common stock will be listed on NASDAQ following emergence from bankruptcy. However, there is no assurance that its shares of common stock will be listed, or if it is listed, the timing of when this will occur.

**Q: If I hold my Existing Common Interests through a Subscription Nominee who should I contact to participate?**

**A.** You should contact your Subscription Nominee to understand their timing and procedures required to participate. Some helpful links and contact information for popular retail brokerage firms are included below:

| Brokerage Firm | Contact Information |
| --- | --- |
| TD Ameritrade | Call 1-888-723-8504, option 1 |

| | https://invest.ameritrade.com/grid/p/site#r=jPage/cgi-bin/apps/u/InboxHome |
|---|---|
| Robinhood | https://robinhood.com/us/en/support/articles/how-to-contact-phone-support/  or  https://robinhood.com/contact |
| Fidelity | https://digital.fidelity.com/ftgw/digital/corporate-actions/ or https://www.fidelity.com/customer-service/contact-us |
| E*Trade | Call 1-800-387-2331 |
| Charles Schwab | https://client.schwab.com/Accounts/EReorg/eReOrgActiveAccountOffers.aspx<br><br>Call 1-800-435-4000 |
| Sofi Invest | Chat with Invest Support - https://www.sofi.com/chat/v1/web/sofi/?product=invest<br><br>Call 1-(855) 525-7634 |
| eToro | https://www.etoro.com/en-us/customer-service/ |

**Q: What should I do if I have other questions?**

**A:** If you have any questions about, or require assistance regarding, the procedure for exercising your Subscription Rights, please contact Subscription Agent, Stretto at:

Core Scientific, Inc., Rights Offering. c/o Stretto

410 Exchange, Suite 100

Irvine, California 92602

(888) 317-1417 (Domestic) or (929) 399-0959 (International)

CSRightsOffer@stretto.com

**QUESTIONS AND ANSWERS ABOUT THE CORE SCIENTIFIC RIGHTS OFFERING <u>FOR SUBSCRIPTION NOMINEES</u>**

**Q: Can Subscription Nominees submit bulk ATOP instructions?**

A: No, Subscription Nominees must tender Eligible Holders on a per-holder basis. Nominees may **<u>NOT</u>** submit bulk tender instructions. Each participant must present their own VOI number.

**Q: Can Subscription Nominees present proof of multiple subscription funding and registration information for our clients? (e.g., listing all participants' information in Excel)**

A: Yes, please contact the Subscription Agent, Stretto for further instruction at:

Core Scientific, Inc., Rights Offering. c/o Stretto

410 Exchange, Suite 100

Irvine, California 92602

(888) 317-1417 (Domestic) or (929) 399-0959 (International)

CSRightsOffer@stretto.com

**Q: Does the Subscription Agent have a contact information/phone number where a Subscription Nominee may verify wire instruction information?**

A: Yes, please call Michael Deboissiere or Jin Sul at (888) 317-1417 (Domestic) or (929) 399-0959 (International)

# **Exhibit P**

Case 22-90341   Document 1547   Filed in TXSB on 12/13/23   Page 149 of 153

# Equity Rights Offering
## *Economic Overview*

Not an offer to sell, a solicitation of an offer to buy, or a recommendation to invest in any security of Core Scientific, Inc.

The contemplated equity rights offering ("ERO") will provide the opportunity for existing shareholders of Core Scientific, Inc. ("Core") as of November 16, 2023 to invest *pro rata* up to $55 million in shares of reorganized Core ("ERO Shares"). The example on the right of this page assumes an illustrative party owns 1 million shares of Core.

