SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

ONE MANHATTAN WEST
NEW YORK, NY 10001
————
TEL: (212) 735-3000
FAX: (212) 735-2000
www.skadden.com

FIRM/AFFILIATE OFFICES
————
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
WASHINGTON, D.C.
WILMINGTON
————
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MUNICH
PARIS
SÃO PAULO
SEOUL
SHANGHAI
SINGAPORE
TOKYO
TORONTO

DIRECT DIAL
+1 (212) 735-2322
DIRECT FAX
+1 (917) 777-2322
EMAIL ADDRESS
PAUL.SCHNELL@SKADDEN.COM

DIRECT DIAL
+1 (312) 407-0549
DIRECT FAX
+1 (312) 407-8641
EMAIL ADDRESS
RON.MEISLER@SKADDEN.COM

<u>CONFIDENTIAL</u>

As of December 26, 2022 or such later date
indicated on the signature pages hereto

The Rudolph Family Trust

Douglas Abrams

Jay Deutsch

Todd Deutsch

Mark Beaven

Lukasz Gottwald

**SASMF EXHIBIT 06**
**1 of 50**

Ad Hoc Group of Core Scientific, Inc. Equity Holders
As of December 26, 2022
Page 2



Eddie Griffin

Douglas Wall
W5 Family Trust

Grady Roberts

Allane Ray O'Neil

Jacob Novak

Two Trees Capital Limited BVI Custodian
CSPB
Attn.: Michael Sampoerna

David M. Talla
Jared Talla
Brett Talla
Mark Spino
David Askew
John T. Rifenbark
George Wilson

Joe Judson

Wesley Hoaglund

Weston Adams

2

Ad Hoc Group of Core Scientific, Inc. Equity Holders
As of December 26, 2022
Page 3



Kevin Turner

Stefan Amling

Brent Berge

JUSTIN B KALB TRUST

Randall B. Hale

Matt Stringfellow

Alpha Bravo Holding Company Inc.

Two Seas Capital LP

Dear Sirs:

        We are pleased that (a) the Rudolph Family Trust, (b) Douglas Abrams, (c) Jay Deutsch, (d) Todd Deutsch, (e) Eddie Griffin, (f) Mark Beaven, (g) Lukasz Gottwald, (h) Two Trees Capital Limited BVI Custodian CSPB, (i) Douglas Wall, (j) W5 Family Trust, (k) Grady Roberts, (l) Allane Ray O'Neil, (m) Jacob Novak, (n) David M. Talla, (o) Jared Talla, (p) Brett Talla, (q) Mark Spino, (r) David Askew, (s) John T. Rifenbark, (t) George Wilson, (u) Kevin Turner, (v) Joe Judson, (w) Brent Berge, (x) Wesley Hoaglund, (y) Randall Hale, (z) Weston Adams, (aa) WS-Oaxaca LLC, (bb) Bitrockett LLC, (cc) Alpha Bravo Holding Company Inc., (dd) Stefan Amling, (ee) Matt Stringfellow, (ff) JUSTIN B KALB TRUST, and (gg) Two Seas Capital LP, collectively holding approximately 18.4% of the outstanding equity of Core Scientific, Inc. as members of an ad hoc group of equity holders of Core Scientific, Inc. (the "Group Clients") are engaging Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden Arps" or the "Firm") in connection with the Group Clients' efforts to have an official committee of equity holders appointed by the United States Trustee in the chapter 11 cases of Core Scientific, Inc. ("Core Scientific") and certain of its subsidiaries and affiliates (collectively with Core Scientific,

SASMF EXHIBIT 06
3 of 50

Ad Hoc Group of Core Scientific, Inc. Equity Holders
As of December 26, 2022
Page 4

the "Debtors") that are being administered as *In re Core Scientific, inc., et al.*, Case No. 22-90341 (DRJ) (Bankr. S.D. Tex.) (the "Chapter 11 Cases") (such engagement, the scope of which is set forth below, the "Preliminary Engagement").

## Scope of Preliminary Engagement

As described to us, the Preliminary Engagement involves advising and representing the Group Clients solely with respect to seeking the appointment of an official committee of equity holders in the Chapter 11 Cases (a) by the United States Trustee, or (b) in the event that the U.S. Trustee expressly declines to appoint an official committee of equity holders, by the Bankruptcy Court. The services to be provided by the Firm in connection with the Preliminary Engagement will be limited to telephonic and written (including e-mail) correspondence to the U.S. Trustee and Core Scientific, drafting and filing pleadings and appearing in the bankruptcy court solely (i) to pursue appointment of an official equity committee and (ii) to satisfy Bankruptcy Rule 2019 disclosures, but the parties agree that the Firm will not draft or file any other pleadings or otherwise engage in any evidentiary litigation in the Chapter 11 Cases without the prior written agreement (which may be in the form of e-mail) of the Group Clients and the Firm, at which the point the Preliminary Engagement will evolve into a broader representation (the "Engagement"), and the replenishment of any retainer (on the terms described below). In connection with the Preliminary Engagement, the Group Clients shall provide the Firm only with limited confidential information to the extent necessary to achieve the objective of the Preliminary Engagement.

In the event that an official committee of equity holders is appointed in the Chapter 11 Cases (the "Official Committee"), each of the Group Clients agrees that the Preliminary Engagement and our attorney-client relationship shall automatically terminate immediately upon such appointment and that the Firm may pursue representation of the Official Committee or any other representation as described more fully below. In the event that the Official Committee has not been appointed in the Chapter 11 Cases by February 1, 2023, and there is no agreed upon Engagement, then the Group Clients agree that the Preliminary Engagement and our attorney-client relationship will automatically terminate on February 1, 2023.

In each of the scenarios set forth in the preceding paragraph in which the Preliminary Engagement terminates, Skadden will owe no further obligation to the Group Clients beyond that which is owed to a former client under the applicable New York Rules of Professional Conduct (the "NY Rules").

