IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| **CORE SCIENTIFIC, INC.,** *et al.,* | § | **Case No. 22-90341 (CML)** |
| | § | |
| Debtors.[1] | § | (Jointly Administered) |
| | § | |

**DEBTORS' EMERGENCY MOTION FOR ENTRY OF
AN ORDER (I) AUTHORIZING ASSUMPTION OF THE LEGACY
OG&E AGREEMENT, AS AMENDED AND RESTATED BY
THE A&R AGREEMENT, AND (II) GRANTING RELATED RELIEF**

---

**EMERGENCY RELIEF HAS BEEN REQUESTED. RELIEF IS REQUESTED NOT LATER THAN 10:00 A.M. (CENTRAL PREVAILING TIME) ON JANUARY 16, 2024.**

**IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST APPEAR AT THE HEARING IF ONE IS SET, OR FILE A WRITTEN RESPONSE PRIOR TO THE DATE THAT RELIEF IS REQUESTED IN THE PRECEDING PARAGRAPH. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

**THE DEBTORS REQUEST A HEARING TO BE CONDUCTED ON THIS MATTER NO LATER THAN JANUARY 16, 2024 AT 10:00 A.M. (CENTRAL PREVAILING TIME) IN COURTROOM 401, 4TH FLOOR, 515 RUSK AVENUE, HOUSTON, TX 77002.**

**ONCE A HEARING IS SCHEDULED, YOU MAY PARTICIPATE IN THE HEARING EITHER IN PERSON OR BY AN AUDIO AND VIDEO CONNECTION.**

---

Core Scientific, Inc. ("**Core**") and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, with Core, the "**Debtors**"), hereby submit this emergency motion (the "**Motion**") and respectfully represent as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677);RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions VII, LLC (3198). The Debtors' corporate headquarters is 210 Barton Springs Road, Suite 300, Austin, Texas 78704. The Debtors' service address is 2407 S. Congress Ave, Suite E-101, Austin, Texas 78704.

**Preliminary Statement**

1.      The Debtors and Oklahoma Gas and Electric Company ("**OG&E**")—a regulated electric utility company—are party to a prepetition agreement[2] relating to the provision of electricity utility services at the Debtors' blockchain infrastructure under construction located in Muskogee, Oklahoma (the "**Muskogee Facility**").  Upon completion of the construction, the Muskogee Facility's operation will require electricity to operate and OG&E is the only electric services provider available for the Muskogee Facility. The OG&E Claim (as defined below) is based on the approximately $8.0 million that OG&E has expended to construct a substation to service the Muskogee Facility.

2.      Following good faith and arm's length negotiations, the Debtors and OG&E entered into an Amended and Restated Electric Service Agreement (including all exhibits, schedules, addenda, or attachments thereto, the "**A&R Agreement**"), which incorporates the following key settlement terms (the "**Settlement**"):

   a) OG&E must provide to Debtor's Muskogee Facility a minimum operational electrical capacity of not less than  100 megawatts for the initial five (5) year term of the A&R Agreement;

   b) In full and final satisfaction of any cure claims owed in connection with the assumption of the A&R Agreement, the OG&E Claim (as defined below) shall be an Allowed General Unsecured Claim under the Plan[3] in the amount of $4.8 million; and

   c) OG&E will sell the New Common Interests received on account of the OG&E Claim as soon as reasonably and commercially possible. To the extent the fair market value of the New Common Interests received and sold by OG&E on account of the OG&E Claim exceeds $4.8 million, OG&E will retain 30% of such excess amount, with the remainder applied by OG&E against other costs in contribution in aid of

---

[2]  That certain *Electric Service Agreement Minimum Bill*, dated March 1, 2022 ("**Legacy OG&E Agreement**").

[3]  The *Fourth Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors*, dated December 28, 2023 (Docket No. 1639) (the "**Plan**").  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

2

construction of the Muskogee substation, or otherwise towards certain billing deposits or as credits against future electric bills of the Reorganized Debtor.  To the extent the fair market value of the New Common Interests sold by OG&E is less than $4.8 million, the Reorganized Debtor will pay OG&E such difference within 90 days following OG&E's receipt of such New Common Interests on account of the OG&E Claim.

3.      Upon completion, the Muskogee Facility will be a part of the Reorganized Debtors' operations and its operation is a key component of  the Debtors business plan.  Simply put, without the provision of electricity from OG&E, the Muskogee Facility cannot operate. For these reasons, and as more fully set forth below, assuming the Legacy OG&E Agreement, as amended and restated by the A&R Agreement, Agreement, which incorporates the Settlement, is appropriate under the circumstances and reflects a valid exercise of the Debtors' business judgment.

