IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| CORE SCIENTIFIC, INC., *et al.*, | § § § | Case No. 22-90341 (CML) |
| Debtors.[1] | § § § § | (Jointly Administered) (Emergency Relief Requested) |

**DEBTORS' <u>EMERGENCY</u> MOTION FOR ORDER
APPROVING (I) REVISED SETTLEMENT BETWEEN DEBTORS AND
<u>FOUNDRY DIGITAL LLC AND (II) GRANTING RELATED RELIEF</u>**

> EMERGENCY RELIEF HAS BEEN REQUESTED. RELIEF IS REQUESTED NOT LATER THAN 10 A.M. (PREVAILING CENTRAL TIME) ON JANUARY 16, 2024.
>
> IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED YOU MUST APPEAR AT THE HEARING IF ONE IS SET OR FILE A WRITTEN RESPONSE PRIOR TO THE DATE THAT RELIEF IS REQUESTED IN THE PRECEDING PARAGRAPH. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.

Core Scientific, Inc. ("**Core**" or "**New Core**") and its debtor affiliates in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"), hereby submit this emergency motion (the "**Motion**"), pursuant to sections 105(a), 362(d), and 365 of chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), rule 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and rule 9013 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions, VII, LLC (3198). The Debtors' corporate headquarters is 210 Barton Springs Road, Suite 300, Austin, Texas 78704. The Debtors' service address is 2407 S. Congress Ave, Suite E-101, Austin, Texas 78704.

(the "**Bankruptcy Local Rules**") requesting entry of an order, substantially in the form annexed hereto as **Exhibit 1** (the "**Proposed Order**"), (i) approving the Revised Foundry Settlement Agreement (as defined below) and the settlements, agreements and transactions embodied or contemplated therein, (ii) authorizing the Debtors to execute, deliver and perform under the Revised Foundry Settlement Documents (as defined below), (iii) authorizing the Debtors to take any and all actions necessary, appropriate or desirable to implement the Revised Foundry Settlement Documents and the settlements, agreements and transactions embodied or contemplated therein, and (iv) granting related relief.

## Jurisdiction

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

2. On December 21, 2022 (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary case under the Bankruptcy Code. The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Bankruptcy Rules, and Rule 1015-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of Texas.

4. On January 9, 2023, the United States Trustee for Region 7 (the "**U.S. Trustee**") appointed an official committee of unsecured creditors in these chapter 11 cases pursuant to section 1102 of the Bankruptcy Code. On March 23, 2023, the U.S. Trustee appointed

an official committee of equity security holders (the "**Equity Committee**"). No trustee or examiner has been appointed in these chapter 11 cases.

5. On August 25, 2023, the Debtors filed the *Debtors' Motion for Order Approving (I) Settlement Between Debtors and Foundry Digital LLC and (II) Granting Related Relief* [Docket No. 1180] (the "**First Foundry Settlement Motion**"), whereby the Debtors sought approval of a settlement with Foundry Digital LLC ("**Foundry**" and, such settlement, the "**First Foundry Settlement**") that, among other things, resolved the Foundry APA POCs (as defined below) subject to the terms and conditions set forth in a fully executed settlement agreement and other related documents.

6. On December 28, 2023, the Debtors filed their *Fourth Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors* [Docket No. 1639] (as may be amended, supplemented, or otherwise modified from time to time, the "**Plan**") and the related *Supplement to Disclosure Statement for Fourth Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors* [Docket No. 1640], which supplements the *Disclosure Statement for Third Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors* [Docket No. 1439] (as may be amended, supplemented, or otherwise modified from time to time, the "**Disclosure Statement**").

7. On December 28, 2023 the Court entered the *Order (I) Modifying Dates and Deadlines Set Forth in the Disclosure Statement Order and (II) Conditionally Approving the Debtors' Disclosure Statement Supplement* [Docket No. 1638], conditionally approving the Disclosure Statement and scheduled the hearing for confirmation of the Plan for January 16, 2024.

**I.** **The Parties' Business Relationship and Related Dispute**

8. The Debtors are one of the largest blockchain infrastructure, hosting providers, and digital asset mining companies in North America, with fully operational data centers

3

in Texas, Kentucky, North Carolina, North Dakota, and Georgia. The Debtors provide hosting solutions for third parties and also operate their own digital asset mining machines.

