**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § § § | **Chapter 11** |
| **CORE SCIENTIFIC, INC.,** *et al.,* | § § § | **Case No. 22-90341 (CML)** |
| | § § | **(Jointly Administered)** |
| **Debtors.**[1] | § § | |

**DECLARATION OF RODI BLOKH IN SUPPORT OF**
**CONFIRMATION OF FOURTH AMENDED JOINT CHAPTER 11**
**PLAN OF CORE SCIENTIFIC, INC. AND ITS AFFILIATED DEBTORS**

I, Rodi Blokh, pursuant to section 1746 of title 28 of the United States Code, hereby declare under the penalty of perjury that the following is true to the best of my knowledge, information, and belief:

### I. Background

1.      I am a Partner and Managing Director at AlixPartners, LLP ("**Alix**"), a restructuring and financial advisory firm with its principal offices at 909 Third Avenue, New York, New York 10022.

2.      I submit this declaration (the "**Declaration**") and accompanying referenced materials in support of the *Fourth Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its*

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions, VII, LLC (3198).  The Debtors' corporate headquarters is 210 Barton Springs Road, Suite 300, Austin, Texas 78704. The Debtors' service address is 2407 S. Congress Ave, Suite E-101, Austin, Texas 78704.

*Affiliated Debtors* [Docket No. 1639] (including any exhibits and schedules thereto and as may be modified, amended, or supplemented, the "**Plan**").[2]

3.       Since November 2022, Alix has provided financial, restructuring, and strategic advice to Core Scientific, Inc. ("**Core Scientific**") and its affiliated debtors in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), as debtors and debtors-in-possession (collectively, the "**Debtors**," and together with their non-Debtor subsidiaries, "**Core**," or the "**Company**").  Alix is the financial advisor to the Company in the Chapter 11 Cases.

4.       As a result of my role advising the Company, I am generally knowledgeable and familiar with the Company's day-to-day operations, business and financial affairs, books and records, and the circumstances leading to the commencement of these chapter 11 cases.  I have overseen (and continue to oversee) the services provided to the Company by Alix, as described throughout this Declaration.

5.       I have been in the Turnaround & Restructuring Services Group at Alix since 2018, when Alix purchased Zolfo Cooper, LLC ("**Zolfo Cooper**"). Prior to that, I had been at Zolfo Cooper, a restructuring advisory firm, since 2013, most recently as a Director. I received an MBA from UC Berkeley's Haas School of Business, prior to which I worked at Bank of America Merrill Lynch from 2008 to 2011.

6.       I have over 10 years of restructuring experience across a variety of industries and complex in-court and out-of-court distressed situations. This experience includes company or creditor roles in A&P, Bon-Ton, CarbonLITE, Dean Foods, Doral Financial, Energy Corporation of America, Envision Healthcare, Haggen, Hertz, LATAM Airlines, One Call,

---

[2]  Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms as in the Plan.

Outcome Health, Pacific Oil & Gas, Payless, Preferred Sands, Revlon, Strike, Tops, and UCI International.

7.     Except as otherwise indicated, the facts, statements, and opinions set forth in this Declaration are based on (i) my personal knowledge of the Debtors' operations and finances; (ii) my discussions with members of the Debtors' Board of Directors, management team, and other employees of the Debtors; (iii) my review of relevant documents, including data and information that I considered in forming my opinions about liquidation; (iv) information supplied to me by the Debtors' advisors, and (v) my views or opinions based upon my experience as a professional who has performed and analyzed various corporate liquidation analyses.  If called upon to testify, I could and would testify competently to the facts and opinions set forth in this Declaration.

8.     I am not being compensated specifically for this testimony other than through payments received by Alix as a professional retained by the Debtors as the Debtors' financial advisor in these chapter 11 cases, which has previously been disclosed in the *Debtors' Application for Entry of an Order Authorizing the Employment and Retention of AlixPartners, LLP As Financial Advisor Effective as of the Petition Date* [Docket No. 285].  My compensation, and that of Alix, is not contingent upon the result of my work on the Liquidation Analysis or my testimony in connection therewith.

