IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| CORE SCIENTIFIC, INC., *et al.*, | § § | Case No. 22-90341 (CML) |
| Debtors.[1] | § § § | (Jointly Administered) |

DECLARATION OF JOHN SINGH IN SUPPORT OF
CONFIRMATION OF FOURTH AMENDED JOINT CHAPTER 11
PLAN OF CORE SCIENTIFIC, INC. AND ITS AFFILIATED DEBTORS

I, John Singh, pursuant to section 1746 of title 28 of the United States Code, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

1. I am a Partner in the Restructuring and Special Situations Group at PJT Partners LP ("**PJT**"), an investment banking firm listed on the New York Stock Exchange with its principal offices at 280 Park Avenue, New York, New York 10017.

2. PJT was retained in October 2022 to provide general restructuring and strategic advice and is serving as the investment banker for Core Scientific, Inc. and its affiliated debtors, as debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"). I submit this declaration (this "**Declaration**") in support of confirmation of the *Fourth Amended Joint Chapter 11 Plan of Core Scientific, Inc. and*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions VII LLC (3198). The Debtors' corporate headquarters is 210 Barton Springs Road, Suite 300, Austin, Texas 78704. The Debtors' service address is 2407 S. Congress Ave, Suite E-101, Austin, Texas 78704.

*Its Affiliated Debtors* (Docket No. 1639), filed on December 28, 2023 (including any exhibits, schedules, or supplements thereto and as may be further amended, modified or supplemented in accordance with its terms, the "**Plan**").[2]

3.      I make this Declaration to offer the testimony I would provide relating to the valuation analysis (the "**Valuation Analysis**") to estimate the total enterprise value (the "**Enterprise Value**") and the implied equity value (the "**Plan Equity Value**") of the Reorganized Debtors on a going concern basis and pro forma for the transactions contemplated by the Plan. A summary of the Valuation Analysis is attached as Exhibit D to the Initial Disclosure Statement,[3] and is incorporated by reference as set forth fully herein. I prepared the Valuation Analysis with the assistance of others at PJT working under my supervision and direction. The Valuation Analysis, my views and opinions concerning the Valuation Analysis, and the bases for those views and opinions are described below.

4.      Except as otherwise indicated, the statements in this Declaration are based on (i) my personal knowledge, including of the Debtors' operations and finances, (ii) my review of relevant documents, (iii) information provided to me by PJT employees working with me and/or under my supervision, (iv) information provided to me by, or discussions with, the members of the Debtors' management team or their other advisors, and/or (v) my opinion based upon my experience. If called to testify, I could and would testify competently to each of the statements set forth herein. I am not being compensated specifically for this testimony other than through

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

[3] *Disclosure Statement for the Third Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtor* (Docket No. 1439) (the "**Initial Disclosure Statement**").

payments received by PJT as a professional retained by the Debtors as set forth in PJT's engagement letter.[4]

## Qualifications and Professional Background

5.  I received a Bachelor of Science in Finance and Economics from the Leonard N. Stern School of Business of New York University and a Master of Business Administration from the Wharton School of the University of Pennsylvania. I have approximately fifteen (15) years of investment banking and restructuring experience and three (3) years of experience as a fixed income analyst before that. Prior to joining PJT, I was a Vice President in the Restructuring & Reorganization Group of the Blackstone Group, PJT's predecessor ("**Blackstone**"). Since joining Blackstone in 2009, and continuing at PJT, I have worked on a broad range of restructuring and reorganization assignments for companies, creditor groups, special committees, governmental entities, and acquirers of distressed assets. Over the course of my career, I have advised senior management and boards of directors in a wide variety of industries in connection with restructurings, mergers and acquisitions, and financing transactions and have provided, conducted, and participated in several valuation analyses.

6.  I have been involved in numerous restructurings, including, among others: Automotores Gildemeister S.A.; Cecon ASA (re: Davie Shipyard); Bristow Group; Borden Dairy Company; Boy Scouts of America; CarbonLite Holdings, LLC; CBL & Associates Properties, Inc.; CHC Helicopter; Desarrolladora Homex, S.A.B. de C.V.; Financial Guaranty Insurance Company; Fusion Connect, Inc.; Garrett Motion, Inc.; Glass Mountain Pipeline Holdings, LLC; High Ridge Brands Co.; Homer City Generation; Houston Astros; Inversiones Alsacia S.A.;

---

[4] Under PJT's engagement letter, PJT will be entitled to receive certain fees in connection with consummation of the Plan.

