**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| | § | |
| **In re:** | § | **Chapter 11** |
| | § | |
| **CORE SCIENTIFIC, INC.,** *et al.,* | § | **Case No. 22-90341 (CML)** |
| | § | |
| | § | **(Jointly Administered)** |
| **Debtors.**[1] | § | |

## CERTIFICATE OF SERVICE

I, Serina Tran, depose and say that I am employed by Stretto, the claims and noticing agent for the Debtors in the above-captioned cases.

On December 7, 2023, at my direction and under my supervision, employees of Stretto caused the following documents to be served via overnight mail on Oklahoma Gas and Electric Company, Attn: Ashley Fulk at PO Box 321, Oklahoma City, OK 73101, and via electronic mail at kernnd@oge.com and fulkap@oge.com:

- **Notice of (I) Conditional Approval of Disclosure Statement, (II) Approval of (A) Solicitation and Voting Procedures and (B) Notice Procedures for the Assumption or Rejection of Executory Contracts and Unexpired Leases; (III) Combined Hearing to Consider Final Approval of Disclosure Statement and Confirmation pf Plan; and (IV) Establishing Notice and Objection Procedures for Final Approval of Disclosure Statement and Confirmation of Plan** (attached hereto as **Exhibit A**)

- **[Customized for Class 8] Ballot for Voting to Accept or Reject the Third Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors** (attached hereto as **Exhibit B**)

- **Third Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors** (Docket No. 1438)

- **Disclosure Statement for Third Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors** (Docket No. 1439)

[THIS SPACE INTENTIONALLY LEFT BLANK]

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Special Mining (Oklahoma) LLC (4327); American Property Acquisitions, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisition I, LLC (9717); and American Property Acquisitions, VII, LLC (3198). The Debtors' corporate headquarters and service address is 210 Barton Springs Road, Suite 300, Austin, Texas 78704.

- **Order (I) Scheduling Combined Hearing on (A) Adequacy of Disclosure Statement and (B) Confirmation of Plan; (II) Conditionally Approving Disclosure Statement and Form and Manner of Notice of Conditional Disclosure Statement Hearing; (III) Establishing Solicitation and Voting Procedures; (IV) Establishing Notice and Objection Procedures for Confirmation of Proposed Plan; (V) Approving Notice Procedures for the Assumption or Rejection of Executory Contracts and Unexpired Leases; (VI) Approving Notice Procedures for Reinstatement of Claims; (VII) Establishing Rights Offering Procedures; and (VIII) Granting Related Relief** (Docket No. 1447, pages 1-17)

- **Solicitation and Voting Procedures** (attached hereto as **Exhibit C**)

- **Postage-Prepaid Return Envelope**

In addition to the methods of service set forth herein, parties who have requested electronic notification of filings via the Bankruptcy Court's CM/ECF system were sent the above referenced documents via electronic service.

Dated: December 8, 2023

_/s/ Serina Tran_
Serina Tran
STRETTO
410 Exchange, Suite 100
Irvine, CA 92602
Telephone: 949-404-4152
Email: TeamCoreScientific@stretto.com

# Exhibit A

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| **CORE SCIENTIFIC, INC.,** *et al.,* | § | Case No. 22-90341 (CML) |
| | § | |
| Debtors[1] | § | (Jointly Administered) |
| | § | |

**NOTICE OF (I) CONDITIONAL APPROVAL OF DISCLOSURE
STATEMENT, (II) APPROVAL OF (A) SOLICITATION AND VOTING
PROCEDURES AND (B) NOTICE PROCEDURES FOR THE ASSUMPTION OR
REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES;
(III) COMBINED HEARING TO CONSIDER FINAL APPROVAL OF
DISCLOSURE STATEMENT AND CONFIRMATION OF PLAN; AND (IV)
ESTABLISHING NOTICE AND OBJECTION PROCEDURES FOR FINAL
<u>APPROVAL OF DISCLOSURE STATEMENT AND CONFIRMATION OF PLAN</u>**

**TO ALL PARTIES IN INTEREST IN THE CHAPTER 11 CASES OF:**

| Debtor | Case Number |
|---|---|
| Core Scientific Mining LLC | 22-90340 |
| Core Scientific, Inc. | 22-90341 |
| Core Scientific Acquired Mining LLC | 22-90342 |
| Core Scientific Operating Company | 22-90343 |
| Radar Relay, Inc. | 22-90344 |
| Core Scientific Specialty Mining (Oklahoma) LLC | 22-90345 |
| American Property Acquisition, LLC | 22-90346 |
| Starboard Capital LLC | 22-90347 |
| RADAR LLC | 22-90348 |
| American Property Acquisitions I, LLC | 22-90349 |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions VII LLC (3198). The Debtors' corporate headquarters is 210 Barton Springs Road, Suite 300, Austin, Texas 78704. The Debtors' service address is 2407 S. Congress Ave, Suite E-101, Austin, Texas 78704.

| Debtor | Case Number |
|---|---|
| American Property Acquisitions VII, LLC | 22-90350 |

### PLEASE TAKE NOTICE OF THE FOLLOWING:

1. ***Conditional Approval of Disclosure Statement***.  On November 14, 2023 the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") held a hearing (the "**Conditional Disclosure Statement Hearing**") at which it conditionally approved the *Disclosure Statement for Third Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors,* filed on November 16, 2023 (Docket No. 1439) (including any exhibits and schedules thereto and as may be modified, amended, or supplemented, the "**Disclosure Statement**") of Core Scientific, Inc. and its affiliated debtors in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), and thereafter entered an order (the "**Disclosure Statement Order**") with respect thereto.  The Disclosure Statement Order, among other things, authorizes the Debtors to solicit votes to accept the *Third Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors*, filed on November 16, 2023 (Docket No. 1438) (including any exhibits and schedules thereto and as may be modified, amended, or supplemented, the "**Plan**").[2]

2. ***Combined Hearing***.  A hearing to consider confirmation of the Plan and final approval of the Disclosure Statement (the "**Combined Hearing**") has been scheduled for **December 22, 2023 at 10:00 a.m. (Prevailing Central Time)**, before the Honorable Christopher M. Lopez, United States Bankruptcy Judge, in the Bankruptcy Court.  The Combined Hearing may be adjourned or continued from time to time by the Bankruptcy Court or the Debtors, with the consent of the Requisite Consenting Creditors, without further notice other than by a Bankruptcy Court announcement providing for such adjournment or continuation on its agenda.  The Plan may be modified, if necessary, prior to, during, or as a result of the Combined Hearing.

3. ***Voting Record Date***.  Holders of Claims or Interests in Class 1 (April Convertible Notes Secured Claims), Class 2 (August Convertible Notes Secured Claims), Class 3 (Miner Equipment Lender Secured Claims), Class 5 (M&M Lien Secured Claims), Class 6 (Secured Mortgage Claims), Class 8 (General Unsecured Claims), Class 11 (Section 510(b) Claims), and Class 12 (Existing Common Interests), who are otherwise eligible to vote shall be entitled to vote to accept or reject the Plan as of **November 9, 2023** (the "**Voting Record Date**").

4. ***Voting Deadline***.  If you received a Solicitation Package, including a Ballot, and intend to vote on the Plan, you must: (i) follow the instructions carefully; (ii) complete all of the required information on the Ballot; and (iii) execute and return your completed Ballot according to and as set forth in detail in the voting instructions on your Ballot so that it is actually received by the Debtors' solicitation and voting agent, Stretto, Inc. ("**Stretto**" or the "**Voting Agent**") on or before **December 13 2023 at 5:00 p.m. (Prevailing Central Time)** (the "**Voting**

---

[2]  All capitalized terms used but not defined herein or in the enclosed voting instructions have the meanings ascribed to them in the Plan, attached as Exhibit A to the Disclosure Statement.

Deadline"). **ANY FAILURE TO FOLLOW THE VOTING INSTRUCTIONS INCLUDED WITH YOUR BALLOT MAY DISQUALIFY YOUR BALLOT AND YOUR VOTE.**

5.      ***Parties in Interest Not Entitled to Vote***.  Holders of Claims or Interests in Class 4 (Other Secured Claims), Class 7 (Priority Non-Tax Claims), Class 10 (Intercompany Claims), and Class 11 (Intercompany Interests) are not entitled to vote on the Plan and will not receive a Ballot.  If any creditor seeks to challenge the Allowed amount of its Claim for voting purposes, such creditor must file with the Court a motion for an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing such Claim for voting purposes in a different amount (a "**Rule 3018(a) Motion**").  Any Rule 3018(a) Motion must be filed with the Court not later than **5:00 p.m. (Prevailing Central Time) on December 8, 2023**.  Upon the filing of any such Rule 3018(a) Motion, such creditor's Ballot shall be counted in accordance with the guidelines provided in the Solicitation and Voting Procedures attached as **Exhibit 2** to the Disclosure Statement Order, unless temporarily Allowed in a different amount by an order of the Court entered prior to or concurrent with entry of an order confirming the Plan.

6.      ***Objections to Confirmation***.  The deadline to object or respond to confirmation of the Plan or final approval of the Disclosure Statement is **December 15, 2023 at 5:00 p.m. (Prevailing Central Time)** (the "**Objection Deadline**").

7.      ***Form and Manner of Objections to Confirmation***.  Objections and responses, if any, to confirmation of the Plan or final approval of the Disclosure Statement, must: (i) be in writing; (ii) conform to the Bankruptcy Rules and the Bankruptcy Local Rules, and any order of the Court; (iii) set forth the name of the objecting party and the nature and amount of Claims or Interests held or asserted by the objecting party against the Debtors' estates or property; (iv) provide the basis for the objection and the specific grounds therefor, and, if practicable, a proposed modification to the Plan that would resolve such objection; and (v) be filed with the Bankruptcy Court (with proof of service) via ECF or by mailing to the Bankruptcy Court at United States Bankruptcy Court Clerk's Office, United States Courthouse, 515 Rusk Avenue, Courtroom 401, 4th Floor, Houston, Texas 77002, so as to be actually received no later than the Objection Deadline.

8.      IF AN OBJECTION TO CONFIRMATION OF THE PLAN OR FINAL APPROVAL OF THE DISCLOSURE STATEMENT IS NOT FILED AND SERVED STRICTLY AS PRESCRIBED HEREIN, THEN THE OBJECTING PARTY MAY BE BARRED FROM OBJECTING TO CONFIRMATION OF THE PLAN OR FINAL APPROVAL OF THE DISCLOSURE STATEMENT OR THE ADEQUACY THEREOF AND MAY NOT BE HEARD AT THE HEARING.

9.      ***Additional Information***.  Any party in interest wishing to obtain information about the solicitation procedures or copies of the Disclosure Statement, the Plan, or other solicitation materials should contact Stretto through (i) e-mail at CoreScientificInquiries@stretto.com, (ii) by writing to Core Scientific, Inc., Ballot Processing Center, c/o Stretto, Inc., 410 Exchange, Suite 100, Irvine, CA 92602, or (iii) via telephone at (949) 404-4152 (U.S./Canada Toll-Free) or + (888) 765-7875 (outside of the U.S.).  Interested parties may also review the Disclosure Statement and the Plan free of charge at

https://dm.epiq11.com/sertasimmons.  In addition, the Disclosure Statement and Plan are on file with the Bankruptcy Court and may be reviewed for a fee by accessing the Bankruptcy Court's website: https://www.txs.uscourts.gov/page/bankruptcycourt.  Note that a PACER password and login are needed to access documents on the Bankruptcy Court's website.  A PACER password can be obtained at: https://pacer.uscourts.gov/.

### NOTICE REGARDING CERTAIN RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS IN PLAN

**If you (i) vote to accept the Plan, (ii) are solicited to vote to accept or reject the Plan, but do not vote to either accept or reject the Plan, and do not opt out of granting the releases set forth in the Plan, (iii) vote, or are deemed, to reject the Plan or are presumed to accept the Plan but do not opt out of granting the releases set forth in the Plan, or (iv) were given notice of the opportunity to opt out of granting the releases contained in the Plan but do not opt out, you shall be deemed to have consented to the releases contained in Section 10.6(b) of the Plan.  The releases as presented in the Plan are provided below:**

**SECTION 10.5          INJUNCTION.**

**Except as otherwise expressly provided in the Plan or for distributions required to be paid or delivered pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold Claims or Interests that have been released pursuant to Section 10.6(a) or Section 10.6(b), shall be discharged pursuant to Section 10.3 of the Plan, or are subject to exculpation pursuant to Section 10.7, and all Subcontractors and all other parties in interest are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Released Parties, and/or the Exculpated Parties (to the extent of the exculpation provided pursuant to Section 10.7 with respect to the Exculpated Parties): (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (iii) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless (x) such Entity has timely asserted such setoff right either in a Filed Proof of Claim, or in another document Filed with the Bankruptcy Court explicitly preserving such setoff or that otherwise indicates that such entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise or (y) such right to setoff arises under a postpetition agreement with the Debtors or an Executory Contract that has been assumed by the Debtors as of the Effective Date; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released, settled, and/or treated, entitled to a distribution, or cancelled pursuant to the Plan or otherwise Disallowed; *provided* that such persons who have held, hold, or may hold Claims against, or Interests in,**

a Debtor, a Reorganized Debtor, or an Estate shall not be precluded from exercising their rights and remedies, or obtaining the benefits, solely pursuant to and consistent with the terms of the Plan.

