

Confirmation Hearing
January 16, 2024



# Introduction

- We are pleased to be before the Court today seeking confirmation of the chapter 11 plan of reorganization (the "**Plan**") of Core Scientific, Inc. and its affiliated debtors (the "**Debtors**")

- The Plan is the result of lengthy negotiations with the Debtors' five key stakeholders: (i) the Ad Hoc Noteholder Group, (ii) the Miner Equipment Lenders, (iii) the Creditors' Committee, (iv) B. Riley (DIP Lender and largest unsecured creditor), and (v) the Equity Committee

  - From the outset of these cases, the Debtors aspired to reach an agreement with each such party and have done so through three separate settlements

- With one limited exception, the Plan is <u>fully consensual</u> and has overwhelming support across the Company's capital structure

- The Plan provides for (among other things):

  - Preservation of the Debtors' business as a going concern and over 240 jobs

  - 100% recovery to all creditors (excluding holders of subordinated section 510(b) Claims) and significant recovery to existing equity holders

  - Significant deleveraging of the Debtors' balance sheet: equitization of ~$400 million in secured and unsecured claims and reduction in annual debt service of ~$60 million

  - Infusion of $95 million in new-money exit capital through: (i) an oversubscribed $55 million equity rights offering and (ii) $40 million in new-money financing through the $80 million Exit Facility provided by certain Convertible Noteholders; and

  - The assumption of the vast majority of the Debtors' executory contracts and unexpired leases

- The Company is targeting a January 23, 2024 emergence date and anticipates being re-listed on NASDAQ on January 24, 2024



# Agenda

1. Confirmation of the Plan and final approval of the Disclosure Statement

2. Claims Settlement Motions

   - Approval of the Core-Sphere-Gryphon Settlement (Docket No. 1663)

   - Approval of the OG&E Settlement (Docket No. 1711)

   - Approval of the Foundry Settlement (Docket No. 1712)

3. Motion to Establish Disputed Claim Amount for Calculation and Distribution Purposes (Docket Nos. 1525, 1706)



# Evidence: Plan Confirmation

- The Debtors' second amended witness and exhibit list was filed at Docket No. 1737

- The following witnesses have provided declarations with respect to confirmation of the Plan and/or approval of the Disclosure Statement:

  - Michael Bros – Senior Vice President of Capital Markets & Acquisitions at Core Scientific, Inc. (Docket No. 1725, ECF No. 1737-4)

    - Plan Settlements

    - Business Plan

    - Satisfaction of section 1129 requirements for confirmation

  - Neal Goldman – Independent Director at Core Scientific, Inc. (Docket No. 1719, ECF No. 1737-7)

    - Governance Process

    - Release and Exculpation Provisions

  - John Singh – Partner at PJT Partners LP (Docket No. 1720, ECF No. 1737-6)

    - Valuation

  - Rodi Blokh – Partner & Managing Director at AlixPartners, LLP (Docket No. 1717, ECF No. 1737-5)

    - Liquidation Analysis

  - Jung W. Song – Managing Director at Stretto LLC (Docket No. 1736, ECF No. 1737-3)

    - Plan Voting and Solicitation Results and Procedures



# Evidence: Others

- The following witnesses have provided declarations with respect to reliefs requested in the other motions being heard:

  - Russell Cann – Head of Mining and Executive Vice President, Client Services at Core Scientific, Inc. (Docket No. 1664, ECF No. 1737-1)

    - The Core-Sphere-Gryphon Settlement

  - Michael Bros – Senior Vice President of Capital Markets & Acquisitions at Core Scientific, Inc. (Docket No. 1725, ECF No. 1737-4)

    - The Foundry Settlement

    - The OG&E Settlement

  - John Creighton – Director at AlixPartners, LLP (Docket No. 1525-A, ECF No. 1737-5)

    - The Disputed Claims Motion

- The Debtors move to admit exhibits 1-40 (Docket No. 1737, 1-40)



# Plan Confirmation: Key Documents

- Disclosure Statement filed at Docket No. 1439 and Disclosure Statement Supplement filed at Docket No. 1640

