United States Bankruptcy Court
Southern District of Texas
**ENTERED**
January 16, 2024
Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | § | **Chapter 11** |
|  | § |  |
| **CORE SCIENTIFIC, INC.**, *et al.*, | § | **Case No. 22-90341 (CML)** |
|  | § |  |
|  | § | **(Jointly Administered)** |
| Debtors.[1] | § | Re: Docket No. 1712 |

**ORDER APPROVING (I) REVISED SETTLEMENT BETWEEN DEBTORS
AND FOUNDRY DIGITAL LLC AND (II) GRANTING RELATED RELIEF**

Upon the emergency motion (the "**Motion**") of Core Scientific, Inc. and its debtor

affiliates, as debtors and debtors in possession (collectively, the "**Debtors**"), requesting entry of

an order (i) approving the Revised Foundry Settlement Agreement (as defined in the Motion)[2] and

the settlements, agreements and transactions embodied or contemplated therein, (ii) authorizing

the Debtors to execute, deliver and perform under the Revised Foundry Settlement Documents (as

defined in the Motion), (iii) authorizing the Debtors to take any and all actions necessary,

appropriate or desirable to implement the Revised Foundry Settlement Documents and the

settlements, agreements and transactions embodied or contemplated therein, and (iv) granting

related relief; and the Court having jurisdiction to consider the Motion and the relief requested

therein pursuant to 28 U.S.C. §1334; and consideration of the Motion and the requested relief

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions, VII, LLC (3198). The Debtors' corporate headquarters is 210 Barton Springs Road, Suite 300, Austin, Texas 78704. The Debtors' service address is 2407 S. Congress Ave, Suite E-101, Austin, Texas 78704.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Foundry Settlement Agreement.

being a core proceeding pursuant to 28 U.S.C. § 157(b); and it appearing that venue is proper

before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion

having been provided, and it appearing that no other or further notice need be provided; and the

Court having reviewed the Motion; and all objections, if any, to the Motion having been

withdrawn, resolved, or overruled; and the Court having determined that the legal and factual bases

set forth in the Motion establish just cause for the relief granted herein; and it appearing that the

relief requested in the Motion is in the best interest of the Debtors and their respective estates and

creditors; and upon all of the proceedings had before the Court and after due deliberation and

sufficient cause appearing,

### IT IS HEREBY ORDERED THAT:

1.      The Revised Foundry Settlement Agreement, attached hereto as **Exhibit A**,
is incorporated and restated herein as if fully set forth herein, and is hereby authorized and
approved.

2.      The settlements, agreements and transactions embodied or contemplated in
the Revised Foundry Settlement Agreement are hereby authorized and approved.

3.      Subject to the terms and conditions of the Revised Foundry Settlement
Agreement: (a) the Plan (including any amendments or modifications thereto) shall incorporate,
and be consistent with, the Revised Foundry Settlement Agreement (and the settlement,
agreements, documents and transactions contemplated therein) and shall expressly include
Foundry as a Released Party; (b) the Debtors shall have sought or shall seek entry of the
Confirmation Order that incorporates, and is consistent with, the Revised Foundry Settlement
Agreement (and the settlement, agreements, documents, and transactions contemplated therein)
and includes Foundry as a Released Party; (c) on the Effective Date, the Debtors shall assume the

Foundry Hosting Agreements and perform thereunder, and pay any cure amounts related thereto; (d) the Foundry Claims shall be listed on the Schedule of Allowed General Unsecured Claims and shall be Allowed General Unsecured Claims as of the Effective Date in the total amount of $5,500,000 (collectively, the "**Foundry Allowed Claims**"); and (e) upon the Settlement Effective Date, Foundry shall receive the treatment and distributions provided to Holders of Allowed General Unsecured Claims in Class 8A of the Plan with respect to the Foundry Allowed Claims in full and final satisfaction of such Foundry Allowed Claims.

4.      The Debtors are authorized to (a) enter into, execute, deliver and perform under the Revised Foundry Settlement Documents and any other documents and instruments entered or entered into in connection therewith, and the transactions contemplated therein, (b) take all actions, and provide all further assurances, necessary, appropriate or desirable in connection with the Revised Foundry Settlement Documents, including to immediately continue and fully implement the Revised Foundry Settlement Documents and the settlements, agreements and transactions embodied therein, and (c) fully consummate and effect the transactions provided for, and carry out the relief granted, in this Order in accordance with the terms of the Revised Foundry Settlement Agreement.

5.      The Revised Foundry Settlement is the product of extensive, good faith, arms-length negotiations between Foundry and the Debtors and their respective representatives.

6.      Effective upon the effective date of the Plan, to the extent applicable, the automatic stay pursuant to section 362(a) of the Bankruptcy Code is hereby lifted solely for purposes of implementing the Revised Foundry Settlement Documents and the settlements and transactions contemplated therein, and/or to permit Foundry to enforce the terms of the Revised Foundry Settlement Documents and exercise its rights and remedies thereunder.

7.　　To the extent that there is any inconsistency between the Motion and this Order, the provisions of this Order shall govern.

8.　　Notwithstanding the provisions of Bankruptcy Rule 6004(h), this Order shall be immediately effective and enforceable upon its entry.

9.　　This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Signed: January 16, 2024

Christopher Lopez
United States Bankruptcy Judge

4

## Exhibit A

**Revised Foundry Settlement Agreement**

## SETTLEMENT AGREEMENT

This Settlement Agreement (this "Agreement") is made and entered into as of January 12, 2024, by and among Foundry Digital LLC, a Delaware limited liability company ("Foundry"), Core Scientific, Inc., a Delaware corporation ("New Core") and its affiliated debtors (collectively, the "Debtors") in the Chapter 11 Cases (as defined herein). Each of the foregoing are referred to herein individually as a "Party" and collectively as the "Parties".

## RECITALS

WHEREAS, on November 23, 2019, Foundry and Core Scientific Operating Company (f/k/a Core Scientific, Inc., a Delaware Corporation, and a wholly owned subsidiary of Core Scientific Holding Co., a Delaware Corporation ("Core Holding")) ("CSOC") entered into a Master Services Agreement (the "2019 MSA") and, contemporaneously therewith or subsequently thereto, CSOC or New Core (as applicable) and Foundry executed certain Orders (as defined in the 2019 MSA) pursuant to the 2019 MSA, including the Master Services Agreement Order #5, Master Services Agreement Order #6 and Master Services Agreement Order #7 (collectively, the "2019 MSA Orders" and together with the 2019 MSA, each as amended, supplemented or modified, collectively, the "2019 Hosting Agreement"), pursuant to which CSOC or New Core (as applicable), among other things, agreed to provide colocation, hosting and certain other services to Foundry with respect to the cryptocurrency mining equipment owned by Foundry and identified in the 2019 Hosting Agreement;

