## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| CORE SCIENTIFIC, INC., *et al*, | ) | Case No.22-90341 (CML) |
| | ) | |
| Debtors.[1] | ) | (Jointly Administered) |
| | ) | |

**GEM MINING 1, LLC'S MOTION FOR ENTRY OF AN ORDER (I) ALLOWING AND DIRECTING PAYMENT OF ITS ADMINISTRATIVE EXPENSE CLAIM PURSUANT TO 11 U.S.C. § 503(b)(1)(A) AND (II) GRANTING RELATED RELIEF**

> **If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within twenty-one days from the date this motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within twenty-one days from the date this motion was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

GEM Mining 1, LLC ("GEM Mining 1") hereby moves (this "Motion") this Court pursuant to §§ 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code,[2] for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), (a) allowing GEM Mining 1's Administrative Expense Claim (as defined herein); (b) directing Core Scientific Operating Company f/k/a Core Scientific, Inc. and its debtor affiliates (collectively, "Core") to promptly

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (N/A); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions, VII, LLC (3198). The Debtors' corporate headquarters and service address is 210 Barton Springs Road, Suite 300, Austin, Texas 78704.

[2] Hereinafter, all code sections refer to title 11 of the United States Code, §§ 101, *et seq.* (the "Bankruptcy Code) unless otherwise noted.

pay the Administrative Expense Claim; and (c) granting related relief. In support of the Motion, GEM Mining 1 respectfully states as follows:

## Jurisdiction and Venue

1.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory and legal predicates for the relief requested herein are §§ 503(b)(1)(A) and 507(a)(2).

## Background

4.      On February 5, 2021, Core entered into a Master Services Agreement with GEM Mining 1 (the "GEM Mining 1 MSA") wherein Core agreed to provide hosting services for computer hardware and other tangible equipment at data centers owned or operated by Core or its affiliates as further provided in individual ordering documents. Specifically, Core agreed to provide various services to the GEM Mining 1, including but not limited to, colocation, hosting, rack space, security, monitoring, maintenance, utilities, equipment maintenance and repair, facility management, account management, network and data access, technical support, and heat and thermal management services. A true and correct copy of the GEM Mining 1 MSA is attached hereto as **Exhibit B**.

5.      On June 8, 2021, GEM Mining 1 and Core executed that certain Amended and Restated Order # 8 (the "GEM Mining 1 Order"), wherein Core agreed to host approximately 7,295 Miners for an initial three-year term. A true and correct copy of the GEM Mining 1 Order is attached hereto as **Exhibit C**. In exchange for Core's hosting services and certain associated equipment, GEM Mining 1 paid Core monthly fees in advance for applicable fees for use of the

2

facilities and the provision of services as set forth in the GEM Mining 1 Order. To the extent a prepayment exceeded the cost of services incurred the following month, Core would credit the amount overpayment amount on the following month's invoice.

6.      On December 21, 2022 (the "Petition Date"), Core initiated the above styled bankruptcy cases (the "Bankruptcy Cases") by filing voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

7.      On August 14, 2023, the Court entered the *Stipulation and Agreed Order on GEM Mining's Emergency Motion to Compel Assumption or Rejection of Executory Contracts or, in the Alternative, for Adequate Protection* (Doc. 1146) (the "Stipulation") agreed to by Core and GEM Mining 1, and GEM Mining 4, LLC ("GEM Mining 4"), as similarly situated affiliate of GEM Mining 1.

8.      In the Stipulation, Core, GEM Mining 1, and GEM Mining 4 stipulated that the MSAs and orders for GEM Mining 1 and GEM Mining 4, including the GEM Mining 1 MSA and the GEM Mining 1 Order, would be deemed rejected as of September 30, 2023.

9.      On October 30, 2023, GEM Mining 1 and GEM Mining 4 filed proofs of claim for damages resulting from the rejection of the applicable MSAs and orders. (*See* POCs 646-649).

