**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| | § | |
| In re: | § | **Chapter 11** |
| | § | |
| **CORE SCIENTIFIC, INC.,** *et al.,* | § | **Case No. 22-90341 (CML)** |
| | § | |
| | § | **(Jointly Administered)** |
| Debtors.¹ | § | |

## SUPPLEMENTAL CERTIFICATE OF SERVICE

I, Monica Arellano, depose and say that I am employed by Stretto, the claims and noticing agent for the Debtors in the above-captioned cases.

On February 15, 2024, at my direction and under my supervision, employees of Stretto caused the following document to be served via first-class mail on the service list attached hereto as **Exhibit A**, pursuant to USPS forwarding instructions:

- **Emergency Motion of Debtors Seeking (I) Modification of Certain Dates and Deadlines Set Forth in the Disclosure Statement Order and (II) Conditional Approval of the Debtors' Disclosure Statement Supplement** (Docket No. 1626)

Furthermore, on February 15, 2024, Stretto in accordance with USPS forwarding instructions served the following document via first-class mail on Hunter B Childers at a redacted address:

- **Notice of Entry of Order (I) Confirming Fourth Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors and (II) Approving Disclosure Statement on a Final Basis** (Docket No. 1756)

Furthermore, on February 15, 2024, Stretto in accordance with USPS forwarding instructions served the following document via first-class mail on Joel Brazil at a redacted address:

- **Notice of Effective Date of Fourth Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors** (Docket No. 1782)

[THIS SPACE INTENTIONALLY LEFT BLANK]

---

¹ The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Special Mining (Oklahoma) LLC (4327); American Property Acquisitions, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisition I, LLC (9717); and American Property Acquisitions, VII, LLC (3198). The Debtors' corporate headquarters is 210 Barton Springs Road, Suite 300, Austin, Texas 78704. The Debtors' service address is 2407 S. Congress Ave, Suite E-101, Austin, TX 78704.

Furthermore, on February 15, 2024, at my direction and under my supervision, employees of Stretto caused the following documents to be served via first-class mail on Jonathan Tschetter at a redacted address, pursuant to USPS forwarding instructions:

- **Notice of (I) Conditional Approval of Disclosure Statement, (II) Approval of (A) Solicitation and Voting Procedures and (B) Notice Procedures for the Assumption or Rejection of Executory Contracts and Unexpired Leases; (III) Combined Hearing to Consider Final Approval of Disclosure Statement and Confirmation pf Plan; and (IV) Establishing Notice and Objection Procedures for Final Approval of Disclosure Statement and Confirmation of Plan** (attached hereto as **Exhibit B**)

- **Release Opt Out Form** (attached hereto as **Exhibit C**)

Furthermore, on or before February 17, 2024, Stretto in accordance with USPS forwarding instructions served the following documents via first-class mail on the service list attached hereto as **Exhibit D**:

- **Notice of Entry of Order (I) Confirming Fourth Amended Joint Chapter 11 Plan of Core Scientific, Inc. and its Affiliated Debtors and (II) Approving Disclosure Statement on a Final Basis** (Docket No. 1756)

- **Instructional Cover Letter to Nominees** (attached hereto as **Exhibit E**)

Furthermore, on February 20, 2024, Stretto in accordance with USPS forwarding instructions served the following documents via first-class mail on Drivewealth, LLC at 28 Liberty St, Fl 50, New York, NY 10005-1498:

- **Notice of Entry of Order (I) Confirming Fourth Amended Joint Chapter 11 Plan of Core Scientific, Inc. and its Affiliated Debtors and (II) Approving Disclosure Statement on a Final Basis** (Docket No. 1756)

- **Instructional Cover Letter to Nominees** (attached hereto as **Exhibit F**)

Dated: February 26, 2024

*/s/ Monica Arellano*
Monica Arellano
STRETTO
410 Exchange, Suite 100
Irvine, CA 92602
Telephone: 800-634-7734
Email: TeamCoreScientific@stretto.com

# Exhibit A

 STRETTO

**Exhibit A**

Served Via First-Class Mail

| Name | Attention | Address 1 | Address 2 | City | State | Zip |
|------|-----------|-----------|-----------|------|-------|-----|
| Coindesk Inc | | 169 Madison Ave | | New York | NY | 10016-5101 |
| Genesis Global Capital, LLC #1 | Hanson Birringer | 175 Greenwich St | Fl 38 | New York | NY | 10007-2492 |

# **Exhibit B**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| | § | |
| In re: | § | **Chapter 11** |
| | § | |
| **CORE SCIENTIFIC, INC.,** *et al.,* | § | **Case No. 22-90341 (CML)** |
| | § | |
| Debtors[1] | § | **(Jointly Administered)** |
| | § | |

**NOTICE OF (I) CONDITIONAL APPROVAL OF DISCLOSURE
STATEMENT, (II) APPROVAL OF (A) SOLICITATION AND VOTING
PROCEDURES AND (B) NOTICE PROCEDURES FOR THE ASSUMPTION OR
REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES;
(III) COMBINED HEARING TO CONSIDER FINAL APPROVAL OF
DISCLOSURE STATEMENT AND CONFIRMATION OF PLAN; AND (IV)
ESTABLISHING NOTICE AND OBJECTION PROCEDURES FOR FINAL
APPROVAL OF DISCLOSURE STATEMENT AND CONFIRMATION OF PLAN**

**TO ALL PARTIES IN INTEREST IN THE CHAPTER 11 CASES OF:**

| Debtor | Case Number |
|---|---|
| Core Scientific Mining LLC | 22-90340 |
| Core Scientific, Inc. | 22-90341 |
| Core Scientific Acquired Mining LLC | 22-90342 |
| Core Scientific Operating Company | 22-90343 |
| Radar Relay, Inc. | 22-90344 |
| Core Scientific Specialty Mining (Oklahoma) LLC | 22-90345 |
| American Property Acquisition, LLC | 22-90346 |
| Starboard Capital LLC | 22-90347 |
| RADAR LLC | 22-90348 |
| American Property Acquisitions I, LLC | 22-90349 |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Core Scientific Mining LLC (6971); Core Scientific, Inc. (3837); Core Scientific Acquired Mining LLC (6074); Core Scientific Operating Company (5526); Radar Relay, Inc. (0496); Core Scientific Specialty Mining (Oklahoma) LLC (4327); American Property Acquisition, LLC (0825); Starboard Capital LLC (6677); RADAR LLC (5106); American Property Acquisitions I, LLC (9717); and American Property Acquisitions, VII, LLC (3198). The Debtors' corporate headquarters is 210 Barton Springs Road, Suite 300, Austin, Texas 78704. The Debtors' service address is 2407 S. Congress Ave, Suite E-101, Austin, Texas 78704.

| Debtor | Case Number |
|--------|-------------|
| American Property Acquisitions VII, LLC | 22-90350 |

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.      ***Conditional Approval of Disclosure Statement***.  On November 14, 2023 the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") held a hearing (the "**Conditional Disclosure Statement Hearing**") at which it conditionally approved the *Disclosure Statement for Third Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors,* filed on November 16, 2023 (Docket No. 1439) of Core Scientific, Inc. and its affiliated debtors in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), and thereafter entered an order (the "**Initial Disclosure Statement Order**") with respect thereto. The Disclosure Statement Order, among other things, authorizes the Debtors to solicit votes to accept the *Third Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors*, filed on November 16, 2023 (Docket No. 1438) (the "**Third Amended Plan**").

2.      ***Fourth Amended Plan and Disclosure Statement Supplement***.  On December 28, 2023, the Debtors filed the (i) *Fourth Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors* (Docket No. 1639) (including any exhibits and schedules thereto and as may be modified, amended, or supplemented, the "**Plan**")[2], which modified the Third Amended Plan to reflect a settlement with the Creditors' Committee, and (ii) *Supplement to Disclosure Statement for Fourth Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors,* (Docket No.1640) (the "**Disclosure Statement Supplement**", and together with the *Disclosure Statement for Third Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors*, Docket No. 1439, as may be modified, amended, or supplemented, the "**Disclosure Statement**").  On December 28, 2023, the Bankruptcy Court entered the *Order (I) Modifying Dates and Deadlines Set Forth in the Disclosure Statement Order and (II) Conditionally Approving the Debtors' Disclosure Statement Supplement* (Docket No. 1638) (the "**Supplemental Disclosure Statement Order**" and, together with the Initial Disclosure Statement Order, the "**Disclosure Statement Order**"), which, among other things, conditionally approved the Disclosure Statement Supplement and authorized the Debtors to commence the solicitation of votes to accept or reject the Plan.

3.      ***Combined Hearing***.  A hearing to consider confirmation of the Plan and final approval of the Disclosure Statement (the "**Combined Hearing**") has been scheduled for **January 16, 2024 at 10:00 a.m. (Prevailing Central Time)**, before the Honorable Christopher M. Lopez, United States Bankruptcy Judge, in the Bankruptcy Court.  The Combined Hearing may be adjourned or continued from time to time by the Bankruptcy Court or the Debtors, with the consent of the Requisite Consenting Creditors, without further notice other than by a Bankruptcy Court announcement providing for such adjournment or continuation on its agenda.  The Plan may be modified, if necessary, prior to, during, or as a result of the Combined Hearing.

---

[2] All capitalized terms used but not defined herein or in the enclosed voting instructions have the meanings ascribed to them in the Plan, attached as <u>Exhibit A</u> to the Disclosure Statement Supplement.

4.      ***Voting Record Date***.  Holders of Claims or Interests in Class 1 (April Convertible Notes Secured Claims), Class 2 (August Convertible Notes Secured Claims), Class 3 (Miner Equipment Lender Secured Claims), Class 5 (M&M Lien Secured Claims), Class 6 (Secured Mortgage Claims), Class 8A (General Unsecured Claims), Class 8B (Convenience Class Claims), Class 11 (Section 510(b) Claims), and Class 12 (Existing Common Interests), who are otherwise eligible to vote to accept or reject the Plan as of **November 9, 2023** (the "**Voting Record Date**").