**Key terms:**

> 30% discount to Plan Equity Value of $766mm implied by a $1.5 billion Plan Total Enterprise Value ("TEV")

**(A)** 0.01734[1] ERO Shares available for each current Core share you own

**(B)** $8.21710[1] subscription price to purchase one whole ERO Share

**You can also <u>oversubscribe</u> for any ERO Shares not subscribed for in the rights offering by other participants**

**To participate in the ERO, you must:**

> Review the Rights Offering Procedures and Subscription Form and decide (1) the number of ERO Shares you wish to subscribe for, and (2) if you wish to oversubscribe for any additional unsubscribed ERO Shares (if any)

> By 5:00 .p.m.(ET) on December 11, 2023

– Submit your completed Subscription Form via E-Subscription Portal and pay the total subscription cost via wire transfer to Subscription Agent (Stretto, Inc.). Delivery and Wire instructions included in Subscription Form

E-Subscription Form Portal: https://cases.stretto.com/corescientific

– If you hold your current Core shares with a bank or broker, work with them to have your shares tendered into DTC's Automated Tender Offer Program

**For reference, shareholders are <u>not required</u> to participate in the ERO; not participating in the ERO <u>will not</u> affect the distributions you will otherwise receive on account of your current Core shares**

*($ in millions, unless otherwise specified)*

| Equity Rights Offering Overview | |
|---|---|
| Plan TEV | $1,500 |
| (-) Maximum Net Debt at Emergence | (734) |
| **Minimum Plan Equity Value** | **$766** |
| (x) (1 - 30% ERO Discount) | 70.0% |
| **ERO Discounted Equity Value** | **$536** |
| (+) Maximum Net Debt at Emergence | 734 |
| **ERO Discounted Enterprise Value** | **$1,270** |

| Illustrative Example | | Offer[1] | Pre-Exit[2] |
|---|---|---|---|
| Shares Owned | | 1,000,000 | 1,000,000 |
| (x) ERO Subscription Rights Factor | **(A)** | 0.01734 | 0.43350 |
| **ERO Shares Purchased** | | **17,340** | **433,500** |
| (x) Purchase Price per Share | **(B)** | $8.21710 | $0.32868 |
| **Total Cost of Shares Purchased** | | **$142,485**[3] | **$142,485** |

Note: If you have any additional questions, please refer to the Subscription Agent at (888) 317-1417 (domestic toll-free) or via e-mail at csrightsoffer@stretto.com.
(1) Information assumes that, after giving effect to the reorganization described in the Plan and Disclosure Statement, existing equity will hold 1/25th the number of shares post-emergence as they do on November 20, 2023 (such ratio is subject to change). Core's current share price (CORZQ:US) does not reflect the reorganization and is not expected to be indicative of reorganized Core's post-emergence share price.
(2) Pre-exit information assumes existing equity holds same number of shares post-emergence as they do on November 20, 2023.
(3) While the number of ERO Shares you purchase may increase depending on (i) treatment elections by Core Scientific's miner equipment lenders ("Equipment Lender Elections") and (ii) the extent to which the estimated maximum amount of disputed claims become allowed in Class 8 (General Unsecured Claims) and Class 11 (Section 510 Claims), the total dollar investment amount will not change. The Company's assumptions regarding Equipment Lender Elections and the Company's estimated maximum amount of disputed claims are subject to change.

1

# **<u>Exhibit Q</u>**



**Exhibit Q**
Served Via First-Class Mail

| Name | Address 1 | Address 2 | City | State | Zip |
|---|---|---|---|---|---|
| Jonathan Mandujano-Nunez | Address Redacted | | | | |
| Plant Tours Communications Company | 6201 Fairview Rd | Ste 320 | Dalton | GA | 30721-6411 |

In re: Core Scientific, Inc., *et al.*
Case No. 22-90341 (DRJ)

Debtors' Exhibit No. 21
Page 151 of 153

# **Exhibit R**



**Exhibit R**
Served Via First-Class Mail

| Name | Address |
|------|---------|
| Miz Ul Hasan Khan | Address Redacted |
| Peter Engler | Address Redacted |

In re: Core Scientific, Inc., *et al.*
Case No. 22-90341 (DRJ)

Page 1 of 1