Because this involves a joint representation, certain special provisions and agreements apply, which are detailed below. These same terms would apply to the Engagement. As to Group Clients which are corporations, partnerships, limited liability companies or trusts, the Preliminary Engagement is to represent such entities and not the individual directors, officers, partners, members, managers, employees, shareholders, trustees or beneficiaries of such

4

Ad Hoc Group of Core Scientific, Inc. Equity Holders
As of December 26, 2022
Page 5

entities. However, we anticipate that in the course of the Preliminary Engagement (and the Engagement, as applicable) we may provide information or advice to directors, officers, partners, members, managers, employees, or trustees in their corporate or other similar capacities.

## Preliminary Engagement Personnel

Paul T. Schnell, Ron E. Meisler and Albert L. Hogan will be responsible for and actively involved in the Preliminary Engagement (and Engagement, as applicable). Additional attorneys staffed on the Preliminary Engagement include Christopher M. Dressel (Restructuring) and Jennifer Madden (Restructuring), and those in other practice areas will be added to on an as-needed basis. Any significant additions to staffing will be discussed with you in advance.

## Fees and Expenses

Our fees will be based primarily on the time involved in the Preliminary Engagement and our internal time charges. The range of our current hourly time charges is $625 to $1,390 for associates, $1,465 to $1,665 for counsel, and $1,725 to $2,195 for partners. As part of the Firm's ordinary business practices, hourly time charges are periodically reviewed and revised.

As to billing, we will submit statements for services rendered for payment on a periodic basis and would anticipate payment promptly after receipt. In addition, our billing statements will include charges and disbursements incurred by us in the course of performing legal services. These items will be billed in accordance with our standard practice as described in the attached summary (see Annex A), which may be periodically updated. Each of the Group Clients agrees to pay his/her/its ratable share of the fees, charges and disbursements reflected on the statements promptly after receipt on a several and not joint basis.

An initial retainer has been paid to the Firm in the amount of $80,000 which will be applied to our professional fees, charges and disbursements (the "Initial Retainer"). Each of the Group Clients listed on Schedule I agrees to pay his/her/its ratable share of the Initial Retainer as set forth on Schedule I on a several and not joint basis. To the extent fees and expenses incurred as of January 16, 2023 exceed the Initial Retainer, the Group Clients listed on Schedule I agree to replenish the Initial Retainer and pay any fees incurred in excess of the Initial Retainer, which excess amount is estimated to be approximately $45,000. Upon written request based upon expected feedback from the U.S. Trustee, an additional retainer will be paid to the Firm in the amount of $150,000 which will be applied to our professional fees, charges and disbursements incurred on or after January 17, 2023 (the "Additional Retainer"). Each of the Group Clients listed on Schedule II agrees to pay his/her/its ratable share of the Additional Retainer as set forth on Schedule II on a several and not joint basis. Notwithstanding anything to the contrary herein, ▇▇▇▇▇▇▇ shall not be required to pay more than $100,000 in the aggregate for his share of fees, charges, disbursements or the Additional Retainer without his express written consent. All other Group Clients acknowledge and agree to the cap applicable to

5

Ad Hoc Group of Core Scientific, Inc. Equity Holders
As of December 26, 2022
Page 6

████████ and agree to pay their pro rata share after the cap, as if ████ is not a Group Client. Prior to the exhaustion of the $150,000 retainer payment, we will apprise the Group Clients of the estimated costs of continuing to pursue the appointment of an equity committee and we will provide the Group Clients with the opportunity to consider permissible alternatives to reduce costs, including, among other things, the withdrawal of any pleading seeking the appointment of a committee, and terminate the Preliminary Engagement.

All retainer payments will be held in a Firm operating account unless otherwise agreed. To the extent that the retainer amount exceeds our fees, charges and disbursements upon the completion of the Preliminary Engagement, we will refund any unused portion on a pro rata basis. Our periodic statements will indicate the amount remaining of unapplied retainer, if any. Promptly after receipt of each statement, you will pay to the Firm an amount which will replenish and maintain an ongoing unused retainer, subject to refund, of $150,000, after payment (including through application of any theretofore unapplied retainer) of all outstanding statements for fees, charges and disbursements. Each of the Group Clients agrees to pay his/her/its ratable share of the any replenishment of the retainer on a several and not joint basis.

All references to fees, charges and disbursements are exclusive of any applicable VAT, GST, sales, withholding or similar tax imposed by relevant tax authorities, and such VAT, GST, sales, withholding or similar tax will be charged by us in addition to our fees, charges and disbursements, as applicable, or paid directly by the Group Clients where applicable.

If a dispute develops about our fees, you may be entitled under Part 137 of the Rules of the Chief Administrator of the New York Courts to arbitration of that dispute if it involves more than one thousand and less than fifty thousand dollars.

## Waivers and Related Matters

The Firm represents a broad base of clients on a variety of legal matters. Accordingly, absent an effective conflicts waiver, conflicts of interest may arise that could adversely affect your ability and the ability of other clients of the Firm to choose the Firm as its counsel and preclude the Firm from representing you or other clients of the Firm in pending or future matters. Given that possibility, we wish to be fair not only to you, but to our other clients as well. Accordingly, this letter will confirm our mutual agreement that the Firm may represent other present or future parties on matters other than those for which it had been or then is engaged by the Group Clients, whether or not on a basis adverse to the Group Clients or any of their present or future affiliates, including in litigation, legal or other proceedings or matters, which are referred to as "Permitted Adverse Representation." These terms shall apply to both the Preliminary Engagement and the Engagement, to the extent it proceeds.