### Relief Requested

4.      Pursuant to sections 105(a), 363, and 365 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 9013-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Local Rules**"), the Debtors request entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"),  (a) authorizing the assumption of the Legacy OG&E Agreement, as amended and restated by the A&R Agreement, which is annexed to the Proposed Order as **Exhibit 1**, and (b) granting related relief.

### Jurisdiction

5.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

WEIL:\99512946\7\39031.0014

**Background**

6.      On December 21, 2022 (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary case under the Bankruptcy Code.  The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7.      The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b) and Bankruptcy Local Rule 1015-1.   On January 9, 2023, the United States Trustee for Region 7 (the "**U.S. Trustee**") appointed an official committee of unsecured creditors.  On March 23, 2023, the U.S. Trustee appointed an official committee of equity security holders.  No trustee or examiner has been appointed in these chapter 11 cases.

**I.      The Parties' Business Relationship**

8.      The Debtors are one of the largest blockchain infrastructure, hosting provider, and digital asset mining companies in North America, with fully operational data centers in Texas, Kentucky, North Carolina, North Dakota, and Georgia, including the Muskogee Facility, which is under construction and nearing completion.  The Debtors provide hosting solutions for third parties, as well as operate their own digital asset mining machines.

9.      OG&E is a regulated electric utility company that provides electric utility services to the Muskogee Facility pursuant to the rates, terms and conditions set forth in the Legacy OG&E Agreement.  Among other things, the Legacy OG&E Agreement require OG&E to provide electricity (up to a certain capacity) to power the Muskogee Facility for an initial term of five (5) years.

10.      In connection with amounts incurred by OG&E prior to the Petition Date for the construction of a substation providing electricity to the Muskogee Facility, OG&E asserted

4

against the Debtors an unsecured claim at proof of claim number 34 in an amount of $8,026,732.80 (the "**OG&E Claim**").

## II.    The A&R Agreement and the Settlement

11.    After engaging in extensive good faith and arm's length negotiations, the Debtors and OG&E have agreed on a form of A&R Agreement, subject to this Court's approval. The A&R Agreement, which amends and restates the Legacy OG&E Agreement in its entirety, ensures that OG&E will provide the Debtors with electricity to power the Muskogee Facility once the construction thereof is complete for an initial term of five (5) years. The A&R Agreement also resolves all issues and claims between the Debtors and OG&E pursuant to the Settlement, including, but not limited to, by providing OG&E an allowed General Unsecured Claim for $4.8 million in full and final satisfaction of any cure claims owed in connection with the assumption of the A&R Agreement,.

## <u>Relief Requested Should Be Granted</u>

## I.    The Debtors' Assumption of the Legacy OG&E Agreement, as Amended and Restated by the A&R Agreement, Is a Reasonable Exercise of Debtors' Sound Business Judgment

12.    Section 365(a) of the Bankruptcy Code provides, in relevant part, that a debtor "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a); *see also NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 521(1984) (noting that section 365(a) "by its terms includes all executory contracts except those expressly exempted"); *Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins. Co*., 83 F.3d 735, 741 (5th Cir. 1996) ("Although the Code does not define 'executory contract,' generally an agreement is considered executory 'if at the time of the bankruptcy filing, the failure of either party to complete performance would constitute a material breach of the contract, thereby excusing the performance of the other party.'" (quoting *In re Murexco Petorleum, Inc.*, 15 F. 3d 60, 62 (5th Cir.

WEIL:\99512946\7\39031.0014

994))). This allows the debtor in possession to maximize the value of its estate by assuming executory contracts or unexpired leases that benefit the estate and by rejecting those that do not. *In re Nat'l Gypsum Co*., 208 F.3d 498, 504–05 (5th Cir. 2000).

13.     The standard applied to determine whether the assumption of an executory contract or unexpired lease should be authorized is the "business judgment" standard.  *See, e.g.*, *Richmond Leasing Co. v. Cap. Bank, N.A*., 762 F.2d 1303, 1309 (5th Cir. 1985).  The business judgment standard requires only a showing that either assumption or rejection of the executory contract or unexpired lease will benefit the debtor's estate.  *See In re Idearc Inc*., 423 B.R. 138, 162 (Bankr. N.D. Tex. 2009) (holding that the business judgment standard "requires a showing that the proposed course of action will be advantageous to the estate"); *In re Wolflin Oil, L.L.C*., 318 B.R. 392, 396 (Bankr. N.D. Tex. 2004) ("[T]he act of assumption must be grounded, at least in part, in the conclusion that maintenance of the contract is more beneficial to the estate than doing without the other party's services." (quoting *In re Liljeberg Enters., Inc.*, 304 F.3d 410, 438 (5th Cir. 2002))).