9. Foundry is a digital asset mining-focused subsidiary of Digital Currency Group. Foundry and Core Scientific Operating Company ("**CSOC**") entered into that certain Master Services Agreement, dated November 23, 2019 (the "**2019 MSA**"), and Foundry and Core entered into that certain Master Services Agreements, dated September 21, 2022 (the "**2022 MSA**", and together with the 2019 MSA, the "**MSAs**"). Pursuant to the MSAs and the orders issued thereunder or entered into in connection therewith (the "**Orders**", and together with the MSAs, the "**Foundry Hosting Agreements**"), Core and CSOC agreed to provide services, including, without limitation, colocation, hosting and other services (as more fully described in the MSAs and the Orders) for Foundry's cryptocurrency mining equipment identified in the Orders (the "**Existing Miners**") in accordance with the MSAs and the Orders.

10. On February 2, 2022, Foundry, Core, and Core Scientific Acquired Mining LLC (formerly known as Blockcap, Inc., "**CSAM**") entered into that certain Amended and Restated Asset Purchase Agreement ("**A&R APA**") pursuant to which Foundry sold 2,106 Bitmain Antminer S19 machines (the "**Purchased Assets**") to CSAM for a total purchase price of $21,312,720.00 (the "**Purchase Price**"). The sale of the Purchased Assets closed on May 5, 2021, on which date ownership of, possession of, and title to, the Purchased Assets was transferred by Foundry to CSAM. Pursuant to the A&R APA, within five (5) business days following the effective date of the A&R APA, CSAM was obligated to cause the Purchase Price to be paid to Foundry by causing Core to issue to Foundry 1,580,288 shares of its common stock (the "**CORZ Share Consideration**"), which shares were subsequently issued to Foundry. Section 3.2 of the A&R APA further provides that: "[n]otwithstanding the foregoing, in the event the product of (i) the VWAP at the expiration of the Lockup Period . . . multiplied by (ii) the CORZ Share

4

Consideration shall be less than the Purchase Price, [CSAM] shall pay the difference to [Foundry] in cash . . . ." Accordingly, pursuant to Section 3.2 of the A&R APA, CSAM was obligated to pay Foundry not less than $18,404,990.08.

11. On April 13, 2023, Foundry filed proofs of claim against New Core and CSAM, each asserting an unsecured claim in the amount of at least $18,404,990.08, relating to claims arising under the A&R APA (the "**Foundry APA POCs**"), and proofs of claim against New Core and CSOC relating to claims arising under the Foundry Hosting Agreements (together with the Foundry APA POCs, the "**Foundry POCs**").[2]

## II. The Revised Foundry Settlement

12. After engaging in further extensive, good faith, arms'-length negotiations regarding, *inter alia*, the First Foundry Settlement and Foundry's claims arising under or related to the A&R APA (including the Foundry APA POCs), the Parties have determined that it would be in their respective best interests to revise the First Foundry Settlement (the "**Revised Foundry Settlement**") on the terms and conditions set forth in the Settlement Agreement, dated January 12, 2024, by and among Foundry and the Debtors, attached as <u>Exhibit A</u> to the Proposed Order (the "**Revised Foundry Settlement Agreement**" and together with the Proposed Order, the Foundry Hosting Agreements, and any other document or agreement entered or entered into in connection with the Revised Foundry Settlement Agreement, each in form and substance acceptable to Foundry and the Debtors in their respective sole discretion, collectively, the "**Revised Foundry Settlement Documents**").[3] The Revised Foundry Settlement Agreement amends, restates and supersedes the First Foundry Settlement Agreement.

---

[2] *See* Claim Numbers 360, 361, 393, and 394.

[3] Capitalized terms used but not otherwise defined in this Motion shall have the meanings ascribed to such terms in the Revised Foundry Settlement Agreement.

13. Subject to the terms of, and as more fully set forth in, the Revised Foundry Settlement Agreement, the Revised Foundry Settlement resolves all claims and issues between the Debtors and Foundry, except for any claims and issues arising (i) from and after the Settlement Effective Date or (ii) under or related to the Revised Foundry Settlement Documents or the transactions contemplated thereunder. Furthermore, such settlement and Revised Foundry Settlement Agreement shall be incorporated into the Plan and Confirmation Order.