## II. Liquidation Analysis

9.     I make this Declaration with the Debtors' authorization to offer the testimony I would give relating to the liquidation analysis attached as Exhibit C to the Disclosure Statement (the "**Liquidation Analysis**"), which I performed regarding the requirement under section 1129(a)(7) of title 11 of the United States Code (the "**Bankruptcy Code**") that a debtor must demonstrate that each Holder of a claim or equity interest in an impaired class has either (a) accepted the plan, or (b) is receiving at least as much value under a proposed plan as it would

receive in a hypothetical chapter 7 liquidation (the "**Best Interests Test**").  To the best of my knowledge, information, and belief, insofar as I have been able to ascertain after reasonable inquiry and the work I performed together with those working with me and under my supervision, one or both of these requirements are true as to each Holder of a claim or equity interest in an impaired class for each Debtor.

10.     To evaluate the Best Interest Test, I—and others under my supervision— prepared the Liquidation Analysis, which represents a reasonable, good-faith attempt by the Debtors and their advisors to estimate the proceeds that would be generated and the recoveries that would be achieved if the Debtors' assets were liquidated in accordance with chapter 7 of the Bankruptcy Code.  A true and correct copy of the Liquidation Analysis is attached hereto as **Exhibit A** and incorporated by reference.

11.     The Liquidation Analysis was completed after extensive analysis and due diligence by the Debtors, myself and others on the Alix team.  I am familiar with the methods used and the conclusions reached in preparation of the Liquidation Analysis.  The Liquidation Analysis includes a description of the process and assumptions used in, and conclusions reached by, the analysis.

12.     The Liquidation Analysis assumes that the Debtors would be liquidated in a jointly administered case, but each Debtor is treated as an independent legal entity without substantive consolidation.[3]

13.     As stated in the Liquidation Analysis, subject to the assumptions and limitations described therein, the Net Liquidation Proceeds Available for Distribution (as defined

---

[3] As wholly owned subsidiaries of Debtor Core Scientific Operating Company, assets held by American Property Acquisition, LLC (e.g., Calvert City, KY) and American Property Acquisitions I, LLC (Marble, NC facility) are included in the recoveries assumed for Core Scientific Operating Company.

in the Liquidation Analysis) to the Debtors' claimants range from approximately $314.2 million to $573.8 million, net of liquidation expenses, compared to approximately $1.5 billion of Total Enterprise Value under the Plan.

14.     To determine recoveries under a hypothetical chapter 7 liquidation, The Liquidation Analysis illustrates Net Liquidation Proceeds for Distribution available to Holders of Allowed Claims and Interests in the Debtors in accordance with the Bankruptcy Code's priority scheme.

15.     Recoveries pursuant to the Liquidation Analysis were compared to recoveries under the Plan to demonstrate that the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.  Table 1 below sets forth recoveries to Holders of Allowed Claims and Interests pursuant to the Liquidation Analysis compared to the Plan.

<strong><u>Table 1:  Liquidation vs. Plan Recoveries</u></strong>

| Class and Designation | Plan Recoveries | Chapter 7 Liquidation | |
|---|---|---|---|
| | | Low | High |
| Chapter 11 Administrative Claims[4] | 100% | 100% | 100% |
| Mechanics' Liens | 100% | 100% | 100% |
| Mortgages | 100% | 100% | 100% |
| DIP Loan Claims | 100% | 100% | 100% |
| Miner Equipment Lender Claims | 100% | 13% | 34% |
| Other Secured Claims (Non-Miner Equipment Lender Claims) | 100% | 100% | 100% |
| Convertible Notes (April) | 100% | 40% | 79% |
| Convertible Notes (August) | 100% | 16% | 43% |

---

[4]  Under a Chapter 7 liquidation scenario, Carve Out Claims (as defined in the Liquidation Analysis) would be satisfied prior to DIP Claims, pursuant to the DIP Order.

| Class and Designation | Plan Recoveries | Chapter 7 Liquidation | |
|---|---|---|---|
| | | Low | High |
| General Unsecured Claims | 100% | 7% | 19% |
| Equity Interests | greater than 0% | 0% | 0% |

16.     As detailed in Table 1, I have determined that on the Emergence Date, the Plan provides all Holders of Allowed Claims and Interests with a recovery that is not less than what they would otherwise receive pursuant to a liquidation of the Debtors' assets under chapter 7 of the Bankruptcy Code.

17.     In light of the foregoing, I believe that the Best Interests Test is satisfied. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: January 14, 2024
           New York, NY

                              */s/ Rodi Blokh*
                              Rodi Blokh
                              Partner
                              AlixPartners, LLP