Kerzner International; MBIA, Inc. (re: Bank of America); M&G Chemicals S.A.; Mortgage Guaranty Insurance Corporation; Nortel Networks Corporation; Pacific Exploration & Production Corporation; Pension Benefit Guaranty Corporation (re: Smurfit Stone); PES Holdings, LLC; Phoenix Services Topco LLC; Pierre Foods, Inc.; PHI, Inc.; Ruby Pipeline, L.L.C.; Simmons Bedding Company; Syncreon; Twin River; Village Roadshow Entertainment Group; Washington Prime Group Inc.; Waypoint Leasing Holdings Ltd.; and Westinghouse Electric Company LLC.

### Valuation Opinion

**I.    Summary of Enterprise Value**

7.    The Valuation Analysis was prepared as of November 9, 2023, at the time of the filing of the Initial Disclosure Statement.  PJT estimated the range of the Enterprise Value of the Reorganized Debtors, collectively, as of the then assumed Effective Date of December 31, 2023, to be approximately $1.4 billion to approximately $1.8 billion.  For purposes of the Valuation Analysis, I assumed that no changes that would materially affect the Enterprise Value would occur between the date that the Initial Disclosure Statement was filed and the then assumed Effective Date.  I am also not aware of any factors that would materially affect the Enterprise Value based on the now anticipated Effective Date of January 23, 2024.

**II.    Summary of Plan Equity Value**

8.    The Valuation Analysis also includes an estimated potential range of the Plan Equity Value of the Reorganized Debtors, as of the assumed Effective Date of December 31, 2023, which consists of the Enterprise Value minus the sum of the net debt (calculated by subtracting the estimated excess cash balance from the estimated total debt as of the assumed Effective Date) of the Reorganized Debtors.

9.    Based on the assumptions made as of the filing of the Initial Disclosure Statement on November 9, 2023, PJT previously estimated the range of Plan Equity Value of the

Reorganized Debtors, collectively, as of the then assumed Effective Date of December 31, 2023, to be approximately $694 million to approximately $1.094 billion. However, to account for updates to the anticipated capital structure upon the now assumed Effective Date since the filing of the Initial Disclosure Statement, I estimate the range of Plan Equity Value of the Reorganized Debtors, collectively, as of the now assumed Effective Date of January 23, 2024, to be approximately $832 million to approximately $1.232 billion, calculated based on an estimated pro forma excess cash balance of approximately $40 million and estimated pro forma indebtedness of $608 million, which consists of approximately (a) $61 million drawn under the Exit Facility, (b) $150 million of New Secured Notes, (c) $260 million of New Secured Convertible Notes, (d) $53 million of Miner Equipment Lender Takeback Debt, (e) $20 million of reinstated Other Secured Claims, (f) $54 million of secured debt for mechanic's liens claimants under the M&M Lien Settlements, (g) $9 million of unsecured debt under the Dalton Settlement,[5] and (h) $1 million of Secured Mortgage Claims.

### III. Valuation Assumptions

10. The Valuation Analysis represents a valuation of the Reorganized Debtors assuming continuing operations of the Debtors' business, after giving effect to the Plan, based on the application of standard valuation techniques and methodologies. The estimated values set forth in this Declaration and the Valuation Analysis: (a) do not purport to reflect or constitute an appraisal of the assets of the Reorganized Debtors; (b) do not constitute an opinion on the terms and provisions or fairness from a financial point of view to any Holder of the consideration to be received by such Holder under the Plan; (c) do not constitute a recommendation to any Holder of

---

[5] *See Order (I) Authorizing Assumption and Performance of the Legacy Dalton Agreements, As Amended By the Dalton Settlement Agreement and (II) Granting Related Relief* (Docket No. 1651) (the "**Dalton Settlement**").

Claims or Interests as to how such Holder should vote or otherwise act with respect to the Plan; and (d) do not necessarily reflect the actual value that might be realized through a sale or liquidation of the Reorganized Debtors or any securities or funded indebtedness to be issued pursuant to the Plan, which may be different than the amounts set forth in the Valuation Analysis.