Subject in all respects to Section 11.1, no entity or person may commence or pursue a Claim or Cause of Action of any kind against any Released Party or Exculpated Party that arose or arises from, in whole or in part, the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors (which includes, for the avoidance of doubt, all claims and Causes of Action asserted or assertable in the Securities Class Action), the DIP Facility, the Convertible Notes Agreements, the Miner Equipment Lender Agreements, the Mortgage Agreements, the General Contracts, any and all agreements relating to M&M Liens, and any and all related agreements, instruments, and/or other documents, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Plan Settlements, the New Secured Convertible Notes Documents, the New Secured Notes Documents, the Contingent Payment Obligations Documents, the New Miner Equipment Lender Debt Documents, the Exit Facility Documents, the New Warrants Agreement, the Rights Offering, the Backstop Commitment Letter, the Initial DIP Loan Documents, the DIP Facility, the Terminated RSA, the RSA, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan (including, but not limited to, the New Common Interests), or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a claim of willful misconduct, fraud or gross negligence against a Released Party or Exculpated Party and (ii) specifically authorizing such Entity or Person to bring such Claim or Cause of Action against any such Released Party or Exculpated Party.  The Bankruptcy Court shall have sole and exclusive jurisdiction to determine whether a Claim or Cause of Action is colorable and, only to the extent legally permissible and as provided for in Section 11.1, shall have jurisdiction to adjudicate the underlying colorable Claim or Cause of Action.

**SECTION 10.6(a)    <u>RELEASES BY THE DEBTORS</u>.**

Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the obligations of the Debtors under the Plan and the contributions of the Released Parties to facilitate and implement the Plan, except as otherwise provided in the Plan or in the Confirmation Order, on and after the Effective Date, the Released Parties are deemed conclusively, absolutely,

unconditionally and irrevocably, released and discharged by the Debtors, the Reorganized Debtors, and the Estates from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Reorganized Debtors, the Estates, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors (which includes, for the avoidance of doubt, all claims and Causes of Action asserted or assertable in the Securities Class Action), the DIP Facility, the Convertible Notes Agreements, the Miner Equipment Lender Agreements, the Mortgage Agreements, the General Contracts, any and all agreements relating to M&M Liens, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Plan Settlements, the New Secured Convertible Notes Documents, the New Secured Notes Documents, the Contingent Payment Obligations Documents, the New Miner Equipment Lender Debt Documents, the Exit Facility Documents, the New Warrants Agreement, the Rights Offering, the Backstop Commitment Letter, the Initial DIP Loan Documents, the DIP Facility, the Terminated RSA, the RSA, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan (including, but not limited to, the New Common Interests), or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth in Section 10.6(a) of the Plan (i) shall only be applicable to the maximum extent permitted by law; (ii) shall not be construed as (a) releasing any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud (*provided* that actual fraud shall not exempt from the scope of these Debtor releases any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, (b) releasing any Released Party from Claims or Causes of Action held by the Debtors arising from an act or omission that is determined by a Final Order or by a federal government agency to have constituted a violation of any federal securities laws or (c) releasing any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

**SECTION 10.6(b)**     <u>RELEASES BY HOLDERS OF CLAIMS AND INTERESTS</u>.

**Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, except as otherwise provided in the Plan or in the Confirmation Order, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, each Releasing Party, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released, and discharged the Debtors, the Reorganized Debtors, and the Released Parties from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims or Causes of Action asserted or that may be asserted on behalf of the Debtors or their Estates, that such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, including any Claims or Causes of Action based on or relating to, or in any manner arising from, in whole or in part, the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors (which includes, for the avoidance of doubt, all claims and Causes of Action asserted or assertable in the Securities Class Action), the DIP Facility, the Convertible Notes Agreements, the Miner Equipment Lender Agreements, the Mortgage Agreements, the General Contracts, any and all agreements relating to M&M Liens, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Plan Settlements, the New Secured Convertible Notes Documents, the New Secured Notes Documents, the Contingent Payment Obligations Documents, the New Miner Equipment Lender Debt Documents, the Exit Facility Documents, the New Warrants Agreement, the Rights Offering, the Backstop Commitment Letter, the Initial DIP Loan Documents, the DIP Facility, the Terminated RSA, the RSA, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan (including, but not limited to, the New Common Interests), or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth in Section 10.6(b) of the Plan (i) shall only be applicable to the maximum extent permitted by law; and (ii) shall not be construed as (a) releasing any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud (*provided* that actual fraud shall not exempt from the scope of these third-party releases any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or**

state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, or (b) releasing any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

**SECTION 10.7**        **EXCULPATION.**

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out, in whole or in part, from the Petition Date through the Effective Date, of the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors, the DIP Facility, the Convertible Notes Agreements, the Miner Equipment Lender Agreements, the Mortgage Agreements, the General Contracts, any and all agreements relating to M&M Liens, and related agreements, instruments, or other documents, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Plan Settlements, the New Secured Convertible Notes Documents, the New Secured Notes Documents, the Contingent Payment Obligations Documents, the New Miner Equipment Lender Debt Documents, the Exit Facility Documents, the New Warrants Agreement, the Rights Offering, the Backstop Commitment Letter, the Initial DIP Loan Documents, the DIP Facility, the Terminated RSA, the RSA, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan (including, but not limited to, the New Common Interests), or the distribution of property under the Plan, or any other related agreement, except for Claims or Causes of Action arising from an act or omission that is judicially determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects, such Exculpated Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities. The Exculpated Parties have, upon completion of the Plan, shall be deemed to have, participated in good faith and in compliance with all applicable laws with regard to the solicitation and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan. Notwithstanding anything to the contrary in the foregoing, the exculpations set forth in Section 10.7 of the Plan (i) shall only be applicable to the maximum extent permitted by law; and (ii) shall not be construed as (a) exculpating any Exculpated Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud (*provided* that actual

**fraud shall not exempt from the scope of these exculpations any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, or (b) exculpating any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.**

**SECTION 5.17**          **CANCELLATION OF LIENS.**

(a)     Except as otherwise specifically provided in the Plan, including sections 4.4 and 4.6 of the Plan, all notes, instruments, certificates evidencing debt of the Debtors and Existing Common Interests will be cancelled and obligations of the Debtors thereunder will be discharged and of no further force or effect, except for the purpose of allowing the applicable agents and trustees to receive distributions from the Debtors under the Plan and to make any further distributions to the applicable Holders on account of their Allowed Claims and Interests.

(b)     After the Effective Date and following (i) the distributions to Holders on account of Allowed Convertible Notes Secured Claims and Allowed Miner Equipment Lender Secured Claims and/or (ii) with regard to Allowed M&M Lien Secured Claims, satisfaction of the applicable M&M Lien Takeback Debt, the Debtors or the Reorganized Debtors, at their expense, may, in their sole discretion, take any action necessary to terminate, cancel, extinguish, and/or evidence the release of any and all mortgages, deeds of trust, Liens, pledges, and other security interests with respect to the Convertible Notes Secured Claims, Miner Equipment Lender Secured Claims, and M&M Lien Secured Claims, including, without limitation, the preparation and filing of any and all documents necessary to terminate, satisfy, or release any mortgages, deeds of trust, Liens, pledges, and other security interests held by the Holders of the M&M Lien Secured Claims, Miner Equipment Lender Secured Claims, the Notes Agent, and/or Convertible Noteholders, including, without limitation, UCC-3 termination statements.

**Relevant Definitions Related to Release and Exculpation Provisions**:

          *"Exculpated Parties"* means each of the following in their capacity as such and, in each case, to the maximum extent permitted by law: (i) the Debtors; and (ii) Equity Committee and its members, each solely in their capacity as such.

          *"Related Parties"* means with respect to a Person, that Person's current and former Affiliates, and such Person's and its current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, fiduciaries, trustees, advisory board members, financial advisors, partners, limited partners, general partners, attorneys, accountants, managed accounts or funds, management companies, fund advisors, investment bankers, consultants, representatives, and other professionals, and such Person's respective heirs, executors, estates, and nominees, each in their capacity as such, and any and all

other Persons or Entities that may purport to assert any Cause of Action derivatively, by or through the foregoing entities.

*Released Parties"* means, collectively: (i) the Debtors; (ii) the Reorganized Debtors; (iii) the Equity Committee and its members that are party to the RSA, solely in their capacities as such; (iv) the Backstop Parties; (v) the Settling Miner Equipment Lenders; (vi) Brown Corporation; (vii) Holliwood LLC; (viii) the Ad Hoc Noteholder Group; (ix) the Consenting Creditors; (x) the Exit Lenders; (xi) the Notes Agent, solely in its capacity as such; and (xii) with respect to each of the foregoing Persons in clauses (i) through (xi), all Related Parties. Notwithstanding the foregoing, any Person that opts out of the releases set forth in section 10.6(b) of the Plan shall not be deemed a Released Party thereunder.

*Releasing Parties"* means collectively, and in each case solely in their capacity as such, (i) the Debtors; (ii) the Reorganized Debtors; (iii) with respect to each of the foregoing Persons in clauses (i) through (ii), all Related Parties; (iv) the Released Parties; (v) the Holders of all Claims or Interests that vote to accept the Plan; (vi) the Holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but that do not vote either to accept or to reject the Plan and do not opt out of granting the releases set forth herein; (vii) the Holders of all Claims or Interests that vote, or are deemed, to reject the Plan or that are presumed to accept the Plan but do not opt out of granting the releases set forth herein; and (viii) the Holders of all Claims and Interests and all Other Beneficial Owners that were given notice of the opportunity to opt out of granting the releases set forth herein but did not opt out.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

### Notice of Assumption and Rejection of Executory
### <u>Contracts and Unexpired Leases of Debtors and Related Procedures</u>

1.        Please take notice that, in accordance with Article VIII of the Plan and sections 365 and 1123 of the Bankruptcy Code, as of and subject to the occurrence of the Effective Date and the payment of any applicable Cure Amount, and subject to section 8.5 of the Plan, all Executory Contracts and Unexpired Leases to which any of the Debtors are parties shall be deemed assumed, unless such contract or lease (i) was previously assumed or rejected by the Debtors, pursuant to Final Order of the Bankruptcy Court, (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto, (iii) is the subject of a motion to reject Filed by the Debtors on or before the Confirmation Date, or (iv) is specifically designated as a contract or lease to be rejected on the Schedule of Rejected Contracts.  Subject to (i) satisfaction of the conditions set forth in section 8.1(a) of the Plan, (ii) resolution of any disputes in accordance with section 8.2 of the Plan with respect to the Executory Contracts or Unexpired Leases subject to such disputes, and (iii) the occurrence of the Effective Date, entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the assumptions or rejections provided for in the Plan pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  Each Executory Contract and Unexpired Lease assumed or assumed and assigned pursuant to the Plan shall vest in and be fully enforceable by the applicable Reorganized Debtor or assignee in accordance with its terms, except as modified by any provision

of the Plan, any order of the Bankruptcy Court authorizing and providing for its assumption or assumption and assignment, or applicable law.

2.      The Plan provides that to the maximum extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption of such Executory Contract or Unexpired Lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.

3.      Section 8.2 of the Plan stipulates that the Debtors shall file, as part of the Plan Supplement, the Schedule of Rejected Contracts and the Schedule of Assumed Contracts.  The Plan further provides that prior to the Combined Hearing, the Debtors shall serve a notice on parties to Executory Contracts or Unexpired Leases to be assumed, assumed and assigned, or rejected reflecting the Debtors' intention to potentially assume, assume and assign, or reject the contract or lease in connection with the Plan and, where applicable, setting forth the proposed Cure Amount (if any).  If a counterparty to any Executory Contract or Unexpired Lease that the Debtors or Reorganized Debtors, as applicable, intend to assume or assume and assign is not listed on such a notice, the proposed Cure amount for such Executory Contract or Unexpired Lease shall be deemed to be Zero Dollars ($0).  **Any objection by a counterparty to an Executory Contract or Unexpired Lease to the proposed assumption, assumption and assignment, or related Cure Amount must be Filed, served, and actually received by the Debtors within fourteen (14) days of the service of the assumption notice, or such shorter period as agreed to by the parties or authorized by the Bankruptcy Court.**  If there is an Assumption Dispute pertaining to assumption of an Executory Contract or Unexpired Lease (other than a dispute pertaining to a Cure Amount), such dispute shall be heard by the Bankruptcy Court prior to such assumption being effective; *provided* that the Debtors or the Reorganized Debtors, as applicable, may, with the consent of the Requisite Consenting Creditors, settle any dispute regarding the Cure Amount or the nature thereof without any further notice to any party or any action, order, or approval of the Bankruptcy Court.