- Fourth Amended Plan filed at Docket No. 1722

- Proposed Confirmation Order filed at Docket No. 1724

- Fourth Plan Supplement filed at Docket No. 1738



# Case Timeline



**December 21, 2022** — Petition Date

**March 1, 2023** — Replacement DIP Facility Approved on a Final Basis

**June 20, 2023** — Plan and Disclosure Statement Filed

**July 12, 2023** — Commencement of Plan Mediation

**July 26, 2023** — **Entry into Miner Equipment Lender Settlement**

**August 8, 2023** — First Amended Plan and Disclosure Statement Filed

**September 7, 2023** — Second Amended Plan and Disclosure Statement Filed

**September 17, 2023** — **Entry Into Mediated Settlement with Ad Hoc Noteholder Group and Equity Committee**

**November 16, 2023** — **Execution of RSA, Third Amended Plan and Disclosure Statement Filed, Execution of Backstop Commitment Letter**

**November 17, 2023** — Conditional Approval of Disclosure Statement, Approval of Solicitation Procedures, and ERO Begins

**Solicitation Period (Nov. 17 – Jan. 11)**

**December 18, 2023** — **Entry Into GUC Settlement**

**December 28, 2023** — Fourth Amended Plan and Disclosure Statement Supplement filed

**January 11, 2024** — End of Solicitation, Objection and Voting Deadline. and Subscription Deadline for ERO

**January 14, 2024** — Confirmation Brief and Plan Supplement Filed

**January 16, 2024** — Combined Hearing

**January 23, 2024** — Projected Plan Effective Date



7

# Plan Confirmation: Overview

- <u>Requirements for Final Approval of Disclosure Statement</u>: The Debtors submit that the Disclosure Statement provides stakeholders with adequate information and satisfies the requirements under section 1125 of the Bankruptcy Code.

- <u>Confirmation Requirements</u>:  As discussed in the Confirmation Brief and accompanying declarations, the Debtors submit that the Plan satisfies the Bankruptcy Code's confirmation requirements. The Plan is fully consensual and all Voting Classes have voted to accept the Plan, except for Class 8A (General Unsecured Claims) at Core Scientific Mining LLC (which has no assets)

- <u>Confirmation Objections</u>:  The Debtors have resolved nearly all confirmation objections through, among other things, additional language in the Plan and the Proposed Confirmation Order

  - The only remaining objector to Plan confirmation is Morgan Hoffman (limited to the Third Party Releases)



# Voting Results (Consolidated Debtor Basis)

| Class | Class Description | Amount Accepting | Amount Rejecting | % Accepting | Number Accepting | Number Rejecting | % Accepting | Class Voting Result |
|-------|-------------------|------------------|------------------|-------------|------------------|------------------|-------------|---------------------|
| 1 | April Convertible Notes Secured Claims | $327,209,302.35 | $0 | 100% | 10 | 0 | 100% | Accept |
| 2 | August Convertible Notes Secured Claims | $273,865,860.51 | $0 | 100% | 37 | 0 | 100% | Accept |
| 3 | Miner Equipment Lender Secured Claims | $56,642,663.42 | $0 | 100% | 11 | 0 | 100% | Accept |
| 6 | Secured Mortgage Claims | $759,781.48 | $0 | 100% | 2 | 0 | 100% | Accept |
| 8A | General Unsecured Claims | $233,096,235.19 | $980,679.39 | 99.6% | 44 | 3 | 93.6% | Accept[1] |
| 8B | Convenience Class Claims | $6,516.00 | $0 | 100% | 2 | 0 | 100% | Accept |
| 11 | Section 510(b) Claims | $5 | $1 | 83.3% | 5 | 1 | 83.3% | Accept |
| 12 | Existing Common Interests | 78,119,041 shares | 453,996 shares | 91.1% | N/A | N/A | N/A | Accept |

1. Class 8A was a rejecting Class at Debtor Core Scientific Mining LLC



9

# Settlements: Miner Equipment Lender Settlement

- In mid-July 2023, the Debtors entered into an agreement in principle with the Miner Equipment Lenders (which hold approximately $254 million in aggregate claims)