WHEREAS, on May 3, 2021, Foundry and Blockcap Inc., a Nevada corporation ("Blockcap") entered into an Asset Purchase Agreement (the "Purchase Agreement") with respect to the sale (the "Sale") by Foundry and the purchase by Blockcap of 2,106 Bitmain Antminer S19 XP mining machines (the "S19s") for an aggregate purchase price of $21,312,720 (the "Purchase Price");

WHEREAS, on May 5, 2021, Foundry delivered title to and possession of the S19s to Blockcap free and clear of all encumbrances, and the other transactions contemplated by the Purchase Agreement were consummated, other than the payment of the Purchase Price, which was to be paid following the closing on the Sale as set forth in the Purchase Agreement;

WHEREAS, on July 30, 2021, Blockcap was acquired by Core Holding, in accordance with an Agreement and Plan of Merger dated July 15, 2021, pursuant to which Blockcap became a wholly owned subsidiary of Core Holding. On January 20, 2022, Blockcap was merged with and into certain New Core entities, with Core Scientific Acquired Mining, LLC ("CSAM"), which is one of the Debtors, remaining as the surviving legal entity;

WHEREAS, on February 2, 2022, Foundry, Blockcap and, solely with respect to section 3.2 thereof, New Core entered into an Amended and Restated Purchase Agreement (the "A&R Purchase Agreement") with respect to the Sale, which provided for the satisfaction of the Purchase Price by New Core in the form of the issuance to Foundry of 1,580,299 shares of New Core common stock ("CORZ Common Stock") and the payment of an additional amount in cash for the balance of the Purchase Price if the value of the CORZ Common Stock, as provided in the A&R Purchase Agreement, was less than the Purchase Price at the end of the Lockup Period (as defined in the A&R Purchase Agreement);

1

WHEREAS, on September 21, 2022, Foundry and New Core entered into a Master Services Agreement (the "2022 MSA") and, contemporaneously therewith or subsequently thereto, New Core and Foundry executed certain Orders (as defined in the 2022 MSA) pursuant thereto, including the Master Services Agreement Order #1 (together with the 2022 MSA, each as amended, supplemented or modified, collectively, the "2022 Hosting Agreement" and together with the 2019 Hosting Agreement, the "Hosting Agreements"), pursuant to which New Core, among other things, agreed to provide colocation, hosting and certain other services to Foundry with respect to the cryptocurrency mining equipment owned by Foundry and identified in the 2022 Hosting Agreement;

WHEREAS, on December 21, 2022, the Debtors filed voluntary petitions for relief under Chapter 11 of title 11 of the United States Bankruptcy Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court") initiating their respective Chapter 11 cases, which are being jointly administered under Case Number 22-90341 (CML) (the "Chapter 11 Cases");

WHEREAS, on April 13, 2023, Foundry timely filed Proof of Claim Nos. 360 and 361 relating to claims arising under the A&R Purchase Agreement (the "APA POCs") and Proof of Claims Nos. 393 and 394 relating to claims arising under the Hosting Agreements (together with the APA POCs, the "Foundry POCs");

WHEREAS, on August 25, 2023, the Debtors filed the *Debtors' Motion for Order Approving (I) Settlement Between Debtors and Foundry Digital LLC and (II) Granting Related Relief* [Docket No. 1180] (the "First Foundry Settlement Motion"), whereby the Debtors sought approval of a settlement with Foundry (the "First Foundry Settlement") that, among other things, resolved the APA POCs subject to the terms and conditions set forth in a fully executed settlement agreement (the "First Foundry Settlement Agreement") and other related documents;

WHEREAS, on December 28, 2023, the Debtors filed their *Fourth Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors* [Docket No. 1639] (together with any and all appendices, exhibits, schedules, and supplements thereto (including, without limitation, any appendices, schedules, and supplements thereto contained in the Plan Supplement (as defined in the Plan), as each of the foregoing may be amended, supplemented, or modified) (in form and substance reasonably acceptable to Foundry to the extent any of the foregoing documents relate to this Agreement and the transactions contemplated hereby and/or materially affect Foundry or any of its rights or claims, the "Plan") and the related *Supplement to Disclosure Statement for Fourth Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors* [Docket No. 1640], which supplements the *Disclosure Statement for Third Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors* [Docket No. 1439] (as may be amended, modified, or supplemented, the "Disclosure Statement");

WHEREAS, on December 28, 2023 the Court entered the *Order (I) Modifying Dates and Deadlines Set Forth in the Disclosure Statement Order and (II) Conditionally Approving the Debtors' Disclosure Statement Supplement* [Docket No. 1638] (including any exhibits and schedules thereto and as may be modified, amended or supplemented, the "Disclosure Statement Order"), conditionally approving the Disclosure Statement and scheduled the hearing for confirmation of the Plan for January 16, 2024;

2

WHEREAS, subsequent to the filing of the First Foundry Settlement Motion, the Parties engaged in further good faith, arm's-length discussions regarding, *inter alia*, the First Foundry Settlement and Foundry's claims arising under or related to the A&R Purchase Agreement (including the APA POCs), and have determined that it would be in their respective best interests to revise the First Foundry Settlement by entering into this Agreement, which amends, restates and supersedes the First Foundry Settlement Agreement; and

WHEREAS, the Debtors have determined that the compromises set forth herein are fair, reasonable and in the best interests of the Debtors, their estates and their creditors;

NOW, THEREFORE, in consideration of the mutual covenants and agreements hereafter set forth and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree as follow:

## AGREEMENT

1.      The above recitals are incorporated herein by reference with the same force and effect as if fully set forth hereafter.

2.      <u>Settlement Transactions</u>.  Except as otherwise expressly provided in this Section 2, this Agreement and the transactions, agreements, and the Parties' respective obligations, contemplated under this Agreement shall be subject to, and become effective upon, the occurrence of the Settlement Effective Date (as defined below).  The Parties agree that:[1]

   a. Upon the execution of this Agreement, the Debtors shall file an emergency motion, in form and substance reasonably acceptable to Foundry, seeking approval of this Agreement and the entry of the Approval Order (as defined below).

   b. On or before the date that the Bankruptcy Court enters the Confirmation Order (as defined below), the Debtors shall obtain the entry of the Approval Order.

   c. From and after the date of this Agreement, the Plan (including any amendments or modifications thereto) shall incorporate, and be consistent with, this Agreement (and the settlement, agreements, documents and transactions contemplated herein) and shall expressly include Foundry as a Released Party.

   d. The Debtors shall have sought or shall seek entry of an order confirming a Plan that incorporates, and is consistent with, this Agreement (and the settlement, agreements, documents, and transactions contemplated herein) and includes Foundry as a Released Party, which order shall be in form and substance reasonably acceptable to the Debtors and Foundry (each in its sole discretion) as it relates to this Agreement and the transactions contemplated hereby and/or

---

[1] Capitalized terms used, but not otherwise defined, in this Section 2 shall have the meanings ascribed to such terms in the Plan.