10.      In accordance with Core's monthly invoices, GEM Mining 1 and GEM Mining 4 paid for services in advance. By October 2023, following the rejection of the GEM Mining 1 and GEM Mining 4 MSAs and orders, GEM Mining 1 was owed a $228,950.76 refund for overpayments, and GEM Mining 4 was owed a $193,162.94 refund for overpayments. Specifically, GEM Mining 1 had paid for services in advance of August and September 2023, which resulted in a total overpayment of $228,950.76. True and correct copies of the GEM

Mining 1 Account Statement (showing a total credit of $228,950.76 due to GEM Mining 1), the Credit Memo dated September 12, 2023 (showing an original credit due to GEM Mining 1 of $131,781.77, which was adjusted to $140,245.66, as reflected in the attached GEM Mining 1 Account Statement), and the Credit Memo dated October 10, 2023 (showing a total credit of $88,705.10 due to GEM Mining 1) are collectively attached hereto as **Exhibit D**.

11.     On October 31, 2023, Core refunded GEM Mining 4 $193,162.94 for the outstanding balance of overpayments resulting from prepayments prior to the rejection of the GEM 4 MSA, however, Core did not refund GEM Mining 1 the $228,950.76 in overpaid prepayments.

12.     Following multiple discussions concerning the status of the GEM Mining 1 refund, Core's counsel ultimately informed GEM Mining 1's counsel on January 19, 2024 that Core would not make the $228,950.76 refund to GEM Mining 1 because of a purported breach of the GEM Mining 1 MSA by GEM Mining 1. Core's counsel also indicated that Core will object to GEM Mining 1's claim for rejection damages on this basis. It is GEM Mining 1's understanding that Core alleges GEM Mining 1 breached the GEM Mining 1 MSA by executing a Sale sand Purchase Agreement with Touzi GEM Inv, LLC in September 2023 unbeknownst to Core. GEM Mining 1 denies that it breached the GEM Mining 1 MSA and that the agreement was disclosed to and approved by Core.[3]

13.     On January 16, 2024, the Court entered the *Findings of Fact, Conclusions of Law, and Order (I) Approving Disclosure Statement on a Final Basis and (II) Confirming Fourth Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors* (Doc. 1749) confirming the *Fourth Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated*

---

[3] GEM Mining 1 will respond more fully to any argument that it breached the GEM Mining 1 MSA in the event Core objects to this Motion or GEM Mining 1's claim for rejection damages.

*Debtors (With Technical Modifications)* (Doc. 1722) (the "Plan"). According to the Plan, "Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtors, as Debtors in Possession, shall be paid by the Debtors or the Reorganized Debtors, as applicable, in the ordinary course of business." (*See* Plan, §2.1).

## Relief Requested

14.     By this Motion, GEM Mining 1 seeks entry of an order, substantively similar to the Proposed Order attached hereto as **Exhibit A**, (a) allowing GEM Mining 1's administrative claim for the refund of GEM Mining 1's $228,950.76 overpayment (the "Administrative Expense Claim"); (b) directing Core to promptly pay such administrative claim; and (c) granting related relief.

## Basis for Relief

15.     Section 503(b)(1)(A) provides that there shall be allowed administrative expenses of the Debtor's estate for "the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). In order for an expense to be "actual" and "necessary," the debt must have benefitted the debtors' estates and their creditors. *NL Indus., Inc. v. GHR Energy Corp. (In re GHR Energy Corp.)*, 940 F.2d 957, 966 (5th Cir. 1991).

16.     "A prima facie case under § 503(b)(1) may be established by evidence that (1) the claim arises from a transaction with the debtor-in-possession; and (2) the goods or services supplied enhanced the ability of the debtor-in-possession's business to function as a going concern." *In re TransAmerican Nat. Gas Corp.*, 978 F.2d 1409, 1420 (5th Cir. 1992). "Although the estate receives a benefit that often can be measured by the actual cost of necessary goods or services supplied, the estate also receives other less readily calculable benefits, such as the ability

5

to continue to conduct business as usual." *Id.* (citing *In re Coastal Carriers Corp.*, 128 B.R. 400, 402 (Bankr. D. Md. 1991)).