5.      ***Voting Deadline***.  If you received a Solicitation Package, including a Ballot, and intend to vote on the Plan, you must: (i) follow the instructions carefully; (ii) complete all of the required information on the Ballot; and (iii) execute and return your completed Ballot according to and as set forth in detail in the voting instructions on your Ballot so that it is actually received by the Debtors' solicitation and voting agent, Stretto, Inc. ("**Stretto**" or the "**Voting Agent**") on or before **January 11, 2024 at 5:00 p.m. (Prevailing Central Time)** (the "**Voting Deadline**").  **ANY FAILURE TO FOLLOW THE VOTING INSTRUCTIONS INCLUDED WITH YOUR BALLOT MAY DISQUALIFY YOUR BALLOT AND YOUR VOTE.**

**Holders of Claims (but not Holders of Existing Common Interests in Class 12) that (i) have already submitted a Ballot and (ii) do not wish to change their vote, do not need to submit a new Ballot.  However, any Holder of a Claim that (x) has not submitted a Ballot or (y) has submitted a Ballot but now wishes to change its vote, must submit its Ballot so that it is received by the Voting Agent on or before the Voting Deadline.**

6.      ***Parties in Interest Not Entitled to Vote***.  Holders of Claims or Interests in Class 4 (Other Secured Claims), Class 7 (Priority Non-Tax Claims), Class 10 (Intercompany Claims), and Class 11 (Intercompany Interests) are not entitled to vote on the Plan and will not receive a Ballot.  If any creditor seeks to challenge the Allowed amount of its Claim for voting purposes, such creditor must file with the Court a motion for an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing such Claim for voting purposes in a different amount (a "**Rule 3018(a) Motion**").  Any Rule 3018(a) Motion must be filed with the Court not later than **5:00 p.m. (Prevailing Central Time) on December 8, 2023**.  Upon the filing of any such Rule 3018(a) Motion, such creditor's Ballot shall be counted in accordance with the guidelines provided in the Solicitation and Voting Procedures attached as **Exhibit 2** to the Disclosure Statement Order, unless temporarily Allowed in a different amount by an order of the Court entered prior to or concurrent with entry of an order confirming the Plan.

7.      ***Objections to Confirmation***.  The deadline to object or respond to confirmation of the Plan or final approval of the Disclosure Statement is **January 11, 2024 at 5:00 p.m. (Prevailing Central Time)** (the "**Objection Deadline**").

8.      ***Form and Manner of Objections to Confirmation***.  Objections and responses, if any, to confirmation of the Plan or final approval of the Disclosure Statement, must: (i) be in writing; (ii) conform to the Bankruptcy Rules and the Bankruptcy Local Rules, and any order of the Court; (iii) set forth the name of the objecting party and the nature and amount of Claims or Interests held or asserted by the objecting party against the Debtors' estates or property; (iv) provide the basis for the objection and the specific grounds therefor, and, if practicable, a

proposed modification to the Plan that would resolve such objection; and (v) be filed with the Bankruptcy Court (with proof of service) via ECF or by mailing to the Bankruptcy Court at United States Bankruptcy Court Clerk's Office, United States Courthouse, 515 Rusk Avenue, Courtroom 401, 4th Floor, Houston, Texas 77002, so as to be actually received no later than the Objection Deadline.

9.      IF AN OBJECTION TO CONFIRMATION OF THE PLAN OR FINAL APPROVAL OF THE DISCLOSURE STATEMENT IS NOT FILED AND SERVED STRICTLY AS PRESCRIBED HEREIN, THEN THE OBJECTING PARTY MAY BE BARRED FROM OBJECTING TO CONFIRMATION OF THE PLAN OR FINAL APPROVAL OF THE DISCLOSURE STATEMENT OR THE ADEQUACY THEREOF AND MAY NOT BE HEARD AT THE HEARING.

10.      ***Additional Information***.   Any party in interest wishing to obtain information about the solicitation procedures or copies of the Disclosure Statement, the Plan, or other solicitation materials should contact Stretto through (i) e-mail at CoreScientificInquiries@stretto.com, (ii) by writing to Core Scientific, Inc., Ballot Processing Center, c/o Stretto, Inc., 410 Exchange, Suite 100, Irvine, CA 92602, or (iii) via telephone at (949) 404-4152 (U.S./Canada Toll-Free) or + (888) 765-7875 (outside of the U.S.).  Interested parties may also review the Disclosure Statement and the Plan free of charge at https://dm.epiq11.com/sertasimmons.  In addition, the Disclosure Statement and Plan are on file with the Bankruptcy Court and may be reviewed for a fee by accessing the Bankruptcy Court's website: https://www.txs.uscourts.gov/page/bankruptcycourt.  Note that a PACER password and login are needed to access documents on the Bankruptcy Court's website.  A PACER password can be obtained at: https://pacer.uscourts.gov/.

## NOTICE REGARDING CERTAIN RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS IN PLAN

**If you (i) vote to accept the Plan, (ii) are solicited to vote to accept or reject the Plan, but do not vote to either accept or reject the Plan, and do not opt out of granting the releases set forth in the Plan, (iii) vote, or are deemed, to reject the Plan or are presumed to accept the Plan but do not opt out of granting the releases set forth in the Plan, or (iv) were given notice of the opportunity to opt out of granting the releases contained in the Plan but do not opt out, you shall be deemed to have consented to the releases contained in Section 10.6(b) of the Plan.  The releases as presented in the Plan are provided below:**

**SECTION 10.5      INJUNCTION.**

**Except as otherwise expressly provided in the Plan or for distributions required to be paid or delivered pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold Claims or Interests that have been released pursuant to Section 10.6(a) or Section 10.6(b) of the Plan, shall be discharged pursuant to Section 10.3 of the Plan, or are subject to exculpation pursuant to Section 10.7 of the Plan, and all Subcontractors and all other parties in interest are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Released Parties, and/or the Exculpated Parties (to**

the extent of the exculpation provided pursuant to Section 10.7 of the Plan with respect to the Exculpated Parties): (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (iii) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless (x) such Entity has timely asserted such setoff right either in a Filed Proof of Claim, or in another document Filed with the Bankruptcy Court explicitly preserving such setoff or that otherwise indicates that such entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise or (y) such right to setoff arises under a postpetition agreement with the Debtors or an Executory Contract that has been assumed by the Debtors as of the Effective Date; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released, settled, and/or treated, entitled to a distribution, or cancelled pursuant to the Plan or otherwise Disallowed; *provided* that such persons who have held, hold, or may hold Claims against, or Interests in, a Debtor, a Reorganized Debtor, or an Estate shall not be precluded from exercising their rights and remedies, or obtaining the benefits, solely pursuant to and consistent with the terms of the Plan.

Subject in all respects to Section 11.1 of the Plan, no entity or person may commence or pursue a Claim or Cause of Action of any kind against any Released Party or Exculpated Party that arose or arises from, in whole or in part, the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors (which includes, for the avoidance of doubt, all claims and Causes of Action asserted or assertable in the Securities Class Action), the DIP Facility, the Convertible Notes Agreements, the Miner Equipment Lender Agreements, the Mortgage Agreements, the General Contracts, any and all agreements relating to M&M Liens, and any and all related agreements, instruments, and/or other documents, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Plan Settlements, the New Secured Convertible Notes Documents, the New Secured Notes Documents, the Contingent Payment Obligations Documents, the GUC Contingent Payment Obligations Term Sheet, the New Miner Equipment Lender Debt Documents, the Exit Facility Documents, the New Warrants Agreement, the Rights Offering, the Backstop Commitment Letter, the Initial DIP Loan Documents, the DIP Facility, the Terminated RSA, the RSA, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and

implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan (including, but not limited to, the New Common Interests), or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a claim of willful misconduct, fraud or gross negligence against a Released Party or Exculpated Party and (ii) specifically authorizing such Entity or Person to bring such Claim or Cause of Action against any such Released Party or Exculpated Party.  The Bankruptcy Court shall have sole and exclusive jurisdiction to determine whether a Claim or Cause of Action is colorable and, only to the extent legally permissible and as provided for in Section 11.1 of the Plan, shall have jurisdiction to adjudicate the underlying colorable Claim or Cause of Action.

**SECTION 10.6(a)    RELEASES BY THE DEBTORS.**

Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the obligations of the Debtors under the Plan and the contributions of the Released Parties to facilitate and implement the Plan, except as otherwise provided in the Plan or in the Confirmation Order, on and after the Effective Date, the Released Parties are deemed conclusively, absolutely, unconditionally and irrevocably, released and discharged by the Debtors, the Reorganized Debtors, and the Estates from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Reorganized Debtors, the Estates, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors (which includes, for the avoidance of doubt, all claims and Causes of Action asserted or assertable in the Securities Class Action), the DIP Facility, the Convertible Notes Agreements, the Miner Equipment Lender Agreements, the Mortgage Agreements, the General Contracts, any and all agreements relating to M&M Liens, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Plan Settlements, the New Secured Convertible Notes Documents, the New Secured Notes Documents, the Contingent Payment Obligations Documents, the GUC Contingent Payment Obligations Term Sheet, the New Miner Equipment Lender Debt Documents, the Exit Facility Documents, the New Warrants Agreement, the Rights Offering, the Backstop Commitment Letter, the Initial DIP Loan Documents, the DIP Facility, the Terminated RSA,

the RSA, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan (including, but not limited to, the New Common Interests), or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth in Section 10.6(a) of the Plan (i) shall only be applicable to the maximum extent permitted by law; (ii) shall not be construed as (a) releasing any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud (*provided* that actual fraud shall not exempt from the scope of these Debtor releases any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, (b) releasing any Released Party from Claims or Causes of Action held by the Debtors arising from an act or omission that is determined by a Final Order or by a federal government agency to have constituted a violation of any federal securities laws, or (c) releasing any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan; and (iii) shall not release or be construed as releasing (a) Harlin Dean, (b) the plaintiffs in the Securities Class Action, (c) any Holder asserting a Section 510(b) Claim, or (d) Sphere 3D Corp., in its individual capacity, notwithstanding the inclusion of any of the foregoing within the definition of Released Parties hereunder.