In furtherance of this mutual agreement, the Group Clients agree that they will not for themselves or any other party assert the Firm's representation of the Group Clients or any of their present or future affiliates, either in its representation in the Preliminary Engagement or in

Ad Hoc Group of Core Scientific, Inc. Equity Holders
As of December 26, 2022
Page 7

any other matter in which the Group Clients retain the Firm (including the Engagement), as a basis for disqualifying the Firm from representing another party in any Permitted Adverse Representation and agree that any Permitted Adverse Representation does not constitute a breach of any duty owed by the Firm. Examples of Permitted Adverse Representation would include, without limitation, representing a client over which the Group Clients might be seeking to acquire influence or control, or from which the Group Clients may wish to buy assets, representing a client regarding its interest at the time in acquiring influence or control over an entity in which the Group Clients then have a similar interest and representing a debtor, creditor, or any other client in a judicial proceeding under the Bankruptcy Code or similar legislation in a matter initiated by such client that is adverse to the Group Clients. The waiver provided for in this and the preceding paragraph includes the Firm's ongoing representation of BlackRock Financial Management Inc. and its affiliates, Apollo Management, L.P. and its affiliates, Ares Management LLC and its affiliates and Massachusetts Mutual Life and its affiliates in matters unrelated to the Preliminary Engagement or the Chapter 11 Cases.

The Group Clients further agree to waive any conflict of interest, to the fullest extent permitted by applicable ethics rules, arising from or relating to (a) the Firm's representation, post-Preliminary Engagement, of the official committee of equity holders in the Chapter 11 Cases if one is so appointed; or (b) the Firm's representation of any party in the Chapter 11 Cases, including a buyer or plan sponsor (and in such circumstances the Group Clients understand and expressly waive any conflict regarding the consideration proposed by such buyer or plan sponsor) in the event that (x) the Firm is not retained by the official committee of equity holders (if one is appointed) in the Chapter 11 Cases, (y) the United States Trustee declines to appoint an official equity committee, or (z) the Preliminary Engagement otherwise terminates as provided herein. The Group Clients agree that this paragraph and the two preceding ones do not expand the scope of the Preliminary Engagement (or the Engagement) to encompass affiliates of the Group Clients unless expressly agreed to by the Firm.

The Group Clients and the Firm have reached the foregoing mutual agreements with knowledge of (i) the attached Rules of Professional Conduct (the "California Rules," enclosed with this letter as Annex B (after full disclosure to the Company of the actual and reasonably foreseeable adverse effects) applicable to members of the State Bar of California and (ii) the Company's recognition that as a result of the Firm's representation of other present or future clients, one or more of the California Rules or other rules relating to the Firm's acting in these capacities may be applicable. It is the mutual agreement of the Firm and the Company that the Company consents to the Firm's representation of such other clients (subject to the limitation described above) and that it expressly waives any claim of conflict of interest or breach of duty on the part of the Firm arising from any such representation.

Although each of the Group Clients understands that it has the right to retain separate counsel, each of them also believes that a joint representation is currently the most appropriate option for them. In order to obtain joint representation by the Firm, each of the

**SASMF EXHIBIT 06**
**7 of 50**

Ad Hoc Group of Core Scientific, Inc. Equity Holders
As of December 26, 2022
Page 8

Group Clients therefore acknowledges that it understands and accepts the following considerations and risks associated with a joint representation:

(a)     There are significant advantages to presenting a common legal front, including the advantage of lessening overall costs.  Common representation, however, requires that all participating clients take common positions as to all issues.  As counsel to a common group of clients, the Firm cannot take inconsistent positions for various clients.  Accordingly, there is the potential that the individual interests of a Group Client on a particular issue may not be the same as the interests of the Group Clients as a whole.  In that circumstance, the Firm, as counsel for the Group Clients, will have to take the position that will be in the best interest of the group as a whole.  The Firm will, at all times, act in the best interest of the group as a whole and in keeping with its professional responsibilities.

(b)     As a general matter, communications between an individual client and its counsel are privileged and confidential.  In a joint representation, however, the Firm will be under an obligation to keep all of our Group Clients fully informed of the facts material to their representation.  Accordingly, consistent with our obligation to represent all of the Group Clients, there is the possibility that the Firm will be required to disclose to the other Group Clients information that an individual client may consider to be confidential.  In addition, in the event a dispute were to arise between two or more of the Group Clients, any information conveyed to the Firm regarding matters of common interest would not be privileged and confidential in any proceeding filed to resolve such a dispute.

(c)     In the event that a conflict of interest were to arise between two or more of the Group Clients, the Firm would have to consider recommending our withdrawal from the representation.  Each of the Group Clients therefore acknowledges and agrees that if the Firm determines that it needs to withdraw from representing any member of the group: (a) the Firm may continue to represent any or all of the remaining members of the group at its sole option; (b) any disclosures made to the Firm prior to its withdrawal may be used in the representation of the remaining group member(s); and, (c) the group member from whose representation the Firm has withdrawn shall retain separate counsel at its own expense, and shall not seek to disqualify the Firm from continuing to represent the remaining Group Clients.  If the Firm withdraws from representing a member of the group, the Firm would refund that portion of the unused retainer that is in excess of that group member's ratable share of accrued amounts then owing, and the ratable portion of each remaining Group Client shall increase for the fees, charges and disbursements that accrue after such withdrawal.  If there is a deficiency in such group member's ratable portion of the retainer at the time of withdrawal, the group member agrees to pay its ratable share of the deficiency.

With respect to parties affiliated with any of the Group Clients generally, including parties owned by any of the Group Clients and parties that hold direct or indirect interests in any of the Group Clients, it is our understanding that the Firm is not being asked to

**SASMF EXHIBIT 06**
**8 of 50**

Ad Hoc Group of Core Scientific, Inc. Equity Holders
As of December 26, 2022
Page 9

provide, and will not be providing, legal advice to, or establishing an attorney-client relationship with, any such affiliated party or person in his, her, or its individual capacity and will not be expected to do so unless the Firm has been asked and has specifically agreed to do so. Further, it is our understanding that if the Firm acts as counsel for any other entity as to which any of the Group Clients then owns completely, directly or indirectly, all of the common stock or similar voting interest (other than directors' qualifying shares, if any), the mutual agreement reflected in this letter, including the waivers, would apply to that entity as well. Upon our request, such Group Client will take any action the Firm concludes is needed to confirm the application of this letter to that entity or entities.