14.     Here, the Debtors submit that the assumption of the Legacy OG&E Agreement, as amended and restated by the A&R Agreement, is a proper exercise of the Debtors' business judgment and is in the best interests of the Debtors and their estates.  The Debtors require the electricity provided by OG&E to operate the Muskogee Facility.  Operation of the Muskogee Facility is critical to the Debtors' ability to meet the revenue goals contemplated by their business plan and OG&E is the only available electricity services provider for the Muskogee Facility. Moreover, the Settlement provides for a substantial discount on the OG&E Claim (resulting in approximately $3 million in savings for the Debtors' estates) and preserves the Debtors' liquidity by avoiding the need to make any cash payment to assume and cure the A&R Agreement. Accordingly, the Debtors submit that assumption of the Legacy OG&E Agreement, as amended

6

and restated by the A&R Agreement, represents a reasonable exercise of their sound business judgment and respectfully request that the Court approve such assumption.

## II. The Debtors' Entry into the Settlement Agreement Is a Reasonable Exercise of Debtors' Sound Business Judgment

15. Although entry into electricity service agreements generally falls within the Debtors' ordinary course of business, out of an abundance of caution and in satisfaction of a condition to the effectiveness of such agreement, the Debtors seek this Court's authority under section 363(b) of the Bankruptcy Code to enter into the A&R Agreement.

16. Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that debtors "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). A court may authorize a debtor to use estate property upon a finding that such use is supported by sound business reasons. *See, e.g.*, *In re Cont'l Air Lines*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business."). Once a debtor articulates a reasonable basis for its business decisions, "courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). There is a presumption that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).

17. Thus, if a debtor's actions satisfy the business judgment test, then the transaction in question should be approved under section 363(b) of the Bankruptcy Code. Indeed,

7

when applying the "business judgment" standard, courts show great deference to a debtor's business decisions. *See id.* at 656 ("Courts are loath to interfere with corporate decisions absent a showing of bad faith, self-interest, or gross negligence."); *see also Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985) ("More exacting scrutiny would slow the administration of the debtor's estate and increase its cost, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially."); *In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) ("Overcoming the presumptions of the business judgment rule on the merits is a near-Herculean task.").

18.     Entry into the A&R Agreement enables the Debtors to operate the Muskogee Facility with a reliable source of electricity. The Muskogee Facility will require a significant amount of electricity in order to operate, and OG&E is the only available provider of electricity to the Muskogee Facility. Accordingly, the Debtors submit that entry into the A&R Agreement represents a reasonable exercise of their sound business judgment and respectfully request that the Court authorize entry into such agreement.

## III.     The Settlement Is Fair, Reasonable, and in the Best Interest of the Debtors' Estates

19.     Bankruptcy Rule 9019(a) provides that "[o]n motion by the [debtors in possession] and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). Further, pursuant to Bankruptcy Rule 9019(a), a bankruptcy court may approve a compromise or settlement so long as the proposed settlement is fair, reasonable, and in the best interests of the estate. *See Off. Comm. of Unsecured Creditors v. Moeller (In re Age Refin.,Inc.)*, 801 F.3d 530, 540 (5th Cir. 2015). Ultimately, approval of a compromise is within the discretion of the bankruptcy court. *See United States v. AWECO, Inc. (In re AWECO, Inc.)*, 725 F.2d 293, 297 (5th Cir. 1984); *Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 602 (5th Cir. 1980) (citations omitted) (decided under the Bankruptcy Act). Settlements are

WEIL:\99512946\7\39031.0014

considered a "normal part of the process of reorganization" and a "desirable and wise method[] of bringing to a close proceedings otherwise lengthy, complicated, and costly." *Rivercity*, 624 F.2d at 602–03 (citing *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424–25 (1968)).

20.     The Fifth Circuit has established a three-factor balancing test under which bankruptcy courts analyze proposed settlements*. Id.* The factors courts consider are: "(1) the probability of success in litigating the claim subject to settlement, with due consideration for the uncertainty in fact and law; (2) the complexity and likely duration of litigation and any attendant expense, inconvenience, and delay; and (3) all other factors bearing on the wisdom of the compromise." *See Age Refin.*, 801 F.3d at 540 (internal citations omitted).