14. The principal terms of the Revised Foundry Settlement include the following:[4]

   a) On or before the date that the Bankruptcy Court enters the Confirmation Order, the Debtors shall obtain the entry of the Proposed Order.

   b) From and after the date of the Revised Foundry Settlement Agreement, the Plan (including any amendments or modifications thereto) shall incorporate, and be consistent with, the Revised Foundry Settlement Agreement (and the settlement, agreements, documents and transactions contemplated herein) and shall expressly include Foundry as a Released Party.

   c) The Debtors shall have sought or shall seek entry of the Confirmation Order confirming a Plan that incorporates, and is consistent with, the Revised Foundry Settlement Agreement (and the settlement, agreements, documents, and transactions contemplated herein) and includes Foundry as a Released Party.

   d) On the Settlement Effective Date, the Debtors shall assume the Foundry Hosting Agreements and perform thereunder, and pay any cure amounts related thereto.

   e) The Foundry Claims (as defined in the Revised Foundry Settlement Agreement to mean the Claims arising under the A&R APA set forth in the Foundry APA POCs) shall be listed on the Schedule of Allowed General Unsecured Claims and shall be Allowed General Unsecured Claims as of the Effective Date in the total amount of $5,500,000, which includes any interest, fees, and expenses, whether incurred prior to or after the Petition Date (collectively, the "**Foundry Allowed Claims**").

   f) Upon the Settlement Effective Date, Foundry shall receive the treatment and distributions provided to Holders of Allowed General Unsecured Claims in Class 8A of the Plan with respect to the Foundry Allowed Claims in full and final satisfaction of such Foundry Allowed Claims.

---

[4] The summary below is qualified entirely by the terms of the Revised Foundry Settlement Agreement, which shall govern in the event of an inconsistency between this summary and any of the terms of the Revised Foundry Settlement Agreement.

g) Foundry shall, subject to (i) the entry of the Proposed Order, and (ii) the terms and conditions of the Revised Foundry Settlement Agreement, vote the Foundry Allowed Claims to accept the Plan; *provided* that such Plan is in form and substance reasonably acceptable to Foundry (solely to the extent it relates to the Revised Foundry Settlement Agreement and the transactions contemplated thereby and/or materially affects Foundry or any of its rights or claims) and incorporates the terms of, and is consistent with, the Revised Foundry Settlement Agreement and the agreements and transactions contemplated therein; *provided further* that notwithstanding the foregoing, if (w) the Proposed Order is not entered on or before the date that the Bankruptcy Court enters the Confirmation Order, (x) the Plan is inconsistent with the Revised Foundry Settlement Agreement, (y) any of the conditions to the occurrence of the Settlement Effective Date have not been satisfied, or (z) the Revised Foundry Settlement Agreement is terminated, then, unless the Debtors are otherwise instructed or notified by Foundry, Foundry's vote to accept the Plan, and/or any release or consent provided or deemed to be provided by Foundry, shall be deemed revoked, null and void, and of no force and effect, and Foundry shall be entitled to submit revised ballot(s), which shall be deemed timely submitted.

h) Subject to, and effective upon the Settlement Effective Date, (x) the Foundry Allowed Claims shall be satisfied by the consummation of the settlement, agreements and transactions contemplated under the Revised Foundry Settlement Agreement, including the treatment of the Foundry Allowed Claims under the Plan in accordance with the terms thereof, (y) no other compensation or distribution shall be provided to Foundry under the Plan on account of the Foundry Allowed Claims, other than as provided in the Revised Foundry Settlement Agreement, and (z) Foundry's Claims (but not Interests), including the Foundry Allowed Claims, against any of the Debtors, and each of the Debtors' claims against Foundry, in each case, arising prior to the Settlement Effective Date shall be released; *provided*, *however*, that nothing in the Revised Foundry Settlement Agreement, the Plan, Confirmation Order or any other document entered or entered into in connection with any of the foregoing shall, or shall be deemed to, release, waive, discharge, terminate or affect any rights, claims, interests or obligations of Foundry or any of the Debtors arising (1) from and after the Settlement Effective Date or (2) under or related to the Revised Foundry Settlement Agreement, the Hosting Agreements, the Proposed Order, or the transactions contemplated thereunder.