11. The Valuation Analysis is based on (a) review of certain historical financial information of the Debtors for recent years and interim periods provided by the Debtors; (b) discussion regarding the Debtors' performance, future prospects, and industry observations with certain members of the Debtors' senior management; (c) certain economic and industry information relevant to the Debtors' operating businesses; (d) the financial projections attached as Exhibit E to the Initial Disclosure Statement (the "**Financial Projections**"); and (e) such other studies and analyses as I deemed appropriate. Neither I nor PJT independently verified the Financial Projections or other information that PJT used in the Valuation Analysis, PJT is not offering an opinion as to the attainability of the Financial Projections, and no independent valuations or appraisals of the Debtors or their assets were sought or obtained in connection therewith. It is common for professionals conducting a valuation analysis and providing opinions on valuation to rely on the types of information provided and prepared by company management or other advisors.

12. The estimated values set forth in the Valuation Analysis assume that the Reorganized Debtors will achieve their Financial Projections in all material respects. The Debtors' management team advised PJT that the Financial Projections were reasonably prepared in good faith and on a basis reflecting the Debtors' best estimates and judgments as to the future operating and financial performance of the Reorganized Debtors. The Valuation Analysis assumed that the

actual performance of the Reorganized Debtors will correspond to the Financial Projections in all material respects.

13. In addition, as disclosed in <u>Exhibit D</u> to the Initial Disclosure Statement, the value of an operating business is subject to numerous uncertainties and contingencies that are difficult to predict and will fluctuate with changes in factors affecting the financial condition and prospects of such a business. As a result, the Valuation Analysis is not necessarily indicative of actual outcomes, which may be significantly more or less favorable than those set forth therein. Furthermore, the actual value of newly issued securities and funded indebtedness is subject to additional uncertainties and contingencies, all of which are difficult to predict. Finally, the Valuation Analysis is not necessarily indicative of actual values or future results, which may be significantly more or less favorable than those described herein.

14. For purposes of the Valuation Analysis, I assumed that no material changes that could affect estimated Enterprise Value would occur between the date of the Valuation Analysis and the Effective Date and I am not aware of any such material changes. The Valuation Analysis does not constitute an opinion as to the fairness from a financial point of view of the consideration to be received or paid under the Plan, of the terms and provisions of the Plan, or with respect to any other matters.

**IV.    Methodology**

15. In preparing the Valuation Analysis, I considered a variety of factors and evaluated a variety of financial analyses, including: (a) a discounted cash flow ("**DCF**") analysis; (b) a comparable companies analysis; and (c) a precedent transaction analysis. These methodologies are standard and commonly used valuation techniques. In performing the Valuation Analysis, I relied primarily upon the DCF analysis and comparable companies analysis.

While I considered the precedent transactions analysis, I deemed this methodology to be of limited relevance due to a lack of precedent transactions.

16. I did not consider any one analysis or factor to the exclusion of any other analyses or factors. Accordingly, I believe that the Valuation Analysis must be considered as a whole and that selecting portions of the analysis and factors could create a misleading or incomplete view of the processes underlying the preparation of the valuation. Reliance on only one of these methodologies used or portions of the analysis performed could create a misleading or incomplete conclusion.

### V. Conclusion

17. As indicated above, based on the methodologies relied upon, I estimate the range of Enterprise Value of the Reorganized Debtors, collectively, as of the assumed Effective Date of January 23, 2024, to be approximately $1.4 billion to approximately $1.8 billion. Based on the estimated pro forma excess cash balance of approximately $40 million and estimated pro forma indebtedness of $608 million as of the assumed Effective Date of January 23, 2024, I estimate the range of the Plan Equity Value for the Reorganized Debtors, collectively, as of the assumed Effective Date of January 23, 2024, to be approximately $832 million to approximately $1.232 billion.

18. For the reasons set forth herein, I believe that the Valuation Analysis of the Reorganized Debtors is based upon relevant sources of information, appropriate valuation assumptions, and appropriate valuation methodologies.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: January 14, 2024
New York, New York

*/s/ John Singh*
John Singh
Partner
PJT Partners LP