4.      Section 8.2 of the Plan further provides that-any counterparty to an Executory Contract or Unexpired Lease that does not timely object to the notice of the proposed assumption of such Executory Contract or Unexpired Lease shall be deemed to have assented to assumption of the applicable Executory Contract or Unexpired Lease notwithstanding any provision thereof that purports to (i) prohibit, restrict, or condition the transfer or assignment of such contract or lease; (ii) terminate or modify, or permit the termination or modification of, a contract or lease as a result of any direct or indirect transfer or assignment of the rights of any Debtor under such contract or lease or a change, if any, in the ownership or control to the extent contemplated by the Plan; (iii) increase, accelerate, or otherwise alter any obligations or liabilities of any Debtor or any Reorganized Debtor, as applicable, under such Executory Contract or Unexpired Lease; or (iv) create or impose a Lien upon any property or Asset of any Debtor or any Reorganized Debtor, as applicable.  Each such provision shall be deemed to not apply to the assumption of such Executory Contract or Unexpired Lease pursuant to the Plan and counterparties to assumed Executory Contracts or Unexpired Leases that fail to object to the proposed assumption in accordance with

the terms set forth in Section 8.2(a) of the Plan, shall forever be barred and enjoined from objecting to the proposed assumption or to the validity of such assumption (including with respect to any Cure Amounts or the provision of adequate assurance of future performance), or taking actions prohibited by the foregoing or the Bankruptcy Code on account of transactions contemplated by the Plan.

5. Section 8.3 of the Plan provides that unless otherwise provided by an order of the Bankruptcy Court, Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be Filed with the Bankruptcy Court by the later of thirty (30) days from (i) the date of entry of an order of the Bankruptcy Court approving such rejection, (ii) the effective date of the rejection of such Executory Contract or Unexpired Lease, and (iii) the Effective Date. **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed within such time shall be Disallowed pursuant to the Confirmation Order or such other order of the Bankruptcy Court, as applicable, forever barred from assertion, and shall not be enforceable against, as applicable, the Debtors, the Estates, the Reorganized Debtors, or property of the foregoing parties, without the need for any objection by the Debtors or the Reorganized Debtors, as applicable, or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules, if any, or a Proof of Claim to the contrary**.

**UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS COMBINED HEARING NOTICE, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.**

6. **Plan Supplement**. The Debtors will file and serve any supplement to the Plan on or before **December 8, 2023**.

### Notice of Procedures with Respect to Reinstated Claims

1. Please take notice that, in accordance with Article IV of the Plan and section 1124 of the Bankruptcy Code, as of and subject to the occurrence of the Effective Date and the payment of any applicable Cure Amount, and subject to section 7.11 of the Plan, all Other Secured Claims in Class 4 shall be Reinstated. Subject to (i) satisfaction of the conditions set forth in section 7.11 of the Plan, (ii) resolution of any disputes in accordance with section 7.11 of the Plan with respect to the Cure Amounts subject to such disputes, and (iii) the occurrence of the Effective Date, entry of the Confirmation Order by the Bankruptcy Court shall authorize Reinstatement of the Other Secured Claims in Class 4 pursuant to section 1124 of the Bankruptcy Code.

2. Section 7.11 of the Plan stipulates least ten (10) days before the deadline to object to Confirmation of the Plan, the Debtors shall serve a notice on Holders of Other Secured Claims in Class 4 setting forth the proposed Cure Amount (if any) necessary to Reinstate such Claims. Any objection by a Holder of an Other Secured Claim in Class 4 to the proposed Cure Amount must be Filed, served, and actually received by the Debtors within fourteen (14) days of the service of the notice of proposed Cure Amount, or such shorter period as agreed to by the parties or authorized by the Bankruptcy Court. Any Holder of an Other Secured Claim in Class 4

that does not timely object to the notice of the proposed Cure Amount shall be deemed to have assented to the Reinstatement of its Claim and the proposed Cure Amount listed therein and shall be shall forever be barred and enjoined from objecting to the Reinstatement of its Claim on the grounds that sections 1124(2)(A), (C), or (D) of the Bankruptcy Code have not been satisfied.

      3.    Section 7.11 of the Plan further provides that to the extent there is a dispute relating to the Cure Amount, the Debtors may Reinstate the applicable Other Secured Claim prior to the resolution of the Cure Amount dispute; provided that the Debtors or the Reorganized Debtors, as applicable, reserve Cash in an amount sufficient to pay the full amount reasonably asserted as the required Cure Amount by the Holder of the applicable Other Secured Claim (or such smaller amount as may be fixed or estimated by the Bankruptcy Court or otherwise agreed to by such Holder and the applicable Reorganized Debtor). Subject to resolution of any dispute regarding any Cure Amount, all Cure Amounts shall be satisfied on the Effective Date, or otherwise as soon as practicable thereafter, by the Debtors or Reorganized Debtors, as the case may be.

**UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS COMBINED HEARING NOTICE, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.**

**QUESTIONS:**

      If you have questions about this Combined Hearing Notice, please contact Stretto through (i) e-mail at CoreScientificInquiries@stretto.com, (ii) by writing to Core Scientific, Inc., Ballot Processing Center, c/o Stretto, Inc., 410 Exchange, Suite 100, Irvine, CA 92602, (iii) via telephone at (949) 404-4152 (U.S./Canada Toll-Free) or + (888) 765-7875 (outside of the U.S.), or (iv) visiting https://cases.stretto.com/CoreScientific.

*[Remainder of Page Intentionally Left Blank]*

Dated: November 17, 2023
       Houston, Texas

Respectfully submitted,

  /s/ Alfredo R. Pérez
WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (15776275)
Clifford W. Carlson (24090024)
700 Louisiana Street, Suite 1700
Houston, Texas  77002
Telephone: (713) 546-5000
Facsimile:  (713) 224-9511
Email:  Alfredo.Perez@weil.com
       Clifford.Carlson@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Ray C. Schrock (admitted *pro hac vice*)
Ronit J. Berkovich (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:   (212) 310-8007
Email:  Ray.Schrock@weil.com
       Ronit.Berkovich@weil.com

*Attorneys for Debtors*
*and Debtors in Possession*

# **Exhibit B**

No person has been authorized to give any information or advice, or to make any representation, other than what is included in the Disclosure Statement and other materials accompanying this Ballot.[1]

PLEASE NOTE THAT, EVEN IF YOU INTEND TO VOTE TO REJECT THE PLAN, YOU MUST STILL READ, COMPLETE, AND EXECUTE THIS ENTIRE BALLOT.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| CORE SCIENTIFIC, INC., *et al.*, | § § | Case No. 22-90341 (CML) |
| Debtors[2] | § § § | (Jointly Administered) |

BALLOT FOR VOTING TO ACCEPT OR REJECT THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF CORE SCIENTIFIC, INC. AND ITS AFFILIATED DEBTORS

CLASS 8 (GENERAL UNSECURED CLAIMS)

> IN ORDER FOR YOUR VOTE TO BE COUNTED TOWARD CONFIRMATION OF THE PLAN, THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS __ACTUALLY RECEIVED__ BY THE VOTING AGENT ON OR BEFORE DECEMBER 13, 2023 AT 5:00 P.M. (PREVAILING CENTRAL TIME) (THE "__VOTING DEADLINE__"), UNLESS EXTENDED BY THE DEBTORS WITH THE CONSENT OF THE REQUISITE CONSENTING CREDITORS.

Core Scientific, Inc. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**") are soliciting votes with respect to the *Third Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors*, filed on November 16, 2023 (Docket No. 1438) (as may be modified, amended, or supplemented, the "**Plan**"). The Plan is attached as __Exhibit A__ to the *Disclosure Statement for Third Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors*, filed on

---

[1] All capitalized terms used but not defined herein or in the enclosed voting instructions have the meanings ascribed to them in the Plan, attached as Exhibit A to the Disclosure Statement.

[2] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions VII, LLC (3198). The Debtors' corporate headquarters is 210 Barton Springs Road, Suite 300, Austin, Texas 78704. The Debtors' service address is 2407 S. Congress Ave, Suite E-101, Austin, Texas 78704.

November 16, 2023 (Docket No. 1439) (as may be modified, amended, or supplemented, the "**Disclosure Statement**").

Please use this Ballot to cast your vote to accept or reject the Plan if you are, as of November 9, 2023 (the "**Voting Record Date**"), a Holder of a General Unsecured Claim (including, for the avoidance of doubt, a Miner Equipment Lender Deficiency Claim).

The Disclosure Statement provides information to assist you in deciding whether to accept or reject the Plan. If you do not have the Disclosure Statement, you may obtain a copy from Stretto, Inc. (the "**Voting Agent**" or "**Stretto**") at no charge by accessing the Debtors' restructuring website at https://cases.stretto.com/CoreScientific.

If you have any questions on how to properly complete this Ballot, please contact the Voting Agent (i) by e-mail at CoreScientificInquiries@stretto.com, (ii) by writing to Core Scientific, Inc., Ballot Processing Center, c/o Stretto, Inc., 410 Exchange, Suite 100, Irvine, CA 92602, or (iii) via telephone at (949) 404-4152 (Toll-Free) or +1 (888) 765-7875 (if calling from outside the U.S.). Please be advised that the Voting Agent cannot provide legal advice. You may wish to seek legal advice concerning the Plan and the classification and treatment of your Class 8 General Unsecured Claim under the Plan.

---

**IMPORTANT NOTICE REGARDING TREATMENT FOR GENERAL UNSECURED CLAIMS IN CLASS 8**

As described in more detail in the Disclosure Statement, if the Plan is confirmed and the Effective Date occurs, except to the extent that a Holder of an Allowed General Unsecured Claim agrees to a less favorable treatment of such Claim, each such Holder shall receive, in full and final satisfaction, settlement, release, and discharge of such Claim, on the later of (a) the Effective Date or as soon as reasonably practicable thereafter and (b) the first Business Day after the date that is thirty (30) calendar days after the date such General Unsecured Claim becomes an Allowed General Unsecured Claim, New Common Interests with a value, based on Plan Value, equal to one-hundred percent (100%) of such Holder's Allowed General Unsecured Claim.

For purposes of section 4.8 of the Plan, the Allowed amount of any General Unsecured Claim shall include all interest accrued from the Petition Date through the date of distribution at the Federal Judgment Rate.

For the avoidance of doubt, the Allowed Miner Equipment Lender Deficiency Claim of each Holder of a Miner Equipment Lender Secured Claim shall be treated as an Allowed General Unsecured Claim under the Plan; *provided*, that any Holder electing Miner Equipment Lender Treatment Election 2 on its Class 3 Ballot shall waive its recovery on account of its Allowed Miner Equipment Lender Deficiency Claim.

**PLEASE READ THE DISCLOSURE STATEMENT AND PLAN FOR MORE DETAILS.**

---

The Plan can be confirmed by the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") and thereby made binding on you if it is accepted by the holders of (i) at least two-thirds in amount of the Allowed Claims or Interests voted in each Impaired Class, and (ii) if the Impaired Class is a class of Claims, more than one-half in number of the Allowed Claims voted in each Impaired Class, and if the Plan otherwise satisfies the applicable requirements of section 1129(a) under the Bankruptcy Code.   If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (y) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan and (z) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.   If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan.   To have your vote counted, you must complete, sign, and return this Ballot to the Voting Agent by the Voting Deadline.

Your receipt of this Ballot does not indicate that your Claim(s) has been or will be Allowed.   This Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance or disallowance of, or distribution on account of, Class 8 General Unsecured Claims.   You must provide all of the information requested by this Ballot.   Failure to do so may result in the disqualification of your vote.

**NOTICE REGARDING CERTAIN RELEASE,
EXCULPATION, AND INJUNCTION PROVISIONS IN PLAN**

**If you (i) vote to accept the Plan, (ii) are solicited to vote to accept or reject the Plan, but do not vote to either accept or reject the Plan, and do not opt out of granting the releases set forth in the Plan, (iii) vote, or are deemed, to reject the Plan or are presumed to accept the Plan but do not opt out of granting the releases set forth in the Plan, or (iv) were given notice of the opportunity to opt out of granting the releases contained in the Plan but do not opt out, you shall be deemed to have consented to the releases contained in Section 10.6(b) of the Plan.   The releases as presented in the Plan are provided below:**

**SECTION 10.5          INJUNCTION.**

**Except as otherwise expressly provided in the Plan or for distributions required to be paid or delivered pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold Claims or Interests that have been released pursuant to Section 10.6(a) or Section 10.6(b), shall be discharged pursuant to Section 10.3 of the Plan, or are subject to exculpation pursuant to Section 10.7, and all Subcontractors and all other parties in interest are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Released Parties, and/or the Exculpated Parties (to the extent of the exculpation provided pursuant to Section 10.7 with respect to the Exculpated Parties): (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (iii) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in**

connection with or with respect to any such Claims or Interests; (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless (x) such Entity has timely asserted such setoff right either in a Filed Proof of Claim, or in another document Filed with the Bankruptcy Court explicitly preserving such setoff or that otherwise indicates that such entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise or (y) such right to setoff arises under a postpetition agreement with the Debtors or an Executory Contract that has been assumed by the Debtors as of the Effective Date; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released, settled, and/or treated, entitled to a distribution, or cancelled pursuant to the Plan or otherwise Disallowed; *provided* that such persons who have held, hold, or may hold Claims against, or Interests in, a Debtor, a Reorganized Debtor, or an Estate shall not be precluded from exercising their rights and remedies, or obtaining the benefits, solely pursuant to and consistent with the terms of the Plan.