- Pursuant to the Miner Equipment Lender Settlement, each of the Miner Equipment Lender Claims are bifurcated into a secured claim and an unsecured deficiency (set forth on Miner Equipment Lender Claims Schedule, Plan Ex, j) and the Settling Miner Equipment Lenders may choose from three options for the treatment of their claims:

  1. Default Option:
     a) Take-Back Debt: (i) principal amount equal to amount of secured claim; (ii) maturity of five years; (iii) 10% interest; (iv) same collateral as under existing loan(s); and (v) no amortization
     b) Equitization: Remaining deficiency claim amount equitized

  2. Equitization Option: 100% of the Miner Equipment Lender total claim (secured and deficiency) equitized

  3. Settlement Option:
     a) Take-Back Debt: (i) principal amount of 80% of the total claim (secured and deficiency); (ii) maturity of five years; (iii) interest during the first two years, at the Debtors' option at (A) 3% cash/10% PIK; (B) 5% cash/7% PIK, or (C) 8% cash; thereafter, 10% cash; (v) same collateral as under existing loan(s), plus an additional $52.5 million collateral to be provided on a pro rata basis based on hash power (subject to adjustment); and (vi) amortization of 50% of principal within the first three years, 25% in Year 4, 25% in Year 5
     b) Remaining Deficiency Claim: Waived

- Pursuant to the settlement, the Debtors will pay the Miner Equipment Lenders' professional fees, with an aggregate cap of $4 million

- Most of the Settling Miner Equipment Lenders chose the Equitization Option, which will reduce the debt on the Reorganized Debtors' balance sheet by approximately $200 million



10

# Settlements: RSA Settlement

- On September 17, 2023, as a result of the Plan Mediation before the Honorable Marvin Isgur, the Debtors reached an agreement in principle on certain key economic terms of the Plan with the Ad Hoc Noteholder Group and the Equity Committee (collectively, the "**RSA Parties**")

- On November 16, 2023, the RSA Parties finalized the terms of the RSA Settlement and executed the Restructuring Support Agreement

- The RSA Settlement resolved several key contested issues, including:

  - the Enterprise Value of the Reorganized Debtors;

  - the size of the Convertible Noteholders' Allowed Claims and resolution of the dispute on the validity of the 2X Amounts;

  - the treatment of the Convertible Notes Secured Claims and Existing Common Interests

  - the terms of exit capital to fund the Plan

- The RSA Settlement enabled the Debtors to move forward with solicitation of the Third Amended Plan with the support of the majority of the Debtors' Key Stakeholders (all except the Creditors' Committee and B. Riley)



# Settlements: GUC Settlement

- Following the commencement of solicitation of the Third Amended Plan, the Debtors continued to negotiate with the Creditors' Committee and B. Riley in an attempt to achieve a fully consensual Plan

- On December 18, 2023, following further mediation sessions before the Honorable Marvin Isgur, the Debtors, the Creditors' Committee, B. Riley, and the RSA Parties reached an agreement in principle with respect to a global settlement of all disputes, claims, and controversies between them

- The GUC Settlement, as incorporated in the Fourth Amended Plan, provides for:

  - A Convenience Class paid in full in Cash (approximately $130,000 in Allowed Claims)

  - An additional distribution of New Common Interests to Holders of General Unsecured Claims with a value of approximately $3.25 million

  - The distribution of GUC Contingent Payment Obligations to Holders of General Unsecured Claims (up to $7.1 million total)

  - The settlement of certain disputed General Unsecured Claims



# Plan Overview: Treatment

- Subject to the Court's approval, the Plan provides for among other things, the following treatment of Claims and Interests:

| Class | Claim | Treatment |
|---|---|---|
| n/a | Administrative Claims<br>Priority Tax Claims<br>Professional Fee Claims<br>DIP Claims | Payment in Full |
| 1 | April Convertible Notes Secured Claims | Pro Rata Share[1] of<br>(i)   $150 mm of New Secured Notes<br>(ii)  $260 mm of New Secured Convertible Notes<br>(iii) $260 mm of New Common Interests<br>(iv) $40mm rolled into Exit Facility<br>(v)  Contingent Payment Obligations (up to $130 million over 3 years) and<br>(vi) Incremental Equity Distributions[1] |
| 2 | August Convertible Notes Secured Claims | Pro Rata Share[1] of<br>(i)   $260 mm of New Secured Convertible Notes<br>(ii)  $260 mm of New Common Interests<br>(iii) $40mm rolled into Exit Facility<br>(iv) Contingent Payment Obligations (up to $130 million over 3 years) and<br>(v)  Incremental Equity Distributions[2] |