3

to the extent it materially affects Foundry or any of its rights or claims (such order, the "Confirmation Order").

e. The Debtors shall assume the Hosting Agreements and perform thereunder, and pay any cure amounts related thereto.

f. The Foundry Claims[2] shall be listed on the Schedule of Allowed General Unsecured Claims and shall be Allowed General Unsecured Claims as of the Effective Date in the total amount of $5,500,000, which includes any interest, fees, and expenses, whether incurred prior to or after the Petition Date (collectively, the "Foundry Allowed Claims").

g. Upon the Settlement Effective Date, Foundry shall receive the treatment and distributions provided to Holders of Allowed General Unsecured Claims in Class 8A of the Plan with respect to the Foundry Allowed Claims in full and final satisfaction of such Foundry Allowed Claims.

h. Foundry shall, subject to (i) the entry of the Approval Order, and (ii) the terms and conditions hereof, vote the Foundry Allowed Claims to accept the Plan; *provided* that such Plan is in form and substance reasonably acceptable to Foundry (solely to the extent it relates to this Agreement and the transactions contemplated hereby and/or materially affects Foundry or any of its rights or claims) and incorporates the terms of, and is consistent with, this Agreement and the agreements and transactions contemplated herein; *provided further* that notwithstanding the foregoing, if (w) the Approval Order is not entered on or before the date that the Bankruptcy Court enters the Confirmation Order, (x) the Plan is inconsistent with this Agreement, (y) any of the conditions to the occurrence of the Settlement Effective Date have not been satisfied, or (z) this Agreement is terminated, then, unless the Debtors are otherwise instructed or notified by Foundry in accordance with Section 7 of this Agreement, Foundry's vote to accept the Plan, and/or any release or consent provided or deemed to be provided by Foundry, shall be deemed revoked, null and void, and of no force and effect, and Foundry shall be entitled to submit revised ballot(s), which shall be deemed timely submitted.

i. Subject to, and effective upon the Settlement Effective Date, (x) the Foundry Allowed Claims shall be satisfied by the consummation of the settlement, agreements and transactions contemplated under this Agreement, including the treatment of the Foundry Allowed Claims under the Plan in accordance with the terms hereof, (y) no other compensation or distribution shall be provided to Foundry under the Plan on account of the Foundry Allowed Claims, other than as provided herein, and (z) Foundry's Claims (but not Interests), including the Foundry Allowed Claims, against any of the Debtors, and each of the Debtors'

---

[2] For the avoidance of doubt, the Foundry Claims shall mean the Claims arising under the A&R Purchase Agreement set forth in the APA POCs.

4

claims against Foundry, in each case, arising prior to the Settlement Effective Date shall be released; *provided*, *however*, that nothing herein, in the Plan, Confirmation Order or any other document entered or entered into in connection with any of the foregoing shall, or shall be deemed to, release, waive, discharge, terminate or affect any rights, claims, interests or obligations of Foundry or any of the Debtors arising (1) from and after the Settlement Effective Date or (2) under or related to this Agreement, the Hosting Agreements, the Approval Order, or the transactions contemplated hereunder or thereunder.

j.  Foundry's Interests in New Core comprising of 2,095,790 shares of common stock issued by Core Scientific, Inc. shall constitute, and the Plan and Confirmation Order shall provide that Foundry has, Existing Common Interests in New Core (such Existing Common Interests, the "<u>Foundry Interests</u>") and, with respect to the Foundry Interests, Foundry shall receive the same treatment as other holders of Existing Common Interests in New Core.[3]

k.  From the date of this Agreement through the Settlement Effective Date, the Debtors and Foundry shall not (directly or indirectly) take any action inconsistent with, or omit to take any action required by, this Agreement, or take any action in connection with challenging or disputing any Claims of Foundry, or support any Person in connection with any of the foregoing.

3.  <u>Condition Precedent to the Obligations of the Parties</u>.  Except as expressly provided in Section 2 of this Agreement, the respective obligations of the Debtors and Foundry to perform under this Agreement, and the satisfaction of the Foundry Allowed Claims, are subject to satisfaction, or, to the extent permitted by applicable Law,[4] joint written waiver by the Parties, of each of the following conditions (the date on which all such conditions have been satisfied or waived in accordance with the terms hereof, the "<u>Settlement Effective Date</u>"):

a.  On or before the date that the Bankruptcy Court enters the Confirmation Order, the Bankruptcy Court shall have entered an order in form and substance reasonably acceptable to the Debtors and Foundry, each in its sole discretion, authorizing and approving the settlement and agreements set forth herein pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure and other applicable Law, that, among other things, authorizes, approves and directs the Debtors to execute and deliver this Agreement and perform hereunder (the "<u>Approval Order</u>").

---

[3] All references herein to Foundry Interests shall also mean and constitute Allowed Existing Common Interests (as defined in the Plan) to the extent the Plan requires Foundry to hold Allowed Existing Common Interests to be entitled to treatment or distributions under the Plan on account of its Interests.

[4] "Laws" means all (i) federal, state, provincial, local, municipal, foreign or other laws, statutes, legislations, constitutions, common law, resolutions, rules, edicts, codes, regulations, restrictions, ordinances, proclamations, treaties, conventions and requirements of, or issued, promulgated, enforced or entered by, any Governmental Body (as defined herein), and (ii) Orders (as defined herein).

b. The Approval Order shall not have been reversed, stayed, amended, modified, dismissed, vacated or reconsidered;

c. The Plan shall be in form and substance reasonably acceptable to Foundry (solely as it relates to this Agreement and the transactions contemplated hereby and/or to the extent it materially affects Foundry or any of its rights or claims) and shall incorporate the terms of, and be consistent with, this Agreement and the transactions and agreements contemplated hereunder and thereunder, including granting Foundry the Foundry Allowed Claims and providing that the treatment for such claims shall be the consummation of the settlement, agreements and transactions contemplated under this Agreement;

d. The Bankruptcy Court shall have entered the Confirmation Order that, among other things:

i. confirms the Plan that incorporates the terms of this Agreement, the Approval Order and the transactions and agreements contemplated hereunder and thereunder;

ii. effective as of the Settlement Effective Date, authorizes, approves and directs the assumption of the Hosting Agreements pursuant to Bankruptcy Code section 365 and the payment of applicable cure amounts (if any);

iii. provides that this Agreement, the Hosting Agreements and the Approval Order shall govern in the event that there is a conflict between any of the foregoing documents, on the one hand, and any other Order,[5] pleading, document or agreement, on the other hand, including, without limitation, the Plan;

iv. modifies or vacates the automatic stay imposed by Bankruptcy Code sections 105(a) and 362 or otherwise, to the extent necessary, required or desirable to implement the terms and provisions of this Agreement, the Hosting Agreements, the Approval Order and/or the Confirmation Order, and/or permits Foundry to enforce the terms hereof and thereof and exercise its rights and remedies hereunder and thereunder; and

v. provides that nothing contained in the Plan and/or Confirmation Order, including any release, discharge, exculpation or injunction provision, shall affect, release, discharge or waive the rights, interests, claims, remedies, and obligations of the Parties (a) arising from, under or relating to this

---

[5] "Order" means any order, writ, judgment, injunction, decree, ruling, directive, determination or award made, issued or entered by any Governmental Body, whether preliminary, interlocutory or final, including by the Bankruptcy Court in the Chapter 11 Cases (including the Approval Order).