17.     Availability of cash, goods, and services is essential to a debtor's ongoing business, and, as a result, constitutes a benefit to the estate. *See In re Whistler Energy II, L.L.C.*, 931 F.3d 432 (5th Cir. 2019). ("[W]hen a debtor-in-possession induces availability [of assets] and the bankruptcy estate derives a benefit from it, the ordinary cost of ensuring such availability qualifies as an administrative expense, even if the goods or services were ultimately not used.").

18.     Moreover, administrative expense priority is available to contract parties where a debtor "enjoys the benefits of the contract pending assumption or rejection." *In re ID Liquidation One, LLC*, 503 B.R. 392, 399 (Bankr. D. Del. 2013); *see also, N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 531 (1984) ("If the debtor-in-possession elects to continue to receive benefits from the other party to an executory contract pending a decision to reject or assume the contract, the debtor-in-possession is obligated to pay for the reasonable value of those services [which] may be what is specified in the contract.").

19.     Here, a prima facie case under § 503(b)(1) exists because (a) the Administrative Expense Claim arises from a post-petition transaction between GEM Mining 1 and Core (the transfer of $228,950.76 from GEM Mining 1 to Core in August and September 2023), and (b) the $228,950.76 prepayment enhanced Core's ability to function as a going concern. The availability of the cash to support Core's ongoing business benefitted Core's estate. Now that Core has rejected the GEM Mining 1 MSA and will no longer provide services to GEM Mining 1, the unused portion of the prepayment should be returned to GEM Mining 1.[4]

---

[4] Alternatively, GEM Mining 1 is entitled to an administrative expense claim under the theory of unjust enrichment. *See e.g.*, *UNUM Life Ins. Co. of America v. Long*, 227 F.Supp.2d 609, 614–15 (N.D. Tex. 2002) (finding that plaintiff was entitled to recover overpayments made with the

20.     Finally, the confirmed Plan provides that allowed administrative expense claims representing liabilities incurred in the ordinary course of business by Core shall be paid by Core, or the reorganized debtors, as applicable, in the ordinary course of business. (*See* Plan, §2.1). In the ordinary course of business, Core would true-up the actual hosting costs against the estimate used to calculate the prepayment on the prior invoice. Thus, Core should refund the overpayment to GEM Mining 1 immediately upon the Court's allowance of GEM Mining 1's Administrative Expense Claim.

## Reservation of Rights

21.     GEM Mining 1 does not waive, and expressly reserve, all rights, arguments, counterarguments, and defenses, including, without limitation, the right to contest in any court of competent jurisdiction any objection to the basis and/or validity of the ultimate amounts of any claims asserted by GEM Mining 1.

## Conclusion

WHEREFORE, GEM Mining 1 respectfully requests the Court to enter an order, substantially similar to the Proposed Order attached hereto as **Exhibit A**, granting the relief requested herein and such other, further relief as the Court deems appropriate.

Respectfully submitted this the 9th day of February, 2024.

Respectfully submitted,

BY:  */s/ Evan N. Parrott*
        Evan N. Parrott

---

expectation of reimbursement on an unjust enrichment claim). Under Delaware law, a plaintiff must prove (1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law. *See PR Acquisitions, LLC v. Midland Funding LLC*, No. CV 2017-0465-TMR, 2018 WL 2041521, at *14 (Del. Ch. Apr. 30, 2018). Here, Core was enriched by the overpayment of $228,950.76 by GEM Mining 1, and Core is not justified in refusing to refund the overpayment.

*Attorney for GEM Mining 1, LLC*

**MAYNARD NEXSEN, P.C.**
Stephen C. Jackson, Texas Bar No. 24090637
1901 Sixth Avenue North
Suite 1700
Birmingham, AL 35203
(205) 254-1000
sjackson@maynardnexsen.com

*and*

**MAYNARD NEXSEN, P.C.**
Evan N. Parrott, Ala. Bar No. ASB-1950-O65A
(Admitted *Pro Hac Vice*)
11 North Water Street
RSA Battle House Tower
Suite 24290
Mobile, AL 36602
(251) 432-0001
eparrott@maynardnexsen.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have served a copy of the foregoing via the CM/ECF system on all parties registered to receive electronic notice in this case on this the 9th day of February, 2024.

*/s/ Evan N. Parrott*
*Of Counsel*