**SECTION 10.6(b)      <u>RELEASES BY HOLDERS OF CLAIMS AND INTERESTS</u>.**

Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, except as otherwise provided in the Plan or in the Confirmation Order, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, each Releasing Party, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released, and discharged the Debtors, the Reorganized Debtors, and the Released Parties from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims or Causes of Action asserted or that may be asserted on behalf of the Debtors or their Estates, that such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, including any Claims or Causes of Action based on or relating to, or in any manner arising from, in whole or in part, the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors (which includes, for the avoidance of doubt, all claims and Causes of Action asserted or assertable in the Securities Class Action), the DIP Facility, the Convertible Notes Agreements, the Miner Equipment Lender Agreements, the Mortgage Agreements, the

General Contracts, any and all agreements relating to M&M Liens, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Plan Settlements, the New Secured Convertible Notes Documents, the New Secured Notes Documents, the Contingent Payment Obligations Documents, the GUC Contingent Payment Obligations Term Sheet, the New Miner Equipment Lender Debt Documents, the Exit Facility Documents, the New Warrants Agreement, the Rights Offering, the Backstop Commitment Letter, the Initial DIP Loan Documents, the DIP Facility, the Terminated RSA, the RSA, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan (including, but not limited to, the New Common Interests), or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth in Section 10.6(b) of the Plan (i) shall only be applicable to the maximum extent permitted by law; and (ii) shall not be construed as (a) releasing any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud (*provided* that actual fraud shall not exempt from the scope of these third-party releases any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, or (b) releasing any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

**SECTION 10.7**       **EXCULPATION.**

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out, in whole or in part, from the Petition Date through the Effective Date, of the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors, the DIP Facility, the Convertible Notes Agreements, the Miner Equipment Lender Agreements, the Mortgage Agreements, the General Contracts, any and all agreements relating to M&M Liens, and related agreements, instruments, or other documents, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal

8

**opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Plan Settlements, the New Secured Convertible Notes Documents, the New Secured Notes Documents, the Contingent Payment Obligations Documents, the GUC Contingent Payment Obligations Term Sheet, the New Miner Equipment Lender Debt Documents, the Exit Facility Documents, the New Warrants Agreement, the Rights Offering, the Backstop Commitment Letter, the Initial DIP Loan Documents, the DIP Facility, the Terminated RSA, the RSA, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan (including, but not limited to, the New Common Interests), or the distribution of property under the Plan, or any other related agreement, except for Claims or Causes of Action arising from an act or omission that is judicially determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects, such Exculpated Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities. The Exculpated Parties have, and upon completion of the Plan, shall be deemed to have, participated in good faith and in compliance with all applicable laws with regard to the solicitation and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan. Notwithstanding anything to the contrary in the foregoing, the exculpations set forth in Section 10.7 of the Plan  (i) shall only be applicable to the maximum extent permitted by law; and (ii) shall not be construed as (a) exculpating any Exculpated Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud (*provided* that actual fraud shall not exempt from the scope of these exculpations any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, (b) exculpating any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, or (c) exculpating Sphere 3D Corp., in its individual capacity, from any postpetition conduct, Claims, or Causes of Action assertable in, arising from, or relating to *Core Scientific, Inc., et al., v. Sphere 3D Corp. and Gryphon Digital Mining, Inc. (In re Core Scientific, et al.),* Adv. Proc. 23-03252 or any Claims asserted by Sphere 3D Corp. against a Debtor.**

## SECTION 5.19          CANCELLATION OF LIENS.

(a)     Except as otherwise specifically provided in the Plan, including sections 4.4 and 4.6 of the Plan, all notes, instruments, certificates evidencing debt of the Debtors and Existing Common Interests will be cancelled and obligations of the Debtors thereunder will be discharged and of no further force or effect, except for the purpose of allowing the applicable agents and trustees to receive distributions from the Debtors under the Plan and to make any further distributions to the applicable Holders on account of their Allowed Claims and Interests.

(b)     After the Effective Date and following (i) the distributions to Holders on account of Allowed Convertible Notes Secured Claims and Allowed Miner Equipment Lender Secured Claims and/or (ii) with regard to Allowed M&M Lien Secured Claims, satisfaction of the applicable M&M Lien Takeback Debt, the Debtors or the Reorganized Debtors, at their expense, may, in their sole discretion, take any action necessary to terminate, cancel, extinguish, and/or evidence the release of any and all mortgages, deeds of trust, Liens, pledges, and other security interests with respect to the Convertible Notes Secured Claims, Miner Equipment Lender Secured Claims, and M&M Lien Secured Claims, including, without limitation, the preparation and filing of any and all documents necessary to terminate, satisfy, or release any mortgages, deeds of trust, Liens, pledges, and other security interests held by the Holders of the M&M Lien Secured Claims, Miner Equipment Lender Secured Claims, the Notes Agent, and/or Convertible Noteholders, including, without limitation, UCC-3 termination statements.

**Relevant Definitions Related to Release and Exculpation Provisions**:

*"Exculpated Parties"* means each of the following in their capacity as such and, in each case, to the maximum extent permitted by law: (i) the Debtors; (ii) Equity Committee and each of its present and former members, each solely in their capacity as such (and as it relates to former members, solely with regard to the time period for which they served on the Equity Committee); and (iii) the Creditors' Committee and each of its present and former members, each solely in its capacity as such (and as it relates to former members, solely with regard to the time period for which they served on the Creditors' Committee).

*"Related Parties"* means with respect to a Person, that Person's current and former Affiliates, and such Person's and its current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, fiduciaries, trustees, advisory board members, financial advisors, partners, limited partners, general partners, attorneys, accountants, managed accounts or funds, management companies, fund advisors, investment bankers, consultants, representatives, and other professionals, and such Person's respective heirs, executors, estates, and nominees, each in their capacity as such, and any and all other Persons or Entities that may purport to assert any Cause of Action derivatively, by or through the foregoing entities.

*"Released Parties"* means, collectively: (i) the Debtors; (ii) the Reorganized Debtors; (iii) the Equity Committee; (iv) the members of the Equity Committee that are party to the RSA, solely in their capacities as such; (v) the Backstop Parties; (vi) the Creditors' Committee; (vii) the present and former members of the Creditors' Committee, solely in their capacities as such; (viii) the Settling Miner Equipment Lenders; (ix) Brown Corporation; (x) Holliwood LLC; (xi) the Ad Hoc Noteholder Group; (xii) the Consenting Creditors; (xiii) the Exit Lenders; (xiv) the Notes Agent, solely in its capacity as such; (xv) Foundry Digital LLC; (xvi) B. Riley Commercial Capital, LLC; (xvii) BRF Finance Co., LLC; and (xviii) with respect to each of the foregoing Persons in clauses (i) through (xvii), all Related Parties.  Notwithstanding the foregoing, any Person that opts out of the releases set forth in section 10.6(b) of the Plan shall not be deemed

a Released Party thereunder.

"*Releasing Parties*" means collectively, and in each case solely in their capacity as such, (i) the Debtors; (ii) the Reorganized Debtors; (iii) with respect to each of the foregoing Persons in clauses (i) through (ii), all Related Parties; (iv) the Released Parties; (v) the Holders of all Claims or Interests that vote to accept the Plan; (vi) the Holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but that do not vote either to accept or to reject the Plan and do not opt out of granting the releases set forth in the Plan; (vii) the Holders of all Claims or Interests that vote, or are deemed, to reject the Plan or that are presumed to accept the Plan but do not opt out of granting the releases set forth in the Plan; and (viii) the Holders of all Claims and Interests and all Other Beneficial Owners that were given notice of the opportunity to opt out of granting the releases set forth in the Plan but did not opt out.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

### Notice of Assumption and Rejection of Executory Contracts and Unexpired Leases of Debtors and Related Procedures

1. Please take notice that, in accordance with Article VIII of the Plan and sections 365 and 1123 of the Bankruptcy Code, as of and subject to the occurrence of the Effective Date and the payment of any applicable Cure Amount, and subject to section 8.5 of the Plan, all Executory Contracts and Unexpired Leases to which any of the Debtors are parties shall be deemed assumed, unless such contract or lease (i) was previously assumed or rejected by the Debtors, pursuant to Final Order of the Bankruptcy Court, (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto, (iii) is the subject of a motion to reject Filed by the Debtors on or before the Confirmation Date, or (iv) is specifically designated as a contract or lease to be rejected on the Schedule of Rejected Contracts. Subject to (i) satisfaction of the conditions set forth in section 8.1(a) of the Plan, (ii) resolution of any disputes in accordance with section 8.2 of the Plan with respect to the Executory Contracts or Unexpired Leases subject to such disputes, and (iii) the occurrence of the Effective Date, entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the assumptions or rejections provided for in the Plan pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Each Executory Contract and Unexpired Lease assumed or assumed and assigned pursuant to the Plan shall vest in and be fully enforceable by the applicable Reorganized Debtor or assignee in accordance with its terms, except as modified by any provision of the Plan, any order of the Bankruptcy Court authorizing and providing for its assumption or assumption and assignment, or applicable law.

2. The Plan provides that to the maximum extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption of such Executory Contract or Unexpired Lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.

3.      Section 8.2 of the Plan stipulates that the Debtors shall file, as part of the Plan Supplement, the Schedule of Rejected Contracts and the Schedule of Assumed Contracts.  The Plan further provides that prior to the Combined Hearing, the Debtors shall serve a notice on parties to Executory Contracts or Unexpired Leases to be assumed, assumed and assigned, or rejected reflecting the Debtors' intention to potentially assume, assume and assign, or reject the contract or lease in connection with the Plan and, where applicable, setting forth the proposed Cure Amount (if any).  If a counterparty to any Executory Contract or Unexpired Lease that the Debtors or Reorganized Debtors, as applicable, intend to assume or assume and assign is not listed on such a notice, the proposed Cure amount for such Executory Contract or Unexpired Lease shall be deemed to be Zero Dollars ($0).  **Any objection by a counterparty to an Executory Contract or Unexpired Lease to the proposed assumption, assumption and assignment, or related Cure Amount must be Filed, served, and actually received by the Debtors within fourteen (14) days of the service of the assumption notice, or such shorter period as agreed to by the parties or authorized by the Bankruptcy Court.**  If there is an Assumption Dispute pertaining to assumption of an Executory Contract or Unexpired Lease (other than a dispute pertaining to a Cure Amount), such dispute shall be heard by the Bankruptcy Court prior to such assumption being effective; *provided* that the Debtors or the Reorganized Debtors, as applicable, may, with the consent of the Requisite Consenting Creditors, settle any dispute regarding the Cure Amount or the nature thereof without any further notice to any party or any action, order, or approval of the Bankruptcy Court.