In the event any of the Group Clients is acquired or is otherwise subject to a change in control (including by a person or group becoming a controlling affiliate of such Group Client) after the date hereof, the Firm will not be deemed (i) to represent, or provide or have provided legal advice to, the acquiring entity or such controlling affiliate (or, subject to clause (ii) below, to any affiliate of any such acquiring entity or controlling affiliate) or to establish an attorney-client relationship with such entities or affiliates and (ii) except as otherwise required by applicable law or at the election of the Firm, to continue to represent such Group Client or any of its controlled affiliates unless and until both such Group Client and the Firm reaffirm this letter. Notwithstanding any termination of the attorney-client relationship, the other provisions of this letter will continue in effect.

Our representation of the Group Clients is premised on the Firm's adherence to its professional obligation not to disclose any confidential information or to use it for another party's benefit without the Group Clients' consent. Such obligations are subject to certain exceptions, including the laws, rules and regulations of certain jurisdictions relating to money laundering and terrorist financing. Under relevant circumstances, the Firm may be under a duty to disclose information to relevant governmental authorities. The Firm may be prohibited from informing you that such a disclosure has been made or the reasons for such disclosure, and we may have to cease work for you for a period of time and not be able to inform you of the reason. Provided that the Firm acts in the manner set forth in the first sentence of this paragraph and subject to the exceptions noted above, the Group Clients would not for themselves or any other party assert that the Firm's possession of such confidential information (if any), even though it may relate to a matter for which the Firm is representing another client or may be known to someone at the Firm working on the matter, (a) is a basis for disqualifying the Firm from representing another of its clients in any matter in which the Group Clients or any other party have an interest; or (b) constitutes a breach of any duty owed by the Firm. In addition, the Firm's failure to share with the Group Clients any confidential information received from another client will not be asserted by the Group Clients as constituting a breach of any duty owed to the Group Clients by the Firm, including any duty regarding information disclosure.

If the Firm receives from any person or entity a subpoena or request for information that is within our custody or control or the custody or control of our agents or

SASMF EXHIBIT 06
9 of 50

Ad Hoc Group of Core Scientific, Inc. Equity Holders
As of December 26, 2022
Page 10

representatives, we will, to the extent permitted by applicable law, advise the Group Clients before responding so that the Group Clients have the opportunity to intervene or interpose any objections. Should the Group Clients object to the provision of such information, the Firm may thereafter provide such information only to the extent authorized by the Group Clients or required by a court or other governmental body of competent jurisdiction. The Group Clients agree to pay the Firm for any services rendered and charges and disbursements incurred in responding to any such request at the Firm's customary billing rates and pursuant to the Firm's charges and disbursements policies.

The Group Clients agree that the Firm may disclose the fact of the Preliminary Engagement (and the Engagement, as applicable) and related general information to the extent that such disclosure does not convey any confidential or non-public information and it is not adverse to the Group Clients' interests.

## Client Identification Procedures and Regulatory Compliance

Many jurisdictions have adopted or are in the process of changing or creating anti-money laundering, counter-terrorist financing, embargo, trade sanctions or similar policies or laws. As part of the Firm's responsibility for compliance with such laws, rules, regulations or policies, the Firm is obliged to take detailed steps to verify the identity of our clients and sources of payment. Accordingly, prior to commencement of work on the Preliminary Engagement we will have already requested, or will be requesting shortly, that you provide us with required identification documents. It is also necessary for us to reserve the right to request additional information believed necessary, advisable or appropriate to verify identity and/or to ensure the Firm's compliance with applicable laws, rules, regulations, best practices and anti-money laundering matters from time to time. A delay or failure to provide information required for verification purposes may prevent us from commencing or require us to suspend work on the Preliminary Engagement.

## Prevention of Criminal Facilitation of Tax Evasion

Many jurisdictions criminalize the evasion of tax and its facilitation. As a condition of the Preliminary Engagement (and the Engagement, as applicable), you represent to us that you will not request or otherwise have the Firm or any third party involved in the Preliminary Engagement (or the Engagement, as applicable) take any action, or desist from taking any action, in order to facilitate tax evasion.

## Data Protection

The Firm uses the information you provide for the provision of legal services to you and for related purposes, including updating client records, analysis to help the Firm manage its practice, statutory returns, legal and regulatory compliance and, subject to the Firm's ethical obligations, other legitimate business purposes. The Firm's work for you may also involve

Ad Hoc Group of Core Scientific, Inc. Equity Holders
As of December 26, 2022
Page 11

providing information to third parties such as expert witnesses and other professional advisers in order to represent your interests most effectively. The Firm's use of the information you provide is subject to your instructions, to the Firm's duty of confidentiality, and to applicable data protection and data privacy laws and regulations. If and to the extent that any such law or regulation, such as the E.U. General Data Protection Regulation ("GDPR"), applies to the Preliminary Engagement (and the Engagement, as applicable), the Firm will abide by those applicable laws and regulations in processing personal data in the course of the Firm's work with you, including putting in place security measures to protect personal data. Where the work the Firm does for you involves the processing of personal data, you acknowledge that, unless the Firm agrees otherwise in particular circumstances, the Firm processes that personal data as an independent controller, not as a processor on your behalf nor as a joint controller with you, as those terms are defined in the GDPR, and that you may have a right of access to the personal data the Firm holds about you where the GDPR applies. Subject to the Firm's duties of confidentiality and the provisions of this paragraph, the Firm may transfer and process personal data that you disclose to the Firm or information that the Firm generates on the basis of personal data that you disclose to the Firm, including the transfer of such personal data or information to jurisdictions where we have offices, both within and outside the United States, as set forth in the Privacy Statement available on www.skadden.com. The Firm may from time to time send you information which the Firm thinks might be of interest to you. If you do not wish to receive that information, please notify the Firm in writing.