21.     Under the rubric of the third factor, the Fifth Circuit has specified two additional factors that bear on a decision to approve a proposed settlement.  First, the Court should consider "the paramount interest of creditors with proper deference to their reasonable views." *Id.*; *Conn. Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortg. Corp.)*, 68 F.3d 914, 917 (5th Cir. 1995).  Second, the Court should consider the "extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion." *Age Refin.*, 801 F.3d at 540; *Foster Mortg.*, 68 F.3d at 918 (citations omitted).

22.     Generally, the role of the bankruptcy court is not to decide the issues in dispute when evaluating a settlement. *Watts v. Williams*, 154 B.R. 56, 59 (S.D. Tex. 1993).  Rather, the court should determine whether the settlement as a whole is fair and equitable. *Protective Comm. for Indep. S'holders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968).

23.     The Debtors bear the burden of establishing that the balance of the above factors leads to a fair and equitable compromise vis-à-vis the Settlement. *In re Allied Properties, LLC*, 2007 WL 1849017, at *4 (Bankr. S.D. Tex. June 25, 2007) (citing *In re Lawrence &*

*Erausquin, Inc.*, 124 B.R. 37, 38 (Bankr. N.D. Ohio 1990)); *see also In re GHR Companies, Inc.*, 50 B.R. 925, 931 (Bankr. D. Mass. 1985).  "The burden is not high;" rather, the Debtors "need only show that [their] decision falls within the 'range of reasonable litigation alternatives.'" *In re Allied Properties, LLC*, 2007 WL 1849017, at *4 (emphasis added) (citing *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983)); *see also Cook v. Waldron*, 2006 WL 1007489 at *4 (S.D. Tex. Apr. 18, 2006).

24.     The Settlement resolves the OG&E Claim and all other claims that may be asserted and provides for the exchange of mutual releases.  Entering into the Settlement will avoid the need for potentially costly and distracting litigation associated with determining such amounts.  Instead, in full and final satisfaction of any cure claims owed in connection with the assumption of the A&R Agreement, the OG&E Claim will be satisfied by allowing the OG&E Claim as an Allowed General Unsecured Claim pursuant to the Plan in an amount of $4.8 million.  Further, the mutual releases contemplated by the Settlement and contained in the Proposed Order will provide the Debtors and OG&E with a clean slate and facilitate a successful go forward business relationship.

25.     Second, as explained above, the A&R Agreement is in the best interests of the Debtors and their estates by providing the Debtors with the electricity needed to operate the Muskogee Facility post-construction.

26.     Lastly, the Settlement was extensively negotiated at arm's length and in good faith over the course of several months.  Accordingly, the Debtors respectfully submit that the Settlement is fair, reasonable and in the best interest of their estates, creditors, and other stakeholders, and the Court should approve the Settlement.

**Reservation of Rights**

27.     Except as expressly provided for herein, and the A&R Agreement, nothing contained in this Motion or any actions taken by the Debtors pursuant to the relief granted is intended or should be construed as: (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law, or (iii) an approval of an assumption or rejection of any lease, sublease, or contract pursuant to section 365 of the Bankruptcy Code.

**Request for Emergency Relief**

28.     The Debtors seek relief on an emergency basis. In connection with the Settlement, OG&E requested that the A&R Agreement and Settlement be approved on an emergency basis on or before the confirmation hearing (scheduled for January 16, 2024). Moreover, absent Court approval of the Settlement prior to emergence, the Debtors would be required to hold back shares pursuant to the *Debtors' Emergency Motion for Entry of an Order Establishing Disputed Claim Amounts for Calculation and Distribution Purposes Under Debtors' Proposed Joint Chapter 11 Plan of Reorganization* (Docket No. 1525) that could otherwise be distributed to other creditors and equity holders on the Effective Date.  Accordingly, the Debtors believe that emergency consideration of this Motion is therefore necessary and appropriate.

**No Previous Request**

29.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

11

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: January 12, 2024
      Houston, Texas

Respectfully submitted,

  /s/ Clifford W. Carlson
WEIL, GOTSHAL & MANGES LLP
Clifford W. Carlson (2409024)
700 Louisiana Street, Suite 3700
Houston, Texas 77002
Telephone:  (713) 546-5000
Facsimile:  (713) 224-9511
Email: Clifford.Carlson@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Ray C. Schrock (admitted *pro hac vice*)
Ronit J. Berkovich (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Email:   Ray.Schrock@weil.com
        Ronit.Berkovich@weil.com

*Attorneys for Debtors*
*and Debtors in Possession*

12

**<u>Certificate of Service</u>**

I hereby certify that on January 12, 2024, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.


                                      <u>*/s/ Clifford W. Carlson*</u>
                                        Clifford W. Carlson