i) Foundry's Interests in New Core comprising of 2,095,790 shares of common stock issued by Core Scientific, Inc. shall constitute, and the Plan and Confirmation Order shall provide that Foundry has, Existing Common Interests in New Core (such Existing Common Interests, the "<u>Foundry Interests</u>") and, with respect to the Foundry Interests, Foundry shall receive the same treatment as other holders of Existing Common Interests in New Core.

j) From the date of the Revised Foundry Settlement Agreement through the Settlement Effective Date, the Debtors and Foundry shall not (directly or indirectly) take any action inconsistent with, or omit to take any action required by, the Revised Foundry Settlement Agreement, or take any action in connection with challenging or disputing any Claims of Foundry, or support any Person in connection with any of the foregoing.

7

**Relief Requested Should Be Granted**

**III. The Revised Foundry Settlement Is Fair, Reasonable, and in the Best Interest of the Debtors' Estates**

15. The Court should authorize the Debtors to enter into the Revised Foundry Settlement Agreement pursuant to Bankruptcy Rule 9019(a). Bankruptcy Rule 9019(a) provides that "[o]n motion by the [debtors in possession] and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). Further, pursuant to Bankruptcy Rule 9019(a), a bankruptcy court may approve a compromise or settlement so long as the proposed settlement is fair, reasonable, and in the best interests of the estate. *See Off. Comm. of Unsecured Creditors v. Moeller (In re Age Refin., Inc.)*, 801 F.3d 530, 540 (5th Cir. 2015). Ultimately, approval of a compromise is within the discretion of the bankruptcy court. *See United States v. AWECO, Inc. (In re AWECO, Inc.)*, 725 F.2d 293, 297 (5th Cir. 1984); *Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 602 (5th Cir. 1980) (citations omitted) (decided under the Bankruptcy Act). Settlements are considered a "normal part of the process of reorganization" and a "desirable and wise method[] of bringing to a close proceedings otherwise lengthy, complicated, and costly." *Rivercity*, 624 F.2d at 602–03 (citing *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424–25 (1968)).

16. The Fifth Circuit has established a three-factor balancing test under which bankruptcy courts analyze proposed settlements. *Id.* The factors courts consider are: "(1) the probability of success in litigating the claim subject to settlement, with due consideration for the uncertainty in fact and law; (2) the complexity and likely duration of litigation and any attendant expense, inconvenience, and delay; and (3) all other factors bearing on the wisdom of the compromise." *See Age Refin.*, 801 F.3d at 540 (internal citations omitted).

17. Under the rubric of the third factor, the Fifth Circuit has specified two additional factors that bear on a decision to approve a proposed settlement. First, the Court should

8

consider "the paramount interest of creditors with proper deference to their reasonable views." *Id.*; *Conn. Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortg. Corp.)*, 68 F.3d 914, 917 (5th Cir. 1995). Second, the Court should consider the "extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion." *Age Refin.*, 801 F.3d at 540; *Foster Mortg.*, 68 F.3d at 918 (citations omitted).

18. Generally, the role of the bankruptcy court is not to decide the issues in dispute when evaluating a settlement. *Watts v. Williams*, 154 B.R. 56, 59 (S.D. Tex. 1993). Rather, the court should determine whether the settlement as a whole is fair and equitable. *Protective Comm. for Indep. S'holders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968).

19. The Debtors bear the burden of establishing that the balance of the above factors leads to a fair and equitable compromise vis-à-vis the Revised Foundry Settlement. *In re Allied Properties, LLC*, 2007 WL 1849017, at *4 (Bankr. S.D. Tex. June 25, 2007) (citing *In re Lawrence & Erausquin, Inc.*, 124 B.R. 37, 38 (Bankr. N.D. Ohio 1990)); *see also In re GHR Companies, Inc.*, 50 B.R. 925, 931 (Bankr. D. Mass. 1985). "The burden is not high;" rather, the Debtors "*need only show that [their] decision falls within the 'range of reasonable litigation alternatives.*'" *In re Allied Properties, LLC*, 2007 WL 1849017, at *4 (emphasis added) (citing *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983)); *see also Cook v. Waldron*, 2006 WL 1007489 at *4 (S.D. Tex. Apr. 18, 2006).