Subject in all respects to Section 11.1, no entity or person may commence or pursue a Claim or Cause of Action of any kind against any Released Party or Exculpated Party that arose or arises from, in whole or in part, the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors (which includes, for the avoidance of doubt, all claims and Causes of Action asserted or assertable in the Securities Class Action), the DIP Facility, the Convertible Notes Agreements, the Miner Equipment Lender Agreements, the Mortgage Agreements, the General Contracts, any and all agreements relating to M&M Liens, and any and all related agreements, instruments, and/or other documents, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Plan Settlements, the New Secured Convertible Notes Documents, the New Secured Notes Documents, the Contingent Payment Obligations Documents, the New Miner Equipment Lender Debt Documents, the Exit Facility Documents, the New Warrants Agreement, the Rights Offering, the Backstop Commitment Letter, the Initial DIP Loan Documents, the DIP Facility, the Terminated RSA, the RSA, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan (including, but not limited to, the New Common Interests), or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a claim of willful misconduct, fraud or gross negligence against a Released Party or Exculpated Party and (ii) specifically authorizing such Entity or Person to bring such Claim or Cause of Action against any such

Released Party or Exculpated Party.  The Bankruptcy Court shall have sole and exclusive jurisdiction to determine whether a Claim or Cause of Action is colorable and, only to the extent legally permissible and as provided for in Section 11.1, shall have jurisdiction to adjudicate the underlying colorable Claim or Cause of Action.

**SECTION 10.6(a)**     **RELEASES BY THE DEBTORS.**

Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the obligations of the Debtors under the Plan and the contributions of the Released Parties to facilitate and implement the Plan, except as otherwise provided in the Plan or in the Confirmation Order, on and after the Effective Date, the Released Parties are deemed conclusively, absolutely, unconditionally and irrevocably, released and discharged by the Debtors, the Reorganized Debtors, and the Estates from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Reorganized Debtors, the Estates, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors (which includes, for the avoidance of doubt, all claims and Causes of Action asserted or assertable in the Securities Class Action), the DIP Facility, the Convertible Notes Agreements, the Miner Equipment Lender Agreements, the Mortgage Agreements, the General Contracts, any and all agreements relating to M&M Liens, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Plan Settlements, the New Secured Convertible Notes Documents, the New Secured Notes Documents, the Contingent Payment Obligations Documents, the New Miner Equipment Lender Debt Documents, the Exit Facility Documents, the New Warrants Agreement, the Rights Offering, the Backstop Commitment Letter, the Initial DIP Loan Documents, the DIP Facility, the Terminated RSA, the RSA, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan (including, but not limited to, the New Common Interests), or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth in Section 10.6(a) of the Plan (i) shall only be applicable to the maximum extent permitted by law; (ii) shall not be construed as (a) releasing any Released Party from Claims or Causes of Action arising from an act or

omission that is judicially determined by a Final Order to have constituted actual fraud (*provided* that actual fraud shall not exempt from the scope of these Debtor releases any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, (b) releasing any Released Party from Claims or Causes of Action held by the Debtors arising from an act or omission that is determined by a Final Order or by a federal government agency to have constituted a violation of any federal securities laws or (c) releasing any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

**SECTION 10.6(b)   <u>RELEASES BY HOLDERS OF CLAIMS AND INTERESTS</u>.**

Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, except as otherwise provided in the Plan or in the Confirmation Order, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, each Releasing Party, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released, and discharged the Debtors, the Reorganized Debtors, and the Released Parties from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims or Causes of Action asserted or that may be asserted on behalf of the Debtors or their Estates, that such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, including any Claims or Causes of Action based on or relating to, or in any manner arising from, in whole or in part, the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors (which includes, for the avoidance of doubt, all claims and Causes of Action asserted or assertable in the Securities Class Action), the DIP Facility, the Convertible Notes Agreements, the Miner Equipment Lender Agreements, the Mortgage Agreements, the General Contracts, any and all agreements relating to M&M Liens, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Plan Settlements, the New Secured Convertible Notes Documents, the New Secured Notes Documents, the Contingent Payment Obligations Documents, the New Miner Equipment Lender Debt Documents, the Exit Facility Documents, the New Warrants Agreement, the Rights Offering, the Backstop Commitment Letter, the Initial DIP Loan Documents, the DIP

Facility, the Terminated RSA, the RSA, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan (including, but not limited to, the New Common Interests), or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth in Section 10.6(b) of the Plan (i) shall only be applicable to the maximum extent permitted by law; and (ii) shall not be construed as (a) releasing any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud (*provided* that actual fraud shall not exempt from the scope of these third-party releases any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, or (b) releasing any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

**SECTION 10.7** **EXCULPATION**.

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out, in whole or in part, from the Petition Date through the Effective Date, of the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors, the DIP Facility, the Convertible Notes Agreements, the Miner Equipment Lender Agreements, the Mortgage Agreements, the General Contracts, any and all agreements relating to M&M Liens, and related agreements, instruments, or other documents, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Plan Settlements, the New Secured Convertible Notes Documents, the New Secured Notes Documents, the Contingent Payment Obligations Documents, the New Miner Equipment Lender Debt Documents, the Exit Facility Documents, the New Warrants Agreement, the Rights Offering, the Backstop Commitment Letter, the Initial DIP Loan Documents, the DIP Facility, the Terminated RSA, the RSA, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan (including, but not limited to, the New Common Interests), or the distribution of property under the Plan, or any other related agreement, except for Claims or Causes of Action arising from an act or omission that is judicially determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but

in all respects, such Exculpated Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities.  The Exculpated Parties have, and upon completion of the Plan, shall be deemed to have, participated in good faith and in compliance with all applicable laws with regard to the solicitation and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.  Notwithstanding anything to the contrary in the foregoing, the exculpations set forth in Section 10.7 of the Plan (i) shall only be applicable to the maximum extent permitted by law; and (ii) shall not be construed as (a) exculpating any Exculpated Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud (*provided* that actual fraud shall not exempt from the scope of these exculpations any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, or (b) exculpating any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

**SECTION 5.17**     **CANCELLATION OF LIENS**.

(a)     Except as otherwise specifically provided in the Plan, including sections 4.4 and 4.6 of the Plan, all notes, instruments, certificates evidencing debt of the Debtors and Existing Common Interests will be cancelled and obligations of the Debtors thereunder will be discharged and of no further force or effect, except for the purpose of allowing the applicable agents and trustees to receive distributions from the Debtors under the Plan and to make any further distributions to the applicable Holders on account of their Allowed Claims and Interests.

(b)     After the Effective Date and following (i) the distributions to Holders on account of Allowed Convertible Notes Secured Claims and Allowed Miner Equipment Lender Secured Claims and/or (ii) with regard to Allowed M&M Lien Secured Claims, satisfaction of the applicable M&M Lien Takeback Debt, the Debtors or the Reorganized Debtors, at their expense, may, in their sole discretion, take any action necessary to terminate, cancel, extinguish, and/or evidence the release of any and all mortgages, deeds of trust, Liens, pledges, and other security interests with respect to the Convertible Notes Secured Claims, Miner Equipment Lender Secured Claims, and M&M Lien Secured Claims, including, without limitation, the preparation and filing of any and all documents necessary to terminate, satisfy, or release any mortgages, deeds of trust, Liens, pledges, and other security interests held by the Holders of the M&M Lien Secured Claims, Miner Equipment Lender Secured Claims, the Notes Agent, and/or Convertible Noteholders, including, without limitation, UCC-3 termination statements.

**Relevant Definitions Related to Release and Exculpation Provisions**:

*"Exculpated Parties"* means each of the following in their capacity as such and, in each case, to the maximum extent permitted by law: (i) the Debtors; and (ii) Equity Committee and its members, each solely in their capacity as such.

*"Related Parties"* means with respect to a Person, that Person's current and former Affiliates, and such Person's and its current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, fiduciaries, trustees, advisory board members, financial advisors, partners, limited partners, general partners, attorneys, accountants, managed accounts or funds, management companies, fund advisors, investment bankers, consultants, representatives, and other professionals, and such Person's respective heirs, executors, estates, and nominees, each in their capacity as such, and any and all other Persons or Entities that may purport to assert any Cause of Action derivatively, by or through the foregoing entities.

*"Released Parties"* means, collectively: (i) the Debtors; (ii) the Reorganized Debtors; (iii) the Equity Committee and its members that are party to the RSA, solely in their capacities as such; (iv) the Backstop Parties; (v) the Settling Miner Equipment Lenders; (vi) Brown Corporation; (vii) Holliwood LLC; (viii) the Ad Hoc Noteholder Group; (ix) the Consenting Creditors; (x) the Exit Lenders; (xi) the Notes Agent, solely in its capacity as such; and (xii) with respect to each of the foregoing Persons in clauses (i) through (xi), all Related Parties. Notwithstanding the foregoing, any Person that opts out of the releases set forth in section 10.6(b) of the Plan shall not be deemed a Released Party thereunder.

*"Releasing Parties"* means collectively, and in each case solely in their capacity as such, (i) the Debtors; (ii) the Reorganized Debtors; (iii) with respect to each of the foregoing Persons in clauses (i) through (ii), all Related Parties; (iv) the Released Parties; (v) the Holders of all Claims or Interests that vote to accept the Plan; (vi) the Holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but that do not vote either to accept or to reject the Plan and do not opt out of granting the releases set forth in the Plan; (vii) the Holders of all Claims or Interests that vote, or are deemed, to reject the Plan or that are presumed to accept the Plan but do not opt out of granting the releases set forth in the Plan; and (viii) the Holders of all Claims and Interests and all Other Beneficial Owners that were given notice of the opportunity to opt out of granting the releases set forth in the Plan but did not opt out.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

## PLEASE READ THE ATTACHED VOTING INFORMATION
## AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT

> **PLEASE COMPLETE ITEMS 1, 2, 3, 4 (FOR HOLDERS OF MINER EQUIPMENT LENDER DEFICIENCY CLAIMS ONLY), AND 5. IF THIS BALLOT HAS NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE VALID OR COUNTED AS HAVING BEEN CAST.**

**Item 1.        Principal Amount of Claims**. The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the Holder (or authorized signatory of such a Holder) of a General Unsecured Claim in the aggregate unpaid principal amount set forth below.

> **$**

**Item 2.        Votes on the Plan**.  Please vote either to accept or to reject the Plan with respect to your Claims below.  Any Ballot not marked either to accept or reject the Plan, or marked both to accept and reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

> **Prior to voting on the Plan, please note the following:**
>
> **If you (i) vote to accept the Plan, (ii) do not vote either to accept or reject the Plan and do not check the box in Item 3 below, or (iii) vote to reject the Plan and do not check the box in Item 3 below, in each case you shall be deemed to have consented to the release provisions set forth in Section 10.6(b) of the Plan.**
>
> **Please see Section I(D) of the Disclosure Statement for the recommendations of the Creditors' Committee and the Debtors concerning the Plan.**
>
> **The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation provisions.**

The undersigned Holder of a Class 8 General Unsecured Claim votes to (check <u>one</u> box):

☐ **Accept** the Plan            ☐ **Reject** the Plan.

<u>**Your vote on the Plan will be applied to each applicable Debtor in the same manner and in the same amount as indicated in Item 1 and Item 2 above.**</u>

**Item 3.        Optional Opt Out Release Election**.  Check the box below if you elect not to grant the releases contained in section 10.6(b) of the Plan.  If you voted to reject the Plan in Item 2 above, or if you are abstaining from voting to accept or reject the Plan, check this box if you elect not to grant the releases contained in Section 10.6(b) of the Plan.  Election to withhold consent is at your option.  If you voted to accept the Plan in Item 2 above, you **may not** complete this Item 3, and if you complete this Item 3, your "opt out" election will be ineffective.  If you submit a

rejecting Ballot, or if you abstain from submitting a Ballot, and in each case, you do not check the box below, you will be deemed to consent to the releases contained in Section 10.6(b) of the Plan to the fullest extent permitted by applicable law.  The Holder of the Class 8 General Unsecured Claim set forth in Item 1 elects to:

☐   **OPT OUT** of the releases contained only in Section 10.6(b) of the Plan.

---

**\*\*\* For Holders of Miner Equipment Lender Deficiency Claims Only \*\*\***

**Item 4.        Acknowledgement of Class 3 Elections**.  By checking the box below, the Holder acknowledges that it has also received a Class 3 Ballot and further acknowledges that the election (or lack thereof) such Holder makes on this Class 3 Ballot may affect the recovery such Holder receives on account of their Class 8 Claims.  The Holder further acknowledges that if the Holder elected Miner Equipment Lender Treatment Election 2 on its Class 3 Ballot, it will not be entitled to vote any portion of its Miner Equipment Lender Deficiency Claim on its Class 8 Ballot, and any Class 8 Ballot submitted shall be discarded.