1.  Pro Rata Share takes into account both Class 1 and Class 2 (except for New Secured Notes)
2.  Incremental Equity Distributions are based on (a) the allowed amount of the Ad Hoc Equity Group's substantial Contribution Claim ($1.5 million) and (b) the Allowed amount of the Equity Committee's professional fee claims (above a certain threshold)



# Plan Overview: Treatment (cont'd)

| Class | Claim | Treatment |
|---|---|---|
| 3 | Miner Equipment Lender Secured Claims | Option to elect one of the following three treatments:<br>(i) secured takeback debt in the principal amount of such Holder's secured Claim and a Class 8A Claim equal to such Holder's deficiency Claim<br>(ii) Equitization of such Holder's entire Claim<br>(iii) secured takeback debt in the principal amount of 80% of such Holder's entire Claim, with the remaining deficiency Claim waived |
| 4 | Other Secured Claims | Unimpaired; Reinstated |
| 5 | M&M Lien Secured Claims | Vacant Class (due to M&M Lien Settlements) |
| 6 | Secured Mortgage Claim | Option to elect one of the following two treatments:<br>(i) mortgage agreement amended to include a maturity date of December 31, 2025<br>(ii) Cash in the amount of 95% of such Holder's Claim |
| 7 | Priority Non-Tax Claim | Payment in full |



# Plan Overview: Treatment (cont'd)

| Class | Claim | Treatment |
|-------|-------|-----------|
| 8A | General Unsecured Claims | (i) New Common Interests equal to the value of such Holder's Allowed Claim, and<br>(ii) (ii) Pro Rata Share of (a) GUC Settlement Additional Equity Distribution Amount ($3.25 million) and (b) GUC Contingent Payment Obligations (up to $7.1 million total) |
| 8B | Convenience Class Claims | Payment in full |
| 9 | Intercompany Claims | Unimpaired; Reinstated |
| 10 | Intercompany Interests | Intercompany Interests shall be unaffected by the Plan and continue in place following the Effective Date |
| 11 | Section 510(b) Claims | (i) Pro Rata Equity Share (shared with Existing Common Interests) of<br>(a) New Common Interests from the Residual Equity Pool,[1] and<br>(b) New Warrants[2], and<br>(ii) Cash or New Common Interests or a combination thereof equal to value of Subscription Rights such Holder would have received in Class 12 |
| 12 | Existing Common Interests | (i) Pro Rata Equity Share (shared with 510(b) Claims) of<br>(a) New Common Interests from the Residual Equity Pool, and<br>(b) New Warrants, and<br>(ii) Subscription Rights in connection with the Rights Offering |

1. Residual Equity Pool is the residual equity in business after equity distributed to (i) Convertible Notes, (ii) Miner Equipment Lenders (if any), (iii) GUCs, (iv) Bitmain, (v) ERO, (vi) ERO backstop fee and ERO Shortfall Distribution Amount (if any), and (vii) Fee-Related Equity Distribution to Convertible Notes
2. New Warrants are comprised of  (i) New Tranche 1 Warrants (30%; $1.875bn TEV strike price; 100% cash exercise) and (ii) New Tranche 2 Warrants (20%; $2.5bn TEV strike price; $0.01/share exercise price)



# Capital Structure and Equity Splits Upon Emergence

*($ in millions, unless otherwise specified)*

| PF Capital Structure | Amount |
|---|---|
| New Delayed Draw Term Loan | $61 |
| New Secured Notes | 150 |
| Miner Equipment Loans | 53 |
| Other Secured Debt | 84 |
| Total Non-Convertible Debt | $348 |
| New Secured Convertible Notes | 260 |
| Total Debt | $608 |
| (-) Excess Cash [1] | (40) |
| Net Debt | $568 |
| | |
| Plan TEV | $1,500 |
| (-) Net Debt | (568) |
| Plan Equity Value | $932 |

| Equity Ownership | % |
|---|---|
| Convertible Noteholders | 28% |
| Miner Equipment Lenders | 20% |
| GUCs | 10% |
| Bitmain | 6% |
| Existing Shareholders [2] | 22% |
| Disputed Claims [3] | 4% |
| Equity Rights Offering (incl. Backstop Fee) | 10% |
| Total | 100% |