Agreement, the Approval Order and/or the Hosting Agreements, or (b) arising from and after the Effective Date (as defined in the Plan);

e.   The Confirmation Order shall not have been reversed, stayed, amended, modified, dismissed, vacated or reconsidered;

f.   The Effective Date (as defined in the Plan) shall have occurred;

g.   The representations and warranties contained in Sections 4 and 5 of this Agreement shall be true and correct in all respects on the dates provided therein; and

h.   no Law (including any Order) (whether temporary, preliminary or permanent) that enjoins, restrains, prevents, makes illegal or otherwise prohibits the consummation of the transactions contemplated in this Agreement, the Approval Order, the Confirmation Order or the Hosting Agreements shall be in effect.

For the avoidance of doubt, to the extent that the Confirmation Order is not entered and the Settlement Effective Date does not occur, neither the Debtors nor Foundry shall have any obligation in connection with this Agreement, and the rights of the Parties in connection with the Foundry POCs, the Foundry Interests and the Hosting Agreements shall be reserved in all respects.

4.   <u>Debtors' and Reorganized Debtors' Representations and Warranties</u>.  Each Debtor and Reorganized Debtor hereby jointly and severally makes the representations and warranties in this Section 4 to Foundry as of the date hereof and the Settlement Effective Date (except with respect to representations and warranties made as of a particular date, which shall be deemed to be made only as of such date).

a.   <u>Organization and Qualification</u>.  Each Debtor and Reorganized Debtor (i) is an entity duly organized, validly existing and in good standing under the Laws of its jurisdiction of organization, (ii) has all requisite organizational power and authority to own and operate its assets and conduct its business, in each case, as currently conducted and (iii) is duly qualified to do business in, and is in good standing in, each jurisdiction in which such qualification is required by applicable Laws.

b.   <u>Authority Relative to This Agreement</u>.  Subject to entry of the Approval Order (i) the execution and delivery by the applicable Debtors and/or Reorganized Debtors of this Agreement, (ii) the performance by the applicable Debtors and/or Reorganized Debtors of their respective obligations under this Agreement, the Plan (as it relates to the transactions contemplated herein), the Approval Order, the Confirmation Order and the Hosting Agreements, and (iii) the consummation by the Debtors and/or Reorganized Debtors of the transactions contemplated hereby and thereby, have been duly authorized by all requisite action on the part of each of the Debtors and/or Reorganized Debtors (as applicable).  Subject to entry of the Approval Order, (x) this Agreement has been duly and validly executed and delivered by the Debtors and/or Reorganized Debtors and (y) assuming the due authorization, execution and delivery by the other

7

parties hereto and thereto, this Agreement (and the settlement and agreements contemplated herein) shall constitute valid and binding obligations of the Debtors and Reorganized Debtors enforceable against the Debtors and the Reorganized Debtors in accordance with their respective terms.

c.    Conflicts; Consents and Approvals.  Subject to the entry of the Approval Order, none of the execution and delivery by the Debtors and/or the Reorganized Debtors of this Agreement, the consummation by the Debtors and/or the Reorganized Debtors of the transactions contemplated hereby, or the performance by the Debtors and/or the Reorganized Debtors of any of their respective obligations hereunder will (i) conflict with or violate the organizational documents of any of the Debtors or the Reorganized Debtors, (ii) result in a violation of or default (with or without notice or lapse of time, or both) under, require any consent under, or give rise to a right of termination, cancellation or acceleration of any obligation or to the loss of a benefit under, any provision of any of the contracts or agreements to which any Debtor or Reorganized Debtor is a party, or (iii) violate any Law applicable to the Debtors or the Reorganized Debtors, or by which any Debtor or Reorganized Debtor is bound or affected.  No approval, Order or permit from, consent by, or registration, declaration, notification or filing with, any Governmental Body[6] is required on the part of the Debtors or Reorganized Debtors in connection with the execution and delivery by the Debtors and/or the Reorganized Debtors of this Agreement or the Hosting Agreements, the performance by the Debtors and/or the Reorganized Debtors of any of its obligations hereunder, or the consummation by the Debtors and/or the Reorganized Debtors of the transactions contemplated hereby or thereby, except for the entry of the Approval Order.

5.    Foundry Representations and Warranties.    Foundry hereby makes the representations and warranties in this Section 5 to the Debtors or Reorganized Debtors (as applicable) as of the date hereof and the Settlement Effective Date (except with respect to representations and warranties made as of a particular date, which shall be deemed to be made only as of such date).

a.    Organization and Qualification.  Foundry (i) is an entity duly organized, validly existing and in good standing under the Laws of its jurisdiction of organization, (ii) has all requisite organizational power and authority to conduct its business as currently conducted and (iii) is duly qualified to do business in, and is in good standing in, each jurisdiction in which such qualification is required by applicable Laws.

b.    Authority Relative to This Agreement.    Foundry has all requisite organizational power and authority to execute and deliver this Agreement, perform its obligations hereunder, and consummate the transactions contemplated hereby.  The execution and delivery by Foundry of this Agreement, the performance by Foundry of its obligations hereunder, and the consummation of the transactions contemplated hereby, have been duly authorized by all requisite action on the part of Foundry.  This Agreement has been duly and validly executed and delivered by Foundry, and assuming the due authorization, execution and delivery by the other parties hereto,

---

[6] "Governmental Body" means any applicable federal, state, provincial, local, municipal, or foreign government or any agency, bureau, board, commission, court, department, political subdivision, regulatory or administrative authority, tribunal or other instrumentality thereof.

this Agreement, when so executed and delivered, constitutes legal, valid and binding obligations of Foundry, enforceable against Foundry in accordance with its terms.

   c. <u>Hosting Agreements</u>.  As of the date of this Agreement, Foundry is not owed any cure amounts in connection with the Hosting Agreements.

  6. <u>Conflicts</u>.  To the extent that there are any conflicts between this Agreement and any other document, including the Plan or any Order of the Bankruptcy Court entered in the Debtors' Chapter 11 Cases, this Agreement shall govern in all respects.