4.      Section 8.2 of the Plan further provides that–any counterparty to an Executory Contract or Unexpired Lease that does not timely object to the notice of the proposed assumption of such Executory Contract or Unexpired Lease shall be deemed to have assented to assumption of the applicable Executory Contract or Unexpired Lease notwithstanding any provision thereof that purports to (i) prohibit, restrict, or condition the transfer or assignment of such contract or lease; (ii) terminate or modify, or permit the termination or modification of, a contract or lease as a result of any direct or indirect transfer or assignment of the rights of any Debtor under such contract or lease or a change, if any, in the ownership or control to the extent contemplated by the Plan; (iii) increase, accelerate, or otherwise alter any obligations or liabilities of any Debtor or any Reorganized Debtor, as applicable, under such Executory Contract or Unexpired Lease; or (iv) create or impose a Lien upon any property or Asset of any Debtor or any Reorganized Debtor, as applicable.  Each such provision shall be deemed to not apply to the assumption of such Executory Contract or Unexpired Lease pursuant to the Plan and counterparties to assumed Executory Contracts or Unexpired Leases that fail to object to the proposed assumption in accordance with the terms set forth in Section 8.2(a) of the Plan, shall forever be barred and enjoined from objecting to the proposed assumption or to the validity of such assumption (including with respect to any Cure Amounts or the provision of adequate assurance of future performance), or taking actions prohibited by the foregoing or the Bankruptcy Code on account of transactions contemplated by the Plan.

5.      Section 8.3 of the Plan provides that unless otherwise provided by an order of the Bankruptcy Court, Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be Filed with the Bankruptcy Court by the later of thirty (30) days from (i) the date of entry of an order of the Bankruptcy Court approving such rejection, (ii) the effective date of the rejection of such Executory Contract or Unexpired Lease,

and (iii) the Effective Date. **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed within such time shall be Disallowed pursuant to the Confirmation Order or such other order of the Bankruptcy Court, as applicable, forever barred from assertion, and shall not be enforceable against, as applicable, the Debtors, the Estates, the Reorganized Debtors, or property of the foregoing parties, without the need for any objection by the Debtors or the Reorganized Debtors, as applicable, or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules, if any, or a Proof of Claim to the contrary**.

**UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS COMBINED HEARING NOTICE, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.**

6.      **Plan Supplement**.  The Debtors will file and serve any amended Plan Supplement on or before **January 5, 2023**.

### Notice of Procedures with Respect to Reinstated Claims

1.      Please take notice that, in accordance with Article IV of the Plan and section 1124 of the Bankruptcy Code, as of and subject to the occurrence of the Effective Date and the payment of any applicable Cure Amount, and subject to section 7.11 of the Plan, all Other Secured Claims in Class 4 shall be Reinstated.  Subject to (i) satisfaction of the conditions set forth in section 7.11 of the Plan, (ii) resolution of any disputes in accordance with section 7.11 of the Plan with respect to the Cure Amounts subject to such disputes, and (iii) the occurrence of the Effective Date, entry of the Confirmation Order by the Bankruptcy Court shall authorize Reinstatement of the Other Secured Claims in Class 4 pursuant to section 1124 of the Bankruptcy Code.

2.      Section 7.11 of the Plan stipulates least ten (10) days before the deadline to object to Confirmation of the Plan, the Debtors shall serve a notice on Holders of Other Secured Claims in Class 4 setting forth the proposed Cure Amount (if any) necessary to Reinstate such Claims. Any objection by a Holder of an Other Secured Claim in Class 4 to the proposed Cure Amount must be Filed, served, and actually received by the Debtors within fourteen (14) days of the service of the notice of proposed Cure Amount, or such shorter period as agreed to by the parties or authorized by the Bankruptcy Court. Any Holder of an Other Secured Claim in Class 4 that does not timely object to the notice of the proposed Cure Amount shall be deemed to have assented to the Reinstatement of its Claim and the proposed Cure Amount listed therein and shall be shall forever be barred and enjoined from objecting to the Reinstatement of its Claim on the grounds that sections 1124(2)(A), (C), or (D) of the Bankruptcy Code have not been satisfied.

3.      Section 7.11  of the Plan further provides that to the extent there is a dispute relating to the Cure Amount, the Debtors may Reinstate the applicable Other Secured Claim prior to the resolution of the Cure Amount dispute; provided that the Debtors or the Reorganized Debtors, as applicable, reserve Cash in an amount sufficient to pay the full amount reasonably asserted as the required Cure Amount by the Holder of the applicable Other Secured Claim (or such smaller amount as may be fixed or estimated by the Bankruptcy Court or otherwise agreed to

by such Holder and the applicable Reorganized Debtor). Subject to resolution of any dispute regarding any Cure Amount, all Cure Amounts shall be satisfied on the Effective Date, or otherwise as soon as practicable thereafter, by the Debtors or Reorganized Debtors, as the case may be.

**UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS COMBINED HEARING NOTICE, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.**

**QUESTIONS:**

If you have questions about this Combined Hearing Notice, please contact Stretto through (i) e-mail at CoreScientificInquiries@stretto.com, (ii) by writing to Core Scientific, Inc., Ballot Processing Center, c/o Stretto, Inc., 410 Exchange, Suite 100, Irvine, CA 92602, (iii) via telephone at (949) 404-4152 (U.S./Canada Toll-Free) or + (888) 765-7875 (outside of the U.S.), or (iv) visiting https://cases.stretto.com/CoreScientific.

*[Remainder of Page Intentionally Left Blank]*

Dated: December 29, 2023
     Houston, Texas

Respectfully submitted,

  */s/ Alfredo R. Pérez*
WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (15776275)
Clifford W. Carlson (24090024)
700 Louisiana Street, Suite 3700
Houston, Texas  77002
Telephone: (713) 546-5000
Facsimile:  (713) 224-9511
Email:  Alfredo.Perez@weil.com
        Clifford.Carlson@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Ray C. Schrock (admitted *pro hac vice*)
Ronit J. Berkovich (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Email:  Ray.Schrock@weil.com
        Ronit.Berkovich@weil.com

*Attorneys for Debtors*
*and Debtors in Possession*

# Exhibit C

**OPTIONAL:**          **RELEASE OPT OUT FORM**

          You are receiving this opt out form (the "**Release Opt Out Form**") because you (i) are or may be a Holder of a Claim against Core Scientific, Inc. and its debtor affiliates (collectively, the "**Debtors**") that is not entitled to vote on the *Fourth Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors*, filed on December 28, 2023 (Docket No. 1639) (as may be modified, amended, or supplemented, the "**Plan**")[1] or (ii) are a current or former shareholder of equity securities of the Debtors, purchased during the period from January 5, 2022 through December 20, 2022, inclusive (an "**Other Beneficial Owner**") that holds or may hold a claim that will be released pursuant to the Plan.    A holder of Claims, Interests, and/or an Other Beneficial Owner is deemed to grant the third-party releases set forth below unless such holder affirmatively opts out on or before the Opt Out Deadline (as defined below).

**All prior submitted Release Opt Out Forms will be effective.**

          **THIS RELEASE OPT OUT FORM PROVIDES YOU WITH THE OPTION TO NOT GRANT THE VOLUNTARY RELEASE CONTAINED IN SECTION 10.6(b) OF THE PLAN.   PURSUANT TO THE PLAN, IF YOU, AS A HOLDER OF CLAIMS OR INTEREST, OR AS AN OTHER BENEFICIAL OWNER, WHO HAS BEEN GIVEN NOTICE OF THE OPPORTUNITY TO OPT OUT OF GRANTING THE RELEASES SET FORTH IN THE PLAN BUT DO NOT OPT OUT, YOU ARE AUTOMATICALLY DEEMED TO HAVE CONSENTED TO THE RELEASE PROVISIONS IN THE PLAN. TO THE EXTENT THAT YOU HAVE AN ALLOWED CLAIM OR INTEREST, YOU WILL RECEIVE THE SAME RECOVERY AND TREATMENT ON ACCOUNT OF YOUR CLAIM OR INTEREST UNDER THE PLAN REGARDLESS OF WHETHER YOU ELECT TO NOT GRANT THE VOLUNTARY RELEASE CONTAINED IN SECTION 10.6(b) OF THE PLAN.   IF YOU ELECT TO NOT GRANT THE VOLUNTARY RELEASE CONTAINED IN SECTION 10.6(b) OF THE PLAN, HOWEVER, YOU MAY NOT BE A "RELEASED PARTY" WITH RESPECT TO THE VOLUNTARY THIRD-PARTY RELEASE BY RELEASING PARTIES.   IF YOU ARE ENTITLED TO VOTE ON THE PLAN AND VOTE TO ACCEPT THE PLAN, YOU SHALL BE DEEMED TO HAVE CONSENTED TO THE RELEASES CONTAINED IN SECTION 10.6(b) OF THE PLAN.**

          **IF YOU ARE AN OTHER BENEFICIAL OWNER AND DO NOT OPT OUT OF GRANTING THE RELEASES SET FORTH IN SECTION 10.6(b) OF THE PLAN, YOU WILL BE AUTOMATICALLY DEEMED TO HAVE CONSENTED TO THE RELEASE PROVISIONS SET FORTH IN SECTION 10.6(b) OF THE PLAN, INCLUDING THE RELEASE OF ANY OF YOUR CLAIMS ASSERTED OR ASSERTABLE AGAINST THE DEBTORS' DIRECTORS AND OFFICERS IN THE**

---

[1]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan or the *Supplement to Disclosure Statement for Fourth Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors,* (Docket No.1640) (together with the *Disclosure Statement for Third Amended Joint Chapter 11 Plan of Core Scientific, Inc. and Its Affiliated Debtors*, Docket No. 1439, as may be modified, amended, or supplemented, the "**Disclosure Statement**"), as applicable.