### Client Files and Retention

In the course of our representation of you with respect to a matter, we shall maintain a physical file relating to the matter. In the file we may place materials received from you with respect to the matter and other materials, including correspondence, memos, filings, drafts, closing sets, pleadings, deposition transcripts, exhibits, physical evidence, expert's reports, and other items reasonably necessary to your representation (the "Client File"). The Client File shall be and will remain your property. We may also place in the file documents containing our attorney work product, mental impressions or notes, and drafts of documents ("Work Product"). You agree that Work Product shall be and remain our property. In addition, electronic records (except those to be proffered to you at the conclusion of a matter as described below) such as e-mail and documents prepared on our word processing system shall not be considered part of your Client File unless it has been printed in hard copy and placed in your physical file, and does not constitute Work Product. You agree that we may adopt and implement reasonable retention policies for such electronic records and that we may store or delete such records in our discretion.

At the conclusion of a matter (which shall be defined as the time that our work on any matter subject to this letter has been completed), you shall have the right to take possession of the original of your Client File (but not including the Work Product). We will be entitled to make physical or electronic copies if we choose. You also agree, upon our proffer, at the

SASMF EXHIBIT 06
11 of 50

Ad Hoc Group of Core Scientific, Inc. Equity Holders
As of December 26, 2022
Page 12

conclusion of a matter (whether or not you take possession of the Client File), to take possession of any and all original contracts, stock certificates, deeds and other such important documents or instruments that may be in the Client File, without regard to format, and we shall have no further responsibility with regard to such documents or instruments.

If you do not take possession of the Client File at the conclusion of a matter, we will store such file in accordance with our standard retention procedures for a period of at least seven (7) years (the "Retention Period"). Such retention (or maintenance of accounting or other records related to our representation) shall not constitute or be deemed to indicate the presence of a continuing attorney-client relationship. During the time that we store the Client File, you shall have the right to take possession of it at any time that you choose. Subject to the foregoing, we may dispose of the Client File without further notice or obligation to you.

*       *       *

The provisions of this letter will continue in effect, including if the Firm's representation of the Group Clients was ended at your election (which, of course, the Group Clients would be free to do at any time) or by the Firm (which would be subject to ethical requirements). In addition, the provisions of this Engagement Letter will apply to future engagements of the Firm by the Group Clients unless we mutually agree otherwise.

The Preliminary Engagement is limited to seeking the appointment of an official committee of equity holders in the Chapter 11 Cases based on the terms described above. At the time such matter is completed or the Preliminary Engagement is terminated, each in accordance with the terms of this Engagement Letter, if we are not at such time engaged to represent you in the Engagement or one or more other matters, our attorney-client relationship will be deemed terminated whether or not we send you a letter to confirm such termination. If you thereafter desire to engage us for a further matter that we are able to and determine to undertake, including in the Engagement, this letter (and any applicable supplemental writing for such matter) would then become effective.

This agreement and any claim, controversy or dispute arising under or relating to this agreement, the relationship of the parties, and/or the interpretation and enforcement of the rights and duties of the parties shall be governed by, and construed in accordance with, the laws of the State of New York. For purposes of this letter, references to Skadden Arps or the Firm include our affiliated law practice entities.

If this letter is satisfactory, please sign a copy and return it to me. You may wish to review it with your counsel.

**SASMF EXHIBIT 06**

**12 of 50**

Ad Hoc Group of Core Scientific, Inc. Equity Holders
As of December 26, 2022
Page 13

       Again, we very much appreciate the opportunity to work with the ad hoc group of equity holders of Core Scientific and look forward to doing so.

       With best regards.

                Sincerely,

                /s/ Paul T. Schnell
                Paul T. Schnell

                /s/ Ron E. Meisler
                Ron E. Meisler

AGREED AND ACKNOWLEDGED BY THE
AD HOC GROUP OF CORE SCIENTIFIC, INC. EQUITY HOLDERS

THE RUDOLPH FAMILY TRUST          Todd Deutsch

By: Laurence Rudolph
Title: Trustee

Douglas Abrams          Jay Deutsch

Dated: As of December 26, 2022

Enclosures

☐
AGREED AND ACKNOWLEDGED BY THE
AD HOC GROUP OF CORE SCIENTIFIC, INC. EQUITY HOLDERS

Mark Beaven          Eddie Griffin

_____
Number of shares of common stock: _____

Lukasz Gottwald

_____
Number of shares of common stock: _____

Dated: As of December 26, 2022

Enclosures☐
*[Signature Page to Ad Hoc Equity Group of Core Scientific / Skadden Engagement Letter]*

AGREED AND ACKNOWLEDGED BY THE
AD HOC GROUP OF CORE SCIENTIFIC, INC. EQUITY HOLDERS

TWO TREES CAPITAL LIMITED BVI
CUSTODIAN CSPB

_____
By: Michael Sampoerna
Title: Director

Dated: As of December 26, 2022

Enclosures☐
*[Signature Page to Ad Hoc Equity Group of Core Scientific / Skadden Engagement Letter]* **SASMF EXHIBIT 06**

**14 of 50**

AGREED AND ACKNOWLEDGED BY THE

AGREED AND ACKNOWLEDGED BY THE
AD HOC GROUP OF CORE SCIENTIFIC, INC. EQUITY HOLDERS

THE RUDOLPH FAMILY TRUST            Todd Deutsch

_____

By:
Title:

Douglas Abrams                      Jay Deutsch

Dated: As of December 26, 2022

Enclosures

*[Signature Page to Ad Hoc Equity Group of Core Scientific / Skadden Engagement Letter]*

**SASMF EXHIBIT 06**

**15 of 50**

**AGREED AND ACKNOWLEDGED BY THE**
**AD HOC GROUP OF CORE SCIENTIFIC, INC. EQUITY HOLDERS**

THE RUDOLPH FAMILY TRUST                              Todd Deutsch

_____
By:
Title:
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓        ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Douglas Abrams                                        Jay Deutsch

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓        ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Dated: As of December 26, 2022

Enclosures

**SASMF EXHIBIT 06**
**16 of 50**

AGREED AND ACKNOWLEDGED BY THE
AD HOC GROUP OF CORE SCIENTIFIC, INC. EQUITY HOLDERS

Mark Beaven                                    Eddie Griffin

Lukasz Gottwald

_____
Number of shares of common stock: _____

Dated: As of December 26, 2022

Enclosures

AGREED AND ACKNOWLEDGED BY THE
AD HOC GROUP OF CORE SCIENTIFIC, INC. EQUITY HOLDERS

Mark Beaven

Eddie Griffin

_____

Number of shares of common stock: _____

Lukasz Gottwald

_____

Number of shares of common stock: _____

Dated: As of December 26, 2022

Enclosures

*[Signature Page to Ad Hoc Equity Group of Core Scientific / Skadden Engagement Letter]*

AGREED AND ACKNOWLEDGED BY THE
AD HOC GROUP OF CORE SCIENTIFIC, INC. EQUITY HOLDERS

TWO TREES CAPITAL LIMITED BVI
CUSTODIAN CSPB

By: Michael Sampoerna
Title: Director

Dated: As of December 26, 2022

Enclosures

AGREED AND ACKNOWLEDGED BY THE
AD HOC GROUP OF CORE SCIENTIFIC, INC. EQUITY HOLDERS

W5 Family Trust

By: Douglas Wall
Title: Trustee

Dated: As of January 17, 2023

Enclosure

AGREED AND ACKNOWLEDGED BY THE
AD HOC GROUP OF CORE SCIENTIFIC, INC. EQUITY HOLDERS

By: Douglas Wall

Dated:  As of January 17, 2023

Enclosures

AGREED AND ACKNOWLEDGED BY THE
AD HOC GROUP OF CORE SCIENTIFIC, INC. EQUITY HOLDERS

By: Grady Roberts

Dated:  As of January 17, 2023

Enclosures

**AGREED AND ACKNOWLEDGED BY THE**
**AD HOC GROUP OF CORE SCIENTIFIC, INC. EQUITY HOLDERS**

By: Allane Ray O'Neil

Dated:  As of January 17, 2023

Enclosures

AGREED AND ACKNOWLEDGED BY THE
AD HOC GROUP OF CORE SCIENTIFIC, INC. EQUITY HOLDERS

By: Jacob Novak

Dated:  As of January 17, 2023

Enclosures

AGREED AND ACKNOWLEDGED BY THE
AD HOC GROUP OF CORE SCIENTIFIC, INC. EQUITY HOLDERS

By: George Wilson

Dated:  As of January 17, 2023

Enclosures

AGREED AND ACKNOWLEDGED BY THE
AD HOC GROUP OF CORE SCIENTIFIC, INC. EQUITY HOLDERS

By David Askew

Dated:  As of January 17, 2023

Enclosures

AGREED AND ACKNOWLEDGED BY THE
AD HOC GROUP OF CORE SCIENTIFIC, INC. EQUITY HOLDERS

By: John T. Kitenbark

Dated:  As of January 17, 2023

Enclosures

AGREED AND ACKNOWLEDGED BY THE
AD HOC GROUP OF CORE SCIENTIFIC, INC. EQUITY HOLDERS

By: David M. Talla

Dated:  As of January 17, 2023

Enclosures

AGREED AND ACKNOWLEDGED BY THE
AD HOC GROUP OF CORE SCIENTIFIC, INC. EQUITY HOLDERS

By: Mark Spino

Dated:  As of January 17, 2023

Enclosures

SAMPLE EXHIBIT 06

29 of 50

AGREED AND ACKNOWLEDGED BY THE
AD HOC GROUP OF CORE SCIENTIFIC, INC. EQUITY HOLDERS

By: Jared Talla

Dated:  As of January 17, 2023

Enclosures

AGREED AND ACKNOWLEDGED BY THE
AD HOC GROUP OF CORE SCIENTIFIC, INC. EQUITY HOLDERS

By: Brett Talla

Dated:  As of January 17, 2023

Enclosures

AGREED AND ACKNOWLEDGED BY THE
AD HOC GROUP OF CORE SCIENTIFIC, INC. EQUITY HOLDERS

By: Kevin Turner

Dated: As of January 17, 2023

Enclosures

AGREED AND ACKNOWLEDGED BY THE
AD HOC GROUP OF CORE SCIENTIFIC, INC. EQUITY
HOLDERS

By: Joe Judson

Dated:  As of January 17, 2023

Enclosures
    1"="1" "" "2"