20. Here, weighing the foregoing factors demonstrates that the Revised Foundry Settlement is reasonable and supports finding that the Debtors' entry into the Revised Foundry Settlement is in the best interest of creditors and other stakeholders.

21. First, the likelihood of success of litigating the Foundry POCs is uncertain. What is not uncertain, however, is that the litigation would likely require the expenditure of significant funds and cause substantial, detrimental impact to the Debtors. Having the benefit of

certainty between the Debtors and Foundry, at an amount significantly lower than the total claim amount that the Court may determine is allowed is a substantial benefit to the Debtors and their estates.

22. Second, the Revised Foundry Settlement is also the product of good-faith, arm's-length bargaining between the Debtors and Foundry, each of which were represented by counsel.

23. Third, the Revised Foundry Settlement is reasonable and is in the best interests of the Debtors' estates. Subject to the terms of the Foundry Settlement Documents, the Debtors shall satisfy Foundry's pre-Effective Date claims (other than claims arising under or related to the Revised Foundry Settlement Documents), including a large unsecured claim asserted in the amount of at least $18.4 million against the Debtors' estates, without utilizing the Debtors' current cash resources. Instead, the Debtors shall resolve and satisfy such claims by, among other things, (a) providing Foundry with Allowed General Unsecured Claims in the total amount of $5,500,000 that will receive the treatment and distributions provided to Holders of Allowed General Unsecured Claims in Class 8A of the Plan, and (b) assuming the Foundry Hosting Agreements and performing thereunder. Taking all factors and costs into account, the Debtors believe that the benefits of the Revised Foundry Settlement (i.e., settlement of an asserted claim in the amount of at least $18.4 million and avoiding substantial litigation costs) exceed the costs of such settlement.

24. Accordingly, the Debtors respectfully submit that the Court should approve the Revised Foundry Settlement based upon the factors considered by courts in the Fifth Circuit.

**IV.   The Debtors' Assumption of the Foundry Hosting Agreements Is a Reasonable Exercise of Debtors' Sound Business Judgment and in the Best Interests of the Estates**

25. The Court should authorize the Debtors to assume the Foundry Hosting Agreements, as amended and restated, pursuant to section 365 of the Bankruptcy Code, effective

upon the occurrence of the Effective Date. Pursuant to section 365(a), a debtor in possession, "subject to the court's approval, may assume or reject any . . . executory contract or unexpired lease of the debtor." Although the Bankruptcy Code does not define the term "executory contract," the Supreme Court has noted that an executory contract is "a contract where neither party has finished performing." *In re Avianca Holdings S.A.*, 618 B.R. 684, 695 (Bankr. S.D.N.Y. 2020) (citing *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1657 (2019)); *Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins. Co.*, 83 F.3d 735, 741 (5th Cir. 1996) ("Although the Bankruptcy Code does not define 'executory contract,' generally an agreement is considered executory 'if at the time of the bankruptcy filing, the failure of either party to complete performance would constitute a material breach of the contract, thereby excusing the performance of the other party.'") (quoting *In re Murexco Petorleum, Inc.*, 15 F. 3d 60, 62 (5th Cir. 1994)). This allows the debtor in possession to maximize the value of its estate by assuming executory contracts or unexpired leases that benefit the estate and by rejecting those that do not. *In re Nat'l Gypsum Co.*, 208 F.3d 498, 504–05 (5th Cir. 2000).

26. Additionally, section 365(b)(1) of the Bankruptcy Code establishes certain conditions that must be satisfied before the assumption of an executory contract:

> (b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—
>
> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default . . .
>
> (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
>
> (C) provides adequate assurance of future performance under such contract or lease.

27. Once the statutory predicates to assumption are satisfied, courts apply the "business judgment" standard to determine whether to authorize the rejection of an executory contract. *See Matter of J.C. Penney Direct Marketing Servs., LLC*, 50 F.4th 532, 534 (5th Cir. 2022) ("A bankruptcy court reviews a debtor's decision to . . . reject an executory contract under the deferential 'business judgment' standard.") (citing *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, —U.S.—, 139 S. Ct. 1652, 1658 (2019)); *see also In re Pilgrim's Pride Corp.*, 403 B.R. 413, 422 (Bankr. N.D. Tex. 2009) ("The general rule is that the decision to reject a given contract should be left to the trustee's (or debtor in possession's) sound business judgment.").