☐   **I Acknowledge that the election made on my Class 3 Ballot, or if I make no election on my Class 3 Ballot, may affect my recovery on account of my Class 8 Claims.   I further acknowledge that if I elected Miner Equipment Lender Treatment Election 2 on my Class 3 Ballot, I am not entitled to vote any portion of my Miner Equipment Lender Deficiency Claim on my Class 8 Ballot, and if I submit a Class 8 Ballot it will be discarded.**

---

**Item 5.        Acknowledgements**.  By signing this Ballot, the Holder (or authorized signatory of such Holder) acknowledges receipt and review of the Plan, the Disclosure Statement, and the other applicable solicitation materials, and certifies that (i) it has the power and authority to vote to accept or reject the Plan, (ii) it was the Holder (or is entitled to vote on behalf of such Holder) of the General Unsecured Claim described in Item 1 as of the Voting Record Date, and (iii) all authority conferred, or agreed to be conferred, pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned.

Name of Holder _____

Signature _____

If by Authorized Agent, Name and Title _____

Name of Institution _____

Street Address _____

City, State, Zip Code _____

Telephone Number _____

Date Completed _____

E-Mail Address _____

**VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT**

1.   Ballots received after the Voting Deadline (if the Voting Deadline has not been extended) may not, at the Debtors' discretion, be counted.  **The Voting Agent will tabulate all properly completed Ballots received on or before the Voting Deadline.**

2.   Complete the Ballot by providing all the information requested, signing, dating, and returning the Ballot to the Voting Agent.  Any Ballot that is illegible, contains insufficient information to identify the Holder, or is unsigned[3] will not be counted.  Ballots may not be submitted to the Voting Agent by facsimile or electronic mail.  If neither the "**accept**" nor "**reject**" box is checked in Item 2, both boxes are checked in Item 2, or the Ballot is otherwise not properly completed, executed, or timely returned, then the Ballot shall not be counted in determining acceptance or rejection of the Plan.

3.   You must vote all your Claims within a single Class under the Plan either to accept or reject the Plan.  Accordingly, if you return more than one Ballot voting different or inconsistent Claims within a single Class under the Plan, the Ballots are not voted in the same manner, and you do not correct this before the Voting Deadline, those Ballots will not be counted.  An otherwise properly executed Ballot that attempts to partially accept and partially reject the Plan likewise will not be counted.

4.   The Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or an assertion or admission of Claims.

5.   The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

6.   If you cast more than one Ballot voting the same Claims prior to the Voting Deadline, the latest received, properly executed Ballot submitted to the Voting Agent will supersede any prior Ballot.

7.   If (i) the Debtors revoke or withdraw the Plan, or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

---

[3] E-Ballots submitted on the Online Portal will be deemed to contain a legal, valid signature.

8.   There may be changes made to the Plan that do not cause material adverse effects on an accepting Class.  If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

9.   NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT, ANY SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTORS, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

10.   PLEASE RETURN YOUR BALLOT PROMPTLY.

11.   IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT BY CALLING (949) 404-4152 (TOLL-FREE) OR +1 (888) 765-7875(IF CALLING FROM OUTSIDE THE U.S.); WRITING CORE SCIENTIFIC, INC., BALLOT PROCESSING CENTER, C/O STRETTO, INC., 410 EXCHANGE, SUITE 100, IRVINE, CA 92602; OR BY SENDING AN ELECTRONIC MAIL MESSAGE TO CORESCIENTIFICINQUIRIES@STRETTO.COM WITH "CORE SCIENTIFIC" IN THE SUBJECT LINE.  PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.

12.   THE VOTING AGENT IS NOT AUTHORIZED TO AND WILL NOT PROVIDE LEGAL ADVICE.

**PLEASE SUBMIT YOUR BALLOT BY ONLY <u>ONE</u> OF THE FOLLOWING METHODS:**
(i) Online submission of an E-Ballot, (ii) paper copy submission, in the return envelope provided, (iii) paper copy submission by hand delivery or overnight mail, or (iv) paper copy submission by first class mail.

**IF YOU WISH TO COORDINATE HAND DELIVERY OF YOUR BALLOT, PLEASE NOTIFY THE VOTING AGENT VIA E-MAIL AT CORESCIENTIFICINQUIRIES@STRETTO.COM (WITH "CORE SCIENTIFIC BALLOT" IN THE SUBJECT LINE) AT LEAST 24 HOURS IN ADVANCE OF THE ANTICIPATED DELIVERY DATE.**

**ALL BALLOTS MUST BE PROPERLY EXECUTED, COMPLETED, AND DELIVERED ACCORDING TO THE VOTING INSTRUCTIONS SO THAT THE BALLOTS ARE ACTUALLY RECEIVED BY THE VOTING AGENT NO LATER THAN THE VOTING DEADLINE.**

<u>**Online Portal Voting Instructions**</u>

**To properly submit your Ballot electronically, you must electronically complete, sign, and return this customized electronic Ballot by utilizing the Online Portal platform on the Stretto**

website by visiting https://cases.stretto.com/CoreScientific/, clicking on the "Submit E-Ballot" link and following the instructions set forth on the website.  Your Ballot must be received by Stretto no later than December 13, 2023 at 5:00 p.m. (Prevailing Central Time), the Voting Deadline, unless such time is extended by the Debtors with the consent of the Requisite Consenting Creditors.  <u>HOLDERS ARE STRONGLY ENCOURAGED TO SUBMIT THEIR BALLOTS VIA THE ONLINE PORTAL PLATFORM</u>.  The Stretto "Online Portal" platform is the sole manner in which ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile, electronic mail, or other means of electronic transmission will not be counted.

IMPORTANT NOTE: You will need the following information to retrieve and submit your customized electronic Ballot:

Unique E-Ballot ID#:  _____

Each E-Ballot ID# is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot.  Please complete and submit an E-Ballot for each E-Ballot ID# you receive, as applicable.  Ballots submitted by E-Ballot will be deemed to contain a legal, valid signature.

Holders who cast a Ballot using Stretto's "Online Portal" platform should <u>NOT</u> also submit a paper Ballot.

THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS DECEMBER 13, 2023 AT 5:00 P.M. (PREVAILING CENTRAL TIME).

<u>Paper Copy Ballot Submission</u>

| STRETTO'S ADDRESS FOR RECEIPT OF PAPER BALLOTS (WHETHER BY HAND DELIVERY, OVERNIGHT MAIL, OR FIRST CLASS MAIL) |
|---|
| CORE SCIENTIFIC, INC. BALLOT PROCESSING CENTER C/O STRETTO, INC. 410 EXCHANGE, SUITE 100 IRVINE, CA 92602 |

If you are unable to use the Online Portal platform or need assistance in completing and submitting your Ballot, please contact Stretto (i) via e-mail at CoreScientificInquiries@stretto.com; (ii) via mail by writing Core Scientific, Inc., Ballot Processing Center, C/O Stretto, Inc., 410 Exchange, Suite 100, Irvine, CA 92602; or (iii) via telephone at (949) 404-4152 (Toll-Free) or +1 (888) 765-7875 (if calling from outside the U.S.).
.

# **Exhibit C**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | § | Chapter 11 |
|  | § |  |
| **CORE SCIENTIFIC, INC.,** *et al.,* | § | Case No. 22-90341 (CML) |
|  | § |  |
| Debtors[1] | § | (Jointly Administered) |

<u>**SOLICITATION AND VOTING PROCEDURES**</u>

  **PLEASE TAKE NOTICE** that on December 21, 2022, Core Scientific, Inc. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**") each filed a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") with the United States Bankruptcy Court for the Southern District of Texas (the "**Court**"). The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On January 9, 2023, the U.S. Trustee appointed an official committee of unsecured creditors. On March 23, 2023, the U.S. Trustee appointed an official committee of equity security holders. The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b) and Bankruptcy Local Rule 1015-1.

  **PLEASE TAKE FURTHER NOTICE** that on November 14, 2023, the Court entered the *Order (I) Conditionally Approving Disclosure Statement and Form and Manner of Notice of Conditional Disclosure Statement Hearing; (II) Establishing Solicitation and Voting Procedures; (III) Establishing Rights Offering Procedures, (IV) Establishing Notice and Objection Procedures for Confirmation of Proposed Plan; (V) Approving Notice Procedures for the Assumption or Rejection of Executory Contracts and Unexpired Leases; and (VI) Granting Related Relief* (Docket No. 1426) (as may be later amended and including all exhibits, annexes, and schedules thereto, the "**Disclosure Statement Order**"),[2] which, among other things, (i) authorized the Debtors to solicit votes on the *Third Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors* (Docket No. 1438) (the "**Plan**") and (ii) conditionally

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions VII, LLC (3198). The Debtors' corporate headquarters is 210 Barton Springs Road, Suite 300, Austin, Texas 78704. The Debtors' service address is 2407 S. Congress Ave, Suite E-101, Austin, Texas 78704

[2] Capitalized terms not otherwise defined herein have the same meaning as set forth in the Disclosure Statement Order or Plan, as applicable.

approved the *Disclosure Statement for the Third Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors* (Docket No. 1439) (the "**Disclosure Statement**").

**A.      Parties Entitled to Vote**.

Holders of Claims and Interests in Class 1 (April Convertible Notes Secured Claims), Class 2 (August Convertible Notes Secured Claims), Class 3 (Miner Equipment Lender Secured Claims), Class 5 (M&M Lien Secured Claims), Class 6 (Secured Mortgage Claims), Class 8 (General Unsecured Claims), Class 11 (Section 510(b) Claims), and Class 12 (Existing Common Interests) are Impaired and entitled to receive distributions under the Plan and, thus, may vote to accept or reject the Plan, subject to certain exceptions discussed below (each, a "**Voting Class**," and collectively, the "**Voting Classes**").

A Holder of a Claim or Interest in a Voting Class is nonetheless not entitled to vote to the extent that:

(a) as of the Voting Record Date (as defined below), the outstanding amount of such creditor's Claim is zero ($0.00);

(b) as of the Voting Record Date, such Holders' Claim or Interest has been Disallowed, expunged, disqualified or suspended;

(c) such creditor has not timely filed a Proof of Claim in accordance with the *Order (I) Establishing Deadlines to File Proofs of Claim and (II) Approving Form and Manner of Notice Thereof* (Docket No. 652) (the "**Bar Date Order**") as of the Bar Date and the Debtors have not scheduled such creditor's Claim or have scheduled such creditor's Claim in an undetermined amount or as contingent, unliquidated, or disputed or such creditor is not required to file a Proof of Claim pursuant to the Bar Date Order; *provided*, that to the extent that such creditor's deadline to file a Claim arising from any rejection of an Executory Contract or Unexpired Lease to which such creditor is party has not yet occurred, such creditor will be entitled to vote in the amount of $1.00 on account of such Claim; or

(d) such creditor's Claim is subject to an objection, a request for estimation, or an adversary proceeding as of **December 1, 2023 at 5:00 p.m. (Prevailing Central Time)**, subject to the procedures set forth below; *provided* that, any such Holder shall receive a Ballot and may submit such Ballot on a provisional basis and may elect to opt out of the Non-Debtor Release Provisions contained in the Plan.  To the extent such Holder does not file a Rule 3018 Motion in accordance with the instructions set forth below, the Ballot will not be counted for voting purposes; however, any opt out election made by such Holder on its Ballot with respect to the Non-Debtor Release Provisions contained in the Plan shall be valid so long as such Ballot is submitted in accordance with the procedures set forth herein. To the extent such Holder files a Rule 3018 Motion in accordance with the instructions set forth below, the extent to which such Ballot shall be counted for voting purposes will be determined by the Court or as otherwise agreed by the Debtors and the Holder.

With respect to transfers of Claims required to be filed pursuant to Bankruptcy Rule 3001(e), the transferee shall be entitled to receive a Solicitation Package (as defined below) and,

if the Holder of such Claim is otherwise entitled to vote with respect to the Plan, cast a Ballot (defined below) on account of such Claim only if: (i) all actions necessary to transfer such Claim are completed by the Voting Record Date or (ii) the transferee files with the Court, by the Voting Record Date, (a) all documentation required by Bankruptcy Rule 3001(e) to evidence the transfer and (b) a sworn statement of the transferor supporting the validity of the transfer.  In the event a Claim is transferred after the Voting Record Date, the transferee of such Claim shall be bound by any vote or election on the Plan made by the Holder of such Claim as of the Voting Record Date.

Where any portion of a single Claim has been transferred to a transferee and notice of such transfer is required to be filed pursuant to Bankruptcy Rule 3001(e), all Holders of any portion of such single Claim may be (i) treated as a single creditor for purposes of the numerosity requirements in section 1126(c) of the Bankruptcy Code, and (ii) required to vote every portion of such Claim collectively to accept or reject the Plan.  In the event that (i) a Ballot, (ii) a group of Ballots within a Voting Class received from a single creditor, or (iii) a group of Ballots received from the various Holders of multiple portions of a single Claim partially reject and partially accept the Plan, such Ballots may not be counted in the Debtors' discretion.