Note: Illustrative based on current assumptions of 1/16/2024. Does not reflect the impact of the conversion of the New Secured Convertible Notes, the exercise of the Tranche 1 or Tranche 2 Warrants, or the issuance of shares to management under the Management Incentive Plan

1. Excess Cash reflects cash balance (at Company's forecasted cash trough) less $20 million anticipated minimum cash level based on Company's business plan and post-emergence debt service.
2. Includes reserve for unvested RSUs, restricted stock, and stock options.
3. The Company's books and records reflect that certain disputed claims should be disallowed in the future, in which case the equity value (and warrants) will be distributed to existing equity; however, the outcome of any litigation is uncertain. Includes 510(b) claims.



16

# Conclusion

- The Debtors' memorandum of law in support of confirmation sets forth the basis for meeting each of the requirements of sections 1125 and 1129 of the Bankruptcy Code

- The evidence on which the memorandum relies was moved into the record today and supports approval of the Disclosure Statement and Plan

- No party contends the Debtors have not met their burden to confirm the Plan under section 1129

    - The sole objector -- Morgan Hoffman -- objects only to the Plan's Third Party Releases

    - This objection should be overruled

- The Debtors respectfully request that the Court confirm the Plan and approve the Disclosure Statement

    - The Proposed Confirmation Order was filed at Docket No. 1724



# Core-Sphere-Gryphon Settlement

- Core Scientific Inc. ("**Core**") and Gryphon Digital Mining, Inc. ("**Gryphon**") entered into a Master Services Agreement (the "**MSA**") and two related orders – Order #1 and Order #2 (together with the MSA, the "**Hosting Agreements**") – through which Core was to host mining machines for Gryphon, and Gryphon was to make prepayments to Core and pay a monthly hosting fee rate per miner

- In connection with the Hosting Agreements, Sphere 3D Corp. ("**Sphere**") filed Proofs of Claim Nos. 358 and 359 (the "**Sphere POCs**"), substantively identical claims for $39,541,996.30 plus certain unliquidated amounts

  - Sphere claimed that Core failed to perform under the MSA and Order #2 – which Gryphon purportedly assigned to Sphere – and asserted claims for approximately $34 million in hosting deposits, approximately $5 million in alternative hosting costs, and certain other claims

- The Debtors filed an objection to the Sphere POCs (Docket No. 869) and also commenced an adversary proceeding against both Sphere and Gryphon (22-03252, Docket No. 1) seeking damages for construction costs and lost profits arising from the Hosting Agreements, among other relief (the "**Adversary Proceeding**")

- Shortly thereafter, Gryphon moved for leave to file a late proof of claim for contingent amounts of approximately $35 million in connection with the Hosting Agreements (the "**Motion for Leave**")

- In December 2023, the Debtors, Sphere, and Gryphon reached a settlement that resolves the Sphere POCs, the Adversary Proceeding, and the Motion for Leave (the "**Core-Sphere-Gryphon Settlement**")

- The Core-Sphere-Gryphon Settlement provides, among other things:

  - that Sphere will have a single allowed claim against Core Scientific, Inc. in the total amount of $10 million, for which Sphere is expected to receive a total Allowed General Unsecured Claim of $10 million in Class 8A in resolution of the Sphere POCs, and

  - for mutual releases between the Debtors on the one hand and Sphere and Gryphon on the other hand



# OG&E Settlement

- The Debtors and Oklahoma Gas & Electric ("**OG&E**") are party to an agreement (the "**Legacy OG&E Agreement**") relating to the provision of electricity utility services at the Debtors' blockchain infrastructure under construction located in Muskogee, Oklahoma (the "**Muskogee Facility**")