  7. <u>Notices</u>.  Except as otherwise expressly provided in this Agreement, all notices, requests, demands, consents, document deliveries and other communications under this Agreement shall be in writing and shall be deemed to have been duly given, provided, made or received (a) when sent by electronic mail ("e-mail"), (b) when delivered personally, (c) one (1) Business Day (as defined in the Plan) after deposit with an overnight courier service, or (d) three (3) Business Days after the date of mailing by certified or registered mail, return receipt requested, with postage prepaid, in any such case to the parties hereto at the following addresses or e-mail addresses (or at such other address or e-mail address for a Party hereto as shall be specified by like notice to the other Party hereto):

If to the Debtors:

Core Scientific, Inc.
210 Barton Springs Road, Suite 300
Austin, Texas 78704
Attention: Todd DuChene
E-mail: tduchene@corescientific.com

If to Foundry:

  Foundry Digital LLC
  1100 Pittsford Victor Road
  Pittsford, NY 14534
  Attention: Michael Colyer
    Ryan Boyle
  E-mail: mcolyer@foundrydigital.com
    rboyle@foundrydigital.com

  With a copy to:

  Schulte Roth & Zabel LLP
  919 Third Avenue
  New York, New York 10022
  Attn: Kristine Manoukian
    Peter Amend
  E-mail: Kristine.manoukian@srz.com

9

Peter.Amend@srz.com

8.  <u>No Admission of Liability</u>.  The Parties understand and acknowledge that this Agreement constitutes a compromise and settlement of certain actual or potential disputed claims by the Parties.  No action taken by either Party hereto, either previously or in connection with this Agreement, shall be deemed or construed to be (a) an admission of the truth or falsity of any actual or potential claims or (b) an acknowledgment or admission by such Party of any fault or liability whatsoever to the other Party or to any third party.

9.  <u>Acknowledgement; No Other Representations</u>.  Each Party represents that it has had the opportunity to consult with an attorney and has carefully read and understands the scope and effect of the provisions of this Agreement.  No representations, warranties, or statements of any nature, whether written or oral, have been made to or relied upon by any Party concerning this Agreement, other than the representations, warranties, agreements and covenants expressly set forth herein.

10.  <u>Further Assurances</u>.  Subject to the terms and conditions of this Agreement and applicable Law, (x) each Debtor or Reorganized Debtor shall (and shall cause its affiliates and its and their respective representatives to), and (y) Foundry shall (and shall cause its representatives to), use their respective commercially reasonable efforts to take, or cause to be taken, all actions, and to do, or cause to be done, all things necessary, proper or advisable under applicable Law to ensure that the conditions precedent to the other party's obligations hereunder to consummate the agreements and transactions contemplated hereby are satisfied and to consummate and make effective the transactions contemplated by this Agreement as soon as practicable, including using their respective commercially reasonable efforts to obtain all necessary waivers, consents, approvals and Orders (including entry of the Approval Order by the Bankruptcy Court) and effecting all necessary registrations and filings to consummate and make effective the transactions contemplated hereby.  Subject to the terms and conditions of this Agreement, the Debtors, the Reorganized Debtors and/or Foundry shall not take any action and shall refrain from taking any action the effect of which would be to delay or impede the ability of the Debtors, the Reorganized Debtors and/or Foundry to consummate the agreements and transactions contemplated by this Agreement (including not take any action, and refrain from taking any action, the effect of which is intended or would reasonably be expected to result in any of the conditions to any party's obligations to consummate the transactions contemplated hereby to not be satisfied) unless taking such action or refraining from taking such action is required by applicable Law.

11.  <u>Foundry's Equity Interests and Other Rights</u>:  Notwithstanding anything in this Agreement, the Debtors acknowledge and agree that nothing in this Agreement shall affect Foundry's rights, remedies or interests as an equity holder, its ability to participate in any rights offering, capital raise, financing or similar transaction, its rights or duties as a member of the official committee of equity security holders appointed in the Chapter 11 Cases, or otherwise be deemed as support for the Plan in Foundry's capacity as equity holder.

12.  <u>Governing Law</u>.  THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE LAWS OF DELAWARE,

WITHOUT GIVING EFFECT TO PRINCIPLES OF CONFLICTS OF LAW OR CHOICE OF LAW.

      13.    <u>Jurisdiction, Waiver of Jury Trial</u>.

      a.    THE BANKRUPTCY COURT WILL HAVE JURISDICTION OVER ANY AND ALL ACTIONS, CLAIMS, SUITS OR PROCEEDINGS, WHETHER IN LAW OR EQUITY, ARISING OUT OF, BASED UPON OR RELATING TO THIS AGREEMENT AND EACH PARTY HERETO HEREBY IRREVOCABLY SUBMITS TO THE EXCLUSIVE JURISDICTION OF THE BANKRUPTCY COURT (OR ANY COURT EXERCISING APPELLATE JURISDICTION OVER THE BANKRUPTCY COURT) IN RESPECT OF ANY SUCH ACTION, CLAIM, SUIT OR PROCEEDING AND AGREES THAT IT WILL NOT BRING ANY SUCH ACTION, CLAIM, SUIT OR PROCEEDING IN ANY OTHER COURT. EACH PARTY HERETO HEREBY IRREVOCABLY WAIVES, AND AGREES NOT TO ASSERT AS A DEFENSE, COUNTERCLAIM OR OTHERWISE, IN ANY SUCH ACTION, CLAIM, SUIT OR PROCEEDING, (A) ANY CLAIM THAT IT IS NOT PERSONALLY SUBJECT TO THE JURISDICTION OF THE ABOVE NAMED COURTS FOR ANY REASON OTHER THAN THE FAILURE TO SERVE PROCESS IN ACCORDANCE WITH  SECTION 7 HEREOF, (B) ANY  CLAIM THAT IT OR ITS  PROPERTY IS EXEMPT OR IMMUNE FROM JURISDICTION OF ANY SUCH COURT OR FROM ANY LEGAL PROCESS COMMENCED IN ANY SUCH COURT (WHETHER THROUGH SERVICE OF NOTICE, ATTACHMENT PRIOR TO JUDGMENT, ATTACHMENT IN AID OF EXECUTION OF JUDGMENT, EXECUTION OF JUDGMENT OR OTHERWISE) AND (C) TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY CLAIM THAT (I) THE ACTION, CLAIM, SUIT OR PROCEEDING IN SUCH COURT IS BROUGHT IN AN INCONVENIENT FORUM, (II) THE VENUE OF SUCH ACTION, CLAIM, SUIT OR PROCEEDING IS IMPROPER OR (III) THIS AGREEMENT OR THE SUBJECT MATTER HEREOF MAY NOT BE ENFORCED IN OR BY ANY SUCH COURT. EACH PARTY HERETO AGREES THAT NOTICE OR THE SERVICE OF PROCESS IN ANY ACTION, CLAIM, SUIT OR PROCEEDING ARISING OUT OF, BASED UPON OR RELATING TO THIS AGREEMENT, SHALL BE PROPERLY SERVED OR DELIVERED IF DELIVERED IN THE MANNER CONTEMPLATED BY SECTION 7 HEREOF.

      b.    EACH OF THE PARTIES HERETO HEREBY IRREVOCABLY WAIVES TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, CLAIM, SUIT OR PROCEEDING (WHETHER BASED IN CONTRACT, TORT OR OTHERWISE) ARISING OUT OF, BASED UPON OR RELATING TO THIS AGREEMENT.