**SECURITIES CLASS ACTION LAWSUIT PENDING AGAINST IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TEXAS.**

**YOU WILL BE DEEMED TO HAVE RELEASED WHATEVER CLAIMS YOU MAY HAVE AGAINST THE DEBTORS AND MANY OTHER PEOPLE AND ENTITIES (INCLUDING THE DEBTORS' OFFICERS AND DIRECTORS) UNLESS YOU RETURN OR ELECTRONICALLY SUBMIT THIS RELEASE OPT OUT FORM BY JANUARY 11, 2024 AT 5:00 P.M. (PREVAILING CENTRAL TIME) (THE "OPT OUT DEADLINE").**

If you believe you are a holder of a Claim, Interest, or an Other Beneficial Owner with respect to the Debtors or Released Parties (as defined below) and choose to opt out of the third-party releases set forth in Section 10.6(b) of the Plan, please submit your election to opt out through one of the following methods: (i) completing, signing, dating, and returning this Release Opt Out Form promptly via first class mail (or in the enclosed reply envelope provided), overnight courier, or hand delivery to the Voting Agent at the address set forth below, so that it is received by the Voting Agent prior to the Opt Out Deadline, or (ii) by completing and signing the Release Opt Out Form via the Online Portal located at **https://balloting.stretto.com/CoreScientific/Supplemental/OtherBeneficialOwners**.

**To ensure that your hard copy Release Opt Out Form is counted, clearly sign and return your Release Opt Out Form in the enclosed pre-addressed, or via first-class mail, overnight courier, or hand delivery to:**

| STRETTO'S ADDRESS FOR RECEIPT OF RELEASE OPT OUT FORM |
|:---:|
| **CORE SCIENTIFIC, INC.**<br>**BALLOT PROCESSING CENTER**<br>**C/O STRETTO, INC.**<br>**410 EXCHANGE, SUITE 100**<br>**IRVINE, CA 92602** |

**THIS RELEASE OPT OUT FORM MUST BE ACTUALLY RECEIVED BY THE VOTING AGENT BY THE OPT OUT DEADLINE.  IF THE RELEASE OPT OUT FORM IS RECEIVED AFTER THE OPT OUT DEADLINE, IT WILL NOT BE COUNTED.**

**Item 1.** **Amount of Claim**. The undersigned hereby certifies that, as of September 25, 2023, the undersigned was the Holder (or authorized signatory of such a Holder) of Claims or Interests in the amount set forth below, or is an Other Beneficial Owner.

| | |
|:---:|:---:|
| Class 4 (Other Secured Claims) | Amount:  $_____ |
| Class 7 (Priority Non-Tax Claims) | Amount:  $_____ |

| Other Beneficial Owner | ☐ |
|---|---|

**Item 2.          Releases.**

**The Plan contains the following release provisions:**

**SECTION 10.6(a)          RELEASES BY THE DEBTORS.**

**NOTWITHSTANDING ANYTHING CONTAINED IN THE PLAN TO THE CONTRARY, AS OF THE EFFECTIVE DATE, PURSUANT TO SECTION 1123(B) OF THE BANKRUPTCY CODE, FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, INCLUDING THE OBLIGATIONS OF THE DEBTORS UNDER THE PLAN AND THE CONTRIBUTIONS OF THE RELEASED PARTIES TO FACILITATE AND IMPLEMENT THE PLAN, EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR IN THE CONFIRMATION ORDER, ON AND AFTER THE EFFECTIVE DATE, THE RELEASED PARTIES ARE DEEMED CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY AND IRREVOCABLY, RELEASED AND DISCHARGED BY THE DEBTORS, THE REORGANIZED DEBTORS, AND THE ESTATES FROM ANY AND ALL CLAIMS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES, AND LIABILITIES WHATSOEVER, INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, THAT THE DEBTORS, THE REORGANIZED DEBTORS, THE ESTATES, OR THEIR AFFILIATES WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER PERSON, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE CHAPTER 11 CASES, THE DEBTORS, THE GOVERNANCE, MANAGEMENT, TRANSACTIONS, OWNERSHIP, OR OPERATION OF THE DEBTORS, THE PURCHASE, SALE OR RESCISSION OF ANY SECURITY OF THE DEBTORS OR THE REORGANIZED DEBTORS (WHICH INCLUDES, FOR THE AVOIDANCE OF DOUBT, ALL CLAIMS AND CAUSES OF ACTION ASSERTED OR ASSERTABLE IN THE SECURITIES CLASS ACTION), THE DIP FACILITY, THE CONVERTIBLE NOTES AGREEMENTS, THE MINER EQUIPMENT LENDER AGREEMENTS, THE MORTGAGE AGREEMENTS, THE GENERAL CONTRACTS, ANY AND ALL AGREEMENTS RELATING TO M&M LIENS, THE FORMULATION, PREPARATION, DISSEMINATION, SOLICITATION, NEGOTIATION, ENTRY INTO, OR FILING OF THE PLAN (INCLUDING THE PLAN SUPPLEMENT), THE DISCLOSURE STATEMENT, OR ANY RESTRUCTURING TRANSACTION, CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT (INCLUDING ANY LEGAL OPINION REQUESTED BY ANY ENTITY REGARDING ANY TRANSACTION, CONTRACT, INSTRUMENT, DOCUMENT, OR OTHER AGREEMENT CONTEMPLATED BY THE PLAN OR THE RELIANCE BY ANY**

3

RELEASED PARTY ON THE PLAN OR CONFIRMATION ORDER IN LIEU OF SUCH LEGAL OPINION) CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN, THE PLAN SUPPLEMENT, THE DISCLOSURE STATEMENT, THE PLAN SETTLEMENTS, THE NEW SECURED CONVERTIBLE NOTES DOCUMENTS, THE NEW SECURED NOTES DOCUMENTS, THE CONTINGENT PAYMENT OBLIGATIONS DOCUMENTS, THE GUC CONTINGENT PAYMENT OBLIGATIONS TERM SHEET, THE NEW MINER EQUIPMENT LENDER DEBT DOCUMENTS, THE EXIT FACILITY DOCUMENTS, THE NEW WARRANTS AGREEMENT, THE RIGHTS OFFERING, THE BACKSTOP COMMITMENT LETTER, THE INITIAL DIP LOAN DOCUMENTS, THE DIP FACILITY, THE TERMINATED RSA, THE RSA, THE CHAPTER 11 CASES, THE PURSUIT OF CONFIRMATION AND CONSUMMATION OF THE PLAN, THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN OR CONFIRMATION ORDER, INCLUDING THE ISSUANCE OR DISTRIBUTION OF SECURITIES PURSUANT TO THE PLAN (INCLUDING, BUT NOT LIMITED TO, THE NEW COMMON INTERESTS), OR THE DISTRIBUTION OF PROPERTY UNDER THE PLAN, OR ANY OTHER AGREEMENT, ACT OR OMISSION, TRANSACTION, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE.  NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASES SET FORTH IN SECTION 10.6(A) OF THE PLAN (I) SHALL ONLY BE APPLICABLE TO THE MAXIMUM EXTENT PERMITTED BY LAW; (II) SHALL NOT BE CONSTRUED AS (A) RELEASING ANY RELEASED PARTY FROM CLAIMS OR CAUSES OF ACTION ARISING FROM AN ACT OR OMISSION THAT IS JUDICIALLY DETERMINED BY A FINAL ORDER TO HAVE CONSTITUTED ACTUAL FRAUD (*PROVIDED* THAT ACTUAL FRAUD SHALL NOT EXEMPT FROM THE SCOPE OF THESE DEBTOR RELEASES ANY CLAIMS OR CAUSES OF ACTION ARISING UNDER SECTIONS 544 OR 548 OF THE BANKRUPTCY CODE OR STATE LAWS GOVERNING FRAUDULENT OR OTHERWISE AVOIDABLE TRANSFERS OR CONVEYANCES), WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE, (B) RELEASING ANY RELEASED PARTY FROM CLAIMS OR CAUSES OF ACTION HELD BY THE DEBTORS ARISING FROM AN ACT OR OMISSION THAT IS DETERMINED BY A FINAL ORDER OR BY A FEDERAL GOVERNMENT AGENCY TO HAVE CONSTITUTED A VIOLATION OF ANY FEDERAL SECURITIES LAWS, OR (C) RELEASING ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, THE CONFIRMATION ORDER, ANY RESTRUCTURING TRANSACTION, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN; AND (III) SHALL NOT RELEASE OR BE CONSTRUED AS RELEASING (A) HARLIN DEAN, (B) THE PLAINTIFFS IN THE SECURITIES CLASS ACTION, (C) ANY HOLDER ASSERTING A SECTION 510(B) CLAIM, OR (D) SPHERE 3D CORP., IN ITS INDIVIDUAL CAPACITY, NOTWITHSTANDING THE INCLUSION OF ANY OF THE FOREGOING WITHIN THE DEFINITION OF RELEASED PARTIES HEREUNDER.

SECTION 10.6(b)     <u>RELEASES BY HOLDERS OF CLAIMS AND INTERESTS</u>.