AGREED AND ACKNOWLEDGED BY THE
AD HOC GROUP OF CORE SCIENTIFIC, INC. EQUITY HOLDERS

BRENT CHRISTOPHER BERGE 2012 TRUST
DATED 12-24-12

By: Brent Berge
Title: Trustee

Dated:  As of January 17, 2023

Enclosures

AGREED AND ACKNOWLEDGED BY THE
AD HOC GROUP OF CORE SCIENTIFIC, INC. EQUITY HOLDERS

By: Randall Hale

Dated:  As of January 17, 2023

Enclosures

AGREED AND ACKNOWLEDGED BY THE
AD HOC GROUP OF CORE SCIENTIFIC, INC. EQUITY HOLDERS

By: Wesley Hoaglund

Dated: As of January 17, 2023

Enclosure

AGREED AND ACKNOWLEDGED BY THE
AD HOC GROUP OF CORE SCIENTIFIC, INC. EQUITY HOLDERS

WS-Oaxaca LLC

_____

By: Weston Adams
Title: Manager

██████████████████████████

Dated:  As of January 17, 2023

Enclosure

AGREED AND ACKNOWLEDGED BY THE
AD HOC GROUP OF CORE SCIENTIFIC, INC. EQUITY HOLDERS

Bitrockett LLC

_____

By: Weston Adams
Title: Manager

Dated:  As of January 17, 2023

Enclosure

AGREED AND ACKNOWLEDGED BY THE
AD HOC GROUP OF CORE SCIENTIFIC, INC. EQUITY HOLDERS

By: Weston Adams

Dated:  As of January 17, 2023

Enclosures

AGREED AND ACKNOWLEDGED BY THE
AD HOC GROUP OF CORE SCIENTIFIC, INC. EQUITY HOLDERS

Alpha Bravo Holding Company, Inc.

By: Aaron M. Baker
Title: CEO

Dated:  As of January 17, 2023

Enclosure

AGREED AND ACKNOWLEDGED BY THE
AD HOC GROUP OF CORE SCIENTIFIC, INC. EQUITY HOLDERS

By: Stefan Amling

Dated: As of January 17, 2023

Enclosures

AGREED AND ACKNOWLEDGED BY THE
AD HOC GROUP OF CORE SCIENTIFIC, INC. EQUITY HOLDERS



By: Matt Stringfellow

████████████████████████████

Dated:  As of January 17, 2023

Enclosures

AGREED AND ACKNOWLEDGED BY THE
AD HOC GROUP OF CORE SCIENTIFIC, INC. EQUITY HOLDERS

JUSTIN B KALB TRUST

By: Justin Kalb
Title:

Dated:  As of February 1, 2023

Enclosures

AGREED AND ACKNOWLEDGED BY THE
AD HOC GROUP OF CORE SCIENTIFIC, INC. EQUITY HOLDERS

TWO SEAS CAPITAL LP

By:    Sina Toussi
Title: Managing member of Two Seas Capital GP
          LLC, its general partner

Dated:  As of February 28, 2023

Enclosures

## SCHEDULE I

### Initial Retainer Amount and Funding

| Party | Retainer Amount |
|---|---|
| The Rudolph Family Trust | |
| Two Trees Capital Limited BVI Custodian CSPB | |
| Lukasz Gottwald | |
| Todd Deutsch | |
| Douglas Abrams | |
| Jay Deutsch | |
| Mark Beaven | |
| Eddie Griffin | |
| **Total** | **$80,000** |

## SCHEDULE II

### Additional Retainer Amount and Funding

| Party | Retainer Amount |
|---|---|
| The Rudolph Family Trust | |
| Two Trees Capital Limited BVI Custodian CSPB | |
| Lukasz Gottwald | |
| Todd Deutsch | |
| Douglas Abrams | |
| Jay Deutsch | |
| Mark Beaven | |
| Eddie Griffin | |
| Douglas Wall | |
| W5 Family Trust | |
| Grady Roberts | |
| Allane Ray O'Neil | |
| Jacob Novak | |
| David M. Talla | |
| Jared Talla | |
| Brett Talla | |
| Mark Spino | |
| David Askew | |
| John T. Rifenbark | |
| George Wilson | |
| Kevin Turner | |

| | |
|---|---|
| Joe Judson | |
| Brent Berge | |
| Wesley Hoaglund | |
| Randall Hale | |
| Weston Adams | |
| WS-Oaxaca LLC | |
| Bitrockett LLC | |
| Alpha Bravo Holding Company Inc. | |
| Stefan Amling | |
| Matt Stringfellow | |
| **Total** | **$150,000** |

**SASMF EXHIBIT 06**

**47 of 50**

**ANNEX A**

## SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP AND AFFILIATES
### Policy Statement Concerning Charges and Disbursements*
### Effective April 1, 2010

*Skadden Arps bills clients for reasonable charges and disbursements incurred in connection with an engagement. Clients are billed for disbursements based on the actual cost billed by the vendor or in a few cases noted below, at rates derived from internal cost analyses or at rates below or approximating comparable outside vendor charges.*

---

**I. Research Services.** *Charges for LexisNexis and Westlaw are billed at levels below that which would be charged for individual usage on a particular engagement. Clients are billed at rates calculated from an aggregate discounted amount charged to and paid by the Firm to LexisNexis and Westlaw. Thomson Research services are charged based on client usage allocated from actual vendor charges. Charges for other outside research services are billed at the actual amounts charged by vendors.*

*The State of Delaware Database provides computer access to a corporations database in Dover, Delaware. The charge for this service is $50 per transaction, which is the average amount charged by outside services.*

**II. Travel-Related Expenses.** *Out-of-town travel expenses are billed at actual cost and include air or rail travel, lodging, car rental, taxi or car service, tips and other reasonable miscellaneous costs associated with travel. Corporate and/or negotiated discounted rates are passed on to the client. Specific Firm policies for expenditures relating to out-of-town travel include:*

- *Air Travel. Coach class is the standard on most U.S. domestic flights. However, for flights with scheduled flight times longer than 5 hours and international flights business class is generally used.*

- *Lodging. We strive to book overnight accommodations at hotels with which the Firm or the Client has preferred corporate rates.*

*Local travel charges include commercial transportation and, when a private car is used, mileage, tolls and parking. Specific policies govern how and when a client is charged for these expenses; these include:*