28. The "business judgment" standard requires only a showing that either assumption or rejection of the executory contract or unexpired lease will benefit the debtor's estate. *See In re Idearc Inc.*, 423 B.R. 138, 162 (Bankr. N.D. Tex. 2009) (stating that the business judgment standard only "requires a showing that the proposed course of action will be advantageous to the estate." (citation omitted)). In applying the business judgment standard, bankruptcy courts give deference to a debtor's decision to assume or reject executory contracts. *See, e.g., In re Pisces Energy, LLC*, Case No. 09-36591-H5-11, 2009 WL 7227880, at *6 (Bankr. S.D. Tex. Dec. 21, 2009) ("Courts apply the 'business judgment test,' which requires a showing that the proposed course of action will be advantageous to the estate and the decision be based on sound business judgment."). Further, under the business judgment standard, "[a] debtor's decision to reject an executory contract must be summarily affirmed unless it is the product of 'bad faith, or whim or caprice.'" *In re Pilgrim's Pride Corp.*, 403 B.R. at 422 (citing *Wheeling–Pittsburgh Steel Corp. v. W. Penn Power Co. (In re Wheeling–Pittsburgh Steel Corp.)*, 72 B.R. 845, 849–50 (Bankr. W.D. Pa. 1987)).

29. Here, all statutory predicates to assumption under section 365 are satisfied. The Foundry Hosting Agreements are "executory contracts" within the meaning of section 365 of

12

the Bankruptcy Code because all parties involved have material ongoing obligations under these agreements as of the Petition Date. Specifically, Core is required to host the Existing Miners, and Foundry is required to pay Core for hosting the Existing Miners. Second, the Debtors will pay the applicable cure costs, if any, upon the assumption of the Foundry Hosting Agreements. As of this date, the Debtors do not owe any cure amounts to Foundry. Third, the Debtors have also provided adequate assurance of future performance as they project having sufficient liquidity to satisfy their postpetition operating expenses as set forth in the Debtors' most recent budget for their debtor-in-possession financing. Additionally, the assumption of the Foundry Hosting Agreements is a proper exercise of the Debtors' business judgment for the reasons set forth above. Accordingly, the Court should authorize the Debtors to assume the Foundry Hosting Agreements.

30.     For all of the foregoing reasons, the Debtors submit that entry into the Revised Foundry Settlement is a reasonable exercise of the Debtors' business judgment and should be approved.

**Emergency Consideration is Required**

31.     The Debtors seek relief on an emergency basis. The Debtors are quickly working towards Plan confirmation and the claims asserted by Foundry are large, unresolved claims against the Debtors' estates. Under the Revised Foundry Settlement Agreement, the Debtors are required to obtain the entry of the Proposed Order on or before the date that the Bankruptcy Court enters the Confirmation Order, which is expected to occur on or shortly after January 16, 2024. Absent the emergency relief requested by this Motion, the Debtors would fail to meet a material condition of the settlement and would not obtain certainty on this resolution in connection with confirmation of the Plan. The Debtors believe that emergency consideration of this Motion is therefore necessary and appropriate.

## Reservation of Rights

32. Nothing contained in this Motion is intended or should be construed as: (i) an admission as to the validity of any claim against the Debtors, or (ii) a waiver or limitation of the Debtors' or Foundry's rights under the Bankruptcy Code or any other applicable law.

## No Previous Request

33. No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated:  January 12, 2024
        Houston, Texas

        Respectfully submitted,

         /s/ Clifford W. Carlson
WEIL, GOTSHAL & MANGES LLP
Clifford W. Carlson (24090024)
700 Louisiana Street, Suite 1700
Houston, Texas  77002
Telephone: (713) 546-5000
Facsimile:  (713) 224-9511
Email:  Clifford.Carlson@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Ray C. Schrock (admitted *pro hac vice*)
Ronit J. Berkovich (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:   (212) 310-8007
Email:  Ray.Schrock@weil.com
       Ronit.Berkovich@weil.com

*Attorneys for Debtors
and Debtors in Possession*

**Certificate of Service**

I hereby certify that on January 12, 2024, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                                   */s/ Clifford W. Carlson*
                                                   Clifford W. Carlson