**B.      Parties Not Entitled to Vote**.

Holders of Claims in Class 4 (Other Secured Claims) and Class 7 (Priority Non-Tax Claims) will (i) receive full recovery of their Allowed Claims under the Plan, (ii) have their Claims adjusted or reinstated, or (iii) otherwise receive treatment in the Debtors' or Reorganized Debtors' discretion as to render such Holder's Claim Unimpaired (collectively, the "**Unimpaired Classes**").  Pursuant to section 1126(f) of the Bankruptcy Code, the Holders of such Claims in these Unimpaired Classes are conclusively presumed to accept the Plan and, accordingly, are not entitled to vote on the Plan.

Holders of Claims and Interests in Class 9 (Intercompany Claims), and Class 10 (Intercompany Interests) are Unimpaired and such Holders are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and, accordingly, are not entitled to vote on the Plan (together with the Unimpaired Classes, the "**Non-Voting Classes**").

Holders of Miner Equipment Lender Secured Claims that elect Miner Equipment Lender Treatment Election 2 on their Class 3 Ballot shall not be entitled to vote any portion of their Miner Equipment Lender Deficiency Claim in Class 8.

**C.      Voting Record Date.**

The Court has established **November 9, 2023** as the record date for purposes of determining (i) which Holders of Claims and Interests in the Voting Classes are entitled to vote on the Plan and (ii) which Holders of Claims and Interests are entitled to receive a Notice of Non-Voting Status (as defined below) (the "**Voting Record Date**").

D.    **Establishing Claim Amounts for Voting Purposes.**

**April Convertible Notes Secured Claims (Class 1)**.  The amount of each April Convertible Notes Secured Claim, for voting purposes only, will be each Holder's Pro Rata Share of $350,000,000.[3]

**August Convertible Notes Secured Claims (Class 2)**.  The amount of each August Convertible Notes Secured Claim, for voting purposes only, will be each Holder's Pro Rata Share of $360,000,000.[4]

**Miner Equipment Lender Secured Claims (Class 3)**.  The amount of each Miner Equipment Lender Secured Claim, for voting purposes only, will be each Holder's applicable Allowed Miner Equipment Lender Secured Claim Amount, which is set forth on the Miner Equipment Lender Claims Schedule, attached to the Plan as Exhibit K, in the column titled "Allowed Miner Equipment Lender Secured Claim (as of the Petition Date)."  For the avoidance of all doubt, each Holder of a Miner Equipment Lender Secured Claim in Class 3 will vote in an individualized subclass of Class 3 with respect to such Holder's Miner Equipment Lender Secured Claim.

**M&M Lien Secured Claims (Class 5)**.  The amount of each M&M Lien Secured Claim, for voting purposes only, will be each Holder's applicable Allowed M&M Lien Secured Claim Amount, which is set forth on the M&M Lien Claims Schedule, attached to the Plan as Exhibit J, in the column titled "Amount of Allowed M&M Lien Secured Claim."[5]

**Secured Mortgage Claims (Class 6)**.  The amount of each Secured Mortgage Claim, for voting purposes only, will be each Holder's applicable Allowed Secured Mortgage Claim Amount, which is set forth on the Secured Mortgage Claims Schedule, attached to the Plan as Exhibit L, in the column titled "Allowed Secured Claim (as of the Petition Date)."

**General Unsecured Claims (Class 8)**.  Except as otherwise provided herein and solely to the extent such Claimant is entitled to vote under these procedures, the amount of each General Unsecured Claim in Class 8, for voting purposes only, shall be established pursuant to the following hierarchy:

(a) if a Claim has been estimated or otherwise Allowed for voting purposes by order of the Court, such Claim is temporarily Allowed in the amount so estimated or Allowed by this Court;

(b) if (a) does not apply, and a Claim constitutes a Miner Equipment Lender Deficiency Claim, each Holder's applicable Allowed Miner Equipment Lender Deficiency Claim Amount,

---

[3] For the avoidance of all doubt, for distribution purposes the April Convertible Notes Secured Claim shall include postpetition interest at the applicable contract rate for the period following January 15, 2024.

[4] For the avoidance of all doubt, for distribution purposes the August Convertible Notes Secured Claim shall include postpetition interest at the applicable contract rate for the period following January 15, 2024.

[5] For the avoidance of all doubt, all Holders of M&M Lien Claims that have settled such Claim with the Debtors will not be entitled to vote.

which is set forth on the Miner Equipment Lender Claims Schedule, attached to the Plan as Exhibit K, in the column titled "Allowed Deficiency Claim (as of the Petition Date)"; *provided*, that if a Holder of a Miner Equipment Lender Secured Claim elects Miner Equipment Lender Treatment Election 2 on its Class 3 Ballot, such Holder shall not be entitled to vote any portion of its Miner Equipment Lender Deficiency Claim in Class 8.

(c) if neither (a) nor (b) applies, but the Claim has been estimated or otherwise Allowed for voting purposes pursuant to a stipulation, settlement, or other agreement in writing reached between the applicable Debtor(s) and the holder of the Claim (whether such stipulation, settlement, or agreement is filed or not), such Claim is temporarily Allowed against such Debtor(s) in the amount set forth in the stipulation, settlement, or other agreement;

(d) if neither (a), (b), nor (c) applies, then in the liquidated, non-contingent, and undisputed amount set forth on a proof of claim timely filed in accordance with the Bar Date Order as of the Voting Record Date; *provided that*, if the amount set forth on a timely-submitted proof of claim is wholly unliquidated, contingent, and/or disputed (as determined on the face of the Claim or based on reasonable review by the Debtors and/or the Voting Agent), then the Claim shall be temporarily allowed for voting purposes in the amount of $1.00;

(e) if neither (a), (b), (c), nor (d) applies, then in the liquidated, non-contingent, and undisputed amount set forth on the Debtors' Schedules; *provided that*, if the Claim appearing on the Debtors' Schedules is either contingent, unliquidated, and/or disputed, or in a $0.00 amount, then the Claim shall be disallowed for voting purposes, except to the extent that such creditor's deadline to file a Claim arising from any rejection of an Executory Contract or Unexpired Lease to which such creditor is party has not yet occurred; *provided*, that, to the extent such creditor's deadline to file a Claim has not yet occurred, such creditor will be entitled to vote in the amount of $1.00 on account of such Claim;

(f) notwithstanding anything to the contrary contained herein, any creditor who has filed or purchased duplicate Claims within the same Voting Class may be provided with only one Solicitation Package and one Ballot for voting a single Claim in such Class, regardless of whether the Debtors have objected to such duplicate Claims; and

(g) if a Proof of Claim has been amended by a later Proof of Claim that is filed on or prior to the Bar Date, the later filed amended Proof of Claim shall be entitled to vote in a manner consistent with these tabulation rules, and the earlier filed Proof of Claim shall be disallowed for voting purposes, regardless of whether the Debtors have objected to such amended claim.  Except as otherwise ordered by the Court, any amendments to Proofs of Claim after the Bar Date shall not be considered for purposes of these tabulation rules.

**Section 510(b) Claims (Class 11)**.  Except as otherwise provided herein, each Section 510(b) Claim will be accorded one (1) vote and valued at $1.00 for voting purposes only, and not for purposes of allowance or distribution, unless (i) such Claim amount for voting purposes is disputed in the manner set forth below for filing a Rule 3018(a) motion, in which case the Claim amount shall be an amount that the Court deems appropriate for the purpose of voting to accept or

reject the Plan or (ii) such Claim is Disallowed prior to the Voting Deadline, in which case the Votes will not be counted.

For the avoidance of doubt, with respect to any Proofs of Claim filed on behalf of an entire purposed class of claimants (including a class of claimants comprised of any current or former beneficial owners of equity securities of Core Scientific, Inc. purchased during the period from January 3, 2022 through December 20, 2022, inclusive (the "**Other Beneficial Owners**")), including Proofs of Claim Nos. 556 and 632 (collectively, the "**Purported Class POCs**"):

(a)  only the individual filing the Purported Class POC (the "**POC Filing Party**") shall be entitled to vote to accept or reject the Plan;

(b)  the POC Filing Party shall be entitled to one (1) vote in the amount of $1.00 on behalf of the individual claim asserted by the POC Filing Party in its individual capacity in the applicable Purported Class POC; and

(c)  any Other Beneficial Owner that did not file a Proof of Claim shall not be entitled to vote to accept or reject the Plan.

**Existing Common Interests (Class 12)**.  The amount of each Existing Common Interest for voting purposes only will be established by reference to (a) the applicable books and records of the Debtors' transfer agent, which shall be provided by the transfer agent to the Voting Agent no later than two (2) Business Days following the Voting Record Date and (b) the books and records of the applicable Equity Nominee (defined below) as of the Voting Record Date as evidenced by the securities position report from The Depository Trust Company (the "**DTC**").

**General**.

If the Debtors have filed an objection to, a request for estimation of, or an adversary proceeding relating to a Claim or Interest on or before **December 1, 2023 at 5:00 p.m. (Prevailing Central Time)**, such Claim or Interest shall be temporarily Disallowed for voting purposes, except as ordered by the Court before the Voting Deadline; *provided*, *however*, that, if the Debtors' objection seeks only to reclassify or reduce the Allowed amount of such Claim or Interest, then such Claim or Interest is temporarily Allowed for voting purposes in the reduced amount and/or as reclassified (as applicable), except as may be ordered by the Court before or concurrent with, entry of an order confirming the Plan; *provided*, *further*, that if the Debtors' objection seeks only to disallow a Proof of Claim purportedly filed on behalf of a class of claimants, then such Claim is temporarily Allowed for voting purposes only as to the individual that filed such Proof of Claim and not as to the class of claimants on behalf of which such Proof of Claim was filed.

If any Holder seeks to challenge the Allowed amount of its Claim or Interest for voting purposes, such creditor must file with the Court a motion for an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing such Claim or Interest for voting purposes in a different amount (a "**Rule 3018(a) Motion**").  Any Rule 3018(a) Motion must be filed with the Court so as to be actually received not later than **December 8, 2023 at 5:00 p.m. (Prevailing Central Time)**.

Upon the filing of any such Rule 3018(a) Motion, such Holder's Provisional Ballot shall be counted in accordance with the above-designated guidelines, unless temporarily Allowed in a different amount by an order of the Court entered prior to or concurrent with entry of an order confirming the Plan.

For purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, separate Claims held by a single Holder in a particular Class shall be aggregated as if such Holder held one Claim in the Debtor in such Class, and the votes related to such Claims shall be treated as a single vote to accept or reject the Plan.

**E.  Form, Content, and Manner of Notices.**

1.  **Voting Agent**.

The Debtors have retained Stretto, Inc. ("**Stretto**" or the "**Voting Agent**") as their claims, noticing, and solicitation agent pursuant to the *Order Authorizing the Employment and Retention of Stretto, Inc. As Claims, Noticing, and Solicitation Agent* (Docket No. 28).  Pursuant to the Disclosure Statement Order, Stretto is authorized to assist the Debtors in (i) distributing the Solicitation Packages, (ii) receiving, tabulating, and reporting on Ballots cast to accept or reject the Plan by Holders of Claims and Interests, (iii) responding to inquiries from Holders of Claims and Interests and other parties in interest relating to the Disclosure Statement, the Plan, the Ballots, the Solicitation Packages, and all other related documents and matters related thereto, including the procedures and requirements for voting to accept or reject the Plan and for objecting to the Plan or Disclosure Statement, (iv) soliciting votes on the Plan, and (v) if necessary, contacting creditors and equity holders regarding the Plan, the Ballots, the Solicitation Packages and all other related documents and matters related thereto.

2.  **The Solicitation Package**.

The following materials shall constitute the Solicitation Package:

(a)  the Disclosure Statement Order, as entered by the Court (without attachments, except as set forth below);

(b)  the Disclosure Statement with all exhibits thereto, including the Plan;

(c)  a copy of these Solicitation and Voting Procedures, annexed as **Exhibit 2** to the Disclosure Statement Order;

(d)  the *Notice of (I) Conditional Approval of Disclosure Statement, (II) Approval of (A) Solicitation and Voting Procedures and (B) Notice Procedures for the Assumption or Rejection of Executory Contracts and Unexpired Leases; (III) Combined Hearing to Consider Final Approval of the Disclosure Statement and Confirmation of the Plan; And (IV) Establishing Notice and Objection Procedures for Final Approval of the Disclosure Statement and Confirmation of the Plan* annexed as **Exhibit 1** to the Disclosure Statement Order (the "**Combined Hearing Notice**");

(e)       if the recipient is entitled to vote on the Plan (as set forth herein), a Ballot customized (where possible and appropriate) for such Holder and conforming to Official Bankruptcy Form No. B 314, in the form described below;[6] and

(f)       a postage-prepaid return envelope.

Holders of Claims or Interests in a Non-Voting Class shall only receive the Combined Hearing Notice and the Notice of Non-Voting Status (as defined and described below).