- In connection with amounts incurred by OG&E prior to the Petition Date for the construction of a substation providing electricity to the Muskogee Facility, OG&E asserted an unsecured claim in an amount of $8,026,732.80 (the "**OG&E Claim**")

- The parties reached a settlement of the OG&E Claim, as reflected in an amended and restated Legacy OG&E Agreement (the "**A&R Agreement**"):

  - OG&E must provide the Muskogee Facility a minimum operational electrical capacity of not less than 100 megawatts for the initial five (5) year term of the A&R Agreement;

  - The OG&E Claim shall be an Allowed General Unsecured Claim under the Plan in the amount of $4.8 million; and

  - OG&E will sell the New Common Interests received on as soon as reasonably and commercially possible.

    - To the extent the New Common Interests sold by OG&E on account of exceeds $4.8 million, OG&E will retain 30% of such excess amount, with the remainder applied by OG&E against other costs towards construction of the substation at the Muskogee Facility, or otherwise towards certain billing deposits or future credits

    - To the extent the New Common Interests sold by OG&E is less than $4.8 million, the Reorganized Debtor will pay OG&E such difference within 90 days



# Foundry Settlement

- Foundry is a digital asset mining-focused subsidiary of Digital Currency Group. The Debtors host Foundry's cryptocurrency mining equipment pursuant to certain hosting agreements (the "**Hosting Agreements**")

- Additionally, pursuant to an asset purchase agreement in February 2022 (the "**Foundry APA**"), certain of the Debtors acquired Bitmain Antminer S19 machines for a purchase price of approximately $21.3 million (the "**Purchase Price**"), which was paid to Foundry in shares of Core Scientific, which were subject to a lock-up

- The Foundry APA contained a provision that, if at the end of the lock-up period, the shares paid to Foundry decreased in value below the Purchase Price, the Debtors would be required to pay in cash the difference between the Purchase Price and value as of the Core Scientific as of the expiration of the lock-up period (the "**True-Up**")

- On April 13, 2023, Foundry filed proofs of claim against certain of the Debtors asserting a claim of at least $18.4 million in connection with the True-Up (the "**Foundry Claim**")

- The Foundry settlement, provides, among other things:

  - The Foundry Claim will be an Allowed General Unsecured Claim in the amount of $5.5 million as of the Effective Date; and

  - The Debtors will assume the Hosting Agreements and pay any cure costs (which are expected to $0)



# Disputed Claims Motion

- On December 7, 2023, the Debtors filed the Disputed Claims Motion at Docket No. 1525, seeking to establish maximum claim amounts in connection with unsecured claims that are contingent, unliquidated and/or disputed:

  - litigation claims against the Debtors, excluding Section 510(b) Claims ("**Litigation Claims**")

  - potential rejection damages claims ("**Rejection Damages Claims**")

  - Section 510(b) Claims ("**510(b) Claims**"); and

  - other contingent, unliquidated, and/or disputed claims (the "**Other Disputed Claims**", and together with the Litigation Claims, Rejection Damages Claims, and 510(b) Claims, the "**CUD Claims**")

- The proposed maximum claim amounts are set forth in the schedules (the "**CUD Schedules**") attached to the revised proposed order approving the Disputed Claims Motion at Docket No. 1706

- The CUD Schedules seek to set the Maximum Disputed Claim Amounts for the CUD Claims in the aggregate amount of $37,748,145, as follows:

  - <u>Litigation Claims</u> - $8.5 million

  - <u>Rejection Damages Claims</u> - $8.5 million

  - <u>Section 510(b) Claims</u> - $6.8 million

  - <u>Other Disputed Claims</u> - $13.9 million

- To the extent CUD Claims are Allowed, in whole or in part, such claimholders will receive a distribution on such Allowed amount as provided under the Plan for such Class of Claims

- To the extent CUD Claims are disallowed, in whole or in part, New Common Interests that have been deemed issued pursuant to the Plan in connection with such disallowed CUD Claims will (A) first be applied for the benefit of the GUC Contingent Payment Obligations, to the extent payable and (B) then be distributed to holders of Class 11 Allowed Section 510(b) Claims and Class 12 Existing Common Interests (if any)