      14.    <u>Entire Agreement</u>.  This Agreement, the Hosting Agreements, the A&R Purchase Agreement, the Approval Order, the Plan and the Confirmation Order constitute and represent the entire agreement and understanding between the Parties concerning the subject matter of this Agreement, the Hosting Agreements, the A&R Purchase Agreement, the Approval Order, and the events leading thereto and associated therewith, and supersedes all prior agreements and understandings concerning the subject matter of this Agreement, the Hosting Agreements, the A&R Purchase Agreement and the Approval Order.

11

15.    Binding Effect; Assignment.  This Agreement shall be binding upon, and shall inure to the benefit of, the Parties hereto and their respective successors and permitted assigns, including, in the case of the Debtors, any Reorganized Debtor, and/or any trustee or estate representative appointed in the Chapter 11 Cases or in any successor chapter 7 case.  No assignment of this Agreement or any rights, interests or obligations hereunder may be made by any party hereto (by operation of Law or otherwise) without the prior written consent of the other party hereto, and any attempted assignment without the required consents shall be void.  Notwithstanding anything to the contrary in this Agreement, the obligations of Foundry, its affiliates, and any of its or their respective successors and assigns under this Agreement are subject to and conditioned upon the occurrence of the Settlement Effective Date.

16.    Severability.  If any term, condition or other provision, or any portion of any provision hereof, or any surviving agreement made a part hereof becomes or is declared by a court of competent jurisdiction or arbitrator to be illegal, unenforceable, or void, this Agreement shall continue in full force and effect without said term, condition, provision or portion of provision, so long as the economic and legal substance of the transactions contemplated hereby is not affected in a manner adverse to any party hereto.  Upon such determination that any term, condition or other provision is invalid, illegal or incapable of being enforced, the parties hereto shall negotiate in good faith to modify this Agreement so as to eliminate such invalidity, illegality or incapability of enforcement and to effect the original intent of the parties hereto as closely as possible in an acceptable manner to the end that the transactions contemplated hereby are fulfilled to the fullest extent possible.

17.    No Oral Modification.  This Agreement may be amended only in a writing signed by all Parties to this Agreement.

18.    No Waiver.  The waiver by any party hereto of any provision of this Agreement or any breach of any provision of this Agreement shall not operate or be construed as a waiver of any other provision of this Agreement or of any other or subsequent breach of any provision of this Agreement.  No failure on the part of any party hereto to exercise, and no delay in exercising, any right, power or remedy hereunder or otherwise shall operate as a waiver thereof nor shall any single or partial exercise of such right, power or remedy by such party preclude any other or further exercise thereof or the exercise of any other right, power or remedy.

19.    Survival.  Any Order confirming the Plan shall reflect the terms of this Agreement and the Approval Order, and be in form and substance reasonably acceptable to Foundry and the Debtors (each in its sole discretion) as it relates to this Agreement and the transactions contemplated hereby or as it materially affects Foundry or any of its rights or claims, and such Order confirming the Plan shall be and shall remain enforceable and in full force and effect in the Chapter 11 Cases and on and after the Settlement Effective Date.   This Agreement, the Confirmation Order, the Approval Order, the Hosting Agreements, and the obligations of the parties hereunder and thereunder, shall not be released, waived, discharged or otherwise affected in any way by the Plan, any Order confirming such plan or the consummation of any such plan.

20.    Counterparts.  This Agreement and any other agreement or document contemplated hereby, and any amendments hereto or thereto, may be executed and delivered in any number of

counterparts, each such counterpart being deemed to be an original instrument, and all such counterparties shall together constitute the same agreement, and to the extent signed and delivered by means of electronic signature (including signature via DocuSign or similar services) a photographic, photostatic, facsimile, portable document format (.pdf) or similar reproduction of such signed writing using a facsimile machine or electronic mail shall be treated in all manner and respects as an original agreement or instrument and shall be considered to have the same binding legal effect as if it were the original signed version thereof delivered in person.  No party hereto or to any other agreement or document contemplated herein shall raise the use of electronic signature, facsimile machine or electronic mail to deliver a signature or the fact that any signature or agreement or instrument was transmitted or communicated through the use of a facsimile machine or electronic mail as a defense to the formation or enforceability of a contract and each such party forever waives any such defense.

21.     <u>Admissibility of Agreement.</u>   The Agreement and the negotiations, actions, communications, and discussions relating to this Agreement shall not be admissible in any lawsuit, arbitration action, or other proceeding brought by any Party against the other Party, except as shall be necessary to enforce the terms of the Agreement.

22.     <u>Fees and Costs</u>.  Except as otherwise provided in this Agreement, each Party shall bear its own attorneys' fees and costs relating to or incurred in connection with the matters settled by way of this Agreement.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, each Party has caused this Agreement to be duly executed on its behalf as of the day and year first above written.

**Core Scientific, Inc. and its Affiliated Debtors**

By: 

Name: Todd Duchene
Title:   Chief Legal and Administrative Officer

[*Signature Page to Settlement Agreement*]

**Foundry Digital LLC**

By: _Michael Colyer_
_____
Name: Michael Colyer
Title: Chief Executive Officer

United States Bankruptcy Court
Southern District of Texas

In re:                                                                    Case No. 22-90341-cml

Core Scientific, Inc.                                                     Chapter 11

Official Committee of Unsecured Creditor
    Debtors

# CERTIFICATE OF NOTICE

District/off: 0541-4                 User: ADIuser                         Page 1 of 4

Date Rcvd: Jan 16, 2024            Form ID: pdf002                    Total Noticed: 60

The following symbols are used throughout this certificate:

| Symbol | Definition |
|---|---|
| + | Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP. |
| ^ | Addresses marked '^' were sent via mandatory electronic bankruptcy noticing pursuant to Fed. R. Bank. P. 9036. |