NOTWITHSTANDING ANYTHING CONTAINED IN THE PLAN TO THE CONTRARY, AS OF THE EFFECTIVE DATE, FOR GOOD AND VALUABLE

**CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR IN THE CONFIRMATION ORDER, TO THE FULLEST EXTENT PERMISSIBLE UNDER APPLICABLE LAW, AS SUCH LAW MAY BE EXTENDED OR INTEGRATED AFTER THE EFFECTIVE DATE, EACH RELEASING PARTY, SHALL BE DEEMED TO HAVE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER, RELEASED, AND DISCHARGED THE DEBTORS, THE REORGANIZED DEBTORS, AND THE RELEASED PARTIES FROM ANY AND ALL CLAIMS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES, AND LIABILITIES WHATSOEVER, INCLUDING ANY DERIVATIVE CLAIMS OR CAUSES OF ACTION ASSERTED OR THAT MAY BE ASSERTED ON BEHALF OF THE DEBTORS OR THEIR ESTATES, THAT SUCH ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, ANY ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE, INCLUDING ANY CLAIMS OR CAUSES OF ACTION BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE CHAPTER 11 CASES, THE DEBTORS, THE GOVERNANCE, MANAGEMENT, TRANSACTIONS, OWNERSHIP, OR OPERATION OF THE DEBTORS, THE PURCHASE, SALE OR RESCISSION OF ANY SECURITY OF THE DEBTORS OR THE REORGANIZED DEBTORS (WHICH INCLUDES, FOR THE AVOIDANCE OF DOUBT, ALL CLAIMS AND CAUSES OF ACTION ASSERTED OR ASSERTABLE IN THE SECURITIES CLASS ACTION), THE DIP FACILITY, THE CONVERTIBLE NOTES AGREEMENTS, THE MINER EQUIPMENT LENDER AGREEMENTS, THE MORTGAGE AGREEMENTS, THE GENERAL CONTRACTS, ANY AND ALL AGREEMENTS RELATING TO M&M LIENS, THE FORMULATION, PREPARATION, DISSEMINATION, SOLICITATION, NEGOTIATION, ENTRY INTO, OR FILING OF THE PLAN (INCLUDING THE PLAN SUPPLEMENT), THE DISCLOSURE STATEMENT, OR ANY RESTRUCTURING TRANSACTION, CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT (INCLUDING ANY LEGAL OPINION REQUESTED BY ANY ENTITY REGARDING ANY TRANSACTION, CONTRACT, INSTRUMENT, DOCUMENT, OR OTHER AGREEMENT CONTEMPLATED BY THE PLAN OR THE RELIANCE BY ANY RELEASED PARTY ON THE PLAN OR CONFIRMATION ORDER IN LIEU OF SUCH LEGAL OPINION) CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN, THE PLAN SUPPLEMENT, THE DISCLOSURE STATEMENT, THE PLAN SETTLEMENTS, THE NEW SECURED CONVERTIBLE NOTES DOCUMENTS, THE NEW SECURED NOTES DOCUMENTS, THE CONTINGENT PAYMENT OBLIGATIONS DOCUMENTS, THE GUC CONTINGENT PAYMENT OBLIGATIONS TERM SHEET, THE NEW MINER EQUIPMENT LENDER DEBT DOCUMENTS, THE EXIT FACILITY DOCUMENTS, THE NEW WARRANTS AGREEMENT, THE RIGHTS OFFERING, THE BACKSTOP COMMITMENT LETTER, THE INITIAL DIP LOAN**

DOCUMENTS, THE DIP FACILITY, THE TERMINATED RSA, THE RSA, THE CHAPTER 11 CASES, THE PURSUIT OF CONFIRMATION AND CONSUMMATION OF THE PLAN, THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN OR CONFIRMATION ORDER, INCLUDING THE ISSUANCE OR DISTRIBUTION OF SECURITIES PURSUANT TO THE PLAN (INCLUDING, BUT NOT LIMITED TO, THE NEW COMMON INTERESTS), OR THE DISTRIBUTION OF PROPERTY UNDER THE PLAN, OR ANY OTHER AGREEMENT, ACT OR OMISSION, TRANSACTION, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE.  NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASES SET FORTH IN SECTION 10.6(B) OF THE PLAN (I) SHALL ONLY BE APPLICABLE TO THE MAXIMUM EXTENT PERMITTED BY LAW; AND (II) SHALL NOT BE CONSTRUED AS (A) RELEASING ANY RELEASED PARTY FROM CLAIMS OR CAUSES OF ACTION ARISING FROM AN ACT OR OMISSION THAT IS JUDICIALLY DETERMINED BY A FINAL ORDER TO HAVE CONSTITUTED ACTUAL FRAUD (*PROVIDED* THAT ACTUAL FRAUD SHALL NOT EXEMPT FROM THE SCOPE OF THESE THIRD-PARTY RELEASES ANY CLAIMS OR CAUSES OF ACTION ARISING UNDER SECTIONS 544 OR 548 OF THE BANKRUPTCY CODE OR STATE LAWS GOVERNING FRAUDULENT OR OTHERWISE AVOIDABLE TRANSFERS OR CONVEYANCES), WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE, OR (B) RELEASING ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, ANY RESTRUCTURING TRANSACTION, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN.

SECTION 10.7         EXCULPATION.

EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN, NO EXCULPATED PARTY SHALL HAVE OR INCUR LIABILITY FOR, AND EACH EXCULPATED PARTY IS HEREBY RELEASED AND EXCULPATED FROM, ANY CAUSE OF ACTION FOR ANY CLAIM RELATED TO ANY ACT OR OMISSION IN CONNECTION WITH, RELATING TO, OR ARISING OUT, IN WHOLE OR IN PART, FROM THE PETITION DATE THROUGH THE EFFECTIVE DATE, OF THE CHAPTER 11 CASES, THE DEBTORS, THE GOVERNANCE, MANAGEMENT, TRANSACTIONS, OWNERSHIP, OR OPERATION OF THE DEBTORS, THE PURCHASE, SALE OR RESCISSION OF ANY SECURITY OF THE DEBTORS OR THE REORGANIZED DEBTORS, THE DIP FACILITY, THE CONVERTIBLE NOTES AGREEMENTS, THE MINER EQUIPMENT LENDER AGREEMENTS, THE MORTGAGE AGREEMENTS, THE GENERAL CONTRACTS, ANY AND ALL AGREEMENTS RELATING TO M&M LIENS, AND RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS, THE FORMULATION, PREPARATION, DISSEMINATION, SOLICITATION, NEGOTIATION, ENTRY INTO, OR FILING OF THE PLAN (INCLUDING THE PLAN SUPPLEMENT), THE DISCLOSURE STATEMENT, OR ANY RESTRUCTURING TRANSACTION, CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT (INCLUDING ANY LEGAL OPINION REQUESTED BY ANY ENTITY REGARDING ANY TRANSACTION, CONTRACT, INSTRUMENT, DOCUMENT, OR OTHER

6

**AGREEMENT CONTEMPLATED BY THE PLAN OR THE RELIANCE BY ANY RELEASED PARTY ON THE PLAN OR CONFIRMATION ORDER IN LIEU OF SUCH LEGAL OPINION) CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN, THE PLAN SUPPLEMENT, THE DISCLOSURE STATEMENT, THE PLAN SETTLEMENTS, THE NEW SECURED CONVERTIBLE NOTES DOCUMENTS, THE NEW SECURED NOTES DOCUMENTS, THE CONTINGENT PAYMENT OBLIGATIONS DOCUMENTS, THE GUC CONTINGENT PAYMENT OBLIGATIONS TERM SHEET, THE NEW MINER EQUIPMENT LENDER DEBT DOCUMENTS, THE EXIT FACILITY DOCUMENTS, THE NEW WARRANTS AGREEMENT, THE RIGHTS OFFERING, THE BACKSTOP COMMITMENT LETTER, THE INITIAL DIP LOAN DOCUMENTS, THE DIP FACILITY, THE TERMINATED RSA, THE RSA, THE CHAPTER 11 CASES, THE PURSUIT OF CONFIRMATION AND CONSUMMATION OF THE PLAN, THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN OR CONFIRMATION ORDER, INCLUDING THE ISSUANCE OR DISTRIBUTION OF SECURITIES PURSUANT TO THE PLAN (INCLUDING, BUT NOT LIMITED TO, THE NEW COMMON INTERESTS), OR THE DISTRIBUTION OF PROPERTY UNDER THE PLAN, OR ANY OTHER RELATED AGREEMENT, EXCEPT FOR CLAIMS OR CAUSES OF ACTION ARISING FROM AN ACT OR OMISSION THAT IS JUDICIALLY DETERMINED IN A FINAL ORDER TO HAVE CONSTITUTED ACTUAL FRAUD, WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE, BUT IN ALL RESPECTS, SUCH EXCULPATED PARTIES SHALL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES. THE EXCULPATED PARTIES HAVE, AND UPON COMPLETION OF THE PLAN, SHALL BE DEEMED TO HAVE, PARTICIPATED IN GOOD FAITH AND IN COMPLIANCE WITH ALL APPLICABLE LAWS WITH REGARD TO THE SOLICITATION AND DISTRIBUTION OF, CONSIDERATION PURSUANT TO THE PLAN AND, THEREFORE, ARE NOT, AND ON ACCOUNT OF SUCH DISTRIBUTIONS SHALL NOT BE, LIABLE AT ANY TIME FOR THE VIOLATION OF ANY APPLICABLE LAW, RULE, OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OR SUCH DISTRIBUTIONS MADE PURSUANT TO THE PLAN. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE EXCULPATIONS SET FORTH IN SECTION 10.7 OF THE PLAN (I) SHALL ONLY BE APPLICABLE TO THE MAXIMUM EXTENT PERMITTED BY LAW; AND (II) SHALL NOT BE CONSTRUED AS (A) EXCULPATING ANY EXCULPATED PARTY FROM CLAIMS OR CAUSES OF ACTION ARISING FROM AN ACT OR OMISSION THAT IS JUDICIALLY DETERMINED BY A FINAL ORDER TO HAVE CONSTITUTED ACTUAL FRAUD (*PROVIDED* THAT ACTUAL FRAUD SHALL NOT EXEMPT FROM THE SCOPE OF THESE EXCULPATIONS ANY CLAIMS OR CAUSES OF ACTION ARISING UNDER SECTIONS 544 OR 548 OF THE BANKRUPTCY CODE OR STATE LAWS GOVERNING FRAUDULENT OR OTHERWISE AVOIDABLE TRANSFERS OR CONVEYANCES), WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE, (B) EXCULPATING ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, ANY RESTRUCTURING TRANSACTION, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN, OR (C)**

EXCULPATING SPHERE 3D CORP., IN ITS INDIVIDUAL CAPACITY, FROM ANY POSTPETITION CONDUCT, CLAIMS, OR CAUSES OF ACTION ASSERTABLE IN, ARISING FROM, OR RELATING TO *CORE SCIENTIFIC, INC., ET AL., V. SPHERE 3D CORP. AND GRYPHON DIGITAL MINING, INC. (IN RE CORE SCIENTIFIC, ET AL.),* ADV. PROC. 23-03252 OR ANY CLAIMS ASSERTED BY SPHERE 3D CORP. AGAINST A DEBTOR.