- *Fares for commercial transportation (e.g., car service, taxi, rail) are charged at the actual vendor invoice amount. The charge for private car usage is the IRS rate allowance per mile (or the equivalent outside the United States) plus the actual cost of tolls and parking.*

- *Round-trip transportation to the office is charged for attorneys who work weekends or holidays. Transportation home may be charged on business days when an attorney works past a certain hour (typically 8:30 p.m.) and has worked a minimum of ten hours that day.*

- *Local travel for support staff is charged when a staff member works past a certain hour (typically 8:30 p.m.). Charges are limited by Firm policy and depend on form of transportation and distance traveled.*

**III. Word Processing, Secretarial and other Special Task-Related Services.** *Routine secretarial tasks (correspondence, filing, travel and/or meeting arrangements, etc.) are not charged to clients. Word processing services associated with preparing legal documents are charged at $50 (£25/€35) per hour.*

*Specialized tasks (such as EDGAR filings or legal assistant services) are recorded in the appropriate billing category (for example, legal assistant services are recorded as fees in "Legal Assistant Support" on bills).*

1

**IV.** **_Reproduction and Electronic Document Management._** *Photocopying services (including copying, collating, tabbing and velo binding) performed in-house are charged at 15 cents (£0.07/€0.11) per page, which represents the average internal cost per page. Color photocopies are charged at 80 cents (£0.40/€0.55) per page (based on outside vendor rates). Photocopying projects performed by outside vendors are billed at the actual invoice amount. Special arrangements can be made for unusually large projects.*

*Electronic Data Management services (e.g., scanning, OCR processing, data and image loading/exporting, CD/DVD creation, printing from scanned files, and conversions) performed by outside vendors are billed at the actual invoice amount and those performed in-house are billed at rates comparable to those charged by outside vendors.*

**V.** **_Electronic Communications._** *Clients are charged for communications services as follows:*

- *Telephone Charges. There is no charge for local telephone calls or internal long distance telephone calls. External telephone calls such as collect, cellular calls, credit card, hotel telephone charges and vendor-hosted conference calls are charged at the vendor rate plus applicable taxes and are assigned to the specific matter for which such charges were incurred.*

- *A: Facsimile Charges. There is no charge for facsimile usage.*

**VI.** **_Postage and Courier Services._** *Outside messenger and express carrier services are charged at the actual vendor invoice amount which frequently involves discounts negotiated by the Firm. Postage is charged at actual mail rates. On certain occasions, internal staff may be required to act as messengers in which case the staff's applicable hourly rate is charged.*

**VII.** **_UCC Filing and Searches._** *Charges for filings and searches, in most instances, are billed at the flat fee charged by the vendor. Unusual filings and searches will be charged based on vendor invoice.*

**VIII.** **_Meals._** *Business meals are charged at actual cost. Luncheon and dinner meetings at the Firm are charged based on the costs developed by our food service vendor. Breakfast, beverage and snack services at the Firm's offices are not charged, except in unusual circumstances.*

*When overtime, weekend or holiday work is required, clients are charged for the actual, reasonable cost of an attorney's meal and, for non-attorneys, a standard amount determined by Firm policy.*

**IX.** **_Direct Payment by Clients of Other Disbursements._** *Other major disbursements incurred in connection with an engagement will be paid directly by the client. (Those which are incurred and paid by the Firm will be charged to the client at the actual vendor's invoice amount.) Examples of such major disbursements that clients will pay directly include:*

- *Professional Fees (including disbursements for local counsel, accountants, witnesses and other professionals)*

- *Filing/Court Fees (including disbursements for agency fees for filing documents, standard witness fees, juror fees)*

- *Transcription Fees (including disbursements for outside transcribing agencies and courtroom stenographer transcripts)*

- *Other Disbursements (including any other required out-of-pocket expenses incurred for the successful completion of a matter)*

\* \* \* \* \*

*\*     Fees incurred for attorney and Firm personnel in connection with the Engagement are not covered by this policy.*

2

### *TO BE INCLUDED IN ENGAGEMENTS TO WHICH CALIFORNIA RULES APPLY*

**Rule 1.7  Conflict of Interest: Current Clients**

(a)  A lawyer shall not, without informed written consent* from each client and compliance with paragraph (d), represent a client if the representation is directly adverse to another client in the same or a separate matter.

(b)  A lawyer shall not, without informed written consent* from each affected client and compliance with paragraph (d), represent a client if there is a significant risk the lawyer's representation of the client will be materially limited by the lawyer's responsibilities to or relationships with another client, a former client or a third person,* or by the lawyer's own interests.

(c)  Even when a significant risk requiring a lawyer to comply with paragraph (b) is not present, a lawyer shall not represent a client without written* disclosure of the relationship to the client and compliance with paragraph (d) where:

    (1)  the lawyer has, or knows* that another lawyer in the lawyer's firm* has, a legal, business, financial, professional, or personal relationship with or responsibility to a party or witness in the same matter; or

    (2)  the lawyer knows* or reasonably should know* that another party's lawyer is a spouse, parent, child, or sibling of the lawyer, lives with the lawyer, is a client of the lawyer or another lawyer in the lawyer's firm,* or has an intimate personal relationship with the lawyer.

(d)  Representation is permitted under this rule only if the lawyer complies with paragraphs (a), (b), and (c), and:

    (1)  the lawyer reasonably believes* that the lawyer will be able to provide competent and diligent representation to each affected client;

    (2)  the representation is not prohibited by law; and

    (3)  the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal.

(e)  For purposes of this rule, "matter" includes any judicial or other proceeding, application, request for a ruling or other determination, contract, transaction, claim, controversy, investigation, charge, accusation, arrest, or other deliberation, decision, or action that is focused on the interests of specific persons,* or a discrete and identifiable class of persons.*

An asterisk (*) identifies a word or phrase defined in the terminology rule, rule 1.0.1.

**SASMF EXHIBIT 06**
**50 of 50**