### 3.    Distribution of the Solicitation Package.

The Solicitation Package shall provide the Plan and the Disclosure Statement as well as the Disclosure Statement Order (without attachments except the Solicitation and Voting Procedures annexed as **Exhibit 2** thereto) in electronic format (*i.e.*, USB flash drive format). Moreover, the Plan and Disclosure Statement will be available at no charge via the internet at https://cases.stretto.com/CoreScientific. Only the Ballots and the Combined Hearing Notice will be provided in paper format. Any creditor or equity holder for which service by USB flash drive imposes a hardship may request an additional copy of the Disclosure Statement (and attachments) and Disclosure Statement Order with Solicitation and Voting Procedures in paper format by contacting Stretto through (i) e-mail at CoreScientificInquiries@stretto.com, (ii) by writing to Core Scientific, Inc., c/o Ballot Processing Center, C/O Stretto, Inc. 410 Exchange, Suite 100 Irvine, CA 92602, or (iii) via telephone, toll-free, at 949.404.4152 (Toll-Free) or +1 888.765.7875 (if calling from outside the U.S.) (outside of the U.S. and Canada). Upon receipt of such request, the Debtors will provide such creditor or equity holder with a paper copy of the Plan, Disclosure Statement, and Disclosure Statement Order at no cost to the creditor or equity holder within five (5) days of such request or as soon as reasonably practicable thereafter.

The Debtors shall mail to Holders of Claims and Interests in Voting Classes entitled to vote on the Plan as of the Voting Record Date the Solicitation Packages by November 17, 2023, or as soon as reasonably practicable thereafter (the "**Solicitation Mailing Deadline**"). The Debtors will also provide complete Solicitation Packages (excluding Ballots) to the U.S. Trustee and all parties in interest required to be notified under Bankruptcy Rule 2002 and Local Rule 2002-1.

The Debtors are not required to mail Solicitation Packages to creditors or interest holders (i) who have Claims or Interests that have already been paid in full during the Chapter 11 Cases, (ii) whose prior mailings in these chapter 11 cases were returned as undeliverable and who have not provided a forwarding address by the Voting Record Date, (iii) who hold Class 4 (Other Secured Claims), Class 7 (Priority Non-Tax Claims), Class 9 (Intercompany Claims), or Class 10 (Intercompany Interests), and/or (iv) who are not otherwise entitled to vote to accept or reject the Plan in accordance with the terms and provisions of these Solicitation and Voting Procedures.

---

[6]  Official Bankruptcy Form No. B 314 can be found at http://www.uscourts.gov/forms/bankruptcy-forms, the official website for the United States Bankruptcy Courts.

In the event that the United States Postal Service returns any mailings as undeliverable, the Debtors are excused from mailing Solicitation Packages or Notices of Non-Voting Status to addresses from which the Debtors received mailings returned as undeliverable.  For purposes of serving the Solicitation Packages and Notices of Non-Voting Status, the Debtors may rely on the address information for the Holders of Claims and Interests as compiled, updated, and maintained by the Voting Agent as of the Voting Record Date.  The Debtors and the Voting Agent are not required to conduct any additional research for updated addresses based on undeliverable Solicitation Packages (including Ballots) and will not be required to resend Solicitation Packages or other materials, including Notices of Non-Voting Status, that are returned as undeliverable unless the Debtors are provided with accurate addresses for such parties prior to the Voting Record Date.

To avoid duplication and reduce expenses, the Debtors will use commercially reasonable efforts to ensure that each Holder of a Claim or Interest receives no more than one Solicitation Package (and, therefore, one Ballot) on account of such Claim or Interest and with respect to that Class as against the Debtors.

4.    **Forms of Ballots.**

Holders of Claims and Interests in the Voting Classes that are eligible to vote (as set forth herein) shall receive ballots substantially in the forms attached to the Disclosure Statement Order as **Exhibits 3–12** (the "**Ballots**"), as applicable.[7]  All Holders of Claims and Interests in the Voting Classes will receive a Ballot that includes an election to opt out of the non-debtor release provisions in section 10.6(b) of the Plan (the "**Non-Debtor Release Provisions**").  Holders of Claims and Interests in the Voting Classes that properly and timely elect to opt out of the Non-Debtor Release Provisions will not be a Releasing Party or Released Party under the Plan.

The Debtors will distribute Ballots to each of the Holders of Claims or Interests in Voting Classes; *provided*, that the following procedures shall apply, as applicable:

***Holders of Miner Equipment Lender Claims in Class 3 and Class 8.***

Each Holder of a Miner Equipment Lender Claim will receive two Ballots: one Ballot on account of its Miner Equipment Lender Secured Claim in Class 3 and one Ballot on account of its Miner Equipment Lender Deficiency Claim, which constitutes a General Unsecured Claim in Class 8.  Furthermore, as described in the Plan and section 7 below, each Holder of a Miner Equipment Lender Claim will be entitled to elect on its Ballot to receive the Default Miner Equipment Lender Treatment, Miner Equipment Lender Treatment Election 1, or Miner Equipment Lender Treatment Election 2.  Notwithstanding the election option chosen by a Holder of a Miner Equipment Lender Secured Claim in Class 3 pursuant to the Plan, each Holder of a Miner Equipment Lender Deficiency Claim shall be entitled vote its Miner Equipment Lender Deficiency Claim in Class 8; *provided*, that, as provided in the Plan, if such Holder elects Miner

---

[7] Stretto is required to retain all paper copies of Ballots and all solicitation-related correspondence for one (1) year following the Effective Date, whereupon, Stretto is authorized to destroy and/or otherwise dispose of all paper copies of Ballots; printed solicitation materials including unused copies of the Solicitation Package; and all solicitation-related correspondence (including undeliverable mail), in each case unless otherwise directed by the Debtors or the Clerk of the Court in writing within such one (1) year period.

Equipment Lender Treatment Election 2 on its Ballot, such Holder shall waive its recovery on account of its Miner Equipment Lender Deficiency Claim in Class 8 and shall not be entitled to vote in Class 8.

***Holders of Existing Common Interests in Class 12.***

The Debtors are authorized to distribute the following three forms of Ballots with respect to Existing Common Interests in Class 12: (i) a form of Ballot for registered holders of Class 12 (the "**Equity Registered Holder Ballot**"); (ii) a form of Ballot for a beneficial holder of Class 12 (an "**Equity Beneficial Holder,**" and the corresponding ballot, the "**Equity Beneficial Holder Ballot**"); and (iii) a form of Ballot for the bank, broker, or other financial institution "in street name" at DTC on behalf of the Equity Beneficial Holder (the "**Equity Nominee**") (or agent thereof) to transmit the votes of one or more beneficial owners (the "**Equity Master Ballot**").

Any registered holder holding an Existing Common Interest shall vote on the Plan by completing and signing an Equity Registered Holder Ballot on its own behalf and returning such Ballot directly to the Voting Agent on or before the Voting Deadline;

The following additional procedures shall apply to Interests of Equity Beneficial Holders who hold their position at DTC in "street name" through an Equity Nominee:

(a) the Voting Agent shall distribute, or cause to be distributed, the appropriate number of copies of Ballots to Equity Nominees identified by the Voting Agent as entities through which Equity Beneficial Holders hold Existing Common Interests as of the Voting Record Date;

(b) any Equity Nominee that is a holder of record with respect to Existing Common Interests shall solicit votes from Equity Beneficial Holders of such claims and interests by: (i) distributing the Solicitation Packages, including the Equity Beneficial Holder Ballots, as applicable, it receives from the Voting Agent to all such Equity Beneficial Holders, no later than five (5) business days following receipt of the Solicitation Package[8]; (ii) providing such Equity Beneficial Holders with a return address and envelope to send Ballots; (iii) promptly collecting Equity Beneficial Holder Ballots from such Beneficial Holders that cast votes on the Plan; (iv) compiling and validating the votes and other relevant information of all such Equity Beneficial Holders on the Equity Master Ballot; and (v) transmitting the applicable Equity Beneficial Holder Ballot to the Voting Agent by the Voting Deadline;

(c) any Equity Beneficial Holder holding an Existing Common Interest in "street name" through an Equity Nominee must vote on the Plan through such Equity Nominee by completing and signing the Equity Beneficial Holder Ballot and returning such Ballot to

---

[8] Solicitation Packages may be sent in paper format or via electronic transmission in accordance with the customary requirements of each Equity Nominee.  Each Equity Nominee will then distribute the Solicitation Packages, as appropriate, in accordance with its customary practices and obtain votes to accept or to reject the Plan also in accordance with its customary practices.  If it is the Equity Nominee's customary and accepted practice to submit a "voting instruction form" to the Equity Beneficial Holders for the purpose of recording the Equity Beneficial Holder's vote, the Equity Nominee will be authorized to send the voting instruction form in lieu of, or in addition to, an Equity Beneficial Holder Ballot.

the appropriate Equity Nominee as promptly as possible and in sufficient time to allow such Equity Nominee to process the Ballot and return the Equity Master Ballot to the Voting Agent prior to the Voting Deadline.  Any Equity Beneficial Holder holding an Existing Common Interest in a "street name" that submits an Equity Beneficial Holder Ballot to the Debtors or Voting Agent will not have such Equity Beneficial Holder Ballot counted for purposes of accepting or rejecting the Plan;

(d) any Equity Beneficial Holder Ballot returned to an Equity Nominee by an Equity Beneficial Holder shall not be counted for purposes of accepting or rejecting the Plan until such Equity Nominee properly completes and delivers to the Voting Agent the Equity Master Ballot that reflects the vote of such Equity Beneficial Holders by the Voting Deadline or otherwise validates the Equity Beneficial Holder Ballot in a manner acceptable to the Voting Agent.  Equity Nominees shall retain all Equity Beneficial Holder Ballots returned by Equity Beneficial Holders for a period of one (1) year after the Effective Date of the Plan;

(e) if an Equity Beneficial Holder holds an Existing Common Interest through more than one Equity Nominee or through multiple accounts, such Equity Beneficial Holder may receive more than one Equity Beneficial Holder Ballot and each such Equity Beneficial Holder should execute a separate Equity Beneficial Holder Ballot for each block of Existing Common Interests that it holds through any Equity Nominee and must return each such Equity Beneficial Holder Ballot to the appropriate Equity Nominee;

(f) if an Equity Beneficial Holder holds a portion of its Existing Common Interests through an Equity Nominee or Equity Nominees and another portion in its own name as the record holder, such Equity Beneficial Holder should follow the procedures described herein to vote the portion held in its own name and the procedures described in the rest of this section to vote the portion held by the Equity Nominee(s); and

(g) Equity Beneficial Holders holding Existing Common Interests through an Equity Nominee must return their paper ballot to its Equity Nominee, unless, at the option of the Equity Nominee, the Equity Nominee instructs their Equity Beneficial Holders that they may relay votes or voting instructions electronically or otherwise to the Equity Nominee or the entity preparing the Equity Master Ballot on such Equity Nominee's behalf, and Equity Nominees may use their customary procedures for obtaining such votes electronically or otherwise.

5.     **Notice of Non-Voting Status and Release Opt Out Formns.**

Holders of Claims and Interests in the Non-Voting Classes in lieu of a Solicitation Package, will receive (i) the Combined Hearing Notice (ii) a Notice of Non-Voting Status substantially in the form attached to the Disclosure Statement Order as **Exhibit 13** (the "**Notice of Non-Voting Status**"), and (iii) a Release Opt Out Form (as defined below); *provided* that, the Debtors are not required to serve Holders of Claims and Interests in Class 9 (Intercompany Claims) and Class 10 (Intercompany Interests) copies of the Combined Hearing Notice, Notice of Non-Voting Status, or any other type of notice in connection with solicitation of the Plan because such Claims and Interests are held by the Debtors or the Debtors' affiliates.

The Notice of Non-Voting Status provides (i) notice of the Court's conditional approval of the Disclosure Statement, (ii) notice of the filing of the Plan and Disclosure Statement, (iii) notice of the Holders' non-voting status, and (iv) information about how to obtain copies of the Disclosure Statement and Plan.  In addition, the Notice of Non-Voting Status contains the full text of the release, exculpation, and injunction provisions set forth in Article X of the Plan and advises such Holders in Non-Voting Classes that they will be bound by the Non-Debtor Release Provisions unless they timely and properly opt out.

The Debtors shall cause to be mailed a release opt out form, substantially in the form attached to the Disclosure Statement Order as **Exhibit 14** (the "**Release Opt Out Form**"), to Holders of Claims in Class 4 (Other Secured Claims) and Class 7 (Priority Non-Tax Claims). For Holders of Claims and Interests in the Voting Classes, the opt out option shall be on such Holder's Ballot.

In addition, Other Beneficial Owners shall receive a Release Opt Out Form and Combined Hearing Notice.  The Debtors shall cause to be mailed (i) the Release Opt Out Form and (ii) the Combined Hearing Notice, to the banks, brokers, and financial institutions (or their agents) that might have purchased equity securities in "street name" (collectively, including their agents, the "**Nominees**") on behalf of the Other Beneficial Owners.  With their mailing, the Debtors shall include instructions to the Nominees concerning the requirements in subparagraphs (a)–(d) below.