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Jan 18, 2024:**

| Recip ID | | Recipient Name and Address |
|---|---|---|
| db | + | American Property Acquisition, LLC, 210 Barton Springs Road, Suite 300, Austin, TX 78704-1251 |
| db | + | American Property Acquisitions I, LLC, 210 Barton Springs Road, Suite 300, Austin, TX 78704-1251 |
| db | + | American Property Acquisitions VII, LLC, 210 Barton Springs Road, Suite 300, Austiin, TX 78704-1251 |
| db | + | Core Scientific Acquired Mining LLC, 210 Barton Springs Road, Suite 300, Austin, TX 78704-1251 |
| db | + | Core Scientific Mining LLC, 210 Barton Springs Road, Suite 300, Austin, TX 78704-1251 |
| db | + | Core Scientific Operating Company, 210 Barton Springs Road, Suite 300, Austin, TX 78704-1251 |
| db | + | Core Scientific Specialty Mining (Oklahoma) LLC, 210 Barton Springs Road, Suite 300, Austin, TX 78704-1251 |
| db | + | Core Scientific, Inc., 210 Barton Springs Road, Suite 300, Austin, TX 78704-1251 |
| db | + | RADAR LLC, 210 Barton Springs Road, Suite 300, Austiin, TX 78704-1251 |
| db | + | Radar Relay, Inc., 210 Barton Springs Road, Suite 300, Austin, TX 78704-1251 |
| db | + | Starboard Capital LLC, 210 Barton Springs Road, Suite 300, Austiin, TX 78704-1251 |
| aty | + | Allegra Bianchini, Hogan Lovells US LLP, 390 Madison Ave., New York, NY 10017-2507 |
| aty | + | Dennis Tracey, Hogan Lovells US LLP, 390 Madison Ave., New York, NY 10017-2507 |
| aty | + | Richard L. Wynne, Hogan Lovells US LLP, 1999 Avenue of the Stars, Suite 1400, Los Angeles, CA 90067-6047 |
| aty | + | Robert D. Drain, Skadden, Arps, Slate, Meagher & Flom LLP, One Manhattan West, New York, NY 10001-0193 |
| aty | + | Sara Posner, Hogan Lovells US LLP, 390 Madison Ave., New York, NY 10017-2507 |
| cr | + | Alleghony Casualty Company, c/o Chiesa Shahinian & Giantomasi PC, 105 Eisenhower Parkway, Attn: Scott Zuber, Esq., Roseland, NJ 07068 UNITED STATES 07068-1640 |
| cr | + | Argo Partners, 12 West 37th Street, Ste. 900, New York, NY 10018-7381 |
| trnsfee | + | B. Riley Securities, Inc., 11100 Santa Monica Blvd., Suite 800, Los Angeles, CA 90025-3979 |
| cr | + | Baker Drywall Fort Worth, Ltd., 3705 East 1st Street, Forth Worth, TX 76111-5804 |
| intp | + | Board of Directors of Core Scientific, Inc., c/o Peter C. Lewis, Scheef & Stone, L.L.P., 500 North Akard Street, Suite 2700, Dallas, TX 75201-3306 |
| cr | + | CRG Financial LLC, 84 Herbert Avenue, Building B, Suite 202, Closter, NJ 07624 UNITED STATES 07624-1313 |
| intp | + | Condair Inc., c/o John S. Collins, Vorys, Sater, Seymour and Pease LLP, 909 Fannin, Suite 2700, Houston, TX 77010-1009 |
| cr | + | Dalton Utilities, Howley Law PLLC, 711 Louisiana Street, Ste. 1850, Houston, TX 77002-2790 |
| cr | + | Dennis Powers, 362 S. Clarkson St., Denver, CO 80209-2126 |
| cr | + | Harco National Insurance Company, c/o Chiesa Shahinian & Giantomasi PC, 105 Eisenhower Parkway, Attn: Scott Zuber, Esq., Roseland, NJ 07068 UNITED STATES 07068-1640 |
| cr | + | Harlin Dean, Attn: Hudson M. Jobe, 2001 Bryan Street, Suite 1800, Dallas, TX 75201 UNITED STATES 75201-3070 |
| cr | + | Indigo Direct Lending, LLC, c/o Ross, Smith & Binford, PC, Attn: Frances A. Smith, 700 N. Pearl Street, Suite 1610 Dallas, TX 75201-7459 |
| cr | + | International Fidelity Insurance Company, c/o Chiesa Shahinian & Giantomasi PC, 105 Eisenhower Parkway, Attn: Scott Zuber, Esq., Roseland, NJ 07068 UNITED STATES 07068-1640 |
| cr | + | J.W. Didado Electric, LLC, c/o Leonard I. Pataki, Quanta Services, 4500 S. Garnett Road, Suite 100, Tulsa, OK 74146-5221 |
| cr | + | LV.NET, LLC, 1221 S. Casino Center Blvd., Las Vegas, NV 89104, UNITED STATES 89104-1015 |
| cr | + | Maddox Industrial Transformer, LLC, c/o Mary M. Caskey, Esq., Haynsworth Sinkler Boyd, PA, PO Box 11889, Columbia, SC 29211-1889 |
| intp | + | McCarthy Building Companies, Inc., c/o Watt, Tieder, Hoffar & Fitzgerald, L, 1765 Greensboro Station Place, Suite 1000, McLean, VA 22102-3468 |
| intp | + | Michael G. Patton, 15 Jessica Rae Lane, Fredericksburg, VA 22405-5774 |
| cr | + | North Mill Equipment Finance LLC, c/o Padfield & Stout, LLP, Christopher V. Arisco, 420 Throckmorton Street, Suite 1210, Fort Worth, TX 76102-3792 |
| cr | + | North Texas Contracting, Inc., PO Box 468, Keller, TX 76244-0468 |
| cr | + | Pescadero Capital, LLC, Building LAW/JB, 700 Universe Blvd, Juno Beach, FL 33408, UNITED STATES 33408-2657 |
| cr | + | Quinn Emanuel Urquhart & Sullivan, LLP, c/o Asher Griffin, 300 W 6th Street, Suite 2010, Austin, TX 78701 UNITED STATES 78701-3901 |

| District/off: 0541-4 | User: ADIuser | Page 2 of 4 |
| Date Rcvd: Jan 16, 2024 | Form ID: pdf002 | Total Noticed: 60 |

| cr | + | Tanmar Rentals, LLC, c/o Wells & Cuellar, P.C., 440 Louisiana Suite 718, Houston, TX 77002, UNITED STATES 77002-1058 |
| cr | + | Ted Farmer VFS LLC, c/o Ted C. Farmer, Esq., Suite 395 East, 41000 Woodward Avenue, Bloomfield Hills, MI 48304-5130 |
| cr | + | Tenaska Power Services Co., c/o Ross & Smith, P.C., Attn: Jason Binford, 2003 N. Lamar Blvd., Suite 100 Austin, TX 78705-4932 |
| cr | + | Truckload Connections, 3270 Hampton Ave., St. Louis, MO 63139-2367 |
| intp | + | U.S. Bank National Association, as Prepetition Not, c/o Shipman & Goodwin LLP, One Constitution Plaza, Hartford, CT 06103-1803 |
| cr | + | c/o James Bailey Esq Gaylor Electric, Inc., d/b/a, Bradley Arant Boult Cummings LLP, One Federal Place, 1819 5th Ave. N, Birmingham, AL 35203-2119 |

TOTAL: 44

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI). Electronic transmission is in Eastern
Standard Time.