**SECTION 10.5        INJUNCTION.**

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR FOR DISTRIBUTIONS REQUIRED TO BE PAID OR DELIVERED PURSUANT TO THE PLAN OR THE CONFIRMATION ORDER, ALL ENTITIES THAT HAVE HELD, HOLD, OR MAY HOLD CLAIMS OR INTERESTS THAT HAVE BEEN RELEASED PURSUANT TO SECTION 10.6(A) OR SECTION 10.6(B) OF THE PLAN, SHALL BE DISCHARGED PURSUANT TO SECTION 10.3 OF THE PLAN, OR ARE SUBJECT TO EXCULPATION PURSUANT TO SECTION 10.7 OF THE PLAN, AND ALL SUBCONTRACTORS AND ALL OTHER PARTIES IN INTEREST ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST, AS APPLICABLE, THE DEBTORS, THE REORGANIZED DEBTORS, THE RELEASED PARTIES, AND/OR THE EXCULPATED PARTIES (TO THE EXTENT OF THE EXCULPATION PROVIDED PURSUANT TO SECTION 10.7 OF THE PLAN WITH RESPECT TO THE EXCULPATED PARTIES): (I) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (II) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (III) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE OF ANY KIND AGAINST SUCH ENTITIES OR THE PROPERTY OR THE ESTATES OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (IV) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION, OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE FROM SUCH ENTITIES OR AGAINST THE PROPERTY OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS UNLESS (X) SUCH ENTITY HAS TIMELY ASSERTED SUCH SETOFF RIGHT EITHER IN A FILED PROOF OF CLAIM, OR IN ANOTHER DOCUMENT FILED WITH THE BANKRUPTCY COURT EXPLICITLY PRESERVING SUCH SETOFF OR THAT OTHERWISE INDICATES THAT SUCH ENTITY ASSERTS, HAS, OR INTENDS TO PRESERVE ANY RIGHT OF SETOFF PURSUANT TO APPLICABLE LAW OR OTHERWISE OR (Y) SUCH RIGHT TO SETOFF ARISES UNDER A POSTPETITION AGREEMENT WITH THE DEBTORS OR AN EXECUTORY CONTRACT THAT HAS BEEN ASSUMED BY THE DEBTORS AS OF THE EFFECTIVE DATE; AND (V) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR

INTERESTS RELEASED, SETTLED, AND/OR TREATED, ENTITLED TO A DISTRIBUTION, OR CANCELLED PURSUANT TO THE PLAN OR OTHERWISE DISALLOWED; *PROVIDED* THAT SUCH PERSONS WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS AGAINST, OR INTERESTS IN, A DEBTOR, A REORGANIZED DEBTOR, OR AN ESTATE SHALL NOT BE PRECLUDED FROM EXERCISING THEIR RIGHTS AND REMEDIES, OR OBTAINING THE BENEFITS, SOLELY PURSUANT TO AND CONSISTENT WITH THE TERMS OF THE PLAN.

SUBJECT IN ALL RESPECTS TO SECTION 11.1 OF THE PLAN, NO ENTITY OR PERSON MAY COMMENCE OR PURSUE A CLAIM OR CAUSE OF ACTION OF ANY KIND AGAINST ANY RELEASED PARTY OR EXCULPATED PARTY THAT AROSE OR ARISES FROM, IN WHOLE OR IN PART, THE CHAPTER 11 CASES, THE DEBTORS, THE GOVERNANCE, MANAGEMENT, TRANSACTIONS, OWNERSHIP, OR OPERATION OF THE DEBTORS, THE PURCHASE, SALE OR RESCISSION OF ANY SECURITY OF THE DEBTORS OR THE REORGANIZED DEBTORS (WHICH INCLUDES, FOR THE AVOIDANCE OF DOUBT, ALL CLAIMS AND CAUSES OF ACTION ASSERTED OR ASSERTABLE IN THE SECURITIES CLASS ACTION), THE DIP FACILITY, THE CONVERTIBLE NOTES AGREEMENTS, THE MINER EQUIPMENT LENDER AGREEMENTS, THE MORTGAGE AGREEMENTS, THE GENERAL CONTRACTS, ANY AND ALL AGREEMENTS RELATING TO M&M LIENS, AND ANY AND ALL RELATED AGREEMENTS, INSTRUMENTS, AND/OR OTHER DOCUMENTS, THE FORMULATION, PREPARATION, DISSEMINATION, SOLICITATION, NEGOTIATION, ENTRY INTO, OR FILING OF THE PLAN (INCLUDING THE PLAN SUPPLEMENT), THE DISCLOSURE STATEMENT, OR ANY RESTRUCTURING TRANSACTION, CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT (INCLUDING ANY LEGAL OPINION REQUESTED BY ANY ENTITY REGARDING ANY TRANSACTION, CONTRACT, INSTRUMENT, DOCUMENT, OR OTHER AGREEMENT CONTEMPLATED BY THE PLAN OR THE RELIANCE BY ANY RELEASED PARTY ON THE PLAN OR CONFIRMATION ORDER IN LIEU OF SUCH LEGAL OPINION) CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN, THE PLAN SUPPLEMENT, THE DISCLOSURE STATEMENT, THE PLAN SETTLEMENTS, THE NEW SECURED CONVERTIBLE NOTES DOCUMENTS, THE NEW SECURED NOTES DOCUMENTS, THE CONTINGENT PAYMENT OBLIGATIONS DOCUMENTS, THE GUC CONTINGENT PAYMENT OBLIGATIONS TERM SHEET, THE NEW MINER EQUIPMENT LENDER DEBT DOCUMENTS, THE EXIT FACILITY DOCUMENTS, THE NEW WARRANTS AGREEMENT, THE RIGHTS OFFERING, THE BACKSTOP COMMITMENT LETTER, THE INITIAL DIP LOAN DOCUMENTS, THE DIP FACILITY, THE TERMINATED RSA, THE RSA, THE CHAPTER 11 CASES, THE PURSUIT OF CONFIRMATION AND CONSUMMATION OF THE PLAN, THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN OR CONFIRMATION ORDER, INCLUDING THE ISSUANCE OR DISTRIBUTION OF SECURITIES PURSUANT TO THE PLAN (INCLUDING, BUT NOT LIMITED TO, THE NEW COMMON INTERESTS), OR THE DISTRIBUTION OF PROPERTY UNDER THE PLAN, OR ANY OTHER AGREEMENT, ACT OR OMISSION, TRANSACTION, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE RELATED OR RELATING TO THE FOREGOING WITHOUT THE

**BANKRUPTCY COURT (I) FIRST DETERMINING, AFTER NOTICE AND A HEARING, THAT SUCH CLAIM OR CAUSE OF ACTION REPRESENTS A CLAIM OF WILLFUL MISCONDUCT, FRAUD OR GROSS NEGLIGENCE AGAINST A RELEASED PARTY OR EXCULPATED PARTY AND (II) SPECIFICALLY AUTHORIZING SUCH ENTITY OR PERSON TO BRING SUCH CLAIM OR CAUSE OF ACTION AGAINST ANY SUCH RELEASED PARTY OR EXCULPATED PARTY. THE BANKRUPTCY COURT SHALL HAVE SOLE AND EXCLUSIVE JURISDICTION TO DETERMINE WHETHER A CLAIM OR CAUSE OF ACTION IS COLORABLE AND, ONLY TO THE EXTENT LEGALLY PERMISSIBLE AND AS PROVIDED FOR IN SECTION 11.1 OF THE PLAN, SHALL HAVE JURISDICTION TO ADJUDICATE THE UNDERLYING COLORABLE CLAIM OR CAUSE OF ACTION.**

**SECTION 5.19       CANCELLATION OF LIENS.**

(a)     Except as otherwise specifically provided in the Plan, including sections 4.4 and 4.6 of the Plan, all notes, instruments, certificates evidencing debt of the Debtors and Existing Common Interests will be cancelled and obligations of the Debtors thereunder will be discharged and of no further force or effect, except for the purpose of allowing the applicable agents and trustees to receive distributions from the Debtors under the Plan and to make any further distributions to the applicable Holders on account of their Allowed Claims and Interests.

(b)     After the Effective Date and following (i) the distributions to Holders on account of Allowed Convertible Notes Secured Claims and Allowed Miner Equipment Lender Secured Claims and/or (ii) with regard to Allowed M&M Lien Secured Claims, satisfaction of the applicable M&M Lien Takeback Debt, the Debtors or the Reorganized Debtors, at their expense, may, in their sole discretion, take any action necessary to terminate, cancel, extinguish, and/or evidence the release of any and all mortgages, deeds of trust, Liens, pledges, and other security interests with respect to the Convertible Notes Secured Claims, Miner Equipment Lender Secured Claims, and M&M Lien Secured Claims, including, without limitation, the preparation and filing of any and all documents necessary to terminate, satisfy, or release any mortgages, deeds of trust, Liens, pledges, and other security interests held by the Holders of the M&M Lien Secured Claims, Miner Equipment Lender Secured Claims, the Notes Agent, and/or Convertible Noteholders, including, without limitation, UCC-3 termination statements.

**Relevant Definitions Related to Release and Exculpation Provisions**:

        *"Exculpated Parties"* means each of the following in their capacity as such and, in each case, to the maximum extent permitted by law: (i) the Debtors; (ii) Equity Committee and each of its present and former members, each solely in their capacity as such (and as it relates to former members, solely with regard to the time period for which they served on the Equity Committee); and (iii) the Creditors' Committee and each of its present and former members, each

solely in its capacity as such (and as it relates to former members, solely with regard to the time period for which they served on the Creditors' Committee).

"*Related Parties*" means with respect to a Person, that Person's current and former Affiliates, and such Person's and its current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, fiduciaries, trustees, advisory board members, financial advisors, partners, limited partners, general partners, attorneys, accountants, managed accounts or funds, management companies, fund advisors, investment bankers, consultants, representatives, and other professionals, and such Person's respective heirs, executors, estates, and nominees, each in their capacity as such, and any and all other Persons or Entities that may purport to assert any Cause of Action derivatively, by or through the foregoing entities.