(a) such Nominees shall either: (i) within seven (7) calendar days of receipt of the Release Opt Out Form and Confirmation Hearing Notice, request from the Debtors sufficient copies of the Release Opt Out Form and Confirmation Hearing Notice to forward to all such beneficial owners and within seven (7) calendar days of receipt of those notices and claim forms forward them to all such beneficial owners; or (ii) within seven (7) calendar days of receipt of the Release Opt Out Form and Confirmation Hearing Notice, provide a list of the names and addresses of all such beneficial owners to the Debtors and the Debtors shall send the Release Opt Out Form and Confirmation Hearing Notice promptly to such identified beneficial owners.

(b) Nominees that elect to send the Release Opt Out Form and Confirmation Hearing Notice to their beneficial owners shall also send a statement to the Debtors and Stretto confirming that the mailing was made and shall retain their mailing records for use in connection with any further notices that may be provided in these Chapter 11 Cases.

(c) if it is the Nominee's customary and accepted practice to forward such materials to beneficial owners by e-mail, e-delivery, or any other method of electronic or printed communication, the Nominees are authorized to follow those customary practices, within seven (7) calendar days of receipt of the materials, in lieu of sending actual printed copies of the Release Opt Out Form and Confirmation Hearing Notice.

(d) within seven (7) calendar days of forwarding such notice, the Nominees may request reimbursement for reasonable and documented noticing costs and research fees, if any, by making such request in writing to the Debtors at the address to be provided by Stretto to the Nominees.

A Holder or Other Beneficial Owner that properly and timely elects on the Release Opt Out Form to opt out of the Non-Debtor Release Provision will not be a Releasing Party or Released Party under the Plan.  An encrypted opt-out data and audit trail will be created through the electronic submission process and become part of the record of any opt-out election submitted in this manner.  Additionally, any Holder's or Other Beneficial Owner's electronic signature will be deemed to be legally valid and effective immediately.  For the avoidance of doubt, Voting Agent's online portal at https://cases.stretto.com/CoreScientific (the "**Online Portal**") is the sole method for Holders of Claims and Interests in Non-Voting Classes and Other Beneficial Owners to transmit opt-out elections electronically. All Release Opt Out Forms must be properly completed and returned by **December 13, 2023 at 5:00 p.m. (Prevailing Central Time)** (the "**Opt Out Deadline**") either by (i) delivering the Release Opt Out Form to the Voting Agent by first-class mail, hand delivery, or overnight courier or (ii) submitting the Release Opt Out Form by electronic, online transmission through the Online Portal, each in accordance with the instructions included on the Release Opt Out Form.

6.      **Voting Deadline.**

The Court has established **December 13, 2023** as the deadline to submit votes to accept or reject the Plan (the "**Voting Deadline**").  The Debtors may extend the Voting Deadline, in their discretion, without further order of the Court.  To be counted as a vote to accept or reject the Plan, each Ballot must be properly executed, completed, and delivered to the Voting Agent: (i) by first-class mail in the return envelope provided with each Ballot; (ii) by overnight mail; (iii) by hand delivery, (iv) via E-Ballot through the Online Portal, or, (v) only with respect to Equity Master Ballots, via electronic mail to CoreScientificInquiries@stretto.com so that (in each instance) it is **actually received** by the Voting Agent no later than the Voting Deadline.

Holders of Claims and Interests mailing their Ballots to the Voting Agent shall mail them to the following address:

| **STRETTO'S ADDRESS FOR RECEIPT OF PAPER BALLOTS (WHETHER BY HAND DELIVERY, OVERNIGHT MAIL, OR FIRST CLASS MAIL)** |
|---|
| **CORE SCIENTIFIC, INC.**<br>**BALLOT PROCESSING CENTER**<br>**C/O STRETTO, INC.**<br>**410 EXCHANGE, SUITE 100**<br>**IRVINE, CA 92602** |

In all instances, Holders shall consult their Ballot for specific instructions regarding submission of their votes and any elections.

7.      **Tabulation Procedures.**

*General Rules.*

The following voting procedures and standard assumptions shall be used in tabulating Ballots, subject to the Debtors' right to waive any of the below specified requirements

for completion and submission of Ballots so long as such requirement is not otherwise required by the Bankruptcy Code, Bankruptcy Rules, or Bankruptcy Local Rules:

(a) whenever a Holder of Claims or Interests casts more than one Ballot voting the same Claims and Interests before the Voting Deadline, the latest dated valid Ballot received on or before the Voting Deadline shall be deemed to reflect such creditor's or equity security holder's intent and thus, supersede any previously received, Ballot.  Following the Voting Deadline, no Ballot may be changed or revoked, absent further order of the Court or as directed by the Debtors.

(b) whenever a Holder of Claims or Interests casts a Ballot that is properly completed, executed, and timely returned to the Voting Agent but does not indicate either an acceptance or rejection of the Plan, the Ballot will not be counted.

(c) whenever a Holder of Claims or Interests casts a Ballot that is properly completed, executed, and timely returned to the Voting Agent but indicates both an acceptance and a rejection of the Plan, the Ballot will not be counted.

(d) a Holder shall be deemed to have voted the full amount of its Claim or Interest in each Class and shall not be entitled to split its vote within a particular Class or between more than one Debtor.  Any such Holder's Ballot that partially accepts and partially rejects the Plan, between the same or multiple Debtors, will not be counted.

(e) a Person signing a Ballot in its capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity of a Holder of Claims or Interests should indicate such capacity when signing, and if so requested by the Debtors or the Voting Agent, must submit proper evidence satisfactory to the Debtors of its authority to so act.

(f) a Holder of Claims or Interests against more than one Debtor that casts a single Ballot shall have its votes counted separately with respect to each such Debtor.

(g) a Holder of Claims or Interests in more than one Class must use separate Ballots for each Class of Claims or Interests.

(h) the Debtors, unless subject to contrary order of the Court, may waive any defects or irregularities as to any particular irregular Ballot at any time, either before or after the Voting Deadline.

(i) Holders in Class 3 shall receive two Ballots: (i) a Class 3 Ballot to vote the Allowed Miner Equipment Lender Secured Claims, and (ii) a Class 8 Ballot to vote the Allowed Miner Equipment Lender Deficiency Claims.  Holders of Allowed Miner Equipment Lender Secured Claims and Allowed Miner Equipment Lender Deficiency Claims must vote each ballot consistently, either to accept or reject the Plan.  Holders that vote inconsistently may have their vote(s) discarded.  If a Holder of an Allowed Miner Equipment Lender Secured Claim elects Miner Equipment Lender Election 2 on its Class 3 Ballot and submits a Ballot on account of its Miner Equipment Lender Deficiency Claim in Class 8, such Class 8 Ballot shall be discarded.

(j)  the following Ballots shall not be counted:

    i.    any Ballot received after the Voting Deadline, unless the Debtors shall have granted an extension of the Voting Deadline in writing with respect to such Ballot or waived the late submission;

    ii.    any Ballot that is illegible or contains insufficient information to permit the identification of the voting party;

    iii.    any Ballot cast by a person or entity that does not hold a Claim or Interest in a Class that is entitled to vote to accept or reject the Plan;

    iv.    any Ballot cast by a Person or Entity that is not entitled to vote, even if such individual or Entity holds a Claim or Interest in a Voting Class;

    v.    any unsigned Ballot, provided that E-Ballots submitted on the Online Portal will be deemed to contain a legal, valid signature;

    vi.    any Ballot containing a vote that the Court determines, after notice and a hearing, was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code; or

    vii.    any Ballot transmitted to the Voting Agent by e-mail (other than an Equity Master Ballot) or facsimile or other means not specifically approved herein.

***Rules for Existing Common Interests.***

The following rules will apply with respect to the tabulation of Equity Master Ballots cast by Equity Nominees for Equity Beneficial Holders of Existing Common Interests:

(a)  votes cast by Equity Beneficial Holders through Equity Nominees will be applied to the applicable positions of Existing Common Interests held by such Equity Nominees as of the Voting Record Date, as evidenced by the applicable records.  Votes submitted by an Equity Nominee will not be counted in excess of the amount of such Existing Common Interests held by such Equity Nominee as of the Voting Record Date;

(b)  if conflicting votes or "over votes" are submitted by an Equity Nominee, the Debtors will use reasonable efforts to reconcile discrepancies with the Equity Nominees;

(c)  if over votes on an Equity Master Ballot are not reconciled prior to the preparation of the vote certification, the Debtors shall apply the votes to accept and to reject the Plan in the same proportion as the votes to accept and to reject the Plan submitted on the Equity Master Ballot that contained the over-vote; and

(d)  a single Equity Nominee may complete and deliver to the Voting Agent multiple Equity Master Ballots.  Votes reflected on multiple Equity Master Ballots will be counted, except to the extent that they are duplicative of other Equity Master Ballots.  If two or more Equity Master Ballots are inconsistent, the last dated, valid Equity Master Ballot received prior to

the Voting Deadline will, to the extent of such inconsistency, supersede and revoke any prior dated Equity Master Ballot.

***Rules for Election of Holders of Miner Equipment Lender Secured Claims in Class 3***.

Holders of Miner Equipment Lender Secured Claims in Class 3 are entitled to make certain elections on their Ballots as to the form of consideration they receive pursuant to the Plan. The following procedures will govern the tabulation of their elections:

As set forth in the Plan, each Holder of Allowed Miner Equipment Lender Secured Claims shall be entitled to elect on its Ballot to receive, in lieu of the Default Miner Equipment Lender Treatment, the Miner Equipment Lender Treatment Election 1. Furthermore, Settling Miner Equipment Lenders shall be entitled to elect on its Ballot to receive, in lieu of the Default Miner Equipment Lender Treatment, the Miner Equipment Lender Treatment Election 2. If a Holder of an Allowed Miner Equipment Lender Secured Claim does not make any elections on its Ballot, such Holder shall receive the Default Miner Equipment Lender Treatment. If a Holder of an Allowed Miner Equipment Lender Secured Claim elects Miner Equipment Lender Treatment Election 2 and is not, or does not become, a Settling Miner Equipment Lender, then such Holder shall receive the Default Miner Equipment Lender Treatment.

***Miscellaneous Rules.***

Each Holder of Claims or Interests that votes to accept or reject the Plan is deemed to have voted the full amount of its Claim or Interest therefor.

The Voting Agent may, but is not required to, contact parties who submit incomplete or otherwise deficient Ballots to make a reasonable effort to cure such deficiencies, provided that, neither the Debtors nor Voting Agent is required to contact such parties to provide notification of defects or irregularities with respect to completion or delivery of Ballots, nor will any of them incur any liability for failure to provide such notification. Unless waived, any defects or irregularities in connection with deliveries of Ballots must be cured within such time as the Debtors (or the Court) determines. Neither the Debtors nor any other person will be under any duty to provide notification of defects or irregularities with respect to deliveries of Ballots nor will any of them incur any liabilities for failure to provide such notification. Delivery of such Ballots will not be deemed to have been made until such irregularities have been cured or waived. Ballots previously furnished (and as to which any irregularities have not theretofore been cured or waived prior to the Voting Deadline) will be invalidated.

The Debtors and/or their Voting Agent, as applicable, are authorized to determine all questions as to the validity, form, eligibility (including time of receipt), acceptance, and revocation or withdrawal of Ballots, which determination will be final and binding on all parties.

The Debtors are authorized to reject any and all Ballots submitted by any Holders of Claims or Interests not in proper form, the acceptance of which would, in the opinion of the Debtors or their counsel, as applicable, be unlawful.

The Debtors are further authorized to waive any defects or irregularities or conditions of delivery as to any particular Ballot by any Holders of Claims or Interests. The interpretation (including the Ballot and the respective instructions thereto) by the Debtors in accordance with the foregoing sentence will be final and binding on all parties.

The Debtors or their Voting Agent shall file the Voting Report on or before **December 18, 2023**.

### 8. **Combined Hearing Notice.**

Within three (3) days after entry of the Disclosure Statement Order, or as soon as reasonably practicable thereafter, the Debtors will serve the Notice Parties and Holders of Claims and Interests in the Non-Voting Classes via e-mail or first-class mail, a copy of the Combined Hearing Notice, which sets forth (i) the Voting Deadline, (ii) the Objection Deadline and procedures for filing objections and responses to confirmation of the Plan, (iii) the time, date, and place for the Combined Hearing, and (iv) information about the Plan's release and injunction provisions in compliance with Bankruptcy Rule 2002(c)(3). The Debtors will separately serve Holders of Claims and Interests in Voting Classes with the Combined Hearing Notice as part of their Solicitation Packages.

The Debtors may, in their discretion, give supplemental publication notice of the Combined Hearing, no later than twenty-eight (28) days prior to the Combined Hearing, in one or more local or foreign newspapers, trade journals, or similar publications as the Debtors deem appropriate.

**The Debtors reserve the right, and are authorized to, in consultation with the Requisite Consenting Creditors, make non-substantive or immaterial changes to the Disclosure Statement, Plan (including, for the avoidance of doubt, the Plan Supplement), Ballots, Combined Hearing Notice, and related documents without further order of the Court, including, without limitation, changes to correct typographical and grammatical errors, if any, and to make conforming changes among the Disclosure Statement, the Plan, and any other materials in the Solicitation Packages before their distribution; *provided* that all such modifications shall be made in accordance with the terms of the document being modified and the Plan.**