| Recip ID | | Notice Type: Email Address | Date/Time | Recipient Name and Address |
|---|---|---|---|---|
| cr | + | Email/Text: ahochheiser@mauricewutscher.com | Jan 16 2024 21:41:00 | AmTrust North America, Inc. on behalf of Associate, c/o Maurice Wutscher LLP, 23611 Chagrin Blvd. Suite 207, Beachwood, OH 44122-5540 |
| cr | + | Email/Text: beanland@mssattorneys.com | Jan 16 2024 21:41:00 | BEAM Concrete Construction, Inc., c/o Misti L. Beanland, 8131 LBJ Freeway, Suite 700, Dallas, TX 75251-1352 |
| cr | + | Email/Text: notices@crgfinancial.com | Jan 16 2024 21:41:00 | CRG Financial LLC, 84 Herbert Avenue, Building B, Suite 202, Closter, NJ 07624, UNITED STATES 07624-1313 |
| cr | + | Email/Text: dallas.bankruptcy@LGBS.com | Jan 16 2024 21:41:00 | Dallas County, Linebarger Goggan Blair & Sampson, LLP, c/o John K. Turner, 2777 N. Stemmons Freeway, Suite 1000, Dallas, TX 75207-2328 |
| cr | | Email/Text: fred.glass@fairharborcapital.com | Jan 16 2024 21:41:00 | Fair Harbor Capital, LLC, PO Box 237037, New York, NY 10023, US |
| cr | ^ | MEBN | Jan 16 2024 21:41:53 | GEM Mining 1, LLC, c/o Evan N. Parrott, 11 North Water Street, Suite 24290, Mobile, AL 36602-5024 |
| cr | ^ | MEBN | Jan 16 2024 21:41:52 | GEM Mining 2, LLC, c/o Evan N. Parrott, 11 North Water Street, Suite 24290, Mobile, AL 36602-5024 |
| cr | ^ | MEBN | Jan 16 2024 21:41:51 | GEM Mining 2B, LLC, c/o Evan N. Parrott, 11 North Water Street, Suite 24290, Mobile, AL 36602-5024 |
| cr | ^ | MEBN | Jan 16 2024 21:41:50 | GEM Mining 3, LLC, c/o Evan N. Parrott, 11 North Water Street, Suite 24290, Mobile, AL 36602-5024 |
| cr | ^ | MEBN | Jan 16 2024 21:41:48 | GEM Mining 4, LLC, c/o Evan N. Parrott, 11 North Water Street, Suite 24290, Mobile, AL 36602-5024 |
| cr | | Email/Text: sanantonio.bankruptcy@publicans.com | Jan 16 2024 21:40:00 | Ward County, 112 E Pecan Street, Suite 2200, San Antonio, TX 78205 |
| cr | + | Email/Text: rmcdowell@slgcollect.com | Jan 16 2024 21:41:00 | Meridian Equipment Finance, LLC, c/o Saldutti Law Group, 1040 Kings Highway N., Suite 100, Cherry Hill, NJ 08034-1925 |
| cr | | Email/Text: shirley.palumbo@nexteraenergy.com | Jan 16 2024 21:41:00 | NextEra Energy Resources, LAW/JB, 700 Universe Blvd., Juno Beach, FL 33408, UNITED STATES |
| cr | + | Email/Text: schristianson@buchalter.com | Jan 16 2024 21:40:00 | Oracle America, Inc., Buchalter PC, c/o Shawn M. Christianson, 425 Market St., Suite 2900, San Francisco, Ca 94105-2491 |
| cr | + | Email/Text: neil.orleans@judithwross.com | Jan 16 2024 21:41:29 | Tenaska Power Services Co., c/o Ross & Smith, P.C., Attn: Judith W. Ross, 700 N. Pearl Street, Suite 1610, Dallas, TX 75201-7459 |
| cr | ^ | MEBN | | |

| | | |
|---|---|---|
| District/off: 0541-4 | User: ADIuser | Page 3 of 4 |
| Date Rcvd: Jan 16, 2024 | Form ID: pdf002 | Total Noticed: 60 |

| | | | |
|---|---|---|---|
| | | Jan 16 2024 21:40:59 | Texas Comptroller of Public Accounts, Revenue Acco, Christopher S. Murphy, P.O. Box 12548, Austin, TX 78711-2548 |
| cr | + Email/Text: BKECF@traviscountytx.gov | | |
| | | Jan 16 2024 21:41:00 | Travis County, c/o Jason A. Starks, P.O. Box 1748, Austin, TX 78767-1748 |

TOTAL: 17

# BYPASSED RECIPIENTS

**The following addresses were not sent this bankruptcy notice due to an undeliverable address, *duplicate of an address listed above, *P duplicate of a preferred address, or ## out of date forwarding orders with USPS.**

| Recip ID | Bypass Reason | Name and Address |
|---|---|---|
| cr | | 36th Street Capital Partners, LLC |
| cr | | ABLe Communications, Inc. |
| cr | | Ad Hoc Group of Secured Convertible Noteholders |
| cr | | Anchorage Lending CA, LLC |
| intp | | B. Riley Commercial Capital, LLC |
| cr | | Barings BDC, Inc. |
| cr | | Barings Capital Investment Corporation |
| cr | | Barings Private Credit Corp. |
| cr | | BlockFi Lending LLC |
| cr | | BlockFi, Inc. and its affiliated entities |
| cr | | Bremer Bank |
| cr | | Brown Corporation Brown Corporation, 311 Pointe North Place #4, Dalton, UNITED STATES |
| cr | | Bryce Johnson |
| cr | | CEC Energy Services LLC |
| cr | | Celsius Mining, LLC |
| intp | | Centro de Investigaciones Energeticas, Medioambien |
| cr | | Charles Basil |
| cr | | City of Denton |
| cr | | Coonrod Electric Co. LLC |
| intp | | Foundry Digital LLC |
| cr | | General Casualty Company of Wisconsin |
| cr | | Gryphon Digital Mining, Inc. |
| intp | | Harper Construction Company, Inc. |
| cr | | Huband-Mantor Construction, Inc. |
| cr | | Humphrey & Associates, Inc. |
| cr | | MK Marlow Company, LLC |
| cr | | MP2 Energy Texas LLC d/b/a Shell Energy Solutions |
| cr | | Marnoy Interests, Ltd. d/b/a Office Pavilion |
| cr | | MassMutual Asset Finance, LLC |
| cr | | Mitch Edwards |
| cr | | Morgan Hoffman |
| cr | | NYDIG ABL LLC |
| intp | | Official Committee of Equity Security Holders |
| crcm | | Official Committee of Unsecured Creditors |
| cr | | Prime Alliance Bank, Inc. |
| cr | | Priority Power Management, LLC |
| intp | | SRPF A QR Riversouth LLC |
| intp | | Skadden, Arps, Slate, Meagher & Flom LLP |
| cr | | Sphere 3D Corp. |
| cr | | Summit Electric Supply Company, Inc. |
| cr | | TOYOTA INDUSTRIES COMMERCIAL FINANCE INC. |
| cr | | Texas Capitalization Resource Group, Inc., 5201 Camp Bowie Blvd. Suite 200, Fort Worth |
| intp | | The Ad Hoc Equity Group |
| intp | | Trilogy LLC |
| intp | | Trinity Capital Inc. |
| cr | | Wingspire Equipment Finance, LLC |

TOTAL: 46 Undeliverable, 0 Duplicate, 0 Out of date forwarding address

District/off: 0541-4                          User: ADIuser                                Page 4 of 4
Date Rcvd: Jan 16, 2024                    Form ID: pdf002                           Total Noticed: 60

# NOTICE CERTIFICATION

**I, Gustava Winters, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Jan 18, 2024                    Signature:        /s/Gustava Winters