"*Released Parties*" means, collectively: (i) the Debtors; (ii) the Reorganized Debtors; (iii) the Equity Committee; (iv) the members of the Equity Committee that are party to the RSA, solely in their capacities as such; (v) the Backstop Parties; (vi) the Creditors' Committee; (vii) the present and former members of the Creditors' Committee, solely in their capacities as such; (viii) the Settling Miner Equipment Lenders; (ix) Brown Corporation; (x) Holliwood LLC; (xi) the Ad Hoc Noteholder Group; (xii) the Consenting Creditors; (xiii) the Exit Lenders; (xiv) the Notes Agent, solely in its capacity as such; (xv) Foundry Digital LLC; (xvi) B. Riley Commercial Capital, LLC; (xvii) BRF Finance Co., LLC; and (xviii) with respect to each of the foregoing Persons in clauses (i) through (xvii), all Related Parties. Notwithstanding the foregoing, any Person that opts out of the releases set forth in section 10.6(b) of the Plan shall not be deemed a Released Party thereunder.

"*Releasing Parties*" means collectively, and in each case solely in their capacity as such, (i) the Debtors; (ii) the Reorganized Debtors; (iii) with respect to each of the foregoing Persons in clauses (i) through (ii), all Related Parties; (iv) the Released Parties; (v) the Holders of all Claims or Interests that vote to accept the Plan; (vi) the Holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but that do not vote either to accept or to reject the Plan and do not opt out of granting the releases set forth in the Plan; (vii) the Holders of all Claims or Interests that vote, or are deemed, to reject the Plan or that are presumed to accept the Plan but do not opt out of granting the releases set forth in the Plan; and (viii) the Holders of all Claims and Interests and all Other Beneficial Owners that were given notice of the opportunity to opt out of granting the releases set forth in the Plan but did not opt out.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

**PURSUANT TO THE PLAN, IF YOU, AS A HOLDER OF CLAIMS OR AN OTHER BENEFICIAL OWNER WHO HAS BEEN GIVEN NOTICE OF THE OPPORTUNITY TO OPT OUT OF GRANTING THE RELEASES SET FORTH IN SECTION 10.6(b) OF THE**

**PLAN BUT DO NOT OPT OUT, YOU ARE AUTOMATICALLY DEEMED TO HAVE CONSENTED TO THE RELEASE PROVISIONS IN SECTION 10.6(b) OF THE PLAN.**

**By checking the box below, the undersigned Holder of a Claim not entitled to vote or Other Beneficial Owner identified in Item 1 above, having received notice of the opportunity to opt out of granting the releases contained in Section 10.6(b) of the Plan:**

☐ **Elects to <u>OPT OUT</u> of the releases contained in Section 10.6(b) of the Plan.**

**Item 3.**   **Certifications.** By signing this Release Opt Out Form, the undersigned certifies that:

a.   as of the Voting Record Date, either: (i) the Holder is the Holder of the Claims set forth in Item 1; (ii) the Holder is an authorized signatory for an entity that is the Holder of the Claims set forth in Item 1; or (iii) it is an Other Beneficial Owner;

b.   the undersigned has received a copy of the Release Opt Out Form and that the Release Opt Out Form is made pursuant to the terms and conditions set forth therein;

c.   if applicable, the undersigned has submitted the same election concerning the releases with respect to all Claims in a single Class set forth in Item 1; and

d.   that no other Release Opt Out Form with respect to the amount(s) of Claims identified in Item 1 or on account of being an Other Beneficial Owner have been submitted or, if any other Release Opt Out Forms have been submitted with respect to such Claims or on account of being an Other Beneficial Owner, then any such earlier Release Opt Out Forms are hereby revoked.

| | |
|---|---|
| Name of Holder or Other Beneficial Owner: | |
| Signature: | |
| Name of Signatory (if different from Holder or Other Beneficial Owner): | |
| Title (if applicable): | |

| | |
|---|---|
| City, State, Zip Code: | |
| Telephone Number: | |
| Date Completed: | |

**IF YOU WISH TO OPT OUT, PLEASE COMPLETE, SIGN, AND DATE THIS RELEASE OPT OUT FORM AND RETURN IT TO THE VOTING AGENT BY *JUST ONE* OF THE FOLLOWING METHODS: MAIL, OVERNIGHT OR HAND DELIVERY, OR BY ONLINE TRANSMISSION VIA ONLINE PORTAL:**

| **STRETTO'S ADDRESS FOR RECEIPT OF RELEASE OPT OUT FORM** |
|---|
| **CORE SCIENTIFIC, INC.** <br> **BALLOT PROCESSING CENTER** <br> **C/O STRETTO, INC.** <br> **410 EXCHANGE, SUITE 100** <br> **IRVINE, CA 92602** |

**THE OPT OUT DEADLINE IS JANUARY 11, 2024 AT 5:00 P.M. (PREVAILING CENTRAL TIME).**

**USE OF ONLINE OPT-OUT FORM**

**You may submit your Release Opt Out Form by electronic, online transmission solely through the Online Portal found on the Debtors' case information website and following the directions set forth on the Online Portal regarding submitting your Release Opt Out Form as described more fully below.**

**1.      Please visit https://balloting.stretto.com/CoreScientific/Supplemental/OtherBeneficialOwners**

**2.      Follow the directions to submit your Release Opt Out Form. If you choose to submit your Release Opt Out Form via the Online Portal, you should not return a hard copy of your Release Opt-Out Form.**

**THE ONLINE PORTAL IS THE SOLE MANNER IN WHICH RELEASE OPT OUT FORMS MAY BE DELIVERED VIA ELECTRONIC TRANSMISSION.**

**RELEASE OPT OUT FORMS SUBMITTED BY FACSIMILE OR EMAIL WILL NOT BE COUNTED.**

# **Exhibit D**



**Exhibit D**
Served Via First-Class Mail

| Name | Attention | Address 1 | Address 2 | City | State | Zip |
|------|-----------|-----------|-----------|------|-------|-----|
| Drivewealth, LLC | | 28 Liberty St | Fl 50 | New York | NY | 10005-1498 |
| Drivewealth, LLC/FPL | Attn: Corporate Actions | 28 Liberty St | Fl 50 | New York | NY | 10005-1498 |
| Drivewealth, LLC/Securities Lending | Attn: Corporate Actions | 28 Liberty St | Fl 50 | New York | NY | 10005-1498 |

# **Exhibit E**



To Custodians, Banks, Brokers, and Other Nominees (each, a "<u>Nominee</u>"):

*Re: Case Number: 22-90341 (CML) – Core Scientific, Inc., et al. CHAPTER 11 BANKRUPTCY*

<u>**CUSIP No. 21873J 108**</u>

Core Scientific, Inc., et al., (the "Debtors"), filed with the United States Bankruptcy Court for the Southern District of Texas (the "Court"), the enclosed *NOTICE OF ENTRY OF ORDER (I) CONFIRMING FOURTH AMENDED JOINT CHAPTER 11 PLAN OF CORE SCIENTIFIC, INC. AND ITS AFFILIATED DEBTORS AND (II) APPROVING DISCLOSURE STATEMENT ON A FINAL BASIS (Docket No. 1756)* (the "Notice"). Stretto, the Claims and Noticing agent for Debtors, was instructed by the Debtors' counsel that the Notice must be served upon nominees that hold stock in "street name" for the beneficial holders of the below-referenced CUSIP Number. You are receiving the Notice because your institution was identified by Depository Trust Company ("DTC") on the Security Position Report as of November 9, 2023 (the "Record Date").

| CUSIP/ISIN No. | Record Date |
|---|---|
| 21873J 108 / US21873J1088 | November 9, 2023 |

Stretto has provided the appropriate number of sets of the Notice as requested by Broadridge and Mediant, respectively. The following referenced job numbers pertain to the mailings established at Broadridge and Mediant. Please mail the provided materials via USPS First-Class Mail and Email to the Record Date beneficial holders in your books and records as applicable.

| Broadridge Job No.(s) | Mediant Job No.(s) |
|---|---|
| N98910 | 2342186 |

If you are not the correct individual or department to research and disburse the requested information, please forward to the proper individual at your firm.

# **<u>Exhibit F</u>**



To Custodians, Banks, Brokers, and Other Nominees (each, a "<u>Nominee</u>"):

*Re: Case Number: 22-90341 (CML) – Core Scientific, Inc., et al. CHAPTER 11 BANKRUPTCY*

### <u>CUSIP No. 21873J 108</u>

Core Scientific, Inc., et al., (the "Debtors"), filed with the United States Bankruptcy Court for the Southern District of Texas (the "Court"), the enclosed *NOTICE OF ENTRY OF ORDER (I) CONFIRMING FOURTH AMENDED JOINT CHAPTER 11 PLAN OF CORE SCIENTIFIC, INC. AND ITS AFFILIATED DEBTORS AND (II) APPROVING DISCLOSURE STATEMENT ON A FINAL BASIS (Docket No. 1756)* (the "Notice"). Stretto, the Claims and Noticing agent for Debtors, was instructed by the Debtors' counsel that the Notice must be served upon nominees that hold stock in "street name" for the beneficial holders of the below-referenced CUSIP Number. You are receiving the Notice because your institution was identified by Depository Trust Company ("DTC") on the Security Position Report as of November 9, 2023 (the "Record Date").

| CUSIP/ISIN No. | Record Date |
|---|---|
| 21873J 108 / US21873J1088 | November 9, 2023 |

Stretto has provided the appropriate number of sets of the Notice as requested by Broadridge and Mediant, respectively. The following referenced job numbers pertain to the mailings established at Broadridge and Mediant. Please mail the provided materials via USPS First-Class Mail and Email to the Record Date beneficial holders in your books and records as applicable.

| Broadridge Job No.(s) | Mediant Job No.(s) |
|---|---|
| N98910 | 2342186 |

If you are not the correct individual or department to research and disburse the requested information, please forward to the proper individual at your firm.